FILED CLERK

2003 AUG -6 P 5: 03

U.S. DISTRICT COURT
DISTRICT OF UTAH

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
Thomas G. Rafferty (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>-against-<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **DEFENDANT IBM'S ANSWER TO THE AMENDED COMPLAINT AND COUNTERCLAIM-PLAINTIFF IBM'S COUNTERCLAIMS AGAINST SCO**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball |



262061.1

In answer to the averments of the amended complaint of The SCO Group, Inc., f/k/a Caldera International, Inc. ("SCO"), defendant International Business Machines Corporation ("IBM"), by and through its attorneys, avers as follows, based upon personal knowledge as to its own actions and intent and upon information and belief as to the actions and intent of others:

## NATURE OF THIS ACTION

1.      Denies the averments of paragraph 1.

2.      Denies the averments of paragraph 2 as they relate to IBM, except refers to the referenced licenses for their contents and states that IBM is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

3.      Denies the first two sentences of paragraph 3.  States that it is without information sufficient to form a belief as to the truth of the third sentence of paragraph 3.

4.      Denies the averments of paragraph 4 as they relate to IBM, and states that IBM is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

5.      Denies the averments of paragraph 5.

6.      Denies the averments of paragraph 6, except refers to the referenced document for its contents.

7.      Denies the averments of paragraph 7, except refers to the referenced document for its contents.

8.      Denies the averments of paragraph 8, except refers to the referenced documents for their contents.

9.     Denies the averments of paragraph 9.

10.    Denies the averments of paragraph 10.

11.    Denies the averments of paragraph 11.

## PARTIES, JURISDICTION AND VENUE

12.    Admits the averments of paragraph 12.

13.    Admits the averments of paragraph 13.

14.    Denies the averments of paragraph 14, except admits that Sequent was formerly an Oregon corporation which was subsequently merged into IBM.

15.    States that the averments of paragraph 15 purport to state a legal conclusion and do not require a response.

16.    Denies the averments of paragraph 16, except admits that IBM is transacting business within this state and is contracting to provide goods and services within the state and states that, to the extent they purport to state a legal conclusion, these averments do not require a response.

17.    Denies the averments of paragraph 17, except admits that IBM maintains an office or place of business in this district.

## BACKGROUND

18.    Denies the averments of paragraph 18, especially insofar as they purport to describe all operating systems or purport to identify "UNIX" as a single operating system.

19.    States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 19, except denies the "market" averments and that Windows serves as "the" link described in the averments.

3

20.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 20, except admits that UNIX operating systems are used by corporations.

21.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 21.

22.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 22, except admits that AT&T Technologies, Inc. licensed certain software to IBM and Sequent.

23.     Denies the averments of paragraph 23 as they relate to IBM, except admits that IBM develops, manufactures and markets a UNIX product and states that it is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

24.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 24.

25.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 25.

26.     Denies the averments of paragraph 26, except admits that IBM markets a UNIX product under the trade name "AIX".

27.     Denies the averments of paragraph 27, except admits that Sequent marketed a UNIX product under the trade name "DYNIX/ptx".

28.     Denies the averments of paragraph 28 as they relate to IBM or to AIX, except states that IBM develops, manufactures and markets a UNIX product under the trade

4

name "AIX" and states that it is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

29.     Denies the averments of paragraph 29.

30.     Denies the averments of paragraph 30, except states that it is without information sufficient to form a belief as to the truth of the averments of the second sentence.

31.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 31, except denies the "market" averments.

32.     Denies the averments of paragraph 32.

33.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 33.

34.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 34.

35.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 35.

36.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 36, except admits that IBM POWER chips are currently more powerful than the Intel chips described in these averments.

37.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 37.

38.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 38.

262061.1

39.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 39.

40.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 40.

41.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 41.

42.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 42.

43.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 43.

44.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 44.

45.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 45.

46.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 46.

47.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 47.

48.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 48.

49.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 49.

50.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 50.

51.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 51.

52.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 52, except admits that UnixWare ran on Intel-based processors.

53.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 53.

54.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 54.

55.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 55, except admits that IBM and The Santa Cruz Operation, Inc. (a California corporation now known as Tarantella, Inc., which is not affiliated with SCO), entered into an agreement to develop a UNIX operating system for a 64-bit processing platform that was being developed by Intel and that the project was known as Project Monterey.

56.     Denies the averments of paragraph 56.

57.     Denies the averments of paragraph 57 as they relate to IBM, admits that The Santa Cruz Operation, Inc., provided information to IBM concerning UnixWare and certain software, and states that IBM is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

58.     Denies the averments of paragraph 58.

7

59.     Denies the averments of paragraph 59.

60.     Denies the averments of paragraph 60 as they relate to IBM, except admits that AT&T Technologies, Inc. licensed certain operating system software code to IBM, refers to the license agreements for their contents and states that IBM is without information sufficient to form a belief as to the truth of the averments of paragraph 60 as they relate to any other person or entity.

61.     Denies the averments of paragraph 61.

62.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 62.

63.     Denies the averments of paragraph 63.

64.     Denies the averments of paragraph 64, except refers to the referenced documents for their contents.

65.     Denies the averments of paragraph 65, except refers to the referenced document for its contents.

66.     Denies the averments of paragraph 66, except refers to the referenced documents for their contents.

67.     Denies the averments of paragraph 67, except refers to the referenced document for its contents.

68.     States that the averments of paragraph 68 purport to define a term for purposes of SCO's complaint and do not require a response.  To the extent a response is required, IBM denies the averments of paragraph 68, except refers to the referenced documents for their contents.

69.     Denies the averments of paragraph 69, except refers to the referenced documents for their contents.

70.     Denies the averments of paragraph 70, except refers to the referenced documents for their contents and states that the averments of paragraph 70 purport to define a term for purposes of SCO's complaint and do not require a response.

71.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 71.

72.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 72.

73.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 73.

74.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 74.

75.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 75.

76.     Denies the averments of paragraph 76, except states that it is without information sufficient to form a belief as to the truth of the second sentence of paragraph 76.

