SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
Thomas G. Rafferty (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

FILED
U.S. DISTRICT COURT

25 SEP 03 PM 1: 29

DISTRICT OF UTAH

BY: _____

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>-against-<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>Defendant/Counterclaim-Plaintiff, | **COUNTERCLAIM-PLAINTIFF IBM'S AMENDED COUNTERCLAIMS AGAINST SCO**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

41

For its counterclaims herein, counterclaim-plaintiff International Business Machines Corporation ("IBM"), by and through its attorneys, upon personal knowledge as to its own actions and upon information and belief as to the actions of counterclaim-defendant The SCO Group, Inc. ("SCO"), avers as follows:

## NATURE OF COUNTERCLAIMS

1.      These counterclaims arise from SCO's efforts wrongly to assert proprietary rights over important, widely-used technology and to impede the use of that technology by the open-source community. SCO has misused, and is misusing, its purported rights to the Unix operating system developed originally by Bell Laboratories, then a research and development arm of AT&T Corp., to threaten destruction of the competing operating systems known as AIX, Dynix and Linux, and to extract windfall profits for its unjust enrichment.

2.      IBM's counterclaims also arise from SCO's infringement of IBM copyrights and patents. Although SCO purports to respect the intellectual property rights of others -- and has instituted litigation against IBM for alleged failures with respect to SCO's purported rights -- SCO has infringed and is infringing a number of IBM copyrights and patents.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over IBM's counterclaims pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a) and (b), 1367, 2201(a) and 2202 and 15 U.S.C. § 1125(a)(1).

4.      The Court has diversity and supplemental jurisdiction over IBM's state law claims.  The parties have complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  IBM's Lanham Act, copyright and patent claims arise under federal law.

5.      Venue is proper in this district, with respect to IBM's counterclaims, pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a) and (b).

### PARTIES

6.      Counterclaim-plaintiff IBM is a New York corporation with its principal place of business in the state of New York.

7.      Counterclaim-defendant SCO is a Delaware corporation with its principal place of business in Utah County, Utah.

### BACKGROUND

A.      <u>Unix</u>

8.      Unix is a name used to characterize a family of operating systems that share common characteristics and meet certain well-publicized "UNIX" standards.  The earliest Unix operating system was built by software engineers at Bell Laboratories, the research division of AT&T.

9.      Over the years, AT&T Technologies, Inc., a wholly owned subsidiary of AT&T, and its related companies licensed Unix operating systems for widespread enterprise use.  AT&T's Unix software has been licensed to many thousands of persons or entities.

10.     In 1993, AT&T sold its Unix assets -- then held by its subsidiary, Unix System Laboratories, Inc. ("USL") -- to Novell, Inc. ("Novell").  In 1995, Novell sold some,

not all, of its Unix assets to The Santa Cruz Operation, Inc., now known as Tarantella, Inc. ("Original SCO"), which is not affiliated with counterclaim-defendant SCO.

       11.    Counterclaim-defendant SCO played no role in the development of Unix. But it purports to have acquired Original SCO's rights to Unix in 2001. Based upon the rights it purports to have acquired from Original SCO, SCO has undertaken the scheme described herein.

      B.    <u>IBM and Unix</u>

       12.    In the mid-1980s, IBM acquired broad rights to use Unix software pursuant to a series of agreements with AT&T Technologies, Inc. These agreements, referred to as the "AT&T Agreements", include the Software Agreement (Agreement Number SOFT-00015) dated February 1, 1985, the Sublicensing Agreement (Agreement Number SUB-00015A) dated February 1, 1985, the Substitution Agreement (Agreement Number XFER-00015B) dated February 1, 1985, the letter agreement dated February 1, 1985, and the Software Agreement Supplement 170, as amended by a letter agreement dated on or about January 25, 1989. Copies of these agreements are attached hereto as Exhibits A - F, respectively.

       13.    In connection with the proper exercise of these and other rights previously obtained by IBM with respect to Unix, IBM began development of its own version of a Unix operating system, called AIX. Over the last two decades, IBM has expended tremendous resources on developing AIX, creating millions of lines of original code, incorporating it into its product lines and licensing the technology to thousands of customers worldwide. IBM continues to do so today.

       14.    Like IBM, Sequent Computer Systems, Inc. ("Sequent") developed a version of a Unix operating system known as Dynix. IBM acquired Sequent by merger in 1999.

15.     On October 17, 1996, after Novell and Original SCO acquired AT&T's rights to Unix, IBM obtained additional rights with respect to Unix software.  Pursuant to an agreement known as Amendment X, entered into by IBM, Novell and Original SCO, IBM acquired, for example, the "irrevocable, fully paid-up, perpetual right to exercise all of its rights" under the AT&T Agreements.  A copy of this agreement is attached hereto as Exhibit G.

C.     Linux

16.     Linux is an operating system that stems from a rich history of collaborative development.  Linux is a dynamic and versatile operating system and is, for many, the operating system of choice.

17.     The development of Linux began when an undergraduate student at the University of Helsinki, by the name of Linus Torvalds, set out to create a new, free operating system.  In 1991, Linus Torvalds began developing the Linux kernel, the core of the operating system, and posting news of his project to internet newsgroups, along with a call for volunteers to assist in his efforts.

18.     With the internet providing for a distributed collaboration, other programmers joined to create code making up the kernel.  Linus Torvalds directed the collaboration to a version 1.0 release of the Linux kernel in 1994.

19.     In the years that followed, thousands of developers, including developers at IBM, contributed to the further development of Linux.  Version 2.4 of the Linux kernel was released in 2001.  IBM owns valid copyrights in its contributions to Linux, as illustrated below.

20.     The first commercial distribution of Linux was introduced in 1994 by Red Hat.  Thereafter, other distributors, including SCO, introduced a number of commercial Linux

products, which typically comprise the Linux kernel, the applications that the kernel runs (which,

with the kernel, comprise a complete operating system) and whatever else the distributor chooses

to combine into an easily installable product.

      D.     <u>Open-Source Software and the GPL</u>

      21.     Linux is open-source software.  Open-source software is free in the sense

that it is publicly available, royalty free, and users have the freedom to run, copy, distribute,

study, adapt, and improve the software.

