Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER L.L.P.
100 Southeast Second Street
Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for Plaintiff The SCO Group, Inc.*

FILED
CLERK, U.S. DISTRICT COURT

23 OCT 03 PM 4: 54

DISTRICT OF UTAH

BY:_____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br>a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES<br>CORPORATION, a New York corporation,<br><br>Defendant. | **PLAINTIFF'S MEMORANDUM<br>OF LAW IN OPPOSITION TO<br>IBM'S MOTION TO COMPEL<br>DISCOVERY**<br><br>Case No. 03-CV-0294<br><br>Hon: Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

The SCO Group ("SCO") submits this memorandum of law in opposition to International

Business Machines Corporation's ("IBM") Motion to Compel Discovery.

*55*

## INTRODUCTION

It has been said that things have both an ostensible and a real reason. Ostensibly, IBM filed its Motion to Compel to force SCO to answer interrogatories and produce documents because it had failed to do so. The reality, however, is that SCO not only timely responded to IBM's discovery requests, it then engaged in weeks of lengthy conversation, correspondence, and emails to resolve and clarify discovery issues and ultimately agreed to supplement its responses. But supplemental responses were not all that IBM was seeking. If that were the case, IBM would have waited until today, when supplemental responses were promised and were in fact served. No, what IBM really desired was a forum within which it could construct its stilted and inaccurate mischaracterization of SCO's claims, behind which it could hide its own failure and refusal to provide meaningful discovery responses. As detailed below, IBM's motion is without merit and should be denied.

At its core, IBM's Motion to Compel Discovery asks for answers to interrogatories that fit its own mischaracterized theories of the case, rather than answers that relate to the actual allegations made by SCO in the Complaint. IBM's baseless arguments begin as an effort to smear SCO and end with a newly created justification of why IBM has failed to provide any meaningful discovery responses itself. While IBM's improper litigation tactics are discussed in detail below, the Motion to Compel can be denied on the simple basis that SCO has actually provided supplemental answers, pursuant to earlier agreement, and this motion is therefore moot.

## THE LAWSUIT

Contrary to IBM's efforts to recast SCO's Amended Complaint as one limited to trade secret violations, the Amended Complaint contains six counts—the first three counts are for IBM's numerous breaches of licensing agreements. The remaining counts, including Count VI for

185647                                           2

misappropriation of trade secrets, flow from this transgression and are ancillary to the breach of the license agreements. Thus, notwithstanding IBM's mischaracterization, trade secret misappropriation is not the gravaman of the Complaint (IBM Mem., p. 2), but it is merely one count that recasts one aspect of the injuries caused by IBM's breach. These injuries would exist even in the absence of any trade secret misappropriation.

In its Amended Complaint, SCO alleged that IBM and Sequent (now part of IBM and hereinafter collectively referred to as IBM) were licensees of UNIX System V source code ("UNIX"). As part of this license grant, IBM was given certain rights and also agreed to certain restrictions upon its use of UNIX. IBM agreed, for example, that UNIX code and methods would be solely for its own internal business purposes (§ 2.01),[1] that UNIX code and methods would not be used for others or by others (§ 2.05), and that IBM would maintain the code and methods related thereto in confidence (§ 7.06). Similarly, IBM further agreed it would not sell or otherwise dispose of UNIX in whole or in part (§ 7.10). Significantly, IBM also agreed that any modifications or derivative works of UNIX prepared by IBM, would be treated by IBM "as part of the original Software Product." (§ 2.01). Thus, all of the foregoing restrictions on UNIX also apply equally to any modifications or derivative works created by IBM.[2]

Pursuant to these restrictions, IBM agreed that AIX, IBM's "own version of UNIX" (IBM Mem., p. 2 n.1), and Dynix, Sequent's version of UNIX, would be used solely for internal business purposes, would be maintained in confidence, and would not be disposed of in whole or in part. IBM, contrary to these clear and unambiguous limitations on its use of UNIX, including

---

[1] All references are to the Software Agreement executed by IBM and attached to the Amended Complaint as Exhibit A.
[2] These restrictions are fundamental to any license for software. In the absence of such restrictions and the ability to enforce them, a licensee can simply modify or rewrite code and then give it away thereby eliminating any value of the original source code. Thus, there can be little doubt that the gravaman of SCO's Complaint arises out of these critical restrictions on the use of the software and modifications and derivative works thereof.

modifications and derivatives thereof, has publicly touted its contributions of AIX and Dynix into Linux, the free, "open source" operating system that IBM has heavily supported, both financially and technologically.[3]   Specifically, IBM improperly contributed these protected UNIX materials into the Linux 2.4 and 2.5 kernels (in lay terms, the "brain" of the operating system)—a decidedly public disposition of these protected materials.     This  action  is  a  clear  breach  of  IBM's obligations under the agreements with SCO governing the use of UNIX, and derivatives such as AIX and Dynix.

