Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (pro hac vice)
Mark J. Heise (pro hac vice)
BOIES, SCHILLER & FLEXNER L.L.P.
100 Southeast Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff The SCO Group, Inc.*

FILED
CLERK, U.S. DISTRICT COURT
-4 NOV 03 PM 5: 10
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>Defendant. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL**<br><br>**Case No. 2: 03-CV-0294DK**<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff The SCO Group, Inc. ("SCO"), submits this Memorandum in Support of its Motion to Compel. The motion to compel centers around four core categories of discovery that IBM has refused to produce or has produced inadequately: (1) source code for *all* of IBM's versions of

67

UNIX (known as "AIX"), together with *all* notes and documentation for the software development methods used in the design and modification process; (2) source code for *all* of Sequent's version of UNIX (known as "Dynix"), together with *all* notes and documentation for the software development methods used in the design and modification processes; (3) *all* contributions by IBM to Linux; and (4) proper identification of the approximate 7,200 potential witnesses identified by IBM. IBM's discovery responses address only part of the information requested. Complete discovery responses should be required of IBM without further delay.

IBM also has failed to respond adequately to several additional requests for production and interrogatories not identified in this motion to compel. Plaintiff is awaiting responsive documents IBM has agreed to provide and, if not provided, will meet and confer about deficient outstanding discovery requests before moving to compel with respect to those additional discovery requests.

## STANDARD OF REVIEW

Relevancy is construed more broadly during discovery than at trial. *Centurion Industries, Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 326 (10th Cir. 1981). During discovery, a request "should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party," *Sheldon v. Vermonty*, 204 F.R.D. 679, 690-691 (D.Kan. 2001) (internal citations and quotations omitted), and should be allowed "unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Id.* In other words, if a request for discovery *appears* relevant, "the party resisting discovery is obligated to show the requested discovery is outside the scope of Rule 26(b)(1) or is of such marginal relevance that the liberal disclosure required by Rule 26 is outweighed by the potential harm of disclosure." *City of Wichita v. Aero Holdings*, 192 F.R.D. 300, 302 (D.Kan. 2000).

Likewise, a party claiming that a request for discovery is unduly burdensome has the obligation "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure which would be required to provide the requested information" to enable the Court to make an appropriate determination. *Airport Systems Intl', Inc., v. Airsys ATM, Inc.*, 2001 WL 1718274 at *8 (D.Kan. May 16, 2001). In this regard, courts have observed that a business entity "may retain millions of documents in various locations, yet have the ability readily and economically to locate documents either about a specific topic of from which the absence of such information may be assumed." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 1998 WL 231135 (D.Kan. May 6, 1998).

Similarly, a party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. *Airport Systems Intl', Inc., v. Airsys ATM, Inc.*, 2001 WL 1718274 at *9 (D.Kan. May 16, 2001). It may do so, for example, by describing the different meanings it perceives the term or terms to have, and how the alternative meanings may have caused its confusion. *Id.* It cannot simply assert that responding to the document request is unduly burdensome. *Id.* at *8.

## ANALYSIS OF DEFICIENT RESPONSES

The following responses by IBM are deficient:

**Request No. 2**

> **All versions or iterations of AIX source code, modifications, methods and/or derivative works from May 1999 to the present, including but not limited to version 4.3 and above.**

**IBM's Response:**

> In addition to the foregoing objections, IBM objects specifically to this Request on the grounds that it is overbroad and unduly burdensome. IBM also objects to this

> Request on the grounds that it is vague, ambiguous, and unintelligible with respect to the phrase "modifications, methods, and/or derivative works". Subject to, as limited by, and without waiving the foregoing general and specific objections, ***IBM will produce a copy of the source code for AIX version 4.3.3 and AIX version 5.2*** [emphasis added].

