FILED
.... .. DISTRICT COURT

24  NOV 03 PM 4: 55

DISTRICT OF UTAH

BY:_____
  DEPUTY CLERK

Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
David K. Markarian (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Ste. 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, | **PLAINTIFF SCO'S MEMORANDUM IN OPPOSITION TO IBM'S SECOND MOTION TO COMPEL DISCOVERY** |
| Plaintiff, | |
| v. | Case No. 2:03CV0294DAK |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |
| Defendant. | |



Plaintiff, The SCO Group, Inc. (SCO"), files its Memorandum of Law in Opposition to Defendant International Business Machines Corporation's ("IBM") Second Motion to Compel Discovery and in support states:

## I.   IBM Failed To Meet and Confer in Good Faith Before Filing its Motion to Compel

IBM's motion to compel fails to comply with this Court's strict procedural requirement of conferring in good faith to attempt to resolve the discovery dispute without court intervention. Rule 37-1(a) of this Court's local rules specifically requires reasonable efforts to reach agreement with the opposing party on the matters set forth in the motion, and to set forth a specific recitation of time, date and place of, and the identity of all counsel involved in such efforts.  Without that, "the court will **not** entertain any discovery motion."  IBM has ignores this procedural requirement.

IBM, according to its "Certificate of Compliance with Rule 37(a)(2)(A)", attached hereto as Appendix "A," admits that it has *never discussed Interrogatories 12 and 13 with SCO's counsel.* Specifically, IBM states that "[c]ounsel for the parties did not specifically discuss Interrogatory nos. 12 and 13 because, at that time, SCO had not yet answered these interrogatories." *Id.* at pp. 2-3.   Having *never* discussed the two interrogatories, it is clear that no effort to resolve the issue occurred before IBM filed its second motion to compel.  Based on the lack of compliance, IBM's motion should not be entertained by this court.  *See* Rule 37-1(a).

IBM seeks to excuse its lack of compliance with the Rule by claiming that consultation occurred long ago with regard to three interrogatory answers from a *prior set of discovery* (Defendant's First Set of Interrogatories) that were incorporated in the latest answers.   IBM's attempt to bootstrap failed efforts to resolve an earlier discovery dispute as purported good faith efforts to resolve this *subsequent* discovery issue should be rejected.

1

First, since the time of those earlier discussions, SCO has voluntarily supplemented and revised its prior answers to the relevant interrogatories. As a result, IBM's concerns or criticisms directed to the *original* answers to the earlier interrogatories cannot be considered a good faith conference when the answers to Interrogatories 12 and 13 incorporate SCO's *revised and supplemental* responses to the earlier interrogatories.

Second, IBM's instant motion to compel raises issues beyond interrogatories 12 and 13 of Defendant's Second Set of Interrogatories, for which IBM also did not comply with the meet and confer provisions of DUCivR 37-1. For example, IBM's motion also raises SCO's purported "fail[ure] to produce to IBM important categories of documents that it could have produced months ago". *Id.* at p. 2, attached as Appendix "A". Although not referenced in IBM's certificate, a conversation took place in which each side asked for the production of certain documents on a more expedited basis. The top of both parties' list of documents desired from the other was the production of source code. Although SCO had produced millions of lines of requested source code, IBM complained of the format in which it had received code. Despite the fact that IBM received code in exactly the format it had requested (at great expense to SCO), SCO also agreed to provide the code in the newly requested format. In fact, since the time of that request, SCO has sent scores of CDs containing the requested source code in the format requested by IBM. In return, IBM has yet to provide a single line of requested source code.

SCO has provided the requested information. When IBM has specified additional information sought or asked for already produced information in a different format, SCO has consistently agreed to supplement its discovery and, in fact, has supplemented its discovery.

IBM's second motion to compel is procedurally defective based upon the wholesale failure to comply with this Court's Rule 37-1(a) requirement and can be denied on that basis alone.

