Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (pro hac vice)
Mark J. Heise (pro hac vice)
David K. Markarian (pro hac vice)
BOIES, SCHILLER & FLEXNER L.L.P.
100 Southeast Second Street
Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff The SCO Group, Inc.*



IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>Defendant. | **PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF SCO'S MOTION TO COMPEL DISCOVERY**<br><br>Case No. 03-CV-0294<br><br>Judge Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

The SCO Group ("SCO") submits this reply memorandum of law in support of SCO's Motion to Compel Discovery.

## INTRODUCTION

In response to SCO's Motion to Compel, IBM essentially makes two arguments. First, IBM claims that "much of what SCO seeks IBM has already agreed, or is willing, to produce as soon as is practicable." IBM memo, p.2. Second, IBM argues that "most of what [SCO] seeks is irrelevant, overly broad and unduly burdensome, particularly in light of SCO's continued refusal to particularize its claims." *Id.* Even ignoring the inconsistency of these positions, IBM is wrong on both fronts. IBM has not, without qualification, produced or agreed to produce the necessary documents in response to SCO's document requests or properly respond to SCO interrogatories. IBM's argument that SCO has refused to particularize its claims offers no legitimate basis for its failure to comply with its discovery obligations and, in any event, is simply wrong. SCO has particularized its claims in great detail in both its Amended Complaint and, more recently, in its supplemental and revised responses to IBM's first set of discovery. Under these circumstances, SCO respectfully requests that IBM be ordered to respond to SCO's discovery forthwith.

## ARGUMENT

A. **IBM Should be Ordered to Produce all Versions or Iterations of AIX and Dynix Source Code as set forth in Request Nos. 2 and 3.**

As set forth in SCO's initial motion, IBM has wholly failed to produce all versions or iterations of AIX and Dynix source code, modifications, methods and/or derivative works from May 1999 to the present. IBM argues that it has "already agreed to produce source code for all releases of AIX and Dynix distributed within the time frames specified in SCO's requests." IBM memo, p.6 (emphasis added). There are several flaws in IBM's response. SCO's request is for *all* versions or iterations of the necessary source code, not for the source code "distributed." IBM's response, contained in an October 8th e-mail from IBM's counsel, improperly attempted to limit IBM's document production to releases IBM actually distributed. Moreover, *after* IBM purported to produce the source code it has "distributed," IBM apparently changed its position, as set forth in its October 10th letter. In that letter, IBM stated it would produce the "base operating system." IBM's October 10, 2003 letter attached as Exhibit "A" hereto. Now, in footnote 6 of its response, IBM inconsistently claims it is not limiting production to the "base operating system," contrary to its October 10th letter. In short, IBM has changed its response as to what it will or will not produce. IBM consistently has refused, however, to produce or agree to produce all requested versions or iterations of the AIX and Dynix source code. Those documents are plainly relevant, and the Court should order IBM to produce them immediately.

IBM's shifting attempts to limit production to code that was actually "distributed" or the "base operating system" are improper. SCO asked for and is entitled to all versions or iterations or AIX and Dynix source code. As described in greater detail in Plaintiff's opening Memorandum filed in support of its Motion to Compel, SCO contends that IBM failed to treat AIX and Dynix as required under the Software Agreement by, among other things, contributing source code and

1

confidential methods for developing UNIX / AIX to Linux. This is an important issue in the case. *See, e.g.*, ¶¶ 91-97, 110-115, 139, 141-144 of Plaintiff's Amended Complaint. Plaintiff is entitled to the production of *all* modifications and versions of AIX and Dynix created over the years to analyze the ways in which AIX and Dynix has changed and the ways in which its structures, methods and information based on UNIX have evolved. The evidence adduced from this discovery is likely to identify evidence of infringement and/or contract violations by IBM by improper contributions of such items to Linux. Stated differently, by receiving all versions and iterations of AIX and Dynix, SCO will have evidence of IBM's development of Linux in violation of its contractual and legal obligations.

