Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
David K. Markarian (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff*



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant. | **PLAINTIFF SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SEPARATE TRIALS**<br><br>Case No. 2:03CV0294DAK<br><br>Judge Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Pursuant to DUCiv 7-1(b), Plaintiff The SCO Group, Inc. ("SCO"), hereby

submits this Memorandum in Support of its Motion for Separate Trials of the Defendant



International Business Machine Corporation's ("IBM") patent counterclaims (counterclaims nine through twelve).

## Introduction

In the 1980s, IBM entered into a series of licensing agreements with AT&T through which it obtained access to, and limited rights to the use of, the UNIX operating system (the "licensing agreements"). IBM used UNIX to build modifications or derivative works called AIX and Dynix/ptx. IBM later transferred parts of AIX and Dynix/ptx into an open source operating system called Linux. Based on these facts, a central issue in this case is whether IBM's disclosure of AIX and Dynix/ptx through its involvement in Linux violated the licensing agreements. Both SCO and IBM have asserted various claims arising from this nucleus of operative facts.

IBM, however, also has interposed four unrelated patent counterclaims. The question presented by SCO's motion is whether the discrete issues arising from the breach of the license agreements should be tried before a jury together with IBM's unrelated patent infringement counterclaims where the only common thread between the licensing agreements claims and the patent counterclaims is the identity of the parties. As detailed below, to assist in juror comprehension and reduce both prejudice and delay, IBM's four patent counterclaims should be tried separately and should proceed on a separate discovery schedule.

## Factual Background

IBM's four patent counterclaims are as separable from one another as they are from the rest of the claims and issues in this lawsuit: the ninth counterclaim involves a

data compression method;[1] the tenth, a certain method of navigating among program menus by a program called SCO Manager;[2] the eleventh, a self-verifying receipt and acceptance system for electronically delivered data objects;[3] and the twelfth, a method for monitoring and recovery of subsystems in a distributed/clustered system.[4] Nothing ties these claims together, or to the rest of the litigation, except the identity of the parties.

In contrast, the non-patent claims in the case relate to IBM's breach of the license agreements or are ancillary to IBM's breach of those agreements.[5] In addition to the

---

[1] ¶¶128-129, IBM Amended Counterclaim.
[2] ¶¶134-135, IBM Amended Counterclaim.
[3] ¶¶141-142, IBM Amended Counterclaim.
[4] ¶¶146-147, IBM Amended Counterclaim.
[5] SCO claims that IBM breached the terms of its own, as well as Sequent's, licensing and sublicensing agreements (Counts I-IV, Second Amended Complaint); that IBM infringed SCO's copyrights in UNIX and related works (Count V); that through its involvement in Linux, IBM competed unfairly against SCO (Count VI); and that IBM interfered with contracts between SCO and its licensees (Count VII), between SCO and Novell regarding SCO's rights to UNIX (Count VIII), and in business relationships between SCO and other companies in the computer industry (Count IX). IBM's non-patent counterclaims reference the same licensing agreements (First Counterclaim); allege that SCO has misrepresented IBM's rights to AIX (Second Counterclaim), that through this misrepresentation SCO has competed unfairly against IBM (Third Counterclaim), interfered with IBM's prospective business relations (Fourth Counterclaim), and engaged in unfair trade practices (Fifth Counterclaim); that SCO breached the GNU General Public License by distributing Linux improperly (Sixth Counterclaim), that SCO's distribution of Linux estops it from making claims against Linux and IBM (Seventh Counterclaim), and that SCO's distribution of Linux violated IBM's copyrights (Eighth Counterclaim).

breach of contract claims, SCO and IBM have brought three kinds of claims, most of which relate to IBM's breaches of the licensing agreements by its contributions to Linux. First, the parties each allege business tort claims, such as disparagement, unfair competition, and interference with actual or prospective contractual relations. Second, each alleges that the other infringed its copyrights. Third, the parties seek, through this litigation, a determination about the meaning and consequences, if any, of their respective contributions to and distributions of Linux.

