

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, #1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

- 1 -



Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in support of its cross-motion for partial summary judgment pursuant to DUCiv 56-1(a) and Rules 56 and 37(b)(2) of the Federal Rules of Civil Procedure on its claim against Plaintiff/Counterclaim-Defendant The SCO Group, Inc. ("SCO") for a declaration of non-infringement with respect to IBM's Linux activities (the "Tenth Counterclaim") on the grounds that SCO has consistently failed to substantiate its allegations of infringement despite two orders of the Court requiring it to do so.

## Preliminary Statement

This case concerns the publicly-developed computer operating system commonly known as Linux.[1]  SCO claims to hold copyrights giving it the right to control IBM's use of and contributions to Linux, which was pioneered in 1991 by an undergraduate student named Linus Torvalds and has since been continuously developed over the Internet by thousands of programmers worldwide.  SCO refuses, however, to disclose its purported evidence that IBM's Linux activities (including IBM's participation in the development of Linux, IBM's internal copying and use of Linux, and IBM's provision of Linux to customers as part of its hardware and service offerings) infringe SCO's alleged copyrights, despite two court orders requiring it to do so.  Accordingly, summary judgment should be entered against SCO and in favor of IBM with respect to IBM's claim for a declaration of non-infringement concerning its Linux activities.

---

[1]  An operating system is a group of programs that allows a computer to operate by performing basic tasks such as recognizing input from the keyboard, keeping track of files, and controlling disk drives.  The human-readable version of the Linux operating system, for example, is comprised of thousands of files, consisting of millions of lines of source code, which is the text of a program's instructions, written in a standard programming language.

SHAUGHT\SLC\299162.1

SCO commenced this lawsuit more than a year ago, alleging that IBM had misused source code purportedly copied or derived from certain UNIX operating systems (the "UNIX software")—including specifically a version known as UNIX System V—that were originally developed by AT&T's Bell Laboratories, and which SCO now claims to own. Specifically, SCO asserted among other things that IBM had (1) misappropriated trade secrets contained in certain unidentified versions of the UNIX software and (2) had breached the license agreements that IBM entered into with AT&T for UNIX System V by "dumping" source code allegedly copied or derived from UNIX System V into Linux.

Although SCO's original complaint (unlike its present complaint) did not include a claim for copyright infringement,[2] SCO from the beginning asserted publicly that IBM and others had infringed SCO's purported copyrights to the UNIX software and threatened litigation.[3]  Indeed, SCO sent letters in May 2003 to the world's largest corporations claiming that "Linux infringes on our UNIX intellectual property rights" and making clear its intention to "aggressively protect and enforce these rights".  SCO later sent follow-up letters in December 2003 asserting that "the use of the Linux operating system in a commercial setting violates our rights under the United States Copyright Act".

---

[2]  SCO formally amended its complaint in February 2004 to add a copyright infringement claim against IBM.

[3]  SCO claims to be the owner of the copyrights for certain versions of the UNIX software. Novell, Inc. has publicly disputed SCO's claims, however, and asserts that it remains the rightful owner of such copyrights.  Ownership of these copyrights is a central issue in SCO's lawsuit against Novell (which is also pending before this Court), but the Court need not decide that question on this motion.  IBM is entitled to partial summary judgment for the reasons stated herein.

As is explained in IBM's Counterclaims, both SCO's claims in this litigation and its public accusations are part of a broader campaign (which has resulted in four other lawsuits so far) to create fear, uncertainty and doubt in the marketplace about the Linux operating system and IBM's products and services. SCO's scheme is to make sweeping claims of ownership to Linux and to tout the strength of its case against IBM publicly, while at the same time seeking to obfuscate its claims and avoid producing its alleged evidence, so as to defer judicial resolution of the matter for as long as possible. SCO trumpets its campaign, including in particular this lawsuit, as "the biggest issue in the computer industry in decades" and insists that the "software industry"—indeed, "the future of the global economy"—hangs in the balance.

IBM has therefore asked SCO, from the beginning of this lawsuit, to advise IBM as to what specifically IBM has done in violation of <u>any</u> of SCO's purported rights to the UNIX software, including of course its copyrights. Rather than respond to IBM's discovery requests seeking the details of its allegations, however, SCO has consistently refused to provide this information. Indeed, SCO's counsel indicated, in an interview with Maureen O'Gara of LinuxGram in March 2003, that SCO "doesn't want IBM to know what they [SCO's substantive claims] are". As recently as several weeks ago, a SCO Vice President echoed that theme in describing SCO's strategy not to be forthcoming with its alleged evidence. With regard to SCO's supposed evidence, SCO Vice President Gregory Blepp stated in a published interview that "you don't put everything on the table at the start, but instead you bring out arguments and evidence piece by piece".

Consistent with its strategy, SCO has yet to identify a single line of code from the UNIX software that IBM is alleged to have misused in violation of any of SCO's "UNIX

- 4 -

intellectual property rights", despite two orders by Magistrate Judge Wells requiring SCO to do so. When pressed to identify specific code in the UNIX software that contained the trade secrets IBM allegedly misappropriated, SCO delayed for months in coming forward with the information, and ultimately withdrew its claim altogether. Similarly, with respect to SCO's contract claims, despite months of delay SCO still has not identified the specific code contained in UNIX System V that IBM allegedly misused in violation of its licenses to that software.[4]

Of particular relevance to this motion, SCO has also failed to adduce any evidence of any copyright infringement by IBM. IBM asked SCO (more than seven months ago) to identify the precise lines of Linux code in which it claims rights, and the precise lines of code in the UNIX software from which SCO alleges such Linux code is copied or derives. Without such essential facts, SCO cannot establish any infringement of its purported copyrights in the UNIX software. Unless SCO can match up the lines of code in Linux, to which it claims rights, to the precise lines of code in the UNIX software over which SCO claims copyright protection, SCO cannot show copyright infringement.

Nevertheless, despite the fact that SCO has been claiming for months that IBM's Linux activities infringe SCO's copyrights, despite the fact that SCO has sued IBM for copyright infringement with respect to IBM's Linux activities, and despite the fact that SCO has twice certified that it has produced the evidence it was ordered by the Court to provide regarding its claims, SCO still fails to adduce the basic evidence necessary to support its copyright assertions.

---

[4] SCO's contract claims are not at issue in the present motion for partial summary judgment. IBM believes, however, that SCO's contract claims are also susceptible to summary adjudication and intends to move for summary judgment on those claims at an appropriate time.

