FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUL - 7 2004

MARKUS B. ZIMMER, CLERK
BY _____
DEPUTY CLERK

Brent O. Hatch (5715)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver, Esq. (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO COMPEL**<br><br>**Civil No. 2:03CV0294 DAK**<br><br>**Honorable Dale A. Kimball**<br><br>**Magistrate Judge Brooke Wells** |

Plaintiff, The SCO Group, Inc. ("SCO") files this Memorandum in Support of its Renewed

Motion to Compel pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure.

## I. IBM HAS FAILED TO PRODUCE ORDERED DISCOVERY

On June 24, 2003, SCO propounded its <u>First</u> Requests for Production of Documents and First Set of Interrogatories to IBM (collectively, the "SCO Discovery"). These requests sought the basic elements of discovery, such as the identity of potential witnesses, basic agreements, source code and relevant correspondence.[1] IBM served its responses to the SCO Discovery in August 2003. IBM interposed numerous objections that led to a lengthy meet-and-confer process, which produced continuing disagreement, but also an agreement by IBM to make a further production. After months went by, however, IBM did not provide additional discovery responses, forcing SCO to move to compel to obtain basic foundational discovery ("SCO's Motion").

This Court heard argument on SCO's Motion on February 6, 2004, and on March 3, 2004, entered its Order Regarding SCO's Motion to Compel Discovery ("March 3rd Order" (attached as Exhibit "A")). Granting SCO's Motion in part, this Court ordered IBM, among other things, to:

(1) "provide further responses to SCO's interrogatory numbers two, five and eleven.[2] These responses are to include relevant information from all sources including [IBM's] top level management" (March 3rd Order ¶ 5);

(2) provide "documents and materials generated by, and in possession of employees that have been and that are currently involved in the Linux project. IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents form IBM's "ambitious Linux Strategy." (March 3rd Order ¶ 3); and

(3) "properly identify . . . 1000 of the most important prospective trial witnesses as agreed upon" from IBM's list of 7,200 potential witnesses (March 3rd Order ¶ 6).

---

[1] This is the type of information that IBM would be required to voluntarily produce pursuant to Fed.R.Civ.P. 26(a)(1). IBM's obligation to provide the same information with specificity is not relieved simply because the requests for that information come in the form of formal discovery requests.

[2] This reference to Interrogatory 11 apparently was a scrivener's error. At the time, SCO had propounded only five interrogatories. The Order presumably was intended to require a complete response to either Request for Production 11 or Interrogatory 4, which is the other interrogatory specifically addressed in SCO's original Motion to Compel.

1

IBM has failed to provide the responses as required by the March 3rd Order. As set forth below, this Court should direct IBM to immediately comply with the Court's prior Order.

A.   **IBM has Not Produced Documents from its Top Level Management.**

In response to the Court's March 3rd Order, IBM represented that it had produced "all non-privileged responsive documents, including those from the files of Sam Palmisano and Irving Wladawsky-Berger."[3] In fact, IBM produced only limited documents from Mr. Palmisano's files, no documents from Mr. Wladawsky-Berger's files, and no documents from individual members of the Board of Directors.

As to Mr. Palmisano, IBM has produced an extremely limited set of materials, but clearly not all relevant responsive information. For example, IBM did not produce any substantive e-mails from Mr. Palmisano's files. Mr. Palmisano is the former Senior Vice President in charge of IBM's server business, and is now IBM's Chief Executive Officer and Chairman of the Board. IBM has publicly proclaimed Mr. Palmisano as the person who spearheaded IBM's strategy to shift towards Linux as IBM's operating system of choice. Mr. Palmisano is the head of one of the most powerful computer companies in the world, and the notion that he does not regularly use e-mail simply strains credulity. Mr. Palmisano should have hundreds or thousands of e-mails (both sent and received) directly related to the IBM Linux initiative for which he is now famous.[4]

Yet IBM has not produced a <u>single</u> substantive e-mail from the files of Mr. Palmisano. Instead, IBM's production from Mr. Palmisano's files is comprised of PowerPoint presentations and

---

[3] Judge Wells ordered IBM to provide an "affidavit detailing [its] efforts in complying with [the March 3rd] order and a "statement that [IBM's ] answers and materials provided are given to the best of [their] parties' knowledge and are complete, detailed and thorough." (Ex. A, March 3rd Order at 6) On April 20, 2004, IBM submitted the Declaration of Todd M. Shaughnessy so certifying and the statement cited above is found in Mr. Shaughnessy's Declaration. As discussed herein, IBM's purported compliance with the Court's Order was not complete.

