

FILED
2004 AUG -4 P 5: 41

U.S. ... ... ...
DIST... ... ...

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, #1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF CHRISTOPHER SONTAG** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

213

Defendant/Counterclaim Plaintiff International Business Machines Corporation ("IBM") respectfully submits this Memorandum in Support of its Motion to Strike the Declaration of Christopher Sontag, dated July 12, 2004, submitted by Plaintiff/Counterclaim Defendant The SCO Group, Inc. ("SCO") in support of its Memorandum Regarding Discovery.

## Preliminary Statement

In support of its Memorandum Regarding Discovery, SCO has submitted (in reply) the Declaration of Christopher Sontag (hereinafter "Sontag Decl."), which purports to describe in great detail the operation of IBM's internal source code control system—known as Configuration Management Version Control ("CMVC")—and the manner in which materials can be produced from IBM's system. Not surprisingly, however, Mr. Sontag, a SCO employee, does not have (and does not even attempt to claim any) personal knowledge concerning CMVC. Nor has Mr. Sontag been qualified as an expert competent to testify on any of the specialized fields of knowledge upon which he opines at length. Instead, Mr. Sontag's declaration consists entirely of improper speculation and argument (and is replete with inaccuracies) and should be stricken from the record.

## Argument

A. The Court Should Strike the Sontag Declaration Because It Fails to Show Personal Knowledge.

The Court should strike Mr. Sontag's declaration because he fails to show any personal knowledge of the subject matter of his testimony. It is well-established that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; see Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541-42 (10th Cir. 1995). Moreover, a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are . . . rationally based on

2

the perception of the witness." Fed. R. Evid. 701; see Gardner v. Chrysler Corp., 89 F.3d 729, 737 (10th Cir. 1996). Thus, a lay witness's opinion testimony is not admissible if it is not "grounded in observation or other first-hand experience." See PAS Communications, Inc. v. Sprint Corp., 139 F. Supp. 2d 1149, 1181-82 (D. Kan. 2001).

Here, Mr. Sontag has submitted a sworn declaration expounding at length about IBM's CMVC system in particular and source code revision control systems generally, all in support of his personal opinion that IBM has "exaggerate[d]" the burden it would face if ordered to produce all the source code for AIX and Dynix/ptx going back twenty years, as SCO seeks both in its Memorandum Regarding Discovery and its recently-filed "Renewed" Motion to Compel. (Sontag Decl. ¶ 11.) Mr. Sontag's declaration, however, contains no statement showing he is personally familiar with IBM's CMVC system or even source code revision control systems at all. Mr. Sontag—a SCO employee—plainly has no personal knowledge of the subject matter of his testimony. Indeed, he instead claims to base his declaration in part on information from unnamed "reliable sources" and on "information and belief". (Sontag Decl. ¶ 1.) This is improper and Mr. Sontag's declaration should be stricken on this ground alone.

Mr. Sontag's lack of personal knowledge is further reflected by the content of his declaration, which is riddled with inaccuracies and false assumptions concerning CMVC. As IBM has described to this Court, IBM uses CMVC to provide shared access to source code files used in the development of various IBM products, to track changes made to source code files, and to ensure that only properly authorized individuals have access to such files. (6/23/04 Declaration of Joan Thomas ¶ 6, attached as Exhibit A to IBM's Opposition to SCO's Memorandum Regarding Discovery.) Although CMVC has been used in AIX development since 1991, the system also is used by many other areas inside of IBM for the development of other, unrelated products. (Id. ¶ 5.) CMVC keeps track of hundreds of thousands of source code

3

files, containing billions of lines of code, whether or not they end up in an actual version or release of AIX, or in any of the other hundreds of IBM products for which it is used. (Id. ¶ 6.)

In his declaration, Mr. Sontag argues, among other things, that IBM has used a "bottom up" approach in describing the significant burden associated with searching for and compiling the information SCO seeks from CMVC, and that IBM can and should use a "top down" approach instead, which he defines as "simply . . . look[ing]-up . . . AIX file names by the name 'AIX.'" (Sontag Decl. ¶ 18.) Mr. Sontag assures the Court that his proposed "top down" method for the use of IBM's system "will not only work, but will be sufficient and is the most time- and labor-efficient means for IBM to collect the CMVC information SCO requires," that IBM's AIX directories are "easily recognizable" in CMVC, and that "producing the materials SCO requests . . . should not take more than a few weeks." (Id. ¶¶ 3, 11-19, 22, & 23.) Even setting aside the fact that he has no personal knowledge of the operation of CMVC, Mr. Sontag's conjecture regarding his proposed "top-down" approach is simply wrong, as set forth in the accompanying Declaration of Joan Thomas. (See, e.g., 8/4/04 Declaration of Joan Thomas ¶¶ 7-8) ("Contrary to Mr. Sontag's assumptions, there is no directory or subdirectory name in CMVC that contains the word 'AIX'. Even the names of the files themselves do not usually contain the word 'AIX.' . . . . [D]etermining which components in CMVC are part of the AIX operating system is a time-consuming process that requires engineers intimately knowledgeable about the AIX operating system and about CMVC to engage in a time-consuming, multi-step process to extract the source code files that are part of the AIX operating system from the tens of thousands of other source code files that are not part of the operating system.")

