

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S MEMORANDUM IN OPPOSITION TO SCO'S "RENEWED" MOTION TO COMPEL** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Civil No. 2:03CV-0294 DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |



Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in opposition to Plaintiff/Counterclaim-Defendant The SCO Group, Inc.'s ("SCO") "renewed" motion to compel.

## Preliminary Statement

IBM has complied in all respects with this Court's Order of March 3, 2004. Nevertheless, in the apparent hope of further delaying discovery and the resolution of claims ripe for summary adjudication,[1] SCO has submitted a "renewed" motion to compel claiming that IBM has failed to comply with its discovery obligations. SCO's is wrong and its motion should be denied.

To date, SCO has served 141 document requests and 22 interrogatories on IBM. In response, IBM has produced nearly one million pages of documents and more than 40 million lines of source code from IBM's AIX and Dynix operating systems, and has also provided a substantial amount of information in response to SCO's interrogatories (even in instances where IBM believed the information to be irrelevant).

SCO has moved to compel just once,[2] seeking the production of additional source code from IBM and contact information for more than 7,200 individuals. Upon consideration of SCO's motion, this Court directed IBM to provide information that IBM had offered voluntarily to provide SCO in an attempt to resolve the dispute without the Court's assistance (but which

---

[1] SCO filed the instant motion the day before it filed its opposition to IBM's motion for summary judgment on its Tenth Counterclaim. SCO then argued in its opposition papers that IBM's summary judgment motion should be denied, among other reasons, because a motion to compel was pending before this Court.

[2] After IBM filed a motion to compel seeking discovery, SCO moved in November 2003 to compel additional responses to only three of its document requests (Nos. 2, 3 and 11) and three of its interrogatories (Nos. 2, 4, and 5).

Case 2:03-cv-00294-DN Document 217 Filed 08/04/04 PageID.1600 Page 3 of 20

SCO refused to accept): certain specified releases of AIX and Dynix and contact information for a limited number of individuals. IBM provided all of these materials promptly upon receiving the Court's Order. SCO's accusation, therefore, that IBM has engaged in an "ongoing pattern of discovery abuse" (SCO Br. at 9) is unfounded and crafted, we believe, solely to detract attention from its own discovery failings and to delay the efficient resolution of this case.[3]

Setting aside SCO's grandstanding, SCO here asks that IBM be compelled to provide three categories of information that SCO claims (incorrectly) IBM failed to provide in response to the Court's Order. First, SCO seeks the production of the same AIX and Dynix source code that this Court already ruled IBM did not have to produce and that is also the subject of SCO's pending Memorandum Regarding Discovery (which was not even fully briefed when SCO filed this motion and has not yet been addressed by this Court).[4] Second, SCO seeks additional documents from IBM's "top level management" (SCO Br. at 2), despite the fact that IBM has repeatedly advised SCO that it has already produced the non-privileged documents responsive to SCO's requests located in the files of IBM's senior management. Third, SCO seeks contact

---

[3] SCO states that IBM has attempted to "hinder and delay SCO's prosecution of its claim" (SCO Br. at 11), despite the fact that SCO has resisted providing discovery sought by IBM at every turn and has refused for more than a year to match the source code in Linux to which SCO claims rights to source code in UNIX System V. Indeed, SCO recently represented to the court in Red Hat, Inc. v. The SCO Group, Inc. Civ. No. 03-772 (D. Del.) that SCO is aware of "significant instances of line-for-line and 'substantially similar' copying of code from Unix System V into Linux", but still refuses to provide that information to IBM.

