

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE MATERIALS SUBMITTED BY SCO IN OPPOSITION TO IBM'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

247

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in support of its motion to strike materials submitted by Plaintiff/Counterclaim-Defendant The SCO Group, Inc. ("SCO") in opposition to IBM's cross-motion for partial summary judgment on its Tenth Counterclaim.

## Preliminary Statement

In an attempt to create a fact dispute in opposition to IBM's cross-motion for partial summary judgment on its Tenth Counterclaim, SCO has submitted, and seeks to rely on, incompetent and inadmissible evidence. Under Rule 56(e) of the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the Court should exclude these materials from the record on IBM's motion.

Specifically, SCO offers the declarations of three witnesses, Sandeep Gupta, Chris Sontag and John Harrop, consisting almost entirely of testimony not made on personal knowledge and improper opinion testimony. Indeed, SCO does not even attempt to show that these witnesses may properly offer opinion testimony, either because the testimony is "rationally based on the perception" of the witnesses, Fed. R. Evid. 701, or that the witnesses are "qualified as . . . experts by knowledge, skill, experience, training, or education" and have applied "reliable principles and methods" in reaching their conclusions, Fed. R. Evid. 702. Furthermore, Mr. Harrop's declaration is replete with pure legal argument (which notably is primarily addressed to SCO's motion to dismiss, and not IBM's motion for summary judgment). Accordingly, the offending portions of the Gupta, Sontag and Harrop declarations should be stricken.

In addition, SCO seeks improperly to rely on certain news articles for the truth of their contents. That is classic inadmissible hearsay and should also be stricken. See Fed. R. Evid. 802.

2

## Argument

I. THE COURT SHOULD STRIKE THE DECLARATIONS SUBMITTED BY SCO IN OPPOSITION TO IBM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS TENTH COUNTERCLAIM.

To properly oppose a motion for summary judgment, the non-moving party must "go beyond the pleadings and 'set forth specific facts' that would be <u>admissible in evidence</u> in the event of trial from which a rational trier of fact could find for the nonmovant". <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 671 (10th Cir. 1998) (<u>quoting</u> Fed. R. Civ. P. 56(e)) (emphasis added). To the extent the non-moving party sets forth such facts in opposing affidavits, those affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein". Fed. R. Civ. P 56(e); <u>see</u> <u>Murray v. City of Sapulpa</u>, 45 F.3d 1417, 1422 (10th Cir. 1995) (on summary judgment, "[a] nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient" (internal citation omitted)). In this case, the witness declarations submitted by SCO—from Mr. Gupta, Mr. Sontag, and Mr. Harrop—are not made on personal knowledge and consist of inadmissible opinion testimony or legal argument. They should therefore be stricken from the record (along with all portions of SCO's opposition brief relying on such materials).

A. <u>The Court Should Strike the Gupta and Sontag Declarations and Portions of the Harrop Declarations for Failure to Show Personal Knowledge.</u>

As an initial matter, to the extent SCO offers Mr. Gupta, Mr. Sontag and Mr. Harrop as <u>fact</u> (as opposed to expert) witnesses, their testimony is inadmissible because it is not based on personal knowledge. Although both Mr. Gupta and Mr. Sontag claim, in conclusory fashion, to make their declarations based on "personal knowledge," no information about what that personal

knowledge might consist of, nor about how they may have come by it, can be found in their declarations. (Sontag Decl. ¶ 1; Gupta Decl. ¶ 1.)

Neither Mr. Gupta nor Mr. Sontag, for example, attempts to describe his duties and responsibilities at SCO (Mr. Gupta fails even to provide his title with the company; he states only that he is "employed," in some capacity, by SCO) or to state the basis for his personal knowledge of the matters described in his declaration.[1] To the contrary, Mr. Gupta makes clear that the beliefs set forth in his declaration were formed, at least in part, based on facts that were "represented to [him]" by unidentified individuals (see Gupta Decl. ¶¶ 3, 5, 24, 26, & 28), and both Mr. Gupta and Mr. Sontag expressly admit that their testimony is based on information from certain <u>unnamed</u> "reliable sources". (Id. ¶ 1; Sontag Decl. ¶ 1.) As Mr. Gupta and Mr. Sontag fail to show that any of their testimony—to the extent SCO intends it to be "fact" testimony—is based on personal knowledge, rather than on "information and belief" (Gupta Decl. ¶ 1; Sontag Decl. ¶ 1), their testimony cannot be considered by this Court and should be stricken from the record. See Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) ("statements of mere belief" in an affidavit "must be disregarded").

