FILED

Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP<br><br>    Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF/COUNTERCLAIM DEFENDANT SCO'S MOTION TO DISMISS OR STAY COUNT TEN OF IBM'S SECOND AMENDED COUNTERCLAIMS**<br><br>Case No. 2:03CV0294DAK<br><br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

254

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ...................................................................................................... 9

I.  IBM'S SWEEPING TENTH COUNTERCLAIM IS PERMISSIVE ................................. 9

    A.  IBM's Principal Argument Depends on a Gross Mischaracterization
        of SCO's Claims .................................................................................. 9

        1.  IBM's Primary "Mirror Image" Argument Is Both Inaccurate
            and Meritless ..................................................................... 9

        2.  IBM's Claims About SCO's Prior Statements
            Do Not Support Its Position ................................................ 14

    B.  The Overlap Between SCO's Actual Claims and Part of IBM's Tenth Counterclaim
        Does Not Make the Tenth Counterclaim Compulsory ......................................... 16

        1.  IBM's Tenth Counterclaim Presents Substantially Different
            Factual Evidence and Legal Issues Than SCO's Claims .......................... 17

        2.  Res Judicata Would Not Bar IBM, Because the Requisite
            Logical Relationship Is Absent ................................................ 18

II.  THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO DISMISS
    IBM'S TENTH COUNTERCLAIM ............................................................ 21

    A.  The Court Has Broad Discretion to Dismiss a Permissive Counterclaim ............ 21

    B.  IBM's Tenth Counterclaim Would Burden the Court and SCO by Adding
        Undue Complexity to This Already Extraordinarily Difficult Case .................... 22

        1.  IBM's Appeal to "Economy" and "Efficiencies" Is Baseless ................. 23

        2.  The Current Status of Discovery in This Case Belies IBM's
            Suggestion That Its Tenth Counterclaim Would Not
            Unduly Complicate This Litigation ........................................... 24

        3.  IBM's Tenth Counterclaim Would Add Numerous
            Significant Burdens ............................................................ 26

CONCLUSION .................................................................................................... 29

## Table of Authorities

### CASES

ABC Rail Products Corp. v. Progress Rail Services Corp.,
   No. 98 C 3663, 1998 WL 641369 (N.D. Ill. Sept. 11, 1998)...........................21, 27, 29

Amwest Surety Insurance Co. v. Concord Bank,
   No. 4:00CV1988SNL, 2003 WL 553229 (E.D. Mo. Feb. 4, 2003).............................14

Autographic Register Co. v. Philip Hano Co.,
   198 F.2d 208 (1st Cir. 1952)...............................................................................20

Aviation Materials, Inc. v. Pinney,
   65 F.R.D. 357 (N.D. Okla. 1975)..................................................................22, 29

Board of Education v. Admiral Heating and Ventilation, Inc.,
   511 F. Supp. 343 (N.D. Ill. 1981) .................................................................22, 27

Chrysler Credit Corp. v. Country Chrysler, Inc.,
   928 F.2d 1509 (10th Cir. 1991) ...........................................................................29

Davis v. Norris,
   No. 99-4149, 2002 WL 819274 (10th Cir. May 1, 2002)..............................................19

Dean v. Anderson,
   No. 01-2599-JAR, 2002 WL 31115239 (D. Kan. Sept. 18, 2002) ..............................14

Diver Music Co. v. Commercial Union Insurance Cos.,
   94 F.3d 1428 (10th Cir. 1996) .....................................................................3, 9, 20

Fadum Enterprises, Inc. v. Liakos,
   694 F. Supp. 973 (D. Mass. 1988) .......................................................................21

Fed. Dep. Ins. Co. v. Project Dev. Corp.,
   819 F.2d 289, 1987 WL 37488 (6th Cir. May 27, 1987)..............................................14

Freedom International Trucks, Inc. of N.J. v. Eagle Enterprises,
   No. Civ. A. 97-4237, 1998 WL 695397 (E.D. Pa. Oct. 5, 1998)................................29

Heard v. Board of Public Utilities for the City of Kansas City, Kansas,
   316 F. Supp. 2d 980 (D. Kan. 2004).....................................................................19

Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.,
   75 F. Supp. 2d 1290 (D. Utah. 1999)............................................................18

MAI System Corp. v. Peak Computer Inc.,
   991 F.2d 511 (9th Cir. 1993) .......................................................................12

Mille Lacs Band of Chippewa Indians v. Minnesota,
   152 F.R.D. 580 (D. Minn. 1993)..................................................................14

Mille Lacs Band of Chippewa Indians v. Minnesota,
   853 F. Supp. 1118 (D. Minn. 1994).............................................................20

N. Branch Products, Inc. v. Fisher,
   284 F.2d 611 (D.C. Cir. 1960)......................................................................20

Petromanagement Corp. v. Acme-Thomas Joint Venture,
   835 F.2d 1329 (10th Cir. 1988) ...................................................................19

Rosemont Enterprises Inc. v. Random House, Inc.,
   261 F. Supp. 691 (S.D.N.Y. 1966) ........................................................22, 27

RSL Holding Co. Inc. v. Dresser Indus., Inc.
   No. 89 C 7004, 1991 WL 203864 (N.D. Ill. Oct. 1, 1991)...........................14

S. Cooperative Development Fund v. Driggers,
   527 F. Supp. 927 (M.D. Fla. 1981)..............................................................22

SEC v. Republic National Life Insurance Co.,
   383 F. Supp. 436 (S.D.N.Y. 1974) ........................................................22, 29

S. Megga Telecommunications Ltd. v. Lucent Techs., Inc.,
   No. 96-357-SLR, 1997 WL 86413 (D. Del. Feb. 14, 1997)........................21

Salomon S.A. v. Scott USA Ltd. Partnership,
   117 F.R.D. 320 (D. Mass. 1987)..................................................................29

Sandwich Chef of Texas, Inc. v. Reliance National Indemn. Insurance Co.,
   202 F.R.D. 212 (S.D. Tex. 2001).................................................................29

Schlossberg v. Koehring Co.,
   333 F. Supp. 1345 (E.D. Wis. 1971)............................................................14

Spencer, White and Prentis Inc. of Connecticut. v. Pfizer Inc.,
    498 F.2d 358 (2d Cir. 1974).................................................................29

Stenograph L.L.C. v. Bossard Associates, Inc.,
    144 F.3d 96 (D.C. Cir. 1998) .........................................................12, 18

TAB Express International, Inc. v. Aviation Simulation Tech., Inc.,
    215 F.R.D. 621 (D. Kan. 2003)...........................................................30

Tryfaros v. Icarian Development Co. S.A.,
    49 F.R.D. 1 (N.D. Ill. 1970).....................................................22, 27, 29

United Nat'l Ins. Co. v. Waterfront Realty Corp.,
    No. 89 Civ. 4525 (MJL), 1994 WL 259811 (S.D.N.Y. June 9, 1994)...................22, 29

Vault Corp. v. Quaid Software Ltd.,
    847 F.2d 255 (5th Cir. 1988) ...............................................................12

Wilkes v. Wyoming Department of Employment, Division of Labor Standards,
    314 F.3d 501 (10th Cir. 2003) .........................................................18, 19

## STATUTES AND RULES

17 U.S.C. § 405(b) .................................................................................18

17 U.S.C. § 106(1) .................................................................................18

Fed. R. Civ. P. 21 ..................................................................................29

## TREATISES

Wright et al., Federal Practice and Procedure § 1420 (2004)............................................21

Plaintiff/Counterclaim-Defendant The SCO Group ("SCO") respectfully submits this Reply Memorandum in response to the Opposition Memorandum of Defendant/Counterclaim-Plaintiff International Business Machines ("IBM") dated May 18, 2004, and IBM's Supplemental Memorandum ("Supp. Mem.") dated June 28, 2004, and in further support of SCO's Motion to Dismiss or Stay IBM's Tenth Counterclaim.

