FILED

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chester (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S REDACTED REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant/Counterclaim-Plaintiff. | Civil No. 2:03CV-0294 DAK |
| | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |



TABLE OF CONTENTS

Page

Preliminary Statement...................................................................................................... 1

Statement of Undisputed Facts ........................................................................................ 5

Argument .......................................................................................................................... 6

I.      SCO BEARS THE BURDEN OF DEMONSTRATING THAT THERE ARE
        GENUINE ISSUES OF MATERIAL FACT THAT WOULD PRECLUDE
        SUMMARY JUDGMENT ON IBM'S TENTH COUNTERCLAIM. ......................... 6

II.     SCO HAS NOT ADDUCED, AND CANNOT ADDUCE, EVIDENCE
        SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT. .......... 10

        A.     SCO Fails Properly To Challenge IBM's Statement Of Undisputed
               Facts. ............................................................................................................ 11

        B.     SCO Fails To Adduce Any Competent Evidence That IBM Has
               Infringed SCO's Alleged UNIX Copyrights. .............................................. 12

               1.     SCO's purported evidence should be stricken from the record
                      because it was not disclosed in response to IBM's discovery
                      requests or in response to Judge Wells's discovery orders. ............... 12

               2.     In any event, SCO's purported evidence is inadmissible
                      because it is not based on personal knowledge and is improper
                      opinion testimony. . ........................................................................... 17

               3.     Even if his testimony were admissible, the allegedly infringing
                      code identified by Mr. Gupta is insufficient to establish
                      copyright infringement. ..................................................................... 18

        C.     SCO Fails To Adduce Any Competent Evidence That SCO Is The
               Rightful Owner Of Valid Copyrights In The UNIX Software ...................... 23

III.    NEITHER SCO'S RULE 56(f) APPLICATION NOR THE PROCEDURAL
        POSTURE OF THE CASE PRECLUDES A GRANT OF SUMMARY
        JUDGMENT ................................................................................................................. 25

        A.     The Fact That Discovery Is Not Complete Is Alone No Reason To
               Grant SCO's Rule 56(f) Application. ........................................................... 26

# TABLE OF CONTENTS

Page

**B.**   **SCO Has (And Has Had) All Of The Materials It Needs To Show "Substantial Similarity" And Claims Already To Have Analyzed The Materials.** .......................................................................................... 27

**C.**   **None Of The Additional And Extensive Discovery SCO Seeks Is Necessary Or Even Relevant To IBM's Motion.** ............................................... 32

**IV.**   **SCO'S OPPOSITION SEEKS MERELY TO CREATE A SMOKESCREEN TO COVER THE INADEQUACIES OF ITS CLAIMS AND FURTHER TO DELAY THE RESOLUTION OF THIS LITIGATION.** ............................................. 38

**Conclusion** ................................................................................................................ 45

## TABLE OF AUTHORITIES

### CASES

Adams v. Goodyear Tire & Rubber Co.,
    184 F.R.D. 369 (D. Kan. 1998)................................................................................30

Adler v. Wal-Mart Stores, Inc.,
    144 F.3d 664 (10th Cir. 1998) ......................................................................7, 31

American Eagle Ins. Co. v. Thompson,
    85 F.3d 327 (8th Cir. 1996) ...........................................................................8

Ashley Creek Phosphate Co. v. Chevron,
    129 F. Supp. 2d 1299 (D. Utah 2000)..............................................................11

Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,
    994 F. 2d 1476 (10th Cir. 1993) ...........................................................22, 24, 28

Baker v. IBP, Inc.,
    No. 02-4067, 2002 U.S. Dist. LEXIS 23869 (D. Kan. Dec. 5, 2002)................................14

Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.,
    206 F.3d 980 (10th Cir. 2000) .......................................................................27

Biocore Med. Techs., Inc. v. Khosrowshahi,
    No. 98-2031, 1998 U.S. Dist. LEXIS 20512 (D. Kan. Nov. 6, 1998) ..............................14

Bobian v. Csa Czech Airlines,
    232 F. Supp. 2d 319 (D.N.J. 2002) ..................................................................31

Bridge Publ'ns, Inc. v. F.A.C.T.Net, Inc.,
    183 F.R.D. 254 (D. Colo. 1998) .....................................................................24

Brightway Adolescent Hosp. v. Health Plan of Nevada, Inc.,
    No. Civ. 2:98CV0729, 2000 WL 33710845 (D. Utah Sept. 20, 2000)...............................32

Bucklew v. Hawkins, Ash, Baptie & Co., LLP,
    329 F.3d 923 (7th Cir. 2003) ...................................................................22, 34

Calvary Holdings, Inc. v. Chandler,
    948 F.2d 59 (1st Cir. 1991)...........................................................................37

Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,
    150 F.3d 132 (2d Cir. 1998)...................................................................................34

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..........................................................................................7

Committee For The First Amendment v. Campbell,
    962 F.2d 1517 (10th Cir. 1992) .....................................................................26, 27

Community for Creative Non-Violence v. Reid,
    490 U.S. 730 (1989)........................................................................................24

Computer Assoc. Int'l, Inc. v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992)..............................................................................21

Country Kids N City Slicks, Inc. v. Sheen,
    77 F.3d 1280 (10th Cir. 1996) .....................................................................10, 28

Cudjoe v. Independent Sch. Dist. No. 12,
    297 F.3d 1058 (10th Cir. 2002) ..........................................................................7

Cuenca v. Univ. of Kan.,
    No. 98-4180, 2001 U.S. Dist. LEXIS 9942 (D. Kan. May 14, 2001)................................14

Ehrenraus v. Reynolds,
    965 F.2d 916 (10th Cir. 1992) ..........................................................................13

Ericsson, Inc. v. Harris Corp.,
    No. Civ. A. 3:98CV2903, 1999 WL 604827 (N.D. Tex. Aug. 11, 1999)............................9

Fernandez v. Bankers Nat'l Life Ins. Co.,
    906 F.2d 559 (11th Cir. 1990) ..........................................................................36

G.I. Holdings, Inc. v. Baron & Budd,
    213 F.R.D. 146 (S.D.N.Y. 2003) .........................................................................3

Gallup, Inc. v. Talentpoint, Inc.,
    No. Civ. A. 00-5523, 2001 WL 1450592 (E.D. Pa. Nov. 13, 2001)................................24

Gates Rubber Co. v. Bando Chem. Indus. Ltd.,
    9 F.3d 823 (10th Cir. 1993) ........................................................2, 18, 20, 21, 22

Gemisys Corp. v. Phoenix Am., Inc.,
    186 F.R.D. 551 (N.D. Cal. 1999)....................................................................30, 33

Genentech, Inc. v. Amgen, Inc.,
    289 F.3d 761 (Fed. Cir. 2002)............................................................................28

Glenayre Elec., Inc. v. Jackson,
    No. 02 CV 0256, 2003 WL 366574 (N.D. Ill. Feb. 19, 2003)...........................10

Go Med. Indus. Pty, Ltd. v. Inmed Corp.,
    300 F. Supp. 2d 1297 (N.D. Ga. 2003) ............................................................17

Gocolay v. New Mexico Fed. Sav. & Loan Assoc.,
    968 F.2d 1017 (10th Cir. 1992) ....................................................................13, 14

Harbor Software, Inc. v. Applied Sys., Inc.,
    925 F. Supp. 1042 (S.D.N.Y. 1996)..................................................................22

Hards v. Gordon,
    No. 2:03CV-0250, 2004 WL 1055664 (D. Utah May 5, 2004).........................11

Hite v. PQ Corp.,
    Nos. 98-2088 & 98-2175, 1998 U.S. Dist. LEXIS 19933 (D. Kan. Dec. 10, 1998)..........14

Hollander v. Sandoz Pharm. Corp.,
    289 F.3d 1193 (10th Cir. 2002) ........................................................................18

Holt v. Wesley Med. Ctr.,
    No. 00-1318, 2002 WL 31778785 (D. Kan. Nov. 25, 2002).............................32

Huthwaite, Inc. v. Sunrise Assisted Living, Inc.,
    261 F. Supp. 2d 502 (E.D. Va. 2003) ..............................................................31

Hydro Eng'g v. Landa, Inc.,
    231 F. Supp. 2d 1130 (D. Utah 2002)...............................................................17

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
    456 U.S. 694 (1982).........................................................................................14

Intellicall, Inc. v. Phonometrics, Inc.,
    952 F.2d 1384 (Fed. Cir. 1992)........................................................................10

Interactive Network, Inc. v. NTN Comm., Inc.,
    875 F. Supp. 1398 (N.D. Cal. 1995) ..............................................................8, 10

Jarvis v. Nobel/Sysco Food Serv. Co.,
    985 F.2d 1419 (10th Cir. 1993) .......................................................................27

Jean v. Bug Music, Inc.,
    No. 00 Civ. 4022, 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) ........................................23

Jensen v. Redev. Agency of Sandy City,
    998 F.2d 1550 (10th Cir. 1993) ............................................................................27, 32

Johnston v. IVAC Corp.,
    885 F.2d 1574 (Fed. Cir. 1989)......................................................................................10

Koplove v. Ford Motor Co.,
    795 F.2d 15 (3d Cir. 1986)..............................................................................................31

Larami Corp. v. Amron,
    No. Civ. A. 91-6145, 1993 WL 69581 (E.D. Pa. Mar. 11, 1993)....................................8, 10

Lefler v. United Healthcare of Utah, Inc.,
    162 F. Supp. 2d 1310 (D. Utah 2001)...............................................................................7

Lifewise Master Funding v. Telebank,
    374 F.3d 917 (10th Cir. 2004) ........................................................................................23

Lifshitz v. Walter Drake & Sons, Inc.,
    806 F.2d 1426 (9th Cir. 1986) ........................................................................................20

Litton Sys., Inc. v. VHC, Inc.,
    No. Civ. A 398 CV 0357, 1998 WL 386164 (N.D. Tex. July 8, 1998)................................9

Madrid v. Chronicle Books,
    209 F. Supp. 2d 1227 (D. Wyo. 2002)............................................................................31

Medimmune, Inc. v. Centocor, Inc.,
    271 F. Supp. 2d 762 (D. Md. 2003) ..................................................................................8

Meyerhoff v. Michelin Tire Corp.,
    70 F.3d 1175 (10th Cir. 1995) ........................................................................................17

Midway Mfg. Co. v. Bandai-America, Inc.,
    546 F. Supp. 125 (D.N.J. 1982) ......................................................................................28

Mitel, Inc. v. Iqtel, Inc.,
    124 F.3d 1366 (10th Cir. 1997) ................................................................................10, 18

Moore U.S.A., Inc. v. Standard Register Co.,
    229 F.3d 1091 (Fed. Cir. 2000)......................................................................................28

Morrison Flying Serv. v. Deming Nat'l Bank,
    340 F.3d 430 (10th Cir. 1965) ........................................................................36

Nguyen v. IBP, Inc.,
    162 F.R.D. 675 (D. Kan. 1995)........................................................................16

Norma Ribbon & Trimming, Inc. v. Little,
    51 F.3d 45 (5th Cir. 1995) ...............................................................................20

Ontario Die Co. of America v. Independent Die Assoc., Inc.,
    No. 89-CV-30035, 1990 WL 300899 (E.D. Mich. Aug. 24, 1990)...................10

Orjias v. Stevenson,
    31 F.3d 995 (10th Cir. 1994) ...........................................................................17

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,
    288 F. Supp. 2d 544 (S.D.N.Y. 2003)...............................................................20

Price v. Western Resources, Inc.,
    232 F.3d 779 (10th Cir. 2000) ....................................................................26, 27

Pub. Serv. Co. of Colorado v. Continental Cas. Co.,
    26 F.3d 1508 (10th Cir. 1994) .........................................................................26

Quinn v. Kansas City,
    64 F. Supp. 2d 1084 (D. Kan. 1999)................................................................14

Radich v. Goode,
    886 F.2d 1391 (3d Cir. 1989)...........................................................................26

Raleigh v. Snowbird Corp.,
    992 F. Supp. 1295 (D. Utah 1998)....................................................................32

Ralston v. Smith & Nephew Richards, Inc.,
    275 F.3d 965 (10th Cir. 2001) .........................................................................17

Reliance Life Ins. Co. v. Burgess,
    112 F.2d 234 (8th Cir. 1940) .............................................................................8

Resolution Trust Corp. v. Williams,
    162 F.R.D. 654 (D. Kan. 1995).........................................................................14

Rueb v. Morales,
    No. 02-1267, 91 Fed. Appx. 95, 2004 WL 206310 (10th Cir. Feb. 4, 2004) ....14

Salguero v. City of Clovis,
    366 F.3d 1168 (10th Cir. 2004) ................................................................17

Sames v. Gable,
    732 F.2d 49 (3d Cir. 1984).....................................................................37

Sanders v. Quikstak, Inc.,
    889 F. Supp. 128 (S.D.N.Y. 1995) ........................................................29

Schaffrath v. Thomas,
    993 F. Supp. 842 (D. Utah 1998)...........................................................32

Scholastic, Inc. v. Stouffer,
    221 F. Supp. 2d 425 (S.D.N.Y. 2002).....................................................23

Sem-Torq, Inc. v. K Mart Corp.,
    936 F.2d 851 (6th Cir. 1991) .................................................................24

