

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP<br><br>    Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF/ COUNTERCLAIM-DEFENDANT SCO'S RENEWED MOTION TO COMPEL**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

*264*

SCO respectfully submits this Reply Memorandum in further support of its Renewed Motion to Compel and in response to IBM's Memorandum in Opposition to SCO's Renewed Motion to Compel ("IBM Opp. Mem.").

## PRELIMINARY STATEMENT

IBM's opposition to SCO's renewed motion to compel confirms that IBM has refused to comply with the Court's March 3 discovery Order.  According to IBM's response:

- IBM does not dispute that the Court's March 3 Order required IBM to produce the *identities of the contributors to AIX, Dynix, and Linux* <u>as well as their particularized contributions,</u>

- IBM does not dispute <u>that it has not done so;</u>

- IBM does not dispute that the information the Court ordered is <u>in IBM's possession, and not otherwise available;</u>

- IBM does not dispute that it previously directed SCO to obtain that information from certain <u>sources that do not in fact provide that information;</u>

- IBM does not even attempt to dispute that it <u>had no basis</u> for asserting that those sources would supply such information;

- IBM does not dispute that it <u>nevertheless</u> forced months of litigation over that issue; and

- IBM does not dispute that it <u>certified</u> to this Court that it had "complied fully" with the Court's order and provided SCO with "complete, detailed and thorough" information.

IBM now offers two excuses for its longstanding non-compliance. First, IBM claims that in response to the Court's Order, it was only obliged to provide SCO with "readily determinable" information – by which IBM means information determinable with no additional production by IBM. But the Court did not order IBM to engage in no effort and to make no additional production. The Court ordered IBM to provide specific information. IBM now admits that it did not do so, and engaged in no effort to do so, even though IBM certified that it had "complied fully with the Order" and had done so in a "complete, detailed and thorough" manner "to the best of IBM's knowledge." Exh. 1. IBM now claims that by "complied fully" it actually meant "took no effort to comply." To add insult to injury, IBM even tells the Court that – in retrospect – its certification was "not misleading" because everyone should have understood that "complied fully" meant "took no effort to comply."

Second, IBM argues that it is entitled to delay its compliance even longer because IBM's non-compliance has forced SCO to offer to do the work that IBM refuses to do. For SCO to take on that burden, it would need access to search within a centralized IBM storage facility (CMVC) that is the subject of a separate (and pending) discovery motion. Seizing on SCO's offer to do the work IBM was ordered to but will not do, IBM tries to create the impression that the present motion to compel depends on the adjudication of this separate motion.

IBM's second excuse for its long refusal to comply with the Court's order overlooks a basic fact: SCO is not obligated to offer to satisfy IBM's Court-imposed duties for it. SCO has been forced to this extreme only because – as IBM no longer disputes – IBM refuses to do any work to comply with the Court's Order, and SCO will be irretrievably prejudiced if the matter continues to drag out. But the Court has already ordered IBM to do this work and produce this

3

information, which IBM does not dispute is within its sole control.  SCO is certainly content to let the issue of the CMVC be decided entirely on the basis of the grounds set forth in separate motions, so long as IBM will finally comply with the simple directive this Court set forth on March 3, 2004 and finally provide the information needed to allow SCO to take programmer depositions.  IBM cannot both refuse to do the work required to comply with the Court's prior Order, refuse to allow SCO to do the work, and then seize on SCO's offer to do the work – which IBM's non-compliance forced – as a pretext for still further delay.

Now, almost a year-and-a-half into a case about software development, IBM's refusal to comply with this Court's order has effectively blocked SCO from taking even a single deposition of the programmers who performed that software development.  IBM has attempted to exploit its discovery stonewalling in several ways, one of which became even more severe in the past several weeks.  While blocking even rudimentary discovery that SCO sought over a year ago and this Court ordered to be produced in March, IBM has filed several fact-intensive dispositive motions that seek to accelerate adjudication of key issues in this case — seven months ahead of the fact-discovery cut-off that Judge Kimball recently entered over IBM's objections.  One of IBM's recently-filed motions asks the Court to dismiss SCO's core contract claims – based on sworn declarations from witnesses who gave prior deposition testimony (inconsistent with the declarations they have signed for IBM) about how the license agreements at issue were intended to address the risks posed to the licensor's proprietary material by the licensee's programming process.  Obviously, SCO is entitled to take IBM and Sequent programmers' depositions on these very issues in order to develop evidence that may be used to confront IBM's declarants.  By refusing to comply with this Court's order, IBM blocks those depositions from happening –

4

while filing dispositive motions asking for the facts to be adjudicated before they can be discovered.

