FILED

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S REDACTED REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE JULY 12, 2004 AND AUGUST 26, 2004 DECLARATIONS OF CHRISTOPHER SONTAG**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |



Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this Reply Memorandum in Support of its Motion to Strike the July 12, 2004 and August 26, 2004 Declarations of Christopher Sontag, submitted by Plaintiff/Counterclaim-Defendant The SCO Group, Inc. ("SCO") in support of its Memorandum Regarding Discovery.

## **Preliminary Statement**

Rather than address the issues raised by IBM's motion to strike the July 12, 2004 Declaration of Christopher Sontag, SCO's opposition is devoted almost entirely to a rehashing of its arguments as to why SCO believes it is entitled to extensive additional discovery from IBM and why such discovery imposes no burden on IBM. SCO has briefed and IBM has responded to these same arguments several times before, and we will not repeat ourselves again here.

The few pages of SCO's brief addressed to the issue at hand—the admissibility of Mr. Sontag's declaration—fail to offer any proper basis for the Court to consider Mr. Sontag's self-serving opinion testimony concerning IBM's internal CMVC software control system. SCO cannot show that Mr. Sontag has personal knowledge of CMVC, because he has none. SCO's attempt to correct this inadequacy by submitting another declaration from Mr. Sontag, dated August 26, 2004, is futile. As with his first declaration, Mr. Sontag's new declaration is plainly not based on personal knowledge of IBM's CMVC system. Instead, it is based on "information" from unnamed "reliable sources" and mere conjecture about how CMVC "should" function. Both of Mr. Sontag's declarations should therefore be stricken from the record.

1

## Argument

## BOTH OF MR. SONTAG'S DECLARATIONS SHOULD BE STRICKEN.

A.  Mr. Sontag Does Not Have Personal Knowledge Of IBM's CMVC System.

As is plain on their face, neither of Mr. Sontag's declarations establishes that Mr. Sontag has first-hand knowledge of IBM's CMVC system and can therefore offer competent fact testimony regarding the operation of CMVC and the supposed ease with which IBM could produce data from CMVC. In order to salvage the declarations, SCO argues in its opposition brief that the declarations are in fact based on personal knowledge because (1) Mr. Sontag claims to be familiar with source code control systems used at two companies other than IBM; and (2) Mr. Sontag has reviewed a few documents describing variations of IBM's CMVC system. Neither of these arguments withstands scrutiny.

First, Mr. Sontag's alleged knowledge concerning source code control systems used by his former employers does not equate to personal knowledge of the operation of IBM's CMVC system. Cf. Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1219 (10th Cir. 1998) (affirming exclusion of testimony of plaintiff's former supervisor where, even though the supervisor had knowledge of plaintiff's work habits in his prior position, he had "no personal knowledge of the specific facts or issues involved in this case and therefore could not testify whether Plaintiff was competent in or willfully neglected his current duties"). As an initial matter, although Mr. Sontag claims to be "familiar" with the systems used by his previous employers (8/26/04 Sontag Decl. ¶¶ 13-14), he does not even name those systems or describe how those systems operated. In fact, Mr. Sontag does not claim even to have ever used such systems in the course of his employment. Instead, he claims only to have "implement[ed] . . . procedures using the source control system" and to have "led the evaluation and selection

2

process of the source control and source management system that was used by the development team". (Id. ¶¶ 13-14.) In any case, Mr. Sontag's claimed familiarity with other companies' source code systems at most means that he has personal knowledge sufficient to testify as to those systems, not IBM's CMVC system. Here, Mr. Sontag's speculation as to how IBM's CMVC system "should" operate is not proper fact testimony. See Malek v. Martin Marietta Corp., 859 F. Supp. 458, 460 (D. Kan. 1994) ("It is the plaintiff's personal knowledge, and not his beliefs, opinions, rumors or speculation, that are admissible at trial and the proper subject of any affidavit.").[1]

