

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff | **MEMORANDUM IN SUPPORT OF SCO'S EX PARTE EMERGENCY MOTION FOR A SCHEDULING CONFERENCE**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |



SCO respectfully submits this memorandum in support of its ex parte motion for a case management conference at the Court's earliest possible convenience to address an emergency that was injected into this case late last week – the resolution of which cannot be deferred without effectively deciding this dispute in IBM's favor based on its litigation tactics, and wholly independent of the merits. The problem has been building for an extended period of time, and SCO has documented it step by step. As of last week, the problem had reached a point where the aggregated and compounded threat from IBM tactical maneuvers – IBM's blocking of discovery coupled with its attempted acceleration of adjudication – forced SCO to seek what was already unusual relief in the form of a request to the Court to enforce its Amended Scheduling Order against IBM's attacks. As SCO explained, the Court's Amended Scheduling Order had been seriously undermined by coordinated IBM maneuvers that not only bore no relation whatsoever to the merits of this case but were in fact designed to shield IBM's conduct from scrutiny on the merits. Relief was needed to ensure that SCO would receive even a remotely fair opportunity to use the Court's extended discovery period for its intended purpose.

Now, however, IBM has pushed this long course of conduct past the brink, creating an emergency situation in which absent immediate Court intervention, SCO will be extremely prejudiced in its ability to develop and prove its case – regardless of the outcome of SCO's efforts to obtain the outstanding discovery, and even if SCO is completely right on the merits of its claims and IBM is completely wrong. It is because IBM's latest step would so decimate SCO's rights to pursue its claims that IBM has brought this proceeding to the status of an emergency and compelled SCO's instant Motion.

SCO has demonstrated in recent filings over the past several months that IBM's coordinated campaign to block long-sought, and Court-ordered, discovery would preclude SCO

from obtaining the evidence to prove its claims and to defend against IBM's counterclaims within even the extended period for discovery provided by this Court's June 10 Amended Scheduling Order. IBM obtained its most recent and successful effort to delay the production of such discovery, for at least an additional five weeks, through an ex parte motion filed with the Magistrate Judge on September 8 – putting off the hearing that was to have occurred this week on SCO's pending and renewed motion to compel critical outstanding discovery.

IBM's tactics have now created a judicial emergency: a situation in which one party has chosen to engage in a course of conduct that the Court's default (and even express) procedures – which presume precisely that the party will not engage in such conduct – cannot preclude, and that promises irreparably to harm the other party. IBM's conduct thus effectively circumvents the Court's Amended Scheduling Order (which IBM vehemently opposed) and therefore takes from the Court the control over these proceedings. These particular and emergent circumstances warrant the Court's immediate attention.

## I. IBM Has Long Refused to Produce Directly Relevant Discovery Necessary to Permit to SCO to Move Forward with Discovery, Prove Its Claims, and Defend Against IBM's Counterclaims.

Even before IBM sought and obtained its most recent delay, its discovery conduct up to that point had already forced SCO to move this Court to enforce its Amended Scheduling Order. See Memorandum in Support of SCO's Expedited Motion to Enforce the Court's Amended Scheduling Order Dated June 10, 2004 (Sept. 8, 2004). That Order provided for an extended discovery period that IBM's continued discovery intransigence – essentially a continuation of its unsuccessful opposition to the entry of the Amended Scheduling Order in the first place – threatened to moot. SCO showed in its accompanying papers that since the entry of the Amended Scheduling Order, IBM had taken every step to counteract that Order in order to

prevent any review of the merits of its challenged conduct. Thus, for example, IBM has stonewalled SCO in critical discovery while simultaneously seeking to force, through three fact-intensive summary judgment motions on the key issues in the case filed seven and nine months before the end of fact discovery, the Court's accelerated adjudication of fact issues that SCO needs the outstanding discovery to oppose.

