SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*



FILED

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE MATERIALS SUBMITTED BY SCO IN OPPOSITION TO IBM'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Civil No. 2:03CV-0294 DAK |
| Defendant/Counterclaim-Plaintiff. | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |



Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this Reply Memorandum in Support of its Motion to Strike Materials Submitted by SCO in Opposition to IBM's Cross-Motion for Partial Summary Judgment.

## Preliminary Statement

In response to IBM's motion to strike certain incompetent and inadmissible materials that SCO had submitted in support of its opposition to IBM's cross-motion for partial summary judgment on its Tenth Counterclaim, SCO concedes that the Declarations of Chris Sontag, Sandeep Gupta, and John Harrop were not submitted for the purpose of attempting to show that a genuine issue of material fact exists that would preclude summary judgment.[1]  Rather, SCO now insists, these declarations were submitted only "for a very narrow purpose:  to provide the Court with Rule 56(f) facts" (SCO Opp'n at 1), and were not intended by SCO to oppose IBM's motion "on the merits".  (Id. at 30.)[2]  In light of SCO's admission, then, the Court should not consider any of the statements in the Sontag, Gupta, or Harrop Declarations (or any portions of SCO's opposition to IBM's summary judgment motion that cite such testimony) in deciding whether a genuine issue of material fact exists with respect to IBM's motion.

Even with respect to SCO's 56(f) application, however, the declarations submitted by SCO remain inadmissible, for the reasons set forth in IBM's opening brief.  Nothing in SCO's opposition brief or in any of the "supplemental" declarations submitted therewith alters the fact

---

[1]  SCO spends half of its opposition to IBM's motion to strike the Declarations of Chris Sontag, Sandeep Gupta, and John Harrop (SCO Opp'n at 1-13) simply reviewing and repeating the statements contained in those Declarations.  SCO's lengthy description of the Declarations, however, does not make them any more admissible.

[2]  Indeed, SCO specifically states Mr. Gupta's declaration "was not [offered] to show IBM's copyright infringement of SCO's protected UNIX code" (SCO Opp'n at 31)—i.e., not offered to rebut IBM's showing in its moving papers that there is no genuine issue of material fact that IBM's Linux activities do not infringe SCO's alleged copyrights.  SCO thus admits that its prior contention that the facts set forth in Mr. Gupta's declaration "show copying of material from UNIX into Linux" and "are themselves sufficient to create genuine issues of material fact" is wrong.  (SCO Opp'n to IBM's Cross-Motion for Partial Summary Judgment at 84-85.)

2

that the testimony of Messrs. Gupta, Sontag, and Harrop is not based on personal knowledge and contains improper opinion testimony and legal argument. Accordingly, the Court should strike the Gupta and Sontag Declarations and portions of the Harrop Declaration (and each of their Supplemental Declarations) and decline to consider them in ruling on IBM's cross-motion for summary judgment or on SCO's Rule 56(f) application.

In addition, SCO fails adequately to explain why it should be permitted to rely on hearsay statements made in certain news articles attached to the Harrop Declaration. Those materials should likewise be stricken.

**Argument**

**I.      The Court Should Strike SCO's Declarations Because SCO Still Cannot Show That Its Declarants Have Personal Knowledge.**

SCO contends that the Sontag, Gupta, and Harrop Declarations are based on personal knowledge because the declarants "describe[ ] facts which they observed during their education, their careers or the conduct of this case". (SCO Opp'n at 13.) However, other than simply asserting that these individuals have personal knowledge, or claiming (incorrectly) that the declarants may be deemed by this Court to have acquired personal knowledge (incredibly, by reading documents discovered during this litigation), SCO fails to show that the testimony is based in any way on the "perception" of these witnesses, much less that it is "rationally based" on their perception, as Rule 701 of the Federal Rules of Evidence requires.

First, Messrs. Sontag, Gupta, and Harrop's "participation" in this litigation and their review of documents discovered during the course of the litigation, including documents produced by IBM, is insufficient to establish that the witnesses possess personal knowledge of the facts contained in their declarations. Contrary to SCO's assertion, it is well-established that testimony based simply on a review of documents is not made on "personal knowledge" and is therefore inadmissible. See, e.g., Stanolind Oil & Gas Co. v. Sellers, 174 F.2d 948, 956-57 (10th Cir. 1949) (reversing district court decision allowing testimony of fact witness where the witness

"had no knowledge of the field until after this litigation began and then such as he learned, he learned in retrospect"); Foster v. Alliedsignal, Inc., 98 F. Supp. 2d 1261, 1265 (D. Kan. 2000), rev'd on other grounds, 293 F.3d 1187 (D. Kan. 2002) (striking plaintiff's attorney's "affidavit that the telephone log shows that '[plaintiff] called defendant at (913) 842-0406, two times on December 12, 1995'" because attorney "ha[d] no personal knowledge regarding [the underlying fact of] whether plaintiff telephoned defendant on that day" and "ha[d] no personal knowledge of any of the information contained [within the telephone log], the [log's] source, or its authenticity").[3]

SCO's arguments that Mr. Sontag, a SCO officer, has personal knowledge sufficient to offer sworn testimony about the workings of IBM's internal CMVC system "based upon information he read in IBM documents describing CMVC" in the course of this litigation (SCO Opp'n at 15), or that Mr. Harrop, SCO's outside counsel, has "personal knowledge" sufficient to testify about the history and current development process of Linux, and about IBM's contractual rights and obligations, because "Mr. Harrop is familiar with documents in this case" (SCO Opp'n at 18)—is counter to basic rules of evidence. Were SCO's theory of "personal knowledge" correct, there would never be any need for first-hand witnesses to testify at any trial; the attorneys or other designated representatives for each side could simply review and familiarize themselves with documents produced during the case, and then testify, under oath, and with

---

[3] See also In re M. Silverman Laces, Inc., No. 01 Civ. 6209, 2002 WL 31412465, at *3 (S.D.N.Y. Oct. 24, 2002) (holding that an "attorney had no personal knowledge [sufficient to submit a declaration where] . . . he was not involved in any of the underlying transactions [and] his knowledge was based solely on information he gained from reviewing documents and interviewing or deposing witnesses in the course of litigating this action") (attached hereto as Ex. A); Rivera v. Levitt, 88 F. Supp. 2d 1132, 1142 n.4 (D. Colo. 2000) (striking plaintiff's affidavit that "he ha[d] personal knowledge of other non-Hispanic SEC attorneys who were disciplined less severely than he for the same work rule violations" where the basis for his alleged personal knowledge was his review of "monthly reports" and "letters"); Denmon v. Runyon, Civ. A. No. 92-2144, 1993 WL 441970, at *2 (D. Kan. Oct. 25, 1993) (striking affidavit on summary judgment where the statements in the affidavit were "based on a review of records") (attached hereto as Ex. B).

"personal knowledge", as to the "facts" at issue in the litigation.[4] That plainly does not make any sense.

Second, SCO's reliance on the "education" and "career" experience of the declarants to support their alleged "personal knowledge" is misplaced. SCO argues, for example, that Mr. Gupta has "personal knowledge" sufficient to allow him to offer the opinions set forth in his declaration by virtue of "his education, career, and participation in this case". (SCO Opp'n at 16.) SCO further claims that Mr. Gupta's personal knowledge is shown by his alleged "analy[ses] [of] both the UNIX System V source code and portions of the Linux source code." (Id. at 17.) Of course, far from demonstrating "personal knowledge," SCO simply borrows the standards that are relevant to determining whether a declarant is qualified to offer expert opinion testimony (and SCO insists that none of its three declarants is offering expert testimony).

---

[4] SCO's cases in support of its argument that documents can provide the basis for personal knowledge are unavailing. As SCO readily admits, the court in Sitts v. United States, 811 F.2d 736 (2d Cir. 1987), held that an attorney's personal knowledge in an affidavit could be based on documentary evidence, but only as to procedural facts in a case and not to substantive facts. (SCO Opp'n at 19, citing Sitts, 811 F.2d at 742.) Mr. Harrop's declaration does not concern solely procedural facts in this case, however, but rather substantive facts about which Harrop has no personal knowledge. SCO's reliance on United States v. Letscher, 83 F. Supp. 2d 367 (S.D.N.Y. 1999), fails for the same reason. The attorney affidavit admitted in Letscher "set forth the procedural history of th[e] case", id. at 381, and not substantive facts. In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig., 870 F. Supp. 1293, 1304 (E.D. Pa. 1992), is also inapposite. In that case, the declarant was found to have personal knowledge of his own company's historical policies and practices where he had reviewed the company's corporate documents and discussed the events with other senior executives at the company during the course of his employment. That is far different from the instant situation, where Mr. Harrop, a SCO attorney who joined SCO's legal team nine months after this litigation began, purports to have acquired personal knowledge of a variety of topics such as the development of Linux and the difficulties of software code comparison solely through his "review of pleadings, discovery filings and public articles" related to this litigation. Similarly, Mr. Sontag, a SCO executive, purports to have acquired personal knowledge of IBM's internal software control through his review of several documents discovered during litigation. SCO's final case, In re: Real Estate Assocs. Limited Partnership Litig., No. Civ. 98-7035, 2002 WL 31027557, at *1 (C.D. Cal. Aug. 29, 2002), is a 2-page unpublished opinion from the Central District of California that is not controlling and lacks any detail concerning the nature of the affidavit challenged in that case.

Finally, the Supplemental Declarations of Messrs. Sontag, Gupta, and Harrop do not cure the declarants' lack of personal knowledge. Aside from bare assertions that the original Declarations are based on personal knowledge, the Supplemental Declarations do little to show that the declarants in fact have the requisite personal knowledge. Rather, they merely confirm that the declarants' testimony is based, in many cases, only on second-hand and hearsay knowledge and on a review of certain documents produced in this litigation. For example, in testifying as to the alleged fact that two particular IBM employees had access to UNIX code, (Gupta Decl. ¶¶ 24-29, 48-49), Mr. Gupta testifies that his statements were "based on documents that were compiled by members of the SCO team and which I read and reviewed". (Gupta Supp. Decl. ¶ 28.) Mr. Sontag's Supplemental Declaration likewise states that he "ha[s] read portions of IBM documents about its CMVC product" and thus somehow acquired personal knowledge of CMVC that way. (Sontag Supp. Decl. ¶ 12.) Similarly, in a vain attempt to establish his personal knowledge of the facts contained within various hearsay news articles, Mr. Harrop states that he "reviewed . . . all . . . public articles that are cited, quoted or referred to in [his] July 9 Declaration." (Harrop Supp. Decl. ¶ 7.) As discussed above, such a review of documents undertaken in the midst of litigation is insufficient to create personal knowledge.

## II.    The Paragraphs Of The Harrop Declaration That Are Impermissible Legal Argument Should Be Stricken.

SCO also makes no real effort in its brief to oppose IBM's contention that certain paragraphs in the Harrop Declaration, ¶¶ 5-9, 11-24, 27, 29-30, 36, 39-40, 47, 62, 67, 69 and 76-90, should be stricken as improper legal argument. The closest SCO comes to a response is its oft-repeated conclusory statement that Mr. Harrop's Declaration is based on personal knowledge, and the claim in Mr. Harrop's Supplemental Declaration that he has "personal knowledge of the facts" in at least some of those paragraphs. (Harrop Supp. Decl. ¶¶ 8-9.) Whether or not Mr. Harrop has personal knowledge of facts allegedly contained in the offending paragraphs (and it is plain that he does not), however, is irrelevant to whether such paragraphs contain improper legal

6

argument (which they do).  Accordingly, those paragraphs of the Harrop Declaration that contain improper legal argument should be stricken.  See Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir. 1985) (holding that "[b]ecause legal argumentation is an expression of legal opinion and is not a recitation of 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.").[5]

### III.    None Of The Declarants Purports To Offer Expert Opinion Testimony.

As SCO expressly concedes that it has not offered any of the declarants as experts providing expert opinion testimony (SCO Opp'n at 30), there is no basis for the Court to consider any of the Declarations on this ground either.[6]  Since Messrs. Gupta, Sontag, and Harrop cannot offer such expert opinion testimony as lay witnesses either[7], the expert opinion testimony in the Gupta and Sontag Declarations (as well as those portions of the Harrop Declaration that rely on those opinions) should therefore be stricken.[8]

---

[5] See also American Airlines, Inc. v. Platinum World Travel, 717 F. Supp. 1454, 1456 n.1 (D. Utah 1989); Safetech Int'l, Inc. v. Air Prods. And Controls Inc., No. 02-2216, 2004 U.S. Dist. LEXIS 2173, at *7 (D. Kan. Feb. 3, 2004) (attached to IBM's Memorandum in Support of Its Motion to Strike, Exhibit B).

[6] SCO also does not make any effort to correct Mr. Gupta's flawed analysis of substantial similarity, instead conceding that Mr. Gupta's declaration was not offered "to show IBM's copyright infringement of SCO's protected UNIX code".  (SCO Opp'n at 31.)

[7] While a lay witness may offer opinion testimony if such opinions are "rationally based on the perception of the witness", Fed. R. Evid. 701 (emphasis added), it is clear that, contrary to SCO's contention, the opinions in Mr. Gupta's and Mr. Sontag's declarations regarding the process, techniques, and alleged results of comparing computer source code are the province of expert, not lay, testimony.  See Lifewise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004) (stating that "[w]hen the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge'", a witness must be qualified as an expert under Rule 702 (quoting Fed. R. Evid. 702)); Hilgraeve Corp. v. McAfee Assocs., Inc., 70 F. Supp. 2d 738, 755 (E.D. Mich. 1999) (holding that the field of computer science "is precisely the type of 'specialized knowledge' governed by Rule 702").  None of the cases SCO cites for the proposition that lay opinions are sometimes permitted concerned a comparison of computer code.

