FILED

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP,<br><br>    Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff | **CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF SCO'S EXPEDITED MOTION TO ENFORCE THE COURT'S AMENDED SCHEDULING ORDER AND EMERGENCY MOTION FOR A SCHEDULING CONFERENCE**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells<br><br>**[REDACTED VERSION]** |



## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................7

I.  THE CRITICAL PREDICATE INFORMATION THAT SCO HAS SOUGHT
    FOR OVER A YEAR, BUT THAT IBM HAS REFUSED TO PRODUCE,
    IS PLAINLY DISCOVERABLE ......................................................................................7

    A.  The Discovery That IBM Continues to Withhold Is Relevant,
        On Several Independent Grounds, to SCO's Claims and
        Defenses to IBM's Several, Broad Counterclaims ....................................................8

    B.  Over Six Months Ago, Magistrate Judge Wells Ordered
        IBM to Produce Discovery It Continues to Withhold ...............................................12

II. IBM'S FAILURE TO PRODUCE PREDICATE DISCOVERY, COUPLED
    WITH ITS DELAYS IN PERMITTING COURT RESOLUTION OF SUCH
    DISCOVERY ISSUES, HAVE RENDERED THE CURRENT DISCOVERY
    CUT-OFF UNWORKABLE ............................................................................................15

III. CONSIDERATION OF IBM'S NUMEROUS FACT-INTENSIVE SUMMARY
     JUDGMENT MOTIONS BEFORE THE CLOSE OF FACT DISCOVERY WOULD
     ONLY COMPOUND THE SERIOUS DIFFICULTIES THAT ARE ALREADY
     OBSTRUCTING THE PROGRESS OF THIS CASE ........................................................18

     A.  There Is Absolutely No Advantage to Proceeding with IBM's
         Summary Judgment Motions and a Great Deal of Disadvantages ............................19

     B.  Contrary to IBM's Continued Efforts to Restrict the Court's Discretion,
         The Court Has the Well-Established Discretion to Postpone Consideration
         Of IBM's Summary Judgment Motions ...................................................................20

IV.  IBM CAN NEITHER DEFEND THE DELAYS IT HAS IMPOSED
     NOR SHIFT TO SCO THE RESPONSIBILITY FOR THOSE DELAYS ...........................23

     A.  IBM Offers No Justification for the Further Delay in Discovery
         It Obtained By Waiting Until the Eleventh Hour to Seek to Postpone
         The Hearing Before the Magistrate Judge ...............................................................23

B.      In Attempting to Blame SCO for the Delays in Discovery,
        IBM Simply Ignores Its Own Conduct and Improperly Presupposes
        That the Discovery SCO Has Long Sought Is Irrelevant...........................................25

CONCLUSION.................................................................................................................................28

Plaintiff The SCO Group, Inc. ("SCO") respectfully submits this consolidated reply memorandum in further support of its Expedited Motion to Enforce the Court's Amended Scheduling Order dated September 8, 2004, and its Emergency Motion for a Scheduling Conference dated September 13, 2004.

## PRELIMINARY STATEMENT

SCO had to bring these motions a year and one half into this case, and three months after this Court had already sought to correct the procedural problems that had accrued in the case by extending the fact-discovery five months over IBM's strenuous objection. The Court's June 10 Amended Scheduling Order was to insure that the relevant issues between the parties would only be resolved after the facts were fully uncovered and developed. That Order also reaffirmed the authority of this Court, not any litigant, to control the pace of litigation toward those ends -- to ensure, for example, that an unnecessarily accelerated discovery schedule would not operate so as to make facts disappear or to preclude adjudication on the merits.

SCO's present motions show how the Court's Amended Scheduling Order should have worked, but did not, because especially in the course of extended complex civil litigation, a litigant can evade and eventually undo such orders. Only three months later, and for the several, independently sufficient reasons set forth below, SCO has had again to ask the Court to consider the management of this case – to address what had become an emergency arising out IBM's delays and motion practice that threaten to nullify the Amended Scheduling Order, and that would preclude SCO from obtaining and examining the discovery necessary to prove its claims and assert its defenses.

In raising these issues with the Court, SCO has not brought some abstract claim. To the contrary, SCO's present motions explain in detail the prejudice SCO faces and give IBM the

1

opportunity to explain its conduct on any front IBM chooses to address. In its Expedited Motion, SCO set forth three principal bases on which the Court should defer adjudication of any dispositive motions until the end of the Court's fact-discovery period:

(1)     Independent of any argument on the merits of IBM's motions, there is no advantage in efficiency or case management in proceeding with IBM's three, fact-intensive summary judgment motions now and in fact a great deal of disadvantages, and even if SCO obtained within days of the scheduled September 14 hearing the discovery at issue in SCO's two pending motions to compel, SCO would be hard pressed to complete discovery before the fact-discovery cut-off;

(2)     Upon even a facial review of the preliminary arguments in opposition to IBM's summary judgment motions, the Court would see not only that the motions are intensely fact-specific, but also that their lack of any merit shows that they served no evident purpose other than to burden SCO; and

(3)     IBM not only was pursuing its summary judgment motions even while SCO's motions to compel were pending, but also was doing so having taken not merely aggressive, but in fact extraordinary, positions regarding its obligations to produce basic, predicate discovery that SCO had long sought and that the Magistrate Judge had specifically ordered IBM to produce.

SCO further showed that on the first ground alone – without even having to consider the merits of IBM's summary judgment motions – the Court could impose the relief SCO sought.

In its Opposition Memorandum, IBM offers no serious argument in response to any of those points, to the extent it addresses them at all. On the question of case management, IBM argues only that the Court should not "disregard Rule 56 in this case," IBM Opp. at 7, and thus

2

completely ignores this Court's well-established discretion (which the Court expressly acknowledged during the September 15 hearing) to impose just the relief SCO seeks, independent of Rule 56. On the question of the supposed merits of its motions, IBM says nothing – an inexplicable omission if IBM could offer an argument sufficiently clear or succinct to warrant summary judgment. And on the question of IBM's refusal to produce the discovery at issue, and its relevance, IBM says only that this Court should do nothing until the Magistrate Judge resolves SCO's motions to compel – a proposal that not only ignores the plainly relevant nature of the discovery SCO seeks, but also (among other things) merely ensures continued uncertainty regarding what discovery SCO could take in the interim without being prejudiced.

