

RECEIVED CLERK
**FILED**
2004 NOV 30 P 1:40
U.S. DISTRICT COURT
DISTRICT OF UTAH

Michael Patrick O'Brien (USB #4894)
Andrew H. Stone (USB #4921)
JONES, WALDO, HOLBROOK & McDONOUGH
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200

Attorneys for G2 Computer Intelligence, Inc.

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, <br><br> Plaintiff/Counterclaim Defendant, <br><br> vs. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION <br><br> Defendant/ Counterclaim-Plaintiff. | **MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO UNSEAL COURT FILE** <br><br><br><br> Civil No. 2:03CV-0294 DAK <br> Judge Dale A. Kimball <br><br> [ORAL ARGUMENT REQUESTED] |

G2 Computer Intelligence, Inc. ("G2"), by and through its counsel, hereby files this Memorandum in Support of its Motion to Intervene and to Unseal in the above-captioned matter.

## INTRODUCTION

G2 is the publisher of Client Server News and LinuxGram, both publications devoted to the IT industry. G2's publications are engaged regularly in the gathering and dissemination of news concerning IT, and have reported on this case.

On March 6, 2003, SCO Group and others filed this action in Utah state court against IBM asserting that IBM had improperly incorporated aspects of SCO's UNIX operating system in versions of Linux distributed by IBM. The case was removed to this Court on March 25, 2003. Because Linux is perhaps the best-known of open-source operating systems, the case has been and continues to be the subject of intense public interest.

On September 16, 2003, this Court entered a stipulated protective order (the "Order"), pursuant to which each party was permitted to unilaterally designate discovery material as "Confidential." The only requirement for this designation was that the party's counsel "in good

670339v1

341

faith contends" that such material "is not publicly known that would be valuable to third parties . . . and that the DISCLOSING PARTY would not normally reveal, and has not revealed, to third parties without an agreement to maintain it in confidence." Order ¶ 1.C and 3. Any party who files Confidential material or "any pleading, motion, deposition transcript, or other papers filed with the Clerk of the Court" is required to file such materials under seal. Order ¶ 6.

To date, at least 29 filings have been filed in this matter under seal.[1] These pleadings (the "Sealed Documents") have been placed under seal, hidden from the public, without any showing by the party making the designation that the material is <u>actually</u> confidential. The parties can thereby protect from public disclosure any materials they simply do not want the public to see, whether or not their release would actually cause that company any competitive injury. This denial of the public's right to access to these pleadings violates not only the common law right of public access to judicial records, but the public's First Amendment right to oversee their judicial system.

G2 therefore moves to intervene in this action[2] and further moves for a modification to the Protective Order which will ensure that information in this seminal case which is not legitimately confidential is no longer hidden from public view.

---

[1] To the extent any correspondence with the Court is not reflected in the Clerk's file, G2 seeks that correspondence, as well.

[2] G2 has standing to intervene and seek access to the Sealed Documents on behalf of the public. *See Pansy v. Stroudsberg*, 23 F.3d 772, 777 (3d Cir. 1994) ("We have routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings."). The standing of media entities to seek public access to judicial documents on behalf of the public was accepted by the Tenth Circuit in *United States v. McVeigh*, 119 F.3d 806, 809 n.4 (10th Cir. 1997) and *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998).

## ARGUMENT

### I. THE FIRST AMENDMENT GUARANTEES THE PUBLIC'S RIGHT OF ACCESS TO NON-CONFIDENTIAL JUDICIAL DOCUMENTS.

As the Tenth Circuit held in *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980), although the court has the discretion to control and seal documents in its possession, "[i]n exercising this discretion, we weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." It is this Court's responsibility to make an independent determination of whether these documents may be released to the public and not leave this decision in the hands of the parties, who have a personal interest in keeping embarrassing information out of the public eye. The Sixth Circuit emphasized the duty on the part of the court to weigh the public's interest in disclosure against the desire of the parties to keep unflattering material secret in *Proctor & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219 (6th Cir. 1996):

> The District court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public. It certainly should not turn this function over to the parties . . .

*Id.* at 227.

It is well established that the First Amendment guarantees to the public and the press a right of access to judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). Although the Supreme Court has not directly addressed the issue of whether the First Amendment right of access applies to court records and documents, the Tenth Circuit has assumed that there could be a right of access under the First Amendment to such materials. *United States v. McVeigh*, 119 F.3d 806, 811-12 (10th Cir. 1997) *cert. denied sub nom*; *Dallas Morning News v. United States*, 522 U.S. 1142, 140 C.Ed. 2d 163, 118 S.Ct 1110 (1998); *United States v. Gonzales*, 150 F.3d 1246, 1255-56 (10th Cir. 1998).[3] Both courts applied the criteria

---

[3] Both *McVeigh* and *Gonzales* were criminal cases. The Tenth Circuit has not taken a position as to whether the First Amendment could create a public right of access to judicial records in civil cases as well. However, the Courts of Appeal that have addressed the question
(continued...)

for public access set forth by the Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("Press-Enterprise II") to determine whether there was a First Amendment right of access to the documents sought:

> (1) whether the document is one which has historically been open to inspection by the press and public; and
>
> (2) whether public access plays a significant positive role in the functioning of the particular process in question.

