Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower -- Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

**FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH**

**DEC 2 3 2004**

**MARKUS B. ZIMMER, CLERK**

BY_____
DEPUTY CLERK

*ATTORNEYS FOR THE SCO GROUP, INC.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., | **FILED UNDER SEAL** |
| Plaintiff/Counterclaim-Defendant, | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL DISCOVERY** |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Case No. 2:03CV0294DAK |
| | Honorable Dale A. Kimball |
| Defendant/Counterclaim-Plaintiff. | Magistrate Judge Brooke C. Wells |

unsealed

365

The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in Support of its Renewed Motion to Compel Discovery regarding the files of IBM's executive management and SCO's Motion to Compel Discovery regarding its Rule 30(b)(6) depositions of IBM.

## SUMMARY OF ARGUMENT

In disregard of SCO's long-standing document requests, this Court's March 2004 Order, and now this Court's October 2004 Order requiring IBM's executives and Board of Directors to provide sworn affidavits on the issue, IBM has failed to produce documents regarding its "Linux strategy" – which is at the heart of this case – or to explain the glaring absence of such documents in its production. Neither SCO's document requests nor this Court's Orders leave any ambiguity regarding the broad scope of the Linux-related documents that IBM must produce. Nevertheless, IBM has apparently adopted, unilaterally, an unduly narrow interpretation of its obligations. Moreover, the cursory affidavits that IBM has supplied in response to the Court's most recent Order raise more questions about IBM's discovery practices than they answer.

In addition, IBM has improperly refused to produce Rule 30(b)(6) witnesses on several appropriate topics. For example, IBM refuses to provide any witness to testify about the nature and extent of IBM's contributions to Linux – a core issue in this case. IBM's intransigence thus compounds its withholding of documents and proper interrogatory responses to SCO's prior discovery requests that seek similar, critically relevant information.

IBM has unilaterally blocked SCO from obtaining even the most rudimentary information that it needs to develop its proof for trial. In light of IBM's longstanding delay on this critical discovery – and in light of the currently scheduled, impending close of fact discovery (on February 11, 2005) – the Court should order IBM to produce immediately (1) all documents from its

ii

executives and Board of Directors that mention or relate in any way to Linux and (2) witnesses who can speak to the full scope of the topics SCO has noticed.

## BACKGROUND

**SCO's Document Requests.**  On June 24, 2003, SCO served on IBM document requests requiring the production of all documents "concerning any contributions to Linux or to open source made by IBM and/or Sequent," and all documents "concerning IBM's contributions to development of the 2.4 and 2.5 Linux Kernel." Exh. A at 10, 11.  SCO's December 4, 2003 requests further requested that IBM produce:

> "53.  All documents concerning IBM's decision to adopt, embrace or otherwise promote Linux, including but not limited to the following:
>
> > a.   all such documents in the possession of Sam Palmisano, Irving Wladawsky-Berger, Paul Horne and Nick Bowen;
> >
> > * * *
> >
> > c.   all presentations made to IBM's top management including its Board of Directors concerning such decision;
> >
> > d.   all documents from all Board of Directors' meetings relating to such decision, including Board notebooks, Board minutes and notes from all persons in attendance at such meetings.
> >
> > * * *
>
> 56.  All business plans for Linux." Exh. B at 4-5.[1]

As SCO documented in its prior memoranda (of July 6 and August 26) in support of its Renewed Motion to Compel, IBM has publicly adopted a strategy to invest billions of dollars in Linux.  SCO has shown that:

---

[1] In each set of requests, SCO defined the word "concerning" as follows:  "The term 'concerning' shall mean relating to, referring to, reflecting, describing, evidence, referencing, discussing or constituting." Exh. A at 2; Exh. B at 2.

- Mr. Palmisano was the Senior Vice President in charge of IBM's server business, is now IBM's CEO and Chairman of the Board, and is the IBM executive responsible for spearheading IBM's strategy to shift towards Linux as its operating system of choice;

- Mr. Wladawsky-Berger is IBM's "Linux czar," and has sent e-mails to top technology executives regarding the rise of Linux; and

- IBM's Board has overseen a strategy pursuant to which IBM has increased its Linux-based revenues to more than $2 billion in 2003, after doubling that number from 2001 to 2002 and again from 2002 to 2003.

Notwithstanding the breadth of SCO's discovery requests and the critical importance of

IBM's Linux efforts to this case and to IBM's business, IBM has produced very little in the way of

responsive documents from IBM's above-mentioned executives or Board of Directors.

**The Court's March 2004 Order and IBM's Response.**  After SCO first raised the issue

with the Court, on March 3, 2004, the Court ordered as follows:

> "IBM is to provide documents and materials generated by, and in possession of employees that have been and that are currently involved in the Linux project. IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger.  Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" 3/3/04 Order at 4-5.[2]

IBM provided a sworn affidavit detailing its efforts in complying with the order, and a statement

that its answers and materials provided are given to the best of its knowledge and are complete,

detailed and thorough.  Exh. D.

---

[2] The Court took the phrase "ambitious Linux Strategy" from the March 20, 2000 The New York Times article that described the strategy and specifically mentioned Messrs. Palmisano and Wladawsky-Berger. Exh. C.  The article described IBM's strategy as one in which IBM "had done something profound:  embrace Linux, a symbol of software's counterculture, as the operating system of the future for the Internet."  The article went on:  "IBM, it was decreed, would embark on a costly program to make all its hardware and software work seamlessly with Linux.  So quickly did the company mobilize that even now, hundreds of engineers across the company are already engaged in the Linux campaign, and IBM says its army of Linux engineers will number in the thousands within a few years."  The article explained that "IBM's Linux effort is a long-term strategy." The New York Times article also described Mr. Palmisano as "the senior executive who pushed most emphatically for the Linux initiative – and has the most riding on its outcome."

IBM subsequently produced 1,000 pages of documents from Mr. Palmisano's files (none of which was generated by him), no documents at all from Mr. Wladawsky-Berger's files, no documents from any individual Board members, and only a single presentation from the files of IBM's Board of Directors. The deficiencies in IBM's production were obvious:

–   no e-mails or other correspondence discussing Linux that was written, sent, or received by Mr. Palmisano;

–   no e-mails, letters, notes, diary or calendar entries, memos, or other documents about Linux from the files of Mr. Wladawsky-Berger; and

–   no Board minutes, notes, memoranda, e-mails, or other correspondence discussing Linux that were written, sent, or received by any member of IBM's Board.

Although SCO attempted to resolve these shortcomings with IBM, IBM insisted that it had produced all of the responsive documents in its possession.

**The Court's Order on SCO's Renewed Motion to Compel.**   In light of such shortcomings in IBM's discovery, SCO filed a Renewed Motion to Compel on July 6, 2004. In its opposition brief, IBM claimed: "IBM has collected and produced the non-privileged, responsive documents that were found in the files of its senior executives and its Board of Directors" and has not "improperly 'filtered' and excluded responsive documents." Exh. E at 10. IBM thus asked SCO and the Court to believe that IBM had put into place a multi-billion dollar worldwide Linux business plan, but that neither its Chief Executive Officer, nor its "Linux czar," nor its Board of Directors retained any significant documentation concerning that plan.

