DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

| | | |
|---|---|---|
| THE SCO GROUP INC. | : | Case No. 2:03cv00294 DAK |
| Plaintiff, | : | |
| | : | ORDER REGARDING SCO'S |
| vs. | | RENEWED MOTION TO COMPEL DISCOVERY |
| INTERNATIONAL BUSINESS MACHINES CORP. | | JUDGE DALE A. KIMBALL |
| Defendant. | | MAGISTRATE JUDGE BROOKE C. WELLS |

On October 19, 2004, the court heard arguments regarding SCO Group Incorporated's (SCO) Renewed Motion to Compel Discovery.[1]

---

[1] Initially, SCO's Renewed Motion to Compel was scheduled for oral argument on September 14, 2004. However, prior to the hearing, SCO filed an ex parte motion for leave to file a supplemental memoranda regarding discovery. See Docket no. 245. On September 3, 2004, the court granted SCO's ex parte motion for leave to file a supplemental memoranda regarding discovery. See Docket no. 270. IBM then filed a motion to continue the hearing in order to respond to SCO's supplemental memorandum. Based on

377

See Motion, docket no. 190; Minute entry, docket no. 327. At the hearing, and in an order filed by the court the following day, the court ordered both parties to prepare and exchange privilege logs within 30 days. See Order, docket no. 328. The court also ordered International Business Machines Corp. (IBM) to provide affidavits from the Board of Directors regarding production of all non-privileged documents pertaining to IBM's Linux strategy. SCO's Renewed Motion to Compel was taken under advisement.

Now before the court is SCO's Renewed Motion to Compel. See Docket no. 190. The court has carefully considered the memoranda and other materials submitted by the parties. Additionally, the court has reviewed relevant case law. Now being fully advised, the court renders the following Order.

### SCO's Renewed Motion to Compel

As a preliminary matter, the court considers IBM's argument that SCO failed to confer with IBM before filing its motion. Local rule 37-1 requires attorneys to confer and try to resolve discovery disputes before seeking the intervention of the court. See DUCivR 37-1(a); see also Fed. R. Civ. P. 37(a)(2)(A) (requiring certification that the "movant has in good faith

---

the filing of SCO's supplemental memoranda the court struck the first hearing date and allowed both parties time to adequately respond to the issues contained therein. See Order, docket no. 284.

conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action"). Failure to properly confer with another party can be a basis for denying a motion to compel. See Haselhorst v. Wal-Mart Stores Inc., 163 F.R.D. 10, 11 (D. Kan. 1995) (denying motion to compel because of plaintiff's counsel's failure to make a "reasonable effort" to meet and confer before filing motion).

IBM argues that "SCO's motion should therefore be denied for" failing to adequately confer before filing its motion. IBM's Mem. in Opp. p. 5. SCO counters, arguing that there is no merit to this claim because the items requested in this motion have previously been requested and are "basic discovery obligations." SCO's Rep. in Supp. p. 17.

Given the background of the dispute between SCO and IBM, previous discovery requests by SCO and court involvement, the court finds there was no need for SCO to confer with IBM prior to filing their Renewed Motion to Compel. Unfortunately, the court seriously doubts that a meet and confer over the present motion would have resulted in anything more than anemic advancement toward resolving the dispute.

## Basic Discovery Principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure states in relevant part: "Parties may obtain discovery regarding any

3

matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This rule has been interpreted broadly by the United States Supreme Court. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978). "[A]t the discovery stage, the concept of relevance should be construed very broadly." Gohler, IRA, et al. v. Wood et al., 162 F.R.D. 691, 695 (D. Utah 1995). However, a court may limit discovery where "the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(i). A court may also limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

SCO's renewed motion requests the following:

1. All versions of AIX and Dynix/ptx, including the names of individuals who contributed to AIX and Dynix. According to IBM, this additional source code is "roughly two billion lines of code." IBM's Mem. in Opp. p. 7, docket no. 217.

2. Access to revision information including access to IBM's storage systems known as Configuration Management Version Control (CMVC) and Revision Controls System (RCS). See SCO's Renewed

Mtn. p. 3, docket no 190; Mem. in Supp. p. 5, docket no. 193. These systems allegedly contain information regarding what changes were made to AIX and Dynix and by whom such changes were made. See id. SCO argues such information is responsive to its discovery requests, is necessary to prosecute its case and to defend against IBM's counterclaims. See id.

