

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN OPPOSITION TO G2'S MOTION TO INTERVENE AND MOTION TO UNSEAL COURT'S FILE**<br><br>Case No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

379

Defendant International Business Machines Corporation ("IBM") respectfully submits this Memorandum in Opposition to Motion to Intervene and Motion to Unseal the Court's File filed by proposed intervenor G2 Computer Intelligence, Inc. ("G2").[1]

## Summary

For over a year, IBM and The SCO Group, Inc. ("SCO") have exchanged hundreds of thousands of confidential documents in reliance on the Stipulated Protective Order entered by this Court on September 16, 2003 (the "Protective Order"). As is common in complex commercial litigation, the Protective Order here provides that any party who believes in good faith that documents to be produced contain information that would be "valuable to third parties" and that "would not normally be revealed . . . to third parties without an agreement to maintain it in confidence" may designate the documents as "confidential" under the Protective Order, rendering them subject to certain limitations on disclosure and use, including that they be filed under seal when submitted to the Court.

Now, G2, a publisher of two Linux-related internet newsletters and a stranger to this action, has filed a Motion to Intervene and Motion to Unseal Court's File. Without having any basis for challenging the parties' confidentiality designations herein, G2 nevertheless asserts that the Protective Order must be modified so as to require the parties to prove, and the Court to find, that disclosure of each document filed under seal would cause the disclosing party "specific competitive injury." If G2 prevails on its motion, the Court and the parties must engage in this exercise on a document-by-document basis for each confidential document filed under seal to date, and for each confidential document filed in the future as well. The regime G2 proposes represents a significant and unnecessary burden for the parties and for the Court, and, as set forth in detail herein, is unsupported by the relevant authorities.

---

[1] Yesterday, IBM received notice that CNET Networks, Inc. ("CNET") and Forbes Inc. ("Forbes") joined G2's motion, incorporating G2's arguments by reference in their joinder.

1

Because the law does not support G2's proposed modification of the Court's Protective Order, and because the parties and the Court have justifiably relied on the Protective Order in exchanging and using numerous confidential documents for the purpose of resolving this lawsuit, IBM respectfully submits that G2's motion should be denied.

## Argument

### A. G2's Reliance On A First Amendment Right of Access to Confidential Documents Is Misguided.

The Court should deny G2's motion because neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has held that the First Amendment guarantees public access to all court documents, much less the right to access confidential documents produced in complex litigation pursuant to a duly-entered protective order. More important, even if the First Amendment did apply to confidential documents filed under seal in this circuit, G2's motion fails because such documents have not historically been open to inspection by the public, and because G2 fails to show that public access traditionally has played a "significant positive role" in resolving discovery disputes and dispositive motions pursuant to which certain documents may have been filed under seal with the Court.

In its motion, G2 concedes, as it must, that although the First Amendment generally guarantees public access to judicial proceedings, neither the Supreme Court nor the Tenth Circuit Court of Appeals holds that a First Amendment right of access exists with respect to judicial records. Instead, G2 (correctly) asserts only that "the Tenth Circuit has assumed that there could be a right of access under the First Amendment to such materials," relying on two criminal cases. (Mem. Supp. of Motion to Intervene ("Motion to Intervene") at 3, n.3 (emphasis added).) The decisions, United States v. McVeigh, 119 F.3d 806, 813-15 (10th Cir. 1997), and United States v. Gonzales, 150 F.3d 1246, 1255-56 (10th Cir. 1998), easily distinguishable on their facts from this complex civil lawsuit, both expressly declined to hold that a First Amendment right of access to judicial documents exists. See McVeigh, 119 F.3d at 806 (stating that "we have not

2

previously decided, nor do we need to decide in this case, whether there is a First Amendment right to judicial documents."); see also Gonzales, 150 F.3d at 1256 ("In McVeigh . . . we did not decide whether this court would apply the [experience and logic] analysis to media requests for access to court documents . . . ."). Moreover, the Tenth Circuit has long recognized that the solitary decision to reach the United States Supreme Court on this issue, Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978), in fact "reject[s] the [media's] claim that release of the Watergate tapes was mandated by the First Amendment." United States v. Hickey, 767 F.2d 705, 709 (10th Cir. 1985) (citing Nixon, supra, 435 U.S. at 709).[2]

