

Michael Patrick O'Brien (USB #4894)
Andrew H. Stone (USB #4921)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200

Attorneys for G2 Computer Intelligence, Inc., CNET Networks, Inc., and Forbes Inc.

## IN THE UNITED STATES DISTRICT COURT

## STATE OF UTAH, CENTRAL DIVISION

| THE SCO GROUP, INC., a Delaware corporation,<br><br>        Plaintiff,<br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>        Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO UNSEAL COURT'S FILES**<br><br><br><br>Civil No. 03CV0294<br><br>Judge Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |
|---|---|

      G2 Computer Intelligence, Inc. ("G2"), CNET Networks, Inc.("CNET"), and Forbes Inc. ("Forbes") (collectively "Intervenors")[1] submit the following Reply Memorandum in Support of their Motion to Intervene and to Unseal Court's Records.

      Neither SCO nor IBM deny that this case is of significant public interest. SCO's claims have tremendous ramifications for the computer industry; they challenge one of the most widely adopted open source operating systems available. This case involves two public companies, one of them among the

---

[1] G2, CNET, and Forbes, as proposed Intervenors, do not mean to presume the Court's decision on this aspect of their motion by styling themselves "Intervenors." Though SCO has affirmatively stated that it does not oppose the motion to intervene, and IBM has not argued against it, G2, CNET, and Forbes merely adopt this style for ease of reference.

world's largest corporations. This Court's website lists this case among its ten high profile cases currently pending in the District. A decision on the case will have far ranging impacts beyond the millions of shareholders of the two parties and may affect technology adopted by millions of other people.

A fundamental component of our judicial system is the right of public access to judicial proceedings. Like all aspects of our democratic government, courts derive their legitimacy from powers granted by the people. Decisions made in secret, or based upon secret evidence and arguments, cannot be perceived as fair by the public. It is for this reason that courts are presumptively open to the public and that sealing of proceedings or records is disfavored.

The parties here have reacted to Intervenors' motion in different ways. SCO acknowledges the limits on access to certain documents, and points out that Intervenors have not yet demonstrated reasons for altering the *Protective Order* or unsealing any documents in this case. *The answer to this argument is simple:* until Intervenors' attorneys have access to the sealed documents, it is impossible to argue whether the documents are properly sealed or whether they are documents that are more properly released to the public.

IBM, on the other hand, has resisted the motion on several grounds. First, without citing any authority to the contrary, IBM questions whether a right of access exists. Second, IBM argues that the *Protective Order* in this case, because it requires that a party designate documents as confidential in "good faith," adequately protects any public interest. Third, IBM invites the Court to exclude, without any review, whole classes of documents as necessarily beyond the reach of the First Amendment, common law or any other theory of public access. IBM is wrong on all accounts.

680280v1                                                                                               2

The Court should permit Intervenors to intervene in this action for purposes of challenging designations made under the *Protective Order*. The Court should order that Intervenors' counsel be made party to the *Protective Order* and permitted to view those filed documents sealed pursuant thereto. The Court should require the parties to state the "good faith" basis for their designation of each of such documents as "Confidential." Finally, the Court should schedule briefing as to those documents that Intervenors and the parties cannot agree are appropriately sealed or appropriately unsealed.

## I. The Court Should Permit Access to Court Documents Which Are Not Genuinely Competitively Sensitive.

Intervenors do not question IBM's assertion that blanket protective orders are commonplace in civil litigation. That, indeed, is part of the problem. When parties are permitted to unilaterally designate their documents produced and later filed with the Court as "confidential," large portions of the "public" record are automatically sealed from public view. Private litigants generally do not have any particular interest in challenging designations made by an opposing party – their interest is a private one in litigating the case, as opposed to the public's interest in its judicial processes. Blanket protective orders such as the one involved here generally do not contemplate that a court, on its own motion, would challenge any such designation. Thus, as in this case, large portions of the documents filed with courts in civil matters are presented for decision to the court outside of public view.

This threatens the legitimacy of our civil jurisprudence. *See generally Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). Federal courts are not private arbitrators provided at public expense for the

convenience of parties. They are funded and empowered by the public and their decisions are public decisions.

