RECEIVED CLERK
**FILED**
2005 FEB 11  P 8: 07

U.S. DISTRICT COURT
DISTRICT OF UTAH

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Peter H. Donaldson (9462 )
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
 *International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>      Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>      Defendant/Counterclaim-Plaintiff. | **IBM'S MOTION FOR RECONSIDERATION OF THE JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

403

Pursuant to the Court's Order dated February 1, 2005, defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits the following request for reconsideration of the Court's Order Regarding SCO's Renewed Motion to Compel, dated January 18, 2005 (the "Order") (attached as Exhibit A hereto). [1] IBM also respectfully requests oral argument on this motion pursuant to DUCivR 7-1(f).

### Preliminary Statement

The Order requires, among other things, that IBM produce (1) CMVC and RCS data relating to IBM's AIX and Dynix operating systems (Order at 10); and (2) documents from the 3,000 "individuals who made the most contributions and changes to the development of AIX and Dynix" (collectively here, the "Ordered Production") (Id. at 16).

IBM does not seek reconsideration of the portion of the Order requiring IBM to produce AIX and Dynix material from CMVC and RCS. [2] IBM does not seek reconsideration of the portion of the Order requiring it to identify the individuals who made the most contributions and changes to AIX and Dynix and to identify the changes they made to AIX and Dynix, insofar as this information is available in CMVC and RCS. And IBM does not seek reconsideration of the Order insofar as it requires IBM to undertake a reasonable search (i.e. the files of 40-50 individuals) for white papers and design documents not found in CMVC or RCS. By this

---

[1]  In making this motion, we are mindful of Judge Kimball's Order dated February 8, 2005. Although Judge Kimball indicated that he agrees, in essence, with the Order, we do not understand his February 8 order specifically to address or to foreclose the relief requested in this motion.

[2]  IBM understands this portion of the Order, relating to the production of all material relating to AIX and Dynix found in CMVC or RCS, to require the production of material concerning the AIX and Dynix operating systems themselves, not other material in CMVC that only indirectly relates to AIX, such as hardware system designs, firmware, manufacturing-related components, and middleware and other software designed to run on top of the AIX or Dynix operating systems.

application, IBM asks the Court to reconsider the portion of its Order requiring IBM to search for and produce documents from the files of 3,000 individual developers.

Pursuant to the Order, IBM will be producing all of the information in its CMVC and RCS databases relating to IBM's AIX and Dynix operating systems, including source code, the change history of that source code, and programmer's notes and design documents.[3] IBM will also be identifying the individuals who made the most contributions and changes to the development of AIX and Dynix, and the changes they made to AIX and Dynix, insofar as this information is available in CMVC and RCS. IBM will also be undertaking a reasonable search for white papers and design documents not found in CMVC or RCS. Requiring IBM, on top of that, to search for and produce documents from the files of 3,000 developers would impose an extraordinary burden on IBM without any meaningful, offsetting benefit to SCO. Thus, we respectfully request that the Court reconsider this portion of the Order.[4]

---

[3] IBM is making every effort to meet the March 18 deadline for complying with the portions of the Order as to which IBM is not seeking reconsideration. While we are hopeful that IBM will be able to meet the deadline for the data in CMVC and RCS, it is very likely that IBM will need to seek additional time to search for and produce white papers and design documents not in CMVC or RCS. IBM has never before had to do what it has been ordered to do, and preparing the material for production is very complicated and time-consuming.

[4] We endeavored without success to resolve this matter informally with SCO before bringing this motion. SCO apparently believes that IBM should be required to search for the files of 3,000 AIX and Dynix developers, notwithstanding the size and redundancy of the task. Moreover, having been given an inch, SCO seeks to take a mile. SCO has suggested that the Order not only requires IBM to search for and produce documents relating to AIX and Dynix but also requires IBM to detail its Linux contributions. Not only is that not what the Order provides, but also in an order dated March 3, 2004, the Court expressly ruled that IBM is not required to produce its Linux contributions to SCO insofar as they are publicly available. Nothing about the Order indicates that the Court intended to overrule the March 3, 2004 Order.

## Argument

As we understand the Order, the purpose of requiring IBM to search for and produce information from the files of 3,000 developers is to provide SCO with "programmer's notes, design documents, white papers, the comments and notes made by those who did the changes, the names and contact information of individuals who made changes and what changes they specifically made". (Order at 15-16.) However, a search and production of this magnitude is not, we respectfully submit, the best way to achieve this purpose and should not be required.

