RECEIVED CLERK

FILED

2005 FEB 28 P 5:21

U.S. DISTRICT COURT
DISTRICT OF UTAH

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S OPPOSITION TO IBM'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

410

Plaintiff The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in Opposition to IBM's Motion for Reconsideration of this Court's January 18, 2005 Order Regarding SCO's Renewed Motion to Compel.

## PRELIMINARY STATEMENT

This Court entered its January 18 discovery Order after receiving extensive briefing and hearing lengthy oral argument. The Court's 18-page opinion fully explains and justifies the scope of the discovery that IBM now asks the Court to reconsider. Moreover, the District Court has recently concluded – after "review[ing] all of the briefing filed in connection with the hearing held before the Magistrate Judge on October 19, 2004" and "the transcript of that hearing" – that the Court "agrees with the conclusions reached by the Magistrate Judge in her Order Pertaining to SCO's Renewed Motion to Compel, dated January 18, 2005." (2/8/05 Mem. Dec. and Ord. at 11 n.6).

IBM's reconsideration motion adds nothing new to these issues and should be denied. Indeed, IBM's motion fails even to meet the threshold standard for a proper motion for reconsideration because it merely rehashes the same relevance and burden arguments that it already made and the Court expressly rejected in entering its January 18 Order. IBM primarily contends, without any affidavit or evidentiary support whatsoever, that its purported burden in complying with the Court's Order – which, among other things, directs IBM to respond meaningfully to SCO's Interrogatory No. 5 by producing information from the 3,000 programmers who made the most significant code contributions and changes at the heart of this case – offsets any "meaningful" benefit to SCO. (IBM Br. at 3). In its Order, however, the Court explicitly, and correctly, rejected IBM's argument, ordering IBM (for a second time) to provide a meaningful response to SCO's Interrogatory No. 5 because that response would provide relevant discovery even if "some

supplementation to Interrogatory 5 will likely occur from the court's ordering of IBM to produce additional source code." (1/18/05 Ord. at 15).

Moreover, while trying to create the impression of reasonableness and compliance with the Court's order, IBM seeks to lay a foundation for other significant and unjustifiable limitations on the scope of that Order. IBM's self-imposed limitations on its discovery obligations – including those imposed by this Court in its last discovery Order of March 3, 2004 – already forced SCO to file the Renewed Motion to Compel that is the subject of this Court's January Order. IBM should not be permitted to avoid – or delay – compliance with its discovery obligations any longer.

## ARGUMENT

### I. IBM CANNOT ESTABLISH ANY PROPER BASIS FOR RECONSIDERATION OF THIS COURT'S JANUARY 18 DISCOVERY ORDER

The Federal Rules of Civil Procedure make no provision for the type of reconsideration motion that IBM seeks to present to this Court. Even if such a motion were available to IBM as a procedural matter, however, the only potentially permissible grounds for such a motion are (1) an intervening change in controlling law, (2) the discovery of new evidence, or (3) the need to correct clear error or prevent manifest injustice. Scherer v. Hill, Civ. A. No. 02-2043-KHV, 2003 WL 21011361, at *1 (D. Kan. May 1, 2003) (Exh. A). "It is well settled that a motion to reconsider is not a second chance for the losing party to ask the Court to revisit issues already addressed or to consider new arguments and supporting facts that could have been presented originally." Sonnino v. Univ. of Kan. Hosp. Auth., 221 F.R.D. 661, 664 (D. Kan. 2004) (emphasis added); see also Basic Research LLC v. Cytodyne Techs., Inc., No. 2:99CV343K, 2001 WL 740541, at *1 (D. Utah Apr. 6, 2001) (Kimball, J.) (citing Servants of Paraclete, 204 F.3d 1005, 1012 (10th Cir. 2000) (Exh. B); Scherer, 2003 WL 21011361, at *1 (reconsideration motions are not intended to provide "a second

2

opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed"). Accordingly, IBM's motion fails out of the gate.

IBM's purported burden played a prominent role in IBM's longstanding opposition to the discovery requests that the Court addressed in its January 18 Order. IBM strenuously argued its burden in no fewer than three briefs to this Court and during the lengthy oral argument that the Court heard on October 19, 2004.

