


SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **REPLY MEMORANDUM IN SUPPORT OF IBM'S MOTION FOR RECONSIDERATION OF THE JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits the reply memorandum in further support of its motion for reconsideration of the Court's January 18, 2005 Order Regarding SCO's Renewed Motion to Compel (the "Order").

Preliminary Statement

IBM's motion for reconsideration seeks one and only one change to the Order: a modification of the requirement that IBM collect and produce documents from the files of 3,000 individuals. SCO fails in its opposition brief to offer any reason why SCO requires, or IBM should be required to produce, documents from the files of 3,000 individuals on top of the information IBM is producing. There is none.

SCO offers three arguments in opposition to IBM's request that the Court reconsider requiring IBM to produce documents from 3,000 individuals. First, SCO claims that IBM cannot, as a procedural matter, properly seek reconsideration of the Order. Second, SCO claims that this Court has already considered and rejected IBM's arguments concerning the production of documents from 3,000 individuals. Third, SCO claims that IBM fails to provide the Court with sufficient information as to why the search for and production of documents from 3,000 individuals is unduly burdensome. None of these arguments bears scrutiny. (See Section I.)

In addition to responding to IBM's motion for reconsideration, SCO seeks through its opposition brief to expand IBM's production obligations beyond those imposed by the Order. In fact, SCO takes a run at securing an order that would require the production of information SCO has never before requested and that the Court has ruled IBM need not produce. SCO's efforts should be rejected. (See Section II.)

Argument

## I. NONE OF THE ARGUMENTS RAISED IN OPPOSITION TO IBM'S MOTION FOR RECONSIDERATION BEARS SCRUTINY.

As is explained in IBM's opening brief, IBM does not seek reconsideration of the portion of the Order requiring IBM to produce AIX and Dynix material from CMVC and RCS. IBM does not seek reconsideration of the portion of the Order requiring it to identify the individuals who made the most contributions and changes to AIX and Dynix and to identify the changes they made to AIX and Dynix, insofar as this information is available in CMVC and RCS. And IBM does not seek reconsideration of the Order insofar as it requires IBM to undertake a reasonable search for white papers and design documents not found in CMVC or RCS. IBM asks only that the Court reconsider the portion of the Order that appears to require IBM to search for and produce documents from the files of 3,000 individual developers.[1]

None of the arguments offered by SCO justifies requiring IBM to search for and produce documents from the files of 3,000 individuals. First, there is no reason, contrary to SCO's contention (Opp'n at 2-3), that the Court cannot reconsider the Order's requirement that IBM produce documents from the files of 3,000 individuals. As SCO acknowledges, a motion for reconsideration may properly be made to correct clear error or to prevent manifest injustice. (Opp'n at 2.) Moreover, Judge Kimball's Order of February 1, 2005, expressly provides that IBM may seek reconsideration of the Order. Respectfully, we believe that requiring IBM to

---

[1] IBM recognizes that it may have misunderstood the Order and that the Court may not have intended to require a search of the files of 3,000 individual developers. If that is correct, then this motion may be moot. If the purpose of the Order's reference to 3,000 developers was to require the production of information relating to, but not necessarily from the individual files of, approximately half of the persons who contributed to the development of AIX and Dynix, then the production IBM intends to make should satisfy this requirement. IBM intends to produce information relating to thousands of AIX and Dynix developers (without searching their individual files) by providing discovery from certain central repositories (like CMVC).

3

search for and produce documents from the files of 3,000 individuals — assuming this is what the Court intended — is clear error and imposes manifest injustice.

Second, SCO claims that IBM "strenuously argued its burden in no fewer than three briefs to this Court and during the lengthy oral argument that the Court heard on October 19, 2004" and that the Court "fully considered IBM's burden claims". (Opp'n at 3.) That is incorrect. In opposing SCO's motions to compel, IBM argued that requiring it to comply with SCO's requests for AIX and Dynix information would impose an undue burden on IBM. The argument related primarily to the production of CMVC. We do not believe the parties fully briefed nor that the Court fully understood the burden associated with searching for and producing documents from the files from 3,000 individuals. SCO has not cited, and we are not aware of, any authority for the proposition that a reasonable search for responsive documents would require the collection and production of documents from the files of 3,000 individuals.

Third, SCO's claim that IBM has not properly supported its burden argument, such as by submitting an affidavit, is similarly unavailing. (Opp'n at 5.) The burden associated with having to collect, review, and produce documents from the files of 3,000 individuals is, we submit, obvious. See Lawrence v. First Kan. Bank & Trust Co., 169 F.R.D. 657, 659 (D. Kan. 1996) ("[T]he Court finds the request overly broad and unduly burdensome on its face. It will not require additional facts and supporting affidavits to support what appears obvious.").[2] Moreover, IBM has in fact supported its assertions regarding the burden associated with the production of documents from the files of 3,000 persons. As explained in our opening brief, to comply with the portion of the Order at issue, IBM would have to (1) search the files of 3,000 individuals for

---

[2] No affidavit is required to establish that a search for a production of documents from the files of 3,000 individuals would impose a staggering burden. We are nevertheless prepared to submit an affidavit should the Court wish.

