Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **MEMORANDUM IN SUPPORT OF SCO'S PROPOSED SCHEDULING ORDER (ORAL ARGUMENT REQUESTED)** <br><br> Case No. 2:03CV0294DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |



Pursuant to the Court's January 18, 2005 Order, Plaintiff The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in Support of SCO's Proposed Scheduling Order.[1]

## PRELIMINARY STATEMENT

On January 18, this Court granted a number of important discovery requests that SCO had been pursuing – and IBM resisting – for over a year. Given the substantial discovery that would be produced pursuant to its Order, the Court acknowledged that its "decision to grant SCO's motion in part necessitates some modification to the scheduling order." Order (1/18/05) at 17. Accordingly, the Court struck its Amended Scheduling Order, sua sponte, and directed the parties to meet and confer before submitting a proposed scheduling order by March 25. The parties have discussed their proposed schedules, but have not been able to reach an agreement on a number of important matters.[2]

Among the parties' disagreements are several elements of SCO's proposal – many of which are patterned after the prior Amended Scheduling Order. On each such element, SCO's proposal is better designed than IBM's to promote the fair and efficient progress of this case and to ensure that the relatively aggressive schedule and prompt trial date (which both parties have proposed for next summer) will hold. Specifically:

---

[1] SCO submitted its Proposed Scheduling Order on March 25, as required by the Court's Order, after failing to reach an agreement with IBM concerning a number of scheduling issues. Having now received IBM's proposed schedule, SCO respectfully submits this memorandum to explain SCO's position with respect to each of the outstanding differences between the parties' proposals.

[2] IBM mischaracterizes the parties' discussions leading up to the submission of their respective proposed schedules. No "tentative agreement" was reached. IBM Mem. at 2 n.1. To the contrary, during their extended discussions, counsel for both parties expressly noted that no part of their exchange could be construed as an agreement and, unless and until finally approved, no dates or other provisions of the parties' proposals could be viewed as part of any agreement.

- SCO's proposal is based on the assumption that IBM will comply by May 3 with the discovery obligations that the Court imposed on January 18, while IBM's proposal presumes that the Court will reverse itself and lift IBM's obligation to produce any of the discovery on which IBM has moved for reconsideration.

- SCO's proposal includes a new deadline for the parties to amend their pleadings in light of the substantial discovery that the Court recently ordered IBM to produce. IBM objects to any new amendment deadline even though (1) SCO's proposed schedule would permit the parties approximately five months (under either proposed schedule) after such deadline to complete fact discovery, an amount of time roughly equivalent to the time the Court originally provided for fact discovery when it imposed the prior amendment deadline; (2) both parties have filed motions that effectively seek to amend their current pleadings; and (3) imposing a new amendment deadline would obviate additional briefing and court hearings on such motions.

- SCO's proposal includes monthly status conferences, beginning in June 2005, for the Court to resolve discovery disputes that may arise. Such status conferences will assist the parties in resolving their differences efficiently and in keeping to the aggressive timeline that both parties have proposed for discovery in this case.

- SCO's proposal tracks the expert report exchange process from the last Amended Scheduling Order – in which the parties would exchange their expert reports, opposing reports, and counter-reports in sequence – whereas IBM's schedule would restructure the process, without any apparent reason, by setting different deadlines based on which party bears the burden of proof with respect to each of the anticipated issues in the case. IBM's proposal would unduly complicate expert discovery and could lead to disputes over which side bears the burden of proof on various issues in the case.

- SCO's proposal sets earlier deadlines for fact discovery, expert reports, expert discovery, and dispositive motions briefing, in order to provide the Court with greater time to consider any dispositive motions before trial next summer.

