RECEIVED CLERK
**FILED**
2005 APR 11  P 7: 29

U.S. DISTRICT COURT
DISTRICT OF UTAH

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br>      Plaintiff/Counterclaim-Defendant, <br><br> -against- <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br>      Defendant/Counterclaim-Plaintiff. | **REPLY MEMORANDUM IN FURTHER SUPPORT OF IBM'S PROPOSED SCHEDULING ORDER** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

345261.2



IBM respectfully submits this reply memorandum in further support of its proposed scheduling order.

### Preliminary Statement

In opposition to IBM's proposed scheduling order, SCO offers five reasons why it should be allowed to keep IBM in the dark about SCO's claims and deny IBM the right to prepare its defense to those claims. Putting aside the fact that SCO made no mention of these reasons during the parties' meet-and-confer, none of them bears scrutiny. There is no good reason why this Court should not impose deadlines for the parties to identify the materials they contend one another misused and then allow discovery related specifically to those materials. (See Section I below.)

At the same time, SCO seeks the entry of an order that includes three provisions that are unnecessary or inappropriate. As is explained in IBM's opening brief, SCO's proposal would (1) foreclose IBM's motion for reconsideration; (2) re-open the pleadings more than one year after they closed; and (3) require the parties and the Court to participate in a process that would invite unnecessary disputes. SCO's opposition papers do nothing to recommend SCO's proposed provisions. (See Section II below.)

Finally, SCO's opposition papers point out two differences between the parties' proposals that were not addressed in IBM's opening memorandum. These differences arise mostly out of SCO's last minute departure from the parties' tentative agreement with respect to the proposed schedule. SCO's effort to include these provisions in the scheduling order is nothing but a tactical ploy and should not be sanctioned. (See Section III below.)

2

<u>Argument</u>

I.      THE COURT SHOULD ENTER A SCHEDULING ORDER IMPOSING A DEADLINE
        FOR THE PARTIES TO IDENTIFY THE ALLEGEDLY MISUSED MATERIAL.

As is explained in IBM's opening memorandum, we believe the Court should

impose firm deadlines, in advance of the close of all fact discovery, for <u>both</u> parties to disclose

the Allegedly Misused Material.  That is, we respectfully submit, the only way to give both

parties an opportunity to undertake meaningful discovery in support of their respective cases and

to bring this litigation to an expeditious resolution without unnecessary, additional disputes.

SCO offers a laundry list of arguments, not raised during the parties' meet-and-

confer, why the Court should not enter a scheduling order that would require SCO to disclose the

Allegedly Misused Material.[1]  As is discussed below, SCO's opposition (1) distorts IBM's

proposal, (2) seeks refuge in the irrelevant and (3) offers no good reason for the Court not to

impose reciprocal disclosure deadlines of the kind IBM proposes.  In fact, the arguments on

which SCO relies are designed to keep IBM in the dark about SCO's case.

<u>First</u>, SCO's opposition distorts IBM's proposal.  SCO contends that IBM's

proposal is one-sided.[2]  (<u>See</u> SCO's First and Third Points.)  SCO is wrong.  As we have made

clear to SCO, IBM proposes that the Court impose on <u>both</u> parties deadlines for the identification

---

[1] In a footnote, SCO claims that IBM is wrong in asserting that SCO did not offer a reason for its objection to IBM's proposal.  (Opp'n at 9 n.7.)  While the parties disagree about that, not even SCO purports to have shared its laundry list of objections with IBM during the parties' meet-and-confer.  It did not.  They were plainly constructed after the fact to justify a strategy of hiding the ball.

[2] According to SCO, IBM's proposal gives IBM "the advantage of a special discovery period after [SCO's] discovery must be finished", allows IBM "an additional three months to conduct <u>unilateral</u> discovery on SCO's claims", and constructs a "special" discovery period for IBM "to conduct exclusive discovery on its defenses".  (Opp'n at 10-11.)

3

of the Allegedly Misused Material such that <u>both</u> parties are able to take discovery relating to the

Allegedly Misused Material before the close of all fact discovery.  We do not seek a scheduling

order that requires only SCO to disclose the Allegedly Misused Material or that only permits

discovery with respect to the Allegedly Misused Material disclosed by SCO.  IBM seeks the

entry of an order that would subject IBM and SCO to the same obligations.[3]

