FILED IN UNITED STATES DISTR
COURT, DISTRICT OF UTAH

APR 1 1 2005

MARKUS B. ZIMMER, CLER
BY_____
DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>　　　Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　Defendant/Counterclaim-Plaintiff. | **SCO'S OBJECTIONS TO IBM'S PRIVILEGE LOG AND MEMORANDUM IN SUPPORT OF SCO'S REQUEST TO COMPEL IBM TO PROVIDE PROPER BASES FOR ITS PRIVILEGE CLAIMS**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

***CONFIDENTIAL, FILED UNDER SEAL***

Unsealed

432

Pursuant to the Court's February 11, 2005 Order, Plaintiff The SCO Group ("SCO") respectfully submits its objections to Defendant International Business Machines Corporation's ("IBM") privilege log, which was filed with the Court on March 10, 2005. For the reasons stated below, SCO further requests that the Court order IBM to supplement its log entries for the approximately 249 documents identified herein and any other documents on which IBM has asserted similarly inadequate privilege claims.

## INTRODUCTION

IBM's privilege log contains numerous instances in which IBM has withheld documents based on the assertion of the attorney-client privilege without disclosing sufficient information for SCO or the Court to evaluate IBM's assertion. As the party claiming the privilege, IBM bears the burden of establishing its existence. Lewis v. Unum Corp. Severance Plan, 203 F.R.D. 615, 618 (D. Kan. 2001) (citing Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196 (D. Kan. 1993)).

Under federal common law, the attorney-client privilege applies only:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Id. (citing Marten v. Yellow Freight Sys., Inc., No. 96-2013-GTV, 1998 WL 13244, at *5 (D. Kan. Jan. 6, 1998)) (Exh. A). The privilege protects both "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney" and the "advice given by the lawyer in the course of representing the client." Id. (quoting Marten, No. 96-2013-GTV, 1998 WL 13244, at *6, and citing Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)).

But the privilege "is to be extended no more broadly than necessary to effectuate its purpose."

Id. (quoting Great Plains, 150 F.R.D. at 196).

IBM fails in many of its privilege log entries to establish that the documents withheld on

attorney-client privilege grounds are communications between an attorney and a client for the

purpose of obtaining legal advice. In addition, IBM's log frequently fails adequately (1) to

identify the authors and/or recipients of certain communications, and/or (2) to describe the

communications over which IBM asserts a privilege.

Accordingly, SCO respectfully requests that this Court order IBM to disclose sufficient

additional information to allow SCO to evaluate the validity of IBM's privilege assertions. For

the Court's convenience, SCO's attached exhibits list each document entry, by number from

IBM's log, wherein IBM asserts an insufficient privilege claim.

## I.   IBM'S PRIVILEGE LOG INCORRECTLY ASSERTS "CONFIDENTIALITY" AS ITS SOLE BASIS FOR WITHHOLDING CERTAIN DOCUMENTS

"In order to be covered by the attorney-client privilege, a communication between a

lawyer and client must relate to legal advice or strategy sought by the client." United States v.

Johnston, 146 F. 3d 785, 794 (10th Cir. 1998). With respect to a substantial number of document

entries on its privilege log, IBM's sole basis for withholding or redacting a document appears to

be "confidentiality." (See Exh. 1, IBM Privilege Log Document Entries That Assert

Confidentiality as Basis for Privilege.) The entries listed in Exhibit 1 provide no indication that

the confidential document relates to any communicated legal advice or strategy. For example,

IBM offers the following explanations for withholding the documents below on the basis of the

attorney-client privilege:

- Entry No. 41, October 1999 Memorandum, "Confidential Draft Paper on Project Monterey and Dynix";

2

- Entry No. 122, 6/22/01 Chart, "Confidential Chart Concerning AIX 5L";

- Entry No. 2796; 7/20/00, Notes, "Confidential Handwritten Notes[1] Concerning AIX Code";

- Entry No. 4122; Undated, Memorandum, "Confidential Project Monterey Overview"; and

- Entry No. 6197; Undated, Notes "Handwritten Notes Concerning OSDL Loaner Agreement".

These descriptions, and the similar descriptions for all the documents contained in Exhibit 1, appear to concern factual and/or business information that may be "confidential" for reasons other than that they provide legal advice and, accordingly, do not support IBM's claim that the documents are protected by the attorney-client privilege. Because IBM's log fails to sustain IBM's burden of demonstrating that the documents are protected by privilege, IBM should either disclose additional information about the 141 documents listed in Exhibit 1 or, if no valid basis for asserting attorney-client privilege exists, should produce those documents.

IBM also fails to disclose the author and/or recipients of many of these documents – information necessary for SCO to evaluate IBM's privilege claims (see Exh. 1). In a related deficiency, IBM withholds documents containing communications between IBM employees (who are not identified as attorneys) on the basis of attorney-client privilege, but does not explain whether the non-lawyer communications relate to legal advice (see id., Entry Nos. 2727, 2728, 5404, 8030). In failing to identify that communications took place between an attorney and client primarily for the purpose of legal advice, IBM fails to carry its burden of establishing its

---

[1] IBM apparently asserts that handwritten notes by lawyers and/or documents contained in attorneys' files constitute privileged information per se and need no supplemental explanation demonstrating a basis to establish the protection of the attorney-client privilege. That is incorrect. See, e.g., Women's Interart Center, Inc. v. N.Y.C. Economic Dev., 223 F.R.D. 156, 160-61 (S.D.N.Y. 2004); Union Nat'l Bank of Chicago v. United States Fire Ins. Co., No. 82 C 5628, 1983 U.S. Dist. LEXIS 13471, at *5 (N.D. Ill. Sept. 23, 1983) (Exh. B).

asserted privilege.  For these additional reasons, IBM should be required to provide additional information about these documents.

## II.  IBM'S PRIVILEGE LOG FAILS TO PROVIDE NECESSARY INFORMATION ABOUT THE AUTHORS AND RECIPIENTS OF NUMEROUS DOCUMENTS

A privilege log not only should identify the documents for which a privilege is being asserted, but also must adequately identify the individuals who are parties to a communication.  See Hill v. McHenry, No. CIV.A. 99-2026-CM, 2002 WL 598331, at *2 (D. Kan. April 10, 2002) (Exh. C); Bank Brussels Lambert v. Credit Lyonnais, 210 F.R.D. 506, 509 (S.D.N.Y. 2002)).  The proponent of the privilege claim must provide sufficient detail as to the author and recipients of each document in order to permit a judgment as to whether the document is at least potentially privileged.  See Banks Brussels, 210 F.R.D. at 509.

In several log entries, IBM fails sufficiently to identify the author and/or the recipients of e-mails.  Instead, IBM offers only an e-mail "alias" or handle without disclosing the identity of the individual(s) who received such communications.  (See Exh. 2, IBM Privilege Log Document Entries That Fail to List Names in E-mail Lists.)  For example:

- Entry 4672 lists the addressee as "ltc@Linux.ibm.com";
- Entry 4677 lists the addressee as "Monterey Software Group";
- Entry 7363 lists the addressee as "open-source@raleigh.ibm.com";
- Entry 7518 lists as copyees "OSSC Core," "OSSC Ext," and "OSSC FYI"; and
- Entry 7847 lists as the addressee "OSSC-Exec" and a copyee as "OSSC-Core".

IBM's failure to identify each individual who received the documents prevents an accurate assessment of IBM's privilege claims (i.e., whether the communications were between an attorney and a client and/or whether any existing privilege has been waived by wider

4

disclosure). Accordingly, SCO seeks an order compelling IBM to provide such information or to produce these documents to SCO.

### III.   IBM'S PRIVILEGE ASSERTIONS ARE DEFICIENT WHERE THEY MERELY IDENTIFY AN ATTORNEY AS A PARTY TO A COMMUNICATION BUT FAIL TO PROVIDE ANY FURTHER BASIS TO ESTABLISH THE ATTORNEY-CLIENT PRIVILEGE

The proponent of an attorney-client privilege claim must demonstrate that the attorney-client communication was for the purpose of obtaining or providing legal advice or strategy sought by the client. Johnston, 146 F.3d at 794. The mere showing that an attorney was party to a communication is not sufficient to establish privilege. Id. (citing Motley v. Marathon Oil Co., 71 F.3d 1547, 1550-51 (10th Cir.1995)). Thus, copying an attorney in a communication between non-attorneys does not cloak the communication in privilege. In Re: CFS-Related Secs. Fraud Litig., 223 F.R.D. 631, 635 (N. D. Okla. 2004) (quoting Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329 (N.D. Okla. 2002)); see also United States Postal Serv. v. Phelps Dodge Ref. Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994).

IBM's privilege log contains numerous entries whose descriptions fail to establish that the communications were seeking or rendering legal advice or strategy. Rather, IBM asserts privilege claims on the apparent basis that an attorney was party to a potentially non-privileged communication as a "cc" or carbon copy (see Exh. 3, IBM Privilege Log Document Entries That Merely Copy a Lawyer). For example, IBM withholds documents on the basis of the attorney-client privilege where lawyers are listed as copyees to possibly non-privileged communications. Document Entry 5584 is an e-mail string from Craig Schneider to Ron Saint Pierre, which contains Jennifer Ivan, Esq. as one of several copyees, and IBM's privilege claim reads:

5

"Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey."[2]

SCO is concerned that IBM may be seeking to cloak non-privileged communications in the attorney-client privilege by asserting that non-lawyers are "forwarding" information to counsel whenever a lawyer happens to be copied on an e-mail or document. IBM has not met its burden of establishing a proper privilege claim for the documents listed in Exhibit 3.

IBM has also withheld on privilege grounds numerous documents authored by non-lawyers and addressed to, or copied to, lawyers with the accompanying, inadequate explanation that the communication is "providing legal advice". For example, the privilege description for Entry 261 – an e-mail authored by a non-lawyer, addressed to a non-lawyer, and copied to a lawyer – simply reads: "Redaction of Confidential Email Providing Legal Advice Concerning Monterey Agreements" (Exh. 4, IBM Privilege Log Document Entries That Improperly Describe Alleged Privileged Communication).[3] This description, and others contained in Exhibit 4, are improper or, at best, unduly vague because they fail to identify an attorney as the source of the claimed "legal advice." Accordingly, IBM should be compelled to provide a sufficiently detailed, accurate description of the documents, listed in Exhibits 3 and 4, that merely copy an attorney or fail adequately to describe the nature of the communication.

---

[2] This description is in contrast to other IBM privilege assertions, such as Document Entry 494, which provides greater detail: "Redaction of Confidential Email Forwarding Information Requested by Christopher O'Neill, Esq. Concerning GPL Linux Driver Code." (Emphasis added.)

[3] Further complicating SCO's ability to examine whether IBM has properly claimed privilege over the redacted document, the bates range IBM listed for this document "181016262-181016265" is not accurate, and the document cannot be located for inspection.

## IV.   IBM'S PRIVILEGE LOG FAILS EVEN TO DISCLOSE THE EXISTENCE OF A LARGE NUMBER OF POST-LITIGATION DOCUMENTS THAT IBM HAS WITHHELD FROM PRODUCTION

IBM's privilege log has not even disclosed documents created since the inception of this litigation that IBM has withheld.  Upon inspection, the vast majority of IBM's privilege log contains only assertions of the attorney-client privilege.  By failing to disclose the existence and nature of the documents that IBM has withheld from production based on the work-product protection, SCO is left without any ability to challenge any such IBM assertion.[4]

Examination of one of the very small number of post-litigation documents that IBM included in its privilege log (presumably by accident) lends further support to SCO's argument that IBM must disclose all of the documents that it has withheld from production.  Document Entry 8114 is a June 18, 2003, e-mail string from non-attorney Daniel Frye to numerous non-attorneys.  IBM asserts both attorney-client privilege and work product protection over this document, and the description reads: "Confidential Email Providing Legal Advice Concerning SCO v. IBM Litigation."  Not only does this deficient description preclude substantive evaluation of the nature of the document, but it also suggests that non-attorney Mr. Frye provided legal advice, which is not a protected communication.

SCO requests that IBM be directed to list in its privilege log all documents concerning this litigation or related issues, including any documents created since this litigation began, that

---

[4] The original privilege log that SCO provided to IBM on November 19, 2004, contained both attorney-client privileged and work-product protected documents, including those created since the inception of this litigation ("litigation documents").  However, upon inspection of IBM's privilege log produced at that time, SCO determined that IBM had apparently failed to disclose its own litigation documents.  On December 22, 2004, SCO wrote to IBM and asked IBM to explain its treatment of such documents.  IBM never responded.  Since that time, to avoid any unfair disadvantage pending the resolution of this issue, SCO has not included litigation documents in its privilege logs, including the privilege log provided to the Court on March 10, 2005.  As SCO has previously suggested to IBM, SCO is amenable to excluding from the privilege logs any litigation documents that are communications between outside counsel and their clients concerning this or related litigations.

IBM has withheld from production based on asserted work-product protection or attorney-client privilege.[5]

## CONCLUSION

For all of the above reasons, SCO respectfully requests that the Court order IBM (1) to provide additional information necessary to evaluate IBM's privilege assertions over the documents referenced in the attached Exhibits and (2) to disclose and list in IBM's privilege log all documents that IBM has withheld from production.

DATED this 11th day of April, 2005.

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand
Sean Eskovitz

By

*Counsel for The SCO Group, Inc.*

---

[5] If the Court grants SCO's request, SCO will amend its filed privilege log to include, as SCO has previously done, all of its privileged documents created since the inception of this litigation that concern this litigation and related issues.

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of foregoing to be mailed by U.S. Mail, first class postage prepaid on this 11th day of April, 2005, to the following:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101

Evan R. Chesler, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York. New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604



Westlaw.

Not Reported in F.Supp.                                                          Page 1
1998 WL 13244 (D.Kan.)
**(Cite as: 1998 WL 13244 (D.Kan.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.
Dennis MARTEN, Plaintiff,
v.
YELLOW FREIGHT SYSTEM, INC., Defendant.
**No. CIV. A. 96-2013-GTV.**

Jan. 6, 1998.

