SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

FILED
U.S. DISTRICT COURT

2005 MAY -4  P 4: 57

DISTRICT OF UTAH

BY:_____
        Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>      Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>      Defendant/Counterclaim-Plaintiff. | **IBM'S UNSEALED MEMORANDUM IN OPPOSITION TO SCO'S MOTION TO COMPEL IBM TO PRODUCE SAMUEL J. PALMISANO FOR DEPOSITION**<br>**[Docket 406]**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

Defendant International Business Machines Corporation ("IBM") respectfully submits this Memorandum in Opposition to The SCO Group, Inc.'s ("SCO") Motion to Compel IBM to Produce Samuel J. Palmisano for Deposition.

### Preliminary Statement

SCO seeks to depose IBM's Chairman and Chief Executive Officer, Samuel J. Palmisano, despite its failure to show that Mr. Palmisano has unique personal knowledge of the claims in suit. Mr. Palmisano did not negotiate, draft or execute the contracts IBM is alleged to have breached, and while he is obviously familiar with IBM's Linux strategy, others at IBM are no less knowledgeable. Mr. Palmisano is not a computer programmer and has no unique knowledge of IBM's contributions of source code to Linux. To the extent SCO does not already have information it seeks from Mr. Palmisano, that information should be readily available to it from other sources. SCO's insistence on Mr. Palmisano's deposition is little more than an effort improperly to disrupt IBM's operations and should not be allowed.

### Argument

The deposition of a highest-level corporate officer should not be allowed absent a showing that the officer has unique personal knowledge. SCO has not shown and cannot show that Mr. Palmisano has unique personal knowledge. The reasons SCO asserts for needing to depose Mr. Palmisano are unconvincing. Accordingly, SCO's motion to compel IBM to produce Mr. Palmisano for deposition should be denied.

A.     The Deposition Of A High-level Corporate Officer Should Not Be Allowed Absent A Showing Of "Unique Personal Knowledge".

Contrary to SCO's assertions, federal courts "often are reluctant to permit 'apex' depositions of highest-level corporate officers or managers who are unlikely to have personal knowledge of the facts sought by the deposing party." 6 MOORE'S FEDERAL PRACTICE, § 26.105[2][a] (Matthew Bender 3d ed.) While there is "no *per se* rule barring depositions of top

2

corporate executives," courts "frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." Cardenas v. Prudential Ins. Co. of America, Civ. No. 99-1421, 2003 U.S. Dist. LEXIS 9510, at *2-4 (D. Minn. May 16, 2003) (upholding magistrate judge's denial of plaintiffs' motion to compel deposition testimony of three Prudential executives because plaintiffs had failed to show that the executives "possess[ed] any information that could not be obtained from lower level employees or other sources, much less that their knowledge of plaintiffs' allegations that is 'unique.'") (attached as Exhibit A).

Courts require this showing of "unique personal knowledge" because "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." Consolidated Rail Corp. v. Primary Indus. Corp., 92 Civ. 4927 et al., 1993 U.S. Dist. LEXIS 12600, at *2-3 (S.D.N.Y. Sept. 10, 1993) (deferring depositions of party's chairman, president, and CEO, senior vice president of operations, and vice president of labor relations in multiple lawsuits involving breach of contract and freight charge disputes "until it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases.") (attached as Exhibit B).[1]

As the party moving to compel, SCO bears the burden to show that the information it seeks is not obtainable from another source, such as the deposition testimony of other, lower-ranking employees. See Cardenas, 2003 U.S. Dist. LEXIS 9510 at *4 (upholding magistrate judge's denial of the plaintiff's motion to compel the depositions of several Prudential executives

---

[1] See also Stone v. Morton Int'l, Inc., 170 F.R.D. 498, 504 (D. Utah 1997) (Boyce, J.) (granting protective order preventing plaintiff from deposing one of Morton International's vice presidents in light of his lack of knowledge of facts relevant to the action and because plaintiff had not exhausted other methods of discovery); Evans v. Allstate Ins. Co., 216 F.R.D. 515, 519 (N.D. Okla. 2003) (precluding depositions of Allstate's chairman, president and CEO, chief financial officer, and senior vice president where "Allstate has already provided adequate information, or . . . the information can alternatively be obtained from other sources without deposing these 'apex' officers.").

3

because the plaintiff failed to show that the executives possessed "any information that could not be obtained from lower level employees or other sources, much less that their knowledge is unique."). As is discussed below, SCO has not shown and cannot show that Mr. Palmisano possesses "unique personal knowledge" not available from others.[2]

> B.    SCO Has Not Shown And Cannot Show That Mr. Palmisano Has Unique Personal Knowledge Of Relevant Issues.

SCO has not shown that Mr. Palmisano has unique personal knowledge of issues relevant to the claims in suit and SCO's motion should therefore be denied.

As SCO knows, Mr. Palmisano did not draft, negotiate or execute any of the agreements IBM is alleged to have breached. The agreements were drafted, negotiated and executed twenty years ago by persons not even reporting to Mr. Palmisano. By virtue of his position, Mr. Palmisano is familiar with IBM's Linux strategy. However, SCO has failed to show that he has any personal knowledge of features of the strategy that are unknown to others at IBM. Mr. Palmisano is not a computer programmer and has no unique knowledge of IBM's contributions of source code to Linux, which are a matter of public record in any case. Thus, there is no basis for SCO to compel Mr. Palmisano's deposition.

---

[2] SCO's own cases make the point. In Six West Retail Acquisition, Inc. v. Sony Theater Mgmt. Corp., an antitrust case challenging Sony's merger with a large theater operator and Sony's alleged "block-booking" practices for less desirable movies, the magistrate judge granted the plaintiff's motion to compel the depositions of three high-ranking Sony executives because the plaintiff presented "sufficient evidence to support an inference that [Sony's CEO] has been well informed [on several issues related to its claims]" including "some unique knowledge about the company's alleged block-booking practices in the United States, particularly New York." 203 F.R.D. 98, 102, 104 (S.D.N.Y. 2001). The showing made by plaintiff's counsel included establishing the CEO's participation in meetings regarding the challenged merger and the submission of memoranda and letters directed to or authored by the executive, which documents apparently formed the basis of plaintiff's "wide-ranging" antitrust allegations. Id. at 104-05. The court also noted that the plaintiff first deposed a half-dozen lower-ranking Sony officers. Id.; see also Travelers Rental Co. v. Ford Motor Co., 116 F.R.D. 140, 141-42 (D. Mass. 1987) (allowing depositions of Ford executives to proceed only after depositions of lower-ranking executives took place); Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 145 F.R.D. 92, 98 (S.D. Iowa 1992) (ordering that depositions of two lower-level officers to be completed before deposition of plaintiff's CEO would proceed to prevent duplicative discovery).

