SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>       Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>       Defendant/Counterclaim-Plaintiff. | **IBM'S UNSEALED SUR-REPLY<br>MEMORANDUM IN FURTHER<br>OPPOSITION TO SCO'S MOTION FOR<br>LEAVE TO FILE A THIRD AMENDED<br>COMPLAINT**<br>**[Docket 407]**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................................1

Argument ....................................................................................................................................2

I.     SCO'S UNDUE DELAY IN SEEKING TO AMEND ITS COMPLAINT BARS
       A FINDING OF GOOD CAUSE UNDER RULE 16(b)....................................................2

II.    SCO'S MOTION SHOULD ALSO BE DENIED UNDER RULE 15(a)...........................7

      A.     SCO's Proposed Claim Is Unduly Delayed, And Allowing SCO To Assert
           It Here Would Impose Undue Prejudice On IBM. .................................................7

      B.     SCO's Proposed Copyright Claim Is Futile............................................................9

            1.     Section 22.3 Is Applicable To The Proposed Claim...................................9

            2.     IBM Has Not Waived The Right To Enforce The Venue Provision. ........13

            3.     The Limitations Provision Bars SCO's Proposed Claim...........................15

Conclusion ................................................................................................................................16

## TABLE OF AUTHORITIES

<u>Cases</u>

Altech Controls Corp. v. E.I.L. Instruments, Inc.,
      33 F. Supp. 2d 546 (S.D. Tex. 1998) ........................................................................ 6

Braintree Labs., Inc. v. Nephro-Tech, Inc.,
      31 F. Supp. 2d 921 (D. Kan. 1998) ................................................................... 7, 8-9

The Bremen v. Zapata Offshore Co.,
      407 U.S. 1 (1972) ...................................................................................... 14-15

Brink's Inc. v. City of New York,
      528 F. Supp. 1084 (S.D.N.Y. 1981) ........................................................................ 10

Cambridge Nutrition A.G. v. Fotheringham,
      840 F. Supp. 299 (S.D.N.Y. 1994) ........................................................................ 11

Campbell v. Bartlett,
      975 F.2d 1569 (10th Cir. 1992) ........................................................................ 14

Digital Envoy, Inc. v. Google, Inc.,
      319 F. Supp. 2d 1377 (N.D. Ga. 2004) ........................................................................ 12

Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99-10550,
      2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ........................................................................ 12

Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,
      269 F.3d 1149 (10th Cir. 2001) ........................................................................ 14

D'Zurella v. Kansas, No. 90-3202,
      930 F.2d 33, 1991 WL 47101 (10th Cir. Mar. 18, 1991) ........................................... 8

Entous v. Viacom Int'l, Inc.,
      151 F. Supp. 2d 1150 (C.D. Cal. 2001) ........................................................................ 16

Fireman's Fund Ins. Co. v. Warehouse No. 1, Inc., No. 89-4069,
      1989 U.S. Dist. LEXIS 13507 (S.D.N.Y. Nov. 14, 1989) ........................................ 10

General Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist.,
      647 N.E.2d 1329 (N.Y. 1995) ........................................................................ 13

Harbor Court Assocs. v. Leo A. Daly Co.,
      179 F.3d 147 (4th Cir. 1999) ........................................................................ 16

Hasse v. American Photograph Corp.,
      299 F.2d 666 (10th Cir. 1962) ........................................................................ 14

In re Indep. Servs. Orgs. Antitrust Litig.,
    85 F. Supp. 2d 1130 (D. Kan. 2000)..................................................................... 15

In re Indep. Serv. Orgs. Antitrust Litig.,
    114 F. Supp. 2d 1070 (D. Kan. 2000)...................................................................... 5

J T Gibbons, Inc. v. Sara Lee Corp., No. 93-4050,
    1995 WL 619770 (E.D. La. Oct. 19, 1995) ............................................................ 3

Jackson Jordan, Inc. v. Plasser Am. Corp.,
    219 U.S.P.Q. 922 (E.D. Va. 1983)......................................................................... 5

Jacobsen v. Deseret Book Co.,
    287 F.3d 936 (10th Cir. 2002) ............................................................................... 5

Keating v. Baskin-Robbins USA Co., No. 99-0148,
    2001 WL 407017 (E.D.N.C. Mar. 27, 2001) ........................................................ 12

Kepner-Tregoe, Inc. v. Executive Dev., Inc.,
    79 F. Supp. 2d 474 (D.N.J. 1999) .......................................................................... 6

Konstant Prods. Inc. v. Frazier Indus. Co., Inc., No. 91-4491,
    1993 U.S. Dist. LEXIS 7957 (N.D. Ill. June 7, 1993) ............................................ 4

Kreinik v. Showbran Photo, Inc., No. 02-1172,
    2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003) ...................................................... 8

Lowden v. Northwestern Nat'l Bank & Trust Co.,
    84 F.2d 847 (8th Cir. 1936) ................................................................................... 3

McGarvey v. Citibank (N.D.) N.A., No. 95-0123,
    1995 WL 404866 (N.D. Ill. July 5, 1995)............................................................... 9

Mead v. Future Med. Publ'g, Inc., No. 98-0554,
    1999 WL 1939256 (M.D.N.C. Feb. 22, 1999)....................................................... 12

Medinol Ltd. v. Boston Sci. Corp.,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004).................................................................. 14

MGA, Inc. v. Centri-Spray Corp.,
    639 F. Supp. 1238 (E.D. Mich. 1986).................................................................... 4

Monsanto Co. v. McFarling,
    302 F.3d 1291 (Fed. Cir. 2002)............................................................................ 12

Nassau Trust Co. v. Montrose Concrete Prods. Corp.,
    436 N.E.2d 1265 (N.Y. 1982)........................................................................... 13-14

Nelson v. A.O. Smith Harvestore Prods., Inc., No. 86-4230,
    1990 WL 192738 (D. Kan. Nov. 30, 1990) ................................................................ 9

Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects,
    206 A.D.2d 896 (N.Y. App. Div. 1994) ................................................................ 16

