Not Reported in F.Supp.
1992 WL 279361 (S.D.N.Y.)
(Cite as: 1992 WL 279361 (S.D.N.Y.))

Page 3

*Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir.1963), *quoting E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir.), *cert. denied*, 300 U.S. 680 (1937). Additionally, actions for declaratory judgment should be permitted " 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969), *cert. denied*, 397 U.S. 1064 (1970), *quoting* E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941).

An actual threat of litigation does suffice to create a case or controversy for purposes of an action for declaratory relief. *See, e.g., Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938, 944 (9th Cir.1981). Furthermore, "a direct threat to sue if not necessary to the finding of an actual controversy" under the DJA. *Eastman Kodak Co. v. Velveray Corp.*, 175 F.Supp. 646, 648 (S.D.N.Y.1959) (citations omitted). *See also Mailer v. Zolotow*, 380 F.Supp. 894, 895 (S.D.N.Y.1974) (stating, in the copyright infringement context, that "a justiciable controversy exists even where there has been no actual threat of suit, so long as defendant has notified plaintiff that defendant claims his copyright has been infringed"). Furthermore, "[t]his court has emphasized that the [DJA] should have a liberal interpretation, bearing in mind its remedial character and the legislative purpose." *Eastman Kodak*, 175 F.Supp. at 648.

The court finds that plaintiff has provided sufficient evidence of an actual controversy to sustain this action for a declaratory judgment. Given defendant's statements that it intends to "take all necessary legal action" to protect the work it undertook with respect to its contract with plaintiff, and given defendant's statements to dcp that dcp could not produce the proposed program with plaintiff because of defendant's expired contract with plaintiff, plaintiff is justified in its fear that its ongoing efforts to negotiate and contract with dcp could be aborted at any point by litigation initiated by defendant. If plaintiff is not afforded the opportunity to establish its rights with respect to the expired contract with defendant, plaintiff could lose whatever resources it has devoted to negotiating and planning its agreement with dcp and plaintiff could incur losses to its goodwill and reputation. Therefore, the court denies defendant's motion to dismiss plaintiff's declaratory judgment action for lack of subject matter jurisdiction.

II. VENUE
*4 Defendant argues that the court should dismiss the action or transfer it to the Central District of California for improper venue, based on the unambiguous forum-selection clause in the agreement between plaintiff and defendant. Plaintiff claims that the forum-selection clause is irrelevant to this action because the action does not include any claim for breach of contract and the contract expired by its own terms on March 31, 1991. Defendant responds that the forum-selection clause controls even when the contract has expired, as long as the action arises out of the contract, either directly or indirectly.

In *Bense v. Interstate Battery System of America*, 683 F.2d 718 (2d Cir.1982), the parties had terminated the relevant contract, and plaintiff brought an action based on defendant's alleged antitrust violations. In the action, plaintiff claimed that defendant had terminated the agreement with plaintiff because plaintiff refused to participate in defendant's price-fixing scheme. *See id.* at 719. The Second Circuit enforced the forum-selection clause even though the action was based on alleged antitrust violations because the "gist" of plaintiff's claim involved defendant's allegedly wrongful termination of the agreement. *See id.* at 720.

Similarly, in this case, plaintiff's claims against defendant clearly arise under the contract. Even though the contract has expired, plaintiff's claims for a declaratory judgment with respect to defendant's potential unfair competition, trademark infringement, misappropriation and implied contract claims involve rights arising out of the contract that defendant might assert against plaintiff. Plaintiff's entire business relation with defendant with respect to the proposed award program stemmed from the contract between the two parties. [FN1] Any determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract. Therefore, it is clear that plaintiff's action arises pursuant to the contract.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 279361 (S.D.N.Y.)
(Cite as: 1992 WL 279361 (S.D.N.Y.))

Page 4

Since the court has determined that this action arises under the contract, it is clear that the "forum selection clause[ ] [is] strictly enforceable" unless a party to the contract can " 'clearly show that enforcement would be (1) unreasonable or unjust; or (2) that the clause was invalid for such reasons as fraud or overreaching.' " *Citibank, N.A. v. Collins,* 1991 WL 64174, at *1, 1991 U.S.Dist. LEXIS 4919, *quoting Breman v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-13 (1972). Here, there is no such evidence that enforcement would be unreasonable or unjust or that the clause is invalid because of fraud or overreaching. Furthermore, plaintiff does not dispute that, to the extent that the action arises out of the contract, the action should be tried in California, pursuant to the forum selection clause.
Therefore, the court enforces the forum selection clause and transfers the action to the Central District of California. [FN2]

CONCLUSION

*5 For the reasons stated above, the court denies defendant's motion to dismiss for lack of subject matter jurisdiction. The court grants defendant's motion to transfer the action for improper venue and the court hereby transfers the case to the Central District of California.

SO ORDERED.

> FN1. Plaintiff cites *General Environmental Science Corp. v. Horsefall,* 753 F.Supp. 664 (N.D.Ohio 1990) for the proposition that a forum-selection clause does not apply when plaintiff does not assert any contract claims. However, unlike in this case, the plaintiff in *General Environmental* brought RICO and other state and federal claims relating to plaintiff's ongoing business relations with the defendant. *Id.* at 667- 668. Moreover, unlike here, in *General Environmental,* the contract that formed part of the allegations was "merely one of the final manifestations" of the "ongoing business relationships" between the parties. *Id.*

> FN2. Although the court need not consider defendant's argument that the case be transferred to California in the interest of justice and for the convenience of the parties, the court notes for the record that the choice-of-law provision of the contract, which requires that any controversy pursuant to the contract be determined under California law, also mandates a transfer to the Central District of California.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2001 WL 293818 (S.D.N.Y.), 2001 Copr.L.Dec. P 28,251
(Cite as: 2001 WL 293818 (S.D.N.Y.))

Page 1

H

United States District Court, S.D. New York.
ROCKWELL INTERNATIONAL
CORPORATION, Plaintiff,
v.
GOSS GRAPHIC SYSTEMS, INC., Defendant.
No. 00 Civ. 8763(JSM).

March 27, 2001.
Eric Lobenfeld, Chadbourne & Parke LLP, New York, NY, for Plaintiff.

Johnathan Moskin, Pennie & Edmonds LLP, New York, NY, George Sanders, McBride Baker & Coles, Chicago, IL, for Defendant.

OPINION and ORDER

MARTIN, J.

*1 Faced with a claim by Defendant Goss Graphic Systems, Inc. ("Defendant") that the operations of one of its subsidiaries was violating Defendant's copyrights, Plaintiff Rockwell International Corporation ("Plaintiff") commenced this action seeking a declaratory judgment that it is not violating any of Defendant's copyrights. Defendant moves to dismiss, or alternatively, to transfer this action to the Northern District of Illinois where it has a later-filed suit against Plaintiff's subsidiary for copyright infringement.

This controversy has its genesis in a Stock and Asset Purchase Agreement (the "Agreement") between the parties in which Plaintiff sold certain of its operations to Defendant, which in turn agreed to grant Plaintiff a non-exclusive, royalty-free license to certain of the technology that was being transferred. Plaintiff alleges that the copyrights that Defendant contends Plaintiff is infringing in the Illinois action are those to which it is entitled to a royalty-free license under the Agreement.

The Agreement provided that it was to be governed by the law of New York and contained the following forum selection clause:

Each of Seller [Rockwell] and Buyer [Goss] irrevocably submits to the exclusive Jurisdiction of (i) the Supreme Court of the State of New York, New York County and (ii) the United States District Court for the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby (and agrees not to commence any action, suit or proceeding relating hereto except in such courts).... Each of Seller [Rockwell] and Buyer [GOSS] irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in (i) the Supreme Court of the State of New York, New York County or (ii) the United States District Court for the Southern District of New York, and further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

Plaintiff argues that the plain meaning of this broad forum selection clause renders this Court the appropriate venue for this action. Defendant contends, however, that its dispute with Plaintiff is a simple copyright action and that, while Plaintiff's defense to that action involves a claim that Plaintiff received a license for the technology in the Agreement, the dispute arises under the copyright laws and not under the Agreement.

