

FILED
U.S. DISTRICT COURT

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S REPLY BRIEF IN FURTHER<br>SUPPORT OF ITS SUPPLEMENTAL<br>MEMORANDUM REGARDING<br>DISCOVERY**<br>Docket No. 316]<br><br>**(REFILED IN REDACTED FORM)**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT.........................................................................................................................8

I.      THE DISCOVERY SCO SEEKS IS RELEVANT TO SCO'S CLAIMS AND
        DEFENSES TO IBM'S COUNTERCLAIMS, ON SEVERAL DISTINCT, AND
        INDEPENDENTLY SUFFICIENT, GROUNDS .....................................................8

II.     THERE IS NO MERIT TO IBM'S RECENTLY CONTRIVED ATTEMPT TO AVOID
        SCO'S DISCOVERY AND EVIDENCE OF INFRINGEMENT BY RECASTING ITS
        NINTH COUNTERCLAIM ...................................................................................12

        A.      The Plain Language of IBM's Ninth Counterclaim
                Precludes IBM's Argument...........................................................................13

        B.      IBM's "Mirror Image" Argument Is Meritless.............................................14

III.    THE EVIDENCE THAT IBM MISUSED THE SCO CODE IT ACCESSED
        THROUGH PROJECT MONTEREY IS ONLY AN EXAMPLE ILLUSTRATING
        THE RELEVANCE OF THE OUTSTANDING DISCOVERY, AND THE TWO
        DOCUMENTS OVER WHICH IBM NOW BELATEDLY ASSERTS
        PRIVILEGE ARE ONLY A PORTION OF THAT EVIDENCE......................................16

        A.      SCO's Showing Concerning IBM's Misuse of Project Monterey Code
                In No Way Depends on the Two Documents Over Which IBM Now
                Claims Attorney-Client Privilege ...........................................................17

        B.      IBM's Assertion of Attorney-Client Privilege Over
                The Saint Pierre E-mail Is Plainly Invalid ...............................................20

IV.     IBM FACES NO SIGNIFICANT, MUCH LESS UNDUE, BURDEN IN
        PRODUCING THE RELEVANT CMVC AND RCS DISCOVERY ..................................22

CONCLUSION.....................................................................................................................26

Plaintiff The SCO Group, Inc. ("SCO") respectfully submits this reply brief in further support of its Supplemental Memorandum Regarding Discovery.

## PRELIMINARY STATEMENT[1]

In support of its Memorandum Regarding Discovery (May 28, 2004), SCO has showed that it properly requested all versions of IBM's AIX and Dynix operating systems; revision information from CMVC and RCS; and all programmer notes, design documents, and white papers. SCO further showed that it had long sought this discovery, but that all IBM has produced are actual commercial releases of AIX and Dynix since 1999.

As SCO has set forth in its prior briefs, the discovery that IBM has now withheld for over a year is relevant (and should be produced pursuant to Federal Rule of Civil Procedure 26) on several independently sufficient grounds. Specifically, for the reasons that SCO has previously articulated (and summarizes in Part I, below), the outstanding discovery is centrally relevant to the following:

(1)     SCO's contract claims (Counts One through Four of SCO's Second Amended Complaint), which arise out of IBM's breach of its UNIX System V license agreements by contributing AIX and Dynix code into Linux;

(2)     SCO's copyright claim (Count Five), which primarily concerns IBM's continued use of AIX and Dynix following SCO's termination of the license agreements;

(3)     IBM's Ninth Counterclaim, which seeks a sweeping declaration that IBM's AIX and Dynix activities do not infringe any SCO copyrights; and

(4)     IBM's Tenth Counterclaim, which seeks a similarly sweeping declaration of non-infringement as to all of IBM's Linux activities.

---

[1] All numbered exhibits herein refer to the exhibits to the accompanying Declaration of Jeremy Evans dated October 4, 2004. Exhibits identified by letter are attached hereto.

Thus, the discovery that SCO seeks not only is critically important to SCO's ability to develop the proof of its own claims, but also is necessary for SCO to defend against two sweeping counterclaims that IBM added to this case since this Court's last discovery-related Order. Moreover, this discovery – which SCO requested from IBM over a year ago – constitutes core, predicate information that SCO needs in order to pursue further discovery in this case, including to identify the witnesses SCO needs to depose. SCO's pressing need for the production of this discovery has become all the more critical in light of (1) IBM's recent attempts to accelerate adjudication of the key issues in this case (including SCO's contract claims and IBM's recently filed Tenth Counterclaim) through its filing of fact-intensive summary judgment motions, and (2) the February 11 discovery cut-off under which the parties are currently operating.

In its Supplemental Memorandum, SCO provided an illustrative example of the above-described independent bases for production. SCO explained certain evidence that SCO recently uncovered in discovery concerning IBM's infringement of SCO copyrights through its development of AIX. Specifically, SCO's brief presented internal documents, produced by IBM in April, which strongly suggest that, in order to convert customers from Sun Corporation's Solaris Operating System to IBM's AIX software, IBM placed in AIX infringing SCO code that acted like Solaris code. SCO Supp. Mem. at 3-7. Significantly, IBM had access to that proprietary SCO code only through "Project Monterey," a joint development arrangement that gave IBM no right to use and/or license the SCO code in IBM's AIX for Power product. Id. Nevertheless, IBM included that infringing code in every version of IBM's AIX for Power PC software that it has shipped from October 2000 to date, id. at 7, and used its CMVC to carry out its improper conversion of SCO's code, see id. at 8-9. The Project Monterey evidence provided,

2

by way of illustrative example, yet another specific reason why SCO needs the outstanding programming history discovery to develop its claims and defenses.

