

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL DISCOVERY**<br>[Docket No. 365]<br><br>**(REFILED IN REDACTED FORM)**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

The SCO Group, Inc. ("SCO") respectfully submits this Memorandum in Support of its Renewed Motion to Compel Discovery regarding the files of IBM's executive management and SCO's Motion to Compel Discovery regarding its Rule 30(b)(6) depositions of IBM.

## SUMMARY OF ARGUMENT

In disregard of SCO's long-standing document requests, this Court's March 2004 Order, and now this Court's October 2004 Order requiring IBM's executives and Board of Directors to provide sworn affidavits on the issue, IBM has failed to produce documents regarding its "Linux strategy" – which is at the heart of this case – or to explain the glaring absence of such documents in its production. Neither SCO's document requests nor this Court's Orders leave any ambiguity regarding the broad scope of the Linux-related documents that IBM must produce. Nevertheless, IBM has apparently adopted, unilaterally, an unduly narrow interpretation of its obligations. Moreover, the cursory affidavits that IBM has supplied in response to the Court's most recent Order raise more questions about IBM's discovery practices than they answer.

In addition, IBM has improperly refused to produce Rule 30(b)(6) witnesses on several appropriate topics. For example, IBM refuses to provide any witness to testify about the nature and extent of IBM's contributions to Linux – a core issue in this case. IBM's intransigence thus compounds its withholding of documents and proper interrogatory responses to SCO's prior discovery requests that seek similar, critically relevant information.

IBM has unilaterally blocked SCO from obtaining even the most rudimentary information that it needs to develop its proof for trial. In light of IBM's longstanding delay on this critical discovery – and in light of the currently scheduled, impending close of fact discovery (on February 11, 2005) – the Court should order IBM to produce immediately (1) all documents from its

ii

executives and Board of Directors that mention or relate in any way to Linux and (2) witnesses who can speak to the full scope of the topics SCO has noticed.

## BACKGROUND

**SCO's Document Requests.** On June 24, 2003, SCO served on IBM document requests requiring the production of all documents "concerning any contributions to Linux or to open source made by IBM and/or Sequent," and all documents "concerning IBM's contributions to development of the 2.4 and 2.5 Linux Kernel." Exh. A at 10, 11. SCO's December 4, 2003 requests further requested that IBM produce:

> "53. All documents concerning IBM's decision to adopt, embrace or otherwise promote Linux, including but not limited to the following:
>
> a. all such documents in the possession of Sam Palmisano, Irving Wladawsky-Berger, Paul Horne and Nick Bowen;
>
> * * *
>
> c. all presentations made to IBM's top management including its Board of Directors concerning such decision;
>
> d. all documents from all Board of Directors' meetings relating to such decision, including Board notebooks, Board minutes and notes from all persons in attendance at such meetings.
>
> * * *
>
> 56. All business plans for Linux." Exh. B at 4-5.[1]

As SCO documented in its prior memoranda (of July 6 and August 26) in support of its Renewed Motion to Compel, IBM has publicly adopted a strategy to invest billions of dollars in Linux. SCO has shown that:

---

[1] In each set of requests, SCO defined the word "concerning" as follows: "The term 'concerning' shall mean relating to, referring to, reflecting, describing, evidence, referencing, discussing or constituting." Exh. A at 2; Exh. B at 2.

iii

- Mr. Palmisano was the Senior Vice President in charge of IBM's server business, is now IBM's CEO and Chairman of the Board, and is the IBM executive responsible for spearheading IBM's strategy to shift towards Linux as its operating system of choice;

- Mr. Wladawsky-Berger is IBM's "Linux czar," and has sent e-mails to top technology executives regarding the rise of Linux; and

- IBM's Board has overseen a strategy pursuant to which IBM has increased its Linux-based revenues to more than $2 billion in 2003, after doubling that number from 2001 to 2002 and again from 2002 to 2003.

Notwithstanding the breadth of SCO's discovery requests and the critical importance of IBM's Linux efforts to this case and to IBM's business, IBM has produced very little in the way of responsive documents from IBM's above-mentioned executives or Board of Directors.

