

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard -- Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower -- Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **EXHIBIT S-3 TO MEMORANDUM IN OPPOSITION TO DEFEDANT INTERNATIONAL BUSINESS MACHINES' MOTION FOR SUMMARY JUDGMENT ON ITS TENTH COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**<br>[Docket No. 206]<br><br>**(REFILED IN REDACTED FORM)**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> -against- <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S RESPONSES AND OBJECTIONS TO SCO'S SECOND SET OF INTERROGATORIES AND SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS** <br><br> Civil No. 2:03cv0294 <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant International Business Machines Corporation ("IBM"), by its undersigned attorneys, hereby responds and objects to Plaintiff's Second Set of Interrogatories (the "Interrogatories") and Second Request for the Production of Documents (the "Requests"), as follows:

## GENERAL OBJECTIONS

IBM hereby incorporates by reference all of its General Objections set out in IBM's Responses and Objections to SCO's First Request for the Production of Documents and First Set of Interrogatories. All of the General Objections are incorporated into each of the individual responses set forth below and have the same force and effect as if fully set forth therein. IBM's answers to the Interrogatories are made to the best of its present knowledge, information, and belief. IBM reserves the right to further amend and/or supplement its answers, which are subject to such additional or different information as discovery or further investigation may disclose.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### Interrogatory No. 6:

**Please identify, with specificity (by product, file in light of code, where appropriate) all of the alleged contributions to Linux made by IBM, included but not limited to those claimed in paragraphs 108, 115 and 120 of IBM's Amended Counterclaims.**

### Response to Interrogatory No. 6:

In addition to the foregoing general objections, IBM objects specifically to this Interrogatory on the grounds that it is vague, overbroad and unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible

CONFIDENTIAL
295075.1

2

evidence. IBM also objects to this Interrogatory on the grounds that the Court ruled, in an Order dated March 3, 2004, that IBM need not provide to SCO contributions to Linux insofar as they are a matter of public record. Subject to, as limited by and without waiving the foregoing objections, IBM responds as follows.

While IBM, like many other individuals and entities (including SCO), has made contributions to Linux, all of them are, by nature, a matter of public record. Linux was, and is, being developed publicly via the Internet. Thus, IBM has not made any contributions to Linux that are not public, and SCO is able to identify on its own IBM's contributions by searching the public record.

To the extent SCO seeks the disclosure of material that IBM may have attempted unsuccessfully to contribute to Linux, that material is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. SCO alleges, after all, that IBM injured SCO by improperly "dumping" source code into Linux, not that IBM tried unsuccessfully to contribute to the development of Linux. In any event, to the extent IBM has identified material that may have been unsuccessfully contributed to Linux and is not publicly available, IBM has produced and/or will produce it. Such material can be found at bates numbers 1710089569-1710089572; 1710089869-1710089875; 1710127757-1710128552; 1710132518-1710134552; 1710137835-1710138245; 181595356-181595400; 181595402-181595428; 181595497-181595499; 181595555-181595561; 181595664-181595734; 181595736-181595767; 181595769-181595770; 181595837-181595853; 181595867-518159868; 181595980-181596088; 181596760-181596769; 181596825-181596861; 181596873-181596980; 181596985-181596996; 181596999-181597185; 181597315-181597317; 181597575-181597587;

CONFIDENTIAL
295075.1

3

181597686-181597744; 181597747-181597748; 181597750-181597820; 181607890-181607892; 181609501; 181609861; 181610175-181610176; 181610232-181610243; 181610250-181610262; 181610413-181610419; 181610422-181610425; 181610428-181610484; 181610489-181610502; 181610600-181610608; and 181617209-181617221.

Interrogatory No. 7:

Please identify all agreements that IBM alleges or contends that SCO has breached, including specific provisions or portions of those agreements that IBM alleges or contends that SCO breached, and describe, in detail, each instance in which IBM alleges or contends that SCO breached those agreements, including but not limited to:

(a) the date of the alleged breach;

(b) all persons involved in the alleged breach;

(c) the specific manner in which SCO is alleged to have breached the agreement;

(d) the type of damage and dollar amount, if any, IBM alleges or contends it suffered as a result of the alleged breaches by SCO.

