Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **REPLY MEMORANDUM IN SUPPORT OF SCO'S MOTION TO COMPEL IBM TO PRODUCE SAMUEL J. PALMISANO FOR DEPOSITION**<br>[Docket No. 419]<br><br>(REFILED IN REDACTED FORM)<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

The SCO Group, Inc. ("SCO") respectfully submits this Reply Memorandum in further support of its Motion to Compel IBM to Produce Samuel J. Palmisano for Deposition.

### PRELIMINARY STATEMENT

SCO demonstrated in its opening memorandum that when he was an IBM vice-president in charge of the computer-server group (and before he became IBM's CEO), Mr. Palmisano conceived, spearheaded, and oversaw the implementation of IBM's multi-billion dollar strategy aimed at upgrading Linux to an industrial-strength computer operating system that would replace UNIX. SCO further showed that a crucial part of that strategy, which Mr. Palmisano personally announced, was IBM's release of its technologies, including the source code at issue in this case, to the Linux and open-source communities. On those bases alone – the facts of which IBM does not dispute – SCO is entitled to depose Mr. Palmisano.

In addition, IBM makes no serious effort to contend that in deposing Mr. Palmisano for one day in the very town in which he works regarding matters he directed as an IBM vice president, SCO would cause Mr. Palmisano or IBM any undue burden. Neither Mr. Palmisano nor IBM, for example, submits any affidavit even purporting to describe or quantify how such a deposition would unduly interfere with Mr. Palmisano's schedule or IBM's operations.

Instead, in its continuing effort to shield relevant discovery from SCO, IBM claims that SCO has the burden of proving that Mr. Palmisano has "unique personal knowledge" of the relevant issues. That argument is wrong in both of its premises: IBM has a "heavy" burden of proof, and its burden is to show that "extraordinary circumstances" justify precluding SCO from deposing Mr. Palmisano at all. Under no circumstances can IBM meet that burden.

Moreover, IBM's argument must fail even under its own misguided argument because Mr. Palmisano clearly <u>does</u> have unique personal knowledge of important issues relevant to this case.

IBM's opposition thus reduces to the unreasonable and unfounded argument that Mr. Palmisano's promotion to Chief Executive Offer and Chairman of the Board should shield him from answering any questions at all in this case – even questions regarding the directly relevant activities that he oversaw <u>before</u> that promotion. The Court should order IBM to make Mr. Palmisano available for deposition.

## ARGUMENT

In its opposition, IBM (1) first seeks to shift the burden of proof to SCO; (2) proposes that SCO must satisfy a non-existent legal standard – which, in any event, SCO plainly satisfies; and (3) in effect acknowledges the relevance of the testimony Mr. Palmisano could give but contends, without substantiation, that SCO could obtain the same information from other sources. SCO shows below why each of those arguments fails.

### I. THE BURDEN IS ON IBM TO JUSTIFY ITS REFUSAL TO MAKE MR. PALMISANO AVAILABLE FOR DEPOSITION

"Once a party has requested discovery, <u>the burden is on the party objecting</u> to show that responding to the discovery is unduly burdensome." Snowden v. Connaught Labs., Inc., 137 F.R.D. 325, 332 (D. Kan. 1991) (emphasis added). "The party seeking to bar the deposition bears the burden of demonstrating that the proposed deposition would not lead to relevant information." General Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 82 (S.D.N.Y. 2002); <u>see also</u> In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003) (party opposing deposition must prove just cause, and "the rules generally do not place any initial burden on parties to justify their deposition and discovery requests"). Specifically, under Federal

2

Rule of Civil Procedure 30(a), SCO is entitled to depose "any person, including a party," unless IBM can carry its burden of showing "good cause" why the court should not allow it. Fed. R. Civ. P. 26(c).

IBM's burden is a heavy one. "Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition." Simmons Foods, Inc. v. Willis, 191 F.R.D. 625, 630 (D. Kan. 2000); see, e.g., CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) (permitting deposition of corporate president who failed to carry his "heavy burden to demonstrate good cause for a protective order").[1] Thus, to justify its refusal to make Mr. Palmisano available, IBM was obligated to present "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Cotracom Commodity Trading Co. v. Seaboard Corp., Civ. A. 97-2391-GTV, 2000 WL 796142, at *2 (D. Kan. June 14, 2000) (Exh. A).

In failing to submit any affidavits (either from Mr. Palmisano or anyone else at the company), IBM has plainly failed to meet its burden. See, e.g., General Star, 210 F.R.D. at 83 (noting that the party opposing the deposition had not "submitted affidavits at all," let alone affidavits substantiating any argument that the deponent lacked relevant knowledge or possessed only redundant information).

