

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **PLAINTIFF/COUNTERCLAIM DEFENDANT'S SCO'S SUPPLEMENTAL MEMORANDUM REGARDING DISCOVERY**<br>[Docket No. 287]<br><br>**(REFILED IN REDACTED FORM)**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## PRELIMINARY STATEMENT

SCO submits this supplemental memorandum in further support of its motion to compel International Business Machines ("IBM") to produce data from its Configuration Management Version Control System ("CMVC") pertaining to IBM's AIX software.[1]

This supplemental memorandum brings to the Court's attention yet another <u>independent</u> ground for production of AIX data from CMVC that relates to issues in the case on which IBM itself expressly seeks relief through its Ninth Counterclaim, which seeks a declaration that nothing in AIX, from its inception onwards, violates any SCO copyright. This IBM request for relief is expressly framed as independent of any Linux issue (the separate subject of IBM's Tenth Counterclaim).

SCO has recently discovered evidence that IBM apparently used its CMVC System to secretly misappropriate SCO's UnixWare 7 Software to improve IBM's <u>AIX</u> software in violation of the copyright laws. IBM's Ninth Counterclaim seeks a declaratory judgment from this Court that "IBM does not infringe, induce the infringement of or contribute to the infringement of any SCO copyright through the reproduction improvement, and distribution of AIX". If further investigation confirms the evidence herein, <u>every</u> version of IBM's AIX for Power PC Software that has been shipped since October 2000 to date has contained code which infringes SCO's copyrights. Critical evidence bearing on this issue resides on IBM's CMVC. That centralized storage system documents the entire evolution of AIX: every version of AIX and the changes made to that version by IBM. IBM's Ninth Counterclaim asks the Court to hold that nothing in

---

[1] In its Memorandum Regarding Discovery dated May 28, 2004, and its Reply Memorandum dated July 12, 2004, SCO outlined the critical need for production of data from IBM's CMVC.

1

that evolution violated any SCO copyright, yet IBM also tells the Court that neither the Court nor SCO should be able to examine the mechanics of that evolution to test the validity of IBM's claim.

In the course of SCO's continuing review of the millions of documents produced by IBM, SCO has uncovered material further illustrating the need for production of CMVC in light of IBM's Ninth Counterclaim. Specifically, in the course of that review, SCO has uncovered internal IBM e-mails that suggest that IBM, unbeknownst to SCO, was misappropriating SCO's UnixWare 7 source code to improve IBM's own AIX for Power Software. IBM obtained access to this code from The Santa Cruz Operations, Inc. ("old SCO"), in connection with IBM and old SCO's joint development project known as Project Monterey. Old SCO gave IBM the code for the limited purpose of developing a new operating system for Intel's Itanium 64 chip. Although the joint development agreement with IBM restricted the use of this source code to development of an operating system for an Intel chip, IBM's internal e-mails to show that IBM apparently knowingly infringed SCO's copyrights by copying SCO's copyrighted source code and manuals from SCO's UnixWare software into IBM's AIX software products designed for use on IBM's Power PC chip. IBM's e-mails and other documents further show that SCO personnel were trained to use CMVC to access AIX source code to be used in Project Monterey -- again highlighting that the CMVC system is the most efficient method of gathering evidence regarding this issue.

IBM itself sought affirmative relief on this issue in this case when it filed its Ninth Counterclaim asking this Court to absolve it from any liability for copyright infringement related to its AIX software. IBM should not now be permitted to withhold the potential evidence of this very type of infringement that is in its sole possession and resides in its CMVC system.

If not for IBM's own statements in its e-mails, SCO might never have discovered this important issue, because SCO has never been granted complete and direct access to the CMVC

2

system for AIX that would have revealed it. These circumstances further demonstrate why SCO must have direct and complete access to IBM's CMVC system for AIX. Had SCO had such access, it would have discovered the improprieties detailed above far sooner and would have been in a better position to defend itself against IBM's Ninth Counterclaim, which, despite IBM's own files' contrary evidence of illegal and infringing copying of SCO code into AIX, seeks a declaration that AIX does not infringe any of SCO's copyrights.

SCO has now demonstrated two separate and independent compelling reasons why the Court should provide access to IBM's CMVC system so that SCO can conduct discovery in an orderly and appropriate fashion: (1) to trace the history of IBM's development of AIX software that IBM has contributed into Linux; and (2) to determine whether IBM has improperly used SCO's restricted copyrighted materials shared with IBM in other IBM software products for which it had no license to use such materials.

