**ORIGINAL**

FILED
U.S. DISTRICT COURT

2005 JUL -6 P 4: 27

DISTRICT OF UTAH

BY
   DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC. <br><br> Plaintiff/Counterclaim-Defendant <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff | **UNSEALED EXHIBITS TO SCO'S OBJECTIONS TO IBM'S PRIVILEGE LOG AND MEMORANDUM IN SUPPORT OF SCO'S REQUEST TO COMPEL IBM TO PROVIDE PROPER BASES FOR ITS PRIVILEGE CLAIMS** <br> [Docket No. 432] <br><br> Case No. 2:03CV0294DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.                                        Page 1
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

## C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available

United States District Court, D. Kansas.
Dennis MARTEN, Plaintiff,
v.
YELLOW FREIGHT SYSTEM, INC., Defendant.
No. CIV. A. 96-2013-GTV.

Jan. 6, 1998.

Paul F. Pautler, Jr., Kimberly A. Jones, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Gail M Hudek, Hudek & Associates, P.C., Kansas City, MO, for Dennis Marten, plaintiffs.

Robert W. McKinley, Tedrick Addison Housh, III, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for Yellow Freight System, Inc., defendants.

MEMORANDUM AND ORDER

RUSHFELT, Magistrate J.

*1 Before the court is Plaintiff's Motion to Compel Discovery (doc. 86). Pursuant to Fed.R.Civ.P. 37 and D.Kan. Rule 37.1, plaintiff thereby seeks an order to compel defendant to fully answer Interrogatory 1 of his Third Set of Interrogatories. He also asks that defendant be ordered to produce the following documents: all "personal" files of Gary Bowman, responsive to Request 2 of his Third Request for Production of Documents; and all minutes, responsive to Requests 1, 5, and 6 of his Second Request For Production, of any meeting at which defendant decided to terminate or suspend him or place him on probation. Defendant opposes the motion.

Interrogatory 1 asks defendant to "[l]ist by name of subject employee all 'personal' files maintained by Gary Bowman from January 1994 to the present." Request 2 seeks production of those files. Defendant objects that the information sought is irrelevant. The court overrules the objections. The files appear reasonably calculated to lead to the discovery of admissible evidence. Defendant essentially

concedes the point. In opposing the motion it states that "[u]nless other employees engaged in similar behavior or conduct as plaintiff, Bowman's files on these employees would have no bearing on whether Bowman treated plaintiff differently by documenting his behavior and conduct." (Def.'s Resp. In Opp'n To Pl.'s Mot. to Compel Disc., doc. 106, at 5.) It then proclaims that "no evidence" exists that other employees have engaged in conduct similar to that which resulted in the termination of plaintiff. A litigant need not accept the opinion of opposing parties, however, as to the relevancy of a document. He may discover the contents of the document. He may then draw his own conclusion as to whether Bowman treated plaintiff differently from other employees. The request must only be reasonably calculated to lead to the discovery of admissible evidence.

Defendant also contends that information regarding "personal" files post-dating May 1, 1995, the date it terminated plaintiff, has no bearing on the issues in this case. The court rejects the contention. It finds the information sought by Interrogatory 1 and Request 2 relevant.

Defendant further contends, however, that disclosure of the "personal" files kept by Mr. Bowman on other employees under his supervision would improperly sway their opinions against defendant and undermine the ability of Mr. Bowman to effectively manage such employees. It suggests that "wholesale disclosure" could undermine the morale and productivity of the department headed by Mr. Bowman. It further suggests that plaintiff might use information in the files to antagonize and harass the subject employees, notwithstanding an existing protective order.

Plaintiff does not refute these contentions or suggestions. The court finds good cause, therefore, to limit dissemination of the "personal" files. Such files shall be for use by the attorneys for plaintiff. Plaintiff himself shall have no access to them or their contents, until such time as they may be admitted into evidence in this case; if indeed the court admits them. Subject to this protective order, defendant shall produce all "personal" files responsive to Request 2 and fully answer Interrogatory 1.

*2 Plaintiff also seeks an order to compel defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

to produce for inspection and copying all minutes of the Employee Review Committee (ERC) or of any meeting at which defendant decided to place him on probation or terminate or suspend him. Requests 1, 5, and 6 ask defendant to produce such minutes. Defendant objects to the production on grounds of attorney-client privilege and work product. It identifies a document titled, "ERC Minutes May 1, 1995," withheld on those grounds. Its former in-house attorney, Ronald Sandhaus, drafted it. Defendant asserts that the attorney-client privilege protects the document from discovery, because it "contains material discussed between and among Yellow employees and Mr. Sandhaus for purposes of rendering legal advice on how to address plaintiff's disciplinary problems." It also suggests that the document is attorney work product, because Mr. Sandhaus prepared it in anticipation of litigation. It claims the document contains communications between counsel and other participants of the ERC meeting. It also claims that the document reflects Mr. Sandhaus' thoughts and mental impressions of the facts and reasons for the discharge of plaintiff.

Plaintiff suggests that whatever legal advice Mr. Sandhaus may have given is merely incidental to business advice rendered. He thus argues that neither the attorney-client privilege nor the work-product doctrine protects the communications from discovery. He further contends that defendant waived any privilege that may have attached to the minutes, when its Vice President of Properties, Nile Glasebrook, testified about the ERC meeting, including the general substance of the discussions.

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." ' *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (quoting Fed.R.Evid. 501). As indicated by defendant, this court has previously held that federal law provides the rule of decision with respect to privilege in federal actions based upon a federal question, even though joined with pendent state law claims. *See Case v. Unified Sch. Dist. # 233*, No. Civ.A. 94-2100-GTV, 1995 WL 358198, at * 2-3 (D.Kan. June 2, 1995), *clarified on reconsideration*, 1995 WL 477705 (D.Kan. Aug.11, 1995). In *Case* the court noted unanimous agreement among other courts considering the issue. *Id.* at 3. It further noted inherent impracticalities of applying two different rules of privilege to the same evidence. *Id.* The Tenth Circuit Court of Appeals has

held, on the other hand, that when a plaintiff asserts both federal and state claims, the court should look to state law in deciding questions of privilege, as to the state causes of action. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir.1995), *cert denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996).

