

FILED
U.S. DISTRICT COURT

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>    Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff | **UNSEALED EXHIBITS TO SCO'S REPLY MEMORANDUM IN FURTHER SUPPORT OF RENEWED MOTION TO COMPEL DISCOVERY**<br>**[Docket No. 409]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

# EXHIBIT 2

# ORIGINAL

1

2    IN THE UNITED STATES DISTRICT COURT

3    FOR THE DISTRICT OF UTAH

     --------------------------------x

4                                         CONFIDENTIAL

     THE SCO GROUP, INC., a Delaware

5    corporation,

6              Plaintiff/Counterclaim Defendant,

7              against    Civil No. 2:03CV-0294 DAK

8    INTERNATIONAL BUSINESS MACHINES

     CORPORATION, a New York

9    corporation,

10             Defendant/Counterclaim-Plaintiff

11   --------------------------------x

12

                  CONFIDENTIAL

13

14              STEVEN ALAN MILLS

15              New York, New York

16           Friday, January 7, 2005

17

18

19

20

21

22

23   Reported by:  Steven Neil Cohen, RPR

24   Job No. 169043

25

```
1                    Mills - Confidential
2      your job?
3          A.     Yes.
4          Q.     You receive e-mails as part of
5      your job?
6          A.     Yes.
7          Q.     Do you preserve the e-mails that
8      you send?
9          A.     I do not preserve them.
10         Q.     Do you know if the e-mails that
11     you send are being preserved?
12         A.     I know IBM has an archiving
13     process or system.
14         Q.     Your understanding of that
15     archiving process or system is that
16     preserves e-mails?
17         A.     Yes.  There is a secretary in my
18     office who takes care of that.
19         Q.     The same holds true for e-mails
20     that you receive?
21         A.     It is all part of the same
22     system.
23         Q.     Have you spoken with anyone about
24     the need for preserving e-mails?
25         A.     No.
```

1                    Mills - Confidential

2      the corporate staff heads as well.

3          Q.    Do you speak with Samuel

4      Palmisano?

5          A.    Yes.

6          Q.    Do you speak with Irving

7      Wladawsky-Berger?

8          A.    Yes.

9          Q.    How often did you speak with Mr.

10     Palmisano if you can estimate it?

11         A.    **He is my boss so I am pretty much**

12     **talking to him every week.**

13         Q.    Every day?

14         A.    **No, not everyday.**

15         Q.    How about Mr. Wladawsky-Berger?

16         A.    **A few times a month perhaps;**

17     **depends on what activities are taking**

18     **place.**

19         Q.    Not as often as you speak with

20     Mr. Palmisano?

21         A.    **Again, it would depend upon what**

22     **is happening but generally, no.**

23         Q.    I take it you have had occasion

24     to send e-mails to Mr. Palmisano?

25         A.    Yes.

1                    Mills - Confidential

2        Q.     You have received e-mails from

3    Mr. Palmisano?

4        A.     Yes.

5        Q.     The same holds true for

6    Mr. Wladawsky-Berger?

7        A.     Yes.

8        Q.     You have had occasion during your

9    tenure at IBM to send e-mails regarding

10   Linux?

11       A.     Yes.

12       Q.     You have received e-mails

13   regarding Linux?

14       A.     Yes.

15       Q.     Another very general question but

16   what kind of documents do you review in

17   your current capacity?

18       A.     **Tremendous variability; people**

19   **prepare presentations.  Most things are**

20   **generally done in presentation form as**

21   **opposed to paper form.**

22       Q.     What is the distinction between

23   presentation form and paperwork?

24       A.     **Graphical charts, pictures rather**

25   **than prose.**

# EXHIBIT 3

# freebsd-current

- <-- Thread -->
- <-- Date -->
- Find [_____]

# an announcement about "Next Generation e-business"

ortmann
Tue, 11 Jan 2000 08:46:58 -0800


```
Since this was publically announced I can forward this to the group.
I wish the *bsd's were included.

(Odd text and formatting below is due to Lotus Notes)

- -
Daniel Ortmann, IBM Circuit Technology, Rochester, MN 55901-7829
[EMAIL PROTECTED] or [EMAIL PROTECTED] and 507.253.6795 (external)
[EMAIL PROTECTED] and tieline 8.553.6795 (internal)
[EMAIL PROTECTED] and 507.288.7732 (home)

"The answers are so simple, and we all know where to look,
but it's easier just to avoid the question." -- Kansas


- -------------------- Forwarded by Daniel Ortmann/Rochester/IBM on
01/11/2000 10:42 AM --------------------------

Enterprise Systems Group
Samuel J. Palmisano
_____

From: SJP Comm/Somers/IBM @ IBMUS on 01/10/2000 09:14 AM EST

To:   ESG EMPLOYEES US07 0021, ESG EMPLOYEES US07 0022, ESG EMPLOYEES US07
      0023, ESG EMPLOYEES US08 0001, ESG EMPLOYEES US08 0002, ESG EMPLOYEES
      US09 0001
cc:
Subject:  Next Generation e-business

During the past two-to-three months, we've taken a close look at our server
business and what we need to do to get our momentum back.

Today we're taking a first step by making a significant announcement to
support Linux and the open source movement and to drive the next generation
of the Internet.  We intend to be a leader in our industry by:

    making all of our server platforms Linux ready;
    engaging closely with the Linux community to help Linux evolve; and,
    making IBM technologies available to the Linux and open source
    communities.

This is important news for IBM and for our customers.  Here's why:

Over four years ago, IBM stated that the Internet was about more than just
browsers; it was about a new way of doing business.  Since then, IBM's
leadership and view of e-business have helped transform the world.
```

an announcement about "Next Generation e-business"                           Page 2 of 3

We believe we're now on the brink of another important shift in the
technology world.  The next generation of e-business will see customers
increasingly demand open standards for interoperability across disparate
platforms.  Linux -- a community-developed version of UNIX -- will play a
pivotal role in this.  We will embrace Linux on our server platforms -- and
help it become one of those open standards as a natural extension of our
commitment to e-business and the next generation of the Internet.

To spearhead that work effort, we are creating a new organization, headed
by Dr. Irving Wladawsky-Berger, who has been named vice president,
technology and strategy, reporting to me.  He was general manager, Internet
Division, Software Group.

Irving?s organization will have responsibility for our UNIX software
efforts, advanced architectures and technologies, and IBM's next-generation
Internet strategy.  With IBM as the industry?s e-business leader, there is
no longer the need for a stand-alone Internet Division, since the entire
company has been focused on Internet themes for several years.

As we look to the future, we will continue our aggressive push in the UNIX
marketplace with our industry-leading RS/6000 and NUMA-Q servers, our
award-winning AIX operating system and our efforts to evolve AIX in Project
Monterey.

We believe the long-term growth of the Internet is about common application
platforms that can harness leading-edge technologies and simplify
customers' choices.  We believe Linux will develop into that type of common
platform.  By getting in early and being a key player in the open source
community, IBM will be a leader in working with the industry to advance
Linux into the future and bring our customers into the next generation of
e-business.

This is a long-term play.  Significantly, this is not only about servers.
There is a huge opportunity for services.  For software.  For all of IBM.

So this is one step.  You'll be hearing from me in the next few weeks on
other key initiatives that, in aggregate, will restore our momentum and
help us turn our business around.  Stay tuned.
(Embedded image moved to file: picl0901.pcx)
Senior Vice President & Group Executive
Enterprise Systems Group

You may read more about IBM's Linux activities, RS/6000, NUMA-Q and AIX
successes at http://w3.ibm.com/servergroup

 picl0901.pcx

http://www.mail-archive.com/freebsd-current@freebsd.org/msg08759.html

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.
1993 WL 210012 (D.Kan.)
(Cite as: 1993 WL 210012 (D.Kan.))

Page 1

**C**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.
EMPLOYERS COMMERCIAL UNION
INSURANCE COMPANY OF AMERICA, et al.,
Plaintiffs,
v.
BROWNING-FERRIS INDUSTRIES OF KANSAS
CITY, INC., et al., Defendants.
CIV. A. No. 91-2161-JWL.

April 5, 1993.

MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

*1 Under consideration is defendant Browning-Ferris Industries of Kansas City, Inc.'s (defendant) First Motion To Compel Discovery (doc. 92). Pursuant to Fed.R.Civ.P. 37(a), it seeks an order compelling plaintiff Employers Commercial Union Insurance Company of America (plaintiff) to answer its first set of interrogatories and to produce all documents responsive to its first request for production of documents. Specifically, it seeks full answers to interrogatories 1 through 7, 9, 10, and 12, as well as all documents responsive to the requests. It further seeks "its costs and attorneys' fees incurred in the prosecution of this motion."

Plaintiff lists fourteen general objections to the interrogatories and thirteen to the requests for production. The court will address these objections in the following groups: (1) privileges, work product, and confidentiality; (2) possession; (3) relevance; (4) broadness, vagueness, and ambiguity; (5) undue burden and oppressiveness, (6) policies never issued by plaintiff to defendant; and (7) use of the term "BFIKC Insureds." Generally when responding to the interrogatories and the requests, plaintiff simply referred by number to its list of general objections. At times it elaborated on those general objections. It claims that this procedure "avoid [s] the duplication and repetition of restating [the objections] for each response." It also states that

"the failure to specifically incorporate a general objection should not be construed as a waiver of the general objection." Thus, plaintiff purports to assert or reserve every general objection to every interrogatory and request. The court will not treat merely reserved objections, however, as timely.

Defendant opposes the motion. It argues that plaintiff has not met its burden to show specifically how the discovery requests are objectionable. It contends they are proper and seek relevant information. It states that the "interrogatories are narrow in scope and specifically directed at locating 'lost' policies or portions of policies, locating extrinsic evidence of such policies if they cannot be located, or determining the identity of witnesses with knowledge of the policies." It also claims that the requests for production seek relevant documents.

Plaintiff asserts that its "objections were quite specific, and only those objections which [it] genuinely felt applied to a particular interrogatory were listed by number in response to that interrogatory." It also claims that "[t]he objections were made in good faith." It further asserts

that to the best of [its] information, knowledge, and belief, *all* portions of policies and written information pertaining in any way to policies which may have been issued to any defendant have been produced, with two very limited exceptions: (1) memoranda and handwritten notes of plaintiff's counsel have been excluded or redacted from documents produced; and (2) reinsurance information has been excluded.

*2 It also argues that the documents sought are irrelevant. It claims that this dispute "is governed by specific [insurance] policies which, if in existence, have written terms and conditions which are clear and unambiguous and which speak for themselves."

Although plaintiff may have produced additional information and documents, the court cannot ascertain from the memoranda to what extent, if any, such production satisfies any particular interrogatory or request. In some instances plaintiff contends it has adequately supplemented its answer to an interrogatory by correspondence. The court will not treat a letter as a sufficient supplementation. A party must answer an interrogatory under oath and in the form which facilitates filing with the court. Letters do not comply with these requirements. In deciding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 210012 (D.Kan.)
(Cite as: 1993 WL 210012 (D.Kan.))

the motion, therefore, the court will disregard whatever has been done without compliance with the Federal Rules of Civil Procedure and District of Kansas Rules.

Plaintiff has not substantiated most of its objections. It rarely reveals sufficient facts, moreover, to link its general objections to specific interrogatories or requests for production. "General objections are not useful to the court ruling on a discovery motion." _Chubb Integrated Sys. Ltd. v. National Bank,_ 103 F.R.D. 52, 58 (D.D.C.1984). "Nor does a general objection fulfill plaintiff's burden to explain its objections." _Id._ (citation omitted). "[P]arties ... have a duty to provide true, explicit, responsive, complete and candid answers to interrogatories." _Id._ at 61 (citations omitted). "The 'familiar litany ... overly broad, burdensome, oppressive, irrelevant' will not alone constitute a successful objection to an interrogatory." _Carl I. Brown & Co. v. Mufich,_ No. 90-2135, unpublished op. at 2 (D.Kan. Mar. 25, 1991) (quoting _Roesberg v. Johns-Manville Corp._ 85 F.R.D. 292, 296 (E.D.Pa.1980)). The objecting party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." _Roesberg,_ 85 F.R.D. at 296 (citations omitted). "The court is not required to 'sift each interrogatory to determine the usefulness of the answer sought.' " _Id._ (quoting _Klausen v. Sidney Printing & Publishing Co.,_ 271 F.Supp. 783, 784 (D.Kan.1967)). The guidance provided by the _Roesberg_ case applies to requests for production as well as interrogatories.

The objecting party generally has the burden to substantiate its objections. _See, e.g., Chubb Integrated Sys. Ltd.,_ 103 F.R.D. at 58 (broadness, burdensomeness, and oppressiveness) (citations omitted); _Schapp v. Executive Indus., Inc.,_ 130 F.R.D. 384, 386-87 (N.D.Ill.1990) (relevancy, broadness, and undue burden); _Casson Constr. Co. v. Armco Steel Corp.,_ 91 F.R.D. 376, 384 (D.Kan.1980) (attorney-client privilege). Unless an interrogatory or request for production is objectionable on its face, a bald-faced objection presents an insufficient answer or response.

*3 The court first addresses the objections of broadness, vagueness, and ambiguity. The court does find interrogatories 4, 6(c), 9(d), and 10(c) and (d), as well as request 3 vague, ambiguous, and overly broad on their face. Defendant has used

omnibus phrases such as "relates to," "related to," "relating to," "in connection with," "concerning," or "relevant to" in these discovery requests. "The use of such [terms] often makes [discovery] request [s] indefinite, vague and ambiguous." _Carl I. Brown & Co.,_ No. 90-2135, at 6. "Requests should identify specific documents or categories of items with reasonable precision." _Id._ Interrogatories should likewise identify the specific information sought with reasonable precision. If omnibus phrases modify a sufficiently specific type of information or document, they may survive an objection of ambiguity. If they modify general categories of information or documents, however, they are usually objectionable on their face.

Use of the phrase "relates to" in interrogatory 4 creates objectionable ambiguity to the extent it modifies "(a) The BFIKC insureds," and "(c) what is commonly known as the Doepke-Holliday Site in Johnson County, Kansas." To the extent subpart (d) of interrogatory 4 seeks information or documents concerning subparts (b) and (c), it is also objectionable. The use of similar phrases in interrogatories 3(c), 6(c), 9(d), 10(c) and (d) and request 3 creates objectionable ambiguity as well. The court thus sustains the objections of vagueness, broadness, and ambiguity as to interrogatories 3(c), 4, 6(c), 9(d), 10(c) and (d), and request 3 as stated herein. It overrules such objections as to the other interrogatories and requests.

The court next addresses the objections of relevancy. "Where relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the discovery request." _Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.,_ No. 90-2201, unpublished op. at 3 (D.Kan. July 15, 1991) (citation omitted). When the discovery sought appears relevant, however, "the burden is on the party objecting to show that the discovery is not relevant." _Smith v. MCI Tel. Corp.,_ 137 F.R.D. 25, 27 (D.Kan.1991) (quoting _Pickett v. Bridgestone (U.S.A.), Inc.,_ No. 86-4281 (D.Kan.1988)). "A request for discovery ... should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." _Snowden v. Connaught Lab., Inc.,_ 137 F.R.D. 336, 341 (D.Kan.1991) (citations omitted).

Most of the interrogatories and requests appear relevant on their face. Defendant has adequately shown relevancy for most of the others. Plaintiff repeatedly claims that because this dispute "is governed by specific [insurance] policies which, if in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 210012 (D.Kan.)
(Cite as: 1993 WL 210012 (D.Kan.))

existence, have written terms and conditions which are clear and unambiguous and which speak for themselves," the documents sought are irrelevant. The present case involves more than simply interpreting the language of a given policy as a matter of law. The parties cannot find the policies at issue. If they are not found, the case will apparently involve reconstructing the language of the lost policies. There also appears to be an underlying factual dispute of whether defendant actually issued policies to plaintiffs. Extrinsic evidence is relevant in such cases. *Bankwest v. Fidelity & Deposit Co.*, No. 92-2004, unpublished op. at 4 (D.Kan. Oct. 14, 1992). The mere fact that this case involves interpreting an insurance policy does not necessarily make extrinsic evidence irrelevant. The court will generally determine such relevancy on a case-by-case basis.

