

FILED
U.S. DISTRICT COURT

2005 JUL -5 P 4: 46

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Sean Eskovitz (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff | **UNSEALED EXHIBITS TO THE DECLARATION IN SUPPORT OF SCO'S OPPOSITION TO IBM'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>[Docket No. 197]<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

# EXHIBIT B

## EXHIBIT B  082490 (BIL)

### <u>MULTIPROCESSOR SOFTWARE COOPERATION AGREEMENT</u>

This Agreement is entered into between UNIX System Laboratories, Inc. ("USL"), having an office in Morristown, New Jersey, and Sequent Computer Systems Inc. ("SEQUENT"), having an office in Beaverton, Oregon. The effective date of this Agreement shall be the later of the dates of execution by the respective parties.

WHEREAS, USL intends to develop and market an SVR4 MULTIPROCESSING VERSION as contemplated in UNIX International's "UNIX System V Roadmap" dated January 1990; and

WHEREAS, in connection with this activity USL desires to acquire certain licenses from SEQUENT to EXISTING SEQUENT TECHNOLOGY; and

WHEREAS, USL also desires SEQUENT to assist USL in developing CONTRACT SVRX ENHANCEMENTS for integration into an SVR4 MULTIPROCESSING VERSION; and

WHEREAS, SEQUENT is willing to grant such licenses and undertake such development under the following terms and conditions.

NOW, THEREFORE, in consideration of the mutual promises set forth in this Agreement, the adequacy and sufficiency of which are acknowledged, the parties agree as follows.

USL - SEQUENT - Proprietary

- 2 -

DEFINITIONS

Except for names of parties and Section headings, or
unless otherwise defined in this Agreement, capitalized terms
shall have the meanings specified in this Section.

SVR4 MULTIPROCESSING VERSION means any commercially
available post-Release 3 version of UNIX System V (including any
pre-release load) that incorporates MULTIPROCESSING ENHANCEMENTS.

EXISTING SEQUENT TECHNOLOGY means SEQUENT's
multiprocessing software technology listed in Section 4 of the
current version of the Statement of Work set forth in Appendix A
hereto, and shall further include all other multiprocessing
software technology embodied in (1) any commercially available
SEQUENT product in existence as of the effective date of this
Agreement with functionality equivalent to UNIX System V,
Release 4; and (2) any other SEQUENT nonproduct multiprocessing
technology in existence as of the effective date of this
Agreement required to produce said SEQUENT products.

MULTIPROCESSING ENHANCEMENTS means software (including
related documentation) that implements any multiprocessing
features and functionality considered by USL for incorporation in
an SVR4 MULTIPROCESSING VERSION.

CONTRACT SVRX ENHANCEMENTS means any MULTIPROCESSING
ENHANCEMENTS developed by SEQUENT for USL pursuant to the

USL - SEQUENT - Proprietary

Statement of Work.  The term includes any intermediate loads and any other work in progress resulting at any time from any such development activity.

INSOLVENCY of a party means any of the following: (i) the party becomes insolvent or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; (ii) a voluntary or involuntary petition under any federal, state or foreign bankruptcy etc, receivership statute, or the like, as they now exist, or as they may be amended, is filed by or against the party; or (iii) a petition is filed with respect to such party by anyone, or an application for a receiver of such party is made by anyone, and such petition or application is not resolved favorably to such party within sixty days; or (iv) such party ceases to conduct business in the manner contemplated by this Agreement.

STATEMENT OF WORK

SEQUENT shall undertake the activities set forth in the Statement of Work (either in the form existing as of the effective date of this Agreement or as it may be amended from time to time by written agreement between the parties) to assist USL in the creation of CONTRACT SVRX ENHANCEMENTS.

LICENSES TO AT&T

A.   Subject to paragraph B of this Section, SEQUENT grants to USL a fee-free, non-transferable right to use, reproduce and

USL - SEQUENT - Proprietary

- 4 -

modify EXISTING SEQUENT TECHNOLOGY and to sublicense and
distribute (and to authorize its customers to further sublicense
and distribute) such software, and modifications thereof, in
source and binary form in accordance with standard
USL licensing provisions.  Such right shall be exclusive to USL,
except that SEQUENT shall retain the right to grant licenses
(including sublicenses down the chain of distribution) in the
ordinary course of its business.  USL will not knowingly transfer
EXISTING SEQUENT TECHNOLOGY, on a stand-alone basis and in the
form in which it is provided to USL by SEQUENT, for purpose of
competitive analysis by SEQUENT'S competitors.  With respect to
any portion of such EXISTING SEQUENT TECHNOLOGY that USL has not
incorporated into an USL product offering, or otherwise put into
use in its business operations, within five (5) years after the
effective date of this Agreement, USL will not unreasonably
refuse to consider a request by SEQUENT that USL relinquish its
ability to license such unused portion hereunder for the purpose
of permitting SEQUENT to license such unused portion to a third
party.  USL agrees that, if at a time earlier than the end of
such five year period it finally commits not to use such unused
portion, it will so consider such a request made by SEQUENT at
that earlier time.

     B.    To the extent that the rights granted in paragraph A of
this Section include licenses to the particular items of EXISTING
SEQUENT TECHNOLOGY set forth in Appendix B hereto, such licenses
are subject to preexisting restrictions to which SEQUENT is bound

USL - SEQUENT - Proprietary

- 5 -

by contract with one or more third parties.  Such restrictions
are set forth in Appendix C hereto.

    C.    The provisions of this Section shall survive termination
of this Agreement.


INITIAL SEQUENT DELIVERABLES

        Within sixty (60) days after the effective date of this
Agreement, SEQUENT shall provide to USL a complete copy of the
EXISTING SEQUENT TECHNOLOGY.


OWNERSHIP

        SEQUENT shall have and retain all ownership in EXISTING
SEQUENT TECHNOLOGY.  USL shall have and retain all ownership in
(i) any items (including CONTRACT SVRX ENHANCEMENTS) created
pursuant to the Statement of Work, and (ii) any modifications
made by USL to EXISTING SEQUENT TECHNOLOGY, other than any
portion of EXISTING SEQUENT TECHNOLOGY contained in such
modifications.


