

FILED
U.S. DISTRICT COURT

2005 OCT -5  P 4: 49

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

Attorneys for The SCO Group, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | **PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS RENEWED MOTION TO COMPEL**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Plaintiff The SCO Group, Inc. ("SCO") files this Reply Memorandum in further support of its Renewed Motion to Compel discovery.

## PRELIMINARY STATEMENT

IBM's Opposition Memorandum and its accompanying declaration from Daniel Frye reveal an astounding failure to make discovery of documents central to the case. Daniel Frye's declaration indicates that IBM has withheld at least hundreds of thousands of relevant documents – all relating to the contributions IBM has made to Linux – in disregard of two Court orders that call for their production, as well as IBM's own agreement to produce those documents. There is no justification, nor has IBM provided any, for IBM's failure to produce these obviously relevant documents that fall squarely within the ambit of the Court's prior orders.

IBM should be compelled to produce *forthwith* all documents concerning its Linux contributions, including but not limited to design specifications, programming notes, white papers, internal memoranda, revisions of code, and interim versions of code. Such information occupies the core of a case concerning whether IBM's Linux contributions violate SCO's proprietary rights. SCO requested that information in its very first set of document requests in June 2003. After first hedging, IBM agreed to review documents from its Linux Technology Center ("LTC") and produce "documents relating to IBM's Linux contributions." That agreement clearly extends beyond code and encompasses documents generated by the LTC in developing Linux contributions.

Such documents also fall squarely within the scope of the Court's March 2004 order "to provide documents and materials generated by, and in possession of employees that have been

and that are currently involved in the Linux project." Order (3/3/04) at 4-5. Although IBM has certified that it complied fully with that order, it is now clear that IBM has not.

Finally, in its April 2005 Order, the Court made it evident that it previously ordered the production of such documents, declaring that "prior orders make it clear that IBM is to provide ALL non-public Linux contribution information." Order (4/19/05) at 5.

It is now apparent that IBM has not produced most (much less all) of the documents required by the Court's orders. Daniel Frye's declaration indicates that hundreds of thousands of potentially responsive documents generated by LTC employees have not even been gathered and reviewed, let alone produced.

If this Court agrees that IBM has failed to do what this Court has clearly ordered – and what IBM both said it would do and represented it had done – this Court not only should order immediate production of the documents at issue, but should also sanction IBM.

**ARGUMENT**

**I.     THIS COURT'S ORDERS, AND IBM'S PRIOR AGREEMENT, PLAINLY REQUIRED PRODUCTION OF THE DISCOVERY AT ISSUE**

IBM argues that SCO has not sought and this Court has not ordered production of non-public information related to IBM's Linux contributions. All of the information that IBM apparently has not produced – including design documents, programming notes, and interim code drafts (to cite just the three examples referenced in Daniel Frye's declaration at ¶ 8) – was generated and maintained by IBM employees in "the Linux project" and was thus covered by the Court's March 2004 Order. In addition, such information clearly falls even within the more general rubric of "ALL non-public Linux contribution information" that the Court's April 2005 Order indicated had been required by prior orders.

3

While it is true that discovery disputes arose over IBM's refusal to produce AIX and Dynix development information and Linux-related documents from IBM's senior executives, it is not true that the even-more-central documents concerning Linux development were not required to be produced.  Not only did such documents fall within the Court's discovery orders, but IBM had previously stated that it would produce them.

In June 2003, SCO's First Request for Production of Documents covered the documents related to IBM's Linux contributions that IBM continues to withhold.  (See Exh. A.)  Request No. 35 called for "All documents concerning any contributions to Linux or to open source made by IBM and/or Sequent."  Request No. 42 called for "All documents concerning IBM's contributions to development of the 2.4 and 2.5 Linux kernel."  Although IBM first objected to these requests, before SCO filed a motion to compel, IBM relented and agreed to produce non-privileged responsive documents related to its Linux contributions from its Linux Technology Center and Open Source Steering Committee ("OSSC").  Specifically, with respect to Request No. 35, IBM stated:

> Response to Request No. 35.  For the reasons stated in the preceding response re Request No. 11, Request No. 35 as drafted calls for production of a broad scope of documents that are entirely unrelated to the subject matter of this litigation.  **Nevertheless, we are undertaking to produce from the files of LTC and OSSC personnel non-privileged documents that relate to IBM's open-source contributions to Linux.**  We believe that this is a reasonable compromise at this stage of discovery.

Letter dated Sept 15, 2003, from T. Shaughnessy to B. Hatch, at 7 (Exh. B).

In responding to Request No. 11 (which IBM itself characterized as calling for "production of all documents relating to any open-source contributions of any kind by IBM," id. at 4), IBM stated:

> IBM has undertaken to collect documents from various members of the
> Linux Technology Center the ("LTC") who are responsible for work relating to
> open source contributions to Linux. In addition, we are collecting materials from
> the Open Source Steering Committee (the "OSSC"), the group within IBM
> responsible for reviewing and approving open-source projects. **We intend to
> produce non-privileged documents identified in these files that relate to IBM
> open-source contributions Linux.**

<u>Id.</u> at 5 (emphasis added).

It is against the backdrop of IBM's agreement to produce this central core of documents

"that relate to IBM's open-source contributions to Linux" that SCO's subsequent motion to

compel focused on areas where no agreements had been reached, including production of all

IBM code contributions to Linux, even if publicly available, and production of documents from

IBM employees outside the LTC and the OSSC, such as senior executives. Following briefing,

and oral argument on February 6, 2004, the Court entered its Order of March 3, 2004.

That order, as it pertains to SCO's motion to compel, first dealt with the issue of public

(as opposed to non-public) contributions to Linux. The Court stated that SCO should "use its

best efforts to obtain relevant discovery from the Linux contributions that are known to the

public, including those contributions publicly known to be made by IBM." Order (3/3/04) at 4.

"IBM, however," the Court continued, "is hereby ordered to provide to SCO any and all non-

public contributions it has made to Linux." <u>Id.</u>

Having addressed the contributions themselves, the Court then turned to the issue of

IBM's Linux-development work. In language that IBM ignores in its Opposition Memorandum,

this Court made clear that documents generated in the Linux project, whether or not part of the

LTC or OSSC, were to be produced:

> IBM is to provide documents and materials generated by, and in
> possession of employees that have been and that are currently involved in the

> Linux project.  IBM is to include materials and documents from executives
> including inter alia, Sam Palmisano and Irving Wladawsky-Berger.  Such
> materials and documents are to include any reports, materials or documents from
> IBM's "ambitious Linux Strategy."  The Court finds these materials are relevant
> because they may contain information regarding the use or alleged misuse of
> source code by IBM in its contributions to Linux.

