SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

FILED
U.S. DISTRICT COURT
2005 OCT -6 P 12: 12
DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN OPPOSITION TO SCO'S MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS** <br><br> Civil No.: 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM"), through counsel, respectfully submits this Memorandum in Opposition to The SCO Group, Inc.'s ("SCO") Motion for Leave to Take Additional Depositions.

## Preliminary Statement

SCO seeks leave to take an additional 25 depositions on the grounds that it needs the extra depositions to prosecute its claims and defend against IBM's counterclaims. SCO contends that taking these additional depositions will not require an extension of the discovery schedule. As discussed below, SCO has not shown and cannot show that it requires the additional depositions. Moreover, SCO's delayed request for an additional 25 depositions would, if granted, unduly burden IBM and threaten yet again to derail the discovery schedule. SCO's request for more depositions should be denied.

## Argument

### I. SCO HAS FAILED TO SHOW GOOD CAUSE FOR AN ORDER ALLOWING ADDITIONAL DEPOSITIONS.

SCO contends that it requires an additional 25 depositions because the case involves numerous complex claims and many witnesses and that it did not appreciate the scope of its deposition needs when the parties agreed to 40 depositions per side. SCO has not shown, and cannot show, good cause to modify the scheduling order, as is required to justify increasing the number of depositions per side. See Medtronic, Inc. v. Guidant Corp., Civil File No. 00-1473, 2003 U.S. Dist. LEXIS 26058, at *2 (D. Minn. May 9, 2003) (attached hereto as Exhibit A).

The Federal Rules of Civil Procedure presumptively limit the number of depositions in a case to 10 per side. Fed. R. Civ. P. 30(a)(2)(A). Recognizing the potential need for more than 10 depositions here, the parties agreed to allow 40 per side, an increase approved by the Court in its July 10, 2003 scheduling order. Forty depositions per side is four times the presumptive amount of depositions and more than enough to meet the parties' needs in this case. To date,

two-and-a-half years after the litigation began, and with only four months left before the close of primary fact discovery, SCO has taken only 16 of its 40 allotted depositions.

SCO's argument for more depositions is predicated in significant part on its claim about the number of depositions it requires on patent issues. In seeking to bifurcate the patent claims from the other claims in the case, SCO represented to the Court that the patent claims "could require as many as 65 additional depositions to resolve". (SCO Reply Mem. In Supp. Of Mot. For Separate Trials at 3.) Even in its present motion, SCO argues that it needs to take the depositions of "dozens" of witnesses on the patent claims. (SCO Expedited Mot. and Supplemental Mem. For Leave To Take Additional Deps. ("SCO Mem.") at 4.) Based in part on SCO's effort to expand the number of depositions in the case (and thereby delay its resolution (see Section II below)), IBM has agreed to withdraw its patent claims.[1] Thus, SCO no longer needs any patent depositions, let alone dozens or as many as 65. For this reason alone, SCO's motion for 25 additional depositions should be denied.

Even if (contrary to fact) depositions were still required as to IBM's patent claims, SCO's other reasons for needing more depositions do not survive scrutiny. SCO argues that it needs additional depositions to support its contract and copyright claims, to defend against IBM's other counterclaims, and to depose programmers who participated in developing AIX prior to 1991. (Mem. at 3-5.) Yet SCO makes no attempt to explain to the Court or to IBM which specific persons' depositions it desires to take, why those depositions are needed to support or defend against claims in the case, or why those depositions could not be fully accommodated under

---

[1] While IBM continues to believe that SCO infringed IBM's valid patents, IBM agreed to withdraw its patent counterclaims to simplify and focus the issues in this case and to expedite their resolution. The little discovery that SCO has produced regarding IBM's patent claims makes clear that there is insufficient economic reason to pursue these claims. Since SCO's sales have been, and are, limited, a finding of infringement would yield only the most modest royalty or award of damages and would not justify the expense of continuing prosecution of these claims.

