SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

RECEIVED CLERK
FILED
2005 DEC -8  P 6: 25

U.S. DISTRICT COURT
DISTRICT OF UTAH

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **IBM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS ON SCO'S PRIVILEGE LOG**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03-CV-0294DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke Wells<br><br>**[REDACTED VERSION]** |

Defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM"), respectfully submits this reply memorandum in support of its motion to compel the production of documents listed on SCO's privilege log that were created by and for third parties AT&T and its affiliates and subsidiaries ("AT&T"), UNIX Systems Laboratories ("USL"), Novell, Inc. ("Novell"), and The Santa Cruz Operation, Inc. ("Santa Cruz").

## **Preliminary Statement**

As explained in IBM's opening brief, SCO cannot properly claim privilege over documents that originated with other corporations and their attorneys. The transfer of assets from one company to another, without an actual transfer of control over the selling entity, does not transfer the attorney-client privilege or work product immunity. SCO does not control any of the corporations from which it purports to have acquired privileged documents. Therefore, the privilege was waived when the documents were transferred to SCO, and SCO cannot properly claim privilege over them. Nothing in SCO's opposition papers shows otherwise.

In opposing IBM's motion, SCO argues that it is entitled to the privilege of the previous owners of certain UNIX assets on the grounds that the UNIX assets SCO acquired from Santa Cruz represent a "business". However, the mere fact that SCO considers its UNIX assets to be a separate line of business is insufficient to result in passage of the privilege. Virtually any set of assets could be labeled a "business", as illustrated by the fact that numerous companies have UNIX businesses, all of which are different. In any event, neither SCO nor its predecessors-in-interest acquired UNIX assets constituting an entire line of business. They merely acquired some but not all of the UNIX assets of their predecessors.

Notably, SCO's predecessor-in-interest made the same arguments that SCO makes here in essentially the same circumstances before this very Court in another case. In Caldera, Inc. v. Microsoft Corp. Civil No. 2:96-CV-00645B, Caldera, Inc., SCO's predecessor,

argued that it had acquired not just assets in a transaction, but a full business, and was thereby entitled to claim privilege over documents that were transferred with the assets. Magistrate Judge Boyce rejected the argument. He found that because transfer of the entity holding the privilege had not occurred, it was "a simple waiver situation" and granted a motion to compel the documents. (Ex. 1 (Transcript of Jan. 28, 1998 hearing) at 19.)[1] As is further discussed below, the same result should obtain here. SCO cannot properly claim privilege over the documents at issue, and IBM's motion to compel should be granted.

## Argument

I. CONTRARY TO SCO'S CONTENTION, THE PRIVILEGE DOES NOT PASS IN AN ASSET SALE, EVEN IF THE ASSETS CONSTITUTE A LINE OF BUSINESS.

As stated in IBM's opening brief, when a corporation merely sells or transfers assets to another corporation, without transferring control of the corporation, the attorney-client does not also pass to the purchasing company. See, e.g., In re Grand Jury Subpoenas, 734 F.Supp. 1207, 1211 n.3 (E.D. Va. 1990) ("A transfer of assets…is not sufficient to effect a transfer of the privileges; control of the entity possessing the privileges must also pass for the privileges to pass."), aff'd in relevant part, 902 F.2d 244 (4th Cir. 1990); Federal Deposit Ins. Corp. v. McAtee, 124 F.R.D. 662, 664 (D. Kan. 1988) ("The transfer of assets from one entity to another does not generally transfer the attorney-client privilege."). Instead, "the power to invoke or waive a corporation's privileges is an incident of control of the corporation." In re In-Store Advertising Sec. Litig., 163 F.R.D. 452, 458 (S.D.N.Y. 1995) (citations and quotations omitted). "Where confidential attorney-client communications are transferred from a corporation selling

---

[1] True and correct copies of exhibits supporting this memorandum are attached to the Declaration of Todd M. Shuaghnessy, submitted concurrently herewith, and are cited herein as "Ex. ___."

