

ORIGINAL

FILED
U.S DISTRICT COURT

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC. | |
| Plaintiff/Counterclaim-Defendant, | **REPLY MEMORANDUM IN FURTHER SUPPORT OF SCO'S MOTION TO COMPEL DISCOVERY** |
| v. | **FILED IN REDACTED FORM** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Case No. 2:03CV0294DAK |
| Defendant/Counterclaim-Plaintiff. | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |

SCO respectfully submits this Reply Memorandum in further support of its motion to compel IBM to produce certain discovery.

## PRELIMINARY STATEMENT

SCO seeks materials and information to assess the issues and damages at the heart of this case and to prepare for IBM's renewal of its summary judgment motions and for trial. IBM refused to produce basic categories of information on the basis of its boilerplate objections to SCO's requests as "overbroad," "unreasonable," or "unduly burdensome." Notwithstanding its refusal for months to produce those materials in response to SCO's document requests, IBM finally produced in response to this Motion over 340,000 pages of documents this past week. IBM offered no explanation for having withheld these materials until the close of SCO's fact discovery (and four days before SCO's reply brief on this Motion was due). SCO is reviewing the nature and sufficiency of this production to determine to what extent to pursue the issues raised in SCO's opening memorandum.

In describing its latest production in its opposition brief, however, IBM does not even purport to have produced documents directly concerning:

- Profits for IBM's Linux-related offerings, as detailed in Doc. Req. Nos. 163-68;

- Revenues (actual and projected), profits, and expenses for IBM's AIX-related offerings, other than those attributable to the AIX operating system, as detailed in Doc. Req. Nos. 142, 144, 148, 150, 154, and 155;

- Revenues (actual and projected), profits, and expenses for IBM's Dynix-related offerings, other than those attributable to the Dynix operating system, as detailed in Doc. Req. Nos. 145 and 151;

- Non-transaction level data responsive to SCO's damages requests at issue; and

1

- Market size (actual and projected) and market share (actual and projected) data for operating systems and hardware and software products relating to AIX and Dynix, as detailed in Doc. Req. Nos. 172-77.

In addition, IBM affirmatively refuses to produce:

- Any transaction-level data responsive to SCO's document requests;

- Documents relating to IBM customers who migrated to Linux from other operating systems, as detailed in Doc. Req. Nos. 156-59;

- Management-level and other documents concerning IBM's strategic shift toward Linux and regarding the sales, licensing, or marketing of AIX- and Dynix-related offerings, as detailed in Doc. Req. Nos. 160-62;

- Documents concerning IBM's plans, efforts, or attempts to market, promote, or advertise AIX- and Dynix-related products and services, as detailed in Doc. Req. Nos. 372;

- Documents predating 2001 concerning IBM's plans, efforts, and attempts to market, promote, or advertise Linux-related products and services;

- Rule 30(b)(6) testimony concerning IBM's interpretation of certain restrictions in its AIX and Dynix licenses; and

- Sufficient Rule 30(b)(6) testimony concerning communications regarding SCO, Linux, AIX, or Dynix among the "Chicago 7."

SCO seeks to avert the trap SCO may face if it does not secure, analyze, and use the materials at issue. While IBM now tells this Court that the materials SCO seeks are "unnecessary," IBM does not deny that it may say the exact opposite when it renews its summary judgment motions and points to SCO's failure to analyze this same body of information at the summary judgment stage of this case. IBM simply cannot have it both ways.

2

## ARGUMENT

I.  **IBM SHOULD PRODUCE DAMAGES-RELATED DOCUMENTS THAT SCO SEEKS TO ASSESS THE DAMAGES IT HAS SUFFERED AS A RESULT OF IBM'S CONDUCT**

SCO's Motion seeks to compel IBM to produce documents relating to four basic categories of information concerning the damages at the heart of SCO's claims:

- IBM's Linux-related revenues and profits;

- IBM's AIX- and Dynix-related revenues and profits;

- Market Size/Market Shares of operating systems relevant to this litigation; and

- IBM customers who migrated to Linux from UNIX.

