Mark A. Wagner (6353)
VAN COTT BAGLEY CORNWALL & MCCARTHY
50 South Main Street, Suite 1600
Salt Lake City, Utah 84144
Telephone: (801) 532-3333
Facsimile: (801) 237-0807

Anthony L. Marks (*pro hac vice* pending)
Jessica L. Everett-Garcia (*pro hac vice* pending)
PERKINS COIE BROWN & BAIN, P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Facsimile: (602) 648-7025

Attorneys for Nonparty Intel Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| THE SCO GROUP, INC., | : | **NONPARTY INTEL'S RESPONSE TO** |
| Plaintiff/Counterclaim-Defendant, | : | **SCO'S MOTION FOR LEAVE TO** |
| | : | **TAKE CERTAIN PROSPECTIVE** |
| vs. | : | **DEPOSITIONS** |
| | : | |
| INTERNATIONAL BUSINESS | : | |
| MACHINES CORPORATION, | : | Case No. 2:03CV0294DAK |
| | : | Honorable Dale A. Kimball |
| Defendant/Counterclaim-Plaintiff. | : | Magistrate Judge Brooke C. Wells |

### Introduction

On January 27, 2006, The SCO Group ("SCO") filed a motion for leave to extend the discovery cut-off in this case for purposes of taking certain third-party depositions (the "Discovery Extension Motion")—including depositions of Intel Corporation ("Intel") personnel

under Fed. R. Civ. P. 30(b)(6). SCO's Discovery Extension Motion misrepresents the facts underlying its attempts to take discovery from Intel. Although Intel takes no position on whether SCO's Discovery Extension Motion should be granted, Intel is compelled to respond to SCO's misrepresentations about Intel's conduct.[1]

SCO represents that Intel "was given adequate notice" of the depositions SCO seeks but "did not appear." Discovery Extension Motion at 2. That statement is at best a half-truth. It is true that Intel did not appear, but it is false that Intel's absence came despite "adequate notice." In fact, SCO first properly served Intel with its subpoena at 3:26 p.m. on the day before the discovery cut-off, in which it demanded that Intel produce witnesses to testify on a host of discrete topics and produce documents the very next day. That same day, Intel responded in writing, objecting that it was unreasonable to expect Intel to comply with SCO's requests on a few hours notice, and notifying SCO that Intel would not do so.

SCO's Discovery Extension Motion does not attempt to explain why it waited until the last minute to try to conduct this discovery—on topics that SCO cannot possibly claim it only recently discovered, such as "Intel's business relationship with SCO." Intel is well aware that the discovery cut-off can be a hectic time, but SCO's accusations against Intel are unfair and untrue.

---

[1] In its Discovery Extension Motion, SCO indicates that it plans to file a motion to compel against Intel in the Northern District of California, where the subpoena was served. Counsel for Intel and SCO have discussed this issue and concluded that both sides will forgo motion practice on the scope of the subpoena until this Court resolves whether SCO is entitled to any discovery at all. If this Court concludes that SCO's tardy service does not per se deprive it of the right to seek additional discovery, then the parties will meet and confer and determine whether they can resolve their differences. If they cannot, motion practice in the Northern District of California (perhaps transferred here by that Court in accordance with N.D. Cal. L.R. 3-13) will follow.

## Background

Intel has responded to three previous subpoenas in this action, including two from SCO. Intel produced a number of documents in response to those subpoenas, and has consented to the production of other Intel documents by the parties. Throughout these activities, SCO's counsel has been in contact with outside counsel specifically retained by Intel to handle discovery requests related to this litigation.

On January 26, 2006, the day before the discovery cut-off in this litigation, SCO served a new subpoena. This new subpoena demanded that Intel produce witnesses and documents by the next day (January 27, 2006) on six broad topics, including:

- communications between Intel and IBM;
- Intel's relationship with SCO; and
- issues related to the UNIX application program interfaces, developer guide, application binary interface and interface definition.

Intel objected to this subpoena within hours. Nonetheless, SCO asserts to the Court that Intel simply "did not appear" for the deposition after receiving "adequate" notice. Discovery Extension Motion at 2. That statement is false. The local rules for the jurisdiction that issued the subpoena, the Northern District of California, require SCO, after serving the subpoena, to meet and confer with Intel regarding deposition scheduling, rather than just unilaterally dictating that the deposition would take place less than twenty-four hours later. SCO's counsel never attempted to conduct such a meet and confer with Intel.

