SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **IBM'S MEMORANDUM IN SUPPORT OF MOTION TO LIMIT SCO'S CLAIMS RELATING TO ALLEGEDLY MISUSED MATERIAL** |
| Plaintiff/Counterclaim-Defendant, | |
| -against- | **(ORAL ARGUMENT REQUESTED)** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Civil No. 2:03CV-0294 DAK |
| Defendant/Counterclaim-Plaintiff. | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |

384046.1

Defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits the following memorandum in support of its Motion to Limit SCO's Claims Relating to Allegedly Misused Material. By this motion, IBM seeks to limit the scope of SCO's claims to the Items of allegedly misused material disclosed with sufficient specificity in SCO's December 22, 2005 Disclosure of Material Allegedly Misused by IBM (the "Final Disclosures").

### Preliminary Statement

As this Court has recognized, SCO has made a plethora of public statements accusing IBM of misconduct, while offering no support for its allegations. The Court deferred IBM's motions for summary judgment but ordered SCO to particularize its claims, once and for all, in the Final Disclosures. SCO has refused. Although all 294 Items identified in the Final Disclosures fail to provide the level of specificity sought by IBM and required by the Court, the lack of specificity for 201 of the 294 Items renders it impossible as a practical matter for IBM to defend itself. For those 201 Items, SCO fails to identify the allegedly misused material with the most basic detail. SCO's failure to provide even the most basic specificity for its claims is extraordinarily prejudicial to IBM and should not be allowed. Thus, IBM respectfully requests that the Court limit SCO's claims to the 93 Items for which SCO provides detail sufficient to identify the allegedly misused material.

Following SCO's repeated failure to respond to IBM's discovery requests, Magistrate Judge Wells twice ordered SCO to respond to the requests with specificity. In an order dated December 12, 2003, Magistrate Judge Wells ordered SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM". (12/12/2003 Order ¶ 4.) Again, in an order dated March 3, 2004, Magistrate Judge Wells ordered SCO "to

2

provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix" and "to provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived". (03/03/04 Order ¶¶ I.1-I.3.) SCO failed to comply, and IBM moved for summary judgment.

After deferring IBM's summary judgment motions, this Court likewise required SCO to particularize its claims. In an order dated July 1, 2005, the Court adopted (over SCO's objection) an IBM proposal to set interim and final deadlines for the disclosure of all allegedly misused material. The Court set October 28, 2005, as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material Identified to Date and to Update Interrogatory Responses Accordingly". (07/01/2005 Order ¶ III.) The Court set December 22, 2005, as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material". (Id.)

Although IBM had already produced hundreds of millions of lines of source code (which SCO could have used to comply with the Court's orders), SCO demanded that IBM produce hundreds of millions of lines of additional code, programmers' notes and design documents. IBM produced the equivalent of tens of millions of pages of these materials. As described in the May 3, 2005 Declaration of Todd M. Shaughnessy, the production involved more than 4,700 hours of work from more than 400 IBM employees, not including the time spent by IBM counsel and consultants. (05/03/2005 Shaughnessy Decl. ¶ 5 (attached as Exhibit A).)

SCO's interim disclosures nevertheless fell far short of the specificity required by the Court. SCO failed, for example, to describe all of the allegedly misused material by version, file and line of code. SCO refused to disclose versions, files and/or line numbers for the code at

3

issue with respect to the 201 Items in dispute on this motion. IBM promptly brought these deficiencies to SCO's attention and asked that SCO correct them in its Final Disclosures. (See 12/5/05 Letter from T. Shaughnessy to T. Normand, a true and correct copy of which is attached as Exhibit B.) Because it is practically impossible to defend against imprecise allegations, IBM advised SCO it would ask the Court to preclude SCO from pursuing any claims regarding allegedly misused material not properly disclosed in the Final Disclosures, which we asked SCO to provide in an electronic format that would allow efficient analysis by IBM. (See id. at p. 2.) SCO did not respond to that letter, or otherwise object to IBM's request.

Rather than correct the shortcomings in SCO's interim disclosures, the Final Disclosures (which SCO declined to provide in an electronic form, hindering IBM's analysis) merely compound them, by challenging even more items without specifically describing them. None of the 294 Items in the Final Disclosures provide the level of detail sought by IBM and required by the Court. Remarkably, for 201 of the 294 Items, SCO does not provide enough particularity even to identify the versions or line numbers for the allegedly misused material. (See Item Nos. 2-112, 143-149, 165-182, 186-193, 204, 232-271, 279-294.)[1] In fact, no versions, files or lines of Unix System V code are identified; no versions, files or lines of Dynix or AIX code are identified as misused; and no specific versions or lines of Linux code are identified.[2] For these

---

[1] Although SCO does provide versions and line numbers for the files identified in Item No. 204, SCO makes no claim as to any misuse of the code identified in Item No. 204. Under the heading "Improperly Disclosed Code, Method, or Concept", SCO states: "N/A". (See infra note 4.)

