FILED
U.S DISTRICT COURT

2006 FEB 10 P 4: 35

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | **FILED IN REDACTED FORM** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |
| Defendant/Counterclaim-Plaintiff. | |

## Table of Contents

Preliminary Statement..................................................................................................................1

Argument ....................................................................................................................................3

I.    IBM'S FAILURE TO PRODUCE HIGHLY RELEVANT
DAMAGES-RELATED DOCUMENTS ..............................................................3

    A.    IBM's Actual and Projected Linux-Related Revenues.............................5

    B.    IBM's Actual and Projected AIX- and Dynix-Related Revenues. ...........7

    C.    IBM's Profits and Expenses Associated with Its Linux-Related Revenues ..............9

    D.    IBM's Profits and Expenses Associated with Its AIX- and Dynix-Related

        Revenues ..............................................................................................10

    E.    Market Size/Market Shares for the Linux, UNIX, and Windows OS's....................11

    F.    IBM Customers Who Migrated to Linux from UNIX..............................13

    G.    General Categories Related to Linux, AIX and Dynix............................14

II.    IBM'S FAILURE TO PRODUCE OTHER CATEGORIES
OF HIGHLY RELEVANT DOCUMENTS .........................................................15

    A.    Documents Directly Relating to Project Monterey..................................15

    B.    Documents Directly Relating to IBM's Ongoing Linux-Related Activities .............17

    C.    Any and All Versions of AIX from 1985 to 1990 ..................................18

III.    IBM'S FAILURE TO PRODUCE RULE 30(b)(6) WITNESSES
TO ADDRESS SEVERAL HIGHLY RELEVANT TOPICS..............................20

    A.    Testimony Regarding IBM's Retention of Potentially Responsive Documents .......20

i

B.     Testimony Regarding Crucial Aspects of IBM's Linux-Related Activities...............21

C.     Testimony Regarding the Scope of the Restrictions of IBM's Own Licenses ..........22

D.     Testimony Regarding IBM's Communications with the "Chicago 7".......................23

Conclusion ........... ............... ....................................................................................................25

CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER OBLIGATIONS...............26

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this memorandum in support of SCO's motion to compel Defendant, International Business Machines Corporation ("IBM"), to produce certain discovery.

### Preliminary Statement

SCO asks the Court to order IBM to produce several categories of documents that are highly relevant to SCO's claims (as well as certain of IBM's own counterclaims) and that IBM would not face any undue burden in producing. SCO also asks the Court to order IBM to produce a Rule 30(b)(6) witness to address several topics directly relevant to SCO's claims. IBM could produce the foregoing documents and witnesses within the current deadline (March 17, 2006) for the end of all fact discovery.

While IBM now tells SCO that the material and testimony at issue is either not relevant at all or not sufficiently relevant that IBM should have to produce it, SCO expects that IBM will say the exact opposite when it renews its motions for summary judgment and seeks to rely on the absence of the very evidence that it now holds back. In response to numerous unambiguous document requests, moreover, IBM has unilaterally declared that it has produced documents that are "sufficient" to respond to only a portion of the request – as if those were appropriate discovery responses under the Federal Rules of Civil Procedure.

SCO primarily seeks documents of the same type that SCO has produced to IBM in response to IBM's damages-related document requests. These documents directly relate to SCO's theory of damages with respect to its contract, copyright, and tort claims. IBM cannot reasonably dispute the relevance of such materials, and any burden IBM faces in producing the relevant materials is merely a function of the size of IBM and its correspondingly broad Linux-

1

related business   Neither of those facts is a proper basis for an "undue burden" objection, and both facts underscore the very grounds of SCO's theory of damages.

In addition, although IBM has failed to produce relevant documents and witness on several other issues,[1] SCO addresses in this Motion only the following:

- Documents directly relating to that aspect of SCO's claim of unfair competition in which SCO argues that in the Project Monterey joint venture between the parties IBM never gained the right to use SCO's proprietary source code in IBM's own AIX product.

- Documents directly relating to IBM's ongoing Linux-related activities – which bear directly on both SCO's own claims and IBM's request for a clean bill of health with respect to all of those activities.

- IBM's failure in response to a Court Order to produce any version of AIX from 1985 to 1990, where SCO would rely on such UNIX derivative works and modifications in support of its contract claims, and

  **REDACTED**

- IBM's refusal to produce a Rule 30(b)(6) witness to address IBM's retention of potentially responsive documents in this litigation –

  **REDACTED**

- IBM's refusal to produce a Rule 30(b)(6) witness to address crucial aspects of IBM's Linux-related activities and IBM's communications with a group of industry cohorts to discuss how to deal with SCO's lawsuit against IBM.

