# EXHIBIT C

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| The SCO Group, Inc. | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| V. | CASE NUMBER[1]: 2:03CV-0294 |
| International Business Machines Corporation | District of Utah |

To: Microsoft Corporation
One Microsoft Way -- Bldg 8
North Office 2211
Redmond, WA 98052-6399

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |
|  | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The testimony will be recorded by the following method(s):
☐ stenographic; ☐ sound; ☒ sound and visual

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Premiere Realtime Reporting and Video<br>1411 Fourth Avenue, Suite 1204<br>Seattle WA, 98101-2216 | March 14, 2006<br>9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Premiere Realtime Reporting and Video<br>1411 Fourth Avenue, Suite 1204<br>Seattle WA, 98101-2216 | March 7, 2006<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for International Business Machines Corporation | February 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David R. Marriott, Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019
(212) 474-1430

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number.

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____   _____
                     DATE                                       SIGNATURE OF SERVER

                                                                _____
                                                                ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(ii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subject a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Topics for 30(b)(6) Deposition of Microsoft Corporation

1. Agreements relating to any UNIX product involving Microsoft and AT&T, USL, Novell, Santa Cruz, or SCO, including but not limited to: (a) the software licensing agreements with AT&T executed by Microsoft on December 1, 1981, August 13, 1986 and May 27, 1988; (b) the sublicensing agreement with AT&T executed by Microsoft on October 9, 1986; (c) the letter agreements with AT&T acknowledged by Microsoft on October 13, 1983, June 13, 1984, January 17, 1985, September 30, 1985, December 10, 1985, August 21, 1986, October 1, 1986, June 26, 1989, January 31, 1990, June 6, 1990, and July 20, 1990; (d) the letter agreement with USL acknowledged by Microsoft on June 16, 1992; (e) any SCOSource license agreement with SCO; and (f) the Release, License and Option Agreement with SCO effective as of April 29, 2003, and amendments thereto.

2. Agreements relating to any Microsoft UNIX product involving Microsoft and AT&T, USL, Novell, Santa Cruz, or SCO.

3. Microsoft's rights and obligations, vis-à-vis AT&T, USL, Novell, Santa Cruz, and SCO, with respect to any Microsoft UNIX product.

4. Royalties paid by Microsoft with respect to any UNIX product.

5. Origin of any UNIX source code publicly disclosed or open sourced by Microsoft.

6. Competition between Microsoft's operating system products and UnixWare and OpenServer, including but not limited to the identity and the qualities and characteristics of the products.

7. Restrictions or prohibitions on Microsoft employees having access to any UNIX product, including, but not limited to, its source code.

8. The antitrust litigation brought against Microsoft by Caldera, Inc. in the United States District Court for the District of Utah.

9. All communications between Microsoft and SCO since June 28, 2002, including but not limited to Darl McBride's May 2003 communication with Steven Ballmer regarding SCO's rights to the UNIX operating system.

10. All agreements involving Microsoft and SCO.

11. The identity of and contact information for all representatives of Microsoft who have had access to and worked with or developed UNIX source code, and the other projects/products on which they have worked.

12. Microsoft's business strategy regarding Linux.

13. All communications or agreements relating to SCO or this litigation, including all communications with Baystar, Royal Bank of Canada, and Everyone's Internet, Ltd.

## ATTACHMENT A TO SUBPOENA TO MICROSOFT CORPORATION

You are instructed to produce the following documents at the time and place specified in the subpoena.

### Documents To Be Produced

1. All documents concerning agreements involving Microsoft and AT&T, USL, Novell, Santa Cruz, or SCO relating to any UNIX product.

2. All documents concerning Microsoft's rights and obligations, vis-à-vis AT&T, USL, Novell, Santa Cruz, and SCO, with respect to any Microsoft UNIX product.

3. All documents concerning royalties paid by Microsoft with respect to any UNIX product.

4. All documents concerning the origin of any UNIX source code publicly disclosed or open sourced by Microsoft.

5. All documents concerning competition between Microsoft's operating system products and UnixWare and OpenServer, including but not limited to the identity and the qualities and characteristics of the products.

