SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> -against- <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO LIMIT SCO'S CLAIMS RELATING TO ALLEGEDLY MISUSED MATERIAL** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

391394.1

IBM respectfully submits this reply memorandum in further support of its motion to limit the scope of SCO's claims to the items of allegedly misused material disclosed with specificity in SCO's December 22, 2005 Disclosure of Material Allegedly Misused by IBM (the "Final Disclosures").

**Preliminary Statement**

SCO asserts that it has complied with the Court's orders and provided IBM with all of the specificity required by its discovery requests. SCO is wrong. With respect to the 198 Items that remain in dispute,[1] the Final Disclosures come nowhere close to providing IBM the specificity ordered by the Court and necessary for IBM fully to defend itself. IBM's motion should therefore be granted.

Following SCO's public pronouncements about the strength of its case, the Court directed SCO (in no less than three separate orders) to particularize its claims. The Court ordered SCO unequivocally to disclose the specific lines of System V, AIX, Dynix and Linux implicated by its claims. SCO makes false pretensions of compliance but comes nowhere close with respect to the 198 Items at issue. SCO fails specifically to identify a single line of System V, AIX or Dynix material with respect to any of the 198 Items; it specifically identifies lines of Linux code with respect to only one of the Items. These failings not only violate this Court's orders, but they also make it impossible for IBM properly to defend itself. As is further discussed below, SCO's claims should be limited to the 92 Items not challenged here or abandoned by SCO.

---

[1] IBM's motion sought initially to limit SCO's claims to 201 of the 294 Items identified in the Final Disclosures. SCO abandoned one of the Items (No. 294) and clarified that another (No. 204) does not allege any misconduct by IBM. IBM's motion included one Item inadvertently (No. 2). Thus, only 198 Items remain in dispute.

## I. THE COURT HAS REPEATEDLY ORDERED SCO TO DISCLOSE THE ALLEGEDLY MISUSED MATERIAL WITH SPECIFICITY.

SCO does not dispute that IBM has requested repeatedly (since the beginning of this case) that SCO identify the allegedly misused material with specificity. Nor does SCO dispute that the Court has ordered it to do so no less than three times. In fact, SCO's opposition papers are conspicuously silent as to either IBM's discovery requests or the language of the Court's orders. A detailed timeline, showing IBM's repeated requests, the Court's repeated orders, and SCO's repeated failures to identify the allegedly misused material with specificity, is attached as Addendum A.

IBM has repeatedly asked SCO specifically to identify (by version, file and line) the source code(s) that form the basis of its case. Nearly 2-1/2 years ago, on December 12, 2003, the Court ordered SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM". (12/12/2003 Order ¶ 4.) More than 2 years ago, the Court again ordered SCO "to provide and identify all specific <u>lines</u> of code that IBM is alleged to have contributed to Linux from either AIX or Dynix" and "to provide and identify all specific <u>lines</u> of code from Unix V for which IBM's contributions from AIX or Dynix are alleged to be derived". (03/03/2004 Order ¶ I.1 - I.3 (emphasis added).) In an order dated July 1, 2005, the Court adopted (over SCO's objection) an IBM proposal to set interim and final deadlines for the disclosure of all allegedly misused material. The Court set October 28, 2005 as the "Interim Deadline", and December 22, 2005 as the "Final Deadline" for the parties to

3

"Disclose with Specificity All Allegedly Misused Material Identified to Date" and to update their interrogatory responses accordingly. (07/01/2005 Order ¶ III.)[2]

## II. THE FINAL DISCLOSURES LACK THE REQUISITE SPECIFICITY.

SCO asserts that its Final Disclosures properly disclose the 198 Items of allegedly misused material at issue. That assertion is baseless.

As is described in the Declaration of Professor Randall Davis (submitted herewith) and summarized in Addendum B hereto, SCO fails to provide the requisite specificity regarding the 198 Items.[3] SCO does not provide a complete set of reference points (version, file and line) for any of the 198 Items. Astonishingly, SCO fails specifically to identify a single line of System V, AIX or Dynix, and Linux code for any of the 198 Items. SCO does not identify specific System V, AIX, or Dynix version(s) or file(s) with respect to more than a few of the Items. Even specific versions and files of Linux are omitted with respect to many of the Items. SCO does not -- and cannot -- dispute these facts.

