# ADDENDUM C



156 Fed.Appx. 96     Page 1

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

C

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
KERN RIVER GAS TRANSMISSION
COMPANY, a Texas general partnership, Plaintiff-
Appellee,
v.
6.17 ACRES OF LAND, MORE OR LESS, IN
SALT LAKE COUNTY, UTAH, Known as Kern
River Tracts 186.01W, 186.06W, 186.07W and
187AW; NU Team, a Utah
corporation; Founders Title, a Utah corporation
and trustee named in a trust
deed of record; Caroline Stayman Edler, a
beneficiary named in a trust
deed of record; Monte C. Nelson, beneficiary, by
assignment, of a trust deed
of record, trustee of the Monte Cannon Nelson
Trust; David M. Nelson,
beneficiary, by assignment, of a trust deed of
record; Meridian Title, a Utah
corporation and trustee named in five trust deeds of
record; City Properties,
a Utah limited liability company and beneficiary
named in a trust deed of
record; Gaius Crosby and Susan Crosby Charitable
Unitrust, a beneficiary named
under a single trust deed of record; Kenbar Family
Partnership Larsen, a
beneficiary named under a single trust deed of
record; W. Bart Christenson, a
beneficiary named under a single trust deed of

record; Barbara Christenson, a
beneficiary named under a single trust deed of
record; Katheryn Hoopes Paxman,
a beneficiary named under a single trust deed of
record; Oak Leaf Investments,
a Utah limited liability company and a Beneficiary
by assignment of a trust
deed of record; Steffenson Law Office; Brian W.
Steffenson; C.A.T., LLC, a
Utah limited liability corporation; JMS Financial, a
Utah limited liability
corporation; JS West Associates, a Utah
corporation; Watson Family, a Utah
limited liability corporation; Wyoming-California
Pipeline Company, a Colorado
general partnership and holder of an easement of
record, Defendants,
and
JMS-Meadow, a Utah limited liability company,
Defendant-Appellant.
**No. 04-4033.**

Dec. 2, 2005.

**Background:** Gas utility brought action under the Natural Gas Act against numerous property owners, seeking to condemn certain property for an interstate natural gas pipeline. The United States District Court for the District of Utah excluded a property owner from presenting expert testimony, expert's report, or other documents at bench trial and refusing to reopen trial to take additional testimony. Property owner appealed.

**Holdings:** The Court of Appeals, Ebel, Circuit Judge, held that:
(1) District Court was within its discretion in sanctioning property owner for failing to voluntarily produce documents;
(2) District Court did not abuse its discretion in refusing to permit property owner to present expert evidence at bench trial; and
(3) District Court was within its discretion in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96                                                                                    Page 2

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

denying property owner's motion seeking relief for fraud upon the court.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure ⟜1636.1**
170Ak1636.1 Most Cited Cases
District Court was within its discretion in sanctioning property owner for failing to voluntarily produce documents in gas utility's action to condemn certain property for an interstate natural gas pipeline, although rule requiring a party to provide initial disclosures "without awaiting a discovery request" did not require property owner to produce documents sought, where utility made informal requests for the documents, and property owner did not show that its violation of voluntary disclosure rule was either justified or harmless. Fed.Rules Civ.Proc.Rule 26(a)(1)(B), 28 U.S.C.A.

**[2] Federal Civil Procedure ⟜1278**
170Ak1278 Most Cited Cases
District Court did not abuse its discretion in refusing to permit property owner to present expert evidence at bench trial in gas utility's action to condemn certain property for an interstate natural gas pipeline, as sanction for property owner's failure to present a complete expert report, where property owner failed to show that its violation of rule governing disclosure of expert testimony was justified or harmless, and excluding the evidence properly avoided prejudice to utility, since permitting property owner to present the evidence at trial despite failing to disclose expert report would have inhibited utility's ability to prepare for trial. Fed.Rules Civ.Proc.Rule 26(a)(2), 28 U.S.C.A.

**[3] Federal Civil Procedure ⟜2654**
170Ak2654 Most Cited Cases
District Court was within its discretion in denying property owner's motion seeking relief for fraud upon the court, in gas utility's action to condemn certain property for an interstate natural gas pipeline, absent evidence that gas utility, even if it made a misrepresentation to the court, had an intent to defraud.

*98 Stephen Kent Christiansen, Bradley M. Strassberg, Van Cott, Bagley, Cornwall & McCarthy, Martha Jean Amundsen, Kern River Gas Transmission Company, Salt Lake City, UT, for Plaintiff-Appellee.

Brian W. Steffensen, Steffensen Law Office, Salt Lake City, UT, for Defendants.

Before EBEL, HARTZ, and McCONNELL, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

EBEL, Circuit Judge.

**\*\*1** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Kern River Gas Transmission Co. filed an action under the Natural Gas Act, 15 U.S.C. § 717f(h), to condemn certain property in Utah, including property owned by defendant JMS-Meadow, for an interstate natural gas pipeline. The district court granted immediate occupancy of the JMS-Meadow property to Kern River, and later held a bench trial to determine the value of the easement. JMS-Meadow appeals the district court's decisions excluding it from presenting expert testimony, the expert's report, or other documents at the bench trial and refusing to reopen the trial to take additional testimony. We affirm. [FN1]

FN1. At this court's request, the parties briefed whether this court has jurisdiction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

to consider this appeal. In their memoranda briefs, the parties agree that this court now has jurisdiction pursuant to 28 U.S.C. § 1291. Although the case was not final at the time of appeal, the district court later entered a proper final judgment under Fed.R.Civ.P. 54(b). *See Stockman's Water Co., LLC v. Vaca Partners, L.P.,* 425 F.3d 1263, 1264 (10th Cir.2005) (describing requirements for Rule 54(b) certification). The notice of appeal therefore ripened on the date of the Rule 54(b) certification, thereby permitting us to accept jurisdiction pursuant to the savings provision of Fed. R.App. P. 4(a)(2). *See United States v. Brown,* 348 F.3d 1200, 1206 (10th Cir.2003).

The relevant facts are largely undisputed. The parties scheduled a Fed.R.Civ.P. 26(f) attorney's planning meeting on November 18, 2002. When JMS-Meadow did not send a representative, Kern River *99 postponed the meeting and allowed JMS-Meadow to participate by telephone. After the parties set dates at the meeting, Kern River agreed, at JMS-Meadow's request, to adjust those dates back one month. On January 22, 2003, Kern River filed the Attorneys' Planning Meeting Report with the district court, explaining that JMS-Meadow failed to sign the report despite Kern River making several requests for it to do so. The report stated that the parties would make initial disclosures by February 3, submit expert reports by February 28, and complete discovery by May 30.

JMS-Meadow failed to meet the Fed.R.Civ.P. 26(a) initial disclosures date of February 3. It ignored Kern River's later requests for initial disclosures. JMS-Meadow still had not met the initial disclosures requirements by February 26, the date of the initial pretrial conference. At that conference, the magistrate judge extended the time for JMS-Meadow to provide its initial disclosures to March 31. The magistrate judge also ordered disclosure of JMS-Meadow's expert reports by April 30, a date two months beyond the time agreed by the parties. The magistrate judge left May 30 as the discovery cut-off date and set August 7 as the

trial date.

