SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>　　　　Plaintiff/Counterclaim-Defendant,<br><br>　　　　-against-<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　Defendant/Counterclaim-Plaintiff. | **REBUTTAL DECLARATION OF RANDALL DAVIS**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells<br><br>**FILED IN REDACTED FORM** |

## I.  INTRODUCTION

1.  I have been asked by counsel for IBM to respond to the Declaration of Marc Rochkind submitted by The SCO Group, Inc. ("SCO") in opposition to IBM's motion to limit SCO's claims.  This declaration is limited to responding to the issues raised by Mr. Rochkind.

2.  Like my declaration dated March 29, 2006, this declaration is based on my experience working in the field of computer science and evaluating allegations of intellectual property violations.  I further base the facts and opinions set out in this declaration upon careful review of SCO's Final Disclosure of Allegedly Misused Material dated December 22, 2005 (the "Final Disclosures").

3.  In summary, the Rochkind declaration talks past the conclusions set out in my previous declaration.  While Mr. Rochkind states that he "strongly disagree[s] with [my] assertion (at paragraph 11) that SCO has failed to identify with specificity 198 challenged Items in the December submission" (Rochkind Decl. ¶ 7), he fails to directly confront the facts set out in my declaration and his conclusion is clearly based on a very different inquiry.  Put differently, Mr. Rochkind reached a different conclusion than I did because he answered a different question.

4.  If the question is whether SCO provided version, file and line information for each of the 198 Items at issue, then the answer is unquestionably "No".  Although Mr. Rochkind uses words that might be understood to suggest that these coordinates have been provided where possible (Rochkind Decl. ¶¶ 11-12), they have not been.  Notably, he makes no effort to show that they have.  Without version, file and line information concerning SCO's allegations, it is simply not possible fully to understand its claims, which puts IBM at an extraordinary disadvantage.

5.  If the question is whether version, file, and line information is still needed even where the allegations concern misuse of methods and concepts (rather than copying of code), the answer is unquestionably "Yes."  It is entirely possible for the party making the allegations of misuse to assemble such information:  Where a method or concept is in fact used in a program, there must be lines of source code in the program that implement the method or concept.  The alleging party need simply cite the program version, file, and lines in which that source code appears.

6.  In the next section of this declaration, I explain some basic background that helps in understanding why Mr. Rochkind's position is untenable.  Section III details the fundamental disagreement between my original declaration and the Rochkind declaration. In Section IV, I respond to Mr. Rochkind's assertions that the 198 Items are essentially all methods and concepts claims and that such claims do not require version, file and line information.  In Section V, I address Mr. Rochkind's assertion that IBM has more than enough information to defend itself.  Finally, in Section VI, I consider Mr. Rochkind's claim regarding "willfulness".

**II.  IMPORTANT BACKGROUND**

7.  Several basic facts concerning this case are worth reviewing briefly to help make clear the difficulties presented by SCO's position on disclosure.

8.  First, SCO has alleged misuse of its intellectual property, claiming, among other things, that its System V Unix code was copied by IBM into AIX and/or Dynix and then contributed, with and without AIX and Dynix code, by IBM to Linux.  For these allegations to be understood, SCO must (a) specify the System V code that was allegedly copied, (b) specify where in AIX and/or Dynix the code allegedly derived from System V appears, and (c) specify where in Linux the allegedly infringing code appears.

9.   Without such specification, how can IBM respond, much less prepare a defense?  How, for instance, can it determine whether the code allegedly copied from System V is in fact protectable, or instead is unoriginal; an idea, process or procedure; dictated by externalities; or in the public domain?  Such an analysis must proceed from the specific code, and absent an indication of what code is in question, the analysis cannot even begin.

