Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **MEMORANDUM IN SUPPORT OF SCO'S MOTION FOR <u>IN CAMERA</u> REVIEW OF ALLEGEDLY PRIVILEGED DOCUMENTS** <br><br> Case No. 2:03CV0294DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this memorandum in support of its Motion for in Camera Review of Allegedly Privileged Documents.

## Preliminary Statement

SCO respectfully moves this Court to compel IBM to produce in camera three documents that IBM has withdrawn based on a claim of inadvertent disclosure of attorney-client privileged material. IBM sought to withdraw the documents from their production, on the grounds of alleged attorney-client privilege, after counsel for SCO had reviewed the documents as part of its document review and, with respect to certain documents, sought to use the documents in the course of depositions. Accordingly, counsel for SCO has had occasion to review the documents at issue. On the basis of that review and of counsel's recognizance of the documents when compiling them for purposes of destroying them in response to IBM's assertion of attorney-client privilege and in reviewing the transcripts of depositions, SCO respectfully submits that the documents are not privileged.

## Background and Certificate of Meet and Confer Compliance

On January 13, 2006, counsel for IBM sent a letter to SCO identifying in the text of the letter several documents that at depositions IBM had reclaimed as privileged over the course of the preceding few months and attaching a document listing the bates stamp numbers of numerous other documents that IBM was reclaiming as privileged (but which IBM had not previously communicated to SCO that IBM was claiming as privileged).

Counsel for IBM informed counsel for SCO after receipt of the January 13 letter that it was IBM's view that, under the rules governing the claim of privilege over a previously produced document in litigation, SCO could not file a motion regarding the claim of privilege until such time as IBM had provided SCO with a privilege-log description of the basis for the

claim of privilege over the recalled document. Counsel for IBM also informed counsel for SCO that SCO could not file such a motion in good faith until, after receiving such privilege-log information from IBM, counsel for SCO had conferred with counsel for IBM regarding the basis for the claim of privilege. In an abundance of caution, counsel for SCO has honored IBM's repeated representations that it would provide the promised privilege-log information for the documents at issue in this Motion, but such information was not been forthcoming.

Indeed, after receipt of the January 13 letter, counsel for SCO repeatedly asked IBM to provide the privilege-log information for the documents identified in the first paragraph of the January 13 letter. IBM for months repeatedly declined to provide that information. In sum:

1. In early February, during a status call, counsel for SCO asked counsel for IBM to determine if it was IBM's view that by that time it had produced a privilege log for the documents identified in the January 13 letter.

2. On February 6, in follow-up to the call the previous week, counsel for SCO informed counsel for IBM that "IBM has not produced a privilege log containing any of the documents identified in Greg Lembrich's January 13 letter to me regarding the several documents that IBM is recalling as privileged from its production to SCO." (Exh. A.) Counsel for SCO asked that IBM "please provide SCO with a privilege log identifying those documents in the January 13 letter." (Id.)

3. On February 10, during a status call, counsel for IBM informed counsel for SCO "that IBM is in the process of updating its privilege log to account for productions since the last log was prepared." (Exh. B.)

4. On February 16, during a status call, counsel for SCO asked counsel for IBM about the requested privilege log. On February 17, in follow-up to the February 16 call, counsel

3

for SCO noted for IBM "certain SCO inquiries re IBM document production that I believe are outstanding," and included the "inquiries to you last week (on February 6, for example) regarding a privilege log containing the documents identified in the text of Greg Lembrich's January 13 letter to me regarding the several documents that IBM is recalling as privileged." (Exh. C.) On February 27, in response, counsel for IBM informed counsel for SCO that "IBM is preparing an updated privilege log. We hope to have that completed by next week." (Exh. D.)

5. On March 7, during a status call, counsel for SCO asked counsel for IBM to provide a privilege log for at least the documents identified in the text of the January 13 letter. On March 8, in follow-up to the March 7 call, counsel for SCO reiterated the request in writing "to confirm that IBM is making an effort this week to send us a privilege log for (at least) the documents identified in the text of the mid-January letter to me regarding documents that IBM had claimed as privileged in depositions and otherwise in the previous months." (Exh. E.)

6. On March 8, in response, counsel for IBM informed counsel for SCO that "I believe (though I'm not positive) that the plan is to get you a fully-updated privilege log by the end of the week." (Exh. F.) On March 9, in response, counsel for SCO stated to counsel for IBM: "Please confirm on your end when IBM plans to send us the privilege-log entries for the mid-January letter." (Exh. G.) Also on March 9, in response to an e-mail from counsel for IBM, counsel for SCO reiterated and re-emphasized "the plain distinction between SCO's request for the limited log on the documents identified in the mid-January letter versus the much, much larger supplemental log SCO has been preparing for many weeks (like the much, much larger supplemental log IBM has been preparing during that time)." (Exh. H.)

