# Exhibit 3



Not Reported in F.Supp.2d                                                                                                              Page 2
Not Reported in F.Supp.2d, 2002 WL 1822412 (D.Kan.)
**(Cite as: 2002 WL 1822412 (D.Kan.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
WESTERN RESOURCES, INC., Plaintiff,
v.
UNION PACIFIC RAILROAD CO., et al.,
Defendants.
**No. 00-2043-CM.**

June 26, 2002.

**MEMORANDUM AND ORDER**

DAVID J. WAXSE, Magistrate Judge.

**\*1** Pursuant to this Court's Memorandum and Order dated January 31, 2002, Plaintiff submitted documents 3 and 330 as described in Western Resources, Inc.'s Second Amended Privilege Log for *in camera* inspection in order for the Court to determine whether the referenced documents are protected from disclosure by the attorney-client privilege and/or the work product doctrine. Upon *in camera* review of the documents, the Court is now ready to rule.

Kansas state law provides the rule of decision as to application of the attorney-client privilege. [FN1] Thus, the essential elements of the attorney-client privilege are: (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived. *State v. Maxwell,* 10 Kan.App.2d 62, 63, 691 P.2d 1316, 1319 (1984) (citation omitted); *see also,* K.S.A. 60-426 (1994).

> FN1. Actually, there is no real conflict between federal and Kansas law regarding the attorney-client privilege. *See Hiskett v. Wal-Mart Stores, Inc.,* 180 F.R.D. 403, 405 (D.Kan.1998); *Marten v. Yellow Freight Sys., Inc.,* No. Civ.A. 96-2013-GTV, 1998 WL 13244, at \*4-6 (D.Kan. Jan. 6, 1998). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions." *In re A.H. Robins Co.,* 107 F.R.D. 2, 8 (D.Kan.1985) (citation omitted.) Whether the court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau,* 150 F.R.D. 193, 196 n. 3 (D.Kan.1993) (citing K.S.A. 60-426; *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992)).

The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Marten v. Yellow Freight Sys., Inc.,* No. 96-2013-GTV, 1998 WL 13244, at \*6 (D.Kan.Jan.6, 1998) (quoting *Jones v. Boeing Co.,* 163 F.R.D. 15, 117 (D.Kan.1995)). The privilege also protects advice given by the lawyer in the course of representing the client. *See Upjohn Co. v.. United States,* 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1370-71 (10th Cir.1997) (finding protection of communications from an attorney to a client in the course of providing legal advice is within the scope of the federal rule). The privilege, however, "is to be extended no more broadly than necessary to effectuate its purpose." *Great Plains Mut. Ins. Co.,* 150 F.R.D. at 196 (citation omitted). The party asserting the privilege bears the burden of establishing its existence. *Id.*

"Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies." *ERA Franchise Sys. v. Northern Ins. Co.,* 183 F.R.D. at 278 (citing *Boyer v. Bd of County Comm'rs.* 162 F.R.D. 687, 688 (D.Kan.1995)). "To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery." *Id.* at 278-79 (citing *National Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d | Page 2
Not Reported in F.Supp.2d, 2002 WL 1822412 (D.Kan.)
**(Cite as: 2002 WL 1822412 (D.Kan.))**

F.R.D. 562, 567 (D.Kan.1994)). "A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof." *Id.* (citing *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R .D. 496, 497 (D.Kan.1994)). Parties who withhold discovery on privilege grounds must "make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5).

 **\*2** The work product doctrine, which is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure [FN2], protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial. The purpose of the doctrine is to permit attorneys to prepare for litigation with a "certain degree of privacy," and without undue interference or fear of intrusion or exploitation of one's work by an adversary. *Hickman v.. Taylor,* 329 U.S. 495, 510-11 (1947).

> FN2. "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.,* 136 F.3d 695, 702 (10th Cir.1998) (citation omitted).

 As the asserting party, Plaintiff has the burden of establishing work product protection. *See McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 683 (D.Kan.2000); *Boyer v. Board of County Comm'rs,* 162 F.R .D. 687, 688 (D. Kan 1995). To carry that burden, Plaintiff must make a "clear showing" that the asserted objection applies. *See McCoo,* 192 F.R.D. at 683; *Ali v. Douglas Cable Communications, Ltd. Partnership,* 890 F.Supp. 993, 944 (D.Kan.1995). A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof. *McCoo,* 192 F.R.D. at 680. It is well settled that the party seeking to invoke work product immunity has the burden to establish *all elements* of the immunity and that this burden can be met only by an evidentiary showing based on competent evidence. *Id.* "That burden cannot be "discharged by mere conclusory or ipse dixit assertions." *Id.* (quotations and citations omitted). A party's failure to meet this burden when the trial court is asked to rule upon the existence of the work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *McCoo,* 192 F.R.D. at 680.

