SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN SUPPORT OF MOTION TO CONFINE SCO'S CLAIMS TO, AND STRIKE ALLEGATIONS IN EXCESS OF, THE FINAL DISCLOSURES** <br><br> **(EXPEDITED BRIEFING AND ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant/counterclaim-plaintiff IBM respectfully submits this memorandum in support of its motion to confine SCO's claims to, and strike allegations in excess of, its December 22, 2005 Disclosure of Material Allegedly Misused by IBM (the "Final Disclosures").

## Preliminary Statement

Long after the deadline for disclosing its allegations, SCO seeks by indirection to change them. In three of its eight expert reports, SCO alleges the misuse of material nowhere identified in the Final Disclosures, the very purpose of which was to fix the parties' allegations once and for all last year. Indeed, with respect to its allegation that Linux infringes SCO's alleged UNIX copyrights, SCO proffers expert testimony that has no support in the Final Disclosures and, if allowed, would reinvent the case at the eleventh hour. SCO's attempt to change its case not only violates the Court's scheduling order, but it is unduly prejudicial to IBM and the public interest and should not be allowed. SCO's expert reports should be stricken insofar as they make new, previously-undisclosed allegations of misconduct.

From the beginning of this case, IBM has asked SCO to specify its allegations of misconduct. SCO repeatedly declined, requiring the Court twice to order SCO to respond to IBM's discovery requests and to specify its allegations. When SCO still refused to specify its allegations, IBM moved for summary judgment. The Court recognized that SCO had failed to offer evidence in support of its claims but deferred resolving IBM's motions on the merits and established a final deadline for SCO to disclose any allegations of misuse it wished to pursue. In establishing a final deadline for the identification of allegedly misused material, the Court agreed with IBM that this case should be litigated based on timely disclosures. Notably, SCO stipulated and agreed with IBM that it was

1

400514.1

required to identify with specificity any and all material that it contends IBM misused in the Final Disclosures. Although SCO failed to particularize all of its allegations as required by the Court, it submitted the Final Disclosures late last year. (See Section I below.)

Despite the plain language of the Court's scheduling order and SCO's express stipulation and agreement, SCO now seeks, by way of its expert reports, to challenge as "misused" a mass of material nowhere identified in the Final Disclosures. SCO proffers the testimony of Thomas Cargill to support its copyright infringement claim relating to Linux. Rather than limit Dr. Cargill's report to the material identified in the Final Disclosures, SCO uses it to identify three entirely new categories of allegedly misused material. The new material significantly increases the scope of SCO's claims. Whereas the Final Disclosures accused only 326 lines of code from the Linux kernel, the Cargill report challenges nearly every line in Linux. Even with respect to the three categories of material identified in the Final Disclosures, SCO uses Dr. Cargill's report to identify numerous new items of allegedly misused material. For example, the Final Disclosures identify only 15 files of Streams material as supposedly infringing certain Unix copyrights. To that, the Cargill report adds more than 150 additional files of Streams material never before mentioned by SCO. (See Section II below.)

In addition, SCO relies on the testimony of Evan Ivie and Marc Rochkind in support of its contract claims. Like the Cargill report, the Ivie and Rochkind reports identify allegedly misused material found nowhere in the Final Disclosures. With respect to one of the technologies challenged in the Final Disclosures (JFS), SCO uses its expert reports to charge misuse against <u>six times</u> the volume of material identified in the Final

2

Disclosures. Similarly, the Final Disclosures identify 9,282 lines of code regarding testing technologies as representing "misuse". To that the Rochkind report adds 25,378 additional lines of code. In fact, the Final Disclosures identify only a small fraction of the material challenged in SCO's expert reports, notwithstanding the requirements of the scheduling order and SCO's stipulation and agreement. (See Section II below.)

