FILED
U.S. DISTRICT COURT

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE LLP
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN<br>OPPOSITION TO IBM'S MOTION TO<br>CONFINE SCO'S CLAIMS TO, AND<br>STRIKE ALLEGATIONS IN EXCESS<br>OF, THE FINAL DISCLOSURES**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this memorandum in opposition to the motion filed by Defendant, International Business Machines Corporation ("IBM"), to Confine SCO's Claims to, and Strike Allegations in Excess of, the Final Disclosures.

### Preliminary Statement

In the present motion, IBM yet again seeks to avoid addressing the merits of SCO's claims, and again seeks to do so by incorrectly accusing SCO of failing to comply with a Court order. SCO identified in its October 2005 and December 2005 submissions much proprietary material that has been misused by IBM in its effort to enhance Linux. In May 2006, SCO submitted reports from three accomplished experts in UNIX operating systems, which explain and support the claim of misuse of proprietary material. IBM asks for significant portions of SCO's expert reports to be stricken, so IBM can avoid having to defend its actions, or alternatively, to obtain significant additional time, so IBM can delay being held accountable for its violations of SCO's legal rights. IBM's motion should be denied because SCO has complied fully in identifying the "materials misused by IBM," as required by the Court's July 1, 2005 Scheduling Order ("Scheduling Order"), and SCO's expert reports are consistent with what the Court has required.

The Scheduling Order required the disclosure of "allegedly misused material" in December 2005. (Scheduling Order at 4.) This was a requirement to identify "misused material" (whether source code or methods or concepts). The Scheduling Order set a later deadline for the exchange of the parties' expert reports. (Id. at 5.) The Scheduling Order did not require that SCO disclose in December its experts' theories, analyses, and opinions, or all the evidence on which experts would ultimately rely. Yet IBM's motion is predicated on the premise that all of the theories, analyses, and supporting evidence for SCO's case was required

1

to be included in the December Submission. All of the expert analyses to which IBM objects are either supporting analyses for how the identified materials were misused or analytical support for SCO's copyright position that IBM has long regarded as part of the case, including by virtue of IBM's own counterclaims.

Contrary to IBM's repeated assertions, SCO has properly responded to discovery propounded to it, there has been no finding by this Court to the contrary, and indeed the Court previously has recognized SCO has acted in good faith. After fighting against most of SCO's discovery requests, IBM finally was ordered by this Court to produce substantial documentation, which IBM began producing in the spring of 2005. IBM's production continued through the fall of 2005 when depositions started in earnest, and in fact, continues even as recently as this spring through various supplemental productions. Furthermore, after asserting for more than a year that SCO's claim is only about UNIX code copied directly into Linux and thus easy for anyone to identify that has access to UNIX code and the publicly available Linux code, IBM now claims undue prejudice by virtue of undertaking that analysis. IBM now takes this position after the discovery IBM finally provided has shown that SCO's claims are supported by substantial evidence.

The Court correctly refused to entertain summary judgment motions which IBM prematurely brought before the close of discovery, in fact, before almost all deposition discovery had even occurred. (Memorandum Decision and Order (Feb. 9, 2005) at 16-18.) The reality is that IBM has a clear understanding of SCO's claims as a result of the parties' briefing of the discovery and summary judgment motions, the identification provided in the October and December Submission of specific technical material IBM is alleged to have misused, additional supporting material in the October and December submissions that went beyond what SCO was

2

required to provide, and responses to other discovery. IBM's claimed entitlement to the expert

analyses in support of those claims by December 2005 is simply unfounded.

Accordingly, SCO respectfully requests that IBM's Motion to Confine SCO's Claims to,

and Strike Allegations in Excess of, the Final Disclosures be denied.

## ARGUMENT

## I. THE SCHEDULING ORDER AND ITS PROCEDURAL HISTORY MAKE CLEAR THAT THE DECEMBER SUBMISSION WERE NOT REQUIRED TO BE COEXTENSIVE WITH EXPERT REPORTS.

