SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **IBM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO CONFINE SCO'S CLAIMS TO, AND STRIKE ALLEGATIONS IN EXCESS OF, THE FINAL DISCLOSURES** |
| Plaintiff/Counterclaim-Defendant, | |
| -against- | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | **(EXPEDITED BRIEFING AND ORAL ARGUMENT REQUESTED)** |
| Defendant/Counterclaim-Plaintiff. | Civil No. 2:03CV-0294 DAK |
| | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |

402643.1

Defendant/counterclaim-plaintiff IBM respectfully submits this reply memorandum in further support of its motion to confine SCO's claims to, and strike allegations in excess of, its December 22, 2005 Disclosure of Material Allegedly Misused by IBM (the "Final Disclosures").

**Preliminary Statement**

In opposition to IBM's motion, SCO submits 18 pages of argument and another 700 pages of exhibits. But nothing in those materials—no matter their volume—can change the fact that SCO seeks (by its expert reports) to challenge as misused material not specifically identified in the Final Disclosures. Judge Kimball's scheduling order, the parties' stipulation and basic fairness preclude SCO from changing its case at this point in the proceedings. So too does the fact that it failed timely to disclose the new material in response to IBM interrogatories that clearly called for it. Insofar as they challenge as misused material not specifically identified in the Final Disclosures, SCO's expert reports should be stricken.

The issue presented by this motion is simple. Should the Court limit SCO's claims, consistent with Judge Kimball's scheduling order and the parties' express agreement, to the allegedly-misused material specifically identified in the Final Disclosures? Or should SCO be permitted in its expert reports to identify as misused new material that: (1) was not the subject of fact discovery, (2) would fundamentally change the nature and scope of the case, (3) could have been disclosed years ago, and (4) if allowed, would result in incurable prejudice to IBM—since IBM could not properly defend itself without a substantial delay in the proceedings and any further delay of this case would by itself be unduly prejudicial? The answer, we respectfully submit, is obvious and compels the relief IBM seeks.

SCO attempts to confuse the issue by suggesting that the Court must wade through the Final Disclosures and SCO's expert reports to weed out the new material. IBM has not

1

requested that the Court undertake such an exercise, and it is entirely unnecessary. Consistent with the simplicity of the issue presented, we merely seek an order stating: "IT IS HEREBY ORDERED THAT, as provided in the Court's Order of July 1, 2005, and agreed by the parties, SCO may not challenge as misused (by expert report or otherwise) any material not specifically identified as misused by IBM in the Final Disclosures." That is all that is required to resolve this motion.

As explained in our moving papers, three of SCO's expert reports (those of Messrs. Ivie, Rochkind and Cargill) identify new material that was not specifically identified in SCO's Final Disclosures. For the most part, SCO argues that these reports contain nothing new. If that were true, however, then the order IBM seeks would not affect SCO's reports, and SCO should have no opposition to this motion. Notably, after SCO filed its opposition brief, and in an effort to resolve in part this motion, we asked SCO to stipulate that it does not (and will not) contend that IBM misused material not specifically identified in the Final Disclosures. SCO declined.

The Cargill report is by far the biggest offender, and it is the focus of this brief. SCO acknowledges that the Cargill report seeks to challenge as misused material not specifically identified in the Final Disclosures. SCO simply asserts, without any support, that it was free to use its expert reports to challenge as misused material that was not specifically identified in the Final Disclosures. As is further discussed below, SCO's claims should be limited to the Final Disclosures, because (1) the Court expressly ordered and the parties expressly agreed that the Final Disclosures would define the bounds of their claims (see Section I below); (2) SCO failed to disclose the new material in response to IBM's interrogatories, and none of the arguments offered by SCO to explain the excesses of its expert reports withstands even the slightest scrutiny (see Section II below); (3) allowing SCO now to identify as misused material not specifically

2

identified in the Final Disclosures would result in incurable prejudice to IBM (see Section III below); and (4) as SCO acknowledged before Judge Kimball, there is ample authority for the Court to enforce its Orders and the parties' agreement and protect IBM from prejudice (see Section IV below).

