IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

| | | |
|---|---|---|
| THE SCO GROUP INC. | : | Case No. 2:03cv00294 DAK |
| | : | |
| Plaintiff/Counterclaim | : | |
| Defendant, | : | ORDER GRANTING IN PART IBM'S MOTION TO LIMIT SCO'S CLAIMS |
| vs. | | |
| INTERNATIONAL BUSINESS MACHINES CORP. | | JUDGE DALE A. KIMBALL |
| Defendant/Counterclaim Plaintiff. | | MAGISTRATE JUDGE BROOKE C. WELLS |

This matter is before the court on Defendant/Counterclaim-Plaintiff International Business Machines Corporation's (IBM) Motion to Limit The SCO Group Inc.'s (SCO) Claims Relating to Allegedly Misused Material.[1]  A hearing on IBM's motion was held on April 14, 2006.  At the hearing, SCO sought leave to file the declaration of Marc Rochkind.  The court granted SCO's request and out of a sense of fairness gave IBM 10 business days to respond to the Rochkind declaration because this was originally IBM's motion.[2]  The court has thoroughly considered the relevant

---

[1] Docket no. 619.

[2] SCO sought further leave of court to file another rebuttal declaration to Mr. Davis' rebuttal declaration.  The court denied SCO's request.  *See* Order dated May 10, 2006.

law, expert declarations, the parties' memoranda, and has reviewed the 198 items at issue in this motion.[3]

During a recent hearing this court stated,

> Obviously what I don't want is either side to use information that has been withheld in support of a summary judgment motion or in support of their case at trial, all evidence need[s] to be on the table for the other party to analyze and take a look at.[4]

After the evidence is "on the table" then the fact finder will be able to determine the merits of both SCO's and IBM's claims and counterclaims.  The current motion focuses on the interpretation of the court's prior orders and exactly what evidence should have been provided pursuant to these orders.  The sanction IBM seeks - precluding SCO from using certain alleged misappropriated items because of a lack of specificity - is very serious.  As outlined in greater detail below, the court finds that SCO has failed in part to meet the level of specificity required by this court's orders and the order entered by Judge Kimball.  It is also apparent that SCO in some instances failed to meet the level of specificity it required of IBM.  Further, this failure was willful under case law and prejudicial to IBM.  Therefore, the court GRANTS IBM's Motion to Limit SCO's Claims Relating to Allegedly Misused Material in PART.

---

[3] SCO submitted its alleged misappropriated materials on CD-ROM.  The court has reviewed all of the disputed items individually.

[4] Hearing held on February 24, 2006, transcript p. 50.

**BACKGROUND**

The instant dispute does not take place in a vacuum.  As
mentioned, the crux of the latest dispute centers around the
interpretation of court orders which have been entered over the
course of a couple of years.  The court finds the following
background, including SCO's public statements, helpful in framing
the issues involved in IBM's motion.

In March 2003 SCO filed the instant action against IBM
alleging, *inter alia*, that IBM had misappropriated portions of
SCO's copyrighted code and contributed these portions to Linux.
SCO alleges that "a significant amount of UNIX protected code and
materials are currently found in Linux 2.4, 2.5x and Linux 2.6
releases in violation of SCO's . . . copyrights."[5]  In addition,
SCO alleges that IBM is "improperly extracting and using the
confidential and proprietary information it acquired from UNIX
and dumping that information into the open source community."[6]
SCO further alleges that IBM has "infringed, [has] induced the
infringement of, and [has] contributed to the infringement of,
copyright registrations of SCO and its predecessors."[7]  In sum,
according to SCO, "Linux is a clone of UNIX, including protected
UNIX System V Technology, including modifications and derivatives

---

[5] Second Am. Compl. at ¶ 79.

[6] *Id.* ¶ 110.

[7] *Id.* ¶ 179.

thereof."[8]

## I.   SCO's Public Statements

As repeatedly noted by IBM, concurrent with SCO's court filed allegations has been SCO's siren song sounding the strength of its case to the public.  At a trade show in 2003 SCO shared with the public a presentation outlining SCO's claims against IBM.[9]  SCO identified four categories of alleged misappropriation: (1) literal copying ("[l]ine-for-line code copied from System V into Linux kernels 2.4+");[10] (2) derivative works which arose from "[m]odifications of System V created by vendors contributed to Linux kernels 2.4+ in violation of contracts";[11] (3) obfuscation ("[c]opying, pasting, removing legal notices, reorganizing the order of the programming structures");[12] and (4) non-literal transfers ("[m]ethods, structures and sequence from System V contributed to Linux kernels 2.4+").[13]  Finally, in the presentation SCO also gave "one example of many" of line by line copying between the System V Code and Linux kernel code.[14]

---

[8] *Id.* ¶ 83.

[9] IBM's Mem. in Supp. 1st Motion to Compel ex. F.

[10] *Id.* p. 8.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *See id.* p. 10-14.

In April 2003, SCO's Senior Vice President Chris Sontag stated that, "We are using objective third parties to do comparisons of our UNIX System V source code and Red Hat [Linux] as an example.  We are coming across many instances where our proprietary software has simply been copied and pasted or changed in order to hide the origin of our System V code in Red Hat. This is the kind of thing that we will need to address with many Linux Distribution companies at some point."[15]

In June 2003 SCO took "its case against the Linux operating system and IBM on the road."[16]  SCO "began showing to U.S. analysts code that, it claims, proves that the source code to the Linux operating system contains sections of code lifted directly from SCO's Unix code base."[17]  Senior Vice President Chris Sontag stated that, "The one specific example that I'm showing right now is [Unix] code, line by line copied into Linux."[18]  A SCO spokesman went on to state that SCO had hired three teams of experts, including a group from MIT's math department to analyze Linux and UNIX code for similarities.  "All three found several

---

[15] MozillaQuest The On-Line Computer Magazine: SCO Clears Linux Kernel but Implicates Red Hat and SuSE, p. 2 (April 2003) (emphasis omitted), *available at* http://www.mozillaquest.com/Linux03/ScoSource-10_Story01.html.

