# APPENDIX A

## APPENDIX A

Citing an IBM memorandum filed earlier in the case, which references various publications, the Magistrate Judge's Order cites several statements attributed to SCO. The statements were not addressed in the briefing regarding the IBM Motion underlying the Order. Nevertheless, the Magistrate Judge's Order simply assumes that the statements were made as quoted and, perhaps more importantly, that the statements relate to the disclosures challenged in IBM's underlying motion.

In this Appendix, SCO addresses the statements cited by the Magistrate Judge and demonstrates why they provide no support for the sanctions imposed, and indeed, are quite irrelevant to the issues before the court. Those statements by SCO employees, moreover, were true in all material respects when made, were based on work that had been performed by technical consultants or SCO engineers, and have been substantiated during this litigation by work of other technical consultants and experts. The statements about copied lines of source code relate to many Items identified in SCO's December Submission that are not the subject of IBM's Motion – there are over 90 items in that category – and do not correlate to the methods and concepts at issue in the Magistrate Judge's Order. They are therefore irrelevant, but because they are being used as a source upon which to draw inferences against SCO, they are addressed here in detail:

1. *SCO identified four categories of alleged misappropriation: (1) literal copying ("[l]ine-for-line code copied from System V into Linux kernels 2.4+"); (2) derivative works which arose from "[m]odifications of System V created by vendors contributed to Linux kernels 2.4+ in violation of contracts"; (3) obfuscation ("[c]opying, pasting, removing legal notices, reorganizing the order of the programming structures"); and (4) non-literal transfers ("[m]ethods, structures and sequence from System V contributed to Linux kernels 2.4+"). Finally, in the presentation SCO also gave "one example of many" of line by line copying between the System V Code and Linux kernel code. (Order at 4.)*

This statement, made by SCO executives at the SCO Forum in Las Vegas in August 2003, was true, was based on technical consultant work, and has been substantiated by SCO in discovery. SCO did not and say that it had source code coordinates for any disclosed method or concept. The methods and concept items were identified by SCO's experts later. SCO has identified misappropriations in the December Submission that fit into the categories identified above. For example:

   a. Misappropriation in the form of line-for-line code copied from System V into the Linux kernel (Item Nos. 183-185, 205-231) as well as line-for-line code copied from System V into the Linux tool chain used to compile and operate Linux (Item No. 272) and line-for-line code copied from System V into STREAMS modules used by, among others, enterprise Linux customers to operate "Carrier Grade Linux" (Item Nos. 150-164);

   b. Misappropriation in the form of line-for-line copied code from derived works of System V created by IBM (or otherwise protected under the contracts) and

contributed to Linux in violations of the IBM and Sequent Software Agreements (Item Nos. 1, 2, 113-142);

 c. Misappropriation in the form of changed or revised code (Item Nos. 183, 184, 205-231);

 d. Misappropriation in the form of non-literal transfers of methods, structures and sequences from System V contributed to Linux (Item Nos. 38, 112, 149, 165-177, 180); and

 e. "One example of many" of line by line copying (Item No. 185).

2. In April 2003, SCO's Senior Vice President Chris Sontag stated that, "We are using objective third parties to do comparisons of our UNIX System V source code and Red Hat [Linux] as an example. We are coming across many instances where our proprietary software has simply been copied and pasted or changed in order to hide the origin of our System V code in Red Hat. This is the kind of thing that we will need to address with many Linux Distribution companies at some point." (Order at 5.)

This is an accurate statement of comparison work performed by SCO in advance of public statements. There are, in fact, instances in which SCO's proprietary System V code was simply copied and pasted into the Linux kernel or associated libraries that were then included in a Red Hat distribution. (Item Nos. 183, 184, 272.)

3. In June 2003 SCO took "its case against the Linux operating system and IBM on the road." SCO "began showing to U.S. analysts code that, it claims, proves that the source code to the Linux operating system contains sections of code lifted directly from SCO's Unix code base." Senior Vice President Chris Sontag stated that, "The one specific example that I'm showing right now is [Unix] code, line by line copied into Linux." (Order at 5.)

This is an accurate record of a statement made by Mr. Sontag. The specific example shown by Mr. Sontag is found in Item No. 185.

4. A SCO spokesman went on to state that SCO had hired three teams of experts, including a group from MIT's math department to analyze Linux and UNIX code for similarities. "All three found several instances where our Unix source code had been found in Linux." (Order at 5, 6.)

This attributes to SCO a statement it did not make. SCO did not hire a group from MIT's math department to perform analysis, but did hire a group previously affiliated with MIT to perform such a function. SCO also hired other individuals to perform this function independently.

REDACTED

REDACTED

6. In December 2003, SCO sent a letter to Linux users identifying a portion of their copyrighted code which had been incorporated into Linux without authorization. SCO stated that files in Linux version 2.4.21 which incorporated copyrighted binary interface code must be removed. And, that "SCO's review is ongoing and will involve additional disclosures of code misappropriation." (Order at 6.)

This is a correct record of a statement made by SCO. The code identified in this letter was part of the October 2005 Submission (Item Nos. 201-203) and a material part of the code identified in this letter was part of the December 2005 Submission (Item Nos. 183, 184).

7. Also in December, Darl McBride and Chris Sontag were asked during an interview, "Have you identified exactly what code is at issue here?" In response Mr. Sontag stated, "We've identified a lot of different things. Early on when we filed against IBM, people wanted us to show the code. Even though we're fighting a legal case and [a courtroom] is where it's appropriately vetted, we decide to take at least one example and show it." (Order at 6, 7.)

This statement is accurate and irrelevant to the instant discovery dispute. Mr. Sontag does not claim to have identified all of the code at issue, let alone code related to method and concept disclosures that – at the time of the statement – were not yet identified by SCO's experts.

8. Sontag continues, "A substantial amount was a cut-and-paste job, a few lines changed, but a substantial body of code. You don't have to be a programmer at all to see copying has occurred. It wasn't just 10 lines of code, that example was over 80 to 100 lines of code." (Order at 7.)

This is an accurate record of a statement made by Mr. Sontag. This statement relates to Item No. 185, which demonstrates verbatim copying of 80 to 100 lines of code.