# EXHIBIT 14

```
 1                IN THE UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
 3            ----------------------------------
 4
 5  _____
 6  SCO GROUP, INC.,                   )
                                       )
 7      Plaintiff/Counterclaim-Defendant,)
                                       )
 8      -vs-                           )    2:03-CV-294 DAK
                                       )
 9  INTERNATIONAL BUSINESS MACHINES,   )
    CORPORATION,                       )
10                                     )
        Defendant/Counterclaim-Plaintiff.)
11  _____)
12
13
14
15           BEFORE THE HONORABLE BROOKE C. WELLS
16                  DATE:   APRIL 14, 2006
17             REPORTER'S TRANSCRIPT OF PROCEEDINGS
18                    ARGUMENT ON MOTION
19
20
21
22
23
24
25                   Reporter:  REBECCA JANKE, CSR, RMR
                                                              1
```

COPY

1  provided. There is no evidence at this point, with respect
2  to any of the 198, that we were withholding such
3  information.
4  But, if we were to go down that process, what you
5  would need is a hearing where, on an item-by-item basis,
6  IBM comes forward and says, "Here. They could have
7  disclosed this," or "They had this information available.
8  They didn't do it."
9  You hear from us. You hear to the extent it
10 would assist the Court from expert witnesses, and you make
11 a decision on that item. Instead, they have tried to make
12 a blanket judgement with respect to the 198 disclosures.
13 Moreover, I would submit that the expert reports
14 that are coming up and the discovery of those expert
15 reports in depositions will be a good test as to whether,
16 in fact, IBM doesn't have sufficient specificity to defend
17 against these items. We will see whether or not IBM's
18 experts say: "Well, we really don't have anything to say
19 about these because we can't figure out what these defenses
20 are," or that, even though this was a specific enough
21 e-mail to tell the Linux community about the method and
22 concept, we can't use that to prepare a defense as to
23 whether that's already publicly known in some textbook or
24 some publication. That process should be allowed to run
25 its course and to see what that expert discovery turns up

1  with.
2           Now, Your Honor, I'm going to just briefly
3  mention, because they have only picked one example, 146,
4  the need for this type of individualized determination is
5  clearly seen when you just turn to a few of the other
6  examples that they are challenging but which they haven't
7  said anything specific about.  They said something specific
8  about item number 2, which was RCU, and when we responded
9  in our opposition brief, they dropped it.
10          Item number 53 is at tab 20, and, again, I'm
11 going to be general because of the confidentiality.  But
12 this is a method and concept which deals with improving
13 locking, and if you turn to the first page after our header
14 slide, you see the actual disclosure.  It identifies who
15 made the disclosure, an IBM employee, Mr. Wright; the
16 nature of that disclosure, which is not amorphous.  It's
17 very specific.  It refers to the e-mails and quotes them,
18 where those were actually made to a Daniel Phillips, who
19 was a Linux developer, and it makes specific references
20 that they are getting this from Dynix/ptx.
21          You have references that this method, this
22 particular method, quote, "is not currently used in Linux."
23 You have another reference at the bottom of that page
24 saying the classic quoting style in Dynix/ptx is then and
25 goes on and provides source code in the context of the

1  e-mail saying that this is the right way to go about it.
2  You then have sources referenced on the next page in our
3  disclosure and you have Linux files relating to that method
4  and concept. And then, following that, you also have the
5  entire e-mail -- this was put in at tab 156 -- and
6  deposition testimony where, if you turn to page 154 of
7  Mr. Wright's deposition, you have an admission that this
8  particular method and concept was cut from source files in
9  ptx source code. That's page 154 of his deposition between
10 lines 1 and 8 at the top of the page.
11         So, it is, in our view, a completely specific
12 identification of a method and concept. In this case it
13 relates to source code. It's related to the source code
14 that they have drafted here. There's an admission by the
15 person who wrote it that it came out of Dynix/ptx. There
16 is no reason IBM can't sufficiently defend against that.
17         If you look at tab 21, we talk about item number
18 38. This is a disclosure of a method and concept that
19 actually goes back to UNIX System V. It relates to an
20 automatic method of checking for updates in memory. And if
21 you turn to the next page, you have an identification of
22 the IBM employee, Mr. Irwin, who made the disclosure. You
23 have a summary of that and a reference to a tab in the
24 Linux files. If you turn to the tab items, it shows the
25 actual e-mail of how this should be handled, an express

54

1  reference to SVR4, which is System V release four, which
2  prove that there are, and then it goes on to get into the
3  merits of the method and concept.
4      This is specific identification. If you go to
5  tab 22, this is another method and concept dealing with
6  multi processing from Dynix into AIX and from Dynix into
7  AIX for use in Linux. And, again, you have a specific
8  individual, Mr. McKeny. You have specific e-mails, which
9  are referenced and provided at tabbed items, which embrace
10 the disclosure. You have deposition testimony where, at
11 page 255, there is admission and there were disclosures
12 from ptx and AIX. And turning to near the end of this
13 tabbed item at pages 194 and 199, you have admissions that
14 certain Sequent technology, subject to contractual
15 protection, was contributed to the AIX kernel and used to
16 enhance AIX.
17     Item 23, which is also tab 23, is a disclosure of
18 negative knowhow, where they are discussing how not to do
19 something, to avoid a blind alley, which is part, we would
20 submit, of the confidential information protected by our
21 agreements. And you have an express discussion in e-mail
22 by another identified IBM employee; in this case, Martin
23 Bligh. It relates to the way Dynix and ptx used this
24 system. He states, quote, "We are trying to get for Linux
25 the benefits of blank --" you have that -- "without the

