RECEIVED CLERK
FILED
2006 AUG 18  P 6: 53

U.S. DISTRICT COURT
DISTRICT OF UTAH

SNELL & WILMER LLP
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **DECLARATION OF TODD M. SHAUGHNESSY WITH UNSEALED EXHIBITS** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | Civil No. 2:03CV-0294 DAK |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | Honorable Dale A. Kimball |
| Defendant/Counterclaim-Plaintiff. | Magistrate Judge Brooke C. Wells |

## DECLARATION OF TODD M. SHAUGHNESSY

I, Todd M. Shaughnessy, declare as follows:

1.      I represent IBM in the lawsuit brought by SCO against IBM, titled The SCO Group, Inc. v. International Business Machines Corporation, Civil No. 2:03CV-0294 DAK (D. Utah 2003).  *This declaration is submitted in support of Defendant/Counterclaim-Plaintiff IBM's* Opposition to SCO's Objections to Magistrate Judge Wells' Order of June 28, 2006.

2.      On February 6, 2004, immediately before a hearing on SCO's compliance with the Court's December 12, 2003 Order, the Court held a conference in chambers with counsel for the parties.  The Court advised both parties that if either party was unable to comply with its obligations under the Court's orders that it was not to ignore its obligations, but immediately to bring the issue to the Court's attention so that the Court could address it.

3.      Attached hereto as Exhibit 1 is a true and correct copy of IBM's Memorandum in *Support of Motion to Compel Discovery, dated October 1, 2003.*

4.      Attached hereto as Exhibit 2 is a true and correct copy of IBM's Memorandum in Support of Second Motion to Compel Discovery, dated November 6, 2003.

5.      Attached hereto as Exhibit 3 is a true and correct copy of IBM's Report on SCO's Compliance with the Court's December 12, 2003 Order, dated February 5, 2004.

6.      Attached hereto as Exhibit 4 is a true and correct copy of the hearing transcript for the February 6, 2004 hearing before the Court.

7.      Attached hereto as Exhibit 5 is a true and correct copy of the December 12, 2003 Order of the Court.

8.      Attached hereto as Exhibit 6 is a true and correct copy of the March 3, 2004 Order of the Court.

9.     Attached hereto as Exhibit 7 is a true and correct copy of the February 8, 2005 Order of the Court.

10.    Attached hereto as Exhibit 8 is a true and correct copy of the July 1, 2005 Order of the Court.

11.    Attached hereto as Exhibit 9 is a true and correct copy of the hearing transcript for the October 7, 2005 hearing before the Court.

12.    Attached hereto as Exhibit 10 is a true and correct copy of the May 3, 2005 Declaration of Todd Shaughnessy.

13.    Attached hereto as Exhibit 11 is a true and correct copy of the December 5, 2005 letter from Todd Shaughnessy to Edward Normand.

14.    Attached hereto as Exhibit 12 is a true and correct copy of the Forbes Magazine article, "SCO Claims IBM Destroyed Crucial Evidence", Daniel Lyons, dated July 20, 2006.

15.    Attached hereto as Exhibit 13 is a true and correct copy of SCO's Memorandum in Opposition to IBM's Motion to Compel, dated October 23, 2003.

16.    Attached hereto as Exhibit 14 is a true and correct copy of the "So Ordered" Stipulated Protective Order entered into between the parties on September 15, 2003.

17.    Attached hereto as Exhibit 15 is a true and correct copy of the hearing transcript for the February 24, 2006 hearing before the Court.

18.    Attached hereto as Exhibit 16 is a true and correct copy of the Stipulation re Discovery, entered into between the parties on March 17, 2006.

19.    Attached hereto as Exhibit 17 is a true and correct copy of SCO's Memorandum in Opposition to IBM's Motion to Limit SCO's Claims Relating to Misused Material, dated March 7, 2006.

3

20.     Attached hereto as Exhibit 18 is a true and correct copy of the Declaration of Randall Davis, dated April 28, 2006.

21.     Attached hereto as Exhibit 19 is a true and correct copy of IBM's Memorandum Attaching and in Support of IBM's Proposed Scheduling Order, dated March 25, 2005.

22.     Attached hereto as Exhibit 20 is a true and correct copy of SCO's Supplemental Memorandum Regarding Discovery, dated August 19, 2004.

23.     Attached hereto as Exhibit 21 is a true and correct copy of the Declaration of Randall Davis, dated March 29, 2006.

24.     Attached hereto as Exhibit 22 is a true and correct copy of the Declaration of Chris Sontag in Support of SCO's Opposition to IBM's Motion for Partial Summary Judgment, dated July 9, 2004.

25.     Attached hereto as Exhibit 23 is a true and correct copy of IBM's Motion to Limit SCO's Claims Relating to Allegedly Misused Material, dated February 13, 2006.

26.     Attached hereto as Exhibit 24 is a true and correct copy of IBM's Memorandum in Support of Motion to Limit SCO's Claims Relating to Allegedly Misused Material, dated February 13, 2006.

27.     Attached hereto as Exhibit 25 is a true and correct copy of a Salt Lake Tribune article, "SCO will appeal the gutting of its lawsuit against IBM", Bob Mims, dated July 13, 2006.

4

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 14th day of August, 2006.

Todd M. Shaughnessy

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2006, a true and correct copy of the foregoing was sent by U.S. Mail, postage pre-paid to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Amy F. Sorenson

408609.1

# EXHIBIT 1

Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
Thomas G. Rafferty (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **DEFENDANT/COUNTERCLAIM PLAINTIFF INTERNATIONAL BUSINESS MACHINES CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03cv0294<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM"), through counsel, respectfully submits this memorandum in support of its motion to compel discovery.

## PRELIMINARY STATEMENT

Plaintiff/Counterclaim-Defendant The SCO Group ("SCO") alleges that IBM has misappropriated or misused SCO's trade secrets in violation of SCO's rights. SCO has publicly touted its evidence of IBM's alleged misconduct and has disclosed the supposed evidence to anyone willing to agree not to disclose it -- anyone except IBM, that is. Not only has SCO refused IBM's informal requests for information about SCO's claims (which SCO is contractually obligated to IBM to provide), but SCO also has refused to provide meaningful responses to IBM's discovery requests. As discussed below, SCO should be compelled to provide immediate, meaningful responses to IBM's interrogatories.

SCO commenced this lawsuit against IBM more than six months ago. The gravamen of SCO's complaint is that IBM misappropriated or misused alleged trade secrets relating to Unix operating system software. An operating system is a group of programs that allows a computer to operate by performing basic tasks such as recognizing input from the keyboard, keeping track of files, and controlling disk drivers. The human-readable version of a Unix operating system is comprised of thousands of files, consisting of millions of lines of source code, which is the text of a program's instructions, written in a standard programming language.[1]

According to SCO, IBM breached its contractual obligations, competed unfairly, interfered with SCO's contracts with others, and violated the Utah Uniform Trade Secrets Act by contributing Unix files and lines of code -- which SCO claims are trade secrets -- to Linux, an "open-source" operating system. Open-source software is free -- it is publicly available, free

---

[1] The earliest Unix operating system was built by software engineers at Bell Laboratories, the research division of AT&T. In the mid-1980's, IBM acquired broad rights to Unix software and began developing its own version of Unix called AIX. Over the last two decades, IBM has expended tremendous resources on developing AIX, creating millions of lines of original code, incorporating it into its product lines and licensing the technology to thousands of customers worldwide. SCO purports to have acquired AT&T's rights to Unix operating system software.

from royalties, and users have the ability to run, copy, distribute, study, adapt and improve the software.[2]

Rather than identify the files and lines of code that IBM has allegedly misappropriated, SCO has obfuscated its claims to foster fear, uncertainty and doubt about its rights and the rights of others.[3] In letters dated April 2, 2003, and May 5, 2003 (appended hereto as Exhibits A and B), IBM expressly asked SCO to advise IBM as to what SCO contends IBM has done in violation of any of its agreements, and what SCO contends IBM should do to cure such violations. That is, we have asked SCO to tell us which files and lines of source code IBM is supposed to have misused or misappropriated. SCO has consistently refused to do so. Rather, SCO's counsel has indicated, in an interview with Maureen O'Gara of LinuxGram, that it "doesn't want IBM to know what they [SCO's substantive claims] are." (A copy of this article is appended hereto as Exhibit C.)

