SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG 1 8 2006

MARKUS B. ZIMMER, CLERK
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **IBM'S REDACTED MEMORANDUM IN OPPOSITION TO SCO'S OBJECTIONS TO MAGISTRATE JUDGE WELLS' ORDER OF JUNE 28, 2006** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant/Counterclaim-Plaintiff. | Civil No. 2:03CV-0294 DAK |
| | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |

**TABLE OF CONTENTS**

Page

Preliminary Statement ................................................................................................................1

Statement of Facts .....................................................................................................................5

Argument ..................................................................................................................................15

I.      THE ORDER IS ENTITLED TO CONSIDERABLE DEFERENCE. ..............................15

     A.      The Order Is Nondispositive and Reviewable Only for Abuse of
          Discretion. ....................................................................................................................15

     B.      Even if Reviewed De Novo, the Order Would Be Entitled to Considerable
          Deference. .....................................................................................................................21

II.     JUDGE WELLS PROPERLY FOUND THAT SCO FAILED TO COMPLY
     WITH THE COURT'S ORDERS AND RULE 26(e). .......................................................23

     A.      The Court Repeatedly Ordered SCO to Disclose the Allegedly Misused
          Material with Specificity. ..............................................................................................23

          1.      The Court's Orders and Rule 26(e) Required that SCO Specify Its
               Claims by Version, File and Line of Code. ...................................................24

               a.      The December 12, 2003 Order. ........................................................24

               b.      The March 3, 2004 Order. ................................................................28

               c.      The July 1, 2005 Order. ...................................................................30

               d.      Rule 26(e). ........................................................................................32

          2.      SCO Waived the Right To Complain About the Requirement That
               It Specify Its Claims by Version, File and Line of Code. ............................33

     B.      SCO Failed to Comply With the Court's Orders. .......................................................34

          1.      SCO Violated Three Orders and Rule 26(e) in Numerous Ways. .............34

          2.      Each of SCO's Excuses Fail. .....................................................................36

     C.      SCO's Criticism of Judge Wells' Reasoning Is Misplaced. ......................................38

III.    JUDGE WELLS PROPERLY FOUND THAT SCO ACTED WILLFULLY. ..................41

     A.      The Courts' Orders Were Clear and Unambiguous. ...................................................43

# TABLE OF CONTENTS
(continued)

Page

B.   SCO's Purported Belief That It Was in Compliance Is Beside the Point. .............45

C.   SCO Could Have Complied With the Court's Orders and Rule 26(e). .................47

IV.   JUDGE WELLS AFFORDED SCO A FAIR HEARING. .................................................52

A.   The Court Considered the Adequacy of SCO's Disclosures on an
Item-by-Item Basis. ..............................................................................................52

B.   The Court Adequately Stated the Bases of Its Decision. ........................................53

C.   The Court Did Not Err in Electing Not To Hold an Evidentiary Hearing. .............54

V.   THE RECORD FULLY SUPPORTS JUDGE WELLS' FINDING OF
PREJUDICE AND THE REMEDY SHE USED TO PREVENT IT. ................................56

A.   Judge Wells Properly Considered the Issue of Prejudice. ......................................56

1.   SCO's Conduct Resulted in Severe Prejudice. ...........................................56

2.   Judge Wells Carefully Considered the Consequences of SCO's
Conduct. ......................................................................................................58

B.   The Court Dealt Properly With SCO's Effort To Blame IBM for SCO's
Shortcomings. .......................................................................................................62

C.   The Court Considered Whether SCO Had Been Warned. ......................................64

D.   Judge Wells Considered All the Alternatives. .......................................................66

Conclusion ....................................................................................................................................70

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

Acker v. Burlington Northern and Santa Fe Ry. Co.,
    388 F. Supp. 2d 1299 (D. Kan. 2005) .......................................................................... 55

American Stock Exch., LLC v. Mopex, Inc.,
    215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................... 19

Anderson v. Corr. Med. Servs., Inc.,
    No. 04-3410, 2006 WL 1644709 (D.N.J. June 6, 2006) ............................................. 22

Ann L. v. X Corp.,
    133 F.R.D. 433 (W.D.N.Y. 1990) ................................................................................ 19

Benedict v. Amaducci,
    No. 92 Civ. 5239, 1995 WL 413206 (S.D.N.Y. July 12, 1995) ................................. 20

Boucher v. Cont'l Prod. Co., Inc.,
    365 F. Supp. 2d 1 (D. Maine 2005) ............................................................................ 19

Campbell v. Meredith Corp.,
    No. 00-2275, 2003 WL 1119552 (D. Kan. Mar. 07, 2003) ......................................... 33-34, 59

Cardenas v. Dorel Juvenile Grp., Inc.,
    230 F.R.D. 611 (D. Kan. 2005) ................................................................................... 50

Carney v. KMart Corp.,
    176 F.R.D. 227 (S.D.W. Va. 1997) ............................................................................. 64

Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.,
    667 F.2d 600 (7th Cir. 1981) ....................................................................................... 51

Compton v. Illinois Dept. of Corrs.,
    No. 02-1397, 2006 WL 1367467 (C.D. Ill. May 16, 2006) ........................................ 59

Computer Assocs., Int'l, Inc. v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992) ........................................................................................ 58

Cooper Hosp./Univ. Med. Ctr. v. Sullivan,
    183 F.R.D. 119 (D.N.J. 1998) ..................................................................................... 23

Denmon v. Runyon,
    151 F.R.D. 404 (D. Kan. 1993) ................................................................................... 20

Dreyer v. Ryder Auto. Carrier Group, Inc.,
    367 F. Supp. 2d 413 (W.D.N.Y. 2005) ....................................................................... 19

Ellsworth v. Gibson,
    164 Fed. Appx. 782 (10th Cir. 2006) .......................................................................... 63

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Evans v. Atwood,
  No. CIV.A. 96-2746, 1999 WL 1032811 (D.D.C. Sept. 29, 1999) ....................................22-23

F.D.I.C. v. Daily,
  973 F.2d 1525 (10th Cir. 1992) ............................................................ 41, 46, 55, 66

FTC v. Enforma Natural Prod., Inc.,
  362 F.3d 1204 (9th Cir. 2004) ............................................................................. 44

Fiarris v. Van Hoesen,
  No. CIV-05-0250, 2006 WL 149027 (W.D. Okla. Jan. 18, 2006)............................................. 33

G.J.B. & Assocs., Inc. v. Singleton,
  913 F.2d 824 (10th Cir. 1990) ............................................................................ 21

Gates Rubber Co. v. Bando Chem. Ind., Ltd.,
  9 F.3d 823 (10th Cir. 1993) ............................................................................... 58

Godlove v. Bamberger, Foreman, Oswald, and Hahn,
  903 F.2d 1145 (7th Cir. 1990) ............................................................................ 55

Gomez v. Martin Marietta Corp.,
  50 F.3d 1511 (10th Cir. 1995) ............................................................................ 17

Hakim v. Cannon Avent Group,
  No. Civ. A. 02-1371, 2005 WL 1793768 (W.D. La. May 4, 2005)........................................... 19

Hill v. SmithKline Beecham Corp.,
  393 F.3d 1111 (10th Cir. 2004) ........................................................................... 63

Hilterman v. Furlong,
  966 F. Supp. 1021 (D. Colo. 1997)...................................................................... 34, 59

Home Port Rentals, Inc. v. Ruben,
  957 F.2d 126 (4th Cir. 1992) ............................................................................. 21

In re Bono Dev., Inc.,
  8 F.3d 720 (10th Cir. 1993) .............................................................................. 21

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
  No. 02 Civ. 3400, 2006 WL 1072008 (S.D.N.Y. Apr. 19, 2006)............................................. 50

In re Orthopedic Bone Screw Prods. Liab. Litig.,
  No. MDL 1014, 1998 WL 254038 (E.D. Pa. May 5, 1998) ................................................64-65

In re Standard Metals Corp.,
  817 F.2d 625 (10th Cir. 1987) .......................................................................... 41, 50

In re Westinghouse Elec. Corp. Uranium Contracts Litig.,
  563 F.2d 992 (10th Cir. 1977) ............................................................................ 47

iv

## TABLE OF AUTHORITIES
(continued)

Page(s)

Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers,
    357 U.S. 197 (1958)..................................................................................................46-47

Jesselson v. Outlet Assocs. of Williamsburg,
    784 F. Supp. 1223 (E.D. Va. 1991) ....................................................... 18, 20

Jones v. Amalgamated Warbasse Houses, Inc.,
    721 F.2d 881 (2d Cir. 1983) ....................................................................... 53

Kaul v. Stephan,
    828 F. Supp. 1504 (D. Kan. 1993)....................................................... 22, 38

Kearns v. GMC,
    94 F.3d 1553 (Fed. Cir. 1996).................................................................... 20

Kern River Gas Transmission Co. v. 6.17 Acres Of Land,
    No. 04-4033, 2005 WL 3257509 (10th Cir. Dec. 2, 2005).................... 46, 69

King v. G.G.C., Inc.,
    No. 86-6009-C, 1988 WL 142413 (D. Kan. Dec. 12, 1988)................... 16, 20

King-Hardy v. Bloomfield Bd. of Educ.,
    No. Civ.3:01CV979, 2002 WL 32506294 (D. Conn. Dec. 8, 2002) ........................................ 69

Kropp v. Ziebarth,
    557 F.2d 142 (8th Cir. 1977) ..................................................................... 50

Lancaster v. Indep. Sch. Dist. No. 5,
    149 F.3d 1228 (10th Cir. 1998) ............................................................. 21, 52

Langley v. Union Elec. Co.,
    107 F.3d 510 (7th Cir. 1997) ...................................................................... 55

Lee v. Wakins,
    No. 03-MK-72, 2005 WL 2991730 (D. Colo. Nov. 07, 2005) ................... 32

Liberte Capital Group, LLC v. Capwill,
    99 Fed. Appx. 627 (6th Cir. 2004)..........................................................21-22

Lopez-Bignotte v. Ontivero,
    42 Fed. Appx. 404 (10th Cir. 2002).......................................................... 69

Luman v. Champion,
    108 F.3d 1388, 1997 WL 143594 (10th Cir. 1997) ................................... 63

Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.,
    Civ. Action No. 95 C 1490, 1996 WL 780492 (N.D. Ill. Dec. 11, 1996)................................. 20

Mannick v. Kaiser Found. Health Plan, Inc.,
    No. C 03-5905, 2006 WL 2168877 (N.D. Cal. July 31, 2006)................................. 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

McHugh v. Apache,
  Civ. A. No. 89-A-1297, 1991 WL 16495 (D. Colo. Feb. 1, 1991) ..................................... 18, 20

Miller v. Auto. Club of New Mexico, Inc.,
  420 F.3d 1098 (10th Cir. 2005) ................................................................................. 63

Miller v. Sprint Commc'ns,
  No. 3:97CV156, 1997 WL 910426 (W.D.N.C. Dec. 31, 1997) ................................. 46

Moghadam-Falahi v. I.N.S.,
  9 F.3d 1552, 1993 WL 430075 (9th Cir. 1993) ...................................................... 53

Nike, Inc. v. Top Brand Co. Ltd.,
  216 F.R.D. 259 (S.D.N.Y. 2003) .............................................................................. 69

Ocelot Oil Corp. v. Sparrow Indus.,
  847 F.2d 1458 (10th Cir. 1988) ........................................................................ 16, 19, 20

Pall Corp. v. Micron Separations,
  66 F.3d 1211 (Fed. Cir. 1995)................................................................................. 20

Parker v. Cent. Kansas Med. Ctr.,
  178 F. Supp. 2d 1205 (D. Kan. 2001).......................................................... 22, 38, 59

Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,
  866 F.2d 228 (7th Cir. 1988),
  cert. denied, 493 U.S. 847, 110 S. Ct. 141, 107 L. Ed. 2d 100 (1989) ..................... 20

Penn v. San Juan Hosp., Inc.,
  528 F.2d 1181 (10th Cir. 1975) .............................................................................. 54

Pentalpha Macau Commercial Offshore Ltd. v. Reddy,
  No. C03-5914, 2005 WL 2989273 (N.D. Cal. Nov. 3, 2005)............................. 51, 69

Perry v. Vill. of Arlington Heights,
  No. 94 C 0058, 1996 WL 272456 (N.D. Ill. May 20, 1996)..................................... 36

Peterson v. Hantman,
  227 F.R.D. 13 (D.D.C. 2005)................................................................................... 44

Phalp v. City of Overland Park, Kansas,
  No. 00-2354, 2002 WL 1067460 (D. Kan. May 1, 2002)......................................... 20

Price v. Lake Sales Supply R.M., Inc.,
  510 F.2d 388 (10th Cir. 1974) ................................................................................. 54

Proctor & Gamble Co. v. Haugen,
  427 F.2d 727 (10th Cir. 2005) ................................................................................. 54

# TABLE OF AUTHORITIES
(continued)

Page(s)

R.W. Int'l Corp. v. Welch Foods, Inc.,
  937 F.2d 11 (1st Cir. 1991) ................................................................................ 45

Rambus, Inc. v. Infineon Technologies AG,
  145 F. Supp. 2d 721 (E.D. Va. 2001) ............................................................. 63-64

Robson v. Hallenbeck,
  81 F.3d 1 (5th Cir. 1996) ........................................................................... 44, 54

Schroeder v. Southwest Airlines,
  129 Fed. Appx. No. 484-85, 2005 WL 984495 (10th Cir. 2005) ................... 41, 46, 66

Segal v. L.C. Home Contractors, Inc.,
  303 F. Supp. 2d 790 (S.D.W.V. Jan. 22, 2004) ................................................... 17

Serra Chevrolet, Inc. v. General Motors Corp.,
  446 F.3d 1137 (11th Cir. 2006) ............................................................... 22, 36, 44

Sithon Mar. Co. v. Holiday Mansion,
  No. Civ. A. 96-2262, 1998 WL 638372 (D. Kan. Sept. 14, 1998) ......................... 50

Sonnino v. Univ. of Kan. Hosp. Auth.,
  220 F.R.D. 633 (D. Kan. 2004) ....................................................................... 50

Steil v. Humana Kan. Cty., Inc.,
  197 F.R.D. 445 (D. Kan. 2000) ....................................................................... 50

Sunroof de Mexico, S.A. de C.V. v. Webasto Roof Sys., Inc.,
  No. 05-40031, 2006 WL 1042072 (E.D. Mich. April 19, 2006) ............................ 19

T.N. Taube Corp. v. Marine Midland Mortgage Corp.,
  136 F.R.D. 449 (W.D.N.C. 1991) ..................................................................... 44

Tenen v. Winter,
  15 F. Supp. 2d 270 (W.D.N.Y. 1998) ............................................................... 69

The Chase Manhattan Bank v. Iridium Africa Corp.,
  No. Civ. A. 00-564, 2003 WL 22928042 (D. Del. Nov. 25, 2003 ) ......................... 19

Thibeault v. Square D Co.,
  960 F.2d 239 (1st Cir. 1992) ......................................................................... 65

Thomas v. Denny's Inc.,
  111 F.3d 1506 (10th Cir. 1997) ....................................................................... 55

Travelers Ins. Co. v. Monpere,
  No. 93-CV-0127E(F), 1995 WL 591141 (W.D.N.Y. Sept. 8, 1995) ......................... 32

Tyler v. City of Manhattan,
  118 F.3d 1400 (10th Cir. 1997) ....................................................................... 21

## TABLE OF AUTHORITIES
(continued)

Page(s)

Umbenhower v. Copart, Inc.,
   No. 03-2476, 2004 WL 2660649 (D. Kan. Nov. 19, 2004) ..................................................... 19

United States v. Corbett,
   57 F.3d 194 (2d Cir. 2004) ............................................................................................. 52

United States v. U.S. Gypsum Co.,
   333 U.S. 364 (1948) ...................................................................................................... 20

Von Brimer v. Whirlpool Corp.,
   536 F.2d 838 (9th Cir. 1976) ......................................................................................... 18

Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas,
   397 F. Supp. 2d 698 (W.D.N.C. 2005) ........................................................................... 18

Wallin v. Alfaro,
   No. Civ. A03CV00281, 2005 WL 2125224 (D. Colo. Sept. 2, 2005)..................................... 21

Williams v. Sprint/United Mgmt. Co.,
   230 F.R.D. 640 (D. Kan. 2005)........................................................................................ 44

Zappala v. Albicelli,
   954 F. Supp. 538 (N.D.N.Y. 1997)................................................................................... 50

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes and Administrative Codes**

28 U.S.C. § 636 ............................................................................................................ 1, 19, 20

D.U. Civ. R. 72-1 ................................................................................................................... 1

D.U. Civ. R. 72-2 ................................................................................................................... 1

D.U. Civ. R. 74-1 ................................................................................................................... 1

Fed. R. Civ. P. 26 ........................................................................................................ 1, 19, 24, 32

Fed. R. Civ. P. 72 ......................................................................................................... 1, 16, 20

Pursuant to Fed. R. Civ. P. 72, D.U. Civ. R. 72-1, 72-2, 74-1, and 28 U.S.C. § 636, defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits the following response to the objections of The SCO Group, Inc. ("SCO") to Magistrate Judge Wells' Order Granting in Part IBM's Motion to Limit SCO's Claims, dated June 28, 2006 (the "Order").[1]

## Preliminary Statement

While publicly touting its case, SCO refused for years specifically to identify the material it claimed IBM misused. Magistrate Judge Wells twice ordered SCO to identify the material by version, file and line of code, but SCO declined. That failure led this Court to note the astonishing gap between SCO's public statements and its disclosures to IBM. Even in the face of a third order from this Court requiring that SCO specifically identify the allegedly misused material by an interim and then a final deadline, SCO failed fully to do so. As a result of SCO's failure to comply with the Court's orders and Fed. R. Civ. P. 26(e) -- which left IBM looking for unidentified needles in an enormous haystack of operating system code, methods and concepts -- IBM was unable properly to prepare a defense to SCO's allegations. Thus, Judge Wells entered the Order, precluding SCO from supporting, or introducing evidence concerning, 187 items of allegedly misused material (the "Disputed Items"). In so doing, Judge Wells properly exercised her discretion to manage these proceedings. SCO's objections to the Order seek to find fault with Judge Wells where there is none. SCO's objections do not bear even the slightest scrutiny and should be overruled.

