# ADDENDUM A

## Addendum A

06/13/2003    IBM serves interrogatory asking SCO to "identify, with specificity (by product, file and line of code, where appropriate) . . . any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused". (IBM's First Set of Interrogs. No. 1.)

09/16/2003    IBM serves interrogatory asking SCO to "identify, with specificity (by file and line of code), (a) all source code . . . to which Plaintiff has rights" and to "state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights". (IBM's Second Set of Interrogs. and Second Request for Produc. of Docs., Interrog. Nos. 12-13.)

10/01/2003    Following SCO's failures to comply with IBM's requests, IBM moves to compel, arguing that SCO failed to "identify the files and lines of code that IBM has allegedly misappropriated". (IBM's Mem. in Supp. of Mot. to Compel Disc. at 3.)

11/06/2003    IBM makes a second motion to compel, asking that SCO be required to particularize its claims. (IBM's Mem. in Supp. of Second Mot. to Compel Disc.)

12/05/2003    At the hearing on IBM's motions to compel, the Court orders SCO to provide responses that "identify, with specificity, the source codes that you are claiming form the basis for your action." (12/05/2003 Hr'g Tr. at 53.)

12/12/2003    The Court issues a formal order requiring SCO "[t]o respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories . . . [and] [t]o identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM." (12/12/2003 Order at 2.)

02/05/2004    In IBM's report to the Court on SCO's alleged compliance with the December 12, 2003 Order, IBM argues that the "primary problem with [SCO's] Revised Response, however, is that: (1) SCO refuses to disclose from what lines of UNIX System V code these alleged contributions are supposed to derive . . . and (2) a number of the allegedly improper contributions are not disclosed with adequate particularity (e.g., SCO claims IBM improperly disclosed 'SMP' but does not specify the files or lines of code allegedly 'dumped' into Linux, or the files and lines of Linux in which they are supposedly found." (IBM's Report on SCO's Compliance with the Court's Dec. 12, 2003 Order at 3-4.)

02/06/2004    At the hearing on SCO's compliance with the Court's December 12, 2003 Order, IBM argued that SCO had failed to comply with the Court's requirement that SCO "identify by file and line of code, what it is they say [IBM] took from Unix System Five, and where it is exactly in Linux that they say that [IBM] put that." (02/06/2004 Hr'g Tr. at 5.) IBM argues that SCO failed "to link up the A.I.X. Dynix code which they say we dumped into Linux with the System Five code from which they say it is derived." (02/06/2004 Hr'g Tr. at 6.)

- 1 -

| | |
|---|---|
| 03/03/2004 | Following the hearing on SCO's compliance with the Court's December 12, 2003 Order, the Court again orders SCO to "provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix" and "to provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived". (03/03/2004 Order at 2.) |
| 05/18/2004 | Based on SCO's continued failure to comply, IBM moves for partial summary judgment, arguing that SCO "did not detail the nature of its alleged rights, including whether and, if so, how it derives from UNIX code (i.e., by listing—line by line—the versions, files and lines of UNIX code from which the listed Linux code allegedly derives)". (IBM's Mem. in Supp. of Its Cross-Mot. for Part. Summ. J. on Its Claim for Decl. J, of Non-Infringement at 27.) |
| 06/23/2004 | In opposing SCO's motion to compel, IBM argues that SCO is requesting discovery to obscure the fact that it has failed "to identify the precise lines of Linux code in which it claims rights, and the precise lines of code in the UNIX software from which SCO alleges the Linux code is copied or derives." (IBM's Resp. to SCO's Mem. Regarding Disc. at 13.) |
| 02/08/2005 | The Court defers summary judgment but states that "it is astonishing that SCO has not offered any competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights through IBM's Linux activities." (02/08/2005 Order at 10.) |
| 03/25/2005 | In support of its proposed scheduling order, IBM argues that both parties should be required to "identify and match up the allegedly infringing and allegedly infringed material by version, file and line of code." IBM proposes that "the Court should set deadlines for both parties to disclose the particulars of their claims (first by an interim deadline and then by a final deadline) before the close of all fact discovery." (Mem. in Supp. of IBM's Proposed Scheduling Order at 5, n.4 and at 6.) |
| 04/01/2005 | SCO opposes IBM's proposal. (04/01/2005 Mem. in Supp. of SCO's Proposed Scheduling Order at 9-12.) |
| 04/21/2005 | At oral argument, IBM reiterates its position that "it is critical that the Court enter a proposed scheduling order that includes a provision which requires both parties to disclose the allegedly misused material, whatever it is, by a date certain, and that the parties then have an opportunity subsequent to the disclosure of that allegedly misused material to take discovery with respect to that material." (04/21/2005 Hr'g Tr. at 93.) |
| 07/01/2005 | The Court adopts IBM's proposal to set interim deadlines for the disclosure of all allegedly misused material. (07/01/2005 Order.) The Court sets October 28, 2005 as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material". The Court sets December 22, 2005 as the "Final |

|  | Deadline for Parties to Identify with Specificity All Allegedly Misused Material". (07/01/2005 Order at 4.) |
|---|---|
| 09/02/2005 | Despite having received from IBM hundreds of millions of lines of source code (which SCO could have used to comply with the Court's orders), SCO once again demands that IBM produce hundreds of millions of lines of additional code, programmer's notes and design documents, which IBM ultimately produced. (SCO's Renewed Mot. to Compel.) |
| 10/28/2005 | SCO serves its Interim Disclosures, which like its prior discovery responses concerning the allegedly misused materials, fails to describe all of the allegedly misused materials by version, file and line of code. |
| 12/05/2005 | Upon review of SCO's Interim Disclosures, IBM immediately notifies SCO that it failed "to identify the allegedly misused material by version, file and line of code", "to identify and match up the allegedly infringing and allegedly infringed material by version, file and line of code", "to identify the material alleged to have been contributed improperly by version, file and line of code", and to identify, "to the extent the allegedly contributed material is not Unix System V code, but is in any sense alleged to have been based on or resulted from Unix System V code, the version, file and line of Unix System V code from which the allegedly contributed material is alleged to derive or result." (12/05/2005 Letter from T. Shaughnessy to T. Normand at 1.) |
|  | IBM notifies SCO that unless SCO complies with the specificity required by the Court's many orders, "IBM intends to ask the Court to preclude SCO from pursuing any claims regarding allegedly misused material not properly disclosed on or before December 22, 2005." (12/05/2005 Letter from T. Shaughnessy to T. Normand at 2.) |
| 12/22/2005 | SCO serves its Final Disclosures, again largely failing to describe all of the allegedly misused materials by version, file and line of code. |

## Addendum B

| Items | System V | | | AIX | | | Dynix | | | | Linux | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 |  |  |  |  |  |  |  |  |  |  | * | * |  |
| 6 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 7 |  |  |  |  |  |  |  |  |  |  |  | * |  |
| 8 |  |  |  |  |  |  |  |  | x |  |  | * |  |
| 8 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 9 |  |  |  |  |  |  |  |  |  | ** |  |  |  |
| 10 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 11 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 12 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 13 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 14 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 15 |  |  |  |  |  |  |  |  |  |  |  | * |  |
| 16 |  |  |  |  |  |  |  |  |  |  |  | † |  |
| 17 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 18 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 19 |  |  |  |  |  |  |  |  |  |  |  | * |  |
| 20 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 21 |  |  |  |  |  |  |  |  |  |  | * | x |  |
| 22 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 23 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 24 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 25 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 26 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 27 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 28 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 29 |  |  |  |  |  |  |  | x |  | ** | x | x |  |
| 30 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 31 |  |  |  |  |  |  |  |  |  |  | * | x |  |
| 32 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 33 |  |  |  |  |  |  |  |  |  |  | * | x |  |
| 34 |  |  |  |  |  |  |  |  |  |  | x | x |  |
| 35 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 36 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 37 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 38 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 39 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 40 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 41 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 42 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 43 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 44 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 45 |  |  |  |  |  |  |  |  |  |  |  | x |  |
| 46 |  |  |  |  |  |  |  |  |  |  |  | x | x |

| Items | System V | | | | | | | | Unix | | | | Linux | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | M | E | F | L | M | E | F | L | M | E | F | L | M | F | |
| 47 | | | | | | | | | | | | | | x | |
| 48 | | | | | | | | | | | | | * | x | |
| 49 | | | | | | | | | | | | | | x | |
| 50 | | | | | | | | | | | | | | x | |
| 51 | | | | | | | | | | | | | | x | |
| 52 | | | | | | | | | | | | | | x | |
| 53 | | | | | | | | | | | | ** | | x | |
| 54 | | | | | | | | | | | | | | x | |
| 55 | | | | | | | | | | | | ** | | x | |
| 56 | | | | | | | | | | | | | | x | |
| 57 | | | | | | | | | | | | | | x | |
| 58 | | | | | | | | | | | | | | x | |
| 59 | | | | | | | | | | | | | | x | |
| 60 | | | | | | | | | | | | | | x | |
| 61 | | | | | | | | | | | | | | x | |
| 62 | | | | | | | | | | | | | | x | |
| 63 | | | | | | | | | | | | | | x | |
| 64 | | | | | | | | | | x | | | | | |
| 65 | | | | | | | | | | | | | | x | |
| 66 | | | | | | | | | | | | | | x | |
| 67 | | | | | | | | | | | | | | x | |
| 68 | | | | | | | | | | | | | | x | |
| 69 | | | | | | | | | | | | | | x | |
| 70 | | | | | | | | | | | | | | x | |
| 71 | | | | | | | | | | | | | | x | |
| 72 | | | | | | | | | | | | | | x | |
| 73 | | | | | | | | | | | | | * | x | |
| 74 | | | | | | | | | | | | | | x | |
| 75 | | | | | | | | | | | | | * | x | |
| 76 | | | | | | | | | | | | | | x | |
| 77 | | | | | | | | | | | | | | x | |
| 78 | | | | | | | | | | | | | | x | |
| 79 | | | | | | | | | | | | | | x | |
| 80 | | | | | | | | | | | | | | x | |
| 81 | | | | | | | | | | | | | | x | |
| 82 | | | | | | | | | | | | | | x | |
| 83 | | | | | | | | | | | | | x | x | |
| 84 | | | | | | | | | | | | | * | x | |
| 85 | | | | | | | x | | | | | | | x | |
| 86 | | | | | | | | x | | | | | | x | |
| 87 | | | | | | | | | | | | | | x | |
| 88 | | | | | | | | | | | | | | x | |
| 89 | | | | | | | | | | | | | | x | |
| 90 | | | | | | | | | | | | | | x | |
| 91 | | | | | | | | | | | | | | | |
| 92 | | | | | | | | | | | | | | | |

| Items | System | | | ATC | | | Levin | | | | Linux | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | V | F | L | V | F | | V | F | | | V | L | L |
| 93 | | | | | | | | | | | | x | |
| 94 | | | | | | | | | | | | x | |
| 95 | | | | | | | | | | | | x | |
| 96 | | | | | | | | | | | | x | |
| 97 | | | | | | | | | | | | x | |
| 98 | | | | | | | | | | | | * | |
| 99 | | | | | | | | | | | | * | |
| 100 | | | | | | | | | | | x | x | |
| 101 | | | | | | | | | | | | x | |
| 102 | | | | | | | | | | | | x | |
| 103 | | | | | | | | | | | | x | |
| 104 | | | | | | | | | | | | x | |
| 105 | | | | | | | | | | | | x | |
| 106 | | | | | | | | | | | | x | |
| 107 | | | | | | | | | | | | x | |
| 108 | | | | | | | | | | | | x | |
| 109 | | | | | | | | | | | | x | |
| 110 | | | | | | | | | | | | x | |
| 111 | | | | | | | | | | | | x | |
| 112 | | | | | | | | | | | | | |
| 113 | | | | | | | | | | | | | |
| 114 | | | | | | | | | | | | x | |
| 115 | | | | | | | | | | | | | |
| 116 | | | | | | | | | | | | x | |
| 117 | | | | | | | | | | | | | |
| 118 | | | | | | | | | | | | x | |
| 119 | | | | | | | | | | | * | x | |
| 165 | | | | | | | | | | | | | |
| 166 | | | | | | | | | | | | x | |
| 167 | | | | | | | | | | | | x | x |
| 108 | | | | | | | | | | | * | * | |
| 109 | | | | | | | | | | | * | * | |
| 170 | | | | | | | | | | | * | x | |
| 171 | | | | | | | | | | | | | |
| 172 | | | | | | | | | | | | | |
| 173 | | | | | | | | | | | | | |
| 174 | x | | x | | x | x | | | | | | | |
| 175 | | | | | | | | | | | | x | |
| 176 | | | | | | | | | | | | x | x |
| 177 | | | | | | | | | | | | | |
| 178 | | | | | | | | | | | | | |
| 179 | | | | | | | | | | | | x | |
| 180 | | | | | | | | | | | | x | |
| 181 | | | | | | | | | | | | x | |
| 182 | | | | | | | | | | | | | |
| 183 | | | | | | | | | | | | x | |

| Items | System V | | | AIX | | | | Dynix | | | Linux | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | V | F | E | V | F | E | V | F | E | | V | F | E | |
| 187 | | | | | | | | | | | | x | | |
| 188 | | | | | | | | | | | | x | | |
| 189 | | | | | | | | | | | | x | | |
| 190 | | | | | | | | | | | | x | | |
| 191 | | | | | | | | | | | | x | | |
| 192 | | | | | | | | | | | | x | | |
| 193 | | | | | | | | | | | | x | | |
| 232 | | | | | | | | | | | x | x | | |
| 233 | | | | | | | | | | | x | x | | |
| 234 | | | | | | | | | | | x | x | | |
| 235 | | | | | | | | | | | x | x | | |
| 236 | | | | | | | | | | | x | x | | |
| 237 | | | | | | | | | | | x | x | | |
| 238 | | | | | | | | | | | x | x | | |
| 239 | | | | | | | | | | | x | x | | |
| 240 | | | | | | | | | | | x | x | | |
| 241 | | | | | | | | | | | x | x | | |
| 242 | | | | | | | | | | | x | x | | |
| 243 | | | | | | | | | | | x | x | | |
| 244 | | | | | | | | | | | x | x | | |
| 245 | | | | | | | | | | | x | x | | |
| 246 | | | | | | | | | | | x | x | | |
| 247 | | | | | | | | | | | x | x | | |
| 248 | | | | | | | | | | | | x | | |
| 249 | | | | | | | | | | | | x | | |
| 250 | | | | | | | | | | | x | x | | |
| 251 | | | | | | | | | | | x | x | | |
| 252 | | | | | | | | | | | | x | | |
| 253 | | | | | | | | | | | | x | | |
| 254 | | | | | | | | | | | | x | | |
| 255 | | | | | | | | | | | | x | | |
| 256 | | | | | | | | | | | x | x | | |
| 257 | | | | | | | | | | | | * | | |
| 258 | | | | | | | | | | | | x | | |
| 259 | | | | | | | | | | | | x | | |
| 260 | | | | | | | | | | | x | x | | |
| 261 | | | | | | | | | | | | x | | |
| 262 | | | | | | | | | | | | x | | |
| 263 | | | | | | | | | | | | x | | |
| 264 | | | | | | | | | | | | x | | |
| 265 | | | | | | | | | | | x | x | | |
| 266 | | | | | | | | | | | | x | | |
| 267 | | | | | | | | | | | | x | | |
| 268 | | | | | | | | | | | | x | | |
| 269 | | | | | | | | | | | | x | | |
| 270 | | | | | | | | | | | x | x | | |



V = Product version identified
F = File name identified
L = Lines of code identified

\* Indicates that only Linux patch information is given
\*\* Indicates that some lines of code are displayed, but none specifically identified as misused
† Indicates that only Linux Test Project (LTP) information is given

# ADDENDUM C

| | System V | AIX | Dynix | Linux |
|---|---|---|---|---|

**12/12/03 Order**

- "To identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM." (¶4)

- "To respond fully and in detail to Interrogatory Nos. 1-9 as stated in IBM's First Set of Interrogatories." (¶1)

  **Interrogatory 1:** "Please identify, with specificity (by product, file and line of code, where appropriate) all of the alleged trade secrets and any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused. . . ."

  **Interrogatory 3:** "[P]lease . . . describe, in detail, . . . all places or locations where the alleged trade secret or confidential or proprietary information may be found or accessed."

  **Interrogatory 4:** "[P]lease describe, in detail . . . with respect to any code or method plaintiff alleges or contends that IBM misappropriated or misused, the location of each portion of such code or method in any product, such as AIX, in Linux, in open source, or in the public domain."

- "To respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories." (¶2)

  **Interrogatory 12:** "Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux . . . to which plaintiff has rights; and . . . how the code or other material derives from UNIX."

  **Interrogatory 13:** "[P]lease . . . describe in detail how IBM is alleged to have infringed plaintiff's rights . . . ."

**3/3/04 Order**

| System V | AIX / Dynix | Linux |
|---|---|---|
| "SCO is to provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived." (¶3) | "As previously ordered, SCO is to provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix." (¶2) | "SCO is to provide and identify with specificity all lines of code in Linux that it claims rights to." (¶4) |

**7/1/05 Order**

- The court sets an "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material Identified to Date and to Update Interrogatory Responses Accordingly" and a "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material."

