Slip Copy

Slip Copy, 2005 WL 2991730 (D.Colo.)
(Cite as: Slip Copy)

instruction was erroneous, but that the error was harmless. *Docket* # 14, Attachment P at 6-7. The court considered that the jury's verdict of guilt on the substantive murder charge could have resulted from the jury finding that Mr. Lee was the principal responsible for James McGregor's death; in that circumstance, the complicity instruction was moot. Or, the jury could have found that another principal shot McGregor, but regardless of who that principal was, the evidence could not have permitted the jury to find that that principal committed only part of the crime. *Id.*

*\*18* The Fourteenth Amendment to the U.S. Constitution guarantees every defendant in state court the right to Due Process. However, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a Due Process violation. The question to be considered is "whether the ailing instruction so infected the entire trial that the resulting conviction violates Due Process." *Middleton v. McNeil,* 541 U.S. 433, 124 S.Ct. 1830, 1832, 158 L.Ed.2d 701 (2004) (internal quotes omitted). This Court must consider whether "the error had a substantial and injurious effect or influence in determining the jury's verdict" and whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Turrentine v. Mullin,* 390 F.3d 1181, 1191 (10th Cir.2004).

Mr. Lee's raises two distinct arguments relating to the complicity instruction. First, he contends that the instruction was defective because it permitted the jury to find complicity without affirmatively identifying who is "the other person," *i.e.* the principal. Mr. Lee does not cite to any legal authority for the proposition that a complicity instruction that does not require the jury to identify the *principal* constitutes a deprivation of Due Process. Absent such authority, this Court is not prepared to find that Due Process requires a jury to affirmatively identify a principal before convicting a defendant of complicity. Indeed, the law appears to be to the contrary. *See e.g. U.S v. Cooper,* 375 F.3d 1041, 1049 (10th Cir.2004) (affirming conviction where prosecution did not specify whether it considered defendant a principal or complicitor); *see also Bernal v. People,* 44 P.3d

184, 212 (Colo.2002) (dissenting opinion) ("it is no longer necessary in this jurisdiction to distinguish principals of various degrees and accomplices"). Thus, this Court finds no Due Process violation on these grounds.

Mr. Lee's second argument is more complex. He contends that the portion of the instruction that permitted a finding of complicity where Mr. Lee had knowledge that another person intended to commit "all or part of" the substantive crime was erroneous. Mr. Lee contends in his Objections, "the 'all or part of' language broadens the crime to driving to the scene of the crime ... under the instruction given, the mere driving to the scene could account for 'all or part of' the crime...." (Emphasis omitted.)

As discussed above, the "all or part of" language is not *per se* erroneous. *Bogdanov* explains that the language is proper where the evidence permits a conclusion that two persons jointly committed a crime, but where neither person individually committed all of the elements necessary to establish the crime. However, the Court of Appeals found that, under the facts of this case, it could not be said that Mr. Lee's co-defendants committed only part of the crime of extreme indifference murder. Under these circumstances, Mr. Lee is correct that the "all or part of" instruction was error. *Bogdanov,* 941 P.2d at 256 ("where one principal alone committed all elements of the crime, we see no need for the jury instruction on complicity to contain the 'all or part of' language"). However, an erroneous instruction does not necessarily require relief. This Court must nevertheless determine whether that error had a substantial and injurious effect or influence in determining the jury's verdict. Considering the totality of the circumstances, the Court concludes that the error did not deny Mr. Lee Due Process.

*\*19* The Court begins with the observation that there is sufficient evidence in the record to support a jury verdict which found Mr. Lee to be liable for extreme indifference murder as a principal. For reasons stated in greater detail below, the jury could reasonably have concluded that Mr. Lee fired the shot that killed James McGregor. Because the jury

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 17

Slip Copy, 2005 WL 2991730 (D.Colo.)
**(Cite as: Slip Copy)**

could have convicted Mr. Lee as a principal, any defects in the complicity instruction are irrelevant, as such an instruction would not have been material to the jury's verdict.

However, assuming that the jury convicted Mr. Lee as a complicitor, rather than a principal, a reasonable jury could not have determined that the Mr. Lee aided and abetted a co-defendant who only committed *part of* the offense. The crime of extreme indifference murder has three elements: (i) that the defendant engaged in conduct posing a grave risk of death to another; (ii) that the defendant did so with universal malice reflecting extreme indifference to human life; and (iii) that the result of that conduct was the death of another person. C.R.S. § 18-3-102(d); *see e.g. People v. Moore,* 902 P.2d 366, 368-69 (Colo.App.1994). The prosecution's theory was that Mr. Lee and Lightner each fired shots at the Roberts vehicle, one using a Tec-9 pistol and damaging the car and injuring Roberts, and the other using a .38 or .357 caliber weapon to fire the shot that killed James McGregor. According to the defense, Locke's videotaped statement to the police placed the Tec-9 in the hands of Mr. Lee, suggesting that Lightner was the principal whose shot killed McGregor. Under these circumstances, however, Lightner committed *all of* the elements of extreme indifference murder, as the act of firing a weapon into a moving car is the type of conduct falling within the definition of extreme indifference, and that conduct resulted in James McGregor's death. *See e.g. People v. Jefferson,* 748 P.2d 1223, 1232 (Colo.1988). If Lightner committed *all of* the elements of the crime of extreme indifference murder, the defect in the complicity instruction was harmless. *See e.g. Bogdanov,* 941 P.2d at 256 (where co-defendant committed *all of* the elements of the principal offense, use of the defective complicity instruction was not plain error).

This is not a situation in which there was evidence to suggest that Mr. Lee intended to assist his co-defendants in performing some act short of murder, which is the situation in which the defective instruction becomes prejudicial. *See e.g. Rodriguez,* 914 P.2d at 276 (defense argument that defendant intended to aid in an assault on the victim, but did

not intend that victim be killed). Qualls' statement to the police indicates that Mr. Lee knew that Brian intended to kill someone at the time they began searching for Roberts' car. The flaw in Mr. Lee's argument on this point is evident from the example he gives. Mr. Lee supposes that the jury might have convicted him by finding that his decision to join the co-defendants in "driving to the scene" constitutes "part of" the crime. The mere act of driving to the scene of the crime is not an action that satisfies any of the elements of the crime of extreme indifference murderit does not pose a grave risk of death, it does not reflect universal malice, and it did not cause the death of James McGregor. Thus, it is not "part of" the crime that could result in Mr. Lee being convicted on a complicity theory. Assuming the jury convicted Mr. Lee as a complicitor, it must have necessarily concluded that Mr. Lee had the requisite mental state to commit the crime of extreme indifference murder, and that he assisted or encouraged his co-defendants to carry out that crime. There is evidence to support such a finding.

**\*20** Mr. Lee contends that the harm done by the erroneous complicity instruction is shown by the inconsistency between the jury's verdicts. Assuming he was not convicted as a principal (an assumption this Court cannot make), he argues that his *conviction as a complicitor would be inconsistent* with the jury's verdict acquitting him of conspiracy to commit extreme indifference murder. On the surface, this argument is appealing, as it is difficult to envision how Mr. Lee could have intentionally aided a co-defendant's commission of the murder without Mr. Lee at least tacitly agreeing to help carry out the crime. However, the U.S. Supreme Court has held that inconsistency in verdicts is not a basis for granting *habeas* relief. *U.S. v. Powell,* 469 U.S. 57, 65-66, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but ... it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. [N]othing in the Constitution would require such a protection"). Cautioned by the Supreme Court, this Court will not attempt to second-guess the jury's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 18

Slip Copy, 2005 WL 2991730 (D.Colo.)
(Cite as: Slip Copy)

decision to convict on one charge and acquit on a similar one. It is sufficient to find that the error in the complicity instruction, to the extent there was any, did not substantially influence the jury's verdict. Mr. Lee's request for *habeas* relief on this ground is denied.

### F. Sufficiency of the evidence

Finally, the Court turns to Claim Seven. The only fully exhausted portion of this claim challenges the sufficiency of the evidence to convict Mr. Lee of extreme indifference murder.

In a *habeas* petition, federal courts can review a claim that there was insufficient evidence at trial to support a conviction. In doing so, the Court must draw all inferences in favor of the prosecution and *grant relief only if it concludes that no reasonable trier of fact could have found all essential elements of the crime beyond a reasonable doubt. Hererra v. Collins,* 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), *citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Considered in the light most favorable to the prosecution, Qualls' statement, by itself, is enough to support the verdict of guilt. It establishes that Mr. Lee knew that his co-defendants intended to murder *Roberts* that evening *when they left the Lee* residence. It also establishes that Brian stated that Mr. Lee had been shooting at the other vehicle during the incident, an act *which* constitutes extreme indifference under Colorado law. These two statements, coupled with evidence that James McGregor was killed, establish all of the elements of extreme indifference murder. The videotaped statement of Locke confirms and the testimony of Nakia Gilmore further confirm that Mr. Lee was in the Lee vehicle during the incident, and Locke's statement also confirms that Mr. Lee was firing a weapon at the Roberts car. For the reasons discussed previously, a reasonable trier of fact could consider this evidence sufficient to constitute extreme indifference murder under either a principal or complicitor theory.

*21 Mr. Lee's Objections on this issue focus on the

fact that the jury never identified who it considered the principal and who it considered the complicitors. As Mr. Lee puts it, "the jury did not ' put the gun in the hand of one of the defendants." ' Although this is true, it is legally irrelevant. As stated previously, there is no constitutional requirement that the jury expressly separate the principals and complicitors in a verdict. More importantly, on *habeas* review, the Court does not require the jury to "put the gun in the hand" of a defendant, it merely examines the record to see if there is evidence which, considered most favorably to the prosecution, puts that gun there. Statements by both Locke and Qualls put a gun in the hand of Mr. Lee, and that is sufficient. Whether that gun was the gun that killed James McGregor, whether Mr. Lee actually fired it, and all the various arguments and positions presented by both counsel were matters of evidence and inference for the jury to weigh, and once the Court finds sufficient evidence in the record to support the jury's conclusions, it cannot second-guess them. *Jackson,* 443 U.S. at 318-19. Such sufficient evidence exists here.

### CONCLUSION

For the foregoing reasons, Mr. Lee's Objections (# 53, 54, 56) are OVERRULED. For the reasons stated herein, the Court ADOPTS the Recommendation (# 52) of the Magistrate Judge that the Petition be dismissed in part and denied in part, and the Court DISMISSES the Fourth Claim, Sixth Claim, and the unexhausted portions of the Seventh Claim in the Petition (# 3), and DENIES the remaining claims. The Clerk of the Court is directed to close this case.

D.Colo.,2005.
Lee v. Watkins
Slip Copy, 2005 WL 2991730 (D.Colo.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00072 (Docket) (Jan. 13, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                Page 1

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
John MANNICK, Plaintiff,
v.
KAISER FOUNDATION HEALTH PLAN, INC.,
et al., Defendants.
**No. C 03-5905 PJH.**

July 31, 2006.

Paul L. Rein, Julie McLean, Patricia Barbosa, Law
Offices of Paul L. Rein, J. Gary Gwilliam, Gwilliam
Ivary Chiosso Cavali & Brewer, Oakland, CA, for
Plaintiff.
Janine Simerly, Francis J. Torrence, Jennifer
Svanfeldt, Kari Erickson Levine, Seyfarth Shaw
LLP, San Francisco, CA, for Defendants.

**ORDER DENYING MOTION FOR
RECONSIDERATION, GRANTING
DEFENDANTS' MOTION IN LIMINE NO. 1,
AND OVERRULING OBJECTIONS TO
RULING ON RULE 37(c) MOTION**
PHYLLIS J. HAMILTON, District Judge.
*1 Before the court are plaintiff's motion for
reconsideration of the June 9, 2006, order granting
defendants' motion for summary judgment,
defendant's motion in limine No. 1 (as to which the
court previously reserved its ruling), and plaintiff's
objections to Magistrate Judge Spero's June 23,
2006, ruling on defendants' Federal Rule of Civil
Procedure 37(c) motion to exclude evidence at trial.
Having read the parties' papers and carefully
considered their arguments, and good cause
appearing, the court hereby GRANTS the request
for leave to file the motion for reconsideration,
DENIES the motion for reconsideration, GRANTS
defendants' motion in limine No. 1, and
OVERRULES the objections.

**BACKGROUND**

Plaintiff John Mannick suffers from advanced-stage
multiple sclerosis, and requires the use of a
wheelchair for locomotion. His left arm and both
legs are immobile. In January 2003 he developed a
viral infection that threatened to cause him to lose
the use of his right arm-his last functioning limb. He
was hospitalized in the medical-surgical ward at
Kaiser Oakland Hospital ("Kaiser Oakland") from
January 2, 2003, through January 8, 2003.

