Not Reported in F.Supp.                                                         Page 2

Not Reported in F.Supp., 1997 WL 910426 (W.D.N.C.), 39 Fed.R.Serv.3d 1437
**(Cite as: Not Reported in F.Supp.)**

Further, Magistrate Horn cautioned the Plaintiff that the failure to comply with the Discovery requests could result in sanctions and/or the involuntary dismissal of the matter, and he would recommend involuntary dismissal with prejudice if the Plaintiff did not respond as ordered.

On 14 November 1997, the deadline set by Magistrate Horn, the Plaintiff filed an Objection in which she did not provide documents or answers to the Discovery requests as ordered by Magistrate Horn. Rather, the Plaintiff stated that she would " from this day forth ... cooperate fully with legal representation for this case." Hence, the Court finds that the Plaintiff did not comply with Magistrate Horn's Order.

**\*2** The Defendant then filed a Motion to Dismiss With Prejudice pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure for the Plaintiff's failure to comply with Magistrate Horn's Order. The Plaintiff filed a Response in which she attempted to show cause for failure to provide the Discovery requests due to her financial hardship, unemployment, and difficulty in obtaining a stable residence. Importantly, however, the Plaintiff did not, and has not, complied with discovery requests or this Court's orders.

## II. DISCUSSION AND LEGAL ANALYSIS

Rule 37 of the Federal Rules of Civil Procedure governs a motion to dismiss and for sanctions based on the failure of a party to obey an order to provide or permit discovery. That Rule provides in pertinent part:
(b) Failure to Comply with Order.
(2) Sanctions by Court in Which Action is Pending. If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following ...
(C) An order ... dismissing the action or proceeding or any part thereof ....
(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection. If a party ... fails (1) to appear before the officer who is to take the

deposition after being served with a proper notice ... the court in which the motion is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.... In lieu of any order or in addition thereto the court shall require the party failing to act ... to pay reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Hence, it is evident from Rule 37 that the failure of a party to obey a discovery order can lead to the dismissal of the action and the award of reasonable expenses including attorney's fees.

Courts applying Rule 37 have found that the rule should not be applied as an initial remedy. *See generally 7 Moore's Federal Practice,* § 37.05 (1997) (hereinafter "Moore's"). A trial court should not use the harsh sanction of dismissal when the failure to obey the discovery order was a result of a party's inability to do so after good faith efforts at compliance. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). Courts have generally held that there must be some element of bad faith, willfulness, gross negligence, or callous disregard of the rights of other litigants in order to justify imposition of the sanction of dismissal. *See* Moore's §§ 37.51 & 37.93.

It is well-settled that the determination of whether the factual situation of any given case justifies dismissal for violation of a discovery order is left in the sound discretion of the trial court.[FN3] The purposes of the sanction of dismissal are to penalize conduct and to deter those who might be tempted to such conduct in the absence of such a deterrent. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam).

> FN3. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1997 WL 910426 (W.D.N.C.), 39 Fed.R.Serv.3d 1437
(Cite as: Not Reported in F.Supp.)

643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). "[T]he question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action: it is whether the District Court abused its discretion in so doing." *Id.* at 642, 96 S.Ct. at 2780; *see also Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 504 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).

*3 The Court of Appeals for the Fourth Circuit has directed that district courts consider four factors in deciding whether to impose the sanction of dismissal when a party fails to comply with a discovery order. *Mutual Federal Savings & Loan Association v. Richards & Associates,* 872 F.2d 88, 92 (4th Cir.1988). The factors include: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the party's noncompliance caused the adversary, which necessarily includes an inquiry into the materiality of the evidence the noncomplying party failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.*

In this case, the Court's examination of the relevant factors leads it to conclude that the Defendant's Motion to Dismiss is meritorious. First, the Court believes the Plaintiff has acted in bad faith. The uncontradicted evidence that Defendant has produced in the form of an affidavit, letters to Plaintiff, and notices of deposition demonstrates that the Defendant attempted to depose the Plaintiff at least twice. The Plaintiff either willfully failed to appear as scheduled or it was apparent the Plaintiff would not appear, at great inconvenience and cost to the Defendant. The Plaintiff has failed to come forward with any legitimate reason for not attending the deposition scheduled for 3 October 1997.

More importantly, the Plaintiff to date has not complied with Magistrate Horn's Order in which the Plaintiff was to comply with the Defendant's discovery requests not later than 14 November 1997. Nor has the Plaintiff proffered a legitimate reason for her failure to comply with Magistrate

Horn's Order. Thus, the Court concludes that the Plaintiff disregarded the Court's Orders in bad faith.

Second, the Court finds that the Plaintiff's failure to comply with Discovery requests and this Court's orders has caused the Defendant significant prejudice. The Discovery requested by the Defendant-First Request for Production of Documents, First Set of Interrogatories and Notice of Plaintiff's Deposition-are relevant and material to the case as they are requested of the Plaintiff, the sole Plaintiff in the case. Clearly, the Plaintiff's refusal to provide the requested Discovery effectively estopped the Defendant from preparing this case.

Third, the Court believes that the need for deterrence of this type of noncompliance is vital for the efficient administration of justice. If parties were permitted to routinely ignore notices for depositions and discovery requests, the Court would be required to intervene in the discovery process of every case. In this case alone, the Court has entered two discovery orders to no avail. With the tremendous caseload federal district courts must manage, this type of involvement in every case would create unmanageable dockets. Accordingly, the Court believes that in this case it is necessary " [t]o deter those who might be tempted to such conduct in the absence of such a deterrent ... Other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781.

*4 Fourth, the Court is unable to conclude that less drastic sanctions would be effective. Plaintiff has failed to suggest less drastic sanctions would ensure her compliance with the Court's discovery orders. Due to Plaintiff's financial condition, the Court is certain that monetary sanctions would be ineffective due to Plaintiff's indigent status. *See* Fed.R.Civ.P. 37(c); *see also Rogler v. Phillips Building Mental Retardation Program,* 126 F.R.D. 509, 514 (D.Md.1989). Nor can the Court find that evidence Plaintiff has withheld be established as true due to the fact that Plaintiff has not provided Defendant with any substantive information. *See* Fed.R.Civ.P.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1997 WL 910426 (W.D.N.C.), 39 Fed.R.Serv.3d 1437
**(Cite as: Not Reported in F.Supp.)**

37(b)(2)(A); *see also Mutual Federal Savings & Loan,* 872 F.2d at 93. Finally, the Court is unable to strike out part of the pleadings because the Title VII claim is the heart of the complaint. *See* Fed.R.Civ.P. 37(b)(2)(C). While the Court could find Plaintiff in contempt, the Court would have to imprison Plaintiff because she is unable to pay a fine. The Court does not believe, given the crowded conditions of the Mecklenburg County Jail, that such an alternative is appropriate in this case. Thus, the Court believes that the most effective option is to dismiss this action.

### III. CONCLUSION

In sum, the Plaintiff has been in blatant noncompliance with this Court's direct orders and the Federal Rules of Civil Procedure for nearly four months. The Court believes it has exercised a great deal of patience with the Plaintiff by allowing her nearly six weeks to comply with Magistrate Horn's Order compelling discovery. Although the fact that the Plaintiff is pro se requires some attention, it surely does not excuse the Plaintiff's failure to provide the requested Discovery, much less her failure to comply with direct orders of this Court.

The Defendant has requested that reasonable expenses be assessed against the Plaintiff. However, because of the Plaintiff's indigence, the Court does not believe that awarding expenses would be in the interest of justice at this time. Accordingly, the Court will grant the Defendant's Motion to Dismiss, but deny the Defendant's Motion to award expenses.

NOW, THEREFORE, IT IS ORDERED that the Defendant's Motion to Dismiss Pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure [document no. 11] be, and hereby is, GRANTED.

IT IS FURTHER ORDERED that the Defendant's Motion for Fees and Costs be, and hereby is, DENIED.

The Court will file a corresponding Judgment dismissing this matter with prejudice.

W.D.N.C.,1997.

Miller v. Sprint Communications
Not Reported in F.Supp., 1997 WL 910426 (W.D.N.C.), 39 Fed.R.Serv.3d 1437

Briefs and Other Related Documents (Back to top)

• 3:97CV00156 (Docket) (Apr. 03, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re: ORTHOPEDIC BONE SCREW
PRODUCTS LIABILITY LITIGATION
No. MDL 1014.

May 5, 1998.

*MEMORANDUM AND PRETRIAL ORDER NO.*
*1387*
BECHTLE, J.
**\*1** Presently before the court is the Plaintiffs' Legal
Committee's ("PLC") application for fees and costs
pursuant to Pretrial Order No. 1198 ("PTO No.
1198"), Synthes U.S.A., Synthes Inc. and Synthes
North America's ("Synthes") motion to reconsider,
clarify or amend PTO No. 1198 and the responses
thereto. For the reasons set forth below, the PLC's
application for fees and costs will be granted in part
and denied in part. Synthes motion to reconsider,
clarify or amend PTO No. 1198 will be granted in
part and denied in part.

## I. *BACKGROUND*

In PTO No. 1198, the court ordered discovery
sanctions against Synthes, precluding it from raising
the statute of limitations defense and directing the
PLC to submit an application for fees and costs
incurred in seeking discovery materials improperly
withheld by Synthes. The court ordered the
sanctions in response to Synthes' failure to produce
*discovery materials requested in the PLC's master*
discovery requests made in November of 1994. In
May of 1995, the PLC filed a motion to compel
further responses from manufacturer defendants,
including Synthes, to the PLC's master discovery
requests. In August of 1995, upon consideration of
that motion, this court issued PTO No. 102,
ordering the manufacturing defendants, including

Synthes, to furnish complete responses to the initial
master discovery requests.[FN1] On September 25,
1997, at the deposition of James Gerry, Senior Vice
President of Synthes U.S.A., Mr. Gerry stated that
Synthes' continuing education department maintains
attendee lists, materials relating to AO spine
courses in offshore (outside the U.S.) locations and
documents relating to Synthes' financial support of
the faculty and attendees of those courses. In
October of 1997, the Special Discovery master
concluded that these materials were responsive to
the PLC's master discovery requests made in
November of 1994 and recommended that the court
enter sanctions against Synthes for failure to comply
with the master discovery requests.[FN2] The court
agreed with the Special Master's recommendation
and because Synthes' failure to comply with
discovery also violated the court's Order embodied
in PTO No. 102 the court sanctioned Synthes in
PTO No. 1198. [FN3] On January 8, 1998, the PLC
filed an application seeking fees and costs pursuant
to PTO No. 1198. On January 26, 1998, Synthes
filed objections to the PLC's application for fees
and costs and a motion to reconsider, amend or
clarify PTO No. 198.

## II. *DISCUSSION*

### A. *Motion to Reconsider, Amend or Clarify*

Synthes asks the court to amend its ruling in PTO
No. 1198.[FN4] Synthes asserts four grounds for
amendment. The grounds asserted are as follows:
1) Synthes was deprived of its due process rights
when it was not given notice and an opportunity to
be heard on the form of sanction the court was
considering;
2) This is the first sanction imposed upon Synthes
and precluding its statute of limitations defense in
all MDL actions is extreme and should not be
imposed as a first measure;
**\*2** 3) In applying the *Poulis v. State Farm Fire and*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 2

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

*Cas. Co.* factors, factual and legal errors were made which affected the severity of the sanction imposed; and

4) The preclusion of the statute of limitations defense in all MDL No. 1014 actions does not relate to the harm or prejudice suffered as a result of the sanctioned misconduct.

