129 Fed.Appx. 481

Page 6

129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))
**(Cite as: 129 Fed.Appx. 481)**

shown that this issue was raised in the district court; therefore, we decline to consider it on appeal. *Wilburn v. Mid-South Health Dev., Inc.,* 343 F.3d 1274, 1280 (10th Cir.2003).

Schroeder also challenges the district court's order denying her Rule 59(e) motion to alter or amend the judgment. "We review a district court's ruling on a [Rule] 59(e) motion under an abuse of discretion standard.... A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." *Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir.1997) (quotations omitted).

Schroeder filed a declaration explaining her reasons for the delays in prosecuting her case, and stating that she had been unaware that her deposition had been scheduled. The district court appropriately declined to consider the declaration because it contained no new information that was unavailable before the dismissal order. *Comm. for First Amendment v. Campbell,* 962 F.2d 1517, 1524 (10th Cir.1992) (finding**486** no abuse of discretion when district court refused to consider additional evidence in support of Rule 59(e) motion where there was no showing "that the evidence was newly discovered or unavailable in a more timely fashion through the exercise of diligence"). The district court held that Schroeder had identified no instances in which the court had misapprehended the facts or the controlling law, and denied relief. We similarly conclude that Schroeder has not shown manifest error requiring that the judgment be reopened. Accordingly, we hold that the district court did not abuse its discretion in denying Schroeder's motion.

The judgment of the district court is **AFFIRMED.**

C.A.10 (Okla.),2005.
Schroeder v. Southwest Airlines
129 Fed.Appx. 481, 2005 WL 984495 (C.A.10 (Okla.))

Briefs and Other Related Documents (Back to top)

• 2004 WL 3049652 (Appellate Brief) Appellant's Reply Brief (Nov. 22, 2004)
• 2004 WL 3079967 (Appellate Brief) Appellant's Reply Brief (Nov. 22, 2004) Original Image of this Document (PDF)
• 2004 WL 3089265 (Appellate Brief) Joint Brief of Appellees Southwest Airlines Co., Suzanne Coleman, Linda Lee, Susan Kilmer, Lois Williams, International Association of Machinists And, Aerospace Workers (Iamaw), and Local Lodge 2909, Iamaw (Nov. 10, 2004) Original Image of this Document (PDF)
• 2004 WL 3556546 (Appellate Brief) Joint Brief of Appellees Southwest Airlines Co., Suzanne Coleman, Linda Lee, Susan Kilmer, Lois Williams, International Association of Machinists And Aerospace Workers (Iamaw), and Local Lodge 2909, Iamaw (Nov. 10, 2004) Original Image of this Document (PDF)
• 2004 WL 2730943 (Appellate Brief) Appellant's Opening Brief (Oct. 12, 2004) Original Image of this Document (PDF)
• 2004 WL 3556545 (Appellate Brief) Appellant's Opening Brief (Oct. 12, 2004) Original Image of this Document with Appendix (PDF)
• 04-6194 (Docket) (Jun. 17, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 638372 (D.Kan.)
(Cite as: Not Reported in F.Supp.)

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.
SITHON MARITIME COMPANY, Plaintiff,
v.
HOLIDAY MANSION, et al., Defendants.
**No. Civ.A.96-2262-EEO.**

Sept. 14, 1998.

Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, Michael G Chalos, Richard M Ziccardi, George J Tsimis, Chalos & Brown, New York, NY, for Sithon Maritime Company, plaintiff.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Holiday Mansion, a Division of Mohawk, Inc., defendant.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John C. Aisenbrey , Stinson, Mag & Fizzell, P.C., Kansas City, MO, Alex B Marconi, Patrick X Fowler, Snell & Wilmer L.L.P., Phoenix, AZ, for Mercury Marine, a Division of Brunswick Corporation, defendant.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John C. Aisenbrey , Stinson, Mag & Fizzell, P.C., Kansas City, MO, Alex B Marconi, Patrick X Fowler, Snell & Wilmer L.L.P., Phoenix, AZ, for Mercury Marine, cross-claimant.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Holiday Mansion, cross-defendant.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John C. Aisenbrey , Stinson, Mag & Fizzell, P.C., Kansas City, MO, Alex B Marconi, Patrick X Fowler, Snell & Wilmer L.L.P., Phoenix, AZ, for Mercury Marine, counter-claimant.

Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, Michael G Chalos, Richard M Ziccardi, George J Tsimis, Chalos & Brown, New York, NY, for Sithon Maritime Company, counter-defendant.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Holiday Mansion, cross-claimant.

Heather Suzanne Woodson, Stinson, Mag & Fizzell, P.C., Overland Park, KS, John C. Aisenbrey , Stinson, Mag & Fizzell, P.C., Kansas City, MO, Alex B Marconi, Patrick X Fowler, Snell & Wilmer L.L.P., Phoenix, AZ, for Mercury Marine, cross-defendant.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Holiday Mansion, counter-claimant.

Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, KS, Michael G Chalos, Richard M Ziccardi, George J Tsimis, Chalos & Brown, New York, NY, for Sithon Maritime Company, counter-defendant.

*MEMORANDUM AND ORDER*

RUSHFELT, Magistrate J.
**\*1** Before the court is Plaintiff-Sithon Maritime Company's Motion for Sanctions Against Defendant-Mercury Marine (doc. 190). Pursuant to Fed.R.Civ.P. 37 and D.Kan. Rule 11.1(c), plaintiff seeks an order to sanction defendant Mercury Marine (Mercury) for deliberately withholding relevant documents and information from plaintiff. Mercury opposes the motion. It asks that the court direct plaintiff to retract false and defamatory accusations of discovery misconduct. It further asks the court to award it fees and costs incurred in responding to the motion of plaintiff.

On April 14, 1998, the court heard oral argument on the motion. Plaintiff appeared through its attorneys Lee M. Smithyman, Richard M. Ziccardi, and George J. Tsimis. Defendant Mercury appeared

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2

Not Reported in F.Supp., 1998 WL 638372 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

through its attorneys John C. Aisenbrey, Alex B. Marconi, and Patrick X. Fowler. The court has considered the written briefs and oral arguments and will now rule.

Plaintiff seeks sanctions for the failure of Mercury to produce documents discovered at Marine Corporation of America (MCA), a non-party to this action. It contends Mercury withheld documents at three different points of this lawsuit: (1) from initial disclosures, required by Fed.R.Civ.P. 26(a); in response to requests propounded under Fed.R.Civ.P. 34; and in response to requests contained in correspondence. Plaintiff alleges the documents were "clearly" in the possession of Mercury "at all relevant times." It also seeks sanctions on the basis that Mercury "coached" and obtained perjured testimony.

Plaintiff groups the withheld documents into the following categories: (1) history of engines sent to it for installation into its passenger boats; (2) other complaints of engine overheating; and (3) acknowledgment that the 7.3L diesel engine was a " problem product" and "obsolete." (Pl.'s Mem. Supp. Mot. for Sanctions, doc. 191, at 3.) During oral argument it divided the withheld documents into two categories: (1) those related to the 7.3L engine in general; and (2) those related to the specific engines at issue in this lawsuit. As examples of the allegedly withheld documents, plaintiff provides various forms of correspondence between Mercury and MCA and a warranty claim as exhibits. (See Exs. E through L and N through R, attached to Aff. of George J. Tsimis, doc. 192.) Correspondence between the parties identifies nine categories of documents allegedly withheld from discovery by Mercury: (1) supplier corrective action requests; (2) sample inspection reports; (3) Mercury Engineering Change Notices; (4) Nonconforming Product Utilization Permits; (5) Mercury Engine Final Inspection forms; (6) packaging check lists; (7) failure of engine reports; (8) non-conforming material tags or reject cards; and (9) engine repair sheets. (Letter from Tsimis to Fowler of 10/9/97 at 3-4, attached as Ex. S to Aff. of George J. Tsimis.) Plaintiff acknowledges that the last three categories are forms of MCA, but nevertheless hypothesizes that "Mercury clearly must have used a similar type

document." (Id. at 4 n. 1.)

*2 Mercury opposes sanctions. It claims that it has produced other documents which contain the same information as the documents allegedly withheld. It claims that it did not find the allegedly withheld documents, furthermore, "when it searched in places it reasonably expected to locate documents which might be responsive to plaintiff's discovery requests." It suggested to plaintiff that MCA might have relevant documents. It suggests, moreover, that the documents apparently no longer exist at Mercury. It affirmatively states in response to the motion that it no longer has such documents to produce. It denies coaching or obtaining perjured testimony. It wants plaintiff to retract its false and defamatory accusations of discovery misconduct. It also seeks its costs and fees incurred in responding to the motion.

The present motion completes a trilogy of motions alleging various abuses of discovery by Mercury. On April 10, 1998, the court sustained in part, deemed moot in part, and otherwise overruled a motion to compel Mercury to produce all documents responsive to Plaintiff's Second Request for Production of Documents and all documents informally requested in a letter dated June 3, 1997. (Mem. & Order of Apr. 10, 1998, doc. 217.) It ordered Mercury to produce documents responsive to Requests 1, 22 through 34, and 37. (Id. at 17.) It directed that each party would be responsible for its own costs and expenses incurred on the motion. (Id. at 18.) On May 7, 1998, it sustained in part, deemed moot in part, and otherwise overruled a motion to compel Mercury to produce documents withheld from productions required by Plaintiff's Second Request for Production of Documents and the letter of June 3, 1997. (Mem. & Order of May 7, 1998, doc. 222.) Subject to a protective order made applicable contemporaneously, the court ordered Mercury to produce a client list which had been withheld from discovery for lack of a protective order. (Id. at 4-5.) It declined to find that Mercury withheld other documents from discovery. (Id. at 3.) It again directed that each party would be responsible for its own costs and expenses incurred on the motion. (Id. at 4.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 3

Not Reported in F.Supp., 1998 WL 638372 (D.Kan.)
(Cite as: Not Reported in F.Supp.)

Plaintiff contends that Mercury should have produced the withheld documents as initial disclosures and in response to its First and Second Requests for Production and letters dated October 16, 1996 and June 3, 1997. A failure to produce documents as initial disclosures does not subject a party to sanctions when that party chooses to identify, rather than produce, documents. Fed.R.Civ.P. 26(a) permits the disclosing party to choose either form of disclosure. In this instance Mercury chose to identify relevant documents as part of its initial disclosures. (*See* Mercury's Initial Rule 26(a) Disclosure of Individuals, Documents and Damages, attached as Ex. T to Aff. of George J. Tsimis.) That it did not produce the allegedly withheld documents as initial disclosures thus provides no basis for sanctions.

**\*3** Withholding production in response to the letters of October 16 and June 3 likewise provides no basis for sanctions. As thoroughly discussed in ruling upon plaintiff's first motion to compel, an informal request for production contained in a letter creates no duty to produce documents. (Mem. & Order of April 10, 1998, at 2-4.) Plaintiff sought warranty claims from Mercury only informally in a letter. (*See* Pl.'s Mem. Supp. Mot. for Sanctions, doc. 191, at 7 .) Accordingly, the withheld warranty claim provides no basis for sanctions.

Other documents allegedly withheld from discovery, however, appear responsive to formal requests for production. Improperly withholding production against formal requests for production may occasion sanctions. Sanctions against Mercury, nevertheless, appear unwarranted. Its response adequately states that the unproduced documents did not exist within its possession, custody, or control, when it responded to the formal requests for discovery. Plaintiff presents no evidence, furthermore, that Mercury coached any witness to commit perjury. Cross-examination at trial, of course, may show any inconsistencies between the deposition testimony and the documents from MCA.

Citing *Norman v. Young,* 422 F.2d 470, 472-73 (10th Cir.1970), plaintiff suggests that Mercury must provide sworn statements that it lacks possession, custody, and control of the unproduced documents. In *Norman* the Tenth Circuit Court of Appeals upheld a default judgment for the failure to produce documents as previously ordered by the trial court in ruling upon a motion to compel. 422 F.2d at 471-75. During a hearing on the motion to compel counsel for defendants orally informed the trial court that the documents did not exist. *Id.* at 471. The court directed counsel to "make the proper representations in writing." *Id.* After counsel failed to do so, the court entered default judgment. *Id.* at 472. On appeal the Circuit noted the general rule that "the moving party is charged with establishing possession, custody or control and that a 'party may not be compelled to produce papers or things which are not in his possession, custody, or control, or the possession, control, or existence of which the party denies under oath." ' *Id.* at 472-73 (footnotes omitted). The Circuit recognized, however, that " records which are normally kept in the business of the party ... are presumed to exist, absent a sworn denial, and a prima facie case of control is all that must be established to justify issuance of the order [to produce]." *Id.* at 473 (footnotes omitted). Finding that the records withheld by defendants were the type normally kept in the business of the party, the Circuit held that, in the absence of sworn statements denying the existence of such documents, the trial court "could presume existence in a concealed state and/or that the evidence produced would show the untruth or unmeritorious nature of the defense." *Id.* at 473.

**\*4** The court finds *Norman* distinguishable from the present case. The documents there at issue - statements from financial institutions, tax returns, quarterly estimates of income, financial statements, and records of accountant - were the type businesses customarily and routinely keep in their operation. The documents here at issue are not of similar character. Plaintiff attaches various forms of correspondence between Mercury and MCA and a warranty claim as exhibits. As noted earlier, withholding the warranty claim provides no basis for sanctions. The court thus disregards that item and expresses no view as to whether businesses would customarily and routinely keep such documents in their operation. It views the other examples of withheld documents as significantly different from the financial information at issue in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1998 WL 638372 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

*Norman.* Unlike that information, the court declines to indulge a presumption that a business will necessarily keep every memo, letter, e-mail, or similar document in the course of its business.

