# EXHIBIT 599

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **SUPPLEMENTAL DECLARATION OF ROGER C. SWANSON** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

I, Roger C. Swanson, declare as follows:

1. This declaration is submitted in connection with the lawsuit brought by The SCO Group, Inc. ("SCO") against IBM, titled <u>The SCO Group, Inc. v. International Business Machines Corporation</u>, Civil No. 2:03CV-0294 DAK (D. Utah 2003). I make this declaration, which supplements my prior testimony in this case, based upon personal knowledge.

2. I previously executed a declaration in this case on July 28, 2004, which I incorporate herein by reference.

3. As Director of Software Engineering at Sequent Computer Systems, Inc. ("Sequent"), I was involved in the negotiation of several agreements with AT&T Technologies, Inc. ("AT&T") for the licensing of certain UNIX System V software and related material. During these negotiations, I told AT&T's representatives that Sequent intended to use and modify the licensed UNIX System V source code in connection with Sequent's development of a new operating system for proprietary hardware, which came to be known as Dynix/ptx. I told AT&T's representatives that it was important to us that any source code that we developed in connection with Dynix/ptx would be owned and controlled by Sequent, and that this new source code would belong to Sequent and was Sequent's to distribute as it saw fit.

4. The key product goal for Sequent in its early days as a new company was the development of a UNIX-based multiprocessor system, which to the best of our knowledge had not been accomplished before. We did not want AT&T to have control over any of the software modifications we developed to make the UNIX system that we had licensed operate on our multiprocessor hardware. We would have been at a significant disadvantage if a third party were to disclose our enhancements to a Sequent competitor. Before the agreements were

executed, I asked AT&T's representatives to confirm that Sequent's understanding of the AT&T Agreements was correct because it was important to the way Sequent would operate its business.

5. AT&T's representatives confirmed that Sequent's understanding was exactly what AT&T intended by the AT&T Agreements. They told me that they did not intend the AT&T Agreements to give AT&T the right to assert ownership or control over modifications or derivative works based on UNIX System V prepared by Sequent, except for the licensed UNIX System Code that was included in such modifications or derivative works.

6. I understand that SCO claims IBM has breached the Sequent Agreement by using, exporting, disclosing or transferring Dynix/ptx source code, regardless of whether IBM has used, exported, disclosed or transferred any protected UNIX System V source code. That theory is inconsistent with both how I understood the AT&T Agreements at the time they were executed and how AT&T's representatives explained their understanding of the Software Agreement to me.

7. Subsequent to the execution of the AT&T Agreements, Sequent invested in the development of its own operating system for multiprocessors, Dynix/ptx. Sequent invested millions of dollars in and devoted countless person-hours to developing, Dynix/ptx, which contained certain source code from UNIX System V, based on the understanding that AT&T claimed no interest in Sequent's original works, even if such a work might be included in a modification or derivative work of UNIX System V.

8. In addition, Sequent also applied for numerous patents for technologies related to Dynix/ptx. Part of my responsibilities at Sequent included working with our patent attorney to develop patents for the unique computer methods that we developed and included in Dynix/ptx.

3

Because Sequent understood that the Software Agreements did not require Sequent to hold Dynix/ptx methods developed by Sequent in confidence for AT&T, it was free to apply for patents related to such Dynix/ptx methods and thus disclose such methods to the public.

9. I declare under penalty of perjury that the foregoing is true and correct.

Executed: September 25, 2006.

Location: Portland, OR.

_____
Roger C. Swanson

4