Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP,<br><br>   Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>   Defendant/Counterclaim-Plaintiff | **SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON IBM'S SIXTH, SEVENTH AND EIGHTH COUNTERCLAIMS**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF UNDISPUTED FACTS ...............................................................................2

I.     IBM'S COUNTERCLAIMS AND THE GPL ...............................................................2

II.    SCO'S CONDUCT WITH RESPECT TO THE GPL...................................................4

LEGAL STANDARD...................................................................................................................7

ARGUMENT.................................................................................................................................7

I.     SCO DID NOT BREACH THE GPL...........................................................................9

    A.     Where SCO Has Copied, Distributed or Sublicensed Linux,
It Has Done So in Compliance With the GPL ....................................................9

    B.     SCO's Licensing of UNIX Did Not Breach the GPL ......................................11

II.    SCO HAS NOT INFRINGED IBM'S COPYRIGHTS...............................................11

    A.     The GPL Authorized SCO's Re-Distributions of Linux..................................11

    B.     Nothing in the GPL Supports IBM's Claim Of Breach and
Retroactive Termination ..................................................................................12

    C.     IBM's Proposed Interpretation of the GPL Would Impermissibly
Interfere with Enforcement of Intellectual Property Rights and
Would Raise Serious Antitrust Concerns ........................................................13

        1.     The GPL Should Not be Read to Interfere with SCO's
Right to Enforce Its Own Intellectual Property Rights .......................13

        2.     The GPL Should Not be Read to Allow a Competitor
to Regulate What May Be Charged for an Intellectual
Property License ..................................................................................13

CONCLUSION............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases** **Page**

Allegro Corp. v. Only New Age Music, Inc.,
    No. Civ. 01-790-HU, 2003 WL 23571745 (D. Or. Jan. 23, 2003) ......................................8

Bd. Of Dirs. And Officers, Forbes Fed. Credit Union v. Nat'l Credit Union Admin.,
    477 F.2d 777 (10th Cir. 1973).............................................................................................14

Carpenter v. Boeing,
    456 F.3d 1183 (10th Cir. 2006) ...........................................................................................7

Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.,
    843 F.2d 600 (1st Cir. 1988)...............................................................................................13

Dreiling v. Peugeot Motors of Am., Inc.,
    850 F.2d 1373 (10th Cir. 1988) ...........................................................................................7

Ford v. United States,
    273 U.S. 593 (1927)............................................................................................................12

Foresight Res. Corp. v. Pfortmiller,
    719 F. Supp. 1006 (D. Kan. 1989).......................................................................................8

Gates Rubber Co. v. Bando Chem. Indus., Ltd.,
    9 F.3d 823 (10th Cir. 1993) .................................................................................................8

Grady v. de Ville Motor Hotel,
    415 F.2d 449 (10th Cir. 1969) ...........................................................................................13

Graham v. James,
    144 F.3d 229 (2d Cir. 1998)................................................................................................8

Grundberg v. Upjohn Co.,
    140 F.R.D. 459 (D. Utah 1991) .........................................................................................13

Guthart v. White,
    263 F.3d 1099 (9th Cir. 2001) ...........................................................................................14

Indep. Serv. Orgs. Antitrust Litig.,
    964 F. Supp. 1469 (D. Kan. 1997)......................................................................................8

Jacob Maxwell, Inc. v. Veeck,
    110 F.3d 749 (11th Cir. 1997) .......................................................................................10

Justine Realty Co. v. Am. Nat'l Can Co.,
    976 F.2d 385 (8th Cir. 1992) ........................................................................................13

Lawmaster v. Ward,
    125 F.3d 1341 (10th Cir.1997) ......................................................................................7

MCA Television, Ltd. v. Public Interest Corp.,
    171 F.3d 1265 (11th Cir. 1999) ....................................................................................10

NLRB v. Local 32B-32J Serv. Employees Int'l Union,
    353 F.3d 197 (2d Cir. 2003)..........................................................................................14

NYNEX Corp. v. Discon, Inc.,
    525 U.S. 128 (1998)......................................................................................................14

San Juan New Materials High Tech, Inc. v. Int'l Trade Comm'n,
    161 F.3d 1347 (Fed. Cir. 1998).....................................................................................13

Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n,
    327 F.3d 1019 (10th Cir. 2003) ....................................................................................12

Stenograph L.L.C. v. Bossard Assocs., Inc.,
    144 F.3d 96 (D.C. Cir. 1998) .........................................................................................8

Tolboe Constr. Co. v. Staker Paving & Constr. Co.,
    682 P.2d 843 (Utah 1984)...............................................................................................7

United States v. Socony-Vacuum Oil Co.,
    310 U.S. 150 (1940)......................................................................................................14

**Other**

Nimmer on Copyright § 10.15[A] at 10-120 (2004)................................................................10

Restatement of Contracts § 90 ...................................................................................................7

Plaintiff, the SCO Group, Inc. ("SCO"), respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment on IBM's Sixth, Seventh and Eighth Counterclaims ("IBM's Counterclaims").

## PRELIMINARY STATEMENT

IBM's Sixth, Seventh and Eighth Counterclaims concern certain programs that IBM licensed for free use under the GNU General Public License and Lesser General Public License (collectively, the "GPL"), and all turn on the allegation that SCO has violated the GPL in seeking to enforce its contractual and intellectual property rights.  The Sixth Counterclaim asserts that SCO breached the GPL.  The Seventh Counterclaim seeks to recover damages based on IBM's alleged reliance on SCO's promise to not breach the GPL.  The Eighth Counterclaim asserts that SCO's distribution of Linux infringed IBM's alleged copyrights on code it released to Linux under the GPL.  These Counterclaims all fail as a matter of law because it is undisputed that:

- Where SCO copied, redistributed or sublicensed Linux, it did so in compliance with the GPL;
- Nothing in the GPL prohibits SCO from licensing its UNIX technology; and
- Nothing in the GPL or the case law supports IBM's argument for "retroactive termination" and "retroactive infringement."

SCO further shows below that the GPL should not be read – as IBM has read it – to interfere with SCO's right to enforce its own intellectual property rights, or to allow a competitor to decide what may be charged for an intellectual property license.

**STATEMENT OF UNDISPUTED FACTS**

I.      **IBM'S COUNTERCLAIMS AND THE GPL**

1.      IBM's Sixth Counterclaim, for breach of the GNU General Public License, alleges that SCO has breached the GPL by "among other things, copying, modifying, sublicensing or distributing programs licensed under the GPL, including IBM contributions, on terms inconsistent with the GPL, and seeking to impose additional restrictions on the recipients of programs licensed under the GPL, including IBM contributions, distributed by SCO." (IBM's 2d Am. Counterclaims ¶ 145.) The counterclaim also alleges that SCO's license under the GPL "terminated" because of this alleged breach. (IBM's 2d Am. Counterclaims ¶ 146.)

2.      IBM's Seventh Counterclaim, for promissory estoppel, seeks to recover damages resulting from IBM's reliance on SCO's promise not to breach the GPL. (IBM's 2d Am. Counterclaims ¶¶ 148-53.)

3.      IBM's Eighth Counterclaim, for copyright infringement, alleges that SCO has infringed upon IBM's copyrights by "copying, modifying, sublicensing and/or distributing Linux products except as expressly provided under the GPL." (IBM's 2d Am. Counterclaims ¶ 159.)

4.      Section 0 of the GPL (Ex. A) provides: "Activities other than copying, distribution and modification are not covered by this license; they are outside of its scope."

5.      Section 0 further states: "This License applies to any program . . . which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License." It is undisputed that IBM placed such a notice with respect to the code it added to Linux, and that SCO never placed such a notice on any code in Linux.

6.      Under the GPL, a licensee may charge a fee for its distribution of GPL licensed software. (GPL Preamble ¶¶ 2, 4; GPL § 1.)

2

7. Section 1 of the GPL authorizes the general public to copy and distribute verbatim copies of the source code of the licensed program, subject to certain notice publication requirements. (GPL § 1.) SCO complied with all of these requirements in all of its Linux distributions. (Hughes Decl. ¶ 9; (Ex. B); Hughes Dep. (5/11/04) at 67 (Ex. C); Sontag Dep (5/12/04) at 211 (Ex. D).)

