# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
ALLEGRO CORPORATION, an Oregon
corporation, Plaintiff,
v.
ONLY NEW AGE MUSIC, INC., a California
corporation; et al., Defendants.
No. Civ. 01-790-HU.

Jan. 23, 2003.

John F. Neupert, Miller Nash, LLP, Portland, OR, for
Plaintiff.
Brian A. Rishwain, Neville L. Johnson, Johnson &
Rishwain, LLP, Los Angeles, CA, David W.
Axelrod, Michael A. Cohen, Schwabe Williamson &
Wyatt, Portland, OR, Gabriel J. Fischbarg, New
York, NY, for Defendants.

*AMENDED ORDER*
JONES, J.
*1 Magistrate Judge Dennis James Hubel filed
Findings and Recommendation (# 92) on October 4,
2002, in the above entitled case. The matter is now
before me pursuant to 28 U.S.C. § 636(b)(1)(B) and
Fed.R.Civ.P. 72(b). When either party objects to any
portion of a magistrate judge's Findings and
Recommendation, the district court must make a *de
novo* determination of that portion of the magistrate
judge's report. *See* 28 U.S.C. § 636(b)(1);
*McDonnell Douglas Corp. v. Commodore Business
Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981),
*cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71
L.Ed.2d 461 (1982).

Plaintiff and defendants have timely filed objections.
I have, therefore, given *de novo* review of Magistrate
Judge Hubel's rulings.

I find no error. Accordingly, I ADOPT Magistrate
Judge Hubel's Findings and Recommendation (# 92)
dated October 4, 2002, in its entirety as follows:

Allegro's motion (# 15) for summary judgment on its
first claim for relief is denied, and defendants' motion
(# 20) for summary judgment is denied.

Allegro motion (# 15) for summary judgment on its
second claim for relief is denied and defendants'
motion (# 20) for summary judgment on this claim is
granted.

Defendants' motion (# 20) for summary judgment on
Allegro's third claim for relief is granted.

Allegro's motion (# 15) for summary judgment on
defendants' first counterclaim is granted with respect
to the changes of title and incorrect copyright notices,
and denied with respect to derivative works, and that
defendants' motion (# 20) for summary judgment is
denied.

That Allegro's motion (# 15) for summary judgment
on defendants' second counterclaim is denied and
defendants' motion (# 20) for summary judgment is
denied.

Allegro's motion (# 15) for summary judgment on
defendant's third counterclaim is denied and
defendants' motion (# 20) for summary judgment is
denied.

Allegro's motion (# 15) for summary judgment on
defendants' fourth counterclaim is granted, and
defendants' motion (# 20) for summary judgment is
denied.

Allegro's motion (# 15) for summary judgment on
defendants' fifth counterclaim is granted with respect
to digitalization of the recordings over the Internet,
and otherwise denied, and defendants' motion (# 20)
for summary judgment is granted with respect to the
copyright notices and the title changes and otherwise
denied.

Allegro's motion (# 15) for summary judgment on
defendants' eighth counterclaim is denied and
defendants' motion (# 20) for summary judgment is
granted.

Allegro's motion (# 33) for leave to file amended
reply is granted.

IT IS SO ORDERED.


FINDINGS AND RECOMMENDATION
HUBEL, Magistrate J.
Plaintiff Allegro Corporation (Allegro) brought this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

action for declaratory and injunctive relief against Only New Age Music, Inc. (ONAM) and its president, Suzanne Bell-Doucet. Allegro requests 1) a declaration from the court that Allegro has not infringed defendants' copyrights by the manner in which it reproduced and sold sound recordings obtained under licensing agreements with ONAM and Bell-Doucet; 2) an injunction prohibiting the defendants from interfering with Allegro's rights under the licensing agreements; and 3) nominal and punitive damages for tortious interference with its contractual relationships.

**\*2** Defendants assert counterclaims for 1) copyright infringement, 2) false designation under Section 43(a) of the Lanham Act, 3) common law unfair competition, 4) violation of the Oregon Fair Trade Practices Act (UTPA), 5) breach of the licensing agreements, 6) an accounting, 7) constructive trust, and 8) declaratory judgment that the licensing agreements are terminated.

In October 2001, all parties moved for partial summary judgment. Defendants seek summary judgment in their favor on all of their counterclaims except the sixth and against all three of Allegro's claims. Allegro moves for summary judgment in its favor on its first and second claims for relief and against defendants on their first through eighth counterclaims, except that portion of the sixth claim relating to an accounting. Allegro has also filed a motion for leave to amend its reply to defendants' counterclaims, to add statute of limitations defenses.

The court has heard oral argument on the motions for partial summary judgment. On March 1, 2002, the court was advised by defendant Suzanne Bell-Doucet, through local counsel, that a declaration purporting to be hers, filed on October 29, 2001 (the October 29 declaration), contained false statements and a forged signature. Defendants' local counsel represented to the court that Ms. Bell-Doucet had neither seen nor signed the October 29 declaration, and that she had also neither seen nor signed discovery responses filed on her behalf. Defendants requested leave to file amended summary judgment papers once they obtained defendants' case files from Mr. Fischbarg. The court held two status conferences with counsel for all parties in March 2002 and granted the request to file amended summary judgment papers.

On August 27, 2002, Ms. Bell-Doucet filed a supplemental declaration in support of defendants' motion for partial summary judgment and in opposition to Allegro's motion for partial summary judgment. She states in the supplemental declaration that the October 29 declaration was neither reviewed nor signed by her before being filed. She further states that she was not provided with a copy of the October 29 declaration until late November 2001. Ms. Bell-Doucet states that a reply declaration filed on December 11, 2001 was also neither reviewed nor signed by her, but that she adopts the statements contained in that reply declaration. Thus, the supplemental declaration filed on August 27, 2002, is intended to correct the October 29 declaration.

Allegro objects to the supplemental declaration in its entirety on the ground that the October 29 declaration was an exhibit in Ms. Bell-Doucet's deposition, taken on December 6, 2001, and that Ms. Bell-Doucet failed to disclose any concerns about that document during her deposition or before the oral argument on December 20, 2001. Allegro asserts that Ms. Bell-Doucet should not now be permitted to substantially supplement the summary judgment record. In addition, Allegro objects to and moves to strike portions of the supplemental declaration that contain legal arguments and conclusions, and those portions which raise significant facts not contained in the October 29 declaration.

**\*3** Ms. Bell-Doucet's entire supplemental declaration should not be stricken. However, I agree that those portions of the supplemental declaration which contain legal arguments and conclusions, and those portions which refer to facts not part of the summary judgment record at the time the cross motions were filed, should be stricken. Accordingly, the following portions of Ms. Bell-Doucet's supplemental declaration are stricken:

Paragraph 2, lines 23-28: references to compact discs in the "Serenity," "Tranquility," and "National Park" series, which were not part of the original summary judgment record.

