# EXHIBIT A

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (Florida Bar No. 145215)
Mark J. Heise (Florida Bar No. 771090)
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street
Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Attorneys for Plaintiff Caldera Systems, Inc. d/b/a The SCO Group

FILED
THIRD DISTRICT COURT
03 MAR -6 PM 2:17
SALT LAKE DEPARTMENT
BY _____
DEPUTY CLERK

## IN THE THIRD JUDICIAL DISTRICT OF SALT LAKE COUNTY

### STATE OF UTAH

| | |
|---|---|
| CALDERA SYSTEMS, INC., a Delaware corporation d/b/a THE SCO GROUP,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a Delaware corporation,<br><br>Defendant. | **COMPLAINT**<br><br>(Jury Trial Demanded)<br><br>Case No. O3O9O5199<br><br>Judge Lewis |

89. By undermining and destroying the entire marketplace value of UNIX in the enterprise market, IBM would gain even greater advantage over all its competitors whose revenue model was based on licensing of software rather than sale of services.

90. To accomplish the end of transforming the enterprise software market to a services-driven market, IBM set about to deliberately and improperly destroy the economic value of UNIX and particularly the economic value of UNIX on Intel-based processors.

91. Among other actions, IBM misappropriated the confidential and proprietary information from SCO in Project Monterey. IBM thereafter misused its access to the UNIX Software Code. On or about August 17, 2000, IBM and Red Hat Inc. issued a joint press release through M2 Presswire announcing, *inter alia*, as follows:

> "IBM today announced a global agreement that enables Red Hat, Inc. to bundle IBM's Linux-based software.
>
> IBM said it would contribute more than 100 printer drivers to the open source community. With these announcements, IBM is making it easier for customers to deploy e-business applications on Linux using a growing selection of hardware and software to meet their needs. *The announcements are the latest initiative in IBM's continuing strategy to embrace Linux across its entire product and services portfolio.*
>
> *Helping build the open standard, IBM has been working closely with the open source community, contributing technologies and resources.*"

92. Thereafter, on December 20, 2000, IBM Vice President Robert LeBlanc disclosed IBM's improper use of confidential and proprietary information learned from Project Monterey to bolster Linux as part of IBM's long term vision, stating:

> "Project Monterey was actually started before Linux did. When we started the push to Monterey, the notion was to have one common OS for several architectures. The notion actually came through with Linux, which was open source and supported all hardware. *We continued with Monterey as an extension of AIX [IBM UNIX] to support high-end hardware.* AIX 5 has the best of Monterey. *Linux cannot fill that need today, but over time we believe it will. To help out we're making contributions to the open source*

*movement like the journal file system.* We can't tell our customers to wait for Linux to grow up.

If Linux had all of the capabilities of AIX, where we could put the AIX code at runtime on top of Linux, then we would.

Right now the Linux kernel does not support all the capabilities of AIX. We've been working on AIX for 20 years. Linux is still young. We're helping Linux kernel up to that level. We understand where the kernel is. We have a lot of people working now as part of the kernel team. At the end of the day, the customer makes the choice, whether we write for AIX or for Linux.

*We're willing to open source any part of AIX that the Linux community considers valuable.* We have open-sourced the journal filesystem, print driver for the Omniprint. AIX is 1.5 million lines of code. If we dump that on the open source community then are people going to understand it? You're better off taking bits and pieces and the expertise that we bring along with it. We have made a conscious decision to keep contributing."

93. IBM, however, was not and is not in a position legally to "open source any part of AIX that the Linux community considers valuable." Rather, IBM is obligated *not* to open source AIX because it contains SCO's confidential and proprietary UNIX operating system and, more importantly, the code that is essential for running mission critical applications (*e.g.*, wire transfers) for large businesses.

94. Over time, IBM made a very substantial financing commitment to improperly put SCO's confidential and proprietary information into Linux, the free operating system. On or about May 21, 2001 IBM Vice President Richard Michos, stated in an interview to Independent Newspapers, New Zealand, *inter* alia:

*"IBM will put US $1 billion this year into Linux, the free operating system.*

IBM wants to be part of the community that makes Linux successful. It has a development team that works on improvements to the Linux kernel, or source code. *This includes programmers who work in the company's Linux technology center, working on making the company's technology Linux-compatible."*

23

That team of IBM programmers is improperly extracting and using SCO's UNIX technology from the same building that was previously the UNIX technology center.

