Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON IBM'S SECOND, THIRD, FOURTH AND FIFTH COUNTERCLAIMS**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF UNDISPUTED FACTS .............................................................1

LEGAL STANDARD.............................................................................................3

ARGUMENT..........................................................................................................3

I.   THE ABSOLUTE LITIGATION PRIVILEGE ENTITLES SCO
     TO SUMMARY JUDGMENT ON IBM'S COUNTERCLAIMS
     BASED ON SCO'S LITIGATION CONDUCT ...........................................3

II.  IF ANY OF IBM'S ALLEGATIONS ARE NOT BARRED BY THE ABSOLUTE
     PRIVILEGE, SCO IS ENTITLED TO SUMMARY JUDGMENT UNDER THE
     QUALIFIED PRIVILEGE...........................................................................7

     A.   Under the Qualified Privilege, SCO Has No Liability For
          Good Faith statements to the Media about its claim...........................7

     B.   Good Faith Is Also a Substantive Defense to Each of IBM's Claims ..............9

     C.   IBM Has No Evidence That SCO Acted in Bad Faith....................10

III. SCO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IBM
     WAS NOT DAMAGED BY THE ALLEGED CONDUCT .......................12

CONCLUSION.....................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

Alyeska Pipeline Service Co. v. Wilderness Soc'y,
    421 U.S. 240 (1975)..............................................................................................14

Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006) ..................................................................6

Artista Records, Inc. v. Flea World, Inc.,
    356 F. Supp. 2d 411 (D.N.J. 2005) .........................................................................8

Arista Records, Inc. v. Mp3Board, Inc.,
No. 00 CIV. 4660 (SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .................9

Atkin Wright & Miles v. Mountain States Tel. and Tel. Co.,
    709 P.2d 330 (Utah 1985)......................................................................................9

Bolger v. Youngs Drug Prods. Corp.,
    63 U.S. 60 (1983)...................................................................................................10

Buckley v. Fitzsimmons,
    509 U.S. 259 (1993)................................................................................................8

Carpenter v. Boeing,
    456 F.3d 1183 (10th Cir. 2006) .............................................................................3

Czech Beer Importers, Inc. v. C. Haven Imports, LLC,
No. 04 Civ. 2270 (RCC), 2005 WL 1490097 (S.D.N.Y. Jun. 23, 2005)..................9

Dallas Indep. Sch. Dist. v. Finlan,
    27 S.W.3d 220 (Tex. App. 2000).......................................................................7, 8

Edelson v. Ch'ien,
    352 F. Supp. 2d 861 (N.D. Ill. 2005) .....................................................................8

Engate, Inc. v. Esquire Deposition Servs., L.L.C.,
    331 F. Supp. 2d 673 (N.D. Ill. 2004) .....................................................................6

Freightquote.com, Inc. v. Hartford Cas. Ins. Co.,
    397 F.3d 888, 892 (10th Cir. 2005) .......................................................................9

Hagendorf v. Brown,
    699 F.2d 478 (9th Cir. 1983) .................................................................................5

Hagendorf v. Brown,
    707 F.2d 1018 (9th Cir. 1983) ...............................................................................5

Hansen v. Kohler,
    550 P.2d 186 (Utah 1976)..............................................................................4, 5, 6

Isco Int'l, Inc. v. Conductus, Inc.,
    279 F. Supp. 2d 489 (D. Del. 2003)......................................................................10

Lawmaster v. Ward,
    125 F.3d 1341 (10th Cir.1997) ...............................................................................3

Lee v. City of Rochester,
    663 N.Y.S.2d 738 (N.Y. App. Div. 1997) ...............................................................8

Leegin Creative Leather Prods., Inc. v. M.M. Rogers and Co.,
    94-4644 RJK, 1994 WL 761725 (C.D. Cal. Oct. 24, 1994) .....................................6

McClatchy Newspapers, Inc. v. Superior Court,
    189 Cal. App. 3d 961 (Cal. Ct. App. 1987) ............................................................5

