# EXHIBIT Q

Brent O. Hatch (5715)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
Mark J. Heise (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower, Ste. 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, | Case No. 2:03CV0294DAK |
| Plaintiff, | Hon. Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | **DECLARATION OF JIM WILT** |
| Defendant. | |

I, JIM WILT, declare as follows:

1. I submit this Declaration in connection with the lawsuits entitled *The SCO Group v. IBM* and *The SCO Group v. Novell, Inc.*

## I. EDUCATIONAL BACKGROUND

2. I received a Bachelor's Degree in Mathematics from Case Western Reserve University in 1966, and a Master's Degree in Computer Science from the University of Wisconsin in 1967. In 1968 I completed my course work towards a PhD in Computer Science at the University of Wisconsin.

## II. WORK HISTORY

3. After leaving the University of Wisconsin, I worked as a software systems programmer and instructor at Vanderbilt University for a year. In 1969, I joined Xerox Corporation and worked for them (and subsequently Honeywell when they purchased Xerox's computer business) for nine years. My positions at Xerox/Honeywell included field systems analyst, systems analyst manager, and software product manager. In 1978, I joined Amdahl Corporation and worked in their software product planning department. After I left Amdahl, I did consulting to provide computer and business advice to smaller companies.

4. In 1983, I joined The Santa Cruz Operation, Inc. ("SCO"). Initially I worked in the marketing department and subsequently became the Vice President Marketing and Sales. While in that position I moved to the UK and opened SCO's European Office. I was based in Europe for five years. In 1989, I became the Vice President of Corporate Development, which included responsibility for mergers and acquisitions. While in that position I was responsible for acquiring two companies, and the UNIX

2



intellectual property and UnixWare product business. I became the Senior Vice President Products in 1998 and was responsible for all product software development, product management and product support. In 2000, I became the President of the Professional Services Business Unit. I worked at SCO through May 2001, when Caldera acquired the Server Software and Professional Services Business Units.

### III. NOVELL'S SALE OF UNIX TO SCO

5. In 1995, Novell, Inc. ("Novell"), through Mike DeFazio and Ed Chatlos, approached SCO about the possibility of selling Novell's entire UNIX and UnixWare business.

6. Doug Michels (SCO's Chief Executive Officer), Geoff Seabrook (an Executive Vice President), and I met with representatives of Novell. During the discussions, SCO made clear to Novell that SCO could not afford a direct purchase of the complete UNIX and UnixWare business, in light of the price being asked for the entire business. Mr. Michels proposed the idea of reducing the proposed purchase price by permitting Novell to retain certain binary royalty payments under certain UNIX licenses.

7. Mr. Seabrook and I were assigned the responsibility of negotiating and completing a deal with Novell along those lines. Mr. Seabrook and I thereafter became the lead negotiators for SCO and oversaw the day-to-day responsibility for the potential purchase. During the negotiations, I met regularly with Novell representatives, sometimes several times a week, from approximately August to September 1995. I



3

met primarily with Ed Chatlos of Novell during those negotiations. I understood Mr. Chatlos to be Novell's chief negotiator during the negotiations.

8. It was my understanding and intent during those negotiations that SCO would acquire Novell's entire UNIX and UnixWare business including the copyrights. I do not recall, and do not believe that there ever was, any instance in which anyone at SCO or Novell ever stated or exhibited any contrary intent or understanding, to me or anyone else.

9. As a result of those negotiations, Novell and SCO entered into the Asset Purchase Agreement ("APA") dated as of September 19, 1995, through which Novell received shares of SCO common stock and other consideration, and received rights to certain binary product royalty payments to be collected by SCO. SCO acquired all right, title, and interest in and to the UNIX and UnixWare business, operating system, and source code. It was my intent on behalf of SCO to acquire through the APA Novell's entire UNIX and UnixWare business, including the UNIX and UnixWare source code and all associated copyrights, and I believed then (as now) that Novell's intent was to sell all of those assets and rights.

10. Paragraph 4.16 of the APA pertains to the binary royalty income stream that Novell retained through the APA. The parties agreed to the language in Paragraph 4.16(b) in order to allow Novell to manage that royalty stream within the operation of SCO's customer source code licenses – not at the expense of SCO's right to enforce its intellectual property protections under any such licenses, and not to permit Novell to waive any of those protections. I have reviewed Amendment No. 2 to the APA and believe that the language therein confirms that intent. In light of my intent, and

4



based on my understanding of the parties' intent, I do not believe that Novell had or has any right to waive, or to direct or require SCO to waive, any of its intellectual property rights or protections.

11. By the time of the APA closing, SCO's business plan did not contemplate any significant additional sales of SVRX source-code licenses. The remaining interest in that particular part of the UNIX business consisted primarily in collecting binary royalties attributable to sublicensed object-code product. However, because the SVRX software included substantial intellectual property that SCO was using in later versions of its UNIX and UnixWare products, SCO had a strong continuing interest in protecting that property under the existing SVRX licenses.

12. I do not recall anyone on either side of the negotiations or transaction ever suggesting that Novell would retain any copyright relating to UNIX or UnixWare. I am not aware of any discussions, whether general or specific, during the negotiations that contradict my understanding of the transaction as set forth in this Declaration. None of my superiors at SCO or Mr. Seabrook ever even suggested that SCO was not acquiring the UNIX or UnixWare copyrights, nor did Novell ever communicate to me that it was not selling the UNIX or UnixWare copyrights.

13. At the time the transaction was signed and closed, I did not observe anyone at SCO or Novell stating or acting as if Novell had retained any UNIX or UnixWare copyrights. Any such statement or conduct would have been contrary to the intent and structure of the deal as I understood it and communicated it to Novell and within SCO. It has been my understanding and belief since the time the APA closed that

5

Novell sold the UNIX and UnixWare copyrights to SCO as of the time of the closing in 1995.

14. In light of my central role for SCO in negotiations, I believe I would have known if the parties had agreed or ever discussed the possibility that Novell would retain any UNIX or UnixWare copyrights. Indeed, if I had thought that SCO was not acquiring all of the UNIX and UnixWare copyrights, I would not have agreed for SCO to proceed with the deal as priced.

15. I have reviewed Schedule 1.1(b) of the APA (the "Excluded Assets Schedule") with attention to the question of whether Novell was to retain any UNIX or UnixWare copyrights. In my view, Paragraph V.A does not refer, and was not intended to refer, to Novell copyrights relating to UNIX or UnixWare.

16. Pursuant to the APA, the parties also signed a Technology Licensing Agreement in early December 1995, in which Novell licensed source code rights from SCO. In my view, this licensing agreement was consistent with SCO's ownership of the UNIX and UnixWare copyrights following the closing of the APA.

17. I declare under penalty of perjury that the foregoing is true and correct.

Executed: 23 November 2004
Nashville, Tennessee

Jim Wilt