# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Only the Westlaw citation is currently available.
United States District Court, D. Kansas.
Jocelyn THOMPSON, Plaintiff,
v.
UNITED TRANSPORTATION UNION, Defendant.
No. 99-2288-JWL.

Dec. 19, 2000.

MEMORANDUM AND ORDER

LUNGSTRUM.

*1 Plaintiff Jocelyn Thompson filed suit against defendant United Transportation Union alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claims that she was subjected to sexual harassment, sex discrimination and retaliation by union representatives. In addition, plaintiff claims that union representatives failed to assist her in connection with her complaints concerning alleged discriminatory and retaliatory conduct by her employer. Finally, plaintiff asserts that the union's conduct led to her constructive discharge.

This matter is presently before the court on defendant's motion for summary judgment (doc. # 69) and plaintiff's motion to strike alleged defense of release (doc. # 79). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's motion to strike is denied.

• Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff began her employment with Kansas City Southern Railroad ("KCSR") in April 1995 at KCSR's Pittsburg, Kansas depot. KCSR is a Class I Railroad with freight operations extending from Kansas City, Missouri to Beaumont, Texas and Shreveport, Louisiana. During the first several years of her employment with KCSR, plaintiff worked as a conductor. As a conductor, plaintiff was represented for collective bargaining purposes by the United Transportation Union ("UTU"). The UTU was the certified collective bargaining representative for the conductors at KCSR during the entire period of plaintiff's employment.

From June 1995 through the time she resigned her employment in May 1999, plaintiff was the only female member of the UTU at the Pittsburg, Kansas depot.

The UTU has a collective bargaining agreement with KCSR which governs the terms and conditions of the Conductors' employment. Claims for violations of the conductors' collective bargaining agreement must be initiated in writing. An employee who believes that the agreement has been violated begins the grievance process by filing a "penalty timeslip" with KCSR describing the violation. If KCSR rejects the claim, the matter may then be handled by local union representatives. Local union representatives, upon learning that KCSR has rejected a timeslip, may advance a claim by presenting it to a company official. If the claim is not resolved at that level, the claim may be appealed to successive levels of management. If the final level of appeal does not resolve the claim, the union or the individual employee may then appeal the matter to a Public Law Board. A Public Law Board is an arbitral panel with the authority to issue final and binding orders resolving disputes under the collective bargaining agreement. It is undisputed that the collective bargaining agreement between UTU and KCSR with respect to KCSR Conductors did not specifically address discrimination or sexual harassment in the workplace.

*2 Pursuant to the terms of the collective bargaining agreement, KCSR is obligated to promote its Conductors to Engineer positions. KCSR carries out this obligation by posting a circular seeking "Student Engineer Applications." Applicants who are accepted undergo a period of training and, if successful, are eligible to be promoted to Engineer. In January 1998, KCSR issued a circular announcing that it was accepting applications for Student Engineers. Plaintiff applied for the Student Engineer position in February 1998. During the next two months, as male Conductors with less seniority than plaintiff were accepted into the Student Engineer position, plaintiff apparently began to wonder whether KCSR was denying her the promotion based on her sex. In April 1998, plaintiff, per the advice of a local union representative, began filing penalty timeslips with KCSR. None of the timeslips submitted by plaintiff were based on alleged sex discrimination. Rather, the timeslips merely stated:

Case 2:03-cv-00294-DN   Document 821-3   Filed 09/27/06   PageID.10847   Page 3 of 11

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

Claim basic day at Engineers rate of pay. Account not accepted into Engineer training program in Seniority Order. This is in violation of Article XIII, Section 3 of the October 31, 1985 UTU National Agreement. Engineer trainees junior to me have been accepted into the program around me.

Plaintiff filed penalty timeslips based on the company's failure to accept her application to the Engineer training program in seniority order for each day beginning on April 20, 1998 and ending July 20, 1998.[FN1]

> FN1. On June 15, 1998, plaintiff was accepted into the Engineer training program, with training to begin on July 20, 1998.

