# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2003 WL 22741664 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
THE MILLGARD CORPORATION Plaintiff,
v.
E.E. CRUZ/NAB/FRONIER-KEMPER, a joint venture, E.E. Cruz & Co., Inc., Nab Construction, Inc., and Aetna Casualty and Surety Company, Defendants.
andLIBERTY MUTUAL INSURANCE COMPANY Additional Defendant by Counterclaim
**No. 99 Civ. 2952(LBS).**

Nov. 18, 2003.

Subcontractor sued contractor, alleging breach of contract, breach of payment bond, wrongful termination, quantum meruit, and unjust enrichment, and the contractor filed a third-party complaint against another subcontractor for contribution, and a counterclaim against the surety on plaintiff subcontractor's performance bond. On the surety's motion for summary judgment, the District Court, Sand, J., held that: drawings that were not formally incorporated into the subcontract were not admissible under the parol evidence rule.

Motion granted.

West Headnotes

**Evidence 157 🗝⟶450(7)**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(D) Construction or Application of Language of Written Instrument
            157k449 Nature of Ambiguity or Uncertainty in Instrument
                157k450 In General
                    157k450(7) k. Contracts for Buildings and Other Works. Most Cited Cases
Under New York law, omission of terms allegedly necessary to flesh out and explicate the intent of a subcontract, which contained a merger clause, did not render the subcontract ambiguous, and thus, drawings that were not formally incorporated into the subcontract were not admissible under the parol evidence rule, so as to support contractor's claim that subcontractor's obligations under the subcontract included "homogenous mixing to achieve a minimum of 500 PSI in all of the soils in the Project site"; the only suggestion that crucial terms were missing came from extrinsic evidence, and the subcontract explicitly purported to set out the specific obligations binding the subcontractor.

MEMORANDUM AND ORDER
SAND, J.
*1 For the reasons set out below, Liberty Mutual Insurance Company's motion for summary judgment as to the Joint Venture's only counterclaim against Liberty Mutual Insurance Company asserted in the Joint Venture's Answer and Counterclaims to the Second Amended Complaint, is hereby granted.

I. Background

The background to this case has been previously set out in *Millgard v. E.E. Cruz,* 2002 WL 31812710 (Dec. 12, 2002 S.D.N.Y..) ("Millgard I"). Only the facts most relevant to the motions for summary judgment against the Joint Venture ("JV") will be repeated here.

Liberty Mutual Insurance Company ("Liberty") argues that it bonded only the Subcontract between Millgard Corporation ("Millgard") and the Joint Venture. Thus, it is liable to the Joint Venture if, but only if, Millgard breached the obligations set out within the Subcontract. The basis for the JV's counterclaim against Liberty rests upon the assertion that Millgard in fact breached the Subcontract.[FN1] The JV argues that Millgard had "an obligation to demonstrate during the test program its ability to achieve a homogeneous mix with a strength of a minimum 500 PSI in all the soils in the Project site." *Reply Affidavit of Edward Cruz, Oct. 14, 2003, p. 2.* The Joint Venture alleges that Millgard breached the Subcontract by failing to meet this strength requirement.

    FN1. "The Joint Venture terminated the Subcontract on January 29, 1998 by reason of Millgard's breaches of the Subcontract. By reason of Millgard's breaches of the Subcontract, Joint Venture has or will incur

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 821-4   Filed 09/27/06   PageID.10936   Page 3 of 8

Not Reported in F.Supp.2d                                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22741664 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

damages, including the costs of a substitute ESS, of at least $5.9 million for which Millgard is liable." JV's Second Counterclaim Against Millgard, paragraphs 158-59.

There is no dispute that this strength requirement is not an explicit term of the Subcontract. Rather, the JV contends that the specification was established through a series of drawings passed between the firm charged with designing the ESS (GZA), and the firm charged with building it (Millgard). Numerous drawings were incorporated through Schedule "B" of the Subcontract.[FN2] It is undisputed that the drawings establishing the strength requirement in question were not so incorporated.

> FN2. Item number 2 on Schedule "B" of the Subcontract incorporates "Contract Drawings. Drawings 1-3; 10-29; 30-102; 147-148."

