# EXHIBIT A

SS-Soft. Corp.-030184-010385        Agreement Number  SOFT-000321

## AT&T TECHNOLOGIES, INC.
## SOFTWARE AGREEMENT

1. AT&T TECHNOLOGIES, INC., a New York corporation ("AT&T"), having an office at 1 Oak Way, Berkeley Heights, New Jersey 07922, and SEQUENT COMPUTER SYSTEMS, INC., a Delaware corporation having an office at 14360 N. W. Science Park Drive, Portland, Oregon 97229,

for itself and its SUBSIDIARIES (collectively referred to herein as "LICENSEE") agree that, after execution of this Agreement by LICENSEE and acceptance of this Agreement by AT&T, the terms and conditions set forth on pages 1 through 6 of this Agreement shall apply to use by LICENSEE of SOFTWARE PRODUCTS that become subject to this Agreement.

2. AT&T makes certain SOFTWARE PRODUCTS available under this Agreement. Each such SOFTWARE PRODUCT shall become subject to this Agreement on acceptance by AT&T of a Supplement executed by LICENSEE that identifies such SOFTWARE PRODUCT and lists the DESIGNATED CPUs therefor. The first Supplement for a specific SOFTWARE PRODUCT shall have attached a Schedule for such SOFTWARE PRODUCT. Any additional terms and conditions set forth in such Schedule shall also apply with respect to such SOFTWARE PRODUCT. Initially, Supplement(s) numbered 1 --------------- ------------------ are included in and made part of this Agreement.

3. Additional Supplements may be added to this Agreement to add additional SOFTWARE PRODUCTS (and DESIGNATED CPUs therefor) or to add or replace DESIGNATED CPUs for other SOFTWARE PRODUCTS covered by previous Supplements. Each such additional Supplement shall be considered part of this Agreement when executed by LICENSEE and accepted by AT&T.

4. This Agreement and its Supplements set forth the entire agreement and understanding between the parties as to the subject matter hereof and merge all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings or representations with respect to such subject matter other than as expressly provided herein or as duly set forth on or subsequent to the date of acceptance hereof in writing and signed by a proper and duly authorized representative of the party to be bound thereby. No provision appearing on any form originated by LICENSEE shall be applicable unless such provision is expressly accepted in writing by an authorized representative of AT&T.

Accepted by:

| SEQUENT COMPUTER SYSTEMS, INC. | AT&T TECHNOLOGIES, INC. |
|---|---|
| By [signature] 4/12/85 | By [signature] APR 18 1985 |
| (Signature)     (Date) | (Signature)     (Date) |
| David P. Rodgers | O. L. WILSON |
| (Type or print name) | (Type or print name) |
| Vice President of Engineering | Manager, Software Sales and Marketing |
| (Title) | (Title) |

Page 1 of 6

SS-Soft. Corp. '184

## I. DEFINITIONS

1.01 CPU means central processing unit.

1.02 COMPUTER PROGRAM means any instruction or instructions, in source-code or object-code format, for controlling the operation of a CPU.

1.03 DESIGNATED CPU means any CPU listed as such for a specific SOFTWARE PRODUCT in a Supplement to this Agreement.

1.04 SOFTWARE PRODUCT means materials such as COMPUTER PROGRAMS, information used or interpreted by COMPUTER PROGRAMS and documentation relating to the use of COMPUTER PROGRAMS. Materials available from AT&T for a specific SOFTWARE PRODUCT are listed in the Schedule for such SOFTWARE PRODUCT.

1.05 SUBSIDIARY of a company means a corporation or other legal entity (i) the majority of whose shares or other securities entitled to vote for election of directors (or other managing authority) is now or hereafter controlled by such company either directly or indirectly; or (ii) the majority of the equity interest in which is now or hereafter owned and controlled by such company either directly or indirectly; but any such corporation or other legal entity shall be deemed to be a SUBSIDIARY of such company only so long as such control or such ownership and control exists.

## II. GRANT OF RIGHTS

2.01 AT&T grants to LICENSEE a personal, nontransferable and nonexclusive right to use in the United States each SOFTWARE PRODUCT identified in the one or more Supplements hereto, solely for LICENSEE'S own internal business purposes and solely on or in conjunction with DESIGNATED CPUs for such SOFTWARE PRODUCT. Such right to use includes the right to modify such SOFTWARE PRODUCT and to prepare derivative works based on such SOFTWARE PRODUCT, provided the resulting materials are treated hereunder as part of the original SOFTWARE PRODUCT.

2.02 A single back-up CPU may be used as a substitute for a DESIGNATED CPU without notice to AT&T during any time when such DESIGNATED CPU is inoperative because it is malfunctioning or undergoing repair, maintenance or other modification.

2.03 LICENSEE may at any time notify AT&T in writing of any changes, such as replacements or additions, that LICENSEE wishes to make to the DESIGNATED CPUs for a specific SOFTWARE PRODUCT. AT&T will prepare additional Supplements as required to cover such changes. Changes covered by a Supplement shall become effective after execution of such Supplement by LICENSEE, acceptance thereof by AT&T and, in the case of each additional CPU, receipt by AT&T of the appropriate fee.

