# EXHIBIT F

# In The Matter Of:

*THE SCO GROUP, INC. v.*
*INTERNATIONAL BUSINESS MACHINES CORPORATION*

---

## BURTON LEVINE
*January 19, 2005*

---

## LEGALINK MANHATTAN

420 Lexington Avenue - Suite 2108
New York, NY 10170
PH: 212-557-7400 / FAX: 212-692-9171

LEVINE, BURTON - Vol.



## Page 38

```
                BURTON LEVINE
10:17:30  2   resulting material is a combination of software
10:17:37  3   product and whatever a licensee adds to the
10:17:40  4   software product?
10:17:41  5         MR. NORMAND:  Objection to form.
10:17:43  6      A.   No.
10:17:43  7      Q.   What is your definition of
10:17:45  8   resulting material within the meaning of Section
10:17:48  9   2.01?
10:17:48 10      A.   The resulting material, as I can
10:17:52 11   broadly state it, any part of a software product
10:17:58 12   -- if any part of a software product is used by
10:18:02 13   the licensee to create another product, that
10:18:13 14   product is a resulting material even if Unix
10:18:22 15   System V code that was contained in the original
10:18:25 16   product is not present in the product that the
10:18:30 17   licensee makes.
10:18:32 18      Q.   And what's the basis of that
10:18:34 19   understanding, Mr. Levine?
10:18:35 20         MR. NORMAND:  Objection, asked and
10:18:46 21   answered.
10:18:46 22      A.   You mean in the language of the
10:18:48 23   agreement?
10:18:49 24      Q.   I mean anywhere.  What's the basis
10:18:51 25   of your understanding that that's the meaning of
```

## Page 39

```
                BURTON LEVINE
10:18:53  2   the term resulting material?
10:19:00  3      A.   This has always been my
10:19:03  4   understanding of what the agreement meant, was
10:19:06  5   intended to mean, and does mean.
10:19:11  6      Q.   And my question is:  What's the
10:19:14  7   basis of that understanding?
10:19:22  8         MR. NORMAND:  Objection to the
10:19:23  9   form, asked and answered.
10:19:31 10      A.   Because the software product that
10:19:36 11   is being licensed is in no way defined as Unix
10:19:43 12   System V code itself.
10:19:52 13      Q.   Are you done?
10:19:56 14      A.   Yeah.  I can answer it directly
10:19:59 15   like that or I can bring, you know, just
10:20:02 16   examples of --
10:20:06 17      Q.   I didn't mean to cut you off.  What
10:20:08 18   I'm interested in knowing, you provided your
10:20:09 19   definition of the term resulting material.
10:20:11 20         My question is:  What's the basis
10:20:12 21   of that understanding?  You began to say that
10:20:15 22   it's -- I don't want to put words in your mouth.
10:20:18 23         Let me ask again:  What is the
10:20:20 24   basis of your understanding of your definition
10:20:21 25   of term resulting material?
```

## Page 40

```
                BURTON LEVINE
10:20:22  2         MR. NORMAND:  Objection to form.
10:20:38  3      A.   I don't know if I can answer your
10:20:40  4   question without just going back to the
10:20:43  5   structure of the license and what it was
10:20:46  6   intended to do.
10:20:54  7         The Unix license itself was
10:21:03  8   intended to protect the code, the intellectual
10:21:08  9   property, and all of the, quote/unquote, methods
10:21:17 10   and concepts, and that wording is used in the
10:21:21 11   agreement, that's contained or embodied in the
10:21:26 12   product.
10:21:31 13         So the metes and bounds of what a
10:21:33 14   software product is, as we have always
10:21:36 15   interpreted so long as I've been in connection
10:21:39 16   with the business, has been a continuum of
10:21:45 17   intellectual property that includes but is not
10:21:50 18   limited to the code itself.  There are
10:21:54 19   structures, there are various algorithms,
10:22:00 20   everything else that is contained in the Unix
10:22:02 21   code, so long as it remains unpublished, so long
10:22:07 22   as it remains the proprietary property of the
10:22:11 23   licensor, is all inclusive in the software
10:22:15 24   product.
10:22:15 25         If a licensee, by virtue of being
```

