# EXHIBIT J

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
 3
 4   THE SCO GROUP,                    )
                                       )
 5         Plaintiff,                  )
                                       )
 6   vs.                               )  No. 2:03CV0294DAK
                                       )
 7   INTERNATIONAL BUSINESS MACHINES   )
     CORPORATION,                      )
 8                                     )
           Defendants.                 )
 9   _____)
10
11
12
13
14
15          DEPOSITION OF THOMAS L. CRONAN, III
16                  San Jose, California
17              Tuesday, December 14, 2004
18
19
20
21
22
23
     Reported by:
24   SUZANNE F. BOSCHETTI
     CSR No. 5111
25   Job No. 168429
```

Page 38

1  modifications or derivatives of the software product?
2      A   In their -- in their entirety.
3      Q   Right. The entire modification or the entire
4  derivative would be considered --
5      A   In combination with the UNIX code.
6      Q   Would be considered a resulting material?
7      A   That's correct.
8      Q   Okay. And those were required to be treated
9  under the agreement as if they were part of the original
10 license software product, correct?
11     A   That's correct. The -- the derivative work,
12 which, as the term of art in copyright, means both the
13 changed code and the original code in combination, which
14 refers to both the code and the documentation, the
15 original documentation with any changes to it. When
16 you're done with that, that would be the resulting
17 material.
18     Q   Okay. And was it your understanding that the
19 term "derivative work" under 2.01 had the same meaning
20 as what copyright law would have assigned to that term,
21 "derivative work"?
22     A   I don't believe that was the discussion between
23 the parties.
24     Q   Okay. Did you have an understanding in your
25 own head as to that issue?

Page 39

1      A   You know, I don't know if I was sophisticated
2  enough in 1985 to know the answer to that question.
3      Q   Okay. We've talked about the term "derivative
4  work."
5          What about the -- what about the issue of the
6  right to -- the results of the right to modify that
7  work? Is that something that's different, in your mind,
8  than the creation of derivative works?
9      A   Let's see.
10         Yes, they're separate rights.
11     Q   Okay. And would it be fair to say that we can
12 call "modification" something that would result from the
13 exercise of right to modify?
14     A   That's -- that's correct.
15     Q   Okay. And in your mind, is there a distinction
16 between a modification on the one hand and a derivative
17 work on the other?
18     A   Yes, there is.
19     Q   Okay. And what is that difference?
20     A   A derivative work would be the combination of
21 any change code, any added code, any modifications which
22 would be, you know, specifically original code that was
23 changed. And in combination with the original code,
24 that would be a derivative work. So it would include
25 the UNIX System V code and any new code that was written

Page 40

1  by IBM, any modified or changed code in one body, in one
2  work.
3      Q   So if I understood you correctly, a derivative
4  work would necessarily encompass a modification?
5      A   No. The other way around. I think a
6  derivative work would necessarily include the System V
7  code.
8      Q   Right. And how does the term "modification"
9  compare to the work -- the term "derivative work"?
10     A   The right to create a modification allows you
11 to make changes and write things that become part of the
12 body of the code. Later, as we, you know, clarified
13 this in a letter, we said that if those things were
14 created and they were separate and didn't contain the
15 System V code, that they could be used and owned by IBM
16 and used separately from the derivative work.
17         So that's why there's a difference because you
18 have a right to go in there in your -- anything you do
19 that changes the source code tree a programmer would
20 consider a modification even if it didn't touch the
21 original code. So you have people coming in and adding,
22 you know, 200,000 lines of code to 100,000 lines of code
23 and only maybe, you know, 20,000 lines touch each other,
24 you could use that 200,000, 180,000 lines of code
25 somewhere else and rewrite the interfaces to another

Page 41

1  operating system.
2          So whether someone might consider those to be
3  modifications because they've been entered into and
4  changed the System V code tree, but they were created
5  differently -- so it becomes a -- something that needs
6  to be clarified between something, whether it's a
7  modification or original code, and that's why we had
8  later clarifications about the fact that who created it
9  became an important distinction between the parties.
10 Because these terms -- you can imagine, you know,
11 lawyers in 1985. Not a lot of people were that educated
12 on copyright law. I became much more educated later on.
13         Now, the -- the negotiations were primarily
14 between business people who cared more about what the
15 royalties were and what the -- the business terms were
16 between the parties and who -- who we could distribute
17 it to or not. There wasn't the level of sophistication
18 that you're using in trying to interpret this, nor was
19 it the level of sophistication that you might use today
20 if you were entering into a license agreement because
21 this was 1985.
22         So the important thing between the parties was
23 the stuff we have that's in System V today is ours.
24 Anything you guys do, you could take and use separately
25 as long as you don't use our code. I mean, that's the

11 (Pages 38 to 41)