Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE LLP
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **REPLY MEMORANDUM IN SUPPORT OF SCO'S OBJECTIONS TO ORDER GRANTING IN PART IBM'S MOTION TO LIMIT SCO'S CLAIMS**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      INTRODUCTION ........................................................................................2

II.     STATEMENT OF FACTS ...........................................................................5

III.    SCOPE OF REVIEW ...................................................................................9

     A.      SCO Is Entitled to <u>De Novo</u> Review of the Magistrate Judge's Order ............9

          1.      Article III and Rule 72(b) Mandate De Novo Review...........................9

          2.      The Order Is Not Entitled to Deference Because <u>De Novo</u> Review Is Required.................................................................................14

     B.      Even If Rule 72(a) Is Deemed Applicable, SCO Is Entitled to <u>De Novo</u> Review of Legal Conclusions and Predominately Legal Mixed Questions of Law and Fact, and to "Clearly Erroneous" Review of Purely Factual Findings..........................................................................................16

IV.     SCO COMPLIED WITH THIS COURT'S ORDER TO IDENTIFY "MISUSED MATERIAL" WITH SPECIFICITY AND TO UPDATE INTERROGATORIES ...............................................................................17

     A.      The July 2005 Order ...........................................................................17

     B.      The December 2003 Order and IBM Interrogatories.........................19

     C.      The March 2004 Order.......................................................................26

     D.      SCO Did Not Violate Rule 26(e) .......................................................26

     E.      The Magistrate Improperly Relied on Material Beyond the Discovery Orders in Imposing Sanctions.........................................................27

          1.      IBM's Response Does Not Explain the Magistrate Judge's Improper Reliance on Davis Rebuttal Declaration – to Which SCO Was Not Permitted to Respond........................................................27

          2.      SCO's Own Discovery Requests Could Not Support the Magistrate Judge's Interpretation of SCO's Obligations in Response to IBM Discovery ..................................................................28

|       |    | 3. | The Deposition Testimony of Sandeep Gupta and the Deposit Requirements for Copyright Registration Cannot Support Sanctions ............................................................29 |

| V.    | THE MAGISTRATE JUDGE CLEARLY ERRED IN FINDING THAT SCO WILLFULLY FAILED TO COMPLY WITH THE COURT ORDERS REQUIRING SPECIFICITY ............................................................30 |

|       | A. | Willfulness Requires an Intentional Violation of a Clear Order....................30 |

|       | B. | SCO Did Not Willfully Violate Any Court Order ...........................................33 |

|       |    | 1. | SCO Did Not Willfully Violate a Clear and Unambiguous Court Order ...............................................................34 |

|       |    | 2. | SCO Believed in Good Faith That It Was in Compliance With the Court's Orders...............................................36 |

|       |    | 3. | SCO Was Not Able to Comply With an Order to Provide All Source Code Coordinates for All of the Disclosures....................37 |

| VI.   | THE MAGISTRATE JUDGE MUST BE REVERSED FOR FAILING TO MAKE PARTICULARIZED FINDINGS, REFUSING TO HOLD AN EVIDENTIARY HEARING, AND FAILING TO CONSIDER PREJUDICE ON AN ITEM BY ITEM BASIS.............................................................40 |

|       | A. | The Magistrate Judge Failed to Make Particularized Item by Item Findings.........................................................40 |

|       | B. | The Magistrate Judge Erred in Failing to Require IBM to Establish Prejudice.........................................................47 |

|       | C. | The Magistrate Judge Did Not Evaluate the Efficacy of Lesser Sanctions on the Record.........................................................49 |

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Page</u>

<u>Alpern v. Lieb</u>,
    38 F.3d 933 (7th Cir. 1994) ................................................................................10, 12

<u>Am. Stock Exch., LLC v. Mopex, Inc.</u>,
    215 F.R.D. 87 (S.D.N.Y. 2002) ....................................................................................11

<u>Anderson v. Corr. Med. Servs.</u>,
    No. 04-3410 (GEB), 2006 WL 1644709 (D.N.J. June 6, 2006) ........................................15

<u>Andrews v. Deland</u>,
    943 F.2d 1162 (10th Cir. 1991) .....................................................................................14

<u>Baker v. BDO Seidman</u>,
    390 F. Supp. 2d 919 (N.D. Cal. 2005) ...........................................................................12

<u>Barber v. T.D. Williamson, Inc.</u>,
    254 F.3d 1223 (10th Cir. 2001) .....................................................................................16

<u>Chase Manhattan Bank v. Iridium Africa Corp.</u>,
    294 F. Supp. 2d 634 (D. Del. 2003) ..............................................................................10

<u>China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.</u>,
    155 F. Supp. 2d 1174 (C.D. Cal. 2001) .........................................................................16

<u>Covington v. Kid</u>,
    1999 WL 9835 (S.D.N.Y. Jan. 7, 1999) .........................................................................10

<u>Cuenca v. Univ. of Kan.</u>,
    205 F. Supp. 2d 1226 (D. Kan. 2002) ............................................................................10

<u>Dorsey v. Academy Moving & Storage, Inc.</u>,
    423 F.2d 858, 861 (5th Cir. 1970) .................................................................................47

<u>Ehrenhaus v. Reynolds</u>,
    965 F.2d 916 (10th Cir. 1992) ............................................................................40, 49, 50

<u>Endahl v. Vinnell Corp.</u>,
    No. 04-CV-00426-MSK-PAC, 2006 WL 57496 (D. Colo. Jan. 10, 2006) .................10, 12

First Union Mortg. Corp. v. Smith,
    229 F.3d 992 (10th Cir. 2000) ................................................................9, 10, 14

Gripe v. City of Enid,
    312 F.3d 1184 (10th Cir. 2002) ..................................................................40, 49

Harvey by Blankenbaker v. United Transp. Union,
    878 F.2d 1235 (10th Cir. 1989) ........................................................................17

Hicks v. Arthur,
    159 F.R.D. 468 (E.D. Pa. 1995) ......................................................................40

Hicks v. Robeson County,
    187 F.R.D. 232 (E.D.N.C. 1999) .....................................................................40

Hilleby v. FMC Corp.,
    No. C-91-068 FMS, 1992 WL 455435 (N.D. Cal. July 28, 1992) ....................11

Hollern v. Wachovia Secs.,
    Nos. 05-1253, 05-1300, 2006 WL 2361627 (10th Cir. Aug. 16, 2006) ...........17

Holliday v. Extex,
    No. Civ. 05-00194SPK-LEK, 2006 WL 2419117 (D. Haw. Aug. 10, 2006).....32

In re Airline Ticket Com'n Antitrust Litig.,
    918 F. Supp. 283 (D. Minn. 1996)....................................................................10

In re Electron Corp.,
    336 B.R. 809 (10th Cir. BAP 2006)..................................................................14

In re Westinghouse Elec. Corp. Uranium Contracts Litig.,
    563 F.2d 992 (10th Cir. 1977) .........................................................................31

Jesselson v. Outlet Assocs. of Williamsburg,
    784 F. Supp. 1223 (E.D. Va. 1991) .................................................................13

Kern River Gas Transmission Co. v. 6.17 Acres Of Land,
    No. 04-4033, 2005 WL 3257509 (10th Cir. Dec. 2, 2005).............................37

Lancaster v. Indep. Sch. Dist.,
    149 F.3d 1228 (10th Cir. 1998) .......................................................................15

Lister v. Dep't of Treasury,
    408 F.3d 1309 (10th Cir. 2005) .......................................................................10

Lopez-Bignotte v. Ontivero,
   42 Fed. Appx. 404 (10th Cir. 2002).................................................................49

McHugh v. Apache Corp.,
   Civ. A. No. 89-A-1297, 1991 WL 16495 (D. Colo. Feb. 1, 1991)....................13

Naimie v. Cytozyme Labs.,
   174 F.3d 1104 (10th Cir. 1999) ......................................................................16

Ocelot Oil Corp. v. Sparrow Indus.,
   847 F.2d 1458 (10th Cir. 1988) ..............................................................9, 14, 16

Penn v. San Juan Hosp.,
   528 F.2d 1181 (10th Cir. 1975) ......................................................................41

Price v. Lake Sales Supply R.M., Inc.,
   510 F.2d 388 (10th Cir. 1974) ........................................................................41

Procter & Gamble Co. v. Haugen,
   437 F.3d 727 (10th Cir. 2005) ........................................................................40

Reno Air Racing Ass'n, Inc. v. McCord,
   452 F.3d 1126 (9th Cir. 2006) ........................................................................15

Robson v. Hallenbeck,
   81 F.3d 1 (1st Cir. 1996)............................................................................40, 41

Salve Regina Coll. v. Russell,
   499 U.S. 225 (1991).............................................................................14, 15, 16

Safmor, Inc. v. Minister, Elders and Deacons,
   No. 602746/02, 2005 WL 1118029 (N.Y. Sup. Ct. 2005)...............................12

Schroeder v. Southwest Airlines,
   129 Fed. Appx. 481 (10th Cir. 2005).............................................................31

Searock v. Stripling,
   736 F.2d 650 (11th Cir. 1984) ........................................................................48

Serra Chevrolet, Inc. v. General Motors,
   446 F.3d 1137 (11th Cir. 2006) ......................................................................15

Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers,
    357 U.S. 197 (1958) ...................................................................................................31

Spectra Sonics Aviation, Inc. v. Ogden City,
    No. 89-4142, 1991 WL 59369 (10th Cir. Apr. 19, 1991) ...................................15

Umbenhower v. Copart, Inc.,
    No. 03-2476-JWL, 2004 WL 2660649 (D. Kan. Nov. 19, 2004) .......................14

Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan,
    No. 90-2728, 1991 WL 212232 (D.D.C. Sept. 30, 1991) ...................................12

United States v. Flores-Ortega,
    No. 2:05-CR-672 TS, 2006 WL 2061351 (D. Utah July 21, 2006) .....................14

United States v. United States Gypsum Co.,
    333 U.S. 364 (1948) ...........................................................................................16

Vogel v. U.S. Office Prods. Co.,
    258 F.3d 509 (6th Cir. 2001) .............................................................................10

Volkman v. United Transp. Union,
    73 F.3d 1047 (10th Cir. 1996) ...........................................................................15

Von Brimer v. Whirlpool Corp.,
    536 F. 2d 838 (9th Cir. 1976) ............................................................................13

Wachovia Bank v. Deutsche Bank Trust Co.,
    397 F. Supp. 2d 698 (M.D.N.C. 2005) .........................................................10, 13

Yang v. Brown Univ.,
    149 F.R.D. 440 (D.R.I. 1993) .....................................................................11, 12, 13

**Federal Rules**

Federal Rule of Civil Procedure 72(a) ...........................................................................16

Federal Rule of Civil Procedure 72(b) .................................................................... passim

**Other Authorities**

12 Wright & Miller, Fed. Prac. & Proc. Civ. 2d § 3068.2. (2005) ............................10

## I.    INTRODUCTION

IBM defends the Magistrate Judge's severe sanction order against SCO on the grounds that SCO failed to provide "nine coordinates" of source code for 180-plus technology items after being ordered to do so.  IBM claims that this failure has prevented it from preparing a defense on these items.  IBM's position fails at every level – and each of these failures is an independent reason, as articulated in SCO's Objections, requiring reversal of the Magistrate Judge's Order.

