# EXHIBIT B

Case 2:03-cv-00294-DN Document 822-3 Filed 09/27/06 PageID.11041 Page 2 of 13

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
(Cite as: 1992 WL 455435 (N.D.Cal.))

Page 1

H

Motions, Pleadings and Filings

United States District Court, N.D. California.
Hakan HILLEBY, Plaintiff,
v.
FMC CORPORATION, a Delaware Corporation, Defendant.
No. C-91-068 FMS.

July 28, 1992.

J. George Seka, Duane H. Mathiowetz, Townsend & Townsend, Khourie & Crew, San Francisco, CA, for Hakan Hilleby, plaintiff.

Robert A. Vitale, Jr., Niro Scavone Haller & Niro, Chicago, IL, for FMC Corp., defendant.

ORDER ON HILLEBY'S OBJECTIONS TO MAGISTRATE'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE: SUMMARY JUDGMENT MOTION

FERN N. SMITH, District Judge.

*1 On May 15, 1992, Magistrate Judge Wilken filed proposed findings of fact, conclusions of law and a recommended disposition of defendant FMC Corporation's ("FMC's") motion for partial summary judgment and summary adjudication (hereinafter "Findings").

The Findings recommended that the Court:

1) grant FMC's motion on all of Hilleby's claims for literal infringement;

2) deny FMC's motion on all of Hilleby's claims for infringement under the doctrine of equivalents;

3) grant FMC's motion for summary adjudication that, if FMC is found to have infringed Hilleby's patent, damages will be measured by no less than the reasonable royalty on FMC's sales of conveyor belt systems, but that no additional royalty will be awarded on sales of replacement parts; and

4) summarily adjudicate that the declarations of Agneta Hilleby are insufficient as a matter of law to establish that Hilleby's invention was conceived prior to the filing of the Johnson patent.

Because the Findings are dispositive of certain claims and issues, Hilleby is entitled to *de novo* review. Fed.R.Civ.P. 72(a).

FMC filed no objections to the Findings. Hilleby's objections to the Findings focus on two major issues: [FN1]

1) Hilleby contends that, as a matter of law, he is entitled to recover damages on lost sales of spare parts; and

2) Hilleby contends that the Magistrate Judge's recommendations regarding FMC's motion for summary judgment on literal infringement are based on an incorrect interpretation of certain words in the various patent claims, and that the correct interpretation of these terms raises questions of fact barring summary judgment. Specifically, Hilleby challenges the Magistrate Judge's interpretation of the term "contacting" in ruling on Claims 1, 2, 3, 12 and 13, and the Magistrate Judge's interpretation of the term "complemental" in ruling on Claim 33.

Hilleby does not challenge the recommendations regarding summary adjudication.

DISCUSSION
The factual background to this motion is set forth in the Findings at 2:5--
6:16. Of the findings of fact, Hilleby challenges only the sentence at 6:2-4
that states "[t]he lugs of the belt coact with the sprocket but do not come in
contact with the sprocket."

A. *Damages for Lost Sales of Repair Parts*

The Findings relied on the Supreme Court's decision in *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 377 U.S. 476 (1964) (*Aro II*) in concluding that repair parts are unpatented articles and that Hilleby would not be entitled to a royalty on sales of such parts because "[m]ere replacement of individual unpatented parts, one at a time, is no more than the lawful right of the owner to repair his property." *Dana Corp. v. American Precision Co.,* 827 F.2d 755, 758 (Fed.Cir.1987). The Findings

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

further concluded: "it is difficult to conceive of any instance in which actual damages could properly be based on a royalty on sales of an unpatented article used merely to repair the patented structure." Findings at 15:18-22. Though the Findings barred Hilleby from seeking a separate royalty for the sales of unpatented repair parts, they left open the possibility that evidence of lost sales of repair parts would be admissible if relevant to the value of a reasonable royalty on the patented machine:

> *2 If Hilleby can show at trial, through expert testimony or otherwise, that the subsequent sale of repair parts is relevant to the calculation of a reasonable royalty for the sales of the conveyor belt systems, then evidence of the sales of the repair parts may be admitted at trial for that purpose.
> Findings at 16:6-13.

Hilleby asserts that the Magistrate Judge erred in ruling that it could not recover a separate royalty for unpatented parts, seeking to distinguish *Aro II*.

In *Aro II*, the Supreme Court explained that the rule against collecting damages from a collateral infringer after full satisfaction of a claim against a direct infringer was designed to prevent a patent-holder from resting on its rights while waiting for collateral markets to spring up around the infringing product, and to prevent double recovery against multiple tortfeasors. 377 U.S. at 512. In dictum, the Court went on to acknowledge that some courts had allowed both a recovery on sales of infringing machines and a further recovery on sales of spare parts for those machines, but found them all distinguishable:

> either the parts themselves were patented, or the infringing parts-supplier had sold the machines as well and thus had arguably taken the sales of both machines and parts away from the patentee, or the overlapping recovery allowed from the direct and contributory infringers was one of profits rather than damages.

*Id.* at 513. Hilleby argues that *Aro II* 's reference to infringing parts-suppliers having sold both machines and parts authorizes courts to allow separate royalties on unpatented parts. The authorities directly addressing like issues, however, do not support this conclusion.

