# EXHIBIT K

801 N.Y.S.2d 242 (Table) Page 1
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
**(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))**

C

<u>**Motions, Pleadings and Filings**</u>

(The decision of the Court is referenced in a table in the New York Supplement.)

Supreme Court, New York County, New York.
SAFMOR, INC., Plaintiff,
v.
The MINISTER, ELDERS AND DEACONS OF The REFORMED PROTESTANT DUTCH CHURCH
OF The
CITY OF NEW YORK and The Collegiate Church Corporation, Defendant.
No. 602746/02.

Jan. 13, 2005.

<u>HAROLD B. BEELER</u>, J.

***1 Defendants The Minister, Elders and Deacons of the Reform Protestant Dutch Church of the City of New York and the Collegiate Church Corporation [FN1] (collectively "the Church") move for summary judgment dismissing the Second Amended Complaint. Plaintiff Safmor, Inc. ("Safmor") opposes and cross-moves for partial summary judgment in its favor.

> FN1. The Collegiate Church Corporation is an arm of the Reformed Protestant Dutch Church of the City of New York. For the balance of the opinion, the two will be treated as one defendant.

Safmor operates a dental practice under the name of Century Dental on the second floor in a building at 11 John Street, New York County, owned by the Church. Plaintiff leased the premises in August 1995 for a period of ten years. Dr. Mehran Morovati, a dentist, is Safmor's principal.

Almost from the inception of the lease, disputes arose between the Church and Safmor concerning odor and smoke emanating from Frank's Papaya, a hot dog stand operating on the first floor of the premises. Dr. Morovati complained that the odor and smoke were permeating several of his treatment rooms and upsetting his patients. Later, after Frank's Papaya vacated the premises, the quarrels shifted to Century Dental's advertising sign affixed to the exterior of the building which the Church claimed violated the local zoning ordinance and which was removed by the Church without Morovati's permission in October, 2000.

These problems culminated in plaintiff's filing a complaint on July 26, 2002, subsequently amended twice, asserting breach of contract and other related causes of action with respect to the sign's removal and the smoke and odor condition.

Sign Dispute

Paragraph 64 of the Lease governs Safmor's right to install an exterior sign on the building's facade and provides as follows:
> Tenant shall have the right if permitted by governmental laws or regulations to install awnings and a sign, as indicated on the attached building facade plans "reserved for N.Y. Employment Exchange ." [FN2]

>> FN2. NY Employment Exchange was a prior tenant of the Church

The Church's own architect drafted plans which indicated the areas reserved for the N.Y. Employment Exchange. These plans were incorporated and made part of the Lease. Sometime around March or April of 1996, Safmor put up a sign on the building's facade advertising the name, address and telephone number of Century Dental in the exact area designated by the architectural drawings. On April 30, 1999, the New York City Department of Buildings ("DOB") issued a violation to the Church because the *total signage* on the building had a surface area greater than 3 times the allowable street frontage of the zoning lot in violation of Zoning Resolution 32-642 and directed removal of the illegal signage forthwith. Other businesses had signs on the building, including a large wrap-around sign for Frank's Papaya facing both Broadway and John Streets, and the DOB violation addressed them all together without referring to Safmor's sign or to any other sign in particular.

Sometime during the summer of 2000, the Church

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

801 N.Y.S.2d 242 (Table) Page 2
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

began working with the Alliance for Downtown New York ("the Alliance"), a non-governmental business improvement group, to install uniform signage on 11 John Street and other Church properties. On July 31, 2000, the Church's architect advised it that Safmor's sign was affixed two feet higher off the ground than permitted by Zoning Resolution 32-655 which provided for a maximum height of 25 feet above the curb level. According to the Church, it wrote Dr. Morovati on September 28, 2000 informing him of the excess height of Century Dental's sign and seeking his cooperation in working with the Alliance to replace the unlawful sign. The letter stated that the Alliance would provide samples of appropriate signage to Dr. Morovati, as well as to the other tenants at 11 John, and, that while ordinarily the cost of signage was solely the responsibility of the tenant, the Church promised contributions from itself and the Alliance.