77.     States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 77.

78.     Denies the averments of paragraph 78, except states that it is without information sufficient to form a belief as to the truth of the averments except as they relate to IBM.

9

79.    Denies the averments of paragraph 79.

80.    Denies the averments of paragraph 80 as they relate to IBM and states that it is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

81.    States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 81.

82.    States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 82.

83.    States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 83.

84.    Denies the averments of paragraph 84.

85.    Denies the averments of paragraph 85.

86.    Denies the averments of paragraph 86 as they relate to IBM, except admits that IBM has increased its IBM Global Services staff and states that it is without information sufficient to form a belief as to the truth of the averments of paragraph 86 as they relate to any other person or entity.

87.    Denies the averments of paragraph 87.

88.    Denies the averments of paragraph 88.

89.    Denies the averments of paragraph 89.

90.    Denies the averments of paragraph 90, except refers to the referenced document for its contents.

91.    Denies the averments of paragraph 91.

262061.1

92.    Denies the averments of paragraph 92 and states that IBM has not open sourced any part of AIX that it did not have the right to open source.

93.    Denies the averments of paragraph 93.

94.    Denies the averments of paragraph 94, except refers to the referenced document for its contents.

95.    Denies the averments of paragraph 95.

96.    Denies the averments of paragraph 96, except refers to the referenced document for its contents.

97.    Denies the averments of paragraph 97, except refers to the referenced document for its contents.

98.    Denies the averments of paragraph 98, except states that it is without information sufficient to form a belief as to the truth of the averments in the second sentence of paragraph 98.

99.    Denies the averments of paragraph 99.

100.    Denies the averments of paragraph 100, except refers to the referenced document for its contents.

101.    Denies the averments of paragraph 101.

102.    Denies the averments of paragraph 102.

## FIRST CAUSE OF ACTION

103.    Repeats and realleges its answers to the averments contained in paragraphs 1 through 102 as if fully set forth herein.

262061.1

104. Denies the averments of paragraph 104, except refers to the referenced document for its contents.

105. Denies the averments of paragraph 105, except refers to the referenced document for its contents.

106. Denies the averments of paragraph 106.

107. Denies the averments of paragraph 107, except refers to the referenced document for its contents.

108. Denies the averments of paragraph 108.

109. Denies the averments of paragraph 109, except refers to the referenced document for its contents.

110. Denies the averments of paragraph 110.

111. Denies the averments of paragraph 111.

112. Denies the averments of paragraph 112, except refers to the referenced documents for their contents.

113. Denies the averments of paragraph 113 as they relate to IBM, refers to the referenced document for its contents and states that IBM is without information sufficient to form a belief as to the truth of the averments as they relate to any other person or entity.

114. Denies the averments of paragraph 114.

115. Denies the averments of paragraph 115.

116. Denies the averments of paragraph 116, except refers to the referenced document and regulations for their contents.

117. Denies the averments of paragraph 117.

12

118.    Denies the averments of paragraph 118, except refers to the referenced documents for their contents.

119.    Denies the averments of paragraph 119, except refers to the referenced document for its contents.

120.    Denies the averments of paragraph 120.

121.    Denies the averments of paragraph 121.

122.    Denies the averments of paragraph 122, except refers to the referenced document for its contents, and admits that IBM lawfully uses certain software products and source code.

123.    Denies the averments of paragraph 123.

124.    Denies the averments of paragraph 124.

125.    Denies the averments of paragraph 125.

126.    Denies the averments of paragraph 126.

## SECOND CAUSE OF ACTION

127.    Repeats and realleges its answers to the averments contained in paragraphs 1 through 126 as if fully set forth herein.

128.    Denies the averments of paragraph 128, except refers to the referenced document for its contents.

129.    Denies the averments of paragraph 129.

130.    Denies the averments of paragraph 130.

131.    Denies the averments of paragraph 131.

132.    Denies the averments of paragraph 132.

262061.1

### THIRD CAUSE OF ACTION

133.    Repeats and realleges its answers to the averments contained in paragraphs 1 through 132 as if fully set forth herein.

134.    Denies the averments of paragraph 134, except refers to the referenced document for its contents.

135.    Denies the averments of paragraph 135, except refers to the referenced document for its contents.

136.    Denies the averments of paragraph 136.

137.    Denies the averments of paragraph 137, except refers to the referenced document for its contents.

138.    Denies the averments of paragraph 138.

139.    Denies the averments of paragraph 139, except refers to the referenced code and documentation for their contents.

140.    Denies the averments of paragraph 140.

141.    Denies the averments of paragraph 141, except refers to the referenced document for its contents.

142.    Denies the averments of paragraph 142.

143.    Denies the averments of paragraph 143, except refers to the referenced document for its contents.

144.    Denies the averments of paragraph 144.

145.    Denies the averments of paragraph 145, except refers to the referenced document for its contents, states that these averments purport to characterize the laws of the

14

United States and do not require a response and admits that IBM is subject to the laws of the

United States and refers to those laws for their contents.

146.    Denies the averments of paragraph 146.

## FOURTH CAUSE OF ACTION

147.    Repeats and realleges its answers to the averments contained in paragraphs

1 through 146 as if fully set forth herein.

148.    States that it is without information sufficient to form a belief as to the

truth of the averments of paragraph 148.

149.    Denies the averments of paragraph 149.

150.    Denies the averments of paragraph 150.

151.    Denies the averments of paragraph 151.

152.    Denies the averments of paragraph 152.

153.    Denies the averments of paragraph 153.

## FIFTH CAUSE OF ACTION

154.    Repeats and realleges its answers to the averments contained in paragraphs

1 through 153 as if fully set forth herein.

155.    States that it is without information sufficient to form a belief as to the

truth of the averments of paragraph 155.

156.    Denies the averments of paragraph 156.

157.    Denies the averments of paragraph 157.

158.    Denies the averments of paragraph 158.

159.    Denies the averments of paragraph 159.

262061.1

## SIXTH CAUSE OF ACTION

160.　Repeats and realleges its answers to the averments contained in paragraphs 1 through 159 as if fully set forth herein.