      22.     Whereas traditional software licenses often reflect legal limitations

restricting the use and reproduction of original works, the open-source community has taken a

different approach to licensing.  The open-source community, including SCO, resolved to license

Linux so as to keep the source code publicly available.  Due to the open-source nature of Linux,

anyone can freely download Linux and many Linux applications and modify and re-distribute

them with few restrictions.

      23.     There are a variety of open-source licenses, but the most popular is the

GNU General Public License (the "GPL"), a copy of which is attached hereto as Exhibit H.  The

Linux kernel, and significant portions of the larger Linux operating system, are distributed under

the GPL.

      24.     In fact, one of the most important decisions Linus Torvalds made was to

develop the Linux kernel under the GPL and keep the source code freely distributable so others

could build upon, modify, and develop programs for the operating system.

      25.     Whereas the licenses for most software are programs designed to limit or

restrict a licensee's freedom to share and change it, the GPL is intended to guarantee a licensee's

freedom to share and change free software -- to make sure the software is free for all its users. The GPL applies to any program whose authors commit to using it.

26.     The GPL is designed to make sure that a licensee has the freedom to distribute copies of free software, receives source code or can get it if the licensee wants it, can change the software or use pieces of it in new free programs and knows the licensee can do these things.

27.     The Linux kernel is subject to the GPL as it is comprised of programs and other works that contain notices placed by contributing copyright holders permitting distribution under the terms of the GPL.  The Linux developers' public agreement to apply GPL terms expresses in a binding legal form the conscious public covenant that defines the open-source community -- a covenant that SCO itself supported as a Linux company for many years.

28.     SCO accepted the terms of the GPL by modifying and distributing Linux products.  By distributing Linux products under the GPL, SCO agreed, among other things, not to assert -- indeed, it is prohibited from asserting -- certain proprietary rights over any programs distributed by SCO under the terms of the GPL.  SCO also agreed not to restrict further distribution of any programs distributed by SCO under the terms of the GPL.

E.     SCO's Business

29.     SCO was founded as Caldera, Inc. in 1994, approximately 25 years after the beginning of the development of Unix and three years after Linus Torvalds began the development of Linux, to develop Linux-based business solutions.  In 1998, Caldera, Inc. sold its assets relating to its business of developing and marketing Linux to Caldera Systems, Inc., a newly formed corporation.

30.     SCO began its business as a developer and distributor of the Linux operating system.  By 2001, according to SCO, it led the world's largest Linux channel with more than 15,000 resellers worldwide.

31.     SCO has developed and marketed software based on the Linux operating system and provided related services that enable the development, deployment and management of Linux-specialized servers and internet access devices that simplify computing.  According to SCO, it was one of the first companies to tailor Linux open-source code from various sources into sound discrete products.

32.     Specifically, SCO has distributed and/or redistributed a number of Linux products, including SCO Linux server, SCO OpenLinux Server, and SCO OpenLinux Workstation.  SCO has also distributed SCO Volution Manager, a web-based management solution system for managing and maintaining established versions of Linux (as well as Unix operating systems).  Although SCO purported to suspend its Linux distribution after the commencement of this action, SCO has continued to make Linux source code available for download through its website.

33.     The viability of SCO's product offerings has depended in large measure upon the efforts of the open-source community in enhancing products and making them compatible for use across multiple software and hardware platforms.  Indeed, SCO incorporated certain code licensed pursuant to the GPL into its proprietary Unix products.  SCO has also relied on independent developers in the open-source community, such as Linus Torvalds, in order to release upgrades of SCO's Linux-based products.

34.     In addition to distributing Linux products, SCO facilitated the adoption of Linux by providing education programs designed to help its customers to develop, deploy and administer Linux systems.  Furthermore, SCO joined with other Linux vendors in UnitedLinux, an initiative to streamline Linux development and certification around a global, uniform distribution of Linux for business.

35.     On May 7, 2001, Caldera Systems was merged into Caldera International, Inc. (described below), which changed its name to The SCO Group, Inc. in May 2003.

F.      SCO's Open-Source Activities

36.     Until it undertook the scheme described herein, SCO supported the open-source community.  According to SCO, it fully embraced the open-source model.

37.     SCO Linux products encompass a range of software that uses a number of different licensing schemes, including open-source licenses and, in particular, the GPL. Components of SCO's Linux products (such as OpenLinux), including the Linux kernel, have been developed and made available for licensing under the GPL and similar licenses, which generally allow any person or organization to copy, modify and distribute the software, without royalty, in any form, including source code.

38.     Due to the open-source nature of many of SCO's software products and the licenses under which it has developed and distributed them, SCO's collection of trademarks constitutes its most important intellectual property.

39.     At least until it undertook the scheme described herein, SCO contributed tools and technology to the open-source community.  For instance, SCO incorporated open-source components in its product offerings to the betterment of its products, and gave away

CD-ROMs containing its Linux operating system at trade shows and allowed it to be freely downloaded over the internet to encourage interest.

40.     In addition, SCO fostered, and regularly contributed to, multiple open-source development projects in order to enhance the capability of SCO's products and services. In fact, SCO's business model depended upon incorporating contributions from the open-source community into products that it open sourced.

41.     SCO also fostered and supported the development of additional open-source and Linux enhancements through the Open Source Development Lab and through participation as a key member of many industry standard and open-source initiatives.

G.     IBM and Linux

42.     IBM is a participant in the open-source movement and has made a substantial investment in Linux business efforts over the last 5 years. IBM participates in a broad range of Linux projects that are important to the company and contribute to the open-source community.

43.     Today, IBM has many Linux-related offerings: mainframes and servers that run Linux; memory solutions for Linux environments; a broad range of software offerings; services that include deployment of Linux-based e-business environments, migration of database applications and data to Linux systems, support for Linux-based cluster computing, server consolidation, and a 24-hour technical engineering support line. IBM has created a Linux Center of Competency that offers Linux training and support, applications testing, technical advice and a hands-on environment in which to evaluate Linux and Linux-based applications.

44.     Like thousands of other developers, IBM has properly contributed source code to Linux under the GPL.  In fact, SCO has included IBM contributions to Linux in Linux products that SCO has distributed under the GPL.  Like all recipients of SCO's Linux distributions, IBM is entitled to the protections of the GPL with respect to the IBM contributions, as well as any other contributions, included in SCO's Linux distributions, of which IBM is a recipient.