**IBM'S MOTION**

IBM's Motion begins with a seven page "preliminary" statement that makes unfounded attacks on SCO and its counsel. This gratuitous commentary was inserted by IBM in the apparent hope that innuendo and sniping may add weight to its motion.    IBM begins by claiming "SCO has obfuscated its claims to foster fear, uncertainty and doubt about its rights and the rights of others." (IBM Mem., p. 3).  In fact, SCO has done nothing other than assert its contractual and legal rights.[4]  IBM then incorrectly attributes as a purported quote from SCO's counsel that SCO "doesn't want IBM to know what they [SCO's substantive claims] are."  Even a casual review of the article IBM relies upon (IBM Mem., Exh. C) reveals that no such statement was made by SCO's counsel.  Indeed, the one paragraph "article" is nothing more than a gripe by a reporter who failed to obtain information from counsel about the case.  More importantly, SCO's counsel,

---

[3] The Amended Complaint details IBM's repeated boasting of how it has contributed the protected materials to Linux. *See, e.g.,* Amended Complaint, ¶¶ 91, 93-97.

[4] It is particularly rich irony to witness IBM complain about the sowing of "fear, uncertainty, and doubt," given that the term originated from IBM's tactics.  "Defined by Gene Amdahl after he left IBM to found his own company: 'FUD is the fear, uncertainty, and doubt that IBM sales people instill in the minds of potential customers who might be considering Amdahl products.' The idea, of course, was to persuade buyers to go with safe IBM gear rather than with competitors' equipment. This implicit coercion was traditionally accomplished by promising that Good Things would happen to people who stuck with IBM, but Dark Shadows loomed over the future of competitors' equipment or software." From The Jargon File available at http://catb.org/~esr/jargon/html/F/FUD.html.

through communication with IBM's counsel and through its Amended Complaint, has made perfectly clear to IBM what its substantive claims are. That IBM chooses to ignore the statements and the actual claims detailed in the Amended Complaint does not give rise to a motion to compel.[5]

The "Preliminary Statement" repeats over and over that SCO purportedly has failed to answer the series of questions arising from the "trade secrets and any confidential or proprietary information that Plaintiff alleges or contends IBM misappropriated or misused." SCO, however, previously provided appropriate answers. Nonetheless, SCO has filed supplemental answers to interrogatories, served today consistent with its agreement to do so, which specify the source code files that contain the information IBM and Sequent agreed to maintain as confidential and proprietary. Much of this information was developed by IBM and Sequent and, pursuant to their license agreements with SCO, both IBM and Sequent agreed it would be held as confidential. As a result, some of the information IBM requested will be known only to IBM, so the specifics of who at IBM was involved with improperly contributing this code to the public, how they did so, and the like will not be known until SCO gets the information from IBM, the party who contributed the protected materials in violation of its contractual obligations.

Such a situation does not create grounds to grant a motion to compel. As the court explained in a case cited by IBM, *O'Connor v. Boeing N. Am., Inc.* 185 F.R.D. 272, 281 (C.D. Cal. 1999), a toxic tort case, "the clear inference from the response is that [respondents] do not yet

---

[5] Indeed, in the conference calls with counsel that lasted hours, IBM's counsel was told repeatedly about the basis of the claims. In fact, when directed to the pertinent allegations of the Complaint detailing IBM's improper contributions to Linux, the response was that IBM's counsel lacked the technical proficiency to determine if the answers were sufficient. The answers are sufficient. The Amended Complaint and the prior answers detail the critical contributions by IBM to Linux, including NUMA (Non-Uniform Memory Access) and RCU (Read Copy Update). These technologies improperly contributed to Linux by IBM allowed Linux to make the quantum leap into high-end corporate enterprise use; a place it did not and could not occupy before IBM's unlawful contributions.

185647                                          5

know exactly how they were exposed to contaminants, but exposure occurred. When additional information is known to [respondents], they must supplement their response under Rule 26(e)." Likewise, SCO is presently attempting to ascertain, through the interrogatories and requests for production it has propounded to IBM, the associated background information and details that it needs to prepare its case as well as to fulfill IBM's request. Thus, to the extent certain portions of the answers are not currently available, they can be supplemented upon receiving the information from IBM, the party that improperly made the contributions to Linux in violation of its obligations to SCO and the party that presumably can identify who at IBM made the unlawful contributions to Linux, to whom they were made, when they were made, and other related details. To date, however, IBM has failed to provide this information, despite its agreement and obligation to do so.