In addition to this formal discovery response, IBM delivered a letter to Plaintiff's counsel on October 10, 2003, attempting to further qualify its formal discovery responses. To provide a complete record and to avoid potential claims of waiver by IBM related to the subject matter of each discovery request, Plaintiff has included the relevant portions of that letter in this motion to compel. With respect to Request No. 2, IBM's October 10, 2003 letter states as follows:

**IBM's Oct. 10, 2003 letter**:

> My e-mail to you of October 8 addressed the open issues regarding these requests. As detailed in that note, IBM will commence production of source code for the AIX and Dynix base operating systems once the process for notification of third parties (as specified in Paragraph 10 of the Stipulated Protective Order) is exhausted. Response to Requests Nos. 2 and 3.

**Deficiency**:

IBM has created numerous different versions of AIX during the requested time frame, but it offers to produce only the final "base operating systems" for versions 4.3.3 and 5.2. This is inadequate. IBM licensed UNIX System V from AT&T in 1985. Pursuant to license terms, it was entitled to create derivative works and modifications based on UNIX System V technology, "provided that the resulting materials are treated as part of the original [UNIX System V] Software Product." [Software Agreement §2.01.] It is undisputed that IBM created derivative works and modifications of UNIX System V known in the industry as "AIX." Plaintiff contends that IBM failed to treat AIX as required under the Software Agreement by, among other things, contributing source code and confidential methods for developing UNIX / AIX to Linux. This is a central issue

in the case. *See, e.g.*, ¶¶ 91-97, 110-115 of Plaintiff's Amended Complaint. Plaintiff is entitled to the production of *all* modifications and versions of AIX created over the years in order to analyze the ways in which AIX has changed and the ways in which its structures, methods and information based on UNIX have evolved. The evidence adduced from this discovery is likely to identify evidence of infringement and/or contract violations by IBM by improper contributions of such items to Linux. IBM is apparently trying to avoid this critical discovery by purporting to produce only the "base operating systems" of AIX versions 4.3.3 and 5.2.

IBM further claims, in its October 10, 2003 letter, that a "third-party notification process" must be exhausted before it will turn over the relevant source code. It was clear to both parties, from the beginning of this case, that it would be necessary to run various source code comparisons, including AIX and Dynix code. These are lengthy and detailed processes, and need to begin as soon as possible. In IBM's response filed over two and one-half months ago on August 13, 2003, it referenced the need to obtain third party consents. On September 15, 2003, after repeated inquires by SCO, IBM again mentioned the need for "a substantial number of third-party notifications prior to production." On October 1, 2003, IBM represented that "[w]e're working on that process [of third-party notifications] now." Further prodding by SCO has revealed that IBM did not begin the process of notifying third parties until some time during the week of October 21. As a result, IBM now claims that it cannot turn over the code it promised in August until Thanksgiving. The Court should order IBM to identify and produce all versions and modifications of AIX from May 1999 to the present date, including development and design methods of AIX and notes relating thereto, without further delay.

**Request No. 3**

> **All versions or iterations of Sequent Dynix source code, derivative works, modifications, and/or methods from January 1999 to the present.**

**IBM's Response:**

> In addition to the foregoing objections, IBM objects specifically to this Request on the grounds that it is overbroad and unduly burdensome. IBM also objects to this Request on the grounds that it is vague, ambiguous, and unintelligible with respect to the phrase "modifications, methods, and/or derivative works". Subject to, as limited by, and without waiving the foregoing general and specific objections, *IBM will produce a copy of the source code for the base operating system of Dynix Version 4.1.10, Dynix Version 4.5.3, and Dynix Version 4.6.1* [emphasis added].

**IBM's Oct. 10, 2003 letter:**

> My e-mail to you of October 8 addressed the open issues regarding these requests. As detailed in that note, IBM will commence production of source code for the AIX and Dynix base operating systems once the process for notification of third parties (as specified in Paragraph 10 of the Stipulated Protective Order) is exhausted. Response to Requests Nos. 2 and 3.