Beyond these procedural infirmities, as discussed below, IBM's motion to compel is substantively flawed and can also be denied based on that basis.

## II.   SCO's Ability to Answer Certain Discovery Has Been Thwarted By IBM's Failure to Provide Source Code In Response To Discovery Requests

To understand why certain portions of IBM's Interrogatories 12 and 13 are objectionable and why SCO's current responses are entirely adequate, the questions must be placed in context. As detailed in SCO's Complaint, this case essentially arises from the contractual relationship between SCO and IBM and Sequent (now part of IBM and hereinafter collectively referred to as IBM), which were[1] licensees of SCO's UNIX System V source code ("UNIX"). IBM utilized its license for UNIX to develop AIX, which is IBM's "own version of UNIX," and to develop Dynix, which is Sequent's version of UNIX. As a licensee, IBM agreed to certain restrictions upon its use of UNIX, most notably that modifications and derivatives thereof (i.e. AIX and Dynix) would be used solely for IBM's internal business purposes, would be maintained in confidence, and would not be disposed of in whole or in part.[2]  IBM has publicly admitted that contrary to these clear limitations on the use of UNIX, AIX, and Dynix, it contributed AIX and Dynix into Linux, the free and publicly available operating system that IBM has heavily supported, both financially and technologically.  By doing so, IBM has unquestionably breached its many contractual obligations

---

[1] Based upon the violations of those licensee agreements by IBM, both companies have been sent letters terminating their license and demanding that all source code be returned or destroyed.  IBM has failed to do so.

[2] As set forth in the Software Agreement executed by IBM and attached to the Amended Complaint as Exhibit A, IBM agreed, for example, that UNIX would be used solely for its own internal business purposes (§2.01), that it would not use the code for others or allow its use by others (§2.05), and that it would maintain the code in confidence (§7.06). Similarly, IBM further agreed it would not sell or otherwise dispose of UNIX in whole or in part (§7.10). Most significantly, IBM also agreed that any modifications or derivative works of UNIX prepared by IBM would be treated by IBM "as part of the original Software Product." (§2.01). Thus, all of the foregoing restrictions on UNIX also apply equally to any modifications or derivative works created by IBM.

with SCO. In contravention of its license, IBM has embarked on a plan to support, strengthen, and improve Linux. IBM's efforts include its contribution of confidential and protected materials into the Linux 2.4 and 2.5 kernels (in lay terms, the "brain" of the operating system) to make money by providing support and services to corporate users of Linux. IBM's plan not only allows it to generate billions in Linux related revenues from providing support and services to users of Linux, but also to weaken the position of other competitors such as SCO, which provide mission critical operating systems to the world's largest corporations.

Against this backdrop, SCO provided detailed interrogatory answers that specify the source code files that contain the information that IBM and Sequent agreed to maintain as confidential and proprietary. Stripped of legalese, the two interrogatories in question here request SCO to identify:

A) All source code and other material in Linux to which SCO has rights, and how such material is derived from UNIX, and

B) Whether and how IBM has infringed those rights, and

C) Whether SCO itself has distributed the code or material SCO claims IBM has infringed.

SCO made two entirely appropriate objections to the interrogatories and then otherwise responded.

Largely because this is a case arising out of *IBM's* misconduct, SCO objected to identifying materials in Linux in which SCO has separate rights unrelated to IBM. For example, IBM has essentially claimed that SCO has shown third parties IBM's code contributions to Linux that SCO claims was placed in Linux in violation of its rights. To the contrary, it has been widely reported that such revealed code was placed in Linux not by IBM, but by another company, SGI. SCO need not produce SGI code that SGI placed in violation of its licenses with SCO. Such information is entirely unrelated to IBM's violations of its particular license agreements.

4

With the question properly framed, SCO's revised and supplemented response to Interrogatory 1 fully answers the question to the best of SCO's ability at this time.[3]   The revised and supplemental answers are attached hereto as Appendix "B." Without repeating the entire 16 page answer, SCO more than adequately identifies offending IBM materials in Linux.