IBM also claims that complying with this request would be unduly burdensome. Specifically, IBM, for the first time, states that if it complied with this request, IBM estimates that production may exceed 40 million pages. This figure, while large, does not automatically translate into a finding of undue burden. The reality is that IBM, like SCO, has agreed to produce the source code on CDs in a format that is readable by machine (i.e. not just Tagged Image File Format (TIFF) images). To do so, this source code is taken from a tape drive or from CDs and then copied onto a CD for production. As a result, IBM's claim of "undue burden" is not persuasive. It is worth noting that, in an effort to establish undue burden, IBM has done nothing more than make naked allegations of burden. IBM has failed to establish the allegedly burdensome nature of the production, either by affidavit or anything else in the record. *See Chubb Integrated Sys. Ltd. V. National Bank,* 103 F.R.D. 52, 59-50 (D.D.C 1984) ("An objection must show specifically how an interrogatory [or request] is overly broad, burdensome or oppressive, ***by submitting affidavits or offering evidence which reveals the nature of the burden.***")(emphasis added);*Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D. Kan. 1997) *citing Peat, Marwick,*

2

*Mitchell & Co. v. West,* 748 F.2d 540 (10th Cir. 1984)("The objecting party has the burden to substantiate its objections."). Having completely failed to meet *its* burden of establishing undue burden, IBM should be ordered to produce all iterations and versions of the requested code.

IBM concludes the initial section of its opposition memorandum by trying to excuse the fact that it has not provided a single line of code since it filed its response to SCO's document requests on August 13, 2003, over three months ago. IBM repeats that it has had to notify third parties whose rights might be implicated by revealing the source code. Despite claiming the need for issuing third party notifications in its August 13 response, IBM waited until October 8, 2003, before even sending out the third party notifications. *See* sample notification dated October 8, 2003, attached hereto as Exhibit "B." Moreover, the need to send out third party notifications does not justify the wholesale failure to produce a single line of AIX and Dynix since production of those documents was due in August. IBM certainly could have produced the vast majority of the code that is not subject to third party rights, just as SCO did. For example, if code was subject to a third party's rights, SCO would substitute object or binary code[1] for such source code. By doing so, SCO has been able to produce dozens of CDs containing source code so that IBM can undertake whatever analysis it feels is appropriate without violating the rights of third parties. When IBM requested code from third parties that appears in SCO's source code, SCO sent out the notification letters within a week of IBM's request.

The requested source code of AIX and Dynix in SCO's Request for Production seeks information that is plainly relevant to this case. The wholesale failure of IBM to produce even a single line of code has hampered SCO's ability to conduct the necessary code comparisons and delayed the orderly prosecution of this action. Accordingly, SCO respectfully requests that IBM

---

[1] Object or binary code is the code computers use and appears as a series of 1s and 0s.

3

be ordered to identify and produce all versions and iterations of AIX and Dynix as set forth in SCO's Request Nos. 2 and 3 without further delay.

### B. IBM Should be Ordered to Produce all Contributions to Others as set forth in Request No. 11.

In Request No. 11, SCO sought "[a]ll contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity." After discussions with IBM's counsel, SCO clarified that "the only documents we seek with respect to open-source contributions are those related to UNIX, AIX, Dynix and Linux." SCO's September 22, 2003 letter attached as Exhibit "C" hereto. SCO made clear it was only seeking documents that were directly relevant to the issues in this case. As noted in SCO's initial motion, nearly one month later, IBM responded to this clarification and maintained that such production still would be unduly burdensome and, in any event, seeks information that may be publicly available. *See* IBM's October 10, 2003 letter attached as Exhibit "A" hereto. IBM maintains that position in its responsive memorandum: ***"IBM has made a lot of contributions to Linux**, all of which are, by definition, publicly accessible."* IBM memo, p. 4 (emphasis added).