## Argument

This Court has considerable powers to decide how a trial is to be conducted and broad discretion to decide whether and how to separate claims and issues. *Palace Exploration Co. v. Petroleum Development Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999). The federal rules provide, as general guidance, that a court may order the separate trial of any claim or counterclaim (1) in furtherance of convenience or (2) to avoid prejudice or (3) when separate trials will be conducive to expedition and economy. Fed. R. Civ. P. 42(b). Only one of these criteria needs to be satisfied to support such an order. *See DeWitt, Porter, Huggett Schumacher & Morgan, S.C. v. Kovalic*, 991 F.2d 1243, 1245 (7th Cir. 1993). As detailed below, pursuant to Rule 42(b), patent claims present unique issues and are often separated from other statutory and common law claims. *See, e.g., In Re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed. Cir. 1986) (recognizing "the now standard practice of separating for trial patent issues and those raised in an antitrust counterclaim"); *Enzo Life Sciences v. Digene Corp.,* 2003 WL 21402512 *5 (D. Del. 2003) (separate trials ordered for patent infringement, patent validity and business tort

counterclaims); *Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145 (N.D.N.Y. 1999) (patent infringement and antitrust claims separated into different proceedings); *Simpson v. Stand 21, S.A.*, 1994 WL 735936 (S.D. Ind. 1994) (state and federal law counterclaims and third party claims separated from patent claims to foster judicial economy and convenience) (citing Manual for Complex Litigation, Second, § 33.62 (1985)); *Kinzenbaw v. Deere & Co.*, 1981 WL 2135 *2 (N.D. Iowa 1981) (noting court's practice to separate patent and antitrust claims).

## I.   The Patent Counterclaims are Separable from the Other Claims.

The threshold issue in a Rule 42(b) analysis is the separability of the claims; a trial cannot be bifurcated unless its claims are separable. *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).   In this case, the question of separability is clear: the patent counterclaims involve extraordinarily complex technical facts and raise legal issues discrete from the remainder of this litigation. *See Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (separation of  trial of copyright infringement claim from antitrust counterclaims affirmed; claims are discrete issues, involving separate, complex bodies of law and trial court "did not want  the jury to muddle the two").

IBM's four patent counterclaims are as separable from one another as they are from the rest of the claims and issues in this lawsuit.   As noted above, IBM's ninth counterclaim involves a data compression method; the tenth alleges infringement of a patent covering a certain method of navigating among program menus; the eleventh alleges infringement of a patent covering a self-verifying receipt and acceptance system for electronically delivered data objects; and the twelfth alleges infringement of a patent

covering a method for monitoring and recovery of subsystems in a distributed/clustered system. Nothing ties these claims together, or to the rest of the litigation, except the identity of the parties, and that computers and software are involved. The patent counterclaims do not involve the UNIX licensing agreements, nor do they refer to UNIX System V, AIX, Dynix/ptx, or Linux.

The varied and complex nature of the patents and products involved in these counterclaims—data compression, graphical menu navigation, delivery verification, and cluster subsystem monitoring—also dictates that their resolution will involve "different lines of inquiry" and also require the use of different proofs. Such considerations are a compelling reason to separate claims. *See, e.g., Hal Leonard Publishing Corp. v. Future Generations, Inc.*, 1994 WL 163987 at *2 (S.D.N.Y. 1994); *Reading Industries, Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 665 (S.D.N.Y. 1974). Here, IBM's patent counterclaims are cleanly separable from the rest of this litigation, and their separability allows this Court to try them apart from the licensing claims in order to foster a final disposition of this litigation as a whole.