Most significantly, SCO refuses to substantiate its accusations and detail exactly what code in Linux it claims rights to, and how such code matches up to the code in the UNIX software to which SCO claims to possess copyrights.[5]

Thus, although SCO insists that it has evidence supporting its claims, SCO refuses to disclose all of that evidence to IBM. In fact, SCO seeks to dismiss or stay IBM's claim for a declaration of non-infringement on the theory that, while the future of the global economy may hang in the balance, the issue of IBM's copyright infringement should be decided not in this case involving IBM, but in the case SCO just filed against AutoZone, Inc., an auto parts company that has had little, if anything, to do with the development of Linux.

Based upon SCO's failure to come forth with evidence to demonstrate infringement, summary judgment should be entered in favor of IBM on its claim that IBM's Linux activities do not infringe SCO's alleged copyrights relating to the UNIX software. After more than a year of litigation, two orders to compel and two affidavits from SCO certifying that it has provided complete and detailed responses to IBM's interrogatories, SCO admits—by its silence and failure to provide evidence—that IBM's Linux activities do not infringe SCO's alleged copyrights. Although SCO has identified certain materials in Linux to which it claims rights (albeit without the required specificity), SCO fails altogether to show how IBM's Linux activities infringe SCO's alleged copyrights concerning the UNIX software. Again, SCO has not ever linked (and cannot link) the material in Linux to which it claims rights to specific lines of

---

[5] In one instance, SCO has attempted to match approximately 160 lines of code in Linux to approximately 160 lines of code in UNIX System V from which the Linux code is allegedly derived. This Linux code was allegedly contributed by Silicon Graphics, Inc. and has since been removed from Linux. SCO has never specified whether and how IBM (or any others) have infringed any of its purported rights, including its alleged copyrights, with respect to this code.

the UNIX software over which SCO claims copyright protection and that IBM can be shown to infringe.  (See Argument Section B below.)

Moreover, there is no reason for the Court not to decide the question of IBM's alleged infringement.  Prompt adjudication is appropriate—indeed, required in the interests of justice—where, as here, a litigant publicly trumpets the strength of its case and its alleged evidence, but refuses repeatedly to clarify its claims or disclose its alleged evidence in the face of court orders to provide such information.

No additional discovery is necessary on this counterclaim.  SCO has had at its ready access since the beginning of the case all the information necessary to determine whether and how Linux infringes its purported copyrights—the source code to which SCO purports to hold copyrights and the source code for Linux—and has been unable to proffer the evidence of copyright infringement sought by IBM's interrogatories.  Indeed, given SCO's repeated failure to comply with the Court's orders, the fact of IBM's non-infringement should simply be established against SCO, and SCO should not even be allowed to adduce evidence on this issue under Rule 37(b)(2).  (See Argument Section C below.)

### Statement of Undisputed Facts[6]

A.    Linux.

1.    Linux is an operating system that stems from a rich history of collaborative development.  (Ex. 1, at 1-4.)

---

[6]  The undisputed (and indisputable) facts supporting this motion are set out in the accompanying Declaration of Daniel Frye and the documents appended to the Declaration of Todd M. Shaughnessy, which are cited herein as "Ex.__".

2.      The development of Linux began when an undergraduate student at the

University of Helsinki, by the name of Linus Torvalds, set out to create a new, free operating

system. (Ex. 1 at 1-5.) In 1991, Torvalds began developing the Linux "kernel", the core of the

operating system, and posting news of his project to Internet newsgroups, along with a call for

volunteers to assist in his efforts. (Id.)

3.      With the Internet providing for a distributed collaboration, other

programmers joined to create code making up the kernel. (Ex. 1 at 1-5.) Torvalds directed the

collaboration to a version 1.0 release of the Linux kernel in 1994. (Id.)

4.      In the years that followed, thousands of developers, including developers

at SCO and IBM, contributed to the further development of Linux. (See Ex. 2 ¶ 45; Ex. 3

(identifying SCO's contributions to Linux); Ex. 4 at 15, 22, 26; Declaration of Daniel Frye

("Frye Decl."), dated May 18, 2004, ¶ 5.) Version 2.4 of the Linux kernel was released in 2001,

and version 2.6 of the Linux kernel was released in 2003. (Frye Decl. ¶ 5.)

5.      Thereafter, a number of companies began to distribute Linux, including

SCO. (Frye Decl. ¶ 6; Ex. 4 at 5-8, 26.) These Linux distributors offer a variety of commercial

Linux products, which typically comprise the Linux kernel, the applications that the kernel runs

(which, with the kernel, comprise a complete operating system) and whatever else the distributor

chooses to combine into an easily installable product. (Frye Decl. ¶ 6; Ex. 4 at 5-8.)

SHAUGHT\SLC\299162.1

B.      IBM and Linux

6.      Like many others, IBM has participated in the development of Linux. (Frye Decl. ¶ 5; see Ex. 2 ¶ 45.)  According to SCO, "IBM contributed key technology to Linux for enterprise use".  (Ex. 5 ¶ 99.)

7.      As stated, IBM (like SCO) has contributed source code to the development of Linux.  (Frye Decl. ¶ 5; see Ex. 2 ¶ 45.)

8.      In addition to contributing source code to Linux, IBM offers Linux training and support, applications testing, technical advice and a hands-on environment in which to evaluate Linux and Linux-based applications.  (Frye Decl. ¶ 5.)

9.      Many IBM employees use Linux as their platform for day-to-day business computing, running office productivity applications, developing software (including Linux itself), and exchanging e-mail.  (Frye Decl. ¶ 9.)

10.     IBM has many Linux-related offerings:  mainframes and servers that run Linux; memory solutions for Linux environments; a broad range of software offerings; services that include deployment of Linux-based e-business environments, migration of database applications and data to Linux systems, support for Linux-based cluster computing, server consolidation, and a 24-hour technical engineering support line.  (Frye Decl. ¶ 7; see Ex. 2. ¶ 44.)

11.     In connection with such Linux activities, IBM reproduces Linux and makes Linux available to others, both in developing and providing hardware, software and services to customers, and for other, internal business purposes.  (Frye Decl. ¶ 8.)

- 9 -

C.      SCO and Linux.

        12.     SCO was founded as Caldera, Inc. in 1994, three years after Linus

Torvalds began the development of Linux, to develop and market Linux software.  (Ex. 4 at 30.)

In 1998, Caldera, Inc. sold its assets relating to its business of developing and marketing Linux

software to Caldera Systems, Inc. ("Caldera"), a newly formed corporation.  (Id. at 30-31.)