[4] The involvement of Messrs. Palmisano and Wladawsky-Berger in IBM's "ambitious Linux strategy" are well known. Attached is a sampling of quotes from news articles addressing the involvement and otherwise reporting the extensive involvement of these men in IBM's Linux initiative. *See* Exhibit "C."

2

a few "Linux Strategy Updates." Conspicuously absent, however, is anything specific to Mr. Palmisano himself: any e-mails, notes, memos, correspondence, or other documents authored, edited, or received by Mr. Palmisano.[5] Such a void is inexplicable, given that Mr. Palmisano is credited as the primary person behind IBM's drive towards Linux and was publicly identified as the mastermind behind IBM's monumental shift in corporate strategy.

Even worse, IBM has failed to provide any documents from the files of Mr. Wladawsky-Berger, allegedly IBM's "Linux czar", *see New York Times* article, p. 3 (attached as Exhibit "D"), stating by letter dated April 26, 2004 (attached as Exhibit "E") that no responsive documents were found. That means that IBM has not been able to locate a single e-mail, letter, hand-written note, diary or calendar entry, memo or other document responsive to SCO's discovery requests from its "Linux czar" about Linux. The same *New York Times* article cited above describes Mr. Wladawsky-Berger as having sent e-mails to top technology executives regarding the rise of Linux. The statements in the article cannot be reconciled with IBM's representations to this Court and SCO that no such documents exist. SCO should not have to move to compel, two times, to obtain such basic documents and information.

In addition to its failure to provide Court ordered discovery regarding the two individuals described above, IBM has not produced any documents from its Board of Directors. After IBM demanded that SCO retrieve documents from all of SCO's top officers and directors, SCO promptly provided the requested discovery. IBM failed to do the same. SCO raised IBM's failure with the Court, and the Court ordered IBM to produce the documents from top management, which clearly includes its Board. IBM has failed to produce those relevant documents.

IBM has also failed to produce any of the requested Board minutes, Board packages, or other materials – all of which fall within the parameters of this Court's March 3rd Order requiring

---

[5] One e-mail was produced, but it is simply a request from Mr. Palmisano for someone to print a document.

3

production from IBM management. Instead, IBM has offered a mere *29* pages from its Board of Directors' files, implying that this is the entirety of responsive discovery from the Board. If that implication were correct, it would mean that IBM has effectuated a massive multi-billion dollar world-wide business plan without IBM's Board addressing the matter even once, so as to generate even a single set of Board minutes. Although it is theoretically possible that a Board as distinguished as IBM's <u>never</u> discussed an initiative that IBM told the world was as important as its Linux initative apparently is, the more reasonable conclusion is just the opposite.

Accordingly, SCO respectfully asks the Court to order IBM to comply with the March 3rd Order by providing the full files of Palmisano, Wladawsky-Berger, IBM's Board, including Board minutes, Board packages, and other relevant Board materials, and all other documents relevant to SCO's requests that this Court previously Ordered be produced, and that SCO originally requested on June 24, 2003. Alternatively, if IBM continues to take the position that no responsive documents exist, the Court should order IBM to provide certifications from Palmisano, Wladawsky-Berger, and the members of IBM's Board, stating that they have no relevant e-mail files, Board minutes, Board packages, or other Board materials that address issues relevant to this case.