Mr. Sontag's declaration accordingly should be stricken in its entirety. Mr. Sontag has introduced no evidence "sufficient to support a finding that the witness has personal knowledge" of the subject matter of his declaration. Fed. R. Evid. 602. Moreover, the opinions stated

throughout his declaration (and the conclusion SCO would have this Court draw)—that IBM's burden in producing all of the source code ever created for AIX and Dynix in the past two decades is insubstantial—is not only not "rationally based on the perception of the witness," it simply cannot have been "perceived" by this witness at all. Fed. R. Evid. 701 (emphasis added). In fact, as discussed, Mr. Sontag's opinions are based on false assumptions as to the operation of IBM's CMVC system.

  B. The Court Also Should Strike the Sontag Declaration Because It Does Not Qualify As Admissible "Expert" Opinion Testimony.

SCO also has not laid any foundation to offer Mr. Sontag as an "expert" witness, which might otherwise excuse his failure to show personal knowledge. In the Tenth Circuit, as elsewhere, lay witnesses are not permitted to "express an opinion as to matters . . . which require the special skill and knowledge of an expert witness." Randolph v. Collectramatic, Inc., 590 F.2d 844, 846 (10th Cir. 1979); see also Lifewise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004). "A holding to the contrary would encourage [parties] to offer all kinds of specialized opinions without pausing first properly to establish the required qualifications of their witnesses." United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997). "When the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge,'" a witness must be qualified as an expert under Rule 702. Telebank, 374 F.3d at 929. The field of computer science in particular "is precisely the type of 'specialized knowledge' governed by Rule 702." Hilgraeve Corp. v. McAfee Assoc. Inc., 70 F. Supp. 2d 738, 755 (E.D. Mich. 1999) (citations omitted), *vacated on other grounds,* 224 F.3d 1349 (Fed. Cir. 2000).

Mr. Sontag's declaration states only that he is one of SCO's Senior Vice Presidents and its General Manager. It contains no information whatsoever about his responsibilities, training,

5

education, or work history, much less information sufficient to qualify him as an expert in the fields of computer science, operating system development, revision control systems, or discovery or litigation support in any of these areas. As discussed above, despite this silence, Mr. Sontag offers numerous opinions in his declaration, ranging from an (incorrect) theory of CMVC's structure, to the exact length of time (two days) it should take IBM to copy the materials from CMVC onto DVDs, to the claim that IBM "exaggerates the burden it faces" associated with producing the billions of lines of AIX and Dynix source code SCO requests. (Sontag Decl. at ¶¶ 11, 20-30, 34.) Mr. Sontag (since he has no personal knowledge) is not permitted to offer the numerous opinions, inferences, and analogies he draws and discusses at length in his declaration, without establishing that he is a qualified expert witness competent to testify to these matters. As he makes no such attempt, Mr. Sontag's opinions should be disregarded.

Whether as a lay or an expert witness, therefore, Mr. Sontag's testimony is not competent evidence, and his declaration should be excluded in its entirety.

### Conclusion

For the foregoing reasons, IBM respectfully requests that the Court strike the Declaration of Christopher Sontag submitted in support of SCO's Reply Memorandum Regarding Discovery and not consider it in ruling on that memorandum and on SCO's "Renewed" Motion to Compel.

DATED this 4th day of August, 2004.

        SNELL & WILMER L.L.P.

        /s/ Alan L. Sullivan

        Alan L. Sullivan
        Todd M. Shaughnessy
        Amy F. Sorenson

        CRAVATH, SWAINE & MOORE LLP
        Evan R. Chesler
        David R. Marriott

        *Attorneys for Defendant/Counterclaim-Plaintiff*
        *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000
*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2004, a true and correct copy of the foregoing was hand delivered to the following:

>Brent O. Hatch *(w/ exhibits)*
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

and was sent by U.S. Mail, postage prepaid, to the following:

>Stephen N. Zack *(w/ exhibits)*
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

>Robert Silver *(w/ exhibits)*
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

Amy F. Sorenson

308076.2