[4] By this "renewed" motion, SCO has helped itself to no less than four briefs on the same issue—whether SCO is entitled to all of the source code files contained in IBM's internal databases regardless of whether SCO asserts that any of that source code is at issue in the case. SCO submitted its 17-page Memorandum Regarding Discovery on May 28, 2004 and its 27-page Reply Memorandum Regarding Discovery on July 12, 2004, both of which were devoted solely to this issue. SCO's 12-page brief in support of this "renewed" motion also is largely devoted to this issue. Presumably, SCO intends to submit a reply brief in support of its "renewed" motion as well.

information for witnesses for whom the Court did not require IBM to provide such information. With respect to each of these three categories of information, IBM has already provided to SCO all of the information it is obligated or should be required to produce.[5]

As IBM has fully complied with this Court's Order, SCO's "renewed" motion to compel should be denied. There is no legitimate basis for SCO's motion. Instead, SCO appears to have filed this motion merely to prolong discovery unnecessarily (by making IBM gather and produce masses of irrelevant information and information that SCO could discover on its own with little effort) and to forestall the adjudication of IBM's pending motion for summary judgment on its Tenth Counterclaim. Indeed, SCO filed this motion without conferring with IBM as required under DUCivR 37-1(a) and Fed. R. Civ. P. 37(a)(2)(A), presumably because SCO knew the issues it raises could easily have been resolved by the parties without involvement of the Court.

## Argument

### I. SCO DID NOT CONFER WITH IBM BEFORE FILING ITS MOTION.

SCO filed the instant motion <u>the day before</u> it filed its opposition to IBM's summary judgment motion on IBM's Tenth Counterclaim and then relied on the pendency of the motion to compel as grounds for denying IBM's summary judgment motion. It filed this motion, however, without any attempt properly to confer with IBM and in disregard of this Court's rule that the moving party submit "a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion". DUCivR 37-1(a); <u>see also</u> Fed. R. Civ. P. 37(a)(2)(A) (requiring certification "that the

---

[5] As the Court has never previously required IBM to provide these materials, SCO cannot properly characterize its instant application as a "renewed" motion.

309594.1

movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action"). SCO's motion should therefore be denied for this reason alone. See e.g., Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995) (denying motion to compel because moving party failed to adequately confer before filing motion); Hoelzel v. First Select Corp., 214 F.R.D. 634, 635-36 (D. Colo. 2003) (same).

Although the matters raised in SCO's motion could easily have been resolved without imposing on the Court, SCO failed even to discuss them with IBM. Instead, when IBM simply sought clarification as to exactly what information SCO proposed IBM provide for certain third-party witnesses, and to confirm that SCO was willing to provide IBM with the same information, SCO abruptly ended communication with IBM and filed this motion. (See Declaration of Amy F. Sorenson ("Sorenson Decl.") Exs. 1 & 2.) Moreover, had SCO asked (and it never did), IBM would have confirmed in writing that it has produced the non-privileged, responsive documents located in the files of its senior executives. Finally, as to the additional source code files sought by SCO, IBM would have suggested (quite reasonably, we believe) that SCO's Memorandum Regarding Discovery be addressed by the Court before SCO filed a separate motion seeking the same materials.

## II. IBM HAS FULLY COMPLIED WITH THE COURT'S ORDER.

SCO's "renewed" motion to compel should further be denied because IBM has fully complied with the Court's Order and there is no valid basis for the relief SCO seeks.

309594.1

### A. IBM Has Produced All of the Source Code Files to Which SCO Is Entitled.

Despite SCO's request (in its original motion to compel) that IBM be ordered to produce all source code files for its AIX and Dynix operating systems, the Court ordered in its March 3, 2004 Order, only that IBM provide "the releases of AIX and Dynix consisting of 'about 232' products as was represented by Mr. Marriott at the February 6, 2004 hearing". (3/3/04 Order at II.1.) IBM produced all of these releases of AIX and Dynix well in advance of the April 19, 2004 deadline set by the Court.[6]

In this "renewed" motion to compel, however, SCO asserts that IBM failed to comply with this Court's Order and engaged in "discovery abuse" by not producing the very source code files the Court held IBM did not have to produce. SCO's argument is frivolous. The Court rejected SCO's original motion seeking this information. Indeed, the Court specifically provided in its Order that it would "consider ordering IBM to produce more code from AIX and Dynix" only if SCO submitted additional briefing to the Court that would "include, with specificity, and to the extent possible, identification of additional files SCO requests and the reasons for such requests". (3/3/04 Order at II.1.)