---

[1] Mr. Gupta nowhere states in his declaration that he personally performed any of the analyses—such as the comparisons of Linux code to UNIX code—described therein. Mr. Sontag insists in his declaration that "SCO and its experts" (whom he does not identify) have undertaken certain code comparisons, but pointedly does not describe how he was involved in such activities, if at all. (Sontag Decl. ¶¶ 1, 12, 14, 18-23.) To date, however, SCO has not identified any of its expert witnesses, and has refused to produce any of its experts' work that it has described publicly and in its discovery responses. (See 2/2/04 Letter from M. Heise to D. Marriott; 30(b)(6) Deposition of Christopher Sontag at 18:18-19:16; 111:5-16; 112:2-113:11; 279:5-280:9.) SCO should not be permitted to "selectively disclos[e]" its experts' work. See Quark, Inc. v. Harley, Nos. 96-1046, 96-1048 & 96-1061, 1998 U.S. App. LEXIS 3864, at *8 (10th Cir. Mar. 4, 1998) (attached hereto as Exhibit A). "[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." Id. at *8-*9 (quotation omitted). If SCO has retained experts to perform such work, then SCO should have submitted their declarations in opposition to IBM's motion. If SCO has not done so, or has done so but does not yet wish to disclose them, then it may not attempt instead to introduce such testimony through individuals who it will not—or cannot—qualify as experts.

4

Certain statements in the Harrop Declaration are deficient for the same reason. Although Mr. Harrop also states that his declaration is made "on personal knowledge" (Harrop Decl. ¶ 1), he does not even attempt to explain whether and how he has personal knowledge as to many of the subjects on which he testifies. For example, Mr. Harrop—one of SCO's attorneys in this matter—purports to testify to <u>facts</u> concerning Linus Torvalds and the creation of the Linux operating system (Harrop Decl. ¶¶ 33-34), without providing any basis for his personal knowledge of such facts.[2] Paragraphs 4, 7, 32-34, 41, 43, 47, 51, 59-61, 63-65, 69-72, 84, 91-95 of Mr. Harrop's declaration are similarly deficient and should be stricken because they are not based on personal knowledge.

B. The Court Should Further Strike the Gupta, Sontag and Portions of the Harrop Declarations, Because They Contain or Rely on Improper Opinion Testimony.

The Gupta and Sontag Declarations, and portions of the Harrop Declaration, should also be stricken because they contain or rely on inadmissible opinion testimony. For example, Mr. Gupta opines, based on supposed analysis, that "several routines and several groupings of code for which SCO has copyright protection were copied into the Linux operating system". (Gupta Decl. ¶ 3.) For his part, Mr. Sontag opines, among other things, that "us[ing] an automated process to perform a complete comparison of all of the source code in UNIX and Linux . . . is not

---

[2] Mr. Harrop's recitation of "facts" is particularly egregious to the extent it purports to rely on "public knowledge", because Mr. Harrop misrepresents what public information exists (which is all inadmissible hearsay in any case) concerning the development of Linux. In his declaration, Mr. Harrop recites as a fact that "[i]n his classes, Mr. Torvalds had been studying an operating system that one of his professors (having received an educational license to do so) based on and derived from UNIX". (Harrop Decl. ¶ 33.) It is a matter of public record that Linus Torvalds, however, who was then a student at the University of Helsinki in Finland, studied an operating system called Minix, which had been developed by Andrew Tanenbaum, a professor at Vrije University in the Netherlands (and not one of Mr. Torvalds' professors). See, e.g., http://en.wikipedia.org/wiki/ (entries for "Linus Torvalds" and "Andrew S. Tanenbaum"). It is also a matter of public record that Mr. Tanenbaum has stated, contrary to Mr. Harrop's assertion in his declaration, that "[t]he code [for Minix] was 100% free of AT&T's [UNIX] intellectual property". See http://www.cs.vu.nl/~ast/brown/.