## PRELIMINARY STATEMENT

In its Tenth Counterclaim, IBM seeks a declaratory judgment that none of its numerous, varied, and expanding "activities relating to Linux" violates any SCO copyright. In its two opposition briefs, IBM contends that the counterclaim must be included in this lawsuit because it is compulsory and would create "economy" and "efficiencies."

IBM's briefs in fact confirm that its Tenth Counterclaim is not compulsory, but instead reflects IBM's effort to package into an otherwise admittedly redundant, and thus unnecessary, counterclaim numerous new and burdensome issues that do not remotely arise out of the transactions that underlie SCO's claims, and then to treat the combination as a single "compulsory" unit. IBM does so in conjunction with its continuing efforts to block SCO from the discovery and fact development necessary for SCO's own claims and defenses, notwithstanding the Court's June 10 Order amending the Scheduling Order, which was to provide time for those purposes. IBM thus seeks effectively to nullify the June 10 Order and, at the same time, tells this Court that it does not even have the discretion to dismiss a counterclaim that not only will unduly complicate this case, but also will further and significantly exacerbate the impediments to progress that IBM's discovery conduct has already imposed.

1

IBM's effort to contrive a purported "compulsory" package of claims would impose unfair and unreasonable burdens on SCO and this Court, and would arrogate to IBM this Court's right to control what claims belong in this case.

IBM's Tenth Counterclaim Is Not Compulsory

IBM's briefs confirm that its Tenth Counterclaim does not arise out of the transactions that underlie SCO's claims. The counterclaim does not relate only (or even primarily) to IBM (and Sequent's) request to use the innovations embodied in UNIX as the bases for their own products; to the specific contractual restrictions IBM and Sequent agreed to in return for relying on another's innovations; or to the full history of the development of IBM's AIX program and Sequent's Dynix program up to and including IBM's contributions of those programs into Linux.

IBM's briefs also confirm that the Tenth Counterclaim goes far beyond those facts. It does so first by bringing in all of IBM's innumerable "activities relating to Linux." Even more importantly, the counterclaim presents a broad range of entirely new issues concerning the propriety of the contributions to Linux that numerous persons other than IBM have made. IBM now concedes that its Tenth Counterclaim sweeps all such third-party issues – concerning non-IBM conduct – into the case. See Part I.A, below.

Those third-party contributions began almost a decade before the development of AIX and Dynix and IBM's own contributions of AIX and Dynix to Linux – the conduct challenged in this case. During that preceding decade (and before), IBM was developing and marketing AIX as a self-described UNIX "modification,"[1] in isolation from Linux and the work of these thousands of

---

[1] Steve Mills, an IBM senior vice president and group executive who runs the company's software business, recently acknowledged that "we needed an operating system. Arguably we could have literally written one from scratch. We took the Unix System V kernel and we made modifications, the same as everybody did in the eighties." IBM's Mills sets sights on middleware, Linux, http://www.

2

Linux contributors. IBM does not contend otherwise. It was only at the end of that process that IBM decided to place that self-described UNIX "modification" – developed through a process of long and deliberate, contractually agreed-to immersion in UNIX proprietary information – into Linux. IBM did so to transform Linux into a specialized tool for the highest-end of business use *and to increase IBM's profits, its power over its rivals, and its strength in the market.*

IBM thus admits that it wants to sweep into this case issues about the contributions of thousands of third-party contributors to Linux even though most of the period of Linux development occurred <u>before</u> IBM even became involved with Linux – and even though IBM <u>refuses</u> to limit the scope of the Tenth Counterclaim to the facts and "transactions" in this case. IBM nevertheless asserts that <u>all</u> of these concededly separate issues are "compulsory." This assertion contradicts plain Tenth Circuit law and should be neglected.

Under Tenth Circuit law, "compulsory" claims must arise from facts that are "<u>largely the</u> <u>same</u>." <u>Driver Music Co. v. Commercial Union Ins. Cos.</u>, 94 F.3d 1428, 1435 (10th Cir. 1996) *(emphasis added).* IBM cannot avoid that law by packaging broad permissive claims with what it calls "flip side" features of its counterclaim (those that are admittedly merely redundant of SCO's claims), Supp. Mem. at 8, and then treating the combination as a single "compulsory" unit. If such an artifice were permissible, any defendant could bundle claims arising out of different transactions into a single, sweeping counterclaim – and permissive counterclaims would become legally extinct.

Under IBM's view, any defendant can bring a "flip side" counterclaim and then add any number of sweeping, permissive counterclaims to create a single "compulsory package" that both the plaintiff – and <u>the Court</u> – would be <u>forced</u> to accommodate. The defendant could thereby

computerworld.com/printthis/2003/0,4814,86443,00.html, 10/27/03 (Exh. 1).

3

gain the obvious tactical advantage of forcing the plaintiff either (1) to direct its time and resources away from the defendant, or (2) to <u>forfeit</u> a range of claims that arise out of entirely different transactions than the plaintiff's claims.  In that scenario, the defendant – not the Court – would acquire control over the proceedings against it.

That is exactly what IBM's "compulsory" device threatens here.  By including the issue of the propriety of all of the third-party contributions that led to the creation of Linux, including all of the contributions that occurred even <u>before</u> IBM decided to use AIX to convert Linux for high-end business use, IBM would force SCO to take discovery to investigate the full scope of discrete potential problems arising out of third-party contributions – or else to <u>forfeit</u> any independent claims SCO may (or may not) raise.  Such discovery would require SCO to investigate the contributions that thousands of unaffiliated third-party programmers around the world contributed to Linux over the span of a decade.  IBM does not dispute that the Tenth Counterclaim would implicate these third-party contribution issues, or that SCO would forfeit these third-party claims if it did not use scarce time and discovery opportunities to investigate and litigate them.

IBM also argues that this Court must treat the Tenth Counterclaim as compulsory because, according to IBM, SCO has "admitted" as much in prior statements to another court.  IBM's claim is both factually and logically flawed.  <u>See</u> Part I.B.2, below.  As a factual matter, as SCO has previously indicated (but IBM has ignored), there is nothing about SCO's prior statements to the <u>Red Hat</u> court that can fairly or accurately be described as a concession that IBM's counterclaim is compulsory.  Moreover, contrary to IBM's claims, in granting its stay of the <u>Red Hat</u> case <u>sua sponte,</u> the <u>Red Hat</u> court acted based on fully accurate information about the proceedings in this

4

case, and is now considering a reconsideration motion that is also based on fully accurate information.[2]

Furthermore, while IBM now contends that its counterclaim is compulsory, it previously and expressly asserted the very opposite viewpoint in response to this Court's inquiry at oral argument.[3]  When SCO submitted its response to IBM's changed position, SCO focused on the position's merits, and did not even mention IBM's prior concession that its Tenth Counterclaim was not compulsory.  By IBM's current logic, however, IBM should not have had that flexibility; and IBM's self-contradiction, rather than the merits of its position, should have precluded IBM from even raising its present arguments on this motion.

IBM also argues that this Court must treat the Tenth Counterclaim as compulsory, even if only a "portion" of its broad range of issues arise out of the transactions that gave rise to SCO's claims – simply because, IBM contends, SCO's copyrights are a common issue.  If this were the legal test (which is demonstrably not the case), then no licensor of intellectual property could enforce a contract against the licensee without at the same time bringing every conceivable copyright (and other intellectual property claim) it might ever have against anyone else regarding the subject of the license.  Such a requirement would preclude the effective enforcement of contracts, which is why black-letter Tenth Circuit and other law subjects the attempted imposition

---

[2] IBM complains that the Red Hat court relied on the presence of the third-party issues in this case in staying that proceeding.  But the Red Hat court imposed the stay sua sponte, and at the time of the stay, IBM had placed the third-party issues in this case.  When the Red Hat stay was litigated, on a reconsideration motion, SCO fully apprised the Red Hat court that SCO was seeking to remove those third-party issues from this case.