Shea v. Fantasy Inc.,
    No. C 02-02644, 2003 WL 881006 (N.D. Cal. Feb. 27, 2003) ...............24

Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,
    859 F.2d 865 (11th Cir. 1988) ...............................................................36

Sowell v. United Container Mach., Inc.,
    No. 02-2004, 2002 WL 31466439 (D. Kan. Nov. 1, 2002)................16

In re Standard Metals Corp.,
    817 F.2d 625 (10th Cir. 1987) ...............................................................13

Steiner Sales Co. v. Schwartz Sales Co.,
    98 F.2d 999 (10th Cir. 1938) ...................................................................8

Stevens v. Deluxe Fin. Servs., Inc.,
    199 F. Supp. 2d 1128 (D. Kan. 2002)....................................................17

Sturdza v. United Arab Emirates,
    281 F.3d 1287 (D.C. Cir. 2002)..............................................................31

Thimbleberries, Inc. v. C & F Enters., Inc.,
    142 F. Supp. 2d 1132 (D. Minn. 2001)...................................................24

Toma v. City of Weatherford,
    846 F.2d 58 (10th Cir. 1988) .............................................................13, 14

Trainor v. Apollo Metal Specialties, Inc.,
    318 F.3d 976 (10th Cir. 2003) ........................................................................7

Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.,
    No. 95 Civ. 0246, 1997 WL 158364 (S.D.N.Y. Apr. 2, 1997)............................24

Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.,
    22 F.3d 1527 (10th Cir. 1994) ......................................................................37

Vining v. Runyon,
    99 F.3d 1056 (11th Cir. 1996) ......................................................................36

Weir v. Anaconda Co.,
    773 F.2d 1073 (10th Cir. 1985) ....................................................................26

Whitehead v. Paramount Pictures Corp.,
    53 F. Supp. 2d 38 (D.D.C. 1999)..................................................................33

Williams v. Arndt,
    626 F. Supp. 571 (D. Mass. 1985) ................................................................28

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,
    170 F.3d 985 (10th Cir. 1999) ......................................................................17

Wuv's Int'l, Inc. v. Love's Enters., Inc.,
    208 U.S.P.Q. 736 (D. Colo. 1980) ..................................................................9

Zhou v. Pittsburg State Univ.,
    No. 01-2493, 2003 U.S. Dist. LEXIS 1355 (D. Kan. Jan. 29, 2003)..................14

## STATUTES/RULES

17 U.S.C. § 410...............................................................................................24

Fed. R. Civ. P. 37 ..............................................................................15, 16, 35

Fed. R. Civ. P. 56 ................................................................................7, 26, 27

International Business Machines Corporation ("IBM") respectfully submits this reply memorandum in further support of its cross-motion for partial summary judgment on its claim against The SCO Group, Inc. ("SCO") for a declaration of non-infringement with respect to IBM's Linux activities.

## Preliminary Statement

To avoid summary judgment, SCO was required either to adduce evidence demonstrating that a genuine issue of material fact exists as to IBM's alleged infringement of SCO's purported UNIX copyrights or to demonstrate precisely how additional discovery would lead to a genuine issue of material fact. Notwithstanding SCO's opposition papers of more than 200 pages, SCO fails to establish that any material facts are in dispute or to justify SCO's inability to support its allegations on the current record. Partial summary judgment should therefore be entered in favor of IBM and against SCO.

The only facts material to this motion are not in dispute:

(1) SCO has been claiming publicly for more than a year that it owns the copyrights at issue, that the use of Linux infringes SCO's alleged copyrights and that SCO has "mountains" and "truckloads" of evidence to support its claims;

(2) IBM has asked SCO repeatedly to adduce evidence to support its infringement allegations by, among other things, explaining in detail how, if at all, IBM has infringed SCO's alleged copyrights;

(3) Magistrate Judge Wells twice ordered SCO to provide complete and detailed responses to IBM's discovery requests;

(4) In response to IBM's discovery requests and the Court's orders, SCO did not adduce (and still has not adduced) any competent evidence that IBM's Linux activities infringe SCO's alleged copyrights (or even that SCO owns valid copyrights); and

(5) SCO has long been in possession of all the materials it needs to determine whether any code in Linux infringes any code in SCO's allegedly copyrighted material, and has been unable to find any evidence of infringement.

1

Based upon these undisputed facts, partial summary judgment should be entered in favor of IBM.

Contrary to SCO's contention, the law is clear that SCO has the burden of adducing admissible evidence of infringement (in response to IBM's motion) in order to avoid summary judgment. SCO has not satisfied that burden. (See Section I below.)

As an initial matter, SCO fails even properly to contest the facts in IBM's statement of undisputed facts. Instead, SCO submits its own counter statement of facts, none of which are any impediment to the entry of summary judgment. Indeed, many are immaterial, are unsupported by evidence properly in the record and expressly relate only to SCO's contract claims against IBM, which are not even at issue in this motion. (See Section II.A below.) More importantly, the only evidence that SCO apparently relies on to suggest that IBM has infringed SCO's purported UNIX copyrights—the testimony of a SCO employee named Sandeep Gupta— was disclosed for the first time in opposition to IBM's motion. As this information was not previously disclosed in response to IBM's discovery requests and Judge Well's two discovery orders, it should be stricken from the record and disregarded in considering IBM's motion. (See Section II.B below.)

In any case, Mr. Gupta's opinion testimony is inadequate to create a genuine issue of material fact as to IBM's alleged infringement. As discussed in greater detail in IBM's accompanying Motion to Strike Materials Submitted by SCO in Opposition to IBM's Cross-Motion for Summary Judgment, Mr. Gupta's testimony is inadmissible because it is not based on personal knowledge and Mr. Gupta does not even purport to be an expert qualified to offer opinion testimony. (See Section II.B.2 below.) Moreover, Mr. Gupta's testimony is fatally flawed (as a matter of law) since it purports to find "substantial similarity" between code in Linux and SCO's allegedly copyrighted material without filtering unprotect able material, as is required under this Circuit's holding in Gates Rubber Co. v. Bando Chemical Indus. Ltd., 9 F.3d 823 (10th Cir. 1993). (See Section II.B.3 below.)

2

SCO's opposition ultimately rests on a single untenable proposition: that SCO should be allowed more time to discover (through what can best be described as a massive fishing expedition) evidence that it has long told everyone it has, but obviously does not. As support, SCO asserts it has not had sufficient opportunity to take discovery because IBM only recently asserted its Tenth Counterclaim and has refused to provide SCO with information necessary for SCO to show infringement. The undisputable facts are, however, that (1) SCO's public assertions of copyright infringement have been part of this case—at least through IBM's counterclaims for violation of the Lanham Act, unfair competition, and unfair trade practices—since long before IBM added its Tenth Counterclaim, and (2) the only information necessary for SCO to show infringement has been available to SCO since before it even commenced this litigation. Moreover, the principal additional discovery that SCO claims it needs—extensive materials concerning IBM's AIX and Dynic operating systems—is wholly irrelevant to IBM's Tenth Counterclaim, which concerns whether code in the Linux operating system infringes allegedly copyrighted material in certain versions of SCO's UNIX operating systems. (See Section III below.)

REDACTED

3

REDACTED

SCO's opposition papers thus seek only to perpetuate the fear, uncertainty and doubt it has fostered regarding Linux.  Rather than substantiate its public claims that it has "mountains" and "truckloads" of evidence of copyright infringement, SCO demands delay.  Indeed, SCO goes so far as to contend that it could take 25,000 man-years for SCO to determine whether Linux infringes SCO's purported UNIX copyrights.  SCO's request for delay is nothing but

4

gamesmanship. After more than a year-and-a-half of litigation, and despite its claims to have done "a deep dive into Linux" and "compared the source code of Linux with Unix every which way but Tuesday", it is clear that SCO has no, and never has had any, evidence of copyright infringement. (See Section IV below.)

### Statement of Undisputed Facts[1]

IBM's opening papers set out, and supported with admissible evidence, 48 statements of undisputed fact. (See IBM's Opening Mem., Statement of Undisputed Facts ("IBM Statement") ¶¶ 1-48.)

As discussed below (in Section II.A), despite SCO's more than 200 pages of opposition papers (excluding exhibits), SCO has failed properly to contest IBM's statements of fact, as summarized in Addendum A.[2] Indeed, SCO does not dispute at all 17 of the 48 statements (see SCO's Analysis of Undisputed Facts ¶¶ 4-15, 18, 26-27, 31-32), and fails to adduce evidence sufficient to create a genuine issue of material fact as to the remaining statements, such that all must therefore be deemed admitted.

Particularly relevant for this motion, it remains undisputed, among other things, that:

(1)     SCO has repeatedly claimed publicly that it owns the copyrights at issue (IBM Statement ¶¶ 17-21, 24, 42), that the use of Linux infringes SCO's alleged copyrights (IBM

---

[1]  Exhibits attached to the May 18, 2004 Declaration of Todd M. Shaughnessy are cited herein as "Ex. __". Exhibits attached to the August 23, 2004 Reply Declaration of Todd M. Shaughnessy are cited herein as "Reply Ex. __".

[2]  As discussed below (at 11-12), SCO improperly submitted its own counter statement of facts in opposition to IBM's motion, rather than detailing why, and based on what evidence, it disputed any of IBM's statements of fact. SCO's counter statement of facts—indeed, its entire opposition brief—includes a significant amount of purported "facts" and argument addressed to SCO's (misguided) interpretation of IBM's and Sequent's UNIX System V license agreements, all of which are not relevant here. (See e.g., SCO Opp. at 14-17, 88-90.) IBM disputes SCO's interpretation of the contracts, but will not undertake to refute SCO's allegations in the context of this motion, which concerns IBM's Tenth Counterclaim.

Statement ¶¶ 17, 21), and that SCO has "mountains" and "truckloads" of evidence to support its claims (IBM Statement ¶ 27);

      (2)     IBM has asked SCO repeatedly to adduce evidence to support its infringement allegations regarding Linux by, among other things, explaining in detail how, if at all, IBM has infringed SCO's alleged copyrights (IBM Statement ¶¶ 30-32, 34, 38-39);

      (3)     Magistrate Judge Wells twice ordered SCO to provide complete and detailed responses to IBM's discovery requests (IBM Statement ¶¶ 33, 39, Exs. 36, 40);

      (4)     in response to IBM's discovery requests and the Court's orders, SCO did not adduce (and still has not adduced) any evidence to show that IBM's Linux activities (i.e., its copying of the Linux kernel)[3] infringe SCO's alleged copyrights (or even that it owns valid copyrights) (IBM Statement ¶¶ 41-47); and

      (5)     SCO has long been in possession of all the materials it needs to determine whether any code in Linux infringes any code in SCO's allegedly copyrighted material, and has been unable to find any evidence of infringement.  (IBM Statement ¶¶ 12-14.)

**Argument**

**I.**     **SCO BEARS THE BURDEN OF DEMONSTRATING THAT THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT ON IBM'S TENTH COUNTERCLAIM.**

      SCO misstates the standard this Court must apply in considering IBM's motion for partial summary judgment.  Although SCO has been asserting publicly for more than a year that it has substantial evidence that source code in Linux infringes its purported UNIX copyrights,[4] SCO

---

[3]  The term "Linux" is susceptible to multiple meanings and can be used in different ways.  For purposes of its Tenth Counterclaim and this motion, IBM uses the term in its generally understood sense to refer to the core Linux code that is available at http://www.linux.org and is commonly known as the Linux kernel.

[4]  SCO's public statements to this effect and threats of litigation regarding Linux are too numerous to be catalogued.  A number of examples are reviewed below in Section IV.

6

now contends it should be IBM's burden in this case to show "that Linux does not contain material that infringes SCO's copyrights". (SCO Opp. at 59 (emphasis added).) As explained in IBM's opening brief (at 24-25), however, because IBM's Tenth Counterclaim seeks a declaration of non-infringement, SCO is wrong.

As recited in the very cases cited by SCO, "where the non-moving party will bear the burden of proof at trial", summary judgment must be granted if the "nonmoving party has failed to make a sufficient showing on an essential element of [its] case". Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986); see Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2003) (holding that the moving party can carry its burden on a motion for summary judgment "by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."). In this Circuit, therefore, although IBM "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law", IBM "need not negate the nonmovant's claim" with any evidence. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998) (emphasis added); see also Cudjoe v. Independent Sch. Dist. No. 12, 297 F.3d 1058, 1062 (10th Cir. 2002). Rather, IBM is entitled to summary judgment if it can "point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim". Adler, 144 F.3d at 671.[5]

Since IBM merely seeks a declaration that it does not infringe SCO's alleged copyrights, SCO, not IBM, bears the burden of proof at trial. It is well-established that when a declaratory

---

[5] See also Lefler v. United Healthcare of Utah, Inc., 162 F. Supp. 2d 1310, 1315 (D. Utah 2001) ("In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case. . . . Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate 'specific facts showing that there is a genuine issue for trial'.") (quoting Fed. R. Civ. P. 56(e)).