The rest of IBM's response is equally meritless. Although IBM continues to claim (without any explanation or substantiation) that it has fully complied with its discovery obligations, IBM still has apparently failed to produce Court-ordered "materials and documents from executives including *inter alia*, Sam Palmisano and Irving Wladawsky-Berger... [or] any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" Order of 3/3/04, ¶ 4 ("3/3/04 Order). IBM has produced nothing from the files of its "<u>Linux Czar</u>," Mr. Wladawsky-Berger; next to nothing, including not a single substantive e-mail, from the files of Mr. Palmisano, the man who IBM has publicly credited for its "ambitious Linux strategy"; and, aside from the limited materials from Mr. Palmisano, nothing from its Board of Directors including no Board minutes or packages. IBM thus still asks the Court to believe (1) that a corporation of IBM's size and sophistication produced almost no executive-level documents concerning its "ambitious Linux strategy"; (2) that IBM's senior executives, including those who oversaw the project, never sent an e-mail concerning its Linux business; and (3) that its Board of Directors never considered the Linux project, into which IBM has invested billions of dollars.[1]

Finally, IBM attempts to interpose one last procedural obstacle to its compliance with SCO's discovery requests and the Court's March Order. IBM claims that SCO's motion should be denied because SCO failed to confer with IBM over issues in dispute. Contrary to IBM's unsubstantiated assertions, SCO has repeatedly attempted to resolve the outstanding discovery

---

[1] In response to SCO's Renewed Motion to Compel, IBM has finally agreed – purportedly "in the interest of moving this case forward and obviating a silly dispute," IBM Opp. Mem. at 14 – to produce the Court-ordered contact information that SCO has been seeking from it for over a year.

issues with IBM before seeking (now multiple) court intervention(s).  Despite numerous

telephone conferences, letters, e-mails, a prior motion to compel the same material, a court

hearing on that motion, the Court's March 3 Order, and substantial further correspondence

seeking IBM's compliance with that order, IBM still refuses to produce the required discovery.

IBM's astounding suggestion that the parties could have resolved this dispute through further

discussions, IBM's Memorandum in Opposition to SCO's Renewed Motion to Compel at 5, is

belied by the very intransigence reflected in IBM's opposition brief over even the most

rudimentary Court-ordered discovery.  IBM's repeated delays and refusals to provide this basic

discovery forced SCO to renew its discovery motion, particularly given IBM's attempts to

exploit its discovery strategy by attempting to run out the fact-discovery clock while it now files

three fact-intensive motions for summary judgments.


## ARGUMENT

### I.   IBM STILL HAS FAILED TO COMPLY WITH ITS OBLIGATION TO ANSWER SCO'S INTERROGATORY 5, DESPITE THIS COURT'S CLEAR ORDER REQUIRING IBM TO DO SO

In its opposition to SCO's Renewed Motion to Compel, IBM does not dispute that it was

ordered over five months ago to supplement its response to SCO's Interrogatory Number 5, that

it could do so, and that it has not done so.  Instead, IBM attempts to shift the focus from its

failure to comply with the Court's March 3, 2004 Order by (1) distorting the discovery record,

including the Court's Order; (2) mischaracterizing SCO's Renewed Motion to Compel; and

(3) attempting to reargue the relevance objections that it previously raised, and this Court

necessarily rejected, in ordering IBM to produce the required discovery in response to SCO's

initial motion to compel. IBM's continued efforts to avoid producing the basic, Court-ordered

discovery that SCO first requested over a year ago are as inexcusable as they are meritless.

**A.      IBM's Opposition to SCO's Renewed Motion to Compel Depends on
         Distortions of Both the Discovery Record and SCO's Renewed Motion.**

SCO's Interrogatory 5, which was served on June 24, 2003, sought the identities of "IBM

or Sequent personnel that work or worked on developing source code, derivative works,

modifications or methods for AIX, Dynix and Linux, <u>specifying for each person their precise

contributions to each</u>." (emphasis added.)  Interrogatory 5 thus requested information distinct

from Interrogatory 4, which sought the identity of "all persons who have or had <u>access to</u> UNIX

source code, AIX source code and Dynix source code." (emphasis added.)  In response to

Interrogatory 5, IBM merely identified the same approximately <u>7,200 individuals</u> it identified as

responsive to Interrogatory 4, and failed to provide <u>any</u> information concerning the contributions

of <u>any</u> such persons to AIX, Dynix, or Linux.