Second, Mr. Sontag's review (and misunderstanding) of a few selected documents describing variations of IBM's CMVC system is insufficient to imbue Mr. Sontag with personal knowledge about CMVC. Just because Mr. Sontag claims to have read a few documents about CMVC does not mean that he has personal knowledge of CMVC and is therefore qualified to testify under oath concerning CMVC's operation and the burden involved in producing materials from CMVC. If that were true, any witness would be able to give sworn testimony about anything that that witness ever read in a newspaper article, a book or in any other publication. That makes no sense and is inconsistent with the rules of evidence.[2]

---

[1] Nor are the opinions offered by Mr. Sontag as to the workings of CMVC and IBM's burden in producing from CMVC the voluminous material requested by SCO "rationally based on the perception of the witness". Fed. R. Evid. 701 (emphasis added); see Gardner v. Chrysler Corp., 89 F.3d 729, 737 (10th Cir. 1996); Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir. 1991) ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."); PAS Communications, Inc. v. Sprint Corp., 139 F. Supp. 2d 1149, 1181-82 (D. Kan. 2001) (lay opinion testimony is inadmissible unless it is "grounded in observation or other first-hand personal experience").

[2] None of the cases cited by SCO supports its position. Fla. Farm Bureau Mutual Insurance Co. v. B & B Miller Farms, Inc., No. 87-1021-C, 1991 WL 201188, at *10-11 (D. Kan. Sept. 17, 1991), addressed the types of information that expert witnesses may properly rely on to form expert opinions, and does not in any way diminish the requirement that lay witnesses testify only as to facts within their personal knowledge. In Fenstermacher v. Telelect, Inc., 21 F.3d 1121 (Table), 1994 WL 118046 (10th Cir. Mar. 28, 1994), the Tenth Circuit, in affirming the trial

3

Both of Mr. Sontag's declarations should therefore be stricken from the record, as they are not based on personal knowledge.

B.  Mr. Sontag Has Not Been Offered As An Expert.

As SCO concedes that it has not offered Mr. Sontag as an expert qualified to provide opinion testimony regarding CMVC, there is no basis for the Court to consider Mr. Sontag's testimony on this ground either. Moreover, SCO's belated suggestion that Mr. Sontag is at any rate qualified to provide expert testimony regarding CMVC is misguided.

Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise". Fed. R. Evid. 702. A party seeking to introduce expert testimony bears "the burden of demonstrating to the district court that [the purported expert is] qualified to render an expert opinion". Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n.4 (10th Cir. 2001). Mr. Sontag's four-paragraph biographical statement attached to his August 26, 2004 declaration and the list of undergraduate computer science courses he enrolled in are inadequate to show that Mr. Sontag has the requisite technical expertise to offer opinion testimony regarding the operation of source

---

court's admission of certain testimony, "emphasize[d] that the witnesses . . . testified only as to what they actually observed at the time of the accident and what they actually observed during the reenactment. At no point did they proffer testimony not based on their personal observations". Id. at *6 (emphases in original.) In both Visser and Kloepfer v. Honda Motor Co., 898 F.2d 1452 (10th Cir. 1990), the courts rejected the proffered testimony. See Visser, 924 F.2d at 659 (rejecting, as "amateur psychoanalysis" and not based on personal knowledge, affiants' testimony that defendant's CEO was motivated by age discrimination in firing plaintiff); Kloepfer, 898 F.2d at 1459 (affirming striking of statements by the plaintiff that she would have obeyed a safety warning if the vehicle had included such a warning, since such a statement was "speculative" and not rationally based on the perception of the witness). Finally, in In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig., 870 F. Supp. 1293, 1304 (E.D. Pa. 1992), the declarant was found to have personal knowledge of his own company's historical policies and practices where he had reviewed the company's corporate documents and discussed the events with other senior executives at the company during the course of his employment. That is far different from the instant situation, where Mr. Sontag, a SCO employee, purports to have acquired personal knowledge of IBM's internal software control system solely through his review of a few documents discovered during litigation.