SCO demonstrated in detail why IBM's refusal produce that discovery – some of which SCO requested more than a year ago, and some of which the Magistrate Judge had ordered IBM to produce six months ago – meant that SCO could not obtain even basic, predicate discovery until mid-fall (or later). IBM's conduct had thus made it exceptionally difficult for SCO to have any semblance of the discovery opportunities the Court's Amended Scheduling Order had permitted, and left SCO with only the most attenuated chance to prove its case or even to defend against IBM's counterclaims. This would have been true had there been no additional delay in the hearing that was scheduled this summer to permit SCO to address its outstanding discovery issues to the Magistrate Court. In fact, given IBM's discovery delays, which would have pushed off SCO's receipt of all crucial discovery until the fall, this would have been true even if IBM had not filed its three fact-intensive summary judgment motions – none of which could have created any case-management efficiency, because none would obviate the discovery that would have to proceed during the pendency of the motion and each would require constant supplemental briefing as that discovery progressed.

IBM has now made matters orders of magnitude worse by seeking and obtaining its latest, and now assuredly prejudicial, delay – pushing discovery off further into the fall and winter. SCO shows in Part III, below, that the manner in which IBM obtained that delay is the latest example of IBM's course of discovery misconduct. The fact is that IBM used this new

tactic when, finally, it had no other way to avoid its discovery obligations. But the mere fact of the delay converts the previously high likelihood that IBM would undercut the Court's control over these proceedings into a guarantee that absent Court intervention IBM will prevail without ever having to defend its conduct on the merits.

## II. There Can Be No Serious Doubt That SCO Is Entitled to the Discovery That IBM Has Refused to Produce.

IBM not only has undertaken the above-described conduct, but has done so in a context in which there is no real chance that the Court will not order IBM to produce the discovery. There can be no serious question that this discovery is of direct, core relevance on several independently sufficient grounds – even putting aside the much more lenient standard that of course applies to the production of discovery in federal court. The discovery is of such a rudimentary nature that its non-production has prevented SCO even from developing a deposition plan. The discovery:

- contains the identities of key deponents ordered by the Court over six months ago;
- contains likely admissions on the view IBM and Sequent took at the time in question on the broader scope of the contract protections to which they were subject;
- contains the only way of showing how IBM and Sequent violated the very contract theories that IBM incorrectly claims SCO does not possess (in disregard of SCO's prior filings);
- contains the only remotely efficient way of investigating non-literal copyright infringement, which would otherwise would be extremely time-consuming and needlessly burdensome; and
- even more obviously, contains the only conceivable way of defending against IBM's Ninth Counterclaim, which asks the Court to find that nothing in the entire history of its AIX program (independent of anything that later happened with Linux) violates any SCO copyright - because the discovery sought contains the only centralized repository of that entire AIX history.

IBM has offered nothing of merit to contest any of these relevance grounds. It argues that the discovery does not bear on SCO's contract claims, but in doing so merely presupposes that its arguments about those claims are correct. IBM once contended that SCO was not entitled to the discovery to defend against IBM's request for a clean copyright bill of health on all of IBM's "activities relating to Linux" on the ground that SCO had purportedly represented to the Court that it had completed the necessary investigation, but IBM dropped that contention when SCO showed it to be based on blatant distortions of the discovery record. IBM then argued, instead, that SCO should be forced use the most inefficient, time-consuming means of investigating non-literal copying, even though discovery would streamline this process; even though IBM was trying to cut short the investigation process; and even though it would take IBM only "weeks" to produce such discovery to make the process much more efficient instead of grossly inefficient. SCO submits that none of those arguments even approaches setting forth any legitimate basis for refusing to produce the discovery at issue, in this or any other federal court.

## III. IBM's Most Recent, and Successful, Effort to Delay Discovery Was a Mere Pretext, and Brings Events to the Point Requiring This Court's Intervention.

SCO respectfully submits that – as shown above, as shown in multiple filings in the summer, and as shown in SCO's expedited motion for relief filed just days before IBM's latest delay tactic – IBM's multiple efforts to put off SCO's core discovery for as long as sixteen months, even in the face of Court orders, had threatened to arrogate to IBM control over these proceedings. Without anything more, these efforts placed any fair proceeding – a proceeding designed to be decided on the merits – in peril. But IBM's new and additional successful effort to obtain still further delay last week was even more egregious and even less excusable, and its impact, layered on top of all that had gone before, is not sustainable.