[8] SCO claims that none of its declarants needs to be qualified as an expert witness because none of their declarations contains opinion testimony.  SCO's description of the clear opinion

**IV.    The Court Should Exclude Certain Of The Documents Submitted By SCO In
       Opposition To IBM's Motion For Partial Summary Judgment.**

IBM moved to strike Exhibits 38, 41, 52, 56, 57, 58, 59, 64 to SCO's brief in opposition

to IBM's summary judgment motion because they are newspaper articles that were offered by

SCO for the truth of the matters asserted.[9] This is classic inadmissible hearsay that should not be

considered by the Court. (IBM Mem. at 15.) In response to IBM's motion, SCO advances two

arguments. Both are untenable.

First, Mr. Harrop contends that "[i]t has been common practice in the pleadings in this

case to present newspaper, magazine, and Internet articles to the Court". (Harrop Supp. Decl. ¶

12.) This argument borders on the frivolous. IBM has never asserted that statements in

newspaper, magazine and Internet articles may never properly be relied upon. To the contrary,

such statements may properly be relied upon in any number of circumstances—for instance, if

they are not being relied upon for the truth of the matters asserted therein, if they constitute

admissions by a party opponent, or if they are subject to any of the numerous exceptions to the

---

testimony of its declarants as simple "fact testimony" strains credibility. For example, SCO
insists that Mr. Sontag's statements that "us[ing] an automated process to perform a complete
comparison of all of the source code in UNIX and Linux . . . is not feasible" and that manual
review "could take on the order of 25,000 man-years" are not opinions, but are facts. (Sontag
Decl. ¶¶ 10, 14.) If statements such as these are not opinions, it is hard to imagine what could
ever be considered an opinion in SCO's view. SCO also takes issue with IBM's citation of the
following statement by Mr. Gupta as evidence that Mr. Gupta offers inadmissible opinion
testimony in his declaration: "In this declaration, I explain why I believe that several routines
and several groupings of code for which SCO has copyright protection were copied into the
Linux operating system". (Gupta Decl. ¶ 3.) SCO argues that this is a statement of fact because
Mr. Gupta is merely summarizing what is stated in his declaration. SCO is again wrong. Mr.
Gupta is plainly stating his "belie[f]", in other words, his opinion, that code that SCO has
copyrighted has been copied into Linux, and his entire declaration is addressed to substantiating
his opinion.

[9] IBM also moved to strike, as extraneous documents, 11 exhibits (Exs. 24, 25A, 33, 36, 42, 50,
51, 61, 63, 65, and S-3) that were attached to SCO's opposition to IBM's summary judgment
motion but that were not referenced anywhere in SCO's brief or in any of the witness
declarations submitted by SCO. As SCO offers no response to IBM's request, these materials
should also be stricken.

hearsay rule set forth in the Federal Rules of Evidence. In this instance, however, Mr. Harrop

seeks to rely on the offending articles solely for the truth of matters asserted therein (and he does

not contend otherwise), and that is not permitted.

Second, SCO argues that a party opposing summary judgment is entitled to relaxed

evidentiary standards and may disregard the prohibition against presenting hearsay newspaper

articles in opposing summary judgment. (SCO Opp'n at 22.) SCO is wrong. Rule 56(e) of the

Federal Rules of Civil Procedure specifically provides that affidavits submitted in opposition to a

motion for summary judgment "shall set forth such facts as would be admissible in evidence".

Fed. R. Civ. P. 56(e) (emphasis added). Courts in this circuit have therefore routinely rejected

SCO's argument and stricken hearsay articles submitted in opposition to summary judgment.

See Molina v. Spanos, 208 F.3d 226 (Table) (10th Cir. 1999) (rejecting plaintiff's appeal of "the

district court's determination that it would not consider a newspaper article submitted by

plaintiff" in opposition to summary judgment because "[t]he article constitutes inadmissible

hearsay"); Johnson v. Housing Auth., 887 F. Supp. 1440, 1446 (E.D. Okla. 1995) (holding that

"newspaper articles" cited in opposition to summary judgment were "inadmissible hearsay");

Good v. Bd. of County Comm'rs, No. 01-4067, __ F. Supp. 2d __, 2004 WL 1859729, at *8 (D.

Kan. May 19, 2004) (holding that "Plaintiff['s] offer . . . [of newspaper] articles to prove the

information contained in them" submitted in opposition to summary judgment was "hearsay and

may not be considered on a motion for summary judgment") (attached hereto as Ex. C); Miles v.

Ramsey, 31 F. Supp. 2d 869, 876 (D. Colo. 1998) (holding that the "Court may not consider this

evidence" of statements made in a newspaper submitted in opposition to summary judgment

because "the articles are inadmissible hearsay").[10]

---

[10]   The cases SCO cites in support of its argument that hearsay articles may be submitted in
opposition to summary judgment are unavailing. As an initial matter, SCO attempts to rewrite
the Supreme Court's decision in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), contending that
in Celotex, "[t]he Supreme Court allowed an opponent to submit three letters which constituted

**Conclusion**

For the foregoing reasons, IBM respectfully requests that the Court strike the materials submitted by SCO in opposition to IBM's cross-motion for partial summary judgment, as well as the Supplemental Declarations submitted by Messrs. Gupta, Harrop, and Sontag, dated September 7, 2004, and not consider them in ruling on IBM's Cross-Motion for Partial Summary Judgment on its Tenth Counterclaim.

DATED this 13th day of September, 2004.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

---

hearsay in opposition to a motion for summary judgment". (SCO Opp'n at 22 n.3, citing Celotex, 477 U.S. at 320.) A careful review of Celotex, however, reveals that SCO has invented this holding whole-cloth. In Celotex, the Supreme Court merely recited the procedural history of the case, noting that the respondent, before the district court, had submitted three documents in opposition to summary judgment to which the petitioner had objected on the grounds that they contained inadmissible hearsay. The Supreme Court spoke no further on these documents and certainly did not rule on whether the documents did constitute hearsay, or whether they were properly admitted. The two additional cases cited by SCO are decisions by the Eleventh Circuit, Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013 (11th Cir. 1987), and Church of Scientology Flag Service Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1530-31 (11th Cir. 1993). To the extent that these cases may support SCO's argument, they are plainly contrary to the law of this circuit. Even within the Eleventh Circuit, judges have criticized the circuit's position. See Offshore Aviation, 831 F.2d at 1016-1017 (Edmondson, J., concurring); Int'l Ship Repair & Marine Servs., Inc., v. St. Paul Fire & Ins. Co., 906 F. Supp. 645, 648-49 (M.D. Fla. 1995).

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000
*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13 day of September, 2004, a true and correct copy of the foregoing was hand delivered to the following:

>       Brent O. Hatch
>       Mark F. James
>       HATCH, JAMES & DODGE, P.C.
>       10 West Broadway, Suite 400
>       Salt Lake City, Utah 84101

and was sent by U.S. Mail, postage prepaid, to the following:

>       Stephen N. Zack
>       Mark J. Heise
>       BOIES, SCHILLER & FLEXNER LLP
>       100 Southeast Second Street, Suite 2800
>       Miami, Florida 33131

>       Robert Silver
>       BOIES, SCHILLER & FLEXNER LLP
>       333 Main Street
>       Armonk, New York 10504

Amy F. Sorenson

SORENSA\SLC\314826.1

12

A

Westlaw.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
**(Cite as: 2002 WL 31412465 (S.D.N.Y.))**

Page 1

C

Only the Westlaw citation is currently available.


United States District Court,
S.D. New York.

In re M. SILVERMAN LACES, INC., Debtor.
Carlos CUEVAS, as Trustee for the Estate of M.
Silverman Laces, Inc.,
Appellant,
v.
HUDSON UNITED BANK, Appellee.

**No. 01 Civ.6209 (DC).**

Oct. 24, 2002.


After creditors filed involuntary bankruptcy
petition against debtor, trustee in bankruptcy
commenced adversary proceeding against one
creditor. The United States Bankruptcy Court for
the Southern District of New York, Arthur J.
Gonzalez, J., granted summary judgment,
dismissing adversary proceeding. Trustee appealed.
The District Court, Chin, J., held that: (1) summary
judgment affidavit submitted by attorney for trustee
was insufficient to support adversary proceeding;
(2) debtor's grant to creditor of security interest in
debtor's inventory was not voidable preference or
fraudulent transfer; and (3) trustee lacked standing
to assert adversary claim against creditor for aiding
and abetting breach of fiduciary duties owed by
debtor's owners to its other creditors.

Affirmed.


**[1] Bankruptcy** ⊂═2164.1

51k2164.1 Most Cited Cases

Summary judgment affidavit submitted by attorney
for trustee in bankruptcy was insufficient to support

adversary proceeding against creditor to recover
funds transferred by debtor to creditor, where
attorney had no personal knowledge and was not
involved in any of the underlying transactions, and
statements made in affidavit were based solely upon
information attorney obtained through review of
depositions and documents, and consultations with
trustee's experts.

**[2] Bankruptcy** ⊂═2608(1)
51k2608(1) Most Cited Cases

Debtor's grant to creditor of security interest in
debtor's inventory was not "voidable preference,"
for purposes of adversary proceeding against
creditor brought by trustee in bankruptcy, where
transfer was not made within 90 days of filing of
bankruptcy petition, and creditor was not insider of
the debtor at time of such transfer, absent any
evidence that creditor was controlled by debtor at
time of transfer or that creditor had any other
relationship with debtor other than their
creditor-debtor relationship. 11 U.S.C.A. §
547(b)(4)(A).

**[3] Bankruptcy** ⊂═2650(3)
51k2650(3) Most Cited Cases

Debtor's grant to creditor of security interest in
debtor's inventory made within one year before date
of filing of bankruptcy petition was not "fraudulent
transfer" that could be avoided by trustee in
bankruptcy in adversary proceeding against
creditor; debtor did not receive less than reasonably
equivalent value in exchange for security interest
given to creditor, as debtor's antecedent debt was
extended and collateralized at time when debtor was
in default and creditor could have demanded
immediate payment, but agreed to forbear from
pursuing its remedies, in exchange for security
interest. 11 U.S.C. § 541(a)(1)(B)(i).

**[4] Bankruptcy** ⊂═2154.1
51k2154.1 Most Cited Cases

Trustee in bankruptcy lacked standing to assert

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
(Cite as: 2002 WL 31412465 (S.D.N.Y.))

adversary claim against creditor for aiding and abetting a breach of fiduciary obligations owed to corporate debtor's other creditors by the owners of the corporate debtors, on behalf of other creditors.
Ruskin, Moscou, Evans & Faltischek, P.C., By: James D. Glass, Lauren M. Gray, Matthew V. Sparo, Uniondale, NY, for Appellant.

Forman Holt & Eliades LLC, By: Joseph M. Cerra, Rochelle Park, NJ, for Appellee.

*MEMORANDUM DECISION*

CHIN, J.

*1 This is an appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Arthur J. Gonzalez, Bankruptcy Judge) granting summary judgment dismissing the complaint filed in an adversary proceeding by appellant Carlos Cuevas, the Trustee for the Estate of the debtor M. Silverman Laces, Inc. ("Silverman"), against appellee Hudson United Bank ("HUB"). For the reasons that follow, the order is affirmed.

*STATEMENT OF THE CASE*
A. *The Facts*

The following facts, except as otherwise stated, are not in dispute:

Silverman entered into a banking relationship with HUB in 1992. Initially, HUB extended Silverman a secured commercial loan of $350,000. The loan was secured by a security interest in certain of Silverman's assets. (D30 at ¶ 6). [FN1]

> FN1. References to "D-" are to the documents included in the Designation of the Record on Appeal.

The banking relationship continued through 1996, as new loans were extended and the old loans were repaid. In 1993, HUB issued a letter of credit on Silverman's behalf in favor of Silverman's landlord. HUB agreed to pay the landlord if Silverman defaulted in its lease obligations, and Silverman

agreed to repay HUB for any funds it advanced to the landlord. (*Id.* at ¶ 8). At some point, Achille Gaetano and Leonard Edelson, two principals of Silverman, executed guarantees of Silverman's obligations to HUB. (*Id.* at ¶¶ 9-11).

On January 1, 1997, a term loan for $300,000, which had been guaranteed by Gaetano and Edelson, became due. Silverman failed to make the payment and therefore technically was in default. Because Silverman's obligations to HUB were cross-collateralized, all its obligations to HUB were subject to default at that time. (*Id.* at ¶ 12).

On January 27, 1997, HUB agreed to and did make new loans to Silverman, retroactive to January 1, 1997, and all its obligations to HUB at that point totaled approximately $591,000. HUB also agreed to forbear on all remedies for default. In exchange, Silverman gave HUB a lien on its inventory securing all obligations. At the time, Silverman's inventory was worth approximately $1.2 million. ( *Id.* at ¶ 13; D16 at Ex. H, p. 00661).

Michael J. Vessa, a Vice President at HUB who was the officer in charge of Silverman's loans throughout the time in question, submitted an affidavit in the Bankruptcy Court explaining HUB's decision to extend new loans to Silverman. When Silverman sought extensions of its obligations in January 1997, Vessa reviewed Silverman's financials. He became "discouraged" because of the lack of improvement in Silverman's revenue and income. At that juncture, HUB could have insisted on full payment of all Silverman's obligations. Vessa believed, however, that if HUB did not extend the loans, Silverman would be able to obtain the financing from some other lender because Silverman had substantial assets, including its inventory, and Edelson--a man of "substantial personal wealth"--was prepared to guarantee new financing. Hence, Vessa recommended to his superiors that Silverman's loans be renewed, on three conditions: the security previously granted HUB would remain in place; Edelson would guarantee the new financing; and the debt would be secured by Silverman's inventory. Silverman agreed to these terms and thus HUB provided the new financing. (D30 at ¶¶ 14-18).