In its Emergency Motion, moreover, SCO showed how just days after SCO filed its Motion to Enforce, IBM sought and obtained at the eleventh hour yet more delay by obtaining a five-week postponement of the scheduled September 14 hearing before the Magistrate Judge. By that delay, IBM had exacerbated the situation even further – it had guaranteed that SCO would not be able to complete the discovery to which it is entitled before the fact-discovery cut-off. IBM's further delay created an emergency situation in which, absent this Court's intervention, IBM was guaranteed to succeed in blocking SCO from ever making effective use of the fact-discovery period. On this question of timing, IBM says only: "The Court has already extended fact discovery once, and we submit that the nearly two years of discovery the current schedule has afforded the parties is more than enough time." IBM Opp. at 6. This argument is absurd – it simply ignores the relevance of the discovery SCO seeks, and expressly illustrates how IBM has sought and continues to seek to run out the discovery clock before SCO ever has the opportunity to develop the facts it needs to prove its claims or to defend against IBM's counterclaims.

3

SCO has thus documented for the Court the specific, coordinated steps that IBM has undertaken to undermine the Amended Scheduling Order that this Court imposed, over IBM's strident objection, on June 10. In response, IBM has taken the general position (as it did in arguing that the Court could not dismiss IBM's Tenth Counterclaim) that this Court lacks the discretion to resolve the situation IBM has created – in disregard of the well-settled authority that this Court (and not IBM) has the discretionary authority to control this case in order to ensure its fair and efficient administration.

Aside from its attempt to deny the Court's case-management authority, IBM does not – and cannot – deny the following case-management facts that are at the heart of SCO's pending motions (and are recapitulated in Parts I through III below):

- that the critical predicate information that SCO has sought for over a year, but IBM has refused to produce, is plainly discoverable, see Part I, below;

- that IBM's failure to produce predicate discovery, coupled with its delays in permitting Court resolution of such discovery issues, has rendered the current discovery cut-off unworkable, see Part II, below; and

- that consideration of IBM's numerous fact-intensive summary judgment motions before the close of fact discovery would only significantly compound the serious case-management difficulties already facing this case, see Part III, below.

Despite its rhetoric and accusations, IBM does not even attempt to justify its failure to produce the critical, predicate discovery that has remained outstanding for over a year. Nor does IBM even attempt to refute SCO's showing that without this predicate discovery, it cannot possibly make use of the discovery period that remains. And, perhaps most strikingly, IBM can articulate no case-management benefit (or dispel any of the substantial case-management inefficiencies) that would result from the Court's consideration of IBM's multiple summary judgment motions at this stage of the proceedings. On these facts alone – and without even

4

reaching the many substantive flaws in IBM's dispositive motions – SCO submits that the Court should grant the relief SCO seeks.

IBM also makes no attempt to defend its summary judgment motions.[1]  IBM does not dispute, among other things, any of the following:

- that IBM's motions rely on numerous facts, many of which are already disputed and many of which are plainly dependent on the further development of necessary discovery that IBM continues to withhold;

- that IBM's motion for summary judgment on SCO's contract claims is predicated on declarations from individuals who, according to transcripts that were in IBM's possession, gave prior sworn testimony – long before they came to be represented by IBM and much closer in time to the events at issue – that directly undermines their declarations in this case and IBM's contract interpretation argument; and

- that IBM's motion for summary judgment on its Eighth Counterclaim (a copyright infringement claim against SCO relating to code that IBM contributed to Linux) is based on IBM's assertion that SCO is "licensing Linux," when SCO has demonstrated that it has never licensed anything but the right to use UNIX proprietary information (which SCO owns) and SCO only licensed the right to use such information in Linux in connection with the compromise of potential claims based on the wrongful misappropriation of SCO's UNIX property in Linux.

Instead of addressing these key issues, IBM continues the same tactics that have thus far permitted it to avoid answering for its underlying conduct on the merits – attempting to excuse its dilatory tactics and attempting to shift responsibility for IBM's discovery failings onto SCO.

---

[1] In support of its Expedited Motion, SCO was forced briefly to address the merits of IBM's summary judgment motions because IBM had taken the unreasonable position that it would oppose any request by SCO for additional time to respond to IBM's dispositive motions unless SCO agreed to waive its rights to oppose those motions pursuant to Federal Rule of Civil Procedure 56(f).  IBM thus left SCO with the option of seeking additional time from the Court without addressing the lack of merit of IBM's motions – a position that would have inevitably invited repetition of IBM's tired, and baseless, refrain that SCO is seeking simply to delay the progress of this case without showing the merits of its position – or presenting the Court with at least some of the many fatal flaws in IBM's motions.  SCO thus did not seek to provide a complete refutation to IBM's motions and does not intend to burden the Court with evaluating the substance of every facet of IBM's motions – indeed, SCO's principal point is that it would be entirely inefficient for SCO or the Court to undertake that substantial burden at this stage of the proceedings.

SCO documents in detail below the numerous mischaracterizations and incorrect assumptions on which IBM's misguided rationalizations and accusations rest. See Part IV, below.

This Court's June 10 Order established a schedule that should have prevented the very situation that this case now presents. That schedule was originally designed to afford the parties time to make effective use of discovery in this complex case. Indeed, when the Court extended the discovery cut-off over IBM's strident objection, it did so in large part so that SCO could conduct discovery on the many issues that IBM's recent counterclaims had added.

In the ensuing three months, however, the discovery burden that SCO faces, and that the Court's June 10 Order sought to target, has not diminished in the least. Rather, IBM's continued failure to comply with SCO's now year-old discovery requests and with a six-month-old Court Order has recreated – indeed, aggravated – the problems. In fact, IBM has not produced a single item of discovery since the Court entered that Order. Moreover, IBM has compounded the burden its counterclaims impose by attempting to exploit its withholding of predicate discovery through its multiple premature summary judgment motions – two of which target the very IBM counterclaims that this Court's Amended Scheduling Order was designed to address.

In short, not only do the burdens that caused this Court to extend the Scheduling Order remain entirely intact some three months later, but IBM has magnified those burdens (and undermined the Amended Scheduling Order) through coordinated tactical maneuvers taken since the Court entered that Order. The fair and efficient administration of this case requires this Court's intervention to reestablish and enforce a reasonable discovery and dispositive briefing schedule that will permit this litigation properly to proceed to resolution on its merits.

## ARGUMENT

**I.    THE CRITICAL PREDICATE INFORMATION THAT SCO HAS SOUGHT FOR OVER A YEAR, BUT THAT IBM HAS REFUSED TO PRODUCE, IS PLAINLY DISCOVERABLE**

Over a <u>year</u> ago, SCO requested from IBM basic, predicate discovery that SCO needs in order to develop the proof of its claims as well as to defend against IBM's numerous, and broad, counterclaims.  IBM not only has refused to produce that discovery, but in its consolidated Opposition Brief <u>does</u> <u>not</u> <u>dispute</u> that it has refused to produce that discovery, that it has the discovery in its exclusive possession and control, and that the discovery is relevant.