*McVeigh*, 119 F.3d at 812. This inquiry is referred to as the test of "experience and logic." *Id.* As the *McVeigh* court noted, "[i]f the qualified First Amendment right of access is found to apply to the documents under the 'experience and logic' test, the district court may then seal the documents only if 'closure is essential to preserve higher values and is necessary to serve that interest.'" *Id.* at 813 (emphasis added) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (Press-Enterprise I)). As the Supreme Court stated in *Elrod v. Burns*, 427 U.S. 347, 873 (1976), "[l]oss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." Both criteria are satisfied here.

As the *Gonzales* court noted, "[u]nder the Press-Enterprise II analysis, the 'experience' test examines whether the 'place and process have historically been open to the press and general public." *Gonzales*, 150 F.3d at 1256. As the Tenth Circuit noted in *McVeigh*, the "experience" of the American judicial system is that documents filed with the court have historically and presumptively been available to the public. *McVeigh*, 119 F.3d at 811. This historical right has guaranteed the public access to judicial documents except where outweighed by a party's

---

[3] (...continued)
have generally held that the First Amendment provides a right of access to civil proceedings. As the Seventh Circuit noted in *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1983), "[T]he policy reasons for granting public access to criminal proceedings apply to civil cases as well. These policies relate to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *See also*, *Westmoreland v. Columbia Broadcasting Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984), *cert. denied*, *Cable News Network, Inc. v. U.S. District Court*, 472 U.S. 1017 (1985); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984).

countervening interest, such as the interest of a business in keeping its trade secret information confidential. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

"The 'complementary' test for 'logic'", according to the *Gonzales* court, " asks "whether public access plays a significant positive role in the functioning of the particular process in question." *Gonzales*, 150 F.3d at 1256. The courts have uniformly held that the openness of the judicial system, especially where judicial proceedings involve matters of substantial public interest, is of critical importance to the proper functioning of that system. *See Richmond*, 448 U.S. at 571-72; *McVeigh*, 119 F.3d at 813. Here the parties, each filling an important role in IT, are engaged in a dispute with potentially dramatic potential ramifications for the development of widely available open source operating systems. The extent, if any, to which SCO has proprietary rights in Linux is of broad public interest. "Logic" demands, therefore, that the public be given access to non-confidential judicial documents in such an important case as this.

Here, the First Amendment clearly requires that the Sealed Documents be released to the extent that the parties cannot affirmatively demonstrate that those records are truly confidential and that their disclosure would cause <u>specific</u> competitive harm to a party. The public's interest in the evolution of open source software and the perhaps countervailing public interest in the protection of intellectual property far outweigh the interests of the parties in keeping information which is not <u>truly</u> confidential under the seal of this Court.

Thus, assuming, as the Tenth Circuit has done, that the First Amendment applies to the public's right of access to judicial documents, this Court must unseal the pleadings filed in this action unless the parties show that sealing is "essential" to preserve their interest in confidentiality.

## II. THE COMMON LAW ALSO GUARANTEES THE PUBLIC'S RIGHT OF ACCESS TO NON-CONFIDENTIAL JUDICIAL DOCUMENTS.

The non-confidential portions of the Sealed Documents must also be released under the common law. The Tenth Circuit has held that under the common law judicial documents, those papers filed with the court, are presumptively available to the public. *McVeigh*, 119 F.3d at 811.

As the United States Supreme Court held in *Nixon*, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." 435 U.S. at 597. The courts have recognized many reasons for maintaining this common law right of access, including keeping a "watchful eye on the workings of public agencies," publishing "information concerning the operation of government," *id.*, and "preserving the integrity of law enforcement and judicial processes." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.) *cert. denied sub nom*; *Hopkinson v. United States*, 474 U.S. 1022 (1985).

Although this right is "not absolute," the district court may not simply deny the public access to judicial records out of hand. *See Nixon*, 435 U.S. at 598. Rather, the court must balance the competing interests of the public and the parties to the litigation, considering whether the records are sought for "improper purposes." *Huntsman-Christensen Corp. v. Entrada Indus., Inc.*, 639 F. Supp. 733, 736 (D. Utah 1986). Where trade secret information is involved, it is the commercial interests implicated by the possible release of such information which justifies denying the public access to judicial records; "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983).