SCO's Renewed Motion to Compel (and SCO's other discovery application) was heard by the Court on October 19, 2004. When the Court inquired of IBM's counsel as to whether IBM was prepared to submit affidavits in support of its argument that it had nothing more to produce, IBM's counsel promised to "look again" for documents that the Court had ordered produced on March 3

and stated that IBM would "provide you and counsel, if you wish, with an affidavit describing the efforts we've undertaken to find those documents." 10/19/04 Hr'g Tr. at 49-50 (Exh. F). At the hearing, the Court directed IBM to provide "affidavits from those individuals in management, Mr. Palmisano and Mr. Wladawsky-Berger, concerning what may exist within their files. Also affidavits regarding the board of directors information." Id. at 84. The Court's subsequent written Order directed IBM to provide affidavits from "the Board of Directors, Mr. Palmisano, and Mr. Wladawsky-Berger regarding production of all non-privileged documents pertaining to IBM's Linux strategy." 10/20/04 Order at 1.[3]

**IBM's Responses to the Court's October 2004 Order.** On November 19, 2004, IBM produced four short affidavits in response to the Court's October Order. In addition to their various other deficiencies, detailed below, none of IBM's declarations even remotely attempts to explain the absence of responsive Linux documents in IBM's production.

1. Declaration of Samuel Palmisano (Exh. G). Mr. Palmisano states that he gave IBM's attorneys access to his files, and that attorneys searched his files in February 2004. Mr. Palmisano does not suggest that he assisted in any way or that all of his responsive documents have been produced. Nor does he suggest that either following the February search or the October 19 hearing, he or any IBM attorney "looked again" for responsive documents.

2. Declaration of Irving Wladawsky-Berger (Exh. H). In contrast to Mr. Palmisano, Mr. Wladawsky-Berger indicates that he (and his counsel) did look for additional responsive documents following the October hearing. Exh. H at 3. As a result of that further review, and notwithstanding IBM's repeated assertions to SCO, and assertions and certification to the Court, that all responsive documents had been produced, Mr. Wladawsky-Berger declares that he found "two folders" of

---

[3] The remainder of the discovery issues that the Court heard on October 19 were taken, and remain, under the Court's advisement.

additional documents on his computer that "may have been overlooked." Id. at 3.[4]  He further

reveals that even though he and his administrative assistant searched for and found documents that

they believed might be responsive to SCO's requests in 2003, IBM did not produce any of those

documents because the attorneys concluded that none of them were "responsive to any of SCO's

document requests." Id. at 2.  Mr. Wladawsky-Berger does not represent that all of his responsive

documents have been produced.

     3.  Declaration of Andrew Bonzani (Exh. I).  In response to the Court's Order for an

"affidavit from the Board of Directors," IBM has submitted a single declaration Mr. Bonzani, the

Assistant Secretary to the Board, who declares that he searched the Board's files in March 2004 and

turned over to IBM's outside counsel the documents he believed to be responsive.  Mr. Bonzani

does not state how many of the documents he turned over were ultimately withheld from SCO as

"unresponsive."  He does not represent that all responsive documents (even under his "belief" of

what documents are responsive) have been produced from the files of the Board of Directors.  Nor

does he represent that he has made any effort to obtain documents from the individual members of

IBM's Board.

     4.  Declaration of Alec S. Berman (Exh. J).  Alec Berman, an IBM in-house attorney, states

that he participated in the February 2004 search of Mr. Palmisano's office.  He does not suggest that

Mr. Palmisano assisted in the review in any way.  He does not suggest that he, Mr. Palmisano, or

anyone else "looked again" at Mr. Palmisano's files after February 2004 or after the October 19

hearing.  Mr. Berman declares that he turned over all potentially responsive documents to IBM's

outside counsel, and swears to his "understanding" that more than 1,000 pages from Mr.

---

[4] IBM thereafter produced 239 pages from Mr. Wladawsky-Berger's files.  They consist largely of the same
PowerPoint presentations and Linux Strategy Updates previously produced from Mr. Palmisano's files.
They do not contain any e-mails, letters, or notes.

Palmisano's files were produced, but he does not indicate how many pages or documents IBM withheld from SCO as "unresponsive."

 **SCO's Rule 30(b)(6) Notices and IBM's Response.**  On November 30 and December 2, 2004, SCO served on IBM Notices of 30(b)(6) Deposition listing, respectively, ten and seven topics for deposition.  Exhs. K & L.  SCO noticed the depositions for, respectively, December 15 and 16. On December 10, IBM responded and objected.  Exh. M.  As to the November 30 Notice, IBM refused to produce a witness for topics 1, 2 and 3, and unilaterally narrowed the scope of topics 4-10.  Id. at 1-2.  As to the December 2 Notice, IBM refused to produce a witness for topics 1, 2, 3, 4, and 7, and unilaterally narrowed the scope of topics 5 and 6.  Id. at 3-4.  IBM represented that the witnesses it would produce were not available to be deposed on December 15 or 16.  Id. at 4.  On December 13, SCO agreed to postpone the depositions in light of IBM undertaking to obtain deposition dates in early January 2005 for those witnesses that IBM has agreed to produce.  Exh. N.

## ARGUMENT

I.   **IBM HAS FAILED TO COMPLY WITH THE COURT'S MARCH 2004
     AND OCTOBER 2004 ORDERS**

IBM's now repeated representations regarding the documents SCO seeks are less credible

than ever.  SCO had repeatedly shown that, given the broad scope and central importance of IBM's

Linux strategy, it is simply not conceivable that the individuals at the center of IBM's decision to

adopt and embrace that strategy have in their custody and control almost no documents responsive

to SCO's requests and the Court's March 3 Order.

In addition, having previously, and repeatedly, represented to SCO and the Court that it had

looked for and produced all relevant documents in response to the Court's March Order, IBM has

now produced two additional folders of documents from Mr. Wladawsky-Berger's files.  At the

same time, (1) IBM's three <u>other</u> declarants make no representation of having "looked again" for

responsive documents, as counsel for IBM told this Court it would; (ii) <u>none</u> of IBM's declarants

represent that all responsive documents have been produced; and (iii) <u>none</u> of IBM's declarants

made any effort even to try to explain the absence of responsive documents regarding such a major

and evolving aspect of IBM's business.  Moreover, Mr. Wladawsky-Berger's declaration indicates

that IBM did not produce <u>any</u> of the documents (in hard copy or electronic form) that he had

identified as responsive in August 2003, after IBM's attorneys discussed with him "in detail each of

the categories of documents sought by SCO through its document requests;" Mr. Bonzani's

declaration reflects that he did not even attempt to obtain documents from the individual members

of IBM's Board; and Mr. Palmisano's declaration indicates that he has not done anything to ensure

the completeness of his document production.

1

In an attempt to explain away the obvious deficiencies in IBM's production, at the October 19 hearing, counsel for IBM did no more than suggest that "it shouldn't be any huge surprise" that IBM's executives do not use e-mail because SCO's document production reflects that <u>SCO's</u> CEO uses e-mail infrequently.  10/19/04 Hr'g Tr. at 47-48 (Exh. F).  But none of <u>IBM's</u> declarants testified that they do not use e-mail, and none has provided <u>any</u> explanation of why his files are so bare of e-mails and all other forms of responsive documents.  Indeed, as noted above, <u>The New York Times</u> has specifically reported that Mr. Wladawsky-Berger sent e-mails to top technology executives regarding the rise of Linux – but even those e-mails have not been produced.

The only plausible explanation for IBM's discovery shortcomings is that IBM has adopted *an unduly restrictive interpretation of the scope of its obligation to produce responsive documents*. In its Memorandum in Opposition to SCO's Renewed Motion to Compel, filed five months after this Court's March 2004 Order, IBM stated:

> "There is no basis for the Court to compel IBM to produce every document in the possession of Mr. Palmisano, Mr. Wladawsky-Berger and IBM's Board of Directors (such as those that simply contain the word 'Linux' in them), without regard to the relevance of those documents to the issues in this lawsuit or whether they are privileged.  SCO's request is overbroad on its face.  SCO has served document requests seeking materials that at least SCO has identified as being relevant (often incorrectly, we believe) to its lawsuit against IBM.  IBM searched the files of Mr. Palmisano, Mr. Wladawsky-Berger and the Board of Directors and produced whatever non-privileged, responsive documents exist in those files.  IBM should not *be made to produce documents that SCO has not even asked for in any of its document requests*, and which bear no relevance to the issues in this case."  IBM Mem. in Opp. to SCO's Renewed Motion to Compel at 12 (Exh. E).