SCO also requests all programmer notes, design documents and "white papers." SCO's Reply Mem. Re. Discovery, docket no. 205.

3. Documents from top level management relating to *inter alia*, IBM's use and strategy behind Linux. See SCO's Mem. in Supp. p. 2.

4. Further supplementation to Interrogatory Number 5, which seeks the identity of "IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, *specifying for each person their precise contributions to each*." Id. p. 4 (emphasis in original).

5. Witness contact information that is to include a 1000 of the most important prospective trial witnesses as agreed upon by SCO and IBM." Order dated March 3, 2004, p. 5, docket no. 109.

### A. Source Code

Previously, this court ordered IBM to "provide the releases of AIX and Dynix consisting of 'about 232 products.'" Order

5

dated March 3, 2004, p. 4, docket no. 109. Based on the representations before the court it appears that IBM provided these products.

In this same order, the court also provided a means whereby it would "consider ordering IBM to produce more code from AIX and Dynix." Id.; see also American Medical systems, Inc. v. National Union Fire Ins. Co. 1999 WL 562738 * 2-3 (E.D. La. 1999) (denying a discovery request as over broad, but not ruling out the possibility of allowing the discovery after a party first "procure[d] relevant documents").

In its second amended complaint SCO alleges that IBM breached the Software Agreement. See SCO's Second Amended Complaint p. 32. Specifically, SCO alleges that IBM received Section 2.01 of the agreement which states:

> [a] personal, *nontransferable* and nonexclusive right to *use* in the United States each Software Product identified in the one or more Supplements hereto, *solely for Licensee's own internal business purposes* and solely on or in conjunction with Designated CPU's for such Software Product. Such right to use includes the right to *modify* such Software Product and to *prepare derivative works based on* such Software product, provided the resulting materials are *treated hereunder as part of the original Software Product.*

Id. p. 32-33. (alterations and emphasis in original).

SCO alleges that IBM violated § 2.01 "by, *inter alia*, using, and assisting others to use, the Software Products (including

6

System V source code, derivative works, documentation related thereto and methods based thereon) for *external purposes* that are different from, and broader than, IBM"s own internal business purposes." Id. p. 33 (emphasis in original). SCO further alleges that IBM breached other sections of the Software Agreement, the Sublicensing Agreement and other contractual agreements (Sequent License Agreements). See id. p. 33-65; SCO's Second Amended Complaint Cause of Action 1-4.

In contrast to SCO's arguments, IBM has filed for partial summary judgment on SCO's breach of contract claims. See IBM's Mtn. for Partial Summ. Judgment, docket no 225. In short, IBM cites two primary reasons as a basis for granting summary judgment. First, "the AT&T agreements upon which SCO's claims are based do not preclude IBM from using and disclosing source code that is written by IBM and does not include UNIX System V code [i.e. homegrown code]." Id. p. 3. Second, "even if the AT&T agreements could be read to preclude the disclosure of homegrown code, any breach based upon such a reading has been waived by Novell, Inc." Id. IBM's Partial Motion for Summary Judgment on SCO's breach of contract claims is to be heard by Judge Kimball.

From the foregoing, it is clear that the contracts and their interpretations are central to the disputes in this case. In fact, the contract claims may have a more important role in the

outcome of this case than the copyright claims. Other courts have determined that "contractual alternatives to copyright may give an owner of computer software more protection than copyright would." Dispatch Automation, Inc. v. Richards, 280 F.3d 1116, 1120 (7th Cir. 2002). The majority of courts have adopted this principle. See, e.g., Bowers v. Baystate Technologies, Inc., 320 F.3d 1317, 1327-28 (Fed. Cir. 2003) (upholding a jury verdict of breach of contract where the contract prohibited "all reverse engineering" of the software, a protection that was "more extensive than copyright protection, which prohibits only certain copying"); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454 (7th Cir. 1996) ("A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'"); National Car Rental System, Inc. v. Computer Associates Intern., Inc., 991 F.2d 426, 433 (8th Cir. 1993) (concluding that "[a]bsent the parties' agreement" the use restriction on the processing of data for third parties would cease to exist because it was not found within the purview of copyright law); Acorn Structures, Inc. v. Swantz et al., 846 F.2d 923, 925-26 (4th Cir. 1988) (concluding copyright law did not preempt breach of contract claim concerning the ideas underlying the agreement). Accordingly, code belonging to SCO that might otherwise have lacked protection under copyright law may fall

8

within the confines of the contract and be protected.