Even if this Court were to apply the test which McVeigh declined to establish, G2 still cannot show that the confidential documents filed under seal here are subject to a First Amendment right of access, much less one which obligates the parties to make a showing of "specific competitive harm" on a document-by-document basis, as G2 contends. (Motion to Intervene at 5 (emphasis in original).) In McVeigh, the Tenth Circuit stated, without deciding, that a two-part "experience and logic" test could be used to determine whether a public right of access to judicial documents exists. The test asks "1) whether the document is one which has historically been open to inspection by the press and public; and 2) whether public access plays a significant positive role in the functioning of the particular process in question." McVeigh, 119 F.3d at 812 (internal citation and quotation marks omitted). As G2's motion itself demonstrates, neither inquiry can be answered affirmatively here.

First, contrary to G2's assertions, confidential documents sealed pursuant to a valid protective order have not "historically been open to inspection by the press and public." G2 has not demonstrated a tradition of public access to these kinds of documents, and no such tradition

---

[2] In fact, in a companion opinion issued after the Grundberg v. Upjohn decision relied upon by G2 extensively elsewhere in its motion, the District of Utah likewise made clear that "'[t]he Supreme Court never has found a First Amendment right of access to civil proceedings or the court file in a civil proceeding.'" Grundberg v. Upjohn, 140 F.R.D. 459, 466 (D. Utah 1991) ("Grundberg II") (quoting Webster Groves Sch. Dist. v. Pulitzer Publ. Co., 898 F.2d 1371, 1377 (8th Cir. 1990).) G2 declines to cite Grundberg II anywhere its motion.

3

is apparent in the case law. See, e.g., In re Reporters' Committee for Freedom of the Press, 77 F.3d 1325, 1339 (D.C. Cir. 1985) ("We are certainly unaware of any tradition of public access (pre- or post-judgment) to all documents consulted . . . by a court in ruling on pre-trial motions.") Significantly, G2 concedes this very point, arguing that "[t]his historical right has guaranteed the public access to judicial documents except where outweighed by a party's countervening [sic] interest," such as "the interest of a business in keeping its trade secret information confidential." (Motion to Intervene at 5 (emphasis added).)

Second, rather than playing a "significant positive role" in the functioning of the particular process in question, modifying the Protective Order as G2 proposes would hinder the efficient resolution of this case by requiring the parties to make a document-by-document showing of "specific competitive harm" before any such document may be used in the litigation. Such a principle — and its corollary, the parties' subsequent dependence on the Court for the resolution of confidentiality disputes, one motion and one document at a time — would undermine the Court's ability to facilitate "full disclosure in discovery without fear of public access to sensitive information" while avoiding "the expense and delay of protracted disputes over every item of sensitive information." United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990); see also Gillard v. Boulder Valley Sch. Dist. Re-2, 196 F.R.D. 382, 386 (D. Colo. 2000).

Rather than explaining the public's "significant" positive role in the resolution of the discovery, summary judgment, and other pre-trial procedural motions at issue in this case, pursuant to which the parties have submitted confidential documents under seal as necessary, G2 instead asserts that this case is both "important" and of "broad public interest," and that these facts require the parties to show (and the Court to find) "specific competitive harm" with respect to each document filed under seal. Under G2's analysis, a third-party need only assert that a case is, in its judgment, "important" in order to require the parties and the Court to undertake

significant additional duties, at significant additional cost, pursuant to a First Amendment right which the United States Supreme Court and the Tenth Circuit Court of Appeals have yet to find applies.

### B. The Protective Order Entered In this Case Properly Balances Any Common Law Right of Access With the Parties' Interest In Maintaining Confidentiality.