Significantly, IBM cites no case that has held that the public has no right of access to civil proceedings. In fact, at least five circuits recognize a right of access to civil proceedings, and none reject the right. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984); *Rushford, v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984), *cert denied sub nom, Cable News Network, Inc. v. United States District Court for the Southern District of New York*, 472 U.S. 1017, 105 S.Ct., 3478, 87 L.Ed.2d 614 (1985); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *In re Continental Ill. Sec. Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984). IBM likewise makes no argument that the reasoning by the United States Supreme Court that public access is a necessary element of courts' legitimacy when it comes to criminal proceedings do not apply just as strongly to civil decisions. *See Richmond Newspapers Inc v. Virginia*, 448 U.S. 554, 564-569 (1980). It is particularly true in a case such as this, which will have widespread public implications. A protective order permitting IBM or SCO to simply unilaterally declare documents submitted to the Court to be sealed does nothing to protect the public's right to know about the process this Court is undertaking.

Intervenors do not suggest that their rights to access are without limits. Intervenors have no desire to require either party to release genuinely competitively damaging information of no public significance. Proprietary source code, for example, would plainly be appropriately sealed. But it is premature to conclude that any single class of documents, such as documents attached to discovery

motions or SCO's *Motion for Leave to File a Third Amended Complaint* are necessarily outside the purview of the public, without balancing whatever privacy interests, if any, may justify sealing against the public's interest in access.

## II. The Court Should Apply The Experience and Logic Test Set Forth By the Tenth Circuit.

IBM acknowledges that the Tenth Circuit in *United States v. McVeigh*, 119 F.3d 806 (10th Cir.1997), *cert. denied sub non, Dallas Morning News v. United States*, 522 U.S. 1142, 118 S.Ct. 1110, 140 L.Ed. 2d 163 (1998) and *United States v. Gonzales*, 150 F.3d 1246(10th Cir. 1997), *cert. denied sub nom, Albuquerque Journal v. Gonzales*, 525 U.S. 1129, 119 S.Ct. 918, 142 L.Ed. 2d 915 (1999) applied the test for public access set forth by the Supreme Court in *Press-Enterprise Company v. Superior Court*, 478 U.S. 1 (1986) ("Press-Enterprise II"). The parties agree that this test requires that the Court consider (1) whether the document which has been historically open to inspection by the press and public; and, (2) whether public access plays a significant positive role in the function of the particular process in question.

The first test is easily satisfied in this case. Intervenors seek only to unseal those documents that have been or are filed with the Court. Papers on file with the Court are historically and normally available to the public; the Court's files are generally open for public inspection. *See Nixon v. Warner Communications,* 435 U.S. 589, 597, 98 S.Ct 1306, 55 L.Ed. 2d 570 (1978). While IBM argues that *sealed* documents are not historically open to the public, that is tautology: obviously, the motion here challenges the very seal that IBM argues places the documents out of public reach. The result of this

argument would mean no sealed document could ever meet the test.[2] Protective orders, while common, are still the exception to the ordinary rule of open files.

Second, public access, especially in this case, will play a significant positive role in advancing the litigation. As argued above, the actual and perceived legitimacy of the Court's decisions in this case depend upon public access to the information used to reach those decisions. In most cases, this Court goes to considerable trouble to make filings readily available, maintaining a public clerk's office and even adopting means of electronic access. These efforts are for good reason; the public cannot judge or otherwise rely upon the fairness of a decision that is made in secret, with secret information. This is particularly true in this case, where proponents of open source software vehemently oppose SCO's theory that Linux contains some aspects of its proprietary Unix system. Every aspect of this case available to this public is criticized and examined in detail, and secret submissions jeopardize public confidence in the process.

Moreover, IBM's argument that having to justify its designations of "confidential" is somehow burdensome ignores the fact that, under this Court's *Protective Order*, IBM must already have a good faith basis for each of its designations. Requiring it to articulate those bases for those documents on file is not burdensome, if the *Protective Order* has been properly invoked. While requiring the parties to establish those bases for sealing may somewhat tax their subjective individual interests, the judicial

---

[2] That is documents that were sealed from the beginning. In this case, the Transcript of the Court's October 19, 2004 hearing was not originally sealed and the hearing was held in open court. Docket, Entry No. 328. Thus, even under IBM's tautological test for whether such a record was historically available, Intervenors prevail with respect to this Transcript. As a matter of actual history, the hearing was open to the public.