As stated, IBM will provide SCO with an extraordinary quantity of information regarding the development of AIX and Dynix in producing information from CMVC and RCS.[5] CMVC and RCS include, among other things, changes made to AIX and Dynix, comments about the changes, and information about who made what change and when. CMVC and RCS also include extensive programmer's notes and design documents relating to AIX and Dynix. IBM intends also to produce any white papers and design documents found outside of CMVC and RCS after a reasonable search. Thus, IBM's planned production will provide SCO large quantities of the type of information the Court has ordered IBM to search for in the files of 3,000 developers.[6]

IBM's planned production will not include every scrap of paper that might be found in the files of the 3,000 developers who made the most contributions and changes to the development of AIX and Dynix. However, rather than require IBM to search for and produce

---

[5] CMVC and RCS identify, by login ID, developers who made changes to the source code; IBM will separately search for and produce, to the extent it can, the names and contact information of the persons whose login IDs appear in the produced CMVC or RCS data.

[6] CMVC has been used in AIX development since 1991. IBM does not maintain revision control information for AIX source code prior to 1991. IBM continues to search for, but has to date been unable to find, any revision control information for AIX source code prior to 1991. In addition, some early versions of Dynix are available only from archived media, and therefore do not include source control information.

documents from 3,000 developers in an effort to capture what might not be included in CMVC and RCS and a reasonable search for design documents and white papers not in CMVC, the Court should defer the production of additional information relating to the development of AIX and Dynix until after SCO has had an opportunity to review the extensive data that IBM will be providing. After reviewing that data, SCO should be able to identify with specificity a reasonable number of developers, if any, from whose files it would like additional production and IBM can then provide the information SCO wants without having to search for, collect and produce redundant and cumulative discovery or discovery in which SCO has no interest. Approaching developer-specific discovery in this way is entirely consistent with the Court's decision early in the case to stage the discovery process.

Moreover, as a practical matter, searching for, reviewing (for responsiveness, third-party confidential information, and privilege) and producing documents from the files of 3,000 people would be a Herculean task. It would be impossible to complete in 6 months, let alone in 60 days, as presently required by the Order.[7] Assuming (unrealistically) IBM were able to search for and through the files of 20 people a day, 5 days a week, it would require IBM more than 6 months just to search for responsive documents, independent of how long it would take IBM to review the documents for responsiveness, third-party confidential information (and to provide notice to third parties where required), and privilege and prepare them for production. A search for

---

[7] The magnitude of the task of collecting and producing documents from 3,000 persons becomes clear when contrasted with the document production that has taken place thus far from both IBM and SCO, over the past year and a half of discovery. To date, IBM has produced documents from the files of 174 individuals, while SCO has produced documents from the files of 63 individuals. That is, in a year and a half, SCO and IBM combined have produced responsive documents from the files of 237 persons, less than 10 percent of the 3,000 persons whose documents IBM has been ordered to produce within 60 days.

documents from the files of 3,000 developers would yield millions of pages of paper, much of it duplicative or irrelevant.

It is well settled that discovery should not be allowed, even if relevant, where it is unreasonably cumulative or duplicative or where its production would impose an undue burden. See Fed. R. Civ. P. 26(b)(2)(i) (stating that discovery shall be limited by the Court if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"); Fed. R. Civ. P. 26(b)(2)(iii) (stating that discovery shall be limited by the Court if it determines the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues").[8]

In sum, to require IBM to produce documents from 3,000 developers in 60 days, on top of the discovery IBM is already providing, is to compel the impossible, at enormous expense, with no meaningful advantage to SCO.   There are far better ways for SCO to obtain the information it seeks, such as by permitting targeted discovery of individual developers to the extent it makes sense after SCO has had an opportunity to review the information IBM is going to provide.

---

[8] See United States ex rel. Regan v. Medtronic, Inc., No. 95-1236, 2000 U.S. Dist. LEXIS 22565, at *11 (D. Kan. July 7, 2000) (denying discovery where the "burden . . . outweighs the possible relevancy of such evidence . . . [in that it requires] Medtronic to contact 5,300 employees and review millions of documents at 70 storage locations over a 20 year period.") (attached as Exhibit B hereto); Fed. Ins. Co. v. Southwestern Wire Cloth, Inc., No. 95-C-689, 1996 U.S. Dist. LEXIS 22001, at *40 (N.D. Okla. Dec. 9, 1996) (limiting the scope of document requests even where the "requested information [was] relevant . . . [g]iven the potentially thousands of documents implicated") (attached as Exhibit C hereto).

**Conclusion**

For the foregoing reasons, IBM respectfully requests that the Court reconsider and vacate the portion of the Order requiring the production of documents from 3,000 developers in 60 days, without prejudice to SCO seeking reasonably tailored discovery from the files of individual developers after SCO has reviewed the information IBM is going to produce.

DATED this 11th day of February, 2005

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Peter H. Donaldson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-*
*Plaintiff International Business Machines*
*Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

7

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2005, a true and correct copy of **IBM'S MOTION FOR RECONSIDERATION OF THE JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL** was served by U.S. Mail, postage prepaid, on the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Robert Silver
> Edward Normand
> Sean Eskovitz
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, NY 10504

336995.1

8

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.