Moreover, the Court's January 18 Order makes clear that it fully considered IBM's burden claims. In ordering IBM to produce responses for fewer than half of the 7,200 individuals that IBM had listed, in response to SCO's long-standing interrogatories, as possible contributors to AIX, Dynix, and Linux, the Court expressly reasoned: "A representative sample of 3,000 should provide SCO with enough information to proceed with its case <u>without placing an undue burden on IBM</u>." (1/18/05 Ord. at 16 (emphasis added)). The Court further explained that it was ordering IBM to provide SCO with the contribution information for 3,000 individuals because "<u>in weighing the burden imposed on IBM with the relevancy of evidence that is not obtainable from other sources, the court finds it appropriate to order the production of this information.</u>" (<u>Id.</u> at 15-16 (emphasis added)). The authorities the Court cited (at pages, 4, 6, and 9 of its Order) further evidence its express consideration of IBM's burden claims. See <u>Gohler, IRA v. Wood</u>, 162 F.R.D. 691, 695 (D. Utah 1995); <u>Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co.</u>, 1999 WL 562738, at *2-3 (E.D. La. Aug. 2, 1999) (Exh. C); and Fed. R. Civ. P. 26(b)(2)(i)-(ii).[1]

---

[1] IBM's motion also would lack any basis even if, contrary to fact, IBM had not previously presented its burden argument to this Court. In a motion for reconsideration, the losing party may not "advance arguments that could have been raised in prior briefing." <u>Basic Research</u>, 2001 WL 740541, at *1 (citing <u>Paraclete</u>, 204 F.3d at 1012).

3

## II. THERE IS NO BASIS FOR MODIFYING THE COURT'S ORDER WITH RESPECT TO IBM'S PROGRAMMING CONTRIBUTION INFORMATION

IBM ignores that its own prior interrogatory response underlies its now Court-imposed obligation to produce programming contribution information for 3,000 individuals. IBM responded to SCO's Interrogatory No. 5 by cross-referencing a list of approximately 7,200 individuals who "may have" contributed to AIX, Dynix, or Linux. IBM's list, however, failed to provide any information about the particular contributions made by any of those thousands of individuals and, as such, was virtually useless as even a starting point for SCO to pursue further discovery.

After SCO filed its initial motion to compel a proper response to its interrogatory, on March 3, 2004, this Court ordered IBM to supplement its response to SCO's Interrogatory No. 5. After IBM failed to comply, SCO renewed its motion to compel, and the Court's January 18 Order further enumerated, with specificity, IBM's discovery obligation.

The programming contribution discovery that IBM continues to dispute is unquestionably relevant, as the Court's Order recognized. Moreover, in denying all three of IBM's pending motions for summary judgment (including motions that had not even been fully briefed), the District Court expressed its general agreement with this Court's January 18 Order. (2/8/05 Mem. Dec. and Ord. at 11 n.6). While IBM's reconsideration motion asserts that the individual contribution information is "redundant" of the CMVC and RCS information that the Court has ordered it to produce, this Court has already specifically considered and specifically rejected IBM's argument:

> After consideration of the parties' arguments, the court finds that some supplementation to Interrogatory 5 will likely occur from the court's ordering of IBM to produce additional source code. <u>However, the court finds that it is not only the changes to the code that are relevant but also the names and information concerning those individuals who made the changes</u>. This information is relevant in part because some of these individuals may have information concerning IBM's treatment of the contracts. Such witness testimony would assist the trier of fact in interpreting the contract.

4

(1/18/05 Ord. at 15 (emphasis added)).[2] Furthermore, a proper IBM response to SCO's Interrogatory No. 5 will identify – based on IBM's "better access to information" – the most important programmers and contributions at the heart of this case. (Id. at 16-17).

IBM's rehashed burden argument fares no better. IBM does not even attempt to support its claim of supposed burden with any supporting affidavit. On that basis alone (as SCO showed in the briefing before the Court's Order), IBM presents no cognizable "burden" argument at all. See Super Film of Am., Inc. v. UCB Films, Inc., 219 F.R.D. 649, 657 (D. Kan. 2004). IBM has provided no factual basis for SCO or the Court to probe IBM's assertion (at page 5) that it is "impossible" for IBM to provide the contribution information in six months. IBM's bare assertion of burden also precludes SCO and the Court from assessing whether IBM has considered the most rudimentary of steps to further the process, such as adding additional lawyers to assist in the collection and review, and allowing the developers employed by IBM to search their own files for the documents it must produce. IBM's "burden" claim also rings hollow in light of other undisputed facts – it has been more than 19 months since SCO first sought this developer contribution information from IBM in SCO's Interrogatory 5, more than 15 months since SCO first moved to compel this information from IBM, and almost a year since the Court first ordered IBM to supplement its answer to Interrogatory No. 5. (3/3/04 Ord. ¶ 5).

## III. THE COURT SHOULD ALSO REJECT THE LIMITATIONS THAT IBM AGAIN TRIES TO IMPOSE ON THE DISCOVERY IT MUST PRODUCE

In addition to rehashing arguments that it has already lost after protracted litigation, IBM attempts to use its improper reconsideration motion to cast its own indefensible limitations on the obligations that this Court clearly imposed in its January 18 Order. To avoid further unnecessary

---

[2] Moreover, IBM claims that material covering large and directly relevant periods of development history will not be available through CMVC or RCS because of limitations in the time periods over which those databases have been maintained. (IBM Br. at 4 n.6).