4

responsive documents (or determine that there are not 3,000 persons with responsive documents); (2) review any responsive documents located during the search to determine whether they include third-party confidential information or information protected by a privilege; and (3) prepare any non-privileged, responsive documents for production (such as by redacting privileged information and providing required notices to third parties). Assuming IBM could search for and through the files of 20 people a day (a very fast pace, given the fact that to date, IBM and SCO have combined produced documents from the files of fewer than 250 persons), it would require IBM more than 6 months just to search for responsive documents from the files of 3,000 people, independent of the time it would then take IBM's attorneys to review and prepare the documents for production.[3]

## II. NONE OF THE OTHER ISSUES RAISED BY SCO IN ITS OPPOSITION BRIEF HAS ANY MERIT.

Contrary to SCO's contention, IBM does not seek to "cast its own indefensible limitations on the obligations that this Court clearly imposed in its January 18 Order". (Opp'n at 5.) On the contrary, SCO uses its opposition brief not only to oppose IBM's motion for reconsideration, but also to complain about imagined shortcomings of IBM's forthcoming production and to secure an order requiring IBM to produce information that either SCO never requested or that the Court has ruled SCO is not entitled to and IBM need not produce.[4]

---

[3] See United States ex rel. Regan v. Medtronic, Inc., No. 95-1236, 2000 U.S. Dist. LEXIS 22565, at *11 (D. Kan. July 7, 2000) (denying discovery where the "burden . . . outweighs the possible relevancy of such evidence . . . [in that it requires] Medtronic to contact 5,300 employees and review millions of documents at 70 storage locations over a 20 year period."); Fed. Ins. Co. v. Southwestern Wire Cloth, Inc., No. 95-C-689, 1996 U.S. Dist. LEXIS 22001, at *40 (N.D. Okla. Dec. 9, 1996) (limiting the scope of document requests even where the "requested information [was] relevant . . . [g]iven the potentially thousands of documents implicated").

[4] SCO argues in this section of its opposition brief that IBM should be required to undertake something more than reasonable search for programmer's notes, design documents and white

5

First, SCO asserts that IBM is improperly limiting its search for AIX and Dynix material to its CMVC and RCS databases. (Opp'n at 6-7.) SCO is wrong. As an initial matter, the Court's Order concerning the production of AIX and Dynix code, including all versions and changes to that code, applied only to the AIX and Dynix code found in CMVC and RCS. The Order plainly states that "[i]n essence, the court is ordering production of the information contained <u>within the CMVC and RCS systems</u> without granting SCO complete access at this time" and that the production is to include "the approximately 'two billion lines of code' as represented by IBM <u>in addition to</u> any other code that is found <u>in the CMVC and RCS systems</u> relating to AIX and Dynix". (Order at 10 (first and third emphases added).)

In any case, IBM has not limited its search for AIX and Dynix source code to that found in CMVC and RCS. IBM has located some AIX code outside of CMVC and will produce it to SCO (although IBM believes that the code is most likely redundant of code in CMVC). IBM has been unable to locate revision control information for AIX source code prior to 1991, but IBM continues to search for such information. If IBM finds any pre-1991 AIX source code, IBM will produce it to SCO. In addition, as SCO acknowledges (Opp'n at 6), some early versions of Dynix are available only from archived media, not from the RCS system. Although it does not include source control information, IBM intends to produce this archived Dynix code to SCO. Contrary to SCO's suggestion, IBM never stated otherwise in its motion for reconsideration.

Second, SCO argues that the Order also requires IBM to identify its Linux contributions. (Opp'n at 7-9.) It would be difficult to overstate the frivolity of this contention, which is entirely

---

papers located outside of CMVC. (Opp'n at 7.) Without offering any explanation as to why a reasonable search would be insufficient, SCO contends simply that IBM should be required to search the files of 3,000 individual developers. For the reasons stated above, a search of the files of 3,000 developers should not be required. The reasonable search that IBM is undertaking will likely result in the production of hundreds of thousands of pages of paper.

6

unsupported by the record. In an Order dated March 3, 2004, the Court ruled, after extensive briefing and argument by the parties, that IBM would not be required to detail its Linux contributions insofar as those contributions were publicly available. (3/3/04 Order at 4.) The Court ordered only that IBM "provide to SCO any and all non-public contributions it has made to Linux". The Court recognized that Linux is a publicly developed operating system and that SCO is capable of ascertaining, through the public record, the contributions made by IBM to Linux. As described in the April 19, 2004 Declaration of Todd M. Shaughnessy, IBM fully complied with this portion of the March 3, 2004 order.