In addition, IBM's proposed schedule seeks to leverage IBM's long-standing failure to provide relevant discovery into an unfairly one-sided discovery framework for IBM's strategic advantage. Instead of the mutual discovery deadlines that routinely apply in federal civil litigation, that have applied in this case since its inception, and that SCO seeks to replicate in its schedule, IBM proposes to overhaul not only the discovery structure in this case, but also the framework provided by the Federal Rules. Under IBM's proposal, even though IBM will comply with only a portion of its Court-ordered discovery obligations by May 3, SCO would

2

have "interim" and "final" disclosure and discovery deadlines of June 10, 2005, and August 11, 2005, respectively, and then IBM would have a full three months <u>unilaterally</u> to complete discovery on its defenses to SCO's claims. IBM's unprecedented proposal is not sanctioned by the Federal Rules and certainly is not warranted by this Court's January Order or by anything else that has taken place in this case; SCO has provided complete responses to IBM's interrogatories and, as IBM itself acknowledges, is already required to supplement its responses as it discovers additional information (including based on IBM's production of long-withheld discovery). There is no sensible basis for the unreasonable and unfair bifurcated discovery schedule that IBM advocates.

For all of these reasons, and to promote the interests of efficiency and fairness in this case, the Court should adopt SCO's proposed scheduling order.

## ARGUMENT

### I. THE COURT SHOULD ADOPT SCO'S PROPOSED SCHEDULING ORDER BECAUSE IT WOULD BEST PROMOTE THE FAIR AND EFFICIENT PROGRESS OF THIS CASE

Each of the parties has asked this Court to set an aggressive discovery schedule and a prompt trial of this matter next summer. Although IBM's memorandum identifies only three points on which it disagrees with SCO's proposal, there are in fact five basic elements of SCO's proposal on which IBM's proposal differs. With respect to each such difference, SCO's proposal is better designed to promote the fair and efficient progress of this case.

<u>First</u>, SCO's proposed scheduling order is based on IBM's production by May 3 of the discovery that this Court ordered (indeed, reordered) in January. May 3 is the date IBM requested, and this Court has granted, for IBM to comply with all of its Court-ordered obligations other than those that IBM has asked Judge Wells to reconsider. IBM mistakenly

3

complains that, by basing its schedule on the May 3 date, SCO aims to "foreclose IBM's motion for reconsideration without substantive review by the Court." IBM Mem. at 3.

Contrary to IBM's complaint, SCO's proposed scheduling order merely recognizes that in light of the significant discovery that IBM still has not produced, the schedule in this case must be based on some date for IBM's compliance with its Court-ordered discovery obligations. After all, the Court struck the prior Amended Scheduling Order and invited the parties to submit a new schedule after granting SCO's applications for that very discovery. See Order (1/18/05) at 17 ("The court's decision to grant SCO's motion in part necessitates some modification to the scheduling order.").[3] SCO reasonably constructed its proposed schedule based on a May 3 compliance date and noted that if IBM does not complete compliance with its outstanding obligations by that date, then the dates set forth in SCO's proposal may have to be reconsidered.

IBM takes its argument even further by predicating its proposed schedule on its <u>non-compliance</u> with its existing Court-ordered obligations. IBM says: "In the event the Court were to deny IBM's motion for reconsideration of the January 18 Order," then "IBM's proposed schedule would obviously have to be modified" and "the proposed deadlines would need to be extended." IBM Mem. at 2 n.2. Having lost in its efforts to avoid producing the discovery at issue, IBM thus assumes away a substantial part of the discovery that this Court ordered pursuant to its thorough and well-considered January 18 Order (based on SCO's <u>renewed</u> motion to compel discovery the Court had previously ordered IBM to produce in March 2004).

<u>Second</u>, IBM resists a new cut-off date for the parties' amendment of their pleadings. IBM argues that because the prior Amended Scheduling Order provided that its designated

---

[3] Moreover, under the Court's January 18 Order, IBM was to have complied with the Court-ordered discovery by March 18, before the March 25 date by which the parties were directed to submit their proposed schedule.

4

deadlines could be changed based only on "extremely compelling circumstances," IBM Mem. at 7, no new amendment deadline can be included in the new scheduling order.