SCO also complains that under IBM's proposal "SCO's <u>expert(s)</u> would have to

reach final conclusions regarding IBM's [alleged] misappropriation of SCO's material" (Opp'n

at 12; SCO's Fifth Point).  Here again, SCO misstates IBM's proposal.  IBM proposes only that

the Court impose deadlines for the parties to identify the Allegedly Misused Material.  IBM's

proposal requires neither that the parties rely on experts nor that any experts that might be used

by parties finalize their expert reports before the close of all fact discovery.  Under IBM's

proposal, the parties' experts would need to reach final conclusions before the close of fact

discovery only with respect to the <u>identification</u> of the source code and other material that is at

issue in this case.  That is no different from requiring final conclusions from an expert used by a

party to respond to an interrogatory.[4]  SCO cannot credibly contend that it should be allowed to

identify the material at issue in this case for the first time via its expert reports and after the close

---

[3] In a footnote, SCO states that "IBM's claim that its schedule imposes a 'reciprocal' discovery obligation on itself . . . is misleading" because "IBM has identified evidence purportedly in support of its counterclaims".  (Opp'n at 10 n.8.)  It is true that IBM, unlike SCO, has already properly disclosed the Allegedly Misused Material.  But that does not make IBM's proposal one-sided.  It signifies only that IBM's claims can be (and have been) substantiated, whereas SCO's have not been and cannot be.

[4] SCO states that "SCO's compliance with IBM's interrogatory responses will necessarily involve expert analysis".  (Opp'n at 12.)  If that is true, then SCO's experts will have to reach final conclusions long before the close of all fact discovery.  SCO cannot base sworn interrogatory responses on non-final expert analysis.

of fact discovery. The Allegedly Misused Material must be disclosed well in advance of the close of all fact discovery so that the parties can take fact discovery as to their defenses and focus on the issues to be addressed during the expert phase of the case. Not requiring the parties to disclose the Allegedly Misused Material before the close of all fact discovery would merely allow sandbagging.

Second, SCO's opposition seeks refuge in the irrelevant. SCO argues that IBM's proposal should be rejected on the grounds that IBM opposed SCO's request for certain AIX and Dynix discovery and on the grounds that IBM's proposal would not afford SCO enough time to review that discovery.[5] (See SCO's First, Second, Third and Fifth Points.) While IBM believes the AIX and Dynix discovery SCO sought is irrelevant, the Court has ordered IBM to produce it, and we have produced, or will produce, it (subject to IBM's reconsideration motion). SCO made no mention during the parties meet-and-confer of needing more time to review IBM's production, and it is difficult to believe SCO really requires more time than IBM's proposal allows. In any case, that is unrelated to whether the Court should impose deadlines for the disclosure of the Allegedly Misused Material. If SCO believes it requires more time to review discovery than is provided under IBM's proposal, then the solution would be to extend the

---

[5] SCO states, for example, that IBM has refused "to produce voluminous, relevant discovery for over a year"; "IBM has long failed to produce" discovery "relevant to SCO's claims"; and "[IBM's] discovery intransigence leaves it in an even less credible position to complain about the discovery schedule". (Opp'n at 10-11.) SCO further states that "IBM seeks a revised discovery schedule in which SCO has only half the time it requests to review [the discovery it seeks]"; objects that IBM's proposal "would completely undermine SCO's time and capacity finally to review that now Court-ordered discovery"; and suggests that under IBM's proposal SCO's experts would not have enough time to complete their work. (Opp'n at 10-12.)

deadlines in IBM's proposal, not to leave SCO free to sandbag IBM by untimely identifying the material it contends IBM misused.

Third, SCO offers no good reason why IBM should be kept in the dark about SCO's claims. SCO contends that IBM's proposal is unnecessary because IBM can learn all it needs to know about SCO's claims in the ordinary course without any special provisions being included in the scheduling order.[6]  (See SCO's Third and Fourth Points.)  That is not true.  IBM has twice moved to compel, obtained two orders compelling discovery and submitted three motions for summary judgment.  Still, as of today, SCO has failed to identify the material that is at issue in the case.  If that were not reason enough to impose deadlines for disclosure of the Allegedly Misused Material, then SCO's opposition brief is.  SCO's brief holds open the possibility of SCO's updating its interrogatory responses, and using its expert reports and other pretrial disclosures, to identify the Allegedly Misused Material for the first time at or after the close of fact discovery.  Based on SCO's conduct to date, we can only conclude that it does not intend to disclose the Allegedly Misused Material until it is too late for IBM to take fact discovery concerning its defenses.

SCO suggests, without any meaningful explanation, that IBM's proposal is inconsistent with the Court's discovery and summary judgment rulings and with the Federal Rules of Civil Procedure.  (See SCO's First, Second, Third and Fourth Points.)  Contrary to SCO's suggestion, however, nothing in any of the Court's prior orders disfavors the entry of an

---

[6] Specifically, SCO states that it "will supplement its discovery responses as information becomes available" and that "IBM will have a full opportunity to conduct discovery on its defenses during the mutual discovery period, and to further analyze its defenses during the expert-discovery and other pretrial period". (Opp'n at 11-12.)