Paul F. Pautler, Jr., Kimberly A. Jones, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Gail M Hudek, Hudek & Associates, P.C., Kansas City, MO, for Dennis Marten, plaintiffs.

Robert W. McKinley, Tedrick Addison Housh, III, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for Yellow Freight System, Inc., defendants.

MEMORANDUM AND ORDER

RUSHFELT, Magistrate J.

*1 Before the court is Plaintiff's Motion to Compel Discovery (doc. 86). Pursuant to Fed.R.Civ.P. 37 and D.Kan. Rule 37.1, plaintiff thereby seeks an order to compel defendant to fully answer Interrogatory 1 of his Third Set of Interrogatories. He also asks that defendant be ordered to produce the following documents: all "personal" files of Gary Bowman, responsive to Request 2 of his Third Request for Production of Documents; and all minutes, responsive to Requests 1, 5, and 6 of his Second Request For Production, of any meeting at which defendant decided to terminate or suspend him or place him on probation. Defendant opposes the motion.

Interrogatory 1 asks defendant to "[l]ist by name of subject employee all 'personal' files maintained by Gary Bowman from January 1994 to the present." Request 2 seeks production of those files. Defendant objects that the information sought is irrelevant. The court overrules the objections. The files appear reasonably calculated to lead to the discovery of admissible evidence. Defendant essentially

concedes the point. In opposing the motion it states that "[u]nless other employees engaged in similar behavior or conduct as plaintiff, Bowman's files on these employees would have no bearing on whether Bowman treated plaintiff differently by documenting his behavior and conduct." (Def.'s Resp. In Opp'n To Pl.'s Mot. to Compel Disc., doc. 106, at 5.) It then proclaims that "no evidence" exists that other employees have engaged in conduct similar to that which resulted in the termination of plaintiff. A litigant need not accept the opinion of opposing parties, however, as to the relevancy of a document. He may discover the contents of the document. He may then draw his own conclusion as to whether Bowman treated plaintiff differently from other employees. The request must only be reasonably calculated to lead to the discovery of admissible evidence.

Defendant also contends that information regarding "personal" files post-dating May 1, 1995, the date it terminated plaintiff, has no bearing on the issues in this case. The court rejects the contention. It finds the information sought by Interrogatory 1 and Request 2 relevant.

Defendant further contends, however, that disclosure of the "personal" files kept by Mr. Bowman on other employees under his supervision would improperly sway their opinions against defendant and undermine the ability of Mr. Bowman to effectively manage such employees. It suggests that "wholesale disclosure" could undermine the morale and productivity of the department headed by Mr. Bowman. It further suggests that plaintiff might use information in the files to antagonize and harass the subject employees, notwithstanding an existing protective order.

Plaintiff does not refute these contentions or suggestions. The court finds good cause, therefore, to limit dissemination of the "personal" files. Such files shall be for use by the attorneys for plaintiff. Plaintiff himself shall have no access to them or their contents, until such time as they may be admitted into evidence in this case; if indeed the court admits them. Subject to this protective order, defendant shall produce all "personal" files responsive to Request 2 and fully answer Interrogatory 1.

*2 Plaintiff also seeks an order to compel defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
**(Cite as: 1998 WL 13244 (D.Kan.))**

to produce for inspection and copying all minutes of the Employee Review Committee (ERC) or of any meeting at which defendant decided to place him on probation or terminate or suspend him. Requests 1, 5, and 6 ask defendant to produce such minutes. Defendant objects to the production on grounds of attorney-client privilege and work product. It identifies a document titled, "ERC Minutes May 1, 1995," withheld on those grounds. Its former in-house attorney, Ronald Sandhaus, drafted it. Defendant asserts that the attorney-client privilege protects the document from discovery, because it "contains material discussed between and among Yellow employees and Mr. Sandhaus for purposes of rendering legal advice on how to address plaintiff's disciplinary problems." It also suggests that the document is attorney work product, because Mr. Sandhaus prepared it in anticipation of litigation. It claims the document contains communications between counsel and other participants of the ERC meeting. It also claims that the document reflects Mr. Sandhaus' thoughts and mental impressions of the facts and reasons for the discharge of plaintiff.

Plaintiff suggests that whatever legal advice Mr. Sandhaus may have given is merely incidental to business advice rendered. He thus argues that neither the attorney-client privilege nor the work-product doctrine protects the communications from discovery. He further contends that defendant waived any privilege that may have attached to the minutes, when its Vice President of Properties, Nile Glasebrook, testified about the ERC meeting, including the general substance of the discussions.

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." ' _United States v. Zolin,_ 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (quoting Fed.R.Evid. 501). As indicated by defendant, this court has previously held that federal law provides the rule of decision with respect to privilege in federal actions based upon a federal question, even though joined with pendent state law claims. _See Case v. Unified Sch. Dist. # 233,_ No. Civ.A. 94-2100-GTV, 1995 WL 358198, at * 2-3 (D.Kan. June 2, 1995), _clarified on reconsideration,_ 1995 WL 477705 (D.Kan. Aug.11, 1995). In _Case_ the court noted unanimous agreement among other courts considering the issue. _Id._ at 3. It further noted inherent impracticalities of applying two different rules of privilege to the same evidence. _Id._ The Tenth Circuit Court of Appeals has

held, on the other hand, that when a plaintiff asserts both federal and state claims, the court should look to state law in deciding questions of privilege, as to the state causes of action. _Motley v. Marathon Oil Co., 71 F.3d 1547, 1551 (10th Cir.1995), cert. denied, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996)._

*3 After the _Motley_ decision, the choice-of-law issue again emerged in the District of Kansas. _See Hinsdale v. City of Liberal,_ 961 F.Supp. 1490 (D.Kan.1997). The court first noted that "all of the circuits that have directly addressed this issue have held that the federal law of privilege governs on issues of discoverability and/or admissibility even where the evidence sought might be relevant to a pendant state claim." _Id._ at 1493. It then recognized the apparent implications of _Motley:_

It thus could be argued that the 10th Circuit has decided not to follow the other circuits when both federal and state causes of action have been asserted in a case.

However, it is not clear that the 10th Circuit directly addressed the issue. The _Motley_ opinion does not discuss at all the conflict in the law or any opinion or legal authority concerning what law should apply when both federal and state causes of action are in a case. _Motley_ cites language in Fed.R.Evid. 501 which calls for looking at state law when there is a state cause of action However, Rule 501 is silent on what should be done when a case contains both state and federal causes of action....

This court seriously doubts that the 10th Circuit has directly addressed the issue of which privilege law applies when the evidence is relevant to both state and federal claims that are in a case. However, this court is bound by the decisions of the 10th Circuit. Therefore, the court will analyze this motion based on the possibility that the 10th Circuit intended for state law of privilege to apply to the state causes of action in a case wherein both federal and state claims have been asserted.
961 F.Supp. at 1493.

Following _Hinsdale_ the Tenth Circuit Court of Appeals unambiguously held that the court should consider both federal and state law of privilege, when both federal claims and pendent state law claims are implicated. _See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, ----,_ No. 96-3021, 129 F.3d 1355, 1997 WL 727571, at *13 (10th Cir. Nov.24, 1997). It specifically held:

Here, with both federal claims and pendent state law claims implicated, we should consider both bodies of law under _Motley_ and Fed.R.Evid. 501.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Page 3

If the privilege is upheld by one body of law, but denied by the other, problems have been noted. "In this situation, permitting evidence inadmissible for one purpose to be admitted for another purpose defeats the purpose of a privilege. The moment privileged information is divulged the point of having the privilege is lost." 3 Weinstein's Federal Evidence, § 501.02[3][b] (Matthew Bender 2d ed.) (citing *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458 (N.D.Cal.1978)). If such a conflict on the privilege exists, then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law. Here, however, for reasons given below we are convinced that both federal and Kansas law support application of the attorney-client privilege. Therefore we need not articulate an analytical solution here for conflicts in attorney-client privilege rules.
  **\*4** 129 F.3d at ----, 1997 WL 727571, at \*13 (footnote omitted).

Following *Sprague,* the court will consider both federal and state law regarding privilege. Plaintiff alleges retaliation and/or sex discrimination under federal law, Title VII, 42 U.S.C. § 2000e *et seq.* (Compl., doc. 1, ¶ ¶ 57-65.) He also asserts claims of outrage, defamation, false imprisonment, and assault and battery under state law. (*Id.* ¶ ¶ 66-85.) If state and federal rules of privilege conflict, the court must analyze their application.

The court finds no conflict. Whether it applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 196 n. 3 (D.Kan.1993) (citing K.S.A. 60-426; *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992)). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions." *In re A.H. Robins Co.,* 107 F.R.D. 2, 8 (D.Kan.1985). Certain general propositions appear applicable under both federal and Kansas law. Federal law, moreover, governs the applicability of the work product doctrine in federal court. *See Burton v. R.J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 139 (D.Kan.1996).

The attorney-client privilege and the work product doctrine are distinctly different protections, although related somewhat and often invoked together. *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196. "Despite their differences, courts narrowly construe them

both." *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (unanimous decision).

Parties asserting an objection of "work product immunity or attorney-client privilege bear[] the burden of establishing that either or both apply." *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995). They must make a "clear showing" that the asserted objection applies. *Ali v. Douglas Cable Communications, Ltd. Partnership,* 890 F.Supp. 993, 994 (D.Kan.1995). To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery. *National Union Fire Ins. Co.,* 159 F.R.D. at 567. They must provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied. *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995). A claim of privilege or work-product protection fails upon a failure of proof as to any element. *Id.* A "blanket claim" as to the applicability of a privilege or the work product doctrine does not satisfy the burden of proof. *See Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

  **\*5** "The attorney-client privilege...is to be extended no more broadly than necessary to effectuate its purpose." *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196. Its purpose
  is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.
*Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice." *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. Civ.A. 94-2395-GTV, 1995 WL 625962, at \*8 (D.Kan., Oct.5, 1995) (quoting *Marc Rich & Co. A.G. v. United States (In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983),* 731 F.2d 1032, 1037 (2d Cir.1984)). "[T]he privilege exists to protect not only the giving of professional advice to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Page 4

those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co.,* 449 U.S. at 390. "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.... [The privilege] protects only those disclosures--necessary to obtain informed legal advice--which might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (citations omitted). Furthermore, it

only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:

"[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co.,* 449 U.S. at 395-96 (citation omitted).

The essential elements of the attorney-client privilege are nearly identical under both Kansas and federal law. Under federal common-law the essential elements are:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196 n. 4 (citation omitted). Under Kansas law, they are:

(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

*6 *State v. Maxwell,* 10 Kan.App.2d 62, 63, 691 P.2d 1316, 1319 (1984) (citation omitted); *see also,* K.S.A. 60-426. The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995); *see also, Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997); *Maxwell,*

10 Kan.App.2d 62, 691 P.2d 1316; K.S.A. 60-426(a). Under Kansas law, " 'communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." K.S.A. 60-426(c)(2). Such definition does not conflict with federal law. *See Upjohn,* 449 U.S. at 390.

The attorney-client privilege protects communications with in-house, as well as outside counsel. *Burton,* 170 F.R.D. at 484. Minutes of meetings attended by attorneys are not, however, automatically privileged. *Id.* at 485. That the document sought in this case comes from former in-house counsel for defendant carries little weight of itself on the scope or applicability of the privilege. "[In-house] status alone does not dilute the privilege." *In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984). Although such status "does not alter the attorney/client privilege ... when the attorney serves also in another capacity, such as vice president, his advice is privileged 'only upon a clear showing' that it was given in a professional legal capacity." *Pizza Management, Inc. v. Pizza Hut, Inc.,* No. 86-1664-C, 1989 WL 9334, at *4 (D.Kan. Jan.10, 1989); *see also, United States v. Chevron Corp.,* No. C-94-1885 SBA, 1996 WL 264769, at *4 (N.D.Cal. Mar.13, 1996), *amended by,* No. C 94-1885 SBA, 1996 WL 444597 (N.D.Cal. May 30, 1996).

A basic element of the attorney-client privilege is that the attorney be in the appropriate role during communication with the client. Attorneys in such diverse occupations as professor or baseball manager do not occupy the role of attorney for privilege purposes as they discuss classroom assignments or the hit-and-run play. Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. Such an attorney may have multiple roles in his activities (*e.g.* business advisor, corporate director, labor negotiator) that are not necessarily attorney-related roles for the purpose of the privilege. In the representation of corporate interests, counsel might find themselves performing multiple roles. Frequently the roles are closely related, which makes it virtually impossible to isolate a purely legal role from the nonlegal.

*7 John William Gergacz, *Attorney-Corporate Client Privilege,* ¶ 3.02[2][a] [[[iv] (2d Ed.1990).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Page 5

Communications with in-house counsel, "who at the time is acting solely in his capacity as a business advisor, would not be privileged." *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 197. The privilege likewise does not extend to communications not made in professional confidence. *Pacific Employers Ins. Co. v. P.B. Hoidale Co.,* 142 F.R.D. 171, 173 (D.Kan.1992) (citing *State v. Breazeale,* 11 Kan.App.2d 103, 105, 713 P.2d 973 (1986)). Nor does it extend "to advice and assistance that has not been sought and received in matters pertinent to the profession." *Id.* It "applies only to communications made to an attorney in his capacity as legal advisor." *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co.,* 250 Kan. 54, 60, 824 P.2d 933, 938 (1992). It applies only "when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed." *Burton,* 170 F.R.D. at 484. A distinction exists "between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected." *Id.* (citations omitted). When the legal advice "is merely incidental to business advice," the privilege does not apply. *Id.* "There is also a distinction between a conference with counsel and a conference at which counsel is present." *Id.*

[T]he mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged. The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential. To be privileged, the communication must relate to the business or transaction for which the attorney has been retained or consulted.

*Hinsdale v. City of Liberal,* 961 F.Supp. 1490, 1494 (D.Kan.1997).