SCO purports to require Mr. Palmisano's deposition to obtain information regarding IBM's "Linux strategy," specifically, "IBM's strong financial motivation to use shortcuts in order to promote Linux's commercial appeal." (SCO Mem. at 2; see also id. at 9.) However, IBM's Linux strategy is of marginal relevance at best to any claim in the case. IBM's motivation for promoting or contributing to Linux is not an element of SCO's contract claims or IBM's claim for a declaration of non-infringement as to Linux, the only claims for which SCO says it needs to depose Mr. Palmisano. A party's "motivation" or intent simply is not an element of a claim for breach of contract. See Agron v. Trustees of Columbia Univ., 88 Civ. 6294, 1993 U.S. Dist. LEXIS 4565, at *12 (S.D.N.Y. Mar. 31, 1993) ("Intent, however, is not required for breach of contract.") (attached as Exhibit C). Likewise, to show that IBM's Linux contributions infringe SCO's alleged copyrights, SCO must show that the allegedly infringing work, Linux, is "substantially similar" to the allegedly copyrighted work, UNIX. See, e.g., Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 833-34 (10th Cir. 1993). IBM's strategy with regard to Linux has no relevance to this showing. Putting aside the fact that IBM's Linux strategy is of marginal relevance at best, it is not uniquely known to Mr. Palmisano. As an initial matter, IBM has produced thousands of confidential documents to SCO relating to Linux strategy—including numerous emails, memoranda, and presentations. Moreover, IBM's "strategy" is the subject of press releases, media coverage, and public discussion, and Linux itself is a product that is publicly available. Notably, SCO's four-and-a-half-page explication of the "advent and evolution of IBM's Linux strategy" suggests that it knows plenty about the subject. SCO does not identify with any particularity what it is that it does not yet know.

Moreover, of the more than 300,000 persons employed by IBM, hundreds of them devote substantial portions of their time, talents and energies to what SCO calls IBM's "Linux strategy". There is no reason that one or more of these persons could not provide SCO with the information it seeks without deposing IBM's Chairman and Chief Executive Officer. IBM has already

produced for deposition Irving Wladawsky-Berger, IBM's Vice President of Technical Strategy and Innovation (and an individual repeatedly referred to by SCO as IBM's "Linux czar," see, e.g., SCO Mem. at 5), Steve Mills, Senior Vice President and Group Executive for IBM's Software Group, and Daniel Frye, Vice President of IBM's Linux Technology Center, whom SCO questioned at length about IBM's "Linux strategy." To the extent SCO needs more information about IBM's Linux strategy, IBM can provide additional witnesses without disrupting the activities of its chairman and CEO.

Courts frequently decline to allow highest-level depositions in circumstances no different from these.[3] See, e.g., Harris v. Computer Assocs. Int'l, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (precluding deposition of Computer Associates' chairman and CEO and observing that "[w]hen a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition"); Baine v. General Motors Corp., 141 F.R.D. 332, 335-36 (M.D. Ala.

---

[3] SCO's reliance on In re Bridgestone/Firestone Inc. Tires Products Liability Litig., 205 F.R.D. 535 (S.D. Ind. 2002), for the proposition that the rule requiring a demonstration that an "apex" official has unique personal knowledge should be limited to "individual personal injury, employment, or contract dispute[s] with which the 'apex' official had no personal involvement" is misplaced. (SCO Mem. at 10 n.3.) The Bridgestone/Firestone court merely stated that there was no "rigid rule applicable in all cases", and found that in the context of the particular facts and posture of the case, the magistrate judge did not err in compelling the deposition of Ford's Chairman and CEO. Unlike in this case (where Mr. Palmisano has no unique personal knowledge of any of the contracts at issue or of any of IBM's Linux contributions), the Ford officer in Bridgestone/Firestone had "personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues". Id. at 536. Furthermore, in Bridgestone/Firestone nearly all of the depositions in the case had already been completed, such that the "parties and the Court can therefore identify more readily the appropriate areas of questioning to be directed to [the officer]". Id. at 537 (ordering plaintiffs to file with the Court "a list of subjects to be covered in [the officer's] deposition").

6

1991) (quashing deposition of GM vice president for failure to show that the information sought could not be had from other witnesses, interrogatories, or a Rule 30(b)(6) deposition).[4]

SCO does not, and could not properly, contend that Mr. Palmisano has personal knowledge, let alone unique personal knowledge, of the issues directly relevant to the two claims for which SCO seeks his testimony.

C.    The Only Grounds SCO Asserts For Taking Mr. Palmisano's Deposition Are Untenable.

SCO makes four arguments in its brief to justify its request to depose Mr. Palmisano. None survives scrutiny.

First, SCO claims that, in ordering IBM to produce documents from Mr. Palmisano's files, the Court "already determined" that Mr. Palmisano has "something to say" about this lawsuit and should therefore be deposed. (SCO Mem. at 7.) That is incorrect. While we do not presume to know the Court's intent, the Court's order, which concerned document production, did not address the issue of whether Mr. Palmisano should be deposed. The Court did not even have before it the facts necessary to decide if Mr. Palmisano's deposition must be taken.

Second, SCO's claim that it is "well-settled" that a company's CEO is subject to deposition where his knowledge is "even arguably relevant," or even if he claims to lack knowledge of specific facts at issue in the case, is incorrect. None of the cases cited by SCO

---

[4] See also Folwell v. Hernandez, 210 F.R.D. 169, 175 (M.D.N.C. 2002) (allowing deposition of president and CEO of Sara Lee Corporation to go forward only upon finding CEO had "unique personal knowledge" of certain deposition topics submitted to the court and "exercis[ing] its discretion under Rule 26(b)(2) in denying plaintiffs the right to take a Rule 30(a)(1) deposition on [other] topics"); Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985) (finding that "an orderly discovery process is best served by resorting to interrogatories at this time, without prejudice to a subsequent oral deposition" of Chrysler's chairman of the board, Lee Iacocca); Hughes v. General Motors Corp., 1974 U.S. Dist. LEXIS 8036, at *1 (S.D.N.Y. June 18, 1974) (denying motion to take deposition of GM's president because "[n]o good cause exists to require defendant to submit its president for a deposition when it is clear that the information plaintiff wants is available through other employees of defendant, and such employees have been questioned or on plaintiff's request can be questioned.") (attached as Exhibit D); M.A. Porazzi Co. v. The Mormaclark, 16 F.R.D. 383, 384 (S.D.N.Y. 1951) (finding good cause to preclude deposition of defendant's vice president unless deposition of lower-level employee established the need for further examination of the vice president).