Ory v. McDonald,
    68 U.S.P.Q.2d 1812 (C.D. Cal. 2003)....................................................................... 4

Pearson v. Central Ill. Light Co.,
    210 F.2d 352 (7th Cir. 1954) ................................................................................... 6

Phelps v. Hamilton,
    166 F.R.D. 489 (D. Kan. 1996).................................................................................. 7

Pickering v. USX Corp.,
    758 F. Supp. 1460 (D. Utah 1990)........................................................................... 9

Raymond Int'l, Inc. v. City of New York,
    511 F. Supp. 773 (S.D.N.Y. 1981) ........................................................................ 10

Ripley v. Aetna Ins. Co.,
    30 N.Y. 136 (N.Y. 1864) ....................................................................................... 10

Roboserve, Inc. v. Kato Kagaku Co., Ltd.,
    78 F.3d 266 (7th Cir. 1996) ................................................................................... 14

Robshaw v. Health Mgmt., Inc.,
    98 A.D.2d 986 (N.Y. App. Div. 1983) ................................................................. 11

Rockwell Int'l Corp. v. Goss Graphic Sys., Inc., No. 00-8763,
    2001 WL 293818 (S.D.N.Y. Mar. 27, 2001) ....................................................... 12

Rogen v. Memry Corp.,
    886 F. Supp. 393 (S.D.N.Y. 1995) ....................................................................... 14

Ronnen v. Ajax Elec. Motor Corp.,
    671 N.E.2d 534 (N.Y. 1996)............................................................................ 10-11

Schock v. United States,
    21 F. Supp. 2d 115 (D. R.I. 1998) ........................................................................... 6

Soot v. Gen. Elec. Co.,
    681 F. Supp. 157 (S.D.N.Y. 1987) ........................................................................... 6

Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters,
    20 F.3d 720 (7th Cir. 1994) ..................................................................................... 9

Steward v. Up N. Plastics, Inc.,
    177 F. Supp. 2d 953 (D. Minn. 2001) ................................................................ 14-15

Technology Express, Inc. v. FTF Bus. Sys. Corp., No. 99-11692,
    2000 WL 222628 (S.D.N.Y. Feb. 25, 2000) ........................................................... 15

Tokio Marine & Fire Ins. Co., Ltd. v. Nippon Express U.S.A., Inc.,
    118 F. Supp. 2d 997 (C.D. Cal. 2000) ................................................................... 15

Turtur v. Rothschild Registry Int'l, Inc.,
    26 F.3d 304 (2d Cir. 1994) ................................................................................... 11

Wanlass v. Gen. Elec. Co.,
    148 F.3d 1334 (Fed. Cir. 1998) ........................................................................ 5, 6,

Ward Enters., Inc. v. Bang & Olufsen Am., No. 02-7640,
    2004 WL 830461 (N.D. Ill. Apr. 15, 2004) ........................................................... 11

Warnaco Inc. v. VF Corp.,
    844 F. Supp. 940 (S.D.N.Y. 1994) ...................................................................... 12

Warner & Swasey Co. v. Salvagnini Transferica S.p.A.,
    633 F. Supp. 1209 (W.D.N.Y. 1986) .................................................................... 12

Weaver v. Univ. of Cincinnati,
    758 F. Supp. 446 (S.D. Ohio 1991) ................................................................... 9-10

Wood v. Santa Barbara Chamber of Commerce, Inc.,
    705 F.2d 1515 (9th Cir. 1983) .............................................................................. 6

YWCA v. HMC Entm't, Inc., No. 91-7943,
    1992 WL 279361 (S.D.N.Y. Sept. 25, 1992) ......................................................... 12

Zions First Nat'l Bank v. Allen,
    688 F. Supp 1495 (D. Utah 1988) ........................................................................ 14

**Other Authorities**

DUCivR 7-1(b)(3) ........................................................................................................ 9

5A Charles A. Wright & Arthur R. Miller,
    Federal Practice & Procedure 1397 (1990) ........................................................... 14

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this sur-reply memorandum in further opposition to Plaintiff/Counterclaim-Defendant The SCO Group, Inc.'s ("SCO") Motion for Leave to File a Third Amended Complaint.

## Preliminary Statement

SCO seeks improperly to extend and expand this case just as it should be coming to a close. SCO asks the Court to add a complicated, new claim that cannot (by contract) be brought in this Court and that SCO could seek to file in another forum without causing much of the prejudice threatened by the present motion. SCO's motion to amend should be denied for two primary reasons.

First, SCO's motion should be denied because SCO cannot establish good cause under Rule 16 of the Federal Rules of Civil Procedure for its failure to make this motion before the deadline for amending the pleadings. SCO's reply papers dismiss the documentary evidence showing that it knew of the proposed claim years ago on the grounds that it is unclear or ambiguous, and on the grounds that SCO knew nothing of the evidence in any event. As we show below, SCO's papers distort the record. There is no reasonable doubt that SCO knew of the proposed claim years ago. Moreover, even if the documentary evidence were ambiguous and SCO did not actually know of the proposed claim, it clearly should have known of the claim. At a minimum, SCO was on inquiry notice, based upon the public record and the documents in SCO's own files, of a claim it failed to investigate. Having failed to investigate the proposed claim, SCO cannot establish good cause to bring it at this late date in this litigation. (See Section I below.)

Second, SCO's motion should be denied under Rule 15 of the Federal Rules of Civil Procedure because (1) it is unduly delayed; (2) adding the proposed claim would be unduly prejudicial to IBM; (3) denying the motion would result in no prejudice to SCO as it could seek

1

to bring the claim in another forum; and (4) the proposed claim is futile insofar as it is barred by contractual venue and limitations provisions. SCO's reply papers raise new and contradictory arguments that, in the end, fail to support its motion for leave to amend. (See Section II below.)

While the proposed claim is demonstrably without merit, we do not dwell on its shortcomings here. Despite SCO's invitation, the Court cannot resolve the claim on the merits in deciding this motion. The primary issue here is whether SCO should be allowed to amend its complaint to add a claim that will complicate and delay an already complicated case, where that claim could be—indeed, by contract, must be—asserted in a New York forum and there would be no prejudice to SCO in requiring it to assert the claim there.