If one were to look solely at the language of the Agreement, one would have to agree with Plaintiff that this is a "suit or proceeding arising out of [the] Agreement or the transactions contemplated [t]hereby." However, this simple analysis is called into question by the decision of the Second Circuit in *Corcovado Music Corp. v. Hollis Music, Inc.,* 981 F.2d 679 (2d Cir.1993), involving a copyright action between the successors-in-interest of a licensor and a licensee, in which the Circuit Court refused to enforce a forum selection clause that would have compelled arbitration in Brazil of a dispute between residents of the United States. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 293818 (S.D.N.Y.), 2001 Copr.L.Dec. P 28,251
(Cite as: 2001 WL 293818 (S.D.N.Y.))

Page 2

court reasoned that "the fact that the defendants have a separate contract with the seller ... containing a forum-selection clause, do[es] not, without more, entitle defendants to haul plaintiff halfway across the world to enforce its rights." *Id.* at 682-83.

*2 Defendant seizes on certain language in *Corcovado Music* to argue that where the claim at issue is one for copyright infringement rather than for breach of contract, a forum selection clause in a contract granting a license need not be honored. However, this same argument was rejected by Judge Stein of this Court in his thoughtful opinion in *Direct Mail Production Services v. MBNA Corp.,* 99 Civ. 10550, 2000 WL 1277597,*5-6 n. 2 (S.D.N .Y Sept. 7, 2000). After carefully reviewing the relevant case law, Judge Stein concluded:

> [T]he circuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims "ultimately depend on the existence of a contractual relationship" between the parties, or if "resolution of the claims relates to interpretation of the contract," or if the tort claims "involv[e] the same operative facts as a parallel claim for breach of contract"....

*Id.* at *6 (citations omitted).

Here, resolution of the claims asserted in both this and the action in the Northern District of Illinois relate to the interpretation of the Agreement. In order to resolve each set of claims, the courts must decide whether the copyrights that Defendant claims that Plaintiff is infringing are the same rights that Defendant is required to license to Plaintiff by the terms of the Agreement. The Agreement manifests the clear intent of the parties that such a dispute should be resolved in New York. "The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914 (1972).

While Defendant argues that the Northern District of Illinois will be a more convenient forum, even without a forum selection clause, the plaintiff's choice of forum is entitled to great weight and should not be disturbed absent a strong showing that the balance of convenience favors the alternative forum. *See R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991). Given the clear intent of the parties to have their dispute decided in New York, the fact that the forum is inconvenient for Defendant is not a compelling reason to disturb the parties' choice of forum. *See, e.g., American Mktg. Enters. v. Sun Apparel, Inc.,* No. 96 Civ.1994, 1997 WL 47813, at *5 (S.D.N.Y. Feb. 6, 1997).

For the foregoing reasons, Defendant's motion to dismiss [FN1] or transfer is denied.

> FN1. Defendant's claim that the complaint fails to state a claim is without merit. Rule 8 requires only a "short and plain statement of the claim."

SO ORDERED.

2001 WL 293818 (S.D.N.Y.), 2001 Copr.L.Dec. P 28,251

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 1

C

United States District Court, S.D. New York.
DIRECT MAIL PRODUCTION SERVICES
LIMITED, a company organized under the laws of
England, Plaintiff,
v.
MBNA CORPORATION, a Maryland corporation,
MBNA America Bank, N.A., a national
bank, Harte-Hanks Data Technologies, Inc., a
Massachusetts corporation,
Defendants.
No. 99 Civ. 10550(SHS).

Sept. 7, 2000.

*OPINION*

STEIN, J.

*1 Plaintiff Direct Mail Production Services Limited ("Direct Mail") brought this action against defendants MBNA Corporation and MBNA America Bank, N.A. (collectively, "MBNA America") as well as defendant Harte-Hanks Data Technologies, Inc. ("Harte-Hanks") asserting claims for federal and English copyright infringement, misappropriation of trade secrets, and intentional interference with business relationships. In particular, the complaint alleges that Harte-Hanks, acting on instructions from MBNA America, transmitted to Equifax Europe (UK) Limited ("Equifax")--a direct competitor of Direct Mail-- proprietary databases of prospective credit card customers that Direct Mail had provided to an English corporation, MBNA Direct Limited ("MBNA Direct")--a company related to the MBNA entities--pursuant to a separate licensing agreement between Direct Mail and MBNA Direct.

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) on the basis of a forum selection clause in the agreement between Direct Mail and MBNA Direct. For the reasons set forth below, defendants' motion should be granted and the complaint dismissed.

*BACKGROUND*

According to the complaint, defendant MBNA America Bank, N.A. is a United States bank that claims to be "the largest independent credit card lender in the world." It is both a subsidiary of defendant MBNA Corporation, a Maryland corporation, as well as the parent of MBNA International Bank Limited ("MBNA IBL"), an English corporation, which in turn is the parent of MBNA Direct Limited, another English corporation. Both MBNA America Bank, N.A. and its parent "regularly conduct[ ]" business in the Southern District of New York. Defendant Harte-Hanks Data Technologies, Inc. is a Massachusetts corporation that "regularly does business" in this District. *See* Compl. ¶¶ 6-11.

Plaintiff Direct Mail Production Services Limited, formerly known as Quantum Direct Limited, is an English corporation engaged "in the business of gathering information, and creating databases and systems for scoring, screening, and improving the selection of prospective customers to be solicited for credit card services." *Id.* ¶¶ 5, 12. Beginning in November 1994, Direct Mail and MBNA Direct negotiated a written agreement that was signed in January 1996. *See id.* ¶ 15; Decl. of Christopher Charlesworth, dated Feb. 28, 2000, Ex. 1 (the "Agreement"). Pursuant to the Agreement, Direct Mail would create databases of prospective customers by screening persons listed on the English electoral rolls based on past credit history and the results of prior mailings, and would forward these databases to third-party "secure mail houses" responsible for mailing the actual solicitations to the prospects on behalf of MBNA Direct. *See* Compl. ¶ 15. The Agreement contained detailed provisions governing the use and ownership of the databases, *see* Agreement at 6-10, ¶¶ 6, 9, and explicitly contemplated that the databases would be used for the benefit of related MBNA corporations, *see id.* at 2-3, 8, preamble & ¶¶ 1, 9.3. The Agreement also contained the following forum selection clause: "THIS Agreement shall be governed by and construed in accordance with English law and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 2

parties hereto agree that the English courts shall have exclusive jurisdiction." *Id.* at 13, ¶ 16.

*2 In September 1996, MBNA Direct and Direct Mail made arrangements for the delivery of databases to Harte-Hanks, a secure mail house, for the purpose of preparing solicitations to be mailed to prospective credit card customers. Direct Mail prepared databases containing the names, addresses, and mailing history of the twenty million most attractive prospects and sent them to Harte-Hanks. *See* Compl. ¶¶ 20-23. Allegedly, however, Harte-Hanks copied the databases, created derivative records based on information in the databases that was proprietary to Direct Mail, and then, acting on instructions from MBNA America, sent some or all of the original databases and derivative records to MBNA America as well as to Equifax Europe (UK) Limited, a competitor of Direct Mail. As a result, Equifax was able to replace the services previously provided by Direct Mail without having to incur the cost of developing the information in the original databases and derivative works on its own. According to the complaint, defendants undertook these actions knowing that the databases contained proprietary information owned by Direct Mail and that arrangements between Direct Mail and MBNA Direct prohibited transmission of this information to third parties other than specified secure mail houses, of which Equifax was not one. *See id.* ¶¶ 25-29.