Despite the strength of this illustrative evidence -- which SCO developed only by the happenstance that internal documents produced by IBM reflected IBM's improper use of SCO code in AIX for Power -- IBM's makes no attempt to deny or excuse its infringing use of SCO code that it improperly, and surreptitiously, converted to its own use through Project Monterey. Indeed, despite obtaining a five-week delay in the previously scheduled discovery hearing before this Court on the ground that it needed more than the three-and-a-half weeks that it already had to respond to SCO's Supplemental Memorandum, IBM does not attempt to address the substance of SCO's Project Monterey showing at all.

Instead, in an attempt to avoid the inevitable consequences of its conduct and its pleading choices, IBM first tries to recast the Ninth Counterclaim it filed in March in a way that its plain and unambiguous terms will not permit. IBM contends, for the first time in this litigation, that the Ninth Counterclaim is limited to IBM's conduct following SCO's termination of its licenses to use and distribute AIX and Dynix. This new, constricted view is wholly at odds with the unmistakably broad, clean bill of health that IBM's Ninth Counterclaim seeks for AIX and Dynix: "IBM does not infringe, induce the infringement of, or contribute to the infringement of any SCO copyright through the reproduction, improvement, and distribution of AIX and Dynix." IBM 2d Am. Countercl. ¶ 167 (emphasis added). The language and breadth of this counterclaim directly parallels IBM's contemporaneously-filed, Linux-related Tenth Counterclaim, which admits of no limitation to post-license-termination conduct. There is not even any such Linux-related license termination dispute between the parties. IBM's contention that its counterclaims are merely "mirror images" of SCO's claims is not only incompatible with the plain language

3

and clear purpose of those broad claims, but also illogical as a legal matter, because purely redundant, mirror-image counterclaims are dismissed as unnecessary.

In short, IBM's counterclaims insert a host of new issues in this case in order for IBM to try to obtain from the Court clean bills of health for its operating system products (AIX, Dynix, and Linux) and thereby advance its multi-billion dollar AIX and Linux businesses. IBM's attempt now to limit its Ninth Counterclaim for purposes of avoiding SCO's discovery and evidence is meritless. See Part II, below.

IBM's other effort to obscure the issues before the Court, focusing on its belated attorney-client privilege claims over documents that it produced approximately six months ago, fairs no better. Those claims are entirely collateral to the discovery issues before the Court for the following reasons:

- The record set forth in SCO's principal brief and reply are sufficient to demonstrate the relevance of this discovery without reference to SCO's Project Monterey evidence. SCO's entitlement to the discovery it now seeks is in no way dependent on the evidentiary showing that SCO made in support of its Supplemental Memorandum. Indeed, even if SCO had never uncovered any such evidence concerning IBM's improper exploitation of the Project Monterey joint development arrangement, the discovery that SCO seeks would still be relevant under each of the independently sufficient grounds noted above.

- SCO's Project Monterey showing justifies ordering the discovery sought without consideration of the two documents over which IBM now asserts an attorney-client privilege.

- At least one of the two e-mails over which IBM has asserted its belated attorney-client privilege claim (the Ron Saint Pierre e-mail) plainly does not qualify for the privilege because it is a business communication between non-lawyers which is merely copied to a lawyer.[2]

---

[2] SCO does not here rely on the information contained in the second disputed document (the Saint Pierre e-mail), but reserves its right to challenge that privilege claim through a motion to compel.

4

IBM's belated privilege claims may be addressed (and resolved by the Court) separately and may possibly impact the scope of future discovery concerning IBM's deceptive conduct concerning Project Monterey.[3] Those claims, however, have no bearing on the discovery now before the Court – which is indisputably not privileged. See Part III, below.

IBM also has failed to make any showing that the burden of producing the foregoing core discovery outweighs its plain relevance and benefit. IBM concedes at the outset that it would not be unduly burdensome for it to produce the RCS information as to the Dynix software development, but never even addresses how it can be unduly burdensome to produce data from CMVC, the same type of software code/version control and change-tracking system. In addition, after initially claiming it would take "many, many months" for it to produce the AIX-related discovery, IBM has more recently reduced its estimate to "many weeks." In response to the sworn testimony SCO produced confirming that IBM could produce the information in many weeks, IBM now offers no time estimate at all. Indeed, "many weeks" have passed between any one of a number of document requests, productions, hearings, and postponements over the last year. In making the conclusory assertion that it would be "enormously burdensome" for it to produce the information, IBM fails to meet its burden of suggesting any identifiable burden in the first place.