**The Court's March 2004 Order and IBM's Response.** After SCO first raised the issue with the Court, on March 3, 2004, the Court ordered as follows:

> "IBM is to provide documents and materials generated by, and in possession of employees that have been and that are currently involved in the Linux project. IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" 3/3/04 Order at 4-5.[2]

IBM provided a sworn affidavit detailing its efforts in complying with the order, and a statement that its answers and materials provided are given to the best of its knowledge and are complete, detailed and thorough. Exh. D.

---

[2] The Court took the phrase "ambitious Linux Strategy" from the March 20, 2000 The New York Times article that described the strategy and specifically mentioned Messrs. Palmisano and Wladawsky-Berger. Exh. C. The article described IBM's strategy as one in which IBM "had done something profound: embrace Linux, a symbol of software's counterculture, as the operating system of the future for the Internet." The article went on: "IBM, it was decreed, would embark on a costly program to make all its hardware and software work seamlessly with Linux. So quickly did the company mobilize that even now, hundreds of engineers across the company are already engaged in the Linux campaign, and IBM says its army of Linux engineers will number in the thousands within a few years." The article explained that "IBM's Linux effort is a long-term strategy." The New York Times article also described Mr. Palmisano as "the senior executive who pushed most emphatically for the Linux initiative – and has the most riding on its outcome."

IBM subsequently produced 1,000 pages of documents from Mr. Palmisano's files (none of which was generated by him), no documents at all from Mr. Wladawsky-Berger's files, no documents from any individual Board members, and only a single presentation from the files of IBM's Board of Directors. The deficiencies in IBM's production were obvious:

- no e-mails or other correspondence discussing Linux that was written, sent, or received by Mr. Palmisano;

- no e-mails, letters, notes, diary or calendar entries, memos, or other documents about Linux from the files of Mr. Wladawsky-Berger; and

- no Board minutes, notes, memoranda, e-mails, or other correspondence discussing Linux that were written, sent, or received by any member of IBM's Board.

Although SCO attempted to resolve these shortcomings with IBM, IBM insisted that it had produced all of the responsive documents in its possession.

**The Court's Order on SCO's Renewed Motion to Compel.** In light of such shortcomings in IBM's discovery, SCO filed a Renewed Motion to Compel on July 6, 2004. In its opposition brief, IBM claimed: "IBM has collected and produced the non-privileged, responsive documents that were found in the files of its senior executives and its Board of Directors" and has not "improperly 'filtered' and excluded responsive documents." Exh. E at 10. IBM thus asked SCO and the Court to believe that IBM had put into place a multi-billion dollar worldwide Linux business plan, but that neither its Chief Executive Officer, nor its "Linux czar," nor its Board of Directors retained any significant documentation concerning that plan.

SCO's Renewed Motion to Compel (and SCO's other discovery application) was heard by the Court on October 19, 2004.

**REDACTED
TO COMPLY WITH
COURT'S ORDER**

### REDACTED
### TO COMPLY WITH
### COURT'S ORDER

The Court's subsequent written Order directed IBM to provide affidavits from "the Board of Directors, Mr. Palmisano, and Mr. Wladawsky-Berger regarding production of all non-privileged documents pertaining to IBM's Linux strategy." 10/20/04 Order at 1.[3]

**IBM's Responses to the Court's October 2004 Order.** On November 19, 2004, IBM produced four short affidavits in response to the Court's October Order. In addition to their various other deficiencies, detailed below, none of IBM's declarations even remotely attempts to explain the absence of responsive Linux documents in IBM's production.

1. <u>Declaration of Samuel Palmisano (Exh. G)</u>. Mr. Palmisano states that he gave IBM's attorneys access to his files, and that attorneys searched his files in February 2004. Mr. Palmisano does not suggest that he assisted in any way or that all of his responsive documents have been produced. Nor does he suggest that either following the February search or the October 19 hearing, he or any IBM attorney "looked again" for responsive documents.