Response to Interrogatory No. 7:

Based upon IBM's investigation to date, which is ongoing, SCO has breached at least the following agreements (collectively, the "Agreements"), assuming, as SCO alleges, that SCO assumed the obligations of its alleged predecessors-in-interest: the Software Agreement between IBM and AT&T Technologies ("AT&T") dated February 1, 1985 (Agreement Number SOFT-00015) ("IBM Software Agreement"); the Sublicensing Agreement between IBM and AT&T Technologies dated February 1, 1985 (Agreement Number SUB-00015A) ("IBM Sublicensing Agreement"); the letter agreement between IBM and AT&T dated February 1, 1985 ("Side Letter"); the Software Agreement between Sequent and AT&T dated April 18, 1985 (Agreement Number SOFT-000321) ("Sequent Software Agreement"); the Sublicensing

CONFIDENTIAL
295075.1

4

Agreement between Sequent and AT&T dated January 28, 1986 (Agreement Number SUB-000321A) ("Sequent Sublicensing Agreement"); and Amendment No. X between IBM, Novell, Inc., and The Santa Cruz Operation, Inc. (now known as Tarantella, Inc.) dated October 17, 1996 ("Amendment No. X").

Again, assuming that SCO properly assumed the obligations of its alleged predecessors-in-interest, SCO's obligations under the Agreements include (but are not limited to) the obligation to: (1) recognize IBM's right to use and distribute certain software products as defined in the Agreements; (2) recognize and respect IBM's right to prepare derivative works, and to use and exercise the full rights of ownership with respect to its alleged derivative works and its own original software code; (3) provide IBM with adequate notice of any alleged breach by IBM of the Agreements and endeavor in good faith to resolve any alleged breach short of any purported termination; (4) recognize that IBM has an irrevocable, fully paid-up, perpetual right to exercise all of its rights under the Agreements beginning January 1, 1996 at no additional royalty fee; (5) act in good faith with respect to and deal fairly with IBM. (See IBM Software Agreement §§ 2.01, 6.03; Sequent Software Agreement §§ 2.01, 6.03; IBM Sublicensing Agreement §§ 2.01, 3.03; Sequent Sublicensing Agreement §§ 2.01, 3.03; Side Letter §§ A.2, A.5; Amendment No. X § 1.)

SCO has breached the Agreements, including at least the specific provisions mentioned above, by engaging in the pattern of conduct described in IBM's counterclaims. Specifically, SCO has breached its contractual obligations to IBM (assuming SCO has the obligations of its predecessors-in-interest) by, among other things: (1) bringing and maintaining baseless legal claims against IBM beginning in March 2003; (2) refusing to give IBM proper

CONFIDENTIAL
295075.1

notice of IBM's alleged breaches of the Agreements and failing to act in good faith to resolve any alleged breach short of any purported termination; (3) failing to recognize and respect IBM's right to prepare derivative works, and to use and exercise the full rights of ownership with respect to its alleged derivative works and its own original software code; (4) purporting to terminate IBM's irrevocable and perpetual rights to use and distribute software to which IBM has rights under the Agreements and otherwise; and (5) refusing to act in good faith or deal fairly with IBM, such as by engaging in the misconduct described immediately above and undertaking and maintaining a course of conduct designed to injure IBM by misrepresenting and seeking to deny IBM its rights under the Agreements (e.g., claiming that SCO had properly terminated IBM's irrevocable and perpetual rights to use certain UNIX code provided to IBM under the Agreements, and further claiming that IBM's AIX and Dynix operating systems were unauthorized derivatives of UNIX System V.)

The breaches of which IBM is aware based upon its investigation to date occurred at least as early as March 6, 2003. They have continued every day since then. And SCO will be in breach of the Agreements so long as it persists in the course of misconduct described here and in IBM's counterclaims. The identity of the persons involved in the breaches is best known to SCO, but include the officers, directors and agents of SCO responsible for the misconduct described here and in IBM's counterclaims. The persons involved in the breaches include Darl McBride, Christopher Sontag, and Blake Stowell.

IBM has suffered and is suffering at least monetary damages as a result of SCO's breaches of the Agreements. The precise amount of these damages is not susceptible to ready determination at this time, as IBM has not yet discovered the full extent of SCO's misconduct

CONFIDENTIAL
295075.1

and SCO's misconduct is ongoing. When the full scope of SCO's misconduct is known, IBM will undertake to characterize and quantify the full range of damages caused by SCO. Assessment of the damages caused by SCO's breaches is a matter of expert determination, and IBM will disclose the conclusions of its experts on the schedule to which the parties have agreed and which was adopted by the Court in its scheduling order.