---

[1] Numerous other cases agree that a party seeking to quash a deposition must carry a "heavy burden" of proving extraordinary circumstances. See, e.g., Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001); In re Tutu Water Wells Contamination CERCLA Litig., 189 F.R.D. 153, 155 (D.Vir.Is.1999); Speadmark, Inc. v. Federated Dep't Stores, 176 F.R.D. 116, 118 (S.D.N.Y. 1997); U.S. v. Mariani, 178 F.R.D. 447, 449 (M.D.Pa. 1998); Bucher v. Richardson Hosp. Authority 160 F.R.D. 88, 92 (N.D.Tex. 1994); Frideres v. Schiltz, 150 F.R.D. 153, 156 (S.D.Iowa 1993); Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C.1988); Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C.1987).

3

## II.  MR. PALMISANO NEED NOT – BUT IN FACT DOES – POSSESS "UNIQUE PERSONAL KNOWLEDGE" OF ISSUES RELEVANT TO THIS CASE

The precedent does not support IBM's argument that SCO must establish that Mr. Palmisano possesses "unique personal knowledge" of relevant issues. In the only Tenth Circuit case that appears to address the issue of executive depositions, Thomas v. IBM, 48 F.3d 478, 483 (10th Cir. 1995), the court cited with approval Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979), which observed that it "is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." Moreover, in Leighr v. Beverly Enterprises-Kansas Inc., 164 F.R.D. 550 (D. Kan. 1996), the court held that "motions to thwart a deposition are ordinarily denied" and will be granted only if it is "clear that the information sought can have no possible bearing on the subject matter of the action." Id. at 552. The courts permit the depositions even of corporate executives who – unlike Mr. Palmisano – filed affidavits in which they disavowed any knowledge of pertinent facts. See, e.g., Pepsi-Cola Bottling Co. of Pittsburgh v. Pepsico, Civ. A. Case No. 01-2009-KHV, 2002 WL 922082, at *1-3 (D. Kan. May 2, 2002) (Exh. B); Simpson v. Home Depot, Inc., Civ. A. No. 00-2285-JAR, 2002 WL 485661, at *1-2 (D. Kan. Mar. 7, 2002) (Exh. C); Rolscreen Co. v. Pella Prods. of St. Louis, 145 F.R.D. 92, 97-98 (S.D. Iowa 1992).

The cases on which IBM relies are unavailing. In Stone v. Morton Int'l, Inc., 170 F.R.D. 498, 504 (D. Utah 1997), the court noted that the proposed deponent – in contrast to Mr. Palmisano – had only a "vague and slim" connection to the case, but never suggested that the deponent's knowledge would have to be "unique" to warrant a deposition. In fact, the court's order was without prejudice to a renewed deposition notice after completion of other discovery, even though the executive resided in Germany. In Evans v. Allstate Ins. Co., 216 F.R.D. 515,

4

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

stated that both he and Mr. Wladawsky-Berger had been involved in the discussion. (Exh. 2 at 273-79).

Second, contrary to IBM's argument, IBM's motives and intentions are highly relevant to this case. IBM first simply ignores SCO's tort claims. See SCO's Second Amended Complaint, Counts 5-9. In seeking to prove that IBM engaged in unfair competition and tortious interference with contractual relationship, for example, SCO certainly will present evidence of IBM's motive and intent to harm SCO. The same evidence is also directly relevant to SCO's claims for punitive damages. IBM's motives are an entirely proper subject for discovery, and Mr. Palmisano, who personally made the decisions at issue, has the unique knowledge to testify on this subject.

As to SCO's contract claims, although a plaintiff need not prove motive to establish a breach of contract, proof of IBM's motive and intent to breach the license agreements at issue is relevant evidence that IBM did in fact breach those agreements. See, e.g., DeSmeth v. Samsung Am., Inc., No. 92 Civ. 3710 (LBS)RLE, 1998 WL 74297, at *8 (S.D.N.Y. Feb. 20, 1998) (Exh. F) (evidence that defendant was producing knockoffs admissible to show its motive to wrongfully reject garments delivered under contract with plaintiff); Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc., 795 F. Supp. 151, 157 (W.D. Pa. 1992) (evidence providing explanation and motive for alleged breach of contract sufficed to defeat summary judgment motion).