It is hard to imagine a litigation position more contradictory than one which (a) asks Judge Kimball to declare a long course of conduct free from any legal impropriety and (b) asserts to Magistrate Judge Wells that the device custom-created to store the facts about that very course of conduct is so "irrelevant" that it should not even be produced. The Court should require IBM to make the requested production.

## RELEVANT FACTS

In the late 1980s, hardware and software manufacturers in the United States were in intense competition. Intel Corporation ("Intel") had developed a powerful but inexpensive processor, the 64-bit "Itanium" Chip, while IBM relied upon its own "Power PC" Chip.

In the fall of 1998, IBM entered into a joint development agreement with old SCO to create a new operating system that would work on Intel's "Itanium" 64-bit processor (the "JDA").

3

The name of the project was "Project Monterey." See Second Amended Complaint ¶¶55-57. At that time, IBM's variant of the Unix Operating System, AIX, did not work on Intel processors, while SCO's Unix software, UnixWare 7, had been demonstrated to work on those processors. As importantly, SCO's UnixWare 7 software was based on a later version of Unix, Unix System V, Release 4 (SVR4), while IBM's AIX software was based on the earlier Unix System V, Release 3 (SVR3). See Howe Decl. ¶ 3. Therefore, SCO's UnixWare 7 contained code and functions that were not present at the time in IBM's AIX software.

Until Project Monterey, IBM's AIX operating system had been designed to operate on IBM's "Power PC" processor. The purpose of Project Monterey was to combine the best features of UnixWare 7 (which already ran on an Intel processor) and IBM's AIX operating system (which did not) to create an entirely new operating system, Monterey 64, which would run flawlessly on Intel's new 64-bit Itanium processor. See Howe Decl. ¶5.

The JDA expressly provided for two "Supplements" and those Supplements were later executed. See Evans Decl. Ex. G & H. "Supplement A" sets forth the terms under which the parties agreed to share code for use in creating software for the older, existing Intel 32-bit processor. See Evans Decl. Ex. G. "Supplement B" sets forth the terms under which the parties agreed to share source code for Project Monterey's operating system for the 64-bit Itanium processor. Supplement B also places important restrictions on the use of that code, and the manuals that accompanied it. In particular, these materials were "to be used solely for development of the IA 64 product," that is, the product for Intel's Itanium chip. See Supplement B to the JDA, Evans Decl. Ex. H (emphasis added). That same provision further required IBM to seek a separate written license if it wished to use UnixWare code and manuals outside of the Itanium project, Project Monterey:

4

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

**REDACTED**

**AT IBM'S REQUEST**

compelling reasons why the Court should provide access to IBM's CMVC system so that SCO can conduct discovery in an orderly and appropriate fashion: (1) to trace the history of IBM's development of AIX software that IBM has contributed into Linux; and (2) to determine whether IBM has improperly used SCO's restricted copyrighted materials shared with IBM in other IBM software products for which it had no license to use such materials. In the absence of any substantial burden on IBM, the Court should provide the requested access.

## ARGUMENT

### I. IBM MUST PRODUCE ITS CMVC AIX DATA AS EVIDENCE OF IBM'S IMPROPER COPYING AND USE OF SCO'S UNIXWARE CODE AND MANUALS.

Under Fed. R. Civ. P. 26(b)(1), a party may take discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party." SCO submits that its request for the CMVC data is relevant independent of any other evidence produced to date in this case. If there were any doubt, however, the e-mails discussed above show that at a minimum that the CMVC data is directly relevant to SCO's defense of IBM's Ninth Counterclaim, and therefore is discoverable.

IBM's own e-mails show that CMVC played a central role in Project Monterey -- both IBM Code and SCO Code was stored on the CMVC system. SCO's engineers were trained to access source code and other data from the CMVC system and to record on the CMVC the purpose for which that data was used. SCO is informed and believes that IBM engineers were performing similar functions with respect to SCO's code, which was also stored on the CMVC. IBM's e-mails are evidence that IBM's engineers for the Power PC used the CMVC system to access SCO Code that was restricted to Project Monterey and to copy it into AIX for the Power PC. See Evans Decl. Ex. A-E. In addition, it appears from an internal IBM document entitled

8

"SCO CMVC and Code Drop Procedures" that IBM even developed specific internal procedures for managing access by old SCO engineers to CMVC during Project Monterey. See Evans Decl. Ex. A. Accordingly, IBM cannot credibly claim that the CMVC data either is irrelevant or too burdensome to produce.