*3 After the *Motley* decision, the choice-of-law issue again emerged in the District of Kansas. *See Hinsdale v. City of Liberal*, 961 F.Supp. 1490 (D.Kan.1997). The court first noted that "all of the circuits that have directly addressed this issue have held that the federal law of privilege governs on issues of discoverability and/or admissibility even where the evidence sought might be relevant to a pendant state claim." *Id.* at 1493. It then recognized the apparent implications of *Motley:*

It thus could be argued that the 10th Circuit has decided not to follow the other circuits when both federal and state causes of action have been asserted in a case.

However, it is not clear that the 10th Circuit directly addressed the issue. The *Motley* opinion does not discuss at all the conflict in the law or any opinion or legal authority concerning what law should apply when both federal and state causes of action are in a case. *Motley* cites language in Fed.R.Evid. 501 which calls for looking at state law when there is a state cause of action However, Rule 501 is silent on what should be done when a case contains both state and federal causes of action....

This court seriously doubts that the 10th Circuit has directly addressed the issue of which privilege law applies when the evidence is relevant to both state and federal claims that are in a case. However, this court is bound by the decisions of the 10th Circuit. Therefore, the court will analyze this motion based on the possibility that the 10th Circuit intended for state law of privilege to apply to the state causes of action in a case wherein both federal and state claims have been asserted.

961 F.Supp. at 1493.

Following *Hinsdale* the Tenth Circuit Court of Appeals unambiguously held that the court should consider both federal and state law of privilege, when both federal claims and pendent state law claims are implicated. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, ----, No. 96-3021, 129 F.3d 1355, 1997 WL 727571, at *13 (10th Cir. Nov.24, 1997). It specifically held:

Here, with both federal claims and pendent state law claims implicated, we should consider both bodies of law under *Motley* and Fed.R.Evid. 501.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 3
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

If the privilege is upheld by one body of law, but denied by the other, problems have been noted. "In this situation, permitting evidence inadmissible for one purpose to be admitted for another purpose defeats the purpose of a privilege. The moment privileged information is divulged the point of having the privilege is lost." 3 Weinstein's Federal Evidence, § 501.02[3][b] (Matthew Bender 2d ed.) (citing *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458 (N.D.Cal.1978)): If such a conflict on the privilege exists, then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law. Here, however, for reasons given below we are convinced that both federal and Kansas law support application of the attorney-client privilege. Therefore we need not articulate an analytical solution here for conflicts in attorney-client privilege rules.
*4 129 F.3d at ----, 1997 WL 727571, at *13 (footnote omitted).

Following *Sprague,* the court will consider both federal and state law regarding privilege. Plaintiff alleges retaliation and/or sex discrimination under federal law, Title VII, 42 U.S.C. § 2000e *et seq.* (Compl., doc. 1, ¶ ¶ 57-65.) He also asserts claims of outrage, defamation, false imprisonment, and assault and battery under state law. (*Id.* ¶ ¶ 66-85.) If state and federal rules of privilege conflict, the court must analyze their application.

The court finds no conflict. Whether it applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 196 n. 3 (D.Kan.1993) (citing K.S.A. 60-426; *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992)). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions." *In re A.H. Robins Co.,* 107 F.R.D. 2, 8 (D.Kan.1985). Certain general propositions appear applicable under both federal and Kansas law. Federal law, moreover, governs the applicability of the work product doctrine in federal court. *See Burton v. R.J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 139 (D.Kan.1996).

The attorney-client privilege and the work product doctrine are distinctly different protections, although related somewhat and often invoked together. *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196. "Despite their differences, courts narrowly construe them

both." *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D.Kan.1994). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (unanimous decision).

Parties asserting an objection of "work product immunity or attorney-client privilege bear[] the burden of establishing that either or both apply." *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995). They must make a "clear showing" that the asserted objection applies. *Ali v. Douglas Cable Communications, Ltd. Partnership,* 890 F.Supp. 993, 994 (D.Kan.1995). To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery. *National Union Fire Ins. Co.,* 159 F.R.D. at 567. They must provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied. *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995). A claim of privilege or work-product protection fails upon a failure of proof as to any element. *Id.* A "blanket claim" as to the applicability of a privilege or the work product doctrine does not satisfy the burden of proof. *See Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

*5 "The attorney-client privilege...is to be extended no more broadly than necessary to effectuate its purpose." *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196. Its purpose
is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.
*Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice." *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. Civ.A. 94-2395-GTV, 1995 WL 625962, at *8 (D.Kan., Oct.5, 1995) (quoting *Marc Rich & Co. A.G. v. United States* (*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983),* 731 F.2d 1032, 1037 (2d Cir.1984)). "[T]he privilege exists to protect not only the giving of professional advice to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co., 449 U.S. at 390.* "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.... [The privilege] protects only those disclosures--necessary to obtain informed legal advice--which might not have been made absent the privilege." *Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)* (citations omitted). Furthermore, it

> only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

*Upjohn Co., 449 U.S. at 395-96* (citation omitted).