*4 "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *MCI Tel. Corp.*, 137 F.R.D. at 27 (citation omitted). As long as "the information sought appears reasonably *calculated to lead to the discovery of admissible evidence*," it does not matter that the information itself would be inadmissible at trial. Fed.R.Civ.P. 26(b)(1). Other than arguments concerning reinsurance agreements, plaintiff has not substantiated its objections of irrelevance. The court, therefore, overrules such objections as unsupported, except as to Interrogatories 2(b), and 7(c) and (d).

Plaintiff claims that information on reinsurance is irrelevant, "[b]ecause reinsurance has nothing to do with the interpretation and application of the alleged insurance polices at issue ... nor the parties' alleged negotiation of such alleged policies." It cites one unpublished opinion in support of this proposition, but fails to attach a copy of that opinion in accordance with D.Kan. Rule 112(b). The court, therefore, will not consider it. Although courts disagree as to the relevancy of reinsurance agreements, *compare National Union Fire Ins. Co. v. Continental Ill. Corp.*, 116 F.R.D. 78, 83 (N.D.Ill.1987) (finding relevance under Fed.R.Civ.P. 26(b)(1) and (2)) *with Rhone-Poulenc Rorer Inc.*, 139 F.R.D. at 612-13 (finding such agreements irrelevant even under Fed.R.Civ.P. 26(b)(2)), a case on point states that "information concerning reinsurance should be discoverable in order to attempt to reassemble the terms of the original contract *which is now unavailable.*" See *Leksi, Inc.*, 129 F.R.D. at 106

(emphasis added).

Plaintiff's attempt to distinguish this case lacks persuasion. It claims that the case only "carved out a very narrow exception to the rule that reinsurance information is not discoverable." It argues that discovery is allowed only when "a lost policy was the subject of a facultative reinsurance certificate which may help reconstruct the lost policy." In reality, the *Leksi* court stated that "[i]f the unavailable policy has been the subject of a facultative reinsurance certificate in the past, then it is not overly burdensome for the ... insurer to provide [the] information." *Id.* This language does not restrict relevancy to a particular kind of reinsurance. It merely clarifies when production of such relevant information may be unduly burdensome. The court finds the request for reinsurance information reasonably calculated to lead to the discovery of admissible evidence. To date the parties have not found the policies in question. The court overrules the objections of irrelevancy.

The court next addresses the objections of undue burden and oppressiveness. "Once a party has requested *discovery*, the burden *is on the party* objecting to show that responding to the discovery is unduly burdensome." *Snowden*, 137 F.R.D. at 332 (citation omitted). Plaintiff does not carry that burden. It does not purport to rely on the statement in *Leksi* to support its objections of undue burden. It merely mentions facultative reinsurance certificates to distinguish *Leksi* on grounds of relevancy. It did not refer to them to show undue burden.

*5 Plaintiff also contends its record-keeping system precludes locating much of the requested information without resorting to manual searching. It says that its "claim files are not grouped according to subject matter (i.e. environmental), are not filed under the named [sic] of the purported insured, and are not filed by policy year." It argues that manually searching all of its claim files nationwide is "an unbelievably and overwhelming task."

"The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself require denial of the motion." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2214, at 647-48 (1970) (citations omitted). "The fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, [sic]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 210012 (D.Kan.)
(Cite as: 1993 WL 210012 (D.Kan.))

Page 4

is not a sufficient reason to prevent disclosure of otherwise discoverable material." *Snowden,* 137 F.R.D. at 333 (citations omitted). "An objection must show specifically how an interrogatory [or request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Chubb Integrated Sys. Ltd.,* 103 F.R.D. at 59-60 (citations omitted). "In making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information." *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436, 438 (D.Kan.1987) (citing *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir.1975)). "[D]iscovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." *Snowden,* 137 F.R.D. at 333 (quoting 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2214, at 647-48 (1970)).

Plaintiff has submitted no affidavit or other proof to show that the requested production of documents would be unduly burdensome. Nor has it otherwise shown undue burden from anything of record. Mere assertions in argument that its record-keeping system prevents production without undue burden do not suffice. The court declines to speculate on this point. The scales of justice will generally weigh in favor of the production of relevant documents when weighed against mere conjecture of undue burden. The court has determined that the requested documents are relevant. Plaintiff has not shown undue burden. The court, therefore, overrules such objections.

The court further notes that Fed.R.Civ.P. 33(c) provides the option to produce business records from which defendant can obtain the information sought by the interrogatories. Plaintiff thus has the opportunity to shifting to defendant the burden of searching for the responsive answers from the business records. The rule thus contemplates that discovery may be time-consuming and burdensome, but allows a party to shift such burden to the opponent when it would be substantially the same for either of them.

*6 The court also overrules the objections based on privilege, work product, and confidentiality. Plaintiff has not substantiated them. It "has the burden to show that the requested documents are work product or privileged." *Lundak v. Kittel,* No. 92-2239, unpublished op. at 4 (D.Kan. Sept. 24, 1992) (citing *Casson Constr. Co.,* 91 F.R.D. at 384).

It has failed to meet that burden. It has also not shown any material to be confidential or trade secrets.

The court also overrules the objections of plaintiff that it is not in possession or control of certain information or documents sought. The court recognizes a party cannot produce something, if it has no possession, custody, or control of it. In this case, however, plaintiff has not adequately shown that it lacks possession, custody, or control of anything. It merely poses its objection in hypothetical terms: "[Plaintiff] objects to the interrogatories [and requests] to the extent that they seek documents that are not within the [its] possession." Plaintiff does not identify any specific documents that are beyond its possession or control. It merely asserts the objection generally and then references it by number in all of the specific objections at issue. Again it fails to carry its burden.

The court finds no merit in the objections that plaintiff never issued policies to defendant and against use of the term "BFIKC Insureds." Plaintiff contends that it "has no information, evidence or belief that it ever issued policies of insurance to Browning-Ferris Industries of Kansas City, Inc. or Browning-Ferris Industries, Inc." It therefore objects to "any interrogatory [or request] which includes within its scope these entities." It "objects to the use of the term 'BFIKC Insureds' on the ground it assumes as true a disputed factual issue, that is, whether or not any of the parties so designated were, in fact, insured by [plaintiff]." Plaintiff, by these objections, is contesting the merits of the case. Inclusion of these entities or the use of the term "BFIKC Insureds" does not make the interrogatories or requests invalid. Accordingly, the court overrules them.

In summary, the court sustains in part and overrules in part defendant Browning-Ferris Industries of Kansas City, Inc.'s First Motion To Compel Discovery (doc. 92). Within twenty days of the date of this order, plaintiff Employers Commercial Union Insurance Company of America shall fully answer all interrogatories of defendant's first set of interrogatories, except 2(b), 3(c), 4, 6(c), 7(c), 8, 9(d), 10(c) and (d), and 11, as directed herein. It shall also produce all responsive documents to requests 1 and 2 of defendant's first request for production of documents. Production shall occur at the law offices of defendant located at 2600 Mutual Benefit Life Building, 2345 Grand Avenue, Kansas City, Missouri 64108, or at any other place the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 210012 (D.Kan.)
(Cite as: 1993 WL 210012 (D.Kan.))

Page 5

may agree.

IT IS SO ORDERED.

1993 WL 210012 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

.             2:91CV02161             (Docket)
(May. 08, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

Page 1

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Joanne FLYNN, Plaintiff,
v.
GOLDMAN, SACHS & CO., Defendant.
**No. 91 Civ 0035 (KMW).**

Nov. 1, 1991.

*MEMORANDUM OPINION AND ORDER*

BARBARA A. LEE, United States Magistrate
Judge.

**\*1** This action alleging sex discrimination in
violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § § 2000e, *et seq.,* was referred for pretrial
supervision by Order of Reference entered March 28,
1991.