AVAILABILITY OF LICENSES FOR CONTRACT SVRX ENHANCEMENTS

        In the event that USL has not, within two (2) years
after the completion of delivery of the last of the CONTRACT SVRX
ENHANCEMENTS created pursuant to the Statement of Work,
incorporated such enhancements into an USL product offering or
has otherwise put such enhancements into use in its business
operations, USL will not refuse a request by SEQUENT to acquire

source code and/or binary distribution licenses from USL on
reasonable terms and conditions, including license fees. USL
agrees that if, at a time earlier than two (2) years from the
delivery of the last of the CONTRACT SVRX ENHANCEMENTS, it
finally commits not to use the CONTRACT SVRX ENHANCEMENTS, it
will consider a request by SEQUENT to acquire source code and/or
binary distribution licenses from USL for such software on
reasonable terms and conditions, including license fees. The
provisions of this Section shall survive termination of this
Agreement.


PROTECTION OF PROPRIETARY INFORMATION

    A.   It is understood that in the performance of this
Agreement, each party may require from the other certain
technical and business information which the furnishing party
considers proprietary and which has not yet been furnished to the
other party through a suitable license or non-disclosure
agreement ("PROPRIETARY INFORMATION"). By way of example but not
of limitation, PROPRIETARY INFORMATION of USL shall include (i)
any unpublished USL software and related documentation and (ii)
any other unpublished material of USL that may be made available
to SEQUENT at any time pursuant to the Statement of Work provided
that such other material, if in documentary form, is clearly
marked in a manner to give notice of its confidential nature.
Also by way of example but not of limitation, PROPRIETARY
INFORMATION of SEQUENT shall include (i) EXISTING SEQUENT

USL - SEQUENT - Proprietary

TECHNOLOGY and (ii) any other unpublished material of SEQUENT
that may be made available to USL at any time pursuant to this
Agreement provided that such other material, if in documentary
form, is clearly marked in a manner to give notice of its
confidential nature. Unpublished information of either party
that is orally disclosed to the other shall be considered
PROPRIETARY INFORMATION only if, and to the extent that, such
information is summarized in a document which is marked in the
manner contemplated above and supplied by the disclosing party to
the receiving party no later than fifteen (15) days after the
oral disclosure.

    B.   The party receiving PROPRIETARY INFORMATION (whether in
oral or documentary form) shall:

    (1)   restrict disclosure of the PROPRIETARY INFORMATION
solely to those of its employees with a need to
know and not disclose it to any other parties;
provided, however, that the PROPRIETARY INFORMATION
may be disclosed to a contractor of the receiving
party solely for the purposes permitted in
subparagraph (4) below, if such contractor agrees
in writing (a copy of which will be provided to the
disclosing party at its request) to treat such
PROPRIETARY INFORMATION in confidence and to abide
by the conditions respecting use as specified in
subparagraph (4) below;

    (2)   advise employees who received the PROPRIETARY

USL - SEQUENT - Proprietary

- 8 -

INFORMATION of their obligations with respect to such PROPRIETARY INFORMATION;

(3)  use and require employees to use the same degree of care to protect the PROPRIETARY INFORMATION as is used with the receiving party's own PROPRIETARY INFORMATION; and

(4)  use the PROPRIETARY INFORMATION only for purposes of fulfilling this Agreement.

C.   Notwithstanding anything to the contrary herein, the party receiving PROPRIETARY INFORMATION shall have no obligation to preserve the confidentiality of any portion of the PROPRIETARY INFORMATION which:

(1)  was previously known to the receiving party free of any obligation to keep it confidential, or

(2)  is or becomes publicly available, by other than un-authorized disclosure, or

(3)  can be documented by the receiving party as having been independently developed by it, or

(4)  is received from a third party without restriction or obligation to keep proprietary, provided that such third party is not under an obligation of confidentiality to the disclosing party with respect to the applicable portion of the PROPRIETARY INFORMATION, or

(5)  is required to be disclosed pursuant to a statute, regulation, or the order of a court of competent

USL - SEQUENT - Proprietary

- 9 -

jurisdiction, provided the disclosing party previously notifies the other party to permit the taking of appropriate protective measures.

D.   The rights and obligations of either party under this Section shall survive termination of this Agreement for five (5) years, with the exception of any source code of a disclosing party which shall survive the termination of this Agreement for twenty (20) years.


<u>EARLY TERMINATION</u>

Either party may terminate this Agreement for cause (i) pursuant to the next paragraph, if the other party materially breaches any substantive provision hereof, or (ii) immediately upon written notice to the other party, in the event of INSOLVENCY of the other party.

Termination by a party for material breach shall be initiated by written notice of intent to terminate, specifying the reasons therefor.  The other party shall thereupon use its best efforts to cure the breach giving rise to such notice.  If despite such best efforts substantial progress has not been made toward curing the breach within a thirty (30) day period after receipt of such notice, the initiating party may give formal notice of termination.  Such termination shall be automatically effective thirty (30) days from receipt of the formal notice by

USL - SEQUENT - Proprietary

- 10 -

the other party unless such breach is cured within such latter
thirty day period or unless the initiating party formally
withdraws such notice.

The rights and remedies of each party provided in this
Section shall not be exclusive and are in addition to any other
rights and remedies provided by this Agreement.


ADDITIONAL RIGHTS AND OBLIGATIONS UPON TERMINATION

In the event of early termination of this Agreement at
any time (except for termination initiated by SEQUENT as a result
of a material breach by USL), SEQUENT shall promptly
deliver to USL a copy of the then-existing version of each item
to be delivered by SEQUENT pursuant to the Statement of Work, in
the form in which each such item may then exist.