Order (3/3/04) at 4-5 (citation omitted).

While the focus at the hearing on these issues was on the documents and materials from

executives including Sam Palmisano and Irving Wladawsky-Berger, the scope of the Court's

Order clearly applies to documents "generated by, and in possession of" IBM employees in the

LTC.  In other words, the Court's Order clearly covers the documents that Daniel Frye's

declaration reveals have not been produced to SCO and that remain in the files and servers of his

Linux developers.

On April 19, 2004, IBM proceeded to file a declaration certifying that it had complied

with the March 2004 Order.  Without elaboration or qualification, IBM stated, "With respect to

Section II.3 of the Order, IBM has undertaken a reasonable search for and has produced all non-

privileged responsive documents, including those from the files of Sam Palmisano and Irving

Wladawsky-Berger."  Shaughnessy Decl. (4/19/04) at 3 (Exh. C).  It is now obvious that IBM's

certification of compliance was false – the files of the software engineers in the LTC had not

even been reviewed, let alone responsive non-privileged documents been produced.

The next discovery controversy centered on SCO's request for AIX and Dynix source

code and revision-history information to show contributions of (among other things) code or

methods and concepts from those UNIX derivatives into Linux.  Following extensive briefing

and argument on SCO's first Renewed Motion to Compel, the Court entered its Order of January

18, 2005.  In that Order, the Court, reciting the broad scope of discovery authorized by the

Federal Rules, and the relevance of information regarding revisions to AIX and Dynix to SCO's

liability theories, ordered the production of "all versions and changes to AIX and Dynix" –

essentially (as the court recognized) the production of information contained in the CMVC and

RCS systems maintained by IBM.  The Court also required IBM to Supplement Interrogatory

No. 5 by providing "programmer's notes, design documents, white papers, the comments and

notes made by those who did the changes, the names and contact information of individuals who

made the changes and what changes they specifically made."[1]  Order (1/18/05) at 15-16.

IBM then sought reconsideration of that Order.  In the course of meet-and-confer

discussions, and then in its motion to reconsider, IBM took the position that it was not required

to "detail its Linux contributions."  IBM Motion for Reconsideration at 3 n.4.  Alarmed by this

position, SCO responded in its Opposition Memorandum that Interrogatory No. 5 and the

Court's January 2005 Order covered contribution information for Linux as well as for AIX and

Dynix.  SCO explained that this "information goes to the very core of SCO's claims," and that

"SCO requires access to [Linux] development history (including both code and related

documentation) for exactly the same reason this Court has held that SCO needed access to the

material evidencing the developers and development process of Dynix and AIX themselves."

SCO Opp. Mem. at 9 and n.4.  In its Reply, IBM argued that the Court should not require it to

produce public Linux contributions, but never disclosed that it had never produced the obviously

non-public documents related to those contributions.

---

[1] Initially the Court ordered this information to be provided for the 3000 individuals who made the most
contributions and changes to the development of AIX and Dynix.  Order (1/18/05) at 16.  Upon IBM's
Motion for Reconsideration, the Court "deferred" IBM's full compliance with that Order and required
IBM to initially provide responsive information from the files of the 100 individuals who made the most
contributions and changes to the development of AIX and Dynix.  Order (4/19/05) at 4.  The Court clearly
contemplated that SCO would then be entitled to "identify additional developers from whose files it
would like additional production and IBM can then provide the information."  Id. at 5.

The Court sought to ensure that IBM understood its obligation to produce non-public Linux contribution information. The Court did not consider ordering a new scope of production – that already had been done. Instead, the Court simply reiterated that "prior orders make it clear that IBM is to provide ALL non-public Linux contribution information." IBM, in its current Opposition, appears to treat "contribution information" as simply code contributions themselves.

Not only can IBM's position not be squared with the plain language of this Court's Orders and IBM's prior agreement, it also makes no sense. IBM repeatedly represented to the Court that its Linux code contributions were public. If this is so, by ordering IBM to produce non-public Linux contribution information, the Court required more production than the contributions themselves. Nothing in any of the Court's Orders in any way limited IBM's obligation to produce all of the non-public documents concerning IBM's Linux contributions in the possession of IBM employees – in the LTC and elsewhere.

Even after the Court's April 19, 2005 Order, IBM apparently still did not produce non-public Linux contribution information in the form of design notes, work papers, interim code drafts, and the like. Yet again, however, IBM provided SCO a blanket assurance that it had "fully complied" with this Court's Order. See Letter dated July 19, 2005, from T. Shaughnessy to B. Hatch, at 1 (Exh. D). That assurance, as we now know from IBM's Opposition and Daniel Frye's declaration, was false.

In sum, contrary to IBM's assertions in its Opposition, documents concerning IBM's Linux contributions, have been ordered produced on two occasions, and IBM previously agreed to produce all documents "relating" to its Linux contributions and provided assurance that full compliance with the Court's Orders had been made. The discovery that IBM has deliberately

withheld, consisting of hundreds of thousands of the most relevant documents conceivable, is simply astounding.

## II.   IBM'S ASSERTIONS OF EXCESSIVE BURDEN ARE IRRELEVANT AND UNPERSUASIVE

Very little needs to be said in response to IBM's contentions that production of documents concerning its development of Linux contributions is of marginal relevance and unduly burdensome and time-consuming.  The short response is that such documents go to the very heart of this case, Court orders dating back to March 2004 have required their production, and IBM has agreed and promised (even prior to those orders) to produce them.

IBM asserts that the public information concerning Linux development and the documents that IBM has elected to produce provide a sufficient basis upon which SCO can evaluate its claims.  It is not for IBM to select some partial universe of responsive documents and declare that discovery of something less than that universe is sufficient.  Moreover, given that IBM has not gathered and reviewed the responsive documents – as Daniel Frye's declaration on burden necessarily implies – it is hard to see how IBM can make any statement at all regarding the substance or relevance of the documents at issue.

IBM also asserts, relying on Daniel Frye's declaration, that rounding up responsive documents from the LTC simply would be too difficult.  Aside from the fact that gathering and reviewing those documents was precisely what IBM represented (in September 2003) that it would do, it is preposterous for IBM to suggest that gathering documents from approximately 300 developers who work in the LTC is unreasonably burdensome.