3

SCO's existing deposition quota. With respect to its own contract and copyright claims, SCO states only that it has identified a list of "more than thirty AIX and Dynix programmers" it wishes to depose.[2] (Mem. at 3.) Similarly, in its discussion of IBM's counterclaims, SCO merely lists IBM's counterclaims and state that "many of these other counterclaims raise entirely new and complex issues".[3] (Mem. at 4.) That is insufficient to meet SCO's burden of showing its need for additional depositions. "[A] party seeking leave to take more depositions, or to serve more Interrogatories, than are contemplated by the Federal Rules or by the Court's Scheduling Order, must make a particularized showing of why the discovery is necessary". <u>Archer Daniels Midland Co. v. Aon Risk Servs., Inc.</u>, 187 F.R.D. 578, 586 (D. Minn. 1999); <u>see also</u> <u>Power & Tel. Supply Co. v. Suntrust Banks, Inc.</u>, No. 03-2217MIV, 2004 U.S. Dist. LEXIS 6326, at *6-7 (S.D.N.Y. Mar. 15, 2004) ("[Plaintiff] has failed to identify the proposed additional depositions it desires to take and why the additional depositions are needed. Without this information, the court is unable to determine if additional depositions are justified under the guidelines of Rule 26(b)(2).") (attached hereto as Exhibit B).

---

[2] SCO suggests incorrectly that the Court's previous orders contemplated that SCO would require an expansion of the deposition limits. (Mem. at 2-3.) Nothing in the Court's previous orders even hinted that SCO would not be required to stay within the established deposition limits.

[3] We believe the parties' agreement took into account the possibility of counterclaims, which are commonly asserted in cases of this kind, just as they were asserted here. SCO suggests that it did not take account of the possibility of counterclaims in agreeing to 40 depositions per side. Whether or not SCO did, it should have, especially where, as here, most of the counterclaims relate directly to and in some cases flow out of SCO's claims. The only counterclaims SCO can credibly contend it might not have foreseen are IBM's patent counterclaims. Even if that were true, IBM has agreed to withdraw those claims.

Moreover, IBM filed its initial Counterclaims (which included patent counterclaims) on August 6, 2003, over two years prior to SCO's current motion for additional depositions; its Amended Counterclaims on September 25, 2003, almost two years prior to SCO's current motion; and its Second Amended Counterclaims on March 29, 2004, almost a year and a half prior to SCO's current motion.

## II. GRANTING THE PARTIES ADDITIONAL DEPOSITIONS WOULD ENDANGER THE CURRENT DISCOVERY SCHEDULE.

Contrary to SCO's contention, it would be practically impossible for the parties to complete an additional 50 depositions before the end of fact discovery at the parties' current rate of taking depositions.[4]

To support the argument that its request, if granted, would not compromise the schedule, SCO states that fact discovery does not end until March 17, 2006, and that there is no reason it could not squeeze in additional depositions before then. Despite SCO's assertion about the close of fact discovery, general fact discovery closes on January 27, 2006, as the Court's July 1, 2005 Order makes clear. (July 1, 2005 Order at 4.) The only fact discovery permitted after that date (but before March 17, 2006) is fact discovery related to "Defenses to Any Claim Relating to Allegedly Misused Material". (July 1, 2005 Order at 5.)[5]

Moreover, SCO's proposal does not, as it suggests, require merely that the parties accommodate an additional 25 depositions. Under SCO's proposal the parties would each be afforded an additional 25 depositions for a total of 65 depositions per side (130 depositions cumulatively). The parties have taken only 29 depositions to date. Thus, the parties would have to complete 86 depositions in the remaining three-and-a-half months of general fact discovery (assuming IBM reserves 10 depositions for defensive fact discovery and SCO reserves five). That would require the parties to conduct an average of 25 depositions per month. For sake of

---

[4] SCO recognizes that if it is to be given additional depositions, IBM should be afforded additional depositions as well. Thus, SCO's proposal actually contemplates an additional 50 depositions total—more than double the presumptive total under Rule 26 for both sides of 20 depositions.

[5] SCO does not propose to limit the additional depositions it seeks to "Defenses to Any Claim Relating to Allegedly Misused Material".

comparison, the parties have conducted an average of one deposition per month over the life of the case, and they have never conducted more than 10 depositions in a single month[6].

As a result, it is very difficult to view SCO's request as anything other than another attempt to modify the discovery schedule and prolong the case, which is in its third year. The number of depositions allowed to both parties (40) is sufficient to meet their needs, as evidenced by the rate at which depositions have been taken to date. Because the issues presented in this case deserve prompt resolution, the Court should not permit discovery that would make that practically impossible.

### III. IF THE COURT ELECTS TO ALLOW MORE DEPOSITIONS, IT SHOULD ALLOW SCO NO MORE THAN FIVE AND GIVE IBM A MEANINGFUL OPPORTUNITY FOR FURTHER DEPOSITION DISCOVERY.

While IBM believes that no increase in the deposition limit is warranted, in the event the Court decides to grant SCO additional depositions, no more than five additional depositions should be allowed.