3

assets to the corporation buying the assets, the privilege is waived as to those communications." Id.[2]

SCO does not dispute that the transactions at issue involved the sale of assets. Nor does SCO dispute that it did not acquire control of its purported predecessors-in-interest. Rather, SCO seeks to justify its refusal to produce more than a thousand documents on the ground that the assets it purports to have acquired constitute a line of business. The mere fact that SCO or its predecessors might have viewed the assets as a line of business lends no support to SCO's position, as Judge Boyce ruled in the Caldera case.

In Caldera, Inc. v. Microsoft Corp., Caldera similarly sought to assert privilege with regard to documents that it had obtained in a purchase of assets from Novell via an Asset Purchase Agreement similar to the one between Novell and Santa Cruz. Caldera argued that it had not acquired "a simple asset" in the transaction, but rather "a fully operational business division", and claimed that it "thereby acquired the right to exercise privileges associated with

---

[2] SCO attempts to distinguish these cases are unavailing. With regard to both Grand Jury Subpoenas and In-Store Advertising, SCO focuses on irrelevant quotation quibbles. Neither the presence nor absence of the words "without more" and "therefore" changes the correct rule stated in those cases: "control of the entity possessing the privileges must also pass for the privileges to pass," Grand Jury Subpoenas, 734 F. Supp. at 1211 n.3, and "the power to invoke or waive a corporation's privileges is an incident of control of the corporation," In-Store Advertising, 163 F.R.D. at 458. With regard to McAtee, the language SCO quotes (distinguishing the management of an entity from liquidation) does not come from the McAtee opinion itself, but rather from a different case that the opinion is quoting, and furthermore was not part of that court's analysis of the privilege issue, but instead merely a general description of the role of a bankruptcy trustee. See 124 F.R.D. 662, 664 (D. Kan. 1988). Even if SCO were correct that the McAtee court would have reached a different conclusion had the FDIC not liquidated the pre-existing entity, it would be unavailing since neither SCO nor any of its so-called predecessors-in-interest were bankruptcy trustees when they received the UNIX assets; nor were any of the selling entities in bankruptcy at the time of the sale.

that business". (Ex. 2, Mem. In Opp. to Def. Motion to Compel (12/15/97) at 2, 6-11.) Magistrate Judge Boyce flatly rejected Caldera's argument:

> I don't think I really need argument on the attorney-client privilege matter. I've done a lot of work on that, and I'm satisfied that the claim of attorney-client privilege is not valid. When the Novell documents were turned over to Caldera, that destroyed the privilege. Caldera is not the alter ego or successor-in-interest in the legal context of those materials. The analogies to the Supreme Court's decision with regard to its successor of interest, such as a Trustee in bankruptcy, are an imperfect analogy. That case simply does not apply.
>
> It's a simple waiver situation. You have separate entities, and one entity hands over all of the technology and information and materials covered by an attorney-client privilege. Without some type of additional protection that privilege is gone, and so the Motion to Compel will be granted with regard to those documents.

(Ex. 1 at 18-19.) In fact, after this ruling, counsel for Caldera stated that it had already determined that it was going to concede the issue. (Id. at 19.)

Judge Boyce reaffirmed this view when Novell attempted to intervene in the case to claim a work product privilege as to certain documents it had given to Caldera. In denying Novell's motion, Judge Boyce noted that "Caldera has no basis to assert a work product or attorney/client privilege with respect to the materials at issue" and that its only interest in the privilege was "as a means of prohibiting discovery". Caldera, Inc. v. Microsoft Corp., 181 F.R.D. 506, 508 (D. Utah 1998). The same is true of SCO here, who offered to produce to IBM all of the documents at issue so long as IBM would agree not to argue that production of the documents constituted a subject-matter waiver. This Court should follow Judge Boyce and order SCO to turn over all of the documents created by and for third parties that SCO is currently withholding under an invalid claim of privilege.