IBM initially argued that the materials SCO requested were irrelevant. See IBM's Responses and Objections to SCO's Fifth Request for the Production of Documents (Feb. 5, 2005), Nos. 142, 146, 147, 152-59, 163, 165-69, 171-73, 176, 177, 179-81, 194, 195, 197. On that basis, SCO filed its motion to compel, highlighting for the Court the unreasonableness of IBM's view that that these materials are irrelevant.

IBM now seems to have abandoned its argument that the materials SCO seeks are irrelevant in favor of the argument (vague and unsubstantiated) that SCO's requests impose undue burden on IBM. IBM Mem. at 3-4. IBM's opposition brief fails to address the substantive arguments that SCO lays out in delineating the importance and relevance of the materials at issue. This court should reject IBM's continued attempts to withhold these materials.

IBM does not address at all its failure to produce documents concerning:

- Profits for IBM's Linux-related offerings, as detailed in Doc. Req. Nos. 163-68;

- Revenues (actual and projected), profits, and expenses for IBM's AIX-related offerings, other than those attributable to the AIX operating system, as detailed in Doc. Req. Nos. 142, 144, 148, 150, 154, and 155;

- Revenues (actual and projected), profits, and expenses for IBM's Dynix-related offerings, other than those attributable to the Dynix operating system, as detailed in Doc. Req. Nos. 145 and 151;

- Non-transaction level data responsive to SCO's damages requests at issue; and

- All market size (actual and projected) and market share (actual and projected) data for operating systems and hardware and software products relating to AIX and Dynix, as detailed in Doc. Req. Nos. 172-77.

IBM does not make much more of a showing even when it explicitly opposes producing

the remaining categories of materials that SCO seeks.  Opposing SCO's requests for transaction-

level data, for example, IBM complains only that SCO's requests are overbroad and would

impose an undue burden on IBM.  IBM's argument reduces to the proposition that since IBM is

such a large company – and since the alleged offense involved such large-scale activities – IBM

should be allowed to either completely withhold categories of information or unilaterally choose

its own subset of materials that IBM deems sufficient to produce.  IBM does not, and cannot, cite

any case law for such a rule.  Neither IBM's size nor the magnitude of its alleged offense

exempts IBM's discovery obligations.

IBM's sole basis for not producing documents responsive to SCO's remaining damages-

related document requests reduces to its blanket objection that SCO's requests are overbroad.

SCO details the relevance and importance of those requests in its opening brief.  See SCO Mem.

at 11-14.  IBM does not take issue with the relevance of these requests or with the many reasons

SCO cites for needing these materials.  Instead, IBM argues that some of the requests can be

interpreted in a broad manner that would render them "overbroad," and therefore IBM completely withheld from production any such documents.

The lone example that IBM cites in support of its position is SCO's request for documents concerning IBM customers who migrated to Linux from UNIX. IBM contends that SCO's requests might technically include "all documents concerning such company, whether or not the documents are even remotely connected to any subject matter in this lawsuit," and therefore IBM decided to withhold all documents that are indeed relevant to this litigation. IBM ignores the plain meaning of SCO's request in an effort to create ambiguity. SCO simply seeks a list of IBM customers who migrated to Linux from UNIX, and all documents that are sufficient to show that those customers migrated to Linux from UNIX and the reasons for their migrating to Linux from UNIX. Rather than produce the materials that are relevant to this litigation, IBM decided to oppose SCO's request and force SCO to file the instant Motion to obtain the plainly relevant documents.

## II.    IBM SHOULD PRODUCE ALL DOCUMENTS RESPONSIVE TO SCO DOCUMENT REQUEST NOS. 293-98 AND 372

### A.    Requests Nos. 293-98:  Documents Directly Related to Project Monterey

IBM states that its updated production "includes documents concerning the process, procedures, and guidelines for making a GA release or a PRPQ release of a product." IBM Opp. Mem. at 5. SCO understands IBM to represent that, with last week's document productions, IBM has produced all documents in its possession, custody, or control that are responsive to SCO's Document Request Nos. 293-98. With this understanding, and pending review of IBM's last-minute production, SCO may withdraw its Motion to compel with respect to those

5

documents. Should SCO discover that documents are still outstanding, SCO will continue to pursue those documents through this Motion, and this Court should order IBM to produce them.