On January 12, 2006, SCO faxed to a general number in Intel's legal department (even though SCO's counsel had dealt with specific Intel outside counsel on these very matters as recently as 45 days earlier) a Rule 30(b)(6) deposition notice, noticing a deposition for January

- 3 -

607:330578v3

26 in Armonk, New York. This notice was defective for several reasons, including that service of such a notice by fax is improper, and that the notice demanded that Intel's witnesses travel 2,000 miles to New York for the noticed deposition. *See Fed. R. Civ. P.* 45(b)(1) and 45(b)(2); *see also, e.g., Chima v. U.S. Dept. of Defense*, No. 99-55209, 23 Fed. Appx. 721, 724 (9th Cir. Nov. 19, 2001) (subpoenas served by mail rather than personal service improper); *Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (Rule 45(b)(1) is "not broad enough to include either fax or regular mail because the court cannot be assured that delivery has occurred"). In addition, the January 12 fax was not accompanied by a subpoena, in contravention of Rules 30(a)(1) and 30(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Pricewaterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 61 (S.D.N.Y. 1998) ("Before deposition testimony may be procured from . . . a nonparty witness [under Rule 30(b)(6)], a subpoena must thus be issued in accordance with Rule 45.").

Despite these defects, Intel did not wait until its response was purportedly "due" under the January 12 fax, but responded to SCO's counsel early and explained the reasons the notice was defective. Notwithstanding Intel's early response, and despite the impending discovery cut-off, however, SCO waited five days to try to correct these defects. On January 25, 2006, SCO sent Intel a subpoena demanding that Intel produce documents and appear for a deposition at 9:00 a.m. on the following day, January 26, in Oakland, California. Although including a subpoena and changing the location of the deposition from Armonk to Oakland, cured two problems, this subpoena lacked any deposition notice or set of deposition topics. Thus, the subpoena provided no basis upon which Intel could produce any witnesses for deposition. That

same day, Intel notified SCO of these defects, and objected on several grounds, including that producing documents and appearing for a deposition the very next day was simply impossible.

SCO's response was to serve another subpoena, demanding again that Intel produce testimony and documents the very next day. Intel has determined that it would need to prepare and offer at least three different employees for the six listed deposition topics, and that it would take at least several weeks for it to locate and produce the new documents requested by SCO. These requests are not a minor inconvenience. Why SCO waited until the eleventh hour to seek this discovery when discovery has been ongoing in the case for the past two years is unclear. More importantly, had SCO planned adequately, the discovery could have been obtained from the parties to the litigation—including from SCO itself, given that SCO seeks evidence "concerning Intel's business relationship with SCO." *See, e.g., Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (party required to obtain available documents from other parties to the litigation and public record "rather than placing an undue burden on a non-party"); *Moon v. SCP Pool Corp.*, 2005 WL 3526513, at *5 (C.D. Cal. Dec. 7, 2005) ("plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty"). Indeed, even if SCO had served Intel with a proper subpoena on its first attempt in mid-January, it would not have provided sufficient time to allow Intel to identify and prepare witnesses for deposition. *See, e.g.,* N.D. Cal. L.R. 26-2 (parties "should initiate discovery requests and notice depositions sufficiently in advance of the cut-off").

Intel takes discovery obligations seriously. SCO's attempt to blame Intel for creating SCO's need for more time simply ignores the facts.

607:330578v3

February 7, 2006

Respectfully submitted,

By: _____
Mark A. Wagner
VAN COTT, BAGLEY, CORNWALL & MCCARTHY, P.C.
50 South Main Street, Suite 1600
Salt Lake City, Utah 84144

Anthony L. Marks (*pro hac vice* pending)
Jessica L. Everett-Garcia (*pro hac vice* pending)
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012

*Attorneys for Nonparty Intel Corporation*

- 6 -

607:330578v3

## CERTIFICATE OF MAILING

I hereby certify that on this 7th day of February, 2006, I caused a true and correct copy of the foregoing document to be mailed, postage prepaid, to the following:

Peter H. Donaldson
Snell & Wilmer
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101

Robert A. Magnanini
Boies Schiller & Flexner
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078