[2] Although SCO identifies certain Linux files (but not specific versions or lines of code) as to the 201 Items in dispute, a number of the files are identified unclearly and inconsistently. In some cases, SCO seems simply to refer IBM to a website. (See, e.g., Item Nos. 9, 11, 18, 98, 178.)

201 Items, SCO comes nowhere close to providing the information that IBM needs to defend itself and that the Court ordered SCO to provide.[3]

As is further discussed below, SCO should now finally be precluded from proceeding any further on those 201 Items for which it has not provided even the most basic identifying information.

## Argument

I.    THE FINAL DISCLOSURES LACK THE REQUISITE SPECIFICITY.

At this point, IBM has been asking SCO for nearly three years to identify with specificity the material that IBM is alleged to have misused. Specifically, IBM has requested SCO to specify the versions, files and line numbers of the allegedly misused material. The Court has ordered SCO no less than three times to do so. Yet, as described above, SCO has refused. While the sheer magnitude of the materials provided with the Final Disclosures gives the false impression of detail, the 201 Items at issue on this motion fail to identify any versions, files or lines of any Unix System V, AIX or Dynix code as being misused. The Items at issue identify Linux files in most cases (albeit inconsistently and confusingly) but nowhere specifically identify any versions or lines of Linux code; in some cases IBM simply is referred to a website. (See, e.g., Item Nos. 9, 11, 18, 98, 178.)

---

[3] The shortcomings in the Final Disclosures are not limited to failing properly to identify the versions, files and lines of code of the relevant UNIX System V, AIX, Dynix and Linux material. SCO also fails to provide, for example, adequate information as to when and how the allegedly misused material was ever disclosed, by SCO or anyone else; details as to the origin of the material, including when, where and by whom the material was created; and all products in which the material is included, or on which the material is based.

5

Item Nos. 271 and 294 of the Final Disclosures illustrate the problem. Item No. 271 claims that "AIX and Dynix/ptx patented technologies, based on UNIX System V, were improperly released for the benefit of, and use by, the Linux development community in developing Linux." SCO does not identify a single version, file or line of Unix System V, AIX, Dynix or Linux technology that IBM is alleged to have misused. Instead, SCO merely attaches 34 patents. None of these 34 patents lists any versions, files or lines of code. There is, therefore, no way of telling what, if any, Unix System V, AIX, Dynix or Linux technology SCO contends was misused. Similarly, SCO's Item No. 294 alleges that IBM has engaged in "[e]xtensive use of ptx programming experience (and a fortiori exposure to UNIX System V) in creating numerous Linux kernel patches". In support of this claim, SCO attaches a computer disk containing 33,000 single-spaced pages of proposed code contributions. Nowhere does SCO identify with specificity a single version, file or line of Unix System V, AIX, Dynix or Linux code. Here again, IBM is left to guess as to SCO's claim.

SCO's failure to specify its claims is especially egregious because it has had the information necessary to do so since nearly the beginning of this lawsuit. SCO was founded as a Linux company, and Linux source code has been available for download from the internet since the inception of Linux—long before the commencement of this lawsuit. SCO purports to own all Unix System V code and, thus, has ready access to all of the System V code. Further, IBM produced millions of lines of AIX and Dynix source code to SCO almost two years ago and supplemented the production nearly nine months ago with hundreds of millions of additional lines of code, including all iterations and versions of such code maintained by IBM, and thousands of programmers' notes and design documents. Despite requiring IBM to devote

6

considerable resources to providing SCO with this information, SCO identifies lines of AIX or Dynix code for only one of the 201 Items at issue and fails to make any allegation of misuse in relation to that code.[4]

## II. SCO'S GAMESMANSHIP IS EXTREMELY PREJUDICIAL TO IBM.

The shortcomings in the Final Disclosures are not only pervasive, but they also result in extraordinary prejudice to IBM. The lack of particularity in the Final Disclosures cloaks SCO's claims in uncertainty and makes it practically impossible for IBM to defend itself.

SCO contends generally that IBM misused the Unix System V code (which SCO purports to own) and the AIX and Dynix code (which IBM owns, but SCO purports to control). According to SCO, IBM improperly "dumped" Unix System V, AIX and Dynix into Linux. Given the scope of the code implicated by SCO's claims, however, it is practically impossible to assess and defend against them without knowing exactly which versions, files and lines of code SCO contends are at issue. As the Court will recall, there are numerous versions of Unix System V, AIX, Dynix and Linux, and each version consists of thousands of files and millions of lines of code. For example, Unix System V R4.2 ES/MP consists of 22,222 files and 7,339,157 lines of code; AIX 4.3.3 for Power consists of 111,964 files and 138,420,329 lines of code; and Linux 2.6.15 consists of 18,811 files and 7,290,070 lines of code.