- IBM's refusal to produce a Rule 30(b)(6) witness to address the scope of the restrictions that IBM's own licenses impose on its licensees' use or distribution of AIX and Dynix technologies – an issue that obviously bears on IBM's interpretation of the restrictions of the Software Agreements at issue in SCO's contract claims.

---

[1] As of today, for example, SCO continues to await the designation of witnesses and deposition dates for several IBM fact witnesses, and the designation of witnesses and deposition dates with respect to SCO's Notices of Rule 30(b)(6) Deposition dated August 15, 2005, and November 11, 2005. With respect to the Rule 30(b)(6) witnesses in particular, IBM promised many weeks ago to identify witnesses and provide dates on several of the topics, but has failed to do so.

SCO has repeatedly and unsuccessfully asked IBM to produce or discuss the production of the foregoing documents and witnesses, in many cases exchanging correspondence with IBM on these topics over the course of months. Given those efforts and the impending end of SCO's fact discovery on its claims, this Motion is ripe for resolution.

### Argument

The Supreme Court has broadly interpreted Rule 26(b)(1) of the Federal Rules of Civil Procedure regarding the actual and potential relevance of requested discovery. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 451 (1978); accord Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995). In this Court, "at the discovery stage, the concept of relevance should be construed very broadly." Gohler v. Wood, 162 F.R.D. 691, 695 (D. Utah 1995). The discovery requests below do specifically relate to issues raised by the parties' pleadings, but even if they did not, they would still appropriately relate to SCO's efforts to "define and clarify the issues." Gomez, 50 F.3d at 1520.

SCO addresses below IBM's failure to produce highly relevant damages-related documents (Part I), certain categories of other highly relevant documents (Part II), and Rule 30(b)(6) witnesses to address certain plainly relevant topics (Part III).

## I.     IBM'S FAILURE TO PRODUCE HIGHLY RELEVANT DAMAGES-RELATED DOCUMENTS

IBM has simply refused to produce entire categories of documents, going to the heart of SCO's theories of damages, that SCO asked IBM to produce in its Fifth Request for the Production of Documents (Dec. 20, 2004) (Ex. 1).

- In response to twenty-eight (28) of the requests in SCO's Fifth Request, IBM refused to produce any documents, stating that each request "seeks information that is irrelevant and

3

not reasonably calculated to lead to the discovery of admissible evidence." IBM's Responses and Objections to SCO's Fifth Request for the Production of Documents (Feb. 3, 2005) (Ex. 2), Nos. 142, 146, 147, 152-59, 163, 165-69, 171-73, 176, 177, 179-81, 194, 195, 197.

- In response to many other categories of documents, IBM claims to have produced and/or promises to produce documents, but in fact has produced very few responsive documents. Id., Nos. 143-45, 148-51, 160-62, 164, 170, 174, 175, 178, 182-93, 196, 198.

In addition, although in response to IBM's request SCO identified the bates-range and subject matter of the numerous damages-related documents it produced in the summer of 2005 (Ex. 3 at 2-3), IBM has refused to do the same.

A fundamental threshold problem with IBM's objections to these requests is IBM's across-the-board pronouncement that it will not produce any documents "prior to 2001." IBM's Responses and Objections to SCO's Fifth Request for the Production of Documents, at 2. IBM offers no basis for this self-imposed limitation, because there is none. IBM's proclamation goes well beyond an interpretation of the scope of the requests. A party may not, as IBM has done here, "arbitrarily draw the lines of what is or is not discoverable; to unilaterally decide what may be fair or foul." Johnson v. Mach. Co. v. Kaiser Aluminum & Chem. Corp., No. 85-3200, 1985 WL 4007, at *2 (E.D. Pa. Nov. 26, 1985) (Ex. A).

An obvious aspect of SCO's theory of damages is evidence of how IBM's Linux-related revenues and profits have increased from the late 1990s to the present, during the period in which IBM has undertaken to improve Linux by misappropriating SCO's protected technologies and to benefit from such improvements. A critical component of SCO's damages model will be the evolution of IBM's contributions over time and the fruits of those contributions, which were borne in its revenues in sales of Linux-related hardware, middleware, software, and consulting

4

services. Given the clear relevance of this information, IBM's refusal to produce responsive documents from "prior to 2001" is baseless.