6. All documents concerning restrictions or prohibitions on Microsoft employees having access to any UNIX product.

7. All documents concerning the antitrust litigation brought against Microsoft by Caldera, Inc. in the United States District Court for the District of Utah.

8. All documents concerning any communications between Microsoft and SCO since June 28, 2002.

3

9. All documents concerning any agreements involving Microsoft and SCO, including but not limited to Darl McBride's May 2003 communication with Steven Ballmer regarding SCO's rights to the UNIX operating system.

10. All documents concerning the identity of and contact information for all representatives of Microsoft who have had access to and worked with or developed UNIX source code, and the other projects/products on which they have worked.

11. All documents concerning Microsoft's business strategy regarding Linux.

12. All documents concerning communications or agreements relating to SCO or this litigation, including all communications with SCO's employees, shareholders, directors, officers, Baystar, Canopy, Royal Bank of Canada, and/or Everyone's Internet, Ltd..

13. All documents concerning any contracts relating to UNIX or Linux, including but not limited to licenses, licensing agreements, software agreements and sublicensing agreements.

14. All documents concerning communications or agreements relating to SCO or this litigation, including all communications with Baystar, Royal Bank of Canada, and Everyone's Internet, Ltd.

15. A copy of all UNIX materials and all software materials (in electronic form, where available), including but not limited to source code and user manuals, obtained from SCO or any of SCO's predecessors in interest (including AT&T, USL, Novell or Tarantella).

## Definitions and Instructions

The instructions, definitions, and rules contained in the Federal Rules of Civil Procedure, including in particular Rules 30, 33, 34, and 45, and the local rules or individual practices of this Court are incorporated herein by reference and supplemented with the following definitions and instructions:

A.  Definitions

1.  The term "communication" shall mean any transmittal of information, whether oral or written, including correspondence, electronic mail and other internet transmissions, web pages, Internet Relay Chat logs, instant messages, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone or message logs, or notes or memoranda concerning written or oral communications.

2.  The term "Canopy" shall mean and include, collectively and/or individually, The Canopy Group, Inc. and all its directors, officers, authorized agents, employees, consultants, attorneys, representatives, direct and indirect contractors, and/or all other persons acting on behalf of The Canopy Group, Inc.

3.  The term "concerning" shall mean relating to, referring to, reflecting, describing, evidencing, referencing, discussing or constituting.

4.  The term "document" shall be synonymous in meaning and usage with the broadest scope of the term used in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" shall include without limitation all written, phonic, graphic or recorded matter, including without limitation, information stored on computers, disks, tapes (i.e., magnetic or other storage media), World Wide Web pages,

5

electronic mailing lists or automated fax support systems. The term "document" specifically includes electronic mail, electronic correspondence, or electronic peer-to-peer messages ("e-mail") and any attachments and files created and maintained in electronic form in the normal course of business.

5. The term "including" shall mean including without limitation.

6. The term "Linux" shall mean any and all versions, or other variants of any Linux computer operating system, including but not limited to any Linux kernel and/or GNU tools suite.

7. The term "Microsoft" shall mean and include, collectively and/or individually, Microsoft Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, representatives, direct and indirect contractors, and/or all other persons acting on behalf of Microsoft Corporation.

8. The term "person" shall mean any natural person or any private or public entity.

9. The term "Santa Cruz" shall mean and include, collectively and/or individually, The Santa Cruz Operation, Inc. and all its directors, officers, authorized agents, employees, consultants, attorneys, representatives, direct and indirect contractors, entities that were acquired by or merged with The Santa Cruz Operation, Inc., and/or all other persons acting on behalf of The Santa Cruz Operation, Inc.