To create the false impression that is has provided information that it has not provided, SCO tells the Court that it has provided "color-coded illustrations", "line-by-line source code comparisons" and "over 45,000 pages of supporting materials". What SCO fails to mention is that 33,000 of those pages concern Item 294, which SCO abandons in its opposition brief. Moreover, while the Final Disclosures include color-

---

[2] While the Court's orders expressly refer only to "lines" of code, they plainly require the identification of the versions and files. A line reference is meaningless absent disclosure of the version and file in which it is found.

[3] As stated in IBM's opening brief, SCO declined to provide all of its disclosures in an easily searchable, electronic format, complicating IBM's analysis of them. Addendum B corrects and refines the statement of SCO's shortcomings included in IBM's opening papers.

4

coded illustrations and line-by-line source comparisons, they do <u>not</u> do so with regard to any of the 198 Items at issue, which are utterly lacking in the requisite particularity. In other words, SCO refers the Court to Items that are <u>not</u> challenged to try and defend those that <u>are</u>.

Elsewhere SCO contends that it has given IBM enough information to identify the alleged contributions for itself. According to SCO, "IBM has ready access to the engineers who made the disputed disclosures to assist in identifying the nature of its contribution, whether it originated independently from protected material, how it is used, and whether it was in fact disclosed to the Linux community. (For developers no longer employed by IBM, depositions serve this purpose.)". (Opp'n at 8.) SCO previously made exactly this same argument (<u>see</u> SCO's Mem. in Opp. to IBM's Mot. to Compel (10/23/2003) at 5), and the Court expressly (and properly) rejected it (12/12/2003 Order ¶ 4). And this occurred even before SCO insisted that IBM produce its CMVC database. As the Court will recall, SCO moved to compel the production of CMVC on the grounds that it would enable SCO to identify precisely the allegedly improper contributions at issue in this case. (SCO's Mem. Regarding Discovery (05/28/2004) at 12-16.)[4] Since IBM has now produced CMVC, and hundreds of millions of lines of source code for the purported purpose of allowing SCO to provide the detailed disclosures ordered by the

---

[4] It is worth noting that SCO, having obtained CMVC at enormous expense to IBM and after a significant investment of time by the Court, appears not to have even used it to prepare its Final Disclosures.

391394.1

Court, SCO cannot reasonably insist (once again) that IBM identify the information for itself.[5]

Despite its generalized protestations of compliance, it is indisputable that SCO has not complied with the Court's orders. The Final Disclosures themselves, which SCO plainly does not expect the Court will review, demonstrate the inadequacy of the 198 Items at issue.

## III.   THE SHORTCOMINGS OF THE 198 ITEMS MAKE IT IMPOSSIBLE FOR IBM PROPERLY TO DEFEND ITSELF.

As stated in IBM's opening brief, SCO contends generally that IBM misused Unix System V material (which SCO purports to own) and the AIX and Dynix material (which IBM owns, but SCO purports to control). According to SCO, IBM improperly "dumped" Unix System V, AIX and Dynix material into Linux. While the Final Disclosures add color to SCO's allegations, they fail miserably (as stated), to identify with specificity the versions, files and lines of System V, AIX, Dynix and Linux material that IBM is alleged to have misused. Without that information it is, as a practical matter, impossible to evaluate SCO's claims.

SCO's failure to specify its claims puts on IBM the impossible burden of looking for undefined needles in an enormous haystack. As illustrated in Exhibit 1 to the Declaration of Todd M. Shaughnessy, filed herewith, there are at least 11 versions, 112,622 files and 23,802,817 lines of System V code potentially implicated by SCO's claims. There are at least 9 versions, 1,079,986 files and 1,216,698,259 lines of AIX

---

[5] In its opposition papers, SCO misrepresents a number of facts (e.g., claiming IBM improperly destroyed documents (see Opp'n at 4)). We do not dwell on these assertions here, except to state that they are baseless, and, in any event, have no bearing on this motion.