JMS-Meadow did not provide initial disclosures by the new date of March 31. Nor did it request an extension of time to do so. In response to an April 10 request by Kern River for initial disclosures, JMS-Meadow, on April 16, sent an initial disclosures pleading with no documents attached. On April 22, Kern River requested the documents referred to in the initial disclosures, but JMS-Meadow did not produce them.

Although the magistrate judge had ordered disclosure of the expert reports by April 30, JMS-Meadow again failed to comply. On May 12, Kern River agreed to allow JMS-Meadow until May 16 to provide its initial disclosures documents and its expert report. But Kern River clarified that in light of the May 30 discovery deadline, it would not agree to any further extensions and would seek to exclude any evidence not produced by May 16. It noted that the discovery cut-off date was three weeks away, and JMS-Meadow's actions were to the point of prejudicing Kern River. On May 16, JMS-Meadow provided Kern River a letter from its appraiser, William Lifferth, indicating that he had done a "preliminary investigation," but not an appraisal or report. Aplt.App., Vol. I at 184 O2, 184 O4. JMS-Meadow also provided a letter from Scott Turville, the manager of JMS-Meadow, criticizing Kern River's expert report.

**2 On May 28, Kern River sent notice to JMS-Meadow that it would take depositions on May 30, the last day of the discovery period, of JMS-Meadow's designated fact witnesses, Mr. Turville and Hal Rosen, its accountant, and of its expert, Mr. Lifferth. JMS-Meadow sought an extension of time from Kern River, which was denied. JMS-Meadow then failed to produce these persons for deposition. On the May 30 ending date for discovery, Kern River filed, pursuant to Fed.R.Civ.P. 37, a motion to exclude JMS-Meadow's evidence at trial or to compel and for sanctions, arguing that no documents had been produced during discovery as required by Rule 26(a)(1)(B) and (C), JMS-Meadow's witnesses had not appeared for depositions, JMS-Meadow did not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96                                                                                                      Page 4

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

provide an expert report complying with Rule 26(a)(2), the discovery period had ended, and the trial date was two months away. JMS-Meadow countered with a motion for protective order asserting that it had not received sufficient time before the depositions were to be taken, and Kern River *100 refused to permit an extension. JMS-Meadow, for the first time in its reply in support of its motion for protective order, indicated that Mr. Turville, who allegedly was the only person who could act on JMS-Meadow's behalf, was dealing with family and personal health issues.

The magistrate judge granted Kern River's motion and denied JMS-Meadow's motion. The magistrate judge ordered JMS-Meadow to produce its two fact witnesses for deposition and precluded, pursuant to Rule 37, JMS-Meadow from introducing at the trial any expert evidence or documents not produced during discovery. The magistrate judge found that JMS-Meadow had failed to comply with Rule 26(a) despite the scheduling order and receiving numerous extensions and that Kern River would be prejudiced by further delay.

JMS-Meadow appealed to the district court arguing that Rule 26(a)(1)(B) only requires identification and not production of documents; Kern River did not make a Fed.R.Civ.P. 34 document request; there was no Rule 26(a) failure to produce documents; even if there had been a Rule 26(a) violation, there was no prejudice to Kern River; JMS-Meadow should have been given an opportunity to cure; there was still time to cure; JMS-Meadow did not act in bad faith; and Mr. Lifferth's report was only technically deficient. The district court upheld the magistrate judge's order.

Thereafter, the district court held a bench trial on the issue of just compensation for the land taking. The evidence showed that based on Kern River's easement, JMS-Meadow would lose 67 townhouse units from the total 465 housing units that West Valley City, Utah had approved for JMS-Meadow's townhouse and condominium development. Gary Free, Kern River's expert witness, testified that any alterations to the approved plan would require another approval by West Valley City, but that

Steve Pastorik of the city planning department had told Mr. Free that any revision would be done administratively and would not require a public hearing process. Aplt.App., Vol. II at 558, 565 (trial testimony); Aplee App. at 220 (expert report). Mr. Turville countered by testifying about the difficulty of reconfiguring all 67 units and in receiving approval from West Valley City for any changes. He specifically denied that it would be possible to obtain approval administratively. The district court, however, recognized that because neither side presented a city witness specifically addressing the reconfiguration issue, all testimony was speculative.

**3 After the trial, JMS-Meadow filed a motion to reopen to present testimony specifically relating to Mr. Free's testimony about West Valley City's approval process and Mr. Pastorik. JMS-Meadow contended that if Mr. Pastorik could testify he would contradict Mr. Free's trial testimony. In a supporting declaration, Mr. Pastorik stated that he did not remember any details of a conversation he may have had with Mr. Free or someone in his office about the JMS-Meadow property and that, if he did have such a conversation, he never would have said it would be easy to reconfigure the plat or possible to do so administratively without a public hearing.

The district court entered findings of fact and conclusions of law adopting Mr. Free's appraisal and awarded compensation of $436,000. The district court also denied the motion to reopen, recognizing that (1) it was tardy; (2) JMS-Meadow failed throughout the litigation to meet court-ordered deadlines; and (3) JMS-Meadow failed to justify its request that additional evidence be received at such a late date. JMS-Meadow appealed.

*101 ANALYSIS
*I. Production of Documents*

JMS-Meadow argues the district court abused its discretion in sanctioning it pursuant to Rule 37 for failing to voluntarily produce documents. According to JMS-Meadow, Rule 26(a)(1)(B) did

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

not require it to produce documents; that rule only required it to describe and identify the documents. Also, JMS-Meadow argues that Kern River did not request production of the documents pursuant to Rule 34, as Kern River allegedly was required to do after JMS-Meadow had described the documents.

Rule 26(a)(1) requires a party to provide initial disclosures "without awaiting a discovery request" of
> (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims and defenses, unless solely for impeachment;
> (C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." The district court has discretion both to impose sanctions for discovery abuses under Rule 37 and to decide whether any Rule 26(a) violation was justified or harmless. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 992-93 (10th Cir.1999); *Orjias v. Stevenson,* 31 F.3d 995, 1005 (10th Cir.1994). In reviewing for an abuse of discretion, "we examine the totality of the circumstances involved in the case." *Olcott v. Del. Flood Co.,* 76 F.3d 1538, 1557 (10th Cir.1996).

**\*\*4** [1] It is true, as JMS-Meadow argues, that Rule 26(a)(1)(B) did not require JMS-Meadow to produce documents. *See* Fed.R.Civ.P. 26(a)(1) advisory committee note (1993 amendments). Since JMS-Meadow provided only a description, Kern River was expected to obtain the documents under Rule 34 or through informal requests. *Id.* Although Kern River never made a formal Rule 34

motion, it did make informal requests for the documents, and the magistrate judge ordered that those documents be produced during discovery. JMS-Meadow, however, failed to produce a single document. We therefore reject JMS-Meadow's argument that it was not required to produce any documents.