10.   Second, the volume of code at issue in this case is so enormous as to make it pragmatically impossible to determine what code might be in question unless the version, file and lines are specified.  To put this in more familiar terms, consider that a single recent version of Linux contains about 6 million lines which if printed would be about 110,000 pages.  In other words, a *single* recent version of Linux is the equivalent of a *218 volume encyclopedia*.[1]  Now consider that there are *597 distinct versions*, and think of each version as an edition of the encyclopedia.  Hence in the absence of a specification of version, file and line information for the allegedly misused code, SCO is essentially saying "somewhere in the *597 distinct editions* of this *multi-(in many cases 100+)volume encyclopedia* you have misused some of our property."

11.   Without a specification of the System V code that has allegedly been copied, IBM cannot know with specificity even what IBM stands accused of misusing.  Without a specification of where the accused code allegedly appears in Linux and AIX or Dynix, IBM faces a pragmatically impossible task of finding it.  For the record, there are:

---

[1] Assuming 500 pages to a volume.  Even the earliest and smallest version of Linux contains over 175,000 lines of text, the equivalent of over 3000 pages.

- At least 11 versions of System V code totaling almost 24 million lines of text[2];

- At least 9 versions of AIX totaling almost 1.2 billion lines;

- At least 25 versions of Dynix totaling almost 157 millions lines; and

- At least 597 versions of Linux totaling almost 1.4 billion lines.

12.  In the case of the 198 challenged items, SCO thus has offered an impossibly non-specific accusation, attempting to leave both the interpretation of the allegations and the finding of the evidence (should there be any) as an exercise for IBM.  Requesting version, file, and line numbers for all the code in question is no more unreasonable on the face of it than an encyclopedia publisher asking that an allegation of plagiarism be specified in terms of the edition, volume and page where the accused text appears, as well as a listing of the text from which it was allegedly copied.

13.  In the absence of such information, allegations are impossible even to analyze: imagine the publisher of the *Encyclopedia Americana* telling the publisher of the *Encyclopedia Britannica* "your encyclopedia contains material that was copied from us" and then refusing to specify what was copied (what text from which edition, volume and page of the *Americana*) or where it appears (which edition, volume and page of the *Britannica*).

## III.  THE REASON FOR MR. ROCHKIND'S DISAGREEMENT

14.  Mr. Rochkind disagrees with my conclusion that the 198 Items are not disclosed with the requisite specificity.  The primary reason for this disagreement is that

---

[2] Each complete version of an operating system is typically given a distinct "release number," as, for example, version 2.6.9 of Linux. The version counts given above list the number of distinct versions shown in the Declaration of Todd Shaughnessy, dated April 4, 2006; the total lines of text cited report all text contained in both the complete versions and any additional "patches" (i.e., incremental changes), as listed in the Shaughnessy Declaration.

he used a very different test to evaluate specificity than I did.  When the test that I understand to be the correct test is applied, the 198 Items come nowhere close to passing muster.

15.  I was instructed by counsel for IBM to evaluate the 198 Items based on the language of the Court's orders of December 12, 2003, March 3, 2004, and July 1, 2005. As described in Exhibit A, I understand the orders to require the disclosure of the allegedly misused material by version, file and line of code.  That is the standard (and most precise) means of identifying the code, methods and concepts, and concepts of an operating system.

16.  The Court's Order of December 12, 2003, states that SCO is required:

(1)  "To identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM."  (¶ 4.)

(2)  "To respond fully and in detail to Interrogatory Nos. 1-9 as stated in IBM's First Set of Interrogatories" (¶ 1), which provide, for example, as follows:

> **Interrogatory 1**:  "Please identify, with specificity (by product, file and line of code, where appropriate) all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused, . . . ."
>
> **Interrogatory 3:**  "Please . . . describe, in detail, . . . all places or locations where the alleged trade secret or confidential information may be found or accessed."
>
> **Interrogatory 4:**  "Please describe, in detail, . . . with respect to any code or method plaintiff alleges or contends that IBM misappropriated or misused, the location of each portion of such code or method in any product, such as AIX, in Linux, in open source, or in the public domain."

(3)  "To respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories" (¶ 2), which provide, for example, as follows:

> **Interrogatory 12:**  "Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux . . . to

> which plaintiff has rights; and . . . how the code or other material
> derives from UNIX."