7. Counsel for IBM did not respond to the foregoing e-mail, but during the week of March 13 informed counsel for SCO that IBM had prepared an updated privilege log but that IBM had been unable to produce it due to certain technical problems.

8. On March 27, in follow-up to the call during the week of March 13, counsel for SCO reminded counsel for IBM of the earlier discussions and asked that IBM "let me know if those technical problems have been solved and if IBM plans to produce the log this week." (Exh. I.) In response, on March 27, counsel for IBM informed counsel for SCO: "I'm told you should have it on Wednesday." (Exh. J.)

9. Indeed, IBM produced the privilege log to SCO on March 29. But after extensive searching, SCO and its counsel were able to identify only one of the documents at issue in this Motion (bates number 181014955-56) in the log.

10. On April 10, counsel for SCO informed counsel for IBM that SCO had been unable to locate many of the documents identified in the text of the January 13 letter in IBM's privilege log. Counsel for SCO informed counsel for IBM that he would send a list of documents, identified as specifically as SCO could (from either recollection or any privilege-log entry to be found), as to which SCO believes IBM had incorrectly asserted a claim of privilege.

11. On April 17, counsel for SCO sent counsel for IBM a list of seven (7) documents, identified as specifically as SCO could (from either recollection or any privilege-log entry), as to which SCO believes IBM had incorrectly asserted a claim of privilege. (Exh. K.) The documents, as described to IBM, are:

- The document with "Summary" in the title describing the terms of the Project Monterey JDA, dated 1998, 1999 or 2000. We believe that at least one version of this document is bates stamped 1710091731-37 (withdrawn during the deposition of David Bullis). The document did not appear to be written in the anticipation of any litigation.

5

- The e-mail from David Bullis dated October 25, 2000, and bates number 1710069294-95. Withdrawn prior to Mr. Bullis's deposition. The message does not appear to be written by or to any attorney, or to have been written at the direction of any attorney in the anticipation of any litigation.

- The e-mail from Warren Washington dated January 27, 2001, and the e-mail from Rose Ann Roth dated January 29, 2001, bates number 181014955-56. The e-mail does not appear to be written by or to any attorney, or to have been written at the direction of any attorney in the anticipation of any litigation.

- The e-mail from Helene Armitage dated April 4, 2001, and bates number 18102849-50. This e-mail did not appear to be written by or to any attorney, or at the direction of any attorney in the anticipation of any litigation.

- The "Journaled File System for Raptor" or "JFS for Raptor" document, dated approximately 1995. We believe this is the one bates stamped 1710253133-41 (referred to in the transcript of the deposition of William Baker). This document does not appear to be written at the direction of any attorney in the anticipation of any litigation.

- The "Journaled File System for Warp" or "JFS for Warp" document, dated approximately 1995. We believe this is the one bates stamped 1710253142-59 (referred to in the transcript of the deposition of William Baker). This document does not appear to be written at the direction of any attorney in the anticipation of any litigation.

- The document addressing IBM's considerations of issues regarding open source. Approximately twenty-five pages, dated 1998 or 1999. Dan Frye's name is on the front. The document uses the phrase "halo effect." This document does not appear to be written at the direction of any attorney in the anticipation of any litigation.

Counsel for SCO stated: "Please let me know if IBM will continue to assert a privilege over the foregoing documents, and if, as part of the meet-and-confer process, please explain why." (Id.) Counsel then reiterated yet again: "Please also let me know when you expect IBM to be able to identify for SCO the privilege-log entries for the documents identified in the text of Gregg Lembrich's January 13 letter." (Id.)

12. Counsel for SCO forwarded the foregoing message to Amy Sorensen of Snell & Wilmer upon receiving a notice that the attorney to whom the April 17 e-mail was directed was

out of the office. Ms. Sorensen represented that "I received your email and am looking into the documents you identify," and "will get back to you as soon as I can." (Exh. L.)

13. Having received no response to the foregoing emails, counsel for SCO informed counsel for IBM on May 2 that he had exhausted his obligations to try to meet and confer with IBM regarding the seven documents at issue in this Motion (which are a subset of the document for which SCO has been seeking basic privilege-log information and a defense of the assertion of privilege for almost three months), and that SCO intended to file a motion on May 5.

14. Counsel for IBM during that discussion informed counsel for SCO yet again that IBM planned to provide privilege-log information for the documents and continued to assert that SCO should await that information and speak with counsel for IBM about it before filing any motion. Counsel for SCO stated his disagreement, explained that he had been waiting for and had been repeatedly promised that information for months, and that the documents were relevant to work that would be done by SCO's experts during expert discovery.

15. On May 4, counsel for IBM informed counsel for SCO that IBM would send to SCO the privilege-log entries for the documents at issue on the morning on May 5. (Exh. M.) Counsel for SCO received those entries in the afternoon on May 5. (Exh. N.) Having reviewed those entries, SCO remains of the view that the following documents are not privileged:

- <u>Exh. N Entry No. 22</u>: Memorandum dated April 11, 2000 (withdrawn during the deposition of David Bullis).