 To establish work product protection, Defendant must show that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D.Kan.2000) (citations omitted).

 • Document 330

 Plaintiff claim s the document 330 as identified on its privilege log is protected from disclosure by the attorney client privilege. Document 330 is described in Plaintiff's privilege log as follows:

 Internal correspondence concerning train consists and loading of JEC trains, sent to Tom Green for purposes of obtaining legal advice concerning potential legal consequences of possible alternative actions by Western under the transportation agreement.

 The referenced document was authored by Ronald Teeter (Plaintiff's Coal Director) and sent to William Jack Reid (Plaintiff's Director of Fuels) and carbon-copied to Thomas Grennan (Plaintiff's Executive Vice-President of Utilities and Thomas Green (Plaintiff's in-house attorney).

 **\*3** In support of privilege, Plaintiff argues that, although Mr. Reid is the addressee of the memo, Teeter copied Green to obtain Green's legal opinion concerning the appropriateness of the potential actions mentioned in the memo. Plaintiff further argues that, at the time Teeter authored the memo, Plaintiff was engaged in litigation with BNSF concerning rail service to Plaintiff's Lawrence and Tecumseh energy centers. Accordingly, Plaintiff concludes, Teeter wanted Green's legal advice before an operational decision would be made concerning the potential actions and concerning how the actions might affect Plaintiffs' rights under its Rail Transportation agreements with the railroads for rail service to JEC. Plaintiff maintains Teeter considered the memo to be confidential and not subject to disclosure to anyone other than Plaintiff's management.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 1822412 (D.Kan.)  
**(Cite as: 2002 WL 1822412 (D.Kan.))**

Page 3

In opposition, Defendants argue that document 330 concerns trains consists and loading of JEC trains, was sent by one business person to another and appears to be a non-privileged business document relevant to Plaintiff's claim that the Railroads' service to JEC was deficient.

Upon *in camera* review of document 330, and considering the parties' arguments, the Court finds Plaintiff has failed to establish applicability of the attorney-client privilege. *See* Jones v. Boeing Co., 163 F.R.D. 15, 17 (D.Kan.1995) (holding that a claim of privilege fails upon insufficient evidence as to any element). Accordingly, Plaintiff shall be required to produce the document.

• Document 3

Plaintiff claims document 3 is protected from disclosure by both the attorney client privilege and by the work product doctrine. Document 3 is described in Plaintiff's privilege log as follows:

Document discussing current and future fuel and rail transportation litigations that was prepared under the direction of attorney Tom Green. Using the Fuel Action Plan, Attorneys Green and Wilcox advised Western Senior Management about current and future litigation so that senior management, in turn, could make informed decisions about litigation strategies.

The document is authored by William Jack Reid (Plaintiff's Director of Fuels) and sent to Plaintiff's "Senior Management."

In support of protection, Plaintiff argues Document 3 was created by Reid at the express direction of and with assistance from Mr. Green, Plaintiff's in-house counsel. Plaintiff further argues that, regardless of the document's title, it is conspicuously labeled "confidential and privileged" and states that its purpose is to advice senior management of litigation. Plaintiff maintains Mr. Green instructed Reid to prepare the document and told Reid what information to include. Plaintiff further maintains the document contains Green's ideas and suggested actions concerning various litigation matters. Finally, Plaintiff maintains Reid provided the document to Plaintiff's senior management before meeting with Green so management would have the tools with which to make informed decisions about litigation strategies.

**\*4** In opposition to protection, Defendants argues document 3 is authored by a business person and addressed to senior management and appears, on its face, to be a plan to guide business decisions. Defendants further argue document 3 makes no express mention of an attorney and the fact that Plaintiff's lawyers may have referred to this document in providing legal advice to senior management does not protect the document from disclosure.

Upon *in camera* review of document 3, and considering the parties' arguments, the Court finds Plaintiff successfully has established applicability of the attorney-client privilege for all but the first and last two sections of the referenced documents. [FN3] Accordingly, Plaintiff shall be required to produce a redacted copy of the document consistent with the Court's finding..

> FN3. The referenced sections include the first paragraph on page 1 of the document, the last three paragraphs on page 3 of the document and the only paragraph on page 4 of the document.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 1822412 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

• 2:00cv02043 (Docket) (Jan. 24, 2000)

END OF DOCUMENT