SCO's new claims have no more merit than those set out in the Final Disclosures. But allowing SCO to ignore the Court's scheduling order and reinvent its case at this juncture would be unduly prejudicial to IBM and contrary to the public interest. Putting aside the fact that SCO's refusal to cooperate in discovery has made it difficult for IBM properly to prepare a defense to the allegations set out in the Final Disclosures, SCO's new, last-minute allegations would force the re-opening of discovery and significantly extend the litigation. SCO's proposed new allegations are not minor; they are far-reaching. SCO's new claims implicate the whole of Linux. While we believe the claims lack merit, assembling the evidence necessary to prove they lack merit would require significant additional litigation. And, of course, fact discovery is closed; initial expert reports have been submitted; dispositive motions are forthcoming, and IBM's opposing expert reports are due in a matter of weeks. Thus, there is no way IBM could properly prepare a defense without substantial delay in the proceedings, including deferral of the existing trial date. This unjustifiable delay would itself prejudice IBM and undermine the public interest because it would allow SCO further to perpetuate fear, uncertainty and doubt about IBM, Linux and IBM's products and services. (See Section III below.)

3

400514.1

As is further discussed below, SCO should not be allowed to ignore the deadline for final disclosures and litigate this case by ambush.[1] Insofar as SCO's proposed expert reports exceed the Final Disclosures, they should be stricken.

### Argument

I. THE COURT LIMITED SCO'S CLAIMS TO THE MATERIAL IDENTIFIED IN ITS FINAL DISCLOSURES.

IBM asked for years that SCO specify its allegations of misconduct and infringement by IBM. For example, IBM's Interrogatory No. 4 (served on June 13, 2003) demanded that SCO describe in detail "the specific manner in which IBM is alleged to have engaged in misuse or misappropriation", and IBM's Interrogatory No. 13 (served on September 16, 2003) demanded that "for any rights IBM is alleged to have infringed, [SCO] describe in detail how IBM is alleged to have infringed plaintiff's rights". SCO repeatedly refused to specify its claims, requiring IBM to seek the Court's assistance in learning SCO's allegations. In considering IBM's motions for summary judgment, the Court found it "astonishing that SCO has not offered competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights through IBM's Linux activities". (02/08/2005 Order at 10.)

When the Court deferred IBM's summary judgment motions, IBM urged the Court to establish a final deadline for the disclosure of allegedly misused material. As we explained at the time, there was no way IBM could properly prepare its defense without a final deadline, prior to the close of fact discovery, for the identification of all allegedly misused material. SCO's claims potentially implicate billions of lines of source code,

---

[1] Although we do not burden the Court with a request for sanctions, we believe an order entering sanctions, including the costs of this motion, would be justified.

4

400514.1

and it would have been impossible to defend the case by preparing a defense to all possible claims relating to that code. There is too much information and therefore there are simply too many possibilities. Moreover, as we further explained, it was critical that the parties <u>not</u> be allowed to modify their allegations by way of the expert reports lest the deadline become meaningless and render fact discovery an exercise in inefficiency, disconnected from the parties' allegations. (04/21/2005 Hr'g Tr. at 93-94.)

In an order dated July 1, 2005, the Court adopted IBM's proposal over SCO's objection. The Court set October 28, 2005 as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material Identified to Date and to Update Interrogatory Responses Accordingly". (07/01/2005 Order ¶ III.) The Court set December 22, 2005, as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material". (<u>Id.</u>) Both parties submitted their final disclosures of allegedly misused material on December 22, 2005, and thus advised the Court that they had nothing more to provide. In fact, SCO specifically advised the Court in opposing IBM's motion to limit the scope of SCO's claims based on its failure to specify all of the allegations contained in the Final Disclosures, that it had fully complied with the scheduling order. (<u>See</u> SCO's 03/07/2006 Memorandum in Opposition to IBM's Motion to Limit SCO's Claims Relating to Misused Material at 1.)