On January 18, 2005, Magistrate Judge Wells granted several important discovery

requests that SCO had been pursuing with IBM for over a year, and further recognized that this

substantial discovery would necessitate some modification to the schedule. (Order Regarding

SCO's Renewed Motion to Compel Discovery at 17.) The Court directed the parties to submit

proposed revised schedules. (Id. at 18.) On July 1, 2005, the Court adopted a schedule setting

new deadlines, including interim and final deadlines for identification of misused material, and

for a subsequent exchange of expert reports.

The specific language of the Court's July 2005 Scheduling Order makes clear (at 4-6)

that it is an order requiring specific identification of the alleged "misused materials." The

Scheduling Order did not by its terms require that these submissions catalog all of the evidence,

analyses, or opinions that would support why the identified materials were proprietary and were

in fact misused. Nor did the Order in any way require the articulation of legal theories or

analytical positions – such as that the structure and organization of Linux was copied from UNIX

System V (and not by IBM) in violation of SCO's copyrights.

The fact that the Scheduling Order provided (at 5) that initial expert reports would be

exchanged almost four months after the December Submission reflects that the expert reports

3

would follow, and, as is true in almost all litigation, would analyze, explain, and supplement the claims of the parties. If SCO had been required to include in its December Submission all the evidentiary support and analyses that would be required for its expert reports (due four months later), as IBM suggests, expert reports would have been due in December.

Indeed, in its briefing urging the Court to adopt the October and December submissions schedule, IBM conceded that the material to be identified in the December Submission was distinct and more limited than the information that would be provided in the expert reports. Specifically, IBM stated:

> SCO also complains that under IBM's proposal "SCO's <u>expert(s)</u> would have to reach final conclusions regarding IBM's [alleged] misappropriation of SCO's material" (Opp'n at 12; SCO's Fifth Point). Here again, SCO misstates IBM's proposal. IBM proposes only that the Court impose deadlines for the parties to identify the Allegedly Misused Material. IBM's proposal requires neither that the parties rely on experts **nor that any experts that might be used by parties finalize their expert reports before the close of all fact discovery**. Under IBM's proposal, the parties' experts would need to reach final conclusions before the close of fact discovery **only with respect to the <u>identification</u> of the source code and other material that is at issue in this case.**

(IBM's Reply Memorandum in Further Support of IBM's Proposed Scheduling Order (Apr. 11, 2005) at 4 (underlining in original, bold emphasis added).)

Accordingly, the Scheduling Order's statement of December 22 as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material" requires just that – <u>identification</u> of the material that SCO contends IBM misused. The December Submission was <u>not</u> intended and did not require SCO to set forth a legal theory or expert analysis of copyright infringement or breach of contract, nor to submit the entire sum of evidence supporting IBM's misuse of the material identified in the December Submission. Having argued that the October and December submissions should be for a narrow purpose in order to convince the Court to

4

implement the unique request for such submissions, IBM should not be heard to complain now that those submissions were to be as broad as they now claim.

SCO's December Submission did exactly what it was intended to do. It identified the specific material – 293 technologies – that SCO contends IBM misused. (SCO's Disclosure of Material Misused by IBM (Dec. 22, 2005) and Appendix (Dec. 22, 2005).) SCO's expert reports then analyzed and explained why IBM's use of that same material was wrongful, including SCO's legal theory of copyright infringement and other evidence of IBM wrongdoing with respect to that material.

## II.   THE IVIE REPORT PROPERLY CITES PROOF TO SUPPORT SCO'S POSITION – FULLY DISCLOSED IN THE DECEMBER SUBMISSION – THAT JFS WAS "MISUSED MATERIAL."

SCO has submitted three expert reports from experts in UNIX operating systems. These reports are attached to this opposition, as IBM did not submit them to the Court with its motion (as though the Court should strike portions of SCO's expert reports without even looking at them). (Expert Report of Dr. Evan Ivie, Ex. 1; Expert Report of March Rochkind, Ex. 2; Expert Report of Dr. Thomas Cargill, Ex. 3.)