## Argument

I.   THE COURT ORDERED AND THE PARTIES AGREED THAT THE FINAL DISCLOSURES WOULD DEFINE THE BOUNDS OF THEIR CLAIMS.

SCO acknowledges the Order of the Court (dated July 1, 2005) limiting its claims to the material specifically identified in the Final Disclosures (see, e.g., SCO Opp'n at 1), but then proceeds to interpret the order out of existence. Similarly, SCO ignores altogether the parties' express agreement limiting their claims. SCO simply pretends that nothing about Judge Kimball's order or the parties' agreement foreclosed it from identifying as misused material not specifically identified in the Final Disclosures. Thus, SCO says, it was (and is) free to change the case in its expert reports.

After years of attempting to get SCO to define the scope of its claims, IBM asked the Court to set a final deadline, before the close of fact discovery, by which both parties would be required once and for all to identify all allegedly misused material. IBM made perfectly clear that, under its proposal, "[n]o party could contend that another party misused material not identified by the . . . deadline; no expert could opine as to the misuse of material not identified by the deadline". (Mem. Supp. IBM's Proposed Scheduling Order, dated 3/25/05, at 5.) The purpose of the request, which SCO resisted, was to avoid the very predicament IBM now faces: the untimely disclosure of SCO's allegations of infringement at a time when IBM could not properly prepare a defense. (Reply Mem. Supp. of IBM's Proposed Scheduling Order, dated 4/11/05, at 5.)

3

Judge Kimball adopted IBM's proposal and set a final deadline, before the close of fact discovery, for parties "to Identify with Specificity All Allegedly Misused Material" and to update their interrogatories accordingly. (Order § III, 7/1/05.)  In so doing, the Court foreclosed both parties from using their expert reports to allege misuse or infringement as to material not specifically identified in the Final Disclosures.  Nothing in the language of the Court's Order excepts SCO's claims from its reach, and there is no evidence that the Court intended *sub silentio* to allow the parties to circumvent the Order by their expert reports.  Indeed, SCO's opposition brief is nothing more than a repeat of the arguments Judge Kimball rejected in entering the July 1, 2005 Order.

Subsequent to entry of the Court's July 1, 2005 Order, a dispute arose between the parties as to the scope of permissible discovery.  When the parties met and conferred on the issue, SCO repeatedly acknowledged that its claims were limited to the material specifically identified in the Final Disclosures.  More important, it then confirmed the fact in a stipulation executed by the parties, submitted to the Court, and relied on by IBM.  The stipulation provides:

> 1.  Both parties are required to identify with specificity any and all material that each party contends the other has misused no later than December 22, 2005;
>
> …
>
> (c) Neither party shall be permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline.

(Stip. Re Scheduling Order at 2-3, dated 12/7/05.)  SCO's brief, despite its length, fails even to mention this stipulation.  IBM has honored this agreement (by not exceeding the scope of its final disclosures with its expert reports) and has relied on SCO's obligation to do the same. Thus, independent of the Court's Order, SCO waived the right to expand its claims beyond the

4

material specifically identified in the Final Disclosures. See, e.g., AT&T Corp. v. MRO Commc'ns., Inc., No. 98-17348, 205 F.3d 1350, 1999 WL 1178965, at *3 (9th Cir. 1999).

SCO suggests that IBM represented to Judge Kimball that expert reports could be used to supplement the Final Disclosures and thus, it says, IBM should not be allowed to complain that SCO's expert reports seek to supplement the Final Disclosures. (SCO Opp'n at 4-5.) SCO is wrong. IBM repeatedly stated exactly the opposite, as is evident from the two memoranda and the transcript attached hereto as Exhibits A, B and C. In fact, in the very brief cited by SCO as support for IBM's supposed inconsistent position, IBM stated:

> SCO cannot credibly contend that it should be allowed to identify the material at issue in this case for the first time via its expert reports and after the close of fact discovery. The Allegedly Misused Material must be disclosed well in advance of the close of all fact discovery so that the parties can take fact discovery as to their defenses and focus on the issues to be addressed during the expert phase of the case. Not requiring the parties to disclose the Allegedly Misused Material before the close of all fact discovery would merely allow sandbagging.