[16] Computerworld: SCO shows Linux code to analysts (June 2003), *available at* http://www.computerworld.com/action/article.do?command=viewArticleBasic&articleId=81973.

[17] *Id.*

[18] *Id.* (alterations in original).

instances where our Unix source code had been found in Linux."[19]

Chris Sontag stated in November 2003 during an interview that, "There are other literal copyright infringements that we have not publicly provided, we'll save those for court.  But there are over one million lines of code that we have identified that are derivative works by IBM and Sequent that have been contributed into Linux that we have identified . . . ."[20]

In December 2003, SCO sent a letter to Linux users identifying a portion of their copyrighted code which had been incorporated into Linux without authorization.[21]  SCO stated that files in Linux version 2.4.21 which incorporated copyrighted binary interface code must be removed.  And, that "SCO's review is ongoing and will involve additional disclosures of code misappropriation."[22]

Also in December, Darl McBride and Chris Sontag were asked during an interview, "Have you identified exactly what code is at issue here?"[23]  In response Mr. Sontag stated, "We've identified

---

[19] *Id.*

[20] CRN Interview: Darl McBride & Chris Sontag, SCO Group (November 2003), *available at* http://www.crn.com/showArticle.jhtml?articleID=18831088&flatPage=true.

[21] Decl. of Todd Shaugnessy Re: cross motion for summary judgment ex. 13.

[22] *Id.*

[23] CRN Interview: Darl McBride & Chris Sontag, SCO Group (December 2003), *available at* http://www.crn.com/showArticle.jhtml;jsessionid=DUWHLXLGZKHNMQSND BOCKHSCJUMEKJVN?articleID=18831200&queryText=crn+interview+sco's+

a lot of different things.  Early on when we filed against IBM,
people wanted us to show the code.  Even though we're fighting a
legal case and [a courtroom] is where it's appropriately vetted,
we decide to take at least one example and show it."[24]  Sontag
continues, "A substantial amount was a cut-and-paste job, a few
lines changed, but a substantial body of code.  You don't have to
be a programmer at all to see copying has occurred.  It wasn't
just 10 lines of code, that example was over 80 to 100 lines of
code."[25]

## II.  Motions and Orders

In October 2003 IBM filed its first Motion to Compel
Discovery.[26]  In the motion IBM sought an order from the court
compelling SCO to "respond fully to IBM's First Set of
Interrogatories and First Request for Production of Documents,
served June 13, 2003."[27]  The following is a sampling from IBM's
First Set of Interrogatories which is attached to their
memorandum in support.

> **INTERROGATORY NO. 1:** Please identify, with specificity
> (by product, file and line of code, where appropriate)
> all of the alleged trade secrets and any confidential

---

darl+mcbride.

[24] *Id.* (alterations in original).

[25] *Id.*

[26] *See* Motion, Docket no. 44.

[27] *Id.* p. 2.

7

or proprietary information that plaintiff alleges or
contends IBM misappropriated or misused, . . .

**INTERROGATORY NO. 4:** Please describe, in detail, each
instance in which plaintiff alleges or contends that
IBM misappropriated or misused the alleged trade secret
or confidential or proprietary information, . . .; and
(d) with respect to <u>any code or method</u> plaintiff
alleges or contends that IBM misappropriated or
misused, the location of each portion of such code or
method in any product, such as AIX, in Linux, in open
source or in the public domain.[28]

Based on a plain reading of these interrogatories, it is apparent

to the court that IBM was not only seeking information about

SCO's trademark claims but information about "any confidential or

proprietary information that plaintiff alleges or contends IBM

misappropriated or misused."[29]

In November 2003 SCO filed its first Motion to Compel.[30]  In

its motion SCO sought an order from the court compelling IBM to

respond fully to SCO's First Request for Production of Documents

and First Set of Interrogatories.  Specifically, SCO sought the

production of

(1) the source code for all of IBM's versions of UNIX
(known as "AIX"), together with all notes and
documentation for the software development methods used
in the design and modification process;

(2) the source code for all of Sequent's version of

---

[28] IBM's First Set of Interrogatories and First Request for
The Production of Documents (third emphasis added).

[29] *Id.*

[30] *See* Docket no. 66.

UNIX (known as "Dynix"), . . . .[31]

The following definition of identify is found within SCO's first set of interrogatories, which was served upon IBM in June 2003. This was also part of SCO's first motion to compel.[32]

> 7. The term "identify" shall mean:
>
> e. in the case of alleged trade secrets or confidential or proprietary information, whether computer code, methods or otherwise, to give a complete and detailed description of such trade secrets or confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information, and the location (by module name, file name, sequence number or otherwise) of those lines of code within any larger software product or property.[33]

After reviewing the record, the court has not found any evidence that SCO abandoned the level of specificity it required from IBM in its first set of interrogatories, *to wit*, "identification of the specific lines and portions of code"[34] for methods or other "confidential or proprietary information."[35]

Shortly after SCO filed its First Motion to Compel, IBM filed its Second Motion to Compel Discovery on November 6,

---

[31] SCO's Mtn. to Compel p. 2.

[32] *See* Docket no. 66.

[33] SCO's First Request for Production of Documents and First Set of Interrogatories p. 3-4 (emphasis added).

[34] *Id.*

[35] *Id.*

2003.[36]  In this motion IBM sought to compel SCO to fully answer IBM's second set of interrogatories and to produce certain agreed upon documents.[37]  IBM's second set of interrogatories contains the following:

> **INTERROGATORY NO. 12:** Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights; and (b) the nature of plaintiff's rights, including but not limited to whether and how the code or other material derives from UNIX.