1   associated pain." And then you have references to
2   particular tabbed items that go into more details of the
3   nature of that discussion.
4           I could go on and on and on, and we don't think
5   it's necessary, but if this Court were going to pursue the
6   issue of whether or not there is sufficient specificity in
7   our December report, that is what would be necessary
8   because we have a right to defend ourself with these
9   disclosures and say that this is specific information.
10  This is all we have. This is adequate to mount a defense.
11          Your Honor, the motion should be denied.
12          THE COURT: Thank you, Mr. Singer.
13          Mr. Marriott -- and I'm certain you will, but I
14  would like you to address what IBM uses to support the
15  willfulness requirement.
16          MR. MARRIOTT: Excuse me, Your Honor, what?
17          THE COURT: The willfulness requirement, to
18  address that.
19          MR. MARRIOTT: Your Honor, what I heard is a
20  presentation that bears little relationship to the
21  provisions of the Court's orders that are at issue on this
22  motion. And let me briefly -- in fact, let me make a
23  series of points in that connection. Just as at the
24  outset, let me say this with respect to Mr. Singer's query
25  as to how IBM could possibly say that all 294 items were

56

1  but, do you have it and should you have presented it so
2  that they can determine how to deal with it in terms of
3  their motions for summary judgment or at trial?
4           MR. SINGER:  We gave them everything we had, so
5  we don't have anything more.  I mean, we think we have
6  complied fully with the Court's order, but, in any event,
7  we certainly have not withheld information.  And I listened
8  very closely to what Mr. Marriott said about willfulness
9  and that we willfully filed these.  He did not say anything
10 that indicated that we have any information that we have
11 not provided, that somehow we are sitting on top of source
12 code, line, file and versions relating to where -- let's
13 say any particular one of these 198 items relates to a file
14 in Dynix, and we just haven't returned it over or that we
15 have or it or that we should have it and haven't provided
16 it.
17          We have given them everything we have related to
18 these, and their argument is that they would rather not
19 have to defend against these disclosures, but they are --
20 we submit, they fall into one of two categories; either the
21 disclosure, as made by IBM, with the information here, is
22 specific enough to defend against.  It tells you it isn't
23 just Dynix, generally.  You can see these are talking about
24 very specific items, with the individuals who are involved
25 in making them, what they do, where they went to Linux.

1  They know what we are talking about.
2         They can mount a defense on any number of
3  grounds. They can say it's not really a method and
4  concept. They can say it came from somewhere else, that
5  Mr. McKeny came up with 146. It wasn't from Dynix. It
6  came from some other source. They can say it is out in the
7  public domain because we have exactly what was disclosed.
8  It is specious to suggest that they cannot defend against
9  these items.
10        These are items that were sufficient to
11 communicate this knowledge to Linux, and if they weren't
12 sufficient to communicate that method and concept to Linux,
13 either because there wasn't enough information in them or
14 the information was too general to really be protectable,
15 well, then, that's their summary judgment motion on that
16 item, and they are fully able to make it from what they
17 have been given, and we will oppose it with what we've been
18 provided with.
19        And that's a merits issue, to be considered with
20 respect to whether or not this truly was a disclosure of
21 protected methods and concepts. But, whatever it is, it's
22 not a discovery sanction issue. We have given them what we
23 have. And where is the evidence that we are holding back
24 anything? Where is the evidence that we should have been
25 able to provide source, line and code on disclosures where

80

1  the disclosures themselves do not relate back to source,
2  line, code and file -- excuse me -- version, file and line
3  of source code with respect to that particular method and
4  concept?
5       We have supported our position with an expert's
6  declaration explaining that methods and concepts, even if
7  many textbooks, Mr. Rockein says, are not discussed with
8  respect to actual source code. They may be discussed with
9  some sample source code. They are often not discussed with
10 actual source code. That is in the nature of a method and
11 concept.
12      Now, I fully understand that Mr. Marriott might
13 be -- would rather not have to deal with these 198
14 disclosures because you have a lot of evidence. IBM
15 disclosed things, from what we contend are protected
16 systems against disclosure, to the Linux community. But he
17 has to deal with these. And the fact they come from IBM's
18 own files means it should be easier -- not more difficult,
19 but easier for Mr. Marriott and the IBM team to defend
20 against.
21      So, we have supplied specificity here. There is
22 absolutely no showing of any willful failure to make
23 discovery. And with respect to the third issue, of having
24 to go example-by-example, we hear in this rebuttal argument
25 three or four new examples that aren't mentioned in any of

81

```
 1  their briefs.  They didn't say anything about example 146,
 2  which was the one example that was mentioned by Mr. Davis.
 3           And all I think that highlights is that if the
 4  Court was going to go down this path, we would have to go
 5  item-by-item and look at those and deal with the issue of
 6  whether or not it is sufficiently specific so that IBM can
 7  defend, to deal with the issue of:  Do we have more
 8  information, for some reason that we are not turning over,
 9  that we would willfully be withholding something?
10           To be sanctioned for discovery, you have to be --
11  have within your capacity the ability to comply.  You have
12  to have something you are not turning over.  You have to
13  produce a witness for deposition.  You have to turn over a
14  set of documents that you're withholding.  They have made
15  no showing of that -- of that, whatsoever.  But, if they
16  were going to go down that road, that would have to be done
17  item-by-item with respect to these disclosures.
18           Your Honor, the motion should be denied.
19           MR. MARRIOTT:  May I just briefly respond, Your
20  Honor?
21           MR. SINGER:  Your Honor, there was one point I
22  omitted to make before Mr. Marriott responds.  May I just
23  go to that?
24           THE COURT:  You may.
25           MR. SINGER:  With respect to your earlier orders,
```