Therefore, on June 13, 2003, IBM served its First Set of Interrogatories and First Request for Production of Documents on SCO (appended hereto as Exhibit D). These requests seek basic information about the trade secrets at issue in this case. IBM's interrogatories ask SCO, among other things, to:

---

[2] The development of Linux began over ten years ago, when an undergraduate student at the University of Helsinki set out to create a new, free operating system. Collaborating over the internet, other programmers joined in these efforts. Ultimately, thousands of computer programmers worldwide contributed to the development of Linux under the open-source model. SCO's basic claim is that IBM has taken trade secrets from Unix and improperly contributed them to Linux.

[3] A more detailed explanation of the background of IBM's claims is set forth in Counterclaim Plaintiff IBM's Amended Counterclaims Against SCO, dated September 25, 2003. As explained therein, SCO's claims against IBM are part of an improper scheme to assert proprietary rights over important, widely-used technology and to impede the use of that technology by the open-source community. SCO has misused, and is misusing, its purported rights to the Unix software to threaten Linux, and to extract windfall profits for its unjust enrichment. SCO has, for example, engaged in a campaign of falsehoods by misrepresenting to the market SCO's and IBM's rights to Unix and Linux.

- "identify, with specificity (by product, file and line of code, where appropriate) all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused" (IBM's Interrog. No. 1);

- for each alleged trade secret and any confidential or proprietary information identified in response to Interrogatory No. 1, to "describe, in detail, each instance in which plaintiff alleges or contends that IBM misappropriated or misused the alleged trade secret or confidential or proprietary information" (IBM's Interrog. No. 4); and

- for each line of source or object code and each method identified in response to Interrogatory No. 1, to "identify: (a) the origin of the code or method, including when, where and by whom the code or method was created; and (b) all products in which, in whole or in part, the code or method is included or on which, in whole or in part, the code or method is based" (IBM's Interrog. No. 6).

IBM propounded these interrogatories because the defendant to a claim for misappropriation of trade secrets is entitled to precise and particularized information identifying the claimed trade secrets at the outset of litigation. In a case relating to software, such as this case, a defendant is entitled to know the files and lines of code it is alleged to have misused or misappropriated. A plaintiff may not persist in vague assertions about the substance of the claimed secret and leave the defendant to guess at the basis of the lawsuit. Such a rule is grounded in fundamental fairness to the accused party and serves to promote the just and efficient resolution of claims. IBM's interrogatories are entirely consistent with this principle; SCO's refusal to provide meaningful answers to them (as described more fully below) is not.

On August 4, 2003, SCO served its Responses to Defendant's First Set of Interrogatories and First Request for Production of Documents (appended hereto as Exhibit E). SCO does not dispute that IBM is entitled to the information it has requested in its interrogatories.[4] Nevertheless, SCO refuses to provide complete, detailed and meaningful responses to nine of the

---

[4] SCO asserted a variety of objections in response to IBM's interrogatories, but it has confirmed that it will not withhold responsive documents on the basis of these objections. (See Exhibit H at 1.) IBM also has raised with SCO a number of concerns about SCO's general objections and its responses to the requests for production of documents. The parties are currently attempting to resolve those disputes. Although IBM is hopeful these issues can be resolved by counsel, it reserves the right to seek relief from the Court if necessary.

4

eleven interrogatories.[5]  It has not identified a single file or line of source code.  Rather, SCO states, with respect to eight of these nine interrogatories, that IBM can find the answers itself in the documents SCO is producing pursuant to Fed. R. Civ. P. 33(d).  (See SCO's Resps. to IBM's Interrog. Nos. 1-8.)  The documents to which SCO generally refers are voluminous by any measure -- on September 20, 2003, SCO made an initial production of 46 CDs containing over 900,000 pages of source code, and recently stated that it intends to produce "[t]ens of thousands of more documents" this week (See Pl.'s Mot. for Enlargement of Time, dated September 26, 2003, at 2 n.1).  In the end, IBM expects that SCO will have produced hundreds of thousands -- if not millions -- of pages of paper, along with millions of lines of computer source code, which it expects IBM to review in order to find answers to these interrogatories.

The Federal Rules of Civil Procedure do not, however, permit SCO to avoid providing meaningful answers to IBM's interrogatories merely by producing documents in this fashion. SCO may not, as it apparently intends to, dump hundreds of thousands of pages of paper and millions of lines of computer source code on IBM, and shift to IBM the burden to answer the interrogatories itself based on information buried somewhere in those materials.  SCO's refusal to provide meaningful answers to IBM's interrogatories is unjustified and should not be permitted.  We respectfully submit that IBM is entitled to complete, detailed, narrative answers to its Interrogatory Nos. 1-9, and is entitled to them now.

The principal issue on this motion is whether SCO's obligations under the Federal Rules are satisfied by its strategy of answering IBM's interrogatories merely by producing hundreds of thousands of pages of documents and millions of lines of computer source code.  Clearly they are not.  Rule 33 permits a party to reference documents rather than providing narrative answers to interrogatories only where the information sought may be derived from business records and the burden of deciphering the requested information from those documents would be the same for

---

[5] A more detailed history of the parties' negotiations with respect to IBM's interrogatories is set forth in the accompanying Certification of Compliance with Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure.

the requesting party as for the producing party. Even then, the producing party must specify with particularity the documents that will answer the requesting party's questions.

SCO's invocation of Rule 33 fails on each of these counts. The information sought by IBM is not of the nature that can be derived from a large production of documents. For example, no production of documents will respond to IBM's request that SCO identify the precise lines of source code IBM is alleged to have misused, or the ways in which IBM is supposed to have misused them. Moreover, even if it could, it would be far more difficult for IBM to derive or ascertain the answers to its interrogatories from SCO's documents than it would be for SCO. If, in fact, SCO has any evidence to support its claims, then there cannot be any question that it will be less burdensome for SCO simply to identify it than for IBM to divine from SCO's production what we do not believe even exists. Furthermore, SCO has failed to identify with any degree of particularity the documents from which the requested information can purportedly be derived. Telling IBM that answers to its interrogatories can be found in hundreds of thousands of pages of paper and millions of lines of computer source code is not a specification.

What makes SCO's misuse of Rule 33 especially egregious here is that it has long been engaged in a nationwide media campaign to share much of the information that IBM seeks with analysts and the media, in an effort unduly to hype its case. During a recent trade show in Las Vegas, for example, SCO put on a marketing presentation outlining SCO's claims against IBM, including SCO's purported evidence of IBM's misappropriation. Appended hereto as Exhibit F is a copy of the slides, obtained from the internet, that SCO presented. On page 8 of the slides, SCO identifies four categories of alleged "misappropriation" by IBM: (1) literal copying ("line-for-line code copied from [Unix] System V into Linux kernels 2.4+"); (2) derivative works ("modifications of System V created by vendors contributed to Linux kernels 2.4+ in violation of contracts"); (3) obfuscation ("copying, pasting, removing legal notices, reorganizing the order of programming structures"); and (4) non-literal transfers ("methods, structures and sequence from System V contributed to Linux kernels 2.4+").