---

[1] Citations to the documents appended to the accompanying Declaration of Todd Shaughnessy are given as "Ex. __". Citations to SCO's memorandum in support of its objections are given as "Obj. at __". Citations to the Exhibits to the July 13, 2006 Declaration of Mark James are given as "James Ex. __".

SCO asserts four objections to the Order. SCO asks this Court to set it aside on the grounds that Judge Wells erred in: (1) finding that SCO failed to comply with three separate Court orders, which required SCO to specify its allegations that IBM misused the elements of three operating systems; (2) finding that SCO willfully failed to comply with the orders; (3) "failing to consider whether specific disclosures were adequate"; and (4) "failing to require IBM to establish prejudice and to consider alternatives to the sanction imposed."

As a threshold matter, Judge Wells' decision is entitled to substantial deference, and SCO bears a heavy burden to sustain its objections. The Order is a nondispositive adjudication of a discovery matter. It does not dispose of any cause of action or defense; it merely precludes SCO from supporting or introducing evidence relating to the Disputed Items. Thus, the Order cannot be modified or set aside unless clearly erroneous, and an order is not clearly erroneous unless it leaves the reviewing court with a clear and definite conviction that an error was committed. As the Seventh Circuit puts it, an error is clearly erroneous where it strikes the reviewing Court as wrong "with the force of a five-week-old, unrefrigerated dead fish." Even if (contrary to fact) the Order were subject to de novo review, it would be entitled to deference. Judge Wells has supervised discovery in this litigation for more than three years; she wrote two of the three orders SCO violated; and she devoted substantial time and effort to evaluating SCO's conduct and the prejudice it caused, as the Order makes clear. Therefore, the Order should not be set aside absent an extraordinary showing of error, which (as we discuss below) SCO cannot establish. (See Section I below.)

First, SCO objects to Judge Wells' finding that SCO failed to comply with the Court's orders requiring SCO to identify the Disputed Items with specificity. SCO argues in effect that Judge Wells misunderstands her own orders. As we discuss below, however, the three orders at

2

issue (two of which were authored by Judge Wells) and Rule 26(e), which SCO fails even to mention, plainly and unequivocally required SCO specifically to identify the Disputed Items by providing version, file and line information. For each of the Disputed Items, SCO was required to tell IBM what its case was about by providing at least nine coordinates (version, file and line information for each of three sets of operating systems). SCO did not provide the required coordinates with respect to any of the Disputed Items. In fact, for some of the Disputed Items, SCO did not provide any coordinates at all, refusing to disclose anything of consequence about its case. Thus, for all of the Disputed Items, SCO not only violated the Court's orders, it did so in multiple respects. The only way to find error with Judge Wells' decision would be to disregard literally scores of violations of the plain language of those orders and of Rule 26(e). (See Section II below.)

Second, SCO objects to Judge Wells' finding that SCO acted with the requisite intent. Although we believe the record readily supports a finding of bad faith, such a finding is not required to uphold Judge Wells' ruling. A finding that SCO acted willfully in violating the Court's orders and Rule 26(e) is sufficient to justify the Order. SCO acted willfully so long as its actions were voluntary (as opposed to inadvertent). There can be no serious question that SCO's violations were voluntary and not inadvertent. IBM twice moved (successfully) to compel production of SCO's specific allegations of misuse; the Court entered three separate orders specifically requiring SCO to provide them; SCO failed in numerous respects to comply with its obligations; and SCO ignored IBM's warnings that SCO's disclosures fell far short and that IBM would seek to preclude SCO from using any material not identified with the requisite particularity. Hence, the record fully supports Judge Wells' conclusion that SCO acted willfully

in describing the Disputed Items on its own terms, rather than as required by the Court. (See Section III below.)

Third, SCO objects to the Order on the grounds that Judge Wells failed "to consider whether specific disclosures were adequate." This objection, like all of SCO's objections, finds no support in the record, which shows that Judge Wells carefully considered each of the Disputed Items. The Order expressly states: "SCO submitted its alleged misappropriated materials on CD-ROM. The Court has reviewed all of the disputed items individually." SCO offers no reason -- and there is none -- why Judge Wells should not be taken at her word especially where the critical facts (i.e., that SCO failed to provide the thrice-required coordinates that would have shed critical light on its allegations) are not in dispute. Moreover, contrary to SCO's contention, the Order fully and fairly describes the bases for Judge Wells' decision, which is nearly 40 pages. The Court's reasoning is described in the Order in detail, without ambiguity, permitting full and fair review by this Court. (See Section IV below.)

Finally, SCO objects that Judge Wells failed "to require IBM to establish prejudice and to consider alternatives to the sanction imposed." By this objection, SCO complains (in scattershot fashion) that Judge Wells abdicated her duty to consider the issue of prejudice; IBM's alleged responsibility for SCO's deficiencies; whether SCO had been warned; and alternatives to limiting SCO's proof. Here again, SCO's complaints simply ignore the record. As the Order itself makes plain, Judge Wells carefully and expressly considered the prejudice caused by SCO's conduct; SCO's unsupported allegations of misconduct by IBM; the fact that SCO had ample notice of its obligations and the consequences of its failure to comply with them; and alternatives to limiting SCO's proof. Notwithstanding the impression SCO seeks to create, Judge Wells did not rush to

4

an unconsidered decision.  She reached the right result for the right reasons after giving SCO a full and fair opportunity to be heard.  (See Section IV below.)

In attempting to find fault with Judge Wells, SCO blithely ignores the plain language of three court orders and Rule 26(e), the fact that it willfully violated them in multiple respects (despite ample warning and opportunity to comply), and the severe prejudice that IBM would have experienced if Judge Wells had not entered the Order.  Judge Wells made the correct decision in limiting SCO's proof, and no basis exists for disturbing it.

## Statement of Facts[2]

The crux of SCO's case is that IBM misused elements of three sets of operating systems to which SCO claims rights:  (1) Unix System V, (2) AIX or Dynix and (3) Linux.  SCO claims, among other things, that IBM improperly dumped AIX and Dynix materials (code, methods and concepts) -- which IBM owns, but SCO purports to control on the theory they are derivatives of Unix System V -- into Linux.  (Sec. Am. Compl. ¶¶ 110-36, 143-66.)  According to SCO, IBM's contributions to Linux breached its alleged contractual obligations to SCO, resulted in the success of Linux, and caused the failure of SCO's business.  (Id.)  Thus, SCO claims, it is entitled to billions of dollars of damages.  (Id.)

As this Court recognized, SCO made "a plethora of public statements" touting its case, while offering no support for its allegations.[3]  (Ex. 7 at 10.)  For example, SCO's "Chris Sontag

---

[2] A detailed timeline, showing IBM's repeated requests, the Court's repeated orders, and SCO's repeated failures to identify the allegedly misused material with specificity, is attached as Addendum A.

[3] In an attempt to justify its public statements, SCO submits an addendum purporting to demonstrate that they were correct when made.  (Obj. at Appendix A.)  The information on which SCO relies in its addendum was not before Judge Wells and is therefore outside the record on this objection.  In any event, even SCO's addendum fails to justify its statements, which were at best misleading.

stated in November 2003 during an interview that, 'There are other literal copyright infringements that we have not publicly provided, we'll save those for court. But there are over one million lines of code that we have identified that are derivative works by IBM and Sequent that have been contributed into Linux that we have identified . . . .'" (Order at 6.) Nowhere in its responses to IBM's discovery requests did SCO specifically identify more than 1 million lines of code in Linux to which it has rights allegedly infringed by IBM.

To defend against SCO's allegations, IBM propounded a series of discovery requests seeking specific identification of the elements of System V, AIX/Dynix and Linux that IBM was alleged to have misused. (James Exs. 3, 4.) Specific identification of the allegedly misused material was required because the operating systems implicated by SCO's claims are comprised of at least hundreds of versions, millions of files, and billions of lines of source code, as well as methods and concepts, as illustrated in the following table:

| Operating System | Versions | Files | Lines |
|---|---|---|---|
| System V | 11 | 112,622 | 23,802,817 |
| AIX | 9 | 1,079,986 | 1,216,698,259 |
| Dynix | 37 | 472,176 | 156,757,842 |
| Linux | 597 | 3,485,859 | 1,394,381,543 |
| Total: | 654 | 5,150,643 | 2,791,640,461 |

(Ex. 18 ¶ 42.)

IBM's discovery requests clearly and unequivocally asked SCO to identify each element of allegedly misused material by version, file and line of code. (See James Ex. 3 at 2-4; James Ex. 4 at 2.) In no less than six separate requests, IBM sought, for each item of allegedly misused

material, at least nine coordinates (version, file and line information for each of at least three

operating systems).[4] Notably, for purposes of its requests IBM defined the term "identify" as

follows:

> "in the case of alleged trade secrets or confidential or proprietary
> information, whether computer code, methods or otherwise, to give a
> complete and detailed description of the trade secrets or confidential or
> proprietary information, including but not limited to an identification of
> the specific lines and portions of code claimed as trade secrets or
> confidential or proprietary information and the location (by module name,
> file name, sequence number or otherwise) of those lines of code within any
> larger software product or property."

(James Ex. 3 at 18-19 (emphasis added); James Ex. 4 at 3 (emphasis added).) The requested

specificity was essential to understand SCO's claims and prepare a proper defense; without them,

IBM would be forced to search the massive haystack of code, methods and concepts implicated

by SCO's claims, without specific version, file and line coordinates. (Ex. 18 ¶¶ 9-13, 37-48.)

After SCO refused repeated IBM requests to provide the information, IBM moved twice

to compel production of the specifics of SCO's allegations. (See Exs. 1, 2.) In support of its

motions, IBM reiterated that specific version, file and line information was required for IBM to

defend itself. For example:

- On October 1, 2003, IBM informed the Court that although it "asked SCO to tell
  us which files and lines of source code IBM is supposed to have misused or
  misappropriated", SCO failed to "identify the files and lines of code that IBM has
  allegedly misappropriated". (Ex. 1 at 3-4 (emphasis added).)

- On November 6, 2003, IBM informed the Court that its Interrogatory No. 12
  required SCO to "identify, with specificity (by file and line of code), (a) all source
  code and other material in Linux (including but not limited to the Linux kernel,

---

[4] For example, we asked SCO to provide the version(s), file(s) and line(s) of each item of
allegedly misused AIX or Dynix material (three coordinates); the version(s), file(s) and line(s) of
the System V material from which it was allegedly derived (three coordinates); and the
version(s), file(s) and line(s) where it is allegedly found in Linux (three coordinates). (See James
Ex. 3 at 2-4; James Ex. 4 at 2.)

any Linux operating system and any Linux distribution) to which plaintiff has rights". (Ex. 2 at 3 (emphasis added).)

- On February 5, 2004, IBM notified the Court and SCO that SCO's discovery responses do "not specify the <u>files or lines of code</u> allegedly 'dumped' into Linux, or the <u>files and lines of Linux</u> in which they are supposedly found." (Ex. 3 at 3-4 (emphasis added).)

- At the February 6, 2004 hearing on SCO's compliance with the Court's December 12, 2003 Order, IBM argued that SCO had failed to comply with the Court's requirement that SCO "identify by <u>file and line of code</u>, what it is they say [IBM] took from Unix System Five, and where it is exactly in Linux that they say that [IBM] put that." (Ex. 4 at 5-6 (emphasis added).)

In an order dated December 12, 2003, Judge Wells required SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM". (Ex. 5 ¶ 4.) In addition, Magistrate Judge Wells ordered SCO, "To respond fully and in detail to Interrogatory Nos. 1-9 <u>as stated in IBM's First Set of Interrogatories</u>. . . . [and] 2. To respond fully and in detail to Interrogatory Nos. 12 and 13 <u>as stated in IBM's Second Set of Interrogatories</u>. . . ." (<u>Id.</u> ¶¶ 2-3 (emphasis added).) By requiring SCO "to respond fully and in detail" to IBM's requests, "as stated in" IBM's requests, the Court ordered SCO to respond to IBM's requests using the definition of the term "identify" included in IBM's requests. Thus, the Court ordered SCO to provide version, file and line information for each of the Disputed Items.

Even without reference to the definition of "identify" included in IBM's discovery requests, the December 2003 Order clearly required SCO to provide at least nine coordinates for each item of allegedly misused material. The Court ordered SCO:

- To "<u>identify, with specificity (by product, file and line of code, where appropriate)</u> all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused" (IBM Interrog. No. 1);

- "For each alleged trade secret and any confidential or proprietary information identified in response to Interrogatory No. 1, [to] <u>identify . . . all places or</u>

8

locations where the alleged <u>trade secret or confidential or proprietary information</u> <u>may be found or accessed</u>" (IBM Interrog. No. 3);

- "For . . . any confidential or proprietary information *identified* in response to Interrogatory No. 1, [to] please <u>describe, in detail . . . with respect to any code or</u> <u>method</u> plaintiff alleges or contends that IBM misappropriated or misused, <u>the</u> <u>location of each portion of such code or method in any product,</u> such as AIX, in Linux, in open source, or in the public domain" (IBM Interrog. No. 4);

- "For each line of source or object code and each method identified in response to Interrogatory No. 1, [to] <u>identify . . . all products in which, in whole or in part, the</u> <u>code or method is included</u> or on which, in whole or in part, the code or method is based" (IBM Interrog. No. 6);

- To "<u>identify, with specificity (by file and line of code), (a) all source code and</u> <u>other material in Linux</u> (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights; and (b) the nature of plaintiff's rights, including but not limited to whether and how the code or other material derives from UNIX" (IBM Interrog. No. 12);

- "<u>For each line of code and other material</u> *identified* in response to Interrogatory No. 12, [to] please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, [to] <u>describe in detail how IBM is</u> <u>alleged to have infringed plaintiffs rights</u> . . . ." (IBM Interrog. No. 13).

(Ex. 5 at 2-4 (emphasis added); James Ex. 3 at 2-4 (emphasis added); James Ex. 4 at 2 (emphasis added).) The Court required SCO to provide version, file and line coordinates for each of the relevant operating systems, as Judge Wells confirmed in the Order. (Order at 2, 32, 36-38.)

Again, in an order dated March 3, 2004, Judge Wells reiterated her order that SCO provide all of the information required by the December 12, 2003 Order. (Ex. 6 at 2.) Judge Wells ordered SCO "to provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix" and "to provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived". (Ex. 6 ¶¶ I.1-I.3.) Here again, the Court required SCO to provide version, file and line information for each of the supposedly misused elements of System V AIX/Dynix and Linux.

9

(<u>Id.</u> ¶¶ I.1-I.4.)  Judge Wells confirmed as much in the Order, in which she found that SCO failed to provide the required information.  (<u>Id.</u>)

Based on SCO's failures to comply with the December 2003 and March 2004 Orders, IBM moved for summary judgment.  The Court deferred resolution of IBM's motions but recognized the difference between SCO's public claims of misconduct and its disclosures to IBM:

> "Viewed against the backdrop of SCO's plethora of public statements concerning IBM's and others' infringement of SCO's purported copyrights to the UNIX software, it is astonishing that SCO has not offered any competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights through IBM's Linux activities."

(Ex. 7 at 10.)  The Court then entered a third order, dated July 1, 2005, requiring SCO, over its objection, to provide the twice-ordered but missing specificity.  (<u>See</u> Ex. 8 at 4.)  The Court set interim and final deadlines for the disclosure of all allegedly misused material and the updating of interrogatory responses.  (Ex. 8 at 4-5; Ex. 9 at 56.)  The Court set October 28, 2005, as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material Identified to Date and to Update Interrogatory Responses Accordingly".  (Ex. 8 at 4.)  The Court set December 22, 2005, as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material".  (Ex. 8 at 4.)  The July 1, 2005 Order made perfectly clear that SCO was to put all of its allegations on the table before the close of fact discovery to permit efficient expert and summary judgment proceedings.  (<u>Cf.</u> Order at 2 ("Obviously what I don't want is either side to use information that has been withheld in support of a summary judgment motion or in support of their case at trial, all evidence need[s] to be on the table for the other party to analyze and take a look at.").)

10

Although IBM had already produced hundreds of millions of lines of source code (which SCO could have used to meet its discovery obligations), SCO claimed that it required more discovery from IBM to comply with the Court's orders. (Ex. 20 at 8-9.) SCO demanded that IBM produce hundreds of millions of lines of additional code, programmers' notes and design documents. (Id.) IBM produced the equivalent of tens of millions of pages of these materials. The production involved more than 4,700 hours of work from more than 400 IBM employees, not including the time spent by IBM counsel and consultants. (Ex. 10 ¶ 5.)