# ADDENDUM D

Westlaw.

Slip Copy                                                          Page 1

Slip Copy, 2006 WL 1644709 (D.N.J.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Only the Westlaw citation is currently
available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Allen ANDERSON, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, INC.,
et al., Defendants.
No. 04-3410 (GEB).

June 6, 2006.

Daniel S. Weinstock, Feldman, Shepherd,
Wohlgelernter & Tanner, Esqs., Cherry Hill, NJ,
Rosemary Pinto, Feldman & Pinto, Philadelphia,
PA, for Plaintiff.
Kerri E. Chewning, Archer & Greiner, PC,
Haddonfield, NJ, V. Christopher Hirsch, Buckley &
Theroux, Princeton, NJ, for Defendants.

**MEMORANDUM OPINION**
BROWN, Chief Judge.
*1 This matter comes before the Court upon the
appeal of defendants Correctional Medical
Services, Inc., William Andrade, M.D., James Neal,
M.D., James Ruman, R.N., Rock Welch, Abu
Ahsan, M.D., Fernando Hoyos, M.D., Sheree
Starrett, M.D., Adedayo Odunsi, M.D., and Fran
Green, N.P. (referred to collectively as "Defendants
"), of Magistrate Judge Hughes' Order entered
March 21, 2006. The Court, having considered the
parties' submissions and decided the motion without
oral argument pursuant to Federal Rule of Civil
Procedure 78, and for the reasons set forth below,
will deny Defendants' appeal and affirm Judge
Hughes' Order.

**I. BACKGROUND**

Plaintiff Allen Anderson ("Plaintiff") commenced
this action on or about July 20, 2004, against
Defendants, alleging civil rights and medical
negligence claims as a result of the inadequate care
allegedly provided to Plaintiff during his
incarceration.

On or about January 4, 2005, Plaintiff served an
Affidavit of Merit by Daniel A. Schwartz, D.O., in
support of his claims. (See Certification of Kerri E.
Chewning, Esquire, at Exhibit 1A.) On or about
December 23, 2005, the individual defendants filed
an application to depose Dr. Schwartz. (Id. at
Exhibit 1.) On January 12, 2006, following
Plaintiff's filing of opposition to the application and
the reply of the individual defendants, Magistrate
Judge Hughes conducted a telephone conference
with the parties to discuss the application. (See id.
at Exhibits 3-4.) On March 21, 2006, Magistrate
Judge Hughes entered an Order denying the
individual defendants' application on the basis that
any objections to the Affidavit of Merit were
untimely and therefore the deposition did not
appear reasonably calculated to lead to the
discovery of admissible evidence under Federal
Rule of Civil Procedure 26(b).

On or about April 4, 2006, Defendants filed the
instant appeal of the March 21, 2006 Order.

**II. DISCUSSION**

*A. Standard of Review*

A district court may reverse a magistrate judge's
determination of a non-dispositive issue only if it is
"clearly erroneous or contrary to law." [FN1] 28
U.S.C. § 636(b)(1)(A); see also Fed.R.Civ.P. 72(a);
L. Civ. R. 72.1(c)(1); see also *Cipollone v. Liggett
Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986),
*cert. denied,* 484 U.S. 976 (1987); *Lithuanian
Commerce Corp. v. Sara Lee Hosiery,* 177 F.R.D.
205, 213-14 (D.N.J.1997). A finding is clearly
erroneous "when although there is evidence to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 2

Slip Copy, 2006 WL 1644709 (D.N.J.)
**(Cite as: Slip Copy)**

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F.Supp. 1035, 1037 (D.N.J.1995)(quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district court may not take into consideration any evidence that was not put forth before the magistrate judge when reviewing the magistrate judge's factual determination. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir.1992). Under the clearly erroneous standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently. *Cardona v. Gen. Motors Corp.*, 942 F.Supp. at 971 (quoting *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J.1994). The court, however, will review a magistrate judge's legal conclusions under *de novo* review. *Cooper Hosp./ Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J.1998) (citations omitted).

> FN1. A party objecting to a magistrate judge's order may, within ten days of service of the order, serve and file objections with the district judge. Fed.R.Civ.P. 72(a); L. Civ. R. 72. 1(c)(1)(A).

\*2 "Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion." *Id.*; *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice And Procedure: Civil 2d § 3069 (2d ed.1997)("many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). The deferential standard of review is particularly appropriate in the case where the magistrate judge managed the case from the outset, and thus has a thorough knowledge of the proceedings. *Cooper Hosp.*, 183 F.R.D. at 127 (quoting *Public Interest Research Group v. Hercules, Inc.*, 830 F.Supp. 1525, 1547 (D.N.J.1993), *aff'd on other grounds and rev'd on other grounds*, 50 F.3d 1239 (3d Cir.1995)).

### B. *The Magistrate Judge's Order Did Not Constitute an Abuse of Discretion and Was Not Clearly Erroneous or Contrary to Law*

Defendants largely focus their appeal upon the citation in Judge Hughes' Order to *Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144 (2003). However, the Court notes that this citation was merely one of the bases for denying the application to depose Dr. Schwartz and not the sole dispositive factor in the Order. Furthermore, upon a *de novo* review of Judge Hughes' conclusions of law, and mindful of the deference accorded to the discretion of magistrate judges in cases where the magistrate judge has managed the case from the outset and in cases involving discovery disputes, the Court will affirm Judge Hughes' Order.

The Court notes that following the matter being transferred, Judge Hughes has been the magistrate judge assigned to the case for nearly the entirety of the proceedings, with the case's docket reflecting an assortment of proceedings before Judge Hughes. Accordingly, the Court accepts Judge Hughes' findings of fact reflecting that Defendants failed to raise any objections with the Court as to the sufficiency of Plaintiff's Affidavit of Merit at any prior point in the proceedings, including the Case Management Conference held on March 15, 2005.

Even if, as Defendants contend, the rule set forth in *Ferreira* was merely "proposed" and not adopted by the New Jersey courts, the application in the instant matter was properly dismissed pursuant to Federal Rule of Civil Procedure 26(b). The Rule states that the Court "may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The rule is further subject to several exceptions. *Id.* Specifically, the Court is permitted to limit discovery where "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought...." Fed.R.Civ.P. 26(b)(2)(ii).

\*3 Therefore, on the record before the Court, Judge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                  Page 3

Slip Copy, 2006 WL 1644709 (D.N.J.)
(Cite as: Slip Copy)

Hughes did not abuse his discretion in denying the
application to depose Dr. Schwartz because the
individual defendants had ample opportunity by
discovery in the action to obtain the information
sought prior to filing the application in question.
*Consequently, Defendants' appeal is denied and
Judge Hughes' March 21, 2006 Order is affirmed.*

### III. CONCLUSION

For the foregoing reasons, Defendants' appeal is
denied and the March 21, 2006 Order of the
magistrate judge is affirmed. An appropriate form
of order accompanies this Memorandum Opinion.

D.N.J.,2006.
Anderson v. Correctional Medical Services, Inc.
Slip Copy, 2006 WL 1644709 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 3:04cv03410 (Docket) (Jul. 20, 2004)
• 1:04cv03410 (Docket) (Jul. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

Page 1

**ℍ**
Briefs and Other Related Documents

United States District Court, S.D. New York.
Patricia E. BENEDICT, individually, on behalf of
Duke & Benedict, Inc., on behalf of Adron, Inc.,
and as Trustee under a certain trust instrument dated
October 20, 1976, and Verna B. Neilson,
individually on behalf of Duke & Benedict, Inc., on
behalf of Adron, Inc., and as Trustee under a certain
trust instrument dated October 20, 1976, Plaintiffs,
v.
Louis J. AMADUCCI, individually and as Trustee
under certain trust instruments dated October 20,
1976, Robert L. Amaducci, Vernon G. Browne,
Daniel B. Knock, individually and as Trustee under
certain trust instruments dated October 20, 1976,
George J. Noumair, Richard A. Piemonte, Esq.,
Inc. and Duke & Benedict, Inc., Defendants.
No. 92 Civ. 5239 (KMW).

July 12, 1995.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.
*1 Presently before the court are (1) defendants'
motion to dismiss the sixteen count Amended
Complaint, and (2) plaintiffs' objections to
Magistrate Judge Lee's denial of their motion to file
a Second Amended Complaint. For the following
reasons, defendants' motion to dismiss is granted
and Magistrate Judge Lee's decision is affirmed.
However, plaintiffs will be permitted to replead.

BACKGROUND

Much of the complex history of the familial dispute
that is the subject of this action was recited in the
March 18, 1993 Opinion and Order, in which the
court preliminarily enjoined a proposed transaction
that post-dated the filing of the Amended

Complaint. In essence, the dispute arises out of
certain transactions conducted by the individual
defendants involving the assets of various Benedict
family trusts, annuities, and businesses including the
corporate defendants Adron, Inc. ("Adron") and
Duke & Benedict, Inc. ("D & B").

A. Parties

Plaintiffs are two of the six daughters of Mrs. Elena
Duke Benedict ("Mrs. Benedict"). In 1976 Mrs.
Benedict established six trusts: one for the benefit
of each of her six daughters ("the 1976 Trusts").
There are three co-trustees for each of the 1976
Trusts. Each plaintiff, in addition to being a
beneficiary of one of the 1976 Trusts, serves as a
co-trustee of at least one of the other trusts.[FN1]
Defendant Louis J. Amaducci, Mrs. Benedict's
brother and plaintiffs' uncle, and defendant Daniel
B. Knock ("Knock"), a long-time friend of Mrs.
Benedict, are two co-trustees of each of the 1976
Trusts (collectively, "the trustee defendants").
Plaintiffs and their sisters are also direct or indirect
shareholders in D & B [FN2] and Adron.

D & B is a Delaware corporation formed in 1957 by
plaintiffs' parents as a holding company for the
family's various real estate properties. (Am.Compl.
¶ 21.) Mrs. Benedict is a director of D & B. The
remaining directors of D & B include: defendant
Louis J. Amaducci; defendant Robert L. Amaducci,
Louis J. Amaducci's son,; Mrs. Benedict's eldest
daughter, Elise Browne; defendant Vernon G.
Browne ("Browne"), Elise Browne's husband;
Elena Benedict-Smith, another of Mrs. Benedict's
daughters; defendant Richard A. Piemonte ("
Piemonte"); defendant George J. Noumair, Esq. ("
Noumair"); and John J. Barrett, Esq. Mrs.
Benedict is the chief executive officer of D & B.
Other D & B officers include defendants Louis J.
Amaducci, Browne, Noumair, and Piemonte.
Defendant Knock is a consultant to D & B.
(Am.Compl. ¶ 13.) Defendant Noumair is legal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 2

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),  Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

counsel to the D & B Board of Directors.
(Am.Compl. ¶ 14.)

Adron, a New York corporation, was in the
business of flavor and fragrance manufacturing until
1985 when it sold its facilities. (Am.Compl. ¶ 28.)
Since then, Adron has engaged in only limited
operations, but has incurred very significant costs
associated with the environmental cleanup of its
former East Hanover, New Jersey facility.
(Am.Compl. ¶ 28.) Mrs. Benedict is the chairman
and chief executive officer of Adron. Each of the
individual defendants is a director of Adron. The
officers of Adron, in addition to Mrs. Benedict, are
defendants Robert L. Amaducci, Piemonte and
Browne. (Am.Compl. ¶ 29.) Defendant Noumair
serves as legal counsel to the Adron Board of
Directors. (Am.Compl. ¶ 14.) In 1987, Mrs.
Benedict's daughters assumed Adron's obligations
under an annuity agreement that Adron had entered
into with Mrs. Benedict ("the 1987 annuity").
(Am.Compl. ¶ 30.) The daughters appointed
Piemonte as their agent to manage the 1987 annuity
funds.

*2 Plaintiffs named Adron and D & B as defendants
for the purposes of the derivative claims asserted in
the Amended Complaint. (Am.Compl. ¶¶ 16-17.)

### B. Challenged Transactions

Accepting, as the court must, all factual allegations
contained in the Amended Complaint as true,
*Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007
(2d Cir.1991), the facts are as follows. From the
time D & B was formed, Mrs. Benedict entrusted
her husband with the day-to-day management of D
& B due to her alleged inexperience in corporate
and financial matters. (Am.Compl. ¶ 21.) When
plaintiffs' parents separated in 1980, Mrs. Benedict
assumed only nominal control of D & B and Adron,
ceding actual responsibility for the management of
both companies to the individual defendants and
other close associates and family members.
(Am.Compl. ¶ 27.) Shortly after their father's
death in 1989, the Benedict daughters began to seek
more involvement and direct representation in the
affairs of the family businesses, particularly D & B.

(Am.Compl. ¶¶ 31-32.) Mrs. Benedict then
requested that defendant Piemonte, as Chief
Operating Officer of D & B and Chief Financial
Officer of Adron, arrange quarterly meetings among
herself, Piemonte and her six daughters to discuss
all activities within the Benedict companies and to
provide the daughters with a regular opportunity to
express their views regarding the companies.
(Am.Compl. ¶ 33.) By letter dated June 18, 1990,
Piemonte invited plaintiffs and their sisters to the
first of such meetings scheduled for July 9, 1990.
(Am.Compl. ¶ 34.)

At the July 9, 1990 meeting, Piemonte discussed
aspects of D & B's real estate holdings. At this
meeting Piemonte disclosed that he, and defendants
Louis Amaducci, Robert Amaducci, Vernon
Browne, George Noumair, and non-parties John
Barrett, and Peter Repetti, D & B's independent
auditor, were all members of an investor group
called Quad Associates ("Quad").[FN3] Piemonte
stated that Quad was formed as an "incentive" to D
& B's management and as such, Quad's partners
were given a percentage interest in D & B's real
estate projects at little or no cost to them.
(Am.Compl. ¶ 36.) Plaintiffs and their sister
Diane stated that defendants participation in Quad
and their fiduciary duties to D & B created the
potential for "a dangerous conflict of interest."
(Am.Compl. ¶ 37.)

On July 18, 1990 plaintiffs' sister Diane distributed
minutes of the July 9, 1990 meeting. (Am.Compl.
¶ 40.) On August 1, 1990 defendant George
Noumair, legal counsel to D & B and the 1976
Trusts, sent a letter to all the daughters, "approved"
by Mrs. Benedict, in which Noumair reported that
Mrs. Benedict was displeased with the daughters'
conduct at the July 9 meeting and with Diane's
minutes. (Am.Compl. ¶ 41.) Noumair stated Mrs.
Benedict's intention "to hold no further group
meetings." Noumair's letter also stated that the
meeting "degenerated, in great part, into a critique,
both uninformed and misinformed, of the
management of, and the results achieved by," the
Benedict business entities. (Am.Compl. ¶ 41.)
Plaintiffs allege, upon information and belief, that
defendants importuned Mrs. Benedict to approve
the Noumair letter in order to preserve their control

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                 Page 3

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

of D & B and to prevent plaintiffs and their sisters from obtaining access to corporate records which would enable them to discover defendants' self-dealing and pillage of the family's assets. (Am.Compl. ¶ 42.) Since the July 9, 1990 meeting the plaintiffs have been excluded from participation in the affairs of D & B and the other family businesses. (Am.Compl. ¶ 44.)

*3 The claims in the Amended Complaint are based on a number of transactions involving defendants and the family businesses, which plaintiffs allege provide evidence of defendants' self-dealing.

### 1. Barrister II Associates and Southeast Business Associates Transactions

D & B holds a large interest in two limited partnerships, known as Southeast Business Center Associates and Barrister II Associates, L.P. (" Barrister II"). Quad also holds an interest in each of these two limited partnerships. Marine Midland Bank granted construction loans to both partnerships, payable at the end of September 1990. (Am.Compl. ¶ 45.) By letter dated October 9, 1990-but not actually sent to plaintiffs until faxed to Patricia on October 24, 1990-the trustee defendants advised plaintiffs that, after discussions with Piemonte and Noumair, they had taken it upon themselves to pledge a total of $500,000 from the 1976 Trusts to Marine Midland Bank as additional collateral in order to extend the term of the construction loans to December 31, 1990. (Am.Compl. ¶ 46.) The trustee defendants, on their own behalf and on behalf of the participants in Quad, represented that these funds would no longer be pledged after December 31, 1990. (Am.Compl. ¶ 46.) The facsimile sent to Patricia carried the message that her consent to the transaction was required by 4:30 p.m. that day. (Am.Compl. ¶ 46.) In reliance on the representations of the trustee defendants and pressed without adequate time to react, plaintiffs consented to the pledge. (Am.Compl. ¶¶ 46, 109.) As of the date of the Amended Complaint, August 28, 1992, the $500,000 continues to be pledged as security to Marine Midland Bank. (Am.Compl. ¶ 46.)

In December 1990, defendant Noumair contacted plaintiffs and their sister Elise as trustees of the 1976 Trusts, to solicit permission to borrow $450,000 from each 1976 Trust to refinance the Barrister II property. Based on certain (unspecified) representations of defendants Louis J. Amaducci and Knock, plaintiffs consented to the Barrister II loan. (Am.Compl. ¶ 49.) In addition, the 1987 annuity, acting through Piemonte as agent, loaned Barrister II $725,000. (Am.Compl. ¶ 50.)