On January 2, 2003, plaintiff requested the
installation of a Hoyer lift and sling in his patient
room, so that he could be transferred from his
wheelchair to his bed and back to his wheelchair. A
lift was brought into his room, but it was not
equipped with a sling, and plaintiff could not use it.
On January 4, 2006, plaintiff's family brought in a
sling for use with the lift.

Also on January 4, 2003, plaintiff's catheter (which
he uses 24 hours a day) failed. He wanted to take a
shower to clean off, but was unable to because the
doorway in his patient bathroom was too narrow to
accommodate his wheelchair and because the
bathroom was not equipped with a roll-in shower. A
The nurses offered to give him a bed bath, but he
insisted on a shower. He was advised by hospital
employees that Kaiser Oakland had no patient
bathroom equipped with a roll-in shower.

On January 7, 2003, hospital employees told
plaintiff that there was an accessible shower on the
4th floor maternity ward (not in use as a maternity
ward at that time). Hospital aides took him to the
4th floor, where they helped him shower. Plaintiff
alleges, however, that the shower was not
sufficiently accessible, as it was excessively small
and was not properly configured for wheelchair
users.

Plaintiff filed this action on December 31, 2003,
against defendants Kaiser Foundation Health Plan,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 2

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

Inc., and Kaiser Foundation Hospitals ("Kaiser" or " defendants"), asserting violations of state and federal law. The complaint alleges two causes of action. In the first cause of action, plaintiff asserts denial of access to public facilities, in violation of California Health & Safety Code §§ 19955, et seq., and California Civil Code § 54.1. Plaintiff alleges that the patient drop-off parking area was inadequately configured, located, and supervised; that there was inadequate disabled van-accessible parking in the hospital parking structure; and that his patient room was inaccessible, with regard to the transfer of disabled persons from their wheelchairs into their beds and back into their wheelchairs, and also with regard to the lack of accessible toilets and showers, the lack of usable door hardware, and the width of the bathroom doors. Plaintiff alleges further that defendants were required to comply with the specifications of Title 24, California Code of Regulations, because Kaiser has carried out alterations or modifications to the hospital and the parking structures during the time Title 24 has been in effect. The complaint seeks injunctive relief pursuant to Civil Code § 55 and Health & Safety Code § 19953; treble damages pursuant to Civil Code § 54.3; and costs and fees pursuant to Health & Safety Code § 19953, Civil Code §§ 54.3 and 55, and Code of Civil Procedure § 1021.5.

*2 The second cause of action, which begins at ¶ 24 of the complaint and continues through ¶ 33, pleads discrimination in violation of Title III of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq. There are no factual allegations in the second cause of action. Instead, in ¶ 24, plaintiff incorporates by reference all previous allegations-including the facts alleged as part of the first cause of action. In ¶ 25, plaintiff describes the 1990 Congressional findings regarding disabled persons, which appear in the ADA at 42 U .S.C. § 12101. In ¶ 26, plaintiff repeats the portion of § 12101 in which Congress describes the overall purpose of the ADA. In ¶ 27, plaintiff describes Title III, and states that Title III defines "public accommodation" in § 12181 as including "professional office of a health care provider, hospital, or other service establishment." In ¶ 28, plaintiff states that § 12182(a) prohibits discrimination in the provisions of goods, services,

facilities, privileges, advantages, or accommodations, on the basis of disability, in places of public accommodation.

In ¶ 29, plaintiff states that the specific prohibitions against discrimination that appear in § 12182(b)(2)(A) include the following provisions, set forth in subsections (ii), (iii), (iv), and (v): [Discrimination includes] a failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 U.S.C. § 12182(b)(2)(A)(ii).[Discrimination includes] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals, because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

42 U.S.C. § 12182(b)(2)(A)(iii).[Discrimination includes] a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities ... where such removal is readily achievable; and

42 U.S.C. § 12182(b)(2)(A)(iv).Where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, [discrimination includes] a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

42 U.S.C. § 12182(b)(2)(A)(v).

Plaintiff then alleges that "[t]he acts and omissions of [d]efendants set forth herein were in violation of [p]laintiff's rights under the ADA, Public Law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

101-336, and the regulations promulgated thereunder, 28 C.F.R. Part 36, [et seq.]."

\*3 In ¶ 30, plaintiff alleges that "the removal of each of the barriers complained of by [p]laintiff as hereinabove alleged, [was] at all times herein mentioned 'readily achievable' under the standards of the Americans With Disabilities Act;" that removal of each of the barriers was required under California law; and that alterations, structural repairs, or additions since January 26, 1993, also triggered independent requirements for removal of barriers under the ADA and under § 19959 of the Health & Safety Code.

In ¶ 31, plaintiff alleges that defendants have denied and continue to deny "full and equal access to [p]laintiff and to other disabled persons, including wheelchair users ... which discriminated against [p]laintiff on the basis of his disability, thus wrongfully denying to [p]laintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations, in violation of ... 42 U.S.C. § 12182."

In ¶¶ 32-33, plaintiff alleges that he is entitled to the remedies set forth in the Civil Rights Act of 1964, 42 U.S.C. § 2000(a)-3(a), as he has been subjected to discrimination on the basis of disability in violation of Article III of the ADA, and that he is entitled to injunctive relief under 42 U.S.C. § 12188.

In September 2005, following a series of six settlement conferences, the parties submitted a proposed consent decree to the court. The proposed consent decree resolved only the claims for injunctive relief, not any issue regarding liability, damages, or attorney's fees. The court signed the consent decree on September 20, 2005. Pursuant to the consent decree, Kaiser agreed to perform extensive construction and restructuring to provide accessible patient bathrooms on each of Kaiser Oakland's five patient floors, and to provide accessible parking and paths of travel. Kaiser also agreed to give disabled patients the option of transferring to another Kaiser facility for the term of their hospitalization, pending construction of the accessible rooms.

The consent decree provided that "the parties ... agree to entry of this Order to resolve all claims regarding the injunctive relief raised in the [c]omplaint;" that "[t]his Order shall be a full, complete, and final disposition and settlement of [p]laintiff's claims against [d]efendants for injunctive relief that have arisen out of the subject [c]omplaint;" that [t]he parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this [c]onsent [d]ecree should not be construed as such;" and that "this [c]onsent [d]ecree cannot be used as evidence by [p]laintiff to prove the damages portion of his case."

On April 26, 2006, the parties filed cross-motions for summary judgment. On June 9, 2006, the court issued an order granting defendants' motion and denying plaintiff's motion.

## DISCUSSION

A. Discrimination Claims under Title III of the ADA

\*4 Title III of the ADA generally requires an operator of a public accommodation, including a " professional office of a health care provider, hospital, or other service establishment," 42 U.S.C. § 12181(7)(F), to make its services accessible to disabled persons. See 42 U.S.C. § 12182(a). Title III provides several definitions of "discrimination." See 42 U.S.C. §§ 12182(b)(2)(A), 12183(a). These statutory provisions set forth two systems relating to building accessibility-one applying to facilities designed and constructed for occupancy before January 26, 1993, see 42 U.S.C. § 12182(b)(2)(A)(iv), (v), and one applying to newly constructed or altered facilities, see 42 U.S.C. § 12183(a)(1).

As indicated above, the complaint in this action alleges discrimination under subsections (ii), (iii), (iv), and (v) of 42 U.S.C. § 12182(b)(2)(A). [FN1] Subsections (ii) and (iii) define "discrimination" as, respectively, a failure to make reasonable modifications in polices, practices, or procedures in order to afford goods, services, facilities, privileges,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

advantages, or accommodations to persons with disabilities; and a failure to take steps necessary to ensure that no disabled individual is excluded or denied services because of the absence of auxiliary aids or services-except where the defendant "can demonstrate" that making such modifications or taking such steps "would fundamentally alter the nature of" such goods, services, facilities, privileges, advantages, or accommodations.

> FN1. The complaint does not mention 42 U.S.C. § 12183, the provision governing newly constructed or altered buildings, but plaintiff does allege in the second cause of action that alterations or structural repairs since January 26, 1993, triggered independent requirements for removal of barriers under the ADA.

Subsection (iv) defines "discrimination" as a failure to remove architectural barriers, where such barrier removal is "readily achievable." The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The factors relevant to a determination whether barrier removal is "readily achievable" are set forth at § 12181(9)(A)-(D). Subsection (v) defines "discrimination" as a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through "alternative methods," where the defendant "can demonstrate" that the removal of a barrier under subsection (iv) is *not* readily achievable, and where such "alternative methods" *are* readily achievable.

In *Johnson v. Gambrinus Co./Spoetzl Brewery,* 116 F.3d 1052 (5th Cir.1997), the Fifth Circuit held that under a subsection (ii) reasonable modification claim, the plaintiff bears the burden of proving, first, that a modification was requested, and second, that the requested modification was reasonable. Once the plaintiff has met that burden, the defendant must make the requested accommodation unless the defendant pleads and meets its burden of "proving that the requested modification would fundamentally alter the nature of the public accommodation." *Id.* at 1059. In *Lentini v. Calif. Ctr. for the Arts,* 370 F.3d 837 (9th Cir.2004), the

Ninth Circuit held that whether an accommodation fundamentally alters the service or facility is an affirmative defense under the ADA. *Id.* at 845 (citing *Johnson,* 116 F.3d at 1059); *see also PGA Tour, Inc. v. Martin,* 532 U.S. 661, 683 n. 38 (2001).

**\*5** In *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship,* 264 F.3d 999 (10th Cir.2001), a subsection (iv) barrier removal case, the Tenth Circuit held that the plaintiff "bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense." *Id.* at 1005-06. If the plaintiff satisfies this burden, "the [d]efendant then has the opportunity to rebut the showing. Defendant bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable. " *Id.* at 1006. FN2

> FN2. Citing *Johnson,* the Tenth Circuit also recognized that "fundamental alteration" is an affirmative defense in subsection (ii) cases, and noted that a number of district courts had adopted *Johnson's* allocation of the burden of proof in subsection (ii) cases. *Id.* at 1004.

In addition to looking at the language of the statute, the Tenth Circuit also considered the opinions of several district courts that had allocated the burdens in a similar manner. For example, the court cited *Pascuiti v. New York Yankees,* 1999 WL 1102748 (S.D.N .Y., Dec. 6, 1999), where district court held that "[t]he plaintiffs bear the initial burden of suggesting a method of barrier removal and proffering evidence that their suggested method meets the statutory definition of 'readily achievable; " that the plaintiffs must consider the factors identified in § 12181(9) and proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal; and that if the plaintiffs satisfy their burden of proffering evidence that a suggested method of barrier removal can be accomplished easily and without much difficulty or expense, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

Page 5

burden then shifts to the defendants to rebut that showing and prove that the suggested method is not readily achievable. *Colorado Cross*, 264 F.3d at 1004-05 (citing *Pascuiti*, 1999 WL 1102748 at *4-5). The Tenth Circuit noted that the District of Hawai'i had employed a similar approach in *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1085 (D.Haw.2000).

The Tenth Circuit found further that subsections (iv) and (v), read together, place the burden on the defendant to prove the affirmative defense that barrier removal is not readily achievable. *Colorado Cross*, 264 F.3d at 1002. The court concluded that this shifting of burdens comports with the overall operation of the ADA, noting that in Title I cases, the employer bears the burden of persuasion on whether a proposed accommodation would impose an undue hardship, and that in Title II cases, a public entity is not required to take any action (to accommodate the disabled) that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial burdens. *Id.* at 1006-07.

The Eleventh Circuit has also adopted the burden of proof established in *Colorado Cross*. *See Gathright-Dietrich v. Atlanta Landmarks, Inc.*, ---F.3d ---, 2006 WL 1716751 (11th Cir., June 23, 2006). The court stated that
{u]nder the standard enunciated in *Colorado Cross*, a plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion.

*6 *Id.* at *4. The court cited the *Pascuiti* decision, along with cases from other districts that have adopted the *Colorado Cross* standard. FN3

> FN3. This court notes that courts in both the Eastern and Central Districts of California have adopted the *Colorado Cross* standard with regard to Title III claims alleging architectural barriers. *See,*

*e.g., Doran v. Del Taco*, 2005 WL 3478136 (C.D.Cal., Sept. 16, 2005); *White v. Cinemark USA, Inc.*, 2005 WL 1865495 (E.D.Cal ., Aug. 3, 2005); *Eckert v. Donahue Schriber Co.*, 2003 WL 24273566 (E.D.Cal., Oct. 14, 2003).