(Mem.Supp.Mot. to Recons. at 3).

### 1. *Due Process*

Synthes argues that its dues process rights were violated when the court imposed the sanction of precluding its statute of limitations defense in all past, present and future MDL No. 1014 civil actions. Synthes argues that it was not given particularized notice that the court was contemplating this form of sanction and was deprived of an opportunity to be heard on the subject. The court disagrees.

The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before imposing sanctions on a litigant. *Martin v. Brown,* 63 F.3d 1252, 1262 (3d Cir.1995). The process that is due varies with the nature of the particular dispute and the circumstances of each case. *Id.* Particularized notice of the grounds for sanction is generally required. *Id.* at 1263. However, the context and the factual background of a case can provide a party with notice of impending sanctions. *In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 380 (3d Cir.1997).

The court finds that given the circumstances of the *discovery dispute between Synthes and the PLC,* Synthes was afforded the requirements of due process prior to the court imposing sanctions under Federal Rule of Civil Procedure 37. In May of 1995, the PLC filed a motion to compel discovery naming Synthes as a defendant that did not comply with its master discovery requests. Upon consideration of that motion and the responses thereto, the court issued PTO No. 102 on August 28, 1995. In that Order, the court specifically ordered Synthes to provide complete responses to

the PLC's master discovery requests. Upon consideration of that motion and the responses thereto, the court issued PTO No. 102 on August 28, 1995. In that Order, the court specifically ordered Synthes to provide complete responses to the PLC's master discovery requests. Two years later, during the deposition of James Gerry, the PLC learned that Synthes had not fully complied with the court's discovery order. The PLC and the Special Discovery Master informed the court that Synthes failed to comply with that Order. It is fundamental that failure to comply with a court's discovery order may result in the imposition of sanctions under Federal Rule of Civil procedure 37(b)(2). Issuance of a court order requiring the production of discovery materials in response to a motion to compel provides a party with notice that discovery sanctions may follow if the order is not complied with. Fed.R.Civ.P. 37(b)(2).

In addition to the court's August 1995 Order, Synthes received notice of the possibility of discovery sanctions through its contact with the PLC and the Special Discovery Master beginning in late September of 1997. By letter dated September 29, 1997, the PLC notified the Special Discovery Master that it believed Synthes had failed to comply with discovery and that the PLC wanted to discuss the imposition of appropriate sanctions for Synthes' failure to produce the discovery materials at the Special Discovery Master's next status conference. Counsel for Synthes received a copy of this letter. On October 3, 1997, Synthes' counsel responded to that letter and acknowledged the PLC's request for sanctions. On October 7, 1997, the Special Discovery Master convened a MDL No. 1014 weekly status conference. During that conference the PLC and counsel for Synthes both presented their view of the discovery dispute to the Special Discovery Master. During that discussion, the PLC stated that it wanted Synthes before this court for sanctions. (Tr. 10/7/97 at 21.) Additionally, during that discussion the Special Discovery Master informed Synthes that he would suggest that the court consider imposing sanctions based on Synthes' failure to comply with discovery. The letters and the discussion before the Special Discovery Master gave Synthes further notice that it could be facing sanctions for failure to comply with discovery.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 3

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**\*3** Synthes received additional notice that it might be subject to discovery sanctions on October 27, 1997 when the Special Discovery Master issued Decision and Recommendation No. 43. In Decision and Recommendation No. 43, the Special Discovery Master recommended that the court impose sanctions for Synthes' failure to comply with discovery. On October 31, 1997, Synthes' demonstrated its knowledge of possible discovery sanctions when it filed its objections to Decision and Recommendation No. 43 with this court. In this filing, Synthes specifically argued against the imposition of sanctions under Federal Rule of Civil Procedure 37. (Synthes' Mem.Supp.Obj. at 7-12.) Synthes' argument included a lengthy and detailed discussion of the intricacies of Rule 37 and the proper procedures for requesting discovery sanctions under that rule. *Id.* This document plainly demonstrates that Synthes was on notice of impending sanctions under Rule 37 and that it was given an opportunity to be heard by the court prior to the court imposing sanctions.

Synthes was given an additional opportunity to be heard by this court on November 6, 1997 when the court heard oral argument on Synthes' objections to Special Discovery Master Decision and Recommendation No. 43 and the PLC's request for sanctions. At that time, both the PLC and Synthes presented their views to the court concerning the discovery dispute and the imposition of sanctions. (Tr. 11/6/97 at 37-67.) The record demonstrates that Synthes was given ample opportunity to be heard and to object to the Special Discovery Master's recommendation that the court impose sanctions for failure to comply with discovery.

In the instant motion, Synthes argues that it should have been given particularized notice of the form of sanctions being considered. The Special Discovery Master recommended that the court impose discovery sanctions. Synthes' motion filed in objection to that recommendation recognized that the appropriate forms of discovery sanctions are contained in Federal Rule of Civil Procedure 37. The PLC requested that the court enter default judgment against Synthes under Rule 37(b)(2)(C) as the specific discovery sanction. The court rejected this request and imposed the lesser sanction of

precluding the use of the statute of limitations defense under Rule 37(b)(2)(B). Synthes argues that it was only on notice of the possibility of sanctions in the form of a default judgment and not sanctions in the form of the preclusion of the statute of limitations defense. Synthes further argues that because it was unaware the court was considering this specific discovery sanction that its due process rights were violated by the imposition of this sanction.

In support of this argument, Synthes primarily relies on the United States Court of Appeals for the Third Circuit's decision in *In re Tutu Wells Contamination Litig.,* 120 F.3d 368 (3d Cir.1997). In *Tutu,* the Third Circuit vacated the portion of the district court's opinion suspending the appellants from the practice of law because the district court did not provide the parties with notice that it would employ its inherent powers when imposing sanctions. The court explained that the district court's inherent powers put at its disposal a wide range of possible sanctions and that a party cannot be expected to defend against each and every one of these possible sanctions. *Id.* at 381. Unlike the district court in *Tutu,* this court did not sanction Synthes under its inherent powers. This court employed its power to police discovery abuses under the narrower confines of Rule 37. As discussed above, Synthes was aware that it may be facing sanctions under Rule 37.

**\*4** Additionally, in *Tutu,* the court noted its previous ruling in *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.,* 57 F.3d 1215 (3d Cir.1995), that the context and the factual background of a case can provide a party with notice of impending sanctions. *Tutu,* 120 F.3d at 380. Given the circumstances surrounding the discovery dispute discussed above, the court finds that, unlike the appellant in *Tutu,* Synthes was on notice that it was facing sanctions under Rule 37. Synthes had sufficient notice to put forth a meaningful defense against discovery sanctions and was provided with a meaningful opportunity to object to the imposition of sanctions.

The Third Circuit's decision in *Martin v. Brown,* 63 F.3d 1252 (3d Cir.1995), is instructive. In *Martin,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 4

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

the court rejected the appellant's argument that the district court denied her notice and an opportunity to be heard when it sanctioned her under Rule 37 for failure to comply with discovery. *id.* at 1263. The party seeking sanctions in *Martin* only requested dismissal or preclusion of evidence as the sanctions to be imposed against the appellant under Rule 37. *Id.* The district court, however, imposed a monetary sanction under Rule 37 instead of the specific form of Rule 37 sanction requested. The Third Circuit found that even though the sanction imposed by the district court was different from the type specifically requested under Rule 37, the appellant had adequate notice and an adequate opportunity to defend against the sanction that was ultimately imposed under Rule 37. *Id.* at 1263. Like the appellant in *Martin,* Synthes was aware that it was faced with the possibility of being sanctioned under Rule 37 and was given an opportunity to be heard before the court imposed its sanction. The fact that the court imposed a lesser sanction than that sought by the PLC does not amount to a denial of due process.

Given the circumstances surrounding the discovery dispute, Synthes' awareness of the possibility of being sanctioned under Rule 37 for failing to comply with discovery and the opportunity given Synthes to object to discovery sanctions during oral argument before the court, the court finds that Synthes was afforded the fundamental requirements of due process before the court imposed sanctions.

### 2. Precluding a Defense as a First Sanction

Synthes argues that precluding a defense as the first sanction imposed under Rule 37 is extreme and the court should amend its Order on this basis. The plain language of Rule 37 rejects this argument. Rule 37 provides that if a party "fails to obey an order to provide or permit discovery" the court may sanction that party by entering "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses." Fed.R.Civ.P. 37(b)(2)(B). Although the court is required to consider whether lesser sanctions should be imposed, the court is not precluded from entering any of the sanctions set forth in Rule 37 as the first

sanction against a party that fails to comply with its discovery orders. *Harmon v. CSX Transp. Inc.,* 110 F.3d 364, 367 (6th Cir.1997) (stating that district court may impose dismissal as first and only discovery sanction). Synthes has not directed the court to any precedent indicating otherwise. Rule 37 allows the court to sanction a party by entering " orders in regard to the failure as are just." *Id.* In this case, the PLC asked the court to enter default judgment against Synthes for failure to comply with discovery. Although default judgment was an option available to the court, upon an application of the factors set forth in *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863 (3d Cir.1984), the court found that the record did not support this extreme sanction. Rather, the court imposed the lesser sanction of precluding Synthes from asserting the statute of limitations defense. The record demonstrates a series of discovery disputes between Synthes and the PLC beginning around May of 1995 when the PLC filed a motion to compel discovery requesting materials in accordance with the master discovery requests filed in November of 1994. Disputes over production between Synthes and the PLC continued through October of 1997. *See generally* Pls.' Mem.Supp.Mot.Default J., MDL No. 1014 Docket No. 6355.; *see also* Tr. 4/18/97 at 100-01. further, October of 1997 was not the first time that the PLC asked the Special Discovery Master to resolve a discovery dispute between the PLC and Synthes. *See* Decision of Special Discovery Master (As to Synthes' Document Production), dated Dec. 4, 1996; *see also* Tr. 2/19/97 at 3-39; *see generally* Pls.' Mem.Supp.Default J., MDL No. 1014, Docket No. 6355. Additionally, this was not the first time the PLC requested that the Special Discovery Master recommend discovery sanctions against Synthes. *See* Pls.' Mem.Supp.Default J., MDL No. 1014, Docket No. 6355, Ex. F.3; Certification of Arnold C. Joseph, Esq. pursuant to directive of Special Master in opposition to PLC's request for sanctions against Synthes for its untimely production of documents, MDL No. 1014, Docket No. 5220, Feb. 14, 1997. In makings its ruling, the court looked to the overall conduct of Synthes in this litigation and determined that the sanction of default judgment was not warranted and that the lesser sanction of precluding the assertion of the statute of limitations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 5

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

defense was more appropriate. Such a sanction is necessary to prevent Synthes from benefitting from the delay in document production. The court has authority to employ "the most severe in the spectrum of sanctions provided by statute" to ensure compliance with its discovery orders and to deter all parties in this litigation from engaging in discovery misconduct. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1975). The court will not amend its ruling on the basis that it was extreme.

### 3. *Application of the Poulis Factors*

*5 Synthes also asks the court to amend its ruling on the ground that in applying the *Poulis v. State Farm Fire and Cas. Co.* factors,[FN5] the court made factual and legal errors that affected the severity of the sanction imposed. The court disagrees.