In the absence of such presumption, plaintiff has made no *prima facie* showing that Mercury had possession, custody, or control of the sought documents when it responded to the formal requests for discovery. The response to the motion for s anctions adequately demonstrates that Mercury no longer has the documents. Mercury provides a number of plausible explanations for their non-existence. Plaintiff quibbles about the precise wording of attached affidavits purporting to assert the non-existence. Assuming the insufficiency of the provided affidavits does not help plaintiff. Although averments made under oath may be preferable, they are not necessary to resolve every dispute regarding the existence of documents. Statements within the response suffice in this instance. Plaintiff apparently fails to recognize the significance of the signature of counsel on the response to the motion. The signature requirement of Fed.R.Civ.P. 11 or 26(g) provides sufficient verification for accepting the fact that the sought documents no longer exist at Mercury and that Mercury does not otherwise have possession, custody, or control of them.

The court notes, furthermore, that sanctions were warranted in *Norman,* because defendant there failed to produce documents in contravention of an order of the court and plaintiff there had never obtained the documents from any other source. Plaintiff here has obtained the documents at issue, albeit from a non-party. The failure to produce in this case violated no court order.

From the record before it, the court finds no sanctionable conduct on the part of Mercury. Mercury failed to produce certain documents in response to requests for discovery, because it no longer had them. It suggested that plaintiff seek documents from MCA. MCA produced documents that relate to Mercury and issues of this lawsuit. That production may have raised a legitimate question about why Mercury had not produced them, but it provides no basis for sanctions in view of the affirmative denial of their existence in

response to the motion. Despite the allegations of wrongdoing, plaintiff has provided no evidence of deliberate and purposeful withholding of documents. It has shown nothing beyond speculation and conjecture that counsel for Mercury coached perjured testimony from witnesses. The court declines to attribute unethical conduct to counsel on the record before it, which is speculative at best.

**\*5** The court declines to sanction Mercury. If plaintiff seeks reconsideration of the ruling on the motion for summary judgment in light of evidence obtained from non-party MCA, it must resort to other avenues. The present motion for sanctions does not go to reconsideration of the ruling by the District Judge.

Mercury asks the court to direct plaintiff to retract its accusations of discovery misconduct. It further asks for an award of its costs and expenses incurred upon the motion. The court declines both requests. The denial of the motion of plaintiff should adequately dispel the accusations against Mercury. The production by MCA, furthermore, raised a legitimate question as to the reasons plaintiff failed to produce the documents. The court cautions counsel for the parties to conduct this litigation with civility toward one another. Civility between counsel, parties, and the court should be the norm, not the exception, in the adversarial process. Such civility includes conferring about disputes. Such conference appears lacking here. Had counsel for plaintiff made the effort to settle this matter face-to-face with defense counsel the apparent need for the motion for sanctions may have subsided. The rules do not call for sanctions at every turn. Counsel have a duty to treat each other with respect and courtesy.

For the foregoing reasons, the court overrules Plaintiff-Sithon Maritime Company's Motion for Sanctions Against Defendant-Mercury Marine (doc. 190). Each party shall be responsible for its own costs and expenses incurred on the motion and subsequent briefing.

IT IS SO ORDERED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 5

Not Reported in F.Supp., 1998 WL 638372 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

D.Kan.,1998.
Sithon Maritime Co. v. Holiday Mansion
Not Reported in F.Supp., 1998 WL 638372
(D.Kan.)

Briefs and Other Related Documents (Back to top)

• 1999 WL 34590906 () Affidavit of Joseph Winer
(Feb. 13, 1999) Original Image of this Document
(PDF)
• 1999 WL 34590907 () Affidavit of Marc Vianello.
CPA (Feb. 13, 1999) Original Image of this
Document (PDF)
• 1998 WL 35031806 () Affidavit of Joseph Winer
(Sep. 29, 1998) Original Image of this Document
(PDF)
• 1998 WL 35073704 (Trial Motion, Memorandum
and Affidavit) Plaintiff-Sithon Maritime Company's
Opposition     Memorandum     of     Law     to
Defendant-Mercury Marine's Motion for Partial
Summary Judgment (Sep. 29, 1998) Original Image
of this Document (PDF)
• 1998 WL 35031807 () Supplemental Report (Sep.
7, 1998) Original Image of this Document (PDF)
• 1998 WL 35031805 () Preliminary Expert Report
of Marc Vianello (Jun. 19, 1998) Original Image of
this Document (PDF)
• 1997 WL 34479497 () (Report or Affidavit) (Mar.
15, 1997) Original Image of this Document (PDF)
• 1997 WL 34479496 () (Report or Affidavit) (Feb.
28, 1997) Original Image of this Document (PDF)
• 1996 WL 34313007 (Trial Pleading) Complaint
(Jun. 3, 1996) Original Image of this Document
(PDF)
• 2:96cv02262 (Docket) (Jun. 03, 1996)
• 1996 WL 34303306 () (Partial Testimony) (1996)
Original Image of this Document (PDF)
• 1996 WL 34303307 () (Partial Testimony) (1996)
Original Image of this Document (PDF)
• 1996 WL 34303308 () (Partial Testimony) (1996)
Original Image of this Document (PDF)
• 1996 WL 34303309 () Report of Marc vianello,
CPA of Vianello & Leonard, L.L.C. (1996)
Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                     Page 1

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D.
Michigan,Southern Division.
SUNROOF de MEXICO, S.A. de C.V., Plaintiff,
v.
WEBASTO ROOF SYSTEMS, INC., Defendant.
**No. 05-40031.**

April 19, 2006.

Jeffrey D. Wilson, Michael M. Jacob, Raymond &
Prokop, Southfield, MI, for Plaintiff.
Marc D. Kaszubski, O'Reilly, Rancilio, Robert C.
Davis, O'Reilly, Rancilio, Sterling Heights, MI, for
Defendant.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE DOCUMENTS (Dkt.# 50)

STEVEN D. PEPE, Magistrate Judge.
**\*1** This is a contract claim by Sunroof de Mexico,
S.A. de C.V., a Mexican distributor of Webasto
Roof Systems' sunroofs in Mexico, for an alleged
2001 breach of its January 30, 1990 exclusive
distributorship agreement. On March 8, 2006,
Defendant filed a motion to strike multiple damages
documents produced by Plaintiff after deadlines set
by this Court in October 20 and December 14, 2005
orders and enforce the December 14th order's
warning by precluding Plaintiff's experts from
testifying at trial and use of certain documents
(Dkt.# 50).

This motion was referred for hearing and
determination pursuant to 28 U.S.C. § 636(b)(1)(A).
The parties submitted briefs and participated in an
in-person hearing on April 13, 2006.

Plaintiff contends that this motion, if granted, will
be case dispositive because it will undermine its
ability to prove its damages at trial. Yet, technically

Defendant's motion is not a case dispositive motion
under 28 U.S.C. § 636(b)(1)(B). Defendant's
current motion requests that for Plaintiff's violation
of earlier orders of this Court regarding damages
discovery and experts that the Court impose the
sanction of excluding certain evidence: (1.)
damages documents produced after the date set for
production and the extended date allowed for
damage document production, as well as (2.) the
related testimony of Plaintiff's damage experts that
is based on those tardy documents. This is a
sanction specifically permitted under Fed.R. Civ. P.
37(b)(2) for failure of a party to comply with a
court order to provide or permit discovery. In this
case, as noted in detail below, Plaintiff was ordered
to produce certain discovery documents on damages
to Defendant by a certain date, and produce an
expert report and experts for deposition who were
specifically limited to using those documents that
Plaintiff had produced to Defendant by the
deadline. As will be shown, Plaintiff has violated
these orders. Fed.R. Civ. P. 37(b)(2)(B) specifies as
a permissible sanction "prohibiting [the
disobedient] party from introducing designated
matters in evidence." Defendant seeks to prohibit
Plaintiff from having its experts testify and from
otherwise using any damages evidence beyond that
produced by the deadlines specified, and thereafter
extended, by this Court. 28 U.S .C. 636(b)(1)(A)
lists pretrial duties that a federal district judge can
refer to a magistrate judge for hearing and
determination consistent with Article III of the U.S.
Constitution.

28 U.S.C. 636(b)(1)(A) specifically excludes
reference of motions "to suppress evidence in a
criminal case", which suggests that Congress
considered reference of motions to exclude
evidence and allowed them for hearing and
determination in civil cases.[FN1] Accordingly, this
motion will be considered as referred for hearing
and determination. If the Article III judge in
reviewing any objections to this opinion and order
determines that it is appropriate to review the matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 2

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: Slip Copy)

under a "de novo" standard applied to matters handled under 28 U.S.C. 636(b)(1)(B) instead of a " clearly erroneous or contrary to law "standard of 28 U.S.C. 636(b)(1)(A), he may modify the reference and make such findings under such standards as he deems appropriate.

> FN1. *Ann L. v. X Corp.*, 133 F.R.D. 433, 435 (W.D.N.Y.,1990) ("Jurisdiction of a magistrate over suppression motions in civil cases under 28 U.S.C. § 636(b)(1)(A) is confirmed by that subparagraph's enumeration of criminal case suppression motions as excluded from subparagraph (b)(1)(A) jurisdiction. The clear inference is that suppression motions in civil cases under Fed .R.Civ.P. 26(c) may be determined by a magistrate, subject to a " ' clearly erroneous or contrary to law' standard of review.").

*2 After a thorough consideration of the matter and for the reasons stated below, Defendant's motion is GRANTED.

### I. Case Procedural Background

Plaintiff filed its complaint on January 31, 2005, alleging breach of contract and specifying damages of $14,236, 800.00. A March 3, 2005, scheduling order required discovery to be completed by July 30, 2005, and set a trial date of February 6, 2006 (Dkt.# 7). A July 26, 2005, stipulated order extended discovery until September 30, 2005 (Dkt.# 11). Plaintiff filed a motion for partial summary judgment on August 3, 2005, (Dkt.# 12). An August 29, 2005, stipulated order extended discovery again until November 30, 2005 (Dkt.# 15). Defendant filed its motion to compel discovery on September 19, 2005, which will be described further below (Dkt.# 16). This motion was granted in part on October 20, 2005, in an order which extended the scheduling order for the third time with discovery to close on January 19, 2006, Plaintiff's expert report due December 1 and Defendants expert report was due January 16 (Dkt.# 21). This order specified that:

1. On or before November 2, 2005, Plaintiff shall produce to Defendant all remaining documents in support of its request for damages contained in the Complaint.
2. No documents, other than those produced to Defendant by November 2, 2005, may be used by Plaintiff or Plaintiff's experts to support its claim for damages, except for those produced by Defendant and/or those documents which Plaintiff receives in response to the subpoena it served on Hollandia Sunroofs of Mexico.
* * *
5. Plaintiff's expert report on damages shall be submitted on or before December 1, 2005. Plaintiff's expert shall be available to be deposed on or before December 21, 2005.

After Plaintiff missed November 2nd deadline, Defendant filed a motion on November 10, 2005, to strike documents produced by Plaintiff after November 2nd (Dkt.# 23). Plaintiff also missed the December 1, 2005, expert report deadline. On December 2, 2005, Plaintiff filed a motion requesting a fourth extension of discovery and making its expert available within 30 days, noting " This is Plaintiff's first Motion to extend the Court's Scheduling Order." (Dkt.# 31). The motion specifically identifies the statement of issues presented as:

### STATEMENT OF THE ISSUE PRESENTED

Whether Plaintiff should be granted a thirty-day extension to file its final Expert Report and make its expert witness available for deposition?
Plaintiff's answer: Yes.

The motion mentions that the Plaintiff's expert " Harold Dubrowsky of Grant Thornton advised Plaintiff's counsel by correspondence that additional time was required to finalize his expert report." In its argument Plaintiff asserts:Plaintiff and its expert witness have worked diligently to formulate an expert report supporting Plaintiff's claim for damages. Given the difficulties associated with Plaintiff's location and the barriers between Grant Thornton and Plaintiff (both geographic and linguistic), the development of Plaintiff's expert

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: Slip Copy)

report has been delayed. Plaintiff's expert believes that a final report can be prepared with an additional 30 days.

*3 The series of delays in getting Plaintiff's damages documents from the initial disclosures through to the missed November 2 deadline were apparent to all by this time, but those documents, it was believed, were produced to defense counsel in mid-November. Plaintiff's December 2 motion made no request for any modification of paragraph 2 of the October 20, 2005, Order which limited the materials upon which its damages expert could rely to documents produced to Defendant by November 2005. Indeed, it appeared the Plaintiff's December 2 request was for the Plaintiff's expert to have more time to analyze the damages documents and complete his expert report than the 2 weeks allowed from November 14 (when the damages documents were finally assembled and available) to December 1 when the expert report was due.

In a December 14, 2005, order Defendant's motion to strike and bar the use of the Plaintiff's damage documents was denied (though Plaintiff was ordered to pay Defendant's legal costs (determined to be $4,182 (Dkt.# 53)) associated with bringing the motion). Defendant had sought to exclude Plaintiff's experts from using the damages documents tardily produced by November 14. Yet, after finding substantial compliance with the October 20 order and no prejudice to Defendant, it was determined:
Therefore, the documents may be used to support Plaintiff's damage claim. *No additional documents of Plaintiff may be used by Plaintiff's counsel or expert to support its damage claim.*

December 14, 2005, Order; Dkt. # 53, p. 2 (emphasis supplied).

Reiteration of this limit on Plaintiff's coming up with more damages documents was specifically requested by defense counsel at the December 13 hearing. In order to impress on Plaintiff's counsel that continued disregard of its discovery obligations would not be forgiven the next time, at the December 13 hearing it was stated "I will put as Draconian language in this next order as I can and

this time I will mean it."