8. Section 2 of the GPL states that if a licensee modifies the licensed work, the modified work must be licensed at no charge. (GPL § 2.) SCO never modified any of IBM's contributions to Linux. (Sontag Decl. (Ex. E) ¶ 31.) In contrast to Section 2 (which authorizes the copying of modified works), Section 1 (which authorizes verbatim copying) does not require no-charge licensing. (GPL §§ 1-2.)

9. Section 3 of the GPL authorizes the general public to copy and distribute verbatim copies of the licensed program in object code or executable form, subject to the condition that it be accompanied by the source code or by an offer to provide the source code. (GPL § 3.) SCO complied with these conditions in all of its Linux distributions. (Hughes Decl. ¶ 9; Hughes Dep. (5/11/04) at 67; Sontag Dep. at 211.)

10. Nothing in the GPL prohibits the licensing of other intellectual property that may pertain to the Program. In fact, Section 7 of the GPL contemplates that "the Program" may implicate other intellectual property rights. (GPL § 7.)

11. Section 3 of the GPL does not prohibit a licensee from charging "royalty or licensing fees" on the licensed works. Section 3 does not mention fees or royalties. (GPL § 3.)

12. Section 3 of the GPL requires that a party who distributes copies of works subject to the GPL in executable form, provide the customer "with the complete corresponding machine-

3

readable source code" on a "medium customarily used for software interchange" or with an offer to provide the code at cost.  (GPL § 3.)

13. Section 4 of the GPL states that a licensee's use of licensed material beyond the scope of the License will "automatically terminate" the licensee's rights under the License, but it does not say when such a termination becomes effective, and it provides no mechanism by which the licensee is put on notice of an alleged unauthorized use of the licensed material.  (GPL § 4.)

14. GPL Section 6 states that each time a licensee redistributes "the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions.  [The licensee] may not impose any further restrictions on the recipients' exercise of the rights granted herein."  (GPL § 6.)

## II.   SCO'S CONDUCT WITH RESPECT TO THE GPL

15. SCO copied and distributed the Linux kernel and other related Linux software for years prior to 2003, when SCO discovered that IBM and others had misappropriated SCO's copyrighted UNIX code by contributing it to Linux without SCO's approval.  On May 14, 2003, SCO suspended all sales and marketing of its entire Linux product line.  (Hughes Decl. ¶ 3; Hughes Dep. (3/2/06) at 179, 186 (Ex. F); Hughes Dep. (5/11/04) at 16, 37, 48, 51.)

16. In light of the legal issues arising from the misappropriation, SCO began offering its Intellectual Property License for UNIX (the "UNIX License") for sale beginning on August 5, 2003.  (Hughes Decl. ¶ 6.)  The UNIX License is a license of SCO's UNIX software, not a license or sublicense of Linux or of any IBM-copyrighted work.  (Hughes Dep. (3/2/06) at 181-82; Sontag Decl. ¶ 30.)

4

17. SCO has never attempted to license or sublicense Linux or any IBM copyrighted work, or any other GPL-licensed source code. (Sontag Decl. ¶ 30.) SCO offered its UNIX License, beginning in August 2003, because SCO believes IBM had misappropriated SCO's proprietary material and contributed that material into Linux. (Hughes Decl. ¶ 6.)

18. SCO has not sought to collect royalties or licensing fees for any of IBM's allegedly copyrighted works. (Hughes Decl. ¶ 9; Sontag Decl. ¶ 30.)

19. SCO has not attempted to sell a UNIX License to anyone who received a Linux distribution from SCO. (Hughes Decl. ¶ 8.)

20. SCO distributed SCO Linux Server 4.0 for less than six months, from November 19, 2002, until May 14, 2003. (Hughes Decl. ¶¶ 2-3; Hughes Dep. (3/2/06) at 186; Hughes Dep. (5/11/04) at 16, 37, 57.) Once SCO arrived at the conclusion that Linux was tainted with misappropriated material, SCO suspended its sales of Linux products pending clarification of the intellectual property issues. (Hughes Decl. ¶ 3; Hughes Dep. (3/2/06) at 179, 186; Sontag Dep. (5/12/04) (Ex. E) at 208-09.) After May 14, 2003, SCO entered into no further obligations to sell SCO Linux Server 4.0 or any other Linux product. (Hughes Decl. ¶ 3; Hughes Dep. (5/11/04) at 53.) SCO made limited post-May 14 sales to customers in consideration of its obligations to its customers. (Hughes Decl. ¶¶ 3-5; Hughes Dep. (3/2/06) at 188-89; Hughes Dep. (5/11/04) at 72-73; Sontag Decl. ¶¶ 12-14; Sontag Dep. (5/12/04) at 221-23.) The last sale of Linux Server 4.0 was on May 31, 2004. (Hughes Decl. ¶ 4; Hughes Dep. (11/1/05) at 60 (Ex. G).) All of SCO's Linux distributions (both prior to and after May 2003) were made under the GPL, with no charge of any nature for royalties or licensing fees. (Hughes Decl. ¶ 9.)