Paragraph 5, lines 15-18: references to "Sounds of Nature" series, Valmark, "Tranquility" series, and Columbia Rivers; boldface references in lines 19-23; boldface references in lines 25-27. All of these references contain statements of fact not part of the original summary judgment record.

Paragraphs 6 and 7: boldface references, which contain statements of fact not part of the original summary judgment record.

All of paragraph 11 except for the first four lines.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                   Page 3
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

After the words, "However, Loudeye," all references are to facts not part of the original summary judgment record. The reference to Exhibit 15, Bell-Doucet Reply Declaration, is to a document which is inadmissible because it is unauthenticated, unsigned, and incomplete.

All of the first paragraph 12 (plaintiffs have mistakenly included two paragraphs numbered 12), which contains statements of fact not part of the original summary judgment record.

All of paragraphs 13, 14, 15, 16, 17 and 18, which contain statements of fact not part of the original summary judgment record.

All of paragraph 19, which contains legal argument.

All of paragraph 20, which contains statements of fact not part of the original summary judgment record and legal argument.

All of paragraph 21, which contains legal argument.

All of paragraph 22, which contains statements of fact not part of the original summary judgment record.

All of paragraph 23, which contains legal argument.

All of paragraph 24, which contains legal argument.

All of paragraph 25, which contains legal argument and, to the extent that it describes Ms. Bell-Doucet's state of mind at the time she entered into the licensing agreements, is irrelevant.

All of paragraph 26, which contains argument.

All of paragraph 27, which contains facts not part of the original summary judgment record and argument.

All of paragraphs 28, 29 and 30, which constitute legal argument.


Facts

Allegro, a music distributor, entered into four separate audio licensing agreements with ONAM and Bell-Doucet on February 4, 1997 (the February licensing agreement), June 24, 1997 (the June licensing agreement), October 1, 1998, (the October licensing agreement) and December 15, 1998 (the December licensing agreement). The licensing

agreements granted Allegro a nonexclusive perpetual license to use the master recordings listed on the attached Schedule A ("the Masters") in the Recording, manufacture and sale of Records throughout the World (the "Territory"). The term "Records" as used in this Agreement includes any means, whether now known or unknown, of reproduction of sound, embodying the Masters.

*4 Declaration of Vincent Micallef in Support of Allegro Corporation's Motion for Partial Summary Judgment (Micallef Declaration), Exhibits 1, 2, 3 and 4, ¶ 1. The licensing agreements also require that at the time the master recordings (masters) are delivered to Allegro, the licensor, ONAM "shall supply to Allegro in writing the correct title(s) of the Recorded work(s), the name(s) of the author(s), composer(s), and publisher(s) thereof, together with any additional copyright information known to Licensor," and that the licensee, Allegro, "shall give customary credit on each Record to Licensor regarding Licensor's copyrights hereunder." *Id.* at ¶ 4.

The masters contain nature sounds such as ocean waves and storms, and some contain music as well. The licensing agreements all state that "[a]ny mechanical royalties owing due to the manufacture and sale of Records by Allegro in the Territory shall be paid by Allegro ." *Id.* at ¶ 3. The June and December licensing agreements contain waivers signed by Bell-Doucet, renouncing such mechanical royalties. The February and October licensing agreements contain no waivers. Allegro asserts that the absence of waivers in the February and October agreements is due to the fact that the masters listed in those agreements contained only nature sounds and Allegro expected Bell-Doucet to know that she was not entitled to royalties on nature sounds "because it is widely recognized in the industry that mechanical royalties do not apply to nonmusical works." Micallef Declaration, ¶ 5. Bell-Doucet asserts that the waivers in the June and December agreements were specifically negotiated with Allegro, because the parties understood that otherwise she would be entitled to royalties, as she was under the February and October licensing agreements. Declaration of Suzanne Bell-Doucet in Support of Cross Motion for Summary Judgment, ¶ 9 (Bell-Doucet Declaration).

Allegro used the masters licensed from defendants to manufacture "records" (*i.e.,* compact discs and other embodiments of sound) for sale to wholesalers and retailers. To do so, Allegro engaged the services of CINRAM International, Inc., a large manufacturer of prerecorded CDs and other multimedia. Allegro gave

the masters to CINRAM, along with labeling materials, and CINRAM manufactured the records.

Allegro asserts that the records manufactured and sold under the licensing agreements embodied the masters in their entirety, without alteration except for changes of title on 25 of the masters (10 or more of the masters were given more than one new title-so, for example, a master titled "Southern Swamp" was released by Allegro as "The Everglades" and also as "Tropical Dawn," and a master titled "Rainstorms" was released as "Soothing Sleep" and "Rainshowers.") Micallef Declaration, ¶ ¶ 8, 9 and Exhibit 5, p. 1. Several discs comprising a series entitled "Sounds of Nature" ("The Rainforest," "Southern Swamp," "Desert Oasis," "Forest Morning," "Pine Forest," and "A Night in the Canyon"), were re-released as a "National Park" series, and re-titled, respectively, "Olympic," "The Everglades," "Death Valley," "Blue Ridge Parkway," "Yosemite," and "Grand Canyon," although none of these recordings was actually made in the National Park for which it was named. Micallef Declaration, Exhibit 6, Bell-Doucet Reply Declaration, Exhibit 12, p. 5, 29.

**\*5** However, Bell-Doucet declares that Allegro altered certain of the re-titled masters by deleting portions of them and creating new fade-outs and fade-ins, thereby creating and distributing derivative works without permission. Bell-Doucet Declaration, ¶ 4; Reply Declaration of Suzanne Bell-Doucet ¶ ¶ 2-4 (Bell-Doucet Reply Declaration). She contends that the following masters were altered as well as retitled: "Balance" (originally titled and first released by Allegro as "Voice of the Wind"), "Renew," (originally titled and first released by Allegro as "Tijuca Falls"), and "Inspire" (originally titled and first released by Allegro as "Cosmic Night.")

Bell-Doucet further declares that Allegro falsely identified itself as the copyright holder for the following of defendants' works: "Rainstorms" (re-released as "Soothing Sleep"), "Ocean Waves" (re-released as "Dreamscape"), and "Heartbeat" (re-released as "Tender Heart Beat"), and that Allegro falsely identified other entities, such as Columbia River Entertainment Group and VMK, as copyright holders on other recordings ("River of Life," "Morning in the Forest," "Forever Rain," "Bayou Plaisance," "Desert Dreams," "Malibu Beach," "Secret Lake," "Mountain Song," "Sacred Forest," "Voice of the Wind," "Cosmic Night," "Tijuca Falls", "Ocean Waves," "The River," "Mountain Ranch," "Summer Nights," "Desert Oasis," "Forest

Morning," "Pine Forest," "The Rain Forest," and "Rainstorms"). Bell-Doucet Reply Declaration, ¶ 5.