95. In a news article issued by e-Business Developer on or about August 10, 2001, the following conduct was attributed to IBM regarding participation in the open source software movement:

> "Another example is when IBM realized that the open-source operating system (OS) Linux provided an economical and reliable OS for its various hardware platforms. However, IBM needed to make changes to the source to use it on its full range of product offerings.
>
> IBM received help from the open-source community with these changes and in return, released parts of its AIX OS to open source. IBM then sold its mainframes running Linux to Banco Mercantile and Telia Telecommunications, replacing 30 Windows NT boxes and 70 Sun boxes respectively - obviously a win for IBM, which reduced its cost of maintaining a proprietary OS while increasing its developer base. *IBM's AIX contributions were integrated into the standard Linux source tree, a win for open source.*"

96. Again, "IBM's AIX contributions" consisted of the improper extraction, use, and dissemination of SCO'S UNIX source code and libraries, and unauthorized misuse of UNIX methods, concepts, and know-how.

97. In a news article issued by IDC on or about August 14, 2001, the following was reported:

> "IBM continued its vocal support of the Linux operating system Tuesday, saying the company will gladly drop its own version of UNIX from servers and replace it with Linux if the software matures so that it can handle the most demanding tasks.
>
> IBM executives speaking here at the company's solutions developer conference outlined reasons for the company's Linux support, pointing to features in the operating system that could push it past UNIX for back-end computing. *While they admit that Linux still has a way to go before it can compete with the functions available on many flavors of UNIX, IBM officials said that Linux could prove more cost-effective and be a more user-friendly way to manage servers.*

24

> *'We are happy and comfortable with the idea that Linux can become the successor, not just for AIX, but for all UNIX operating systems,'* said Steve Mills, senior vice president and group executive of the IBM Software Group, during a news conference."

98. Continuing with its "happy and comfortable" idea that Linux succeeds at the expense of UNIX, on or about January 23, 2003, IBM executive Steve Mills' gave a keynote speech at LinuxWorld, a trade show, which was reported by Computer Reseller News, *IBM's Mills: Linux Will be on Par with UNIX in No Time*, January 23, 2003, *inter alia*, as follows:

> "*IBM will exploit its expertise in AIX to bring Linux up to par with UNIX*, an IBM executive said Thursday.
>
> During his keynote at LinuxWorld here, IBM Senior Vice President and group executive Steve Mills acknowledged that *Linux lags behind UNIX in scalability, SMP support, fail-over capabilities and reliability--but not for long.*
>
> *'The pathway to get there is an eight-lane highway,'* Mills said, noting that *IBM's deep experience with AIX and its 250-member open-source development team will be applied to make the Linux kernel as strong as that of UNIX. 'The road to get there is well understood.'*
>
> \* \* \*
>
> *Mills hinted that the company's full development capabilities will be brought to bear in engineering the Linux kernel to offer vastly improved scalability, reliability and support for mixed workloads--and to obliterate UNIX.*"

99. The only way that the pathway is an "eight-lane highway" for Linux to achieve the scalability, SMP support, fail-over capabilities and reliability of UNIX is by the improper extraction, use, and dissemination of the proprietary and confidential UNIX Software Code and libraries. Indeed, UNIX was able to achieve its status as the premiere operating system only after decades of hard work, beginning with the finest computer scientists at AT&T Bell Laboratories, plaintiff's predecessor in interest.

25

100. Based on other published statements, IBM currently has over 7,000 employees involved in the transfer of UNIX knowledge into the Linux business of IBM, Red Hat and SuSE (the largest European Linux distributor). On information and belief, a large number of the said IBM employees currently working in the transfer of UNIX to Linux have, or have had, access to the UNIX Software Code.