Medphone Corp. v. Denigris,
    No. Civ. 92-3785, 1993 WL 13147999 (D.N.J. July 28, 1993).............................7, 8

Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.,
    878 F. Supp. 804 (D. Md. 1995)............................................................................9

Muirhead v. Zucker,
    726 F. Supp. 613 (W.D. Pa. 1989)........................................................................8

Noble Fiber Techs., LLC v. Argentum Med., LLC,
    No. 3:05-CV-01855, 2006 WL 1793219 (M.D. Pa. Jun. 27, 2006) ........................10

Novodzelsky v. Astor, Weiss & Newman,
    Civ. A. No. 94-2407, 1994 WL 665682 (E.D. Pa. Nov. 17, 1994).........................8

Pinto v. Internationale Set, Inc.,
    650 F. Supp. 306 (D. Minn. 1986)......................................................................5, 6

Price v. Armour,
    949 P.2d 1251 (Utah 1997)...............................................................................4, 5

Rainier's Dairies v. Raritan Valley Farms,
    117 A.2d 889 (N.J. 1955) ....................................................................................6

Rubin v. Green, 847 P.2d 1044 (Cal. 1993) ..........................................................6

Seattle Times Co. v. Seattle Mailer's Union No. 32,
    664 F.2d 1366 (9th Cir. 1982) ........................................................................14

Silberg v. Anderson,
    786 P.2d 365 (Cal. 1990) ..............................................................................5, 6

Simon v. Oltmann,
    No. 98 C 1759, 2001 WL 1035719 (N.D. Ill. Aug. 31, 2001) ..........................5

Spangler Candy Co. v. Crystal Pure Candy Co.,
    235 F. Supp. 18 (N.D. Ill. 1964) ..................................................................9, 10

Theran v. Rokoff, 602 N.E.2d 191 (Mass. 1992) ..................................................5

Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.,
    64 F. Supp. 2d 398 (D.N.J. 1999) ................................................................4, 5

Zenith Electronics Corp. v. Exzec, Inc.,
    182 F.3d 1340 (Fed. Cir. 1999) ......................................................................10

**Statutes**

15 USC § 1117(a) ..................................................................................................15

N.Y. Gen. Bus. L. § 349(h) ..................................................................................15

**Other**

2 Callmann on Unfair Comp., Tr. & Mono. § 11:10 (4th ed.) ................................9

Restatement (2d) of Torts § 586-87 ..................................................................4, 5, 6

Robert D. Sack, Sack on Defamation: Libel, Slander & Related Problems ..........5, 7

Plaintiff, the SCO Group, Inc. ("SCO"), respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment on IBM's Second, Third, Fourth and Fifth Counterclaims ("IBM's Counterclaims").

## PRELIMINARY STATEMENT

IBM has filed several counterclaims asserting that it has been damaged because SCO's lawsuits and press statements about its claims were made as part of a "scheme" involving "false and misleading statements" that were made "with actual knowledge or in reckless disregard of the fact that SCO does not have the rights it seeks to assert."

The IBM counterclaims at issue – the second (Lanham Act), third (unfair competition), fourth (intentional interference with prospective economic relations) and fifth (unfair and deceptive trade practices) – fail under the applicable law. All of SCO's statements in the course of litigation are absolutely privileged. To the extent that IBM relies on statements outside the absolute privilege, SCO is protected by a qualified privilege, under which SCO cannot be held liable without proof of bad faith. The evidence indisputably shows that SCO has acted in good faith, and IBM has no evidence to the contrary. Further, IBM has no competent evidence that it sustained any damages as a result of SCO's alleged conduct.

## STATEMENT OF UNDISPUTED FACTS

1.     On March 6, 2003, SCO filed its original Complaint against IBM. (SCO's original Complaint.)

2.     SCO filed an Amended Complaint on July 22, 2003, and a Second Amended Complaint on February 27, 2004. (IBM's 2d Am. Countercl. ¶ 58.)