Plaintiff's timeslips were filed in six separate groups. All timeslips were denied by KCSR. The first set of timeslips were denied by KCSR on May 27, 1998. The second set of timeslips were denied by KCSR on July 5, 1998. UTU appealed the denial of these first two sets of claims to the final conference level.[FN2] UTU and KCSR then agreed that the appeal regarding plaintiff's first set of timeslips would be resolved by a Public Law Board and that the appeal regarding plaintiff's second set of timeslips would be held in abeyance pending resolution of the first appeal. UTU and KCSR also agreed to hold the further processing of daily timeslips in abeyance regardless of where those timeslips were in the grievance-handling process. According to defendant's evidence, which plaintiff has failed to controvert, the practice of holding claims in abeyance is common at KCSR. The purpose is to allow an arbitration of the initial claims to proceed, with an understanding that subsequent (and essentially identical) claims will be settled on the basis of the arbitration decision. With respect to plaintiff's claims, then, the effect of the agreement was to arbitrate the ultimate question of whether plaintiff was improperly denied a promotion to the Engineer training position and, if so, whether she was entitled to an adjustment of her Engineer seniority and a day's pay for each day she should have been paid as an Engineer but for the denial of her application.[FN3]

> FN2. At no time during the grievance process did UTU challenge KCSR's promotion decisions as discriminatory, despite plaintiff's apparent desire that UTU do so.

> FN3. The arbitration of plaintiff's first appeal was scheduled for a Public Law Board which convened in February 2000. This appeal was never arbitrated, however, because plaintiff ultimately settled her claims against KCSR and, in connection with that settlement, agreed to "withdraw, with prejudice, and to otherwise abandon, any and all claims or grievances" that she had filed or asserted against KCSR through UTU.

*3 On October 16, 1998, plaintiff filed a charge of discrimination with the EEOC against both KCSR and UTU based on allegations of sex discrimination and sexual harassment. Before filing her EEOC charge, plaintiff never submitted any written grievance to the UTU alleging sex discrimination or sexual harassment in connection with her employment at KCSR. In May 1999, plaintiff settled her claims against KCSR. In exchange for $350,000, plaintiff agreed to release "any and all persons" from all claims "arising out of her employment" with KCSR. She also agreed to resign her employment with KCSR, effective May 21, 1999.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. _Adler v. Wal-Mart Stores, Inc.,_ 144 F.3d 664, 670 (10th Cir.1998) (citing _Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." _Id._ (citing _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." _Id._ (citing _Anderson,_ 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. _Id._ at 670-71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN  Document 821-3  Filed 09/27/06  PageID.10848  Page 4 of 11

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

• Effect of Plaintiff's Settlement Agreement with KCSR

*4 On May 21, 1999, plaintiff signed a settlement agreement and release with KCSR. In the release, plaintiff agreed to

fully and finally forever release, acquit, and discharge KCSR, its ... current and former employees ... and any and all other persons, and each and all of them, of and from any and all liability, claims, actions, demands, suits or causes of action whatsoever, known or unknown, which [plaintiff] may have or claim to have against them or any of them, whether in tort, or in contract, or for violation of Federal, State or local law, or otherwise, whether herein described or not. Such liability, claims, actions, demands, suits or causes of action include, but are not limited to, those arising in any manner out of, relating to, or connected with [plaintiff's] KCSR employment or the relinquishment of her KCSR employment rights, and whether based on Federal, State or local laws, including, but not limited to ... Title VII of the Civil Rights Act of 1964....

In its motion, defendant first contends that summary judgment is mandated on all of plaintiff's claims by virtue of the fact that plaintiff, in the settlement agreement and release entered into between plaintiff and KCSR, released "all persons" from all claims "arising out of plaintiff's employment." According to defendant, the plain language of the agreement evinces a clear intent by plaintiff to release all persons, including the union and its representatives, from any claims arising out of plaintiff's employment. In response, plaintiff urges that defendant has waived this argument. Specifically, plaintiff maintains that the issue of whether the release bars plaintiff's claims against defendant is an affirmative defense and that defendant has failed to plead this affirmative defense. *See* Fed.R.Civ.P. 8(c). In the alternative, plaintiff argues that she never intended to release any claims against defendant UTU. As set forth in more detail below, the court concludes that defendant did not waive this defense and that plaintiff's settlement agreement with KCSR in effect released all of plaintiff's claims arising out of her employment-including those claims against defendant UTU. For this reason, summary judgment in favor of defendant UTU is warranted.