The JV argues that the Subcontract insufficiently specifies the nature of the work Millgard was to perform, and that the parties intended to rely upon additional drawings to determine Millgard's obligations.[FN3] Both Liberty and Millgard dispute this. They insist that the Subcontract fully set out the agreement between the JV and Millgard, and comprehensively describes the full extent of Millgard's obligations to the JV.

> FN3. "It is undisputed by all of the parties that the GZA Preliminary Earth Support Design dated December 4 1996 was not sufficiently definite to determine the manner of performance of the work of Millgard under the subcontract and that the parties contemplated that there would be detailed working drawings prepared by GZA." Joint Venture's Reply Brief, p. 1.

In particular, Liberty's position is that Millgard was contractually obligated to build the soil-mixed ESS, once a design was completed by GZA and approved by the City Engineer. Thus, Liberty contends that under the Subcontract, Millgard did not guarantee that (1) Millgard's soil-mixing technology would be effective or suitable for this particular project; (2) that the City Engineer would approve the soil-mixed ESS; or (3) that "any testing program in support of the soil-mixed ESS design would yield supportive results." See Liberty's Brief for Summary Judgment, p. 8. Liberty further contends that Paragraph 60 of the Subcontract serves as a merger clause, and so eliminates any recourse to parol or extrinsic evidence in interpreting the contract. Looking solely to the four corners of the agreement which was the basis of its undertaking, Liberty insists that Millgard agreed only to build the ESS once approved, and in no way assumed the risk that the soil-mixed ESS would not be approved.

II. Legal Analysis of the Admissibility of Parol Evidence

*2 The relevant legal issue here may be simply stated. The JV claims that Millgard breached the Subcontract. The provisions that the JV claims Millgard breached, however, are not contained within the four corners of the Subcontract itself. Rather, they appear in drawings that were not formally incorporated into the Subcontract. In order to prove that Millgard breached, the JV must demonstrate that those terms contractually bound Millgard, and consequently bound Liberty. Specifically, the JV claims that Millgard's obligations under the Subcontract included "homogenous mixing to achieve a minimum of 500 PSI in all of the soils in the Project site." *See Reply Brief of the Joint Venture,* p. 22.

The JV argues that in order to give full meaning to the intentions of the parties, it is necessary for the documents containing the homogenous mixing requirements to be read into the Subcontract. Liberty objects on two grounds-first, that under the parol evidence rule, evidence extrinsic to the Subcontract regarding the parties' contractual intentions must be excluded, and second, that Paragraph 60 of the Subcontract is a merger clause. Merger clauses establish the parties' intention to integrate their contract, and to treat the contract as all-inclusive. *Fogelson v. Rackfay Const. Co.,* 300 N.Y. 334, 90 N.E.2d 881, 884 (N.Y.1950). A completely integrated contract precludes reference to oral and written agreements. *W.W.W. Associates, Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (N.Y.1990). Liberty contends that the merger clause prevents the documents containing the obligations upon which the JV relies for its breach of contract counterclaim from being read into the Subcontract. If these documents are excluded from the Subcontract, the JV's counterclaim for breach fails.

The JV recognizes the parol evidence rule, and does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not contest that Paragraph 60 of the Subcontract is a merger clause, and even refers to it as such in its Reply Brief. *See Reply Brief on Behalf of the Joint Venture, p. 22.* Instead, the JV argues that the parol evidence rule and a merger clause will not preclude admission of extrinsic and parol evidence where the contractual language is ambiguous. *Id.* at 1, 565 N.Y.S.2d 440, 566 N.E.2d 639. The JV then asserts that ambiguity does exist: "An ambiguity is created in the subcontract by the GZA Preliminary Earth Support Design dated December 4, 1996, which all parties concede was not sufficiently definite to determine the manner of performance of the soil mix work of Millgard under the subcontract." *Id.* at 22, 565 N.Y.S.2d 440, 566 N.E.2d 639.