Page 2 of 6

SS-Soft. Corp.-020184

2.04 On AT&T'S request, but not more frequently than annually, LICENSEE shall furnish to AT&T a statement, certified by an authorized representative of LICENSEE, listing the location, type and serial number of all DESIGNATED CPUs hereunder and stating that the use by LICENSEE of SOFTWARE PRODUCTS subject to this Agreement has been reviewed and that each such SOFTWARE PRODUCT is being used solely on DESIGNATED CPUs (or temporarily on back-up CPUs) for such SOFTWARE PRODUCTS pursuant to the provisions of this Agreement.

2.05 No right is granted by this Agreement for the use of SOFTWARE PRODUCTS directly for others, or for any use of SOFTWARE PRODUCTS by others.

### III. DELIVERY

3.01 Within a reasonable time after AT&T receives the fee specified in the first Supplement for a SOFTWARE PRODUCT, AT&T will furnish to LICENSEE one (1) copy of such SOFTWARE PRODUCT in the form identified in the Schedule for such SOFTWARE PRODUCT.

3.02 Additional copies of SOFTWARE PRODUCTS covered by this Agreement will be furnished to LICENSEE after receipt by AT&T of the then-current distribution fee for each such copy.

### IV. EXPORT

4.01 LICENSEE agrees that it will not, without the prior written consent of AT&T, export, directly or indirectly, SOFTWARE PRODUCTS covered by this Agreement to any country outside of the United States.

### V. FEES AND TAXES

5.01 Within sixty (60) days after acceptance of this Agreement by AT&T, LICENSEE shall pay to AT&T the fees required by the Supplement(s) initially attached hereto for the DESIGNATED CPUs listed in such Supplement(s).

5.02 Within sixty (60) days after acceptance of each additional Supplement by AT&T, LICENSEE shall pay to AT&T any fee required by such additional Supplement for the DESIGNATED CPUs listed in such additional Supplement.

5.03 Payments to AT&T shall be made in United States dollars to AT&T at the address specified in Section 7.11(a).

5.04 LICENSEE shall pay all taxes, including any sales or use tax (and any related interest or penalty), however designated, imposed as a result of the existence or operation of this Agreement, except any income tax imposed upon AT&T by any governmental entity within the United States proper (the fifty (50) states and the District of Columbia). Fees specified in Supplement(s) to this Agreement and in Schedule(s) attached to Supplement(s) are exclusive of any taxes. If AT&T is required to collect a tax to be paid by LICENSEE, LICENSEE shall pay such tax to AT&T on demand.

CONFIDENTIAL

1710098501

SS-Soft. Corp. 00184

## VI. TERM

6.01  This Agreement shall become effective on and as of the date of acceptance by AT&T.

6.02  LICENSEE may terminate its rights under this Agreement by written notice to AT&T certifying that LICENSEE has discontinued use of and returned or destroyed all copies of SOFTWARE PRODUCTS subject to this Agreement.

6.03  If LICENSEE fails to fulfill one or more of its obligations under this Agreement, AT&T may, *upon its election and in addition to any other remedies that it may have, at any time terminate all the rights granted by it hereunder by not less than two (2) months' written notice to LICENSEE* specifying any such breach, unless within the period of such notice all breaches specified therein shall have been remedied; upon such termination LICENSEE shall immediately discontinue use of and return or destroy all copies of SOFTWARE PRODUCTS subject to this Agreement.

6.04  In the event of termination of rights under Sections 6.02 or 6.03, AT&T shall have no obligation to refund any amounts paid to it under this Agreement.

6.05  LICENSEE agrees that when a SUBSIDIARY'S relationship to LICENSEE changes so that it is no longer a SUBSIDIARY of LICENSEE, (i) all rights of such former SUBSIDIARY to use SOFTWARE PRODUCTS subject to this Agreement shall immediately cease, and (ii) such former SUBSIDIARY shall immediately discontinue use of and return to LICENSEE or destroy all copies of SOFTWARE PRODUCTS subject to this Agreement. No fees paid to AT&T for use of SOFTWARE PRODUCTS on DESIGNATED CPUs of such former SUBSIDIARIES shall be refunded; however, LICENSEE may substitute other CPUs for such DESIGNATED CPUs in accordance with Section 2.03.

## VII. MISCELLANEOUS PROVISIONS

7.01  Nothing contained herein shall be construed as conferring by implication, estoppel or otherwise any license or right under any patent or trademark. However, in respect of patents under which AT&T can grant rights, AT&T grants to LICENSEE all such rights necessary for the use by LICENSEE, pursuant to the rights granted herein, of SOFTWARE PRODUCTS, except to the extent that such patents apply (i) independently of the use of any such SOFTWARE PRODUCT, (ii) because a DESIGNATED CPU is used in combination with other hardware or (iii) because any such SOFTWARE PRODUCT is modified from the version furnished hereunder to LICENSEE by AT&T or is used in combination with other software.

7.02  This Agreement shall prevail notwithstanding any conflicting terms or legends which may appear in a SOFTWARE PRODUCT.