## Page 41

```
                BURTON LEVINE
10:22:22  2   exposed or having access to this code, learns
10:22:25  3   about a particular structure, a particular
10:22:29  4   portion of the licensed item, uses that
10:22:35  5   structure to develop a product that is going to
10:22:45  6   be similar to but not containing any of the Unix
10:22:49  7   code, that is the derivative work, that is
10:22:52  8   treated as a software product, and treated as a
10:22:56  9   software product means being subject to the same
10:22:58 10   protections that the code itself would be
10:23:02 11   subject, whether or not we're talking about
10:23:08 12   literal code or not.  That's why I disagree with
10:23:10 13   him.
10:23:11 14      Q.   Let me ask you this question,
10:23:13 15   Mr. Levine.  Would you agree with the following
10:23:16 16   statement -- I'll refer you to Mr. DeFazio's
10:23:19 17   declaration where it begins, A modification or
10:23:22 18   derivative work.  Would you agree with the
10:23:24 19   following alteration of that statement:  A
10:23:28 20   modification or a derivative work would
10:23:30 21   constitute, quote, resulting materials, close
10:23:32 22   quote, to be treated as part of the original
10:23:35 23   Unix System V software product only so long as
10:23:38 24   it contained any protected Unix System V source
10:23:42 25   code or Unix System V methods and concepts
```

```
                                              Page 46
                    1           BURTON LEVINE
10:33:35    2   itself is.
10:33:37    3           In the licensing organization to
10:33:45    4   talk about even a binary, a licensing may ask,
10:33:50    5   for example, how much code do I have to have in
10:33:56    6   a binary product in order for it to be a
10:33:59    7   sublicense product subject to royalties, and the
10:34:02    8   answer that we gave and we -- we gave, that we
10:34:08    9   were supposed to give on that, was that even one
10:34:11   10   line of code would make that a software product,
10:34:18   11   and by extension on the software side, the
10:34:22   12   source code side, the use of any part of a
10:34:26   13   software product, whether it was the code or
10:34:31   14   not, that results in a product makes that
10:34:34   15   product resulting materials within the meaning
10:34:40   16   of this clause.
10:34:46   17       Q.   As you define the term software
10:34:50   18   product, does it include resulting materials?
10:34:55   19           MR. NORMAND: Objection to the
10:34:57   20   form.
10:34:57   21       A.   Well, the way we put it over here
10:35:00   22   is it's going to be treated as a software
10:35:02   23   product. Whether you want to say that the
10:35:04   24   resulting materials are a software product per
10:35:08   25   se I think is probably immaterial because of the
```

```
                                              Page 47
                    1           BURTON LEVINE
10:35:13    2   language here. It has to be treated that way.
10:35:16    3   It has to be protected that way.
10:35:20    4           Colloquially, I guess you could say
10:35:24    5   if it walks like a duck and it quacks like a
10:35:27    6   duck, it's a duck. So, yeah, it's a software
10:35:29    7   product in substance.
10:35:30    8       Q.   Did I understand you to say that if
10:35:33    9   a product included only one line of Unix code
10:35:38   10   and potentially, you know, millions of lines of
10:35:41   11   other code, that product would, nevertheless, in
10:35:44   12   your view, be a software product?
10:35:47   13           MR. NORMAND: Objection to form.
10:35:48   14       A.   Yes, it would be a software
10:35:50   15   product.
10:35:55   16       Q.   Let me refer you to the second
10:35:57   17   sentence in the portion of Mr. DeFazio's
10:35:59   18   declaration I've been asking you about. He says
10:36:01   19   there, source code developed by or for a
10:36:04   20   licensee, even if it were included in such a
10:36:08   21   modification or derivative work, would not by
10:36:10   22   itself constitute resulting materials.
10:36:12   23           Do you agree with that statement?
10:36:14   24       A.   I would.
10:36:15   25           MR. NORMAND: Objection to form.
```

```
                                              Page 48
                    1           BURTON LEVINE
10:36:16    2       A.   I would agree with it to this
10:36:18    3   extent. If that source code that was developed
10:36:21    4   by the licensee was independently developed and
10:36:24    5   tacked on to whatever they did to derive
10:36:31    6   something from the actual software product under
10:36:33    7   license and it was a mixture, if you will, that
10:36:39    8   I wouldn't say that that independent part that
10:36:43    9   was sold in connection with the resulting
10:36:44   10   material would be part of the resulting
10:36:47   11   material.
10:36:55   12       Q.   The next sentence in this
10:36:56   13   declaration Mr. DeFazio says, "The purpose of
10:36:59   14   treating portions of Unix System V source code
10:37:02   15   included in modifications and derivative works
10:37:04   16   as part of the original software produce was to
10:37:06   17   ensure that the Unix System V source code
10:37:10   18   provided by AT&T, USL or Novell and contained in
10:37:13   19   the licensee's derivative works would continue
10:37:15   20   to be protected as if it were a stand-alone Unix
10:37:20   21   System V source code."
10:37:21   22           Do you agree with that?
10:37:22   23           MR. NORMAND: Objection to form.
10:37:23   24       A.   It's a correct statement but it's
10:37:25   25   not sufficient.
```

```
                                              Page 49
                    1           BURTON LEVINE
10:37:25    2       Q.   Why isn't it sufficient?
10:37:26    3       A.   It's not only the Unix System V
10:37:30    4   code that's contained in there that would do it.
10:37:33    5   It's the fact that it was derived using any part
10:37:36    6   of the software product.
10:37:38    7           So what he says here is true, if
10:37:40    8   the product actually only contained Unix source
10:37:44    9   code, so that part is true, but -- again, it's
10:37:53   10   not a complete statement, as far as I can see.
10:38:02   11       Q.   Direct your attention to Paragraph
10:38:04   12   17. There Mr. DeFazio states, "The agreements
10:38:12   13   did not and do not give AT&T, USL, Novell or any
10:38:17   14   of their successors or assigns the right to
10:38:20   15   assert ownership or control over modifications
10:38:22   16   and derivative works prepared by its licensees,
10:38:25   17   except to the extent of the original Unix System
10:38:28   18   V source code included in such modifications and
10:38:30   19   derivative works."
10:38:31   20           Do you agree with that statement?
10:38:33   21       A.   No, I don't.
10:38:34   22           MR. NORMAND: Objection to form.
10:38:35   23       Q.   Why do you not agree with that
10:38:37   24   statement?
10:38:37   25       A.   I'm not necessarily addressing the
```