First, there is no order saying, in words or substance, that "SCO must identify nine coordinates of line, page and file for any technology, including any method or concept that SCO seeks to protect or it will be stricken from the case."  Instead, IBM seeks to piece together such a requirement from this Court's July 2005 Order that required misused technology to be identified "with specificity" and from a variety of earlier discovery orders – none of which addresses the issue of the specificity required in instances where SCO identifies an IBM disclosure that does not disclose source code.  In fact, IBM proposed such language, but it was not incorporated into the July 2005 Order.

Second, even had such an order been entered – and it was not – SCO does not have the "nine coordinates" of information for the disclosures that IBM made.  IBM has not proven that SCO has such information, or easily could obtain it, and is simply "willfully" refusing to turn it over, to spring it on IBM later.  On the contrary, the record shows that the principal preparer of the disclosures, UNIX expert Marc Rochkind, provided all the identifying information that he had regarding the challenged items.  It is important to keep in mind that nearly all of the technology disclosures stricken and subject to these Objections are disclosures of methods and concepts by IBM software engineers.  Where the IBM engineer disclosed source code, that

source code has been specifically identified – except where SCO cannot do so because it is behind an IBM firewall where IBM has access but SCO and its experts do not (and yet a number of the stricken items are precisely that situation). Where no source code was disclosed, SCO should not be sanctioned for not linking the disclosure back to source code that was <u>not</u> disclosed. To impose such a requirement is to pass judgment, improperly, on the merits of SCO's claims based on those disclosures.

With respect to the origins of the source code in an AIX or Dynix/ptx ("Dynix") system, SCO is being sanctioned even though in their disclosures – and as SCO described in detail – the IBM developers themselves said the method or concept came from AIX or Dynix. SCO cannot reasonably be expected to identify by line and file the source code that an IBM engineer may have had in mind disclosing a method or concept that was admitted to originate in that UNIX-derivative system – an operating system at IBM, albeit subject to contractual restrictions on disclosure. IBM obviously believed that providing source code was not necessary to communicate the method to the Linux community, and it is not necessary to SCO's claim of contract breach. One simply cannot find willful and sanctionable misconduct on this record in SCO's inability to say what these IBM developers had in mind as the "origin" source code.

With respect to "destination" source code in Linux, IBM ignores that for virtually all of the challenged and stricken items, SCO did provide file locations in Linux which contained or were believed to be impacted by the disclosed technology. There is no finding (and certainly no record basis for a finding) that SCO possessed, but simply chose not provide, more specific line-of-code designations for such items. Moreover, IBM's disclosures show that it believed the

disclosure would help the Linux effort, and in fact took public credit for advancing Linux through these disclosures.

As to all three aspects of the "nine coordinates" of source code to which IBM refers, with regard to these method and concept items, there is thus no basis for a finding of willful withholding of information. On the contrary, the record shows SCO's efforts in the December Submission (incorporated as supplemental interrogatory answers) to provide as much information as possible regarding these items, including in almost all cases the actual disclosure to the Linux community at issue. SCO's good faith efforts are also evidenced by the fact that IBM is now seeking to enforce the very requirements that it proposed for inclusion in the Court's order, but which the Court rejected – making plain that SCO did not and could not have had notice that these requirements were applicable. This lack of support for finding a "willful" failure to comply is a second independent ground requiring reversal of the Order.

Third, the process that led to the Order is fatally defective procedurally. The Tenth Circuit has made clear that when sanctions of this severity are contemplated, the court must make specific findings and those findings must include express consideration of lesser sanctions. Those standards were not met here. The problem with the Magistrate Judge's general statement that each of the 198 challenged items was considered is not that this consideration did not occur, but that the reasons for striking a particular item are not provided. Such reasons were given for only a handful of items. The lack of specific findings is in turn the outgrowth of a process that did not – despite SCO's express request – provide for an evidentiary hearing or an item-by-item consideration of the disclosure provided, whether more specific information was available,

4

whether IBM had even asked its own engineers what source code related to that item, and the effect on IBM of not having the "nine coordinates" in defending the claim.

These failures were then compounded by the failure to consider less severe measures to protect the fairness of the litigation process. These alternatives include allowing IBM to object at trial to any "sandbagging" whereby SCO seeks to introduce misused technology that has not been disclosed, or consideration of the issue of prejudice and ability to provide more detail with the benefit of expert reports and expert testimony (and perhaps with the assistance of a court-appointed expert or special master with expertise in computer operating system technology). Instead, the Order below imposes the most severe sanction – precluding SCO from seeking to prove a wrongful disclosure of the technology in question, even that which is known to IBM and which is fully disclosed in the December Submission.

On each of these independent bases, the Order below should be reversed, irrespective of the scope of review. We show below, however, that a magistrate judge order that "limits" claims, as this Order expressly does, must be reviewed de novo by the district court. This is plainly not an order merely "exercising discretion to manage these proceedings," as IBM characterizes the order,  It is expressly and by effect an order disposing of substantive claims. These substantive claims deserve their day in court and to be resolved on their merits.

## II.    STATEMENT OF FACTS

SCO brought the instant suit after discovering, among other things, that IBM's efforts to enterprise-harden Linux turned, to a significant degree, on the contribution of information from IBM's UNIX-derived operating systems, AIX and Dynix, whose disclosure was in breach of IBM's software licensing agreements. SCO propounded discovery upon IBM to ascertain all of

the specific disclosures that IBM had made to Linux and the details of what was disclosed.  IBM resisted such essential discovery throughout this litigation.

IBM's "Statement of Facts" passes over the multiple motions to compel that IBM's stance forced SCO to bring, and which are reflected in the docket.  IBM further glosses over the fact that, in denying IBM's premature motions for summary judgment, this Court observed:  "At this point, it is apparent that complete discovery is necessary prior to the just resolution of any claim."  (Order dated Feb. 9, 2005, at 16.)

After denying IBM summary judgment, this Court entered the July 2005 Scheduling Order, which set forth new pretrial and trial deadlines.  Contrary to IBM's suggestions, prior to the existing Order, SCO has not been sanctioned at any time by this Court or by the Magistrate Judge.  The July 2005 Order and corresponding extension of the trial schedule were entered against the backdrop of the decision that SCO was entitled to substantial additional discovery from IBM before it could reasonably be expected to identify all the material IBM improperly disclosed to Linux.  The Order thus provided deadlines in October and December in which SCO would, after receipt of the long-awaited discovery from IBM, identify all allegedly misused material with specificity.  As discussed more fully below, that Order properly did not include language IBM proposed regarding version, file, and line requirements.

On October 28 and December 22, 2005, SCO complied fully with this Order, with the Magistrate Court orders of December 12, 2003, and March 3, 2004, and with IBM's interrogatory requests.  IBM ignores the undisputed evidence that this December Submission identified every instance of improper disclosure by IBM of which SCO was aware, and that it further provided as much detail about each improper disclosure as SCO was able to uncover.

(Rochkind Decl. ¶ 17.)  IBM tries to buttress the Order below by suggesting otherwise throughout its brief, but there is no evidence that SCO withheld from IBM any information in its possession when preparing its October and December Submissions.

Nonetheless, IBM brought its "Motion to Limit SCO's Claims" on February 13, 2006, which subsequently was granted in part by the Magistrate Judge on June 28, 2006.[1]  It was not enough that SCO identified when the breach occurred, who within the company committed the breach, the specific confidential and proprietary information that was contributed and constitutes the breach, and which operating system the material came from.  IBM contends that SCO has and is refusing to provide the version, file, and lines of source code behind the information, which were not publicly disclosed, and which were solely in the minds of IBM and Sequent programmers at the time they made the contributions.

IBM contends broadly that it cannot prepare a defense without such information and that this information is available, but fails to contest the specific examples SCO has pointed to in its papers and at argument throughout the litigation of this Motion.  These examples, again provided in SCO's Objections (at 35-36, 41-45 and Appendix C), are again not controverted by IBM.  These examples demonstrate the misleading nature of IBM's platitudes about how it is forced to look for a needle in a haystack and the vast amount of code contained in an operating system.  The examples show that SCO has fully and adequately delineated the technology issues that this case concerns, and that the day is long past when IBM can complain that SCO's claims are undefined.

---

[1] IBM's opening brief did not rely on IBM's interrogatories or Rule 26(e) – which were instead the focus of a declaration submitted later by a proposed expert in computer science, and which later became the focus of the Magistrate Judge's Order and of IBM's current opposition.

It is also time for IBM to stop pretending that SCO's statements made at the outset of this case in any way show that there is code information that has not been provided relating to the 180-plus disputed items on this Motion. As explained in SCO's Objections, especially in Appendix A, and as not specifically addressed by IBM, these public statements are fully consistent with the technology disclosures that SCO has made.

IBM waited until two and a half weeks before SCO's December Submission was due to indicate it would challenge SCO's disclosures as not being sufficiently specific. IBM's heavy emphasis on that letter of December 5, 2005, is inexplicable – as if SCO could transform its disclosures in two weeks by divining what Dynix and AIX code IBM programmers had in their minds when they made unauthorized disclosures. SCO's response to that letter was to provide in its December Submission all of the information it had regarding the "misused material" IBM had disclosed to Linux. Indeed, by going beyond an identification of the technology, and providing extensive evidence in support of the claims, SCO went beyond what it believed were the requirements of the July 2005 Order to which the December Submission was addressed.

Until this very sanction order, there has been no order requiring SCO to provide the nine coordinates of "version, file, and line" information where SCO is not contending that code has been misappropriated. Just as fundamentally, there has never been any determination that SCO is able to provide "version, file and line" information when lines of code were not even what was disclosed. Even IBM does not argue that such information is required for SCO to prove its breach of contract claim. As such, there is no basis for the sanction imposed on SCO.

III.   **SCOPE OF REVIEW**

A.   <u>**SCO Is Entitled to De Novo Review of the Magistrate Judge's Order.**</u>

As IBM concedes (at 19), under controlling Tenth Circuit authority and Federal Rule of

Civil Procedure 72(b), a magistrate judge's sanctions order must be reviewed <u>de novo</u> if the

sanction has the effect of an involuntary dismissal of a claim.  <u>Ocelot Oil Corp. v. Sparrow</u>

<u>Indus.</u>, 847 F.2d 1458, 1461-63 (10th Cir. 1988).  Here, the Magistrate Judge has effectively

dismissed 187 of SCO's claims of improper disclosure, which allege separate and distinct

breaches by IBM of the confidentiality provisions of the software license agreements.

1.   <u>Article III and Rule 72(b) Mandate De Novo Review.</u>

Under both Article III and Rule 72(b), the scope of review does not turn, as IBM

suggests, on whether the dismissal was "on the merits," on how the Magistrate Judge

characterizes the sanctioning order, or on who wrote the underlying order.  Instead, as IBM

ultimately admits (at 17), "it is the substance of the relief granted, rather than the label placed on

a motion or order, that determines whether it is dispositive."[2]  If the sanction "has the effect of

dismissing [plaintiff's] action, contrary to [plaintiff's] wishes, and operates as res judicata," it

constitutes an involuntary dismissal and must be reviewed <u>de novo</u>.  <u>Ocelot</u>, 847 F.2d at 1462;

<u>accord</u> <u>First Union Mortg. Corp. v. Smith</u>, 229 F.3d 992, 996 (10th Cir. 2000) (remand order is

dispositive because it "conclusively terminates the matter" against the will of the opposing

---

[2] Despite acknowledging that the "substance of the relief granted" is determinative, IBM nevertheless
implies twice (at 16 and 18) that the scope of review should be decided on the basis of an alleged
statement by a SCO attorney to a reporter that "the claims are still there."  Mr. Hatch is unsure whether
the quote is accurate, but he obviously meant that "some claims are still there."

party)[3]; Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005) (order denying IFP

status is "the functional equivalent of an involuntary dismissal" and must be reviewed de novo).[4]

      The Tenth Circuit's approach "requires the court to go beyond the label and consider the

impact of the action taken on the case to determine whether it is dispositive" and to "reach

commonsense decisions rather than becoming mired in a game of labels." 12 Wright & Miller,

Fed. Prac. & Proc. Civ. 2d § 3068.2 (2005); see also Vogel v. U.S. Office Prods. Co., 258 F.3d

509, 514-15 (6th Cir. 2001) (noting the "functional analysis of the motion's potential effect on

litigation"); Alpern v. Lieb, 38 F.3d 933, 935 (7th Cir. 1994) (de novo review required of order

sanctioning defendant by making a factual finding that "could deny a defense or claim at trial");

Endahl v. Vinnell Corp., No. 04-CV-00426-MSK-PAC, 2006 WL 57496, at *10 (D. Colo. Jan.