The Ninth Circuit has ruled that the holder of a patent on a machine may not tie the sale of unpatented supplies to the sale of machines, because to do so would violate the antitrust laws. *Velo-Bind, Inc. v. Minnesota Mining & Mfg. Co.,* 647 F.2d 965, 973 (9th Cir.1981). In that opinion, the Ninth Circuit held that even where the bulk of a manufacturer's anticipated (and therefore lost) profits derived from a patented device came from unpatented "consumable" supplies used with the patented machine, the manufacturer was entitled to no damages for lost profits from the unpatented supplies. *Id.*

The cases in which damages have been held recoverable for lost profits for sales of unpatented as well as patented items generally rely on the "entire market value rule," allowing such an award where sales of the infringing device cut into sales of the separate, unpatented device (*see Velo-Bind,* 647 F.2d at 972-73, citing, *American Safety Table Co. v. Schreiber,* 415 F.2d 373, 377 (2nd Cir.1969) (damages recoverable for lost profits on sale of an unpatented table on which patented die assembly was placed) or where sales of an infringing item of equipment cut into sales of unpatented auxiliary items of equipment. *Paper Converting Machine Co. v. Magna-Graphics Corp.,* 745 F.2d 11 (Fed.Cir.1984).

*3 In *Magna-Graphics,* the Federal Circuit explained that the deciding factor in its analysis was whether "[n]ormally the patentee (or its licensee) can anticipate sale of such unpatented components as well as the patented ones." *Id.* at 23. Hilleby relies heavily on this language. Separate, auxiliary components, however, are by no means the same as replacement parts. The latter more closely resemble "consumable supplies."

Hilleby cites other cases for the proposition that evidence of lost sales of unpatented items may be admissible for the purpose of calculating damages in the form of a reasonable royalty for the patented device. *See, e.g., TWM Manufacturing Co., Inc. v. Dura Corp.,* 789 F.2d 895 (Fed.Cir.1986) (lost profits for unpatented items allowed where "entire market value" rule found applicable). These outcomes are predicated, however, on a finding that the "entire market value" rule is applicable based on the relationship between the patented and unpatented devices at issue. The authorities do not support the application of this rule to unpatented replacement parts for the patented device.

In any event, the Findings expressly afford Hilleby the opportunity, at trial, to establish predicate facts that might entitle him to present evidence of lost sales of unpatented replacement parts as relevant to the calculation of a reasonable royalty for the patented

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423  
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 3

device. Findings at 16:6-13.

The recommendations of the Magistrate Judge regarding damages from lost sales of spare parts are hereby adopted, without prejudice to either party bringing a motion in limine to determine the proper scope of evidence to establish the relevance of subsequent sales of repair parts.

B. *The Findings of No Literal Infringement*

The Magistrate Judge concluded that FMC's device does not literally infringe Hilleby's patent claims.

Specifically, the Findings focused on the reference in Claims 1, 2, 3, 12 and 13 to a harvester conveyor belt assembly with the "drive means contacting said belt's merlons and crenels," interpreting this phrase to require "that the drive means physically touch both the merlons and the crenels of the belt." Findings at 8:10-11. Observing that FMC's drive means contains apertures through which the "hills" of the interior belt surface protrude, the Magistrate Judge found that FMC's device does not literally infringe Hilleby's claims because "[t]he drive means does not contact the 'hills' of the belt."

The Findings also examine Claim 33's reference to "a drive means having a drive surface formed from teeth and gaps complemental to said merlons and crenels," interpreting this phrase to mean that "the teeth of the drive surface complement the 'valleys' of the interior belt surface, and the gaps of the drive surface complement the 'hills' of the belt surface." The Magistrate Judge concluded that FMC's device does not literally infringe Claim 33 because its drive means "consists of strips which contact the 'valleys' of the belt, and gaps through which the 'hills' of the belt protrude." Findings at 9:1-4.

*4 Hilleby challenges these findings, arguing that the Magistrate Judge erred in (1) interpreting "contacting" in this context to require "that the drive means physically touch the entire surfaces of both the merlons and crenels" and (2) interpreting "complemental" "as defining the shape of the merlons and crenels of the belt and the drive means."

Determination of infringement requires "a construction of the meaning of the claim language and then application of the claims as construed to the accused product or process." 4 Donald S. Chisum, *Patents* § 18.03 (1992). Literal infringement requires that the accused device embody every element of the patent claim. *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986).

Having reviewed the Findings *de novo,* the Court agrees with the Magistrate Judge's interpretation of the two challenged phrases. Though it is true, as Hilleby points out, that the patentee enjoys a "lexicographic license" to define his terms, absent definitions within the patent document that deviate from standard usage, courts should look to the plain meaning of the terms at issue, as construed within the context of the patent document as a whole. It would be unfair to allow the patentee to exercise his "lexicographic license" retroactively once litigation alleging infringement has commenced to define patent terms so as to support a claim of literal infringement.

Hilleby submits the declaration of patent attorney and former patent agent Bernhard Kreten, the agent who prepared, filed and prosecuted Hilleby's patent application. That declaration advances more expansive definitions of "contacting" and "complemental" than those adopted by the Magistrate Judge.

The claims of a patent define the boundaries of the invention. *SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1121 (Fed.Cir.1985). The proper materials for use in claim interpretation are three parts of the patent: the specification, the drawings, and the file wrapper. *Autogiro Company of America v. United States*, 384 F.2d 391, 395 (Cl.Ct.1967). See also, *Mannesmann Demag Corp.*, 793 F.2d at 1282 ("In resolving a dispute as to the interpretation of a claim, reference may be had to the specification, the prosecution history, and the other claims in the patent.")

Examining these materials, the Court agrees with and adopts the conclusions of the Magistrate Judge.

1. "Contacting"

Hilleby appears to argue that the term "contacting" in his patent claims should be interpreted to encompass any form of drive means involving some touching between merlons and crenels, cletes, sprockets or like forms. This interpretation is not supported by the relevant patent documents.