***2 On October 9, 2000, a day the dental office was closed, the Church proceeded to remove the sign without his permission and, according to Dr. Morovati, without any advance notice. Dr. Morovati acknowledged in his papers, however, that the Century sign measured 27 feet in height, 2 feet higher than the zoning height restriction. On December 7, 2000, the Church submitted a proposed replacement sign designed by the Alliance which Dr. Morovati rejected because it advertised Century Dental without its address and telephone number. Sometime later, the Church put up a cloth banner with the name, address and telephone number of the dental practice, the same information that had appeared on the removed sign. According to Dr. Morovati, however, the banner was a poor substitute for the original sign because it has since been so damaged by the wind and weather that the information contained thereon cannot be read by passers-by on the street.

Evidence of Damages

The second amended complaint asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with prospective economic advantage, trespass and injunctive relief arising out of the Church's alleged illegal removal of the Century Dental sign. At the outset, the Church moves to dismiss all of these claims on the ground that Safmor cannot prove by admissible evidence that it suffered any damages or injury as a result of the sign's removal.

Safmor acknowledges that it intends to offer at trial a computer-generated report entitled "Referred by Doctor/Other Report" to identify the number of patients who visited Century Dental because they saw the sign while it was affixed to the building. The patients' names have been redacted in order to comply with the Federal Health Insurance Portability and Accountability Act ("HIPPA"). Plaintiff's expert is expected to testify at trial as to the decline in Safmor's business resulting from the sign's removal by extrapolating from this report the number of persons who would have become Century Dental's patients had the sign not been unlawfully taken down.

The report is the end result of a process utilized by Safmor for receiving, recording and utilizing intake data from a patient questionnaire including the patient's name, social security number, home and business telephone numbers, insurance carrier, group number, maximum coverage and deductible, and how the patient learned of the practice. This information is then entered on the same day as the patient's visit into Safmor's computer system. Approximately twice a month Safmor generates the report which categorizes the means by which the patient leaned about Century Dental into the following sources: "Co Worker," "Flyer," "Flyer (internet cafb nyc)," "Friend & Family," "Insurance Booklet," "Internet," "Neighbor," "Provider Book," "Sign," and "Union." This intake information is relied upon by Safmor in advertising and promoting its dental practice.

***3 The Church argues against the admission of the report on the ground that it does not comply with the foundation requirements of the business record exception to the hearsay rule because the patients who imparted the information as to the means by which they learned of Century Dental were not under a business duty to report that information accurately.

New York's business record rule is codified in CPLR § 4518(a) which provides:
> Generally. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. An electronic record, as defined in section one hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-12   Filed 09/27/06   PageID.11028   Page 4 of 8

801 N.Y.S.2d 242 (Table) Page 3
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

representation of such electronic record. The court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. *All other circumstances of the making of the memorandum or record, including lack of personal knowledge of the maker, may be provided to affect its weight, but they shall not affect its admissibility.* The term business includes a business, profession, occupation and calling of every kind. (Emphasis added).

The literal language of the statute, emphasized above, does not mandate that the entrant of the record have personal knowledge of the information entered. Rather, the absence of personal knowledge would appear to be just one factor going to the weight rather than the admissibility of the record. However, soon after the New York legislature adopted the business records rule, the Court of Appeals in interpreting 374-a of the Civil Practice Act, the predecessor of CPLR § 4518, in the seminal case of *Johnson v. Lutz*, 253 N.Y. 124 (1930) added a judicial gloss to the rule, requiring that the supplier of the information must also be acting under a business duty to provide the information. In excluding a police officer's report containing statements of third parties as to the circumstances surrounding an automobile accident, the Court held that the rule permitting the receipt into evidence of a business writing without the necessity of calling all persons who participated in its making "was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto." *Johnson v. Lutz,* 253 N.Y. at 128.

The holding of *Johnson v. Lutz* was reaffirmed in *Matter of Leon RR v. St. Lawrence County Department of Social Services,* 48 N.Y.2d 117 (1979) in which the Court of Appeals held that the admission into evidence of a child welfare file containing statements made by third persons not under a business duty to report information to the child's caseworker violated the business record exception to the hearsay rule. While it was within the scope of the caseworker's business duty to record reports of transactions or occurrences relevant to the child's welfare, this duty on the part of the entrant satisfied only half of the business records test. The other half requires that "each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception." *Matter of Leon RR,* 48 N.Y.2d at 122; see also *Murray v. Donlan,* 77 A.D.2d 337 (2nd Dept 1980) (holding inadmissible under the business records rule a police accident report because the third party witness informants were not shown to be under a contemporaneous business duty to accurately report the occurrence to the recording police officer).