161.　Denies the averments of paragraph 161.

162.　Denies the averments of paragraph 162.

163.　States that it is without information sufficient to form a belief as to the truth of the averments of paragraph 163.

164.　Denies the averments of paragraph 164.

165.　Denies the averments of paragraph 165.

166.　Denies the averments of paragraph 166.

167.　Denies the averments of paragraph 167.

168.　Denies the averments of paragraph 168.

169.　Denies the averments of paragraph 169.

170.　Denies the averments of paragraph 170.

## PRAYER FOR RELIEF

States that the enumerated paragraphs 1-12, following SCO's prayer for relief, contain a request for relief as to which no response is required.  To the extent a response is required, IBM denies that SCO is entitled to the requested relief.

## GENERAL DENIAL

IBM denies each averment in the complaint that is not specifically admitted herein.

16

## AFFIRMATIVE DEFENSES

### First Defense

The complaint fails to state a claim upon which relief can be granted.

### Second Defense

SCO's claims are barred because IBM has not engaged in any unlawful or unfair business practices, and IBM's conduct was privileged, performed in the exercise of an absolute right, proper and/or justified.

### Third Defense

SCO lacks standing to pursue its claims against IBM.

### Fourth Defense

SCO's claims are barred, in whole or in part, by the applicable statutes of limitations.

### Fifth Defense

SCO's claims are barred, in whole or in part, by the economic-loss doctrine or the independent-duty doctrine.

### Sixth Defense

SCO's claims are barred by the doctrines of laches and delay.

### Seventh Defense

SCO's claims are barred by the doctrines of waiver, estoppel and unclean hands.

### Eighth Defense

SCO's claims are, in whole or in part, pre-empted by federal law.

### Ninth Defense

SCO's claims are improperly venued in this district.

17

<u>Tenth Defense</u>

SCO has failed, in whole or in part, to mitigate its alleged damages.

WHEREFORE, defendant IBM prays that this Court enter judgement in favor of

IBM and against SCO, dismissing the amended complaint with prejudice and granting such other

and further relief as the Court deems just and proper, including costs, disbursements and

attorneys' fees.

## COUNTERCLAIMS

For its counterclaims herein, counterclaim-plaintiff International Business

Machines Corporation ("IBM"), by and through its attorneys, upon personal knowledge as to its

own actions and upon information and belief as to the actions of counterclaim-defendant The

SCO Group, Inc. ("SCO"), avers as follows:

### NATURE OF COUNTERCLAIMS

1.      These counterclaims arise from SCO's efforts wrongly to assert

proprietary rights over important, widely-used technology and to impede the use of that

technology by the open-source community.  SCO has misused, and is misusing, its purported

rights to the UNIX operating system developed originally by Bell Laboratories, then a research

and development arm of AT&T Corp., to threaten destruction of the competing operating

systems known as AIX and Linux, and to extract windfall profits for its unjust enrichment.

2.      IBM's counterclaims also arise from SCO's infringement of IBM patents.

Although SCO purports to respect the intellectual property rights of others—and has instituted

18

litigation against IBM for alleged failures with respect to SCO's purported rights—SCO itself is infringing no fewer than four IBM patents.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over IBM's counterclaims pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a) and 1367 and 15 U.S.C. § 1125(a)(1).

4.     The Court has diversity and supplemental jurisdiction over IBM's state law claims.  The parties have complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  IBM's Lanham Act claim and its patent claims arise under federal law.

5.     Venue is proper in this district, with respect to IBM's counterclaims, pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## PARTIES

6.     Counterclaim-plaintiff IBM is a New York corporation with its principal place of business in the state of New York.

7.     Counterclaim-defendant SCO is a Delaware corporation with its principal place of business in Utah County, Utah.

## BACKGROUND

A.  UNIX, IBM and AIX

8.     Beginning in the mid-1980s, IBM acquired broad rights to use UNIX software pursuant to a series of agreements with AT&T Technologies, Inc.  These agreements, referred to as the "AT&T Agreements", include the Software Agreement (Agreement Number SOFT-00015) dated February 1, 1985, the Sublicensing Agreement (Agreement Number

19

SUB-00015A) dated February 1, 1985, the Substitution Agreement (Agreement Number XFER-00015B) dated February 1, 1985, the letter agreement dated February 1, 1985, and the Software Agreement Supplement 170, as amended by a letter agreement dated on or about January 25, 1989.  Copies of these agreements are attached hereto as Exhibits A through F, respectively.

9.     In connection with the proper exercise of these and other rights previously obtained by IBM with respect to UNIX, IBM began development of its own version of a UNIX operating system, called AIX.  Over the last two decades, IBM has expended tremendous resources on developing AIX, creating millions of lines of original code, incorporating it into its product lines and licensing the technology to thousands of customers worldwide.  IBM continues to do so today.

10.     In 1993, Novell, Inc. ("Novell") acquired AT&T Technologies, Inc.'s rights under the AT&T Agreements.  In 1995, Novell assigned certain (but not all) of these rights to The Santa Cruz Operation, Inc. ("Original SCO"), a California corporation now known as Tarantella, Inc., which is not affiliated with SCO.

11.     Thereafter, IBM obtained additional rights with respect to UNIX software. Pursuant to an agreement known as Amendment X, entered into by IBM, Novell and Original SCO on October 17, 1996, for example, IBM acquired the "irrevocable, fully paid-up, perpetual right to exercise all of its rights" under the AT&T Agreements.  A copy of this amendment is attached hereto as Exhibit G.

262061.1

B. SCO, Linux and the GPL

12.    In 1994, SCO was formed under the name "Caldera, Inc." SCO began its business as a developer and distributor of the Linux operating system.

13.    Linux is an "open-source" operating system, the development of which was begun by Linus Torvalds in 1991. Since then, Linux has evolved through a rapid collaborative process resembling that of scientific peer review. There is a large, worldwide community of programmers who routinely read, redistribute and modify Linux source code in order to improve it.