H.      Failure of SCO's Business

45.     Although it completed an initial public offering, SCO, unlike IBM, has failed to establish a successful business around Linux.  SCO's Linux business has never generated a profit.  In fact, the company as a whole did not experience a profitable quarter until after it abandoned its Linux business and undertook its present scheme to extract windfall profits from Unix technology that SCO played no role in developing.

46.     In an attempt to revive its faltering Linux business, SCO acquired rights to the Unix operating system originally developed by Bell Laboratories and undertook the unification of the Unix and Linux operating systems.  On May 7, 2001, Caldera Systems was merged into Caldera International, Inc., a holding company formed to acquire the Server Software and Professional Services divisions of Original SCO, including Original SCO's rights to the Unix assets it acquired from Novell and the Unix variant developed by Original SCO.

47.     Following its acquisition of Original SCO's Unix assets, SCO described its business plan as being to integrate its Linux-based products and services with its Unix-based products and services as a way of encouraging businesses to adopt the open-source, Linux-based operating systems.

48. In pursuit of this strategy, SCO designed SCO Linux to permit existing Unix-based users to migrate to Linux. In addition, SCO marketed and sold a number of Unix products, including UnixWare, SCO OpenServer, Reliant HA, and Merge, and Caldera's Global Professional Services assisted customers in developing and deploying unified Unix and Linux solutions through consulting and custom engineering services.

49. Like SCO's original Linux business, however, this enterprise failed. SCO has not been able to operate a successful, legitimate business concerning Linux and/or Unix. With apparently no other prospects, SCO shifted its business model yet again -- this time to litigation and threats of litigation, as is described below.

I.   SCO's Scheme

50. SCO devised a scheme to profit from the Unix assets that it acquired from Original SCO, though those assets were in no way developed by SCO. Although most, if not all, of the AT&T Unix technology that SCO purports to own is generally known, available without restriction to the general public or readily ascertainable by proper means, SCO undertook to create fear, uncertainty and doubt in the marketplace in regard to SCO's rights in and to that technology.

51. Recognizing that there is little value in its Unix rights, SCO did not limit its scheme to that technology. Rather, SCO devised and executed a plan to create the false perception that SCO holds rights to Unix that permit it to control not only all Unix technology, but also Linux -- including those aspects generated through the independent hard work and creativity of thousands of other developers and long distributed by SCO itself under the GPL.

52.     SCO undertook to carry out its scheme by, among other things, (a) bringing baseless legal claims against IBM and threatening to sue other companies and individuals, (b) conducting a far-reaching publicity campaign to create the false and/or unsubstantiated impression that SCO has rights to Unix and Linux that it does not have and that IBM and others have violated SCO's rights and (c) otherwise seeking to condition the market to believe that SCO has rights to Unix and Linux that it does not have and cannot properly enforce.

J.     SCO's Lawsuit and Threats

53.     On March 7, 2003, without any prior notice or warning that would have allowed IBM to understand SCO's claims and respond to them, SCO sued IBM alleging a host of meritless claims.  In particular, SCO alleges that IBM has breached its contractual obligations to SCO by, among other things, incorporating and inducing others to incorporate SCO's intellectual property into Linux.  In addition, SCO alleges that IBM has competed unfairly, interfered with SCO's contracts with others, and misappropriated SCO's trade secrets.

54.     By its complaint, and the amended complaint it submitted on July 22, 2003, SCO asserts legal theories that are frivolous, such as that SCO has ownership rights with respect to all of the code in AIX.  SCO seeks relief to which it is plainly not entitled, such as a permanent injunction terminating IBM's ability to possess and use the software products it licensed from AT&T Technologies, Inc., notwithstanding the fact that those rights are expressly "irrevocable" and "perpetual".

55.     In addition to instituting litigation against IBM, SCO sent letters to 1500 of the world's largest corporations threatening litigation.  In its letters, an example of which is attached hereto as Exhibit I, SCO states, "We believe that Linux infringes on our Unix

intellectual property and other rights".  SCO further states, "We intend to aggressively protect

and enforce these rights" against not only the companies involved with "the Linux development

process" but also "the end user" companies using any Linux technology.  SCO has made clear

that it intends to bring legal action relating to Linux.  For example, in a press conference on

July 21, 2003, SCO stated that taking out a license with SCO was the "alternative to legal

enforcement against Linux end-users".

> K.      SCO's Campaign of False Publicity

56.     Following the commencement of its lawsuit against IBM and its barrage

of letters threatening suit against others, SCO continued its campaign of falsehoods by further

misrepresenting to the market the interplay of Unix, AIX, Dynix and Linux and SCO's and

IBM's rights to these products.

57.     SCO has repeatedly made false public statements to the effect that it has

the right and authority to revoke, and has effectively revoked, IBM's right to use AIX, IBM's

version of Unix.  For example, on May 12, 2003, Chris Sontag, a Senior Vice President of SCO,

stated publicly, SCO has "the right to revoke the AIX license", and on June 16, 2003, SCO

announced publicly that it had "terminated IBM's right to use or distribute any software product

that is a modification of or based on Unix System V source code".  Indeed, in an interview given

by SCO CEO Darl McBride to Peter Williams of vnunet.com on June 25, 2003, SCO falsely

represented that its contractual rights to "pull" IBM's contract are "bullet-proof".  SCO has made

similarly false statements relating to Dynix.

58.     By way of further example, SCO has falsely stated that it has the right to

control the use by IBM of all of Unix and AIX technology and to control the use by all persons

and entities of Linux technology, which SCO contends is an illegal derivative of Unix. On June 16, 2003, SCO announced in a press release that "AIX is an unauthorized derivative of the Unix System operating system source code and its users are, as of this date, using AIX without a valid basis to do so". A SCO letter to Linux users, dated May 12, 2003, states, "We believe that Linux is, in material part, an unauthorized derivative of Unix. . . . We believe that Linux infringes on our Unix intellectual property and other rights."