As noted earlier, because SCO long ago indicated it would supplement its answers to interrogatories, IBM's motion should be denied as premature. Having provided the supplemental answers, IBM's motion is also rendered moot. Under these circumstances, normally there would be no further reason to address any of the remaining statements in IBM's memorandum. Here, however, IBM has advanced two arguments that so egregiously distort the facts and circumstances of this case that SCO is forced to respond.

## 1. IBM's Characterization of the Presentation at the SCO Trade Show is False and Misleading.

Throughout its memorandum, IBM makes repeated reference to SCO's trade show and a particular presentation about SCO's contractual rights made at that trade show. IBM incorrectly asserts that during that presentation, SCO identified "four categories of alleged 'misappropriation' by IBM: (1) literal copying; (2) derivative works; (3) obfuscation; and (4) non-literal transfers." (IBM Mem., p. 6)(parentheticals omitted). The slides from the SCO Forum trade show relied

185647                                        6

upon by IBM (IBM Mem.,  Exhibit F), corroborate that SCO has not publicly made any such allegation against IBM.  Slide 8, which is the only one to contain the terms "literal copying," "derivative works," "obfuscation," and "non-literal transfers" does not mention IBM, or indeed anyone else.  In fact, Slide 8 does not mention trade secrets at all, but rather illustrates SCO's bases for a potential copyright infringement action.   What makes IBM's use of this trade show material particularly misleading to this Court is that the code in question identified by SCO at the trade show and elsewhere was code from a licensee other than IBM.  In fact, it was widely reported after the trade show that the example of improperly contributed code was from SGI, which has since publicly acknowledged its improper contribution   It is inconceivable that IBM is unaware that the code identified by SCO in its presentation was from SGI, not IBM.   In any event, as code contributed by another licensee, it should be obvious to IBM that, despite its demands for this code, the identity of such code is not responsive to any of IBM's interrogatories

**2.   IBM's Claim it Will Not Respond to Discovery Until it Receives Supplemental Answers is Belated and Improper.**

Most problematic is IBM's claim that it cannot respond to discovery until SCO supplements its answers to interrogatories.  SCO's discovery requests directed to IBM have been outstanding for four months.  Raised for the first time in this motion, IBM's manufactured excuse for failing to respond is absurd and contrary to its previous representations that it will provide the discovery requested.

Now, after mischaracterizing the breadth of SCO's complaint as detailed above, IBM suddenly claims "[w]hether a given document ultimately will be responsive to SCO's extensive requests turns on which trade secrets SCO identifies as being at issue in this case." (IBM Mem., p 18).  No, it does not.  The example used by IBM to support its recently created excuse for not

providing any additional documents since October 2, 2003, makes clear that whatever may be a trade secret does not limit IBM's obligations to provide full and fair discovery responses. Specifically, IBM points to SCO's Document Request number 11 and claims it needs guidance on the trade secret issue before it can respond. Request 11 is as follows: "All contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity." There is nothing on the issue of trade secrets that this Court needs to "clarify" for IBM to produce this information. As noted earlier, IBM contractually agreed to maintain certain information as confidential and proprietary. That includes all of UNIX System V, UnixWare, IBM's version of UNIX, called AIX, and Sequent's version of UNIX, called Dynix. IBM cannot unilaterally alter SCO's claims by pretending the clear and unambiguous allegations in the Complaint and contractual obligations detailed therein do not exist. IBM must provide the requested documents and cannot avoid or alter its production obligation through the filing of a Motion to Compel that improperly seeks to alter the claims as pleaded by SCO.

## CONCLUSION

Based on the fact that SCO voluntarily supplemented its answers and that IBM's Motion to Compel is premature and wholly inaccurate, SCO respectfully requests that this Court deny IBM's Motion to Compel.

Respectfully submitted,

DATED this 23rd day of October, 2003.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Stephen N. Zack
Mark J. Heise

By: _____

*Counsel for Plaintiff/Counterclaim defendant*

9

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc. hereby certifies that a true and correct copy of

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO IBM'S MOTION TO**

**COMPEL DISCOVERY** was served on Defendant International Business Machines Corporation

on this 23rd day of October, 2003, by hand delivery and U.S. Mail, first class, postage prepaid, on

their counsel of record as indicated below:

Copies by Hand Delivery:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004


Copies by U.S. Mail to

Evan R. Chesler, Esq.
David R. Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604


_____

185647                                          10