**Deficiency:**

The same deficiencies found in IBM's response to Request No. 2 also apply here. "Dynix" is a software operating system developed by Sequent Computer Company ("Sequent") that is also a modification and derivative work based on UNIX System V. Sequent licensed UNIX System V technology from AT&T in 1986. IBM has since merged with Sequent, and became obligated under the Sequent Software Agreement with respect to its use and treatment of Dynix. Pursuant to the licensing provisions of the Software Agreement, Sequent also was entitled to make modifications and derivative works based on UNIX System V, again "provided that the resulting materials are treated as part of the original [UNIX System V] Software Product" under the Software Agreement. Plaintiff contends that IBM failed to treat Dynix as required under the Software Agreement by, among other things, contributing source code and confidential methods for developing UNIX /

Dynix to Linux. This is a central issue in the case. *See, e.g.*, ¶¶ 139, 141-144 of Plaintiff's Amended Complaint. Plaintiff is entitled to production of *all* modifications and versions of Dynix created over the years to analyze the ways in which Dynix has changed and the ways in which its structures, methods and information based on UNIX have evolved. The evidence adduced from this discovery is likely to identify evidence of infringement and/or contract violations by IBM. IBM is apparently trying to avoid this critical discovery by purporting to produce only the "base operating systems" of Dynix versions 4.1.10, 4.5.3 and 4.6.1. The Court should order IBM to identify and produce all versions and modifications of Dynix from January 1999 to the present date, including development and design methods of Dynix and notes relating thereto, without further delay.

**Request No. 11**

> **All contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity.**

**Response:**

> In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. The Request seeks "contributions" unrelated to UNIX System V source code. IBM also objects to this Request on the grounds that it is vague and ambiguous in its use of the phrase "any other entity," and it is vague, ambiguous, and unintelligible in its use of the terms "derivative works, methods, and modifications." IBM further objects to this Request on the grounds and to the extent that open-source contributions made by IBM *are publicly available* and as accessible to plaintiff as to IBM. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM, after a search of reasonable scope, will produce non-privileged documents, if any, responsive to this Request *relating to UNIX System V source code* [emphasis added].

**IBM's October 10, 2003 letter**:

> Your request, even as narrowed, remains overly broad and unduly burdensome. Until SCO specifies the wrongful contributions IBM has allegedly made to Linux in violation of SCO's alleged confidentiality rights, it is very difficult to make a reasonable assessment as to the proper scope of discovery in this case. In the absence of that clarification, we have nevertheless attempted to conduct a reasonable search for documents that relate to IBM's open-source contributions to Linux. The vast majority of those contributions are made through the LTC; the OSSC is the corporate clearinghouse for those contributions. Our searches to date have thus included individuals on both of those groups, as well other potential sources of documents relating to IBM's contributions to Linux that have come to our attention. We are not limiting our searches to any particular geographic area—indeed, they have already included individuals residing in Beaverton, OR, Austin, TX, and a variety of other IBM locations. Our efforts to identify and collect documents responsive to this request are continuing, and we believe will be facilitated by adequate answers to our interrogatories. Response to Request No. 11.

**Deficiency**:

This response is deficient for two reasons. First, it is not proper to withhold production of IBM's contributions to Linux on the grounds that such contributions are publicly available because only contributions actually incorporated into Linux are publicly available. *All* contributions made or offered by IBM to Linux, some of which are publicly available and some of which are not, need to be identified in order to properly trace IBM's Linux-related activities and the ways in which it has infringed and/or breached its obligations to Plaintiff through the Linux development process.

The second deficiency in IBM's response is far more problematic. IBM states that it will produce UNIX System V source code contributed by IBM to Linux. This is not responsive to the request and is unduly restrictive with respect to the issues in the case. IBM is obligated under its contract to treat both AIX and Dynix as part of the original System V Software Product. Contributions to the public by IBM of AIX and Dynix source code and methods related to development thereof are violations of contract and/or infringing conduct. IBM is not legally

- 8 -

entitled to limit the scope of this case by producing only documents that match its own theories or defense of the case. Consistent with the allegations made against IBM, it should be required to identify and produce *all* of its contributions and development work in Linux.