The other objection raised by SCO that necessarily limited its response is IBM's failure to timely produce documents.  More detailed  answers to these questions lie, in large part, in the documents, code, and other materials developed by IBM and Sequent, which IBM and Sequent agreed would be kept confidential, and which IBM has yet to produce. As a result, the full range of what IBM illegally contributed and how it did so are known only to IBM, and SCO remains unable to craft further responses until SCO obtains that information from IBM.

A brief example of documents requested by SCO on June 24, 2003, which are yet to be produced (and are therefore outstanding for four months), highlight the difficulties caused by IBM failing to timely produce documents in  a technically involved case such as this one:

1. All versions or iterations of AIX source code, modifications, methods and/or derivative works from May 1999 to the present.

2. All versions or iterations of Sequent Dynix source code, modifications, methods and/or derivative works from January 1999 to the present.

3. All contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity.

4. All documents concerning any UNIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

---

[3] As detailed below, IBM only referred to and attached SCO's original answers to interrogatories to its Motion to Compel.  The revised and supplemental answers greatly detail the confidential information that IBM improperly used.  This apparent reliance upon the superseded original answers highlights the need for a good faith conference in advance of filing a motion to compel.

5.    All documents concerning any AIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

6.    All documents concerning any Sequent Dynix source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

7.    All documents concerning any UNIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

8.    All documents concerning any AIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

9.    All documents concerning any Sequent Dynix source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

10.   All documents concerning any contributions to Linux or to open source made by IBM and/or Sequent.

11.   All documents concerning export controls for any UNIX source code, derivative works, modifications or methods contributed to open source, including all portions of AIX and Dynix and their derivative works, modifications, or methods.

12.   All documents concerning IBM's contributions to development of the 2.4 and 2.5 Linux Kernel.[4]

Meaningful supplemental interrogatory answers can only follow IBM's production of the foregoing materials and the subsequent careful and time consuming review of the documents by counsel and qualified experts.  SCO has already identified nearly 600 files of code improperly contributed by IBM.  IBM's refusal to respond to properly put discovery requests to identify its own contributions to Linux thwarts SCO's ability to determine whether further supplementation is necessary.  When IBM finally responds to the outstanding discovery requests, SCO will have the critical information it needs to identify any additional offending violations by IBM.

Beyond the propriety of the foregoing objections, by adopting its revised and supplemental answers to Interrogatories 1, 2 and 4, SCO's substantive answers fairly respond to Interrogatories

---

[4] These are just a few (of many) examples to illustrate the point.

12 and 13. IBM's representations to this Court about the perceived deficiencies in SCO's answers arise from IBM's attachment of, and apparent reliance upon, SCO's *initial* response to IBM's First Set of Interrogatories and Request for Production of Documents. SCO did not incorporate those initial answers. Rather, as noted above, SCO voluntarily revised and supplemented its answers and incorporated those supplemental answers in response to Interrogatories 12 and 13. SCO's supplemental responses, which have been ignored by IBM, are attached hereto as Appendix "B".

SCO's revised and supplemental responses (Appendix"B") to interrogatories 1, 2 and 4, which are adopted in response to Interrogatories 12 and 13, serve to inform IBM of:

A)  What trade secrets and/or confidential and proprietary information SCO alleges IBM misappropriated;

B)  The information SCO alleges IBM was to keep secret and confidential and did not;

C)  The methods used by IBM to create derivative works based on UNIX;

D)  The identity of entities and individuals having had access to confidential information; and

E)  How and when IBM infringed and misappropriated SCO's trade secrets and/or confidential and proprietary information.

The two dozen pages of information setting forth this information in these interrogatory responses is more than adequate compliance with SCO's discovery obligations in light of IBM's lack of concomitant compliance with its own discovery obligations.