After admitting that IBM has made "a lot of contributions to Linux," IBM nonetheless refuses to produce the evidence of its contributions to Linux. IBM's memorandum states that for it to do so, IBM either (1) would have to search Linux for the term IBM or the names of IBM contributors or (2) interview the hundreds of IBM persons who IBM believes may have made a contribution to Linux. Without citation to any authority that would allow it to avoid its discovery obligation on this core issue, IBM simply declares it should not be required to do so. IBM memo, p. 4. IBM is wrong. IBM does have an obligation to undertake reasonable efforts to comply with

4

its discovery obligations. There is no recognized exception allowing a party to dispense with its discovery obligations by simply claiming information may be publicly available. Moreover, when IBM admits it has "made a lot of contributions to Linux," it certainly follows that a lot of people at IBM may have made these contributions. The fact that IBM made "a lot of contributions to Linux" does not excuse IBM from producing the source code, e-mails and corresponding materials that it contributed. Certainly, nothing prevents IBM from simply sending an e-mail to the personnel that it believes may have made contributions to Linux and asking them to forward all contributions of source code (and related documents such as e-mails) that they have made to Linux. IBM is certainly in position to identify what comprises the "lot of contributions to Linux" and, more importantly, SCO is entitled to that information from IBM.

IBM concludes that it should not be required to make any *further* disclosures of its contributions to Linux "until SCO provides specifics about its case."[2] IBM memo, p.5. This argument is without merit on two levels. First, by claiming it should not have to make any "further" disclosures, IBM acknowledges it has made some disclosures, recognizing that the documents requested were relevant. Second, and more importantly, IBM assuredly has all of the "specifics about this case" it needs to respond to this discovery, both from the lengthy and detailed Amended Complaint and the revised supplemental answers to IBM's interrogatories. Indeed, SCO has clarified that it was only seeking documents related to UNIX, AIX, Dynix and Linux. Under these circumstances, IBM should be ordered to produce the requested contributions.

---

[2] IBM claims that it has produced more than 120,000 documents in this case and that "many" relate to its contributions to Linux. Few, if any, of the documents show IBM's source code contributions to Linux.

5

### C. IBM Should be Ordered to Respond Fully to Interrogatory No. 2.

SCO's Interrogatory No. 2 requests the identity of *all* persons with knowledge concerning any of the issues in this litigation. Attachment A to IBM's interrogatory answers, however, lists only IBM employees and former employees. IBM claims it believed that the parties had an understanding that limited the question to present and former IBM employees, but it does not object to supplementing its answer to include non-IBM personnel as long as the parties' obligations are reciprocal. Recently, on October 10, 2003, when the parties simultaneously exchanged witness lists, SCO had already listed all persons it believed at the time had knowledge of issues in this case, without limiting its response to SCO personnel only. Thus, IBM's concern about reciprocity is of no moment.

While SCO appreciates that IBM now has agreed to supplement its answer to this interrogatory, it remains concerned about the completeness of any forthcoming list of witnesses. In its memorandum, for example, IBM continues to maintain that IBM's CEO, Sam Palmisano, and board of directors do not have knowledge of the issues in this lawsuit. IBM memo, p.9. They almost certainly do. The attached article from the New York Times provides a retrospective on how IBM became involved in Linux. The article details how Mr. Palmisano, then a senior vice president, and Irving Wladawsky-Berger spearheaded the move to Linux. *See* Article attached as Exhibit "D." Moreover, the newspaper article identifies a report presented to IBM's "top management." Thus, IBM's position that Mr. Palmisano and other top management at IBM do not have knowledge of the issues in this case is contrary to news accounts and common sense. SCO requests that IBM be ordered to answer Interrogatory No. 2 fully and completely.

6

### D. IBM Should be Ordered to Respond Fully to Interrogatory No. 4.

In Interrogatory No. 4, SCO sought to discover the identity of those at IBM who have or had access to the protected UNIX, AIX and Dynix source code and requested that IBM identify the materials to which they had access. IBM provided a series of lists that purport to respond to this question, but upon closer inspection it is clear that these lists are non-responsive. Attachment B, for example, is simply a list of approximately 7,000 names, without more. It lists all those who *may* have or had access, as opposed to those who actually have or had access to the source code and derivative works. Because the list is simply a collection of names, there is no reasonable way for SCO to review the list and determine who actually had access *and* the materials to which they had access.