## II. The Separate Trial of the Patent Counterclaims Would Promote Fairness and Reduce the Prejudice to the Parties.

Ordering separate trials of the licensing claims and the patent counterclaims will reduce the risk of juror confusion and eliminate the potential "spillover effect" from one claim to another. Courts have recognized that prejudice inheres in jury trials involving complex bodies of law and facts, and have found that the risk of juror confusion in such cases strongly militates in favor of ordering separate trials. Bifurcation allows juries to concentrate on one complex body of law at a time, *Enzo Life Sciences, Inc. v. Digene Corp.*, 2003 WL 21402512 at *5 (D. Del. 2003), and therefore aids the fair and orderly

disposition of the issues. *Reading Industries, Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 665 (S.D.N.Y. 1974); *accord Hal Leonard Publishing Corp. v. Future Generations, Inc.*, 1994 WL 163987 at *4 (S.D.N.Y. 1994) (recognizing that "the risk of juror confusion in a case presenting several complex claims . . . is itself a reason to order separate trials"); *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) (stating that "[a]voidance of prejudice and confusion is served in trying first the patent issues, without injecting the different counterclaim issues which required different proof and different witnesses"). Given the danger of prejudice and confusion inherent in a jury trial of such complexity, separate trials are justified to avoid confusing a jury on the numerous claims, issues, and proofs. *See Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (finding no abuse of discretion in the trial court's separation of copyright and antitrust claims since the court "justifiably did not want the jury to muddle the two").

In *Enzo Life Sciences,* the court concluded that the patent claims should be separated from the business tort counterclaims, noting that "'[e]xperienced judges use bifurcation and trifucation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'" *Enzo Life Sciences,* 2003 WL 21402512 *5 (quoting Thomas L. Creel & Robert P. Taylor, *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice*, 424 PLI/Pat Litigation 823, 826 (1995)). The court further noted "bifurcation of complex patent trials has become common." *Id.* (citing Steven S. Gensler, *Bufurcation Unbound,* 75 Wash. L. Rev. 705, 725 (2000)). The court then observed that this reasoning "is also applicable to cases involving both patent and non-patent claims." *Id.* at *5.

As presently constituted with the patent counterclaims, this case will place a heavy burden on the jury's comprehension and is likely to clutter the record and confuse the jury. The same jury would have to weigh IBM's conduct related to licensing agreements and the business tort, copyright infringement and other claims, as well as each of the four patent counterclaims that survive the *Markman* hearing.[6] Evaluation of the patent claims alone would require a determination of whether each patent claim was valid, whether each patent claim was enforceable, whether each patent claim was infringed, and the defenses to each patent. The jury would also have to decide whether damages are appropriate and, if so, in what amount; and, finally, whether the conduct complained of was willful.

Separate trials, of course, eliminate the prejudice caused by combining this multitude of complex issues. In separate trials, the parties will be able to present evidence in a manner that is easier for the jurors to understand and the parties will be able to limit the number of legal issues the jury must address.

## III. The Separate Trial of the Patent Counterclaims Would Promote Expedition and Economy.

As described above, the licensing claims are complex in their own right. They comprise seven claims, nine counterclaims (not counting the patent counterclaims), and nearly three dozen affirmative defenses. These claims and defenses invoke both common law and statutory rights; they sound in contract, tort, copyright, unfair competition, and false advertising; and they involve both law and equity. It is anticipated that the

---

[6] The *Markman* hearing is named after the Supreme Court's decision in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), in which the Court mandated that judges, not juries, undertake the demanding and time consuming process of interpretation of patent claims, including disputed technical and non-technical terms of the claims.

discovery relating to these non-patent claims alone will consume many months and involve at least 80 depositions, and that the adjudication of the claims would require 5 weeks of testimony before a jury.

The patent counterclaims, however, greatly expand this litigation and will hinder and delay the orderly pre-trial preparation of the case for trial. The pre-trial work, for example, will more than double. At a minimum, it is estimated that the patent counterclaims will require at least as much discovery as the other claims in the litigation. They involve a total of four patents and include up to 52 patent claims that may be asserted and will have to be construed: U.S. patent 4,814,746 has eighteen claims;[7] U.S. patents 4,821,211 and 5,805,785 have twelve claims each;[8] and U.S. patent 4,953,209 has ten claims.[9] Patent counsel separately engaged to defend SCO against the allegations raised by IBM in the patent counterclaims estimate that perhaps as many as 75 depositions or more will be required because the four patents are separate and distinct from each other. The patent counterclaims address completely different subjects, involve completely different products that were issued at different times, raise distinct claims for damages, and have different inventors; accordingly, their adjudication will require different witnesses, different documents, and different defenses.