        13.     Caldera developed and marketed software based on the Linux operating

system and provided related services enabling the development, deployment and management of

Linux-specialized servers.  (Ex. 4 at 5-6.)   In addition, it joined with other Linux vendors in

UnitedLinux, an initiative to streamline Linux development and certification around a global,

uniform distribution of Linux for business.  (Ex. 6 at 4; Ex. 7.)

        14.     On May 7, 2001, Caldera acquired the Server Software and Professional

Services divisions of The Santa Cruz Operation, Inc. ("Santa Cruz") and their UNIX-related

assets.  (Ex. 6 at 16.)  (In conjunction with this acquisition, Caldera Systems, Inc. became known

as Caldera International, Inc. ("Caldera International").)

        15.     Caldera International changed its name to The SCO Group, Inc. in May

2003.  (Ex. 8.)

D.      SCO's Litigation and Threats of Litigation.

        16.     On March 6, 2003, SCO sued IBM for allegedly "dumping" into Linux

certain unspecified code from the UNIX software it allegedly acquired from Santa Cruz.  (Ex. 9 ¶

102.)

- 10 -

17.    Although its initial complaints against IBM did not include a claim for copyright infringement, SCO repeatedly accused IBM and others publicly of infringing SCO's copyrights, and threatened imminent litigation concerning IBM's Linux activities.  For example:

(a)    In May 2003, SCO sent letters to 1,500 of the world's largest corporations, including IBM, threatening litigation.  (See, e.g., Ex. 10.)  In its letters, SCO stated, "We believe that Linux infringes on our UNIX intellectual property and other rights".  (Id. at 2.)  SCO further stated, "[w]e intend to aggressively protect and enforce these rights" against not only the companies involved with "the Linux development process" but also "the end user" companies using any Linux technology.  (Id.)

(b)    In a press conference on July 21, 2003, SCO stated that taking out a license with SCO was the "alternative to legal enforcement against Linux end-users".  (Ex. 11 at 3.)

(c)    On November 18, 2003, during a teleconference sponsored by SCO, SCO counsel said that it "will be looking to identify a defendant" in "the near term" and such defendant will be "a significant user that has not paid license fees and is in fact using the proprietary and copyrighted material".  (SCO Teleconference, Nov. 18, 2003, audio available at www.sco.com/company/confcalls/stowell_11-18_105887.mp3.)  During the same call, SCO Chief Executive Darl McBride was asked if the 1,500 companies threatened earlier were the same class of companies that SCO would pursue.  (Id.)  McBride responded: "We will start there. That's not going to be the ending point, but clearly large customers that have, that are using a lot of Linux machines inside of their environment would be the starting point for us."  (Id.)

SHAUGHT\SLC\299162.1

(d)     At a December 5, 2003 hearing in this case concerning discovery issues, SCO represented to the Court that SCO would be filing a copyright infringement action against IBM "within the coming few days or no less than a week".  (Ex. 12 at 23:19-22.)

(e)     In connection with a December 22, 2003 press release, SCO released a template of a letter, dated December 19, 2003, that it sent to "Linux Users".  (Ex. 13.)  In that letter, SCO wrote that "the use of the Linux operating system in a commercial setting violates our rights under the United States Copyright Act".  (Id. at 1.)

18.     SCO subsequently amended its complaint against IBM in February 2004 to add a claim for copyright infringement.  (See Ex. 5 ¶¶ 173-80.)   By that claim, SCO alleges that IBM has infringed, induced the infringement of, and contributed to the infringement of the following UNIX copyrights allegedly owned by SCO.

| Registration No. | Date of Registration | Title of Work |
|---|---|---|
| TXU-510-028 | March 25, 1992 | UNIX Operating System Edition 5 and Instruction Manual |
| TXu-511-236 | April 7, 1992 | UNIX Operating System Edition 6 and Instruction Manual |
| TXu-516-704 | May 15, 1992 | UNIX Operating System Edition 32V and Instruction Manual |
| TXu-516-705 | May 15, 1992 | UNIX Operating System Edition 7 and Instruction Manual |
| TXu-301-868 | November 25, 1987 | Operating System Utility Programs |
| TX 5-787-679 | June 11, 2003 | UNIXWARE 7.1.3 |
| TX 5-750-270 | July 7, 2003 | UNIX SYSTEM V RELEASE 3.0 |
| TX 5-750-269 | July 7, 2003 | UNIX SYSTEM V RELEASE 3.1 |
| TX 5-750-271 | July 7, 2003 | UNIX SYSTEM V RELEASE 3.2 |
| TX 5-776-217 | July 16, 2003 | UNIX SYSTEM V RELEASE 4.0 |

- 12 -

| Registration No. | Date of Registration | Title of Work |
|---|---|---|
| TX 5-705-356 | June 30, 2003 | UNIX SYSTEM V RELEASE 4.1ES |
| TX 5-762-235 | July 3, 2003 | UNIX SYSTEM V RELEASE 4.2 |
| TX 5-762-234 | July 3, 2003 | UNIX SYSTEM V RELEASE 4.1 |
| TX 5-750-268 | July 9, 2003 | UNIX SYSTEM V RELEASE 3.2 |

(See id. ¶¶ 176, 179.)

19.     SCO alleges both direct and contributory infringement of its copyrights,
stating that IBM has "infringed, [has] induced infringement of, and [has] contributed to the
infringement of, copyright registrations of SCO and its predecessors".  (Ex. 5 ¶ 179.)  According
to SCO, "a significant amount of UNIX protected code and materials are currently found in
Linux 2.4.x, 2.5.x and Linux 2.6.x releases in violation of SCO's contractual rights and
copyrights".  (Id. ¶ 79.)  IBM is responsible, says SCO, for "incorporating (and inducing,
encouraging, and enabling others to incorporate) SCO's proprietary software into Linux open
source software offerings".  (Id. ¶ 6(c).)

20.     With respect to contributory infringement, SCO further asserts, for
example, that "IBM has knowingly induced, encouraged, and enabled others to distribute
[SCO's] proprietary information" (Ex. 5 ¶ 109 (SCO's first)), through the "coordination of the
development of enterprise Linux, and the misappropriation of UNIX to accomplish that
objective" (Id. ¶ 109 (SCO's second)).

21.     Moreover, SCO recently filed suit against AutoZone, Inc., alleging that the
use of Linux infringes copyrights SCO purports to hold to the UNIX software.  (See Ex. 14 ¶¶
14-22.)  SCO asserts that "Linux has been transformed from a non-commercial operating system

- 13 -

into a powerful general enterprise operating system". (Id. ¶ 12.) SCO further claims that "parts

or all of [SCO's] Copyrighted Material has been copied or otherwise improperly used as the

basis for creation of derivative work software code, included [in] one or more Linux

implementations, including Linux versions 2.4 and 2.6, without the permission of SCO". (See

id. ¶ 20.) According to SCO, IBM is at least partially responsible for AutoZone's allegedly

infringing conduct. (See Ex. 5 ¶ 109 (SCO's first).)