### B. IBM Failed Properly to Supplement Interrogatory Number 5.

Again, in response to SCO's Motion to Compel, the Court ordered IBM to "provide further responses to SCO's interrogatory numbers two, five and eleven." Ex. A, March 3rd Order at ¶5. SCO's Interrogatory 5 sought the identity of "IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, *specifying for each person their precise contributions to each.*" Rather than providing the requested information, IBM referred SCO to its earlier produced list of approximately *7,200* names (with no identification of who these individuals were, what they worked on, when they worked for IBM, or

4

their contact information)[6] and stated that, to the extent readily determinable, the contributions of these persons can be discerned in the cases of AIX and Dynix in the "products themselves." *See* IBM's Second Supplemental Responses and Objections to SCO's First Set of Interrogatories at 6 (attached as Exhibit "F"). That statement is not accurate and is not in compliance with the Court's Order which required IBM to respond fully to Interrogatory 5.[7]

AIX, contrary to IBM's representations, does not contain information identifying the contributions of the thousands of persons listed in IBM's answers. A representative file of AIX code proves this point. *See* AIX file (filed under seal as Exhibit "G"). Neither this file, nor any of the thousands of AIX files reviewed by SCO, specifies the contributions of any of the 7,200 named individuals. In fact, the AIX product does not appear to identify any of the authors of the code, much less what each person contributed.

IBM is fully capable of producing the requested information in a readily accessible format. Indeed, IBM stores all of the information regarding the precise contributions of each person to AIX in a system known as Configuration Management Version Control ("CMVC").[8] IBM has not provided SCO access to CMVC or to the information contained therein. IBM's refusal to provide this basic information severely prejudices SCO's prosecution of its claims and SCO's defense of IBM's counterclaims.[9] Had IBM properly answered this request a year ago, when required, SCO would have known the precise contributions of each person to AIX, which in turn would have

---

[6] SCO believes this response by IBM can fairly be characterized as an abusive discovery response not designed to further the resolution of the case, but to obfuscate.

[7] IBM repeated this non-response response in the certification required by the Court's March 3rd Order. *See* Ex. B, Declaration of Todd M. Shaughnessy at ¶ 4.

[8] This point was briefed in detail in SCO's Memorandum Regarding Discovery filed on May 28, 2004, at 15-16.

[9] What makes this all the more extraordinary is that IBM, having blocked discovery of this basic information for a full year, is now moving for summary judgment on a declaratory copyright claim that it only recently introduced into the case on March 29, 2004. The information sought in Interrogatory 5 is obviously relevant to SCO's defense of that counterclaim. IBM is blocking SCO's access to the facts while at the same time asking the District Court to find that there are no facts in dispute. In addition, IBM, to support its summary judgment motion, is now asking the District Court to disregard SCO's explanation of its need for more information even though IBM has refused to obey this Court's express directives.

allowed SCO to take depositions of significant authors of AIX, which in turn would have provided direct evidence relating to the heart of the claims at issue in this case.[10] Since IBM now has twice not complied with its discovery obligations, SCO asks the Court to order IBM to give SCO full access the CMVC system so SCO finally can derive the requested information.

IBM's claim that SCO can find the contributions of individuals to Dynix by looking at Dynix files is also inaccurate. While, AIX does not provide *any* information about the precise contributions of individuals, Dynix provides extremely limited information, but not enough to comply with the March 3rd Order and be fully responsive to SCO's interrogatories. Attached is a file from Dynix that again illuminates the deficiency in IBM's response. *See* Dynix file (filed under seal as Exhibit "H"). As shown by this representative file, the precise contributions of each person to Dynix are not set forth. For example, on page 1, under the heading for the most recent revision, Revision 1.38, it simply states, "[a]dded code to help to trace RC_RDPROTECT() and RC_RDUNPROTECT() code", which was done by "rem". This does not indicate who "rem" is, or what code "rem" added, deleted, or revised, or how he or she specifically contributed to Dynix.

A recent deposition of a former Sequent employee, David Rodgers, confirms that it is impossible to determine the requested information in Interrogatory 5 by simple reference to the Dynix code itself. Mr. Rodgers testified that identifying individuals' precise contributions to a project solely by reviewing the code is subject to the happenstance of whether a particular engineer was following protocol that day by including their name as an author or contributor. *See* Deposition of David Rodgers at pp. 118-120 (filed under seal as Exhibit "I").[11] To avoid this problem, Sequent

---

[10] This is the type of information relevant to IBM's use of SCO material in breach of its contractual obligations. Evidence of breach requires a different factual inquiry than that under copyright laws. IBM has consistently endeavored to confuse the two in order to avoid discovery relevant to the contract claims.

[11] Q: Well, if I were to look at Dynix code, for example, how would I be able to determine the modifications of the System V semaphores that now appear in Dynix code?
A: The simple answer is I don't know. The more complicated answer is if the software developer was being a good boy that day, they would have commented it.