SCO purportedly invoked this very procedure in filing its Memorandum Regarding Discovery on May 28, 2004 requesting the production of all source code (rather than just specific files) maintained by IBM for its AIX and Dynix programs in its internal "CMVC" and "RCS" databases. On June 23, 2004, IBM filed its Response to SCO's Memorandum Regarding Discovery (which IBM hereby incorporates by reference and will not repeat here)

---

[6] IBM produced virtually all of the source code ordered by the Court to be produced in its March 3, 2004 order on March 4 (the day after it was ordered to do so and six weeks before it was required). IBM completed its production of source code five days later on March 9.

setting forth the reasons IBM believes SCO's Memorandum Regarding Discovery should be denied. In short, IBM opposes SCO's application because the additional source code, roughly two billion lines of code, sought by SCO is irrelevant and unnecessary to this case and is unduly burdensome to produce.[7]

Nevertheless, before SCO's reply brief in support of its Memorandum Regarding Discovery was due, and before this Court even had the opportunity to consider SCO's application, SCO filed this "renewed" motion asking for the same source code files from IBM's internal databases. The request should be denied for the same reasons set out in IBM's Response to SCO's Memorandum Regarding Discovery. In any event, SCO's Memorandum Regarding Discovery should be heard by the Court before SCO is permitted to "renew" its motion to compel seeking additional source code files from IBM.

SCO's further insinuation that IBM failed to comply with the Court's direction to "provide further responses to SCO's interrogatory numbers two, five and eleven" by not producing the source code files from its internal databases also is meritless.[8] (3/3/04 Order at II.5.) Again, there is no basis for SCO's contention that IBM's failure to produce materials the Court specifically ruled IBM did not have to produce constitutes non-compliance with the Court's Order.

---

[7] Indeed, in light of SCO's complaints in opposition to IBM's summary judgment motion that it could take SCO "25,000 man-years" to review the millions of lines of source code already in its possession, SCO's contention that it requires still more source code from IBM is not credible and appears crafted solely to give SCO an excuse to further delay the proceedings in this case.

[8] As SCO points out, there appears to be a typographical error in the Court's Order, as SCO did not move to compel a further response to Interrogatory No. 11.

- 7 -

309594.1

SCO's initial motion to compel filed on November 4, 2003 (Sorenson Decl. Ex. 3) concerned three interrogatories—Interrogatory Nos. 2, 4 and 5. They provide as follows:

Interrogatory No. 2
List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues of this lawsuit; and specify the subject matter about which the witness has knowledge.

Interrogatory No. 4
Identify all persons who have or had access to UNIX source code, AIX source code and Dynix source code, including derivative works, modifications, and methods. For each such person, set forth precisely the materials to which he or she had access.

Interrogatory No. 5
Identify IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, specifying for each person their precise contributions to each.

(Sorenson Decl. Ex. 4.) SCO's principal complaint regarding IBM's initial responses to these interrogatories was that IBM failed to identify certain senior executives of IBM and third-party witnesses in response to Interrogatory No. 2 and to provide addresses for the individuals identified in response to Interrogatory Nos. 4 and 5. As we understood the March 3, 2004 Order, the Court directed IBM to provide this additional information. Accordingly, IBM served supplemental interrogatory responses on April 19, 2004 (Sorenson Decl. Exs. 5 & 6), identifying additional witnesses in response to Interrogatory No. 2 and providing contact information for certain IBM employees identified in Interrogatory Nos. 4 and 5.