5

feasible" and that manual review "could take on the order of 25,000 man-years". (Sontag Decl. ¶¶ 10, 14.) As SCO fails to establish that either Mr. Gupta or Mr. Sontag may properly provide this sort of opinion testimony, these declarations (and the portions of Mr. Harrop's declaration that rely on such opinions (¶¶ 41, 43, 50-51, 59-61, 63-65, 72, 92-95)) should be excluded from consideration on this motion. See Thomas v. Int'l Bus. Mach. Corp., 48 F.3d 478, 485 (10th Cir. 1995) (to be considered on motion for summary judgment, "affidavits must set forth facts as would be admissible in evidence, and <u>shall show affirmatively that the affiant is competent to testify to the matters stated therein</u>") (emphasis added) (internal citation omitted).

### 1. The Declarants' Opinions Are Not Based On First-Hand Experience.

Under Rule 701 of the Federal Rules of Evidence, a lay witness may only offer opinion testimony if such opinions are "rationally based on the <u>perception</u> of the witness". Fed. R. Evid. 701 (emphasis added); see Gardner v. Chrysler Corp., 89 F.3d 729, 737 (10th Cir. 1996). Thus, a lay witness's opinion testimony is not admissible unless it is "grounded in observation or other first-hand personal experience". PAS Communications, Inc. v. Sprint Corp., 139 F. Supp. 2d 1149, 1181-82 (D. Kan. 2001).

As neither the Sontag Declaration nor the Gupta Declaration "show[s] affirmatively" that any of the opinion testimony contained therein is "grounded in observation or other first-hand personal experience", they are inadmissible. Id. at 1181-82. For this reason, the Court should decline to consider Mr. Gupta's and Mr. Sontag's opinion testimony (and those portions of the Harrop Declaration that rely on those opinions) in ruling on IBM's motion.

### 2. The Declarants Do Not Purport to be Experts Qualified to Submit Opinion Testimony.

Although <u>expert</u> witnesses may properly provide opinion testimony even if it not based on first-hand observation, see Fed. R. Evid. 702, SCO also fails to show that Mr. Gupta and Mr. Sontag are qualified experts competent to testify to the technical subject matters in their

6

declarations. For this reason also, the opinion testimony in the Gupta and Sontag Declarations (as well as those portions of the Harrop Declaration that rely on those opinions) should be stricken from the record.

In the Tenth Circuit, as elsewhere, a lay witness is not permitted to "express an opinion as to matters . . . which require the special skill and knowledge of an expert witness". Randolph v. Collectramatic, Inc., 590 F.2d 844, 846 (10th Cir. 1979); see also Lifewise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004). "When the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge'", a witness must be qualified as an expert under Rule 702. Telebank, 374 F.3d at 929 (quoting Fed. R. Evid. 702). "A holding to the contrary would encourage [parties] to offer all kinds of specialized opinions without pausing first properly to establish the required qualifications of their witnesses." United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997). Accordingly, a party seeking to introduce expert testimony must "demonstrate[ ] to the district court that [the purported expert] was qualified to render an expert opinion". Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n.4 (10th Cir. 2001).

Although the field of computer science "is precisely the type of 'specialized knowledge' governed by Rule 702," Hilgraeve Corp. v. McAfee Assocs. Inc., 70 F. Supp. 2d 738, 755 (E.D. Mich. 1999) (citations omitted), vacated on other grounds, 224 F.3d 1349 (Fed. Cir. 2000), SCO offers only the following as foundation for the Gupta Declaration: "My name is Sandeep Gupta and I am employed by The SCO Group, Inc. My office is located at 430 Mountain Avenue, Murray Hill, NJ 07974". (Gupta Decl. ¶ 1.) This statement, along with an assertion that "this declaration is based on my personal knowledge and information available to me from reliable sources," is the only foundation offered for the 30-page, 86-paragraph declaration that follows. Plainly, Mr. Gupta's statements are not sufficient to show that Mr. Gupta possesses the expertise required to provide the type of opinion testimony he purports to give in his declaration.

7

To take just one example, Mr. Gupta opines in his declaration that he believes that "Linux RCU and UNIX RCU" are "substantially similar" because they "perform the same five acts": "[a]llocating a new data structure of a different size"; "[c]opying the contents of the old data structure to the new data structure"; "[u]pdating the new data structure"; "[u]pdating or redirecting a pointer to point to the new data structure"; and "[a]rranging for deferred deletion of the old data structure." (Id. ¶¶ 10, 11.) Nowhere does Mr. Gupta's declaration establish that he possesses any specialized knowledge that would permit him to proffer such opinions.