[3] At the hearing on the scheduling order, for example, counsel for IBM told the Court with respect to the Tenth Counterclaim:  "I would not contend that this is a compulsory counterclaim."  Transcript of 6/8/04 at 39 (Exh. 2).  The next day, IBM's counsel submitted a letter to the Court stating that he "misspoke" and that, "I believe, and it is IBM's position, that many of IBM's counterclaims are compulsory, including the Tenth Counterclaim for Declaration of Non-Infringement."  Letter from David Marriott to the Court, 6/9/04 (Exh. 3).

of such sweeping burdens to the Court's discretionary review and control. That is the judicial

discretion and control that IBM's arguments would eliminate and transfer to IBM.

<u>The Court Should Dismiss IBM's Tenth Counterclaim</u>

Contrary to IBM's claim that the Court <u>must</u> entertain its Tenth Counterclaim, the Court

has broad discretion to dismiss the Tenth Counterclaim for the undue complication and complexity

it would impose on the efficient administration of this already complicated and protracted

litigation. Under well-established case law, the factual and legal complexity that the counterclaim

introduces is itself sufficient to warrant dismissal.[4]

While IBM seeks to impose these <u>new</u> and extensive discovery burdens on <u>new</u> claims,

IBM also takes every step to block SCO from discovery and factual development on claims that

have been in the case from the beginning. <u>See</u> Part II.B, below. For example:

-- SCO still cannot begin to take its first deposition of an IBM or Sequent

programmer – more than seventeen months into the proceedings – in a case significantly

based on the IBM/Sequent programming-development process. That is because IBM still

refuses to produce even the most rudimentary discovery on SCO's core claims that the

---

[4] SCO described in its memorandum in opposition to IBM's motion for summary judgment on the Tenth Counterclaim ("SCO's SJ Mem.") examples of the type of substantial third-party discovery (described below) that it would have to take if IBM's Tenth Counterclaim remained in the case. <u>See</u> SCO's SJ Mem. at 74-88. An additional example concerns the 1993 license agreement between SCO's predecessor-in-interest Novell/USL and the Tool Interface Standard (TIS) Committee, which allowed the TIS Committee (among other things) to publish USL's ELF code, provided that the publication included a proper recognition of USL's copyright in ELF. The stated goal of publishing the ELF Specification was to provide software developers with a set of binary interface definitions – that is, to facilitate their ability to write applications for UNIX. This goal – the purpose of the agreement with the Committee – would not encompass incorporation of ELF code into Linux (indeed would be undercut by incorporation into Linux). The ELF code is published in a May 1995 edition of the TIS ELF Specification. The TIS ELF Specification states that a non-exclusive, worldwide royalty-free license is made available to use the information in the ELF Specification to make software TIS-compliant. However, the 1995 version of the <u>ELF Specification was published <u>without</u> the required copyright recognition. This may explain the</u> incorporation of ELF code into Linux. On just this single issue, SCO would need to engage in significant third-party discovery concerning the limits on which SCO's predecessors-in-interest permitted others to use ELF code, and the ways in which those limits were apparently exceeded, including possibly incorporating ELF code into Linux.

Magistrate Judge <u>ordered</u> IBM to produce in March, and that SCO has been seeking <u>for over a year</u>.  Among other things, even in the face of a Court order, IBM still will not provide the identities and contributions of IBM and Sequent programmers so that SCO may identify them in order to depose them.[5]

--      IBM delayed producing even the most basic discovery (even a <u>single</u> version of its AIX program) until approximately a year after the case began.  As a result, SCO could not analyze that rudimentary discovery until May and demonstrate its need for more extensive discovery about the development history of AIX (and Dynix) – fact issues at the core of this contract case.  While IBM now files a dispositive motion (seven months ahead of the fact-discovery cut-off) asking this Court to dismiss SCO's contract claims for lack of a fact issue – IBM also tries to block <u>that</u> discovery by telling the <u>Magistrate Judge</u> that the evidence SCO seeks through this discovery is "irrelevant."

--      IBM filed a counterclaim (its Ninth) asking <u>this Court</u> to hold that the entire development history of its (same) AIX program involved no violation of SCO rights (independent of any Linux issue).  But IBM also tells the <u>Magistrate Judge</u> that the device specially designed to centrally store that very same entire development history should not be produced because the information it contains is "<u>irrelevant.</u>"

--      In the face of the Court's March Order requiring the production of such documents, IBM tells SCO and the Court that the files of Irving Wladawsky-Berger, described as IBM's "Linux czar," contain no documents relating to Linux.

---

[5] The Court ordered IBM to provide this information over five months ago.  IBM now concedes that the information is not available from the sources to which it directed SCO to obtain it.  IBM has now made clear that its position is that it should not have to provide this information.  SCO has offered to do any work needed to locate the information if IBM would just provide the necessary access.  IBM has now taken the position that the issue of granting SCO such access is a distinct question for adjudication, allowing IBM to delay complying with a Court order even longer than if SCO had made no offer to facilitate the production.  IBM was required to comply with the Court order, not to ignore it, concede it had ignored it, and then bootstrap an offer to expedite production into another excuse for delay.

IBM has taken each of the foregoing illustrative positions notwithstanding that, most recently, it has filed two dispositive summary judgment motions, on SCO's contract claims and on IBM's own Eighth Counterclaim. IBM's fact-intensive contract summary judgment motion expressly asks this Court to penalize SCO's "failure" to produce that very same kind of evidence that IBM tells the Magistrate Judge is "irrelevant." That motion also relies on the supposedly dispositive testimony of declarants who, in prior and contradictory sworn testimony, have explained that the license agreements at issue address the very programmer "contamination" that SCO could demonstrate through the discovery IBM refuses to produce – and that SCO therefore is entitled to have in hand before deposing those declarants. IBM also continues to fight producing other core evidence on the grounds that it would take "weeks" for IBM to do so, and that it is "irrelevant," when IBM's own dispositive motions rely on the absence of such evidence.

These discovery positions would be fundamentally improper even if there were no other conduct designed to block the factual development of the case. But they do not stand in isolation: IBM's preclusion of discovery is coordinated with the filing of its multiple dispositive motions nine and seven months ahead of the Court's fact-discovery cut-off – motions designed to force SCO to direct its resources away from seeking discovery needed to develop the case (and to respond to the motions themselves). These coordinated positions are designed to and will in fact insure that SCO will not receive essential predicate discovery – even under the Court's new schedule – until it is too late for SCO to process and use it effectively. The Court's June 10 Order sought to provide additional time for fact development – but it was entered over IBM's vehement objection, and IBM's coordinated tactics now threaten to undo it.

These same IBM discovery and other coordinated tactical positions become all the more improper in light of IBM's present attempt – in the name of "efficiency" – now to add new and

8

extensive third-party burdens to the case. By its own sweeping terms and coupled with IBM's

discovery tactics even since the entry of the June 10 Order, IBM's Tenth Counterclaim would

unduly complicate this litigation and further hinder SCO's efforts to prosecute its claims.

## ARGUMENT

### I.   IBM'S SWEEPING TENTH COUNTERCLAIM IS PERMISSIVE

In the Tenth Circuit, a counterclaim is compulsory if "(1) the issues of fact and law raised

by the principal claim and the counterclaim are largely the same; (2) res judicata would bar a

subsequent suit on the defendant's claim; (3) the same evidence supports or refutes the principal

claim and the counterclaim; and (4) there is a logical relationship between the claim and

counterclaim." Driver Music Co. v. Commercial Union Ins. Cos., 94 F.3d 1428, 1435 (10th Cir.

1996) (quotations and citation omitted).

IBM now claims that the Tenth Counterclaim is compulsory. IBM first claims the

counterclaim is merely "the mirror image of SCO's own claims against IBM." Supp. Mem. at 6.

IBM alternatively claims that "IBM's Tenth Counterclaim is the flip side of at least a portion" of

the existing claims in the case, and that the Court should treat the counterclaim as compulsory on

that basis as well. Id. at 8. Neither argument remotely justifies IBM's contention that this Court

lacks power and discretion even to decide whether to keep the counterclaim in this case.