7

judgment plaintiff seeks a declaration of <u>non-infringement</u>, the party claiming infringement—

<u>i.e.</u>, the declaratory judgment <u>defendant</u>—bears the burden.[6]  <u>See Interactive Network, Inc. v.</u>

<u>NTN Comm., Inc.</u>, 875 F. Supp. 1398, 1403 (N.D. Cal. 1995) (holding that the defendant in a

declaratory judgment action seeking a declaration of non-infringement bears the burden of

proof); <u>Larami Corp. v. Amron</u>, No. Civ. A. 91-6145, 1993 WL 69581, at *3 (E.D. Pa. Mar. 11,

1993) (same); <u>Medimmune, Inc. v. Centocor, Inc.</u>, 271 F. Supp. 2d 762, 769-70 (D. Md. 2003)

("[I]n a typical patent infringement declaratory judgment case where the declaratory plaintiff

seeks a holding of non-infringement, the <u>patent holder</u> retains the burden of proof despite being

the nominal defendant.") (internal quotation and marks omitted).[7]

SCO's assertion that IBM bears the burden of proof is based on a blatant misreading of

the law. The principal case upon which SCO relies to argue that IBM must prove at trial that it

does not infringe SCO's copyrights, <u>Steiner Sales Co. v. Schwartz Sales Co.</u>, 98 F.2d 999 (10th

---

[6]  <u>See, e.g.</u>, 12 Moore's Federal Practice § 57.62[2][d] (3d ed. 1997) ("In patent, copyright, and
trademark cases, courts have generally recognized that any role reversal occasioned by
declaratory relief should not shift the burden of proof from the manner in which it would be
assigned in a coercive infringement suit. In general, the holder bears the burden of proving the
validity of the patent, copyright, or trademark and that some specific activity or product is
<u>infringing or would infringe. If the burden of proof is shifted in these declaratory relief actions,</u>
the alleged infringer would be forced to prove a negative, that no conceivable activity could
infringe on any of the holder's rights. Rather, when declaratory relief actions are prompted by a
specific threat made by the holder, the holder is simply put to its proof.")

[7]  SCO attempts to distinguish the <u>Interactive Network</u> and <u>Larami</u> cases on the grounds that the
holdings in these cases are limited to instances where the defendant brings a "mirror-image"
counterclaim for infringement. (SCO Opp. at 58 n.35). There is nothing in either <u>Interactive</u>
<u>Network</u> or <u>Larami</u> (or the other cases cited by IBM in its opening or reply briefs) to suggest that
their holdings are so limited. The case cited by SCO, <u>Reliance Life Ins. Co. v. Burgess</u>, 112 F.2d
234 (8th Cir. 1940), also does not support SCO's argument. In <u>American Eagle Ins. Co. v.</u>
<u>Thompson</u>, 85 F.3d 327, 331 (8th Cir. 1996), decided after <u>Reliance</u>, the Eighth Circuit held that
the defendant in a declaratory judgment action brought by his insurer had the burden of proving
he was covered under his insurance policy, even though defendant did not assert a counterclaim
against the insurer. The <u>American Eagle</u> court explicitly distinguished <u>Reliance</u> on the ground
that the plaintiff insurer in that case sought "to apply a policy <u>exclusion</u>" to the contract at issue
and not merely "a declaration of non-liability", and thus retained the burden of proof.  <u>Id.</u>

Cir. 1938), does not support that proposition. In <u>Steiner</u>, the declaratory judgment plaintiff was not seeking a declaration of non-infringement. Instead, plaintiff sought to establish that certain patent licensing agreements it had entered into with defendant violated federal antitrust laws. Even as SCO describes the case—by directly quoting (without attribution) a <u>Westlaw</u> <u>headnote</u>—<u>Steiner</u> held only "that the declaratory plaintiff had the burden of establishing that the contracts had tended to lessen competition and had resulted in loss or damage to plaintiff". (SCO Opp. at 57 (quoting Headnote 19).) Indeed, a careful reading of the case confirms that <u>Steiner</u> stands only for the unremarkable proposition that a plaintiff bears the burden of establishing it is entitled to the declaration of an <u>affirmative</u> proposition that it is seeking (<u>i.e.</u>, that certain contracts violated antitrust laws), not a declaration of a <u>negative</u> proposition, such as non-infringement.[8]

Contrary to SCO's interpretation of the law, therefore, IBM is entitled to summary judgment on the instant motion unless SCO is able to come forward with specific evidence

---

[8]  The only other cases cited by SCO are also unavailing. In <u>Wuv's Int'l, Inc. v. Love's Enters., Inc.</u>, 208 U.S.P.Q. 736, 757 (D. Colo. 1980), the plaintiff Wuv's International sought an affirmative declaration that "it had the right to the use and registration of the mark 'WUVS'", not a declaration of a non-infringement. The court in that case ruled that declaratory judgment plaintiff carried the burden of establishing its <u>own</u> service mark was protectable and could be registered with the U.S. Patent and Trademark Office, but that defendant nevertheless carried the burden of establishing that plaintiff infringed its "Love's" service mark. <u>Id.</u> at 747, 756-757. In the opinion in <u>Ericsson, Inc. v. Harris Corp.</u>, No. Civ. A. 3:98CV2903, 1999 WL 604827 (N.D. Tex. Aug. 11, 1999), cited by SCO, the court declined to realign the parties in the case because it believed the declaratory judgment plaintiff to have the burden of proof. This opinion, however, was subsequently <u>vacated</u>, based on defendant's motion for reconsideration, which argued <u>inter alia</u> that the <u>defendant</u> "ha[d] the burden of proof" as to the assertions of <u>infringement</u>. (See Reply Exs. 1 (Minute Order) & 2 (Motion for Reconsideration). Moreover, the lone case cited in the original <u>Ericsson</u> opinion, <u>Litton Sys, Inc. v. VHC, Inc.</u>, No. Civ. A 398 CV 0357, 1998 WL 386164 (N.D. Tex. July 8, 1998) (Ex. E), made a plain distinction between claims seeking affirmative declarations and claims seeking negative declarations. The <u>Litton</u> court noted, "In a scenario where [plaintiff] only sought a declaration in the negative (i.e., it did not breach the lease), [defendant] would likely be the only party with an affirmative burden of proof. This is not the situation in this lawsuit, however, because [plaintiff] has asserted (and has the burden of proving) the validity of the new sublease." <u>Id.</u> at *1 n.3.

demonstrating a genuine issue of material fact as to IBM's alleged infringement of SCO's copyrights. See Interactive Network, 875 F. Supp. at 1403 ("[S]ummary judgment of noninfringement for the alleged infringer (Interactive) must be granted unless NTN can demonstrate a genuine issue of material fact as to whether a reasonable jury could conclude that the two works are substantially similar in both ideas and expression"); Larami, 1993 WL 69581, at *3 ("[O]n this motion for partial summary judgment, [plaintiff] need only point out the absence of evidence supporting a finding of infringement. To resist this motion, [defendant] must then come forward with specific evidence showing that there is a genuine issue of material fact for trial as to whether the '129 patent is infringed.")[9]

## II.   SCO HAS NOT ADDUCED, AND CANNOT ADDUCE, EVIDENCE SUFFICIENT TO CREATE A GENUINE ISSUE OF MATERIAL FACT.

As stated in IBM's opening brief, summary judgment should be granted in IBM's favor unless SCO can demonstrate a genuine issue of material fact exists as to (1) SCO's ownership of valid copyrights and (2) IBM's copying of protectable elements of SCO's copyrighted work. See Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1370 (10th Cir. 1997) (stating elements of copyright infringement); accord Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir. 1996).

---

[9] See also Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed. Cir. 1992) (affirming grant of summary judgment on claim for declaration of non-infringement where defendant produced no evidence of infringement in opposition to motion); Johnston v. IVAC Corp., 885 F.2d 1574, 1577 (Fed. Cir. 1989) (same); Ontario Die Co. of America v. Independent Die Assoc., Inc., No. 89-CV-30035, 1990 WL 300899 (E.D. Mich. Aug. 24, 1990), at *2 ("Once a party seeking a declaration of noninfringement sets forth materials suggesting non-response to a patentee's claim, the burden shifts to the patentee to provide materials that at a minimum raise actual doubt concerning potential infringement.") (Ex. E); Glenayre Elec., Inc. v. Jackson, No. 02 CV 0256, 2003 WL 366574 at *2 (N.D. Ill. Feb. 19, 2003) ("'[T]he motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement'") (quoting Johnston, 885 F.2d at 1577) (Ex. E).

Although SCO has submitted a 90-page brief, three lengthy witness declarations, and thousands of pages of exhibits in opposition to IBM's motion, SCO fails to adduce evidence sufficient to allow a jury to find that IBM's Linux activities infringe SCO's alleged copyrights. As SCO fails to meet its burden, IBM is entitled to summary judgment on its Tenth Counterclaim.

    A.    <u>SCO Fails Properly To Challenge IBM's Statement Of Undisputed Facts.</u>

As an initial matter, SCO fails even properly to challenge IBM's statements of undisputed facts. Local Rule 56-1(c) provides:

> "A memorandum in opposition to a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered, must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed."

DUCivR 56-1(c); <u>see</u> <u>Hards v. Gordon</u>, No. 2:03CV-0250, 2004 WL 1055664, at *1 n.1 (D. Utah May 5, 2004) (Ex. E). Here, rather than concisely identifying the particular statements of IBM's that it challenges, and the particular portions of the record that support its contention that a genuine issue of material fact exists, SCO instead submits its own counter statement of facts. That is improper under DUCivR 56-1(c), and IBM's statement of facts should be deemed admitted for this reason alone. <u>See</u> <u>Ashley Creek Phosphate Co. v. Chevron</u>, 129 F. Supp. 2d 1299, 1303 n.2 (D. Utah 2000), <u>aff'd in part</u>, <u>rev'd in part</u>, 315 F.3d 1245 (10th Cir. 2003) (noting that plaintiff "did not refer the court to any material facts that it claims are in dispute; rather, it simply provided its own statement of undisputed facts, which does not comport with the requirements" of the local rules).

SCO's counter statement of facts (referred to herein as "SCO's Facts") is also insufficient to demonstrate that genuine issues of material fact exist. SCO's alleged facts are either

immaterial—indeed, irrelevant—to the instant motion (including in particular, numerous facts that relate only to SCO's <u>contract</u> claims against IBM (SCO's Facts ¶¶ 15-24)) or are not supported by admissible evidence properly in the record.[10] As reviewed in IBM's accompanying motion to strike, which is incorporated herein by reference, much of the evidence upon which SCO relies is inadmissible because it: (1) is not based on personal knowledge; (2) is hearsay; or (3) is improper opinion testimony.[11]

> B.    SCO Fails To Adduce Any Competent Evidence That IBM Has Infringed SCO's Alleged UNIX Copyrights.
>
>> 1.    SCO's purported evidence should be stricken from the record because it was not disclosed in response to IBM's discovery requests or in response to Judge Wells's discovery orders.

Setting aside SCO's failure properly to contest IBM's statement of facts, the only evidence that SCO has submitted purportedly to suggest that IBM has infringed SCO's alleged UNIX copyrights is the opinion of a SCO employee named Sandeep Gupta, whose credentials (if any) SCO does not disclose. (<u>See</u> Gupta Decl.) In his declaration, Mr. Gupta opines that IBM has had access to the allegedly copyrighted works and that there are substantial similarities between six categories of "routines" or "groupings of code" within Linux and SCO's allegedly copyrighted UNIX code. (Gupta Decl. ¶ 3.) This supposed evidence, however, was disclosed for the <u>first time</u> in opposition to this motion, more than a year after SCO commenced this litigation and had publicly proclaimed to have performed extensive analyses of Linux and UNIX code and found substantial evidence of copying. SCO never disclosed the information contained in the Gupta Declaration in response to IBM's discovery requests or the Court's discovery

---

[10] Some of SCO's purported "facts" do not cite to any evidence in the record or contain legal argument and not facts at all. (<u>See</u> SCO's Facts ¶¶ 19, 19 n.10; 20; 23; 24; 25 n.11; 29; 30; 31; 32; 37; 40; 54.)

[11] The following paragraphs of SCO's counter statement of facts are improper because they rely on improper opinion testimony or hearsay: ¶¶ 1 n.3, 3, 8, 10, 10 n.5, 11, 12-14, 40, 44 and 47.

orders. The Court should therefore disregard Mr. Gupta's declaration in considering IBM's motion under at least Rules 37(b)(2) and 37(c)(1) of the Federal Rules of Civil Procedure.

In its opposition brief (at 50-55), SCO mischaracterizes both IBM's argument and the law concerning Rule 37(b)(2). Specifically, SCO asserts that IBM "ignores" and "miserably fails" to satisfy the "just sanction" test in Ehrenraus v. Reynolds, 965 F.2d 916 (10th Cir. 1992). (SCO Opp. at 52.) Ehrenraus, however, only purports to set forth factors a court should consider "[b]efore choosing dismissal as a just sanction". Id. at 921.[12] As is explained clearly in IBM's opening brief, IBM seeks nothing of the sort here.