SCO thus explained in its Motion to Compel, filed on November 4, 2003, that IBM's

responses were deficient because as to Interrogatories 4 and 5, "the lists are, by definition, not

coextensive," and IBM had provided "no other information than the names themselves."  SCO's

Memorandum in Support of its Motion to Compel at 13 ("SCO Compel Mem.").  Indeed, SCO

specifically pointed out in its Motion that, as a result of this critical deficiency, IBM's answer

was "<u>not responsive to the most important part of the interrogatory, and as such they are nearly

useless as a starting point for further discovery</u>."  <u>Id.</u> (emphasis added).  Following argument on

SCO's motion, and over IBM's objection, this Court ordered IBM to "provide further responses

to," among other interrogatories, SCO's Interrogatory 5.  3/3/04 Order at 5, ¶ 5.

In response to the Court's Order, IBM has merely (1) referred SCO to its original list of 7,200 individuals; (2) limited, on its own initiative and without any basis, the scope of Interrogatory 5 to contributions that were "readily determinable"; and (3) stated that such contributions could be discerned "in the cases of AIX and Dynix from the products themselves." IBM's 2d Supp. Resp. and Obj. to SCO's First Set of Interrogatories at 5-6.

SCO showed in its Opening Memorandum that in each of those respects, IBM failed to comply with both the letter and the spirit of the Court's March Order. See Memorandum in Support of SCO's Renewed Motion to Compel ("SCO Renewed Compel Mem.") at 4-8. In its Opposition Memorandum, IBM attempts to justify its non-compliance by distorting the discovery record on this issue:

- IBM states that "SCO has moved to compel just once, seeking the production of additional source code from IBM and contact information for more than 7,200 individuals," IBM Opp. Mem. at 2, and claims that "SCO's principal complaint regarding IBM's initial responses" was that IBM failed "to provide addresses for the individuals identified in response to Interrogatory Nos. 4 and 5." Id. at 8. But SCO has always, and unambiguously, sought the contribution information in Interrogatory 5. See, e.g., SCO Compel Mem. at 13; Hearing Transcript of 2/6/04 at 24-25, 41 ("2/6/04 Tr.").

- IBM further contends that the Court directed IBM to produce only "certain specified releases of AIX and Dynix and contact information for a limited number of individuals." IBM Opp. at 2-3. But the Court clearly ordered IBM "to provide further responses to" Interrogatory 5, which unambiguously seeks more than just "contact information." Moreover, the Court entered its Order in response to SCO's motion to compel, which had

8

specifically sought to compel the contribution information requested by SCO in Interrogatory 5 (and ignored by IBM in its response thereto).

IBM similarly miscasts SCO's request for access to IBM's CMVC system. SCO Renewed Compel Mem. at 5-8. In its opening memorandum, SCO made clear that its request for the CMVC system was intended to permit SCO to obtain the Court-ordered discovery (in response to IBM's interrogatories) that IBM has demonstrated its unwillingness to supply: "Since IBM now has twice not complied with its discovery obligations, SCO asks the Court to order IBM to give SCO full access to the CMVC system so SCO finally can derive the requested information." SCO Renewed Compel Mem. at 6; see also id. at 8. SCO in no way "insinuates" that IBM violated the Court's Order merely by failing to produce the CMVC files or to give SCO access to those files. IBM Opp. Mem. at 7. Nor would it be "illogical," IBM Opp. Mem. at 10, for IBM now to provide such files merely because SCO is seeking some of the same files (for separate and compelling reasons, pursuant to IBM's document requests) in the ongoing process before the Magistrate Judge. SCO would be content to leave the issue of the CMVC files for that process – but IBM cannot then also continue to refuse to respond to Interrogatory 5 or to comply with the Court's express directive.

By distorting SCO's request for the production of the CMVC system, IBM seeks to exploit the separate proceeding before this Court (in connection with the parties' document requests) as a basis for further delaying SCO's access to the Court-ordered "contribution" information requested in SCO's Interrogatory 5. The CMVC files are therefore beside the point: If IBM would comply with the Court's directive, then SCO would not need the requested access. But IBM makes no representation that it will produce such information; to the contrary, it

9

rehashes the relevance arguments that this Court already considered and necessarily rejected in entering its March 3 Order. Again, SCO has sought access to the CMVC files in this context only because IBM has now made absolutely clear its refusal to do the work necessary to identify the contribution information, so that SCO has been forced to offer to do IBM's discovery work for it.

Of course, SCO could instead have simply moved for contempt against IBM for its refusal to comply with the Court's Order, for doing so on the grounds that it should not have to do any work to comply, for telling the Court in a sworn certification at the same time that it has made all good faith efforts to comply with the Court Order, and for telling SCO at the same time that SCO could derive the requested information from sources that IBM now admits would <u>not</u> in fact supply that information. Presumably, IBM would not object to such a motion on the ground that it was purportedly redundant to the separate process before the Magistrate Judge. Accordingly, if IBM is determined to argue that the process before this Court somehow logically precedes the relief SCO proposed in its Opening Memorandum, SCO asks the Court to disregard that proposed relief – that is, SCO's offer of assistance – and to focus solely on the fact of IBM's admitted (and inexcusable) failure to comply with the Court's Order.