4

control systems generally, and IBM's CMVC system in particular. See Broadcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992) (affirming finding that an attorney's "general experience and education did not qualify the witness as an expert in the securities area", even though the attorney "had some education and training in the field" and had had experience "representing clients in the area of securities law").

Nor is Mr. Sontag's conclusory statement that he has "had experience in source control and source control management systems, similar to IBM's CMVC system" sufficient to demonstrate any special expertise that would make him competent to provide expert testimony on this issue. See TK-7 Corp. v. Estate of Ihsan Barbouti, 993 F.2d 722, 728 (10th Cir. 1993) (affirming rejection of proffered expert testimony where the witness' experience in marketing and selling fuel additives in Israel was "insufficient to qualify [the witness] as an expert to express an opinion predicting sales in Venezuela"). Indeed, as noted above, Mr. Sontag fails even to name the alleged systems he is familiar with and does not even claim to have personally used any of these systems.

REDACTED

### C. The Entire Sontag Declaration Should Be Stricken.

As a fall-back position, SCO contends that the Court should not strike Mr. Sontag's entire testimony, but only those portions of his declarations that are flawed. SCO misses the point. As Mr. Sontag has no personal knowledge of the subject matter of his declarations, and is not offered by SCO as an expert witness, the <u>entirety</u> of Mr. Sontag's declarations are inadmissible and should be stricken. Indeed, SCO makes no effort even to point to specific paragraphs of Mr. Sontag's declarations that it contends should not be stricken.[3]

---

[3] SCO wrongly contends that because the declaration of Joan Thomas submitted by IBM does not specify each paragraph of Mr. Sontag's first declaration that contains false statements of fact, all the paragraphs not specifically criticized by Ms. Thomas should be admitted. IBM has not

5

SCO further asks in its opposition brief that the court "split [the Sontag Declaration] into two parts: documents and testimony". (SCO Opp. at 3.) Even if the documents appended to Mr. Sontag's declarations were admitted, however, SCO's (and Mr. Sontag's) mischaracterizations of those documents should not be countenanced. For example, in its opposition brief (at 5-6), SCO misrepresents both the plain language of Exhibit B to Mr. Sontag's declaration and the extent of the source code already produced by IBM. The statement in Exhibit B that "you can re-create exactly any previous release of your application", even if true, does not advance SCO's position. IBM has already produced to SCO the source code for all releases of AIX since 1999. That is not what SCO is now seeking. Instead, SCO seeks all iterations of source code (estimated to consist of more than approximately 2 billion lines of code) that ever existed between each of these releases, whether or not any of these iterations was ever incorporated into an actual release. Nowhere do any of the documents purportedly reviewed by Mr. Sontag state that producing such materials from CMVC is a simple task. To the contrary, as IBM has explained in its oppositions to SCO's Memorandum Regarding Discovery and its "Renewed" Motion to Compel, producing such materials from CVMC is a complicated and time-consuming project that IBM should not have to undertake in light of SCO's failure time and again to demonstrate the relevance of such materials to the claims in this case.

---

moved to strike Mr. Sontag's declarations because they are factually incorrect (although they are). Ms. Thomas' declaration was intended only to clarify for the record the true operation of CMVC, not to challenge and correct every last one of Mr. Sontag's misstatements. Here, Mr. Sontag's declarations should be stricken in their entirety because SCO fails to show (because it cannot) that Mr. Sontag either has personal knowledge of CMVC or is a qualified expert.

6

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court strike the Declarations of Christopher Sontag, dated July 12, 2004 and August 26, 2004, submitted in support of SCO's Reply Memorandum Regarding Discovery.

DATED this 7th day of September, 2004.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000
*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2004, a true and correct copy of the foregoing was sent by U.S. Mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Amy F. Sorenson

314093.1

8