On August 19, SCO submitted a supplemental memorandum in support of its pending request that the Court order IBM to produce early versions of the AIX and Dynix computer operating systems. In the supplemental memorandum, SCO demonstrated that even aside from the grounds SCO had previously set forth, SCO was obviously – indeed, inescapably – entitled to that discovery in light of IBM's own Ninth Counterclaim. In that Counterclaim, IBM seeks a clean bill of health under the copyright laws for the entire development of AIX and Dynix.

IBM had contended throughout this case that there was no need for discovery of the early development of the AIX and Dynix programs' development, performed in deliberate and conceded dependence on UNIX. (Such developmental dependence was the very purpose of the license agreements at issue in this case, and IBM and others advertised this dependence). SCO's submissions showed that IBM's position was untrue on multiple grounds, including that SCO could prove certain of its contract theories (the ones IBM wrongly said SCO has not asserted, but which SCO has in fact described in pleadings) only with such early development history proof, which would show IBM's and Sequent's reliance on UNIX in developing AIX and Dynix, respectively.

The contradiction in IBM's position was even more obvious with respect to the relief IBM itself sought in its Ninth Counterclaim: a declaration that nothing in the entire history of the development of AIX violated any SCO copyright, beginning from the very inception of its deliberate and conceded dependence on UNIX up until the present. The Counterclaim by its own terms had nothing to do with Linux. It was therefore the most acute form of contradiction for IBM to ask the Court to deem the entire history of the AIX program free from copyright infringement, but at the same time to withhold the repository of that entire AIX history. SCO

made that point in its August 19 memorandum, supplying yet another independently sufficient ground on which IBM would have to produce the discovery it had held back.

In its supplemental brief, SCO provided an illustration of the prejudice to SCO if IBM did not produce that material. SCO presented e-mails that SCO happened to possess by the fortuities of the timing of production of other document productions (and other fortuities – such as the fact that the information SCO uncovered had been memorialized in e-mails at all). Sifting through the mountains of disorganized documents IBM is known for producing – in contrast to the organized repositories of code and notes in electronic form that it has vehemently held back for over a year – SCO was able to discover an apparent scheme by IBM to misappropriate certain exceptionally valuable SCO rights.

Even then, SCO raised the e-mails only as illustrative ancillary points to note the dangers of relying on haphazard and fortuitous forms of discovery when much more efficient and reliable forms were available and were in fact specifically placed in readily-searchable storage facilities to ensure their ready access. The dangers of relying exclusively on haphazard fortuities, when rigorous records were kept, would make no sense even if this were not primarily a software development case, which it is, and even if there were not multiple other grounds for seeking the same discovery, which there are.

The hearing on SCO's supplemental discovery memorandum (and other memoranda in which SCO sought discovery relief) was scheduled for September 14. IBM did not want the hearing to occur – especially not before the hearing scheduled for September 15 on IBM's motion for summary judgment on its Tenth Counterclaim. In July, IBM been adamant that it would not agree to permit the hearing to take place until after this Court heard the arguments on IBM's Tenth Counterclaim. When SCO agreed to accommodate that request by moving back to

the Court's proposed summary judgment hearing date in early August, IBM rejected that proposal, opting for a September 15 date. IBM then rejected numerous earlier dates for the Magistrate Court hearing, after which SCO, in an accommodation to IBM's counsel's schedule, agreed to a hearing date on September 14.

After thus succeeding in delaying the Magistrate Court hearing for many weeks, IBM filed, just last Wednesday (and less than a week before the scheduled Magistrate Judge hearing), an ex parte motion seeking to continue that hearing. IBM attempted to justify its request based on its purported need for time to respond to the supplemental memorandum that SCO had filed in support of one of its two pending discovery motions. But, as SCO explained in the opposition brief it filed that afternoon (and delivered to the Magistrate Judge's chambers the next morning), IBM's motion was a meritless, indeed pretextual, effort to delay further the adjudication of SCO's discovery motions, for a number of reasons.