*2 On February 27, 1997, Silverman advised HUB

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
(Cite as: 2002 WL 31412465 (S.D.N.Y.))

that it was considering filing in bankruptcy. On May 14, 1997, certain of Silverman's creditors filed an involuntary bankruptcy petition against Silverman. ( *Id.* at ¶¶ 3,23).

### B. *Proceedings Below*

The Trustee commenced an adversary proceeding against HUB on June 18, 1999. The complaint asserted three principal causes of action: (1) Silverman's transfer of a security interest in its inventory to HUB on January 27, 1997 constituted a voidable preference under § 547(b) of the Bankruptcy Code (the "Code") (count one); (2) Silverman's transfer of a security interest in its inventory constituted a fraudulent transfer to HUB under §§ 544 and 548(a)(1) of the Code (count two); and (3) HUB aided and abetted a breach by Silverman's principals of fiduciary duties owed to Silverman's creditors (count five). The complaint asserted two other claims, for an accounting with respect to all transfers made by Silverman to HUB (count three) and for the dollar value of the transfers pursuant to § 550 of the Code (count four), but these claims were contingent on the Trustee's success on one or more of the three principal claims. (D1 at ¶¶ 16-41).

HUB made a first motion for summary judgment on March 13, 2000. The Bankruptcy Court denied the motion on May 9, 2000, largely on legal grounds: it rejected HUB's argument that all the substantive issues concerning the validity of its lien had been resolved by a stipulation that the parties had entered into in connection with the lifting of the automatic stay. Judge Gonzalez merely held that the decision to lift the stay did not control the issues raised in the adversary proceeding. (D17 at 4-13). After denying HUB's motion, Judge Gonzalez noted that although the Trustee had not moved for summary judgment, the Trustee had suggested that summary judgment could be granted in his favor. Judge Gonzalez rejected the suggestion, holding that "there are factual issues that preclude the issuance of Summary Judgment in favor of the Trustee." (*Id.* at 13).

On May 8, 2001, after discovery, HUB filed a second motion for summary judgment. Like the first motion, HUB's second motion for summary judgment was supported by the certification, under

penalty of perjury, of Vessa, the bank officer who was in charge of Silverman's loans at HUB. (D30). In his opposition papers to the motion, the Trustee submitted only one affidavit--the affidavit of James D. Glass, Esq., a member of the law firm Bondy & Schloss, then-counsel to the Trustee. (D31). Although the ten-page affidavit was not based on personal knowledge, it purported to set forth the facts as they happened from 1992 through 1997. Certain documents were apparently annexed to the affidavit and there is one reference to a deposition, but no transcripts or excerpts of any deposition testimony are provided. (*Id.*). In the affidavit, Glass asked not only that HUB's motion for summary judgment be denied, but that summary judgment be granted in favor of the Trustee against HUB. (*Id.* at p. 10).

*3 On June 7, 2001, the Bankruptcy Court granted HUB's motion and denied the Trustee's request for summary judgment. Judge Gonzalez read his decision into the record. First, Judge Gonzalez noted that "[a]ll of the facts presented by the Trustee are in the form of an Affidavit by the attorney for the Trustee. The affiant has no personal knowledge of the facts and has taken the statements of those who have been deposed to form the basis of his knowledge." (D38 at 9). Second, however, Judge Gonzalez concluded that, even upon considering the affidavits and all the evidence in the record, no reasonable jury could find in favor of the Trustee on any of its claims. Accordingly, he granted HUB's motion.

Later that day, the Bankruptcy Court issued an order implementing his decision and dismissing the complaint.

The Trustee filed a timely notice of appeal on June 15, 2001.

### C. *Prior Proceedings in this Court*

The Trustee did not file the record on appeal or his brief on a timely basis. Consequently I issued an order directing the Trustee to show cause why I should not dismiss the appeal. After the Trustee responded, I declined to dismiss the appeal and instead I set a schedule for the filing of a record and brief. The Trustee missed the deadlines, with no explanation. Hence, on January 2, 2002, I dismissed

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
(Cite as: 2002 WL 31412465 (S.D.N.Y.))

the appeal. The Trustee wrote a letter requesting reinstatement, but I denied the request on January 11, 2002. On January 22, 2002, the Trustee formally moved for relief pursuant to Fed.R.Civ.P. 59(e) and 60(b). By order docketed February 5, 2002, I granted the motion, vacating the judgment of dismissal and reinstating the case. Thereafter, the parties filed the record and their briefs.

*DISCUSSION*

On appeal to the district court from an order of the Bankruptcy Court granting summary judgment, the standard of review is *de novo. Fugazy Express, Inc. v. Fugazy,* 124 B.R. 426, 430 (S.D.N.Y.1991). Accordingly, I must determine whether on the record below, resolving all conflicts in the evidence and drawing all reasonable inferences in favor of the Trustee, a reasonable jury could have found for the Trustee. I consider first the sufficiency of the Trustee's evidentiary presentation and then I consider each of the Trustee's three principal claims.

A. *The Attorney's Affidavit*

[1] The Bankruptcy Court correctly noted that the Trustee's evidentiary presentation was insufficient because he submitted only an attorney's affidavit. The attorney had no personal knowledge in that he was not involved in any of the underlying transactions: his knowledge was based solely on information he gained from reviewing documents and interviewing or deposing witnesses in the course of litigating this action.

The Trustee contends that the Glass affidavit is based upon personal knowledge because it was based "solely upon personal knowledge of Mr. Glass obtained through his document review, depositions and consultation with the [Trustee]'s experts." (Appellant's Reply Br. at 15). He goes on to argue that HUB "fails to explain why the Glass Affidavit is any less probative than the Vessa Certification since both recite facts based on personal knowledge." (*Id.*).

*4 The difference is obvious. Vessa was the bank officer in charge of Silverman's loans from the beginning of the relationship. He was personally involved in the transactions as they occurred. He recommended to his superiors in January 1997 that

they extend Silverman's loans. Not only was he a witness to the transactions, he was a participant. In contrast, Glass did not become involved until after the fact, and only in his capacity as litigation counsel to the Trustee. He was not involved in 1997 in any capacity. All of his knowledge is second-hand, acquired from reviewing documents and questioning or interviewing others.

On this basis alone, the Bankruptcy Court's order must be affirmed. *See Sitts v. United States,* 811 F.2d 736, 741-42 (2d Cir.1987) ("The rule that an attorney's affidavit alone is insufficient to support a motion for summary judgment has its principal applicability when the dispositive facts as to which the moving party contends there is no genuine issue are historical facts relating to the events leading to the lawsuit, for the attorney usually lacks the requisite personal knowledge of these facts.").

B. *The Merits*

I consider the merits of the Trustee's three principal claims, based on the admissible evidence in the record.

1. *The Voidable Preference Claim*

[2] The first count of the complaint asserts a claim to set aside the grant to HUB of a security interest in Silverman's inventory as a voidable preference under § 547(b) of the Code. Subsection (b)(4) sets forth two time requirements. The first, contained in subsection (b)(4)(A), is a 90-day rule--the transfer cannot be set aside unless it was made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). Here, the security interest was granted on January 27, 1997, and the petition was not filed until May 14, 1997, more than 90 days later. Hence, subsection (b)(4)(A) is unavailable and the Trustee could only seek relief pursuant to subsection (b)(4)(B), which provides a one-year time limitation but is available only if "such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4)(A). Hence, the issue before the Bankruptcy Court was whether the Trustee had presented sufficient evidence from which a reasonable jury could find that in January 1997 HUB was an "insider" of Silverman.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
(Cite as: 2002 WL 31412465 (S.D.N.Y.))

If the debtor is a corporation, the Code defines an insider to include:

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor....

11 U.S.C. § 101(31)(B). The list is not exclusive and the issue of whether a party is an "insider" must be considered on a case-by-case basis. *See Liberty Mut. Ins. Co. v. Leroy Holding Co.,* 226 B.R. 746, 756 (N.D.N.Y.1998); *In re Acme-Dunham, Inc.,* 50 B.R. 734, 739 (D.Me.1985).

**\*5** Judge Gonzalez correctly held that the record contained no evidence from which a reasonable factfinder could conclude that HUB was in "control" of the debtor within the meaning of § 547. Indeed, the evidence showed a mere banking relationship--HUB had an ongoing banking relationship with Silverman pursuant to which HUB had loaned Silverman sums of money. HUB certainly had financial power over Silverman to the extent that Silverman owed HUB substantial sums, was in default, and was subject to the remedies that were available to HUB as creditor, but this "power" was merely a result of their creditor-debtor relationship. *See, e.g., In re Armstrong,* 231 B.R. 746, 749 (Bankr.E.D.Ark.1999) (granting summary judgment dismissing claim that bank was an "insider" and holding that "control over financial affairs may be an unavoidable circumstance attendant to many creditor-debtor relationships"); *In re Burner,* 109 B.R. 216, 226 (Bankr.W.D.Tex.1989) ("a bank's financial power over its borrower is insufficient, standing alone, to render the bank an insider"); *Friedman v. Sheila Plotsky Brokers, Inc.,* 126 B.R. 63, 70 (Bankr.App. Panel 9th Cir.1991) ("[W]hile a creditor may be in a strong bargaining position in dealing with the debtor, so long as the parties transact their business at arm's length, such circumstances do not necessarily give rise to insider status even though there was some degree of personal relationship with the debtor.").

In arguing that genuine issues of fact existed for trial, the Trustee argues that HUB controlled

Silverman because both Silverman and its principals were in debt to HUB, the latter as a consequence of their guarantees. The Trustee also argues that HUB had superior knowledge because it was aware of Silverman's negative financial condition. Finally, the Trustee points to the longstanding relationship among HUB, Silverman, and the latter's principals. All of these factors, the Trustee argues, gave HUB an advantage over Silverman's other creditors.

Even assuming these circumstances are all true, as a matter of law they are not enough. These facts still suggest nothing more than a mere creditor-debtor relationship. The Trustee has pointed to nothing that would suggest that HUB and Silverman conducted their business at anything less than arm's length or that HUB had any day-to-day control over Silverman's operations or that HUB had any "control" beyond the usual financial power that a creditor has over a debtor.

Accordingly, the Bankruptcy Court's grant of summary judgment is affirmed as to the first count of the complaint.

### 2. *The Fraudulent Conveyance Claim*

[3] The second count of the complaint seeks to set aside the transfer to HUB of the security interest in Silverman's inventory as a fraudulent transfer under §§ 544 and 548(a)(1)(B) of the Code. Section 541(a)(1)(B)(i) provides that a trustee may avoid any transfer, made within one year before the date of the filing of the petition, if the debtor "received less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 541(a)(1)(B)(i). Here, the issue is whether the record below contained evidence from which a finder of fact could reasonably conclude that Silverman received less than a "reasonably equivalent value" when it granted HUB the security interest in its inventory.

**\*6** Judge Gonzalez correctly concluded that Silverman had received reasonably equivalent value as a matter of law. First, Silverman received "value," for the Code specifically provides that the "securing of a present or antecedent debt of the debtor" is "value" for purposes of § 548. *See* 11 U.S.C. § 548(d)(2)(A); *see Anand v. National Republic Bank of Chicago,* 239 B.R. 511, 517 (N.D.Ill.1999) ("collateralization of an antecedent

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

debt confers value on the debtor"). Here, Silverman received "value" when its antecedent debt was extended and collateralized.

Second, what Silverman gave up was reasonably equivalent to what it received. Silverman was in default, and it is undisputed that as a consequence HUB could have demanded immediate payment and taken steps to collect on all Silverman's obligations. Instead, HUB waived its rights to immediately pursue its remedies and it agreed to extend Silverman's obligations. In return, Silverman gave HUB a security interest in its inventory, but this collateral was being given for the extension of the loans and HUB's agreement to forbear from pursuing its remedies. Although the inventory was worth more than twice the amount of the debt Silverman owed to HUB, HUB could recover against the inventory only to the extent of Silverman's defaulted obligations and thus any inventory beyond that would remain Silverman's property. *See Anand,* 239 B.R. at 517-18 (holding that debtor received reasonably equivalent value when bank agreed to forbear on pursuing remedies for default, waived past-due principal payment, and extended maturity date of notes in return for debtor's assignment of interest in real property as collateral to secure loans); *In re Ward,* 36 B.R. 794, 799 (D.S.D.1984) (creditor's voluntary forbearance from pursuing remedies was reasonably equivalent value in exchange for debtor's mortgage to secure antecedent debt).

The Trustee argues that when HUB extended the debt in January 1997 and took back a security interest in the inventory, HUB did not provide any "real benefit" to Silverman. (Appellant Mem. at 18). As a matter of law, that is not so. HUB could have declared Silverman in default and demanded immediate payment on all its obligations and HUB could have pursued all the remedies available to it by virtue of the default. By agreeing to forbear and to extend the loans, HUB gave Silverman "breathing room"--an opportunity to avoid default, to facilitate its rehabilitation, and to avoid bankruptcy. The "breathing room" turned out to be short-lived, but not because of HUB's actions. Moreover, Silverman did not give up more than it received, for if HUB foreclosed on the inventory, it would not be entitled to the value of the entire inventory. It would only be entitled to the amounts

due on the loans, and the balance of the proceeds from a sale of the inventory would revert to Silverman.