In SCO's <u>two</u> pending motions to compel to be heard on October 19 (one of which is a <u>renewed</u> motion to compel the production of those materials that the Magistrate Judge <u>specifically</u> ordered IBM to produce six months ago), SCO seeks the following information:

- the identities of the IBM and Sequent personnel who contributed source code to AIX, Dynix and Linux, and the precise contributions that each made to those programs;

- the revision information, programmer notes, design documents, and white papers for AIX and Dynix;

- early releases and versions of AIX and Dynix; and

- documents and materials generated by or in the possession of IBM employees involved in IBM's Linux activities, specifically including high-level executives and members of IBM's Board restrictions on use and disclosure as the original licensed UNIX source code itself.

IBM refuses to produce the foregoing discovery notwithstanding that the Magistrate Judge specifically ordered IBM to produce much of it in March, and that much of it is easily accessible to IBM electronically through IBM's Configuration Management/ Version Control (CMVC) and Sequent's Revision Control System (RCS).

7

SCO thus seeks, and IBM has continued to withhold, fundamental, non-burdensome discovery regarding the programming history of AIX and Dynix. AIX and Dynix are the programs that IBM and Sequent (which IBM now owns) were permitted to develop, pursuant to software licensing agreements, based on SCO's proprietary material – the original licensed UNIX System V source code – and from which IBM made substantial source code contributions to Linux. SCO briefly summarizes below why the foregoing discovery is directly relevant and plainly discoverable, and how IBM's refusal to produce the discovery precludes SCO from investigating as it must the programming history of either AIX or Dynix.

### A. The Discovery That IBM Continues to Withhold Is Relevant, On Several Independent Grounds, to SCO's Claims and Defenses to IBM's Several, Broad Counterclaims

SCO is entitled to receive "discovery regarding <u>any matter</u>, not privileged, <u>which is relevant to the subject matter involved in the pending action</u>." Gohler v. Wood, 162 F.R.D. 691, 694 (D. Utah 1995) (quoting Rule 26(b)(1)) (emphasis in original). Moreover, "at the discovery stage, the concept of relevance should be construed very broadly." Id. Rule 26 in fact provides that such discovery need not itself be admissible at trial, so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Id. "A request for discovery should be allowed unless <u>it is clear</u> that the information sought <u>can have no possible bearing</u> on the claim or defense of a party." Sheldon v. Vermonty, 204 F.R.D. 679, 689 (D. Kan 2001) (emphasis in original).

SCO submits that IBM should have long ago produced, and that the Magistrate Judge will soon specifically order (and, as to certain discovery requests, re-order) IBM to produce, the discovery at issue. IBM has not offered (in any of its briefs) any basis to dispute that conclusion.

<u>First</u>, the discovery SCO has long sought is unmistakably relevant to SCO's contract claims. The plain language of the IBM and Sequent Software License Agreements required that

8

any derivative or modification of the original UNIX System V code was to be treated as if it was "part of the original SOFTWARE PRODUCT," and thus subject to the same restrictions on use and disclosure as the original licensed UNIX source code itself. Thus, as SCO has previously explained in filings to this Court and to the Magistrate Court, SCO will prevail on its contract claims if, among other things, SCO can trace the AIX or Dynix code that IBM contributed to Linux back to UNIX. The outstanding discovery concerning the full development history of AIX and Dynix that IBM has refused to produce is clearly relevant to this issue. See Mem. in Support of SCO's Expedited Motion to Enforce the Court's Amended Scheduling Order Dated June 10, 2004 (Sep. 8, 2004) at 23-34; SCO's Reply Mem. Regarding Discovery (July 12, 2004) at 11-13.[2] Indeed, IBM acknowledged the relevance of these materials to SCO's contract claims when it argued to this Court, in support of its motion for summary judgment on its Tenth Counterclaim (concerning copyright infringement), that "SCO's recitation of the discovery it needs and what it would do with that discovery, that merely conflates SCO's contract claims with its copyright claims." 9/15/04 Hr'g Tr. at 11.

Second, independent of SCO's own claims and IBM's mischaracterizations of them, the discovery at issue is plainly relevant to IBM's own counterclaims. IBM's Tenth Counterclaim, for example, seeks a blanket declaration that Linux does not infringe any SCO copyright. See IBM's Second Am. Countercl. ¶ 173. There is no merit to IBM's attempt to shield the development history of AIX and Dynix from discovery based on its repeated refrain that the

---

[2] IBM has mischaracterized SCO's contract interpretation argument to be limited to showing that AIX and Dynix are, as a whole, derivatives of the original licensed product. As SCO explained in its Motion to Enforce (and previously), although there is much to support this contractual reading – including IBM's own repeated admissions – SCO's theory of the contract is not so limited. Rather, SCO also seeks to show that the particular contributions that IBM made to Linux violated the license agreements because those specific contributions represented derivatives or modifications that were required to be treated as if they were part of the original licensed Unix System V product.

proof of its Linux copyright claim requires a comparison of only UNIX System V code on the one hand and Linux code on the other. SCO does not dispute that its defense to IBM's Tenth Counterclaim will necessarily involve proof of literal and/or non-literal copies of UNIX code that were ultimately dumped into Linux. What IBM ignores is that its Linux dump did not occur directly from the original licensed UNIX product; rather, before the original UNIX code was copied, literally or non-literally, into Linux (within the past five years), it traveled for longer than a decade through the development process of the UNIX-based AIX and Dynix programs. It is for this precise reason that the development history of AIX and Dynix – the discovery that IBM has withheld for over a year – is critical to SCO's defense to the Tenth Counterclaim.

In particular, and as SCO has previously detailed for the Court in its opposition to IBM's first summary judgment motion and at the recent argument on that motion, the outstanding programming history discovery may contain programmer admissions and comments on which Courts have heavily relied in copyright infringement cases. See, e.g., Computer Assocs. Int'l v. Quest Software, Inc., No. 02 C 4721, 2004 WL 1459495, at *9 (N.D. Ill. June 28, 2004) (granting preliminary injunction in computer software infringement case based on such evidence). Moreover, the outstanding discovery is necessary for SCO to focus and to streamline its investigation of Linux, and is absolutely relevant to SCO's investigation of non-literal copyright infringement in Linux. Under settled Tenth Circuit law, proof of non-literal copying of protected material would establish that Linux infringes SCO's UNIX copyrights, the precise claim against which IBM's Tenth Counterclaim seeks a declaration. See, e.g., Gates Rubber Co. v. Bando Chem. Indus. Ltd., 9 F.2d 823, 835-36 (10th Cir. 1993) (noting that the "structure, sequence, and organization" of a program, and not only its "literal" source and object code, may be copyrightable). Automated computer programs, while useful in detecting verbatim copying,

are not perfect, and are virtually useless in identifying non-literal copying. And manual, side-by-side comparison of the millions of lines of System V and Linux source code in a search for non-literal copying would be incredibly burdensome and time-consuming. The discovery SCO has requested, on the other hand, will allow SCO to determine which elements of UNIX were directly incorporated into AIX and Dynix in the first instance and thereby to trace the migration of protected, non-literal elements of UNIX, through AIX and Dynix, to Linux. In turn, SCO will be able to identify "hot spots" in Linux (those portions of AIX and Dynix that can ultimately be traced back to UNIX) on which it can effectively focus its Linux copyright infringement investigation in this case.[3]