Here, the public's right of access to the non-confidential portions of the Sealed Documents clearly outweighs any rights the parties may have to keep that material secret. The public's common law right of access therefore demands that pleadings or portions of pleadings the parties cannot show to be truly confidential must be unsealed.

### III. THE PARTIES HAVE THE BURDEN OF SHOWING THAT PLEADINGS SHOULD BE UNDER SEAL.

The procedure for determining which pleadings, or portions of pleadings, remain under seal must implement the presumptive public right of access. Rule 26(c) of the Federal Rules of

Civil Procedure does this by placing the burden of showing that each particular document, or portion of a document, filed with the court should be put or remain under seal.

This Court, in *Grundberg v. Upjohn Co.*, 137 F.R.D. 372 (D. Utah 1991), imposed just such a burden in a dispute involving issues very similar to those presented here. In that products liability case, where the plaintiff had challenged the "confidential" designation applied to certain documents by Upjohn, the court held that the burden of showing the "good cause" necessary to justify maintaining these documents within the protective order was on Upjohn. The court noted that the "'party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." 136 F.R.D. at 389 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). According to the court, "good cause must be based on a specific factual determination of potential harm, not on conclusory statements." *Id.* (citing *Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986)).

Upjohn argued that certain materials should remain within the protective order because they were "confidential." The court, in determining whether the materials involved were protectible under that standard, defined "confidential information" as "information which, if disclosed, 'will cause a "clearly defined, serious injury" to the defendant's business.'" 136 F.R.D. at 394 . It held that the Upjohn materials at issue did not meet this standard, and thus fell outside of the protective order, because "Upjohn did not demonstrate that it will suffer a particularized harm if such documents were released from the protective order. . . ."

> Upjohn has not established good cause or otherwise met its burden of proof to establish that the documents sought to be released from the confidentiality designation in the protective order contain trade secrets, that such contain confidential information or that release of such documents from the protective order would cause Upjohn cognizable or commercial harm.

*Id.* at 395.

The documents at issue here were placed under seal based on the unilateral decision of the parties as to what information was "confidential." Neither party was required to prove that it

670339v1

7

would actually be harmed by the release of such information or even that the information sought to be protected was in fact confidential.

Additionally, even if a portion of a pleading is legitimately confidential, this would not justify the sealing of the entire document. As the Seventh Circuit held in *Methodist Hospitals v. Sullivan*, 91 F.3d 1026, 1032 (7th Cir. 1996):

> To say that particular information is confidential is not to say that the entire document containing that information is confidential . . . . The district court should not have denied defendants' motion to unseal their memorandum. The court instead should have ordered defendants to redact the confidential information and then should have placed the remainder of the document in the public record.

There is no reason that, even if some of the Sealed Documents contain information that is legitimately confidential, that such information cannot be redacted and the rest released to the public.[4]

G2 suggests that this Court require each party to demonstrate, as to each judicial document placed under seal, that the designated confidential material contained in such document is actually "confidential" under the *Grundberg* test, *i.e.*, that the release of such documents would cause that party "particularized" "cognizable or commercial harm."

## CONCLUSION

G2 thus requests that this Court require the parties to prove, with respect to each Sealed Document, that the Confidential Information contained in that document is truly confidential. G2 also requests that the Court require the parties to present to this Court, for unsealing, all pleadings filed under seal with <u>only</u> actually confidential information redacted. Finally, G2

---

[4] In fact, this very procedure has been followed in pleadings filed in the *U.S. v. Microsoft* and *Sun v. Microsoft* cases and was followed by this Court in the *Caldera v. Microsoft* case, Case No. 2:96CV 0645B (D. Utah).

670339v1

8

requests that the Court follow this same procedure with respect to any and all correspondence between the parties and the Court, if any, that is not part of the Clerk's file in this case.

DATED this 30th day of November, 2004.

JONES, WALDO, HOLBROOK & McDONOUGH

By _____
Michael Patrick O'Brien
Andrew H. Stone
Attorneys for G2 Computer Intelligence, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of November, 2004, I caused a true and correct copy of the foregoing to be mailed, postage prepaid, to the following:

> Brent O Hatch
> Mark F. James
> Hatch, James & Dodge, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, UT 84101
>
> David Boies
> Boies, Schiller & Flexner LLP
> 333 Main Street
> Armonk, NY 10504
>
> Stephen N. Zack
> Mark J. Heise
> Boies, Schiller & Flexner LLP
> 100 Southeast Second Street, Suite 2800
> Miami, FL 33131
>
> Todd Shaughnessy
> Snell & Wilmer LLP
> 15 West South Temple, Suite 1200
> Salt Lake City, UT 84101
>
> Advid Marriott
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019
>
> Donald J. Rosenberg
> 1133 Westchester Avenue
> White Plains, NY 10604