Any argument that IBM continues to advance concerning the scope of its document production obligations is meritless.  It is difficult to imagine any valid basis on which IBM can be withholding Linux-related documents as non-responsive given the breadth of SCO's requests for:

- All documents "concerning any contributions to Linux or to open source made by IBM and/or Sequent," including "development of the 2.4 and 2.5 Linux Kernel";

- All documents "concerning IBM's decision to adopt, embrace or otherwise promote Linux"; and

- "All business plans for Linux."

Thus, as the term "concerning" is defined in SCO's requests, IBM was expressly required to produce all documents "relating to, referring to, reflecting, describing, evidence, referencing, discussing or constituting" IBM's Linux activities.

Even more importantly, however, IBM's continued assertions concerning the scope of SCO's requests and supposedly unresolved issues of "relevance" disregards, again, this Court's prior orders. The Court's March 3 Order is unambiguous:

> "IBM is to provide documents and materials generated by, and in possession of employees that have been and that are currently involved in the Linux project. IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" 3/3/04 Order at 4-5.

Moreover, the Court's October 2004 Order unambiguously regards SCO's document requests and March 2004 Order as encompassing "all non-privileged documents pertaining to IBM's Linux strategy." 10/20/04 Order at 1. Of course, the Court's prior orders preclude IBM even from raising its continued "relevance" objections or from continuing to withhold obviously responsive, and centrally important, Linux-related documents.

IBM's assertions and discovery conduct thus indicate that IBM has taken a constricted view of its discovery obligations – a view in which IBM has, once again, unilaterally determined its discovery obligations without regard for the Court's prior orders. IBM's unduly narrow interpretation of SCO's document requests, and its utter disregard for the Court's March 2004

3

Order, is plainly improper. A party may not properly adhere to a narrow interpretation of a discovery request when that party is aware that the requesting party has intended a broader interpretation, even if the written request is "not as broad or, perhaps, as clear as it might have been." Satcorp Int'l Group v. China Nat'l Import & Export Corp., 917 F. Supp. 271, 274-76 (S.D.N.Y. 1996), vacated in part on other grounds, 101 F.3d 3 (2d Cir. 1996). In Satcorp, the defendant's statement that no responsive documents existed defied "common sense" and "boggle[d] the mind"; the court concluded that counsel "was relying on some narrow, unstated interpretation of the written request to avoid production despite his knowledge that plaintiffs' counsel took a broader view of the request." Id. at 273, 276. The court sanctioned counsel. See id. at 278.

In light of IBM's continued delay, discovery stonewalling, and disregard of prior Court orders, SCO respectfully requests that the Court specifically order IBM to produce all documents in its possession, custody, or control that refer to or mention "Linux." IBM's intransigence and lack of candor suggest the existence of what IBM views as damaging documents. The Court should compel IBM to produce the Linux-related documents under a clear, objective standard that leaves no room for creative legal interpretation. If any of the files at issue contains a non-privileged document that refer to or mention Linux, SCO should be allowed to see it.

## II.    IBM IMPROPERLY REFUSES TO PRODUCE RULE 30(b)(6) WITNESSES ON SEVERAL TOPICS AND IMPROPERLY SEEKS TO LIMIT THE SCOPE OF OTHER RULE 30(b)(6) TOPICS

In response to valid Rule 30(b)(6) notices, IBM has improperly refused to produce any witness to testify on numerous subjects of central relevance to this case. With respect to SCO's Rule 30(b)(6) notice dated November 30, 2004, IBM has improperly refused to produce any witness to testify to the following topics:

4

"1.     The extent to and manner in which UNIX Software Products were used, directly or indirectly, in the creation, derivation or modification of any source code that IBM contributed to Linux, including but not limited to the following:

    a.     The date and nature of IBM's contributions of source code from AIX or Dynix, whether copied in a literal or non-literal manner, to Linux;

    b.     IBM's and Sequent's use of structures, sequences, organization, ideas, methods or concepts contained within any UNIX Software Product in developing source code that IBM contributed to Linux; and

    c.     The identity of the programmers who were exposed to any UNIX Software Product.

2.     Identification of and role of IBM employees or contractors involved in the work responsive to Topic 1 above.

3.     Identification of the steps taken by corporate representative witness to be able to respond fully and accurately to Topics 1 and 2 above, including but not limited to documents reviewed, employees consulted, and databases consulted." Exh. K.

IBM objects to each topic "on the grounds that it is vague, ambiguous, overbroad and unduly burdensome." IBM further objects to these topics on the grounds that they seek information "more appropriately sought" through other discovery methods. Exh. M at 1.

      IBM's objections to these topics are meritless. Either IBM is capable of identifying the code that it contributed to Linux and the nature and manner of those contributions or it is not. Either way, this evidence is directly relevant because IBM's reliance on UNIX-derived AIX and Dynix in developing Linux is at the very heart of SCO's breach-of-contract claims. IBM's objections to SCO's 30(b)(6) topics are particularly untenable in light of IBM's long-standing refusal to produce adequate responses to SCO interrogatories and document requests that attempt to discover the programming history of IBM's Linux contributions. Indeed, IBM has ignored this Court's prior March 3 Order requiring it to supplement its interrogatory responses on this topic, leaving SCO with a list of more than 7,000 programmer names and no contribution information for any of those

5

programmers.  Moreover, IBM continues to withhold the document discovery that would permit

SCO to investigate for itself the AIX and Dynix origins of IBM's Linux contributions.  IBM's

discovery responses have thus reduced to the indefensible claim that IBM is not obligated to

provide any information concerning the nature of IBM's contributions to Linux or any practical way

for SCO to identify the relevant witnesses on that central issue in the case.

IBM has also improperly refused to produce any witness on the following topics contained

in SCO's amended Rule 30(b)(6) notice of December 2:

> "1.    The negotiation and execution of all license agreements between IBM and
>         AT&T regarding any UNIX Software Product, and any and all
>         amendments or modifications thereto.
>
> 3.     Consideration and discussion concerning UNIX licensing rights,  limitations,
>         and potential liabilities, in connection with IBM's acquisition of Sequent.
>
> 4.     All communications with Novell, Inc. ('Novell') relating to SCO and/or
>         any of its predecessor entities, including, but not limited to,
>         communications relating to the Asset Purchase Agreement between Novell
>         and the Santa Cruz Operation, Inc., and any amendments thereto.
>
> * * *
>
> 7.     Identification of all individual(s) (by name, position, particular responsibility,
>         and current location) who were principally responsible for (1) the programming
>         development of AIX and Dynix (including   Dynix/ptx); and (2) the
>         programming development of Linux using, in any   manner whatsoever,
>         materials from those  programs.  This request includes, without limitation,
>         identification of all relevant chief technology officers, chief software architects,
>         and chief software engineers."  Exh. L.

IBM objections to these topics include IBM's contention that the topic "is vague, ambiguous,

overbroad and unduly burdensome," "seeks information that is irrelevant and not reasonably

calculated to lead to admissible evidence," "seeks discovery more appropriately sought by other

means," and "seeks information duplicative and cumulative of testimony that has been, or will be,

provided to SCO."  Exh. M at 3-4.

IBM's objections to the foregoing topics are improper. With respect to the particular objections that IBM makes on each topic, for example:

- On Topic 1, SCO is entitled to discover through an IBM corporate representative, for example, who was responsible for the negotiation and execution of the license agreements at issue in this case and the respective roles of the individuals involved.