In opposition, IBM argues that "the vast majority of these source code files are wholly irrelevant to this case (under any theory) because they were <u>not</u> contributed to Linux." IBM's Opp. Mem. p. 9. While the court agrees with IBM that this case concerns code that may have been improperly contributed to Linux, the court disagrees with IBM's narrow interpretation of relevant code. Under a plausible reading of the contract, it is possible that protections and prohibitions exist for code contributed by IBM to Linux. This code that eventually ended up in Linux may not look similar to the code initially provided to IBM under the contract, but if it was based on modifications, elements or derivations that are protected under the contract then it is clearly relevant. In contrast to IBM's argument this protection may even extend to "homegrown" code depending on the interpretation of the contract.

Based upon the possibility of increased protection under the contract and the general principle that "at the discovery stage, the concept of relevance should be construed very broadly," see <u>Gohler</u>, 162 F.R.D. at 695, the court finds that the burden of producing the code SCO seeks is outweighed by the relevancy of such code in the instant dispute.

Accordingly, the court HEREBY ORDERS IBM to provide in a readily accessible format <u>all versions and changes</u> to AIX and

9

Dynix.

In essence, the court is ordering production of the information contained within the CMVC and RCS systems without granting SCO complete access at this time. These systems allegedly contain source code that is outside the scope of the present litigation. Such code is used by IBM during their normal course of business and would not be relevant to the present dispute. Therefore, due to IBM's business interests the court DENIES SCO's request for complete access to the systems at this time. However, if IBM fails to provide <u>ALL</u> AIX and Dynix information, the court will order IBM to allow SCO unfettered access to the CMVC and RCS systems. This production is also to include the approximately "two billion lines of code" as represented by IBM <u>in addition to</u> any other code that is found in the CMVC and RCS systems relating to AIX and Dynix. IBM's Mem. in Opp. p. 7.

IBM is also hereby further ORDERED to file an affidavit specifying the efforts it took to deliver the code from the CMVC and RCS systems. Included in this affidavit should be an attestation to the percentage of AIX and Dynix information found and provided from the CMVC and RCS systems. By requiring this, the court seeks to circumvent future complaints by SCO alleging that IBM failed to provide <u>all</u> CMVC and RCS information.

The good faith efforts of both parties will be necessary in

facilitating the production of such a large amount of source code. The foundation of our legal system depends in part upon the cooperation of adversaries who are required by the civil rules to provide information essential in "secur[ing] the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Unfortunately though, this standard is often abandoned perhaps in part due to the aggressive adversarial nature of litigation and the large amounts of money involved. Although counsel are expected to protect their client's interests and guard against excessive burdens, such efforts should be tempered with candid cooperation between adversaries. In an ideal world, cooperation would lead to a streamlined discovery process whereby the fact finder could quickly resolve the ultimate issues found in disputes. Such a situation promotes efficient disposition of litigation, which is generally a good thing. Doubtless as the parties are well aware, all cases do not exist in the ideal world. However, this does not excuse counsel from striving to meet this standard.

There have been abundant accusations of stonewalling in this case by both parties. While the court assumes the good faith of all litigants before it, the court, nevertheless, urges both sides to renew their efforts in cooperating with each other. Ultimately, it will be up to the fact finder to resolve the disputes in this case. However, it is important that the

11

adversarial process, as contentious as it may be, not prevent the fact finder from having the right information to resolve the issues in this case.

Finally, the court wishes to note the importance of the code to both parties. SCO has much to gain by showing that any so called homegrown code allegedly within the purview of the contract ended up in Linux. In equal respect, IBM's case will be strengthened tenfold if IBM can show that notwithstanding possible contract protections, homegrown code provided no basis for the code that IBM eventually contributed to Linux. Both sides in this dispute are on the offensive and defensive much like the versatile two-way players from football's storied past.[2] The production of the code, *per se*, or the evidence it leads to will not only assist the trier of fact but will help both parties adequately prepare their cases. This dual importance is another element which contributes to the court's decision requiring IBM to produce additional source code.