While courts have recognized a common law right of access to court documents generally, "the right is not absolute. All courts have supervisory powers over their own records and files." Hickey, 767 F.2d at 708 (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)). Moreover, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 597-99; Hickey, 767 F.2d at 708. Moreover, in a case relied upon by G2, this Court similarly recognized that "[c]ourts have supervisory powers over their own files and records . . . and have discretion to seal court documents 'if the public's right of access is outweighed by competing interests.'" Huntsman-Christensen Corp. v. Entrada Industries, Inc., 639 F. Supp. 733, 736 (D. Utah 1986) (citations omitted). The Protective Order here — and the parties' confidentiality designations thereunder — clearly satisfies this requirement.

As grounds for its entry, the Protective Order expressly recognizes and seeks to balance "the public's interest in public access to the courts" with "the parties' interest in maintaining the confidentiality of sensitive information," and the need for efficient management of the lawsuit. (Protective Order at 2.) In order to accommodate these competing interests, the Protective Order defines "Confidential Information" as

> information or DOCUMENTS or other materials that the DISCLOSING PARTY in good faith believes is not publicly known that would be valuable to third parties, including but not limited to the DISCLOSING PARTY'S actual and potential competitors, and that the DISCLOSING PARTY would not

5

>normally reveal, and has not revealed, to third parties without an
>agreement to maintain it in confidence.

(Id. at 3.) A "confidential" designation obligates the non-disclosing party who wishes to use the document in a submission to the Court to file it under seal. (Id. at 9.) The Protective Order also provides that "[a]t any time" a party may challenge a confidentiality designation that the party in good faith believes should not have been so designated, and, in the event of such a dispute, places the burden of proof on the disclosing party to show that the document was properly designated. (Id. at 10.) Despite the fact that IBM and SCO have each reviewed documents designated by the other as confidential, neither party has filed a motion seeking to remove the designation from any confidential document. G2's objection, in contrast, necessarily is based on speculation.

As a result of the foregoing, and contrary to G2's claims, the Protective Order does not permit confidentiality designations solely for the purpose of avoiding harm to the parties' reputations. Instead, it appropriately requires that confidential information not be publicly known, and that it must be "valuable to third parties, including . . . competitors." (Id. at 3.) To qualify for protection, confidential information also must be of a sort which the disclosing party would not normally reveal to a third party without a confidentiality agreement. (Id.) Under these circumstances, any public right of access is clearly outweighed by the parties' competing interest in preventing the disclosure of information that would benefit their competitors and that they would not ordinarily reveal without an agreement to maintain its confidentiality.

Moreover, although G2 complains that the documents placed under seal here were designated as confidential "based on the unilateral decision of the parties" (Motion to Intervene at 7), stipulated protective orders of this kind in fact are "routine" in cases involving large volumes of documents. United Nuclear, 905 F.2d at 1427 (citation omitted). Such "blanket" protective orders — which allow the parties the ability to designate documents as confidential, subject to objection by the opposing party — "serve the interests of a just, speedy and less

6

expensive determination of complex disputes by alleviating the need for and delay occasioned by extensive and repeated judicial intervention . . . ." Gillard, 196 F.R.D. at 386; see also SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001) ("encouraging full disclosure of all evidence that might conceivably be relevant [through the use of such protective orders] . . . represents the cornerstone of our administration of civil justice.") Without them, one court has concluded, "discovery would come to a virtual standstill." Gillard, 196 F.R.D. at 386.

### C. The Caselaw G2 Cites Does Not Support the Relief Sought In its Motion.

Relying solely on Grundberg v. Upjohn Co., 137 F.R.D. 372 (D. Utah 1991) ("Grundberg I"), G2 claims that the parties bear the burden of proving that each sealed document — indeed, each "portion" of a sealed document — is "actually confidential" and should not be kept under seal absent a showing that publication of the material would cause the producing party "specific competitive harm," even where neither party challenges the other's confidentiality designations. (Motion to Intervene at 5, 7-8.) Neither Grundberg I nor Grundberg II, issued later in the same case, requires such a result.