680280v1        6

process benefits from the credibility it gains through openness. The civil process is advanced by a presumption that civil litigation should be conducted in public, absent a genuine interest justifying closure. That is enough for the second prong of the *Press-Enterprise* II test.

Finally, IBM argues that documents attached to discovery motions or SCO's *Motion For Leave to File a Third Amended Complaint* should be excluded, without review, from any unsealing based upon their presumed secondary role in the process. IBM's position in this regard oversimplifies the reality of civil litigation. The Court's decisions on discovery motions can have far-ranging impacts on the merits of the case. Such pleadings can go to the very heart of the judicial function in civil litigation:

> Discovery procedures have become a continuing focus of controversy and reform within the judicial and the legal community. This debate has arisen precisely because discovery is so important in trial practice. If we take as our standard 'that the public's right of access attaches to decisions of major importance of the administration of justice,' then discovery motions and hearings fall with the ambit of this right.

*Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. App. 1988). Even more significantly, a motion for leave to amend is an important event of public interest, altering the very claims made in the case and, in effect, redefining the case. The Court cannot assume that such papers never contain anything of sufficient public interest to even consider whether a seal is appropriate at all.

The appropriate analysis is the one set forth in *United States v. Amodeo*, 71 F.3d 1044, 1049-1050 (2nd Circuit 1995).[3] Under *Amodeo*, the weight of the presumption of access is variable, depending upon the importance of the particular document to the judicial process. When the document is directly

---

[3] IBM implicitly suggests the same standard when it acknowledges a "spectrum establishing the strength of the presumption of access to documents filed with the court." *See* IBM Memo. at p. 9.

relevant to the core judicial function, the presumption of access is strong, the First Amendment is implicated, and the documents can remain sealed only if sealing is "essential to preserve higher values and is necessary to serve that interest." *McVeigh*, 119 F.3d at 813. When the document is less relevant to the judicial function, the presumption may be weaker, but the Court must still balance the common law right of access against the competing interests of the parties, and the proponent of sealing still bears the burden of establishing the need for the seal. *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) (balancing required); *Huntsman-Christensen Corp. v. Entrada Indus., Inc.*, 639 F.Supp. 733, 737 (D.Utah 1985) (balancing, burden on party resisting access to overcome presumption of access). By asking the Court to retain the seal, without review, on all documents attached to discovery motions, IBM effectively says that no right of access can <u>ever</u> attach to such motions, regardless of their content or impact on the case. This is not and should not be the law. Whether to retain the seal on such documents is a decision that is best made by the Court after weighing, in a fully informed manner, the interest of the public in access against the interest of the parties in secrecy.

Accordingly, the Court should order that the *Protective Order* be modified to permit counsel for Intervenors to review sealed documents under the "Attorneys' Eyes Only" provisions of that Order. The Court should further order that the parties explain their good faith basis for sealing those documents filed with the Court under seal, a basis that, under the *Protective Order*, they are already required to have.

Finally, the Court should set a timetable for briefing on any documents the parties and Intervenors cannot agree should be appropriately sealed or unsealed.

Respectfully submitted this 31st day of January, 2005.

                JONES WALDO HOLBROOK & McDONOUGH PC

By: _____

      Michael P. O'Brien
      Andrew H. Stone
      Attorneys for G2 Computer Intelligence, Inc., CNET
      Networks, Inc., and Forbes Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of January, 2005, I caused a true and correct copy of the foregoing to be sent as indicated below to the following:

Brent O Hatch **(via facsimile & hand delivery)**
Mark F. James
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT 84101

David Boies **(via facsimile & 1st class mail)**
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Stephen N. Zack **(via facsimile & 1st class mail)**
Mark J. Heise
Boies, Schiller & Flexner LLP
100 Southeast Second Street, Suite 2800
Miami, FL 33131

Todd Shaughnessy **(via facsimile & hand delivery)**
Snell & Wilmer LLP
15 West South Temple, Suite 1200
Salt Lake City, UT 84101

Advid Marriott **(via facsimile & 1st class mail)**
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg **(via facsimile & 1st class mail)**
1133 Westchester Avenue
White Plains, NY 10604