5

litigation and discovery delays, SCO respectfully requests that the Court make clear that IBM's self-serving, limiting "interpretations" are wrong.

### A. No Basis Exists for IBM's Proposed Limitation on the Court's Order to Require AIX and Dynix Material Only from CMVC and RCS

IBM first inaccurately suggests that the Court has required it to produce only "AIX and Dynix material from CMVC and RCS." (IBM Br. at 2). The Court's January 18 Order necessarily precludes this reading. In its Order, the Court ordered IBM "to provide in a readily accessible format <u>all versions and changes</u> to AIX and Dynix." (1/18/05 Ord. at 9-10 (emphasis in original)). Although the Court acknowledged that its Order would require IBM to produce AIX and Dynix data from the CMVC and RCS databases, the Order is not so restricted. To the extent that IBM possesses source code or revision information that is not contained in its electronic databases, that information is squarely covered by the Court's Order. There is no basis for IBM's attempt to delineate between responsive information in its databases and responsive information that is not contained in its databases, particularly as IBM contends that its CMVC system goes back only to 1991 (six years after IBM first licensed the UNIX software) and that "some early versions of Dynix are available only from archived media" (IBM Br. at 4 n.6).[3] Moreover, as previously noted, the Court has already correctly acknowledged that the discovery obligation that it has enforced in connection with

---

[3] IBM's suggestion that it "continues to search for, but has to date been unable to find, any revision control information for AIX source code prior to 1991" is reminiscent of IBM's earlier claims in this case that it could not find an earlier version of its AIX for Power product (Version 5.0), into which IBM first improperly dumped SCO code that it had obtained through Project Monterey. After the issue of the "missing" code arose during the October 2004 discovery hearing, and the Court inquired whether IBM would produce an affidavit to support its claim that the code had been lost, IBM "found" the AIX 5.0 code (in both CMVC and in hard copy) within a couple of days. IBM's claim that the AIX revision information is "missing" also raises questions concerning how IBM can claim that its AIX code is "homegrown" if it cannot even find the early programming history evidence relating to that code.

6

SCO's Interrogatory No. 5 necessarily goes beyond the contribution information contained in the CMVC and RCS databases. See Part II, above.

### B. No Basis Exists for IBM to Limit its Search for Court-Ordered Programmer Documentation

IBM acknowledges its obligation to produce programmer's notes, design documents, and white papers, but proposes to limit its compliance efforts to what it incorrectly describes as a "reasonable search" of "the files of 40-50 individuals." (IBM Br. at 2, 4). Again, there is no basis for IBM's attempt to impose such restrictions on the Court's Order, and IBM does not even attempt to supply one. SCO has previously demonstrated how these programming-history documents are relevant, the Court has ordered IBM to produce them, and IBM should do so without further resistance. Given IBM's prior representations that more than 7,000 individuals were involved in programming AIX, Dynix, and Linux – and the Court's express direction that IBM produce programmer notes, design documents, white papers, and comments and notes for 3,000 individuals – IBM's suggestion that a reasonable search will implicate the files of only "40-50 individuals" is arbitrary and untenable.

### C. No Basis Exists for IBM to Refuse to Identify Its Linux Contributions

IBM inaccurately contends that in ordering it to respond to SCO's Interrogatory No. 5, the Court has not ordered IBM to provide information concerning its contributions to Linux. (IBM Br. at 3 n.4). More than a year ago, after identifying 7,200 individuals who "may have" made contributions to Linux (or AIX, or Dynix), IBM refused to identify who did make contributions and what they contributed. Accordingly, SCO moved to compel a complete and proper response to Interrogatory No. 5. This Court agreed with SCO in its March 2004 Order and ordered IBM to "provide further responses" to Interrogatory No. 5, including the "non-public information" relating to IBM's Linux contributions. (3/3/04 Ord. at 4 ¶ 2 & 5 ¶ 5).

7

Notwithstanding that specific language in the March 2004 Order, IBM merely reproduced the same list of names, with the lone addition of contact information for some of the witnesses. Instead of providing the witnesses' specific AIX, Dynix, and Linux contributions, IBM unilaterally deemed the information unnecessary, and claimed that SCO could ascertain IBM's contributions to Linux from publicly available information. In SCO's Renewed Motion to Compel that was argued to the Court in October 2004, SCO demonstrated that IBM had thus failed to comply with the Court's March 2004 Order and that IBM's claim that Linux contribution information was "publicly available" was patently incorrect (because, for example, supposedly "publicly available" contributions are often attributed to groups at IBM, to individuals using only "handles" or nicknames, or to nobody at all).