SCO seizes on the Court's quotation of SCO's Interrogatory No. 5, which interrogatory includes the term "Linux", to argue that the Court's order of January 18, 2005, reversed the March 3, 2004 order and, without explanation or analysis, replaced it with a new order requiring IBM to produce the public Linux contributions that the Court previously ruled (for good reason) that IBM would not be required to produce. There is nothing in the Court's Order of January 18 to support such a contention. Putting aside the fact that the Order was entered against the backdrop of the March 3 order — which expressly held that IBM need not produce public Linux contributions that are available to anyone with internet access — the Order is plainly related to the production of material relating to AIX and Dynix. In addressing SCO's request that IBM further supplement its answer to Interrogatory No. 5, the Order uses the term "Linux" just once, when it quotes verbatim the text of that interrogatory. The rest of the Order's three-page discussion (Order at 14-17) refers only to the AIX and Dynix portions of Interrogatory No. 5.[5]

---

[5] SCO misrepresents IBM's previous answers to SCO's Interrogatory No. 5. SCO's statement that IBM simply identified a list of 7,200 individuals who "may have" made contributions to Linux is incorrect. IBM provided a list of 328 individuals (with full contact information) whom IBM believed to have made contributions to Linux. This list of 328 Linux developers was separate from the lists of persons who had access to or worked on developing AIX or Dynix.

7

The Order expressly states that "IBM is to provide the above required information for the 3,000 individuals who made the most contributions and changes to the development of <u>AIX and Dynix</u>". (Order at 16 (emphasis added).)

<u>Third</u>, SCO contends that the Order requires IBM to produce from its CMVC and RCS systems source code and related material not only for AIX and Dynix, but also for a variety of unrelated IBM hardware and software products, including hardware system designs, firmware, manufacturing-related components, and middleware and other software designed to run on top of the AIX or Dynix operating systems. (Opp'n at 9-10.) This argument too is baseless. In response to SCO's Renewed Motion to Compel, IBM pointed out to the Court that CMVC is not synonymous with AIX and that RCS is not synonymous with Dynix. Rather, these centralized servers, which store AIX and Dynix code and related information, also store code and information for many unrelated products. The Court's Order made clear that IBM was not required to produce these unrelated materials. (Order at 9-10 ("Therefore, due to IBM's business interests the court DENIES SCO's request for complete access to the systems at this time.").)

Yet, this is exactly the information that SCO complains IBM is excluding from production. IBM is producing <u>all</u> AIX and Dynix code found in its CMVC and RCS systems, as well as all other code and revision control information for AIX and Dynix that IBM has been able to locate in its files. Contrary to SCO's contention (Opp'n at 9 (referring to the information IBM is excluding as "categories of AIX source code and revision information")), the source code and revision history IBM is excluding from production is <u>neither</u> AIX <u>nor</u> Dynix. Indeed, the information IBM is not producing from CMVC and RCS is not even related to AIX or Dynix.

The information IBM is excluding could be said to relate to AIX and Dynix only in the remote — and here irrelevant — sense that it concerns software and hardware that is compatible with AIX or Dynix. Firmware is code in computer hardware that executes below the interface

8

between the hardware device and the computer's software, including its operating system.[6] Software applications, including "middleware"[7], are computer programs that run on top of an operating system. Similarly, hardware systems designs and manufacturing-related components are also distinct from the AIX or Dynix operating systems themselves. None of this information is in any way relevant to SCO's allegations that IBM improperly disclosed portions of its AIX and Dynix operating systems. SCO's discovery requests do not even seek the production of the material it contends (for the first time in its opposition brief) that IBM should be producing. Requiring IBM to produce information like middleware on the grounds that it can run on AIX would be like requiring a football team to produce information about its stadium, training equipment, uniforms and mascot in a case in which the team was alleged to have misappropriated an opponent's playbook.

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court reconsider and modify the portion of the Order requiring the production of documents from 3,000 developers in 60 days.

---

[6] An example of firmware code is code that is embedded in Intel Corporation's microprocessors. Although Microsoft Corporation's Windows operating system can run on top of Intel microprocessors, firmware code for those microprocessors is not "Windows source code" or otherwise part of the Windows operating system. Nor is firmware in the Intel microprocessors a part of the source code for SCO's own Unixware operating system, which also runs on Intel microprocessors. Likewise, firmware code is not part of the AIX or Dynix operating systems.

[7] "Middleware" is a term that is sometimes used to refer to a software application that provides support functions for other software applications such as application-to-application exchange of data, data storage management and other services. Like other non-middleware software applications, middleware is entirely distinct from, and runs on top of, the operating system.

9

DATED this 14th day of March, 2005.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2005, a true and correct copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF IBM'S MOTION FOR RECONSIDERATION OF THE JANUARY 18, 2005 ORDER REGARDING SCO'S RENEWED MOTION TO COMPEL was served by first class mail on the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Robert Silver
> Edward Normand
> Sean Eskovitz
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, NY 10504

Amy F. Sorenson

341259.1