What IBM ignores is that this Court has already struck the prior Amended Scheduling Order, in its entirety, based on such compelling circumstances. The new amendment deadline that SCO proposes would permit the parties to file amendments until June 17 – approximately six weeks after IBM produces at least part of its Court-ordered discovery on May 3. Under either party's proposed schedule, SCO's new amendment deadline would precede the close of fact discovery by approximately five months, providing the parties with ample opportunity to conduct adequate discovery into any amended claims. Indeed, that amount of time is roughly equivalent to the time that was originally provided for fact discovery following the prior amendment deadline when it was imposed.[4] Finally, given that both parties have filed motions that effectively seek to amend their current pleadings[5] and that SCO intends to propose further amendments to its complaint to conform its claims to proof developed through discovery, a new amendment deadline would avoid unnecessary motion practice and court hearings on the pleading amendments.[6]

---

[4] When the Court first imposed the pleadings amendment deadline, on September 29, 2003, that deadline (of February 4, 2004) was approximately six months before the fact discovery cut-off (of August 4, 2004). That fact discovery cut-off was extended in June 2004 after the amendment date had passed, based on IBM's addition of certain counterclaims to the case.

[5] SCO filed its Motion for Leave to File a Third Amended Complaint on October 14, 2004, and IBM filed its Motion for Entry of Judgment Limiting Scope of IBM's Ninth Counterclaim on February 18, 2005.

[6] IBM incorrectly claims that SCO seeks a new pleadings amendment deadline "solely as a means to gain an advantage in connection with its pending – and untimely – motion for leave to file an amended complaint." IBM Mem. at 8. As SCO has demonstrated, the amended complaint that SCO seeks to file was asserted promptly upon SCO's discovery of IBM's misuse of SCO's code, based on Project Monterey documents that IBM first turned over in discovery after the prior amendment deadline had passed. Accordingly, SCO's pending amendment should be permitted even without an extension of the amendment deadline. In any event, this is not the only reason why an adjustment to the schedule is

Throughout this litigation, IBM has withheld critical discovery while attempting to force SCO, and this Court, to resolve with finality the legal claims that arise out of IBM's challenged conduct. This Court has now rejected all three of IBM's summary judgment motions as premature, but IBM continues to try to foreclose SCO's right to bring legal claims based on evidence SCO obtains in discovery. IBM opines that "At this stage, the case should be getting smaller, not bigger," IBM Mem. at 8, but IBM still has not produced critical discovery that SCO has been seeking for over a year (since well before the amendment deadline set forth in the prior Amended Scheduling Order) and that the Court ordered most recently in January. Given that the discovery IBM has produced has already revealed specific additional instances of IBM misconduct – i.e., its misuse of code obtained through Project Monterey, which SCO has documented in support of its pending motion to amend – SCO anticipates filing additional amendments and expects that IBM's production of its Court-ordered discovery may reveal other instances of IBM misconduct and/or other legal claims arising from such misconduct.

Third, to maintain the aggressive discovery deadlines in both parties' proposals, SCO has proposed monthly status conferences, beginning in June 2005, for the Court to resolve any disputes that may arise during the remainder of the discovery period. The resolution of core discovery issues has been time-consuming and has burdened the parties and the Court with protracted motion practice. Moreover, extended disputes about critical predicate discovery have already forced the Court to strike one scheduling order; SCO seeks to prevent that problem from recurring.

---

needed – as noted, IBM has also filed a post-amendment-deadline motion to change the scope of its Ninth Counterclaim, and SCO anticipates filing additional amendments to its pleadings following IBM's completion of its discovery production on May 3.