345261.2

order imposing deadlines for the disclosure of the Allegedly Misused Material.  In fact, the

Court's orders make clear that it believes there should be deadlines for the parties to disclose the

Allegedly Misused Material.  (See 12/12/03 Order ¶ 4 (requiring SCO to disclose the material

allegedly misused by IBM); 3/3/04 Order ¶ 2 (again requiring SCO to disclose the material

allegedly misused by IBM)).  Nor is there anything in the Federal Rules of Civil Procedure to

undermine IBM's proposal.  On the contrary, the Federal Rules of Civil Procedure make clear

that the Court can and should enter orders of the kind IBM seeks here.  See Fed. R. Civ. P. 16

(providing that the Court may enter a scheduling order including "modifications of the times for

disclosures under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted" and

"any other matters appropriate in the circumstances of the case").

       As the Court is aware, there are millions of lines of code in Linux and Unix

System V.  SCO has long had access to this code.  SCO has demanded the production of

hundreds of millions of lines of AIX and Dynix code, and IBM has produced it.  Yet, under

SCO's proposal, it would not be required to identify the lines of code allegedly misappropriated

by IBM until after the close of fact discovery.  Thus, if SCO were to have its way, the only way

IBM would be able to prepare a defense with respect to SCO's claims would be to assume that

those claims address all of the code in Linux, Unix, AIX and Dynix and to prepare a defense as

to hypothetical claims relating to every line of code under any and all theories of liability.  Not

only would be it unfair to require IBM to prepare its defense under such circumstances, but it

would also be practically impossible.

       In sum, unless the Court imposes a deadline by which the parties must identify the

Allegedly Misused Material, then they may not learn the identity of the material they are alleged

to have misused until after the close of fact discovery -- and potentially even expert discovery --
when it would be too late to prepare a defense to claims relating to the material.  Imposing a final
deadline, before the close of all fact discovery, for the parties to disclose all of the Allegedly
Misused Material, ensures that the parties learn what each other's case is about at a time when
they can take discovery necessary to prepare a defense.

II.      THE PROVISIONS SCO SEEKS TO INSERT INTO THE SCHEDULE ARE
         UNNECESSARY OR INAPPROPRIATE.

         As is explained in IBM's opening brief, SCO's proposal includes three provisions
not included in IBM's proposal.  Nothing in SCO's opposition papers justifies these provisions.

         First, SCO seeks to require IBM to complete by May 3, 2005 the production
ordered by the Court on January 18, 2005.  In its opposition papers, SCO concedes that there is
already an order in place requiring IBM to complete its production by May 3, 2005.  (Opp'n at
3.)  That is reason enough to reject SCO's proposal:  it is redundant.  On top of that, however,
SCO effectively concedes that its proposal would require IBM to produce by May 3, 2005, the
discovery the Court recently ruled -- over SCO's objection -- that IBM need not provide before
the Court decides IBM's motion for reconsideration, which may not be decided before May 3.[7]
Although SCO states (without explanation) that it does not "aim[] to 'foreclose IBM's motion for
reconsideration'", it betrays the opposite objective in acknowledging that SCO "constructed its

---

[7] If the Court were to deny IBM's motion for reconsideration -- which is premised in part on
the fact that it would take many months for IBM to produce the discovery at issue in the
reconsideration motion -- it would obviously not be possible for IBM to produce the material at
issue on or before May 3, 2005.  Many months of additional work would be required before IBM
could make that production.

proposed schedule based on a May 3 compliance date". (Opp'n at 4.) Thus, there is no question

that SCO's proposal would foreclose IBM's motion for reconsideration.

Second, SCO seeks to reopen the pleadings more than one year after the deadline

for amending the pleadings. SCO contends that it need not establish "extremely compelling

circumstances" to reopen the pleadings because the Court "already struck the prior Amended

Scheduling Order". (Opp'n at 5.) SCO further contends that the deadline should be ignored

because SCO wishes not only to amend its complaint pursuant to its pending motion but also "to

propose further amendments to its complaint". (Id.) Contrary to SCO's contention, a showing of

"extremely compelling circumstances" is required to reverse the deadline for amending

pleadings. While the Court's January 18 Order struck the then-current scheduling order, it was

plainly directed to future deadlines, not missed deadlines. In fact, the deadline for amending the

pleadings was set out in an order dated September 29, 2003, not the scheduling order struck by

the January 18 Order.