Plaintiff seeks minutes of any meeting at which the termination, suspension, or probation of plaintiff was decided by defendant. Ronald Sandhaus, former in-house counsel for defendant, drafted minutes of a meeting of the ERC held May 1, 1995. To determine the applicability of the attorney-client privilege the court must determine the role of Mr. Sandhaus at that meeting. To the extent he was not acting as an attorney providing legal advice, the privilege provides no protection for communications made to or from him.

Defendant contends that the role of Mr. Sandhaus was not to determine whether the discharge of plaintiff was a good business decision, but rather to ensure that the reasons and decision to discharge him were legally sound under the facts of the case. It asserts that Mr. Sandhaus did not deviate from his role as legal advisor. It further asserts that the document in question contains communications from managerial employees which were for the purpose of obtaining legal advice on how to handle the behavioral and conduct problems of plaintiff in light of accusations of discrimination and retaliation. It claims that the participants have maintained the confidentiality of the communications and the documents resulting from the meeting. It suggests it does not routinely convene meetings of the ERC, but only when faced with a decision to discharge an employee. It characterizes the presence and guidance of counsel at such meetings as critical, because of the legal implications associated with the discharge of an employee.

**\*8** Defendant submits an affidavit of its present in-house counsel, Daniel Hornbeck. He states that the role of counsel at meetings of the ERC "is to render legal advice to managerial and human resources employees based upon the factual situation." (Aff. of Daniel L. Hornbeck, Esq., attached as Ex. A to Def.'s Resp. to Pl.'s Mot. to Compel, doc. 106, ¶ 3.) He avers that defendant has an attorney participate as a voting member "to ensure the Employee Review Committee's decision regarding the discharge of an employee complies with substantive and procedural law." (*Id.*) He also makes averments consistent with the ERC policy of defendant. (*Id.* at ¶ 2.) Plaintiff submits a copy of that policy. It provides in pertinent part:

The prior approval of the [ERC] is required before a salaried or non-union employee who has at least six months' [sic] service with the company can be discharged or forced to resign. The purpose of this policy is to provide a high-level review prior to each discharge or involuntary resignation.

The ERC is composed of three voting members: the Manager of Employee Relations (or designee), the Division or Department Vice-President (or designee), and a member of the Legal staff. While there may be other participants in the ERC meeting, the authority for decision-making is the ERC members.

...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Page 6

It is the responsibility of the members of the ERC, after reviewing the case, to decide whether to terminate, place on probation, etc.
(ERC Prior Approval of Discharges, attached as Ex. F to Pl.'s Mot. to Compel, doc. 86.)

One purpose of the ERC meeting is that of review. Such review may include consideration of legal consequences of a proposed employment action. The primary function of the committee, however, appears to be a decision of what employment action to take against an employee. Notwithstanding the legal implications of such employment action, the business purposes of such a decision predominate the legal issues. In the context of a required meeting to determine possible employment actions, legal advice sought or received during such meeting appears to be incidental to considerations of what is most prudent for the successful operation of the business. A conference between client and counsel does not necessarily equate with a conference attended by counsel. The ERC meeting appears to be the latter. It serves to make a personnel decision. With an attorney present, the meeting nevertheless proceeded to determine whether to terminate the employment of plaintiff. Such a business decision may have legal consequences, as do many decisions of any business. That fact, together with the presence of legal counsel, however, does not convert the meeting into a conference between attorney and client. Nor does it make the attorney-client privilege applicable to whatever is said and done during the meeting.

As a voting member of the ERC, furthermore, Mr. Sandhaus was not acting merely as an attorney rendering legal advice. Officially voting on a proposed action goes beyond the bounds of giving legal advice. It performs an act of the business. Legal considerations may influence his vote or that of any other committee member as well. The attorney-client privilege does not protect the act of voting, the minutes which record it, or all the discussion of the committee relating to its decision.

*9 Defendant asserts that the membership of Mr. Sandhaus on the Employment Review Committee does not mean that he was acting in a non-legal capacity. Mere membership on a committee does not of itself necessitate a finding that counsel was not acting as an attorney. Membership on a committee which decides if an employee should be terminated, however, may lead to an inference that the attorney, at least in part, was acting in a non-legal capacity. When an attorney is a voting member, the indication is even stronger. As the party asserting privilege,

defendant has the burden to demonstrate its applicability. This means an adequate showing that, as a voting member of the ERC, Mr. Sandhaus was nevertheless acting as legal counsel.

Defendant explains that it granted counsel voting membership on the committee "to ensure the legal efficacy of the employment decision." That is an admirable goal. Including an attorney on the committee, nevertheless, can create ambiguity as to his or her role. Defendant maintains that the role of counsel on the committee never strayed from rendering legal advice. It submits the affidavit of Mr. Hornbeck as proof. The affidavit sets forth what role counsel generally take at ERC meetings. It provides nothing of substance, however, about what Mr. Sandhaus in fact did at the meeting of May 1, 1995. The court declines to rely upon the generalization to demonstrate the applicability of a privilege. Defendant must show that the primary participation of Mr. Sandhaus at the ERC meeting was as a lawyer giving legal advice. In this respect the facts proffered by defendant fall short. The affidavit of Mr. Hornbeck expresses no personal knowledge of what occurred at the meeting. Defendant provides no affidavit either of Mr. Sandhaus or anyone else at the meeting to suggest he acted primarily as counsel. The affidavit of Mr. Hornbeck indeed fails to confirm that anyone at the meeting of May 1, 1995 either asked for or received any legal advice from Mr. Sandhaus.

When an attorney serves in a non-legal capacity, such as a voting member of a committee required to review proposed employment actions, his advice is privileged only upon a clear showing that he gave it in a professional legal capacity. *See Pizza Management, Inc. v. Pizza Hut, Inc.,* No. 86-1664-C, 1989 WL 9334, at *4 (D.Kan. Jan.10, 1989). The privilege protects only those communications predominated by legal advice. *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997). Defendant, as the party with the burden to show the privilege applicable, has not shown such predomination. Legal advice simply incidental to communication which is primarily business advice, however, does not qualify for the privilege.

Defendant suggests *Great Plains Mutual Insurance Company v. Mutual Reinsurance Bureau,* 150 F.R.D. 193 (D.Kan.1993) supports its position that the attorney-client privilege is applicable. The court finds the case distinguishable. In *Great Plains* the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information sought "appear[ed] to directly relate to legal advice rendered by [an] attorney in his capacity as legal advisor." *Id.* at 197. No such appearance exists here. From the information before the court, the minutes of the meeting of May 1, 1995, appear to relate to a business meeting at which counsel acted as a voting member. Defendant has not shown that Mr. Sandhaus was acting primarily as a legal advisor. In *Great Plains,* furthermore, the court was satisfied that the "attorney was acting in his capacity as an attorney during the relevant portions of the board meetings." *Id.* Defendant here has not made an adequate showing that Mr. Sandhaus was acting in a legal capacity during the meeting.

*10 In *Great Plains* the party asserting the privilege also showed that the advice given required the skill and expertise of an attorney. *Id.* The showing here again falls short. In *Great Plains* the court noted the clear "purpose of the conversations during the board meetings was to render legal advice and that both Great Plains and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to Great Plains' litigation." *Id.* Here the purpose of the ERC meeting was to determine appropriate employment action against plaintiff. Any legal advice, if given, appears incidental to a personnel matter and to what was therefore prudent and expedient for successful operation of the business. Mr. Sandhaus appears to have been acting beyond the role of legal counsel when performing the role of voting member of the ERC.

The court next addresses whether the minutes are protected from discovery as work product. "Within the meaning of Fed.R.Civ.P. 26(b)(3), work product refers to documents and tangible things, prepared in anticipation of litigation or for trial, and prepared by or for a party or by or for a representative of that party." *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 200 (D.Kan.1996).

> The work product standard has two components. The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced *because of* the anticipation of litigation, *i.e.,* to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.

*Audiotext Communications Network, Inc.,* 1995 WL 625962, at *8 (quoting *Harper v. Auto-owners Ins. Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991)). "The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product." *EEOC v. GMC,* No. 87-2271-S, 1988 WL 170448, at *2 (D.Kan. Aug.23, 1988). "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield,* 166 F.R.D. 496, 498 (D.Kan.1996) (citations omitted). "To justify work product protection, the threat of litigation must be 'real and imminent.' " *Audiotext Communications Network, Inc.,* 1995 WL 625962, at *9 (quoting *Reliance Ins. Co. v. McNally Inc.,* No. 89-2401-V, unpublished op. at 4 (D.Kan. Feb. 5, 1992)). To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation. *See Pacific Employers Ins. Co.,* 142 F.R.D. at 174-75.

*11 In this instance defendant suggests that Mr. Sandhaus created the minutes of the ERC meeting in anticipation of litigation. It asserts the anticipated litigation was clearly shown by plaintiff's filing a complaint with the Equal Employment Opportunity Commission (EEOC) and speaking of his "lawsuits" with co-workers. A defendant is generally justified in believing litigation to be imminent, after charges are filed with the EEOC. *EEOC v. GMC,* 1988 WL 170448, at *2. Such justification, however, does not transform every document thereafter prepared by the attorney into work product. The attorney must create the document "because of" the impending litigation. Work product generally does not apply, unless the primary motivating purpose for creating the document is to assist in pending or impending litigation. *Id.* "To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation." *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 485 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997). The fact that defendant anticipated litigation with plaintiff does not make all documents thereafter "generated by or for its attorneys subject to work product immunity. A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific litigation." *Burton v. R.J. Reynolds Tobacco*

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Co., ---F. R.D. ----, ----, No. 94-2202-JWL, 175 F.R.D. 321, 1997 WL 536084, at *5 (D.Kan. Aug.14, 1997).

Defendant has not shown the primary motivating purpose behind the creation of the minutes here in question. Mr. Sandhaus titled the document "ERC Minutes May 1, 1995." The title suggests a purpose other than litigation. The term "minutes" commonly means "the official record of the proceedings of a meeting." *Webster's Ninth New Collegiate Dictionary* 757 (9th ed.1988). That definition appears particulary cogent. Mr. Sandhaus drafted the minutes primarily to record what happened at the ERC meeting. The court has noted the lack of showing that he was acting purely as legal counsel at the meeting. His business role as a voting member of the committee appears to predominate over any role he may have filled as an attorney giving legal advice.

Defendant has not carried its burden to show that Mr. Sandhaus primarily created the minutes in question to assist in pending or impending litigation. Documents created in the ordinary course of business are not protected by the work product doctrine. Meetings of the ERC appear part of the ordinary course of the business of defendant. That it convenes such meetings only when necessary does not prove otherwise. That an attorney created the document in question, furthermore, does not of itself make it work product. *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997). The doctrine does not protect summaries of business meetings, even when an attorney creates the summary. *Id.* "A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys, whether in-house or outside counsel." *Id.* at 488.

**\*12** The court need not address the issue of waiver raised by plaintiff. It has found neither the work product doctrine nor the attorney-client privilege applicable to the minutes in question. Defendant shall produce the minutes of the ERC meeting of May 1, 1995 created by Mr. Sandhaus and all other documents responsive to Requests 1, 5, and 6.

For the foregoing reasons, the court sustains Plaintiff's Motion to Compel Discovery (doc. 86). Defendant shall, on or before January 22, 1998, fully *answer Interrogatory 1 and produce all documents* responsive to Requests 1, 2, 5, and 6 as set forth herein. Such production shall take place at the offices of counsel for plaintiff located at 1200 Main Street, Suite 1100, Kansas City, Missouri; or any other location agreed upon by the parties. Each party shall be responsible for its own costs and expenses incurred on the motion. Each side took defensible positions on at least part of the motion.

IT IS SO ORDERED.

1998 WL 13244 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

•          2:96CV02013          (Docket) (Jan. 08, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1983 U.S. Dist. LEXIS 13471, *

UNION NATIONAL BANK OF CHICAGO, et al., Plaintiffs, v. UNITED STATES FIRE INSURANCE COMPANY, et al., Defendants.

No. 82 C 5628

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

*1983 U.S. Dist. LEXIS 13471*

September 23, 1983

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiffs, bank and others, sought to prevent discovery of documents in their suit against defendants, insurer and others.

**OVERVIEW:** In a dispute between parties, plaintiffs sought to prevent discovery of documents by claiming that they were subject to attorney client privilege and were considered work product. On review, the court directed the discovery of certain documents and held that mere presence in an attorney's file did not give rise to a presumption of an attorney-client privilege. Additionally, the court held that documents containing information discoverable from the public record or relating to documents filed in court were not entitled to protection from discovery. The court also held that communications between counsel representing plaintiffs in other litigation but not in the litigation at issue were not automatically entitled to protection from discovery. The court then held that claimed privileges as to certain documents had been waived.

**OUTCOME:** The court ordered plaintiffs to produce certain documents that defendants sought.

**LexisNexis(R) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN1] It is not the role of the judicial officer to parcel through documents to apply a privilege not specifically claimed and a proper claim requires a specific designation and adequate description of the document within its scope.

*Evidence > Privileges > Attorney-Client Privilege*
[HN2] Merely because several counsel represent the same client in other litigation in which they are not co-counsel does not bring such documents within the attorney-client privilege.

*Evidence > Privileges > Attorney-Client Privilege*
*Civil Procedure > Disclosure & Discovery > Work Product*
[HN3] Mere presence of a document in an attorney's file does not give rise to a presumption of attorney-client privilege. Further, letters transmitting or exchanging fact information, information discoverable from public record, or relating to documents in court filed are not protected by either attorney-client privilege or work product.

**OPINIONBY:** [*1]

JURCO

**OPINION:**

ORDER

At the outset, counsel for plaintiffs is reminded [HN1] it is clearly not the role of the judicial officer to parcel through documents to apply a privilege not specifically claimed and that a proper claim requires a specific designation and adequate description of the document within its scope. Un-numbered documents are

1983 U.S. Dist. LEXIS 13471, *

not to be "dumped," causing delay in examination and ruling.

A review was completed of the documents tendered in camera with a somewhat awkward correlation by use of the May 18, 1983 counsel conference transcript. The general claim reflected at page 14 of the transcript conference was "that memorandum in house are both privileged and in some instances work-product and communications between attorneys and client and between lawyers representing the same client are attorney-client privilege." [HN2] Merely because several counsel represent the same client in other litigation in which they are not cocounsel does not bring such documents within the attorney-client privilege.