establish SCO's "arguable relevance" principle.[5] Rather, the caselaw clearly establishes the

principle that "the oral deposition of a high level corporate executive should not be freely

granted when the subject of the deposition will be only remotely relevant to the issues of the

case." Folwell, 210 F.R.D. at 174. In fact, the executive's information must be truly "unique"

and thus available from him or her alone. In Baine, for example, the district court precluded the

deposition of the head of GM's Buick Division who wrote an internal memorandum regarding

the passenger restraint system at issue in the lawsuit after having driven a prototype vehicle for

several days. 141 F.R.D. at 335. The court quashed the deposition notice as "oppressive,

inconvenient, and burdensome" not because the executive had "nothing" to contribute, but

---

[5] Instead, the cases SCO cites show that the executives' testimony was directly relevant to the claims in the case. In Simpson v. The Home Depot, Inc., 203 F.R.D. 643, 644-45 (D. Kan. 2001), following the plaintiff's discovery of some 600 other accidents similar to his own, the plaintiff added a claim for punitive damages alleging that Home Depot acted with malice and "conscious indifference for the safety and well being of Plaintiff and others similarly situated." Id. Under those circumstances, the court allowed Home Depot's vice president of operations to be deposed about the company's "nationwide operations" and whether there is "any risk to employees and customers stemming from Home Depot's warehouse-style operations." Simpson v. The Home Depot, Inc., Civ. A. No. 00-2285, 2002 U.S. Dist. LEXIS 5644, at *6 (D. Kan. Mar. 7, 2002). In Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 116 (S.D.N.Y. 1997), which involved a breach of contract claim, Federated's CEO participated in between 10 to 20 meetings with Speadmark's principal regarding the original contract between the parties. Id. at 117-18. Likewise, in Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc., two of PepsiCo's executives were allowed to be deposed because of their involvement in a strategic plan to "consolidate" PepsiCo's bottlers to PepsiCo's advantage, which plan formed the basis for plaintiff's claim that PepsiCo and another of its bottlers conspired with the illegal object of interfering with plaintiff's exclusive territory and "to force it to sell the franchise." 175 F. Supp. 2d 1288, 1292 (D. Kan. 2001). In Rolscreen Co. v. Pella Prods. of St. Louis, 145 F.R.D. 92, 97-98 (S.D. Iowa 1992), the court allowed a deposition of Rolscreen's president where the president approved the conditional notice of termination that was the basis of Rolscreen's action. In Tulip Computers Int'l B.V. v. Dell Computer Corp., 210 F.R.D. 100, 102 (D. Del. 2002), the plaintiff contended that Dell's CEO appeared to have been involved in determining the specific design of allegedly infringing products. In contrast, Mr. Palmisano had no involvement with the drafting, negotiating, or execution of any of the contracts at issue in this case, nor any involvement with any Linux contributions. Finally, SCO's reliance on Salter v. Upjohn, 593 F.2d 649 (5th Cir. 1979) is misplaced. In Upjohn, the Fifth Circuit upheld an order of the district court vacating plaintiff's notice of deposition for the president of The Upjohn Company and requiring the plaintiff to depose lower-ranking employees with a greater knowledge of the facts first. The court found the order to be a proper exercise of the district court's "broad discretion" in controlling the timing of discovery, particularly "in light of defendant's reasonable assertions that [the president] was extremely busy and did not have any direct knowledge of the facts." 593 F.2d at 651.

because the information about the memorandum could be obtained through the deposition of the

lower ranking officer in charge of GM's engineering analysis section, from any of the other

recipients of the memorandum, by interrogatories, or a Rule 30(b)(6) deposition.[6]  Id.

    Third, SCO affirmatively asserts that its motion is made in good faith.  (SCO Mem. at 9.)

SCO's good faith is not, however, an adequate basis for ordering Mr. Palmisano's deposition.

As discussed, SCO must show that Mr. Palmisano has unique personal knowledge.  In any event,

the circumstances under which SCO filed this motion at least call into doubt any assertion that it

is proceeding in good faith.  SCO seeks discovery from IBM's chairman and chief executive on a

topic of marginal relevance at best, without making a showing that the information it seeks

cannot be had from others within IBM.  IBM expressly invited SCO to specify topics which SCO

believed Mr. Palmisano was "uniquely able to address", and SCO declined.  (SCO Mem., Ex. C

at 2.)[7]  Furthermore, in filing this motion, SCO violated the protective order in this case for at

least the third time.[8]

---

[6] See also Folwell, 210 F.R.D. at 174 ("Even when an executive does have personal knowledge about the case, the court still may fashion a remedy which reduces the burden on the executive."); Six West Retail, 203 F.R.D. at 102 (stating that "in deciding whether to allow discovery of corporate executives," courts should consider the "likelihood of harassment and business disruption" and that "discovery is not boundless, and a court may place limits on discovery demands that are unreasonably cumulative or duplicative.") (internal quotation marks omitted).

[7] Contrary to SCO's claim at page 6 of its brief that counsel for SCO "referenced the publicly available information concerning Mr. Palmisano's key role in formulating and promoting IBM's Linux strategy" during a teleconference, counsel for SCO and IBM held a brief phone call during which SCO's counsel was again invited to explain its reasons for taking Mr. Palmisano's deposition.  SCO offered none, and simply stated that the parties would have to "agree to disagree" on the issue.

[8] On Wednesday, January 12, 2005, SCO filed its motion attaching five IBM confidential documents without filing the motion under seal, serving counsel for IBM by mail.  (See Docket No. 374.)  As a result, counsel for IBM did not know that the motion existed until two days later, when SCO's counsel called to discuss the fact that the motion had not been filed under seal.  Although the certificate of service purports to show that the memorandum was served by mail on Wednesday, January 12, 2005, counsel for IBM did not receive the memorandum by mail until the following week.  Accordingly, in filing this motion, counsel for SCO caused what should have been a sealed or redacted memorandum referencing IBM's confidential internal documents to be published on the Internet.

Finally, SCO claims that IBM should be obligated to produce its chairman and CEO for deposition because SCO intends to produce its CEO, Darl McBride. Unlike Mr. Palmisano, however, Mr. McBride has unique knowledge of relevant facts in the case. For example, Mr. McBride is responsible for making public statements about this case and about SCO's alleged evidence in particular. These statements by Mr. McBride—including that SCO and its experts have found "a mountain of code" in Linux and that "the DNA of Linux is coming from UNIX," among many other things—form the basis for certain of IBM's counterclaims, which allege that SCO's lawsuit is designed to create fear, uncertainty, and doubt as part of an improper scheme to assert proprietary rights over Linux and to impede the use of that technology by the open-source community. Moreover, whereas there are many people at IBM who should be able to address the issues in which SCO is interested, there are very few, if any, others at SCO (other than Mr. McBride) who can address the issues in which IBM is interested.