### Argument

I. **SCO'S UNDUE DELAY IN SEEKING TO AMEND ITS COMPLAINT BARS A FINDING OF GOOD CAUSE UNDER RULE 16(b).**

As explained in IBM's opposition papers, SCO knew or should have known the facts relating to its proposed copyright claim many years ago—long before the deadline for the amendment of pleadings and even before SCO filed its original complaint. Nothing in SCO's reply papers justifies its delay in seeking to add the proposed claim. Nor does anything in SCO's reply papers establish the good cause necessary for it to prevail on this motion.

SCO relies on two primary arguments to explain away its delay in seeking to bring the proposed claim. First, SCO dismisses the evidence that it knew of the proposed claim years ago on the grounds that the evidence is unclear or ambiguous.[1] There is nothing unclear or

---

[1] Specifically, SCO argues that (1) references to AIX 5L in many of the documents were ambiguous as to whether the document was referring to AIX 5L for Itanium (for which product SCO concedes IBM had a license to use SVR4 code) or AIX for Power; and (2) references in many of the documents to "System V" were ambiguous because it is a generic term which could have been referring to System V Release 3 (for which SCO concedes IBM had a license), rather than System V Release 4. (See SCO Reply Br. at 8-9.) The argument is baseless. Putting aside SCO's sophisticated knowledge, as an alleged successor of a partner in Project Monterey and alleged owner of UNIX, of AIX 5L and System V, each of the documents submitted with IBM's opposition brief expressly references (generally multiple times) both the fact that AIX 5L

2

ambiguous about the evidence submitted with IBM's opposition brief, much of which comes right out of SCO's files and/or was produced by it in this litigation. The evidence makes perfectly clear that SCO knew IBM included SVR4 code in its AIX for Power product (as the parties to Project Monterey agreed IBM was permitted to do). For example, in an August 11, 2000 e-mail, John Boland of The Santa Cruz Operation, Inc. ("Santa Cruz"), SCO's alleged predecessor-in-interest, distributed internally a press release prepared by IBM announcing the upcoming release of AIX 5L for Power and IA-64. (See Declaration of Todd M. Shaughnessy, dated Nov. 30, 2004, "Shaughnessy Decl." Ex. 10.) The press release makes clear that AIX 5L for Power, like AIX 5L for IA-64, contained "key technologies" from "UnixWare" and "UNIX System 5 [SVR4]". (Id. at SCO1374969-70 (emphasis added).) In particular, the release noted that "[a]mong the UNIX System V technologies to be incorporated in this release is the SVR4 printing subsystem". (Id. at SCO1374970 (emphasis added).)[2]

   Second, SCO contends that even if the documentary evidence showed that IBM included SVR4 code in its AIX for Power product, SCO did not know about it. (See SCO Reply Br. at 8.) SCO relies primarily on the declaration of Jay Petersen, a SCO employee who says that he personally did not know about the documents, at least until he read about them in IBM's opposition brief. (See Petersen Decl. ¶¶ 11, 12.) As an initial matter, Mr. Petersen cannot testify as to what SCO or Santa Cruz did not know; he can properly speak only to what he knew.[3] Further, whether Mr. Petersen personally knew of the documents says nothing about whether

---

operated on IBM's Power processor and the fact that it contained System V Release 4 (SVR4) code.

[2] Similarly, an August 2000 report prepared by IDC on the beta release of AIX 5L "for Power Architecture systems" lists the "Unix SVR4 printing subsystem" as one of the features included in the AIX 5L beta release. (Shaughnessy Decl. Ex. 13 at SCO1294139-40 (emphasis added).)

[3] See, e.g., Lowden v. Northwestern Nat'l Bank & Trust Co., 84 F.2d 847, 853 (8th Cir. 1936) (finding that bank employee "could not . . . testify as to what other officers of the bank knew or did not know"); J T Gibbons, Inc. v. Sara Lee Corp., No. 93-4050, 1995 WL 619770, at *4 (E.D. La. Oct. 19, 1995) (finding that affiant is "unable to competently testify as to what another person . . . knew, did not know, or should have known") (attached as Exhibit A).

SCO knew about IBM's use of SVR4 code in the AIX for Power product. Mr. Petersen's lack of knowledge in no way undermines the force of the documents (submitted with IBM's opposition brief) showing that others at SCO knew that IBM included SVR4 code in the AIX for Power product.[4]

Recognizing that Santa Cruz knew that AIX for Power included SVR4 code, SCO states that it cannot be charged with the knowledge of Santa Cruz. (See SCO Reply Br. at 7 (stating that many of the documents were "from the files of [Santa Cruz], [] which SCO did not see at the time").) That is wrong as a matter of law. The case law is clear that SCO is charged with what Santa Cruz knew or should have known. See, e.g., Ory v. McDonald, 68 U.S.P.Q. 2d 1812, 1817 (C.D. Cal. 2003) (stating that "a successor-in-interest is charged with the knowledge and dilatory conduct of its predecessors" (internal quotation omitted)); Konstant Prods. Inc. v. Frazier Indus. Co., Inc., No. 91-4491, 1993 U.S. Dist. LEXIS 7957, at *47 (N.D. Ill. June 7, 1993) (ruling that defendant was "charged with the knowledge of [its predecessor-in-interest] and the consequences of his dilatory conduct") (attached as Exhibit B); MGA, Inc. v. Centri-Spray Corp., 639 F. Supp. 1238, 1242 (E.D. Mich. 1986) (finding that successor-in-interest is charged with "consequences of [predecessor-in-interest's] knowledge and dilatory conduct").