Direct Mail subsequently brought suit against Equifax in England, alleging similar facts and asserting claims for breach of contract, copyright infringement, and breach of confidence. That litigation is scheduled to go to trial in late 2000 or early 2001. *See* Decl. of Margaret Tofalides, dated Feb. 2, 2000, ¶ 6. Approximately seventeen months after the initiation of the British litigation, Direct Mail filed the present action against MBNA America and Harte-Hanks in the Southern District of New York. The complaint asserts copyright infringement in violation of federal and English statutes and common law claims of misappropriation of trade secrets and intentional interference with business relationships.

*DISCUSSION*

I. Motion to dismiss

MBNA America and Harte-Hanks move to dismiss the complaint on the grounds that the forum selection clause in the Agreement between Direct Mail and MBNA Direct dictates that Direct Mail must bring its claims against them in the courts of England. Such a clause implicates the jurisdiction of this Court over the action. *See New Moon Shipping Co. v. Man B & W Diesel AG,* 121 F.3d 24, 28 (2d Cir.1997). "[A]t the initial stage of litigation, a party seeking to establish jurisdiction need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction." *Id.* at 29 (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)). Accordingly, "the facts must be viewed in the light most favorable to the plaintiff," and "[a] disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing." *Id.* (citations omitted).

II. Forum selection clause

*3 The forum selection clause in the Agreement between Direct Mail and MBNA Direct states, "THIS Agreement shall be governed by and construed in accordance with English law and the parties hereto agree that the English courts shall have exclusive jurisdiction." Agreement at 13, ¶ 16. On its face, the forum selection clause is mandatory rather than permissive, since the language plainly indicates " 'the parties' intent to make jurisdiction exclusive." ' *john Boutari & Son v. Attiki Importers,* 22 F.3d 51, 52-53 (2d Cir.1994) (quoting *Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir.1989)). Therefore, if the clause is found to encompass the parties and the claims in this action, then this Court must dismiss the action for lack of jurisdiction, *see id.,* absent a clear showing from Direct Mail that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching," *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972); *see New Moon Shipping Co.,* 121 F.3d at 29; 17 Moore's Federal Practice § 111.78[1], at 111-243.

A. Parties to the action

The first difficulty defendants face in invoking the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 3

forum selection clause is the undisputed fact that none of the defendants was a signatory to the Agreement containing the clause. However, a non-party may nonetheless invoke such a clause if the non-party is "closely related" to one of the signatories. In particular, "[t]he relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound." *In re Lloyd's Am. Trust Fund Lit.*, 954 F.Supp. 656, 670 (S.D.N.Y.1997), *certification granted*, No. 96 Civ. 1262, 1997 WL 458739, at *6-7 (S.D.N.Y. Aug. 12, 1997); *see Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir.1998); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993); *Manetti-Farrow v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir.1983), *abrogated on other grounds, Lauro Lines v. Chasser*, 490 U.S. 495, 501 (1989); *Maritime Ins. Co. v. M/V "Sea Harmony"*, No. 97 Civ. 3818, 1998 WL 214777, at *2 (S.D.N.Y. May 1, 1998).

In discerning whether parties are "closely related," the U.S. Court of Appeals for the Second Circuit has looked to whether the non-signatory "[is an] intended beneficiar[y] entitled to enforce" the clause in question. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358 (2d Cir.1993) (alterations in original). "As Professor Corbin has said, a third party will have an enforceable right 'if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract." ' *Id.* at 1359 (quoting 4 Arthur L. Corbin, Corbin on Contracts § 776, at 18 (3d ed.1967)); *see also Lipcon*, 148 F.3d at 1299 (" '[W]hile ... third-party beneficiaries to a contract would, by definition, satisfy [this] requirement[ ] ..., a third-party beneficiary status is not required." ') (quoting *Hugel*, 999 F.2d at 209); *Coastal Steel*, 709 F.2d at 203. Thus, in *Roby*, the forum selection clause contained in contracts between Lloyd's and its investors was found to apply to investors' claims against the syndicates that competed for investments within Lloyd's, in light of the broad language of the clause and the syndicates' pecuniary interest in uniform resolution of the claims. *See id.*

*4 In the present case, the language of the forum selection clause is not nearly as broad as the language in *Roby*. *See Roby*, 996 F.2d at 1359 (clause encompassed "any dispute and/or controversy of whatsoever nature arising out of or relating to the [investor's] membership of, and/or underwriting of insurance business at, Lloyd's"). However, a number of other clauses in the Agreement between Direct Mail and MBNA Direct indicate that the signatories intended the contract to benefit related MBNA companies. To begin with, the preamble to the Agreement sets forth the following motivation for entering into the contract:

(A) MBNA carries on the business of supplying services and products to companies within the group of companies to which it belongs

(B) MBNA wishes to receive and [Direct Mail] is willing to provide processed marketing data for use by MBNA Group Companies for marketing purposes upon the terms and conditions of this Agreement

Agreement at 2, preamble. Elsewhere, the Agreement defines "MBNA Group Company" to mean "any undertaking which is a parent undertaking in relation to MBNA International Bank Limited or any subsidiary undertaking of such parent undertaking (as such expressions are defined in section 258 of the Companies Act 1985)." *Id.* at 3, ¶ 1. [FN1]

> FN1. Direct Mail does not dispute that both MBNA Corporation and MBNA America Bank, N.A. are "parent undertaking[s]" pursuant to section 258 of the Companies Act 1985. *See* Companies Act, 1989, ch. 40, Part I, § 21(1) (Eng.) (amending Part VII of Companies Act 1985).

The Agreement makes this motivation even more explicit in the provisions governing MBNA Direct's usage of the information Direct Mail agreed to provide:

MBNA hereby agrees and undertakes that it will:
9.1 use the Data only for the purpose of the Programmes;
9.2 not use the Data for the benefit of any third

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 4

party *other than an MBNA Group Company* (unless agreed in writing by both parties from time to time);

9.3 not sell assign or sub-let the whole or any part of the Data to any third party.

Agreement at 8, ¶¶ 9.1-9.3 (emphasis added). Finally, the Agreement also provides that breaches of confidence by related MBNA companies would constitute grounds for termination of the Agreement:

EITHER party shall be entitled to terminate this Agreement immediately by notice in writing to the other if:

(a) that other is guilty of any breach of any of the terms of this Agreement or any confidentiality agreement between [Direct Mail] and any MBNA Group Company which breach (if capable of remedy) is not remedied within 30 days of a written notice specifying the breach and requiring its remedy.

Agreement at 11, ¶ 13.1(a).

These provisions of the Agreement plainly gave Direct Mail reason to know that one of the reasons motivating MBNA Direct to enter the contract was a desire to confer a pecuniary benefit on related MBNA companies. *See Roby,* 996 F.2d at 1358-59. Also, because the Agreement explicitly provided that the data supplied by Direct Mail could be used for the benefit of related MBNA companies, it was entirely foreseeable that the related companies might issue instructions as to the use of the data and thereby become bound up in any disputes premised upon allegations of improper usage. *See Manetti-Farrow,* 858 F.2d at 514 n. 5; *but see Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1296 (3d Cir.1996).