In addition to the relevance of the crucial information at issue, the other governing factors also plainly weigh in favor of full production of the data on CMVC. The parties have already accepted in this case the burden of producing large numbers of documents, there is a great deal (including financially) at stake, IBM indisputably has enormous resources that far exceed SCO's,

---

[3] SCO intends to file a separate motion to compel the production of the documents over which IBM has asserted belated privilege claims and to set forth therein all of the bases for production of those documents.

the CMVC (and RCS) information SCO seeks is uniquely within IBM's control, and (as SCO has demonstrated in multiple prior memoranda) SCO has no other practical way to review the history of changes in AIX or Dynix code before such code was contributed to Linux or to review the derivation of AIX or Dynix code from SCO's UNIX code.

Finally, even though the issue has nothing to do with the outstanding discovery, IBM's brief features the grave suggestion that SCO has acted improperly (even unethically) in handling the two documents that IBM claimed to be privileged after SCO's Supplemental Memorandum showed those documents to be part of IBM's improper Project Monterey conduct. IBM's accusation is as baseless as it is irrelevant. When IBM asserted a conclusory privilege for the first time on August 25 and demanded the return of the documents as "inadvertently produced," SCO asked IBM merely to provide a rudimentary explanation (not any declarations or legal arguments) for its claim; SCO asked IBM twice – including once by a direct letter to IBM's counsel – to identify even a single attorney on the documents. IBM refused. It was not until IBM filed its opposition brief – a full month after IBM first asserted its privilege claim – that IBM finally complied. SCO then promptly returned the documents to IBM, while expressly reserving its rights to challenge IBM's privilege claim.[4]  SCO's conduct was entirely consistent with SCO's obligations, including under the parties' Attorney Planning Report.[5]

---

[4] As SCO has advised IBM, in light of the Court's upcoming hearing on the discovery issues, SCO has retained two complete copies of SCO's Supplemental Memorandum, which attached the two e-mails as exhibits, pending the Court's further direction on this matter.

[5] The parties' Attorney Planning Report, on which IBM seeks to rely, did not excuse IBM from laying a proper foundation for its assertion of privilege; rather, the parties' agreement merely provided that a party is required to return documents on which another party asserts a proper privilege claim "without the need to show the production was inadvertent." Exh. 1. Moreover, IBM's reliance on ABA Formal Opinion 368 is obviously misplaced. As this Court has recognized (but IBM neglects to mention), that Opinion – which concerns the somewhat different circumstance of "a lawyer who comes into possession of materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, under

6

Instead of providing the basic information SCO requested (and thereby justifying the return of the documents), IBM asserted in its ex parte submission to the Court (filed three weeks after SCO's Supplemental Memorandum) that it needed additional time to "secure declarations" to respond to "new arguments and issues" raised by SCO's Supplemental Memorandum. On that basis, IBM asked the Court to adjourn the September 14 hearing date on both of SCO's pending discovery motions. In so delaying the prior hearing, IBM succeeded in (among other things) further delaying any production of the crucial discovery SCO has been seeking for over a year. Now, having secured that delay, IBM makes no effort in its opposition brief to address the substance of "the new issues raised in SCO's papers" or to present witness declarations to address those issues.[6]

IBM's baseless accusations of impropriety against SCO cannot excuse IBM's pattern of delaying crucial discovery even while it asks the Court to resolve all the critical issues in this case. IBM's failure to produce similar code in another pending federal case recently warranted sanctions against IBM.[7] This Court should not permit IBM to delay any longer the production of the patently relevant – and readily producible – discovery that SCO requested over a year ago.

---

circumstances where it was clear that the materials were not intended for the receiving lawyer" – has been rejected by this Court and the Utah State Bar Ethics Committee. See Lifewise Master Funding v. Telebank, 206 F.R.D. 298, 301-02 & n.2 (D. Utah 2002). Indeed, this Court and the Utah Ethics Committee agree that the proper "approach for purposes of material produced in the discovery process" is for the parties to "turn to resolution of the legal implications of the disclosure and whether a waiver has occurred" without the need for the prior return of the disputed documents. Id.

[6] IBM did not need almost a month to make any of the arguments in its opposition brief; IBM possessed all of the information it needed to make those arguments, and could easily have addressed them, before the September 14 hearing date. SCO never suggested or required that IBM provide – and IBM is not at this juncture required to provide – witness declarations in support of its privilege claim.

[7] In Compuware Corporation v. IBM, Case No. 02-70906 (E.D. Mich.), Magistrate Judge Wallace Capel, Jr. sanctioned IBM on September 15, 2004, for failing to produce computer source code discovery. Exh. 2. The Court ordered IBM to pay the reasonable costs incurred by the plaintiff in bringing its motion for

## ARGUMENT

**I.    THE DISCOVERY SCO SEEKS IS RELEVANT TO SCO'S CLAIMS AND DEFENSES TO IBM'S COUNTERCLAIMS ON SEVERAL DISTINCT, AND INDEPENDENTLY SUFFICIENT, GROUNDS**

The discovery that SCO seeks through its Memorandum and Supplemental Memorandum Regarding Discovery is relevant on several, <u>independently sufficient</u> grounds relating not only to SCO's claims, but also to counterclaims that IBM recently inserted into this case.[8]  These unavoidable bases for production exist <u>completely apart</u> from any issue that IBM now raises concerning its "inadvertent production" of two purportedly privileged documents.  SCO shows below that IBM's assertion that SCO "wants simply to engage in a massive fishing expedition," IBM Mem. at 2, is baseless.