2. <u>Declaration of Irving Wladawsky-Berger (Exh. H)</u>. In contrast to Mr. Palmisano, Mr. Wladawsky-Berger indicates that he (and his counsel) did look for additional responsive documents following the October hearing. Exh. H at 3. As a result of that further review, and notwithstanding IBM's repeated assertions to SCO, and assertions and certification to the Court, that all responsive documents had been produced, Mr. Wladawsky-Berger declares that he found "two folders" of

---

[3] The remainder of the discovery issues that the Court heard on October 19 were taken, and remain, under the Court's advisement.

additional documents on his computer that "may have been overlooked." Id. at 3.[4] He further reveals that even though he and his administrative assistant searched for and found documents that they believed might be responsive to SCO's requests in 2003, IBM did not produce any of those documents because the attorneys concluded that none of them were "responsive to any of SCO's document requests." Id. at 2. Mr. Wladawsky-Berger does not represent that all of his responsive documents have been produced.

    3. <u>Declaration of Andrew Bonzani (Exh. I)</u>. In response to the Court's Order for an "affidavit from the Board of Directors," IBM has submitted a single declaration Mr. Bonzani, the Assistant Secretary to the Board, who declares that he searched the Board's files in March 2004 and turned over to IBM's outside counsel the documents he believed to be responsive. Mr. Bonzani does not state how many of the documents he turned over were ultimately withheld from SCO as "unresponsive." He does not represent that all responsive documents (even under his "belief" of what documents are responsive) have been produced from the files of the Board of Directors. Nor does he represent that he has made any effort to obtain documents from the individual members of IBM's Board.

    4. <u>Declaration of Alec S. Berman (Exh. J)</u>. Alec Berman, an IBM in-house attorney, states that he participated in the February 2004 search of Mr. Palmisano's office. He does not suggest that Mr. Palmisano assisted in the review in any way. He does not suggest that he, Mr. Palmisano, or anyone else "looked again" at Mr. Palmisano's files after February 2004 or after the October 19 hearing. Mr. Berman declares that he turned over all potentially responsive documents to IBM's outside counsel, and swears to his "understanding" that more than 1,000 pages from Mr.

---

[4] IBM thereafter produced 239 pages from Mr. Wladawsky-Berger's files. They consist largely of the same PowerPoint presentations and Linux Strategy Updates previously produced from Mr. Palmisano's files. They do not contain any e-mails, letters, or notes.

Palmisano's files were produced, but he does not indicate how many pages or documents IBM withheld from SCO as "unresponsive."

**SCO's Rule 30(b)(6) Notices and IBM's Response.** On November 30 and December 2, 2004, SCO served on IBM Notices of 30(b)(6) Deposition listing, respectively, ten and seven topics for deposition. Exhs. K & L. SCO noticed the depositions for, respectively, December 15 and 16. On December 10, IBM responded and objected. Exh. M. As to the November 30 Notice, IBM refused to produce a witness for topics 1, 2 and 3, and unilaterally narrowed the scope of topics 4-10. Id. at 1-2. As to the December 2 Notice, IBM refused to produce a witness for topics 1, 2, 3, 4, and 7, and unilaterally narrowed the scope of topics 5 and 6. Id. at 3-4. IBM represented that the witnesses it would produce were not available to be deposed on December 15 or 16. Id. at 4. On December 13, SCO agreed to postpone the depositions in light of IBM undertaking to obtain deposition dates in early January 2005 for those witnesses that IBM has agreed to produce. Exh. N.

## ARGUMENT

### I. IBM HAS FAILED TO COMPLY WITH THE COURT'S MARCH 2004 AND OCTOBER 2004 ORDERS

IBM's now repeated representations regarding the documents SCO seeks are less credible than ever. SCO had repeatedly shown that, given the broad scope and central importance of IBM's Linux strategy, it is simply not conceivable that the individuals at the center of IBM's decision to adopt and embrace that strategy have in their custody and control almost no documents responsive to SCO's requests and the Court's March 3 Order.

In addition, having previously, and repeatedly, represented to SCO and the Court that it had looked for and produced all relevant documents in response to the Court's March Order, IBM has now produced two additional folders of documents from Mr. Wladawsky-Berger's files. At the same time, (1) IBM's three other declarants make no representation of REDACTED TO COMPLY WITH COURT'S ORDER (ii) none of IBM's declarants represent that all responsive documents have been produced; and (iii) none of IBM's declarants made any effort even to try to explain the absence of responsive documents regarding such a major and evolving aspect of IBM's business. Moreover, Mr. Wladawsky-Berger's declaration indicates that IBM did not produce any of the documents (in hard copy or electronic form) that he had identified as responsive in August 2003, after IBM's attorneys discussed with him "in detail each of the categories of documents sought by SCO through its document requests;" Mr. Bonzani's declaration reflects that he did not even attempt to obtain documents from the individual members of IBM's Board; and Mr. Palmisano's declaration indicates that he has not done anything to ensure the completeness of his document production.