Interrogatory No. 8:

**Please describe, in detail, each instance in which IBM alleges that SCO engaged in unfair competition as claimed in paragraphs 90 through 94 of IBM's Amended Counterclaim, including but not limited to,**

**(a) the dates in which SCO allegedly engaged in any unfair competition;**

**(b) all persons involved in the alleged unfair competition;**

**(c) the specific manner in which SCO is alleged to have engaged in unfair competition, including but not limited to, as alleged in paragraph 93 of IBM's Amended Counterclaim;**

**(d) the type and dollar amount, if any, of any damages allegedly caused by SCO's actions.**

Response to Interrogatory No. 8:

SCO has engaged in unfair competition by intentionally, knowingly, wrongfully and in bad faith engaging in public conduct aimed at depriving IBM of the value of IBM's AIX, Dynix and Linux-related products and services and misappropriating the same for SCO's UNIX licensing business and SCO's competing UNIX operating systems. SCO's misconduct is likely to result in confusion in the marketplace and has in fact resulted in confusion concerning AIX, Dynix and Linux.

The specific manner in which SCO has engaged in unfair competition includes (but is not limited to): (1) filing a baseless lawsuit against IBM on March 6, 2003; (2) sending a

letter in or around May 2003 to approximately 1,500 of the world's largest corporations falsely claiming that Linux contained SCO's intellectual property, with the aim of slowing customer adoption of Linux and the sale of IBM's products and services related to Linux; and (3) sending a letter in or around December 2003 to selected Fortune 1000 companies again falsely claiming that Linux contained unauthorized copying of SCO's intellectual property; and (4) contacting or visiting IBM's current and prospective customers to spread false information about IBM and its products, with the goal of inducing these current and prospective customers to (a) take a license from SCO where none was required; (b) not deal with IBM or not purchase IBM's products or services; and (c) do less business with IBM than they otherwise would have, or act more slowly to do such business with IBM.

SCO has further engaged in unfair competition by engaging in a campaign of false and misleading public statements about IBM's rights with respect to the intellectual property in AIX, Dynix, and Linux, with the goals of spreading unwarranted fear, uncertainty, and doubt in IBM's prospective customers about IBM's products and services, and of steering IBM's prospective customers instead toward SCO's own UNIX products and SCO's UNIX and Linux licensing scheme.

Some examples of SCO's false and misleading public statements include:

- SCO's false statements that IBM improperly used UNIX source code in violation of its licenses. (See 6/16/03 SCO Press Release; see also "Meet Linux's New Public Enemy No. 1", BusinessWeek Online, May 23, 2003 (quoting Darl McBride ("In the last 18 months, we found that IBM had donated some very high-end enterprise-computing technologies into open-source. Some of it looked like it was our intellectual property and subject to our

CONFIDENTIAL
295075.1

8

licensing agreements with IBM. Their actions were in direct violation of out agreements with them that they would not share this information, let alone donate it into open-source.")); Robert McMillan, "SCO Shows Linux Code to Analysts", Computerworld, June 11, 2003 (quoting Chris Sontag ("IBM's contributions to Linux all constitute breaches of [IBM's] contract.")).)

- SCO's false statements that IBM misappropriated UNIX trade secrets. (See 3/7/03 SCO Press Release; Andrew Orlowski, "SCO sues IBM for $1 Billion for 'Devaluing Unix'", The Register, March 7, 2003 (quoting Darl McBride ("IBM has taken our valuable trade secrets and given them away to Linux.")).)

- SCO's false statements that IBM does not "own the AIX code". (Peter Galli, "SCO Group Slaps IBM With $1B Suit", eWeek.com, March 6, 2003 (quoting Darl McBride); see also Paula Rooney, "CRN Interview: SCO CEO Defends $1 Billion Lawsuit Against IBM", CRN, April 24, 2003 (quoting Darl McBride ("We're the source of AIX . . . It all comes from us.")).)

- SCO's false statements that SCO properly terminated IBM's right to use and distribute AIX and that IBM's "customers no longer have the right to use AIX software". (6/16/2003 SCO Press Release; see also John Blau, "Q&A: SCO's Chris Sontag On How Unix Plus Linux Equals Trouble", Computerworld, May 13, 2003, (quoting Chris Sontag ("We have the ability to withdraw or pull the AIX license on June 13, which should cause IBM to expedite this issue as well.")); Stephen Shankland, "SCO Claims IBM Unix Contract Void", CNET News.com, June 16, 2003, http://netscape.com.com/2100-1104-1017719.html (quoting Chris Sontag ("We have terminated IBM's right to use AIX in their business, development, distribution and sales.")).)