Third, Mr. Palmisano has unique and personal knowledge about his own documents. SCO reasonably believes that IBM's senior executives have addressed the company's Linux strategy via e-mail, and accordingly has requested those e-mails and related documentation. As

SCO has shown in its pending Renewed Motion to Compel regarding those documents, IBM's executives have produced almost no responsive documents. Only Mr. Palmisano could testify to how it is possible that he does not have a single e-mail, note, letter, or other personal document relating to IBM's multi-billion dollar Linux strategy. SCO has every right to test the declaration from Mr. Palmisano that Judge Wells ordered IBM to produce regarding that issue.

### III. SCO COULD NOT OBTAIN FROM OTHER SOURCES THE INFORMATION THAT MR. PALMISANO POSSESSES AND WOULD PROVIDE AT DEPOSITION

IBM's argument that Mr. Palmisano's deposition testimony would merely echo information available from other sources fails for three principal reasons.

First, as SCO has now repeatedly demonstrated, Mr. Palmisano, as an IBM vice president, made the key decisions concerning the implementation of IBM's Linux strategy. The documents leave no doubt that Mr. Palmisano played a role in IBM's Linux strategy that no one else at IBM played. IBM does not, because it cannot, specify which alleged IBM employees or which alleged documents could substitute for Mr. Palmisano's testimony. Those omissions are particularly noteworthy in light of the obvious shortcomings, described above, in IBM's production of Linux documents from Mr. Palmisano's files.

Second, the independently relevant testimony that Mr. Palmisano has to give as the creator and "spearhead" of IBM's Linux strategy is unavailable from any other source at IBM. SCO's claims put directly at issue IBM's corporate policies and strategies, regarding such issues as the steps IBM has taken to comply with the license agreements at issue (as well as its other contracts) and the rationale for IBM's continuing contributions to Linux. Where such corporate policy is at issue, the deposition of the responsible executive is appropriate. See SCO's Opening

8

Brief at 8-9; see also General Star, 210 F.R.D. at 84 ("As a matter of logic, a top executive who issues a corporate policy will likely have knowledge of the reasons for the issuance of the policy that a subordinate will not"); Travelers Rental Co. v. Ford Motor Co., 116 F.R.D. 140, 146 (D. Mass. 1987) (holding that "those with greater authority may have the last word on why Ford formulated and/or administered the plan"). IBM says that it wants to depose SCO's CEO because he has made public statements about this case, but IBM has never represented that its deposition will be limited to questions about such public statements, and it seems clear that IBM plans to ask SCO's CEO the same type of policy and corporate intent questions that SCO seeks to pursue with Mr. Palmisano.

Third, the Court has already recognized that Mr. Palmisano's participation in IBM's Linux strategy is of unique importance. In purporting to address this point, IBM's opposition brief misses it entirely. It is of course true that the Court to date has not ordered IBM to produce Mr. Palmisano for deposition; that is why SCO brought this motion. The Court, however, has ordered IBM not only to produce the documents from Mr. Palmisano's files relating to IBM's Linux strategy, but also to produce an affidavit from Mr. Palmisano explaining the production of those documents. For the same reason that Mr. Palmisano's files are relevant – and, in fact, are distinctly relevant from those of other IBM employees – SCO should be entitled to depose Mr. Palmisano.[4]

---

[4] IBM correctly states (Opp. at note 8) that SCO inadvertently filed its opening brief unsealed. The brief was sealed as soon as this was discovered by SCO's own counsel, and steps have been taken to ensure this will not happen again. Also, SCO's counsel immediately notified IBM's counsel of this issue and asked if the brief contained any sensitive material and if there was any reason why it could not be unsealed. IBM never responded and never even mentioned the issue until its opposition brief was filed.

9

## CONCLUSION

For all of the reasons set forth in support of SCO's motion, the Court should compel IBM to produce Samuel Palmisano for deposition.

DATED this 11th day of March, 2005.

>Respectfully submitted,
>
>HATCH, JAMES & DODGE, P.C.
>Brent O. Hatch
>Mark F. James
>
>BOIES, SCHILLER & FLEXNER LLP
>Stuart Singer
>Edward Normand
>Sean Eskovitz
>
>By _/s/ Mark F. James_
>
>*Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, hereby certifies that a true and correct copy of its **REPLY MEMORANDUM IN SUPPORT OF SCO's MOTION TO COMPEL IBM TO PRODUCE SAMUEL J. PALMISANO FOR DEPOSITION** was served on Defendant International Business Machines Corporation by first class mail on the 11th day of March, 2005, as follows:

Alan L. Sullivan, Esq.
Todd M. Shaughnessy, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, Utah 84101-1004


Evan R. Chesler, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019


Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

*/s/ Mark F. James*

## **CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 5th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*/s/ Laura K. Chaves*