Further, based upon SCO's personal knowledge, as well as manuals pertaining to CMVC, the CMVC system is likely to contain a wealth of information that would pertain to the potential unlawful copying of SCO code. See Howe Decl. ¶ 15. CMVC is apparently readily configurable and will contain information regarding the authorship, date of source code check-in, and related comments whenever an IBM or third-party engineer utilized the Code and made a change to the AIX source code tree. See Howe Decl. ¶ 16. Thus, it is likely that by examining this data, SCO will be able to identify the names of the IBM engineers who copied the Unix Source Code into AIX for Power, the date such copying occurred, and possibly the manner in which such engineers were given access to SCO's restricted source code. See Howe Decl. ¶ 16. It is also likely that the CMVC data will show comments by engineers, such as Kim Tran, relating to the reasons for which the source code was copied. See Howe Decl. ¶ 16. The requested CMVC data for AIX is thus relevant to IBM's Ninth Counterclaim and is reasonably likely to lead to the discovery of admissible evidence that IBM's AIX Software does infringe SCO copyrights.

## II. THE CMVC DATA THAT SCO SEEKS IS NOT A BURDEN TO PRODUCE.

IBM would have this Court believe that it is unduly burdensome for one of the world's largest computer corporations, employing tens of thousands of computer engineers, to produce data for which its CMVC system was specifically designed. This position is dubious at best. Even IBM concedes that it would take at most a matter of weeks to produce the information SCO

9

seeks. See IBM's Response to SCO's Memorandum Regarding Discovery at 10. The CMVC is specifically designed to generate reports that allow IBM to track what code is in its software, where the Code came from, and who contributed it. See Howe Decl. ¶ 9. The evidence suggests that IBM's resistance to this discovery reflects IBM's concern about what such discovery will reveal about IBM's conduct. IBM continues to refuse to produce, for example, the versions of AIX for PowerPC (such as AIX 5.0) which IBM's own e-mails now show was the very version into which IBM apparently unlawfully copied SCO UnixWare code. See Evans Decl. Ex. E.

The Court should not permit IBM to pick and choose the discovery it wishes to produce to SCO. If, as IBM has repeatedly claimed, there is no basis for SCO's claims, such discovery will merely confirm that fact. But if -- as SCO is informed and believes, and as IBM's own documents indicate -- IBM has engaged in the type of improper use and copying of SCO's copyrighted materials that SCO alleges, then the information SCO seeks will confirm that fact. In either event, perhaps especially given the substantial interests at stake in this litigation, SCO respectfully submits that there is no basis for IBM to refuse to produce discovery that is directly relevant not only to SCO's affirmative claims, but to IBM's own express requests for relief, and which IBM maintains in (at the very least) an accessible format.

## CONCLUSION

SCO respectfully submits that, for all of the foregoing reasons, the Court should order IBM to produce the AIX data for its CMVC System.

DATED this 19th day of August, 2004.

*[signature]*

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

Robert Silver, Esq. (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP

Counsel for Plaintiff/Counterclaim-Defendant

Frederick S. Frei (admitted pro hac vice)
Aldo Noto (admitted pro hac vice)
John K. Harrop (admitted pro hac vice)
ANDREWS KURTH LLP

Of Counsel

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff/Counterclaim-Defendant SCO's Supplemental Memorandum Regarding Discovery was served on Defendant International Business Machines Corporation on this 19th day of August, 2004, by hand delivery and as otherwise indicated to:

By hand delivery:

> Alan L. Sullivan, Esq.
> Todd M. Shaughnessy, Esq.
> Snell & Wilmer L.L.P.
> 15 West South Temple, Ste. 1200
> Gateway Tower West
> Salt Lake City, Utah 84101-1004

Copy by U.S. mail, postage prepaid:

> Evan R. Chesler, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019
>
> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604

*Attorneys for Defendant/Counterclaim Plaintiff IBM Corp.*

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 5th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*/s/ Laura K. Chaves*