The essential elements of the attorney-client privilege are nearly identical under both Kansas and federal law. Under federal common-law the essential elements are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Great Plains Mut. Ins. Co., 150 F.R.D. at 196 n. 4* (citation omitted). Under Kansas law, they are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

*\*6 State v. Maxwell, 10 Kan.App.2d 62, 63, 691 P.2d 1316, 1319 (1984)* (citation omitted); *see also, K.S.A. 60-426.* The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Jones v. Boeing Co., 163 F.R.D. 15, 17 (D.Kan.1995); see also, Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481, 484 (D.Kan.1997), reconsidered in part, 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997); Maxwell,*

*10 Kan.App.2d 62, 691 P.2d 1316; K.S.A. 60-426(a).* Under Kansas law, " 'communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." *K.S.A. 60-426(c)(2).* Such definition does not conflict with federal law. *See Upjohn, 449 U.S. at 390.*

The attorney-client privilege protects communications with in-house, as well as outside counsel. *Burton, 170 F.R.D. at 484.* Minutes of meetings attended by attorneys are not, however, automatically privileged. *Id. at 485.* That the document sought in this case comes from former in-house counsel for defendant carries little weight of itself on the scope or applicability of the privilege. "[In-house] status alone does not dilute the privilege." *In re Sealed Case, 737 F.2d 94, 99 (D.C.Cir.1984).* Although such status "does not alter the attorney/client privilege ... when the attorney serves also in another capacity, such as vice president, his advice is privileged 'only upon a clear showing' that it was given in a professional legal capacity." *Pizza Management, Inc. v. Pizza Hut, Inc., No. 86-1664-C, 1989 WL 9334, at \*4 (D.Kan. Jan.10, 1989); see also, United States v. Chevron Corp., No. C-94-1885 SBA, 1996 WL 264769, at \*4 (N.D.Cal. Mar.13, 1996), amended by; No. C 94-1885 SBA, 1996 WL 444597 (N.D.Cal. May 30, 1996).*

> A basic element of the attorney-client privilege is that the attorney be in the appropriate role during communication with the client. Attorneys in such diverse occupations as professor or baseball manager do not occupy the role of attorney for privilege purposes as they discuss classroom assignments or the hit-and-run play. Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. Such an attorney may have multiple roles in his activities (*e.g.* business advisor, corporate director, labor negotiator) that are not necessarily attorney-related roles for the purpose of the privilege. In the representation of corporate interests, counsel might find themselves performing multiple roles. Frequently the roles are closely related, which makes it virtually impossible to isolate a purely legal role from the nonlegal.

*\*7 John William Gergacz, Attorney-Corporate Client Privilege, ¶ 3.02[2][a] [[[iv] (2d Ed.1990).*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 5
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Communications with in-house counsel, "who at the time is acting solely in his capacity as a business advisor, would not be privileged." *Great Plains Mut. Ins. Co., 150 F.R.D. at 197.* The privilege likewise does not extend to communications not made in professional confidence. *Pacific Employers Ins. Co. v. P.B. Hoidale Co., 142 F.R.D. 171, 173 (D.Kan.1992)* (citing *State v. Breazeale, 11 Kan.App.2d 103, 105, 713 P.2d 973 (1986)*). Nor does it extend "to advice and assistance that has not been sought and received in matters pertinent to the profession." *Id.* It "applies only to communications made to an attorney in his capacity as legal advisor." *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co., 250 Kan. 54, 60, 824 P.2d 933, 938 (1992).* It applies only "when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed." *Burton, 170 F.R.D. at 484.* A distinction exists "between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected." *Id.* (citations omitted). When the legal advice "is merely incidental to business advice," the privilege does not apply. *Id.* "There is also a distinction between a conference with counsel and a conference at which counsel is present." *Id.*

[T]he mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged. The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential. To be privileged, the communication must relate to the business or transaction for which the attorney has been retained or consulted.
*Hinsdale v. City of Liberal, 961 F.Supp. 1490, 1494 (D.Kan.1997).*

Plaintiff seeks minutes of any meeting at which the termination, suspension, or probation of plaintiff was decided by defendant. Ronald Sandhaus, former in-house counsel for defendant, drafted minutes of a meeting of the ERC held May 1, 1995. To determine the applicability of the attorney-client privilege the court must determine the role of Mr. Sandhaus at that meeting. To the extent he was not acting as an attorney providing legal advice, the

privilege provides no protection for communications made to or from him.

Defendant contends that the role of Mr. Sandhaus was not to determine whether the discharge of plaintiff was a good business decision, but rather to ensure that the reasons and decision to discharge him were legally sound under the facts of the case. It asserts that Mr. Sandhaus did not deviate from his role as legal advisor. It further asserts that the document in question contains communications from managerial employees which were for the purpose of obtaining legal advice on how to handle the behavioral and conduct problems of plaintiff in light of accusations of discrimination and retaliation. It claims that the participants have maintained the confidentiality of the communications and the documents resulting from the meeting. It suggests it does not routinely convene meetings of the ERC, but only when faced with a decision to discharge an employee. It characterizes the presence and guidance of counsel at such meetings as critical, because of the legal implications associated with the discharge of an employee.

*8 Defendant submits an affidavit of its present in-house counsel, Daniel Hornbeck. He states that the role of counsel at meetings of the ERC "is to render legal advice to managerial and human resources employees based upon the factual situation." (Aff. of Daniel L. Hornbeck, Esq., attached as Ex. A to Def.'s Resp. to Pl.'s Mot. to Compel, doc. 106, ¶ 3.) He avers that defendant have an attorney participate as a voting member "to ensure the Employee Review Committee's decision regarding the discharge of an employee complies with substantive and procedural law." (*Id.*) He also makes averments consistent with the ERC policy of defendant. (*Id.* at ¶ 2.) Plaintiff submits a copy of that policy. It provides in pertinent part:

The prior approval of the [ERC] is required before a salaried or non-union employee who has at least six months' [sic] service with the company can be discharged or forced to resign. The purpose of this policy is to provide a high-level review prior to each discharge or involuntary resignation.
The ERC is composed of three voting members: the Manager of Employee Relations (or designee), the Division or Department Vice-President (or designee), and a member of the Legal staff. While there may be other participants in the ERC meeting, the authority for decision-making is the ERC members.