Presently before me are plaintiff's motion for an
order pursuant to Rules 37(a) and 26(c),
Fed.R.Civ.P., compelling document production and
depositions by defendant and other relief; and
defendant's motion for an order setting a schedule for
its proposed motion for summary judgment and
limiting plaintiff's discovery to document production
pending the hearing and determination of the motion.
For the reasons discussed below, plaintiff's motion is
granted; defendant's motion is denied; and plaintiff
is awarded the reasonable expenses, including
attorneys' fees, incurred in making her motion and
opposing defendant's motion.

*BACKGROUND*

A pretrial conference was held before me on May
14, 1991 at which certain outstanding discovery
disputes were resolved. [FN1] As to other disputes
referred to at the conference, counsel were directed to
comply with my informal procedures for resolution
of discovery disputes, which were explained in detail.
August 31, 1991, was set as the deadline for
completion of discovery (unless an extension for
good cause shown were requested by August 16),
with the customary direction that dispositive motions

be made 30 days after completion of discovery.
When it appeared that, despite six weeks of
correspondence, counsel were unable either to
comply with the conference requirement or to agree
on a joint letter defining the issues in dispute, I
directed that the matters in dispute be submitted by
formal motion pursuant to Rule 26(c) or 37(a),
Fed.R.Civ.P. The discovery deadline was
simultaneously extended until the next scheduled
pretrial conference, "at which time plaintiff's request
for a further extension will be considered." [FN2]

*DISCUSSION*
I. *Plaintiff's Motion to Compel Discovery.*

The record on this motion is disproportionately
voluminous relative to the discovery issues in
dispute. Although I have read all papers submitted,
this decision is based principally on (1) the facts
stated in the moving and opposing affidavits; [FN3]
(2) the text of plaintiff's Rule 34 Request dated
January 23, 1991 and defendant's response thereto
dated March 1, 1991; [FN4] and (3) plaintiff's notice
of defendant's deposition pursuant to Rule 30(b)(6),
as amended by letter dated February 14, 1991. [FN5]
Most of the other exhibits included in the moving and
opposing papers are copies of correspondence
between counsel staking out their positions with
increasingly vivid adverbs and adjectives. The
documentation of who said what to whom and in
what tone of voice has no bearing on whether
plaintiff is entitled to any of the discovery to which
defendant objects or whether any of defendant's
objections have merit, although, as discussed below,
it is relevant to the award of expenses pursuant to
Rule 37.

A. *Plaintiff's Rule 34 Request.*

**\*2** 1. Defendant's objections on grounds of
relevance, confidentiality, privilege, time period
covered and the assertion that plaintiff's requests are
"overly broad and unduly burdensome" are unrivaled.

*Relevance.* The mere assertion that documents
requested are irrelevant is not an adequate response
under local Civil Rule 46(e), which requires that all
objections be stated with "specificity." *Factor v.
Mall Airways,* 105 F.R.D. 52, 54 (S.D.N.Y.1990).
At the discovery stage, doubts about relevance should
ordinarily be resolved in favor of production in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

Page 2

first instance; if material really is irrelevant, it will be inadmissible at trial and little harm can flow from discovery except the expense of production, which can be shifted to the discovering party upon motion in appropriate circumstances. [FN6] Here, it clearly appears that documents of unquestioned relevance have been withheld or redacted solely on the basis of defendant's unilateral and self-serving determinations of relevance. For example, defendant has declined to produce requested records relating to four male employees of the personnel department who were promoted to vice-president prior to plaintiff; [FN7] documents pertaining to the persons considered for the position of Assistant Manager of Personnel in 1986, to which Jake Weiss, a male who plaintiff contends was not qualified for such position, was appointed; [FN8] and documents pertaining to defendant's hiring of Doris Smith in 1988 (which plaintiff alleges resulted in her termination), specifically including Smith's compensation and the contemporaneous notes of plaintiff's termination. [FN9] The relevance of the examples given to plaintiff's claim of sex discrimination is obvious and, like the thirteenth stroke of the clock that cast into doubt all that went before, warrants overruling of all of defendants objections on grounds of relevance.

*Confidentiality.* The asserted "confidentiality" of relevant business records, including personnel files, is not a basis for refusing production, although the widespread practice of stipulating to confidential treatment of such materials has been approved, with certain limitations, in this Circuit. *See In re Agent Orange Product Liability Litigation*, 821 F.2d 139 (2d Cir.1987). Since such a stipulation has already been executed in this case, it is difficult to understand why production of documents that may be entitled to confidential treatment are being delayed. Any document as to which defendant claims confidential treatment shall be so treated unless the court upon motion orders otherwise. The burden is on the party claiming confidentiality to establish good cause for such treatment in accordance with Rule 26(c). *See Litton Industries v. Lehman Bros. Kuhn Loeb Inc.*, 132 F.R.D. 433, 436 (S.D.N.Y.1988).

*Privilege.* Defendant's response to plaintiff's rule 34 request is prefaced by a series of "general objections" including a purported objection to "each and every request of the Document Request to the extent that it seeks the production of documents ("privileged documents") that are protected by various privileges or immunities, including the attorney-client privilege and the attorneys' work-product immunity." [FN10] If the imposition of such blanket objections is ever

permissible under Rule 26(g) as amended in 1983, it is improper here, because the quoted objection is so clearly violative of the express requirements of local Civil Rule 46(e)(2). No schedule of documents claimed to be privileged is attached to defendant's response; nor does any such document appear to have been served at any time. All objections on grounds of privilege are accordingly overruled by virtue of defendant's failure to comply with the applicable local rule.

*\*3 Time period covered by document request.* The "Instructions" prefacing plaintiff's document request recited that, unless otherwise provided, "each document request encompasses the period from January 1, 1980 to and including the date of this [sic] response"--a period of more than eleven years. [FN11] Defendant countered that it "deems the Document Request to cover only the period January 1, 1985 through March 7, 1989." [FN12] The earliest act of discrimination alleged in plaintiff's complaint is in 1986. It is undisputed that she was terminated on March 7, 1989. This action was commenced January 2, 1991. At the conference, I ruled that discovery be limited, in the first instance, to the period of five years prior to plaintiff's termination rather than the broader period requested by plaintiff. Had defendant contended that that ruling was clearly erroneous or contrary to law, it could have requested the entry of a written order and filed objections thereto in accordance with 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed.R.Civ.P. It did neither. Instead, it continued to apply its unilateral determinations of the relevant time period to individual categories of documents. Specifically, although inconsistent with its own prior position and in direct contravention of my May 14 ruling, defendant now attempts to limit document production to the 300-day period preceding the filing of plaintiff's charge with the EEOC. [FN13] The oral ruling on May 14 is hereby reduced to a written order: unless a particular document request expressly refers to a shorter period of time, defendant shall respond to plaintiff's Rule 34 request by producing all responsive documents generated or dated between March 7, 1984 and March 7, 1989. Any further attempts by defendant's attorneys to restrict production to shorter periods may result in a certification pursuant to 28 U.S.C. § 636(e).

*Burdensomeness and related issues.* The ritual use of language such as "overly broad and burdensome" in boilerplate "general objections" to document requests raises no meaningful issue, and affords no legally sufficient basis for refusing to produce

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 3
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

documents within the scope of the request. *See AT &
T v. New York City Human Resources Adm.*, 1991
WL 79461 at * 5 (S.D.N.Y.1991) and authorities
there cited.   There is nothing in the record on this
motion to suggest that retrieval of the narrow
categories of documents specifically described in
plaintiff's Rule 34 request would present any
particular difficulty, much less unreasonable
hardship.   It is abundantly clear from the affidavits
submitted in opposition to the instant motion that
defendant is able to identify the documents called for.
Responses to discovery are always "burdensome"; if
the burden is demonstrated to be excessive in relation
to the relevance of the documents, the court can shift
the costs after production upon an appropriate
showing.

2. If defendant contends that a particular document
or group of documents called for by plaintiff's Rule
34 request, including but not limited to those
discussed in the Neschis and Flynn Declarations,
does not exist or cannot be located, the following
procedure is to be followed:  Defendant must (within
the time prescribed by ¶ 3 of this Order for
production of documents) serve upon plaintiff's
counsel an affidavit or affidavits on personal
knowledge [FN14] executed by the employee or
employees of defendant who have searched
defendant's files, describing with particularity how it
was determined that no responsive documents exist.
An attorney affidavit will not suffice as to any
matters not within the direct personal knowledge of
the attorney. [FN15] Plaintiff is not required to
further identify any specific document(s) she believes
may exist.   If, during discovery (including the
deposition of any person) or at trial, it appears that
documents called for by the Rule 34 Request exist
and have not been produced, plaintiff may move at
that time, consistent with Rule 11, for appropriate
relief.