Should USL terminate this Agreement for material breach
by or INSOLVENCY of SEQUENT, USL shall, as its sole and exclusive
remedies for such breach or INSOLVENCY, be excused from (i)
making any further payments to SEQUENT under this Agreement and
(ii) making available to SEQUENT any further discounts provided
for in Section CONSIDERATION TO SEQUENT below.

Should SEQUENT terminate this Agreement for material
breach by or INSOLVENCY of USL, the sole and exclusive remedy to
which SEQUENT shall be entitled for such breach or INSOLVENCY
shall be the conversion of any and all exclusive license rights


USL - SEQUENT - Proprietary

- 11 -

to EXISTING SEQUENT TECHNOLOGY, afforded to USL in Section
LICENSES TO USL above, to non-exclusive license rights as of the
date of termination by SEQUENT.


EFFECT OF TERMINATION

        Termination of this Agreement will terminate all future
rights and obligations of the parties hereunder except (i) those
specified in Sections LICENSES TO USL, PROTECTION OF PROPRIETARY
INFORMATION, EXPORT, OWNERSHIP, SUPPORT, AVAILABILITY OF LICENSES
for CONTRACT SVRX ENHANCEMENTS, and ADDITIONAL RIGHTS AND
OBLIGATIONS UPON TERMINATION; (ii) where
such termination is for material breach by or INSOLVENCY of USL,
SEQUENT's rights to receive the discounts specified in Section
CONSIDERATION TO SEQUENT; and (iii) others, including SEQUENT's
right to acquire licenses from USL on standard terms as
contemplated in Section CONSIDERATION TO SEQUENT, which by their
inherent nature should survive termination.


CONSIDERATION TO SEQUENT

    A.    In consideration of (1) the activities undertaken by
SEQUENT under this Agreement and (2) the rights granted to USL in
Section LICENSES to USL above, USL will (a) consistent with
Section STATEMENTS AND REMITTANCES below, reimburse SEQUENT for
fifty percent (50%) of the reasonable and auditable costs
incurred by SEQUENT for the development of acceptable versions of


                    USL - SEQUENT - Proprietary

- 12 -

CONTRACT SVRX ENHANCEMENTS, subject to the applicable maximum amount set forth in the Statement of Work; (b) make available to SEQUENT additional discounts, set forth in Appendix D hereto, against certain net sublicensing per-copy fees payable by SEQUENT to USL for the distribution, during the calendar years 1991-1995, inclusive, of SUBLICENSED PRODUCTS that are binary versions of derivative works of Unix System V, Release 3.0 (or later) as such products are defined in the existing Sublicensing Agreement between USL and SEQUENT; provided, however, that such additional discounts shall not apply with respect to per-copy fees accruing after the date of termination of this Agreement where such termination results from a material breach by, or INSOLVENCY of, SEQUENT; and (c) grant licenses to SEQUENT for all SVR4 MULTIPROCESSING VERSIONS and all MULTIPROCESSING ENHANCEMENTS (including CONTRACT SVRX ENHANCEMENTS) under all USL proprietary rights on USL's then-standard terms and conditions for any such licenses.  For purposes of this Agreement, "net sublicensing per copy fees" means sublicensing per-copy fees payable after any applicable normal discounts are applied.

SUPPORT

A.   SEQUENT shall make available to USL the maintenance and support services set forth in Appendix E hereto, and for the period specified in such Appendix, with regard to CONTRACT SVRX

USL - SEQUENT - Proprietary

- 13 -

ENHANCEMENTS.  Except in the event of material breach by or insolvency of USL, the provisions of this Section shall survive termination of this Agreement.

B.    In payment for such maintenance and support services, USL will, consistent with Section STATEMENTS AND REMITTANCES below, reimburse SEQUENT for fifty percent (50%) of the reasonable and auditable costs incurred by SEQUENT for the provision of such services.

DISCLAIMER OF WARRANTY

EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT ANY AND ALL WARRANTIES OF ANY KIND WHATSOEVER, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES AGAINST INFRINGEMENT OF ANY THIRD PARTY PROPRIETARY RIGHT, ARE EXPRESSLY DISCLAIMED AND EXCLUDED.

LIMITATION OF LIABILITY

NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT OR AS A RESULT OF ANY PERFORMANCE OR NON-PERFORMANCE OF SUCH PARTY HEREUNDER, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR A PARTY'S EXCLUSIVE REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.

USL - SEQUENT - Proprietary

- 14 -

PUBLICITY AND CONFIDENTIALITY

A.   The terms and conditions of this Agreement are
confidential and shall not be disclosed to any third parties by
either party hereto without the prior written consent of the
other, which approval shall not be unreasonably withheld.  Except
as permitted in paragraph B of this section, no public statements
or announcements shall be issued hereafter by either party
relating directly to the terms and conditions of this Agreement
or to any work specified in the Statement of Work without the
prior written consent of the other, which approval shall not be
unreasonably withheld.  Subject to paragraph C(4) of Section
PROTECTION OF PROPRIETARY INFORMATION above, nothing herein shall
prevent either party hereto from supplying such information or
making such statements or disclosures as may be required by, or
as such party considers necessary to be disclosed in connection
with any filings with, or any proceedings before, any competent
governmental authority, court or agency or as such party may
consider necessary in order to satisfy its obligations under
applicable laws or regulations, but such party shall furnish
prior written notice thereof to the other party.

B.   (1)  As soon as practicable after the effective date of
this Agreement, the parties will issue a mutually acceptable
press release announcing the relationship set forth herein.  Such
release shall, in substance, contain (a) an acknowledgment that
Sequent has made Existing Sequent Technology available to USL for

USL - SEQUENT - Proprietary

- 15 -

possible incorporation in a commercial release of an SVR4
Multi-processing Version, and (b) a statement of intent by USL to
implement the following:

        (i)   to incorporate SVRX CONTRACT ENHANCEMENTS in a
commercial release of an SVR4 MULTIPROCESSING
VERSION;

      (ii)   to utilize SEQUENT hardware to develop SVRX
CONTRACT ENHANCEMENTS; and

    (iii)   to utilize SEQUENT hardware as its reference
platform for an 80x86 implementation of an
SVR4 MULTIPROCESSING VERSION.