Moreover, to the extent that gathering and reviewing such documents is time-consuming, that only shows that IBM created the purported predicament by not promptly performing those

tasks when it promised to do so and or when ordered by the Court. Although IBM's delay (and the resulting prejudice to SCO) is relevant in determining the nature of an appropriate sanction upon IBM, it is no justification whatsoever for IBM's continual and deliberate failure to produce at least hundreds of thousands of documents containing Linux contribution information generated or maintained by the employees of IBM involved in the Linux project.

## CONCLUSION

SCO respectfully requests that the Court compel IBM's immediate compliance with outstanding discovery orders requiring production of all Linux contribution information, all documents generated by and maintained by IBM employees involved in the Linux project, and all non-public documents related to IBM's Linux contributions. In addition, SCO respectfully requests that the Court consider an appropriate sanction against IBM for its failure to comply with previous Orders compelling production of that information.

DATED this 5th day of October, 2005.

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

By

*Counsel for The SCO Group, Inc.*

10

## CERTIFICATE OF SERVICE

Plaintiff The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Plaintiff's Reply Memorandum in Further Support of Its Renewed Motion to Compel was served by U.S. mail, hand delivery, and facsimile on Defendant International Business Machines Corporation on the 5th day of October, 2005:

By U.S. Mail and Facsimile:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York  10604

By Hand Delivery and Facsimile:

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

# EXHIBIT A



Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Ste. 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP,<br><br>      Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>      Defendant. | **PLAINTIFF'S FIRST REQUEST<br>FOR PRODUCTION OF DOCUMENTS<br>AND FIRST SET OF<br>INTERROGATORIES**<br><br>Case No. 2:03CV0294DAK<br><br>Judge: Dale A. Kimball<br>Magistrate David Nuffer |

Defendant is directed to give answers to the written interrogatories separately, fully, in writing, under oath, and in accordance with the following definitions and instructions. Defendant is requested to produce the documents and things in its possession, custody or control pursuant to the document requests.

Answers to the interrogatories and all documents and things responsive to the document requests must be served on the undersigned attorneys for The SCO Group at the offices of Boies, Schiller & Flexner LLP, 100 Southeast Second Street, Suite 2800, Miami, Florida 33131 within 30 days of service of these interrogatories and document requests.

## DEFINITIONS AND INSTRUCTIONS

For purposes of these interrogatories and requests for production of documents, the following definitions and instructions apply.

A. **Definitions.**

1. The term "AIX" shall mean the UNIX-based operating system distributed and/or developed by IBM, including all prior versions, releases and maintenance modifications.

2. The term "concerning" shall mean relating to, referring to, reflecting, describing, evidencing, referencing, discussing or constituting.

3. The term "describe" shall mean in the case of an event or circumstance, to set forth in detail the date, time, place, individuals or entities involved and context and content of the event or circumstance.

4. The term "document" shall be deemed to include every record of every type including, without limitation, information stored on any electromagnetic storage device, or computer, any written, printed, typed, recorded, stored, or graphic matter, however

2

produced, reproduced, or existing in the possession, custody, or control of Defendant, or any agent, employee, or attorney of the Defendant, and all drafts, notes, or preparatory material concerned with said document, and every additional copy of such record or document where such copy contains any commentary, notation, or other change whatsoever that does not appear on the original or other copy of the document produced. "Document" shall be deemed also to include any summary of a document or documents called for hereafter.

5.    The term "Dynix" shall mean the UNIX-based operating system distributed and/or developed by Sequent Computer Systems, Inc. and/or IBM, including all prior versions, releases, derivative works, methods, and modifications.

6.    The terms "IBM," "Defendant" "you," "your," and any synonym thereof and derivatives therefrom are intended to and shall embrace IBM and include its parents, subsidiaries, divisions, or affiliates and any corporate predecessor or successor of any of them, **including Sequent Computer Systems, Inc.**, and, in addition all of the Defendant's attorneys and accountants, and all of its respective agents, servants, associates, employees, representatives, investigators, officers, directors and others who are or have been in possession of or may have obtained information for or on behalf of such Defendant in any manner with respect to any matter referred to in the pleadings in the above-styled case.

7.    The term "identify" shall mean:

      a. in the case of a natural person, to state the full name, current or last known job title and position, current or last known address, current or last known home and work telephone numbers, and current or last

known electronic mail address, and to indicate the basis of that person's knowledge, including but not limited to the identification of documents and communications and a description of his/her personal involvement in any transaction, meeting, software development, marketing, or other activity relating in any way to the allegations of the Complaint and any defenses;

b. in the case of any entity other than a natural person, to state its name, address, principal place of business and, if applicable, place of incorporation and a contact person at the entity;

c. in the case of a document, to state the author(s), title, subject matter, date, place, source of publication of the document and substance of the document;

d. in the case of an oral communication, to give a complete description of such oral communication, including but not limited to: (i) the speaker(s) and actual or intended recipient(s) or witnesses of the communication; (ii) the date of the communication; and (iii) the substance of the communication;

e. in the case of alleged trade secrets or confidential or proprietary information, whether computer code, methods or otherwise, to give a complete and detailed description of such trade secrets or confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information, and the location (by module

4

name, file name, sequence number or otherwise) of those lines of code within any larger software product or property.

    f.  in the case of an alleged right, to give a completed and detailed description of such right, including but not limited to: (i) the issuer of the right; (ii) the date the right became effective; (iii) the date the right expired; and (iv) any limitations placed upon such right.

8.    The term "open source" shall mean any software code that is made available in source code form without any confidentiality restrictions, including but not limited to any code made available under the General Public License, the BSD license, or the MIT license.

9.    The term "person" shall be deemed to include natural persons, partnerships, firms, and corporations, and all of their subsidiaries or divisions, and, in the case of partnerships, firms, and corporations, the individual member(s) or agent(s) thereof.

10.    The term "source code" shall mean the human-readable form of a computer program written in the original and preferred form for human inspection and modification, and includes but is not limited to source code listings; compiler and/or assembler output listings for such source code; source code listings for macros or "includes" (both executable and mapping) listings used in such source code; job control language files; and/or other files required to create an executable version of a program, including but not limited to user interface components; panels; screen definitions and help text; and e-lists.

**B. Instructions.**

1. Unless otherwise indicated, all requests and interrogatories are from January 1, 1999 to present.

2. Information requested in these interrogatories shall include information within the knowledge or possession of any of Defendant's agents, employees, attorneys, investigators or any other persons, firms or entities directly or indirectly subject to Defendant's control in any way whatsoever.

3. Each interrogatory shall be answered in its entirety. If any interrogatory or subsection thereof cannot be answered in full, it shall be answered to the fullest extent possible with an explanation as to why a complete answer is not provided.