If the Court allows SCO to depose any additional witnesses, it should allow IBM an equal number of additional deposition days with SCO witnesses.[7] As SCO itself acknowledges, IBM "has far fewer potential SCO and third-party witnesses to depose". (SCO Mem. at 2.) That is because there are far fewer SCO than IBM witnesses. SCO's offer to allow IBM to take depositions of additional persons may be meaningless unless IBM is allowed an additional deposition day for each additional deposition allowed SCO.

---

[6] Or 11, if one separately counts multiple deponents testifying in response to a single 30(b)(6) notice.

[7] The scheduling order already provides that up to two witnesses may be deposed for two days of seven hours each. (July 10, 2003 Order.)

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court deny SCO's motion for leave to take additional depositions.

DATED this 6th day of October, 2005.

                                        Snell & Wilmer L.L.P.

                                        /s/ Alan L. Sullivan

                                        Alan L. Sullivan
                                        Todd M. Shaughnessy
                                        Amy F. Sorenson

                                        CRAVATH, SWAINE & MOORE LLP
                                        Evan R. Chesler
                                        David R. Marriott

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

Attorneys *for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2005, a true and correct copy of the foregoing was sent to the following:

| | |
|---|---|
| Brent O. Hatch<br>Mark F. James<br>HATCH, JAMES & DODGE, P.C.<br>10 West Broadway, Suite 400<br>Salt Lake City, Utah 84101 | **(By Hand Delivery)** |
| Robert Silver<br>Edward Normand<br>BOIES, SCHILLER & FLEXNER LLP<br>333 Main Street<br>Armonk, New York 10504 | **(By U.S. Mail)** |
| Stephen N. Zack<br>Mark J. Heise<br>BOIES, SCHILLER & FLEXNER LLP<br>100 Southeast Second Street, Suite 2800<br>Miami, Florida 33131 | **(By U.S. Mail)** |

Amy F. Sorenson

368498.1

# EXHIBIT A

2003 U.S. Dist. LEXIS 26058

MEDTRONIC, INC., a Minnesota Corporation; and MEDTRONIC USA, INC., a Minnesota Corporation, Plaintiffs, v. GUIDANT CORP., an Indiana Corporation; CARDIAC PACEMAKERS, INC., a Minnesota Corporation; and GUIDANT SALES CORP., INC., Defendants. CARDIAC PACEMAKERS, INC.; and GUIDANT SALES CORP., Counter Plaintiffs, v. MEDTRONIC, INC., Counterclaim Defendant.

Civil File No. 00-1473 (MJD/JGL), Civil File No. 00-2503 (MJD/JGL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2003 U.S. Dist. LEXIS 26058

May 9, 2003, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted by Medtronic, Inc. v. Guidant Corp., 2003 U.S. Dist. LEXIS 8620 (D. Minn., May 16, 2003).

Affirmed by Medtronic, Inc. v. Guidant Corp., 2003 U.S. Dist. LEXIS 26059 (D. Minn., June 9, 2003)

**PRIOR HISTORY:** Medtronic, Inc. v. Guidant Corp., 2003 U.S. Dist. LEXIS 26039 (D. Minn., Jan. 8, 2003)

**DISPOSITION-1:** Magistrate's recommendation that Guidant/CPI's Motion to Amend Pretrial Order be granted in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs sued defendants in a patent infringement dispute. Defendants moved to amend the pretrial scheduling order (PTO) to double the document requests per party, double the deposition hours per party, and to allow additional depositions of trial witnesses not disclosed as such during the discovery period. The matter was referred to a magistrate judge.

**OVERVIEW:** Regarding the request to additional depositions and document requests, defendants failed to show good cause for amending the PTO. It was undisputed that in August 2001 the parties were aware that the case involved the nine patents currently at issue. It was of no consequence that the patents were not all at issue at the time the original PTO was issued. Defendants had the opportunity to address that issue in August 2001 when the parties were discussing their stipulated PTO modifications. Regarding the request depositions of trial witnesses not disclosed as such during the discovery period, defendants had not made a particularized showing of why those depositions were necessary. Regarding the request for discovery in the event plaintiffs asserted an advice of counsel defense, defendants could not serve additional document requests or interrogatories related to that defense, but additional deposition time would be granted if any party asserted the defense.

**OUTCOME:** Defendants' motion to amend the pretrial order was granted in part and denied in part. It was denied in regards to the requests for extra deposition time, document requests, and deposition of trial witnesses not disclosed as such during discovery. In was granted in regards to the request for additional deposition time in the event either party asserted an advice of counsel defense.