5

SCO relies on six cases in an attempt to circumvent Judge Boyce's decision. Not only are they not from this district, but they are also plainly inapposite. Three of the cases, Graco Children's Products, Inc. v. Regalo Intern, LLC (1999 WL 553478 (E.D. Pa. 1999), In re I Successor Corp. (321 B.R. 640 (S.D.N.Y. 2005), and Tekni-Plex, Inc. v. Meyner & Landis, 674 N.E.2d 663 (N.Y. 1996), concern attorney disqualification, not privileged documents. In Pilates, Inc. v. Georgetown Body Works Deep Muscle Massage Cntrs., Inc., the court found no basis for the claim of attorney-client privilege and ordered the documents at issue produced. 201 F.R.D. 261, 263-64 (D.D.C. 2000). The court in R.G. Egan Equip., Inc. v. Plymag Tek, Inc. similarly denied a privilege claim. 758 N.Y.S.2d 763, 770-71 (N.Y. Sup. Ct. 2002). That leaves SCO with Soverain Software LLC v. The Gap, Inc. That case, however, arose in bankruptcy, and the court specifically cited bankruptcy policy concerns in making its decision. 340 F. Supp. 2d 760, 763-64 (E.D. Tex. 2004) ("The Court is reluctant to adopt a principle that unnecessarily inhibits the effective administration of bankruptcy estates"). Judge Boyce likewise considered, and rejected, authority arising in the bankruptcy context. See Ex. 1 at 18-19 ("The analogies to the Supreme Court's decision with regard to its successor of interest, such as a Trustee in bankruptcy, are an imperfect analogy. That case simply does not apply.") In none of these cases did the court rule that the privilege passes where a business entity sells one or more of its corporate divisions and continues to exist as a solvent business entity.[3]

---

[3] SCO also attempts unsuccessfully to distinguish Zenith Electronics Corp. v. WH-TV Broadcasting Corp., No. 01C4366, 2003 WL 21911066 (N.D. Ill. Aug. 7, 2003). The fact that, in Zenith, the "proponent of the privilege did not argue, and the court did not find, that the transferred assets constituted a business" (SCO's Memorandum of Law In Opposition to IBM's Motion to Compel Production of Documents on SCO's Privilege Log ("SCO Br."), dated October 21, 2005, at 10) is not an indication that the case is distinguishable. It is an indication that SCO's distinction between assets and a "business" is irrelevant in this context, where control of the corporation is the essential factor.

## II. IN ANY EVENT, NEITHER SCO NOR ITS PREDECESSORS PURCHASED OR SOLD "THE UNIX BUSINESS".

Even if the sale of a mere "business" (as opposed to a corporate entity) could transfer the privilege, the transactions at issue here did not involve the sale of an entire business, as SCO contends. Thus, SCO's privilege claims as to the documents at issue cannot survive scrutiny even under its own rule (which is not the law in this district).

SCO claims privilege with respect to more than a dozen AT&T and USL documents, nearly a hundred Novell documents, and more than a thousand Santa Cruz documents. Even under SCO's rule, these documents are not protected by the privilege unless Novell sold its "UNIX business" to Santa Cruz and Santa Cruz sold its "UNIX business" to SCO.[4] Contrary to SCO's contention, Novell did not sell its entire "UNIX business" to Santa Cruz, and Santa Cruz did not sell its entire "UNIX business" to SCO.

The transaction between Novell and Santa Cruz was governed by an Asset Purchase Agreement (the "APA") dated September 1995. The APA makes clear that Novell did not sell its entire UNIX business to Santa Cruz. Schedule 1.1(b) of the APA expressly excludes significant UNIX assets from the sale, including (but not limited to) veto rights over future UNIX licensing activities and all UNIX patents. (Ex. 1 to Declaration of Amy F. Sorenson In Support of IBM's Motion to Compel Production of Documents on SCO's Privilege Log, dated Sept. 26, 2005.) In fact, Novell retained rights to 95% of ongoing UNIX System V licensing royalties for existing licensing agreements. Id. (excluding "All right, title and interest to the SVRx Royalties, less the 5% fee for administering the collection thereof" from the transaction). Since Novell

---

[4] SCO contends that IBM concedes that the privilege transferred with AT&T's sale of USL to Novell. (SCO Br. at 8.) That is incorrect and irrelevant. Even if the privilege passed in the AT&T/Novell sale, it was waived when Novell passed its documents to Santa Cruz and when Santa Cruz passed its documents to SCO.