In light of IBM's agreement to produce even "additional" responsive documents, IBM cannot credibly argue that it has not acknowledged both the relevance of those documents and the lack of undue burden in producing them. Moreover, IBM does not dispute that it is not entitled to decide unilaterally either (a) that SCO's requests only seek documents that "describe the terms 'GA' and 'PRPQ' for AIX," or (b) that IBM may produce only documents that in its own view are "sufficient to describe" that subset of SCO's requests. Accordingly, IBM should not be permitted to limit its production of these highly relevant documents.

B. Request No. 372: Documents Related to IBM's Ongoing Linux-Related Activities

Continuing unilaterally to impose the restriction without any explanation, IBM refuses to produce documents predating 2001 concerning IBM's plans, efforts, or attempts to market, promote, or advertise Linux-related products and services.[1] IBM's argument that those documents are irrelevant to any claims or counterclaims is flatly wrong.

First, such documents, from any time period, are directly relevant to IBM's own Tenth Counterclaim, which seeks a clean bill of health with respect to all of IBM's Linux-related activities. Because it cannot, IBM does not address, much less dispute, the relevance of those documents to its Linux activities, nor the relevance of its Linux activities to its Tenth Counterclaim. In fact, documents concerning IBM's efforts to market, promote, and advertise

---

[1] IBM does even address the other categories of documents that SCO asked for in Request No. 372, including documents concerning IBM's plans, efforts, and attempts to market, promote, or advertise AIX- and Dynix-related products and services. SCO submits that these categories of documents are also highly relevant and would not be an undue burden to produce, and that IBM should be ordered to produce them.

Linux are essential to any inquiry concerning the propriety of IBM's Linux activities and are therefore plainly central to proving or disproving the Tenth Counterclaim.

Second, the documents are relevant to SCO's damages theories. In its contract and tort claims, SCO alleges that IBM made improvements to Linux in violation of SCO's proprietary rights. SCO expects that the documents at issue will show when and how IBM relied on those improvements in backing Linux and bringing its Linux-related products to the marketplace. In proving damages, SCO will thus be able to rely on those documents to show the value that IBM itself accorded to its wrongful contributions to Linux, as well as when those unlawful contributions were made. Thus, both to prove liability and damages, SCO is entitled to any documents that tend to reveal the range in time (including prior to 2001) when IBM initiated efforts to market, promote, or advertise its Linux-related offerings.

In addition, IBM does not dispute that it is not entitled to decide either (a) that SCO's request seeks only documents that "describe Linux efforts to promote Linux," or (b) that IBM may produce documents that in its own view are "sufficient to describe" that subset of the request. IBM thus concedes that it cannot properly limit the scope of its search for responsive documents that are deemed relevant.

C.  Any and All Versions of AIX from 1985 to 1990

IBM argues that nothing in SCO's Motion "provides IBM or the Court with additional information as to where any such pre-1991 source code might be found." IBM Mem. at 6. Even if SCO were obligated to provide that information, SCO has repeatedly met that purported obligation. As SCO explained in its opening memorandum:

- **REDACTED**

- 

  **REDACTED**

- 

  **REDACTED**

If IBM were to represent to the Court that it has looked for the source code at that and every other potential location, SCO would withdraw this part of its Motion.  Otherwise, for the reasons set forth herein and in its opening brief, SCO submits that IBM should be ordered to produce pre-1991 AIX source code, which has been outstanding since the Court's January 18, 2005 Order.