Michael P. O'Brien
Jones Waldo Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101

Stanley J. Preston
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000

Maralyn M. Reger
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000

Todd Shaughnessy
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

Amy F. Sorenson
Snell & Wilmer
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101

Andrew H. Stone
Jones Waldo Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101

Alan L. Sullivan
Snell & Wilmer
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101

Nathan E. Wheatley
Snell & Wilmer
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101

Evan R. Chesler
Cravath Swaine & Moore
825 Eighth Avenue
New York, New York 10019

Mark R. Clements
Hatch James & Dodge
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Mark J. Heise
Boies Schiller & Flexner
100 SE 2nd Street, Suite 2800
Miami, Florida 33131

David Marriott
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Kevin P. McBride
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401

David W. Scofield
Peters Scofield Price
340 Broadway Centre
111 East Broadway
Salt Lake City, Utah 84111

Stuart H. Singer
BOIES SCHILLER & FLEXNER
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301

Stephen N. Zack
BOIES SCHILLER & FLEXNER
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131

Robert Silver
Edward Normand
BOIES SCHILLER & FLEXNER
333 Main Street
Armonk, New York 10504

J. Matthew Donohue
Daniel P. Filor
Boies Schiller & Flexner
10 North Pearl Street
Albany, New York 12210

Frederick S. Frei
Andrews Kurth
1701 Pennsylvania Avenue NW, Suite 300
Washington, DC 20006

Scott E. Gant
Boies Schiller & Flexner
5301 Wisconsin Avenue NW
Washington, DC 20015

David S. Stone
Boies Schiller & Flexner
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078

Donald J. Rosenber
1133 Westchester Avenue
White Plains, New York 10604

*/s/ [signature]*

N.D. Cal. L.R. 3-13

Civil Local Rules

### 3-13. Notice of Pendency of Other Action or Proceeding.

**(a) Notice.** Whenever a party knows or learns that an action filed or removed to this district involves all or a material part of the same subject matter and all or substantially all of the same parties as another action which is pending in any other federal or state court, the party must promptly file with the Court in the action pending before this Court and serve all opposing parties in the action pending before this Court with a Notice of Pendency of Other Action or Proceeding.

**(b) Content of Notice.** A Notice of Pendency of Other Action or Proceeding must contain:

(1) A description of the other action;

(2) The title and location of the court in which the other action or proceeding is pending; and

(3) A brief statement of:

(A) The relationship of the other action to the action or proceeding pending in this district; and

(B) If the other action is pending in another U.S. District Court, whether transfer should be effected pursuant to 28 U.S.C. § 1407 (Multi District Litigation Procedures) or whether other coordination might avoid conflicts, conserve resources and promote an efficient determination of the action; or

(C) If the other action is pending before any state court, whether proceedings should be coordinated to avoid conflicts, conserve resources and promote an efficient determination of the action.

**(c) Procedure After Filing.** No later than 10 days after service of a Notice of Pendency of Other Action, any party may file with the Court a statement supporting or opposing the notice. Such statement will specifically address the issues in Civil L.R. 3-13(b).

**(d) Order.** After the time for filing support or opposition to the Notice of Pendency of Other Actions or Proceedings has passed, the Judge assigned to the case pending in this district may make appropriate orders.

N.D. Cal. L.R. 26-2

Civil Local Rules

## 26. GENERAL PROVISIONS GOVERNING DISCOVERY

### 26-1. Custodian of Discovery Documents.

The party propounding interrogatories, requests for production of documents, or requests for admission must retain the original of the discovery request and the original response. That party shall be the custodian of these materials. FRCivP 30(f) identifies the custodian of the original transcript or recording of a deposition.

> **Commentary**
> Counsel should consider stipulating to sharing diskettes or other computer-readable copies of discovery requests, such as interrogatories and requests for production of documents, as well as responses to such requests, to save costs and to facilitate expeditious pretrial discovery.

### 26-2. Discovery Cut-Off; Deadline to File Motions to Compel.

Unless otherwise ordered, as used in any order of this Court or in these Local Rules, a "discovery cut-off" is the date by which all responses to written discovery are due and by which all depositions must be concluded.

Where the Court has set a single discovery cut-off for both fact and expert discovery, no motions to compel discovery may be filed more than 7 court days after the discovery cut-off.