---

[4] In Item No. 204, SCO provides a comparison of System V source code and Dynix source code to support the unremarkable, and uncontested, proposition that the Dynix operating system contains certain code modified or derived from System V source code; neither party contests the fact that IBM (through Sequent) had a valid license to include System V source code in Dynix. In fact, as noted above, SCO makes no claim of misuse of the material identified in Item No. 204. (See supra note 1.)

7

SCO's failure to specify its claims leaves IBM no way to defend itself except by undertaking a massive analysis, potentially of every single version, file and line of Unix System V code, every single version, file and line of code in AIX and Dynix, and every single version, file and line of code in Linux.[5] As SCO well knows, there is no way IBM could conduct this analysis in several years, let alone in the several months afforded by the scheduling order. Unlike SCO, IBM does not know what SCO claims. If tolerated, SCO's gamesmanship would give IBM and its experts no meaningful opportunity to evaluate in advance the claims SCO may choose to trot out in its expert reports, in opposition to IBM's summary judgment motions and/or at trial.

III. THE ONLY APPROPRIATE REMEDY FOR SCO'S GAMESMANSHIP IS TO LIMIT ITS CLAIMS TO THE DISCLOSED ITEMS FOR WHICH SCO PROVIDED SUFFICIENT SPECIFICITY.

SCO's failings regarding the Final Disclosures do not occur on an empty set. They come following repeated discovery requests by IBM and three separate orders of this Court. Indeed, they come in derogation of this Court's orders. The appropriate remedy for a party's failure to comply with an order requiring the disclosure of the party's claim is an order precluding the party from pursuing undisclosed elements of the claim.

Many courts have held that a party's claim must be limited to exclude elements of the claim for which the party has failed to provide appropriate, court-ordered discovery. See Imax

---

[5] Based on SCO's claims, the investigation would have to include, among other things, an inquiry into the origin of the code, the value of the code, whether SCO distributed the code under the terms of the General Public License, whether the code was developed to comply with publicly known standards, whether the code is dictated by externalities, whether the code is merely an unprotectable idea, whether the code ever shipped without a required copyright notice, and whether the code is otherwise in the public domain.

384046.1

Corp. v. Cinema Tech., Inc., 152 F.3d 1161, 1167 (9th Cir. 1998) (affirming district court's decision "refusing [under Fed. R. Civ. P. 26(e)] to consider any trade secret material that was not specifically listed in haec verba in [plaintiff's] Fourth Supplemental Responses", because defendant "could not be expected to prepare its rebuttal to [plaintiff's] trade secrets claim without some concrete identification of exactly which [elements] alleged were incorporated into [defendant's] own projector system"); Kang v. Lee, No. 96 Civ. 1145, 1997 WL 669787, at *3 (S.D.N.Y. Oct. 27, 1997) (ruling that "[a]s a result of Defendant's failure to comply with Plaintiff's discovery demands, even after this Court directed him to do so, he has been precluded from offering any evidence at trial relating to matters raised in Plaintiff's unanswered interrogatories and unsatisfied document requests").

      Modifying the Scheduling Order either to afford IBM more time to evaluate SCO's claims or to provide SCO an opportunity to amend its disclosures would not be an adequate solution to the lack of specificity in the Final Disclosures. It would require years for IBM to chase all of the facts relating to the hundreds of millions of lines of code implicated by SCO's claims. As described above, in spite of the benefit of almost three years time and numerous requests from IBM and instructions from the Court, SCO has repeatedly refused to identify with specificity the basis of its claims. The resolution of this case should not be delayed further to provide SCO yet another opportunity. It has had more than enough opportunity to comply with the Court's orders. As IBM has previously advised the Court, we believe it is in IBM's interest and in the public interest to bring this case to a close as soon as possible.

384046.1

In short: enough is enough. SCO should now finally be precluded from proceeding any further on those 201 Items for which it has not provided even the most basic identifying information. (<u>See</u> Item Nos. 2-112, 143-149, 165-182, 186-193, 204, 232-271, 279-294.)

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter an order limiting the scope of SCO's claims relating to allegedly misused material to the following Items in SCO's Final Disclosures: Item Nos. 1, 113-142, 150-164, 183-185, 194-203, 205-231, and 272-278.

DATED this 13th day of February, 2006

SNELL & WILMER L.L.P.

<u>/s/ Todd M. Shaughnessy</u>
Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Jennifer M. Daniels
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

384046.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of February, 2006, a true and correct copy of the foregoing was hand-delivered to the following:

>Brent O. Hatch
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

and a true and correct copy of the foregoing was sent by U.S. Mail, postage prepaid, to the following:

>Robert Silver
>Edward Normand
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

>Stephen N. Zack
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

/s/ Todd M. Shaughnessy

384046.1