SCO identifies below the basic categories of documents sought in the requests at issue and explains why the requested documents are plainly relevant to SCO's claims. Although each party's precise theories of damages is ultimately a subject of expert testimony, SCO addresses below the general issue of how the document requests relate to the damages theories that SCO has been pursuing and is continuing to pursue in this case.

A.    IBM's Actual and Projected Linux-Related Revenues

These requests include Nos. 142, 143, 146, 147, 148, 149, 152, 153, 154, and 155. The documents concerning the amounts of IBM's actual and projected Linux-related revenues are relevant because, for example, they will permit SCO to demonstrate how much revenue IBM has obtained and would expect to obtain as a result, in significant part, of IBM's misappropriation of SCO's proprietary technologies in IBM's contributions to Linux. These revenue figures are necessary to demonstrate the amount of such revenue SCO would have realized if IBM had not used its improper contributions to Linux to make it an enterprise-ready operating system that took market share from SCO's UNIX products. They are also necessary to demonstrate the amount of money that IBM should disgorge to SCO as a result of IBM's wrongdoing. As a matter of expert analysis, the actual and expected future growth of such revenues is relevant to establish the value of SCO's technology to IBM in the context of a hypothetical reasonable-royalty negotiation.

IBM's objections to the foregoing requests include its refusal to produce transaction-level data or even a summary of such data with respect to sales of any Linux-related product other

than the Linux OS. The transactional-level data is necessary, for example, for SCO's experts to distinguish applications where Linux would have been unsuitable without IBM's contributions of SCO technologies – for example, applications requiring high levels of scalability or reliability. Without being able to rely on such data, SCO fully expects IBM's damages experts to argue that SCO's damages models include revenue that should be excluded from the analysis. IBM cannot have it both ways: it cannot refuse to produce relevant materials that would enable SCO to establish its damages, and then object to SCO's damages models because they include revenue that SCO could exclude only if it had the transactional-level data that it has requested.

IBM's own documents confirm, moreover, that IBM's revenues from Linux-related offerings (as opposed to sales of the OS itself) are plainly relevant.

**REDACTED**

Given those facts, it is clear that requested documents are relevant to SCO's efforts to fashion its damages claims, and that without such documents SCO will be significantly prejudiced.

In addition, although unnecessary to demonstrate at this point in discovery, there is a direct linkage between IBM's contributions of enterprise technology to Linux and IBM's increased sales of Linux-related middleware and services.

**REDACTED**

B.    IBM's Actual and Projected AIX- and Dynix-Related Revenues

These requests include Nos. 142, 144, 148, 150, 154, and 155. The documents concerning the amounts of IBM's actual and projected AIX-related revenues are relevant because they will permit SCO to demonstrate, among other things, how much revenue IBM has obtained and would expect to obtain as a result of IBM's unlicensed use of AIX after SCO terminated IBM's Software Agreements in June 2003. SCO intends to use these revenue figures to demonstrate, under the Copyright Act, the amounts that IBM should be obligated to disgorge to SCO. The same rationale applies to SCO's request for IBM's sales and licensing of the Dynix operating system, as at Request Nos. 145 and 151.

IBM has refused to produce any information showing IBM's sales of related AIX hardware, either on a transactional basis (Request No. 142) or even in summary form (Request No. 148). Likewise, IBM has refused to produce information on AIX-related sales of servers (such as IBM's RS/6000 series), either on a transactional basis (Request No. 154) or in the form of contracts (Request No. 155). SCO therefore lacks significant evidence of IBM's sales of

7

servers with AIX preinstalled (that is, RS/6000 servers a/k/a pSeries servers).

**REDACTED**

Because SCO seeks to demonstrate the many forms of revenues that IBM received in connection with AIX sales that occurred after June 2003, it will require sufficient data to determine whether particular transactions were associated with AIX sales that occurred before or after that date. Accordingly, unless IBM collates the information internally on that basis, SCO seeks the transactional-level information to prepare its analysis. IBM should also produce information regarding its AIX sales prior to June 2003. That information will show the importance of IBM's pre-existing AIX franchise and, therefore, the value of the technology to IBM in the context of a hypothetical reasonable royalty negotiation.