10. The term "SCO" shall mean and include, collectively and/or individually, plaintiff Caldera Systems, Inc., Caldera International, Inc., or The SCO Group, Inc., and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were in part

or in whole acquired by or merged with Caldera Systems, Inc., Caldera International, Inc., or The SCO Group, Inc., affiliates, subsidiaries or predecessor companies of Caldera Systems, Inc., Caldera International, Inc., or The SCO Group, Inc., and/or all other persons acting on behalf of Caldera Systems, Inc., Caldera International, Inc., or The SCO Group, Inc. This includes the Server Software and Professional Services divisions acquired in 2001 by Caldera International, Inc. from Tarantella, Inc., f/k/a The Santa Cruz Operation, Inc.

11. The term "source code" shall mean the human-readable form of a computer program written in the original and preferred form for human inspection and modification, and includes but is not limited to source code listings; compiler and/or assembler output listings for such source code; source code listings for macros or "includes" (both executable and mapping) listings used in such source code; job control language files; and/or other files required to create an executable version of a program, including but not limited to user interface components; panels; screen definitions and help text; and c-lists.

12. The term "UNIX" shall mean all predecessors to, and versions of, the UNIX System V computer operating system, including but not limited to: UNIX System III; UNIX System IV; UNIX System V; UNIX System V Release 2; UNIX System V Release 3; UNIX System V Release 4; UNIX System V/286; and/or UNIX System V/386.

13. The term "AT&T" shall mean and include, collectively and/or individually, AT&T Corporation and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors,

7

entities that were acquired by or merged with AT&T, subsidiaries of AT&T, including but not limited to AT&T Technologies, Inc., and/or all other persons acting on behalf of AT&T.

14. The term "Baystar" shall mean and include, collectively and/or individually, Baystar Capital and all its directors, officers, authorized agents, employees, consultants, attorneys, representatives, direct and indirect contractors, and/or all other persons acting on behalf of Baystar Capital.

15. The term "USL" shall mean and include, collectively and/or individually, UNIX Systems Laboratories, Inc. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were acquired by or merged with USL, subsidiaries of USL, and/or all other persons acting on behalf of USL.

16. The term "Novell" shall mean and include, collectively and/or individually, Novell, Inc. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were acquired by or merged with Novell, subsidiaries of Novell, and/or all other persons acting on behalf of Novell.

17. The term "Tarantella" shall mean and include, collectively and/or individually, Tarantella, Inc. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were acquired by or merged with Tarantella, subsidiaries of Tarantella, and/or all other persons acting on behalf of Tarantella.

18. The term "Royal Bank of Canada" shall mean and include, collectively and/or individually, Royal Bank of Canada and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were acquired by or merged with Royal Bank of Canada, subsidiaries of Royal Bank of Canada, and/or all other persons acting on behalf of Royal Bank of Canada.

19. The term "Everyone's Internet, Ltd." shall mean and include, collectively and/or individually, Everyone's Internet, Ltd. and all its directors, officers, authorized agents, employees, consultants, attorneys, sales representatives, direct and indirect contractors, entities that were acquired by or merged with Everyone's Internet, Ltd., subsidiaries of Everyone's Internet, Ltd., and/or all other persons acting on behalf of Everyone's Internet, Ltd.

B. Instructions

1. Each paragraph should herein be construed independently and, unless otherwise directed, without reference to any other paragraph for the purpose of limitation.

2. The use of any definition for the purposes of this request shall not be deemed to constitute an agreement or acknowledgment on the part of IBM that such definition is accurate, meaningful or appropriate for any other purpose in this action.

3. Each requested document shall be produced in its entirety. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

9

4.  Each page or sheet produced is to be marked with a consecutive document control number.

5.  All documents produced in response to this subpoena shall be produced in the same order as they are kept or maintained in the ordinary course of business and, where attached, shall not be separated or disassembled.

6.  All documents produced in response to this subpoena shall be produced, where available, in electronic or machine-readable form.

7.  With respect to any document responsive to this subpoena that is withheld from production based upon a claim of privilege, please provide the information required pursuant to Rules 26(b)(5) and 45(d)(2) of the Federal Rules of Civil Procedure.

8.  If, for reasons other than a claim of privilege, you refuse to produce any document subpoenaed herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

9.  If there are no documents responsive to any paragraph or subparagraph set forth in the subpoena, please provide a written response so stating.