6

code potentially implicated by SCO's claims. There are at least 37 versions of the base operating system, and 472,176 files and 156,757,842 lines of Dynix code potentially implicated by SCO's claims. And there are at least 597 versions, 3,485,859 files and 1,394,381,543 lines of Linux code potentially implicated to SCO's claims. SCO points IBM to a haystack comprised literally of billions of lines of code.[6]

The size of the haystack, however, is only part of the problem. Given enough time, IBM could probably search the haystack for the allegedly misused material, although we note that when it suited SCO's purpose, it represented to the Court that it would take 25,000 man years to compare just one version of Linux to one version of Unix (a total of just 4,000,000 lines of code; a mere .2% of the haystack to which SCO now points IBM). The real problem with the Final Disclosures is that SCO fails adequately to describe the needles it is sending IBM to find. As a result, the needles look just like hay.

Rather than define the 198 items at issue (which can only properly be done by providing version, file and line information), SCO describes them in general and imprecise terms, suggesting that either SCO does not itself know what it claims, or wishes, for tactical reasons, to hide its claims from IBM.[7] For example, Item 146, one of SCO's more precise items (compare Item 10) faults IBM for "Use of Dynix/ptx for Linux

---

[6] The fact that IBM's motion is directed to only 198 of the Items is not an indication that SCO has properly disclosed the remaining Items. It has not, as stated in IBM's opening brief. This motion is directed only to 198 of the Items because SCO's disclosures as to those Items are utterly lacking in the required detail. IBM proposes to deal with the items not dealt with here on summary judgment.

[7] As the Court may recall, SCO's counsel was quoted early in the case as saying that it did not want IBM to know what SCO's claims are. (See Exhibit 31 to the Declaration of Todd M. Shaughnessy, dated May 18, 2004.) Obviously, IBM cannot debunk propositions SCO declines to disclose.

7

development", refers to an e-mail concerning "performance and profiling" and lists 11 Linux files without any mention of the version(s) of Linux for which they are supposed to come. That information reveals nothing meaningful about what IBM is supposed to have done. SCO does not say where such "profiling" was done in System V or Dynix or even where specifically it is allegedly done in Linux.

As SCO well knows, its failure to provide specific coordinates for all of the allegedly misused material makes it impossible for IBM to conduct the kind of investigation that is necessary for IBM fully to defend itself. SCO does not dispute that its causes of action require inquiry into the origin of the code and concepts (which are, of course, embodied in code), the value of the code, whether SCO distributed the code under the GPL, whether it was developed to comply with publicly known standards, whether the code is dictated by externalities, whether the code is merely an unprotectable idea, whether the code ever shipped without a required copyright notice and whether the code is otherwise in the public domain.[8] (SCO Opp'n at 8.) The only way to answer these questions is on a line by line basis. That cannot be done without knowing the versions, files and lines, of the allegedly misused material.

By failing to provide adequate reference points, SCO has left IBM no way fully to evaluate its claims without surveying the entire universe of potentially relevant code and

---

[8] The answers to these questions matter because SCO has no rights with respect to code that did not derive from System V, and it cannot protect as confidential code that is in the public domain by no fault of IBM's. Further, SCO cannot assert copyright interests with respect to mere ideas, code that can only be expressed in a few ways, code that is in the public domain, and code that is dictated by externalities such as computer programming practices. See The Gates Rubber Co. v. Bando Chemical Ind., Ltd., 9 F.3d 823, 833-38 (10th Cir. 1993); Computer Assocs., Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701-04 (2d Cir. 1992).

391394.1

guessing. Since only SCO knows what its claims are, requiring such an exercise of IBM would be as senseless and unfair as it would be herculean.

### IV. THE ONLY APPROPRIATE REMEDY IS TO LIMIT SCO'S CLAIMS.

SCO urges the Court to defer consideration of its disclosures until the summary judgment phase of the case. We respectfully submit that there is no basis for such delay, which would merely serve SCO's strategic purposes and result in prejudice to IBM.