JMS-Meadow further argues that, even if it was required to produce the documents, the law did not favor the harsh sanction of denying admission of the documents at trial, especially where (1) there was no prejudice to Kern River; (2) JMS-Meadow should have been given an opportunity to cure; (3) there was time to cure; and (4) JMS-Meadow did not act in bad faith, but instead was hampered by Mr. Turville's and his mother's health problems. [FN2] In construing Rule 37(c)(1), we have held that:

> FN2. Kern River contends that JMS-Meadow did not make most of these arguments to the magistrate judge, and, instead, first made them when appealing the magistrate judge's order to the district court. Because the district court did not decline to consider the arguments, we too address them on their merits.

**\*102** [a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply,* 170 F.3d at 993 (citation omitted).

Under the totality of the circumstances presented here, JMS-Meadow did not show that its violation of Rule 26(a) was either justified or harmless. JMS-Meadow's behavior prejudiced Kern River in its ability to conduct discovery, prepare for trial and cross-examine JMS-Meadow's witnesses. In light

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96                                                                     Page 6

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

of the many extensions of time it received, JMS-Meadow had ample opportunities to cure, but it failed to do so. JMS-Meadow first asserted Mr. Turville's family problems after the discovery deadline had passed. At no time has Kern River argued that JMS-Meadow acted in bad faith. Even without bad faith, the totality of the circumstances show no abuse of discretion.

*II. Expert Evidence*

JMS-Meadow argues that the district court abused its discretion in excluding its expert report from the bench trial. Although JMS-Meadow admits Mr. Lifferth's report is deficient, it contends that any flaws were minor, and it should have been permitted to supply the missing information. JMS-Meadow also argues that the district court abused its discretion in precluding Mr. Lifferth's expert testimony at the bench trial.

A party must disclose the written report of its expert witness. Fed.R.Civ.P. 26(a)(2)(B).
The report shall contain *a complete statement of all opinions to be expressed* and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
**\*\*5** *Id.* (emphasis added). Rule 26(a)(2)'s requirements "are mandatory and self-executing." *Lohnes v. Level 3 Commc'ns, Inc.,* 272 F.3d 49, 59 (1st Cir.2001). Again, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at trial ... any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1).

[2] JMS-Meadow never argues that its expert report was complete; it admits the report was only a preliminary report. Thus, the report did not comply

with Rule 26(a)(2). *See Salgado ex rel. Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 741 n. 6 (7th Cir.1998) ("Expert reports must not be ... preliminary in nature."). The Rule 26(a) violation was neither justified nor harmless. Permitting JMS-Meadow to present expert evidence at trial despite failing to disclose the expert report would have inhibited Kern River's ability to prepare for trial; Kern River would have had no pre-trial opportunity to learn the substance of the expert's direct examination testimony. *See* **\*103** *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir.2002). Excluding the evidence properly avoided prejudice to Kern River. *Id.* at 953-54. Accordingly, we conclude the district court did not abuse its discretion in refusing to permit JMS-Meadow to present expert evidence at the bench trial.

*III. Fraud on the Court*

Lastly, JMS-Meadow argues that Kern River committed a fraud on the court by allowing Mr. Free to testify about a purported conversation with Mr. Pastorik. JMS-Meadow argues the district court should have reopened the trial to permit JMS-Meadow to present evidence disputing this alleged conversation.

"[A] finding of fraud on the court permits the severe consequence of allowing a party to overturn the finality of a judgment." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1291 (10th Cir.2005); *see also Robinson v. Audi Aktiengesellschaft,* 56 F.3d 1259, 1265 (10th Cir.1995) ("Any request to set aside a judgment must be viewed in light of a fundamental principle of the finality of duly entered judgments: namely, where a reasonable opportunity has been afforded to the parties to litigate a claim before a court having jurisdiction, and the court has finally decided the controversy, the interests of the public and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them.").

Thus, we have described fraud on the court strictly:
"Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**(Cite as: 156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah)))**

between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud ... where the impartial functions of the court have been directly corrupted."

**6 *United States v. Buck,* 281 F.3d 1336, 1342 (10th Cir.2002) (quoting *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir.1985)). Clear and convincing evidence is needed to prove fraud on the court. *Id.* "Intent to defraud is an 'absolute prerequisite' to a finding of fraud on the court." *Zurich N. Am.,* 426 F.3d at 1291 (quoting *Robinson,* 56 F.3d at 1267).

[3] JMS-Meadow has failed to sufficiently allege or provide any evidence to show that Kern River had an intent to defraud. Even if Kern River made a misrepresentation to the court through Mr. Free's testimony, there is not a sufficient ground to set aside the district court's judgment based on fraud on the court without an intent to deceive. *See Robinson,* 56 F.3d at 1267. Because the record fails to show any fraud on the court, we conclude the district court did not abuse its discretion in denying relief on that basis. *See Buck,* 281 F.3d at 1342 (reviewing denial of relief for fraud on court for abuse of discretion).

Nor did the district court abuse its discretion by denying the motion to reopen. *See Morsey v. Chevron, USA, Inc.,* 94 F.3d 1470, 1477 (10th Cir.1996) (reviewing denial of motion to reopen for abuse of discretion). JMS-Meadow could have, but did not, participate in discovery. It did not depose either Mr. Pastorik or Mr. Free, even though Mr. Free clearly noted in his disclosed expert report that Mr. Pastorik told him that any alteration to the previously approved plan would be handled administratively without a public hearing. Aplee. App. at 220. JMS-Meadow did not subpoena Mr. Pastorik or another West Valley City planning department employee to testify on its own behalf at trial. Because JMS-Meadow failed to properly *104 prepare for trial, the district court did not abuse its discretion in denying reopening.

The judgment of the district court is AFFIRMED.

156 Fed.Appx. 96, 2005 WL 3257509 (10th Cir.(Utah))

**Briefs and Other Related Documents (Back to top)**

• 2005 WL 441630 (Appellate Brief) Appellant's Opening Brief (Jan. 25, 2005)

• 04-4033 (Docket) (Feb. 26, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                 Page 1

Not Reported in F.Supp., 1997 WL 669787 (S.D.N.Y.)

**(Cite as: 1997 WL 669787 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Yung Sang KANG, Plaintiff,
v.
Sei Yol LEE, Defendant.
**No. 96 CIV. 1145 (LBS).**

Oct. 27, 1997.

*MEMORANDUM*
*1 Plaintiff Yung Sang Kang ("Kang") brings an action against Defendant, Sei Yol Lee ("Lee"), asserting that Defendant defaulted on a $100,000 promissory note when it became due on December 1, 1993. Plaintiff seeks full payment on the entire balance on $100,000, plus interest at the rate of 12% per annum from December 1, 1993, in addition to costs, disbursements and attorney fees. Plaintiff now moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the Court grants Plaintiff's motion.

BACKGROUND
On february 15, 1996, Plaintiff Kang filed a diversity suit with seven counts alleging, *inter alia,* Defendant's default on a promissory note, breach of fiduciary duty and conversion of corporate assets. Plaintiff also sought an injunction prohibiting Defendant from entering Plaintiff's business premises. On September 19, 1996, Plaintiff filed a motion to strike Defendant's answer and for summary judgment to which motion Defendant never responded. Nevertheless, the motion was not granted.