> **Interrogatory 13:**  "[P]lease . . . describe in detail how IBM is
> alleged to have infringed plaintiff's rights. . . ."

17.   The Court's Order of March 3, 2004, required SCO to:  (1) "provide and

identify *all specific lines of code* that IBM is alleged to have contributed to Linux from

either AIX or Dynix" (¶ 2), (2) "provide and identify *all specific lines of code from Unix

System V* from which IBM's contributions from AIX or Dynix are alleged to be derived"

(¶ 3), and (3) "provide and identify *with specificity all lines of code in Linux* that it claims

rights to" (¶ 4, emphasis added).  It is difficult to imagine instructions that are any clearer,

more specific, or more unambiguous.

18.   The Court's Order of July 1, 2005 (at 4) reiterated SCO's obligations to

specify its claims and ordered it to update its interrogatories accordingly.

19.   Note that the Court's orders required no more of SCO than SCO required of

IBM.  In its First Request for Production of Documents, SCO defined the term "identify"

as follows:

> "DEFINITIONS AND INSTRUCTIONS . . .

> The term "identify" shall mean: . . .

> e.  in the case of alleged trade secrets or confidential or proprietary
> information, whether computer code, <u>methods</u>, or otherwise, to give a
> complete and detailed description of such trade secrets or confidential or
> proprietary information, including but not limited to an identification of the
> <u>specific lines and portions of code</u> claimed as trade secrets or confidential
> or proprietary information, and the location (by module name, <u>file name</u>,
> sequence number or otherwise) of those lines of code within any larger
> software product or property."  (Exhibit B (emphasis added).)

I understand that SCO subsequently incorporated this identical definition in eight

additional document requests, five additional sets of interrogatories, seven 30(b)(6)

deposition notices, and three requests for admission, the latest of which was served on March 10, 2006.  Thus, SCO itself has continuously demanded the same degree of specificity ordered by the Court and requested by IBM.

20.  Despite the language of the Court's orders, and of SCO's own discovery requests, the Final Disclosures do not provide version, file and line information for each of the 198 Challenged Items.  As is illustrated in my original declaration (Addendum B), and summarized in the following table, SCO provides version, file and line information for very few of  the Challenged Items:

|  | Version(s) | File(s) | Line(s) |
|---|---|---|---|
| System V | 1 | 1 | 0 |
| AIX | 1 | 1 | 0 |
| Dynix | 2 | 3 | 0 |
| Linux | 27 | 149 | 3 |

Note that there is not even one Item for which SCO provides a *complete* set of coordinates.

21.  Mr. Rochkind does not seem to disagree that SCO has not provided a complete set of coordinates for each of the 198 Items.  Instead, he asserts that, with respect to many of the Items, SCO has provided sufficient detail relating to claims because it has summarized its allegations of misuse, provided documents relating to the alleged misuse, identified persons involved in the alleged misuse and/or pointed IBM to source code.  (Rochkind Decl. ¶ 9.)

22.  It is true that SCO has, for most of the Items, summarized its allegations, listed persons involved in the alleged misuse and referred IBM to certain documents. That is simply not the appropriate measure of compliance, as I understand the Court's orders.  Nor would it be the appropriate measure of compliance under SCO's own discovery requests.  Mr. Rochkind's declaration defines his own standard of specificity and asserts that SCO's Final Disclosures, of which Mr. Rochkind claims to be the primary author, meet the standard.

23.  Putting aside the language of the Court's orders, it is difficult to consider the information SCO has provided as sufficiently specific when (1) many of the summaries are extremely general (*e.g.*, Item 180 claims only that IBM misused the "internals" of System V Release 4, without any mention of which part of the several-million-line operating system was misused); (2) the documents provided are mostly documents that IBM provided to SCO, and they tell IBM little more than it would have known before SCO filed its complaint; (3) for many of the Items, SCO does not identify any individuals, it says only "IBM"; and (4) according to Exhibit B to Mr. Rochkind's declaration, SCO identified code with respect to no more than 16 of the 198 Items.