- <u>Exh. N Entry No. 11</u>: Memorandum dated March 21, 1995 (withdrawn during the the deposition of William Baker).

- <u>Exh. N Entry No. 12</u>: Memorandum dated February 15, 1996 & March 13, 1996 (withdrawn during the deposition of William Baker).

Where the documents at issue are relevant to the work of SCO's experts, IBM's significant delay in providing the requested information compels SCO to file this Motion at this time in order to have the Court rule on IBM's claim of privilege so that SCO's experts can address the documents, if appropriate, during expert discovery.

**Argument**

As the party asserting the attorney-client privilege, IBM has the burden of establishing its applicability. In re Grand Jury Subpoenas, 144 F.3d 653, 658 (10th Cir. 1998). "The privilege is governed by the common law and is to be strictly construed." Id. (citing Trammel v. United States, 445 U.S. 40, 47, 50 (1980)).

The mere fact that an attorney may have reviewed or approved the document does not render the document privileged. "'Clients and their attorneys often assume, erroneously, that merely conveying something to an attorney will cloak the underlying facts from disclosure. It will not.'" Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001) (Exh. 1) (quoting Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 48 (4th ed. 2001)). "Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged merely by attaching them to a communication with the attorney." Pacamar Bearings, Inc. v. Minebea Co., 918 F. Supp. 491, 511 (D.N.H. 1996); see also P&B Marina, L.P. v. Logrande, 136 F.R.D. 50, 56 (E.D.N.Y. 1991) ("Merely attaching . . . documents to attorney-client communications does not constitute a basis for assigning the privilege."). Indeed, "the mere fact of submission of a document to counsel for legal input is not a protected communication." Burton v. R.J. Reynolds Tobacco Co., 200 F.R.D. 661, 670 (D. Kan. 2001); accord Adams v. Gateway, Inc., No.2:02-CV-106, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (Exh. 2).

Although neither the Federal Rules of Civil Procedure nor the Attorney Planning Report addresses the issue, both relevant precedent and the Proposed Amendment to Fed. R. Civ. P. 26 specify that the Court may review allegedly attorney-client privileged documents <u>in camera</u> to assess the claim of privilege. See <u>FDIC v. United Pac. Ins. Co.</u>, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998) (<u>suggesting in camera</u> review <u>on remand</u>); <u>Adams</u>, 2003 WL 23787856, at *17-21 (upon <u>in camera</u> review, no privilege found); <u>W. Resources, Inc. v. Union Pac. R. Co.</u>, No. 00-2043-CM, 2002 WL 1822412, at *3 (D. Kan. June 26, 2002) (upon <u>in camera</u> review, no privilege found) (Exh. 3).

Proposed amended Rule 26(b)(5)(B) would clarify an ambiguous area of the law by stating expressly that after being notified of a claim of privilege over a document that had been produced in the litigation, "a party must promptly return, sequester, or destroy the specified information," and "may promptly present the information to the court under seal for a determination of the claim." <u>Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure</u> (Sept. 2005). The introduction to the proposed amendment explains that the "proposed rule is also revised to include what many comments recommended: a provision authorizing the receiving party to submit the information asserted to be privileged or protected under seal to the court." SCO has destroyed its copies of the documents at issue, but cites the proposed amendment to underscore the propriety of its request that the Court review the documents at issue and give SCO an opportunity to review them at that time as well. Indeed, if the process of destroying all copies of documents that a party withdraws as privileged is to make any sense at all, it must contemplate that a moving party will at some point have the opportunity to see the documents again to argue the lack of privilege.

In addition, in the event the Court determines that certain of the documents are not privileged, SCO seeks leave to use those documents to depose the individuals at whose depositions SCO was precluded from asking the witness about the documents. The two documents concerning the Journaled File System, for example, were claimed as privileged by IBM during a Rule 30(b)(6) deposition. If those documents are not privileged, SCO should be permitted to obtain IBM's testimony regarding the documents. That is especially true where, as here, the document directly relates to the subject of expert testimony on both sides.

## Conclusion

SCO respectfully requests, for the foregoing reasons, that the Court order IBM to produce for *in camera* review, and at that time to give counsel for SCO the opportunity to review and argue from the documents themselves, the four documents identified herein.

DATED this 5th day of May, 2006.

        Respectfully submitted,

        HATCH, JAMES & DODGE, P.C.
        Brent O. Hatch
        Mark F. James

        BOIES, SCHILLER & FLEXNER LLP
        Robert Silver
        Stuart H. Singer
        Stephen N. Zack
        Edward Normand

        By /s/ Mark F. James

        *Counsel for The SCO Group, Inc.*

## Certificate of Service

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Motion to Compel Production of Allegedly Privileged Documents was served on IBM by first-class mail on the 5th day of May, 2006:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

/s/ Mark F. James