In the Final Disclosures, SCO identified 294 Items of allegedly misused material. Most of the Items (215 Items) concern SCO's allegation that IBM breached its contractual obligations by contributing its own AIX and Dynix code to Linux. These allegedly improper contributions fall into seven categories: (1) Journaling File System (JFS); (2) Enterprise Volume Management System (EVMS); (3) Read-Copy Update

5

(RCU); (4) Symmetric Multiprocessing (SMP); (5) Non-Uniform Memory Access (NUMA); (6) Testing Technology; and (7) miscellaneous Items that do not fall into any particular category. The remaining items (79 Items) concern SCO's allegations of copyright infringement, which relate primarily to Linux (69 Items). SCO's allegations of infringement relating to Linux, which make no specific allegations of infringement by IBM, concern material of three types—(1) header files (including Open Group headers and Streams headers); (2) specifications (including ELF); and (3) miscellaneous materials (including one Item about memory management). In challenging this material, SCO accuses just 326 lines of code from the Linux kernel. By order of the Court, these 294 Items define the permissible scope of SCO's claims.

In addition to the fact that the Court limited SCO's claims to the Final Disclosures, SCO repeatedly committed to IBM that it would limit its claims to the Final Disclosures. In fact, SCO expressly stipulated and agreed with IBM that its claims would not exceed the Final Disclosures. In a Stipulation Re Scheduling Order filed with the Court on December 7, 2005, the parties stipulated and agreed as follows:

> "1. Both parties are required to identify with specificity any and all material that each party contends the other has misused no later than December 22, 2005;
>
> ...
>
> (c) Neither party shall be permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline." (Ex. A.)

It is thus undisputed and indisputable that the Final Disclosures were to define the scope of SCO's claims. As discussed in Section II below, however, SCO attempts to use its expert reports to exceed the Final Disclosures, despite the Court's order and the parties' agreement.

6

400514.1

## II. THE CARGILL, IVIE AND ROCHKIND REPORTS FAR EXCEED THE SCOPE OF THE FINAL DISCLOSURES.

Three of SCO's proposed expert reports, those of Drs. Cargill, Ivie and Mr. Rochkind, exceed the scope of its Final Disclosures in significant respects. In fact, by Dr. Cargill's report (which appears to have been prepared in part by a law firm that has never participated actively in this case), SCO effectively seeks to reinvent the case. While the obvious inference is that SCO does not think much of its existing case, SCO's expert reports should be stricken insofar as they exceed the scope of the Final Disclosures.

SCO relies on the Cargill report to support its allegation that Linux infringes SCO's alleged UNIX copyrights. As stated, the Final Disclosures identify three categories of alleged copyright infringement: (1) header files; (2) specifications; and (3) miscellaneous materials. Rather than confine Dr. Cargill's opinions to these three categories of allegedly misused material (which amount to only 326 lines of code in the Linux kernel), SCO now claims three entirely new and vastly different categories of allegedly misused material:

    a)    the overall structure of SVr4;

    b)    the structure of the SVr4 file system; and

    c)    system calls.

Moreover, SCO advances a theory relating to these materials (e.g., copying of selection, coordination and arrangement) that is different from any theory of infringement previously provided by it. The Final Disclosures make no allegations of misuse relating

7

400514.1

to the overall structure of SVr4, the structure of the SVr4 file system, or system calls.[2] Nor do any of SCO's responses to IBM's interrogatories, which plainly called for SCO to provide all such allegations.

SCO's new copyright claims regarding the overall structure of SVr4, the structure of the entire SVr4 file system and system calls are not minor additions to the Final Disclosures. On the contrary, they represent a significant departure from the Final Disclosures. The Final Disclosures' copyright allegations implicated only 12 Linux kernel files and 326 lines of code from the kernel.[3] Since SCO's new theories challenge the overall structure of Linux and its file system, they appear to implicate virtually every file in Linux, which is comprised of millions lines of code. As a practical matter, the Cargill report effectively pleads a brand new and complex (although still meritless) case.

Even as to the categories of material identified in the Final Disclosures, SCO uses Dr. Cargill to expand considerably the scope of its allegations. For example:

- Header Files: The Final Disclosures identify source code in 29 Open Group header files and 15 Streams-related header files. The Cargill report goes beyond the Final Disclosures, claiming the "totality of the Streams framework". (Cargill Rpt. at 56.) That claim draws in every line in over 150 new files never before mentioned by SCO.