One report is from Dr. Evan Ivie, a Professor Emeritus of Computer Science at Brigham Young University. Dr. Ivie explained that he investigated "four areas where IBM disclosed AIX and Dynix/ptx technologies to Linux: concurrency (including Read-Copy-Update ("RCU") and locking); recovery (including journaling); multiprocessing (including NUMA and SMP); and testing." (Ex. 1 at 21.) He concluded: "Disclosures of both code and methods and concepts were made in those four areas" and that "the disclosures of these technologies improved the reliability, availability, serviceability and scalability of Linux, which was necessary for Linux to

develop into a commercially ready system." (Id. at 6.)  In its present motion, IBM takes issue
only with Dr. Ivie's treatment of journaling, or "JFS."

IBM argues (at 9) that Dr. Ivie's expert report raises "significant new material" not
included in SCO's December Submission.  Specifically, IBM argues that Dr. Ivie challenges six
System V and twenty-seven AIX files relating to JFS.  IBM's argument is meritless, and badly
mischaracterizes SCO's identification of JFS in SCO's December Submission.

SCO expressly identified as its very first item in the December Submission the "AIX JFS
Journaling File System" as the improperly disclosed material IBM contributed to Linux.  (See
Ex. 4.)  SCO had previously identified JFS as technology that IBM had misappropriated going
back to interrogatory responses filed in 2003 and early 2004.  (SCO's Supplemental Response to
Defendant's First Set of Interrogatories (Oct. 23, 2003) at 5-6, Ex. 5; SCO's Revised
Supplemental Response to Defendant's First and Second Set of Interrogatories (Jan. 15, 2004) at
18-24, Ex. 6.)  The December Submission stated that "IBM materially contributed PFS [the JFS
in AIX] to Linux" and "PFS is a modification of and/or derived work based on AIX and UNIX
System V."  (Ex. 4.)  SCO's allegation in the December Submission is clear:  IBM improperly
disclosed to Linux a Journaling File System (JFS), which is derived from AIX JFS and UNIX
System V.

While SCO provided additional information regarding JFS in its December Submission,
that information was clearly referenced as proof that JFS was contributed in violation of SCO's
contractual rights.[1]  IBM's present motion takes one portion of SCO's explanation of its proof

---

[1] For example, SCO included several source code drawings demonstrating evidence of the progression of
how UNIX System V was used as the basis for the AIX JFS, which further evolved into the Linux JFS:
first, that the JFS in AIX was derived from UNIX System V (Tabs 9 and 425, Ex. 7); second, that the JFS
IBM initially disclosed to Linux was derived from the JFS in AIX (Tab 1, Ex. 8); and third, that the JFS
as it further developed in Linux was derived from the JFS in AIX (Tab 2, Ex. 9).

out of context and suggests (at 9) that SCO's entire allegation in Item 1 concerning JFS is "that IBM 'literally copied code from UNIX System V Release 2.1' and identified one System V file and one AIX file." Not only did IBM select merely one sentence from SCO's discussion in Item 1, IBM quoted only a portion of that sentence. The sentence actually reads "Tab- 425 demonstrates one example (of several to be provided) that literally copied code from UNIX System V Release 2.1 is present in PFS." (Ex. 4.) IBM attempts to misdirect the Court by omitting the first half of the sentence – that Tab 425 is an example of the proof that the AIX JFS is copied from UNIX System V.

In short, SCO's Item 1 clearly alleges that the AIX JFS is the improperly disclosed material. Nowhere does SCO suggest that the one file of System V and one file of AIX constitute the sum total of what IBM improperly disclosed.

IBM's claim that Dr. Ivie presented additional files of UNIX System V and AIX is also an attempt to confuse the issue. First of all, "the six additional System V files and six additional AIX files," as well as the majority of the "twenty-one new AIX files" that IBM complains about (at 9), were in fact identified in Item 1 of SCO's December Submission at Tab 9. (Ex. 7.) But even if none of them were identified, Dr. Ivie's use of them is entirely appropriate. The additional files of UNIX System V and AIX, and the additional source code comparison exhibits that Dr. Ivie presents in his report, are additional proof that the AIX JFS was based on System V. In other words, they are in Dr. Ivie's report not because they are "misused material" (IBM had the right under the license to base AIX's JFS on System V, but not to disclose such derivative works). They are facts Dr. Ivie is fully entitled to rely upon to support an underlying opinion that JFS was a derivative work of System V and thus, IBM's contribution of JFS to the Linux community was improper.