(Reply Mem. Supp. of IBM's Proposed Scheduling Order, dated 4/11/05 at 4-5.) Tellingly, SCO excluded this language from its citation. (SCO Opp'n at 4.)

SCO further argues that "[t]he December submission was not intended and did not require SCO to set forth a legal theory or expert analysis of copyright infringement or breach of contract, nor to submit the entire sum of evidence supporting IBM's misuse of the material identified in the December Submission." (SCO Opp'n at 4.) But IBM does not contend that the Final Disclosures required a full explication of SCO's legal arguments, extended expert analysis or submission of all of SCO's trial exhibits. What the Court required of both parties—and what IBM did and SCO was supposed to do (but did not)—was to identify any and all allegedly misused material once and for all. If SCO's revisionist view of the Court's Order and the parties' agreement were correct, neither the Order nor the stipulation would have any meaning.

5

As SCO construes them, SCO would be free to identify new material at any time—including during trial.

SCO's own conduct belies its new-found interpretation of the Court's Order, and the parties' agreement. SCO identified numerous items of allegedly infringing Linux material in the very Final Disclosures that it now argues did not require the identification of all allegedly infringing Linux material.[1] Moreover, SCO expressly states in the Final Disclosures that these materials were provided pursuant to the Court's Order of July 1, 2005. (See SCO's Second Rev. Supp. Resp. to Def's 6th Set of Interrogs. at 2.) Yet SCO would now have the Court believe this material was merely provided as a courtesy to IBM, not because it was required to disclose allegedly infringing material in Linux with specificity.

II. NONE OF THE ARGUMENTS OFFERED BY SCO TO JUSTIFY ITS ADDITION OF THE NEW MATERIAL WITHSTANDS SCRUTINY, ESPECIALLY IN VIEW OF SCO'S FAILURE TO IDENTIFY IT IN RESPONSE TO IBM'S INTERROGATORIES.

Putting aside the fact that the Court's Order and the parties' agreement preclude SCO from challenging new material in its expert reports, so too does its failure to identify the material in response to IBM's interrogatories. That failing alone is sufficient to justify the remedy IBM seeks, and none of the excuses offered by SCO to justify its conduct bears scrutiny.

As the Court is aware, IBM propounded discovery requests seeking identification of the allegedly misused material years ago. At no point did SCO disclose in its responses to those interrogatories the new material challenged by this motion. Thus, under well-established precedent, SCO cannot challenge that material by its expert reports. See, e.g., LCA Corp. v. Shell Oil Co., 916 F.2d 434, 440 (8th Cir. 1990); Hickory Specialties, Inc. v. Forest Flavors Int'l,

---

[1] IBM does not, of course, seek to preclude SCO from proceeding with respect to the allegedly infringing material specifically identified as misused in the Final Disclosures.

6

Inc., 12 F. Supp. 2d 760, 770-71 (M.D. Tenn. 1998); Tassin v. Sears, Roebuck and Co., 946 F. Supp. 1241, 1252 (M.D. La. 1996).

Notably, in urging Judge Kimball not to enter an order requiring SCO to make final disclosures, SCO itself acknowledged that it is limited by its interrogatory responses. SCO stated:

> IBM has served interrogatories on SCO, and SCO is under an obligation to respond to those interrogatories. We will do so as soon as we can. If it arises that IBM is of the view that it has not received our responses to their interrogatories in enough time to complete discovery, that is an issue to raise with the Court at that point. The Court [has a full] arsenal of measures it can take to allow more time or to preclude us from using evidence if we haven't produced responses to those interrogatories in time. (Hr'g Tr. at 95-96, 4/21/05.)