> **INTERROGATORY NO. 13:** For each line of code and other material identified in response to Interrogatory No. 12, please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights; and (b) whether plaintiff has ever distributed the code or other material or otherwise made it available to the public, as part of a Linux distribution or otherwise, . . . .[38]

On December 5, 2003 this court heard oral argument on IBM's First and Second Motions to Compel and SCO's First Motion to Compel.  The court granted IBM's motions and stayed action on SCO's motion until it complied with the court's order that was entered on December 12, 2003.[39]  The court ordered SCO:

---

[36] *See* Docket no. 68.

[37] *See id.* p. 2.

[38] IBM's Second Set of Interrogatories and Second Request for the Production of Documents p. 2.

[39] *See* Docket no. 94.

> 1.  To respond fully and in detail to Interrogatory
> Nos. 1-9 as stated in IBM's First Set of
> Interrogatories.
>
> 2.  To respond fully and in detail to Interrogatory
> Nos. 12 and 13 as stated in IBM's Second Set of
> Interrogatories.
>
> 4.  To identify and state with specificity the source
> code(s) that SCO is claiming form the basis of their
> action against IBM.
>
> 6.  If SCO does not have sufficient information in its
> possession, custody, or control to specifically answer
> any of IBM's requests that are the subject of this
> order, SCO shall provide an affidavit setting forth the
> full nature of its efforts, by whom they were taken,
> what further efforts it intends to utilize in order to
> comply, and the expected date of compliance.[40]

On February 6, 2004 the court heard arguments concerning SCO's compliance with the court's December 12, 2003 order.  After reviewing the progress of the case up to that point, the court lifted the discovery stay in light of "SCO's good faith efforts to comply with the Court's prior order."[41]  This order - dated March 3, 2004 - specifically ordered both IBM and SCO to provide certain items pursuant to discovery requests.  The court does not recite the order in its entirety due to its length but a few of the salient portions include the following: IBM is ordered

> 1.  To provide the releases of AIX and Dynix consisting
> of "about 232 products" as was represented by Mr.
> Marriott at the February 6, 2004 hearing. . . .
> Following this production, SCO is to provide additional
> memoranda to the Court indicating if and how these
> files support its position and how they are relevant.
> The memorandum is to include with specificity, and to
> the extent possible, identification of additional files

---

[40] Order dated December 12, 2003.

[41] Order dated March 3, 2004 p. 3.

SCO requests and the reasons for such requests.  The
Court will then consider ordering IBM to produce more
code from AIX and Dynix.

2.  Pursuant to Rule 26(b), SCO should use its best
efforts to obtain relevant discovery from the Linux
contributions that are known to the public, including
those contributions publicly known to be made by IBM.
IBM, however, is hereby ordered to provide to SCO any
and all non-public contributions it has made to Linux.

5.  IBM is ordered to provide further responses to
SCO's interrogatory numbers two, five and eleven.[42]


SCO, on the other hand was ordered

1.  To fully comply within 45 days of the entry of [the
March 3, 2004] order with the Court's previous order
dated December 12, 2003.  This is to include those
items that SCO had difficulty in obtaining prior to the
Court's previously ordered deadline of January 12,
2004.

2.  As previously ordered, SCO is to provide and
identify all specific lines of code that IBM is alleged
to have contributed to Linux from either AIX or Dynix.
This is to include all lines of code that SCO can
identify at this time.

3.  SCO is to provide and identify all specific lines
of code from Unix System V from which IBM's
contributions from AIX or Dynix are alleged to be
derived.

4.  SCO is to provide and identify with specificity all
lnes of code in Linux that it claims rights to.

5.  SCO is to provide and identify with specificity the
lines of code that SCO distributed to other parties.
This is to include where applicable the conditions of
release, to whom the code was released, the date and
under what circumstances such code was released.[43]


In May 2004 IBM filed a cross-motion for partial summary

---

[42] *Id.* p. 4-5.

[43] *Id.* p. 2.

judgment on its claim for declaratory judgment of non-infringement.[44]  In opposing IBM's motion SCO argued that they needed additional discovery in order to properly respond to IBM's motion.  SCO filed a Rule 56(f) motion seeking to continue any consideration of IBM's motion until "sufficient discovery has been conducted."[45]

Consistent with SCO's arguments regarding the need for more discovery, SCO filed a renewed motion to compel discovery on July 6, 2004.  SCO sought to obtain documents and information that SCO argued IBM was required to produce pursuant to the court's March 3 order.  SCO's motion also sought information from IBM's Configuration Management Version Control (CMVC) and Revision Control System (RCS).  These systems contained "information regarding the individuals who worked on developing source code for IBM's AIX, Dynix and Linux products and the contributions of these persons to these products."[46]

This court heard oral argument on SCO's Renewed Motion to Compel on October 19, 2004 following supplemental briefing by the parties.[47]  On January 18, 2005 the court granted in part and denied in part SCO's renewed motion.[48]  Specifically, the court - over IBM's objection - ordered IBM to "provide in a readily

---

[44] Docket no. 152.

[45] SCO's Rule 56(f) Motion p. 1.

[46] SCO's Renewed Mtn. to Compel p. 2.

[47] Docket no. 327.

[48] Order dated January 18, 2005.

accessible format <u>all versions and changes</u> to AIX and Dynix."[49]
IBM was also required to file with the court an affidavit
detailing the efforts it undertook to deliver the code.
Unfortunately some older code was unavailable because it was
discarded after it became obsolete.  IBM did, however, provide
what amounted to volumes and volumes of code pursuant to SCO's
requests and this court's order.[50]

On February 9, 2005 Judge Kimball entered a memorandum
decision denying IBM's cross motion for partial summary judgment
without prejudice.[51]  Judge Kimball also stated that he would
"not entertain any dispositive motions until after discovery is
complete, unless both parties stipulate that resolution of the
motion is possible prior to the close of discovery."[52]

In an order signed by Judge Kimball on July 1, 2005, both
SCO and IBM were given two important dates, October 28, 2005 and
December 22, 2005 respectively.  These dates were court ordered
deadlines for the parties "to disclose with specificity all
allegedly misused material."[53]  With the October date being the

---

[49] *Id.* p. 9-10 (emphasis in original).