268875.1

During this same marketing presentation, SCO presented an example of "line-for-line" source code allegedly copied from Unix System V to Linux, which SCO states is "one example of many." (Ex. F at 9-10.) It also presented an example of "obfuscated copying" of source code, (Ex. F at 15), and a listing of various programs or components that SCO apparently contends are "derivative works" (Ex. F at 19-20). With respect to its "derivative works" allegations, SCO presented the numbers of files and total lines of code that it contends have been misappropriated. At page 20 of its presentation, SCO states that 1,549 files and 1,147,022 lines of code were misappropriated in all, including: (1) RCU (46 files, 109,688 lines); (2) NUMA (101 files, 56,587 lines); (3) JFS (44 files, 32,224 lines); (4) XFS (173 files, 119,130 lines); and (5) SMP (1,185 files, 829,393 lines).

Yet in its answers to IBM's interrogatories, SCO provides none of this information. In response to IBM's interrogatories, SCO fails to identify a single file or line of source code. Moreover, SCO makes no mention of "literal copying", "derivative works", "obfuscation" or the three "non-literal transfers" to which it refers in its marketing presentation. SCO's response to IBM makes very general reference to "non-literal transfers" of "methods", but it fails to identify the specific programs, files, or lines of source code requested by IBM's interrogatories. Nor, by way of further example, does SCO provide the information IBM has requested concerning the source of the lines of code IBM has supposedly misappropriated or identify the specific conduct in which IBM is supposed to have engaged with respect to that code. Consistent with its indications to LinuxGram that SCO "doesn't want IBM to know what they [SCO's substantive claims] are", SCO has told IBM essentially nothing.

IBM, as the defendant in this lawsuit, is entitled to see precisely this evidence. IBM is entitled to meaningful answers so that it can understand exactly what code and technology SCO claims has been infringed. Its public statements, if truthful, indicate that SCO has already conducted much of the analysis necessary to answer the interrogatories and provide this information to IBM.

7

IBM has attempted for approximately four weeks to resolve the parties' dispute about IBM's discovery requests but has been unsuccessful. On August 27, 2003, counsel for IBM sent a letter detailing the deficiencies in SCO's discovery responses and demanding that it supplement its answers to interrogatories (appended hereto as Exhibit G). SCO responded by letter dated September 8, 2003 (appended hereto as Exhibit H).[6] In this letter, SCO declined to supplement its answers to interrogatories and, most importantly, stood by its invocation of Rule 33(d) as grounds for its refusal to provide detailed narrative responses. During lengthy teleconferences on September 18 and 22, the parties preliminarily resolved a number of issues with respect to both parties discovery responses. IBM also explained again what information it was seeking and why SCO's answers to IBM's interrogatories were deficient. Counsel for SCO did not agree to supplement its answers to the interrogatories at issue in this motion. Finally, in an e-mail sent on September 24, 2003, counsel for SCO stated that SCO would identify "pertinent macros and functions," but did not commit to supplementing its answers in the manner IBM has requested. (See Certificate of Compliance with Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure). Thus, while SCO appears more than willing to share its purported evidence with analysts and journalists under secrecy agreements, and talks about the alleged "results" of the analysis in general terms in an attempt to influence public opinion, SCO has steadfastly refused to supply IBM with meaningful specifics regarding the core allegations in this case. As a result, IBM was required to make the present motion.

As discussed below, the Court should order SCO to provide detailed, complete and meaningful answers to IBM's Interrogatory Nos. 1-9. SCO plainly has this information in its possession and cannot excuse its failure to provide it to IBM.

---

[6] SCO's counsel requested additional time to respond to IBM's August 27, 2003, letter and, by letter dated August 29, 2003, IBM extended the time for doing so and, in addition, extended the deadline by which IBM expected to receive supplemental responses to the discovery requests. A copy of IBM's August 29, 2003, letter is appended hereto as Exhibit I.

268875.1

## ARGUMENT

**A.**   **SCO Is Obligated to Identify its Trade Secrets and Other Confidential Information with Precision and Particularity at the Outset of Litigation.**

The law is clear that a plaintiff must define its claimed trade secret with "precision and particularity", Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc., 79 F. Supp. 2d 1290, 1313 (D. Utah 1999) (Benson, J.), aff'd 251 F.3d 171 (Fed. Cir. 2000), and "cannot simply persist in the blunderbuss statement that 'Everything you got from us was a trade secret'". Biocore, Inc. v. Khosrowshahi, 96 F. Supp. 2d 1221, 1229 (D. Kan. 2000) (citation omitted) (internal quotations omitted). A plaintiff "must offer more than vague assertions that 'defendant could not help but use trade secret information'". Id. at 1229-30 (quoting Utah Med. Prods., 79 F. Supp. 2d at 1313). The "[f]ailure to identify ... trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim". Porous Media Corp. v. Midland Brake Inc., 187 F.R.D. 598, 600 (D. Minn. 1999).

This is the rule in part because "a defendant is entitled to know the bases for [the] plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are." Xerox Corp. v. Int'l Bus. Machs. Corp., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (ordering Xerox to "identify in detail all trade secrets and confidential information alleged to have been misappropriated by IBM" and to "key all documents or portions thereof to the specific trade secrets and confidential information alleged to have been misappropriated by IBM"). "The orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation." Porous Media, 187 F.R.D. at 600.

Consistent with SCO's obligations under this rule, IBM asked SCO to identify "with specificity (by product, file, and line of code, where appropriate) all of the alleged trade secrets

9

and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused ...". (IBM's Interrog. No. 1.)  In addition, for each trade secret so identified, IBM asked that SCO provide basic information concerning the origin of each alleged trade secret, how it was misused or misappropriated, the names of persons with knowledge of the trade secret, and all agreements related to each trade secret. (IBM's Interrog. Nos. 2-6.)  IBM also asked for basic information concerning SCO's claim that IBM has engaged in unfair competition, specifics concerning IBM's alleged interference with contract, and a description of the manner in which IBM allegedly breached any contracts with SCO. [7]  (IBM's Interrog. Nos. 7-9.)

It is indisputable that IBM is entitled to answers to these interrogatories.  SCO concedes as much.  Although it asserted a number of baseless objections to these requests in its initial responses to the interrogatories, SCO has advised IBM that it is not withholding responses based on those objections.  SCO does not assert the right to withhold responsive, non-privileged information on the basis of the boilerplate objections lodged against IBM's interrogatories.  (See Ex. H at 1).  As a result, the only dispute here is whether SCO can meet its obligation to provide meaningful responses to the interrogatories through a general reference to the documents it has or will produce.  For the reasons stated below, SCO decidedly cannot.

## B.    SCO Misplaces Reliance on Rule 33(d) of the Federal Rules of Civil Procedure.

In response to each of the interrogatories (with the exception of Interrogatory No. 9), SCO states, "pursuant to Fed. R. Civ. P. 33(d), SCO will make available for copying and inspection at a mutually convenient date and time the responsive documents upon the entry of an

---

[7] Finally, IBM asked SCO to provide the names of persons with knowledge of its claims and basic information concerning SCO's own products. (IBM's Interrog. Nos. 10-11.)  SCO has agreed to supplement its answers to these interrogatories.