Despite the scope of IBM's production, SCO's interim disclosures fell far short of the specificity required by the Court's three orders. (See Ex. 11 at 1-2.) SCO failed to describe all of the allegedly misused material by version, file and line of code. (Id.) In fact, SCO failed to disclose version, file and/or line information for multiple elements of each item. (Id.) IBM brought these deficiencies to SCO's attention and asked that SCO correct them in its Final Disclosures:

> "Despite IBM's requests and the Court's orders, SCO's interim disclosures and interrogatory responses fail to specifically disclose all of the allegedly misused material as required. For most of the allegedly misused material, SCO still fails to disclose (1) files and lines of code in Linux; (2) files and lines of code in AIX or Dynix; and (3) files and lines of code in UNIX System V. Furthermore, in the few instances where SCO does identify specific lines of Linux, AIX, or Dynix code as allegedly contributed material, SCO generally fails adequately to provide any identification of the lines of UNIX System V code from which the allegedly contributed material is alleged to derive or result."

(Id.) Because it is impossible to defend against the unknown, IBM advised SCO it would have no choice but to ask the Court to preclude SCO from supporting its allegations with respect to allegedly misused material not properly disclosed in the Final Disclosures. (See id. at 2.) SCO elected not to respond to IBM's letter.

11

Rather than correct the shortcomings in its interim disclosures, SCO compounded them in its final disclosures (the "Final Disclosures") by challenging even more items -- 294 in all -- without specifically describing them, despite the fact that SCO's claims implicate at least hundreds of versions, millions of files, and billions of lines of source code, methods and concepts. (Ex. 21 ¶¶ 10-17.) While SCO's Final Disclosures are voluminous in some respects, none of the 294 Items provided the level of detail sought by IBM and required by the Court. However, SCO's shortcomings were especially egregious with respect to the Disputed Items. (Id.) As to the Disputed Items, of which there are 187, SCO failed to provide even the most basic information about the allegedly misused material. (See Item Nos. 3-22, 24-42, 44-89, 91-93, 95-112, 143-49, 165-82, 193, 232-271, 279-93.)

As illustrated in Addendum B, for all of the Disputed Items, SCO failed to provide most of the information required to tell IBM what SCO's case was about. Every blank space in Addendum B represents a separate violation of each of the Court's orders. SCO's non-compliance is further summarized in the following table, which shows the number of the (187) Disputed Items for which SCO provided the required version, file or line information.

| Operating System | Version(s) | File(s) | Line(s) |
|---|---|---|---|
| System V | 1 | 1 | 0 |
| AIX | 1 | 1 | 0 |
| Dynix | 2 | 3 | 0 |
| Linux | 27 | 138 | 3 |

(Ex. 18 ¶ 20.) This table shows that SCO failed to provide any System V, AIX or Dynix line information for any of the 187 items, and it provided specific lines of Linux for only three of the Disputed Items (for which it provided no version information). In short, SCO came nowhere

12

close to providing the information that IBM needed to defend itself and that the Court ordered SCO to provide.

SCO's failure to specify its claims put on IBM the impossible burden of looking for undefined needles in an enormous haystack. (Ex. 21 ¶ 15.) As stated, the code base implicated by SCO's disclosures exceeded two billion lines of code, in more than 5 million files, and 500 versions of different operating systems. (Ex. 18 ¶ 42.) But the size of the haystack was only part of the problem.[5] The real problem with the Disputed Items was that SCO failed adequately to describe the needles it was sending IBM to find. (Ex. 21 ¶¶ 11-17.) As a result, the needles looked just like hay. (Id. ¶ 17.) Rather than define the Disputed Items (which could only properly be done by providing version, file and line information), SCO described them in general and imprecise terms, suggesting that either SCO did not itself know what it claimed, or wished, for tactical reasons, to hide its claims from IBM.[6] (Id.)

SCO's failure to provide specific coordinates for all of the allegedly misused material in the Disputed Items made it impossible for IBM to conduct the kind of investigation that was necessary for IBM fully to defend itself. (Ex. 18 ¶¶ 9-13, 37-48.) SCO's allegations required inquiry into, among other things, the origin of the code and concepts (which are, of course, embodied in code), the value of the code, whether SCO distributed the code under the General Public License, whether it was developed to comply with publicly known standards, whether the code was dictated by externalities, whether the code was merely an unprotectable idea, whether

---

[5] When it suited SCO's purpose, it represented to the Court that it would take 25,000 man-years to compare just one version of Linux to one version of Unix (a total of just 4,000,000 lines of code; a mere 0.2% of the haystack to which SCO pointed IBM). (Ex. 22 ¶ 14.)

[6] SCO's counsel was quoted early in the case as saying that it did not want IBM to know what SCO's claims are. (See Exhibit 31 to the Declaration of Todd M. Shaughnessy, dated May 18, 2004.) Obviously, IBM cannot debunk propositions SCO declines to disclose.

the code ever shipped without a required copyright notice and whether the code was otherwise in the public domain. (Ex. 21 ¶ 20.) The only way to answer these kinds of questions was on a line by line basis. (Id.) That could not be done without knowing the versions, files and lines of the allegedly misused material. (Id.)

IBM moved to limit the scope of SCO's claims to the items properly identified by SCO in the Final Disclosures. (See Exs. 23, 24.) The purpose of the motion, which was brought under Rules 1, 26, 30 and 37, was, quite simply, to preclude SCO from supporting or seeking to introduce evidence relating to those items that were not identified with the requisite specificity (in the Final Disclosures) without which IBM could not prepare a proper defense. (Ex. 23 at 2.) IBM did not seek any dispositive relief in its motion. (Id.) In fact, IBM did not even move against nearly 100 of SCO's items, which SCO may attempt to use to support its case following Judge Wells' decision. (Id.)

Magistrate Judge Wells heard extensive oral argument on the motion, after full briefing, and then took it under advisement for more than ten weeks. In considering the motion, Judge Wells not only considered the parties' written and oral arguments, but also she considered individually each of the Disputed Items -- all 187 of them. (Order at 2 n.3.) The Order makes plain that she considered each of the items separately, as well as in relation to those items not challenged by IBM's motion and those items challenged by IBM but as to which IBM's motion was denied. In all, Judge Wells appears to have reviewed, in context, a very large quantity of material.

In a lengthy opinion, Judge Wells granted IBM's motion in part and denied it in part, further demonstrating that she carefully considered IBM's motion and SCO's discovery responses on an item-by-item basis. (Order at 1-2.) Judge Wells ruled that SCO may not rely on

187 of its 294 items because (1) it failed to disclose its allegations as to the Disputed Items with the requisite specificity (i.e., version, file and line information), despite three orders of the Court and the requirements of Rule 26(e); (2) it acted willfully, not inadvertently, in withholding its allegations; and (3) SCO's conduct had caused and, unless remedied, would further cause significant prejudice to IBM.  (Order at 2, 7-17, 30-36.)  In entering the Order, Judge Wells drew not only on her knowledge of the three orders at issue (two of which she had authored), but three years of experience managing discovery in the case.  As we discuss in more detail below, SCO's objections lack merit and should be overruled.

### Argument

### I.   THE ORDER IS ENTITLED TO CONSIDERABLE DEFERENCE.

Despite the fact that the Order interprets three other orders of this Court (two of which Judge Wells authored) and concerns matters over which Judge Wells has had direct oversight for more than three years, SCO argues (in effect) that her judgment is entitled to no deference.  (Obj. at 13-14.)  That is wrong.  As we discuss below, (1) the Order concerns a nondispositive discovery matter and is therefore subject to review only for abuse of discretion; under that standard, the Order cannot be modified or set aside unless clearly erroneous or contrary to law; and (2) even if it were reviewed *de novo*, Judge Wells' decision is entitled to substantial deference because it interprets three other orders of this Court and concerns matters about which Judge Wells has special knowledge.

### A.   The Order Is Nondispositive and Reviewable Only for Abuse of Discretion.

In an effort to nullify the exercise of Judge Wells' discretion, SCO argues that the Order has the "identical effect" of an order granting summary judgment and is thus dispositive.  (Obj. at 13-14.)  Under Rule 72 of the Federal Rules of Civil Procedure, pursuant to which SCO

objects to the Order, a dispositive decision of a magistrate judge is reviewed by the district court

*de novo*, whereas a nondispositive decision is reviewed only for abuse of discretion. See Fed. R.

Civ. P. 72; Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1461-63 (10th Cir. 1988); King v.

G.G.C., Inc., No. 86-6009-C, 1988 WL 142413, at *1 (D. Kan. Dec. 12, 1988).

 Contrary to SCO's contention, the Order is not dispositive. It does not dismiss, enter

summary judgment, or rule on the merits of any claim or defense. Each of SCO's causes of

action remains in suit. Despite Judge Wells' admonition about discussing this case in the press,

SCO is quoted in the press criticizing Judge Wells' decision and discussing its effect. (Ex. 25.)

Of particular relevance here, counsel for SCO is quoted in Forbes Magazine – only a week after

filing its objections -- as stating that, despite the Order, all SCO's claims and damages remain

intact:

> Hatch concedes the Wells ruling represented a setback for SCO. But he
> says SCO still has a strong case.
>
>  * * *
>
> "If the judge had thrown out the case, that would be a real downer. But
> the claims are still there. The damages are still there," Hatch says.

(Ex. 12.) If, as SCO says, its claims and damages remain in the case after the Order, then it could

not possibly be considered dispositive.

 The Order merely limits SCO's ability, pursuant to Rules 26 and 37, to support certain of

its allegations of misuse and introduce certain matters into evidence. (See Order at 20.) Judge

Wells made clear that was her intent in describing the standard of her review. She states, for

example:

> "Pursuant to Rule 37(b)(2) a court may sanction a party for failing to
> comply with an order. For example, a court may enter, 'An order <u>refusing</u>
> <u>to allow the disobedient party to support or oppose designated claims or</u>

> defenses, or prohibiting that party from introducing designated matters in evidence.'
>
> \*   \*   \*
>
> 'A party that without substantial justification fails to disclose information required by Rule 26(a) [for written interrogatories] or 26(e)(1) [for supplementation of disclosure and responses] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.'"

(Order at 18-19 (emphasis added).)  Likewise, at the close of the Order, Judge Wells emphasizes that her decision is not on the merits:

> "The court notes that its decision to either strike or not strike certain alleged misappropriated items should not be viewed as a decision on the merits.  The court's decision is based solely on whether or not SCO met the requisite disclosure threshold as required by the court's orders."

(Order at 38 n.128.)  Thus, the Order itself forecloses SCO's claim that it is dispositive.

SCO suggests that the Order is dispositive because IBM styled its motion as one to limit the scope of SCO's claims and because the Order affects 187 of SCO's 294 Items.  (See Obj. at 13.)  While it is true IBM styled the motion as one to limit the scope of SCO's claims, the motion plainly sought only to limit the scope of SCO's proof; it did not seek a dispositive determination.  (Ex. 23 at 2.)  IBM brought the motion under Rules 1, 26, 30 and 37, not Rules 12 or 56.  (Id.)  Moreover, it is the substance of the relief granted, not the label placed on a motion or order, that determines whether it is dispositive.  See Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519-20 (10th Cir. 1995) (holding that "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b)."); Segal v. L.C. Hohne Contractors, Inc., 303 F. Supp. 2d 790, 794-95 (S.D.W. Va. Jan. 22, 2004) (stating "I FIND that when a party

brings any motion for sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Rule 72(a) or 72(b) applies.").

SCO cites no authority for the proposition that the fact that the Order reached 187 of SCO's 294 Items (as opposed to only a few of them) renders the Order dispositive, and we are aware of none. SCO's "items" are not causes of action, just as any piece of evidence is not a cause of action. To reiterate the public claims of SCO's counsel about Judge Wells' decision: "the claims are still there". (Ex. 12.) SCO's Items are nothing more than an assortment of the evidence that it proposed to offer to support its theory of the case, which remains the same following the Order.

Decisions like the Order are routinely considered nondispositive and reviewed for abuse of discretion. See, e.g., Von Brimer v. Whirlpool Corp., 536 F.2d 838, 844 (9th Cir. 1976) (evidence excluded by trial judge under Rule 37(b)(2)(B) is not the equivalent of a dismissal); Jesselson v. Outlet Assocs. of Williamsburg, 784 F. Supp. 1223, 1228 (E.D. Va. 1991) (holding that a magistrate's ruling precluding the use of evidence at trial was not dispositive and therefore reviewable under a clearly erroneous or contrary to law standard); McHugh v. Apache Corp., Civ. A. No. 89-A-1297, 1991 WL 16495, at *1-2 (D. Colo. Feb. 1, 1991) (holding that a magistrate's sanction of "prohibit[ing] the plaintiff from presenting evidence at trial" "was inextricably tied to the discovery process, and therefore should be treated as a non-dispositive motion" that was not "outside of the Magistrate's scope of authority", and that was subject to a "clearly erroneous or contrary to law standard of review").[7]

_____

[7] Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas, 397 F.Supp. 2d 698, 702 (W.D.N.C. 2005) ("[T]he plain language of Rule 72 is concerned only with whether a matter brings about a final determination of a party's claims or defenses; and if a matter does not 'resolve the substantive claims for relief alleged in the pleadings,' . . . [it] is a nondispositive

The cases on which SCO relies to support its contention that this Court's review is *de novo*, Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1461-63 (10th Cir. 1988), and American Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 91 (S.D.N.Y. 2002), do not support its conclusion. In both cases, the courts held that certain types of sanctions may be deemed the equivalent of involuntary dismissals under 28 U.S.C. § 636(b)(1)(A), and as such, are to be reviewed under a *de novo* standard. However, the sanctions granted in those cases were different from the sanctions granted here. In Ocelot, the district court struck the plaintiff's pleadings entirely, 847 F.2d at 1462, while the court in Mopex precluded the plaintiff from asserting a

---

order.") (citations and internal quotations omitted); Umbenhower v. Copart, Inc., No. 03-2476, 2004 WL 2660649, at *4 (D. Kan. Nov. 19, 2004) (rejecting argument that magistrate judge ruling on motion to exclude evidence in civil case is dispositive); Mannick v. Kaiser Found. Health Plan, Inc., No. C 03-5905, 2006 WL 2168877, at *26 (N.D. Cal. July 31, 2006) (magistrate judge's order limiting expert testimony as Rule 37(c) sanction reviewed as nondispositive ruling); cf. Dreyer v. Ryder Automotive Carrier Group, Inc., 367 F.Supp.2d 413, 415 (W.D.N.Y. 2005) (reviewing magistrate judge's order disqualifying expert witness under "clearly erroneous or contrary to law" standard); Hakim v. Cannon Avent Group, No. Civ. A 02-1371, 2005 WL 1793768, at * 1 (W.D. La. May 4, 2005) (reviewing magistrate judge order striking plaintiff's declaration under "clearly erroneous or contrary law" standard); The Chase Manhattan Bank v. Iridium Africa Corp., No. Civ. A 00-564, 2003 WL 22928042, at * 2 (D. Del. Nov. 25, 2003) (reviewing ruling excluding deposition testimony under "clearly erroneous or contrary to law" standard); Boucher v. Cont'l Prod. Co., Inc., 365 F. Supp. 2d 1, 1 n.1 (D. Maine 2005) (treating magistrate judge's exclusion of late arriving expert testimony from evidence as "non-dispositive action" entitled to deferential review); Sunroof de Mexico, S.A. de C.V. v. Webasto Roof Sys., Inc., No. 05-40031, 2006 WL 1042072, at *1 (E.D. Mich. April 19, 2006) (striking damage documents produced by the plaintiff after deadlines as a discovery sanction for violation of orders and reasoning that Congress's specific exclusion of motions "to suppress evidence in a criminal case" under 28 U.S.C. § 636(b)(1)(A) evidences its intent to allow such motions to be heard and ruled upon by magistrate judges in civil cases); Ann L. v. X Corp., 133 F.R.D. 433, 435 n.2 (W.D.N.Y. 1990) ("Jurisdiction of magistrate over suppression motions in civil cases under 28 U.S.C. § 636(b)(1)(A) is confirmed by that subparagraph's enumeration of criminal case suppression motions as excluded from subparagraph (b)(1)(A) jurisdiction. The clear inference is that suppression motions in civil cases under Fed. R. Civ. P. 26(c) may be determined by a magistrate, subject to a 'clearly erroneous or contrary to law' standard of review.").

particular patent claim, 215 F.R.D. at 91.[8]  Here, Judge Wells merely precluded the use of certain evidence.  As discussed above, sanctions entered by a magistrate judge precluding evidence are not treated as dispositive under 28 U.S.C. § 636(b)(1)(A), and therefore are not subject to *de novo* review.  See, e.g. Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc., Civ. Action No. 95 C 1490, 1996 WL 780492, at *8 (N.D. Ill. Dec. 11, 1996; McHugh, 1991 WL 16495, at *1-2; Jesselson, 784 F. Supp. at 1228.[9]

Since it is nondispositive, the Order may be set aside by this Court only to the extent it is "clearly erroneous or contrary to law".  Fed. R. Civ. P. 72(a); see also King, 1988 WL 142413, at *1.  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed".  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Ocelot Oil, 847 F.2d at 1464.  To be clearly erroneous, "a decision must strike [the court] as more than just maybe or probably wrong; it must ... strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F. 2d 228, 233

---

[8] A "patent claim" like the patent claim at issue in the Mopex case is an independent and distinct legal description of intellectual property, the dismissal of which can be dispositive and have preclusive effect as to that particular patent claim.  See Mopex, 215 F.R.D. at 92; see also Pall Corp. v. Micron Separations, 66 F.3d 1211, 1220 (Fed. Cir. 1995); Kearns v. GMC, 94 F.3d 1553, 1555-1556 (Fed. Cir. 1996).  By contrast, the Order merely limits certain items of evidence; it disposes of no legal claim in SCO's lawsuit.