### 2. University Commons Limited Partnership Loan

Plaintiffs also object to a February 22, 1991 loan of $350,000 from each of the 1976 Trusts to D & B for use by University Commons Limited Partnership ("UCLP"). (Am.Compl. ¶¶ 51-67.) UCLP was formed in 1989 to develop property owned by D & B in Florida. (Am.Compl. ¶ 51.) D & B is the general partner in UCLP and holds a 50% interest. The remaining 50% is divided among other Benedict family entities, Quad (holding 10%), and a corporation owned by James W. Gardner, "a long-time associate of defendants" (also holding 10%). (Am.Compl. ¶ 52.) By February 1991, UCLP was experiencing severe financial difficulties. First Florida Bank had already lent UCLP $8.3 million and was unwilling to lend any more. The entire amount of First Florida Bank's loan to UCLP was guaranteed by D & B. (Am.Compl. ¶¶ 54-55.)

*4 By letter dated February 20, 1991, defendant Noumair wrote to plaintiffs and their sister Elise Browne as co-trustees of the 1976 Trusts, on behalf of all defendants, advising plaintiffs that D & B had proposed that the 1976 Trusts each lend $350,000 to D & B for use by UCLP. Noumair stated that both "Dan [Knock] and Lou [Louis J. Amaducci] have received the D & B Proposal and have asked me to advise you that they believe it is in the best interests of the trusts and their beneficiaries to accept the proposal and go forward." (Am.Compl. ¶ 58.) In the letter, Noumair advised plaintiffs that the 1976 Trusts would be required to move forward quickly and that the Trustee Defendants would therefore appreciate plaintiffs' "prompt attention to this matter." (Am.Compl. ¶ 58.) On

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 4

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),   Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

February 22, 1991, the day after plaintiffs each received this letter, the funds were withdrawn from the 1976 Trusts without plaintiffs' consent. (Am.Compl. ¶ 59.) In addition, the 1987 Annuity loaned D & B $225,000. (Am.Compl. ¶ 126.)

In letters dated February 24, 1991, plaintiffs made their concerns over the UCLP loan made known to defendants Louis Amaducci, Knock, Piemonte and Noumair. (Am.Compl. ¶¶ 60-62.) Plaintiffs objected to being asked to make decisions affecting the 1976 Trusts without adequate information about the terms of the loan. They also expressed their concern over the suitability of this loan as an investment for the 1976 Trusts, given what they perceived as the high-risk nature of real estate investment and the inability of UCLP to secure further funding from traditional lenders. In letters dated March 3, 1991, plaintiffs formally objected to D & B consummating the transaction by utilizing the funds on March 4, 1991 as planned. (Am.Compl. ¶ 61.)

When plaintiffs met with Piemonte and Mrs. Benedict on March 6, 1991, Piemonte represented that the loan had been necessary because UCLP was in dire need of funds and that the loan was secure because D & B was responsible for repayment. Piemonte also advised plaintiffs that repayment of the loan was further secured by a second mortgage on property owned by D & B in Totowa, New Jersey, for which D & B had recently received an unsolicited cash offer of $6 million. (Am.Compl. ¶ 63.) The mortgage purportedly securing the loan was never executed or recorded. (Am.Compl. ¶ 65.) Further, documents eventually turned over to plaintiffs on June 3, 1991 after repeated requests revealed that the trustee defendants had appointed Piemonte, an agent of the borrower D & B, to act as agent for the 1976 Trusts, the lenders, in negotiating the documentation for the loan. These documents indicate that Piemonte was "negotiating with himself." (Am.Compl. ¶ 67.)

### 3. The Sale of the Totowa Property to Adlease Associates

On December 27, 1985 D & B acquired a parcel of

property in Totowa, New Jersey from a limited partnership owned in part by Hartz Mountain Corp. ( "Hartz"), in a tax-free exchange valued at $3.25 million. (Am.Compl. ¶ 68.) The Totowa property is subject to a net lease through December 31, 1995, and generated rent income of $514,036 per annum as of the date of the Amended Complaint. (Am.Compl. ¶ 69.) By memorandum dated July 26, 1991 defendant Noumair notified the Benedict daughters that Hartz had approached D & B about buying back the Totowa property, but that upon consideration by D & B, it had been decided to sell the Totowa property to a "private investment group on essentially the same terms as offered by Hartz Mountain." (Am.Compl. ¶ 70.) In connection with the UCLP transaction, defendant Piemonte had previously told the daughters that D & B had received an unsolicited cash offer of $6 million for the Totowa property. (Am.Compl. ¶ 63.) The complaint does not specify whether the $6 million offer and the Hartz offer were one and the same. In any event, at a meeting on August 2, 1991 Noumair and Piemonte disclosed that the " private investment group," a limited partnership consisting of Adron as the sole general partner, and the defendants, other D & B employees and certain D & B shareholders as limited partners, would purchase the property for $3.9 million, substantially less than the previous $6 million offer. (Am.Compl. ¶ 71.) Notwithstanding the objections of plaintiffs' counsel, on September 6, 1991 D & B sold the Totowa property for a total purchase price of $3.9 million to Adlease Associates ("Adlease"), a limited partnership consisting of Adron as general partner, and defendants Noumair, Piemonte, Louis Amaducci, and Robert Amaducci among the limited partners. (Am.Compl. ¶ 79.) Plaintiffs allege that in light of the prior $6 million offer for the property, and the annual income attributable to the property, "the purchase price of $3.9 million was well below the Totowa property's fair market value and represents another instance of self-dealing by defendants." (Am.Compl. ¶ 79.)

### 4. Intervale transactions

*5 In addition to the foregoing transactions, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 5

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),  Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

complaint recounts two transactions involving defendant Louis Amaducci and Intervale Enterprises, L.P., the limited partners of which include Louis Amaducci, Robert Amaducci, and William Amaducci (another son of Louis Amaducci). More specifically, the complaint alleges that in January 1988 Louis Amaducci purchased land from Bennell Hanover Associates, an affiliated company of D & B, for $100,000, and that fourteen months later Amaducci contributed this land to Intervale Enterprises for $179,000, recording a profit of $79,000. (Am.Compl. ¶ 81.) The complaint alleges further than in January 1988, *Louis Amaducci purchased land from Orbis Products Corporation*, an affiliated company of Adron, for $80,000, and that fourteen months later Amaducci contributed that land to Intervale for $172,500, again recording a substantial profit. (Am.Compl. ¶ 82.) The complaint alleges that in both of the Intervale transactions recounted above, " defendants violated their fiduciary obligations by selling property of D & B and Adron to Louis Amaducci at prices well below fair market value." (Am.Compl. ¶ 83.)

### C. Claims for Relief

Plaintiffs allege that the individual defendants have engaged in a pattern of self-interested transactions that constitute racketeering activity intended to systematically loot the extended Benedict family of their wealth. (Am.Compl. ¶ 1.) Plaintiffs also allege that defendants have exploited Mrs. Benedict by using undue influence to gain control of the family's business interests and finances. (Am.Compl. ¶ 2.) Counts I through IV of plaintiffs' Amended Complaint assert claims under the Racketeer Influenced Corrupt Organization Act ( "RICO"), 18 U.S.C. § 1961 *et seq.*, against the individual defendants on plaintiffs' behalf and on behalf of Adron and D & B. The remaining twelve counts constitute direct and derivative state law claims against the individual defendants and against Adron and D & B, seeking, *inter alia*, an accounting of each family business entity, removal and replacement of defendants as directors and officers of Adron and D & B, and removal and replacement of the Trustee Defendants as

co-trustees of the 1976 Trusts.

### DISCUSSION

#### A. *Motion to Dismiss*

Defendants seek to dismiss the Amended Complaint on the following grounds: (1) the RICO claims are not pleaded with particularity, Fed.R.Civ.P. 9(b), and fail to state a claim for which relief can be granted, Fed.R.Civ.P. 12(b)(6); (2) the state law *causes of action fail to state a claim for which relief* can be granted, and plaintiffs failed to join necessary parties, Fed.R.Civ.P. 12(b)(7).[FN4] Because the RICO claims form the sole basis for this court's subject matter jurisdiction, the court addresses those claims first.

#### 1. *RICO Claims.*

Count I charges the individual defendants with violating 18 U.S.C. § 1962(c), which makes it unlawful for "any person employed or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The enterprise alleged in Count I is "the Benedict family businesses," including D & B, Adron, the 1976 Trusts, the 1987 Annuity, Orbis, and Bennell Hanover Associates [define last three]. Counts II-IV charge defendants with violating § 1962(b), which makes it unlawful for any person through a "pattern of racketeering activity," to " acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which, affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). These counts vary primarily in that each alleges that the defendants acquired or maintained an interest in a different enterprise. Thus, count II alleges that through a pattern of racketeering activity, all six individual defendants have acquired interests in or control of the Benedict family businesses, including the 1976 Trusts, the 1987 Annuity, D & B and Adron; count III alleges that through racketeering activity the individual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 6

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

defendants, excluding Knock, have acquired or maintained an interest in or control of Quad; and count IV alleges that through racketeering activity all six individual defendants have acquired an interest in or control of D & B.

\*6 In order to establish a pattern of racketeering activity, plaintiffs must show that defendants committed at least two predicate acts that are among those enumerated in the RICO statute. 18 U.S.C. §§ 1961(1), 1961(5). Plaintiffs allege instances of mail and wire fraud, securities fraud, and commercial bribery as the requisite predicate acts of racketeering. As discussed below, plaintiffs' Amended Complaint is deficient with respect to all the alleged predicate acts.

### a. Mail and wire fraud

The elements of mail fraud are: "(1) the existence of a scheme to defraud; and (2) the knowing use of interstate mails or transmission facilities in furtherance of the fraud." *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 227 (S.D.N.Y.1992). Wire fraud requires, in addition, that a communication cross state lines. *Id.* The first element of the offenses, the existence of a scheme to defraud, requires "fraudulent or deceptive means, such as material misrepresentation or concealment." *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 512 (S.D.N.Y.1987).

Federal Rule of Civil Procedure 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Where, as here, plaintiffs' RICO claims rely in part on mail and/or wire as alleged predicate offenses, Rule 9(b)'s heightened pleading requirements also apply. *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). In order to satisfy Rule 9(b) when alleging mail or wire fraud, plaintiffs must specify the precise statements, who made them, the time and place they were made, and how they misled the plaintiffs. *Equitable Life Assurance Soc'y v. Alexander Grant & Co.,* 627 F.Supp. 1023, 1029 (S.D.N.Y.1985). These requirements are designed,

*inter alia,* to provide each defendant notice of what was allegedly said or written, as well as notice of the alleged conduct of others for which plaintiff seeks to hold a particular defendant jointly and severally liable. *See DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

Rule 9(b) allows scienter to be "averred generally." Nevertheless, plaintiffs must plead facts that "give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987). The Second Circuit Court of Appeals has cautioned that allowing scienter to be demonstrated by inference " 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *O'Brien,* 936 F.2d at 676 (quoting *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990)).

Defendants argue that the complaint fails to satisfy the pleading requirements of Rule 9(b) because it does not differentiate among the defendants. This argument is unavailing, because the defendants' various positions in the numerous Benedict family enterprises render each one liable for the acts of the other. For example, with respect to alleged misrepresentations made in an Offering Memorandum, a plaintiff need not allege a specific connection between each defendant and the fraudulent statement, where the defendants are insiders or affiliates participating in the offer of the securities in question. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). Likewise, courts have sustained a finding of fraud against all the directors of a corporation for statements made by the corporation in public filings and by a sole director in a magazine article. *See Cosmas v. Hasset,* 886 F.2d 8, 13 (2d Cir.1989); *see also Epstein v. Haas Securities Corp.,* 731 F.Supp. 1166, 1177 (S.D.N.Y.1990) (plaintiff may allege fraud by " collective body" such as firm's executive committee); *Mann v. Levy,* 776 F.Supp. 808, 813 (S.D.N.Y.1991) (rejecting individual defendant's argument that complaint not pleaded with particularity with respect to him where time, place and content of statement alleged and where "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 7

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),   Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

speaker was one of at most five persons-all of whom [were] allegedly officers and directors" or agents of the corporation). Here, each of the individual defendants is an officer, director or agent of the entities that comprise the enterprises asserted by plaintiffs in their four RICO claims. (Am.Compl. ¶¶ 107, 142, 146, 152.) Plaintiffs allege that the individual defendants are all senior managers of the family businesses. As such, plaintiffs need not specifically plead the role of each defendant in the alleged fraudulent scheme.

*7 Nevertheless, the Amended Complaint fails to plead fraud with the particularity required by Rule 9(b). The only misrepresentations alleged by plaintiffs, either in the cited instances of mail and wire fraud,[FN5] or otherwise in connection with the fraudulent scheme that the mailings allegedly served, are: (1) that defendants "obtain[ed] plaintiffs' consent to use trust assets as collateral for the Marine Midland Bank loan based on the false assurance that the pledge would extend only to December 31, 1990" (Am.Compl. ¶ 109); (2) that defendants "obtain[ed] loans from the trusts and the annuity to D & B to finance the UCLP venture based on the false assurance that they would be secured by a mortgage on the Totowa property" (Am.Compl. ¶ 109); and (3) that defendants misrepresented that they "were acting in the *interests* of the entities and individuals they purportedly served as fiduciaries" (Am.Compl. ¶ 110.)

The first misrepresentation alleged by plaintiffs is contained in an October 9, 1990 letter from Louis J. Amaducci and Knock which "falsely represented that [the additional collateral pledged in order to extend the term of the construction loans] would no longer be pledged after December 31, 1990." (Am.Compl. ¶ 46.) Although this allegation specifies the time, place and content of the misrepresentation, as required, no facts are provided that could lead to the necessary inference of fraudulent intent *at the time that the statement was made.* Plaintiffs "proceed from the proposition that since certain future acts did not come to pass, defendants never intended to accomplish them.... Such an allegation is merely conclusory." *Johnston v. Norton,* 92 Civ. 6844,

1993 WL 465333, at *17 (S.D.N.Y. Nov. 10, 1993) . Plaintiffs must plead facts giving rise to a strong inference that defendants were aware at the time that the statement was made that the funds would be pledged beyond December 31, 1990.

The pleading of the second misrepresentation alleged by plaintiffs, the false assurance that certain loans were secured by a mortgage on the Totowa property, is also inadequate. Plaintiffs assert that the loan funds in question were withdrawn from the 1976 Trusts on February 22, 1991. (Am.Compl. ¶ 59.) The misrepresentation was allegedly made on March 6, 1991. *Id.* ¶ 63. This timing makes it clear that the loans could not have been "obtain[ed] . .. based on the false assurance" as alleged. Furthermore, since the loan transaction had been completed prior to the alleged misrepresentation, plaintiffs could not have relied on the fraud. Although reliance is not an element of mail or wire fraud, it is essential to a showing that plaintiffs were injured "by reason of" the predicate acts as required by 18 U.S.C. § 1964(c). *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990); *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 229 (S.D.N.Y.1992).

*8 Finally, the alleged misrepresentation that defendants, as fiduciaries, were acting in the " interests" of their principals is clearly not pled with the particularity required to satisfy Rule 9(b). Neither the time, nor the place, nor the speaker of the misrepresentation is specified. Furthermore, the failure of a fiduciary to act in the best interests of his or her principal, without more, gives rise only to a breach of fiduciary duty claim. Plaintiffs will not be permitted to transform such a breach of fiduciary duty claim into a fraud claim by alleging, as the requisite misrepresentation, a fiduciary's protestation no duty was breached.

### b. Securities fraud

Plaintiffs allege that defendants committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 8

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),   Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

thereunder, 17 C.F.R. § 240.10b-5. The alleged fraud took place in connection with (1) the $500,000 note purchased by the 1976 Trusts from the Southeast Business Center Associates and Barrister II Associates to extend the term of construction loans; (2) the $2,700,000 and $725,000 notes purchased by the 1976 Trusts and the 1987 Annuity respectively from D & B for the purpose of financing the Barrister II venture; (3) the $2,100,000 and $225,000 notes purchased by the 1976 Trusts and the 1987 Annuity respectively from D & B for the purpose of financing the UCLP venture.

The securities fraud claims are deficient (as were the mail and wire fraud claims) because they do not satisfy the requirements of Rule 9(b). *See Cosmas,* 886 F.2d at 11 (Rule 9(b) applies to securities fraud pled as RICO predicate act). Plaintiffs cite as misrepresentations the statements that the note purchased to extend the term of construction loans *would be repaid by December 31, 1990,* and that notes in connection with the UCLP financing would be secured by a mortgage on the Totowa property. The pleading of these alleged misrepresentations are inadequate, as discussed *supra* with respect to the mail and wire fraud allegations. The other alleged misrepresentations are statements made by defendants that the various notes were suitable investments for the 1976 Trusts and/or the 1987 Annuity. The time, place and speaker of these alleged statements are not specified.

Plaintiffs' securities fraud claims also fail because the notes in question are not "securities" within the meaning of the 1934 Act. Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), defines "security" very broadly as including "any note," excepting those with terms "not exceeding nine months." A consideration of the congressional purpose in enacting the statute, however, has led courts to narrow that definition. In *Reves v. Ernst & Young,* 494 U.S. 56 (1990), the Supreme Court noted that in enacting the securities laws, "Congress was concerned with regulating the investment market, not with creating a general federal cause of action for fraud." 494 U.S. at 65. Whether notes are to be considered securities within the meaning of Section 3(a)(10) of the 1934 Act thus turns on

whether the notes have been issued in an investment context, in which case they are securities, or whether they have been issued in a commercial or consumer context, in which case they are not. 494 U.S. at 63-65.