Based on the sound reasoning and analysis in *Colorado Cross*, and the fact that the Ninth Circuit has adopted the rule from *Johnson*, also cited in *Colorado Cross*, that "fundamental alteration" is an affirmative defense in subsection (ii) cases, it seems likely that the Ninth Circuit would follow the Tenth and Eleventh Circuits in allocating the burden of production and burden of persuasion as set forth above with regard to subsection (iv)-(v) cases. This court also agrees that subsection (iv) and (v) must be read together, in that subsection (v) can come into play *only if* the plaintiff has first met his burden under subsection (iv) of providing evidence that the barrier removal *is* readily achievable, and the defendant has then met its burden under subsection (iv) of establishing as an affirmative defense that the suggested method is *not* readily achievable.

### B. The Cross-Motions for Summary Judgment

#### 1. Defendants' Motion

The issue presented by defendants' motion was " whether, in 2003, Kaiser had a legal obligation to provide [p]laintiff with an accessible bathroom and shower in his patient room at Kaiser's Oakland Hospital." Defs' Motion at 1. According to defendants, resolution of this question involves an analysis of (1) whether there was any " trigger," (*i.e.,* any construction in the Oakland Hospital) prior to [p]laintiff's hospital stay in January 2003 that, under the Americans with Disability [sic] Act and California disability access laws, obligated Kaiser to make bathrooms and showers in its Oakland Hospital patient rooms wheelchair accessible; and (2) whether the barrier removal required to provide [p]laintiff with these accessible facilities was "readily achievable."

*Id.* Defendants left "the remaining alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 6

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

violations to be determined at trial," noting that plaintiff had asserted that he had been subjected to additional architectural barriers, including lack of accessible parking, lack of accessible drop-off or pick-up zone, lack of van-accessible parking spaces, and lack of a lift to transfer him from his wheelchair to his bed. *Id.*

As explained more fully below in the section discussing the June 9, 2006, order, defendants provided evidence showing that Kaiser Oakland was a pre-existing public facility; and that Kaiser had not made any alterations, structural repairs, or additions to patient rooms that triggered "new construction" standards under federal or state law. Defendants argued that plaintiff could therefore prevail in his Title III claim only if he could establish that the construction of an accessible patient bathroom with accessible toilet and shower was "readily achievable," which defendants asserted plaintiff could not do.[FN4]

> FN4. Although defendants referred generally to "Title III of the ADA," this is plainly an argument with reference to plaintiff's subsection (iv) barrier removal claim, and is limited to that portion of the claim regarding the accessible patient bathroom.

Applying the factors set forth in 42 U.S.C. § 12181(9)(A)-(D),[FN5] defendants provided evidence showing that extensive (and expensive) construction would be required to create accessible toilet and shower facilities in the patient rooms; and that any such construction would have a major impact on hospital operations (loss of patient beds during the construction phase, along with a permanent loss of some patient beds) and attendant patient services. Defendants further argued that spending millions of dollars to enlarge bathrooms/showers in patient rooms would not be an efficient allocation of Kaiser's financial resources, in view of the fact that Kaiser Oakland Hospital is slated to be torn down in 2012 because it does not meet state seismic safety standards.

> FN5. These factors are
> (A) the nature and cost of the action needed under this chapter;
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> (C) the overall financial resources of the covered entity; the overall size of the business of the covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.
> 42 U.S.C. § 12181(9).

*7 Defendants then asserted that they had provided "alternate facilitation" as required by the ADA, citing subsection (v) of 42 U.S.C. § 12182(b)(2)(A), as well as 28 C.F.R. § 36.305(a).[FN6] Defendants argued that Kaiser provided bed baths and bedside commodes to their immobile patients as "alternative methods."

> FN6. "Where a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable." 28 C.F.R. § 36.305. The regulation also provides examples of "alternative methods," including "providing curb service or home delivery," retrieving merchandise from inaccessible shelves or racks," and " relocating activities to accessible locations. " *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 7

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

In opposition, plaintiff argued that defendants had admitted that Kaiser had spent millions of dollars renovating Kaiser Oakland, and that these renovations triggered the requirement to provide accessible patient bathrooms. Specifically, plaintiff asserted that renovations in the 4th and 5th floor maternity ward in 1993 triggered the requirement to provide an accessible toilet and roll-in shower. Plaintiff also argued that requiring disabled patients in wheelchairs to take bed baths and use portable bedside commodes was discriminatory because it was based solely on those patients' disabilities. Plaintiff asserted that defendants had demonstrated " conclusively" that barrier removal was "readily achievable" by entering into a consent decree agreeing to remove barriers in three patient rooms and to construct fully accessible bathrooms in three patient rooms. Plaintiff also asserted that the removal of barriers in the patient rooms "has always been 'readily achievable' based on cost" (referring to Kaiser's overall financial resources), and criticized defendants' claim that construction of the accessible bathrooms would have a major impact on hospital operations.

In reply, defendants reiterated that the evidence showed that no construction had taken place on the medical-surgical floors which would have "triggered " Kaiser's obligation to construct a bathroom with an accessible toilet and roll-in shower in plaintiff's room or in any patient room on the medical-surgical floors of Kaiser Oakland. Defendants argued that the consent decree cannot be used to establish liability; that plaintiff had provided no evidence to refute defendants' showing that the ADA does not require "extensive restructuring" of existing facilities; that plaintiff had trivialized the loss of patient rooms, the impact on hospital operations, and the extensive costs of restructuring; and that plaintiff had not established that Kaiser's alternative facilitation was discriminatory and had misstated the facts when he asserted that Kaiser characterized every disabled patient as "confined to bed."

### 2. Plaintiff's Motion

Plaintiff moved for "summary adjudication on liability," requesting that

the [c]ourt find, as a matter of law, that defendants violated Title III of the Americans with Disabilities Act of 1990's ("ADA") prohibition against discrimination based on disability, and discriminated against plaintiff under California Civil Code § § 54 and 54. 1, by depriving [p]laintiff of 'full and equal' access to defendants' facilities at the Kaiser Permanente Oakland Hospital in the City of Oakland, on the basis that plaintiff is, and was, a person with a physical disability and could not use defendants' inaccessible facilities.

*8 Pltf's Motion at 1. Plaintiff noted in a footnote that he had already obtained injunctive relief with regard to barriers. Based on the above, the court reasonably concluded that plaintiff was seeking summary judgment on liability as to all remaining claims. Plaintiff did not state, as defendants did in their motion, that he was moving for summary judgment only as to certain specified issues, and that the remaining claims would be left for trial. Nor did plaintiff make clear in the complaint exactly what claims he was asserting and what facts underlay those claims.

Plaintiff asserted that his motion for "summary adjudication on liability" should be granted based on "overwhelming evidence" that
defendants discriminated against plaintiff by: 1) not complying with the requirements of the ADA to remove barriers that were "readily achievable" for Kaiser to remove; 2) failing to reasonably modify their policies for disabled patients as necessary to serve plaintiff's needs; [and] 3) repeatedly and willfully refusing to comply with ADA and California access regulations that require paths of travel upgrades following millions of dollars of construction and alterations to the hospital and related facilities prior to plaintiff's visit in January 2003.

Pltf's Motion at 2.

Thus, plaintiff sought summary judgment as to three "liability" issues-a) the ADA barrier claim-the claim that defendants had failed to remove barriers that were "readily achievable" for Kaiser to remove; b) the ADA reasonable modification claim-the claim that defendants had failed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 8

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

reasonably modify their policies for disabled patients as necessary to serve plaintiff's needs; and c) the ADA and California paths-of-travel claims-the claims that defendants had failed to comply with ADA and California access regulations that require paths-of-travel upgrades following millions of dollars' worth of construction and alterations to the hospital and related facilities.

### (a) ADA barrier claim

In support of the subsection (iv) claim, plaintiff argued that removal of barriers was readily achievable because defendants have total assets valued at $25 billion, and a net income of $1 billion. Plaintiff discussed barrier removal mostly in generalities-referring (a) to a category of " presumptively 'readily achievable' barrier removal, " as including installing ramps, making curb cuts in sidewalks and entrances, widening doors, and creating designated accessible parking spaces; (b) to the defendants' asserted obligation to provide at least one accessible patient room with accessible toilet and roll-in shower; [FN7] and (c) to the defendants' asserted obligation to provide at least one van-accessible parking space in one of the patient parking lots, one accessible path of travel from the parking lots to the hospital, and one van-accessible parking space and path of travel from the patient discharge area to the hospital entrance.

> FN7. Plaintiff mentioned the lack of a sling for the Hoyer lift in the statement of facts in his opening brief, but did not mention it in the legal argument portion of his papers (where he focused on the accessible toilet and shower, and on the parking and paths-of-travel issues). Plaintiff did not mention door hardware in the patient room in his opening brief, although he did in his declaration and in his reply brief.

Plaintiff refers three times in his opening memorandum of points and authorities to " presumptively readily achievable" barrier removal. However, he cites to no provision of the ADA or

the implementing regulations that states that removal of certain types of barriers is " presumptively readily achievable"-in the sense that a plaintiff is relieved from the burden of providing evidence showing that removal of the barrier was readily achievable.

*9 The only source cited by plaintiff in support of this assertion is the Department of Justice Technical Assistance Manual III, ¶ 4.4200. The DOJ Technical Assistance Manual provides guidelines to assist public accommodations in making their facilities disabled accessible, and includes a list of 21 "modifications" that *may be* readily achievable. " This list simply repeats, verbatim, the list of examples of "steps to remove barriers" that appears in 28 C.F.R. § 36.304.

There is no clear support in the text of the ADA or in the implementing regulations for a claim that a particular type of barrier removal is "presumptively readily achievable." It is true that the commentary to the regulations states that certain types of barrier removal may be considered "modest"-in the sense that they are not expensive or complicated-suggesting that a plaintiff could probably establish that removing those categories of barriers would be readily achievable. However, there is no support in the statute or the regulations for a claim that removal of certain types of barriers is *per se* readily achievable.

Plaintiff acknowledged in his moving papers that the burden of demonstrating that barrier removal is not readily achievable is an affirmative defense. However, as in his opposition to defendants' motion, he failed in his own motion to meet the burden of providing evidence that the proposed barrier removal *is* readily achievable, with regard to the factors set forth at 42 U.S.C. § 12181(9)(A)-(D).

As defendants pointed out in their opposition, the only factor plaintiff considered was the overall financial resources of the defendants. For this reason, the June 9, 2006, order found that summary judgment should be granted for defendants on the subsection (iv) claim with regard to the accessible patient bathroom, because plaintiff had not met his burden of providing evidence as to the factors

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 9

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

required to show that creation of an accessible patient bathroom was readily achievable.

In his reply, plaintiff argued that the consent decree established that the barrier removal was "feasible," and suggested that the fact that the defendants agreed as part of the settlement of the claims for injunctive relief to provide a certain number of accessible patient rooms weakened defendants' argument that creation of an accessible patient room prior to January 2003 would have seriously impacted hospital operations. He also cited to a recent decision from the Eastern District of California, *Wilson v. Pier I Imports (US), Inc.*, 2006 WL 947709 (E.D.Cal., Apr. 12, 2006), in which the district court found that because the defendant in that case had already removed the barriers as of the time the court was considering the matter, the barrier removal was "readily achievable ."

The *Wilson* case is distinguishable. Unlike the present case, there is no indication in *Wilson* that the barrier removal was undertaken pursuant to a consent decree providing that the fact that the defendant had agreed to remove the barriers could not be used as evidence of liability.

**\*10** In their opposition to plaintiff's motion, defendants also raised the subsection (v) requirement, noting that where a public accommodation demonstrates that barrier removal is not "readily achievable" (by definition, this must occur in connection with a subsection (iv) barrier removal claim) a place of public accommodation must make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those are readily achievable. Defendants provided evidence showing that Kaiser had provided alternatives to the creation of accessible bathrooms in the patient rooms-bed baths and portable commodes. Defendants also asserted that patients are not entitled to the alternative facilitation of their choice, and that transfer to another hospital is not a readily achievable alternative measure because of the legal, medical, and patient care implications involved in finding another hospital and doctor capable of meeting a particular patient's medical needs.