In PTO No. 1198, the court set forth its reasoning for not granting the PLC's request for default judgment against Synthes. In applying the factors set forth in *Poulis,* the court found that the imposition of a lesser sanction was more appropriate. Synthes argues that the court failed to take into account the meritoriousness of its statute of limitations defense when conducting the *Poulis* analysis. The court did not hold that Synthes' defense was not meritorious. Nevertheless, the meritoriousness of Synthes' defense does not change the court's view that the balancing of the *Poulis* factors supports the imposition of sanctions. The meritoriousness of Synthes' defense militates against the entrance of default judgment, however, it does not convince this court to amend its prior ruling. The application of all the *Poulis* factors to the circumstances surrounding the discovery dispute warrants the court's imposition of the lesser sanction of precluding the assertion of the statute of limitations defense.

### 4. *Relationship of Sanction Imposed to Harm Caused*

Synthes argues that the preclusion of the statute of limitations defense in all MDL No. 1014 actions

does not specifically relate to the harm or prejudice suffered as a result of the sanctioned misconduct. Synthes contends that if the court sanctions Synthes by precluding the assertion of the statute of limitations defense, then the sanction should only apply to "new" conspiracy claims which are discovered as a result of the plaintiffs' review of information contained in the documents withheld. Synthes also argues that the sanction should not apply to cases in which a plaintiff's failure to file suit in a timely manner could not have been affected by the sanctioned conduct. The court will address each argument separately.

#### (a) Discovery sanctions will be applied to all claims against Synthes

The sanction issued in PTO No. 1198 precludes Synthes from raising the statute of limitations defense in any civil action by any plaintiff that hereafter becomes a part of MDL 1014 by application of 28 U.S.C. § 1407 or otherwise. Synthes argues that this sanction does not relate to the prejudice suffered as a result of the sanctioned misconduct. Synthes asserts that the preclusion of the statute of limitations defense should be limited to plaintiffs' new conspiracy claims which are discovered as a result of the plaintiffs' review of information contained in the documents withheld. The court will not limit the sanction to "new" conspiracy claims. The record evidences an ongoing difficulty experienced by the plaintiffs in attempting to receive discoverable documents relating to the plaintiffs' claims. As indicated in PTO No. 1198, the delay in producing those documents prejudices plaintiffs in all cases, not just those plaintiffs with conspiracy claims. The court will not amend its ruling on this ground.

#### (b) Cases Where Statute of Limitations Ran Prior to the Discovery Due Date

*6 Synthes argues that it should not be precluded from raising the statute of limitations defense in those cases where the statute of limitations expired prior to the discovery deadline or did not begin to run until after the withheld documents were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

produced. The court agrees and will amend PTO No. 1198 as follows.

The master discovery request was served on Synthes in November of 1994. In accordance with PTO No. 6, Synthes was required to produce all documents that were the subject of the master discovery requests by April 1, 1995.[FN6] In September of 1997, it was discovered that Synthes had not fully complied with that deadline. On October 7, 1997, the Special Discovery Master directed Synthes to produce attendance lists for spine courses, documents related to off-shore course locations and financial documents related to spine courses. All of these documents should have been produced in response to the master discovery request. Synthes produced the documents on October 28 and 31, 1997. Therefore, these documents were improperly withheld from the PLC for over two years from April 1, 1995 until October 31, 1997. Accordingly, the statute of limitations, as to claims against Synthes, should be tolled during this time period.

There are three groups of claims that warrant different treatment under this rule. First, Synthes may assert the statute of limitations defense against any claim for which the statute of limitations expired prior to April 1, 1995, the day Synthes was required to produce the withheld documents. Second, Synthes may assert the statute of limitations defense against any claim for which the statute of limitations began to run after October 31, 1997, the day Synthes actually produced the withheld documents. Synthes may raise the statute of limitations against these three groups of claims because neither group was directly affected by the withholding of the documents produced in October of 1997 that were the subject of PTO No. 1198. The third group consists of all claims for which the statute of limitations period was interrupted by the withholding period of April 1, 1995 to October 31, 1997. In those cases, the statute of limitations is tolled between April 1, 1995 and October 31, 1997.[FN7] The transferor court or ultimate trial court will make a fact specific determination as to the application of the statute of limitations defense in these cases.

### C. The PLC's Application for Fees and Costs

In PTO No. 1198, in accordance with Rule 37, the court directed the PLC to submit an application for reasonable and necessary costs and fees incurred in seeking the materials that were improperly withheld by Synthes. On January 8, 1998, the PLC submitted its application seeking $52,725.00 in fees and $4,835.57 in costs. On January 26, 1998, Synthes filed its opposition to the application. On February 6, 1998, the PLC filed a response to Synthes' objections which included a summary of the fee information. The summary listed hours which resulted in a total of $52,675.00 in fees. The court will treat this figure as representing the total fees requested by the PLC. The court finds that some of Synthes' objections have merit and will reduce the fees as follows.

#### 1. Fees for Previous Discovery Disputes

*7 Synthes objects to all fees billed for hours spent on previous discovery disputes that do not relate to the discovery of documents withheld by Synthes as outlined in Special Discovery Master Decision and Recommendation No. 43 and PTO No. 1198. As stated in PTO No. 1198, the discovery dispute for which the Special Discovery Master recommended sanctions involved three categories of documents. The PLC did not incur costs resulting from Synthes' failure to produce those documents until after taking the deposition of James Gerry. According, the court will not award fees for the takin of that deposition and will not award fees for hours billed prior to taking that deposition. Based on this reasoning, the court will disallow 1210.75 hours billed by Mr. Beck totaling $24,150.00 (120.75 hrs. x. $200 per hr.), 9 hours billed by Mr. Grimaldi totaling $2,025.00 (9 hrs. x $225 per hr.) and 17.5 hours billed by Mr. Dubrow, totaling $2,625.00 (17.5 hrs. x $150 per hr.), billed prior to learning of the withheld documents.[FN8] Thus, the court will reduce the fee request by $28,800.00 on this ground.

#### 2. Inadequate Detail in Billing Records

Synthes asks the court to reduce the number of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                      Page 7

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

hours because the PLC's records contain general descriptions that are insufficiently detailed. Synthes cites a number of entries that it believes are insufficiently detailed. The billing records include general descriptions for Mr. Hinerfeld that include fifteen (15) hours for "Synthes Sanctions Preparation" and ten (10) hours for "Synthes Legal Research." The court agrees that the entries for the fifteen hours billed for "Synthes Sanctions Preparation" are not sufficiently detailed and will not award these fees. In other instances when the PLC attorneys listed "preparation" time, such as for oral argument before the court or a Special Master meeting, the entry specifically identifies the task to which the hours relate. The description of Mr. Hinerfeld's entry for "Synthes Sanctions Preparation" is too vague and does not provide the court with adequate information upon which to base a fee award. Mr. Hinerfeld's time is billed at $125 per hours. Accordingly, the fee request will be reduced by $1,875.00 (15 hrs. x $125 per hr.). The court finds that the entry for legal research is an adequate description because it contains enough information from which the court and Synthes can determine the reason for the bill. The court will not reduce the award based on this entry. Additionally, the court will not reduce the hours for other entries to which Synthes objects on the ground that the description is general or inadequate.

### 3. Fees for Special Master Hearing

Synthes also objects to the time billed preparing for and attending the October 7, 1997 Special Discovery Master's hearing. Synthes argues that the time billed for this task is unreasonable and excessive. Because the issues discussed at the October 7, 1997 meeting included matters unrelated to the discovery dispute at issue the court will reduce the amount of time billed for attending the meeting from two (2) hours to one (1) hour.[FN9]

### 4. Fees for PLC's Response to Synthes' Objection to Decision and Recommendation No. 43.

*8 Synthes also asks the court to reduce the time billed for preparing and filing the PLC's response to

Synthes' objections to the special Discovery Master's Decision and Recommendation No. 43. The filing of this document was directly related to the discovery dispute at issue. The court will not reduce the hours billed for this task.

### 5. Fees for MDL No. 1014 Status Hearing

Synthes also objects to hours billed preparing for and attending the November 6, 1997 MDL No. 1014 status conference held by this court. The PLC's summary of the fee information provided to the court lists eleven (11) hours for preparing for argument before the court. These hours are directly related to Synthes' failure to comply with discovery. The court will not reduce the time billed for preparing for oral argument.

### 6. PLC's Schedule of Costs

Synthes also asks the court to disallow the PLC's request for the costs incurred in preparing, copying and filing the PLC's response to Synthes' objections to the Special Discovery Master's Decision and Recommendation No. 43. The court will award the PLC's request for the actual costs incurred that resulted from Synthes' failure to comply with discovery. Fed.R.Civ.P. 37(b)(2). Accordingly, the court will grant the PLC's requests for costs of $4,835.57.[FN10]

### D. *Certification Pursuant to 28 U.S.C. § 1292(b).*

Synthes requests that the court certify the sanction issues for appeal under 28 U.S.C. § 1292(b). Certification of an order from the district court to the court of appeals pursuant to 1292(b) is appropriate where: (1) the district court's order involves a controlling question of law; (2) there is a substantial difference of opinion as to the court's resolution of the controlling issue and (3) the immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The district court should certify an order under § 1292(b) for immediate appeal only if all three requirements are satisfied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 8

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

*Orson, Inc. v. Mirimax Film Corp.*, 867 F.Supp. 319, 321 (E.D.Pa.1994). The burden is on the movant to demonstrate that a 1292(b) appeal is warranted. *Id.* at 320. The decision to certify an order for appeal under § 1292(b) "lies within the sound discretion of the trial court" and "a district court should exercise its discretion mindful of the strong policy against piecemeal appeals." *Id.* at 320-21. Synthes asserts that all three requirements for § 1292(b) certification are satisfied with respect to the sanctions imposed if the court's order barring Synthes from raising the statute of limitations defense in all cases that are or become part of MDL No. 1014 remains. By the attached Order, the court will clarify and amend P.T.O. No. 1198 and allow Synthes the opportunity to prove the application of the statute of limitations defense to certain claims as discussed above. This amendment and clarification precludes Synthes from meeting its burden of demonstrating that certification under § 1292(b) is warranted. The court will not certify the sanctions for appeal under 28 U.S.C. § 1292(b).

## E. *Summary*

*9 The court will amend PTO No. 1198 to allow Synthes to raise the statute of limitations and be given the opportunity to prove that it has a viable defense against any claim whose statute of limitations expired prior to April 1, 1995 and against any claim whose statute of limitations began to run after October 31, 1997. By the attached Order, the statute of limitations will be considered to be tolled during the withholding period of April 1, 1995 to October 31, 1997. This does not preclude any plaintiff from seeking tolling relief in a transferor or ultimate trial court based on other grounds. The tolling of the statute of limitations is warranted to prevent Synthes from benefitting from the discovery delay and to deter other parties from failing to comply with the court's discovery orders. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1975). The court will grant the PLC fees in the amount of $21,800.00 [FN11] and costs in the amount of $4,835.57. The court will deny Synthes' request to certify the sanctions for appeal under 28 U.S.C. § 1292(b).

### F. *Conclusion*

For the foregoing reasons, the PLC's application for fees and costs will be granted in part and denied in part. Synthes' motion to reconsider, clarify or amend PTO No. 1198 will be granted in part and denied in part.