Plaintiff's December 2 motion for "a thirty-day extension to file its final Expert Report and make its expert witness available for deposition" was granted (Dkt. # 3 8). The December 14, 2005, order specified:
Plaintiff shall be permitted to submit its expert report to the offices of defense counsel on or before 4:45 PM on January 3, 2006, on the following conditions: (1) within fourteen (14) days of a stipulation or court determination as to amount, Plaintiff shall pay the costs including attorney fees Defendant incurred in filing and/or defending these two motions; (2) Plaintiff's experts, both Harold Dubrowsky and Hector Bautista Esquivel, shall be made available at Plaintiff's expense (including both travel and translator expenses) for deposition at defense counsel's offices in Michigan on or before January 31, 2006; (3) Defendant's expert report shall be submitted on or before March 31, 2006, with a deposition to occur on or before April 14, 2006. *Failure of either side to comply with the terms of this order shall result in the waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion.*

*4 *Id.* at p. 2-3 (emphasis supplied).

Because the Court was not requested to modify its October 20 order limiting Plaintiff's experts to the damages documents produced to Defendant in November, this December 14 order fully anticipated that the 30 days extension to produce the expert report would comply with that November condition as modified and reiterated by the December 14 order.

Defendant filed its motion for summary judgment on December 13, 2005 (Dkt. # 36).FN2

> FN2. Both parties' dispositive motions were denied on March 31, 2006 (Dkt # 56).

## II. The Current Motion

Defendant's current motion revolves around a repeated pattern of Plaintiff's failure to meet this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 4

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: Slip Copy)

Court's deadlines and specific orders to provide the documents and expert accounting support for the $14,236,800.00 damages claim it specifically pled over a year ago in its January 31, 2005, complaint.

Defendant has attempted to obtain adequate evidence of damages from Plaintiff. Such information was not forthcoming in the March 2005 initial disclosures, nor in response to the document requests accompanying Defendant's May requests for admissions, nor in the documents produced in conjunction with the October deposition of Plaintiff's president. When Defendant's August 2005 interrogatories and request for production also produced insufficient responses, Defendant filed a motion to compel production. Defendant's motion to compel was heard on October 19, 2005, at which time there had already been two extensions of the discovery and motion cut off dates, originally set on March 24, for July 30 and August 30. The new discovery cut off date was November 30. As noted above Plaintiff was ordered on October 20 to provide Defendant with all documents in its possession that support its claim for damages on or before November 2, 2005. Plaintiff was warned that it could not use any documents on damages at trial not produced by that date. The documents were being brought and sent from Las Vegas by one of Plaintiff's attorneys. While he arrived back in Michigan late on November 2 with some of the documents and others being sent, the documents were not fully made available for inspection by defense counsel until November 4, 2005. Apparently those portions desired were copied for Defendant's counsel by November 14, 2005.

Defendant filed a motion to enforce this Court's October 20 Order and strike the damages documents for Plaintiff's failure to comply with the October 20 Order after a pattern of repeated delays and neglect of its discovery production obligations. On December 14, 2005, Defendant's motion to strike the documents was heard and denied " notwithstanding the logic of their assertion that court orders are to be obeyed, the short time difference in the production, what appears to be a good faith, albeit belated, effort that constituted substantial compliance with the October 19 order, and the lack of prejudice in the few day delay to

Defendant does not warrant the sanction Defendant seeks. Therefore, the documents may be used to support Plaintiff's damage claim." (Dkt. # 3 8). But as noted above, this Order specified that, "No additional documents of Plaintiff may be used by Plaintiff's counsel or expert to support its damage claim." The parties were also warned that failure to comply with the terms of the December 14, 2005, order "shall result in the waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion." *Id.* (emphasis added).

*5 The parties agree that subsequent to the December 14, 2005, Order the following events transpired:
December 21-22, 2005-Plaintiff's counsel and United States based accounting expert, meet with Plaintiff and the expert's affiliated Mexican field office accountant in Mexico City in order to complete its expert damage report.
January 3, 2005-Plaintiff's expert report is forwarded to Defendant.
January 30 and 31, 2006-Defendant deposes Plaintiff's expert witnesses.
February 23, 2006-Plaintiff's produce 1,370 documents which their expert's relied on in formulating their damages calculations.

(Dkt.# 52, p. 5).

Defendant's current motion asks that the Court strike all documents produced after the Court's November 14, 2005, deadline and Plaintiff's experts and expert report, pursuant to the Court's December 14, 2005 order.

Defendant contends that 1,347 of these 1,370 pages of documents had not been produced before. *It is also not disputed that* Plaintiff's expert relied on certain, if not all, of these added documents in forming his expert opinion and in preparing his expert report. At the hearing on this motion, defense counsel asserted that Plaintiff's expert acknowledged that he could not have prepared a suitable damages report based on the documents produced to Defendant by November 14, 2005. This need for additional documents apparently necessitated the December 21-22, 2005, trip to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: Slip Copy)

Mexico by Plaintiff's United States based expert. At the hearing Plaintiff's counsel acknowledged that even the methodology for measuring damages changed from that noted to the Court at earlier hearings.

Defendant argues it has been prejudiced by taking the deposition of Plaintiff's experts and having its expert prepare a report without having knowledge of these added documents beforehand

## II. Analysis

Unlike the earlier hearing when Defendant's motion to strike the damages documents was denied because of Plaintiff's substantial compliance within a few weeks of the deadline and no showing of prejudice, here there has not been substantial compliance and the 100 plus days delay in producing these new damages documents has prejudiced the defendant, who acted in reliance on the incomplete November document production, deposed Plaintiff's experts and purportedly prepared a defense expert report. Plaintiff does not allege that it complied or even essentially complied with the December 14, 2005, Order. Instead, Plaintiff bemoans the consequences of this Court enforcing its orders and threatened sanctions. Plaintiff's counsel once again argues the obstacles he faced in obtaining documents from his foreign client and again asks the Court to disregard the sanctions that were so unequivocally expressed. Yet, the problems of production from Plaintiff could and should have been anticipated by the summer or early fall of last year. One must look with suspicion at the facts surrounding this last production.

Plaintiff's December motion only sought more time for its expert to complete his report. Yet, Plaintiff's counsel has had at least since last summer to get a clear outline of documents his expert needed to prepare a damages report. Why these documents could apparently be obtained on the expert's two day trip to Mexico on December 21 and 22, but not in the many months before the November deadline is unexplained.[FN3] Plaintiff did not raise the issues of a need to gather more documents from Mexico at the October 19, 2005, hearing on Defendant's

motion to compel discovery, nor at the December 13, 2005, hearing on Defendant's motion to strike documents, even though his damages expert apparently planned to head south a week later. After Plaintiff's counsel became aware that its experts required more documents and prior to the production of its expert report and/or deposition of his expert there was never a motion filed by Plaintiff seeking more time to produce its own discovery or seeking relief from the October 20 or December 14 orders limiting the data base for its expert. Indeed, Plaintiff did not even inform defense counsel of the existence of these newly retrieved documents prior to or in conjunction with the production of the expert report and expert deposition.[FN4] Instead, it delayed production of these documents until February 23, 2005, after allowing Defendants to rely on its expert report, produced January 3rd, and expert depositions, taken January 30-31 st. Therefore, while striking the tardy documents and Plaintiff's damages experts may well be fatal to Plaintiff's proof of damages, Plaintiff's actions and inactions in light of the Court's previous warnings justify such an outcome.

> FN3. With the new mass of documents obtained on this December trip to Mexico, Plaintiff's expert was apparently able t prepare a damages report to meet the January 3, 2006, extended deadline.

> FN4. It appears from Defendant's counsel argument at the hearing in this matter that one of Plaintiff's experts may have testified at his January 2006 deposition, after his report was submitted, that he did not rely on the documents produced in November 2005, thereby giving Defendant some notice that other documents were used. Yet, these documents were not produced at the deposition by Plaintiff or his experts.

*6 While discovery sanctions limiting evidence properly imposed under Fed.R.Civ.P. 37(b)(2) do not need to meet the standards for a formal dismissal of a claim, the facts here would meet those more strenuous standards. The Sixth Circuit considers four factors when considering dismissal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
**(Cite as: Slip Copy)**

under either Rule 37(b)(2) or Rule 41(b):
'(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'(quoting *Knoll v. Am. Tel. & Tel. Co.,* 176 F.3d 359, 363 (6th Cir.1999)). 'Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct' *Id.*

*Bryant v. U.S., ex rel. U.S. Postal Service,* 2006 WL 305661, *3 (6th Cir.2006).

At a minimum, Plaintiff is at fault for failing to comply with Defendant's discovery requests and the Court's orders to produce its damages documents. Now Defendant has been prejudiced by the fact that Plaintiff did not produce its damages documents for its expert prior to Plaintiff producing its expert report and experts for depositions. Plaintiff's argument that these documents were not requested until after the deposition is without merit because Defendant had no notice that any other documents existed before that time and because there was already a court order in place stating that all documents that would be allowed to support of damages had been produced as of November 14, 2005.

Regarding the *Knoll / Bryant* third criterion, Plaintiff had been warned of the sanctions for non-compliance in two previous orders. The October 20, 2005, Order stated that only documents produced by November 2, 2005, could be used to support Plaintiff's claim for damages. The December 14, 2005, Order allowed documents produced by November 14, 2005, to be used to support Plaintiff's claim for damages, but was explicit that Plaintiff and its experts could rely on no other documents. That Order was also explicit that the sanction for non-compliance would be a " waiver of its right to have an expert testify at trial on damages and any consequences resulting from this exclusion". This Order was issued the day after Plaintiff's counsel was warned at the hearing that the next order will contain "Draconian language"

for any further failure to comply and this time the Court "will mean it."

The undersigned has considered and in the past imposed less drastic sanctions for Plaintiff's failure to comply with discovery requests and orders. Plaintiff was allowed to produce documents late in violation of the October discovery Order, required instead to pay Defendant's attorney fees in connection with attempting to enforce the Order and produce its experts for deposition in Michigan.

Plaintiff's counsel requested at the hearing an alternative sanction of only striking the additional documents produced in February 2006 but allow its experts to testify. Yet, this would involve reopening discovery for a new expert report and further depositions. Defense counsel suggested that, based on the testimony of Plaintiff's experts, it was unlikely if not impossible for Plaintiff's expert to produce a damages report on the documents produced on or before November 14. Because of the complexities and uncertainties as to the feasibility of such an approach, it should not be entertained by way of an oral motion to allow a new Plaintiff damages report and testimony.

*7 The motion before the Court is to strike the report and testimony of Plaintiff's experts that were based on materials not produced to Defendant in the time period allowed and preclude use of the new damages documents at trial. The analogy used at the hearing on this motion to strike was that Plaintiff was given a deadline, and then an extended deadline, to produce the "deck of cards" on damages that it wished to use in this case. Then, without prior notice nor prior Court permission Plaintiff chose to add a significant number of cards to the deck that had been used in formulating its expert damages report. While after the expert depositions Plaintiff finally decided to provide the Defendant the modified deck of damages documents, this does not undo nor justify the prior wrongdoing. Plaintiff's counsel again asks for " pardon" instead of "permission." Plaintiff has received multiple discovery deadline extensions, and has used up its "pardon" after missing the earlier November 2, 2005, document production deadline and its December 1, 2005, expert report

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7

**Slip Copy, 2006 WL 1042072 (E.D.Mich.)**
**(Cite as: Slip Copy)**

deadline. The reasonable "storehouse of credits" that attorneys generally have with indulgent courts has, in this case, run out. While striking the expert report and any use of the new documents produced in February 2006 and any expert testimony based on them is a harsh sanction, it should come as no surprise in light of the clear warnings. Nor, on the facts of this case, is it unwarranted. Plaintiff was given ample opportunity to comply with Defendant's discovery requests and this Court's orders. Its failure to do so has drawn the promised penalty. At some point court-ordered deadlines must be met or threatened sanctions imposed. To hold otherwise in this case would retard the orderly processing of civil litigation, needlessly increase the transaction costs for all and erode the stature of courts by rendering all of its orders negotiable.

Accordingly, Defendant's motion to strike is granted and Plaintiff's additional damages documents produced in February 2006 are stricken from the discovery, Plaintiff's expert report is stricken, any expert who participated in preparing the report based on the stricken documents is stricken from the witness list and may not testify at trial, nor may there be any testimony at trial based on the stricken documents.

SO ORDERED.

E.D.Mich.,2006.
Sunroof de Mexico, S.A. de C.V. v. Webasto Roof Systems, Inc.
Slip Copy, 2006 WL 1042072 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1733764 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc's Response Brief in Opposition to Sunroof De Mexico's Objections to Order Dated April 19, 2006 (May 9, 2006) Original Image of this Document (PDF)
• 2006 WL 1733763 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of its Objections to Magistrate Judge's Order Filed April 19, 2006 (May 2, 2006) Original Image of this Document (PDF)
• 2006 WL 1035786 (Trial Motion, Memorandum

and Affidavit) Defendant Webasto Roof System Inc's Reply Brief in Support of Motion to Strike Documents and to Enforce Court Order Dated December 14, 2005 (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1035785 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of its Answer to Webasto's Motion to Strike Documents and to Enforce Court Order Dated December 14, 2005 (Mar. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1035784 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc's Brief in Support of Motion to Strike Documents and to Enforce Court Order Dated December 14, 2005 (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 358387 (Trial Motion, Memorandum and Affidavit) Webasto Roof Systems, Inc.'s Reply Brief in Support of Motion for Summary Judgment on Statute of Limitations (Jan. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 399881 (Trial Motion, Memorandum and Affidavit) Sunroof de Mexico's Response to Webasto Roof Systems Inc's Motion for Summary Judgment on Statute of Limitations (Jan. 5, 2006) Original Image of this Document (PDF)
• 2005 WL 3721979 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc.'s Reply to Plaintiff's Response to Motion to Strike Documents (Nov. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3721978 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Motion to Strike Documents Pursuant to the October 20, 2005 Order (Nov. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 3721977 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of its Motion for Partial Summary Judgment as to Liability Only (Nov. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3721976 (Trial Motion, Memorandum and Affidavit) Defendant Webasto Roof System Inc's Motion to Strike Documents Pursuant to the October 20, 2005 Order (Nov. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 3721975 (Trial Motion, Memorandum and Affidavit) Webasto Roof Systems, Inc.'s

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 1042072 (E.D.Mich.)
(Cite as: Slip Copy)


Opposition to Plaintiff's Motion for Partial
Summary Judgment and Webasto Roof Systems,
Inc.'s Request for Relief (Nov. 4, 2005) Original
Image of this Document (PDF)
• 2005 WL 2915905 (Trial Motion, Memorandum
and Affidavit) Defendant's Brief in Support of
Motion to Compel Answers to Discovery (Sep. 19,
2005) Original Image of this Document (PDF)
• 4:05cv40031 (Docket) (Jan. 31, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1995 WL 591141 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, W.D. New York
The TRAVELERS INSURANCE COMPANY, The
Travelers Indemnity Company and The Charter Oak
Fire Insurance Company, Plaintiffs,
v.
Charles MONPERE, Individually and d/b/a All
Steel Builders, Amanda Bernal, as
Guardian-Ad-Litem of Gregorio Humberto Bernal,
City of New York, Vim Waterproofing and
Restoration Corp., New York City Public
Development Corporation a/k/a New York City
Economic Development Corporation, Defendants.
**93-CV-0127E(F).**

Sept. 8, 1995.