21. In accordance with its obligations, SCO continued to provide its Linux customers with internet access to files containing Linux source code and enhancements thereto. SCO

5

stored these files on its computers, which its customers could access via the internet.  In accordance with its agreement with the UnitedLinux consortium, SCO provided customers who purchased SCO Linux Server 4.0 with a password to enter at a log-in screen on SCO's download site so that only they would have access.  (Hughes Dep. (3/2/06) at 195; Hughes Dep. (11/1/05) at 37-38; Sontag Decl. ¶¶ 17-19.)

22. SCO permitted access to Linux source code files via its website after August 5, 2003, because of SCO's pre-existing contractual obligations with its customers and with the UnitedLinux consortium.  (Hughes Dep. (3/2/06) at 190-91, 194; Sontag Decl. ¶ 17-19.)  SCO complied by making the source code available to its customers on its website.  SCO removed all Linux-related code from its website promptly after expiration of the last of its contractual commitments, on December 31, 2004.  (Hughes Decl. ¶ 11; Hughes Dep. (3/2/06) at 191, 194; Hughes Dep. (11/1/05) at 37-38, 121; Sontag Decl. ¶ 17.)

23. SCO suspended its Linux distribution activities in May 2003 (Hughes Decl. ¶ 3; Hughes Dep. (3/2/06) at 186,), months before it began selling the UNIX License in August of 2003.  (Hughes Decl. ¶ 6.)  This suspension was also months before IBM registered any of the sixteen alleged copyrights.  (IBM Mem. in Supp. of IBM's Mot. for Partial Summ. J. on Its Eighth Counterclaim (8/16/04) ¶ 8.)

24. Prior to the filing of its Counterclaim on August 6, 2003, IBM never provided SCO with any notice of its claim that SCO's rights under the GPL had terminated or that SCO was infringing its copyrights.  (Hughes Decl. ¶ 12.)

25. SCO never repudiated the GPL, and it always endeavored to comply with its GPL obligations.  (Hughes Decl. ¶ 9; Hughes Dep. (3/2/06) at 200-01; Sontag Dep. (5/12/04) at 211.)

6

## **LEGAL STANDARD**

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Carpenter v. Boeing, 456 F.3d 1183, 1192 (10th Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).  An "issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant."  Id. (quoting Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir.1997)).

## **ARGUMENT**

Summary judgment is appropriate on IBM's Sixth Counterclaim, unless IBM demonstrates a genuine issue of material fact as to the existence of a breach of the GPL.  See Dreiling v. Peugeot Motors of Am., Inc., 850 F.2d 1373, 1378 (10th Cir. 1988).  In its Seventh Counterclaim, IBM alleges that it relied on SCO's promise not to breach the GPL.  Accordingly, in order to survive summary judgment on this counterclaim, IBM must demonstrate an issue of fact as to the existence of a breach of the GPL.  See Tolboe Constr. Co. v. Staker Paving & Const. Co., 682 P.2d 843, 845-46 (Utah 1984) (addressing elements of a promissory estoppel claim under Utah state law). Restatement of Contracts § 90 (allowing remedy for "breach" of promise "as justice requires").[1]

---

[1] Summary judgment is also appropriate on the Sixth and Seventh Counterclaims because IBM has not incurred any compensable harm as a result of SCO's alleged conduct.  In this regard, SCO incorporates by reference Part III of its Memorandum in Support of Its Motion for Summary Judgment on IBM's Second, Third, Fourth and Fifth Counterclaims (9/25/06).  J.R. Kearl, IBM's expert on alleged counterclaim damages, does not separately address counts Six and Seven in his analysis.  (Kearl Report, 5/19/06, at 3 note 1, attached to above-cited memorandum.)  It is inconceivable that SCO's alleged conduct (the leaving of Linux code on SCO's website after SCO's right to distribute Linux was purportedly terminated) could have caused IBM the slightest harm, particularly since Linux is available for free download on many non-SCO websites.