Bell-Doucet has proffered paper inserts and CDs showing that Allegro Corporation, Columbia River Entertainment Group, and VMK are identified as the copyright holders for the above-named recordings. See Bell-Doucet Reply Declaration, Exhibits 7, 8 and 16. Columbia River Entertainment is an Allegro-owned brand. Micallef Declaration, Exhibit 6, p. 2; Bell-Doucet Reply Declaration, Exhibit 10, p. 17.

Defendants assert that they contacted Allegro to complain about the title changes and the incorrect copyright notices, but that Allegro refused to discontinue its practices. On May 11, 2001, without prior notice to Allegro, defendants sent a letter to CINRAM stating that Allegro's license had been terminated and requested the immediate return of the masters and "any derivatives of those masters." The letter said, "We have never authorized CINRAM or Allegro to create derivatives of our masters with changes of the master recordings. Your manufacture and distribution of any such recordings constitutes copyright infringement." Micallef Declaration, Exhibit 6, p. 1. CINRAM suspended production of the disputed records.

On May 30, 2001, Allegro filed its complaint. Defendants answered the complaint and asserted counterclaims on July 17, 2001. Allegro filed a reply to the counterclaims on August 24, 2001, and requests leave to file an amended reply.

### Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

**\*6** The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

genuine issue for trial. *Id.* at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 16(a). This rule represents a "strong policy permitting amendment." *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 798 (9th Cir.1991). The liberality of the rule is qualified by the requirement that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile. *Bowles v. Reade,* 198 F.3d 752, 757 (9th Cir.1999).

Discussion

I. Cross motions for summary judgment

A. Breach of licensing agreements

Principles of contract law are generally applicable in the construction of copyright assignments, licenses, and other transfers of rights. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.08 (2001) (*Nimmer* ). Construction focuses on the intent of the parties. *Id., citing Barris Industries, Inc. v. Worldvision Enterprises, Inc.,* 875 F.2d 1446, 1449 (9th Cir.1989) ("the question of entitlement must ultimately turn on what the parties intended when they entered into the contract.")

Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 398 (9th Cir.1988). Interpretation of a contract is a matter of law, including whether the contract is ambiguous. *Id.* In interpreting a contract, the court relies on state law to provide the canons of construction, but only to the extent they do not interfere with federal copyright law or policy. *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1088 (9th Cir.1989).

This is a diversity case, and the licensing agreements contain no choice of law provision. The court therefore applies Oregon contract law insofar as it conforms to federal copyright law or policy. Oregon courts subscribe to the objective theory of contracts.

*Harty v. Bye,* 258 Or. 398, 403, 483 P.2d 458 (1971); *see also City of Canby v. Rinkes,* 136 Or.App. 602, 902 P.2d 605 (1995) (settlement agreement valid even if parties did not have same subjective understanding). The objective theory holds that a contract will be defined by what the parties said and not by what the parties were thinking. *Oakridge Cablevision v. First Interstate Bank,* 65 Or.App. 640, 647-48, 673 P.2d 532 (1983).

**\*7** To interpret a contractual provision, the court first examines the text of the disputed provision, in the context of the document as a whole. *Yogman v. Parrott,* 325 Or. 358, 361, 937 P.2d 1019 (1997) (en banc). If the provision is clear, the analysis ends. *Id.* In the absence of an ambiguity, the court construes the words of a contract as a matter of law. *Id.*

1. *Copyright notices*

The licensing agreements require Allegro to "give customary credit on each record to Licensor regarding Licensor's copyrights hereunder." The defendants have proffered evidence that Allegro has, for a number of recordings, designated itself or some entity other than ONAM or Suzanne Bell-Doucet as the copyright holder for the sound recordings, and that it has stated different copyright dates for the same master when re-issuing it under different titles.

The paper inserts for the CDs entitled "River of Life," "Morning in the Forest," "Cypress Magic," "Forever Rain," "Bayou Pleasance," "Desert Dreams," "Malibu Beach," "Secret Lake," "Mountain Song," "Sacred Forest," "Voice of the Wind," "Cosmic Night," and "Tijuca Falls," display a label for Columbia River Entertainment Group next to the following text:
Produced by Suzanne Doucet and Chuck Plaisance. © 1998 Only New Age Music (BMI) [Illegible character] Columbia River Entertainment Group 1998. Made in the USA. Executive Producer Vincent Micallef Allegro Corporation.

Since ordinarily, a [Illegible character] designates the copyright holder of a sound recording, while a © designates the copyright holder for musical or literary work embodied in a sound recording, or in the printed text or art work accompanying the sound recording,<sup>FN1</sup> this label is incorrect. Also incorrect is the label on a CD called "Sounds of Nature Ocean Waves," which states:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 795   Filed 09/25/06   PageID.9827   Page 7 of 16

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

FN1. See 2 *Nimmer* § 7.07, n. 5: "There are at least three reasons for prescribing use of the symbol [Illegible character] rather than © in the notice to appear on phonorecords of sound recordings. Aside from the need to avoid confusion between claims to copyright in the sound recording and in the musical or literary work embodied in it, there is also a necessity for distinguishing between copyright claims in the sound recording and in the printed text or art work appearing on the record label, album cover, liner notes, et cetera."

Produced by Suzanne Doucet & Chuck Plaisance © 1997 Only New Age Music (BMI) [Illegible character] VMK 1997. Made in the USA. Executive Producer: Joe Micallef, Allegro Corporation.

For the CDs titled "Dreamscape," "Tender Heartbeat," and "Soothing Sleep," the copyright notice on both the paper insert and the disc states, incorrectly, "This compilation [Illegible character], © by Allegro Corporation."

Other incorrect designations are established by one of Allegro's exhibits, a letter from defendants' attorney, Gerald B. Weiner, to Micallef, which states that the copyright notice on the "National Park" series of CDs reads [Illegible character] 1999 Only New Age Music, when it should read [Illegible character] 1997 Only New Age Music. Micallef Reply Declaration, Exhibit 2, p. 1.

Defendants have established that by these incorrect copyright notices, Allegro breached the express requirement of the licensing agreements that it "give customary credit ... regarding Licensor's copyrights" to defendants on each record. Summary judgment for defendants should be granted.

2. *Retitling, issuing recordings under more than one title, making deletions and additions*

**\*8** The licensing agreements give Allegro the nonexclusive right to "use" the masters "in the recording, manufacture and sale" of records. Allegro contends that the use of the word "use" in the licensing agreements is clear and unambiguous, and must be interpreted as conferring "considerable latitude" to record, manufacture and sell, without restriction, recordings made from the masters-including the use of new titles and the use of more than one title for the same master. Allegro relies on a

Seventh Circuit case, *Kennedy v. National Juvenile Detention Ass'n,* 187 F.3d 690 (7th Cir.1999), where the court held that the word "use" conferred a license to prepare derivative works.