IBM's Coordination of Linux Development Efforts

101. On information and belief, IBM has knowingly induced, encouraged, and enabled others to distribute proprietary information in an attempt to conceal its own legal liability for such distributions:

> "What is wrong about this [Linux] distribution, is basically the millions of lines of code that we never have seen. We don't know if there are any patent infringements [in this code] with somebody we don't know. *We don't want to take the risk of being sued for a patent infringement. That is why we don't do distributions, and that's why we have distributors.* Because distributors are not so much exposed as we are. So that's the basic deal as I understand it."
>
> Karl-Heinz Strassemeyer, IBM The Register, 11/19/2002, www.theregister.co.uk/content/4/28183.html

102. IBM is affirmatively taking steps to destroy all value of UNIX by improperly extracting and using the confidential and proprietary information it acquired from UNIX and dumping that information into the open source community. As part of this effort, IBM has heavily invested in the following projects to further eliminate the viability of UNIX:

a) The Linux Technology Center was launched in 2001 with the advertised intent and foreseeable purpose of transferring and otherwise disposing of all or part of UNIX, including its concepts, ideas, and know-how, into an open source Linux environment;

26

b) The IBM Linux Center of Competency was launched to assist and train financial services companies in an accelerated transfer of UNIX to Linux with the advertised intent and foreseeable purpose of transferring and otherwise disposing of all or part of UNIX, including its concepts, ideas, and know-how, into an open source Linux environment;

c) A carrier-grade Linux project has been undertaken to use UNIX code, methods, concepts, and know-how for the unlawful purpose of transforming Linux into an enterprise-hardened operating system;

d) A data center Linux project has been undertaken to use UNIX code, methods, concepts, and know-how for the unlawful purpose of transforming Linux into an enterprise-hardened operating system; and

e) Other projects and initiatives have been undertaken or supported that further evidence the improper motive and means exercised by IBM in its efforts to eliminate UNIX and replace it with free Linux.

103. But for IBM's coordination of the development of enterprise Linux, and the misappropriation of UNIX to accomplish that objective, the Linux development community would not timely develop the quality or customer support necessary for wide-spread use in the enterprise market.

### FIRST CAUSE OF ACTION
(Misappropriation of Trade Secrets—*Utah Code Ann.* §13-24-1 *et seq.*)

104. Plaintiff incorporates and re-alleges by reference paragraphs 1-103 above.

105. Plaintiff is the owner of unique know how, concepts, ideas, methodologies, standards, specifications, programming, techniques, UNIX Software Code, object code, architecture,

27

design and schematics that allow UNIX to operate with unmatched extensibility, scalability, reliability and security (hereinafter defined as "SCO's Trade Secrets"). SCO's Trade Secrets provide SCO with an advantage over its competitors.

106. SCO's Trade Secrets are embodied within SCO's proprietary SCO OpenServer and its related shared libraries and SCO's UnixWare and its related shared libraries.

107. SCO and its predecessors in interest have expended over one billion dollars to develop SCO's Trade Secrets.

108. IBM, through improper means acquired and misappropriated SCO's Trade Secrets for its own use and benefit, for use in competition with SCO and in an effort to destroy SCO.

109. At the time that IBM acquired access to SCO's Trade Secrets, IBM knew that it had a duty to maintain the secrecy of SCO's Trade Secrets or limit their use.

110. SCO's Trade Secrets derive independent economic value, are not generally known to third persons, are not readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and use, and are subject to reasonable efforts by SCO and its predecessors to maintain secrecy.

111. The acts and conduct of IBM in misappropriating and encouraging, inducing and causing others to commit material misappropriation of SCO's Trade Secrets are the direct and proximate cause of a near-complete devaluation and destruction of the market value of SCO OpenServer and SCO UnixWare that would not have otherwise occurred but for the conduct of IBM.

112. Pursuant to *Utah Code Ann.* §13-24-4, plaintiff is entitled to an award of damages against IBM in the following amounts:

   a) Actual damages as a result of the theft of trade secrets; together with

b) Profits from IBM's Linux-related business on account of its misappropriation through the time of trial; together with

c) Additional foreseeable profits for future years from IBM's Linux-related business on account of its misappropriation in an amount to be proven at the time of trial.