3.     SCO subsequently filed a legal complaint against a Linux user. (IBM's 2d Am. Countercl. ¶ 79.)

4.     There exists, at a minimum, a good faith basis for SCO to have believed, alleged in court filings, and made statements that IBM contributed code, methods and concepts to Linux in violation of SCO's contractual rights.     **REDACTED**

5.     There exists, at a minimum, a good faith basis for SCO to have believed, alleged in court filings, and made statements that Linux violates one or more copyrights held by SCO.

**REDACTED**

6.     There exists, at a minimum, a good faith basis for SCO to have believed, alleged in court filings, and made statements that IBM's AIX and Dynix licenses have validly been terminated.  (See, e.g., SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Breach-of-Contract Claims (11/30/04) & exhibits thereto.)

7.     There exists, at a minimum, a good faith basis for SCO to have believed, alleged in court filings, and made statements that Novell had no right to "waive" IBM's contractual breaches.  (See, e.g., SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Breach-of-Contract Claims (11/30/04) & exhibits thereto.)

8.     There is no competent evidence that IBM sustained any compensable damages as a result of SCO's lawsuit or related statements.  To the contrary, IBM executives

**REDACTED**     have publicly stated     **REDACTED**

that IBM's business has not been negatively impacted by SCO's actions. McMillan, <u>$1 Billion Well Spent?</u>, available at http://linuxplanet.com/linuxplanet/interviews/4768/3/

---

[1] SCO submits herewith the expert reports themselves, but not the voluminous exhibits thereto.  SCO has previously provided the exhibits to IBM, and if the Court would like to review some or all of the exhibits, SCO will of course provide them.

(Ex. K); Mimoso, <u>IBM Linux GM: Enterprises beyond TCO questions with Linux</u>, available at

<http://searchopensource.techtarget.com/qna/0,289202, sid39_gci990465,00.html>(Ex. L); M.

Loney, <u>Open-source leader: SCO suits a boon to Linux</u>, available at <http://www.zdnetasia.

com/news/software/0,39044164,39221097,00.htm> (Ex. M); S. Cohen, <u>How SCO's Threats</u>

<u>Rallied Linux</u>, available at <http://www.businessweek.com/technology/content/feb2005/

tc2005027_4780.htm> (Ex. N);               **REDACTED**


## LEGAL STANDARD

Summary judgment should be granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." <u>Carpenter v. Boeing</u>, 456 F.3d 1183, 1192 (10th Cir. 2006) (quoting

Fed.R.Civ.P. 56(c)).  An "issue of material fact is genuine only if the nonmovant presents facts

such that a reasonable jury could find in favor of the nonmovant."  <u>Id.</u> (quoting <u>Lawmaster v.</u>

<u>Ward</u>, 125 F.3d 1341, 1347 (10th Cir.1997)).


## ARGUMENT

**I.     THE ABSOLUTE LITIGATION PRIVILEGE ENTITLES SCO TO SUMMARY
        JUDGMENT ON IBM'S COUNTERCLAIMS BASED ON SCO'S LITIGATION
        CONDUCT**

IBM's specific factual allegations in support of the alleged SCO "scheme" to damage its

business, underlying each of the IBM counerclaims at issue here, are at paragraphs 57 through

107 of IBM's Second Amended Counterclaims.

These allegations pertain to SCO's conduct in the course of this and other litigation SCO

has filed to protect its intellectual property rights.  Paragraphs 57-60 assert "meritless" and

"unsound" allegations SCO made in its complaints in this suit.  Paragraph 69 is about a demand letter SCO sent to other Linux users.  Paragraph 73 concerns a SCO statement during a court hearing in this case; paragraphs 77-78 concern allegations in SCO's amended complaint; and paragraphs 79-81 are about SCO's allegations in a suit against another, unspecified "Linux user." Paragraphs 97-104 concern SCO's purported "refusal to specify its claims" in correspondence with IBM's counsel, in discovery responses, or in responses to court orders.