The court begins with the waiver issue. Although defendant has set forth its defense concerning plaintiff's release in the pretrial order, it is undisputed that defendant never articulated this defense in any responsive pleading. It is also undisputed, however, that plaintiff learned of defendant's intent to raise this defense in July 2000 approximately one month after defendant obtained a copy of plaintiff's settlement agreement and release with KCSR. At that time, defendant's counsel advised plaintiff's counsel of defendant's intent to file a Rule 11 motion for sanctions on the grounds that plaintiff filed suit against defendant UTU despite her release of "all persons" from "all claims" arising out of her employment. In response, plaintiff's counsel sent a letter to defendant's counsel specifically advising counsel that the affirmative defense had not been raised in defendant's answer.[FN4]

> FN4. At the time defendant filed its answer, it had not obtained a copy of plaintiff's settlement agreement and release.

*5 According to established Tenth Circuit precedent, then, the defense has not been waived. As the Circuit has emphasized, the purpose behind Rule 8(c) is that of putting "plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance." *See Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir.1992)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

(quoting *Marino v. Otis Eng'g Corp.,* 839 F.2d 1404, 1408 (10th Cir.1988)). In *Ball,* the Circuit held that the defendant had not waived its immunity defense even though the defendant had not raised the defense in its answer. *See id.* at 1443. The Circuit focused on the fact that the defendant had filed a motion for partial summary judgment three months prior to trial, based in part on the immunity defense. *See id.* The defendant in *Ball* also argued for immunity in its pretrial statement. According to the Circuit, then, the plaintiff "had notice at least three months prior to trial that [the defendant] would claim immunity, and the issue was therefore properly litigated at trial." *See id.* at 1444; *accord Marino,* 839 F.2d at 1408 (purpose of Rule 8(c) was served when the plaintiff had notice at least three months prior to trial that the defendant intended to raise affirmative defense, even though the defendant had failed to plead that affirmative defense). Here, plaintiff concedes that she had notice six months prior to trial [FN5] that defendant would claim that plaintiff's release with KCSR released plaintiff's claims against defendant. The defense was also specifically set forth in the pretrial order and, of course, in defendant's motion for summary judgment. In short, the purpose of Rule 8(c) has been satisfied and the defense has not been waived. Plaintiff's motion to strike defendant's defense of release is denied.

> FN5. This case is set for trial on January 30, 2001.

Turning to the release itself, the issue to be resolved is whether the release should be read broadly to include defendant UTU even though UTU is nowhere named in the release. When a release or settlement agreement impacts upon significant federal rights or interest, federal common law controls the interpretation of that release or agreement. *See Heuser v. Kephart,* 215 F.3d 1186, 1190 (10th Cir.2000) (enforcement and interpretation of settlement agreements in Title VII cases are governed by federal common law). Under federal common law, the effect of a release upon unnamed parties "shall be determined in accordance with the intentions of the parties." *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 345-46 (1971) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 501 (1964)); *see also Sims v. Western Steel Co.,* 551 F.2d 811, 817-18 (10th Cir.1977) (where federal law controls release question, the effect of release is determined in accordance with the intention of the parties).

The court, then, must endeavor to ascertain the intent of plaintiff and KCSR in connection with the settlement agreement and release. In doing so, the court looks first to the plain language of the release. Under general principles of contract law, where a contract is complete and unambiguous, its plain language is the "only legitimate evidence of the parties' intent." *See United Bank & Trust Co. v. Kansas Bankers Surety Co.,* 901 F.2d 1520, 1522 & n. 1 (10th Cir.1990). In express terms, plaintiff agreed to release "any and all persons" from "any and all liability" for claims "arising out of her employment with KCSR." In other words, the release did not foreclose actions by plaintiff against particular persons or entities. Rather, the release foreclosed any and all actions against any and all persons connected with plaintiff's employment. The only possible conclusion that may be drawn from the plain language of the release is that plaintiff agreed to and intended to put an end to litigation involving claims of any nature, against any persons, involving her employment at KCSR. *See Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1232 (10th Cir.1999) (where plaintiffs agreed to release "all ... claims ... in any way relating to [their] employment with Coors," plain meaning of the releases-and the only reasonable meaning of the releases-was to release all claims in any way relating to plaintiffs' employment with Coors); *Coleson v. Inspector General of Dep't of Defense,* 721 F.Supp. 763, 767-68 (E.D.Va.1989) (dismissing claims against individuals unnamed in release based on express terms of release-plaintiff released "any action or actions arising out of his employment"); *see also United Bank & Trust Co.,* 901 F.2d at 1522 (language in a contract is given its plain and ordinary meaning).