As a statement of law, the JV is correct: where ambiguity exists within a contract, parol evidence is admissible to resolve that ambiguity. "Generally, the parol evidence rule can be avoided only where there is ambiguity in the written agreement." *Buckthorn, Ltd. v. Rollins Burdick Hunter of New York, Inc.,* 109 A.D.2d 8, 489 N.Y.S.2d 729, 731 (N.Y.App.Div.1985). "Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent." *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir.1990) (citing *International Klafter Co. v. Continental Casualty Co.,* 869 F.2d 96, 100 (2d Cir.1989); *Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 421 N.Y.S.2d 556, 559, 396 N.E.2d 1029 (N.Y.1979). "Moreover, parol evidence of the parties' intentions as to the terms of a contract is inadmissible when the contract is unambiguous." *CCG Associates I v. Riverside Associates,* 157 A.D.2d 435, 556 N.Y.S.2d 859, 862 (N.Y.App.Div.1990). Thus, the JV must first demonstrate the existence of ambiguity in the Subcontract before it can introduce parol evidence to establish the validity of the contractual obligations it alleges Millgard breached.

*3 An ambiguous term is one that is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987), citing *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 994 (S.D.N.Y.1968)).

Here, the JV does not suggest that there is ambiguous language within the Subcontract. Rather, they argue that ambiguity arises from omission of terms necessary to flesh out and explicate the intent of the contract. In particular, the JV asserts that the Subcontract is ambiguous because the GZA Preliminary Earth Support Design of December 4, 1996 ("PESD") fails to define with sufficient specificity Millgard's obligations under the Subcontract. The PESD is a part of the Subcontract, incorporated as item 5 of Schedule "B" of the Subcontract. Under the JV's theory, the PESD alone is insufficiently precise. For the contract to be rendered meaningful, such that Millgard could actually build the ESS it contracted to construct, additional terms must be read into the contract. According to the JV, it was in failing to meet one such term that Millgard breached its contractual obligations.

However, under New York law, the omission of terms in a contract does not create ambiguity. In *Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151, 468 N.Y.S.2d 649 (N.Y.App.Div.1983). There, the plaintiffs (minority shareholders in a corporation) claimed that the majority had breached the shareholders' agreement in refusing to permit the minority shareholders to designate a successor director in the place of one who had resigned. It was "plaintiffs' position that extrinsic evidence should be received because the failure of the agreement to delineate the succession of directors renders it ambiguous." *Id.* at 156, 468 N.Y.S.2d 649. The agreement in question contained no reference as to the "procedure to be employed in the filling of such a vacancy." *Id.* at 156-57, 468 N.Y.S.2d 649. Absent any reference within the agreement to the method to be employed, the court rejected the plaintiffs' assertion that the agreement was ambiguous on that issue. "An omission or mistake in a contract does not constitute an ambiguity." *Id.* at 157, 468 N.Y.S.2d 649. The court noted that "An obligation undertaken by one of the parties that is intended as a promise or agreement should be expressed as such, and not left to implication." *Id.*

In *Reiss v. Financial Performance Corp.,* 97 N.Y.2d 195, 738 N.Y.S.2d 658, 764 N.E.2d 958 (N.Y.2001), the Court of Appeals had to consider another contract with an omitted term. There, plaintiffs claimed they were entitled to purchase the number of shares of stock in a corporation specified in warrants they held, notwithstanding that corporation's subsequent reverse stock split. The court held that the failure to address the contingency of a reverse stock split did not create ambiguity. The court explained that even "where a contingency has been omitted, we will not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 821-4   Filed 09/27/06   PageID.10938   Page 5 of 8

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2003 WL 22741664 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

necessarily imply a term since courts may not by construction add or excise terms ... and thereby make a new contract for the parties under the guise of interpreting the writing." *Id.* at 961 (internal cites omitted). *See also In re Rivas' Trust*, 100 N.Y.S.2d 357, 366 (N.Y.Sup.Ct.1950) (holding that "an omission is not an ambiguity").

**\*4** Since an omission of a term does not itself create an ambiguity, the contract must be understood in light of the terms actually expressed within it. "Under New York law, if a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed." *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.*, 833 F.Supp. 948, 955 (E.D.N.Y.1993) (internal citations omitted). Here, that means that the Subcontract between Millgard and the JV must be understood not to include the additional performance requirements extrinsic to the Subcontract.