Page 4 of 6

CONFIDENTIAL

1710098502

SS-Soft. Corp.-030184

7.03 AT&T warrants that it is empowered to grant the rights granted hereunder. AT&T makes no other representations or warranties, expressly or impliedly. By way of example but not of limitation, AT&T makes no representations or warranties of merchantability or fitness for any particular purpose, or that the use of any SOFTWARE PRODUCT will not infringe any patent, copyright or trademark. AT&T shall not be held to any liability with respect to any claim by LICENSEE, or a third party on account of, or arising from, the use of any SOFTWARE PRODUCT.

7.04 LICENSEE agrees that it will not, without the prior written permission of AT&T, (i) use in advertising, publicity, packaging, labeling or otherwise any trade name, trademark, trade device, service mark, symbol or any other identification or any abbreviation, contraction or simulation thereof owned by AT&T (or a corporate affiliate thereof) or used by AT&T (or such an affiliate) to identify any of its products or services, or (ii) represent, directly or indirectly, that any product or service of LICENSEE is a product or service of AT&T (or such an affiliate), or is made in accordance with or utilizes any information or documentation of AT&T (or such an affiliate).

7.05 Neither the execution of this Agreement nor anything in it or in any SOFTWARE PRODUCT shall be construed as an obligation upon AT&T to furnish any person, including LICENSEE, any assistance of any kind whatsoever, or any information or documentation other than the SOFTWARE PRODUCTS to be furnished pursuant to Sections 3.01 and 3.02.

7.06 (a) LICENSEE agrees that it shall hold all parts of the SOFTWARE PRODUCTS subject to this Agreement in confidence for AT&T. LICENSEE further agrees that it shall not make any disclosure of any or all of such SOFTWARE PRODUCTS (including methods or concepts utilized therein) to anyone, except to employees of LICENSEE to whom such disclosure is necessary to the use for which rights are granted hereunder. LICENSEE shall appropriately notify each employee to whom any such disclosure is made that such disclosure is made in confidence and shall be kept in confidence by such employee. If information relating to a SOFTWARE PRODUCT subject to this Agreement at any time becomes available without restriction to the general public by acts not attributable to LICENSEE or its employees, LICENSEE'S obligations under this section shall not apply to such information after such time.

(b) Notwithstanding the provisions of Section 7.06(a), LICENSEE may distribute copies of a SOFTWARE PRODUCT, either in modified or unmodified form, to third parties having licenses of equivalent scope herewith from AT&T (or a corporate affiliate thereof) for the same SOFTWARE PRODUCT, provided that LICENSEE first verifies the status of any such third party in accordance with specific instructions issued by AT&T. Such instructions may be obtained on request from AT&T at the correspondence address specified in Section 7.11(b). LICENSEE may also obtain materials based on a SOFTWARE PRODUCT subject to this Agreement from such a third party and use such materials pursuant to this Agreement, provided that LICENSEE treats such materials as if they were part of such SOFTWARE PRODUCT.

CONFIDENTIAL

1710098503

SS-Soft, Corp.-030184

7.07 The obligations of LICENSEE and its employees under Section 7.06(a) shall survive and continue after any termination of rights under this Agreement or cessation of a SUBSIDIARY'S status as a SUBSIDIARY.

7.08 LICENSEE agrees that it will not use SOFTWARE PRODUCTS subject to this Agreement except as authorized herein and that it will not make, have made or permit to be made any copies of such SOFTWARE PRODUCTS except for use on DESIGNATED CPUs for such SOFTWARE PRODUCTS (including backup and archival copies necessary in connection with such use) and for distribution in accordance with Section 7.06(b). Each such copy shall contain the same copyright and/or proprietary notices or notice giving credit to a developer, which appear on or in the SOFTWARE PRODUCT being copied.

7.09 Neither this Agreement nor any rights hereunder, in whole or in part, shall be assignable or otherwise transferable by LICENSEE and any purported assignment or transfer shall be null and void.

7.10 Except as provided in Section 7.06(b), nothing in this Agreement grants to LICENSEE the right to sell, lease or otherwise transfer or dispose of a SOFTWARE PRODUCT in whole or in part.

7.11 (a) Payments to AT&T under this Agreement shall be made payable and sent to:

AT&T TECHNOLOGIES, INC.
P.O. Box 65080
Charlotte, North Carolina 28265

(b) Correspondence with AT&T relating to this Agreement shall be sent to:

AT&T TECHNOLOGIES, INC.
Software Sales and Marketing Organization
P.O. Box 25000
Greensboro, North Carolina 27420

(c) Any payment, statement, notice, request or other communication shall be deemed to be sufficiently given to the addressee and any delivery hereunder deemed made when sent by certified mail addressed to LICENSEE at its office specified in this Agreement or to AT&T at the appropriate address specified in this Section 7.11. Each party to this Agreement may change an address relating to it by written notice to the other party.

7.12 If LICENSEE is not a corporation, all references to LICENSEE'S SUBSIDIARIES shall be deemed deleted.

7.13 The construction and performance of this Agreement shall be governed by the law of the State of New York.

CONFIDENTIAL

1710098504