Page 266

```
                    BURTON LEVINE
17:11:46  1
17:11:46  2  answered.
17:11:48  3      A.   Yes, that's correct.
17:11:49  4          MR. MARRIOTT:  With a different
17:11:50  5  answer.
17:11:52  6          MR. NORMAND:  From when?
17:12:02  7          MR. MARRIOTT:  That's the problem.
17:12:02  8  BY MR. MARRIOTT:
17:12:03  9      Q.   Would you agree, Mr. Levine, that a
17:12:08 10  licensee can do with it wishes -- withdrawn.
17:12:11 11          Would you agree that a licensee can
17:12:17 12  do what it wishes with respect to any product so
17:12:19 13  long as that product is not either the software
17:12:23 14  product, as the term is defined in the AT&T Unix
17:12:25 15  licensing agreement, or resulting materials, as
17:12:29 16  the term is defined in the AT&T Unix licensing
17:12:30 17  agreements?
17:12:32 18      A.   Yeah, I think that's a fair
17:12:32 19  statement.
17:12:34 20      Q.   The term software product is a
17:12:37 21  defined term in the licensing agreements,
17:12:40 22  correct?
17:12:42 23      A.   There is a definition of software
17:12:43 24  product, yeah.
          25      Q.   Is resulting materials a defined
```