10, 2006) (order striking references to a hostile working environment claim from pretrial order

reviewed de novo because it was "dispositive of any putative hostile environment claim")

(attached hereto as Exh. A, James Decl.); Cuenca, 205 F. Supp. 2d at 1228-29 (de novo review

of order having "the identical effect as an order dismissing potential claims"); In re Airline

Ticket Com'n Antitrust Litig., 918 F. Supp. 283, 285 (D. Minn. 1996) (de novo review where

---

[3] In light of First Union, IBM's reliance on Wachovia Bank v. Deutsche Bank Trust Co., 397 F. Supp. 2d
698 (M.D.N.C. 2005), which held that a remand order is non-dispositive, is misplaced.

[4] IBM claims (at 20 n.9) that a magistrate judge's denial of a motion for leave to file an amended
complaint is non-dispositive, but there is a sharp split of authority on this issue. See, e.g., Cuenca v.
Univ. of Kansas, 205 F. Supp. 2d 1226, 1228-29 (D. Kan. 2002) (de novo review required because "the
order here denying leave to amend has the identical effect as an order dismissing potential claims and
parties from the suit"); Covington v. Kid, 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7, 1999) (same, because
ruling "foreclosed potential claims") (attached hereto as Exh. I, James Decl.); see also Chase Manhattan
Bank v. Iridium Africa Corp., 294 F. Supp. 2d 634, 635 (D. Del. 2003) (holding that "if the denial of the
motion to amend disposes of a claim, the magistrate judge's ruling is dispositive in nature"). In addition,
there is a major and obvious difference between a rejection of proposed new claims and a termination of
claims already in the case.

order "trenches heavily on an aspect of defendants' claimed defense"); <u>Yang v. Brown Univ.</u>, 149 F.R.D. 440, 442-43 (D.R.I. 1993) (order excluding critical expert testimony "crosses the line from non-dispositive to dispositive decision-making" and "tantamount to an involuntary dismissal"); <u>Hilleby v. FMC Corp.</u>, No. C-91-068 FMS, 1992 WL 455435, at *1 (N.D. Cal. July 28, 1992) (<u>de novo</u> review of findings that were "dispositive of certain claims and issues") (attached hereto as Exh. B, James Decl.).

IBM asserts (at 19) that <u>Ocelet</u> and its progeny apply only if the magistrate judge strikes a plaintiff's complaint in its entirety, but Rule 72(b) expressly mandates <u>de novo</u> review if the challenged ruling disposes of "<u>a</u> claim or defense," not "<u>all</u> claims or defenses." Our "Constitution requires that Article III judges exercise final decision-making authority," <u>Ocelet</u>, 847 F.2d at 1463, and thus an Article III judge must make a <u>de novo</u> review of any magistrate judge's order that literally or functionally disposes of any claim, even if only one of several claims in a suit, in a manner that would raise a <u>res judicata</u> bar in a future proceeding.

IBM acknowledges that in <u>American Stock Exchange, LLC v. Mopex, Inc.</u>, 215 F.R.D. 87, 91-92 (S.D.N.Y. 2002), the court held <u>de novo</u> review was required where, as a discovery sanction for inadequate disclosure, the magistrate judge barred the plaintiff from asserting one of several claims for patent infringement. IBM suggests (at 20 n.8) only that <u>Mopex</u> is distinguishable because the affected claim was "an independent and distinct description of intellectual property" and the ruling might have "preclusive effect as to that particular patent claim." But the same is true here as to the excluded disclosure items.

Under the pertinent contracts, each disclosure of a protected method or concept was a separate and independent breach of contract.[5]  Under the doctrine of claim splitting, "if [SCO] is precluded from asserting [the claims disposed of by the Magistrate Judge] in this lawsuit, [SCO] will be barred forever from asserting that claim against [IBM].  A preclusion order here is therefore 'dispositive'."  Mopex, 215 F.R.D. at 91-92.  Numerous other courts have held that Article III and Rule 72(b) mandate de novo review of orders effectively dismissing, or even seriously impairing, individual claims or defenses within a lawsuit, even if the entire suit is not dismissed.  Indeed, as illustrated by cases such as Alpern, Mopex, Endahl, and Yang, de novo review is required of orders disposing of far smaller portions of a case than the portion of SCO's case barred by the Magistrate Judge's order.

When it filed its motion, IBM well understood that it was seeking an effective dismissal of the majority of SCO's claims.  IBM styled its motion as a "Motion to Limit SCO's Claims Relating to Allegedly Misused Materials," and the Motion requested "an Order limiting the scope of SCO's claims relating to allegedly misused materials to Items in SCO's Final Disclosures."  Except for 11 of the challenged items, the Magistrate Judge "granted" IBM's Motion, stating the issue (at 38 n.128) as whether to "strike or not strike" certain allegedly misappropriated items.  Although IBM now asserts (at 20) that the Order "merely precluded the

---

[5] Baker v. BDO Seidman, 390 F. Supp. 2d 919, 924 (N.D. Cal. 2005) ("Separate breaches create separate causes of action."); Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan, No. 90-2728, 1991 WL 212232, at *5 (D.D.C. Sept. 30, 1991) ("wrongful acts or breaches of duty which occur in distinct intervals" give rise to new and separate causes of action (attached hereto as Exh. J, James Decl.); Safmor, Inc. v. Minister, Elders and Deacons, 2005 WL 1118029, at *9 (N.Y. Sup. Ct. 2005) (new cause of action accrues upon "each breach" of contractual undertaking) (attached hereto as Exh. K, James Decl.).

use of certain evidence," IBM did not seek, and the Magistrate Judge did not order, the exclusion of any fact or expert testimony, any document, or <u>any</u> other evidence.

The order is plainly intended to be dispositive, a full and final termination of all of SCO's claims for breaches of the licensing agreements arising from IBM's disclosures of the excluded items. But regardless of whether the order is characterized as an actual disposition of all of those claims or as a "preclusion of evidence" in support of these claims, the label does not matter. Under any fair consideration of the functional "impact of the action taken on the case," Wright & Miller, <u>supra</u>, the order "crosse[d] the line from non-dispositive to dispositive decision-making" and was "tantamount to an involuntary dismissal" of many of SCO's claims, <u>Yang</u>, 149 F.R.D. at 442-43. SCO therefore is entitled to <u>de novo</u> review.

The cases cited by IBM involved routine evidentiary rulings excluding specific documents and testimony. <u>See, e.g.</u>, <u>Jesselson v. Outlet Assocs. of Williamsburg</u>, 784 F. Supp. 1223, 1227 (E.D. Va. 1991) (order excluding three documents under parole evidence rule not dispositive just "because Plaintiffs do not have any additional admissible evidence to present"); <u>McHugh v. Apache Corp.</u>, Civ. A. No. 89-A-1297, 1991 WL 16495, at *2 (D. Colo. Feb. 1, 1991) (exclusion of tax return did not "dispose of" back pay claim, which remained "viable" because it could be supported with other evidence) (attached hereto as Exh. C, James Decl.). Although even evidentiary rulings may be dispositive if, as a practical matter, they dispose of any claim or defense, the rulings in IBM's cases did not "cross the line." These rulings are not comparable to the Magistrate Judge's Order.[6]

---

[6] IBM also cites <u>Von Brimer v. Whirlpool Corp.</u>, 536 F.2d 838 (9th Cir. 1976), which concerns a decision by a district judge, not a magistrate judge, and has nothing to do with Rule 72(b). And the cases cited by IBM in footnote 7 of its Opposition are even further off the mark. <u>Wachovia Bank</u>, which held that a

2.      The Order Is Not Entitled to Deference Because
        De Novo Review Is Required.

IBM contends that the Magistrate Judge's Order should be given "considerable

deference" even if subject to <u>de novo</u> review.  Quite the contrary, it would be reversible error to

give the ruling any deference at all.

"When <u>de novo</u> review is compelled, no form of appellate deference is acceptable."

<u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 238 (1991).  <u>Ocelot</u> and its progeny have stressed

that, when making a <u>de novo</u> review, the court is "not to give any special weight" to the prior

determination.  <u>Ocelot</u>, 847 F.2d at 1464; <u>accord</u> <u>In re Electron Corp.</u>, 336 B.R. 809, 811 (B.A.P.

10th Cir. 2006); <u>Andrews v. Deland</u>, 943 F.2d 1162, 1170 (10th Cir. 1991); <u>United States v.</u>

<u>Flores-Ortega</u>, No. 2:05-CR-672 TS, 2006 WL 2061351, at *1 (D. Utah July 21, 2006) (attached

hereto as Exh. D, James Decl.).  A district judge is free to follow or "wholly ignore" a magistrate

judge's dispositive finding, or "he may conduct the review in whole or in part anew," but in any

case the court must make "an independent determination of the issues."  <u>Ocelot</u>, 847 F.2d at

1464 (reversal required because district judge's ruling indicated he "accorded considerable

deference to the magistrate's order").

Ignoring that this Court wrote the operative disclosure order (the order to which SCO

responded with its allegedly inadequate disclosures), IBM argues that the Magistrate Judge's

Order should be given deference because it involved construction of two of her <u>earlier</u> discovery

---

remand order is non-dispositive, is expressly contrary to the Tenth Circuit's <u>First Union</u> decision, which
held that remand orders are dispositive.  In <u>Umbenhower v. Copart, Inc.</u>, No. 03-2476-JWL, 2004 WL
2660649 (D. Kan. Nov. 19, 2004) (attached hereto as Exh. L, James Decl.), the magistrate judge <u>denied</u> a
motion in limine, so obviously there was no disposition of any claim.  In the rest of the cases cited in
IBM's footnote 9, whether the magistrate judge's ruling was dispositive was not even at issue; all
involved routine, plainly non-dispositive rulings excluding specific documents or testimony.

orders.  But IBM cites cases, such as <u>Lancaster v. Independent School District</u>, 149 F.3d 1228

(10th Cir. 1998), that stand only for the common-sense proposition that the judge who writes an

order is in the best position to understand its intended meaning.  They do not hold, nor could they

hold in light of Article III and Rule 72(b), that something less than full and independent review

of a claim-dispositive sanction order is acceptable.

     Moreover, in view of the requirement of a clear and unambiguous order, any finding by a

magistrate judge that an ambiguous order was intended to have a particular meaning is not even

relevant.  Whether an order or contract is ambiguous is itself a question of law subject to <u>de novo</u>

review.  <u>Volkman v. United Transp. Union</u>, 73 F.3d 1047, 1051 (10th Cir. 1996).[7]

     IBM concludes (at 22) that deference should be given to Magistrate Judge's order simply

because of "her understanding of discovery proceedings she has supervised for more than three

years."  Yet each of the cases IBM cited for this proposition involved review of <u>non</u>-dispositive

matters, where the clearly erroneous standard always applies to factual findings.  <u>See, e.g.</u>,

<u>Anderson v. Corr. Med. Servs.</u>, No. 04-3410 (GEB), 2006 WL 1644709 (D.N.J. June 6, 2006)

(order disallowing the taking of a particular deposition) (attached hereto as Exh. E, James Decl.).