First, the full context in which the term occurs in claim one is as follows:
> In a harvester which picks up produce-laden vines and separates the vines from the produce, ... drive

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11044   Page 5 of 13

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423  
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 4

means contacting said belt's merlons and crenels to move all said belts in synchrony and said drive means defining a preclusion means to prevent build up of debris such as vines, produce, dirt or other field contaminants between said drive means and said belts.

*5 The file wrapper sheds light on the significance of this language in context.

Hilleby's original claim one referred to: "A conveyor belt comprising in combination: a plurality, of merlons and crenels alternatingly disposed on any inner surface of said belt, a plurality of resilient fingers carried on an outer surface of said belt, and drive means for coacting with said merlons and crenels." By communication mailed October 6, 1988, the patent examiner rejected all of Hilleby's original claims. Among the grounds for the rejection was, *inter alia,* that the Hilleby invention was anticipated by the Dekko patent which "discloses a conveyor belt with a plurality of merlons and crenels coacting drive sprockets."

In response, Hilleby canceled a number of claims without prejudice and on March 7, 1989 submitted revised claims more closely resembling those ultimately accepted by the patent examiner. In the remarks submitted in support of the revised claims, Hilleby explained the practical qualities of his invention that made it innovative and distinguished it from the three patents the examiner had found to be prior art.

> [T]he belt, which is the nexus of applicant's invention, has heretofore been the weakest link in a series of elements defining a tomato harvester. The harvester takes vines from the field and separates the produce from the vines, discharging the vines at the trailing portion of the machine and subsequently processing the produce.... The debris associated with the vines and other roots, etc., in the field, frequently cause prior art belts to fail, be entrainment of debris between the drive mechanism and the belt, stretching the belt, causing it to jump from it's [sic] drive or to break.

Amendment, Remarks at 10-11. Hilleby distinguished the Dekko device as follows:

> First, the ability of the drive roller and drive belt to encounter debris and have the debris *pushed* outside of where the belt contacts the drive roller. This is because the merlons and crenels are continuous along the width of the belt, and coact with the cogs in the drive wheel to provide self-cleaning. Second, the belt is allowed to wander laterally but kept within certain limits by means of the slots in the shield 40. This relieves debris build-up tension which is short-term. Third, the slotted shield cleans the majority of the debris from the resilient fingers and deposits the vines at the back of the machine.

(Emphasis in original). Amendment, Remarks at 14. In summary, Hilleby advanced the following argument in favor of approval of his merlon-and-crenel structure and drive means:

> In essence, applicant's invention has particular utility because the belt's merlons and crenels coact with the drive teeth in a certain manner. By having the merlons and crenels extend along the entire width of the belt, and having the drive roller designed with some clearance on either side of the width of the belt, the belt is self-cleaning. That is, entrained debris and other matter, when contacting the drive teeth and the merlons and crenels of the belt are ultimately squeezed out on either side of the belt or pulled off, maintaining a clean driving area.

*6 Amendment, Remarks at 16.

This prosecution history, as well as the language of the claims themselves, [FN2] makes clear that a key element of the relationship between the merlons and crenels and the drive means was the preclusion means to prevent debris buildup and to accomplish self-cleaning. Key to the self-cleaning feature of the belt is the complemental formation of the merlons and crenels, which is necessary to squeeze out debris on either side of the belt that might otherwise build up underneath it.

Having so construed Hilleby's claims, the Court next examines the FMC device to determine whether it literally infringes them. FMC's device prevents debris buildup in an entirely different manner. The FMC device relies on sprockets comprising narrow metal strips separated by open gaps. Lugs pass into the openings between the strips and incidentally force dirt and debris caught under the belt through the openings to the back of the sprocket. As the sprocket rotates, the debris is then scraped off by a fixed scraper located at the back of the sprocket. These are significant and persuasive differences that defeat Hilleby's claim of literal infringement.

2. "Complemental"

Plaintiff's objection to the Magistrate Judge's ruling regarding literal infringement of claim 33 is similarly unavailing. Claim 33 refers to "a drive means having a drive surface formed from teeth and gaps complemental to said merlons and crenels...." The patent abstract describes the device as having belts

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11045   Page 6 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 5

"having an inner surface contoured with merlons and crenels to be engaged by a drive shaft having *complimentally [sic] formed teeth and gaps* to drive by meshing engagement with the merlons and crenels" (emphasis added).

Plaintiff's assertion that the term "complemental" as used in claim 33 should not be interpreted "as defining the shape of the merlons and crenels of the belt and the drive means" defies the plain meaning of these words in light of the relevant portions of the patent, since "form" and "shape" are closely synonymous. The Magistrate Judge correctly concluded that there is no literal infringement of claim 33.

CONCLUSION

The Court having reviewed *de novo* the portions of the Proposed Findings of Fact, Conclusions of Law and Recommendation for Disposition on Defendant's Motion for Partial Summary Judgment to which timely objection was made, for the reasons stated herein, the Court hereby adopts the challenged findings and conclusions. Partial summary judgment and summary adjudication in favor of the defendant shall be granted and denied in accordance with the recommendations of the Magistrate Judge.

SO ORDERED.

PROPOSED FINDINGS OF FACT,
CONCLUSIONS OF LAW AND
RECOMMENDATION FOR
DISPOSITION ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
May 13, 1992, as amended June 4, 1992.

WILKEN, United States Magistrate Judge.

The District Court referred the motion of Defendant FMC Corporation (hereinafter, "FMC") for partial summary judgment to the undersigned with directions to provide a report and recommendation to the District Court.

FMC's motion was heard before the Honorable Claudia Wilken on February 28, 1992. Mr. J. Georg Seka and Mr. Duane H. Mathiowetz of Townsend and Townsend appeared on behalf of Plaintiff Hakan Hilleby (hereinafter, "Hilleby"). Mr. Robert A. Vitale, Jr. of Niro, Scavone, Haller & Niro appeared on behalf of FMC. At the hearing, Hilleby requested and was allowed an opportunity to submit a further declaration, which was received on March 26, 1992. Later, FMC moved to disqualify Hilleby's counsel.