\*\*\*4 Under a strict application of the business duty test enunciated in *Johnson v. Lutz* and its progeny, Safmor's "Referred by Doctor or Other Report," which has as its source statements by patients as to how they came to learn of Century Dental, would appear not to qualify as an admissible business record since the "initial declarant" patients were outsiders, that is not employees of Safmor at the time of the declarations and thus under no business duty to accurately impart information.

However, those cases which gave rise to the prohibition against outsider statements all involved the extent to which *noncommercial* records, consisting of random and nonsystematic accounts of events, were admissible under the business records rule which was enacted to facilitate the admissibility of *mercantile* records prepared in a repetitive and structured fashion. See Prince, Richardson on Evidence § 8-301 [Farrell, 11th ed]. *Johnson v. Lutz* concerned the inadmissibility of a police officer's report of a fatal vehicular accident where the officer had not witnessed the accident but took statements from persons he encountered when he arrived at the scene of the accident without any certainty that those persons were in fact eye witnesses. In *Matter of Leon RR,* the *entire* case file from a county department of social services was ruled inadmissible because much of the file consisted of unreliable statements, reports and even rumors. And, in *Murray v. Donlon* the court rejected the admission into evidence of a report of a police officer which contained conclusory statements by an unidentified witness that the police officer who had not witnessed the accident could not validate or offer as his own opinion. The dangers inherent in the admission of such indiscriminate and inherently unreliable records in a noncommercial setting are simply not present here where the answers to the Century Dental questionnaire are provided and recorded in the routine and habitual fashion the business record rule was designed to accommodate and where their reliability is based upon the frequency and repetition of their preparation. See *People v. Kennedy,* 68 N.Y.2d 569 (1986).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN  Document 822-12  Filed 09/27/06  PageID.11029  Page 5 of 8

801 N.Y.S.2d 242 (Table) Page 4
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

Moreover, the Appellate Division, First Department in two cases recently sanctioned a more expansive interpretation of the business duty component of the business record rule so as to allow for the admission of statements made by outsiders that are contained in a business enterprise's records. In the first of these cases, Pencom Systems, Inc. v. Shapiro, 237 A.D.2d 144 (1st Dep't 1997), the court upheld the admissibility of a business record which consisted of notes contained in the data base of plaintiff, a placement and recruitment firm, of information obtained from job applicants concerning their reasons for seeking new employment, their interest in proposed placement options, and their job and salary requirements. The Court found that the circumstances surrounding the imparting and recording of this information provided sufficient indicia of reliability where the recruiters were under a business duty to record contemporaneously the applicant's statements and the applicants were under a reciprocal "equivalent" contemporaneous business duty to impart accurate employment information created by their desire to obtain a better job and their knowledge that the recruiter was relying on the information to secure such a job placement. Adhering to the literal language of CPLR § 4518(a), the court found that the lack of personal knowledge by the recording placement recruiter entering the information into the data base went to the weight of the evidence and not its admissibility.

***5 In the second case, People v. McKissick, 281 A.D.2d 212 (1st Dep't 2001), the Court allowed into evidence an employment application and W-4 tax form completed by defendant's wife which contained her employment references as well as a home address which was used to connect the declarant's husband to a drug location. Relying on Pencom Systems, the court found that these records satisfied the business record rule inasmuch as the company had a duty to maintain accurate personnel and tax records and the declarant as a prospective employee had a concomitant business duty to report this information, knowing that her prospective employer needed and relied on this information in the performance of its business functions.

The statements made by Century Dental's patients as recorded in the questionnaire, including the source of their referral to the dental practice, are admissible under the more liberal criteria for the business duty component of the business record rule as enunciated in the above cases by the First Department. Going to a professional medical office for the first time involves more than the establishment of a doctor or dentist/patient relationship and the receipt of professional services by the patient. It also entails the initiation of a contractual relationship whereby the patient agrees to pay for the receipt of professional medical services rendered. It is commonplace today for new patients to provide the kind of information recorded in Safmor's questionnaire calling for biographical data, insurance information and the source of their referral. Patients such as those who went to Century Dental understand that the provision of this data is integral to the initiation of the economic relationship between the medical or dental office, the patient and the insurance company. The patients are acting under a business duty because they recognize the obligation to be truthful, have no motive to falsify the data, are motivated to be accurate in their responses and are aware that the medical professional's office will be relying on the information imparted. See Commentary by Vincent C. Alexander on the Pencom and McKissick cases in McKinney's Supplementary Practice Commentaries, § C4518:3, at 47 [2001].