14.    Since its inception, SCO has distributed a number of Linux products, including SCO Linux Server, SCO OpenLinux Server, SCO OpenLinux Workstation, and Caldera OpenLinux. SCO also distributed SCO Manager, a proprietary web-based systems administration tool for managing Linux and UNIX systems. Although SCO purported to suspend its Linux distribution after the commencement of this action, SCO has continued to make Linux source code available for download through its website.

15.    SCO has distributed its Linux products under the GNU General Public License (the "GPL"), a copy of which is attached hereto as Exhibit H. The GPL is intended to guarantee "freedom to share and change free software—to make sure the software is free for all its users". Linux is subject to the GPL because it is comprised of programs and other works that contain notices placed by contributing copyright holders saying that they may be distributed under the terms of the GPL. The Linux developers' public agreement to apply GPL terms expresses in a binding legal form the conscious public covenant that defines the open-source community—a covenant that SCO itself supported as a Linux company for eight years.

21

16.    SCO accepted the terms of the GPL by modifying and distributing Linux products. By distributing Linux products under the GPL, SCO agreed, among other things, not to assert—indeed, it is prohibited from asserting—certain proprietary rights (such as the right to collect license fees) over any source code distributed under the terms of the GPL. SCO also agreed not to restrict further distribution of any source code distributed by SCO under the terms of the GPL.

C.    IBM and Linux

17.    IBM is a participant in the open-source movement and has made a substantial investment in Linux business efforts over the last 5 years. IBM participates in a broad range of Linux projects that are important to the company and contribute to the open-source community.

18.    Today, IBM has a full line of products that run Linux and Linux services: mainframes and servers that run Linux; memory solutions for Linux environments; a broad range of software offerings; services that include deployment of Linux-based e-business environments, migration of database applications and data to Linux systems, support for Linux-based cluster computing, server consolidation, and a 24-hour technical engineering support line. IBM has created a Linux Center of Competency that offers Linux training and support, applications testing, technical advice and a hands-on environment in which to evaluate Linux and Linux-based applications.

19.    Like thousands of other developers, IBM has properly contributed source code to Linux under the GPL. In fact, SCO has included IBM contributions to Linux in the Linux products that SCO has distributed under the GPL. Like all recipients of SCO's Linux

22

distributions, IBM is entitled to the protections of the GPL with respect to the IBM contributions (as well as any other contributions) included in SCO's Linux distributions.

### D. Failure of SCO's Business

20.     Although it completed an initial public offering, SCO has failed to establish a successful business around Linux. SCO's Linux business has never generated a profit. In fact, the company as a whole did not experience a profitable quarter until after it abandoned its Linux business and undertook its present scheme to extract windfall profits from UNIX technology that SCO played no role in developing.

21.     In an attempt to revive its faltering Linux business, SCO acquired Original SCO's rights to UNIX and undertook "the unification of the UNIX and Linux operating systems". To that end, SCO markets and sells a number of UNIX products, including UnixWare, SCO OpenServer, Reliant HA, and Merge. Like SCO's Linux business, however, this enterprise is failing. With apparently no other prospects, SCO shifted its business model to litigation.

### E. SCO's Scheme

22.     SCO devised a scheme to profit from the UNIX rights that it acquired from Original SCO, though UNIX was in no way developed by SCO. Although most, if not all, of the UNIX technology that SCO purports to own is generally known, available without restriction to the general public or readily ascertainable by proper means, SCO undertook to create fear, uncertainty and doubt in the marketplace in regard to SCO's rights in and to that technology.

23.     Recognizing that there is little value in its UNIX rights, SCO did not limit its scheme to that technology. Rather, SCO devised and executed a plan to create the false

23

perception that SCO holds rights to UNIX that permit it to control not only all UNIX technology, but also Linux—including those aspects generated through the independent hard work and creativity of thousands of other developers and long distributed by SCO itself under the GPL.

24.     SCO undertook to carry out its scheme by, among other things, (a) bringing baseless legal claims against IBM and threatening to sue other companies and individuals, (b) conducting a far-reaching publicity campaign to create the false and/or unsubstantiated impression that SCO has rights to UNIX and Linux that it does not have and that IBM and others have violated SCO's rights and (c) otherwise seeking to condition the market to believe that SCO has rights to UNIX and Linux that it does not have and cannot properly enforce.

F.  SCO's Lawsuit and Threats

25.     On March 7, 2003, without any prior notice or warning that would have allowed IBM to understand SCO's claims and respond to them, SCO sued IBM alleging a host of meritless claims.  In particular, SCO alleges that IBM has breached its contractual obligations to SCO by, among other things, incorporating and inducing others to incorporate SCO's intellectual property into Linux.  In addition, SCO alleges that IBM has competed unfairly, interfered with SCO's contracts with others, and misappropriated SCO's trade secrets.

26.     By its complaint, and the amended complaint it submitted on July 22, 2003, SCO asserts legal theories that are frivolous, such as that SCO has ownership rights with respect to all of the code in AIX.  In addition, SCO also seeks relief to which it is plainly not entitled, such as a permanent injunction terminating IBM's ability to possess and use the

software products it licensed from AT&T Technologies, Inc., notwithstanding the fact that those rights are expressly "irrevocable" and "perpetual".

27.    In addition to instituting litigation against IBM, SCO sent letters to 1500 of the world's largest corporations threatening litigation. In its letters, an example of which is attached hereto as Exhibit I, SCO states, "We believe that Linux infringes on our UNIX intellectual property and other rights". SCO further states, "We intend to aggressively protect and enforce these rights" against not only the companies involved with "the Linux development process" but also "the end user" companies using any Linux technology. SCO has made clear that it intends to bring legal action relating to Linux. For example, in a press conference on July 21, 2003, SCO stated that taking out a license with SCO was the "alternative to legal enforcement against Linux end-users".