59. SCO's campaign has not been limited to press releases and public interviews. SCO has also propagated falsehoods about its and IBM's rights in non-public meetings with analysts. SCO has solicited and participated in these meetings to misuse analysts to achieve wider dissemination of SCO's misleading message about Unix, AIX and Linux and to damage IBM and the open-source movement. In a luncheon hosted by Deutsche Bank analyst Brian Skiba, on or about July 22, 2003, for example, SCO falsely stated that IBM transferred the NUMA code from Sequent to Linux without any legal basis to do so and that IBM's actions were giving rise to about $1 billion in damages per week. In an interview in June 2003 with Client Server News, SCO misrepresented to analysts that IBM has improperly released "truckloads" of code into the open-source community.

L.      Novell's Exercise of Rights

60. On June 9, 2003, in response to SCO's actions, and pursuant to its obligations under Amendment X, Novell stated its belief that SCO has no right to terminate IBM's Unix license which is perpetual and irrevocable, and Novell exercised its retained rights to Unix to put a stop to SCO's misconduct. Under Section 4.16(b) of the Asset Purchase Agreement between Novell and Original SCO dated September 19, 1995 ("APA"), attached

hereto as Exhibit J, Novell directed SCO to "waive any purported right SCO may claim to terminate IBM's [Unix] licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM". A copy of Novell's June 9, 2003 letter is attached hereto as Exhibit K.

61.     When SCO failed to take the actions directed by Novell, on June 12, 2003, Novell exercised its rights under Section 4.16(b) of the APA to waive and revoke, in SCO's stead, any purported right SCO claimed to terminate IBM's licenses. A copy of Novell's June 12, 2003 letter is attached hereto as Exhibit L.

62.     Notwithstanding the fact that IBM's rights to Unix are expressly "irrevocable" and "perpetual" under Amendment X and the fact that Novell has exercised its right to waive, in any event, any contractual rights SCO claims IBM violated, SCO nevertheless purported to terminate IBM's licenses on June 13, 2003. Moreover, even assuming (contrary to fact) that IBM's rights were terminable, at no time prior to SCO's purported termination did SCO comply with its obligations under the AT&T Agreements to identify the specific acts or omissions that SCO alleges constitute IBM's breach, despite IBM's demands that SCO do so.

63.     Rather, SCO has continued to misrepresent that it can, or will, or has in fact revoked IBM's right to use Unix, without disclosing that IBM's rights to Unix are not terminable or that Novell has exercised its right to waive any contractual rights SCO claims IBM violated. In an interview with InformationWeek on or about June 12, 2003, for instance, SCO falsely stated that it has the right to revoke IBM's license and order the destruction of every copy of AIX.

M.     SCO's Refusal to Specify Its Claims

64.     Rather than particularize its allegations of misconduct by IBM and others,

SCO has obfuscated and altered its claims to foster fear, uncertainty and doubt about its rights

and the rights of others.  In letters dated April 2, 2003, and May 5, 2003, attached hereto as

Exhibits M and N, respectively, IBM expressly asked SCO to advise IBM as to what SCO

contends IBM has done in violation of any of its agreements, and what SCO contends IBM

should do to cure such violations.  SCO refused.  In fact, SCO's counsel indicated, in an

interview with Maureen O'Gara of LinuxGram, that it "doesn't want IBM to know what they

[SCO's substantive claims] are".

65.     SCO has obfuscated its claims and has hidden its supposed evidence

because the evidence does not demonstrate the breaches and violations that SCO has alleged.

Moreover, key developers and influence leaders in the open-source community, including

leaders of Linux kernel development, have stated publicly that they are prepared immediately to

remove any allegedly offending material from the Linux kernel.  Rather than permit remediation

or mitigation of its alleged injuries (which are non-existent), SCO has declined to reveal the

particulars of the alleged violations in order to artificially and improperly inflate the price of its

stock.

66.     While refusing to supply IBM with meaningful specifics regarding the

alleged breaches, SCO has shown its purported evidence to analysts, journalists and others who

are interested in seeing it.  For example, at a forum held in Las Vegas on August 17-19, 2003,

SCO made a false and misleading presentation concerning its claims against IBM, in which SCO

purported to disclose examples of its evidence of alleged misconduct by IBM.

N.      SCO's Disparagement of AIX and Linux.

67.    In addition to purporting to terminate IBM's rights to use AIX, SCO has disparaged AIX as "unauthorized".  In a press release dated June 16, 2003, SCO's counsel stated that "SCO has the right to terminate IBM's right to use and distribute AIX.  Today AIX is an unauthorized derivative of the Unix operating system source code and its users are, as of this date, using AIX without a valid license to do so".  In the same press release, Darl McBride, SCO's Chief Executive Officer, stated that "IBM no longer has the authority to sell or distribute AIX and customers no longer have the right to use AIX software".  SCO has made similarly false and disparaging statements relating to Dynix.

68.    Here again, SCO's false and misleading statements have not been limited to AIX.  In recognition of the fact that its claims against IBM are baseless, and in flat contradiction of the allegation of its original complaint (i.e., that this case is not about the relative merits of proprietary versus open-source software), SCO has now falsely stated, in effect, it owns and is entitled to collect royalties regarding Linux.  For example, on July 21, 2003, McBride stated, on behalf of SCO, Linux infringes SCO's rights and, as "a viable alternative to legal enforcement" SCO is prepared to offer a license to SCO's Unix products that would, SCO says, permit lawful use of Linux.

69.    SCO has misrepresented that IBM has infringed SCO's copyrights, and has threatened to sue IBM for copyright infringement, with respect to Linux.  For example, at its 2003 SCO Forum, SCO represented that Linux is an unauthorized derivative of Unix, that IBM has infringed its rights in Linux and that SCO is entitled to damages and injunctive relief against IBM.

70.     SCO's false and misleading statements have also damaged the reputation and prospects of the entire open-source community.  SCO's misconduct undermines the substantial public interest in the provision of software that is reliable, inexpensive, and accessible by the general public.

O.     SCO's Copyright Infringement

71.     As stated, IBM has made contributions of source code to Linux under the GPL, some of which are identified below.  IBM owns valid copyrights in these contributions, as illustrated below, and has identified them with appropriate copyright notices.

72.     Notwithstanding SCO's allegations that IBM and others have breached SCO's intellectual property rights, SCO has infringed and is infringing IBM's copyrights in its Linux contributions.