**Interrogatory No. 2**

> **List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues of this lawsuit; and specify the subject matter about which the witness has knowledge.**

**IBM's Response**:

> In addition to the foregoing general objections, IBM objects specifically to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and does not identify with reasonable particularity the "issues of this lawsuit." Based upon the general allegations of plaintiff's complaint, many thousands of current and former employees of plaintiff, IBM, AT&T, USL, Novell, and The Santa Cruz Operation could have knowledge about this lawsuit. Until plaintiff identifies with specificity the code or other alleged trade secrets or confidential information which it claims IBM misappropriated, IBM is unable to determine fully which persons have knowledge concerning "the issues of this lawsuit". Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM provides, **as Attachment A, the names of current and former IBM officers and employees who may have knowledge concerning certain issues in this lawsuit, and specifies the subject matter about which each person may have knowledge.** A current business address is provided for current IBM officers and employees, and the last known home address, if available, is provided for former IBM employees. The names of current IBM officers and employees are underlined, and any communications with those persons should be made only through IBM counsel. IBM's First Supplemental Responses and Objections to SCO's First Set of Interrogatories [emphasis added].

**Deficiency**:

This response is inadequate. The interrogatory asks for the identity of *all* persons with knowledge, yet Attachment A lists only IBM employees and former employees. This effort to limit the scope of the question is contrary to IBM's original answer, particularly since the parties agreed to waive the Rule 26 disclosures of such information because each side had asked for that

information in discovery. In its original answer, IBM stated, among other things, that it "will identify persons who are known by IBM to have discoverable information . . . ."[1] The parties then had an extensive discussion about this interrogatory and other items, which was followed by various letters and e-mails. In that correspondence, IBM discussed that it had "undertaken to identify IBM officers and employees believed to have knowledge about the issues in this lawsuit and expect to amend our answer to this interrogatory as soon as practicable."[2] It was thus believed that these persons at IBM would be contacted and a responsive answer submitted. In a follow-up letter, SCO mentioned that it was expecting the identity of each of the officers and directors that would have knowledge.[3] At that point, there had been a question of whether IBM's answers would include directors, which IBM clarified that it would. From that point, however, IBM has taken the position that it need only identify current and former employees of IBM with knowledge of the case. That view is incorrect. Rather, just as SCO did when it provided its supplemental answer to a similar question, IBM needs to supplement Attachment A to include non-IBM persons.

An additional defect is that Attachment A omits persons obviously known by IBM to have knowledge of the issues of this case, for example, IBM's CEO, Sam Palmisano. Mr. Palmisano is publicly identified as one of IBM's key Linux advocates. A serious question exists as to which other IBM persons, besides Mr. Palmisano, have been improperly omitted from the designation in Attachment A.[4]

---

[1] Initial answers attached as Exhibit ___.
[2] See page 9 of Letter dated September 15, 2003 attached as Exhibit ___
[3] See page 6 of Letter dated September 22, 2003 attached as Exhibit ___.
[4] It does not appear that IBM's supplemental answer includes any directors of IBM, the very subject of the repeated calls and correspondence.

**Interrogatory No. 4**

> **Identify all persons who have or had access to UNIX source code, AIX source code and Dynix source code, including derivative works, modifications, and methods. For each such person, set forth precisely the materials to which he or she had access.**

**IBM's Response:**

> In addition to the foregoing general objections, IBM objects specifically to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. IBM also objects to this Interrogatory on the grounds that the phrase "derivative works, modifications, and/or methods," as used in this Interrogatory, is vague, ambiguous, and unintelligible. IBM further objects to this Interrogatory as overbroad to the extent it seeks the identification of "all" persons who have had access to the subject source code and information. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM provides the following, based upon a reasonable search of IBM's records: a list of persons (including current and former IBM employees, IBM contractors and employees of IBM vendors) who may have or may have had access either to AIX source code or to AIX change and fix records (**Attachment B**); a list of persons at IBM who may have current access to Dynix code (**Attachment C**); and a list of persons (current and former IBM employees) who may have or may have had access to Unix System V source code (**Attachment D**). IBM's First Supplemental Responses and Objections to SCO's First Set of Interrogatories [emphasis added].