## III.   SCO Has Produced Documents and Continues to Produce Requested Documents.

IBM's motion abruptly shifts focus to complain about a perceived deficiency in SCO's track record of document production. This portion of the motion is likewise without basis. SCO has produced over one hundred CDs containing literally millions of pages of documents to IBM over the past several months and has done so pursuant to documented agreements to provide the

7

massive production of documents on an ongoing and "rolling" basis.  Moreover, unlike IBM, SCO
has been producing documents as they are kept in the ordinary course of business.

When the actual state of production is viewed, it becomes readily apparent that SCO is
taking its discovery obligations very seriously and in compliance with the Federal Rules of Civil
Procedure.  For example, IBM claims that the nearly 1 million pages of source code already
produced by SCO were produced in an "unusable" form − essentially because it was in human
readable form, rather than in machine readable form.  This statement, however, ignores that IBM's
precise request in this regard was for "human readable code".  *See* Defendant IBM's First Set of
Interrogatories and First Request for Production of Documents, page 20, paragraph 18, attached as
Appendix "C". Specifically, the instructions in IBM's discovery requests dictate that "source code
shall mean the human readable form of a computer program written in the original and preferred
form for human inspection...." SCO went to great expense to comply and produced the code in
"human readable form," i.e. paper form.  **After** that production, IBM changed its mind and gave
SCO contrary verbal instructions.  Based on IBM's representation that it likewise was going to
provide its code in this alternative format, SCO then spent additional time and money to provide
the code as newly requested.  Since that time, SCO has produced dozens and dozens of CDs
containing the source code in the format requested by IBM.  IBM, on the other hand, has yet to
produce a single line of source code in any format.  By any objective standard, SCO has clearly
complied with its discovery obligations.

IBM's remaining criticisms of SCO's production likewise wither when compared to what has actually occurred.  For example, IBM's oft repeated complaint that it has not been given access to the improperly contributed code SCO has shown to others ignores that such code was not IBM code, but the code improperly contributed to non-IBM entities.  Likewise, IBM's request for files for certain individuals and for more recent source code agreements ignores that IBM was told that such documents were next in the rolling production after SCO first produced the source code in the new format requested by IBM.[6]  That source code production is nearly complete and it is expected that the files in question will be produced over the course of the next few weeks.  In short, SCO's production of over 100 CDs worth of information dwarfs IBM's limited production of 18 CDs worth of documents.

## CONCLUSION

IBM has failed to comply with DUCivR 37-1 to meet and confer and to set forth a specific recitation of time, date and place of, and the identity of all counsel involved in such efforts.  On that basis, the motion should be denied.  The motion also fails because SCO has fully answered the interrogatories.  As detailed above, before IBM filed its motion SCO had been producing the requested documents and continues to do so pursuant to an agreement between the parties to do a rolling production.  Additionally, IBM's own conduct has precluded more detailed discovery responses.  For the foregoing reasons, SCO respectfully requests that this Court deny IBM's second Motion to Compel.

---

[6] IBM makes the unfounded allegation that because legacy licenses and related correspondence was stored on an imaging system, the production of those documents could have occurred in July when SCO filed its formal response to discovery.  This is wrong.  The fact that the documents were on an imaging system, as opposed to in a filing cabinet, does not mean that they could be produced without first reviewing them for responsiveness and for privilege.  They now have been reviewed and were produced months ago.

9

DATED this 24th day of November, 2003.

Respectfully submitted,

By: _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES SCHILLER & FLEXNER, LLP
Stephen N. Zack
Mark J. Heise
David K. Markarian

*Counsel for Plaintiff/Counterclaim Defendant*

10

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of Plaintiff's Memorandum of Law in Opposition to IBM's Second Motion to Compel was served on Defendant International Business Machines Corporation on this 24th day of November, 2003,

by Hand Delivery to:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004

by U.S. Mail to:

Evan R. Chesler, Esq.
David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.