IBM's response is simply that SCO does not need the contact information and that "SCO asked IBM to identify persons with access to source code, and we did." IBM memo, p.10. This statement, however, ignores that both IBM and SCO's discovery requests specifically define "identify" to include sufficient contact information about each person. Thus, consistent with the definition of "identify" that both IBM and SCO have used in the discovery requests propounded in this lawsuit, IBM has failed to properly respond to the interrogatory. IBM should be ordered to narrow its answer to those who actually had access to the specified source code and derivative works and then provide the necessary contact information.[3]

### E. IBM Should be Ordered to Respond Fully to Interrogatory No. 5.

In Interrogatory No. 5, SCO sought information that goes to the core of this case; namely, the identity of IBM and Sequent personnel that *work or worked* on AIX, Dynix and Linux, specifying for each person their precise contributions to each. IBM again merely referenced the

---

[3] IBM certainly has the ability to provide this information because it did so for one of its attachments (Attachment A to its interrogatory answer).

7

same lists used in Interrogatory No. 4, which asked about persons with *access*, and added one list regarding Linux. SCO's interrogatory did not request IBM to list persons who had *access* to source code, as did Interrogatory No. 4, but rather those who *"work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux."* As noted in SCO's initial memorandum, it is understandable that the lists may overlap to the extent, for example, that someone who is developing code for AIX would necessarily have access to some AIX source code, but it does not necessarily follow that all persons who had access to AIX source code actually worked on its development. Since the lists are, by definition, not coextensive, Attachments B and C are deficient.

In response, IBM states that "we believe that the persons who have or had such access *are* the persons who worked on developing AIX and Dynix." IBM memo, p. 3. This response from IBM is insufficient. As noted above, the lists IBM produced in response to Interrogatory No. 4 included those who *may* have had access to the code, as opposed to those who actually did. Thus, until a list is produced of those who actually had access to the source code and derivative works, the attempt to recycle the same list in response to different questions is fundamentally flawed. Rather than relying upon IBM's recently held belief that those with access equates to those who developed AIX and Dynix, IBM should be ordered to identify those who worked on developing AIX and Dynix and their precise contributions to each. To the extent IBM has this information, it should be ordered to produce it.

IBM also fails to adequately identify those who worked on Linux and their precise contributions to Linux. As noted in SCO's opening memorandum, IBM merely references Attachment E to its discovery responses. This attachment, although closer to the mark, simply lists the names of approximately two hundred and sixty persons without any further identification.

8

This list, as with IBM's other attachments, is overly broad because rather than listing IBM personnel who actually worked on Linux, it lists those "who *may* have made contributions to Linux." (emphasis added). SCO should not be left to guess which individuals on this list actually worked on Linux and which did not. Consistent with this defect, the list does not specify any of the files these persons worked on or contributed to Linux. The files IBM personnel worked on or otherwise contributed to Linux or clearly relevant to this case. IBM may be reluctant to plainly identify who and how it violated its obligations to SCO, but that does not excuse IBM from its discovery obligations.

## CONCLUSION

For the foregoing reasons, SCO respectfully requests that the Court order IBM to fully and completely respond to the foregoing identified discovery requests.

DATED this 1st day of December, 2003.

Respectfully submitted,

By: _____
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Stephen N. Zack
Mark J. Heise
David K. Markarian

*Counsel for Plaintiff/Counterclaim defendant*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc. hereby certifies that a true and correct copy of **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY** was served on Defendant International Business Machines Corporation on this 1st day of December, 2003, by U.S. Mail, first class, postage prepaid, on their counsel of record as indicated below:

>Alan L. Sullivan, Esq.
>Todd M. Shaughnessy, Esq.
>Snell & Wilmer L.L.P.
>15 West South Temple, Ste. 1200
>Gateway Tower West
>Salt Lake City, Utah 84101-1004
>
>Evan R. Chesler, Esq.
>David R. Marriott, Esq.
>Cravath, Swaine & Moore LLP
>Worldwide Plaza
>825 Eighth Avenue
>New York, NY 10019
>
>Donald J. Rosenberg, Esq.
>1133 Westchester Avenue
>White Plains, New York 10604

*/s/ Mark F. James*

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.