Besides doubling the amount of necessary discovery, the patent counterclaims also raise numerous technical issues that the Court otherwise would never consider on the remaining non-patent claims. These additional issues will necessarily significantly delay the orderly prosecution of the remaining claims. For example, SCO's patent counsel

---

[7] See Exhibit V, IBM Amended Counterclaim.
[8] See Exhibits W and Y, IBM Amended Counterclaim.
[9] See Exhibit X, IBM Amended Counterclaim.

estimates that the *Markman* hearing to construe each of IBM's four asserted patents would last between one to two weeks for all four patents. The *Markman* hearing would have no bearing on any of the issues in any of the other claims asserted either by SCO or IBM.

An order requiring a separate trial of the patent claims would also promote expedition and economy at trial. As a practical matter, the patent claims would necessarily require at least an additional five trial weeks, thereby doubling the amount of time to ten weeks that a juror would have to devote to this case. Moreover, if these disparate claims remain united at trial, the efficient disposition of the less complex licensing claims will be overshadowed by the more unwieldy and technical patent claims. *See, e.g., Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Colo. 2000) (bifurcating patent claims from antitrust and unfair competition claims "in the interest of economy and to expedite the trial"); *Tab Express Int'l, Inc. v. Aviation Simulation Technology, Inc.*, 215 F.R.D. 621, 624 (D. Kan. 2001) (on severance motion, court recognized that economy and expedition is best achieved through severance of contract claims from defendant's patent counterclaim). Separation will further convenience and economy, both at trial and pre-trial, by allowing separately retained patent counsel to focus solely on the patent claims. *See, e.g., Alarm Device Manufacturing Co. v. Alarm Products International, Inc.*, 60 F.R.D. 199, 202 (E.D.N.Y. 1973) (justifying separate trials, in part, because separate counsel was retained to try patent claims).

Separating the patent counterclaims would also prevent delay. Separated, the licensing claims and the patent claims would proceed through discovery and to trial at their own pace. If the claims remain combined in one trial, to prepare for the defense of

the patent counterclaims, the trial of *all* claims would have to be deferred at least 18 months from the current trial setting because, to date, IBM has not responded to any of SCO's discovery requests directed towards the patent issues.  The patent claims, therefore, are literally at the beginning stages.  Given the posture of the patent claims and their complexity, including the need for extensive *Markman* hearings, the minimum amount of time necessary to prosecute and defend the patent counterclaims is an additional 18 months.

## Conclusion

This case revolves around the licensing agreements that govern IBM's use of UNIX and its modifications or derivatives, AIX and Dynix/ptx.  The difficulties caused by adding IBM's unrelated patent claims to these distinct claims require that the patent issues be resolved in a separate trial, by a separate jury.  The patent claims and the licensing claims are cleanly and completely separable, and their separate trials will prevent delay, reduce jury confusion and prejudice, and economize judicial resources.  Accordingly, SCO respectfully requests that the patent counterclaims be set for a separate trial period with a separate scheduling order.

DATED this 24th day of March, 2004.

Respectfully submitted,

By: _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Stephen N. Zack
Mark J. Heise
David K. Markarian

- 11 -

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc. hereby certifies that a true and correct copy of

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR**

**SEPARATE TRAILS** was served on Defendant International Business Machines

Corporation on this ____ day of March, 2004, by U.S. Mail, first class, postage prepaid,

on their counsel of record as indicated below:

>       Alan L. Sullivan, Esq.
>       Todd M. Shaughnessy, Esq.
>       Snell & Wilmer L.L.P.
>       15 West South Temple, Ste. 1200
>       Gateway Tower West
>       Salt Lake City, Utah 84101-1004
>
>       Evan R. Chesler, Esq.
>       David R. Marriott, Esq.
>       Cravath, Swaine & Moore LLP
>       Worldwide Plaza
>       825 Eighth Avenue
>       New York, NY  10019
>
>       Donald J. Rosenberg, Esq.
>       1133 Westchester Avenue
>       White Plains, New York 10604