22.     In response to SCO's threats of copyright infringement, IBM asserted

counterclaims against SCO on August 6, 2003, alleging, among other things, that SCO has

"devised and executed a plan to create the false perception that SCO holds rights to UNIX that

permit it to control not only all UNIX technology, but also Linux" by "conducting a far-reaching

publicity campaign to create the false and/or unsubstantiated impression that SCO has rights to

UNIX and Linux that it does not have". (Ex. 42 ¶¶ 22-24.) Following the assertion by SCO of a

cause of action for copyright infringement, IBM amended its counterclaims to assert a claim

against SCO seeking a declaration of non-infringement with respect to IBM's Linux activities.

(See Ex. 15 ¶¶ 168-73.)

23.     There is an actual controversy with respect to this claim, as evidenced, for

example, by the fact that SCO moved to dismiss IBM's claim for a declaration of non-

infringement regarding IBM's Linux activities, but did not challenge the Court's subject matter

jurisdiction over this claim. (See Ex. 16.) After all, SCO has charged IBM with copyright

infringement, including with respect to IBM's Linux activities. (See Ex. 5 ¶¶ 173-79.)

- 14 -

24.     Further, there is also an actual controversy here based on SCO's campaign against Linux, including its threats against Linux users, such as IBM (illustrated above). Notably, Red Hat, Inc. sued SCO in the United States District Court for the District of Delaware seeking a declaration of non-infringement concerning Red Hat's Linux activities.  (See Ex. 17.) Following SCO's attempt to dismiss the Red Hat case, which SCO represented to the Delaware court included the same issues as in this case (see Ex. 18), the court ruled there was an actual controversy as to Red Hat's claim for a declaration of non-infringement, but stayed the case pending resolution of the claims in this case.  (See Ex. 19.)

E.     SCO's Touting and Obfuscation.

25.     From the beginning of this litigation, SCO has touted its claims and the strength of its alleged evidence.  (See, e.g., Exs. 20, 21, 22.)

26.     According to SCO, the issues presented here are the most important issues faced by the software industry in ten years and the future of the industry—indeed, the future of the global economy—hangs in the balance:

(a)     In an article for Salon.com, Sam Williams quotes SCO's CEO Darl McBride as saying, in reference to this case:  "There really is no middle ground…The future of the global economy hangs in the balance."  (See Ex. 23.)

(b)     In an article from KSL.com, Jed Boal quotes McBride as saying, in reference to this case:  "It has become the biggest issue in the computer industry in decades…The stakes are extremely high.  The balance of the software industry is hanging on this."  (See Ex. 24.)

- 15 -

27.     SCO's public statements concerning its alleged evidence are no less grandiose:

(a)     In an interview with CNet News.com in August 2003, McBride claimed that SCO had found a "mountain of code" improperly contributed to Linux.  (See Ex. 20.)

(b)     In a teleconference with analysts and reporters on May 30, 2003, McBride stated: "Everybody's been clamoring for the code—show us two lines of code.  We're not going to show two lines of code, we're going to show hundreds of lines of code.  And that's just the tip of the iceberg of what's in this."  (See Ex. 21.)

(c)     In an interview in LinuxWorld.com, McBride claimed that a "truckload of code" was improperly contributed to Linux.  (See Ex. 25.)

(d)     In August 2003, SCO's Senior Vice President and General Manager of SCOsource, Chris Sontag, publicly claimed that "SCO knows exactly which version of UNIX System V the code came from and which licensee was responsible for illegally contributing it to Linux".  (See Ex. 22.)

28.     At the same time, SCO has consistently refused to disclose the particulars of its claims and alleged evidence.  (See Exs. 26, 27, 28, 34.)  For instance, SCO commenced this case claiming that it was about IBM's dumping source code from the UNIX software into Linux.  (Ex. 9 ¶ 102 ("IBM is. . . improperly extracting and using the confidential and proprietary information it acquired from UNIX and dumping that information into the open source community").)  To date, SCO has not identified a single line of UNIX source code that IBM is alleged to have dumped into Linux.  (See Exs. 26, 27, 28, 34.)  In fact, SCO now claims that its case against IBM is not about IBM's alleged misuse of code from the UNIX software, but

- 16 -

rather about IBM's use of code written entirely by IBM or other third parties.  (<u>See</u> Ex. 29 at 2-3; Ex. 30 at 8-9.)

       29.     As SCO representatives have stated, it has been the company's strategy to obfuscate its alleged evidence.  (<u>See</u> Ex. 31; Ex. 32.)  For example, SCO's counsel indicated in an interview with Maureen O'Gara of LinuxGram in March 2003, at the beginning of the case, that SCO "doesn't want IBM to know what they [SCO's substantive claims] are".  (Ex. 31.) Further, SCO Vice President Gregory Blepp stated in a published interview in April 2004 that "you don't put everything on the table at the start, but instead you bring out arguments and evidence piece by piece".  (Ex. 32.)

F.     <u>The Truth About SCO's Claims.</u>

       30.     Following SCO's refusal to disclose the nature of its claims or its alleged evidence, IBM served interrogatories on SCO asking it to:  (1) identify with specificity all the material in Linux to which it claims rights; (2) detail the nature of its alleged rights, such as whether and how the material in which SCO claims rights derives from UNIX; and (3) state whether IBM has infringed SCO's rights and, if so, detail how IBM infringes SCO's alleged rights.  (<u>See</u> Ex. 33.)

       31.     Specifically, IBM's Interrogatory No. 12 states:  "Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights; and (b) the nature of plaintiff's rights, including but not limited to whether and how the code or other material derives from UNIX."  (Ex. 33.)

- 17 -

32.     Further, IBM's Interrogatory No. 13 states: "For each line of code and other material identified in response to Interrogatory No. 12, please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights. . . ." (Ex. 33.)

33.     Instead of providing the information requested, SCO merely offered a single sentence explanation and incorporated by reference SCO's response to IBM's Interrogatory Nos. 1, 2 and 4. (See Ex. 34.) Neither SCO's response to Interrogatory Nos. 1, 2 and 4, which precipitated IBM's first motion to compel (which was granted by Magistrate Judge Wells), nor its single sentence explanation, provided IBM with the information requested. (See Exs. 26, 34.) SCO refused to identify with any degree of specificity the material in Linux in which it supposedly has rights or the nature of those rights, and to detail SCO's claims of copyright infringement. (See id.)