6

maintained a system like IBM's CMVC that allows one to identify the precise contributions of each individual. That system is known inside Sequent (now part of IBM) as the Revision Control System ("RCS"). *Id.* Although both CMVC and RCS are specifically designed to keep track of who made changes to projects and what those changes were, IBM has not given SCO access to CMVC or RCS or to the information contained therein. Access to CMVC and RCS would provide the most efficient means for determining who worked on AIX and Dynix and what their contributions were. IBM admits that it uses CMVC and RCS for precisely that purpose. *See* IBM's CMVC Introduction Manual (filed under seal as Exhibit "J").

Although SCO has been seeking the information for more than a year, IBM now contends turning over information from the CMVC system would be burdensome as it could take "weeks" to get SCO the AIX information similar to that contained on CMVS. *See* IBM's Response to Memorandum re: Discovery at 17-19, dated June 23, 2004.[12] That is a peculiar argument as IBM has not hesitated from litigating these meritless discovery disputes for months. Had IBM spent the same amount of time gathering the information that it has now spent litigating its meritless discovery disputes, this motion would have been unnecessary. Of course, IBM makes no claim that it would be burdensome to allow SCO access to CMVC so SCO could perform its own searches.[13]

---

\* \* \*

Q: If I am trying to determine all of the instances of modifications, meaning either new or adaptations, in Dynix that came from System V and a developer was not being a good boy that day, how would I go about determining anything else that was modified or – modified from System V? (Objection to form omitted)

A: First, I would say that it would be an extremely difficult assignment because the modifications would have taken place over an extended period of time by many people. An approach that I would adopt if I were given that assignment is to see if I could recover the RCS logs. Sequent, like many companies, maintain[s] a source control system called RCS, and I would attempt to recover from some archival storage medium the RCS logs.

[12] IBM did not raise this "burden" argument in its brief, at the hearing that resulted in the March 3rd Order or in its certificate of compliance filed with the Court. IBM, however, makes no claim of burden concerning access to its RCS system for Dynix information.

[13] Even if IBM were correct in asserting that allowing SCO access to CMVS would take "weeks" (and that "burden" may be overstated) that is not a significant discovery burden when placed in the context of other burdens routinely born in cases significantly less complex than this one, and much less of a discovery burden than SCO has repeatedly born in this case. Moreover, as IBM is aware, access to CMVS is needed by SCO for many purposes, not only for the identification of individuals sought in Interrogatory 5. That storage system may well illustrate the extent of the

7

SCO should not have to renew its motion to compel to secure compliance with this Court's March 3rd Order. To ensure that SCO receives the information to which it is entitled, IBM should be ordered to give SCO unfettered access to CMVC and RCS, which systems are clearly relevant to SCO's claims, to SCO's defense of IBM's counterclaims, and to SCO's discovery requests.

### C.  IBM Has Failed to Produce Witness Contact Information.

In its March 3rd Order, the Court specifically required "IBM to properly identify a representative sample of the potential witnesses that is to include a 1000 of the most important prospective trial witnesses as agreed upon by SCO and IBM." March 3rd Order at ¶ 6. In its declaration proclaiming its complete compliance with this Court's March 3rd Order, IBM represented to the Court that it would "provide contact information for additional names as SCO requests such information, up to a total of 1,000 names." Declaration of Todd Shaughnessy at p. 4. IBM has failed to abide by the terms of the Court's Order and IBM's certification. Consistent with the March 3rd Order, SCO asked IBM to identify 134 individuals for which IBM possessed contact information.[14] IBM refused. SCO therefore seeks the Court's assistance in requiring IBM to

---

dependence of IBM's program designers on proprietary Unix material, a matter that IBM has itself placed in issue with its recent counterclaims (on which it is now actually moving for summary judgment while simultaneously resisting discovery requests).