SCO now suggests IBM failed to comply with the Court's Order because IBM has not specified, for each of the more than 7,200 individuals who IBM identified in its responses to Interrogatory Nos. 4 and 5, the exact contributions, if any, that such individual made to AIX, Dynix or Linux. The unreasonableness of SCO's request is obvious on its face, which is why IBM specifically objected to having to provide such information. SCO's case against IBM

- 8 -

309594.1

concerns code that IBM is alleged to have improperly <u>contributed to Linux</u>, as opposed to code that IBM developed for AIX and Dynix and <u>did not</u> contribute to Linux. As to Linux, the identity of each IBM employee that contributed source code to Linux and the exact contribution that employee made to Linux is a matter of public record and readily obtainable by SCO. Indeed, the Court specifically ruled in its Order that, with respect to IBM's Linux contributions, "SCO should use its best efforts to obtain relevant discovery from the Linux contributions that are known to the public".[9] (3/3/04 Order at II.2.)

As to AIX and Dynix, apart from reviewing the approximately two billion lines of source code that exist in IBM's internal databases (which even then will not necessarily identify the exact contributions of each individual), there is no precise way to determine what code any of the more than 7,200 individuals identified in response to Interrogatory Nos. 4 and 5 contributed to AIX or Dynix.[10] Since the vast majority of these source code files are wholly irrelevant to this case (under any theory) because they were <u>not</u> contributed to Linux, IBM does not believe there

---

[9] To the extent IBM employees made submissions to Linux that were not adopted and might not be available in the public domain, IBM has already produced such submissions to SCO as the Court directed.

[10] Accordingly, IBM noted in its response to Interrogatory No. 5 that, "<u>[t]o the extent readily determinable</u>, the precise contributions of these individuals can be ascertained from the public record in the case of IBM contributions to Linux and in the cases of AIX and Dynix from the products themselves". IBM's response is not misleading. Identifying the contributions of more than 7,200 individuals to AIX and Dynix, which each consist of millions of lines of code, cannot be performed with any precision, and is best undertaken in the first instance by reviewing the source code for AIX and Dynix for authorship information. SCO's complaint that IBM's response is "an abusive discovery response not designed to further the resolution of this case, but to obfuscate" is misdirected. (SCO Br. at 5 n.6.) On the contrary, it is SCO's <u>request</u>, which asks IBM to undertake a burdensome review of billions of lines of source code to provide information that is not even relevant to this case, that is abusive. SCO's interrogatory request is intended merely to provide cover for the shortcomings of SCO's discovery's responses and to delay the prompt resolution of this case.

is any basis for ordering the production of these source code files.[11] Moreover, as the Court established a specific procedure by which SCO could seek additional source code files, IBM did not understand the Court's order that IBM "provide further responses to SCO's interrogatory numbers two, five and eleven" to mean that IBM was required to produce all the source code files in IBM's CMVC and RCS databases that the Court had elsewhere ruled IBM need not produce. SCO's contrary interpretation of the Court's Order is illogical.

>   B.  IBM Has Searched For, and Produced, Responsive Documents From the Files of Its Executives and Board of Directors.

IBM has conducted a diligent search of its files for documents responsive to SCO's requests and has produced nearly one million pages of documents to SCO to date, almost twice the number of pages of documents produced by SCO. Notwithstanding SCO's speculation to the contrary, IBM has collected and produced the non-privileged, responsive documents that were found in the files of its senior executives and its Board of Directors. SCO's suggestion, therefore, that IBM has improperly "filtered" and excluded responsive documents is simply wrong. Accordingly, there is nothing for this Court to compel IBM to do—IBM has produced the documents requested by SCO.

Moreover, SCO in any event misstates the sequence of events in this case and the scope of the discovery to which SCO is entitled. First, SCO suggests that it has moved to compel "two times" to obtain documents from IBM's senior management. (SCO Br. at 3.) That is false. SCO's original motion to compel (Sorenson Decl. Ex. 3) addressed only three (Nos. 2, 3

---

[11] Apart from its bare assertions that the code is relevant, SCO still does not—because it cannot—explain the relevance of the millions of lines of source code that IBM did not contribute to Linux.

and 11) of the 52 requests contained in SCO's First Request for the Production of Documents (Sorenson Decl. Ex. 4), each of which requested that IBM produce certain computer code, not documents. Although some of the requests in SCO's First Set of Document Requests (e.g., Requests Nos. 32-35 and 42) call for the production of certain categories of documents concerning Linux, SCO's motion did not concern those requests.