Like the Gupta Declaration, the Sontag Declaration contains some twenty-two pages of opinion testimony of its own without any attempt to show that Mr. Sontag is qualified to offer such testimony. Instead, the Sontag Declaration states only that Mr. Sontag is "Senior Vice President and General Manager of The SCO Group, Inc.," that he works out of SCO's offices in Lindon, Utah, and that "[u]nless otherwise noted or evident from their context, this declaration is based on [his] personal knowledge and information available to [him] from reliable sources." (Sontag Decl. ¶ 1.)

Despite failing to provide so much as a sentence describing his "knowledge, skill, experience, training, or education," as Rule 702 requires, Mr. Sontag nevertheless opines on a variety of topics within the specialized fields of operating systems, computer programming, and electronic discovery, including methods for performing code analyses (id. ¶¶ 4-25); the function and composition of an operating system kernel (id. ¶¶ 6-7); the structure, size, and contents of the UNIX, Linux, AIX, Dynix, ptx, and Dynix/ptx operating systems (id. ¶¶ 5, 8, 14-16, 36-42); software revision control systems, including one known as Configuration Management Version Control ("CMVC") that is proprietary to IBM (id. ¶¶ 26-49); software development generally (id. ¶¶ 30-42); "bug" fixing and tracking (id. ¶¶ 30-36); the nature and uses of software development white papers, design documents, and programming notes (id. ¶¶ 50-56); and the Linux

8

development process. (Id. ¶ 57.)³ All of this testimony, which is plainly unqualified "expert" testimony dressed up as testimony from a fact witness, should be stricken from the record.

Compounding the problem with Mr. Gupta's and Mr. Sontag's improper opinion testimony, Mr. Harrop's declaration purports to rely on these opinions to support his own opinion testimony that SCO should be permitted to take additional discovery under Rule 56(f). For example, Mr. Harrop expressly relies on and cites to Mr. Gupta's improper opinion testimony regarding substantial similarity, characterizing Mr. Gupta's opinions as "evidence [that] demonstrates copying from UNIX into Linux." (Harrop Decl. ¶ 72 (citing Gupta Decl. ¶¶ 3-86) (emphasis added).)⁴ Mr. Harrop also repeatedly relies on Mr. Sontag's improper testimony. (See Harrop Decl. ¶¶ 41, 43, 50-51, 59-61, 63-65, 92-95.)

Because SCO declined to lay any foundation for the admission of what can only be described as expert testimony from Mr. Gupta and Mr. Sontag, the Court should strike or disregard those declarations in their entirety, as well as paragraphs 41, 43, 50-51, 59-61, 63-65, 72, and 92-95 of the Harrop Declaration, which expressly rely on that inadmissible testimony for foundation. Randolph, 590 F.2d at 846.

        3.     Even if Mr. Gupta Were A Qualified Expert, His Testimony Should Nevertheless Be Excluded Because It Is Unreliable.

In any case, even if Mr. Gupta were a qualified expert witness, his testimony would nevertheless be inadmissible. Under the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., the trial court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993); see also Atlantic

---

³ In some instances, Mr. Sontag even states that his opinions would only be clear to "a skilled UNIX programmer" or an "experienced UNIX programmer", (Sontag Decl. ¶¶ 37, 39) though he does not claim to be one himself.

⁴ Likewise, Mr. Sontag also relies on some of Gupta's improper opinion testimony in his declaration. (See Sontag Decl. ¶¶ 27, 47.)

9

Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1163 (10th Cir. 2000). In undertaking this analysis, a court may consider four non-exclusive factors: (1) whether a "theory or technique . . . can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether, for a particular technique, there is a "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Daubert, 509 U.S. at 592-94; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999).[5]

Here, the purported analysis that Mr. Gupta performed is inherently unreliable and should be stricken. As an initial matter, although Mr. Gupta offers his opinion that "several routines and several groupings of code for which SCO has copyright protection were copied into the Linux operating system" (Gupta Decl. ¶ 3), he fails even to state what methodology he used to reach such conclusions, reason alone to ignore them. See Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1208 (10th Cir. 2002) (affirming grant of summary judgment and court's ruling striking expert testimony where the expert "provide[d] no details on the methodology" of his studies). He nowhere identifies the method he used, if any, to identify the specific Linux and UNIX code he discusses in his declaration, and he nowhere states the method he used to determine that the Linux code is "substantially similar" to certain UNIX code. Lacking even the most basic information about how he arrived at his conclusions, the "reliability" of Mr. Gupta's testimony simply cannot be assessed at all, much less be found to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Daubert, 509 U.S. at 589; Kumho Tire, 526 U.S. at 152.