### A.   IBM's Principal Argument Depends on a Gross Mischaracterization of SCO's Claims.

#### 1.   IBM's Primary "Mirror Image" Argument Is Both Inaccurate and Meritless.

IBM's lead argument depends on its contention that the Tenth Counterclaim "is simply the

mirror image of SCO's own claims against IBM" because "SCO has challenged all of IBM's

9

Linux activities (including its internal copying and use of Linux)." IBM Supp. Mem. at 6. This argument is factually incorrect and depends on gross distortions of SCO's actual claims.

SCO claims that IBM violated its obligations under the IBM and Sequent license agreements for UNIX by contributing source code from AIX and Dynix/ptx into Linux. See Second Amended Complaint ¶¶ 110-81. All of SCO's Linux-related claims in this case arise out of the development history of AIX and Dynix and/or specifically challenge IBM's conduct in contributing to Linux material that the IBM and Sequent license agreements protected from such disclosure and use. SCO thus takes issue with IBM's course of conduct in respect of IBM's specific relationship with SCO and AIX development; any claim presenting issues that "largely" arise out of that course of conduct – those "transactions" – would be compulsory.

IBM's Tenth Counterclaim is not such a claim. Indeed, IBM does not dispute that the counterclaim goes far beyond the scope of any issue raised by its specific relationship with SCO. IBM does not dispute, for example, that the counterclaim will encompass all third-party contributions to Linux – whether or not they have anything to do with the development of AIX or Dynix. Instead, IBM attempts to rewrite SCO's complaint to try to portray SCO's lawsuit as itself going far beyond the scope of IBM's relationship with SCO. These arguments – which would eliminate this Court's discretion to decide whether IBM should be permitted to burden the proceeding with all of these new issues – are not colorable.[6]

---

[6] Contrary to IBM's argument, the issue of the scope of SCO's sole copyright claim – whether it concerns Linux – does not change the analysis. That claim, like all of SCO's contract claims, concerns only IBM's course of conduct in using AIX and Dynix. In addition, IBM's suggestion that an overlap exists with respect to "the UNIX code to which SCO allegedly holds copyrights," Supp. Mem. at 11, merely begs the question. The fact is that to prove its claims, including its copyright claim, SCO need not demonstrate that any third party has contributed any source code in Linux.

IBM thus mischaracterizes SCO's claims when it contends, based on its selective quotation from SCO's complaint, that SCO has "challenged all of IBM's Linux activities." Id. at 6.  In support of this distortion of SCO's claims, IBM relies exclusively on its footnoted recitation of two passages from SCO's Second Amended Complaint, in which SCO alleges that (1) "IBM has breached its obligations to SCO, including by . . . incorporating (and inducing, encouraging, and enabling others to incorporate) SCO's proprietary software into Linux open source software offerings," Second Amend. Compl. ¶ 6; and (2) "IBM has knowingly induced, encouraged, and enabled others to distribute proprietary information in an attempt to conceal its own legal liability for such distributions," id. ¶ 109.  See Supp. Mem. at 6 n.6.  Neither of these selected allegations (nor any of SCO's other allegations in its complaint), however, supports IBM's conclusory mischaracterization of SCO's claims in this case or remotely raises issues concerning IBM's liability (as an end-user and distributor of Linux) for any and all contributions to Linux made by any and all third parties.

SCO's entire complaint is directed at IBM's own conduct, whether as a principal or accessory, in violating SCO's rights, and the isolated quotations on which IBM relies must be read in that context.  Thus, the first passage quoted by IBM, which expressly discusses how "IBM has breached its obligations to SCO," addresses IBM's role in incorporating SCO's proprietary information (i.e., portions of AIX and Dynix), including by using others (that is, IBM employees, independent contractors, or others working at the behest of IBM) to accomplish that same end. Second Amend. Compl. ¶ 6.  The second passage on which IBM relies is expressly directed at IBM's use of Linux distributors.  Indeed, IBM omits to mention that the quoted passage is actually the introduction to a quoted statement from an IBM representative explaining that IBM uses Linux

11

distributors "Because distributors are not so much exposed as we are." Second Amend. Compl. ¶ 109 (emphasis added).[7]

SCO's claims thus concern (in part) how IBM worked with a limited number of third parties to facilitate IBM's own contributions to Linux – but those claims could not possibly concern the important third-party course of conduct relating to Linux – made by at least hundreds of contributors and involving millions of lines of source code – before 2000 when IBM began making contributions to Linux. IBM's Linux-related activities would necessarily introduce into this case a host of complex issues concerning those contributions, because if Linux contains SCO's copyrighted material – no matter who contributed it – then IBM (as an end-user, copier, and distributor of Linux) would be liable for infringing SCO's copyrights. See Stenograph L.L.C. v. Bossard Assocs., Inc., 144 F.3d 96, 100 (D.C. Cir. 1998); see also MAI Sys. Corp. v. Peak Computer Inc., 991 F.2d 511, 519 (9th Cir. 1993); Vault Corp. v. Quaid Software Ltd., 847 F.2d 255, 260 (5th Cir. 1988). IBM does not dispute that its Tenth Counterclaim would bring in that distinct course of conduct.

Nor does IBM dispute that its Tenth Counterclaim would insert into this case the issue of all of IBM's vast and expanding Linux activities. Those activities, according to IBM's own description, include: providing "Linux training and support, applications testing, technical advice and a hands-on environment in which to evaluate Linux and Linux-based applications;" offering "mainframes and servers that run Linux; memory solutions for Linux environments; a broad range of software offerings; providing "services that assist companies in deployment of Linux-based e-

---

[7] IBM has habitually relied on such misleading and selective quotations in its submissions. For example, as SCO shows in its memorandum in opposition to IBM's motion for summary judgment on the Tenth Counterclaim, in its summary judgment motion, IBM similarly and repeatedly mischaracterized SCO's statements to this Court and to the media. See SCO's SJ Mem. at 41-42 (¶¶ 64-65), 36-40 (¶¶ 56-62).

business environments, migration of database applications and data to Linux systems, support for Linux-based cluster computing, server consolidation, and a 24-hour technical engineering support line"; and "reproduc[ing] Linux and mak[ing] Linux available to others, both in developing and producing hardware, software and services for customers, and for other, internal business purposes." IBM's Mem. in Support of SJ Motion on the Tenth Counterclaim ¶¶ 8, 10, and 11 (citing Declaration of Daniel Frye, ¶¶ 5, 7, and 8).

SCO's allegations focus on IBM's role in developing AIX and making specific contributions to Linux; like the entire complaint in which they are found, they do not challenge all (or even most) of IBM's vast and expanding Linux activities. IBM's Tenth Counterclaim would bring in all of the foregoing activities – and would force SCO to redirect limited discovery opportunities (even if expanded) away from its own claims in order to focus on those activities.[8] The question of the propriety of the presence of all of the foregoing issues – most importantly, the third-party issues that have nothing to do with IBM – is one for the Court's discretion, and is exactly the question that IBM says the Court cannot decide.

Further, IBM's "mirror image" argument is unavailing. If (contrary to fact) IBM were correct that its Tenth Counterclaim simply mirrors all of the claims that are already in SCO's case, then the counterclaim would be unnecessary. According to well-settled law, the counterclaim would be dismissed as redundant. Fed. Dep. Ins. Co. v. Project Dev. Corp., No. 86-5490, 1987 WL 37488, at **3 (6th Cir. May 27, 1987) (dismissing counterclaim "because [it] stated issues identical to the issues raised in the complaint"); see also Amwest Sur. Ins. Co. v. Concord Bank,

---

[8] Although SCO submits that it can defeat the declaratory judgment IBM seeks in the Tenth Counterclaim by demonstrating that even one of IBM's Linux-related activities violates a SCO copyright, for purposes of proof (in both discovery and trial) SCO would have to uncover and marshal through discovery the evidence concerning, and would seek to prove copyright violations arising out of, all of IBM's Linux-related activities.