IBM does not seek dismissal of SCO's complaint as a result of SCO's discovery failures; indeed, IBM's instant motion does not seek summary judgment on a single one of SCO's claims against IBM. Rather, IBM seeks to have established against SCO the fact that IBM's Linux activities do not infringe SCO's alleged copyrights and to have excluded from consideration *evidence SCO failed to disclose in response to the Court's discovery orders, sanctions* specifically provided for in Rule 37(b)(2)(A) and (B). It should come as no surprise, therefore,

---

[12] SCO further misstates Tenth Circuit law by asserting that IBM must show "<u>bad faith noncompliance</u>" with a discovery order in order to seek dismissal under Rule 37. (Opp. Br. at 50 (emphasis added).) As even the cases cited by SCO make plain, dismissal is appropriate "when a party has willfully <u>or</u> in bad faith disobeyed a discovery order". <u>Gocolay v. New Mexico Fed. Sav. & Loan Assoc.</u>, 968 F.2d 1017, 1020 (10th Cir. 1992) (emphasis added). "A 'willful failure' is 'any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.'" Id. (quoting In re Standard Metals Corp., 817 F.2d 625, 628-29 (10th Cir. 1987)); see also Toma v. City of Weatherford, 846 F.2d 58, 60 (10th Cir. 1988). Even if IBM were seeking dismissal of SCO's complaint therefore (which it is not), IBM would need only show an <u>intentional</u> failure to comply. In this case, there is no question that SCO intentionally failed to comply with the Court's orders. For example, when IBM called to SCO's attention that it had failed to comply with the Court's order because it did not identify any lines of UNIX System V code at issue, SCO responded offhandedly that it knowingly (not inadvertently) failed to identify such lines because "that is not part of SCO's claims". (Ex. 29.)

that IBM did not discuss the Tenth Circuit's standard for seeking dismissal of a complaint as a discovery sanction under Rule 37 in its opening brief.[13]

Remarkably, SCO even attempts to distinguish the cases cited by IBM, Knowlton v. Teltrust Phones, Inc., Burns v. Imagine Files Entertainment, and Volkart Bros., Inc. v. M/V "Palm Trader", on the ground that the courts in those cases did not "find dispositive sanctions to be appropriate, even in response to a party's proven discovery malfeasance". (SCO Opp. at 54.) SCO's argument misses the point entirely. As stated, IBM does not seek dismissal of SCO's complaint. The Burns, Knowlton, and Volkart cases expressly hold that the sanction IBM is seeking—establishing particular facts against a delinquent party—is an appropriate sanction (lesser than dismissal) under Rule 37(b)(2) where a party fails to comply with a discovery order.

In this instance, there can be no doubt that the narrow sanction IBM is seeking is "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery". Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982). Since IBM served its second set of discovery requests in September 2003, IBM has been seeking from SCO identification of "all source code and other material in Linux . . . to which plaintiff has rights", "the nature of plaintiff's rights" in that code, and "how IBM is alleged to

---

[13] All of the cases cited by SCO applying the Ehrenraus factors are cases in which either the defendant sought dismissal of plaintiff's entire complaint or plaintiff sought default judgment on its entire complaint as a result of discovery failings, and are therefore inapposite. See Gocolay, 968 F.2d 1017; Toma, 846 F.2d 58; Rueb v. Morales, No. 02-1267, 91 Fed. Appx. 95, 2004 WL 206310 (10th Cir. Feb. 4, 2004); Baker v. IBP, Inc., No. 02-4067, 2002 U.S. Dist. LEXIS 23869 (D. Kan. Dec. 5, 2002); Resolution Trust Corp. v. Williams, 162 F.R.D. 654 (D. Kan. 1995); Quinn v. Kansas City, 64 F. Supp. 2d 1084 (D. Kan. 1999); Zhou v. Pittsburg State Univ., No. 01-2493, 2003 U.S. Dist. LEXIS 1355 (D. Kan. Jan. 29, 2003); Hite v. PQ Corp., Nos. 98-2088 & 98-2175, 1998 U.S. Dist. LEXIS 19933 (D. Kan. Dec. 10, 1998); Biocore Med. Techs., Inc. v. Khosrowshahi, No. 98-2031, 1998 U.S. Dist. LEXIS 20512 (D. Kan. Nov. 6, 1998); Cuenca v. Univ. of Kan., No. 98-4180, 2001 U.S. Dist. LEXIS 9942 (D. Kan. May 14, 2001). Rueb is further inapposite because dismissal in that case was sought not based on Rule 37, but because of pro se plaintiff's failure to pay certain filing fees to the court. Quinn is further inapposite because dismissal in that case was sought under Rule 11.

have infringed plaintiff's rights" in that code. (Ex. 33, Interrogatory Nos. 12 and 13 and Document Request No. 75.) This information was (and is) relevant to IBM's counterclaims for violation of the Lanham Act (IBM's Second Counterclaim), unfair competition (IBM's Third Counterclaim) and unfair and deceptive trade practices (IBM's Fifth Counterclaim), which are premised (at least in part) on what we believe to be SCO's false and disparaging claims that the use of Linux infringes SCO's rights. Obviously, the very same information is relevant to IBM's Tenth Counterclaim, which seeks a declaration that IBM's Linux activities do not infringe SCO's purported rights.

Nevertheless, and despite two court orders directing SCO to respond fully to IBM's interrogatories, SCO persisted in refusing properly to identify the code in Linux to which it claims rights and how IBM is alleged to have infringed those rights. As a result, it is only just to preclude SCO from now submitting evidence in the form of the Gupta Declaration to establish IBM's purported infringement of SCO's copyrights in opposition to IBM's motion for summary judgment, when SCO has failed to do so at any time in the past year in response to IBM's discovery requests and the Court's orders. SCO's time to come forward with its supposed evidence has long since passed.

Moreover, the Gupta Declaration should also be excluded from consideration on this motion pursuant to Fed. R. Civ. P. 37(c)(1).[14]  Under Rule 37(c)(1):

> "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless failure is harmless, permitted to use as evidence at a trial, at a

---

[14]  IBM did not, and could not have, relied upon Rule 37(c)(1) in its opening brief because SCO had not yet come forward with any alleged evidence that it had previously failed to provide in response to IBM's discovery requests.

> hearing, or on a motion any witness or information not so
> disclosed."[15]

Rule 37(c)(1) provides for a "self-executing sanction" that is intended to be <u>automatic</u>, unless the

party seeking to introduce the evidence can establish substantial justification for its failure to

provide the evidence, or shows that such failure is harmless. Fed. R. Civ. P. 37(c)(1) (advisory

cmte. notes, 1993 amendments); <u>see Nguyen v. IBP, Inc.</u>, 162 F.R.D. 675, 680 (D. Kan. 1995)

("The burden of establishing substantial justification and harmlessness is upon the party who is

claimed to have failed to make the required disclosure.").

In this case, SCO has made no attempt to establish "substantial justification" for not

providing the information in the Gupta Declaration earlier—nor could it. The information is, as

Mr. Gupta admits, based on a comparison of certain UNIX and Linux code, code which SCO has

had in its possession long before it even filed its case. (IBM's Statement ¶¶ 12-14.) Thus, there

is no genuine dispute concerning compliance. <u>See Sowell v. United Container Mach., Inc.</u>, No.

02-2004, 2002 WL 31466439, at *2 (D. Kan. Nov. 1, 2002) (Ex. E). SCO also makes no attempt

to show that "there is <u>no</u> prejudice to the party entitled to the disclosure". <u>Sowell</u>, 2002 WL

31466439, at *2 (emphasis added). To the contrary, IBM has plainly been prejudiced by SCO's

failure properly to respond to IBM's interrogatories. SCO has not only wasted IBM's time and

resources over the past year of discovery, by requiring IBM to seek to compel SCO to provide

necessary information that SCO apparently was only willing to come forward with in the face of

a summary judgment motion, but SCO has also perpetuated fear, uncertainty and doubt about the

lawfulness of IBM's activities.[16]

---

[15] Rule 26(e)(2), in turn, requires a party "seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

[16] The Tenth Circuit has suggested several additional factors to consider in deciding whether to exclude evidence at trial based on Rule 37(c)(1), including (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3)

In addition to Rule 37(b)(2), therefore, the Gupta Declaration should also be excluded from consideration on IBM's motion for summary judgment under Rule 37(c)(1). See Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir. 1994) (affirming exclusion of testimony at trial because defendant failed adequately to respond to interrogatories); Stevens v. Deluxe Fin. Servs., Inc., 199 F. Supp. 2d 1128, 1144 n.44 (D. Kan. 2002) (excluding document from consideration on summary judgment motion because it was not provided in response to discovery requests); Go Med. Indus. Pty, Ltd. v. Inmed Corp., 300 F. Supp. 2d 1297, 1308-10 (N.D. Ga. 2003) (excluding documents and testimony from consideration on summary judgment motion because they were not disclosed in response to discovery requests).

      2.     In any event, SCO's purported evidence is inadmissible because it is not based on personal knowledge and is improper opinion testimony.

As is described in more detail in IBM's accompanying motion to strike, Mr. Gupta's testimony should further be stricken from the record because it is not based on personal knowledge and SCO has made no attempt to qualify Mr. Gupta as an expert witness. Accordingly, the testimony is not competent evidence and cannot be relied upon to create a genuine issue of material fact.[17]

---

the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999). Here again, SCO makes no attempt to suggest that any of these factors counsel in favor of not excluding the Gupta Declaration.

[17] See, e.g., Salguero v. City of Clovis, 366 F.3d 1168, 1177-78 & n.4 (10th Cir. 2004) (affirming grant of summary judgment and noting that because affidavit failed to "demonstrate any personal knowledge or corroborating evidence", it was "insufficient to create a genuine question of material fact"); Hydro Eng'g v. Landa, Inc., 231 F. Supp. 2d 1130, 1133 (D. Utah 2002) (striking portions of witness affidavit because witness had no personal knowledge); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001) (affirming district court's ruling striking expert testimony where the expert was not qualified to offer such testimony); Meyerhoff v. Michelin Tire Corp., 70 F.3d 1175, 1182 (10th Cir. 1995) (same).

3.      Even if his testimony were admissible, the allegedly infringing code
         identified by Mr. Gupta is insufficient to establish copyright infringement.

Even if the Gupta Declaration was timely disclosed (which it was not) and even if it was

competent evidence (which it is not), it remains insufficient as a matter of law to show that a

genuine issue of material fact exists as to IBM's copying of protectable elements of SCO's

allegedly copyrighted materials.  See Mitel, 124 F.3d at 1370 ("In order to establish copyright

infringement, plaintiff must prove . . . that the defendant copied protectable elements of the

copyrighted work.") (emphasis added).

The Tenth Circuit has adopted the abstraction-comparison-filtration test, to determine

whether a computer program, such as the Linux kernel, is substantially similar to (and therefore

may infringe the copyright in) another computer program, such as SCO's allegedly copyrighted

UNIX software.  See Gates Rubber Co. v. Bando Chem. Indus. Ltd., 9 F.3d 823, 834 (10th Cir.

1993).  As set forth in Gates Rubber, the test requires that a court (1) "dissect the program

according to its varying levels of generality", (2) "filter out those elements of the program which

are unprotectable" at each level of abstraction; and (3) then "compare the remaining protectable

elements with the allegedly infringing program".  Id.  According to the Tenth Circuit,

"[f]iltration should eliminate from the comparison the unprotectable elements of ideas,

processes, facts, public domain information, merger material, *scenes a faire* material, and other

unprotectable elements suggested by the particular facts of the program under examination."  Id.

at 834.

As discussed in IBM's accompanying motion to strike, Mr. Gupta's analysis wholly

disregards the abstraction-filtration-comparison test and is therefore fatally flawed.[18]

---

[18]  As discussed in IBM's motion to strike, Mr. Gupta does not even describe the methodology
by which he arrives at his opinion that certain groupings of code in Linux is substantially similar
to code in the UNIX software at issue, reason alone to ignore Mr. Gupta's conclusions.  See
Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1208 (10th Cir. 2002) (affirming grant of
summary judgment and court's ruling striking expert testimony where the expert "provide[d] no
details on the methodology" of his studies).

Specifically, Mr. Gupta failed to filter the unprotectable elements of the allegedly copyrighted work and to apply the appropriate standard for determining, at the comparison stage, whether one body of code is substantially similar to another body of code.

In his declaration, Mr. Gupta opines that six "routines" or "groupings of code" in Linux are substantially similar to the allegedly copyrighted works: (1) "the Read-Copy-Update [(RCU)] routine"; (2) "the user level synchronizations (ULS) routines"; (3) "IPC code"; (4) certain "header and interfaces"; (5) "System V init code"; and (6) "Executable and Linking Format (ELF) code". (Gupta Decl. ¶ 3.) As is set out in the accompanying Declaration of Brian W. Kernighan (Professor of Computer Science at Princeton University), which is incorporated herein by reference, however, Mr. Gupta failed to appropriately analyze these materials using the Gates Rubber methodology in reaching his conclusions. (See Kernighan Decl. ¶¶ 16-19.) To the extent there are similarities between the routines and groupings of code in Linux identified by Mr. Gupta and the allegedly copyrighted UNIX code, the similarities are only with respect to unprotectable elements of such code. (See id. ¶ 18.) Moreover, the code that Mr. Gupta describes as "substantially similar" or even "identical" is plainly not—even to a non-technical reviewer. (See id. ¶ 19.)