**B.**     **There Is No Merit to IBM's Sole "Substantive Basis" for Failing to Respond <u>to Interrogatory 5 and for Failing to Comply with the Court's Prior Order.</u>**

IBM does not dispute any of the relevant bases on which SCO is entitled to the information sought in Interrogatory 5, including in the readily-accessible format in which IBM has such information. Nor does IBM dispute the following:

- that neither Interrogatory 5 nor the Court's Order requiring IBM to supplement its response to Interrogatory 5 limited the scope of the response to those contributions that were "readily determinable", id. at 5;

- that neither AIX nor Dynix, contrary to IBM's previous representations, contains information identifying the contributions of the thousands (or even hundreds) of the persons IBM has identified, id. at 5-8; or

- that IBM is capable of producing the requested information in a readily-accessible format, and it would not be unduly burdensome for IBM to produce that material, even if it took (as IBM once claimed) "weeks", id. at 5, 7-8.

Apart from labeling as "not misleading" its claim that AIX and Dynix supposedly contain the contribution information, IBM simply asserts in a footnote – without any affidavit support or even citation – that "Identifying the contributions of more than 7,200 individuals to AIX and Dynix, which each consist of millions of lines of code, cannot be performed with any precision, and is best undertaken in the first instance by reviewing the source code for AIX and Dynix for authorship information." IBM Opp. Mem. at 9 n.10. In the first instance, that unsubstantiated statement provides no basis for opposing SCO's Renewed Motion. Further, IBM does not even attempt to explain why to date it has not identified contributions (whether general or "precise") that any individual has made to AIX and Dynix. In light of the actual discovery record and given IBM's concession on the above points, SCO is entitled to all of the "contribution" material sought in its Renewed Motion to Compel.

IBM also now argues that the requested "contribution" information is irrelevant because "SCO's case against IBM concerns code that IBM is alleged to have improperly contributed to

Linux, as opposed to code that IBM developed for AIX and Dynix and did not contribute to Linux" so that, IBM now argues, the information is "wholly irrelevant to this case (under any theory)." IBM Opp. Mem. at 8-9. IBM not only had the opportunity to raise such relevancy objections during the February 2004 hearing preceding the March 2004 Order, but in fact <u>did</u> raise those objections. During that hearing, counsel for the parties expressly addressed both (i) the issue of IBM's responses to SCO's request for "contribution" information (<u>see, e.g.</u>, 2/6/04 Tr. at 24, 25, 27, 28, 41), and (ii) the relevance of the information and documents SCO sought regarding AIX and Dynix source code (<u>see, e.g.</u>, <u>id.</u> at 28-31, 38-41). Accordingly, IBM's current "relevancy" objections have been adjudicated (and, in the case of any proposed modification to the relevant portion of the March 2003 Order, waived).[2]

In addition, even if the Court were to determine that IBM's relevancy objection has not already been rejected or waived, that argument lacks any merit. With respect to SCO's primary breach-of-contract claims alone, for example, the license agreements provide that any derivative work based on UNIX System V source code is to be treated as a part of UNIX System V under the agreement, such that the licensee may breach the agreement by distributing <u>any</u> source code from any such work (that is, from UNIX System V as defined). In addition to literal source code, moreover, the license agreements protect the "methods and concepts" used in UNIX System V. SCO is entitled to know the identities of those individuals who contributed source code to AIX and Dynix to determine, for example, whether and how they relied on UNIX

---

[2] A contrary outcome would improperly reward IBM for deliberately choosing to delay its assertion of those objections until months of discovery had passed — and until after IBM had filed a motion for summary judgment that SCO could fully oppose on the merits only if IBM had produced the information that SCO had plainly sought and that IBM had plainly been ordered to produce.

System V source code to develop the contributed code. The plain language of the agreements belies IBM's claim that this case does not concern AIX and Dynix code.[3]

SCO's request for the identities and contributions of the contributors to AIX and Dynix has been pending for well over a year. Having failed to produce that information either in response to SCO's Interrogatory 5 or to the Court's specific directive, and given the nature of its continued opposition to the production of the requested information in its Opposition Memorandum, IBM should (i) respond to Interrogatory 5, and (ii) produce to SCO the readily accessible format from which SCO itself can derive the information, fully and accurately.