Most critically, SCO's Supplemental Memorandum was served on August 19 – almost a month before the scheduled hearing. SCO shows above that the memorandum did not remotely raise any new factual matter or provide any possible justification for allowing IBM to push back discovery even longer – to the point where it would become useless and IBM would be able to escape review on the merits for so long that any remedy would come too late. Indeed, after SCO filed its supplemental memorandum, events unfolded as follows:

- On August 25, when IBM opposed SCO's motion for leave to submit this Supplemental Memorandum, IBM again did not assert that it needed additional time, for any reason, to respond. Nor did IBM claim any need to secure affidavits or any other factual material.
- IBM's sole response in its opposition brief was that out of the numerous e-mails that SCO had filed under seal with its Supplemental Memorandum, two such e-mails had to be returned on the purported basis that they were privileged.

- SCO has never contested IBM's right to seek such return without first litigating the issue of whether the documents had been inadvertently produced. In response to IBM's submission, SCO stated that it would not hold back the return of the two e-mails on any such ground, but that the other documents cited in SCO's supplemental memorandum were more than sufficient to illustrate its point about its need for systematic, as opposed to haphazard, document discovery.

- Critically, SCO also explained that IBM had been unwilling to provide even the minimal information about the two e-mails that would have been required for IBM to place those documents on a privilege log in the first instance. IBM declined to provide such information in the first instance, and has since refused to do so in the face of repeated requests.[1]

- Rather than raising any claimed need for additional time or factual material when it had ample time to respond to SCO's supplemental memorandum, IBM waited several weeks until the Magistrate Judge granted SCO's motion for leave to file that brief and then seized on that opportunity to seek a delay in the long-scheduled discovery conference.

Nevertheless, when IBM submitted its ex parte motion to further delay the discovery hearing, it argued – for the first time, and without any substantiation – that SCO's original memorandum and reply memorandum had raised "a number of new arguments and issues to which IBM has not been permitted to respond" and that "SCO's filings suggest that IBM must secure declarations to address the new issues raised in SCO's papers." IBM Ex Parte Motion at 2.

SCO raised the foregoing points in its brief in opposition to IBM's motion, but does not know whether the Magistrate Judge had the opportunity to review SCO's opposition brief before it granted IBM's request, postponing the hearing on both of SCO's pending motions for more than a month, to October 19.[2] SCO respectfully submits that its request in its reply brief that

---

[1] Indeed, although SCO has pointed out this deficiency to IBM in both SCO's reply brief to IBM's papers as well as in a letter to IBM's counsel, IBM still has not substantiated in any way the basis for its belated privilege claim.

[2] Given its dire need to proceed with the pending discovery motions, upon receiving the Magistrate's Order, SCO offered to withdraw its supplemental memorandum without prejudice so that the two pending motions could be heard on the previously-scheduled date, but the Magistrate Judge declined to reconsider her Order.

IBM produce information sufficient to justify its claim of privilege did not raise new issues, and that IBM's tactical delay in even raising that argument was a pretext for obtaining more of the very delay it has long imposed in this case.

Accordingly, SCO requests that the Court set a scheduling conference at its earliest convenience, so that the Court can assist the parties in reaching a reasonable solution to the discovery problems in this case. SCO will be prepared to address these issues at the hearing currently scheduled before the Court on September 15.

## CONCLUSION

For all of the above reasons, SCO respectfully requests that the Court grant its ex parte motion to hold a scheduling conference at the Court's earliest possible convenience.

DATED this 13th day of September, 2004.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver, Esq. (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF SCO'S EX PARTE EMERGENCY MOTION FOR A SCHEDULING CONFERENCE to be hand-delivered this 13 day of September, 2004, to the following:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004

mailed by U.S. Mail, first class postage prepaid, to the following:

Evan R. Chesler, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604