Accordingly, the Bankruptcy Court's grant of summary judgment with respect to the second count of the complaint is affirmed as well.

### 3. *The Aiding and Abetting Count*

*7 [4] Finally, the fifth count of the complaint charges HUB with aiding and abetting a breach of fiduciary obligations owed to Silverman's creditors. Although the complaint does not explicitly identify the parties purportedly aided and abetted by HUB, clearly it is alleging that HUB aided and abetted Silverman's two principals, who together owned 100% of the shares of the corporation, in breaching their obligations to Silverman's creditors. Judge Gonzalez rejected this claim as a matter of law on the ground that the Trustee lacked standing to assert such a claim. I affirm.

In *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991), the Second Circuit held that a bankruptcy trustee lacks standing to sue a third person when that person is alleged to have acted in concert with the debtor's sole decision-makers to defraud creditors. As the court held:

> [A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.... [W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.

*Id.* at 118. Here, the Trustee makes this precise claim--he argues that HUB acted in concert with Silverman's only shareholders and principals to defraud its creditors. Because Silverman could not itself sue HUB for aiding and abetting its own principals in a scheme to defraud, it cannot purport to assert that claim on behalf of creditors. *See Wagoner,* 944 F.2d at 118-19; *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092-94.

The grant of summary judgment therefore is affirmed as to the fifth claim as well.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31412465 (S.D.N.Y.)
**(Cite as: 2002 WL 31412465 (S.D.N.Y.))**

Page 7

*CONCLUSION*

For the foregoing reasons, the order of the Bankruptcy Court is affirmed in all respects, with costs.

SO ORDERED.

2002 WL 31412465 (S.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Attached Printing Summary Report for WHEATLEY,NATHAN 4122712**

| | |
|---|---|
| Date/Time of Request: | Monday, September 13, 2004 15:41:00 Central |
| Client Identifier: | 99999.0000 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp. |
| Lines: | 177 |
| Documents: | 1 |
| Images: | 0 |

(C) 2004. Copyright is not claimed as to any part of the original work prepared by a U.S. government officer or employee as part of that person's official duties. All rights reserved. No part of a Westlaw transmission may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred or used, in any form or by any means, except as permitted in the Westlaw Subscriber Agreement, the Additional Terms Governing Internet Access to Westlaw or by West's prior written agreement. Each reproduction of any part of a Westlaw transmission must contain notice of West's copyright as follows: "Copr. (C) 2004 West, a Thomson business. No claim to orig. U.S. govt. works." Registered in U.S. Patent and Trademark Office and used herein under license: KeyCite, Westlaw and WIN. WIN Natural Language is protected by U.S. Patent Nos. 5,265,065, 5,418,948 and 5,488,725.

Westlaw.

Not Reported in F.Supp.
1993 WL 441970 (D.Kan.)
**(Cite as: 1993 WL 441970 (D.Kan.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Marcell E. DENMON, Plaintiff,
v.
Marvin T. RUNYON, Defendant.

**Civ. A. No. 92-2144-EEO.**

Oct. 25, 1993.

M.J. Willoughby, Stinson, Mag & Fizzell, Overland Park, KS, Lisa C. Creighton, Sprint Communications Co. L.P., Law Dept., Kansas City, MO, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Civ.Div., W.D.Mo., Kansas City, MO, for defendant.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

*1 This matter is before the court on defendant Marvin Runyon's motion for summary judgment (Doc. # 108) and on plaintiff Marcell Denmon's motion to strike the declaration of David Abbott and the exhibits which were attached in support of defendant's motion for summary judgment (Doc. # 125).

NATURE OF THE CLAIM

Plaintiff Marcell Denmon, a former employee of the United States Postal Service, filed this action alleging discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. For the reasons discussed below, plaintiff's motion to strike is granted, and defendant's motion for summary judgment is denied.

JURISDICTION

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

ANALYSIS

The requirements for an affidavit submitted in support of a motion for summary judgment are set forth in Federal Rule of Civil Procedure 56(e). Rule 56(e) provides, in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers ... referred to in an affidavit shall be attached thereto or served therewith.

28 U.S.C. § 1746(2) provides that a declaration made under penalty of perjury may be submitted in lieu of an affidavit. Declarations are subject to the same requirements as affidavits for the purposes of Rule 56(e). In ruling on a motion for summary judgment, the court may only consider material that would be admissible at trial. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2721 (1983) at 40. Because the burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of material fact, the movant must demonstrate that the content of its affidavit is admissible at trial; any doubts as to the admissibility of the material submitted in support of a summary judgment must be resolved against the movant. *See Prudential Ins. Co. v. Curt Bullock Builders, Inc.,* 626 F.Supp. 159, 164 (N.D.Ill.1985); *see generally* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2738 (1983).

Plaintiff objects to the declaration of David Abbott, Postmaster of the Shawnee Mission, Kansas, Main Post Office. Mr. Abbott's declaration and the exhibits accompanying it are the only evidence defendant submits in support of his motion for summary judgment. Plaintiff contends that the declaration and exhibits are defective and should be stricken. We agree. An affidavit that does not

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 441970 (D.Kan.)
(Cite as: 1993 WL 441970 (D.Kan.))

measure up to the standards of Rule 56(e) is subject to a motion to strike. *Noblett v. General Elec. Credit Corp.,* 400 F.2d 442, 445 (10th Cir.1968), *cert. denied,* 393 U.S. 935 (1968); 6 Moore's Federal Practice ¶ 56.22[1] at 56-761.

28 U.S.C. § 1746(2) requires that an unsworn declaration be made "under penalty of perjury" and verified as "true and correct." Section 1746 provides in relevant part:

*2 Whenever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

\* \* \*

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

The last sentence of Mr. Abbott's declaration states: "I declare under penalty of perjury that the foregoing is true and correct *to the best of my knowledge.*" (Emphasis added.) Mr. Abbott's declaration, in using the qualifying language "to the best of my knowledge" substantially deviates from the specific language required by 28 U.S.C. § 1746(2). Allowing a declarant to deviate from the form specified in 28 U.S.C. § 1746(2) undermines Rule 56(e). The implication from the qualifying language used by Mr. Abbott is that the matters he declares may not be true or may not be within his personal knowledge.

Even if Mr. Abbott's declaration were not defective as to form, the declaration is nonetheless

improperly before the court. The declaration does not affirmatively demonstrate on its face that the statements asserted in paragraphs 2 through 8 and 10 through 12 are within Mr. Abbott's personal knowledge. D.Kan.Rule 206(c) requires that "[a]ll facts on which a motion or opposition is based shall be presented by affidavit [or] declaration under penalty of perjury,.... Affidavits or declarations *shall be based on personal knowledge and by a person competent to testify to the facts stated* which shall be admissible in evidence." (Emphasis added.) Statements not based on personal knowledge must be disregarded by the court. *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1367 (8th Cir.1983) (affidavit based on information and belief is insufficient); *Arkansas Best Freight Sys., Inc. v. Youngblood,* 61 F.R.D. 565, 569 (D.Ark.1974) (affidavits merely stating affiants' opinions of what various reports disclosed without a showing that these were facts based on personal knowledge were insufficient and could not be considered on summary judgment).

Statements in affidavits or declarations may not be "based on a review of records," a basis upon which Mr. Abbott purports to rely. Declaration of David Abbott, ¶ 1. In *Cummings v. Roberts,* 628 F.2d 1065 (8th Cir.1980), a prisoner filed a civil rights complaint, asserting a claim of cruel and unusual punishment against jail officials for refusing to provide him a wheelchair in his cell, thus allegedly forcing him to crawl on the floor. In reversing the district court, the Eighth Circuit held that a statement made in an affidavit of a jail superintendent was inadequate to support summary judgment because the statement was not based upon the personal knowledge of the affiant. In that affidavit, the superintendent stated "an investigation revealed" that plaintiff had been observed on numerous occasions standing and walking unassisted in his jail cell. *See also Dean Construction Co. v. Simonetta Concrete Corp.,* 37 F.R.D. 242, 245 (S.D.N.Y.1965) (affidavits submitted by Assistant U.S. Attorney in support of motion for summary judgment "on information and belief based upon the records and files in the possession of the United States Attorney for the Southern District of New York" did not meet the requirement that an affidavit be made on personal knowledge). Nor is it sufficient for an affiant or declarant to make statements based on the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 441970 (D.Kan.)
**(Cite as: 1993 WL 441970 (D.Kan.))**

allegation that he was "advised" of the fact stated. *See Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 316 (D.Md.1983) (striking a portion of an affidavit because the statement was "the product of advice from others").

**\*3** All papers referred to in an affidavit must also be sworn or certified. Fed.R.Civ.P. 56(e). Each paper, or exhibit, must be authenticated by and attached to an affidavit which meets the requirements of Federal Rule of Civil Procedure 56(e). *Nolla Morell v. Riefdohl*, 651 F.Supp. 134, 140 (D.P.R.1986) (documents filed by defendants on motion for summary judgment were inadmissible where unaccompanied by affidavits attesting to their validity). *See also Cummings v. Roberts*, 628 F.2d 1065 (8th Cir.1980) (on motion for summary judgment, district court properly did not consider 17 pages of medical records that were attached to an affidavit but not certified as required by Federal Rule of Civil Procedure 56(e)). Further, the affiant should be the person through whom the exhibits could be admitted into evidence. *Nolla Morell v. Riefdohl*, 651 F.Supp. at 140.

Defendant's Exhibits A through J, submitted with defendant's summary judgment motion, are likewise defective as to form. Each of these exhibits should have had an affidavit attached which properly authenticated the exhibit and which met the requirements of Federal Rule of Civil Procedure 56(e). The affiant for each exhibit should have been the person through whom the exhibit could be admitted into evidence. Mr. Abbott's declaration alone does not lay an adequate foundation for receipt of any of the exhibits into evidence.
> A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official.
> The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of a document and, where appropriate, its delivery.
*United States v. Dibble*, 429 F.2d 598, 602 (8th Cir.1970).

Additionally, many of the exhibits to defendant's motion for summary judgment contain inadmissible hearsay.

IT IS THEREFORE ORDERED that plaintiff's motion to strike the declaration of David Abbott and the exhibits attached in support of defendants' motion for summary judgment (Doc. # 125) is granted. The clerk is directed to strike the affidavit of David Abbott dated May 21, 1993, and the exhibits attached thereto.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. # 108) is summarily denied.

1993 WL 441970 (D.Kan.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

B

Westlaw.

Not Reported in F.Supp.
1993 WL 441970 (D.Kan.)
(Cite as: 1993 WL 441970 (D.Kan.))

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Marcell E. DENMON, Plaintiff,
v.
Marvin T. RUNYON, Defendant.

**Civ. A. No. 92-2144-EEO.**

Oct. 25, 1993.

M.J. Willoughby, Stinson, Mag & Fizzell, Overland Park, KS, Lisa C. Creighton, Sprint Communications Co. L.P., Law Dept., Kansas City, MO, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Civ.Div., W.D.Mo., Kansas City, MO, for defendant.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

*1 This matter is before the court on defendant Marvin Runyon's motion for summary judgment (Doc. # 108) and on plaintiff Marcell Denmon's motion to strike the declaration of David Abbott and the exhibits which were attached in support of defendant's motion for summary judgment (Doc. # 125).

NATURE OF THE CLAIM

Plaintiff Marcell Denmon, a former employee of the United States Postal Service, filed this action alleging discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. For the reasons discussed below, plaintiff's motion to strike is granted, and defendant's motion for summary judgment is denied.

JURISDICTION

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

ANALYSIS

The requirements for an affidavit submitted in support of a motion for summary judgment are set forth in Federal Rule of Civil Procedure 56(e). Rule 56(e) provides, in pertinent part:
   Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers ... referred to in an affidavit shall be attached thereto or served therewith.
28 U.S.C. § 1746(2) provides that a declaration made under penalty of perjury may be submitted in lieu of an affidavit. Declarations are subject to the same requirements as affidavits for the purposes of Rule 56(e). In ruling on a motion for summary judgment, the court may only consider material that would be admissible at trial. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2721 (1983) at 40. Because the burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of material fact, the movant must demonstrate that the content of its affidavit is admissible at trial; any doubts as to the admissibility of the material submitted in support of a summary judgment must be resolved against the movant. *See Prudential Ins. Co. v. Curt Bullock Builders, Inc.,* 626 F.Supp. 159, 164 (N.D.Ill.1985); *see generally* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2738 (1983).

Plaintiff objects to the declaration of David Abbott, Postmaster of the Shawnee Mission, Kansas, Main Post Office. Mr. Abbott's declaration and the exhibits accompanying it are the only evidence defendant submits in support of his motion for summary judgment. Plaintiff contends that the declaration and exhibits are defective and should be stricken. We agree. An affidavit that does not

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2
1993 WL 441970 (D.Kan.)
**(Cite as: 1993 WL 441970 (D.Kan.))**

measure up to the standards of Rule 56(e) is subject to a motion to strike. *Noblett v. General Elec. Credit Corp.,* 400 F.2d 442, 445 (10th Cir.1968), *cert. denied,* 393 U.S. 935 (1968); 6 Moore's Federal Practice ¶ 56.22[1] at 56-761.