Even more obviously, the outstanding programming history discovery also is relevant to IBM's Ninth Counterclaim, which seeks a declaration that IBM does not infringe "any SCO copyright through the reproduction, improvement, and distribution of AIX and Dynix." IBM's Second Am. Countercl. ¶ 167. IBM cannot seek that declaration while withholding the very evidence that would permit SCO to disprove IBM's claim.[4]

---

[3] After SCO showed during the September 15 hearing how the development history of AIX and Dynix is a roadmap permitting SCO to investigate potential copyright infringement in IBM's Linux contributions, IBM's counsel opined that the roadmap for which SCO asks "might as well be the road map for China" because "The only road map that matters, Your Honor, is what's in Unix and what's in Linux." Tr. at 3-4. Counsel is mistaken. Because IBM's contributions to Linux were taken from AIX and Dynix, the UNIX-derived products, the roadmap for IBM's contributions to Linux exists in the programming history to those programs. IBM misapprehends the governing discovery standard, under which SCO is entitled to any information reasonably calculated to lead to the discovery of admissible evidence.

[4]

IBM has, and offers, no responses to these relevance arguments. IBM says only that the Magistrate Judge will resolve them.[5] IBM Opp. at 6. That is obviously true. It is also the position IBM has adopted in running out the discovery clock in this case by failing to produce the foregoing material for almost a year.

### B. Over Six Months Ago, Magistrate Judge Wells Ordered IBM to Produce Discovery It Continues to Withhold

Among the plainly relevant material that IBM continues to refuse to produce that SCO addresses in its Renewed Motion to Compel, and that IBM fails even to address in opposition to SCO's Expedited and Emergency Motions, are several categories of information that the Magistrate Judge specifically ordered IBM to produce over six months ago. Magistrate Judge Wells has thus already considered and rejected IBM's previous argument that any of that basic, predicate information is irrelevant.

In response to SCO's initial Motion to Compel, Magistrate Judge Wells ordered IBM to "provide further responses to," among other interrogatories, SCO's Interrogatory No. 5, which

---

[5] Similarly, IBM has, and offers, no argument for undue burden. In responding to SCO's Memorandum Regarding Discovery, IBM's supporting affidavit makes no claim of any burden with respect to the Dynix RCS – as is required under the federal rules. See, e.g., Super Film of Am., Inc. v. UCB Films, Inc., 219 F.R.D. 649, 657 (D. Kan. 2004). Regarding CMVC, IBM's contradictory assertions regarding "burden" are meritless. IBM first argued that it would take "many, many months" for IBM to produce the AIX-related discovery, 2/6/04 Hr'g Tr. at 37:10-14, then later claimed it would take "many weeks." IBM's Resp. to SCO's Mem. Re Disc. (June 23, 2004) at 10, 19. Either way, IBM advances no legal basis on which to overcome the "ordinary presumption in favor of broad disclosure" in accordance with Rule 26(b)(2)(iii) to justify its failure to produce any relevant discovery. Simpson v. Univ. of Colo., 220 F.R.D. 354, 359 (D. Colo. 2004); see also Cornell Research Foundation, Inc. v. Hewlett-Packard Co., 223 F.R.D. 55 (N.D.N.Y. 2003) (rejecting Hewlett-Packard's claim of undue burden regarding the "basic" discovery sought by the plaintiff that was "uniquely within HP's control," ruling that despite HP's defense that plaintiff's discovery requests demanded 3285 hours, expended by some 206 HP employees, resulting in production of 56,000 pages of discovery materials, "the significance of these statistics is entirely dependent upon the nature and quality of information disclosed as well as consideration of what documents are being withheld from disclosure").

sought the identities of "IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix, and Linux, specifying for each person their precise contributions to each." Order (Mar. 3, 2004) ¶ 5. Magistrate Judge Wells also ordered IBM to produce documents and materials generated by, and in possession of, employees that have been and are currently involved in IBM's Linux project, specifically including high-level executives and members of IBM's Board of Directors. Id. ¶ 3.

IBM has failed to comply with either of those express orders. Instead of identifying the IBM and Sequent personnel who <u>worked</u> on code and their <u>contributions</u>, IBM merely referred SCO to the practically useless list of 7,200 individuals that IBM provided in response to SCO's previous request for the identities of those IBM and Sequent employees who had <u>access</u> to the UNIX source code. IBM further stated that <u>SCO</u> could discern the programmer contributions "in the cases of AIX and Dynix from the products themselves." IBM's positions with respect to this first aspect of the Magistrate Judge's Order – namely, that the list of 7,200 individuals is coextensive with respect to SCO's requests for obviously <u>different</u> information, and that the Magistrate Judge did not specifically order IBM <u>itself</u> to identify contributions – are untenable. Apart even from IBM's plain failure to comply with the March 3 Order, SCO has demonstrated that IBM's assertion of facts are wrong:  neither AIX nor Dynix contains any information identifying the contributions of any of the thousands of people listed in IBM's list of 7,200 individuals. <u>See</u> SCO's Mem. in Support of its Renewed Mot. to Compel (July 6, 2004) at 5-8.

IBM's failure to comply with that portion of the March 3 Order has stalled SCO's development of a deposition schedule, as SCO has no conceivable way of determining which of the 7,200 individuals were the principal contributors to AIX and Dynix, and thus to which of those individuals SCO should devote its very limited deposition slots.  In short, IBM has the

Court-ordered information in its possession, still refuses to disclose it, and does so in a context in which the prejudicial effect of that refusal on SCO's discovery is obvious.

IBM has similarly failed to comply with that part of the March 3 Order specifically requiring IBM to produce the Linux-related documents. The Court's Order specifically provided that "IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" March 3 Order ¶ 3. As SCO explained in support of its Renewed Motion to Compel, despite the Court's March 3 Order, IBM still has failed to produce the required discovery. For example:

- IBM has failed to produce <u>any</u> documents from the files of Irving Wladawsky-Berger, the IBM executive who, according to <u>The New York Times</u>, is IBM's "Linux czar" and sent e-mails to top technology executives regarding the rise of Linux.

- Even though Sam Palmisano is the former Senior Vice President in charge of IBM's server business, is now IBM's CEO and Chairman of the Board, and is the person IBM has publicly proclaimed as the leader in its strategy to shift toward Linux as its operating system of choice, IBM has produced only limited documents from Mr. Palmisano's files, and has produced only a single non-substantive e-mail (in which Mr. Palmisano requested that someone print a document).