- On Topic 3, SCO is entitled to discover through an IBM corporate representative, for example, any non-privileged consideration that IBM and/or Sequent gave to the UNIX license rights, restrictions, and potential liabilities in connection with IBM's acquisition of Sequent.

- On Topic 4, SCO is entitled to discover through an IBM corporate representative, for example, the full extent of IBM's communications with Novell relating to SCO. This information is particularly important in this case given (1) the central issues in this case concerning the purchase agreement whereby SCO's predecessor acquired Novell's UNIX assets and business; and (2) IBM and Novell's close business relationship concerning the distribution and exploitation of Linux.

- On Topic 7, SCO is entitled to discover through an IBM corporate representative, for example, the individuals who were principally responsible for developing AIX and Dynix (the derivative products from which IBM made numerous contributions to Linux) as well as Linux.

IBM's objection that Topic 7 "seeks information that is duplicative and cumulative of information already provided by IBM in response to SCO's discovery requests" is particularly baseless. Exh. M at 4. As explained above (as well as in SCO's pending discovery applications), SCO has long sought to obtain from IBM information regarding the programming history of AIX, Dynix, and Linux, but IBM has improperly withheld that information for over a year. IBM's improper withholding of such discovery cannot excuse IBM's refusal to provide a corporate representative on this critically relevant topic. IBM's improper objection to SCO's Rule 30(b)(6) notice lays bare IBM's indefensible view of discovery in this action and of the federal rules governing discovery – namely, that SCO is not entitled to <u>any</u> information from which SCO can identify the chief architects of the software products at the heart of this case.

## CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER OBLIGATIONS

SCO through its counsel hereby certifies that it has made a good faith effort to resolve the discovery disputes that are the subject of its concurrently filed Motion to Compel Discovery. On December 17 and December 21, SCO's counsel conducted a telephonic conference with IBM's counsel wherein counsel discussed and attempted to resolve, unsuccessfully, the disputes that are now raised in the context of SCO's Motion to Compel. The disputes that are the subject of SCO's Renewed Motion to Compel Discovery have been addressed by the parties on numerous prior occasions and have been the subject of two prior Court orders.

## CONCLUSION

For all of the above reasons, SCO respectfully submits that the Court should order IBM to produce (1) from the files of Samuel Palmisano, Irving Wladawsky-Berger, and IBM's Board of Directors, all non-privileged documents that refer to or mention Linux; and (2) an appropriate witness for the full scope of each of the Rule 30(b)(6) topics that SCO noticed on November 30 and December 2, 2004.

DATED this 23rd day of December, 2004.

Respectfully submitted,

By:

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Robert Silver
Edward Normand
Sean Eskovitz

*Counsel for The SCO Group, Inc.*

8

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and

correct copy of the foregoing Plaintiff's Memorandum in Support of Renewed Motion to Compel

Discovery was served by mail on Defendant International Business Machines Corporation on the

23rd day of December, 2004, by U.S. Mail to:

> David Marriott, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604
>
> Todd Shaughnessy, Esq.
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004



Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

David Boies (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Ste. 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| THE SCO GROUP,<br><br>    Plaintiff,<br><br>  v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>    Defendant. | **PLAINTIFF'S FIRST REQUEST<br>FOR PRODUCTION OF DOCUMENTS<br>AND FIRST SET OF<br>INTERROGATORIES**<br><br>Case No. 2:03CV0294DAK<br><br>Judge: Dale A. Kimball<br>Magistrate David Nuffer |

Defendant is directed to give answers to the written interrogatories separately, fully, in writing, under oath, and in accordance with the following definitions and instructions. Defendant is requested to produce the documents and things in its possession, custody or control pursuant to the document requests.

Answers to the interrogatories and all documents and things responsive to the document requests must be served on the undersigned attorneys for The SCO Group at the offices of Boies, Schiller & Flexner LLP, 100 Southeast Second Street, Suite 2800, Miami, Florida 33131 within 30 days of service of these interrogatories and document requests.

## DEFINITIONS AND INSTRUCTIONS

For purposes of these interrogatories and requests for production of documents, the following definitions and instructions apply.

### A. Definitions.

1. The term "AIX" shall mean the UNIX-based operating system distributed and/or developed by IBM, including all prior versions, releases and maintenance modifications.

2. The term "concerning" shall mean relating to, referring to, reflecting, describing, evidencing, referencing, discussing or constituting.

3. The term "describe" shall mean in the case of an event or circumstance, to set forth in detail the date, time, place, individuals or entities involved and context and content of the event or circumstance.

4. The term "document" shall be deemed to include every record of every type including, without limitation, information stored on any electromagnetic storage device, or computer, any written, printed, typed, recorded, stored, or graphic matter, however

2

produced, reproduced, or existing in the possession, custody, or control of Defendant, or any agent, employee, or attorney of the Defendant, and all drafts, notes, or preparatory material concerned with said document, and every additional copy of such record or document where such copy contains any commentary, notation, or other change whatsoever that does not appear on the original or other copy of the document produced. "Document" shall be deemed also to include any summary of a document or documents called for hereafter.

5. The term "Dynix" shall mean the UNIX-based operating system distributed and/or developed by Sequent Computer Systems, Inc. and/or IBM, including all prior versions, releases, derivative works, methods, and modifications.

6. The terms "IBM,". "Defendant" "you," "your," and any synonym thereof and derivatives therefrom are intended to and shall embrace IBM and include its parents, subsidiaries, divisions, or affiliates and any corporate predecessor or successor of any of them, **including Sequent Computer Systems, Inc.**, and, in addition all of the Defendant's attorneys and accountants, and all of its respective agents, servants, associates, employees, representatives, investigators, officers, directors and others who are or have been in possession of or may have obtained information for or on behalf of such Defendant in any manner with respect to any matter referred to in the pleadings in the above-styled case.

7. The term "identify" shall mean:

a. in the case of a natural person, to state the full name, current or last known job title and position, current or last known address, current or last known home and work telephone numbers, and current or last

3

known electronic mail address, and to indicate the basis of that person's knowledge, including but not limited to the identification of documents and communications and a description of his/her personal involvement in any transaction, meeting, software development, marketing, or other activity relating in any way to the allegations of the Complaint and any defenses;

b. in the case of any entity other than a natural person, to state its name, address, principal place of business and, if applicable, place of incorporation and a contact person at the entity;

c. in the case of a document, to state the author(s), title, subject matter, date, place, source of publication of the document and substance of the document;

d. in the case of an oral communication, to give a complete description of such oral communication, including but not limited to: (i) the speaker(s) and actual or intended recipient(s) or witnesses of the communication; (ii) the date of the communication; and (iii) the substance of the communication;

e. in the case of alleged trade secrets or confidential or proprietary information, whether computer code, methods or otherwise, to give a complete and detailed description of such trade secrets or confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information, and the location (by module

4

name, file name, sequence number or otherwise) of those lines of code within any larger software product or property.

    f.  in the case of an alleged right, to give a completed and detailed description of such right, including but not limited to: (i) the issuer of the right; (ii) the date the right became effective; (iii) the date the right expired; and (iv) any limitations placed upon such right.

8.    The term "open source" shall mean any software code that is made available in source code form without any confidentiality restrictions, including but not limited to any code made available under the General Public License, the BSD license, or the MIT license.

9.    The term "person" shall be deemed to include natural persons, partnerships, firms, and corporations, and all of their subsidiaries or divisions, and, in the case of partnerships, firms, and corporations, the individual member(s) or agent(s) thereof.

10.    The term "source code" shall mean the human-readable form of a computer program written in the original and preferred form for human inspection and modification, and includes but is not limited to source code listings; compiler and/or assembler output listings for such source code; source code listings for macros or "includes" (both executable and mapping) listings used in such source code; job control language files; and/or other files required to create an executable version of a program, including but not limited to user interface components; panels; screen definitions and help text; and e-lists.