---

[2] Although some modern players are considered "two-way" players, few can match the legendary ironmen from football's past who often played on both offense and defense the entire game. Hall of Famer Mel Hein is the perfect example. This New York Giants' star was one of the most durable players in NFL history. He played 15 seasons going for 60 minutes a game without nearly any rest. Amazingly, he called for a timeout just once in his career. The timeout was used to repair his broken nose. See Biography of Mel Hein, Pro Football Hall of Fame, *available at* http://www.profootballhof.com/hof/member.jsp?player_id=92.

## B. Documents From Top Level Management

At a hearing held on October 19, 2004, the court ordered both parties to prepare and exchange privilege logs. See Docket no. 327; Order dated October 20, 2004. Additionally, IBM was specifically ordered to "provide affidavits from the Board of Directors, Mr. Palmisano and Mr. Wladawsky-Berger regarding production of all non-privileged documents pertaining to IBM's Linux strategy." Id. p. 1.

On December 23, 2004, SCO filed a Renewed Motion to Compel asking this court to compel IBM to "respond completely and properly to SCO's discovery regarding the files of IBM's executive management and . . . discovery regarding SCO's Rule 30(b)(6) depositions of IBM. SCO's Renewed Motion, p. 2, docket no. 366.

Judge Kimball granted a stipulated extension to IBM allowing them to file their opposition on February 4, 2005. SCO will likely file a reply if they so choose shortly thereafter.

Accordingly, the court finds it necessary to postpone a decision regarding the production of documents from top level management. However, the court HEREBY ORDERS both parties to submit privilege logs and any objections to the opposing parties' privilege logs to the court. These are to be provided to the court within 30 days from the entry of this order. Following

13

briefing, the court will hold a hearing regarding the issues involved in SCO's motion including those concerning the Rule 30(b)(6) depositions.

## C. Answers To Interrogatories

SCO requests further answers to Interrogatory 5. <u>See</u> SCO's Mem. in Reply p. 6. Interrogatory 5 seeks "the identities of 'IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, <u>specifying for each person their precise contributions to each</u>.'" <u>Id.</u> p. 7 (emphasis in original).

In support of its request, SCO points to the importance of possible admissions concerning the contracts. SCO argues that this information is relevant to determinations of

> -- admissions concerning the meaning of, and limitations imposed by, the license agreements;
> -- admissions regarding IBM's liability for breaching those contracts; and
> -- admissions that the development of AIX and Dynix/ptx depended on UNIX System V.

SCO's Rep. Mem. p. 10.

IBM states that "there is no precise way to determine what code of the more than 7,200 individuals identified in response to

Interrogatory Nos. 4 and 5 contributed to AIX or Dynix." IBM's Opp. Mem. p. 9.

In direct contrast to IBM's argument is a sworn declaration from an individual familiar with CMVC. Allegedly CMVC is a series of databases that contains within it *inter alia*, a tracking system that traces all changes to source code, who made those changes, the dates on which they were made, comments related to the changes and other information concerning the specific files of code.

After consideration of the parties' arguments, the court finds that some supplementation to Interrogatory 5 will likely occur from the court's ordering of IBM to produce additional source code. However, the court finds that it is not only the changes to the code that are relevant but also the names and information concerning those individuals who made the changes. This information is relevant in part because some of these individuals may have information concerning IBM's treatment of the contracts. Such witness testimony would assist the trier of fact in interpreting the contract.

Accordingly, IBM is hereby ORDERED to provide programmer's notes, design documents, white papers, the comments and notes made by those who did the changes, the names and contact information of individuals who made changes and what changes they

15

specifically made. Once again, in weighing the burden imposed on IBM with the relevancy of evidence that is not obtainable from other sources, the court finds it appropriate to order the production of this information.

However, IBM is not ordered to provide this information for all 7,200 individuals. See IBM's Opp. Mem. p. 9, fn. 10. Instead, consistent with the court's prior decision concerning witness contact information IBM is to provide a representative sample. Accordingly, IBM is HEREBY ORDERED to provide the above required information for the 3000 individuals who made the most contributions and changes to the development of AIX and Dynix. This limitation does not absolve IBM from the court's requirement to provide all changes to AIX and Dynix. In the court's estimation, it should be easier to show changes to source code than provide the information concerning who made every change to that code. A representative sample of 3000 should provide SCO with enough information to proceed with its case without placing an undue burden on IBM. Especially, in light of the fact that these 3000 are to be the individuals who contributed the most to the development of AIX and Dynix.