In Grundberg I, plaintiffs filed a products liability action against The Upjohn Co. ("Upjohn") relating to the drug Halcion. The parties initially stipulated to the entry of a protective order. Thereafter, plaintiff filed a motion challenging Upjohn's confidentiality designations as to seven categories of documents produced in discovery, including documents marked by Upjohn as confidential that had been filed with the Food and Drug Administration, certain published articles, and correspondence received from third parties. 137 F.R.D. at 375-76, 392. In response to plaintiffs' motion challenging Upjohn's confidentiality designations, Upjohn registered a "collective works" copyright for the documents covered by the plaintiffs' motion and filed a copyright infringement action against plaintiffs and their lawyers seeking to defeat the motion and enjoin their use of the documents in the litigation. Id. at 377, 378. In rejecting Upjohn's copyright infringement claims on the merits and granting plaintiffs' motion, the district

7

court found that Upjohn filed the copyright action in order to "prevent public disclosure or dissemination of the documents" in the event it lost the motion challenging its confidentiality designations, and that, "[s]ince [plaintiffs] had a perfect right to file such a motion, it appears that Upjohn intended to use the copyright laws to thwart accessibility to the public information contained in the documents which may be offered and admitted into evidence" at trial. Id. at 377, 388. Under these unique facts, and in the face of a challenge from a party based on its review of the documents in question, the district court understandably required Upjohn to make a "particularized showing of commercial or competitive harm" resulting from disclosure, which test Upjohn did not satisfy. Id. at 392.

But Grundberg I did not impose a "burden of showing that each particular document, or portion of a document, filed with the court should be put or remain under seal." (Motion to Intervene at 7 (emphasis in original).) To the contrary, the district court only required Upjohn to defend the confidentiality designations as to eight broad categories of documents — and nowhere required review on a document-by-document, much less each "portion" of a document, basis, as G2 insists. 137 F.R.D. at 375-77. Moreover, while the court ultimately agreed that Upjohn could not justify its designations in the face of the plaintiffs' specific challenges, the court's modification of the protective order actually precluded the relief G2 seeks here — release of the challenged documents prior to trial. Instead, while rejecting each of Upjohn's arguments in some detail, the district court nevertheless ordered that the confidentiality designations not be lifted from the documents until such time as the documents were admitted into evidence at trial. Grundberg I, 137 F.R.D. at 396.

While Grundberg I features prominently in G2's motion, G2 declines to cite Grundberg II, 140 F.R.D. 459. After the conclusion of the product liability and copyright actions, various non-parties with interests in collateral litigation intervened, seeking modification of the protective order to gain access to discovery produced and lodged with the court under seal. Id. at

8

461, 464. Applying United Nuclear, 905 F.2d 1424, the court balanced the interests of the parties against those of the collateral-litigant intervenors, and found that no right of access to the documents sought existed under either the First Amendment or the common law. Id. at 466-67 (stating that "there is no right of access by non-parties to pretrial discovery materials whether such are retained by the parties or filed with the court under seal.") (capitalization omitted).

### D. Even Where Confidentiality Designations Are Validly Challenged, Any Presumption of Access Will Vary Depending on the Documents' Role in the Adjudicatory Process.

Before weighing the parties' interest in confidentiality against any public right of access, courts first determine the role played by the confidential documents at issue in the adjudicatory process. 6 MOORE'S FEDERAL PRACTICE, § 26.104[2] (Matthew Bender 3d ed.) Once the court decides how strong a presumption of access a document deserves in light of its role, it then will balance the weight of that presumption against the parties' interest in confidentiality to determine whether a document must be unsealed. Id.

At one end of this spectrum, courts generally find that no public entitlement exists to "[d]ocuments that play no role in the performance of judicial functions, such as most materials exchanged during discovery" — even where such documents are submitted to the court with discovery motions. Id.; Grundberg II, 140 F.R.D. at 466 (no right of access by non-parties to pretrial discovery materials whether retained by the parties or filed with the court under seal); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312-13 (11th Cir. 2001) ("material filed with discovery motions is not subject to the common-law right of access . . . . This means that the [defendant's] documents filed in connection with motions to compel discovery are not subject to the common-law right of access." (internal citation omitted)); see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (stating that depositions and interrogatories are "not public components of a civil trial" and are "conducted in private as a matter of modern practice.") At the other, an understandably strong presumption of public

9

access exists for evidence introduced in open court at trial, as well as evidence which is relied upon as the "principal basis" for the granting of dispositive relief. 6 MOORE'S FEDERAL PRACTICE, § 26.104[2]. However, any presumption of access to materials filed with dispositive motions is significantly diminished when the motions are denied, "thus leaving a decision on the merits for another day...." United States v. Graham, 257 F.3d 143, 151 (2d Cir. 2001) (citing United States v. Amodeo, 71 F.3d 1044, 150 (2d Cir. 1995)).