The Court's January 2005 Order makes clear that in order properly to respond to Interrogatory No. 5, IBM must include the specific development and contribution information for 3,000 of the programmers that IBM had previously listed only by name. The Order neither carves out Linux contribution information nor even intimates that all such information is publicly available. To the contrary, the Court's Order expressly recognizes that Interrogatory No. 5 requested discovery concerning specific programming contributions "for AIX, Dynix and Linux" (1/18/05 Ord. at 14 (quoting SCO Interrog. No. 5) (emphasis added)). Nevertheless, even faced with this clarification, IBM persists in attempting to withhold its non-public Linux contribution information, this time by arguing that the Court's Order requires IBM to respond to Interrogatory No. 5 only by providing contribution information for AIX and Dynix.

IBM's claim that this Court could have ordered IBM to produce the Linux contribution information only by "overruling" the March 2004 Order is baseless. IBM has never maintained, nor could it credibly have suggested, that the specific Linux contribution information SCO has long

8

sought is irrelevant. Indeed, that information goes to the very core of SCO's claims.[4] In sum, there is no basis for IBM's inference that in explaining the relevance of AIX and Dynix information, the Court intended to exclude Linux contribution information from IBM's obligation finally to respond properly to SCO's Interrogatory No. 5.

### D. No Basis Exists for IBM to Withhold Relevant AIX-Related Materials

Finally, in a footnote, IBM attempts to carve out of its Court-ordered discovery obligations any AIX code in CMVC and RCS that, in IBM's view, "only indirectly relates to AIX." (IBM Br. at 2 n.2). IBM would exclude five general (and potentially very broad) categories of AIX source code and revision information: hardware system designs, firmware, manufacturing-related components, middleware, and other software designed to run on top of the AIX or Dynix operating systems. IBM's attempted self-imposed restriction on the Order, however, threatens to exclude responsive, and potentially important, information. For example, such information could help show how IBM used its knowledge of UNIX to make Linux easier to use by entities who were using applications and middleware designed for UNIX – issues that are directly relevant to both liability and damages.

In the computer field, hardware and software designs are closely interwoven.[5] Implementation of multiprocessor designs and 64-bit architecture required software engineers to rewrite operating system software to account for shared memories, local caches, registers, and other hardware improvements. Thus, hardware design changes provide evidence that is directly relevant to explain operating system software design changes and, to the extent that information concerning

---

[4] For example, in many instances there may well have been a development process – including one conducted by IBM or Sequent programmers immersed in SCO's proprietary UNIX – between the selection of AIX or Dynix material for Linux and the actual contributions to Linux. SCO requires access to that development history (including both code and related documentation) for exactly the same reason this Court has held that SCO needed access to the material evidencing the developers and development process of Dynix and AIX themselves.

[5] To illustrate, improved word processing applications demanded improvements in available memory, but improvements in memory design made possible much more advanced word processing application programs.

9

hardware design changes relate to AIX, that information should be produced pursuant to the Court's Order.

Firmware is usually software that is embedded in hardware. As with hardware changes, firmware changes can dictate changes in operating system software. For example, personal computers ("PCs") all use a basic input/output system ("BIOS"), which is firmware used to start up and operate the PC. The PC's operating system software must be designed to interact with the BIOS, and changes to the BIOS may require changes to the operating system. Accordingly, firmware information may provide information related to AIX that would be relevant to supporting SCO's claims and defending against IBM's counterclaims.

Middleware generally is software that sits between "layers" of software to make the layers compatible. Middleware could thus include software designed to make, for example, the AIX kernel interoperate with the shared libraries or software applications. Middleware could also include source code designed to support various administrative functions, and such middleware must take into account the AIX designs. Accordingly, IBM must produce any AIX-related middleware as well.[6]

## CONCLUSION

For all of the above reasons, the Court should deny IBM's motion for reconsideration.

---

[6] Finally, "manufacturing-related components" and "other software designed to run on top of the AIX or Dynix operating systems" are vague and potentially very broad categories that could include much software-related information directly relevant to SCO's claims and counterclaims. IBM should not be permitted to exclude such material from its compliance with the Court's Order.

10

DATED this 28th day of February, 2005.

        Respectfully submitted,

        HATCH, JAMES & DODGE, P.C.
        Brent O. Hatch
        Mark F. James

        BOIES, SCHILLER & FLEXNER LLP
        Robert Silver
        Stuart H. Singer
        Stephen N. Zack
        Edward Normand
        Sean Eskovitz

        By [signature]

        *Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of **SCO'S OPPOSITION TO IBM'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL** was served on Defendant International Business Machines Corporation by first class mail on the 28th day of February, 2005, as follows:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, Utah 84101-1004

Evan R. Chesler, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

*/s/ Laura K. Chaves*

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.