6

In opposing SCO's proposal, IBM recognizes that SCO seeks to streamline processes that have slowed the progress of this case, but argues that SCO's proposal would "short circuit" proper discovery requests or meet-and-confer conferences. IBM Mem. at 3, 7-8. To the contrary, SCO has proposed that the parties raise at Court status conferences only those disputes (1) that arise out of proper discovery requests and (2) that have been addressed by the parties at a meet-and-confer conference at least a week before the status conference. In addition, if the Court were so inclined, the parties could provide the Court with written notice of any items to be heard in advance of each status conference and/or expedited (and limited) written submissions on such items. The status conferences that SCO requests seek only to avoid the lengthy, time-consuming, and costly briefing process that IBM favors.

Far from "multiply[ing]" discovery disputes or inviting "unnecessary disputes," as IBM claims, IBM Mem. at 8, SCO's proposed status conferences would limit such disputes by promising prompt Court attention to any outstanding issues. There have already been multiple discovery disputes in this case, and SCO anticipates that regular Court conferences may avoid protracted discovery delays that can threaten the aggressive discovery and trial timetable that both parties have asked the Court to adopt.

Fourth, while SCO's scheduling proposal follows the same process for the exchange of expert reports as the prior Amended Scheduling Order – expert reports, followed by opposing reports, followed by rebuttal counter-reports – IBM attempts to restructure that process, setting different deadlines for the parties depending on which party bears the burden of proof with respect to each of the anticipated issues in this case. See IBM Proposed Scheduling Order at 2-3. The Court did not invite this change, nor has IBM even attempted to explain any need for it. Moreover, IBM's proposal would insert an unnecessary level of complexity into the discovery

7

process, requiring the parties to determine with certainty during the expert report process (and without any legal rulings from the Court) where all of the burdens of proof lie in this case with respect to all of the claims, the defenses thereto, the counterclaims, and the defenses thereto. The Court should (re)adopt in its new scheduling order the expert report process that SCO has proposed.

Fifth, SCO's proposed scheduling order differs from IBM's proposal in its deadlines for the close of fact and expert discovery periods, submission of expert reports, and submission of dispositive motions and related briefing. Although the differences are not dramatic (SCO's proposal sets deadlines for each the above events earlier, generally by two-to-three weeks), SCO's proposal would accelerate slightly the parties' internal discovery deadlines in order to give the Court more time to consider any dispositive motions, while holding the parties' agreed-upon trial date. IBM's scheduling memorandum does not – and IBM should not be heard to – contest SCO's proposal in light of (1) IBM's demonstrated intent to file multiple, fact-intensive summary judgment motions on virtually all of the important and complex issues in this case; and (2) IBM's constant (and, as SCO has now demonstrated, unfounded) complaints about SCO's purported efforts to delay the progress of this case.

## II. THE COURT SHOULD REJECT IBM'S PROPOSED BIFURCATED DISCOVERY SCHEDULE AS PLAINLY UNREASONABLE AND UNFAIR, FOR SEVERAL INDEPENDENT REASONS

SCO proposes a mutual discovery deadline of October 28, 2005, and a period of expert discovery to follow. The discovery deadline SCO proposes reflects SCO's estimate of the amount of time SCO needs (1) to review and analyze the enormous volume of source code and revision and contribution information that IBM withheld for over a year, but has now been ordered to produce; and (2) to respond to IBM's pending and expected discovery requests.

8

SCO's proposed deadline also gives IBM a full opportunity to seek discovery on SCO's claims and on IBM's defenses. SCO does not seek any special treatment or litigation advantage through its proposed schedule; it asks only for the opportunity to develop the proof of its claims based on material that IBM has long withheld.