Even if (contrary to fact) the January 18 Order could be understood to make it

easier for the parties to avoid the consequences of missed deadlines, there is no basis for

allowing further amendments to the pleadings. SCO was given ample opportunity to amend its

pleadings before the existing deadline passed, and it has done so, filing three separate

complaints. The fact that discovery is incomplete is an insufficient basis for amending the

pleadings, especially in the way SCO proposes (i.e., to assert a brand new copyright claim

challenging conduct that SCO has known about for years and to make "additional amendments"

that SCO has yet to disclose). It is one thing to allow SCO additional discovery with respect to

closed pleadings (as the Court has). It would be another thing -- indeed, it would be

345261.2

inappropriate, we believe -- to allow SCO to reopen pleadings that have been closed for more than a year, especially where it has repeatedly failed to substantiate its existing claims.

Third, SCO seeks to require the Court and the parties to participate in monthly status conferences. SCO argues that discovery disputes have taken too long to resolve and proposes a special procedure, including truncated briefing and expedited hearings, to speed things up. (Opp'n at 6-7.) Putting aside the irony in SCO's proposal,[8] SCO fails to establish a need for monthly status conferences. As stated in IBM's opening brief, the procedure SCO proposes would likely just invite unnecessary disputes.

III.   THE TWO NEW ISSUES THAT SCO RAISES IN ITS OPPOSITION PAPERS ALSO SHOULD NOT BE INCLUDED IN THE PROPOSED SCHEDULE.

As a result of SCO's last-minute gamesmanship, there are two differences between the parties' proposed schedules that were not highlighted in IBM's opening submission but that are featured in SCO's proposal.

First, SCO points out that its "proposed scheduling order differs from IBM's proposal in its deadlines for the close of fact and expert discovery periods, submission of expert reports, and submission of dispositive motions and related briefing". (Opp'n at 8.) What SCO fails to say is that the parties had a tentative agreement as to these dates until the afternoon of the

---

[8] SCO complains about the time it has taken to resolve discovery issues but overlooks the fact that it has repeatedly filed overlength briefs and redundant motions and that its own shortcomings in discovery necessitated two motions to compel, resulted in two orders requiring it to comply with IBM's discovery requests and triggered a stay of discovery. Similarly, SCO proposes that the Court set up a special procedure for dealing with discovery disputes but ignores the fact that the best way to avoid unnecessary discovery disputes is for the parties to identify the Allegedly Misused Material (which SCO seeks so vigorously to avoid doing) and limit discovery to that material.

345261.2

day the proposed schedule was due to be filed.[9]  SCO rejected the parties' tentative agreement, without explanation, and submitted a proposed schedule referring to the tentatively-agreed-to dates as "IBM's dates" and returning to its original dates.  While the differences between the parties' proposed dates are minor, SCO's gamesmanship should not be rewarded.  The dates to which the parties tentatively agreed -- which are set out in IBM's proposal but are the product of compromise and are not IBM's preferred dates -- should be included in the proposed schedule.

Second, SCO complains that IBM's proposal "attempts to restructure" expert discovery by using new labels to describe the exchange of expert reports.  The prior scheduling order described the deadlines for expert reports in general terms, i.e., "initial reports", "opposing reports" and "counter-reports".  Because there is some ambiguity as to what those terms require of the parties,[10] IBM proposes the use of more descriptive language based on who bears the burden of proof (a matter as to which there should be no dispute).[11]  Contrary to SCO's contention, there is nothing complex about IBM's proposal.  It seeks merely to ensure that the parties and the Court are on the same page (as we told SCO during the parties' meet-and-confer).

---

[9] The Court afforded the parties 60 days during which to meet and confer and reach agreement with respect to a proposed schedule.

[10] The ambiguity arises in part from the fact that the case includes both claims and counterclaims.  For example:  Do "initial reports" include reports on counterclaims, including counterclaim issues for which a party does not bear the burden of proof?  Are "opposing reports" limited to responding to issues raised in "initial reports" or may they also address issues not raised in an initial report such as issues as to which a party does not bear the burden of proof?  What are "counter-reports" allowed to counter; can they go beyond the scope of "opposing reports"?

[11] IBM proposes a three-pronged schedule:  (1) the party with the burden of proof (whether claimant or counterclaimant) submits experts reports on issues as to which the party bears the burden of proof; (2) the other party submits responsive reports or reports on issues as to which it does not have the burden of proof; and (3) the parties submit expert reports responding to reports on issues as to which the sponsor does not bear the burden of proof.

Whatever labels it employs, the scheduling order should be clear as to the parties' obligations regarding expert disclosures.  IBM's proposal is, we submit, more clear than SCO's and therefore less likely to result in future disputes.

Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter IBM's proposed schedule as the final scheduling order in the case.

DATED this 11th day of April, 2005

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

345261.2

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2005, a true and correct copy of the

foregoing was served on the following by U.S. Mail, postage prepaid:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
Sean Eskovitz
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504



13