A review of the documents, correlating same with the transcript shows (1) many documents identified were not tendered and (2) some documents were tendered which were not identified in [*2] the conference transcript. All of these documents are to be produced, it being deemed that by non-production plaintiffs no longer seek their protection from production to defendants and as to those erroneously submitted no claim for protection has been made. These are producible to defendant as follows:

Documents Not Tendered

```
10/19/78   Letter from Vent to Lynch
10/10/78   Service statement from Johnston, Sayers to Seyfarth, Shaw
10/9/78    Letter from Vent to Sasser
12/12/77   Letter from Vent to Sasser
11/12/76   Memo from John Anderson to Mr. Vent
4/2/76     Calabrese to Vent
Undated    Letter, Mr. Lynch to Mark Lies
3/6/76     Mark Lies to Frank Lynch
2/19/76    Letter from Mark Lies to Frank Lynch
6/30/76    Letter from Lynch to Vent
Undated    Handwritten notes
1/17/76    Lynch to Vent
6/26/79    Joseph Pavola of Union National Top Vent
3/19/79    Frank Lynch to Tom Vent
4/5/80     Frank Lynch to Tom Vent
6/4/76     Lynch to Vent
Undated    Handwritten memo "Memorandum from the desk of Bob Watts"
           captioned "Shepherd"
2/22/79    Letter, Sales of Palm Beach to Judge Boofer
9/24/81    Memo Vent to Seyfarth
7/20/78    Lynch to Vent
12/9/82    From me (Johnson?) to Vent
           Handwritten notes, somebody in the law firm
6/23/82    Edwards to Vent with a statement for services
8/11/81    Donna Jacob of the Florida office of Seyfarth, Shaw to T.
           Vent
8/22/80    Vent memo to Seyfarth
6/28/78    "This may be a duplicate"
7/15/82    Draft of letter (or workup of a letter to Chris Pappas)
7/5/82     Tom Vent to Peter Woodford, memo
7/14/82    Peter Woodford to Tom Vent
5/24/82    Memo from Vent to Peter (Woodford)
Undated    Credit report
11/12/76   Anderson to Vent
11/14/76   Memo from Anderson to Vent
10/18/77   Statement for costs advanced on behalf of Union National
```

1983 U.S. Dist. LEXIS 13471, *

```
          Bank from
          Seyfarth
5/29/80   Memo from Vent to Lynch & Seyfarth re: Shepherd
          controversies
10/4/79   Letter from Yager to Vent
10/16/78  Letter from Sesser to Vent
```

[*3]                                    Documents Tendered -- Not Listed

```
10/28/76   Vent to Munger
1/26/77    Handwritten telephone message
1/27/77    Sasser to Vent
1/28/77    Anderson to Sassar
12/1/77    Vent to Sasser
7/1/81     Wells to Vent and Goldgehn
5/3/82     Woodford to Pappas
6/23/82    Edwards to Vent
8/11/82    Vent to Field
8/22/82    Handwritten note
Undated    Statement for services from 8/81 through 10/14/81 from
           Caldwell,
           Pacetti firm
```

In the review it was determined (1) that certain documents relating to the Hunt investigation and counsel advice and/or work product relating thereto, if any, had been effectively waived in 1981 by Mr. Henry Seyfarth, Chairman of the Board, as well as a member of the law firm of Seyfarth, Shaw, Fairweather & Geraldson; (2) that as to twelve identified documents which are in defendants' possession any claim of privilege and or work product has been waived. All of twelve waived documents were contained in the plaintiffs' in camera tender. Defendants' further argument of file waiver because these twelve documents were acquired by them from plaintiffs' counsel production of the entire file to defendants' expert, and Mr. Vent's alleged declaration at the conference [*4]  between present counsel for plaintiffs and defendants that the file being conferred on May 18, 1983 was same file examined by defendants' expert is based on inference. Clearly, when Mr. Vent appears for deposition the nature of identification of the file present at the counsel conference of May 18, 1983 as being the same as given to defendants' expert can be fully explored. If it had been disclosed, then we are performing an unnecessary task at this time, but we cannot conjecture that the alleged comments and the twelve documents possessed by defendants lead to a conclusion that all of these documents now tendered were given to defendants' expert. Documents to be produced on which waiver of privilege is found are:

```
10/17/80   Vent to Lynch
4/17/79    Vent to Seyfarth
6/28/78    Vent to Brown
6/28/78    Vent to Fairweather
11/2/77    Vent to Munger
10/24/77   Vent to Lynch
3/2/77     Vent to Brown
1/17/76    Lynch to Vent
2/8/82     Edwards to Vent
```

1983 U.S. Dist. LEXIS 13471, *

```
10/12/81   Vent to Edwards
10/6/81    Vent to Edwards
10/1/81    Mansfield to Vent
7/1/81     Wells to Seyfarth
4/29/81    Radford to Seyfarth
3/17/81    Rand to Radford
5/29/80    Vent to Lynch & Seyfarth & File
5/10/79    Seyfarth to Yager
```

[*5]

All handwritten notes found in the law firm file and tendered which are unidentified as to author and/or date are to be produced.   [HN3] Mere presence in an attorney's file does not give rise to a presumption of attorney-client privilege; work product has been claimed only to memoranda of in-house counsel.  Further, all letters transmitting or exchanging fact information, information discoverable from public record, or relating to documents in court filed are not protected by either attorney-client privilege or work product and are to be produced to defendant.

Defendants' argument that Union National Bank's designation for deposition under 30(b)(6) of its attorney Vent requires he testify as a party is correct.  It does not follow, however, that Union National Bank's right to claim the attorney-client privilege through such designation is waived. Plaintiffs have not interposed the "advice of counsel" issue when it designates its attorney as most knowledgeable of the facts giving rise to the present litigation. Cf. *Handguard, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D. Calif. 1976).*

The following documents are protected and plaintiffs need not produce the same to defendants. [*6]

```
6/23/81    Vent to Seyfarth
10/8/80    Vent to Lynch
1/13/78    Karlin to Vent
7/5/77     Karlin to Vent
12/14/76   Anderson to Vent
11/18/82   Wilbur to Vent
10/8/82    Lewis to Wilbur
9/14/82    Wilbur to Johnson, Green, Vent & Pappas
8/30/82    Woodford to Wilbur
7/26/82    Vent to Edwards
7/16/82    Vent to Pappas
7/7/82     Vent to Edwards
7/1/82     Vent to Edwards
7/1/82     Vent to Pappas
4/28/82    Edwards to Vent
11/13/81   Berkun to Woodford and Vent
10/21/81   Vent to File
4/29/81    TGV to HES
```

All documents ordered to be produced shall be produced by plaintiffs within five (5) days from date hereof.   Counsel for plaintiffs and defendants are requested to reclaim their respective documents in Room 2402.



Westlaw.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
**(Cite as: 2002 WL 598331 (D.Kan.))**

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
Henry L. HILL, Plaintiff,
v.
Brian McHENRY, et al., Defendants.
**No. CIV.A. 99-2026-CM.**

April 10, 2002.

MEMORANDUM AND ORDER

WAXSE.

*1 A hearing was held on Plaintiff's Motion to Compel Production of Documents (doc. 143) before the undersigned Magistrate Judge on April 8, 2002. Plaintiff appeared in person and through counsel Robert K. Ball. All Defendants except Brian McHenry appeared through counsel Mark A. Jess. Defendant Brian McHenry did not appear.

At the hearing, the Court denied in significant part the Motion to Compel. An order memorializing that ruling will be issued at a later date. The Court also made several rulings regarding the claims of privilege asserted by Defendants TCI of Overland Park, Inc. ("TCI") and Tele-Communications, Inc. ("Tele-Communications"). [FN1] This Order will expand on and memorialize those rulings.

> FN1. As the Court noted at the hearing, there is some confusion as to which of the defendants the Motion to Compel is directed. The Court ruled that the Motion was properly directed to only two of the defendants—TCI and Tele-Communications (which Plaintiff's Motion mistakenly refers to as Telecommunications). The Court ruled that the Motion could not be directed to TCI Holdings, Inc., as that entity was dismissed from the case on February 2, 2001. See doc. 95. The Court's rulings herein therefore apply only to TCI and Tele-Communications.

I. Background Information

TCI and Tele-Communications have objected to several of the requests for production that are the subject of the Motion to Compel on the basis that the requests called for TCI and/or Tele-Communications to produce documents protected by the attorney-client privilege and/or work product doctrine. They have provided Plaintiff with a privilege log describing the documents they contend are privileged or protected work product. See Ex. K attached to doc. 144.

TCI and Tele-Communications have also asserted that certain documents relating to Plaintiff's worker's compensation claim, which initially were in the possession of GAB Robins [FN2] (the third-party insurance administrator that handled Plaintiff's workers' compensation claim for TCI), are privileged and/or protected work product. TCI and Tele-Communications informed the Court at the hearing that their privilege log also lists these claimed privileged/protected documents.

> FN2. Plaintiff served a subpoena duces tecum on GAB Robins to obtain these documents. Rather than turning over the claimed privileged documents to Plaintiff, GAB Robins transferred them to counsel for TCI and Tele-Communications. TCI and Tele-Communications in turn listed the documents in the privilege log that was submitted to Plaintiff. They did not, however, file a motion to quash the subpoena as it applied to the privileged documents.

Plaintiff argues that TCI and Tele-Communications' privilege log is insufficient and does not satisfy their burden to describe the nature of the documents so as to enable Plaintiff to assess the applicability of the asserted privileges or work product protection. Plaintiff contends that TCI and Tele-Communications have waived the asserted privileges and work product protection.

II. Analysis

A. Rules Governing the Assertion of Privileges and Work Product Protection

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
(Cite as: 2002 WL 598331 (D.Kan.))

Page 2

Before addressing the sufficiency of Defendants' privilege log, the Court will set forth the rules regarding the assertion of privileges and work product protection. It is well established that the party asserting a privilege or work product protection has the burden of establishing that the privilege/protection applies. *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 680 (D.Kan.2000); *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995). To carry that burden, the party must make a "clear showing" that the asserted privilege/protection applies. *McCoo,* 192 F.R.D. at 680. Under Fed.R.Civ.P. 26(b)(5), a party that withholds documents based on privilege or work product protection, must "make the claim expressly and ... describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

*2 Based on Rule 26(b)(5), this Court has held that the party asserting the privilege/protection must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery. *McCoo,* 192 F.R.D. at 680; *National Union Fire Ins. Co. v. Midland Bancor, Inc .,* 159 F.R.D. 562, 567 (D.Kan.1994). The information provided must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied. *McCoo,* 192 F.R.D. at 680; *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995). A "blanket claim" as to the applicability of the privilege/work product protection does not satisfy the burden of proof. *McCoo,* 192 F.R.D. at 680; *Kelling v Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

B. Defendants' Privilege Log Is Deficient

The Court does not find that Defendants' privilege log meets these standards. In particular, the log does not identify the specific privilege/protection being asserted. Under the heading "Privilege Asserted," the log merely states, for each document listed, "Attorney-Client *and/or* Work Product Privileges." (Emphasis added.) The privilege log is also deficient in that it fails to state the purpose for which each document was created. In addition, it fails to fully identify the authors and recipients of the documents so as to allow the Court to determine that the documents are in fact communications between the attorney and client (as required for the attorney-client

privilege to apply) and/or that they were prepared by or for Defendants or their representatives (as required for the work product doctrine to apply). Because of these deficiencies, the Court is without sufficient information to determine whether each element of the asserted privilege/protection is satisfied.

Given TCI and Tele-Communications' failure to provide the required information, the Court could find waiver and grant Plaintiff's Motion to Compel as it applies to the claimed privileged/protected documents. The Court, however, will decline to do so. As the Court stated at the hearing, the Court will defer ruling on Plaintiff's Motion to Compel as it pertains to the claimed privileged/protected documents until such time as TCI and Tele-Communications have submitted an amended privilege log to Plaintiff.

C. Preparation of Amended Privilege Log and Briefing Schedule

In light of the above, the Court hereby directs TCI and Tele-Communications to prepare and submit to Plaintiff an amended privilege log. Said amended log shall be served on Plaintiff by *April 30, 2002.* TCI and Tele-Communications shall file a certificate of service verifying that the amended privilege log was served on Plaintiff.

The amended privilege log shall contain "a detailed description of the materials in dispute and ... specific and precise reasons for [their] claim of protection from disclosure." *Simmons Foods, Inc. v. Willis,* No. 97-4192-RDR, 2000 WL 204270, at *5 (D.Kan. Feb. 8, 2000) (quoting *Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 334 (D.Kan.1991); *Cypress Media, Inc. v. City of Overland Park,* 2000 WL 85362, at *13-14 (D.Kan. Jan. 28, 2000)). The amended log shall include at least the following information for each document withheld:

*3 1. A description of the document (*e.g.,* correspondence, memorandum);

2. Date prepared;

3. Date of document (if different from # 2);

4. Identity of the person(s) who prepared the document, including information sufficient to allow the Court to determine whether the document is a communication from the client's attorney and/or whether it was prepared by or for TCI or Tele-Communications or by or for one of their representatives;

5. Identity of the person(s) for whom the document was prepared and to whom the document was directed (including all copies), including

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
(Cite as: 2002 WL 598331 (D.Kan.))

Page 3

information sufficient to allow the Court to determine whether the document is a communication to the client;

6. Purpose of preparing the document;

7. Number of pages of the document;

8. Basis for withholding discovery of the document, *i.e.,* the specific privilege or protection being asserted; and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.

*See Simmons Foods,* 2000 WL 204270, at *5 (setting forth requirements for privilege log).

The amended privilege log shall include those claimed privileged/protected documents that GAB Robins turned over to counsel for TCI and Tele-Communications after Plaintiff served the subpoena duces tecum on GAB Robins. The log shall contain a notation to that effect for each such document.