### Conclusion

For the foregoing reasons, IBM respectfully requests that SCO's Motion to Compel IBM to Produce Samuel J. Palmisano for Deposition be denied.

DATED this 18th day of February, 2005.

SNELL & WILMER L.L.P.


Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2005, a true and correct copy of **IBM's MEMORANDUM IN OPPOSITION TO SCO'S MOTION TO COMPEL IBM TO PRODUCE SAMUEL J. PALMISANO FOR DEPOSITION** was served on the following by U.S. Mail, postage prepaid:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
Sean Eskovitz
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504

337991.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 4ᵗʰ day of May, 2005, a true and correct copy of the

foregoing was sent by U.S. Mail, postage prepaid, to the following:

   Brent O. Hatch
   Mark F. James
   HATCH, JAMES & DODGE, P.C.
   10 West Broadway, Suite 400
   Salt Lake City, Utah 84101

   Stephen N. Zack
   Mark J. Heise
   BOIES, SCHILLER & FLEXNER LLP
   100 Southeast Second Street, Suite 2800
   Miami, Florida 33131

   Robert Silver
   Edward Normand
   Sean Eskovitz
   BOIES, SCHILLER & FLEXNER LLP
   333 Main Street
   Armonk, New York 10504



LEXSEE 2003 U.S. DIST. LEXIS 9510

MARK CARDENAS, PAMELA MULDOON, TERRY STRÜZYK, Plaintiffs, v.
THE PRUDENTIAL INSURANCE CO. OF AMERICA, Defendant.

Civil No. 99-1421 (JRT/FLN), Civil No. 99-1422 (JRT/FLN), Civil No. 99-1736
(JRT/FLN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

*2003 U.S. Dist. LEXIS 9510*

**May 16, 2003, Decided**

**SUBSEQUENT HISTORY:** Subsequent appeal at *Struzyk v. Prudential Ins. Co. of Am., 2003 U.S. Dist. LEXIS 9511 (D. Minn., May 16, 2003)*

**PRIOR HISTORY:** *Struzyk v. Prudential Ins. Co. of Am., 2003 U.S. Dist. LEXIS 9509 (D. Minn., May 16, 2003)*

**DISPOSITION:** [*1] Plaintiffs appeal and defendant's appeal denied. Magistrate Judge's Order dated February 12, 2002 affirmed. Defendant's Letter/Motion to strike denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** John M. Degnan, MURNANE, CONLIN, WHITE & BRANDT, St. Paul, MN; and Theresa A. Freeman, NEFF LAW OFFICE, Bloomington, MN, for plaintiff.

Neil H. Abramson, PROSKAUER ROSE LLP, New York, NY, and Thomas C. Kayser, ROBINS, KAPLAN, MILLER & CIRESI, Minneapolis, MN, for defendant.

**JUDGES:** JOHN R. TUNHEIM, United States District Judge.

**OPINIONBY:** JOHN R. TUNHEIM

**OPINION:**

**ORDER AFFIRMING ORDER OF MAGISTRATE JUDGE DATED FEBRUARY 12, 2002 AND DENYING DEFENDANT'S LETTER/MOTION TO STRIKE AFFIDAVIT**

Plaintiffs have sued defendant Prudential Insurance Company of America ("Prudential") alleging a variety of employment discrimination claims. This matter is [*2] now before the Court on appeals of the Order by United States Magistrate Judge Franklin L. Noel dated February 12, 2002. An order of a magistrate judge on nondispositive pretrial matters may be reversed only if it is clearly erroneous or contrary to law. *See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a);* D. Minn. LR 72.1(b)(2). The Court has reviewed the Magistrate *Judge's Order and the parties' submissions, and now* denies the appeals.

**I. Plaintiffs' Appeal of Order Denying Motion to Compel Depositions**

The Magistrate Judge denied plaintiffs' motion to compel the depositions of several Prudential executives: Susan Sangillo, Eric Schwimmer, Art Ryan, and Michelle Darling. Plaintiffs appeal that portion of the Order, arguing that these individuals have knowledge that is relevant to plaintiffs' allegations in this case. There is no *per se* rule barring depositions of top corporate executives. *See Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).* However, courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or [*3] *where the party has not established that the executive has some unique knowledge pertinent to the issues in the case. See id. at 650-51* (affirming district court's holding that defendant's president need not be deposed until plaintiff deposed lower level employees with relevant knowledge, and where president did not have any direct knowledge of the facts); *Thomas v. International*

Case 2:03-cv-00294-DN Document 442 Filed 05/04/05 PageID.3485 Page 15 of 23

Page 2
2003 U.S. Dist. LEXIS 9510, *

*Business Machines, 48 F.3d 478, 483-84 (10th Cir. 1995)* (upholding protective order barring deposition of top executive where lower level employees were available for deposition and where executive lacked personal knowledge of plaintiff's case); *Baine v. General Motors Corp., 141 F.R.D. 332, 334-35 (M.D. Ala. 1991)* (stating that for a top executive to be deposed, prospective deponent must have unique personal knowledge of the facts of the case).

Plaintiffs cite several cases for the proposition that depositions of top executives are "routinely compelled." (Pl. Br. at 7.) None of these cases, however, applies here because in none of them was the deponent's executive status relevant to the court's decision. *See Borase v. M/A Com, Inc., 171 F.R.D. 10 (D. Mass. 1997)* [*4] (granting motion to compel deposition based on fact that deponent was not acting as corporate attorney); *Crossley v. Iroquois Foundry Co., 1992 U.S. Dist. LEXIS 7368, Civ. Nos. A. 91-1657, A. 91-2041, 1992 WL 114956* at **1-3 (E.D. Pa. May 18, 1992) (denying protective order sought on basis of duplicative questions and late notice, where executive had already been deposed once without defendant objecting on basis of executive status); *Marchon Eyewear, Inc. v. Marchon, Inc., 1988 U.S. Dist. LEXIS 7153, No. 87-C-5943, 1988 WL 74447* at *2 (N.D. Ill. July 13, 1988) (granting motion to compel second deposition of defendant's president where defendant objected only to extent that new deposition might be duplicative). Thus, the Court must examine whether the Prudential executives personally possess any unique information about the case.