Even if (contrary to fact) the information in the public domain and SCO's own files was ambiguous and SCO did not know that the AIX for Power product included SVR4 code, the

---

[4] To further support the proposition that SCO did not know that IBM included code from SVR4 in the AIX for Power product, Mr. Petersen states that "SCO was neither an IBM support provider nor have [sic] any IBM hardware or software for which it needed support" and therefore had no reason to see the industry reports or product guides that describe AIX. (Petersen Decl. ¶ 14.) This is a frivolous assertion. IBM licensed code from AIX to Santa Cruz as part of Project Monterey, and SCO purports to have acquired Santa Cruz's rights. Whether or not Santa Cruz or SCO supported IBM hardware or software, Santa Cruz was IBM's partner in Project Monterey and marketed products in competition with AIX (as did SCO). Moreover, SCO cannot credibly contend that it had no reason to see industry reports or product guides that describe AIX when it was not only an industry participant but IBM's partner in the development of AIX 5L, produced product information and industry reports about AIX 5L in this litigation, and at least co-sponsored a website describing AIX for Power. (See, e.g., Shaughnessy Decl. Ex. 10, 11, 13.)

4

proposed amendment is unduly delayed and SCO's motion should be denied. SCO does not

dispute that IBM's use of SVR4 code in the AIX for Power product has long been a matter of

public record (whether or not SCO had actual knowledge of it); nor does SCO dispute that the

documents in its own files were at least ambiguous as to whether the AIX for Power product

included SVR4 code.[5] These facts are fatal to SCO's motion.

Contrary to SCO's contention, both the public record (including IBM's marketing of the

AIX for Power product as including SVR4 code) and the documents in SCO's files (even if

ambiguous) triggered a duty to investigate IBM's use of SVR4 code in its AIX for Power

product.[6] See Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1338 (Fed. Cir. 1998) (finding that

"sales, marketing, publication, or public use of a product similar to or embodying technology

---

[5] Instead, SCO argues that it was "reasonably entitled to believe" that IBM would not use SVR4 code in its AIX for Power product and that SCO did not have a duty to investigate whether IBM had done so. SCO seeks to buttress this argument with the fact that IBM did not execute a proposed Supplement C to the JDA, which according to SCO would have given IBM a license to use SVR4 code in the AIX for Power product. (See SCO Reply Br. at 10.) As an initial matter, whether or not IBM executed the proposed Supplement C is irrelevant to whether it had a license. IBM had a license to use SVR4 code in the AIX for Power product entirely independent of proposed Supplement C. In any event, the significance, if any, of IBM's not signing proposed Supplement C concerns the merits of SCO's proposed claim, not whether the claim can properly be added to this case, and thus is immaterial to this motion. Moreover, whatever the significance of proposed Supplement C, the fact remains, as discussed herein, that SCO knew or should have known, based on the documentary evidence alone, that IBM included SVR4 code in the AIX for Power product.

The only case on which SCO relies to support the argument, In re Indep. Serv. Orgs. Antitrust Litig., 114 F. Supp. 2d 1070 (D. Kan. 2000), is inapposite. The court in that case stated only that "[c]opyright holders should not be forced to conduct investigations every time they exercise their right to refuse to license a copyrighted product." Id. at 1112. The court did not hold that copyright holders should never be required to conduct investigations. The law clearly imposes a duty to investigate. SCO's duty to investigate here is not based on the fact that IBM did not sign proposed Supplement C; rather, it is based on the documentary evidence.

[6] SCO cites two cases for the proposition that it did not have a "duty to investigate" potential infringement. (See SCO Reply Br. at 6-7.) Not only do these cases not support SCO's proposition, they stand for the opposite proposition, i.e., where, as here, a copyright holder possesses evidence of the alleged infringement, it does in fact have a duty to investigate. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 950 (10th Cir. 2002) (finding that copyright holder must "exercise reasonable diligence in protecting his rights" (internal quotation omitted)); Jackson Jordan, Inc. v. Plasser Am. Corp., 219 U.S.P.Q. 922, 926 (E.D. Va. 1983) (stating that "it is well settled that a patent holder is charged with a duty of diligent inquiry").

similar to the patented invention, or published descriptions of the defendant's potentially

infringing activities, give rise to a duty to investigate"); Kepner-Tregoe, Inc. v. Executive Dev.,

Inc., 79 F. Supp. 2d 474, 488 (D.N.J. 1999) (finding that plaintiff reasonably should have

discovered alleged infringement where defendant "published, promoted, and sold its materials in

the public domain . . . especially in light of the fact that the two companies competed within a

highly specialized service industry" because reasonable copyright holder, "motivated by his

interest in recovering for and preventing infringement, keeps abreast of the activities of those in

his field of endeavor").[7]

A party that fails to comply with its duty to investigate "is charged with knowledge of

facts constituting infringement which could have been discovered in the exercise of reasonable

diligence." Soot v. Gen. Elec. Co., 681 F. Supp. 157, 166 (S.D.N.Y. 1987); see Wanlass, 148

F.3d at 1338 (finding that "constructive knowledge of the infringement may be imputed to the

patentee even where he has no actual knowledge of the sales, marketing, publication, public use,

or other conspicuous activities of potential infringement if these activities are sufficiently

prevalent in the inventor's field of endeavor"); Wood v. Santa Barbara Chamber of Commerce,

Inc., 705 F.2d 1515, 1521 (9th Cir. 1983) (finding that "equity will impute to a litigant

knowledge of facts that would have been revealed by reasonably required further investigation").

Even if SCO did not have actual knowledge of the conduct underlying the proposed claim, it

---

[7] See also Altech Controls Corp. v. E.I.L. Instruments, Inc., 33 F. Supp. 2d 546, 551-52 (S.D. Tex. 1998) (finding that "in view of the prior [business] relationship between the parties and the limited size of the industry, and evidence that Plaintiffs were aware of [defendant's] alleged infringing products, if that awareness was not actual knowledge, but merely constructive knowledge, . . . Plaintiffs had a duty to investigate"); Pearson v. Central Ill. Light Co., 210 F.2d 352, 356-57 (7th Cir. 1954) (ruling that plaintiff is charged with "such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry" (internal quotation omitted)); Schock v. United States, 21 F. Supp. 2d 115, 119-20 (D. R.I. 1998) (finding that a plaintiff assumes a "duty to investigate where there was some warning that there might have been an injury" and that the "triggering warning need not alert the plaintiff to both injury and cause, but it must suggest that something is wrong" (emphasis added)).