*5 Moreover, because Direct Mail's claims ultimately hinge on rights and duties defined by the Agreement, as discussed below, principles of mutuality and fairness suggest that defendants should be entitled to assert the forum selection clause contained in that same Agreement in defending those claims. *See Albany Ins. Co. v. Banco Mexico,* No. 96 Civ. 9473, 1998 WL 730337, at * 3 (S.D.N.Y. Oct. 19, 1998), *aff'd mem.,* 182 F.3d 898 (2d Cir.1999), *and cert. denied,* ___ U.S. ___, 120 S.Ct. 801, 145 L.Ed.2d 675 (2000); *but see Frietsch v. Refco, Inc.,* 56 F.3d 825, 827-28 (7th Cir.1995) (mutuality applies only if plaintiff would be entitled to assert clause against defendant in foreign forum); *In re Lloyd's Am. Trust Fund Lit.,* 954 F.Supp. at 669-70 (same).

Therefore, because the MBNA companies were sufficiently "closely related" that it was "foreseeable" that they would be bound, defendants MBNA Corporation and MBNA America Bank, N.A. may properly assert the forum selection clause in their defense. In addition, because the claims against all defendants are "integrally related," and because Harte-Hanks has set forth its consent to personal jurisdiction in the courts of England, *see* Harte-Hanks Mem. at 2, defendant Harte-Hanks may also assert the clause in its defense. *See Bonny v. Society of Lloyd's,* 3 F.3d 156, 162-63 (7th Cir.1993) (collecting circuit cases); *Manetti-Farrow,* 858 F.2d at 514 n. 5.

B. Claims asserted in the action

Next, this Court must inquire whether the forum selection clause encompasses Direct Mail's claims of federal and British copyright infringement, misappropriation of trade secrets, and intentional interference with business relationships. The fact that Direct Mail pleads United States claims is not dispositive, since "[i]t defies reason to suggest that a plaintiff may circumvent forum selection ... clauses merely by stating claims under laws not recognized by the forum selected in the agreement." *Roby,* 996 F.2d at 1360. Rather, whether the clause encompasses these claims depends on the language of the clause itself, *see id.* at 1361, the interpretation of which is a question of federal law, *see Jones v. Weibrecht,* 901 F.2d 17, 19 & n. 1 (2d Cir.1990); *see also John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.,* 119 F.3d 1070, 1074 (3d Cir.1997).

Were the forum selection clause broadly or narrowly written, this inquiry would be quite simple. For example, where a clause applied by its terms to "any suits or causes of action arising directly or indirectly from this AGREEMENT," the U.S. Court of Appeals for the Second Circuit concluded that the clause encompassed a federal antitrust claim premised on allegations that the defendant had terminated the contract because the plaintiff had refused to participate in a price-fixing plan. *See Bense v. Interstate Battery Sys.,* 683 F.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 5

718, 720 (2d Cir.1982); *see also Roby,* 996 F.2d at 1361 (forum selection clauses applicable to claims "arising out of" contractual relationship were "not restricted to pure breaches of the contracts containing the clauses" but also covered related securities and antitrust claims). By contrast, where a clause applied more narrowly to "litigation between the parties concerning the alleged breach of this Agreement or the meaning, effect, application and/or interpretation of its terms," the court found that the clause encompassed the plaintiff's breach of contract claim but not a tort claim of fraudulent inducement. *See Bon Jour Group, Ltd. v. Elan Polo, Inc.,* No. 96 Civ. 6705, 1997 WL 401814, at *2 (S.D.N.Y. July 16, 1997).

*6 The present clause falls somewhere between these two extremes and provides simply, "THIS Agreement shall be governed by and construed in accordance with English law and the parties hereto agree that the English courts shall have exclusive jurisdiction." Agreement at 13, ¶ 16. Certainly, this clause would encompass a breach of contract claim; however, Direct Mail has not pled such a claim.

Nonetheless, "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Anselmo v. Univision Station Group, Inc.,* No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) (quoting *Bense,* 683 F.2d at 720). Thus, the circuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims "ultimately depend on the existence of a contractual relationship" between the parties, *Coastal Steel,* 709 F.2d at 203, or if "resolution of the claims relates to interpretation of the contract," *Manetti-Farrow,* 858 F.2d at 514, or if the tort claims "involv[e] the same operative facts as a parallel claim for breach of contract," *Lambert v. Kysar,* 983 F .2d 1110, 1121-22 (1st Cir.1993); *see generally Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 694-95 (8th Cir.1997).

Regardless of the differences in terminology, one common thread running through these various formulations is the inquiry whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship. "Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action." *Hugel,* 999 F.2d at 209; *see Warnaco Inc. v. VF Corp.,* 844 F.Supp. 940, 949 (S.D.N.Y.1994). Viewed through this lens, Direct Mail's claims all fall within the scope of the forum selection clause.

First, analysis of the copyright infringement claims will inevitably require reference to rights and duties defined in the Agreement, since the Agreement was essentially a license that governed MBNA Direct's use of Direct Mail's databases on behalf of itself and related MBNA companies. [FN2] *See John Wyeth & Bro. Ltd.,* 119 F.3d at 1076; *Omron Healthcare, Inc. v. Maclaren Exports, Ltd.,* 28 F.3d 600, 601-02 (7th Cir.1994); *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.,* 41 F.Supp.2d 447, 450-51 (S.D.N.Y.1999); *Warnaco,* 844 F.Supp. at 949; *Young Women's Christian Assoc. v. HMC Entertainment, Inc.,* No. 91 Civ. 7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992). Second, in order to prevail on its misappropriation claim, Direct Mail will have to demonstrate that defendants "used [its] trade secret in breach of an agreement, a confidential relationship, or duty, or as a result of discovery by improper means." *Hudson Hotels Corp. v. Choice Hotels Int'l,* 995 F.2d 1173, 1176 (2d Cir.1993), *abrogated on other grounds, Nadel v. Play-by-Play Toys & Novelties, Inc.,* 208 F.3d 368, 380 n. 9 (2d Cir.2000). Analysis of this element will similarly depend on the rights and duties set forth in the Agreement. Third, the tortious interference claim is premised on MBNA America's alleged unauthorized transmittal of Direct Mail's databases. *See* Compl. ¶¶ 50-56. As such, this claim is grounded in the alleged impairment of Direct Mail's copyright and will also require analysis of the rights and duties defined by the Agreement. Indeed, courts have consistently held that the federal copyright statute preempts tortious interference claims for precisely this reason. *See, e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 717 (2d Cir.1992).

> FN2. The facts of this dispute are therefore distinct from the facts of *Corcovado Music Corp. v. Hollis Music, Inc.,* 981 F.2d 679

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 6

(2d Cir.1993). In that case, plaintiff and defendants had been assigned rights by, respectively, a composer and publisher who had entered into a contract for the transfer of the copyrights to five songs. Plaintiff brought suit alleging that defendants' receipt of payments after the expiration of the original term copyrights violated plaintiff's copyright renewal rights. Defendants moved to dismiss the complaint on the basis of a forum selection clause in the original contract between the composer and publisher that purportedly required that any disputes be resolved in the courts of Brazil. *See id.* at 680-81. The district court granted the motion to dismiss, and on appeal the Second Circuit reversed. The Second Circuit reasoned that none of the parties to the litigation had signed the original contract, the contract was asserted only in defense against a bona fide copyright claim, and the suit was more analogous to an action to quiet title than a dispute founded on the original contract. *See id.* at 681-83.

However, the Second Circuit in *Corcovado* explicitly distinguished an earlier patent infringement decision in which a forum selection clause was enforced, on the grounds that the earlier suit was "an action for breach of contract masquerading as patent infringement," the suit "was between the same two parties who drafted the forum-selection clause," and the suit "centered on the interpretation of the document containing that clause." *Id.* at 682 (discussing *Warner & Swasey Co. v. Savagnini Transferica S.p.A.*, 633 F.Supp. 1209, 1211-12 (W.D.N.Y.), *aff'd on basis of opinion below*, 806 F.2d 1045 (Fed.Cir.1986)). Similarly, in the present case, Direct Mail was a signatory to the Agreement and MBNA America was an intended beneficiary of that Agreement. In its complaint, Direct Mail refers to the Agreement repeatedly as the predicate to its claims. In addition, because the Agreement was essentially a licensing arrangement, the present action sounds in contract as much as in copyright. Although MBNA America's precise role in the matter is disputed, MBNA IBL has largely conceded its own role, *see* Barningham Decl. ¶¶ 4, 10, and a finding of copyright infringement would be tantamount to a finding of a breach of the Agreement's provisions governing the ownership and use of data for the benefit of related MBNA companies. *See Warner & Swasey,* 633 F.Supp. at 1211-12.