SCO's relevance grounds for production easily satisfy the broad standard governing discovery under the Federal Rules.  <u>See</u> Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding <u>any matter</u>, not privileged, <u>which is relevant to the subject matter involved in the pending action</u>"; the information need only "appear[] <u>reasonably calculated</u> to lead to the discovery of admissible evidence." (emphasis added)); <u>Gohler v. Wood</u>, 162 F.R.D. 691, 694 (D. Utah 1995) ("The language and interpretation of Rule 26(b)(1) indicate that, at least at the discovery stage, the concept of relevance should be construed very broadly."); <u>see also Sheldon</u>

---

discovery sanctions, extended the discovery period for additional discovery relating to the code IBM had failed to produce, permitted the plaintiff to take additional depositions relating to that code, required IBM to reimburse the plaintiff for the reasonable costs associated with those depositions, permitted the plaintiff to submit supplemental expert reports based on the code, required IBM to pay for the reasonable costs incurred by the plaintiff's experts in preparing such reports, and vacated and adjourned the previously-scheduled November 8, 2004 trial date. Exh. 3.

[8] Indeed, the outstanding discovery is centrally relevant to claims and counterclaims, including SCO's contract claims and IBM's Tenth Counterclaim, on which IBM has moved for summary judgment. SCO addresses those claims below and explains how the outstanding discovery is plainly relevant to them.

8

v. Vermonty, 204 F.R.D. 679, 689 (D. Kan. 2001) ("A request for discovery should be allowed

unless it is clear that the information sought can have no possible bearing on the claim or defense

of a party." (emphasis in original)).

    First, the discovery is unmistakably relevant to SCO's core claims concerning the IBM

and Sequent license agreements.[9] The plain language of the IBM and Sequent Software License

Agreements required that any derivative or modification of the original UNIX System V code

was to be treated as if it was "part of the original SOFTWARE PRODUCT," and thus subject to

the same restrictions on use and disclosure as the original licensed UNIX source code itself.[10]

One way in which SCO will prevail on its contract claims is by tracing the AIX or Dynix code

that IBM contributed to Linux back to UNIX. The outstanding discovery concerning the

development history of AIX and Dynix that IBM has refused to produce is clearly relevant to this

proof because it documents among other things: (1) the names of the programmers who were

involved with developing, modifying, and/or contributing the AIX and Dynix source code in

question; (2) the dates of those developments, modifications, and/or contributions; and (3) the

precise developments, modifications, and/or contributions that were made, including the precise

source code involved and other relevant programmer notes pertinent to these issues. See SCO

---

[9] These claims include SCO's breach-of-contract claims (Counts One through Four) as well as its copyright claim (Count Five), which centers on IBM's improper continued use of AIX and Dynix following SCO's termination of the IBM and Sequent license agreements.

[10] Similarly, Section 7.06(a) of the Sequent license agreement specifically prohibited the disclosure of "any or all of such SOFTWARE PRODUCTS [i.e., UNIX System V and, pursuant to Section 2.01, any modifications or derivatives based on that contents of System V] (including methods or concepts utilized therein) to anyone." Thus, any disclosure of any method or concept of anything in UNIX System V (or anything derived from UNIX System V) would breach the license agreement. SCO's access to the requested programming history discovery will permit SCO to locate the proof of such breaches.

Reply Mem. Regarding Discovery (July 12, 2004) at 11-13.[11]  Indeed, IBM acknowledged the

relevance of these materials to SCO's contract claims when it argued to the District Court, in

support of its motion for summary judgment on its Tenth Counterclaim (concerning copyright

infringement), that "SCO's recitation of the discovery it needs and what it would do with that

discovery, that merely conflates SCO's contract claims with its copyright claims."  9/15/04 Hr'g

Tr. at 123.

Second, independent of SCO's own claims, the discovery at issue is plainly relevant to

two separate counterclaims that IBM inserted into this case on March 29, 2004 – after this Court

entered its last discovery-related Order on March 3.  IBM's Tenth Counterclaim, for example,

seeks a blanket declaration that Linux does not infringe any SCO copyright.  See IBM 2d Am.

Counterch. ¶ 173.  There is no merit to IBM's attempt to shield the development history of AIX

and Dynix from discovery based on its repeated refrain that the proof of its Linux copyright

claim requires a comparison of only UNIX System V code on the one hand and Linux code on

the other.  SCO does not dispute that its defense to IBM's Tenth Counterclaim will necessarily

involve proof of literal and/or non-literal copies of UNIX code that were ultimately dumped into

Linux.  What IBM ignores is that its Linux dump did not occur directly from the original

licensed UNIX product; rather, before the original UNIX code was copied, literally or non-

literally, into Linux (within the past five years), it traveled for longer than a decade through the

development process of the UNIX-based AIX and Dynix programs.  It is for this precise reason

---

[11] IBM has previously mischaracterized SCO's contract interpretation argument to be limited to showing that AIX and Dynix are, as a whole, derivatives of the original licensed product. As SCO has repeatedly explained, although there is much to support this contractual reading – including IBM's own repeated admissions – SCO's theory of the contract is not so limited. Rather, SCO also seeks to show that the particular contributions that IBM made to Linux violated the license agreements because those specific contributions represented derivatives or modifications that were required to be treated as if they were part of the original licensed Unix System V product.

that the development history of AIX and Dynix – the discovery that IBM has withheld for over a year – is critical to SCO's defense to the Tenth Counterclaim.