1

REDACTED TO COMPLY WITH COURT'S ORDER

But none of <u>IBM's</u> declarants testified that they do not use e-mail, and none has provided <u>any</u> explanation of why his files are so bare of e-mails and all other forms of responsive documents. Indeed, as noted above, <u>The New York Times</u> has specifically reported that Mr. Wladawsky-Berger sent e-mails to top technology executives regarding the rise of Linux – but even those e-mails have not been produced.

The only plausible explanation for IBM's discovery shortcomings is that IBM has adopted an unduly restrictive interpretation of the scope of its obligation to produce responsive documents. In its Memorandum in Opposition to SCO's Renewed Motion to Compel, filed five months after this Court's March 2004 Order, IBM stated:

> "There is no basis for the Court to compel IBM to produce every document in the possession of Mr. Palmisano, Mr. Wladawsky-Berger and IBM's Board of Directors (such as those that simply contain the word 'Linux' in them), without regard to the relevance of those documents to the issues in this lawsuit or whether they are privileged. SCO's request is overbroad on its face. SCO has served document requests seeking materials that at least SCO has identified as being relevant (often incorrectly, we believe) to its lawsuit against IBM. IBM searched the files of Mr. Palmisano, Mr. Wladawsky-Berger and the Board of Directors and produced whatever non-privileged, responsive documents exist in those files. IBM should not be made to produce documents that SCO has not even asked for in any of its document requests, and which bear no relevance to the issues in this case." IBM Mem. in Opp. to SCO's Renewed Motion to Compel at 12 (Exh. E).

Any argument that IBM continues to advance concerning the scope of its document production obligations is meritless. It is difficult to imagine any valid basis on which IBM can be withholding Linux-related documents as non-responsive given the breadth of SCO's requests for:

2

- All documents "concerning any contributions to Linux or to open source made by IBM and/or Sequent," including "development of the 2.4 and 2.5 Linux Kernel";

- All documents "concerning IBM's decision to adopt, embrace or otherwise promote Linux"; and

- "All business plans for Linux."

Thus, as the term "concerning" is defined in SCO's requests, IBM was expressly required to produce all documents "relating to, referring to, reflecting, describing, evidence, referencing, discussing or constituting" IBM's Linux activities.

Even more importantly, however, IBM's continued assertions concerning the scope of SCO's requests and supposedly unresolved issues of "relevance" disregards, again, this Court's prior orders. The Court's March 3 Order is unambiguous:

"IBM is to provide documents and materials generated by, and in possession of employees that have been and that are currently involved in the Linux project. IBM is to include materials and documents from executives including inter alia, Sam Palmisano and Irving Wladawsky-Berger. Such materials and documents are to include any reports, materials or documents from IBM's 'ambitious Linux Strategy.'" 3/3/04 Order at 4-5.

Moreover, the Court's October 2004 Order unambiguously regards SCO's document requests and March 2004 Order as encompassing "all non-privileged documents pertaining to IBM's Linux strategy." 10/20/04 Order at 1. Of course, the Court's prior orders preclude IBM even from raising its continued "relevance" objections or from continuing to withhold obviously responsive, and centrally important, Linux-related documents.

IBM's assertions and discovery conduct thus indicate that IBM has taken a constricted view of its discovery obligations – a view in which IBM has, once again, unilaterally determined its discovery obligations without regard for the Court's prior orders. IBM's unduly narrow interpretation of SCO's document requests, and its utter disregard for the Court's March 2004

3

Order, is plainly improper. A party may not properly adhere to a narrow interpretation of a discovery request when that party is aware that the requesting party has intended a broader interpretation, even if the written request is "not as broad or, perhaps, as clear as it might have been." Satcorp Int'l Group v. China Nat'l Import & Export Corp., 917 F. Supp. 271, 274-76 (S.D.N.Y. 1996), vacated in part on other grounds, 101 F.3d 3 (2d Cir. 1996). In Satcorp, the defendant's statement that no responsive documents existed defied "common sense" and "boggle[d] the mind"; the court concluded that counsel "was relying on some narrow, unstated interpretation of the written request to avoid production despite his knowledge that plaintiffs' counsel took a broader view of the request." Id. at 273, 276. The court sanctioned counsel. See id. at 278.