CONFIDENTIAL
295075.1

9

- SCO's false statements that SCO properly terminated IBM's right to use and license Dynix. (See 8/13/03 SCO Press Release; see also James Maguire, "SCO Braces for Long Legal Battle", NewsFactor Network, August 15, 2003 (quoting Blake Stowell ("We gave them 60 days to secure the contributions from Dynix/ptx, which was a breach of contract, and they chose not to do anything. So by the terms of our contract we terminated their license.")).)

- SCO's false statements that "Linux is an unauthorized derivative of UNIX" and infringes SCO's intellectual property rights. (5/14/03 SCO Press Release.)

- SCO's false statements that licenses from SCO are required for the use of Linux. (See 8/5/03 SCO Press Release (announcing availability of "SCO Intellectual Property License for Linux"); 8/11/03 SCO Press Release (falsely claiming that a Fortune 500 company signed an Intellectual Property License for Linux because it "recognizes the importance of paying for SCO's intellectual property that is found in Linux"); Mike D'Angelo, "Can Hewlett Packard Protect Its Linux Customers from SCO Lawsuits?", MozillaQuest (quoting Blake Stowell ("SCO's position is that anyone running Linux for commercial business purposes, based on the 2.4 kernel or later, should contact SCO to obtain a SCO IP License for Linux. Purchasing Linux from a UNIX licensee like HP, IBM, or any other company doesn't absolve them from having to purchase the SCO IP License for Linux.")).)

SCO's unfair competition began at least as early as the filing of its lawsuit against IBM on March 6, 2003, and has continued every day since that date. The persons involved in SCO's unfair competition are best known to SCO, but include the officers, directors and agents of SCO responsible for the misconduct described here and in IBM's counterclaims. The persons

CONFIDENTIAL
295075.1

involved in the unfair competition include Darl McBride, Christopher Sontag, Blake Stowell, and Gregory Pettit.

IBM has suffered and is suffering at least monetary damages as a result of SCO's unfair competition. The precise amount of these damages is not susceptible to ready determination at this time, as IBM has not yet discovered the full extent of SCO's misconduct and SCO's misconduct is ongoing. When the full scope of SCO's misconduct is known, IBM will undertake to characterize and quantify the full range of damages caused by SCO. Assessment of the damages caused by SCO's unfair competition is a matter of expert determination, and IBM will disclose the conclusions of its experts on the schedule to which the parties have agreed and which was adopted by the Court in its scheduling order.

Interrogatory No. 9:

**Please identify each "prospective business relationship" IBM claims to have with "numerous companies and individuals to whom IBM has sold and/or licensed these products and services and/or to whom IBM seeks to sell and/or license these products and services" in which IBM alleges or contends that SCO interfered with, including but not limited to,**

**(a) the date of the alleged interference;**

**(b) all persons involved in the alleged interference;**

**(c) the specific manner in which SCO is alleged to have interfered with such relationship;**

**(d) the specific actions, if any, that SCO induced or encouraged IBM's prospective business relationships to take;**

**(e) the specific action, if any, that IBM's prospective business relationships took as a result of the actions allegedly induced or encouraged by SCO;**

**(f) the type and dollar amount, if any, of any damages from SCO's alleged actions.**

CONFIDENTIAL
295075.1

11

Response to Interrogatory No. 9:

IBM, a global computer products and services company, has numerous and varied prospective business relationships with companies and individuals for the development, licensing, and sales of IBM's AIX and Linux-related products and services, including prospective business relationships with each of the hundreds of corporations to which SCO sent letters or otherwise approached and spread unwarranted and false fear, uncertainty, and doubt regarding IBM's AIX, Dynix, and Linux-related products and services.

The specific actions taken by SCO to interfere with IBM's prospective business relations include (but are not limited to): (1) SCO's March 6, 2003 filing of its meritless lawsuit against IBM claiming that IBM had breached the Agreements; (2) sending a letter in or around May 2003 to approximately 1,500 of the world's largest corporations falsely claiming that Linux contained SCO's intellectual property, with the aim of slowing customer adoption of Linux and the sale of IBM's products and services related to Linux; (3) sending a letter in or around December 2003 to selected Fortune 1000 companies again falsely claiming that Linux contained unauthorized copying of SCO's intellectual property; and (4) contacting or visiting IBM's current and prospective customers to spread false information about IBM and its products, with the goal of inducing these current and prospective customers to (a) take a license from SCO where none was required; (b) not deal with IBM or not purchase IBM's products or services; and (c) do less business with IBM than they otherwise would have, or act more slowly to do such business with IBM.