...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

Page 6

It is the responsibility of the members of the ERC, after reviewing the case, to decide whether to terminate, place on probation, etc.
(ERC Prior Approval of Discharges, attached as Ex. F to Pl.'s Mot. to Compel, doc. 86.)

One purpose of the ERC meeting is that of review. Such review may include consideration of legal consequences of a proposed employment action. The primary function of the committee, however, appears to be a decision of what employment action to take against an employee. Notwithstanding the legal implications of such employment action, the business purposes of such a decision predominate the legal issues. In the context of a required meeting to determine possible employment actions, legal advice sought or received during such meeting appears to be incidental to considerations of what is most prudent for the successful operation of the business. A conference between client and counsel does not necessarily equate with a conference attended by counsel. The ERC meeting appears to be the latter. It serves to make a personnel decision. With an attorney present, the meeting nevertheless proceeded to determine whether to terminate the employment of plaintiff. Such a business decision may have legal consequences, as do many decisions of any business, however, does not convert the meeting into a conference between attorney and client. Nor does it make the attorney-client privilege applicable to whatever is said and done during the meeting.

As a voting member of the ERC, furthermore, Mr. Sandhaus was not acting merely as an attorney rendering legal advice. Officially voting on a proposed action goes beyond the bounds of giving legal advice. It performs an act of the business. Legal considerations may influence his vote or that of any other committee member as well. The attorney-client privilege does not protect the act of voting, the minutes which record it, or all the discussion of the committee relating to its decision.

*9 Defendant asserts that the membership of Mr. Sandhaus on the Employment Review Committee does not mean that he was acting in a non-legal capacity. Mere membership on a committee does not of itself necessitate a finding that counsel was not acting as an attorney. Membership on a committee which decides if an employee should be terminated, however, may lead to an inference that the attorney, at least in part, was acting in a non-legal capacity. When an attorney is a voting member, the indication is even stronger. As the party asserting privilege,

defendant has the burden to demonstrate its applicability. This means an adequate showing that, as a voting member of the ERC, Mr. Sandhaus was nevertheless acting as legal counsel.

Defendant explains that it granted counsel voting membership on the committee "to ensure the legal efficacy of the employment decision." That is an admirable goal. Including an attorney on the committee, nevertheless, can create ambiguity as to his or her role. Defendant maintains that the role of counsel on the committee never strayed from rendering legal advice. It submits the affidavit of Mr. Hornbeck as proof. The affidavit sets forth what role counsel generally take at ERC meetings. It provides nothing of substance, however, about what Mr. Sandhaus in fact did at the meeting of May 1, 1995. The court declines to rely upon the generalization to demonstrate the applicability of a privilege. Defendant must show that the primary participation of Mr. Sandhaus at the ERC meeting was as a lawyer giving legal advice. In this respect the facts proffered by defendant fall short. The affidavit of Mr. Hornbeck expresses no personal knowledge of what occurred at the meeting. Defendant provides no affidavit either of Mr. Sandhaus or anyone else at the meeting to suggest he acted primarily as counsel. The affidavit of Mr. Hornbeck indeed fails to confirm that anyone at the meeting of May 1, 1995 either asked for or received any legal advice from Mr. Sandhaus.

When an attorney serves in a non-legal capacity, such as a voting member of a committee required to review proposed employment actions, his advice is privileged only upon a clear showing that he gave it in a professional legal capacity. *See Pizza Management, Inc. v. Pizza Hut, Inc.*, No. 86-1664-C, 1989 WL 9334, at *4 (D.Kan. Jan.10, 1989). The privilege protects only those communications predominated by legal advice. *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D.Kan.1997), *reconsidered in part*, 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997). Defendant, as the party with the burden to show the privilege applicable, has not shown such predomination. Legal advice simply incidental to communication which is primarily business advice, however, does not qualify for the privilege.

Defendant suggests *Great Plains Mutual Insurance Company v. Mutual Reinsurance Bureau*, 150 F.R.D. 193 (D.Kan.1993) supports its position that the attorney-client privilege is applicable. The court finds the case distinguishable. In *Great Plains* the

Not Reported in F.Supp.                                                                                    Page 7
1998 WL 13244 (D.Kan.)
(Cite as: 1998 WL 13244 (D.Kan.))

information sought "appear[ed] to directly relate to legal advice rendered by [an] attorney in his capacity as legal advisor." *Id.* at 197.   No such appearance exists here.   From the information before the court, the minutes of the meeting of May 1, 1995, appear to relate to a business meeting at which counsel acted as a voting member. Defendant has not shown that Mr. Sandhaus was acting primarily as a legal advisor.   In *Great Plains,* furthermore, the court was satisfied that the "attorney was acting in his capacity as an attorney during the relevant portions of the board meetings." *Id.* Defendant here has not made an adequate showing that Mr. Sandhaus was acting in a legal capacity during the meeting.

*10 In *Great Plains* the party asserting the privilege also showed that the advice given required the skill and expertise of an attorney. *Id.* The showing here again falls short.   In *Great Plains* the court noted the clear "purpose of the conversations during the board meetings was to render legal advice and that both Great Plains and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to Great Plains' litigation." *Id.* Here the purpose of the ERC meeting was to determine appropriate employment action against plaintiff.   Any legal advice, if given, appears incidental to a personnel matter and to what was therefore prudent and expedient for successful operation of the business.   Mr. Sandhaus appears to have been acting beyond the role of legal counsel when performing the role of voting member of the ERC.

The court next addresses whether the minutes are protected from discovery as work product.   "Within the meaning of Fed.R.Civ.P. 26(b)(3), work product refers to documents and tangible things, prepared in anticipation of litigation or for trial, and prepared by or for a party or by or for a representative of that party.". *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 200 (D.Kan.1996).
   The work product standard has two components. The first is what may be called the "causation" requirement.   This is the basic requirement of the Rule that the document in question be produced *because of* the anticipation of litigation, *i.e.,* to prepare for litigation or for trial.   The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation.   Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.