*4 3. Document production pursuant to this order
(including the service of any affidavits pursuant to ¶
2) is to be completed by December 2, 1991, unless
that date is extended by court order for good cause
shown.  Any disputes regarding compliance with this
order are to be brought on by motion pursuant to
Rule 37(b) served and filed no later than December
16, 1991, returnable in accordance with local Civil
Rule 3, except that no memoranda of law are to be
filed unless directed by court order.

B. *Defendant's Deposition.*

Plaintiff's Notice of Deposition, as amended

February 14, 1991, is in compliance with Rule
30(b)(6).  If no one person has personal knowledge
of all the subject matter specified by plaintiff, more
than one person must be produced by defendant.

C. *Scheduling of Depositions.*

The depositions of plaintiff and defendant are to be
held at times and places to be agreed upon by counsel
and concluded no later than January 31, 1992. The
date fixed by this Order shall be extended (1) if the
date for production of any documents is hereafter
extended by court order for good cause shown, for a
like period;  or (2) if objections to this Order are
filed, until 30 days after production of such
documents as may be directed upon disposition of
such objections by the district judge.   Failure of
defendant to make timely production of documents
may warrant sanctions, but shall not constitute a basis
for either party's refusal to go forward with
depositions as directed.

II. *Defendant's Motion to Stay Discovery.*

On March 12, 1991, defendant's attorney wrote to
Judge Wood, requesting a pre-motion conference to
discuss a motion for summary judgment, "[b]ecause
the most superficial examination of the events giving
rise to Ms. Flynn's claims exposes their lack of
veracity." [FN16]

The request has not yet been granted and the Order
of Reference for pretrial supervision was thereafter
entered on March 28.

At the initial conference held before me pursuant to
the Order of Reference, I noted that a motion for
summary judgment was not an appropriate vehicle
for raising issues of credibility, and that discovery
would not ordinarily be stayed for such a purpose.
Because counsel were required to comply with my
informal procedures for resolution of discovery
disputes before any of the matters in dispute could be
ruled on, I did not expressly deny defendant's
application for a stay of discovery at the May 14
conference. [FN17]

Defendant's moving papers set out no factual or legal
basis for a stay of discovery pending a motion for
summary judgment.   It states that its motion will be
based on the "statement of position" submitted to the
EEOC (essentially a brief by its counsel, in letter
form). [FN18]   That document on its face raises
many questions of fact which appear incapable of
resolution by motion for summary judgment.   For

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

example, counsel asserts, among other statements of fact, that "Ms. Flynn was terminated because Ms. Smith ... found herself unable to repose in Ms. Flynn the confidence necessary to keep her on as her principal assistant"; [FN19] that defendant specifically denies plaintiff's assertion that upon appointment as Acting Manager on January 5, 1988, she "assumed greater responsibilities and duties than the former manager"; [FN20] and that her specific charges concerning her termination are "fundamentally dishonest." [FN21] These issues going to the state of mind and intention of various persons are for the trier of fact. *Cf. Yanis v. Arnot-Ogden Mem. Hosp.*, 891 F.2d 51 (2d Cir.1989 (summary judgment reversed where issues was employee's reliance on statements of employer). Plaintiff is entitled to discovery on these and all other issues of fact in this action before the court's time is taken up with premature motion practice.

*5 Defendant's attempt to limit the scope of plaintiff's discovery to what defendant has unilaterally determined to be necessary to oppose a motion for summary judgment is without foundation in law or fact, and totally unjustified in the circumstances of this case. While a motion for summary judgment may be entertained before discovery is complete in cases where pure questions of law, such as qualified immunity or statute of limitations, may be dispositive, this is not such a case. Indeed, defendant does not suggest that its proposed motion for summary judgment will turn on any issue of law; it admits that the issue will be the "veracity" of plaintiff's complaint. In these circumstances, the obstacles to plaintiff's legitimate discovery requests interposed by defendant, culminating in the instant motions, are frivolous.

III. *Expenses.*

Rule 37(a)(4) provides in pertinent part:

(4) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or

the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Neither defendant's motion nor its opposition to plaintiff's motion was "substantially justified"; on the contrary, they appear on their face to have been interposed solely for purposes of obstruction and delay, while also increasing the cost to plaintiff of pursuing this action. If plaintiff's claim is indeed as insubstantial as defendant contends, defendant's able and experienced counsel should be able to defeat it on the merits without the time, effort and expense of the unfounded objections and unreasonably protracted procedures reflected in these motion papers. Nor are there, on this record, any "other circumstances" that would "make an award of expenses unjust." An award of expenses to plaintiff in accordance with Rule 37(a)(4) is accordingly mandatory.

Plaintiff shall submit affidavit(s) evidencing her reasonable expenses, including attorneys' fees, by November 15, 1991. Opposing affidavit(s) shall be served and filed by December 2. Either party may request an evidentiary hearing by letter received in chambers (Room 121, U.S. Courthouse) no later than December 9, specifying the issues of fact on which the hearing is sought and why they cannot be resolved on the papers filed. Claims for attorneys' fees must be documented in accordance with the requirements of *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir.1983).

IV. *Future Conduct of Discovery.*

*6 Because of the inability or unwillingness of counsel to comply with my informal procedures for resolution of discovery disputes in the past, it is appropriate both to modify those procedures to prevent future abuse and to embody them in a written order, violation of which may subject the offender to preclusive sanctions pursuant to Rule 37(b) or (d), as well as other remedies prescribed by law, including but not limited to 28 U.S.C. § 1927 and 28 U.S.C. § 636(e). *See generally Apex Oil Co. v. The Belcher Co.*, 855 F.2d 1009, 1019-20 (2d Cir.1988).

A. *Depositions.*

1. There shall be no instructions not to answer on

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

grounds other than privilege. All other objections, including objections to relevance, are to be briefly noted on the record and the question answered subject to objection. Arguments or colloquy between counsel and "speaking" objections are to be avoided.

2. Disputes regarding privilege, procedure at depositions, or non-compliance with the portions of this Order relating to depositions shall be submitted by telephone conference, which shall be recorded in its entirety by the reporter recording the deposition. In the event that I am unavailable when the telephone call is placed, counsel will be told when to call back and in the meantime are to proceed to other matters. If only disputed matters remain to be covered, the deposition may be briefly recessed until the appointed time.

3. Under no circumstances may a party or witness unilaterally terminate or interrupt a deposition.

4. A motion to terminate or limit a deposition for which there is a factual and legal basis pursuant to Rules 11 and 30(d), Fed.R.Civ.P., may be made by telephone conference in the first instance. The reporter's notes of the proceedings to that point must be available to be read upon the request of the court. The contention of a party that a deposition questions have been unnecessarily lengthy, repetitive, or otherwise improper shall not be a basis for termination or limitation of the examination unless the questions have been answered up to the point of the application.

5. If a non-party witness is represented by independent counsel, a copy of Part IV A of this Memorandum Opinion and Order shall be served upon such counsel a reasonable period of time in advance of the deposition.

B. *Other Discovery.*

1. Any discovery disputes other than those relating to depositions shall be submitted for judicial resolution only after the parties have conferred in a good faith effort to resolve or narrow the dispute. The attention of counsel is directed to *Apex Oil Co. v. Belcher Co. of New York*, 855 F.2d at 1019-20.

2. The requirement of informal submission by joint letter is rescinded. Any disputes that cannot be resolved by conference shall be submitted by motion in accordance with the requirements of Rules 11, 26, and 37(a) or (b), Fed.R.Civ.P. and local Civil Rule 3. The time periods specified in local Civil Rule 3(c)(1)

shall not be varied by agreement of counsel without the advance approval of the court by written order, which will not be entered except for good cause shown by affidavit upon personal knowledge. Motions may be returnable on any business day and there is to be no appearance by counsel on the return day. If oral argument is to be heard, counsel will be notified of the date.