  (2)  It is USL's present intention to implement all the
activities mentioned in b(i)-(iii) of
subparagraph (1) above.

STATEMENTS AND REMITTANCES

    A.    SEQUENT shall provide USL with quarterly statements,
certified by a responsible office of SEQUENT, giving a detailed
breakdown of any development costs incurred by SEQUENT hereunder
in creating CONTRACT SVRX ENHANCEMENTS since the previous such
statement, if any, was submitted to USL. SEQUENT may thereafter
invoice USL for fifty percent (50%) of the development costs
covered by each such statement until the applicable maximum
amount authorized in the Statement of Work has been billed.
Subject to paragraph B of this Section, such amount shall be

USL - SEQUENT - Proprietary

- 16 -

payable within forty five (45) days after the date of the
applicable invoice.  Statements and payments hereunder shall be
sent to the appropriate address set forth in Section NOTICES
below.  Invoices shall be addressed to:

>           UNIX System Laboratories, Inc.
>           60 Columbia Turnpike
>           Morristown, NJ  07960
>
>           Attention:  Controller

     B.   USL shall have the right, through its authorized
representatives and subject to reasonable restrictions as to
confidentiality, to make examinations and audits on an annual
basis, at a mutually agreeable time, during normal business
hours, of SEQUENT's records kept pursuant to this Agreement and
such other records and accounts of SEQUENT as may under
recognized accounting practices contain information bearing upon
the amounts payable pursuant to paragraph A of this Section.
Prompt adjustment shall be made by the proper party to compensate
for any errors or omissions disclosed by such examination or
audit.  All such audits shall be at USL's expense, except in the
case of an audit which reveals an overstatement by SEQUENT of at
least two thousand five hundred dollars U.S. ($2,500) for the
period covered by the audit.  In such case, SEQUENT shall
reimburse USL for its reasonable cost of such an audit.

- 17 -

NOTICES

All notices or other communications in connection with this Agreement shall be in writing; shall be sent by certified or registered mail, return receipt requested; shall be effective on the date such return receipt is signed by the recipient or the first date of any unsuccessful attempt to deliver, and (except the case of invoices) shall be addressed as follows:

>           To USL:    UNIX System Laboratories, Inc.
>                      60 Columbia Turnpike
>                      Morristown, NJ  07960
>
>                      Attention:  Vice President,
>                                  UNIX System V Software
>
>        To SEQUENT:   Sequent Computer Systems, Inc.
>                      15450 S.W. Koll Parkway
>                      Beaverton, Oregon 97006-6063
>
>                      Attention:  Manager, Contracts
>                                  Administration

FORCE MAJEURE

The obligations of USL and SEQUENT hereunder shall be temporarily suspended in the event of strikes, riots, war, invasion, fire, explosion, accident, delays in carriers, acts of God and all other delays beyond the obligated party's reasonable control, and any failure to perform by the party as a result of any such interference or interruption shall not be deemed a default.  Performance may be suspended for the period of any such delay.  The party whose performance is suspended shall notify in writing the other party within 15 days of such suspension.

USL - SEQUENT - Proprietary

- 18 -

## AVAILABILITY OF HARDWARE DISCOUNTS

It is the present intention of USL and SEQUENT to enter into a Master Purchase Agreement covering SEQUENT's computer systems of the type set forth in the March 26, 1990 SEQUENT proposal to USL. It is understood and agreed that the pricing terms offered to USL for such hardware in such Master Purchase Agreement shall be no less favorable to USL than the terms contained in such SEQUENT proposal.

## REPRESENTATION OF AUTHORITY

Each party represents to and assures the other that it has full and unrestricted authority to enter into, and perform under, this Agreement.

## SUPERVISION OF DEVELOPMENT ACTIVITIES

A.   In the event that one party hereto ("first party") engages any third party, other than an employee or paid contractor of the first party, to assist such first party in the development activities to be undertaken by such first party pursuant to the Statement of Work, such third party shall not be permitted to function in any supervisory capacity with respect to the development activities of the other party hereto.

B.   Any technical issues, arising out of the day-to-day activities undertaken hereunder pursuant to the Statement of Work will be resolved through the escalation procedure set forth in the Statement of Work.

USL - SEQUENT - Proprietary

- 19 -

INDEPENDENT CONTRACTOR

All work performed under this Agreement by a party shall be performed as an independent contractor and not as an agent of the other.  No persons furnished by either party shall be deemed the other party's employees or agents, and each party shall be responsible for its employees' compliance with all pertinent laws, rules and regulations.

NO ENTITY

Nothing contained herein and no action taken by USL or SEQUENT pursuant hereto or in connection with this Agreement shall be deemed to constitute a partnership, association, joint venture or other entity between the parties.

ENTIRE AGREEMENT

This Agreement constitutes the entire understanding of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and understanding (written or oral) between the parties with respect to the subject matter hereof.

EXPENSES RELATING TO THIS AGREEMENT

Each party hereto shall pay its own expenses incident to the preparation of this Agreement and any other pertinent agreements and instruments executed pursuant to this Agreement.

- 20 -

GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (other than its rules on conflicts of laws).

SEVERABILITY

In case any one or more of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, but such provision or provisions shall be ineffective only to the extent of such invalidity, illegality or unenforceability without invalidating the remainder of such provision or provisions or the remaining provisions of this Agreement.  In such case, this Agreement shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein, unless the deletion of such provision or provisions would result in such a material change as to cause performance by a party to be unreasonable.

MODIFICATION

This Agreement shall not be modified, altered, changed or amended in any respect, except by a writing signed by the authorized representative of each party hereto.

USL - SEQUENT - Proprietary

- 21 -

WAIVER

No consent or waiver by either party hereto of any breach or default by the other party hereto under this Agreement shall be effective unless such consent or waiver is set forth in a written instrument signed by such party. The failure of a party hereto to enforce at any time any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party hereto thereafter to enforce each and every provision hereof. No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach hereunder.