4. If there is a claim of privilege as to any communication concerning information requested by these interrogatories, specify the privilege claimed, the communication and/or answer to which that claim is made, the topic discussed in the communication and/or answer to which that claim is made, the topic discussed in the communication and the basis upon which the claim is asserted.

5. These interrogatories are continuing in nature and require supplemental or additional responses in accordance with Rule 33 of the Federal Rules of Civil Procedure.

6. All documents produced in response to these requests shall be produced in the same order as they are kept or maintained in the ordinary course of business and, where multiple pages or documents are assembled, collated, grouped, or otherwise attached, shall not be separated or disassembled.

6

7. With respect to any document responsive to this request that is withheld from production based upon a claim of privilege, please provide the information required pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

8. If, for reasons other than a claim of privilege, you refuse to produce any document requested herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

9. If there are no documents responsive to any paragraph or subparagraph set forth in the requests, please provide a written response so stating.

These requests are continuing and, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, require further and supplemental production by Defendant whenever Defendant acquires, makes, or locates additional documents between the time of the initial production hereunder and the time of the trial in this action.

## REQUESTED DOCUMENTS

1. All documents concerning or relating to any agreements entered into with AT&T relating to UNIX, including but not limited to the agreements attached to the First Amended Complaint.

2. All versions or iterations of AIX source code, modifications, methods and/or derivative works from May 1999 to the present, including but not limited to version 4.3 and above.

3. All versions or iterations of Sequent Dynix source code, derivative works, modifications and/or methods from January 1, 1999 to the present.

7

4. All documents concerning IBM's efforts, if any, to maintain the confidentiality of UNIX source code, derivative works, modifications, and/or methods.

5. All documents concerning IBM's efforts, if any, to maintain the confidentiality of AIX source code, derivative works, modifications, and/or methods.

6. All documents concerning IBM's efforts, if any, to maintain the confidentiality of Sequent Dynix source code, derivative works, modifications, and/or methods.

7. All documents concerning IBM's efforts, if any, to restrict distribution of Unix source code, derivative works, modifications, and/or methods.

8. All documents concerning IBM's efforts, if any, to restrict distribution of AIX source code, derivative works, modifications, and/or methods.

9. All documents concerning IBM's efforts, if any, to restrict distribution of Sequent Dynix source code, derivative works, modifications, and/or methods.

10. All documents concerning Prerequisite Source Licenses, including but not limited to all instances in which IBM required persons or entities to obtain a Prerequisite Source License under paragraph 2.2(a) of its contract with its customers.

11. All contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity.

12. All documents that identify any person or entity to whom IBM has provided UNIX source code, derivative works, modifications and/or methods.

13. All documents that identify any person or entity to whom IBM has provided AIX source code, derivative works, modifications and/or methods.

8

14. All documents that identify any person or entity to whom IBM has provided Sequent Dynix source code, derivative works, modifications and/or methods.

15. All documents that identify any person at IBM and Sequent who had access to UNIX source code, derivative works, modifications and/or methods.

16. All documents that identify any person at IBM and Sequent who had access to AIX source code, derivative works, modifications and/or methods.

17. All documents that identify any person at IBM and Sequent who had access to Sequent Dynix source code, derivative works, modifications and/or methods.

18. All documents, agreements and correspondence between IBM or any person or entity under IBM's control and Linus Torvalds including, but not limited to, those with or copied to Sam Palmisano.

19. All documents, agreements and correspondence with Open Source Development Lab.

20. All documents, agreements and correspondence with Red Hat.

21. All documents, agreements and correspondence with SuSe.

22. All documents, agreements and correspondence between IBM and Novell regarding UNIX, including but not limited to all correspondence with Jack Messman, Chris Stone and/or Novell's counsel.

23. All documents, agreements and correspondence between IBM and Santa Cruz Operation regarding UNIX.

24. All documents, agreements and correspondence between IBM and Caldera.

25. All documents, agreements and correspondence between IBM and The SCO Group.

26. All documents identifying any IBM personnel who are or were employed or working at the Linux Technology Center.

27. All documents identifying any IBM personnel who are or were employed or working at the Linux Center of Competency.

28. All documents concerning Project Monterey.

29. All documents concerning any UNIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

30. All documents concerning any AIX source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

31. All documents concerning any Sequent Dynix source code, derivative works, modifications or methods disclosed by IBM to any third party or to the public.

32. All documents concerning any UNIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

33. All documents concerning any AIX source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

34. All documents concerning any Sequent Dynix source code, derivative works, modifications or methods found in Linux, open source, or the public domain.

35. All documents concerning any contributions to Linux or to open source made by IBM and/or Sequent.

36. All documents sufficient to show IBM's organizational and personnel structure, including but not limited to organizational charts, flow charts and personnel directories.

37. All documents concerning any statement, affidavit, declaration, or opinion in IBM's possession relating to contributions by IBM to open source, including but not limited

10

to those statements identified in the Complaint made by Messrs. Mills, LeBlanc and Strassmeyer.

38. All documents concerning the Open Source Developer's Class, including any guidelines relating thereto.

39. All documents concerning export controls for any UNIX source code, derivative works, modifications or methods contributed to open source, including all portions of AIX, and Dynix and their derivative works, modifications, or methods.

40. All documents concerning IBM's use of Intel processors prior to January 1, 1998.

41. All documents concerning IBM's use of Intel processors after January 1, 1998.

42. All documents concerning IBM's contributions to development of the 2.4 and 2.5 Linux Kernel.

43. All documents concerning IBM's First Affirmative Defense that the Complaint fails to state a claim upon which relief can be granted.

44. All documents concerning IBM's Second Defense that Plaintiff's claims are barred because IBM has not engaged in any unlawful or unfair business practices, and IBM's conduct was privileged, performing the exercise of an absolute right, proper and/or justified.

45. All documents concerning IBM's Third Affirmative Defense that Plaintiff lacks standing to pursue its claims against IBM.

46. All documents concerning IBM's Fourth Affirmative Defense that Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

11

47. All documents concerning IBM's Fifth Affirmative Defense that Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine or the independent duty doctrine.

48. All documents concerning IBM's Sixth Affirmative Defense that Plaintiff's claims are barred by the doctrines of laches and delay.

49. All documents concerning IBM's Seventh Affirmative Defense that Plaintiff's claims are barred by the doctrines of waiver, estoppel and unclean hands.

50. All documents concerning IBM's Eighth Affirmative Defense that Plaintiff's claims are, in whole or in part, preempted by federal law.