**CORE TERMS:** discovery, deposition, advice of counsel, good cause, election, modification, seventy-five, pretrial, modifying, scheduling, planning, elect, particularized, interrogatories, undersigned, diligence, convinced, attorney-client, investigate, forty-five, premature, surprise, opposing, deposed, patent, charts

**LexisNexis(TM) Headnotes**

*Civil Procedure > Trials > Pretrial Conferences*

[HN1]Modifying a pretrial scheduling order requires a showing of good cause by the moving party. Fed. R. Civ. P. 16(b). Good cause requires the party seeking the extension to show diligence in attempting to comply with the schedule. Rule 16(b) focuses on the showing of good cause and diligence by the movant, not whether the non-movant will be prejudiced.

*Civil Procedure > Discovery Methods > Oral Depositions*

*Civil Procedure > Trials > Pretrial Conferences*

[HN2]A request for leave to take more depositions and serve more interrogatories than allowed in a pretrial scheduling order must be supported by a particularized showing of why the additional discovery is necessary.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

*Evidence > Privileges > Attorney-Client Privilege*

[HN3]An advice of counsel defense eviscerates the attorney-client privilege as it pertains to the subject of the defense.

Page 1

*Patent Law > Infringement Actions > Defenses > General Overview*

[HN4]An advice of counsel defense in a patent infringement case is simply another claim in the pleadings, which does not require special treatment, except for the timing of disclosure of the defense.

**COUNSEL:** [*1] Andrew Horstman, Esq., and Niall A. Macleod, Esq., on behalf of Medtronic, Inc.

Stephen Sherry, Esq., and James W. Poradek, Esq., on behalf of Cardiac Pacemakers, Inc. and Guidant Corp.

**JUDGES:** JONATHAN LEBEDOFF, Chief United States Magistrate Judge.

**OPINIONBY:** JONATHAN LEBEDOFF

**OPINION: ORDER**

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 8, 2003 on Guidant/CPI's Motion to Amend Pretrial Order (Doc. No. 111 in Case 00-CV-1473 and Doc. No. 74 in Case 00-CV-2503). The cases have been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I. INTRODUCTION**

These motions arise out of a patent infringement dispute. The facts of the cases have been described in other orders of this Court and will not be recited here. Medtronic and Cardiac Pacemakers, Inc./Guidant ("CPI") are currently before the Court on CPI's motion to amend the pretrial scheduling order.

**II. DISCUSSION**

The current pretrial scheduling order ("PTO") in this case allows each Party to serve seventy-five document requests, and to conduct seventy-five hours [*2] of depositions. CPI seeks modification of the PTO to allow for the following discovery: (1) seventy-five additional document requests per Party, (2) seventy-five additional deposition hours per Party, and (3) additional depositions of trial witnesses not disclosed as such during the discovery period. CPI argues that this additional discovery is necessary because the case has grown and changed since the original PTO was issued. CPI also avers that it should be allowed additional discovery to explore Medtronic's "advice of counsel" defense, should Medtronic elect to assert one. Medtronic responds that the case has not changed since the Parties last stipulated to an amended PTO, and therefore CPI has not demonstrated that good cause exists for CPI's proposed modification.

[HN1]Modifying a pretrial scheduling order requires a showing of good cause by the moving party. See Fed. R. Civ. P. 16(b). Good cause requires the party seeking the extension to show diligence in attempting to comply with the schedule. See Fed. R. Civ. P. 16(b) advisory committee's note (1983); Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001); Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 583 (D. Minn. 1999). [*3] Rule 16(b) focuses on the showing of good cause and diligence by the movant, not whether the non-movant will be prejudiced. See Luigino's, Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998). [HN2]A request for leave to take more depositions and serve more interrogatories than allowed in a PTO must be supported by a particularized showing of why the additional discovery is necessary. See Archer Daniels Midland, 187 F.R.D. at 586 (citing Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996)).

**A. CPI's Request for Additional Depositions and Document Requests**

The Court finds that CPI has not demonstrated good cause for amending the PTO. It is undisputed that in August 2001 the Parties were aware that the case involved the nine patents currently at issue. It is of no consequence that these patents were not all at issue at the time the original PTO was issued. CPI had the opportunity to address this issue in August 2001 when the Parties were discussing their stipulated PTO modifications.

CPI is correct when it states that this is a complex case. However, that does not mean that limits can be ignored. See Archer Daniels Midland, 187 F.R.D. at 582 [*4] (citation omitted). CPI has not yet exhausted all its document requests or depositions. CPI still has time to formulate an appropriately focused discovery plan which will allow it to remain within the limits set by the PTO. The Court finds it compelling that Medtronic is apparently having no difficulty working within the guidelines originally agreed to by the Parties. The Court is therefore convinced that with a focused approach, CPI can conduct effective discovery and still comply with the PTO.