7

retained 95% of its ongoing UNIX licensing royalties, it cannot be said that it sold its UNIX business to SCO - only that it sold certain UNIX assets to Santa Cruz.

Similarly, Santa Cruz did not sell an entire business to SCO. SCO acquired less than all of the assets of Santa Cruz's Server Software and Professional Services Division. SCO's 2003 Annual Report expressly acknowledged that it "acquire[d] substantially all [but not all] of the assets and operations of the server and professional services groups" of Santa Cruz. (Ex. 3 (The SCO Group Inc., Annual Report (Form 10-K) (Jan. 28, 2004)) at 4.) SCO did not even acquire all of the UNIX assets owned by Santa Cruz. Santa Cruz excluded from the sale certain assets relating to OpenServer and products traditionally bundled with OpenServer and UnixWare7.

REDACTED

SCO, therefore, did not acquire an entire UNIX business from Santa Cruz.

SCO bases its opposition brief on the declaration of William Broderick. Putting aside the fact that Mr. Broderick's declaration fails to dispute any of the foregoing facts, it is plainly insufficient to carry SCO's burden of proof. First, Mr. Broderick lacks personal knowledge of the facts about which he purports to testify. He admittedly was not involved in any transactions purporting to sell UNIX assets, did not negotiate the contracts associated with any

8

such sale, and only found out about the transactions after the fact, having absolutely no personal involvement in the transactions prior to their occurrence. (Ex. 5 (Transcript of the Deposition of William Broderick) at 27, 31-32, 50-51, 70-71.) Second, Mr. Broderick's deposition testimony is inconsistent with his declaration. For example, in his declaration, Mr. Broderick purports to "have been continuously employed managing contracts for the successive companies that have owned the UNIX technology and business". (Broderick Decl. ¶ 4.) But when pressed at his deposition, Mr. Broderick acknowledged that there was a distinct break in his employment, including a recent layoff by SCO, at which time he became employed by a completely unrelated company for several months before being rehired by SCO. (Ex. 5 at 17-18.) In addition, though Mr. Broderick claimed in his declaration that "the makeup ... of the UNIX business continued as constituted through and after each transition" (Broderick Decl. ¶ 10), he conceded in his deposition that, in his opinion, Novell retained at least some part of the "UNIX business" when it sold UNIX assets to Santa Cruz. (Ex. 5 at 60-61.) Third, Mr. Broderick's declaration purports to establish the legal conclusions that "the UNIX business ... transferred successively from AT&T/USL to Novell to Santa Cruz to Caldera (now SCO)", and also that in each instance the selling company "transferred control" of the UNIX business. (Broderick Decl. ¶¶ 9-10.) He also asserts that even though the various transactions were structured differently, the transactions "did not differ except as to form." (Id. ¶ 16.) Mr. Broderick, however, is not an attorney nor does he have a basis to opine on any legal aspect of the transactions involving the transfer of the UNIX assets. In fact, Mr. Broderick admitted at his deposition that he was not prepared or able to give any legal opinions regarding the transactions he discusses in his declaration. (Ex. 5 at 7-8.)

9

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that this Court order SCO to immediately produce all documents created by or for AT&T, USL, Novell, or Santa Cruz.

DATED this 8th day of December, 2005.

                SNELL & WILMER L.L.P.

                /s/ Alan L. Sullivan
                Alan L. Sullivan
                Todd M. Shaughnessy
                Amy F. Sorenson

                CRAVATH, SWAINE & MOORE LLP
                Evan R. Chesler
                David R. Marriott

                *Attorneys for Defendant/Counterclaim-Plaintiff*
                *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2005, a true and correct copy of the foregoing was sent by U.S. Mail, postage prepaid, to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

*/s/ Todd M. Shaughnessy*
Todd M. Shaughnessy