## III.   IBM SHOULD PRODUCE A WITNESS TO TESTIFY ON RELEVANT RULE 30(B)(6) TOPICS

IBM admits that it has not produced a witness to testify on Topics Nos. 9 and 10 of SCO's Notice of November 11, 2005.  IBM also failed to provide any substantial testimony regarding Topic No. 17 of the same Notice.[2]

### A.  Topic Nos. 9 and 10

In these Topics, SCO asks IBM to produce a witness to address its interpretation of specific restrictions in its AIX and Dynix licenses.  IBM argues that these Topics are irrelevant

---

[2] Subsequent to SCO's filing this Motion, IBM agreed to produce Daniel Frye to testify on Topic Nos. 7 and 8 of the November 11, 2005 Notice.

8

and overbroad and that in any event "SCO can review these licenses for itself." IBM Mem. at 7. None of these arguments has any merit.

First, IBM misapprehends the relevance of the Topics. SCO seeks testimony on IBM's interpretation of the language used in its AIX and Dynix licenses because that language closely parallels language used in its System V licenses with AT&T. SCO seeks that testimony to test the credibility of IBM's interpretation of those UNIX licenses, not because SCO is interested in the terms by which IBM licensed its products to third parties.

Second, IBM grossly exaggerates the breadth of the Topics. SCO does not seek testimony on the "legal interpretation of every term of every AIX and Dynix source code license IBM has ever entered into with any third party." IBM Mem. at 7. By their very terms, the Topics seek testimony only concerning IBM's interpretation of specific restrictions. These restrictions appear to be common to all the AIX and Dynix source code licenses that IBM has produced to date, and IBM admits that such licenses are in the "dozens." The testimony that SCO seeks thus reduces to a set of core restrictions common to most, if not all, of IBM's "dozens" of AIX and Dynix licenses.[3]

Third, IBM argues that "SCO can review these licenses for itself." Such a review would suffice if SCO were interested in its own interpretation of those licenses. As explained, SCO seeks IBM's interpretation, including for purposes of testing its credibility.[4]

---

[3] By comparison, IBM has noticed topics as expansive as: "All agreements or communications between SCO, Microsoft, Sun, Hewlett-Packard, or SuSE, relating to Unix or Linux." Topic No. 23 of IBM's Amended Notice of 30(b)(6) Deposition dated March 19, 2004 (Exh. 1).

[4] SCO notes that it appears that IBM has not produced AIX and Dynix source code licenses for its "dozens" of licensees. To date, SCO has found fewer than ten such licenses. SCO will search for additional such licenses in IBM's productions of the week of January 27, 2006.

B.  Topic No. 17

SCO seeks testimony concerning any communications among the "Chicago 7," a consortium of companies that have reportedly gathered to oppose SCO's efforts to enforce its proprietary rights in the Linux community.  After SCO filed this Motion, IBM agreed to produce Karen Smith to testify only concerning "a meeting held in Chicago on July 7, 2003 between representatives of IBM, Computer Associates, Oracle, Dell, Intel, Novell, and Hewlett-Packard, and any follow-up meetings or communications between IBM and any of those parties concerning the subject matter of the July 7, 2003 meeting." Letter from T. Shaughnessy to E. Normand dated January 10, 2006 (Exh. 2), at 4.

**REDACTED**

SCO does not agree with IBM's conclusion that its testimony, on a self-selected and insubstantial portion of the Topic, has rendered this part of SCO's Motion moot.  It remains undisputed that the testimony that SCO seeks is relevant (at least) to SCO's tort claims.  IBM therefore should be required to provide adequate testimony concerning this Topic.

10

## CONCLUSION

For the foregoing reasons, SCO respectfully requests that this Court order IBM to produce documents and witnesses in response to SCO's discovery requests.

DATED this 1st day of February, 2006.