Where the Court has set separate deadlines for fact and expert discovery, no motions to compel fact discovery may be filed more than 7 court days after the fact discovery cut-off, and no motions to compel expert discovery may be filed more than 7 court days after the expert discovery cut-off.

Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.

> **Cross Reference**
> See Civil L.R. 37 *"Compelling Discovery or Disclosure."*

> **Commentary**
> Counsel should initiate discovery requests and notice depositions sufficiently in advance of the cut-off date to comply with this local rule.

*Chima v. U.S. Dept. of Defense*

LEXSEE 23 FED. APPX. 721

**FRANK O. CHIMA, Plaintiff-Appellant, v. UNITED STATES DEPARTMENT OF DEFENSE, aka DOD; DONALD H. RUMSFELD n2, Secretary, Defendants-Appellees, and WILLIAM J. LETTS, Captain; RICHAD MARTIN; FRED ULERY; JOHN O'NEAL; ELIZABETH MILADIN; BARBARA WARDEN; HARVEY JANSSEN, Defendants.**

n2 Donald H. Rumsfeld, Secretary of Defense is substituted for his predecessor, William J. Perry, Fed. R. App. P. 43(c)(2).

No. 99-55209

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*23 Fed. Appx. 721; 2001 U.S. App. LEXIS 25055*

November 5, 2001, Argued and Submitted, Pasadena, California
November 19, 2001, Filed

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** As Amended December 14, 2001.
**CASE SUMMARY:**

**PRIOR HISTORY:** Appeal from the United States District Court for the Central District of California. D.C. CV-94-03738-TJH-2. Terry J. Hatter, Jr., District Judge, Presiding.

**DISPOSITION:** AFFIRMED.

**PROCEDURAL POSTURE:** Following a bench trial, the United States District Court for the Central District of California entered a judgment in favor of defendant cabinet secretary on plaintiff employee's Title VII of the Civil Rights of 1964, *42 U.S.C.S. § 2000e* et seq., employment discrimination claims. The employee appealed.

**OVERVIEW:** The employee made several arguments on appeal, including that the district court abused its discretion when it denied his motion in limine to bar the cabinet secretary from presenting witnesses. The employee argued that the cabinet secretary and the defense witnesses conspired to obstruct justice and committed perjury. But he failed to allege or show facts sufficient to support his claim of perjury, and provided only conclusory allegations. The employee also contended that the district court abused its discretion when it granted the cabinet secretary's motion to exclude the employee's use of statistical evidence. But the employee did not show how the evidence supported his employment discrimination claim. Finally, the employee claimed that he did not waive his right to a jury trial, and that the district court's decision to order a bench trial of his claims violated the Seventh Amendment. While the employee preserved his right to a jury trial when he filed an objection to the order for a bench trial, there was no evidence of prejudice. Nothing in the record suggested that a jury would have concluded that the employee had suffered discrimination because of his race.

**OUTCOME:** The appellate court affirmed the judgment.

**CORE TERMS:** subpoena, jury trial, perjury, statistical evidence, subpoenaed, conclusory, discovery, abused, memorandum, Local Rule, employment discrimination, administrative remedies, issue of material fact, discovery sanction, motion to dismiss, failed to exhaust, compelled, complied, attend, mail, male, statistical, testifying, statistics

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery Methods > Requests for Admission*
[HN1] See *Fed. R. Civ. P. 36*.

*Civil Procedure > Summary Judgment > Supporting Papers & Affidavits*
[HN2] Where the only evidence the plaintiff provides in support of his perjury allegations is his own affidavit testimony, which contains only the most conclusory assertions of perjury and provides no specific facts supporting the assertions, he cannot create an issue of material fact with regard to the perjury allegations.

*Civil Procedure > Summary Judgment > Supporting Papers & Affidavits*
[HN3] When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.

*Labor & Employment Law > Discrimination > Disparate Treatment*
*Evidence > Relevance > Relevant Evidence*
[HN4] Statistical evidence is unquestionably relevant in a Title VII of the Civil Rights of 1964, *42 U.S.C.S. § 2000e* et seq., disparate treatment case. But not all statistical evidence is relevant: Statistical evidence must be of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.

*Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors*
[HN5] The erroneous denial of a jury trial in a civil case is subject to harmless error analysis. The denial will be harmless only if no reasonable jury could have found for the losing party.

**COUNSEL:** For FRANK O. CHIMA, Plaintiff - Appellant: Richard A. Derevan, Esq.., Deborah S. Mallgrave, SNELL & WILMER, Irvine, CA.

For UNITED STATES DEPARTMENT OF DEFENSE, WILLIAM J. PERRY, Defendants - Appellees: Sara R. Robinson, AUSA, USLA - OFFICE OF THE U.S. ATTORNEY, Los Angeles, CA.

For WILLIAM J. LETTS, RICHARD MARTIN, FRED ULERY, JOHN O'NEAL, ELIZABETH MILADIN, BARBARA WARDEN; HARVEY JANSSEN, Defendants: No Appearance.

**JUDGES:** Before: PREGERSON, REINHARDT, and SILVERMAN, Circuit Judges.

**OPINION:** [*723]

MEMORANDUM n1

---

n1 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

---

Frank [**2] O. Chima ("Chima"), an African-American male, brought a law suit against William J. Perry, ("Perry"), Secretary of the United States Department of Defense ("DOD"), in 1994, which asserted eight claims. The district court granted Perry's motion to dismiss with prejudice as to all the claims against all the defendants except Chima's employment discrimination claim against Perry under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* et seq. The district court also granted Perry's motion to dismiss Chima's Title VII claim without prejudice on the ground that Chima failed to exhaust his administrative remedies. In an unpublished disposition, the Ninth Circuit affirmed the district court's decision to dismiss all non-Title VII claims and all claims against defendants other than Perry. The Ninth Circuit reversed as to the district court's decision that Chima failed to exhaust his administrative remedies before initiating his Title VII claim. This appeal concerns the district court's judgment in favor of Perry following a bench trial on Chima's Title VII claim. We have jurisdiction pursuant to *28 U.S.C. § 1291*, and we affirm. [**3]

Chima first argues that the district court abused its discretion when it refused to exclude the testimony of Perry's witnesses as a discovery sanction. Chima contends that Perry's failure to respond to his requests for admissions constitutes failure to cooperate in discovery and that the district court should have sanctioned Perry under *Federal Rule of Civil Procedure ("F.R.C.P.") 37*.

Chima served a request for admissions and request for production of documents pursuant to *F.R.C.P. 36* on Perry's witnesses n3. Perry refused to comply with Chima's discovery requests and the district court refused to compel Perry to comply on the ground that Chima had not complied with Local Rule 7.15, which required the parties to formulate a joint stipulation regarding the discovery issue in dispute. Even if Chima were to have complied with Local Rule 7.15, it is unlikely that the court would have compelled Perry's witnesses to comply with Chima's requests. *F.R.C.P. 36* applies exclusively to parties, and thus Chima is not permitted to issue requests for admission upon witnesses. Thus, we conclude that the district court did not abuse its discretion when it refused to exclude the testimony of Perry's [\*\*4] witnesses as a discovery sanction.

> n3 [HN1] *F.R.C.P. 36* provides: "A party may serve upon any other party a written request for the admission . . . ."

Chima next contends that the district court abused its discretion when it denied Chima's motion in limine to bar Perry from presenting witnesses. Chima argues that Perry and defense witnesses had conspired to obstruct justice and committed perjury. Chima, however, failed to allege or show facts sufficient to support his claim of perjury by the defendants and has only provided conclusory allegations. See *Streck v. Peters, 855 F. Supp. 1156, 1162 n.3 (D.Hawai'i 1994)* (concluding that [HN2] where "the only evidence [the plaintiff] provides in support of his perjury allegations [\*724] is his own affidavit testimony, which contains only the most conclusory assertions of perjury and provides no specific facts supporting the assertions . . . , [he cannot] create an issue of material fact with regard to the perjury allegations." (citing *Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1993)* [\*\*5] (concluding that [HN3] "when the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact")). In his brief, Chima merely offers defense witnesses' testimony and then concludes that these "statement[s] demonstrate[] that [the witnesses] lied to the District Court, which is tantamount to perjury." Chima further asserts that the declarations of Ervin Williams, William Stephens, Rosa Howard, Pedro Lamdagan, and Jerry Gasbarra, "contradict" defense witnesses' statements. While the testimony of these witnesses does challenge the testimony of defense witnesses, such inconsistencies go to the weight of the evidence and not the admissibility.