C.    IBM's Profits and Expenses Associated with Its Linux-Related Revenues

These requests include Nos. 163-68. IBM has failed to produce any significant volume of documents evidencing the costs associated with (and thus the profits from) its Linux-related hardware sales.[2]

**REDACTED**

Yet IBM has refused to produce information on either the costs or the profits associated with Linux-related hardware (Request Nos. 163 and 166), software (Request Nos. 164 and 167),

---

[2] IBM has produced, for example, information on its development expenses and its selling, general and administrative ("SG&A") expenses, but not its cost of goods sold ("COGS"), in connection with its Linux related hardware sales. As SCO notes above, although in response to IBM's request SCO has identified the bates range and subject matter of the numerous damages-related documents that SCO produced in the summer of 2005 (Ex. 3 at 2-3), IBM has refused SCO's request to identify the damages-related documents that IBM claims to have produced.

9

or services (Request Nos. 165 and 168). And while IBM agreed to produce information on its costs relating to sales of the OS itself (Request Nos. 164 and 167), it refused to produce information on the corresponding profits.

**REDACTED**

D.   IBM's Profits and Expenses Associated with Its AIX- and Dynix-Related Revenues

These requests include Nos. 163-71. The documents concerning the profits and expenses associated with IBM's AIX-related revenues are relevant because, for example, they will permit SCO to demonstrate the amount of gross profit IBM has realized and would expect to realize as a result of IBM's improper continued use of AIX after SCO terminated IBM's Software Agreements in 2003. The documents concerning the amounts of such profits and expenses from before 2003 are relevant because they will permit SCO to confirm the accuracy of IBM's post-termination gross profit. Under the Copyright Act, SCO intends to use the gross-profit figures to demonstrate the amounts that IBM should be obligated to disgorge to SCO. In addition, as a matter of expert analysis, the profits and expenses are relevant to establish the value of SCO's technology to IBM in the context of a hypothetical reasonable-royalty negotiation.

In short, the requested documents bear directly on the extent to which IBM has profited from its unlicensed sales of AIX. IBM has refused to produce information on either the costs or the profits associated with its AIX-related sales of hardware (Request Nos. 163 and 169), software (Request No. 164), or services (Request Nos. 165 and 171).

**REDACTED**

10

**REDACTED**

E.     Market Size/Market Shares for the Linux, UNIX, and Windows OS's

These requests include Nos. 172-77. The requested documents concerning the market size and market shares for the Linux, UNIX, and Windows operating systems are relevant because, for example, they will permit SCO to demonstrate how much of the market IBM has acquired and can expect to acquire as a result, in significant part, of IBM's misappropriation of SCO's proprietary technologies in IBM's contributions to Linux. These documents would enable SCO to use the very documents in IBM's custody and control – thereby limiting IBM's ability to object to the accuracy of the documents and to any related expert conclusions relying on such information.

SCO will likewise use these market-share figures to demonstrate the amount of market share SCO would have realized if IBM had not used its improper contributions to Linux to make it an enterprise-ready operating system that took market share from SCO's UNIX products. This information would also demonstrate the amount of money IBM should disgorge to SCO as a result of IBM's wrongdoing. The documents are further relevant because, for example, they will permit SCO to demonstrate that IBM made Linux SCO's primary competitor in the market for enterprise-ready operating systems, such that the rise of Linux was inversely proportional to the fall in SCO's UNIX business.

The data and information sought in Request Nos. 172-77 are directly relevant to seminal issues in this case, including SCO's allegation that as a result of IBM's contribution of SCO's confidential materials into Linux, Linux gained substantial market significance at the expense of

UNIX. The documents sought in these requests are critical to establishing the growth of the Linux-based enterprise-computing market segment in relation to the total enterprise-computing market. This information will also enable SCO to demonstrate IBM's competitive position within the enterprise-computing market and the Linux-based enterprise-computing market segment, both before and after its improper contributions to Linux.[3]

In addition, because server hardware forms the basis for IBM's enterprise-computing solutions, IBM's position in the server market provides one of the best measures of its overall competitiveness in the enterprise-computing market. IBM strengthened its competitive position through its wrongful conduct and, therefore, the documents sought are clearly relevant and likely to lead to the discovery of admissible evidence. Likewise, because IBM's Linux strategy had ramifications across each of its server platforms, it also follows that information about all of its server platforms is relevant despite IBM's reluctance to provide the data.

Although IBM agreed to produce information for the Linux and UNIX OSs (Request Nos. 174 and 175), its production does not appear to be nearly complete even in those areas. IBM's documents contain references to a number of relevant International Data Corporation ("IDC") studies, for example, but the studies themselves have not been produced. Nor is there any production of recent projections of future Linux and UNIX market sizes/shares, or of documents containing systematic records of OS market shares.