As discussed above, SCO has failed to provide IBM and its experts the most basic information needed for IBM to evaluate SCO's claims and prepare its defense. With respect to the 198 Items at issue, SCO has declined, as a practical matter, to tell IBM what is in dispute. As a result, IBM is prejudiced in its ability to prepare its defense.[9] As SCO well knows, without the information IBM has requested -- which is known only to SCO -- IBM's experts are unable properly to prepare their expert reports (which are due beginning on May 12, 2006), and IBM is unable properly to prepare summary judgment papers. Thus, deferring consideration of SCO's compliance to the summary judgment phase of the case would merely compound the problems caused by SCO's noncompliance with the Court's orders and afford SCO a considerable, unfair, tactical advantage.

We believe, respectfully, that SCO's failure to specify the 198 Items amounts to bad faith. However, willfulness alone is sufficient to justify the relief IBM seeks. See, e.g., Kern River Gas Transmission Co. v. 6.17 Acres Of Land, No. 04-4033, 2005 WL 3257509, at *3-4 (10th Cir. Dec. 2, 2005) (slip copy) (Addendum C); In re Standard

---

[9] SCO suggests that IBM's real concern is that it has no defense to SCO's allegations and is thus seeking simply to foreclose consideration of them on the merits. (Opp'n at 8.) That is incorrect. While we believe all of SCO's allegations lack merit, this motion is not about the merits. It is about whether SCO complied with IBM's discovery requests and the Court's orders.

9

Metals Corp., 817 F.2d 625, 628-29 (10th Cir. 1987).[10] It is beyond reasonable debate that SCO acted willfully in not specifying its claims. The Court made perfectly clear what SCO was required to do (in three separate orders). Not once did SCO seek clarification. SCO could have provided the missing information. Indeed, only SCO can provide it. As stated, SCO failed to do so.

Absent the information SCO was required to provide but has not provided, it would take IBM and its experts years to chase all of the facts relating to the generalities SCO has provided regarding the 198 Items. As stated, SCO represented to the Court that it would take 25,000 man-hours to compare just one version of Linux to one version of Unix System V. The 198 Items at issue implicate many, many times as much code. By SCO's mathematics, it would require IBM many more than years of study to understand and evaluate the 198 Items at issue. Even then, the best IBM could do is guess as to the particulars of SCO's claims (which have not fully been stated). Without the information SCO has withheld, how is IBM to evaluate whether it disclosed a certain Item? How is IBM to know whether the Item made it into Linux? How is IBM to know to what extent Linux implements the Item? How is IBM supposed to determine whether there are substitutes for the Item, or whether it could be replaced if withdrawn from Linux? How is IBM accurately to value the Item? This is only a partial list of the questions that are

---

[10] SCO does not dispute that willfulness is sufficient to justify the relief IBM seeks. (Opp'n at 4.) SCO's own cases say as much. See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991) (stating that "[s]evere sanctions are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." (emphasis added)). None of them is to the contrary. State of Ohio v. Arthur Andersen & Co., 570 F.2d 1370, 1374-75 (10th Cir. 1978), merely demonstrates that preclusionary sanctions may be granted where there is bad faith, not that it is required. In re Westinghouse Electric Corporation Uranium Contracts Litigation, 563 F.2d 992, 994 (10th Cir. 1977), is inapposite as it involves a contempt proceeding under Fed. R. Civ. P. 45 for failure to comply with a subpoena.

391394.1

very difficult, if not impossible, to answer, in view of SCO's failure to comply with the Court's orders.

SCO seeks to distinguish the cases on which IBM relies in its opening brief, <u>Imax Corp. v. Cinema Technologies, Inc.</u>, 152 F.3d 1161 (9th Cir. 1998), and <u>Kang v. Lee</u>, No. 96 Civ. 145, 1997 WL 669787 (S.D.N.Y. Oct. 27, 1997) (Addendum C), on the grounds that they are summary judgment cases. It is not the posture of those cases that matters here, however, but the fact that they limited the parties' claims for failure to disclose them.[11] And once again, SCO's argument is directly contrary to positions it has taken earlier in the case (when it thought it was in its interest to do so). In support of its motion to compel IBM to produce certain financial information, SCO argued IBM should not be allowed to use at summary judgment information not provided during discovery. For reasons equally applicable here, the Court stated:

> Obviously what I don't want is either side to use information that has been withheld in support of a summary judgment motion in support of their case at trial, all evidence need[s] to be on the table for the other party to analyze and take a look at.