Defendant subsequently failed to comply with Plaintiff's discovery demands which led Plaintiff to file a motion seeking a default judgment, on order of preclusion, costs and sanction, as well as a motion to enjoin Defendant from disposing of assets belonging to Defendant or belonging to the corporation of which Defendant was the director and president. In response to these motions, this Court reserved judgment on the condition that Defendant appear for a deposition and respond to all outstanding discovery requests. The Court also enjoined Defendant from disposing of any assets above $100. In the Court's oral decision on November 14, 1996, the Court noted that this was an "egregious case of flouting the orders of this Court." Tr. of 11/14/96, at 10.

On January 30, 1997, after various complaints by the Plaintiff about Defendant's continuing failure to comply with discovery, Plaintiff moved the Court for an Order of Preclusion, barring Defendant from offering at trial evidence related to those interrogatories and document requests to which Defendant had failed to respond. On April 22, 1997, this Court granted the motion and issued an Order of Preclusion against Defendant.

The next relevant step in the progression of the case came on May 1, 1997 when Plaintiff voluntarily withdrew the second through seventh causes of action in the complaint with prejudice because they related to issues governed by an arbitration clause. These matters were subsequently arbitrated and resulted in an award for the Plaintiff of $100,000. This left intact only the cause of action for allegedly defaulting on the $100,000 promissory note. On June 20, 1997, Plaintiff moved for summary judgment on this outstanding cause of action.

It is undisputed that the Defendant signed a promissory note on November 8, 1990 for consideration of $100,000. Def.['s] Answer at ¶ 5. The promissory note provided for payment in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                        Page 2

Not Reported in F.Supp., 1997 WL 669787 (S.D.N.Y.)

**(Cite as: 1997 WL 669787 (S.D.N.Y.))**

full upon default as well as late fees, costs and reasonable attorneys' fees. Pl.['s] Mot. for Summ.J.Ex.D. Though it is not clear from the transcript of the deposition whether Defendant fully understood the question being put to him, he responded that he made no payments in cash or kind on the outstanding note. Pl.['s] Mot. for Summ.J.Ex.J. In his opposition papers to the Motion, however, he asserted that payments were made. Def.['s] Affirmation Opp.'g Mot. for Summ.J. at ¶ 5.

STANDARD OF REVIEW

*2 Summary judgment is appropriate where there is "no genuine issue as to any material fact" and the moving party is entitled to "judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party. *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991). In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). To defeat the motion, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), but instead must point to evidence sufficient enough that a reasonable jury could return a verdict for the non-moving party on that element of its case *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

DISCUSSION

Despite the liberality with which the non-movant's case is to be viewed, where that party has failed to comply with the local rule requiring that the party opposing summary judgment submit a statement of disputed material facts, the court is compelled to accept as uncontroverted those material facts set forth in the moving party's statement. U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 3(g); *see also S.E.C. v. Softpoint, Inc.,* 958 F.Supp. 846, 859 (S.D.N.Y.1997).

Here Defendant submits no Rule 3(g) statement, setting forth specifically those issues which necessitate trial, but furnishes the Court, instead, with three contentions. Defendant alleges that the $100,000 note was not a loan but a security device to secure payment of goods bought by the Defendant from the Plaintiff. The inference is to be drawn that because these goods were unmarketable, the money was no longer owed. Second, Defendant alleges that "Defendant made payments based on first-in, first-out basis. And on that basis, the original one hundred thousand ($100,000) Dollar merchandise was paid for many times over." Def.['s] Affirmation Opp.'g Pl.['s] Mot. for Summ.J. at ¶ 15. Third, Defendant asserts that the arbitration award to Plaintiff of $100,000 constitutes a satisfaction of the $100,000 promissory note debt and therefore Plaintiff is not entitled to a further award. To these statements, Defendant does not append documentary evidence or additional affidavits.

If an opponent to a summary judgment motion fails to allege that there are substantial facts in dispute, his reliance on an unsubstantiated denial of accuracy of movant's affidavits is insufficient to controvert a motion for summary judgment. *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811 (S.D.N.Y.1985). Given the paucity of Defendant's submissions, we could stop our inquiry here. Nonetheless, this Court will look for disputed issues of material fact in a fashion most favorable to the non-moving party. Here there exist two potentially triable questions, both of which pose no impediment to the Plaintiff's motion under the current circumstances. The question of whether or not the promissory note has been repaid might have been a triable question were there no pre-existing Order of Preclusion. Second, the question of whether the $100,000 arbitration award constituted a satisfaction of the debt here is obviated by the fact that the arbitration award related to distinct causes of action, unrelated to the cause of action for the default on the promissory note.

*Order of Preclusion*

*3 As a result of Defendant's failure to comply with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 3

Not Reported in F.Supp., 1997 WL 669787 (S.D.N.Y.)

**(Cite as: 1997 WL 669787 (S.D.N.Y.))**

Plaintiff's discovery demands, even after this Court directed him to do so, he has been precluded from offering any evidence at trial relating to matters raised in Plaintiff's unanswered interrogatories and unsatisfied document requests. Pl.['s] Mo. for Order of Preclusion of 1/27/97. Such action is within the discretion of the district court. *Valentine v. Museum of Modern Art,* 29 F.3d 47, 49 (2d Cir.1994). When a party fails to comply with a discovery order, the court may "make such orders in regard to the failure as are just," including, an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B).
The material now precluded pursuant to the standing Order includes all documentary and testimonial evidence relating to the purported payment of the promissory note. Pl.['s] Mot. for Summ.J.Exs. H & I.

When a non-cooperative party fails to respond adequately to a court's repeated orders to comply with discovery demands, that party will be deemed, for purposes of a summary judgment motion, to have answered that it did not have such information. *Harlem River Consumers Co-Op. Inc. v. Associated Grocers of Harlem, Inc.,* 64 F.R.D. 459 (S.D.N.Y.1974). As Defendant is precluded from offering any evidence of payment of the promissory note at trial and would be considered not to have any information relating to it, there can be no outstanding disputed issue on the question of default. Summary judgment is wholly appropriate where defendant is barred from offering evidence by an order of preclusion. *Cobble Hill Nursing Home, Inc. v. Griffo, et at.,* 658 N.Y.S.2d 428 (App.Div.1997) (plaintiffs were entitled to summary judgment following defendants' failure to supply discovery required by order of preclusion where defendants did not demonstrate reasonable excuse for delay or meritorious claim); *cf. Ituarte v. Chevrolet Motor Div.,* 1989 WL 10562 (E.D.N.Y.1989) (order of preclusion vacated where attorney delinquence resulted from psychiatric depression).

*Arbitration Award*

In May 1997 a tribunal of the American Arbitration Association made a finding and award for Plaintiff and against Defendant in the amount of $100,000.
Pl. ['s] Reply Affirmation in Supp. of Mot. for Summ.J.Ex.D. Defendant alleges that this is the same $100,000 which is at issue in this litigation,. However, this assertion does not raise an issue of disputed fact because it is clear on the face of the pleadings that the arbitration award relates only to those claims originally brought by Plaintiff as causes of Action 2-7, which have since been dropped and which are not relevant to this Motion for Summary Judgment. The Motion relates to a promissory note between Plaintiff and Defendant personally, whereas the arbitration award concerns matters between Defendant and the S.Y. Miami Corporation.