24.  If the Court's orders required only that SCO provide some minimal, additional information about its allegations, then I agree with Mr. Rochkind that it has done that.  If they required that SCO provide the standard coordinates for identifying allegedly misused aspects of an operating system (code, methods and concepts), then SCO's disclosures regarding the 198 Items fall far short.  For some of the Items (*e.g.*, Item 93), the Final Disclosures reveal little more than the minimal description found in SCO's Complaint.

## IV.  MR. ROCHKIND'S ASSERTIONS ABOUT METHODS AND CONCEPTS

25.  Rather than disagree with the fact that SCO has not provided version, file and line information regarding any of the 198 Items, Mr. Rochkind devotes the better part of his declaration to rationalizing SCO's decision *not* to provide the information.  Contrary to Mr. Rochkind's suggestion, however, there is no reason SCO could not have provided the missing information with respect to its methods and concepts-misuse allegations, as well as its code-misuse allegations.

26.  To begin, Mr. Rochkind seems to suggest that virtually all of the 198 Items concern methods and concepts rather than source code.  (Rochkind Decl. ¶¶ 8-9.) According to Mr. Rochkind, less information is required to evaluate a method than is required to evaluate code.  (Rochkind Decl. ¶ 10.)  Thus, Mr. Rochkind states, there was no need for SCO to identify version, file and line information relating to methods and concepts.  (Rochkind Decl. ¶ 10.)  Putting aside the fact that the Court's orders -- on their face -- require version, file and line information for methods and concepts as well as code, Mr. Rochkind is mistaken both as to the number of Items that concern methods and concepts and the information needed fully to evaluate operating-system methods and concepts.

27.  Contrary to Mr. Rochkind's suggestion, a significant portion of the 198 Items concern the alleged misuse of code.  As described in Exhibit C, the language of many of the challenged Items themselves relate to the alleged misuse of code.  For example:

Item 17:

Item 22:

Item 27:

Thus, it is simply wrong for SCO's Mr. Rochkind to imply that the only Items in dispute concern methods and concepts.

28.   Mr. Rochkind suggests that all Items of allegedly misused of code are disclosed by SCO with appropriate line specificity.  That is unfortunately patently false and Mr. Rochkind is ignoring dozens of the 198 challenged Items that do concern alleged code misuse.  In fact, many of the Items that clearly concern the alleged misuse of code comprise SCO's most *imprecise* allegations.  In 39 of the Items (Items 232 to 270), for example, SCO accuses IBM of making improper reference to Dynix source code as a basis for writing additional code, while providing essentially no further information.  Each of these 39 items has an "Improper Disclosure" claim of the form:

where the blank contains things such as

and so forth.  That is, SCO is specifically accusing IBM of referring to Dynix *code* and System V *code*, and then using that as the basis for creating additional *code* (e.g.,

).  Yet there is absolutely no specification of any kind (no version, file, or line numbers) of which Unix code was allegedly referenced, or of which Dynix code was allegedly referenced.  IBM is left to guess as to which of the 470,000-plus files and 156 million-plus lines of Dynix code included within SCO's vague claims are in fact challenged by these Items.

29.   As if to further justify SCO's failure to provide version, file and line information, Mr. Rochkind suggests that it is not possible to identify version, file and line coordinates with respect to methods and concepts.  (Rochkind Decl. ¶ 10.)  That is simply

incorrect.  The methods and concepts employed in an operating system (or any computer

program) *are in the source code*.  It could not be otherwise:  The source code of a

program specifies all of its possible behavior.  If that behavior truly embodies a method,

that method must be expressed in specific lines of the source code; there is just no other

way to do it.

30.  Consider, for example, Item 146, which alleges (among other things) that

IBM improperly disclosed a method called                             .  Simply put, the

method suggests ways of finding performance bottlenecks by counting the events that

happen inside a program and then analyzing those counts.  But the counting and analyzing

can be done only by *code*, i.e., source code written to keep track of the number of times an

event happens and written to analyze the counts as explained in the method.  Any time a

method is used, it can only be because there is source code that implements it.  It really is

that simple.  Hence, if System V, AIX, Dynix or Linux used that method, they must

contain source code that implements it, and SCO ought to cite the specific lines of code.