- Specifications: The Final Disclosures identify 19 Linux files relating to the ELF specification, as well as excerpts from several specification documents. Dr. Cargill far exceeds this claim by citing additional ELF-related files in Linux, and asserting infringement of the entire ELF format. The Cargill report also introduces into this case, for the first time, claims

---

[2] A handful of system call signatures (also called "function prototypes") appear in a few of the header files claimed in the Final Disclosures. However, SCO's Final Disclosures do not contain any claims about "system calls".

[3] The kernel is the core of the operating system and the subject of IBM's counterclaim seeking a declaration of non-infringement relating to Linux.

400514.1

to the ELF "magic number" (Cargill Rpt. at 76-78) (a unique pattern identifying the type and intended use of a file).

The Rochkind and Ivie reports also exceed the Final Disclosures. Both reports add significant new material, never before disclosed by SCO, as illustrated by the Ivie and Rochkind reports' discussions regarding JFS and Testing Tools:

- JFS: The Final Disclosures alleged that IBM "literally copied code from UNIX System V Release 2.1" and identified one System V file and one AIX file. (Item 1.) The Ivie report adds six additional System V files and six additional AIX files (Ivie Rpt. Exs. C-H), as well as two lists of twenty-one new AIX files. (Ivie Rpt. Exs. I, J.) (Of course, SCO fails to identify any connection between this material and the OS/2 JFS code IBM contributed to Linux.)

- Testing Technology: The Final Disclosures claimed IBM contributed 15 testing files to Linux. (Item 16.) The Rochkind report accuses another 73 files (288 printed pages worth). (Rochkind Rpt. at 149.) The Rochkind report also challenges two documentation files for testing technologies (Rochkind Rpt. at 144-145) that were not mentioned in the Final Disclosures.

These additions are not an exhaustive list of the ways in which SCO's expert reports exceed the scope of the Final Disclosures. They simply demonstrate why SCO's claims must be confined to the Final Disclosures, as per the Court's order and the parties' stipulation and agreement.

The bottom line is simple: SCO seeks by its expert reports to sandbag IBM by changing its case. Sandbagging is improper in any context. But this is especially so based on the Court's multiple attempts to force SCO to reveal its claims.

III.    SCO'S CONDUCT IS UNDULY PREJUDICIAL TO IBM.

If SCO is allowed to ignore the Court's scheduling order and exceed the scope of the Final Disclosures, IBM will suffer undue and incurable prejudice. As stated, SCO seeks to expand the scope of the case—nearly six months after the deadline for its Final Disclosures, after the close of fact discovery, simultaneous with the filing of initial expert

9

400514.1

reports, on the eve of the due date of IBM's opposing expert reports and when summary judgment briefs are forthcoming. In fact, IBM has already submitted expert reports addressing the very claims SCO now seeks to change. SCO has spent more than three years developing its theory of infringement and seeks to force IBM to respond to its newly-minted allegations, without the benefit of discovery, in a matter of weeks. If that would not be unfair, nothing would.

If (contrary to the existing schedule) IBM is required to pursue fact discovery and develop a defense to SCO's new-found allegations, it would take no less than 12 additional months to litigate SCO's new claims. That would, of course, preclude the existing trial date and push off yet again the resolution of issues on which SCO contends the future of the software industry depends. The only way IBM could get a fair hearing on SCO's claim would be to defer the trial, but that deferral alone would be prejudicial. IBM has been seeking a prompt resolution of this matter since its inception. A prompt resolution of the case matters to IBM because SCO's continued assertions of misconduct and disparagement of IBM's business, products and services has caused and is continuing to cause injury to IBM. Thus, the prejudice IBM would experience if SCO is allowed to change the case would be incurable. SCO's attempt to force IBM to defend new allegations is unfair—if not abusive—and should not be allowed.