7

### III.   IBM WRONGLY ACCUSES ROCHKIND OF RELYING ON UNDISCLOSED "MISUSED MATERIAL."

Marc Rochkind, an expert in computer science, a former UNIX developer, author and teacher, concluded that "Dynix/ptx and AIX are derivative works based on UNIX System V"; that IBM "significantly improved" the "enterprise OS capabilities" of Linux 2.4 and 2.6; and that IBM "contributed numerous technologies from Dynix/ptx, AIX, and UNIX System V to Linux development, including key technologies that are essential for an enterprise OS." (Ex. 2 at 6-7.) In its present motion, IBM takes issue only with Mr. Rochkind's treatment of testing in Linux. Specifically, Mr. Rochkind concludes that "IBM contributed substantial numbers of the Dynix/ptx SPIE tests (also known as the 'MP PIE Test Suites') to Linux, and that they played a significant role in the development of Linux as a reliable operating system, which is one of the most important characteristics of an enterprise OS." (Id. at 151.) As discussed in detail below, Mr. Rochkind does not identify any new material that SCO contends IBM misused.

IBM argues (at 9) that Rochkind's report raises new material relating to testing technology, specifically, his "report accuses another 73 files" and "challenges two documentation files for testing technologies" not in the December Submission. As with Dr. Ivie, IBM misreads the Rochkind report. (IBM neither awaited the depositions of Rochkind and SCO's other experts nor sought to confer with SCO's counsel before filing its motion.) As with Dr. Ivie, IBM selectively points to a small portion of SCO's allegations (this time concerning testing rather than JFS) and would have the Court wrongly conclude that it constitutes the totality of SCO's claims concerning testing.[2]  Then IBM characterizes as new material that had to be

---

[2] IBM writes (at 9) that SCO's "Final Disclosures claimed IBM contributed 15 testing files to Linux" and cites to Item 16 of SCO's December Submission.  IBM ignores that SCO challenged many more lines and files of testing technology in other Items of the Submission, including 11, 18, 113-143, 174 and 182 (attached hereto as Ex. 10).

included in the December submissions information that SCO is not relying upon as "misued material," but rather is cited by Rochkind as supporting proof for one part of his analysis.

IBM's claim that Rochkind's report accuses another 73 testing files is untrue. The files referenced in Rochkind's report (Ex. 2 at 149) and attached as Exhibit Doc-SPIE-SharoffTests (Ex. 11) are not new allegations. Rochkind does not claim – and SCO does not allege – that any additional tests included in this group are improperly disclosed material by IBM. Rochkind did not offer any opinion that such additional tests were improperly taken from Dynix/ptx. Rochkind's inclusion of the additional tests is evidence that the IBMer Narasimha Sharoff (whom SCO identifies in the December Submission as one of the IBM developers who improperly contributed certain identified test material to Linux) worked in the area of porting tests to Linux. Rochkind's additional files list IBMer Sharoff as the person responsible for porting files to Linux, but neither SCO nor Rochkind claims that the additional files were improperly used Dynix/ptx material.

IBM's claim that Rochkind's report adds an allegation by SCO concerning two testing documentation files is also wrong. The testing documentation files discussed in Rochkind's report (Ex. 2 at 144-145) are not alleged by Rochkind or SCO to have been improperly disclosed. SCO does not challenge these documentation files, and Rochkind's use of these files was as supporting evidence concerning the improper use by IBM of the Sequent PIE tests that were identified in SCO's December Submission.

## IV.   IBM'S MOTION WITH RESPECT TO THE CARGILL REPORT SHOULD BE DENIED.

Dr. Thomas Cargill, a software consultant and former computer science professor and UNIX developer, concludes in his report that Linux 2.4 and 2.6 and LiS Streams (collectively "Linux") are substantially similar to the Unix System V Release 4 operating system ("SVr4"),

and therefore, that Linux infringes copyrights of SVr4. (Ex. 3 at 3.) In reaching this conclusion, and by applying the applicable legal test, he further opines that Linux is a substantial copy of UNIX System V Release 4 ("SVr4") because it appropriated the essential structure of UNIX by incorporating (1) many of the "system calls" in SVr4; (2) the SVr4 file system; (3) the ELF format; and (4) the Streams communication module. (Id. at 3-4.)