Having acknowledged that its claims would be limited by its interrogatory responses, which merely incorporate the Final Disclosures, SCO cannot now argue that its interrogatory responses do not matter. Those responses, like the Court's order and the parties' agreement, limit the scope of SCO's claims

None of the justifications offered by SCO to exceed its interrogatory responses (and challenge new material) survives even the slightest scrutiny:

First, SCO seeks to pass off the new material as insignificant. That is utterly untrue. The Cargill report identifies massive amounts of new material in Linux that SCO says infringes its alleged UNIX copyrights. Whereas the Final Disclosures identify only 326 lines of allegedly infringing code in the Linux kernel, the Cargill Report identifies three new categories of allegedly misused material that effectively accuse every file in Linux. As the Court knows, Linux is comprised of thousands of files, which are in turn made up of millions of lines of code.[2]

---

[2] Even as to the categories of material identified in the Final Disclosures, SCO uses Dr. Cargill to expand considerably the scope of its allegations. For example, the Cargill report

Hence, SCO could not have undertaken a more radical change in the case. The Cargill Report accuses more than a thousand times as much material as SCO identified in its Final Disclosures.

<u>Second</u>, SCO claims that IBM has long known the newly identified material was at issue and therefore, the argument seems to go, SCO was not required to identify it in answers to interrogatories or in its Final Disclosures. (SCO Opp'n at 10-13.) SCO points to a magazine article in which it is quoted as claiming that Linux infringes SCO's alleged UNIX copyrights. Of course, IBM has long known that SCO <u>generally</u> accuses Linux of infringement and has asserted a counterclaim against SCO seeking a declaration that IBM's Linux activities do not infringe the copyrights. But neither SCO's press releases nor the counterclaim IBM filed in response revealed the specifics of SCO's allegations. That is, of course, the reason IBM sought, and the Court ordered specific identification of the allegedly misused material. At bottom, SCO's argument makes no sense. SCO argues simply that it was not required to answer interrogatories or to identify the new material in the Final Disclosures because it had publicly asserted generally that Linux infringes its copyrights and IBM knew of the assertions. To state this argument is to refute it.

<u>Third</u>, SCO asserts that one of IBM's experts, Professor Kernighan, has already evaluated the newly-identified material. (SCO Opp'n at 13-16.) That assertion is both false and disingenuous. Until SCO submitted the Cargill report, neither IBM nor any of its experts, including Professor Kernighan, knew that SCO claimed IBM misused the new material identified in the Cargill report. The Court ordered, and the parties agreed, that SCO's claims would be limited to the Final Disclosures. The Final Disclosures make no specific mention of the new

---

alleges that IBM has misused the "totality of the Streams framework", drawing in every line in over 150 new files, never before mentioned by SCO.

material. SCO's responses to IBM's interrogatories also make no mention of it. While Professor Kernighan addresses some of the material considered in the Cargill report (*i.e.*, the material identified in the Final Disclosures), Professor Kernighan does not address any of the new material specifically identified for the first time in the Cargill report -- none of it.[3] To do so would require a whole round of litigation.

Finally, it is important to note what SCO does not contend. SCO does not (and could not in good faith) argue that, despite a diligent search, it just learned of the new material. That is because the new material -- all of it -- has been available to SCO from long before the commencement of this lawsuit. In fact, some of it, such as the challenged features of the Linux file system, has been a matter of public record since the inception of Linux in 1991.[4] Remarkably, other of the new material is in Linux because SCO itself helped to put it there when it was in the Linux business. If SCO had wished to challenge these materials it could have done so long before it ever filed suit against IBM. In view of the Court's order and the parties' agreement, it had a duty to do so no later than the Final Disclosures.