[50] In May 2005, IBM stated that, "The total amount of . . .
Dynix source code produced from RCS represents more than 17 GB of
uncompressed data."  Decl. of Todd Shaughnessy p. 9.  This data
alone would fill over 12,000 floppy disks.  Floppy disks were
among one of the most popular forms of portable memory not long
ago, although now, they are somewhat obsolete.

[51] Order dated February 8, 2005 p. 17.

[52] *Id.* p. 18.

[53] Order dated July 1, 2005 p. 4.

interim deadline and the December date being the final deadline.
Pursuant to this same order, the parties were also ordered to
"update interrogatory responses."[54]

In September 2005 SCO filed a Renewed Motion to Compel
seeking the production of "ALL non-public Linux contribution
information."[55]  SCO also sought "the development history of
Linux contributions . . . programmer's notes, design documents,
white papers, and iteration, revision, and interim versions of
those contributions."[56]  After hearing oral argument on SCO's
motion, the court denied SCO's request finding that the court's
prior orders did not contemplate the production of every single
document relating to the development of Linux.  Further, the
court found that SCO's interpretation of this court's orders was
taken out of context and that SCO failed to timely seek
clarification of any unclear portions.  Notwithstanding the
court's decision, IBM offered to produce Linux information from
specified Linux developers.  Therefore, IBM was required to

> undertake a reasonable search for and produce non-
> privileged and non-public Linux programmer's notes,
> design documents, white papers, and interim or draft
> versions of Linux contributions from the files of 20 of
> the IBM Linux developers whom SCO identifies as
> potential deponents and whose files it would like IBM

---

[54] *Id.*

[55] SCO's Renewed Motion p. 2 (emphasis in original).

[56] *Id.* p. 2.

to search.[57]

SCO filed an objection to this court's decision with Judge Kimball on October 27, 2005.  In its objection SCO argued that this court "concluded that it had not previously ordered IBM to produce the requested materials, but did not address SCO's argument that the court should now order IBM to produce them."[58] In December 2005, Judge Kimball overruled SCO's objection and affirmed this court's decision.[59]

On October 21, 2005 pursuant to this court's request SCO filed a Renewed Motion to Compel Discovery.[60]  This motion largely mirrored SCO's original motion which unfortunately was not set for a hearing because of a docketing error.[61]  SCO's motion primarily dealt with the production of documents from IBM's senior level management and the depositions of these individuals.  On December 20, 2005 this court granted in part SCO's renewed motion.

Finally, on February 24, 2006 the court denied without prejudice SCO's most recent Motion to Compel.[62]  SCO was given 30

---

[57] Order dated October 12, 2005 p. 3-4 (emphasis added).

[58] Mem. in Supp of SCO's Objection to the Magistrate Court's Order of October 12, 2005 p. 2.

[59] *See* Order dated December 16, 2005.

[60] Docket no. 534.

[61] *See id.* p. 2.

[62] Docket no. 592.

days to file a more concise and detailed motion but did not do
so.[63, 64]

## IBM'S MOTION TO LIMIT SCO'S CLAIMS

IBM seeks to limit the scope of SCO's claims relating to
allegedly misused material.[65]  The items in dispute include item
numbers 3-112, 143-149, 165-182, 186-193, 232-271, 279-293.[66]
IBM argues that SCO has failed to identify the allegedly misused
material "with the most basic detail"[67] despite requests from IBM
and court orders that required such specificity.  In essence,
without greater specificity than that provided by SCO, IBM claims
it is "left to guess as to SCO's claim[s]."[68]  Because this is
prejudicial to IBM, and in direct conflict with three orders from
the court, the appropriate remedy according to IBM is "an order
precluding [SCO] from pursuing undisclosed elements of [their]
claim."[69]

---

[63] Docket no. 633.

[64] On May 5, 2006 SCO filed a motion for in camera review of
allegedly privileged documents.  The court granted this motion in
part and is currently awaiting further briefing by SCO.

[65] Initially, IBM sought to limit 201 of the 294 items
identified by SCO in its Final Disclosures.  After further
clarification by SCO, SCO's abandonment of one of the items (No.
294), and IBM's acknowledgment that it initially improperly
included item no. 2, 198 items remain in dispute.

[66] *See* Mem. in Supp. p. 10.

[67] *Id.* p. 2.

[68] *Id.* p. 6.

[69] *Id.* p. 8.

In opposition, SCO argues that it "has fully complied with this [c]ourt's July 1, 2005 order to the parties to identify with specificity the material they allege has been misused."[70]  SCO states that, "Collectively, the report and supporting exhibits show that IBM improperly disclosed over 290 items, consisting of over 450,000 lines of source code and hundreds of confidential methods and concepts."[71]

## I.  Standards of Review

A court has "wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), . . . ."[72] "Severe sanctions are justified . . . when the failure to comply with a court order is due to <u>willfulness or bad faith</u>, or is otherwise culpable."[73]

Pursuant to Rule 37(b)(2) a court may sanction a party for failing to comply with an order.  For example, a court may enter, "An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party

---

[70]  Op. p. 1.

[71]  *Id.*

[72]  *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991); *see also Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) ("The impositions of sanctions for abuse of discovery under Fed.R.Civ.Pro 37 is a matter within the discretion of the trial court); *Eisenberg v. Univ of N.M.*, 936 F.2d 1131, 1136 (10th Cir. 1991) (stating that a district court is afforded "wide discretion in selecting an appropriate sanction").

[73]  *Daval*, 951 F.2d at 1367 (emphasis added); *see also In re Standard Metal Corp.*, 817 F.2d 625, 628 (10th Cir. 1987).

from introducing designated matters in evidence."[74]  Courts have imposed sanctions, including severe sanctions like those permitted in Rule 37(b)(2), when warranted.[75]

A court may also enter sanctions for failing to disclose required information pursuant to Rule 37(c).