262875.1

appropriate confidentiality agreement and order."[8]  SCO misplaces reliance on Rule 33(d) to satisfy its obligation to provide answers to IBM's interrogatories.

Where certain conditions are met, Rule 33(d) provides an alternative to offering a narrative response to an interrogatory.  The rule states as follows:

> **(d) Option to Produce Business Records.**  Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records . . . and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived . . . .  A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Fed. R. Civ. P. 33(d) (emphasis added).  Where the answer to an interrogatory may be derived or ascertained from documents and the burden of ascertaining an answer from documents is substantially the same for either party, the party served with the discovery may refer to specific documents which fully respond to the interrogatory in lieu of providing a response, provided the documents are identified with sufficient particularity.  Id.[9]

---

[8]  In response to many of the interrogatories, SCO incorporates its general objections and further objects on the ground that "discovery has just begun and [SCO] has not received responsive discovery from IBM that would allow it to fully answer this question because part of this information is peculiarly within the knowledge of IBM."  (See SCO's Resps. to IBM's Interrog. Nos. 1-4, 6-9.)  SCO has, however, confirmed in writing that it is not withholding responsive, non-privileged information on the basis of these objections.  (See Ex. H at 3.)

[9]  "Under the guise of Fed. R. Civ. P. 33(d), [a party] may not simply refer generically to past or future production of documents.  They must identify in their answers to the interrogatories specifically which documents contain the answer."  Pulsecard, Inc. v. Discover Card Servs., 168 F.R.D. 295, 305 (D. Kan. 1996).  In addition, if the documents produced contain "less than all information requested," then the responding party "must supplement its reliance on Rule 33(d) with the additional requested information not contained within the [documents]".  Ralston v. Smith & Nephew Richards, Inc., No. Civ. A. 98-2174-GTV, 1999 WL 592661, at *8 (D. Kan. July 29, 1999).

11

268875.1

SCO's reliance on Rule 33(d) in responding to IBM's interrogatories is improper for at least three reasons, as summarized below and as explained in more detail in the Addendum filed and served herewith[10]:

First, most of the information that IBM seeks cannot be "derived or ascertained" from SCO's business records. For example, in Interrogatory No. 4, IBM seeks detailed information about the alleged acts of misappropriation or misuse of trade secrets that SCO alleges IBM has committed -- including the date of the misappropriation, the persons involved, the nature of the misappropriation, and the specific lines of code that are alleged to constitute trade secrets. Likewise, Interrogatory No. 7 seeks information regarding each instance in which SCO alleges IBM committed unfair competition. SCO's purported evidence of misconduct by IBM is not the kind of information that would be articulated in any of SCO's "business records".

Courts have repeatedly rejected a party's invocation of Rule 33(d) under similar circumstances. See Xerox, 64 F.R.D. at 371-72 (finding list of documents alleged to contain, refer to, or incorporate by reference trade secrets was inadequate; ordering plaintiff to "identify in detail all trade secrets and confidential information alleged to have been misappropriated"); In re Savitt/Adler Litig., 176 F.R.D. 44, 49 (N.D.N.Y. 1997) (granting motion to compel because the responding party's "answers to the interrogatories cannot fairly be derived from the records to which plaintiffs refer [because] [e]ach of the interrogatories at issue directs a plaintiff to 'state the facts' supporting various allegations in her complaint" and holding further that "resort to Rule 33(d) in response to these interrogatories was inappropriate").

Second, even if all of the information IBM seeks could be derived or ascertained from business records, the burden of doing so is decidedly greater for IBM than it would be for SCO. For example, IBM properly demanded in its interrogatories that SCO identify the specific source code that IBM allegedly misappropriated. (See IBM's Interrog. Nos. 1, 4.) SCO initially

---

[10] The Addendum lists each interrogatory, SCO's answer, and a brief description of the deficiencies in the answer and the information IBM requests by this motion.

12

responded to this request stating that the answer may be found somewhere in the documents SCO intends to produce. In an unsworn clarifying letter (precipitated by IBM's complaints to SCO about its initial response), SCO stated that the documents from which this answer may be derived "are the System V source code, the license agreements with all licensees, and the Linux 2.4 kernel and above . . . ." (See Ex. H at 3.) SCO has since produced over 900,000 pages of source code, and has promised tens of thousands of additional documents.

As SCO knows, its response to this interrogatory (like its responses to most of the interrogatories) places undue burden on IBM. The "System V source code" and the "Linux 2.4 kernel and above" (to which SCO refers) comprise computer programs that each contain literally millions of lines of source code. Even the more specific types of programs that SCO mentions in its complaint (none of which it has even identified by file and line of code) constitute hundreds of thousands of lines of code, widely dispersed throughout the operating systems. Likewise, SCO has, by its own account, entered into more than 30,000 "license agreements" with more than 6,000 licensees. Thus, even if all of IBM's interrogatories could be answered by reference to business records (which they cannot be), it would be much less burdensome for SCO to find answers to the interrogatories in SCO's documents than it would be for IBM.[11] Unless SCO filed suit without a factual basis for its claims, and unless its public statements about its supposed evidence are false, then SCO has the information IBM seeks readily available to it and can easily provide it to IBM, as it has apparently provided the information to so many others.

The case law holds that, in circumstances similar to these, the burden of deriving or ascertaining the answer to an interrogatory is not substantially the same for the party serving the

---

[11] SCO's actions are contrary to the Rule 33(d)'s requirement that "[a] specification shall be sufficient in detail to permit the interrogating party to locate . . . the records from which the answer may be ascertained". See Green v. Nuveen Advisory Corp., No. 97 C 5255, 2000 WL 1471610, at *2 (N.D. Ill. Sept. 27, 2000) (rejecting responding party's Rule 33(d) response and granting motion to compel where information responsive to interrogatories was "by definition, not apparent on the face of the records" and therefore improper as a response to such interrogatory).

13

interrogatory as for the party served. See, e.g., Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc., Civ. A. No. 95 C 1490, 1996 WL 735586, at *6 (N.D. Ill. Dec. 19, 1996), O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 278 (C.D. Cal. 1999) (granting motion to compel in part based on the holding that "[w]ithout detailed specification by category and location of responsive documents, the burden of deriving the answers to the interrogatories is not the same for the parties; rather, it would be easier for persons employed by the defendants to locate responsive documents"); Borsick v. Sequoia-Turner Corp., Div. of Unilever, Civ. A. No. 90-6499, 1991 WL 155428, at *3 (E.D. Pa. Aug. 1, 1991) (rejecting defendant's Rule 33(d) response and granting motion to compel where the "burden of ascertaining the answers to the interrogatories is unequal for the parties since defendant has failed to specify the exact location and kinds of documents responsive to plaintiff's inquiries").[12]

Third, Rule 33(d) plainly requires that "[a] specification shall be sufficient in detail to permit the interrogating party to locate . . . the records from which the answer may be ascertained". See Green v. Nuveen Advisory Corp., No. 97 C 5255, 2000 WL 1471610, at *2 (N.D. Ill. Sept. 27, 2000) (rejecting responding party's Rule 33(d) response and granting motion to compel where information responsive to interrogatories was "by definition, not apparent on the face of the records" and therefore improper as a response to such interrogatory). SCO's use of Rule 33(d) fails to meet this requirement.