[9] Notably, the decision of a magistrate judge may be subject to review for abuse of discretion despite the fact that it may have a very significant effect on a party, such as where it denies a party's motion to amend pleadings to add a claim.  See Phalp v. City of Overland Park No. 00-2354, 2002 WL 1067460, at *1 (D. Kan. May 1, 2002) (noting that a "magistrate's ruling on a motion for leave to file an amended complaint or a supplemental complaint is a nondispositive ruling subject to review under this deferential standard."); Benedict v. Amaducci, No. 92 Civ. 5239, 1995 WL 413206, at * 11 (S.D.N.Y. July 12, 1995) (applying a clearly erroneous standard when reviewing a magistrate judge's denial of a party's motion to amend his pleadings to add new claim); Denmon v. Runyon, 151 F.R.D. 404, 405 (D. Kan. 1993) (same).

(7th Cir. 1988), <u>cert. denied</u>, 493 U.S. 847, 110 S. Ct. 141, 107 L. Ed. 2d 100 (1989). "A litigant

who seeks to overturn a magistrate's discovery order [thus] bears a heavy burden." <u>Wallin v.</u>

<u>Alfaro</u>, No. Civ. A 03 CV 00281, 2005 WL 2125224, at *5 (D. Colo. Sept. 2, 2005) (internal

quotation omitted). For all the reasons set out below, SCO cannot meet this burden.

**B.**    **Even if Reviewed *De Novo*, the Order Would Be Entitled to Considerable Deference.**

Even if (contrary to fact) the Order were dispositive and subject to *de novo* review, Judge

Wells' judgment would nevertheless be entitled to substantial deference.

The Order depends in significant part on Judge Wells' construction of three prior orders

of this Court (two of which she wrote). (<u>See</u> Exs. 5, 6, 8.) For this reason alone, considerable

deference should be given to Judge Wells' decision. It is well-established that deference should

be given to a court's construction of its own orders. See <u>Lancaster v. Indep. Sch. Dist. No. 5</u>, 149

F.3d 1228, 1237 (10th Cir. 1998) (rejecting plaintiff's argument that "the November 18 minute

order issued by the magistrate limited any potential attorney's fees award" because "[w]e defer to

the magistrate's interpretation of his own words" that "'it was not the Court's intention to impose

such a limitation.'"); <u>Tyler v. City of Manhattan</u>, 118 F.3d 1400, 1403 (10th Cir. 1997)

("Because the district court is in the best position to interpret its pretrial order, our standard of

review on appeal is abuse of discretion.").[10]  Such deference is appropriate even where the

standard of review is *de novo*.  <u>See, e.g.</u>, <u>Liberte Capital Group, LLC v. Capwill</u>, 99 Fed. Appx.

---

[10] <u>See also</u> <u>In re Bono Dev., Inc.</u>, 8 F.3d 720, 721-22 (10th Cir. 1993) (holding that the "bankruptcy court surely knows more about the meaning of its own order than we do, and its interpretation of its order . . . is entitled to substantial deference"); <u>G.J.B. & Assocs., Inc. v. Singleton</u>, 913 F.2d 824 (10th Cir. 1990) ("The district court surely knows more about the meaning of its own [pretrial] orders [concerning the advanced disclosure of trial exhibits] than we do, and we are not prepared to second guess its construction."); <u>Home Port Rentals, Inc. v. Ruben</u>, 957 F.2d 126, 131 (4th Cir. 1992) (holding that "[i]t is peculiarly within the province of the district court . . . to determine the meaning of its own order").

627, 633 (6th Cir. 2004) (holding that "although a de novo standard of review applies, it must be balanced against affording deference to the district court.").

Deference to a court's construction of its own orders is all the more appropriate where, as here, the party challenging the court's construction could have appealed from or sought clarification of the orders but did not. Cf. Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1150 (11th Cir. 2006) (holding that if sanctioned party "was unclear about the scope of the discovery request or the August 27, 2004, order, [it] was obliged to request clarification from the court; it was not free to ignore the Order [of the district court] and to impose [its] own interpretation of the order." (internal quotation marks omitted)); Parker v. Cent. Kansas Med. Ctr., 178 F. Supp. 2d 1205, 1212 (D. Kan. 2001) (holding that if plaintiff had objections to the district court's ruling, "Plaintiff should have filed [a] motion to reconsider"); Kaul v. Stephan, 828 F. Supp. 1504, 1510 (D. Kan. 1993) (holding that a party who fails to move for reconsideration of district court ruling is precluded from rearguing issues in that ruling).

Moreover, Judge Wells' decision is entitled to deference because it is based in significant part on her understanding of discovery proceedings she has supervised for more than three years. The issues raised in the Order are particularly within Judge Wells' purview. No judicial officer could know better than Judge Wells what her orders mean; whether SCO acted willfully; or whether SCO's conduct was prejudicial to IBM. See Anderson v. Corr. Med. Servs., Inc., No. 04-3410, 2006 WL 1644709, at *2 (D.N.J. June 6, 2006) (holding that "[w]here a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion. . . . The deferential standard of review is particularly appropriate in the case where the magistrate judge managed the case from the outset, and thus has a thorough knowledge of the proceedings."); Evans v. Atwood, No. CIV.A. 96-2746, 1999 WL 1032811,

22

at *1 (D.D.C. Sept. 29, 1999) (holding that "[o]n review by this court, a United States Magistrate Judge's decisions are entitled to great deference, particularly on discovery issues. That deference is especially appropriate where, as here, the magistrate judge has managed the discovery component of the case from the outset and has developed a thorough knowledge of the facts, law and procedural history of the case."); Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998) (same). As discussed in detail in Part II, below, Judge Wells' Order expressly reflects her unique familiarity with more than three years of discovery and motion practice between the parties, which form the foundation of the Order.

## II.     JUDGE WELLS PROPERLY FOUND THAT SCO FAILED TO COMPLY WITH THE COURT'S ORDERS AND RULE 26(e).

SCO first objects to the Order on the grounds that Judge Wells erred in finding that SCO failed to comply with the Court's previous orders requiring that SCO specify its allegations. (Obj. at 15-23.) The objection fails because: (1) the Court clearly and repeatedly ordered SCO to disclose the allegedly misused material with specificity, and SCO waived the right to challenge the Court's orders; (2) SCO failed repeatedly and in numerous respects to comply with the Court's directions; and (3) SCO's scattered criticisms of Judge Wells' reasoning are unavailing.

### A.     The Court Repeatedly Ordered SCO to Disclose the Allegedly Misused Material with Specificity.

As stated above and illustrated in Addendum C, the Court entered three separate orders requiring SCO to specify its allegations of misuse. Each of the orders, as well as Rule 26(e), required SCO to identify the operating system elements that it alleges IBM misused (whether code, method or concept) by version, file and line of code. (See Exs. 5, 6, 8.) The Court's three orders and Rule 26(e), upon which the Order also relies, each represent an independent basis for

Judge Wells' ruling. Thus, SCO cannot prevail on its objection unless it establishes that Judge Wells misconstrued all of the orders and Rule 26(e), which she clearly did not do.

### 1. The Court's Orders and Rule 26(e) Required that SCO Specify Its Claims by Version, File and Line of Code.

Three separate orders of the Court and Rule 26(e) plainly required SCO to provide version, file and line information for each of the Disputed Items. (See Exs. 5, 6, 8; see also Fed. R. Civ. P. 26(e).) As we explain below, Judge Wells properly construed the orders and Rule 26(e) to require SCO to identify the operating system elements that it alleged IBM misused (whether code, method or concept) by version, file and line of code.

#### a. The December 12, 2003 Order.

On December 12, 2003, the Court ordered SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM". (Ex. 5 ¶ 4.) In addition, the Court ordered SCO "To respond fully and in detail to Interrogatory Nos. 1-9 as stated in IBM's First Set of Interrogatories. . . . [and] 2. To respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories. . . ." (Id., ¶¶ 2-3.) As illustrated in Addendum C, IBM's requests -- which the Court expressly incorporated into its order -- expressly required SCO to provide version, file and line information as to each and every item of allegedly misused material. By requiring SCO "to respond fully and in detail" to IBM's interrogatories, "as stated in [IBM's Interrogatories]", the Court required SCO to provide version, file and line information as to each operating system element implicated by each of the Disputed Items. (James Ex. 3 at 2-4 (emphasis added); James Ex. 4 at 2 (emphasis added).) Thus, the Court required SCO to provide at least nine separate coordinates for each of the Disputed Items (i.e., version, file and line information for System V, AIX/Dynix, and Linux), because this is precisely what is "stated in" IBM's interrogatories.

24

In support of its argument that the December 2003 Order did not require it to identify all allegedly misused material by version, file and line of code, SCO purports to deconstruct the language of four of the IBM interrogatories that were incorporated into the Order (IBM Interrogatory Nos. 1, 4, 12 and 13). (See Obj. at 18-23.) Specifically, SCO claims that the use of the words "where appropriate" in Interrogatory No. 1 indicates that IBM was only asking SCO (and it was only required) to provide version, file and line information to identify the alleged misuse of source code, not the alleged misuse of methods and concepts. (Obj. at 19-20.) Similarly, SCO claims that the use of the term "location" in Interrogatory No. 4 is not "synonymous with 'version, file and line of code'" and does not indicate that IBM was seeking, and the Court required, that information. (Id. at 20-21.)

SCO's arguments ignore the plain language of IBM's requests and the Court's orders and must therefore be rejected for at least two independent reasons. First, SCO completely disregards the definition of the term "identify", which is at the heart of both IBM's interrogatories and the Court orders that incorporate them. For all relevant purposes, the term "identify" is defined to require that SCO provide no less specificity than version, file and line information:

> "The term 'identify' shall mean: . . . in the case of alleged . . . confidential or proprietary information, whether computer code, methods or otherwise, <u>to give a complete and detailed description of the trade secrets or confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information and the location (by module name, file name, sequence number or otherwise) of those lines of code within any larger software product or property.</u>"

(James Ex. 3 at 18-19 (emphasis added); James Ex. 4 at 3 (emphasis added).) The definition makes perfectly clear that version, file and line information was required for allegedly misused

material, including allegedly misused methods. For this reason alone, SCO's arguments about the language of IBM's interrogatories, and thus the Court's Order, fail.

Second, SCO misconstrues the language of the interrogatories incorporated into the Court's Order, any one of which is sufficient to justify the Order. To begin, SCO makes no mention of two of the six IBM interrogatories at issue, Interrogatory Nos. 3 and 6. Read in connection with the definition of "identify" (as they must be), these interrogatories obligated SCO to provide version, file and line information. Interrogatory No. 6 asked SCO to "identify" "all products in which, in whole or in part, the code or method is included or on which, in whole or in part, the code or method is based." (James Ex. 3 at 4 (emphasis added).) As stated, the term "identify" is defined to require that SCO give a "complete and detailed description of trade secrets or [the] confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information and the location (by module name, file name, sequence number or otherwise) of those lines of code within any larger software product or property." (James Ex. 3 at 18-19 (emphasis added).) Version, file and line information was required for "confidential or proprietary information, whether computer code, methods or otherwise". (James Ex. 3 at 18 (emphasis added).) Similarly, Interrogatory No. 3 asked SCO to "identify" "all places or locations where the alleged trade secret or confidential or proprietary information may be found or accessed". (James Ex. 3 at 2-3.) With respect to "confidential or proprietary information", the term "location" was defined to include the "location (by module name, file name, sequence number or otherwise) of those lines of code within any larger software product or property." (James Ex. 3 at 18-19 (emphasis added).) Hence, the two requests SCO omitted even to mention

26

in its objection could not have been more clear that version, file and line information was required.

SCO mentions Interrogatory Nos. 12 and 13 in its objection but says nothing about their terms. (Obj. at 20-21.) Even cursory review of the language of Interrogatory Nos. 12 and 13 reveals why. They could not be more clear that SCO was required to provide version, file <u>and</u> line information. The interrogatories provide as follows:

- "[I]dentify, with specificity (by file and line of code), (a) <u>all source code and other material in Linux</u> (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights" (IBM Interrog. No. 12);

- "<u>For each line of code and other material</u> identified in response to Interrogatory No. 12, [to] please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, <u>describe in detail how IBM is alleged to have infringed plaintiff's rights</u> . . . ." (IBM Interrog. No. 13).

(James Ex. 4 at 2 (emphasis added).) If this language did not require version, file and line information, it is not clear what language would.

Finally, SCO misreads Interrogatory Nos. 1 and 4. It is true that Interrogatory No. 1 asks SCO to identify allegedly misused material "by product, file and line of code, <u>where appropriate</u>". (James Ex. 3 at 2 (emphasis added).) But that does not mean, as SCO contends, that it was only required to provide version, file and line information where it felt like it or even only as to allegedly misused source code. The "where appropriate" language merely allows for the possibility that some of the allegedly misused material might not relate to an operating system. In any event, when the definition of "identify", the context in which the Order was entered, and IBM's repeated statements to SCO about what the interrogatory required are taken into account, it is beyond doubt that Interrogatory No. 1 required version, file and line information.

27

The same is true regarding SCO's argument about Interrogatory No. 4 and its use of the term "location". Here again, SCO's construction requires a rewrite of both the interrogatory and the December 2003 Order. In addition to the considerations noted above, SCO ignores the fact that both Interrogatory No. 4, and thus the December 2003 Order, clarify the term "location". The term "location" means the "module name, file name, sequence number or otherwise [] of those lines of code within any larger software product or property." (James Ex. 3 at 18-19 (emphasis added).) As SCO interprets "location", it is meaningless, leaving SCO to do as it wishes. Unless the language of the December 2003 Order is meaningless, it means what Judge Wells said it means.

If any one of IBM's interrogatories and any one of the corresponding provisions of the December 2003 Order required SCO to provide version, file and line information, then SCO's objection must be overruled and Judge Wells' decision must be affirmed. No less than six of its provisions separately required SCO to identify the allegedly misused material by version, file and line of code. Therefore, SCO's argument is unavailing for multiple, independent reasons.

### b.    The March 3, 2004 Order.

Even if there were some doubt or ambiguity about whether Judge Wells' December 2003 order required version, file, and line information, Judge Wells made her intentions absolutely clear in an order dated March 3, 2004, which explicitly states that SCO is "to provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix", "to provide and identify all specific lines of code from Unix V for which IBM's contributions from AIX or Dynix are alleged to be derived", and "to provide and identify with specificity all lines of code in Linux that it claims rights to". (Ex. 6 ¶ I.1 - I.4 (emphasis added).) In addition, the Judge Wells ordered SCO "[t]o fully comply . . . with the Court's previous order

28

dated December 12, 2003", including providing IBM with responses to its Interrogatory Nos. 1, 12 and 13 requiring identification of the allegedly infringing and allegedly infringed materials by file and lines of code. (Ex. 6 ¶ 1; Ex. 5 ¶ 4; James Ex. 3 at 2-4; James Ex. 4 at 2.) Here again, the Court required SCO to provide version, file and line information as to each operating system element implicated by each of the Disputed Items (in all, at least nine coordinates for each of the Disputed Items). Irrespective of the December 2003 Order, the March 2004 Order justifies the decision under review.

To support its argument that Judge Wells misconstrued her own March 2004 Order, SCO asserts that it would be unreasonable to apply the order (as well as the December 12, 2003 Order) to allegedly misused methods and concepts. (Obj. at 21.) According to SCO, requiring version, file and line coordinates as to methods and concepts would essentially require SCO "to identify, for IBM, code that was solely in the mind of the IBM developer at the time he or she made the disclosure". (Obj. at 21-22.) This is simply untrue. With respect to both source code and methods and concepts, IBM requested, and the Court ordered, SCO to provide its allegations. They are, by definition, the product of SCO's mind, not IBM's. The Order simply prevented SCO from sandbagging IBM with undisclosed allegations after the close of fact and expert discovery, when it would be unable fairly to defend against them.

As explained in the declarations of Professor Davis, which were offered in support of IBM's motion, there is no reason SCO could not have provided specific coordinates for the allegedly misused material. (Ex. 18 ¶¶ 25, 51, 56.) The methods and concepts employed in an operating system (or any computer program) *are in the source code*. (Id. ¶ 29.) It could not be otherwise: The source code of a program specifies all of its possible behavior. (Id.) "If that behavior truly embodies a method, that method must be expressed in specific lines of the source

29

code; there is just no other way to do it." (Id.) Despite IBM's insistence that SCO provide

version, file and line information as to methods and concepts (as well as source code), and

despite the Court's orders requiring it, and despite SCO's insistence in its objections that

methods and concepts have been part of their case from the beginning, SCO never once asked the

Court to relieve it of the obligation to specify allegedly misused methods by version, file and line

of code.

      SCO also argues that IBM's Interrogatory No. 23 -- which was served after SCO

submitted its final disclosures, and nearly three years after IBM served its First Set of

Interrogatories -- undercuts Judge Wells' interpretation of her orders. (Obj. at 22-23.) As

expressly stated in the email on which SCO relies (James Ex. 6), IBM's Interrogatory No. 23

included language that could be read (unintentionally) to request information that IBM had

clearly requested and the Court had already ordered SCO to provide. We recognized the

ambiguity and withdrew the request before SCO ever responded. (See James Ex. 6.) We also

made perfectly clear to SCO that Interrogatory No. 23 had nothing to do with IBM's motion to

enforce the Court's orders. (Id.) For SCO to suggest that a withdrawn interrogatory in any way

affected the meaning of the Court's three preexisting orders is untenable. Moreover, SCO never

raised the issue with Judge Wells and it is not properly before this Court. Thus, even before

considering this Court's July 2005 Order, discussed below, Judge Wells' decision must be

sustained for numerous, independent reasons.