**\*9** In *Reves,* the Court adopted the "family resemblance" test formulated by the Second Circuit Court of Appeals, *see Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1137 (2d Cir.1976). According to this test, notes with terms over nine months are presumed to be securities; this presumption may be rebutted, however, if a consideration of four enumerated factors indicates that the notes in question bear a resemblance to certain notes that have been held not to be securities.[FN6] The *Reves* factors are:
(1) the motivations that would prompt a reasonable buyer and seller to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering the application of the security laws unnecessary.

*Pollack v. Laidlaw Holdings, Inc.,* 27 F.3d 808, 811 (2d Cir.), *cert. denied,* 115 S.Ct. 425 (1994).

Assuming, *arguendo,* that the presumption that the notes are securities attaches,[FN7] consideration of the *Reves* factors nevertheless leads me to conclude that the notes in question are not securities within the meaning of the 1934 Act. With regard to the first prong of the family resemblance test, the motivations of the buyer and seller, the *Reves* court stated:
If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a ' security.' "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 9

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),  Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

494 U.S. at 66. Each of the notes in this case was apparently issued as a result of D & B's difficulties in raising cash to meet its various obligations. D & B holds large interests in Southeast Business Center Associates and Barrister II Associates, (Am.Compl. ¶ 45), and is the general partner in UCLP, holding a 50% interest, (Am.Compl. ¶ 52). The notes were used to extend the terms of certain construction loans to Southeast Business Center Associates and Barrister II Associates (Am.Compl. ¶ 46), to refinance a mortgage on Barrister II property (Am.Compl. ¶ 48), and to meet UCLP's obligations on certain loans (Am.Compl. ¶ 56). As plaintiff Patricia Benedict stated in a letter to two of her sisters, the motivation seemingly underlying the purchase of the notes was to "bailout " D & B, (Am.Compl. ¶ 60)–an entity in which plaintiffs, individually and through the 1976 Trusts, hold substantial interests. This indicates that the buyers of the notes were not primarily interested in the profit that the notes would generate, while the seller's purpose was not to raise money for the general use of a business but rather to meet immediate cash obligations.

*10 The second and third *Reves* factors also support a conclusion that the notes are not securities. Plaintiffs do not allege any "plan of distribution" for the notes, and there was no public expectation that the notes would be traded as securities. *See Premier Microwave Corp. v. Comtech Telecommunications Corp.,* 88 Civ. 2570, 1991 WL 12430 (S.D.N.Y. Jan. 28, 1991) (holding that note was not security in the absence of distribution plan and public expectation that note would be traded). Based on a consideration of the *Reves* factors, I hold that the notes in question are not securities for the purpose of the 1934 Act. Therefore, the allegations of securities fraud cannot stand.

### c. Commercial bribery

Plaintiffs' allegations of commercial bribery are contained in a single paragraph of the Amended Complaint, which states:
The RICO defendants, acting individually and in concert, and aiding and abetting one another, wilfully and knowingly engaged in the crime of

Commercial Bribing in the First Degree, in violation of New York State Penal Law § 180.03, by conferring and offering to confer over $1000 in financial benefits upon one another, and upon other fiduciaries and agents of the Benedict family businesses, without plaintiffs' consent, with intent to influence the conduct of the RICO defendants and other fiduciaries and agents of the Benedict family businesses in relation to the Benedict family businesses, and thereby causing economic harm to plaintiffs and the Benedict family businesses in an amount exceeding $250.

(Am.Compl. ¶ 132.)

Plaintiffs' commercial bribery claim need not satisfy the strict pleadings requirements of Rule 9(b), which applies only to claims of fraud or mistake. *See McLaughlin v. Anderson,* 962 F.2d 187, 194 (2d Cir.1992); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* 91 Civ. 2923, 1994 WL 88129, at *12 (S.D.N.Y.1994). Nevertheless, I find that this claim fails to meet even the relatively lenient pleading standards of Federal Rule of Civil Procedure 8(a).

Although Rule 8(a) requires only a "short and plain statement of the claim," such a statement must still " give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The requirements of Rule 8(a) are not satisfied by "a ' bare bones statement' of the legal claim without any supporting facts." *Haber v. Brown,* 774 F.Supp. 877, 878-79 (S.D.N.Y.1991) (citing cases). Plaintiffs' allegation of commercial bribery largely tracks the statutory language and provides no information about what "financial benefits" constituted the alleged bribes. The Amended Complaint also fails to identify which defendant or defendants offered the alleged bribes, which defendant or defendants received them, or what other "fiduciaries and agents" were allegedly involved. I find that plaintiffs' conclusory allegations of commercial bribery are insufficient to meet the requirements of Rule 8(a). *See id.* at 879 (dismissing claim that "support[ed] its allegation ... simply by incorporating terms directly from the statute").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                           Page 10

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),  Fed. Sec. L. Rep, P 98,830
(Cite as: Not Reported in F.Supp.)

**\*11** Because plaintiffs have failed to plead adequately two predicate acts, as required to state a claim under RICO, counts one through four of the Amended Complaint are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Consequently, I do not reach defendants' other arguments with respect to those counts-namely, that plaintiffs have failed to allege adequately (1) the " continuity" required to make out a pattern of racketeering activity, (2) the nexus between the alleged pattern of racketeering activity and the interest or control of an enterprise acquired or maintained by the defendants for purposes of the claims under § 1962(b), and (3) the causal connection between the predicate acts and any injury to plaintiffs. I grant plaintiffs leave to replead to cure the defects in their complaint.

### 2. State Law Claims

Because the RICO counts have been dismissed, plaintiffs' state law claims, which are before the court on the basis of its supplemental jurisdiction, are also dismissed. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966); *Goodman v. Shearson Lehman Bros., Inc.,* 698 F.Supp. 1078, 1087 (S.D.N.Y.1988). I note that defendants have moved to dismiss these claims on other bases as well. If plaintiffs choose to replead, and if the state law claims are raised anew, the court will then consider any motions directed to those claims.

### B. Objections to the Magistrate Judge's Order

On November 4, 1994, plaintiffs moved before Magistrate Judge Lee for leave to file a Second Amended Complaint. The Magistrate Judge denied the motion by endorsed memorandum dated December 16, 1994. Plaintiffs have filed objections to the Magistrate Judge's order.

A magistrate judge's denial of leave to amend a complaint will not be overturned by the district court unless it is shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *Pagano v. Frank,* 983 F.2d 343, 345 (1st Cir.1993); *Reid v.*

*St. Luke's-Roosevelt Hosp. Center,* 94 Civ. 4676, 1995 WL 125387, at \*1 n. 1 (S.D.N.Y. Mar. 22, 1995); *Deron v. Wilkins,* 879 F.Supp. 603, 604 (S.D.N.Y.Miss.1995); *Denmon v. Runyon,* 151 F.R.D. 404, 405 (D.Kan.1993). Although plaintiffs argue that I should review Magistrate Judge Lee's determination under a *de novo* standard, they offer no support in the caselaw for their position, and the great weight of authority, cited *supra,* holds otherwise. Consequently, I review the Magistrate Judge's decision under a clearly erroneous or contrary to law standard.

Plaintiffs moved to amend their complaint by adding new parties and claims, and by adding new allegations of fact to the RICO claims. Magistrate Judge Lee held that plaintiffs would not be allowed to add new parties and claims because allowing them to do so would only delay the case, and because plaintiffs had not shown that they could not, "with the exercise of due diligence," have sought the amendment earlier. As for the new allegations of fact with respect to the RICO claims, Magistrate Judge Lee held that amendment of the complaint in this fashion should await my ruling on the pending motion to dismiss. I have now ruled on the motion to dismiss, *supra,* and have allowed plaintiffs to replead with respect to their original claims. Consequently, the second part of the Magistrate Judge's order is moot.

**\*12** The new parties that plaintiffs sought to add are Peter J. Repetti, Jr., Peter J. Repetti & Co., (together "the Repetti's") and Quad Associates. Plaintiffs claim that D & B financial statements prepared by the Repetti's beginning in 1987 were false and misleading. Plaintiffs assert conclusorily that they did not have the documentation enabling them to conclude that the financial statements at issue were false and misleading until the "second wave" of document production in October 1994. (Mem.Law Supp.Obj. at 7.) They do not say what facts they discovered at this late stage that they did not have access to earlier. With respect to Quad, plaintiffs concede that "Quad's inclusion as a defendant is based generally on facts available to plaintiffs in August 1992 and specific discovery received during the summer of 1993." (Kissane Aff. ¶ 32.) Courts have discretion to deny leave

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 11

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),   Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

to amend after an "inordinate delay" when the party wishing to amend has not met its burden "to provide a satisfactory explanation for the delay." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). I find that the Magistrate Judge's order denying plaintiffs leave to add new parties and claims was not clearly erroneous or contrary to law, and I affirm her decision.

CONCLUSION

The Amended Complaint is dismissed without prejudice. Plaintiffs are granted thirty days from the date hereof to replead in accordance with this Opinion and Order. Magistrate Judge Lee's Order, denying plaintiffs leave to add new parties and claims, is affirmed. Finally, with regard to the recent correspondence from the parties on the subject of plaintiffs' request for additional discovery, this case remains referred to Magistrate Judge Lee for general pre-trial. Any requests for additional discovery should be submitted to the Magistrate Judge.

So Ordered.

FN1. Plaintiff Verna Neilson is a co-trustee of four of the trusts and plaintiff Patricia Benedict is a co-trustee of one of them.

FN2. Mrs. Benedict owns 31.34% of the outstanding shares in D & B, a closely held corporation. Each of the six daughters owns 3.64% of D & B's stock in her own right and an additional 6.71% is owned by each of the 1976 Trusts. The shares held by the daughters directly and through the 1976 Trusts are voted by Mrs. Benedict pursuant to irrevocable proxies under a Shareholders' Agreement dated January 4, 1979. Thus, Mrs. Benedict effectively controls 93.44% of D & B's stock. (Piemonte Aff.Ex. B.)

FN3. Defendant Knock is not a member of Quad. (Am.Compl. ¶ 110.)

FN4. In support of their motion to dismiss, defendants attached affidavits of defendant Piemonte that describe the relationship between the parties and the various Benedict family enterprises and of Mrs. Benedict. Piemonte Aff.; Benedict Aff. Plaintiffs object to the court's consideration of defendants' submissions as outside the scope of their pleading. (Pl.Mem.Opp'n at 9-11.) Defendants respond that their factual submissions are proper given that they are also moving to dismiss pursuant to Fed.R.Civ.P. 12(b)(7), under which a party may introduce factual affidavits to support the argument that a necessary party has not been joined. (Def.Reply Mem. at 2-3.) To the extent that the affidavits controvert factual assertions made in the Amended Complaint, the court ignores both the substance of those assertions and the suggestion that a factual dispute exists. None of the court's determinations with respect to the legal sufficiency of the claims in the Amended Complaint are based upon averments in either of defendants' affidavits.

FN5. The complaint alleges the following instances of mail and wire fraud:
(a) On or about October 9, 1990 and October 24, 1990, the RICO defendants used and caused the use of the mails and telephone wires to convey letters from Louis J. Amaducci and Knock to plaintiffs and Elise B. Browne, together with copies to other parties, including Piemonte, concerning the borrowing of funds from the 1976 Trusts and the use of funds from the 1976 Trusts as collateral in order to extend the term of Marine Midland Bank construction loans in connection with the Merv Blank ventures.
(b) On or about February 20, 1991 the RICO defendants used and caused the use of the mails to convey a letter from defendant Noumair to plaintiffs and Elise Browne advising that use of the 1976 Trusts to finance the UCLP project was in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 12

Not Reported in F.Supp., 1995 WL 413206 (S.D.N.Y.),  Fed. Sec. L. Rep. P 98,830
(Cite as: Not Reported in F.Supp.)

the best interests of the trusts and their
beneficiaries.
(c) On or about June 25, 1991, the RICO
defendants used and caused the use of the
mails to convey letters from defendants
Noumair to plaintiffs, as well as to Louis J.
Amaducci, Knock, Piemonte, and others,
for the purpose of convening a meeting
relating to the 1976 Trusts, the purpose of
which was to quell the opposition to their
conduct and to try to convince the
plaintiffs that they were acting as faithful
and honest fiduciaries.
(d) On or about July 26, 1991, the RICO
defendants used and caused the use of the
mails to convey letters from defendant
Noumair to plaintiffs, as well as to Louis J.
Amaducci, Robert L. Amaducci, Browne,
Piemonte and others.
(e) On or about August 27, 1991, and
September 3, 1991, the RICO defendants
used and caused the use of the mails to
convey letters from defendant Noumair to
plaintiffs' attorney, John H. Whitworth,
regarding examination of records in
connection with the sale of the Totowa
property by D & B to Adlease.
(f) The RICO defendants used or caused to
be used the mails and interstate wire
facilities on numerous other occasions, the
precise dates of which are presently
unknown to plaintiffs, to effectuate the acts
of fraud described ... above.
(Am.Compl. ¶ 112.)

FN6. Types of notes that are not securities
include: " 'the note delivered in consumer
financing, the note secured by a mortgage
on a home, the short-term note secured by
a lien on a small business of some of its
assets, the note evidencing a "character"
loan to a bank customer, short term notes
secured by an assignment of accounts
receivable, or a note which simply
formalizes an open-account debt incurred
in the ordinary course of business
(particularly if, as in the case of the
customer of a broker, it is collateralized.' "
*Reves*, 494 U.S. at 65 (quoting *Exchange*

*Nat'l Bank,* 544 F.2d at 1138).

FN7. As noted *supra*, this presumption
attaches if the notes are for term of over
nine months. The complaint does not
specify the terms of the notes in question.
S.D.N.Y.,1995.
Benedict v. Amaducci
Not Reported in F.Supp., 1995 WL 413206
(S.D.N.Y.),  Fed. Sec. L. Rep. P 98,830

Briefs and Other Related Documents (Back to top)

• 1:92cv05239 (Docket) (Jul. 14, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 1119552 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
*Briefs and Other Related Documents*
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
Charles CAMPBELL, Plaintiff,
v.
MEREDITH CORPORATION, Defendant.
**No. 00-2275-JAR.**

March 7, 2003.

*ORDER GRANTING LEAVE TO SUPPLEMENT
RESPONSE AND DENYING REQUEST FOR
RELIEF PURSUANT TO RULE 56(f)*

ROBINSON, J.
**\*1** This is before the Court on Plaintiff's Request
for Leave of the Court to Supplement Plaintiff's
Response to Defendant's Motion for Summary
Judgment on all Claims to Include an Affidavit in
Support of Rule 56(f) (Doc. 138). Plaintiff seeks to
supplement his response by adding an inadvertently
omitted affidavit in support of the Rule 56(f)
request that he made in his response. The Court will
grant Plaintiff's motion and allow his
supplementation. However, after reviewing the
affidavit and pleadings, the Court finds that relief
pursuant to Fed.R.Civ.P. 56(f) is not warranted in
this case.

Plaintiffs seek a stay pursuant to Fed.R.Civ.P. 56(f),
[FN1] which gives the court discretion to deny a
motion for summary judgment, or allow a party to
stay its response to a summary judgment motion, or
have additional time for discovery, if the party files
an affidavit that states with specificity how "the
desired time would enable [the nonmoving party] to
meet its burden in opposing summary judgment." [FN2]
But, "Rule 56(f) may not be invoked by the
mere assertion that discovery is incomplete or that
specific facts necessary to oppose summary
judgment are unavailable...." [FN3] Nor is an
assertion "that the evidence supporting a [party's]

allegation is in the hands of the [opposing party] ..."
a sufficient showing under Rule 56(f). [FN4]

> FN1. Rule 56(f) of the Federal Rules of
> Civil Procedure states:
> (f) When Affidavits are Unavailable.
> Should it appear from the affidavits of a
> party opposing the motion that the party
> cannot for reasons stated present by
> affidavit facts essential to justify the party's
> opposition, the court may refuse the
> application for judgment or may order a
> continuance to permit affidavits to be
> obtained or depositions to be taken or
> discovery to be had or may make such
> other order as is just.

> FN2. *Jensen v. Redevelopment Agency of
> Sandy City,* 998 F.2d 1550, 1554 (10th
> Cir.1993) (citations omitted).

> FN3. *Pasternak v. Lear Petroleum
> Exploration, Inc.,* 790 F.2d 828, 833 (10th
> Cir.1986).

> FN4. *Weir v. Anaconda Co.,* 773 F.2d
> 1073, 1083 (10th Cir.1985) (quoting *Patty
> Precision v. Brown & Sharpe Mfg. Co.,*
> 742 F.2d 1260, 1264 (10th Cir.1984)).