In reply to these arguments, plaintiff again argued that defendants' "alternative method" of classifying all disabled patients as "bed-bound" or "confined to bed"-and thus providing them with a bed pan and a bed bath instead of a usable toilet and shower-is " the very definition of" disability-based discrimination.[FN8] In support of the argument that Kaiser classifies all disabled patients as "bed-bound, " plaintiff cited to ¶¶ 21 and 22 in the declaration of Bettie Coles in support of defendants' motion for summary judgment. In ¶ 21, Coles stated that she questioned the wisdom of incurring costs of roughly $611,000 per accessible patient bathroom to create such accessible bathrooms, in light of the fact that Kaiser Oakland is scheduled to be closed by 2012. In ¶ 22, Coles stated as follows:

> FN8. Plaintiff asserts that "forcing plaintiff to use a bed pan, commode or bed bath" is not an "alternative method" of providing access, but is itself disability-based discrimination.

Plaintiff's complaint is the first complaint I am aware of with reference to the lack of accessible patient rooms and bathrooms and showers for those rooms for wheelchair patients. I am informed and believe that there have been no others. Until this case, the personal hygiene needs of wheelchair patients were satisfied through a variety of alternative options that have been used in the care of bed-bound patients for many years, namely bed baths, and the use of bedside commodes and/or bedpans. Pursuant to the Consent Decree in this case, since December 9, 2005, all wheelchair bound patients have been assessed with the understanding that we will transfer them to another Kaiser facility, if the lack of an accessible patient room is problematic for them.
Coles Decl. in Support of Defs' Motion for Summary Judgment, at ¶ 22. Thus, rather than speaking about an "alternative method" of " classifying patients," Coles simply stated that the needs of all wheelchair patients at Kaiser Oakland are assessed individually.

Plaintiff then argued that while Coles claimed "bed baths are a standard medical means of washing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 10

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

numerous patients," she made no claim that there was any medical evaluation of plaintiff Mannick's medical needs to determine whether he should be one of the numerous patients confined to bed. In support, plaintiff cited to an excerpt from the Coles deposition supposedly attached as Exhibit B to the Levine declaration in opposition to plaintiff's motion. There is an excerpt from the Coles deposition that is Exhibit C to the Levine declaration, but the cited pages are not included in that excerpt. In short, plaintiff provided no evidence to support the claim that defendants' "alternative methods" constitute a "discriminatory policy."

### (b) ADA reasonable modification claim

**\*11** In support of his ADA "reasonable modification" claim, plaintiff argued that defendants discriminated against him by failing to institute a policy of transferring patients to a different hospital with an accessible patient room when they were unable to provide an accessible patient room at Kaiser Oakland. He asserted that defendants had a policy of transferring Ob/Gyn and pediatric patients to nearby hospitals because Kaiser did not have appropriate facilities for those categories of patients in 2003, and argued that this "policy" demonstrated that defendants' failure to transfer plaintiff to an accessible hospital was a violation of the ADA. Plaintiff also asserted that transferring disabled patients to accessible hospital facilities was a "reasonable modification" as a matter of law and should have been offered to plaintiff when he complained about the lack of access in his patient room. He claimed that failing to modify policies for disabled patients, while transferring other categories of patients, demonstrated that defendants discriminated against him because of his disability.

In opposition, defendants provided evidence that Kaiser had no policy of "transferring" Ob/Gyn patients or pediatric patients in 2003, and that the movement of the services for these categories of patients to other facilities was part of Kaiser's preparation for the closure of the Kaiser Oakland Hospital. Defendants also noted that no patient, including plaintiff, had *ever* requested a transfer to another hospital, and provided evidence that

transfer to another hospital was not a "reasonable modification," based on the practical difficulties of, *e.g.*, locating a hospital with available patient beds as well as the ability to provide the particular medical treatment and care needed by the individual patient, and obtaining the consent of the proposed transferee hospital to move the patient to that hospital.

Although defendants did not specifically refer to this argument as involving a subsection (ii) " reasonable modification claim," and did not argue the affirmative defense (that the proposed modification would fundamentally alter the nature of the goods, services, etc.), they did, in essence, point out that plaintiff had not provided the evidence required to support a subsection (ii) claim because he did not show that he ever requested the proposed modification (transfer) or that the proposed modification was reasonable. They also provided evidence showing that the proposed modification (transfer) was in fact not reasonable.

In his reply, plaintiff made two arguments. First, he asserted that defendants had failed to provide admissible evidence that transferring plaintiff to an accessible facility would have "fundamentally altered" the nature of Kaiser's hospital services in January 2003. He cited the Ninth Circuit's decision in *Lentini,* for the proposition that whether an accommodation fundamentally alters the nature of a service or facility is an affirmative defense that defendants must raise and prove with admissible evidence," *Lentini,* 370 F.3d at 845; and cited *Colorado Cross* for the proposition that "[o]nce the plaintiff meets the burden of showing that an accommodation is reasonable in the general sense, the court held that the defendant must make the requested accommodation unless defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation," *Colorado Cross,* 264 F.3d at 1003.

**\*12** It is true that *Lentini* states on the cited page that "[w]hether an accommodation fundamentally alters a service or facility is an affirmative defense." In making this statement, *Lentini* cites to *Johnson* and *Colorado Cross.* However, it is misleading to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 11

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

say that *Colorado Cross* holds that a plaintiff has only to meet the burden of showing that an accommodation is reasonable "in the general sense" in order to shift the burden of persuasion to the defendant to show "fundamental alteration."

*Colorado Cross* first states that § 12182(b)(2)(A)(ii) and (iii) "provide an affirmative defense for an entity to demonstrate that compliance would fundamentally alter the nature of the goods and services provided," and that the defendant " [c]onsequently ... bears the burden of persuasion regarding fundamental alteration and undue burden." *Colorado Cross,* 264 F.3d at 1003. *Colorado Cross* cites *Johnson,* 116 F.3d at 1059, in support of that proposition, and also cites *Johnson* during the remainder of the discussion:

[*Johnson* ] held that the plaintiff bears the burden of proving that a *modification was requested* and that *the requested modification was reasonable.* Once the plaintiff meets the burden of showing that a modification is reasonable in the general sense, [ *Johnson* ] held the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation. The plaintiff bears the ultimate burden of proof on the issue of reasonableness, while the defendant bears the burden of proving the requested accommodation would fundamentally alter the nature of the public accommodation.

*Colorado Cross,* 264 F.3d at 1004 (citing *Johnson,* 116 F.3d at 1059) (emphasis added). In turn, *Johnson* explains "evidence that the requested modification *is reasonable in the general sense*" as meaning "evidence that the requested modification is reasonable in the run of cases." *Johnson,* 116 F.3d at 1059.

Plaintiff did not meet his burden because he did not show that he requested a transfer as a reasonable modification, and also because he did not provide evidence showing that a transfer was a reasonable modification. Moreover, while defendants did not provide evidence showing that modifying hospital policies or procedures to allow transfer of disabled patients would "fundamentally alter" the nature of

the goods or services provided, they were not required to do so, because plaintiff had not met his burden and the burden of persuasion on fundamental alteration had therefore not shifted to the defendants.[FN9] Moreover, defendants provided evidence suggesting that transferring patients *is not* a reasonable modification.

> FN9. Defendants did plead, as the seventh affirmative defense, that the complaint " seeks accommodations and modifications of the facility that are excused by law because they are not readily achievable, would fundamentally alter the nature of the goods and services offered and/or would impose an undue hardship." Answer at 7. They also pled, as the fourteenth affirmative defense, that the complaint " fails as a matter of law because [p]laintiff failed to give [d]efendants notice of the need for accommodation or assistance ." Answer at 8.

Plaintiff's second argument in the reply is (as with the barrier removal claim) that the consent decree provides evidence that offering disabled patients the option of transferring to an accessible hospital was a "feasible" modification of policies and practices. However, apart from the fact that the consent decree cannot be used as evidence of liability, it is irrelevant whether transferring patients was "feasible " if plaintiff cannot show that he ever requested a transfer to another facility. Moreover, a "feasible" modification is not necessarily "reasonable."

### (c) paths-of-travel claim

\*13 In support of his paths-of-travel claim, plaintiff argued that he was denied full and equal access because defendants made millions of dollars' worth of alterations to Kaiser Oakland and its parking structures, but failed to provide accessible parking, entrances, and paths of travel.

In opposition, defendants argued that the alterations were not sufficiently extensive and were not in a location that triggered the obligation to make

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 12

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

external paths of travel fully accessible.

In reply, plaintiff reiterated that defendants violated the ADA and Title 24 by altering the hospital and related facilities without making paths-of-travel upgrades. Specifically, he asserted that Kaiser had renovated the maternity ward in 1993, which required the installation of a fully accessible roll-in shower, but had failed to provide such a shower. Plaintiff also claimed that defendants violated the ADA and Title 24 standards for paths-of-travel alterations following alterations at the hospital and parking lots.

### C. The Order on the Cross-Motions for Summary Judgment

The order on the parties' cross-motions for summary judgment, filed June 9, 2006, states, with regard to plaintiff's motion,
Plaintiff seeks summary judgment on his claim that Kaiser discriminated against him by failing to provide him with an accessible patient room, by offering him a bed bath and a portable commode instead of a fully accessible bathroom, and by failing to transfer him to another facility; and his claim that Kaiser violated the ADA and state law by failing to provide at least one fully accessible patient room. This motion is DENIED, because the defendants' motion on the same issues has been granted.
Plaintiff also contends that Kaiser violated the ADA and state law by failing to provide an accessible roll-in shower in the remodeled bathroom on the 4th floor maternity ward, and by failing to remove architectural barriers, in connection with parking, building entrances, and paths of travel. Plaintiff claims that Kaiser made millions of dollars' worth of renovations and alterations to Kaiser Oakland between 1992 and 2002, but failed to provide accessible parking, entrances, or paths of travel....
The court finds that plaintiff's motion with regard to the 4th floor shower and with regard to barrier removal in parking areas and paths of travel must be DENIED.

Order at 19, 22.

With regard to defendants' motion, the court granted summary judgment on the barrier removal claim, solely with regard to the issue of the accessible shower and toilet, based on plaintiff's failure to meet his burden of providing evidence that the construction of an accessible patient bathroom was readily achievable, and also noting that defendants had provided evidence that the construction of an accessible patient room *was not* readily achievable. Order at 16-17. The court specifically noted that plaintiff discussed only the factor of Kaiser's overall financial resources, but failed to provide evidence with regard to any of the other relevant factors-such as the expense and difficulty of removing the barriers, and the impact of barrier removal on Kaiser's ability to provide medical care to its patients. Order at 17. The court cited *Colorado Cross* for the proposition that in view of plaintiff's failure to meet his burden of coming forward with evidence to show that creating an accessible patient room was readily achievable, defendants were under no obligation to prove the affirmative defense that barrier removal was not readily achievable. Order at 18.

*14 The court also found that Kaiser had provided an "alternative method" (bedbath and portable commode), and that plaintiff had not established that this alternative was discriminatory. The court noted that defendants had provided evidence showing that all patients were treated equally, in that each patient was evaluated based on his or her mobility, and that plaintiff had been categorized a " total assist" patient with respect to hygiene needs and a "high injury risk" because of his limited mobility. Order at 18.

Finally, the court found that Kaiser's failure to transfer plaintiff to another facility was not discriminatory, because there was no evidence that plaintiff had requested a transfer or that Kaiser had a "policy" of transferring any other group of patients, but not disabled patients; and because defendants had provided evidence showing that such transfers, in general, are difficult. Order at 18. While the order does not specifically refer to plaintiff's subsection (ii) claim of failure to make reasonable modification; the order discusses the parties' arguments; describes the claim as a claim of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

"discrimination" (as it is defined in the statute); and addresses the required elements (a showing that the plaintiff requested the modification, and a showing that the requested modification was reasonable).

Thus, to the extent that the June 9, 2006, order was not clear, the court granted summary judgment on plaintiff's subsection (ii) and (v) claims to the extent that they relate to the lack of an accessible patient bathroom.

### D. Motion for Reconsideration

#### 1. Legal Standard

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. " *Sissoko v. Rocha,* 440 F.3d 1145, 1153-54 (9th Cir.2006). A party seeking reconsideration must must show that the evidence was discovered after the dispositive order, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different. *See Dixon v. Wallowa County,* 336 F.3d 1013, 1022 (9th Cir.2003).

Under Civil Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civ. L.R. 7-9(a).

A party seeking leave to file a motion for reconsideration must specifically show:
(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
*15 (2) The emergence of new material facts or a change of law occurring after the time of such

order; or
(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).

In addition, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c).