### *PRETRIAL ORDER NO. 1387*

AND NOW, TO WIT, this 5th day of May, 1998, upon consideration of the Plaintiffs' Legal Committee's application for fees and costs pursuant to Pretrial Order No. 1198 ("PTO No. 1198"), Synthes U.S.A., Synthes Inc. and Synthes North America's ("Synthes") motion to reconsider, clarify or amend PTO No. 1198 and the responses thereto IT IS ORDERED that:

(1) Within thirty (30) days from the date of this Order, Synthes shall pay $26,635.57 to the Plaintiffs' Legal Committee for attorneys' fees and costs.

(2) PTO No. 1198, paragraphs (3) and (4) and PTO No. 1235, section IV, part D are AMENDED to read as follows:
The statute of limitations, as to claims against Synthes, is tolled from April 1, 1995 until October 31, 1997. Synthes may raise and have the opportunity to prove the application of the statute of limitations defense against any claim for which the statute of limitations expired prior to April 1, 1995 or began to run after October 31, 1997.

(3) Synthes' request for an appeal pursuant to 28 U.S.C. § 1292(b) is DENIED.

> FN1. 1995 WL 925668, No. MDL 1014, (E.D.Pa. Aug. 28, 1995).

> FN2. This was not the first time that the PLC asked the Special Discovery Master to resolve a discovery dispute between the PLC and Synthes. *See infra* Part II.A.2.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 9

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN3. 1997 WL 805219, No. MDL 1014, (E.D.Pa. Dec. 11, 1997).

FN4. Synthes asks the court to reconsider PTO No. 1198 or, alternatively, to amend or clarify PTO No. 1198. Because PTO No. 1198 is not a final judgment the court will not treat Synthes' request as a motion to reconsider under Federal Rule of Civil Procedure 59(e). Rather, the court will evaluate Synthes' arguments as a request to amend or clarify PTO No. 1198.

FN5. The six factors are:
(1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.
*Poulis,* 747 F.2d at 868 (emphasis in original).

FN6. The parties do not cite to any court approved or stipulated extensions to this date. Additionally, in its response to the master discovery requests, Synthes, like many parties faced with a similar situation, represented that it would produce the requested documents without waiving any objections to the production requests. The PLC and the individual plaintiffs were entitled to rely on this representation. Synthes' objection to the initial discovery request did not affect the requirement that all responsive documents to the PLC's master discovery requests were to be produced by April 1, 1995.

FN7. For example, if a plaintiff's statute of limitations began to run on April 1, 1994 in a jurisdiction that has a two-year statute of limitations, the statute would be tolled from April 1, 1995 until October 31, 1997.

On November 1, 1997, the statute would begin to run again. Because one year of the two-year statute of limitations period remains after the rolling period, the statute would expire one year later on November 1, 1998.

FN8. Synthes does not challenge the hourly rates billed by these attorneys.

FN9. This hour was billed by Mr. Beck at $200.00.

FN10. The PLC's application requests $4,835.57 in costs. However, Exhibit B to the PLC's application lists a total $4,834.97 in costs. The discrepancy between the figure contained in the application and that listed in the exhibit appears to be the result of a typographical error.

FN11. This figure includes 84.75 hours billed by Mr. Beck at $200.00 per hour, 10 hours billed by Mr. Hinerfeld at $125.00 per hour and 24 hours billed by Mr. Dubrow at $150.00 per hour.

E.D.Pa.,1998.
In re Orthopedic Bone Screw Products Liability Litigation
Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 1999 WL 33740475 (Trial Motion, Memorandum and Affidavit) Defendant United States' Opposition to Plaintiffs' Response to Pretrial Order 1631 Showing Cause Why Certain Actions Under the FTCA Should not be Dismissed Pursuant to Pretrial Order 1600 (Jan. 25, 1999)
• 1998 WL 34368848 (Trial Pleading) Second Amended Complaint for Damages Demand for Jury Trial (May 5, 1998) Original Image of this Document (PDF)
• 1997 WL 33831287 () (Deposition) (Nov. 16, 1997)
• 1997 WL 33635776 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 10

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Opposition to Motion by Sofamor Danek for Sanctions Against Andrea S. Lestelle, Esquire and Roy F. Amedee, Esquire for Violating Pretrial Order Nos. 6, 396 and 547 (Jul. 24, 1997)
• 1997 WL 33635799 (Trial Motion, Memorandum and Affidavit) Reply Brief of Sofamor Danek in Support of Motion for Sanctions Against Andrea S. Lestelle and Roy F. Amedee, Jr. (May 21, 1997)
• 1997 WL 33635757 (Trial Motion, Memorandum and Affidavit) Motion by the United States of America to Obtain Access to Discovery Documents (May. 19, 1997)
• 1997 WL 33635800 (Trial Motion, Memorandum and Affidavit) Response to Motion by Sofamor Danek for Sanctions Against Andrea S. Lestelle, Esquire and Roy F. Amedee, Jr. Esquire for Violating Pretrial Order Nos. 6, 396 and 547 (May 6, 1997)
• 1997 WL 33635742 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiffs' Motion to Preclude Certain Expert Testimony on behalf of Defendants at the Stage II Cohort Study Hearing (Mar. 12, 1997)
• 1997 WL 33635749 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion to Preclude Certain Expert Testimony on Behalf of Defendants at the Stage II Cohort Study Hearing (Mar. 6, 1997)
• 1997 WL 33635750 (Trial Motion, Memorandum and Affidavit) Associations' Memorandum in Opposition to Plaintiffs' Motion in Limine to Preclude Use of the Cohort Study at Trial (Mar. 06, 1997)
• 1997 WL 33635731 (Trial Motion, Memorandum and Affidavit) Decision and Recommendation No. 6 of Special Discovery Master (as to Hansen Yuan, M.D. and Compliance with PTO 449) (Feb. 10, 1997)
• 1997 WL 33635710 (Trial Motion, Memorandum and Affidavit) Buckman Company's Reply Memorandum in Support of Motion to Dismiss Amended Omni Complaint for Failure to State a Claim Upon Which Relief May be Granted (Jan. 31, 1997)
• 1997 WL 33635758 (Trial Motion, Memorandum and Affidavit) Sofamor Danek Defendants' Memorandum of Law in Response to Plaintiffs' Motion in Limine for an Order Precluding the Use of the Cohort Study (Jan. 31, 1997)

• 1997 WL 33635753 (Trial Motion, Memorandum and Affidavit) Pretrial Order No. (Jan. 30, 1997)
• 1997 WL 33635752 (Trial Motion, Memorandum and Affidavit) Response of Plaintiffs Gipson and West to Motion in Limine of Sofamor-Danek et al. to Exclude Expert Testimony of Dr. Edward Reese, Ph D. (Jan. 27, 1997)
• 1997 WL 33635755 (Trial Motion, Memorandum and Affidavit) Pretrial Order No. (Jan. 21, 1997)
• 1997 WL 33635719 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Motion of the Texas Scottish Rite Hospital for Children and Various Physicians and Scientists to Dismiss the Amended ""OMNI" Complaints for Failure to State a Claim Upon Which Relief Can be Granted (Jan. 16, 1997)
• 1997 WL 33635761 (Trial Motion, Memorandum and Affidavit) Plc's Memorandum of Law in Support of the Joint Motion of the Plc and AcroMed Corporation for Preliminary Approval of Settlement Agreement, for Provisional Certification of a Settlement Class, for Approval of Dissemination of Notice to the Class, and for Other Relief (Jan. 16, 1997)
• 1997 WL 33635812 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendant Sofamor Danek's Response to Plaintiffs' Motion for Relief Due to Improper Communications by Sofamor Danex and Plaintiffs' Legal Committee's Response to Sofamor Daner's Cross-Motion for Sanctions (Jan. 10, 1997)
• 1997 WL 33635790 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Sofamor Danek Group's Motion for a Protective Order to Quash Subpoena to Depose Individuals Affiliated With Rodman & Renshaw, Inc. (Jan. 09, 1997)
• 1997 WL 33635801 (Trial Motion, Memorandum and Affidavit) Scoliosis Research Society's Objections to Plaintiffs' Request for Production of Documents Addressed to Certain Omni Defendants (Jan. 06, 1997)
• 1997 WL 33635858 (Trial Motion, Memorandum and Affidavit) Brief of Depuy Motech in Support of Master's Decision and Recommendation (Deposition of Henri Ferret) (Jan. 02, 1997)
• 1996 WL 33687772 () Current Opinions of Edward W. Reese, Ph.D., B.C.F.E, B.C.F.M. (Dec. 2, 1996) Original Image of this Document (PDF)
• 1996 WL 33687778 () (Transcript) (Nov. 27,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

1996)
• 1996 WL 33687779 () (Transcript) (Nov. 18, 1996)
• 1996 WL 33579851 (Trial Pleading) Notice of Appeal From Decision of Special Master Relating to Discovery of Certain Insurance Information (Jul. 30, 1996)
• 1996 WL 33578583 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Synthes, U.S.A., Synthes, Inc. and Synthes North America's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), or in the Alternative for Judgment as a Matter of Law Pursuant to Fed.R.Civ.P.56 (Jul. 12, 1996)
• 1996 WL 33579850 (Trial Pleading) Reply Brief in Support of Dismissal of Ace Medical Co. from Omni- and Other Conspiracy Complaints (Jul. 12, 1996)
• 1996 WL 33687780 () (Deposition) (Feb. 13, 1996)
• 1996 WL 33580385 (Trial Motion, Memorandum and Affidavit) Notice of filing (Jan. 29, 1996)
• 1996 WL 33579843 (Trial Pleading) Final Objections of Defendants David Bradford, M.D.; Roger P. Jackson, M.D.; Harry Shufflebarger, M.D.; Eduardo R. Luque, M.D.; Thomas Whitecloud, III, M.D.; Robert Gaines, M.D.; Richard Ashman, Ph.D.; J. Patrick Barrett, M.D.; Charles E. Johnston, H , M.D.; John Herring, M.D. and Thomas Zdeblick, M.D. to Plaintiffs' Proposed Disclosure to the United States Food and Drug Administration (Jan. 26, 1996)
• 1996 WL 33579844 (Trial Pleading) SRS' Claim of Privilege and Objections to the Plaintiffs' ""Spine Surgeons or Experts with Relationship with Pedicle Screw Manufacturers" List (Jan. 26, 1996)
• 1996 WL 33579845 (Trial Pleading) Objections of National Medical Speciality, Inc. and Stuart Medical, Inc. to Plaintiffs' Proposed Public Comment to FDA (Jan. 26, 1996)
• 1996 WL 33579842 (Trial Pleading) Response to Acromed Corporation's Report on Recent Decision Involving Plaintiffs' ""New Style" Complaints (Jan. 10, 1996)
• 1995 WL 17065801 (Trial Motion, Memorandum and Affidavit) Intervenors' Motion for Clarification (Dec. 26, 1995)
• 1995 WL 17064024 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of