Christopher A. DiPasquale, Harris Beach &
Wilcox, Rochester, NY, for plaintiff.
Anthony H. Gair, Gair, Gair, Conason, Steigman &
Mackauf, New York City, for Bernal.
Jay W. Wason, Mackenzie, Smith, Lewis, Mitchell
& Hughes, Syracuse, NY, for VIM.
Heidi M. Weiss, Oshman, Helfenstein & Matza,
New York City, for NYC and NYC Public Dev.

MEMORANDUM AND ORDER

ELFVIN, District Judge.
*1 Herein defendants VIM Waterproofing and
Restoration Corp. ("VIM") and New York City
Public Development Corporation ("NYCPDC")
object to the Memorandum and Order of Magistrate
Judge Leslie G. Foschio, filed on June 14, 1995 ("
Judge Foschio's Order").[FN1] Judge Foschio's
Order granted in part and denied in part VIM's
motion to compel discovery and NYCDPC's "
cross-motion" to compel, holding that certain
documents within the possession of the plaintiffs
(referred to collectively as "Travelers") [FN2] were
protected by the attorney-client and/or work product

privilege, that such privileges had not been waived
by Travelers with respect thereto and that these
defendants had not shown that such discovery was
necessary for a proper resolution of the case. It is
noted that Judge Foschio had ordered the disclosure
of many documents, but that VIM and NYCPDC,
unsated, direct their current plaints to those
still-sought-but-deemed-protected        documents.
Their Objections are timely but will be rejected.

The controlling provision of the Judicial Code,
section 636(b)(1)(A), states in part: "A judge of the
court may reconsider any pretrial matter under this
subparagraph (A) where it has been shown that the
magistrate's [sic] order is clearly erroneous or
contrary to law." FRCvP 72(a) substantially
mirrors this mandate. Rule 72.3(a)(2) of this
Court's Local Rules of Civil Procedure also
pertinently states that "[t]he specific matters to
which the party objects and the manner in which it
is claimed that the order is clearly erroneous or
contrary to law shall be clearly set out. It is also
noted that "[a] magistrate's resolution of pretrial
discovery disputes is entitled to substantial
deference." *Dubin v. E.F. Hutton Group Inc.*, 125
F.R.D. 372, 373 (S.D.N.Y.1989). *See also United
States v. District Council of New York City*, 782
F.Supp. 920, 922 (S.D.N.Y.1992).

VIM and NYCPDC both state that they object "to
that portion of" Judge Foschio's Order which denied
in part their motions to compel and deemed certain
documents protected by the attorney-client and
work-product      privileges.     VIM's    "specific"
objections are listed as follows:
"(1) The Decision and Order erroneously held that
certain documents contained in the Tausanovich,
Bernal and Holman claims files are protected from
disclosure by the attorney-client and/or work
product privilege. (*See* Decision and Order at pp.
8-14);
"(2) The Decision and Order erroneously held that
certain documents contained in the Tausanovich,
Bernal and Holman claims files, which were not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2

Not Reported in F.Supp., 1995 WL 591141 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

prepared in anticipation of litigation in this insurance coverage litigation, are protected by the work product privilege. (*See* Decision and Order at pp. 14-15);

"(3) The Decision and Order erroneously held that plaintiffs did not waive the attorney-client and/or work product privilege, with respect to certain documents contained in the Tausanovich, Bernal and Holman claims files, by commencing this insurance coverage action and placing in issue the alleged protected documents. (*See* Decision and Order at pp. 15-17);

*2 "(4) The Decision and Order erroneously held that production of certain documents contained in the Tausanovich, Bernal ad Holman claims files 'is not necessary for a proper resolution of this case.' ( *See* Decision and Order at pp. 17-18);

"(5) The Decision and Order erroneously held that Documents 598-615, containing the results of a liability investigation concerning the Bernal incident, including the statement of Jaime Leon, are protected by the work product privilege. (*See* Decisions and Order at 19-20)."

NYCPDC's objections are essentially the same. These defendants object to every portion of Judge Foschio's Order contrary to their interests. Cited in support of these objections-and "incorporated" into the present Objections-are the motion papers filed by these defendants before Judge Foschio in support of their motions to compel.

The incantation of language from the applicable statutory provisions and procedural rules regarding specificity does not disguise the fact that the defendants' objections are anything but specific. Neither defendant has provided this Court any rationale upon which it might conclude that Judge Foschio had clearly erred. Noted is the fact that the above-stated "specific" objections cite pages 8 to 20 of Judge Foschio's Order-the entirety of his legal analysis. Of the first four objections, none cites a specific document which was, contrary to the defendants' contentions, deemed privileged. References to the Tausanovich, Bernal and Holman claims files are unhelpful in this regard because these claims files contain essentially every document which these defendants seek and which Judge Foschio deemed privileged. Neither does

any of VIM's objections cite controlling or persuasive authority or even legal argument which might lead this Court to believe that legal error had been committed. NYCPDC does present some argument, but it is idle and unhelpful and without merit. The incorporation earlier-filed motion papers is useless. They clearly do not-and indeed, cannot-point out to this Court where Judge Foschio may have clearly erred. *See Camardo v. General Motors Hourly Rate Employees Pension Plan,* 806 F.Supp. 380 (W.D.N.Y.1992) (litigants are not entitled to rehash arguments dealt with by a magistrate judge). This Court is not permitted to simply allow VIM and NYCPDC to relitigate a motion upon which they only partially prevailed upon the first time around.

With regard to VIM's objection (5), it notes a specific series of documents, but provides no basis upon which this Court might find that Judge Foschio had clearly erred in his determination that such was work-product and therefore protected. *See* Judge Foschio's Order at 19-20. Such objection is therefore also rejected.

As was stated by another judge of this Court in a similar situation in addressing vague and unsubstantiated objections to a magistrate judge's report and recommendation:

"It is clear from the plain meaning of the [Local Rule 72.3(a) ] that objections to a Report and Recommendation are to be specific and are to address only those portions of the proposed findings to which the party objects. It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a Report and Recommendation, as the 'goal of the federal statute providing for the assignment of cases to magistrates is to "increas[e] the overall efficiency of the federal judiciary." ' *McCarthy v. Manson,* 554 F.Supp. 1275, 1286 (D.Conn.1982), *aff'd,* 714 F.2d 234 (2d Cir.1983) (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 (Former 5th Cir.1982) (en banc))

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 591141 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

(footnote omitted). 'The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work.' *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980). There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo,* at 382.

*3 In light of the above-cited statutory provisions, rules and case law, this Court concludes that VIM and NYCPDC have failed to set out their objections with the requisite specificity and have also failed to show that Judge Foschio clearly erred in his determinations. The objections to Judge Foschio's Order are, in short, frivolous and conclusive and general, and therefore are rejected.

Accordingly, it is hereby *ORDERED* that the Objections are rejected and the Memorandum and Order of Magistrate Judge Leslie G. Foschio, filed on June 14, 1995, is deemed final.

> FN1. By Order dated August 15, 1994, this Court referred all discovery and nondispositive matters to Judge Foschio pursuant to 28 U.S.C. § 636(b)(1)(A). By Order filed June 14, 1995, Judge Foschio directed Travelers to present to him for *in camera* review all requested documents as to which it was asserting attorney-client or work-product privileges. The result was Judge Foschio's Order and the current objections.

> FN2. For the purposes of the issues before this Court at this time, any separateness among the plaintiffs is not material.

W.D.N.Y.,1995.
Travelers Ins. Co. v. Monpere
Not Reported in F.Supp., 1995 WL 591141 (W.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:93cv00127 (Docket) (Feb. 05, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
Donna L. UMBENHOWER, Plaintiff,
v.
COPART, INC. and Copart of Kansas, Inc.,
Defendants.
**No. 03-2476-JWL.**

Nov. 19, 2004.

John B. Gage, II, The Gage Law Firm, P.C.,
Overland Park, KS, for Plaintiff.
Alan L. Rupe, Stacia G. Boden, Kutak Rock,
LLP-Wichita, Wichita, KS, S. Jane Bruer, Kutak
Rock LLP-Kansas City, Kansas City, MO, for
Defendants.

*MEMORANDUM AND ORDER*
LUNGSTRUM, J.
*1 Plaintiff filed this employment discrimination
suit against defendants alleging that defendants
discriminated against her on the basis of her sex
and/or age in violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e et seq., and
the Age Discrimination in Employment Act, 29
U.S.C. § 621 et seq., respectively; that defendants
retaliated against plaintiff for engaging in activity
protected by those statutes; and that defendants
violated the Family and Medical Leave Act, 29
U.S.C. § 2611 et seq.

This matter is presently before the court on four
motions-defendants' motion to compel arbitration
and to stay proceedings pending arbitration (doc. #
21); plaintiff's motion to strike defendants'
addendum to the motion to compel arbitration (doc.
# 41); plaintiff's motion to strike defendants' reply
brief in further support of their motion to compel
arbitration (doc. # 46); and plaintiff's motion to
review the magistrate judge's order denying
plaintiff's motion in limine and for sanctions (doc. #

79). As explained below, defendants' motion to
compel arbitration is retained under advisement
pending further briefing on the limited issues
described in this opinion. Plaintiff's motions to
strike and plaintiff's motion to review are all denied.

I. Procedural History

Before addressing the merits of defendants' motion
to compel arbitration, the court must first explain
the procedural posture of the case. Defendants
moved to compel arbitration of this case on the
grounds that plaintiff, at or near the beginning of
her employment with defendants, signed an
enforceable arbitration agreement that covers the
claims set forth in her complaint. While defendants
referenced the arbitration agreement in their motion
and indicated that they were attaching a copy of the
agreement as Exhibit A to their motion, the
agreement was not actually attached to the motion.
In fact, no exhibits were attached to the motion.

Plaintiff responded to the motion by asserting that
defendants, by failing to attach the agreement, had
wholly failed to satisfy their burden of showing that
an agreement to arbitrate existed. Plaintiff further
argued that, even assuming defendants had attached
the agreement, defendants failed to offer any
evidence authenticating the signed agreement under
*the federal rules governing motions for summary
judgment.* Plaintiff did not set forth any substantive
arguments in response to the motion to compel
arbitration,[FN1] asserting that she was "powerless to
respond" in light of defendants' failure to attach the
actual agreement but that she could "imagine
numerous arguments against arbitration."

> FN1. Plaintiff makes one passing remark
> in her response that could be construed as
> a substantive argument-she asserts that,
> assuming an agreement to arbitrate existed,
> she "revoked that agreement when she

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

filed suit against defendants." In support of her argument, plaintiff cites to a Kansas state court case that addresses the common law rule developed in Kansas prior to the enactment of the Kansas Uniform Arbitration Act. *See Baxter v. John Weitzel, Inc.,* 19 Kan.App.2d 467, 475, 871 P.2d 855 (Kan.Ct.App.1994). As the Kansas Court of Appeals noted in that decision, the common law rule permitting either party to revoke an arbitration agreement at any time prior to the making of an award does not apply when the arbitration agreement is governed by statute. *See id.* Of course, the arbitration agreement executed by the parties here is governed by the Federal Arbitration Act, 9 U.S.C. § 1. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Plaintiff's argument, then, lacks merit.

After receiving plaintiff's response and realizing that they had inadvertently failed to attach the relevant exhibits to their motion to compel, defendants filed an addendum to their motion attaching the exhibits, including the arbitration agreement. Shortly thereafter, defendants filed their reply in further support of their motion to compel. In connection with their reply brief, defendants submitted the affidavit of Bonnie Bendix, defendants' regional human resources manager, to authenticate the agreement. Plaintiff then moved to strike both of defendants' submissions.

*2 With respect to defendants' addendum, plaintiff moves to strike on the grounds that the exhibits (particularly the arbitration agreement) are not authenticated and that, even assuming defendants had provided an affidavit authenticating the agreement, that affidavit would be untimely under Federal Rule of Civil Procedure 6(d) ("when a motion is supported by affidavit, the affidavit shall be served with the motion") and defendants have not shown "excusable neglect" for purposes of receiving an extension of time to file the materials under Federal Rule of Civil Procedure 6(b)(2). Plaintiff moves to strike defendants' reply brief on largely the same grounds (primarily arguing that the

affidavit of Ms. Bendix was filed too late) and further contends that Ms. Bendix's affidavit in any event does not properly authenticate the arbitration agreement as Ms. Bendix fails to identify plaintiff's signature on the agreement and lacks personal knowledge of whether and when plaintiff executed the agreement. Defendants oppose the motions to strike and urge the court to resolve their motion to compel on the merits.