In order to prevail on its Eighth Counterclaim, IBM bears the burden of proving that SCO violated the Copyright Act. See Allegro Corp. v. Only New Age Music, Inc., No. Civ. 01-790-HU, 2003 WL 23571745, at *10 (D. Or. Jan. 23, 2003) (Ex. 1); Indep. Serv. Orgs. Antitrust Litig., 964 F. Supp. 1469, 1472 (D. Kan. 1997). This requires proof that SCO's actions were unauthorized. See Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 832 (10th Cir. 1993) ("Once the plaintiff has shown that it holds a valid copyright, it must next prove that the defendant unlawfully appropriated protected portions of the copyrighted work."); Foresight Res. Corp. v. Pfortmiller, 719 F. Supp. 1006, 1011 (D. Kan. 1989) ("In general, a prima facie case of copyright infringement consists of proof that the plaintiff owns a valid copyright and the defendant has engaged in unauthorized copying."). IBM bears the burden of proving that SCO violated the GPL. See Allegro, 2003 WL 23571745, at *10 ("To prevail on their counterclaim of copyright infringement under a license, defendants must prove 1) ownership of copyright, and 2) 'copying' of protectible expression beyond the scope of the license."); see also Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998) (noting that "the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license"); Stenograph L.L.C. v. Bossard Assocs., Inc., 144 F.3d 96, 99 (D.C. Cir. 1998) (explaining copyright plaintiff must prove defendant's copying of protected expression exceeded scope of "the license possessed by the defendant").

I. **SCO DID NOT BREACH THE GPL**

IBM's Sixth and Seventh Counterclaims fail as a matter of law because SCO did not breach the GPL.[2] First, where SCO has copied and re-distributed Linux, it has done so in compliance with the requirements of the GPL. Second, nothing in the GPL – which by its very terms is limited to "copying, distribution and modification" of Linux – precludes SCO from issuing licenses to its UNIX software.

A. **Where SCO Has Copied, Distributed or Sublicensed Linux, It Has Done So in Compliance With the GPL.**

SCO's copying, distribution and sublicensing of Linux – which activity ended in May 2003 – complied with the terms of the GPL. Section 1 of the GPL allows licensees to "copy and distribute verbatim copies of the [licensed] Program's source code as [the licensee] receive[s] it, in any medium" without requiring the licensee to grant any rights to third parties. The only conditions imposed on a licensee exercising the right to distribute verbatim copies are that the licensee "publish an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to [the GPL] and to the absence of any warranty; and give any other recipients of the [covered] Program a copy of [the GPL] along with the [covered] Program." It is undisputed that SCO complied with these requirements. SCO's distribution included 2 compact disks: one with SCO's proprietary material and one with material from OpenLinux.

IBM has previously argued that SCO's efforts to license its UNIX software – which started in August 2003 – somehow violated the GPL, and thereby retroactively terminated SCO's right to copy, distribute and sublicense Linux under the GPL, and retroactively turned SCO's

---

[2] As an initial matter, it is not at all clear that IBM has standing or the authority to sue SCO for any alleged violation of the GPL. By addressing IBM's arguments, SCO does not concede that IBM has any such standing or authority.

9

lawful activity under the GPL into acts of copyright infringement. IBM's argument is meritless for a number of reasons.

First, as set forth below, SCO's actions in licensing UNIX are not prohibited by the GPL.

Second, nothing in the GPL supports the concept of retroactive termination. And the cases do not support IBM's argument either. The copyright cases expressly discussing the issue have rejected the notion of "retroactive" breach, termination and infringement. In MCA Television, Ltd. v. Public Interest Corp., 171 F.3d 1265 (11th Cir. 1999), for example, the court explained:

> The notion that MCA had the power retroactively to rescind the contract makes a mockery of that contractual agreement and would put any contracting party in PIC's position in terror of upsetting the licensor in any way for fear of being declared in breach, having the contracted-for licenses "retroactively revoked," and being sued both for breach of contract and in copyright for statutory damages that can far outweigh contractually negotiated licensing fees.