In *Kennedy,* plaintiff and defendant had entered into an agreement under which plaintiff would provide consulting services, conduct a study, and submit a written report of his findings. Plaintiff submitted a draft report and made some minor revisions at defendant's request for no additional compensation. A few months later, defendant requested that plaintiff make more substantial revisions to the report, offering to pay him $10,000 to do so. Plaintiff refused; he subsequently applied to register a copyright in his work. Meanwhile, defendant requested that plaintiff provide a disk with his copy of the final report, which plaintiff did. When the consulting contract expired, defendant hired another individual to supervise the completion of the report. Defendant published the report, with its own revisions.

The issue before the court was whether the defendant infringed plaintiff's copyright by creating a derivative work from the original report without permission.

The court found that the defendant had an implied nonexclusive license in the report. The conditions for an implied nonexclusive license are created when 1) the licensee requests the creation of a work; 2) the licensor creates the work and delivers it to the licensee who asked for it; and 3) the licensor intends that the licensee copy and distribute the work. 187 F.3d at 694, *citing Effects Assoc. Inc. v. Cohen,* 908 F.2d 555, 558-59 (9th Cir.1990).

The court then construed the implied nonexclusive license under Wisconsin contract law. The terms of the consulting agreement gave the defendant the right to reproduce, publish and "use" plaintiff's report. Using the canon of construction that a contract should be interpreted so as to ascribe meaning to all of its terms, the court held that the term "use" had to be interpreted to give the defendant rights beyond those of reproduction and publication. Accordingly, the court construed "use" to confer a right to prepare derivative works.

I am not persuaded that the *Kennedy* case applies here. In the licensing agreements between these parties, the word "use" is followed by the phrase "*in* the recording, manufacture and sale of records." The phrase modifies the "use" of the masters, and thereby narrows the meaning of "use." In *Kennedy,* however,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the consulting agreement conferred the rights to
"reproduce, publish and use." The use of the word
"and" required the *Kennedy* court to construe "use"
as in addition to, or beyond, "reproduce" and
"publish."

**\*9** Because, for the licensing agreements in this case,
"use" is not intended expansively, but rather is
narrowed by the phrase "in recording, manufacture
and sale," *Kennedy* does not support Allegro's
argument that "use" should be construed to broaden
the scope of the license to something more than the
"recording, manufacture and sale of records."

The defendants, on the other hand, argue that a
copyright license must be construed in accordance
with the purposes underlying federal copyright law,
*Cohen v. Paramount Pictures Corp.,* 845 F.2d 851,
854 (9th Cir.1988), chief among which is the
protection of the author's rights. *Id.* Copyright
licenses are therefore assumed to prohibit any use not
authorized. *S.O.S.,* 886 F.2d at 1088. The defendants
point out that the licensing agreements do not
explicitly grant Allegro the right to change the titles
of the masters, to release a single master under more
than one title, or to modify the masters by deleting,
adding or changing the sounds contained in them.
They argue that therefore, the licensing agreements
must be construed to prohibit those uses. See *S.O.S.,*
886 F.2d at 1088 n. 8 (modification of the work is a
"use" otherwise reserved to the copyright holder).
They further argue that because issuing a single
master under more than one title and with more than
one copyright date is misleading and a fraud upon the
public, the licensing agreements cannot as a matter of
policy be construed to authorize such a use.

I agree with the defendants. The language of the
licensing agreements does not expressly confer on
Allegro the right to change titles, issue masters under
more than one title or copyright date, or to delete, add
to, or change the sounds contained within them. Nor
can the terms of the licensing agreements be said to
confer such broad rights by necessary implication.

Allegro is not entitled to an injunction prohibiting the
defendants from interfering with its rights under the
licensing agreements, nor to a judicial declaration
that it has not breached the licensing agreements, nor
to an award of nominal or punitive damages for
defendants' "interference" with its contractual rights.
Defendants are entitled to summary judgment on
their claim that re-titling and reissuing the masters
constitutes breach of the licensing agreements, and
on their claim that the incorrect copyright notices

breach the licensing agreements. However, because
there is a fact issue on whether, and to what extent,
masters were modified (see discussion below),
defendants are not entitled to summary judgment on
the issue of whether Allegro breached the licensing
agreements by making deletions, additions or
changes to the masters.

### 2. *Digitalization of recordings over the Internet*

Defendants assert that Allegro has advertised records
over the Internet in a manner which allows the user to
click on an icon and listen to them, and that such
digitalization of the masters was not permitted by the
licensing agreements. See Reply Declaration of Bell-
Doucet, Exhibit 17 (showing internet advertisements
by Amazon.com, in the United States and France,
with the invitation to "listen to samples.")

**\*10** According to Micallef, the digitalization of the
masters was intended to be a way of promoting and
marketing the masters on the Internet; he states that
each sample was only 30 seconds of streaming audio,
which cannot be downloaded by a consumer.
Micallef Reply Declaration ¶ 4. Allegro argues that
the language of the licensing agreements, which
permits the use of the masters "in the ... sale of
records" imposes no restrictions on the method of
sale, and that the term "record" as defined in the
licensing agreements encompasses Internet
digitalization. I agree, and conclude that
digitalization for purposes of advertising and selling
the recordings over the Internet falls within the
compass of the licensing agreements. Allegro is
entitled to summary judgment on this issue.

### B. Copyright infringement

#### 1. *Changes of title, deletions, and additions*

The existence of a license creates an affirmative
defense to a claim of copyright infringement.
*Worldwide Church of God v. Philadelphia Church of
God,* 227 F.3d 1110, 1114 (9th Cir.2000). *See also
Effects,* 908 F.2d at 559. To prevail on their
counterclaim of copyright infringement under a
license, defendants must prove 1) ownership of
copyright, and 2) "copying" of protectible expression
beyond the scope of the license. *S.O.S.,* 886 F.2d at
1085. *See also Feist Publications, Inc. v. Rural
Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111
S.Ct. 1282, 113 L.Ed.2d 358 (1991) (to prevail on a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claim of copyright infringement, plaintiff must show that it holds a valid copyright on the work in question and that the defendant copied a protectible element of the work).

Protection given to copyrights is entirely statutory and is set forth in 17 U.S.C. § 106. *See Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Such protection is limited to exclusive rights held by a copyright owner. *Stewart v. Abend,* 495 U.S. 207, 220, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Thus, the word "copying" is "shorthand for the infringement of any of the copyright owner's five exclusive rights," described at 17 U.S.C. § 106. *SOS,* 886 F.2d at 1085, n. 3. [FN2] When a licensee exceeds the scope of a license, it also infringes the owner's copyright. *Id.* at 1087; *see also MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 517 (9th Cir.1993).