113. Because IBM's misappropriation was willful, malicious, and in reckless disregard of Plaintiff's rights, SCO is entitled to an award of exemplary damages against IBM in an amount equal to two times the amount of damages, pursuant to *Utah Code Ann.* §13-24-4(2).

114. Plaintiff is also entitled to an award of attorneys' fees and costs in an amount to be proven at the time of trial pursuant to *Utah Code Ann.* §13-24-5.

## SECOND CAUSE OF ACTION
(Unfair Competition)

115. Plaintiff incorporates and re-alleges by reference paragraphs 1-114 above.

116. Plaintiff and its predecessors have built the UNIX System V Technology, the Unix Software Code, SCO OpenServer, UnixWare and their derivatives through very substantial efforts over a time span in excess of 20 years and expenditure of money in excess of $1 billion.

117. IBM has engaged in a course of conduct that is intentionally and foreseeably calculated to undermine and/or destroy the economic value of the UNIX Software Code anywhere and everywhere in the world, and to undermine and/or destroy plaintiff's rights to fully exploit and benefit from its ownership rights in and to UNIX System V Technology, the Unix Software Code, SCO OpenServer, UnixWare and their derivatives, and thereby seize the value of UNIX System V Technology, the Unix Software Code, SCO OpenServer,

UnixWare and their derivatives directly for its own benefit and indirectly for the benefit of its Linux distribution partners.

118. In furtherance of its scheme of unfair competition, IBM has engaged in the following conduct:

   a) Misappropriation of trade secrets and confidential information of plaintiff;

   b) Violation of confidentiality provisions running to the benefit of plaintiff;

   c) Inducing and encouraging others to violate confidentiality provisions and to misappropriate trade secrets and confidential information of plaintiff;

   d) Contribution of trade secret protected software code for incorporation into one or more Linux or other free UNIX-like software releases, intended for transfer of ownership to the general public and distribution to the enterprise software market under the General Public License, with the effect and intent of transferring ownership thereto;

   e) Use of deceptive means and practices in dealing with plaintiff with respect to its software development efforts; and

   f) Other methods of unlawful and/or unfair competition.

119. IBM's unfair competition has directly and/or proximately caused significant foreseeable and consequential harm to plaintiff in the following particulars:

   a) Plaintiff's revenue stream from UNIX licenses for Intel-based processing platforms has decreased substantially;

   b) As Intel-based processors have now become the processing platform of choice for a rapidly-increasing customer base of enterprise software users, plaintiff has been deprived of the opportunity to fairly exploit its market-leading position for UNIX on

30

Intel-based processors, which revenue opportunity would have been very substantial on a recurring, annual basis but for IBM's unfairly competitive practices;

c) Plaintiff stands at imminent risk of being deprived of its entire stream of all UNIX licensing revenue in the foreseeably near future;

d) Plaintiff has been deprived of the effective ability to market and sell its new UNIX-related improvements, including a 64-bit version of UNIX for Intel-based processors (based on Project Monterey) and its new web-based UNIX-related products, including UNIX System VI;

e) Plaintiff has been deprived of the effective revenue licensing opportunity to transfer its existing UNIX System V customer base to UNIX System VI; and

f) Plaintiff has been deprived of the effective ability to otherwise fully and fairly exploit UNIX's market-leading position in enterprise software market, which deprivation is highly significant given the inability of Microsoft Windows NT to properly support large-scale enterprise applications.

120. As a result of IBM's unfair competition and the marketplace injury sustained by plaintiff as set forth above, plaintiff has suffered damages in an amount to be proven at trial, but no less than $1 billion, together with additional damages through and after the time of trial foreseeably and consequentially resulting from IBM's unfair competition in an amount to be proven at the time of trial.

121. IBM's unfairly competitive conduct was also intentionally and maliciously designed to destroy plaintiff's business livelihood and all opportunities of plaintiff to derive value from the UNIX Software Code in the marketplace. As such, IBM's wrongful acts and course of conduct has created a profoundly adverse effect on UNIX business worldwide. As such,

this Court should impose an award of punitive damages against IBM in an amount to be proven and supported at trial.