Except for paragraphs containing only argument, legal conclusions, or statements by IBM and Novell, the remainder of the pertinent IBM's allegations involve SCO press releases and interviews and other meetings where SCO personnel have defended SCO's claim in this and other suits that IBM's AIX and Dynix licenses have validly been terminated (paras. 61-63), that Linux infringes SCO's intellectual property rights (paras. 64-66), that Linux end-users could and would be sued unless they had a valid license to use the SCO intellectual property misappropriated into Linux (paras. 70-76), and that Novell had no right to "waive" IBM's contractual breaches (para. 84).

With the arguable exception of certain press statements, all of the alleged SCO conduct is absolutely privileged.  The privilege is "based upon the public interest according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes." Hansen v. Kohler, 550 P.2d 186, 189-90 (Utah 1976).  For the public policy of encouraging "full and candid participation in judicial proceedings" and enabling litigants and their counsel to "speak and write freely without the restraint or fear of an ensuing action," a party's statements in the course of litigation are immune from all forms of tort liability except malicious prosecution. Id.; Price v. Armour, 949 P.2d 1251, 1256-57 (Utah 1997); Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C., 64 F. Supp. 2d 398, 415 (D.N.J. 1999); Restatement (Second) of

4

Torts § 586-87 (1977).  The privilege protects a party from liability "irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity." Hansen, 550 P.2d at 190 (quoting Restatement (Second) of Torts § 587 cmt. a).

"Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation," the absolute litigation privilege has been called "'the backbone to an effective and smoothly operating judicial system.'" Silberg v. Anderson, 786 P.2d 365, 370-71 (Cal. 1990) (quoting McClatchy Newspapers, Inc. v. Superior Court, 189 Cal. App. 3d 961, 970 (Cal. Ct. App. 1987)).  The privilege applies not only to pleadings and statements in open court, but to all "communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." Restatement (Second) of Torts § 587; accord Robert D. Sack, Sack on Defamation: Libel, Slander & Related Problems § 8.2.1.4 (privilege extends to defamatory statements "made prior to, in the institution of, or during the course of, a proceeding").

Thus, for example, the sending of a demand letter, settlement letter, or a cease and desist letter is absolutely privileged.  Price, 949 P.2d at 1257; Hagendorf v. Brown, 699 F.2d 478, 480-81 (9th Cir.), opinion amended by 707 F.2d 1018 (9th Cir. 1983) (copyright infringement cease and desist letter); Waterloov, 64 F. Supp. 2d at 416 ("demand letters, alleging infringement, requesting that the infringement cease, and inviting cooperation and resolution of any disputes before resort to formal suit"); Simon v. Oltmann, No. 98 C 1759, 2001 WL 1035719, at *8 (N.D. Ill. Aug. 31, 2001) (Ex. 1) (demand letters inviting "cooperation and resolution of the dispute prior to formal litigation"); Theran v. Rokoff, 602 N.E.2d 191, 193 (Mass. 1992) (same); Pinto v.

5

Internationale Set, Inc., 650 F. Supp. 306, 308-09 (D. Minn. 1986) (same).

Although the absolute privilege has its roots in defamation law, it "should not evaporate merely because the plaintiff discovers a conveniently different label" for his claims. Rubin v. Green, 847 P.2d 1044, 1053 (Cal. 1993); Rainier's Dairies v. Raritan Valley Farms, 117 A.2d 889, 895 (N.J. 1955) (privilege may not be circumvented by allowing "unrestricted action under a different label"); see also Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc., 432 F. Supp. 2d 1319, 1356 (S.D. Fla. 2006) (unfair competition claim barred); Engate, Inc. v. Esquire Deposition Servs., L.L.C., 331 F. Supp. 2d 673, 705 (N.D. Ill. 2004) (same); Leegin Creative Leather Prods., Inc. v. M.M. Rogers and Co., 94-4644 RJK, 1994 WL 761725, at *2 (C.D. Cal. Oct. 24, 1994) (Ex. 2) (unfair competition and intentional interference with prospective economic relations). The only exception is malicious prosecution, which IBM has not pleaded and cannot plead, because that cause of action requires a termination of the allegedly malicious proceedings in favor of the plaintiff. Silberg, 786 P.2d at 371; Hansen, 550 P.2d at 190 (quoting Restatement (Second) of Torts § 587 cmt. a).