\*6 Because the release signed by plaintiff evinces a clear intent to release all persons, plaintiff's claims against defendant UTU are barred by the release. Summary judgment, therefore, is appropriate in favor of defendant on all of plaintiff's claims.[FN6] Compare *Zenith,* 401 U.S. at 347-48 (defendant unnamed in release not entitled to benefit of that release where contract made prior to release expressly provided that release would benefit only parties thereto and parent and subsidiaries of the parties) *and Aro,* 377 U.S. at 501 (defendant unnamed in release not entitled to benefit of that release where defendant did not fit within any of the special categories of persons and entities expressly enumerated in release). Even assuming, however, that plaintiff's claims were not barred by the plain meaning of the release, the court would nonetheless grant summary judgment in favor of defendant as plaintiff's claims fail on the merits.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 821-3   Filed 09/27/06   PageID.10850   Page 6 of 11

Not Reported in F.Supp.2d                                                                                                         Page 5
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN6. Plaintiff avers that she never intended to release defendant. Because the court has concluded, however, that the plain language of the release is unambiguous, it cannot look to extrinsic evidence in ascertaining plaintiff's intent. See *Volkman v. United Transportation Union,* 73 F.3d 1047, 1050 (10th Cir.1996) (pursuant to "basic contract interpretation principles," there is no need to resort to extrinsic evidence of intent where the language of the contract is unambiguous).

• Merits of Plaintiff's Claims Against Defendant UTU

In the pretrial order, plaintiff alleges not only that union representatives engaged in unlawful sexual harassment, sex discrimination and retaliation, thus exposing the union to direct liability under Title VII,[FN7] but also that union representatives failed to assist plaintiff in connection with her complaints concerning KCSR's alleged discriminatory and retaliatory conduct. [FN8] Finally, plaintiff asserts that the totality of the union's conduct led to her constructive discharge.

> FN7. Pursuant to § 703(c) and (d) of Title VII, a union is liable for its own discrimination against its members.

> FN8. The Supreme Court has held that unions also may be liable under § 703(c) for deliberately choosing not to process grievances of discrimination by the employer. See *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 667-69 (1987).

*A. Direct Liability of Defendant UTU*

1. Sexual Harassment

Plaintiff alleges that her union representatives subjected her to sexual harassment in violation of Title VII. In support of its motion for summary judgment, defendant argues that plaintiff has failed to state a prima facie case of sexual harassment. As set forth in more detail below, the court agrees. After carefully considering plaintiff's evidence concerning the alleged conduct, the totality of the circumstances, and the applicable standard for analyzing such a claim, the court concludes that plaintiff has not made a sufficient showing to withstand summary judgment on this claim. Specifically, plaintiff has failed to come forward with evidence of sexual harassment sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Accordingly, the court grants defendant's motion for summary judgment on this claim.

Title VII prohibits a union from discriminating against its members on the basis of sex. See 42 U.S.C. § 2000e-2(c)(1). The parties apparently agree that this prohibition encompasses sexual harassment and, indeed, the Circuit has assumed as much. See *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir.1997) (union representatives who engage in sexual harassment expose union to direct liability under Title VII). For a sexual harassment claim to survive summary judgment, however, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *O'Shea v. Yellow Technology Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir.1999) (quoting *Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir.1998) (quoting *Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998))). The severity and pervasiveness of the conduct must be judged from both an objective and a subjective perspective. *Id.* (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993)). [FN9] The objective severity or pervasiveness of the alleged harassment is measured from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id.* at 1098 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 118 S.Ct. 998, 1003 (1998)). Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris,* 510 U.S. at 23). The court also considers the context in which the conduct occurred. *Id.* at 1096 (quoting *Penry,* 155 F.3d at 1262 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69 (1986))).

> FN9. Defendant does not appear to take issue with whether plaintiff subjectively found her work environment to be hostile. Thus, the court focuses its analysis of plaintiff's claim only on the objective

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 821-3   Filed 09/27/06   PageID.10851   Page 7 of 11

Not Reported in F.Supp.2d                                                                                                  Page 6
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

severity or pervasiveness of the work environment.