Moreover, in New York, the court determines whether or not a contract is ambiguous solely by reference to the contract itself. "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and *a court makes this determination by reference to the contract alone.*" *Burger King Co. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990) (emphasis added); *see also Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir.1996) ("Under New York law ... parol evidence is not admissible to create ambiguity."); *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 566 N.E.2d 639 (N.Y.1990) ("The question next raised is whether extrinsic evidence should be considered in order to *create* an ambiguity in the agreement. That question must be answered in the negative.") (emphasis in the original); *Intercontinental Planning v. Daystrom, Inc.*, 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 248 N.E.2d 576 (N.Y.1969) ("[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."). Thus, to demonstrate ambiguity, the JV must do so solely on the basis of statements or writings within the Subcontract itself.

The Subcontract, on its face, offers no evidence of missing terms. The only suggestion that crucial terms are missing comes from extrinsic evidence. In oral argument, counsel for the JV argued that "everyone's experts agree that these drawings [included in the Subcontract] don't tell you anything and that you need to know particularly what the strength of the wall ... which is this 500 PSI requirement." *Oral Arguments, October 23, 2003 p 4.* The JV repeats on numerous occasions its assertion that it is "undisputed by all of the parties that the GZA Preliminary Earth Support Design" is indefinite so as to give rise to ambiguity. *See Affidavit of Edward Cruz, October 14, 2003.* The problem is that even if the statement were true, it is irrelevant. Ambiguity sufficient to warrant admission of parol evidence despite a merger clause must be intrinsic to the document in question. Since it is unable to point to ambiguous terms within the Subcontract, and is precluded by New York law from finding that omissions can give rise to ambiguity, the JV relies upon extrinsic evidence to argue that the Subcontract is nonetheless ambiguous. As explained above, New York law also precludes the use of parol evidence to create ambiguity in an integrated contract. The JV's attempts to demonstrate ambiguity in the Subcontract through reliance upon evidence extrinsic to it accordingly fail.

**\*5** In support of its position, the JV cites two cases. JV cites *Tobin v. The Union News Co.*, 18 A.D.2d 243, 239 N.Y.S.2d 22 (N.Y.App.Div.1963) in support of its contention that recourse to parol evidence is necessary to understand the Subcontract. *Tobin* concerned language in a contract obligating the lessee of real property to covert the second floor of the rented property into a banquet hall. Details of the required conversion were not clearly specified. However, the "obligation to convert is clear and create[d] a valid obligation on the lessee's part." *Id.* at 244, 239 N.Y.S.2d 22. Thus, the court held that while the details were vague, because the contract made the obligation to convert the second floor into a restaurant facility explicit, the obligation was valid. Having determined that the underlying obligation was required by the contract, it was then appropriate to look to parol evidence to elucidate the intentions of the parties as to the details of fulfilling the obligation. "In the lease the obligation assumed by the lessee is there-plain, certain, and positive. The precise nature of the obligation must be sifted from the testimony concerning the surrounding circumstances." *Id.* at 245, 239 N.Y.S.2d 22.

In applying *Tobin* to the circumstances here, two approaches suggest themselves. First, one might understand the 500 PSI requirement as a separate obligation-one that was not included in the initial agreement. On that understanding, the JV seeks to use parol evidence to establish an affirmative obligation on the part of Millgard to guarantee the

success of the ESS. In other words, parol evidence is necessary for more than elucidating the details of a clearly contracted for obligation. The JV seeks to use parol evidence to establish the existence of a specific obligation that cannot be found within the four corners of the document.

This is contrary to the principle articulated in *Tobin,* which held that parol evidence may be introduced to clarify details of a clearly existing contractual obligation, but not to affirmatively create the obligation. Here, the contract is not ambiguous with regard to Millgard's obligation to guarantee the success of the mixed-soil ESS. It is unambiguous because it exists nowhere in the contractual language, and therefore cannot be understood as an obligation within the contract. If it were, and the details of the manner in which it obligated itself to guarantee that result were unclear, the holding in *Tobin* would require looking to parol evidence to elucidate the details. But that same holding precludes this Court from looking to parol evidence to find an obligation that does not exist within the contract itself. Accordingly, this application of *Tobin* to the instant facts will not avail the JV.