Page 267

```
                    BURTON LEVINE
17:12:45  2  term within the meaning of the software
17:12:47  3  agreements?
17:12:47  4      A.   I think in the context of the
17:12:50  5  paragraph it's in, it's evident in what it
17:12:53  6  means.
17:12:54  7      Q.   Would you define for me then what
17:12:56  8  exactly constitutes resulting materials?  I want
17:12:59  9  to understand what the essential elements of
17:13:02 10  resulting materials are, those things without
17:13:04 11  which you would not have resulting materials.
17:13:06 12          MR. NORMAND:  Objection, asked and
17:13:10 13  answered.
17:13:10 14      A.   Resulting materials are products
17:13:24 15  that are created by the licensee after having
17:13:35 16  access to a software product.
17:13:47 17      Q.   Is that it?
17:13:49 18      A.   Yep, in short.
17:13:51 19          MR. NORMAND:  Objection to form.
17:13:59 20      Q.   Are you sure about that definition?
17:14:01 21          MR. NORMAND:  Objection to form.
17:14:07 22      A.   Pretty much.
17:14:09 23      Q.   What is the basis of that
17:14:11 24  definition, Mr. Levine?  Can you point me to --
17:14:15 25          MR. NORMAND:  Objection to form.
```

Page 268

```
                    BURTON LEVINE
17:14:15  1
17:14:17  2      Q.   -- a place in the licensing
17:14:20  3  agreement, for example, from which you derive
17:14:27  4  that definition?
17:14:31  5      A.   I don't know if I can or I can't.
17:14:35  6      Q.   The IBM/AT&T Technologies software
17:14:38  7  agreement is at Exhibit 279, if you'd like to
17:14:40  8  take a look at that.  You should have it in
17:15:22  9  front of you there.
17:15:23 10          MR. NORMAND:  What's the pending
17:15:45 11  question?
17:15:45 12          (Record read.)
17:15:53 13      A.   In my view, it's Section 2.01,
17:16:05 14  three lines from the bottom.  The resulting
17:16:12 15  materials are the end result of preparing
17:16:19 16  derivative works and modifications, and
17:16:23 17  derivative works, in my view, are works that are
17:16:29 18  created by the licensee after having access to
17:16:35 19  the software product.
17:16:38 20      Q.   Do you distinguish in meaning for
17:16:41 21  purposes of your understanding of Section 2.01
17:16:44 22  between the term derivative work -- or works --
17:16:54 23  and the term modification?
17:17:02 24      A.   I don't know that I would make a
          25  big distinctions other than the scope of the
```

Page 269

```
                    BURTON LEVINE
17:17:05  2  rights here.  Modifications are a smaller one.
17:17:14  3  Scope, it would seem to me then, in preparing
17:17:18  4  derivative works that could be a whole operating
17:17:20  5  system.
17:17:20  6      Q.   Would you agree that the term
17:17:22  7  derivative works is not defined in this
17:17:26  8  agreement?
17:17:28  9      A.   It is not defined in this
17:17:30 10  agreement, that's correct.
17:17:32 11      Q.   And in what sense do you use the
17:17:35 12  term derivative works, in the sense of the
17:17:38 13  copyright law or in some other sense?
17:17:40 14          MR. NORMAND:  Objection to form.
17:17:40 15      A.   No, not necessarily in the sense of
17:17:43 16  the copyright law.
17:17:44 17      Q.   Are you aware of any deposition of
17:17:46 18  the term derivative work outside the context of
17:17:50 19  copyright law?
17:17:52 20          MR. NORMAND:  Objection to form.
17:17:57 21      A.   You mean besides what appears here?
17:18:00 22      Q.   Is there any accepted definition of
17:18:03 23  the term derivative works of which you're aware
17:18:05 24  outside the copyright law context?
17:18:08 25          MR. NORMAND:  Objection to form.
```