Such statements are inapposite where, as here, review is <u>de novo</u> and "no form of appellate

deference is acceptable."  <u>Salve Regina</u>, 499 U.S. at 238.

---

[7] There is also no support for IBM's contention (at 22) that deference to the Magistrate Judge is "all the
more appropriate" because SCO did not appeal or seek clarification of her orders.  IBM cites <u>Serra
Chevrolet, Inc. v. General Motors</u>, 446 F.3d 1137, 1150 (11th Cir. 2006), but that case did not involve a
magistrate judge's ruling or any issue as to the standard of review, and it has no bearing on this case.  The
court merely rejected a party's argument that an order was unclear and commented that, if the party had
any doubt, it should have sought clarification.  The court apparently believed that the party was not acting
in good faith, because ordinarily there is no duty to seek clarification, as parties are entitled to rely on a
good faith, reasonable interpretation of a court order.  <u>Reno Air Racing Ass'n, Inc. v. McCord</u>, 452 F.3d
1126, 1130 (9th Cir. 2006); <u>Spectra Sonics Aviation, Inc. v. Ogden City</u>, No. 89-4142, 1991 WL 59369,
at *2 (10th Cir. Apr. 19, 1991) (attached hereto as Exh. M, James Decl.).

**B.**   **Even If Rule 72(a) Is Deemed Applicable, SCO Is Entitled to De Novo Review Of Legal Conclusions and Predominately Legal Mixed Questions of Law and Fact, and to "Clearly Erroneous" Review of Purely Factual Findings.**

Under Rule 72(a) the ruling must be set aside if "found to be clearly erroneous or contrary to law." Under the Rule, the "clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc., 155 F. Supp. 2d 1174, 1177 (C.D. Cal. 2001).

As is always the case on appellate review, under Rule 72(a) the magistrate judge's legal analysis and conclusions are reviewed de novo and without deference. Salve Regina, 499 U.S. at 238 (de novo review of interpretation of state law); Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1228 (10th Cir. 2001) (de novo review of magistrate's legal analysis). Purely factual issues in a Rule 72(a) case are reviewed under the clearly erroneous standard, which means a factual finding will be set aside, even if there is evidence to support it, if the court has a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Ocelot, 847 F.2d at 1464. The test is not "abuse of discretion," as IBM contends (at 15).[8] Nor has the Supreme Court or the Tenth Circuit approved the "dead fish" or "heavy burden" formulations suggested by IBM (at 20-21).

On a mixed question of law and fact, the scope of review depends on "whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." Naimie v.

---

[8] The magistrate judge does not have any discretion to make incorrect factual findings or erroneous legal conclusions. The "abuse of discretion" standard is employed when a magistrate judge rules on a matter on which she has discretion, such as whether to extend a discovery deadline, or whether to exclude cumulative evidence.

Cytozyme Labs., 174 F.3d 1104, 1111 (10th Cir. 1999). A mixed question is reviewed <u>de novo</u>

if it "involves the application of legal principles to undisputed facts," <u>Hollern v. Wachovia Secs.</u>,

Nos. 05-1253, 05-1300, 2006 WL 2361627, at *6 (10th Cir. Aug. 16, 2006) (attached hereto as

Exh. F, James Decl.), or if the issue is "[w]hether the district court failed to consider or accord

proper weight or significance to relevant evidence," <u>Harvey by Blankenbaker v. United Transp.</u>

<u>Union</u>, 878 F.2d 1235, 1244 (10th Cir. 1989).

 With regard to the Magistrate Judge's Order here, <u>de novo</u> review is appropriate because

the issues are predominantly legal. The language of the pertinent orders, SCO's responses

thereto, and the correspondence between counsel are all undisputed. The only arguable factual

issue is whether SCO breached any order "willfully," but even here the question turns on the

legal meaning of the term "willful," as used in the pertinent case law. (<u>See</u> Part V, below.)

**IV.** **SCO COMPLIED WITH THIS COURT'S ORDER TO IDENTIFY "MISUSED MATERIAL" WITH SPECIFICITY AND TO UPDATE INTERROGATORIES.**

 **A.** <u>**The July 2005 Order.**</u>

 IBM progressively seeks to diminish the importance of the July 2005 Order even though

it is the Order as to which the December Submission was produced and served as the basis for

IBM's initial Motion to Limit SCO's Claims. The July 2005 Order simply does not contain the

language that IBM now imputes to it. The July 2005 Order required each party "to identify with

specificity all allegedly misused material" – which SCO clearly did.

 IBM does not explain how this Order should be interpreted to require a particular type of

specificity that IBM proposed be required but was not included in the language the Court used.

Specifically, IBM's proposed scheduling order included a footnote that provided:

> <u>For this purpose, allegedly misused material must be identified by</u>
> <u>version, file, and line of code.</u>  For example, to the extent a party
> contends the other party has infringed its copyrights, the accusing
> party must identify and match up the allegedly infringing and
> allegedly infringed material by version, file, and line of code.  To
> the extent a party contends that the other party has breached its
> contractual obligations by contributing code to Linux, the accusing
> party must identify the material alleged to have been contributed
> improperly by version, file and line of code and to the extent the
> allegedly contributed material is not Unix System V code, but is in
> any sense alleged to have been based on or resulted from Unix
> System V code, the version, file and line of Unix System V code
> from which the allegedly contributed material is alleged to derive
> or result.

(IBM's Proposed Amended Scheduling Order (Mar. 25, 2005), at 2 n.2 (emphasis added).)  The

Court did not include this language in its final Order.   The omission of such language was

appropriate because there had been no determination that such a requirement was feasible for

each type of "misused material" that SCO might identify and the type of specificity provided

would logically vary.

     Nor would such a requirement reflect what SCO would be required to prove to establish

its contract claims.  SCO summarized in its opening brief (at 3-5) the nature of its contract

claims.  Under those claims, which are well supported in the discovery record, IBM breached the

contracts whenever an IBM developer disclosed to the Linux community any protected code,

method, concept or know-how from UNIX System V, AIX or Dynix.  The Magistrate Judge's

interpretation of this Court's July 2005 Order would nullify these contract theories and the

evidence in support of them.  Under the Magistrate Judge's interpretation, the July 2005 Order

means that SCO cannot pursue its contract claims even where SCO has produced the direct

evidence demonstrating the IBM disclosure, and even where IBM has counted the disclosed

method and concept as an important contribution to Linux.  That argument not only turns on its

head the rules of evidence, but also seeks to graft onto this Court's July 2005 Order a substantive, evidentiary significance that the Order does not reflect.

## B.     The December 2003 Order and IBM Interrogatories

IBM falls back to the Magistrate Judge's December 2003 Order.  IBM now argues that "the December 2003 Order clearly required SCO to provide at least nine coordinates for each item of allegedly misused material" and that the Order required this "plainly and unequivocally." There has never been, in the December 2003 Order or otherwise, an express requirement to provide "nine coordinates" of code.  A careful reading of the materials shows that a requirement of "nine coordinates for each item of allegedly misused material" also cannot be supported by the interrogatories IBM propounded.

Each interrogatory, along with IBM's most recent construction in its most recent Response, and SCO's position, is set forth below.  The following demonstrates that IBM's construction of the interrogatories is not supported by the plain language.

### IBM's Definition of Identify

IBM now relies for the first time on its own definition of "identify" in an effort to reframe the information sought in interrogatories.  The definition is:

> The term "identify" shall mean . . . in the case of . . . confidential or proprietary information, whether computer code, methods or otherwise, to give a complete and detailed description of the trade secrets or confidential or proprietary information, including but not limited to an identification of the specific lines and portions of code claimed as trade secrets or confidential or proprietary information and the location (by module name, file name, sequence number or otherwise) of those lines of code within any larger software product or property.

(James Exh. 3 at 18-19 (emphasis added).)

19

This definition actually supports SCO's position.  It imposes a general requirement to identify by providing, with respect to all confidential or proprietary information, including code and methods or concepts, a "complete and detailed description."  Where SCO is contending that "specific lines or portions of code" are confidential or proprietary, it requests identification of the location by module, file or sequence number.  The latter provision regarding "location by module, file or sequence number" is not implicated by SCO's claims based solely on disclosure of methods and concepts, because in such claims SCO is <u>not</u> claiming the underlying "specific lines or portions of code" as confidential or proprietary information that was misused – just the method or concept.  Thus, IBM's own definition of identify does not impose the requirement that SCO identify all methods and concepts by even three coordinates, let alone nine.  Because this definition of "identify" is used throughout IBM's requests, it is an independent reason why the Magistrate Judge's order cannot stand.  An analysis of the Interrogatories themselves further supports this conclusion.

### Interrogatory No. 1

This was the principal interrogatory designed to ascertain all of the confidential and proprietary information that SCO contends IBM misused.  It asked SCO:

> Please identify, with specificity (by product, file and line of code, <u>where appropriate</u>) . . . any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused, including but not limited to as alleged in ¶ 105 of the Complaint.[9]

---

[9] For simplicity, references to trade secrets have been omitted by elliptical, since they are no longer part of this case.

(James Exh. 3 (emphasis added).)  As explained in SCO's Objections, SCO has complied fully

with this Interrogatory.

IBM now contends (at 27) that "where appropriate" simply referred to "the possibility

that some of the allegedly misused material might not relate to an operating system."  This

interpretation makes no sense, since SCO's case is about the misuse and improper disclosure of

code and methods and concepts from operating systems.  The terms "where appropriate" should

be given their ordinary meaning – that there will be technology items for which identification by

file and line of code is "appropriate," and technology items for which such identification is not

"appropriate."

### Interrogatory No. 3:

In this interrogatory, IBM asked SCO:

For . . . any confidential or proprietary information identified in response to
Interrogatory No. 1, please identify all persons to whom the alleged trade secret or
confidential or proprietary information is known or has been disclosed and describe,
in detail, the circumstances under which it became known or was disclosed,
including but not limited to:  (a) the date on which the alleged trade secret or
confidential or proprietary information was disclosed or became known to such
persons; (b) the specific terms on which the information was disclosed or became
known, such as pursuant to a confidentiality agreement; (c) all documents or
agreements relating to the disclosure; and (d)  all places or locations where the
alleged trade secret or confidential or proprietary information may be found or
accessed.

(James Exh. 3.)  This interrogatory relies upon the aforementioned definition of identify, which

required "complete and detailed" description, but does not say anything about identification of

nine coordinates of "version, file, and line" information for each item of misused material, its

origin, and its destination.  The reference to places or locations where the misused material may

be found or accessed is met by SCO's providing an identification of whether the item was

located in Dynix, AIX or System V, at the highest level of specificity that IBM programmers provided in making the disclosure.  Places and locations are not defined in this interrogatory as requiring three coordinates of line, file and version.  Contrary to IBM's assertion, "Location" is not a defined term in its interrogatories.  IBM simply excerpted a portion of another definition where the word "location" was used and called it a definition.  SCO had no reasonable cause to read the terms "place or location" as an obligation to provide "version, file, and line" information for each item of misused material.