The District Court referred that motion to the undersigned as well, and ordered that the motion for partial summary judgment be held under submission until the motion to disqualify was decided. That motion has been decided by separate order filed this date; there is no impediment to a ruling on the motion for partial summary judgment.

*7 Having reviewed the papers in support of and in opposition to the motion for partial summary judgment, and having heard the chains which engaged the vine mass and passed it under the tined wheel or the "shaker head." Uncontested Fact Number 15; Defendant's Exhibit H. The tines of the shaker head contacted the fruit and vine mass and induced a vibrating motion which caused the tomatoes to separate from the vine mass. The tomatoes then fell through the spaces between the chains and were collected. Deposition of Dennis R. Schultz pp. 17-18, Defendant's Exhibit F. The vines were carried away to the rear of the harvester and discharged onto the field. *Id.*

On December 23, 1987, Hilleby applied for a patent covering a conveyor belt system for tomato plant harvesters which was intended to replace FMC's chain conveyors. He sold his first conveyor belt system during 1987.

On October 6, 1988, the Patent Office rejected Hilleby's claims as unpatentable over patents of Dekko, Kamike, and Alper. Patent Office Communication of October 6, 1988, Defendant's Exhibit J. On March 3, 1989, in response to this communication, Hilleby submitted an Amendment, cancelling several of his claims, amending others and adding new claims. The Amendment document included a section entitled "Remarks", in which he further described his invention and attempted to distinguish it from the cited prior art. Amendment, Defendant's Exhibit J. On May 18, 1989, the Patent Office sent Hilleby a Notice of Allowance for his patent. Defendant's Exhibit J.

Claim 1 of Hilleby's patent describes a tomato plant harvester, similar to FMC's harvester, that includes a the arguments of counsel, the undersigned hereby makes the following findings of fact, conclusions of law and recommendation for disposition.

I. FINDINGS OF FACT

Hilleby alleges that FMC has infringed upon United States Patent No. 4,884,393 (the Hilleby patent). FMC moves for partial summary judgment claiming

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 6

that: 1) it did not infringe the Hilleby patent literally or under the doctrine of equivalents; 2) even if FMC did infringe the Hilleby patent, Hilleby is not entitled to damages for sales of repair parts; and, 3) an earlier filed United States Patent issued to David W. Johnson constitutes prior art to the Hilleby patent.

In 1980, FMC developed a tomato harvester that used a shaker conveyor system to separate the tomatoes from the vines. *See* FMC's Statement of Uncontested Facts, Number 11, which is uncontested in Hilleby's Statement of Genuine Issues in Opposition to Motion for Partial Summary Judgment, (hereinafter referred to as "Uncontested Fact Number") The harvester travelled through the tomato fields and cut or uprooted tomato plants. The vines and tomatoes were then conveyed along a pick-up conveyor, which transported the mass to the shaker conveyor assembly. Uncontested Fact Number 12. The shaker conveyor assembly included eight to ten separate, parallel chains. Uncontested Fact Number 13. The chains were spaced apart and driven by complementary sprockets connected to a shaft. Uncontested Fact Number 14.

*8 Protruding fingers were located on the exterior side of "vibrating tined wheel under which a first conveyor passes ... carrying the vines and produce such that the vibrating wheel contacts the vines and dislodges the produce." (The patent claims at issue are set out in full in the appendix.) The conveyor belt system described in the claim uses belts which have lugs on their inner surfaces. The lugs consist of protrusions or "hills", which Hilleby calls crenels, separated by recesses or "valleys", which Hilleby calls merlons. [FN1] Fingers on the outer surfaces of the belts entrain the vines and other debris. A drive means contacts the belt's merlons and crenels causing all the belts to move in synchrony. The drive means also constitutes a "preclusion means to prevent build up of debris such as vines, produce, dirt or other field contaminants between the drive means and the belts."

Dependent claim 2 adds that debris is precluded from building up in the area where the belts contact the drive means because there is clearance on the drive means through which the debris passes.

Dependent claim 3 adds that the belts maintain a "fixed spaced relation" from each other to allow the passage of produce between them. This also prevents the belts from gross lateral wandering.

Independent claim 12 also describes the tomato harvester, and specifies that the drive means contacts the belt's merlons and crenels. It does not mention debris preclusion means, but does include means to prevent gross lateral belt wandering by maintaining a "fixed spaced relation" between the belts to allow the passage of the produce.

Dependent claim 13 adds that gross lateral belt wandering is prevented by the use of a shield containing several slots. One slot is aligned for each belt, thereby limiting the amount of movement of each belt.

Finally, independent claim 33 covers a "drive belt kit for converting a harvester's conveyor belt system ..." The drive belt kit includes lugged belts with fingers extending on the exterior of the belt to entrain vines and debris, and a drive means with a surface of teeth and gaps complemental to the lugs on the belt, which self-cleans by forcing debris associated with harvesting away from the belt surfaces.

In 1989, FMC began selling conversion kits which allowed a tomato farmer to convert a metal chain shaker conveyor system to a belted shaker conveyor system. Uncontested Fact Number 18. FMC also began to sell harvesters with belts instead of chains. Uncontested Fact Number 19. In essence, FMC substituted belts, with lugs on the interior side and protruding fingers on the exterior side, for the metal chains with which the harvesters were previously equipped. The lugs on the interior side of the belt consisted of alternating protrusions or "hills" and recesses or "valleys." FMC also substituted sprockets designed to cooperate with the lugs on the interior of the belts in place of sprockets designed to cooperate with the apertures of the chains. The lugs of the belt coact with the sprocket but do not come in contact with the sprocket. The sprocket consists of strips connecting the circumferences of two circular side plates, creating spaced, elongated openings between the strips into which the belt lugs sequentially pass, causing the movement of the belt.