Finally, even were it true that a random patient might have falsely reported how the patient learned of Century Dental, there is little reason to believe that a significant number of patients would also misrepresent the means by which they were referred to the dental practice. It is far more reasonable to allow plaintiff to establish damages by such statistically reliable data related directly to the sign's removal than by more speculative measures such as change in gross revenues as reflected on Safmor's tax returns.

### Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

The Church moves for summary judgment dismissing the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing; Safmor's cross-moves for partial summary judgment in its favor with respect to the same claims.

***6 There is implicit in all contracts a covenant of good faith and fair dealing "embrac[ing] a pledge that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389 (1995). A party to a contract breaches the implied covenant of good faith and fair dealing when it "acts

Case 2:03-cv-00294-DN Document 822-12 Filed 09/27/06 PageID.11030 Page 6 of 8

801 N.Y.S.2d 242 (Table) Page 5
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Jaffe v. Paramount Communs., 222 A.D.2d 17, 22-23 (1st Dep't 1996)*.

In *Just-Irv Sales v. Air-Tite Bus. Ctr. LLC, 237 A.D.2d 793 (3d Dep't 1997)*, a case factually similar to the instant matter, a landlord had removed its tenant's advertising sign arguing that the local zoning regulation required it to take down the sign. In reversing an order granting summary judgment to the landlord, the Third Department found that questions of fact existed as to whether the landlord intentionally breached the lease and concomitantly violated the implied covenant of good faith and fair dealing where the lease expressly afforded the tenant the right to maintain the sign, there was no evidence that the village ever enforced the zoning ordinance during the 20 year period that the sign remained in front of the premises, and the landlord failed to apply for a variance before removing the sign.

Relying on *Just Irv Sales,* plaintiff argues that the importance of a sign was part of the parties' lease negotiations, that its sign replaced the prior tenant's as specified in the lease, that the Church acted in bad faith in precipitously removing the sign without prior notice, and that its removal was not, as claimed by the Church, because of any zoning violation since the April 1999 violation concerned the building as a whole and did not address the height of the Century Dental sign or reference it in any way. Rather, Safmor contends that the true motivation behind the Church's actions was its animus toward Dr. Morovati due to the latter's constant complaints about the smoke and odors emanating from the hot dog stand on the first floor of the premises as well as the Alliance's dislike of the appearance of the sign.

The Church, on the other hand, argues that the sign was removed because it was higher than the zoning laws allowed and, in that regard, contravened the clear and unambiguous terms of the lease which gave Safmor the right to install signage only "if permitted by governmental laws or regulations." In removing the sign, the Church argues that it was complying with the zoning laws and correcting the violation issued to it in April 1999 to "remove illegal signage(s) forthwith." The Church further contends that it acted in good faith in giving Dr. Morovati written notice on September 28, 2000 of Safmor's noncompliance with the zoning ordinance and in seeking to arrange with Safmor and the other tenants for the orderly replacement of all signs in cooperation with the Alliance.

***7 Notwithstanding the Church's claimed rationale for removing the sign, the motives behind its action are unclear based upon the testimony of several of its own managers. The Church's Secretary/Treasurer testified that the Building Manager told him the sign was illegal before the latter personally directed its removal but thought that the Building Manager "perhaps, was venting frustration over the long history of trying to solve problems" with Dr. Morovati. The Building Manager testified that removal was a joint decision by the Secretary/Treasurer and the Leasing Director and that Dr. Morovati was on notice of its removal. However, the Leasing Director, the Building Manager's supervisor, testified that he did not direct removal of the sign, that he had no prior knowledge of its removal and that he did not authorize the Building Manager to take down the sign.

Moreover, even were it true, as testified by the Church, that it advised Safmor of the sign's questionable status by the September 28, 2000 letter, the receipt of which Dr. Morovati denies, such notice coming 17 months after the DOB violation which itself was addressed to a different zoning violation than the height of Century Dental's sign, and only 11 days before the sign's removal, arguably did not give Safmor a reasonable opportunity to cure the sign's deficiencies before its removal.