G. SCO's Campaign of False Publicity

28.    Following the commencement of its lawsuit against IBM and its barrage of letters threatening suit against others, SCO continued its campaign of falsehoods by further misrepresenting to the market the interplay of UNIX, AIX and Linux and SCO's and IBM's rights to these products.

29.    SCO has repeatedly made false public statements to the effect that it has the right and authority to revoke, and has effectively revoked, IBM's right to use AIX, IBM's version of UNIX. For example, on May 12, 2003, Chris Sontag, a Senior Vice President of SCO, stated publicly, SCO has "the right to revoke the AIX license", and on June 16, 2003, SCO announced publicly that it had "terminated IBM's right to use or distribute any software product that is a modification of or based on UNIX System V source code". Indeed, in an interview

25

given by SCO CEO Darl McBride to Peter Williams of vnunet.com on June 25, 2003, SCO

falsely represented that its contractual rights to "pull" IBM's contract are "bullet-proof".

      30.    By way of further example, SCO has falsely stated that it has the right to

control the use by IBM of all of UNIX and AIX technology and to control the use by all persons

and entities of Linux technology, which SCO contends is an illegal derivative of UNIX.  On June

16, 2003, SCO announced in a press release that "AIX is an unauthorized derivative of the UNIX

System operating system source code and its users are, as of this date, using AIX without a valid

basis to do so".  A SCO letter to Linux users, dated May 12, 2003, states, "We believe that Linux

is, in material part, an unauthorized derivative of UNIX. . . . We believe that Linux infringes on

our UNIX intellectual property and other rights."

      31.    SCO's campaign has not been limited to press releases and public

interviews.  SCO has also propagated falsehoods about its and IBM's rights in non-public

meetings with analysts.  SCO has solicited and participated in these meetings to misuse analysts

to achieve wider dissemination of SCO's misleading message about UNIX, AIX and Linux and

to damage IBM and the open-source movement.  In a luncheon hosted by Deutsche Bank analyst

Brian Skiba, on or about July 22, 2003, for example, SCO falsely stated that IBM transferred the

NUMA code from Sequent to Linux without any legal basis to do so and that IBM's actions were

giving rise to about $1 billion in damages per week.  In an interview in June 2003 with Client

Server News, SCO misrepresented to analysts that IBM has improperly released "truckloads" of

code into the open-source community.

H. Novell's Exercise of Rights

32.     On June 9, 2003, in response to SCO's actions, and pursuant to its obligations under Amendment X, Novell stated its belief that SCO has no right to terminate IBM's UNIX License which is perpetual and irrevocable, and Novell exercised its retained rights to UNIX to put a stop to SCO's misconduct.  Under Section 4.16(b) of the Asset Purchase Agreement between Novell and Original SCO dated September 19, 1995 ("APA"), attached hereto as Exhibit J, Novell directed SCO to "waive any purported right SCO may claim to terminate IBM's [UNIX] licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM".  A copy of Novell's June 9, 2003 letter is attached hereto as Exhibit K.

33.     When SCO failed to take the actions directed by Novell, on June 12, 2003, Novell exercised its rights under Section 4.16(b) of the APA to waive and revoke, in SCO's stead, any purported right SCO claimed to terminate IBM's licenses.  A copy of Novell's June 12, 2003 letter is attached hereto as Exhibit L.

34.     Notwithstanding the fact that IBM's rights to UNIX are expressly "irrevocable" and "perpetual" under Amendment X and the fact that Novell has exercised its right to waive, in any event, any contractual rights SCO claims IBM violated, SCO nevertheless purported to terminate IBM's licenses on June 13, 2003.  Moreover, even assuming (contrary to fact) that IBM's rights were terminable, at no time prior to SCO's purported termination did SCO comply with its obligations under the AT&T Agreements to identify the specific acts or omissions that SCO alleges constitute IBM's breach, despite IBM's demands that SCO do so.

27

35.     Rather, SCO has continued to misrepresent that it can, or will, or has in
fact revoked IBM's right to use UNIX, without disclosing that IBM's rights to UNIX are not
terminable or that Novell has exercised its right to waive any contractual rights SCO claims IBM
violated.  In an interview with InformationWeek on or about June 12, 2003, for instance, SCO
falsely stated that it has the right to revoke IBM's license and order the destruction of every copy
of AIX.

I.  SCO's Refusal to Specify Its Claims

36.     Rather than particularize its allegations of misconduct by IBM and others,
SCO has obfuscated and altered its claims to foster fear, uncertainty and doubt about its rights
and the rights of others.  In letters dated April 2, 2003, and May 5, 2003, attached hereto as
Exhibits M and N, respectively, IBM expressly asked SCO to advise IBM as to what SCO
contends IBM has done in violation of any of its agreements, and what SCO contends IBM
should do to cure such violations.  SCO refused.  In fact, SCO's counsel stated, in an interview
with Maureen O'Gara of LinuxGram, that it "doesn't want IBM to know what they [SCO's
substantive claims] are".

37.     SCO has obfuscated its claims and has hidden its supposed evidence
because the evidence does not demonstrate the breaches and violations that SCO has alleged.
Moreover, key developers and influence leaders in the open-source community, including
leaders of Linux kernel development, have stated publicly that they are prepared immediately to
remove any allegedly offending material from the Linux kernel.  Rather than permit remediation
or mitigation of its alleged injuries (which are non-existent), SCO has declined to reveal the

28

particulars of the alleged violations in order to artificially and improperly inflate the price of its stock.

38.   While refusing to supply IBM with meaningful specifics regarding the alleged breaches, SCO has shown its purported evidence to analysts and journalists who are interested in seeing it, subject to a nondisclosure agreement.

J.   SCO's Disparagement of AIX and Linux.

39.   In addition to purporting to terminate IBM's rights to use AIX, SCO has disparaged AIX as "unauthorized". In a press release dated June 16, 2003, SCO's counsel stated that "SCO has the right to terminate IBM's right to use and distribute AIX. Today AIX is an unauthorized derivative of the UNIX operating system source code and its users are, as of this date, using AIX without a valid license to do so". In the same press release, Darl McBride, SCO's Chief Executive Officer, stated that "IBM no longer has the authority to sell or distribute AIX and customers no longer have the right to use AIX software".