73.     IBM granted SCO and others a non-exclusive license to these copyrighted contributions on the terms set out in the GPL and only on the terms set out in the GPL.  SCO breached its obligations under the GPL, however, and therefore its rights under the GPL terminated.

74.     SCO has infringed and is infringing IBM's copyrights by copying, modifying, sublicensing and/or distributing Linux products after its rights under the GPL terminated.  SCO has taken copyrighted source code made available by IBM under the GPL, included that code in SCO's Linux products, and copied, modified, sublicensed and/or distributed those products other than as permitted under the GPL.

P.      SCO's Patent Infringement

75.     In addition to infringing IBM's copyrights, SCO is engaged in pervasive acts of infringement of no fewer than four of IBM's patents, by making, using, selling and/or offering to sell a variety of products, including but not limited to: "UnixWare", a Unix operating system for Intel and AMD processor-based computer systems; "Open Server", an operating system platform; "SCO Manager", a web-based remote systems management solution for management of Linux and SCO Unix systems; and "Reliant HA", "clustering" software that permits interconnection of multiple servers to achieve redundancy.

Q.      Effects of SCO's Misconduct and Its State of Mind

76.     As a result of the misconduct described above, SCO has not only artificially inflated its stock price and been unjustly enriched, but also it has injured IBM and, more broadly, the open-source movement.  SCO's misconduct has resulted in damage to IBM's business, including its reputation and goodwill, has interfered with its prospective economic relations and has required it unduly to divert resources to respond to SCO's baseless allegations. SCO has injured the open-source movement, of which it was once a part, by fostering fear, uncertainty and doubt about its and others' rights to use Unix, AIX, Dynix and Linux.

77.     SCO's misconduct is especially egregious because SCO has implemented its scheme with actual knowledge or in reckless disregard of the fact that it does not have the rights that it seeks to assert (e.g., the right to terminate IBM's irrevocable and perpetual Unix rights).  Moreover, SCO committed not to assert certain proprietary rights over or to restrict further distribution of any program distributed by SCO under the terms of the GPL.

## FIRST COUNTERCLAIM

Breach of Contract

78.     IBM repeats and realleges the averments in paragraphs 1 through 77, with the same force and effect as though they were set forth fully herein.

79.     SCO is licensor and IBM licensee of the right to use and sublicense Unix software, as specified in the AT&T Agreements, Amendment X and other similar agreements, all of which are valid contracts.

80.     IBM has performed all its duties and obligations under the AT&T Agreements, Amendment X and other similar agreements.

81.     SCO has breached its express duties and obligations under the AT&T Agreements, Amendment X and other similar agreements by, among other things, purporting to terminate IBM's irrevocable and perpetual Unix rights and/or refusing to provide IBM adequate notice and opportunity to cure its alleged misconduct.

82.     SCO has also breached the implied covenant of good faith and fair dealing under the AT&T Agreements, Amendment X and other similar agreements by affirmatively seeking to deprive IBM of the benefits to which it is entitled under those contracts through numerous acts of bad faith, including, among other things, making false and misleading statements to the public about SCO's and IBM's rights under the same.

83.     IBM has suffered damages from SCO's breaches of contract in an amount to be determined at trial.

## SECOND COUNTERCLAIM

Lanham Act Violation

84.     IBM repeats and realleges the averments in paragraphs 1 through 83, with the same force and effect as though they were set forth fully herein.

85.     IBM sells and distributes AIX and Linux-related products and services in interstate commerce, and IBM sold and distributed Dynix in interstate commerce.

86.     SCO has made material false representations regarding AIX, Dynix and IBM's Linux-related products and services, which affect a customer's decision whether to purchase these products and services.  Specifically, SCO has publicly misrepresented the legitimacy of these products and services by falsely representing that IBM no longer has the right, authority and license to use, produce and distribute these products and by misrepresenting SCO's own rights in and to Unix, AIX, Dynix and Linux.

87.     SCO has published its false statements in a series of widely-distributed press releases, press interviews and other streams of commerce, as part of its bad faith campaign to discredit IBM's products and services in the marketplace, to increase the perceived value of SCO's limited rights to Unix and to promote SCO's own Unix operating systems, UnixWare and Open Server.

88.     These statements are likely to cause confusion and mistake and have in fact caused confusion and mistake as to the characteristics of IBM's goods, products and/or services.

89.     As a direct result of SCO's false representations, all of which are in violation of 15 U.S.C. § 1125, IBM has suffered damages in an amount to be determined at trial. IBM is also entitled to damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## THIRD COUNTERCLAIM

### Unfair Competition

90.     IBM repeats and realleges the averments in paragraphs 1 through 89, with the same force and effect as though they were set forth fully herein.

91.     IBM has invested over two decades and hundreds of millions of dollars in the creation and development of AIX.  Through IBM's efforts, innovation and hard work, AIX has become one of the leading Unix operating systems, and IBM's products and services are sold and used throughout the United States.  Similarly, IBM expended substantial resources to acquire Dynix and has invested substantial time and effort in developing its Linux-related products and services.

92.     SCO has intentionally, knowingly, wrongfully and in bad faith engaged in a public pattern of conduct aimed at depriving IBM of the value of its AIX, Dynix and Linux-related products and services and misappropriating the same for the benefit of SCO's Unix licensing business as well as SCO's competing Unix operating systems.  SCO's misconduct is likely to result in confusion in the marketplace and has in fact resulted in confusion concerning AIX, Dynix and Linux.

93.     SCO has engaged in unfair competition by falsely claiming ownership of IBM's intellectual property as well as the intellectual property created by the open-source community; publishing false and disparaging statements about AIX and Dynix; making bad faith

misrepresentations concerning IBM's rights to Unix, AIX and Dynix; misusing and
misrepresenting SCO's limited rights in Unix to injure IBM; and falsely accusing IBM of theft of
SCO's intellectual property.

94.     As a direct result of SCO's unfair competition, IBM has and will continue
to suffer damage to its reputation, goodwill, and business in an amount to be determined at trial.
Because SCO's acts of unfair competition were and are willful and malicious, IBM is also
entitled to punitive damages.