**Deficiency:**

IBM's response is inadequate because it fails to provide information sufficient to evaluate the list of names it provided. Attachment B is an alphabetical list of over seven thousand names, without more. IBM needs to provide the same level of detail, including contact information, about the persons identified in Attachment B as is contained in Attachment A to the extent such information is in IBM's possession, custody or control. Without such information, Plaintiff cannot meaningfully evaluate the identities of the approximately 7,000 persons listed in Attachment B. Attachment D suffers from the same deficiency as Attachment B—that is, the same level of detail provided in Attachment A should also be provided in Attachment D, to the extent such information

is in IBM's possession or control. Attachment C suffers from the same deficiency as Attachments B and D, but also has an additional deficiency in that it is limited to *current* IBM employees. IBM merged with Sequent Computer Company in or about 1999-2000. Therefore, it has in its possession, custody or control the business records of Sequent and should be able to fully respond to this interrogatory. Plaintiff is entitled to discovery that discloses the identity of all current *and former* IBM / Sequent employees who had access to Dynix.

**Interrogatory No. 5**

> **Identify all IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, specifying for each person their precise contributions to each.**

**IBM's Response:**

> In addition to the forgoing general objections, IBM objects specifically to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. IBM also objects to this Interrogatory on the grounds that the phrase "derivative works, modifications, and/or methods," as used in this Interrogatory, is vague, ambiguous, and unintelligible. IBM further objects to this Interrogatory as overbroad to the extent it seeks the identification of "all" persons who have worked on developing the subject source code and information. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM provides the following, based upon a reasonable search of IBM records: a list of persons (including current and former IBM employees, IBM contractors and employees of IBM vendors) who may have or may have had access either to AIX source code or to AIX change and fix records (**Attachment B**); a list of persons at IBM who may have current access to Dynix code (**Attachment C**); and a list of persons (including current and former IBM employees) who may have made contributions to Linux (**Attachment E**). IBM's First Supplemental Responses and Objections to SCO's First Set of Interrogatories.

**Deficiency:**

This interrogatory did not request IBM to list persons who had *access* to source code, as did Interrogatory No. 4, but rather those who "*work or worked on developing source code, derivative*

*works, modifications or methods for AIX, Dynix and Linux.*" The lists may overlap to the extent, for example, that someone who is developing code for AIX would necessarily have access to some AIX source code, but it does not necessarily follow that all persons who had access to AIX source code actually worked on its development. Since the lists are, by definition, not coextensive, Attachments B and C are deficient.

Attachment B is a list of approximately seven thousand names, in alphabetical order. IBM describes this list as containing the names of persons "who may or may have had access" to AIX source code. It says nothing about the files to which they contributed, nor does it provide any contact information. Attachment C is a list of fifty-one names, in alphabetical order. IBM describes this list as containing the names of persons "who may have current access to Dynix code." It says nothing about the files to which they contributed, nor does it provide any contact information. Attachment E, although closer to the mark, is also deficient. It lists the names of approximately two hundred and sixty persons, also in alphabetical order, "who *may* have made contributions to Linux." (emphasis added). The list does not specify to which files these persons contributed, if any, nor does it provide any contact information.

The referenced attachments provide no other information than the names themselves. They are not responsive to the most important part of the interrogatory, and as such they are nearly useless as a starting point for further discovery.

## CONCLUSION

For the foregoing reasons, SCO respectfully requests that IBM fully and completely respond to the identified discovery requests.

DATED this 4th day of November, 2003.

Respectfully submitted,

By: *[signature]*

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Stephen N. Zack
Mark J. Heise

*Counsel for Plaintiff/Counterclaim defendant*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc. hereby certifies that a true and correct copy of

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL** was served on Defendant International Business Machines Corporation on this 4th day of November, by Hand Delivery and U.S. Mail, first class, postage prepaid, on their counsel of record as indicated below:

Copies by Hand Delivery:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004

Copies by U.S. Mail:

Evan R. Chesler, Esq.
David R. Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604