34.     IBM filed a second motion to compel, seeking a meaningful response to Interrogatory Nos. 12 and 13, on November 6, 2003. (See Ex. 35.) Specifically, IBM asked the Court to require SCO to specify (1) all the material in Linux to which SCO claims rights (i.e., by kernel version *X*, file *Y*, and lines *1-2-3*); (2) the nature of SCO's alleged rights, including whether and, if so, how the material derives from the UNIX software (i.e., if SCO asserts contract, copyright or some other right to the identified code, and how the Linux code identified derives from UNIX version *A*, file *B*, lines *4-5-6*); and (3) whether IBM has infringed material to which SCO claims rights, and if so, the details of the alleged infringement (i.e., by copying Linux kernel version *X*, file *Y*, lines *1-2-3*, which are copied or derived from UNIX version *A*, file *B*, lines *4-5-6*; or by distributing Linux kernel version *X*, file *Y*, lines *1-2-3*, the structure and

- 18 -

sequence of which was copied from UNIX version *A*, file *B*, lines *7-8-9*; or by inducing others to copy (or distribute) Linux kernel version *X*, file *Y*, lines *1-2-3*, which are copied or derived from UNIX version *A*, file *B*, lines *4-5-6*).  (See id.)

35.     Despite its prior refusal to provide this information, counsel for SCO stated at the oral argument on IBM's motions that SCO would provide the information requested. (See Ex. 12 at 19: 17-25.)  More importantly, the Court ordered SCO to provide this information on or before January 12, 2004.  (See Ex. 36.)  The Court ordered SCO to "respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories [which require SCO to specify (1) all the material in Linux to which SCO claims rights; (2) the nature of SCO's alleged rights, including whether and, if so, how the material derives from UNIX; and (3) whether IBM has infringed material to which SCO claims rights and, if so, the details of the alleged infringement]."  (Id. ¶ 2.)

36.     In a submission dated January 12, 2004, SCO certified to the Court that "SCO has responded fully and in detail to Interrogatories 1-9, 12 and 13".  (See Ex. 37.)

37.     Notwithstanding SCO's certification and the Court's order, however, SCO did not provide meaningful responses to the interrogatories.  (See Ex. 27.)  In response to the Court's order, SCO listed certain materials in Linux to which SCO claims to have rights, but SCO failed to identify all of the materials with the requisite particularity.  (See id. (SCO failed, for example, to identify most of the lines of code in Linux allegedly contributed by Silicon Graphics, Inc. ("SGI") to which SCO claims rights; it merely identified files).)  More importantly, SCO failed to show how, if at all, the listed materials derive from the UNIX

- 19 -

software and made no attempt to describe (let alone detail) how IBM's Linux activities infringe SCO's alleged copyrights related to the UNIX software. (See id.)

38.     After again trying unsuccessfully to persuade SCO to provide the information requested, IBM advised the Court that SCO had failed to comply with IBM's requests and the Court's order. (See Exs. 38, 39.)

39.     The Court again ordered SCO to provide meaningful responses to IBM's interrogatories, this time on or before April 19, 2004. (See Ex. 40.) Specifically, the Court required SCO to "fully comply within 45 days of the entry of this order with the Court's previous order dated December 12, 2003". (Id.) As stated, that previous order required SCO to "respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories [which require SCO to specify (1) the material in Linux to which SCO claims rights; (2) the nature of SCO's alleged rights including whether and, if so, how the material derives from UNIX; and (3) whether IBM has infringed material to which SCO claims rights and, if so, the details of the alleged infringement]." (Ex. 36.)

40.     In response to the second order, SCO again certified that it fully complied with the Court's order. (See Ex. 41.) SCO stated that "the answers given and materials produced in response to the Order are given to the best of SCO's knowledge and are complete, detailed and thorough". (Id. at 5.)

41.     However, notwithstanding its certification, SCO again failed to comply with the Court's order. (See Ex. 28.) While SCO has identified more materials in Linux to which it claims rights (albeit without the particularity ordered by the Court and without an

SHAUGHT\SLC\299162.1

adequate explanation as to why it did not provide all of these materials in response to the Court's first order), SCO has still not detailed the nature of its alleged rights or described in detail how IBM is alleged to have infringed SCO's rights.  (See Ex. 28.)

> G.     SCO's Lack of Evidence.

> 42.     While SCO has widely claimed that IBM's Linux activities infringe SCO's alleged copyrights relating to the UNIX software (see Ex. 10; Ex. 13; Ex. 5 ¶¶ 173-79), SCO cannot substantiate its claims (see Exs. 26, 27, 28, 34).

> 43.     With respect to the material to which SCO claims rights, it fails to identify all of it with the particularity ordered by the Court.  SCO identifies four general categories of code in Linux to which it claims rights:  (1) material allegedly contributed to Linux by IBM from its AIX and Dynix operating systems programs; (2) certain so-called Application Binary Interface ("ABI") files; (3) code allegedly contributed to Linux by SGI; and (4) an assortment of code identified for the first time in an April 19, 2004 supplement to SCO's discovery responses. (See Exs. 26, 27, 28, 34.)  SCO declines to identify the lines of code to which it claims rights with respect to some part of the code in the first category and virtually all of the code in the third category.  (See Ex. 26, 27, 28, 34.)

> 44.     Moreover, SCO does not particularize the nature of its alleged rights to this code.  (See Ex. 26; Ex. 27; Ex. 28.)  For example, SCO makes no meaningful attempt to detail how, if at all, the materials derive from the UNIX software, despite the fact that the oral argument on IBM's motions to compel focused specifically on this issue.  (See Ex. 12; Ex. 39.) SCO was ordered to match up the lines of Linux code to which it claims rights to the specific lines of the UNIX software code from which the Linux code is alleged to derive.  (See Ex. 36 ¶

- 21 -

4.) Yet, in plain derogation of the Court's order, SCO states merely that "the entirety of UNIX System V licensed to IBM and Sequent are the lines from which IBM's contributions [to Linux] of AIX and Dynix/ptx are derived".[7] (See Ex. 28 ¶ 3.)

45.    In only one instance does SCO identify code in Linux to which it claims rights, and the corresponding code in the UNIX software from which the Linux code was allegedly derived. (See Ex. 27 at 59 & Exhibit A.) This Linux code, which comprises about 160 lines of code altogether, was allegedly contributed by SGI (not IBM), and is no longer present in Linux. SCO does not specify, however, whether and how IBM (or any others) infringe any of its purported rights, including its alleged copyrights, with respect to this code. (See Ex. 27.)