[14] SCO's request for information on 49 of the individuals was communicated by letter from Mark Heise to Peter Ligh, dated April 20, 2004 (attached as Exhibit "K"). At about that same time, IBM named 85 additional witnesses in IBM's Second Supplemental Responses and Objections to SCO's First Set of Interrogatories dated April 19, 2004. IBM, however, decided not to provide the contact information for the witnesses that were not current or former IBM employees, even though it possessed the information. SCO requested IBM to remedy its noncompliance and provide the contact information for these 85 additional witnesses by letter to IBM's counsel dated June 4, 2004. See letter from Mark Heise to Peter Ligh (attached as Exhibit "L"). By letter dated June 9, 2004, IBM claimed it was excused from producing the information because none of the individuals identified are presently affiliated with IBM. See letter from Peter Ligh to Mark Heise (attached as Exhibit "M"). In response, SCO pointed out that it was only seeking information that IBM had in its possession. Letter from Mark Heise to Peter Ligh, dated June 15, 2004 (attached as Exhibit "N"). IBM responded by claiming the request of SCO was now "unclear" and suggesting that the contact information in its possession might be work product. Letter from Peter Ligh to Mark Heise, dated June 16, 2004 (attached as Exhibit "O"). Not wanting to engage in further protracted discussions, which simply work to delay IBM's production of the Court-ordered information, SCO simply noted that IBM is under orders to provide this information and SCO expects IBM to comply. Letter from Mark Heise to Peter Ligh, dated July 6, 2004 (attached as Exhibit "P").

8

comply with the March 3rd Order and the representations in IBM's certification and provide the requested contact information.

There is no good faith basis for IBM's refusal to provide this information, particularly when IBM identified these same individuals as witnesses from whom it had retrieved documents to support its case. It is rather incongruous to claim that these people have relevant information when IBM wants to collect it, but are not when SCO wants to find out what they know.[15] Despite the Court's Order to produce this contact information, IBM again refused, raising new arguments as to why it should not have to produce information in its possession. Given that the Court has already spoken on this matter, SCO respectfully suggests such arguments are simply the furtherance of dilatory tactics. SCO should not be forced to engage in an ongoing letter writing campaign to obtain valid discovery. IBM should provide all last known contact information for the 134 individuals referenced by SCO in its letters to IBM (*see* Exhibits K and L) and all future identified witnesses, as previously ordered by the Court.

## II. IBM'S ONGOING PATTERN OF DISCOVERY ABUSE

Over one year ago, SCO served its discovery requests on IBM. Because those requests came early in the case, they sought the most basic types of discovery – the elements on which further discovery would be based and without which further discovery could not effectively proceed (e.g., names of witnesses, contact information, etc.). IBM's responses to these simple, foundational requests were incomplete and in many instances simply non-existent. SCO sought to resolve the matter with IBM, but found that this effort only resulted in further delay, ultimately leaving SCO no

---

[15] The failure to provide identification information is not only a violation of the March 3rd Order, but is violative of Rule 26(a)(1) as well. Rule 26(a)(1) requires that a party provide "without awaiting a discovery request . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1)(A)(emphasis supplied). Rule 26(e) requires that this information be supplemented to the extent necessary to keep it complete and up to date. Fed. R. Civ. P. 26(e).

9

other option but to move to compel IBM to respond. On March 3, 2004, this Court granted SCO's motion and <u>ordered</u> IBM to comply, requiring IBM to provide specified discovery that IBM had refused to provide and to also supplement its deficient responses.

IBM, to date, has still failed to comply with the Court's Order. Over one year after propounding discovery requests of the most basic type, SCO has been forced to move to compel production not once, but twice, simply to secure discovery that IBM should have provided at the outset and that this Court has already expressly ordered.[16]

Until SCO receives from IBM the basic discovery requested, which the Federal Rules contemplate will occur at the <u>outset</u> of the case, SCO remains severely handicapped in that it cannot use such initial discovery as the basis for more targeted discovery. Discovery battles are common in civil litigation. The pattern evidenced here is not. IBM contends in virtually every paper it files that SCO has no case, and that SCO seeks simply to achieve delay. But a defendant confident that its adversary has no case – and that wanted to avoid delay – would not force two separate motions to compel the most basic initial discovery (indeed that contemplated by Rule 26 should be produced without request) guaranteeing extraordinary delay, waste of judicial resources, and an unwarranted obstruction of a plaintiff's ability to develop its case. A defendant confident that its adversary has no case would not take every conceivable measure to ensure that it withheld even the addresses of its planned or potential trial witnesses, preventing its adversary from testing the defendant's case as the Federal Rules and this Court's Order explicitly require.[17] A defendant confident that its