The first time SCO asserted its (mistaken) belief that IBM had failed to produce responsive documents from its senior executives was at oral argument at the February 6, 2004 hearing before this Court, during which SCO appeared to complain primarily about IBM's failure to produce documents responsive to requests in SCO's Second Set of Document Requests (Sorenson Decl. Ex. 7), which were served on December 4, 2003, the day before the Court stayed further discovery of IBM.[12] (See 2/6/04 Hearing Tr. at 26.) In particular SCO appeared concerned that IBM had failed to produce documents responsive to Request No. 53, which asks for the production of:

> "All documents concerning IBM's decision to adopt, embrace or otherwise promote Linux, including but not limited to the following:
>
> a. all such documents in the possession of Sam Palmisano, Irving Wladawsky-Berger, Paul Horne [sic] and Nick Bowen;
>
> b. the report prepared by Nick Bowen, including all drafts and e-mails pertaining thereto, submitted to IBM management on or about December 20, 1999;
>
> c. all presentations made to IBM's top management including its Board of Directors concerning such decision;

---

[12] SCO did not confer with IBM as required under DUCivR 37-1(a) or Fed. R. Civ. P. 37(a) before raising this issue at oral argument.

- 11 -

309594.1

      d.      all documents from all Board of Directors' meetings relating to such decision, including Board notebooks, Board minutes and notes from all persons in attendance at such meetings."

(Sorenson Decl. Ex. 7.) This, of course, should have come as no surprise to SCO as it had served the request on IBM the day before the Court entered the stay, and the stay had not been lifted as of February 6, 2004.

In any case, IBM has fully complied with the Court's March 3, 2004 Order. IBM has produced approximately 2,500 pages of documents directly responsive to SCO's Request No. 53, which seeks documents concerning the Linux strategy adopted by IBM in 1999 and discussed in the March 20, 2000 *New York Times* article, including from IBM's CEO Samuel Palmisano, Paul Horn and Nick Bowen.

<u>Second</u>, SCO is plainly not entitled to "the <u>full files</u> of Palmisano, Wladawsky-Berger, [and] IBM's Board" as it now apparently suggests. (SCO Br. at 4 (emphasis added).) There is no basis for the Court to compel IBM to produce <u>every</u> document in the possession of Mr. Palmisano, Mr. Wladawsky-Berger and IBM's Board of Directors (such as those that simply contain the word "Linux" in them), without regard to the relevance of those documents to the issues in this lawsuit or whether they are privileged. SCO's request is overbroad on its face. SCO has served document requests seeking materials that at least SCO has identified as being relevant (often incorrectly, we believe) to its lawsuit against IBM. IBM searched the files of Mr. Palmisano, Mr. Wladawsky-Berger and the Board of Directors and produced whatever non-privileged, responsive documents exist in those files. IBM should not be made to produce documents that SCO has not even asked for in any of its document requests, and which bear no relevance to the issues in this case.

309594.1

C.  IBM Has Provided Contact Information For the Individuals Identified In IBM's Interrogatories.

SCO's contention that IBM has failed properly to provide SCO with contact information for certain witnesses is also mistaken. As an initial matter, IBM objected to providing contact information for each of the more than 7,200 individuals identified in response to Interrogatory Nos. 4 and 5 because IBM did not believe the information to be relevant and because of the burden involved in supplying such information. The Court's March 3, 2004 Order directed IBM to provide contact information for 1,000 of these individuals, as agreed upon by SCO and IBM, and IBM promptly sent a letter on March 9, 2004 to SCO asking it to identify the 1,000 individuals for whom it desired contact information. (See Sorenson Decl. Ex. 8.)