---

[5] In Kumho Tire, the Supreme Court made clear that its analysis in Daubert also applied to engineers and other experts who are not scientists.

Moreover, Mr. Gupta's analysis wholly ignores the "abstraction-filtration-comparison" test for determining whether two computer programs are "substantially similar" as set forth by the Tenth Circuit in Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823 (10th Cir. 1993). The test requires, among other things, that a court "filter out those elements of the program which are unprotectable" and then "compare the remaining protectable elements with the allegedly infringing program to determine whether the defendants have misappropriated substantial elements of the plaintiff's program". Id. at 834. Mr. Gupta's methodology is fatally flawed because he fails to address whether the allegedly copyrighted material that he identifies is unprotectable and thus must be filtered, or whether, at the comparison stage, the material is "substantial".

As described in detail in the Declaration of Brian W. Kernighan, which IBM is submitting together with IBM's reply memorandum in support of its cross-motion for partial summary judgment on its Tenth Counterclaim, Mr. Gupta fails to perform any filtration at all. The Tenth Circuit explained in Gates Rubber that "[f]iltration should eliminate from the comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular facts of the program under examination." Id. at 834. As the materials identified in Mr. Gupta's declaration are all unprotectable, they do not, and cannot, support Mr. Gupta's opinion of "substantial similarity". (See Kernighan Declaration ¶¶ 18, 20-25.)

For example, Mr. Gupta opines that "Linux RCU is substantially similar to UNIX RCU". (Gupta Decl. ¶ 10.) Mr. Gupta's entire analysis, however, is focused on unprotectable ideas that must be filtered during any assessment of "substantial similarity". See Gates Rubber, 9 F.3d at 836 ("One of the fundamental tenets of copyright law is that protection extends only to the author's original expression and not to the ideas embodied in that expression."). Mr. Gupta himself describes the allegedly similar material he identifies in his declaration as "routine[s]" (¶¶

11

3, 5, 10) and "methods" (¶¶ 6, 7) that "perform the same five acts" (¶ 11). This material is plainly unprotectable. See Gates Rubber, 9 F.3d at 836-37 (noting that "the main purpose or function of a program will always be an unprotectable idea" and that "the expression adopted by the programmer is the copyrightable element in a computer program . . . the actual processes or methods embodied in the program are not"). Moreover, when the actual expression—i.e., the code—in what Mr. Gupta calls "Linux RCU" and "UNIX RCU" is compared side-by-side, as in Mr. Gupta's own Exhibit A (in columns 1 and 4), even the untrained reviewer can determine that they are completely different and not even close to being "similar".

In addition, as is also described by Dr. Kernighan, Mr. Gupta also fails to perform any analysis of whether the alleged similarities he identifies are "substantial". (See Kernighan Decl. ¶¶ 19, 26-27.) "Substantial similarity" may be found, according to the Tenth Circuit, only where "those protectable portions of the original work that have been copied constitute a substantial part of the original work—*i.e.*, matter that is significant in the plaintiffs' program". Id. at 839. Mr. Gupta does not, in his declaration, make any attempt to demonstrate that the code he identifies (which in total consists of no more than a couple hundred lines of code (out of programs that are each millions of lines long) is significant.

Far from constituting a reliable method for determining "substantial similarity", therefore, the Gupta Declaration instead employs an unidentified methodology that ignores the requirements of Gates Rubber, and IBM respectfully submits that it should be stricken in its entirety for this additional reason.

### C. The Court Should Strike the Harrop Declaration Because It Sets Forth Legal Argument and Conclusions, Not Evidence.