No. 4:00CV1988SNL, 2003 WL 553229, at *4 (E.D. Mo. Feb. 4, 2003) (dismissing "mirror image" declaratory judgment counterclaim as redundant) (citations omitted) (Exh. 5); Dean v. Anderson, No. 01-2599-JAR, 2002 WL 31115239, at *3 (D. Kan. Sept. 18, 2002) (dismissing declaratory judgment counterclaim as redundant and "therefore unnecessary") (citation omitted) (Exh. 7); Mille Lacs Band of Chippewa Indians v. Minnesota, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment claim is not a proper declaratory judgment claim and should be dismissed.") (citations omitted); RSL Holding Co. v. Dresser Indus., Inc., No. 89 C 7004, 1991 WL 203864, at *3 (N.D. Ill. Oct. 1, 1991) ("Courts regularly dismiss redundant counterclaims.") (citation omitted) (Exh. 10); Schlossberg v. Koehring Co., 333 F. Supp. 1345, 1349 (E.D. Wis. 1971) (where declaratory judgment counterclaim "asks for relief on matters already put in issue by the complaint and the answer," it "should be dismissed") (citations omitted).

### 2. IBM's Claims About SCO's Prior Statements Do Not Support Its Position.

Without any actual basis in the record for its mischaracterization of SCO's claims, IBM repeatedly resorts to distortions of SCO's prior statements in the Red Hat case, arguing that SCO has "already conceded" IBM's argument about the scope of SCO's claims and that SCO is now contradicting itself.

First, IBM contends that SCO has made statements to the Red Hat court regarding the scope of this lawsuit that are inconsistent with its statements here. SCO addressed these issues in the June 17 letter to the Red Hat court to which IBM alludes, but does not even attempt to address substantively. See Supp. Mem. at 9 n.7. Red Hat, a software vendor, brought suit against SCO seeking a declaration that Red Hat does not violate SCO's copyrights by marketing a version of

Linux.  In support of a motion to dismiss that case in favor of this one, SCO made statements (cited in IBM's brief) reflecting SCO's view at the time that IBM's contributions to Linux were of paramount importance.  As SCO explained in its June 17 letter, that <u>comparative</u> fact was true when SCO cited it in support of its motion to dismiss and, given the extent and importance of the challenged IBM contributions to Linux, remains true today.

At the same time, as SCO further explained in the letter, since making those statements SCO has had the opportunity to conduct further investigation of improper contributions to Linux by parties other than IBM.  Accordingly, while SCO continues to believe that IBM's course of conduct raises the issues of paramount importance, SCO also believes that non-IBM issues may have significance.  As SCO further noted, IBM's current position – that SCO's complaint against IBM includes all of the issues relating to the propriety of Linux – unrealistically assumes that time has simply stood still since the time of the statements.

Accordingly, nothing in SCO's prior statements can fairly be read to suggest (as IBM attempts to do) that introducing the issues of such third-party conduct (as IBM attempts to do) would not substantially and unduly exceed the scope of any claim SCO has brought in this case.  Indeed, even though SCO continues to believe that IBM's role and interest in converting Linux for high-end business use is of greatest significance in resolving SCO's legal claims concerning Linux, there can be no doubt that the burden and complexity of the numerous issues that IBM's Tenth Counterclaim raises will greatly add to this already burdensome and complex case.

<u>Second</u>, IBM complains that SCO misled the <u>Red Hat</u> court into relying on the presence of the third-party issues in this case in staying that proceeding.  But the <u>Red Hat</u> court imposed the stay <u>sua sponte</u>, and at the time of the stay, <u>IBM had placed</u> the third-party issues in this case.  When the <u>Red Hat</u> stay was litigated, on reconsideration, SCO apprised the <u>Red Hat</u> court that

SCO was seeking to remove those third-party issues from this case.  IBM also quotes SCO's statement to the Red Hat court in (as IBM describes it) "May 2004" that "the IBM case will address a central issue in this case:  whether Linux contains misappropriated UNIX code."  Supp. Mem. at 7.  But at that time IBM had placed the Tenth Counterclaim in the case, and the counterclaim (by IBM's admission) would encompass all such issues.  SCO made the statement before it moved to dismiss the Tenth Counterclaim, and under a standing order in that case the Red Hat court would be made aware of the dismissal of any part of IBM's Tenth Counterclaim in this case – and was made aware of that effort by SCO before acting on the motion to reconsider its stay (a motion it still has not decided).

Third, IBM attempts to bind SCO to (IBM's incorrect understanding of) SCO's prior statements notwithstanding that IBM has now expressly contradicted the position it took in this case on this exact same counterclaim issue.  That counsel for IBM expressly acknowledged to this Court on June 8 that IBM's counterclaim is "permissive" did not even receive mention in SCO's June 10 submission on the issue to this Court, much less the dispositive weight that the logic of IBM's own argument would appear to dictate.  Of course, contrary to IBM's attempt to avoid the merits of its position, that is what governs the legal determination of whether its Tenth Counterclaim is compulsory or permissive.

### B.    The Overlap Between SCO's Actual Claims and Part of IBM's Tenth Counterclaim Does Not Make The Tenth Counterclaim Compulsory.

IBM further argues that even if SCO's claims do not challenge all of IBM's Linux-related activities or implicate the contributions that any and all third parties have made to Linux, the Tenth Counterclaim "is the flipside of at least a portion of SCO's claim for copyright infringement."  IBM Supp. Mem. at 8 (emphasis added).  SCO shows below that this argument

also does not remotely justify treating the counterclaim as compulsory: Under the Tenth Circuit's factors for identifying compulsory counterclaims, the lack of overlap here is just what necessitates allowing this Court to exercise its discretion.

### 1. IBM's Tenth Counterclaim Presents Substantially Different Factual Evidence and Legal Issues Than SCO's Claims.

SCO shows above that SCO's claims do not concern either of the following fact issues, which the Tenth Counterclaim necessarily raises: (1) the full extent to which any third party – among the thousands of such contributors – contributed SCO's copyrighted material to Linux, and the identity of that material; and (2) the complete nature and extent of all of IBM's activities relating to Linux. See Part I.A, above. SCO's claims also do not raise, but the Tenth Counterclaim necessarily implicates, the following legal precedent: (1) the liability of third-party contributors operating over a decade for potential improper use in Linux of copyrighted SCO material; and (2) the liability of end-users of Linux for copyright infringement if any independent third party has contributed copyrighted material from UNIX System V into Linux. See, e.g., Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc., 75 F. Supp. 2d 1290, 1293-94 (D. Utah. 1999).[9]

The trial of SCO's claims would not require the testimony of any third parties who have contributed source code to Linux independent of IBM's course of conduct. A trial involving IBM's Tenth Counterclaim, in contrast, would require at least the testimony of the principal third parties who contributed source code to Linux independent of IBM's direction, and could require the testimony of many more third parties who have contributed a significant amount of UNIX

---

[9] See 17 U.S.C. § 405(b) (2004) (In this situation, the "innocent infringer" defense). Installing or using copyrighted material, including software, on a computer constitutes "copying" that material for purposes of the Copyright Act. 17 U.S.C. § 106(1); Stenograph L.L.C. v. Bossard Assocs., Inc., 144 F.3d 96, 100 (D.C. Cir. 1998).

material.  Accordingly, permitting IBM's counterclaim to remain in the case would significantly change the character of the trial.

### 2.   Res Judicata Would Not Bar IBM, Because The Requisite Logical Relationship Is Absent.

The question is whether, as to third-party contributions and <u>all</u> of its Linux-related activities, IBM would be estopped from seeking the declaratory judgment in the Tenth Counterclaim if this litigation proceeded to a resolution on the merits.  For <u>res judicata</u> to apply in that scenario, SCO would have to demonstrate that IBM "should have" brought the declaratory judgment claims, because they arise out of SCO's "causes of action."  <u>Wilkes v. Wyoming Dep't of Employment, Div. of Labor Standards</u>, 314 F.3d 501, 503-04 (10th Cir. 2003) (brackets and quotations omitted).  There would be no basis for such an argument.