With respect to the first two items identified by Mr. Gupta—the RCU and ULS routines (which presumably are his strongest examples)—even a cursory review reveals the flaws in Mr. Gupta's analysis. To the extent he identifies any similarity at all, Mr. Gupta's analysis is focused almost entirely on unprotectable ideas and concepts. (See Kernighan Decl. ¶¶ 20-21.) Indeed, Mr. Gupta himself claims to identify similar "routines" and "method[s]" that "perform the same . . . acts". (Gupta Decl. ¶¶ 3, 5, 7, 10, 11 (describing RCU) and 30, 31, 32, 34, 36 (describing ULS).). Such elements are plainly unprotectable and cannot serve as the basis for a

19

determination of "substantial similarity".[19]  Moreover, the actual code that Mr. Gupta claims to

be substantially similar is plainly not.  Even an untrained reviewer can see by looking at the code

side-by-side, that there is no similarity whatsoever between the Linux code identified by Mr.

Gupta and the corresponding UNIX code.  (See Gupta Declaration Exhibits A (RCU code); H, I

and J (ULS code); Addenda B (RCU code) and C (ULS code) attached hereto.).

 Mr. Gupta's analysis of the "IPC code" is similarly deficient.  As an initial matter, the

tables in Mr. Gupta's declaration that purport to show similarity between code in the Linux

kernel and code in the UNIX software are misleading.  Mr. Gupta has selectively arranged,

juxtaposed and edited the code to make it appear similar, when an inspection of the unaltered

code reveals the code to be starkly different.  (See Addendum D attached hereto.)  As Dr.

Kernighan notes, "Mr. Gupta's conclusions of similarity depend on his selecting isolated lines of

code from disparate places and putting them together as if contiguous blocks of code were

involved (which they are not) and important differences did not exist (which they do)."

(Kernighan Decl. ¶ 22.)  In any case, the IPC code cited by Mr. Gupta is in the public domain

and thus should have been filtered.[20]  See Gates Rubber, 9 F.3d at 837 ("[I]n determining

---

[19]  See Gates Rubber, 9 F.3d at 836-37 (noting that "the main purpose or function of a program
will always be an unprotectable idea" and that "the expression adopted by the programmer is the
copyrightable element in a computer program, and . . . the actual processes or methods embodied
in the program are not within the scope of the copyright law") (quoting H.R. Rep. No. 1476, 94th
Cong., 2d Sess. 57 (1976)); 17 U.S.C. § 102(b) ("In no case does copyright protection for an
original work of authorship extend to any idea, procedure, process, system, [or] method of
operation . . . regardless of the form in which it is described, explained, illustrated, or embodied
in such work.")

[20]  Under the federal copyright law, for works first published prior to March 1, 1989 (the
effective date of the Berne Convention Implementation Act of 1988), the publication of the work
without a copyright notice places the work in the public domain and precludes the copyright
holder from asserting any claim for copyright infringement based on that work.  See, e.g., Norma
Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 48 (5th Cir. 1995) (holding that "even if it be
assumed that the ribbon flowers were copyrightable, the Littles through inadequate notice have
made them part of the public domain, and Norma Ribbon was free to copy them"); Lifshitz v.
Walter Drake & Sons, Inc., 806 F.2d 1426, 1433-35 (9th Cir. 1986) (holding that copyright
holder's "omission of proper copyright notice invalidated his copyright"); Penguin Books

20

copyright infringement, a court must filter out all unoriginal elements of a program, including those elements that are found in the public domain."); Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 714 (2d Cir. 1992) (affirming district court decision rejecting copyright infringement where materials at issue "were . . . taken from the public domain").  Moreover, even if it were not already in the public domain, the IPC code is comprised entirely of unprotectable ideas, concepts or principles, merger material and *scenes a faire* material.  (See Kernighan Decl. ¶ 22.)

The "ELF code" identified by Mr. Gupta also cannot support a finding of substantial similarity.  As explained by Dr. Kernighan, the ELF code to which Mr. Gupta refers is determined by software standards, target industry practice and demands and computer industry programming practices.  (See Kernighan Decl. ¶ 23.)  Indeed, according to Dr. Kernighan, "the substantive content in the ELF header file comes from a published and widely distributed standard . . . that explicitly grants permission for use in the interests of interoperability, by an industry consortium that included SCO's alleged predecessor-in-interest, The Santa Cruz Operation, Inc." (Id.)  As such, the ELF code is classic *scenes a faire* material that is unprotectable as a matter of copyright law.  See Gates Rubber, 9 F.3d at 838 ("Under the *scenes a faire* doctrine, we deny protection to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting.").  In the computer software setting, the Tenth Circuit has ruled that *scenes a faire* material includes, among other

---

U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 288 F. Supp. 2d 544, 555-58 (S.D.N.Y. 2003) (holding that copyrighted work entered public domain where it was "published without notice of copyright prior to copyright registration").  In this case, the IPC code identified by Mr. Gupta was published and distributed prior to 1989—by AT&T, SCO's alleged predecessor-in-interest—without any copyright notices affixed thereto.  (See Kernighan Decl. ¶ 22; Reply Exs. 3 & 4 (showing release of UNIX System V 2.0 in 1984 and UNIX System V 3.2 in 1987).)  Accordingly, the IPC code was placed in the public domain and cannot serve as the basis for any finding of substantial similarity.

things, "hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices and demands, and computer industry programming practices." Id. at 838 (internal citations omitted).[21]

The last two (of the six) items identified by Mr. Gupta—certain "header and interfaces" and "System V init code"—also pose no impediment to the entry of summary judgment. Neither group of code is part of the Linux kernel. (see Kernighan Decl ¶ 24.) As IBM's Tenth Counterclaim is directed to its activities relating to the Linux kernel, this code is outside the scope of IBM's claim and therefore irrelevant to this motion. In any case, as with the other materials, any similarities identified by Mr. Gupta plainly concern non-protectable elements of the code. (See id.)

Even if the alleged similarities described by Mr. Gupta were in fact all genuinely similar—and clearly they are not—they lack the significance necessary to support a finding of copyright infringement. In the Tenth Circuit, substantial similarity may be found only where "those protectable portions of the original work that have been copied constitute a substantial part of the original work -- i.e., matter that is significant in the plaintiff's program". Gates Rubber, 9 F.3d at 839 (emphasis added). Here, the code identified by Mr. Gupta in his declaration comprises no more than 300 lines of code, out of the many millions that exist in the

---

[21] See also Autoskill Inc. v. Nat'l Educ. Support Sys., Inc., 994 F. 2d 1476, 1494-1496 (10th Cir. 1993) (affirming decision rejecting copyright infringement where the "silent sentence" and "silent paragraph" features in reading instruction software were "so standard to the field [of reading instruction] that they cannot be afforded protection"); Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 930 (7th Cir. 2003) (holding that titling captions in spreadsheet program such as "input range" and "criteria range"; designation of specific criteria as "crit1" and "crit2", and designation of each category of data as a "type" were "standard expressions, like language itself, without which the would-be author . . . would be speechless"); Harbor Software, Inc. v. Applied Sys., Inc., 925 F. Supp. 1042, 1051 (S.D.N.Y. 1996) (holding that the subject work was unprotectable because "these elements are . . . contained in computer programming books and therefore constitute standard techniques found in every database program").

allegedly copyrighted UNIX software (see Kernighan Decl. ¶¶ 5, 26), which can hardly be described as "significant".

In sum, as Mr. Gupta failed to filter the unprotectable elements of the materials he analyzed and to show that the allegedly copied materials were "significant", his opinions are based on a flawed methodology (and are furthermore simply wrong) and should be disregarded on consideration of IBM's motion for summary judgment. See Lifewise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004) (affirming grant of summary judgment where plaintiff's evidence consisted of the affidavit of an individual who "was not qualified as an expert in most of the methodology employed in the statement, [and] the methodology . . . [was] not reliable"). When the unprotectable elements of SCO's allegedly copyrighted material are filtered out, no similarity—let alone, "substantial similarity"—exists between Linux and the UNIX code. Thus, no reasonable jury could find in favor of SCO, and summary judgment should be entered in IBM's favor.[22]

### C. SCO Fails To Adduce Any Competent Evidence That SCO Is The Rightful Owner Of Valid Copyrights In The UNIX Software.

The only attempt SCO makes to demonstrate that it owns valid copyrights in the UNIX software is its allegation in its brief that "SCO also owns copyrights and additional licensing rights in and to UNIX". (SCO Opp. at 11 (¶ 6).) The document relied on by SCO in support of this statement, however, does not in any way support SCO's contention. (See SCO Opp., Ex. 32.) Indeed, the September 19, 1995 Asset Purchase Agreement (the "APA") between The Santa

---

[22] See Jean v. Bug Music, Inc., No. 00 Civ. 4022, 2002 WL 287786, at *7 (S.D.N.Y. Feb. 27, 2002) (granting summary judgment on plaintiff's claim for declaration of noninfringement because no reasonable jury could find substantial similarity as to protected elements of the work); Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 438 (S.D.N.Y. 2002) (granting summary judgment on plaintiff's claim for declaration of noninfringement because "protectable elements [of the copyrighted work] . . . are simply not present" in the accused work).

Cruz Operation, Inc. and Novell, Inc., specifically <u>excluded</u> from the transaction, "<u>All</u> <u>copyrights</u>". (<u>Id.</u> Schedule 1.1(b)(V)(A) (emphasis added).)[23]

Moreover, SCO cannot seek simply to rely on the copyright registrations it attached to its Second Amended Complaint as proof of ownership. Although a timely-registered copyright is prima facie evidence of ownership of a valid copyright, <u>Autoskill Inc. v. Natl. Edu. Support Sys., Inc.</u>, 994 F.2d 1476, 1487-88 (10th Cir. 1993), when a registration is not timely—<u>i.e.</u>, it is filed more than five years after the work was created, 17 U.S.C. § 410(c)—the purported copyright *holder is entitled to no presumption and retains the burden of proving ownership of a valid* copyright. <u>See, e.g.</u>, <u>Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.</u>, No. 95 Civ. 0246, 1997 WL 158364, at *2-*3 (S.D.N.Y. April 2, 1997) (holding that where a copyright claimant filed an untimely registration, the "registration d[id] not constitute prima facie evidence that the copyright is valid," and claimant then had the burden to prove ownership) (Ex. E).[24]  As SCO's copyrights state on their face that they were not timely registered, SCO is not entitled to any presumption in this case, and thus bears the burden of establishing ownership of valid copyrights—a burden that SCO fails even to undertake to meet in opposition to IBM's motion.[25]

---

[23]  IBM understands that the issue of SCO's ownership of certain UNIX copyrights is also at issue in SCO's lawsuit against Novell pending before this Court. IBM, as it must, addresses here only the evidence SCO has put forward in this case.

[24]  See also <u>Sem-Torq, Inc. v. K Mart Corp.</u>, 936 F.2d 851, 854 (6th Cir. 1991); <u>Shea v. Fantasy Inc.</u>, No. C 02-02644, 2003 WL 881006, at *4 (N.D. Cal. Feb. 27, 2003) (Ex. E); <u>Gallup, Inc. v. Talentpoint, Inc.</u>, No. Civ. A. 00-5523, 2001 WL 1450592, at *8 (E.D. Pa. Nov. 13, 2001) (Ex. E); <u>Thimbleberries, Inc. v. C & F Enterprises, Inc.</u>, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001); <u>Bridge Publ'ns, Inc. v. F.A.C.T.Net, Inc.</u>, 183 F.R.D. 254, 259 (D. Colo. 1998).

[25]  Absent the presumption of ownership, SCO is therefore required to establish that it received an effective transfer of rights from the original author of the work, see <u>Autoskill</u>, 994 F.2d at 1489. SCO could, of course, show it is the owner of the copyright by proving that it is the party "who actually create[d] the work" by "translat[ing] an idea into a fixed, tangible expression entitled to copyright protection" or that it was an employer for whom the work was prepared (as a work-for-hire), but SCO *has not advanced, and does not appear to have a valid basis for* advancing, either claim. See <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 736-37 (1989); 17 U.S.C. § 201.

Indeed, since it is a matter of public record that Novell also has registered copyrights for the same UNIX software, SCO's own registrations can scarcely be considered evidence at all.

## III.   NEITHER SCO'S RULE 56(f) APPLICATION NOR THE PROCEDURAL POSTURE OF THE CASE PRECLUDES A GRANT OF SUMMARY JUDGMENT.

Instead of pointing to evidence in the record that would permit a jury to find in its favor, SCO devotes the majority of its opposition brief to arguing that it requires extensive additional discovery from IBM and numerous third parties before the Court should consider IBM's motion. (SCO Opp. at 60-88.)  In short, SCO complains that because IBM only added its Tenth Counterclaim to the case in March 2004, SCO has just now begun the task of determining whether Linux infringes SCO's alleged UNIX copyrights and requires more time to complete its analysis.  SCO's argument is baseless.

The issue presented by this motion is whether IBM's Linux activities—its copying of Linux—infringe SCO's alleged copyrights.  Since it is undisputed that IBM has "copied" Linux (IBM's Statement ¶ 11), the only question presented here is whether code in Linux is "substantially similar" to SCO's allegedly copyrighted works.  If there is no such substantially similar code, then the copying of Linux does not, as a matter of law, infringe SCO's alleged copyrights and IBM is entitled to a declaration of non-infringement.  As SCO has long been in possession of all the evidence it needs to determine whether such substantially similar code exists (and has publicly claimed already to have performed such an analysis), and the additional discovery requested by SCO is wholly irrelevant to this determination, SCO's Rule 56(f) application should be denied.  SCO should not be allowed to conduct a lengthy and onerous fishing expedition based on the mere, misguided hope that it might discover evidence supporting its assertions of infringement.