## II.    IBM STILL HAS FAILED TO EXPLAIN ITS PLAINLY INADEQUATE PRODUCTION OF DOCUMENTS FROM ITS SENIOR MANAGEMENT

At the February 6 argument on SCO's motion to compel, SCO's counsel emphasized the "critical deficiency" that IBM had not produced discovery "from any of the highest levels of the company," specifically including "documents and materials from Sam Palmisano, from Irving Wladawsky-Berger, the key executives that are intimately involved in the Linux project." 2/6/04 Tr. 22.[4]  In its March 3, 2004 Order, the Court granted SCO's motion to compel and ordered IBM to produce "documents and materials generated by, and in the possession of employees that

---

[3] Only having argued – inaccurately – that SCO's case concerns only contributions to Linux does IBM rely on that portion of the Court's March 2004 Order stating that "SCO should use its best efforts to obtain relevant discovery from the Linux contributions that are known to the public." IBM Opp. Mem. at 9. That directive, with which SCO has complied, has nothing to do with IBM's failure to respond to Interrogatory 5 or that portion of the March 2004 Order directing it to do so.

[4] IBM incorrectly claims that SCO did not assert IBM's failure to produce such responsive documents until the February 6 hearing and that SCO had not previously conferred with IBM about this issue. IBM Opp. Mem. at 11 & n.12. To the contrary, SCO's counsel spoke with Christine Arena in late October 2003, during which counsel for SCO raised the issue of IBM's improper failure to produce documents from any of its senior executives. 2/6/04 Tr. at 26. Indeed, in its Reply in Support of its Motion to Compel, SCO detailed IBM's refusal even to acknowledge that its senior executives in charge of the Linux project had any knowledge of any of the issues in this lawsuit. SCO's Reply Memorandum in Support of its Initial Motion to Compel at 6.

have been and that are currently involved in the Linux project." 3/3/04 Order at 4-5, ¶ 3. The Court's Order specifically provided that "IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy." Id.

As SCO explained in support of its Renewed Motion to Compel, despite the Court's March 3 Order, IBM still has apparently failed to produce the required discovery. For example:

- IBM has failed to produce any documents from the files of Irving Wladawsky-Berger, the IBM executive who, according to The New York Times, is IBM's "Linux czar" and sent e-mails to top technology executives regarding the rise of Linux.

- Even though Sam Palmisano is the former Senior Vice President in charge of IBM's server business, is now IBM's CEO and Chairman of the Board, and is the person who IBM has publicly proclaimed as the leader in its strategy to shift toward Linux as its operating system of choice, IBM has produced only limited documents from Mr. Palmisano's files, and has produced only a single non-substantive e-mail (in which Mr. Palmisano requested that someone print a document).

- Other than the inexplicably limited materials from Mr. Palmisano, IBM has failed to produce any documents from its Board of Directors (i.e., IBM has not produced any Board minutes, Board packages, or other such materials required by the Court's March 3 Order).

In response, IBM does not dispute that the Court ordered it to produce the information SCO seeks. Nor does IBM make any attempt to explain what appears to be an obvious

14

deficiency in its document collection or production effort. Rather, IBM relies (again) on nothing more than its unsubstantiated and conclusory claims that "IBM has collected and produced the non-privileged, responsive documents that were found in the files of its senior executives and Board of Directors" and has not "improperly 'filtered' and excluded responsive documents." IBM Opp. Mem. at 10. IBM would thus have this Court believe: (1) that a corporation of IBM's size and sophistication produced almost no executive-level documents concerning its "ambitious Linux strategy"; (2) that IBM's senior executives, including those who oversaw the project, never sent an e-mail concerning its Linux business; and (3) that its Board of Directors never considered the Linux project, in which IBM has invested billions of dollars. This explanation would be implausible from any Linux-related business, much less from one of the largest and most sophisticated technology companies in the world.

Given the plainly inadequate discovery that IBM has produced, and its plainly inadequate attempt to address this deficiency (despite having had over six months to do so), SCO has asked the Court (1) to order IBM to produce the entire files of Palmisano, Wladawsky-Berger, IBM's Board, including Board minutes, Board packages, and other relevant Board materials, and all other documents relevant to SCO's requests that this Court previously ordered to be produced; or, at a minimum, (2) to require IBM to provide certifications from Palmisano, Wladawsky-Berger, and the members of IBM's Board stating that they have no relevant e-mails, Board minutes, Board packages, or other Board materials that address issues relevant to this case. As SCO explained in support of its renewed motion to compel, these measures have been necessitated by IBM's continued failure to comply with its discovery obligations and will ensure that no further discovery time is wasted while IBM incredibly claims that it has not complied.