28 U.S.C. § 1746(2) requires that an unsworn declaration be made "under penalty of perjury" and verified as "true and correct." Section 1746 provides in relevant part:

  *2 Whenever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by *the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

                              * * *

  (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

The last sentence of Mr. Abbott's declaration states: "I declare under penalty of perjury that the foregoing is true and correct *to the best of my knowledge.*" (Emphasis added.) Mr. Abbott's declaration, in using the qualifying language "to the best of my knowledge" substantially deviates from the specific language required by 28 U.S.C. § 1746(2). Allowing a declarant to deviate from the form specified in 28 U.S.C. § 1746(2) undermines Rule 56(e). The implication from the qualifying language used by Mr. Abbott is that the matters he declares may not be true or may not be within his personal knowledge.

Even if Mr. Abbott's declaration were not defective as to form, the declaration is nonetheless

improperly before the court. The declaration does not affirmatively demonstrate on its face that the statements asserted in paragraphs 2 through 8 and 10 through 12 are within Mr. Abbott's personal knowledge. D.Kan.Rule 206(c) requires that "[a]ll facts on which a motion or opposition is based shall be presented by affidavit [or] declaration under penalty of perjury,.... *Affidavits or declarations shall be based on personal knowledge and by a person competent to testify to the facts stated* which shall be admissible in evidence." (Emphasis added.) Statements not based on personal knowledge must be disregarded by the court. *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1367 (8th Cir.1983) (affidavit based on information and belief is insufficient); *Arkansas Best Freight Sys., Inc. v. Youngblood,* 61 F.R.D. 565, 569 (D.Ark.1974) (affidavits merely stating affiants' opinions of what various reports disclosed without a showing that these were facts based on personal knowledge were insufficient and could not be considered on summary judgment).

Statements in affidavits or declarations may not be "based on a review of records," a basis upon which Mr. Abbott purports to rely. Declaration of David Abbott, ¶ 1. In *Cummings v. Roberts,* 628 F.2d 1065 (8th Cir.1980), a prisoner filed a civil rights complaint, asserting a claim of cruel and unusual punishment against jail officials for refusing to provide him a wheelchair in his cell, thus allegedly forcing him to crawl on the floor. In reversing the district court, the Eighth Circuit held that a statement made in an affidavit of a jail superintendent was inadequate to support summary judgment because the statement was not based upon the personal knowledge of the affiant. In that affidavit, the superintendent stated "an investigation revealed" that plaintiff had been observed on numerous occasions standing and walking unassisted in his jail cell. *See also Dean Construction Co. v. Simonetta Concrete Corp.,* 37 F.R.D. 242, 245 (S.D.N.Y.1965) (affidavits submitted by Assistant U.S. Attorney in support of motion for summary judgment "on information and belief based upon the records and files in the possession of the United States Attorney for the Southern District of New York" did not meet the requirement that an affidavit be made on personal knowledge). Nor is it sufficient for an affiant or declarant to make statements based on the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

allegation that he was "advised" of the fact stated. *See Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,* 576 F.Supp. 312, 316 (D.Md.1983) (striking a portion of an affidavit because the statement was "the product of advice from others").

**\*3** All papers referred to in an affidavit must also be sworn or certified. Fed.R.Civ.P. 56(e). Each paper, or exhibit, must be authenticated by and attached to an affidavit which meets the requirements of Federal Rule of Civil Procedure 56(e). *Nolla Morell v. Riefdohl,* 651 F.Supp. 134, 140 (D.P.R.1986) (documents filed by defendants on motion for summary judgment were inadmissible where unaccompanied by affidavits attesting to their validity). *See also Cummings v. Roberts,* 628 F.2d 1065 (8th Cir.1980) (on motion for summary judgment, district court properly did not consider 17 pages of medical records that were attached to an affidavit but not certified as required by Federal Rule of Civil Procedure 56(e)). Further, the affiant should be the person through whom the exhibits could be admitted into evidence. *Nolla Morell v. Riefdohl,* 651 F.Supp. at 140.

Defendant's Exhibits A through J, submitted with defendant's summary judgment motion, are likewise defective as to form. Each of these exhibits should have had an affidavit attached which properly authenticated the exhibit and which met the requirements of Federal Rule of Civil Procedure 56(e). The affiant for each exhibit should have been the person through whom the exhibit could be admitted into evidence. Mr. Abbott's declaration alone does not lay an adequate foundation for receipt of any of the exhibits into evidence.
A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official. The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of a document and, where appropriate, its delivery.
*United States v. Dibble,* 429 F.2d 598, 602 (8th Cir.1970).

Additionally, many of the exhibits to defendant's motion for summary judgment contain inadmissible hearsay.

IT IS THEREFORE ORDERED that plaintiff's motion to strike the declaration of David Abbott and the exhibits attached in support of defendants' motion for summary judgment (Doc. # 125) is granted. The clerk is directed to strike the affidavit of David Abbott dated May 21, 1993, and the exhibits attached thereto.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. # 108) is summarily denied.

1993 WL 441970 (D.Kan.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

2004 WL 1859729                                                                  Page 1
--- F.Supp.2d ---
**(Cite as: 2004 WL 1859729 (D.Kan.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.

John Franklin GOOD, Plaintiff,
v.
The BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SHAWNEE, KANSAS, et
al.,
Defendants.

**No. 01-4067-RDR.**

May 19, 2004.

**Background:** Former deputy sheriff brought §
1983 action against board of county commissioners,
county prosecutors, and former and present deputy
sheriffs based on deputy sheriff's termination and
criminal prosecution for perjury. Defendants filed
summary judgment motions.

**Holdings:** The District Court, Richard D. Rogers,
J., held that:
(1) former deputy failed to allege association
protected by First Amendment, and this, his § 1983
claim based on violation of association right failed;
(2) under Kansas law, former deputy failed to
establish malicious prosecution claim against other
deputy sheriffs; and
(3) under Kansas law, former deputy failed to
establish abuse of process claim.

Motions granted.

**[1] Constitutional Law ☞82(11)**

92k82(11) Most Cited Cases

**[1] Constitutional Law ☞91**

92k91 Most Cited Cases

First Amendment protects public employees from
discrimination based upon their political beliefs,
affiliations, or non-affiliation unless their work
requires       political       allegiance.      U.S.C.A.
Const.Amend. 1.

**[2] Constitutional Law ☞91**
92k91 Most Cited Cases

Public employee can establish violation of his First
Amendment association right if he demonstrates
that: (1) political affiliation and/or beliefs were
substantial   or   motivating   factors   behind   his
dismissal, and (2) his position did not require
political allegiance. U.S.C.A. Const.Amend. 1.

**[3] Constitutional Law ☞91**
92k91 Most Cited Cases

Former deputy sheriff failed to allege association
protected by First Amendment, and thus, his § 1983
claim based on violation of association right
brought against board of county commissioners,
county prosecutors, and former and present deputy
sheriffs failed; although former deputy asserted that
adverse actions were taken against him because
defendants perceived that he was affiliated with
sheriff, who was removed from his position, former
deputy made no claim that defendants discriminated
against him on basis of his actual loyalty to political
party, political candidate, or advocacy of ideas.
U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[3] Sheriffs and Constables ☞21**
353k21 Most Cited Cases

Former deputy sheriff failed to allege association
protected by First Amendment, and thus, his § 1983
claim based on violation of association right
brought against board of county commissioners,
county prosecutors, and former and present deputy
sheriffs failed; although former deputy asserted that
adverse actions were taken against him because
defendants perceived that he was affiliated with

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
**(Cite as: 2004 WL 1859729 (D.Kan.))**

sheriff, who was removed from his position, former deputy made no claim that defendants discriminated against him on basis of his actual loyalty to political party, political candidate, or advocacy of ideas. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[4] Constitutional Law ☞91**
92k91 Most Cited Cases

Public employee asserting violation of his First Amendment association right must establish that association at issue was protected by constitution. U.S.C.A. Const.Amend. 1.

**[5] Constitutional Law ☞91**
92k91 Most Cited Cases

Assuming former deputy sheriff alleged association protected by First Amendment when he asserted that adverse actions were taken against him because he was perceived as being affiliated with sheriff, former deputy failed to prove that such perception existed, and thus, his § 1983 claim based on violation of association right brought against board of county commissioners, county prosecutors, and former and present deputy sheriffs failed, where there was no evidence that former deputy was ever sheriff's political ally and evidence that former deputy was hand-picked to serve on special narcotics unit and that problems in unit were attributed to sheriff and unit members did not provide basis for alleged perception. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[5] Sheriffs and Constables ☞21**
353k21 Most Cited Cases

Assuming former deputy sheriff alleged association protected by First Amendment when he asserted that adverse actions were taken against him because he was perceived as being affiliated with sheriff, former deputy failed to prove that such perception existed, and thus, his § 1983 claim based on violation of association right brought against board of county commissioners, county prosecutors, and former and present deputy sheriffs failed, where there was no evidence that former deputy was ever sheriff's political ally and evidence that former deputy was hand-picked to serve on special narcotics unit and that problems in unit were attributed to sheriff and unit members did not

provide basis for alleged perception. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[6] Evidence ☞318(1)**
157k318(1) Most Cited Cases

Newspaper articles constituted hearsay in former deputy sheriff's § 1983 action against board of county commissioners, county prosecutors, and former and present deputy sheriffs based on alleged violation of First Amendment association right, where newspaper articles were offered for proof of matter asserted therein. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[7] Civil Rights ☞1376(10)**
78k1376(10) Most Cited Cases

County prosecutors and former and present deputy sheriffs were entitled to qualified immunity from former deputy sheriff's § 1983 action based on alleged violation of First Amendment association right, where former deputy asserted that adverse actions were taken against him because defendants perceived that he was affiliated with sheriff and no opinions of Supreme Court or Court of Appeals have extended constitutional right to association to perceived associations. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[8] Civil Rights ☞1376(2)**
78k1376(2) Most Cited Cases

Under qualified immunity doctrine, government official is not subject to liability unless it is sufficiently clear that reasonable official would have understood that his conduct violated right of government employee. 42 U.S.C.A. § 1983.

**[9] Civil Rights ☞1376(10)**
78k1376(10) Most Cited Cases

In order for government employee to prove in § 1983 action that right which government officials allegedly violated was "clearly established" at time of officials' actions, as required to defeat defense of qualified immunity, employee must prove that right was sufficiently clear that reasonable official would have understood that his conduct violated that right; ordinarily, in order for law to be clearly established, there must be decision of Supreme Court or Court

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729                                                                    Page 3
--- F.Supp.2d ---
**(Cite as: 2004 WL 1859729 (D.Kan.))**

of Appeals in same circuit on point, or clearly established weight of authority from other courts must have found law to be as employee maintains. 42 U.S.C.A. § 1983.

**[10] Federal Courts ☞18**
170Bk18 Most Cited Cases

After granting summary judgment for board of county commissioners, county prosecutors, and former and present deputy sheriffs in former deputy sheriff's § 1983 action based on alleged violation of First Amendment association right, district Court would exercise supplemental jurisdiction over former deputy's state law claims for malicious prosecution and abuse of process, where factors of judicial economy and convenience would be enhanced by considering state law claims. U.S.C.A. Const.Amend. 1; 28 U.S.C.A. § 1367(c)(3);42 U.S.C.A. § 1983.

**[11] Federal Courts ☞14.1**
170Bk14.1 Most Cited Cases

Exercise of supplemental jurisdiction is committed to district court's sound discretion. 28 U.S.C.A. § 1367(c)(3).

**[12] Federal Courts ☞14.1**
170Bk14.1 Most Cited Cases

When deciding whether to exercise supplemental jurisdiction, federal court should consider and weigh in each case, and at every stage of litigation, values of judicial economy, convenience, fairness, and comity. 28 U.S.C.A. § 1367(c)(3).

**[13] Malicious Prosecution ☞16**
249k16 Most Cited Cases

Under Kansas law, in order to prevail on malicious prosecution claim plaintiff must prove the following: (1) that defendant initiated, continued, or procured proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant acted with malice; (4) that proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages.

**[14] Malicious Prosecution ☞38**
249k38 Most Cited Cases

Under Kansas law, court must construe scope of tort of malicious prosecution narrowly in order to protect litigants' right of access to judicial process, bearing in mind that malicious prosecution causes of action have long been disfavored in law.

**[15] District and Prosecuting Attorneys ☞10**
131k10 Most Cited Cases

Under Kansas law, malicious prosecution claims brought against county prosecutors by former deputy sheriff involving county prosecutors' decision to prosecute deputy sheriff were barred by absolute immunity.

**[15] Malicious Prosecution ☞42**
249k42 Most Cited Cases

Under Kansas law, malicious prosecution claims brought against county prosecutors by former deputy sheriff involving county prosecutors' decision to prosecute deputy sheriff were barred by absolute immunity.

**[16] Malicious Prosecution ☞18(1)**
249k18(1) Most Cited Cases

Under Kansas law, to extent any malicious prosecution claims brought against county prosecutors by former deputy sheriff involving county prosecutors' decision to prosecute deputy sheriff remained after district court determined certain claims were barred by absolute immunity, malicious prosecution claims failed, where prosecutors had probable cause to bring perjury charges against former deputy.

**[17] Malicious Prosecution ☞4**
249k4 Most Cited Cases

Under Kansas law, former deputy sheriff failed to establish malicious prosecution claim against other deputy sheriffs related to prosecution of former deputy sheriff for perjury, where, even if other officers gave false testimony in prosecution of deputy sheriff, officers did not initiate, procure, or continue prosecution, and instead, uncontroverted facts showed that prosecutors initiated prosecution.

**[18] Malicious Prosecution ☞4**
249k4 Most Cited Cases

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

Page 4

Under Kansas law related to tort of malicious prosecution, it is widely held that to institute, procure, or continue prosecution requires more than testifying as prosecution witness; one who merely responds to requests for information or who testifies as witness does not, by those acts, institute or continue proceeding.