- IBM has also failed to produce <u>any</u> documents from its Board of Directors – <u>no</u> Board minutes, Board packages, or other such materials.

IBM still does not dispute that the Court ordered it to produce the foregoing information or make <u>any</u> effort to explain away its non-production. IBM would thus have this Court believe: (1) that a corporation of IBM's size and sophistication produced almost no executive-level documents concerning its "ambitious Linux strategy"; (2) that IBM's senior executives, including those who oversaw the project, never sent an e-mail concerning its Linux business; and (3) that its Board of Directors never considered the Linux project, in which IBM has invested

14

billions of dollars. This explanation would be implausible from any Linux-related business, much less from one of the largest and most sophisticated technology companies in the world.

## II.  IBM'S FAILURE TO PRODUCE PREDICATE DISCOVERY, COUPLED WITH ITS DELAYS IN PERMITTING COURT RESOLUTION OF SUCH DISCOVERY ISSUES, HAVE RENDERED THE CURRENT DISCOVERY CUT-OFF UNWORKABLE

SCO has documented how IBM's refusal to supply the foregoing discovery, coupled with its delays in permitting Court resolution of such matters – including its latest effort to avoid the Magistrate Judge's resolution of SCO's motions for yet another month – have all but precluded SCO from conducting effective discovery before the current discovery period expires on February 11, 2005. By running out the discovery clock with such maneuvers, IBM has created a situation in which absent this Court's intervention, IBM is unfairly advantaged, and SCO is unfairly disadvantaged, on the merits even if SCO is <u>entirely right</u> on the merits of every one of its claims and defenses and IBM is entirely wrong. Indeed, in its consolidated Opposition Brief, IBM does not dispute that SCO could not use the discovery it seeks before the Magistrate Judge within the existing discovery period.

The discovery SCO seeks will permit SCO to identify and to depose the relevant AIX and Dynix programmers – depositions that may well lead to leads and/or admissions concerning issues of contract interpretation, contract breach, and/or copyright infringement. Such programmer depositions are also logically predicate to specific contract depositions for SCO to show that the broad contractual protections provided by the license agreements were responsive to <u>concrete</u> programming issues that do, in fact, exist. The requested materials are also needed so that SCO may proceed with expert analysis of the source code in question, in preparation for this Court's deadline for the submission of expert reports on April 22, 2005 (and, ultimately, in

15

preparation for trial). Thus far, given IBM's incomplete production, SCO has insufficient materials in its possession for any expert to conduct a complete analysis of the progression of source code, structure, sequence, organization, and protected methods and concepts from UNIX System V to AIX and/or Dynix and then to Linux.

As a result of IBM's ex parte request for an extension of time, the parties will not even argue SCO's discovery requests to the Magistrate Judge until October 19. Accordingly, even if (1) the Magistrate Judge grants every aspect of SCO's pending discovery motions on the day of the hearing; and (2) IBM promptly complies with the Magistrate Judge's Order (in a sharp break from its past course of discovery conduct in this case), there is still no way that SCO will have sufficient time to complete its discovery before the fact discovery cut-off date.

Under even the best of circumstances, SCO would not receive and therefore could not begin processing and analyzing the outstanding discovery until mid-November, at the earliest. Then, even if SCO were to reduce to a mere eight weeks the time required for both the technical review of the requested materials and the use of those materials in order to schedule and prepare for depositions on all of the crucial issues in this case – an entirely unrealistic and unreasonably abbreviated period for such extensive and detailed technical work – SCO would be left with less than a month to pursue its discovery based on the basic, predicate discovery that IBM has produced. During that time, in addition to defending against numerous IBM depositions that will undoubtedly be scheduled during the same time,[6] SCO will be required to take all of the important depositions in this case on a schedule even more onerous than the one from which this Court granted relief when it last extended the discovery cut-offs in this case.

---

[6] IBM has taken only a handful of depositions. It recently noticed fifteen more, without any advance notice to or consultation with SCO. For computation purposes below, SCO assumes that IBM will take its remaining twenty depositions during the time that SCO takes its depositions.

The following chart summarizes the problem based on different hypothetical dates for SCO's taking of depositions based on IBM's production of the currently withheld discovery:

| Deposition Start Date | Depositions/ Week | Depositions/ Business Day | SCO-Only Depositions/ Week | SCO-Only Depositions/ Business Day |
|---|---|---|---|---|
| 12/13/04 (4-week review of predicate discovery) | 6.6 | 1.4 | 4.3 | 0.9 |
| 12/27/04 (6-week review of predicate discovery) | 8.4 | 1.8 | 5.6 | 1.2 |
| 1/10/05 (8-week review of predicate discovery) | 11.8 | 2.5 | 7.8 | 1.6 |

SCO respectfully submits that the foregoing schedule is unduly burdensome and inconsistent with the sensible management of this case. This schedule would in fact impose essentially the same burdens (in terms of required depositions per business day) that IBM sought to impose in opposing the Court's previous amendment of the Scheduling Order.

IBM's opposition brief reflects a fundamental misapprehension of the purpose of the scheduling conference that SCO requested. SCO seeks to apprise the Court of the lack of progress in discovery and to bring to the Court's attention the now inescapable conclusion that given the status of discovery, SCO will not be able to make effective use of the discovery schedule that the Court established in June. As counsel for SCO explained to the Court at last week's argument, given the status of discovery and the current scheduling Order, SCO cannot afford to remain silent at the risk of being penalized later for not having raised the above-described issues at this juncture.

Although it is now apparent that a modification of the schedule will inevitably become necessary, SCO is not now asking for such a modification.  SCO proposes to await the Magistrate Judge's resolution of the pending discovery issues.  SCO will thereafter make an appropriate motion to this Court.[7]

## III.   CONSIDERATION OF IBM'S NUMEROUS FACT-INTENSIVE SUMMARY JUDGMENT MOTIONS BEFORE THE CLOSE OF FACT DISCOVERY WOULD ONLY COMPOUND THE SERIOUS DIFFICULTIES THAT ARE ALREADY OBSTRUCTING THE PROGRESS OF THIS CASE

To compound the serious case-management problems already present in this case, IBM has filed three separate summary judgment motions, which seek to leverage IBM's discovery shortcomings into accelerated adjudications of all the key fact issues in this case.  As SCO has already demonstrated, this Court has well-established discretion to postpone the consideration of any summary judgment motion in recognition that the "principles governing summary judgment procedure should be applied in a common sense manner to the realities of the litigation at hand." Williams v. Howard Johnson's, 323 F.2d 102, 106 (4th Cir. 1963); see also C. Wright et al., Federal Practice & Procedure § 2728 (2004).  Indeed, at last week's hearing, this Court confirmed in no uncertain terms its discretionary authority to stay its consideration of IBM's summary judgment motions.  See Tr. (Sept. 20, 2004) at 79 ("I clearly do have that discretion.").