5

B. **Instructions.**

1. Unless otherwise indicated, all requests and interrogatories are from January 1, 1999 to present.

2. Information requested in these interrogatories shall include information within the knowledge or possession of any of Defendant's agents, employees, attorneys, investigators or any other persons, firms or entities directly or indirectly subject to Defendant's control in any way whatsoever.

3. Each interrogatory shall be answered in its entirety. If any interrogatory or subsection thereof cannot be answered in full, it shall be answered to the fullest extent possible with an explanation as to why a complete answer is not provided.

4. If there is a claim of privilege as to any communication concerning information requested by these interrogatories, specify the privilege claimed, the communication and/or answer to which that claim is made, the topic discussed in the communication and/or answer to which that claim is made, the topic discussed in the communication and the basis upon which the claim is asserted.

5. These interrogatories are continuing in nature and require supplemental or additional responses in accordance with Rule 33 of the Federal Rules of Civil Procedure.

6. All documents produced in response to these requests shall be produced in the same order as they are kept or maintained in the ordinary course of business and, where multiple pages or documents are assembled, collated, grouped, or otherwise attached, shall not be separated or disassembled.

6

7.  With respect to any document responsive to this request that is withheld from production based upon a claim of privilege, please provide the information required pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

8.  If, for reasons other than a claim of privilege, you refuse to produce any document requested herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

9.  If there are no documents responsive to any paragraph or subparagraph set forth in the requests, please provide a written response so stating.

These requests are continuing and, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, require further and supplemental production by Defendant whenever Defendant acquires, makes, or locates additional documents between the time of the initial production hereunder and the time of the trial in this action.

## REQUESTED DOCUMENTS

1.  All documents concerning or relating to any agreements entered into with AT&T relating to UNIX, including but not limited to the agreements attached to the First Amended Complaint.

2.  All versions or iterations of AIX source code, modifications, methods and/or derivative works from May 1999 to the present, including but not limited to version 4.3 and above.

3.  All versions or iterations of Sequent Dynix source code, derivative works, modifications and/or methods from January 1, 1999 to the present.

7

4. All documents concerning IBM's efforts, if any, to maintain the confidentiality of UNIX source code, derivative works, modifications, and/or methods.

5. All documents concerning IBM's efforts, if any, to maintain the confidentiality of AIX source code, derivative works, modifications, and/or methods.

6. All documents concerning IBM's efforts, if any, to maintain the confidentiality of Sequent Dynix source code, derivative works, modifications, and/or methods.

7. All documents concerning IBM's efforts, if any, to restrict distribution of Unix source code, derivative works, modifications, and/or methods.

8. All documents concerning IBM's efforts, if any, to restrict distribution of AIX source code, derivative works, modifications, and/or methods.

9. All documents concerning IBM's efforts, if any, to restrict distribution of Sequent Dynix source code, derivative works, modifications, and/or methods.

10. All documents concerning Prerequisite Source Licenses, including but not limited to all instances in which IBM required persons or entities to obtain a Prerequisite Source License under paragraph 2.2(a) of its contract with its customers.

11. All contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity.

12. All documents that identify any person or entity to whom IBM has provided UNIX source code, derivative works, modifications and/or methods.

13. All documents that identify any person or entity to whom IBM has provided AIX source code, derivative works, modifications and/or methods.

8

14. All documents that identify any person or entity to whom IBM has provided Sequent Dynix source code, derivative works, modifications and/or methods.

15. All documents that identify any person at IBM and Sequent who had access to UNIX source code, derivative works, modifications and/or methods.

16. All documents that identify any person at IBM and Sequent who had access to AIX source code, derivative works, modifications and/or methods.

17. All documents that identify any person at IBM and Sequent who had access to Sequent Dynix source code, derivative works, modifications and/or methods.

18. All documents, agreements and correspondence between IBM or any person or entity under IBM's control and Linus Torvalds including, but not limited to, those with or copied to Sam Palmisano.

19. All documents, agreements and correspondence with Open Source Development Lab.

20. All documents, agreements and correspondence with Red Hat.

21. All documents, agreements and correspondence with SuSe.

22. All documents, agreements and correspondence between IBM and Novell regarding UNIX, including but not limited to all correspondence with Jack Messman, Chris Stone and/or Novell's counsel.

23. All documents, agreements and correspondence between IBM and Santa Cruz Operation regarding UNIX.

24. All documents, agreements and correspondence between IBM and Caldera.

25. All documents, agreements and correspondence between IBM and The SCO Group.

26. All documents identifying any IBM personnel who are or were employed or working at the Linux Technology Center.

9

27. All documents identifying any IBM personnel who are or were employed or working at the Linux Center of Competency.

28. All documents concerning Project Monterey.

29. All documents concerning any UNIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

30. All documents concerning any AIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

31. All documents concerning any Sequent Dynix source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

32. All documents concerning any UNIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

33. All documents concerning any AIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

34. All documents concerning any Sequent Dynix source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

35. All documents concerning any contributions to Linux or to open source made by IBM and/or Sequent.

36. All documents sufficient to show IBM's organizational and personnel structure, including but not limited to organizational charts, flow charts and personnel directories.

37. All documents concerning any statement, affidavit, declaration, or opinion in IBM's possession relating to contributions by IBM to open source, including but not limited

10

to those statements identified in the Complaint made by Messrs. Mills, LeBlanc and Strassmeyer.

38. All documents concerning the Open Source Developer's Class, including any guidelines relating thereto.

39. All documents concerning export controls for any UNIX source code, derivative works, modifications or methods contributed to open source, including all portions of AIX, and Dynix and their derivative works, modifications, or methods.

40. All documents concerning IBM's use of Intel processors prior to January 1, 1998.

41. All documents concerning IBM's use of Intel processors after January 1, 1998.

42. All documents concerning IBM's contributions to development of the 2.4 and 2.5 Linux Kernel.

43. All documents concerning IBM's First Affirmative Defense that the Complaint fails to state a claim upon which relief can be granted.

44. All documents concerning IBM's Second Defense that Plaintiff's claims are barred because IBM has not engaged in any unlawful or unfair business practices, and IBM's conduct was privileged, performing the exercise of an absolute right, proper and/or justified.

45. All documents concerning IBM's Third Affirmative Defense that Plaintiff lacks standing to pursue its claims against IBM.

46. All documents concerning IBM's Fourth Affirmative Defense that Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

47. All documents concerning IBM's Fifth Affirmative Defense that Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine or the independent duty doctrine.

48. All documents concerning IBM's Sixth Affirmative Defense that Plaintiff's claims are barred by the doctrines of laches and delay.

49. All documents concerning IBM's Seventh Affirmative Defense that Plaintiff's claims are barred by the doctrines of waiver, estoppel and unclean hands.

50. All documents concerning IBM's Eighth Affirmative Defense that Plaintiff's claims are, in whole or in part, preempted by federal law.

51. All documents concerning IBM's Ninth Affirmative Defense that Plaintiff's claims are improperly venued in this district.

52. All documents used, referred to, identified, or relied upon in responding to Plaintiff's First Set of Interrogatories.

## INTERROGATORIES

1.  Identify the name and address of the person(s) answering these interrogatories, and, if applicable, the persons' official position or relationship with Defendant?

2.  List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues of this lawsuit; and specify the subject matter about which the witness has knowledge.

3.  If you intend to call any expert witness at the trial of this case, state, as to each such expert witness, the name and business address of the witness, the witness' qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for each opinion.

4.  Identify all persons who have or had access to UNIX source code, AIX source code and Dynix source code, including derivative works, modifications, and methods. For each such person, set forth precisely the materials to which he or she had access.

5.  Identify all IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, specifying for each person their precise contributions to each.