To the extent possible the parties are to agree upon the 3000 designated individuals. However, based on the record before the court it appears that IBM has better access to information regarding who made the most changes or significant contributions

16

to AIX and Dynix. Therefore, IBM is to file an affidavit detailing the process by which the 3000 were chosen. Once again by requiring this, the court seeks to circumvent the rote objection by SCO alleging that they did not get enough information.

### D. Witness Contact Information

Previously, this court ordered "IBM to properly identify a representative sample of the potential witnesses that is to include a 1000 of the most important prospective trial witnesses as agreed upon by SCO and IBM." Court's order March 3, 2004 p. 5-6. IBM has provided the information and therefore, this "moots the need[] for further unnecessary litigation . . . over this issue." SCO's Rep. Mem. p. 17.

### CONCLUSION

Based on the foregoing, SCO's renewed motion to compel is granted in part and denied in part. The discovery ordered by the court is to be provided no later than March 18, 2005.

The court's decision to grant SCO's motion in part necessitates some modification to the scheduling order. Accordingly, the court hereby STRIKES the current amended scheduling order including the fact discovery deadline of

17

February 11, 2005. The court ORDERS both SCO and IBM to meet and confer regarding a new schedule and to submit a proposed amended scheduling order to the court by March 25, 2005.

DATED this __18__ day of January, 2005.

BY THE COURT:

*/s/ Brooke C. Wells*

BROOKE C. WELLS
United States Magistrate Judge

blk

United States District Court
for the
District of Utah
January 19, 2005


* * CERTIFICATE OF SERVICE OF CLERK * *


Re:   2:03-cv-00294


True and correct copies of the attached were either mailed, faxed or e-mailed by the clerk to the following:


    Brent O. Hatch, Esq.
    HATCH JAMES & DODGE
    10 W BROADWAY STE 400
    SALT LAKE CITY, UT  84101
    EMAIL

    Scott E. Gant, Esq.
    BOIES SCHILLER & FLEXNER
    5301 WISCONSIN AVE NW
    WASHINGTON, DC  20015

    Frederick S. Frei, Esq.
    ANDREWS KURTH
    1701 PENNSYLVANIA AVE NW STE 300
    WASHINGTON, DC  20006

    Evan R. Chesler, Esq.
    CRAVATH SWAINE & MOORE
    825 EIGHTH AVE
    NEW YORK, NY  10019
    EMAIL

    Mr. Alan L Sullivan, Esq.
    SNELL & WILMER LLP
    15 W SOUTH TEMPLE STE 1200
    GATEWAY TOWER W
    SALT LAKE CITY, UT  84101
    EMAIL

    Todd M. Shaughnessy, Esq.
    SNELL & WILMER LLP
    15 W SOUTH TEMPLE STE 1200
    GATEWAY TOWER W
    SALT LAKE CITY, UT  84101
    EMAIL

    Mark J. Heise, Esq.
    BOIES SCHILLER & FLEXNER
    100 SE 2ND ST STE 2800
    MIAMI, FL  33131

EMAIL

Mr. Kevin P McBride, Esq.
1299 OCEAN AVE STE 900
SANTA MONICA, CA  90401
EMAIL

Robert Silver, Esq.
BOIES SCHILLER & FLEXNER
333 MAIN ST
ARMONK, NY  10504

Stuart H. Singer, Esq.
BOIES SCHILLER & FLEXNER
401 E LAS OLAS BLVD STE 1200
FT LAUDERDALE, FL  33301
EMAIL

Mr. David W Scofield, Esq.
PETERS SCOFIELD PRICE
340 BROADWAY CENTRE
111 E BROADWAY
SALT LAKE CITY, UT  84111
EMAIL

Mr. Michael P O'Brien, Esq.
JONES WALDO HOLBROOK & MCDONOUGH
170 S MAIN ST STE 1500
PO BOX 45444
SALT LAKE CITY, UT  84145-0444