As set forth in detail above, G2's motion would thrust upon the parties the burden of making a particularized showing not only as to each document filed under seal in this case, but as to each portion of each document. (Motion to Intervene at 8.) As a result, if the Court were to grant G2's motion, the parties would be required to submit substantial additional briefing as to the confidential nature of every document filed or to be filed under seal prior to in camera review. For all the reasons set forth above, IBM does not understand the parties and the Court to be obligated to shoulder this burden.

Given that G2's motion anticipates additional briefing and review by the Court if granted, IBM does not undertake to make the particularized showing on which G2 insists at this time.[3] However, IBM submits that the documents filed under seal in this case fall into one of three categories and should be addressed as follows:

First, as set forth above, no presumption of public access exists with respect to discovery documents and motions. Because such motions do not implicate the adjudicative process, and because discovery documents themselves are not subject to a right of public access, these motions, including related memoranda, declarations, and exhibits should remain under seal, without further need for briefing or argument. Grundberg II, 140 F.R.D. at 466; Chicago Tribune Co., 263 F.3d at 1312-13.

---

[3] Should the Court grant G2's motion, IBM of necessity will submit additional briefing addressing the particular documents at issue in detail in advance of any in camera review.

10

Second, SCO has attached certain internal IBM emails to its briefing on its pending *Motion for Leave to File a Third Amended Complaint.* (See Docket Nos. 323 & 369.) Like discovery, materials filed in conjunction with a motion to amend do not implicate the adjudicative process and thus are not entitled to any presumption of public access. The internal emails reflect IBM-confidential strategy discussions which are not publicly known, are of value to third parties, and would not be shared with anyone outside of IBM absent an appropriate non-disclosure or other confidentiality agreement. Moreover, these documents do not concern Linux, the "intense public interest" which forms the basis for G2's motion. (Motion to Intervene at 1.) These email documents are properly designated as confidential under the Protective Order and likewise should remain under seal.

Third, with respect to dispositive motions, IBM has made significant efforts to disclose as much information to the public as is appropriate without violating the Protective Order, such as by submitting its briefs referencing SCO-confidential materials in redacted form. Because any presumption of access is significantly diminished when those materials attached to the summary judgment motions are not relied upon for the issuance of a dispositive order, the Court should defer consideration of G2's request to unseal these documents until such time as an order is entered dismissing a claim. Graham, 257 F.3d at 151.[4]

---

[4] In addition, nine boxes of exhibits to IBM's Motion for Partial Summary Judgment on its Counterclaim for Copyright Infringement (8th Counterclaim) consist of Linux source code, which is and should be publicly available. However, SCO designated as confidential Linux source code produced by it in discovery, which IBM submitted with its motion. For this reason, these nine boxes of exhibits were filed under seal. (Docket No. 243.)

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2005, a true and correct copy of **IBM's MEMORANDUM IN OPPOSITION TO G2'S MOTION TO INTERVENE AND TO UNSEAL COURT'S FILE** was served on the following by U.S. Mail, postage prepaid:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Michael Patrick O'Brien
Andrew H. Stone
Jones, Waldo, Holbook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
Sean Eskovitz
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504

Amy F. Sorenson

332277.7

13

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court deny G2's Motion to Intervene and to Unseal Court's File.

DATED this 20th day of January, 2005.

                SNELL & WILMER L.L.P.

                Alan L. Sullivan
                Todd M. Shaughnessy
                Amy F. Sorenson

                CRAVATH, SWAINE & MOORE LLP
                Evan R. Chesler
                David R. Marriott

                *Attorneys for Defendant/Counterclaim-Plaintiff*
                *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*