In stark contrast, IBM proposes an unprecedented discovery framework designed to exploit its past discovery conduct to its strategic advantage. Instead of the discovery framework that applies in civil litigation – and the framework already in place (and consented to by IBM) in this litigation – IBM now proposes that SCO meet "interim" and "final" disclosure discovery deadlines of June 10, 2005, and August 11, 2005, respectively, and that IBM have an additional three months above and beyond that mutual discovery period (or until November 11, 2005) to complete discovery on its defenses to SCO's claims. Under IBM's schedule:

- SCO would have little more than one month to review that portion of the Court-ordered discovery that IBM has agreed to produce before SCO would have to meet IBM's "interim" disclosure deadline;

- SCO would have less time to complete its <u>review and analysis</u> of IBM's substantial Court-ordered discovery – including the "approximately 'two billion lines of code' as represented by IBM" and all of the "programmer's notes, design documents, white papers" and other programming-history information, Order (1/18/05) at 10,15 – than IBM will have taken to <u>produce</u> that information after the Court's Order; and

- IBM would then have more than three additional months – beyond the mutual discovery period that had already passed – to take unilateral, non-expert discovery on SCO's claims.

IBM's one-sided discovery proposal should be rejected for several independent reasons.[7]

---

[7] IBM wrongly claims that during the parties' meet-and-confer, "SCO did not offer a reason for its objection to IBM's proposal." IBM Mem. at 4. SCO explained during the meet-and-confer that, among other things, IBM's proposed discovery schedule did not give SCO sufficient time to review the discovery IBM is obligated to, or will, produce, and unfairly confers a litigation advantage on IBM.

9

First, nothing in the Federal Rules authorizes or contemplates, and counsel is unaware of, any practice where one side is given the advantage of a special discovery period after the other side's discovery must be finished. Yet that is precisely what IBM proposes here. Although the question of a revised discovery schedule is before the Court as a consequence of IBM's refusal to produce voluminous, relevant discovery for over a year, IBM seeks a revised discovery schedule in which SCO has only half the time it requests to review that relevant discovery, and in which IBM has an additional three months to conduct <u>unilateral</u> discovery on SCO's claims.

Second, IBM's main argument to support its proposed bifurcated schedule – that the schedule makes sense "particularly since SCO has been ordered (twice) to provide this information to IBM," Order (1/18/05) at 6 – *makes no sense at all*. In making the argument, IBM seeks not only to downplay the relevance of this Court's January Order, and the District Court's February Order denying IBM's motions for summary judgment, but to pretend those orders did not exist.[8] Those orders make crystal clear that the discovery IBM has long failed to produce was and is directly relevant to SCO's claims and ability to identify the "information" to which IBM alludes. By way of example, with respect to SCO's copyright claims, the District Court explained:

> "The court is not persuaded that the only materials necessary to conduct a substantial similarity analysis are the Linux kernel and the UNIX code. Similarly, the court is not persuaded that discovery concerning IBM's AIX and Dynix programs is irrelevant to the question of whether code in Linux is substantially similar to code in the UNIX software. Thus, the court agrees with SCO that

---

[8] IBM's claim that its schedule imposes a "reciprocal" discovery obligation on itself (between August 11 and November 11), IBM Mem. at 4 n.3, is misleading. IBM has identified evidence purportedly in support of its counterclaims because IBM's claims do not require it to review billions of lines of source code and other voluminous discovery, and because those counterclaims do not turn on any discovery that its adversary has failed to produce. IBM's claim of a "reciprocal" discovery obligation is yet another instance in which IBM seeks to downplay the Court orders finding that IBM had refused to produce voluminous and plainly relevant discovery for over a year.

10

> granting summary judgment would be premature given that SCO – at the time the instant motion was briefed – had not obtained from IBM the AIX and Dynix code that SCO has been requesting." Order (2/8/05) at 11.

Further, as a prelude to ordering IBM to produce (among substantial other materials) all of the AIX and Dynix code in IBM's possession, this Court's January Order acknowledged (for example) that "the contract claims may have a more important role in the outcome of this case than the copyright claims." Order (1/18/05) at 7-8.

IBM ignores these orders and their import. In arguing for a bifurcated discovery schedule on the ground that SCO had not identified to IBM's satisfaction the evidence of IBM's misappropriation of SCO's protected material, IBM disregards that SCO did not have the discovery needed to identify all of the misappropriation at issue. IBM thus improperly seeks to leverage its long-standing failure to provide the relevant discovery into a basis for a discovery framework that would completely undermine SCO's time and capacity finally to review that now Court-ordered discovery.