By *May 7, 2002,* counsel for the parties shall confer within the meaning of D. Kan. Rule 37.2 and attempt to resolve the parties' dispute regarding privilege issues. In the event the parties are able to resolve their dispute, Plaintiff shall so notify the Court. In the event the parties are unable to resolve their dispute, TCI and Tele-Communications shall, by *May 14, 2002,* file a copy of their amended privilege log and provide to the Court (but not Plaintiff) copies of all documents listed in the amended privilege log for the Court's *in camera* inspection. By *May 14, 2002,* Plaintiff shall file a supplemental brief in support of his Motion to Compel with any arguments he wishes to make regarding the sufficiency of the amended privilege log and the asserted privileges/protection. TCI and Tele-Communications shall have *until May 24, 2002* to respond to Plaintiff's supplemental brief. The Court will defer ruling on all privilege and work product protection issues until such briefing is complete and the Court has reviewed *in camera* the documents provided by TCI and Tele-Communications.

IT IS SO ORDERED.

2002 WL 598331 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

• _____2:99CV02026_____(Docket) (Jan. 21, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 1

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
## CONFIDENTIALITY AS BASIS FOR PRIVILEGE

| No. | Bates Range | Date | Document Type | Author(s) | Addressee(s) | Copyee(s) | Priv Claim | Priv Description | Source |
|-----|-------------|------|---------------|-----------|--------------|-----------|------------|------------------|--------|
| 13 | | 10/29/01 | Memorandum | | | | AC | Confidential Memorandum Concerning Due Diligence for Third Party Open Source Software Distributions. | Files of Sharon Dobbs, Esq. |
| 41 | | Oct-99 | Memorandum | | | | AC | Confidential Draft Paper on Project Monterey and Dynix. | Files of Sharon Dobbs, Esq. |
| 43 | | 7/16/01 | Agreement | | | | AC | Confidential Draft Amendment 2 to Red Hat SOW. | Files of Sharon Dobbs, Esq. |
| 52 | | 9/8/00 | Notes | | | | AC | Confidential Summary of AIX 5L for IA-64 OEM Agreement Terms. | Files of Sharon Dobbs, Esq. |
| 57 | | Undated | Memorandum | | | | AC | Confidential Draft List of Questions Concerning Open Source / Freeware Pedigree Review. | Files of Sharon Dobbs, Esq. |
| 63 | | 4/3/01 | Chart | | | | AC | Confidential Charts Summarizing Various Legal Issues Relating to Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 64 | | 3/11/99 | Letter | | | | AC | Confidential Draft Letter to Santa Cruz Concerning Amendment 2 to Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |

1

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | | |
|---|---|---|---|---|---|---|
| 71 | 6/14/01 | Letter | | | AC | Confidential Draft of Letter to Santa Cruz Concerning Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 73 | 8/29/99 | Letter | | | AC | Confidential Draft Letter to Santa Cruz Regarding Draft Amendment 4 to Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 84 | Undated | Letter | | | AC | Confidential Draft Letter to Santa Cruz. Regarding Amendment 6 to Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 122 | 6/22/01 | Chart | | | AC | Confidential Chart Concerning AIX 5L. | Files of Sharon Dobbs, Esq. |
| 125 | Undated | Chart | | | AC | Confidential Chart Concerning Open Source Issues. | Files of Sharon Dobbs, Esq. |
| 147 | 4/5/01 | Agreement | | | AC | Confidential Draft Amendment to IBM/Thales SOW. | Files of Sharon Dobbs, Esq. |
| 148 | 4/6/01 | Agreement | | | AC | Confidential Draft Amendment to IBM/Thales SOW. | Files of Sharon Dobbs, Esq. |

**EXHIBIT 1**

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
## CONFIDENTIALITY AS BASIS FOR PRIVILEGE

| | | | | | | |
|---|---|---|---|---|---|---|
| 1042 | 11/20/98 | Memorandum | | AC | Confidential Memorandum with Handwritten Notes Regarding Data Center Products Agreement. | Files of Legal Department |
| 1043 | 11/20/98 | Memorandum | | AC | Confidential Memorandum Regarding Data Center Products Agreement. | Files of Legal Department |
| 1834 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Open Source Education. | Files of Herb Hintze, Esq. |
| 2477 | 7/28/03 | Agreement | | AC | Confidential Draft SOW with Red Hat. | Files of Drew Wright, Esq. |
| 2544 | Undated | Notes | | AC | Confidential Summary of Santa Cruz's Proposal Regarding Project Monterey Relationship. | Files of Legal Department |
| 2566 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Linux Maintainership. | Files of Christopher O'Neill, Esq. |
| 2567 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Linux Maintainership. | Files of Christopher O'Neill, Esq. |

3

EXHIBIT 1

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
CONFIDENTIALITY AS BASIS FOR PRIVILEGE

| 2576 | Undated | Notes | | AC | Confidential Handwritten Notes Regarding Linux Maintainership. | Files of Christopher O'Neill, Esq. |
|---|---|---|---|---|---|---|
| 2652 | 9/7/01 | Agreement | | AC | Confidential Draft SOW with SuSE. | Files of Christopher O'Neill, Esq. |
| 2663 | 9/7/01 | Agreement | | AC | Confidential Draft SOW with SuSE. | Files of Christopher O'Neill, Esq. |
| 2723 | 9/17/99 | Notes | | AC | Confidential Notes Concerning Negotiations with Compaq Regarding SSI Clusters on Monterey. | Files of Craig Cook, Esq. |
| 2724 | 9/17/99 | Notes | | AC | Confidential Notes Concerning Negotiations with Compaq Regarding SSI Clusters on Monterey. | Files of Craig Cook, Esq. |
| 2726 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Negotiations with Compaq Regarding SSI Clusters on Monterey. | Files of Craig Cook, Esq. |
| 2727 | 8/26/99 | Memorandum | Andy Wachs | AC | Confidential Memorandum Concerning Business Model for SSI Clusters on Monterey, with Handwritten Notes. | Files of Craig Cook, Esq. |

4

EXHIBIT 1

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

| | | | | | | |
|---|---|---|---|---|---|---|
| 2728 | 8/26/99 | Memorandum | Andy Wachs | | AC | Confidential Memorandum Concerning Business Model for SSI Clustering, with Handwritten Notes. | Files of Craig Cook, Esq. |
| 2734 | Undated | Notes | | | AC | Confidential Notes Concerning IBM / Intel UNIX Initiative Agreement with Handwritten Notes. | Files of Craig Cook, Esq. |
| 2748 | 4/30/99 | Agreement | | | AC | Confidential Draft Santa Cruz Source Disclosure Agreement with Handwritten Notes. | Files of David Cunnigham, Esq. |
| 2755 | 9/8/99 | Notes | | | AC | Confidential Notes Concerning IBM / Intel UNIX Partnerships. | Files of Craig Cook, Esq. |
| 2756 | 9/8/99 | Notes | | | AC | Confidential Draft Notes Concerning IBM / Intel UNIX Partnership. | Files of Craig Cook, Esq., and Jennifer Ivan, Esq. |
| 2764 | 1/22/99 | Agreement | | | AC | Confidential Draft Letter of Intent Between Sequent and Santa Cruz, with Handwritten Notes. | Files of David Cunningham, Esq. |
| 2765 | 3/25/99 | Agreement | | | AC | Confidential Draft Project Statement Between Sequent and Santa Cruz, with Handwritten Notes. | Files of David Cunnigham, Esq. |

5

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | | |
|---|---|---|---|---|---|---|
| 2768 | 3/25/99 | Agreement | | AC | Confidential Draft Project Statement 1 Between Sequent and Santa Cruz, with Handwritten Notes. | Files of David Cunningham, Esq. |
| 2769 | 2/3/99 | Notes | | AC | Confidential Handwritten Notes Concerning Source Licensing Agreement with Intel. | Files of Craig Cook, Esq. |
| 2772 | 4/26/00 | Email | | AC | Confidential Mark-Up of Email from Oracle Concerning Monterey Porting Amendment. | Files of Craig Cook, Esq. |
| 2795 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Project Monterey. | Files of Tom Tyson, Esq. |
| 2796 | 7/20/00 | Notes | | AC | Confidential Handwritten Notes Concerning AIX Code. | Files of Tom Tyson, Esq. |
| 2797 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Various AIX Issues. | Files of Tom Tyson, Esq. |
| 2799 | 2/12/01 | Notes | | AC | Confidential Handwritten Notes Regarding Various Linux Issues. | Files of Tom Tyson, Esq. |

6

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | |
|---|---|---|---|---|---|
| 2801 | 4/16/99 | Notes | | AC | Confidential Handwritten Notes and Attachment Concerning Trademark Search Regarding Monterey. | Files of Tom Tyson, Esq. |
| 2802 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Monterey Trademark. | Files of Tom Tyson, Esq. |
| 3386 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning IBM Meeting Discussing Santa Cruz / IBM Relationship. | Files of Sharon Dobbs, Esq. |
| 3387 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning IBM Meeting Discussing Santa Cruz / IBM Relationship. | Files of Sharon Dobbs, Esq. |
| 3388 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning IBM Meeting and Santa Cruz / IBM Relationship. | Files of Sharon Dobbs, Esq. |
| 3390 | Undated | Notes | | AC | Confidential Notes Concerning Proposed Contractual Terms for Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 3926 | 11/12/ | Notes | | AC | Confidential Handwritten Notes Concerning AIX Distribution and AIX toolbox. | Files of David Richardson, Esq. |

7

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT CONFIDENTIALITY AS BASIS FOR PRIVILEGE

EXHIBIT 1

| | | | | | | |
|---|---|---|---|---|---|---|
| 3948 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz Agreement with IBM. | Files of Austin Legal |
| 3975 | Undated | Memorandum | | AC | Confidential Draft Attachment 5 to Agreement for Licensing of Monterey Operating System and Platform Development Kit, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 3976 | 8/29/00 | File | | AC | Confidential Draft Agreements with Handwritten Notes for Licensing of AIX 5L for IA-64 Operating System and Platform Development Kit. | Files of Sharon Dobbs, Esq. |
| 3978 | 8/31/00 | Memorandum | | AC | Confidential Memorandum and Handwritten Notes Concerning AIX 5L for IA-64 OEM Agreement. | Files of Sharon Dobbs, Esq. |
| 3979 | Undated | Memorandum | | AC | Confidential Draft Memorandum Concerning AIX 5L for IA-64 OEM Agreement Terms, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 3981 | 9/6/00 | File | | AC | Confidential Draft Attachments to Agreement for Licensing of AIX 5L for IA-64 Operating System, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 3982 | Undated | File | | AC | Confidential Draft Memorandum Concerning AIX 5L for IA-64 OEM Agreement Terms, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | |
|---|---|---|---|---|---|
| 3983 | Various D | File | | AC | Confidential Draft Attachments to Agreement for Licensing of AIX 5L for IA-64 Operating System, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 4004 | Undated | Memorandum | | AC | Confidential Draft Executive Summary of Santa Cruz / IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4006 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4007 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4008 | Undated | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4010 | 10/24/ | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4013 | 04/06/ | Notes | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |

9

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| 4014 | 04/06/ | Notes | | | | AC | Confidential Handwritten Notes Concerning Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
|---|---|---|---|---|---|---|---|---|
| 4015 | 03/24/ | Notes | | | | AC | Confidential Handwritten Notes Concerning Licensing Differences under Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |
| 4017 | 6/22/01 | Memorandum | | | | AC | Confidential Draft Proposed Monterey Transition Plan, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 4018 | 6/22/01 | Memorandum | | | | AC | Confidential Draft Proposed Monterey Transition Plan, with Handwritten Notes. | Files of Sharon Dobbs, Esq. |
| 4025 | 06/11/ | Notes | | | | AC | Confidential Handwritten Notes Concerning Monterey Transition Issues. | Files of Sharon Dobbs, Esq. |
| 4026 | Undated | Notes | | | | AC | Confidential Handwritten Notes Regarding Monterey Transition Issues. | Files of Sharon Dobbs, Esq. |
| 4027 | Undated | Notes | | | | AC | Confidential Handwritten Notes Regarding Monterey Transition Issues. | Files of Sharon Dobbs, Esq. |

10

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| 4028 | Undated | Notes | | | AC | Confidential Handwritten Notes Concerning Monterey Transition Issues. | Files of Sharon Dobbs, Esq. |
|---|---|---|---|---|---|---|---|
| 4032 | 04/27/ | Notes | | | AC | Confidential Handwritten Notes Concerning Certification Under Agreement with Santa Cruz. | Files of Sharon Dobbs, Esq. |
| 4033 | 04/16/ | Notes | | | AC | Confidential Handwritten Notes Concerning AIX5L Support. | Files of Sharon Dobbs, Esq. |
| 4043 | 04/02/ | Notes | | | AC | Confidential Handwritten Notes Concerning SCO Support Contract. | Files of Sharon Dobbs, Esq. |
| 4048 | Undated | Notes | | | AC | Confidential Handwritten Notes Concerning Project Monterey Confidentiality and Intel. | Files of Sharon Dobbs, Esq. |
| 4049 | 04/12/ | Notes | | | AC | Confidential Handwritten Notes Concerning Project Monterey Confidentiality and Intel. | Files of Sharon Dobbs, Esq. |
| 4052 | 03/23/ | Notes | | | AC | Confidential Handwritten Notes Concerning AIX/Monterey Issues. | Files of Sharon Dobbs, Esq. |

11

EXHIBIT 1

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

| | | | | | |
|---|---|---|---|---|---|
| 4122 | Undated | Memorandum | | AC | Confidential Project Monterey Overview. | Files of Legal Department |
| 4834 | 1/11/02 | Memorandum | | AC | Confidential Draft Memorandum Regarding Technical Due Diligence Guidelines for IBM Employees Receiving Open Source Code from Outside IBM | Files of Pryor Garnett, Esq. |
| 4837 | 1/3/02 | Memorandum | | AC | Confidential Memorandum Regarding Draft Open Source Technical Due Diligence Guidelines for IBM Employees Receiving Open Source Code from Outside IBM | Files of Pryor Garnett, Esq. |
| 4838 | 12/4/01 | Memorandum | | AC | Confidential Memorandum Regarding Draft Open Source Technical Due Diligence Guidelines for IBM Employees Receiving Open Source Code from Outside IBM | Files of Pryor Garnett, Esq. |
| 4847 | 3/11/03 | Memorandum | | AC | Confidential Draft Memorandum Concerning IBM Linux-Related Marketing Plan. | Files of Drew Wright, Esq. |
| 4852 | 6/30/03 | Agreement | | AC | Confidential Draft SOW with Red Hat. | Files of Drew Wright, Esq. |
| 4853 | 8/25/03 | Agreement | | AC | Confidential Draft SOW with Red Hat. | Files of Drew Wright, Esq. |