The Court finds that plaintiffs' affidavits do not demonstrate that Sangillo, Schwimmer, Ryan, or Darling possess any information that could not be obtained from lower level employees or other sources, much less that their knowledge of plaintiffs' allegations is "unique." Moreover, plaintiffs have not demonstrated that deposing Sangillo and Schwimmer -- Prudential's in-house lawyers [*5] -- would satisfy the Eighth Circuit's requirement that deposition of in-house counsel must not disclose Prudential's litigation strategy. *See Pamida, Inc. v. E.S. Originals, 281 F.3d 726, 730 (8th Cir. 2002); Shelton v. American Motors Corp., 805 F.2d 1323, 1326-27 (8th Cir. 1986)*.

Based on the discussion above, the Court finds that the Magistrate Judge's Order was neither clearly erroneous nor contrary to law. Therefore, the February 12, 2002 Order denying plaintiffs' motion to compel the depositions of Susan Sangillo, Eric Schwimmer, Art Ryan, and Michelle Darling is affirmed. Because the Court affirms the Magistrate Judge's Order, plaintiffs' contention that the deposition should have been held in Minneapolis, Minnesota and its request for costs and attorneys fees are moot.

## II. Defendant's Appeal of Order Denying Motion to Compel Plaintiffs to Appear for Continuation of Depositions

This motion involves the depositions of plaintiffs Mark Cardenas ("Cardenas") and Pamela Muldoon ("Muldoon"). Following these depositions, Prudential moved to compel the plaintiffs to return for further questioning, arguing that plaintiffs had been so uncooperative [*6] and disruptive during questioning that the depositions were useless. Prudential also sought appointment of special master to supervise the continued depositions, and establishment of rules of conduct for the depositions.

The Magistrate Judge denied Prudential's motion, finding that it would be "just and practicable" to apply the new (and optional in this case) federal rule limiting depositions to one day of seven hours. *See Fed. R. Civ. P. 30(d)(2)*. In so ruling, the Magistrate Judge specifically rejected Prudential's arguments that plaintiffs' conduct rendered the depositions useless:

> It is apparent to this Court that the conduct of both the deponents, on the one hand, and the defendant's attorney, on the other, contributed to the confrontational nature of the depositions. While it is true that the deponents, at times, gave argumentative and non-responsive answers, Defense Counsel's suggestion that the depositions were "useless" because of the deponent's argumentative speeches, is hyperbole.

*Cardenas v. Prudential Ins. Co. of Amer., Civ. 99-1421, slip op. at 2 (D. Minn. Feb. 12, 2002) (emphasis added).*

Prudential appeals the Magistrate Judge's Order, [*7] arguing that plaintiffs' conduct did impede the depositions, and that application of the *Rule 30(d)(2)* time limit is inappropriate. n1 Prudential is correct that application of the Rule is optional in this case because the action commenced before the new rule took effect. Nevertheless, Prudential's argument against applying the time limit rests upon its assertion that plaintiffs were solely responsible for any delays or impediments. It is evident from the record that these depositions were contentious. After hearing oral argument and reviewing the parties' submissions, the Magistrate Judge concluded that both sides were to blame for any breakdown in the depositions. Prudential has not shown that this determination is clearly erroneous or contrary to law.

2003 U.S. Dist. LEXIS 9510, *

Assigning blame in such circumstances is never a clear cut task, and the Magistrate Judge made a reasonable determination based on the evidence presented to him. Even if this Court would reach a different conclusion upon a *de novo* review of the evidence, it would not change the Court's conclusion that the Magistrate Judge's Order was not clearly erroneous or contrary to law. Therefore, the Order is affirmed.

    n1 Prudential moves to strike some of the materials that plaintiffs submitted with its papers on appeal of the Magistrate Judge's Order. Prudential argues that these must be excluded because they were not submitted to the Magistrate Judge and therefore violate Local Rules 72.1(g)(9) and (g)(11). As plaintiffs note, these rules do not apply to appeals of non-dispositive motions, but govern appeals to the district court of proceedings by consent before a Magistrate Judge. The Court finds that Prudential suffers no prejudice from the submission of these materials, and their submission does not violate Local Rule 72.1(b), which governs this appeal. Therefore, Prudential's motion to strike will be denied.

[*8]

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

    1. Plaintiff's appeal [Civil Case No. 99-1421, Docket No. 123; Civil Case No. 99-1422, Docket No. 104; Civil Case No. 99-1736, Docket No. 71] and defendant's appeal [Civil Case No. 99-1421, Docket No. 121; Civil Case No. 99-1422, Docket No. 102] are **DENIED.**

    2. The Magistrate Judge's Order dated February 12, 2002 denying plaintiffs' motion to compel the depositions and denying defendant's motion to Appoint a Special Master, Issue Rules of Conduct, and Compel Plaintiffs to Appear for the Continuation of their Depositions [Civil Case No. 99-1421, Docket No. 109; Civil Case No. 99-1422, Docket No. 92; Civil Case No. 99-1736, Docket No. 63] is **AFFIRMED.**

    2. Defendant's Letter/Motion to Strike the Affidavit of Theresa Freeman [Civil Case No. 99-1421, Docket No. 141; Civil Case No. 99-1422, Docket No. 122] is **DENIED.**

DATED: May 16, 2003
at Minneapolis, Minnesota.

    JOHN R. TUNHEIM

    United States District Judge



LEXSEE 1993 U.S. DIST. LEXIS 12600

CONSOLIDATED RAIL CORPORATION, Plaintiff, v. PRIMARY INDUSTRIES
CORPORATION, Defendant. CONSOLIDATED RAIL CORPORATION, Plaintiff,
v. PRIMARY COAL, INC., Defendant.

92 Civ. 4927 (PNL), 92 Civ. 6313 (PNL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*1993 U.S. Dist. LEXIS 12600*

September 10, 1993, Decided
September 10, 1993, Filed

LexisNexis(R) Headnotes

JUDGES: [*1] FRANCIS IV

OPINIONBY: JAMES C. FRANCIS IV

OPINION:

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiff in these related actions, Consolidated
Rail Corporation ("Conrail"), has moved for a protective
order precluding certain depositions and directing that
others be conducted in Philadelphia, Pennsylvania. The
defendants, Primary Industries Corp. and Primary Coal,
Inc. (collectively referred to as "Primary"), have cross-
moved for an order compelling discovery responses and
extending the deadline for completion of discovery. Each
of these issues will be addressed in turn.

Background

Conrail, a common carrier, seeks to recover freight
charges that it contends are owed by Primary, a coal
producer. Primary has counterclaimed, asserting that it
suffered damages when Conrail wrongfully closed its
port facility at Philadelphia and diverted its coal traffic to
Baltimore. Conrail has filed a motion for summary
judgment on statute of limitations grounds which is
currently pending.