6

would have known about it if it had properly discharged its duty to investigate. Having failed to exercise reasonable diligence, SCO cannot establish good cause for its delay in bringing the proposed claim.

## II.      SCO'S MOTION SHOULD ALSO BE DENIED UNDER RULE 15(A).

### A.      SCO's Proposed Claim Is Unduly Delayed, And Allowing SCO To Assert It Here Would Impose Undue Prejudice On IBM.

As stated in IBM's opposition brief (and discussed above), SCO knew or should have known of the alleged infringement many years ago and in any case before it commenced this action and before the deadline for amending pleadings. Allowing SCO to assert its proposed claim would be unduly prejudicial to IBM. Putting aside the fact that allowing the claim to proceed in Utah would deny IBM its rights under the venue and limitations provisions of the JDA (discussed below), the proposed claim would complicate this case, require substantial additional discovery and significantly prolong these proceedings.

SCO's reply papers do not undertake to show that denial of SCO's motion would result in prejudice to SCO. It would not. Denial of SCO's motion would not be an adjudication on the merits and would therefore be without prejudice to SCO's right to seek to assert the proposed claim in an appropriate forum in New York (as required by the JDA). See Braintree Labs., Inc. v. Nephro-Tech, Inc., 31 F. Supp. 2d 921, 924 (D. Kan. 1998) (denying motion to amend complaint, noting that plaintiff failed to "identify what, if any, harm will result if it is required to commence a separate action"); Phelps v. Hamilton, 166 F.R.D. 489, 492 (D. Kan. 1996) (denying motion to amend complaint, stating that plaintiff may raise its proposed claim "by filing a new complaint").

The only arguments offered by SCO to show that the proposed amended complaint would *not be prejudicial to IBM are unavailing. First,* SCO contends that IBM would not be prejudiced by the addition of the proposed claim on the grounds that IBM's Ninth Counterclaim

"encompasses SCO's copyright claim". (SCO Reply Br. at 13.) As we have repeatedly advised SCO, however, IBM's Ninth Counterclaim was not intended to and does not encompass SCO's proposed claim.[8] Even if (contrary to IBM's intent) the Ninth Counterclaim could be construed as SCO suggests, IBM has stipulated to the limited scope of the claim and submitted a proposed order to that effect.

Second, SCO does not dispute that its proposed claim would require additional discovery.[9] Rather, it contends that the need for additional discovery is not an adequate basis for a finding of prejudice.[10] (See SCO Reply Br. at 14.) The law is clear, however, that the need for additional discovery can cause prejudice sufficient to justify denial of a motion to amend, as is the case here. See, e.g., D'Zurella v. Kansas, No. 90-3202, 930 F.2d 33, 1991 WL 47101, at **1 (10th Cir. Mar. 18, 1991) (Table) (identifying "prejudice to defendants from the need to undertake additional discovery" as part of rationale for affirming denial of motion to amend complaint) (attached as Exhibit C); Braintree Labs., 31 F. Supp. 2d at 923-24 (finding undue prejudice where allowing additional claim "would necessitate additional discovery previously

_____

[8] IBM's Ninth Counterclaim seeks only a declaration that IBM's continued distribution of its AIX product, after SCO's purported termination of IBM's AT&T Unix License, does not infringe SCO's alleged copyrights. The counterclaim does not seek a declaration that IBM's use in its AIX for Power product of code from Project Monterey does not infringe SCO's alleged copyrights. IBM had no reason to seek such a declaration at the time it asserted its Ninth Counterclaim; SCO had not then alleged that the inclusion of Project Monterey code in the AIX for Power product infringes SCO's alleged copyrights.

[9] SCO impliedly acknowledges that the proposed claim would require additional discovery when it states that "prosecution of SCO's proposed claim would require the presentation of substantially the same evidence that SCO would adduce in order to defend against IBM's Ninth Counterclaim". (SCO Reply Br. at 13 (emphasis added).)

[10] The only case cited by SCO, Kreinik v. Showbran Photo, Inc., No. 02-1172, 2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003), does not stand for this proposition. In Kreinik, the court expressly identified "whether the assertion of the new claim would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial" as a factor evidencing undue prejudice. Id. at *10. Further, that case is inapposite because the court found that the additional claims sought to be added would neither require "substantial additional discovery" nor "call for a great expenditure of resources or significantly prolong the dispute." Id.

uncontemplated by defendants"); Nelson v. A.O. Smith Harvestore Prods., Inc., No. 86-4230,
1990 WL 192738, at *2 (D. Kan. Nov. 30, 1990) (finding that "additional discovery or
preparation which would be required as a result of the belated addition of new claims is
recognized as a source of prejudice justifying denial of a motion to amend") (attached as Exhibit
D).

B.    SCO's Proposed Copyright Claim Is Futile.

In its opening brief, SCO acknowledged that Section 22.3 of the JDA, which includes
venue and limitations restrictions, applies to its proposed claim. (SCO Mem. at 5.) SCO argued
only that IBM had waived the right to enforce Section 22.3 by asserting its Ninth Counterclaim.
For the first time in its reply brief, SCO argues (contrary to its prior position) that Section 22.3 is
inapplicable and that IBM waived the right to enforce the venue provision by failing to raise "the
'defense of improper venue' in its responsive pleading." (SCO Reply Br. at 16.) These
arguments are unavailing.