*7 Therefore, the forum selection clause encompasses all of the claims asserted by Direct Mail in this action. *See Coastal Steel,* 709 F.2d at 193, 202-03 (clause applicable to "any dispute arising" encompassed related tort claims).

C. Reasonableness

Determining that the forum selection clause encompasses the parties and claims in this action does not settle the matter, however, since "a mandatory forum-selection clause does not 'oust the jurisdiction' of the court, but rather requires the court to determine whether the party resisting enforcement of the clause has shown the clause to be unreasonable or unfair under the circumstances." *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 510 (2d Cir.1998). Forum selection clauses are unreasonable or unjust:
(1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.
*Roby,* 996 F.2d at 1363 (quotation omitted).

Direct Mail does not argue that the forum selection clause was procured by fraud and overreaching. Moreover, Direct Mail is an English corporation that has already brought suit against Equifax in England, this dispute hinges on a licensing Agreement entered by Direct Mail with another English party, and the complaint asserts a claim of English copyright infringement that may be fully vindicated in the courts of England. Therefore, enforcement of the clause would be neither unjust nor unreasonable, and the clause should be enforced.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149
(Cite as: 2000 WL 1277597 (S.D.N.Y.))

Page 7

*CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the complaint is granted, and the complaint is dismissed for lack of jurisdiction subject to the condition that defendants consent in writing to the personal jurisdiction of the courts of England within 20 days. *See Boosey & Hawkes Music Publishers Ltd. v. Walt Disney Co.,* 145 F.3d 481, 491 (2d Cir.1998); *Bonny,* 3 F.3d at 162-63.

2000 WL 1277597 (S.D.N.Y.), 2000 Copr.L.Dec. P 28,149

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court, M.D. North Carolina.
Mark N. MEAD, Plaintiff,
v.
FUTURE MEDICINE PUBLISHING, INC., a
Washington corporation; Burton Goldberg,
individually; W. John Diamond, M.D.; and W. Lee
Cowden, M.D., Defendants.
No. 1:98CV00554.

Feb. 22, 1999.
James T. Williams, Jr., Harold Arthur Bolick, II, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for Mark N. Mead, plaintiff.

James Henry Jeffries, IV, Amos & Jeffries, L.L.P., Greensboro, NC, Kevin T. Ireland, Koler Rosen & Fitzsimmons, P.S., Seattle, WA, for Future Medicine Publishing, Inc., a Washington Corporation, defendant.

James Henry Jeffries, IV, Kevin T. Ireland, (See above), for Burton Goldberg, individually, defendant.

*MEMORANDUM OPINION*

BULLOCK, Chief J.

*1 This matter is before the court on a motion to dismiss or to transfer filed by Defendants Future Medicine Publishing, Inc. ("FMP") and Burton Goldberg. This action arises out of Plaintiff Mark N. Mead's claim that Defendants FMP, Goldberg, W. John Diamond, M.D., and W. Lee Cowden, M.D., [FN1] improperly published a manuscript prepared by Mead, in violation of both federal and state law. Defendants FMP and Goldberg have moved to dismiss Plaintiff's suit for improper venue, relying on a forum-selection clause present in the contract governing the relationship between Mead and FMP or, in the alternative, to transfer the matter to the forum specified in the contract. For the following reasons, the court will grant Defendants' motion to transfer.

> FN1. By order entered September 18, 1998, this action as to Defendant Cowden was administratively terminated pending the disposition of proceedings in the Bankruptcy Court for the Northern District of Texas, Dallas Division.

FACTS
Mark N. Mead resides in Durham, North Carolina, and currently is pursuing his doctorate at the University of North Carolina at Chapel Hill. When he is not occupied by his studies, Mead spends time writing. According to a former lawyer of his, "Mead has written for many health and environmental magazines over the past twelve years." (Ex. A., Lance Rosen Aff.) In 1990, Burton Goldberg founded FMP, a small publishing company incorporated in the State of Washington. According to Goldberg, the company has fourteen books in print and publishes a bi-monthly magazine. (Goldberg Aff., ¶ 2.)

On March 5, 1995, Mead and FMP entered into an agreement which obligated Mead to write a book on the subject of alternative medicine treatments for cancer. FMP faxed its "Writer Agreement" to Mead, who initialed each of the six pages of the contract and signed it. The agreement provides that in exchange for conferring a copyright interest in the work to FMP, Mead would receive a $7,500.00 advance against his future royalties, with the latter amounting to 7.5% of cash proceeds from net sales of the first 10,000 books sold, and 10% thereafter. On Page 6 of the agreement, Paragraph P provides that, "This agreement will interpreted [sic] pursuant to California law. Venue for any claim arising herefrom will be a court of appropriate jurisdiction in Seattle, Washington." (Ex. A., Richard Leviton Aff.) At the time the parties consummated their agreement, FMP maintained its principal place of business in Seattle. At some point thereafter, FMP relocated to Tiburon, California.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 2

The business relationship between Mead and FMP eventually soured, and on September 7, 1996, FMP informed Mead by letter of counsel that it considered the Writer Agreement to be terminated due to defective performance by Mead. FMP then published a book based on the manuscript provided by Mead without acknowledging him in any fashion. To date, FMP has paid Mead no royalties. Mead instituted this action on June 24, 1998, seeking rescission of the contract, an injunction under the Copyright Act, and recovery for breach of contract, violation of the Lanham Act, and violation of North Carolina's Unfair and Deceptive Trade Practices Act. Defendants FMP and Goldberg have moved to dismiss the suit for improper venue under 28 U.S.C. § 1406(a), or to transfer it to the Western District of Washington under 28 U.S.C. § 1404(a), relying in both instances on the forum-selection clause contained in Paragraph P of the Writer Agreement.

DISCUSSION
A. *Motion to Dismiss for Improper Venue*

*2 A defendant's motion to dismiss for improper venue is governed by 28 U.S.C. § 1406(a), which provides that, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Defendants FMP and Goldberg contend that the presence of a forum-selection clause in the Writer Agreement renders any district other than the forum specified in the clause improper. They conclude that Plaintiff's failure to respect the forum-selection clause warrants dismissal of this matter under Section 1406(a). The court disagrees.

The Supreme Court has suggested that Section 1406(a) does not apply when the forum court meets the venue requirements set out in 28 U.S.C. § 1391, even if a valid forum-selection clause exists. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n. 8, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (analyzing enforcement of forum-selection clause under Section 1404(a), where parties did not dispute that district court properly denied defendant's motion to dismiss under 1406(a)). Although the matter has been subject to considerable debate, [FN2] many courts which have addressed the issue since *Stewart* have held that a forum-selection clause specifying a forum other than plaintiff's choice does not render venue improper. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-79 (3d Cir.1995) (analyzing factors listed in Section 1391 to determine whether Section 1404(a) or 1406(a) applied, despite presence of forum-selection clause); *P.M. Enters., v. Color Works, Inc.*, 946 F.Supp. 435, 439 (S.D.W.Va.1996) ( "Section 1406 dismissal, however, is not the correct procedural vehicle for enforcing a forum-selection clause."); *Knight Med., Inc. v. Nihon Kohden Am., Inc.*, 765 F.Supp. 291, 292 (M.D.N.C.1991) (holding that forum-selection clause does not "in and of itself" make venue improper). [FN3]

FN2. *See generally* 17 James Wm. Moore et al., *Moore's Federal Practice ("Moore's"*) § 111.04[4] (3d ed.1997).