In particular, and as SCO has previously detailed for the District Court in its opposition to IBM's first summary judgment motion and at the recent argument on that motion, the outstanding programming-history discovery may contain programmer admissions and comments on which courts have heavily relied in copyright infringement cases.  See, e.g., Computer Assocs. Int'l v. Quest Software, Inc., No. 02 C 4721, 2004 WL 1459495, at *9 (N.D. Ill. June 28, 2004) (Exh. A) (granting preliminary injunction in computer software infringement case based on such evidence).  Moreover, the outstanding discovery is necessary for SCO to focus and streamline its investigation of Linux, and is absolutely critical to SCO's investigation of non-literal copyright infringement in Linux.  Under settled Tenth Circuit law, proof of non-literal copying of protected material would establish that Linux infringes SCO's UNIX copyrights, one of the precise claims against which IBM's Tenth Counterclaim seeks a declaration. See, e.g., Gates Rubber Co. v. Bando Chem. Indus. Ltd., 9 F.3d 823, 835-36 (10th Cir. 1993) (noting that the "structure, sequence, organization" of a program, and not only its "literal" source and object code, may be copyrightable).  Automated computer programs, while useful in detecting verbatim copying, are not perfect, and are virtually useless in identifying non-literal copying.  And manual, side-by-side comparison of the millions of lines of System V and Linux source code in a search for non-literal copying would be incredibly burdensome and time-consuming.  The discovery SCO has requested, on the other hand, will allow SCO to determine which elements of UNIX were directly incorporated into AIX and Dynix in the first instance and thereby to trace the migration of protected, non-literal elements of UNIX, through AIX and Dynix, to Linux.  In turn, SCO will be able to identify "hot spots" in Linux (those portions of AIX and Dynix that can

11

ultimately be traced back to UNIX) on which it can effectively focus its Linux copyright infringement investigation in this case.[12]

Finally, and even more obviously, the outstanding programming history is independently relevant to IBM's Ninth Counterclaim, which seeks a declaration that IBM does not infringe "any SCO copyright through the reproduction, improvement, and distribution of AIX and Dynix." IBM 2d Am. Countercl. ¶ 167 (emphasis added). That history is relevant entirely apart from the specific evidence that SCO has recently uncovered to establish IBM's infringement of SCO's copyrights through AIX (i.e., evidence that in connection with its work on "Project Monterey," IBM used its CMVC system as an instrument to misappropriate SCO's proprietary code for inclusion in a specialized version of AIX (AIX for Power)). Given its plain language – and notwithstanding IBM's attempt now to recast its scope, see Part II, below – IBM's Ninth Counterclaim necessarily directly implicates the programming history of AIX and Dynix, an issue on which the CMVC and RCS systems constitute direct evidence.

## II. THERE IS NO MERIT TO IBM'S RECENTLY-CONTRIVED ATTEMPT TO AVOID SCO'S DISCOVERY AND EVIDENCE OF INFRINGEMENT BY RECASTING ITS NINTH COUNTERCLAIM

IBM now argues, for the first time, that its "Ninth Counterclaim seeks nothing more than a declaration that SCO's purported termination of IBM's UNIX System V licenses – the agreements specified in SCO's Second Amended Complaint – is invalid and that SCO has no

---

[12] After SCO showed during the September 15 hearing before the District Court how the development history of AIX and Dynix is a roadmap permitting SCO to investigate potential copyright infringement in IBM's Linux contributions, IBM's counsel opined that the roadmap for which SCO asks "might as well be the road map for China" because "The only road map that matters, Your Honor, is what's in Unix and what's in Linux." Tr. at 115-16. This argument is misguided. Because IBM's contributions to Linux were taken from AIX and Dynix, the UNIX-derived products, the roadmap for IBM's contributions to Linux exists in the programming history to those programs. IBM's counsel's argument also misapprehends the governing discovery standard, under which SCO is entitled to any information reasonably calculated to lead to the discovery of admissible evidence.

claim for copyright infringement based on such purported termination." IBM Mem. at 8. Given the plain language of the counterclaim, IBM's assertion that SCO has "misstated the scope" of the counterclaim, IBM Mem. at 2, lacks any foundation. IBM appears to have concocted this argument to avoid producing plainly relevant discovery and to avert the consequences of SCO's recently discovered Project Monterey evidence.[13]

**A.    The Plain Language of IBM's Ninth Counterclaim Precludes IBM's Argument**

IBM says that it is seeking only a declaration that "SCO's purported termination of IBM's UNIX System V licenses . . . is invalid." But IBM's Ninth Counterclaim in fact asks the Court to declare that "IBM does not infringe, induce the infringement of, or contribute to the infringement of <u>any</u> SCO copyright through the reproduction, <u>improvement,</u> and distribution of AIX and Dynix." IBM 2d Am. Countercl. ¶ 167 (emphasis added). In its pleading, IBM suggests <u>no</u> limit to the scope of its requested declaration, much less the limitation it now seeks to impose after the fact. <u>See id.</u> ¶¶ 162-67. To the contrary, IBM asserts that none of "<u>its</u> <u>activities relating to AIX and Dynix</u>, including <u>any reproduction, improvement and distribution</u> <u>of AIX and Dynix</u> infringe, induce the infringement of, or contribute to the infringement of valid, enforceable copyrights owned by SCO." <u>Id.</u> ¶ 165 (emphasis added).