In light of IBM's continued delay, discovery stonewalling, and disregard of prior Court orders, SCO respectfully requests that the Court specifically order IBM to produce all documents in its possession, custody, or control that refer to or mention "Linux." IBM's intransigence and lack of candor suggest the existence of what IBM views as damaging documents. The Court should compel IBM to produce the Linux-related documents under a clear, objective standard that leaves no room for creative legal interpretation. If any of the files at issue contains a non-privileged document that refer to or mention Linux, SCO should be allowed to see it.

## II. IBM IMPROPERLY REFUSES TO PRODUCE RULE 30(b)(6) WITNESSES ON SEVERAL TOPICS AND IMPROPERLY SEEKS TO LIMIT THE SCOPE OF OTHER RULE 30(b)(6) TOPICS

In response to valid Rule 30(b)(6) notices, IBM has improperly refused to produce any witness to testify on numerous subjects of central relevance to this case. With respect to SCO's Rule 30(b)(6) notice dated November 30, 2004, IBM has improperly refused to produce any witness to testify to the following topics:

4

> "1. The extent to and manner in which UNIX Software Products were used, directly or indirectly, in the creation, derivation or modification of any source code that IBM contributed to Linux, including but not limited to the following:
>
>     a. The date and nature of IBM's contributions of source code from AIX or Dynix, whether copied in a literal or non-literal manner, to Linux;
>
>     b. IBM's and Sequent's use of structures, sequences, organization, ideas, methods or concepts contained within any UNIX Software Product in developing source code that IBM contributed to Linux; and
>
>     c. The identity of the programmers who were exposed to any UNIX Software Product.
>
> 2. Identification of and role of IBM employees or contractors involved in the work responsive to Topic 1 above.
>
> 3. Identification of the steps taken by corporate representative witness to be able to respond fully and accurately to Topics 1 and 2 above, including but not limited to documents reviewed, employees consulted, and databases consulted." Exh. K.

IBM objects to each topic "on the grounds that it is vague, ambiguous, overbroad and unduly burdensome." IBM further objects to these topics on the grounds that they seek information "more appropriately sought" through other discovery methods. Exh. M at 1.

IBM's objections to these topics are meritless. Either IBM is capable of identifying the code that it contributed to Linux and the nature and manner of those contributions or it is not. Either way, this evidence is directly relevant because IBM's reliance on UNIX-derived AIX and Dynix in developing Linux is at the very heart of SCO's breach-of-contract claims. IBM's objections to SCO's 30(b)(6) topics are particularly untenable in light of IBM's long-standing refusal to produce adequate responses to SCO interrogatories and document requests that attempt to discover the programming history of IBM's Linux contributions. Indeed, IBM has ignored this Court's prior March 3 Order requiring it to supplement its interrogatory responses on this topic, leaving SCO with a list of more than 7,000 programmer names and no contribution information for any of those

5

programmers. Moreover, IBM continues to withhold the document discovery that would permit SCO to investigate for itself the AIX and Dynix origins of IBM's Linux contributions. IBM's discovery responses have thus reduced to the indefensible claim that IBM is not obligated to provide <u>any</u> information concerning the nature of IBM's contributions to Linux or any practical way for SCO to identify the relevant witnesses on that central issue in the case.

IBM has also improperly refused to produce any witness on the following topics contained in SCO's amended Rule 30(b)(6) notice of December 2:

"1. The negotiation and execution of all license agreements between IBM and AT&T regarding any UNIX Software Product, and any and all amendments or modifications thereto.

3. Consideration and discussion concerning UNIX licensing rights, limitations, and potential liabilities, in connection with IBM's acquisition of Sequent.