SCO has also interfered with IBM's prospective business relationships by making numerous false and misleading public statements about IBM's rights with respect to the

intellectual property in AIX, Dynix, and Linux, with the goals of spreading unwarranted fear, uncertainty, and doubt in IBM's prospective customers about IBM's products and services, and of steering IBM's prospective customers instead toward SCO's own UNIX products and SCO's UNIX and Linux licensing scheme. Examples of SCO's false and misleading public statements are described in IBM's above response to Interrogatory No. 8.

## REDACTED

## AT IBM'S REQUEST

SCO's interference began at least as early as the filing of its lawsuit against IBM on March 6, 2003, and has continued every day since that date. The persons involved in SCO's interference are best known to SCO, but include the officers, directors and agents of SCO responsible for the misconduct described here and in IBM's counterclaims. The persons involved in the interference include Darl McBride, Christopher Sontag, Blake Stowell, and Gregory Pettit.

IBM has suffered and is suffering at least monetary damages as a result of SCO's interference. The precise amount of these damages is not susceptible to ready determination at

CONFIDENTIAL
295075.1

13

this time, as IBM has not yet discovered the full extent of SCO's misconduct and SCO's misconduct is ongoing. When the full scope of SCO's misconduct is known, IBM will undertake to characterize and quantify the full range of damages caused by SCO. Assessment of the damages caused by SCO's interference is a matter of expert determination, and IBM will disclose the conclusions of its experts on the schedule to which the parties have agreed and which was adopted by the Court in its scheduling order.

## SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS

Request No. 53:

**All documents concerning IBM's decision to adopt, embrace or otherwise promote Linux, including but not limited to the following:**

    **a.    all such documents in the possession of Sam Palmisano, Irving Wladawsky-Berger, Paul Horne and Nick Bowen;**
    **b.    the report prepared by Nick Bowen, including all drafts and e-mails pertaining thereto, submitted to IBM management on or about December 20, 1999;**
    **c.    all presentations made to IBM's top management including its Board of Directors concerning such decision;**
    **d.    all documents from all Board of Directors' meetings relating to such decision, including Board notebooks, Board minutes and notes from all persons in attendant at such meetings.**

Response to Request No. 53:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM has already produced or will produce non-privileged documents responsive to this Request.

Request No. 54:

**All documents concerning Hewlett-Packard and/or Compaq in Project Monterey, including but not limited to, all Memoranda of Understanding in all press releases.**

Response to Request No. 54:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is overbroad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM has already produced or will produce non-privileged documents responsive to this Request.

Request No. 55:

**All documents, including drafts, submitted to the Department of Justice concerning Project Monterey.**

Response to Request No. 55:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM has already produced or will produce non-privileged documents responsive to this Request.

Request No. 56:

**All business plans for Linux.**

Response to Request No. 56:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks



CONFIDENTIAL
295075.1

information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to this Request on the grounds that it does not identify with reasonable particularity the documents plaintiff seeks. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM has already produced or will produce non-privileged documents responsive to this Request.

Request No. 57:

**All source code for AIX and Dynix since 1985 including all instructions, information used and all documentation relating to the use of AIX and Dynix, including but not limited to, all development notes.**

Response to Request No. 57:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request is inconsistent with the Court's March 3, 2004 Order. IBM has already produced millions of lines of source code for AIX and Dynix, which is more than sufficient for this litigation.

Request No. 58:

**All notifications of third parties IBM has obtained since 1985 for providing access to the source code for AIX and/or Dynix.**

Response to Request No. 58:

In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is vague, overbroad, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. IBM further objects to this request insofar as it is duplicative of SCO's Document Request No. 10, which asks for

CONFIDENTIAL
295075.1

16

"documents concerning Prerequisite Source Licenses", and for which IBM has already produced responsive documents.

Dated: April 19, 2004

    As to Objections:

                                   SNELL & WILMER LLP

                                   */s/ Alan L. Sullivan*

                                   Alan L. Sullivan
                                   Todd M. Shaughnessy

                                   CRAVATH, SWAINE & MOORE LLP
                                   Evan R. Chesler
                                   David R. Marriott

                                   *Counsel for Defendant/Counterclaim-Plaintiff*
                                   *International Business Machines Corporation*

    As to Responses:

                                   _____

                                   Alec S. Berman
                                   Associate General Counsel
                                   International Business Machines Corporation

Of counsel:

MORGAN & FINNEGAN LLP
Christopher A. Hughes
Richard Straussman
345 Park Avenue
New York, NY 10154
(212) 758-4800

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

CONFIDENTIAL
295075.1

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 5th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*/s/ Laura K. Chaves*