*Audiotext Communications Network, Inc.,* 1995 WL 625962, at *8 (quoting *Harper v. Auto-owners Ins. Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991)).   "The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product." *EEOC v. GMC,* No. 87-2271-S, 1988 WL 170448, at *2 (D.Kan. Aug.23, 1988).   "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine.   The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield,* 166 F.R.D. 496, 498 (D.Kan.1996) (citations omitted).   "To justify work product protection, the threat of litigation must be 'real and imminent.' " *Audiotext Communications Network, Inc.,* 1995 WL 625962, at *9 (quoting *Reliance Ins. Co. v. McNally Inc.,* No. 89-2401-V, unpublished op. at 4 (D.Kan. Feb. 5, 1992)).   To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation. *See Pacific Employers Ins. Co.,* 142 F.R.D. at 174-75.

*11 In this instance defendant suggests that Mr. Sandhaus created the minutes of the ERC meeting in anticipation of litigation.   It asserts the anticipated litigation was clearly shown by plaintiff's filing a complaint with the Equal Employment Opportunity Commission (EEOC) and speaking of his "lawsuits" with co-workers.   A defendant is generally justified in believing litigation to be imminent, after charges are filed with the EEOC. *EEOC v. GMC,* 1988 WL 170448, at *2. Such justification, however, does not transform every document thereafter prepared by the attorney into work product.   The attorney must create the document "because of" the impending litigation.   Work product generally does not apply, unless the primary motivating purpose for creating the document is to assist in pending or impending litigation. *Id.* "To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation." *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 485 (D.Kan.1997), *reconsidered in part,* 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997).   The fact that defendant anticipated litigation with plaintiff does not make all documents thereafter "generated by or for its attorneys subject to work product immunity.   A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific litigation." *Burton v. R.J. Reynolds Tobacco*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1998 WL 13244 (D.Kan.)
**(Cite as: 1998 WL 13244 (D.Kan.))**

*Co.,* ---F. R.D. ----, ---, No. 94-2202-JWL, 175 F.R.D. 321, 1997 WL 536084, at *5 (D.Kan. Aug.14, 1997).

Defendant has not shown the primary motivating purpose behind the creation of the minutes here in question. Mr. Sandhaus titled the document "ERC Minutes May 1, 1995." The title suggests a purpose other than litigation. The term "minutes" commonly means "the official record of the proceedings of a meeting." *Webster's Ninth New Collegiate Dictionary* 757 (9th ed.1988). That definition appears particulary cogent. Mr. Sandhaus drafted the minutes primarily to record what happened at the ERC meeting. The court has noted the lack of showing that he was acting purely as legal counsel at the meeting. His business role as a voting member of the committee appears to predominate over any role he may have filled as an attorney giving legal advice.

Defendant has not carried its burden to show that Mr. Sandhaus primarily created the minutes in question to assist in pending or impending litigation. Documents created in the ordinary course of business are not protected by the work product doctrine. Meetings of the ERC appear part of the ordinary course of the business of defendant. That it convenes such meetings only when necessary does not prove otherwise. That an attorney created the document in question, furthermore, does not of itself make it work product. *Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481, 485 (D.Kan.1997), reconsidered in part, 175 F.R.D. 321, 1997 WL 536084 (D.Kan. Aug.14, 1997).* The doctrine does not protect summaries of business meetings, even when an attorney creates the summary. *Id.* "A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys, whether in-house or outside counsel." *Id.* at 488.

**\*12** The court need not address the issue of waiver raised by plaintiff. It has found neither the work product doctrine nor the attorney-client privilege applicable to the minutes in question. Defendant shall produce the minutes of the ERC meeting of May 1, 1995 created by Mr. Sandhaus and all other documents responsive to Requests 1, 5, and 6.

For the foregoing reasons, the court sustains Plaintiff's Motion to Compel Discovery (doc. 86). Defendant shall, on or before January 22, 1998, fully answer Interrogatory 1 and produce all documents responsive to Requests 1, 2, 5, and 6 as set forth herein. Such production shall take place at the

offices of counsel for plaintiff located at 1200 Main Street, Suite 1100, Kansas City, Missouri; or any other location agreed upon by the parties. Each party shall be responsible for its own costs and expenses incurred on the motion. Each side took defensible positions on at least part of the motion.

IT IS SO ORDERED.

1998 WL 13244 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

• 2:96CV02013 (Docket) (Jan. 08, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

1983 U S Dist. LEXIS 13471, *

UNION NATIONAL BANK OF CHICAGO, et al., Plaintiffs, v. UNITED
STATES FIRE INSURANCE COMPANY, et al., Defendants.

No. 82 C 5628

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

*1983 U.S. Dist. LEXIS 13471*

September 23, 1983

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiffs, bank and
others, sought to prevent discovery of documents in their
suit against defendants, insurer and others.

**OVERVIEW:** In a dispute between parties, plaintiffs
sought to prevent discovery of documents by claiming
that they were subject to attorney client privilege and
were considered work product. On review, the court
directed the discovery of certain documents and held that
mere presence in an attorney's file did not give rise to a
presumption of an attorney-client privilege. Additionally,
the court held that documents containing information
discoverable from the public record or relating to
documents filed in court were not entitled to protection
from discovery. The court also held that communications
between counsel representing plaintiffs in other litigation
but not in the litigation at issue were not automatically
entitled to protection from discovery. The court then held
that claimed privileges as to certain documents had been
waived.

**OUTCOME:** The court ordered plaintiffs to produce
certain documents that defendants sought.

## LexisNexis(R) Headnotes

*Civil Procedure > Disclosure & Discovery > Privileged
Matters*
[HN1] It is not the role of the judicial officer to parcel
through documents to apply a privilege not specifically
claimed and a proper claim requires a specific
designation and adequate description of the document
within its scope.