C. *Schedule for Completion of Discovery.*

*7 1. All discovery shall be completed by February 28, 1992, unless this Order is amended by the court upon application of a party by motion for good cause shown by affidavit(s) on personal knowledge. The convenience of counsel, the press of other business, or the failure of counsel promptly to submit discovery disputes for resolution in accordance with this Order shall not constitute good cause.

2. Any motion for summary judgment shall be made, returnable before Judge Wood in accordance with her individual rules, no later than 30 days after completion of discovery.

3. All dates set by this Order shall be tolled by the filing of any objections pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Fed.R.Civ.P. and for ten days after the entry of an Order determining any such objections.

IT IS SO ORDERED.

FN1. Counsel were directed to execute a stipulation within one week regarding production of documents claimed to be "confidential." This direction was thereafter complied with. In addition, the time period covered by plaintiff's Rule 34 request was limited to the five-year period prior to the date of plaintiff's termination. No written order reflecting that ruling was entered because neither party requested one.

FN2. Memorandum (endorsed) entered August 13, 1991. The conference was originally scheduled for September 17 and thereafter adjourned without fault of either counsel, because of a conflict with a criminal matter and later because of my illness. In light of the disposition of the pending motions and the new discovery deadline set by this Order, it does not appear necessary to schedule a further conference unless new disputes arise.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

Page 6

FN3. Declaration of Janet C. Neschis dated September 13, 1991 ("Neschis Decl.") and Declaration of Joanne Flynn ("Flynn Decl.") dated September 12, 1991, in support; Affidavit of T. Truxtun Hare sworn to September 26, 1991 ("Hare Aff.") and Affidavit of Elizabeth A. Sirianni sworn to September 25, 1991 ("Sirianni Aff.") in opposition.

FN4. Exhibits C and I, respectively, to Neschis Decl.

FN5. Exs. D and G to Neschis Decl.

FN6. The shifting of expenses is not automatic merely because the party producing documents raises issues as to their relevance, but may be appropriate where the unavoidable burden and expense to the producing party substantially outweighs the putative relevance of the material produced. A party seeking such reimbursement will be required to show that the expenses incurred were both reasonable and necessary in the circumstances, and that efforts were made to minimize such expenses. Any such motion must of course be made in compliance with Rules 11 and 26, after the production has occurred and there is an adequate record of the extent of the production and the expense involved.

FN7. See Neschis Decl. ¶ ¶ 21, 40.

FN8. Id. ¶ ¶ 21, 50-52.

FN9. Id. ¶ ¶ 21, 53-54.

FN10. Ex. I to Neschis Decl. ¶ 2, p. 2.

FN11. Ex. C to Neschis Decl. ¶ 3, p. 1.

FN12. Ex. I to id., unnumbered paragraph following ¶ 3, p. 2.

FN13. See Neschis Decl. ¶ 39. Since my ruling was not reduced to a written order, sanctions for violation are not appropriate, in this instance. See Factor v. Mall Airways, 131 F.R.D. at 55-56.

FN14. Wherever in this decision an "affidavit" is required, a declaration

pursuant to 28 U.S.C. § 1746 will suffice.

FN15. The Hare and Sirianni Affidavits submitted in opposition to this motion do not satisfy the requirements of this paragraph. Plaintiff's Declaration describes in some detail, from personal knowledge, documents which plaintiff believes exist but that have not been produced. Defendant's attorney, who does not pretend to personal knowledge, labels these factual allegations "ignorance and falsehoods" and "defamatory," Hare Aff. ¶ 4, without directly controverting them. Defendant's Vice President Siriani, who describes herself as "the employee of Goldman Sachs principally responsible for assisting Sullivan & Cromwell in connection with the production of documents in this case" and describes herself as "currently in charge of the personnel folders whose contents are at issue in this litigation," Siriani Aff. ¶ ¶ 1, 3, asserts with careful qualification that "all documents that defendant's counsel has instructed us to search for have been searched for exhaustively." Id. ¶ 13. In view of defendant's counsel's definitions of "relevance," discussed above, this assertion falls far short of describing an adequate search. In addition, Sirianni's affidavit is noteworthy for its narrow focus on whether disputed documents were part of personnel folders, rather than on whether they exist (see, e.g., ¶ ¶ 9, 10, 12)

FN16. Ex. F to Affidavit of John F. Cannon sworn to September 13, 1991 ("Cannon Aff.") at 2.

FN17. In one of the many letters between counsel with which this record is overburdened, defendant's attorney T. Truxton Hare apparently construed my remarks at the conference quite differently, arguing

FNAt the pre-trial conference before Magistrate Judge Lee on May 14, I understood the court to be generally persuaded by defendant's argument that it should not be burdened by unnecessary discovery before being allowed to bring a motion for summary judgment, and that it was appropriate to limit discovery, at least in the first instance, to that which would be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1991 WL 238186 (S.D.N.Y.)
(Cite as: 1991 WL 238186 (S.D.N.Y.))

Page 7

reasonably necessary to allow plaintiff to defend against defendant's case-dispositive motion. I believe it was to that end that she scheduled discovery to conclude by the end of August and designated September as the time for the defendant to bring on its case-dispositive motion.

FNExhibit L to Neschis Decl. at 2-3. The quoted passage is illustrative of the intransigent attitude evidenced by defendant's counsel at the conference and in the events that preceded the filing of the instant motion.

FN18. Ex C to Cannon Aff.

FN19. *Id.* at 2; *see also id.* at 15-16.

FN20. *Id.* at 9.

FN21. *Id.* at 18.

1991 WL 238186 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

1:91CV00035 (Docket) (Jan. 02, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

Page 1

# H

### Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
BLANCHARD AND COMPANY, INC., Herbert
Davies, and James F. Holmes
v.
BARRICK GOLD CORPORATION, J.P. Morgan
Chase & Company, and ABC Companies
No. Civ.A. 02-3721.

Nov. 29, 2004.
Dec. 1, 2004.
Gladstone N. Jones, III, Peter Newton Freiberg, Jones, Verras & Freiberg, LLC, Stephen H. Kupperman, Mark Joseph Fernandez, John W. Joyce, Michael Joseph Haskell, Barrasso Usdin Kupperman, Freeman & Sarver, LLC, New Orleans, LA, Spiro J. Verras, Jones, Verras & Freiberg, LLC, Tampa, FL, for Plaintiffs.

David George Radlauer, Corinne G. Hufft, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, Alexander McVoy McIntyre, Jr., Amelia Williams Koch, Adam Bennett Zuckerman, Baker Donelson Bearman Caldwell & Berkowitz, PC, New Orleans, LA, James Hazen Ripley Windels, Paul Spagnoletti, Glen Alexander Kopp, Anne Burton-Walsh, Davis, Polk & Wardwell, New York, NY, Davis B. Allgood, Jones, Walker, Waechter, Poitevent, Carrere & Denegre LLP, Baton Rouge, LA, Mark D. Wegener, Edward Han, Edward B. Schwartz, Howrey, Simon, Arnold & White, LLP, Washington, DC, for Defendants.

BERRIGAN, J.

*1 Before the Court is Plaintiff Blanchard's Motion for Review of the Magistrate Judge's October 1, 2004 Order denying Plaintiff's Motion to Compel Barrick Gold Corporation to produce documents containing communications between Barrick and two gold industry groups, the World Gold Council ("WGC") and the CPM Group ("CPM"). (Rec.doc. 198, p. 13).

The background and substantive allegations in this case have been summarized in several prior orders by this Court and memorandums from the parties. The instant motion arises from three paragraphs in Blanchard's Third Supplemental and Amended Complaint that deal with Barrick's communications with WGC and CPM. (Rec.doc. 73). The allegations at issue are as follows:

15. Because of the extraordinarily favorable terms of its derivative transactions with J.P. Morgan, which virtually eliminate the risk of loss, Barrick can afford to manipulate the price of gold *upward* (1) by reducing its short positions, which add demand or reduce supply; (ii) by making negligently or deliberately false or misleading statements that supposedly communicates its bullish prognoses and plans for gold and its intention to make changes to its short positions that would serve to reduce physical supply; (iii) by sponsoring investment representations for gold by the World Gold Council which Barrick, because of its own activities, knows to be false or misleading; and (iv) by sponsoring the publication of bullish statistical data about gold's supply/demand fundamentals that Barrick knows to be false because of Barrick's own trading activities.