ASSIGNMENT

A.    Neither party hereto may assign this Agreement or any of its rights hereunder to any other person or entity without the prior written consent of the other party; provided, however, that either party may assign its rights and delegate its obligations under this Agreement to (i) any of its subsidiaries and (ii) any other entity which may acquire the portion of such party's business to which the subject matter of this Agreement relates.

B.    Subject to paragraph A of this Section, this Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of USL and SEQUENT and is not intended to confer upon any other person any rights or remedies hereunder.

USL - SEQUENT - Proprietary

- 22 -

<u>EXECUTIONS AND COUNTERPARTS</u>

This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall be a binding agreement when one or more counterparts have been signed by each party hereto and delivered to the other party hereto.

<u>EXPORT</u>

A.    Each party hereby assures the other that it does not intend to and will not knowingly, without the prior written consent, if required, of the Office of Export Administration of the U.S. Department of Commerce, Washington, D.C. 20230, U.S.A., transmit, directly or indirectly:

1.    Any PROPRIETARY INFORMATION received from the other party pursuant to this Agreement; or

2.    Any immediate product (including processes and services) produced directly by the use of any such PROPRIETARY INFORMATION; or

3.    Any commodity produced by such immediate product if the immediate product of such PROPRIETARY INFORMATION is a plant capable of producing a commodity or is a major component of such plant; to Afghanistan, the People's Republic of China, or any group Q, S, W, Y or Z country specified in Supplement NO. 1 to Section 370 of Export

USL - SEQUENT - Proprietary

- 23 -

Administration Regulations issued by the U.S. Department of Commerce.

B.    The parties agree that their obligations under Paragraph A of this Section shall survive and continue after any termination of rights under this Agreement.


APPENDICES INCORPORATED

Appendices A-E are included herein and made a part hereof.


HEADINGS

Sections headings herein are inserted for convenience only and are not intended to affect the meaning or interpretation of this Agreement.


IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement as of the dates written below.


UNIX SYSTEM LABORATORIES, INC.

By: _____

Printed Name: Lawrence F. Dooling

Title: President

Date: 9/11/90

SEQUENT COMPUTER SYSTEMS INC.

By: _____

Printed Name: Michael D. Simon

Title: Senior Corporate Vice President

Date: September 6, 1990


USL - SEQUENT - Proprietary

# APPENDIX A

# STATEMENT OF WORK

## 1. INTRODUCTION

This statement of work (SOW) documents the proposed program for USL to develop, with assistance from Sequent, certain multiprocessing (MP) capability. The intent of the program is to minimize program risk and improve quality by leveraging the Sequent MP-technology and MP experience.

This SOW addresses development based on a release of UNIX System V with B2+ security features. This release will be referred to as SVR4ES in this SOW. The reference SVR4ESMP refers to a release that incorporates CONTRACT SVRX ENHANCEMENTS in SVR4ES. It is intended for Sequent to assist USL throughout the duration of the MP program, till its completion.

The present intent is to phase in the MP functionality and make it available to UI in several Early Access (EA) Release X loads. (Release X is defined in Unix International road-map. )

This SOW describes the currently planned program content, Sequent staff requirements, and development model. Any changes to the described program will be reflected as addenda to this SOW.

## 2. SVR4ESMP PROGRAM

### 2.1 Definition

To maintain the high quality, SVR4ESMP will include all important MR fixes in the SVR4ES Release. SVR4ES loads will be selectively incorporated. To address the needs of a broad spectrum of customer platforms, enhancement MRs will also be applied, particularly in the area of kernel memory allocation (kmemalloc) and VM/VFS subsystems.

As presently envisioned, the SVR4ESMP will encompass the SVR4ES functionality, including C15 compilation system, OAM, etc., with the following functionality additions:

1.  **multi-threaded kernel and kernel modules**
    VM, BASE OS (process subsystem, system calls, signals, etc.)
    VFS, and all currently supported file system types, (combined UFS and SFS, Specfs, S5, Fifos, bfs, and /proc )
    NFS, RFS remote file system types
    STREAMS, TLI/Socket modules, TTY-related modules and pseudo-drivers
    selected drivers (console, disk, ethernet, asynch)
    TCP/IP
    security add-on modules

2.  **Kernel Light Weight Process (LWP) Support**

3.  **Gang Scheduling Support**

4.  **Re-entrant Libraries (libc, math, network)**

5.  **High Level Programming Interface (HLPI) Library**

6.  **User Level Synchronization primitives**

7.  **minimal OAM enhancements**

    Only enhancements required to account for multiple processors will be added.

8.  **processor binding**

    A system call to dynamically bind processes to processors will be provided.

- 2 -

9. **MP tools and instrumentation**

USL expects to productize internally-used MP-tools (for example, dead-lock detection instrumentation and tools). USL plans to enhance the system activity reporter (SAR) to display lock statistics. If the performance impact of this is high, then only DEBUG systems will have this capability enabled.

A kernel debugger and a crash analyzer will also be enhanced to work with this system. The above tools will be productized only if that can be accomplished without any schedule impact. Parallel make and an enhanced sdb user level debugger will be provided.

10. **restructured kernel source**

The kernel source tree will be restructured to support building multiple target architectures from the same source tree. The SVR4ESMP source structure will resemble the SVR4 386 source code structure while providing a number of significant enhancements. The new organization will promote sharing of the machine-independent source code common to all architectures, as well as sharing of machine-dependent code among machines in the same family, e.g. 386. This common source in conjunction with machine dependent source will be used to build both uniprocessor and multiprocessor binaries. This approach is expected to minimize the development and maintenance costs, and to prevent the divergence between the two systems.

Source code restructuring will also facilitate porting to other non-386 architectures and maintenance across multiple machine architectures.

In addition to the described functionality, it is intended that SVR4ESMP meet the following requirements:

1. **binary and source compatibility for SVR4 applications, drivers, and streams modules which conform to DDI/DKI interfaces.**

SVR4ESMP will be fully compatible (binary and source) at the user-level with the SVR4ES release, except for commands such as *ps* that have knowledge of internal kernel structure.