51. All documents concerning IBM's Ninth Affirmative Defense that Plaintiff's claims are improperly venued in this district.

52. All documents used, referred to, identified, or relied upon in responding to Plaintiff's First Set of Interrogatories.

## INTERROGATORIES

1. Identify the name and address of the person(s) answering these interrogatories, and, if applicable, the persons' official position or relationship with Defendant?

2. List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues of this lawsuit; and specify the subject matter about which the witness has knowledge.

3. If you intend to call any expert witness at the trial of this case, state, as to each such expert witness, the name and business address of the witness, the witness' qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for each opinion.

4. Identify all persons who have or had access to UNIX source code, AIX source code and Dynix source code, including derivative works, modifications, and methods. For each such person, set forth precisely the materials to which he or she had access.

5. Identify all IBM or Sequent personnel that work or worked on developing source code, derivative works, modifications or methods for AIX, Dynix and Linux, specifying for each person their precise contributions to each.

DATED this 24th day of June, 2003.

By:  _____

Brent O. Hatch
HATCH, JAMES & DODGE

David Boies
Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
Attorneys for Plaintiff

13

# EXHIBIT B

# Snell & Wilmer

### L.L.P.
#### LAW OFFICES

15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
(801) 257-1900
Fax: (801) 257-1800
www.swlaw.com

September 15, 2003

SALT LAKE CITY, UTAH

PHOENIX, ARIZONA

TUCSON, ARIZONA

IRVINE, CALIFORNIA

DENVER, COLORADO

LAS VEGAS, NEVADA

Todd M. Shaughnessy (801) 257-1937
tshaughnessy@swlaw.com

### VIA FACSIMILE AND U.S. MAIL

Brent O. Hatch
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Mark J. Heise
BOIES, SCHILLER & FLEXNER, LLP
One International Place
100 SE Second Street, Suite 2800
Miami, Florida 33131

      Re:    *SCO v. IBM*

Dear Brent and Mark:

      We have reviewed Mark's letter of September 8, 2003 (the "Objection Letter"), setting forth The SCO Group's ("SCO's") "concerns" with respect to IBM's Responses and Objections to SCO's First Request for the Production of Documents and First Set of Interrogatories ("IBM's Responses"). This letter responds thereto.

      First, please be assured that we share the goal stated in second paragraph of the Objection Letter, to provide appropriately requested documents and let the facts come out in Court. We note, however, that while certain of IBM's objections may be similar in form to those lodged by SCO in its Response to IBM's First Set of Interrogatories and First Request for Production of Documents ("SCO's Responses"), IBM's Responses were made in the context of a wholly different set of discovery demands and must be evaluated independently. We address SCO's concerns in turn:

## I.    General Objections

      **General Objection Nos. 1-3, 5, 7, 10.** IBM is not affirmatively withholding responsive, non-privileged documents based on these general objections. However, it should be noted that IBM has sought to collect potentially responsive documents from individuals whom we have determined to be the most likely sources of information requested by SCO, in addition to certain centralized business files. We believe this

266795.1

# Snell & Wilmer
## L.L.P.

Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 2


constitutes a reasonable search for responsive documents given IBM's size and SCO's failure to particularize the factual basis of its causes of action. IBM is not presently seeking to collect, review or produce any documents that are not kept in the ordinary course of business by these individuals.

**General Objection No. 4.** IBM has attempted to collect, where appropriate, documents dating as far back as January 1, 1985[1] that have been retained in the ordinary course of business by the individuals identified as likely sources of responsive documents. We intend to produce any responsive, non-privileged information identified in their files.

**General Objection No. 6.** As you are well aware, the Amended Complaint fails to particularize, among other things, the code which SCO alleges IBM has wrongfully contributed to Linux. Despite IBM's repeated requests for this information -- which is clearly within SCO's possession given its willingness to provide the same to analysts, customers and members of the press -- SCO has refused to provide any further clarification for IBM. We believe that discovery in this case is properly limited to information concerning such alleged disclosures, and, without identification thereof by SCO, we are left to interpret in a vacuum a series of overbroad requests. We reiterate our request to you to define the scope of the alleged wrongdoing in this case so that discovery can be appropriately tailored.

**General Objection No. 8.** IBM has not, as a general matter, attempted to collect responsive documents that are generally available to the public, including SCO. To the extent such documents are otherwise included in the files that we have otherwise collected, however, IBM is not affirmatively withholding them on the basis of this objection.

**General Objection No. 10.** Please see our preceding response re: General Objections 1-3, 5, 7 and 10.

**General Objection No. 11.** In several instances, IBM has already provided further clarification of this objection throughout the Specific Objections. See, e.g., IBM's Response to Request No. 39. Despite SCO's lack of specificity, IBM has attempted in

---

[1] Per your e-mail to David Marriott of July 9, 2003, we understand that the date range specified in Instruction No. 1 was a typo, and should have stated "January 1, 1985 to present".

## Snell & Wilmer
### L.L.P.

Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 3


most instances to discern the information being sought and will produce responsive, non-privileged documents despite this General Objection and the Specific Objections.

**General Objection No. 15.**  Please see our preceding response re: General Objections 1-3, 5, 7 and 10 for clarification of the reasonable search that is being conducted by IBM.  IBM's Responses already specify each request in response to which a reasonable search for documents is being performed.

**General Objection No. 17.**   We expect to commence a rolling production of documents this week.  Please confirm that, until the stipulated protective order is entered by the court, SCO will treat all information produced by IBM on an attorneys-eyes-only basis.  (We will, of course, do the same for SCO.)  We will send the first installment of discs to Mark's attention upon receipt of that confirmation.

**General Objection No. 18.**  IBM is not withholding non-privileged, responsive documents on the basis of this objection.

**General Objection No. 19.**  IBM is not withholding non-privileged, responsive documents on the basis of our objections to these definitions insofar as they relate to prior versions, releases and updates of AIX or Dynix.  Please see the upcoming response re: General Objection No. 22 for our continued concerns relating to your definitions' use of the terms "derivatives works", "modifications" or "methods".

**General Objection No. 20.**  IBM stands by this objection.  For purposes of responding to SCO's requests, we have interpreted IBM to mean the International Business Machines Corporation, its subsidiaries, divisions and employees.

**General Objection No. 21.**  IBM accepts the definition of UNIX set forth at page 21 of its own First Set of Interrogatories and First Request for Production of Documents.