To the extent that CPI is relying on the fact that Medtronic did not produce its claim charts until after the August 2001 PTO modification, the Court is not convinced that this constitutes good cause for modifying the PTO again. The August 2001 modification specifically provided that claim charts would be filed in the future. (Doc. No. 34 in Case No.

00-1473 PP 2-4.) Thus, CPI knew it would be receiving additional highly relevant information, and should have planned its discovery accordingly. This part of CPI's motion is denied.

### B. CPI's Request for Depositions of Trial Witnesses Not Disclosed as Such During the Discovery Period

CPI requests the opportunity to conduct three [*5] and one-half hour depositions of trial witnesses who were either not previously deposed, or who were deposed as 30(b)(6) witnesses, but are expected to testify regarding other topics. Medtronic argues that these depositions are unnecessary because CPI already knows who the witnesses are in this case, and because, contrary to CPI's assertion, Medtronic is not planning to call "surprise witnesses."

The Court agrees with Medtronic. CPI has not made a particularized showing of why these depositions are necessary. See Archer Daniels Midland, 187 F.R.D. at 586. The Court is not persuaded that after three years of litigation, CPI is wholly unaware of the principal players in this case such that it will be surprised on the eve of trial. Moreover, since witness lists must be submitted sixty days before trial, witnesses cannot fairly be called "surprises." CPI is currently faced with the same challenges that face every party in every civil case in the federal courts: planning wise use of its discovery tools. The fact that CPI is currently facing the problem of how best to use its remaining deposition hours is simply not good cause for modifying the PTO. This part of CPI's motion [*6] is denied.

### 3. Discovery Related to "Advice of Counsel" Defense

On July 25, 2002, this Court ordered that any Party asserting an "advice of counsel" defense must do so within forty-five days of the trial court's claim construction rulings. (Order, July 25, 2002 at 7.) This Order was the result of CPI's motion seeking to require Medtronic to assert an advice of counsel defense immediately. [HN3]An advice of counsel defense eviscerates the attorney-client privilege as it pertains to the subject of the defense. The Court declined to order immediate election because premature election could result in a broader waiver of the privilege than required. (Id.)

CPI now argues that the current discovery limitations should not apply to discovery related to advice of counsel defenses. Medtronic responds that CPI should not be given additional discovery tools to investigate one defense, when Medtronic is not being given additional tools to investigate CPI's claims and defenses.

As the Court stated at the motion hearing, the July 25, 2002 Order did not address the subject of discovery tools. The Order only addressed the subject of additional discovery time, should CPI find itself running [*7] afoul of the discovery deadline. (Id. at 6.) At the hearing on that motion, Medtronic indicated that it was willing to submit to late discovery on this issue. Although the Court finds this discussion a bit premature, Medtronic not having to elect this defense for at least five months, the Parties seem to crave certainty on this issue. Accordingly, the Court will rule at this time.

CPI may not serve additional document requests or interrogatories related to Medtronic's advice of counsel defense. Medtronic is correct when it characterizes [HN4]this defense as simply another claim in the pleadings, which does not require special treatment, except for the timing of disclosure of the defense. Moreover, the Court's July 25, 2002 Order requires Medtronic to provide documents related to the defense at the time it asserts the defense. (Id. at 7.) In addition, should Medtronic choose not to assert an advice of counsel defense, the PTO provides ample time after that election for CPI to "use up" its discovery tools in other ways.

Notwithstanding the above, the Court will allow each Party seven hours of deposition time related to the opposing Party's advice of counsel defenses. n1 The Party [*8] may conduct one deposition or split the time into several shorter depositions. These depositions are not part of the seventy-five hours currently provided for in the PTO. The Parties are cautioned that if these depositions do go forward, they must be specifically limited to the advice of counsel issue. Counsel may not use this narrow modification to expand the already generous discovery schedule in this case.

--------------- Footnotes ---------------

n1 The Court notes that this entire discussion is proceeding in the context of Medtronic's eventual election of an advice of counsel defense. It must be noted that CPI also has the option to assert that defense forty-five days after the trial court's claim construction ruling, if it deems it appropriate.