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

By

*Counsel for The SCO Group, Inc.*

11

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the

foregoing Reply Memorandum in Further Support of SCO's Motion to Compel Discovery, was

served on Defendant, International Business Machines Corporation, on the 1st day of February,

2006, by U.S. Mail, to:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

12

# EXHIBIT 1

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> -against- <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM-PLAINTIFF IBM'S AMENDED NOTICE OF 30(b)(6) DEPOSITION** <br><br> Civil No. 2:03CV-0294 DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of

Civil Procedure, counsel for defendant/counterclaim-plaintiff International Business Machines

Corporation ("IBM") will take the deposition upon oral examination of plaintiff/counterclaim-

51
3/17/0

defendant The SCO Group, Inc. ("plaintiff"), on **April 2, 2004, beginning at 9:30 a.m.,** and

continuing thereafter until completed. This deposition was previously scheduled for December

18, 2003. This deposition will be taken at the offices of defendant's counsel, Snell & Wilmer,

Gateway Tower West, 15 West South Temple, Suite 1200, Salt Lake City, Utah, and will be

taken pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure.

Pursuant to Fed. R. Civ. P. 30(b)(6), plaintiff is directed to designate one or more

officers, directors, managing agents or other person(s) who consent to testify on its behalf

concerning matters known or reasonably available to plaintiff, concerning the topics specified

below.

The deposition will be taken before a Notary Public authorized by law to

administer an oath, and will continue from day-to-day until completed. The deposition will be

recorded by stenographic and videotape means.

Pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure, plaintiff is

requested to produce on April 2, 2004, at the aforementioned location all documents and tangible

things that relate or refer to the topics specified below.

IBM hereby incorporates by reference all instructions, definitions and rules

contained in Rules 30 and 34 of the Federal Rules of Civil Procedure and the local rules or

individual practices of this Court and in IBM's June 13, 2003 First Set of Interrogatories and

First Request for the Production of Documents, and supplements them as follows:

1.     The term "Berkeley Packet Filter" means internet firewall software

created at the Lawrence Berkeley Laboratory, which was first deployed on the 4.3 BSD system

produced by the University of California at Berkeley.

-2-

290651.1

2.      The term "GPL" or "General Public License" means the "GNU General Public License" published by the Free Software Foundation, Inc.

3.      The term "Hewlett-Packard" means collectively and/or individually, Hewlett-Packard Company, its subsidiaries, and all its and its subsidiaries' directors, officers, authorized agents, employees, consultants, sales representatives, distributors, dealers, direct and indirect contractors.

4.      The term "Linux" shall mean any and all versions, or other variants of any Linux computer operating system, including but not limited to any Linux kernel and/or GNU tools suite.

5.      The term "Linux Kernel" means that part of the Linux operating system and applications software code that (1) controls the allocation and usage of hardware resources of a computer, including but not limited to processor scheduling, memory management, file systems, and control of peripheral devices and network connections, and (2) provides a system call interface and platform for developing and running applications.

6.      The term "Linux Kernel Personality" means the feature of the Open UNIX8 operating system distributed by SCO that enables the installation and direct, native execution of Linux applications.

7.      The term "Microsoft" means collectively and/or individually, Microsoft Corporation, its subsidiaries, and all its and its subsidiaries' directors, officers, authorized agents, employees, consultants, sales representatives, distributors, dealers, direct and indirect contractors.

290651.1

8.     The term "SCO" shall mean and include, collectively and/or individually, The SCO Group, Inc., Caldera Systems, Inc., or Caldera International, Inc., and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were in part or in whole acquired by or merged with The SCO Group, Inc., Caldera Systems, Inc., or Caldera International, Inc., affiliates, subsidiaries or predecessor companies of The SCO Group, Inc., Caldera Systems, Inc., or Caldera International, Inc., and/or all other persons acting on behalf of The SCO Group, Inc., Caldera Systems, Inc., or Caldera International, Inc.  This does not include Tarantella, Inc., other than the Server Software and Professional Services divisions acquired in 2001 by Caldera International, Inc. from Tarantella, Inc., f/k/a The Santa Cruz Operation, Inc.

9.     The term "SCOsource" means SCO's business division to manage its Unix System intellectual property.

10.     The term "SCOsource Update" refers to the August 18, 2003 presentation by Chris Sontag and Mark J. Heise at the SCO Forum 2003 in Las Vegas.