Chima also contends that the district court abused its discretion when it granted Perry's motion to exclude Chima's use of statistical evidence. This data, the "Workforce Profile by Grade Series for DCMDW," provides statistics on the number of minority workers in each DOD grade level. Chima argues that these statistics support his claim that the DOD discriminates against black male employees.

In *Lynn v. Regents of the University of California, 656 F.2d 1337, 1342-43 (9th Cir. 1981)*, [\*\*6] this Circuit concluded that [HN4] "statistical evidence is unquestionably relevant in a Title VII disparate treatment case." The Supreme Court has cautioned, however, that not all statistical evidence is relevant: Statistical evidence must be "of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank And Trust, 487 U.S. 977, 994, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988)*.

We recognize that statistical evidence is commonly used to support Title VII discrimination actions, but also note that such evidence must be relevant. We conclude that the decision by the lower court to exclude Chima's statistical data was not erroneous because Chima offered no evidence or explanation of how the evidence supported his employment discrimination claim.

Chima further argues that the district court erred when it failed to compel Perry to comply with the subpoenas Chima served on defense witnesses to testify at trial. Chima served these subpoenas by mail rather than by personal service as required by *F.R.C.P. 45(b)(1)*. Perry asserts that because [\*\*7] the subpoenas were not properly served, the DOD was not obligated to permit its employees to attend the trial. Perry further contends that employees were permitted to take personal time to attend the trial but that Chima's failure to tender witness fees and expenses discouraged the witnesses from attending.

We agree that Chima probably served the subpoenas improperly and conclude that the district court therefore did not err when it failed to compel the recipients to comply. Regardless, Chima has not shown how the testimony of the witnesses in question would have materially altered the course of the trial. Thus any error was not prejudicial.

We are seriously concerned, however, by the DOD's letter which the government attached to Chima's subpoenas and gave to most of the defense witnesses whom Chima served. Defense counsel sent a letter [\*725] to the subpoenaed witnesses stating that: (1) Chima's service of the subpoenas is "defective"; (2) "subpoenaed Government employee witnesses are not compelled to appear merely because the receipt of the subpoena form is through the mail"; (3) regardless of whether the witnesses are properly subpoenaed, the witnesses "may only be granted 'court leave' (accounted for as official time) when testifying on behalf of [the government]"; (4) witnesses must use "charged leave or forego pay in order to take time off work to appear" for Chima; and [\*\*8] (5) witnesses must "notify their supervisor" and "obtain approval for the absence from duty prior to the trial date." While it is true that the subpoenas were defectively served, we find the coercive nature of this letter to be highly troubling. We also question the legality of the requirement that a subpoenaed government employee first obtain approval before appearing in court.

Lastly, Chima claims that he did not waive his right to a jury trial and that the court's sua sponte decision to order a bench trial for all of Chima's claims violated his Seventh Amendment right. We conclude that Chima sufficiently preserved his right to a jury trial when he filed an objection to the order for a bench trial in the form of a memorandum of contentions of fact and law. In his memorandum, Chima repeated his demand for a jury trial and explicitly stated that he did not abandon any issue. Such conduct constitutes a continuing objection sufficient to preserve his right to appeal the denial of his request for a jury. See *United States v. Nordbrock, 941 F.2d 947, 949-50 (9th Cir.1991)*.

We must, however, affirm the district court's decision if we conclude that the district court's [\*\*9] error did not prejudice Chima. [HN5] "The erroneous denial of a jury trial in a civil case is subject to harmless error analysis. The denial will be harmless only if no reasonable jury could have found for the losing party . . . ." *Fuller v. City of Oakland, 47 F.3d 1522, 1533 (9th Cir.1995)* (citation omitted). Chima offers this court no evidence--and there is no evidence in the record-to suggest that a jury would have concluded that the DOD discriminated against Chima on account of his race. Moreover, Chima offered no suggestions as to what the witnesses who were barred from testifying might have testified to or how the statistical evidence Chima sought to introduce might have enhanced his claim. Based on the record before us, we cannot conclude that the district court's denial of a jury trial was prejudicial error.

AFFIRMED.