---

[3] An important goal of IBM's Linux strategy, and an important reason IBM worked to enterprise-harden Linux, was to ward off significant competitive threats from Sun and Microsoft. Without information on the overall market context (including information about Sun and Microsoft), information on IBM's server sales will provide little insight into the extent to which IBM was successful in staving off those competitive threats. The data are also important because the overall server market experienced a palpable downturn during the period at issue. Without information about the overall market context, IBM's server sales from the relevant period could provide a misleading measure of their competitive performance.

In connection with SCO's other requests (regarding information on market sizes and market shares for servers, middleware, and services), IBM simply refused to produce the information altogether. SCO seeks information relating to Linux, UNIX, and Windows server hardware, middleware, and services, including third-party studies and all available current and historical information ן

**REDACTED**

F.    IBM Customers Who Migrated to Linux from UNIX

These requests include Nos. 156-59. The documents concerning IBM customers who migrated to Linux from UNIX are relevant because, for example, they will permit SCO concretely to demonstrate that by having made Linux enterprise-ready, through its misappropriation of SCO's proprietary technologies in its contributions to Linux, IBM thereafter convinced UNIX users to switch to Linux. SCO intends to use the documents to demonstrate the number of IBM customers who migrated to Linux from UNIX and when they did so, in order further to show how much revenue that IBM gained and that SCO lost as a result of IBM's having made Linux enterprise ready. IBM has refused to produce any documents in response to these requests.

The data sought in these requests will establish that Linux became suitable for workloads that previously required UNIX through IBM's contribution of SCO's valuable proprietary information.

**REDACTED**

13

**REDACTED**

Such improper tactics are among the bases for SCO's claims against IBM.

G.    General Categories Related to Linux, AIX and Dynix

These requests include Nos. 160-62 and 178-84. IBM has produced only a few AIX-related documents created after 2003 and has produced virtually no documents concerning Dynix. In Request No. 162, for example, SCO seeks to obtain documents relating to IBM's decision to undertake its strategic shift toward Linux. In Request No. 178, SCO seeks analyses and various other documents relating to IBM's projections of the actual, projected, or likely customers for operating systems, hardware, software, and services based on Linux, AIX, or Dynix. In Request Nos. 182-84, SCO seeks documents concerning IBM's plans and public-relations efforts to market, promote, or advertise AIX and Dynix. These requests, and the others, are all reasonably calculated to lead to admissible evidence regarding (among many other subject matters) the relevant markets, IBM's competitiveness within those markets and with respect to specific products over the course of its contributions to Linux, and IBM's reasons for deciding to shift toward Linux in the first place. These issues all directly relate to SCO's claims and theories of damages.

II.    **IBM'S FAILURE TO PRODUCE OTHER CATEGORIES OF HIGHLY RELEVANT DOCUMENTS**

    A.    <u>Documents Directly Relating to Project Monterey</u>

**REDACTED**

Accordingly, in its Seventh Request for the Production of Documents (Aug. 12, 2005) (Ex. 18), Request Nos. 293-98, SCO asked IBM to produce documents relating to IBM's use and definition of the internal IBM terms "GA" and "PRPQ" and documents relating to IBM's internal criteria for using one label or the other in describing a product. In response to most of the requests, IBM objected on the following grounds:

> In addition to the foregoing general objections, IBM objects specifically to this Request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably

15

calculated to lead to the discovery of admissible evidence. IBM further objects to this Request on the grounds that it fails to identify with reasonable particularity the documents that plaintiff seeks. Subject to, as limited by, and without waiving the foregoing general and specific objections, IBM, after a search of reasonable scope, has already produced or will produce non-privileged documents sufficient to describe the terms "GA" and "PRPQ" for AIX.

IBM's Responses and Objections to SCO's Seventh Request for the Production of Documents

(Sept. 19, 2005) (Ex. 19), at 16-19.

SCO submits that IBM's objections to the foregoing requests are improper. As to specificity, the requests are detailed and clear. In Topic No. 295, for example, SCO seeks "All documents, including manuals, concerning IBM's current or former requirements, guidelines, instructions, or procedures for making a GA release of a product such as an operating system, including but not limited to documents concerning the internal review, testing, support, approvals, and level of product development required or recommended for a GA release." The topic thus clearly asks IBM to produce those documents relating to the means by which IBM has satisfied or does satisfy itself that it will designate a product a "GA" release. As to burden, there must be (or have been) one or more persons at IBM who are familiar with the means by which IBM determines whether to label a product "GA" or "PRPQ." IBM could easily begin to identify the responsive, relevant documents by speaking with such employees. As to the scope of IBM's search, it is not for IBM unilaterally to decide either (a) that in the document requests at issue, SCO sought only to obtain those documents that "describe the terms 'GA' and 'PRPQ' for AIX," or (b) that in its own view IBM has produced documents "sufficient to describe" even that subset of SCO's document requests.