(2/24/06 Tr. at 50.) Deferring the resolution of this motion would simply require IBM to proceed to the summary judgment phase of the case without knowing what is on the table.

Contrary to SCO's suggestion, there is ample authority for this Court to limit SCO's claims. <u>See, e.g.</u>, <u>Kern River</u>, 2005 WL 3257509, at *2-4 (affirming district

---

[11] Even if there were a reason to defer (to the summary judgment phase) consideration of the relief appropriate to address SCO's failure to comply with the Court's order -- and we do not believe there is -- there is plainly no reason to defer consideration of the question whether SCO provided the information requested by IBM and ordered by the Court, which it indisputably did not. This Court is in the best position to make that determination.

11

391394.1

court's decision "preclud[ing], pursuant to Rule 37, [defendant] from introducing at the trial any expert evidence or documents not produced during discovery" where defendant's failure "prejudiced [plaintiff] in its ability to conduct discovery, prepare for trial and cross-examine [defendant's] witnesses") (Addendum C); Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 274 (S.D.N.Y. 2003) (Ellis, M.J.) ("preclud[ing] [defendants] from introducing evidence on the question of damages" because the defendants' failure "to provide relevant data [has impaired] plaintiffs' ability to present their case").[12] Contrary to SCO's suggestion, this Court is empowered to protect the integrity of its Orders (with which the Final Disclosures plainly do not comply) and to limit the prejudice caused by SCO's failure to specify its claims.

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter an order precluding SCO from pursuing the 198 items not properly disclosed in SCO's Final Disclosures.

---

[12] See also Tenen v. Winter, 15 F. Supp. 2d 270, 272-73 (W.D.N.Y. 1998) (affirming magistrate's order "that the defendants [be] precluded from presenting any evidence at trial of the alleged defamation by plaintiffs" where "the defendants [sic] had failed to provide discovery concerning interrogatories he was court ordered to answer on the subject of his allegation that the plaintiffs made defamatory statements"); Pentalpha Macau Commercial Offshore Ltd. v. Reddy, No. C03-5914, 2005 WL 2989273, at *2-4 (N.D. Cal. Nov. 3, 2005) (affirming magistrate judge's order "that [defendant] shall not to use as evidence at trial, at a hearing, or on a motion, any . . . information that [defendant] did not disclose . . . in his original interrogatory responses" where defendant's interrogatory "responses were inadequate and vague") (Addendum C); King-Hardy v. Bloomfield Bd. of Educ., No. Civ.3:01CV979, 2002 WL 32506294, at *4 (D. Conn. Dec. 8, 2002) ("preclud[ing] [plaintiff] from introducing documents that could be considered responsive to [defendant's] requests at trial" because plaintiff's "[f]ailure to produce documents . . .[was] a violation of the pretrial order") (Addendum C).

12

DATED this 4th day of April, 2006

            SNELL & WILMER L.L.P.

            /s/Todd M. Shaughnessy
            Alan L. Sullivan
            Todd M. Shaughnessy
            Amy F. Sorenson

            CRAVATH, SWAINE & MOORE LLP
            Evan R. Chesler
            David R. Marriott

            *Attorneys for Defendant/Counterclaim-Plaintiff*
            *International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Jennifer M. Daniels
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

      *Attorneys for Defendant/Counterclaim-Plaintiff*
      *International Business Machines Corporation*

391394.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2006, a true and correct copy of the foregoing was sent by U.S. Mail, postage prepaid, to the following:

    Brent O. Hatch
    Mark F. James
    HATCH, JAMES & DODGE, P.C.
    10 West Broadway, Suite 400
    Salt Lake City, Utah 84101

    Stephen N. Zack
    Mark J. Heise
    BOIES, SCHILLER & FLEXNER LLP
    100 Southeast Second Street, Suite 2800
    Miami, Florida 33131

    Robert Silver
    Edward Normand
    BOIES, SCHILLER & FLEXNER LLP
    333 Main Street
    Armonk, New York 10504

                                              /s/Todd M. Shaughnessy

391394.1