*4   Furthermore, the only evidence Defendant offers to suggest otherwise is his naked allegation without support. This is not enough to raise the issue of the arbitration award to the level of a disputed fact for the purpose of defeating a motion for summary judgment.

CONCLUSION
Though a grant of summary judgment for failure to comply with discovery is a severe penalty, it is within the sound discretion of the court where the conduct of the recalcitrant party is willful and reiterated. It is also appropriate where, as here, the Defendant has only put forward the barest skeleton of a case in opposition to the instant motion. Thus, we find, that there remains no need for a trial and judgment on the pleadings is appropriate.

For the foregoing reason, we grant Plaintiff's Motion for Summary Judgment. Settle order on notice.

**Motions, Pleadings and Filings (Back to top)**

• 1:96cv01145 (Docket) (Feb. 15, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2005 WL 2989273 (N.D.Cal.)

**(Cite as: 2005 WL 2989273 (N.D.Cal.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
PENTALPHA MACAU COMMERCIAL
OFFSHORE LIMITED, Plaintiff,
v.
Damoder REDDY, et al., Defendants
Damoder REDDY, Counterclaimant,
v.
PENTALPHA OFFSHORE LIMITED, et al.,
Counterdefendants
No. C 03-5914 MMC.

Nov. 3, 2005.
Philip Harris Stillman, Flynn & Stillman, Cardiff,
CA, for Plaintiff.

Stanley G. Hilton, Law Offices of Stanley G.
Hilton, San Jose, CA, for Defendants.

ORDER DENYING OBJECTION TO REPORT
AND RECOMMENDATION DATED
SEPTEMBER 9, 2005;
ADOPTING REPORT AND
RECOMMENDATION DATED SEPTEMBER 9,
2005; VACATING HEARING

CHESNEY, J.

*1 Before the Court is counterclaimant Damoder
Reddy's Objection to Report and Recommendation
on Pentalpha's Motion for Sanctions Dated
September 9, 2005. Having reviewed the objection,
the Court deems the matter suitable for decision on
the papers, VACATES the hearing scheduled for
November 4, 2005, and rules as follows.

Having reviewed de novo the Report and
Recommendation, as well as the record before the
Magistrate Judge, *see* 28 U.S.C. § 636(b)(1), the
Court hereby DENIES the objection. Contrary to
Reddy's argument that he complied with the Court's
order of June 24, 2005, he plainly did not, as he
failed to set forth in his discovery responses, *inter
alia,* a "detailed factual basis for contending that
Pentalpha converted any specific item of Reddy's
property," (*see* Stipulation and Order Re Further
Discovery Responses, filed June 24, 2005, at 2:7-9),
a "valuation of each element of damages for each
specific item of allegedly converted property," (*see
id.* at 2:10-11), "all persons who he alleges ...
defamed him, including each individual's name,
address, and position held at ... Pentalpha," (*see id.*
at 2:13-15), and "each act by Pentalpha that he
contends caused emotional distress," (*see id.* at
3:2-3). Further, as set forth in the Report and
Recommendation, Reddy's failure to comply with
the Court's order was willful, i.e., it was not
accidental or the result of an oversight. Lastly, a
review of the record reflects no good cause for
Reddy's failure to comply with the Court's order.

Accordingly, the Court hereby ADOPTS the
Report and Recommendation filed September 9,
2005.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION ON
PENTALPHA'S MOTION FOR SANCTIONS

LAPORTE, Magistrate J.

Upon consideration of the parties' arguments, good
cause appearing, and for the reasons set forth
below, the following is the Court's Report and
Recommendation to the Honorable Maxine M.
Chesney on a motion for sanctions filed by Plaintiff
and counter-defendant Pentalpha Macau
Commercial Offshore Limited ("Pentalpha").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 2989273 (N.D.Cal.)

**(Cite as: 2005 WL 2989273 (N.D.Cal.))**

Pentalpha filed a motion for sanctions against Defendant and counter-claimant Damoder Reddy ("Reddy"), and for attorneys' fees against both Reddy and his counsel. The Court considers Pentalpha's motion for attorneys' fees in a separate order. *See* Docket No. 139. Having reviewed the submissions of the parties, the Court finds this matter appropriate for decision without a hearing and therefore VACATES the hearing scheduled for September 13, 2005. Pentalpha's request to appear by telephone therefore is DENIED as moot.

Attempting to discover the factual bases for Reddy's counterclaims, Pentalpha propounded discovery. Because Reddy's responses to certain interrogatories were vague and insufficient, Pentalpha repeatedly requested that Reddy supplement them. Eventually, in order to obtain an additional extension of time to respond, Reddy agreed to document the terms of his discovery obligations to Pentalpha in a stipulation and order, which the Court signed. This Order required Reddy to provide the specific factual bases for his conversion, slander, fraud, and intentional infliction of emotional distress causes of action, as well as for his damages and for his claim that Pentalpha had successor liability for former cross-defendant Opsys US. *See* June 24, 2005 Order Approving Stipulation re Further Discovery Responses (Docket No. 117). [FN1] Although Reddy timely served amended responses pursuant to the Order, they consisted entirely of representations that Reddy had no additional details or information to support his claims. *See* Declaration of Phillip Stillman in Support of Motion for Sanctions ("Stillman Decl."), Ex. B. Pentalpha then filed this Motion for Sanctions asking the Court to strike Reddy's counterclaims or, in the alternative, to prevent Reddy from introducing any additional evidence or testimony to support those claims in opposing summary judgment or at trial.

> FN1. The Order was entered under Rules 26 and 37(a), and signed by the Court. Reddy's argument that it is not an enforceable court order therefore is without basis in law or logic.

**\*2** Federal Rule of Civil Procedure 37 gives the Court discretion to impose sanctions for different types of discovery abuses. For example, subsection (b)(2) specifically allows courts to sanction a party that "fails to obey an order entered under Rule 26(f)" by "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Subsection (c)(1) also allows courts to impose evidence preclusion sanctions where a party fails to "amend a prior response to discovery as required by Rule 26(e)(2) ..., unless such failure is harmless...." Reddy's discovery conduct qualifies for sanctions under both subsections.

First, Reddy's original responses were inadequate and vague. When asked to identify and value the items that allegedly had been converted, Reddy responded that "software" and "technical papers" and "proprietary information" worth "thousands of dollars" had been converted by "Pentalpha representatives and/or Opsys employees-contractors on behalf of Pentalpha." Supplemental Declaration of Phillip Stillman ("Stillman Supp. Decl.") at 2. When asked to identify the basis for his intentional infliction of emotional distress counterclaim, he responded similarly vaguely that "Pentalpha (its employees and or its contractors/agents) caused emotional distress by converting [his] personal property by defaming me and by making representations. Peter Howell and John Sham made misrepresentations; Gary Rhea and Chuck Monach made defamatory comments; and several members of Pentalpha were involved in conversion." *Id.* at 5.