31.  Although, as Mr. Rochkind states (Rochkind Decl. ¶ 10), methods and

concepts are sometimes discussed in text books without reference to source code, such

discussions are, most often, at a high level of generality.  The mere fact that a method can

be discussed generally without referring to source code does not mean that its

corresponding source code cannot be identified.  It can, and SCO--having alleged that

System V, AIX, Dynix or Linux code somewhere embody a method--bears the

responsibility of identifying the specific code it claims embodies that method.

32.  The disclosure of the corresponding source code also greatly aids in

understanding the method, as Mr. Rochkind's own text illustrates.  Despite his attempt to

make the identification of source code seem irrelevant to the identification of methods and

concepts (Rochkind Decl. ¶ 10), his own book on the subject of operating systems, Advanced Unix Programming (2d ed. 2004), (which he asserts, "explain[s] in detail how to use UNIX system calls" (¶ 5)) devotes considerable space to describing methods and concepts with reference to source code. For example, it states that "this new book includes thousands of lines of example code". (xii) Indeed, his chapter devoted to "Fundamental Concepts" describes UNIX concepts using, in many cases, nearly full-page excerpts of source code and even refers back to his own website to offer complete code listings where the excerpts are not enough. (*See*, *e.g.*, *id.* at 24-38. (Exhibit D).)

33. SCO's Chief Technology Officer, Sandeep Gupta, testified concerning the importance of having version, file and line information with respect to methods and concepts. Mr. Gupta was asked the following questions and provided the following answers:

34.  Furthermore, as stated, SCO itself specifically demanded that IBM identify methods and concepts with reference to files and lines of code.  It did that, no doubt, because the standard means of identifying an operating system method with specificity is by file and line of code.  I assume SCO would not have demanded that IBM provide information that could not be provided.

35.  In truth, it is even more important to have version, file and line information regarding methods and concepts claims than it is to have the information for code claims.  When specific lines of source code are identified by a plaintiff who alleges they have been improperly copied, a defendant can at least automate the process of looking for literal infringement:  he can set a computer to work searching through his own code to see if it contains the lines identified by the plaintiff.

36.  But the same cannot be said for methods and concepts.  Consider once again the alleged "Improper Disclosure" in Item 146:

There are no automated techniques for finding the lines of code that embody that method.  Because they are abstractions, methods and concepts must instead be located by manual review of the code, and given that there are between tens of millions (System V) and billions (AIX, Linux) of lines to be searched, locating such methods and concepts are simply untenable here.  Given the size of the code base here, manual review is, as a practical matter, an impossible task.[3]  Hence, without a specification by SCO of

---

[3] Returning to our analogy of the two encyclopedias, imagine that the *Americana* accused the *Britannica* of copying a specific passage of *Americana's* text.  *Britannica*

the location of the code implementing the method, the claim cannot be adequately analyzed.

## V. DEFENDING AGAINST SCO'S CLAIMS

37.  I stated in my original declaration that SCO's failure to provide version, file and line information makes it impossible, practically speaking, for IBM to defend itself. Mr. Rochkind disagrees.  (Rochkind Decl. ¶ 7.)  However, his view is supported only by naked assertions and does not survive even the weakest scrutiny.

38.  The kinds of questions that must be asked to defend against SCO's allegations are not a secret.  They have been involved (more or less) in each of the 30-plus cases in which I have been retained as an expert to deal with alleged misappropriation of intellectual property, including in *Computer Associate*s *v. Altai,* in which I served as an expert appointed by and for the Court.

39.  Among the many questions IBM must answer are the following:

- Did IBM offer the Item to Linux?

- Did the Item originate in or derive from System V and AIX or Dynix?

- Was the Item accepted into Linux and, if so, when and to what effect?

- Is the Item copyrightable (or is it unoriginal; a mere idea, process or procedure; dictated by externalities; or in the public domain)?