Courts have refused to allow a party to change its case under far less compelling circumstances. For example, in <u>Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.</u>, Civ. A. No. 95 C 1490, 1996 WL 735586, at *9 (N.D. Ill. Dec. 19, 1996) (Ex. B), the court rejected plaintiff's attempts to expand the scope of its case through its expert reports by striking references to misused materials in the report that were not adequately

400514.1

disclosed during discovery. As the Court did here, the court in <u>Lynchval</u> entered an "order requiring [plaintiff] to produce a final response to [defendant's] Interrogatory 2, specifying each allegedly [misused item], by the end of fact discovery." <u>Id.</u> at *8. Like SCO, the plaintiff in <u>Lynchval</u> provided a list of misused materials, but then filed an expert report referring to numerous materials not disclosed in its final list of misused materials. <u>Id.</u> at *6, 9. Rejecting such attempts to expand the scope of the case, the court in <u>Lynchval</u> struck from plaintiff's expert report any reference to those misused materials that had not been adequately disclosed in plaintiff's final list. <u>Id.</u> at *9. The court in <u>Lynchval</u> observed that defendants' "defense [was] seriously hampered" because defendants "reasonably expected to obtain a complete list of the allegedly stolen trade secrets . . . prepared and exchanged expert reports [based on that list] [and] . . . [i]n light of any additional trade secrets and subsequent depositions, defendants' expert would have to amend his own report in light of this new information." <u>Id.</u> The court rejected the notion that reopening discovery would be an adequate remedy because it "compounds the delay until trial and subjects the defendants to costs beyond . . . depositions". <u>Id.</u>

This Court should do no less. It should strike from SCO's expert report any reference to allegedly misused materials not disclosed in the Final Disclosures. <u>See also</u> <u>Kern River Gas Transmission Co. v. 6.17 Acres of Land</u>, 156 Fed.Appx. 96, 100, 103 (10th Cir. 2005) (affirming district court's decision "preclud[ing] . . . [defendant] from introducing at the trial any expert evidence or documents not produced during discovery") (Ex. C); <u>Praxair, Inc. v. Atmi, Inc.</u>, 231 F.R.D. 457, 463-64 (D. Del. 2005) (striking portions of expert report that incorporated new evidence and defenses that were

11

not disclosed prior to a discovery cutoff).[4] There is no justification for SCO's conduct, and IBM should not be required to respond to SCO's new allegations as if SCO had complied with the Court's scheduling order, which it plainly has not done.[5]

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter an order confining SCO's claims to, and striking allegations in excess of, the Final Disclosures. The Court's Order need not say more than: "IT IS HEREBY ORDERED THAT SCO's claims shall be confined to SCO's December 22, 2005 Disclosure of Material Allegedly Misused by IBM (the "Final Disclosures") and that any allegations in excess of the Final Disclosures shall be and is hereby stricken." The Court set a deadline for final disclosures and the parties reached an agreement on the subject. Both the order and the parties agreement should be enforced.

---

[4] In addition to the injury SCO's sandbagging would visit on IBM, it would, if allowed, disserve the judicial process. "[F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." Finch v. Hercules, Inc., No. Civ. A. 92-251 MMS, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995) (citations omitted) (Ex. D). The "flouting of discovery deadlines causes substantial harm to the judicial system." Id. (citations omitted).

[5] In the event the Court allows SCO to disregard the deadline for final disclosures of allegedly misused material—which, we respectfully submit, it should not do—the scheduling order would obviously have to be modified. IBM would not require three years to debunk SCO's claims. In fairness, however, we expect IBM would require no less than 12 months to prepare a defense to SCO's new allegations, especially if SCO is no more forthcoming in providing discovery relating to its new claims than it has been in revealing the particulars of the claims set out in the Final Disclosures. Such an extension would of course be independent of the extension IBM would require if the Court were to deny its already-pending motion to limit the scope of SCO's claims.

12

400514.1

DATED this 8th day of June, 2006.

        SNELL & WILMER L.L.P.

        By   /s/ Amy F. Sorenson
           Alan L. Sullivan
           Todd M. Shaughnessy
           Amy F. Sorenson

        CRAVATH, SWAINE & MOORE LLP
        Evan R. Chesler
        David R. Marriott

        *Attorneys for Defendant/Counterclaim-Plaintiff*
        *International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Jennifer M. Daniels
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2006, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

and by U.S. Mail, postage pre-paid to:

> Robert Silver
> Edward Normand
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, NY 10504

/s/ Amy F. Sorenson

400514.1