IBM raises essentially three complaints with respect to Dr. Cargill's report. First, IBM complains (at 8) that Dr. Cargill's analysis and opinion that the structure of Linux infringes UNIX copyrights is a "new" theory that implicates all of Linux and should have been in the December Submission. Second, IBM complains (at 8-9) that Dr. Cargill expands the scope of the allegations with respect to materials that were included in the disclosures. Third, IBM complains (at 7) that some evidence on which Dr. Cargill relies was not identified in the December Submission. None of these objections is well founded and none constitutes a basis upon which to exclude all or part of Cargill's report.

### A. Dr. Cargill's Structural Analysis of Linux Copyright Infringement, including his Analysis of the Overall Structure of SVr4 and the Structure of the SVr4 File System

Dr. Cargill's analysis and opinion that the structure of Linux infringes UNIX copyrights is neither something that should have been included in the December submission, nor a "new" theory, and should not be stricken from SCO's allegations. As discussed, the December Submission was not meant to be a forum for disclosing expert analyses and conclusions. Dr. Cargill's structural analysis of Linux, as well as his supporting analysis of the overall structure of SVr4 and the SVr4 file system, is a nonliteral, legal theory of copyright infringement, and therefore had no place in the December Submission.[3]

---

[3] Dr. Cargill's opinion is based on a well-known theory of copyright law, which provides that a collective work is entitled to copyright protection based on the selection, arrangement and coordination of elements.

With respect to the reference in the Court's July 2005 Scheduling Order to "allegedly misused material," SCO does not assert that Linux's structural similarity to SVr4 is attributable to IBM's improper contributions to Linux (which are instead at the heart of SCO's breach of contract claims).

In contending (at 8) that "[s]ince SCO's new theories challenge the overall structure of Linux and its file system, they appear to implicate virtually every file in Linux," IBM is essentially trying to have SCO's entire theory of Linux copyright infringement stricken for failure to include as a separate item the words "Linux structure" in its December Submission. IBM makes the grave claims (at 1, 4, 9) that SCO seeks to "litigate this case by ambush," that SCO seeks to "reinvent the case," and that SCO seeks to "sandbag IBM by changing its case." The record plainly belies these overheated assertions.

IBM specifically stated during oral argument before the District Court in September 2004 that SCO's copyright claim raised the question of whether Linux and UNIX System V are "sufficiently similar to constitute infringement," where "SCO has publicly claimed that Linux is an unauthorized derivative work of UNIX and that the use of Linux by anybody infringes SCO's alleged copyrights." (Hearing Transcript (Sept. 15, 2004) at 33, 44, Ex. 12.) In the same hearing, IBM specifically referred to the abstraction-filtration test at issue in Dr. Cargill's report as a necessary part of SCO's copyright claim. (Id. at 53-56.) Further, IBM has twice attached the article "Gunning for Linux" from the May 17, 2004 issue of Fortune Magazine to its pleadings. (Declaration of Todd M. Shaughnessy in support of IBM's Cross Motion for Partial

---

Transwestern Pub'g Co. LP v. Multimedia Mktg. Assocs., Inc., 133 F.3d 773, 776 (10th Cir. 1998) (attached hereto as Ex. 13); Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 833 n.7 (10th Cir. 1993) ("In examining the similarities between two programs under the indirect method of proving copying it is ordinarily important to compare the whole works.") (attached hereto as Ex. 13).

Summary Judgment on its Claim for Declaratory Judgment of Non-infringement at 4, attached as

Exhibit 30 thereto; Declaration of Todd M. Shaughnessy in support of IBM's Motion for Partial

Summary Judgment on Breach of Contract Claims at 2, attached as Exhibit 4 thereto.)  That

article states:  "SCO is complaining not just about verbatim copying but also about the

purloining of its code's 'structure, sequence, and/or organization'" – the precise opinion Dr.