---

[3] SCO complains that IBM did not list in its opening brief all of the instances in which SCO's expert reports exceed the Final Disclosures. Putting aside the irony of this complaint, it misses the mark. There is no reason for IBM, the Court or anyone else exhaustively to catalogue SCO's excesses at this point. It should be sufficient for the Court simply to reaffirm that SCO's claims are limited to the material specifically identified in the Final Disclosures, as per the Court's prior order and the parties' stipulation.

[4] For example, SCO claims that the Linux file system infringes SCO's alleged copyrights. Through Mr. Cargill, SCO complains that the Linux file system has characteristics similar to the file-system of UNIX System V, such as hierarchical files, a single tree of directories and no imposed structure. These have been features of Linux since its inception, much like wheels, doors and brakes have long been features of a car.

III.  SCO'S CONDUCT IS UNDULY PREJUDICIAL TO IBM.

The prejudice resulting from SCO's identification of new, allegedly-misused material should be self-evident. SCO seeks to expand the case nearly six months after the deadline for its Final Disclosures, after the close of fact discovery, simultaneous with the filing of initial expert reports, on the eve of the due date of IBM's opposing expert reports and when summary judgment briefs are forthcoming. If allowed, this would force IBM to prepare a defense with respect to the new material, without the benefit of discovery, in a matter of weeks, while SCO has spent more than three years developing its case.

SCO devotes only a footnote to addressing the prejudice caused by its new claims. (SCO Opp'n at 16 n.6.) And there it argues only that IBM would not require more than three additional months to address the new material. (Id.) That is more than enough time, says SCO, because "[u]nder the Court's schedule, IBM was provided only three months of fact discovery, until March 2006, following the submission of the December 2005 reports."[5] (Id.) That is wrong. Not only does it ignore the fact that <u>any</u> additional delay in these proceedings would be prejudicial to IBM, but it also mischaracterizes the nature of the three-month discovery period previously provided by the Court.[6]

---

[5] SCO goes so far as to claim that giving IBM more than three months to respond to SCO's new claims would result in a "discovery windfall" to IBM. Having to incur the costs of litigating a massive new claim is hardly a windfall. (SCO Opp'n at 16 n.6.)

[6] The Court afforded IBM a three-month period of discovery about the Final Disclosures, at IBM's request, after SCO certified that it had complied with the Court's orders and disclosed all of the allegedly-infringing material then available to it. IBM proposed a three-month period for discovery because, as the Court observed at the time, SCO had disclosed absolutely no evidence of infringement by Linux, despite a long standing obligation to disclose any material reasonably available to it, including the new material at issue. Thus, IBM reasonably believed that three months would be sufficient, especially since it would have had nearly six months to prepare an expert report. What IBM did not know is that SCO would ignore the Court's Order, the parties'

10

As SCO well knows, the kind of change it proposes (by indirection) would require a whole new round of litigation. None of IBM's discovery was taken with the newly-identified material in mind. How could it have been? SCO failed to identify it in the Final Disclosures or in response to IBM's interrogatories, despite repeatedly assuring IBM and the Court that it had provided complete and detailed responses. To make matters worse, SCO's delay in identifying the material has no doubt resulted in the destruction of evidence relating to SCO's own Linux activities, which would prejudice IBM and, at a minimum, complicate defensive discovery.[7]

## IV. THERE IS AMPLE BASIS FOR THE COURT TO ENFORCE ITS ORDERS AND THE PARTIES' STIPULATION.

As stated in IBM's opening brief, there is ample authority for limiting a party's claims to the scope of its disclosures, especially where the disclosures were ordered by the Court. See Kern River Gas Transmission Co. v. 6.17 Acres of Land, 156 Fed. Appx. 96, 100, 103 (10th Cir. 2005) (affirming district court's decision "preclud[ing] . . . [defendant] from introducing at the trial any expert evidence or documents not produced during discovery"); Praxair, Inc. v. Atmi, Inc., 231 F.R.D. 457, 463-64 (D. Del. 2005) (striking portions of expert report that incorporated new evidence and defenses that were not disclosed prior to a discovery cutoff); Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc., Civ. A. No. 95 C 1490, 1996 WL 735586, at *9 (N.D. Ill. Dec. 19, 1996) (striking portions of expert report which opined on challenged materials not identified in final interrogatory responses).