> "A party that without substantial justification fails to disclose information required by Rule 26(a) [for written interrogatories] or 26(e)(1) [for supplementation of disclosure and responses] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."[76]

## II. Discussion

At the outset, the court wishes to address two of SCO's central arguments against IBM's motion.  First, SCO argues that the "preclusionary order of the type that IBM seeks is a severe

---

[74] **Fed. R. Civ. P. 37(b)(2)(B)**.

[75] *See e.g.*, **Daval, 951 F.2d at 1363** (affirming district court's decision to prohibit the presentation of certain evidence due to discovery violations); **In re Standard Metals Corp. 817 F.2d at 633** (affirming lower court's dismissal of holder's claim for failing to appear at a deposition); **Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 274** (S.D.N.Y. 2003) (precluding the defendants from introducing evidence concerning damages because of providing evasive or incomplete discovery); **Tenen v. Winter, 15 F.Supp.2d 270, 272-73 (W.D.N.Y. 1998)** (affirming magistrate's imposition of Rule 37 sanctions where alleged copyright infringer failed to provide discovery concerning court ordered interrogatories); **Kern River v. 6.17 Acres of Land et al., 2005 WL 3257509 at *2-4 (10th Cir. 2005)** (affirming district court's sanctions against property owner that included precluding presentation of expert evidence and documents).

[76] **Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir 1994)**.

sanction reserved for instances where there is a willful or bad-faith failure to comply."[77]  According to SCO, IBM cannot establish the requirement of bad faith.  Second, SCO argues that IBM's motion is in essence an attempt to obtain summary judgment.[78]

While the court agrees with SCO that the sanction IBM seeks is severe, the court disagrees that bad faith must be shown. Instead, willfulness is sufficient.[79]

Next, "A trial court has the power to dismiss a claim for the failure to obey a discovery order."[80]  Thus, contrary to SCO's suggestion, IBM's motion is not essentially about the merits of SCO's case but about "whether SCO complied with IBM's discovery requests and the Court's orders."[81]

A.  Methods and Concepts and Specificity

One of the principle disagreements in the instant dispute is the parties' disagreement over how methods and concepts are properly disclosed.  A large portion of SCO's alleged misappropriated items are methods and concepts.  "Of the 294 Items in the December Submission, about a third are cases of

---

[77] Op. p. 4.

[78] *See id.* p. 5.

[79] *See* **Daval, 951 F.2d at 1367**; **In re Standard Metals Corp., 817 F.2d at 628**.

[80] **In re Standard Metals Corp., 817 F.2d at 628**.

[81] Reply p. 9 fn. 9.

misused code, and about two-thirds are cases of misused methods and concepts."[82]

IBM argues that under the court's orders SCO should have provided more specificity, including version, file, and line information, for the items SCO claims were misappropriated. IBM's expert Randall Davis' states, "The methods and concepts employed in an operating system (or any computer program) *are in the source code*.[83]  Hence, under IBM's view of the court's specificity requirement the source code behind methods and concepts should have been disclosed by SCO.

In contrast, SCO's expert Marc Rochkind states, "Contrary to disclosures of source code, disclosures of methods and concepts neither require an accompanying disclosure of source code, nor is the method and concept defined or identified by source code."[84] Mr. Rochkind continues, "Many textbooks on computer programming discuss methods and concepts without providing accompanying source code for actual systems."[85]

After considering the expert declarations and the parties' memoranda, the court finds that methods and concepts are at least on some basic level comprised of source code.  The court agrees with Mr. Rochkind, SCO's expert, that methods and concepts can be

---

[82] Decl. Marc Rochkind p. 3.

[83] Reb. Decl. Randall Davis p. 11 (emphasis in original).

[84] Decl. Marc Rochkind p. 4.

[85] *Id.*

discussed without disclosing source code.  But it is possible,
and even preferable in many instances, to provide the code behind
methods and concepts.  In fact, Mr. Rochkind's own publication
*Advance Unix Programming* (2d ed. 2004), provides many examples of
code when discussing "fundamental concepts."

Closely related to the methods and concepts question is in
this court's view the heart of the dispute - what level of
specificity is required by the court's orders?  If the court's
orders required the production of specific source code for
alleged misappropriated items, including methods and concepts,
then many of SCO's arguments and much of Mr. Rochkind's
declaration miss the mark.  If however, the level of specificity
did not require specific source code then IBM has fired a wayward
shot off the starboard bow in its attempt to sink SCO's ship.

IBM argues that SCO has failed to identify the allegedly
misused material "with the most basic detail."[86]  Although the
court only specifically said "lines" in its orders, IBM argues
that it was also necessary to provide the version and file
information for SCO's alleged misappropriate items.  Otherwise,
IBM is left to undertake a "massive analysis, potentially of
every single version, file and line of Unix System V code, . . .
AIX and Dynix, and . . . Linux."[87]  For example,

---

[86] Mem. in Supp. p. 2.

[87] *Id.* p. 8.

> Unix System V R4.2 ES/MP consists of 22,222 files and
> 7,339,157 lines of code; AIX 4.3.3 for Power consists
> of 111,964 files and 138,420,329 lines of code; and
> Linux 2.6.15 consists of 18,811 files and 7,290,070
> lines of code.[88]

In direct contrast to IBM's arguments, SCO argues that it has met the level of specificity required by the court's orders. Indeed, SCO states it has provided "over 450,000 lines of source code and hundreds of confidential methods and concepts."[89]

SCO represents that there are different categories of information supporting its alleged misused material.  First, for improper source code contributed by IBM to Linux, SCO "ha[s] named the particular files of infringing source code IBM contributed," and has provided some "color-coded illustrations lining up the code in Dynix/ptx that IBM took and placed into Linux files."[90]

Second, with respect to methods and concepts, "the disclosure is not of specific lines of code."[91]  Instead, SCO "identifies and appends as exhibits actual smoking-gun communications whereby IBM developers violated SCO's rights and disclosed confidential methods and concepts."[92]  This includes,

---

[88] *Id.* p. 7.