_____

[12] The Court's decision in Lynchval is illustrative. In Lynchval, the defendant moved to strike expert testimony regarding certain alleged trade secrets on the grounds that plaintiff had failed to disclose them in response to defendant's interrogatories demanding identification of all trade secrets at issue in the case, and despite the magistrate judge's order directing plaintiff answer such interrogatories with specificity. Id. at *1-3. The court rejected plaintiff's reference to "thirty-one . . . deposition exhibits and other documents" "containing hundreds of pages of material" because the "defendants [would have] to divine which four documents ultimately contained the allegedly stolen trade secrets." Id. at *6. The district court thus affirmed the magistrate's ruling. The same rationale applies here: IBM should not be required to decipher SCO's trade secrets from the hundreds of thousands of pages of source code in its production and the millions of lines of source code in the computer programs that it has identified. It should also be noted that, even in Lynchval, plaintiff referenced specific documents in its supplemental interrogatory response (see Lynchval at *6) -- far more than what SCO has done here.

14

SCO has failed to identify the documents on which it purports to rely (in response to IBM's interrogatories) with the requisite specificity. Instead, SCO refers generically to the documents it has produced and/or intends to produce. SCO has not "specifically identified" which documents answer which interrogatory, nor has it attempted to supplement its answers with additional requested information when the documents referred to do not fully respond to each interrogatory. SCO's approach does not satisfy its obligation to define its claimed trade secrets with "precision and particularity," Utah Med. Prods., 79 F. Supp. 2d at 1313; see also Xerox Corp., 64 F.R.D. at 371 ("the burden is upon [SCO] to specify those charges, not upon [IBM] to guess at what they are").

### C.  Beyond Referring to Documents, SCO Has Provided No Meaningful Information in Response to the Interrogatories.

In addition to misplacing reliance on Rule 33(d), SCO provides cryptic, incomplete narrative responses to some of IBM's interrogatories. These answers are no more satisfactory than SCO's misuse of Rule 33(d).

Rule 33 states that "[e]ach interrogatory shall be answered separately and fully in writing under oath . . . ." Fed. R. Civ. P. 33(b)(1). "Answers must be responsive, complete, and not evasive." 7 Moore's Federal Practice § 33.101 (3rd ed. 2003). "A sufficient answer generally entails a conscientious and good faith effort to comprehend the question and answer it explicitly." Id.

To the extent SCO has provided answers beyond merely citing Rule 33(d), those answers fail to meet these standards. SCO's response to Interrogatory No. 1 is typical of its failings. In Interrogatory No. 1, IBM asks SCO to identify, "with specificity (by product, file, and line of code, where appropriate) all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused ...". (See IBM's Interrog. No. 1.) In response, in addition to invoking Rule 33(d), SCO provides a one-paragraph answer which states that "[t]he trade secrets include without limitation UNIX software design methods for creation and modification of software based on UNIX System V ...". (SCO's Resp.

to IBM's Interrog. No. 1.) SCO states that these "methods" include "ways to modify IBM's version of UNIX known as AIX and Sequent's version of UNIX, known as Dynix/ptx" that these "methods include those inherent in and learned through access to System V source code . . . and those developed by IBM and/or Sequent in creating derivative works and modifications based on UNIX System V".[13] (Id.) SCO then sets forth a list of "technical UNIX categories" which purportedly contain, in some undefined fashion, some undefined "method" that SCO apparently contends constitutes the trade secrets and confidential or propriety information that IBM has asked it to identify. (Id.)

Although obviously designed to create the false impression that SCO has provided meaningful information, this response, like most of SCO's other responses, is virtually meaningless. As stated, SCO's complaint alleges, and it has publicly stated, that IBM has misappropriated or misused its trade secrets and confidential or proprietary information by (1) literally copying code from System V into Linux kernels 2.4+; (2) contributing modifications of System V to Linux kernels 2.4+ in violation of contracts; (3) copying, pasting, removing legal notices, and reorganizing the order of programming structures; and (4) contributing methods, structures, and sequence from System V to Linux kernels 2.4+. Yet its narrative response to Interrogatory No. 1 refers only to "methods"; it says nothing of "literal copying", "derivative works", "obfuscation" or "non-literal transfers" such as "structures" or "sequence". Moreover, SCO's list of methods is so vague as to be meaningless: SCO makes no mention of the files or lines of code associated with the general "methods" it identifies. As a result, IBM is left without

-----

[13] In the context of discussing IBM's responses to SCO's document requests (in particular, IBM's difficulty in interpreting certain requests due to SCO's failure to specify allegedly improper code contributions) during a September 18 meet and confer, counsel for SCO indicated that the identification of NUMA, SMP and RCU in the Amended Complaint constituted a specific identification of the code wrongfully contributed by IBM. Each of the foregoing acronyms stand for large, complex and ill-defined software systems, comprised of hundreds of thousands of lines of code each, widely dispersed throughout the operating system. SCO's generic references to the acronyms not only fail to provide the information IBM requested of SCO, but also fail to give meaningful notice of the particular trade secrets at issue in this case and are therefore plainly insufficient.

16

any indication as to the methods to which SCO is referring or any ability to determine the specific source code files upon which SCO bases its claims.

By way of further example, SCO's response to Interrogatory No. 4 is likewise deficient. Among other things, this request asks SCO to identify the "specific manner in which IBM is alleged to have engaged in misuse or misappropriation". (See IBM's Interrog. No. 4(c).) Here again, despite its statements at the SCO Forum, SCO's response says nothing about: (1) "literal copying," (2) "obfuscation," (3) "derivative works" or (4) "non-literal transfers" of "structures" or "sequence". (See Ex. F at 8.) With respect to "non-literal transfers" of methods, SCO's response is insufficient for the reasons stated above. Moreover, while SCO claimed in its marketing presentation that the example offered was "One Example of Many," SCO's answers to IBM's interrogatories fail to identify any examples of line-for-line copying, let alone identify all of the code allegedly copied. At the SCO Forum 2003, SCO identified components that allegedly are "derivative works", and with respect to each, listed the numbers of files and lines of source code that allegedly were misappropriated. Yet it fails to identify a single line of code for IBM.

In sum, SCO's narrative responses to IBM's interrogatories are plainly inadequate, as summarized in the Addendum hereto. Again, unless SCO filed suit without a factual basis for its claims, and unless its public statements about its evidence are false, then SCO has the information IBM seeks readily available to it and can easily provide to it IBM. We respectfully submit that SCO should be required to produce the information IBM has requested.

## D. Answers to IBM's Interrogatories are Necessary to Define the Appropriate Scope of Discovery in this Case.

When faced with claims for misappropriation, the courts are clear that "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets". Engelhard Corp. v. Savin Corp., 505 A.2d 30, 33

17

(Del. Ch. 1986) (citations omitted). This is so because the "disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery". Leucadia, Inc. v. Applied Extrusion Techs., Inc., 755 F. Supp. 635, 637 (D. Del. 1991) (citations omitted) (granting defendant's motion to postpone discovery until after defendant concluded its discovery regarding trade secrets at issue). Until the plaintiff does so, "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not". Xerox, 64 F.R.D. at 371; see also Automed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("Plaintiff must articulate what specific information they believe defendants have misappropriated, so we can assess whether its requests are reasonably tailored to discover relevant evidence.").

SCO served IBM with more than fifty document requests on June 24, 2003. Notwithstanding SCO's failure to specify the trade secrets at issue – and IBM's clear entitlement to withhold production on that basis -- IBM has endeavored to move forward with discovery. IBM has provided responses to SCO's interrogatories and commenced a rolling production of documents.[14] Interpreting SCO's discovery requests absent identification of the trade secrets and confidential or propriety information at issue has, however, proven very difficult. SCO's requests are broad, seeking such information as the production of "[a]ll contributions made without confidentiality restrictions by IBM or anyone under its control including, but not limited to, source code, binary code, derivative works, methods, and modifications to Open Source Development Lab, Linus Torvalds, Red Hat or any other entity," among many others. (SCO's Doc. Reqs. Nos. 1, 11, appended hereto as Exhibit J.) Whether a given document ultimately will be responsive to SCO's extensive requests turns on which trade secrets SCO identifies as being at issue in this case. Meaningful answers to IBM's interrogatories will assist in the resolution of many of these issues and thus streamline the production of information by IBM.