### c.    The July 1, 2005 Order.

      In an order dated July 1, 2005, this Court adopted (over SCO's objection) an IBM

proposal to set interim and final deadlines for the disclosure of all allegedly misused material.

(See Ex. 8.) The Court set October 28, 2005 as the "Interim Deadline", and December 22, 2005

as the "Final Deadline" for the parties to "Disclose with Specificity All Allegedly Misused Material Identified to Date" and to update their interrogatory responses accordingly. (Ex. 8 ¶ III; Ex. 9 at 56:8-56:15, 58:11-59:1.)  The July 2005 Order reiterated the obligations imposed by the December 2003 and March 2004 Orders and established a final deadline for SCO to comply. (Ex. 8 ¶ III.)

SCO seeks to explain away the Court's July 2005 Order by arguing that it did not expressly mention the terms version, file and line, though IBM's proposed order included a footnote suggesting them. (Obj. at 17.)  While it is true that the July 2005 Order does not use the magic words "version, file and line", there is no question, as Judge Wells found, that the order required them. (Order at 27.)  IBM requested that the language used be included in the July 2005 Order (over SCO's objection) following SCO's repeated failure to disclose version, file and line information. (Ex. 19 at 2-5.)  The very purpose of the request was to permit IBM to conduct analyses it could not conduct without version, file and line information. (Id. at 5 & n.4.)  The Court entered the July 2005 Order against the backdrop of the December 2003 and March 2004 Orders, which expressly and unequivocally required version, file and line information (as discussed above).  And the Order required SCO to update its responses to IBM's interrogatories which (on their face and as construed by Judge Wells) called for version, file and line information. (Ex. 8 ¶ III.)  It would make little sense for this Court to enter an order that required less specificity at the end of the case than Judge Wells had required at the beginning, and nothing on the face of the order suggests this Court intended to modify Judge Wells' prior rulings— something SCO did not even ask the Court to do.  Hence, SCO's effort to dismiss the July 2005 Order as imposing less specificity than the orders that come before it (for no reason and without a request by the parties) is unconvincing.

31

### d. Rule 26(e).

Finally, independent of the Court's orders, Judge Wells found that SCO violated Rule 26(e). (Order at 31.) Rule 26(e) requires "[a] party . . . to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). SCO does not (and could not) contend that it is not bound by Rule 26(e).

SCO nevertheless makes no mention of Rule 26(e). It did not even specifically object to Judge Wells' ruling regarding Rule 26(e), as it was required to do to prevail on its objection. See Lee v. Wakins, No. 03-MK-72, 2005 WL 2991730, at *11 (D. Colo. Nov. 07, 2005) (holding that because plaintiff's "[o]bjections note [only] his disagreement with these findings, but [] do[] not present any . . . focused argument against them" plaintiff has "waived further consideration of the validity of those findings]"); Travelers Ins. Co. v. Monpere, No. 93-CV-0127E(F), 1995 WL 591141, at *3 (W.D.N.Y. Sept. 8, 1995) (denying objections to magistrate's order where "this Court concludes that VIM and NYCPDC have failed to set out their objections with the requisite specificity").

In any event, and wholly apart from the orders discussed above, it is undisputed and indisputable that SCO has never updated its responses to IBM's discovery requests to provide version, file and line information for the Disputed Items. That failing alone is sufficient to require affirmance of Judge Wells' Order.

*     *     *

In summary, no less than three separate orders and Rule 26(e) required SCO to provide version, file and line information as to the Disputed Items. In fact, each of the orders, including the two as to which SCO long ago waived any objection, contain multiple provisions to the same effect. Numerous provisions of three separate orders required SCO to provide the version, file and line information that it failed to provide (as we discuss below).

### 2. SCO Waived the Right To Complain About the Requirement That It Specify Its Claims by Version, File and Line of Code.

Moreover, SCO's objections fails for another reason: it is untimely and has been waived. The first of the Court's orders requiring SCO to identify the allegedly misused material by version, file and line of code was entered nearly three years ago, on December 12, 2003. (See Ex. 5.) The second was entered more than two years ago, on March 3, 2004. (See Ex. 6.) These orders have governed these proceedings since their entry. SCO did not timely object to the orders at the time they were entered. Nor did it seek clarification or reconsideration of them, despite the fact that Judge Wells expressly advised the parties that any uncertainty about the Court's orders should be raised promptly with the Court and that IBM consistently has taken the same position as to their meaning.

By its objection, SCO seeks to end run orders that were conclusively decided against it more than two years ago and that are no longer subject to review. That it cannot do. An objection to the order of a magistrate judge is waived unless timely asserted. See Fiarris v. Van Hoesen, No. CIV-05-0250, 2006 WL 149027, at *1 (W.D. Okla. Jan. 18, 2006) (holding that because plaintiff "failed to object to the Report and Recommendation" of the magistrate within 10 days of the order, he "waived his right to appellate review [by the district court] of the factual and legal issues it addressed"); Campbell v. Meredith Corp., No. 00-2275, 2003 WL 1119552,

33

at *1 (D. Kan. Mar. 7, 2003) (denying plaintiff's motion to reargue an "issue disposed of by the

Magistrate Judge's August 14, 2002 and September 4, 2002 Orders" because "Plaintiff had

10 days after being served with the orders to object" and "Plaintiff filed the instant motion on

January 30, 2003"); Hilterman v. Furlong, 966 F. Supp. 1021, 1023 (D. Colo. 1997) (holding that

"[b]ecause no timely objection was filed to the [magistrate's] Recommendation . . . I find that

[plaintiff] has waived his right to appeal").

**B.      SCO Failed to Comply With the Court's Orders.**

While SCO professes to have complied with the Court's orders, it is undisputed (and

indisputable) that SCO did not provide the required version, file and line information.  Thus,

SCO violated each of the numerous provisions of the three orders and Rule 26(e) described

above, and SCO's objection fails.

**1.      SCO Violated Three Orders and Rule 26(e) in Numerous Ways.**

The Disputed Items each implicate three sets of allegedly misused material (System V,

AIX/Dynix and Linux), which, as stated, SCO was required to identify by producing version, file

and line coordinates for each set of material for each Item.  As is described in Addendum B, SCO

did not provide a complete set of coordinates (version, file and line information) for any of the

Disputed Items and thus refused to tell IBM what its case was about.

SCO failed to provide any System V, AIX or Dynix line information for any of the 198

items, and it provided specific lines of Linux for only three of the Disputed Items (for which it

provided no version information).  In short, SCO came nowhere close to providing the

information that IBM needed to defend itself and that the Court ordered SCO to provide.[11]

---

[11] To create the false impression that is had provided information that it has not provided, SCO
told Judge Wells that it had provided "color-coded illustrations", "line-by-line source code
comparisons" and "over 45,000 pages of supporting materials".  (Ex. 17 at 1, 9.)  What SCO

Put differently, the Court's Orders and Rule 26(e) required SCO to provide nine coordinates for each of the Disputed Items: (1) System V version(s); (2) System V file(s); (3) System V line(s); (4) AIX/Dynix version(s); (5) AIX/Dynix file(s); (6) AIX Dynix line(s); and (7) Linux version(s); (8) Linux file(s); and (9) Linux line(s). Failure to provide any one of these nine elements -- which would have told IBM what SCO's case was about -- violated the Court's Orders and Rule 26(e). For some of the Disputed Items SCO provided nothing. For most of them, it provided only one of the nine elements (files) -- but not the most specific one (lines). Thus, with respect to each of the Disputed Items, SCO violated the Court's orders and Rule 26(e) in multiple respects.

Notably, SCO admits, as it must, that it did not provide the specificity required by the Court's orders. In its opening brief, SCO states: "What SCO did not do, and did not believe it had to do, was provide a source code identifier for a method and concept where source code (either written as a patch for Linux or an example from a Dynix or other IBM system) was not provided as part of the IBM disclosure to Linux." (Obj. at 16.) In its opposition to IBM's motion before Judge Wells, SCO admitted that: "With respect to methods and concepts, [SCO's Final Disclosures are] not of specific lines of code, and thus the identification of the item[s] [are] made by describing the method or concept and specifically identifying the communication through which the disclosure is made." (Ex. 17 at 7.) In the April 14, 2006 hearing before Judge Wells, SCO admitted: "Do we have today, version, file and line, which Mr. Marriott expects, on methods and concept, where IBM did not used [sic] those in its disclosure, the answer is no."

---

failed to mention is that 33,000 of those pages concerned Item 294, which SCO abandoned in its opposition brief before Judge Wells. Moreover, while the Final Disclosures include color-coded illustrations and line-by-line source comparisons, they do not do so with regard to any of the Disputed Items, which were utterly lacking in the requisite particularity. In other words, SCO referred the Court to Items that were not challenged to try and defend those that were.

35

(James Ex. 14 at 76:8-76:11.) There is therefore no doubt about SCO's failure to comply with the Court's orders and Rule 26(e).

### 2. Each of SCO's Excuses Fail.

Since SCO cannot show that it complied with the Court's orders, it seeks instead to excuse its failure to comply. But none of the excuses bears scrutiny.

First, SCO argues that it provided a large volume of information to IBM and that that information was sufficient to meet IBM's needs. (Obj. at 16-17.) However, the quantity of information SCO disclosed not only revealed little about its specific claims but it also buried SCO's allegations in an enormous haystack. That is especially so since, for the most part, SCO simply referred IBM to IBM's own documents, which it had before SCO filed suit. Moreover, the fact that SCO produced information that it contends is pertinent does not excuse its failure to provide the information that IBM requested and the Court ordered SCO to provide. A party may not decide for itself its obligations under a court order. See Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1150 (11th Cir. 2006) (affirming Rule 37 sanctions for failure to abide by discovery and holding that if sanctioned party "was unclear about the scope of the discovery request or the August 27, 2004, order, [it] was obliged to request clarification from the court; it was not free to ignore the Order [of the district court] and to impose [its] own interpretation of the order." (internal quotation marks omitted)); Perry v. Vill. of Arlington Heights, No. 94 C 0058, 1996 WL 272456, at *3 (N.D. Ill. May 20, 1996) (granting Rule 37 dismissal based on plaintiff's failure to comply with discovery upon finding that plaintiff took "it upon himself to be sole judge of what discovery [wa]s relevant to this case and to make his own interpretations of the law and of the defendant's legitimate requests for discovery, often in a hypertechnical fashion").

36

Second, SCO argues that the Court should have given it some latitude (what SCO calls "reasonable berth") in complying with the Court's orders, because the July 2005 Order established a non-standard discovery process with which SCO had no experience. (Obj. at 18.) The only reason the July 2005 Order adopted interim and final deadlines for the disclosure of allegedly misused material is that SCO failed to comply with the December 2003 and the March 2004 Orders. In any event, there is nothing unusual about a court imposing disclosure deadlines. Moreover, the requirements of the July 2005 Order are clear (based on its plain language and the context in which it was entered, as discussed above), IBM repeatedly brought SCO's obligations to its attention, and it took no steps to seek clarification from the Court, despite Judge Wells' prior direction that SCO should do so in such circumstances. Finally, Judge Wells gave SCO considerable latitude in responding to the Court's orders and Rule 26(e), as evidenced by the fact that she denied IBM's motion in part (despite the fact that the items as to which IBM's motion was denied were not in compliance with the Court's orders). In view of the Court's orders and Rule 26(e), no amount of latitude could justify SCO's shortcomings regarding the Disputed Items.

Third, SCO argues that it could not provide any more information that it did, and Judge Wells imposed on it the impossible task of producing information known only to IBM. (Obj. at 18, 21.) This argument is pure sophistry. As stated above, IBM's requests and the Court's orders required SCO to provide information uniquely within SCO's knowledge: its allegations. SCO required nothing of IBM to identify the material it contends IBM misused. And even if it had, IBM produced to SCO billions of lines of code, more than a million pages of documents, and dozens of witnesses for deposition, providing SCO with ample information to decide what it alleges. As Professor Davis describes in his declarations, there is no reason SCO could not have

37

provided version, file and line information for the Disputed Items. (Ex. 18 ¶¶ 25, 51, 56.) If SCO could not specifically identify the Disputed Items so as to permit IBM to defend against them, it could hardly expect Judge Wells or any other court to permit SCO to sandbag IBM at summary judgment or trial.

Finally, SCO contends that it gave IBM enough information to identify the alleged contributions for itself. According to SCO, "[s]ince the disclosed items were methods and concepts being disclosed by an IBM developer and came from an operating system that IBM (or Sequent) developers wrote or modified . . . it was reasonable to expect IBM to obtain such information . . . from its own developers who made the disclosure." (Obj. at 11.) But SCO made exactly this same argument in 2003 at the outset of the case to justify its failure to comply with IBM's discovery requests at that time (see Ex. 13 at 5), and the Court expressly (and properly) rejected it (Ex. 5 ¶ 4). SCO did not appeal the Court's ruling in 2003 and thus waived any challenge to it.[12] More importantly, no amount of information -- no matter the volume -- is an adequate substitute for a very precise identification of SCO's allegations. The days of trial by ambush are over.

### C. SCO's Criticism of Judge Wells' Reasoning Is Misplaced.

SCO further complains about Judge Wells' reference to SCO's own discovery requests, the deposition testimony of SCO's Chief Technology Officer and the deposit requirement for copyright registration. (Obj. at 23-30.) These complaints could not possibly constitute reversible error but they are in any case without merit.

---

[12] See Parker v. Cent. Kansas Med. Ctr., 178 F. Supp. 2d 1205, 1212 (D. Kan. 2001) (refusing to reconsider ruling striking expert testimony because "Plaintiff should have filed [a] motion to reconsider within ten days after the court entered its order"); Kaul v. Stephan, 828 F. Supp. 1504, 1511 (D. Kan. 1993) (holding that a party's failure to move for reconsideration of district court ruling precluded reargument on issues decided in that ruling).

First, SCO faults Judge Wells for taking account of the fact that SCO's own discovery requests to IBM defined the term "identify" to require specificity similar to that requested by IBM and required by the Court. (Obj. at 25-28.) SCO embarks on a long detour into a few of its specific discovery requests and a few specific IBM responses in an apparent effort to show that SCO did not really mean what it said in defining the term "identify" and that Judge Wells was wrong to take SCO at its word. (Id.) Putting aside the irony of SCO's complaint, it misses the point, which is not that SCO propounded precisely the same requests as IBM but rather that the detail requested by IBM and ordered by the Court is feasible, commonplace and reasonable. Moreover, it is simply not true, as SCO contends, that its definition of the term "identify" was never given application in its discovery demands. SCO expressly incorporated the definition into every one of its interrogatories and requests for documents.[13] Finally, contrary to SCO's suggestion, IBM provided SCO with exactly the kind of specificity that it requested of SCO -- without any order of the Court. For example, in support of IBM's motion for summary judgment on its copyright claim against SCO, IBM provided line for line match ups for more than 780,000 lines of code. Examples of the detailed disclosures made by IBM (now more than two years ago) are attached as Exhibits 5.2 through 20.2 of the August 16, 2004 Declaration of Amy Sorenson in Support of IBM's Motion for Partial Summary Judgment on Its Counterclaim for Copyright Infringement (Eighth Counterclaim).

---

[13] For example, SCO's Third Set of Interrogatories requested that IBM "[i]dentify each and every product, process, method, composition and/or use that is alleged to infringe the Patents" and that IBM "[i]dentify each and every product, process, method, composition and/or use . . . that is covered by the Patents." (James Ex. 12, ¶¶ 10-11.) IBM provided considerable specificity in response SCO's patent interrogatories and had IBM not withdrawn its patent claims, it would have provided additional specifics on the schedule set by the Court. SCO never moved to compel IBM to respond to these interrogatories.

Second, SCO faults Judge Wells for referring to the testimony of Sandeep Gupta, SCO's Chief Technology Officer. Mr. Gupta testified that in his opinion one must look at source code "to be able to accurately describe a method or concept in UNIX". (Ex. 18 ¶ 33.) According to SCO, Mr. Gupta's testimony "does not support IBM's position that coordinates in source code is [sic] always available and always needed". (Obj. at 29.) But that is neither IBM's position nor the reason for which Judge Wells referred to Mr. Gupta's testimony. While source code coordinates might not always be available or needed, they were both available and needed here, as explained in the Declaration of Professor Davis. (See Ex. 18 ¶¶ 32-48.) Judge Wells pointed to Mr. Gupta's testimony to underscore "the importance of having version, file, and line information in respect to methods and concepts". (Order at 28.) And Mr. Gupta clearly testified that in general one must look at the source code to be able to accurately describe a method or concept in UNIX.[14] (Ex. 18 ¶ 33.)

Third, SCO faults Judge Wells' analogy to "the deposit requirements for copyright registration". (Obj. at 29-30.) SCO says these requirements are irrelevant because the Disputed Items "are parts of SCO's claim for breach of contract -- not for copyright infringement".[15] (Obj. at 29-30.) Judge Wells' analogy does not, however, depend on the nature of SCO's claim. The point, as we understood it, was simply that there is value in the production and identification of specific source code, which the copyright registration requirements illustrate. In any event, the

---

[14] In criticizing Judge Wells' reference to Mr. Gupta's testimony, SCO misstates it. SCO says Mr. Gupta "testified that one would need to look at the source code of a particular method to identify it only 'in some cases'." (Obj. at 29.) A careful reading of Mr. Gupta's testimony makes clear that he testified that in his opinion "in general. . . you have to look at the source code to be able to accurately describe a method or concept". (Ex. 18 ¶ 33.)