Plaintiff claims that he is entitled to relief under
Rule 56(f) because of Defendant's failure to comply
with discovery requests and other violations by
Defendant of Fed.R.Civ.P. 30 and 37. These issues
have already been ruled on by the Magistrate Judge.
Judge Waxse's August 14, 2002 Order held that
Plaintiff's motion for an order compelling discovery
was untimely, and Plaintiff failed to show good
cause for allowing the motion to be filed out of
time. Judge Waxse's September 4, 2002 Order
denied Plaintiff's motion for extension of time to
file a motion for reconsideration or motion for
review, motion to stay the Court's Order of August

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 1119552 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

14, 2002, and motion for order compelling
Plaintiff's former counsel to provide Plaintiff with
an affidavit and certain "evidence." The Court held
that Plaintiff failed to show good cause why the
Court should grant either the extension of time or
the stay.

Pursuant to Fed.R.Civ.P. 72(a), Plaintiff had 10
days after being served with the orders to object,
and "a party may not thereafter assign as error a
defect in the magistrate judge's order to which
objection was not timely made." Plaintiff filed the
instant motion on January 30, 2003, seeking to
reargue the issue disposed of by the Magistrate
Judge's August 14, 2002 and September 4, 2002
Orders. The Court finds that Plaintiff's request
pursuant to Fed.R.Civ.P. 56(f) must be denied. The
Court will consider Defendant's motion for
summary judgment based on the pleadings currently
on file in this case.

IT IS THEREFORE ORDERED that Plaintiff's
Request for Leave of the Court to Supplement
Plaintiff's Response to Defendant's Motion for
Summary Judgment on all Claims to Include an
Affidavit in Support of Rule 56(f) (Doc. 138) is
GRANTED.

*2 IT IS FURTHER ORDERED THAT Plaintiff's
request for relief pursuant to Fed.R.Civ.P. 56(f)
shall be DENIED. The Court will consider
Defendant Meredith Corporation's Motion for
Summary Judgment based on the pleadings
currently on file.

IT IS SO ORDERED.

D.Kan.,2003.
Campbell v. Meredith Corp.
Not Reported in F.Supp.2d, 2003 WL 1119552
(D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2:00cv02275 (Docket) (Jun. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Not Reported in F.Supp.2d                                         Page 1

Not Reported in F.Supp.2d, 2003 WL 22928042 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
THE CHASE MANHATTAN BANK, As
Collateral Agent, Plaintiff,
v.
IRIDIUM AFRICA CORPORATION; Iridium
Canada, Inc.; Iridium China (Hong Kong) Ltd.;
Iridium India Telecom Ltd.; Iridium Middle East
Corporation; Iridium Sudamerica Corporation;
Khrunichev State Research and Production Space
Center; Korea Mobile Telecommunications
Corporation; Lockheed Martin Corporation;
Motorola, Inc.; Nippon Iridium (Bermuda) Ltd.;
Pacific Electric Wire & Cable Co., Ltd.; Raytheon
Company; Sprint Iridium, Inc.; Stet-Societá
Finanziaria Telefonica Per Azioni; Thai Satellite
Telecommunications Co., Ltd.; and Vebacom
Holdings, Inc., Defendants.
No. Civ.A. 00-564 JJF.

Nov. 25, 2003.

Stephen E. Jenkins, Regina A. Iorii, of Ashby &
Geddes, Wilmington, Delaware. Barry R. Ostrager,
Mary Kay Vyskocil, David J. Woll, of Simpson
Thacher & Bartlett, New York, New York, Richard
A. Mescon, David Stoelting, of Morgan, Lewis &
Backius LLP, New York, New York, for Plaintiff
The Chase Manhattan Bank, as Collateral Agent, of
counsel.
Richard K. Herrmann, Dale R. Dub e, of Blank
Rome Comisky & McCauley LLP, Wilmington,
Delaware. Garrett B. Johnson, Nader R. Boulos, of
Kirkland & Ellis, Chicago, Illinois, for Defendant
Motorola, Inc., of counsel.

### MEMORANDUM OPINION
FARNAN, J.
*1 Presently before the Court is The Chase
Manhattan Bank's ("Chase") Objections To The
Magistrate Judge's Recommendation To Exclude

Excerpts Of Deposition Testimony Of Richard
Severns. (D.I.745.) For the following reasons, the
Court concludes that the Magistrate Judge did not
commit clear error in granting Motorola, Inc.'s ("
Motorola") motion in limine.

### BACKGROUND

The dispute in this case arises from an $800 million
loan Chase extended to Iridium LLC in 1998 (the "
Chase Loan"). As security for the Chase Loan,
Iridium LLC purportedly pledged, and the Members
allegedly ratified, the Members' Reserve Capital
Call ("RCC") obligations to Chase. Iridium LLC
defaulted on the Chase Loan and, after Chase's
unsuccessful attempt to call the RCC obligations,
Chase instituted the instant action.

In ruling on Motorola's motion in limine, the
Magistrate Judge excluded the deposition testimony
of Rick Severns, a senior Motorola officer and
director of Iridium LLC. (D.I.737.) In his
testimony, Mr. Severns stated that Motorola, in the
course of various meetings (the "2000 Meetings"),
offered unconditionally to pay its RCC obligations
to Chase. The parties dispute whether the 2000
Meetings were settlement meetings. Mr. Severns
also testified that in his opinion, Motorola was
obligated to pay Chase the RCC obligations. By its
Motion, Chase objects to the Magistrate Judge's
order granting Motorola's motion in limine
excluding the statements Mr. Severns made during
the 2000 Meetings. Chase also objects to the
Magistrate Judge's exclusion of Mr. Severns
opinion testimony on whether Motorola was
obligated to pay the RCC obligations to Chase.

### STANDARD OF REVIEW

A district court may overrule a magistrate judge's
decision on a non-dispositive matter only if it was "
clearly erroneous or contrary to law." 28 U.S.C. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2003 WL 22928042 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

636(b)(1)(A). A finding is clearly erroneous if the determination "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data...." *Haines v. Liggett Group Inc.,* 975 F.2d 81, 92 (3d Cir.1992). Further, under Section 636(b)(1)(A), a reviewing district court may not consider evidence and materials not before the magistrate judge. *Id.*

## DISCUSSION

**I. Whether The Magistrate Judge Committed Clear Error In Excluding Mr. Severns's Testimony**

In her order, the Magistrate Judge found that two letters, a letter between Chase and Mr. Severns (the "Chase Letter"), and a letter between the Gateway Investors and Chase (the "Gateway Investors' letter" ) establish that a "dispute" existed over whether Motorola was obligated to pay Chase its RCC obligations. Accordingly, the Magistrate Judge concluded that Mr. Severns's statements in the 2000 Meetings relating to the RCC obligations fell within the purview of Federal Rule of Evidence 408, and therefore, granted Motorola's motion in limine to exclude the testimony. Chase objects to the Magistrate Judge's finding and contends that the 2000 Meetings were not settlement meetings. Instead, Chase contends that the 2000 Meetings were "restructuring meetings," and thus, Mr. Severns's statements in the 2000 Meeting are not excludable under Rule 408. In response, Motorola denotes its agreement with the Magistrate Judge's finding.

*2 In *Affiliated Mfg., Inc. v. Aluminum Co. of Am.,* 56 F.3d 521, 526 (3d Cir.1995), the Third Circuit held that a dispute exists when there is a "clear difference of opinion between the parties...." *Id.* Further, "if application of Rule 408 exclusion is doubtful, [the] better practice is to exclude evidence of compromise negotiations." *Id.* (citing *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987)). In applying these standards to the Magistrate Judge's finding of a dispute over whether Motorola was obligated to pay its RCC obligation

to Chase, the Court concludes that the Magistrate Judge's determination was not clearly erroneous.

Beginning with the Gateway Investors' letter, Chase contends that the Magistrate Judge's reliance on this letter in finding a dispute between Motorola and Chase was erroneous because Motorola is not a Gateway Investor. (D.I. 745 at 4.) For support of its contention, Chase directs the Court to the testimony of Yoshiharu Yashuda, whereby Mr. Yashuda indicates that Motorola was not a Gateway Investor. (D.I. 745; Ex. 2 at 78:14-16.) However, Chase does not allege that Mr. Yashuda's deposition testimony was before the Magistrate Judge; and, because the Court cannot consider evidence that was not before the Magistrate Judge, *see Haines,* 975 F.2d at 92, the Court will not include Mr. Yashuda's testimony in its deliberations.

However, even if Mr. Yashuda's testimony was before the Magistrate Judge, the Court concludes that the statements in the Chase Letter provide sufficient evidence of the existence of a dispute thereby precluding the Court from finding that the Magistrate Judge committed clear error in excluding Mr. Severns's testimony. Chase's Letter states that "[Chase] ... reject[s] the position[ ] taken *by Motorola." (D.I. 765; Ex. C.) Moreover, Mr. Severns's testimony provides that "[o]ne of the things [Motorola] *offered* [to Chase] was to pay the [RCC obligation]." (D.I. 765; Ex. C at 34:20-24; 35: 1-3) *(emphasis* added). These two statements suggest that a dispute existed over whether Motorola was obliged to pay Chase its RCC obligations. Further, although Mr. Severns's statements were made in the context of an attempted restructuring of Iridium LLC,[FN1] they provide the " minimum evidentiary support" for the Magistrate Judge's finding that there was a "dispute" between Chase and Motorola. Accordingly, *in the practice of resolving doubts in favor of exclusion under Rule 408, see Affiliated,* 56 F.3d at 526, the Court will affirm the Magistrate Judge's finding.

> FN1. The context in which Motorola made the offer to pay the RCC obligations may actually support Chase's contention that there was no dispute between Motorola

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22928042 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

and itself. In the 2000 Meetings, Motorola and Chase were apparently attempting to prevent Iridium LLC from entering into bankruptcy. If, in return for its assistance in preventing Iridium LLC from entering bankruptcy Motorola was offering to pay less of its RCC obligation even though it knew that it owed the entirety to Chase, Rule 408 would not apply. See Advisory Committee Notes to the 1972 Proposed Rules ("the policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lesser sum."). However, as noted above, under the clearly erroneous standard, the Court concludes that the Magistrate Judge's finding of a dispute between Motorola and Chase was not "devoid of minimum evidentiary support," see Haines, 975 F.2d at 92, and will affirm her finding.

**II. Whether The Magistrate Judge Committed Clear Error In Finding That Mr. Severns Did Not Have Sufficient Personal Knowledge To Qualify As a Lay Witness**

In her order, the Magistrate Judge found that Chase did not present sufficient evidence to demonstrate that Mr. Severns had the requisite personal knowledge to qualify as a lay witness under Federal Rule of Evidence 701. Specifically, the Magistrate Judge relied upon two facts that Chase did not rebut: 1) that Mr. Severns did not become involved with Iridium until mid-1999 and 2) that Mr. Severns had no involvement with the 1997 and 1998 Amendments to the Iridium LLC Agreement that purportedly gave Chase the right to call the Members' RCC obligations. In its objections, Chase contends that the Magistrate Judge's finding was clearly erroneous because Mr. Severns was a senior Motorola official and a director of Iridium. Therefore, Chase contends that Mr. Severns must have the requisite personal knowledge of Motorola's obligation to pay Chase the RCC obligations.

*3 The threshold issue is whether Mr. Severns's testimony is excluded by Rule 408. Rule 408 provides that statements are not excludable under

this Rule if they are "otherwise discoverable." Fed.R.Evid. 408. In his deposition, Mr. Severns testified that in his opinion Motorola was obligated to pay its RCC obligations to Chase. (D.I. 745; Ex. 1 at 53: 3-11.) This opinion was not part of the settlement or compromise negotiations, and therefore, is not excludable under Rule 408. Accordingly, the dispositive issue on the admissibility of Mr. Severns's opinion testimony is whether Mr. Severns qualifies as a lay witness under Rule 701.

Rule 701 provides that a lay witness may testify as to his or her "opinions or inferences which are ... rationally based on the perception of the witness [and] helpful to a clear understanding of the witness' testimony or the determination of a fact in issue...." Fed.R.Evid. 701. The Third Circuit has interpreted " rationally based on the perception of the witness" to require "firsthand knowledge of the factual predicates that form the basis for the opinion." Government of Virgin Islands v. Knight, 898 F .2d 619, 629 (3d Cir.1993). Applying these principles to Mr. Severns's testimony, the Court concludes that the Magistrate Judge's finding was not clearly erroneous.

Chase has not provided the Court with sufficient evidence to demonstrate that Mr. Severns's opinion is based upon his personal knowledge. As the Magistrate Judge noted, Mr. Severns was not involved with Iridium until after the Chase Loan was complete and the 1997 and 1998 Amendments to the Iridium LLC Agreement were purportedly effectuated. Moreover, in his testimony Mr. Severns states that "any knowledge [he possessed about Motorola's RCC obligations with respect to the Chase Loan] was either gained from Steve Earhart or from counsel." (D.I. 765; Ex. A 50:17-19.) Therefore, the Court concludes that Mr. Severns's opinion was not based upon his personal knowledge.

Based upon Mr. Severns's testimony, his non-involvement in Iridium LLC until mid-1999, and the lack of evidence demonstrating that Mr. Severns had the requisite personal knowledge to qualify as a lay witness under Rule 701, the Court concludes that the Magistrate Judge's finding was not in clear error.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 22928042 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)


CONCLUSION

For the reasons discussed, the Court concludes that
the Magistrate Judge did not commit clear error in
finding that Federal Rule of Evidence 408 precludes
the admissibility of Mr. Severns's deposition
testimony. Further, the Court concludes that the
Magistrate Judge did not commit clear error in
finding that Mr. Severns lacked the requisite
personal knowledge to qualify as a lay witness
under Federal Rule of Evidence 701.

An appropriate Order will be entered.


*ORDER*

WHEREAS Plaintiff The Chase Manhattan Bank ("
Chase") filed Objections To The Magistrate Judge's
Recommendations To Exclude Excerpts Of
Deposition Testimony Of Richard Severns
(D.I.745);

*4 NOW THEREFORE, IT IS HEREBY
ORDERED this 25th day of November, 2003, that
Chase's Objections (D.I.745) are *DENIED.*

D.Del.,2003.
Chase Manhattan Bank v. Iridium Africa Corp.
Not Reported in F.Supp.2d, 2003 WL 22928042
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00564 (Docket) (Jun. 09, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                      Page 1

Not Reported in F.Supp.2d, 2006 WL 1367467 (C.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois.
Johnny COMPTON, Plaintiff,
v.
ILLINOIS DEPARTMENT OF CORRECTIONS,
Defendant.
**No. 02-1397.**

May 16, 2006.

Johnny Compton, Peoria, IL, pro se.

### ORDER

MICHAEL M. MIHM, District Judge.

*1 On April 28, 2006, a Report and Recommendation was filed by Magistrate Judge John A. Gorman in the above captioned case. More than ten (10) days have elapsed since the filing of the Report & Recommendation, and no objections have been made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); and *Video Views, Inc. v. Studio 21, Ltd .,* 797 F.2d 538, 539 (7th Cir.1986). As the parties failed to present timely objections, any such objections have been waived. *Id.*

The Court concurs with the analysis of the Magistrate Judge and finds that Plaintiff has not taken the necessary steps to prosecute this case. As set forth in the Magistrate Judge's Report and Recommendation, Defendant filed a Motion for Sanctions after Plaintiff failed to appear for a properly noticed deposition. In response, Plaintiff filed a Motion to Continue the date of the deposition asserting that he was not able to appear at the deposition because he had suffered a stroke and was under doctor's orders to avoid stressful situations. The Magistrate Judge ordered Plaintiff to file a letter from his physician detailing his condition and explaining when Plaintiff would be available to be deposed. Plaintiff failed to respond

to the Court's order and therefore the Magistrate Judge recommended that this case be dismissed and the Motion for Sanctions be granted.

This Court agrees with the Magistrate Judge's analysis. This case is almost three and a half years old and Plaintiff has not yet been deposed. As recently as this previous December, the Court extended the schedule in this case and set March 31, 2006, as the discovery deadline. Defendant noticed Plaintiff's deposition for March 16, 2006, but Plaintiff failed to appear. Now, Plaintiff has failed to respond to the Court's Order directing him to file supplemental information from his doctor. Moreover, although Plaintiff was sent a copy of the Magistrate Judge's Report and Recommendation, he has failed to object to the recommendation that this case be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation [# 51]. The above-titled action is DISMISSED pursuant to Rule 41(b) and Defendant's Motion for Sanctions is GRANTED. This case is TERMINATED.

C.D.Ill.,2006.
Compton v. Illinois Dept. of Corrections
Not Reported in F.Supp.2d, 2006 WL 1367467 (C.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1190242 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion for Sanctions (Mar. 27, 2006) Original Image of this Document (PDF)

*END OF DOCUMENT*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
David P. EVANS, et al., Plaintiffs,
v.
J. Brian ATWOOD, et al., Defendants.
**No. CIV.A. 96-2746(RMU).**

Sept. 29, 1999.

Raymond Charles Fay, Laura C. Fentonmiller, Bell, Boyd & Lloyd, Washington, D.C., Co-Counsel for the plaintiffs, Mr. David P. Evans et al.
Burton D. Fretz, Washington, D.C., Co-counsel for the plaintiffs, Mr. David P. Evans et al.
Rudolph Contreras, Assistant United States Attorney, Washington, D.C., Counsel for the Defendants, United States Agency for International Development et al.

MEMORANDUM OPINION

Denying the Defendants' Motion for
Reconsideration of Magistrate Judge's August 6,
1999 Decision Permitting Deposition of Carl
Sosebee

URBINA, District J.