#### 2. Plaintiff's Motion

Plaintiff seeks, pursuant to Federal Rule of Civil Procedure 54(b) [FN10] and Civil Local Rule 7-9, reconsideration of the June 9, 2006, order granting defendants' motion for summary judgment. The request for leave to file the motion is GRANTED, and the court has considered all the arguments raised by plaintiff.[FN11] For the reasons stated below, the court DENIES the motion.

> FN10. Plaintiff's reason for citing to Rule 54(b) is not clear. A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment), as appropriate. *chool Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1262 (9th Cir.1993).

> FN11. However, the court has not considered any argument appearing in the footnotes to plaintiff's briefs, as the footnotes are in a font that is less than standard 12-point type and therefore in violation of this court's local rules. *See* Civil Local Rule 3-4(c)(2). All such footnotes are stricken.

Plaintiff argues that the court should reconsider its ruling, based on the following seven grounds.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 14

**Slip Copy, 2006 WL 2168877 (N.D.Cal.)**
**(Cite as: Slip Copy)**

*(a) summary "judgment" vs. summary "adjudication"*
*"*

First, plaintiff argues that the court improperly granted summary judgment in favor of defendants, when in fact the order merely summarily adjudicated the two issues upon which defendants moved. This argument is without merit. As the court noted at the July 13, 2006, pretrial conference, the Federal Rules of Civil Procedure (unlike the California Code of Civil Procedure) do not make a distinction between "summary judgment" and "summary adjudication." Indeed, Federal Rule of Civil Procedure 56 provides that "[a] party ... may move ... for a summary judgment in the party's favor upon all [claims] or any part thereof." Fed.R.Civ.P. 56(a), (b). Both defendants' motion and the June 9, 2006, order plainly indicated that defendants were not seeking summary judgment on all claims in the case.

In addition, it is not true, as plaintiff asserts, that the only state law claim as to which defendants sought summary judgment was whether Kaiser per se violated state law when it violated the ADA. As noted above, defendants clearly stated in their moving papers that the question whether Kaiser had a legal obligation to provide plaintiff with an accessible bathroom and shower in his patient room in Kaiser Oakland involves an analysis of (1) whether there was any "trigger" (*i.e.*, any construction in the Oakland Hospital) prior to [p]laintiff's hospital stay in January 2003 that, under the [ADA] and California disability access laws, obligated Kaiser to make bathrooms and showers in its Oakland Hospital patient rooms wheelchair accessible: and (2) whether the barrier removal required to provide [p]laintiff with those accessible facilities was "readily achievable." Defendants' Motion at 1.

*(b) application of legal standard*

Second, plaintiff contends that the court applied an incorrect legal standard in requiring plaintiff to show, first, that there was a "triggering alteration," and second, that renovation was readily achievable.

Plaintiff contends that the ADA requires either a showing that the proposed construction is readily achievable (citing 42 U.S.C. § 12182(b)(2)(iv)) FN12 or that there was a triggering alteration requiring compliance as though it were new construction (citing 28 C.F.R. § 36.402). Plaintiff claims that the court improperly required plaintiff to meet *both* standards in a "two-step analysis."

> FN12. It appears that the intended reference is to § 12182(b)(2)(A)(iv).

**\*16** In the complaint, plaintiff alleged discrimination under the ADA, and also asserted claims under the California Disabled Persons Act ("CDPA"), California Civil Code § 54, et seq. In 1994, the CDPA was amended to provide that a violation of the ADA constitutes a violation of their provisions. Cal. Civ.Code § 54.1(d). Thus, a plaintiff whose rights are violated under the ADA may now seek damages under the California statutes. *See Hankins v. El Torito Restaurants, Inc.,* 63 Cal.App. 4th 510 (1998).

Under the CDPA, a plaintiff can show either that the ADA was violated, or that the facility in question does not comply with the California Building Code requirements for disabled access ("Title 24"). Cal. Civ.Code § 54; Cal. Health & Safety Code § 19955; Cal.Code Regs Title 24 § 1134B.1, 2. Title 24 requires compliance with the disabled access standards only if a public accommodation is newly constructed or structurally altered. Buildings existing at the time of Title 24's enactment in 1982 are exempt from compliance unless "alterations, structural repairs or additions are made to such buildings or facilities." Cal.Code Regs Title 24 § 1134B.1, 2.

The ADA imposes an affirmative duty on all existing facilities to remove architectural barriers if their removal is readily achievable, 42 U.S.C § 12182(b)(2)(A)(iv), and also requires that newly constructed buildings and buildings that are "altered ... in a manner that affects or could affect the usability of the facility or a part thereof," to be made accessible "to the maximum extent feasible," 42 U.S.C. § 12183(a). The regulations applicable to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

Page 15

"newly constructed" and "altered" are at 28 C.F.R. part 36, subpart D. Section 36.402 contains regulations applicable to "alterations."

As described in detail above, plaintiff argued in his motion that removal of some barriers was "presumptively readily achievable," and defendants were liable as a matter of law for failing to remove those barriers. Plaintiff asserted further, based on defendants' overall financial resources and net income, that the construction of at least one accessible patient bathroom was "readily achievable," and that defendants' failure to construct at least one such accessible bathroom was a violation of Title III as a matter of law. Plaintiff also argued that defendants violated the ADA by failing to modify their policies and procedures to provide plaintiff with accessible services by transferring him to another hospital. Finally, plaintiff argued that defendants made "millions of dollars of renovations, alterations, and additions" to Kaiser Oakland between 1992 and 2002, which triggered the requirement of accessible paths of travel.

Defendants, by contrast, argued in their motion that Kaiser Oakland is a preexisting public accommodation, that the patient rooms on the medical-surgical floors have never been altered, and that the "new construction" requirements of the ADA and Title 24 have therefore never been triggered with regard to the patient rooms. Defendants also noted that plaintiff bears the burden of showing that barrier removal is readily achievable under the ADA, and asserted that the evidence showed that it was not readily achievable to create accessible toilets and showers in the patient rooms. While defendants did not provide evidence as to every factor mentioned in 42 U.S.C. § 12181(9)(A)-(D), they did provide evidence showing the cost to construct one accessible patient bathroom, the extensive reconstruction required to construct such accessible bathrooms, and the effect of such construction upon hospital operations and patient services, and also asserted that spending millions of dollars to construct accessible bathrooms in a facility that was slated to be torn down in six years would not provide Kaiser's patient community with the most beneficial use of resources.

*17 Based both on the parties' arguments and on the evidence presented in support of those arguments, the court found that there had been no construction in or alteration of any patient room that would trigger the requirement to construct an accessible patient bathroom. The court also found that plaintiff had not met his burden of showing that construction of accessible patient bathrooms in the existing Kaiser Oakland facility was "readily achievable." This is not a "two-step analysis."

*(c) evidence of cost of constructing accessible bathroom*

Third, plaintiff asserts that the court improperly found that the cost of constructing one accessible patient room was in excess of $600,000, and consequently not readily achievable. Plaintiff claims that the court failed to consider conflicting evidence provided by defendants that the cost of renovating a patient room to make it accessible was less than $5,000; failed to consider the analysis of plaintiff's expert Robert Johnson which utilized a 2004 cost estimate of $235,000; and failed to weigh the estimated cost of constructing one accessible patient room against the 1990-2002 financial resources of the parent company. Plaintiff argues that the presence of the conflicting evidence creates a triable issue of fact.

The short answer to this argument is that the $600,000 figure was the *actual cost* of constructing an accessible patient bathroom in 2005-2006, while the $5,000 figure and the $235,000 figures were *estimates* only, for 1993 and 2004, respectively. Based in part on this evidence of what it actually cost defendants to construct an accessible bathroom pursuant to the consent decree, the court determined that the construction was not readily achievable.

Moreover, the court has reviewed plaintiff's memoranda of points and authorities in opposition to defendants' motion and in support of his own motion, and finds no reference to the $5,000 per patient room estimate, which appears in the Kaiser's 1993 Favro Survey of ADA barriers,[FN13] nor any reference to the $235,000 estimate by plaintiff's own expert.[FN14]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 16

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

FN13. This is the "Title III Public Accommodation Survey Report" prepared for Kaiser by Favro/McLaughlin/HKS in 1993. A portion of the Favro Study was attached as an exhibit to the declaration of Judy Rowe in support of defendants' motion.

FN14. The $235,000 cost estimate is referenced in ¶ 4 of the Johnson declaration, which attached (as Exhibit 3) a 2004 cost estimate to "build an ADA-compliant patient toilet room," with no mention whatsoever of a roll-in shower. There is no showing that the 2004 estimate covered the same work subsequently performed in the 2005-2006 remodel. Moreover, Johnson is not qualified as a construction expert, and is not competent to provide a cost estimate for the construction of an accessible patient bathroom. (According to Johnson's declaration, the 2004 cost estimate was provided to plaintiff's counsel by defendants.) In any event, plaintiff's papers in support of his motion for summary judgment and in opposition to defendants' motion do not cite to ¶ 4 of the Johnson declaration, or to Exhibit 3 thereto.

On a motion for summary judgment, "the adverse party's response, by affidavits or otherwise ..., must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The motion must be granted if the materials "on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ." Fed.R.Civ.P. 56(c). Taken together, these provisions mean that " whatever establishes a genuine issue of fact must *both* be in the district court file and set forth in the response." *See Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001). When a nonmoving party fails to present an adequate opposition to a summary judgment motion, the court is not required to "search and sift" the entire factual record for evidence that demonstrates the existence of a genuine issue of fact. *Id.* at 1029-31; *see also Keenan v. Allan,* 91

F.3d 1275, 1279 (9th Cir.1996) (court need not " scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment").

*18 Each side in this case filed a mountain of paper in support of its own motion and in opposition to the other side's motion, including numerous declarations. The exhibits to those declarations included discovery responses and deposition transcripts, many with no indication as to their significance to the arguments; architectural drawings and diagrams, including some with print so fine as to be illegible to an ordinary person; and charts and other summations of hundreds of construction projects, replete with obscure references and often lacking any comprehensible explanation of their relevance to the claims in the case. The court did not consider, and is not required to consider, evidence that is buried in a two-foot-tall stack of paper, where the parties do not specifically direct the court's attention to the exact page where the evidence is to be found and do not explain the significance of the evidence in their memoranda of points and authorities.

Finally, it appears that plaintiff is attempting to use this motion for reconsideration to re-argue his opposition to defendants' motion for summary judgment. Civil Local Rule 7-9 provides that "[n]o motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c). The fact that plaintiff now cites to different evidence in support of that argument does not make it a new argument.

*(d) evidence of defendants' financial resources*

Fourth, plaintiff contends that the court erred in finding that plaintiff had provided evidence of defendants' gross income, when in fact plaintiff provided evidence of net income; and erred in its analysis of the effect of defendants' overall financial resources. In particular, plaintiff asserts that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 17

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

court failed to properly evaluate the evidence presented by plaintiff's expert Robert Johnson.

The court found that plaintiff had failed to meet his burden of showing that the creation of an accessible patient room was "readily achievable" because he had addressed only one of the factors set forth at 42 U.S.C. § 12181(9)-the overall financial resources of the entity-and had failed to provide any evidence as to any other factors. Referring specifically to the " revenue" figures cited by Johnson, and repeatedly cited by plaintiff in his memoranda of points and authorities, the court stated, "Moreover, the revenue figure cited by plaintiff is not relevant for an analysis under the 'readily achievable' standard because it is a total gross figure and does not account for expenses such as employee salaries, capital expenditures, and hospital costs." Order at 17. It is true that plaintiff cited figures for "net income," based on Johnson's analysis. But it is also true that plaintiff cited the irrelevant gross "revenue" as a basis for arguing that construction of an accessible patient bathroom was "readily achievable. "

*19 Plaintiff also argues that defendants did not provide evidence sufficient for the court to determine that the construction of an accessible patient bathroom was not "readily achievable." The initial burden is on plaintiff, however, and defendants in their motion for summary judgment were required only to point out the lack of evidence supporting plaintiff's case. However, as the order makes clear, defendants provided evidence showing that removing architectural barriers by constructing an accessible patient bathroom was not "readily achievable" because it was not, as a practical matter, easily accomplished; because it could not be achieved without significant cost and economic impact; and because it could not be carried out without significantly affecting hospital operations and patient services.

### (e) testimony of Marcus Hibser

Fifth, plaintiff argues that newly discovered evidence (testimony of defendants' expert Marcus Hibser, whom plaintiff deposed after the hearing on

the cross-motions for summary judgment) shows that certain alternations in Kaiser Oakland may have triggered Kaiser's obligation to provide a patient room with an accessible toilet and shower. Plaintiff asserts that this new evidence creates a disputed material fact that must be submitted to the jury.