Plaintiff's Opposition to Defendant's Motion to Dismiss (Dec. 1, 1995)
• 1995 WL 17064027 (Trial Motion, Memorandum and Affidavit) Brief of Defendants Sofamor, S.N.C. and Danek Medical, Inc. in Support of Motion for Partial Summary Judgment Against Express Warranty Claims (Nov. 01, 1995)
• 1995 WL 17064048 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Support of their Motion to Modify and/or Clarify Pretrial Order No. 68 (Oct. 18, 1995)
• 1995 WL 17064060 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Danek Medical, Inc.'s Motion to Dismiss Plaintiff's Complaint (Oct. 18, 1995)
• 1995 WL 17064046 (Trial Motion, Memorandum and Affidavit) Defendant Osteotech, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment Dismissing Plaintiffs' Amended Complaint with Prejudice (Oct. 16, 1995)
• 1995 WL 17064045 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Acromed's Motion to Hold Joseph L. Messa and the Law Firm of Ominsky, Welsh and Steinberg in Contempt of Court (Oct. 05, 1995)
• 1995 WL 17064035 (Trial Motion, Memorandum and Affidavit) Motion of Semmes-Murphy Clinic for Partial Dismissal or in the Alternative for Summary Judgment (Oct. 2, 1995)
• 1995 WL 17064068 (Trial Motion, Memorandum and Affidavit) Acromed's Reply Memorandum in Support of Motion for Partial Summary Judgment on the Issue of Injury (Sep. 29, 1995)
• 1995 WL 17064080 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Emergency Motion to Hold Danek Medical, Inc. in Contempt and for Related Ancillary Relief as to Danek medical, Inc. and all other Manufacturing Defendants (Sep. 15, 1995)
• 1995 WL 17064076 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for a Protective Order (Sep. 07, 1995)
• 1995 WL 17064062 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Acromed's Motion for Partial Summary Judgment on Statute of Limitations Issues (Sep. 1995)
• 1995 WL 17222096 () (Deposition) (Aug. 25, 1995)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 254038 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**


• 1995 WL 17144755 (Trial Motion, Memorandum
and Affidavit) Objections of Raven Press, Ltd. to
Plaintiffs' Third-Party Subpoenas Dated February
16, 1995 (Mar. 20, 1995)
• 1995 WL 17144945 (Trial Pleading) Answer of
Sofamor, S.N.C., Danek Medical, Inc. and Sofamor
Danek Group, Inc. (Jan. 23, 1995)
• 1994 WL 16138176 (Trial Pleading) Answer of
Defendants Danek Medical, Inc. and Sofamor
Danek Group, Inc. (Nov. 9, 1994)
• 1989 WL 1184556 () (Transcript) (Aug. 23, 1989)
• 1987 WL 967416 () (Deposition) (Oct. 22, 1987)
• 1987 WL 967417 () (Deposition) (Jun. 18, 1987)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                              Page 1

Slip Copy, 2005 WL 2989273 (N.D.Cal.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
PENTALPHA MACAU COMMERCIAL
OFFSHORE LIMITED, Plaintiff,
v.
Damoder REDDY, et al., Defendants
Damoder REDDY, Counterclaimant,
v.
PENTALPHA OFFSHORE LIMITED, et al.,
Counterdefendants
No. C 03-5914 MMC.

Nov. 3, 2005.

Philip Harris Stillman, Flynn & Stillman, Cardiff,
CA, for Plaintiff.
Stanley G. Hilton, Law Offices of Stanley G.
Hilton, San Jose, CA, for Defendants.

ORDER DENYING OBJECTION TO REPORT
AND RECOMMENDATION DATED
SEPTEMBER 9, 2005; ADOPTING REPORT
AND RECOMMENDATION DATED
SEPTEMBER 9, 2005; VACATING HEARING
CHESNEY, J.
*1 Before the Court is counterclaimant Damoder
Reddy's Objection to Report and Recommendation
on Pentalpha's Motion for Sanctions Dated
September 9, 2005. Having reviewed the objection,
the Court deems the matter suitable for decision on
the papers, VACATES the hearing scheduled for
November 4, 2005, and rules as follows.

Having reviewed de novo the Report and
Recommendation, as well as the record before the
Magistrate Judge, *see* 28 U.S.C. § 636(b)(1), the
Court hereby DENIES the objection. Contrary to
Reddy's argument that he complied with the Court's
order of June 24, 2005, he plainly did not, as he
failed to set forth in his discovery responses, *inter
alia*, a "detailed factual basis for contending that

Pentalpha converted any specific item of Reddy's
property," (*see* Stipulation and Order Re Further
Discovery Responses, filed June 24, 2005, at 2:7-9),
a "valuation of each element of damages for each
specific item of allegedly converted property," (*see
id.* at 2:10-11), "all persons who he alleges ...
defamed him, including each individual's name,
address, and position held at ... Pentalpha," (*see id.*
at 2:13-15), and "each act by Pentalpha that he
contends caused emotional distress," (*see id.* at
3:2-3). Further, as set forth in the Report and
Recommendation, Reddy's failure to comply with
the Court's order was willful, i.e., it was not
accidental or the result of an oversight. Lastly, a
review of the record reflects no good cause for
Reddy's failure to comply with the Court's order.

Accordingly, the Court hereby ADOPTS the Report
and Recommendation filed September 9, 2005.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION ON
PENTALPHA'S MOTION FOR SANCTIONS
LAPORTE, Magistrate J.
Upon consideration of the parties' arguments, good
cause appearing, and for the reasons set forth
below, the following is the Court's Report and
Recommendation to the Honorable Maxine M.
Chesney on a motion for sanctions filed by Plaintiff
and counter-defendant Pentalpha Macau
Commercial Offshore Limited ("Pentalpha").
Pentalpha filed a motion for sanctions against
Defendant and counter-claimant Damoder Reddy ("
Reddy"), and for attorneys' fees against both Reddy
and his counsel. The Court considers Pentalpha's
motion for attorneys' fees in a separate order. *See*
Docket No. 139. Having reviewed the submissions
of the parties, the Court finds this matter
appropriate for decision without a hearing and
therefore VACATES the hearing scheduled for
September 13, 2005. Pentalpha's request to appear
by telephone therefore is DENIED as moot.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2

Slip Copy, 2005 WL 2989273 (N.D.Cal.)
(Cite as: Slip Copy)

Attempting to discover the factual bases for Reddy's counterclaims, Pentalpha propounded discovery. Because Reddy's responses to certain interrogatories were vague and insufficient, Pentalpha repeatedly requested that Reddy supplement them. Eventually, in order to obtain an additional extension of time to respond, Reddy agreed to document the terms of his discovery obligations to Pentalpha in a stipulation and order, which the Court signed. This Order required Reddy to provide the specific factual bases for his conversion, slander, fraud, and intentional infliction of emotional distress causes of action, as well as for his damages and for his claim that Pentalpha had successor liability for former cross-defendant Opsys US. *See* June 24, 2005 Order Approving Stipulation re Further Discovery Responses (Docket No. 117). [FN1] Although Reddy timely served amended responses pursuant to the Order, they consisted entirely of representations that Reddy had no additional details or information to support his claims. *See* Declaration of Phillip Stillman in Support of Motion for Sanctions ("Stillman Decl."), Ex. B. Pentalpha then filed this Motion for Sanctions asking the Court to strike Reddy's counterclaims or, in the alternative, to prevent Reddy from introducing any additional evidence or testimony to support those claims in opposing summary judgment or at trial.

> FN1. The Order was entered under Rules 26 and 37(a), and signed by the Court. Reddy's argument that it is not an enforceable court order therefore is without basis in law or logic.

**\*2** Federal Rule of Civil Procedure 37 gives the Court discretion to impose sanctions for different types of discovery abuses. For example, subsection (b)(2) specifically allows courts to sanction a party that "fails to obey an order entered under Rule 26(f)" by "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Subsection (c)(1) also allows courts to impose evidence preclusion sanctions where a party fails to "amend a prior response to discovery as required by Rule 26(e)(2) ..., unless

such failure is harmless...." Reddy's discovery conduct qualifies for sanctions under both subsections.

First, Reddy's original responses were inadequate and vague. When asked to identify and value the items that allegedly had been converted, Reddy responded that "software" and "technical papers" and "proprietary information" worth "thousands of dollars" had been converted by "Pentalpha representatives and/or Opsys employees-contractors on behalf of Pentalpha." Supplemental Declaration of Phillip Stillman ("Stillman Supp. Decl.") at 2. When asked to identify the basis for his intentional infliction of emotional distress counterclaim, he responded similarly vaguely that "Pentalpha (its employees and or its contractors/agents) caused emotional distress by converting [his] personal property by defaming me and by making representations; Peter Howell and John Sham made misrepresentations; Gary Rhea and Chuck Monach made defamatory comments; and several members of Pentalpha were involved in conversion." *Id.* at 5.

Second, Reddy failed to supplement his original responses to discovery when it became evident that they did not support his claims. For example, Pentalpha asked Reddy to "[i]dentify all persons who You allege ... defamed You, including each individual's name, address, and position held at Opsys or Pentalpha, the exact statement said by each individual, to whom the statement was said, any other individuals who heard the statement being uttered, where the statement was said and the date and time that the allegedly defamatory statement was made." Stillman Supp. Decl. at 3. Reddy responded that he:
was defamed by several people belonging to Pentalpha and Opsys (many of them were working as Pentalpha contractors after April 22, 2003). Many defamatory comments were made by Gary Rhea, consultant (in charge of Opsys U.S. facility from April 22, 2003) and Chuck Monach, Opsys U.S. facility manager during an all hands meeting held on April 28, 2003. Gary Rhea said that [he] 'was dishonest, liar and a crook.' Chuck Monach said that 'if [he] showed up at the Opsys U.S. facility he will pick [him] up with a fork lift and dump [him] in the trash can.' Several Opsys U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 3

Slip Copy, 2005 WL 2989273 (N.D.Cal.)
(Cite as: Slip Copy)

employees and contractors who attended this meeting heard these comments.

*Id.* While that response may have been adequate as to Opsys US, as opposed to Pentalpha, the Court previously had dismissed Reddy's slander counterclaim to the extent that it was based on a successor liability theory between Opsys U.S. and Pentalpha. *See* December 1, 2004 Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Second Amended Counterclaim at 2-3 (" the Second Cause of Action, as against Pentalpha, is subject to dismissal to the extent it is based on a theory of successor liability, but not to the extent it is based on statements by Pentalpha") (Docket No. 82). Therefore, in his original response made after that ruling, Reddy should have included information about his contention that *Pentalpha* had direct liability for slander. At the very least he promptly should have amended it once he realized that it no longer supported his counterclaim.

**\*3** Third, Reddy should have supplemented his responses when he *stipulated* to the Order, which required him to-for example-"identify all persons who he alleges in his Third Amended Counterclaim defamed him.... If Reddy contends that Pentalpha is responsible for a statement made by an Opsys U.S. employee or consultant, Reddy [s]hall state all facts upon which he relies for that contention." June 24, 2005 Order at 2 (Docket No. 117). Instead of providing substantive information, Reddy's supplemental response stated that "[a]fter a diligent search of his records, and diligent efforts to recall what happened, the defendant, Damoder Reddy, cannot locate or think of any more details to provide any further response to this interrogatory." Stillman Decl., Ex. B at 2. Therefore, more than six months after his initial disclosures and after Pentalpha obtained a court order requiring him to do so, Reddy refused or was unable to provide any evidence of slander by *Pentalpha*, or by persons for whom *Pentalpha* was responsible.