As explained in more detail below, the court declines to disregard defendants' motion to compel based solely on defendants' failure to attach the arbitration agreement in the absence of any evidence that defendants' failure was based on anything other than counsel's inadvertence and when counsel corrected the oversight within days of having the oversight brought to counsel's attention. Moreover, the court concludes that defendants were not required to authenticate the arbitration agreement in the absence of any evidence disputing the authenticity of the agreement. Finally, the court, as described below, will permit defendants to file a supplemental reply on the only two substantive arguments raised by plaintiff in response to the motion to compel.

II. Applicable Standard Governing Defendants'
Motion to Compel Arbitration

The Courts of Appeals have uniformly applied in the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4 (2000), a standard similar to that applicable to motions for summary judgment. *See, e.g., Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir.2003) (applying a summary-judgment-like standard in ruling on a motion to compel arbitration); *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir.2002) (same); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n. 9 (3d Cir.1980) (same); *Brown v. Dorsey & Whitney, LLP,* 267 F.Supp.2d 61, 66-67 (D.D.C.2003) (collecting case law on this issue and providing a helpful explanation of why the summary judgment standard applies); *Doctor's Assoc., Inc. v. Distajo,* 944 F.Supp. 1010, 1014 (D.Conn.1996) (same), *aff'd,* 107 F.3d 126 (2d Cir.), *cert. denied,* 522 U.S. 948

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

(1997). Although the Tenth Circuit has not precisely addressed this issue, there is no reason to believe that it would apply a different legal standard. *See, e.g., Gibson v. Wal-Mart Stores, Inc.,* 181 F.3d 1163, 1166 (10th Cir.1999) (reviewing the district court's grant of a motion to compel arbitration under the summary judgment standard where the parties agreed that standard applied); *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997) (holding the district court must hold a jury trial on the existence of the agreement to arbitrate where the parties raise genuine issues of material fact regarding the making of the agreement to arbitrate (citing *Par-Knit Mills,* 636 F.2d at 54 & n. 9)); *see also, e.g., SmartText Corp. v. Interland, Inc.,* 296 F.Supp.2d 1257 (D.Kan.2003) (applying summary-judgment-like standard to motion to compel arbitration).

*3 Under this well-settled standard, summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant need not negate the other party's claim, but rather must simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2002) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998)). In the context of a motion to compel arbitration, this requires the defendant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *See Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir.1995).

Once the defendant has done this, the burden shifts to plaintiff to demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate. *See Bensadoun,* 316 F.3d at 175; *Oppenheimer,* 56 F.3d at 358. To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246. If the plaintiff demonstrates a genuine issue of material fact, then a trial on this issue is required. 9 U.S.C. § 4 (if the making of the arbitration agreement is seriously disputed, then "the court shall proceed summarily to the trial thereof"); *Avedon Eng'g,* 126 F.3d at 1283 (holding the district court must hold a jury trial on the existence of the agreement to arbitrate where the parties raise genuine issues of material fact regarding the making of the agreement to arbitrate).

### III. Discussion

Putting aside for the moment the issue of whether the exhibits that defendants ultimately did file in support of their motion to compel arbitration must be authenticated pursuant to the rules governing motions for summary judgment, *see* Fed.R.Civ.P. 56(c) & (e); D. Kan. R. 56.1, the court addresses plaintiff's initial response to defendants' motion to compel-that the court must deny summarily defendants' motion to compel because defendants failed to attach a copy of the arbitration agreement to their motion and, thus, have not presented any evidence demonstrating an agreement to arbitrate. The court readily rejects this argument. In doing so, the court is guided in large part by Magistrate Judge Waxse's order denying plaintiff's motion in limine and for sanctions-an order that plaintiff seeks to have this court review.

By way of background, plaintiff, in addition to moving to strike defendants' exhibits and reply brief, moved for sanctions against defendant in the form of an order precluding defendants from arguing or presenting evidence or testimony of the arbitration agreement. The motion was based, in part, on defendants' failure to attach the agreement to their motion to compel and, as described by plaintiff, the prejudice that plaintiff suffered as a result of defendants' failure. Magistrate Judge Waxse denied plaintiff's motion, concluding that defendants' failure to attach the arbitration agreement did not prejudice plaintiff and that the omission was not made in bad faith but simply due to counsel's oversight and inadvertence. He further

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

noted that the court "rarely imposes sanctions based on a party's mere failure to attach exhibits to a motion or brief, an occurrence which is not that uncommon." In fact, as Magistrate Judge Waxse pointed out, plaintiff's counsel was guilty of the same conduct as defendants' counsel-he did not attach any exhibits to plaintiff's motion in limine and for sanctions despite the fact that he purported to attach such exhibits. Indeed, he filed the exhibits a few days later, explaining that he initially failed to do so "due to oversight."

*4 In his motion to review the magistrate's order, pl aintiff raises twenty-one specific objections. Several of these objections address the magistrate judge's conclusion that defendants' failure to disclose the arbitration agreement was "substantially justified." The court overrules each of these objections as the magistrate judge also concluded in the alternative that, regardless of whether defendants' conduct was substantially justified, it was harmless in any event. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir.2002) (district court can allow evidence in violation of Rule 26(a) if the violation was justified or harmless). Plaintiff also contends that the magistrate judge applied the wrong legal standard in determining that defendants' conduct was harmless. The court overrules this objection as the magistrate judge applied the correct standard as articulated by the Circuit in *Jacobsen v. Deseret Book.*

Plaintiff also makes several objections concerning the magistrate judge's conclusion that defendants " promptly cured" their failure to disclose. According to plaintiff, defendants did not "cure" their failure because they submitted the exhibits without the requisite supporting affidavits. The court overrules this objection based on its conclusion, explained below, that defendants were not required to authenticate the agreement by affidavit. Plaintiff next objects to the magistrate judge's order because the magistrate judge considered defendants' bad faith in assessing plaintiff's Rule 37(c) motion. According to plaintiff, several Circuit Courts of Appeals (other than the Tenth Circuit) have held that the consideration of bad faith is not proper in connection with a motion for sanctions under Rule 37(c) given the "self-executing" and "automatic"

nature of the sanction imposed thereunder. As plaintiff's argument necessarily concedes, however, the Tenth Circuit has not so held and, in fact, the magistrate judge in this case expressly followed Circuit precedent in analyzing plaintiff's Rule 37(c) motion. *See Jacobsen,* 287 F.3d at 952-53 (directing district court to consider, in the Rule 37(c) context, the bad faith of the party who failed to disclose the information). As he was bound to do, Magistrate Judge Waxse applied Circuit precedent (rather than the law of other Circuits that plaintiff espouses) in analyzing plaintiff's motion. Finally, plaintiff contends that the magistrate judge was not authorized under 28 U.S.C. § 636(b)(1)(a) to rule on plaintiff's motion in limine seeking to exclude evidence because, according to plaintiff, the issue is dispositive and the effects of the ruling "could extend into trial itself" such that the ruling would not be limited to "pretrial matters." The objection is overruled. *See Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (an *in limine* ruling is subject to change at any time and the district court is always free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling); *Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450 (D.N.J.1998) (magistrate judge's ruling on a motion in limine treated as nondispositive).[FN2]

> FN2. The court has carefully reviewed and considered plaintiff's few remaining objections to the magistrate judge's order and the court overrules each of those objections.

*5 For the reasons aptly set forth by Magistrate Judge Waxse, the court refuses to deny defendants' motion summarily simply because defendants inadvertently failed to attach the exhibits to the motion. The court turns, then, to the issue of whether it must strike defendants' addendum and, in particular, the exhibit that defendants contend is the arbitration agreement signed by plaintiff because defendants did not authenticate the exhibit in their initial motion to compel. According to plaintiff, authentication is required because courts, including this one, have routinely applied the standard governing motions for summary judgment to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

motions to compel arbitration; thus, because a party is required to authenticate exhibits in connection with a motion for summary judgment, a party must authenticate exhibits filed in support of a motion to compel arbitration. The court rejects this argument and denies plaintiff's motion to strike the addendum.

The court's conclusion that defendants in this case did not need to authenticate the arbitration agreement is based in large part on the Tenth Circuit's decision in *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956 (10th Cir.2001).[FN3] In that case, the plaintiff argued that the district court erred in considering the language of an arbitration agreement (an agreement that was attached to defendant's motion) in the context of what was effectively a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 960. According to the plaintiff, the district court was not permitted to consider the agreement because the plaintiff had not referenced the agreement in its complaint and had not attached the agreement to its complaint. *See id.* The Tenth Circuit rejected this argument and held that the district court properly considered the agreement even assuming the court had treated defendant's motion as a Rule 12(b)(6) motion. *See id.* at 960-61. In so concluding, the Circuit first highlighted the well established rule that a court may consider on a motion to dismiss " an indisputably authentic copy" of a document submitted by the defendant so long as the document is referenced in the complaint and is central to the plaintiff's claims. *See id.* at 961. The Circuit then concluded that the plaintiff had referenced the arbitration agreement in its complaint, albeit minimally, and that the agreement was central to the plaintiff's claims. *See id.* at 962. In that regard, the Circuit explained:

> FN3. The Tenth Circuit's decision was overruled by the Supreme Court on issues not relevant to this opinion. *See Howsam v. Dean Witter Reynolds, Inc.,* 534 U.S. 1161, 122 S.Ct. 1171, 152 L.Ed.2d 115 (2002).

The 1992 ACCESS Agreement was the arbitration agreement pursuant to which Howsam was

obligated to submit her claims to binding arbitration by the NASD (or another arbitration association of which Dean Witter was a member), and was therefore clearly central-nigh indispensable-to deciding the parties' claims. Accordingly, Howsam brought the 1992 ACCESS Agreement to the district court's attention by discussing it in, and attaching it to, her motion to dismiss. Dean Witter has never argued that the copy of the 1992 ACCESS Agreement attached to Howsam's Motion was not a true and complete copy of the original arbitration agreement between the parties. Under these circumstances, we think it would have defied common sense for the district court to ignore the 1992 ACCESS Agreement when rendering its decision in this case.

*6 See id.*

While plaintiff in this case does not reference the arbitration agreement in her complaint (she purportedly has no recollection of signing the agreement), she does refer in her complaint to defendants' employee handbook that contains the arbitration agreement. *See* Complt. ¶ 44. The court believes that this reference, albeit minimal, is sufficient to bring the arbitration agreement within the scope of plaintiff's complaint. *See Black & Veatch Int'l Co. v. Wartsila NSD North America, Inc.,* 1998 WL 953966, at *2 (D.Kan. Dec.17, 1998) (analyzing a Rule 12(b)(6) motion to dismiss and to compel arbitration; considering arbitration agreement without converting motion to summary judgment where the parties' overarching contract that contained the arbitration provision was referenced in the complaint). Moreover, plaintiff has not submitted any evidence disputing the authenticity of the agreement that defendants have submitted with their motion to compel. While plaintiff vaguely suggests that she did not sign the agreement, she has not averred that the signature on the document submitted by defendants is not her signature. Finally, as the Circuit explained in *Howsam,* the agreement is clearly central to plaintiff's claims. In such circumstances, it simply makes no sense for the court to ignore the agreement simply because defendants failed to authenticate the agreement in their initial motion.[FN4]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

FN4. Defendants here have not asserted their motion to compel under any particular rule including Rule 12(b)(6) or Rule 56. While plaintiff is correct that courts routinely consider such motions using the summary judgment standard, those courts have done so only to the extent that summary judgment requires the absence of genuine issues of material fact. Thus, courts considering a motion to compel arbitration will assess whether any genuine issues of material fact exist concerning, for example, whether an agreement to arbitrate exists. However, this court has found no appellate cases extending the Rule 56 requirement that the parties submit evidence in a form that would be admissible at trial into the context of a motion to compel by requiring the arbitration agreement itself to be authenticated by affidavit in the absence of a genuine dispute about the authenticity of the agreement. Moreover, this court's local rules do not contain such a requirement.

Plaintiff relies in large part on Judge Vratil's opinion in *Smith v. Devlin Partners,* L.L.C., 2004 WL 1490401 (D.Kan. July 2, 2004) for the proposition that the arbitration agreement must be authenticated by the moving party at the outset. While Judge Vratil noted that the defendant had not authenticated the documents which it contended created the arbitration agreement, she denied the motion for summary judgment because the documents, on their face, were insufficient to establish a binding agreement. Thus, Judge Vratil did not deny summary judgment simply because the documents were not authenticated and it is unclear whether Judge Vratil would have denied summary judgment on that basis alone if the documents otherwise established a binding agreement.

That having been said, if plaintiff means to challenge the authenticity of her signature on the agreement (as she suggests in her reply to defendants' opposition to the two motions to strike),

then she should do so in connection with the surreply the court will permit her to file, as described below. To the extent she intends to challenge the signature on the agreement, she must include with her surreply an affidavit from plaintiff stating that the signature on the agreement is not her signature and any other evidence she may have concerning the authenticity of the signature. Assuming the court concludes based on that evidence (and any evidence that defendants might submit in response to the motion to reconsider should plaintiff choose to file one) that genuine issues of material fact exist regarding whether plaintiff in fact signed the agreement, the court will promptly schedule a trial on that issue.

In sum, the court concludes that defendants, under the circumstances presented here, were not required to authenticate the copy of the arbitration agreement that they submitted in connection with their motion to compel arbitration. Thus, the court denies plaintiff's motion to strike defendants' addendum. Of course, because the court has concluded that the agreement did not need to be authenticated by affidavit in the first instance, the court need not address plaintiff's argument concerning Federal Rule of Civil Procedure 6(d) and, for this reason, the court denies plaintiff's motion to strike defendants' reply brief.