Id. at 1274 n.8; see also Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753 (11th Cir. 1997) (holding that one party's breach does not automatically rescind a contract simply because that breach might give the other party the right to rescind); 3 Melvin B. Nimmer, Nimmer on Copyright § 10.15[A] at 10-120 (2004) ("[T]he license is terminated and the copyright proprietor may hold his former grantee liable as an infringer for subsequent use of the work. Failing such rescission . . . the grant continues in place . . . until such time as the copyright owner exercises his entitlement to rescind.").

Third, Section 4 of the GPL provides that in the event of a licensee's breach and termination, sublicenses previously granted by the licensee remain in full force and effect. Since the GPL effectively ratifies sublicenses granted prior to the alleged breach, IBM cannot complain that the initial grant was unauthorized.

10

### B.     SCO's Licensing of UNIX Did Not Breach the GPL.

Nothing in the GPL prohibits SCO from licensing UNIX. Nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights or other intellectual property. To the contrary, Section 7 of the GPL expressly contemplates and warns of that possibility. Even if a license to SCO's UNIX intellectual property were necessary to the use the of Linux, nothing in the GPL prohibits SCO from offering such a license. (SCO has not offered a UNIX license to anyone who received Linux from SCO. There can be no argument that SCO has violated Section 6 of the GPL by imposing further restrictions on any party to who received Linux from SCO.)

## II.    SCO HAS NOT INFRINGED IBM'S COPYRIGHTS

IBM's Eighth Counterclaim for copyright infringement is based on the argument that SCO some how breached the GPL in August 2003, and that this rendered SCO's prior redistribution of Linux retroactively unlawful. IBM's claim fails for at least three reasons. First, SCO's redistribution of Linux is authorized by the GPL. Second, nothing in the GPL supports IBM's claim of breach and retroactive termination/infringement. Third, under Tenth Circuit law, because Linux is an infringing derivative work of SCO's UNIX System V, IBM cannot assert rights in Linux against SCO.

### A.     The GPL Authorized SCO's Re-Distributions of Linux.

IBM's copyright infringement claim is based on SCO re-distribution of Linux. The GPL grants the public at large "freedom to distribute copies" of the software licensed by it and to "charge for this service if [the licensee] wish[es]." (GPL Preamble ¶ 2.) Section 1 of the GPL authorizes the public to "copy and distribute verbatim copies" of source code licensed thereunder, subject only to certain notice publication requirements. (GPL § 1.) SCO complied with these requirements, and thus was entitled to copy any material IBM licensed under the GPL.

11

Section 1 also expressly permits the charging of fees for transfer of the software and for warranty protection. There is nothing in the GPL to indicate that other types of fees are prohibited. Such a reading of the GPL would be inappropriate and even "dangerous" in the construction of contracts and statutes. Ford v. United States, 273 U.S. 593, 612 (1927); Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1034-35 & n.26 (10th Cir. 2003). In addition, Section 2(b), which prohibits licensing fees where the licensee distributes modified works, shows that the drafters knew how to write a fee prohibition where such was intended.

Section 3 authorizes a party to copy and distribute the licensed works verbatim in object code or executable form under the terms of Section 1, as long as the party accompanies it with the source code or with an offer to provide the source code. SCO has complied fully with this condition. IBM does not dispute the fact that the material it allegedly owned was copied and distributed verbatim. Section 3 allows a licensee to comply by "offering access to copy from a designated place" (such as an internet site). The undisputed evidence shows that SCO offered customers access to Linux source code files that contain verbatim copies of IBM's allegedly copyrighted material via SCO's website.

SCO complied with all of the GPL's requirements and therefore was authorized to distribute all of the works allegedly copyrighted by IBM that IBM contributed to Linux.