> FN2. The five rights are 1) to reproduce the copyrighted work in copies or phonorecords; 2) to prepare derivative works based upon the copyrighted work; 3) to distribute copies or phonorecords to the public by sale or other transfer of ownership, or by rental, lease, or lending; 4) to perform the copyrighted work publicly; and 5) to display the copyrighted work publicly). *Id.* The display right applies only to copies, not to phonorecords. 2 *Nimmer* § 8.20.

A sound recording copyright does not attach to the underlying work *per se,* but to the aural version of such work as fixed on the material object. *Nimmer* § 2.10[A][2]. So, in this case, defendants' copyright in the masters attaches, not to the underlying music and/or nature sounds, but to those sounds as fixed in the masters. The act of capturing and electronically processing sounds, and compiling and editing them to make the final sound recording, satisfies the copyright requirements for "authorship" of a sound recording. *Id.* at § 2.10[A] [2][b].

Among the five exclusive rights granted to copyright holders is the right "to prepare derivative works based upon the copyrighted work." Defendants assert that Allegro's re-titling, selling masters under more than one title, and modifying the masters by deletions and additions constitutes the creation of derivative works and infringes the copyrights.

**\*11** A "derivative work" is generally defined as

a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101. As applied to sound recordings, a derivative work is one in which the actual sounds fixed in the sound recording are rearranged, re-mixed, or otherwise altered in sequence or quality. 17 U.S.C. § 114(b).

Allegro contends that the recordings sold under different titles are otherwise exact replicas of the sound recordings contained in the masters, without rearrangement, re-mixing, or other alteration in sequence or quality. Thus, it argues, the re-release of the masters under different, or even two different, titles does not constitute the creation of a derivative work.

I agree with Allegro that the mere changing of a title, or the release of a single master under more than one title, does not constitute creation of a derivative work because it does not affect the sequence or quality of the sounds fixed in the recording. Allegro is entitled to summary judgment on this issue.

The defendants argue, however, that Allegro's claim that its distributions were exact replicas of the masters is false. Bell-Doucet asserts in her declarations that Allegro has altered at least three of the masters by deleting parts of them and by creating new fade-ins and new fade-outs. These three masters, "Voice of the Wind," "Tijuca Falls," and "Cosmic Night," were registered with the Copyright Office on October 1, 1999. If Bell-Doucet's assertion is credited, then Allegro's deletions and additions could fall within the definition of derivative works.

Because the court does not make credibility determinations at the summary judgment stage, it cannot on the current record determine whether "Voice of the Wind," "Tijuca Falls," and "Cosmic Night" were modified by Allegro so as to constitute derivative works. Put another way, the process of listening to two recordings and deciding whether there has been a deletion or alteration is a fact determination. I cannot say that no reasonable finder of fact could disagree with the defendant.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 9
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Accordingly, Allegro is not entitled to summary judgment on its request for a declaration that it has not infringed defendants' copyrights and defendants are not entitled to summary judgment that Allegro infringed their copyright by creating derivative works.

### 2. *The copyright notices*

Defendants assert that Allegro infringed their copyrights by either omitting or falsifying copyright information displayed on the CDs and their paper inserts. Allegro argues that because the Copyright Act does not require the placement of copyright notices on sound recordings, see 17 U.S.C. § 402(a)( "a notice of copyright *may* be placed on publicly distributed phonorecords of the sound recording") (emphasis added), any alleged failure to affix a copyright notice on the records does not constitute a violation of the Copyright Act.

*12 Allegro also points out that defendants cannot maintain a copyright action with respect to the recordings that were not registered as of the time this action was filed. *See* 17 U.S.C. § 411(a); *Lyra Productions/America, Inc. v. Allegro Corp.*, No. 98-6284-HU (D. Or. April 25, 2001).

Defendants counter that while a copyright notice need not appear on phonorecords, when such a notice does appear, it
*shall* consist of the following three elements: (1) the symbol [Illegible character] (the letter P in a circle); and (2) the year of first publication of the sound recording; and (3) the name of the owner of copyright in the sound recording, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner; if the producer of the sound recording is named on the phonorecord labels or containers, and if no other name appears in conjunction with the notice, the producer's name shall be considered a part of the notice.

(Emphasis added). Section 402(c) provides that the notice "shall be placed on the surface of the phonorecord, or on the phonorecord label or container, in such manner and location as to give reasonable notice of the claim of copyright." Defendants argue that Allegro violated this provision because it affixed copyright notices that did not correctly designate the copyright holder or the year of first publication.

However, defendants have cited no authority to the

court for the proposition that an incorrect copyright notice constitutes copyright infringement, particularly when, as here, the copyrighted work is being copied and distributed under a license. Incorrect copyright notices do not on their face satisfy the prerequisites for copyright infringement because they do not constitute "copying" and do not implicate any of the exclusive rights enumerated in 17 U.S.C. § 106. Even with respect to the recordings registered before this action was commenced, defendants are not entitled to summary judgment on their claim for copyright infringement arising out of the incorrect copyright notices.

### C. Violation of the Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device" on goods or in connection with services. It provides:
Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*13 15 U.S.C. § 1125(a)(1). The purpose of the Lanham Act is to prevent individuals from misleading the public by putting their competitors' work forward as their own. *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir.1990).

Allegro asserts that § 43 of the Lanham Act is inapplicable to this case because § 43 is limited to only two kinds of unfair competition: "passing off," and false advertising. Allegro asserts that its actions constitute neither because 1) Allegro acknowledged that the defendants were producers and owners of the copyrights, and 2) Allegro made no false statements of fact in commercial advertising.

Allegro is incorrect about the application of the Lanham Act only to "passing off" or false advertising. *Smith v. Montoro*, 648 F.2d 602, 604 (9th

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 10
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1981). Section 43(a) has been judicially expanded "to create, in essence, a federal law of unfair competition," and not only protects trademarks and trade dress from infringement, *see, e.g., Kendall-Jackson Winery v. E. & J Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir.1998), but also prohibits a wider range of practices such as "reverse passing off," false advertising and product disparagement. *See* 15 U.S.C. § 1125(a)(1)(B); *Smith,* 648 F.2d at 604; *Brookfield Communications v. West Coast,* 174 F.3d 1036, 1046-47 n. 8 (9th Cir.1999).

This jurisdiction has long recognized claims for misattribution or "reverse passing off" in the context of § 43(a) of the Lanham Act. *See, e.g., Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403, 1406 (9th Cir.1988) (failure to credit coauthors of songs on record album and sheet music constituted reverse passing off); *Smith,* 648 F.2d at 607(removal of actor's name from screen credits and substitution of another actor's name constituted reverse passing off). *Cf. Cleary v. News Corp.,* 30 F.3d 1255, 1260 (9th Cir.1994) (omission of plaintiff's name from title page of work not actionable because plaintiff had contracted away attribution under work for hire clause); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys. Inc.,* 7 F.3d 1434, 1437 (9th Cir.1993) (no reverse passing off because products substantially different).