### THIRD CAUSE OF ACTION
### (Interference with Contract)

122. Plaintiff incorporates and re-alleges by reference paragraphs 1-121 above.

123. SCO has contracts with customers around the world for licensing of UNIX Software.

124. IBM knew and should have known of these corporate software licensing agreements between SCO and its customers, including the fact that such agreements contain confidentiality provisions and provisions limiting the use to which the licensed code can be put.

125. IBM, directly and through its Linux distribution partners, has intentionally and without justification induced SCO's customers and licensees to breach their corporate licensing agreements, including but not limited to, inducing the customers to reverse engineer, decompile, translate, create derivative works, modify or otherwise use the UNIX software in ways in violation of the license agreements. These customers include Sherwin Williams, Papa John's Pizza, and Auto Zone, among others. The licensees include Hewlett-Packard, Fujitsu, NEC and Toshiba, among others.

126. IBM's tortious interference has directly and/or proximately caused significant foreseeable damages to SCO, including a substantial loss of revenues.

127. IBM's tortious conduct was also intentionally and maliciously designed to destroy plaintiff's business livelihood and all opportunities of plaintiff to derive value from the UNIX Software Code in the marketplace. As such, this Court should impose an award of punitive damages against IBM in an amount to be proven and supported at trial.

## FOURTH CAUSE OF ACTION
## (Breach of Contract)

128. Plaintiff incorporates and realleges by reference paragraphs 1-127 above.

129. IBM has numerous obligations under the AT&T / IBM UNIX Agreements, some of which are detailed below.

130. Paragraph 11 of the Side Letter contains the following language regarding the intent of the parties to prevent unrestricted disclosure of UNIX:

> You [IBM] recognize the proprietary nature of SOFTWARE PRODUCTS and the need to protect SOFTWARE PRODUCTS from unrestricted disclosure.

131. IBM is prohibited under §7.10 of the Software Agreement from transferring or disposing of UNIX in a way that destroys its economic value. The applicable contract language reads as follows:

> Except as provided in Section 7.06(b), nothing in this Agreement grants to Licensee the right to sell, lease or otherwise transfer or dispose of a SOFTWARE PRODUCT in whole or in part.

132. IBM has a duty of confidentiality to protect the confidentiality of SCO's trade secrets. The Side Letter ¶9 provides, in part, as follows:

> LICENSEE [IBM] agrees that it shall hold SOFTWARE PRODUCTS subject to this Agreement in confidence for AT&T. LICENSEE further agrees that it shall not make any disclosure of such SOFTWARE PRODUCTS to anyone, except to employees of LICENSEE to whom such disclosure is necessary to the use for which rights are granted, LINCENSEE shall appropriately notify each employee to whom any such disclosure is made that such disclosure is made in confidence and shall be kept in confidence by such employee.
>
> IBM is further required by ¶2.01 of the Sublicensing Agreement to obtain confidentiality agreements from its distributors and customers, and by ¶3 of the Side letter to obtain the same from contractors.

33

133. IBM is prohibited under Section 2.05 of the Software Agreement from using UNIX for others. The applicable language provides:

> No right is granted by this Agreement for the use of SOFTWARE PRODUCTS directly for others, or for any use of SOFTWARE PRODUCTS by others.

134. The cumulative effect of these provisions requires IBM to protect SCO's valuable UNIX trade secrets against *unrestricted disclosure, unauthorized transfer or disposition* and *unauthorized use* by others.

135. Notwithstanding these provisions, IBM has subjected SCO's UNIX trade secrets to unrestricted disclosure, unauthorized transfer and disposition, unauthorized use, and has otherwise encouraged others in the Linux development community to do the same. SCO, therefore, has terminated IBM's license to use UNIX-based software products. (See letter dated March 6, 2003, attached hereto and incorporated herein as Exhibit E).

136. As a result of IBM's breaches, SCO has suffered substantial damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, having fully set forth its complaint, plaintiff prays for relief from this Court as follows:

1. For relief under the First Cause of Action for misappropriation of trade secrets arising from *Utah Code Ann.* §13-24-1 et seq., and damages for violations thereof, together with additional damages through and after the time of trial;

2. For relief under the Second Cause of Action for unfair competition arising from common law, and damages for violations thereof, together with additional damages through and after the time of trial;

34