In view of these authorities, SCO is entitled to partial summary judgment in its favor on IBM's second, third, fourth and fifth counterclaims on the grounds that the allegations in paragraphs 57-60, 69, 73, 77-81, and 97-104 are non-actionable as absolutely privileged. These paragraphs concern SCO's communications in judicial pleadings, in open court, in demand letters, and in responses to discovery requests and orders. The alleged statements pertain directly to ongoing or contemplated litigation and may not be used by IBM to support any counterclaim.

II.   **IF ANY OF IBM'S ALLEGATIONS ARE NOT BARRED BY THE ABSOLUTE PRIVILEGE, SCO IS ENTITLED TO SUMMARY JUDGMENT UNDER THE QUALIFIED PRIVILEGE**

As noted above, IBM's remaining allegations regarding SCO's alleged "scheme" are based on SCO's statements about its intellectual property litigation in press releases, interviews, and meetings. At the very least, these statements are protected by a qualified privilege, which means that IBM may not rely on them in the absence of proof of malice or improper motive. Moreover, and independent of any privilege, good faith is a full substantive defense to each of IBM's claims. Here, the evidence establishes as a matter of law that SCO's claims have merit, or at the very least, for purposes of this motion, that they were filed in good faith.

A.   **Under the Qualified Privilege, SCO Has No Liability For Good Faith Statements to the Media About Its Claims.**

SCO submits that the absolute privilege applies to its press communications to the extent that the communication merely repeats or describes a judicial pleading. See, e.g., Dallas Indep. Sch. Dist. v. Finlan, 27 S.W.3d 220, 239 (Tex. App. 2000) ("[A]dvising the media that a lawsuit has been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media."); Medphone Corp. v. Denigris, No. Civ. 92-3785, 1993 WL 13147999, at *2-3 (D.N.J. July 28, 1993) (Ex. 3) (absolute immunity given to press release that "informs the public that plaintiff filed this suit and communicates the gravamen of the complaint using direct quotes from the pleadings"); Sack on Defamation: Libel, Slander & Related Problems § 8.2.1.3 (if press releases "are mere recitations of matter in pleadings that are themselves privileged, the statements or delivery of the pleadings to the press may be covered by the privilege").

To whatever extent the absolute privilege does not apply, a party's communications with the press about a pending or contemplated lawsuit are entitled to a qualified privilege:

> [N]ewspaper accounts of judicial proceedings … enjoy a qualified immunity only: in the interests of keeping the public informed, newspaper articles are entitled to make fair and accurate report of judicial proceedings and involved parties, witnesses, and counsel are permitted to make remarks to the press relative to proceedings, and no responsibility will attach, even if the contents of articles or remarks are false or defamatory, <u>provided the articles and/or remarks were not published solely for the purpose of causing harm.</u>

<u>Muirhead v. Zucker</u>, 726 F. Supp. 613, 616 (W.D. Pa. 1989) (emphasis added); <u>see also</u> <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 277 (1993) (at common law, out-of-court press statements received "good-faith immunity"); <u>Artista Records, Inc. v. Flea World, Inc.</u>, 356 F. Supp. 2d 411, 427 (D.N.J. 2005) (attorney statements to the press on the filing of complaint were "qualifiedly immune from suit, and required a showing of malice in order to be actionable"); <u>Edelson v. Ch'ien</u>, 352 F. Supp. 2d 861, 870 (N.D. Ill. 2005) (accurate press release held "qualifiedly privileged, although the report contains matters that would otherwise be defamatory and actionable, and no action will lie therefore except on proof of malice in making it"); <u>Lee v. City of Rochester</u>, 663 N.Y.S.2d 738, 751 (N.Y. App. Div. 1997) (police officer's "statements to the press were covered by a common law qualified privilege, requiring plaintiff on this motion to produce evidence in admissible form raising a question whether the statements were made with ill will or spite, malice in the common law sense"); <u>Novodzelsky v. Astor, Weiss & Newman</u>, Civ. A. No. 94-2407, 1994 WL 665682, at *1 (E.D. Pa. Nov. 17, 1994) (Ex. 4) ("Extra-judicial statements, such as published accounts or statements made at press conferences regarding judicial proceedings, are . . . entitled to a qualified privilege.").