*7 Plaintiff grounds her sexual harassment claim on certain comments allegedly made by her union representatives.[FN10] Plaintiff first complains about two comments allegedly made by Dave George, a union representative from 1995 through June 1996. According to plaintiff, on one occasion in January 1996, Mr. George advised plaintiff that "she was being watched and if she was late for work the company would bust her for drug/alcohol test [sic] and try to fire her." Plaintiff further avers that on one occasion prior to January 1996, Mr. George told her that the only reason he talked to her was because he was "hoping to get some." Plaintiff also complains about one incident that occurred between her and another union representative, Tom Montemurro. Plaintiff avers that she asked Mr. Montemurro when the conductors would receive their five percent increase in pay and Mr. Montemurro replied, "Go fuck yourself. If you think you can do a better fucking job, do it your own fucking self." Plaintiff further avers that Mr. Montemurro was leaning over her and "spitting at her" as he said those words.

> FN10. In her papers, plaintiff highlights numerous incidents that allegedly occurred and comments that allegedly were made over the course of her employment that, according to plaintiff, support her sexual harassment claim. It is undisputed, however, that plaintiff's union representatives did not affirmatively participate in the vast majority of these incidents and/or comments. It is further undisputed that only those acts and comments committed or made by union representatives-during the time period when those individuals were agents of the union-may properly support plaintiff's sexual harassment claim against the union on a theory of direct liability.

In essence, then, plaintiff complains of three separate incidents spread over the course of nearly four years of union membership. Moreover, two of the three comments do not appear to be based in any way on plaintiff's sex. It is well established that "isolated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct." _Smith v. Northwest Financial Acceptance, Inc._, 129 F.3d 1408, 1414 (10th Cir.1997) (citing _Bolden v. PRC Inc._, 43 F.3d 545, 551 (10th Cir.1994)); _Sprague v. Thorn Americas, Inc._, 129 F.3d 1355, 1366 (10th Cir.1997) (five separate incidents perpetrated by plaintiff's supervisor, although "unpleasant and boorish," were not sufficiently severe or pervasive to create an actionable hostile work environment). Moreover, while the court has no doubt that these experiences, to the extent they occurred, were unpleasant for plaintiff (particularly the incident with Mr. Montemurro), the three incidents-taken alone or in tandem-are simply not severe enough to state a claim for sexual harassment.

Plaintiff does complain about one other specific comment made by Mark Crouch, a union representative from October 1997 through November 1999. According to plaintiff, Mr. Crouch stated in her presence that he could not go to KCSR's Kansas City depot because "some nigger bitch accused [him] of pinching her on the ass." It is undisputed, however, that this comment was not directed toward plaintiff and that Mr. Crouch was not referring to plaintiff. As at least one circuit has recognized, the impact of this type of "second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff." See _Cowan v. Prudential Ins. Co. of Am._, 141 F.3d 751, 758 (7th Cir.1998). This comment, then, adds very little to plaintiff's claim.

The remainder of plaintiff's allegations are simply too vague to support her sexual harassment claim. This is particularly true with respect to plaintiff's allegations concerning comments allegedly made by Jim Wood, a UTU representative from June 1998 through December 1998. According to plaintiff, she "heard Jim Wood [and three other individuals] talking about her sex life." She further avers that Jim Wood was "constantly harassing her, calling her offensive names, and degrading her."[FN11] Plaintiff offers no information with respect to when or how often she heard Mr. Wood talking about her sex life. Similarly, she offers no information concerning the nature of the "harassment" that Mr. Wood allegedly inflicted upon her or the names that he allegedly called her. In other words, plaintiff has failed to support these vague allegations with the requisite evidentiary detail. Such allegations are insufficient to defeat defendant's motion for summary judgment and, accordingly, the court will not consider these allegations in its analysis of plaintiff's claim. See _Hooks v. Diamond Crystal Specialty Foods, Inc._, 997 F.2d 793, 8000 (10th Cir.1993) ("In order to defeat summary judgment, the nonmoving party must do more than assert conclusory allegations;" plaintiff must allege "concrete facts"); _Woodward v. City of Worland_, 977 F.2d 1392, 1398 (10th Cir.1992) (affirming summary judgment for defendant in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

section 1983 action where plaintiff was "unable to respond to the ... motion for summary judgment with evidence of specific acts of sexual harassment;" "generalized allegations of continuing sexual harassment" were too "vague, non-time-specific and conclusory" to support claim).[FN12]

> FN11. Although plaintiff does identify two specific comments allegedly made by Mr. Wood, it is undisputed that these comments, to the extent they were made, were made prior to the time that Mr. Wood became a union representative.