The second understanding of how the holding in *Tobin* could be applied to this case is to compare the obligation expressed in *Tobin* to "renovate the upstairs" to the obligation expressed in the Subcontract to "build the ESS." On this reading, the JV is not attempting to create an obligation out of parol evidence that does not exist within the Subcontract itself. Rather, it takes an obligation existing within the Subcontract ("build the ESS"), and argues that parol evidence is necessary to map out the details and precise obligations that Millgard incurred in contracting to build the ESS.

*6 This approach holds a certain appeal. In both cases obligations explicitly exist. In both cases, certain details fleshing out the actual requirements of the contracted-for obligation are lacking. The problem with the analogy to the instant facts is that it ignores the existence of the Subcontract itself, in two crucial respects.

First, the Subcontract explicitly purports to set out the specific obligations binding Millgard. "[T]he Subcontractor will furnish all labor, material and equipment to complete the work to install the earth support system ... in strict conformity to and with the drawings and specifications and addenda thereto ... which drawings and specifications are a part hereof as though annexed hereto." *Subcontract between Millgard and the Joint Venture, p. 1.* Moreover, these are not empty words: the Subcontract in fact contains specifications describing Millgard's performance obligations. Schedule "A" of the Subcontract between the JV and Millgard incorporates the General Contract, General Conditions, and the Specifications as part of the Subcontract. The Specifications lay out project requirements and thus explain what Millgard must do under the Subcontract. Schedule B incorporates numerous preliminary plans, drawings and schedules as part of the Subcontract. These further describe Millgard's obligations. In short, the Millgard Subcontract describes in considerable detail Millgard's obligations in building the ESS. In *Tobin,* however, the court relied upon extrinsic evidence precisely because no other information existed within the contract concerning the method of performance of the obligations to which the parties had agreed. There, the court noted that the "language of the clause ... simply states that the lessor's living quarters are to be converted by the lessee to banquet rooms within one year." *Id.* at 245, 239 N.Y.S.2d 22. Had details existed within the contract itself, there would have been no need to look to parol evidence. Here, while not every contingency is explicated, Millgard's obligations are nonetheless sufficiently described.

Second, the Millgard Subcontract contains a merger clause: language explicitly stating that there are no additional obligations between the parties. Paragraph 60 states: "It is agreed that all understandings and agreements heretofore between the parties are merged in this Subcontract, which alone fully and completely expresses their agreement, and this Subcontract has been entered into after full investigation and consideration, neither party relying upon any statement or representation not embodied in this Subcontract." Under New York law, the purpose of a merger clause is to require the full application of the parol evidence rule to bar admission of extrinsic evidence. *Primex Intern. Co. v. Wal-Mart Stores, Inc.,* 89 N.Y.2d 594, 657 N.Y.S.2d 385, 388, 679 N.E.2d 624 (N.Y.1997). There is no evidence that the contract at issue in *Tobin* contained a similar provision.

Thus, unlike the contract in *Tobin,* the Subcontract here contains language that purports (and in fact does) describe performance requirements, and additional language excluding extrinsic evidence to demonstrate additional requirements. Based on these distinctions, the JV's reliance upon *Tobin* is inapposite.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*7 The JV also relies upon *La Chicotte v. Richmond Railway and Electric Co.,* 15 A.D. 380, 44 N.Y.S. 75 (N.Y.App.Div.1897). This case fails for the same reasons as *Tobin.* The Court in *La Chicotte* states that in their efforts to interpret the contract, they are not "aided by specification of any kind. So that the whole question of just what the builder contracted to do in detail is left in doubt." *Id.* at 386, 44 N.Y.S. 75. Confronted with the clear existence of a general obligation and a complete lack of performance details, the Court allowed parol evidence to resolve the indeterminacy. As discussed above, however, that situation differs sharply from that of the instant case. The Subcontract provides a great many details regarding the details of Millgard's obligations under the parties' agreement.

Consequently, this Court holds that the Subcontract lacks such ambiguity as to the terms and obligations of Millgard's performance obligations as to require (and justify) the admission of extrinsic evidence.