Moreover, Interrogatory No. 3 asks SCO to identify persons, dates, terms, documents, and "places or locations" – not "confidential or proprietary information" (which had already been sought in Interrogatory No. 1).   Thus, the definition on which IBM relies – identify in the case of confidential or proprietary information – is not even implicated by Interrogatory No. 3.  IBM's attempt to bootstrap a reference to "location" within the definition of identify "in the case of confidential or proprietary information" is improper and is not remotely sufficient to support the striking of SCO's claims.

### Interrogatory No. 4:

In this interrogatory, IBM asked SCO:

For . . . any confidential or proprietary information identified in response to Interrogatory No. 1, please describe, in detail, each instance in which plaintiff alleges or contends that IBM misappropriated or misused the . . . confidential or proprietary information, including but not limited to:  (a) the date of the alleged misuse or misappropriation; (b) all persons involved in any way in the alleged misuse or misappropriation; (c) the specific manner in which IBM is alleged to have engaged in misuse or misappropriation; and (d) with respect to any code or method plaintiff alleges of contends that IBM misappropriated or misused, the location of each portion of such code or method in any product, such as AIX, in Linux, in open source, or in the public domain.

22

(James Exh. 3.)  This interrogatory seeks information about the facts surrounding IBM's misuse of the material identified in Interrogatory No. 1, such as <u>when</u> the misuse occurred, <u>who</u> was involved, the <u>manner</u> in which the misuse occurred, and the <u>location</u> of the misused material in products, such as AIX or Linux.  This interrogatory apparently was designed to ascertain information about IBM's misuse of the material identified in Interrogatory No. 1, including which product the misused material came from or was added to.

However, in contrast to this logical, plain language-based interpretation, IBM contends that this interrogatory also sought "version, file, and line" information for each item of misused material.  This interpretation is flawed for the same reason as IBM's construction of Interrogatory No. 3:  IBM again relies on the purported "definition" of location (which, as set forth above, does not exist), and the definition of identify in the case of confidential or proprietary information (which is not even implicated by this request).  IBM provided other definitions of identify with respect to persons, documents and communications.  To the same point, IBM's statement that the term "location" means "what Judge Wells said it means" is unhelpful, because the Magistrate Judge did not define that term in the December 2003 Order.  Further, where SCO does not allege that IBM disclosed the source code of a method or concept, there would be no cause for SCO to identify the "location" of source code with respect to such a disclosure.

### Interrogatory No. 6:

In this interrogatory, IBM asked SCO:

For each line of source or object code and each method identified in response to Interrogatory No. 1, please identify: (a) the origin of the code or method, including when, where and by whom the code or method was created; and (b) all products in which, in whole or in part, the code or method is included or on which, in whole or in part, the code or method is based.

23

(James Exh. 3.)  Interrogatory No. 6 was not discussed in the Magistrate Judge's Order, but IBM now tries to make it a basis supporting the sanction.  The request says nothing about version, file and line information <u>within</u> the products.  To overcome this shortfall, IBM again tries to bootstrap the definition of "identify . . . in the case of confidential or proprietary information" to this request for identification of "products."  The plain meaning of the word "product" cannot reasonably be so discarded.  SCO complied with this request by indicating the "product" from which the method or concept originated, and, by providing detail as to the nature of the method or concept disclosed, provided IBM with detail as to where it may be found in that product

**<u>Interrogatory No. 12</u>**

This is the first of the interrogatories on which IBM relies that does not refer back to Interrogatory No. 1.  In this interrogatory, IBM asked SCO:

> Please identify, with specificity (by file and line of code), (a) all source code and other material in Linux (including but not limited to the Linux kernel, any Linux operating system and any Linux distribution) to which plaintiff has rights; and (b) the nature of plaintiff's rights, including but not limited to whether and how the code or other material derives from UNIX.

(James Exh. 4.)  Interrogatory No. 12 plainly has a different purpose than Interrogatory No. 1, and is not targeted at ascertaining the material SCO contends IBM misused.  Rather, Interrogatory No. 12 seeks identification of <u>the material in Linux to which SCO claims rights</u>.  This is a completely different request, and apparently relates to SCO's Linux copyright infringement claims and/or IBM's Tenth Counterclaim.[10]  SCO complied with the plain language

---

[10]  Material may be responsive to both No. 1 and 12; may be responsive to No. 1 without being responsive to No. 12; or may be responsive to No. 12 without being responsive to No. 1.  Such complexity underscores the extent to which IBM tries to defend the sanction order by invoking its web of disparate discovery requests on disparate subjects.

of this request, identifying the material in Linux to which it claims rights.  To the extent that SCO could provide such identification by line it has done so, and otherwise it has complied by identifying the files relating to the method or concept.  IBM fails to explain how this can be sanctionable when there has been no Order (prior to this ruling) that such a level of identification is inadequate, and that SCO must do more – or could do more – or face the striking of its claims.

**Interrogatory No. 13:**

In this interrogatory, IBM asked SCO:

For each line of code and other material identified in response to Interrogatory No. 12, please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights.

(James Exh. 4.)  This interrogatory, by reference to Interrogatory No. 12, also relates only to the material in Linux to which SCO claims rights.  Further, it also seeks just what it says it does – a description of "how IBM is alleged to have infringed plaintiff's rights."  This request for a "description" in no way amounts to an obligation "nine coordinates" of "version, file, and line" information.  IBM does not explain how the word "description" could be so construed.  In fact, "describe" is a defined term in IBM's interrogatories, which means:  "in the case of an event or circumstance, to set forth in detail the date, time, place, individuals or entities involved and context and content of the event or circumstance."  The provision of "version, file, and line" information is, plainly, not mentioned.

In summary, the interrogatories on which IBM relies simply do not make the request IBM says they do, and certainly do not do so with the clarity required to support a sanction against SCO for noncompliance.  SCO neither violated the December 2003 order nor failed to update its responses to IBM's interrogatories.

### C.   The March 2004 Order

IBM contends (at 9) that the Magistrate Judge properly held that SCO violated the March 2004 Order because, in that Order, the Magistrate Judge "required SCO to provide version, file and line information for each of the supposedly misused elements of System V AIX/Dynix and Linux." That however, is not what the March 2004 Order provides. The Order, in relevant part, states that "As previously ordered, SCO is to provide and identify all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix." The March 2004 Order also states that "SCO is to provide and identify all specific lines of code from UNIX System V from which IBM's contributions from AIX or Dynix are alleged to be derived." As discussed below, SCO has sought to fully comply with both of these directives. In any event, there is no reason to read this Order as substantively expanding SCO's obligations beyond that imposed by IBM's interrogatories and the December 2003 Order.

### D.   SCO Did Not Violate Rule 26(e).

Finally, IBM – for the first time – relies on Rule 26(e) to try to justify the Magistrate Judge's Order. Rule 26(e) was not mentioned in IBM's Motion, or otherwise. It appears (at page 31) in the Order in a single paragraph that notes the parties' obligation to update interrogatory responses. Rule 26(e), however, sets forth the requirement for supplementation of interrogatory responses; it does not expand upon the scope of the interrogatory. SCO understood it was required by the July 2005 Order to update its responses in light of its December Submission, and it did so. SCO also responded to IBM's voluminous additional interrogatory

26

requests promulgated in response to the December Submission.[11]  Because Rule 26(e) does not

define, let alone expand, the scope of information requested in a particular interrogatory, it

cannot enlarge the obligations on SCO or constitute an independent basis for the Order entered.

### E.    The Magistrate Improperly Relied on Material Beyond the Discovery Orders in Imposing Sanctions.

It should not be necessary for a court to reach beyond the plain language of its orders in

seeking to determine their meaning, especially for purposes of deciding whether to impose

severe sanctions.  Yet, here, the Magistrate Judge felt compelled to seek support for its ruling in

SCO's prior discovery requests, a deposition, and certain requirements of copyright registration –

none of which were discussed in IBM's briefing on the motion, and to which SCO was not given

a chance to respond.

     1.    IBM's Response Does Not Explain the Magistrate Judge's Improper Reliance on the Davis Rebuttal Declaration – to Which SCO Was Not Permitted to Respond.

IBM does not even address the serious problem – indeed, reversible error – that the

Magistrate Judge relied substantially on the Davis Rebuttal Declaration, to which SCO was not

given a chance to respond.  The circumstances surrounding IBM's post-hearing submission of

the Davis Rebuttal Declaration and the Magistrate Judge's improper consideration of that

document are set forth in SCO's Objections (at 12 and 23) and will not be reiterated here.  IBM

seeks to justify reliance on these materials, but did not even seek to defend how a serious

---

[11] IBM seeks to distance itself from its prior withdrawal of one of those new requests that asked for identification of each item in Linux on the grounds that it had been confused, and did not realize this was already subject to existing requests.  That is precisely SCO's point – the prior requests are hardly clear and cannot support a severe sanction when even IBM, as their author, was confused.  (See Point V.B.1, below.)

sanction ruling could emanate from a process in which SCO had no opportunity – in writing or

otherwise – to address what the court then seizes upon as important grounds for decision.

 2. SCO's Own Discovery Requests Could Not Support the Magistrate
  Judge's Interpretation of SCO's Obligations in Response to IBM
  Discovery.

The Magistrate Judge labeled SCO's own definition of identify, which was set forth by

IBM for the first time in the Davis Rebuttal Declaration, as "most important to the court" in the

decision striking SCO's claims. The Magistrate Judge reasoned that SCO should "be held to the

same level of accountability that SCO held IBM to." SCO's Objections explain in detail (at 24-

28) why SCO did not in fact hold IBM to the standard now imposed on SCO, and why this

definition has absolutely no relevance to the issue at hand.

IBM provides no substantive response to fact that SCO's own discovery requests clearly

demonstrated that:

 (1) when SCO sought from IBM "identification" of its contributions to
 Linux, SCO properly qualified the request for "product and line of code"
 with the language "where appropriate" – just as IBM did;

 (2) the Magistrate Judge assumed with no basis that IBM had complied
 with SCO's discovery requests that incorporate the term "identify" when,
 in fact, IBM did not[12]; and

 (3) the Magistrate Judge assumed, again with no basis, that SCO would
 have moved as a matter of course to compel IBM to provide the
 information if IBM had not provided it.

Accordingly, SCO demonstrated that – flatly contrary to the Magistrate Judge's assumption –

SCO never requested of IBM what IBM now contends SCO was obliged to provide IBM.

---

[12] IBM notes that it identified substantial lines of code when moving for summary judgment on its
copyright claims. It did not do so, however, with respect to issues addressed by SCO's discovery requests
to identify contributions made by IBM to Linux (James Exh. 8), notwithstanding SCO's definition of
"identify."

IBM states (at 40):  "SCO expressly incorporated the definition into every one of its interrogatories and requests for documents."  Not only is this not the case (as explained in SCO's Objections), but where the definition was used, the discovery request was qualified by the language "where appropriate."  But even had SCO used the definition (unmodified), and even had IBM responded with code (rather than objections), there is no basis for inferring into these requests some common understanding that the obligation to identify must always mean providing "nine coordinates" of information on the pain of dismissal of claims.

In short, the Magistrate Judge's reliance on SCO's discovery requests as "most important to the court" in the decision striking SCO's claims is clear and reversible error.

3.     The Deposition Testimony of Sandeep Gupta and the Deposit
          Requirements for Copyright Registration Cannot Support Sanctions.

Even further afield is the Magistrate Judge's errant reliance on the testimony of Sandeep Gupta and the Deposition Requirements for Copyright Registration.  The flaws in that analysis and the application of these factors are explained in detail in the Objections (at 28-30).  In an effort to explain away these manifest problems, IBM posits that the Magistrate Judge's purpose in relying on these points was simply that version, file, and line of code information for methods and concepts was "valuable" or "important."  But neither Gupta's testimony nor Copyright Registration requirements (a) establish the meaning of the Court's prior discovery orders; or (b) establish that SCO knew or could readily ascertain the origin source code for each method and concept that IBM engineers disclosed.