*9 Small pieces of vine, juice, dirt and mud on the lugs of the belts are forced downward through the openings between the strips of the sprocket and are removed by a scraper. Deposition of Dennis R. Schultz, pp. 35-37, Defendant's Exhibit F. In addition, however, dirt which is trapped between the belt and the metal strips of the sprocket is forced outside the width of the belt, filling the gap between the belt and the sprocket side plates. Declaration of Hakan Hilleby, p. 2, Plaintiff's Exhibit 11.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN  Document 822-3  Filed 09/27/06  PageID.11047  Page 8 of 13

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423  
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 7

II. CONCLUSIONS OF LAW

A. *Standard for Granting Summary Judgment*

Fed.R.Civ.P. 56(b) provides that a motion for summary judgment will be granted
> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A motion for summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Fed.R.Civ.P. 56(e) further states that in opposing a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

As noted in *Celotex Corp. v. Catrett,* Fed.R.Civ.P. 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits or by the depositions, answers to interrogatories and admissions on file designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. at 324. In considering a motion for summary judgment, "the judge must view the evidence in the light most favorable to the nonmoving party." T.W. Electric Service v. Pacific Electric Contractors, 809 F.2d 626, 630 (9th Cir.1987).

B. *Whether FMC's Harvester Infringes on Hilleby's Patent Literally or Under the Doctrine of Equivalents.*

1. Claim Interpretation and Literal Infringement.

A determination of patent infringement involves a two-step process. First, the patent claims must be properly interpreted, if there is a dispute as to claim interpretation or construction. In resolving a dispute as to the interpretation of a claim, the court may refer to the specification, the prosecution history, and the other claims in the patent. Next, the accused device must be compared to the claims as previously, properly construed to determine if the alleged infringement has occurred. Mannesmann Demag Corp. v. Engineered Metal Products Co. Inc., 793 F.2d 1279, 1282 (Fed.Cir.1986). Literal infringement requires that the accused device embody every element of the patent claim. Mannesmann Demag Corp. v. Engineered Metal Products, 793 F.2d at 1282.

*10 Claims 1, 2, 3, 12, and 13 describe a harvester conveyor belt assembly with the "drive means contacting said belt's merlons and crenels ..." The plain meaning of the quoted phrase requires that the drive means physically touch both the merlons and the crenels of the belt. The prosecution history supports this reading as well; the original claim 1 used the word "coact" where claim 1 as issued used the word "contact." See Mannesmann Demag Corp. v. Engineered Metal Products, 793 F.2d at 1283.

Comparing the accused FMC device to this element of the claims as so construed, we find no dispute that FMC's drive means contains apertures through which the "hills" of the interior belt surface protrude. The drive means does not contact the "hills" of the belt. So, the accused device does not include all the elements described in claims 1, 2, 3, 12, and 13, and thus does not literally infringe these claims.

Claim 33 describes "a drive means having a drive surface formed from teeth and gaps complemental to said merlons and crenels ..." That is, the teeth of the drive surface complement the "valleys" of the interior belt surface, and the gaps of the drive surface complement the "hills" of the belt surface. Instead, FMC's drive means consists of strips which contact the "valleys" of the belt, and gaps through which the "hills" of the belt protrude. The accused device does not literally infringe claim 33 either.

In support of a second claimed distinction between its device and the patent, FMC contends that the Court should interpret the debris preclusion and self-cleaning means in claims 1, 2, 3 and 33 by limiting them to those described by Hilleby in the prosecution history. Specifically, FMC argues that the debris preclusion and self-cleaning means protected by Hilleby's patent should be limited to one which removes debris by pushing it outside the width of the belt, or by pulling it off the area where the belt connects with the drive roller, as is described in the "Remarks" section of Plaintiff's Amendment of March 3, 1989, p. 13, Defendant's Exhibit J.

FMC also states that debris-preclusion and self-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11048   Page 9 of 13

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423  
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 8

cleaning in the claims is expressed in a "means plus function" form. If so, these claims must be interpreted in accordance with 35 U.S.C. § 112, paragraph 6, which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

When an element is described in a means plus function form, "a means clause does not cover *every means* for performing the specified function." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1536 (Fed.Cir.1991) (emphasis in the original). Rather, the Court must compare the accused structure with the structure disclosed in the specification of the patent, and determine whether they are equivalent. *Id.*

*11 In order to interpret the debris-preclusion and self-cleaning means of these claims, the Court finds no need to look to the "Remarks" in the Amendment, nor any reason to limit the claim to the method of debris-preclusion and self-cleaning described there. [FN2] Assuming these claims are expressed as a means plus function, the Court looks to the specification of the patent and finds that it does not describe self-cleaning by pushing debris outside the width of the belt. Accordingly, the Court declines to limit these claims in this manner, as urged by FMC.

The Court next considers whether, nonetheless, it can determine as a matter of law that FMC's device does not infringe these claims. Whether the accused device is the equivalent of the structure disclosed in the patent specification, within the meaning of 35 U.S.C. § 112(6), is a question of fact, and summary judgment cannot be granted unless there is no material genuine factual dispute. [FN3] *Palumbo v. Don-Joy Co.* 762 F.2d 969, 975 (Fed.Cir.1985).