While the height of the Century Dental sign was concededly not in compliance with the zoning ordinance and thus "not permitted by government laws and regulations" as mandated by lease, the Church remained under an obligation to comply with the lease's implied covenant of good faith and fair dealing, under the rationale of *Just-Irv Sales,* by seeking a peaceful resolution of the sign dispute without resorting to the more drastic action of the removal of the sign which was affixed to the building's facade in the place designated in the lease by the Church's architect and which was critical to Safmor's operation of its dental practice. In view of the conflict in the evidence over whether notice was given to Safmor as to the illegality of the sign as well as to its actual removal, the shortness of any such notices, in any event, as well as the differences in the evidence over the rationale and motivation behind the Church's removal of the sign, there are numerous, triable issues of fact warranting denial of both parties' motions for summary judgment with respect to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

801 N.Y.S.2d 242 (Table) Page 6
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing as well as defendant's motion seeking dismissal of the fifth cause of action for injunctive relief (the remedy of directing restoration of Century Dental's sign).

Tortious Interference with Prospective Economic Advantage and Trespass

Defendant's motion for summary judgment in its favor dismissing the third cause of action for tortious interference with prospective economic advantage and the fourth cause of action for trespass is granted. A cause of action for tortious interference requires interference with a specific economic relationship. *Vigoda v. DCA Prods. Plus Inc.,* 293 A.D.2d 265, 266-267 (1st Dep't 2002) ("Tortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct. As plaintiffs cannot name the parties to any specific contract they would have obtained had they performed at the NACA showcase, they have failed to satisfy the 'but for' causation required by this tort"). Where, as here, Safmor claims it lost only unnamed potential customers in the downtown area because of the absence of the sign, a cause of action for tortious interference with prospective economic advantage can not be sustained.

***8 The cause of action for trespass arises out of the claimed "unlawful entry" by the Church onto the 11 John Street facade to remove the sign. Trespass requires that there be "an interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." *Kurzner v. Sutton Owners Corp.,* 245 A.D.2d 101 (1st Dept 1997); Restat 2d of Torts, § 158. Under the lease, Safmor had a contractual right of occupancy of offices on the building's second floor with a concomitant right to install a sign on the outside of the building. The Church's removal of the sign may be breach of contract, but it does not entail liability for trespass because the outside of the building was never land in Safmor's possession.

Smoke and Odor Dispute

From the time Safmor signed the lease for the second floor premises in August 1995 until the end of June 1999, the ground floor of the building was occupied by Frank's Papaya, a hot dog stand. While negotiating the lease the parties took note of the odors emanating from the hot dog stand. The lease ¶ 69 requires defendant "to reasonably eliminate all offending smells and odors in the premises, including, but not limited to, smells and odors coming from any tenants who are cooking." Safmor was given the right to cancel the lease within the first 3 weeks of occupancy if the odors were still present. Otherwise, plaintiff was to attest in writing to the reasonable elimination of the smells thus establishing the "Smell Elimination Date" according to the lease. When plaintiff failed to attest to the absence of smells and odors in this initial period, the Church wrote Dr. Morovati on September 8, 1995 that "we conclude that the lease is cancelled." However, Safmor's attorney responded on September 15, 1995 "per my client ... the premises are reasonably free of smells and odors," thereby allowing the lease to remain in effect.

During the subsequent course of the lease the Church was obliged under ¶ 69 to make "all reasonable efforts to reasonably eliminate said smells" on 3 weeks written notice although Safmor did not have the absolute right to cancel the lease as it did during the first 3 weeks of occupancy. On March 21, 1996, for the first time, plaintiff complained in writing of odors from Frank's Papaya with 3 weeks notice. Defendant reported in writing on March 27, 1996 on efforts to correct the condition which were not successful according to the deposition testimony of Dr. Morovati. However, Safmor took no other formal action at the time and continued paying rent, although Dr. Morovati testified that he continually verbally complained to the Church about the smoke and odor condition and its adverse effects on his dental practice until Frank's Papaya moved out on June 29, 1999.

The Church claimed by testimony of its management personnel that it sought to respond to Dr. Morovati's concerns by initially sealing any openings between the ground floor and the second floor where plaintiff was located, replacing windows, and servicing the air-conditioning unit for plaintiff's office. The Church testified that it later removed the dropped ceiling above the hot dog stand two or three times to search for leaks, replastered and put fiberglass insulation in the space above the dropped ceiling, hired an air-conditioning person to suggest improvements in the ventilation system and closed a broken window over the hot dog stand's exhaust fan.