40.   Here again, SCO's false and misleading statements have not been limited to AIX. In recognition of the fact that its claims against IBM are baseless, and in flat contradiction of the allegation of its original complaint (e.g., that this case is not about the relative merits of proprietary versus open-source software), SCO has now falsely stated, in effect, it owns and is entitled to collect royalties regarding Linux. For example, on July 21, 2003, McBride stated, on behalf of SCO, Linux infringes SCO's rights and, as "a viable alternative to legal enforcement" SCO is prepared to offer a license to SCO's UNIX products that would, SCO says, permit lawful use of Linux.

41.     SCO's false and misleading statements have also damaged the reputation and prospects of the entire open-source community.  SCO's misconduct undermines the substantial public interest in the provision of software that is reliable, inexpensive, and accessible by the general public.

K.  SCO's Infringement

42.     Notwithstanding its allegations that IBM and others have breached SCO's intellectual property rights, SCO is engaged in pervasive acts of infringement of no fewer than four of IBM's patents, attached hereto as Exhibits O through R, by making, using, selling and/or offering to sell a variety of products, including: "UnixWare", a UNIX operating system for Intel and AMD processor-based computer systems; "Open Server", an operating system platform; "SCO Manager", a web-based remote systems management solution for management of Linux and SCO UNIX systems; and "Reliant HA", "clustering" software that permits interconnection of multiple servers to achieve redundancy.

L.  Effects of SCO's Misconduct and Its State of Mind

43.     As a result of the misconduct described above, SCO has not only artificially inflated its stock price and been unjustly enriched, but also it has injured IBM and, more broadly, the open-source movement.  SCO's misconduct has resulted in damage to IBM's business, including its reputation and goodwill, has interfered with its prospective economic relations and has required it unduly to divert resources to respond to SCO's baseless allegations. SCO has injured the open-source movement, of which it was once a part, by fostering fear, uncertainty and doubt about its and others' rights to use UNIX, AIX and Linux.

44.     SCO's misconduct is especially egregious because SCO has implemented its scheme with actual knowledge or in reckless disregard of the fact that it does not have the rights that it seeks to assert (e.g., the right to terminate IBM's irrevocable and perpetual UNIX rights). Moreover, SCO committed not to assert certain proprietary rights over or to restrict further distribution of any source code distributed by SCO under the terms of the GPL.

## FIRST COUNTERCLAIM

### Breach of Contract

45.     IBM repeats and realleges the averments in paragraphs 1 through 44, with the same force and effect as though they were set forth fully herein.

46.     SCO is licensor and IBM licensee of the right to use and sublicense the UNIX software, as specified in the AT&T Agreements and Amendment X, all of which are valid contracts.

47.     IBM has performed all its duties and obligations under the AT&T Agreements and Amendment X.

48.     SCO has breached its express duties and obligations under the AT&T Agreements and Amendment X by, among other things, purporting to terminate IBM's irrevocable and perpetual UNIX rights and/or refusing to provide IBM adequate notice and opportunity to cure its alleged misconduct.

49.     SCO has also breached the implied covenant of good faith and fair dealing under the AT&T Agreements and Amendment X by affirmatively seeking to deprive IBM of the benefits to which it is entitled under those contracts through numerous acts of bad faith,

31

including, among other things, making false and misleading statements to the public about SCO's and IBM's rights under the same.

50.    IBM has suffered damages from SCO's breaches of contract in an amount to be determined at trial.

## SECOND COUNTERCLAIM

Lanham Act Violation

51.    IBM repeats and realleges the averments in paragraphs 1 through 50, with the same force and effect as though they were set forth fully herein.

52.    IBM sells and distributes AIX and Linux-related products and services in interstate commerce.

53.    SCO has made material false representations regarding AIX and IBM's Linux-related products and services, which affect a customer's decision whether to purchase these products and services. Specifically, SCO has publicly misrepresented the legitimacy of these products and services by falsely representing that IBM no longer has the right, authority and license to use, produce and distribute these products and by misrepresenting SCO's own rights in and to UNIX, AIX and Linux.

54.    SCO has published its false statements in a series of widely-distributed press releases, press interviews and other streams of commerce, as part of its bad faith campaign to discredit IBM's products and services in the marketplace, to increase the perceived value of SCO's limited rights to UNIX and to promote SCO's own UNIX operating systems, UnixWare and Open Server.

262061.1

55.     These statements are likely to cause confusion and mistake and have in fact caused confusion and mistake as to the characteristics of IBM's goods, products and/or services.

56.     As a direct result of SCO's false representations, all of which are in violation of 15 U.S.C. § 1125, IBM has suffered damages in an amount to be determined at trial. IBM is also entitled to damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## THIRD COUNTERCLAIM

### Unfair Competition

57.     IBM repeats and realleges the averments in paragraphs 1 through 56, with the same force and effect as though they were set forth fully herein.

58.     IBM has invested over two decades and hundreds of millions of dollars in the creation and development of AIX.  Through IBM's efforts, innovation and hard work, AIX has become one of the leading UNIX operating systems, and IBM's products and services are sold and used throughout the United States.  Similarly, IBM has invested substantial time and effort in developing its Linux-related products and services.

59.     SCO has intentionally, knowingly, wrongfully and in bad faith engaged in a public pattern of conduct aimed at depriving IBM of the value of its AIX and Linux-related products and services and misappropriating the same for the benefit of SCO's UNIX licensing business as well as SCO's competing UNIX operating systems.  SCO's misconduct is likely to result in confusion in the marketplace and has in fact resulted in confusion concerning AIX and Linux.

60.     SCO has engaged in unfair competition by falsely claiming ownership of IBM's intellectual property as well as the intellectual property created by the open-source community; publishing false and disparaging statements about AIX; making bad faith misrepresentations concerning IBM's rights to UNIX and AIX; misusing and misrepresenting SCO's limited rights in UNIX to injure IBM; and falsely accusing IBM of theft of SCO's intellectual property.