### FOURTH COUNTERCLAIM

Intentional Interference with Prospective Economic Relations

95.     IBM repeats and realleges the averments in paragraphs 1 through 94, with
the same force and effect as though they were set forth fully herein.

96.     IBM is actively engaged in the development, manufacture and sale of AIX
and products and services relating to Linux, and IBM has sold and distributed Dynix.  IBM has
prospective business relationships with numerous companies and individuals to whom IBM has
sold and/or licensed these products and services and/or to whom IBM seeks to sell and/or license
these products and services.  IBM also has prospective business relationships with business and
individual members of the Linux and open-source software development, distribution, service
and computing communities with whom IBM seeks to do business in various capacities,
including through research and development efforts.

97.     SCO is fully aware of these prospective business relationships and the
importance of the relationships to IBM's continued commercial success.

98.     SCO has intentionally interfered with these relationships through improper means, including by making false and misleading statements to IBM's prospective customers that IBM no longer has the right, authority and license to use, produce and distribute AIX, Dynix and Linux-related products.  SCO has also misrepresented its own rights relating to these operating systems.  The purpose of SCO's unlawful conduct is to injure IBM by driving prospective customers of AIX, Dynix and IBM's Linux-related products and services away from purchasing and licensing the same from IBM.

99.     Furthermore, SCO has intentionally interfered with IBM's valuable economic relationships with business and individual members of the Linux and open-source software communities by falsely and publicly accusing IBM of inserting "truckloads" of SCO's intellectual property into the Linux kernel and related software.  Again, the purpose of SCO's unlawful conduct is to injure IBM by driving away these businesses and individuals from future open-source collaborations with IBM.

100.    IBM has suffered damages from SCO's tortious interference with its economic relations in an amount to be determined at trial.  Because SCO's tortious interference with IBM's prospective economic relations was and is willful and malicious, IBM is entitled to punitive damages.

### FIFTH COUNTERCLAIM

#### Unfair and Deceptive Trade Practices

101.    IBM repeats and realleges the averments in paragraphs 1 through 100, with the same force and effect as though they were set forth fully herein.

102.     SCO has engaged in unfair and deceptive trade practices by, among other things, falsely representing that IBM no longer has the right, authority and/or license to use, produce and/or distribute AIX, Dynix and Linux-related products; misrepresenting SCO's and IBM's rights relating to these operating systems; and publishing false and disparaging statements about AIX, Dynix and Linux.

103.     SCO's false statements and misrepresentations were made in connection with SCO's solicitation of business, and in order to induce IBM and others to purchase products and licenses from SCO.  SCO's statements and misrepresentations are likely to cause confusion and misunderstanding as to the qualities, benefits and characteristics of AIX, Dynix and Linux. SCO has misrepresented the qualities, benefits and/or characteristics of these products.

104.     SCO's misconduct was undertaken for the purpose of deceiving the marketplace and defaming IBM and has deceived and misled the public and IBM's customers; disparaged the goods, services, and business of IBM; and otherwise injured IBM's business in violation of N.Y. Gen. Bus. Law § 349 and the laws of other states.

105.     IBM has provided SCO with notice of its false and misleading statements, and has given SCO an opportunity to correct those statements.  SCO has refused and has instead opted to make more false and misleading statements.

106.     As a direct result of SCO's unfair and deceptive trade practices, the public at large, including AIX, Dynix and Linux users, has been harmed by SCO's campaign to foster fear, uncertainty and doubt about AIX, Dynix and Linux.  Moreover, IBM has suffered damages in an amount to be determined at trial.  Because SCO's acts of unfair and deceptive trade

practices were and are willful, knowing and malicious, IBM is also entitled to treble damages and/or fees pursuant to N.Y. Gen. Bus. Law § 349(h).

### SIXTH COUNTERCLAIM

Breach of the GNU General Public License

107.   IBM repeats and realleges the averments in paragraphs 1 through 106, with the same force and effect as though they were set forth fully herein.

108.   IBM has made contributions of source code to Linux under the GPL on the condition that users and distributors of such code, including SCO, abide by the terms of the GPL in modifying and distributing Linux products, including, for example, the requirement that they distribute all versions of software licensed under the GPL (original or derivative) under the GPL and only the GPL.

109.   SCO has taken source code made available by IBM under the GPL, included that code in SCO's Linux products, and distributed significant portions of those products under the GPL.  By so doing, SCO accepted the terms of the GPL (pursuant to GPL § 5), both with respect to source code made available by IBM under the GPL and with respect to SCO's own Linux distributions.

110.   SCO has breached the GPL by, among other things, copying, modifying, sublicensing or distributing programs licensed under the GPL, including IBM contributions, on terms inconsistent with those set out in the GPL; and seeking to impose additional restrictions on the recipients of programs licensed under the GPL, including IBM contributions, distributed by SCO.

111.    Based upon its breaches of the GPL and the misconduct described herein, SCO's rights under the GPL, including but not limited to the right to distribute the copyrighted works of others included in Linux under the GPL, terminated (pursuant to § 4 of the GPL). The GPL prohibits SCO from, among other things, asserting certain proprietary rights over, or attempting to restrict further distribution of any program distributed by SCO under the terms of the GPL, except as permitted by the GPL.

112.    As a result of SCO's breaches of the GPL, countless developers and users of Linux, including IBM, have suffered and will continue to suffer damages and other irreparable injury. IBM is entitled to a declaration that SCO's rights under the GPL terminated, an injunction prohibiting SCO from its continuing and threatened breaches of the GPL and an award of damages in an amount to be determined at trial.

## SEVENTH COUNTERCLAIM

### Promissory Estoppel

113.    IBM repeats and realleges the averments in paragraphs 1 through 112, with the same force and effect as though they were set forth fully herein.

114.    SCO made a clear and unambiguous promise to IBM and others that SCO would copy, modify or distribute programs distributed by IBM and others under the GPL only on the terms set out in the GPL; and would not assert rights to programs distributed by SCO under the GPL except on the terms set out in the GPL.

115.    IBM and others reasonably, prudently and foreseeably relied upon these promises, such as by making contributions under the GPL and committing resources to open-source projects.

116.    SCO knew or should have known that IBM and others would rely and in fact relied upon SCO's promises and knew or should have known that those promises would induce and in fact induced action or forbearance on the part of IBM and others.