46.    As a consequence, SCO does not show (and cannot show) that IBM's Linux activities infringe SCO's alleged copyrights. To show copyright infringement, SCO must prove that it owns a valid copyright infringed by Linux and that IBM has exercised one or more of the exclusive rights of that copyright, including the right to reproduce, distribute or prepare derivative works. (See Section A below.) SCO may prove infringement directly or by showing that IBM induced or contributed to infringement by others. (See Section A below.) SCO does neither.

---

[7] SCO also lists in its April 19 letter "the lines of UNIX System V from which AIX and Dynix/ptx are derived". (Ex. 28 ¶ 3.) IBM did not ask SCO to provide this information, however, and the Court did not order SCO to provide it. This information is irrelevant here, as it fails to explain whether and how the particular code that IBM actually contributed to Linux is derived from any particular code in UNIX System V. Nor does it show how the other material in Linux to which SCO claims rights links or matches up to the specific lines of the UNIX software over which SCO claims copyright protection.

- 22 -

47.     In its responses to IBM's discovery requests and the Court's orders, SCO fails to identify with specificity a single copyright IBM is alleged to have infringed, let alone show that the copyrights are valid.  (See, e.g., Exs. 26, 27, 28, 34.)  Similarly, although it is undisputed that IBM copies and makes Linux available to customers, SCO fails to demonstrate (or even undertake to demonstrate) how IBM's Linux activities (indeed, any of IBM's activities) exercise one or more of the exclusive rights of SCO's alleged copyrights relating to the UNIX software.  (See, e.g., Exs. 26, 27, 28, 34.)

48.     To establish that IBM's Linux activities infringe SCO's alleged copyrights, SCO is required to establish that the material in Linux to which SCO claims rights—which all Linux users copy and distribute (at least in part)—is covered by SCO's alleged copyrights.  (See Section A below.)  That SCO has not done and cannot do.  (See, e.g., Exs. 26, 27, 28, 34.)

**Argument**

**SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF IBM ON ITS CLAIM FOR A DECLARATION OF NON-INFRINGEMENT WITH RESPECT TO ITS LINUX ACTIVITIES**

For more than a year, SCO has made far-reaching claims about its right to preclude IBM's (and everyone else's) Linux activities.  Despite SCO's grandiose descriptions of its alleged evidence of IBM's infringement, SCO now effectively concedes that it has none. SCO has twice certified to the Court that it has provided complete, detailed and thorough responses to IBM's discovery requests and the Court's orders.  In response to those orders, however, SCO adduces no evidence—let alone the detailed accounting ordered by the Court—

- 23 -

that IBM's Linux activities infringe SCO's alleged copyrights.  As a result, the Court should enter partial summary judgment against SCO.

    A.      A Summary Declaration Of Non-Infringement Is Appropriate Where There Is No Genuine Issue Of Material Fact.

        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); In re Grandote Country Club Co., 252 F.3d 1146, 1149 (10th Cir. 2001).

        To prevail on a claim of copyright infringement, a claimant must show:  (1) ownership of a valid copyright, and (2) copying by the defendant of the copyrighted material without authorization.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 942 (10th Cir. 2002); Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 831 (10th Cir. 1993).  Thus, IBM is entitled to summary judgment of non-infringement if "at least one element of the alleged [copyright] infringement cannot be proven", in that either there is no "ownership of a valid copyright," or there is no "copying of constituent elements of the work that are original".  Jean v. Bug Music Inc., No. 00 CIV 4022, 2002 WL 287786, at *4 (S.D.N.Y. Feb. 27, 2002) (Ex. A hereto); see also I.A.E., Inc. v. Shaver, 74 F.3d 768, 778 (7th Cir. 1996) (affirming grant of summary judgment on declaration of non-infringement of copyright); Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 433, 438-39 (S.D.N.Y. 2002) (granting summary judgment on declaration of noninfringement of copyright and dismissing defendant copyright holder's counterclaims of infringement), aff'd, Scholastic Inc. v. Stouffer, 81 Fed. Appx. 396, 2003 WL 22850111, 2003 Copr.L.Dec. P 28,707 (2nd Cir. 2003) (Ex. B hereto).

- 24 -

While IBM bears the burden to point out the absence of evidence supporting a finding of infringement, SCO bears the burden to establish a genuine issue as to each element of infringement, as these are matters as to which it would bear the burden of persuasion at trial. See, e.g., Lefler v. United Healthcare of Utah, Inc., 162 F. Supp. 2d 1310, 1314-15 and n.6 (D. Utah 2001) (party moving on issue on which it does not bear burden of persuasion at trial must show absence of evidence, which shifts burden onto nonmovant to produce evidence to establish genuine issue of fact); Interactive Network, Inc. v. NTN Communications, 875 F. Supp. 1398, 1403 (N.D. Ca. 1995) ("[S]ummary judgment of noninfringement for the alleged infringer . . . must be granted unless [the alleged copyright holder] can demonstrate a genuine issue of material fact as to whether a reasonable jury could conclude that the two works are substantially similar in both ideas and expression."); Larami Corp. v. Amron, No. Civ. A. 91-6145, 1993 WL 69581, at *3 (E.D. Pa. Mar. 11, 1993) (Ex. C hereto) (in declaratory judgment action, patent holder retains burden of proof of infringement at trial, and therefore must establish genuine issue of fact in response to motion for summary judgment).

B.    SCO Cannot Prove The Elements Of Copyright Infringement.

To prevail on a claim of copyright infringement, SCO must prove "(1) ownership of a valid copyright and (2) copying by the defendant of protected components of the copyrighted material". Gates, 9 F.3d at 831, 832.[8] If SCO cannot adduce evidence sufficient to

---

[8] To establish contributory infringement, a party must show: (1) knowledge, or actual or constructive knowledge of the infringing activity, and (2) material contribution, or substantial participation in or contribution to the primary infringement. See Motorvations, Inc. v. M & M, Inc., 59 U.S.P.Q.2D 1847, 1850 (D. Utah 2001).

show both ownership of a valid copyright and copying of protected components of the work that

are original, then IBM is entitled to a summary declaration of non-infringement.[9]

   As stated, SCO has twice failed to comply with Court orders requiring it provide

discovery concerning how IBM's Linux activities infringe SCO's alleged UNIX copyrights.

After SCO asserted that IBM's Linux activities infringe SCO's alleged copyrights (see, e.g., Ex.