---

[16] IBM will no doubt argue that part of the delay is due to the Magistrate's stay of discovery for three months. IBM continually attempts to recast the Magistrate's stay in a manner that places the blame for the stay on SCO when the Magistrate clearly had simply ordered SCO to go first stating that it was "essential to get the ball rolling in this circumstance." Transcript of Hearing, December 5, 2003 at 5-6 (attached as Exhibit "Q"). The March 3rd Order also states that IBM must produce documents that it failed to produce. None of this answers why now, months after the stay has ended, IBM still has not provided SCO with basic discovery and has not otherwise complied with the Court's Order.

[17] A defendant confident that its adversary had no case would not delay for nearly a year before providing even a single version of AIX – a program at the center of the case – a version which IBM did not and could not dispute it was obliged to provide, and a version IBM did not produce until the Court ordered its production.

10

adversary had no case would not seriously contend that the CEO of one of the world's most prominent computer companies never used e-mail regarding what the company describes as a major strategic initiative towards Linux (from which it now receives billions per year in revenue), or that the company's Board never discussed that initiative.

A defendant with any confidence in its own case would never do any of these things or take equally indefensible steps that would block the ability of any plaintiff from developing its case under the framework of the Federal Rules. It is even more unlikely that a defendant with confidence in its case would do all of these things and at the same time try to convince the Court, as IBM did here, to close fact discovery within 44 business days by double tracking depositions before relevant document production has even been made to the plaintiff (and also adding 14 new counterclaims to a schedule that did not and could not have contemplated or made room to accommodate them).[18] IBM did not prevail with that argument.[19]

IBM's conduct as set forth herein is just another part of IBM's overall strategy to hinder and delay SCO's prosecution of its claim. For example, as the Court is aware, IBM insisted on an accelerated deposition schedule and further insisted that there was "logic" to taking the first few depositions it had scheduled <u>before</u> it produced relevant discovery. At those depositions IBM attempted to "sandbag" SCO by making extensive use of affidavits it had obtained months earlier <u>but which it never provided to SCO</u>.[20] When SCO made a motion regarding this litigation by surprise tactic, IBM argued it should not have to provide before the depositions, declarations in its possession that it planned to use in the depositions. This Court rejected IBM's argument.

---

[18] *See* IBM's Memorandum in Opposition to SCO's Motion to Amend the Scheduling Order at 8 ("IBM believes that the current schedule provides sufficient time to complete discovery on both SCO's claims and IBM's counterclaims well in advance of the anticipated trial date.")

[19] If IBM's history of ignoring discovery obligations and Court orders continues, the Court will be forced to confront the same trial scheduling issues that were the subject of the hearing on June 8, 2004.

[20] Of note, IBM's plan backfired when its first and lead witness turned out to have had multiple insurance fraud convictions, drawing into question the veracity of his testimony.

These are not the positions of a defendant that believes its adversary has no case. These are extraordinary positions – positions calculated to ensure that even a plaintiff with a very strong case faces every possible hurdle and impediment. If IBM continues to fight its discovery obligations at every stage of discovery, either injustice will result or the case will go on forever. SCO seeks relief from the Court that will put an end to this extraordinary pattern so the case can proceed expeditiously. SCO has filed this renewed motion requesting that the Court <u>again</u> order IBM to respond completely and properly to SCO's discovery requests as previously ordered by this Court.

### III. CONCLUSION

Based upon the foregoing, SCO respectfully requests that the Court order IBM to provide immediate and complete responses to the SCO Discovery, including but not limited to full access to IBM's CMVS and RCS, full and complete production from top officers and directors at IBM, full and complete contact information regarding IBM's listed witnesses, and such other remedies the Court deems appropriate.

DATED this 6th day of July, 2004.

_____
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stephen N. Zack
Mark J. Heise

*Counsel for Plaintiff/Counterclaim defendant*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of it **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO COMPEL** was served on Defendant International Business Machines Corporation on this 6th day of July, 2004, as follows:

BY HAND DELIVERY:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, Utah 84101-1004

BY U.S. MAIL:

Evan R. Chesler, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

*/s/ Laura Campbell*

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.