SCO apparently took the Court's Order as a license to demand that IBM provide contact information for any 1,000 individuals, including individuals never identified by IBM in response to any of SCO's interrogatories and third-party witnesses for whom IBM does not even possess any information. Thus, in response to IBM's March 9 letter, SCO asked IBM to provide contact information for individuals that IBM did not identify in response to SCO's Interrogatory Nos. 4 and 5.[13] (See Sorenson Decl. Ex. 9.) Subsequently, SCO sent a letter on June 4, 2004 requesting contact information for certain third-party witnesses identified by IBM in response to Interrogatory No. 2, including such individuals as SCO's co-founders Ransom Love and Bryan

---

[13] SCO claims that its March 26, 2004 letter merely asked for contact information for witnesses either identified by IBM in response to Interrogatory Nos. 4 and 5 or from whom IBM produced documents, but did not identify in its responses. However, SCO's request in fact also asked for contact information for witnesses whom IBM has never identified in its interrogatory responses and from whom IBM has not produced any documents.

Sparks, SCO's former general counsel Harrison Colter[14] and current SCO employee Michael Davidson, among others. (See Sorenson Decl. Ex. 10.) IBM does not possess contact information for these individuals, although counsel for IBM has found contact information or possible contact information for certain of these individuals in the course of its investigation (information that could just as easily be found by SCO).

IBM did not understand SCO's interrogatory requests or the Court's Order to be so far-ranging. Indeed, SCO itself has not come anywhere near to providing the type of information it now seeks to compel IBM to provide. For instance, for the majority of the third-party witnesses SCO identifies in its Supplemental Answer to IBM's Interrogatory No. 10 (Sorenson Decl. Ex. 11), SCO does not even provide the name of each witness's employer (as IBM did), let alone any contact information. (See id.) In addition, SCO provides no contact information for any of the nearly 40 individuals from whom it produced documents but failed to identify in its interrogatory responses. (See Sorenson Decl. Ex. 12.)

Although we do not believe SCO is entitled to such information, in the interest of moving this case forward and obviating a silly dispute, IBM has supplemented its interrogatory responses (without waiving its work product protections) and provided contact information for the individuals identified by SCO in its two letters to IBM. (See Sorenson Decl. Exs. 13 & 14.) For the third-party witnesses, IBM does not purport to certify the accuracy of the information provided, as the information has been gathered from public sources, such as the telephone book

---

[14] Mr. Colter is a member of the Utah State Bar, and counsel for The Canopy Group—SCO's largest shareholder—from whom third party discovery has been sought in this case. Mr. Colter's address and phone number not only appears in local legal directories and phone books, it appears on the letters he has written in this case, copies of which have been sent to SCO's counsel.

and various Internet websites. In fact, for many of these witnesses, such as current or former SCO employees, IBM believes that SCO is in a better position than IBM to know their contact information.

As a matter of fairness and reciprocity, IBM requests that SCO be ordered similarly to provide contact information in the possession of SCO or SCO's counsel for each of the witnesses identified in SCO's responses to IBM's interrogatories, including third-party witnesses, and each of the persons from whom SCO has produced documents but did not identify in its interrogatory responses.

### III. SCO'S "RENEWED" MOTION IS CRAFTED ONLY TO DELAY FURTHER THE PROCEEDINGS OF THE CASE.

SCO devotes nearly four pages of its brief to a diatribe touting the strength of its case against IBM (yet, consistent with its conduct throughout the case, still without showing any of its supposed evidence) and the alleged weakness of IBM's defenses. SCO's invective is not in any way relevant to the issues raised in its motion to compel and appears, in fact, to be written for an audience other than the Court.[15]