The Court also should strike portions of the Harrop Declaration because it is argument, not evidence. It is well-established that "[b]ecause legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal

12

argument in an affidavit may be disregarded." Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir. 1985); see American Airlines, Inc. v. Platinum World Travel, 717 F. Supp. 1454, 1456 n.1 (D. Utah 1989) (holding that witness's "legal conclusions [in his affidavit] are inadmissible and of no effect"); Safetech Int'l, Inc. v. Air Prods. and Controls, Inc., No. 02-2216, 2004 U.S. Dist. LEXIS 2173, at *7 (D. Kan. Feb. 3, 2004) (attached hereto as Exhibit B) ("Rather than setting forth facts based on personal knowledge, the affidavit is littered with unsubstantiated statements and legal conclusions. The Court has disregarded all conclusory, self-serving so-called facts in its determination of the uncontroverted facts material to this Order.").

Here, the Harrop Declaration sets forth page after page of legal argument. Among other things, the Harrop Declaration contains argument characterizing the scope of IBM's Tenth Counterclaim (¶¶ 20, 24-27, 40), purporting to differentiate the relative adequacy of both IBM's and SCO's discovery responses (¶¶ 21-22, 76-90), and setting forth SCO's interpretation of Judge Wells's ruling on the parties' motions to compel (¶ 23). Moreover, the Harrop Declaration includes argument that is apparently intended to support SCO's motion to dismiss IBM's Tenth Counterclaim, and thus bears little, if any, relevance to SCO's opposition to IBM's cross-motion for summary judgment. (¶¶ 15-19.) For example, Mr. Harrop argues that:

- "[I]t is undisputed that the significance of the distinction [between permissive and compulsory counterclaims] is that the Court may dismiss a permissive counterclaim that would unduly complicate the litigation."

- "IBM's Tenth Counterclaim is permissive because . . . it is not one that 'arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.'"

- "The inappropriateness of IBM's Tenth Counterclaim and the fact that SCO's Motion to Dismiss or Stay the Tenth Counterclaim is still pending support SCO's opposition to IBM's Motion."

13

> • "By bringing the claims it did, SCO has specifically avoided the need for the broad and time consuming discovery necessary to determine (by way of example) the full scope of IBM's numerous activities relating to Linux . . . ."

(See Harrop Decl. ¶¶ 15-17, 19.)

Because they constitute little more than additional briefing by SCO, both in support of its opposition to IBM's cross-motion for summary judgment and on other unrelated issues (such as SCO's contract claims against IBM), the Court should strike paragraphs 5-9, 11-24, 27, 29-30, 36, 39-40, 47, 62, 67, 69 and 76-90 of the Harrop Declaration, and decline to consider them in ruling on IBM's motion.

## II. THE COURT ALSO SHOULD EXCLUDE CERTAIN OF THE DOCUMENTS SUBMITTED BY SCO IN OPPOSITION TO IBM'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

The Court should also strike certain of the documents SCO has attached as exhibits (Exhibits 38, 41, 44, 52, 56, 57, 58, 59, 64) to its opposition brief because, for the propositions asserted by SCO, they are inadmissible hearsay.[6]

Rule 801 of the Federal Rules of Evidence states that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted". In its opposition brief, SCO offers a number of news articles in

---

[6] It should be noted that SCO failed properly to authenticate documents it has submitted for the Court's consideration. Rather than submit its evidence as exhibits to an affidavit or declaration attesting to their authenticity, SCO has simply attached them as exhibits to its unsworn opposition brief. As a technical matter, therefore, SCO's exhibits should be excluded from consideration on this motion. See IBP, Inc. v. Mercantile Bank of Topeka, 6 F. Supp. 2d 1258, 1263-64 (D. Kan. 1998) ("It is well established . . . that a party cannot rely on unauthenticated documents to avoid summary judgment. . . . Although [plaintiff] may have an official who can authenticate the materials, the court is under no obligation at the summary judgment stage of proceedings to examine all the hypothetical ways in which evidence could be reduced to an admissible form by the time of trial.")

14

evidence solely to prove the truth of the matters asserted therein.[7] SCO cites to news articles to support its conclusory assertions that the "Linux development process did not employ any mechanism to ensure that intellectual property rights, confidentiality, or security were protected" (SCO's Statement of Facts ("SCO Facts") ¶ 11, citing Ex. 44);[8] that "the identities of all the principal contributors to Linux are not public information" (SCO Facts ¶ 12, citing Ex. 59), and that several companies, including IBM and Sequent, created "modifications of UNIX" (SCO Facts ¶ 3, citing Ex. 57).