The "transactional approach" determines whether claims arise out of the same cause of action for purposes of <u>res judicata</u>.  <u>Id</u>.  The Court must consider "whether the facts are related in time, space, origin, and motivation" and "whether they form a convenient trial unit." <u>Petromanagement Corp. v. Acme-Thomas Joint Venture</u>, 835 F.2d 1329, 1335 (10th Cir. 1988). As between SCO's claims and the declaratory judgment that IBM seeks, the facts are not related:

> --   in "time," because based on public reports at least many hundreds of third parties made significant contributions to Linux before IBM even became involved with Linux;
>
> --   in "space," because, apart from the few third parties whom IBM used as instruments in its course of conduct relating to the development and contribution to Linux of AIX and Dynix, the third parties' contributions of SCO copyrighted material to Linux in all likelihood occurred largely or completely independently from IBM's offices and conduct;
>
> --   in "origin," because the course of IBM conduct with which SCO takes issue in this lawsuit does not remotely encompass the question of what SCO copyrighted material in Linux originated from third parties; or

18

-- in "motivation," because the motivation that independent third parties had in contributing source code to Linux has nothing necessarily to do with IBM's motivation for creating and exploiting UNIX by contributing AIX/Dynix into Linux or for continuing to use AIX/Dynix after SCO cancelled the license agreements.[10]

SCO's claims and the Tenth Counterclaim plainly do not form a "convenient trial unit." See also Part I.B.1, above.

At issue here is the significant portion of the Tenth Counterclaim that does not overlap SCO's claims – namely, the third-party conduct that, in terms of its factual scope and the discovery burden it would impose, vastly exceeds the scope of any claim SCO has brought. It is not enough that, as between claim and counterclaim, there is "some overlap of issues." Mille Lacs Band of Choppewa Indians v. Minn., 853 F. Supp. 1118, 1146 (D. Minn. 1994). Instead, the issues must be "largely the same." Driver Music, 94 F.3d at 1435. In light of the foregoing facts and law, IBM contends that "counterclaims relating to the same copyrights that are the subject of a plaintiff's claims are logically related to the plaintiff's claims and are therefore compulsory." Supp. Mem. at 8. Neither sound logic nor the case law supports this assertion.

IBM's proposed per se rule (and reliance on the supposed operation of res judicata) proves far too much. If there were any such per se rule, then in order to enforce a contract against the licensee, the licensor would at the same time have to bring every conceivable copyright (and other intellectual property claim) it might ever have against anyone else regarding the subject of the license. The law imposes no such burden. For that reason, the issue of the scope of SCO's sole copyright claim -- whether it concerns Linux – does not change the analysis. See note 4, above.

---

[10] See, e.g., Davis v. Norris, No. 99-4149, 2002 WL 819274, at **6 (10th Cir. May 1, 2002) (where claims concern events occurring years apart, "they are not related in time, space, origin, or motivation"); Heard v. Bd. of Pub. Utilities for the City of Kansas City, Kan., 316 F. Supp. 2d 980, 983-84 (D. Kan. 2004) (res judicata would not apply where the time period involved in one set of claims "does not necessarily subsume the allegations" in the second set of claims).

The fact that both SCO's copyright claim and IBM's Tenth Counterclaim address SCO copyrights

is insufficient.  In cases in which the counterclaims had a much tighter logical relationship than

any relationship between SCO's claims and IBM's Tenth Counterclaim, the courts have held that

the counterclaim is not compulsory.  See, e.g., N. Branch Prods., Inc. v. Fisher, 284 F.2d 611, 615

(D.C. Cir. 1960) (in action for declaration of patent ownership, defendant's counterclaim for

infringement of the same patents was permissive); Autographic Register Co. v. Philip Hano Co.,

198 F.2d 208, 211-12 (1st Cir. 1952) (in action for patent infringement, defendant's counterclaim

for breach of licensing agreement's provision for refund of defendant's royalty payments, should

the patents at issue be held invalid, was permissive); see also S. Megga Telecommunications Ltd.

v. Lucent Techs., Inc., No. 96-357-SLR, 1997 WL 86413, at *10 n.24 (D. Del. Feb. 14, 1997)

(finding no logical relationship even though claims and counterclaims involved the interpretation

of the contract between the parties, where the claims were governed by different law); Fadum

Enters., Inc. v. Liakos, 694 F. Supp. 973, 975-76 (D. Mass. 1988) (finding no logical relationship

even though claims and counterclaims involved the same parties and had "some factual overlap,"

where the counterclaims did not concern the parties' contractual relationship underlying the

plaintiff's claims).[11]

---

[11] IBM attempts to rely on Wright & Miller (§ 1410) for its purported per se rule, but that treatise merely acknowledges that as a factual matter a counterclaim involving the same copyright as is involved in the original action "usually is considered to arise from the same transaction as the main claim."  But, as detailed herein, IBM's Tenth Counterclaim raises numerous new and different copyright issues, and factual bases for possible copyright violations, that SCO's copyright claim does not raise.  None of the cases cited in the treatise, nor any other case that IBM cites, addresses a scenario in which the defendant sought to add such substantially new and complex issues.

## II.   THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO DISMISS IBM'S TENTH COUNTERCLAIM

### A.   <u>The Court Has Broad Discretion to Dismiss a Permissive Counterclaim.</u>

The Court has the "power to refuse to entertain permissive counterclaims" that "would unduly complicate the litigation." 6 C. Wright <u>et al.</u>, <u>Federal Practice and Procedure</u> § 1420 (2004). Courts routinely exercise their discretion to dismiss counterclaims that would significantly expand the scope of the litigation; add factual or legal complexities to an already complex matter; necessitate additional, expensive, and time-consuming discovery; threaten jury confusion; and/or hinder or delay a plaintiff's prosecution of its claims. <u>See, e.g.</u>, <u>ABC Rail Prods. Corp. v. Progress Rail Servs. Corp.</u>, No. 98 C 3663, 1998 WL 641369, at *2-3 (N.D. Ill. Sept. 11, 1998) (dismissing counterclaim where plaintiff's original complaint involved "highly complex legal and factual questions" and addition of similarly complex counterclaim premised on the same federal statute was likely to confuse jury) (Exh. 4); <u>United Nat'l Ins. Co. v. Waterfront Realty Corp.</u>, No. 89 Civ. 4525 (MJL), 1994 WL 259811, at *2 (S.D.N.Y. June 9, 1994) (dismissing counterclaim because it was added late in the litigation and would have required consideration of issues beyond the scope of the plaintiff's complaint) (Exh. 12); <u>S. Coop. Dev. Fund v. Driggers</u>, 527 F. Supp. 927, 929-30 (M.D. Fla. 1981) (dismissing counterclaim that "unduly complicates this case"); <u>Bd. of Educ. v. Admiral Heating and Ventilation, Inc.</u>, 511 F. Supp. 343, 346 & n.6 (N.D. Ill. 1981) (dismissing counterclaims that would have required analysis of a large number of additional contracts, "each with its own unique claims and defenses"); <u>Aviation Materials, Inc. v. Pinney</u>, 65 F.R.D. 357, 358 (N.D. Okla. 1975) ("A counterclaim should not be permitted if it would serve to hinder and delay the plaintiff and make it more difficult to prosecute its claim."); <u>SEC v. Republic Nat'l Life Ins. Co.</u>, 383 F. Supp. 436, 438-41 (S.D.N.Y.

1974) (court may decline to hear counterclaim that would complicate litigation); Tryfaros v. Icarian Dev. Co., 49 F.R.D. 1, 3 (N.D. Ill. 1970) (dismissing counterclaim that would "interject complex and immaterial issues into this lawsuit, and would necessitate additional expensive and time-consuming discovery"); Rosemont Enters. Inc. v. Random House, Inc., 261 F. Supp. 691, 698 (S.D.N.Y. 1966) (dismissing counterclaim that "might well make a shambles of controversies already sufficiently complex").[12]

### B.   IBM's Tenth Counterclaim Would Burden the Court and SCO By Adding Undue Complexity to This Already Extraordinarily Difficult Case.