A.    The Fact That Discovery Is Not Complete Is Alone No Reason To Grant SCO's
      Rule 56(f) Application.

As an initial matter, the simple fact that discovery is not yet complete is not a basis for

granting SCO relief under Rule 56(f). It is well established that a party may move for, and a

court properly grant, summary judgment before the close of fact discovery. See Fed. R. Civ. P.

56(a), (b); Pub. Serv. Co. of Colorado v. Continental Cas. Co., 26 F.3d 1508, 1518 (10th Cir.

1994) (affirming district court's grant of partial summary judgment prior to the close of

discovery); Weir v. Anaconda Co., 773 F.2d 1073, 1082 (10th Cir. 1985) ("There is no

requirement in Rule 56, Fed. R. Civ. P., that summary judgment not be entered until discovery is

complete."). None of the cases cited by SCO indicate otherwise.[26]

Although IBM did not add its Tenth Counterclaim until March 2004, the issues relating

to the claim have been in the case since at least September 2003. As noted above (at 14-15),

SCO's supposed evidence of copyright infringement is relevant to IBM's Second, Third and

Fifth Counterclaims, all of which concern SCO's (we believe, false) public accusations that the

use of Linux infringes on SCO's alleged intellectual property rights, including SCO's alleged

copyrights. Furthermore, the parties have been engaged in discovery relating to IBM's Tenth

Counterclaim for nearly a year. For example, as reviewed above (at 14-15), IBM's Interrogatory

Nos. 12 and 13 seek identification of "all source code and other material in Linux . . . to which

plaintiff has rights", "the nature of plaintiff's rights" in that code, and "how IBM is alleged to

have infringed plaintiff's rights" in that code, and IBM's Document Request No. 75 asks for the

---

[26] See, e.g., Committee For The First Amendment v. Campbell, 962 F.2d 1517 (10th Cir. 1992)
(affirming grant of summary judgment and denial of Rule 56(f) application although plaintiffs
were still engaged in discovery); Price v. Western Resources, Inc., 232 F.3d 779 (10th Cir. 2000)
(affirming grant of summary judgment because "sufficient discovery" had been conducted,
notwithstanding plaintiff's claim to require "full discovery") (emphasis added). SCO misstates
entirely the posture of Radich v. Goode, 886 F.2d 1391 (3d Cir. 1989). In that case, the Third
Circuit affirmed the district court's grant of summary judgment prior to the close of discovery.
Id. at 1396.

production of all documents relating to the information requested in Interrogatory Nos. 12 and 13. (Ex. 33). Thus, SCO's claim that this case has never concerned any claims that IBM has infringed SCO's alleged copyrights (and its feigned surprise at discovering that such claims are at issue) is unconvincing.

In any event, under Rule 56(f), a court should deny or continue a motion for summary judgment <u>only</u> if the "party opposing the motion . . . cannot for reasons stated present by affidavit facts essential to justify the party's opposition". Fed. R. Civ. P. 56(f); <u>see also</u> <u>Jarvis v. Nobel/Sysco Food Serv. Co.</u>, 985 F.2d 1419, 1422 n.2 (10th Cir. 1993). A party may not invoke Rule 56(f) "by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." <u>Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.</u>, 206 F.3d 980, 987 (10th Cir. 2000) (citation omitted); <u>accord</u> <u>Jensen v. Redev. Agency of Sandy City</u>, 998 F.2d 1550, 1554 (10th Cir. 1993). Rather, the party seeking relief must present an affidavit "explain[ing] why facts precluding summary judgment cannot be presented . . . includ[ing] identifying the probable facts not available and what steps have been taken to obtain these facts." <u>Price ex rel. Price v. Western Resources, Inc.</u>, 232 F.3d 779, 783 (10th Cir. 2000) (citing <u>Committee for First Amendment v. Campbell</u>, 962 F.2d 1517, 1522 (10th Cir. 1992).)

In this case, SCO cannot explain why it has been unable to present any evidence that can create a triable issue of fact as to IBM's alleged infringement of SCO's purported copyrights and to identify any discovery that it legitimately needs to oppose IBM's motion.

B.   <u>SCO Has (And Has Had) All Of The Materials It Needs To Show "Substantial Similarity" And Claims Already To Have Analyzed The Materials.</u>

Despite its assertions to the contrary, SCO has long been in possession of materials sufficient determine whether IBM's Linux activities infringe SCO's purported copyrights, and

has had every opportunity to analyze such materials. Accordingly, SCO is not entitled to any relief under Rule 56(f).[27]

Determining "substantial similarity" in this case requires nothing more than a comparison of the Linux kernel and SCO's allegedly copyrighted UNIX code. See Country Kids, 77 F.3d at 1284-85 (holding that to determine substantial similarity, the court must "compare the . . . protected elements [of the copyrighted work] to the allegedly copied work to determine if the two works are substantially similar."); Autoskill, 994 F.2d at 1491 (holding that a substantial similarity analysis involves "a comparison of portions of the alleged infringer's works with the portions of the complaining party's works which are determined to be legally protectable under the Copyright Act.") Indeed, SCO concedes as much in response to IBM's motion. In paragraph 8 of his declaration, SCO's Senior Vice President Chris Sontag states that, "to show that Linux code is substantially similar to Unix code requires a comparison of that code . . ." (emphasis added). Thus, it is self-evident that the only materials that SCO needs to conduct this comparison are the Linux kernel and its own UNIX code.[28]

---

[27] Cf. Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 773 (Fed. Cir. 2002) (denying patent holder's Rule 56(f) motion to obtain "laboratory notebooks, internal company memoranda, meeting minutes, test data, and notes relating to the specific components of Amgen's [accused] plasmid" where "[a] sequence comparison of the relevant RBSs, which already are available to Genentech, is sufficient to determine" infringement); Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1116 (Fed. Cir. 2000) (affirming denial of Rule 56(f) motion where the allegedly infringing materials "were publicly available").

[28] None of the cases cited by SCO (at 76 n. 41) support its contention that taking extensive deposition testimony is "the most reasonable means of discovering facts" supporting its allegations of infringement, as opposed to simply comparing the code itself. Although each of the cases relied upon by SCO cite to deposition testimony, they do not even come close to suggesting that depositions are the preferred method of discovery in infringement cases or are necessary to a determination of substantial similarity. To the contrary, in Williams v. Arndt, 626 F. Supp. 571 (D. Mass 1985), the court specifically noted that "[t]he most graphic evidence of substantial similarity was the comparison of the [allegedly infringed work] FTM with both programs [the defendant] had offered, Floor Trader and Trend Counter Trend" and accordingly found infringement based on that comparison. Likewise, the court in Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 134 (D.N.J. 1982), stated that the "determination [of substantial similarity] rests largely on the works themselves" and granted summary judgment on

As SCO cannot dispute, however, that it has long been in possession of the Linux kernel and SCO's own UNIX software (IBM's Statement ¶¶ 12-14), SCO instead attempts to oppose IBM's motion on the ground that neither SCO nor its experts has had sufficient time to analyze such code. Indeed, SCO contends that it could need 25,000 additional man-years to conduct the requisite comparison unless it is afforded extensive discovery from IBM and third parties.[29] That is, frankly, ludicrous.

As explained in the Declaration of Randall Davis (Professor of Computer Science at the Massachusetts Institute of Technology), submitted herewith, computer code can be efficiently compared using automated tools in combination with manual review in a much more reasonable timeframe. (See Davis Decl. ¶ 17-27.) According to Dr. Davis, capable programmers could complete the task in no more than several months. Indeed, as discussed below (in Section IV), despite its newfound view that it could require an additional 25,000 man-years to conduct its analysis, SCO has been claiming publicly for more than a year that it has retained at least three

---

one of plaintiff's infringement claims after having "compared the two works ad nauseam". Moreover, the case that SCO claims is "analogous" to this situation (SCO Opp. at 67), Sanders v. Quikstak, Inc., 889 F. Supp. 128 (S.D.N.Y. 1995), is far from it. In Sanders, plaintiff brought a personal injury claim alleging that defendant's "palletizing" machine was defective, which resulted in plaintiff sustaining injuries to his left elbow. The court denied summary judgment, finding that plaintiff should be allowed to take additional discovery beyond inspection of the allegedly defective hydraulic unit, including depositions of the unit's manufacturer and examination of the manufacturer's schematics and manuals, because such discovery might "reveal potential design flaws, manufacturing imperfections, or operating dangers that are not apparent from a visual inspection of even upon trial runs of the machinery". Id. at 132. SCO's reliance on Sanders to suggest that depositions are essential to a determination of substantial similarity is misplaced. The substantial similarity of two works, unlike latent design defects, is susceptible to determination upon inspection of the works themselves.

[29] The source code for the Linux kernel is publicly available on the Internet, and SCO itself was founded as a company dedicated to selling products and services based on the Linux kernel. SCO also plainly has long had copies of the allegedly copyrighted works, presumably as a consequence of its acquisition of certain UNIX assets from The Santa Cruz Operation, Inc. in 2001. In fact, SCO provided copies of what purport to be the alleged copyrighted works to IBM in this litigation.

separate teams of outside experts—including from the "MIT math department"—that have "done a deep dive into Linux", "compared the source code of Linux with Unix every which way but Tuesday" and found substantial evidence of copyright infringement (none of which SCO has shared with IBM, assuming it exists).[30] (Reply Exs. 5 & 6.)

SCO's assertion, therefore, that it needs years in order to review materials it has long been in possession of, and has claimed to already have reviewed, is unsupportable. Given that SCO (notwithstanding its public claims) has thus far failed to produce any competent evidence of copyright infringement, SCO's mere speculation that it will be able to find evidence, given enough time (perhaps 25,000 additional man-years, according to SCO) is not a sufficient basis to grant its Rule 56(f) application. See Gemisys Corp. v. Phoenix Am., Inc., 186 F.R.D. 551, 566 (N.D. Cal. 1999) ("[M]ere speculation that [further discovery] may reveal evidence to support its allegations is an insufficient basis on which to grant a Rule 56(f) motion"); see also Adams v. Goodyear Tire & Rubber Co., 184 F.R.D. 369, 374 (D. Kan. 1998) (denying Rule 56(f) relief where the "memorandum is largely based on speculation that additional evidence might exist"). SCO should not be afforded Rule 56(f) relief based on its unfounded hope that given enough discovery and enough time, it might eventually be able to cobble together some evidence to support its accusations of infringement.

SCO's additional argument that it is entitled to Rule 56(f) relief because it has not yet submitted an expert report (see SCO Opp. at 63-65) is no more compelling.[31] It is true, as SCO argues, that expert testimony can be instructive in considering allegations of copyright

---

[30] SCO has claimed publicly that its experts have "found already a mountain of code" and a "truckload of code". (Exs. 20 & 25.)

[31] SCO tries in its opposition papers to have its cake and eat it too. SCO appears in fact to have incorporated the conclusions of its experts into its opposition papers (e.g., via Mr. Gupta's declaration), while refusing to disclose any of its experts' work to IBM.

infringement relating to computer programs and that the deadline for submitting expert reports in this case has not yet passed.  It does not follow, however, that summary judgment cannot be entered in the absence of expert testimony, or before the expiration of a court-ordered deadline for submitting expert reports, where a party is unable to come forward with any competent evidence supporting a claim of infringement.  Indeed, none of the cases on which SCO relies holds that summary judgment cannot be entered before the submission of expert reports.[32]

Moreover, as stated, SCO bears the burden of adducing evidence sufficient to create a genuine issue of material fact in order to oppose IBM's motion.  See Adler, 144 F.3d at 670-71. If SCO believed it required expert testimony to create a question of material fact, then it could have (and should have) submitted admissible expert testimony.  Courts are under no obligation to grant a Rule 56(f) motion even if the movant claims that it needs to obtain an expert report to oppose summary judgment.  See Bobian v. Csa Czech Airlines, 232 F. Supp. 2d 319, 323-24 (D.N.J. 2002) (denying Rule 56(f) relief to obtain expert report, in part, where "[p]laintiffs offer no persuasive justification for their failure to obtain expert assessments of their injuries sooner"); Koplove v. Ford Motor Co., 795 F.2d 15,16-18 (3d Cir. 1986) (affirming decision granting

---

[32] In Madrid v. Chronicle Books, 209 F. Supp. 2d 1227 (D. Wyo. 2002), the court in fact granted summary judgment prior to the submission of expert reports.  Although the court in Madrid commented that cases involving "technical computer programs" might require "a larger arsenal of facts", including expert reports, in order to assess substantial similarity, the court did not hold, or even imply, that summary judgment was not appropriate simply because a plaintiff had not yet submitted an expert report.  Id. at 1233.  Huthwaite, Inc. v. Sunrise Assisted Living, Inc., 261 F. Supp. 2d 502 (E.D. Va. 2003), can also be distinguished from this case.  In Huthwaite, although the court suggested in dicta that defendant's motion for summary judgment was premature because the parties had not yet submitted expert reports, the court denied the motion because it concluded that plaintiff had "provided sufficient evidence of substantial similarity" that "create[d] a triable issue of fact on that question".  Id. at 511.  Here, unlike in Huthwaite, SCO has presented no facts that would permit a jury to conclude that the Linux kernel and the UNIX software at issue are substantially similar.  Moreover, in Sturdza v. United Arab Emirates, 281 F.3d 1287 (D.C. Cir. 2002), in the sentence immediately after the sentence quoted by SCO (SCO Opp. at 63), the court noted that, "[o]f course, summary judgment for a copyright defendant remains appropriate if the works are so dissimilar as to protectible elements that no reasonable jury could find for the plaintiff on the question of substantial similarity."