### III. ONLY AFTER REQUIRING SCO TO FILE ITS RENEWED MOTION TO COMPEL HAS IBM FINALLY PRODUCED THE WITNESS CONTACT INFORMATION THAT THIS COURT ORDERED, MOOTING THE NEED FOR FURTHER NEEDLESS LITIGATION AND DELAY OVER THIS ISSUE

After the Court's March 3 Order required "IBM to properly identify a representative sample of the potential witnesses that is to include a 1000 of the most important prospective trial witnesses as agreed upon by SCO and IBM," IBM submitted a declaration to the Court in which it proclaimed its full compliance with the Court's Order and represented that it would "provide contact information for additional names as SCO requests such information, up to a total of 1,000 names." Exh. 1. Nevertheless, after no fewer than eight letters between counsel over the course of several months, IBM still refused to provide SCO with the contact information for the 134 individuals for whom SCO had requested such information on March 26 and June 4.[5] IBM's intransigence required SCO to file a renewed motion to compel such discovery.

Now that IBM has forced SCO to file a renewed motion to compel that discovery, IBM has decided – purportedly "in the interest of moving this case forward and obviating a silly dispute," IBM Opp. Mem. at 14 – to supplement its discovery responses by providing the information that SCO has sought for over a year. Of course, IBM could have obviated the need for this "silly dispute," IBM Opp. Mem. at 14 – which became all the more inexplicable after the Court ordered IBM to produce the very information that it continued to withhold – without forcing SCO to file a renewed motion to compel. In any event, IBM's decision to finally

---

[5] Without identifying a single name, IBM claims that when SCO sent its first request for contact information on March 26, 2004, the list contained names of persons IBM had not identified as witnesses or had not identified as the source of documents. IBM Opp. Mem. at 13 n.13. As a preliminary matter, despite the long string of letters addressing the issue of IBM's contact information production, IBM never raised this issue until its opposition to SCO's Renewed Motion to Compel. Moreover, SCO is not aware that it asked for any information outside these two categories; without IBM identifying any such persons by name, SCO is unable to further respond to this conclusory allegation. In any event, based upon IBM's recent decision to finally comply with this Court's March Order, this issue appears to be moot.

produce the Court-ordered information moots the needs for further unnecessary litigation and discovery delay over this issue.[6]

## IV.   IBM'S CLAIM THAT SCO FAILED TO CONFER WITH IT BEFORE RENEWING ITS MOTION TO COMPEL IS BASELESS, AND ITS SUGGESTION THAT THE PARTIES COULD HAVE EASILY RESOLVED THESE ISSUES WITHOUT THE COURT'S INVOLVEMENT IS ABSURD

IBM attempts to continue to avoid complying with SCO's discovery requests and this Court's March 3 Order by incorrectly claiming that SCO "did not confer with IBM before filing its motion." IBM Opp. Mem. at 4. Based on its demonstrably incorrect claim that "SCO failed even to discuss [these issues] with IBM," IBM's Opp. Mem. at 5, IBM asserts that "SCO's motion should therefore be denied for this reason alone." Id. There is no merit to this claim. To the contrary, SCO has repeatedly sought to obtain IBM's compliance with its basic discovery obligations at issue in SCO's renewed motion to compel since before SCO filed its original motion to compel such discovery in November 2003. Despite such efforts, IBM has stalled and blocked SCO's efforts at every turn.

As an initial matter, the discovery that SCO seeks through its renewed motion to compel is the same discovery that it sought in the original motion to compel that it filed in November and at the February 2004 hearing on that motion. SCO made numerous attempts to obtain such discovery before filing its original motion -- including through many telephone conferences and e-mail and letter exchanges – facts which SCO certified when it filed its motion. Exh. 3. Thus,

---

[6] In finally complying with the Court's March Order, IBM asks, for the first time, that SCO be ordered to provide additional contact information "in the possession of SCO or SCO's counsel for each of the witnesses identified in SCO's responses to IBM's interrogatories, including third-party witnesses, and each of the persons from whom SCO has produced documents but did not identify in its interrogatory responses." SCO has offered to compile, and is working on compiling such information, for IBM. In the meantime, SCO has asked IBM to identify any individuals for whom it needs contact information quickly, so that SCO can address those individuals first. See Exh. 2.

SCO seeks only materials for which it has already certified its extensive efforts to negotiate with IBM.