**[19] Malicious Prosecution** ☜3
249k3 Most Cited Cases

Under Kansas law, liability for malicious prosecution may result if defendant testifies in addition to other action, such as investigating alleged crime, offering to pay some cost of prosecution, or going to authorities with information known to be false when there is no request for such information and no ongoing investigation.

**[20] Malicious Prosecution** ☜18(1)
249k18(1) Most Cited Cases

Under Kansas law, assuming deputy sheriffs initiated, procured, or continued prosecution of former deputy sheriff for perjury, former deputy sheriff failed to establish malicious prosecution claim against deputy sheriffs, where probable cause existed to support bringing of perjury charges against former deputy sheriff.

**[21] Process** ☜171
313k171 Most Cited Cases

Under Kansas law, former deputy sheriff failed to establish abuse of process claim against other deputy sheriffs and county prosecutors related to prosecution of former deputy sheriff for perjury, where there was no evidence to support allegation that defendants used perjury charges against former deputy sheriff as means of inducing him to testify against sheriff, who was subsequently removed from position, or, in alternative, as retaliation for not testifying against sheriff.

**[22] Process** ☜168
313k168 Most Cited Cases

Under Kansas law, elements of abuse of process claim are: (1) that defendant made illegal, improper, perverted use of process, i.e., use neither warranted

nor authorized by process; (2) that defendant had ulterior motive or purpose in exercising such illegal, perverted, or improper use of process; and (3) that damage resulted to plaintiff from irregularity.

**[23] Process** ☜168
313k168 Most Cited Cases

Under Kansas law, gist of tort of abuse of process is not commencing action or causing process to issue without justification, but misusing or misapplying process justified in itself for end other than that which it was designed to accomplish.

Leonard M. Robinson, Topeka, KS, for Plaintiff.

David P. Mudrick, Thomas E. Wright, Wright, Henson, Clark & Baker LLP, Donald Patterson, J. Steven Pigg, Fisher, Patterson, Sayler & Smith, J. Roger Hendrix, Mark L. Bennett, Jr., Bennett & Hendrix, LLP, Topeka, KS, Chanda M. Feldkamp, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

RICHARD D. ROGERS, District Judge.

*1 Plaintiff, a former deputy sheriff with the Shawnee County Sheriff's Department, brings this action against a number of defendants pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise out of his termination from employment as a deputy sheriff and his criminal prosecution for perjury. The defendants are the Board of County Commissioners of Shawnee County, Kansas; Richard Barta, Shawnee County Sheriff; Joan M. Hamilton, former Shawnee County District Attorney; Joel W. Meinecke, Shawnee County Assistant District Attorney; Tony W. Rues, Shawnee County Assistant District Attorney; and Jack Metz, Daniel Jaramillo, Scott Holladay and Phillip Blume, former and present Shawnee County deputy sheriffs. [FN1]

Plaintiff contends that his First and Fourteenth Amendment rights have been violated by the defendants. He also asserts supplemental claims of malicious prosecution and abuse of process. [FN2] This matter is presently before the court upon motions for summary judgment filed by the following defendants: (1) the Board of County

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

Commissioners and Barta; (2) Hamilton, Meinecke and Rues (the prosecutor defendants); and (3) Metz, Jaramillo, Holladay and Blume (the deputy sheriff defendants). [FN3]

I.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Id. An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id. at 670-71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. Id. at 671.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see Adler, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Anderson, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id.

II.

*2 Many of the facts that form the background of this case are not in dispute. [FN4] The following facts are undisputed. The court will address those facts that are in dispute as we discuss the arguments raised in the motions for summary judgment.

Plaintiff was hired as a patrolman by the Shawnee County Sheriff's Department in 1984. In 1987, Timothy Oblander began working at the Sheriff's Department. Plaintiff and Oblander became partners in 1988.

Metz, Holladay, Blume and Jaramillo were hired by the Sheriff's Department at various times in the 1980's. Plaintiff worked with Metz and Jaramillo on several occasions. He did not work closely with Holladay or Blume. He never had any problems with any of them while he was employed at the Sheriff's Department. Dave Meneley was elected Shawnee County Sheriff in November 1992 and took office in January 1993.

In January 1993, Oblander was assigned to the Special Services Unit/Narcotics Division. This unit dealt with narcotics, prostitution, burglary and any other crime not assigned to a specialized division. Sometime in late 1993 to early 1994, Oblander began using cocaine he had stolen from the sample drug packets he was given to train drug dogs. In July 1994, four packets of cocaine evidence were discovered missing from the evidence confiscated in the *State v. Caldwell* case. Oblander later confessed to stealing that drug evidence from Holladay's office before the evidence had been transferred to the evidence room. Spurred by the missing Caldwell drugs, the Sheriff's Department initiated its first internal investigation into the missing drugs. Holladay was asked to take a polygraph examination as part of this investigation. He took an examination and passed it. On August 16, 1994, the internal investigation was closed with no conclusive results.

In November 1994, plaintiff joined Oblander in the Special Services Unit/Narcotics Division. They became partners at that time. In late 1994 to early 1995, Oblander began stealing drug evidence from those drug buys he and plaintiff had made in the undercover drug unit. Eventually, Oblander asked Good to take him to Valley Hope, a drug and alcohol treatment facility in Atchison, Kansas.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

Page 6

Plaintiff did so and Oblander was admitted for treatment on June 27, 1995. Following Oblander's admission to Valley Hope, plaintiff stopped by the offices of Dr. Douglas Iliff, Oblander's primary care physician, to obtain Dr. Iliff's authorization for admittance to Valley Hope to satisfy insurance requirements. According to the medical records from Dr. Iliff's office, plaintiff spoke with Dr. Iliff's nurse, Diane Gordy. The notes indicate that plaintiff told Gordy that he had no idea Oblander was addicted to crack cocaine until he came into the office and found Oblander using crack cocaine that had been seized as evidence. Hamilton did not discover these records until July 2000, after plaintiff's first prosecution for perjury.

The medical records from Valley Hope show that Oblander was admitted for cocaine dependence. The records reflect that he "steals [his drugs] out of what they take as police." The records further reflect that Oblander stated that he felt that "he feels like he lost control of his cocaine use about 2 weeks [prior to admission] when everyone found out." The day after he was admitted, he told a counselor that "[h]e came to Valley Hope after informing his wife and his partner of his addiction." The records further show that he admitted having a cocaine abuse problem, but did not feel that he had an alcohol problem.

*3 In 1995, a criminal defendant in state court, Carlos Hernandez, filed a motion to set aside his conviction based upon tampered evidence because Oblander had been the deputy sheriff assigned to his case. Judge Eric Rosen of the Shawnee County District Court handled the motion in Hernandez. During the course of the Hernandez proceedings, defendants Holladay and Metz testified that plaintiff had informed them that he knew Oblander had been using drugs while working as his partner. Moreover, Holladay and Metz testified that plaintiff told them that Oblander was in a drug treatment facility for cocaine addiction and that Oblander was stealing cocaine from seized evidence to support his habit. Plaintiff also testified during the Hernandez proceeding. He denied knowing about Oblander's drug addiction and denied making any statements to defendants Holladay and Metz that he knew of Oblander's addiction and use of seized evidence.

During the Hernandez proceedings, Judge Rosen

requested that the parties involved take polygraph examinations. Holladay, Metz, Blume and Jaramillo agreed to take polygraphs while Good, Oblander and Meneley refused. The polygraph examinations were conducted in March 1999. The examinations indicated that Holladay, Metz, Blume and Jaramillo were truthful. [FN5] Soon thereafter, Assistant Attorney General James Welch told the Shawnee County District Attorney's Office that plaintiff had discussed Oblander's cocaine use with him in 1995.

On April 2, 1999, defendant Hamilton filed six charges of perjury and one count of official misconduct against Oblander. On April 20, 1999, defendant Hamilton filed a two-count perjury complaint against plaintiff based upon his testimony in the Hernandez hearing. A preliminary hearing was conducted and Judge Charles Andrews found probable cause to believe that plaintiff had committed the crimes with which he was charged, and bound him over for trial. On May 10, 1999, Pedro Irigonegaray and Robert Eye entered their appearances in the plaintiff's perjury case as counsel for Holladay, Blume and Jaramillo pursuant to K.S.A. 19-717. [FN6]

On May 11, 1999, Judge Rosen found in the Hernandez proceeding that plaintiff knew of Oblander's behavior and "was an enabler in Oblander's procuring of drugs and in hiding this activity." Judge Rosen also found that plaintiff "not only had knowledge of Deputy Oblander's conduct, but actively participated in concealing" it.

On May 24, 1999, the Kansas Attorney General's Office filed a petition seeking Meneley's ouster. The Attorney General's Office sought to oust Meneley based upon the following allegations: (1) he had willfully concealed evidence of a crime; (2) he had willfully provided false testimony under oath on April 11, 1996 during an Attorney General inquisition and on February 22 and March 9, 1999 during the hearings in Hernandez; (3) he had knowingly permitted criminal investigation cases to be forwarded to prosecution and conviction without revealing that the evidence in the cases had been compromised; (4) he had willfully failed to adequately investigate missing drug evidence; and (5) he had willfully failed to preserve the integrity of evidence collected by members of his department to ensure a fair prosecutorial system.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

Page 7

*4 On November 22, 1999, Oblander, in the presence of his attorney, gave a sworn statement to the District Attorney's office as part of a diversion agreement. In the sworn statement, Oblander stated that he called plaintiff on June 26, 1995, after he had used cocaine and told plaintiff that he had been using drugs. He further stated that he had no doubt that plaintiff knew he was in treatment at Valley Hope for cocaine addiction. On November 23, 1999, Oblander returned to the District Attorney's office to add to his statement. At that time, he admitted that he had stolen cocaine evidence from the Caldwell case.

Oblander's diversion agreement provided that the State of Kansas would dismiss the pending charges against him and recommend that the United States Attorney's Office not file any federal charges based upon his violations. The agreement further provided that the defendant would do community service, would never seek another position in law enforcement, and would testify truthfully against Good and Meneley in their criminal trials. On December 10, 1999, the diversion agreement was approved in state court by Judge Franklin Theis.

On December 28, 1999, Irigonegaray and Eye were allowed to withdraw as counsel for Holladay, Jaramillo and Blume in plaintiff's perjury case. Counsel had represented to the court that "their role as assisting counsel pursuant to K.S.A. 19-717 has been fulfilled." They further indicated that plaintiff's case was being "vigorously prosecuted" by the Shawnee County District Attorney. They asserted that "recent admissions by former Deputy Oblander in his diversion process, and his agreement to testify in this case, have substantially validated the positions of these witnesses and removed the necessity of independent counsel to safeguard their rights." During the course of their representation of Holladay, Jaramillo and Blume, defendant Hamilton was in control of the prosecution.

Meneley was removed from office as sheriff pursuant to the ouster proceeding on February 24, 2000. On March 21, 2000, defendant Barta was sworn in as the new Shawnee County Sheriff.

On April 20, 2000, plaintiff was terminated from his position with the Sheriff's Department. The reasons given for plaintiff's termination were

perjury, impeding an investigation, and conduct unbecoming an officer.

The trial of plaintiff's perjury case began on June 6, 2000. Holladay, Metz, Welch and Oblander, among others, testified against plaintiff. The testimony of Holladay and Metz at trial was consistent with their previous testimony at the Hernandez hearings and plaintiff's preliminary hearing. On June 13, 2000, a jury acquitted plaintiff of the perjury charges.

Following the termination of plaintiff, Shawnee County sought to deny unemployment benefits to plaintiff. Two hearings were held on this issue in July and August 2000. Plaintiff ultimately received unemployment benefits. Plaintiff also appealed his termination through grievance procedures.

*5 On August 31, 2000, Hamilton filed another two-count perjury complaint against plaintiff. These charges arose from plaintiff's testimony at his first perjury trial. Hamilton indicated in the affidavit attached to the complaint that she had discovered new evidence that was contained in Oblander's medical records. The medical records were alleged to contain notes that indicated that plaintiff had assisted Oblander in getting the initial referral to the drug treatment facility for cocaine addiction based upon his knowledge that Oblander had been using case evidence to support his habit. The second perjury complaint was subsequently dismissed by Judge Daniel Mitchell on December 21, 2000 on collateral estoppel grounds.

Plaintiff's appeal of his termination proceeded to arbitration. An arbitration hearing was held on March 2, 2001. In June 2001, the arbitrator awarded plaintiff fourteen months back pay, but upheld the termination. He determined that plaintiff "could not and would not be able to function as an employee of the Sheriff's Department."

III.

Plaintiff contends that his right to association guaranteed by the First Amendment was violated by the actions of the defendants. He asserts specifically that certain actions of the defendants were taken because of his "perceived association with Dave Meneley and his association with Dave Meneley." He has alleged that the defendants "perceived" that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

he was "a political ally as well as friend of the former Sheriff Dave Meneley." He suggests that the following actions were taken because of this perception: (1) the decision to terminate him by the Board of County Commissioners and Barta; (2) the decision by Metz, Holladay and Welch to give false testimony against him; (3) the decision by Metz, Jaramillo, Holladay and Blume to hire a special prosecutor to assist in prosecuting the criminal cases against him; (4) the decision of Hamilton, Meinecke and Ruez to obtain false statements from witnesses and to act as investigators in the criminal cases against him; and (5) the decision of Hamilton and Meinecke to act as complaining witnesses against him.