---

[7] SCO does not, as IBM claims, improperly presuppose the production of the discovery SCO seeks as the basis for its motion.  IBM Opp. at 6.  Magistrate Judge Wells has already ordered IBM to produce much of the discovery.  SCO does presume that IBM will choose to produce documents over contempt of court.  Moreover, based on the clear merits of SCO's positions concerning the outstanding discovery – merits that IBM does not even attempt to address – SCO believes that Magistrate Wells will order the remaining discovery produced.  In addition, to the extent that SCO may have to present for this Court's consideration the Magistrate Judge's resolution of discovery issues, SCO will be faced with yet more delays in obtaining the critical predicate discovery that it has been seeking for over a year.

**A.      There Is Absolutely No Advantage to Proceeding with IBM's
          Summary Judgment Motions and a Great Deal of Disadvantages**

For the reasons that SCO has previously detailed, and that IBM plainly cannot dispute,

the Court should exercise its well-established discretion to deny IBM's summary judgment

motions.  Although summary judgment may in other cases expedite the resolution of uncontested

(or uncontestable) claims, under the circumstances of this case, the consideration of IBM's

motion at this juncture would provide no case-management advantages, and would entail only

additional, and intolerable, inefficiencies.

First, IBM's summary judgment motions will not streamline discovery.  Under any

reasonable schedule, IBM's motions will not be heard until the end of the calendar year <u>at the</u>

<u>earliest</u>.  While those motions are pending, discovery (on all claims and counterclaims) will

continue.  Furthermore, as discovery progresses and new information is uncovered, both parties

will likely need to provide supplemental submissions to this Court detailing the relevance of the

newly-discovered evidence to IBM's motions.  Indeed, because of the nature of the predicate,

and critically relevant, fact discovery that IBM has withheld, it is virtually certain that SCO will

be required to provide such supplemental submissions to this Court unless resolution of IBM's

motions is postponed until the end of discovery.  IBM's bare conclusory assertion that its "well-

founded motions for summary judgment . . . will greatly streamline the case" cannot change any

of these facts.  IBM Opp. at 10.

Second, in a case as large, complex, and expensive as this one, the burdens of responding

to multiple, fact-intensive summary judgment motions while discovery is ongoing are too great,

and are inconsistent with this Court's effort to maintain a fair and reasonable discovery schedule.

Because discovery is still in its early stages due to IBM's refusal to provide the previously-

19

described materials, further briefing and argument under Rule 56(f) is all but inevitable unless the resolution of IBM's dispositive motions is delayed until the end of discovery. As reflected by the recent hearing on IBM's motion for partial summary judgment on its Tenth Counterclaim, Rule 56(f) issues are themselves intricate, detailed, and time-consuming and do not advance the progress of the litigation.

Third, IBM should not be rewarded for its dilatory discovery tactics. After filing its most recent motions, IBM offered SCO a reasonable extension of time in which to respond only if SCO agreed to forego the protection of Rule 56(f). See SCO's Expedited Mot. to Enforce This Court's Amended Scheduling Order (Sept. 8, 2004) at 18. Nothing could have made IBM's preferred endgame more apparent – IBM hopes to leverage its discovery misconduct into dispositive motion victory. Postponement of all dispositive motions until the close of discovery would prevent IBM from pursuing this strategy and allow the claims in this case to be resolved as they should be – on the merits.

B.   **Contrary to IBM's Continued Efforts to Restrict the Court's Discretion, The Court Has the Well-Established Discretion to Postpone Consideration Of IBM's Summary Judgment Motions**

IBM not only ignores the considerations upon which the Court should base its exercise of discretion in this matter, but also disregards the very existence of that discretion, instead electing to characterize SCO's appeal to the Court's discretion as a revolutionary demand for the Court to "fashion a new rule solely for SCO's benefit" and to "disregard Rule 56." IBM Opp. at 7.

If its assertion is to be taken seriously at all, IBM thus fundamentally misapprehends the relevant law. SCO cites in both its Expedited Motion and its Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Tenth Counterclaim the well-developed authority,

independent of Rule 56(f), giving the district court the discretion to postpone and even deny premature summary judgment motions.

SCO does not seek to disregard Rule 56, and never argues that a summary judgment motion is <u>necessarily</u> premature simply because it was filed before the close of discovery. IBM cites <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), which confirms the now unexceptional proposition that a party <u>can</u> oppose a summary judgment motion by filing a Rule 56(f) motion – <u>if it so chooses</u>. <u>See id.</u> at 326.[8] But SCO has not done so, and thus, contrary to IBM's additional rhetoric, does not ask that Rule 56(f) "operate automatically" or apply merely because "discovery is incomplete." IBM Opp. Mem. at 9 n.6. Not "every other litigant in federal court" seeking postponement of summary judgment consideration does so on the basis of Rule 56(f); the Court's underlying case-management discretion is an independent basis. To be sure, SCO's two memoranda alone cite several litigants who not only moved for the relief SCO seeks without an appeal to Rule 56(f), but were in fact granted such relief explicitly "as a matter of discretion." <u>See</u> SCO Motion to Enforce at 16-17 (citing <u>Toyoshima</u>); SCO SJ Opp. Mem. at 63-68.[9]

---

[8] <u>Celotex</u> addressed whether Rule 56 shifted to a movant for summary judgment the burden of negating an opponent's claim. Neither party in <u>Celotex</u> asked the Court to postpone summary judgment consideration on the basis of incomplete discovery. In fact, the <u>Celotex</u> Court expressly recognized that the parties "had conducted discovery." <u>Id.</u>

[9] IBM addresses only some of the cases SCO has cited, and fails to distinguish any of them. IBM attempts to brush aside <u>Toyoshima Corp. of California v. General Footwear, Inc.</u>, 88 F.R.D. 559 (S.D.N.Y. 1980), on the ground that "the court denied plaintiff's motion for partial summary judgment at least in part because <u>defendants contended</u> 'there were genuine issues of fact,'" IBM Opp. at 9 n.7 (emphasis added), but that purportedly "distinguishing characteristic" does not distinguish <u>Toyoshima</u> from this case or, indeed, from virtually any case involving a summary judgment motion. IBM also mistakenly argues that issues of material fact – and not the exercise of the court's discretion – was the basis for the decision to deny summary judgment in <u>Adams v. R.R. Donnelley & Sons</u>, No. 98 C 4025, 2001 WL 336830 (N.D. Ill. Apr. 6, 2001). IBM confuses the facts of that case. In a <u>prior motion</u> for summary judgment, material issues of fact were ruled to have existed and the motion was denied. The <u>Adams</u> opinion cited by SCO considered a <u>renewed motion for summary judgment almost two years later</u>, based on procedural grounds, and the court therein exercised its discretion to "defer briefing and

21

IBM thus fails to address the case management and administrative considerations that, under the Court's well-established discretion, warrant the deferral of IBM's motions. This Court may exercise that discretion as the most appropriate and efficient step to take at this stage in the litigation, as is dictated by the specific facts of this case, the progress of the litigation, and the development of discovery. See Part III.A, above.