DATED this 24th day of June, 2003.

By: _____

Brent O. Hatch
HATCH, JAMES & DODGE

David Boies
Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiff

13

Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Ste. 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, | ) |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S SECOND SET OF** |
| v. | ) **INTERROGATORIES AND SECOND** |
| | ) **REQUEST FOR PRODUCTION FOR** |
| | ) **PRODUCTION OF DOCUMENTS** |
| INTERNATIONAL BUSINESS | ) |
| MACHINES CORPORATION | ) Case No. 2:03CV0294DAK |
| | ) |
| Defendant | ) Judge: Dale A. Kimball |
| | ) Magistrate Judge Brooke C. Wells |
| | ) |

Defendant is directed to give answers to the written interrogatories separately, fully, in writing, under oath, and in accordance with the following definitions and instructions. Defendant is requested to produce the documents and things in its possession, custody or control pursuant to the document requests.

Answers to the interrogatories, and all documents and things responsive to the document requests must be served on the undersigned attorneys for The SCO Group at the offices of Boies, Schiller & Flexner LLP, 100 Southeast Second Street, Suite 2800, Miami, Florida 33131 within 30 days of service of these interrogatories and document requests.

## DEFINITIONS AND INSTRUCTIONS

Plaintiff hereby incorporates by reference all instructions, definitions and rules contained in the Federal Rules of Civil Procedure and further incorporates the definitions and instructions that are in Plaintiff's First Set of Interrogatories and First Request for Production of Documents as if fully set forth herein.

## INTERROGATORIES

6. Please identify, with specificity (by product, file in light of code, where appropriate) all of the alleged contributions to Linux made by IBM, included but not limited to those claimed in paragraphs 108, 115 and 120 of IBM's Amended Counterclaims.

2

7. Please identify all agreements that IBM alleges or contends that SCO has breached, *including specific provisions or portions of those agreements that IBM alleges or contends that SCO breached,* and describe, in detail, each instance in which IBM alleges or contends that SCO breached those agreements, including but not limited to:

   (a) the date of the alleged breach;

   (b) all persons involved in the alleged breach;

   (c) the specific manner in which SCO is alleged to have breached the agreement;

   (d) the type of damage and dollar amount, if any, IBM alleges or contends it suffered as a result of the alleged breaches by SCO.

8. Please describe, in detail, each instance in which IBM alleges that SCO engaged in unfair competition as claimed in paragraphs 90 through 94 of IBM's Amended Counterclaim, including but not limited to,

   (a) the dates in which SCO allegedly engaged in any unfair competition;

   (b) all persons involved in the alleged unfair competition;

   (c) the specific manner in which SCO is alleged to have engaged in unfair competition, including but not limited to, as alleged in paragraph 93 of IBM's Amended Counterclaim;

   (d) the type and dollar amount, if any, of any damages allegedly caused by SCO's actions.

9. Please identify each "prospective business relationship" IBM claims to have with "numerous companies and individuals to whom IBM has sold and/or licensed these products and services and/or to whom IBM seeks to sell and/or license these products

3

and services" in which IBM alleges or contends that SCO interfered with, including but not limited to,

(a) the date of the alleged interference;

(b) all persons involved in the alleged interference;

(c) the specific manner in which SCO is alleged to have interfered with such relationship;

(d) the specific actions, if any, that SCO induced or encouraged IBM's prospective business relationships to take;

(e) the specific action, if any, that IBM's prospective business relationships took as a result of the actions allegedly induced or encouraged by SCO;

(f) the type and dollar amount, if any, of any damages from SCO's alleged actions.

## REQUESTED DOCUMENTS

53. All documents concerning IBM's decision to adopt, embrace or otherwise promote Linux, including *but not limited to* the following:

a. all such documents in the possession of Sam Palmisano, Irving Wladawsky-Berger; Paul Horne and Nick Bowen;

b. the report prepared by Nick Bowen, including all drafts and e-mails pertaining thereto, submitted to IBM management on or about December 20, 1999;

c. all presentations made to IBM's top management including its Board of Directors concerning such decision;

    d.  all documents from all Board of Directors' meetings relating to such decision, including Board notebooks, Board minutes and notes from all persons in attendance at such meetings.

54. All documents concerning Hewlett-Packard and/or Compaq in Project Monterey, including but not limited to, all Memoranda of Understanding in all press releases.

55. All documents, including drafts, submitted to the Department of Justice concerning Project Monterey.

56. All business plans for Linux.

57. All source code for AIX and Dynix since 1985 including all instructions, information used and all documentation relating to the use of AIX and Dynix, including but not limited to, all development notes.

58. All notifications of third parties IBM has obtained since 1985 for providing access to the source code for AIX and/or Dynix

Dated this 4th day of December 2003.

By: _____

Brent O. Hatch
HATCH, JAMES & DODGE

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP

*Attorneys for Plaintiff*

5

March 20, 2000



# I.B.M. Goes Countercultural With Linux

**By STEVE LOHR**

A huge company with deep pockets, IBM can afford to dabble in promising technologies. And that is what the International Business Machines Corp. seemed to be doing throughout much of last year with Linux, an increasingly popular version of the Unix operating system that is available free on the Internet.

IBM dispatched emissaries to speak with members of the Linux community, a worldwide network of programmers who develop and debug the code. IBM met with academics, consultants, economists and venture capitalists to plumb the Linux phenomenon. It made small investments in a couple of Linux start-ups, and offered Linux on one line of its computers.

But last fall, Big Blue suddenly got serious about Linux.

At the end of October, fresh from a global tour, Sam Palmisano, a senior vice president, reported that the Internet companies he spoke with told him that the preferred language of the young programmers they were hiring was Linux.

At about the same time, Irving Wladawsky-Berger, an IBM executive with longstanding ties to the nation's supercomputing centers, was hearing that Linux was generating a lot of excitement in these leading-edge research institutions. And he had been sending e-mail to the company's other top technology executives about the rise of Linux.

"In the technical community and in the marketplace," Wladawsky-Berger recently recalled, "the signs were clear that something profound was going on."

Less than two months later, a few days before Christmas, IBM had fashioned -- and Louis V. Gerstner Jr., the chairman, had approved -- an ambitious Linux strategy. The company that personifies mainstream corporate computing had itself done something profound: embrace Linux, a symbol of software's counterculture, as the operating system of the future for the Internet.

IBM, it was decreed, would embark on a costly program to make all its hardware and software work seamlessly with Linux. So quickly did the company mobilize that even now hundreds of engineers across the company are already engaged in the Linux campaign, and IBM says its army of Linux engineers will number in the thousands within a few years.

To be sure, other major companies in the industry, including Hewlett-Packard, Dell Computer and Oracle, also have Linux efforts. "But IBM has tightly focused on Linux more than any other big company," observed Dan Kusnetzky, director of operating systems research at the International Data Corp.

IBM's Linux strategy represents more than a bold, and risky, step in the field of software. The move is a textbook example of IBM's management style under Gerstner, who has worked to overhaul the company and its culture since he arrived in 1993.

In the pre-Gerstner days, decision making at IBM was once described as "swimming through peanut butter." But these days, after a brief period of intense scrutiny -- during which the company's technical experts play a key role -- choices are made decisively and with remarkable swiftness, given that IBM is a sprawling, $80-billion-a-year corporation.

In this most recent example, Palmisano, 48, who is regarded as a leading candidate to someday succeed Gerstner, is the senior executive who pushed most emphatically for the Linux initiative -- and has the most riding on its outcome. "This is Sam's bet," Wladawsky-Berger said.