Third, there is no basis to IBM's purported concern that the discovery framework in civil litigation may preclude IBM from "preparing a defense" to SCO's claims. IBM Mem. at 4-6. There is no reason to conclude that the pretrial period of mutual discovery, which is designed to permit discovery for all parties, will not be adequate for IBM. Indeed, IBM's proposed schedule conflicts with Rule 26 of the Federal Rules of Civil Procedure, under which the pendency of one discovery request is not grounds for delaying other discovery. IBM is in no different a position than any other defendant in federal court – if anything, its discovery intransigence leaves it in an even less credible position to complain about the discovery schedule – and IBM certainly is not entitled to a "special" discovery period in which to conduct exclusive discovery on its defenses. Under SCO's proposed schedule, IBM will have a full opportunity to conduct discovery on its

11

defenses during the mutual discovery period, and to further analyze its defenses during the expert-discovery and other pretrial periods.

Fourth, IBM seeks to use its proposed discovery schedule to trump the Federal Rules of Civil Procedure in an additional respect. IBM asks this Court to require SCO to identify, at interim and final deadlines, all "allegedly misused material" by "version, file, and line of code." IBM's Proposed Scheduling Order at 2 n.2; IBM Mem. at 5 & n.4. The discovery mechanisms provided in the Federal Rules of Civil Procedure, such as interrogatories, permit the parties to seek exactly the information that IBM now asks the Court to order SCO to disclose as part of the pretrial schedule. IBM has availed itself of these processes, and SCO will supplement its discovery responses as information becomes available upon its review of the discovery that IBM had refused to produce for over a year.

Fifth, IBM's proposed discovery schedule fails reasonably to account for the role of experts in this case. As IBM acknowledges: "The parties may or may not require the assistance of experts to identify the material they contend one another misused. If they do, then their experts can assist them in making their disclosures." IBM Mem. at 6. IBM thus proposes that during the abbreviated discovery period, in addition to SCO's own efforts, SCO's expert(s) would have to reach final conclusions regarding IBM's misappropriation of SCO's material. The fact that SCO's compliance with IBM's interrogatory requests will necessarily involve expert analysis is yet another independent reason why IBM's proposal to abbreviate SCO's discovery period is unreasonable.

In sum, SCO asks the Court to enter a scheduling order that imposes the same deadline on both parties for the close of fact discovery. SCO further requests that the Court decline to impose any unilateral period of discovery in the scheduling order.

12

## CONCLUSION

For all of the above reasons, SCO respectfully requests that the Court enter SCO's proposed schedule as the final amended scheduling order in this case.

DATED this 1st day of April, 2005.

                                      Respectfully submitted,

                                      HATCH, JAMES & DODGE, P.C.
                                      Brent O. Hatch
                                      Mark F. James

                                      BOIES, SCHILLER & FLEXNER LLP
                                      Robert Silver
                                      Stuart H. Singer
                                      Stephen N. Zack
                                      Edward Normand
                                      Sean Eskovitz

By _/s/ Mark F. James_

*Counsel for The SCO Group, Inc.*

## **CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Memorandum in Support of its SCO's Proposed Scheduling Order was served by mail on Defendant International Business Machines Corporation on the 1st day of April, 2005, by U.S. Mail to:

>David Marriott, Esq.
>Cravath, Swaine & Moore LLP
>Worldwide Plaza
>825 Eighth Avenue
>New York, New York 10019
>
>Donald J. Rosenberg, Esq.
>1133 Westchester Avenue
>White Plains, New York 10604
>
>Todd Shaughnessy, Esq.
>Snell & Wilmer LLP
>1200 Gateway Tower West
>15 West South Temple
>Salt Lake City, Utah 84101-1004

/s/ [signature]