12

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| No. | Bates | Date | Type | | AC | Description | Files |
|---|---|---|---|---|---|---|---|
| 4854 | | 8/25/03 | Agreement | | AC | Confidential Draft SOW with Red Hat. | Files of Drew Wright, Esq. |
| 4857 | | 12/16/02 | Agreement | | AC | Confidential Draft Strategic Development and Marketing Agreement with SuSE. | Files of Drew Wright, Esq. |
| 4858 | | 5/1/03 | Agreement | | AC | Confidential Draft Master SOW with SuSE. | Files of Drew Wright, Esq. |
| 4863 | | 7/11/03 | Agreement | | AC | Confidential Draft Amendment 2 to SOW with SuSE. | Files of Drew Wright, Esq. |
| 5382 | 1710191504-1710191509 | 1/31/00 | Memorandum | | AC | Redaction of Handwritten Notes Concerning Draft Monterey for IA-64 OEM Platform Compliance Common IBM and Santa Cruz Procedures. | Files of Sharon Dobbs, Esq. |
| 5383 | | Undated | Notes | | AC | Confidential Notes Concerning Monterey Compliance Testing. | Files of Sharon Dobbs, Esq. |
| 5393 | | Undated | Notes | | AC | Confidential Handwritten Notes Concerning IBM and Intel Joint ISV Fund. | Files of Craig Cook, Esq. |

13

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

**EXHIBIT 1**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5394 | 1/6/99 | Memorandum | | | | AC | Confidential Draft Memorandum Concerning Monterey on IA-64 Fund for ISV's with Handwritten Notes. | Files of Craig Cook, Esq. |
| 5401 | 1710183891- 1710183895 | 10/20/98 | Memorandum | | | | AC | Redaction of Handwritten Notes on Memorandum Concerning AIX on IA 64 Fund. | Files of Craig Cook, Esq. |
| 5404 | 1710184081- 1710184090 | 6/8/90 | File | Betsy Querry | Clemmie Basinger | Jim Keniston | AC | Redaction of Handwritten Notes Concerning Supplement 37 to Software Agreement Between Sequent and AT&T. | Files of Mary Egan, Esq. |
| 5586 | | Undated | Memorandum | | | | AC | Confidential Memorandum with Handwritten Notes Regarding Schedule X to Agreement with Intel Regarding Project Monterey. | Files of Craig Cook, Esq. |
| 6002 | | 10/16/00 | Memorandum | | | | AC | Confidential Draft Outline of OSDL Policies and Procedures, Including Handwritten Notes. | Files of Mary Egan, Esq. |
| 6004 | | Undated | File | | | | AC | Confidential Memorandum and Draft Agreement with OSDL. | Files of Mary Egan, Esq. |
| 6127 | | 7/6/00 | Notes | | | | AC | Handwritten Notes Concerning Federal Application to Ship Dynix Internationally. | Files of Mary Egan, Esq. |

14

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| 6128 | | Undated | Notes | | | AC | Handwritten Notes Concerning Federal Application to Ship Dynix Internationally. | Files of Mary Egan, Esq. |
|---|---|---|---|---|---|---|---|---|
| 6148 | | 5/9/00 | Notes | | | AC | Handwritten Notes Concerning Federal Application to Ship Dynix Internationally. | Files of Mary Egan, Esq. |
| 6151 | | 5/8/00 | Notes | | | AC | Handwritten Notes Concerning Federal Application to Ship Dynix Internationally. | Files of Mary Egan, Esq. |
| 6164 | | 2/23/96 | Notes | | | AC | Handwritten Notes Concerning Restricted Use Agreement with Santa Cruz. | Files of Mary Egan, Esq. |
| 6169 | 1710190500-1710190500 | Undated | Notes | | | AC | Redaction of Handwritten Notes Concerning Open Source Meeting Invitation. | Files of Mary Egan, Esq. |
| 6180 | | 4/30/97 | Memorandum | | | AC | Confidential Memorandum Concerning Amendment 3 to Santa Cruz / Sequent Motif 1.2 Contract. | Files of Mary Egan, Esq. |
| 6181 | | 3/6/96 | Memorandum | | | AC | Confidential Memorandum Concerning Amendment 2 to Software Porting Agreement with Santa Cruz. | Files of Mary Egan, Esq. |

15

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | |
|---|---|---|---|---|---|
| 6189 | Undated | Memorandum | | AC | Confidential Memorandum Concerning Amendment 3 to Santa Cruz / Sequent Motif 1.2 Contract. | Files of Mary Egan, Esq. |
| 6190 | 3/6/96 | Memorandum | | AC | Confidential Memorandum Concerning Amendment 2 to Software Porting Agreement with Santa Cruz. | Files of Mary Egan, Esq. |
| 6191 | 4/30/97 | Memorandum | | AC | Confidential Memorandum Regarding Amendment 3 to Santa Cruz / Sequent Motif 1.2 Contract. | Files of Mary Egan, Esq. |
| 6192 | 4/30/97 | Memorandum | | AC | Confidential Memorandum Regarding Amendment 3 to Santa Cruz / Sequent Motif 1.2 Contract. | Files of Mary Egan, Esq. |
| 6193 | 3/6/96 | Memorandum | | AC | Confidential Memorandum Regarding Amendment 2 to Software Porting Agreement with Santa Cruz. | Files of Mary Egan, Esq. |
| 6197 | Undated | Notes | | AC | Handwritten Notes Concerning OSDL Loaner Agreement. | Files of Mary Egan, Esq. |
| 6825 | 6/22/00 | File | | AC | Confidential File of Handwritten Notes and Email Prepared Regarding Santa Cruz/IBM JDA. | Files of Sharon Dobbs, Esq. |

16

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

EXHIBIT 1

| | | | | | | |
|---|---|---|---|---|---|---|
| 6894 | 4/30/99 | Agreement | | AC | Mark-up of Confidential Draft Engineering Services Agreement with Sequent and Santa Cruz. | Files of Mary Egan, Esq. |
| 6895 | 3/25/99 | Agreement | | AC | Mark-up of Confidential Draft Project Statement 1 Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6896 | 3/25/99 | Agreement | | AC | Mark-up of Confidential Draft Alliance Agreement Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6902 | 4/30/99 | Agreement | | AC | Mark-up of Draft Confidential Draft Product Development Project Statement Between Sequent and Santa Cruz. | Files of Mary Egan, Esq. |
| 6903 | 4/30/99 | Agreement | | AC | Mark-up of Confidential Draft Alliance Agreement Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6904 | 4/26/99 | Agreement | | AC | Mark-up of Confidential Draft Project Statement 1 Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6905 | 4/30/99 | Agreement | | AC | Mark-up of Confidential Draft Source Code License for Unixware Between Sequent and Santa Cruz. | Files of Mary Egan, Esq. |

17

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
CONFIDENTIALITY AS BASIS FOR PRIVILEGE

EXHIBIT 1

| | | | | | | |
|---|---|---|---|---|---|---|
| 6906 | 1/22/99 | Agreement | | | AC | Mark-up of Confidential Draft Letter of Intent Regarding Project Monterey Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6907 | 3/25/99 | Agreement | | | AC | Mark-up of Confidential Draft Alliance Agreement Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6908 | 3/25/99 | Agreement | | | AC | Mark-up of Confidential Draft of Schedule for Project Statement 1 Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6909 | 3/15/99 | Agreement | | | AC | Mark-up of Confidential Draft of Project Statement 3 to the Alliance Agreement Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6910 | 3/25/99 | Agreement | | | AC | Mark-up of Confidential Draft of Project Schedule 1 to the Alliance Agreement Between Santa Cruz and Sequent. | Files of Mary Egan, Esq. |
| 6911 | Undated | Agreement | | | AC | Mark-up of Confidential Draft of SubLicensing Agreement from Santa Cruz. | Files of Mary Egan, Esq. |
| 6912 | 1/12/99 | Agreement | | | AC | Mark-up of Confidential Draft of Letter of Intent Regarding Joint-Cooperation Agreement Concerning Project Monterey. | Files of Mary Egan, Esq. |

18

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
CONFIDENTIALITY AS BASIS FOR PRIVILEGE

EXHIBIT 1

| 7125 | 10/23/02 | Email | | AC | Confidential Mark-Up of AIX Source Code License. | Files of David Richardson, Esq. |
|---|---|---|---|---|---|---|
| 7910 | Undated | Agreement | | AC | Confidential Drafts of Pre-Load SOW with Red Hat. | Files of Drew Wright, Esq. |
| 7943 | Undated | File | | AC | Confidential File with Memoranda and Draft MOU with Intel. | Files of Legal Department |
| 7944 | Undated | Agreement | | AC | Confidential File Containing Draft SOW with Red Hat, with Handwritten Notes and Changes. | Files of Christopher O'Neill, Esq. |
| 7946 | 12/20/98 | Memorandum | | AC | Confidential Draft Memorandum Concerning Guidelines for Porting IBM Products to Linux. | Files of Christopher O'Neill, Esq. |
| 7963 | 1999 | Memorandum | | AC | Confidential Memorandum Concerning Project Monterey Legal Issues. | Files of David Hall |
| 7997 | Undated | Notes | | AC | Confidential Handwritten Notes Regarding AIX on iSeries. | Files of David Richardson, Esq. |

19

EXHIBIT 1

**IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT**
**CONFIDENTIALITY AS BASIS FOR PRIVILEGE**

| 7998 | Undated | Notes | | AC | Confidential Handwritten Notes Regarding AIX Toolbox for Linux. | Files of David Richardson, Esq. |
|---|---|---|---|---|---|---|
| 8000 | Undated | File | | AC | Confidential Notes and Draft Charts Regarding Open Source Education. | Files of David Richardson, Esq. |
| 8030 | 7/22/99 | Fax | Teri Hunt | Rich Crowley | AC | Confidential Fax and Draft Agreement with Handwritten Notes and Changes Concerning IBM / Intel License Agreement. | Files of Sharon Dobbs, Esq. |
| 8044 | 3/14/95 | Memorandum | | | AC | Confidential Memorandum and Handwritten Notes Concerning Intel / Sequent SOW. | Files of Lynn Sunahara, Esq. |
| 8048 | Undated | File | | | AC | Confidential Draft Memoranda and Handwritten Notes Concerning Draft Dynix Agreement. | Files of Lynn Sunahara, Esq. |
| 8179 | 1/20/03 | Agreement | | | AC | Confidential Draft Amendment 4 to Master SOW with SuSE. | Files of Drew Wright, Esq. |
| 8180 | 11/25/02 | Agreement | | | AC | Confidential Draft Amendment 2 to Master SOW with SuSE. | Files of Drew Wright, Esq. |

20

EXHIBIT 1

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT ASSERT
## CONFIDENTIALITY AS BASIS FOR PRIVILEGE

| 8181 | 12/20/02 | Agreement | | | AC | Confidential Draft Amendment 1 to Master SOW with SuSE. | Files of Drew Wright, Esq. |
|------|----------|-----------|--|--|----|--------------------------------------------------------|---------------------------|

21



EXHIBIT 2

IBM PRIVILEGE LOG DOCUMENT ENTRIES
THAT FAIL TO LIST NAMES IN E-MAIL LISTS

| No. | Bates Range | Date | Document Type | Author(s) | Addressee(s) | Copyee(s) | Priv Claim | Priv Description | Source |
|---|---|---|---|---|---|---|---|---|---|
| 4672 | 1710184147-1710184149 | 7/20/01 | Email | Daisy Chang | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from Pryor Garnett, Esq. Regarding Open Sourcing of SCTP Development Work. | Files of Dipankar Sarma |
| 4677 | 1710184094-1710184095 | 11/18/99 | Email String | Don Norton | Monterey Software Group | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding ptx Code Contributions to Project Monterey. | Files of Dipankar Sarma |
| 4761 | | 6/8/01 | Email | Jaye Martin, Esq. | SGMANAGERS | Jaye Martin, Esq. Eileen Roper | AC | Confidential Email Providing Legal Advice Regarding Guidelines for Open Source Projects. | Files of Bill Sandve |
| 4840 | 1710189014-1710189015 | 3/24/03 | Email | Janice Girouard | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Providing Legal Advice from IBM Legal Regarding NetWork Device Driver Status Report. | Files of Dave Hansen |
| 4995 | | 8/21/84 | Email | Mark Wegman | MSB | | AC | Confidential Email Forwarding Information Requested by Counsel in Connection with Legal Advice Concerning '746 Patent Application. | Files of Mark Wegman |
| 6281 | 1710190613-1710190620 | 8/6/02 | Presentation | LTC Storage Team | | | AC | Redaction of Confidential Open Source Presentation Concerning Legal Advice from Bob Carwell, Esq. and Christopher O'Neill, Esq. Regarding Linux SCSI Subsystem Maintainership. | Files of David Richardson, Esq. |

1

EXHIBIT 2

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT FAIL TO LIST NAMES IN E-MAIL LISTS

| | | | | | | AC | | |
|---|---|---|---|---|---|---|---|---|
| 6289 | 10/11/02 | Email String | Warren Washington | Adalio Sanchez Per Larsen Daniel Frye Nicholas Bowen Chuck Bryan Karl Freund Terri Pensock | Linux PDT Core Bill Sandve | AC | Confidential Email Concerning Legal Advice from Sharon Dobbs, Esq. Regarding SuSE Agreement Regarding pSeries. | Files of Daniel Frye |
| 6791 | 6/8/01 | Email | Jaye Martin, Esq. | SGMANAGER S LOTUS 0001 SGMANAGER S US 0001 SGMANAGER S US 0002 SGMANAGER S US 0003 SGMANAGER S US 0004 SGMANAGER S US 0005 SGMANAGER S US 0006 SGMANAGER S US 0007 SGMANAGER S US00 0001 SGMANAGER S US01 0001 | Jaye Martin, Esq. Eileen Roper | AC | Confidential Email Providing Legal Advice Concerning Compliance with Open Source Guidelines. | Files of Nick Bowen |
| 7218 | 1701940 48-1701940 49 | 3/24/03 | Email | Janice Girouard | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from IBM Legal Concerning Netperf Proposal. | Files of Paul McKenney |