Discussion

A. Executive Officer Depositions

Primary has served a notice for the deposition of ten
Conrail employees. Conrail has agreed to produce seven
of these witnesses, but has [*2] moved for a protective
order precluding the depositions of three others: James
Hagan, Chairman, President, and Chief Executive
Officer of Conrail; Robert Swert, Vice President of
Labor Relations; and David LeVan, Senior Vice
President of Operations. Each of these individuals has
submitted an affidavit attesting that he has no personal
knowledge of the facts underlying the claims and
counterclaims in these cases except for what he may
have learned from other Conrail employees.

Highly-placed executives are not immune from
discovery. "The fact that the witness has a busy schedule
is simply not a basis for foreclosing otherwise proper
discovery." *CBS, Inc. v. Ahern, 102 F.R.D. 820, 822
(S.D.N.Y. 1984)* (citation omitted). Moreover, a claim
that the witness lacks knowledge is subject to testing by
the examining party. See *Amherst Leasing Corp. v.
Emhart Corp., 65 F.R.D. 121, 122 (D. Conn. 1974).*

At the same time, permitting unfettered discovery of
corporate executives would threaten disruption of their
business and could serve as a potent tool for harassment
in litigation. Accordingly, where other witnesses have
the same knowledge, [*3] it may be appropriate to
preclude a redundant deposition of a highly-placed
executive. See *CBS, 102 F.R.D. at 822 n.2; Amherst, 65
F.R.D. at 123.*

1993 U.S. Dist. LEXIS 12600, *

Given these considerations, it is appropriate in these cases to defer any live depositions of the three named executives until it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases. Primary may seek to establish such a foundation through Rule 31 depositions upon written questions of these executives as well as through the deposition testimony of other witnesses. Until such a showing has been made, however, these three individuals shall not be deposed in person.

B. Site of Depositions

Conrail next contends that the depositions of its seven remaining witnesses should be held in Philadelphia, where Conrail's headquarters are located, rather than in New York, as the deposition notice indicates.

This request has merit. It is far more efficient to require Primary's counsel to travel to Philadelphia than it is to require Conrail's attorney and seven witnesses to come to New York. See *Huynh v. Werke, 90 F.R.D. 447, 449 (S.D. Ohio 1981).* [*4] Moreover, it is possible that documents available in Conrail's offices but not previously disclosed in discovery will be necessary for the depositions.

Accordingly, the depositions of Conrail's employees shall be taken in Philadelphia. Since Conrail, as the plaintiff, would normally be expected to produce its witnesses for deposition in the forum district, it shall initially bear the costs of conducting the depositions in Philadelphia, including the travel and accommodation expenses of Primary's counsel, as well as his reasonable attorney's fees. See id.; local civil rule 15. These costs shall ultimately be taxed against the losing party at the conclusion of the litigation.

C. Document Requests

In its cross-motion, Primary seeks to compel production of a variety of documents primarily related to the reasons that Conrail closed its Philadelphia facility. Such documents are of doubtful relevance to any issue in the cases and are clearly not pertinent to Conrail's pending summary judgment motion. Since the request for this discovery will be moot if the summary judgment motion is granted, the motion to compel is denied without prejudice to renewing it after the dispositive motion [*5] is decided.

D. Discovery Schedule

Finally, Primary seeks an extension of the discovery deadline. Because of the pending summary judgment motion, the parties may decide to defer some discovery until the motion is decided. The discovery deadline shall therefore be held in abeyance until the motion for summary judgment has been determined.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
September 10, 1993



LEXSEE 1993 U.S. DIST. LEXIS 4565

**BATYA LEVI AGRON, Plaintiff, v. THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Defendant.**

**88 Civ. 6294 (MJL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1993 U.S. Dist. LEXIS 4565*

**March 31, 1993, Decided
April 12, 1993, Filed**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Plaintiff: DOUGLAS W. DUNHAM, ESQ., 919 Third Avenue, New York, NY 10022.

For Defendant: KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, 425 Park Avenue, New York, NY 10022, By: Amy L. Babat, Esq.

**JUDGES:** Lowe

*OPINIONBY:* *MARY JOHNSON LOWE*

**OPINION:**

OPINION AND ORDER

MARY JOHNSON LOWE, D.J.

Before this Court is the motion filed May 28, 1992 by defendant, the Trustees of Columbia University in the City of New York ("Columbia"), for dismissal pursuant to *Fed. R. Civ. P. 12(b)(6)*, or in the alternative, for summary judgment pursuant to *Fed. R. Civ. P. 56*. For the following reasons, the Court denies Columbia's motion for summary judgment with respect to plaintiff's handicap discrimination claim, and grants Columbia's motion for summary judgment with respect to plaintiff's contract and estoppel claims.

BACKGROUND

The amended complaint in this case alleges that plaintiff Batya Levi Agron ("Agron") attended Columbia until 1965, at which time she "became ill due to injuries that she had sustained as a result of being physically assaulted on defendant's campus." Am. Compl. P 7. Agron withdrew from Columbia in 1965, after Columbia's representatives stated that she "could continue her studies . . . at any time in the future." [*2] Am. Compl. P 8. Specifically, Columbia's dean of students wrote a letter dated December 9, 1965 to Agron's lawyer, stating as follows:

> Until November 30, 1964 when she withdrew from the University, Miss Agron was a degree candidate in good *standing in the School of* General Studies. Because, however, she has withdrawn she is presently not a student in any status. *Miss Agron may continue her studies at* any time in the future.

Pl.'s Mem. *of* Law Ex. C.

Despite the letter and other alleged assurances, Columbia "repeatedly rejected plaintiff's applications for readmission." Am. Compl. P 13. The first of those applications was in 1977, and was rejected on academic grounds, according to a letter dated October 20, 1977 from Columbia's assistant dean for student affairs. Sachs Aff. Ex. A. Agron appealed the rejection to Columbia's president, William J. McGill, who denied the appeal in a letter dated January 12, 1978. Sachs Aff. Ex. B.

In July 1984, Agron again applied for readmission, and for the first time informed Columbia that she was visually impaired. A rejection letter dated August 8, 1984 again cited academic grounds. Sachs Aff. Ex. C. In

Case 2:03-cv-00294-DN   Document 442   Filed 05/04/05   PageID.3490   Page 20 of 23

Page 2
1993 U.S. Dist. LEXIS 4565, *

January 1985, Agron filed a complaint [*3] with the Office of Civil Rights of the U.S. Department of Education ("OCR"), alleging that the rejection of her 1984 application was based upon her visual impairment in violation of § 504 of the Rehabilitation Act of 1973, *29 U.S.C. § 794* ("§ 504"). n1 OCR investigated the complaint and determined that Columbia had not violated § 504. Sachs Aff. Ex. D.