1.    Section 22.3 Is Applicable To The Proposed Claim.

As an initial matter, courts generally refuse to consider arguments raised in a reply brief
that either are raised for the first time in the reply or reflect a change in position from that stated
in the party's opening brief. See DUCivR 7-1(b)(3) (stating that "reply memorandum must be
limited to rebuttal of matters raised in the memorandum opposing the motion"); Pickering v.
USX Corp., 758 F. Supp. 1460, 1461 n.2 (D. Utah 1990) (refusing to rule on argument raised for
first time in reply memorandum); Stevens v. Northwest Ind. Dist. Council, United Bhd. of
Carpenters, 20 F.3d 720, 728 n.18 (7th Cir. 1994) (finding argument in reply brief to be waived
where party "change[d] their approach in their reply brief").[11]  The Court should decline to

---

[11] See also McGarvey v. Citibank (N.D.) N.A., No. 95-0123, 1995 WL 404866, at *4 (N.D. Ill.
July 5, 1995) (stating that plaintiff's "attempt to change the definition [of a key term] in his reply
is unacceptable" and refusing to consider the modified argument) (attached as Exhibit E);
Weaver v. Univ. of Cincinnati, 758 F. Supp. 446, 450 n.2 (S.D. Ohio 1991) (stating that court

consider SCO's argument that Section 22.3 is inapplicable because SCO not only raised the argument for the first time in its reply brief but the argument also reflects a change of position by SCO.

Even if SCO had not conceded the applicability of Section 22.3 in its opening brief, Section 22.3 plainly applies to the proposed claim. Section 22.3 expressly governs "[a]ny legal or other action related to a breach of this Agreement". (Shaughnessy Decl. Ex. 1 § 22.3.) The copyright claim that SCO seeks to add is plainly a legal claim "related to [an alleged] breach" of the JDA. Not only is the "related to a breach" language broad enough to encompass SCO's claim for copyright infringement, but also the JDA expressly contemplates copyright claims arising under the JDA.[12]

In arguing that Section 22.3 does not apply, SCO reads language out of the clause "any legal or other action related to a breach of this Agreement" and pretends the clause refers only to a claim for breach of contract.[13] (SCO Reply Br. at 15.) Contrary to SCO's approach, the law requires that a contract be construed to give meaning to all of its terms. See, e.g., Ronnen v.

---

would "address only the merits of defendants' original contention" where defendants "shift[ed] their argument" in their reply brief).

[12] Although Section 22.3 does not expressly mention a claim for copyright infringement, Section 20.1 expressly excepts claims for copyright infringement from the $5 million limitation on liability for actual damages. (See Shaughnessy Decl. Ex. 1 § 20.1.) Thus, the JDA expressly contemplated that copyright claims, related to a breach of the JDA, might arise. The fact that the parties expressly excepted copyright claims from the $5 million limitation provision in Section 20.1, but did not except copyright claims from the forum and limitations provisions in Section 22.3, demonstrates that the parties intended Section 22.3 to govern copyright claims.

[13] SCO has not cited (and cannot cite) any authority to support its proposed rewrite of the JDA. SCO cites three cases for the proposition that a limitations provision must be strictly construed. (See SCO Reply Br. at 15.) None of those cases holds that a court should read language out of a contract. Indeed, they hold that contractual limitations provisions should be enforced provided the prescribed period is reasonable, as it is here. See Brink's Inc. v. City of New York, 528 F. Supp. 1084, 1086 (S.D.N.Y. 1981) (quoting Ripley v. Aetna Ins. Co., 30 N.Y. 136, 163 (N.Y. 1864)); Fireman's Fund Ins. Co. v. Warehouse No. 1, Inc., No. 89-4069, 1989 U.S. Dist. LEXIS 13507, at *11 (S.D.N.Y., Nov. 13, 1989) (attached as Exhibit F) ; Raymond Int'l, Inc. v. City of New York, 511 F. Supp. 773, 776 (S.D.N.Y. 1981).

Ajax Elec. Motor Corp., 671 N.E.2d 534, 536 (N.Y. 1996); Robshaw v. Health Mgmt., Inc., 98
A.D.2d 986, 986 (N.Y. App. Div. 1983).

Moreover, SCO's new argument ignores both its proposed pleading and its opening brief
in connection with this motion, which make clear that the proposed copyright claim is a legal
claim "related to a breach" of the JDA. SCO alleges that IBM infringed SCO's purported
copyrights by exceeding the scope of its rights under, and thereby breaching, the JDA. For
example, in its proposed complaint, SCO states that "IBM converted SCO's copyrighted code for
IBM's own use, in violation of the specific restrictions of the parties' Joint Development
Agreement". (Third Am. Compl. ¶ 217 (emphasis added).) In its opening brief, SCO states that
IBM "ignored the [JDA's] restrictions on its use of SCO's SVR4 code" and released an Itanium
product that "did not satisfy the conditions of a 'Product Release'" under the Project Monterey
agreements. (SCO Mem. at 10, 12.)

Courts have construed language comparable to the "related to" language at issue here to
include non-contract claims such as SCO's proposed copyright claim.[14]  See, e.g., Turtur v.
Rothschild Registry Int'l, Inc., 26 F.3d 304, 309-10 (2d Cir. 1994) (holding "arising out of or
relating to" language to apply to tort as well as contract claims); Ward Enters., Inc. v. Bang &
Olufsen Am., No. 02-7640, 2004 WL 830461, at *2 (N.D. Ill. Apr. 15, 2004) (finding that "the
scope of 'relating to' language is broad and is intended to cover a much wider scope of disputes,
not just those arising under the agreement itself" (internal quotation omitted)) (attached as
Exhibit G); Cambridge Nutrition A.G. v. Fotheringham, 840 F. Supp. 299, 300-02 (S.D.N.Y.

---

[14] SCO attempts to distinguish the cases cited in IBM's opposition brief on the grounds that the
forum selection clause in those cases employed broader language (e.g., "all disputes arising out
of this Agreement") than the "related to a breach" language in the JDA. Not only is this
supposed distinction without a difference, but also (as stated) SCO's proposed claim is, by its
own admission, premised on IBM's alleged "violation of the specific restrictions of the parties'
Joint Development Agreement". (Proposed Third Am. Compl. ¶ 217.)