FN3. Other courts which have rebuffed a party's attempt to enforce a forum-selection clause through Section 1406 dismissal where venue is otherwise proper include *Shaw Group, Inc. v. Natkin & Co.*, 907 F.Supp. 201, 203 n. 3 (M.D.La.1995); *Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 912-16 (E.D.N.Y.1994); *Creditors Collection Bureau, Inc. v. Access Data, Inc.*, 820 F.Supp. 311, 312-13 (W.D.Ky.1993); *National Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F.Supp. 671, 678-80 (D.N.J.1993); and *Southern Distrib. Co., Inc. v. E. & J. Gallo Winery*, 718 F.Supp. 1264, 1267 (W.D.N.C.1989). The rationale for this rule appears to be that dismissal for improper venue under Rule 12(b)(3) depends on whether the requirements of venue as set out in Section 1391 are met. *See National Micrographics Sys.*, 825 F.Supp. at 678. Section 1391 does not call for courts to consider the parties' private contractual agreements when determining if venue is proper.

Although the Fourth Circuit has not addressed the issue as yet, the court will follow those courts cited above and analyze Section 1391 to determine if Section 1404(a) or Section 1406(a) applies. [FN4]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 3

Turning to Section 1391(b), it provides that:

> FN4. Of course the situation would differ if FMP's forum-selection clause specified a forum to which the court would be unable to transfer the matter, such as a state or foreign court. In such a case, dismissal would be appropriate. *See Allen v. Lloyd's of London,* 94 F.3d 923 (4th Cir.1996) (dismissing case where forum-selection clause specified foreign forum); *Jones v. Weibrecht,* 901 F.2d 17 (2d Cir.1990) (dismissing and remanding case where forum-selection clause specified state forum).

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Plaintiff performed nearly all of his work on the manuscript in question in the Middle District of North Carolina, and he signed the Writer Agreement in this district. (Mead Aff. ¶¶ 2, 4-6.) These facts constitute a "substantial part of the events or omissions giving rise to the claim," and therefore venue is proper here. *See Hardee's Food Sys., Inc. v. Beardmore,* 169 F.R.D. 311, 316-17 (E.D.N.C.1996) (finding Section 1391(b)(2) met where franchise agreement accepted and executed in North Carolina and royalty fee payments were to be sent to North Carolina). Because venue here is proper, Defendants' motion for dismissal pursuant to Section 1406(a) must be denied.

B. *Motion to Transfer*

*3 Since the court cannot dismiss Plaintiff's suit for improper venue under Section 1406, Defendants must look elsewhere if the forum-selection clause in the Writer Agreement is to be enforced. A defendant's motion to transfer a case out of a district where venue is proper is governed by 28 U.S.C. § 1404(a), which provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendants argue that transfer is warranted because Plaintiff has not sufficiently demonstrated that transferring this matter to the Western District of Washington pursuant to the forum-selection clause would be unreasonable and unjust. The court agrees.

The first step in addressing a motion to transfer under Section 1404(a) is a determination of whether the proposed transferee court is one in which the action originally "might have been brought." *See Knight Medical,* 765 F.Supp. at 292. This requirement is met if the transferee court "has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of the transferee court." *Miot v. Kechijian,* 830 F.Supp. 1460, 1465 (S.D.Fla.1993); *see also* 17 Moore's § 111.12[1][a]. When the contract in question was negotiated and consummated, FMP's principal place of business was located in Seattle, Washington. FMP was incorporated under the laws of Washington and continues to be a Washington corporation. These facts suggest, and Plaintiff does not argue otherwise, that both Goldberg and FMP would be subject to process in the State of Washington. Moreover, these facts indicate that venue is proper in the Western District of Washington, because a substantial part of the acts giving rise to the claim took place there. [FN5] The court also notes that the forum-selection clause itself suggests that venue and personal jurisdiction are appropriate in the Western District of Washington. Finally, subject matter jurisdiction is no less proper in the Western District of Washington than it is in the Middle District of North Carolina.

> FN5. According to Professors Wright and Miller, "[I]t is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 15 Charles Alan Wright *et al., Federal Practice and Procedure* ("Wright & Miller") § 3806 (Supp.1998) (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 4

(2d Cir.1992)).

After finding the proposed transferee court to be an available destination, ordinarily the transferor court places the burden upon the party seeking transfer to show that under a multi-factor test the transferee court is the more convenient forum. *See In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989). Although no definitive list of factors to be considered by the transferor court has been established, typically courts consider a variety of factors which can be loosely labeled either as "public interests" or "private interests." *See Jumara,* 55 F.3d at 879-80; *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 527 (M.D.N.C.1996) (listing factors); *see also* 17 *Moore's* § 111.13[1][b]. The presence of a valid forum-selection clause would alter the flexible analysis employed in a typical Section 1404(a) transfer case, however. If valid, the clause causes the burden to shift from the party seeking transfer (and enforcement of the clause) to the party opposing enforcement of the clause. Once the burden shifts, in order to avoid transfer the plaintiff must demonstrate that enforcing the clause would be unreasonable and unjust. *See Jumara,* 55 F.3d at 880 ("Where the forum-selection clause is valid ... the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."); *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1278 (S.D.N.Y.1992) ("[O]nce a mandatory choice of forum clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be relieved from his contractual duty."). [FN6]

> FN6. Although unpublished dispositions are not binding authority in this circuit, the court notes that the Fourth Circuit has adopted a position consistent with that reflected in the cases cited. *See Nizam's Inst. of Med. Sciences v. Exchange Techs., Inc.,* No. 93-2196, 1994 WL 319187, at *2-3 (4th Cir.1994) (holding party opposing forum-selection clause must meet "heavy burden" by demonstrating clearly that enforcement would be unreasonable and unjust).

*4 The burden shift is triggered in the case at bar because Mead has not shown the forum-selection clause to be invalid. In the context of a motion to transfer under Section 1404(a), the validity of a forum-selection clause is determined with reference to federal law, *Stewart,* 487 U.S. at 28, and the Supreme Court has held that such clauses are *prima facie* valid. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Plaintiff does not contend that the forum-selection clause's existence is the product of fraud or overreaching. Plaintiff does maintain that the parties did not bargain over the clause and that they did not possess equal bargaining power. Even if true, these assertions are insufficient to render the clause invalid. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593-94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (refusing to adopt lower court's determination that forum-selection clause is unenforceable when it is not the subject of bargaining); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315, 318 (4th Cir.1982) (cited in *McNeill v. International Precious Metals Corp.,* No. 88-2096, 1989 WL 27443, at *2 (4th Cir.1989)). The court also finds untenable Plaintiff's arguments that the clause is not mandatory and that it does not cover the parties' dispute. [FN7]

> FN7. *Sterling Forest Assocs., Ltd. v. Barnett-Range Corp.,* 840 F.2d 249 (4th Cir.1988), continues to govern the distinction between mandatory and permissive forum-selection clauses in this circuit, because the Supreme Court's subsequent overruling of the case was limited to a holding on an unrelated issue. *See Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). The clause in the instant case mirrors in many respects the clause held to be mandatory in *Sterling Forest.* 840 F.2d at 251-52 (where clause read "the parties agree that in any dispute jurisdiction and venue shall be in California"). The court rejects Plaintiff's suggestion that the presence of "will" rather than "shall" in the clause impacts its meaning. *See Black's Law Dictionary* 1433 (5th ed.1979) (defining "will" as "auxiliary verb commonly having the mandatory sense of 'shall' or 'must.' "). Plaintiff's assertion that the clause covers only breach of contract

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 5

actions because of its "arising herefrom" language is similarly without merit. Plaintiff's claims under the Lanham Act, Copyright Act, and North Carolina's Unfair and Deceptive Trade Practices Act are inextricably intertwined with the issue of whether either party breached the Writer Agreement.