IBM's new reading of its Ninth Counterclaim also is inconsistent with the structure of its own pleading. IBM's Ninth and Tenth Counterclaims are <u>parallel</u> requests for Court-ordered clean bills of health for <u>AIX and Dynix</u> as well as <u>Linux</u>, respectively. IBM's allegations in the

---

[13] In addition, even under IBM's new version of its counterclaim, the discovery in question would still be indisputably relevant. SCO terminated IBM's license agreements on the basis of IBM's prohibited use of UNIX source code in developing AIX and Dynix. Thus, the development-history evidence contained in CMVC and RCS is relevant to the Ninth Counterclaim (just as it is to SCO's copyright claim) even under IBM's reinterpretation.

counterclaims are identical as to (1) facts precedent (¶¶ 164-65), (2) the purported bases for declaratory relief (¶¶ 167, 173), (3) the statements of actual controversy (¶¶ 166, 172), and (4) the requested declarations (Prayer for Relief e(i), e(ii)). The parallel language and function of these counterclaims, which IBM concedes (see IBM Mem. at 7), is impossible to reconcile with IBM's contention that its Ninth Counterclaim concerns only IBM activities after SCO's termination of the licensing agreement; IBM claims no such limitation on its Tenth Counterclaim, and there are no disputes between the parties concerning any Linux-related license agreements or license rights.[14]

### B. IBM's "Mirror Image" Argument Is Meritless

In an attempt to support is new restrictive reading of its Ninth Counterclaim, IBM asserts that its Ninth and Tenth Counterclaims are merely designed to "mirror different aspects of SCO's claim for copyright infringement." IBM Memo. at 7. There is no merit to this claim. IBM's Ninth Counterclaim is not limited or in any way tied to SCO's copyright claim; rather, IBM seeks a blanket declaration that none of its "activities relating to AIX and Dynix" infringe SCO's copyrights.

IBM's new "mirror image" interpretation is dubious for the additional reason that if (contrary to fact) it were true, then it would be subject to dismissal as redundant and unnecessary as one merely negating SCO's affirmative claim. See, e.g., Dean v. Anderson, No. 01-2599-JAR, 2002 WL 31115239, at *3 (D. Kan. Sept. 18, 2002) (Exh. B) (dismissing redundant and

---

[14] IBM's description of the Ninth Counterclaim elsewhere in its Opposition Memorandum also contradicts its new interpretation. In attempting to support its contention that Project Monterey is beyond the scope of these proceedings, IBM argues that its Ninth Counterclaim is only as "broad as the first five counts of SCO's own complaint." IBM Mem. at 8. The first four of SCO's counts, however, explicitly concern IBM's pre-termination contract breaches. Thus, even by (at least one version of) IBM's argument, the scope of its Ninth Counterclaim is not limited to its post-termination AIX and Dynix activities.

unnecessary counterclaim); RSL Holding Co. v. Dresser Indus., Inc., No. 89 C 7004, 1991 WL

203864, at *3 (N.D. Ill. Oct. 1, 1991) (Exh. C) ("Courts regularly dismiss redundant

counterclaims."); Mille Lacs Band of Chippewa Indians v. Minn., 152 F.R.D. 580, 582 (D. Minn.

1993) ("A redundant declaratory judgment claim is not a proper declaratory judgment claim and

should be dismissed.").[15]

In the face of all of these problems with its argument, and without even acknowledging

the actual language of the Ninth Counterclaim, IBM pleads that "it would have made little sense"

for IBM to bring a counterclaim of that breadth. IBM Mem. at 7. If the analysis is even

relevant, IBM does have a clear business motive for seeking such broad declarations: given

IBM's multi-billion-dollar AIX and Linux businesses, IBM would stand to profit greatly from its

requested declarations. See Exhs. 4-5 (describing IBM's growing UNIX (AIX) business, the

revenues of which grew 13% to $4.1 billion in 2003), Exhs. 6-7 (noting that IBM's Linux-related

business has doubled over each of the last two years, and now exceeds $2 billion). IBM

therefore seeks to secure the broadest possible declarations of non-infringement for AIX, Dynix,

and Linux. IBM thus has it backward. What does not make sense is to file redundant

counterclaims that merely mirror SCO's claims. What does make sense – and what IBM has

actually done, notwithstanding its recent pleading remorse – is to attempt to obtain blanket

declarations of non-infringement, thereby immunizing AIX, Dynix, and Linux from future suit,

reassuring IBM's customers, and advancing IBM's business interests.

---

[15] IBM's "mirror image" argument also fails to reconcile IBM's parallel Tenth Counterclaim, which
indisputably sweeps into this case copyright issues concerning (1) every line of Linux code ever
contributed by anyone anywhere in the world and (2) all of IBM's rapidly expanding Linux activities.
SCO's copyright claim, in contrast, relates only to IBM's distribution, reproduction, and use of AIX and
Dynix without a license to do so.