4. All communications with Novell, Inc. ('Novell') relating to SCO and/or any of its predecessor entities, including, but not limited to, communications relating to the Asset Purchase Agreement between Novell and the Santa Cruz Operation, Inc., and any amendments thereto.

\* \* \*

7. Identification of all individual(s) (by name, position, particular responsibility, and current location) who were principally responsible for (1) the programming development of AIX and Dynix (including Dynix/ptx); and (2) the programming development of Linux using, in any manner whatsoever, materials from those programs. This request includes, without limitation, identification of all relevant chief technology officers, chief software architects, and chief software engineers." Exh. L.

IBM objections to these topics include IBM's contention that the topic "is vague, ambiguous, overbroad and unduly burdensome," "seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence," "seeks discovery more appropriately sought by other means," and "seeks information duplicative and cumulative of testimony that has been, or will be, provided to SCO." Exh. M at 3-4.

6

IBM's objections to the foregoing topics are improper. With respect to the particular objections that IBM makes on each topic, for example:

- On Topic 1, SCO is entitled to discover through an IBM corporate representative, for example, who was responsible for the negotiation and execution of the license agreements at issue in this case and the respective roles of the individuals involved.

- On Topic 3, SCO is entitled to discover through an IBM corporate representative, for example, any non-privileged consideration that IBM and/or Sequent gave to the UNIX license rights, restrictions, and potential liabilities in connection with IBM's acquisition of Sequent.

- On Topic 4, SCO is entitled to discover through an IBM corporate representative, for example, the full extent of IBM's communications with Novell relating to SCO. This information is particularly important in this case given (1) the central issues in this case concerning the purchase agreement whereby SCO's predecessor acquired Novell's UNIX assets and business; and (2) IBM and Novell's close business relationship concerning the distribution and exploitation of Linux.

- On Topic 7, SCO is entitled to discover through an IBM corporate representative, for example, the individuals who were principally responsible for developing AIX and Dynix (the derivative products from which IBM made numerous contributions to Linux) as well as Linux.

IBM's objection that Topic 7 "seeks information that is duplicative and cumulative of information already provided by IBM in response to SCO's discovery requests" is particularly baseless. Exh. M at 4. As explained above (as well as in SCO's pending discovery applications), SCO has long sought to obtain from IBM information regarding the programming history of AIX, Dynix, and Linux, but IBM has improperly withheld that information for over a year. IBM's improper withholding of such discovery cannot excuse IBM's refusal to provide a corporate representative on this critically relevant topic. IBM's improper objection to SCO's Rule 30(b)(6) notice lays bare IBM's indefensible view of discovery in this action and of the federal rules governing discovery – namely, that SCO is not entitled to <u>any</u> information from which SCO can identify the chief architects of the software products at the heart of this case.

7

## CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER OBLIGATIONS

SCO through its counsel hereby certifies that it has made a good faith effort to resolve the discovery disputes that are the subject of its concurrently filed Motion to Compel Discovery. On December 17 and December 21, SCO's counsel conducted a telephonic conference with IBM's counsel wherein counsel discussed and attempted to resolve, unsuccessfully, the disputes that are now raised in the context of SCO's Motion to Compel. The disputes that are the subject of SCO's Renewed Motion to Compel Discovery have been addressed by the parties on numerous prior occasions and have been the subject of two prior Court orders.

## CONCLUSION

For all of the above reasons, SCO respectfully submits that the Court should order IBM to produce (1) from the files of Samuel Palmisano, Irving Wladawsky-Berger, and IBM's Board of Directors, all non-privileged documents that refer to or mention Linux; and (2) an appropriate witness for the full scope of each of the Rule 30(b)(6) topics that SCO noticed on November 30 and December 2, 2004.

DATED this 23rd day of December, 2004.

Respectfully submitted,

By: _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER, L.L.P.
Robert Silver
Edward Normand
Sean Eskovitz

*Counsel for The SCO Group, Inc.*

8

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Plaintiff's Memorandum in Support of Renewed Motion to Compel Discovery was served by mail on Defendant International Business Machines Corporation on the 23rd day of December, 2004, by U.S. Mail to:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 5th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*/s/ Laura K. Chaves*