*Evidence > Privileges > Attorney-Client Privilege*
[HN2] Merely because several counsel represent the
same client in other litigation in which they are not co-
counsel does not bring such documents within the
attorney-client privilege.

*Evidence > Privileges > Attorney-Client Privilege*
*Civil Procedure > Disclosure & Discovery > Work
Product*
[HN3] Mere presence of a document in an attorney's file
does not give rise to a presumption of attorney-client
privilege. Further, letters transmitting or exchanging fact
information, information discoverable from public
record, or relating to documents in court filed are not
protected by either attorney-client privilege or work
product.

**OPINIONBY:** [*1]

JURCO

**OPINION:**

ORDER

At the outset, counsel for plaintiffs is reminded
[HN1] it is clearly not the role of the judicial officer to
parcel through documents to apply a privilege not
specifically claimed and that a proper claim requires a
specific designation and adequate description of the
document within its scope. Un-numbered documents are

1983 U.S. Dist. LEXIS 13471, *

not to be "dumped," causing delay in examination and ruling.

A review was completed of the documents tendered in camera with a somewhat awkward correlation by use of the May 18, 1983 counsel conference transcript. The general claim reflected at page 14 of the transcript conference was "that memorandum in house are both privileged and in some instances work-product and communications between attorneys and client and between lawyers representing the same client are attorney-client privilege." [HN2] Merely because several counsel represent the same client in other litigation in which they are not cocounsel does not bring such documents within the attorney-client privilege.

A review of the documents, correlating same with the transcript shows (1) many documents identified were not tendered and (2) some documents were tendered which were not identified in [*2] the conference transcript. All of these documents are to be produced, it being deemed that by non-production plaintiffs no longer seek their protection from production to defendants and as to those erroneously submitted no claim for protection has been made. These are producible to defendant as follows:

Documents Not Tendered

| Date | Description |
|---|---|
| 10/19/78 | Letter from Vent to Lynch |
| 10/10/78 | Service statement from Johnston, Sayers to Seyfarth, Shaw |
| 10/9/78 | Letter from Vent to Sasser |
| 12/12/77 | Letter from Vent to Sasser |
| 11/12/76 | Memo from John Anderson to Mr. Vent |
| 4/2/76 | Calabrese to Vent |
| Undated | Letter, Mr. Lynch to Mark Lies |
| 3/6/76 | Mark Lies to Frank Lynch |
| 2/19/76 | Letter from Mark Lies to Frank Lynch |
| 6/30/76 | Letter from Lynch to Vent |
| Undated | Handwritten notes |
| 1/17/76 | Lynch to Vent |
| 6/26/79 | Joseph Pavola of Union National Top Vent |
| 3/19/79 | Frank Lynch to Tom Vent |
| 4/5/80 | Frank Lynch to Tom Vent |
| 6/4/76 | Lynch to Vent |
| Undated | Handwritten memo "Memorandum from the desk of Bob Watts" captioned "Shepherd" |
| 2/22/79 | Letter, Sales of Palm Beach to Judge Boofer |
| 9/24/81 | Memo Vent to Seyfarth |
| 7/20/78 | Lynch to Vent |
| 12/9/82 | From me (Johnson?) to Vent |
|  | Handwritten notes, somebody in the law firm |
| 6/23/82 | Edwards to Vent with a statement for services |
| 8/11/81 | Donna Jacob of the Florida office of Seyfarth, Shaw to T. Vent |
| 8/22/80 | Vent memo to Seyfarth |
| 6/28/78 | "This may be a duplicate" |
| 7/15/82 | Draft of letter (or workup of a letter to Chris Pappas) |
| 7/5/82 | Tom Vent to Peter Woodford, memo |
| 7/14/82 | Peter Woodford to Tom Vent |
| 5/24/82 | Memo from Vent to Peter (Woodford) |
| Undated | Credit report |
| 11/12/76 | Anderson to Vent |
| 11/14/76 | Memo from Anderson to Vent |
| 10/18/77 | Statement for costs advanced on behalf of Union National |

1983 U.S. Dist. LEXIS 13471, *

```
             Bank from
             Seyfarth
5/29/80      Memo from Vent to Lynch & Seyfarth re: Shepherd
             controversies
10/4/79      Letter from Yager to Vent
10/16/78     Letter from Sesser to Vent
```

[*3]                                   Documents Tendered -- Not Listed

```
10/28/76     Vent to Munger
1/26/77      Handwritten telephone message
1/27/77      Sasser to Vent
1/28/77      Anderson to Sassar
12/1/77      Vent to Sasser
7/1/81       Wells to Vent and Goldgehn
5/3/82       Woodford to Pappas
6/23/82      Edwards to Vent
8/11/82      Vent to Field
8/22/82      Handwritten note
Undated      Statement for services from 8/81 through 10/14/81 from
             Caldwell,
             Pacetti firm
```

In the review it was determined (1) that certain documents relating to the Hunt investigation and counsel advice and/or work product relating thereto, if any, had been effectively waived in 1981 by Mr. Henry Seyfarth, Chairman of the Board, as well as a member of the law firm of Seyfarth, Shaw, Fairweather & Geraldson; (2) that as to twelve identified documents which are in defendants' possession any claim of privilege and or work product has been waived. All of twelve waived documents were contained in the plaintiffs' in camera tender. Defendants' further argument of file waiver because these twelve documents were acquired by them from plaintiffs' counsel production of the entire file to defendants' expert, and Mr. Vent's alleged declaration at the conference [*4] between present counsel for plaintiffs and defendants that the file being conferred on May 18, 1983 was same file examined by defendants' expert is based on inference. Clearly, when Mr. Vent appears for deposition the nature of identification of the file present at the counsel conference of May 18, 1983 as being the same as given to defendants' expert can be fully explored. If it had been disclosed, then we are performing an unnecessary task at this time, but we cannot conjecture that the alleged comments and the twelve documents possessed by defendants lead to a conclusion that all of these documents now tendered were given to defendants' expert. Documents to be produced on which waiver of privilege is found are:

```
10/17/80     Vent to Lynch
4/17/79      Vent to Seyfarth
6/28/78      Vent to Brown
6/28/78      Vent to Fairweather
11/2/77      Vent to Munger
10/24/77     Vent to Lynch
3/2/77       Vent to Brown
1/17/76      Lynch to Vent
2/8/82       Edwards to Vent
```