21. The statistical data on gold's supply and demand fundamentals are hopelessly flawed since they do not include thousands of tonnes of physical supply added to the market by short sales of gold made by Barrick and other gold producers. In their 2002 *Gold Survey*, CPM Group said that the "hedging programs" utilized by Barrick and other gold producers consist almost exclusively of paper transactions that do not increase current supply when they are initiated and do not depress the price of gold. CPM Group's conclusions, and the statistical data that they publish each year based on those conclusions, are utilized by gold investors, analysts, central banks, mining companies, institutional investors and governments throughout the world.

22. Barrick knows that CPM Group's statistics are wrong, knows that Barrick's own trading activities make them wrong, but sponsored the very reports in which CPM Group's erroneous data were disseminated to the public in 2002 and 2003

The Magistrate Judge, in his October 1 Order, characterized paragraph 15, 21, and 22 as "relat(ing) to Barrick's alleged 'sponsorship' of data and statements by these entities." (Rec.doc. 198, p. 12).

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

With Discovery Requests 20, 21, and 26, Plaintiff essentially requested "any and all documents and other communications between Defendant and CPM Group or Jeffrey Christian and between Barrick and the World Gold Council" as well as "any and all documents and other communications between Barrick and CPM Group advising that statistical data on gold supply and demand fundamentals published annually by CPM Group did not include the physical supply of gold added to the market by Barrick's forward sales of gold." (Rec.doc. 235, p. 3). Defendant protested that these requests for production go beyond the scope of the allegations that deal with CPM and WGC. In other words, Defendant argued that *not all* communications are relevant to Barrick's "sponsorship" of data and statements by these entities. The Magistrate Judge, it can be inferred, essentially agreed, and permitted Defendant to produce only those documents "sufficient to address the issues inherent in plaintiff's third supplemental and amended complaint." (Rec.doc. 198, p. 13).

*2 Plaintiff claims that the Magistrate Judge's Order *was clearly erroneous for three reasons: 1) it was* unable to consider documents only recently uncovered in Defendant's document production, which establish the relevance of the information sought; 2) it incorrectly accepted Defendant's argument that the complaint alleged a limited relationship between Barrick and CMP and WGC; and 3) it incorrectly held that Plaintiff's request for information was not relevant despite that fact that Barrick and Morgan found it so relevant that they propounded nearly identical requests on Plaintiff. (Rec. doc. 209, p. 4; 237 p. 4). Defendant reiterates that it is required only to produce, and has produced, "all documents relating to both financial support of either entity, and any communications regarding CPM and WGC statements and reports *that are the subject of the complaint.* (Rec.doc. 235, p. 2) (Emphasis added). In contrast, Plaintiff contends that Defendant should submit, or state unequivocally that it has submitted: 1) all communications between CPM and Barrick; 2) all documents relating to financial support by Barrick of CPM or of WGC; 3) all communications that relate in any way to the WGC's representations, reports, or statements regarding gold supply, investment demand, hedging and hedging programs, the impact of hedging and hedging programs on gold prices, and the liquidity or illiquidity of the spot gold market; *and* 4) all communications with the WGC pertaining to this lawsuit or any of the allegations contained in the lawsuit. (Rec.doc. 237, Ex. A).

*Standard of Review*

A district court may only reverse a magistrate judge's ruling where the court finds the ruling to be "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *Castillo v. Frank,* 70 F.3d 382 (5th Cir.1995). "This highly deferential standard requires the court to affirm the decision of the magistrate judge unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.' " *Benoit v. Nintendo of America,* 2001 WL 1524510 *1 (E.D.La.2001), citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A motion to review is appropriate when a magistrate judge has obviously misapprehended a party's position, the facts, or the applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Gaffney v. U.S. Dep't of Energy,* 2000 WL 1036221, at *2 (E.D.La. July 25, 2000) (Berrigan, J.)

*Analysis*

The issue raised before the Court is whether the Magistrate Judge was in clear error to find that Defendant must produce only the documents and communications that address Defendant's alleged "sponsorship" of data and statements by CPM and WGC. The Court is troubled by Plaintiff's allegations that Defendant produced documents that tend to indicate Defendant's substantive input into information disseminated by CMP and WGC *after* Plaintiff's filed its motion to compel and *not even in response* to that motion. [FN1] Exhibits D and E in Plaintiff's Motion for Review, in particular, tends to demonstrate substantive input by Defendant relevant to the issue of Defendant's sponsorship of statements by CPM and WGC. (Rec.doc. 209, Ex. D, E). Defendant points out that Plaintiff's possession of such documents proves that Plaintiff already has that which it seeks. (Rec.doc. 235, p. 7). However, if Plaintiff is correct in its claim that these documents turned up in paperwork produced pursuant to discovery requests other than 20, 21, and 26, then the Court shares Plaintiff's concern that Defendant has not provided all relevant documents, but has instead limited its production to documents which Defendant finds relevant according to its own interpretation of Plaintiff's complaint in paragraphs 15, 21, and 22. While it can be inferred that the Magistrate Judge agreed with Defendant's interpretation of which documents and communications are and are not relevant to the allegations of "sponsorship," neither

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

Page 3

party makes it clear in their briefs whether the Magistrate Judge was aware of late-produced documents such as Exhibits D and E when he made his ruling. [FN2] In other words, it is possible that the Magistrate Judge ruled that Barrick's production was "sufficient" without the benefit of seeing communications, such as Exhibits D and E, which indicate that Barrick's definition of "sponsorship" is very narrow.

> FN1. Plaintiff states in its Reply that "Plaintiff believed that (the documents) had been produced in response to a different request ." (Rec. doc. 237, p. 3, fn 5).

> FN2. Plaintiff argues the Magistrate Judge "was unable to consider documents only recently uncovered in Barrack's document production, which establish and highlight the relevance of the information sought." (Rec.doc. 235, p. 4). Plaintiff also notes, and Defendant acknowledges that the documents were produced after Plaintiffs filed its motion to compel, which does not necessarily mean that the Magistrate Judge was not made aware of them by the time of the hearing.

*3 The Court has a strong conviction that, in light of the above-mentioned documents that may not have been available to the Magistrate Judge, the allegations in the complaint should be read with more breadth to ensure production of all relevant documents. This does not required overturning the Magistrate Judge's ruling, but rather clarifying the definition of "sponsorship" to encompass all relevant documents. The Magistrate Judge's Order required production of all communications that "relate to Barrick's alleged 'sponsorship' of data and statements by these entities (CPM and WGC) ." (Rec.doc. 198, p. 12). Paragraph 15 explicitly refers to "sponsoring investment representations for gold by the World Gold Council," and "sponsoring the publication of bullish statistical data about gold's supply/demand fundamentals." (Rec.doc. 73, p. 6). Paragraph 21 is an allegation based on flawed statistical data and "hedging programs." Specifically, the complaint relates to "the 'hedging programs' utilized by Barrick and other gold producers (that) consist almost exclusively of paper transactions that do not increase current supply when they are initiated and do not depress the price of gold." (Rec.doc. 73, p. 8). Accordingly, the Court finds that any communications between Barrick and CPM and/or WGC regarding "statistical data on gold's supply and demand fundamentals," "short sales of gold," and "hedging programs" are relevant and should be produced. Once all such documents have been produced, or if they have already been produced, Defendant shall verify this to the Plaintiff in writing. [FN3]

> FN3. Defendant is reminded that discovery requests are to be construed broadly.