SVR4.0 drivers and streams modules shall continue to work on the SVR4ESMP uniprocessor platform. While it is also a goal that SVR4.0 drivers and streams modules run on a SVR4ESMP multiprocessor platforms, technical feasibility of implementing this goal is currently under study.

USL will work closely with the Intel Consortium to provide application and driver/streams module compatibility between 4.0MP and SVR4ESMP. 4.0MP is expected to be SVID and ABI conformant. In cases of no conformance, SVR4ESMP will continue to conform to the SVID and ABI interfaces, not 4.0MP.

2. **conformance to SVR4.0 SVID and Intel ABI**

3. **conformance to POSIX and XOPEN standards**

The same level of standard conformance as in SVR4.0 will be provided. In addition, XTI conformance will be implemented.

4. **scalability to modest 10(s) of processors without unduly penalizing low-end systems**

In particular, performance of the uniprocessor system built from the MP SCP common source should degrade no more than few percent compared to the uniprocessor system that could be built from uniprocessor source.

5. **hardware architectures supported**

Uniform Memory Access (UMA) I/O symmetric architectures will be supported. Capability to bind driver and streams-module code to designated processors will be provided to facilitate porting to I/O asymmetric architectures. No asymmetric architecture porting or testing will be done as part of this effort, however.

- 3 -

Some content-related issues still remain to be solved. For example, it is not yet certain which Intel-specific functionality must be provided in SVR4ESMP.

Documentation reflecting the addition of MP-capability and the described functionality changes will be provided. In particular, interfaces relevant to application programmers will be documented.

2.2 Non Goals

1. SVR4ESMP EA loads will not implement any new non-MP Release X functionality, such as transaction processing enablers or loadable drivers. In particular, the autoconfiguration method available in the SVR4ESMP EA loads may not be the same as the target Release X autoconfiguration. Likely, either the 4.0 3B2 SCP or 4.0Intel SCP method will be adopted for these EA loads. (Release X.0 is intended to combine the two above autoconfiguration methods.)

2. It is expected that SVR4ESMP developers follow modularity guidelines and that the design documents be written to facilitate future product certification. It is essential that the B2+ security features continue to work in SVR4ESMP. However, no additional work in a form of Detailed Kernel Design (DKDS) documentation or a new modularity study will be done in the SVR4ESMP time frame. In particular, no commitment to conduct covert channel analysis in the SVR4ESMP time frame has been made.

3. SVR4ESMP will not be constrained by Sequent-specific compatibility requirements.

2.3 Sequent Staff Requirements

The following Sequent Staff Breakdown provides the estimated Sequent staff numbers. Staff numbers encompass systems engineering, development, integration, documentation, and test for the entire program; operating system and compilation system staff are included.

USL assumes that the Sequent development staff will assist USL in providing documentation, integration, and test support, and do maintenance after feature development has been completed.

The estimates assume a high degree of kernel expertise.

The staff breakdown for 90-92 is provided in Exhibit 1. In the staff tables, "c" indicates consultation-only activity. (Equivalent staff numbers rounded to the nearest integer are shown.)

The rows in the table indicate the specific SVR4ESMP activities. USL notes that to best leverage the Sequent MP expertise, Sequent experienced staff will be employed along with USL staff, in the design and implementation of key system areas, such as VM, VFS, Process Management, Signals, Job Control, Streams, Drivers, Light Weight Processes, Test and Performance Analysis. The shown staff breakdown and specific assignments will be adjusted, as necessary, to best meet the SVR4ESMP needs.

Staffing requirements for incorporating TCP/IP into SVR4ESMP is not part of this SOW and terms and conditions for this work will be mutually agreed upon.

The execution of Sequent's responsibilities under this SOW is contingent upon USL providing a minimum of 36 staff years of engineering effort starting 9/90 and such other staffing, equipment, and other support as in USL's reasonable judgement, are necessary to enable Sequent to perform its responsibilities under this SOW.

2.3.1 Sequent's Development Costs Sequent's developments and support costs would include loaded salary costs for Sequent's staff, reasonable travel and living expenses, and extraordinary supplies expenses. The average annual loaded salary rate of Sequent's staff shall not exceed $110,000 per annum. The loaded salary rate includes the salary, benefits, taxes, and Sequent's normal allocations (e.g. facilities, supplies, etc.) per its headcount. The equipment and the depreciation on equipment used by Sequent's staff at Sequent's premises shall not be included as part of Sequent's development expenses. The total Sequent's development costs (including support for the CONTRACT SVRX ENHANCEMENTS) shall not exceed $4.5 million.

- 4 -

## 2.4  Hardware

It is present intent that Sequent Symmetry will be the primary hardware MP development base.

In addition, USL and Sequent will attempt to assemble a multiprocessor test system, which will allow USL to test the graphics server software on an MP box.

## 3.  DEVELOPMENT MODEL

The working relationship and the development process followed during the described program are essential to the program success. The following captures the key aspects of the development model.

### 3.1  Development Approach

The essential aspects of the development methodology/approach are outlined below.

- The development team is expected to consist of staff dedicated to the SVR4ESMP effort. Sequent product specific features will not be integrated into the common SVR4ESMP development base.

  Enough management staff will be designated on both sides to ensure responsiveness and management attention to the SVR4ESMP project.

- Although the staff will continue to be located at their respective sites, frequent and at times extended visits (of up to 1 or 2 weeks) are expected by project members in both companies.

- The goal is to establish a common development environment. One common source tree will be maintained by both companies during SVR4ESMP development. The "primary" source tree will reside at USL's Summit Facility. (USL intends to explore the use of Sequent's RCS-based system to manage the common tree.)

  Furthermore, a target machine configuration (S16) will be designated to facilitate software exchange between USL and Sequent.