**General Objection No. 22.**  Until SCO specifies the code which it alleges IBM has wrongfully contributed to Linux, we cannot make any meaningful interpretation of these terms in order to properly define the scope of documents for production.  We reiterate our request that you provide this information forthwith.  Please see our preceding response re: General Objection No. 6.



Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 4


## II.   Document Responses

**Response to Request No. 1.**  As stated in our preceding response re: General Objections 1-3, 5, 7 and 10, we have undertaken to search for responsive documents in the files of individuals most likely to possess the same.

**Response to Request Nos. 2 and 3.**  Please see our preceding response re: General Objection No. 22.  In addition, IBM stands by its objection that these requests are both overbroad and unduly burdensome.  Two versions of AIX were shipped from May 1999 to the present: versions 4 and 5.  We have already agreed to provide the final releases of those versions: 4.3.3 and 5.2.  In addition, we will produce AIX version 5.1 for Itanium-based systems.  These will include the fixes and updates to these releases. From January 1, 1999 to the present, one version of Dynix was shipped: version 4.  We have already agreed to produce three releases of that version (4.4.10, 4.5.3, and 4.6.1) and will produce three other releases as well (4.2.4 and 4.3.1).  Again, these will include the fixes and updates to these releases.  Please the note that foregoing will require a substantial number of third-party notifications prior to production.

**Response to Requests Nos. 4-6.**  Please see our preceding response re: General Objection No. 22.  We are not withholding non-privileged, responsive documents based on our objections that certain requests are duplicative.  While we are unaware of any requirement under the Federal Rules to articulate whether documents produced in response to different requests are identical, we expect that many of the documents produced in response to these requests (for example, confidentiality agreements) are also responsive to Requests 7, 8 and 9, respectively.

**Response to Request Nos. 7-9.**  Please see our preceding response re: Response to Requests Nos. 4-6.

**Response to Request No. 10.**  You have adopted the definition and limitation previously articulated by IBM in its response to this request.  Subject thereto, and as previously stated, IBM will conduct a reasonable search for and produce non-privileged documents responsive to this request.

**Response to Request No. 11.**  IBM stands by its objections in response to Request No. 11.  As drafted and clarified in your Objection Letter, this request calls for all documents relating to any open-source contributions of any kind by IBM -- and as such is highly objectionable for the reasons stated in IBM's Responses.  Contrary to the suggestion in your objection letter, IBM does not keep a centralized listing of "its contributions" to open-source.  With respect to IBM's contributions to Linux, however,



Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 5

summary information identifying IBM contributions is readily available to SCO and
members of the public on a variety of Linux websites -- including kernel.org and
sourceforge.net. We note, however, that various divisions of IBM prepare patches
contributed to open-source without confidentiality restrictions that are completely
unrelated to this litigation. The only open-source contributions pertinent to this case are
those which SCO alleges were made by IBM in violation of confidentiality provisions in
the agreements inherited by SCO -- which, as noted above, SCO has time and again
refused to specify.

Absent the necessary clarification from SCO and despite these well-founded
objections to Request No. 11, IBM has undertaken to collect documents from various
members of the Linux Technology Center (the "LTC") who are responsible for work
relating to open-source contributions to Linux. In addition, we are collecting materials
from the Open Source Steering Committee (the "OSSC), the group within IBM
responsible for reviewing and approving open-source projects. We intend to produce
non-privileged documents identified in these files that relate to IBM open-source
contributions to Linux.

**Response to Request Nos. 12-14.** Please clarify your "concerns" with respect to
our responses to these requests. Those set forth on Page 8 of your Objection Letter, while
referencing these requests, appear to be directed at Request No. 11.

**Response to Request Nos. 15-17.** We withdraw our objection regarding the
duplicative nature of these requests: given your clarification, we understand that
Requests 12-14 call for identification of third parties (if any) to whom Unix, AIX or
Dynix source code was provided and that Requests 15-17 call for identification of
internal IBM/Sequent personnel who had access to the same. We disagree, however, that
SCO is entitled to "all documents" that identify those IBM/Sequent personnel. Read
literally, this request (as drafted) would require us to search for and produce all
documents concerning any IBM employee with access to AIX code – including ID
badges, personnel files, payment records, benefits statements, etc. These are classic
examples of requests for which documents sufficient to show the pertinent information
sought (i.e., the identity of persons with access to code) will suffice -- we intend to
produce a list of the same in response to your interrogatories. What else do you want?

**Response to Request No. 18.** IBM stands by its objections in response to this
request. Despite these objections, however, we can confirm that we have included in our
search Sam Palmisano and other individuals who were to determined to be likely to
possess correspondence or agreements (if any) with Linus Torvalds. We intend to

# Snell & Wilmer
L.L.P.

Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 6

produce from those files any correspondence or agreements with Mr. Torvalds, as well as any non-privileged documents relating thereto.

**Response to Request Nos. 19-25.** IBM stands by its objections in response to these requests. You state that you "do not know what IBM finds non-sensical about these requests)": as explained in IBM's Responses, the phrase "documents ... with" these different enumerated entities simply does not make sense. Given your refusal to clarify, we have interpreted this language to mean documents relating to the correspondence or agreements otherwise sought in these requests, and will undertake to produce such non-privileged documents (if any) identified in the files searched.

**Response to Request Nos. 26-27.** IBM stands by its objections in response to these requests. As drafted, these requests would literally call for a broad range of documents completely unrelated to the issues in the litigation -- for example, personnel files, payment records, benefits statements, etc. These are additional examples of requests for which documents sufficient to show the information sought (i.e., the identity of persons employed in the LTC or Linux Center of Competency) will suffice -- we intend to produce a list of same in response to your interrogatories. What else do you want?

**Response to Request No. 28.** IBM stands by its objections in response to this request. Project Monterey was a broad-reaching initiative spanning several years and involving work by hundreds of different IBM employees. The request as drafted would call for the collection of every document concerning (as that term is broadly defined) Project Monterey from every such individual at the company. Such an endeavor would be highly burdensome on IBM and is not justified by a likelihood that admissible evidence would be uncovered through such efforts. Nevertheless, we have attempted to gather documents responsive to this request by searching for documents from IBM employees with significant involvement in technical, business development, and contractual aspects of Project Monterey. We intend to produce non-privileged documents (if any) concerning Project Monterey identified in the files of these individuals.

**Response to Request Nos. 29-31.** Please see our preceding responses re: General Objection No. 22. Nevertheless, we will produce non-privileged documents identified through a reasonable search sufficient to identify Unix, AIX or Dynix source code disclosed by IBM to a third party or the public.