------------ End Footnotes ---------------

Page 3

The advice of counsel defense is a particularly delicate thing to inject into a lawsuit. The Court treats it differently for purposes of election of the defense, and it follows that it should be treated differently for deposition purposes. Although the Court agrees that a party's failure to use its discovery [*9] tools wisely is not good cause to amend the PTO, a party's failure to save deposition time for this defense is not the same thing. Since there is no guarantee that Medtronic will even assert this defense, CPI is truly at a disadvantage when it comes to planning its depositions. The Court protected Medtronic's attorney-client privilege by allowing Medtronic to make late election of this defense. Should Medtronic elect to assert this defense, it must be prepared to allow for this limited additional discovery on the issue. Thus, this part of CPI's motion is granted as to seven hours of deposition time for the opposing Party on the topic of advice of counsel defenses.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Guidant/CPI's Motion to Amend Pretrial Order (Doc. No. 111 in Case 00-CV-1473 and Doc. No. 74 in Case 00-CV-2503) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) In the event either Party asserts an "advice of counsel" defense, the opposing party will be allowed seven hours of deposition time related to that defense.

# EXHIBIT B

2004 U.S. Dist. LEXIS 6326

POWER & TELEPHONE SUPPLY COMPANY, INC., Plaintiff, vs. SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST BANK - ATLANTA, SUNTRUST BANK - NASHVILLE, N.A., SUNTRUST EQUITABLE SECURITIES CORPORATION, and SUNTRUST CAPITAL MARKETS, INC., Defendants.

No. 03-2217MIV

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

2004 U.S. Dist. LEXIS 6326

March 15, 2004, Decided

**SUBSEQUENT HISTORY:** Partial summary judgment denied by Power & Tel. Supply Co. v. Suntrust Banks, Inc., 2005 U.S. Dist. LEXIS 8208 (W.D. Tenn., Mar. 31, 2005)

**PRIOR HISTORY:** Power & Tel. Supply Co. v. Suntrust Banks, Inc., 2004 U.S. Dist. LEXIS 6327 (W.D. Tenn., Feb. 17, 2004)

**DISPOSITION-1:** [*1] Plaintiff's motion to compel was granted in part and denied in part. Plaintiff's request for sanctions was granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff supply company sued defendants, banks, a securities company, and a capital company. Pursuant to Fed. R. Civ. P. 37, the supply company moved to compel defendants to respond more fully to its second and third sets of interrogatories and requests for production of documents. It also sought leave to file interrogatories in excess of the agreed limit of 50 interrogatories, to take additional depositions, and for monetary sanctions.

**OVERVIEW:** Defendants refused to answer any of the interrogatories in the supply company's second and third sets of interrogatories claiming that the supply company had exceeded the numerical limitations for interrogatories in its first set when the discreet subparts of each interrogatory were counted. Although a few of the interrogatories may have contained discreet subparts, the number of interrogatories propounded by the supply company was within the limit established by the court in the scheduling order. In regards to the motion to take additional depositions, the supply company failed to identify the proposed additional depositions it desired to take and why the additional depositions were needed. Without that information, the court was unable to determine if additional depositions were justified under the guidelines of Fed. R. Civ. P. 26(b)(2). The motion for sanctions was requested in regards to defendants' failure to produce a certain manual in response to the supply company's requests in its first set of interrogatories. Defendants were ordered to produce the manual and all prior versions of the manual from 1998 to the present version.

**OUTCOME:** The supply company's motion to compel is granted as to its second and third sets of interrogatories and requests for production of documents and as to its request to exceed the limit of fifty interrogatories. The motion was denied as to additional depositions and the supply company's request to redepose witnesses to examine them about a certain manual. The supply company's request for sanctions was granted.

**CORE TERMS:** interrogatory, depositions, discovery, manual, swap, offering, common law, exceeded, motion to compel, scheduling, discreet, redepose, production of documents, substantially justified, interest rate, marketing, permission, advisory, monetary, numerical, budget

**LexisNexis(TM) Headnotes**

*Civil Procedure > Discovery Methods > Interrogatories*

[HN1]The purpose of the limit on interrogatories is not to prevent discovery but to prevent potentially excessive use of this particular discovery device. The court can impose sensible limitations if the burden imposed by the requested interrogatories is too great.

*Civil Procedure > Discovery Methods > Interrogatories*

[HN2]A subpart of an interrogatory is discreet when it is logically or factually independent of the question posed by the basic interrogatory. Identifying a person by name, address, phone number, and place of employment is necessary to accurately identify a person and does not count as four separate interrogatories.

*Civil Procedure > Discovery Methods > Oral Depositions*

Page 1

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN3]Fed. R. Civ. P. 30 limits a party to 10 depositions. To determine if additional depositions should be permitted, a court is to apply the proportionality considerations enunciated in Fed. R. Civ. P. 26(b)(2).