11.     The term "SuSE" means, collectively and/or individually, SuSE AG and SuSE Inc., their subsidiaries, and all their and their subsidiaries' directors, officers, authorized agents, employees, consultants, sales representatives, distributors, dealers, direct and indirect contractors.

12.     The "Technology License Agreement" means the Technology License Agreement between Novell, Inc. and The Santa Cruz Operation, Inc., dated December 6, 1995.

- 4 -

DATED this 19ᵗʰ day of March, 2004.

SNELL & WILMER LLP

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Counsel for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York  10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

290651.1

**Topics**

1. The organization and structure of SCO since its inception.

2. SCO's responses to IBM's discovery requests.

3. SCO's allegations of misconduct by IBM and the factual basis of those allegations.

4. All source code and other material in Linux, including but not limited to the Linux Kernel, any Linux operating system and any Linux distribution) to which SCO has rights (identified, where appropriate, by product, file and line of code); and (b) the nature of SCO's rights, including but not limited to whether and how the code or other material derives from UNIX.

5. With respect to each product identified by SCO in response to IBM's Interrogatory No. 11, (a) the identity of the persons to whom SCO has marketed or distributed those products; (b) the dates on which SCO has marketed or distributed those products; and (c) the terms on which each was marketed or distributed.

6. The development of the Linux Kernel Personality, including but not limited to: (a) the reasons for its development; (b) the period of its development; (c) the process of its development; (d) the persons involved in its development; (e) the identity of the code of which it is comprised (by file and line of code); (f) the precise origin of that code (by file and line of code); (g) the extent to which it incorporates code, methods, concepts, ideas, techniques, know-how, sequences, structures or the look-and-feel of Linux.

- 6 -

7.   All agreements and communications from December 2002 to the present between SCO and any other person, other than IBM, concerning SCO's intent to sue persons distributing or using Linux products without license from SCO.

8.   SCOsource, including but not limited to its charter, licensing programs, licensees, and licenses, including all licenses for Linux.

9.   Unix materials, including manuals, received by SCO from AT&T, USL, Novell, or Tarantella.

10.   The sale of assets by Tarantella to SCO, including but not limited to Tarantella's Server Software and Professional Services divisions.

11.   Communications relating to this litigation including but not limited to (a) communications with SCO's employees, shareholders, directors or officers; and (b) communications with third parties, including, but not limited to, banks, financing entities, investment banks, venture capital firms, investment analysts, and journalists.

12.   Material disclosed by SCO to any person relating to SCO's allegation that IBM or others have misappropriated, misused or infringed SCO's intellectual or other property rights or have otherwise breached an obligation to SCO.

13.   SCO's education programs and educational materials concerning Linux and Unix.

14.   SCO's distribution of Linux products, including but not limited to (a) the authority by which they have been distributed; (b) the terms under which they were distributed; and (c)  SCO's decision to suspend its distribution of Linux products or code and the availability of Linux products or code for download from SCO's website.

- 7 -

15. The GPL, including but not limited to (a) the meaning and application of the GPL; (b) SCO's use of the GPL; (c) the extent to which SCO has distributed products under the GPL; (d) whether SCO has ever breached the GPL; and (e) SCO's compliance with the GPL.

16. Any analysis, assessment, opinion, or statement relating to SCO's allegation that IBM or others have misappropriated, misused or infringed SCO's intellectual or other property rights or have otherwise breached an obligation to SCO.

17. All documents concerning the unfair competition lawsuit brought by SCO against Microsoft and the alleged destruction of those documents.

18. The identity of all Linux, open source, or public domain source code and object code ever manufactured, marketed, distributed, disclosed or made available by SCO, including but not limited to all releases and versions of Caldera OpenLinux and SCO Linux.

19. The identity of IBM source code or object code or product documentation in SCO's possession, custody or control.

20. The Technology Licensing Agreement, including, but not limited to, (a) SCO's purported rights under that agreement, and (b) SCO's public assertion that Novell's acquisition of SuSE will result in a violation of that agreement.