Further, as to relevance, IBM's objections are not well founded. It has never been disputed between the parties that Project Monterey is a subject of SCO's claim of unfair

competition.  In addition to producing at least a few documents relating to "GA" and "PRPQ," IBM has produced many internal documents regarding Project Monterey, and has permitted SCO to ask numerous detailed questions of numerous IBM fact witnesses regarding Project Monterey. In sum, the documents SCO seeks in Request Nos. 293-98 relate directly to a core aspect of one of the core set of facts underlying SCO's claim of unfair competition, and the Court should order IBM to produce the documents responsive to the Requests.

B.      Documents Directly Relating to IBM's Ongoing Linux-Related Activities

SCO's claims plainly implicate IBM's ongoing efforts to make contributions to (that is, to improve) Linux.  Indeed, in its Tenth Counterclaim, IBM broadly states: "IBM is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that IBM does not infringe, induce the infringement of, or contribute to the infringement of any SCO copyright through its Linux activities, including its use, reproduction and improvement of Linux, and that some or all of SCO's purported copyrights in UNIX are invalid and unenforceable."  IBM's Second Amended Counterclaims ¶ 173 (Mar. 29, 2004).

Accordingly, SCO has asked IBM to produce the following material clearly relating to IBM's aggressive promotion and marketing of Linux:

> All documents concerning IBM's plans, efforts or attempts to market, promote, or advertise (a) hardware products or software products usable with Linux-based operating systems, AIX operating systems or Dynix operating systems; (b) middleware software usable in a Linux environment; or (c) services (including installation, development, maintenance, consulting, or migration services) associated with Linux-based systems or software products, AIX systems or software products, or Dynix systems or software products.

SCO's Seventh Request for the Production of Documents (Ex. 18), Request No. 372.  Again, on its face, this request seeks relevant material – namely, documents that SCO can use further to

17

demonstrate (among other things) IBM's intense commitment to Linux across products and IBM's view of the significance of that commitment to making Linux an enterprise-ready operating system in competition with SCO's UNIX products. The documents thus obviously relate to (among other things) SCO's theories of damages.

In response to Request No. 372, however, IBM makes its rote objections on the grounds of purported ambiguity and burden, and again unilaterally redefines the scope of the request: "IBM, after a search of reasonable scope, has already produced documents sufficient to describe IBM's efforts to promote Linux." IBM's Responses and Objections to SCO's Seventh Request for the Production of Documents (Ex. 19), at 65-66. SCO again submits that it is not for IBM unilaterally to decide either (a) that in the document requests at issue, SCO sought only to obtain those documents that "describe IBM's efforts to promote Linux," or (b) that in its own view IBM has produced documents "sufficient to describe" even that subset of SCO's document requests. IBM's objection suffers from the further, fundamental flaw that IBM has unilaterally imposed the restriction on the request that it would not produce any documents from before 2001. IBM imposed the same restriction in response to SCO's Fifth Request for the Production of Documents. See Part I, above. Such pre-2001 marketing materials are obviously relevant to help SCO show how IBM's commitment to Linux across products, since before 2001, has increased commensurate with the significant contributions that IBM has made to Linux.

C.    Any and All Versions of AIX from 1985 to 1990

In its Order dated January 18, 2005, having identified the relevance of such source code to SCO's claims, this Court ordered IBM "to provide in a readily accessible format all versions and changes to AIX and Dynix." Order dated January 18, 2005, at 9-10. The Court issued that

Order notwithstanding IBM's representations at that time that it did not have ready access to pre-1991 AIX source code. See IBM's Mem. in Opp. to SCO's Mem. re Disc. (June 23, 2004) at 10; Decl. of Joan Thomas (June 23, 2004) ¶ 5. The Court specified: "This production is also to include the approximately 'two billion lines of code' as represented by IBM in addition to any other code that is found in the CMVC and RCS systems relating to AIX and Dynix." January 18 Order at 10.[4]

IBM has represented in the course of substantial correspondence with SCO on this issue (in which IBM repeatedly asked SCO where SCO thought IBM should look for the material in order to comply with the Court Order) that IBM has been unable to locate any pre-1991 version of AIX. If IBM has taken every reasonable step it can to locate such code, then SCO will address at an appropriate time (such as upon IBM's expected motions for summary judgment) the significance of IBM's failure to produce such code.