Second, Reddy failed to supplement his original responses to discovery when it became evident that they did not support his claims. For example, Pentalpha asked Reddy to "[i]dentify all persons who You allege ... defamed You, including each individual's name, address, and position held at Opsys or Pentalpha, the exact statement said by each individual, to whom the statement was said, any other individuals who heard the statement being uttered, where the statement was said and the date and time that the allegedly defamatory statement was made." Stillman Supp. Decl. at 3. Reddy

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 2989273 (N.D.Cal.)

**(Cite as: 2005 WL 2989273 (N.D.Cal.))**

responded that he:

was defamed by several people belonging to Pentalpha and Opsys (many of them were working as Pentalpha contractors after April 22, 2003). Many defamatory comments were made by Gary Rhea, consultant (in charge of Opsys U.S. facility from April 22, 2003) and Chuck Monach, Opsys U.S. facility manager during an all hands meeting held on April 28, 2003. Gary Rhea said that [he] 'was dishonest, liar and a crook.' Chuck Monach said that 'if [he] showed up at the Opsys U.S. facility he will pick [him] up with a fork lift and dump [him] in the trash can.' Several Opsys U.S. employees and contractors who attended this meeting heard these comments.

*Id.* While that response may have been adequate as to Opsys US, as opposed to Pentalpha, the Court previously had dismissed Reddy's slander counterclaim to the extent that it was based on a successor liability theory between Opsys U.S. and Pentalpha. *See* December 1, 2004 Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Second Amended Counterclaim at 2-3 ("the Second Cause of Action, as against Pentalpha, is subject to dismissal to the extent it is based on a theory of successor liability, but not to the extent it is based on statements by Pentalpha") (Docket No. 82). Therefore, in his original response made after that ruling, Reddy should have included information about his contention that *Pentalpha* had direct liability for slander. At the very least he promptly should have amended it once he realized that it no longer supported his counterclaim.

*3 Third, Reddy should have supplemented his responses when he *stipulated* to the Order, which required him to--for example--"identify all persons who he alleges in his Third Amended Counterclaim defamed him.... If Reddy contends that Pentalpha is responsible for a statement made by an Opsys U.S. employee or consultant, Reddy [s]hall state all facts upon which he relies for that contention." June 24, 2005 Order at 2 (Docket No. 117). Instead of providing substantive information, Reddy's supplemental response stated that "[a]fter a diligent search of his records, and diligent efforts to recall what happened, the defendant, Damoder Reddy, cannot locate or think of any more details to

provide any further response to this interrogatory." Stillman Decl., Ex. B at 2. Therefore, more than six months after his initial disclosures and after Pentalpha obtained a court order requiring him to do so, Reddy refused or was unable to provide any evidence of slander by *Pentalpha,* or by persons for whom *Pentalpha* was responsible.

Finally, Reddy should have supplemented his responses during the meet-and-confer process that took place before Pentalpha filed the Motion for Sanctions. But Reddy has refused to do so, either because he is unwilling or unable to provide any additional information to support his claims for conversion, defamation, misrepresentation, and intentional infliction of emotional distress, his damages, or his theory that Pentalpha is liable as distinct from Opsys US. Reddy's conduct has prejudiced Pentalpha's ability to conduct the discovery needed to defend against Reddy's vaguely stated counterclaims. *See, e.g., Adriana Int'l Corp. v. Lewis & Co.,* 913 F.2d 1406, 1412 (9th Cir.1990) ("Failure to provide documents as ordered ... is considered sufficient prejudice") (citing *Securities and Exch. Comm'n v. Seabord Corp.,* 666 F.2d 414, 417 (9th Cir.1982)). Moreover, Reddy's refusal to produce discovery frustrates Pentalpha's ability to bring dispositive motions that could simplify the issues and make for a more expeditious disposition of case. *See Computer Task Group, Inc. v. Brotby,* 364 F.3d 1112, 1117 (9th Cir.2004) ("An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed-- perhaps paving the way for a summary judgment motion--and which facts must be resolved at trial"). The Court fails to see how these are "trivial disagreements" (Opposition at 6). On the contrary, the Court concludes that Reddy has willfully failed to meet discovery obligations under the Federal Rules of Civil Procedure and under the Order.

In addition to imposing sanctions under Federal Rule of Civil Procedure 37, the Court also can invoke its inherent powers to exclude the evidence Reddy refuses to disclose more than sixteen months after filing his counterclaim and more than two months after being ordered to do so. *See Unigard*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 4

Slip Copy, 2005 WL 2989273 (N.D.Cal.)

**(Cite as: 2005 WL 2989273 (N.D.Cal.))**

*Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.,* 982 F.2d 363, 368 (9th Cir.1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" ') (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Pentalpha's counsel details the repeated and fruitless attempts he made to meet and confer with Reddy's counsel, even after filing the Motion for Sanctions. *See* Stillman Decl. at ¶¶ 3-5, 8-9; Stillman Supp. Decl. at ¶ 3. In light of Reddy's inadequate meet and confer, and refusal to supplement his responses even after a court order requiring him to do so, this Court finds that Reddy's failures are willful.

*4 Accordingly, the Court recommends GRANTING Pentalpha's Motion For Sanctions in part, and ordering that Reddy shall not to use as evidence at trial, at a hearing, or on a motion, any witness or information that Reddy did not disclose in his initial Rule 26 disclosures, in his original interrogatory responses served on December 8, 2004, or in his supplemental interrogatory responses served on June 24, 2005. The Court makes these recommendations in lieu of recommending the more severe sanctions of striking Reddy's counterclaims, as requested by Pentalpha.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Slip Copy, 2005 WL 2989273 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2869059 (Trial Motion, Memorandum and Affidavit) Plaintiff Pentalpha Macau Commercial Offshore Limited's Opposition to Damoder Reddy's Motion for Sanctions Pursuant to Rule 11 (Sep. 26, 2005)

• 2005 WL 2869057 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objection to Report and Recommendation on Pentalpha's Motion for Sanctions Dated September 8, 2005. (Sep. 22, 2005)

• 2005 WL 2869053 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Points and Authorities in Opposition to Motion for Discovery and Monetary Sanctions (Sep. 09, 2005)

• 2005 WL 2869047 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Points and Authorities in Support of Motion for Rule 11 Sanctions and Monetary Sanctions (Sep. 07, 2005)

• 2005 WL 2613112 (Trial Motion, Memorandum and Affidavit) Pentalpha's Reply Memorandum in Support of Its Motion for Discovery Sanctions Against Damoder Reddy and His Counsel, Stanley Hilton (Aug. 30, 2005)

• 2005 WL 2613107 (Trial Motion, Memorandum and Affidavit) Opposition to Reddy's Ex Parte Application for Default (Aug. 28, 2005)

• 2005 WL 2613103 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Discovery and Monetary Sanctions (Aug. 23, 2005)

• 2004 WL 2160634 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Complaint and Motion for A more Definite Statement Frcp Rule 12 (b)(6), 12(e) (May. 07, 2004)

• 2004 WL 2160641 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Complaint and Motion for A Ore Definite Statement Frcp Rule 12 %y(3)27 (b)(6), 12(e) (Mar. 15, 2004)

• 3:03cv05914 (Docket) (Dec. 31, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**(Cite as: 2002 WL 32506294 (D.Conn.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Carrie KING-HARDY, Plaintiff,
v.
BLOOMFIELD BOARD OF EDUCATION, et al.,
Defendants.
**No. Civ.3:01CV979 (PCD).**

Dec. 8, 2002.