- Has the disclosure of the Item or its inclusion in Linux had a negative effect on SCO or a positive impact on IBM?

---

could do an automated search for that text. But imagine instead if *Americana* accused *Britannica* of using what *Americana* claimed to be its proprietary "non-Eurocentric method of describing history" (*i.e.*, ensuring a more global, inclusive world view), and then refused to give any information about which edition(s), volume(s) or page(s) in *Britannica* had done that. Consider the nature and difficulty of the task *Britannica* would face in trying to find places that had used that method.

I do not understand Mr. Rochkind to dispute the relevance of these questions, which must be answered on a line-by-line basis.

40.   Many thousands of persons have contributed to the development of Linux, and IBM has made many contributions to Linux, some of which represent only a few lines of code in a file comprised of hundreds of lines of code.  The only way to know whether IBM made a given contribution is to know precisely what the alleged contribution is.  Similarly, whether a given contribution originated in, or is derived from, System V, AIX or Dynix is a line-specific inquiry.  One line may have; another may not.  Version, file and line information is no less critical to determining whether a line of code--and especially a method--is in Linux, since it is composed of millions of lines of codes and many thousands of methods and concepts and concepts.

41.   To determine whether an Item is copyrightable requires line information because that is the only way to assess originality, determine whether the line is merely an idea, process or procedure, evaluate whether the Item is dictated by programming practices, governed by standards, or in the public domain.  These questions simply defy generalized examination.  In a given file, one line might be original, whereas another might not; one might be in the public domain, whereas another might not; and so on.  For these same reasons, it is also not possible to evaluate whether a method has a positive impact on Linux and IBM (or a detrimental impact on SCO) without understanding precisely what it is.

42.   Absent the production of the version, file and line information referenced in the Court's orders, it is very difficult, if not impossible, to answer these questions.  As described in the Declaration of Todd Shaughnessy, dated April 4, 2006, the size of the code bases implicated by SCO's claims is enormous.

| Operating System | Version(s) | File(s) | Line(s) |
|---|---|---|---|
| System V | 11 | 112,622 | 23,802,817 |
| AIX | 9 | 1,079,986 | 1,216,698,259 |
| Dynix | 37 | 472,176 | 156,757,842 |
| Linux | 597 | 3,485,859 | 1,394,381,543 |
| Total: | 654 | 5,150,643 | 2,791,640,461 |

43.  Mr. Rochkind does not disagree that the implicated code base is enormous. Nor does he disagree that SCO's Chris Sontag provided sworn testimony early in the case that it would take 25,000 person-years to review a code data base .2% the size of the stack of code at issue.  Mr. Rochkind states only that he has helped SCO to provide enough information for IBM to find the 198 needles in the haystack.  Having helped to decide what the needles are, Mr. Rochkind may well feel as if he knows what they are.  But I do not.  Nor do I believe that other independent experts would.

44.  Examining the only Item specifically mentioned in Mr. Rochkind's declaration, Item 146, makes the point.  In Item 146, SCO complains about IBM's                            by reference to:  (1) an email asking for help with a performance problem, (2) an email response with a suggested analysis technique (differential profiling), (3) a technical paper written by Paul McKenney, (4) a URL reference to scripts that might be of help, and (5) a list of 11 Linux files (names only, no versions or lines).  Contrary to Mr. Rochkind's claim that I ignored these materials, in fact it was by examining them closely that I concluded, as stated in my original declaration, that SCO has provided no meaningful information about what IBM is alleged to have done wrong.

45.   The claim in Item 146 is sufficiently vague as to lead to several different interpretations.  As it takes several pages to analyze all of the possible interpretations, and to point out all of Mr. Rochkind's errors, I have put the analysis in Exhibit F.  The details can be found there; the summary points are simple enough:

- Mr. Rochkind points out that the email cited in Item 146 contains

   and                                                                    He conveniently overlooks the fact that the

   , are all the "before" version of the code.  That is, the

   contain the code that *didn't work* well enough, the code that the application of differential profiling was supposed to help repair.  There is in fact no code cited that is alleged actually to contain the use of the method.