Cargill asserts.  (Ex. 14, at 102).  Also, IBM has previously asserted that it has always proceeded

in this litigation "in view of SCO's public assertion that the use of Linux infringes SCO's

purported copyrights in the UNIX software."  (IBM's Mem. in Opp. to SCO's Motion to Dismiss

or Stay Count Ten of IBM's Second Amended Counterclaims (May 18, 2004) at 7.) [4]

Accordingly, IBM's claim that the theory is "new" and "reinvents" SCO's case is specious.

 The record thus makes clear that IBM has known for over two years, at least since IBM

brought its broad Tenth Counterclaim, that this case involves the question of whether Linux is

substantially similar to UNIX System V under the copyright laws.  The record also makes clear

---

[4] To be sure, SCO argued otherwise, but in its Order dated February 9, 2005, the District Court (at 4-5) agreed with IBM's arguments on the question and found that SCO had asserted a general Linux copyright claim in this case.  As the Court further noted (at 5) in the same Order (emphasis added), "IBM's Tenth Counterclaim appears to be broader in scope that SCO's claims."  In fact, in May 2004, IBM moved for summary judgment on its Tenth Counterclaim and asserted that "one critical element SCO must show is that Linux is 'substantially similar' to the allegedly copyrighted work (here, the UNIX software)."  (IBM's Memorandum in Support of Its Cross-Motion for Partial Summary Judgment on Its Claim for Declaratory Judgment of Non-Infringement, May 18, 2004.)  IBM now apparently argues that SCO was somehow obligated to set forth in December 2005 an expert analysis of precisely how Linux is substantially similar to UNIX System V; there is no basis for that argument.

 Indeed, the District Court's decision that SCO had asserted the Linux copyright claim was based in significant part on the grounds that litigation in other federal courts had been stayed because SCO had brought that claim.  (Memorandum Decision and Order (Feb. 9, 2005) at 5-6).  The Court emphasized SCO's lawsuit against AutoZone.  (Id. at 6.)  Again, SCO argued otherwise, but the District Court plainly disagreed and found that SCO's copyright claim in AutoZone is at issue in this case as well.  The complaint in AutoZone asserted the Linux copyright claim addressed in Dr. Cargill's report.  SCO alleged that "Linux is in material respects an operating system variant or clone of UNIX System V technology.  According to leaders within the Linux community, Linux is not just a 'clone,' but is intended to displace UNIX System V."  Complaint ¶ 13, The SCO Group, Inc. v. AutoZone, Inc., CV-S-04-0237-DWH-LRL (D. Nev. Mar. 3, 2004).  SCO further alleged that "parts or all of the Copyrighted Materials has been copied or otherwise improperly used as the basis for creation of derivative work software code, included [sic - including] one or more Linux implementations, including Linux versions 2.4 and 2.6, without the permission of SCO."  Id. ¶ 20 (emphasis added).

that having successfully argued well over a year ago that SCO asserted a copyright claim on the grounds that Linux is substantially similar to UNIX System V, IBM now inexplicably asks this Court to find that IBM faces "incurable prejudice" in having to address that very question.

### B. Specifications and Header Files

IBM's second complaint, that Dr. Cargill expands the scope of the allegations with respect to materials that were included in the disclosures, is also misguided. Notably, IBM admits that much of the material on which Dr. Cargill relies in forming his analysis and opinion of structural copyright infringement is included in the December submission. The System V material SCO included in the December submission provides specific bases for the relief SCO seeks on the grounds of copyright infringement. However, IBM insists that this material is deficient because Dr. Cargill's expands the scope of the analysis as to the identified material. IBM contends (at 8-9) that Dr. Cargill expanded the scope as to Specifications (the ELF specification) and Header Files (the Streams framework), although they were included in the December Submission. Dr. Cargill does not, in fact, expand the scope of the allegations with respect to ELF or Streams.

Item 171 of the December Submission disclosed that the entirety of ELF, including the ELF specification, is being challenged. (December Submission at Item 171, Ex. 15 ("Use of SVR4 ABI as source reference in Linux programming, revealing details of SVR4 ELF/ABI specification and use of SVR4 ELF/ABI specification to develop Linux."); see also December Submission at Items 272-75, Ex. 15.) Indeed, IBM's own expert, Dr. Kernighan, understood SCO's Final Disclosure on ELF to include the ELF Specification and responded on that basis in his expert report. (Expert Report of Dr. Kernighan, at 22-25, ¶¶ 68-77, Ex. 16.)