---

stipulation and SCO's interrogatory answers and submit an expert report including more than a thousand times the allegedly misused material identified in the Final Disclosures.

[7] Unlike SCO, IBM abided by the July 1, 2005 Order and its agreement with SCO. IBM did not use its expert reports to challenge as misused material not specifically identified in its disclosures to SCO. Thus, allowing SCO to expand the case with its expert reports would penalize IBM doubly.

11

SCO makes no mention of these cases but relies instead on <u>Ocelot Oil Corp. v. Sparrow Industries</u>, 847 F.2d 1458 (10th Cir. 1988), and <u>Washington v. Arapahoe County Department of Soc. Servs.</u>, 197 F.R.D. 439 (D. Colo. 2000).  Neither case is any impediment to the relief IBM seeks here.  The <u>Ocelot Oil</u> case reversed an order affirming an involuntary dismissal with prejudice for discovery abuse because the district court applied the wrong standard of review (clearly erroneous rather than *de novo*).  847 F.2d at 1463-64.  The <u>Washington</u> case denied a motion to strike an untimely expert report, the submission of which resulted in "no undue prejudice" to the opposing party and would not necessitate a delay in the trial.  197 F.R.D. at 441.

By contrast, IBM does not seek the involuntary dismissal with prejudice of SCO's case; it merely seeks enforcement of the Court's disclosure order and the parties' agreement.  Whereas allowing the testimony at issue in <u>Washington</u> resulted in no prejudice to the opposing party, permitting SCO to change its case would result in incurable prejudice to IBM.  This is not a motion about the mere admission of evidence on a claim in the case (as was true in <u>Washington</u>), it is about a fundamental change in the nature of the case and an exponential increase in its size that would result in incurable prejudice.  Allowing SCO to now identify as misused every file in Linux, when the Final Disclosures identify only 326 lines of Linux kernel code, would render meaningless Judge Kimball's Scheduling Order, the parties' agreement and much of what has happened over the last three years.

What makes SCO's opposition especially baseless is that it ignores SCO's own prior statements to the Court about its power to preclude SCO from proceeding with respect to unidentified material.  In opposing (without success) IBM's request for the entry of a deadline for final disclosures of allegedly misused material, SCO assured the Court, as stated above, that,

12

402643.1

even without imposing a specific disclosure deadline, the Court could preclude SCO from using evidence that it failed timely to disclose.

> The Court [has a full] arsenal of measures it can take to allow more time or to preclude us from using evidence if we haven't produced responses to those interrogatories in time. (Hr'g Tr. at 95-96, 4/21/05.)

It cannot be that the Court has less power to limit SCO's claims now after the entry of the July 1, 2005 Order than SCO acknowledged that the Court had before entry of the Order. SCO previously (and correctly) conceded that the Court could do exactly what IBM now asks it to do, and SCO cannot now be heard to argue otherwise.

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter an order confining SCO's claims to, and striking allegations in excess of, the Final Disclosures.

DATED this 26th day of June, 2006

                SNELL & WILMER L.L.P.

                By /s/ Todd M. Shaughnessy
                    Alan L. Sullivan
                    Todd M. Shaughnessy
                    Amy F. Sorenson

                CRAVATH, SWAINE & MOORE LLP
                Evan R. Chesler
                David R. Marriott

                *Attorneys for Defendant/Counterclaim-Plaintiff*
                *International Business Machines Corporation*

Of counsel:
INTERNATIONAL BUSINESS MACHINES CORPORATION
Jennifer M. Daniels
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000
*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of June, 2006, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

and by U.S. Mail, postage pre-paid to:

> Robert Silver
> Edward Normand
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504

/s/ Todd M. Shaughnessy

402643.1