[89] Op. p. 1.

[90] *Id.* p. 7.

[91] *Id.*

[92] *Id.*

23

"<u>numerous</u> e-mails, other communications, and memoranda evidencing the hundreds of individual disclosures by IBM . . . ."[93]  SCO continues,

> It should be remembered that it is IBM, not SCO, that
> made these contributions.  IBM has ready access to the
> engineers who made the disputed disclosures to assist
> in identifying the nature of the contribution, whether
> it originated independently from protected material,
> how it is used, and whether it was in fact disclosed to
> the Linux community.[94]

In sum, "for each source code contribution, SCO identifies the source code; and for each method and concept disclosure, SCO identifies and details the method and concept disclosed."[95]

Finally, SCO alleges IBM's complaints about specificity are unwarranted because of the "roadblocks IBM has placed along the way to hinder SCO [in] identifying the particular misused material."[96]  For example, SCO says IBM resisted providing the CMVC and RCS systems which contain AIX and Dynix materials along with other information.  In May 2005, the information was produced pursuant to court order but "IBM has been unable to produce all versions of its AIX source code, claiming that they

---

[93] *Id.* p. 6 (emphasis in original).

[94] *Id.*

[95] *Id.*

[96] *Id.* p. 3.

cannot be located."[97]

In considering the parties' positions the court first looks to the language in SCO's own requests and the language in the court's orders.

In June 2003 SCO sought "specific lines and portions of code" for all alleged "trade secrets or confidential or proprietary information, whether computer code, methods or otherwise."[98]  This request was part of SCO's first motion to compel which was eventually granted in part.

On December 12, 2003 this court ordered SCO to "respond fully and in detail to Interrogatory Nos. 12 and 13" and to "identify and state with specificity the source code(s) that SCO is claiming form <u>the basis</u> of their action against IBM."[99] Interrogatory 12 requested "with specificity (by file and line of code)," all source code and material in Linux that SCO claimed rights to.  Interrogatory 13 sought further clarification of Interrogatory 12.

> For each line of code and other material identified in
> response to Interrogatory No. 12, please state whether
> (a) IBM has infringed plaintiff's rights, and for any
> rights IBM is alleged to have infringed, describe in
> detail how IBM is alleged to have infringed plaintiff's
> rights; and (b) whether plaintiff has ever distributed
> the code or other material or otherwise made it
> available to the public, as part of a Linux

---

[97] *Id.*  As noted *supra*, some code was discarded because it was antiquated.

[98] SCO's First Request for Production of Documents and First Set of Interrogatories p. 3-4.

[99] Order dated December 12, 2003 p. 2 (emphasis added).

distribution or otherwise, . . . .[100]

In March of 2004 this court ordered SCO to "provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix."[101]  Next, SCO was ordered to "provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived."[102]  SCO was further ordered to "provide and identify with specificity all lines of code in Linux that it claims rights to."[103]  SCO was also to "provide and identify with specificity the lines of code that SCO distributed to other parties."[104]

Finally, in July 2005 Judge Kimball ordered the parties to "disclose with specificity all allegedly misused material"[105] by December 22, 2005.

Based on the language of the orders, and SCO's own requests, the court finds that SCO was to provide source code, i.e. version, file and line information, for its alleged misappropriated items.  Although the court did not specifically

---

[100] IBM's Second Set of Interrogatories and Second Request for the Production of Documents p. 2.

[101] Order dated March 3, 2004 p. 2.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] Order dated July 1, 2005 p. 4.

say version and file in its orders, the court finds that this information was inherent within the court's ordering of "specific lines."  The court agrees with IBM's argument that line information without version and file information is not very specific and makes the identification of what is at issue much more difficult.

This court further finds that Judge Kimball intended the same level of specificity in his July 2005 order which provided what amounted to a date certain for the parties to define their case.  Judge Kimball's order was entered after this court's orders which dealt with specificity.  And Judge Kimball did not provide a different definition of specificity in his order. Further, in an earlier decision, Judge Kimball in essence rebuked SCO for a lack of specificity.  "Nevertheless, despite the vast disparity between SCO's public accusations and its actual evidence-or complete lack thereof-and the resulting temptation to grant IBM's motion, the court has determined that it would be premature to grant summary judgement . . . ."[106]  Given this background this court believes that Judge Kimball intended the same level of specificity as this court did, to wit, version, file, and line information for misappropriated items.

Most important to the court however, is the fact that SCO itself sought this level of specificity by asking for "identification of the specific lines and portions of code" for all alleged "trade secrets or confidential or proprietary

---

[106] Order dated February 8, 2005, p. 10.

information, <u>whether computer code, methods or otherwise</u>."[107]
Given SCO's track record in this case, the court is certain that
if IBM had simply provided line information without version and
file information for "methods," SCO would have filed motions to
compel complaining about IBM's lack of specificity.  The court
cannot find any reason why SCO should not be held to the same
level of accountability that SCO held IBM to.  Thus, SCO should
have supplied not only line but version and file information for
whatever claims form the basis of SCO's case against IBM.[108]

In further support of this court's finding that version,
file, and line information was the required level of specificity
the court points to the testimony of SCO's own Chief Technology
Officer, Sandeep Gupta.  Sandeep Gupta testified about the
importance of having version, file and line information in
respect to methods and concepts.

> Q: Okay, How would you determine whether a particular
> description was specific enough to describe an aspect
> of System V as a method?
> A: I have to look at the source code.
> Q: Okay.  What would you do if you looked at the source
> code?
> A: I look at various steps that are taken, specific for
> that particular method."
> Q: Okay.  So in order to determine what a particular
> method or concept is, you would actually have to look
> at the source code?
> A: In some cases, yes.
> . . . .