---

[14] On September 25, 2003, IBM produced the first installment in its rolling production of documents, consisting of over 56,000 pages. During the meet and confers, IBM and SCO also reached agreement for exchange of IBM's supplemental responses to SCO's interrogatories and SCO's supplemental responses to IBM's interrogatories 10 and 11.

268875.1

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court issue an Order compelling SCO to respond to IBM's Interrogatory Nos. 1-9 with specificity and in detail.

DATED this 1st day of October, 2003.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Thomas G. Rafferty
David R. Marriott

*Counsel for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS
 MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

19

### CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2003, a true and correct copy of the

foregoing **DEFENDANT/COUNTERCLAIM-PLAINTIFF INTERNATIONAL BUSINESS**

**MACHINES CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO**

**COMPEL DISCOVERY** was hand delivered to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101

and sent by U.S. Mail, postage prepaid, to the following:

> David Boies
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504
> Stephen N. Zack
>
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131
>
> Leonard K. Samuels, Esq.
> Fred O. Goldberg, Esq.
> BERGER SINGERMAN
> 350 East Las Olas Boulevard
> Suite 1000
> Fort Lauderdale, Florida 33301

20

# EXHIBIT 2

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

RECEIVED CLERK

2003 NOV -6  P 5: 55

U.S. DISTRICT COURT
DISTRICT OF UTAH

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>       Plaintiff/Counterclaim-<br>       Defendant,<br><br>vs.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>       Defendant/Counterclaim-<br>       Plaintiff. | **DEFENDANT/COUNTERCLAIM-<br>PLAINTIFF IBM'S MEMORANDUM IN<br>SUPPORT OF SECOND MOTION TO<br>COMPEL DISCOVERY**<br><br>**(ORAL ARGUMENT REQUESTED)**<br>Civil No. 2:03cv0294<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

Pursuant to Rule 37 of the Federal Rules of Civil Procedure,

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM"),

through counsel, respectfully submits this Memorandum in Support of its Second Motion to

Compel Discovery from The SCO Group, Inc. ("SCO").

## PRELIMINARY STATEMENT

As explained in IBM's previously-submitted motion papers, SCO has declined to

provide meaningful answers to IBM's first set of interrogatories. SCO has also declined (1) to

provide meaningful answers to IBM's second set of interrogatories and (2) to produce important

categories of documents responsive to IBM's document requests. [1] In short, SCO again refuses

to provide IBM with basic information necessary to its defenses and counterclaims and, among

other things, incorporates by reference its previous inadequate responses to Interrogatory Nos. 1,

2 and 4. SCO should be compelled to provide immediate, meaningful responses to IBM's

second (as well as its first) set of interrogatories and to provide IBM with the documents it has

requested.

SCO alleges that IBM (and others) have improperly contributed SCO's Unix

intellectual property to the development of Linux, a free operating system. SCO has widely

publicized these claims to support its plan to collect royalties from Linux users. According to

SCO, Linux is not free, but rather an unauthorized derivative of SCO's Unix rights, and therefore

---

[1] A copy of SCO's responses to IBM's Second Set of Interrogatories and Second Request for Production of Documents is attached hereto as Exhibit ("Exh.") A. A copy of SCO's responses to IBM's First Set of Interrogatories and First Request for Production of Documents is attached hereto as Exh. B.

subject to control and licensing by SCO. SCO makes this claim despite the fact that it has distributed and/or made public Linux products that include at least some of the material it alleges has been misappropriated.

IBM's second set of interrogatories seeks information relating to the material in Linux to which SCO has rights, SCO's allegations that IBM has infringed those rights and the extent to which SCO itself has distributed or otherwise made the material public (as part of a Linux distribution or otherwise). Specifically, Interrogatory No. 12 states:

> Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights; and (b) the nature of plaintiff's rights, including but not limited to whether and how the code or other material derives from UNIX.

The information requested by this interrogatory goes to the core of SCO's case. It also bears importantly on IBM's counterclaims, which arise from SCO's scheme to improperly assert rights over Linux.

Like the information requested by Interrogatory No. 12, the information sought by Interrogatory No. 13 is central to this case. Interrogatory No. 13 provides:

> For each line of code and other material identified in response to Interrogatory No. 12, please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights; and (b) whether plaintiff has ever distributed the code or other material or otherwise made it available to the public, as part of a Linux distribution or otherwise, and, if so, the circumstances under which it was distributed or otherwise made available, including but not limited to the product(s) in which it was distributed or made available, when it was distributed or made available, and the terms under which it was distributed or made available (such as under the GPL or any other license).

There is no dispute that IBM is entitled to know whether, in SCO's view, IBM has infringed SCO's rights with respect the material identified in response to Interrogatory No. 12 and, if so, the details of the alleged infringement. Nor is there any dispute that IBM is entitled to know whether SCO has itself distributed or otherwise disclosed the material.

Instead of providing the information requested, SCO merely offers a single sentence explanation and incorporates by reference its responses to IBM's Interrogatory Nos. 1, 2 and 4, to which SCO has declined to provide meaningful answers. Neither SCO's responses to Interrogatory Nos. 1, 2 and 4 (which precipitated IBM's first motion to compel), nor its single sentence explanation, provide IBM with the information to which it is entitled. SCO has refused to identify with any degree of specificity the material in Linux in which it has rights or the nature of those rights. It has refused to identify any Linux material other than what it says IBM put there, despite the fact that IBM is entitled to discovery of the full extent of SCO's alleged rights in Linux. And SCO refuses to disclose whether and under what circumstances SCO itself has publicly disclosed the material in which it purports to hold rights. As is discussed in Section I below, SCO's objections to Interrogatory Nos. 12 and 13 lack merit, and SCO should be required to immediately provide complete, detailed responses.

Like Interrogatory Nos. 12 and 13, IBM's document requests (both its first and second set) seek information necessary to IBM's defenses and counterclaims. Notably, SCO has not disputed that IBM is entitled to the documents IBM has requested. SCO has nevertheless declined to make them available, despite the fact that most of them have been available for

4

production for months.  As discussed in Section II below, SCO should be compelled promptly to produce the documents IBM has requested.

## ARGUMENT

### I.   SCO SHOULD BE COMPELLED TO PROVIDE MEANINGFUL RESPONSES TO IBM'S SECOND SET OF INTERROGATORIES

#### A.   SCO Should Be Compelled to Answer Interrogatory No. 12

As stated, Interrogatory No. 12 asks SCO to identify all material in Linux to which it has rights and describe the nature of its rights to that material.  In response, SCO merely incorporates by reference its responses to IBM's Interrogatory Nos. 1 and 2.  That response is inadequate for at least two reasons.

First, Interrogatory No. 12 is not coterminous with Interrogatory Nos. 1 and 2. Interrogatory No. 1 asks SCO to identify the trade secrets or confidential/proprietary information that form the basis of SCO's lawsuit against IBM.  As explained in IBM's previous motion papers, this request calls for identification of specific items of information in Unix System V source code (or other SCO confidential/proprietary software) that SCO believes IBM misappropriated or misused.  Interrogatory No. 2 asks SCO to identify who had rights to this material, the nature and source of those rights, and all efforts to maintain the confidentiality of the material.  Interrogatory No. 12, by contrast, asks SCO to identify the material in any Linux (not Unix) software to which SCO has rights, and the corresponding nature of those rights (including the relationship of that material to anything in Unix).  Interrogatory Nos. 1 and 2 are directed at different issues than is Interrogatory No. 12.