[15] SCO also complains that "[t]his argument was never advanced by IBM and SCO never was given an opportunity to respond." (Obj. at 29.) But courts are, of course, not limited to the thinking initiated by the parties in resolving the questions presented to them.

law of copyright matters to all of the Disputed Items.  Most, if not all, of the Disputed Items

concern code that is the subject of copyrights owned by someone other than SCO, which

ownership undermines even SCO's contract claims.  Furthermore, contrary to its contention,

SCO expressly included some of the Disputed Items in its copyright claim.  (See Item Nos. 38,

112, 149, 165-75, 177, 180, 204.)

## III.    JUDGE WELLS PROPERLY FOUND THAT SCO ACTED WILLFULLY.

SCO also argues that Judge Wells erred in finding that SCO acted willfully in violating

the Court's orders.  (Obj. at 30-39.)  More specifically, SCO contends that it could not properly

have been found to act willfully because (1) the Court's orders were unclear and ambiguous (id.

at 30-32); (2) SCO believed that it was in compliance with the July 2005 Order (id. at 37-39);

and (3) SCO was unable to provide the information requested by the Court's orders (id. at 32-

37).

A party acts willfully in violating a court order when it acts intentionally, as opposed to

inadvertently or by mistake.  Neither bad faith nor specific intent to violate the court order is

required.  See Schroeder v. Southwest Airlines, 129 Fed. Appx. 481, 484 (10th Cir. 2005)

(holding that "[w]illful failure means 'any intentional failure as distinguished from involuntary

noncompliance. No wrongful intent need be shown'"); F.D.I.C. v. Daily, 956 F.2d 277, 1992 WL

43488, at *3-6 (10th Cir. 1992) (same); and In re Standard Metals Corp., 817 F.2d 625, 628-29

(10th Cir. 1987) (same).

Applying the definition of "willfully" set out in the controlling cases, there is no question

that SCO acted "willfully" in submitting its Final Disclosures and omitting the information called

for in the Court's orders.  The Court's orders clearly call for version, file and line information,

with respect to both to code and methods and concepts.  (See Addendum C.)  Identifying code

41

and methods and concepts by version, file and line of code is the standard method of identifying

operating system source code and methods and concepts with specificity. (Ex. 18 ¶¶ 15, 34, 51.)

SCO asked nothing less than this of IBM, and there is no reason it could not be provided here.

(Id. ¶¶ 25, 51, 56.) Indeed, without it, the Disputed Items were too vague and indefinite to permit

complete analysis. (Id. ¶ 51.) In short, it is indisputable that SCO acted "willfully" in describing

the challenged Items as it did, rather than as IBM requested and the Court required. (Id. ¶ 52.)

 As made clear by the declaration of SCO's Mr. Rochkind, SCO did not claim to have

assembled the Final Disclosures unwittingly. (James Ex. 2 ¶ 10.) It plainly did not, as evidenced

by the fact that SCO provided version, file and line information for a number of Items that were

not challenged in IBM's motion. There is no dispute that SCO made a deliberate decision to

provide the information it provided and the information it did not. (Id.) SCO deliberately

created a different standard to apply to itself than it demanded of IBM, and the Court required.

SCO's failure to provide version, file and line information was not unknowing or inadvertent.

 Moreover, the information omitted from SCO's disclosures is unquestionably within

SCO's control. (James Ex. 2 ¶ 14 n.3.) The Court's orders, as discussed, direct SCO (in

substantial part) to make its allegations specific. For example, to the extent SCO claims that

IBM improperly used Dynix code and methods and concepts in contributing to Linux (and the

vast majority of SCO's allegations are of this type), the orders (on their face) require SCO to

"describe, in detail, . . . with respect to any code or method plaintiff alleges or contends that IBM

misappropriated or misused, the location of each portion of code or method in any product."

(James Ex. 3 at 3.) Only SCO knows what it alleges. No amount of investigation by IBM could

connect the dots. Yet SCO systematically omitted this information from the Disputed Items as

described in Addendum B. SCO's claim that it did not withhold information in its possession

42

with respect to version, file and line of code misses the point. As has been demonstrated, it is possible to obtain version, file and line information with respect to methods and concepts if an effort to do so is undertaken. (Ex. 18 ¶¶ 31-35.) SCO, simply put, has willfully failed to undertake any such effort. (Id. ¶ 52.) SCO concedes as much in arguing that it endeavored to provide version, file and line information where it could and that to the extent it did not it was because it could not. (Obj. at 33-35.) If, as it claims, SCO tried to provide version, file and line information and did so wherever possible, then SCO acted willfully insofar as it did not provide version, file and line information. Not a shred of evidence indicates that SCO acted inadvertently in not providing the missing information. Thus, SCO cannot show that Judge Wells erred in finding that SCO acted willfully.

As we discuss briefly below, none of SCO's specific contentions regarding willfulness support its allegations of error by Judge Wells.

### A. The Courts' Orders Were Clear and Unambiguous.

SCO first seeks to undermine Judge Wells' willfulness finding by arguing that the Court's three prior orders were unclear and ambiguous. (Obj. 30-32.) Thus, the argument seems to go, SCO could not have acted willfully in violating the orders. (Id.) The Court's orders are discussed in detail above (and summarized in Addendum C) and we will not repeat that discussion here except to emphasize one point: the Court's orders could not be more clear that SCO was required to identify the allegedly misused material (i.e., System V, AIX/Dynix and Linux) with specificity (i.e., version, file and line information). IBM's discovery requests demanded it; multiple motions sought to compel it; and three orders of the Court compelled SCO to provide it. At no point did SCO seek reconsideration or clarification of the Court's orders, despite Judge Wells' admonition that the parties do so in the event of uncertainty. (See Ex. 9

43

at 16:4-6 (The Court: "the responsibility of each side is, to seek court clarification when something is unclear").) Thus, SCO cannot now be heard to complain that the orders were unclear or ambiguous.[16]

None of the cases on which SCO relies support the proposition that a finding of willfulness should be reversed as clear error where it was predicated on a party's decision not to disclose information consistently demanded by its adversary for more than three years and expressly required by three court orders to which the party never objected and as to which it never sought clarification.  The cases on which SCO relies involve facts far less compelling than those here.  Indeed, on their specific facts, SCO's cases in no way support the proposition that the Court's orders were unclear and ambiguous.  Robson v. Hallenbeck, 81 F.3d 1 (5th Cir. 1996), did not even involve an issue of an ambiguous preexisting order, but rather involved the failure of the district court to make findings of fact on plaintiff's excuses for noncompliance with a discovery order.  Id. at 3.  FTC v. Enforma Natural Prods., Inc., 362 F.3d 1204 (9th Cir. 2004), merely states in dicta the general proposition that a court considering civil contempt for failure to abide by a court order must do so based on a specific order.  Id. at 1211.  Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640 (D. Kan. 2005), involved a court order that was rendered "arguably ambigu[ous]" by a "lack of clear law" concerning one aspect of the court's order -- an argument that SCO has never made and does not make here concerning the Court's orders.  Id. at 656.  Neither Peterson v. Hantman, 227 F.R.D. 13 (D.D.C. 2005), nor T.N. Taube Corp. v. Marine Midland Mortgage Corp., 136 F.R.D. 449 (W.D.N.C. 1991), involved any court

---

[16] See Serra Chevrolet, 446 F.3d at 1150 (holding that if sanctioned party "was unclear about the scope of the discovery request or the August 27, 2004, order, [it] was obliged to request clarification from the court; it was not free to ignore the Order [of the district court] and to impose [its] own interpretation of the order." (internal quotation marks omitted)).

44

order (ambiguous or otherwise); the moving parties in those cases sought sanctions without the benefit of court orders. And R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir. 1991), concerned the issue of whether a court abuses its discretion by ordering a Rule 37 dismissal of an entire case when there has been some compliance with a discovery order, not whether the order in that case was ambiguous. Accordingly, SCO's ambiguity argument is unavailing.

### B.     SCO's Purported Belief That It Was in Compliance Is Beside the Point.

Next, SCO argues that Judge Wells erred in finding that SCO acted willfully because, SCO asserts, it believed that it was in compliance with the Court's July 2005 Order. (Obj. at 37-39.) SCO does not mention the Court's other orders or Rule 26(e) but presumably it would take the same position about its state of mind as to those orders and Rule 26(e) as well. In any case, SCO's assertions about its subjective belief cast no doubt on Judge Wells' decision.

To begin, SCO offered no evidence of its subjective belief that it was in compliance with the Court's orders or Rule 26(e). The only evidence to which SCO points to support its supposed subjective belief of compliance with the Court's order is the reply declaration of its outside consultant, Marc Rochkind. (James Ex. 2 ¶¶ 7-19.) SCO claims Mr. Rochkind was the chief architect of its final disclosures. (James Ex. 2 ¶ 17.) While Mr. Rochkind stated in imprecise and conclusory terms that he did the best that he could to specify SCO's claims, he nowhere clearly states that he ever even read IBM's discovery requests and the Court's orders or that SCO could not have revealed more about its allegations. SCO relied entirely on the unsworn say so of counsel to support the assertion that SCO believed it was in compliance with orders it violated in multiple respects over the course of several years.

In any event, just as a finding of bad faith is not necessary to justify a court-ordered sanction, a finding that a party subjectively believed that it was in compliance with a court order

is insufficient to insulate it from accountability for failing to comply with the order. A finding of willfulness alone is adequate to justify Judge Wells' decision. See Kern River Gas Transmission Co. v. 6.17 Acres Of Land, 156 Fed. Appx. 96, 101-102, 2005 WL 3257509, at 4 (10th Cir. Dec. 2, 2005) (slip copy); Schroeder v. Southwest Airlines, 129 Fed. Appx. 481, 484-85, 2005 WL 984495, at *3 (10th Cir. 2005); F.D.I.C. v. Daily, 956 F.2d 277, 1992 WL 43488, at *3-6 (10th Cir. 1992).

If a subjective belief of compliance were sufficient to satisfy a court order and avoid any penalty of noncompliance, there would be little consequence to violating a court order and few orders would be respected. In asserting error based on SCO's supposed subjective intent, SCO seeks to shift the consequences of its non-compliance with the Court's orders to IBM. As we discuss below, however, SCO's failure to comply with the Court's orders made it impossible for IBM to defend itself. It simply cannot be that a party can permissibly violate court orders with impunity and simultaneously gain a strategic advantage by robbing its adversary of the information required by the orders. SCO asks in effect that it be rewarded and IBM punished for SCO's repeated violations of the Court's orders. SCO has not cited any case -- and we are not aware of any -- for its proposed order of things.

None of the cases on which SCO relies holds that a party's subjective belief that it is in compliance with a court order allows it to withhold its allegations to the detriment of its adversary. In Miller v. Sprint Commc'ns, No. 3:97CV156, 1997 WL 910426 (W.D.N.C. Dec. 31, 1997), the court affirmed sanctions for failure to comply with discovery orders on similar facts: the sanctioned party had been ordered to comply with discovery requests, the opposing party had noted the sanctioned party's failure through correspondence and the court found that there was no legitimate excuse for the failure. See id. at * 3. Internationale Pour Participations

46

Industrielles et Commerciales, S. A. v. Rogers, 357 U.S. 197, 212 (1958), and In re

Westinghouse Elec. Corp. Uranium Contracts Litig., 563 F.2d 992, 994 (10th Cir. 1977), are both

inapposite because there the courts vacated Rule 37 dismissals because the parties made good

faith efforts to comply -- not because the parties had a subjective belief that they were complying.

Moreover, the sanctioned parties faced potential criminal liabilities from foreign countries if they

chose to comply with the orders issued by U.S. federal courts. As explained by the Tenth Circuit

in Westinghouse, in order to provide guidance to parties (and federal courts) faced with such a

dilemma, the Supreme Court in Rogers established a test that altered the traditional Rule 37

standards governing compliance by such a threatened party. See Westinghouse, 563 F.2d at 997-

98 (citing Rogers).

### C.   SCO Could Have Complied With the Court's Orders and Rule 26(e).

Finally, SCO argues that Judge Wells erred in finding that SCO acted willfully because it

was unable to provide the version, file and line information that the Court thrice ordered it to

provide. (Obj. at 39-44.)  SCO asserts that it provided specific source code where it alleged the

misuse of source code but that as to methods and concepts it could not provide source

coordinates except where IBM identified source code in its allegedly improper disclosures. That

is false.

Contrary to SCO's contention, the Disputed Items are not limited to alleged misuse of

methods and concepts. As pointed out in Professor Davis's rebuttal declaration, many of the

Challenged Items expressly relate to the alleged misuse of code. (Ex. 18 ¶ 27.)  For example:

**REDACTED**

**REDACTED**

(See Ex. 18 ¶¶ 27-28 & Ex. C (quoting the language of the challenged Items (emphasis added)).)

Thus, SCO's own words refute its argument that all of the Disputed Items concern methods and

concepts rather than code.

Many of the Disputed Items that concern the alleged misuse of code are in fact among

SCO's most imprecise allegations. In 39 of the Disputed Items (Items 232 to 270), for example,

SCO accused IBM of making improper reference to Dynix source code as a basis for writing

additional code, while providing essentially no further information. (Ex. 18 ¶ 28.) Each of these

39 items had an "Improper Disclosure" claim in the following form:

**REDACTED**

That is, SCO specifically accused IBM of referring to

Dynix code and System V code, and then using that as the basis for creating additional code (e.g.,

48

"MP preemption and synchronization code"). (Id.) Yet SCO offered no specification of any kind (no version, file, or line numbers) of which Unix code was allegedly referenced, or of which Dynix code was allegedly referenced. (Id.) IBM was left to guess as to which of the 470,000-plus files and 156 million-plus lines of Dynix code included within SCO's vague claims was in fact challenged by these Items. (Id.)

In any event, there was (as stated) absolutely no reason SCO could not have provided version, file and line information as to all of the Disputed Items. (Ex. 18 ¶¶ 25, 51, 56.) The Court's orders and Rule 26(e) required SCO to disclose its allegations. (See Exs. 5, 6, 8.) No one has more information about its allegations than does SCO. Nothing was required of IBM for SCO to disclose its allegations. Even if SCO had required discovery from IBM to comply with the Court's orders and Rule 26(e), it received plenty. As the Court is aware, IBM provided SCO with millions of pages of paper and the equivalent of billions of lines of source code. In fact, IBM produced vast quantities of the very AIX and Dynix source code that SCO claimed was necessary to allow it to produce the version, file and line information that SCO failed to produce.

The declaration of SCO's proposed expert, Mr. Rochkind, in no way established that SCO could not provide the missing information. As Professor Davis pointed out: "It is entirely possible for the party making the allegations of misuse to assemble such information: Where a method or concept is in fact used in a program, there must be lines of source code in the program that implement the method or concept." (Ex. 18 ¶ 5; see also id. ¶ 29 ("The methods and concepts employed in an operating system (or any computer program) are in the source code. It could not be otherwise: The source code of a program specifies all of its possible behavior. If that behavior truly embodies a method, that method must be expressed in specific lines of the source code; there is just no other way to do it.").)

49

The cases on which SCO relies offer no support for its claim that Judge Wells erred in finding willfulness. Most are inapposite because they do not even address any issue of willfulness.[17] They all involve motions to compel where the issue of willfulness is irrelevant. Although the defending parties in these cases proffered excuses for their inability to comply with discovery, none of those cases holds that the inability to comply on a motion to compel equates to a lack of willfulness under Rule 37. Moreover, the defendants in these cases lodged timely objections concerning their inability to produce documents (i.e., before the court entered any orders requiring them to produce), whereas here SCO did not.[18] In the other cases on which SCO relies sanctions were denied because the sanctioned parties substantially complied with discovery.[19] Moreover, SCO takes no account of cases in which courts have found willfulness on facts less compelling than those here. See, e.g., In re Standard Metals Corp., 817 F.2d 625, 628-29 (10th Cir. 1987) (holding that creditor willfully violated order sufficient to warrant Rule 37

---

[17] See Obj. at 32-33 (citing Cardenas v. Dorel Juvenile Grp., Inc., 230 F.R.D. 611, 620 (D. Kan. 2005); Sonnino v. Univ. of Kan. Hosp. Auth., 220 F.R.D. 633, 640 (D. Kan. 2004); Steil v. Humana Kan. Cty., Inc., 197 F.R.D. 445, 448 (D. Kan. 2000); Sithon Mar. Co. v. Holiday Mansion, No. Civ. A. 96-2262, 1998 WL 638372, at *4 (D. Kan. Sept. 14, 1998); and In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02 Civ. 3400, 2006 WL 1072008, at *2 (S.D.N.Y. Apr. 19, 2006)).

[18] SCO declined to do so, or to seek relief from the plain language of Judge Wells' orders, despite the fact that it now asserts that its claims have been based on "methods and concepts from the inception of this case" and that, at the same time, methods and concepts "cannot be identified by source code." (Obj. at 4, n.1, 18.)

[19] Zappala v. Albicelli, 954 F. Supp. 538, 548 (N.D.N.Y. 1997), is inapposite because there the court denied sanctions because the defendant had complied with discovery, not because of any lack of willfulness. Kropp v. Ziebarth, 557 F.2d 142, 147 (8th Cir. 1977), is inapposite because there sanctions were not warranted because the defendant had substantially complied with discovery, whereas here, SCO has failed to support two thirds of its items of allegedly misused material.

dismissal where creditor did not appear at a deposition despite being "aware of the [] order" requiring him to attend).[20]

The most remarkable thing about SCO's argument concerning its alleged inability to identify methods and concepts by version, file, and line is the point in time at which it chose to raise the issue. SCO asserts that its claims have been based on "methods and concepts from the inception of the case" and that methods and concepts "cannot be identified by source code." (Obj. at 4 n.1, 18.) Knowing this, SCO chose to say nothing to Judge Wells following entry of her orders in December 2003 and March 2004 requiring version, file, and line information, and chose to say nothing to this Court following entry of the July 2005 Order requiring SCO to identify the misused material with specificity. Indeed, SCO said nothing to IBM. To the contrary, after receipt of SCO's interim disclosures, IBM sent SCO a letter making crystal clear that SCO was required to do so in its final disclosures. (See Ex. 11.) SCO did not even respond to that letter, let alone advise IBM (or the Court) that it was unable to do so because methods and concepts "cannot be identified in source code," as it now contends. Instead, SCO waited until after IBM filed its motion (and shortly before the cutoff of fact discovery, and on the eve of expert discovery) to raise this issue. Thus, timing alone strongly suggests that SCO's "methods and concepts" argument was created after-the-fact, and SCO seized upon it solely to try and avoid IBM's motion.