I. INTRODUCTION

*1 This case is a class action stating a claim under the Age Discrimination in Employment Act (" ADEA"), 29 U.S.C. §§ 621-634. The plaintiffs, a certified class of former Foreign Service employees, claim that the defendants-the United States Agency for International Development ("USAID" or "the agency") and J. Brian Atwood, the USAID's Administrator [FN1]- discriminated against them in favor of younger workers when the agency conducted a reduction in force ("RIF") in 1993. By order and opinion dated March 22, 1999, this court

dismissed the plaintiffs' disparate-impact claim, holding as a matter of law that the ADEA does not admit of that theory of liability. The court concluded, however, that there existed a material issue of fact as to the plaintiffs' disparate-treatment claim, so that theory of liability survived summary judgment.

FN1. Effective June 30, 1999, Mr. Atwood was succeeded as USAID administrator by J. Brady Anderson.

This case comes before the court on the defendants' motion to reconsider a discovery decision rendered by the Honorable John Michael Facciola, United States Magistrate Judge. On August 6, 1999, Judge Facciola ruled that the plaintiffs are entitled to take the oral deposition of Mr. Carl Sosebee, Agency Counsel for the USAID. The defendants move for reconsideration of that decision pursuant to Local Rule 503 and Fed.R.Civ.P. 72. In the alternative, the defendants ask that if the plaintiffs are permitted to depose Mr. Sosebee, the deposition should be by written rather than oral questions. For the reasons which follow, the court will affirm the decision of Judge Facciola and will deny the defendants' motion.

II. BACKGROUND

Carl Sosebee is an attorney who is employed in the USAID's Office of General Counsel. He is not listed as a counsel of record in this case, but he has been involved with issues related to the challenged RIF. The plaintiffs first served the defendants with a notice of deposition for Mr. Sosebee in December 1997. The plaintiff agreed, however, to postpone the deposition pending this court's review of an order by Judge Facciola concerning the production of documents related to Mr. Sosebee. See Mot. for Reconsideration, Ex. 1. In May 1998 the parties agreed to further postpone the deposition until after they submitted and the court resolved their motions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 2

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

for summary judgment. *Id.,* Ex. 3. After the court ruled on those motions, the plaintiffs served defendants with a notice of deposition for Mr. Sosebee to appear on April 21, 1999. The parties agreed to postpone the deposition again, however, pending the defendants' motion before Judge Facciola for a protective order to preclude the deposition of Mr. Sosebee.

The defendants emphasize that Mr. Sosebee rendered confidential legal advice to the USAID during the period leading up to the 1993 RIF. They contend that his deposition would improperly encroach upon his attorney-client relationship with the agency.

### III. LEGAL STANDARD

#### A. District Court's Review of a Magistrate Judge's Decision

On review by this court, a United States Magistrate Judge's decisions are entitled to great deference, particularly on discovery issues. That deference is especially appropriate where, as here, the magistrate judge has managed the discovery component of the case from the outset and has developed a thorough knowledge of the facts, law and procedural history of the case. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 177 F.R.D. 205, 214 (D.N.J.1997). The district court will set aside a magistrate judge's decision on a nondispositive issue only if it is "clearly erroneous or contrary to law." *See Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 11 (D.D.C.1998); Fed.R.Civ.P. 72(a); Local Rule 503(c); 28 U.S.C. § 636(b)(1)(A). This standard of review requires this court to affirm the magistrate judge's determination on a nondispositive issue unless "on the entire evidence" the district court "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948); *Arakelian v. National Western Life Ins. Co.,* 126 F.R.D. 1, 2 (D.D.C.1989) . This standard has been equated with an abuse-of-discretion standard. *See Doe v. Marsh,* 899 F.Supp. 933, 934 (S.D.N.Y.1995); 12 Wright,

Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 3069.

#### B. Attorney-Client Privilege and the Deposition of an Adversary's Attorney

**\*2** Under the Federal Rules of Civil Procedure, parties are broadly entitled to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980), applies to agency or "in-house" counsel just as it would to any other attorney. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154 (1974); *Mead Data Central v. United States Air Force,* 566 F.2d 242, 253.(D.C.Cir.1977). When consulting with agency counsel, the "Government is dealing with its attorneys as would any other private party seeking advice to protect personal interests and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States Gas Corp.,* 617 F.2d at 863. *See. e.g., Direct Response Consulting Service v. IRS,* 1995 WL 623282 (D.D.C.1982).

Nothing in Federal Rule of Civil Procedure 30(c) exempts a party's attorney from being subject to a deposition. *See Dowd v. Calabrese,* 101 F.R.D. 427, 439 (D.C.Cir.1984). Discovery of opposing counsel may often be improper, however, because " [d]iscovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary." *Upjohn Co. v. United States,* 449 U.S. 383, 396 (1981); *see also Roznitsky v. Schwartz Cobb & Scheinert,* 1999 WL 187074, \*2 (S.D.N.Y.1999) ("We start with the general proposition that attorney depositions are disfavored"). The rationale for this presumption against attorney depositions is that depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case. *See Roznitsky,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

1999 WL 187074 at *2. Accordingly, a party seeking to depose its adversary's counsel must demonstrate the propriety of and need for such a deposition. *See Mike v. Dymon, Inc.,* 169 F.R.D. 376, 378 (D.Kan.1996). In determining whether to permit a party to depose an adversary's attorney, the federal courts typically consider whether the record shows that (1) no other means exist to obtain the information [FN2] ; (2) the information sought is relevant and nonprivileged [FN3]; and (3) the information is crucial to the preparation of the case. [FN4] *See Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986); *Curiale v. Tiber Holding Corp.,* 1997 WL 786446 (E.D.Pa.1997); *M & R Amusements Corp.,* 142 F.R.D. 304, 305 (N.D.Ill.1992).

FN2. *See N.F.A. Corp. v. Riverview Narrow Fabrics,* 117 F.R.D. 83, 86 (M.D.N.C.1987).

FN3. *See MacKnight v. Leonard Morse Hosp.,* 828 F.2d 48, 51 (1st Cir.1987) (information to be elicited in deposition of attorney should be relevant to major issue in case); *West Peninsular Title Co. v. Palm Beach Cty.,* 132 F.R.D. 301, 302 (S.D.Fla.1990) (same).

FN4. *Cf. Johnson Dev. Group v. Carpenters Local,* 130 F.R.D. 348, 352 (D.N.J.1990)

## IV. DISCUSSION

The defendants argue that Mr. Sosebee's deposition is unnecessary and would violate the attorney-client privilege. For the reasons which follow, the court concludes that the Magistrate Judge adequately considered the privilege issue and properly denied the defendants' motion for a protective order.

*3 The defendants contend that the plaintiffs seek Mr. Sosebee's deposition "for no purpose other than to determine what legal advice was requested of him and what legal advice he gave." *See* Mot. for Recon. at 5. Mr. Sosebee, the defendants claim, was "very involved in the early stages of the defense of

this litigation." *Id.* at 8 (citing *Dowd v. Calabrese,* 101 F.R.D. 427, 439-40 (D.D.C.1984) (denying motion to compel deposition of defendants' attorney, who was involved in preliminary stages of case but had not appeared on behalf of defendants since suit was filed, because any testimony he might give would be either privileged or irrelevant)). Therefore, the defendants assert, subjecting Mr. Sosebee to deposition will discourage agencies from seeking legal advice from internal counsel; the result will be either that the agency will make less informed decisions or that it will turn to outside counsel at a higher cost to the taxpayer.[FN5]

FN5. It is not clear how deposition of agency counsel such as Mr. Sosebee would cause agencies to turn to outside counsel. The defendants correctly maintain that the privilege/deposition analysis is the same for agency counsel as for outside counsel, and they accurately state that the Magistrate Judge holds the same view, " Under Magistrate Judge Facciola's analysis it would make no difference if the advice sought would be from inside or outside counsel." *See* Mot. for Recon. at 9 n. 4. Thus under the defendants' own reading of precedent and Judge Facciola's analysis, an agency would not have an incentive to eschew in-house counsel in favor of outside counsel.

In addition to the fear that deposing opposing counsel could chill attorney-client communication, *see Shelton,* 805 F.2d at 1327, there are several other considerations behind the courts' reluctance to allow parties to depose opposing counsel. The court finds, however, that these other considerations have little force in the context of the instant case. For instance, one concern is that "the time involved in preparing for and undergoing such depositions will disrupt counsels' preparation of parties' cases and thus decrease the overall quality of representation." *Kaiser v. Mutual Life Ins. Co. of N.Y.,* 161 F.R.D. 378, 381 (S.D.Ind.1994). This concern is not substantially implicated here, because Mr. Sosebee is not counsel of record and there is nothing to suggest he currently plays a major role in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                           Page 4

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

agency's defense of this action. Another concern is that "such depositions may lead to the disqualification of counsel who may be called as witnesses." *Marco Island Partners v. Oak Dev. Corp.,* 117 F.R.D. 418, 420 (N.D.Ill.1987). This concern, too, has little force in the context of this case, as Mr. Sosebee is not counsel and so cannot be disqualified.

These concerns aside, the defendants contend that none of the agency's decisionmakers has thus far testified that he took any actions based on the advice of Mr. Sosebee. Therefore, the defendants argue, there is no compelling need for Mr. Sosebee's deposition and the court should not risk divulging confidential information which Mr. Sosebee obtained solely in his role as an agency attorney providing legal advice to his client. *See* Mot. for Recon. at 8, 13. The defendants seem to contradict that statement, however, noting Mr. Sosebee's "role in providing legal advice *in support of decision-making* during the RIF ...." *Id.* at 16. In any event, even if no USAID official testified that they relied on Mr. Sosebee's advice with regard to the RIF, the plaintiffs have submitted documentation-discussed *infra*-suggesting that decisionmakers did rely on his advice.

*4 The Magistrate Judge's opinion demonstrates an awareness and consideration of the aforementioned factors for determining whether to permit deposition of an adversary's attorney. The Magistrate properly began his analysis by recognizing that depositions of an adversary's counsel are generally discouraged "if it is not essential and the information could be gained in another manner." *See* Memorandum Order of the Honorable John Michael Facciola dated August 6, 1999 ("Magistrate Order") at 2. In concluding that the deposition of Mr. Sosebee was "absolutely necessary" to the plaintiffs' case, the Magistrate stressed that his determination on that score was based on his familiarity with the details of the case and the documents exchanged by the parties thus far. *See Evans v. Atwood,* 177 F.R.D. 1 (D.D.C.1998) (Magistrate Judge Facciola's decision on applicability of attorney-client and work-product privileges following his review of documents said to be covered by those privileges). Specifically, the Magistrate found that "Sosebee had a crucial role in

organizing and implementing the RIF and his knowledge is at the heart of the controversy regarding the alleged discrimination." *Id.* at 3.

In addition to other evidence in this case, the documents submitted by the plaintiffs in opposition to the instant motion particularly support the conclusion that Mr. Sosebee played an important role in helping the USAID to structure the RIF and to "frame" the RIF to both the RIF'd employees and the public. Electronic-mail correspondence from Mr. Sosebee to agency decisionmakers supports the view that he was an integral part of the agency's preparation of the RIF regulations. For instance, in 1994 and 1995 Mr. Sosebee commented at length on who had authority with regard to the RIF; how precisely to specify the "competitive area" subject to the RIF and what grounds to cite publicly for the RIF. *See* Opp. to Mot. for Recon., Ex. B at 1, Ex. C. Mr. Sosebee also identified portions of draft RIF documents which had vague language and suggested more specific language designed to shield the agency from attack for the manner in which it carried out the RIF or for the nature of those subject to the RIF. *Id.* at 2.

It cannot be said that Mr. Sosebee's testimony is unimportant to the plaintiffs' case because his involvement concerned only "procedural" or "administrative" aspects of the RIF. For example, Mr. Sosebee's correspondence with agency decisionmakers indicates that he was involved in determining "the policy implications of the different ranking criteria" used to rank employees for the RIF. *Id.* at 6. It also appears that he was substantially involved in formulating policy and regulations governing the role of military preferences in the RIF, as well as RIF'd employees' "bumping" or "bump-and-retreat" rights. *Id. See also id.,* Ex. G (Mr. Sosebee's detailed discussion of the circumstances under which career employees whom have reached their maximum "time-in-class" may be granted "limited career extensions" rather than being RIF'd).

*5 Most significant, Mr. Sosebee was involved in the designation of "separate competitive levels for employees in participating [sic] in Agency designated training or developmental programs." *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 5

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

The court finds that this involvement may be especially relevant to the plaintiffs' theory of the case, because exempting trainees from the RIF or setting up different RIF criteria for trainees might arguably be found to favor younger employees at the expense of older employees. In short, the Magistrate's finding that Mr. Sosebee's testimony could be crucial to the plaintiffs' case is well-founded in the record. Moreover, the same documentation which provides examples of Mr. Sosebee's involvement in the structuring of the RIF, also suggests that Mr. Sosebee's extensive knowledge of the way the RIF was developed may *not all be available elsewhere. This court cannot conclude that the Magistrate Judge abused his discretion in finding that Mr. Sosebee's testimony could be quite important to the plaintiffs' case and would not all be available from other sources.*

In ruling that the plaintiffs are entitled to hear Mr. Sosebee's well-informed perspective on the structure and intent of the RIF, the Magistrate was mindful of the defendants' legitimate concerns about attorney-client privilege. The Magistrate expressly reserved the defendants' "right to object when a question arises which implicates a privilege." *See* Magistrate Order at 3. The Magistrate correctly noted that a blanket assertion of the attorney-client privilege is inappropriate here, because the court cannot say that the plaintiffs cannot ask Mr. Sosebee *any* questions which are reasonably likely to lead to the discovery of non-privileged admissible evidence.[FN6][FN7] *Id.* at 3-4. He also noted, however, that the defendants are free to invoke the attorney-client or work-product privilege on a question-by-question basis. Indeed, to afford the defendants an expedited hearing on any privilege objection they may interpose at Mr. Sosebee's deposition, the Magistrate noted, "I will be available to rule on any privilege questions *which may arise during the deposition.*" *Id.* at 4.

FN6. For instance, questions pertaining to *the substance of communications between* Mr. Sosebee and agency officials on matters which are not strictly legal might not be protected by the attorney-client privilege: "[C]ommunications made by and

to [an] in-house lawyer with respect to business matters, management decisions or business advice are not protected by the privilege." *Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 11 (D.D.C.1998). "Because an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel." *Id.* at 12.

FN7. For example, the plaintiffs may be *entitled to question Mr. Sosebee about* underlying facts of which he has knowledge, even if those same facts were the subject of privileged communications between him and agency officials. "[T]he protection of the [attorney-client] privilege extends only to communications and not to facts. * * * The [attorney] cannot be compelled to answer the question, 'What did you say or write to the [client]?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his [client]." *Upjohn Co. v. United States,* 449 U.S. 383, 396 (1981); *see also Allen v. McGraw,* 106 F.3d 582, 603 n. 12 (4th Cir.1998).

In short, the court concludes that the Magistrate did not make any "clearly" erroneous findings or commit any error of law in concluding that the plaintiffs had satisfied the criteria for deposition of an attorney.

## V. CONCLUSION

For the foregoing reasons, the court concludes that Judge Facciola's August 6, 1999 decision denying the defendants' motion for a protective order and allowing the plaintiffs to take the oral deposition of Mr. Sosebee was not clearly erroneous. Accordingly, the defendants' motion to reconsider that decision will be denied and the plaintiffs will be permitted to take the oral deposition of Mr. Sosebee, subject to the conditions set forth in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                      Page 6

Not Reported in F.Supp.2d, 1999 WL 1032811 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

Federal Rules of Civil Procedure and this court's
Pretrial Scheduling and Procedures Order dated
April 13, 1999.

*6 An appropriate *Order* directing the parties in a
fashion consistent with this Memorandum Opinion
is separately and contemporaneously executed and
issued this 29 day of September, 1999.

### ORDER

Denying the Defendants' Motion to Reconsider
Judge Facciola's August 6, 1999 Decision

For the reasons set forth in the court's separately
and contemporaneously executed Memorandum
Opinion,

it is this 28 day of September, 1999,

ORDERED that the defendants' motion to
reconsider Magistrate Judge Facciola's decision of
August 6, 1999 shall be and hereby is DENIED;
and it is

FURTHER ORDERED that the plaintiffs shall be
permitted to take the deposition of Mr. Carl
Sosebee.

SO ORDERED.

D.D.C.,1999.
Evans v. Atwood
Not Reported in F.Supp.2d, 1999 WL 1032811
(D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:96CV02746 (Docket) (Dec. 12, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                      Page 1

Slip Copy, 2006 WL 149027 (W.D.Okla.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,W.D. Oklahoma.
          Billy Joe FIARRIS, Plaintiff,
                        v.
    Everett VAN HOESEN and Stephanie Burks,
                   Defendants.
           **No. CIV-05-0250-HE.**

                 Jan. 18, 2006.

Billy Joe Fiarris, Lexington, OK, pro se.
Stephen L. Geries, Collins Zorn Jones & Wagner
PC, Oklahoma City, OK, for Defendants.