Defendants originally designated Hibser as an expert regarding whether various construction projects at Kaiser Oakland "triggered" a requirement to construct accessible facilities. Hibser reviewed approximately 155 projects, and stated in his Rule 26 expert report that "[t]here were no projects completed in the past which would have triggered ADA or Title 24 upgrades to toilets or showers in the licensed med-surg patient rooms (floors 6-10)." In his deposition, Hibser was questioned regarding certain construction documents apparently relating to seismic work performed at Kaiser Oakland-on floors 6-10 and in the ICU, among other locations.

In the deposition excerpt provided by plaintiff, Hibser testified regarding seismic anchorage of existing wall-mounted light fixtures in patient rooms, which he stated likely involved "removal of the fixture and installation, and reinstallation of that same fixture with larger anchors." He said it was " unknown" whether seismic upgrades on such a small scale would have triggered a requirement to construct fully accessible patient bathrooms, and also noted that there was no specific area of alteration because the work was spread throughout the hospital.

With the motion for reconsideration, plaintiff submits a declaration from his expert Peter Margen, in which Margen asserts that he "was not aware of the seismic work at the Oakland Hospital" prior to Hibser's deposition, and that he "would have wanted information on these projects in order to evaluate whether any of them triggered an accessibility upgrade requirements for the hospital, including accessible toilets and showers in the patient rooms." Decl. of Peter Margen, ¶ 4. Margen also attaches a copy of a 1995 opinion by the Attorney General of California, stating that seismic strengthening of an unreinforced masonry

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 18

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

building required by local ordinance constitutes a "
building alteration, structural repair or addition" for
purposes of providing access to the building for
disabled persons.[FN15]  In the new declaration,
Margen asserts that in his opinion, "the seismic
work identified by Hibser would trigger
accessibility upgrade requirements, including
accessible toilets and showers in patient rooms."
Margen Decl. ¶ 5.

> FN15. Attached to the opinion is a copy of
> a policy issued by the California Division
> of the State Architect, which states that the
> policy is applicable only to projects under
> the Division of the State Architect (state
> funded buildings and publicly-funded
> schools and community colleges). Plaintiff
> does not explain the relevance of either an
> opinion regarding seismic strengthening of
> unreinforced masonry buildings, or a
> policy that applies only to state- and
> publicly-funded buildings.

**\*20**  Plaintiff contends that the information
regarding the seismic projects was not available and
was not identified by Kaiser until after the hearing
on the motions for summary judgment, and that
Margen was therefore not able to evaluate the
projects before the hearing. Plaintiff also argues that
because none of defendants' declarants, including
Judy Rowe, Henry Scott, and Herb Clore, testified
as to the seismic work, and because all of them
stated that there had been no renovations or
alterations to any patient room, the court should
reconsider its ruling and should find that this "new
evidence" creates a disputed issue of fact regarding
whether the seismic work triggered accessibility
upgrades.

In opposition, defendants argue that while it is true
that the Hibser deposition was not taken until after
the hearing on the motion, all the construction plans
and documents upon which Hibser relied were
produced in early April, almost three weeks before
the cross-motions for summary judgment were filed,
and were identified by specific Bates numbers in
Hibser's Rule 26 report which was delivered to
plaintiff on May 19, 2006. Defendants assert further

that the timing of the receipt of the plans is
irrelevant, in view of the court's ruling that Margen
is not qualified to testify regarding whether any
construction work at Kaiser Oakland triggered a
requirement to comply with federal or state
accessibility requirements.

Defendants also take issue with plaintiff's
characterization of Hibser's testimony, arguing that
while Hibser stated that the seismic work
throughout the hospital would have triggered some
paths-of-travel upgrades, he did not testify that it
would have triggered a requirement to construct a
patient bathroom with an accessible toilet and
shower. Defendants contend that only alteration to
the entire space occupied by a patient room would
have obligated Kaiser to comply with "new
construction" standards and bring the room up to
full compliance with accessible toilet and shower
facilities, and that there is no reference in the Hibser
testimony to construction that would trigger patient
bathroom modifications.

In reply, plaintiff argues that Hibser did not solely
rely on construction documents in reaching his
conclusions. He testified that he reviewed various
projects and spoke with Kaiser personnel if he
needed a clarification regarding a particular project
in reaching his final conclusion as to whether it
triggered accessibility requirements. Plaintiff claims
that Hibser's reliance on other witnesses is what was
not available to plaintiff and is what makes this
testimony "new evidence."

> Plaintiff also contends that seismic work inside any
> patient room would trigger obligations from the
> parking spaces through the patient room, which
> includes the bathroom. Plaintiff argues that Hibser's
> testimony establishes that there was work performed
> at Kaiser Oakland that may have triggered access
> obligations, and that based on the information
> provided to Margen, there is at a minimum a
> question of fact as to whether this work triggered
> any accessibility requirements.

**\*21**  The court finds that the Hibser testimony does
not constitute "newly discovered evidence" that
with due diligence could not have been discovered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 19

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

prior to the hearing on the cross-motions for summary judgment. Plaintiff does not dispute that defendants had produced the plans and construction documents relating to the seismic projects before the parties filed their motions, and that Hibser had produced his expert report identifying specific documents by Bates numbers well before the hearing. Apparently conceding that the plans and construction documents cannot be considered " newly discovered," plaintiff raises a new argument in the reply-that it was Hibser's testimony regarding conversations he had with Kaiser employees that constituted the "newly discovered evidence."

In addition, plaintiff has not established that the asserted "new evidence" is of such a magnitude that the court would have ruled otherwise if it had been presented with the evidence. The only deposition testimony provided by plaintiff with regard to seismic upgrades in the patient rooms is an excerpt containing Hibser's responses to questions regarding the seismic anchorage of the mounted wall light fixtures. Plaintiff has not pointed to any specific evidence of a structural seismic upgrade in a patient room that would have triggered the obligation to construct an entire new bathroom with accessible toilet and shower.

### (f) testimony and declaration of Judy Rowe

Sixth, plaintiff contends that the declaration of Judy Rowe, upon which the court relied in part for its conclusion that no "triggering alterations" occurred in Kaiser Oakland, is hearsay, based on deposition testimony by Rowe (after the hearing on the cross motions) that she did not make an independent determination as to whether any particular project triggered accessibility upgrades. Plaintiff asserts that because Rowe was not disclosed as an expert witness, she is not qualified to render an opinion as to whether any particular project triggered a further obligation on the part of Kaiser. Plaintiff also complains that defendants "unilaterally" moved Rowe's deposition to a date after the hearing on the cross-motions.

In opposition, defendants argue that Rowe's lack of expert qualifications does not constitute "newly

discovered evidence" justifying reconsideration. Defendants also contend that Rowe did not reach any expert conclusions in her declaration-that Rowe, who is a licensed architect, simply stated that she had performed a review of plans to determine the location, not the legal effect, of construction projects within Kaiser Oakland, and that she explained that part of her job involves oversight of project managers who monitor construction projects to determine whether the scope and location of the work triggers an obligation to modify a patient room. She did not state that she herself makes such determinations.

In reply, plaintiff asserts that he was limited in his ability to question Rowe by defendants, who have refused to produce her on issues other than the ones they think are relevant. Plaintiff also repeats his argument that Rowe's declaration should be discounted because she subsequently testified that she had not independently determined whether any project triggered Kaiser's obligation to provide an accessible toilet and shower in a patient room.

*22 Plaintiff's argument is without merit. In the order, the court cited Rowe's statement that she had reviewed all plans dating back to the original hospital construction date of 1970, and had " verified that none of those plans involved construction, alteration, or repair of patient rooms on the medical-surgical floors." As a licensed architect, Rowe was qualified to make that assessment. She did not reach any conclusions regarding whether there had been work that " triggered" accessibility requirements. The reference to "triggering" was the court's language, not Rowe's.

### (g) declaration of Ed Denton

Seventh, plaintiff argues that the court should not have relied on the declaration submitted by defendants' witness Ed Denton, because defendants failed to produce Denton for deposition, based on their determination that his opinions were no longer relevant in light of the court's ruling on defendants' motion for summary judgment. Plaintiff asserts that he was improperly deprived of the opportunity to question Denton about his declaration.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 20

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

Defendants respond that Denton is no longer employed by or affiliated with Kaiser, and that they rescheduled the Denton deposition several times at plaintiff's request. Defendants claim that finally, at the 11th hour, plaintiff requested a stipulation from defendants to allow plaintiff to take the deposition long after the hearing on the parties' cross-motions, and after the filing of the motions in limine. Defendants contend that they advised plaintiff more than once that if plaintiff failed to depose Denton on May 17, 2006 (the last agreed-upon date, which had been confirmed between the parties and then reconfirmed), plaintiff would lose his right to take the deposition. Defendants argue that it is ridiculous for plaintiff to now claim that he was "unilaterally" prevented from deposing Denton. Defendants also assert that Denton's declaration was not central to any of the court's ruling in the June 9, 2006, order, and the court used the information in the declaration merely as background.

In reply, plaintiff asserts that the court cited to Denton's declaration for factual assertions that included the cost of barrier removal and the "priorities" established by Kaiser with regard to the removal of barriers. Plaintiff states that he noticed Denton's deposition for a date prior to the hearing on the cross-motions, and that the deposition "was rescheduled to a date after the summary adjudication hearings, on June 16, 2006." Plaintiff asserts, however, that defendants "failed to produce Mr. Denton on the grounds that they did not believe his testimony was relevant any longer." Plaintiff contends that because plaintiff was precluded from taking Denton's deposition, the court should not have relied on his declaration, and should reconsider its ruling.

*Plaintiff's argument is without merit.* Plaintiff's counsel states in his declaration, "Ed Denton was disclosed first as a factual witness, then later as an expert. His deposition was previously set for May 17, but later moved to June 16, 2006. I was notified by defense counsel that they were not going to produce him because, in light of the [c]ourt's [o]rder, ... they were withdrawing him as an expert and did not believe his testimony was relevant any longer." Decl. of Gary Gwilliam ¶ 8.

*23 The declaration of defendants' counsel provides a more complete version of events, showing that defendants made every effort to accommodate the scheduling of depositions, including Denton's, and that it was plaintiff that cancelled the May 17, 2006 deposition. In other words, it was plaintiff that opted not to take Denton's deposition prior to the hearing on the cross-motions for summary judgment. Defendants unequivocally advised plaintiff that he would lose his right to depose Denton if he (plaintiff) refused to go forward with the deposition on May 17. The cut-off date for expert discovery was May 29, 2006.

Subsequently, on June 13, 2006, defendants' counsel advised plaintiff's counsel that, based on the court's June 9, 2006, order on the cross-motions for summary judgment, defendants were withdrawing their designation of Denton as an expert. Because the court cited to Denton's declaration in its discussion of Kaiser's response to the passage of the ADA and its implementation of a plan for ADA compliance, plaintiff now wants to depose Denton. However, defendants have withdrawn Denton as an expert, and need not make him available for deposition-particularly in view of the fact that plaintiff chose not to take the deposition as previously scheduled. Plaintiff has not provided any support for its claim that the court should disregard Denton's declaration.

Finally, and most importantly, plaintiff has not established that this dispute regarding the Denton deposition falls under one of the grounds for seeking reconsideration. Plaintiff does not explain how this dispute involves newly discovered evidence, clear error, or an intervening change in the controlling law.

### E. Defendants' Motion in Limine No. 1

Defendants' motion in limine No. 1 seeks to preclude evidence at trial as to matters that have been summarily adjudicated. The motion is GRANTED.

To the extent that defendants' intent is to assert that liability has been adjudicated with regard to claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 21

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

involving the patient room, the court has already indicated, at the final pretrial conference, that the only issues remaining involve the door hardware and the Hoyer lift. In particular, plaintiff may not present evidence regarding the catheter accident, his efforts to take a shower, or his experiences in connection with the 4th floor shower. (As indicated in the order on the cross-motions for summary judgment, liability has not been adjudicated with regard to issues of accessible parking and paths of travel.)

Plaintiff has yet to provide a clear statement of what claims he believes remain in the case. In his original trial brief, filed June 13, 2006, plaintiff argued that the only issue submitted in defendants' motion for summary judgment was whether it was readily achievable for defendants to provide one patient room that had an accessible toilet and shower. Plaintiff asserted that numerous issues remain to be litigated, including "issues of policy under Civil Code Section 54.1." Plaintiff argued that **\*24** [d]efendants have numerous policies which violate the California Civil Code. For instance, [d]efendants have admitted that they have a policy of evaluating the medical condition of hospital patients and, on the basis of a patient's medical condition, determining which patients should be confined to bed for medical reasons and required to submit to bed baths and to use bed pans instead of the in-room toilets and showers.