Finally, Reddy should have supplemented his responses during the meet-and-confer process that took place before Pentalpha filed the Motion for Sanctions. But Reddy has refused to do so, either because he is unwilling or unable to provide any

additional information to support his claims for conversion, defamation, misrepresentation, and intentional infliction of emotional distress, his damages, or his theory that Pentalpha is liable as distinct from Opsys US. Reddy's conduct has prejudiced Pentalpha's ability to conduct the discovery needed to defend against Reddy's vaguely stated counterclaims. *See, e.g., Adriana Int'l Corp. v. Lewis & Co.,* 913 F.2d 1406, 1412 (9th Cir.1990) ("Failure to provide documents as ordered ... is considered sufficient prejudice") (citing *Securities and Exch. Comm'n v. Seabord Corp.,* 666 F.2d 414, 417 (9th Cir.1982)). Moreover, Reddy's refusal to produce discovery frustrates Pentalpha's ability to bring dispositive motions that could simplify the issues and make for a more expeditious disposition of case. *See Computer Task Group, Inc. v. Brotby,* 364 F.3d 1112, 1117 (9th Cir.2004) ("An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed-perhaps paving the way for a summary judgment motion-and which facts must be resolved at trial"). The Court fails to see how these are "trivial disagreements" (Opposition at 6). On the contrary, the Court concludes that Reddy has willfully failed to meet discovery obligations under the Federal Rules of Civil Procedure and under the Order.

In addition to imposing sanctions under Federal Rule of Civil Procedure 37, the Court also can invoke its inherent powers to exclude the evidence Reddy refuses to disclose more than sixteen months after filing his counterclaim and more than two months after being ordered to do so. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.,* 982 F.2d 363, 368 (9th Cir.1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases' ") (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Pentalpha's counsel details the repeated and fruitless attempts he made to meet and confer with Reddy's counsel, even after filing the Motion for Sanctions. *See* Stillman Decl. at ¶¶ 3-5, 8-9; Stillman Supp. Decl. at ¶ 3. In light of Reddy's inadequate meet and confer, and refusal to supplement his responses

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2005 WL 2989273 (N.D.Cal.)
**(Cite as: Slip Copy)**

even after a court order requiring him to do so, this Court finds that Reddy's failures are willful.

**\*4** Accordingly, the Court recommends GRANTING Pentalpha's Motion For Sanctions in part, and ordering that Reddy shall not to use as evidence at trial, at a hearing, or on a motion, any witness or information that Reddy did not disclose in his initial Rule 26 disclosures, in his original interrogatory responses served on December 8, 2004, or in his supplemental interrogatory responses served on June 24, 2005. The Court makes these recommendations in lieu of recommending the more severe sanctions of striking Reddy's counterclaims, as requested by Pentalpha.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

N.D.Cal.,2005.
Pentalpha Macau Commercial Offshore Ltd. v. Reddy
Slip Copy, 2005 WL 2989273 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2869059 (Trial Motion, Memorandum and Affidavit) Plaintiff Pentalpha Macau Commercial Offshore Limited's Opposition to Damoder Reddy's Motion for Sanctions Pursuant to Rule 11 (Sep. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 2869057 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objection to Report and Recommendation on Pentalpha's Motion for Sanctions Dated September 8, 2005. (Sep. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 2869053 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Points and Authorities in Opposition to Motion for Discovery and Monetary Sanctions (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2869047 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Points

and Authorities in Support of Motion for Rule 11 Sanctions and Monetary Sanctions (Sep. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 2613112 (Trial Motion, Memorandum and Affidavit) Pentalpha's Reply Memorandum in Support of Its Motion for Discovery Sanctions Against Damoder Reddy and His Counsel, Stanley Hilton (Aug. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 2613107 (Trial Motion, Memorandum and Affidavit) Opposition to Reddy's Ex Parte Application for Default (Aug. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 2613103 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Discovery and Monetary Sanctions (Aug. 23, 2005) Original Image of this Document (PDF)
• 2004 WL 2160634 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Complaint and Motion for A more Definite Statement Frcp Rule 12 (b)(6), 12(e) (May 7, 2004) Original Image of this Document (PDF)
• 2004 WL 2160641 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Complaint and Motion for A Ore Definite Statement Frcp Rule 12 %y(3)27 (b)(6), 12(e) (Mar. 15, 2004) Original Image of this Document (PDF)
• 3:03cv05914 (Docket) (Dec. 31, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                              Page 1

Not Reported in F.Supp., 1996 WL 272456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Rixson Merle PERRY, Plaintiff,
v.
VILLAGE OF ARLINGTON HEIGHTS and
Daniel C. Tarry, Defendants.
**No. 94 C 0058.**

May 20, 1996.

*MEMORANDUM OPINION AND ORDER*
PLUNKETT, District Judge.
*1 The plaintiff, Rixson Merle Perry, brought this
action after his automobile, which had been parked
and presumed abandoned in a private parking lot,
was towed by defendant Village of Arlington
Heights (the "Village"). [FN1] Perry sought
declaratory relief, stating that the ordinance under
which his automobile was towed was
unconstitutional as it applied to the towing of his
automobile, and compensatory damages. The
Village sought discovery on issues relating to
damages. After the plaintiff's refusal to comply with
several discovery requests, we granted, in an order
dated January 30, 1995, defendant's motion to
compel plaintiff's deposition and, weary of the
delays and excuses by the plaintiff, provided that
failure to comply with the order would result in the
dismissal of this action with prejudice. Mr. Perry
was given thirty days to appear for his deposition,
and he agreed to work out an agreeable date with
defense counsel. Defense counsel promptly wrote to
the plaintiff seeking a date to complete his
deposition. No reply -- although the plaintiff claims
he never got the letter (an excuse he has
successfully used before in this litigation). With one
or two days to go before the end of the thirty days
given to plaintiff to appear at a deposition, Mr.
Perry arrived late in the afternoon at defense
counsel's office and began pounding on the door
seeking admittance. He was not admitted, and, of

course, his deposition could not have been taken
anyway because no court reporter had been
contacted. The time has come to end this lawsuit,
not only because Mr. Perry was warned that this
would happen, but also because of the history of the
entire litigation, which we now set forth. [FN2]

On November 9, 1994, the Village served upon the
plaintiff its demand, pursuant to Local Civil Rule 1,
[FN3] that he provide Mr. Charles Hervas, counsel
for the Village, with a certified statement setting
forth plaintiff's post office address and residence.
The plaintiff responded five days later, giving a post
office box number and stating that he "is currently
traveling and anticipates continuing his travels
through mid-January; during these travels, plaintiff
will reside in public accommodations or private
homes, the specific addresses of which are presently
unknown." The plaintiff did not provide the address
or location of his residence, nor did he give any
indication that he had no fixed residence while he
was not traveling.

Subsequently, on December 7, 1994, the Village
moved to compel compliance with Local Civil Rule
1. The plaintiff responded with an affidavit stating
that "he does not presently maintain any fixed
residence," but stated that he anticipated acquiring a
residence in the spring and would furnish a certified
statement setting forth his address at that time. [FN4]
The Village's motion to compel was then withdrawn
without prejudice.

On January 6, 1995, after the plaintiff's refusal to
comply with several discovery requests, including a
scheduled deposition, the Village moved for an
order compelling the plaintiff to attend his
deposition. We granted the motion to compel and
reset the discovery cut-off date, which had been set
at January 17, 1995, to March 1, 1995. The plaintiff
moved to vacate our order, complaining: (1) that the
Village's attorney had obtained the order to compel
*ex parte* (in fact, the plaintiff simply failed to
appear at the scheduled hearing on the motion); and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2

Not Reported in F.Supp., 1996 WL 272456 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

(2) that after the plaintiff had notified Mr. Hervas on December 13 that he would not appear for the deposition scheduled for the following day because of personal and business obligations, Mr. Hervas had been less than cooperative in rescheduling a deposition. We note that the plaintiff had already been given nearly two months in which to schedule a deposition, and that the Village's council had attempted, without success, to accommodate his travel schedule. Plaintiff offered no reason why he waited until the day before his deposition to cancel.

*2 We granted plaintiff's motion to vacate only as to the date of deposition and ordered the parties to set an agreeable date. A deposition took place on January 26, 1995. On March 1, 1995, the Village filed a motion for a pretrial/discovery conference, stating that plaintiff had refused to answer nearly every question at his deposition as irrelevant and had similarly refused to answer as irrelevant numerous interrogatories that had been served on him on November 9, 1994. As a result of plaintiff's representations in open court on March 7, 1995, that he sought only a declaratory judgment as to the constitutionality of the towing ordinance and did not intend to seek damages, we denied the motion for a discovery conference, but ordered the plaintiff to produce certain documents and to respond to certain interrogatories.

In a further deposition on April 6, 1995, the plaintiff reversed himself and made clear his intention to proceed with a damages claim.[FN5] In light of this reversal, and as a result of the plaintiff's refusal to respond to questions and to comply with requests at the deposition -- as he did on January 26, the plaintiff unilaterally terminated the deposition stating that no useful purpose would be served in continuing -- the defendant filed a motion to compel the plaintiff to comply with requested discovery. We referred the motion to Magistrate Judge Ronald A. Guzman to hold hearings and to rule on defendant's motion to compel. After a hearing, Judge Guzman issued an order on June 29, 1995, granting defendant's motion to compel in all respects. Judge Guzman found that the plaintiff attempted to take advantage of this Court's order that he notify opposing counsel by mail of his periods of travel to avoid submitting to discovery

FN6 and ordered the plaintiff to turn over to defense counsel a copy of the tape recording he made during the April 6 deposition and to respond to deposition questions relating to: (1) any prior litigation between himself and the owner of the property or any other individual associated with the towing of plaintiff's vehicle; (2) the expiration of the vehicle license plates that were attached to the plaintiff's towed vehicle; and (3) his residence.

Subsequently, counsel for defendant made several attempts to secure plaintiff's compliance with the magistrate judge's order and to complete discovery. On October 5, 1995, we ordered discovery reopened and allowed defendant an additional sixty days to complete discovery. Plaintiff refused any further attempt to secure discovery, asserting: (1) that we had already closed discovery -- ignoring our re-opening of discovery in response to the plaintiff's reversal of his intention not to seek damages -- and (2) that the magistrate judge's order is null and void because of the magistrate's "inferior" status and his " lack [of] authority to vacate or contravene [our] order [closing discovery]." We granted the Village's motion to compel discovery. The plaintiff continued to refuse and we now dismiss.

*3 Plaintiff has a right to contest the defendant's discovery requests by means of the appropriate motions or in response to a motion to compel and to make any argument he deems appropriate in support of such motions or defenses. Once we have ruled, however, he no longer has the option of acting contrary to our orders. The plaintiff, nevertheless, appears to have taken it upon himself to be sole judge of what discovery is relevant to this case and to make his own interpretations of the law and of the defendant's legitimate requests for discovery, often in a hypertechnical fashion.[FN7] A review of the record also reveals that the plaintiff has been less than forthcoming with details of his travel schedule sufficient to allow the defendant to schedule a deposition and has continually frustrated the defendant's attempts to obtain information necessary to its defense.

In sum, the plaintiff seeks the aid of this Court in obtaining damages for the towing of his vehicle, but refuses to cooperate with our orders governing the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                         Page 3

Not Reported in F.Supp., 1996 WL 272456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

progress of his case. His cause is therefore appropriately dismissed with prejudice.[FN8]

#### Conclusion

Pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, this action is dismissed with prejudice. This is a final and appealable order.