*7 As an alternative to his motion to strike defendants' reply brief, plaintiff seeks leave to file a surreply to the motion to compel arbitration. The court grants in part and denies in part this request. The court will permit plaintiff to file a surreply, but the court will limit plaintiff's surreply to three specific issues. The first issue is the authenticity of the signature on the agreement, as explained above. The second and third issues are the substantive arguments that plaintiff raised in reply to the motions to strike. Specifically, plaintiff argues that the arbitration agreement is not binding because it contains only a one-sided promise by plaintiff to arbitrate employment disputes with no reciprocal agreement or other consideration by defendants, other than a promise to employ plaintiff, a promise which is illusory in light of the at-will nature of plaintiff's employment. Plaintiff also argues that defendants, even assuming the court considers the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 7

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

arbitration agreement submitted by defendants, have still not come forward with sufficient evidence of an agreement to arbitrate as they have submitted only the signature page of the two-page agreement to arbitrate and have no evidence that plaintiff was provided the first page of the agreement-the page containing the actual agreement to arbitrate.

Plaintiff shall file her surreply, limited to the three issues described in the foregoing paragraph, no later than December 10, 2004. The court will then permit defendants to file a sur-surreply as defendants, as the moving party with respect to the motion to compel arbitration, are entitled to the proverbial " last word." *See* D. Kan. R. 7.1(c). Defendants sur-surreply shall be filed no later than December 31, 2004.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to compel arbitration (doc. # 21) is retained under advisement. Plaintiff's motion to strike exhibits in support of motion including defendants' addendum (doc. # 41) is denied; plaintiff's motion to strike defendants' reply brief (doc. # 46) is denied; and plaintiff's motion to review the magistrate judge's order denying plaintiff's motion in limine and for sanctions (doc. # 79) is denied.

IT IS SO ORDERED.

D.Kan.,2004.
Umbenhower v. Copart, Inc.
Not Reported in F.Supp.2d, 2004 WL 2660649 ( D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 1905740 (Trial Motion, Memorandum and Affidavit) Suggestions in Opposition to Two Motions to Strike: (1) Motion to Strike Addendum to Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration; and (2) Motion to Strike Reply Brief in Further Support of Defendants' Motion to Compel Arb itration and to Stay Proceedings Pending Arbration and Affidavits Attached Or, In the Alternative, for Leave to File Surreply, and Memorandum in Support Thereof (Jun. 14, 2004) Original Image of this Document

(PDF)
• 2004 WL 1905739 (Trial Motion, Memorandum and Affidavit) Reply Brief in Further Support of Defendants' Motion for Protective Order (May 17, 2004) Original Image of this Document (PDF)
• 2004 WL 1905749 (Trial Motion, Memorandum and Affidavit) Suggestions in Opposition to Motion In Limine and for Sanctions Pursuant To Fed. R. Civ. P. 37(c)(1) (May 17, 2004) Original Image of this Document (PDF)
• 2003 WL 23734559 (Trial Pleading) Complaint (Sep. 15, 2003) Original Image of this Document (PDF)
• 2:03cv02476 (Docket) (Sep. 15, 2003)
• 2003 WL 23734457 (Trial Motion, Memorandum and Affidavit) Reply Brief in Further Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (2003) Original Image of this Document (PDF)
• 2003 WL 23734463 (Trial Pleading) Answer to First Amended Complaint (2003) Original Image of this Document (PDF)
• 2003 WL 23734564 (Trial Pleading) Answer (2003) Original Image of this Document (PDF)
• 2003 WL 23734568 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (2003) Original Image of this Document (PDF)
• 2003 WL 23734571 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion for Protective Order (2003) Original Image of this Document (PDF)
• 2003 WL 23734938 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Strike Addendum to Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (2003) Original Image of this Document (PDF)
• 2003 WL 23734943 (Trial Pleading) Amended Complaint (2003) Original Image of this Document (PDF)
• 2003 WL 23734949 (Trial Motion, Memorandum and Affidavit) Reply to Suggestions in Opposition to Motion in Limine and for Sanctions Pursuant to Fed.R.Civ.P. 37(c)(1) (2003) Original Image of this Document (PDF)
• 2003 WL 23734954 (Trial Motion, Memorandum and Affidavit) Reply to Suggestions in Opposition

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2660649 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

to Two Motions to Strike: (1) Motion to Strike Addendum to Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration; and (2) Motion to Strike Reply Brief in Further Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration and Affidavits Attached or, in the Alternative, for Leave to File Surreply (2003) Original Image of this Document (PDF)

END OF DOCUMENT   .

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Colorado.
Oloyea D. WALLIN, Plaintiff,
v.
Mr. ALFARO, et al., Defendants.
No. Civ.A03CV00281WDMMJW.

Sept. 2, 2005.

Oloyea D. Wallin, Arkansas Valley Correctional
Facility, Crowley, CO, Pro se.
Jennifer L. Veiga, Hall & Evans, Denver, CO, for
Defendants.

ORDER ON RECOMMENDATION OF
MAGISTRATE JUDGE
MILLER, J.
**\*1** This matter is before me on the recommendation
of Magistrate Judge Michael J. Watanabe, issued
January 25, 2005, as well as various objections and
nondispositive motions by Plaintiff Oloyea Wallin
(Wallin). Having been granted two extensions of
time, Wallin filed timely objections to the
recommendation, and is entitled *de novo* review. 28
U.S.C. § 636(b).

I have reviewed the recommendation, objections,
motions and responses and conclude the
recommendation should be accepted in part and
rejected in part.

*Background*

The undisputed facts are as follows.[FN1] During the
relevant time period, Wallin was an inmate at the
Kit Carson Correctional Center (KCCC), a
privately-owned prison run by the Correctional
Corporation of America (CCA), pursuant to a
contract with the Colorado Department of
Corrections (CDOC).

FN1. My description of the factual
background is based upon the supported
and undisputed assertions in the
defendants' briefs, allegations from
Wallin's sworn amended complaint, and
supported factual assertions from his
response briefs and objection.

On February 7, 2002, defendants Alfero, Burk,
Gansemer, Miller, and R. Satterly conducted an
authorized cell search of Wallin's cell. They
confiscated from the cell a variety of hygiene items,
including baby lotion, baby powder, foot powder,
toothpaste, six soap bars, as well as various food
items. Wallin was not in his cell during the search,
and did not observe it. Upon returning to his cell, he
noticed a "shakedown slip" that indicated that the
officers had confiscated "various and sundry
commissary items." (Pl.'s Resp. CDOC Defs.' Mot.,
Ex. 8(A).) He immediately wrote down a list of the
specific items missing, and that same day, addressed
an informal grievance to defendant D. Satterly, the
Unit Manager, indicating that his property had been
confiscated without any stated reason, and that he
needed it back. D. Slattery never responded to the
grievance.

Inmates at KCCC could purchase hygiene (and food
items) such as those confiscated from Wallin.
Commissary records indicate that on February 11,
2002, $43.45 was deducted from his funds account
for items purchased from the commissary. Most of
the items were food, although he also purchased a
toothbrush. Likewise, on February 20, 2002, $38.30
was deducted for commissary purchases, including
three bars of soap, toothpaste, and deodorant.

On February 18, 2002, Wallin addressed an
informal grievance to defendant Assistant Warden
Sloan complaining about the confiscation of his
property. Sloan responded that Wallin should take
the matter up with his unit manager. On February
24, Wallin addressed another grievance to Sloan,
noting that he had taken the matter up with D.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Satterly and not received a response. He did not receive a response to this grievance; however, as some point, D. Slattery and Sloan denied Wallin's claim for replacement of his property, noting that it would be impossible to verify Wallin's description of the property taken.

Sometime later, Wallin addressed an informal grievance to defendant Warden Brill. Brill did not respond, but sometime after September 2002, Wallin personally met with Brill, and raised the issue of his missing property. Brill responded that he would look into it, but apparently never did so. Wallin also asked defendants Bair, Fuchs, and Bongirno [FN2] for assistance, but to no avail.

> FN2. Wallin apparently saw Bongirno, the
> CDOC liaison, in the hall and told him
> about the problem. Bongirno told Wallin
> to send him an informal grievance, which
> Wallin did.

*2 On April 29, 2002, Wallin filed a formal Step I grievance. Bair responded to the grievance, indicating that it was untimely, but that she would " follow up." (CCA Defs.' Mot. Summ. J., Ex. A-3.) On June 5, 2002, Wallin filed a Step II grievance, and received no response. On September 5, 2002, Wallin filed a Step III grievance with defendant Gillespie, who denied it on the basis that he was told by KCCC staff that Wallin had not filed any grievances. Gillespie noted that his denial was the final administrative response and that Wallin had exhausted his administrative remedies.

Wallin filed suit, asserting the following four claims in his amended complaint: (1) the defendants violated his rights under the Eighth Amendment by, with regards to Alfero, Burk, Gansemer, Miller, and R. Satterly, confiscating his hygiene items, and by, with regards to the remaining defendants, failing to ensure his hygiene items were returned to him; (2) Alfero, Burk, Gansemer, Miller, and R. Satterly, as well as defendant Ortiz (executive director of CDOC), and defendant Doe (executive director of CCA), because of their supervisor authority, committed the state tort of conversion by depriving him of his personal property; (3) defendants Bair,

Bongirno, Brill, Doe, Fuchs, Gillespie, Ortiz, D. Satterly, and Sloan were negligent by failing to adequately perform their professional duties and remedy Wallin's deprivation; and (4) defendants Afero, Burk, Gansemer, Miller, and R. Satterly, by unjustly depriving Wallin of his property and hygiene items, and defendants Bair, Bongirno, Brill, Doe, Fuchs, Gillespie, Ortiz, D. Satterly, and Sloan, by failing to redress Wallin's unjust deprivation of property, committed intentional infliction of emotional distress.

### Recommendation

Defendants CDOC,[FN3] Ortiz, Bongirno, and Gillespie (the CDOC Defendants) and defendants Alfaro, Bair, Brill, Burk, Fuchs, Gansemer, Miller, D. Satterly, R. Satterly and Sloan (the CCA Defendants) have moved for summary judgment. I referred the motions to Magistrate Judge Watanabe to pursuant to 28 U.S.C. § 636(b)(1). On January 25, 2005, Magistrate Judge Watanabe issued a recommendation, prior to Wallin filing responses to any of the motions. [FN4] Magistrate Judge Watanabe recommends that (1) Wallin's Eighth Amendment claim (claim one) be dismissed because it fails on the merits; it is barred by lack of exhaustion and lack of physical injury under the Prison Litigation Reform Act (PLRA); Wallin fails to demonstrate personal participation on the part of the CDOC Defendants; and the CDOC Defendants are entitled qualified immunity; (2) Wallin's intentional infliction of emotional distress claim (claim two) be dismissed as to the CCA defendants because they did not commit outrageous conduct; (3) Wallin's negligence claim (claim three) be dismissed as to the CCA Defendants because he fails to demonstrate that they breached a duty or that any such breach was the proximate cause of his injuries; (4) the state law claims should be dismissed against the CDOC Defendants because they are entitled to immunity from Wallin's state law claims under the Colorado Governmental Immunity Act (CGIA), and in any case, Wallin failed to provide timely notice under the CGIA; and (5) I should decline to exercise jurisdiction over the state law claims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 3

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

FN3. CDOC is not named as a defendant in Wallin's amended complaint, and I therefore ignore all arguments that apply only to it.

FN4. The CCA Defendants' motion was filed October 25, 2004, and the CDOC Defendants' motion was filed November 26, 2004. Magistrate Judge Watanabe granted Wallin's motion for an extension of time to respond to the CCA Defendants' motion through December 15, 2004. Additional motions for extensions were pending when Magistrate Judge Watanabe issued his recommendation, which he denied as unwarranted the same day. Nonetheless, in my *de novo* review, I have reviewed Wallin's responses to the summary judgment motions.

### Standard of Review

*3 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The nonmoving party must set forth facts showing that there is a genuine issue for trial. The court views the record in the light most favorable to the party opposing the summary judgment motion. *Cummings v. Norton,* 393 F.3d 1186, 1189 (10th Cir.2005). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

#### 1. Discovery and Pending Objections

Wallin first objects that the defendants' failures to provide discovery, permitted by Magistrate Judge Watanabe's erroneous rulings on discovery matters, prevented him from being able to effectively defend his claims with evidence. Wallin asserts that he must be allowed to defend against the defendants' motions with the allegations in his complaint in

addition to Rule 56(e) evidence.

Wallin is entitled to discovery sufficient to allow him a fair trial. *Handy v. Price,* 906 F.2d 1064, 1068 (10th Cir.1993). Furthermore, a "district court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1019 (10th Cir.2002). Nonetheless, accepting that Wallin may rely on his complaint, I do not find that Magistrate Judge Watanabe's discovery orders require me to reject his recommendation.

First, I do not find that Wallin's objections to Magistrate Judge Watanabe's discovery orders should be sustained. Because discovery orders concern nondispositive matters, my review is limited to determining whether they were clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). Under this standard, I must affirm unless I am "left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988). The relevant objections made by Wallin as to discovery orders are as follows.