> B. **Nothing in the GPL Supports IBM's Claim Of Breach and Retroactive Termination.**

As noted above, IBM's claim that SCO somehow breached the GPL by licensing UNIX finds no support in the GPL. Nothing in the GPL prohibits SCO from licensing its intellectual property. Even if there were a breach, nothing in the GPL supports the concept of retroactive termination. To the contrary, Section 4 of the GPL provides that in the event of a licensee's

breach and termination, sublicenses previously granted by that licensee remain in full force and effect. Since the GPL effectively ratifies sublicenses granted prior to the alleged breach, IBM cannot complain that the initial grant was unauthorized. The premise of IBM's copyright infringement claim – breach of the GPL and retroactive termination – fail as a matter of law.

> C. **IBM's Proposed Interpretation of the GPL Would Impermissibly Interfere with Enforcement of Intellectual Property Rights and Would Raise Serious Antitrust Concerns.**
>
> 1. **The GPL Should Not Be Read to Interfere with SCO's Right to Enforce Its Own Intellectual Property Rights.**

The above arguments easily suffice to resolve the pending motions, but there are additional reasons why IBM's position must be rejected. Nothing in the GPL expressly forbids a party from licensing its own software or entering into settlements to resolve potential infringement of such rights. Any construction of the GPL to do so should be rejected as inconsistent with the public policy in favor of protecting intellectual property, San Juan New Materials High Tech, Inc. v. Int'l Trade Comm'n, 161 F.3d 1347, 1363 (Fed. Cir. 1998); Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988), as well as the public policy favoring and encouraging settlements, Grady v. de Ville Motor Hotel, 415 F.2d 449, 451 (10th Cir. 1969); Grundberg v. Upjohn Co., 140 F.R.D. 459, 468 (D. Utah 1991); see also Justine Realty Co. v. Am. Nat'l Can Co., 976 F.2d 385, 391 (8th Cir. 1992).

> 2. **The GPL Should Not Be Read to Allow a Competitor to Regulate What May Be Charged for an Intellectual Property License.**

In previously arguing that SCO breached the GPL by collecting "royalties and licensing fees in excess the fees permitted by the GPL," IBM has sought in essence an interpretation for the GPL fixes limits on the amounts that may be charged for unmodified works, even though the parties to the agreement are competitors. Agreements between competitors that fix a maximum

13

price that may be charged for products are per se illegal under antitrust law. NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 133 (1998); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 218 (1940).

In addition to its inapplicability shown above, Section 2 (the only GPL provision requiring licensing "at no charge") is illegal and unenforceable. The general counsel for the Open Source Initiative acknowledges in his recent treatise: "There is also a problem that may prevent enforcement of the GPL's "at no charge" provision. It may be an illegal restraint of trade in some countries. Ordinarily, companies are allowed to set their own prices, and it is improper for a GPL licensor to restrain that any way." L. Rosen, Open Source Licensing 132 (2004), available at http://www.phptr.com/content/images/0131487876/samplechapter/0131487876_ch06.pdf.

It is a "well settled principle that where a contract is susceptible of two interpretations, preference will be given to the interpretation which does not violate the law." Bd. of Dirs. And Officers, Forbes Fed. Credit Union v. Nat'l Credit Union Admin., 477 F.2d 777, 784 (10th Cir. 1973); accord NLRB v. Local 32B-32J Serv. Employees Int'l Union, 353 F.3d 197, 202 (2d Cir. 2003); Guthart v. White, 263 F.3d 1099, 1104 (9th Cir. 2001). Accordingly, the Court should not construe the GPL as IBM suggests.

## **CONCLUSION**

SCO respectfully submits, for the reasons set forth above, that the Court should grant SCO's motion for partial summary judgment and dismiss the Sixth, Seventh and Eighth Counterclaims.

/s/  Brent O. Hatch
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Stuart H. Singer (admitted pro hac vice)
Edward Normand (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

15

**CERTIFICATE OF SERVICE**

Plaintiff, The SCO Group, Inc. hereby certifies that a true and correct copy of the foregoing SCO's Memorandum in Support of the foregoing SCO's Motion for Summary Judgment on IBM's Sixth, Seventh and Eighth Counterclaims was served on defendant International Business Machines Corporation on the 25th day of September, 2006, by CM/ECF to the following:

> David Marriott, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, NY 10019
>
> Donald J. Rosenberg, Esq.
> 1133 Westchester Avenue
> White Plains, New York 10604
>
> Todd Shaughnessy, Esq.
> Snell & Wilmer L.L.P.
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

/s/   Brent O. Hatch