Reverse passing off is accomplished "expressly" when the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer. *Smith,* 648 F.2d at 605. "Implied" reverse passing off occurs when the wrongdoer simply removes or otherwise obliterates the name of the manufacturer or source and sells the product in an unbranded state. *Id.* See also *Shaw,* 919 F.2d at 1364. The essence of the harm in a reverse passing off case is that "the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith,* 648 F.2d at 607. *See also Selby v. New Line Cinema Corp.,* 96 F.Supp.2d 1053, 1056 (C.D.Cal.2000)(reverse passing off occurs when product is mislabeled to mask creator's contribution). While the Lanham Act does not create a duty of express attribution, it does protect against misattribution. *Cleary,* 30 F.3d at 1260.[FN3]

> FN3. This jurisdiction requires, in a reverse passing off case, that the misattributed

material be substantially the same as the material originally created by the plaintiff-*i.e.,* that differences, if any, between the creator's original material and the misattributed material be no more than slight. See *Cleary,* 30 F.3d at 1261; *Shaw,* 919 F.2d at 1364-65; *Selby,* 96 F.Supp. at 1056 (to constitute reverse passing off, defendant must have engaged in copying or unauthorized use of substantially the entire work); *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 205 (9th Cir.1989) (same). This "bodily appropriation" test is met in the present case.

**\*14** To establish liability for reverse passing off, defendants must show that 1) the work originated with them; 2) Allegro falsely designated the origin of the work; 3) the false designation was likely to cause consumer confusion; and 4) defendants were harmed by Allegro's false designation of origin. *See Lipton v. The Nature Company,* 71 F.3d 464, 473 (2d Cir.1995). The first of these elements is undisputed.

The CDs and paper inserts proffered by the defendants show a wide variety of attributions, some accurate and some clearly not. As discussed above, some recordings correctly identify ONAM as the copyright holder, but apparently provide the wrong date for the copyright. Three recordings contain a copyright notice which states, falsely, "This compilation [Illegible character], © by Allegro Corporation."

Fourteen other CDs show the label for Columbia River Entertainment Group and text which states that the recording is "produced" by Bell-Doucet and Chuck Plaisance. The text further states: © 1998 Only New Age Music (BMI) [Illegible character] Columbia River Entertainment Group 1998. Made in the USA. Executive Producer Vincent Micallef Allegro Corporation.

On a CD titled "Sounds of Nature Ocean Waves," the copyright notice states:Produced by Suzanne Doucet & Chuck Plaisance © 1997 Only New Age Music (BMI) [Illegible character] VMK 1997. Made in the USA. Executive Producer: Joe Micallef, Allegro Corporation.

The fact that the copyright notices may be partially correct, or may involve omissions rather than affirmative misrepresentations, does not affect the validity of the defendants' Lanham Act claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

*Lamothe, 847 F.2d at 1407.* Defendants have established the second element of their § 43 claim.

However, the third and fourth elements of the claim have not been established. Defendants have proffered no evidence of consumer confusion or of injury by a competitor. *Lamothe, 847 F.2d at 1406* ["conduct must not only be unfair but must in some discernable way be competitive," *quoting Halicki v. United Artists Comm. Inc., 812 F.2d 1213* (9th Cir.1987) ]. The absence of a showing on two essential elements of their Lanham Act claim precludes summary judgment in defendants' favor. Defendants' motion for summary judgment on their Lanham Act claim should be denied.

However, Allegro has not demonstrated the absence of genuine issues of material fact or its entitlement to judgment as a matter of law on this claim. Accordingly, its motion for summary judgment should also be denied.

### D. Common-law unfair competition

Under Oregon law, the test of unfair competition is essentially the same as under the Lanham Act: whether it is probable that an ordinary buyer in the ordinary course of business would be deceived into believing that the product of one party is actually that of another. *Dial Temporary Help Service, Inc. v. Shrock, 946 F.Supp. 847, 857 (D.Or.1996), citing Columbia Eng'g. Works v. Mallory, 75 Or. 542, 547, 147 P. 542 (1915).*

*15 Allegro argues that defendants have no claim for unfair competition because Allegro acknowledged the defendants as producers and owners of the copyright. This argument is contrary to the evidence that Allegro has in some instances failed to acknowledge defendants as owners of the copyright.

In its reply memorandum, Allegro makes the additional arguments that the unfair competition counterclaim must fail because Allegro and defendants are not competitors, and because the statute of limitations has run. When new matter is presented in a reply to a motion for summary judgment, the court should not consider the new evidence without giving the nonmovant an opportunity to respond. *Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir.1996).*

At the time this motion was filed, Allegro had not asserted a statute of limitations defense in its reply to defendants' counterclaims. Because the defendants had no notice of Allegro's statute of limitations argument until Allegro filed its reply memorandum, the court declines to consider it at this time. Allegro has now filed a reply to defendants' counterclaims asserting the statute of limitations defense. The court should defer ruling on this claim, therefore, until the limitations issue has been fully briefed and defendants have had an opportunity to demonstrate the element of competitive injury.

The cross motions for summary judgment on the common-law unfair competition claim should be denied.

### E. Unfair Trade Practices Act

Defendants assert as a counterclaim that Allegro's conduct in re-titling and reissuing the masters, and in providing inaccurate copyright information, constitutes a "fraud upon the public" and unfair trade practice in violation of *Or.Rev.Stat. § § 646.608* and *646.638. Section 646.608* prohibits a number of practices, none apparently applicable to the facts of this case except subsection (c), which prohibits causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another, and subsection (u), which prohibits "any other unfair or deceptive conduct in trade or commerce." *Section 646.638* is the remedies provision.