Several of the SCO press statements attacked by IBM are almost verbatim repetitions of the allegations in SCO's suits, and thus should be deemed absolutely privileged under cases such as <u>Finlan</u> and <u>Medphone</u>.  Further, to whatever extent the absolute privilege is deemed inapplicable, SCO's statements to the media about its claims are entitled to the qualified, good

faith immunity. In the absence of competent admissible evidence from which a reasonable jury could find that SCO acted in bad faith, summary judgment in favor of SCO on the entirety of the second, third, fourth and fifth counterclaims is warranted. <u>Freightquote.com, Inc. v. Hartford Cas. Ins. Co.</u>, 397 F.3d 888, 892 (10th Cir. 2005).

### B. Good Faith Is Also a Substantive Defense to Each of IBM's Claims.

Independent of any privilege, good faith is a substantive defense to each of the causes of action pleaded by IBM in its second through fifth counterclaims:

> Although an infringement warning might otherwise be characterized as tortious interference with customer relationships, it is often justified as self-defense. The general rule accords every patentee the right to protect his interest by notifying infringers of his claims . . . . He may threaten suit against the alleged infringer or take such reasonable action as he deems advisable to protect his rights, even if he is principally motivated by his own best interests rather than by the desire to help others to avoid infringement liability.

2 <u>Callmann on Unfair Comp., Tr. & Mono.</u> § 11:10 (4th ed.).

A holder of intellectual property rights thus has the right to convey basic information about his claims, as long as done "sincerely and in good faith." <u>Id.</u>; accord <u>Arista Records, Inc. v. Mp3Board, Inc.</u>, No. 00 CIV. 4660 (SHS), 2002 WL 1997918, *16-17 (S.D.N.Y. Aug. 29, 2002) (Ex. 5) ("seeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification defense" to claim of intentional interference with economic relations); <u>Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.</u>, 878 F. Supp. 804, 818 (D. Md. 1995) (same); see also <u>Czech Beer Importers, Inc. v. C. Haven Imports, LLC</u>, No. 04 Civ. 2270 (RCC), 2005 WL 1490097, at *7 (S.D.N.Y. Jun. 23, 2005) (Ex. 6) (bad faith essential element of unfair competition claim); <u>Atkin Wright & Miles v. Mountain States Tel. and Tel. Co.</u>, 709 P.2d 330, 337 (Utah 1985) (intentional interference dismissed due to lack of evidence that defendant "harbored any improper intent or used any improper means"); <u>Spangler Candy Co. v. Crystal Pure Candy Co.</u>, 235 F. Supp. 18, 32 (N.D. Ill. 1964) (unfair

competition counterclaim based on infringement notice "'sent to 5,000 customers and printed in

three trade journals'" dismissed due to lack of proof of bad faith); Noble Fiber Techs., LLC v.

Argentum Med., LLC, No. 3:05-CV-01855, 2006 WL 1793219, at *5 (M.D. Pa. Jun. 27, 2006)

(Ex. 7) ("[a]bsent bad faith, there can be no violation of the Lanham Act in such a context

because a patent holder is entitled to enforce its rights, which include threatening alleged

infringers with suit") (quoting Isco Int'l, Inc. v. Conductus, Inc., 279 F. Supp. 2d 489, 504 (D.

Del. 2003)).[2]

### C.    IBM Has No Evidence That SCO Acted in Bad Faith.

With respect to every allegation on which IBM bases the alleged "scheme," the evidence

shows that SCO's claims have merit, or at the least, for purposes of this motion, that SCO's

lawsuits and its statements about them were made in good faith.  IBM's conclusory allegations of

improper motive are unsupported by any competent evidence and are insufficient to avoid

summary judgment.  The status of each IBM allegation is as follows:

"SCO's Lawsuit Against IBM" (paras. 57-60):  These paragraphs refer to allegations of

SCO's complaint, so the absolute privilege applies.  In addition, SCO filed in good faith, its

allegations are well supported by fact and expert testimony, and IBM has no evidence to the

contrary.