> FN12. Similarly, plaintiff alleges that Mark Crouch "called [her] sexually offensive names and degraded [her];" that Mr. Crouch was "rude to [her];" and that Mr. Crouch "acted like he didn't have time for [her]." Plaintiff fails to elaborate on these allegations and, thus, the allegations are simply too vague to defeat a motion for summary judgment.

*8 In short, construing the evidence in the light most favorable to plaintiff, the court concludes that the handful of comments identified by plaintiff in support of her sexual harassment claim against the union are simply insufficient to state a claim for sexual harassment within the meaning of Title VII. For all of the above reasons, summary judgment is granted in favor of defendant on plaintiff's sexual harassment claim.

2. Sex Discrimination

In the pretrial order, plaintiff alleges that defendant UTU "treated plaintiff differently from similarly situated male members in its representation of her as an employee of [KCSR]." Each and every one of the specific allegations in the pretrial order, however, concern defendant's alleged failure to assist and/or protect plaintiff in connection with KCSR's alleged discrimination against plaintiff on the basis of her sex. Similarly, plaintiff's papers in response to defendant's motion for summary judgment reference only defendant's alleged failure to assist or protect plaintiff in connection with KCSR's alleged sexual discrimination. Thus, the court can discern no specific allegations supporting plaintiff's claim in the pretrial order that defendant treated plaintiff differently from similarly situated male members in its representation of her. To be sure, the record is devoid of any evidence suggesting that male union members received more favorable treatment by UTU.[FN13] There is no evidence, for example, that the union assisted male members in connection with discrimination claims. Indeed, plaintiff does not even argue that male members received assistance or protection from the union with respect to discrimination claims. Thus, to the extent that plaintiff purports to hold the union directly liable for sex discrimination, that claim must fail. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 867 (7th Cir.1997) (affirming summary judgment in favor of union on sex discrimination claim where plaintiff pointed to no evidence that the union treated similarly situated female members differently than it treated plaintiff); *see also Richardson v. Bakery, Confectionary & Tobacco Workers, Local No. 26*, 92 F.3d 1197, 1996 WL 422070, at *2 (10th Cir. July 29, 1996) (affirming summary judgment in favor of union on race discrimination claim where plaintiff failed to provide any evidence of intentional discrimination or that he was treated differently than non-minority union members).[FN14]

> FN13. The only possible exception is plaintiff's allegations that she was subjected to sexual harassment by her union representatives. These allegations, however, have been addressed in the prior section of this opinion.

> FN14. While the court recognizes that citation to unpublished opinions remains unfavored, it concludes that the Circuit's decision in Richardson is helpful in that it specifically addresses the very issue presented here.

3. Retaliation

Plaintiff also claims that defendant, after plaintiff filed her charge of discrimination against the union on October 16, 1998, refused to process any of plaintiff's timeslips concerning her Engineer training grievance. Defendant contends that summary judgment is appropriate because there is simply no evidence that defendant "failed to process" plaintiff's timeslips; rather, plaintiff's subsequent timeslips were held in abeyance by agreement of UTU and KCSR pending arbitration of plaintiff's initial appeal. In essence, then, defendant maintains that plaintiff has failed to show the requisite "adverse action" and has failed to show that any action with respect to

plaintiff's timeslips was based on plaintiff's filing of an EEOC charge. As set forth below, the court agrees with defendant that plaintiff has failed to establish a prima facie case of retaliation against UTU. Summary judgment on this claim is, therefore, appropriate.

*9 Title VII prohibits a labor organization from retaliating against a member who has claimed discrimination: "It shall be an unlawful employment practice ... for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge ... under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *See Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1234 (10th Cir.2000). According to defendant, plaintiff cannot satisfy the second and third elements of her prima facie case of retaliation.