The underlying question of whether contractual terms are ambiguous is one of law, to be resolved by the court. *See Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir.1990); *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (N.Y.1990); *Van Wagner Adv. Corp. v. S & M. Enters.,* 67 N.Y.2d 186, 501 N.Y.S.2d 628, 631, 492 N.E.2d 756 (N.Y.1986). Where no ambiguity as to the parties' intentions exists, summary judgment is appropriate. *Pharmaceutical Horizons v. Sterling Drug,* 127 A.D.2d 514, 515, 512 N.Y.S.2d 30 (N.Y.App.Div.1987) ("Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment."). Having determined that there is no ambiguity, this Court finds that Liberty is entitled to summary judgment on its motion to dismiss those counterclaims of the JV that rely upon extrinsic evidence to demonstrate Millgard's breach of the Subcontract.

This Court considers the foregoing sufficient justification to exclude parol evidence, and thus grant Liberty's motion of summary judgment to dismiss the JV's breach of contract counterclaims that rely upon extrinsic evidence. However, three additional considerations further support the decision to exclude extrinsic evidence here.

First, the terms and drawings upon which the JV now relies to establish the obligations it claims that Millgard breached predate execution of the agreement, and could easily have been included among those other drawings if the parties had so desired. The JV offers no explanation as to why such terms were not included. The simplest explanation is that the JV either considered them unimportant at the time it wrote the contract, or sought to have them included but was unable to do so. Either way, the decision not to include such terms is more consistent with the Court's duty to give the greatest weight to upholding the contracting parties' intentions as expressed in the agreement itself.

Second, numerous other drawings were in fact incorporated into the Subcontract. Under the hoary doctrine of *expressio unius est exclusio alterius,* the incorporation of some drawings into the Subcontract through Schedule "B" strongly suggests a decision not to include others, such as those urged upon the Court by the JV.

*8 Finally, where contracts are drafted by skilled attorneys, courts are required to treat the written contract as giving expression to the intentions of the parties. There can be no doubt that much care and time was expended by JV's counsel, who drafted the Subcontract. The omission of the additional performance requirements must be understood as a conscious decision not to include such terms. If the drawings were simply overlooked, it must be understood to signify that the drawings were not regarded to be of such importance as to warrant their inclusion.

### III. Conclusion

For the reasons set out above, Liberty's motion for summary judgment as to the Joint Venture's only counterclaim against Liberty asserted in the Joint Venture's Answer and Counterclaims to the Second Amended Complaint is hereby granted.

The Court recognizes that other motions in this litigation are fully submitted. The Court will meet with the parties on November 25th, 2003 at 10:00 AM, by which time it is anticipated that all pending motions will have been decided.

SO ORDERED.

S.D.N.Y.,2003.
Millgard Corp. v. E.E.Cruz/Nab/Fronier-Kemper
Not Reported in F.Supp.2d, 2003 WL 22741664 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

Case 2:03-cv-00294-DN   Document 821-4   Filed 09/27/06   PageID.10941   Page 8 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22741664 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

- 2003 WL 23951680 (Trial Pleading) (Oct. 08, 2003)
- 2003 WL 23671591 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of the Joint Venture Aligned Defendants to Deem the Counterclaims Against Millgard As Claims in The Nature of Recoupment (Apr. 10, 2003)
- 2002 WL 32595616 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Liberty Mutual Insurance Company's Motion for Summary Judgment (Dec. 02, 2002)
- 2002 WL 32595612 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Millgard's Cross-Motion for Leave to Amend Pleadings (Nov. 19, 2002)
- 2002 WL 32595608 (Trial Motion, Memorandum and Affidavit) Memorandum of the Third Party Defendants, Gza Parties, in Support of Their Opposition to the Cross-Motion of the Plaintiff, Millgard Corporation for Leave to Amend to Assert Direct Claims Against the Gza Parties (Nov. 08, 2002)
- 2002 WL 32595603 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Summary Judgment (Oct. 28, 2002)
- 2002 WL 32595598 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend Complaint (Oct. 09, 2002)
- 2002 WL 32595600 (Trial Motion, Memorandum and Affidavit) Amended Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend Complaint (Oct. 09, 2002)
- 2002 WL 32595597 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Order to Show Cause to Approve Settlement (Sep. 11, 2002)
- 1999 WL 33885578 (Trial Motion, Memorandum and Affidavit) Reply to Gzany Counterclaims (Dec. 10, 1999)
- 1:99cv02952 (Docket) (Apr. 23, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.