V.   **THE MAGISTRATE JUDGE CLEARLY ERRED IN FINDING THAT SCO WILLFULLY FAILED TO COMPLY WITH COURT ORDERS REQUIRING SPECIFICITY**

A.   <u>**Willfulness Requires an Intentional Violation of a Clear Order.**</u>

IBM argues at bottom (as at 3 and 42-43) that SCO's conduct was willful because SCO acted consciously and voluntarily.  That is, IBM argues that because SCO consciously assembled and submitted its December Submission, no further inquiry into the specifics of the court orders or the circumstances surrounding the December Submission need be considered to determine whether SCO should be sanctioned for its conduct.  Thus, the argument goes, if a party acts voluntarily in submitting a discovery response, it automatically exposes itself to even the harshest of discovery sanctions, since that conduct alone satisfies the legal requirement that a party may be sanctioned for a "willful" violation of a court order.

In asserting that SCO can and should be sanctioned in such circumstances, IBM is clearly mistaken for two main reasons.

<u>First</u>, that interpretation of the willfulness requirement is nonsensical.  IBM's position amounts to the suggestion that a court could issue an ambiguous order, a party could in good faith comply with what it believed the order required, and that party could then be severely sanctioned for "willfully" violating the order as the court subsequently construes it.  To be sure, IBM contends (at 42) that since "SCO did not claim to have assembled the Final Disclosures unwittingly," the Magistrate Judge correctly found SCO to have willfully violated court orders.  That view sets forth an unsupportable position that would undermine the entire purpose of the willful requirement.

Second, IBM does not cite any precedent to support that extreme view of the law of sanctions. The three principal cases that IBM does cite – In Re Standard Metals, 817 F.2d 625 (10th Cir. 1987), FDIC v. Daily, 973 F.2d 1525 (10th Cir. 1992), and Schroeder v. Southwest Airlines, 129 Fed. Appx. 481 (10th Cir. 2005) – say no such thing.  As an initial matter, each of those cases cites directly or indirectly to Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers, 357 U.S. 197 (1958), the seminal Supreme Court case that directly supports SCO's position and that has served as the guiding precedent in the Tenth Circuit under In re Westinghouse Electric Corporation Uranium Contracts Litigation, 563 F.2d 992 (10th Cir. 1977).  As to the practical implications of the willfulness requirement, each of those cases aims to implement the Rogers/Westinghouse standard, which holds that a plaintiff's good-faith efforts to comply with a court order preclude a finding of sanctions.  See Rogers, 357 U.S. at 210; Westinghouse, 563 F.2d at 998.  The Rogers court was unwavering: "Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." 357 U.S. at 210.

By IBM's standard, the Rogers decision makes no sense.  The Supreme Court would have ended its inquiry into willfulness after assessing whether the party had acted "voluntarily" or "wittingly" when it responded to discovery.  Instead, the Court in Rogers undertook a detailed analysis of the good faith that the plaintiff had exhibited, in ultimately concluding that sanctions dismissing part of plaintiff's claims were inappropriate and unconstitutional.

The recent decision in Holliday v. Extex, No. Civ. 05-00194SPK-LEK, 2006 WL 2419117 (D. Haw. Aug. 10, 2006) (attached hereto as Exh. G, James Decl.), highlights how IBM's position is not the law. There, the district court entered a confidentiality order requiring the parties to return "immediately upon the producing party's request" any produced document containing attorney work product. Defendant inadvertently produced two documents containing work product and asked plaintiff to return them; plaintiffs ("Holliday") declined, because neither document was on legal letterhead or signed by or addressed to an attorney. Id. at *7. On defendant's motion, the district court ordered the plaintiff to return the document, but declined to enter sanctions against plaintiff. The court said: "There is nothing on the face of either document that clearly identifies it as work product. The Court cannot find that Plaintiffs Holliday willfully violated the Confidentiality Order by refusing to return the documents." Id. (emphasis added). By IBM's lights, however, the district court in Holliday would have sanctioned the plaintiffs based on the undisputed facts that they had consciously (or "wittingly") retained documents that turned out to contain work product – regardless of whether the plaintiffs reasonably believed that they did not contain work product. Holliday is simply the most recent of the many cases that refute IBM's proposed standard.

Where willfulness is found, it is on a much different record. The facts of each of IBM's cases turned on key considerations that also are conspicuously absent here. In Standard Metals, the plaintiff had been ordered to appear for deposition in Denver, Colorado, and was warned "that failure to do so could result in the dismissal of his claim." 817 F.2d at 629. The plaintiff nevertheless chose to travel overseas. Upholding the bankruptcy court's sanctions, the Tenth Circuit noted that the plaintiff was indisputably aware of the court's requirement and of the

consequences of violating the court's order to appear for deposition and his actions therefore constituted "an 'intentional failure.'"  Similarly in <u>Daily</u>, the sanctioned defendant requested extensions of time to respond to discovery.  The court granted the extension, but defendant missed that deadline as well, failing to produce the discovery until almost one year after the proposed extension date, assessing a number of factors including "degree of actual prejudice to the opposing party amount of interference with the judicial process; and culpability of the litigant."  973 F.2d at 1529.  As in IBM's other cases, the defendant clearly knew what was required, and he failed to comply.  In <u>Southwest Airlines</u>, the sanctioned plaintiff did not appear for deposition, made no request to change the date, and did not notify defendants' attorneys that she would not appear.  Plaintiff also failed to file timely responses to discovery requests.  The district court sanctioned the plaintiff for "abusing the discovery process, failing to prosecute her case, and failing to follow the rules of civil procedure."  On appeal, the Tenth Circuit upheld that sanction since "<u>no evidence</u> had been presented to demonstrate the she was not aware of the date, time, and place for her deposition." 129 Fed. Appx. at 484 (emphasis added).[13]  In short, IBM strips the actual legal requirement of meaning by equating "willfully" with "voluntarily."

### B.    SCO Did Not Willfully Violate Any Court Order.

Three factors preclude a finding of willfulness here.  <u>First</u>, there is no clear and unambiguous court order that SCO ignored in preparing and submitting its December Submission.  <u>Second</u>, SCO believed (and reasonably) that its December Submission fully satisfied the instructions of the Court.  <u>Third</u>, SCO does not possess or control the information

---

[13] In fact, plaintiff's main argument in <u>Southwest Airlines</u> was that she personally should not bear responsibility for the abuse of the discovery process, since it was primarily the fault of her attorneys. 129 Fed. Appx. at 484-84.

that the Magistrate Judge now says SCO needs to have provided in order to comply with the Court's order.

      1.    <u>SCO Did Not Willfully Violate a Clear and Unambiguous Court Order.</u>

If the discussion above shows anything, it shows that there is no clear order that required SCO to provide the "nine coordinates" of source code information for every "misused" technology item.  There has never been an order saying that where IBM's disclosure did not involve source code, SCO must nevertheless provide source code.  There has never been an order saying that SCO must discern and report on the line, file and version of Dynix or AIX that IBM engineers had in their minds when making a disclosure of methods and concepts from those operating systems.  There has never been a ruling that SCO's identification of the files in Linux where the misused materials have been incorporated or had an impact is not sufficient and the failure to delineate lines within those files is sanctionable.  Indeed, until this Motion, there has never been litigation before the Magistrate Judge or this Court over the disclosure obligations as they apply to methods and concepts where SCO is <u>not</u> contending source code has been copied or otherwise misappropriated.

The absence of a clear order on these matters is reflected in IBM's issuance of an interrogatory (No. 23) in February 2006, which it subsequently withdrew in part, seeking some of the very information that it contends SCO clearly knew it had to provide in response to earlier requests.  IBM says that SCO cannot tenably "suggest" that the withdrawal of the interrogatory "in any way affected the meaning of the Court's three preexisting orders," but that misses the point.  The argument is not that the interrogatory changed any preexisting order.  The point is that IBM's deliberate service of the interrogatory, before it filed its Motion to Limit, is direct

evidence <u>confirming</u> that IBM did not believe SCO had been previously required to produce that information.  The fact of withdrawal only highlights that IBM discovered the inconsistency of its position – and also that IBM apparently is more interested in bolstering its sanction request than getting at underlying factual information.  Counsel for IBM's concession that Interrogatory No. 23(b) "is confusing in any case" (James Exh. 6) also illustrates that this area of discovery requests and orders has never been so clearly set forth as to meet the legal standard for a severe sanction.[14]

IBM insists (at 43) that the clarity of the orders is evidenced by the fact that "at no point did SCO seek reconsideration or clarification of the Court's orders."  This argument merely begs the question of the meaning of the words used in the orders.  SCO did not move for reconsideration or seek clarification, because it thought it understood the court's orders.  Moreover, because SCO was providing as complete an identification as possible for the items in its December Submission, it could scarcely do more.  IBM is now reading into the July 2005 Order the very requirements that it proposed for inclusion in that Order, but which the Court rejected; the July 2005 Order could not have clearly and unambiguously mandated language that it rejected.

IBM does not dispute the fundamental legal principle that a court order must be clear and unambiguous in order for a violation of that order to be sanctionable.  Instead , IBM in one fell swoop both assumes facts not in the record and sets up a straw man, complaining (at 44) that SCO fails to present any cases that hold that "a finding of willfulness should be reversed as clear

---

[14] There is no waiver of this argument, as it is only after its initial Motion that IBM resorted to its interrogatories and orders on these requests to support a Motion to Limit that was originally based on this Court's July 2005 Order.

error where it was predicated on a party's <u>decision not to disclose information</u> consistently

demanded by its adversary for more than three years and <u>expressly required by three court</u>

<u>orders</u>." (Emphasis added.)  There is no evidence that SCO even thought it had to produce

source-code coordinates but decided not to do so.  As to the supposed clarity of the court orders,

IBM cannot – at least not reasonably – bootstrap its interpretation of those orders to try to

demonstrate SCO's supposed state of mind.  For its part, IBM does not cite <u>any</u> case in which a

court found willfulness in circumstances similar to these.

> 2.     SCO Believed in Good Faith That It Was in Compliance
>        With the Court's Orders.

SCO made its best effort, in good faith, to completely comply with the court's orders as it

understood them.  As such, any failure to identify the disclosures was not willful for purposes of

sanctions.

IBM complains (at 45) that "SCO offered no evidence of its subjective belief that it was

in compliance the Court's orders or Rule 26(e)."  That is false.  SCO presented its Memorandum

in Support of its Objections to the Magistrate Judge's Order, a brief signed by SCO's attorneys,

who were responsible for SCO's discovery responses.  That is hard evidence of SCO's "belief

that it was in compliance with the Court's orders."  In addition, IBM has to acknowledge the

declaration of Marc Rochkind, who oversaw the December Submission and testifies that he

sought to respond as fully as possible.  If IBM seeks to challenge Mr. Rochkind and SCO's

factual position on compliance, as it now appears to do, we respectfully submit that requires an

evidentiary hearing.