FMC's device self-cleans, in part at least, by forcing small pieces of vine, juice, dirt and mud on the lugs of the belts downward through the openings between the strips of the sprocket and removing this debris with a scraper. The Court cannot say as a matter of law that this is not the equivalent of the method described in Hilleby's specification. Furthermore, dirt which is trapped between the belt and the metal strips of the sprocket in FMC's device is forced outside the width of the belt, filling the gap between the belt and the sprocket side plates. It is not clear how much of the dirt is eliminated in this way.

Thus, there is a genuine issue of material fact as to whether FMC's structure is equivalent to that described by Hilleby's patent. The difference FMC cites between its debris-preclusion and self-cleaning means and that of patent claims does not provide an alternative ground for summary adjudication of literal non-infringement of claims 1, 2, 3, and 33.

2. Infringement Under the Doctrine of Equivalents.

Under the doctrine of equivalents, an accused product that does not literally infringe a claim may infringe if it performs substantially the same function in substantially the same way to obtain the same result. *Jonsson v. Stanley Work,* 903 F.2d 812, 821 (Fed.Cir.1990), citing *Graver Manufacturing Co. v. Linde Co.,* 339 U.S. 605, 608 (1950).

The doctrine of equivalents requires a determination of fact. *SRI International v. Matsushita Electric Corp. of America,* 775 F.2d 1107, 1124 (Fed.Cir.1985), citing *Graver Manufacturing Co. v. Linde Co.,* 339 U.S. at 609.

While FMC's showing that the drive means of its conveyor system does not contact the belt's merlons *and* crenels, as described in Hilleby's patent claims, was sufficient to justify summary judgment in its favor on Hilleby's claims of literal infringement, this difference is insufficient to compel a conclusion that FMC has not infringed under the doctrine of equivalents. This difference does not preclude a finding that FMC's device performs substantially the same function in substantially the same way to achieve the same result described in Hilleby's claims.

*12 FMC relies on the doctrine of prosecution history estoppel to argue again that Hilleby's claims 1, 2, 3, and 33 should be limited to self-cleaning by pushing debris outside the width of the belt. Prosecution history, or file wrapper, estoppel limits a patentee's reliance on the doctrine of equivalents by preventing him from contending later in an infringement action that his claims should be interpreted as if limitations added by amendment were not present. *Jonsson v. Stanley Work,* 903 F.2d at 821. "Prosecution history estoppel applies as a limitation to the doctrine of equivalents *after* the claims have been properly interpreted and no literal infringement is found. Estoppel does not involve a reinterpretation of the claims." (emphasis in the original). *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870 (Fed.Cir.1985).

Limitations on claims which are the result of action taken by a patentee during the patent prosecution

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11049   Page 10 of 13

Not Reported in F.Supp.                                                                                              Page 9
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

require review not only of the nature of such limitations, but of the reasons behind such claim limitations. Mannesmann Demag Corp. v. Engineered Metal Products, 793 F.2d 1279, 1284-85 (Fed.Cir.1986). For example, when a patentee's amendments are not required in response to an examiner's rejection or critical to the allowance of the claims, no estoppel has been found. Mannesmann Demag Corp. v. Engineered Metal Products, 793 F.2d at 1285.

In amending his claims to meet the examiner's rejections, Hilleby relinquished no more than was necessary to distinguish his patent from the prior art. Clearly, the self-cleaning and debris-preclusion means described in claims 1, 2, 3 and 33 were added in order to distinguish Hilleby's claims from prior art. However, the particular method of self-cleaning by pushing debris outside the width of the belt, which is described only in the Remarks, was not necessary to distinguish Hilleby's claims because the prior art did not include any self-cleaning or debris preclusion means. U.S. Patent 4,741,432, the Dekko patent, cited by the Patent Office Examiner, does not contain any claims which cover either a self-cleaning or debris-preclusion mechanism. U.S. Patent 4,741,432, the Dekko Patent, Defendant's Exhibit K. Thus, Hilleby did not need to specify the particular method of self-cleaning in order to distinguish his patent from the prior art.

As discussed above, it is not clear how much debris is precluded or cleaned by being pushed through the apertures of FMC's device, and how much is pushed outside the width of the belt. And even if no debris were pushed outside the width of the belt, it cannot be said as a matter of law that this difference establishes that FMC's device is not the substantial equivalent of that disclosed in the claims. The Court cannot summarily adjudicate that FMC's device does not infringe under the doctrine of equivalents.

Claims 3, 12 and 13 describe a means to preclude gross lateral belt wandering. FMC has failed to show, through declarations, deposition testimony or otherwise, that its harvester does not include the same or an equivalent means to preclude gross lateral belt wandering. This, too, prevents a ruling that FMC's device does not infringe these claims under the doctrine of equivalents.

*C. Whether Hilleby is entitled to damages for the sales of infringing conveyor belt systems and for the sales of repair parts.*

*13 Hilleby alleges that FMC is both a direct and contributory infringer, and seeks damages based on direct infringement, the sale of the conveyor belt systems, and on contributory infringement, the sale of repair parts.

In this section of its motion, FMC seeks summary adjudication that if it is found to have infringed on Hilleby's patent, damages should be limited to those based upon FMC's sales of conveyor belt systems. Hilleby should not be able to recover additional damages based on the sales of repair parts, such as separate belts and sprockets.

If the jury finds FMC liable to Hilleby for patent infringement, it will award him no less than damages measured by the reasonable royalty for FMC's sales of conveyor belt systems. However, Hilleby will be entitled only to nominal damages, if any, based on the sales of repair parts prior to the payment of full compensation by FMC. Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. 476, 502 (1964) (*Aro* II). "The question to be asked is ... 'had the Infringer not infringed, what would the Patent Holder-Licensee have made?'" Id. at 507.