***9 On December 9, 1998, Safmor wrote the Church again to complain of the odors. Defendant responded in writing on December 18, 1998 to Dr.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 822-12   Filed 09/27/06   PageID.11032   Page 8 of 8

801 N.Y.S.2d 242 (Table) Page 7
7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U)
**Unpublished Disposition**
(Cite as: 7 Misc.3d 1021(A), 801 N.Y.S.2d 242, 2005 WL 1118029 (N.Y.Sup.))

Morovati of its intended efforts to correct the condition by installing a ceiling fan in Frank's Papaya and again on January 18, 1999 to report completion of the ceiling fan installation, although, according to Dr. Morovati, the smoke and odor condition remained unsatisfactory. Frank's Papaya moved out of 11 John Street on June 29, 1999 and was replaced by a jewelry store. Safmor's rent was abated $2,000 a month for the last 3 months of the hot dog stand's occupancy due to the purportedly unresolved odor and smoke problem.

The Church's motion for summary judgment in its favor dismissing the sixth cause of action, breach of contract for the persistent smoke and odor condition, is granted in part and denied in part. Safmor first notified the Church in writing of the offensive smoke and odor condition pursuant to the lease on March 21, 1996. The resulting claim for breach of contract accrued on April 11, 1996, 3 weeks later when the condition remained uncorrected. More than 6 years elapsed before Safmor brought the instant action, thus excluding a breach of contract claim prior to July 26, 1996. CPLR § 213(2).

While oral complaints by Dr. Morovati were insufficient to trigger any additional response by the Church, the Church had a continuing obligation under the lease to make reasonable efforts to eliminate any offensive smoke and odor condition provided it received *written notification* from Safmor. On December 9, 1998, plaintiff again complained in writing of odors. The resulting claim for breach of contract accrued on December 30, 1998 less than four years before commencement of this action and thus may be maintained by Safmor.

The Court disagrees with defendant's argument that the purported breach of contract on April 11, 1996 due to smoke and odors eliminated the possibility of the later beach of contract on on the same basis for the next six years while the first breach was actionable. Where a party is under a continuing duty under a contract to remedy an offensive condition, each failure to do correct the condition is actionable as a separate breach. See *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 608 (1979) in which the Court of Appeals held that *multiple* causes of action for breach of contract arose under a product warranty where roofing materials leaked repeatedly ("We hold that a cause of action accrues upon each breach of that undertaking which occurs within the 20- year [warranty] period and that the Statute of Limitations runs after six years from the date when the particular breach for which any such suit is brought has taken place"); see also *Orville v. Newski, Inc.*, 155 A.D.2d 799 (3rd Dept 1989) (Where the defendant was under a continuing duty to make minimum annual payment toward payment of plaintiff's debts to creditors, a breach of contract occurred *each* year in which the defendant failed to make such payment).

\*\*\*10 Defendant's motion for summary judgment in its favor dismissing the seventh and eighth causes of action, nuisance caused by the persistent smoke and odor condition and trespass in allowing smoke and odors to permeate plaintiff's premises, is granted because both causes of action are time barred.. The statute of limitations for injuries to property including nuisance and trespass is three years. CPLR § 214(4); *Alamio v. Town of Rockland*, 302 A.D.2d 842, 844 (3d Dep't 2003) ("With the water damage to this property apparent more than three years prior to the commencement of this action, the claim [based on a theory of continuing trespass and nuisance] was properly dismissed as untimely"). Plaintiff concedes that Frank's Papaya moved out of the building by the end of June 1999 and the instant action was commenced more than 3 years later on July 26, 2002.

Conclusion

Accordingly, for all the aforesaid reasons, defendant's motion for summary judgment in its favor is denied in regard to causes of action one, two and five; denied in part and granted in part in regard to cause of action six; and, granted in regard to causes of action three, four, seven and eight. Plaintiff's cross-motion for partial summary judgment in its favor is denied in its entirety.

A Pre-Trial Conference in this action shall be held on Tuesday, March 15, 2005 at 3:00 PM in Room 304, 71 Thomas Street.

This constitutes the decision and order of the Court.

7 Misc.3d 1021(A), 801 N.Y.S.2d 242 (Table), 2005 WL 1118029 (N.Y.Sup.), 2005 N.Y. Slip Op. 50691(U) Unpublished Disposition

**Motions, Pleadings and Filings (Back to top)**

• 0602746/2002 (Docket) (Sep. 16, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.