61.     As a direct result of SCO's unfair competition, IBM has and will continue to suffer damage to its reputation, goodwill, and business in an amount to be determined at trial. Because SCO's acts of unfair competition were and are willful and malicious, IBM is also entitled to punitive damages.

## FOURTH COUNTERCLAIM

Intentional Interference with Prospective Economic Relations

62.     IBM repeats and realleges the averments in paragraphs 1 through 61, with the same force and effect as though they were set forth fully herein.

63.     IBM is actively engaged in the development, manufacture and sale of AIX and products and services relating to Linux.  IBM has prospective business relationships with numerous companies and individuals to whom IBM seeks to sell and/or license these products and services.  IBM also has prospective business relationships with business and individual members of the Linux and open-source software development, distribution, service and computing communities with whom IBM seeks to do business in various capacities, including through research and development efforts.

34

64. SCO is fully aware of these prospective business relationships and the importance of the relationships to IBM's continued commercial success.

65. SCO has intentionally interfered with these relationships through improper means, including by making false and misleading statements to IBM's prospective customers that IBM no longer has the right, authority and license to use, produce and distribute AIX and Linux-related products. SCO has also misrepresented its own rights relating to these operating systems. The purpose of SCO's unlawful conduct is to injure IBM by driving prospective customers of AIX and IBM's Linux-related products and services away from purchasing and licensing the same from IBM.

66. Furthermore, SCO has intentionally interfered with IBM's valuable economic relationships with business and individual members of the Linux and open-source software communities by falsely and publicly accusing IBM of inserting "truckloads" of SCO's intellectual property into the Linux kernel and related software. Again, the purpose of SCO's unlawful conduct is to injure IBM by driving away these businesses and individuals from future open-source collaborations with IBM.

67. IBM has suffered damages from SCO's tortious interference with its economic relations in an amount to be determined at trial. Because SCO's tortious interference with IBM's prospective economic relations was and is willful and malicious, IBM is entitled to punitive damages.

262061.1

## FIFTH COUNTERCLAIM

### Unfair and Deceptive Trade Practices

68.     IBM repeats and realleges the averments in paragraphs 1 through 67, with the same force and effect as though they were set forth fully herein.

69.     SCO has engaged in unfair and deceptive trade practices by, among other things, falsely representing that IBM no longer has the right, authority and/or license to use, produce and/or distribute AIX and Linux-related products; misrepresenting SCO's and IBM's rights relating to these operating systems; and publishing false and disparaging statements about AIX and Linux.

70.     SCO's false statements and misrepresentations were made in connection with SCO's solicitation of business, and in order to induce IBM and others to purchase products and licenses from SCO.  SCO's statements and misrepresentations are likely to cause confusion and misunderstanding as to the qualities, benefits and characteristics of AIX and Linux.  SCO has misrepresented that these products have qualities, benefits and characteristics that they do not have.

71.     SCO's misconduct was undertaken for the purpose of deceiving the marketplace and defaming IBM and has deceived and misled the public and IBM's customers; disparaged the goods, services, and business of IBM; and otherwise injured IBM's business in violation of N.Y. Gen. Bus. Law § 349 and the laws of other states.

72.     IBM has provided SCO with notice of its false and misleading statements, and has given SCO an opportunity to correct those statements.  SCO has refused and has instead opted to make more false and misleading statements.

73.     As a direct result of SCO's unfair and deceptive trade practices, the public at large, including AIX and Linux users, has been harmed by SCO's campaign to foster fear, uncertainty and doubt about AIX and Linux.  Moreover, IBM has suffered damages in an amount to be determined at trial.  Because SCO's acts of unfair and deceptive trade practices were and are willful, knowing and malicious, IBM is also entitled to treble damages and/or fees pursuant to N.Y. Gen. Bus. Law § 349(h).

## SIXTH COUNTERCLAIM

### Breach of the GNU General Public License

74.     IBM repeats and realleges the averments in paragraphs 1 through 73, with the same force and effect as though they were set forth fully herein.

75.     IBM has made contributions of source code to Linux under the GPL on the condition that users and distributors of such code, including SCO, abide by the terms of the GPL in modifying and distributing Linux products, including, for example, the requirement that they distribute all versions of GPL'd software (original or derivative) under the GPL and only the GPL pursuant to § 2(b) of the GPL.

76.     SCO has taken source code made available by IBM under the GPL, included that code in SCO's Linux products, and distributed significant portions of those products under the GPL.  By so doing, SCO accepted the terms of the GPL (pursuant to GPL § 5), both with respect to source code made available by IBM under the GPL and with respect to SCO's own Linux distributions.

77.     The GPL prohibits SCO from asserting certain proprietary rights (such as the right to collect license fees) over, or attempting to restrict further distribution of any source

37

code distributed by SCO under the terms of the GPL. Based on the misconduct described herein, SCO's rights to distribute the copyrighted works of others included in Linux under the GPL have been terminated pursuant to § 4 of the GPL.

78.     SCO has breached the GPL by, among other things, (1) claiming ownership rights over Linux code, including IBM contributions; (2) seeking to collect and collecting license fees with respect to Linux code, including IBM contributions; (3) copying, modifying, sublicensing or distributing Linux, including IBM contributions, on terms other than those set out in the GPL and after its rights under the GPL terminated; and (4) seeking to impose additional restrictions on the recipients of Linux code, including IBM contributions, distributed by SCO.

79.     As a result of SCO's breaches of the GPL, countless developers and users of Linux, including IBM, have suffered and will continue to suffer damages and other irreparable injury. IBM is entitled to an award of damages in an amount to be determined at trial and to an injunction prohibiting SCO from its continuing and threatened breaches of the GPL.

## SEVENTH COUNTERCLAIM

### Patent Infringement

80.     IBM repeats and realleges the averments in paragraphs 1 through 79, with the same force and effect as though they were set forth fully herein.