117.    SCO was and is aware of all material facts relating to IBM's reliance on SCO's promises including but not limited to IBM's contributions under the GPL, SCO's distributions under the GPL and the intent, meaning and import of the GPL.

118.    As a result of its reliance upon SCO's promises, IBM has sustained injuries and is entitled to an award of damages in an amount to be determined at trial.  In addition to an award of damages, IBM is entitled to declaratory and injunctive relief, including but not limited to a declaration that SCO is not entitled to assert proprietary rights with respect to products distributed by SCO under the GPL except upon the terms set out in the GPL.

## EIGHTH COUNTERCLAIM

### Copyright Infringement

119.    IBM repeats and realleges the averments in paragraphs 1 through 118, with the same force and effect as though they were set forth fully herein.

120.    As stated, IBM has made contributions of source code to Linux under the GPL.  IBM is, and at all relevant times has been, the owner of valid copyrights in these contributions, as well as of all the rights, title and interest in those copyrights.

121.    IBM holds the following certificates of copyright from the United States Copyright Office (copies of which are attached hereto as Exhibits O - U), among others:

| Registration No. | Date of Registration | Title of Work |
|---|---|---|
| TX 5-757-696 | August 15, 2003 | IBM Enterprise Volume Management System |
| TX 5-757-697 | August 15, 2003 | IBM Enterprise Class Event Logging |
| TX 5-757-698 | August 15, 2003 | IBM Dynamic Probes |
| TX 5-757-699 | August 15, 2003 | IBM Linux Support Power PC64 |
| TX 5-757-700 | August 15, 2003 | IBM Omni Print Driver |
| TX 5-757-701 | August 15, 2003 | IBM Journaled File System |
| TX 5-757-702 | August 15, 2003 | IBM Next Generation Posix Threading |

122.    IBM has placed or caused to be placed a copyright notice on these
contributions of source code to Linux under the GPL and has otherwise complied with the
copyright laws of the United States in this respect.  IBM does not permit the unauthorized
copying of its Linux contributions.

123.    IBM granted SCO and others a non-exclusive license to the above-listed
copyrighted contributions to Linux on the terms set out in the GPL and only on the terms set out
in the GPL.  IBM made these contributions on the condition that users and distributors of its
copyrighted code, including SCO, abide by the terms of the GPL in copying, modifying and
distributing Linux products.

124.    SCO has infringed and is infringing IBM's copyrights by copying,
modifying, sublicensing and/or distributing Linux products except as expressly provided under
the GPL.  SCO has taken copyrighted source code made available by IBM under the GPL,
included that code in SCO's Linux products, and copied, modified, sublicensed and/or
distributed those products other than as permitted under the GPL.  SCO has no right -- and has

never had any right -- to copy, modify, sublicense and/or distribute the IBM copyrighted code except pursuant to the GPL.

125.    As a result of SCO's infringement, IBM has been damaged and is entitled to an award of actual and/or statutory damages pursuant to 17 U.S.C. § 504 in an amount to be proven at trial.  Because SCO's infringement has been willful, deliberate and in utter disregard and derogation of IBM's rights, IBM is entitled to enhanced statutory damages pursuant to 17 U.S.C. § 504.  IBM is entitled to costs and attorney's fees pursuant to 17 U.S.C. § 505.

126.    In addition, IBM is entitled to injunctive relief pursuant to 17 U.S.C. § 502, as SCO will continue to infringe IBM's copyrights in violation of the copyright laws of the United States unless restrained by this Court.  IBM is also entitled to an appropriate order pursuant to 17 U.S.C. § 503.

## NINTH COUNTERCLAIM

### Patent Infringement

127.    IBM repeats and realleges the averments in paragraphs 1 through 126, with the same force and effect as though they were set forth fully herein.

128.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,814,746 ("the '746 Patent"), duly and legally issued on March 21, 1989 to Miller et al., entitled "Data Compression Method".  A copy of the '746 Patent is attached hereto as Exhibit V.

129.    Upon information and belief, SCO has been and is infringing the '746 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including UnixWare and Open Server, that practice one or more claims of the '746

Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

130.    Upon information and belief, SCO will continue to infringe the '746 Patent unless enjoined by this Court.

131.    IBM has been damaged by SCO's infringement of the '746 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

132.    Continued manufacture, use, sale or offer for sale of the infringing products, including UnixWare and Open Server, or evidence that SCO was aware of the '746 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '746 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## TENTH COUNTERCLAIM

### Patent Infringement

133.    IBM repeats and realleges the averments in paragraphs 1 through 132, with the same force and effect as though they were set forth fully herein.

134.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,821,211 ("the '211 Patent"), duly and legally issued on April 11, 1989 to Torres, entitled "Method of Navigating Among Program Menus Using a Graphical Menu Tree".  A copy of the '211 Patent is attached hereto as Exhibit W.

135.    Upon information and belief, SCO has been and is infringing the '211 Patent within this judicial district and elsewhere by making, using, selling, and/or offering to sell products, including SCO Manager, that practice one or more claims of the '211 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

136.    Upon information and belief, SCO will continue to infringe the '211 Patent unless enjoined by this Court.

137.    IBM has been damaged by SCO's infringement of the '211 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

138.    Continued manufacture, use, sale, or offer for sale of the infringing products, including SCO Manager, or evidence that SCO was aware of the '211 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '211 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

### ELEVENTH COUNTERCLAIM

Patent Infringement

139.    IBM repeats and realleges the averments in paragraphs 1 through 138, with the same force and effect as though they were set forth fully herein.

140.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 4,953,209 ("the '209 Patent"), duly and legally issued on August 28, 1990 to Ryder et al., entitled "Self-Verifying Receipt and Acceptance System for

Electronically Delivered Data Objects".  A copy of the '209 Patent is attached hereto as Exhibit X.

141.    Upon information and belief, SCO has been and is infringing the '209 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including UnixWare, that practice one or more claims of the '209 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

142.    Upon information and belief, SCO will continue to infringe the '209 Patent unless enjoined by this Court.

143.    IBM has been damaged by SCO's infringement of the '209 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

144.    Continued manufacture, use, sale or offer for sale of the infringing products, including UnixWare, or evidence that SCO was aware of the '209 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '209 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## TWELFTH COUNTERCLAIM

### Patent Infringement

145.    IBM repeats and realleges the averments in paragraphs 1 through 144, with the same force and effect as though they were set forth fully herein.