10), IBM propounded the following interrogatories on SCO:

**INTERROGATORY NO. 12:**

   Please identify, with specificity (by file and line of code), (a) all source
code and other material in Linux (including but not limited to the Linux kernel,
any Linux operating system and any Linux distribution) to which plaintiff has
rights; and (b) the nature of plaintiff's rights, including but not limited to whether
and how the code or other material derives from UNIX.

**INTERROGATORY NO. 13:**

   For each line of code and other material identified in response to
Interrogatory No. 12, please state whether (a) IBM has infringed plaintiff's rights,
and for any rights IBM is alleged to have infringed, describe in detail how IBM is
alleged to have infringed plaintiff's rights . . . .

(Ex. 33.)

   In its initial response to these interrogatories, SCO merely "incorporate[d] it[s]

revised and supplemental answers to [Interrogatory Nos. 1, 2 and 4]". (See Ex. 34.)  Nowhere

did SCO:  (1) identify with specificity all the material in Linux to which it claims rights; (2)

detail the nature of its alleged rights, such as whether and how the material in which SCO claims

---

[9] Courts commonly use the term "copying" (as we do herein) as a "shorthand reference to any
infringement of the copyright holder's exclusive rights set forth at 17 U.S.C. § 106". Gates, 9
F.3d at 832 n.6.  A person may "copy" a work, and thereby infringe it, if she reproduces,
distributes, performs, or prepares derivative works without the copyright owner's permission.
See 17 U.S.C. § 106.

rights derives from UNIX; or (3) detail how IBM infringes SCO's alleged rights.  (See Exs. 26,

34.)

        As a result of SCO's failure to respond properly to these and other IBM

interrogatories, IBM moved to compel a meaningful response.  Granting IBM's motion,

Magistrate Judge Wells ordered SCO to "respond fully and in detail to Interrogatory Nos. 12 and

13 as stated in IBM's Second Set of Interrogatories" on or before January 12, 2004.  (See Ex.

36.)  Despite the Court's order, SCO failed fully to respond.  SCO identified a number of files in

Linux in which SCO claims rights (in partial response to Interrogatory No. 12(a)).  SCO did not,

however, identify all the material in Linux to which it claims rights (as evidenced by its April 19,

2004 response to Court's March 4, 2004 order); it did not properly identify (i.e., by version, file,

and line of code) all of the material in Linux that it did list; it did not detail the nature of its

alleged rights, including whether and, if so, how it derives from UNIX code (i.e., by listing—line

by line—the versions, files and lines of UNIX code from which the listed Linux code allegedly

derives); and it did not describe in detail how, if at all, IBM's Linux activities (or any of its

activities, for that matter) are supposed to have infringed SCO's alleged copyrights.  (See Ex.

27.)  Despite these shortcomings, SCO certified to the Court that its submission "fully respond[s]

to [IBM's] interrogatories based on the information in SCO's possession".  (Ex. 37.)

        At the Court's direction, IBM reported to the Court that SCO had failed to comply

with the Court's order.  Following a hearing on SCO's compliance, the Court ordered SCO to

"fully comply within 45 days of the entry of this order with the Court's previous order dated

December 12, 2003". (Ex. 40 at 2 ¶ 1), which directed SCO to "respond fully and in detail to

Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories" (Ex. 36 ¶ 2).  The

Court further ordered SCO in particular to "identify all specific lines of code from UNIX System V from which IBM's contributions from AIX or Dynix are alleged to be derived". (Ex. 40 at 2 ¶ 3.)

On April 19, 2004, SCO purported to provide "complete, detailed, and thorough" answers to IBM's Interrogatories and the Court's orders. (See Ex. 41 ¶ 9.) SCO identified additional material in Linux to which it supposedly has rights (without any real explanation as to why it failed to provide that information in response to the Court's first order). (See Ex. 28.) However, SCO again: (1) declined to identify the precise location of all of the material in Linux to which it claims rights (e.g., with respect to the so-called "IRIX/XFS" files contributed by SGI in which SCO claims rights, SCO still declines to identify the lines of code, as opposed to just the files, to which it claims rights); (2) failed properly to identify the nature of its alleged rights, including in particular whether and, if so, how the material derives from UNIX; and (3) declined to state how IBM infringes SCO's alleged rights. (See Ex. 28.)

To establish that IBM "copied" protected elements of SCO's alleged copyrights, one critical element SCO must show is that Linux is "substantially similar" to the allegedly copyrighted work (here, the UNIX software), so that the "copying" of Linux could be said to constitute "copying" of UNIX.[10] See Gates, 9 F.3d at 831. This necessarily requires SCO to

---

[10] The mere fact that there is "substantial similarity" between two works does not necessarily lead to the conclusion that the one infringes the other. For example, two works may be "substantially similar" in respects that are not subject to the protections of copyright law, such as because the similarity concerns material that is not copyrightable under the merger doctrine or scenes a faire doctrine. See Jacobson, 287 F.3d at 942. Moreover, the works may have been independently created, notwithstanding their similarities. See Gates, 9 F.3d at 833. Substantial similarity is, however, a necessary precondition to a finding of infringement. Jacobson, 287 F.3d at 942-43.

identify the precise lines of Linux code in which it claims rights <u>and</u> the precise lines of code in the UNIX software from which SCO alleges the Linux code is copied or derives.  It is for precisely this reason that IBM asked SCO (so long ago) to provide this information and, we believe, that the Court required SCO to provide it.

Rather than match the precise lines of code in Linux to which SCO claims rights to the precise lines of code in the UNIX software over which SCO claims copyright protection, SCO simply states that all of the material in Linux to which SCO claims rights matches all of the UNIX software over which SCO claims copyright protection.  SCO states: "the entirety of UNIX System V licensed to IBM and Sequent are the lines from which IBM's contributions [to Linux] of AIX and Dynix/ptx are derived".  (<u>See</u> Ex. 28.)  Not only does SCO's response not comply with the Court's order, but also it provides no more information than was included in SCO's original complaint.  (<u>See</u> Ex. 9 ¶ 96 (alleging that "'IBM's contributions' consisted of the improper extraction, use, and dissemination of SCO's UNIX source code and libraries, and unauthorized misuse of UNIX methods, concepts, and know-how").)