---

[15] The "pattern" of alleged discovery abuse is, as IBM has explained in this memorandum, entirely imagined by SCO. IBM has complied with its discovery obligations. Moreover, the notion that IBM "sandbagged" SCO by not providing SCO with certain fact witness declarations prior to their depositions is not well-founded. Courts have found such declarations to be work product not required to be produced in discovery. See, e.g., Abell v. Babbitt, No. 98-2315, 1999 WL 215403 at *2, (10th Cir. Apr. 14, 1999) (holding that witness affidavits attached to summary judgment motion were "not part of the discovery process, and are protected by the attorney-client and attorney work product privileges") (copy attached as Exhibit A); Battenfield of Am. Holding, Inc. v. Baird, Kurts & Dobson, No. 97-2336, 1999 WL 414312 at *2 (D. Kan. May 13, 1999) (denying motions to strike and for sanctions for failure to produce an executed witness declaration because the declaration constituted work product and was not required to be disclosed to opposing party) (copy attached as Exhibit B); Intel Corp. v. VIA Techs., Inc., 204 F.R.D. 450, 452 (N.D. Cal 2001) (denying motion to strike because executed witness declaration

In any event, SCO's assertion that IBM is seeking to prevent SCO from conducting discovery is baseless. As IBM's contributions to Linux and the identity of the contributors are a matter of public record, SCO has had from the beginning of this case (indeed, well before the beginning of this case), all it needs to determine who from IBM it would like to depose. In addition, with respect to any third-party witnesses, SCO is as least as well equipped as IBM to locate those witnesses. SCO's excuses for not diligently proceeding with discovery are entirely manufactured. There has been no impediment to SCO's taking discovery in this case apart from SCO's own desire to delay the resolution of this case for as long as possible so as to cultivate the fear, uncertainty and doubt it has sown in the marketplace regarding Linux.

. Indeed, SCO has abjectly resisted all efforts by IBM to proceed with discovery at every turn. Among other things:

- SCO has consistently refused to provide proper answers to IBM's interrogatories, including failing repeatedly—and despite two Court orders to do so—to identify the UNIX System V code from which code in Linux is allegedly copied. This despite the fact that SCO has represented in the media, and indeed to another federal district court, that SCO is aware of "significant instances of line-for-line and 'substantially similar' copying of code from Unix System V into Linux".

- SCO has consistently refused to produce documents responsive to IBM's document requests, including in particular source code analyses SCO has publicized as supporting its claims.

---

"was clearly work product right up until the moment it was filed" with summary judgment motion). Indeed, we believe SCO itself to be in possession of numerous such declarations that it has not produced to IBM. At any rate, simply because a witness's testimony is unfavorable for SCO does not mean that SCO has been "sandbagged".

- SCO has interfered with subpoenas IBM has served on third parties, including instructing third parties not to produce documents to IBM until after SCO had reviewed the third party's documents.[16]

- SCO moved (three days before they were scheduled to be taken) to prevent IBM from taking depositions of third-party witnesses that IBM had properly noticed and scheduled nearly one month in advance.

SCO's "renewed" motion is nothing more than an attempt by SCO to deflect attention from its own failings in discovery and to delay further the proceedings in this case, by forestalling a decision on IBM's pending motion for summary judgment and by seeking to occupy IBM in gathering and producing unnecessary and irrelevant discovery.

### Conclusion

For the foregoing reasons, SCO's "renewed" motion to compel should be denied.

DATED this 4th day of August, 2004.

SNELL & WILMER L.L.P.

/s/ Alan Sullivan

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

---

[16] In at least one instance so far, SCO directed a third party, S2 Consulting, to withhold subpoenaed documents from IBM, claiming attorney-client privilege and the work product immunity. IBM believes such withholding is inappropriate.

- 17 -

309594.1

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August, 2004, a true and correct copy of the foregoing was hand delivered to the following:

>Brent O. Hatch
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

and was sent by U.S. Mail, postage prepaid, to the following:

>Robert Silver
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, NY 10504

>Stephen N. Zack
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

_[signature]_

309594.1

# Exhibits/Attachments to this document have **not** been scanned.

## Please see the case file.