Even setting aside that the articles do not support the broad assertions for which SCO cites them,[9] the documents cited by SCO are classic inadmissible hearsay and cannot be considered on a motion for summary judgment. Fed. R. Evid. 802; see N.E.W. & C.M.W. v. Kennard, 952 F. Supp. 714, 716 (D. Utah 1997) (granting defendant's "motion to strike, from summary judgment consideration, a newspaper article" because the "newspaper article is hearsay not otherwise reliable or admissible"); Johnson v. Housing Authority of City of McAlester, Okla., 887 F. Supp. 1440, 1446 (E.D. Okla. 1995) (holding that "newspaper articles" cited in support of summary judgment were "inadmissible hearsay"). Accordingly, Exhibits 41, 44, 57, and 59, along with the portions of SCO's opposition brief that rely on such documents (SCO's Facts ¶¶ 3, 11, 12) should be stricken.

Mr. Harrop's declaration similarly relies on hearsay contained in news articles. For example, at paragraphs 69-71 of his declaration, Mr. Harrop purports to testify—by quoting

---

[7] SCO does not, for instance, rely on the articles for non-hearsay statements, such as admissions by a party-opponent, see Rule 801, or for statements that qualify as exceptions to the hearsay rule, see Rules 803 and 804.

[8] Although SCO cites to Exhibit 44 in its opposition brief, it appears to be referring to what SCO has attached as Exhibit 41. IBM therefore moves to strike Exhibit 41 as well.

[9] For example, Exhibit 57, which appears to be a printout of a table posted on the Internet by an unknown author, does not state anywhere that any company created "modifications of UNIX" as SCO alleges.

various news articles—that "many individuals familiar with Linux recognize that source code therein may infringe SCO's copyrights." (Id. ¶¶ 69-71, citing Exs. 56 & 64.)[10] Again, not only do the documents cited by Mr. Harrop not support his sweeping assertions, they are simple hearsay and are inadmissible. The Court should therefore strike Exhibits 38, 41, 44, 52, 56, 58 and 64 cited in the Harrop Declaration and paragraphs ¶¶ 37-39, 54 and 69-71 of the declaration that rely on those documents.

As a final matter, SCO has also attached 11 exhibits (Exs. 24, 25A, 33, 36, 42, 50, 51, 61, 63, 65, S-3) to its opposition brief that are not referenced anywhere in SCO's brief or in any of the three witness declarations submitted by SCO. As these materials are plainly extraneous to the record, they should be stricken as well.

## Conclusion

For the foregoing reasons, IBM respectfully submits that the Court strike the Gupta and Sontag Declarations in their entirety, as well as paragraphs 4-9, 11-24, 27, 29-30, 32-34, 36-41, 43, 44, 47, 50-52, 54, 56, 58-65, 67, 69-72, 76-95 of the Harrop Declaration, and not consider them in ruling on IBM's Cross-Motion for Partial Summary Judgment on its Tenth Counterclaim. In addition, IBM respectfully submits that the Court should strike Exhibits 24, 25A, 33, 36, 38, 41, 42, 44, 50-52, 56-59, 61, 63-65 and S-3. Finally, IBM respectfully submits that all portions of SCO's opposition brief relying on the improper testimony of Mr. Gupta, Mr. Sontag and Mr. Harrop or inadmissible documents also be stricken from the record, including in particular ¶¶ 1 n.3, 3, 8, 10, 10 n.5, 11, 12-14, 40, 44 and 47 of SCO's statement of facts.

---

[10] In addition, Mr. Harrop relies on inadmissible hearsay to support his assertions about the extent of IBM's Linux activities. (See Harrop Decl. ¶¶ 37-39, citing Exs. 38, 44, 52, 58.)

DATED this 23rd day of August, 2004.

                                                SNELL & WILMER L.L.P.

                                                /s/ Alan L. Sullivan

                                                Alan L. Sullivan
                                                Todd M. Shaughnessy
                                                Amy F. Sorenson

                                                CRAVATH, SWAINE & MOORE LLP
                                                Evan R. Chesler
                                                David R. Marriott

                                                *Attorneys for Defendant/Counterclaim-Plaintiff*
                                                *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2004, a true and correct copy of the foregoing was hand delivered to the following:

>Brent O. Hatch
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

and was sent by U.S. Mail, postage prepaid, to the following:

>Stephen N. Zack
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

>Robert Silver
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

Amy F. Sorenson

SORENSA\SLC\312079.1

18

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.