SCO shows below that by its own sweeping terms and coupled with IBM's discovery tactics (even since the entry of the Court's June 10 Scheduling Order), IBM's Tenth Counterclaim would unduly complicate this litigation and further hinder SCO's efforts to prosecute its claims. Moreover, since the Court entered its June 10 Order over IBM's strident objection, IBM has pursued a series of coordinated measures that have undercut the purpose of the Order and now threaten to undo altogether the effect of the Order.

The status of discovery, including IBM's own discovery conduct, itself belies IBM's assertion that the Tenth Counterclaim would not unduly complicate this litigation.  IBM seeks to defend the introduction of substantial factual and legal complexity – and to move for summary judgment on its Eighth and Tenth Counterclaims, and on SCO's contract claims – even as it fails to respond to SCO's most basic discovery requests (which SCO made of IBM more than a year

---

[12] In addition to arguing that the Tenth Counterclaim "raises issues separate and apart from the primary breach of contract and other direct claims and counterclaims in this case," SCO proposed in its opening papers that the Court stay this action in favor of SCO's previously filed action in the District of Nevada against Linux end-user AutoZone.  The court in AutoZone has since determined to permit the parties to take certain circumscribed discovery.  SCO no longer seeks a stay on the basis of AutoZone, and shows herein that the Court's discretion to *dismiss a permissive counterclaim is a well-established and* independently sufficient basis on which to dismiss IBM's Tenth Counterclaim.

ago) and forces SCO to file a renewed motion to compel for IBM's failure to comply with the Magistrate Court's March 2004 discovery order.

### 1.   IBM's Appeal to "Economy" and "Efficiencies" Is Baseless.

To rationalize its insertion of the wide array of new and complex issues presented by its Tenth Counterclaim, IBM purports to appeal to "economy" and "efficiencies." Supp. Mem. at 4, 11 n.12, 14.  IBM specifically -- and incorrectly -- claims that "As SCO would have it, IBM (and many others throughout the world) could be subjected to a virtually endless torrent of litigation brought by SCO, because SCO could file new claims each time SCO purports to find additional infringing code that has been present in Linux all along."  Supp. Mem. at 14.  IBM again mischaracterizes SCO's position when it claims that SCO has argued that "it should be allowed to later charge IBM with infringement based on other segments of code in Linux, after SCO has litigated against the individual contributors of such code."  Supp. Mem. at 4 n.4.  IBM does not quote, or even cite, anything in SCO's papers to support that mischaracterization, and SCO has never articulated such a "piecemeal approach to litigation."  Id.[13]

Notwithstanding IBM's suggestion, this Court is not forced to decide between requiring SCO to litigate all of the numerous new issues presented by IBM's Tenth Counterclaim, on the one hand, and permitting a series of piece-meal litigations over those issues in the future.  To the contrary, the dismissal of IBM's Tenth Counterclaim would in no way preclude it from seeking that declaratory judgment in a separate litigation.  As explained above, res judicata would not

---

[13] IBM incorrectly suggests that a separate lawsuit concerning third-party contributions to Linux would necessitate relitigation of many of the same issues as this case, including, for example, copyright ownership. Supp. Mem. at 10.  That concern is misguided because if such issues are resolved against SCO on their merits in this case, they will be subject to the application of collateral estoppel principles in any future litigation.

prevent IBM from bringing the non-duplicative part of its Tenth Counterclaim in another proceeding where it will not unduly complicate the ongoing proceedings.

> **2.      The Current Status of Discovery in This Case Belies IBM's Suggestion That Its Tenth Counterclaim Would Not Unduly Complicate This Litigation.**

IBM touts the purported "efficiencies" of its Tenth Counterclaim while it has done everything in its power to impede the efficiency of this case -- forcing litigation over every conceivable rudimentary element of core evidence, while claiming to this Court that SCO has no evidence and telling the Magistrate Judge that access to such evidence should be denied because it is "irrelevant" and because producing it would take "weeks." See Part II.B, above.  The current status of discovery in this case – which has resulted from IBM's dilatory tactics and gamesmanship – forms the critical backdrop to evaluating the effect on this litigation of adding the numerous issues contained within IBM's Tenth Counterclaim.

Indicative of IBM's discovery conduct is its failure to comply with the Magistrate's March 3 Order, which has thus required SCO to file a renewed motion to compel simply to enforce that Order.  SCO's renewed motion, dated July 6, 2004, shows that:

> --      IBM has failed to specify the IBM or Sequent personnel that work or worked on developing source code for AIX, Dynix, and Linux and each person's contributions to those operating systems even though SCO asked for such discovery at the outset of this case, this Court ordered it produced in March, IBM now concedes it has such information, and IBM now admits that the places it previously told SCO to obtain it do not in fact supply it.

> --      IBM has represented to the Court that its CEO and "Linux czar" have no Linux documents in an attempt to justify its failure to produce documents and materials generated by employees currently involved in IBM's Linux project, including IBM's Chief Executive Officer and Chairman of the Board (Sam Palmisano), the senior executive described as IBM's "Linux czar" (Irving Wladawsky-Berger), and members of IBM's Board of Directors.

In seeking the revised Scheduling Order, SCO specifically relied on IBM's discovery conduct. Since the Court's revision of the scheduling order, however, IBM has forced SCO to devote much of its work to continuing its efforts to finally secure such essential, predicate discovery in the face of IBM's continued refusal to provide it. A consolidated hearing on SCO's motions to obtain this discovery, including on SCO's renewed motion to compel, is now scheduled for September 14. Accordingly, SCO will not receive rudimentary, long-sought discovery until sometime after the September 14 hearing and will not be able to process and use it for other discovery until even later. As noted, for example, IBM has refused to provide SCO with the information it needs to identify even a single IBM or Sequent programmer so as to take even the first deposition of a programmer – in a software case – more than seventeen months into this case. Such depositions would constitute predicate discovery, needed to provide the basis for further, targeted discovery. On SCO's contract claims, for example, the requested discovery is a predicate to securing proof of violation as well as admissions relevant to the issue of contract interpretation.

To make matters worse, IBM has coupled the foregoing (and other) discovery conduct with three recent motions for summary judgment on the express asserted basis that SCO cannot produce evidence to justify opposition to the motions. For example, IBM's motion for summary judgment on SCO's contract claims relies on testimony from declarants who previously testified that the contractual protections at issue needed to be broad because of the contamination inherent in the software development process. IBM, however, has refused to produce the storage device containing the development history that would illustrate such contamination, telling the Magistrate that it is irrelevant and that, even though IBM maintains such information in a readily-accessible format, it would be unduly burdensome to produce because it would take "weeks" to do so.

25

### 3.   IBM's Tenth Counterclaim Would Add Numerous Significant Burdens.

Particularly against this backdrop – in which IBM has forced SCO to continue litigating, more than seventeen months into this case, for even the most basic discovery on its core claims – IBM's Tenth Counterclaim would add undue complexity to, and further hinder, SCO's lawsuit in at least the following, critical respects:

First, as an evidentiary matter, the Tenth Counterclaim introduces numerous complex issues, necessarily involving the thousands of contributions made to Linux by third parties who are not parties to this litigation, where each contribution would involve its own unique factual circumstances and proof unrelated to SCO's claims.  See ABC Rail, 1998 WL 641369, at *2; Admiral Heating, 511 F. Supp. at 346 & n.6; Tryfaros, 49 F.R.D. at 3.  Such discovery would of course add substantially to and complicate the current discovery, and calls into question the viability of the limitations the Court has imposed on the total number of depositions the parties may take.  Were the contributions of thousands of third parties injected into this case, SCO reasonably expects – including in light of IBM's discovery conduct to date – that such discovery would be extremely time consuming and likely to result in significant delay.[14]

Second, the issues presented by SCO's claims regarding IBM's (1) copying (both literal and non-literal) of source code from UNIX and (2) contribution of copied source code into Linux via AIX and Dynix are sufficiently complex that the investigation and proof regarding those issues