summary judgment notwithstanding Rule 56(f) motion to obtain expert report for which the "deadline . . . had not yet passed").[33]

      C.     <u>None Of The Additional And Extensive Discovery SCO Seeks Is Necessary Or Even Relevant To IBM's Motion.</u>

      SCO's Rule 56(f) motion should further be denied because the laundry list of discovery SCO claims to need from IBM and third parties is neither necessary nor relevant to IBM's motion. <u>See</u> Jensen, 998 F.2d at 1554 (holding that "if the information sought is either <u>irrelevant</u> to the summary judgment motion or merely <u>cumulative</u>, no [Rule 56(f)] extension will be granted" (emphasis added); <u>see also</u> <u>Raleigh v. Snowbird Corp.</u>, 992 F. Supp. 1295, 1298 (D. Utah 1998) (denying plaintiff's 56(f) application because the requested discovery sought information not relevant to defendant's summary judgment motion); <u>Schaffrath v. Thomas</u>, 993 F. Supp. 842, 847-48 (D. Utah 1998) (same).[34]

---

[33] SCO's additional suggestion it should be granted Rule 56(f) relief because it "has not yet retained a <u>testifying</u> expert on copyright issues" (SCO Opp. at 85) is beside the point. As discussed above, SCO has been touting for months that it has had teams of experts analyzing the Linux and UNIX code at issue. In fact, SCO has already admitted that, to the extent SCO has responded to IBM's interrogatories, SCO's responses are based on the work of experts. (<u>See, e.g.</u> Reply Ex. 7 at 53:23-54:3; 58:9-14; 111:20-112:25.) Even SCO's opposition to this motion relies on SCO's experts. (<u>See</u> Sontag Decl. ¶ 12 ("SCO and its experts have used automated tools to locate lines of identical code, and they have visually analyzed the larger blocks of code in which those lines appear"), ¶ 21 ("SCO and its experts have used computer programs to identify the extent of similarity between lines of source code in any two given files".) The only sense, therefore, in which SCO has not yet retained a testifying "expert" is that it has not yet asked one of its apparently many experts to submit a declaration. That is not sufficient justification to grant SCO relief under Rule 56(f).

[34] The cases cited by SCO (at 71) are not to the contrary. <u>See</u> <u>Brightway Adolescent Hosp. v. Health Plan of Nevada, Inc.</u>, No. Civ. 2:98CV0729, 2000 WL 33710845, at *2-*3 (D. Utah Sept. 20, 2000) (noting that "Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable" and granting Rule 56(f) relief because plaintiffs "adequately identified the needed discovery and adequately shown that the information would be <u>material</u> to Plaintiffs' case in chief and in preparing their opposition to the pending dispositive motions") (emphasis added); <u>Holt v. Wesley Med. Ctr.</u>, No. 00-1318, 2002 WL 31778785, at *1 (D. Kan. Nov. 25, 2002) (granting Rule 56(f) application because plaintiffs had made showing that the discovery sought "is <u>essential</u> for Plaintiffs' response") (emphasis added).

SCO purports to require, in order properly to oppose IBM's motion, the following additional discovery: (1) discovery regarding IBM's Linux activities; (2) discovery regarding access to the allegedly copyrighted UNIX materials; (3) discovery regarding IBM's AIX and Dynix products; and (4) discovery regarding the identity of third-party contributors to Linux and their contributions. None of this information is necessary or even relevant to a showing of substantial similarity between the Linux kernel and SCO's allegedly copyrighted UNIX code. Accordingly, SCO's Rule 56(f) application should be denied. See, e.g., Gemisys, 186 F.R.D. at 566 (denying Rule 56(f) relief and granting summary judgment on copyright infringement claim where the information sought to be discovered, namely "disclosure of [computer program] design and development documents" would not provide "evidence essential to the motion for summary judgment, namely, proof of substantial similarity"); Whitehead v. Paramount Pictures Corp., 53 F. Supp. 2d 38, 53 (D.D.C. 1999) (denying copyright holder's Rule 56(f) motion to obtain "a correct and complete and properly numbered shooting script" of a movie that allegedly infringed his copyrighted book where "given the total absence of similarity between [the copyright holder's] book and the movie, an absolutely accurate shooting script would have done nothing to help [the copyright holder] establish substantial similarity").

First, no additional discovery is required regarding IBM's Linux activities. IBM merely seeks a declaration that its Linux activities—IBM's "copying" of the Linux kernel and any encouragement by IBM of others to "copy" the Linux kernel—does not infringe SCO's alleged UNIX copyrights. It is undisputed that IBM has copied Linux and encouraged others to do the same. (IBM Statement ¶ 11.) Thus, there is no need for any discovery on this point—let alone the "substantial and time-consuming" (SCO Opp. at 78) discovery that SCO says it needs regarding "the enormous extent of [IBM's] worldwide Linux-related activities" (id. at 76).

Second, no discovery is required regarding access to the allegedly copyrighted UNIX materials. Although SCO has not shown that IBM had access to all of the allegedly copyrighted

33

material, IBM has not moved for summary judgment on that ground.  For purposes of this motion, the Court may assume access, without the need for any discovery.

Third, SCO does not require any more discovery regarding IBM's AIX and Dynix products.  IBM has already produced hundreds of millions of lines of code from its AIX and Dynix products, all of which is entirely irrelevant to the claim at issue.  Whether the Linux kernel infringes SCO's alleged UNIX copyrights depends on whether code in Linux is substantially similar to code in the UNIX software at issue.  It does not depend on any other computer program—whether AIX, Dynix or any other program.  SCO's argument, therefore, that it needs billions of additional lines of AIX and Dynix to perform its analyses is untenable.  Even if certain code in Linux originated in AIX or Dynix (which SCO has yet to show), it simply does not matter for purposes of determining whether that code in Linux is substantially similar to code in UNIX.[35]

In any event, the discovery regarding AIX and Dynix that SCO seeks would introduce no efficiencies—only unnecessary delay.  Under SCO's view of what is required to review source code, it would take SCO 14 million man-years to review this additional code.  (See Davis Decl. ¶

---

[35] As Dr. Davis puts it in his declaration:  "To suggest otherwise leads to the absurd notion that one work can be considered similar to another even if the two are currently completely different, if only one can show a (perhaps very long) sequence of small changes that lead from one to the other.  This would be like playing the game of 'telephone', in which a sentence is successively whispered from one person to the next in a long line, and claiming that, even though the sentence that emerged was totally different from the one that started the process, they were "substantially similar" because the last was the result of many small changes to the first.  Similarity means just that—similarity.  And that judgment is made on the code as it is, independent of how it got that way."  (Davis Decl. ¶ 34.)  See generally Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 143 n.9 (2d Cir. 1998) ("[I]f the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work."); Bucklew, 329 F.3d at 930 ("In some cases, however, though derivative in a literal sense, [a work] is so utterly transformed as to bear no traces of the original; and then there is no infringement.").

39.) Thus, the notion that this additional discovery sought by SCO (or any of the other discovery SCO seeks) would promote efficiency is incorrect.

Fourth, SCO similarly does not require any discovery regarding all of the third-party contributors to Linux or their contributions. Again, what matters here is whether the Linux kernel is substantially similar to SCO's allegedly copyrighted UNIX software, not who contributed a particular line of code or how they did it.[36] Absent a showing of substantial similarity, there can be no infringement—no matter who contributed code to Linux or how they did it. Moreover, since the Linux kernel has been, and is being, written over the Internet, there is a wealth of information about Linux accessible to anyone with Internet access. For example, www.linuxhq.com contains every version of the Linux kernel since the original 1.0.0 and a complete history of every change made to every kernel file over its entire development history. (See Davis Decl. ¶ 18.) Far more information than SCO could ever possibly require for this litigation has thus been available to it from before the suit was filed.

The fact that SCO filed a "renewed" motion to compel seeking some of this additional discovery (the day before SCO filed its memorandum in opposition to IBM's motion for summary judgment) is also no reason to grant SCO's request for Rule 56(f) relief. The obvious purpose of SCO's motion to compel—which SCO filed without conferring with IBM as required under DUCivR 37-1(a) and Fed. R. Civ. P. 37(a)(2)(A)—was to allow SCO to argue that IBM's motion for summary judgment should not be granted while a discovery motion is pending.

As discussed in IBM's opposition to SCO's "renewed" motion to compel, which is incorporated by reference herein, SCO's contentions in its motion are baseless. In particular, SCO's argument that IBM has not satisfied its discovery obligations and impeded SCO's ability

---

[36] The identity of a particular contributor and how his or her contribution was made may be relevant to issues like the defense of independent creation. But such questions are not at issue on this motion.

to oppose IBM's motion is false. To date, SCO has propounded 141 document requests and 22 interrogatories, in response to which IBM has produced nearly one million pages of documents and hundreds of millions lines of source code from IBM's AIX and Dynix operating systems,[37] and has also provided a substantial amount of information in response to SCO's interrogatories. Prior to filing its "renewed" motion, SCO had moved to compel just once, seeking the production of additional source code from IBM and contact information for every individual who has ever had access to AIX, Dynix and Linux source code. Upon consideration of SCO's motion, Magistrate Judge Wells denied SCO's request for most of what it sought, and ordered IBM to produce certain additional information, which IBM has provided to SCO.[38] The notion that IBM has engaged in abusive discovery practices is therefore unsupported and unsupportable.

At any rate, none of the cases on which SCO relies stands for the proposition that a court cannot grant summary judgment merely because a motion to compel is pending. SCO's cases stand for the unremarkable proposition that summary judgment should not be granted if discovery sought in a motion to compel would be <u>material</u> to the issues before the court.[39]

---

[37] In response to SCO's "Renewed" Motion to Compel, IBM stated that it had already produced more than 40 millions of AIX and Dynix code to SCO. In fact, IBM has produced hundreds of millions of lines of code.

[38] Among the items Magistrate Judge Wells directed IBM to provide was information that IBM had voluntarily offered to provide to SCO prior to SCO's initial motion to compel: certain specified releases of AIX and Dynix and contact information for a limited number of the more than 7,200 individuals identified in response to SCO's interrogatories.

[39] <u>See, e.g.</u>, <u>Morrison Flying Serv. v. Deming Nat'l Bank</u>, 340 F.3d 430, 432-33 (10th Cir. 1965) (reversing grant of summary judgment because evidence sought by plaintiff in motion to compel "may be very material to the final disposition of the litigation"); <u>Vining v. Runyon</u>, 99 F.3d 1056, 1058 (11th Cir. 1996) (vacating grant of summary judgment because employment files sought by <u>pro se</u> plaintiff in motion to compel had been determined by district court to be "important for purposes of comparison to [plaintiff's] case"); <u>Snook v. Trust Co. of Georgia Bank of Savannah, N.A.</u>, 859 F.2d 865, 871 (11th Cir. 1988) (reversing grant of summary judgment when discovery sought by motion to compel "was clearly relevant to the pending motion for summary judgment"); <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559 (11th Cir. 1990) (reversing grant of summary judgment because the documents sought in motion to compel "appear to be relevant, discoverable and necessary to provide an adequate record in this

Courts routinely grant summary judgment notwithstanding pending motions to compel, where those motions, as here, seek material that is not relevant to the motion at hand.[40]  See Public Service Co. of Colo. v. Continental Cas. Co., 26 F.3d 1508, 1518-19 (10th Cir. 1994) (affirming grant of summary judgment despite pending motion to compel discovery); Universal Money Ctrs., Inc. v. American Tel. & Tel. Co., 22 F.3d 1527, 1536 (10th Cir. 1994) (affirming grant of summary judgment despite pending motion to compel where discovery sought "is not likely to produce significant evidence" to defeat summary judgment); Calvary Holdings, Inc. v. Chandler, 948 F.2d 59, 65 (1st Cir. 1991) (affirming grant of summary judgment despite pending motion to compel where materials sought in motion to compel "are not material to this case").

*      *      *

In sum, none of the discovery SCO seeks is necessary, or even relevant, to the issues presented by this motion.  What SCO instead seeks is the right to conduct an extended and entirely useless fishing expedition, in the misguided hope of finding some evidence to support its assertions of infringement.  That is not a sufficient basis upon which to grant SCO's Rule 56(f) application.

---

case"); G.I. Holdings, Inc. v. Baron & Budd, 213 F.R.D. 146, 148 (S.D.N.Y. 2003) (granting in part motion to compel discovery before ruling on summary judgment motion, but denying plaintiff's motion to the extent it sought to conduct "a fishing expedition"); Sames v. Gable, 732 F.2d 49 (3d Cir. 1984) (denying summary judgment when "pertinent discovery requests were outstanding) (emphasis added).  The additional case cited by SCO, Lux v. Cox, 32 F. Supp. 2d 92, 102 (W.D.N.Y. 1998), is not on point.  In that case, the court denied a motion for summary judgment because the affidavits and deposition testimony in the record established a genuine issue of material fact.