Furthermore, since the Court's March 3 Order, SCO has made repeated attempts to obtain IBM's compliance. Despite the Court's Order – which should have put all of these issues to rest – IBM has forced SCO into a protracted letter-writing campaign just to pursue Court-ordered discovery. In letters dated March 10, March 26, April 20, May 26, June 4, and June 15, SCO asked repeatedly for these materials.[7] And, in letters dated March 4, April 19, April 26, and June 9, IBM persisted in attempting to justify its continued refusal to comply with the Court's Order.[8]

When it became apparent that IBM intended only to further forestall SCO's discovery attempts – and then to attempt to exploit its stonewalling by filing a precipitous summary judgment motion – SCO saw no other choice but to again seek the Court's intervention. Indeed, only three weeks after the Court's March 3 Order, IBM brought its Tenth Counterclaim, injecting numerous new copyright issues into this case. While SCO's discovery requests at issue here

---

[7] See Ex. 4, 3/10/04 letter ("Rather, IBM must search the files of its top executives and others for all responsive documents that IBM agreed to produce or was ordered to produce."); Ex. 5, 3/26/04 letter (requesting contact information for some of the 1000 witnesses that the Court ordered IBM to produce); Ex. 6, 4/20/04 letter ("You, however, attempt to justify not providing contact information for many of the witnesses I requested because they were not listed on attachments B through E. This is not a valid justification for refusing to provide such information . . . Please let me know if you are willing to provide this information or whether we need to pursue this matter further with the Court."); Ex. 7, 5/26/04 letter (again seeking documents originally requested in the March 10 letter); Ex. 8, 6/4/04 letter ("After our repeated objections about IBM's failure to properly identify witnesses, I would have thought that your April 19 response would have remedied the situation. Apparently, you have chosen not to do so in any of your filings."); and Ex. 9, 6/15/04 letter ("In response to your letter dated June 11 in which you refuse to provide contact information for witnesses identified by IBM in its April 19 disclosure... If IBM refuses to provide contact information that IBM possesses, then we will have no choice but to bring this matter before Judge Wells.").

[8] See Ex. 10, 3/4/04 letter (attempting to limit the scope of the documents the Court had ordered it to produce); Ex. 11, 4/19/04 letter (refusing to provide contact information for potential witnesses); Ex. 12, 4/26/04 letter (claiming that the files of IBM's "Linux Czar" contained no documents regarding Linux and thus there was nothing for IBM to produce); and Ex. 13, 6/9/04 letter (again refusing to supply contact information for potential witnesses).

were originally brought to support its contract claims, those same materials were now needed to defend against IBM's Tenth Counterclaim. See SCO's Reply Memo. Regarding Discovery filed July 12, 2004. Barely six weeks later, IBM moved for summary judgment on that Tenth Counterclaim. Thus, SCO's need for that basic discovery, requested more than a year ago and already subject to this Court's order, became urgent. Despite its now critical need for this discovery, SCO still repeatedly attempted to resolve its differences with IBM without the Court's intervention, unfortunately to no avail. SCO's need for the outstanding discovery has only become more critical since SCO filed its renewed motion to compel; in the last two weeks alone, IBM has filed two additional fact-intensive summary judgment motions, which seek further to exploit its refusal to provide SCO with the basic outstanding discovery at issue here.

Furthermore, IBM's technical reliance on the absence of a Rule 37(a)(2)(A) certification accompanying SCO's renewed motion is also misplaced. SCO has already complied with the certification requirement when it filed its original motion to compel discovery of precisely the same materials that are still at issue here. Pursuant to that motion, the Court intervened and ordered IBM to produce the discovery at issue, and IBM refused to comply. "The prior issuance of a court order obviates the need to meet and confer as required under Rule 37(a)." See Royal Maccabees Life Ins. Co. v. Malachinki, No. 96 C 6135, 2001 WL 290308, *9 (N.D. Ill. Mar. 20, 2001) (Exh. 14); see also Moore's Fed. Pract. § 37.40, at 37-59 (explaining that Rule 37(b) does not carry a "meet and confer" requirement because Rule 37(b) is available "only if a court has first entered an order compelling the discovery in question" – a requirement that "obviates the need for the meet and confer").

Moreover, courts have recognized that a failure to include a Rule 37(a)(2)(A) certification, even when required on a party's <u>original</u> motion to compel, does not constitute a fatal flaw. Instead, a court is to exercise "its discretion to consider the instant motion despite the absence of a certification" from the moving party in light of the "track record of the parties" and the "nature and substance of the instant motion." <u>United States v. Rempel</u>, No. A00-0069-CV (HRH), 2001 WL 1572190, *1 (D. Alaska July 5, 2001) (Exh. 15). A technical failure to certify, and even a substantive failure to meet and confer, does not "warrant rejecting" a motion if the goal of those requirements – "to promote efficiency in litigation" – would "not be advanced by further delay in resolving these issues on the merits." <u>Time v. Simpson</u>, No. 02CIV4917MBMJCF, 2002 WL 31844914, *2 (S.D.N.Y. Dec. 18, 2002) (Exh. 16). This is precisely the case here, where permitting IBM to further delay its discovery obligation (while it seeks to exploit its stonewalling through its summary judgment motions) would turn Rule 37(a)(2) – and the local rule patterned after it – on its head.