The aforementioned claims of plaintiff are taken from the pretrial order that has been entered in this case. Prior to the entry of the pretrial order, plaintiff's claims lacked specificity and certainty. Even in the pretrial order, the claims are somewhat nebulous. The court has made every effort to state them in a liberal fashion, giving plaintiff the benefit of all doubts.

The defendants have initially suggested that plaintiff's claim that actions were taken against him by them because he was perceived to be a friend of Meneley does not constitute a violation of the First Amendment. They point out that his "right to associate" with Meneley is not violated if the actions were taken only because he was a friend of Meneley. Plaintiff does not dispute this point. Rather, plaintiff suggests that the actions were taken because the defendants perceived that he was a "political ally" of Meneley. The defendants have responded that (1) this claim should not be considered because plaintiff has never raised it; (2) plaintiff's claim fails as a matter of law because the First Amendment right to association does not protect conduct "perceived" by a defendant where the employee did not engage in that conduct; and (3) even if plaintiff has stated a right of association claim, they are entitled to summary judgment on this claim because there is no evidence to support it. The individual defendants also contend that they are entitled to summary judgment on this claim based upon qualified immunity. Finally, the Shawnee County Board of Commissioners asserts that it is entitled to summary judgment for the additional reason that plaintiff has failed to establish the requirements for entity liability under § 1983.

*6 The court has some concerns about the timeliness of the instant claim. The claim that plaintiff now asserts was not a part of the original complaint. The pretrial order, however, does contain the claim. The court notes no objection to this claim in the pretrial order by the defendants. Accordingly, the court will proceed to consider it.

This instant claim is, without question, a puzzling contention when the undisputed facts are considered. Plaintiff has conceded the following facts: (1) he did not socialize with Meneley while he worked for the Sheriff's Department; (2) he had no association with Meneley while Meneley was Sheriff other than as an employee; (3) he was vocal about actions taken by Meneley in the Sheriff's Department that he did not like; (4) he was in Meneley's "doghouse" at one time; and (5) he did not become a friend of Meneley until May 2002. On the political front, plaintiff was a Democrat for much of the period at issue while Meneley was a Republican. Plaintiff supported Meneley's opponents in the elections that took place during the time period at issue, and he was not secretive about it. His first political activity for Meneley occurred following his termination, about two months prior to the August 2000 primary when he put up a few signs. Even then, he did not sign ads for Meneley or speak out for him, except to tell his mother he supported Meneley.

Plaintiff is able to point only to the following matters as support for this contention of the defendants' perceived political association with Meneley: (1) he was "hand-picked" by Meneley for a position in the Special Services/Narcotics Unit; and (2) Jaramillo attributed problems in the Special Services/Narcotics Unit to Meneley and members of the unit. He also notes, by relying on various newspaper articles, that six officers, including supervisors, associated with the Special Services/Narcotics Unit resigned or were terminated. Plaintiff sums up his argument as follows: "It is entirely likely [he] was subject to adverse employment action because of his membership in the Special Services/Narcotics Unit and its overall perception as being staffed by Meneley's hand-picked officers."

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

[1][2] "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliations, or non-affiliation unless their work requires political allegiance." *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442, 1451 (10th Cir.1997) (citing *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 68-9, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) and *Branti v. Finkel,* 445 U.S. 507, 513, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). An employee can establish a violation of his association rights if he demonstrates that (1) political affiliation and/or beliefs were substantial or motivating factors behind his dismissal; and (2) his position did not require political allegiance. *Bass v. Richards,* 308 F.3d 1081, 1090 (10th Cir.2002).

[3][4] The court must first consider whether plaintiff's right of association claim based upon the perception of the defendants constitutes a claim cognizable under the First Amendment. A First Amendment association claim requires an association protected by the Constitution. *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 61 (1st Cir.1990) ("[T]he first amendment does not protect against all deprivations arising out of an act of association unless the act itself--say, joining a church or a political party, speaking out on matters of public interest, advocacy or reform--falls within the scope of activities eligible for inclusion within the constitutional tent."). In other words, plaintiff must assert that adverse employment actions were taken against him because he engaged in conduct protected by the First Amendment. See *Bass,* 308 F.3d at 1091 (sheriff not entitled to qualified immunity on First Amendment association claim where reserve deputy alleged he was stripped of reserve commission for supporting sheriff's opponent in election); *Jantzen v. Hawkins,* 188 F.3d 1247, 1252-53 (10th Cir.1999) (sheriff not entitled to summary judgment where deputy sheriffs and jailer asserted they were terminated after supporting candidate who opposed sheriff). Here, plaintiff has not done so. He has merely asserted that adverse actions were taken against him because the defendants perceived that he was engaged in protected First Amendment activity. He has made no claim that the defendants discriminated against him on the basis of actual loyalty to a political party, political candidate or advocacy of ideas. Thus, in this case, the absence of any allegation that

plaintiff was deprived of any association protected by the First Amendment is fatal to his claim. *Ambrose v. Township of Robinson,* 303 F.3d 488, 495-96 (3rd Cir.2002) (rejecting liability on basis that conduct protected by the First Amendment was "perceived" by the employer when employee did not engage in that conduct); *Wasson v. Sonoma County Junior College,* 203 F.3d 659, 663 (9th Cir.) (no First Amendment claim when public employee is falsely accused of making statements uttered by someone else), cert. denied, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); see also *Waters v. Churchill,* 511 U.S. 661, 679, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)("We have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information.").

*7 The court's conclusion on this issue is supported by a recent decision of another judge in this district in a case arising from the same circumstances as the instant one. In *Busey v. Board of County Commissioners of Shawnee County,* 277 F.Supp.2d 1095 (D.Kan.2003), Judge Robinson considered claims from a deputy sheriff who had been a member of the special services/narcotics unit and was forced into retirement after Sheriff Barta was appointed to replace Sheriff Meneley. Plaintiff raised a similar First Amendment association claim, contending that he was terminated because the defendants had mistakenly "identified and perceived [him] as a person with political loyalty to Meneley." Plaintiff had alleged no political act of association with Meneley. He had also not alleged that his politics, his ideology, or his advocacy of political goals led to his allegedly forced retirement. Given these circumstances, the court granted summary judgment to the defendants on the plaintiff's First Amendment association claim. *Busey,* 277 F.Supp.2d at 1110. Judge Robinson made the following analysis:

> The record does not say that Busey expressed, or possessed, any political views; indeed, Busey's testimony indicates that he avoided political involvement with Meneley at all. There was nothing inherently political about Busey's relationship with the former sheriff. The record contains no facts regarding the political contours, if any, of Busey's relationship with Meneley. There was no campaign and no election, nor was there evidence that Busey was aware that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Meneley would run against Barta for sheriff later that year.

Busey makes the bald assertion, without support in the record, that the ouster of Meneley for criminal wrongdoing was politically motivated. However, such a "politically charged atmosphere," without more, does not provide a reasonable inference that defendants' employment decisions about Busey were tainted by their disregard of his first amendment rights. "Merely juxtaposing a protected characteristic--someone else's politics--with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." In order to survive summary judgment, Busey must make a showing that a causal connection exists linking defendants' adverse employment decision to Busey's politics--that is, Busey must demonstrate that he was subjected to discrimination based on his political loyalty, affiliation or views. Merely alleging that he had an undefined association with a politically controversial third party falls short of this requirement.
Id. (citations omitted).

[5] Even if the court found that plaintiff had stated a First Amendment right to associate claim based upon the defendants' perceptions, we do not find any evidence in the record to support the factual claim that the defendants had those perceptions. The court has scoured the record and we find nothing to support plaintiff's theory concerning any of the defendants. There is no evidence that the plaintiff was ever a political ally of Meneley prior to any of the actions noted by plaintiff. Moreover, there is a complete absence of evidence to demonstrate that there could have been a perception that he was a political ally of Meneley. The evidence noted by the plaintiff, i.e., that he was hand-picked to serve on the special narcotics unit and that problems in the unit were attributed to Meneley and its members [FN7], certainly does not provide any basis for the alleged perception. Plaintiff has done nothing more than posit a possibility. This suggestion, without anything to support it, cannot survive summary judgment.

*8 [ 6] Finally, the numerical argument offered by plaintiff lacks any legal or factual support. Plaintiff relies upon *Jefferies v. Wyandotte County Board of County Commissioners,* 979 F.Supp. 1372, 1379

(D.Kan.1997) for support of this contention. The court finds that Jefferies provides no support legally for this case. The circumstances in Jefferies were much different than those that exist here. Moreover, there is a complete lack of proof by plaintiff on this issue. In order to support this argument, plaintiff relies solely upon information contained in newspaper articles. Plaintiff offers these articles to prove the information contained in them. As a result, they are hearsay and may not be considered on a motion for summary judgment. *Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir.) (newspaper articles are inadmissible hearsay when offered for truth of matters contained in them), cert. denied, 534 U.S. 995, 122 S.Ct. 465, 151 L.Ed.2d 381 (2001); see also *Gross v. Burggraf Construction Co.,* 53 F.3d 1531, 1541 (10th Cir.1995) (hearsay evidence cannot be considered on a motion for summary judgment).

[7][8][9] Moreover, even if there were some factual or legal support for the theory asserted by the plaintiff, the court would find that the individual defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, a government actor is not subject to liability unless it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.), cert. denied, 534 U.S. 1019 (2001); see also *Lybrook v. Members of the Farmington Municipal School Board of Education,* 232 F.3d 1334, 1337 (10th Cir.2000); *Liebson v. New Mexico Corrections Dept.,* 73 F.3d 274, 276 (10th Cir.1996) . "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier, 242 F.3d at 923 (citing *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992)).

Here, we could not find that a reasonable government actor would know that the First Amendment right to association extends to "perceived" association. No Supreme Court or Tenth Circuit decision has so held. Nor have we found any other circuit court case that provides any support. In sum, the court believes that the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

individual defendants are also entitled to qualified immunity.

[10][11][12] Having found that summary judgment is appropriate on the plaintiff's federal claims under § 1983, the Court must determine whether it should exercise continuing jurisdiction over plaintiff's remaining state law claims for malicious prosecution and abuse of process. The court is authorized to decline supplemental jurisdiction upon the dismissal of all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The exercise of supplemental jurisdiction is committed to the court's sound discretion. *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172-73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.' " Id. at 173 (quoting *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

*9 The court believes that the factors of judicial economy and convenience would be enhanced by proceeding to consider the state law claims raised by plaintiff. The issues concerning these claims have been exhaustively briefed and the court has a thorough understanding of the facts and the law concerning these claims. Accordingly, the court shall exercise its discretion and review the state law claims and the arguments raised by the parties concerning them.

IV.

A. Malicious Prosecution

Plaintiff has asserted a malicious prosecution claim against Hamilton, Meinecke, Rues, Metz, Holladay, Blume and Jaramillo. The malicious prosecution claim arises from the perjury charges that were brought against plaintiff. He contends that the defendants brought these charges against him without probable cause and with malice and that they were terminated in his favor.

Hamilton, Meinecke and Rues raise two arguments. First, they contend that the court has previously dismissed the malicious prosecution claims against

them. Second, they assert they are entitled to summary judgment on these claims because plaintiff has failed to demonstrate a lack of probable cause.

Metz, Holladay, Blume and Jaramillo also assert two arguments in support of their position that they are entitled to summary judgment. Initially, they contend that plaintiff cannot establish that they "initiated, continued or procured" the criminal proceedings against him. Next, they argue that plaintiff has not established a lack of probable cause.

[13][14] In order to prevail on his malicious prosecution claim, plaintiff must prove: (1) the defendant initiated, continued, or procured the proceeding of which the complaint is made; (2) the defendant in doing so acted without probable cause; (3) the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages. *Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964, 974 (1994) . In analyzing these issues, "the court must bear in mind that malicious prosecution causes of action have long been disfavored in the law because they tend to discourage individuals from seeking redress in the courts." *Laing v. Shanberg,* 13 F.Supp.2d 1186, 1189 (D.Kan.1998). "The court, therefore, must construe the scope of the tort narrowly in order to protect litigants' right of access to the judicial process." Id.

On April 22, 2002, the court considered a motion to dismiss filed by defendants Hamilton, Meinecke and Rues. In that motion, they contended they were entitled to dismissal of all of the claims made against them by the plaintiff based upon absolute immunity. They asserted that plaintiff had failed to state claims against them because all of the claims were barred by prosecutorial immunity. The court considered the claims that appeared in the plaintiff's complaint. While acknowledging that plaintiff's complaint was not a "model of clarity or specificity," the court determined that some of the claims were barred by absolute immunity, but that some could proceed. We held that the following claims could proceed: (1) the defendants obtained false statements from potential witnesses; (2) the defendants swore to false affidavits in support of criminal complaints; and (3) the defendants made false statements or released false information to the press or public that were not part of court

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

proceedings; and (4) the defendants intimidated individuals to prevent them from becoming witnesses for the plaintiff. The court, however, determined that all other claims involving the decision by the defendants to prosecute the plaintiff were barred by absolute immunity.

**\*10** [15] Based upon a review of the pretrial order, the court is persuaded that the court has dismissed plaintiff's malicious prosecution claims against defendants Hamilton, Meinecke and Rues. These claims appear to arise from the decision of the prosecutors to bring the perjury charges against him. Such claims are barred by absolute immunity.