In addition, IBM's allusion to (and failure even to try to address) the evidence SCO presented on the merits of IBM's motion is misplaced. SCO briefly addressed the merits to refute IBM's inevitable claims that SCO seeks delay to avoid those issues. Instead of accusing SCO of refusing to address the merits, IBM mistakenly points to SCO's opposition in arguing that SCO can address now the full merits of those motions. See IBM Opp. at 8. In its Expedited Motion to Enforce the Court's Amended Scheduling Order, SCO summarized only the most obvious reasons and immediately available evidence that preclude IBM's motions. SCO would face a different and considerably more burdensome task in marshalling all of the arguments and evidence, and detailing the likely sources for all of that evidence, against those motions even while it tries to take discovery on the current schedule. SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Tenth Counterclaim illustrates the significant and burdensome effort required. To require SCO to brief, and the Court to consider, both of IBM's additional pending dispositive motions at this point would impose far greater burdens than SCO

consideration of Donnelley's summary judgment motion" entirely on efficiency and procedural grounds, absent a finding of material fact issues in this new motion. Finally, IBM claims that "there were genuine issues of material fact" that precluded summary judgment in Young Enterprises, Inc. v. United States, 26 Cl. Ct. 858, 864 (Cl. Ct. 1992), but IBM fails to recognize that the Young court expressly delineated its discretionary authority to postpone consideration of a summary judgment motion until after discovery, even absent issues of material fact: "A trial court may exercise discretion to deny summary judgment when it is not reasonably certain that there is no triable issue of fact. The court may also postpone a decision until it can be founded on a more complete factual record." This is precisely the proposition for which it is cited by SCO. See SCO's Brief at 16.

has undertaken to address the case-management issues in this case. In addition, SCO shows above that there are no case-management-related efficiencies to be gained, and significant inefficiencies to be lost, from the consideration of IBM's motions at this stage – when the parties should be focused on obtaining discovery.[10]

## IV.   IBM CAN NEITHER DEFEND THE DELAYS IT HAS IMPOSED NOR SHIFT TO SCO THE RESPONSIBILITY FOR THOSE DELAYS

SCO shows above that IBM's repeated efforts in its opposition brief to use Rule 56(f) as a sword to impose further and unnecessary inefficiency into the management of this case are baseless. IBM's other main arguments are that "SCO has only itself to blame" for the rescheduling of the hearing before the Magistrate Judge, and that "SCO has sought to oppose discovery at every turn." IBM Opp. at 2, 10. These familiar, but meritless, IBM refrains lack any basis in the true facts of the discovery history of this case and do not remotely warrant denial of SCO's requested relief.

### A.   IBM Offers No Justification for the Further Delay in Discovery It Obtained By Waiting Until the Eleventh Hour to Seek to Postpone The Hearing Before the Magistrate Judge

As SCO has explained, IBM recent action in obtaining a last-minute, five-week postponement of the hearing before the Magistrate Judge (from September 14 to October 19) guarantees that SCO will not be able to complete discovery before the February 11 discovery cut-off. IBM's attempt in its opposition brief to justify the postponement is meritless.

---

[10] IBM also points to SCO's reference to its own potential motion for summary judgment on its contract claims as evidence that the "contract claims are susceptible to summary adjudication now." IBM Opp. at 8. SCO alluded to its intent to file such a motion "at the appropriate time." The appropriate time certainly could not be now, because the discovery SCO continues to seek is necessary to permit SCO to show how IBM has breached the license agreements. In addition, SCO's intent to file its own summary judgment motion says nothing about the impropriety of IBM's request for summary judgment on the basis of a contractual interpretation supported by untested, highly fact-specific, and indeed flatly contradictory extrinsic evidence.

IBM first incorrectly argues that "It was SCO's submission of multiple overlength briefs seeking the same discovery – five briefs to date (for a total of 88 pages) that occasioned the postponement of the September 14, 2004 hearing before Judge Wells." IBM Opp. at 2. That is false. The sole and express basis on which IBM argued for the postponement was to respond to SCO's August 19 Supplemental Memorandum.

IBM similarly contends that SCO's filings merely reiterated SCO's arguments regarding the exact same discovery issues. IBM Opp. at 2-3. This is also false: As IBM knows, SCO's submissions concerned distinct discovery issues before the Magistrate Judge on parallel tracks. SCO's Renewed Motion to Compel asks the Magistrate Judge to order IBM to produce those materials that the Magistrate Judge has already ordered IBM to produce. SCO filed its Memorandum Regarding Discovery (and reply brief in support thereof) in response to the Magistrate Judge's March 3 Order requiring the parties to submit such memoranda, and SCO details therein why other documents that IBM has long refused to produce are critically important to SCO's development of its proof and defenses.

In a further effort to support its inaccurate argument that it sought the postponement of the September 14 hearing in order to respond to 88 pages of briefing, IBM says that it is "blatantly false" for SCO to say that its Supplemental Memorandum was filed on August 19. Id. at 4 & n.2. IBM's effort to create a technical debate over what the word "filed" signifies in this context utterly misses (or tellingly ignores) the point. These are the facts:

- SCO attached the Supplemental Memorandum with the motion indisputably filed on August 19. The entry for the filing appears clearly in the Court's docket. IBM's claim that SCO made this filing in the supposed hope that "IBM would not be given the opportunity to respond" is absurd – SCO filed the paper twenty-six days before the hearing.

24

- Indeed, IBM timely filed and served a <u>substantive</u> brief in response to SCO's August 19 memorandum, and of course did so before seeking the postponement of the hearing before the Magistrate Judge. IBM offers no explanation for how it could have done so if it did not have the requisite notice that SCO's supposed non-"filing" of Supplemental Memorandum would have occasioned.

- In the substantive brief it filed in opposition to the Supplemental Memorandum, IBM neither opposed the filing of the Memorandum nor requested any extension of time to respond thereto. (Instead, IBM asserted an unsupported claim of privilege over two documents referenced in the Memorandum – without asserting, as it now does, that it needed time to obtain any affidavits to support any part of the claimed privilege.)