The first step toward IBM's Linux strategy came in a Saturday morning telephone call on Oct. 30 that Nick Bowen received at his home in Newtown, Conn. The caller was his boss, Paul Horn, the head of the IBM Watson labs. He told Bowen, a 39-year-old senior researcher, that he would lead an 11-person team to make recommendations on how IBM -- the entire company -- should adapt to Linux. The investigation must be rigorous and exhaustive, Horn told him -- and finished in seven weeks.

The Bowen report, submitted to top management on Dec. 20, presented a plan for using Linux to undermine the software advantage enjoyed by IBM's two key rivals, Microsoft and Sun Microsystems. Microsoft's Windows NT and Sun's Solaris are the leading operating systems used today on server computers, the data-serving machines that are the engines of corporate networks and the Internet.

To combat Sun and Microsoft, the report recommended, IBM should retool all its server operating systems, from the mainframe OS/390 to AIX, IBM's version of Unix, to run Linux smoothly. The same should be true of all IBM's database, Web applications and messaging software, the report said. And IBM, the Bowen team concluded, should push Linux as the operating system of choice for the Internet -- more robust and reliable than Windows NT and eventually overtaking Solaris, Sun's flavor of Unix, as the industry standard for Unix.

The goal would be to win the hearts and minds of perhaps the most influential audience in computing -- the software developers who write the applications that bring the Web to life and make Internet commerce actually work.

"Today, Microsoft and Sun dominate the application development seats," the report stated. "We recommend that IBM aggressively pursue a Linux-based application development platform. Doing so would disrupt the Sun-Microsoft stranglehold."

The Linux strategy would "provide our server business with a single, homogeneous server platform," from desktops to mainframes, giving IBM a "level playing field" in software and allowing it to compete with Sun and Microsoft for "mindshare in key software growth segments and in universities."

The report, known as a "corporate assessment" inside IBM ran just over 10 pages. In the pre-Gerstner days, such reports to top management could be 100 pages in length. But today's IBM executives are familiar with the Gerstner edict: If you cannot say it in 10 pages, you are not focused on the right thing.

It was only at the beginning of last October that Palmisano took over IBM's server business. And he started at once to scout for "major initiatives" to help revive the growth of IBM's big server computers -- mainframes, minicomputers and AIX Unix machines. He closely followed the activities of the Bowen assessment team, he read early drafts of the group's report and he liked the finished document: a coherent, top-to-bottom software strategy for IBM.

Moving quickly, he said, was imperative. "The Internet has taught us all the importance of moving early, the advantage of being a first-mover," Palmisano said in an interview. "We want to be riding that Linux momentum at the front, not trailing it and defending the past. IBM understands, believe me, what it means to be defending the past."

When Bowen met on Dec. 20 with Palmisano and Nick Donofrio, senior vice president for technology, at IBM's headquarters in Armonk, N.Y., he noted a nontechnical recommendation in the report: put one person in charge of the Linux effort companywide. "I'm already working on that," Bowen recalls Palmisano saying.

And when Palmisano met with Gerstner two days later, the chairman not only approved the plan but also agreed with his choice of who should be the company's Linux czar: Wladawsky-Berger. At the time, Wladawsky-Berger was general manager of the Internet division, responsible for making sure Internet technology and an Internet mindset was spread broadly throughout the company.

That job, Gerstner and Palmisano agreed, was done; IBM "got" the Internet. Now, it was time for Wladawsky-Berger to move onto the next, hearts-and-minds challenge. So the staff of the Internet unit went elsewhere in the company, the division was folded and Wladawsky-Berger assumed the title vice president of technology and strategy in the computer-server group, headed by Palmisano.

They are a contrasting pair. Tall and physically imposing, Palmisano is regarded as a brilliant executive and hard-charging salesman. Previously, he ran the company's fast-growing global services group, where he had a special talent for bringing in big computer

services deals, which can span several years and total billions of dollars. Palmisano's nickname at IBM is "the closer."

Wladawsky-Berger is six years older and about a head shorter than his boss. Raised in Cuba, he fled with his parents, Eastern European immigrants who owned a store in Havana, when Castro came to power in 1959. He holds a Ph.D. in physics from the University of Chicago, speaks with a lilting Spanish accent and could easily be mistaken for a college professor.

After his postgraduate studies, Wladawsky-Berger joined IBM's Watson labs in 1970 as a researcher, but he had a taste for the business side of the company as well. He led the drive to transform IBM's traditional mainframes by retooling them with low-cost microprocessors, the chips best known as the engines of personal computers.

"The Linux issue," Wladawsky-Berger explained, "is whether this is a fundamentally disruptive technology, like the microprocessor and the Internet? We're betting that it is."

IBM's Linux effort is a long-term strategy, not one likely to affect its quarterly earnings any time soon. And the strategy appeals to IBM, in part, because it has lost its operating system battles with Microsoft and Sun. Its effort in personal computer software, OS/2, was quickly crushed by Microsoft's market-dominating Windows. And IBM's AIX version of Unix has become an also-ran behind Sun's more popular Solaris.

So IBM would love to drive the profit out of the operating systems business of its rivals -- just as Microsoft did to Netscape, the browser pioneer, by giving browsing software away free. "The operating systems wars of today are the equivalent of the browser wars of a few years ago," said Scott Hebner, an IBM software executive. "The operating system is not where the value is."

Yet IBM's strategy can succeed only if Linux, which is distributed free, does become a genuine alternative to Windows or Solaris, thereby putting real pressure on their prices. And Linux has a long way to go. Today, it is used mainly for simpler tasks, like serving up Web pages, instead of for industrial-strength computing chores like financial transaction systems that must handle complex tasks, 24 hours a day, without crashing. Even IBM, which plans eventually to use Linux as its unifying Unix platform (shelving AIX), says Linux's true ascendance may not come for five years or so -- until Linux is built up to become more powerful and reliable.

Throughout the software field, the excitement surrounding Linux has less to do with the technology itself than with the fact that it is the leading example of so-called open-source software -- software that is distributed free, with its underlying source code openly published, and is developed, debugged and improved by an international community of programmers.

"It's the Web phenomenon coming to software development that is intriguing," said Larry Smarr, director of the National Center for Supercomputing Applications in

Urbana-Champaign, Ill. "We now have the potential for collaborative, decentralized software authorship on large complex systems."

Still, it is unclear whether the open-source approach can solve the kind of complex software problems that have consumed countless programming hours and billions of dollars at Sun and Microsoft. And for IBM, there is a question of whether the Linux community, which works mostly on personal computers, will have much to contribute to the company's Linux efforts on mainframes and minicomputers.

"Linux on non-PC platforms is a nonstarter," said Greg Papadopoulos, chief technology officer for Sun Microsystems. "The ecosystem of open source is not going to be working for IBM on other platforms."

But Wladawsky-Berger says he will side with the recommendations of IBM's best technical minds. "Not only did they say, 'Irving, this is doable,'" he observed. "They said, 'Irving, do it.'"

Certainly, veterans of the open-source counterculture seemed to have welcomed Big Blue into the fold. "It should accelerate the pace of adoption of Linux," said Eric Raymond, an evangelist of the open-source movement.

"Sure, there's some irony here, since IBM used to be the enemy," Raymond said. "But everybody in the community is happy about IBM wanting to play with us."

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>-against-<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **DECLARATION OF TODD M.<br>SHAUGHNESSY**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |



I, Todd M. Shaughnessy, declare as follows:

1.      I represent IBM in the lawsuit filed against IBM by Caldera Systems, Inc.. a Delaware corporation that has since changed its name to The SCO Group, Inc. ("SCO"), The SCO Group, Inc. v. International Business Machines Corporation, Civil No. 2:03CV-0294 DAK (D. Utah 2003).

2.      The Court issued an order on March 3, 2004 (the "Order") directing both SCO and IBM to produce certain discovery. This declaration is submitted in response to Section III of the Order, instructing each party "to provide to the Court an affidavit detailing their efforts in complying with this order". IBM has complied fully with the Order.