EXHIBIT 2

**IBM PRIVILEGE LOG DOCUMENT ENTRIES**
**THAT FAIL TO LIST NAMES IN E-MAIL LISTS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7221 | 1710194165-1710194166 | 4/20/01 | Email | Peter Zannucci | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Patents and Ghostscript Patch. | Files of David Engebretsen |
| 7228 | 1710193972-1710193974 | 10/22/01 | Email | Doc Shankar | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from Grant Johnson, Esq. Concerning Enterprise Identity Mapping. | Files of Paul McKenney |
| 7248 | 1710194162-1710194164 | 10/22/01 | Email | Doc Shankar | ltc@linux.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from Grant Johnson, Esq. Concerning Enterprise Identity Mapping. | Files of Mark Vanderwiele |
| 7301 | 1710191957-1710191961 | 11/26/01 | Email | Gerrit Huizenga | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from IBM Legal Regarding Contribution to OSDL. | Files of David Engebretsen |
| 7302 | 1710191962-1710191966 | 12/17/01 | Email | Gerrit Huizenga | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from IBM Legal Regarding Contribution to OSDL. | Files of David Engebretsen |
| 7330 | 1710192131-1710192132 | 2/21/01 | Email | Thomas Gall | Daniel Frye Hans Tannenberger ltc@Linux.ibm.com Dwayne McConnell | Sheel Thaur John Scales Kaena Freitas Mickey Purohit | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Power PC Maintainership Status. | Files of Daniel Frye |
| 7341 | 1710192190-1710192192 | 7/22/02 | Email | Chris McDermott | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from IBM Legal Concerning LTC xSeries Status Report. | Files of Bruce Jones |

3

EXHIBIT 2

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT FAIL TO LIST NAMES IN E-MAIL LISTS

| # | Bates | Date | Type | From | To | AC | Description | Files |
|---|---|---|---|---|---|---|---|---|
| 7361 | 1710192522-1710192523 | 2/6/01 | Email | Gerrit Huizenga | ltc@Linux.ibm.com | Daniel Frye | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux on IA-64 Status Issues. | Files of Daniel Frye |
| 7363 | 1710192527-1710192527 | 12/29/98 | Email | Harald Milz | open-source@raleigh.ibm.com | | AC | Redaction of Confidential Email concerning Legal Advice from IBM Legal Regarding Linux OSS. | Files of Daniel Frye |
| 7385 | 1710192640-1710192641 | 3/23/01 | Email String | Ulrich Weigand | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux for zSeries Open Source Issue. | Files of Daniel Frye |
| 7386 | 1710192642-1710192644 | 12/20/02 | Email | | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux Clients Web Interface. | Files of Daniel Frye |
| 7442 | 1710192892-1710192894 | 9/23/02 | Email | Richard Moore | Tom Hanrahan | ltc@Linux.ibm.com Dave Cameron Randy Kalmeta Gordon Bell | AC | Redaction of Confidential Email Concerning Legal Advice from Pryor Garnett, Esq. Regarding Contribution of Code to External Projects. | Files of Dave Hanson |
| 7455 | 1710192965-1710192968 | 7/27/01 | Email | Ulrich Weigand | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Production Quality Code Drop for 2.4 Kernel. | Files of Dipankar Sarma |

4

EXHIBIT 2

**IBM PRIVILEGE LOG DOCUMENT ENTRIES**
**THAT FAIL TO LIST NAMES IN E-MAIL LISTS**

| | | | | | | |
|---|---|---|---|---|---|---|
| 7456 | 1710192969-1710192971 | 6/22/01 | Email | Ulrich Weigand | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux for zSeries Issues. | Files of Dipankar Sarma |
| 7457 | 1710192972-1710192974 | 6/20/01 | Email | Sridhar Samudrala | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Open Source of PAQ Patch. | Files of Dipankar Sarma |
| 7458 | 1710192975-1710192977 | 4/20/01 | Email | Tom Gall | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding PPC Linux Kernel Hosting Proposal. | Dipankar Sarma |
| 7459 | 1710192978-1710192980 | 4/20/01 | Email | Peter Zamucci | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Open Source of Ghostscript Patch. | Files of Dipankar Sarma |
| 7460 | 1710192981-1710192985 | 4/20/01 | Email | Khoa Huynh | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from Pryor Garnett, Esq. Regarding Off-Site Binary Kernel Proposal. | Files of Dipankar Sarma |
| 7461 | 1710192986-1710192988 | 4/23/01 | Email | Ulrich Weigand | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux for zSeries Issues. | Files of Dipankar Sarma |
| 7462 | 1710192989-1710192991 | 5/18/01 | Email | Peter Zamucci | ltc@Linux.ibm.com | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Open Source of Ghostscript Patch. | Files of Dipankar Sarma |

**EXHIBIT 2**

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT FAIL TO LIST NAMES IN E-MAIL LISTS

| | Bates | Date | Type | From | To | CC | Priv | Description | Source |
|---|---|---|---|---|---|---|---|---|---|
| 7463 | 1710192992-1710192995 | 5/21/01 | Email | Richard Moore | Tom Hanrahan | Randy Kalmeta ltc@Linux.ibm.com Brendan Blake Daniel Frye | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Open Source of RAS Package. | Files of Dipankar Sarma |
| 7464 | 1710192996-1710192998 | 5/23/01 | Email | Ulrich Weigand | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux for zSeries Issues and Free Software Foundation Assignment. | Files of Dipankar Sarma |
| 7465 | 1710192999-1710193002 | 3/20/01 | Email | Gerrit Huizenga | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux on IA-64 Regarding GCC Tools. | Files of Dipankar Sarma |
| 7466 | 1710193003-1710193005 | 3/23/01 | Email String | Ulrich Weigand | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux for zSeries Issues and gcc Backend. | Files of Dipankar Sarma |
| 7468 | 1710193010-1710193012 | 3/24/03 | Email | George Kraft | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Free Software Group's Royalty Policy. | Files of Patricia Gaughen |
| 7483 | 1710193157-1710193158 | 5/21/03 | Email | Alan Robertson | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding Linux Patent Work. | Files of Mark Vanderwiele |

6

**EXHIBIT 2**

**IBM PRIVILEGE LOG DOCUMENT ENTRIES**
**THAT FAIL TO LIST NAMES IN E-MAIL LISTS**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7504 | 1710193424-1710193428 | 2/6/01 | Email String | Gerrit Huizenga | ltc@Linux.ibm.com | Daniel Frye | AC | Redaction of Confidential Email Concerning Legal Advice from IBM Legal Regarding OLS Sponsorship, & FSF Assignment, and Linux on IA-64. | Files of Dipankar Sarma |
| 7505 | 1710193421-1710193423 | 8/20/01 | Email | Larry Kessler | ltc@Linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from IBM Legal Regarding Event Logging Software. | Files of Dipankar Sarma |
| 7518 | 1710194531-1710194532 | 2/15/01 | Email | Steve Gerdt | OSSC | OSSC Core OSSC Ext OSSC FYI Michel Considine Jeffrey Scheel Adrian Schuur Peter Badovinatz Peppy McKeon Bill Abt Satya Sharma Larry Troan Jim Amsden Paul Buck Mary Grimes, Esq. George O'Hanlon, Esq. Dan McConnell Amy Fliegelman-Olli, Esq. | AC | Redaction of Confidential Email Requesting Legal Advice Concerning Follow Up Items for 1/23/01 OSSC Minutes. | Files of George O'Hanlon, Esq. |

7

IBM PRIVILEGE LOG DOCUMENT ENTRIES
THAT FAIL TO LIST NAMES IN E-MAIL LISTS

EXHIBIT 2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7520 | 1710194537-1710194544 | 3/24/03 | Email | Steve Frank | OSSC-Exec OSSC-Core | | AC | Redaction of Confidential Email and Attachment Providing Legal Advice from Gerald Woods, Esq., Edward Duffield, Esq. and Drew Wright, Esq. Concerning OSSC Toolkit Proposal. | Files of Daniel Frye |
| 7559 | 1710195042-1710195046 | 4/20/01 | Email String | Susan Jaeschke | ltc@linux.ibm.com | | AC | Redaction of Confidential Email Reflecting Legal Advice from Sharon Dobbs, Esq. and Paul Bercow, Esq. Concerning Open Source Training. | Files of Dipankar Sarma |
| 7835 | 1710195428-1710195430 | 3/7/01 | Email String | Steve Gerdt | OSSC-Core | | AC | Redaction of Confidential Email Requesting Legal Advice from IBM Legal Concerning OSSC / IP Legal Issues in Japan. | Files of George O'Hanlon, Esq. |
| 7847 | 1710195481-1710195482 | 7/9/03 | Email | David Shields | OSSC-Exec | Buddy Tapp Martin McKinley, Esq. Drew Wright, Esq. OSSC-Core | AC | Redaction of Confidential Email and Attachment Reflecting Legal Advice Concerning VMWare ESX Server. | Files of Drew Wright, Esq. |
| 7857 | 1710195537-1710195543 | 7/9/03 | Email String | David Shields | OSSC-Exec | Buddy Tapp Martin McKinley, Esq. Drew Wright, Esq. OSSC-Core | AC | Redaction of Confidential Email and Attachment Reflecting Legal Advice Regarding xSeries / VMWare OSSC Proposal. | Files of Drew Wright, Esq. |

EXHIBIT 2

**IBM PRIVILEGE LOG DOCUMENT ENTRIES**
**THAT FAIL TO LIST NAMES IN E-MAIL LISTS**

| 8117 | 6/17/03 | Email | Steven Frank | OSSC-Exec | Kurt Taylor Marilyn Dawkins, Esq. Lily Neff, Esq. David Richardson, Esq.  Michael Sandler, Esq. | AC | Confidential Email and Attachment Requesting Legal Advice Concerning OSSC Online Review. | Files of Lisa Dare |
|---|---|---|---|---|---|---|---|---|

9

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT MERELY COPY A LAWYER

| No. | Bates Range | Date | Document Type | Author(s) | Addressee(s) | Copyee(s) | Priv Claim | Priv Description | Source |
|-----|-------------|------|---------------|-----------|--------------|-----------|------------|------------------|--------|
| 200 | | 4/2/03 | Email | Bill Buros | Bill Maron | Carole Gottleib Bill Clark Margie Blevins Alan Dimisko Sanda Ellett-Salmoran David Richardson, Esq. Kaena Freitas Robert Acosta Robert Ruyle | AC/WP | Confidential Email Concerning Legal Advice Regarding AIX and Linux. | Files of Kaena Freitas |
| 213 | | 6/29/01 | Email | Warren Washington | Helene Armitage Per Larsen | Ron Saint Pierre Bill Casey Sharon Dobbs, Esq. William Saulnier David Hall | AC | Confidential Email Forwarding Information Requested by Counsel Concerning AIX Development. | Files of David Hall |
| 5564 | | 1/29/99 | Email String | Craig Schneider | David Hall | Jennifer Ivan, Esq. Conway Wharton Ron Saint Pierre Hye-Young McCreary Haig McNamee | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

1

EXHIBIT 3

IBM PRIVILEGE LOG DOCUMENT ENTRIES
THAT MERELY COPY A LAWYER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5565 | 2/2/99 | Email String | David Hall | Ron Smith Bill Freeman | Craig Schneider Jennifer Ivan, Esq. Ron Saint Pierre Hye-Young McCreary | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5567 | 1/13/99 | Email String | Craig Schneider | Ron Saint Pierre | David Hall Jennifer Ivan, Esq. Ken Wischer | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5568 | 1/13/99 | Email String | Ron Saint Pierre | Craig Schneider Kim Tran | David Hall Jennifer Ivan, Esq. Ken Wischer | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5575 | 1/3/00 | Email String | Craig Schneider | David Hall | Jim Gugleta Eric Nelson Sharon Dobbs, Esq. Conway Wharton | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5577 | 2/3/00 | Email | Conway Wharton | Ron Saint Pierre | Craig Schneider Sharon Dobbs, Esq. Haig Mcamee | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

2

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT MERELY COPY A LAWYER

| | | | | | | AC | | |
|---|---|---|---|---|---|---|---|---|
| 5578 | 12/15/98 | Email String | David Hall | Steven Naspany Hye-Young McCreary Michael Day David Mehaffy | Craig Schneider Ken Stokes Margie Blevins Ken Wischer Thomas Chen Jennifer Ivan, Esq. Dave Higgins Ron Saint Pierre | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5582 | 2/1/99 | Email String | Craig Schneider | David Hall | Jennifer Ivan, Esq, Ron Saint Pierre Hye-Young McCreary Haig McNamee | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5583 | 12/14/98 | Email | Craig Schneider | David Hall | Jennifer Ivan, Esq. Christopher O'Neill, Esq. | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5584 | 3/9/99 | Email String | Craig Schneider | Ron Saint Pierre | Jeri Hlsabeck Conway Wharton Jennifer Ivan, Esq. Joyce Bolton | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