> n1 Agron asserts that she is and was at the times of her applications a handicapped individual within the meaning of § 504; that Columbia purposefully made illegal preadmission inquiries regarding her handicaps and disabilities; and that Columbia used the information learned from those improper inquiries as the real basis for denying her readmission. Agron further alleges that Columbia unlawfully refused to accommodate her visual and hearing disabilities during an entrance examination.

This process was repeated each of the following two years. Agron reapplied for readmission in July 1985 and was rejected on academic grounds in August [*4] 1985. Sachs Aff. Ex. E. She filed a complaint with OCR, and after an investigation, OCR concluded there had been no violation of § 504. Sachs Aff. Ex. F. Agron reapplied for readmission in July 1986 and was rejected on academic grounds that same month. Sachs Aff. Ex. G. She filed a complaint with OCR, and after an investigation, OCR concluded there had been no violation of § 504. Sachs Aff. Ex. H. Agron has not reapplied for readmission since July 1986.

Agron filed the present action pro se on September 12, 1988. The case was suspended in November 1989 pending appointment of counsel for Agron, and reactivated in 1992 when Agron obtained pro bono representation. An amended complaint was filed, alleging three bases for recovery: (1) that Agron's forbearance of legal action in exchange for the promise of readmission established "a contract . . . whereby defendant undertook to readmit plaintiff . . . at all times after in or about 1965," Am. Compl. P 12, and that "in breach of its contractual undertakings . . . defendant repeatedly rejected plaintiff's applications for readmission," Am. Compl. P 13; (2) that Columbia is "estopped from denying its promises and contractual [*5] undertakings to readmit" Agron, Am. Compl. P 16; and (3) that Agron was denied readmission based on her status as a handicapped person in violation of § 504. Am. Compl. P 23.

The Court held a status conference on May 8, 1992, and directed the parties to submit memoranda on whether Agron's claims are barred by the respectively applicable statutes of limitations. Moving and opposing papers were submitted by May 28, 1992, each accompanied by extra-pleading material. In the interest of judicial economy, the Court will treat the motion as one for summary judgment. n2

> n2 Columbia's motion is brought under rule 12(b)(6) or alternatively under rule 56. Treating the motion as one for summary judgment under rule 56 avoids any issue as to the propriety of considering the extra-pleading materials that have been submitted by both parties, see *Kopec v. Coughlin, 922 F.2d 152, 155 (2d Cir. 1991)* (notice required before rule 12(b)(6) motion can be converted to summary judgment motion), although the Court doubts that considering the extra-pleading materials would pose a problem even if this were a treated as a rule 12(b)(6) motion. See *Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)*, cert. denied sub nom. *M.J.M. Exhibitors, Inc. v. Stern, 475 U.S. 1015 (1986); In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985)*, cert. denied sub nom. *Cortec Indus., Inc. v. Westinghouse Credit Corp., 118 L. Ed. 2d 208, 112 S. Ct. 1561 (1992)*.

[*6]

DISCUSSION

A court may grant summary judgment only when it is clear that no genuine issue of material fact remains to be resolved at trial and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)*. The record "'must be viewed in the light most favorable to the party opposing the motion.'" *Lopez v. S.B. Thomas. Inc., 831 F.2d 1184, 1187 (2d Cir. 1987)* (quoting *United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)*). Summary judgment is granted "only where the entire record would inevitably lead a rational trier of fact to find for the moving party." *National R.R. Passenger Corp. v. City of New York, 882 F.2d 710, 713 (2d Cir. 1989)*. On the other hand, the party opposing the motion "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 256;* see also *Fed. R. Civ. P. 56(e)*.

A. Handicap Discrimination Statute of Limitations

Columbia bases [*7] its motion on the statutes of limitations applicable to Agron's handicap discrimination claim and contract claim. Section 504 does not have its own statute of limitations, so federal courts borrow

analogous state statutes of limitations. This Court has applied the three year statute of limitations found in *N.Y. Civ. Prac. L. & R. § 214(5)*. *McGuire v. Switzer, 734 F. Supp. 99, 104 (S.D.N.Y. 1990)*.

Agron's most recent application was rejected less than three years before this suit was filed, but her other applications were rejected more than three years before this suit was filed. Columbia's motion to dismiss the § 504 claim therefore depends on whether or not the limitations period begins anew with each successive readmission rejection.

The Second Circuit has held that a person who has a cause of action that accrues on demand may not extend the period for bringing suit by making a second or third demand. *Einson-Freeman Co. v. Corwin, 112 F.2d 683, 684* (2nd Cir.), cert. denied, *311 U.S. 693 (1940)*. Discrimination, however, is unlike a refusal to perform on demand. It is a compoundable wrong, [*8] and with each blow of discrimination is struck a new limitations period. Thus, the Court of Appeals for the Fifth Circuit stated that "[i]f . . . the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." *Perez v. Laredo Junior College, 706 F.2d 731, 733-34 (5th Cir. 1983)*, cert. denied, *464 U.S. 1042 (1984)*; see also *Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984)*. Perez was a § § 1981 and 1983 action, but the same approach applies in § 504 age discrimination actions. *Wright v. Revere Copper & Brass, Inc., 836 F.2d 505, 507 (11th Cir. 1988); Jones v. Frederick County Bd. of Educ., 689 F. Supp. 535, 539-40 (D. Md. 1988)*.

This Court concludes that each rejection by Columbia was a discrete and independent act for purposes of computing the statute of limitations applicable to Agron's § 504 claim. The 1986 rejection occurred less than three years before Agron [*9] brought suit in 1988. Agron's claim for the 1986 rejection is not barred by the statute of limitations.

B. Contract Statute of Limitations

Claims for breach of contract are subject to a six year statute of limitations. *N.Y. Civ. Prac. L. & R. § 213* (McKinney 1990). The statute "begins to run from the time of the breach." *John J. Kassner & Co. v. City of New York, 389 N.E.2d 99, 102, 46 N.Y.2d 544, 550, 415 N.Y.S.2d 785, 788 (1979)*.

The complaint in this case alleges "a contract established between the plaintiff and defendant whereby defendant undertook to readmit plaintiff." Am. Compl. P 12 (emphasis added). The contract was allegedly breached when Columbia "repeatedly rejected plaintiff's

applications for readmission, including a rejection issued on July 28, 1986." Am. Compl. P 13. Clearly, the complaint alleges a contract to readmit, and a breach upon rejection of applications for readmission. And just as clearly, the first rejection was in 1977.