1994) (applying forum selection clause referring to "any claim, dispute or controversy relating to this Agreement" to tort claim for unfair competition).[15]

In fact, courts have construed more restrictive language to include non-contract claims such as SCO's proposed copyright claim. See, e.g., Monsanto Co. v. McFarling, 302 F.3d 1291, 1294-96 (Fed. Cir. 2002) (holding patent claims were subject to forum selection clause applicable to "all disputes arising under" contract); Rockwell Int'l Corp. v. Goss Graphic Sys., Inc., No. 00-8763, 2001 WL 293818, at *1-2 (S.D.N.Y. Mar. 27, 2001) (applying forum selection clause using "arising out of this Agreement" language to copyright claim because resolution of claims "relate to the interpretation of the Agreement") (attached as Exhibit J); Warner & Swasey Co. v. Salvagnini Transferica S.p.A., 633 F. Supp. 1209, 1211-12 (W.D.N.Y. 1986) (finding "on the basis of an alleged breach" language in forum selection clause applicable to claim for patent infringement).[16]

---

[15] See also Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1380-81 (N.D. Ga. 2004) (applying forum selection clause to claims for misappropriation of trade secrets and unfair competition where clause covered "[a]ny lawsuit regarding this Agreement"); Keating v. Baskin-Robbins USA, Co., No. 99-0148, 2001 WL 407017, at *8 (E.D.N.C. Mar. 27, 2001) (finding that one-year contractual limitation period, which stated that it applied to "[a]ny and all claims and actions arising out of or relating to [the parties'] agreement", barred claims for unfair and deceptive trade practices, fraud and negligent misrepresentation) (attached as Exhibit H); YWCA v. HMC Entm't, Inc., No. 91-7943, 1992 WL 279361, at *1, 4 (S.D.N.Y. Sept. 25, 1992) (holding claim seeking declaratory judgment with respect to potential unfair competition, trademark infringement misappropriation and unfair competition claims "arises under this agreement" and, thus, was subject to forum selection clause) (attached as Exhibit I).

[16] See also Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (applying forum selection clause to reach copyright claims, where clause stated merely that exclusive jurisdiction was in foreign court, because "analysis of the copyright infringement claims will inevitably require reference to rights and duties defined in the Agreement") (attached as Exhibit K); Mead v. Future Med. Publ'g, Inc., No. 98-0554, 1999 WL 1939256, at *4 n.7 (M.D.N.C. Feb. 22, 1999) (applying forum selection clause to copyright claim where clause referred to disputes "arising herefrom") (attached as Exhibit L); Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 947, 949-50 (S.D.N.Y. 1994) (applying forum selection clause to trademark claims where clause referred to "[a]ny dispute or issue arising hereunder, including any alleged breach").

2.    IBM Has Not Waived The Right To Enforce The Venue Provision.

Recognizing that Section 22.3 applies, SCO contends that IBM has waived its right to enforce the venue provision. SCO argues, for the first time in its reply brief, that IBM has waived the right to enforce the venue provision on the grounds that IBM did not raise the "'defense of improper venue' in its responsive pleading". (SCO Reply Br. at 16.)

Putting aside the fact that SCO raises this argument for the first time in its reply brief, which (as discussed above) is by itself fatal, IBM has not yet filed its responsive pleading since the proposed complaint has not been filed. Moreover, IBM has in fact asserted a defense of improper venue in each of its answers to each of SCO's complaints:

- IBM's answer to SCO's original complaint, filed on April 30, 2003, stated in its seventh affirmative defense: "[SCO's] claims are improperly venued in this district". (Docket No. 13, at 15.)

- IBM's amended answer to SCO's original complaint, filed on May 20, 2003, included a ninth affirmative defense, which stated: "[SCO's] claims are improperly venued in this district". (Docket No. 15, at 17.)

- IBM's answer to SCO's amended complaint, filed on August 6, 2003, stated in its ninth affirmative defense: "SCO's claims are improperly venued in this district". (Docket No. 27, at 17.)

- IBM's answer to SCO's second amended complaint, filed on March 26, 2004, included an eighth affirmative defense, which stated: "SCO's claims are improperly venued in this district". (Docket No. 126, at 23.)

SCO's reply papers also reiterate its argument that IBM has waived the right to enforce the venue provision by asserting its Ninth Counterclaim. (See SCO Reply Br. at 17.) As discussed above, however, IBM's Ninth Counterclaim is not seeking the declaration SCO imagines, and IBM stipulated to the narrow scope of the claim. Moreover, to establish a waiver of the venue provision, SCO must show "the voluntary and intentional abandonment of a known right". General Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist., 647 N.E.2d 1329, 1331 (N.Y. 1995); accord Nassau Trust Co. v. Montrose Concrete Prods. Corp., 436 N.E.2d 1265, 1269-70

13

(N.Y. 1982). The mere assertion of a counterclaim does not preclude a party from asserting a forum selection clause.[17]  That is especially so here, where Section 22.11 of the JDA states unambiguously that "[n]o . . . waiver of any provision of this Agreement shall be effective unless it is set forth in a writing which refers to the provisions so affected and is signed by an authorized representative of each Party."[18]  (Shaughnessy Decl. Ex. 1 § 22.11.)  IBM has never executed such a writing setting forth its intention to waive Section 22.3 of the JDA, and thus cannot be held to have waived its rights under that provision.[19]

Finally, SCO claims that "the interests of judicial economy in favor of pending litigation can override a forum-selection clause". (SCO Reply Br. at 17.)  To avoid application of the forum selection clause, SCO, at a minimum, had to show, but failed to show, that requiring it "to proceed in the selected forum will be so gravely difficult and inconvenient that the clause, for all practical purposes, will deprive the moving party of his or her day in court." Zions First Nat'l Bank v. Allen, 688 F. Supp 1495, 1498 (D. Utah 1988) (citing The Bremen v. Zapata Offshore

---

[17] See Campbell v. Bartlett, 975 F.2d 1569, 1574 n.8 (10th Cir. 1992) (following "the rule that by filing a compulsory counterclaim a party does not waive Rule 12(b) objections" (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure 1397 (1990)); Hasse v. Am. Photograph Corp., 299 F.2d 666, 668-69 (10th Cir. 1962); Rogen v. Memry Corp., 886 F. Supp. 393, 396 (S.D.N.Y. 1995) (stating that "the fact that [the defendant] filed a counterclaim and participated in discovery does not render its objections to venue abandoned" (citing cases)).