Given that the parties' forum-selection clause is valid, this court must enforce it by transferring the matter unless Plaintiff demonstrates that enforcement would be unreasonable and unjust. This Mead has not done. The Supreme Court modified the standard for determining whether enforcement of a forum-selection clause would be unreasonable and unjust in *Stewart.* In that case, the court rejected the notion that a forum-selection clause should be afforded dispositive weight in the context of Section 1404(a) analysis in diversity cases. *Stewart,* 487 U.S. at 31. Instead, the Court directed lower courts to consider within its multi-factor test the presence of a valid forum-selection clause to be a "significant factor that figures centrally." *Id.* at 29. Unless the court is presented with exceptional facts which show the clause to be unreasonable, the presumption in favor of its enforceability will apply. *Allen,* 94 F.3d at 928 (discussing presumption of enforceability as enunciated in *The Bremen* ); *In re Ricoh,* 870 F.2d at 573 (noting that presence of forum-selection clause requires its opponent to show that "the contractual forum is sufficiently inconvenient to justify retention of the suit"). According to the Fourth Circuit, forum-selection clauses are unreasonable if

(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*5 *Allen,* 94 F.3d at 928 (citing *Carnival Cruise Lines,* 499 U.S. at 595, and *The Bremen,* 407 U.S. at 12-13).

As stated above, Plaintiff does not maintain that the provision in question was procured by fraud or overreaching, nor does he allege that California law would deprive him of a remedy or that enforcing the clause would contravene a strong public policy of North Carolina. Instead, Plaintiff rests his opposition to enforcement of the clause on the notion that transferring this matter to the Western District of Washington would be so manifestly inconvenient as to effectively deprive him of his day in court. He contends that a transfer would shift the inconvenience of travel from Defendants' shoulders to his own, and that due to his modest means it may be impossible to litigate the matter on the West Coast. Mead also points out that FMP & Goldberg no longer reside in Seattle . [FN8]

FN8. Plaintiff's emphasis upon the deference usually afforded a plaintiff's choice of forum is misplaced, since a forum-selection clause eliminates such deference. *See Jumara,* 55 F.3d at 880; *In re Ricoh,* 870 F.2d at 573; 17 *Moore's* § 111.13[1][p][ii][B].

Defendants prevail on their motion to transfer because Plaintiff's evidence of inconvenience is insufficiently strong to "overcome the 'counterweight' of the parties' private expression of their venue preferences." *Creditors Collection Bureau,* 820 F.Supp. at 313. At best, the convenience of the witnesses in this action is no less impaired by suit in Seattle than it would be by suit in Greensboro. Plaintiff is the only witness who resides in North Carolina, while at least one witness for the Defendants resides in the Seattle area. (Lance Rosen Aff.) Goldberg has testified in his affidavit that it would be convenient for him and the other FMP witnesses currently residing in California to travel to Seattle. (Goldberg Aff., ¶ 5.) Furthermore, important documents and records are currently housed in the office of counsel for the Defendants, which is located in Seattle. *Id.* Although FMP has relocated its offices to California, these facts reveal that one cannot properly characterize Seattle as a forum with which neither party has a connection. *See Medical Legal Consulting Serv., Inc. v. Covarrubias,* 648 F.Supp. 153, 157-58 (D.Md.1986) (citing 15 Wright & Miller § 3803 n. 24 at 23-24).

The fact that the forum-selection clause will shift the expense of travel to Plaintiff does not render it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 1939256 (M.D.N.C.)
(Cite as: 1999 WL 1939256 (M.D.N.C.))

Page 6

unenforceable under *Stewart*. *See Creditors Collection Bureau*, 820 F.Supp. at 313 (citing *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1138-39 (6th Cir.1991)); *Weiss*, 801 F.Supp. at 1279. Because FMP contracts with writers across the country, the desire to limit the potential fora in which it might have to answer to suit appears quite logical. *Cf. Carnival Cruise Lines*, 499 U.S. at 593-94 (enforcing forum-selection clause contained on cruise ticket, where "cruise line has a special interest in limiting the fora in which it potentially could be subject to suit"). Based on the facts before the court, the traditional convenience factors to be examined pursuant to Section 1404(a) point neither to Seattle, Washington, nor to Greensboro, North Carolina, as the more appropriate forum. For this reason, Plaintiff has failed to persuade the court that it should not enforce the forum-selection clause to which he agreed to be bound. *See In re Ricoh Corp.*, 870 F.2d at 573-74; *Shaw Group*, 907 F.Supp. at 205-06; *Creditors Collection Bureau*, 820 F.Supp. at 313; 17 *Moore's* § 111.13[1][p] [ii][A].

CONCLUSION

*6 For the foregoing reasons, the court will grant the motion to transfer this matter to the Western District of Washington filed by Defendants FMP and Goldberg.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

1999 WL 1939256 (M.D.N.C.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2000 WL 222628 (S.D.N.Y.)
(Cite as: 2000 WL 222628 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
TECHNOLOGY EXPRESS, INC., Plaintiff,
v.
FTF BUSINESS SYSTEMS CORP.,
Defendant-Third Party Plaintiff,
v.
PINACOR, INC., Third Party Defendant.
No. 99 Civ. 11692(LAK).

Feb. 25, 2000.

Steven F. Harmon, Parker Chapin Flattau & Klimpl, LLP, for Third Party Plaintiff.

Daniel J. McAuliffe, Jennifer L. Hadley, Snell & Wilmer L.L.P., Kathleen H. Dooley, Drinker Biddle & Reath LLP, for Third Party Defendant.

MEMORANDUM OPINION

KAPLAN, J.

*1 Third party defendant Pinacor, Inc. ("Pinacor") moves to dismiss or to sever and transfer the third party complaint of defendant FTF Business Systems Corp. ("FTF") against it on the ground that the third party action lies only in Maricopa County, Arizona, by virtue of a forum selection clause in the contract between them or, alternatively, for the convenience of parties and witnesses. It moves also to strike certain portions of the affidavit submitted by FTF in opposition to that motion.

Facts

FTF is a reseller of computer equipment. In January 1999, it entered into a business relationship with Pinacor pursuant to which it from time to time bought equipment from Pinacor for resale to its own customers. Paragraph 14.3 of the agreement between FTF and Pinacor provided in relevant part:

"If a claim is asserted in any legal proceeding, the Purchaser [FTF] and the Company [Pinacor] agree to irrevocably submit to the jurisdiction of the Superior Court of the State of Arizona and the Federal District Court for the District of Arizona, and irrevocably agree that venue for any action or proceeding shall be in Maricopa County, Arizona, USA. Both parties waive any objection to the jurisdiction of these courts or to venue in Maricopa County, Arizona ." [FN1]

FN1. Dooley Decl. Ex. A.

According to the complaint in the main action, FTF later in 1999 entered into an agreement with plaintiff Technology Express, Inc. ("TE") pursuant to which TE agreed to purchase certain computer equipment from FTF and paid FTF $525,000 toward the purchase, but FTF failed to deliver the equipment or to return the money. FTF admits entering into the contract with TE, but asserts that the agreement was contingent upon FTF's ability to obtain the equipment from its supplier, Pinacor. It has also brought the third party action that is the subject of these motions, claiming in substance that Pinacor fraudulently induced FTF to wire transfer funds for purchase of the needed equipment to Pinacor but then failed either to deliver the equipment or to return the money. But the matter is not quite that simple.