Accordingly, based on IBM's Ninth Counterclaim (as well as on SCO's contract and copyright claims and IBM's Tenth Counterclaim), SCO is entitled to the outstanding programming history discovery before the Court on SCO's Memorandum Regarding Discovery. In its Supplemental Memorandum, however, SCO set forth further, and independent, grounds for that discovery. See Part III, below.

## III. THE EVIDENCE THAT IBM MISUSED THE SCO CODE IT ACCESSED THROUGH PROJECT MONTEREY IS ONLY AN EXAMPLE ILLUSTRATING THE RELEVANCE OF THE OUTSTANDING DISCOVERY, AND THE TWO DOCUMENTS OVER WHICH IBM NOW BELATEDLY ASSERTS PRIVILEGE ARE ONLY A PORTION OF THAT EVIDENCE

At the time of its Supplemental Memorandum, SCO had already presented compelling evidence why it is entitled to the discovery regarding the AIX and Dynix data that is contained in IBM's CMVC and RCS systems. In the Supplemental Memorandum, SCO presented evidence from IBM's own files suggesting that IBM engaged (and understood it was engaging) in a course of conduct through Project Monterey that, by misleading SCO, allowed IBM to misappropriate and copy SCO's copyrighted SVR4 code into IBM's own AIX for Power Operating System. The evidence showed that IBM transferred the code into AIX for Power using its CMVC System, the storage device that IBM is now refusing to produce. IBM's own documents thus showed that CMVC contains details about AIX's history establishing copyright violations that IBM's Ninth Counterclaim contends never occurred – namely, that IBM used its CMVC system to divert and copy SCO-copyrighted SVR4 code for unlicensed use in IBM's AIX for Power products. SCO's Supplemental Memorandum thus brought to the Court's attention a further independent, exemplary ground for production of the data from CMVC and RCS.

In response IBM has belatedly asserted privilege claims over documents that it produced over six months ago. Those documents are but two examples of the materials SCO has already

produced to the Court – even without any discovery focused on Project Monterey – further demonstrating SCO's entitlement to the AIX data from CMVC. See Part A, below. The Court may address (and resolve) IBM's claims of privilege entirely separately from SCO's request to obtain the plainly relevant CMVC and RCS data. SCO does submit, however, that IBM's claim of privilege for at least one those two documents must fail on its face. See Part B, below.

SCO's Supplemental Memorandum, and IBM's attempt to persuade the Court to disregard it, merely underscore the crucial need for this Court to order the discovery SCO has requested. IBM's Ninth Counterclaim voluntarily injects this precise issue into the case and, with or without the e-mails IBM now seeks to conceal, SCO has presented a compelling record justifying such discovery.

**A.    SCO's Showing Concerning IBM's Misuse of Project Monterey Code In No Way Depends on the Two Documents Over Which IBM Now Claims Attorney-Client Privilege**

IBM argues in effect that this Court should disregard SCO's entire Supplemental Memorandum because two of the many exhibits SCO submitted in support of its Memorandum are alleged attorney-client privileged documents that IBM has "inadvertently" produced. One reason IBM's argument is without merit is that SCO has produced extensive material (itself only a subset of like material that SCO expects to uncover) that IBM does not contend is privileged, and that independently supports SCO's showing concerning IBM's surreptitious misuse of SCO code to which IBM obtained access only through Project Monterey.

SCO has made, through evidence drawn primarily from IBM's own documents, a compelling showing that IBM obtained SCO proprietary source code through Project Monterey and used that code in IBM's AIX for Power software without either the consent of SCO or the legal right to do so. IBM has not refuted the declaration of SCO's engineer Barbara Howe that

17

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

nor even addressed, how it can be "unduly burdensome" to produce CMVC information about AIX when it is concededly not burdensome for it to produce RCS information about Dynix.

Indeed, IBM's burden argument is not credible.  Under Rule 26(b)(2)(iii), IBM must demonstrate that "the burden or expense of the proposed discovery outweighs its likely benefit".  See, e.g., Simpson v. Univ. of Colo., 220 F.R.D. 354, 359 (D. Colo. 2004) (the alleged burden must "outweigh the ordinary presumption in favor of broad disclosure" (internal quotation marks and citations omitted)).  The Court must consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(iii); accord In Cornell Research Found., Inc. v. Hewlett-Packard Co., 223 F.R.D. 55, 60-62 (N.D.N.Y. 2003) (rejecting Hewlett-Packard's claim of undue burden regarding "basic" discovery that was "uniquely within HP's control," despite the fact that the discovery in question had already demanded "3285 hours, expended by some 206 HP employees, resulting in production of 56,000 pages of discovery materials").