1983 U.S. Dist. LEXIS 13471, *

```
10/12/81   Vent to Edwards
10/6/81    Vent to Edwards
10/1/81    Mansfield to Vent
7/1/81     Wells to Seyfarth
4/29/81    Radford to Seyfarth
3/17/81    Rand to Radford
5/29/80    Vent to Lynch & Seyfarth & File
5/10/79    Seyfarth to Yager
```

[*5]

All handwritten notes found in the law firm file and tendered which are unidentified as to author and/or date are to be produced.   [HN3] Mere presence in an attorney's file does not give rise to a presumption of attorney-client privilege; work product has been claimed only to memoranda of in-house counsel.  Further, all letters transmitting or exchanging fact information, information discoverable from public record, or relating to documents in court filed are not protected by either attorney-client privilege or work product and are to be produced to defendant.

Defendants' argument that Union National Bank's designation for deposition under 30(b)(6) of its attorney Vent requires he testify as a party is correct.  It does not follow, however, that Union National Bank's right to claim the attorney-client privilege through such designation is waived. Plaintiffs have not interposed the "advice-of-counsel" issue when it designates its attorney as most knowledgeable of the facts giving rise to the present litigation.  Cf. *Handguard, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D. Calif. 1976).*

The following documents are protected and plaintiffs need not produce the same to defendants.  [*6]

```
6/23/81   Vent to Seyfarth
10/8/80   Vent to Lynch
1/13/78   Karlin to Vent
7/5/77    Karlin to Vent
12/14/76  Anderson to Vent
11/18/82  Wilbur to Vent
10/8/82   Lewis to Wilbur
9/14/82   Wilbur to Johnson, Green, Vent & Pappas
8/30/82   Woodford to Wilbur
7/26/82   Vent to Edwards
7/16/82   Vent to Pappas
7/7/82    Vent to Edwards
7/1/82    Vent to Edwards
7/1/82    Vent to Pappas
4/28/82   Edwards to Vent
11/13/81  Berkun to Woodford and Vent
10/21/81  Vent to File
4/29/81   TGV to HES
```

All documents ordered to be produced shall be produced by plaintiffs within five (5) days from date hereof.   Counsel for plaintiffs and defendants are requested to reclaim their respective documents in Room 2402.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
(Cite as: 2002 WL 598331 (D.Kan.))

Page 1

# H

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
Henry L. HILL, Plaintiff,
v.
Brian McHENRY, et al., Defendants.
No. CIV.A. 99-2026-CM.

April 10, 2002.

MEMORANDUM AND ORDER

<u>WAXSE</u>.

*1 A hearing was held on Plaintiff's Motion to
Compel Production of Documents (doc. 143) before
the undersigned Magistrate Judge on April 8, 2002.
Plaintiff appeared in person and through counsel
Robert K. Ball. All Defendants except Brian
McHenry appeared through counsel Mark A. Jess.
Defendant Brian McHenry did not appear.

At the hearing, the Court denied in significant part
the Motion to Compel. An order memorializing that
ruling will be issued at a later date. The Court also
made several rulings regarding the claims of privilege
asserted by Defendants TCI of Overland Park, Inc.
("TCI") and Tele-Communications, Inc. ("Tele-
Communications"). [FN1] This Order will expand on
and memorialize those rulings.

> FN1. As the Court noted at the hearing,
> there is some confusion as to which of the
> defendants the Motion to Compel is
> directed. The Court ruled that the Motion
> was properly directed to only two of the
> defendants--TCI and Tele-Communications
> (which Plaintiff's Motion mistakenly refers
> to as Telecommunications). The Court ruled
> that the Motion could not be directed to TCI
> Holdings, Inc., as that entity was dismissed
> from the case on February 2, 2001. *See* doc.
> 95. The Court's rulings herein therefore
> apply only to TCI and Tele-
> Communications.

I. Background Information

TCI and Tele-Communications have objected to
several of the requests for production that are the
subject of the Motion to Compel on the basis that the
requests called for TCI and/or Tele-Communications
to produce documents protected by the attorney-
client privilege and/or work product doctrine. They
have provided Plaintiff with a privilege log
describing the documents they contend are privileged
or protected work product. *See* Ex. K attached to doc.
144.

TCI and Tele-Communications have also asserted
that certain documents relating to Plaintiff's worker's
compensation claim, which initially were in the
possession of GAB Robins [FN2] (the third-party
insurance administrator that handled Plaintiff's
workers' compensation claim for TCI), are privileged
and/or protected work product. TCI and Tele-
Communications informed the Court at the hearing
that their privilege log also lists these claimed
privileged/protected documents.

> FN2. Plaintiff served a subpoena duces
> tecum on GAB Robins to obtain these
> documents. Rather than turning over the
> claimed privileged documents to Plaintiff,
> GAB Robins transferred them to counsel for
> TCI and Tele-Communications. TCI and
> Tele-Communications in turn listed the
> documents in the privilege log that was
> submitted to Plaintiff. They did not,
> however, file a motion to quash the
> subpoena as it applied to the privileged
> documents.

Plaintiff argues that TCI and Tele-Communications'
privilege log is insufficient and does not satisfy their
burden to describe the nature of the documents so as
to enable Plaintiff to assess the applicability of the
asserted privileges or work product protection.
Plaintiff contends that TCI and Tele-Communications
have waived the asserted privileges and work product
protection.