Similarly, paragraph 22 must not be read too narrowly. This complaint alleges that "Barrick knows that CPM Group's statistics are wrong, knows that Barrick's own trading activities make them wrong, but sponsored the very reports in which CPM Group's erroneous data were disseminated to the public in 2002 and 2003." (Rec.doc. 73, p. 8). Communications are relevant, therefore, not only if they relate to Barrick's sponsorship of CPM reports, but also if they simply convey knowledge on the part of Barrick that CPM's statistics are wrong and that Barrick's trading activities make them wrong. Communications regarding such knowledge can exist outside the context of any particular CPM report and outside the context of hedging, but it appears that Defendant has not been willing to share such communications, should they exist. [FN4] Accordingly, the Court finds that Defendant must review the documents in their possession and produce those that in any way convey Barrick's knowledge that CPM's statistics are wrong as well as Barrick's knowledge that its trading activities may influence CPM's statistics. Once completed, or if no such documents remain unproduced, Defendant shall verify to Plaintiff in writing that all such documents have been produced. [FN5]

> FN4. Defendant claims that, "with respect to documents reflecting payments to CPM, Barrick has produced four categories of documents: 1) documents reflecting payments to CPM Group; 2) correspondence between Barrick and CPM regarding gold producer hedging; and 3) communications relating to CPM's gold Survey, as well as the survey itself." (Rec.doc. 235, p. 5).

> FN5. Defendant is reminded that discovery requests are to be construed broadly.

The Court agrees with Defendant that the producing all communications between Defendant and both CPM and WGC, without regard to the subject matter of the document, would result in irrelevant production. Production must be limited to materials

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

that are relevant to Plaintiff's complaint, notwithstanding Plaintiff's claim that Defendant made a nearly identical production request.

*4 Accordingly,

IT IS ORDERED that Plaintiff's motion for Review of Magistrate's Order is GRANTED IN PART, as more specifically set forth above. Defendant shall comply with this Order by December 20, 2004.

2004 WL 2785096 (E.D.La.)

**Motions, Pleadings and Filings (Back to top)**

. 2004 WL 2467885 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs' Motion to Compel (Sep. 22, 2004)

. 2004 WL 2467858 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion for Review of Magistrate's Order (Sep. 02, 2004)

. 2004 WL 2467866 (Trial Motion, Memorandum and Affidavit) Sur-Reply Memorandum of Defendants in Opposition to Plaintiffs' Motion to Continue (Sep. 02, 2004)

. 2004 WL 2467872 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Sur-Reply (Sep. 02, 2004)

. 2004 WL 2467879 (Trial Motion, Memorandum and Affidavit) Defendant J. P. Morgan Chase & Co.'s Reply Memorandum in Further Support of its Motion to Compel the Rule 30(b)(6) Deposition of Blanchard (Sep. 02, 2004)

. 2004 WL 2467852 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion to Continue (Sep. 01, 2004)

. 2004 WL 2467835 (Trial Motion, Memorandum and Affidavit) Defendant Barrick Gold Corporation's Memorandum in Opposition to Appeal of Magistrate's Order (Aug. 24, 2004)

. 2004 WL 2467839 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Continue (Aug. 24, 2004)

. 2004 WL 2467814 (Trial Motion, Memorandum and Affidavit) Defendant Barrick Gold Corporation's Reply Memorandum in Support of Motions to

Compel (Jun. 09, 2004)

. 2004 WL 2467823 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion to Compel (Jun. 09, 2004)

. 2004 WL 2467805 (Trial Motion, Memorandum and Affidavit) Defendant Barrick Gold Corporation's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel (Jun. 01, 2004)

. 2004 WL 2467783 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Surreply in Opposition to Barrick's Motion to Join Absent Bullion Banks and Gold Producers (Apr. 28, 2004)

. 2004 WL 2467794 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Reconsideration (Apr. 28, 2004)

. 2004 WL 2467770 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Barrick's Motion to Join Absent Bullion Banks and Gold Producers (Apr. 20, 2004)

. 2004 WL 2467760 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Motion for Entry of Protective Order (Mar. 26, 2004)

. 2004 WL 2467750 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion for Entry of Protective Order (Mar. 19, 2004)

. 2003 WL 23860663 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motions for Reconsideration (Oct. 21, 2003)

. 2003 WL 23860651 (Trial Pleading) Answer of Defendant Barrick Gold Corporation to the Third Amended Complaint (Oct. 07, 2003)

. 2003 WL 23860638 (Trial Pleading) Answer (Oct. 06, 2003)

. 2003 WL 23860623 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Surreply to J.P. Morgan Chase and Co.'s and Barrick's Reply Memoranda in Further Support of Motion to Dismiss (Jul. 31, 2003)

. 2003 WL 23860603 (Trial Motion, Memorandum and Affidavit) J. P. Morgan Chase & Co.'s Reply Memorandum in Further Support of Motion to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

Dismiss (Jul. 16, 2003)

. 2003 WL 23860614 (Trial Motion, Memorandum and Affidavit) Supplemental Reply Memorandum in Support of Defendant Barrick Gold Corporation's Motion to Dismiss Third Amended and Supplemental Complaint (Jul. 16, 2003)

. 2003 WL 23860589 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Motions to Dismiss for Failure to State a Claim (Jul. 08, 2003)

. 2003 WL 23860578 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum of J. P. Morgan Chase in Further Support of Motion to Dismiss (Jun. 25, 2003)

. 2003 WL 23860566 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion of Defendant Barrick Gold Corporation to Dismiss (Jun. 24, 2003)

. 2003 WL 23860549 (Trial Pleading) First Supplemental and Amended Complaint in Intervention (Jun. 06, 2003)

. 2003 WL 23860539 (Trial Pleading) Third Supplemental and Amended Complaint (Jun. 04, 2003)

. 2003 WL 23860512 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Surreply Memorandum in Further Opposition to Defendants' Motions to Dismiss (Jun. 02, 2003)

. 2003 WL 23860522 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of J.P. Morgan Chase & Co. in Further Support of Its Motion to Stay Discovery (Jun. 02, 2003)

. 2003 WL 23860498 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant J.P. Morgan Chase & Co.'s Motion to Stay Discovery (May. 21, 2003)

. 2003 WL 23860466 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendant Barrick Gold Corporation in Further Support of Motion to Dismiss the Complaint in Intervention for Failure to State a Claim (Apr. 29, 2003)

. 2003 WL 23860489 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendant Barrick Gold Corporation in Further Support of Motion to Dismiss the Complaint for Failure to State a Claim (Apr. 29, 2003)

. 2003 WL 23860451 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of J. P. Morgan Chase in Further Support of Motion to Dismiss (Apr. 25, 2003)

. 2003 WL 23860476 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion of Defendant Barrick Gold Corporation to Dismiss for Failure to Join Indispensable Parties (Apr. 25, 2003)

. 2003 WL 23860436 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant Barrick Gold Corporation's Motion to Stay Discovery (Apr. 22, 2003)

. 2003 WL 23860388 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Motions to Dismiss for Failure to State a Claim (Apr. 09, 2003)

. 2003 WL 23860401 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant Barrick's Motion to Dismiss for Failure to Join Indispensable Parties (Apr. 09, 2003)

. 2003 WL 23860418 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant Barrick's Motion to Dismiss Complaint in Intervention for Failure to State a Claim (Apr. 09, 2003)

. 2003 WL 23860374 (Trial Pleading) Second Supplemental and Amended Complaint (Feb. 27, 2003)

. 2003 WL 23860344 (Trial Pleading) Second Supplemental and Amended Complaint (Feb. 19, 2003)

. 2003 WL 23860325 (Trial Pleading) First Supplemental and Amended Complaint (Feb. 07, 2003)

. 2003 WL 23860359 (Trial Pleading) Complaint in Intervention (Feb. 2003)

. 2002 WL 32716048 (Trial Pleading) Complaint for Injunctive Relief (Dec. 18, 2002)

. 2:02CV03721 (Docket) (Dec. 18, 2002)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2785096 (E.D.La.)
(Cite as: 2004 WL 2785096 (E.D.La.))

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# CERTIFICATE OF SERVICE

Plaintiff/Counterclaim Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant IBM on the 6th day of July, 2005 by U.S. Mail to:

David Marriott, Esq.
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Donald Rosenberg, Esq.
1133 Westchester Avenue
White Plains, NY 10604

Todd Shaughnessy, Esq.
SNELL & WILMER LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, UT 84101-1004

*Laura K. Chaves*