- USL intends to dedicate a powerful Sequent machine for integration. Parallel-make will be used to achieve quick build turn-around time for developers and integrators. The goal is to build the kernel and the entire OS in up to 1 hour and 3 hours, respectively.

- Although software loads will be made available at designated times to UI and internal non-OS organizations, on-going integration, testing, and performance analysis are planned. The system is expected to be built at least every day. This will enable us to find problems quickly and to deliver a better-quality product. To achieve that, performance analysis and testing will be done as early as feasible in the development cycle. This integration method relies heavily on the quick system turn-around time.

  To facilitate this, it is the intent that CISCO gateways be connected to the ethernets at USL Summit and Sequent Portland. The two gateway boxes would use high-capacity dedicated T1 lines to interconnect the two ethernets. This would allow for code exchanges across country, rapid exchange of mail, and remote logins to either site.

- Design documents will be jointly produced. In addition, USL will produce requirements and documentation plans. USL will be responsible for producing development, performance, and test plan documents, with assistance and participation by Sequent.

- Deliverables: The MP system will be developed in a tightly-coupled manner. Frequently, both parties will implement different parts of the same subsystem, e.g. VM. The detailed implementation breakdown between Sequent and USL staff has not been yet determined. This breakdown will be decided once detailed design and implementation issues are understood. Staff will be assigned to most effectively meet the program schedules, while at the same time ensuring development of MP expertise in USL. The overall responsibility for design, implementation, and feature tests for each subsystem will reside with joint feature teams. The details of feature delivery will be worked by the team in conjunction with the development planner(s).

USL - Sequent Proprietary

- 5 -

All deliverables will meet the "entrance criteria" as specified in USL Release X Development Methodology Document. (This document is being currently written and will be reviewed by both parties.) The entrance criteria include small-team design and code reviews prior to code delivery. Each developer is expected to test the code to the extent possible. In cases where individual deliverables cannot be tested prior to subsystem integration, the entire subsystem will be tested after individual subsystem parts have been integrated by the feature team. This will be done prior to feature delivery to the "official" tree.

### 3.2 Decision Making Process

- Monthly director-level status meetings will be held to report on program status and to go over the key outstanding issues.

An engineering team consisting of key technical staff and first-level managers will be formed to work on and resolve on-going development issues. The team will participate in weekly conference calls.

Both companies will attempt to resolve conflicts at the lowest possible level. The highest level of escalation will be Sequent director and USL department head, and USL director, for technical and project level decisions respectively. USL will be the Project manager of the program. USL will have the final say in conflict resolution, should any arise.

- Although it is not possible to articulate all the criteria to be used in all decisions, typically design decisions will be guided by the following principles:

  — Multiple architecture support: Since the product will be deployed across a broad spectrum of CPU architectures, design decisions will be made considering key non-Intel architectures such as 88000, MIPS, and SPARC.

  — Compatibility: Generally, the priority order of maintaining compatibility will be external standards, System V source, and System V binary. Every effort will be made to meet all levels of compatibility.

  — Future features: Every attempt will be made to design the system so as not to preclude implementation of already known or anticipated future requirements. For example, all MP requirements/designs should take into account likely need for future implementation of fully pre-emptable kernel. Given the limited staff and tight schedules, it will be difficult to do an extensive analysis in this area. ·

## 4. EXISTING SEQUENT TECHNOLOGY

The program assumes access to and use of, where applicable, the following Sequent technology by USL:

1. Any part of the Sequent Source Code, in both PTX and Dynix, which corresponds in functionality to any part of the SVR4.0 Source Code Product. (That includes the base operating system, NFS, RPC, TCP/IP, drivers and OS networking libraries and make.)

2. Source for NFS releases prior to and including Release 1.0, Dynix releases prior to and including Release 3.0.17, and PTX releases prior to and including Release 1.1.0.4.

3. All box specific drivers for S81, S27, and S16 platforms, including tape, floppy, disk, console, tty, and Ethernet drivers.

4. All Sequent-developed MP Pie test suites, technology, and MP-related test driver, and any other OS MP-test technology.

5. Utility tools such as crash analyzer, performance instrumentation etc.

6. Source for Source Control System (CCS) used by Sequent, for internal development use only.

7. All internal and external documentation for PTX and Dynix, which pertains to MP. The documentation includes source for reference manuals, programming manuals and guides, porting guides, administration guides, system configuration and performance guides. In addition, any such

- 6 -

available hardware documentation as is reasonably necessary for internal USL development and for ports by UI customers to their respective MP platforms needs to be provided.

- 7 -

EXHIBIT 1
SEQUENT STAFF BREAKDOWN FOR SVR4ESMP PROGRAM

# SEQUENT STAFF BREAKDOWN

| ACTIVITY | 90 | | | | 91 | | | | 92 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1Q | 2Q | 3Q | 4Q | 1Q | 2Q | 3Q | 4Q | 1Q | 2Q | 3Q | 4Q |
| MP Core | | | | | | | | | | | | |
| 4.0 Port to Sequent | | | | | | | | | | | | |
| 4.1 Port to AT | | 4 | | | | | | | | | | |
| Design | | | | | | | | | | | | |
| Multi-Thread Core | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| VM | | | | | | | | | | | | |
| VFS | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | |
| FS Thect | | 2 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | | |
| Base OS | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Streams | | | | | | | | | | | | |
| Drivers | | | | | | | | | | | | |
| Kernel Debugger | | 6 | | 6 | 6 | | | | | | | |
| SRC Code Restructr. | | | | | | | | | | | | |
| Real Time (RT) | | | | 1 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 |
| Package/Install, Misc. | | | | | | | | | | | | |
| Dev. Tools | | | | | | | | | | | | |
| Intel Block1 | | | | | | | | | | | | |
| LWP | | | | | | 1 | | | | | | |
| GANG Sched | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 1 |
| OS Test | | | | | | | | | | | | |
| (Test. & MP Retest) | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Dev., Planner | | | | | | | | | | | | |
| Perf. Analysis | | | | | | | | | | | | |
| OS Intg. | | | | | | | | | | | | |
| TOTAL | 5 | | 11 | 11 | 11 | 11 | 11 | 11 | 10 | 8 | 7 | 6 |
| MP Add-Ons | | | | | | | | | | | | |
| Multi-Thread | | | | | | | | | | | | |
| Add-Ons | | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | | | |
| HPS | | | | | | | | | | | | |
| RFS | | | | | | | | | | | | |
| TCP/IP | | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | |
| Streams Drivers | | | | 1 | 1 | 1 | | 1 | | | | |
| & Modu | | | | | | | | | | | | |
| Tools & Instrument | | | | | 1 | 1 | | | | | | |
| HI PI | | | | | | | | | | | | |
| Portal. i Dev | | | | 1 | | | | | 1 | | | |
| (i Doc, i Intel) | | | | | | | | | | | | |
| Dev., INTEL | | | | | | | | | | | | |
| Connection | | | | | | | | | | | | |
| OS Test | | | | | | | | | | | | |
| (Test. & MP Retest) | | | | | | | | | | | | |
| TOTAL | 0 | | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 8 | 0 |