**Response to Request Nos. 32-34.** IBM stands by its objection with respect to use of the terms "derivative works, modifications, or methods", as stated in the preceding response re: General Objection No. 22. However, we appreciate your clarification

# Snell & Wilmer
### L.L.P.

Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 7

regarding the scope of documents sought in these requests.  We will produce any non-privileged memoranda discussing the subject matter of these requests or other companies' contributions to Linux, in addition to any other non-privileged, responsive documents identified.

**Response to Request No. 35.**[2]  For the reasons stated in the preceding response re: Request No. 11, Request No. 35 as drafted calls for production of a broad scope of documents that are entirely unrelated to the subject matter of this litigation. Nevertheless, we are undertaking to produce from the files of LTC and OSSC personnel non-privileged documents that relate to IBM's open-source contributions to Linux.  We believe this is a reasonable compromise at this stage of discovery.

**Response to Request No. 36.**  IBM stands by its objections to this request.  While we appreciate SCO's cooperation in producing documents in response to IBM's Request No. 52, it is irrelevant to IBM's position here.  Unlike SCO, IBM has hundreds of operating divisions worldwide and over 300,000 employees.[3]  (By contrast, we understand that SCO has only two operating divisions and approximately 340 employees.)  SCO's unlimited request for "all documents that show IBM's organizational and personnel structure" would thus be quite burdensome and is simply not justified by any likelihood that admissible evidence would be uncovered from these efforts.  Nothing in your Objection Letter establishes the contrary.  We expect to produce documents relating to the IBM units involved in AIX, Dynix and Linux development.  If there are other specific areas of the company that you believe are pertinent to this case, please articulate them and we will consider additional production.

**Response to Request No. 37.**  IBM stands by its objections in response to this request.  For the reasons stated in the preceding responses re: Request Nos. 11 and 35, requests for statements regarding IBM's contributions to open-source, without further limitation, are plainly overbroad.  Furthermore, as stated in the preceding response re: General Objection 8, IBM has not affirmatively sought to collect publicly available information that is equally accessible to SCO -- such as third-party, public articles reporting on IBM statements regarding its contributions to open source.  Subject to these

---

[2] IBM withdraws the objection stated in the second sentence of its original Response to Request No. 35.

[3] For an overview of the corporation, we suggest you consult IBM's most recent 10K filing.

## Snell & Wilmer
### —— L.L.P. ——

Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 8

objections, IBM has conducted a reasonable search for responsive documents from individuals likely to possess such information, including top company executives and their speechwriters, as well as from centralized repositories of company press releases. Privileged documents will, of course, be logged appropriately. What else do you want?

**Response to Request Nos. 38 and 39.**   IBM stands by its objections in response to these Requests.

Request No. 38 is plainly overbroad and seeks to impose undue burdens on IBM. The Open Source Developer's Class is a broadly administered educational session that has been attended by hundreds of IBM employees worldwide. As drafted, Request 38 would literally call for IBM to interview each such employee who attended these sessions, as well as each employee who administered such session, to collect, for example, every note taken or handout obtained. Such efforts would not be justified by any likelihood that admissible evidence would be discovered through them. Nevertheless, we have undertaken to perform a reasonable search for documents relating to the Open Source Developer's Class and will produce non-privileged documents responsive to this request. Privileged documents will, of course, be logged appropriately.

Likewise, we have attempted to reasonably construe your Request No. 39. We have identified IBM personnel with primary responsibility for matters relating to export controls, and intend to produce non-privileged documents collected from their files sufficient to show IBM's policies pertaining to Unix, AIX or Dynix exports (if any).

**Response to Request Nos. 40-41.** IBM stands by its objections in response to these requests. IBM has used Intel processors in a broad range of its products and services before and after 1998: for example, most of the personal computers shipped since 1998. As drafted, these requests would literally call for production of a vast array of documents wholly irrelevant to this litigation -- ranging from contracts with Intel, to technical specifications and development documents relating to products that incorporate Intel processors, to marketing materials, sales and financial information relating to the same, to name only a few. Please clarify the types of documents you are interested in so that we can have a meaningful discussion about their relevance and the scope of production.

**Request Nos. 42.** Please see our preceding responses re: Request No. 11 for a description of the documents that we intend to produce with respect to IBM's contributions to Linux.

266795.1



Brent O. Hatch
Mark J. Heise
September 15, 2003
Page 9

**Request Nos. 43-52.** We obviously disagree with you as to the merits of IBM's objections. Nevertheless, we intend to produce responsive, non-privileged documents.

### III.   Interrogatory Responses

**Interrogatory No. 2.** IBM stands by its objections in response to this interrogatory. Nevertheless, we have undertaken to identify IBM officers and employees believed to have knowledge about the issues in this lawsuit and expect to amend our answer to this interrogatory as soon as practicable. Once you have reviewed our response, we can discuss any additional information you think you need.

**Interrogatory Nos. 4 and 5.** IBM stands by its objections in response to these interrogatories. We are, however, in the process of collecting (to the extent practicable) documents showing IBM and Sequent employees who may have had access to AT&T Unix System V, AIX and/or Dynix source code, as well as those who may have worked on developing AIX, Dynix or Linux, and intend to amend our responses these interrogatories as soon as practicable. Once you have reviewed these documents, we can discuss any additional information you think you need.

Very truly yours,

Todd Shaughnessy

cc:   David Marriott
      Alan Sullivan

# EXHIBIT C

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| THE SCO GROUP, INC., | **DECLARATION OF TODD M. SHAUGHNESSY** |
| Plaintiff/Counterclaim-Defendant, | |
| -against- | Civil No. 2:03CV-0294 DAK |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Honorable Dale A. Kimball |
| Defendant/Counterclaim-Plaintiff. | Magistrate Judge Brooke C. Wells |



I, Todd M. Shaughnessy, declare as follows:

1.      I represent IBM in the lawsuit filed against IBM by Caldera

Systems, Inc., a Delaware corporation that has since changed its name to The SCO

Group, Inc. ("SCO"), <u>The SCO Group, Inc. v. International Business Machines

Corporation</u>, Civil No. 2:03CV-0294 DAK (D. Utah 2003).

2.      The Court issued an order on March 3, 2004 (the "Order")

directing both SCO and IBM to produce certain discovery.  This declaration is

submitted in response to Section III of the Order, instructing each party "to provide to

the Court an affidavit detailing their efforts in complying with this order".  IBM has

complied fully with the Order.