*Civil Procedure > Discovery Methods > Oral Depositions*

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN4]According to Fed. R. Civ. P. 26(b)(2), the number of depositions should not be extended if the court determines that (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

*Civil Procedure > Sanctions > Discovery Misconduct*

[HN5]Fed. R. Civ. P. 37(a)(4) mandates that if a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses incurred in making the motion unless the court finds that the opposing party's nondisclosure was substantially justified.

**COUNSEL:** For POWER & TELEPHONE SUPPLY COMPANY, INC., plaintiff: Cannon F. Allen, Esq., Sara Margaret Falkinham, ARMSTRONG ALLEN, PLLC, Memphis, TN.

For SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST BANK - ATLANTA, SUNTRUST BANK - NASHVILLE, N.A., SUNTRUST EQUITABLE SECURITIES CORPORATION, SUNTRUST CAPITAL MARKETS, INC., defendants: John C. Speer, Esq., BASS BERRY & SIMS PLC, Memphis, TN.

For SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST BANK - ATLANTA, SUNTRUST BANK - NASHVILLE, N.A., SUNTRUST EQUITABLE SECURITIES CORPORATION, SUNTRUST CAPITAL MARKETS, INC., defendants: S. Lawrence Polk, Elena C. Parent, SUTHERLAND ASBILL & BRENNAN LLP, Atlanta, GA.

JIMMY MOORE, miscellaneous, Pro se, Memphis, TN.

**JUDGES:** DIANE K. VESCOVO, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** DIANE K. VESCOVO

**OPINION:** ORDER GRANTING IN PART AND DENYING IN PART [*2] THE PLAINTIFF'S MOTION TO COMPEL

Before the court is the February 4, 2004 motion of the plaintiff, Power & Telephone Supply Company, Inc. ("P&T"), pursuant to Federal Rule of Civil Procedure 37, to compel the defendants to respond more fully to P&T's second and third sets of interrogatories and requests for production of documents. P&T also seeks leave to file interrogatories in excess of the agreed limit of fifty (50) interrogatories should the court determine that P&T has exceeded the limit on interrogatories and permission to take an additional seven depositions. Finally, P&T seeks monetary sanctions against the defendants pursuant to Rules 37(d) and 37(a)(4)(A) for incomplete and evasive discovery responses, in particular for failing to produce the defendants' "Financial Risk Management Marketing and Sales Policies/Procedures manual."

The defendants insist that they have responded fully to the discovery requests at issue or have lodged appropriate objections on the grounds of ambiguity, vagueness, irrelevancy, and excessiveness. The motion was referred to the United States Magistrate Judge for determination. For the reasons that follow, [*3] the motion is granted in part and denied in part.

As stated in previous discovery orders, this litigation arises out of several contracts that P&T entered into with SunTrust Bank or its subsidiary between 1998 and 2000 - namely loan agreements for a $75 million syndicated line of credit with a variable interest rate and two interest rate "SWAP agreements.". The plaintiff has alleged various causes of actions against the defendants including breach of fiduciary duty, breach of contract, violation of the Tennessee Consumer Protection Act, breach of agency relationship, common law negligence, common law misrepresentation, common law suitability, and violation of the Bank Holding Act by tying.

The scheduling order entered in this case limited each party to no more than fifty (50) interrogatories unless authorized by the court and to ten (10) depositions unless additional depositions are authorized by the court upon a showing of good cause. On July 23, 2003,

P&T served its first set of interrogatories which included twenty-four numbered interrogatories. P&T's second set of interrogatories, served in November of 2003, included twenty-one numbered interrogatories, and P&T's third set, [*4] served in January of 2004, consisted of four additional interrogatories for a total of forty-nine interrogatories. The defendants have refused to answer any of the interrogatories in P&T's second and third sets of interrogatories claiming that P&T has exceeded the numerical limitations for interrogatories in its first set when the discreet subparts of each interrogatory are counted.

[HN1]The purpose of the limit on interrogatories is not to prevent discovery but to prevent potentially excessive use of this particular discovery device. FED. R. Civ. P. 33 advisory committee's note 1993 Amendments. The court can impose sensible limitations if the burden imposed by the requested interrogatories is too great. See 8A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2164. [HN2]"A subpart is discreet when it is logically or factually independent of the question posed by the basic interrogatory." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 2003 U.S. Dist. LEXIS 18196, No. CIV.3:01cv2198(DCD), 2003 WL 22326563, at *1 (D. Conn., March 7, 2003)(citing *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 444-45 (C.D. Cal. 1998). Identifying [*5] a person by name, address, phone number, and place of employment is necessary to accurately identify a person and does not count as four separate interrogatories. See *Security Ins.*, 2003 U.S. Dist. LEXIS 18196, 2003 WL 22326563 at *1. See also FED. R. Civ. P. 33 advisory committee's note 1993 Amendments (recognizing that a question about communications is to be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication).