21. The lawsuit, Unix System Laboratories, Inc. v. Berkeley Software Design, Inc., filed April 20, 1992 in the United States District Court, District of New Jersey, including but not limited to all pleadings and documents relating to the suit and to the settlement of the suit.

22. SCO's purported proprietary rights to the Berkeley Packet Filter.

290651.1

23. All agreements or communications between SCO, Microsoft, Sun, Hewlett-Packard, or SuSE, relating to Unix or Linux.

24. Public statements by SCO concerning comparisons of Unix and Linux source code, including but not limited to (a) the identities of the persons performing the underlying comparisons; (b) the dates on which the comparisons were performed; (c) the specific lines of code compared and their presence within Unix and/or open source products; and (d) the SCOsource Update.

-9-

290651.1

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of March, 2004, a true and correct copy of the

foregoing was hand delivered to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101

and was sent by U.S. Mail, postage prepaid, to the following:

> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

> Kevin P. McBride
> 1299 Ocean Avenue, Suite 900
> Santa Monica, California 90401

290651.1

# EXHIBIT 2

# Snell & Wilmer
──────── L.L.P. ────────
LAW OFFICES

15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
(801) 257-1900
Fax: (801) 257-1800
www.swlaw.com

SALT LAKE CITY, UTAH

PHOENIX, ARIZONA

TUCSON, ARIZONA

IRVINE, CALIFORNIA

DENVER, COLORADO

LAS VEGAS, NEVADA

## FACSIMILE TRANSMISSION

DATE:    January 10, 2006                    **TIME IN:**
                                             **TIME OUT:**

TO:

| Name | Fax Number | Phone Number |
|------|-----------|--------------|
| Edward Normand<br>BOIES, SCHILLER & FLEXNER, LLP | 914-749-8300 | 914-749-8200 |
| Brent Hatch<br>HATCH, JAMES & DODGE | 363-6666 | 363-6363 |

FROM:    Todd M. Shaughnessy        PHONE:    801-257-1937

RE:      *SCO v. IBM*

MESSAGE:

ORIGINAL DOCUMENT:    Will be sent        NUMBER OF PAGES (Including Cover):  3

CONFIRMATION NO.:                         CLIENT MATTER NO.:43649.0001

PLEASE RETURN TO:    Debbie              PERSONAL FAX:    No

REQUESTOR:    Todd M. Shaughnessy    DIRECT LINE:    801-257-1937

**IF YOU HAVE NOT PROPERLY RECEIVED THIS TELECOPY, PLEASE CALL US AT (801) 257-1922.
OUR FACSIMILE NUMBER IS (801) 257-1800.**

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

328423.1

# Snell & Wilmer
### —— L.L.P. ——
#### LAW OFFICES

15 West South Temple
Suite 1200
Gateway Tower West
Salt Lake City, UT 84101
801.257.1900 P
801.257.1800 F
swlaw.com

Todd M. Shaughnessy
801-257-1937
tshaughnessy@swlaw.com

DENVER
IRVINE
LAS VEGAS
PHOENIX
SALT LAKE CITY
TUCSON

January 10, 2006

*VIA FACSIMILE AND U.S. MAIL*

Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504

   Re: *SCO v. IBM; IBM v. SCO*

Dear Ted:

   I write to follow up on my January 5, 2006 letter and our discussion this afternoon concerning deposition dates. The schedule for IBM witnesses to be deposed is as follows:

|  |  |  |
|---|---|---|
| Samuel Palmisano | January 11, 2006, at 1 p.m. | Cravath, Swaine & Moore LLP in New York, New York |
| Martin Bligh | January 16, 2006 | Cupertino, California |
| Roger Swanson | January 17, 2006 | Portland, Oregon |
| Tony Befi (individual and 30(b)(6) witness as to topics 12 and 13 of SCO's August 15, 2005 notice) | January 18, 2006 | Austin, Texas |
| Nicholas Bowen[1] | January 18, 2006, at 2 p.m. | Cravath, Swaine & Moore LLP in New York, New York |
| Irving Wladawsky-Berger | January 19, 2006 | Cravath, Swaine & Moore LLP in New York, New York |
| Paul Horn[2] | January 19, 2006, at 2 p.m. | IBM's office in Yorktown Heights, New York |

---

[1] We are making Mr. Bowen available to testify only concerning his January 6, 2006 declaration. Please let us know as soon as possible if you do not intend to take his deposition.