**REDACTED**

. SCO therefore raises IBM's failure to produce this material in an abundance of caution, in order to preclude any argument that SCO has not diligently pursued the production of the material.

---

[4] It is important to note that a proper production of pre-1991 AIX source code would include not only the source code itself, but also comments and admissions from IBM's own developers confirming that IBM regarded AIX as a whole, and important technologies within AIX, to have been derived from UNIX System V source code and technologies therein.

III.    IBM'S FAILURE TO PRODUCE RULE 30(b)(6) WITNESSES
        TO ADDRESS SEVERAL HIGHLY RELEVANT TOPICS

The broad scope of Rule 26(b)(1) also applies to Rule 30(b)(6) depositions, in that the

courts should "not read Rule 30(b)(6) as carving out a special limitation on the scope of

discovery defined in Rule 26(b)(1)." Cabot Corp. v. Yamulla Enters., Inc., 194 F.R.D. 499, 500

(M.D. Pa. 2000). Accordingly, SCO asks the Court to order IBM to produce a Rule 30(b)(6)

witness or witnesses in the following areas.

    A.    Testimony Regarding IBM's Retention of Potentially Responsive Documents

In its Notice of Rule 30(b)(6) Deposition dated August 15, 2005 (Ex. 22), in Topic No. 8,

SCO asks IBM to produce a witness to address: "The measures, policies, and/or procedures that

IBM has adopted or used to preserve or to destroy potentially relevant documents in this

litigation, including without limitation documents relating to Linux (such as Linux contributions

by anyone since IBM first learned of SCO's legal claims)." As SCO has pointed out to IBM (Ex.

23 at 1), the topic is appropriate under Rule 30(b)(6). See, e.g., Doe v. District of Columbia, No.

Civ. A. 03-1789, 2005 WL 1871019, at *8 (D.D.C. Aug. 9, 2005) (Ex. B); Bank of N.Y. v.

Meridien Biao Bank Tanzania Ltd., 171 F.R.D 35, 150-51 (S.D.N.Y. 1997); see also Nutramax

Labs, Inc. v. Twin Labs, Inc., 183 F.R.D. 458, 470 (D. Md. 1998). IBM agreed to produce a

witness to address this Topic (Ex. 24 at 4), but thereafter claimed otherwise (Ex. 25 at 3).


**REDACTED**


20

**REDACTED**

B.    Testimony Regarding Crucial Aspects of IBM's Linux-Related Activities

In its Notice of Rule 30(b)(6) Deposition dated November 11, 2005 (Ex. 30), in Topic
No. 7, SCO asks IBM to produce a witness to address: "IBM's view as to why current or
prospective customers have or have not accepted IBM's representations regarding the
performance and reliability of Linux."  In Topic No. 8, SCO asks IBM to produce a witness to
address: "The steps or measures IBM has taken to help IBM customers transition from using
other operating systems to using Linux, including making available to customers technology on
which IBM has relied in testing the performance and reliability of Linux."

On their face, Topic Nos. 7 and 8 are reasonably calculated to lead to IBM testimony that
will support SCO's argument that the significant role IBM has played in developing Linux and
helping its customers transition to the use of Linux is an important factor in SCO's theories of

21

damages. See also Part I.F, above.  SCO asserts (among other things) that IBM's role was crucial to enabling Linux to become an enterprise-ready operating system in competition with SCO's UNIX products.  In Topic No. 7, SCO seeks IBM's own views (that is, admissions) that IBM's customers accepted IBM's representations regarding the performance and reliability of Linux because they trusted IBM, in a way that they would not have trusted another company seeking to convince them to use Linux.  In Topic No. 8, SCO seeks further and directly to probe the full significance of IBM's role in convincing its customers to use Linux.  Each topic thus seeks directly relevant testimony, and each is sufficiently specific for IBM to identify and produce a witness or witnesses to address them.

      C.     Testimony Regarding the Scope of the Restrictions of IBM's Own Licenses

In its Notice of Rule 30(b)(6) Deposition dated November 11, 2005 (Ex. 30), in Topic No. 9, SCO asks IBM to produce a witness to address:  "The restrictions that IBM's AIX Licenses have imposed on the licensee's use or distribution of AIX source code, methods, or concepts, or of products that the licensee develops after entering into the AIX License."  SCO defined "AIX License" for purposes of the Notice as "any contract, agreement or license by which IBM has authorized a third party to have access to and to use AIX source code."  In Topic No. 10, SCO requested a witness on the same bases with respect to Dynix.