Kimberly A. Graham, Paul Mpande Ngobeni,
Hartford, CT, for Plaintiff.

Brett Michael Szczesny, Stephen P. Fogerty,
Halloran & Sage, Westport, CT, James M. Sconzo,
Halloran & Sage, Hartford, CT, for Defendants.

*RULINGS ON MOTION TO WITHDRAW
ADMISSIONS, MOTION TO PRECLUDE
DOCUMENTARY
EVIDENCE AND EXPERT WITNESSES, AND
MOTION TO VACATE TRIAL PREPARATION
ORDER*

DORSEY, J.

**\*1** Plaintiff moves pursuant to Fed. R. Civ. P. 36(b)
to withdraw her admissions. Defendants move to
preclude documentary evidence pursuant to this
Court's discovery order of October 12, 2001. [FN1]
For the reasons set forth herein, plaintiff's motion to
withdraw admissions is denied, defendants' motion
to preclude documentary evidence and expert
witnesses is granted, and defendants' motion to
vacate the Trial Preparation Order is denied.

FN1. Defendants provide as alternative

bases for this motion Fed. R. Civ. P. 26, 34
and 37 and D. Conn. L. Civ. R. 9. D.
Conn. L. Civ. R. 9 provides that "[n]o
motion pursuant to Rules 26 through 37,
Fed.R.Civ.P., shall be filed unless counsel
making the motion has conferred with
opposing counsel and discussed the
discovery issues in detail in a good faith
effort to eliminate or reduce the area of
controversy, and to arrive at a mutually
satisfactory resolution." As defendants did
not confer with plaintiff prior to filing their
motion to preclude, they may not resort to
these rules.

I. PLAINTIFF'S MOTION TO WITHDRAW
ADMISSIONS

Plaintiff argues that she is entitled to withdraw
admissions because she could not respond properly
without conducting discovery and requiring her to
do so would force her to concede incorrect facts.
Defendants respond that plaintiff's failure to
respond to or object to the requests within thirty
days constitutes admission pursuant to Fed. R. Civ.
P. 36(b).

Plaintiff argues the following in support of her
motion. On August 1, 2001, she received a request
for admissions from defendants before discovery
had commenced. Plaintiff's personnel file, which
was required to fashion a proper response to the
requests, was requested on September 4, 2001, and
not received until October 16, 2001. [FN2] Plaintiff
also had not received the requested minutes of a
special board meeting at which she was terminated
as of October 16, 2001. She sought an extension of
time "some time after August 1, 2001," but
opposing counsel could not be reached. Family
illnesses in the families of both plaintiff's counsel
and co-counsel further added to the delay.

FN2. The date of the request itself would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**(Cite as: 2002 WL 32506294 (D.Conn.))**

be untimely, notwithstanding any subsequent delays in processing the request.

Pursuant to Fed. R. Civ. P. 36(a), "[t]he matter [within the request] is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." Fed. R. Civ. P. 36(b) permits the withdrawal of an admission when (1) "the presentation of the merits of the action will be subserved thereby" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."

Plaintiff's justifications for the failure to respond to defendants' requests are inadequate. There is no question that plaintiff failed to respond to defendants' requests for admission within thirty days as required by Fed. R. Civ. P. 36(a). Plaintiff's argument that "[i]n order to respond to some of the requests, it was necessary for [her] to conduct discovery" is addressed by Fed. R. Civ. P. 36(a), which allows a party to respond with "lack of information or knowledge" when such response is appropriate. The circumstances plaintiff provides as justifying the delay are similarly addressed by Fed. R. Civ. P. 36(a), which affords extensions of the thirty-day period "as the court may allow or as the parties may agree to in writing." Plaintiff's single unsuccessful attempt to contact defendants and failure to move for an extension cannot be interpreted as a diligent effort conforming to the requirements of Fed. R. Civ. P. 36.

**\*2** Notwithstanding these deficiencies, plaintiff's motion fails utterly to convey what matters are deemed admitted by her failure to respond, instead placing the burden on defendants to prove that they would not be prejudiced were the motion granted. Although a party objecting to the withdrawal of admissions may be required to establish prejudice, *see Westmoreland v. Triumph Motorcycle Corp.,* 71 F.R.D. 192, 193 (D.Conn.1976), the burden in the first instance is not on the party objecting to the withdrawal. Fed. R. Civ. P. 36(b), providing that

"the court may permit withdrawal or amendment," makes allowances for, rather than entitles, a party to withdraw an admission. Assuming, arguendo, that the moving party establishes that merits will be served and that the opposing party will not be prejudiced, there is no requirement that the withdrawal be granted. *See Carney v. IRS (In re Carney),* 258 F.3d 415, 419 (5th Cir.2001) ("Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."); *United States v. Kasuboski,* 834 F.2d 1345, 1350 n. 7 (7th Cir.1987). Such a request to withdraw admissions will be granted "[u]nder compelling circumstances." *Moosman v. Joseph Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966). In light of plaintiff's failure to seek extensions to conform to statutory time periods, failure to articulate precisely what admissions have been made, and failure to articulate how the merits will not be subserved thereby, there is no basis on which to grant her motion. [FN3] The motion is denied.

> FN3. Defendants claim they have established a litigation strategy based on the admissions and would be severely prejudiced in time and expense if required to change directions at this point. No opinion is made as to whether this claimed prejudice is sufficient under Fed. R. Civ. P. 36(b).

**II. RULING ON DEFENDANTS' MOTION TO PRECLUDE**

Defendants argue that plaintiff's failure to comply with a discovery order [FN4] establishing deadlines for responses to requests for production and disclosure of her expert witness requires that unproduced documents and expert witnesses be precluded from introduction at trial. Plaintiff responds that she has satisfied the requests for production of documents to the extent feasible and that she does not intend to call an expert witness.

> FN4. The parties mischaracterize the order as an order compelling discovery. The order was issued to impose requirements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**(Cite as: 2002 WL 32506294 (D.Conn.))**

on discovery as a result of issues identified at a pretrial conference, not in response to a motion to compel discovery.

The relevant background for this motion is as follows. On October 12, 2001, a discovery order issued setting forth specific deadlines. All depositions were to be completed by October 16, 2001. Plaintiff was ordered to respond to all outstanding interrogatories and requests for production by October 30, 2001, "to include disclosure of expert witnesses, and the production of all medical records relating to the plaintiff's physical condition (excluding gynecological records) for the past ten years, and records of any treatment for psychological or psychiatric conditions which plaintiff intends to relate to her claims in this case." On October 30, 2001, plaintiff provided documents in response to defendants' outstanding discovery requests. The responses to twenty-six requests for production included fifteen objections for the stated reason "[d]efendants are in possession of any such documents." Plaintiff also responded that the following requests were vague, ambiguous or called for speculation:

*3 "Produce any and all documents that relate or refer to the plaintiff's medical condition as having any adverse impact on her ability to perform her job as a school psychologist."