- Mr. Rochkind points out that there is

   Indeed there is, and the paper was published in the open literature in 1995 (the 1995 IEEE MASCOTS Symposium), six years prior to the email in question.

- As Mr. Rochkind points out, there are                      specified in Item 146, but, as he omits to mention, no specific version of Linux is cited.  Even so, unfortunately for his position, none of these files appears to deal with differential profiling.[4]

---

[4] Item 146 indicates yet another level of difficulty in deciphering SCO's claims: even where SCO *does* specify file names (but still not versions or line numbers), IBM *still* has to guess what SCO is talking about: 4 of the 11 Linux filenames in SCO's Item 146 are simply incorrect: there is no Linux file named arch/i386/oprofile/rmi_int.c, arch/i386/oprofile/rmi_int.c, arch/i386/oprofile/op_counter.c, or arch/i386/oprofile/op_x86_model.c. There are files whose names are close to these, and are likely what was intended, but this presents yet another step IBM must take to determine what SCO actually means.

46.   As described in Exhibit F, rather than clearly state its claims to Item 146, SCO identifies a series of dots and leaves IBM to try to connect them.  The problem is they do not connect.  At most they leave IBM to guess as to which of any number of claims SCO might actually be making.  To defend itself, IBM is left to respond not just to what is at issue -- which is not clear -- but to all of the possibilities.  For Items like Item 146, there are at least a handful of possibilities.  As to other items, the possibilities are almost innumerable.  When SCO accuses IBM of misusing the internals of System V (*e.g.*, Item 180) or of misusing its experience with Dynix/ptx, for example, SCO accuses IBM of misusing any one of the millions of lines of code and the thousands of methods and concepts contained in these operating systems.

47.   Even if IBM could feasibly chase all of the possibilities held open by the Final Disclosures (which clearly it could not do without years of additional effort), the generality, uncertainty and ambiguity inherent in the final disclosures are sure to lead to games of "where's the pea" during the expert and summary judgment phases of the case. Based on the information SCO has provided (or, more accurately, not provided), it is difficult to imagine any meaningful exchange of views among experts.  Likewise, a court can hardly evaluate at summary judgment what cannot be defined.  Had SCO provided full code coordinates for the allegedly misused material, games of "where's the pea" would not be possible.  SCO's claims could have been understood and analyzed. Unintentional allegations could have been eliminated.

48.   While I do not believe that IBM can fairly defend itself absent version, file and line information for each of the Items, it would -- at the risk of stating the obvious -- require a very significant period of time for IBM to conduct an investigation into the general allegations set out in the 198 Items.  Without engaging a very large corps of

experts, it would take years.  Even then it is very unlikely that IBM could succeed in learning what is ultimately known only to SCO:  its allegations.

## VI.  MR. ROCHKIND'S WILLFULNESS ASSERTIONS

49.  Finally, Mr. Rochkind addresses IBM's contention that SCO acted willfully in failing to provide version, file and line information.  (Rochkind Decl. ¶¶ 16-18.) Mr. Rochkind claims that IBM is wrong to state that SCO acted "willfully in not specifying its claims" and wrong that "SCO has declined, as a practical matter, to tell IBM what is in dispute."  (Rochkind Decl. ¶ 16.)  Here again, Mr. Rochkind's view appears to turn on his own, self-defined view of the appropriate standard.

50.  I am not a legal expert, and do not pretend to be an authority on the meaning of the term "willfully" for purposes of a court's deciding whether a party should be limited in submitting evidence in support of its claims.  In responding to Mr. Rochkind's assertion, however, I rely on the definition of the term used in the cases provided by counsel for IBM, *e.g.*, *Schroeder v. Southwest Airlines*, 129 Fed. Appx. 481, 484-85, 2005 WL 984495 (10th Cir. 2005) (holding that "[w]illful failure means 'any intentional failure as distinguished from involuntary noncompliance.  No wrongful intent need be shown'"); *F.D.I.C. v. Daily*, 956 F.2d 277, 1992 WL 43488, at *3-6 (10th Cir. 1992) (same); and *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987) (same).