13

Likewise, Items 165 and 166 of the December Submissions identified that the whole of the Streams framework as implemented in Linux infringes SCO's copyrights. (December Submissions at Item 165-66, Ex. 17 ("Disclosure of Streams implementation from SVR4").) Again, IBM's own expert, Dr. Kernighan, addressed Streams. Dr. Kernighan concedes originality and alternative designs, arguing only that Streams has been made available as a module to Linux "for legacy compatibility" and that Streams was developed by SCO's predecessor in interest, AT&T. (Ex. 16 at 18-19, ¶¶ 54-55.) Again, Dr. Kernighan understood the scope of SCO's disclosure and was able to respond.

Accordingly, SCO did not exceed the scope of the December Submissions in Dr. Cargill's report with respect to ELF and Streams, and those allegations should not be stricken.

### C. System Calls

IBM's third complaint about Dr. Cargill's report is also unavailing. Specifically, IBM objects (at 7) to Dr. Cargill's discussion of (1) the overall structure of SVr4; (2) the structure of the SVR4 file system; and (3) system calls, because IBM contends they were not included in the December Submission. Dr. Cargill's analysis of the overall structure of SVr4 and the SVR4 file system is discussed above, and are appropriately analyzed by Dr. Cargill for the same reason as the overall structural analysis of Linux copyright infringement – that it is a nonliteral legal analysis of copyright infringement.

The system calls are also evidence of Dr. Cargill's opinion of infringement. To the extent they are used as evidence, SCO was not obligated in the December Submission to provide every piece of evidence on which its experts intend to rely at trial in this matter. Further, many system calls were included in SCO's December Submission. Specifically, in the December

Submission, SCO identified header files that contain approximately 25 percent of the 112 system calls discussed in Dr. Cargill's report.[5]

IBM concedes this point in its brief (at 8, n. 2): "A handful of system call signatures (also called "function prototypes") appear in a few of the header files claimed in the December Submissions. However, SCO's December Submissions do not contain any claims about "'system calls.'" IBM's argument is disingenuous and exalts form over substance. IBM clearly understood the import of the system calls in the header files, as demonstrated by Dr. Kernighan's discussion of them in his expert report for IBM. (Ex. 16, ¶¶ 24-43.)

Dr. Kernighan's analysis of the header files and system call signatures is not specific to the 29 system calls identified in the December Submissions. Instead, his analysis attacks the header files identified by SCO based on blanket assertions of unoriginality (Ex. 16 at 13-15, ¶¶ 39-43), that they were dictated by externalities such as software standards (Ex. 16 at 15-20, ¶¶ 44-58), and that the ideas contained in the header files were expressible in only a few ways (Ex. 16 at 20, ¶¶ 59-60). IBM appears to think that these purported defenses apply equally to the 112 system calls discussed in Dr. Cargill's report as they do to the 29 identified in the December Submissions.

In short, IBM, through Dr. Kernighan, treats the system calls in the header files as a category that it was obligated to respond to, and its defenses do not distinguish on the basis of particular types of header files or system calls. Dr. Kernighan's report demonstrates that IBM understood, well before it received Dr. Cargill's report, that header files and system calls were at

---

[5] As Dr. Kernighan explains in his expert report for IBM, these header files contain "interface information," which includes "structure declaration[s]," "function prototype[s]," (also known as system calls) and constants. (Kernighan Report at 11-12, ¶¶ 31-36, Ex. 16.)

issue in this case, and IBM had and will continue to have the opportunity to fully develop its defenses.

Accordingly, no part of Dr. Cargill's discussion should be stricken from SCO's allegations.[6]  At most, IBM's argument applies to only these additional system calls – to the extent they are an independent basis for liability – and not as evidence of the broader analysis undertaken by Dr. Cargill.[7]

## V.   IBM HAS NOT COME CLOSE TO MEETING THE HIGH LEGAL STANDARD FOR STRIKING SUBSTANTIVE CLAIMS

For the reasons explained above, IBM has not provided any basis for striking technologies that are part of SCO's allegations.  The three expert reports at issue do not set forth any material that should have been included in the December Submission, and they plainly do not introduce any "new claims" or "reinvent" SCO's case.  IBM simply now argues, contrary to their position in seeking the prior disclosure schedule, that those submissions should have gone well beyond what the Court ordered.