---

[107] SCO's First Request for Production of Documents and First
Set of Interrogatories p. 3-4 (emphasis added).

[108] *See* Order dated December 12, 2003 p. 2.

28

> Q: . . . would you have to look at the source code to
> be able to accurately describe a method or concept in
> UNIX?
> A: That's my opinion, yes.[109]

Finally, the court notes that the deposit requirements for copyright registration also support this court's decision.  The copyright registration requires printouts of program source code.[110]  Even though registration is not a condition of copyright protection it is often advantageous to register.  For example, timely registration establishes *prima facie* evidence in court of the validity of a copyright.  And, if certain conditions are met statutory damages and attorneys fees are available to the copyright owner in court actions.

The copyright registration requirements include:

> (A) For published or unpublished computer programs, one
> copy of identifying portions of the program, reproduced
> in a form perceptible without the aid of a machine or
> device, either on paper or in microform.  For these
> purposes "identifying portions" shall mean one of the
> following:
>     (1) The first and last 25 pages or equivalent
>     units of the <u>source code</u> if reproduced on paper,
>     . . . .[111]

Thus even the copyright law, from which SCO seeks protection, prefers the production and identification of specific source

---

[109] Gupta Dep. Tr. attached as Ex. E to Reb. Decl. Randall Davis.

[110] *See* 37 C.F.R. § 202.20(C)(2)(vii).

[111] *Id.* (emphasis added).

29

code.

Based on the foregoing the court finds that methods and concepts can be identified in source code and that under the court's orders SCO was required to provide the source code behind them.

SCO approved the orders as to form.  SCO also never sought further clarification of the court's orders.  And in fact, from the start of this case SCO has repeatedly sought source code on the grounds that it was necessary to substantiate its case.[112]  On more than one occasion SCO has argued that it could not respond to IBM's requests without further production from IBM.  Thus, it really should come as no surprise to SCO that they were required to produce version, file, and line information to substantiate their claims.

**III.  Willfulness**

A willful failure has been defined as "any intentional failure as distinguished from involuntary noncompliance.  No wrongful intent need be shown."[113]  In contrast, "The courts that have concluded that the failure to comply with a discovery order was not willful have emphasized the inability of the party to comply with the order."[114]

---

[112] *See* SCO's Mem. Re: Discovery

[113] *Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965) (quoting *United States v. 3963 Bottles*, 265 F.2d 332, 337 (7th Cir. 1959)).

[114] *In re Standard Metals Corp.*, 817 F.2d at 629.

There is no evidence before the court to indicate that SCO lacked the ability to comply with the court's orders.  In fact, given SCO's own public statements outlined in part *supra*, it would appear that SCO had more than enough evidence to comply with the court's orders.

In December 2003, near the beginning of this case, the court ordered SCO to, "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM."[115]  Even if SCO lacked the code behind methods and concepts at this early stage, SCO could have and should have, at least articulated which methods and concepts formed "the basis of their action against IBM."[116]  At a minimum, SCO should have identified the code behind their method and concepts in the final submission pursuant to this original order entered in December 2003 and Judge Kimball's order entered in July 2005.

Additionally, pursuant to the Federal Rules a party is obligated to update their interrogatory responses.[117]  Here, SCO was ordered on multiple occasions to answer IBM's interrogatories which in this court's view covered methods and concepts and a request for the code behind them.  Thus, SCO's failure to provide code for the methods and concepts it claims were misappropriated is also a violation of Rule 26(e) in addition to a violation of

---

[115] Order dated December 12, 2003.

[116] *Id.*

[117] *See* **Fed. R. Civ. P. 26(e)**.

this court's orders.

Finally, after IBM received SCO's interim alleged misappropriated submissions, IBM informed SCO that the submissions were not specific enough.  IBM warned SCO that if the final submissions were of the same level of specificity court intervention would be sought.  Tellingly, SCO did not seek court guidance as to the required level of specificity after IBM disagreed with SCO's interpretation of the court's orders.

Based on the foregoing, the court finds that SCO has had ample opportunity to articulate, identify and substantiate its claims against IBM.  The court further finds that such failure was intentional and therefore willful based on SCO's disregard of the court's orders and failure to seek clarification.[118]  In the view of the court it is almost like SCO sought to hide its case until the ninth inning in hopes of gaining an unfair advantage despite being repeatedly told to put "all evidence . . . on the table."[119]

Accordingly, the court finds that SCO willfully failed to comply with the court's orders.

## IV.  Prejudice

IBM argues that SCO's lack of specificity is prejudicial because without more detail it would have to undertake a massive analysis of multiple versions, files, and lines in Unix, AIX,

---

[118] *See* **Patterson, 352 F.2d at 336**;

[119] Hearing held on February 24, 2006, transcript p. 50.

Dynix and Linux to defend itself.[120]  This analysis would allegedly take substantial time and create additional delay in the resolution of this case.

> In rebuttal SCO states
>
> It should be remembered that it is IBM, not SCO, that made these contributions.  IBM has ready access to the engineers who made the disputed disclosures to assist in identifying the nature of the contribution, whether it originated independently from protected material, how it is used, and whether it was in fact disclosed to the Linux community.[121]

Thus according to SCO, IBM should be able to determine what was misappropriated without being given substantial detail.  Further, SCO argues that it was IBM's own roadblocks that hindered SCO in identifying particular misused material so IBM cannot now claim that they were somehow prejudiced.[122]

The court finds SCO's arguments unpersuasive.  SCO's arguments are akin to SCO telling IBM sorry we are not going to tell you what you did wrong because you already know.  SCO received substantial code from IBM pursuant to the court's orders as mentioned *supra*.  Further, SCO brought this action against IBM and under the Federal Rules, and the court's orders, SCO was required to disclose in detail what it feels IBM misappropriated.  Given the amount of code that SCO has received in discovery the court finds it inexcusable that SCO is in essence still not

---

[120] *See* Mem. in Supp. p. 7-8.