5

**Second**, SCO has declined to provide meaningful responses to Interrogatory Nos. 1 and 2. As explained in IBM's motion to compel responses these interrogatories, SCO merely provides the names of 591 files (consisting of approximately 335,000 lines of source code) in unidentified versions of the Linux 2.4 and/or 2.5 kernels which may or may not contain information to which SCO asserts rights. Nowhere does SCO detail the nature of its alleged rights.

Rather than answer Interrogatory No. 12, SCO objects on the grounds that (1) the information is peculiarly within the knowledge of IBM and (2) the request is overbroad and unduly burdensome because it seeks information about contributions to Linux made by persons or entities other than IBM. Both objections are meritless.

**First**, the information IBM seeks is not peculiarly within its own knowledge. Obviously, SCO knows the material in Linux to which it has rights and the nature of those rights.[2] If SCO has evidence that IBM misappropriated SCO's rights, it can absolutely disclose what it has.

**Second**, the material in Linux to which SCO has rights is relevant to IBM's defenses and counterclaims irrespective of whether SCO alleges IBM misappropriated it. For example, IBM alleges that SCO has: violated the Lanham Act by misrepresenting SCO's rights

---

[2] SCO has apparently been performing this very analysis for financial analysts, the press and others. See, e.g., Bob Mims, SCO Stock Soars After Nod From Analyst, The Salt Lake Tribune, October 16, 2003 (recounting Deutsche Bank analyst Brian Skiba's recommendation of SCO's stock after viewing "a direct and near exact duplicate of source code between the Linux 2.4 kernel and [SCO's] Unix System V kernel" during a visit to SCO's Lindon headquarters) (attached hereto as Exh. C). There is no reason SCO cannot do so for IBM.

to Linux by falsely claiming ownership of the intellectual property created by the open source community (e.g., portions of Linux); tortiously interfered with IBM's prospective economic relations by making false and misleading statements to IBM's prospective customers concerning Linux; and engaged in unfair and deceptive trade practices by publishing false and disparaging statements about Linux. There is therefore no question that IBM is entitled to discovery relating to all portions of Linux to which SCO has rights (whether attributable to allegedly wrongful contributions by IBM or any other person).

Notwithstanding its objections, SCO should be required to provide a complete, detailed response to Interrogatory No. 12.

### B.   SCO Should Be Compelled to Answer Interrogatory No. 13

With respect to the material in Linux to which SCO has rights, Interrogatory No. 13 asks SCO to identify whether IBM has infringed SCO's rights (and if so, how), and whether SCO itself has ever publicly disclosed that code or material (and if so, how). Here again, SCO refuses to provide a meaningful response.

In answering this request, SCO merely incorporates by reference its responses to IBM's Interrogatory Nos. 1 and 4. As explained in IBM's previous motion to compel, however, SCO's answers to Interrogatory Nos. 1 and 4 are inadequate. Nowhere in its answers does SCO detail for IBM its allegations of infringement. Nor has SCO anywhere described whether and under what circumstances it has disclosed the material in Linux to which it has rights. This information is important to IBM's defenses and counterclaims.[3]

---

[3] Interrogatory No. 13, of course, is not coterminous with Interrogatory Nos. 1 and 4. As

In response to IBM's request for information regarding public disclosures by SCO, SCO states that it "has never <u>authorized</u>, <u>approved</u> or <u>knowingly released</u> any part of the subject code that contains or may contain its confidential and proprietary information and/or trade secrets for inclusion in any Linux kernel or as part of any Linux distribution." (Exh. A at 4 (emphasis added).) That is, of course, not the question IBM asked. Interrogatory No. 13(b) does not ask whether SCO has "authorized, approved or knowingly released" the material at issue, but whether or not that material was, in fact, ever distributed or otherwise made publicly available by SCO. The answer to this question is squarely within SCO's knowledge and there is no reason why SCO cannot provide that answer to IBM.

As with Interrogatory No. 12, SCO objects to Interrogatory No. 13 on the grounds that (1) the information requested is peculiarly within the knowledge of IBM and (2) the request is overbroad and unduly burdensome because it seeks information about contributions to Linux made by persons or entities other than IBM. Both objections are meritless.

<u>First</u>, SCO does not require discovery from IBM to answer the questions posed in either subpart of Interrogatory No. 13. With respect to subpart (a), unless SCO filed suit without a factual basis for its claims, and unless its public statements about its evidence are false, then

---

stated, Interrogatory No. 1 asks SCO to identify specific items of information in <u>Unix</u> System V source code (or other SCO confidential/proprietary software) that SCO believes IBM misappropriated or misused. Interrogatory No. 4 then asks SCO to describe each instance in which IBM allegedly misused or misappropriated each such item of information. Interrogatory No. 13, by contrast, is keyed to SCO's identification of material in any <u>Linux</u> (not Unix) software to which it has rights (as identified in response to Interrogatory No. 12). Subpart (a) asks SCO to identify whether (and how) IBM has infringed SCO's rights with respect to those lines of code, and (b) asks it to admit whether (and under what circumstances) it has ever disclosed that same code as part of one of its own Linux distributions or otherwise.

SCO has the information IBM seeks readily available and can easily provide it. With respect to subpart (b), SCO knows best whether it has distributed or otherwise disclosed the material at issue (which it plainly has) and, if so, the circumstances of that disclosure.[4]

Second, SCO's objection that Interrogatory No. 13 is overbroad and unduly burdensome insofar as it "requests the identity of source code and other material in Linux contributed to Linux by parties other than IBM" is misplaced. (Exh. A at 3.) Subpart (a) of Interrogatory No. 13 is expressly limited to alleged infringements by IBM. Nor does subpart (b) seek the identification of third-party contributions. SCO's objection on this ground to Interrogatory No. 13 is mistaken.

## II.   SCO SHOULD BE COMPELLED TO RESPOND TO IBM'S DOCUMENT REQUESTS

SCO acknowledges that IBM is entitled to the documents it has requested but it declines to produce important categories of documents that it could have produced months ago. Exhibit F to this memorandum lists each of IBM's document requests and identifies the very few categories of documents that SCO has produced. SCO should be compelled to meet its obligations.

We understand that it can take time to review and produce responsive documents. This motion is not based on SCO's failure to have completed its production. Rather, this motion is based upon the fact that SCO has not produced significant categories of documents that it

---

[4] As described in IBM's counterclaims, SCO began its business as a developer and distributor of the Linux operating system. (See IBM's Amended Counterclaims ¶ 30.) SCO has distributed and/or redistributed a number of Linux products. (See id. at ¶ 32.)

acknowledges must be produced and that are (and have long been) readily producible.  The

following few examples (of many) illustrate the point.  Although available for many months,

SCO has not produced:

- any of its supposed "evidence" of wrongdoing by IBM – such as code comparisons, public "postings" of SCO confidential material, or presentation materials from the SCO Forum – which it has clearly shown to others (see, e.g., Exh. C);

- any files from any individual employees of SCO -- such as the files of Chris Sontag, who has played a prominent role in SCO's public relations efforts (see, e.g., Linuxworld News Desk, SCO, IBM, Unix, Microsoft, and Canopy - SCO Group's Sontag Speaks Out, at http://www.linuxworld.com/story/34281.html) (attached hereto as Exh. D));

- any of the recent agreements between SCO and new licensees that have been touted in the press – such as the significant licenses between SCO and Microsoft or Sun (see Maureen O'Gara, Sun and Microsoft Agree on SCO License (July 11, 2003) at http://www.linuxworld.com/story/33820.html) (attached hereto as Exh. E));

- any source code for SCO's Linux products; or

- machine readable source code for all of SCO's Unix products.[5]

SCO's production to date consists almost entirely of (1) source code (nearly 1

million pages, in fact) in a format that is unusable and (2) legacy licenses, correspondence and

related documents apparently inherited from AT&T and others.[6]  As illustrated in Exhibit F

---

[5] SCO has produced scanned images of a paper printout of the source code for a number of its Unix products. However, it is machine-readable code that is necessary to perform the kinds of analyses that SCO acknowledges it understood from the beginning of the case that IBM would be required to perform. (See SCO's Memorandum in Support of its Motion to Compel at 5.)