---

[20] See also Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co., 667 F.2d 600, 605 (7th Cir. 1981) (rejecting the plaintiff's argument that its conduct was not willful, because it believed in good faith that the requests to produce did not cover a great many of the documents in the case, because the plaintiff was not entitled to rely on its interpretation; it should have sought the court's interpretation); Pentalpha Macau Commercial Offshore Ltd. v. Reddy, 2005 WL 2989273, at *3 (N.D. Cal. Nov. 3, 2005)(willful conduct demonstrated by inadequate meet and confer and refusal to supplement interrogatories after court order requiring compliance).

## IV.     JUDGE WELLS AFFORDED SCO A FAIR HEARING.

SCO argues that Magistrate Judge Wells "erred in failing to consider whether specific disclosures were adequate." (Obj. at 39-45.) Specifically, SCO claims that the Court failed (1) "to consider the adequacy of disclosures on an item-by-item basis (id. at 41-45); (2) "to provide particularized findings" (id. at 40-41); and (3) to "hold an evidentiary hearing" (id. at 39). None of these assertions bears scrutiny.

### A.     The Court Considered the Adequacy of SCO's Disclosures on an Item-by-Item Basis.

In an effort to make Judge Wells' decision appear erroneous, SCO devotes five pages to arguing that she failed to consider the adequacy of the Items on an individual basis. (Obj. at 41-45.) However, Judge Wells did in fact consider each of the Items on an individual basis, as expressly stated in her opinion:

> "SCO submitted its alleged misappropriated materials on CD-ROM. The Court has reviewed all of the disputed items individually."

(Order at 2 n.3.) Thus, SCO's objection is wrong.

Contrary to SCO's apparent suggestion, there is no reason Judge Wells should not be taken at her word. It is well established that a reviewing court should take at face value the statements of a lower court about the matters it considered. See Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1237 (10th Cir. 1998) (rejecting plaintiff's argument that "the November 18 minute order issued by the magistrate limited any potential attorney's fees award" because "[w]e defer to the magistrate's interpretation of his own words" that "'it was not the Court's intention to impose such a limitation.'"); United States v. Corbett, 57 F.3d 194, 195 (2d Cir. 2004) (rejecting defendant's argument "that the district court failed to consider his ability to pay in setting his payment schedule, as required by 18 U.S.C. § 664(f)(2)" where the "trial judge

52

stated in making the restitution order that he had arrived at the payments formula '[a]fter considering the factors set forth in 18 U.S.C. § 664(f)(2)'" and "[w]e have no reason to doubt the judge's statement.").[21]

In any event, resolution of IBM's motion did not require detailed review of the Final Disclosures. That is because the Court's orders and Rule 26(e) were clear about what SCO was required to do, i.e., provide version, file and line information, and it is undisputed that SCO did not provide that information as to the items in question. (Obj. at 16; Ex. 17 at 7; James Ex. 14 at 76:8-76:11.) Thus, even if (contrary to fact) Judge Wells had not considered the Disputed Items on an individual basis, there could be no basis for finding error in a more generalized analysis. SCO cites no authority for the proposition that an itemized review of evidence is necessary for its own sake. Notably, not even SCO engaged in an item-by-item analysis in either its papers or at oral argument.

### B.   The Court Adequately Stated the Bases of Its Decision.

In addition to arguing that this Court should disregard Judge Wells' statement that she looked at the items on an individual basis, SCO argues that Judge Wells erred by not providing particularized findings. (Obj. at 40-41.) In so doing, SCO ignores the fact, after extensive briefing and argument, that the Court entered a 39-page order making extensive, specific findings, such as that SCO violated three court orders and Rule 26(e) (Order at 7-17), that SCO did so willfully (id. at 30-32) and that SCO's conduct was prejudicial to IBM (id. at 32-36).

---

[21] See also Moghadam-Falahi v. I.N.S., 9 F.3d 1552, 1993 WL 430075, at *1 (9th Cir. 1993) (holding that "[i]f a court states on the record [the information it considered in its ruling], a reviewing court must take that statement at face value."); Jones v. Amalgamated Warbasse Houses, Inc., 721 F.2d 881, 885 (2d Cir. 1983) (rejecting "Plaintiffs argu[ment] that the court erroneously reduced [a] fee award in part because public funds were involved" because "[w]e have no reason to doubt the judge's explanation in his . . . order that this fact . . . was not a reason for the reduction.").

SCO appears to contend that it was error for Judge Wells to not individually describe each of the Items in the Order. (Obj. at 41.) But again not even SCO did that in its briefs below or in this Court. Individually describing each of SCO's Items would have been a waste of time. Judge Wells identified the failing of each item, and that is all that was required. It is well established that a court need only make such findings as are necessary to permit appellate review. See Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1186 (10th Cir. 1975) (holding that a lower court's "findings need not be set forth in elaborate detail, they only need be clear, specific, and complete and inform the reviewing court of the basis for the decision.") (internal quotation marks omitted); Price v. Lake Sales Supply R.M., Inc., 510 F.2d 388, 391-92 (10th Cir. 1974) (holding that a trial court's "findings were sufficient to provide the appellate court with a clear understanding of the trial court's reasons so as to present an adequate review" where in a patent case the trial court held that it found non-obviousness after "a careful review of the prior art" even though it did not "discuss [individually] the numerous citations of prior art brought to [its] attention by both parties"). No serious question exists as to whether this Court is in a position to review Judge Wells' findings.[22]

## C.      The Court Did Not Err in Electing Not To Hold an Evidentiary Hearing.

Finally, SCO argues that the Court committed error by failing to hold an evidentiary hearing. (Obj. at 39.) However, SCO did not request an evidentiary hearing in its opposition

---

[22] SCO misplaces reliance on Robson v. Hallenbeck, 81 F.3d 1, 3 (5th Cir. 1996), and Proctor & Gamble Co. v. Haugen, 427 F.2d 727, 742 (10th Cir. 2005). (See Obj. at 40-41.) Robson is inapposite because there the district court's error was that it made no findings whatsoever concerning plaintiff's non-compliance with discovery, not that its findings were not detailed or specific enough. Id. at 4. Here, not only did Judge Wells' Order provide findings concerning SCO's non-compliance, but those findings were specific and detailed. Haugen is inapposite because it concerned the admissibility of expert testimony under the Supreme Court's Daubert decision, whereas here the issue is SCO's compliance with court ordered discovery. Id. at 742.

papers.  By SCO's own admission, it suggested the need for an evidentiary hearing for the first

time at oral argument on April 14, 2006.  (Obj. at 39.)  For this reason alone, SCO's complaint

lacks merit.  A court need not consider issues raised for the first time at oral argument.  <u>See</u>

<u>Thomas v. Denny's Inc.</u>, 111 F.3d 1506, 1510 n. 5 (10th Cir. 1997) (holding that court would not

consider issues not raised in the briefs but raised for the first time in oral argument); <u>Acker v.</u>

<u>Burlington Northern and Santa Fe Ry. Co.</u>, 388 F. Supp. 2d 1299, 1302 n.2 (D. Kan. 2005)

(holding that because "Plaintiffs did not raise this issue . . . in their original memorandum in

support of their motion . . . . [t]he court [would] not consider the argument.").

　　　　Even if SCO had timely requested an evidentiary hearing, it would not have been an error

for Judge Wells not to hold one.  Evidentiary hearings are not required before granting Rule 37

sanctions, particularly where the sanctioned party had an opportunity (as SCO had here) to

meaningfully present its arguments.  <u>See</u> <u>F.D.I.C. v. Daily</u>, 973 F.2d 1525, 1532 (10th Cir. 1992)

(holding that the "district court did not abuse its discretion by failing to hold an evidentiary

hearing before entering a default judgment"; <u>Langley v. Union Elec. Co.</u>, 107 F.3d 510, 515-16

(7th Cir. 1997) (holding that "Rule 37 requires no evidentiary hearing").[23]  SCO was free to

discuss the Disputed Items with the Court both in its papers and at oral argument, and it did so.

No more was required; no more would have been appropriate.

---

[23] <u>See also</u> <u>Godlove v. Bamberger, Foreman, Oswald, and Hahn</u>, 903 F.2d 1145, 1148-49 (7th
Cir. 1990) ("Plaintiff also complains she was sanctioned [with a dismissal with prejudice]
without benefit of a hearing.  Plaintiff had ample opportunity to respond to the court's orders,
and her refusals were clear.  No other hearing was needed to go over once again the discovery
impasse caused by plaintiff.").

V.     **THE RECORD FULLY SUPPORTS JUDGE WELLS' FINDING OF PREJUDICE AND THE REMEDY SHE USED TO PREVENT IT.**

Finally, SCO asserts, in scattershot fashion, four arguments to support the proposition that Judge Wells erred in failing to require IBM to establish prejudice and to consider alternatives to the sanction imposed. (Obj. at 45-53.) Like the proposition they are offered to support, SCO's arguments are unsupported and unsupportable. Thus, SCO's last objection to the Order must be overruled.

A.     **Judge Wells Properly Considered the Issue of Prejudice.**

The first of SCO's contentions is that Judge Wells failed properly to consider the issue of prejudice, despite devoting four pages of her order to the subject. (Obj. at 45-50; Order at 32-36.)

1.     **SCO's Conduct Resulted in Severe Prejudice.**

As stated, SCO contends generally that IBM misused Unix System V material (which SCO purports to own) and the AIX and Dynix material (which IBM owns, but SCO purports to control). (See Sec. Am. Compl. ¶¶ 110-36, 143-66.) According to SCO, IBM improperly "dumped" Unix System V, AIX and Dynix material into Linux. (Id.) While the Disputed Items add color to SCO's allegations, they fail miserably (as stated), to identify with specificity the versions, files and lines of System V, AIX, Dynix and Linux material that IBM is alleged to have misused. Without that information it was, as a practical matter, impossible to evaluate and properly prepare a defense against SCO's claims. (Ex. 18 ¶¶ 9-13, 37-48.)

SCO's failure to specify its claims put on IBM the impossible burden of looking for undefined needles in an enormous haystack. (Ex. 21 ¶ 15.) There are at least 11 versions, 112,622 files and 23,802,817 lines of System V code potentially implicated by SCO's claims. (Ex. 18 ¶ 42.) There are at least 9 versions, 1,079,986 files and 1,216,698,259 lines of AIX code

56

potentially implicated by SCO's claims. (Id.) There are at least 37 versions of the base operating system, and 472,176 files and 156,757,842 lines of Dynix code potentially implicated by SCO's claims. (Id.) And there are at least 597 versions, 3,485,859 files and 1,394,381,543 lines of Linux code potentially implicated to SCO's claims. (Id.) In all, SCO pointed IBM to a haystack comprised literally of billions of lines of code. (Ex. 21 ¶ 15.)

The size of the haystack, however, was only part of the problem. The real problem with the Disputed Items was that SCO failed adequately to describe the needles it was sending IBM to find. (Ex. 21 ¶ 17.) Rather than define the 187 items at issue (which could only properly be done by providing version, file and line information), SCO described them in general and imprecise terms. For example, Item 35 faulted IBM for an alleged "[d]isclosure of how Dynix/PTX dealt with this problem" and cited a one-page email containing the minutes to a conference call as well as an unrelated presentation dated more than three years after the conference call. SCO identified three Linux files that it claimed contained the allegedly misused material, but no versions or lines code for these Linux files. There was not even a hint of where Dynix/ptx actually "dealt with this problem". In short, SCO told IBM nothing meaningful about what IBM was supposed to have done.

As SCO well knows, its failure to provide specific coordinates for all of the allegedly misused material in the Disputed Items made it impossible for IBM to conduct the kind of investigation that was necessary for IBM fully to defend itself. (Ex. 18 ¶¶ 9-13, 37-48.) SCO did not (and could not) dispute that its causes of action required inquiry into the origin of the code and concepts (which are, of course, embodied in code), the value of the code, whether SCO distributed the code under the GPL, whether it was developed to comply with publicly known standards, whether the code is dictated by externalities, whether the code was merely an

57

unprotectable idea, whether the code ever shipped without a required copyright notice and whether the code was otherwise in the public domain.[24] (Ex. 21 ¶ 20.) The only way to answer those questions, and many others like them, was on a line by line basis. That could not be done without knowing the versions, files and lines of the allegedly misused material. (Id.)

By failing to provide adequate reference points, SCO left IBM no way fully to evaluate its claims without surveying the entire universe of potentially relevant code and guessing. Since only SCO knew what its claims were, requiring such an exercise of IBM would have been as senseless and unfair as it would have been Herculean.

### 2. Judge Wells Carefully Considered the Consequences of SCO's Conduct.

Contrary to SCO's contention, Judge Wells carefully considered the consequences of SCO's misconduct. SCO's complaints about Judge Wells' decision-making are baseless. The crux of SCO's criticism of Judge Wells is that she failed to consider that since IBM engaged in the alleged misconduct, no one knew better than IBM what it did wrong and it could thus have figured out for itself the particulars of SCO's allegations. (Obj. at 46, 48.) In fact, Judge Wells recognized the argument for what it is -- "absurd", to use the Court's term -- and rejected it. (Order at 34.)

Here again, the Court considered and rejected SCO's argument more than two years ago in entering the December 12, 2003 Order. In an effort to avoid the order, SCO argued IBM could

---

[24] The answers to these questions mattered because, for example, SCO has no rights with respect to code that did not derive from System V, and it cannot protect as confidential code that is in the public domain by no fault of IBM's. Further, SCO cannot assert copyright interests with respect to mere ideas, code that can only be expressed in a few ways, code that is in the public domain, and code that is dictated by externalities such as computer programming practices. See Gates Rubber Co. v. Bando Chem. Ind., Ltd., 9 F.3d 823, 833-38 (10th Cir. 1993); Computer Assocs., Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701-04 (2d Cir. 1992).

figure out for itself what it did.  (See Ex. 13 at 5 ("[S]ome of the information IBM requested will be known only to IBM, so the specifics of who at IBM was involved with improperly contributing this code to the public, how they did so, and the like will not be known until SCO gets this information from IBM . . . . Such a situation does not create grounds to grant a motion to compel." (emphasis added)).)  The Court rejected the argument again in entering the March 2004 and the July 2005 Orders.  SCO failed to object to or seek reconsideration of any of these orders, and it cannot now be heard to complain about them.[25]

Even if SCO were not foreclosed from asserting that SCO's failure to comply with the Court's orders was not prejudicial to IBM, the idea that it was not prejudicial for IBM to have to figure out for itself what SCO's case is about is untenable on its face.  As Judge Wells observed:

> "Certainly if an individual was stopped and accused of shoplifting after walking out of Neiman Marcus they would expect to be eventually told what they allegedly stole.  It would be absurd for an officer to tell the accused that 'you know what you stole I'm not telling.'  Or, to simply hand the accused individual a catalog of Neiman Marcus' entire inventory and say 'its in there somewhere, you figure it out.'"

(Order at 34.)  Common sense alone teaches that it would be prejudicial for IBM to have to figure out for itself what SCO contends.  No party should be required to conduct fact discovery, retain, prepare and depose experts, present summary judgment motions and proceed to trial based on guesswork.  While SCO might like the idea of disclosing its true claims for the first time at trial, the rules do not permit that practice.

---

[25] See Compton v. Illinois Dept. of Corrs., No. 02-1397, 2006 WL 1367467, at *1 (C.D. Ill. May 16, 2006) (holding that untimely objections to magistrate report were waived); Campbell, 2003 WL 1119552, at *1 (holding that challenge to magistrate ruling was waived where plaintiff failed to file timely objections); Parker, 178 F. Supp. 2d at 1212 (holding that challenge to district judge ruling striking expert testimony was waived where plaintiff failed to move for timely reconsideration); Hilterman, 966 F. Supp. at 1023 (holding that challenge to magistrate ruling was waived where plaintiff failed to file timely objections).

In suggesting that IBM failed to take steps to obtain the missing information for itself (Obj. at 50-51), SCO badly misrepresents the record. IBM has been seeking the particulars of SCO's allegations for more than three years. IBM propounded numerous discovery requests, filed numerous motions, and obtained three orders -- all in an effort to obtain disclosure of SCO's allegations and prepare IBM's defense. Judge Wells addressed this history in part in the Order. (Order at 7-13.) If the history of this litigation reveals anything it is that IBM has persistently sought the same basic information and SCO has persistently refused to provide it.

Finally, SCO raises two additional arguments, neither of which requires lengthy analysis. First, SCO claims Judge Wells "engaged in no particularized consideration on an item-by-item basis of how IBM was prejudiced by SCO's misconduct." (Obj. at 47.) According to SCO, Judge Wells "did not address the issue except by hypothetical examples of where she believed [such version, file and line] information would be important". (Id.) SCO goes so far as to accuse Judge Wells of basing her decision on speculation. (Id. at 47-48.) As stated in the Order, however, Judge Wells considered each of the Disputed Items (Order at 2 n.3), and she evaluated the prejudice caused by SCO's failure to particularize them. (Order at 32-36). Putting aside the fact that Judge Wells expressly stated that she considered each of the Disputed Items, the Order makes clear that she did. For example, Judge Wells found:

> "Without more specificity than SCO has provided some very important questions that could materially impact this case are nearly impossible to answer".