                     *ORDER*

HEATON, J.
*1 Plaintiff Billy Joe Fiarris, a state prisoner,
*instituted this § 1983 action alleging a violation of*
his constitutional rights. Consistent with 28 U.S.C. §
636(b)(1)(B), the matter was referred for initial
proceedings to Magistrate Judge Robert E.
Bacharach, who has issued a Report and
Recommendation, suggesting that a motion to
dismiss filed by the defendants be granted because
the plaintiff failed to exhaust his administrative
remedies, as required by the Prison Litigation
Reform Act. 42 U.S.C. § 1997e(a).

The court concurs with the Magistrate Judge's
analysis that dismissal is appropriate for failure to
*exhaust. The court also notes that the petitioner*
failed to object to the Report and Recommendation
and thus waived his right to appellate review of the
factual and legal issues it addressed. *United States
v. One Parcel of Real Property,* 73 F.3d 1057,
1059-60 (10th Cir.1996), *cert. denied,* 519 U.S.
909, 117 S.Ct. 271, 136 L.Ed.2d 194 (1996). *See* 28
U.S.C. § 636(b)(1)(C); LCvR72.1(a).

Accordingly, the court adopts Magistrate Judge

Bacharach's Report and Recommendation,
GRANTS the defendants' motion to dismiss [Doc. #
23] and DISMISSES the action without prejudice to
refiling. Defendants' motion to deem their motion to
dismiss confessed [Doc. # 26] is STRICKEN as
MOOT.

IT IS SO ORDERED.

           *REPORT AND RECOMMENDATION*

BACHARACH, Magistrate J.
The present action arises under 42 U.S.C. § 1983.
The Plaintiff is a state prisoner and must exhaust
available administrative remedies on all of his
federal claims before they can be entertained here.
Mr. Fiarris failed to comply with this requirement,
prompting the Defendants to move for dismissal. [FN1]
The Plaintiff did not respond, and the
Defendants requested an order treating the motion
to dismiss as "confessed". The Court should grant
the Defendants' motion to dismiss. The suggested
dismissal would moot the Defendants' request for
treatment of the dispositive motion as "confessed".

          FN1. In deciding a Rule 12(b)(6) motion
          based on nonexhaustion, the Court can
          consider the attached administrative
          materials. *See Steele v. Federal Bureau of
          Prisons,* 355 F.3d 1204, 1212 (10th
          Cir.2003), *cert. denied,* 543 U.S. 925, 125
          S.Ct. 344, 160 L.Ed.2d 222 (2004).

Count One of the complaint refers to cruel and
unusual punishment. Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983 at p. 3 (Mar. 2, 2005).
According to the Plaintiff, he has been unable to
obtain pain medication that his brother had
delivered to the jail on December 28, 2004. *Id.* at p.
2. The denial of the medication allegedly
constituted cruel and unusual punishment. *Id.* at p.
3.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    **Page 2**

Slip Copy, 2006 WL 149027 (W.D.Okla.)
**(Cite as: Slip Copy)**

Counts Two and Three involve embezzlement and forgery of documents, which allegedly reflect deliveries of medicine that had never taken place. *Id.* at pp. 2-4.

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2000). The prisoner must plead and prove satisfaction of the exhaustion requirement. *See Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1209-11 (10th Cir.2003), *cert. denied,* 543 U.S. 925, 125 S.Ct. 344, 160 L.Ed.2d 222 (2004). When the prisoner fails to comply with this duty for even a single claim, the Court must ordinarily dismiss the entire action. *See Ross v. County of Bernalillo,* 365 F.3d 1181, 1188-90 (10th Cir.2004).

\*2 The Plaintiff did not respond to the motion to dismiss. But in the complaint and response to the investigative report, Mr. Fiarris presents six arguments on the exhaustion issue. None of the arguments is persuasive.

First, the Plaintiff alleges that he had submitted complaints, but they went unanswered. *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* at p. 5 (Mar. 2, 2005). The Court should reject this allegation because the Plaintiff lacks any supporting evidence [FN2] and the administrative policy only requires a *written response* if the complaint is deemed valid.[FN3]

> FN2. *See Muhammad v. Calbone,* 2005 WL 3196754, Westlaw op. at 1, 3 (10th Cir. Nov. 30, 2005) (unpublished op.) (upholding dismissal of a Section 1983 action for failure to exhaust administrative remedies based on the absence of evidence to support an allegation that the defendants had ignored and refused to address inmates' request and grievance forms). The Plaintiff submitted a copy of the November 29, 2004, complaint. *Main Document,*

Exhibit 2 (Apr. 11, 2005). That copy reflects a response by jailers.

> FN3. *Main Document,* Exhibit 5 (Apr. 11, 2005) ("If complaint is valid, the complaint will be forwarded to the Sheriff for processing .").

Second, Mr. Fiarris states that when he was booked into the detention center, he did not receive a copy of the inmate handbook. *Main Document* at p. 2 (Apr. 11, 2005). But he acknowledges that he has a copy of the handbook and submitted it in response to the undersheriff's investigative report. *Id.* [FN4]

> FN4. Mr. Fiarris complains that jail officials had made a handwritten note amending the handbook and that he was unaware of the change until the filing of the investigative report. *Main Document* at pp. 2-3 (Apr. 11, 2005). The Defendants submitted a copy of the handbook with a written notation stating: "Excessive property to be released after 72 hrs." *Investigative Report,* Exhibit 1 (Mar. 28, 2005). The notation does not relate to the administrative remedies available to Mr. Fiarris.

Third, the Plaintiff argues that 42 U.S.C. § 1997c(a) "shall not apply to Plaintiff or any Inmate under incarceration if their rights has [sic] not been fully expressed to them at the time of being incarcerated." *Id.* at p. 3. This argument is invalid as a matter of law. *See Gonzales-Liranza v. Naranjo,* 76 Fed. Appx. 270, 272-73 (10th Cir. Oct.2, 2003) (unpublished op.) ("This court has previously rejected a prisoner's assertion that the government should have advised him of the need to follow prison administrative procedures." (citation omitted)).

Fourth, the Plaintiff alleges that he had submitted " complaint forms on many occasions, including asking for his Lortabs...." *Main Document* at pp. 3-4 (Apr. 11, 2005). In support, Mr. Fiarris points to his complaint dated November 29, 2004, which refers to three prior complaint forms. *Id.* at p. 4.[FN5]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 3

Slip Copy, 2006 WL 149027 (W.D.Okla.)
(Cite as: Slip Copy)

He does not identify the contents of the three prior forms. But they clearly do not refer to the actions alleged in the present action. This action arose from the Plaintiff's inability to obtain medication brought to the jail by his brother on December 28, 2004. *See supra* pp. 1-2. The November 29, 2004, complaint-along with any administrative requests referenced in that document-would have preceded the brother's delivery of the medication to the jail. *See Brock v. Ortiz*, 113 Fed. Appx. 303, 306 n. 1 (10th Cir. Aug.30, 2004) (unpublished op.) (holding that a grievance could not satisfy Section 1997e(a) because it had been filed prior to the injury alleged in the suit).

> FN5. Mr. Fiarris' copy of the complaint *reflects dissatisfaction with the lack of hygiene packs,* which is not among the claims asserted in the present action. Main Document, Exhibit 2 (Apr. 11, 2005).

Fifth, Mr. Fiarris alleges that a jailer had said on March 28, 2005, that no one would be allowed a copy of the complaint forms. Main Document at p. 6 (Apr. 11, 2005). This allegation is immaterial and inconsistent with the record. Mr. Fiarris initiated the action by the filing of a complaint on March 2, 2005. The issue is whether complaint forms were available to Mr. Fiarris prior to the filing of the complaint on March 2, 2005. Thus, the Plaintiff's argument is immaterial to the exhaustion issue.

*3 The Plaintiff's argument is also incompatible with the record. On November 9, 2005, Undersheriff Buddy Thomas represented that grievance forms are delivered "as soon a[sic] practicable" to inmates whenever requested. Defendants' Special Report at p. 1 (Nov. 9, 2005). Jail administrators have submitted three complaint forms signed by Mr. Fiarris. Exhibits 1-3 (Nov. 9, 2005). One of these forms is dated approximately six months after the jailer had allegedly refused to furnish complaint forms. Defendants' Special Report, Exhibit 3 (Nov. 9, 2005). Thus, the record reflects the availability of forms for Mr. Fiarris.

Sixth, the Plaintiff states that he had submitted an "*inmate request/complaint form*" to obtain the

medication that his brother had brought to the jail. Main Document at p. 8 (Apr. 11, 2005). This statement is insufficient for exhaustion because it is conclusory [FN6] and does not encompass the subject-matter of Counts Two and Three, which involve claims of forgery and embezzlement. *See supra* p. 2.

> FN6. Mr. Fiarris has not supplied any information about the alleged complaint or even disclosed whether it preceded the initiation of the present suit. *See Blay v. Reilly,* 2005 WL 2822458, Westlaw op. at 2 (10th Cir. Oct. 28, 2005) (unpublished op.) (rejecting a conclusory reference to exhaustion based on the prisoner's failure to supply details about the alleged grievance).

The failure to exhaust some or all of the claims requires dismissal of the entire action [FN7] without prejudice.[FN8] This ruling would moot the Defendants' request for treatment of their motion to dismiss as "confessed". As a result, that request should be stricken.

> FN7. *See supra* p. 2.

> FN8. *See Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1213 (10th Cir.2003) ("A dismissal based on lack of exhaustion ... should ordinarily be without prejudice."), *cert. denied,* 543 U.S. 925, 125 S.Ct. 344, 160 L.Ed.2d 222 (2004); *see also Yousef v. Reno,* 254 F.3d 1214, 1216 n. 1 & 1222-23 (10th Cir.2001) (remanding with directions to dismiss the complaint without prejudice based on nonexhaustion of available administrative remedies).

The parties can object to this report and recommendation. To do so, one must file an objection with the Clerk of this Court. The deadline for objections is January 4, 2006. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the suggested ruling.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 149027 (W.D.Okla.)
**(Cite as: Slip Copy)**

*See Moore v. United States,* 950 F.2d 656, 659
(10th Cir.1991); *see also Marshall v. Chater,* 75
F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for
the first time in objections to the magistrate judge's
recommendation are deemed waived.").

The referral to the undersigned is terminated.

Upon affirmance or waiver of the right to appeal,
the Court Clerk should docket the suggested dism
issal as a "prior occasion" for purposes of the
Prison Litigation Reform Act, 28 U.S.C. § 1915(g)
(2000).[FN9]

> FN9. *See Steele v. Federal Bureau of
> Prisons,* 355 F.3d 1204, 1213 (10th
> Cir.2003) (stating that a dismissal for
> nonexhaustion "may constitute a strike for
> purposes of 28 U.S.C. § 1915(g)" (citation
> omitted)), *cert. denied,* 543 U.S. 925, 125
> S.Ct. 344, 160 L.Ed.2d 222 (2004);
> *Jennings v. Natrona County Detention
> Center Medical Facility,* 175 F.3d 775,
> 780 (10th Cir.1999) ("A district court
> dismissal under 28 U.S.C. § 1915(e)(2)(B)
> does not count as a strike until after the
> litigant has exhausted or waived his
> opportunity to appeal.").

Entered this 14th day of December, 2005.

W.D.Okla.,2006.
Fiarris v. Van Hoesen
Slip Copy, 2006 WL 149027 (W.D.Okla.)

Briefs and Other Related Documents (Back to top)

• 5:05cv00250 (Docket) (Mar. 02, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2005 WL 1793768 (W.D.La.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,W.D. Louisiana.
Nouri E. HAKIM
v.
CANNON AVENT GROUP, PLC, et al
No. Civ.A.02-1371.

May 4, 2005.

Eric E. Buether, of Godwin Gruber, LLP, Dallas,
Texas; Michael L. DuBos, of the Boles Law Firm,
Monroe, Louisiana; and Morris E. Cohen, Law
Offices of Morris E. Cohen, of Brooklyn, New
York, for Plaintiff.
Joseph A. Calvaruso, Kenneth S. Weitzman, and
Richard Martinelli, of Chadbourne & Parke LLP,
New York, New York; and Thomas M. Hayes, of
Hayes, Harkey, Smith & Cascio, Monroe,
Louisiana, for Defendants.

RULING

JAMES, J.
*1 On February 2, 2005, Magistrate Judge James D.
Kirk issued a Memorandum Order [Doc. No. 124]
granting Defendants' Motion to Strike the Hakim
Declaration [Doc. No. 108]. On February 22, 2005,
Plaintiff filed a document entitled "Plaintiff's
Objection to Magistrate Judge's Report and
Recommendation [sic] that the Hakim Declaration
Be Stricken," which the Court construes as an
appeal [Doc. No. 128] of the Magistrate Judge's
February 2, 2005 Memorandum Order. On March
9, 2005, Defendants filed a Response to Plaintiff's
Request for Review of the Magistrate Judge's
Memorandum Order.

For the following reasons, the Magistrate Judge's
February 2, 2005 Memorandum Order [Doc. No.
124] is AFFIRMED, and Plaintiff's appeal [Doc.
No. 128] is DENIED.

A magistrate judge's non-dispositive order is
reviewable under the clearly erroneous and contrary
to law standard. 28 U.S.C. § 636(b)(1)(A);
Fed.R.Civ.P. 72(a); *Castillo v. Frank,* 70 F.3d 382,
385-86 (5th Cir.1995).

In his *Memorandum Order* granting the Motion to
Strike the Hakim Declaration, Magistrate Judge
Kirk concluded that Hakim failed to provide a
timely expert report or to submit himself for
deposition, that expert testimony is not needed by
the Court in this case, and that Hakim's testimony is
self-serving, biased, and "of no assistance to the
[C]ourt in understanding the 'technology' involved
regarding the simple device at issue in this case."

In patent infringement suits, the Federal Circuit has
admonished that "claims should preferably be
interpreted without recourse to extrinsic evidence
such as expert testimony ... and that expert
testimony should be received only for the purpose
of educating the judge." *EMI Group North
America, Inc. v. Intel Corp.,* 157 F.3d 887, 892
(Fed.Cir.1998). "In most situations, an analysis of
the intrinsic evidence alone will resolve any
ambiguity in a disputed claim term. In such
circumstances, it is improper to rely on extrinsic
evidence." *C.P. Partnership v. Far West Products,*
Civ. No. 6:97-1337, 1998 WL 998960 (W.D.La.
Aug. 25, 1998) (citing *Vitronics Corp. v.
Conceptronic, Inc.,* 90 F.3d 1576, 1583
(Fed.Cir.1996)). "In construing the claims we look
to the language of the claims, the specification, and
the prosecution history. Extrinsic evidence *may* also
be considered, *if needed* to assist in determining the
meaning or scope of technical terms in the claims."
*Pall Corp. v. Micron Separations, Inc.* 66 F.3d
1211, 1216 (Fed.Cir.1995) (emphasis added;
citations omitted).

In the present case, Magistrate Judge Kirk
determined that the consideration of extrinsic
evidence such as the Hakim Declaration was not
necessary to assist in construing the claims because

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2

Slip Copy, 2005 WL 1793768 (W.D.La.)
(Cite as: Slip Copy)

the technology involved is relatively simple.

Having conducted a review of the entire record, including the memoranda submitted by Defendants and Plaintiff, the Court finds that, under the facts and circumstances of this case, the Magistrate Judge's ruling was not clearly erroneous or contrary to the law.

*2 IT IS HEREBY ORDERED that Plaintiff's appeal [Doc. No. 128] is DENIED and the Magistrate Judge's February 2, 2005 Memorandum Order [Doc. No. 124] granting Defendants' Motion to Strike the Hakim Declaration is AFFIRMED.

MONROE, LOUISIANA, this 3 day of May, 2005.

W.D.La.,2005.
Hakim v. Cannon Avent Group, PLC
Slip Copy, 2005 WL 1793768 (W.D.La.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2743700 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of His Motion for Claim Construction and Msj Scheduling Order (Oct. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 2743697 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Motion for Claim Construction & Msj Scheduling Order (Oct. 4, 2004) Original Image of this Document (PDF)
• 2004 WL 2743696 (Trial Motion, Memorandum and Affidavit) Corrected Response to Defendants' Motion for Protective Order (Apr. 12, 2004) Original Image of this Document (PDF)
• 2004 WL 2743693 (Trial Motion, Memorandum and Affidavit) Response to Defendants' Motion for Protective Order (Apr. 8, 2004) Original Image of this Document (PDF)
• 2004 WL 2743690 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants' Request to Reinstate September 24, 2003 Motion to Compel Discovery (Jan. 20, 2004) Original Image of this Document (PDF)
• 2003 WL 23912993 (Trial Motion, Memorandum and Affidavit) Plaintiff Nouri E. Hakim's Sur-Reply Memorandum of Law in Opposition to Defendants'

Request for Review Under Fed. R. Civ. P. 72(a) and Lr 74.1W of Magistrate Judge's Order Refusing to Bifurcate and Stay Discovery on Willfulness (Nov. 12, 2003) Original Image of this Document (PDF)
• 2003 WL 23912991 (Trial Motion, Memorandum and Affidavit) Reply Memorandum In Support of Defendants' Objections to and Request for Review Under Fed. R. Civ. P. 72(A) and Local Rule 74.1W of Magistrate Judge's Order Refusing to Bifurcate and Stay Discovery on Willfulness (Oct. 21, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23912990 (Trial Motion, Memorandum and Affidavit) Reply Memorandum In Support Defendants' Motion to Compel Discovery from Plaintiff (Oct. 16, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23912989 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law In Opposition to Defendants' Motion to Compel (Oct. 9, 2003) Original Image of this Document (PDF)
• 2003 WL 23912987 (Trial Motion, Memorandum and Affidavit) Plaintiff Nouri E. Hakim's Memorandum of Law In Opposition to Defendants' Request for Review Under Fed. R. Civ. P. 72(a) and LR 74.1W of Magistrate Judge's Order Refusing to Bifurcate and Stay Discovery on Willfulness (Oct. 1, 2003) Original Image of this Document (PDF)
• 2003 WL 23912980 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Its Motion Under Fed. R. Civ. P. 42(B) to Bifurcate Trial and Stay Discovery on the Bifurcated Issues (Jun. 18, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23912977 (Trial Motion, Memorandum and Affidavit) Plaintiff Nouri E. Hakim's Memorandum of Law in Opposition to Defendants' Motion to Bifurcate Trial and Stay Discovery (May 27, 2003) Original Image of this Document with Appendix (PDF)
• 2002 WL 32746149 (Trial Pleading) Reply to Counterclaims (Nov. 7, 2002) Original Image of this Document (PDF)
• 2002 WL 32746147 (Trial Pleading) Answer to Amended Complaint & Counterclaims (Oct. 30, 2002) Original Image of this Document (PDF)
• 2002 WL 32746144 (Trial Pleading) Amended Complaint (Jul. 3, 2002) Original Image of this Document with Appendix (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1793768 (W.D.La.)
(Cite as: Slip Copy)

• 2002 WL 32746139 (Trial Pleading) Complaint
(Jun. 27, 2002) Original Image of this Document
(PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

2006 WL 1072008                                          Page 1

--- F.R.D. ----, 2006 WL 1072008 (S.D.N.Y.)