Although identified as one of "numerous policies" that violate the California Civil Code, this allegedly discriminatory policy with regard to medical evaluation is the only such policy identified by plaintiff in this trial brief. [FN16] Plaintiff argued that while this policy may not be discriminatory as applied to non-disabled patients, it is discriminatory as applied to disabled patients because "no matter the medical condition of a disabled patient, he or she is still classified as 'bed bound,' and regardless of his or her medical condition is required to submit to the use of bed baths and bed pans instead of using the in-room shower and toilet."

FN16. The only other reference to "policies" in the trial brief is in the statement, "

Many of [defendants'] policies of failing to provide accessible facilities violate these code sections [referring to Civil Code § 54.1], as explained through case law. This statement is followed in the brief by a general discussion of accessible parking.

Citing *Hankins v. El Torito,* plaintiff argued that a discriminatory policy may violate Civil Code § 51 and 54.1 without any violation of building standards. In other words, it is not necessary that there be a finding of a structural violation of access standards, if the defendant maintains a policy " unrelated to any structural impediment, which results in the denial of full and equal access by a disabled individual to a public accommodation." *Hankins,* 63 Cal.App. 4th at 522-23.

Apart from this single "policy" issue, the only other issues plaintiff identified in the original trial brief as unresolved were those involving the door hardware, the Hoyer lift, and the parking and paths of travel.

More recently, in a "supplemental" trial brief, filed July 11, 2006,[FN17] plaintiff seeks to clarify the " multiple remaining issues properly pled in the [c]omplaint and not determined by the Court's limited summary adjudication ruling in favor of defendants on the sole issue of Kaiser's liability to have provided an accessible toilet and shower in plaintiff's patient room."

FN17. The "supplemental" brief was untimely, and filed without leave of court.

Plaintiff first asserts that "all issues" remain for trial except the patient toilet room barrier removal issue upon which the court granted summary judgment for defendants. Plaintiff reiterates that "several major bases for liability" were not addressed by either of the parties' motions-including "the major *policy* issue of whether the manner in which John Mannick's needs as a disabled persons were ' accommodated' during his week of hospitalization denied him 'full and equal access' under state law and/or constituted 'policy' discrimination under the ADA." Plaintiff claims that these "policy" issues are "at the heart of plaintiff's case;" were "properly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 22

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

pled in the [c]omplaint to allege *independent obligations* under both state and federal law as to how a disabled patient must be treated and his disabilities accommodated;" and were supported during the summary judgment motion litigation by, among other things, the plaintiff's own declaration.

**\*25** In support of this argument, plaintiff cites to the allegations that Kaiser discriminated against him by failing to make "reasonable modifications in policies, practices, or procedures when such modifications were necessary to afford such goods, services, facilities ... or accommodations to individuals with disabilities." Cplt ¶ 29 (citing 42 U.S.C. § 12182(b)(2)(A)(ii)-the subsection (ii) " reasonable modification" claim addressed at length above, in the discussion of the parties' cross-motions for summary judgment). Plaintiff claims that these "policies and practices" issues alone entitle him to present his story to a jury.

However, as indicated above, there is no subsection (ii) claim remaining with regard to the patient bathroom, because plaintiff did not meet his burden of showing that he requested a modification or that the proposed modification was reasonable. Although defendants did not clearly identify the reasonable modification issue as a subsection (ii) claim, they did identify it as a claim of discrimination, and did provide evidence relating to the required elements of the claim. And while the order also did not identify it as a subsection (ii) issue, it was clearly identified as a "discrimination" claim.

Plaintiff also claims that the facts of the "policies and practices" as actually applied to the needs of a disabled person "may show a violation of one of the other subsections defining 'Discrimination' under the ADA." In the complaint, plaintiff alleged, without factual specificity, that defendants had violated subsections (ii), (iii), (iv), and (v) of 42 U.S.C. § 12182(b)(2)(A). However, as detailed above in the discussion of the cross-motion and the motion for reconsideration, the court also granted summary judgment on the claims under subsections (iv) and (v), in addition to granting summary judgment on the subsection (ii) claim.[FN18]

FN18. Neither party referred to subsection (iii) in the briefing on the cross-motions. Of the issues remaining in the case, only the claim involving the Hoyer lift appears to fall under subsection (iii). Plaintiff suggests that the claims involving door hardware, width of doorways, and lack of accessible roll-in shower also assert violations of subsection (iii). As pled in the complaint, these are architectural barrier claims, not claims of failure to provide auxiliary aids and services.

Nor does plaintiff provide any authority for this new theory that a plaintiff whose ADA Title III discrimination claims have been eliminated from the case in summary judgment can revive those claims under the guise of a claim of "policies, practices, and procedures" issues relating to whether the plaintiff was treated in a discriminatory manner-particularly where the complaint contains not a hint of such "policies and practices" claims. The court also notes that despite having had the opportunity to file numerous briefs in this case, plaintiff remains unable to articulate exactly what these discriminatory "policies and practices" are.

As explained above, in the discussion of the parties' cross-motions, plaintiff provided no evidence to support his assertion that Kaiser had a "policy" or a "practice" of categorically classifying all disabled patients as "bed-bound," without regard for their true medical or physical condition, while defendants provided evidence showing that Kaiser had a practice of medically evaluating each patient admitted to the hospital. As the court found in the June 9, 2006, order, plaintiff was categorized, based on the assessment of his mobility, as a "total assist" patient with regard to hygiene needs, and a "high injury risk" because of his limited mobility. Plaintiff neither alleged any other discriminatory "policy," nor provided evidence of such a policy.

**\*26** Finally, plaintiff contends that the "policy" issue of Kaiser's failure to provide him with accommodations (including accessible toilet and shower) are still before the court under Civil Code § 54.1. Plaintiff relies entirely on *Hankins v. El Torito* to support this argument. However, the facts in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 23

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
(Cite as: Slip Copy)

*Hankins* are distinguishable.

In *Hankins,* the defendant restaurant had a public restroom that was inaccessible to disabled customers because it was located on the second floor, up a flight of stairs. The restaurant was as also equipped with an accessible employee restroom on the first floor, and was therefore not in violation of disability access requirements. Nevertheless, the restaurant refused to allow the disabled plaintiff to use the accessible employee restroom. The court found that although the restaurant was equipped with an accessible restroom, it had nonetheless violated Civil Code § 54.1 by imposing a "policy" that the accessible restroom could be used by restaurant employees only, and that restaurant customers could use only the inaccessible restroom.

In the present case, Kaiser Oakland had no accessible bathroom in any patient room on any of the medical-surgical floors. Plaintiff has made no claim that Kaiser had accessible facilities available, but had a "policy" of denying disabled patients access to those facilities. In the words of the *Hankins* court, this is not a case involving a policy "unrelated to any structural impediment, which results in the denial of full and equal access." *Hankins,* 63 Cal.App. 4th at 522-23.

Having found that there is no viable ADA barrier removal claim or claim of failure to make reasonable modifications with regard to the patient toilet and shower, the court need not consider the exact same claims disguised as a claim of discriminatory "policy."

### F. Plaintiff's Objections to Ruling on Defendants' Rule 37(c) Motion

On June 23, 2006, Magistrate Judge Spero heard arguments on three discovery-related motions. In one of these disputes, defendants sought an order pursuant to Federal Rule of Civil Procedure 37(c) to exclude from trial any testimony relating to the supplemental reports prepared by plaintiff's experts Dr. Rosabel Young and Robert Johnson, on the ground that the supplemental reports were untimely.

At the hearing, Judge Spero ruled from the bench, ordering that Young and Johnson could testify only as to opinions contained in their earlier May 19, 2006, Rule 26 disclosures. Also on June 23, 2006, Judge Spero issued a written order summarizing his rulings with regard to the three motions heard on that date. The order was e-filed, entered, and electronically served on the parties on June 23, 2006.

Eleven court days later, on July 11, 2006, plaintiff filed a "notice of intent to file objections" to Judge Spero's discovery ruling, pursuant to Federal Rule of Civil Procedure 72. In this filing, plaintiff asserted that Judge Spero had not made any findings in his order-"[i]nstead, they were made on the record." Plaintiff claims that "[u]pon conclusion of the hearing," he "requested a copy of the written transcript," but that he did not receive the transcript until July 11, 2006. He stated that he would be filing his objections "shortly." Eight court days later, on July 21, 2006, plaintiff filed the objections.

*27 Rule 72 provides, with regard to nondispositive matters referred to a magistrate judge for resolution, that "[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order." Fed.R.Civ.P. 72(a). "[A] party may not therefore assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* There is no provision in Rule 72(a) that permits the objecting party to delay filing objections to rulings on nondispositive matters past the 10-day limit.

Plaintiff claims that "[d]ue to Judge Spero's upcoming travel schedule, the transcript of the hearing, not the order, contained his findings." Plaintiff does not include a copy of the transcript with the objections, but the only "findings" plaintiff refers to in the objections are Judge Spero's rulings that there was no substantial justification for the late supplemental reports and that plaintiff had not shown that the late reports were harmless. Judge Spero stated the reasons for his rulings on the record, in open court, and plaintiff's counsel could easily have prepared objections based on Judge Spero's statements at the hearing, combined with the written order issued by Judge Spero the same day.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 24

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

Plaintiff provides no credible justification for his failure to file the objections within the time required by Rule 72(a). Accordingly, the objections are OVERRULED.

### CONCLUSION

In accordance with the foregoing, the court hereby DENIES plaintiff's motion for reconsideration, GRANTS defendants' motion in limine No. 1, and OVERRULES plaintiff's objections to Judge Spero's ruling on defendants' Rule 37(c) motion.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Mannick v. Kaiser Foundation Health Plan, Inc.
Slip Copy, 2006 WL 2168877 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2236383 () Declaration of Peter Margen in Support of Plaintiff's Request for Leave to File Motion for Reconsideration of Court's Order Granting Defendants' Motion for Summary Adjudication of June 9, 2006 (Jul. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1785949 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Objections to Defendants' Use of New Arguments and New Evidence in Support of Defendants' Reply on Defendants Summary Judgment Motion (May 30, 2006) Original Image of this Document (PDF)
• 2006 WL 2094400 () Videotaped Deposition of Arthur S. Shorr, Fache (May 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1785948 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objections to Defendants' Use of New Arguments and New Evidence in Support of Defendants' Reply on Defendants' Summary Judgment Motion (May 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1785943 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Points & Authorities in Reply to Defendants' Opposition to Plaintiff's Motion for Summary Adjudication (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1785944 (Trial Motion, Memorandum

and Affidavit) Plaintiff's Objection to Defendants' Use of Previously Undisclosed Witnesses and Evidence, and Objections to Evidence Raised by Defendants in Their Opposition to Plaintiff's Motion for Summary Adjudication (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1785945 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Adjudication (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1785947 (Trial Motion, Memorandum and Affidavit) Response to Plaintiff's Motion to Exclude Defendants' Witnesses and Evidence, and Objections to Evidence (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1785938 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Points & Authorities in Opposition to Defendants' Motion for Summary Adjudication (May 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1785940 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Exclude Defendants' Witnesses and Evidence, and Objections to Evidence (May 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1785941 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiff's Motion for Summary Adjudication of Liability (May 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1785942 (Trial Motion, Memorandum and Affidavit) Defendants' Objections to Evidence Submitted by Plaintiff in Support of Motion for Summary Adjudication of Liability (May 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1417234 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Points & Authorities in Support of Plaintiff's Motion for Summary Adjudication on Liaiblity (Apr. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 2236385 () Declaration of Edward J. Denton in Support of Defendants' Motion for Summary Judgment or in the Alternative Summary Adjudication (Apr. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 728122 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Compel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 25

Slip Copy, 2006 WL 2168877 (N.D.Cal.)
**(Cite as: Slip Copy)**

Discovery Regarding Defendants' Overall Financial
Resources (Feb. 16, 2006) Original Image of this
Document (PDF)
• 2005 WL 3606742 (Trial Motion, Memorandum
and Affidavit) Reply in Support of Defendants'
Motion to Compel Arbitration and Stay Action
(Nov. 30, 2005) Original Image of this Document
(PDF)
• 2005 WL 3606740 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Points &
Authorities in Support of Plaintiff's Opposition to
Defendants' Motion to Amend Answer (Nov. 16,
2005) Original Image of this Document (PDF)
• 2005 WL 3606741 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Points &
Authorities in Support of Plaintiff's Opposition to
Defendants' Motion to Compel Arbitration (Nov.
16, 2005) Original Image of this Document (PDF)
• 3:03cv05905 (Docket) (Dec. 31, 2003)
• 2003 WL 25230515 () (Partial Testimony) (2003)
Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                      Page 1

Not Reported in F.Supp., 1991 WL 16495 (D.Colo.)
**(Cite as: Not Reported in F.Supp.)**

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.
Joseph McHUGH and Marcia Kehl, Plaintiffs,
v.
APACHE CORPORATION, a Delaware
Corporation, Defendant.
**Civ. A. No. 89-A-1297.**

Feb. 1, 1991.