FN1. Defendant Daniel C. Tarry was dismissed from this action on the basis of qualified immunity, *Perry v. Village of Arlington Heights,* No. 94 C 58, 1995 WL 32616 (N.D. Ill. June 14, 1994), and for failure to allege a constitutional violation under 42 U.S.C. § 1983, *Perry v. Village of Arlington Heights,* No. 94 C 58, 1995 WL 32616 (N.D. Ill. Jan. 26, 1995).

FN2. Actually Mr. Perry accomplished a great deal with this suit. We declared the ordinance under which his car was towed unconstitutional. The only portion of the case that remains is his claim for damages, which are quite small -- Mr. Perry lost the use of his car for a few days while he was out of town.

FN3. Local Civil Rule 1 states, in relevant part:
A party shall furnish to any other party, within five days after demand, a certified statement setting forth his/her post office address and residence ....

FN4. The plaintiff has apparently never provided such a certified statement.

FN5. On September 28, 1995, we granted plaintiff's motion for partial summary judgment of the declaratory judgment claim. *Perry v. Village of Arlington Heights,* 905 F. Supp. 465 (N.D. Ill. 1995). His claim for damages remains pending.

FN6. Most egregious of the several examples recounted in Judge Guzman's

order is the following notice served on the Village's counsel:
Please take notice that due to personal and business travel, I will be unable to participate in the activities related to this case *until Judge Plunkett renders his decision on my motion for partial summary judgment.* It is my understanding that Judge Plunkett has scheduled his ruling for June 14, 1995, however, should Judge Plunkett see fit to postpone said ruling date *I will extend my travels until the new date.* This notice to defendant has been filed in accordance with Judge Plunkett's order of January 11, 1995.

FN7. A couple of examples will suffice:
(1) Interrogatory question: "Have you suffered any psychological or emotional injury as a result of the allegations in your complaint?"
Plaintiff's response: "Objection: Unintelligible. Responding further, plaintiff does not claim to have been injured by the allegations in the Complaint. "
(2) In response to the Village's motion to compel compliance with Local Civil Rule 1: "Plaintiff is also mindful of this Honorable Court's September 13, 1994 admonition that attention henceforth be devoted to the issues in this case rather than to petty squab[b]les. The defendant Village's latest motion does not reflect proper regard for this Honorable Court's admonition and vexatiously intrudes upon the limited time which plaintiff is able to devote to discovery."

FN8. We note that this is not the first time the plaintiff has suffered this sanction. *See Perry v. Pogemiller,* 146 F.R.D. 164 (N.D. Ill.) (Lindberg, J.) (dismissing action for plaintiff's refusal to answer court-ordered discovery regarding basis for claim of diversity jurisdiction and for refusal to provide certified statement of residence pursuant to Local Civil Rule 1), *aff'd,* 16 F.3d 138 (7th Cir. 1993) (imposing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 4

Not Reported in F.Supp., 1996 WL 272456 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**


      additional sanctions for filing a frivolous
      appeal).
N.D.Ill.,1996.
Perry v. Village of Arlington Heights
Not Reported in F.Supp., 1996 WL 272456
(N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:94CV00058 (Docket) (Jan. 05, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                      Page 1

Not Reported in F.Supp.2d, 2002 WL 1067460 (D.Kan.), 23 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

United States District Court, D. Kansas.
Randell C. PHALP, et al., Plaintiffs;
v.
CITY OF OVERLAND PARK, Kansas, et al.
Defendants;
**No. 00-2354-JAR.**

May 1, 2002.

ORDER DENYING MOTION TO REVIEW
MAGISTRATE JUDGE'S ORDER DENYING
LEAVE TO FILE AMENDED COMPLAINT

ROBINSON, District J.
*1 This matter comes before the Court on Plaintiff's Motion to Review Magistrate Judge's Denial of Motion for Leave to File Amended Complaint Out of Time, Or in the Alternative, Motion for Clarification (Doc. 212). For the reasons set forth below, the motion is denied.

A district court's review of a magistrate judge's decision on a nondispositive pretrial matter is governed by 28 U.S.C. § 636(b)(1). The corresponding Fed.R.Civ.P. 72(a) states "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." [FN1] A magistrate's ruling on a motion for leave to file an amended complaint or a supplemental complaint is a nondispositive ruling subject to review under this deferential standard.[FN2] The court, applying the clearly erroneous standard, must affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred.[FN3]

FN1. *See also* D. Kan. Rule 72.1.4.

FN2. *See, e.g., First Savings Bank, F.S.B. v. U.S. Bancorp,* 184 F.R.D. 363, 366 (D.Kan.1998); *Deghand v. Wal-Mart Stores, Inc.,* 904 F.Supp. 1218, 1220 (D.Kan.1995); *Resolution Trust v. Fidelity & Deposit Co. of Maryland,* 885 F.Supp. 228, 229 (D.Kan.1995). *But see Pedro v. Armour Swift-Eckrich,* 118 F.Supp.2d 1155, 1157 (D.Kan.2000) (applying *de novo* standard of review to denial of motion to amend to add party on ground of futility). Although not applicable in this case, the Court notes that even under the *de novo* standard of review, plaintiffs' motion for review would be denied.

FN3. *See Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988)(quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)); *see also Smith v. MCI Telecommunications Corp.,* 137 F.R.D. 25, 27 (D.Kan.1991)("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if this discretion is clearly abused.")

Plaintiff takes issue with Judge Waxse's characterization of what plaintiffs seek to accomplish with an amended complaint: "adding" a claim under the Americans with Disabilities Act (ADA) [FN4]; and "revising" the § 1983 claim [FN5] to include a claim for violation of the substantive due process clause. Plaintiffs argued to Judge Waxse, and argue in this motion for review, that the amended complaint would serve to clarify, not add claims or change theories. They point out that in Count III of the original complaint, which is styled " Civil Action for Deprivation of Rights Pursuant to 42 U.S.C. § 1983," it was alleged that the decedent, Aubrey Phalp, suffered from a disability recognized

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2002 WL 1067460 (D.Kan.), 23 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

under the ADA, and that the defendants
discriminated against her on the basis of this
disability. Also, in Count III, they alleged that the
decedent was: (1) "entitled to all of the rights,
privileges, and immunities secured to her by the
Constitution and laws of the State of Kansas and the
Constitution and laws of the United States[;]" and
(2) that the defendant police officers acts deprived
decedent of "[h]er right to not be deprived of life,
liberty, or property without due process of law
secured to her by the Fifth and Fourteenth
Amendments to the Constitution of the United
States."

FN4. 42 U.S.C. § 12101 *et seq.*

FN5. 42 U.S.C. § 1983

Because the plaintiffs seek to accomplish their "
clarification" by adding a count stating a claim
under the ADA and by editing Count III to
specifically allege a violation of substantive due
process, Judge Waxse's characterization was
accurate. Moreover, the basis for Judge Waxse's
denial of the plaintiffs' motion for leave to file an
amended complaint was that it was out of time.
Under the scheduling order, the parties' deadline to
file motions to amend was February 16, 2001. Just
ten days shy of a year later, plaintiffs filed the
motion for leave to file amended complaint. In their
motion for review, plaintiffs neither assert nor
demonstrate that Judge Waxse's thorough analysis
and conclusion that plaintiffs had failed to show
good cause for allowing the amendment was clearly
erroneous or contrary to law. The Court thus denies
plaintiffs' motion for review.

**\*2** With respect to plaintiffs' alternative request, the
Court declines to "clarify" that the original
complaint provides adequate notice of claims for
ADA and a violation of § 1983 by virtue of the
substantive due process clause. Nothing in Judge
Waxse's order forecloses plaintiffs from raising this
argument; in fact, the issue is addressed in the
pending motion for summary judgment filed by the
City of Overland Park.

IT IS THEREFORE ORDERED, that Plaintiffs'

Motion to Review Magistrate Judge's Order
Denying Leave to File Amended Complaint, Or in
the Alternative, Motion for Clarification (Doc. 212)
is hereby DENIED.

IT IS SO ORDERED.

D.Kan.,2002.
Phalp v. City of Overland Park, Kansas
Not Reported in F.Supp.2d, 2002 WL 1067460
(D.Kan.), 23 NDLR P 182

Briefs and Other Related Documents (Back to top)

• 2:00cv02354 (Docket) (Aug. 02, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

129 Fed.Appx. 481

Page 1

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
**(Cite as: 129 Fed.Appx. 481)**

**c**

Briefs and Other Related Documents
This case was not selected for publication in the
Federal Reporter.Please use FIND to look at the
applicable circuit court rule before citing this
opinion. Tenth Circuit Rule 36.3. (FIND CTA10
Rule 36.3.)

United States Court of Appeals,Tenth Circuit.
Jacqueline J. SCHROEDER, Plaintiff-Appellant,

v.

SOUTHWEST AIRLINES; Suzanne Coleman;
Linda Lee; Susan Kilmer; Lois Williams;
International Association of Machinists and
Aerospace Workers (IAMAW); Local 2909
International Association of Machinists and
Aerospace Workers, Defendants-Appellees.
No. 04-6194.

April 28, 2005.

**Background:** In Title VII action, after dismissal of
first complaint without prejudice because plaintiff
did not serve defendants with summons, and
dismissal of second complaint without prejudice
because plaintiff failed to file amended complaint
after leave to do so was granted, the United States
District Court for the Western District of Oklahoma
dismissing plaintiff's third complaint with prejudice
as sanction for failing to prosecute, failing to
provide copies of pleadings to defendants, and
failing to comply with discovery requests. Plaintiff
appealed.

**Holdings:** The Court of Appeals, Carlos F. Lucero,
Circuit Judge, held that:

1(1) plaintiff was culpable;

2(2) plaintiff had been warned that dismissal was
likely sanction for noncompliance; and

3(3) lack of efficacy of lesser sanctions weighed in
favor of dismissal.