Wallin filed an objection (Docket # 171) to Magistrate Judge Watanabe's October 5, 2004 minute order denying Wallin's motion to compel the CCA Defendants to produce documents. The CCA Defendants apparently disputed that they had received the relevant requests for production of documents. In any case, Magistrate Judge Watanabe denied the motion because Wallin had failed to comply with D.C.COLO.LCivR 7.1A prior to filing the motion. In his objections, Wallin admits that he failed to comply with the local rule, but notes that on October 7, 2004, after his motion had already been denied, he filed a motion to amend his motion to compel and several other motions to add his certification as required by the local rule. Especially in light of the enormous number of motions Wallin files in this and his other cases, I cannot find clear error in the fact that Magistrate Judge Watanabe did not sua sponte revisit his October 5, 2004 minute order after receiving Wallin's October 7 filing. Accordingly, Wallin cannot complain under these

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

circumstances that Magistrate Judge Watanabe never reached the merits of his motion.[FN5]

> FN5. In any case, Wallin provides no convincing evidence that the CCA Defendants are misrepresenting the truth when they assert that they never received the requests for production at issue, thereby failing to demonstrate clear error. For instance, although he attaches a copy of his requests for production addressed to the *CDOC Defendants,* to which they responded, this does nothing to demonstrate that he sent such requests to the CCA Defendants.

*4 On October 28, 2004, Wallin filed an "Amended Objection to Order Denying Plaintiff's Motion Concerning Legal Access," (Docket # 174), which he subsequently asked me to consider as a motion to reconsider my October 21, 2004 order. However, Wallin has never filed a motion concerning legal access in this case, although he has in several other of his cases pending before me. (*See* Oct. 21, 2004 order, at 2-3). Consequently, this objection should be overruled.

In any case, to the extent Wallin now raises concerns regarding an alleged denial of adequate access to facilities and materials necessary to prosecute his cases before me, I find that he is not entitled to relief. Wallin raises a variety of arguments as to why the CDOC is not allowing him adequate access to materials and facilities to prosecute his cases. Taking judicial notice of the prodigious quantity of filings from Wallin in the three cases he has pending before me, I cannot determine that Wallin does not have adequate resources or time in the law library to prosecute his cases. Additionally, Wallin demonstrates no prejudice. For instance, to the extent this order dismisses some of Wallin's claims, my rationale is not dependent upon Wallin's failure to attach exhibits to his responses, or other reasons related to his asserted lack of legal resources. Furthermore, even could he establish that his delay in responding to the defendants' motions for summary judgment was a result of inadequate access to the library, I am

reviewing the motions de novo, and have reviewed his response briefs, and have allowed him extensions of time to file both his objections and a reply brief. In conclusion, I find that Wallin's right of access to the courts has not been impeded to any material degree, and this motion will be denied. *See Carper v. DeLand,* 54 F.3d 613, 617 (10th Cir.1995) (quoting *John L. v. Adams,* 969 F.2d 228, 235 (6th Cir.1992)). *See also Chandler v. Baird,* 926 F.2d 1057, 1062 (11th Cir.1991) ("[m]any circuits have understood *Bounds [v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) ] to require some showing of prejudice or injury" to support a claim of denial of access).

Wallin filed an objection (Docket # 177) to Magistrate Judge Watanabe's order denying his motion to compel the CDOC Defendants to Produce documents. He first argues that the CDOC Defendants should be required to "produce" his medical and dental records, apparently meaning that they should be ordered to deliver copies to him. Magistrate Judge Watanabe found that the CDOC Defendants had made such records available for him to view and copy, and that they were not required to provide such materials at their own expense. *See Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir.1980). Wallin provides no authority contradicting this finding, but merely asserts that he expects CDOC to hinder his efforts to obtain the documents. Such does not convince me there was clear error. In any case, Wallin's concern appears to be moot, as he attached to his objections copies of his medical records, which I have included in my review.

*5 He also argues that the CDOC Defendants should have been ordered to produce grievance logs or records from lawsuits relating to KCCC and concerning "1) medical 2) staff/officers 3) excessive force 4) confiscations-deprivations, and 5) Officer Dycus," [FN6] (Mot. Compel CDOC Defs., ¶ 2,) as well as employee disciplinary records, job descriptions. Magistrate Judge Watanabe found the request overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and noted that the CDOC Defendants asserted that CDOC had no job descriptions. Wallin argues that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

such discovery could be provided easily, is relevant by allowing him to establish the habit and/or routine practice of defendants, and questions the credibility of CDOC's assertion that no job descriptions exist.

> FN6. Officer Dycus is a party in one of Wallin's other cases filed in this court.

"A litigant who seeks to overturn a magistrate's discovery order bears a heavy burden." *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (D.C.N.Y.1982). *See also Smith v. MCI Telecom. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) ("[b]ecause a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference"). Wallin does not leave me with the definite and firm conviction that Magistrate Judge Watanabe erred by finding his the broad scope of documents he sought unduly burdensome nor reasonably calculated to lead to the discovery of admissible evidence, and accordingly, I affirm. *See Ocelot Oil Corp.*, 847 F.2d at 1464.

Wallin next filed an objection (Docket # 181) to Magistrate Judge Watanabe's decision to grant the CCA Defendants' motion for a protective order regarding interrogatories addressed to defendant John Doe, the executive director of CCA (Doe). Based on Wallin's failure to attempt to identify and serve Doe until after the service deadline had passed, Magistrate Judge Watanabe ordered that the CCA Defendants need not respond to any interrogatories addressed to Doe.

Wallin asserts that he had sought the identity of Doe through informal discovery; however, the CCA Defendants deny this assertion, and indicate that Wallin never sought Doe's identity until after the written discovery deadline had passed. Wallin provides no evidence allowing me to find clear error in Magistrate Judge Watanabe's decision to credit the CCA Defendants' assertion. Wallin also argues that the CCA Defendants were required to provide Doe's name and address as part of their initial disclosures under Fed.R.Civ.P. 26(a)(1)(A), which requires each party to provide, without request, the name and contact information of "each

individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." Wallin's argument fails because the mandatory disclosure provisions set forth in Rule 26(a)(1) are inapplicable to a prisoner pro se case. Fed.R.Civ.P. 26(a)(1)(E)(iii).

*6 Although Wallin filed his amended complaint on March 30, 2004, service has yet to be effected on Doe. *See* Fed.R.Civ.P. 4(m) (complaint may be dismissed if not served within 120 days after the filing of the complaint). *See also Ketchum v. Albuquerque Police Dept.*, 9 F.3d 117, 1993 WL 445092, at ----2 (10th Cir. Nov.4, 1993) (unpublished table decision) (affirming amended complaint's dismissal without prejudice for failure to serve within 120 days). Under these circumstances, Magistrate Judge Watanabe's determination that discovery was not proper against Doe is not clearly erroneous. Even if the protective order may have been error there have been no allegations nor factual demonstration that any John Doe was guilty of a constitutional violation, conversion, negligence, or outrageous conduct. Accordingly this unnamed person should be dismissed for the reasons discussed infra, rendering this discovery issue moot.

Wallin filed an objection (Docket # 182) to the order granting of the CCA Defendants' second motion to compel, arguing Magistrate Judge Watanabe erred in deeming it confessed because Wallin had timely filed a motion for an extension of time to respond. The motion was filed on August 27, 2004, and Magistrate Judge Watanabe granted the motion on October 5, 2004. Wallin asserts that he filed a motion for an extension of time on September 29, 2004, but my review of the docket reveals no such motion, although it does indicate that he filed a motion for an extension of time to respond to a motion from the *CDOC Defendants* (Docket # 134). In any case, Magistrate Judge Watanabe's order was also based on his finding that Wallin's objections to the CCA defendant's discovery requests were without merit, and Wallin does not argue that this determination was in error.

Wallin filed an objection (Docket # 199) to Magistrate Judge Watanabe's November 4, 2004

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

order denying Wallin's October 28, 2004 "Amended Motion to Compel CDOC Defendants to Answer First Set of Interrogatories." Magistrate Judge Watanabe denied this motion based on my dismissal of all claims against the CDOC Defendants in a October 12, 2004 order. However, Magistrate Judge Watanabe was mistaken; the October 12, 2004 order issued in a related case, 03-cv-174-WDM-MJW, and claims against CDOC Defendants remain pending in this case. Consequently, the rationale of this order was in error. However, because, as discussed below, I find that the error does not prevent me from granting the CDOC Defendants' motion, this objection will be overruled as moot.

Wallin filed an objection (Docket # 200) to Magistrate Judge Watanabe's November 4, 2004 order granting the CCA Defendants' motion for sanctions for Wallin's failure to respond to certain discovery requests. However, in granting the motion, Magistrate Judge Watanabe did not actually impose sanctions, but merely imposed an additional deadline with the threat of sanctions for noncompliance. I find no clear error in the order, and the objection will be overruled.

*7 Wallin filed an objection (Docket # 251) that Magistrate Judge Watanabe based his January 21, 2005 minute order on mootness, denying the motions at issue because he had already issued his recommendation on the substantive motions. However, the order plainly states that the motions were denied because Magistrate Judge Watanabe found "no basis in law or fact" to grant any of the motions. Wallin raises no substantive arguments, and this objection will be overruled.[FN7]

FN7. Wallin also notes that, contrary to my instructions in my October 21, 2004 order, Magistrate Judge Watanabe failed to provide any rationale for his order denying Wallin's motion to amend the scheduling order, based on the fact that he has been denied adequate access to the law library. Nonetheless, as discussed supra, Wallin has not demonstrated that his right of access to the courts is being impeded,

including by being denied adequate time in the law library. Accordingly, this error does not prejudice Wallin, or prevent me from accepting Magistrate Judge Watanabe's recommendation.

In summary, I find that Wallin's objections to discovery matters do not prevent me from accepting Magistrate Judge Watanabe's recommendation, and I therefore address Wallin's substantive arguments.[FN8]

FN8. The following nondispositive motions are also pending before me. Four motions motions for extensions of time (Docket # s 206, 207, 208, 209) to file objections to orders of Magistrate Judge Watanabe denying Wallin's motion to recuse, a motion for "excusable neglect," a motion for leave to allow deposition by written interrogatories, and motion to allow Magistrate Judge Watanabe to conduct depositions. Having reviewed the order and the motions, I find no clear error and therefore deny these motions for extension of time as moot.
Additionally, Wallin filed a motion to compel the CDOC Defendants to produce deposition transcripts from his deposition, apparently asserting that he is entitled a copy of the transcripts for his use in litigating this case. Fed.R.Civ.P. 34(b) and 37(a) do not so provide. In any case, he demonstrates no prejudice, as any statement he made in his deposition he could as easily provide as evidence as an affidavit or declaration under 28 U.S.C. § 1746.

### 2. Eighth Amendment Claim

Wallin objects to Magistrate Judge Watanabe's finding that Wallin was unable to establish a violation of the Eighth Amendment. "Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care." *Barney v. Pulsipher*, 143 F.3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 7

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

1299, 1310 (10th Cir.1998). To prevail on a " conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "sufficiently serious" to implicate constitutional protection, and (2) prison officials acted with " 'deliberate indifference' to inmate health or safety." *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir.2001)*(quoting Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id. See also Barney,* 143 F.3d at 1310 (*quoting Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271) (to be " sufficiently serious," inmate must be deprived of " the minimal measure of life's necessities").

Courts have determined that deprivation of hygiene items may be sufficiently serious to state an Eighth Amendment claim. *See Scott v. Case Manager Owens,* 80 Fed. Appx. 640, 643 (10th Cir. Nov.7, 2003) (unpublished table decision) ("a denial of basic hygiene items might meet this standard [under the Eighth Amendment] under extreme conditions" ). *See also Carver v. Bunch,* 946 F.2d 451, 452 (6th Cir.1991) (finding allegation that inmate was denied basic elements of hygiene stated claim under § 1983). Nonetheless, "[a]n inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *DeSpain,* 264 F.3d at 974 ( *quoting Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir.2000)). In this inquiry, "the length of exposure to the conditions is often of prime importance." *Id.* Consequently, deprivations of hygiene items for short periods of time are not sufficiently serious to amount to a violation of the Eighth Amendment. *See Dopp v. W. Dist. of Okla,* 105 Fed. Appx. 259, 261 (10th Cir. Jul.28, 2004) (unpublished table decision) ("[b]eing deprived of hygiene products for eight days is not sufficiently serious to implicate the Eight Amendment"); *Bridgeforth v. Ramsey,* 198 F.3d 257, 1999 WL 992978, at *2 (10th Cir. Nov.2, 1999) (unpublished table decision) (holding that alleged deprivation of, inter alia, hygiene items for five days was not sufficiently grave to state a claim of an Eighth Amendment violation).

*8 On the other hand, courts, including the Tenth Circuit, have held that deprivations of hygiene items for longer periods of time may constitute sufficiently severe deprivations. *See Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996) (assertion that deprivation of toothpaste for approximately two months caused recession and bleeding of gums and tooth decay created genuine issue of material fact regarding whether prison officials caused inmate serious harm). *See also Board v. Farnham,* 394 F.3d 469, 483 (7th Cir.2005) (alleged deprivation of toothpaste for three weeks stated claim of Eighth Amendment violation); *Carver,* 946 F.2d at 451 (deprivation of basic hygiene items for two weeks); *Chandler,* 926 F.2d at 1059, 1065 (deprivation of hygiene items and low cell temperature for fifteen days).

Defendants argue that Wallin suffered no deprivation, because on February 11, 2002, four days after Wallin's hygiene items were confiscated, Wallin purchased $43.45 worth of items, mostly junk food, but including a toothbrush, from the commissary, demonstrating that he could have replaced his hygiene items. Wallin, however, asserts that the commissary purchases were ordered only on Wednesdays, and then delivered one week later; he also indicates that the date money is debited from an inmate account does not necessarily coincide with the date the inmate either ordered or receives items. (Obj., Ex. 8.) FN9 Consequently, because Wallin's items were confiscated on February 7, a Thursday, the earliest he could have obtained replacements from the commissary was February 20, resulting in thirteen days of deprivation. The record demonstrates that Wallin did, in fact, purchase and receive various hygiene items, including toothpaste and soap, on February 20.FN10

> FN9. The CCA Defendants argue that I should ignore this evidence as it was never presented to Magistrate Judge Watanabe. However, I am permitted to receive additional evidence after a magistrate judge's recommendation, and the CCA Defendants provide no other reason why I should refuse to review pertinent evidence. *See Hunnicutt v. Hawk,* 229 F.3d 997,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

1001-02 (10th Cir.2000).