Allegro argues that defendants cannot assert a counterclaim under the UTPA because neither defendant is a consumer, and the UTPA provides a cause of action only for consumers, *citing CollegeNet, Inc. v. Embark.com, Inc.,* 2000 U.S. Dist LEXIS 20752 (D.Or.2000) and *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, 17 F.Supp.2d 1170, 1180 (D.Or.1998), aff'd, 185 F.3d 957* (9th Cir.1999). *See also Cullen v. Investment Strategies, Inc., 139 Or.App. 119, 911 P.2d 936 (1996)* (UTPA to be construed consistently with its consumer protective purposes); *Hinds v. Paul's Auto Werkstatt, Inc., 107 Or.App. 63, 65, 810 P.2d 874 (1991)* (UTPA intended to provide "broad remedial consumer protection"). Bell-Doucet counters with an affidavit stating that she has purchased some of the re-titled and reissued CDs for her own personal use, and has suffered a loss as a consequence of Allegro's "illegally placing her name on recordings sold to the public as part of a consumer fraud." I do not find defendants' argument persuasive. For purposes of this case, Bell-Doucet and ONAM

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

bring their claims, not as consumers or members of the public, but as the creators of sound recordings sold to the public. Bell-Doucet made her purchases in September 1999 and in February, May, and June 2001. Bell-Doucet Reply Declaration, Exhibit 13. All of the purchases were made after defendants had protested the retitling, reissuing and incorrect copyright notices. *See* Bell-Doucet Reply Declaration Exhibit 12. Bell-Doucet cannot purchase some CDs after she knew about the re-titling and the false copyright notices and sustain a claim that she was a "deceived consumer" or a "defrauded member of the public." The claims she asserts in this case stem from her alleged status as an aggrieved copyright holder, a competitor treated unfairly, and a party to a breached license agreement-not as a consumer of her own recordings.

**\*16** Further, even if Bell-Doucet could be considered a consumer, there has been no showing that Bell-Doucet or ONAM has suffered any financial loss *as a consumer* as a result of Allegro's retitling or modifying the masters. The UTPA grants standing to "any person who suffers any ascertainable loss of money" resulting from a violation of the law. Or.Rev.Stat. § 646.638(1). *See also Oregon Laborers-Employers Health & Welfare Trust Fund,* 17 F.Supp.2d at 1179 (policy of UTPA is to provide a viable remedy for consumers who are damaged by deceptive trade practices), citing *Raudebaugh v. Action Pest Control, Inc.,* 59 Or.App. 166, 171, 650 P.2d 1006 (1982). Bell-Doucet has made no showing that, *as a consumer,* she lost money as a result of Allegro's conduct. Defendants' damages, if any, flow from their creation and ownership of the recordings, not Bell-Doucet's status as a retail purchaser.

Allegro also argues that defendants' counterclaims under the UTPA are barred by its one-year statute of limitations. Allegro contends that at the latest, defendants first discovered Allegro's conduct in September 1999.

Defendants assert that the statute of limitations does not apply to counterclaims, under Or.Rev.Stat. § 646.638(7). However, that provision is not applicable to this case. Section 646.638(7) says: Notwithstanding subsection (6) of this section [the statute of limitations] in any action brought by a seller or lessor against a purchaser or lessee of real estate, goods or services, such purchaser or lessee may assert any counterclaim the purchaser or lessee has arising out of a violation of ORS 646.505 to 646.652.

Because, as discussed above, Bell-Doucet is not a consumer for purposes of this case, Allegro is neither a seller nor a lessor, and defendants are neither purchasers nor lessees. This provision is inapplicable. Allegro is entitled to summary judgment on this claim.

### F. Mechanical royalties

The parties dispute whether the sound recordings in this case contain nature sounds only or a combination of music and nature sounds. They also dispute whether the waivers were specifically negotiated or assumed because of the nature of the sound recordings. Neither side has submitted legal authority or admissible evidence on the issue of whether recordings of nature sounds do or do not generate "mechanical" royalties.[FN4] Since there has been no showing of the absence of a fact issue and no showing on either side of entitlement to judgment as a matter of law, both summary judgment motions should be denied.

> FN4. So-called "mechanical licenses" refer only to licenses in musical compositions, not in sound recordings. See 2 *Nimmer* § 8.04[A]. Compulsory licenses for the use of musical compositions are often referred to as "mechanical licenses," as the provision of the Copyright Act that provides for them, 17 U.S.C. § 115, allows the act of "mechanically" recording a song on fixed media, such as a phonograph record or piano roll. *Id.*

### II. Allegro's motion to amend reply

Allegro has filed a motion for leave to amend its reply to defendants' counterclaims in order to assert statute of limitations defenses to the Lanham Act and common-law unfair competition claims. Defendants contend that the motion should be denied because the amendment would be futile.

The complaint in this case was filed on May 30, 2001. Defendants filed an answer and counterclaims on July 12, 2001, and filed a First Amended Answer and Counterclaims on July 17, 2001. Allegro filed its Reply to the Amended Answer and Counterclaims on August 24, 2001.

**\*17** Defendants assert that they learned of Allegro's retitling and reissuing under new titles on May 24,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

Page 13

1999. They argue that for compulsory counterclaims, the filing of the complaint tolls the statute of limitations. Fed.R.Civ.P. 13, 15(c); *Klemens v. Air Line Pilots Assoc. Int'l.*, 736 F.2d 491, 501 (9th Cir.1984).

The complaint tolls the statute of limitations for a counterclaim only when the counterclaim is one for recoupment, arising out of the same transaction or occurrence as the main claim. D. Coquillette, G. Joseph, S. Schreiber, J. Solovy, G. Vairo 3 *Moore's Federal Practice* § 13.93 (3d ed.) (*Moore* ). The *Klemens* case involved just such a recoupment. Compulsory counterclaims for affirmative relief will be barred if asserted after the limitations period has run. *Moore* § 13.93.

Because defendants' counterclaims are for affirmative relief, they do not relate back to the filing of the complaint. Even if they did, they would still be untimely by six days, since the complaint was filed on May 30, 2001. Allegro's motion to amend is therefore not futile.

The motion for leave to amend the reply will be granted.

## Conclusion

For Allegro's motion for partial summary judgment (doc. # 15) and defendants' motion for partial summary judgment (doc. # 20), I recommend as follows:

That Allegro's motion for summary judgment on its first claim for relief (a declaration that Allegro has not infringed defendants' copyrights) be DENIED, and that defendants' motion for summary judgment be DENIED.

That Allegro's motion for summary judgment on its second claim for relief (an injunction prohibiting defendants from interfering with Allegro's rights under the licensing agreements) be DENIED and defendants' motion for summary judgment be GRANTED.

That defendants' motion for summary judgment on Allegro's third claim for relief (nominal and punitive damages for tortious interference with its contractual relationships) be GRANTED.

That Allegro's motion for summary judgment on defendants' first counterclaim (copyright infringement) be GRANTED with respect to the changes of title and incorrect copyright notices, and DENIED with respect to derivative works, and that defendants' motion for summary judgment be DENIED.

That Allegro's motion for summary judgment on defendants' second counterclaim (false designation under Lanham Act) be DENIED and that defendants' motion for summary judgment be DENIED.

That Allegro's motion for summary judgment on defendants' third counterclaim (common law unfair competition) be DENIED and defendants' motion for summary judgment be DENIED.

That Allegro's motion for summary judgment on defendants' fourth counterclaim (violation of the UTPA) be GRANTED, and defendants' motion for summary judgment be DENIED.