"SCO's Campaign of False Publicity to Disparage AIX, Dynix and Linux" (paras. 61-

67):  SCO's public statements about the termination of IBM's AIX and Dynix licenses are true

and correct, as shown in SCO's previous Memorandum in Opposition to IBM's Motion for

Summary Judgment on SCO's Breach-of-Contract Claims (11/31/04) & exhibits thereto, and in

---

[2] Any state law that purported to impose liability without bad faith for litigation-related communications
in defense of federally protected intellectual property would be preempted, Zenith Electronics Corp. v.
Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) and, with respect to non-commercial communications,
would violate the First Amendment, Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 67-68 (1983).

SCO's Memorandum in Support of Its Motion for Partial Summary Judgment on Its Third Cause of Action, for Breach of Contract (9/25/06) & exhibits thereto. Regardless of whether the Court grants SCO's Motion, the evidence discussed in this Memorandum establishes that SCO at the very least had a good faith basis for its interpretation of the AIX and Dynix licenses.


**REDACTED**


There is also non-expert evidence showing that SCO has suffered severe damages as a result of IBM's actions (para. 66).

"SCO's Copyright Threats and Litigation Against IBM and Others" (paras. 68-82): The SCO statements in the course of litigation are absolutely privileged. In addition, as discussed above, SCO has come forward with strong evidence, including expert reports that are largely unchallenged by IBM, that IBM and other Linux users have infringed SCO's intellectual property. This evidence establishes SCO's good faith in making the alleged statements.

"Novell's Exercise of Rights" (paras. 83-96): As set forth in detail in SCO's Opposition to IBM's Motion for Summary Judgment on SCO's Breach of Contract Claims, filed with the Court on November 30, 2004, SCO has overwhelming evidence (including the plain contractual language and the testimony of Ed Chatlos, the individual who negotiated the subject agreement for Novell itself) in support of its contention that Novell has no right to "waive" IBM's breaches

---

[3] IBM cannot successfully oppose this Motion by citing the reports of its own experts. For present purposes, the issue is not which expert is correct, but whether SCO has a good faith basis for its allegations. The reports of these three experienced and well-respected computer-science experts establish as a matter of law that SCO has such a basis for its claims.

11

of the source code licenses.  See id. at 107-120; Chatlos Decl. ¶ 13.[4]  The evidence discussed in

the November 2004 memorandum establishes that SCO at the very least had a good faith basis

for its interpretation of the provisions on which Novell claimed a waiver right.

"SCO's Refusal to Specify Its Claims" (paras. 97-105):  SCO's communications with

IBM's counsel and its responses to discovery requests and orders are absolutely privileged.

SCO has established its good faith as a matter of law, so summary judgment against IBM

should be entered on the second, third, fourth and fifth counterclaims.

## III.   SCO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IBM WAS NOT DAMAGED BY THE ALLEGED CONDUCT

An additional, independent reason why SCO is entitled to summary judgment on these

counterclaims is that IBM sustained no damages as a result of SCO's alleged scheme, and IBM

has no competent evidence to the contrary.  In fact, IBM and open source advocates have

proclaimed that SCO's actions have helped rather than harmed the Linux business.

IBM's Linux general manager, Jim Stallings, for example, has explicitly stated that IBM

has not been harmed:

> LP:         Are your customers concerned about this SCO lawsuit?
>
> Stallings:   No, we haven't seen any evidence that customers are concerned
> about making a decision against IBM or counter to any proposal they have on the
> table from IBM. We talk to our customers on a regular basis. They know what's
> in the newspaper. I can't comment on the lawsuit itself, but the market certainly
> hasn't slowed down, from what I can see, because of any lawsuit.
> From a sales standpoint, we certainly haven't seen anything. As a matter of fact,
> customers -- the ones that are reading and listening and understand it -- they are
> more enthused by the opportunity.  It has brought a lot of things to light.  People