With respect to the first element, the parties apparently agree that a union's refusal to process a valid grievance may, in certain circumstances, constitute an adverse action for purposes of establishing a retaliation claim under Title VII. *See Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991) (a union's abandonment of a grievance that the union has a contractual responsibility to pursue on the employee's behalf amounts to an adverse action). The district court in *Johnson,* however, determined that an adverse action may be found "where a plaintiff is deprived of the ability 'to expeditiously ascertain and enforce his rights under [a] collective bargaining agreement with his employer.' " *See id.* (quoting *McCauley v. Greensboro City Bd. of Educ.,* 714 F.Supp. 146, 152 (M.D.N.C.1987). Here, it is undisputed that plaintiff was not deprived of her ability to "expeditiously ascertain and enforce" her rights under the collective bargaining agreement. Rather, the union continued to grieve plaintiff's timeslips even after she filed her EEOC charge. While the formal processing of her subsequent timeslips was held in abeyance pending arbitration of her initial appeal, that initial appeal encompassed the same issues and employment rights as plaintiff's subsequent timeslips. And the union, at all times, continued to press that appeal, including scheduling the appeal for arbitration. In fact, the only reason that the union did not ultimately process plaintiff's subsequent timeslips (and the reason that the arbitration never took place) is because plaintiff unilaterally agreed to withdraw all grievances and claims against KCSR in connection with her May 1999 settlement. In other words, plaintiff has simply not shown that she suffered any adverse action-or that she was harmed in any way-by virtue of the fact that the union held the processing of certain claims in abeyance pending the resolution of plaintiff's initial (and identical) claims. Thus, plaintiff has failed to set forth sufficient facts with respect to the second element of her prima facie case of retaliation.

*10 Plaintiff also falls short with respect to the third element of her prima facie case. Simply put, plaintiff has failed to come forward with any evidence from which a jury could reasonably conclude that a causal connection exists between plaintiff's filing an EEOC charge in October 1998 and defendant's alleged refusal to process further her penalty timeslips. As the Tenth Circuit has noted, a causal connection is established where the plaintiff presents "evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." Here, the union has come forward with undisputed evidence that the practice of holding claims in abeyance pending arbitration of related claims is common at KCSR. It is further undisputed that the purpose of the practice is to allow an arbitration of the initial claims to proceed, with an understanding that subsequent, related claims will be settled on the basis of the arbitration decision. Plaintiff offers no evidence that the union's agreement with KCSR to hold plaintiff's subsequent timeslips in abeyance was based on anything other than this common practice. Plaintiff's only evidence in support of causal connection is that she filed her charge in October 1998 and, sometime thereafter, the union agreed to hold her subsequent claims in abeyance. No reasonable jury could infer a causal connection based solely on this evidence. Accordingly, plaintiff has failed to establish the third element of her prima facie case.

For the foregoing reasons, summary judgment is granted on plaintiff's retaliation claim against defendant.

• Plaintiff's Failure-to-Assist Claims

In addition to her claims based on a theory of direct liability, plaintiff claims that defendant is liable under Title VII for failing to assist and/or protect plaintiff in connection with her claims against KCSR.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 821-3   Filed 09/27/06   PageID.10854   Page 10 of 11

Not Reported in F.Supp.2d                                                                  Page 9
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d)

Specifically, plaintiff claims that defendant failed to file a grievance alleging sex discrimination in connection with the Engineer training position; failed to file a grievance challenging the sexual harassment that plaintiff allegedly endured as a KCSR employee; failed to adequately and reasonably investigate plaintiff's complaints of KCSR's discriminatory practices, including sexual harassment in the workplace; failed to refer plaintiff to the EEOC or to KCSR's human resources office regarding her complaints of sex discrimination and sexual harassment; and failed to protect plaintiff from the retaliatory acts of KCSR.