IBM further argues (at 46) that SCO's subjective belief should not matter, since "a

finding of willfulness alone is adequate to justify Judge Wells' decision."  But the cases IBM

cites in support of that proposition demonstrate that willfulness is <u>not</u> satisfied by a showing of mere conscious conduct. Those cases clearly contemplate the distinction between a party's knowing that it is failing to comply with a court directive on the one hand, and a bad faith decision not to comply with a court directive on the other hand. In <u>Kern River Gas Transmission Co. v. 6.17 Acres Of Land</u>, No. 04-4033, 2005 WL 3257509 (10th Cir. Dec. 2, 2005) (attached hereto as Exh. H, James Decl.), for example, the sanctioned party clearly knew what the court required of it and refused to comply. The party even sought and was granted several extensions to comply with the order. None of the cases IBM cites ultimately supports the position that IBM has set forth – that despite its good faith belief that it was in compliance, SCO could be severely sanctioned simply because it assembled its December Submission voluntarily.

> 3.    SCO Was Not Able to Comply With an Order to Provide
>        <u>All Source Code Coordinates for All of the Disclosures.</u>

There is no record evidence that SCO possesses or controls "nine coordinates" of source code information for the items in the December Submission which were subsequently struck as claims from the case.

Three of the coordinates relate to the actual method or concept disclosed. Where there was a patch file of code, it was identified in the December Submission. (IBM does not contest that certain of those patch files are protected by IBM's firewall, and cannot be accessed by SCO.) Where the disclosure was made without an accompanying disclosure of code showing how the method or concept could be implemented, no code coordinates could obviously be provided. How can the <u>disclosure</u> without code be identified by code coordinates?

Another three coordinates relate to the origin of the method or concept in UNIX, or a UNIX derivative such as AIX or Dynix that is within the non-disclosure protection of the license

agreements.  Most of the items at issue, in fact, are from the Dynix operating system.

**REDACTED**

Here, SCO is being sanctioned for not being able to discern the code IBM programmers had in their mind when making a method or concept disclosure to the Linux community.  There is no evidence that SCO knows this information but is holding back.  Even if it is theoretically possible with unlimited time and resources to find all of the code coordinates, there is no basis to conclude that SCO possesses or should have been unable to uncover this information for its report.  (After all, IBM experts such as Randall Davis say that years would be required to find the code.[15])  Moreover, the information is clearly more readily known to the IBM developers that made the disclosure than it is to SCO.

---

[15] The proposition that SCO <u>could</u> have identified all the source-code coordinates for all the disclosures, including methods and concepts, underlies the Magistrate Judge's Order.  In that regard, IBM relies (as at 37-38 and 42) on Dr. Davis, whose declaration IBM presented to the Magistrate Judge after oral argument and to which the Magistrate Judge did not permit SCO to respond.

**REDACTED**

To this, IBM says very little, seeking instead to confuse the issue by saying (at 49) that "no one has more information about its allegations than SCO." That assertion is not only unproven but illogical. SCO, to be sure, has made its allegations clear – the contested items constitute claims of wrongly disclosed information in breach of IBM's license agreements. IBM need not speculate as to what those claims are. The issue is whether SCO has specific source code coordinates regarding the origins of those methods and concepts, most of which the IBM developer admits originated in an IBM operating system (AIX or Dynix) but as to which SCO enjoys contractual rights of confidentiality.

The final three coordinates relate to the destination of the disclosed technology in Linux.

**REDACTED**

There is no basis on this record by which a court could find that SCO knows but is simply not saying which specific lines within those files have been impacted by the method or concept at issue. And, indeed, the Magistrate Judge has not made such a finding.

Nonetheless, scores of SCO's claims have been dismissed without any proof SCO has or controls any additional source code coordinate information for these items. This cannot be squared with the principle that a party cannot be sanctioned for failing to provide more information than it has the ability to provide. The July 2005 Order is consistent with the

39

proposition that "under the federal rules, a party is under no obligation to create information for another." Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995).[16]

**VI.   THE MAGISTRATE JUDGE MUST BE REVERSED FOR FAILING TO MAKE PARTICULARIZED FINDINGS, REFUSING TO HOLD AN EVIDENTIARY HEARING, AND FAILING TO CONSIDER PREJUDICE ON AN ITEM BY ITEM BASIS.**

**A.     The Magistrate Judge Failed to Make Particularized Item-by-Item Findings.**

Tenth Circuit case law makes clear that discretion in imposing a discovery sanction is not unbounded, but requires an evaluation and findings on the record. See, e.g., Procter & Gamble Co. v. Haugen, 437 F.3d 727, 738-39 (10th Cir. 2005); Robson v. Hallenbeck, 81 F.3d 1, 3 (1st Cir. 1996). The Magistrate Judge sanctioned SCO by excluding over 180 of its claims, for which SCO allegedly failed to properly identify the source code coordinates for the technologies at issue. With respect to each dismissed item, the Magistrate Judge needed to find that SCO possessed but did not provide responsive information "related to the particular claim," Haugen, 437 F.3d at 738, and "the degree of actual prejudice" to IBM, Gripe v. City of Enid, 312 F.3d 1184, 1187 (10th Cir. 2002). These are part of the so-called Ehrenhaus factors, and a failure to consider these factors on the record generally "amounts to an abuse of discretion." Haugen, 428 F.3d at 738-39. In asking (at 4) that the Magistrate Judge "be taken at her word," IBM simply ignores the factors.

Indeed, the Magistrate Judge made no such "detailed" and "specific" findings, Haugen, 427 F.3d at 742, with respect to the overwhelming number of claims dismissed. IBM defends

---

[16] Further to the multiple cases cited in SCO's Objections on that point, courts have consistently refused to require a party to produce discovery or answer interrogatories that the party does not possess and would have to create for its opposing party. See Hicks v. Robeson County, 187 F.R.D. 232, 236 (E.D.N.C. 1999).

that clear error by saying (at 52) "Judge Wells did in fact consider each of the Items on an individual basis, as expressly stated in her opinion . . . there is no reason Judge Wells should not be taken at her word." SCO does not suggest that the Magistrate Judge did not conduct her own examination of these items. But that does not substitute for specific findings. The significant factual disputes regarding the extent of an alleged failure to disclose require findings of misconduct on the record that are detailed and specific enough to permit appellate review. See Robson, 81 F.3d at 1, 3 (where "factual disputes exist over the extent of the misconduct, including excuses offered as to each of the episodes," remand to district court for further proceedings was appropriate); see also Haugen, 427 F.3d at 742 (without "detailed" and "specific" findings supporting its holding that expert testimony was inadmissible, district court dismissal of claim was abuse of discretion). The standard is not what information the originating court considered, it is the extent to which the issuing court has "expressed any view on the matter that would permit [a reviewing court] to provide effective review." Robson, 81 F.3d at 5.

With regard to that specific issue, IBM's response (at 54) is the bare assertion that "individually describing each of SCO's items would have been a waste of time," and "no serious question exists as to whether this Court is in a position to review Judge Wells' findings."[17] In support of its conclusory assertions, IBM (at 53) points only to the sheer length of the Order and contends that the Order's "extensive, specific findings" adequately state the bases of the Magistrate Judge's decision.

---

[17] The cases IBM cites to support its conclusory position similarly beg the question. IBM asserts (at 54) that Penn v. San Juan Hospital, 528 F.2d 1181 (10th Cir. 1975), and Price v. Lake Sales Supply R.M., Inc., 510 F.2d 388 (10th Cir. 1974), hold that "a court need only make such findings as are necessary to permit appellate review." None of IBM's cases denies the legal requirement for particularized findings established in Robson and Haugen.

41

Of the 198 specific items that the Magistrate Judge considered, however, the Order precludes SCO from making a claim on 147 of them in a single sentence: "After reviewing the remaining items at issue, the Court reaches the same finding – SCO failed to support its alleged misappropriated items with the specificity required by the Court's orders." (Order at 38.) Another paragraph of the Order dismisses 39 further items. (Order at 37 ("The court finds that these items should have been substantiated by more information including more detailed disclosures of source code. If SCO revealed the files one would believe that they would have line information to disclose.").) The remainder of the two-page section of the Order entitled "Specific Items" denies IBM's motion with respect to 11 items and grants the motion for one other. (Order at 36-37.) Given the complexity and variety of issues concerning each individual item in question here, effective review of the Order would be possible only if the Magistrate Judge had made findings as to the adequacy and availability of each individual item.

The need to have particularized findings is reflected in the record of the detailed information provided by SCO on items that were struck. IBM does not respond to the specific items SCO set forth either in the text of its memorandum in support of these Objections, let alone to the additional examples provided in Appendix C. The following five examples, all of them from among those previously raised in this record, are examples of items that SCO identified with sufficient specificity in its December Submission, but that were nonetheless struck by the Magistrate Judge's Order without any particularized findings:

**Item Nos. 279, 280:**

<strong>REDACTED</strong>

**REDACTED**

SCO thus identified Items 279 and 280 with precision, yet without specific discussion by IBM or findings by the Magistrate Judge, they were struck from SCO's case.

**Item No. 146:**

**REDACTED**

---

[18] Item No. 146 is the one misused method that IBM's expert Dr. Davis discussed in his initial Declaration.

**REDACTED**

SCO thus identified Item 46 with precision, yet it was struck from SCO's case by the Magistrate Judge's Order.

**Item No. 53:**

**REDACTED**

IBM has never said one word about Item 53, yet without specific discussion or findings, it was struck from SCO's case by the Magistrate Judge's Order.

**Item No. 38:**

**REDACTED**

---

19    **REDACTED**

REDACTED


SCO thus identified Item 38 with precision, yet without specific discussion or findings, it

was struck from SCO's case by the Magistrate Judge's Order.

**Item No. 46:**


REDACTED


---
20

REDACTED

**REDACTED**

Yet without specific discussion or findings, Item 46 was struck from SCO's case by the Magistrate Judge's Order.[22]

Moreover, even in its general terms, the Order is predicated on the Magistrate Judge's acceptance of Randall Davis's testimony over that of Marc Rochkind regarding the appropriate disclosures for methods and concepts, whether and to what extent IBM was prejudiced (even in general terms) by lack of source code coordinates, and other technological issues. This too should have required an evidentiary hearing.

IBM's principal defense to the Court's failure to conduct an evidentiary hearing is to shift the blame to SCO for failing to request that hearing in its briefing. But IBM ignores the fact that it did not rely on expert testimony in its initial, ten-page motion to which SCO's lone brief responded. SCO requested the hearing at oral argument because only in reply did IBM submit a technological opinion from its proposed expert Randall Davis. At the first opportunity following IBM's reply – at oral argument – SCO requested that the Magistrate Judge hold an evidentiary hearing to consider the disclosure on an item-by-item basis. The Magistrate Judge's decision to sanction SCO without conducting an evidentiary hearing constituted clear error.

---

22

       **REDACTED**

46

**B.     The Magistrate Judge Erred in Failing to Require
         IBM to Establish Prejudice.**

As noted above, Tenth Circuit law requires findings of actual prejudice to be made on the

record. IBM repeatedly suggests (as at 3, 10, 13 & n.6, 29, 42, 58-59) that the sanction was

appropriate because SCO is sandbagging – that is, waiting to present evidence that it did not

disclose in the December Submission. The December Submission was not a catalog of evidence,

but of the technology claims that IBM misused confidential material. If there were any basis for

the argument – and SCO has repeatedly explained that there is not – the avowed prejudice from

"sandbagging" is remedied by not allowing later introduction of items that should have been but

were not disclosed.[23] The concern with sandbagging cannot logically justify a ruling that

precludes litigation of those technology items that have been disclosed.

The consideration of prejudice also must concern who is in the better position to provide

the source code coordinates. The source code IBM seeks is in an IBM-maintained, UNIX-

derived operating system that was <u>solely</u> in the minds of IBM's own programmers at the time the

breach occurred. IBM need only ask the programmers identified in SCO's December

Submission what source code they had in mind when they disclosed to Linux the proprietary and

confidential information that is the basis of SCO's claims and is identified in the December

Submission.