If FMC had not infringed upon Hilleby's patent, Hilleby would have captured the royalty for the sales by FMC of its conveyor belt systems. Id. at 509-10. However, Hilleby would not have captured a royalty on the sales of subsequent repair parts. "Mere replacement of individual unpatented parts, one at a time ... is no more than the lawful right of the owner to repair his property." Dana Corp. v. American Precision Co., 827 F.2d 755, 758 (Fed.Cir.1987), quoting Aro Manufacturing Co. v. Convertible Top Replacement Co., 365 U.S. 336, 346 (1961) (*Aro* I). Since repair parts, such as separate belts and sprockets, are unpatented articles, owners of tomato harvesters which use the conveyor belt systems may purchase such repair parts from the retailer of their choice. Thus, it is difficult to conceive of any instance in which actual damages could properly be based on a royalty on sales of an unpatented article used merely to repair the patented structure. Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. at 508.

If Hilleby were able to recover damages for the sales of repair parts, then he would in effect be deriving a profit not merely on unpatented *rather than* patented goods but on unpatented *and* patented goods. Id. at 510. Instead, "after a patentee has collected from or on behalf of a direct infringer damages sufficient to put him in the position he would have occupied had

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11050   Page 11 of 13

Not Reported in F.Supp.                                                                    Page 10
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

there been no infringement, he cannot thereafter collect actual damages from a person liable only for contributing to the same infringement." *Id.* at 512.

If Hilleby can show at trial, through expert testimony or otherwise, that the subsequent sale of repair parts is relevant to the calculation of a reasonable royalty for the sales of the conveyor belt systems, then evidence of the sales of the repair parts may be admitted at trial for that purpose. However, separate royalties for the sales of repair parts will not be awarded in addition to the reasonable royalty awarded for the sales of the conveyor belt systems.

D. *Whether a Patent Issued to David W. Johnson is Prior Art to the Hilleby Patent*

*14 Lastly, FMC seeks summary adjudication that U.S. Patent 4,899,868 issued to David W. Johnson is prior art to the Hilleby patent. The Johnson patent was filed on September 4, 1986; the Hilleby patent was filed on December 23, 1987. Hilleby could escape the effect of the earlier filing date if he could establish that he conceived his invention before the Johnson patent was filed.

Conception is a legal determination. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed.Cir.1986). In order to prove conception, a party must "show possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception." *Coleman v. Dines,* 754 F.2d 353, 359 (Fed.Cir.1985). Furthermore, conception must be proved by corroborating evidence which shows that the inventor disclosed to another his "completed thought expressed in such clear terms as to enable those skilled in the art" to make the invention. *Id. See also* 3 Donald S. Chisum, Patents § 10.04 (1991).

Hilleby argues that the standard quoted above from *Coleman v. Dines* is not the proper standard to determine the date of conception. Rather, he argues, as did the plaintiff in *Coleman,* that the rule of reason should be applied to ease the requirement of corroboration. The *Coleman* court noted that the rule of reason requires a reasoned examination, analysis and evaluation of all pertinent evidence so that a sound determination of the credibility of the inventor's story may be reached. However, the rule of reason does not dispense with the requirement for some evidence of independent corroboration. *Coleman v. Dines,* 754 F.2d at 360. Each and every element of the count must be corroborated. *Mikus v. Wachtel,* 542 F.2d 1157, 1159 (C.C.P.A.1976).

Further, the rule of reason is usually applied when establishing actual reduction to practice. *Coleman v. Dines,* 754 F.2d at 360. The Federal Circuit used the *Coleman v. Dines* test in determining the date of conception in an infringement case. *Hybritech Inc. v. Monoclonal Antibodies, Inc.* 802 F.2d at 1376-1378. Hilleby cites no cases in which the rule of reason is applied to ease the requirement of corroborating evidence to prove conception in an infringement case.

The Court concludes that to prove conception in a patent infringement action, Hilleby must provide corroborating evidence which shows that he disclosed to another his "completed thought expressed in such clear terms as to enable those skilled in the art" to make the invention. *Coleman v. Dines* 754 F.2d at 359.

In order to prove that his invention was conceived prior to the date that the Johnson patent was filed, Hilleby initially submitted only the declaration of his wife, Agneta Hilleby. In her first declaration, Agneta Hilleby merely stated that
> In the spring of 1986, Hakan told me that he had come up with a way to solve a problem which FMC tomato harvester users had with the chain conveyors which carry the vines under the shaker head ..., and he described his invention to me.

*15 Declaration of Agneta Hilleby ¶ 5, Plaintiff's Exhibit 16.

When the Court noted at the hearing that this declaration did not demonstrate that Hilleby described his invention to his wife in such clear terms as to enable one skilled in the art to make it, Hilleby requested and received permission to file a supplemental declaration. In it, Agneta Hilleby further states that
> He [Hakan Hilleby] told me that he would replace the chains of the shaker conveyor with rubber belts. Those rubber belts have lugs on one side. There are eight or ten parallel chains in an FMC shaker conveyor which would be replaced by the rubber belts ... In Hakan's new invention, the lugged belts would not be connected by connecting rods like in belted chain (sic). The belts would have fingers on the side opposite the lugs to pull the vines.

Agneta Hilleby's supplemental declaration still fails to establish that at the alleged time of conception, Hilleby described to her all the necessary features of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11051   Page 12 of 13

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423  
(Cite as: 1992 WL 455435 (N.D.Cal.))

Page 11

his invention, including the drive means, the means to preclude the build-up of dirt, the self-cleaning mechanism, and the means to preclude gross lateral belt wandering. Hilleby has still failed to show that he communicated his invention to his wife in such a complete and detailed manner and in such clear terms that one skilled in the art could make the invention based on such a communication. *Coleman v. Dines*, 754 F.2d at 359. Therefore, Hilleby has failed to make a sufficient showing to establish a prior date of conception.