81.     IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,814,746 ("the '746 Patent"), duly and legally issued on March 21, 1989 to Miller et al., entitled "Data Compression Method".

82.     Upon information and belief, SCO has been and is infringing the '746 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including UnixWare and Open Server, that practice one or more claims of the '746 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

83.     Upon information and belief, SCO will continue to infringe the '746 Patent unless enjoined by this Court.

84.     IBM has been damaged by SCO's infringement of the '746 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

85.     Continued manufacture, use, sale or offer for sale of the infringing products, including UnixWare and Open Server, or evidence that SCO was aware of the '746 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '746 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## EIGHTH COUNTERCLAIM
Patent Infringement

86.     IBM repeats and realleges the averments in paragraphs 1 through 85, with the same force and effect as though they were set forth fully herein.

87.     IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,821,211 ("the '211 Patent"), duly and legally issued on

39

April 11, 1989 to Torres, entitled "Method of Navigating Among Program Menus Using a Graphical Menu Tree".

88.     Upon information and belief, SCO has been and is infringing the '211 Patent within this judicial district and elsewhere by making, using, selling, and/or offering to sell products, including SCO Manager, that practice one or more claims of the '211 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

89.     Upon information and belief, SCO will continue to infringe the '211 Patent unless enjoined by this Court.

90.     IBM has been damaged by SCO's infringement of the '211 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

91.     Continued manufacture, use, sale, or offer for sale of the infringing products, including SCO Manager, or evidence that SCO was aware of the '211 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '211 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## NINTH COUNTERCLAIM
### Patent Infringement

92.     IBM repeats and realleges the averments in paragraphs 1 through 91, with the same force and effect as though they were set forth fully herein.

93.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,953,209 ("the '209 Patent"), duly and legally issued on August 28, 1990 to Ryder et al., entitled "Self-Verifying Receipt and Acceptance System for Electronically Delivered Data Objects".

94.    Upon information and belief, SCO has been and is infringing the '209 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including UnixWare, that practice one or more claims of the '209 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

95.    Upon information and belief, SCO will continue to infringe the '209 Patent unless enjoined by this Court.

96.    IBM has been damaged by SCO's infringement of the '209 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

97.    Continued manufacture, use, sale or offer for sale of the infringing products, including UnixWare, or evidence that SCO was aware of the '209 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '209 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## TENTH COUNTERCLAIM

Patent Infringement

98.    IBM repeats and realleges the averments in paragraphs 1 through 97, with the same force and effect as though they were set forth fully herein.

99.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 5,805,785 ("the '785 Patent"), duly and legally issued on September 8, 1998 to Dias et al., entitled "Method for Monitoring and Recovery of Subsystems in a Distributed/Clustered System".

100.    Upon information and belief, SCO has been and is infringing the '785 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including Reliant HA, that practice one or more claims of the '785 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

101.    Upon information and belief, SCO will continue to infringe the '785 Patent unless enjoined by this Court.

102.    IBM has been damaged by SCO's infringement of the '785 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

103.    Continued manufacture, use, sale or offer for sale of the infringing products, including Reliant HA, or evidence that SCO was aware of the '785 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '785

42

Patent, making this an exceptional case and justifying the assessment of treble damages pursuant

to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, counterclaim-plaintiff IBM prays that this Court enter judgment

on the counterclaims in favor of IBM and against SCO:

(a)     awarding IBM compensatory damages;

(b)     awarding damages pursuant to 15 U.S.C. § 1117(a);

(c)     awarding IBM punitive damages;

(d)     granting IBM treble damages pursuant to 35 U.S.C. § 284;

(e)     granting IBM declaratory relief, ruling that SCO has violated IBM's rights

as outlined above;

(f)     granting IBM injunctive relief, enjoining and restraining SCO and its

affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors and assigns

and all others persons acting in concert with them, from further violating IBM's rights as

described above, including in particular from (i) misrepresenting SCO's rights and IBM's rights

to UNIX technology, such as that SCO can, will or has in fact revoked IBM's right to use UNIX;

(ii) misrepresenting that IBM no longer has the right, authority  and license to use, produce and

distribute AIX and IBM's Linux-related products; (iii) publishing false and disparaging

statements about AIX and IBM's Linux-related products; (iv) engaging in further acts of unfair

competition; (v) claiming ownership rights over code made available under the GPL; (vi)

collecting license fees with respect to code made available under the GPL; and (vii) further

infringement or inducement of infringement of the '746, '211, '209, '785 Patents;

43

(g)     awarding IBM costs, expenses and reasonable attorneys fees pursuant to

35 U.S.C. § 285, I5 U.S.C. § 1117(a), § 13-24-5 of the Utah Uniform Trade Secrets Act, and

N.Y. Gen. Bus. Law § 349(h);

(h)     awarding IBM pre- and post-judgment interest on the damages caused to

IBM as a result of all wrongful acts alleged herein; and

(i)     granting IBM such other and further relief as this Court deems just and

proper, including costs, disbursements and reasonable attorneys' fees.

### JURY DEMAND

IBM demands a trial by jury on all issues so triable.

DATED this 6th day of August, 2003

                                        SNELL & WILMER LLP

                                        Alan L. Sullivan
                                        Todd M. Shaughnessy

                                        CRAVATH, SWAINE & MOORE LLP
                                        Evan R. Chesler
                                        Thomas G. Rafferty
                                        David R. Marriott

                                        *Counsel for Defendant/Counterclaim-Plaintiff*
                                        *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York  10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

44

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2003, a true and correct copy of the

foregoing **DEFENDANT IBM'S ANSWER TO THE AMENDED COMPLAINT AND**

**COUNTERCLAIM-PLAINTIFF IBM'S COUNTERCLAIMS AGAINST SCO, JURY**

**TRIAL DEMANDED** was delivered to the following by U.S. Mail, postage prepaid:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
(801) 363-6363

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131
(305) 539-8400

Leonard K. Samuels.
Fred O. Goldberg
BERGER SINGERMAN
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301

262061.1

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.