146.    IBM is the lawful owner, by assignment, of the entire right, title and interest in United States Patent No. 5,805,785 ("the '785 Patent"), duly and legally issued on September 8, 1998 to Dias et al., entitled "Method for Monitoring and Recovery of Subsystems in a Distributed/Clustered System".  A copy of the '785 Patent is attached hereto as Exhibit Y.

147.    Upon information and belief, SCO has been and is infringing the '785 Patent within this judicial district and elsewhere by making, using, selling and/or offering to sell products, including Reliant HA, that practice one or more claims of the '785 Patent and therefore infringe that patent to the extent such infringing acts have occurred or occur during the effective period of that patent.

148.    Upon information and belief, SCO will continue to infringe the '785 Patent unless enjoined by this Court.

149.    IBM has been damaged by SCO's infringement of the '785 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irrevocable harm unless this Court enjoins SCO from further infringement.

150.    Continued manufacture, use, sale or offer for sale of the infringing products, including Reliant HA, or evidence that SCO was aware of the '785 Patent, shall render SCO liable for willful infringement, as well as active inducement of infringement of the '785 Patent, making this an exceptional case and justifying the assessment of treble damages pursuant to 35 U.S.C. § 284, and the award of attorneys' fees pursuant to 35 U.S.C. § 285.

## THIRTEENTH COUNTERCLAIM

### Declaratory Judgment

151.    IBM repeats and realleges the averments in paragraphs 1 through 150, with the same force and effect as though they were set forth fully herein.

152.    SCO has breached its contractual obligations to IBM, violated the Lanham Act, engaged in unfair competition, interfered with IBM's prospective economic relations, engaged in unfair and deceptive trade practices, breached the GPL, infringed IBM copyrights and infringed IBM patents, as stated above.

153.    Pursuant to 28 U.S.C. § 2201, IBM is entitled to declaratory relief with respect to SCO's and IBM's rights, including among other things a declaration that SCO has violated IBM's rights as outlined above by breaching its contractual obligations to IBM, violating the Lanham Act, engaging in unfair competition, interfering with IBM's prospective economic relations, engaging in unfair and deceptive trade practices, breaching the GPL, infringing IBM copyrights and infringing IBM patents, and is estopped as outlined above.

154.    Moreover, IBM is entitled to a declaration that (1) SCO has no right to assert, and is estopped from asserting, proprietary rights over programs that SCO distributed under the GPL except as permitted by the GPL; (2) SCO is not entitled to impose restrictions on the copying, modifying or distributing of programs distributed by it under the GPL except as set out in the GPL; and (3) any product into which SCO has incorporated code licensed pursuant to the GPL is subject to the GPL and SCO may not assert rights with respect to that code except as provided by the GPL.

155.    There is a justiciable controversy between IBM and SCO with respect to all of the issues described above.

156.    Absent declaratory relief, SCO's misconduct will continue to cause injury to IBM, the open-source community and the public at large.

## PRAYER FOR RELIEF

WHEREFORE, counterclaim-plaintiff IBM prays that this Court enter judgment on the counterclaims in favor of IBM and against SCO:

(a)    awarding IBM compensatory damages;

(b)    awarding damages pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504;

(c)    awarding IBM punitive damages;

(d)    granting IBM treble damages pursuant to 35 U.S.C. § 284;

(e)    granting IBM declaratory relief, including a declaration that (i) SCO has violated IBM's rights as outlined above by breaching its contractual obligations to IBM, violating the Lanham Act, engaging in unfair competition, interfering with IBM's prospective economic relations, engaging in unfair and deceptive trade practices, breaching the GPL, infringing IBM copyrights and infringing IBM patents; (ii) SCO has no right to assert, and is estopped from asserting, proprietary rights over programs that SCO distributed under the GPL except as permitted by the GPL; and is not entitled to impose restrictions on the copying, modifying or distributing of programs distributed by it under the GPL except as set out in the GPL; and (iii) any product into which SCO has incorporated code licensed pursuant to the GPL is subject to the GPL and SCO may not assert rights with respect to that code except as provided by the GPL.

(f)     granting IBM injunctive relief, enjoining and restraining SCO and its affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors and assigns and all others persons acting in concert with them, from further violating IBM's rights as described above, including in particular from (i) misrepresenting SCO's rights and IBM's rights to Unix technology, such as that SCO can, will or has in fact revoked IBM's right to use Unix, (ii) misrepresenting that IBM no longer has the right, authority and license to use, produce and distribute AIX, Dynix and IBM's Linux-related products; (iii) publishing false and disparaging statements about AIX, Dynix and IBM's Linux-related products; (iv) engaging in further acts of unfair competition; (v) claiming certain ownership rights over programs made available under the GPL; (vi) engaging in unfair and deceptive trade practices; (vii) further infringement of IBM's copyrights; and (viii) further infringement or inducement of infringement of the '746, '211, '209 and '785 Patents;

(g)     awarding IBM costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), Utah Code Ann. § 13-24-5, N.Y. Gen. Bus. Law § 349(h), and 17 U.S.C. § 505;

(h)     awarding IBM pre- and post-judgment interest on the damages caused to IBM as a result of all wrongful acts alleged herein; and

(i)     granting IBM such other and further relief as this Court deems just and proper, including costs, disbursements and reasonable attorneys' fees.

## JURY DEMAND

IBM demands a trial by jury on all issues so triable.

DATED this 25th day of September, 2003

SNELL & WILMER LLP

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Thomas G. Rafferty
David R. Marriott

*Counsel for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES
CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York  10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2003, a true and correct copy of the

foregoing **COUNTERCLAIM-PLAINTIFF IBM'S AMENDED COUNTERCLAIMS**

**AGAINST SCO** was delivered to the following by U.S. Mail, postage prepaid:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> David Boies
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Leonard K. Samuels.
> Fred O. Goldberg
> BERGER SINGERMAN
> 350 East Las Olas Boulevard, Suite 1000
> Fort Lauderdale, Florida 33301

268116.1                                    40

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.