As a result of SCO's failure to adduce any proper evidence to support a claim of copyright infringement, IBM is entitled to a summary declaration that its Linux activities do not infringe SCO's alleged copyrights relating to the UNIX software.  There is ample authority for granting summary judgment on copyright infringement claims in similar circumstances.  <u>See, e.g.</u>, <u>Scholastic</u>, 221 F. Supp. 2d at 438-39 (granting summary judgment on declaration of non-infringement of copyright and dismissing defendant copyright holder's counterclaims of infringement); <u>Shaver</u>, 74 F.3d at 778 (affirming grant of summary judgment on declaration of non-infringement of copyright); <u>Bug Music</u>, 2002 WL 287786, at *3-*8 (granting summary

judgment on declaration of non-infringement of copyright); <u>CACI Intern., Inc. v. Pentagen Tech.</u>

<u>Intern., Ltd.,</u> Nos. 94-2058, 94-2220, 1995 WL 679952 at *5-*6 (4th Cir. Nov. 16, 1995) (Ex. D

hereto) (affirming grant of summary judgment on declaration of non-infringement of copyright).

Like the courts in these cases, the Court here should enter summary judgment.

      C.     <u>There is No Cause to Delay Resolution Of This Issue.</u>

      SCO contends that the balance of the software industry—not to mention the

global economy—hangs upon the resolution of this case. While obviously SCO overstates the

point, there is no question that this case involves issues that are important not only to the parties

but also to the public interest. SCO's campaign against Linux has visited unnecessary fear,

uncertainty and doubt on the part of the millions of persons and entities that rely on Linux, as

evidenced by the fact that Fortune Magazine recently named SCO "Corporate Enemy No. 1".

      SCO has advised the Court that it has provided complete and detailed responses to

the Court's orders. If that is true, then summary judgment is appropriate because SCO has no

evidence of IBM's alleged infringement (as SCO has adduced none). If it is not true, then

summary judgment is appropriate because SCO has not only defied two orders of the Court, but

it has also falsely certified that it has provided complete, detailed and thorough answers to IBM's

interrogatories and the Court's orders. Either way, the Court should forthwith enter summary

judgment in favor of IBM.

      While fact discovery does not close until August 5, 2004, no more discovery is

required for the Court to decide this motion. SCO is the purported owner of the copyrights at

issue. IBM's Linux activities, which SCO describes in its pleadings, are public knowledge, and

IBM concedes that it copies and makes Linux available to its customers, contributes to the

- 30 -

development of Linux, and encourages the copying and use of Linux by others. The source code for Linux is freely available via the Internet, and has been available to SCO from the beginning of the lawsuit. No amount of additional discovery (and SCO has had plenty—the equivalent of millions of pages of paper) would put SCO in a better position to substantiate its claims.

Courts have entered summary judgment on similar claims where, as here, further discovery was not essential to the motion. See Madrid v. Chronicle Books, 209 F. Supp. 2d 1227, 1233 (D. Wyo. 2002) (denying Rule 56(f) relief and granting summary judgment on copyright infringement claim where opposing party sought further discovery to "prove substantial similarity between [her] poem and [the defendant's] movie" because such "discovery is also unnecessary on this point . . . as the Court may perform the abstraction-filtration-comparison test merely by looking to the works themselves."); Gemisys Corp. v. Phoenix American, Inc., 186 F.R.D. 551, 566 (N.D. Cal. 1999) (denying Rule 56(f) relief and granting summary judgment on software copyright infringement claim, where the information sought to be discovered, namely "disclosure of [computer program] design and development documents" would not provide "evidence essential to the motion for summary judgment, namely, proof of substantial similarity").

Moreover, in view of SCO's repeated refusal to provide the information that IBM requested and the Court ordered SCO to produce—which is critical to the issues presented by SCO's claims and IBM's counterclaims—the Court should establish against SCO the fact that IBM's Linux activities do not infringe SCO's alleged copyrights and preclude SCO from conducting further discovery as to this issue.

- 31 -

Where, as here, a party fails to obey an order to provide discovery, the Court may

enter an appropriate sanction under Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2) provides in relevant

part:

> **(b) Failure to Comply with Order.**
>
> * * *
>
> **(2) Sanctions by Court in Which Action is Pending.**  If a party . . . fails
> to obey an order to provide or permit discovery, including an order made
> under subdivision (a) of this rule . . . the court in which the action is
> pending may make such orders in regard to the failure as are just, and
> among others the following:
>
> **(A)** An order that the matters regarding which the order was made or any
> other designated facts shall be taken to be established for the purposes of
> the action in accordance with the claim of the party obtaining the order;
>
> **(B)** An order refusing to allow the disobedient party to support or oppose
> designated claims or defenses, or prohibiting that party from introducing
> designated matters in evidence;
>
> **(C)** An order striking out pleadings or parts thereof, or staying further
> proceedings until the order is obeyed, or dismissing the action or proceeding or
> any part thereof, or rendering a judgment by default against the disobedient party
> . . . .

The Court has twice ordered SCO to provide IBM with its alleged evidence, if

any, that IBM's activities (including, of course, its Linux activities) infringe SCO's alleged

copyrights.  Despite certifying twice that it has complied with the Court's orders, SCO has in fact

failed to comply with the orders.  The Court should therefore enter sanctions against SCO to

prevent unfairness to IBM, to protect the interests of justice, and to promote the public interest—

as other courts have done in like circumstances.  See, e.g., Burns v. Imagine Films Entm't, Inc.,

164 F.R.D. 594, 600-01 (W.D.N.Y. 1996) (affirming order imposed under 37(b)(2)(A), resolving

issue of prior access in favor of copyright owners, because defendant did not adequately respond

- 32 -

to two court orders requiring defendant to provide full and complete answers to 'access' related interrogatories); <u>Knowlton v. Teletrust Phones, Inc.</u>, 189 F.3d 1177, 1183-84 (10th Cir. 1999) (affirming order imposed under 37(b)(2)(A), resolving question of single-employer status, because defendant failed to respond to interrogatories after the court ordered defendant to do so); <u>Volkart Bros., Inc. v. M/V "Palm Trader"</u>, 130 F.R.D. 285, 289-90 (S.D.N.Y. 1990) ("deem[ing] paragraphs 14 and 17 of Trikora's Amended Complaint to be admitted by PNT and established for the purposes of this case" where defendant provided single implausible explanation for refusing to produce documents and refused to produce a witness for examination).

## Conclusion

For the foregoing reasons, the Court should enter an order entering summary judgment against SCO on IBM's claim for a declaration of non-infringement with respect to IBM's Linux activities.

DATED this 18th day of May, 2004.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy


CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*


Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International*
*Business Machines Corporation*

- 34 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 18[h] day of May, 2004, a true and correct copy of the foregoing

was sent by U.S. Mail, postage prepaid, to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Kevin P. McBride
> 1299 Ocean Avenue, Suite 900
> Santa Monica, California 90401

- 35 -

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.