---

[14] As noted previously, SCO's opposition to IBM's motion for summary judgment on its Tenth Counterclaim (at pages 74-88) illustrates the types of substantial third-party discovery that SCO would have to take if IBM's Tenth Counterclaim remained in the case.  Moreover, as SCO has previously explained – in its opposition to IBM's motion for summary judgment on the Tenth Counterclaim, in its Renewed Motion to Compel, and in its memoranda regarding the status of discovery – crucial discovery responses from IBM are necessary before SCO can sensibly and efficiently take depositions on SCO's own claims.  Pending the production of such discovery, and mindful of the current limitations on the number of depositions allotted to the parties, SCO has not undertaken third-party depositions relevant to IBM's Tenth Counterclaim.

alone will entail a great deal of time and effort.  See ABC Rail, 1998 WL 641369, at *2; Admiral

Heating, 511 F. Supp. at 346 & n.6; Rosemont, 261 F. Supp. at 698.  SCO has previously shown

that, with respect to literal copying, the near-exclusive weight IBM has placed on SCO's

purported ability simply to place millions of lines of UNIX source code side-by-side with the

millions of lines of Linux source code is misplaced.  Such comparisons are possible, but not

within any reasonable time frame.  They are in fact an extremely inefficient and time-consuming

way of identifying similarities in code given the circumstances and the magnitude of the search

required.  See SCO's SJ Mem. at 75-84.  The foregoing is even more plainly true with respect to

issues of non-literal copying, which do not depend on the presence of identical code and which

therefore require even more time and effort to investigate.  Such a comparison is extremely detail-

oriented and time-consuming, even if SCO receives the discovery that IBM has to date failed to

produce.  See id.  In short, this is complex litigation independent of the numerous new issues the

Tenth Counterclaim would introduce.

Third, SCO would need to take discovery on all of IBM's activities relating to Linux.

IBM's own descriptions of its vast worldwide Linux-related activities reveal the broad scope of

the discovery the Tenth Counterclaim would entail.  See SCO's SJ Opp. ¶¶ 41-44.  Based on

published reports alone, SCO would seek discovery regarding a large number of subject matters

relating to those activities.  See id.  Moreover, other published reports indicate that IBM's Linux-

related activities are continuing to expand.  See id. ¶ 41.

SCO would thus ask IBM to produce at least core documentation of all of IBM's

"activities relating to Linux."  SCO would also take depositions regarding the nature and extent of

IBM's Linux-related activities from, among others, the IBM principals who have been identified

as being responsible for the decision to build and expand IBM's Linux business.  Discovery

regarding all of IBM's Linux-related activities would thus be substantial and time consuming, and there is no question that the Tenth Counterclaim would necessarily pull those issues into this litigation.

Fourth, the complexity of the issues presented by both SCO's original claims and IBM's Tenth Counterclaim could easily confuse and overwhelm a jury, inasmuch as both parties invoke the Copyright Act and assert claims relating generally to UNIX and Linux. In analogous situations, courts have routinely exercised their discretion to dismiss broad counterclaims. See, e.g., ABC Rail, 1998 WL 641369 at *2-3; Waterfront Realty, 1994 WL 259811 at *2; Aviation Materials, 65 F.R.D. at 358; Tryfaros, 49 F.R.D. at 3; Republic Nat'l, 383 F. Supp. at 438-41. SCO respectfully requests that this Court do the same. The claims each require consideration of the nature and operation of the copyright laws. Against that background, as a practical matter, it would be difficult for the jury to segregate and keep distinct the evidence on the respective issues. The proper course is to dismiss the counterclaim.[15]

In sum, this Court has the discretion to preclude a defendant from doing precisely what IBM seeks to do – namely, bring counterclaims that may (or may not) create personal "efficiencies" for it, but which would unduly expand the litigation in general and interfere with the plaintiff's case in particular. As one judge in this Circuit has asked rhetorically in determining whether to permit claims and counterclaims to be adjudicated in a single proceeding: "if plaintiff

---

[15] The Court also has the discretion to sever the Tenth Counterclaim into a separate action pursuant to Fed. R. Civ. P. 21. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518-19 (10th Cir. 1991); Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indemn. Ins. Co., 202 F.R.D. 212, 216 (S.D. Tex. 2001). Indeed, the Court may do so even if the counterclaim is deemed "compulsory." See Freedom Int'l Trucks, Inc. of N.J. v. Eagle Enters., No. Civ. A. 97-4237, 1998 WL 695397, at *2-3 (E.D. Pa. Oct. 5, 1998) (citing cases); Salomon S.A. v. Scott USA Ltd. P'Ship, 117 F.R.D. 320, 321 (D. Mass. 1987); see also Spencer, White & Prentis Inc. of Conn. v. Pfizer Inc., 498 F.2d 358, 361-62 (2d Cir. 1974) (citing cases). SCO respectfully submits that, in light of the facts and circumstances detailed above, such severance would be warranted, and reserves the right formally to move for such relief as necessary.

and defendant's claims are each complex and unwieldy on their own, how can economy and expedition be served by combining them into one unmanageable proceeding?"  TAB Express Int'l, Inc. v. Aviation Simulation Tech., Inc., 215 F.R.D. 621, 624 (D. Kan. 2003).  The discretionary "economy" rationale underlying Rule 13 counsels against this Court's exercising its jurisdiction over the counterclaim.

## CONCLUSION

SCO respectfully submits, for the reasons set forth above, that the Court should dismiss IBM's Tenth Counterclaim.

DATED this 23rd day of August, 2004.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch

BOIES, SCHILLER & FLEXNER LLP
Robert Silver, Esq. (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Reply Memorandum in Support of

Plaintiff/Counterclaim-Defendant SCO's Motion to Dismiss or Stay Count Ten of IBM's Second

Amended Counterclaims was served on Defendant International Business Machines Corporation

on this 23rd day of August, 2004, by U.S. mail, postage prepaid to:

> Alan L. Sullivan, Esq.
> Todd M. Shaughnessy, Esq.
> Snell & Wilmer L.L.P.
> 15 West South Temple, Ste. 1200
> Gateway Tower West
> Salt Lake City, Utah 84101-1004

Copy to:

> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019

> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604

> *Attorneys for Defendant/Counterclaim Plaintiff IBM Corp.*

# EXHIBITS TO REPLY MEMORANDUM

## Table of Contents

| 1 | IBM's Mills sets sights on middleware, Linux, http://www.computerworld.com/printthis/2003/0,4814,86443,00.html, 10/27/03 |
|---|---|
| 2 | Hearing Transcript (Selected Portion), 6/8/04 |
| 3 | Letter from David R. Marriott to the Court, 6/9/04 |

## AUTHORITIES

| 4 | *ABC Rail Products Corp. v. Progress Rail Servs. Corp.*, No. 98 C 3663, 1998 WL 641369 (N.D. Ill. Sept. 11, 1998) |
|---|---|
| 5 | *Amwest Surety Insurance Co. v. Concord Bank*, No. 4:00CV1988SNL, 2003 WL 553229 (E.D. Mo. Feb. 4, 2003) |
| 6 | *Davis v. Norris*, No. 99-4149, 658, 2002 WL 819274 (10th Cir. May 1, 2002) |
| 7 | *Dean v. Anderson*, No. 01-2599-JAR, 2002 WL 31115239 (D. Kan. Sept. 18, 2002) |
| 8 | *Fed. Dep. Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289, 1987 WL 37488 (6th Cir. May 27, 1987) |
| 9 | *Freedom International Trucks, Inc. of N.J. v. Eagle Enterprises*, No. Civ. A. 97-4237, 1998 WL 695397 (E.D. Pa. Oct. 5, 1998) |
| 10 | *RSL Holding Co. Inc. v. Dresser Indus., Inc.*, No. 89 C 7004, 1991 WL 203864 (N.D. Ill. Oct. 1, 1991) |
| 11 | *S. Megga Telecommunications Ltd. v. Lucent Techs., Inc.*, No. 96-357-SLR, 1997 WL 86413 (D. Del. Feb. 14, 1997) |
| 12 | *United Nat'l Ins. Co. v. Waterfront Realty Corp.*, No. 89 Civ. 4525 (MJL), 1994 WL 259811 (S.D.N.Y. June 9, 1994) |

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.