[40]  SCO's "renewed" motion to compel seeks only three categories of information:  (1) additional materials related to IBM's AIX and Dynix products (2) additional documents from IBM's "top level management"; and (3) contact information for certain individuals.  None of this information is in any way necessary for SCO to respond to IBM's motion; it has nothing to do with whether Linux is substantially similar to SCO's alleged copyrighted UNIX works.

**IV.    SCO'S OPPOSITION SEEKS MERELY TO CREATE A SMOKESCREEN TO COVER THE INADEQUACIES OF ITS CLAIMS AND FURTHER TO DELAY THE RESOLUTION OF THIS LITIGATION.**

SCO's opposition to IBM's summary judgment motion is nothing more than a smokescreen to cover the shortcomings of its claims and yet another attempt by SCO to delay (perhaps forever) the resolution of this litigation. As reviewed above, SCO protests that summary judgment is inappropriate on IBM's Tenth Counterclaim principally because SCO has never claimed that IBM's Linux activities infringe SCO's copyrights and therefore has not had an adequate opportunity to perform an analysis as to whether Linux kernel contains code that infringes SCO's allegedly copyrighted UNIX code, an analysis SCO claims could take "25,000 man-years". (Sontag Decl. ¶ 14.) Not only are SCO's arguments meritless (as discussed above in Section III), SCO's plea for more time is belied by its representations to this and other federal district courts, by its numerous public statements about this case and by its internal documents, all of which show that SCO has long asserted that Linux infringes SCO's alleged UNIX copyrights and has already performed the very analyses of Linux and UNIX that it says it now must "begin" to perform and needs many more years to complete. (Harrop Decl. ¶ 29.)

First, although SCO now claims it "has not brought any claim that IBM contributed source code to Linux in violation of any SCO copyright" (Harrop Decl. ¶ 9),[41] this assertion is contradicted by SCO's own representations in this case. As SCO itself reviews in its opposition brief (at 19 ¶ 27), SCO informed the Court, in moving to dismiss IBM's Tenth Counterclaim, that its copyright claim "against IBM is primarily for IBM's continuing use of AIX and Dynix after SCO terminated IBM's UNIX licenses", but not exclusively for such activities. To the contrary, SCO noted in its letter to the Court dated June 10, 2004 that "[a]ll of SCO's claims"—

---

[41]  SCO similarly asserts that "SCO has not alleged any copyright violation based on IBM's contributions to Linux and has brought only a single, limited copyright claim against IBM that is expressly based on IBM's use and distribution of AIX and Dynix after the termination of its licenses." (SCO Opp. at 21 ¶ 35.)

including, of course, SCO's copyright claims—"address IBM's improper contributions to Linux, in violation of SCO's contract <u>and other rights</u>."[42]  (Reply Ex. 8 at 1.)

Moreover, SCO similarly represented to the court in <u>Red Hat, Inc. v. The SCO Group, Inc.</u>, Civ. A. No. 03-772 (D. Del.)—in which Red Hat seeks a declaration of non-infringement similar to the one IBM seeks in its Tenth Counterclaim—that SCO's case against IBM would *specifically address copyright infringement claims relating to Linux.  In seeking to dismiss the* <u>Red Hat</u> lawsuit, SCO argued that the "[t]he <u>infringement</u> . . . issues Red Hat seeks to adjudicate in this case are currently before U.S. District Judge Dale A. Kimball in the SCO v. IBM Case pending in Utah Federal District Court."  (Reply Ex. 9 at 2) (emphasis added).  Later, after the <u>Red Hat</u> court denied SCO's motion but <u>sua</u> <u>sponte</u> stayed proceedings in the case, SCO contended that the stay should not be lifted until the conclusion of its case against IBM, because "SCO continues to believe that <u>IBM's violations of . . . U.S. copyright law through its improper contributions of SCO's intellectual property to Linux</u>—the issues that SCO's complaint in Utah presents—are of paramount importance and will continue to predominate, as a comparative matter, over other issues potentially affecting Linux [in the IBM case]."  (Reply Ex. 10 at 2) (emphasis added).  SCO's claim in connection with the instant motion, therefore, that it does not allege, and has never alleged, that IBM has infringed SCO's purported UNIX copyrights by its Linux activities is demonstrably false (at least insofar as we are to believe SCO's own representations to this and another federal court).

Indeed, SCO appears to have lost track of the representations it has made to avoid review of its assertions of copyright infringement in the several courts in which it is litigating.  For example, in May 2004, SCO argued to the <u>Red Hat</u> court that it should not lift the stay in that case because the copyright issues Red Hat raised were "raised directly by IBM's Tenth

---

[42]  The "other" rights to which SCO refers plainly include its alleged copyright rights.

Counterclaim against SCO" and "it would be 'a waste of judicial resources,' and resources of the parties, to litigate this case while a substantially similar question is being litigated in federal district court in Utah." (Reply Ex. 11 at 3-4.) Just a few weeks earlier, however, SCO argued to this Court (and continues to argue) that IBM's Tenth Counterclaim should be dismissed because "the issues of whether the use and reproduction of Linux infringes SCO's copyrights is squarely at issue" in SCO's lawsuit against AutoZone, Inc., The SCO Group, Inc. v. Autozone, Inc., CV-S-0237 (D. Nev.), which it filed in March 2004. (Reply Ex. 16 at 4.) Although the AutoZone case has now been stayed, SCO has neither withdrawn its motion to dismiss IBM's Tenth Counterclaim nor suggested to the Red Hat court that the stay in that case should be lifted.

Second, SCO's claim that it in any case did not understand IBM's discovery requests to be seeking SCO's supposed evidence that the use of Linux infringes SCO's alleged copyrights is incredible. As discussed above (at 14-15), IBM's Second Set of Interrogatories requested that SCO identify "all source code and other material in Linux . . . to which plaintiff has rights", "the nature of plaintiff's rights" in that code, and "how IBM is alleged to have infringed plaintiff's rights" in that code. To the extent that SCO believed that any code in Linux infringed SCO's alleged copyrights, IBM's interrogatories, which SCO was ordered twice to comply with in full, plainly required the identification of such code.

SCO attempts in effect to portray IBM's Tenth Counterclaim—which seeks a declaration that IBM's Linux activities do not infringe SCO's alleged copyrights—as a surprise to SCO. SCO, however, has been claiming publicly for more than a year that anyone's—which obviously includes IBM's—use of Linux infringes SCO's alleged copyrights. For example:

- SCO sent letters in May 2003 to Fortune 1000 companies (including IBM) asserting that "Linux infringes our UNIX intellectual property and other rights". (Ex. 10.)

- SCO issued a press release in May 2003 charging that "Linux is an unauthorized derivative of UNIX and that legal liability for the use of Linux may extend to commercial users". According to SCO, the press release was "based on [SCO's]

40

findings of illegal inclusions of SCO UNIX intellectual property in Linux". (Reply Ex. 12.)

- SCO issued a press release in July 2003 announcing that it had registered copyrights in UNIX code and that it "intend[ed] to use every means possible to protect the company's UNIX source code and to enforce its copyrights". (Reply Ex. 13.)

- SCO issued a press release concerning the Red Hat case in August 2003 reaffirming its claims that "Linux includes source code that is a verbatim copy of UNIX and carries with it no warranty or indemnification." SCO further noted that its "claims are true and we look forward to proving them in court". (Reply Ex. 14.)

- SCO sent an "open letter" in September 2003 claiming it "filed a lawsuit against IBM alleging that SCO's proprietary UNIX code has been illegally copied into the free Linux operating system". (Reply Ex. 15.)

- SCO sent letters in December 2003 directed at all "Linux User[s]" asserting that "the use of the Linux operating system in a commercial setting violates our rights under the United States Copyright Act". (Reply Ex. 13.)

- SCO sent letters in December 2003 to every member of Congress claiming that "Linux software contains significant UNIX software code that has been inappropriately, and without authorization, placed in Linux", and enclosing its "Open Letter" to the community asserting the "widespread presence of our copyrighted UNIX code in Linux". (Reply Ex. 16.)

- SCO commenced a lawsuit in March 2004, The SCO Group, Inc. v. Autozone, Inc., CV-S-0237 (D. Nev.), which SCO claims is focused directly on "the issues of whether the use and reproduction of Linux infringes SCO's copyrights". (Ex. 16 at 4.)

In fact, the entire "SCOSource" division of the company is predicated on the allegation that Linux infringes SCO's alleged copyrights. The only product SCOSource sells is a license that "gives end users the right to use the SCO intellectual property contained in Linux". (Reply Ex. 17.) SCO's feigned ignorance, therefore, of its broad public claims that the use of Linux infringes SCO's purported copyrights is disingenuous.

Third, SCO's related claim that it "has not been given a reasonable opportunity to complete any of the kinds of comparisons necessary to uncover facts relevant to SCO's

opposition to IBM's motion for summary judgment" (Harrop Decl. ¶ 67) and that it could take

SCO "25,000 man-years" (Sontag Decl. ¶ 14) to complete its analysis is also contradicted by its

public statements and internal documents concerning the analyses SCO has already performed.

For the purposes of opposing this motion, SCO pretends as if it has only recently begun to

analyze whether Linux infringes its purported UNIX copyrights. In public, however, SCO has

been touting for more than a year now that it has already had "teams" of "outside consultants"

review Linux, and that SCO has "substantial" evidence of copyright infringement. For example:

- SCO's Senior Vice President Chris Sontag said in April 2003: "We are using objective third parties to do comparisons of our UNIX System V source code and Red Hat [Linux] as an example. We are coming across many instances where our proprietary software has simply been copied and pasted or changed in order to hide the origin of our System V code in Red Hat. This is the kind of thing that we will need to address with many Linux distribution companies at some point." (Reply Ex. 18.)

- SCO's spokesman Blake Stowell said in May 2003: "We had hired some outside consultants to compare code from the Linux kernel to our Unix system 5 source code, which is the base Unix source code that is used for a lot of different products. In doing the comparison, there were instances where they found line-by-line copies -- direct copy and pasting of code -- and other instances where the code had been obfuscated. [It was] changed to look like it was different, but in reality it was the same code." (Reply Ex. 19.)

- *Stowell further commented in May 2003: "SCO, over the last several weeks, has* had three different teams of people from outside of SCO going through various distributions of Linux and comparing the code to our Unix system 5 code. What they're finding is, there are several chunks of code from our Unix system 5 source code in Linux." (Reply Ex. 20.)

- A SCO spokesman said in June 2003 that SCO had hired three teams of experts, including a group from the MIT math department, to analyze Linux and UNIX code for similarities. "All three found several instances where our Unix source code had been found in Linux," the spokesman said. (Reply Ex. 5.)

- SCO's CEO Darl McBride said in November 2003: "Along the way, over the last several months, once we had the copyright issue resolved where fully we had clarity around the copyright ownership on Unix and System V source code, we've gone in, we've done a deep dive into Linux, we've compared the source code of

Linux with Unix every which way but Tuesday. We've come out with a number of violations that relate to those copyrights." (Reply Ex. 6.)

- Chris Sontag further stated in November 2003 that "There are other literal copyright infringements that we have not publicly provided, we'll save those for court." (Reply Ex. 21.)

- More recently, SCO represented to the Red Hat court in June 2004 that: "SCO has discovered significant instances of line-for-line and 'substantially similar' copying of code from Unix System V into Linux." (Reply Ex. 10.)

- Given SCO's extensive public statements that it has, as SCO's CEO put it in November 2003, "done a deep dive into Linux" and "compared the source code of Linux with Unix every which way but Tuesday", (Reply Ex. 6) SCO's present assertion in opposition to IBM's motion that SCO has not had sufficient time to perform the requisite analyses of Linux and the UNIX code it claims to have copyrighted, and that such analyses could take 25,000 man-years, obviously rings hollow. It appears that SCO's litigation strategy now is simply to seek delay for delay's sake. SCO, by its own admission, has already performed the analyses it needed, but has not come forward with any evidence that would a create genuine issue of material fact as to copyright infringement in this case. In this situation, summary judgment is appropriate; SCO should not be given additional time to perform analyses it admits it has already performed and have apparently (despite SCO's public claims) turned up nothing.

REDACTED

REDACTED

As reviewed here, SCO appears willing to adopt, in court and in the media, whatever position is most expedient under the circumstances, without regard either to consistency or the truth. SCO has spun, and continues to spin, a tangled web of inconsistencies to avoid resolution of the claims it has made against IBM's and others' use of the Linux kernel. SCO's opposition to IBM's motion is just more of the same gamesmanship—intended solely to procure further

44

delay so that SCO might profit from the fear, uncertainty and doubt that it has fostered regarding Linux.

**<u>Conclusion</u>**

For the foregoing reasons, partial summary judgment should be entered against SCO on IBM's claim for a declaration of non-infringement with respect to IBM's Linux activities.

DATED this 23rd day of August, 2004.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2004, a true and correct copy of the foregoing was and was sent by U.S. Mail, postage prepaid, to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Robert Silver
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504

Amy F. Sorenson

SORENSA\SLC\312123.1

46