Finally, IBM's apparent intransigence in its opposition to SCO's renewed motion demonstrates the futility of further discussions between the parties and belies IBM's remarkable claim that "the matters raised in SCO's motion could easily have been resolved without imposing on the Court." IBM's Opp. Mem. at 5. Under these circumstances, case law is clear that a court can dispose of the Rule 37(a)(2)(A) requirements – not only the certification requirement, but even the very need to meet and confer – if such an effort would seem to the court to be futile. See <u>Matsushita Electric Corp. of Am. v. 212 Copiers Corp.</u>, No. 93 Civ. 3243 (KTD), 1996 WL 87245, *1 (S.D.N.Y. Feb. 29, 1996) (Exh. 17) (declining to apply Rule 37(a)(2) "for what promises to be an act of futility"); <u>Rempel</u>, 2001 WL 1572190 at *1 ("any 'meet and confer'

effort as to this motion would almost surely have been futile"); Royal Maccabees, 2001 WL

290308 at *9 ("any effort to secure defendant's voluntary compliance in the case at bar would

clearly be futile").[9]  Indeed, the only outstanding discovery issue on which IBM budges in its

opposition – i.e., with respect to the contact information for the individuals SCO identified – was

specifically addressed to IBM by letters dated March 26, April 20, June 4, and June 15.  Clearly,

a motion to compel was required to enforce IBM's compliance with the Court's March 3 Order

and, unfortunately, the Court's intervention will be required again to address the other instances

of IBM's continued non-compliance.

## CONCLUSION

For all of the above reasons, SCO respectfully requests that the Court grant its renewed

motion to compel.

DATED this 26th day of August, 2004.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver, Esq. (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

---

[9] Nor do the cases cited by IBM in its brief support its suggestion that the failure to file a certification (as opposed to a substantive failure to confer) warrants dismissal of a motion to compel.  See IBM's Opp. at 5 (citing Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995) (denying motion because movant failed to confer adequately); Hoelzel v. First Select Corp., 214 F.R.D. 634, 635-636 (D. Colo. 2003) (same)).

CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of the foregoing

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF / COUNTERCLAIM-**

**DEFENDANT SCO'S RENEWED MOTION TO COMPEL** was served on Defendant

International Business Machines Corporation on this 26th day of August, 2004, by U.S. mail,

postage prepaid, addressed to:

> Alan L. Sullivan, Esq.
> Todd M. Shaughnessy, Esq.
> Snell & Wilmer L.L.P.
> 15 West South Temple, Ste. 1200
> Gateway Tower West
> Salt Lake City, Utah 84101-1004

Copy to:

> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019
>
> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604

*Attorneys for Defendant/Counterclaim Plaintiff IBM Corp.*

# EXHIBITS TO REPLY MEMORANDUM

## Table of Contents

| Exhibit No. | Date | Description |
|---|---|---|
| 1 | 4/19/04 | Declaration of Todd Shaughnessy |
| 2 | 8/17/04 | Letter from Mark Heise to Peter Ligh |
| 3 | 11/4/03 | SCO's Motion to Compel Discovery and Certificate of Compliance with Rule 32(a)(2)(A) |
| 4 | 3/10/04 | Letter from Debra Weiss Goodstone to Christopher Kao and Peter Ligh |
| 5 | 3/26/04 | Letter from Mark Heise to Peter Ligh |
| 6 | 4/20/04 | Letter from Mark Heise to Peter Ligh |
| 7 | 5/26/04 | Letter from Mark Heise to Christopher Kao |
| 8 | 6/4/04 | Letter from Mark Heise to Peter Ligh |
| 9 | 6/15/04 | Letter from Mark Heise to Peter Ligh |
| 10 | 3/4/04 | Letter from Peter Ligh to Mark Heise |
| 11 | 4/19/04 | Letter from Peter Ligh to Mark Heise |
| 12 | 4/26/04 | Letter from Peter Light to Mark Heise |
| 13 | 6/9/04 | Letter from Sean Eskovitz to David R. Marriott |

## AUTHORITIES

| 14 | *Royal Maccabees Life Ins. Co. v. Malachinki*, No. 96 C 6135, 2001 WL 290308 (N.D. Ill. Mar. 20, 2001) |
|---|---|
| 15 | *United States v. Rempel*, No. A00-0069-CV (HRH), 2001 WL 1572190 (D. Alaska July 5, 2001) |
| 16 | *Time v. Simpson*, No. 02CIV4917MBMJCF, 2002 WL 31844914 (S.D.N.Y. Dec. 18, 2002) |
| 17 | *Matsushita Electric Corp. of Am. V. 212 Copiers Corp.*, No. 93 Civ. 3243 (KTD), 1996 WL 87245, *1 (S.D.N.Y. Feb. 29, 1996) |

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.