[16] To the extent that any malicious prosecution claims remained after the court's earlier order and in light of the claims asserted in the pretrial order, the court believes that the defendants are entitled to summary judgment on them. Plaintiff has failed to establish a lack of probable cause for the perjury charges asserted against him. The record is replete with evidence supporting the decisions made by the prosecutors. See *Vanover v. Cook,* 260 F.3d 1182, 1190 (10th Cir.2001) (in determining the existence of probable cause, a court looks to the facts and circumstances as they appeared to the defendant at the time the prosecution was commenced). Initially, we note that Judge Andrews found probable cause at the preliminary hearing for the first perjury charge. Under Kansas law, this finding provides prima facie evidence of probable cause. *Swanson v. Fields,* 814 F.Supp. 1007, 1014 (D.Kan.), aff'd, 13 F.3d 407 (10th Cir.1993). Plaintiff has failed to present evidence to overcome this finding. The evidence in support of a finding of probable cause is overwhelming: (1) the testimony of Holladay and Metz during the Hernandez proceedings that plaintiff had prior knowledge of Oblander's drug use and his stealing drug evidence; (2) Welch's testimony that plaintiff had prior knowledge of Oblander's drug use; (3) polygraph examinations of Holladay and Metz establishing their truthfulness; (4) Oblander's March 1, 1999 statement that he previously had a cocaine abuse problem; (5) Oblander's Valley Hope medical records that reflected that he had a cocaine abuse problem, that he had acquired drugs from evidence, and that he had gone to Valley Hope after informing his wife and "partner" of his addiction; (6) testimony of the Valley Hope doctor in the Hernandez proceedings

confirming the validity of the information found in the Valley Hope records.

[17][18][19] Turning to claims against Metz, Jaramillo, Holladay and Blume, we begin by determining if there is any support for the contention that these defendants initiated, procured or continued the prosecution against plaintiff. In *Allin v. Schuchmann,* 886 F.Supp. 793, 797-98 (D.Kan.1995) (citations and quotations omitted), Judge Theis summarized the law in Kansas in this area as follows:

It is widely held that to institute, procure, or continue a prosecution requires more than testifying as a prosecution witness. One who merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a proceeding. Liability may result if defendant testifies in addition to other action, such as investigating the alleged crime, offering to pay some of the cost of prosecution, or going to the authorities with information known to be false when there is no request for such information and no ongoing investigation. However, [i]t is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. A defendant is not liable for appearing as a witness even though the testimony may be perjured because the necessities of a free trial demand that witnesses are not deterred by fear of tort suits. Furthermore, to permit malicious prosecution actions against prosecution witnesses would give those witnesses an interest in the outcome of the case since only a conviction would provide them immunity from suit.

**\*11** The evidence fails to show that these defendants initiated, procured or continued the prosecution against the plaintiff. The evidence provided by these defendants was only a part of the evidence relied upon by the prosecutors to initiate the perjury action against plaintiff. Plaintiff has suggested that liability exists because (1) the testimony and information provided by these defendants was false; and (2) these defendants hired a special prosecutor to assist in the prosecution of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

him. Even if the testimony offered by these defendants is false, the court is not persuaded that these defendants initiated, procured or continued the first prosecution against the plaintiff. The uncontroverted facts here show that the prosecutors had and used their discretion to initiate the perjury charges against the plaintiff. Moreover, the evidence establishes that the prosecutors considered other evidence in determining whether to pursue a perjury charge against the plaintiff. In sum, the court finds that these defendants were only prosecution witnesses and played no active role in the initiation of the criminal charges.

The court's conclusion is not changed by the fact that these defendants hired a special prosecutor under K.S.A. 19-717 for the trial of the first prosecution. The uncontroverted facts do show that these defendants hired counsel under this statute. The uncontroverted facts, however, also show that Hamilton was in control of the prosecution and did not consult with these attorneys on strategy. Even more importantly, it is uncontroverted that the attorneys hired by these defendants entered their appearances after the charges were brought and withdrew prior to the start of the trial. These circumstances fail to offer any support that the defendants initiated, procured or continued the first prosecution against the plaintiff.

[20] Even assuming arguendo that there was some evidence that these defendants initiated, procured or continued the first prosecution against plaintiff, the court is persuaded for the reasons mentioned previously that there was probable cause for the prosecution. Accordingly, the defendants would be entitled to summary judgment on this basis as well.

Finally, we note that there is no evidence that these defendants or any defendant other than Hamilton initiated, procured or continued the second prosecution. Accordingly, these defendants as well as Rues and Meinecke are entitled to summary judgment on any claim of malicious prosecution arising from the second prosecution. Hamilton, as stated previously, is entitled to summary judgment on this claim based upon absolute immunity.

With these decisions, the court finds that the defendants are entitled to summary judgment on all of plaintiff's malicious prosecution claims.

B. Abuse of Process

[21] Plaintiff has also asserted an abuse of process claim against Hamilton, Meinecke, Rues, Metz, Holladay, Blume and Jaramillo. Plaintiff has suggested that these defendants, with an ulterior motive, used legal process in a wrongful manner by prosecuting and assisting in the prosecution of the two perjury cases. Plaintiff asserts that Hamilton, Meinecke and Rues used the perjury charges against him as a means of inducing him to testify against Meneley or, in the alternative, as retaliation for not testifying against Meneley.

*12 [22][23] In Kansas, the elements of an abuse of process claim are: (1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and (3) that damage resulted to the plaintiff from the irregularity. *Porter v. Stormont-Vail Hospital,* 228 Kan. 641, 621 P.2d 411, 416 (1980) (citations and quotations omitted). The gist of tort of abuse of process is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish. *Ahring v. White,* 156 Kan. 60, 131 P.2d 699, 702 (1942). Thus, the prerequisites for an abuse of process claim are that there must have been an ulterior purpose in the filing of the action or in the use of whatever process was employed, and second, it is necessary to have a willful act in the use of process, one not proper in the course of the regular conduct of the proceedings. *Tappen v. Ager,* 599 F.2d 376, 379-80 (10th Cir.1979).

The defendants contend they are entitled to summary judgment because plaintiff has failed to show any ulterior purpose for any of the actions taken by them. We must agree. There is no evidence to support plaintiff's allegation that the defendants used the perjury charges against him as a means of inducing him to testify against Meneley or, in the alternative, as retaliation for not testifying against Meneley. This allegation is based solely upon conjecture and speculation. As a result, the prosecution defendants and the deputy defendants are also entitled to summary judgment on this claim.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

Page 14

With this decision, the court need not consider any of the other arguments raised by the defendants concerning this claim.

V.

The court has determined that all defendants are entitled to summary judgment on all remaining claims asserted by the plaintiff. [FN8]

**IT IS THEREFORE ORDERED** that defendants' motions to exclude (Doc. 174, 177, 183, 184, 185 and 186) be hereby denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's motions for extension of time to files responses (Doc. 219, 220 and 221) be hereby granted. The responses filed by plaintiff are deemed timely filed.

**IT IS FURTHER ORDERED** that plaintiff's motions to strike summary judgment motions (Doc. 226, 232 and 235) be hereby denied.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment (Doc. 211, 212 and 222) be hereby granted. Judgment is hereby granted to defendants Board of County Commissioners of Shawnee County, Kansas; Richard Barta; Joan M. Hamilton; Joel W. Meinecke; Tony W. Rues; Jack Metz; Daniel Jaramillo; Scott Holladay and Phillip Blume and against the plaintiff.

**IT IS SO ORDERED.**

FN1. The court previously granted summary judgment to another defendant, Diane Gordy, on April 17, 2002. The following defendants have been dismissed with prejudice during the course of these proceedings upon a stipulation of the parties: Michael J. Meier, former Shawnee County Commissioner; Theodore D. Ensley, Shawnee County Commissioner; Marice Kane, Shawnee County Commissioner; Richard Eckert, Shawnee County Counselor; and James Joseph Welch, State of Kansas Assistant Attorney General.

FN2. Plaintiff had also asserted a claim of intentional infliction of emotional distress or outrage, but he has abandoned that claim.

FN3. Plaintiff filed several motions for extensions of time to respond to these motions for summary judgment. The court has not ruled on those motions. At this time, the court shall grant them and find that all of the responses filed by the plaintiff were timely.

FN4. Plaintiff has filed a motion to strike portions of the summary judgment motions submitted by the defendants. He contends that some of the factual statements of the defendants are based upon hearsay. He further argues that the use of this evidence violates his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Specifically, he points to testimony from the *State v. Hernandez* proceedings. He asserts that this testimony should be excluded because it is hearsay and its use violates his Confrontation Clause rights. Concerning his Confrontation Clause argument, he notes that he was not a party to those proceedings and he had no opportunity to cross-examine any of the witnesses.
The defendants counter that the testimony from the Hernandez proceedings is not hearsay and does not violate the Confrontation Clause. The defendants point out that it is not hearsay because it is not offered for the truth of the matter asserted. They argue that it does not violate the Confrontation Clause because the constitutional right to confront witnesses applies only in criminal prosecutions.
The court agrees with the arguments raised by the defendants. The testimony from the Hernandez proceedings is not offered for the truth of the matter asserted, but rather to show the state of mind of the prosecutors and the existence of probable cause for plaintiff's arrest and his

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1859729
--- F.Supp.2d ---
(Cite as: 2004 WL 1859729 (D.Kan.))

subsequent prosecution. See *Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir.2000), cert. denied, 534 U.S. 955, 122 S.Ct. 354, 151 L.Ed.2d 268 (2001); *United States v. Becker,* 230 F.3d 1224, 1236 (10th Cir.2000), cert. denied, 532 U.S. 1000, 121 S.Ct. 1666, 149 L.Ed.2d 647 (2001); *United States v. Nieto,* 60 F.3d 1464, 1468 (10th Cir.1995), cert. denied, 516 U.S. 1081, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996); *United States v. Freeman,* 816 F.2d 558, 563 (10th Cir.1987); *United States v. Rodriguez-Pando,* 841 F.2d 1014, 1020 (10th Cir.1988). In addition, the Confrontation Clause is not violated because it applies only to criminal prosecutions and not to civil proceedings such as this case, *United States v. Real Property Located at Route 1, Box 118, Washita County, OK,* 132 F.3d 44, 1997 WL 796489 at * 1 (10th Cir.1997) (table); and does not preclude statements offered for a limited purpose and not for the truth of the matter asserted. *Thomas v. Hubbard,* 273 F.3d 1164, 1172 (9th Cir.2001), overruled on other grounds, *Payton v. Woodford,* 299 F.3d 815, 829 n. 11 (9th Cir.2002)(en banc); *United States v. Wilson,* 107 F.3d 774, 781 (10th Cir.1997) . In sum, plaintiff's motions to strike portions of the defendants' motions for summary judgment shall be denied.

FN5. Plaintiff argues that any reference to the polygraph examinations should not be considered because polygraph evidence is inadmissible in federal court. We must disagree. Plaintiff is correct that in the past results of polygraph examinations were inadmissible to bolster or undermine credibility. However, this ruling may be changing after the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588-89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See, e.g., *United States v. Crumby,* 895 F.Supp. 1354, 1358-63 (D.Ariz.1995) (polygraph evidence admissible because sufficiently reliable given narrow

purposes); *United States v. Galbreth,* 908 F.Supp. 877, 878- 95 (D.N.M.1995) (polygraph evidence admissible because reliable). Nevertheless, we need not consider the admissibility of the polygraph examinations for that purpose because here the polygraph examination evidence is not being offered and considered for the truth of its findings. Rather, the evidence is being considered for the purpose of determining if the prosecutors had probable cause to bring the perjury charges against plaintiff. Such use of the polygraph examinations is proper. *Kerr v. Lyford,* 171 F.3d 330, 341 (5th Cir.1999) (relying on polygraph evidence in determining that probable cause existed); *Craig v. Singletary,* 127 F.3d 1030, 1046 (11th Cir.1997) (indications of deception from polygraph may be one factor considered in probable cause analysis), cert. denied, 523 U.S. 1031, 118 S.Ct. 1323, 140 L.Ed.2d 486 (1998); *Booker v. Ward,* 94 F.3d 1052, 1058 (7th Cir.1996) (relying on polygraph results as one factor in finding that Illinois police officers had probable cause for arrest as a matter of law), cert. denied, 519 U.S. 1113, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997); *Bennett v. City of Grand Prairie, Texas,* 883 F.2d 400, 405- 06 (5th Cir.1989) (polygraph results, in conjunction with other evidence, may be used in determining whether probable cause exists to issue warrant). In sum, the court finds that the use of the polygraph examinations for the purpose of determining whether probable cause existed for the perjury prosecutions of the plaintiff is appropriate.

FN6. K.S.A. 19-717 provides as follows: That the prosecuting witness in any criminal action or proceeding may, at his own expense, employ an attorney or attorneys to assist the county attorney to perform his duties in any criminal action or proceeding under any of the laws of the state of Kansas, and such attorney or attorneys shall be recognized by the county attorney and court as associate counsel in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

such action or proceeding, and no prosecution shall be dismissed over the objection of such associate counsel until the reason of the county attorney for such dismissal, together with the objections thereto of such associate counsel, shall have been filed in writing, argued by counsel, and fully considered by the court.

FN7. The court does not even find that the purported evidence supports the position taken by the plaintiff. For example, he argues that the interview report with Jaramillo indicates that Jaramillo determined that the problems in the special narcotics unit were attributable to Meneley and the members of the unit. The report contains no such statements. In the report, Jaramillo states that when Jaramillo "returned to the sheriff's department, he found what be believed to be problems in the Unit."

FN8. With this conclusion, the court shall deny as moot the following motions: (1) motions of defendants Jaramillo, Metz, Holladay and Blume to exclude (Doc. 174 and 177); (2) motions of defendants Shawnee County Board of Commissioners and Barta to exclude (Doc. 183 and 184); and (3) motions for defendants Hamilton, Rues, Meinecke and Welch to exclude (Doc. 185 and 186).

2004 WL 1859729 (D.Kan.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.