The fact is that upon the formality of the September 3 Order granting SCO's motion for leave to file its Supplemental Memorandum, IBM recognized and seized upon another opportunity for delaying SCO's receipt of the discovery at issue – and did so after having already submitted one substantive response to SCO's Memorandum. IBM is thus in no position to take issue with SCO's alleged multiple bites at the apple. The facts leave no doubt that if IBM were serious about allowing discovery to move forward in the way it must to allow SCO the opportunity to prove its claims and defenses, IBM would not have delayed until the last possible moment and then filed an unnecessary request for a substantial postponement of the hearing before the Magistrate Judge on SCO's two pending motions to compel.

**B.    In Attempting to Blame SCO for the Delays in Discovery, IBM Simply Ignores Its Own Conduct and Improperly Presupposes That the Discovery SCO Has Long Sought Is Irrelevant**

In response to SCO's repeated arguments in several briefs over the past several months that it needs the outstanding discovery it has long sought from IBM in order (i) to respond to certain of IBM's requests for discovery, (ii) to identify deponents in the first instance and thereafter to develop a sensible deposition schedule, and (iii) to respond to IBM's summary judgment motions, IBM argues that SCO's request for the discovery is "disingenuous" because

25

of "SCO's demonstrated unwillingness to actually proceed with discovery," and because "SCO has also resisted deposition discovery." IBM Opp. at 10. IBM's arguments, however, rely on its baseless presupposition that the discovery SCO has sought for over a year is not relevant – even as IBM fails to provide any argument in its brief to refute the numerous, independently-sufficient grounds on which such discovery must be produced.

Moreover, if there were any doubt, SCO has already demonstrated how IBM's efforts to accelerate depositions would substantially prejudice SCO. After SCO moved in May to amend the Court's Scheduling Order, IBM noticed the depositions of (among others) Otis Wilson and David Frasure, two former AT&T employees, for the first week of June. IBM's corporate counsel represents Mr. Wilson, IBM pays Mr. Frasure's legal bills, and an attorney closely associated with IBM represents Mr. Frasure. See SCO's Expedited Motion at 41. IBM noticed those depositions after having produced to SCO in late May approximately forty boxes of discovery, which included materials of central relevance to the depositions. SCO moved to postpone the depositions, explaining that (among other things) "SCO understandably has not yet been able to conduct a detailed review of the existing production." SCO's Expedited Motion and Memorandum for a Protective Order dated June 3, 2004, at 3. The depositions went forward.[11] IBM actually points to the depositions as examples of how discovery should be proceeding in this case. See IBM Opp. at 11.

---

[11] Moments before Mr. Wilson's deposition began, IBM produced to SCO two lengthy declarations that Mr. Wilson had executed for IBM months earlier. SCO was thus forced to use its limited time examining Mr. Wilson to explore not only the time that IBM had used during its deposition of Mr. Wilson but also the lengthy (and previously undisclosed) declarations that Mr. Wilson adopted during his questioning by IBM. When SCO brought this matter to the Magistrate Judge's attention after the Wilson deposition, Magistrate Judge Wells ordered IBM to produce thereafter any such deponent declarations at least a full day before the deposition.

Yet weeks after the depositions, when SCO was finally able to complete even a preliminary review of IBM's late-May production, SCO found the extensive and <u>flatly contradictory</u> prior testimony both Mr. Wilson and Mr. Frasure had given on the very subject matter of their depositions – which testimony SCO included in its Expedited Motion to Enforce the Amended Scheduling Order.  SCO is obviously entitled to re-open those depositions to cross-examine Messrs. Wilson and Frasure with their prior testimony, but the much more reasonable and efficient way to have had them deposed was to permit SCO to review the plainly relevant documents regarding the depositions.

The type of substantial, concrete prejudice to SCO arising out of those depositions is what SCO reasonably seeks to avoid by bringing its pending motions.  Thus, with respect to the types of discovery IBM complains about in its Opposition Brief, for example:

- SCO has repeatedly explained that in order to respond to IBM's discovery requests in the level of detail that IBM has demanded, SCO must first review the discovery that IBM has failed to produce.

- SCO of course has not noticed the depositions of IBM's senior employees who work on IBM's Linux activities, because IBM has failed properly to respond to SCO's requests for the production of those employees' Linux-related documents, which SCO seeks (again) in one of the pending motions to enforce the Magistrate Court's March 3 Order.

- SCO of course has not noticed the depositions of the declarants on whom IBM relies in its motion for summary judgment on SCO's contract claims, because during the entire pendency of the motion SCO has sought through its pending motions to compel to require IBM to produce the documents that will allow SCO to cross-examine those witnesses.  IBM's claim that it has been "offering to make such witnesses available," IBM Opp. at 11, merely presents the same threat of prejudice that arose out of the depositions of Messrs. Wilson and Frasure.

IBM further contends that SCO somehow acted improperly in requesting the rescheduling from September 23 to November 2 of a deposition of a SCO employee that IBM

27

had scheduled, but fails to mention that it noticed that deposition and fourteen others without any notice to or consultation with SCO – even though SCO had previously requested such a courtesy before IBM unilaterally scheduled such depositions.  (Despite IBM's selected manner of proceeding – which has already required IBM to unilaterally postpone certain of its noticed depositions – SCO has worked to accommodate IBM's scheduling, and with respect to most of the depositions for which the witnesses were available we have been able to accommodate them.)  In any event, IBM's reliance on the required rescheduling of this one unilaterally-noticed deposition as a supposed exemplar is indicative of IBM's skewed and illogical view of how discovery should proceed in this case.

## CONCLUSION

For all of the above reasons, SCO respectfully requests that the Court defer consideration of IBM's summary judgment motions until after the end of the Court's fact-discovery period and intervene to assist the parties in reestablishing and enforcing a discovery schedule that will permit this litigation to proceed fairly and efficiently to a resolution on its merits.

DATED this 24th day of September, 2004.

By: _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver, Esq. (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

28

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of

**CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF SCO'S**

**EXPEDITED MOTION TO ENFORCE THE COURT'S AMENDED SCHEDULING**

**ORDER AND EMERGENCY MOTION FOR A SCHEDULING CONFERENCE (Filed**

**Under Seal)** was served on Defendant International Business Machines Corporation on this 24th

day of September, 2004, by U.S. mail, postage prepaid to:

               Alan L. Sullivan, Esq.
               Todd M. Shaughnessy, Esq.
               Snell & Wilmer L.L.P.
               15 West South Temple, Ste. 1200
               Gateway Tower West
               Salt Lake City, Utah 84101-1004

Copy to:

               Evan R. Chesler, Esq.
               Cravath, Swaine & Moore LLP
               Worldwide Plaza
               825 Eighth Avenue
               New York, NY 10019

               Donald J. Rosenberg, Esq.
               1133 Westchester Avenue
               White Plains, New York 10604

               *Attorneys for Defendant/Counterclaim Plaintiff IBM Corp.*