3.      On March 4, 2004, IBM produced the bulk of the releases of AIX and Dynix ordered by the Court to be produced in Section II.1 of the Order, and on March 9, 2004, IBM completed its production of all such source code. Although the Court gave IBM a deadline of 45 days from the date of the Order to produce this source code, IBM produced the source code immediately to provide SCO time to evaluate the code and take it into account in answering IBM's discovery requests.

4.      With respect to Section II.2 of the Order, IBM undertook a reasonable search to identify any "non-public" contributions it made to Linux. Since Linux is publicly developed and available via the Internet, however, all of IBM's contributions to Linux are a matter of public record. IBM nevertheless also endeavored to identify materials that IBM unsuccessfully attempted to contribute to

2

Linux and are not publicly available. To the extent IBM identified any such material, IBM has produced it.

5.      With respect to Section II.3 of the Order, IBM has undertaken a reasonable search for and has produced all non-privileged responsive documents, including those from the files of Sam Palmisano and Irving Wladawsky-Berger.

6.      Although not ordered to complete its document production by any specific date, IBM has already substantially completed its document production in response to SCO's first set of document requests and expects to shortly complete the production.

7.      IBM has, pursuant to Section II.5 of the Order, provided additional supplemental answers to SCO's first set of interrogatories. With respect to Interrogatory No. 2, IBM has included the names of persons outside of IBM whom IBM believes may have knowledge about the issues of this lawsuit. With respect to Interrogatory No. 5, IBM has provided contact information, where such information exists in IBM's records, for each person for whom SCO requested such information. IBM believes that the reference to Interrogatory No. 11 in Section II.5 of the Order was a typographical error, because the time for responding to Interrogatory No. 11 had not yet passed, and was not the subject of SCO's motion to compel. In any event, IBM served on SCO its responses to SCO's Interrogatory No. 11 today, April 19, 2004, in accordance with an agreement between SCO and IBM.

8.      In response to Section II.6 of the Order, IBM asked SCO on March 9, 2004 to let IBM know for which 1,000 of the persons listed by IBM in response to

3

SCO's Interrogatory Nos. 4 and 5 SCO wished to obtain contact information. On March 26, 2004, SCO informed IBM that it wished to have contact information for all persons listed on Attachment E to IBM's answers to SCO's first set of interrogatories, as well as for 81 additional persons listed by SCO. SCO indicated that it would in the future request contact information for additional persons as appropriate, up to a total of 1,000 names. Of the 328 persons listed on Attachment E, IBM was able to locate contact information for 326 of them, and has provided such contact information to SCO. Of the 81 additional persons listed by SCO, only 32 of them (not including persons already appearing on Attachment E) were listed in IBM's answers to SCO's Interrogatory Nos. 4 and 5. IBM has provided contact information for each of those 32 persons. Thus, to date, IBM has provided SCO with contact information for 358 of the persons listed by IBM in response to SCO's Interrogatory Nos. 4 and 5. IBM will provide contact information for additional names as SCO requests such information, up to a total of 1,000 names.

9.      With respect to Section III of the Order, IBM has provided, and will continue to provide, SCO with source logs that identify how documents were kept in the ordinary course of business, for all materials produced in discovery.

10.      The documents and interrogatory answers provided to SCO are given to the best of IBM's knowledge and are complete, detailed and thorough.

4

11.    I declare under penalty of perjury that the foregoing is true and

correct.

Dated:  April 19, 2004

_____
Todd M. Shaughnessy

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2004, a true and correct copy of the

foregoing was sent by U.S. Mail, postage prepaid, to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101

> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

> Kevin P. McBride
> 1299 Ocean Avenue, Suite 900
> Santa Monica, California 90401

6

295072.1





FILED

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-<br>PLAINTIFF IBM'S MEMORANDUM<br>IN OPPOSITION TO SCO'S<br>"RENEWED" MOTION TO<br>COMPEL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Civil No. 2:03CV-0294 DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

217

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in opposition to Plaintiff/Counterclaim-Defendant The SCO Group, Inc.'s ("SCO") "renewed" motion to compel.

## Preliminary Statement

IBM has complied in all respects with this Court's Order of March 3, 2004. Nevertheless, in the apparent hope of further delaying discovery and the resolution of claims ripe for summary adjudication,[1] SCO has submitted a "renewed" motion to compel claiming that IBM has failed to comply with its discovery obligations. SCO's is wrong and its motion should be denied.

To date, SCO has served 141 document requests and 22 interrogatories on IBM.  In response, IBM has produced nearly one million pages of documents and more than 40 million lines of source code from IBM's AIX and Dynix operating systems, and has also provided a substantial amount of information in response to SCO's interrogatories (even in instances where IBM believed the information to be irrelevant).

SCO has moved to compel just once,[2] seeking the production of additional source code from IBM and contact information for more than 7,200 individuals.  Upon consideration of SCO's motion, this Court directed IBM to provide information that IBM had offered voluntarily to provide SCO in an attempt to resolve the dispute without the Court's assistance (but which

---

[1]  SCO filed the instant motion the day before it filed its opposition to IBM's motion for summary judgment on its Tenth Counterclaim.  SCO then argued in its opposition papers that IBM's summary judgment motion should be denied, among other reasons, because a motion to compel was pending before this Court.

[2]  After IBM filed a motion to compel seeking discovery, SCO moved in November 2003 to compel additional responses to only three of its document requests (Nos. 2, 3 and 11) and three of its interrogatories (Nos. 2, 4, and 5).

- 2 -

309594.1

SCO refused to accept): certain specified releases of AIX and Dynix and contact information for a limited number of individuals. IBM provided all of these materials promptly upon receiving the Court's Order. SCO's accusation, therefore, that IBM has engaged in an "ongoing pattern of discovery abuse" (SCO Br. at 9) is unfounded and crafted, we believe, solely to detract attention from its own discovery failings and to delay the efficient resolution of this case.[3]

Setting aside SCO's grandstanding, SCO here asks that IBM be compelled to provide three categories of information that SCO claims (incorrectly) IBM failed to provide in response to the Court's Order. First, SCO seeks the production of the same AIX and Dynix source code that this Court already ruled IBM did not have to produce and that is also the subject of SCO's pending Memorandum Regarding Discovery (which was not even fully briefed when SCO filed this motion and has not yet been addressed by this Court).[4] Second, SCO seeks additional documents from IBM's "top level management" (SCO Br. at 2), despite the fact that IBM has repeatedly advised SCO that it has already produced the non-privileged documents responsive to SCO's requests located in the files of IBM's senior management. Third, SCO seeks contact

---

[3] SCO states that IBM has attempted to "hinder and delay SCO's prosecution of its claim" (SCO Br. at 11), despite the fact that SCO has resisted providing discovery sought by IBM at every turn and has refused for more than a year to match the source code in Linux to which SCO claims rights to source code in UNIX System V. Indeed, SCO recently represented to the court in Red Hat, Inc. v. The SCO Group, Inc. Civ. No. 03-772 (D. Del.) that SCO is aware of "significant instances of line-for-line and 'substantially similar' copying of code from Unix System V into Linux", but still refuses to provide that information to IBM.

[4] By this "renewed" motion, SCO has helped itself to no less than four briefs on the same issue—whether SCO is entitled to all of the source code files contained in IBM's internal databases regardless of whether SCO asserts that any of that source code is at issue in the case. SCO submitted its 17-page Memorandum Regarding Discovery on May 28, 2004 and its 27-page Reply Memorandum Regarding Discovery on July 12, 2004, both of which were devoted solely to this issue. SCO's 12-page brief in support of this "renewed" motion also is largely devoted to this issue. Presumably, SCO intends to submit a reply brief in support of its "renewed" motion as well.