3

EXHIBIT 3

IBM PRIVILEGE LOG DOCUMENT ENTRIES
THAT MERELY COPY A LAWYER

| 5642 | 3/1/00 | Email String | Craig Schneider | David Hall | David Bullis Sharon Dobbs, Esq. Greg Althaus Hye-Young McCreery | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
|---|---|---|---|---|---|---|---|---|
| 5652 | 2/8/00 | Email String | Conway Wharton | Ron Saint Pierre | Sharon Dobbs, Esq. Craig Schneider | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5658 | 1/18/00 | Email String | Craig Schneider | David Hall | Sharon Dobbs, Esq. Daniela Combe, Esq. Haig McNamee Conway Wharton | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5733 | 12/11/98 | Email String | Craig Schneider | David Hall | Jennifer Ivan, Esq. Christopher O'Neill, Esq. | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7060 | 11/22/99 | Email String | Gerry Hackett | Samy Muthusamy | Ron Lauderdale, Esq. Daniela Combe, Esq. Rajiv Samant Douglas Grose Tilak Agerwala Thomas Keith Thomas Bloomquist | AC | Confidential Email Forwarding Infomation to Counsel Concerning Santa Cruz / IBM Monterey Issues. | Files of Daniela Combe, Esq. |

4

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT MERELY COPY A LAWYER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7143 | 2/8/99 | Email String | Craig Schneider | David Hall | Hye-Young McCreary Jennifer Ivan, Esq. Haig McNamee | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7146 | 2/15/99 | Email String | Conway Wharton | David Hall | Craig Schneider Ron Saint Pierre Jennifer Ivan, Esq. | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7148 | 1/8/99 | Email String | Conway Wharton | Hye-Young McCreary | Jennifer Ivan, Esq., Craig Schneider | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7157 | 1/28/99 | Email String | Conway Wharton | Hye-Young McCreary | David Hall Jennifer Ivan, Esq. | AC | Confidential Email Forwarding Information to Counsel Concerning New AIX Source Code to Santa Cruz. | Files of Craig Schneider |
| 7149 | 1/12/00 | Email | Conway Wharton | Esther Sun | David Hall Ron Saint Pierre Robert Ruyle Craig Schneider Sharon Dobbs, Esq. | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

5

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT MERELY COPY A LAWYER

| 7151 | 3/8/99 | Email String | Jeri Hilsabeck | Conway Wharton | Ron Saint Pierre<br>Craig Schneider<br>Jennifer Ivan, Esq.<br>Joyce Bolton | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
|---|---|---|---|---|---|---|---|---|
| 7159 | 12/8/98 | Email String | David Hall | Conway Wharton | Craig Schneider<br>Jennifer Ivan, Esq.<br>Hye-Young McCreary<br>Michael Day<br>David Mehaffy | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7168 | 12/9/98 | Email String | Conway Wharton | David Hall | Sharal Brown<br>Craig Schneider<br>Jennifer Ivan, Esq.<br>Hye-Young McCreary<br>Michael Day<br>David Mehaffy<br>Ron Saint Pierre<br>Gary Leikam<br>Mark Grosch<br>Ernest Segura<br>Dave Higgins | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

6

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES
## THAT MERELY COPY A LAWYER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7179 | 12/9/98 | Email String | Conway Wharton | David Hall | Craig Schneider Jennifer Ivan, Esq. Hye-Young McCreary Michael Day David Mehaffy | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7180 | 12/10/98 | Email String | David Hall | Conway Wharton | Craig Schneider Jennifer Ivan, Esq. Hye-Young McCreary Michael Day David Mehaffy Dave Higgins Jessie Haug Satya Sharma | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7182 | 2/2/99 | Email String | Ron Smith | David Hall | Bill Freeman Craig Schneider Jennifer Ivan, Esq. Ron Saint Pierre Hye-Young McCreary John Taylor Terry McKenna Jeff Hobbs | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

EXHIBIT 3

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT MERELY COPY A LAWYER

| | Date | Type | From | To | Recipients | Priv. | Description | Location |
|---|---|---|---|---|---|---|---|---|
| 7184 | 2/2/99 | Email String | Conway Wharton | David Hall | Jennifer Ivan, Esq., Craig Schneider, Ron Saint Pierre, Hye-Young McCreary | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7185 | 12/9/98 | Email String | David Hall | Conway Wharton | Craig Schneider, Jennifer Ivan, Esq., Hye-Young McCreary, Michael Day, David Mehaffy, Dave Higgins, Jessie Haug, Satya Sharma | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 7186 | 12/8/98 | Email | David Hall | Conway Wharton, Sharal Brown | Craig Schneider, Jennifer Ivan, Esq., Hye-Young McCreary, Michael Day, David Mehaffy, Ron Saint Pierre, Gary Leikam, Mark Grosch, Ernest Segura, Dave Higgins | AC | Confidential Email Forwarding Information to Counsel Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |

8

EXHIBIT 4

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| No. | Bates Range | Date | Document Type | Author(s) | Addressee(s) | Copyee(s) | Priv Claim | Priv Description | Source |
|-----|-------------|------|---------------|-----------|--------------|-----------|------------|------------------|--------|
| 261 | 181016262-181016265 | 3/3/99 | Email String | Bill Sandve | Mary Humbaugh | Jennifer Ivan, Esq. | AC | Redaction of Confidential Email Providing Legal Advice Concerning Monterey Agreements. | Files of Bill Sandve |
| 380 | 181028448-181028450 | 4/5/01 | Email String | Helene Armitage | Sharon Dobbs, Esq. | | AC | Redaction of Confidential Email Providing Legal Advice Concerning AIX 5L Announcement. | Files of Sharon Dobbs, Esq. |
| 382 | 181028460-181028464 | 2/18/02 | Email String | Helene Armitage | Sharon Dobbs, Esq. | David Richardson, Esq. Hayden Johnson Hina Shah Jaime Contreras Nancy O'Neill, Esq. Peg Williams | AC | Redaction of Confidential Email Providing Legal Advice Concerning Interwoven Request for AIX OEM Source License. | Files of Sharon Dobbs, Esq. |
| 723 | | 2/26/02 | Email | Pam Keeler | Hayden Johnson | David Richardson, Esq. | AC | Confidential Email Providing Legal Advice Concerning Interwoven AIX License. | Files of David Richardson, Esq. |
| 908 | | 6/16/00 | Email String | Robert Nelson | George O'Hanlon, Esq. | | AC | Confidential Email Providing Legal Advice Concerning Disclosure of Dynix Code to Computer Associates. | Files of George O'Hanlon, Esq. |

1

EXHIBIT 4

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
## IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| 1204 | 1710139265-1710139273 | 5/31/00 | Email String | Helene Armitage | Ron Saint Pierre | Sharon Dobbs, Esq. Teri Hunt Terry McElroy | AC | Redaction of Confidential Email Providing Legal Advice Concerning Monterey Beta Candidates. | Files of Teri Hunt |
|---|---|---|---|---|---|---|---|---|---|
| 1226 | 1710138734-1710138745 | 6/12/00 | Email String | Ron Saint Pierre | Helene Armitage | Teri Hunt Sharon Dobbs, Esq. Terry McElroy | AC | Redaction of Confidential Email Providing Legal Advice Concerning Additional ISV's for Early Monterey Programs. | Files of Teri Hunt |
| 1407 | | 6/30/00 | Email String | Helene Armitage | Sharon Dobbs, Esq. Ron Saint Pierre Teri Hunt Bradley Stewart Robert Van Patten | | AC | Confidential Email Providing Legal Advice Concerning Modified Version of Monterey IA/64 Beta. | Files of Teri Hunt |
| 1411 | | 4/4/00 | Email String | Conway Wharton | Teri Hunt Sharon Dobbs, Esq. | Andrew Jones | AC | Confidential Email Providing Legal Advice Concerning Monterey OEM Development. | Files of Teri Hunt |
| 1586 | | 6/18/02 | Email String | Mounir Bsaibes | David Richardson, Esq. | Conway Wharton Steve Bernstein | AC | Confidential Email Providing Legal Advice Concerning AIX Origin Code Analysis. | Files of David Richardson, Esq. |

2

EXHIBIT 4

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
## IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| 1615 | | 7/17/03 | Email String | Daisy Chang | Craig Cook, Esq. David Richardson, Esq. Barbara Wang Dan McNichol Frank Novak Joanne Guariglia Scott Moser | | AC | Confidential Email Providing Legal Advice Concerning Keyboard Mapping Files in AIX. | Files of David Richardson, Esq. |
|---|---|---|---|---|---|---|---|---|---|
| 1667 | 1710183110-1710183113 | 7/16/99 | Email String | Thomas Bloomquist | Jennifer Ivan, Esq. | Bill Freeman Robert Ruyle Terry McKenna Michael Day Thomas Keith Charles Reese Ken Stokes | AC | Redaction of Confidential Email Providing Legal Advice Concerning Distribution of Monterey / 64 with Intel SDVs. | Files of Terry McKenna |
| 2821 | 1710186575-1710186577 | 2/4/00 | Email String | Teri Hunt | Tracey Henson | Sharon Dobbs, Esq. Ron Saint Pierre Michael Hitchcock Andrew Jones | AC | Redaction of Confidential Email Providing Legal Advice Concerning Monterey Beta Agreements. | Files of Paul Felts |
| 3196 | 1710014249-1710014251 | 7/7/99 | Email String | Paul Felts | Rich Crowley Jennifer Ivan, Esq. Teri Hunt | | AC | Redaction of Confidential Email Providing Legal Advice Concerning Project Monterey IHV Agreements. | Files of Teri Hunt |

3

EXHIBIT 4

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| 3201 | 1710014064-1710014065 | 9/25/99 | Email String | Gerry Hackett | Teri Hunt | Daniela Combe, Esq. | AC | Redaction of Confidential Email Providing Legal Advice Concerning Monterey IHV Driver License with Intel. | Files of Teri Hunt |
|---|---|---|---|---|---|---|---|---|---|
| 3365 | 1710191125-1710191130 | 1/10/01 | Email String | John McAbel | Mary Egan, Esq. | Christine Meinicke Kevin Smallwood John McAbel Claude Millet Olivier Hamel Hal Porter Jim Jensen | AC | Redaction of Confidential Email Providing Legal Advice Concerning Encryption Issues on Export of DYNIX / ptx. | Files of Christine Meinicke |
| 3500 | | 10/9/00 | Email String | Trang Nguyen | George O'Hanlon, Esq. | | AC | Confidential Email Providing Legal Advice Concerning Monterey on NUMA Issues. | Files of George O'Hanlon, Esq. |
| 4294 | 1710193790-1710193795 | 2/14/95 | Email String | Kathleen Greer | Lowell Gray | Terry McElroy, Esq. | AC | Redaction of Confidential Email Providing Legal Advice Concerning AIX Source Code Royalty Agreement with Thompson. | Files of Terry McKenna |
| 5336 | 1710066222-1710066226 | 3/4/99 | Email String | Pam Malone | Jennifer Ivan, Esq. | Ken Stokes | AC | Redaction of Confidential Email and Attachment Providing Legal Advice Concerning Disclosure of AIX Code to Veritas. | Files of Pam Malone |

EXHIBIT 4

IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5450 | | 8/8/00 | Email String | Nigel Freeman | Josie Hart | Dominique Glorieux Luis Custodio Ron Lauderdale, Esq. Andy Pinder Bill Sandve Phil Fifield Robert Dixon | AC | Confidential Email Providing Legal Advice Concerning AIX Contract with Unilever. | Files of Sharon Dobbs, Esq. |
| 5758 | 1710185463-1710185465 | 2/17/00 | Email String | Andrew Jones | Teri Hunt | Ron Saint Pierre Sharon Dobbs, Esq. Craig Schneider | AC | Redaction of Confidential Email Providing Legal Advice Concerning Origin Code Analysis for Project Monterey. | Files of Craig Schneider |
| 5842 | | 1/23/02 | Email String | Pam Keeler | Hayden Johnson | Delphine Lee Sharon Dobbs, Esq. | AC | Confidential Email and 2 Attachments Providing Legal Advice Concerning Interwoven Agreement for AIX Code. | Files of Pam Keeler |
| 5843 | | 1/23/02 | Email String | Hayden Johnson | Sharon Dobbs, Esq. | Pam Keeler Delphine Lee | AC | Confidential Email Providing Legal Advice Requesting Interwoven Agreement for AIX Code. | Files of Pam Keeler |

5

EXHIBIT 4

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
## IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| | | | | | | AC | | |
|---|---|---|---|---|---|---|---|---|
| 5850 | 2/27/02 | Email String | Daniel Frye | Michael Zisman | Bob Anderegg, Esq. Edward Lynch Bill Madill Irving Wladawsky-Berger Steve Solazzo | AC | Confidential Email Providing Legal Advice Concerning IBM's Linux Activities. | Files of Edward Lynch |
| 5859 | 3/5/03 | Email String | Jim Gugleta | Betsy Greytok, Esq. | | AC | Confidential Email Providing Legal Advice Concerning Agreement with Hitachi for AIX Code. | Files of Jim Gugleta |
| 5972 | 3/6/01 | File | George O'Hanlon, Esq. | Kathy Parker | | AC | Confidential Email, Attachment and Handwritten Notes Requesting Legal Advice Concerning AIX 5L NUMA-Q API's Open Source Proposal. | Files of Mary Egan, Esq. |
| 5976 | 3/8/01 | Email String | Kathy Parker | Paul McKenney | Steve Gerdt Sam Ruby Pryor Garnett, Esq. | AC | Confidential Email Providing Legal Advice Concerning AIX 5L NUMA-Q API's Open Source Proposal. | Files of Mary Egan, Esq. |
| 6331 | 4/28/99 | Email String | Rich Crowley | Jennifer Ivan, Esq. | Paul Felts Teri Hunt | AC | Confidential Email and Attachment Providing Legal Advice Concerning Activity Order for Intel Monterey IHV Project. | Files of Paul Felts |

6

EXHIBIT 4

## IBM PRIVILEGE LOG DOCUMENT ENTRIES THAT
## IMPROPERLY DESCRIBE ALLEGED PRIVILEGED COMMUNICATION

| | | Email String | Samny Muthusamy | Daniela Combe, Esq. | Rajiv Samant Douglas Grose Ron Lauderdale, Esq. John Callies Gerry Hackett | AC | Confidential Email and Attachment Providing Legal Advice Concerning Project Monterey Executive Action Items. | Files of Daniela Combe, Esq. |
|---|---|---|---|---|---|---|---|---|
| 6482 | 12/1/99 | | | | | | | |

7