Despite this basic clarity, Agron contends for several reasons that the 1977 rejection did not trigger the statute of limitations, and that issues of material fact remain [*10] to be resolved. Most of Agron's contentions follow from the proposition, first put forth in her memorandum opposing Columbia's motion, that the contract did not obligate Columbia to readmit her (as the complaint states), but merely to "provide [her] with educational services." Pl.'s Mem. at 13. n3 By thus recharacterizing her complaint, Agron frees herself to argue that rejection of the applications for readmission was a mere anticipatory or otherwise partial breach, not a repudiation or total breach. Agron would then be free to seek performance again and again in the future, with a new limitations period beginning with each rejection until Columbia repudiated the contract by explicitly and unambiguously refusing to "provide educational services." Pl.'s Mem. at 12-16.

> n3 Agron does not elaborate on the odd arrangement she now impliedly alleges: Columbia providing "educational services" to an unadmitted person.

The Court finds no merit in this view. First and foremost, it is inconsistent with the amended complaint, [*11] which alleges an obligation to readmit. The obligation to readmit was obviously and totally breached by rejection of Agron's application for readmission. Agron cannot replead her case in a memorandum opposing summary judgment. See *Royal Consulting, Inc. v. Agri-Mark, No. 89 Civ. 5436, 1990 WL 83445, at *2 (S.D.N.Y. June 13, 1990)* (rejecting as inconsistent with complaint plaintiff's argument in opposition to motion for summary judgment).

Second, the Court does not accept Agron's new interpretation of the alleged contract. The November 1965 letter from the dean of students stated that "because . . . [Agron] has withdrawn she is presently not a student in any status. Miss Agron may continue her studies at any time in the future." This language is not so ambiguous that the Court must entertain arguments about whether Agron would "continue her studies" as an admitted student. Agron's own understanding as represented by the allegations of the amended complaint was correct. The contract, if any, obligated Columbia to readmit her. Rejection of her 1977 application breached that obligation.

Agron also contends that a material issue of fact exists as to whether "plaintiff or [*12] defendant even took cognizance of the contract when plaintiff applied for readmission in 1977." Pl.'s Mem. of Law at 16. Agron "presented herself as an ordinary applicant and defendant apparently treated her as such" -- denying her on academic grounds rather than by openly repudiating the contract. Id. at 16, 17. Intent, however, is not required for breach of contract. n4 Even if unintentional, Columbia's breach triggered the statute of limitations.

> n4 See E. Allan Farnsworth, Farnsworth on Contracts § 8.8, at 397 (1990). Indeed, unintentional breaches are the core of contract -- its last line of defense against the encroachments of tort. See Donald C. Dowling, Jr., A Contract Theory for a Complex Tort: Limiting Interference with Contract Beyond the Unlawful Means Test, 40 Miami L. Rev. 487, 517 (1986).

The possibility that both parties acted in 1977 without regard for an underlying and potentially governing contract admittedly makes for an unusual dispute, but that [*13] possibility ultimately bolsters the Court's conclusion. The statute of limitations both serves as "a personal defense 'to afford protection to defendants against defending stale claims,'" and "expresses a societal interest or public policy 'of giving repose to human affairs.'" John J. Kassner & Co., 389 N.E.2d at 103, 46 N.Y.2d at 550, 415 N.Y.S.2d at 789 (quoting Flanagan v. Mount Eden Gen. Hosp., 248 N.E.2d 871, 872, 24 N.Y.2d 427, 429, 301 N.Y.S.2d 23, 25 (1969)). If

contractual rights are available to control a transaction, they should be invoked. If contractual rights are not honored in a transaction, it is up to the disappointed party to vindicate them. Agron's failure to do so within six years of the breach bars her later-filed contract claim in this Court.

### C. Estoppel

Paragraph 16 of Agron's amended complaint asserts that Columbia "is and was estopped from denying its promises and contractual undertakings to readmit plaintiff." Columbia contends that New York law recognizes estoppel in only a few limited circumstances, none of which are present in this [*14] case. Def.'s Mem. of Law at 12 n.5 (citing Swerdloff v. Mobil Oil Corp., 74 A.D.2d 258, 427 N.Y.S.2d 266, 268-69 (App. Div. 1980)). Agron's papers do not even contain a defense of her estoppel claim. The Court finds that Columbia is entitled to summary judgment on the estoppel claim.

### CONCLUSION

Columbia's motion for summary judgment is hereby denied with respect to Agron's handicap discrimination claim, and granted with respect to Agron's contract and estoppel claims.

It Is So Ordered.

Dated: New York, New York
March 31, 1993

Mary Johnson Lowe

United States District Judge



LEXSEE 1974 U.S. DIST. LEXIS 8036

HUGHES v. GENERAL MOTORS CORP.

[NO NUMBER IN ORIGINAL]

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1974 U.S. Dist. LEXIS 8036; 18 Fed. R. Serv. 2d (Callaghan) 1249*

**June 18, 1974, Decided**

JUDGES: [*1] CARTER

OPINIONBY: CARTER

OPINION:

CARTER, District Judge. Plaintiff has filed a motion for an order pursuant to *Rule 30 and 34 of the Federal Rules of Civil Procedure*, directing the defendant to submit to a continued deposition by its president, Edward N. Cole, directing the defendant to furnish plaintiff with copies of exhibits identified during defendant's deposition of March 11, 1974, and enlarging plaintiff's time to complete discovery. As I understand defendant's position, it does not oppose furnishing the exhibits identified at the deposition in question, nor does it oppose complying with plaintiff's notice for the production of documents dated March 1, except for Item No. 10. Both parties join in the motion to enlarge the time for completion of pretrial discovery.

Defendant moves pursuant to *Rule 37, Fed R Civ P*, for an order directing the plaintiff to serve further and more complete answers to defendant's second set of interrogatories, or, in the alternative, pursuant to *Rule 26, Fed R Civ P*, for an order directing the depositions of all persons who inspected on the plaintiff's behalf the vehicle which is the subject matter of this action.

The motion for the production of exhibits and [*2] documents is granted except as to Item No. 10 in plaintiff's notice to produce dated March 1. The time for the completion of the discovery is to be enlarged to a period agreed upon by the parties and approved by the court. The motion to take the deposition of defendant's president is denied. No good cause exists to require defendant to submit its president for a deposition when it is clear that the information plaintiff wants is available through other employees of defendant, and such employees have been questioned or on plaintiff's request can be questioned. The request borders on harassment and would at best result in a duplication of testimony. See *New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp., 24 FRD 186 (SDNY 1959)*.