[18] Provisions like Section 22.11 have been held enforceable. See, e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d 1149, 1158 (10th Cir. 2001) (finding that parties' course of dealings insufficient to overcome nonwaiver provision); Roboserve, Inc. v. Kato Kagaku Co., Ltd., 78 F.3d 266, 277-78 (7th Cir. 1996) (finding conduct of parties insufficient to warrant waiver where contract required waiver to be in writing); Medinol Ltd. v. Boston Sci. Corp., 346 F. Supp. 2d 575, 609 & n.8 (S.D.N.Y. 2004) (finding that "[l]imitations on waiver are enforceable" and conduct of party insufficient to overcome provision requiring waiver to be in writing).

[19] SCO asks the Court to ignore Section 22.11 on the grounds that "as a matter of federal procedure", it is somehow irrelevant. (SCO's Reply Br. at 16.)  The sole case on which SCO relies for this proposition, Steward v. Up North Plastics, Inc., 177 F. Supp. 2d 953, 958 (D. Minn. 2001), is inapposite.  That court's discussion of waiver, in dicta, merely indicated that the contractual nonwaiver provision in that case was insufficient to overcome the party's conduct expressing an intent to waive the forum selection provision where the party affirmatively stated that venue was proper in its pleadings and conducted substantial discovery and motion practice regarding the claims subject to the forum selection clause. Id.

Co., 407 U.S. 1, 15 (1972)).  Courts have held interests-of-judicial-economy arguments like that

offered by SCO insufficient to overcome a forum selection clause.  See Technology Express, Inc.

v. FTF Bus. Sys. Corp., 99-11692, 2000 WL 222628, at *2 (S.D.N.Y. Feb. 25, 2000) (applying

forum selection clause in spite of defendant's argument that application would result in

inconvenience of litigating related matters in multiple forums) (attached as Exhibit M); Tokio

Marine & Fire Ins. Co., Ltd. v. Nippon Express U.S.A. (Illinois), Inc., 118 F. Supp. 2d 997, 1000

(C.D. Cal. 2000) (holding that "potential for duplicative litigation . . . does not outweigh the

strong policy favoring enforcement of forum selection clauses").[20]

   3.  The Limitations Provision Bars SCO's Proposed Claim.

  SCO contends that the limitations provision is no impediment to its claims because its

claim did not accrue until 2004, when SCO claims it first learned of IBM's infringement.  (See

SCO Reply Br. at 15-16.)  As SCO acknowledges, however, a copyright claim accrues when the

alleged copyright holder "knows or reasonably should have known of the infringement".  (SCO

Reply Br. at 15 (quoting In re Indep. Servs. Orgs. Antitrust Litig., 85 F. Supp. 2d 1130, 1174 (D.

Kan. 2000)).)  As is discussed above, SCO clearly knew or should have known of the alleged

infringement more than two years before it commenced this action.  Thus, the limitations

provision bars the proposed claim.

  As a fallback position, SCO argues that "the principle of continuing infringement" should

govern SCO's copyright claim.  (SCO Reply Br. at 16.)  As SCO acknowledges, however, that

doctrine has not been recognized in the Tenth Circuit.  (See SCO Reply Br. at 16.)  And even if it

---

[20] The only case cited by SCO to support its judicial economy argument, Steward, 177 F. Supp.
2d at 959 (discussed in note 19 above), is not helpful to SCO's cause.  In Steward, the court
denied a motion to transfer claims that had already been pending before the court for two years,
finding that the court's familiarity with the specific facts of the claims and the fact that another
case pending before the court involved "the same operative facts, the same antitrust claims and
the same defendants" weighed against transferring the case in spite of the forum selection clause.
Id.  In contrast, SCO's proposed claim is not currently pending before the Court, no motions on
the merits of the claim have been filed and it involves a different set of operative facts and legal
theories than the claims currently before this Court.

applied in the Tenth Circuit, the doctrine could not properly be used to negate the terms of the JDA. See Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects, 206 A.D.2d 896, 897 (N.Y. App. Div. 1994) (ruling that contract provision prescribing "when the period of limitations will commence . . . will govern in the absence of duress, fraud or misrepresentation" (citations omitted)); Harbor Court Assocs. v. Leo A. Daly Co., 179 F.3d 147, 151 (4th Cir. 1999) (finding contractual accrual provision valid and applicable, noting that "the only courts to consider a contractual accrual date provision have all enforced it" (citing cases)); Entous v. Viacom Int'l, Inc., 151 F. Supp. 2d 1150, 1156 (C.D. Cal. 2001) (finding that contractual accrual rule preempted application of Copyright Act's accrual rules). The JDA clearly imposes a two-year limitations period; it does not recognize a "continuing infringement" exception.

### Conclusion

For the foregoing reasons, IBM respectfully requests that the Court limit this case to the claims and counterclaims that were timely pled and allow this case to proceed toward resolution by denying SCO's Motion for Leave to File a Third Amended Complaint.

DATED this 18th day of February, 2005.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS
MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000


*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2005, a true and correct copy of the

foregoing was sent by U.S. Mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
Sean Eskovitz
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

337932.1

18

## CERTIFICATE OF SERVICE

I hereby certify that on the ____ day of May, 2005, a true and correct copy of the foregoing was sent by U.S. Mail, postage prepaid, to the following:

    Brent O. Hatch
    Mark F. James
    HATCH, JAMES & DODGE, P.C.
    10 West Broadway, Suite 400
    Salt Lake City, Utah 84101

    Stephen N. Zack
    Mark J. Heise
    BOIES, SCHILLER & FLEXNER LLP
    100 Southeast Second Street, Suite 2800
    Miami, Florida 33131

    Robert Silver
    Edward Normand
    Sean Eskovitz
    BOIES, SCHILLER & FLEXNER LLP
    333 Main Street
    Armonk, New York 10504