According to FTF, the arrangement with Pinacor concerning the equipment intended for resale to TE was not in the ordinary course of dealings between FTF and Pinacor. From January to August 1999, the two companies engaged in a number of purchase and sale transactions on established credit terms with payments made by FTF via checks drawn on its New York bank account. In or about August 1999, however, Pinacor allegedly told FTF that it could provide FTF with certain equipment at attractive discounted "Toss Letter" prices and that "such sales ... must be handled differently than in the past because FTF would be required to pay for all such product by wire transfer to an account other than FTF's regular account." [FN2] This is said to have led to a September 1999 meeting at which Pinacor allegedly explained that it could provide the equipment in connection with a Compaq "Toss

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 222628 (S.D.N.Y.)
(Cite as: 2000 WL 222628 (S.D.N.Y.))

Page 2

Letter" that named another company, Micromem, as the reseller and yet a fourth entity, the AXA Group, as the end user, provided Pinacor's instructions were followed precisely. In consequence, a deal allegedly was struck pursuant to which FTF first would wire transfer payment to Pinacor, Pinacor then would ship the product, and FTF would pay Micromem four percent of the amount of the purchase. [FN3]

> FN2. Burke Aff. ¶ 8 (quoting Third Party Cpt. ¶ 11, attached to Burke Aff. as Ex. 3).
>
> FN3. While it is immaterial to the disposition of this motion, it thus appears that all concerned may have been taking improper advantage of a Compaq discount program.

Discussion

*2 In *M/V Bremen v. Zapata Off-Shore Co.*, [FN4] the Supreme Court held that forum selection clauses in admiralty contracts are enforceable absent "fraud, undue influence, or overweening bargaining power." [FN5] Notwithstanding some scholarly discussion of the proper reach of the doctrine beyond admiralty, [FN6] the Second Circuit squarely held in *Jones v. Weibrecht* [FN7] that *M/V Bremen* governs the enforceability of forum selection clauses in diversity and federal question cases as well. In consequence, *M/V Bremen* and its progeny control in this case.

> FN4. 407 U.S. 1 (1972).
>
> FN5. *Id.* at 13; *accord, Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591 (1991); *see also, e.g., New Moon Shipping Co. v. Man B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1362-63 (2d Cir.1993).
>
> FN6. *See, e.g.,* Young Lee, Note, *Forum Selection Clauses: Problems of Enforcement in Diversity Cases and State Courts,* 35 COLUM. J. TRANSNAT'L L. 663, 668-69 (1997); Walter W. Heiser, *Forum Selection Clauses in Federal Courts: Limitations on Enforcement After Stewart and* Carnival Cruise, 45 FLA. L.REV. 553, 556-63 (1993); Leandra Lederman, Note, *Viva* Zapata: *Toward a Rational System of Forum-Selection Clause Enforcement in Diversity Cases,* 66 N.Y.U. L. REV. 422, 430-31 (1991) ("NYU Note").
>
> FN7. 901 F.2d 17 (2d Cir.1990).

FTF does not dispute the mandatory nature or the enforceability of the forum selection clause in its contract with Pinacor. Its principal argument is that the transactions that give rise to the third party complaint "were outside of and are not governed or controlled by the Purchasing Agreement" of which it is a part. [FN8] The basis for the argument is its contention that the parties agreed that the purchase of Compaq equipment under Toss Letter pricing would be handled differently from other purchases in that payment was required in advance, these sales were made under a different account number, and FTF was told to follow Pinacor's instructions precisely. [FN9]

> FN8. Def. Mem. 12.
>
> FN9. *Id.* at 12-13.

FTF cites and the Court has found no authority for the proposition FTF advances. Nor has FTF offered any persuasive reason in support of its position. FTF and Pinacor entered into a customer-supplier relationship governed by a written agreement. They agreed that any litigation between them would take place in Arizona. The Court simply sees no reason why a subsequent understanding that FTF would pay in advance to obtain especially advantageous prices for certain equipment should alter that agreement. Indeed, the written agreement itself contains a merger clause and proscribes any modifications or termination except by writing. [FN10] Hence, even assuming *arguendo* the truth of FTF's factual contentions, they provide no basis for avoiding the forum selection clause.

> FN10. Dooley Decl. Ex. A, ¶¶ 10, 14.2, 14.5.

FTF suggests also that the forum selection clause does not apply to its contention that it was fraudulently induced to wire transfer the money to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 222628 (S.D.N.Y.)
(Cite as: 2000 WL 222628 (S.D.N.Y.))

Page 3

Pinacor. [FN11] But that contention is without merit. For one thing, the contract itself chooses the Arizona forum for any "claim asserted in any legal proceeding" and thus is more than broad enough to encompass this claim. Moreover, the alleged fraud is the claimed misrepresentation by Pinacor of its intention to ship the computer equipment upon receipt of the wire transfer [FN12] -certainly a claim arising out of the contract for the sale of the equipment. [FN13]

>   FN11. Def. Mem. 13.
>
>   FN12. *Id.*
>
>   FN13. The New York cases upon which FTF relies do not support its position. To begin with, the contract here at issue contains an Arizona governing law clause. Moreover, the cases are inapposite. *Societe Anonyme Belge d'Exploitation De la Navigation Aerienne (SABENA) v. Feller,* 112 A.D.2d 837, 492 N.Y.S.2d 756 (1st Dept.1985), simply observed in dicta that a claim for fraud in inducing an early retirement did not "strictly arise" under the employment agreement at issue, which is not instructive as to the scope of the forum selection clause--any "claim in any legal proceeding"--at issue here. Similarly, *Fantis Foods, Inc. v. Std. Importing Co.,* 63 A.D.2d 52, 406 N.Y.S.2d 763 (1st Dept.1978), held that a claim for conversion of goods did not arise out of a contract pursuant to which the goods were sold.

The Court recognizes that application of the forum selection clause in this case will result in some inconvenience to FTF. It is being sued here for failing to deliver equipment that it ordered from Pinacor and paid for, yet it will be forced to pursue its claim against Pinacor elsewhere. The short answer, however, is that this is a consequence of the bargain FTF made. It is a reseller of computer equipment based in New York. The possibility that it would be sued by a customer in circumstances in which the real problem allegedly lay with its supplier was entirely foreseeable. Yet it bargained away its right to bring Pinacor into such a lawsuit except in the unlikely event that FTF's customer sued it in Phoenix. That may well have been a very bad bargain, but the Court may not relieve sophisticated commercial entities of their bad bargains, and the circumstances simply are not sufficiently extreme to ignore the forum selection clause to which FTF willingly agreed.

*3 Having concluded that the forum selection clause applies and is enforceable, the question remains as to the mode of enforcement. While the procedures for enforcement remain a subject of some uncertainty, [FN14] it seems reasonably plain that either dismissal for improper venue or transfer pursuant to Section 1406 [FN15] could be appropriate in the proper circumstances. In this case, however, one factor counsels against a Section 1406 transfer. Such a transfer of necessity would be to the district court in Phoenix. But the forum selection clause in this contract was not so limited. FTF had the option also of suing in the Arizona Superior Court in Maricopa County. A Section 1406 transfer therefore would effectively narrow the forum selection clause for reasons entirely extrinsic to the parties' agreement. There is no reason to do so. Accordingly, the third party complaint will be dismissed for improper venue, thereby allowing FTF to sue in either of the fora permitted by the forum selection clause.

>   FN14. *See, e.g., New Moon Shipping Co. v. Man B & W Diesel,* 121 F.3d at 28-29, 32-33.
>
>   FN15. 28 U.S.C. § 1406.

Conclusion

The motion of third party defendant Pinacor to dismiss or transfer is granted to the extent that the third party complaint is dismissed on the ground of improper venue and otherwise denied. Its motion to strike portions of the Burke affidavit is denied as moot.

SO ORDERED.

2000 WL 222628 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.