On the initial question, IBM has made no credible showing that producing CMVC data presents any significant, let alone "undue," burden.  At the February 6, 2004 hearing before this Court, IBM claimed it would take "many, many months" for it to produce the AIX-related discovery.  2/6/04 Hr'g Tr. at 37:10-14.  IBM later reduced its estimate of the claimed burden to "many weeks."  IBM Opp. to SCO Mem. Re Disc. (June 23, 2004) at 10, 19.  After reviewing the material SCO has shown the Court, IBM insists the production would be "enormously burdensome," but offers no actual time estimate.  IBM Opp. at 9.  The facts are that "many weeks" passed (1) between SCO's request for the AIX-related discovery and the February 6 hearing, (2) between the February 6 hearing and IBM's production of certain AIX-related

discovery in May, (3) between IBM's May production and its June 23 opposition memorandum, (4) between IBM's June 23 opposition memorandum and SCO's August 19 Supplemental Memorandum, and (5) between the time the hearing before this Court was originally scheduled (September 14) and the time for which it was rescheduled at IBM's request (October 19). Indeed, had IBM spent the few weeks necessary to produce the information SCO seeks rather than spending months and extensive counsel fees and Court time opposing production of that information on the sole basis of burden, IBM would have undergone substantially less burden both in terms of time and expense than it now maintains it will suffer merely by producing the information pertaining to AIX and Dynix contained on its CMVC.

In simply labeling as "mere conjecture" the time estimate that SCO consultant Barbara Howe provided for the production, IBM falls far short of satisfying its burden of identifying even approximately what burden it might face. The June 23 Declaration of IBM employee Joan Thomas, on which IBM relies, studiously avoids any precision in quantifying IBM's burden. Ms. Thomas "estimates" the number of lines of code involved, provides only an "expectation" in support of her estimate of IBM's burden, and fails utterly to present any information on which to suggest that Ms. Howe's estimate – which echoes IBM's own, prior estimate – is inaccurate in fact. Thomas Decl. ¶¶ 8, 10.

The details underlying Ms. Howe's declaration stand in stark contrast. Ms. Howe has first-hand experience with CMVC, on which she bases her view that it would be merely a "straightforward process for IBM to provide SCO with access to all AIX-related program files, comments and SCCS historical data contained in the CMVC database." Howe Decl. ¶ 18. Ms. Howe was trained by IBM in the use of CMVC in 1999. Id. ¶ 7. Based on this IBM training, Ms. Howe states that CMVC is organized into logical collections that "make it easy for a user of

24

CMVC to access all of the files related to a particular [AIX] 'component' or 'release.'" Id. ¶ 9. Ms. Howe explains that, not surprisingly and consistent with the August 26, 2004 Declaration of SCO Vice-President Chris Sontag, the CMVC system is designed to provide IBM the ability to retrieve the very information that SCO seeks here. Id. ¶ 10; 8/26/04 Sontag Decl. ¶ 17. Finally, Ms. Howe informs the Court that remote access to IBM's CMVC system can be provided to SCO software engineers "on the basis of . . . pre-assigned access privileges," as was done by IBM in 1999. Howe Decl. ¶ 14. In her declaration, Ms. Thomas never addresses the topic of remote access to CMVC for SCO software engineers, and therefore makes no representation at all concerning any burden involved in IBM's providing CMVC information in this way. For all of these reasons, IBM fails to meet its burden of suggesting any identifiable burden in the first place. See, e.g., Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format"; absent unusual circumstances, "in the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible").

The other Rule 26(b)(2)(iii) factors also plainly weigh in favor of full production of the CMVC data. IBM does not even attempt to explain how in producing the data it would face an unacceptable burden in a case of this nature. The efforts the parties have made in discovery are plainly atypical; the parties have produced close to two million documents. The amount in controversy here far exceeds the money at stake in a typical case. IBM indisputably has enormous resources that far exceed SCO's. The CMVC (and RCS) information SCO seeks is uniquely within IBM's control. The information, moreover, is crucial to SCO's investigation of the programming history of AIX and Dynix. In addition, as SCO has demonstrated in multiple

prior memoranda, without the requested CMVC and RCS information it seeks, SCO has no other practical way to review the history of changes in AIX or Dynix code before such code was contributed to Linux, or to review the derivation of AIX or Dynix code from SCO's UNIX code. See Part I, above.

Under the circumstances, IBM does not (and cannot) demonstrate any "undue burden" from spending "weeks" to produce the foregoing, basic discovery.

## CONCLUSION

SCO respectfully submits that for the reasons set forth above, and in SCO's Memorandum Regarding Discovery, SCO's Reply brief in support thereof, and SCO's Supplemental Memorandum Regarding Discovery, the Court should specifically order IBM to produce all versions of IBM's AIX and Dynix operating systems; revision information from CMVC and RCS; and all programmer notes, design documents, and white papers.

DATED this 4th day of October, 2004.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James
Mark R. Clements

BOIES, SCHILLER & FLEXNER LLP
Robert Silver, Esq. (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing

**SCO'S REPLY BRIEF IN FURTHER SUPPORT OF ITS SUPPLEMENTAL**

**MEMORANDUM REGARDING DISCOVERY** to be mailed by U.S. Mail, first class postage

prepaid this __4__ day of October, 2004, to the following:

> Alan L. Sullivan, Esq.
> Todd M. Shaughnessy, Esq.
> Snell & Wilmer L.L.P.
> 15 West South Temple, Ste. 1200
> Gateway Tower West
> Salt Lake City, Utah 84101-1004

and mailed by U.S. Mail, first class postage prepaid, to the following:

> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY  10019

> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York  10604

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 5th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*Laura K. Chaves*