II. Analysis

A. Rules Governing the Assertion of Privileges and
Work Product Protection

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
(Cite as: 2002 WL 598331 (D.Kan.))

Before addressing the sufficiency of Defendants' privilege log, the Court will set forth the rules regarding the assertion of privileges and work product protection. It is well established that the party asserting a privilege or work product protection has the burden of establishing that the privilege/protection applies. *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 680 (D.Kan.2000); *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995). To carry that burden, the party must make a "clear showing" that the asserted privilege/protection applies. *McCoo,* 192 F.R.D. at 680. Under Fed.R.Civ.P. 26(b)(5), a party that withholds documents based on privilege or work product protection, must "make the claim expressly and ... describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

*2 Based on Rule 26(b)(5), this Court has held that the party asserting the privilege/protection must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery. *McCoo,* 192 F.R.D. at 680; *National Union Fire Ins. Co. v. Midland Bancor, Inc .,* 159 F.R.D. 562, 567 (D.Kan.1994). The information provided must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied. *McCoo,* 192 F.R.D. at 680; *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995). A "blanket claim" as to the applicability of the privilege/work product protection does not satisfy the burden of proof. *McCoo,* 192 F.R.D. at 680; *Kelling v Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

B. Defendants' Privilege Log Is Deficient

The Court does not find that Defendants' privilege log meets these standards. In particular, the log does not identify the specific privilege/protection being asserted. Under the heading "Privilege Asserted," the log merely states, for each document listed, "Attorney-Client *and/or* Work Product Privileges." (Emphasis added.) The privilege log is also deficient in that it fails to state the purpose for which each document was created. In addition, it fails to fully identify the authors and recipients of the documents so as to allow the Court to determine that the documents are in fact communications between the attorney and client (as required for the attorney-client

privilege to apply) and/or that they were prepared by or for Defendants or their representatives (as required for the work product doctrine to apply). Because of these deficiencies, the Court is without sufficient information to determine whether each element of the asserted privilege/protection is satisfied.

Given TCI and Tele-Communications' failure to provide the required information, the Court could find waiver and grant Plaintiff's Motion to Compel as it applies to the claimed privileged/protected documents. The Court, however, will decline to do so. As the Court stated at the hearing, the Court will defer ruling on Plaintiff's Motion to Compel as it pertains to the claimed privileged/protected documents until such time as TCI and Tele-Communications have submitted an amended privilege log to Plaintiff.

C. Preparation of Amended Privilege Log and Briefing Schedule

In light of the above, the Court hereby directs TCI and Tele-Communications to prepare and submit to Plaintiff an amended privilege log. Said amended log shall be served on Plaintiff by *April 30, 2002.* TCI and Tele-Communications shall file a certificate of service verifying that the amended privilege log was served on Plaintiff.

The amended privilege log shall contain "a detailed description of the materials in dispute and ... specific and precise reasons for [their] claim of protection from disclosure." *Simmons Foods, Inc. v. Willis,* No. 97-4192-RDR, 2000 WL 204270, at *5 (D.Kan. Feb. 8, 2000) (quoting *Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 334 (D.Kan.1991); *Cypress Media, Inc. v. City of Overland Park,* 2000 WL 85362, at *13-14 (D.Kan. Jan. 28, 2000)). The amended log shall include at least the following information for each document withheld:
*3 1. A description of the document (*e.g.,* correspondence, memorandum);
2. Date prepared;
3. Date of document (if different from # 2);
4. Identity of the person(s) who prepared the document, including information sufficient to allow the Court to determine whether the document is a communication from the client's attorney and/or whether it was prepared by or for TCI or Tele-Communications or by or for one of their representatives;
5. Identity of the person(s) for whom the document was prepared and to whom the document was directed (including all copies), including

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 598331 (D.Kan.)
(Cite as: 2002 WL 598331 (D.Kan.))

Page 3

information sufficient to allow the Court to determine whether the document is a communication to the client;

6. Purpose of preparing the document;

7. Number of pages of the document;

8. Basis for withholding discovery of the document, *i.e.*, the specific privilege or protection being asserted; and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.
*See Simmons Foods,* 2000 WL 204270, at *5 (setting forth requirements for privilege log).

The amended privilege log shall include those claimed privileged/protected documents that GAB Robins turned over to counsel for TCI and Tele-Communications after Plaintiff served the subpoena duces tecum on GAB Robins. The log shall contain a notation to that effect for each such document.

By *May 7, 2002,* counsel for the parties shall confer within the meaning of D. Kan. Rule 37.2 and attempt to resolve the parties' dispute regarding privilege issues. In the event the parties are able to resolve their dispute, Plaintiff shall so notify the Court. In the event the parties are unable to resolve their dispute, TCI and Tele-Communications shall, by *May 14, 2002,* file a copy of their amended privilege log and provide to the Court (but not Plaintiff) copies of all documents listed in the amended privilege log for the Court's *in camera* inspection. By *May 14, 2002,* Plaintiff shall file a supplemental brief in support of his Motion to Compel with any arguments he wishes to make regarding the sufficiency of the amended privilege log and the asserted privileges/protection. TCI and Tele-Communications shall have *until May 24, 2002* to respond to Plaintiff's supplemental brief. The Court will defer ruling on all privilege and work product protection issues until such briefing is complete and the Court has reviewed *in camera* the documents provided by TCI and Tele-Communications.

IT IS SO ORDERED.

2002 WL 598331 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

• 2:99CV02026 (Docket) (Jan. 21, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 6th day of July, 2005 by U.S. Mail to:

> David Marriott, Esq.
> CRAVATH SWAINE & MOORE LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019
>
> Donald Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, NY 10604
>
> Todd Shaughnessy, Esq.
> SNELL & WILMER LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, UT 84101-1004