AT&T - SEQUENT - PROPRIETARY

# SEQUENT STAFF BREAKDOWN

| ACTIVITY | '90 1Q | 2Q | 3Q | 4Q | '91 1Q | 2Q | 3Q | 4Q | '92 1Q | 2Q | 3Q | 4Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP Security | | | | | | | | | | | | |
| Multi-Thread | | | | | | | | | | | | |
| Security Add Ons | | | | | | | | | | | | |
| TOTAL | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| System Engineer | | | | | | | | | | | | |
| MP | | | | | | | | | | | | |
| TOTAL | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Documentation | | | | | | | | | | | | |
| MP | | | | | | | | | | | | |
| MP PA | | | | | | | | | | | | |
| TOTAL | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CCS | | | | | | | | | | | | |
| Integ. Test | | | | | | | | | | | | |
| Src Code Retrevl | | | | | | | | | | | | |
| P. Mntel, Optimizer | | | | | | | | | | | | |
| SI10 Debug. Libs | | | | | | | | | | | | |
| TOTAL | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| System Integ. | | | | | | | | | | | | |
| Project Planner | | | | | | | | | | | | |
| Tools | | | | | | | | | | | | |
| Release Integ. | | | | | | | | | | | | |
| TOTAL | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| QA (Compat, Confor, Config, Scrms, Regis, Intl) | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Mgmt. / Support BmdOS & Network (include Develop. & Feature Testing) | | | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| CCS | | | | | | | | | | | | |
| QA | | | | | | | | | | | | |
| Security Dev. (Add Ons & Anal.) | | | | | | | | | | | | |
| Documentation | | | | | | | | | | | | |
| System Eng | | | | | | | | | | | | |
| TOTAL | | | 1 | 1 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |

AT&T - SEQUENT - PROPRIETARY

# SEQUENT STAFF BREAKDOWN

| ACTIVITY | 90 1Q | 90 2Q | 90 3Q | 90 4Q | 91 1Q | 91 2Q | 91 3Q | 91 4Q | 92 1Q | 92 2Q | 92 3Q | 92 4Q |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MP Core | | 5 | 11 | 11 | 11 | 11 | 11 | 11 | 10 | 8 | 7 | 6 |
| MP Add-Ons | | 6 | 0 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 |
| MP Security | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| System Engineer | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Documentation | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CC3 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Integration | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| QA | | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Mgmt. / Support | | 0 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| GRAND TOTAL | | 6 | 16 | 16 | 16 | 16 | 16 | 16 | 14 | 12 | 11 | 10 |

AT&T - SEQUENT - PROPRIETARY

## APPENDIX B

EXISTING ITEMS OF EXISTING SEQUENT TECHNOLOGY
THAT ARE SUBJECT TO PREEXISTING LICENSING RESTRICTIONS

Spider Systems Limited                      TCP/IP and LAN products

Sun Microsystems, Inc.                      NFS

AIM                                         ptx/ADMIN

Univ. of Calif. at Berkeley                 BSD4.2

USL - Sequent Proprietary

<u>APPENDIX C</u>

RESTRICTIONS APPLICABLE TO CERTAIN ITEMS
OF EXISTING SEQUENT TECHNOLOGY

1.    <u>TCP/IP - Spider Systems Limited</u>

Prior consent of Spider Systems Limited is required for
distribution of the source code form of software to ther than end
user customers.  Such customers must become source code licensees
of Spider.  Royalties are paid by customer source licensees of
derivative products.

2.    <u>NFS - Sun Microsystems, Inc.</u>

Prior written consent of Sun Microsystems is required
for distribution of the source code form of Sun's software where
distribution is to other than Sequent customers.  Sublicensing
fees or royalties are owed for each sublicensed product in object
code form.

3.    <u>AIM - ptx/ADMIN</u>

Prior consent of AIM is required for distribution of the
source code form of the software to other than OEM and end user

USL - SEQUENT - Proprietary

## APPENDIX D

Additional Discounts
Applicable To Net Per-Copy Fees
Payable For Distribution Of
SUBLICENSED PRODUCTS by SEQUENT

| Year During Which Distribution Takes Place | Additional Discount |
|---|---|
| 1991 | 10% |
| 1992 | 10% |
| 1993 | 10% |
| 1994 | 8% |
| 1995 | 8% |

USL - SEQUENT - Proprietary

the levels set forth as follows:

Quarters from the start:        0 1 2 3 4 5 6 7 8

Maximum Number Assigned:        2 2 3 3 3 3 2 1 1

SEQUENT makes no warranties, either express or implied, including, but not limited to, any IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE or any implied warranty arising from course of performance, course of dealing, usage of trade, or otherwise, with respect to services provided under this Appendix E.

This Appendix E is subject to the terms and conditions of the Multiprocessor Software Cooperation Agreement entered into between the parties, and this Appendix E is made a part thereof and incorporated therein by this reference.

USL - SEQUENT - Proprietary