3.      On March 4, 2004, IBM produced the bulk of the releases of AIX

and Dynix ordered by the Court to be produced in Section II.1 of the Order, and on

March 9, 2004, IBM completed its production of all such source code.  Although the

Court gave IBM a deadline of 45 days from the date of the Order to produce this

source code, IBM produced the source code immediately to provide SCO time to

evaluate the code and take it into account in answering IBM's discovery requests.

4.      With respect to Section II.2 of the Order, IBM undertook a

reasonable search to identify any "non-public" contributions it made to Linux.  Since

Linux is publicly developed and available via the Internet, however, all of IBM's

contributions to Linux are a matter of public record.  IBM nevertheless also

endeavored to identify materials that IBM unsuccessfully attempted to contribute to

2

Linux and are not publicly available.  To the extent IBM identified any such material, IBM has produced it.

5.      With respect to Section II.3 of the Order, IBM has undertaken a reasonable search for and has produced all non-privileged responsive documents, including those from the files of Sam Palmisano and Irving Wladawsky-Berger.

6.      Although not ordered to complete its document production by any specific date, IBM has already substantially completed its document production in response to SCO's first set of document requests and expects to shortly complete the production.

7.      IBM has, pursuant to Section II.5 of the Order, provided additional supplemental answers to SCO's first set of interrogatories.  With respect to Interrogatory No. 2, IBM has included the names of persons outside of IBM whom IBM believes may have knowledge about the issues of this lawsuit.  With respect to Interrogatory No. 5, IBM has provided contact information, where such information exists in IBM's records, for each person for whom SCO requested such information. IBM believes that the reference to Interrogatory No. 11 in Section II.5 of the Order was a typographical error, because the time for responding to Interrogatory No. 11 had not yet passed, and was not the subject of SCO's motion to compel.  In any event, IBM served on SCO its responses to SCO's Interrogatory No. 11 today, April 19, 2004, in accordance with an agreement between SCO and IBM.

8.      In response to Section II.6 of the Order, IBM asked SCO on March 9, 2004 to let IBM know for which 1,000 of the persons listed by IBM in response to

3

SCO's Interrogatory Nos. 4 and 5 SCO wished to obtain contact information. On March 26, 2004, SCO informed IBM that it wished to have contact information for all persons listed on Attachment E to IBM's answers to SCO's first set of interrogatories, as well as for 81 additional persons listed by SCO. SCO indicated that it would in the future request contact information for additional persons as appropriate, up to a total of 1,000 names. Of the 328 persons listed on Attachment E, IBM was able to locate contact information for 326 of them, and has provided such contact information to SCO. Of the 81 additional persons listed by SCO, only 32 of them (not including persons already appearing on Attachment E) were listed in IBM's answers to SCO's Interrogatory Nos. 4 and 5. IBM has provided contact information for each of those 32 persons. Thus, to date, IBM has provided SCO with contact information for 358 of the persons listed by IBM in response to SCO's Interrogatory Nos. 4 and 5. IBM will provide contact information for additional names as SCO requests such information, up to a total of 1,000 names.

9.     With respect to Section III of the Order, IBM has provided, and will continue to provide, SCO with source logs that identify how documents were kept in the ordinary course of business, for all materials produced in discovery.

10.     The documents and interrogatory answers provided to SCO are given to the best of IBM's knowledge and are complete, detailed and thorough.

11.    I declare under penalty of perjury that the foregoing is true and

correct.

Dated:  April 19, 2004

_____
Todd M. Shaughnessy

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2004, a true and correct copy of the

foregoing was sent by U.S. Mail, postage prepaid, to the following:

        Brent O. Hatch
        Mark F. James
        HATCH, JAMES & DODGE, P.C.
        10 West Broadway, Suite 400
        Salt Lake City, Utah 84101

        Stephen N. Zack
        Mark J. Heise
        BOIES, SCHILLER & FLEXNER LLP
        100 Southeast Second Street, Suite 2800
        Miami, Florida 33131

        Kevin P. McBride
        1299 Ocean Avenue, Suite 900
        Santa Monica, California 90401

295077.1

6

# EXHIBIT D

# Snell & Wilmer
## L.L.P.
### LAW OFFICES

15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
(801) 257-1900
Fax: (801) 257-1800
www.swlaw.com

Todd M. Shaughnessy
801-257-1937
tshaughnessy@swlaw.com

SALT LAKE CITY, UTAH

PHOENIX, ARIZONA

TUCSON, ARIZONA

IRVINE, CALIFORNIA

DENVER, COLORADO

LAS VEGAS, NEVADA

July 19, 2005

*VIA FACSIMILE AND U.S. MAIL*

Brent O. Hatch
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

    *Re:*    *SCO v. IBM; IBM v. SCO*

Dear Brent:

    I write in response to Ted Normand's July 14, 2005 letter to David Marriott.

    First, Ted's concern that IBM has withheld pre-1991 AIX source code is unfounded. To the extent there is AIX source code in CMVC that was written prior to 1991 and maintained in CMVC, we have produced it. We have repeatedly searched for, but have been unable to find, any pre-1991 AIX source code or revision control information other than that which may be in CMVC. Please provide us with the basis for Ted's statement: "Our information is that IBM does possess the source code for all versions of AIX prior to 1991". If you have any specific information about where source code for versions of AIX prior to 1991 are located within IBM, let us know and we will follow up on it.

    Second, with respect to IBM's Linux contributions, the Court expressly ruled in an Order dated March 3, 2004 (and reaffirmed in its April 19, 2005 Order) that IBM is not required to produce to SCO information concerning IBM's Linux contributions insofar as such information is publicly available. The Court only ordered IBM to produce "all non-public Linux contribution information". (April 19, 2005 Order at 5-6.) As detailed in Peter Ligh's July 5 letter to Ted, IBM has fully complied with that obligation.

    The issues you raise under the headings of "Approximately 245,325 Missing Files", "Approximately 152,887 Un-Catalogued Files", and "Removal of CMVC Change-Log History" require more investigation and analysis. Because some of the people at IBM who were involved in preparing the CMVC data for production to SCO several months ago are currently on vacation, I am unable to provide a response to those issues at this time. We will provide you with responses to those issues as soon as we can.

358874.1

# Snell & Wilmer
### L.L.P.

Brent O. Hatch
July 19, 2005
Page 2

Very truly yours,

Todd M. Shaughnessy

TMS:dw
cc:    Edward Normand
       David Marriott
       Peter Ligh
       Amy Sorenson

359874.1

PAGE 3/3 * RCVD AT 7/19/2005 6:24:30 PM [Eastern Daylight Time] * SVR:RIGHTFAX/4 * DNIS:8300 * CSID:8012571800 * DURATION (mm-ss):01-00