Although a few of the interrogatories may contain discreet subparts, the court finds, after reviewing the interrogatories in general, that the number of interrogatories propounded by P&T is within the limit established by the court in the scheduling order. Even if P&T may have exceeded the limit, the court further finds that P&T has not excessively abused its right to propound interrogatories and grants P&T leave to exceed the numerical limit of fifty as to its second and third set of interrogatories already served. Accordingly, the defendants' objections to the interrogatories in the second and third set are overruled, and the defendants [*6] are ordered to answer these interrogatories.

Rule 30 [HN3]limits a party to ten depositions as did the scheduling order in this case. To determine if additional depositions should be permitted, the court is to apply the "proportionality" considerations enunciated in Rule 26(b)(2). See 8A Wright & Miller, § 2164. [HN4]According to Rule 26(b)(2), the number of depositions should not be extended if the court determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues. FED. R. Civ. P. 26(b)(2).

Here, P&T has failed to identify the proposed additional depositions it desires to take and why the additional depositions [*7] are needed. Without this information, the court is unable to determine if additional depositions are justified under the guidelines of Rule 26(b)(2). Accordingly, P&T's request to allow seven additional depositions is denied.

Finally, P&T seeks monetary sanctions because of the defendants' failure to produce a document entitled "Financial Risk Management Marketing and Sale Policies/Procedures manual" in response to Requests Nos. 16 and 19 of P&T's First Set of Interrogatories. P&T also seeks permission to redepose witnesses at defendants' cost in order to question them about the Financial Risk Management manual.

Request No. 16 asked the defendants to produce "all documents employed or used internally or externally in regard to selling, marketing or offering the Syndicated Line of Credit, the 1999 Swap or the 2000 Swap." Request No. 19 sought:

All documents that constitute, describe, discuss, mention, refer to or in any way relate to the sale or offering or attempted sales or offerings of investments tied in any way to interest rates for the years 1998-2003 (including swap investments), said documents including, but not limited to budgets or budget projections, marketing materials, [*8] actual profits, anticipated profits, sales, increased revenue for the years 1998 through 2003.

(Mem. in Supp. of Pl.'s Mot. to Compel at 7.) The defendants maintain that its Financial Risk Management manual is not responsive to either request. As to Request No. 19, the defendants argue that it seeks documents related to "investments" and that "swaps" are not "investments."

While it may be true that "swaps" are not technically "investments," the defendants' attempt to engage in clever "wordsmithing" and careful parsing of the request is looked upon with disfavor by the court. Request No. 19 clearly seeks documents that discuss sales or offerings of swaps, which the Financial Risk Management manual appears to discuss, and the defendants should have produced the manual in response to Request No. 19. The defendants are ordered to produce the manual and all prior versions of its Financial Risk Management manual from 1998 to the present version.

Rule 37(a)(4) [HN5]mandates that if a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses incurred in making the motion unless the court finds that [*9] the opposing party's nondisclosure was substantially justified. FED. R. Civ. P. 37(a)(4). The court does not find that the defendants' response was substantially justified and therefore awards P&T its reasonable attorney fees incurred in filing the second motion to compel.

P&T's request to redepose witnesses at the defendants' expense is denied. It appears that P&T had the manual in question during the depositions, having obtained it from an outside source, and therefore should have been able to adequately examine the witnesses.

CONCLUSION

P&T's motion to compel is granted as to its second and third sets of interrogatories and requests for production of documents and as to its request to exceed the limit of fifty interrogatories. The defendants are ordered to respond fully to the discovery requests within eleven (11) days of the date of entry of this order. The motion is denied as to additional depositions and P&T's request to redepose witnesses to examine them about the Financial Risk Management manual. P&T's request for sanctions is granted. P&T's counsel is directed to submit an affidavit within eleven days of the date of this order verifying [*10] the amount of expenses and attorney fees, including the hourly rate and time spent on each task, incurred by P&T in bringing the present motion.

IT IS SO ORDERED this 15th day of March, 2004.

DIANE K. VESCOVO

UNITED STATES MAGISTRATE JUDGE