379664.1

# Snell & Wilmer
#### —— L.L.P ——

Ted Normand
January 10, 2006
Page 2

| | | |
|---|---|---|
| Paul McKenney (30(b)(6) witness as to topic 2 of SCO's November 11, 2005 notice) | January 19, 2006 | Portland, Oregon |
| Dan Frye (30(b)(6) witness as to topic 8 of SCO's August 15, 2005 notice; topics 3, 4, 5, 6, 7, 8, and 22 of SCO's November 11, 2005 notice; and topic 11 of SCO's December 27, 2005 notice) | January 20, 2006 | Portland, Oregon |
| Bryan Harold (individual and 30(b)(6) witness as to topics 6 and 7 of SCO's December 27, 2005 notice) | January 20, 2006 | Austin, Texas |
| Karen Smith (individual and 30(b)(6) witness as to topic 17 of SCO's November 11, 2005 notice) | January 24, 2006 | Cravath, Swaine & Moore LLP in New York, New York |
| Jeffrey Mobley | January 24, 2006 | Williamsburg, Virginia |
| May Cherry | January 25, 2006 | Austin, Texas |
| Louis Gerstner[3] | January 26, 2006, at 1 p.m. | Palm Beach, Florida (IBM will arrange the location) |
| Scott Handy (30(b)(6) witness as to topics 18 and 19 of SCO's August 15, 2005 notice) | January 26, 2006 | Cravath, Swaine & Moore LLP in New York, New York |
| Joan Thomas (30(b)(6) witness as to topic 1 of SCO's December 23, 2005 notice) | January 27, 2006 | Austin, Texas |

---

[2] We are making Mr. Horn available to testify only concerning his January 6, 2006 declaration. Please let us know as soon as possible if you do not intend to take his deposition.

[3] Mr. Gerstner's deposition will be limited to four hours, and we agree that Mr. Gerstner's and Mr. Palmisano's depositions will count as a single deposition.

379664.|

Case 2:03-cv-00294-DN   Document 611   Filed 02/01/06   PageID.6423   Page 29 of 30

# Snell & Wilmer
### — LLP —

Ted Normand
January 10, 2006
Page 3

With respect to topics 7 and 8 of SCO's November 11, 2005 notice, subject to IBM's earlier objections, we are producing Daniel Frye to testify on those topics.

With respect to topic 17 of SCO's November 11, 2005 notice, which refers to what you call the "Chicago 7", subject to IBM's earlier objections, we are producing Karen Smith to testify concerning a meeting held in Chicago on July 7, 2003 between representatives of IBM, Computer Associates, Oracle, Dell, Intel, Novell, and Hewlett-Packard, and any follow-up meetings or communications between IBM and any of those parties concerning the subject matter of the July 7, 2003 meeting.

The production of witnesses in response to SCO's December 23, 2005 and December 27, 2005 notices of 30(b)(6) deposition is made subject to, as limited by, and without waiving our objections to those notices, which we will provide to you by the end of the week. On the topics for which we will produce witnesses (including the ones referenced in the table above), we plan to produce the witnesses for depositions between January 17 and January 27.

Please feel free to call me if you have any questions.

Very truly yours,

Todd M. Shaughnessy

TMS:dw
cc:     Brent Hatch
        David Marriott
        Peter Ligh
        Amy Sorenson
        Curt Drake

379664.1

# EXHIBIT 3

# (REMAINS UNDER SEAL)