On their face, Topic Nos. 9 and 10 are reasonably calculated to lead to IBM testimony that is relevant to IBM's Software Agreements with AT&T, such as IBM's interpretation of language in its AIX Licenses that parallels language in IBM's Software Agreements with AT&T. SCO reasonably expects, for example, that the evidence of IBM's interpretation of the limitations on its licensees' use of AIX source code and AIX-derived works will contradict

22

IBM's very permissive interpretation of the uses that IBM argues it is permitted to make of UNIX-derived works under its Software Agreements with AT&T.

In response to Topic Nos. 9 and 10, however, IBM objects on the grounds that "it is vague, ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. IBM has produced copies of AIX [and Dynix] source code licenses, and SCO can see for itself the terms contained in those licenses." IBM's Responses and Objections to SCO's Notice of Rule 30(b)(6) Deposition dated November 11, 2005 (Dec. 16, 2005) (Ex.31), at 4-5. But where the AIX and Dynix Licenses themselves are indisputably relevant (IBM admits that it has produced them), it is plainly inconsistent for IBM now to say that its interpretation of those Licenses is not relevant. More fundamentally, it would be relevant for a fact-finder to know that whereas IBM believes it can make virtually unfettered public distribution of UNIX-derivative works under its Software Agreements with AT&T, it believes at the same time that its own licensees cannot make such use of IBM's AIX-derivative works and Dynix-derivative works. Where many of the relevant terms of the Software Agreements and the AIX/Dynix Licenses are the same or very similar, IBM's varying interpretations of the use of UNIX-derived and AIX- and Dynix-derived products would create a great inconsistency for the factfinder to consider in assessing IBM's interpretation of its Software Agreements with AT&T.

D.    Testimony Regarding IBM's Communications with the "Chicago 7"

In its Notice of Rule 30(b)(6) Deposition dated November 11, 2005 (Ex. 30), in Topic No. 17, SCO asks IBM to produce a witness to address: "The communications regarding SCO, Linux, AIX or Dynix among the 'Chicago 7' (comprising Computer Associates International,

23

Inc., Oracle Corporation, Dell, Inc., Intel Corporation, Novell, Inc., IBM, and Hewlett-Packard Company)."

**REDACTED**

In addition, in a November 22 letter copied to counsel for IBM, Dell has <u>acknowledged</u> the existence of a "confidentiality agreement among the entities" in the Chicago 7. Ex. 34.

Notwithstanding the existence of the Chicago 7 and the obvious relevance of IBM's conduct within that group regarding (at least) SCO's tort claims, IBM has said the following in response to Topic No. 17: "IBM objects to this topic on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to admissible evidence. IBM also objects to this topic on the grounds that it does not describe with reasonable particularity the matters on which examination is requested." IBM's Responses and Objections to SCO's Notice of Rule 30(b)(6) Deposition dated November 11, 2005 (Ex. 31). SCO submits that IBM is familiar with the Chicago 7 and could easily have identified someone at IBM (or, for example, Dell) with knowledge of the group, and that the

testimony SCO seeks is reasonably calculated to support that portion of SCO's tort claims in which SCO alleges that IBM's has worked within the industry to harm SCO.

### Conclusion

SCO respectfully requests, for the foregoing reasons, that the Court order IBM to produce the foregoing categories of documents and Rule 30(b)(6) witnesses.

DATED this 29th day of December, 2005.

Respectfully submitted,

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

By

*Counsel for The SCO Group, Inc.*

25

## CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER OBLIGATIONS

SCO counsel has made a good-faith effort to raise for discussion and to reach an agreement with IBM counsel on the matters set forth in this Motion through numerous conversations and the exchange of numerous letters, in many cases going back a number of months. IBM counsel has disagreed with SCO counsel on the merits of SCO's arguments or has declined to accept or follow up on SCO's invitation to discuss the issues, and in some instances counsel have agreed to disagree on the basis of the parties' written responses and objections.

DATED this 29th day of December, 2005.

           Respectfully submitted,

           HATCH, JAMES & DODGE, P.C.
           Brent O. Hatch
           Mark F. James

           BOIES, SCHILLER & FLEXNER LLP
           Robert Silver
           Stuart H. Singer
           Stephen N. Zack
           Edward Normand

           By

           *Counsel for The SCO Group, Inc.*

26

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the

foregoing Plaintiff's Motion to Compel (filed in redacted form) was served by mail on Defendant

International Business Machines Corporation on the 10th day of February, 2006, by U.S. Mail to:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York  10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York  10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004