"Produce any and all documents the plaintiff believes she would have introduced at the 10-151 hearing in opposition to the administration's case that were excluded at the hearing panel."

"Produce any and documents that refer to when plaintiff first learned that her physical condition was having an adverse impact on her job performance."

"Produce any and documents that relate or refer to when the plaintiff first became impaired in her ability to perform the essential functions of her job."

"Produce any and all documents that relate or refer to any stresses in the plaintiff's life besides her health, including but not limited to the health and welfare of her family members and/or any financial difficulties the plaintiff was under from January 1, 1997 to date."

"Produce any and all documents that relate or

refer to plaintiff's claim that her alleged disability had an effect on and/or explains the deterioration in her job performance."

"Produce a copy of any diary or other document maintained by plaintiff covering the period from January 1, 1997 or when she was first advised that she had multiple sclerosis, which ever [sic] is earlier, to date."

Plaintiff responded that "documents will be forwarded under separate cover" to one request. In total, of twenty-six requests only three resulted in the production of documents.

Sanctions for violation of a pretrial order are made "upon motion or the judge's own initiative" pursuant to Fed. R. Civ. P. 16(f). The rule provides that "[i]f a party or party's attorney fails to obey a ... pretrial order, the judge ... may make such orders with regard thereto as are just." *Id.* Fed. R. Civ. P. 16(f) incorporates the sanctions available under Fed. R. Civ. P. 37. *Hernandez v. Conriv Realty Assoc.,* 116 F.3d 35, 40 (2d Cir.1997). Thus, a party failing to produce documents which are the subject of a discovery order may be precluded from presenting the same at trial. *Smith v. Rowe,* 761 F.2d 360, 366 (7th Cir.1985); *Rabb v. Amatex Corp.,* 769 F.2d 996 (4th Cir.1985). Although preclusion is "strong medicine," it is necessary under the appropriate circumstances to ensure compliance with the rules of discovery. *Daval Steel Prods., v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991). "Modern instruments of discovery serve a useful purpose ... together with pretrial procedures [to] make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958).

The relevant question is whether plaintiff has violated the pre-trial order. Reviewing the requests for production and responses by plaintiff thereto, the inescapable conclusion is that plaintiff has violated the order. Much of plaintiff's failure to produce documents exhibits a misapprehension of the broad scope of permissible discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**(Cite as: 2002 WL 32506294 (D.Conn.))**

any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The only proscriptions imposed on discovery apply to requests that are irrelevant, "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2).

*4 The majority of plaintiff's objections were on the ground that "[d]efendants are in possession of any such documents." This is not an acceptable response to the requests for production. Fed. R. Civ. P. 34(a) requires production of any documents "which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." "[A]n assertion that [the party of whom the request is made] is in possession of the information ... sought ... is not a sufficient ground for denying [the request]." *Civil Aeronautics Bd. of Civil Aeronautics Auth. v. Can. Colonial Airways, Inc.,* 41 F.Supp. 1006, 1008 (S.D.N.Y.1940). Failure to produce documents or provide an acceptable response or objection is a violation of the pretrial order and sanction is appropriate. Plaintiff is therefore precluded from introducing documents that could be considered responsive to these requests at trial.

Plaintiff's response to one request for production that "documents will be forwarded" is similarly unacceptable. The discovery order required that plaintiff respond to all requests by October 30, 2001. Plaintiff's response is dated October 30, 2001, but the response indicates the documents will be produced at a later date. This directly violates the pre-trial order. She will be precluded from introducing the documents at trial if not yet produced on the date of this order.

Plaintiff's objection that requests for production are vague is similarly deficient. *See Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 592-93 (W.D.N.Y.1996). "Such pat, generic, non-specific objections, intoning the same boilerplate language,

are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 295 (W.D.N.Y.1996). The response must clearly articulate the specifics of the objection and how the objection relates to documents requested. *Id.* The burden is on the objecting party to justify with particularity its refusal to comply with the request. *Id.* Fed. R. Civ. P. 34(b) requires only that a request be made with "reasonable particularity." The requests claimed to be vague or ambiguous or speculative on their face are reasonably particular.

Plaintiff argues that defendants, in requesting "any and all documents the plaintiff believes she would have introduced at the 10-151 hearing," ambiguously used the term "believes" thus improperly calling for speculation as to what she would have introduced had she been permitted. This ambiguity cannot seriously be propounded, as plaintiff cannot "speculate" as to something she herself was denied the right to present at the hearing. The hearing date has passed, and presumably certain documents were admitted and potentially some were not. Plaintiff was obliged to produce those documents if such documents exist.

*5 The remaining objections are of a similar vein. A request for production is to be afforded a reasonable construction, *see Adolph Coors Co. v. Am. Ins. Co.,* 164 F.R.D. 507, 518 (D.Colo.1993), rather than straining to find ambiguity when there is none. The remaining requests are not ambiguous on their face, and plaintiff's arguments to the contrary are without merit. Plaintiff is therefore precluded from presenting evidence at trial not produced in response to the documents requests claimed to be vague.

Defendants also argue that expert testimony should be precluded for plaintiff's failure to identify an expert witness. Plaintiff responds that she "has no intention of calling an expert witness and that is why such a witness was not disclosed. Plaintiff does intend to call the plaintiff's physician as she is a fact witness. Plaintiff's treating physician prepared reports and correspondence addressed to the defendant."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**(Cite as: 2002 WL 32506294 (D.Conn.))**

Parties are required to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). The substance of the disclosure must meet the requirements of Fed. R. Civ. P. 26(a)(2)(B),(C). A party who fails to disclose its expert witness in accordance with Fed. R. Civ. P. 26(a) will not be permitted to use that witness at trial. Fed. R. Civ. P. 37(c)(1). Plaintiff will not be permitted to call an expert witness at trial, having failed to disclose the same. [FN5] The motion to preclude documents and expert witnesses is granted. [FN6]

> FN5. Provided the substance of her testimony is confined to matters within her personal knowledge, plaintiff's treating physician most likely would not be considered an expert witness triggering the Fed. R. Civ. P. 26 disclosure requirements. *See Patel v. Gayes,* 984 F.2d 214, 217 (7th Cir.1993). It would be another matter if the physician testifies to matters not within her personal knowledge or to knowledge acquired in anticipation of litigation. *Id.*

> FN6. Defendants also move for a monetary sanctions against plaintiff. It is not apparent that plaintiff's actions were flagrant or wilful, evincing more than a misunderstanding of the rules of discovery. As such, no monetary sanctions will be awarded.

III. CONCLUSION

Plaintiff's motion to withdraw admissions (Doc. 46) is denied, defendants' motion to preclude documentary evidence and expert witnesses (Docs.49, 52) is granted, and defendants' motion to vacate the Trial Preparation Order (Doc. 58) is denied. The deadlines for the Trial Preparation Order are modified as follows: Section A: April 1, 2002; Section B: April 12, 2002; April 26, 2002. If a motion for summary judgement is to be filed, compliant with the Supplemental Order such will be served on the opposing party by February 11, 2002,

the opposition brief shall be served by March 4, 2002, and the motion, opposition and any reply thereto filed in court by March 11, 2002.

SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:01CV00979 (Docket) (May. 31, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.