51.  Using the definition of "willfully" set out in these cases, I have no difficulty concluding that SCO acted "willfully" in submitting its Final Disclosures and omitting the information called for in the Court's orders.  The Court's orders clearly call for version, file and line information, with respect both to code and methods and concepts. Identifying code and methods and concepts by version, file and line of code is the standard method of identifying operating system source code and methods and concepts

with specificity.  SCO asked nothing less than this of IBM.  There is no reason it could

not be provided here.  Indeed, without it, the 198 Items are too vague and indefinite to

permit complete analysis.

52.  As Mr. Rochkind's declaration makes clear, SCO does not claim to have

assembled the Final Disclosures unwittingly.  It plainly did not, as evidenced by the fact

that SCO provides version, file and line information for a number of Items that are not

challenged in this motion.  There is no dispute that SCO made a deliberate decision to

provide the information it provided and the information it did not.  (Rochkind Decl. ¶ 10.)

And SCO deliberately created a different standard to apply to itself than it demanded of

IBM, and the court required.  SCO's failure to provide version, file and line information

was not unknowing or inadvertent.

53.  Moreover, the information omitted from SCO's disclosures is unquestionably

within SCO's control.  (Rochkind Decl. ¶ 14 n.3.)  The Court's orders, as I understand

them, direct SCO (in substantial part) to make its allegations specific.  For example, to the

extent SCO claims that IBM improperly used Dynix code and methods and concepts in

contributing to Linux (and the vast majority of SCO's allegations are of this type), the

orders (on their face) require SCO to "describe, in detail, . . . with respect to any code or

method plaintiff alleges or contends that IBM misappropriated or misused, the location of

each portion of code or method in any product."  Only SCO knows what it alleges.  No

amount of investigation by IBM can connect the dots.  Yet SCO systematically omitted

this information from the 198 Items as described in Addendum B to my initial declaration.

54.  In sum, Mr. Rochkind's claim that SCO did not willfully withhold

information in its possession with respect to version, file and line of code misses the

point.  As has been demonstrated, it is possible to obtain version, file and line information

with respect to methods and concepts if an effort to do so is undertaken.  SCO, simply put, has willfully failed to undertake any such effort.

## VII.  CONCLUSION

55.  Upon careful review of Mr. Rochkind's declaration, I find that he fails even to address the central assertions in my opening declaration.  He does not -- and could not -- dispute that SCO has not provided version, file and line information regarding each of the 198 Items at issue in IBM's motion

56.  There is no reason SCO could not have provided this information, including with respect to methods and concepts, for which it is even more necessary, not less necessary.  SCO's own discovery demands make the point.

57.  Without the missing information, IBM lacks precisely the kind of information needed to conduct a basic inquiry relating to the facts of SCO's claims.  Given enough time, IBM might be able to discover some of the information SCO has failed to provide. It will never be able to find all of the information, however, because only SCO knows its allegations.

58.  It is for this reason, in significant part, that I have no difficulty disagreeing with Mr. Rochkind's statements regarding willfulness.  To my knowledge, SCO has never argued (and could not credibly argue) that SCO's failure to provide version, file and line information was an oversight.

59. I declare under the penalty of perjury that the foregoing is true and correct.

Randall Davis

Date: 28 april 06

Place: Cambridge, MA

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April, 2006, I electronically filed the foregoing

Rebuttal Declaration of Randall Davis, in redacted form, with the Clerk of Court using the

CM/ECF system, which sent notification of such filing to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, UT 84101
> bhatch@hjdlaw.com
> mjames@hjdlaw.com

I further certify that on the 1st day of May, 2006, a true and correct copy of the foregoing was
sent by U.S. Mail, postage prepaid, to:

> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, FL 33131
>
> Robert Silver
> Edward Normand
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, NY 10504

/s/ Todd M. Shaughnessy