These facts plainly do not justify what is essentially a request for a dismissal with prejudice of many of SCO's allegations.  The Tenth Circuit has recognized that "dismissal with

---

[6] IBM has failed to demonstrate any prejudice, let alone the "incurable prejudice" it claims (at 9).  In fact, IBM's claim that it would need an additional 12 months to respond to certain material in Dr. Cargill's report belies IBM's assertion of prejudice.  Under the Court's schedule, IBM was provided only three months of fact discovery, until March 2006, following the submission of the December 2005 reports.  In short, IBM not only improperly seeks additional time to respond to Dr. Cargill's report, but seeks a discovery windfall in the amount of time for that work.  If IBM is to be given any additional time (which SCO contends is not necessary), it should be no more than three months.

[7] To the extent IBM seeks a discovery sanction, the record establishes that there is no basis for asserting that SCO thought it was obligated disclose the elements of Dr. Cargill's analysis (or those aspects of the other reports that IBM raises) in December 2005 but decided not to do so.  In sharp contrast to the underlying facts in each of the cases that IBM cites (at 11-12), where there appears to have been no dispute between the parties as to the scope of the discovery request or order asserted as the basis for the moving party's request for relief, there is plain disagreement between the parties here as to the requirements for the December Submission.

prejudice is a drastic sanction" and that it is appropriate only where "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits." Ocelot Oil Corp. v. Sparrow Indus. 847 F.2d 1458, 1464-65 (10th Cir. 1988) (Ex. 18). The propriety of any sanction should be resolved according to the following factors: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. Id. IBM's proposed sanction satisfies none of these criteria. [8]

## VI.   IBM CANNOT FAIRLY CHALLENGE OTHER ITEMS IN SCO'S EXPERT REPORTS WITHOUT IDENTIFYING THEM IN A MOTION.

IBM also states (at 9) that its motion does not present "an exhaustive list of the ways in which SCO's expert reports exceed the scope of the Final Disclosures." It is unclear what that means, but the statement seems to indicate that IBM may try in the future to limit the ways that SCO's experts support their opinions. SCO's experts are permitted to rely on many different things to prove the allegations that SCO included in its December Submission – the experts' supporting proof is not limited to the Submission, only the identified material that was improperly disclosed by IBM is limited. IBM cannot be permitted to challenge things included in SCO's expert reports without identifying them in its motion so that, like here, SCO has an opportunity to debunk them.

---

[8] Even if IBM had moved to strike just the evidence or expert reports, and not all related allegations (which they did not), the standard would still be exceedingly stringent. Courts have similarly recognized that "[t]he decision to withhold evidence is a drastic sanction," and have set forth similar factors to be considered, including: (1) prejudice or surprise of the party bringing the motion, (2) the ability of that party to cure the prejudice, (3) the extent to which there would be a disruption of the orderly and efficient trial of the case or of other cases of the court, and (4) bad faith or willfulness in failing to comply with the court's order. See Washington v. Arapahoe County Dept. of Soc. Serv., 197 F.R.D. 439, 441 (D.Colo. 2000) (quoting Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 604 (10th Cir. 1997)) (Ex. 20).

## Conclusion

For the foregoing reasons, SCO respectfully requests that IBM's Motion to Confine

SCO's Claims to, and Strike Allegations in Excess of, the Final Disclosures, be denied.

DATED this 19th day of June, 2006.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James


BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

By _____
*Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June, 2006, a true and correct copy of the foregoing

SCO'S MEMORANDUM IN OPPOSITION TO IBM'S MOTION TO CONFINE SCO'S

CLAIMS TO, AND STRIKE ALLEGATIONS IN EXCESS OF, THE FINAL DISCLOSURES

was delivered to the following:

By U.S. Mail, postage prepaid:

> David Marriott, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604

By Hand-delivery:

> Todd Shaughnessy, Esq.
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101