[121] Op. p. 6.

[122] *Id.*

33

placing all the details on the table.[123]  Certainly if an
individual was stopped and accused of shoplifting after walking
out of Neiman Marcus they would expect to be eventually told what
they allegedly stole.  It would be absurd for an officer to tell
the accused that "you know what you stole I'm not telling."  Or,
to simply hand the accused individual a catalog of Neiman Marcus'
entire inventory and say "its in there somewhere, you figure it
out."

Without more specificity than SCO has provided some very
important questions that could materially impact this case are
nearly impossible to answer.  For example, is the code that
comprised the method or concept still in use in Linux?  If not,
then damages may become nominal instead of in the billions.  Or,
it may be possible that the code comprising a method or concept
was already disclosed pursuant to some other license such as the
BSD License.  Since Linux uses some BSD code this could have a
substantial impact upon SCO's case.  Especially since SCO claims
to be a successor in interest to some of the technology involved
in the dispute between Unix System Laboratories and The
University of California.[124]  Without the code, however, there is
no way to ascertain exactly what the impact is of prior
disclosures that may involve the code at issue in the instant

---

[123] Hearing held on February 24, 2006, transcript p. 50.

[124] Unix System Laboratories (USL) was at one time involved
in a dispute with The University of California concerning
copyrights and UNIX.  Both parties claimed that the other had
taken certain source code in violation of their rights.
Eventually the parties reached a settlement.

case.

Requiring IBM to engage in an analysis of millions of lines of code to figure out which code is at issue in hopes of answering such questions is patently unfair given the fact that it was SCO's duty to provide more detailed code in the first place.  For example, many of SCO's submissions are supported by a presentation given by Richard Moore of IBM's Linux Technology Center in June 2005.  In the presentation it appears Mr. Moore discusses the uniqueness of Linux, Linux's advantages and how IBM has helped with Linux development.  It briefly compares Linux to other operating systems such as UNIX, Solaris, AIX, HPUX, IRIX, and Dynix.  In the court's view this is largely a presentation to help generate interest and business for IBM that does nearly nothing specific to demonstrate what SCO claims was misappropriated.  While it discusses Kernel patches, thread locks and NUMA there is nothing that links these back to being originally owned by SCO.  And even with a related "smoking gun" email there is once again little connection back to what is allegedly owned by SCO.  This simply is not enough specificity under the court's orders.

In essence, IBM is left to wade through all the code found in the operating systems, and then ask SCO are you claiming line X in the Read-Copy-Update method found in Linux because there is a somewhat similar line in the Read-Copy-Update in AIX?  Such an endeavor seems like a waste of resources and time because under the court's orders SCO should have already identified such

information.

Accordingly, based on the delays that would arise from SCO's lack of specificity, and the burden this places on IBM at such a late stage in this litigation, the court finds that IBM is prejudiced by the lack of specificity in SCO's disclosures.

**V.   Specific Items**

IBM seeks to limit items numbers 3-112, 143-149, 165-182, 186-193, 232-271, 279-293.[125]

As argued by SCO in its opposition, some of SCO's misappropriated items relate to "negative know how."  These items include number 23 (discussing EES an "error event subsystem" in Dynix/PTX), number 43 (learning from TCP failures to help networking and storage for Linux), and number 90 (avoiding a logging event that caused problems in PTX).  Although claiming that negative know how is somehow prohibited seems like quite a tenuous position, the court nevertheless agrees with SCO that these items are not easily substantiated by source code.  And, the court agrees that they were disclosed with sufficient specificity to survive the current motion.  The court notes, however, that just because an item cannot be easily supported by source code, this does not automatically absolve SCO of its duties under the court's orders to provide specificity for its alleged misappropriated items.

Accordingly, IBM's motion is denied as to item numbers 23,

---

[125] *See* Mem. in Supp. p. 10.

36

43, and 90.

In similar fashion SCO argues that, "Under SCO's interpretation of the contracts at issue, IBM is prohibited from having former Dynix/ptx developers write source code for Linux."[126]  Thus according to SCO, "IBM has breached its contracts by permitting IBM developers exposed to Dynix/ptx methods and concepts to contribute to Linux in the same area where each developer worked."[127]  SCO then argues that item numbers 94, 186-193, and 232-270 concern these types of contractual violations.

After reviewing item numbers 94 and 186-192 the court finds that they are supported with enough specificity to survive the current motion.  Item number 193, however, is only supported by the Richard Moore presentation mentioned *supra*, and a few references to Linux files.  The court finds that this does not meet the level of specificity required under the court's orders.  Therefore, IBM's motion is denied as to item numbers 94 and 186-192.  IBM's motion is granted as to item number 193.

Item numbers 232-270 are supported by the Moore presentation, a link to a Linux Kernel archive and a brief list of Linux files.  The court finds that these items should have been substantiated by more information including more detailed disclosures of source code.  If SCO revealed the files one would believe that they would have line information to disclose.

---

[126] Op. p. 15.

[127] *Id.*

Unlike item numbers 94 and 186-192, there is not deposition testimony supporting these alleged misappropriated items. Thus, the court finds that these items failed to meet the level of specificity required by the court's orders. Therefore, IBM's motion is granted as to item numbers 232-270.

After reviewing the remaining items at issue, the court reaches the same finding - SCO failed to support its alleged misappropriated items with the specificity required by the court's orders. Therefore, IBM's motion is granted as to the remaining items.[128]

---

[128] The court notes that its decision to either strike or not strike certain alleged misappropriated items should not be viewed as a decision on the merits. The court's decision is based solely on whether or not SCO met the requisite disclosure threshold as required by the court's orders.

**CONCLUSION**

Based on the foregoing, the court GRANTS in PART IBM's
Motion to Limit SCO's Claims.



DATED this  28th  day of June, 2006.

BY THE COURT:

BROOKE C. WELLS
United States Magistrate Judge

39