[6] Notably, SCO has indicated that these licensing files exist on an "imaging system". Despite the fact that these documents apparently could have been produced in July with SCO's responses to IBM's initial document requests, SCO has taken more than four months to produce

hereto, SCO has given IBM virtually none of the other documents it has requested. Since we have been unable to persuade SCO to simply produce the documents IBM has requested, despite trying for more than 3 months in most cases, we respectfully request that the Court order SCO to produce the documents.

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court issue an Order compelling SCO immediately to respond to IBM's Interrogatory Nos. 12 and 13 with specificity and in detail and to respond to IBM's document requests.

DATED this 6th day of November, 2003.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

Of counsel:

them.

11

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International*
*Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2003, a true and correct copy of the

foregoing **DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S**

**MEMORANDUM IN SUPPORT OF ITS SECOND MOTION TO COMPEL**

**DISCOVERY** was hand delivered to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101

and sent by U.S. Mail, postage prepaid, to the following:

> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

273728.1

13

# EXHIBIT 3



SNELL & WILMER, L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*



FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

FEB - 5 2004

MARKUS B. ZIMMER, CLERK
BY
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **IBM'S REPORT ON SCO'S COMPLIANCE WITH THE COURT'S DECEMBER 12, 2003 ORDER**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke Wells |

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this report on SCO's compliance with the Court's December 12, 2003 Order granting IBM's motions to compel.

## Report on SCO's Compliance With the Court's Order

On December 12, 2003, the Court directed SCO to "respond fully and in detail" to IBM's Interrogatory Nos. 1-9, and 12 and 13, and to "produce all requested documents" in IBM's document requests by January 12, 2003.

On January 12, 2003, SCO served its Revised Supplemental Response to IBM's First and Second Set of Interrogatories (the "Revised Response", attached hereto as Exhibit 1). In the accompanying "Notice of Compliance With Court Order of December 12, 2003", which was filed with the Court, SCO represented that it had "responded fully and in detail to Interrogatories 1-9, 12 and 13 . . . based on the information in SCO's possession" and had "produced all non-privileged responsive documents requested by IBM" with the exception of certain files that would be promptly produced.

Despite these representations, however, SCO in fact failed to comply with the Court's Order in numerous respects,[1] the most important of which are addressed below.

First, contrary to its representations to the Court on January 12, 2004, SCO now admits that it has in fact not produced numerous categories of non-privileged responsive

---

[1] As we previously informed the Court, SCO did not provide all of the information it was ordered to produce by the January 12, 2004 deadline. For example, although SCO served IBM with some supplemental information on January 12, it continued to produce additional materials until January 28, necessitating the postponement of the hearing scheduled for January 23. IBM does not take issue in this report with SCO's delay in producing the information it has now produced.

284457.1

documents.  In a letter dated January 30, 2004 (a copy of which is attached hereto as Exhibit 2),
IBM identified for SCO numerous categories of responsive documents that it believed SCO had
yet to produce (at 3-5).  SCO responded to IBM by letter late last night (a copy of which is
attached hereto as Exhibit 3) conceding that it had indeed failed to produce numerous responsive
documents, and committing to doing so at an unspecified time in the future (at 5-10).

Second, in response to the Court's Order, SCO abandons any claim that IBM
misappropriated its trade secrets, concedes that SCO has no evidence that IBM improperly
disclosed UNIX System V code, and acknowledges that SCO's contract case is grounded solely
on the proposition that IBM improperly disclosed portions of IBM's own AIX or Dynix products,
which SCO claims to be derivatives of UNIX System V. [2]  The primary problem with the
Revised Response, however, is that: (1) SCO refuses to disclose from what lines of UNIX
System V code these alleged contributions are supposed to derive, which it must know to allege
the contributions were improper, and (2) a number of the allegedly improper contributions are
not disclosed with adequate particularity (e.g., SCO claims IBM improperly disclosed "SMP" but
does not specify the files or lines of code allegedly "dumped" into Linux, or the files and lines of

---

[2]  In contrast to its public statements that IBM has improperly contributed "truckloads" of code to
Linux, SCO identifies parts of only 17 AIX or Dynix files (out of the many thousands that make
up these programs) that IBM is alleged to have improperly contributed to Linux.  Contrary to the
Court's Order, SCO declines to identify by line all of the code that it alleges IBM misused.  It
continues to identify whole files, though it does not allege that IBM misused the entire file.

3

Linux in which they are supposedly found.[3] SCO also fails properly to identify and describe all of the materials in Linux to which it claims to have rights and whether, when, to whom, and under what circumstances and terms it ever distributed those materials.

Moreover, there remains a significant disparity between the information in the Revised Response and SCO's public statements about its alleged evidence. In the final analysis, SCO has identified no more than approximately 3,700 lines of code in 17 AIX or Dynix files that IBM is alleged improperly to have contributed to Linux. (A list of the files we believe SCO has identified in its Revised Response is attached hereto as Exhibit 4.) Yet, speaking at Harvard Law School earlier this week, SCO's CEO, Darl McBride, stated that:

> ". . . [T]here is roughly <u>a million lines of code</u> that tie into contributions that IBM has made and that's subject to litigation that is going on. <u>We have basically supplied that</u>. In fact, that is going to be the subject of a hearing that comes up this Friday…." (emphasis added.)

(a rough draft of this portion of the transcript is attached hereto as Exhibit 5). If the "million lines of code" in fact exist, then SCO should have identified them in response to the Court's Order.

For at least these reasons, SCO has not complied with the Court's December 12 Order and should be required immediately to do so. If, as SCO hints (but does not say), none of the allegedly improper disclosures made by IBM (or any of the other code in Linux to which

---

[3] SCO produced voluminous exhibits in connection with its Revised Response. However, these materials are essentially nothing more than print outs of various files of code, including from Linux in particular. These print outs were not called for by the Court's Order and do not compensate for the deficiencies described herein.

SCO claims to have rights) derive from UNIX System V, SCO should unequivocally say so, as that concession would eliminate much of our concern about the Revised Response.

DATED this 5th day of February, 2004.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

Of counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Donald J. Rosenberg
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International
Business Machines Corporation*

284457.1

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2004, a true and correct copy of the

foregoing **IBM'S REPORT ON SCO'S COMPLIANCE WITH THE COURT'S**

**DECEMBER 12, 2003 ORDER** was hand delivered to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> Kevin P. McBride
> 299 South Main Street, Suite 1700
> Salt Lake City, Utah 84111

and sent by U.S. Mail, postage prepaid, to the following:

> Stephen N. Zack
> Mark J. Heise
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