(Order at 34.) She then went on to offer specific examples of such questions. Judge Wells further found:

> "Requiring IBM to engage in an analysis of millions of lines of code to figure out which code is at issue in hopes of answering such questions is

60

> patently unfair given the fact that it was SCO's duty to provide more
> detailed code in the first place."

(Order at 35.) Here again, the Court went on to illustrate the problem caused by SCO's

violations. In any event, an item-by-item analysis was not required to evaluate the prejudice

caused by SCO's misconduct. As much as SCO seeks to obscure the point, the primary prejudice

caused by its violations of the Courts' orders and Rule 26(e) was that it left IBM in the dark

about SCO's allegations.[26]

     Second, SCO claims that Judge Wells erred in observing that SCO failed to link that

which it contends IBM misused to anything owned by SCO. (Obj. at 47.) The argument appears

to be that SCO's claims do not depend on its ownership of the material IBM is alleged to have

misused. (Id.) So, the argument continues, SCO's failure to provide a link is irrelevant. (Id.)

Even superficial review of the Order demonstrates that Judge Wells did not in any way address

the merits of SCO's claim. Not only does the Order analyze SCO's conduct in discovery, as

opposed to the merits of its claims, but also it expressly states that it does not address the merits

of SCO's claims. (Order at 20, 38 n.128.) Moreover, even if SCO's ownership of the allegedly

misused material were not necessary to SCO's case (as SCO seems to contend), it is nevertheless

relevant in IBM's defenses. Furthermore, the Court three times required SCO to provide the

linkage it dismisses as irrelevant. (See Addendum C.) If SCO had a problem with the Court's

---

[26] Nowhere does SCO substantiate its allegations of speculation. SCO appears to mean simply
that Judge Wells addressed the impact that SCO's misconduct would have had on IBM if not
remedied. But that is exactly what IBM's motion called upon Judge Wells to do and exactly
what SCO also seems elsewhere to claim she should have done: evaluate the probable impact of
SCO's conduct. Moreover, Judge Wells' analysis was not limited to considering future events.
She evaluated the present effect of SCO's conduct. Based on the dearth of detail provided by
SCO relating to the Disputed Items, IBM was unable to prepare a proper defense.

previous orders, it should have complained about them when they were entered.  SCO's present

objections are too little, too late.

**B.      The Court Dealt Properly With SCO's Effort To Blame IBM for SCO's Shortcomings.**

Next, SCO argues that Judge Wells erred in not to considering "IBM's lack of complete

source identification." (Obj. at 50-51.) According to SCO, IBM failed to produce all versions of

AIX; IBM directed certain AIX/Dynix developers to delete AIX and/or Dynix source code from

their computers; and one IBM developer failed to retain certain code and tests. (Obj. at 50-51.)

Thus, SCO argues, it is Judge Wells and IBM that are at fault, not SCO. (Id.)

SCO's spoliation claims lack merit, and we will respond to them in detail if and when

SCO makes an appropriate motion.  For now, suffice it to say that before facing imminent

sanctions for violating three separate orders of the Court and Rule 26(e), SCO expressly

represented to IBM, and the Court, that it had no issues with IBM's document production:

> "The parties have reviewed one another's document productions, met and
> conferred, and agree that . . . there are no discovery disputes between
> them".

(Ex. 16 ¶ 4.)  For this reason alone, SCO's spoliation claims fail.

Moreover, and this point deserves emphasis, SCO failed to demonstrate before Judge

Wells that IBM improperly destroyed evidence and that the purported improper destruction of

that evidence precluded SCO from providing the information it was ordered to provide but

elected not to provide.  In fact, SCO merely mentioned the issue of alleged destruction of

evidence in the facts section of its opposition brief without referring to it again in its argument.

(Ex. 17 at 3-4.)  SCO made no real effort to substantiate its charges, which were plainly raised in

an improper effort (seen by Judge Wells for what it was) to "poison the well".  Thus, any claim

that Judge Wells erred in not jumping to the conclusion SCO now says she should have reached

62

is itself error on SCO's part.[27]  In any case, to reiterate again a point of importance here: SCO had ample information available to it to decide what to allege, and no amount of discovery should have been required for SCO to tell IBM what it should have known before it filed suit:  its allegations.

Despite SCO's claim that Judge Wells ignored its charges of misconduct by IBM (however unsubstantiated), the record reflects that she both considered and rejected them.  SCO asserted its claims of misconduct in its papers: Judge Wells read them; and she properly found them unpersuasive.  See Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1116 (10th Cir. 2004) (holding that a "district court's failure to address [a litigant's] arguments may be properly construed as an implicit denial of those arguments"); Miller v. Auto. Club of New Mexico, Inc., 420 F.3d 1098, 1117 (10th Cir. 2005) (holding that although "there is no indication the district court explicitly ruled on [plaintiff's] objections to the denial of her motion to compel . . . [n]onetheless, we may properly construe a district court's failure to address arguments raised in a Rule 72(a) objection 'as an implicit denial of those arguments'").  The record contains absolutely no evidence to indicate that Judge Wells erred in rejecting SCO's unsupported allegations of discovery misconduct by IBM.

It is well established that a litigant may not avoid its discovery obligations by blaming its adversary for its shortcomings.  See Ellsworth v. Gibson, 164 Fed. Appx. 782, 783-84 (10th Cir. 2006) (affirming Rule 37 dismissal over plaintiff's allegations that it could not comply with discovery because of defendant's spoliation of evidence); Rambus, Inc. v. Infineon Techs. AG,

---

[27] Judge Wells can hardly be faulted for not considering an argument that was not properly presented to her.  See Luman v. Champion, 108 F.3d 1388 (Table), 1997 WL 143594, at *1 n.2 (10th Cir. 1997) (holding that plaintiff had failed to raise a certain issue before the district court where plaintiff mentioned the issue in the "statement of facts-without any argument").

145 F. Supp. 2d 721, 733-34 (E.D. Va. 2001) (precluding plaintiff's expert testimony on certain topics disclosed for the first time in expert report and rejecting plaintiff's excuse that it couldn't provide the information in a timely manner because "it needed more detail as to [defendant's] proposed claim constructions" because plaintiff "should have moved to compel the information it thought to be lacking"); Carney v. KMart Corp., 176 F.R.D. 227, 230 (S.D. W. Va. 1997) (precluding testimony of untimely disclosed expert and rejecting sanctioned parties' excuse that "their failure to [timely] disclose result[ed] from [the moving party's] failure to give full Rule 26(a)(1) disclosures.").

### C.     The Court Considered Whether SCO Had Been Warned.

SCO also argues that "the Magistrate Judge clearly erred in failing to consider whether SCO had been warned that its claims were in jeopardy". (Obj. at 51-52.) According to SCO, "there is no consideration at all in the Order of the fact that SCO had never been warned"; "the Magistrate Judge jumped immediately to striking SCO's claims on the challenged items." (Id. at 52.) Again, SCO is wrong.

First, at the outset of the case, when SCO failed to detail its allegations as required by the Court, the Court warned the parties (in chambers) that they were not to ignore an order of the Court because they felt they could not comply. (08/14/2006 Todd Shaughnessy Decl. ¶¶ 2-3 (annexed hereto).) They were instead to bring the issue of its inability to comply to the Court's attention so that the Court could address the issue.

Second, no less than three Court orders and Rule 26(e) required SCO to provide requested information. The "[i]ssuance of a court order requiring the production of discovery materials in response to a motion to compel provides a party with notice that discovery sanctions may follow if the order is not complied with." In re Orthopedic Bone Screw Prods. Liab. Litig.,

64

No. MDL 1014, 1998 WL 254038, at *2 (E.D. Pa. May 5, 1998).  Likewise, under Rule 26(e), no

warning need be issued before evidence may be struck; the Rule itself provides the warning.  See

Thibeault v. Square D Co., 960 F.2d 239, 245 (1st Cir. 1992) (affirming striking of expert reports

under Rule 26(e) even where district court did not issue warning because the "Rule itself

furnishes fair warning.  Thus, when Rule 26(e) is flouted, district courts possess the power to

impose sanctions without first issuing a firm discovery deadline or an admonitory order.").

Third, Judge Wells told the parties in unmistakable terms that all evidence needed to be

put on the table with the Final Disclosures and that evidence not put on the table would not be

available for use at summary judgment or trial.  (Ex. 15 at 50.)  In fact, Judge Wells expressly

quoted her prior warning in her opinion at page 2:

> "Obviously what I don't want is either side to use information that has
> been withheld in support of a summary judgment motion or in support of
> their case at trial, all evidence need[s] to be on the table for the other party
> to analyze and take a look at."

(Order at 2.)  The clear and unambiguous purpose of the July 2005 Order was to achieve the

same results -- hence the Court's establishment of a "final deadline" to disclose "all" allegedly

misused material.

Fourth, Judge Wells made clear that her Order was not entered in a vacuum:  "The instant

dispute does not take place in a vacuum".  (Order at 3.)  Judge Wells expressly acknowledged,

for example, the fact that IBM warned SCO that its failure to provide version, file and line

information was not in accord with the Court's orders and that IBM would seek to limit SCO's

proof if it did not fix the problem.

> "Finally, after IBM received SCO's interim alleged misappropriated
> submissions, IBM informed SCO that the submissions were not specific
> enough.  IBM warned SCO that if the final submissions were of the same
> level of specificity court intervention would be sought.  Tellingly, SCO did

65

> not seek court guidance as to the required level of specificity after IBM
> disagreed with SCO's interpretation of the court's orders."

(Order at 32.) Thus, where no warning should have been required, SCO had more than enough

warning of the consequences of its noncompliance with the Court's orders.

In effect, SCO argues it can do as it wishes, no matter what prejudice results, until warned

expressly by the Court that it will be sanctioned in a specific respect. That is simply not the law.

See Schroeder v. Southwest Airlines, 129 Fed. Appx. 481, 484 (10th Cir. 2005) (affirming

Rule 37 dismissal despite "the fact that plaintiff was not specifically warned."); F.D.I.C. v. Daily,

973 F.2d 1525, 1532 (10th Cir. 1992) (affirming Rule 37 dismissal and holding that the "district

court's failure to warn Daily of the possibility of sanctions is of no consequence"). Nor would it

make any sense for the Court to adopt a Rule that would allow SCO to disregard one order after

another with impunity unless and until warned to its subjective satisfaction that a very specific

sanction is to follow.

**D.      Judge Wells Considered All the Alternatives.**

Finally, SCO argues that Judge Wells "erred in failing to consider alternatives to limiting

SCO's claim". (Obj. at 52-53.) SCO claims "the record shows no consideration of any

alternatives to the sanction imposed" and points to three alternatives that it says should have been

considered but allegedly were not. (Id. at 52.) Here again, SCO misconstrues the record.

Judge Wells decided IBM's motion as to the Disputed Items in the only way that it could

properly have been decided: she granted it. SCO failed to provide IBM and its experts the most

basic information needed for IBM to evaluate SCO's claims and prepare its defense. With

respect to the Disputed Items, SCO declined, as a practical matter, to tell IBM what was in

dispute. As a result, IBM was prejudiced in its ability to prepare its defense. Without the

information IBM requested -- which was known only to SCO -- IBM's experts were unable

66

properly to prepare their expert reports, and IBM was unable properly to prepare summary

judgment papers. (Ex. 18 ¶ 47.) Thus, any alternative other than the one selected by Judge Wells

would merely have compounded the problems caused by SCO's noncompliance with the Court's

orders and afforded SCO a considerable, unfair, tactical advantage. Deferring the resolution of

IBM's motion would simply have required IBM to proceed to the summary judgment phase of

the case without knowing what was on the table.

Not only did Judge Wells consider alternatives to the remedy chosen, she considered and

rejected the very remedies SCO claims she did not consider:

First, SCO argues that, instead of limiting SCO's proof, Judge Wells should have simply

allowed IBM "to object at the time the evidence not previously provided is sought to be used".

(Obj. at 52.) In its memorandum in opposition to IBM's motion, SCO argued:

> "[I]f SCO seeks to use information in opposition to summary judgment, or
> at trial, that IBM thinks was not properly disclosed in the December
> report, IBM could make an objection at that time."

(Ex. 17 at 6.) Again, at oral argument, SCO stated:

> "[I]f [SCO] were to, at a later time, present disclosures that are not in these
> 293 or to be shown to have had in our hands information that was
> disclosed at this time, IBM is certainly able to object."

(James Ex. 14 at 47-48.) The plain language of the Order and the hearing transcript make clear

that Judge Wells "thoroughly considered" this alternative:

> "The Court has thoroughly considered the relevant law, expert
> declarations, the parties' memoranda, and has reviewed the 198 Items in
> this motion. . . . The Court has reviewed all of the disputed items
> individually."

(Order at 2 n. 3 (emphasis added).) Deferring resolution of IBM's motion would have made it

impossible for IBM properly to prepare its case.

67

<u>Second</u>, SCO argues that Judge Wells should have considered ordering "the providing of more complete source code information and extending IBM's time (or discovery)". (Obj. at 52-53.) At oral argument, Judge Wells directly inquired as to SCO's ability to provide more information:

> "Is SCO in possession of - can SCO provide additional specificity with regard to any of these items . . . . Is this all you've got?"

(James Ex. 14 at 75-76.)  SCO stated that it had no more information to provide:

> " . . . Do we have today, version, file and line, which Mr. Marriott expects, on methods and concepts . . . the answer is no."

(James Ex. 14 at 76.)  Thus, the transcript indicates that Judge Wells evaluated giving SCO yet another bite at the proverbial apple.  The reason she did not do so, we submit, is that SCO had been given ample opportunity to do so and permitting it to do so would have resulted in substantial delay in the proceedings--which by itself would have been prejudicial to IBM.

<u>Third</u>, SCO argues that Judge Wells should have considered denying IBM's motion without prejudice to renewal after the close of expert discovery.  In his declaration, SCO's Mr. Rochkind stated:

> "I will timely submit my expert report, which will offer fully explored opinions about IBM's disclosures formed during the work I have done over the last year."

(James Ex. 2¶ 20.)  At oral argument SCO stated:

> "[Expert discovery] should be allowed to run its course and to see what that expert discovery turns up with."

(James Ex. 14 at 52-53.)  Again, Judge Wells made perfectly clear in the Order that she considered all of SCO's arguments.[28]  (Order at 2 n. 3.)  Here again, deferral of IBM's motion would simply have given SCO an unfair advantage during the expert phase of the case.

Contrary to SCO's suggestion, there is ample authority for this Court to limit SCO's evidence.  See, e.g., Kern River, 2005 WL 3257509, at *2-4 (affirming district court's decision "preclud[ing], pursuant to Rule 37, [defendant] from introducing at the trial any expert evidence or documents not produced during discovery" where defendant's failure "prejudiced [plaintiff] in its ability to conduct discovery, prepare for trial and cross-examine [defendant's] witnesses");  Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 274 (S.D.N.Y. 2003) (Ellis, M.J.) ("preclud[ing] [defendants] from introducing evidence on the question of damages" because the defendants' failure "to provide relevant data [has impaired] plaintiffs' ability to present their case").[29]  Judge Wells was fully empowered to protect the integrity of the Court's orders (with

---

[28] But even if (contrary to fact) Judge Wells "did not . . . expressly consider less severe sanctions" in her Order, the Tenth Circuit has made clear that dismissal will be upheld if the record makes clear (as it does here) that the court considered it.  See Lopez-Bignotte v. Ontivero, 42 Fed. Appx. 404, 407 (10th Cir. 2002).

[29] See also Tenen v. Winter, 15 F. Supp. 2d 270, 272-73 (W.D.N.Y. 1998) (affirming magistrate's order "that the defendants [be] precluded from presenting any evidence at trial of the alleged defamation by plaintiffs" where "the defendants [sic] had failed to provide discovery concerning interrogatories he was court ordered to answer on the subject of his allegation that the plaintiffs made defamatory statements"); Pentalpha Macau Commercial Offshore Ltd. v. Reddy, No. C 03-5914, 2005 WL 2989273, at *2-4 (N.D. Cal. Nov. 3, 2005) (affirming magistrate judge's order "that [defendant] shall not to use as evidence at trial, at a hearing, or on a motion, any . . . information that [defendant] did not disclose . . . in his original interrogatory responses" where defendant's interrogatory "responses were inadequate and vague"); King-Hardy v. Bloomfield Bd. of Educ., No. Civ.3:01CV979, 2002 WL 32506294, at *4 (D. Conn. Dec. 8, 2002) ("preclud[ing] [plaintiff] from introducing documents that could be considered responsive to [defendant's] requests at trial" because plaintiff's "[f]ailure to produce documents . . .[was] a violation of the pretrial order").

which the Disputed Items plainly did not comply) and to limit the prejudice caused by SCO's

failure to specify its claims.

### Conclusion

For the foregoing reasons, IBM respectfully requests that the Court deny SCO's

Objections to the Magistrate Court's Order of June 28, 2006.

DATED this 14th day of August, 2006.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of Counsel:
INTERNATIONAL BUSINESS MACHINES CORPORATION
Jennifer M. Daniels
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

70

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2006, a true and correct copy of the foregoing was sent by U.S. Mail, postage pre-paid, to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

_____
Amy F. Sorenson

408636.1

71