(Cite as: 2006 WL 1072008 (S.D.N.Y.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re FLAG TELECOM HOLDINGS, LTD.
SECURITIES LITIGATION
This Document Relates to: All Actions
No. 02 CIV. 3400(WCC).

April 19, 2006.

**Background:** Putative class action was brought to recover for misrepresentations in prospectus incorporated into registration statement in connection with initial public offering (IPO). Plaintiffs moved to compel individual defendant to produce certain documents.

**Holdings:** The District Court, William C. Conner, Senior District Judge, held that:
(1) corporation's former senior executive officer in charge of strategic development had sufficient control over requested corporate documents to support order compelling him to produce such documents, and
(2) requested documents were sufficiently relevant to be discoverable.
Motion granted.

**[1] Federal Civil Procedure 170Ak1574**

170Ak1574 Most Cited Cases
Party seeking production of documents bears the burden of demonstrating that the other party has control over the documents sought. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170Ak1574**

170Ak1574 Most Cited Cases
If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have "control," even if the documents are actually in the possession of a non-party. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[3] Federal Civil Procedure 170Ak1574**

170Ak1574 Most Cited Cases
Test for the production of documents is control, not location. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[4] Federal Civil Procedure 170Ak1574**

170Ak1574 Most Cited Cases
Documents may be within the control of a party, for purposes of request for production of documents, even if they are located abroad. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

**[5] Federal Civil Procedure 170Ak1558.1**

170Ak1558.1 Most Cited Cases
Asserted confidentiality of relevant business records is not a proper basis for refusing production of documents.

**[6] Federal Civil Procedure 170Ak1588**

170Ak1588 Most Cited Cases
Foreign corporation's former senior executive officer in charge of strategic development had sufficient control over requested corporate documents to support order compelling him to produce such documents in securities case, although employee handbook indicated that the documents were property of the corporation, and officer had resigned from his position; handbook did not bar employees from obtaining the documents and using them to perform their jobs, and former officer continued to serve corporation as a consultant, and was an officer for over a year after the document requests were made. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1072008                                                    Page 2

--- F.R.D. ----, 2006 WL 1072008 (S.D.N.Y.)

(Cite as: 2006 WL 1072008 (S.D.N.Y.))

**[7] Federal Civil Procedure ⚖═1261**
170Ak1261 Most Cited Cases
Discovery procedures provided by the Hague Convention are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure.

**[7] Treaties ⚖═8**
385k8 Most Cited Cases
Discovery procedures provided by the Hague Convention are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure.

**[8] Federal Civil Procedure ⚖═1574**
170Ak1574 Most Cited Cases
Discovery demand is proper under rule governing production of documents when it is served on a party to the action for documents within their custody or control regardless of where the documents are located. Fed.Rules Civ.Proc.Rule 34, 28 U.S.C.A.

**[9] Federal Civil Procedure ⚖═1588**
170Ak1588 Most Cited Cases
Documents concerning individual defendants' knowledge of corporation's financial position prior to initial public offering of its stock, documents concerning corporation's solvency and bankruptcy, and documents concerning the valuation of corporation's assets and liabilities and the actual or potential market prices of its securities were sufficiently relevant to be discoverable in action based on alleged securities fraud and false and misleading disclosures in corporation's prospectus. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[10] Federal Civil Procedure ⚖═1272.1**
170Ak1272.1 Most Cited Cases
Relevance of matters sought in discovery is to be interpreted broadly and will include any matter that bears on, or that could reasonably could lead to other information that could bear on, any issue that is or may be in the case. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[11] Federal Civil Procedure ⚖═1272.1**
170Ak1272.1 Most Cited Cases
Discovery is not limited to the issues raised in the pleadings. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

Milberg Weiss Bershad & Schulman, LLP, Lead Counsel for Plaintiff and the Class, New York, Brad N. Friedman, Esq., Rachel S. Fleishman, Esq., of Counsel.

Shearman & Sterling LLP, Attorneys for Individual Defendants Andres Bande, Larry Bautista, Lim Lek Suan, Edward McCormack, Edward McQuaid, Daniel Petri and Philip Seskin, New York, Jerome S. Fortinsky, Esq., Panagiotis Katsambas, Esq., of Counsel.

*OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

*1 In the present motion, plaintiffs Peter Loftin, Norman H. Hunter and Joseph Coughlin (collectively, "plaintiffs"), move to compel production of certain documents as well as establish a deadline for completion of initial document discovery pursuant to FED. R. CIV. P. 37(a) against defendants Andres Bande, Edward McCormack, Larry Bautista, Stuart Rubin, Daniel Petri, Edward McQuaid, Philip Seskin and Dr. Lim Lek Suan (collectively, the "individual defendants"). For the reasons stated herein, plaintiffs' motion is granted and the individual defendants have 120 days from the entry of this Court's Order to complete the initial document production.

*BACKGROUND*
The facts of this case are set forth extensively in our previous opinions, familiarity with which is presumed. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F.Supp.2d 377, 379 (S.D.N.Y.2006) ; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F.Supp.2d 429, 434 (S.D.N.Y.2005); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F.Supp.2d 249, 274 (S.D.N.Y.2004). Accordingly, we set forth only the procedural history necessary for decision on the present motion.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1072008                                                                                    Page 3

--- F.R.D. ----, 2006 WL 1072008 (S.D.N.Y.)

(Cite as: 2006 WL 1072008 (S.D.N.Y.))

On March 17, 2005, plaintiffs served their First Request for the Production of Documents to the Individual Defendants (the "Request"). (Friedman Decl., Ex. A.) That Request defined "FTGL" as "FLAG Telecom Group, Ltd. and its predecessors (other than FLAG Telecom Holding Group, Ltd) ...." (Id., Ex. A ¶ 7.) It defined "FTHL" as "FLAG Telecom Holdings, Ltd. and its predecessors [and] successors (other than FTGL) ...." (Id., Ex. A ¶ 8.) The individual defendants served their responses and objections to plaintiffs' Request on April 18, 2005. (Id., Ex. B.) Specifically, the individual defendants objected, in pertinent part, to plaintiffs' definitions of FTGL and FTHL as well as to plaintiffs' instruction that the requested documents include documents located with FTHL or FTGL "to the extent that it attempts to require the Individual Defendants to produce documents that are the property of persons or entities other than themselves." (Id., Ex. B. ¶¶ 5-6, 14.)

On April 27, 2005, plaintiffs' counsel Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), contacted defense counsel Shearman & Sterling LLP ("Shearman & Sterling") to inquire as to whether Shearman & Sterling would accept service of a subpoena duces tecum on FTGL. [FN1] (Katsambas Decl. ¶ 3.) In a series of telephone conferences among the parties' attorneys it became clear that: (1) McCormack, Executive Vice President, Strategy & Corporate Development of FTGL, would not produce any FTGL documents; and (2) FTGL would accept service of the FTHL subpoena duces tecum [FN2] only if it conformed with the substantive provisions of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention"), as adopted by the United Kingdom, and if plaintiffs' stipulated that any and all disputes arising from production under the Hague Convention would be resolved by English courts under English law. (Id. ¶¶ 5-6.) Milberg Weiss apparently refused defendants' conditional offer to accept service and brought the present motion to compel, which seeks an Order pursuant to Fed. R. Civ. P. 37(a) compelling: (1) McCormack "to produce all FTGL documents in his possession, custody, or control" responsive to plaintiffs'

Request; (2) "each of the Individual Defendants to produce documents created during the period from January 1, 1998 through December 31, 1998 that are responsive to the Request"; (3) "each of the Individual Defendants to produce documents that were created between January 1, 1998 and April 1, 2001 concerning the solvency, valuation and/or bankruptcy of FTHL, sought in Requests Nos. 26, 27, and 28"; (4) "each of the Individual Defendants to produce documents regarding the actual or potential market price of FTHL securities, sought in Request No. 35"; and (5) each of the Individual Defendants to complete their respective document productions within 90 days of this Court's order, if one is issued.

*2 In the interim, McCormack has declared that he has resigned from his current executive position effective March 31, 2006, though he may thereafter act as a consultant to FTGL. (McCormack Decl. ¶ 8.)

## DISCUSSION
### I. Standard of Review

[1] Rule 34(a) of the Federal Rules of Civil Procedure provides that a party may serve a request for the production of documents that are in the possession, custody or control of the party upon whom the request is served. The party seeking the production bears the burden of demonstrating that the other party has control over the documents sought. DeSmeth v. Samsung Am., Inc., No. 92 Civ. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb.20, 1998). The parties agree that the central inquiry with respect to plaintiffs' motion to compel is whether McCormack has "control" over FTGL documents. (Pls. Mem. Supp. Mot. Compel at 10; Defs. Mem. Opp. Mot. Compel at 10.) However, there is a stark disagreement over the proper procedure for seeking these documents. [FN3]

[2][3][4][5] The concept of "control" has been construed broadly. Deitrich, 2000 WL 1171132, at *3. "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party." Riddell

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1072008                                                                                    Page 4

--- F.R.D. ----, 2006 WL 1072008 (S.D.N.Y.)

(Cite as: 2006 WL 1072008 (S.D.N.Y.))

*Sports Inc. v. Brooks,* 158 F.R.D. 555, 558 (S.D.N.Y.1994); *see* 8A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2210 (2005). "Rule 37 imposes upon the party resisting discovery the burden of showing that its resistance was substantially justified ...." *Scott v. Arex, Inc.,* 124 F.R.D. 39, 42 (D.Conn.1989). "The test for the production of documents is control, not location." *Marc Rich & Co., A.G. v. United States,* 707 F.2d 663, 667 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983). Documents may be within the control of a party even if they are located abroad. *Id.; see Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918, 920 (S.D.N.Y.1984). The asserted confidentiality of relevant business records is not a proper basis for refusing production. *See generally In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139 (2d Cir.1987). In any event, in this case the parties entered into a Stipulation of Confidentiality.

**II. *McCormack's Control Over the Documents***

[6] Plaintiffs assert that, under the broad definition of control, McCormack "[a]s an officer of FTGL, ... exercises 'control' over FTGL's documents because he almost certainly has the practical ability (and likely the legal right, as well) to access the documents sought." (Pls. Mem. Supp. Mot. Compel at 11.) The individual defendants contend not that McCormack lacks control over some of the requested documents, but that he lacks the authority to produce them because of a corporate confidentiality agreement contained in FTGL's corporate handbook.

The individual defendants claim that McCormack is precluded from producing FTGL documents because the terms of his Employment Agreement, the FTGL Employee Handbook and FTGL's Code of Business Conduct and Ethics prevent him from making "any copy, abstract, summary or précis of the whole or part of any document belonging to the Company." [FN4] (Defs. Mem. Opp. Mot. Compel at 12-15; McCormack Decl., Exs. A-C.) Moreover, the individual defendants indicate that McCormack bears serious consequences if he fails to comply

with the terms of the agreement. [FN5] (Defs. Mem. Opp. Mot. Compel at 14.) The individual defendants also assert, more broadly, that McCormack, as a corporate officer, does not necessarily control the corporation or its documents. (*Id.* at 15.) Therefore, defendants argue that in order to obtain documents from FTGL, a foreign nonparty, plaintiffs must proceed through the Hague Convention. (*Id.* at 18.) This argument, however, rings hollow given not only the public policy problem raised by refusing discovery because of an employment agreement's confidentiality provisions, but also FTGL Employment Agreement's specific provision permitting production "when ordered by a Court or Tribunal of competent jurisdiction or when otherwise required to be disclosed by law." (McCormack Decl., Ex. B at 18.)

*3 Rule 34, as modified by Rule 26(b)(1), permits a party to seek from another party all material reasonably calculated to lead to the discovery of admissible evidence. *See Scott,* 124 F.R.D. at 40. McCormack is a senior executive of FTGL, a former party to the litigation, and certainly has the practical ability to obtain the documents sought by plaintiffs' Request. This ability is not limited to FTGL documents, but also those of FTHL. The individual defendants' attempts to thwart plaintiffs' discovery by conditioning its acceptance of service of process and denying the possession of potentially responsive documents based on the dissolution of FTHL, its reincarnation as FTGL and subsequent purchase by Reliance does indeed lend credence to plaintiffs' "shell game" allegation.

Moreover, the Employee Handbook and the Code of Business Conduct and Ethics only indicate that the relevant documents are the property of FTGL, and not that its employees cannot obtain the documents. Indeed, FTGL employees are permitted to utilize the documents in the course of employment, as they must in order to perform their jobs, and therefore McCormack, as a senior officer of the corporation in charge of strategic development, has the practical ability to obtain them. Nor is this Court swayed by McCormack's recent resignation of his executive position. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1072008                                                                                              Page 5

— F.R.D. —, 2006 WL 1072008 (S.D.N.Y.)

(Cite as: 2006 WL 1072008 (S.D.N.Y.))

individual defendants have known about these requests for almost a year, and have delayed their production during the dispute. Also, McCormack plans to continue his service of FTGL as a consultant. Courts in this Circuit frequently mandate that former executives produce documents, and here, where McCormack was a senior executive for over a year after these document requests where made, this Court will not deny plaintiffs' Request simply because of McCormack's nominal change in status.

The only case the individual defendants cite for the proposition that former executives need not produce corporate materials is *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499 (D.Kan.2001). The court in that case stated that the plaintiff "cannot properly seek to obtain from one entity or individual what belongs to another." *Id.* at 502. However, we note the relatively sparse citation of this case by other courts, as well as the fundamental distinction that here McCormack was, until recently, a current executive of FTGL overseeing the very operations that gave rise to the Complaint.

Therefore, McCormack, if ordered by this Court, could produce the documents without violating his obligations under the Employee Handbook.

**III. *The Hague Convention***

The individual defendants insist that if plaintiffs wish to seek discovery through FTGL they must do so through the Hague Convention. (Defs. Mem. Opp. Mot. Compel at 21.) Specifically, they assert that "discovery by means of Rule 34 is not available with respect to documents that belong to and are in the possession, custody and control of a foreign corporation that is not a party to the case and not otherwise subject to discovery pursuant to the Federal Rules of Civil Procedure." (*Id.* at 18.)

*4 [7][8] "The discovery procedures provided by the Hague Convention, however, are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure." *Dietrich*, 2000 WL 1171132, at *5

(citing *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir.1998)). "When a party seeks to discover documents or things located outside the United States from a foreign party over whom the court has personal jurisdiction, the party seeking production may employ Rule 34 without first resorting to the Hague Convention ...." 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 34.14 (3d ed.2005). Indeed, a discovery demand is proper under Rule 34 when it is served on a party to the action for documents within their custody or control regardless of where the documents are located. *Cooper Indus.*, 102 F.R.D. at 919.

The documents are subject to discovery pursuant to Rule 34 because, as discussed *infra*, McCormack is a party who has control over the corporation's documents irrespective of their location. Individual defendants do not address the considerations of comity in their papers. *See Dietrich*, 2000 WL 1171132, at *5. [FN6] Therefore, McCormack may be compelled to produce the documents under Rule 34 and plaintiffs are not required to proceed under the Hague Convention.

**IV. *The Substance of the Discovery Requests***

[9] There have also been objections to the substance of plaintiffs' discovery requests. Specifically, individual defendants object to the production of documents: (1) from the period of January 1, 1998 through December 31, 1998; [FN7] (2) related to the solvency and bankruptcy of FTHL; and (3) related to the valuation of FTHL assets and liabilities and those documents concerning the actual or potential market prices of FTHL securities.

[10][11] "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevance" is to be interpreted broadly "and will include 'any matter that bears on, or that could reasonably could lead to other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.