Darold W. Killmer, Gilbert M. Roman, Feiger,
Collison & Killmer, Denver, Colo., for plaintiff.
Janet A. Savage, Popham, Haik, Schnobrich &
Kaufman, Ltd., Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.
*1 This matter is before the court on the plaintiff
McHugh's motion for reconsideration of Magistrate
D.E. Abram's order which bars the plaintiff from
presenting evidence at trial of his lost wages for
1988 and 1989. A hearing on this matter was held
on January 10, 1991. The court has considered the
oral arguments, briefs and documents submitted by
counsel, and rules as follows.

BACKGROUND

The defendant Apache Corporation served the
plaintiffs with interrogatories in March 1990. The
plaintiffs filed for a protective order which was
denied by the Magistrate and the plaintiffs were
ordered to answer. On July 6, 1990, the Magistrate
ordered the plaintiff McHugh to produce tax returns
that were requested in the March interrogatories.
On August 28, 1990, the defendant filed a motion
for sanctions for failure to provide the tax returns.
A hearing was held on September 28, 1990 on the
motion, and the Magistrate found that McHugh had

failed to comply with the court's order of July 6,
1990, and imposed a ten dollar a day fine until all
tax returns for 1984-1989 were produced to defense
counsel. The plaintiff was also ordered pay the
attorney's fees and costs of the defendant incurred
pursuing the motion for sanctions. On December
19, 1990, a hearing was held on a renewed motion
for sanctions because the tax returns had not been
produced. Defendant's counsel claimed at that
hearing that it was not until December 18, 1990 that
she was informed by counsel for the plaintiff that
the requested tax returns did not exist because the
plaintiff had not filed returns. Defendant requested
sanctions in the form of dismissal of the plaintiff's
complaint.

Plaintiff's counsel responded that he was unaware
until after the September 28th hearing that his client
had not filed income tax returns for the years in
question. Counsel represented that the plaintiff had
been audited by the Internal Revenue Service, and
therefore he had not had access to the plaintiff's tax
records. The plaintiff's counsel argued that despite
the fact that the actual tax returns do not exist, he
had provided the defendant with the itemized
examination report that the IRS had prepared which
provided all the necessary information the
defendants required.

Magistrate Abram concluded that the plaintiff had
wrongfully wasted the court's time and that there
was no excuse for forcing the defendant to file a
motion to compel documents that do not exist. The
Magistrate granted the defendant attorney's fees,
and prohibited the plaintiff from presenting
evidence at trial of lost income between 1988-1989.
The plaintiff is not contesting the award of the
attorney's fees, but does request that the court
reconsider the Magistrate's order barring evidence
of lost wages for 1988-1989.

STANDARD OF REVIEW

Any non-dispositive order made by a magistrate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                      Page 2

Not Reported in F.Supp., 1991 WL 16495 (D.Colo.)
**(Cite as: Not Reported in F.Supp.)**

may be reviewed by the district court under a clearly erroneous or contrary to law standard of review. *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1462 (10th Cir.1988). The clearly erroneous standard requires that the court affirm the magistrate, unless on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed. *Id.* at 1464. Magistrates may only make proposed findings of fact and recommendations concerning dispositive motions, and district courts must review the recommendation *de novo* if a party objects to the magistrate's conclusions. *Id.* at 1462. In conducting a *de novo* review a court should make an independent determination of the issues, and is not to give any special weight to the prior determination. *Id.* at 1464. The court is free to adopt the magistrate's recommendation or wholly ignore it. *Id.*

*\*2* The Magistrate's order in this case was inextricably tied to the discovery process, and therefore should be treated as a non-dispositive motion. *See Wang Laboratories, Inc. v. CFR Associates, Inc.,* 125 F.R.D. 10, 12 (D.Mass.1989) (where the concerns about an expert witness had to do with access to confidential material produced during the pre-trial discovery period and not qualifications of an expert was non-dispositive and within the magistrate's jurisdiction because it was inextricably tied to discovery process). However, under either a clearly erroneous or *de novo* standard of review, this court feels the sanctions imposed by the Magistrate were warranted, and should be upheld against the plaintiff McHugh.

### DISCUSSION

The plaintiff argues that the Magistrate's ruling is the functional equivalent of an involuntary dismissal, and thus outside of the Magistrate's scope of authority.[FN1] The plaintiff claims that by barring evidence of lost wages for 1988-1989 the plaintiff is denied the opportunity to recover over 100,000 dollars in back pay, and therefore the Magistrate's order "has the identical effect of striking plaintiff McHugh's claim for back pay."

The Tenth Circuit has held "that the striking of pleadings with prejudice, whether as a discovery sanction or for some other reason, constitutes the involuntary dismissal of an action within the meaning of 636(b)(1)(A)." *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d at 1463. The case at bar, however, differs significantly from the facts of *Ocelot* in that the Magistrate has not dismissed any action of the plaintiffs, but rather limited the evidence that the plaintiff may present at trial. While it is true that the plaintiff's potential award on that claim is limited by the Magistrate's order, if the plaintiff files his proper tax return for 1990 he may present evidence as to his losses for that year. *Cf. Bender v. Southland Corp.,* 749 F.2d 1205, 1214 (6th Cir.1984) (magistrate imposed sanctions on plaintiffs barring testimony concerning past damages suffered, but not future damages, for improperly answering interrogatories). Therefore, the plaintiff's claim for back pay is still a viable claim, and the Magistrate's ordered sanction is not an involuntary dismissal. *See Devore & Sons, Inc. v. Aurora Pacific Cattle Co.,* 560 F.Supp. 236, 239 (D.Kan.1983) (magistrate's striking of a counterclaim for failure to answer an interrogatory falls was within the magistrate's statutory authority).

The plaintiff contends that this case is analogous to a recent Sixth Circuit opinion that held a denial of a motion to proceed in forma pauperis is the functional equivalent of an involuntary dismissal and is outside of the scope of a magistrate's authority. *Woods v. Dahlberg,* 894 F.2d 187 (6th Cir.1990). The decision to deny a pauper's petition, however, has the potential to prevent an indigent plaintiff from bringing a suit. In the case at bar, the Magistrate's order does not eliminate any of the plaintiff's claims. *See Von Brimer v. Whirlpool Corporation,* 536 F.2d 838, 844 (9th Cir.1976) (evidence excluded by trial judge under rule 37(b)(2)(B) is not the equivalent of a dismissal).[FN2]

*\*3* The plaintiff's actions in this case have been egregious. Mr. McHugh has known from the inception of this action that he had not filed tax returns for 1988 and 1989, yet he did not share this information with opposing counsel or the court until after two court orders were issued and subsequently

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3

Not Reported in F.Supp., 1991 WL 16495 (D.Colo.)
**(Cite as: Not Reported in F.Supp.)**

ignored. It is the court's valid expectation that its discovery rulings will be obeyed, and that the parties will honestly represent their respective positions. The court has considered the fact that the plaintiff has supplied a report, apparently compiled by the IRS, in lieu of the non-existent tax returns, but that information does not excuse the plaintiff's defiance of the court and his delay in admitting that the tax returns do not exist. This is not a case where an innocent party shall be made to suffer for the mistakes of counsel, plaintiff has "no one to blame but [himself] for the fatal flaws in [his] discovery strategy." *Pauley v. United Operating Co.,* 606 F.Supp. 520, 527 (E.D.Mich.1985) (the court accepted the magistrate's recommendation that default judgment be entered against the defendants for abuse of the discovery process.

Based on the above and foregoing, the court adopts the order of Magistrate Abram in this matter. Accordingly, it is ORDERED that,

1. Plaintiff McHugh will not be allowed to present evidence at trial of his lost wages for the years 1988 and 1989.

2. Plaintiff McHugh will pay the appropriate attorney's fees and costs of the defendant incurred in bringing the original motion and the renewed motion to compel as ordered by the Magistrate.

FN1. A magistrate's jurisdiction is set forth in 28 U.S.C. § 636(b)(1)(A) which provides:
(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under

this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

FN2. The defendant argues that the Magistrate's order falls under Rule 27(b)(2)(B) F.R.Civ.P. which provides that when a party fails to obey a discovery order the court may issue:
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence;

D.Colo.,1991.
McHugh v. Apache Corp.
Not Reported in F.Supp., 1991 WL 16495 (D.Colo.)

Briefs and Other Related Documents (Back to top)

• 1:89CV01297 (Docket) (Aug. 01, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                  Page 1

Not Reported in F.Supp., 1997 WL 910426 (W.D.N.C.), 39 Fed.R.Serv.3d 1437
**(Cite as: Not Reported in F.Supp.)**

**C**
Briefs and Other Related Documents

United States District Court, W.D. North Carolina.
Leanna R. MILLER, Plaintiff,
v.
SPRINT COMMUNICATIONS, Defendant.
**No. 3:97CV156-P.**

Dec. 31, 1997.

Leanna R. Miller, Charlotte, Pro se.
Randall D. Avram, Hunton & Williams, Raleigh,
Andrew D Shore, Hunton & Williams, Charlotte,
for Sprint Communications, defendants.

ORDER

POTTER, Senior District J.
**\*1** THIS MATTER is before the Court on the
Defendant's Motion to Dismiss Pursuant to Rule
37(b)(2)(C) of the Federal Rules of Civil Procedure
[document no. 11, filed on 25 November 1997].
Because the Plaintiff's failure to comply with
discovery and this Court's orders is inexcusable, the
Court will grant the Defendant's Motion to Dismiss.
The Court will deny the Defendant's Motion for
Fees and Costs because it would not be in the
interests of justice to grant the Motion.

I. FACTUAL BACKGROUND AND
PROCEDURAL HISTORY

The pro se Plaintiff filed her Complaint on 19
February 1997. On 1 August 1997, the Defendant
served the following discovery by first class mail on
the Plaintiff: (1) Defendant's First Request for
Production of Documents ("Document Request");
(2) Defendant's First Set of Interrogatories
(Production of Documents and Interrogatories
hereinafter collectively as "Discovery"); and (3)
Defendant's Notice of Plaintiff's Deposition.[FN1]

FN1. Defendant scheduled the deposition
for 5 September 1997.

The Plaintiff's responses were due on or about 3
September 1997. *See* Fed.R.Civ.P. 33 and 34.
However, the Plaintiff failed to respond to
Discovery and did not contact the Defendant. On 4
September 1997, one day prior to the Plaintiff's
scheduled deposition and after the Plaintiff failed to
respond to Discovery, the Defendant attempted to
contact the Plaintiff, to no avail, in order to
reschedule the deposition for 3 October 1997.
Defendant then mailed the Plaintiff an Amended
Notice of Deposition for October 3, 1997 and a
letter which informed the Plaintiff that the
Defendant would file a motion to compel
documents and seek sanctions and attorneys' fees if
the Plaintiff did not respond to Discovery by
September 10, 1997. The Plaintiff failed to respond
to the Discovery requests. The Defendant then filed
a Motion to Compel Discovery. Next, the Plaintiff
failed to attend her deposition on 3 October 1997,
and did so without attempting to contact the
Defendant.[FN2]

FN2. The Defendant maintains that it
incurred substantial costs while preparing
for and attending the deposition, which
included the Defendant's in-house counsel
traveling from his office in Kansas City,
Kansas.

On 21 October 1997, Magistrate Horn granted the
Defendant's Motion to Compel Discovery. In that
Order, Magistrate Horn, in very clear language,
ordered the following:
"*On or before November 14, 1997,* the plaintiff
shall either: (a) provide responsive documents
and/or answers to "Defendant's First Request For
Documents" and Defendant's First Set of
Interrogatories; *or* (b) notify the Court in writing
that she wishes to voluntarily dismiss her Complaint.
" (Order, 21 October 1997 (emphasis in original).)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.