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A ☜1451**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(C) Depositions of Parties and Others
Pending Action
      170AX(C)6 Failure to Appear or Testify;
Sanctions
        170Ak1451 k. In General. Most Cited
Cases

**Federal Civil Procedure 170A ☜1837.1**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1837 Effect
          170Ak1837.1 k. In General. Most
Cited Cases

**Federal Civil Procedure 170A ☜2801**

170A Federal Civil Procedure
  170AXX Sanctions
    170AXX(C) Persons Liable for or Entitled to
Sanctions
      170Ak2801 k. Relative Culpability of
Client and Attorney. Most Cited Cases
Plaintiff was culpable, as *Ehrenhaus v. Reynolds*
factor weighing in favor of dismissing plaintiff's
Title VII action with prejudice as sanction for her
failure to prosecute, failure to provide copies of
pleadings to defendants, and failure to comply with
discovery requests, though plaintiff's counsel was
more culpable than plaintiff; plaintiff had failed to
show up for her own deposition, there was no direct
evidence she had not been aware of date, time, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

129 Fed.Appx. 481

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
**(Cite as: 129 Fed.Appx. 481)**

Page 2

place for deposition, and her first two complaints had been allowed to be dismissed without prejudice for tactical reasons, so that allocation of fault between counsel and plaintiff was not necessary. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Federal Civil Procedure 170A ⚖1278**

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

**Federal Civil Procedure 170A ⚖1826**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1826 k. Notice. Most Cited Cases

**Federal Civil Procedure 170A ⚖2828**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(E) Proceedings
         170Ak2828 k. Notice and Hearing. Most Cited Cases
Plaintiff had been warned that dismissal was likely sanction for noncompliance, as *Ehrenhaus v. Reynolds* factor weighing in favor of dismissing plaintiff's Title VII action with prejudice as sanction for her failure to prosecute, failure to provide copies of pleadings to defendants, and failure to comply with discovery requests; plaintiff had allowed her first two *complaints to be dismissed without prejudice* for tactical reasons, and the two orders dismissing her lawsuit without prejudice should have put plaintiff on notice that she and her counsel must comply with court deadlines and rules. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3] Federal Civil Procedure 170A ⚖1451**

170A Federal Civil Procedure

170AX Depositions and Discovery
   170AX(C) Depositions of Parties and Others Pending Action
      170AX(C)6 Failure to Appear or Testify; Sanctions
         170Ak1451 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⚖1758.1**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)2 Grounds in General
            170Ak1758 Failure to Prosecute
               170Ak1758.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⚖2820**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(D) Type and Amount
         170Ak2820 k. Non-Monetary Sanctions. Most Cited Cases
Lack of efficacy of lesser sanctions was *Ehrenhaus v. Reynolds* factor weighing in favor of dismissing plaintiff's Title VII action with prejudice as sanction for her failure to prosecute, failure to provide copies of pleadings to defendants, and failure to comply with discovery requests; district court had granted leave to amend the complaint on at least two occasions, defendants' attorneys had not received several key pleadings, defendants had moved to compel discovery, plaintiff's written and documentary discovery responses were inadequate, and both plaintiff and her attorney failed to appear for her deposition. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**\*482** Teven W. Daniels, Lawson, King & Shelton, P.L.L.C., Oklahoma City, OK, for Plaintiff-Appellant.
Elaine R. Turner, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, OK, J. Joe Harris , Matthews & Branscomb, P.C., San Antonio, TX, Jonathan P. Rolfe, Jeffrey A. Bartos, Guerrieri, Edmond & Clayman, Washington, DC, for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

129 Fed.Appx. 481

Page 3

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
**(Cite as: 129 Fed.Appx. 481)**

Defendants-Appellees.

Before LUCERO, PORFILIO, and BALDOCK, Circuit Judges.

### ORDER AND JUDGMENT[FN*]

> FN* The case is unanimously ordered submitted without oral argument pursuant to Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

CARLOS F. LUCERO, Circuit Judge.
**\*\*1** Jacqueline J. Schroeder appeals the district court's order dismissing her lawsuit as a sanction for failing to prosecute, failing to provide copies of pleadings to defendants, and failing to comply with discovery requests, including failing to attend her own deposition.[FN1] She also appeals the order denying her motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. We exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM** both orders.

> FN1. Plaintiff was represented by Frederick W. Southern, Jr., who has been disbarred. She is represented by different counsel on appeal.

Schroeder has filed three complaints in this Title VII case. The first was dismissed without prejudice because Schroeder did not serve defendants with a summons. The second complaint was dismissed, also without prejudice, because Schroeder failed to file an amended complaint after leave to do so was granted. During the time the second lawsuit was pending, Schroeder failed to serve defendants with copies of her pleadings. She stated that she and her attorney "allowed" these dismissals to occur as a "tactical decision," hoping

that an ongoing government investigation would bolster her case upon refiling.

Schroeder filed the complaint underlying this appeal on September 18, 2002, and defendants moved to dismiss. She filed a response to the motions, but did not serve defendants with her response. The district court granted in part and denied in part the dismissal motions, and directed Schroeder to file an amended complaint. She complied with the district court's direction, but again did not serve defendants with copies of her pleading. Defendants then filed another motion to dismiss; plaintiff filed a response, but yet again failed to serve a copy on defendants. The court granted in part and denied in part the motion to dismiss.

In early December 2003, defendants served discovery requests on Schroeder's **\*483** attorney. They also served notices that they would depose Schroeder on February 4, 2004. Because Schroeder's counsel did not respond to the discovery requests or to defendants' attorneys' other attempts to obtain the discovery, defendants filed a motion to compel.

Neither Schroeder nor her attorney appeared for the deposition set for February 4th. They made no request to change the date and they did not notify defendants' attorneys that they would not appear. Furthermore, the attorneys' telephone call to Schroeder's lawyer on the day of the deposition went unanswered and was never returned. Defendants' attorneys traveled to Oklahoma City from Washington, D.C. and San Antonio, Texas for the deposition.

On February 19, 2004, Schroeder responded to the motion to compel by stating that she had provided the requested discovery. The district court found that those responses were inadequate. Three weeks later, Schroeder supplemented those responses, but the district court was not aware of the supplement. Schroeder has not explained why she failed to respond adequately to the discovery requests in a timely manner.

On March 19, 2004, the district court granted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

129 Fed.Appx. 481

Page 4

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
**(Cite as: 129 Fed.Appx. 481)**

defendants' motion to dismiss with prejudice as a sanction for abusing the discovery process, failing to prosecute her case, and failing to follow the rules of civil procedure. The court evaluated the appropriate factors and concluded that dismissal with prejudice was the only appropriate sanction under the circumstances.[FN2]

> FN2. The district court also ordered Schroeder's then-attorney to pay attorney fees and costs to defendants. These orders are not before us.

**\*\*2** Schroeder then filed a motion to reconsider, which the district court construed as a motion to alter or amend the judgment under Rule 59(e). In support of the motion, Schroeder submitted a statement explaining that she did not know her deposition had been set for February 4th, and that the first two complaints were allowed to be dismissed for tactical reasons. She also stated that she had answered defendants' discovery requests on February 19, 2004, and had supplemented those answers on March 12, 2004. The district court denied the motion, holding that plaintiff had not met the criteria to alter or amend a judgment.

"We review for an abuse of discretion the district court's decision to impose the sanction of dismissal for failure to follow court orders and rules." *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir.2002) . "A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir.2002). In addition, a district court has discretion to dismiss a case for discovery violations. *LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir.2003). Sanctions are available to permit the court to "manag[e] its docket and avoid[ ] unnecessary burdens on the tax-supported courts, opposing parties or both." *Mulvaney v. Rivair Flying Serv., Inc.* (*In re Baker* ), 744 F.2d 1438, 1441 (10th Cir.1984). In reviewing the district court's exercise of discretion, we consider the totality of the circumstances. *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir.1987). " Because a default judgment is a harsh sanction, due

process requires that 'failure' [to obey rules or orders] is a sufficient ground only when it is the result of 'willfulness, bad faith, or [some] fault of petitioner' rather than inability to comply." *Id.* (quoting **\*484**\*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). Willful failure means "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *Id.* at 872-73 (quotation omitted).

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir.1992), this court articulated the following five criteria for a district court to consider when evaluating whether dismissal is an appropriate sanction: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." 965 F.2d at 921 (quotation and citations omitted). These criteria are guidelines, not a "rigid test." *Id.*

Schroeder concedes that the first two *Ehrenhaus* criteria were met, although she maintains that she was not at fault. She contends that the district court abused its discretion in finding that the remaining factors weighed in favor of dismissal. Specifically, she maintains that she was blameless, that the court never warned her that her case could be dismissed with prejudice, and that a lesser sanction is appropriate. She argues that the blame lies with her former attorney and that the district court appropriately imposed sanctions on him.

**\*\*3** [1] Addressing culpability, the district court determined that even though Schroeder's attorney was more culpable than she, no evidence had been presented to demonstrate that she "was not aware of the date, time, and place for her deposition." Aplt.App. at 192. Schroeder points to her statement that she was not aware that her deposition had been scheduled. This statement was not filed until after the case was dismissed. Therefore, at the time the case was dismissed, "the record contain[ed] no direct evidence regarding what plaintiff knew of [her] attorney's derelictions," and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

129 Fed.Appx. 481

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
(Cite as: 129 Fed.Appx. 481)

under those circumstances, a plaintiff is liable for the acts and omissions of her attorney. *Gripe,* 312 F.3d at 1188. "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of [her] lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 1189 (quotation omitted).[FN3]

> FN3. "Redress for [attorney] incompetence is usually found in a suit for malpractice rather than on direct appeal." *M.E.N. Co.,* 834 F.2d at 873.

We recognize, as plaintiff argues, that this court has stated that " '[i]f the fault lies with the attorneys, that is where the impact of the sanction should be lodged.' " *M.E.N. Co.,* 834 F.2d at 873 (quotation omitted). In that case, however, the district court " made no findings on whether [the sanctioned litigants'] conduct met the willful noncompliance standard," so the case was remanded for specific findings. *Id.* at 873-74; *see also Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1465 (10th Cir.1988) (collecting cases that were remanded to permit district court to make findings on fault of litigant). In contrast, the district court in this case made the explicit finding that Schroeder, as well as her attorney, was culpable. "[W]here the district court considered this factor on the record, the client was liable for the acts and omissions of [her] counsel." *LaFleur,* 342 F.3d at 1152; *see also Gripe,* 312 F.3d at 1188 (dismissal appropriate even where "the record contains no direct evidence regarding what plaintiff knew of his attorney's derelictions," because "of the repeated*485 and documented failure of his chosen representative.").

Moreover, Schroeder stated that the first two complaints "were allowed to be dismissed without prejudice for tactical reasons." Where sanctionable conduct was the result of tactical decisions, "[w]e need not allocate fault ... between lawyer and client because both are bound by trial strategy." *Smith v. United States,* 834 F.2d 166, 171 (10th Cir.1987). We conclude that the district court did not abuse its discretion in its culpability determination.

[2] In evaluating the fourth *Ehrenhaus* factor-whether the plaintiff had been warned that dismissal was a likely sanction for noncompliance-the district court found that even though she had not been warned, "the continuing nature of plaintiff and her counsel's inexcusable conduct, the extent of the prejudice to defendants, and the interference with the judicial process outweigh the fact that plaintiff was not specifically warned." In addition, the court noted that the two orders dismissing her lawsuit without prejudice should have put Schroeder on notice that she and her counsel must comply with court deadlines and rules. The district court considered this factor and stated legitimate reasons for dismissing. Accordingly, we find no abuse of discretion.

**4 [3] As for the fifth criterion-the efficacy of lesser sanctions-the district court found that " nothing short of dismissal would be effective," after considering the history of this litigation and the repeated abuses of the judicial process. Plaintiff first filed suit in November 2000. As of the dismissal date, March 19, 2004, the parties had not even accomplished the first phase of discovery. The district court had granted leave to amend the complaint on at least two occasions, defendants' attorneys' had failed to receive several key pleadings, defendants had moved to compel discovery, Schroeder's written and documentary discovery responses were inadequate, [FN4] and both Schroeder and her attorney failed to appear for her deposition. "The burden of litigation is too pressing, and trial courts' patience has too long been tried, to permit parties to evade the consequences of neglecting their cases." *M.E.N. Co.,* 834 F.2d at 873 . Under the circumstances, the district court did not abuse its discretion in choosing dismissal as an appropriate sanction.

> FN4. Schroeder argues that the district court inappropriately considered the inadequacy of her responses to the discovery requests. She asserts that one of the defendants' attorneys did not certify that he conferred or attempted to confer with plaintiff's counsel, as required by Fed.R.Civ.P. 37(a)(2). Schroeder has not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.