FN10. Additionally, Wallin provides evidence that on February 19, 2002, he had a dental appointment at which "gross cavities" were diagnosed, resulting in extraction of two teeth. (Pl.'s Obj., Ex. 3.) However, Wallin provides no evidence that this advanced tooth decay was caused by his lack of toothpaste for the preceding twelve days.

However, I am not convinced that the deprivation of baby lotion, baby powder, foot powder, toothpaste, and soap for thirteen days constitutes the "extreme conditions" necessary to make it a serious deprivation under the Eighth Amendment. See Scott, 80 Fed. Appx. at 643. In particular, I do not find that an additional five days is sufficient to distinguish this case from Dopp, in which the Tenth Circuit succinctly held that "[b]eing deprived of hygiene products for eight days is not sufficiently serious to implicate the Eight Amendment."

Furthermore, even assuming that the deprivation was sufficiently serious, there is nothing in the record that would allow me to find that the Defendants acted with deliberate indifference to Wallin's needs. A prison official is liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health and safety." Barney, 143 F.3d at 1310 (quoting Farmer, 511 U.S. at 837). See also Despain, 264 F.3d at 972 (internal quotations omitted) (" deliberate indifference entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result ... [the] deliberate indifference standard [is] equal to recklessness, in which a person disregards a risk of harm of which he is aware).

*9 Here, with regards to most of the defendants, it is clear that they could not have acted with deliberate indifference to a risk of harm, because the evidence demonstrates that they were not even aware of Wallin's deprivation until after February 20, when he replaced (or at least, had had the opportunity to replace) [FN11] his missing hygiene

items, thereby eliminating the risk. With the exception of D. Satterly and Sloan, Wallin did not inform any of the defendants about the confiscation of his hygiene items until after February 24, 2002, when he had already replaced his hygiene items. ( See Amd. Compl., ¶¶ 10-41; Wallin Dep., at 28-42.) Furthermore, with regards to Sloan, it is undisputed that he did not learn of the alleged deprivation until February 18. As a result, Sloan can be deemed responsible for, at most, two days in which Wallin was deprived of his hygiene items, and under Bridgeforth and Dopp, discussed supra, his conduct could not have resulted in a sufficiently serious deprivation to result in liability under the Eighth Amendment.

FN11. To the extent Wallin did not replace needed hygiene items but had the ability to, he cannot obtain relief under the Eighth Amendment. See Gross v. Koury, 78 Fed. Appx. 690, 695 (10th Cir. Oct.20, 2003) (unpublished table decision) (allegations that inmate "made a personal choice between spending his funds on hygiene products or unspecified litigation costs" are insufficient to state a claim under the Eighth Amendment).

With regards to the remaining defendants, although Alfaro, Burk, Gansemer, Miller, D. Satterly and R. Satterly were likely aware that Wallin's property, including his hygiene items, had been confiscated, there is no indication that they acted with deliberate indifference. See Barney, 143 F.3d at 1310 ("a prison official is liable only if the official knows of and disregards an excessive risk to inmate health and safety." Indeed, there is no direct evidence in the record regarding any intent on the part of these defendants. Cf. Penrod, 94 F.3d at 1404-05, 1406 (finding issue of fact remained based on plaintiff's evidence that the defendants retaliated against him by denying free toothpaste and razors for two months).

Likewise, there is no evidence that these defendants were aware of any risk of harm to Wallin. See Barney, 143 F.3d at 1310 (it is "not enough to establish that the official should have known of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 9

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

risk of harm"). Although Wallin asserts that the deprivation aggravated his tooth decay and a pre-existing skin condition, it is undisputed that he never raised these concerns with Alfaro, Burk, Gansemer, Miller, or R. Satterly, and he notes no other way in which they might have been informed. Furthermore, although he addressed an inmate request form regarding the issue to D. Slatterly, the only evidence in the record-Wallin's sworn amended complaint-does not indicate that Wallin provided D. Satterly with information sufficient to alert him to a risk of serious harm facing Wallin. Rather, according to the complaint, Wallin filled out an informal grievance form to Satterly " explaining that his personal private property had been seized without reasoning including his hygiene items and that he needed his personal property back or replaced." (Amd.Compl., ¶ 8.) There is no indication Wallin notified Satterly that he was suffering health problems as a result of the deprivations.

**\*10** Accordingly, I agree with Magistrate Judge Watanabe that Wallin's Eighth Amendment claim must be dismissed as to all the defendants.

### 3. *State Law Claims*

Magistrate Judge Watanabe found, inter alia, that Wallin's state law claims should be dismissed against the CDOC Defendants as barred by the CGIA. [FN12] I agree.

> FN12. Magistrate Judge Watanabe appears to recommend dismissal of the claims against all the CDOC Defendants under Colo.Rev.Stat. § 24-10-108. However, this provision appears, from its language, to provide protection only for "entities," and not individuals. Indeed, the CDOC Defendants raised it only to the extent Wallin was asserting claims against the CDOC itself. As noted above, Wallin's amended complaint does not name CDOC as a defendant.

Colo.Rev.Stat. § 24-10-109(1) provides:

Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or a cause of action for such injury.

This notice provision of the CGIA applies when federal courts hear Colorado tort claims under supplemental jurisdiction. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir.2003). When a claim is asserted against the state or a state employee, the notice must be filed with the attorney general. Colo.Rev.Stat. § 24-10-109(3). "[F]ailure to comply with the 180-day period is an absolute bar to suit." *Id.* (quoting *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 390-91 (Colo.2002) ).

Magistrate Judge Watanabe found that Wallin filed his first notice pursuant to the CGIA on March 24, 2003, which Wallin does not dispute. This was more than a year after his property was confiscated in February 2002, he was first denied access to his clothing in February 2002 and it was more than 180 days after he received notification from Gillespie (on September 18, 2002) denying his final request for relief from any of the defendants. (Amd. Compl., Att. A.)

Nonetheless, Wallin asserts in his objections, as well as in his belated response brief, that "the underlying facts and elements to the possible cause of action were not fully discovered until sometime after the month of September 2002." (Pl.'s Obj., at 30.) However, the plain language of the statute provides that it is the date the plaintiff discovers the *injury,* and not the elements of his claim, that controls. *See* Colo.Rev.Stat. § 24-10-109(1). Furthermore, Wallin's conclusory assertion, that he discovered such information "sometime after the month of September 2002," is insufficient to survive a motion for summary judgment.[FN13] *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir.2003) (quotation omitted) (" [c]onclusory allegations that are unsubstantiated do

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 10

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

not create an issue of fact and are insufficient to oppose summary judgment"). Consequently, I agree with Magistrate Judge Watanabe that Wallin's three state law claims must be dismissed as to the CDOC Defendants.

> FN13. Wallin does not assert that he could have obtained discoverable information relevant to this defense had his motion to compel, discussed above, been granted. Consequently, Wallin's objection does not prevent me from granting the CDOC Defendants' motion as to these claims.

Magistrate Judge Watanabe also recommended that Wallin's outrageous conduct and negligence claims be dismissed as lacking merit as to the CCA Defendants. Regarding claim two, asserting intentional infliction of emotional distress, he found that Wallin had failed to provide any evidence that the defendants committed outrageous conduct.

*11 In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Riske v. King Soopers,* 366 F.3d 1085, 1089 (10th Cir.2004) *(quoting Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo.Ct.App.2002)). Under the first element, extreme and outrageous conduct is conduct that " goes 'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." ' *Id. (quoting Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (Colo.1970)). The level of outrageousness required is "extremely high." *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo.1999). It is for me to determine, in the first instance, whether reasonable people "could differ on the outrageousness issue." *Id. (quoting Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399, 401 (Colo.1978)).

While I agree with Wallin that Magistrate Judge Watanabe's characterization of the record is somewhat imprecise, I disagree that the facts demonstrate that the defendants' actions and omissions constituted outrageous conduct. Wallin has presented facts, which if believed by a factfinder, would establish that defendants Alfaro, Burk, Gansemer, Miller, and R. Satterly confiscated his property, including necessary hygiene items including his toothpaste, soap, and deodorant, without providing a legitimate reason for doing so, and that the remaining defendants did not act to remedy the deprivation. Nonetheless, I do not find that reasonable people could find that this conduct rises to the "extremely high" level required by Colorado courts; i.e., that it was so extreme as to be "atrocious, and utterly intolerable in a civilized community." *Riske,* 366 F.3d at 1089; *Floyd,* 978 P.2d at 666. Accordingly, this claim will be dismissed.

Magistrate Judge Watanabe recommended that Wallin's negligence claim against defendants Bair, Brill, Fuchs, D. Satterly, and Sloan be dismissed because the defendants "had no duty to Plaintiff relative to his request from replacement of his property nor could there be any possible breach of a duty." (Recommendation, at 22.) Wallin objects to this determination.

The elements of a negligence claim in Colorado are: (1) the existence of a legal duty by the defendant to the plaintiff; (2) breach of that duty by the defendant; (3) injury to the plaintiff; and (4) a sufficient causal relationship between the defendant's breach and the plaintiff's injuries. *Connes v. Molalla Trans. Sys., Inc.,* 831 P.2d 1316, 1320 (Colo.1992). The initial question is whether the defendant owed a legal duty to protect the plaintiff against injury, and this question is one of law, to be determined by the court. *Id.* Relevant factors include, "for example, the risk involved, the foreseeability and likelihood of injury as weighted against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor." *Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo.1992). However, the ultimate question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards-whether reasonable persons would recognize a duty and agree that it exists." *Id. ( quoting Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

(Colo.1987)).

**\*12** I agree with Magistrate Judge Watanabe that Wallin cannot prevail on his negligence claim. First, Wallin's arguments and citations to case law regarding the Defendants' constitutional obligations under the Due Process Clause are inapposite to this state law negligence claim. Second, while Wallin suggests a duty to "safeguard" his property arises from the applicable administrative regulation, even assuming such a duty exists, there is no indication in the record that defendants Bair, Brill, Fuchs, D. Satterly, and Sloan (or Doe) ever had custody of the property in question. Finally, Wallin argues that the confiscating officers' failure to list each seized item on the shakedown list violated another regulation-imposed duty. However, none of the confiscating officers (Alfaro, Burk, Gansemer, Miller, and R. Satterly) are named as defendants in Wallin's negligence claim. Accordingly, I agree with Magistrate Judge Watanabe and find that this claim should be dismissed with prejudice.

The CCA Defendants also argue that Wallin's state law claims must be dismissed for failure to comply with Colo.Rev.Stat. § 13-17.5-102.3(1), which provides that "[n]o inmate shall bring a civil action based upon prison conditions under any statute or constitutional provision until all available administrative remedies have been exhausted in a timely fashion by the entity operating the detaining facility and inmate." However, by its plain language, this provision applies to claims, unlike Wallin's state law claims, brought pursuant to a statute or constitutional provision.

Alternatively, Magistrate Judge Watanabe recommended that I refuse to exercise supplemental jurisdiction over Wallin's state claims.
A district court has discretion whether to exercise supplemental jurisdiction over state law claims once the federal question has been dismissed. 28 U.S.C. § 1367(c). 'In making its determination, the district court should take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants,'... [as well as] the particular circumstances of the case including the nature and extent of the pretrial proceedings.

*Olcott v. Delaware Flood Co.* 76 F.3d 1538, 1550 (10th Cir.1996) (*quoting Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993)). *See also Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990) ("[t]he district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction").

Here, given the extensive pretrial proceedings in this case, judicial economy, convenience, and fairness all weigh in favor of my exercising jurisdiction over Wallin's remaining claim. Consequently, I disagree with Magistrate Judge Watanabe and will retain jurisdiction over Wallin's remaining claim of conversion. Magistrate Judge Watabnabe did not make a substantive recommendation concerning this claim and the parties do not provide argument allowing me to rule at this juncture.

**\*13** Accordingly, it is ordered:
1. The recommendation issued January 20, 2005, by Magistrate Judge Watanabe is accepted in part and modified in part, as discussed herein.
2. Plaintiff's objections to the recommendation, filed March 15, 2005, are sustained in part and overruled in part.
3. Defendants Alfaro, Bair, Brill, Burk, Fuchs, Gansemer, Miller, D. Satterly, R. Satterly and Sloan's motion for summary judgment, filed November 12, 2004 (Docket # 166) is granted in part and denied in part.
4. Defendants CDOC, Bongirno, Gillespie, and Ortiz' motion for summary judgment, filed November 12, 2004, (Docket # 190), is granted.
5. Defendant's claim one, asserting a violation of the Eighth Amendment, is dismissed with prejudice.
6. Plaintiff's claim two, asserting a claim of conversion, is dismissed with prejudice as to defendants Bongirno, Gillespie, and Ortiz, as well as Doe.
7. Plaintiff's claim three, asserting a claim of negligence, is dismissed with prejudice.
8. Plaintiff's claim four, asserting a claim of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 12

Not Reported in F.Supp.2d, 2005 WL 2125224 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

intentional infliction of emotional distress, is
dismissed with prejudice.
9. Plaintiff's December 14, 2003 motion to compel
(Docket # 225) is denied, and his motions for an
extension of time (Docket # s 206, 207, 208, and
209) are denied as moot.
10. Plaintiff's objections filed under Docket # s 171,
174, 177, 181, 182, 199, 200 are overruled.
11. This case remains pending on Plaintiff's claim
two (conversion), against defendants Alfaro, Burk,
Gansemer, Miller, and R. Satterly.

D.Colo.,2005.
Wallin v. Alfaro
Not Reported in F.Supp.2d, 2005 WL 2125224
(D.Colo.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00281 (Docket) (Feb. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.