That Allegro's motion for summary judgment on defendants' fifth counterclaim (breach of the licensing agreements) be GRANTED with respect to digitalization of the recordings over the Internet, and otherwise DENIED, and that defendants' motion for summary judgment be GRANTED with respect to the copyright notices and the title changes, and otherwise DENIED.

*18 That Allegro's motion for summary judgment on defendants' eighth counterclaim (declaratory judgment that the licensing agreements are terminated) be DENIED and defendants' motion for summary judgment be GRANTED.

Allegro's motion for leave to file amended reply (doc. # 33) is granted.

## Scheduling

These Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 18, 2002. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due November 1, 2002, and the review of the Findings and Recommendation will go under advisement on that date.

D.Or.,2003.
Allegro Corp. v. Only New Age Music, Inc.
Not Reported in F.Supp.2d, 2003 WL 23571745

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 14

(D.Or.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3338184 (Trial Motion, Memorandum and Affidavit) Onam's Opposition to Allegro Corporation's Motion for Partial Summary Judgment on Issue of Reputation Damages (Aug. 4, 2004) Original Image of this Document (PDF)

• 2004 WL 3338189 (Trial Motion, Memorandum and Affidavit) Onam's Memorandum in Opposition to Allegro's Motions in Limine (Aug. 4, 2004) Original Image of this Document (PDF)

• 2004 WL 3606939 () Declaration of Thomas A. White in Support of Onam's Opposition to Allegro's Motion for Partial Summary Judgment (Aug. 4, 2004) Original Image of this Document (PDF)

• 2004 WL 3338176 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Opposition to Allegro Corporation's Motion to Enforce Protective Order and for Civil Contempt of Court and Sanctions; Request for Sanctions in the Amount of $10,995; Declarations of Brian Rishwain, Douglas Johnson and Charles Plaisance. (Jul. 14, 2004) Original Image of this Document (PDF)

• 2003 WL 24231415 (Trial Motion, Memorandum and Affidavit) ONAM's Reply to Allegro's Response to ONAM's Motion for Correction of Judgment (Dec. 10, 2003) Original Image of this Document (PDF)

• 2003 WL 24231416 (Trial Motion, Memorandum and Affidavit) ONAM's Reply in Support of Cross-Motion for Order Requiring Posting of Bond or Alternative Security (Dec. 10, 2003) Original Image of this Document (PDF)

• 2003 WL 24059013 (Trial Motion, Memorandum and Affidavit) Onam's Response to Allegro's Renewed Motion for Judgment as A Matter of Law; Motion for A New Trial or, In the Alternative, To Remit Damages; And/Or Motion to Alter or Amend Judgment Re Jury's Award of Reputation Damages for Allegro's Breach of Contr act (Dec. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 24231414 (Trial Motion, Memorandum and Affidavit) ONAM's Response to Allegro's Renewed Motion for Judgment as a Matter of Law; Motion for a New Trial or, in the Alternative, to Remit Damages Re Mechanical Royalties (Dec. 3, 2003) Original Image of this Document (PDF)

• 2003 WL 24059012 (Trial Motion, Memorandum and Affidavit) Onam's Memorandum in Support of Its Motion to Strike Exhibits A and B to the Affidavit of Vincent Micallef in Support of Allegro's Motion to Stay Execution of Judgment (Nov. 17, 2003) Original Image of this Document (PDF)

• 2003 WL 24059010 (Trial Motion, Memorandum

and Affidavit) Onam's Memorandum in Support of Its Motion for Order and Judgment Awarding Attorneys' Fees, Costs and Expenses (Nov. 14, 2003) Original Image of this Document (PDF)

• 2003 WL 24231411 (Trial Motion, Memorandum and Affidavit) Onam's Reply to Allegro's Supplemental Brief Relating to Onam's Oregon Common Law Unfair Competition Claim (Sep. 13, 2003) Original Image of this Document (PDF)

• 2003 WL 24231412 (Trial Motion, Memorandum and Affidavit) ONAM's Reply to Allegro's Supplemental Brief Re: Mechanical Royalties and Contract Interpretation (Sep. 13, 2003) Original Image of this Document (PDF)

• 2003 WL 24231410 (Trial Motion, Memorandum and Affidavit) ONAM's Supplemental Brief Relating to the Implied Covenant of Good Faith and Fair Dealing and Breach of Contract Damages (Sep. 12, 2003) Original Image of this Document (PDF)

• 2003 WL 24231409 (Trial Motion, Memorandum and Affidavit) ONAM's Response to Allegro's Objection and Reply to ONAM's Supplemental Brief (Sep. 11, 2003) Original Image of this Document (PDF)

• 2003 WL 24231408 (Trial Motion, Memorandum and Affidavit) ONAM's Supplemental Brief in Opposition to Allegro's Motion in Limine No. 6 (Sep. 9, 2003) Original Image of this Document (PDF)

• 2003 WL 24231413 (Trial Motion, Memorandum and Affidavit) ONAM's Memorandum in Support of Its Motion for Correction of Judgment (Sep. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 24058458 (Trial Motion, Memorandum and Affidavit) Defendants/Counter-Claimants's Itemized List of Special Damages (Aug. 8, 2003) Original Image of this Document (PDF)

• 2003 WL 24058456 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Supplemental Memorandum Regarding Entitlement to an Order Enforcing Stipulation and Protective Order (May 9, 2003) Original Image of this Document (PDF)

• 2003 WL 24058455 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Reply Memorandum in Support of Order Enforcing Stipulation and Protective Order (May 1, 2003) Original Image of this Document (PDF)

• 2003 WL 24058448 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Memorandum in Support of Order Enforcing Stipulation and Protective Order (Apr. 23, 2003) Original Image of this Document (PDF)

• 2003 WL 24058468 (Trial Motion, Memorandum and Affidavit) Defendants/Counter-Claimants's Trial Memoranda (Apr. 8, 2003) Original Image of this

Not Reported in F.Supp.2d                                                           Page 15
Not Reported in F.Supp.2d, 2003 WL 23571745 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Document (PDF)
• 2002 WL 32833552 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Response to Defendants' Objections to the Magistrate Judge's Findings and Recommendation of October 4, 2002 (Nov. 13, 2002) Original Image of this Document (PDF)
• 2002 WL 32833546 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Amended Reply to Only New Age Music, Inc.'s and Suzanne Bell-Doucet's First Amended Answer and Counterclaims (Oct. 30, 2002) Original Image of this Document (PDF)
• 2002 WL 32833550 (Trial Motion, Memorandum and Affidavit) Allegro Corporation's Objections to October 4, 2002, Findings and Recommendation (Oct. 30, 2002) Original Image of this Document (PDF)
• 3:01cv00790 (Docket) (May. 30, 2001)
• 3:0100790 (Docket) (May. 30, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.