---

[4] The Chatlos Declaration is attached as Ex. 39 to SCO's Opposition to IBM's motion for Summary
Judgment on SCO's Breach of Contract Claims.  In addition, SCO attaches the declarations of Jim Wilt
(11/23/04) (Ex. Q) and Steve Sabbath (11/19/04) (Ex. R), the negotiators for Novell's counter-party Santa
Cruz (not the same company as SCO), who agree (among other things) that there was no intent to grant
Novell the alleged "waiver" right.

are more educated, and an educated customer . . . <u>we haven't seen anything in the marketplace that's negative.</u>[5]

Mr. Stallings later proclaimed that, despite SCO's suit and transmission of demand letters, "business is actually accelerating," and "Linux is the fastest growing operating system."[6]

Stuart Cohen, the chief executive of the IBM-funded Open Systems Development Laboratory ("OSDL"), which employs Linux kernel developers Linus Torvalds and Andrew Morton (an IBM expert in this case), has proclaimed that SCO's lawsuit actually "accelerated the use of Linux" and "is one of the best things that ever happened to the operating system."[7] Mr. Cohen reiterated to Business Week that the "SCO litigation and surrounding media hoopla actually helped accelerate Linux's popularity."[8]

**REDACTED**

---

[5] McMillan, <u>$1 Billion Well Spent?</u>, available at http://linuxplanet.com/linuxplanet/interviews/4768/3/ (emphasis added, ellipsis in original).

[6] Mimoso, <u>IBM Linux GM: Enterprises beyond TCO questions with Linux</u>, available at <http://searchopensource.techtarget.com/qna/0,289202,sid39_gci990465,00.html>.

[7] M. Loney, <u>Open-source leader: SCO suits a boon to Linux</u>, available at <http://www.zdnetasia.com/news/software/0,39044164,39221097,00.htm>.

[8] S. Cohen, <u>How SCO's Threats Rallied Linux</u>, available at <http://www.businessweek.com/technology/content/feb2005/tc2005027_4780.htm>.

**REDACTED**

**REDACTED**

This is contrary to the 'American Rule' which awards attorney's fees only in exceptional circumstances, or where authorized by contract or statute." <u>Seattle Times Co. v. Seattle Mailer's Union No. 32</u>, 664 F.2d 1366, 1370 (9th Cir. 1982) (reversing award of attorney's fees incurred in an "effort to mitigate damages"); <u>see also</u> <u>Alyeska Pipeline Service Co. v. Wilderness Soc'y</u>, 421 U.S. 240 (1975).

IBM has not cited any case where attorney's fees or employee time has been awarded as compensatory damages for a Lanham Act violation, for unfair competition, for intentional

————————————————

**REDACTED**

14

interference with prospective economic relations, or for unfair trade practices.[12]  This court should not be the first to allow such a claim.  SCO should be awarded summary judgment on these counterclaims, because IBM has no competent proof upon which a reasonable jury could award any damages in IBM's favor.

---

[12] IBM cites 15 USC § 1117(a), which "in exceptional cases" allows for a discretionary award of attorney's fees to the "prevailing party," and N.Y. Gen. Bus. L. § 349(h), which also provides for a discretionary award of attorney's fees to a prevailing party in addition to "actual damages."  If anything, such provisions indicate that attorney's fees were not intended to be a component of compensable damages.  This is especially true where, as here, IBM would not "prevail" unless attorney's fees are deemed damages.

## CONCLUSION

SCO respectfully submits, for all of the reasons stated above, that this Court should grant summary judgment in SCO's favor on IBM's second, third, fourth, and fifth counterclaims.

Dated this 25th day of September 2006.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Stuart H. Singer (admitted pro hac vice)
Edward Normand (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

16

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Redacted SCO's Memorandum in Support of SCO's Motion for Summary Judgement on IBM's Second, Third, Fourth and Fifth Counterclaims was served on Defendant International Business Machines Corporation on the 27th day of September, 2006, by CM/ECF to the following:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

/s/ Brent O. Hatch