A union's deliberate refusal to file grievable discrimination claims violates Title VII. See Goodman v. Lukens Steel Co., 482 U.S. 656, 667-69 (1987); accord Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 798 (10th Cir.1997); York v. AT & T Co., 95 F.3d 948, 956-57 (10th Cir.1996). To establish a prima facie case against a union under Title VII for failing to file a grievance, plaintiff must demonstrate that (1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) there was some indication that the union's actions were motivated by discriminatory animus. See York, 95 F.3d at 955-56. Here, it is undisputed that the collective bargaining agreement between UTU and KCSR did not contain a non-discrimination provision or a sexual harassment provision.[FN15] Thus, plaintiff simply cannot establish that KCSR violated the agreement with respect to her or that the union permitted the violation to go unrepaired. In other words, neither sex discrimination nor sexual harassment was a "grievable" claim that the union could pursue. See Goodman, 482 U.S. at 668-69 (deliberately refusing to file "grievable" racial discrimination claims violated Title VII; collective bargaining agreement contained express nondiscrimination clause). Under the clear test adopted by the Tenth Circuit in York, plaintiff's claims against the union based on the union's failure to file grievances based on sex discrimination and sexual harassment must fail. Compare Woods v. Graphic Communications, 925 F.2d 1195, 1197, 1201-02 (9th Cir.1991) (union liable under Title VII for failure to file grievance where collective bargaining agreement contained explicit anti-discrimination clause); Agosto v. Correctional Officers Benevolent Ass'n, 107 F.Supp.2d 294, 305-06 (S.D.N.Y.2000) (union's refusal to process plaintiff's sexual harassment complaint against employer was valid basis for Title VII claim against union where sexual harassment was a grievable offense pursuant to collective bargaining agreement); Rainey v. Town of Warren, 80 F.Supp.2d 5, 16-17 (D.R.I.2000) (denying summary judgment on plaintiff's Title VII failure-to-file-grievance claim against union where both management and union agreed that sexual harassment and sex discrimination were covered by the collective bargaining agreement); Dohrer v. Metz Baking Co., No. 96-C-50455, 1999 WL 60140, at *9 (N.D.Ill. Jan. 27, 1999) (denying union's motion to dismiss plaintiff's Title VII failure-to-file-grievance claim where collective bargaining agreement contained express nondiscrimination clause).

> FN15. A copy of the collective bargaining agreement has not been included in the record before the court and, thus, the court has not had the opportunity to review the relevant provisions of the agreement.

*11 Plaintiff's allegations that defendant failed to refer to the EEOC,[FN16] failed to reasonably investigate her complaints, and failed to protect her from the retaliatory acts of KCSR meet a similar fate. Simply put, plaintiff has not demonstrated that the union had a duty to refer her to the EEOC, to investigate her complaints (that were not grievable anyway), or to protect her from retaliation. Certainly, there is no evidence in the record that the union assumed these duties under the collective bargaining agreement. Moreover, there is no evidence (or argument from plaintiff) that the union otherwise assumed such duties. In the absence of such evidence, the union cannot be liable to plaintiff for its failure to assist her as fully as she would have liked. Summary judgment is, therefore, appropriate on plaintiff's failure-to-assist claims.

> FN16. Even without the union's assistance, plaintiff contacted the EEOC in a timely fashion.

Plaintiff's Constructive Discharge Claim

Plaintiff also claims that the union constructively discharged her from her employment with KCSR. A constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir.1998) (citing Derr v. Gulf Oil Corp., 796

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

F.2d 340, 344 (10th Cir.1986)).

Summary judgment on plaintiff's constructive discharge claim is appropriate for at least two reasons. First, because the court has concluded that defendant did not commit any "illegal discriminatory acts" and is entitled to summary judgment on plaintiff's other claims, the court must grant summary judgment in favor of defendant on plaintiff's constructive discharge claim. See *Perez v. Interconnect Devices Inc.*, No. CIV.A. 97-2194-GTV, 1998 WL 781220, at *12-13 (D.Kan. Oct. 22, 1998), aff'd, 189 F.3d 478 (10th Cir.1999). Second, it is undisputed that plaintiff voluntarily resigned her employment with KCSR in exchange for $350,000. See *Orback v. Hewlett Packard Co.*, 97 F.3d 429, 433-34 (10th Cir.1996) (no evidence to support inference of constructive discharge where plaintiffs "left voluntarily, availing themselves of the benefit of a severance package in exchange for their resignations"). Summary judgment, then, is granted on plaintiff's constructive discharge claim.[FN17]

> FN17. Moreover, plaintiff has failed to set forth any facts establishing that the union could have terminated plaintiff's employment with KCS or caused plaintiff to be terminated from her employment with KCS. While the court need not decide whether summary judgment would be appropriate on this basis, at least one court has concluded that summary judgment is appropriate in such circumstances. See *LaPointe v. United Autoworkers Local 600*, 103 F.3d 485, 488 (6th Cir.1996) (employee failed to create genuine issue of material fact regarding whether union had constructively discharged him from underlying employment where it was undisputed that the union could not terminate plaintiff's underlying employment or cause plaintiff to be terminated from employment).

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (doc. # 69) is granted and plaintiff's motion to strike defendant's defense of release (doc. # 79) is denied. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

D.Kan.,2000.
Thompson v. United Transp. Union
Not Reported in F.Supp.2d, 2000 WL 1929963 (D.Kan.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.