IBM never addresses this key point, and never claims that it could not – or has not

already – done this. There has been no finding (and there is no evidence) that SCO was even as

---

[23] This is the typical remedy courts choose to avoid sandbagging. <u>See, e.g., Dorsey v. Academy Moving</u>
<u>& Storage, Inc.</u>, 423 F.2d 858, 861 (5th Cir. 1970) ("It may be that in a trial on the merits, the plaintiff's
inability to furnish the manufacturing date will prove to be a serious handicap in establishing the true
value of the records. This problem relates to the adequacy of the plaintiff's proof and on these facts
should not preclude her from being able to reach the merits of the issue.").

able as IBM to find such information.  IBM never even purports to provide any evidence
(because it cannot) that this information is unavailable to it, and never denies that it could simply
ask its programmers what source code they had in mind when they made their improper
disclosures.  In the absence of such evidence, SCO can hardly be sanctioned for not providing
the information.[24]

IBM does not address Searock v. Stripling, 736 F.2d 650 (11th Cir. 1984), cited in SCO's
Objections, which addresses in detail the prejudice findings required to support a sanction.
Searock is clear that even where (in contrast to here) a plaintiff fails to produce information that
it was indisputably ordered to produce, other factors must support a sanction.  In Searock, the
very fact that the defendant failed to demonstrate its own attempts to secure the missing
documents led the Eleventh Circuit to conclude that sanctions were inappropriate and had to be
overturned.  That reasoning applies directly to this case, where IBM has made no assertion that it
asked any of its own programmers who made the disclosures at issue for the source coordinates it
now wants SCO to produce.

**REDACTED**

_____

[24] SCO has not waived this argument (as suggested by IBM, at 39), for this issue had never been argued
before this Court or to the Magistrate Judge.  In fact, what SCO argued in the brief cited by IBM was that
"the specifics of who at IBM was involved with improperly contributing the code to the public" and "how
they did so" "will not been known until SCO gets the information from IBM, the party who contributed
the protected materials in violation of its contractual obligations."  (Exh. 13 to IBM Mem. at 5.)  Once
SCO received the discovery it needed from IBM (which IBM was subsequently ordered to provide), SCO
identified who at IBM was involved in the improper contributions and how those contributions were
made – just as it said it would.  The issue of which party was best suited to provide the source code
underlying the improper contributions when that source code was never made public was not previously
addressed in this motion or elsewhere, because that issue had not been raised by IBM prior to its Motion
to Limit.

48

REDACTED

(See SCO Opp. Memo at 3 and sources cited therein.)  IBM has never explained its actions, and there is no stipulation between the parties that absolves IBM of this misconduct or precludes SCO from raising it.  While the Magistrate Judge believed this irrelevant to the present inquiry, IBM's own actions making identification of misused material more difficult cannot be irrelevant to a determination of prejudice.

### C.    The Magistrate Judge Did Not Evaluate The Efficacy of Lesser Sanctions on the Record.

In Ehrenhaus v. Reynolds, 965 F.2d 916 10th Cir. 1992), the Tenth Circuit developed a five-factor test for evaluating the appropriateness of sanctions that prevent a party from presenting the merits of a claim.  965 F.2d at 921.  The fifth Ehrenhaus factor is "the efficacy of lesser sanctions."  Id.  Multiple Tenth Circuit decisions have held that courts imposing such sanctions ordinarily should evaluate these factors on the record.  See, e.g., Haugen, 427 F.3d at 738; Gripe, 312 F.3d at 1187.  Failure to do so is generally an abuse of discretion.  Haugen, 427 F.3d at 738-39.

The Magistrate Judge's Order is silent as to the Ehrenhaus factors.  IBM fails to cite any section of the Order that purports to evaluate the efficacy of lesser sanctions.  Instead, IBM points (at 67-69) to instances where SCO, either in pleadings or at oral argument, noted the existence of alternative sanctions.[25]  With respect to two specific alternatives:  precluding the

---

[25] IBM cites (at 69 n. 28) Lopez-Bignotte v. Ontivero, 42 Fed. Appx. 404, 407 (10th Cir. 2002), for the proposition that the Ehrenhaus factors need not be expressly considered.  Lopez-Bignotte, decided well

49

introduction of any "new" claims not disclosed, and the alternative of denying the motion to limit claims without prejudice to renewal after expert discovery, IBM insists that the Order makes it "perfectly clear" that the Magistrate Judge "thoroughly considered" these alternatives. IBM's only evidence of this consideration is language taken from the Order that states that the "Court has thoroughly considered the relevant law, expert declarations, the parties' memoranda, and has reviewed the 198 items in this motion." (Order at 2; IBM Mem. at 67 (emphasis added by IBM).) At most, this reveals that the Magistrate Judge was aware of the existence of these two alternatives. On its face, this argument does not satisfy Haguen's mandate that the Ehrenhaus factors be considered and evaluated on the record.

## CONCLUSION

The Order granting in part IBM's Motion to Limit SCO's Claims should be reversed.


DATED this 5th day of September, 2006.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand


By_/s/ Brent O. Hatch_____
*Counsel for The SCO Group, Inc.*

---

before Haugen, stands only for the proposition that evidence of proper application of the Ehrenhaus factors is sufficient to counter a charge of abuse of discretion. Here, there is no evidence that the Court applied the Ehrenhaus factors, or that it ever found any of the alternative proposed by SCO to be ineffective.

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing Redacted Reply Memorandum in Support of SCO's Objections to Order Granting in Part IBM's Motion to Limit SCO's Claims was served on Defendant International Business Machines Corporation on the 27th day of September, 2006, by CM/ECF to the following:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Donald J. Rosenberg, Esq.
1133 Westchester Avenue
White Plains, New York 10604

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

/s/ Brent O. Hatch
_____

# APPENDIX A

## APPENDIX A

| | |
|---|---|
| 6/13/2003 | IBM serves its First Set of Interrogatories on SCO.  These interrogatories seek information about IBM's improper contributions to Linux, but do not request SCO to provide version, file, and line of code, and do not address how to identify improperly disclosed methods and concepts where lines of code were not disclosed. |
| 8/4/2003 | SCO serves its initial response to IBM's First Set of Interrogatories. |
| 9/16/2003 | IBM serves its Second Set of Interrogatories on SCO.  These interrogatories seek information about the material in Linux to which SCO claims rights, and relate to SCO's Linux copyright infringement claims and/or IBM's Tenth Counterclaim.  The interrogatories do not request SCO to provide version, file, and line of code, and do not address how to identify improperly disclosed methods and concepts where lines of code were not disclosed. |
| 10/23/2003 | SCO serves a supplemental response to IBM's First Set of Interrogatories. |
| 10/23/2003 | SCO serves its response to IBM's Second Set of Interrogatories. |
| 12/12/2003 | The Magistrate Court directs SCO to answer interrogatories in IBM's First and Second Sets of Interrogatories.  The Magistrate Court Order does not mention any requirement that SCO identify misused material by version, file and line of code, much less address how SCO should identify improperly disclosed methods and concepts where lines of code were not disclosed. |
| 1/12/2004 | Pursuant to the December 12, 2003 Magistrate Court Order, SCO serves a supplemental response to IBM's First and Second Set of Interrogatories. |
| 1/15/2004 | Pursuant to the December 12, 2003 Magistrate Court Order, SCO serves its Revised Supplemental Response to Defendant's First and Second Set of Interrogatories. |
| 3/3/2004 | In response to motions to compel from both SCO and IBM, the Magistrate Court orders both parties to respond to pending interrogatories.  This Order does not mention any requirement that SCO identify misused material by version, file and line of code, much less address how SCO should identify improperly disclosed methods and concepts where lines of code were not disclosed.  In this order, the Magistrate Court recognizes that SCO made "good faith efforts to comply with the Court's prior order . . . ."  As to IBM, the Magistrate Court finds that IBM had failed to provide relevant and responsive |

discovery to SCO, and orders IBM (at 4-6) to provide the approximately 232 releases of AIX and Dynix; all non-public contributions it had made to Linux; materials and documents generated by, and in possession of employees who have been and that are currently involved in the Linux project; further interrogatory responses; and proper identification of 1000 of the most important prospective trial witnesses.

5/18/2004     IBM files a motion for summary judgment, which was ultimately denied as premature since IBM had not provided essential discovery to SCO.

1/18/2005     In response to two motions to compel brought by SCO, the Magistrate Court agrees with SCO that proper discovery from IBM is essential to the fair adjudication of SCO's claims, and orders IBM to produce additional discovery. The Magistrate Court further recognizes that this will necessitate an adjustment to the pretrial deadlines and trial schedule, which ultimately leads to the July 2005 scheduling order at issue here.

2/9/2005      This Court denies all of IBM's motions for summary judgment, observing (at 11): "[T]he Court agrees with SCO that granting summary judgment would be premature given that SCO – at the time the instant motion was briefed – had not obtained from IBM the AIX and Dynix code that SCO has been requesting." The Court further notes (at 16) that "complete discovery is necessary prior to the just resolution of any claim."

3/25-4/1/2005 Both SCO and IBM submitted briefs in support of their proposed scheduling orders. In its proposed scheduling order, IBM asked the Court to include the requirement, hitherto absent, that "allegedly misused material must be identified by version, file, and line of code."

7/01/2005     This Court issues an Order setting forth new pretrial deadlines and a new trial schedule. The Order required each party "to identify with specificity all allegedly misused materials." This Order does not mention any requirement that SCO identify misused material by version, file and line of code, much less address how SCO should identify improperly disclosed methods and concepts where lines of code were not disclosed. Indeed, the Court rejected language requested by IBM in its proposed scheduling order that would have imposed such a requirement.

10/28/2005    Pursuant to the July 2005 Order, SCO serves its Interim Disclosures.

12/05/2005    IBM informs SCO – for the first time – of its interpretation of SCO's discovery obligations, which goes substantially beyond the plain language of the court orders and interrogatory requests. IBM notifies SCO that unless SCO complies with IBM's interpretation of its obligations, "IBM intends to ask the Court to preclude SCO from

pursuing any claims regarding allegedly misused material not properly disclosed on or before December 22, 2005."

12/22/2005    Pursuant to the July 2005 Scheduling Order, SCO specifically identified over two hundred instances in which IBM had misused proprietary and confidential information from its UNIX-derived operating systems, AIX and Dynix, for the widely publicized purpose of commercially hardening Linux. For each item, SCO identified who at IBM made the improper disclosure, how and when the disclosure was made, and what proprietary and confidential information was disclosed. About a third of IBM's improper disclosures are of lines of source code, and about two-thirds are disclosures of methods and concepts without lines of source code. Where IBM's wrongful disclosure to Linux included lines of source code, SCO identified those lines of source code disclosed by IBM. Where IBM's wrongful contribution to Linux contained methods and concepts without lines of source code, SCO identified the method or concept that was disclosed by IBM. This specificity complied with the July 2005 Order, with the Magistrate Court orders, and with IBM's interrogatories.

2/15/2006    IBM serves on SCO Interrogatory 23, which seeking anew some of the same information that it contends it had already requested in earlier interrogatories – suggesting that, before filing its Motion to Limit, IBM also did not believe SCO had been previously required to produce that information.

3/16/2006    IBM withdrew Interrogatory 23, noting that it is "is confusing in any case." (James Exh. 6) This concession illustrates that this area of discovery requests and orders has never been so clearly set forth as to meet the legal standard for a severe sanction.