Even if the Court were to apply the rule of reason as described in *Coleman v. Dines* and *Mikus v. Wachtel*, the declarations would not suffice, as they do not corroborate each and every element of the claim.

FMC does not seek summary adjudication that the Johnson patent anticipates, and thus invalidates, the Hilleby patent, so the Court expresses no opinion on that issue.

III. RECOMMENDATION FOR DISPOSITION

The undersigned recommends that the District Court grant FMC's motion for partial summary judgment on all of Hilleby's claims for literal infringement. However, the undersigned recommends that the District Court deny FMC's motion for partial summary judgment on all of Hilleby's claims for infringement under the doctrine of equivalents. The undersigned further recommends that the District Court grant FMC's motion for partial summary adjudication that, if FMC is found to have infringed Hilleby's patent, damages will be measured by no less than the reasonable royalty on FMC's sales of conveyer belt systems, but that no additional royalty will be awarded on sale of replacement parts. Finally, the undersigned recommends that the District Court summarily adjudicate that the declarations of Agneta Hilleby are insufficient as a matter of law to provide the necessary corroboration of Hilleby's claim that he conceived his invention prior to the filing of the Johnson patent.

Dated: Aug. 13, 1992

APPENDIX

1. In a harvester which picks up produce-laden vines and separates the vines from the produce, wherein the harvester includes a vibrating tined wheel under which a first conveyor passes, said first conveyor carrying the vines and produce such that the vibrating wheel contacts the vines and dislodges the produce therefrom, said first conveyor formed from: a plurality of flexible belts laterally spaced-apart sufficiently to let produce pass there between, each belt having an outer surface formed with a plurality of outwardly extending fingers along the belt's length to capture the vines thereon, each belt having an inner surface formed with a belt driving means configured as a series of merlons and crenels which each extend uninterrupted along the belt's entire width, drive means contacting said belt's merlons and crenels to move all said belts in synchrony and said drive means defining a preclusion means to prevent build up of debris such as vines, produce, dirt or other field contaminants between said drive means and said belts.

*16 2. The harvester of claim 1 wherein said debris preclusion means further includes clearance on said drive means to allow the debris to be pushed away from the area of engagement of said belt and said drive means.

3. The harvester of claim 2 including means to preclude gross lateral belt wandering whereby said plural belts maintain a fixed spaced relation to allow the through passage of produce.

12. In a harvester which picks up produce-laden vines and separates the vines from the produce, wherein the harvester includes a vibrating tined wheel under which a first conveyor passes, said first conveyor carrying the vines and produce such that the vibrating wheel contacts the vines and dislodges the produce therefrom, said first conveyor formed from: a plurality of flexible belts laterally spaced-apart sufficiently to let produce pass there between, each belt having an outer surface formed with a plurality of outwardly extending fingers along the belt's length which capture the vines thereon, each belt having an inner surface formed with a belt driving means configured as a series of merlons and crenels which each extend uninterrupted along the belt's entire width, drive means contacting said belt's merlons and crenels to move all said belts in synchrony, and means to preclude gross lateral belt wandering whereby said plural belts maintain a fixed spaced relation to allow the through passage of produce.

13. The harvester of claim 12 wherein said means to preclude gross lateral wandering of said belts includes a shield disposed just upstream of said drive means and a plurality of slots passing through said shield, one said slot aligned for each said belt which passes therethrough.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-3   Filed 09/27/06   PageID.11052   Page 13 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423
**(Cite as: 1992 WL 455435 (N.D.Cal.))**

Page 12

33. A drive belt kit for converting a harvester's conveyor belt system which separates produce from its vines, the kit including: a plurality of belts each having a first surface from which a plurality of vine grasping fingers extend, a second belt drive surface configured as a plurality of merlons and crenels which extend the entire width of said belts, transverse to the belts' direction of travel, a drive means having a drive surface formed from teeth and gaps complemental to said merlons and crenels thereby providing self-cleaning between said belt and said drive means by forcing debris associated with harvesting away from said belt drive surfaces.

> FN1. Hilleby's papers also object to an assumed limitation on damages for infringement to a reasonable royalty; after reviewing Hilleby's objections, however, the Magistrate Judge amended the challenged portion of the Findings (see amendment filed June 4, 1992) to clarify that a finding of infringement would entitle Hilleby to "no less than" a reasonable royalty. This amendment satisfies Hilleby's objection.
>
> FN2. In addition to claim one, a number of Hilleby's other claims include references to debris preclusion and/or self-cleaning. *See, e.g.,* claims 25, 26 and 33.
>
> FN1. *See,* the Hilleby patent, Figure 2 and page 3, Defendant's Exhibit J. According to The Random House Dictionary of the English Language, The Unabridged Edition (1979), the merlons are the protrusions and the crenels are the recesses. To avoid confusion, the Court will refer to them as "hills" and "valleys."
>
> FN2. The relevance of the "Remarks" is further addressed in the discussion of prosecution history estoppel in the section on infringement by the doctrine of equivalents, below.
>
> FN3. For that matter, whether FMC's device is substantially equivalent to Hilleby's claims, in the context of a doctrine of equivalents infringement analysis, involves similar questions. *Palumbo v. Don-Joy Co.* 762 F2d at 975 fn. 4. See discussion below on the doctrine of equivalents.

Not Reported in F.Supp., 1992 WL 455435 (N.D.Cal.), 25 U.S.P.Q.2d 1423

**Motions, Pleadings and Filings (Back to top)**

• 3:91CV00568 (Docket) (Feb. 26, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.