SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **IBM'S REDACTED MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR COPYRIGHT INFRINGEMENT (IBM'S EIGHTH COUNTERCLAIM)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

FILED
U.S. DISTRICT COURT

2006 SEP 25 P 4: 54

DISTRICT OF UTAH

BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR COPYRIGHT INFRINGEMENT (IBM'S EIGHTH COUNTERCLAIM)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**FILED UNDER SEAL PURSUANT TO 9/16/03 PROTECTIVE ORDER, DOCKET #38**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

**Table of Contents**

Page

Table of Authorities .................................................................................................. ii

Preliminary Statement ............................................................................................... 1

Statement of Undisputed Facts ................................................................................. 1

     A.    Open Source Software and the General Public License. ......................... 2

     B.    Linux. ...................................................................................................... 5

     C.    IBM's Contributions to Linux. ............................................................... 7

     D.    SCO's Extensive Use of Linux and of IBM's Copyrighted Code Included in Linux. ................................................................................................... 9

     E.    SCO's Blatant Violations of the GPL and Resulting Loss of License Rights. ................................................................................................... 12

Standard of Decision ............................................................................................... 16

Argument ................................................................................................................. 17

I.     IBM Owns the Copyrights to the IBM Copyrighted Works. ............................. 17

II.    SCO Lacks Permission or a License to Copy or Distribute the IBM Copyrighted Works. ................................................................................................................ 17

III.   SCO Has Copied and Distributed the IBM Copyrighted Works. ..................... 20

IV.   IBM Is Entitled to Summary Judgment that SCO is Liable for Infringement of IBM's Copyrights. ........................................................................................... 20

V.    IBM Is Entitled to Summary Judgment Granting an Injunction Against Further Violations of its Copyrights. ........................................................................... 21

Conclusion ............................................................................................................... 23

**Table of Authorities**

Page

**Cases**

Aid for Women v. Foulston, 427 F. Supp. 2d 1093 (D. Kan. 2006)..............................................21

Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476 (10th Cir. 1993) .......... 16, 17, 22

CBS Broad., Inc. v. EchoStar Comms. Corp., 450 F.3d 505 (11th Cir. 2006)..............................22

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................................16

Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280 (10th Cir. 1996)................................22

Dow Chem. Co. v. United States, 226 F.3d 1344 (Fed. Cir. 2000) ..............................................18

Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823 (10th Cir. 1993) ......................17, 20

Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir.
     1997) ......................................................................................................................................21

In re Grandote Country Club Co., 252 F.3d 1146 (10th Cir. 2001)..............................................16

Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc., 75 F. Supp. 2d 1290
     (D. Utah 1999) ......................................................................................................................16

MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511 (9th Cir. 1993) .......................................21

Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779 (E.D.N.C.
     2004) ......................................................................................................................................20

Ocasek v. Hegglund, 116 F.R.D. 154 (D.Wyo. 1987).................................................................22

Perry v. Sonic Graphic Sys., Inc., 94 F. Supp. 2d 616 (E.D. Pa. 2000).......................................21

Prairie Band Potawatomi Nation v. Wagnon, 402 F.3d 1015 (10th Cir. 2005)............................21

Wallace v. Free Software Found., Inc., No. 1:05-CV-0618, 2006 WL 2038644
     (S.D. Ind. Mar. 20, 2006)......................................................................................................18

Wallace v. Int'l Bus. Mach., Corp., No. 05-678, 2006 WL 1344055 (S.D. Ind.
     May 16, 2006) ........................................................................................................................18

Page

**Statutes**

17 U.S.C. § 101 ................................................................................................... 4

17 U.S.C. § 410(c) ............................................................................................. 17

17 U.S.C. § 501 ................................................................................................. 20

17 U.S.C. § 502(a) ............................................................................................ 22

Fed. R. Civ. P. 56(c) ........................................................................................ 16


**Other Authorities**

Kennedy, Dennis M., <u>A Primer on Open Source Licensing Legal Issues:</u>
    <u>Copyright, Copyleft, and Copyfuture</u>, 20 St. Louis U. Pub. L. Rev. 345 (2001) ..................... 19

Wacha, Jason B., <u>Open Source, Free Software and the General Public License</u>, 20
    No. 3 Computer & Internet Law 20 (2003) .............................................................. 19

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in support of its motion for summary judgment with respect to liability and a permanent injunction on its counterclaim for copyright infringement (Eighth Counterclaim) against Plaintiff/Counterclaim-Defendant The SCO Group, Inc. ("SCO").[1]

## Preliminary Statement

Despite its dramatic public claims, SCO has failed to identify any code allegedly owned by SCO and copied by IBM into Linux. By contrast, undisputed facts establish that SCO has literally copied, without alteration, hundreds of thousands of lines of code developed and copyrighted by IBM. And SCO has done so for profit, without any license to do so. While the measure of damages is not amenable to summary determination, the Court can and should enter judgment that SCO is liable for copyright infringement on IBM's Eighth Counterclaim, and should enjoin SCO from any further infringement of IBM's copyrights.

## Statement of Undisputed Facts

The undisputed and indisputable facts material to this motion are set forth below, and in the memoranda in support of IBM's other motions for summary judgment, which are submitted herewith and incorporated herein by reference.[2]

---

[1] The undisputed and indisputable facts supporting this motion are supported by the declarations and documents submitted herewith, including those appended to the Declaration of Todd M. Shaughnessy, which are cited herein as "Ex. __".

[2] References to the memoranda in support of IBM's motions for summary judgment submitted herewith are cited as follows: IBM's motion for summary judgment on SCO's unfair competition claim as "UC. Br. __"; IBM's motion for summary judgment on SCO's copyright claim as "AIX Br. __"; IBM's motion for summary judgment on SCO's interference claims as "Interference Br. __"; IBM's motion for summary judgment on SCO's contract claims are cited

A.      Open Source Software and the General Public License.

1.      Historically, most important commercial software has been developed by companies who have made very large investments in the development process, and have commonly sought to recoup that investment through licensing fees. (Ex. 226 ¶ 4.)

2.      As computer systems have continued to grow in power, and the functions demanded of software systems have grown ever more complicated, the investment required to develop and bring to market a major new software product such as an operating system has escalated, while the difficulty of making these systems reliable and "bug free" has likewise escalated. (Ex. 226 ¶ 5.)

3.      The so-called "Free Software" movement introduced a new model of software development and of compensation for investments in development. This model was pioneered by Richard Stallman and the Free Software Foundation ("FSF"). (Ex. 226 ¶ 6; Ex. 398 at 1-10.)

4.      At a high level, the paradigm of "free" software is that copyright owners make their source code available to others to use, modify, and distribute on a royalty-free basis, in exchange for the reciprocal right to use, modify and distribute any additions or improvements contributed by those licensees and sublicensees, on the same royalty-free basis. (Ex. 226 ¶ 6; Ex. 221 ¶¶ 22-24.)

5.      This new licensing paradigm has unleashed a wave of global, collaborative software creativity, as networks of developers, who in many cases have no commercial affiliations with each other, continually contribute improvements and "bug fixes" to open source

herein as "K. Br. __"; and IBM's motion for summary judgment for a declaration of non-infringement (IBM's Tenth Counterclaim) as "DJ Br. __".

software packages.  (Ex. 226 ¶ 7.)  The development of the Linux operating system is the best

known but by no means the only product of this new development model; the SAMBA software

suite (file and print services) and the Apache web server software are other widely used creations

of "Free Software" collaborations.  (Ex. 290 ¶ 33.)

      6.     The "Free Software" development model is relatively new, but it is neither

utopian nor anarchical; it requires legal structures and protection to function successfully.  The

most widely used legal license agreement that makes the Free Software model possible is the so-

called GNU General Public License or "GPL".  (Ex. 398 at 1-10.)  This license was developed

by Richard Stallman and its first version first published in 1989; its current version was

promulgated in 1991.  (Ex. 398 1-6; Ex. 128.)  Neither IBM nor SCO had any involvement in the

development of the terms of the GPL.

      7.     There is a variant of the GPL referred to as the "Lesser General Public License"

or "LGPL".  (Ex. 129.)  The LGPL states that it is designed for use with "some specially

designated software packages — typically libraries".  (Ex. 129, Preamble.)  However, the terms

of the LGPL are identical to those of the GPL in all respects material to the present motion, and

the GPL and LGPL are referred to collectively as the "GPL" in the present motion.

      8.     The mere fact of publishing a copyrighted work does not give others the right to

use, copy, modify, or distribute that work.  A software developer who elects to publish

copyrighted software subject to the GPL, however, offers to all (the "General Public") a royalty

free license to use, copy, modify, and distribute.  (Ex. 128 §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.)

      9.     The GPL makes clear that no one is obligated to accept the terms of the GPL, but

must do so if they wish to copy, distribute or modify any GPL software: "You are not required

to accept this License . . . .  However, nothing else grants you permission to modify or distribute the [IBM Copyrighted Works] or its derivative works."  (Ex. 128 § 5 (emphasis added); see also Ex. 129 § 9.)

      10.    At its simplest level, the GPL provides that anyone may help themselves to the benefit of copying, modifying, distributing the work on a royalty free basis, provided they agree to distribute that work — and to license any derivative works — only under the terms of the GPL.  (Ex. 128 §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.)  As the "Preamble" to the GPL states:

> Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software . . . .  To protect your rights, we need to make restrictions that forbid anyone to deny you these rights . . . .  These restrictions translate into certain responsibilities for you if you distribute copies of the software, or if you modify it.  For example, if you distribute copies of [a program licensed under the GPL] . . . you must give the recipients all the rights that you have.  (Ex. 128, Preamble; see also Ex. 129, Preamble.)

      11.    The GPL expressly prohibits the imposition of any "further restrictions" on the recipient's rights granted under the GPL.  The collection of any licensing fees or royalties is expressly prohibited by the GPL:

> You must cause any work that you distribute or publish, that in whole or in part contains or is derived from [a GPL licensed program] or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this agreement.  (Ex. 128 § 2; see also Ex. 129 § 2.)

      12.    The GPL uses the term "derivative work" in accordance with its definition under copyright law.  (Ex. 128 § 0; see also Ex. 129 § 0.)  A "derivative work" means "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast".  17 U.S.C. § 101.

13.     The GPL permits a licensee to collect a fee to cover the cost of "the physical act of transferring a copy", and permits a licensee to charge fees for service and warranty protection. (Ex. 128 § 1; <u>see also</u> Ex. 129 § 1.)

14.     The LGPL similarly states that with respect to any "work based on the [LGPL-licensed] Library", "You must cause the whole of the work to be licensed at no charge to all third parties under the terms of this License." (Ex. 129 § 2(c).)

15.     The GPL expressly states:

> You may not copy, modify, sublicense, or distribute the [GPL licensed] Program except as expressly provided under this License.  Any attempt otherwise to copy, modify, sublicense, or distribute the Program is void, and will automatically terminate your rights under this License.  (Ex. 128 § 4; <u>see also</u> Ex. 129 § 8.)

16.     In other words, one who attempts to help himself to copyrighted software owned by others and made available under the GPL, while attempting to sublicense or distribute derivative works on terms other than those of the GPL, is not licensed under the GPL, and is infringing if he makes any use of the GPL-licensed software.  (<u>Id.</u>)

B.     <u>Linux.</u>

17.     The development of Linux began when an undergraduate student at the University of Helsinki, Linus Torvalds, set out to create a new, free operating system.  In 1991, Torvalds began developing the core of the operating system, known as the "kernel", and some months later posted news of his project to Internet newsgroups, inviting volunteers to assist in his efforts. (Ex. 272 ¶¶ 3-4.)

18.     With the Internet providing for a distributed collaboration, other programmers joined to write the code making up the kernel.  Torvalds directed the collaboration to a version

1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development since.  (Id. ¶ 5.)

19.    Commencing in 1991, Torvalds released Linux subject to the GPL, and since that time Linux has only been made available pursuant to the terms of the GPL.  (Ex. 573 at SCO1304374.)  In addition, Linux contributors including IBM have included explicit statements within code modules they contributed to Linux emphasizing that those modules are copyrighted by their original contributor, and are made available only under the terms of the GPL.  (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104.)

20.    Since the release of Linux version 1.0, developers around the world have contributed to the ongoing development of Linux, under the terms of the GPL, representing an enormous investment and value available without license fee to all who accept and abide by the terms of the GPL.  (See Ex. 5 ¶¶ 23, 26, 27; Ex. 364; Ex. 105 at 15, 23, 26; Ex. 194 ¶ 5.)

21.    A number of companies distribute Linux on a commercial basis.  (Ex. 105 at 5-8, 26.)  These distributors offer a variety of commercial Linux products, which typically comprise the Linux kernel, low level applications that run on the kernel and provide additional system functions, and whatever else the distributor chooses to combine into an installable software product.  (See Ex. 105 at 5-8.)  Major businesses have been built on providing business-quality support and service for "free" software, a well-known example being that of the Red Hat Corporation, which sells services in connection with Linux, although it distributes Linux under the terms of the GPL (as it must), and thus charges no license fees for its Linux "distribution".  (Ex. 111 at 12-13; Ex. 8 ¶ 32.)

22.     SCO was founded in 1994 under the name Caldera, Inc., as a commercial distributor of Linux products.  (Ex. 105 at 29-31.)  Over the years, SCO has developed and marketed a number of software products containing Linux code, including Caldera Network Desktop, OpenLinux and SCO Linux.  (Ex. 105 at 30-31; Ex. 296 at 13:17-17:18, 34:12-36:17.)

C.     IBM's Contributions to Linux.

23.     Among the companies that have made contributions that have become part of Linux is IBM.  (See Ex. 5 ¶ 45; Ex. 167 ¶ 7.)  IBM has made extensive contributions of computer code developed by IBM to the Linux kernel.  (Ex. 167 ¶¶ 5-7; Ex. 5 ¶¶ 20, 108.)  IBM holds copyrights, including registered copyrights, on many of its contributions to Linux.  (Ex. 167 ¶ 5.)

24.     IBM contributions to Linux on which IBM holds registered copyrights include the works listed in Table 1 below (collectively, the "IBM Copyrighted Works").  The length of each of the Copyrighted Works is as indicated in Table 1, and the copyright registration for each of these Copyrighted Works, together with a copy of the work or relevant portions of the work, are submitted as exhibits as indicated in Table 1:

**Table 1.**

| Ex. | Products Copying IBM's Works | Lines of Code | Title of Work | Registration | Registration Date |
|-----|------------------------------|---------------|---------------|--------------|-------------------|
| 89 | SCO Linux Server 4.0 | 289,943 | Enterprise Volume Management System | TX 5-757-696 | 8/15/2003 |
| 90 | SCO Linux Server 4.0 | 2,048 | Enterprise Class Event Logging | TX 5-757-697 | 8/15/2003 |
| 91 | SCO Linux Server 4.0 | 2,411 | Dynamic Probes | TX 5-757-698 | 8/15/2003 |
| 92 | SCO Linux Server 4.0 | 19,042 | Linux Support Power PC64 | TX 5-757-699 | 8/15/2003 |

7

| Ex. | Products Copying IBM's Works | Lines of Code | Title of Work | Registration | Registration Date |
|-----|------------------------------|---------------|---------------|--------------|-------------------|
| 93 | SCO OpenLinux 3.1.1 Asia | 366,407 | Omni Print Driver | TX 5-757-700 | 8/15/2003 |
| 94 | SCO Linux Server 4.0 | 9,914 | Journaled File System | TX 5-757-701 | 8/15/2003 |
| 95 | SCO Linux Server 4.0 | 1,851 | Next Generation Posix Threading | TX 5-757-702 | 8/15/2003 |
| 96 | SCO Linux Server 4.0 | 4,302 | Linux Kernel Support for JFS | TX 5-856-466 | 2/2/2004 |
| 97 | SCO Linux Server 4.0 | 57,670 | Linux Kernel S390 Support | TX 5-856-467 | 2/2/2004 |
| 98 | SCO Linux Server 4.0 | 2,554 | Linux Kernel Support for Service Processor | TX 5-856-468 | 2/2/2004 |
| 99 | SCO Linux Server 4.0 | 2,277 | Linux Kernel Support for Memory Expansion Technology | TX 5-856-469 | 2/2/2004 |
| 100 | SCO Linux Server 4.0 | 7,455 | Linux Kernel Support for IBM eServer iSeries Devices | TX 5-856-470 | 2/2/2004 |
| 101 | SCO Linux Server 4.0 | 1,122 | Linux Kernel Support for PCI Hotplug | TX 5-856-471 | 2/2/2004 |
| 102 | SCO Linux Server 4.0 | 364 | Linux Kernel Support for pSeries Hypervisor Terminal | TX 5-856-472 | 2/2/2004 |
| 103 | SCO Linux Server 4.0 | 4,412 | Linux Kernel PPC64 Support | TX 5-856-473 | 2/2/2004 |
| 104 | SCO Linux Server 4.0 | 2,523 | Linux Kernel Support for Mwave Modem | TX 5-856-474 | 2/2/2004 |

(Ex. 73; Ex. 74; Ex. 75; Ex. 76; Ex. 77; Ex. 78; Ex. 79; Ex. 80; Ex. 81; Ex. 82; Ex. 83; Ex. 84; Ex. 85; Ex. 86; Ex. 87; Ex. 88; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 9.)

     25.     The registration of each of these IBM Copyrighted Works was made within five years of the first publication of the relevant work.  (Ex. 167 ¶ 5.)

26.     IBM made its Copyrighted Works publicly available by posting them on the Internet as part of the Linux development process.  (Ex. 167 ¶ 7.)  Subsequently, each of IBM's Copyrighted Works was incorporated into SCO's Linux products, as indicated in Table 1.  Each of the IBM Copyrighted Works is licensed to others (including SCO) only under the terms of the GPL or the LGPL.  (Ex. 167 ¶ 7.)  All of the IBM Copyrighted Works are licensed under the GPL, except IBM's "Omni Print Driver" and IBM's "Next Generation Posix Threading", which are licensed under the LGPL.  (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 7.)

27.     There is no claim in this case that the IBM Copyrighted Works represent intellectual property of SCO.  With respect to most of the IBM Copyrighted Works, there is no claim that IBM violated any contractual obligations to SCO by contributing such code into Linux.  (See, e.g., Ex. 54.)

28.     With respect to a few of the IBM Copyrighted Works, SCO does claim that IBM was contractually barred from contributing certain of the IBM Copyrighted Works to Linux.  (See, e.g., Ex. 54, Item No. 1 (claiming contractual rights over IBM's JFS).)  It is undisputed, however, that all of the listed works were developed by IBM, not by SCO, that they are intellectual property of IBM, and that IBM holds valid, registered copyrights in these works.  (Ex. 167 ¶¶ 4-5.)

D.      SCO's Extensive Use of Linux and of IBM's Copyrighted Code Included in Linux.

29.     As noted above, SCO (first under the name Caldera) was founded as a commercial distributor of Linux products.  (Ex. 105 at 29-31.)  Like other Linux distributors, SCO was barred by the GPL from charging license fees for distributing Linux, but sought to

9

profit from selling software products and services in conjunction with Linux.  (Ex. 128 §§ 2-3; Ex. 129 §§ 2, 4; Ex. 4 at 29-31.)

30.     In November, 2002, SCO began distributing a product it called "SCO Linux Server 4.0, powered by UnitedLinux", which included the Linux 2.4.19 kernel.  (Ex. 296 at 15:7-18, 35:12-36:17, 92:1-22; Ex. 486 at 908; Ex. 284 ¶ 3; Ex. 352 at SCO1270432.)  SCO Linux Server 4.0 contained, verbatim, the entirety of each of the IBM Copyrighted Works listed in Table 1 above, with the exception of IBM's copyrighted "Omni Print Driver".  (Ex. 167 ¶ 9; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 405; Ex. 69 ¶ 13.)  SCO has admitted this without qualification.  (See Ex. 45, Nos. 108-117.)

31.     SCO also distributed a product it called "OpenLinux 3.1.1 Asia".  (Ex. 406; Ex. 69 ¶ 13.)  SCO OpenLinux 3.1.1 Asia contained, verbatim, the entirety of IBM's "Omni Print Driver".  (Ex. 69 ¶¶ 3, 13; 167 ¶ 9; Ex. 93; Ex. 406.)

32.     In copying these IBM Copyrighted Works into SCO Linux products, SCO repeatedly copied over 783,000 lines of code to which IBM holds the copyrights, and which were made available and came into SCO's possession only pursuant to the GPL.  (Ex. 167 ¶¶ 4-11.)

33

SECTION REDACTED

34.     SCO Linux Server 4.0 also contains extensive amounts of code to which parties other than IBM or SCO hold the copyrights, and which were made available and came into SCO's possession only pursuant to the GPL.  (Ex. 352 at SCO1270432.)

35.     In developing SCO Linux Server 4.0, SCO also made certain modifications and additions to the Linux 2.4.19 kernel, such that SCO Linux Server 4.0 is a derivative work of the Linux 2.4.19 kernel within the meaning of the GPL.  (Ex. 352 at SCO1270430.)  As noted previously, the GPL requires that "You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program [the Linux 2.4.19 kernel] to be licensed as a whole at no charge to all third parties under the terms of this License."  (Ex. 128 § 2(b).)

36.     Pursuant to its business strategy, over time SCO distributed copies of SCO Linux Server 4.0 and SCO OpenLinux 3.1.1 to customers.  (Ex. 284 ¶¶ 4-7.)  In making and distributing each and every one of these copies, SCO literally copied the IBM Copyrighted Works.  (Ex. 167 ¶ 11.)

37.     In addition, as recently as August 11, 2006, SCO still posted copied Linux files on its own Internet website, including copies of the IBM Copyrighted Works (including at least Linux Kernel S390 Support, Linux Kernel PPC64 Support, and Linux Kernel Support for Mwave Modem) and made them available to others to copy at will.  (Ex. 215 ¶ 110; Ex. 226 ¶¶ 13-16.)

38.     SCO profited by selling services and other software in conjunction with SCO Linux Server 4.0 and SCO OpenLinux 3.1.1.  (Ex. 106 at 5-6; Ex. 111 at 6-7.)

39.     To the present, SCO apparently continues to possess and use copies of Linux, including the IBM Copyrighted Works, internally.  While SCO claims that it has "suspended new sales and distribution of SCO Linux" during this litigation, it assures its install base of SCO Linux customers up to the very present that "SCO will, however, continue to support existing SCO Linux and Caldera OpenLinux customers consistent with existing contractual obligations."  (Ex. 48.)  SCO                            SECTION REDACTED                            uses Linux to run its website (Ex. 226 ¶ 18).

E.     SCO's Blatant Violations of the GPL and Resulting Loss of License Rights.

40.     SCO continued to copy and distribute all of the IBM Copyrighted Works, and to profit from selling services and other software in conjunction with its distribution of IBM's Copyrighted Works, even after SCO repudiated and breached the GPL — its sole source of any rights to copy, modify, distribute, or sublicense Linux or the IBM Copyrighted Works.  (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4, 7; Ex. 226; Ex. 215 ¶ 110.)

41.     As early as August 2003, SCO began publicly declaring that the GPL was unenforceable.  (Ex. 330 at 268:3-270:24; Ex. 392.)

42.     In this litigation, SCO has repeatedly repudiated the GPL.

a.     SCO asserts that the GPL "is unenforceable, void and/or voidable" (Ex. 5 at 20 (Sixth Affirmative Defense)); "violates the U.S. Constitution, together with copyright, antitrust and export control laws" (Ex. 7 at 16 (Eighth Affirmative Defense); Ex. 300 at 213:15-20); is unenforceable or inapplicable in this litigation (Ex. 5 ¶¶ 24, 28, 155, 157); and is preempted by federal copyright law and unenforceable under state law.  (Ex. 36 at 38-39.)

b.     In interrogatory responses, SCO again asserted that "SCO maintains that the GNU General Public License ('GPL') is not enforceable".  (Ex. 36 at 20.)

c.     SCO also claims that all rights to enforce the GPL are waived and that all potential claimants are estopped from enforcing the GPL — in other words, that the GPL is a nullity.  (Ex. 5 at 20 (Seventh Affirmative Defense); Ex. 300 at 213:14-215:7.)

43.     By May of 2003, SCO began overtly and explicitly asserting rights over Linux inconsistent with SCO's rights and obligations under the GPL, including by seeking license fees from users of Linux and imposing restrictions on users of Linux that are prohibited by the terms of the GPL.  SCO took the position that use of Linux (which SCO had both received and distributed under the terms of the GPL) was not authorized without a paid license from SCO, and began threatening and initiating litigation against companies that used Linux:

a.     In May 2003, SCO sent letters to Fortune 1000 companies (including IBM) claiming that "Linux is, in material part, an unauthorized derivative of UNIX". SCO further stated that "[w]e believe that Linux infringes on our UNIX intellectual property and other rights" and "intend to aggressively protect and enforce these rights".  (Ex. 141.)

b.     In a May 14, 2003 press release, SCO stated that "Linux is an unauthorized derivative of UNIX and that legal liability for the use of Linux may extend to commercial users".  SCO warned that non-SCO Linux customers could face liability for using Linux software "to run their business".  (Ex. 356.)

c.     In a July 21, 2003 press release, SCO announced that it would be offering licenses to Linux end users, who could otherwise "face liability for running [Linux] in their organizations".  (Ex. 357.)

d.     On August 5, 2003, SCO announced "the availability of the SCO Intellectual Property License for Linux".  (Ex. 362.)

e.     In a December 22, 2003 press release, SCO announced that it had "commenced providing notification to selected Fortune 1000 Linux end users" that their distribution or redistribution of Linux containing code on which SCO purported to hold copyrights would constitute infringement.  (Ex. 363.)

f.     In connection with its December 22 press release, SCO released a template of a letter dated December 19, 2003, sent to "Linux User".  In that letter, SCO wrote that "the use of the Linux operating system in a commercial setting violates our rights under the United States Copyright Act, including the Digital Millennium

Copyright Act" and that "we will take appropriate actions to protect our rights". (Ex. 142.)

g.

SECTION REDACTED

h.    On March 3, 2004, SCO sued AutoZone, Inc., in the United States District Court for the District of Nevada, alleging that AutoZone, through its use of Linux, is infringing copyrights SCO purports to hold on UNIX, and sought to collect, as "damages", license fees and royalties in excess of that permitted to be collected by the GPL or LGPL. (Ex. 9.)

i.    On August 10, 2004, SCO was reported to be threatening to raise the price of its licenses "which it says companies running Linux need to buy in order to avoid being sued". (Ex. 381.)

44.    As a result of this campaign of fear, uncertainty and doubt (a tactic known in the industry as "FUD"), SCO succeeded in actually collecting license fees from a number of Linux users, in excess of the fees permitted by the GPL to be collected for the "physical act of transferring a copy" of the code or for warranty protection (Ex. 128 §§ 1-3; Ex. 129 §§ 1-2, 4), for a so-called "SCO Intellectual Property License for Linux". (Ex. 575.) SCO claimed that this license was necessary for "commercial use of the Linux 2.4 and later versions" (id.):

a.    On March 1, 2004, SCO sold Everyones Internet, Ltd. what SCO representatives described as a "Linux license" or "Linux IP license", telling Everyones Internet that this license was required "to use the SCO IP" on Everyones Internet's Linux servers. (Ex. 224 ¶¶ 12; Ex. 404.)

b.

SECTION REDACTED

c.

14

d.                          SECTION REDACTED

e.     In fact, SCO's entire SCOSource division is dedicated to selling licenses that
       "give end users the right to use the SCO intellectual property contained in Linux".
       (Ex. 366.)

45.    In its "SCO Intellectual Property License for Linux" SCO purported to license

only the use of Linux in object code format, thus prohibiting the use, modification, or

distribution of the Linux source code:

a.     The stated mission of SCO's SCOSource division is to sell licensees the right to
       use "the SCO intellectual property contained in Linux, in binary format only".
       (Ex. 366.)

b.     In an August 5, 2003 press release, SCO announced that the license it was
       offering "permits the use of SCO's intellectual property, in binary form only, as
       contained in Linux distributions".  (Ex. 362.)

c.

d.

46.                          SECTION REDACTED

47.    Despite its actions and statements inconsistent with and repudiating the GPL,

however, SCO continued to make available copies of the IBM Copyrighted Works, each of

which explicitly stated that it was licensed under the terms of the GPL.  (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4, 7; Ex. 226; Ex. 215 ¶ 110.)

### Standard of Decision

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); In re Grandote Country Club Co., 252 F.3d 1146, 1149 (10th Cir. 2001).  A party may seek partial summary judgment as to liability, even though there may be a genuine issue as to the amount of damages. Fed. R. Civ. P. 56(c).

To prevail on a claim of copyright infringement, a copyright holder must establish (1) that it owns the copyright to the copyrighted work, and (2) that the alleged infringer violated one or more of the holder's exclusive rights.  See Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir. 1993); Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc., 75 F. Supp. 2d 1290, 1292 (D. Utah 1999).

In this case, there is no genuine dispute that (1) IBM owns valid copyrights in the IBM Copyrighted Works and (2) SCO has reproduced and distributed the IBM Copyrighted Works as part of its Linux software products and on its Internet website.  (¶¶ 23-39.)  Accordingly, IBM is entitled to summary judgment as to liability.

## Argument[3]

### I.   IBM OWNS THE COPYRIGHTS TO THE IBM COPYRIGHTED WORKS.

Under the Copyright Act, a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate".  17 U.S.C. § 410(c); see Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 831-32 (10th Cir. 1993); Autoskill, 994 F.2d at 1487-88.

IBM has submitted the copyright registrations filed with the United States Copyright Office for the IBM Copyrighted Works.  (¶ 24.)  Each was registered within five years after first publication of the relevant work.  (¶ 25.)  As a result, IBM is entitled to the presumption that it holds valid copyrights to the IBM Copyrighted Works.  See Gates Rubber, 9 F.3d at 831-32; Autoskill, 994 F.2d at 1487-88.

### II.   SCO LACKS PERMISSION OR A LICENSE TO COPY OR DISTRIBUTE THE IBM COPYRIGHTED WORKS.

While IBM has publicly posted the IBM Copyrighted Works and authorized their inclusion in Linux, IBM has never put these works in the public domain.  Rather, IBM has at all times made these works available for copying, distribution, and modification only pursuant to the terms of the GPL.  SCO does not have any license to copy, modify, or distribute the IBM Copyrighted Works for at least two independent reasons:  (1) SCO has repudiated and disclaimed the GPL as a source of legal rights, and (2) SCO has breached the GPL and thus terminated any rights it might otherwise have had under the GPL.  (¶¶ 40-47.)

---

[3] The undisputed facts are cited in this Part as "¶ __", referring to the relevant paragraph number(s) in the foregoing "Statement of Undisputed Facts".

First, SCO repudiated the GPL.  SCO decided to repudiate those obligations at least as early as August 20, 2003, according to the testimony of its president Mr. Darl McBride.  (¶ 41.) In this litigation, SCO has asserted that the GPL "is unenforceable, void and/or voidable" because it "violates the U.S. Constitution, together with copyright, antitrust and export control laws" and is preempted by federal copyright law and unenforceable under state law.  (¶ 42.)

These assertions are baseless.  SCO will search in vain for authority for the proposition that a voluntary, royalty-free license of an indisputably copyrighted work can — by virtue of the condition that the receiving party make the work and any derivative work available under the same terms and conditions — "violate the U.S. Constitution" or copyright, antitrust[4] or export control laws, or that any such license of a copyrighted work is "preempted" by federal copyright law.

Nevertheless, regardless of the speciousness of SCO's excuses for disclaiming and denying the enforceability of the GPL, these assertions do amount to a repudiation of the GPL contract.  As the Federal Circuit held in Dow Chemical Co. v. United States, 226 F.3d 1334, 1345 (Fed. Cir. 2000), a stated intention to challenge "the viability and life of the license itself" is "a distinct and unequivocal refusal to perform under the license, thus causing a material breach, or repudiation, of the contract."  SCO has made its choice and cannot simultaneously

---

[4] The only U.S. courts that have spoken to the competitive implications of the GPL have rejected SCO's position.  In Wallace v. Free Software Foundation, Inc., No. 05-0618, 2006 WL 2038644, at *3 (S.D. Ind. Mar. 20, 2006) (Ex. A hereto), the court concluded that "the GPL encourages, rather than discourages, free competition and the distribution of computer operating systems, the benefits of which directly pass to consumers.  These benefits include lower prices, better access and more innovation."  In Wallace v. Int'l Bus. Mach., Corp., No. 05-678, 2006 WL 1344055, at *2 (S.D. Ind. May 16, 2006) (Ex. B hereto), the court held that "the GPL benefits consumers by allowing for the distribution of software at no cost, other than the cost of the media on which the software is distributed.").

claim to be the beneficiary of a license to copy, modify and distribute the IBM Copyrighted

Works granted by the GPL.

Indeed, as the GPL states, "You are not required to accept this License . . . . <u>However,</u>

<u>nothing else grants you permission to modify or distribute the [IBM Copyrighted Works]</u> or its

derivative works." (¶ 9.)  SCO's effort to claim that the GPL is unenforceable while relying on it

as a valid license to copy and distribute the IBM Copyrighted Works is an impressive but

ultimately unsuccessful display of fancy footwork.

<u>Second</u>, SCO breached the GPL.  After having helped itself to the extensive and highly

valuable copyrighted works of IBM (and countless others) contained in Linux in order to build a

business around Linux, SCO then embarked on a dazzlingly cynical course, violating the GPL in

essentially every way possible, while continuing to use, copy, distribute, and earn revenue from

the code to which SCO had no license except under the GPL.  The GPL, however, provides,

"Any attempt . . . to copy, modify, sublicense or distribute [any program licensed under the

GPL]" "except as expressly provided under this License" "will automatically terminate your

rights under this license".[5]  (¶ 15.)

SCO breached the GPL by charging licensing fees for Linux.  (¶¶ 43-46.)[6]

---

[5] <u>See</u> Dennis M. Kennedy, <u>A Primer on Open Source Licensing Legal Issues: Copyright,</u>
<u>Copyleft, and Copyfuture,</u> 20 St. Louis U. Pub. L. Rev. 345, 360 (2001)  (noting that a party's
rights under the GPL automatically terminate if it attempts to sublicense works subject to the
GPL "except as expressly provided under the GPL"). (Ex. 576.)

[6] <u>See</u> Jason B. Wacha, <u>Open Source, Free Software and the General Public License,</u> 20 No.
3 Computer & Internet Law 20, 22 (2003)  (stating that under the GPL, "royalties are not
permitted" so a copyright holder who distributes GPLed code cannot charge money for others to
use code subject to the GPL) (Ex. 579.)

SCO breached the GPL by imposing an "object code only" restriction on Linux users who accepted SCO's terms.  (¶ 45.)

SCO breached the GPL by purporting to prohibit Linux users from further sublicensing or distributing Linux.  (¶ 46.)

Because SCO breached the terms of the GPL in material (and indeed central) ways, any rights it previously had under the GPL were "automatically terminated".  (¶ 15.)

## III.    SCO HAS COPIED AND DISTRIBUTED THE IBM COPYRIGHTED WORKS.

Copyright infringement consists of the unauthorized performance of acts (such as copying, modifying, and sublicensing) that the copyright holder has the exclusive right to perform.  17 U.S.C. § 501; see Gates Rubber, 9 F.3d at 832.

In this case, there is no dispute that SCO has repeatedly copied the IBM Copyrighted Works.  (¶¶ 30-39.)  Nor is there any dispute that SCO continued to copy the IBM Copyrighted Works after it breached the GPL by demanding license fees from Linux users for a "SCO Intellectual Property License for Linux", and even after it further repudiated the GPL by its assertions in this litigation.  (¶¶ 37, 39.)

## IV.    IBM IS ENTITLED TO SUMMARY JUDGMENT THAT SCO IS LIABLE FOR INFRINGEMENT OF IBM'S COPYRIGHTS.

The undisputed facts establish that IBM holds the copyrights in the IBM Copyrighted Works, and that SCO's rights to copy and distribute those works were terminated as a result of its repudiation and breaches of the GPL.  Through its continued distribution of its commercial Linux products as well as through its own internal developmental and support work, SCO copied and distributed the IBM Copyrighted Works without license to do so.  17 U.S.C. § 501; Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp. 2d 779, 784 (E.D.N.C. 2004)

(holding that by distributing an "unauthorized copy of software in which plaintiff holds a valid copyright, defendant has infringed plaintiff's exclusive rights under the Copyright Act"). SCO also violated IBM's exclusive rights to copy and distribute its copyrighted works by making available for download on SCO's Internet website Linux source code incorporating the IBM Copyrighted Works. See Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 203 (4th Cir. 1997); Perry v. Sonic Graphic Sys., Inc., 94 F. Supp. 2d 616, 619, 621 (E.D. Pa. 2000). Accordingly, IBM is entitled to summary judgment of liability on its Eighth Counterclaim. See, e.g., MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 517-19 (9th Cir. 1993) (affirming grant of summary judgment for infringement of operating system software copyright).

## V.   IBM IS ENTITLED TO SUMMARY JUDGMENT GRANTING AN INJUNCTION AGAINST FURTHER VIOLATIONS OF ITS COPYRIGHTS.

To obtain injunctive relief, IBM must establish: "1) actual success on the merits; 2) irreparable harm unless the injunction is issued; 3) the threatened injury outweighs the harm that the injunction may cause the opposing part[ies]; and 4) the injunction, if issued, will not adversely affect the public interest." Prairie Band Potawatomi Nation v. Wagnon, 402 F.3d 1015, 1019 (10th Cir. 2005) (internal quotation marks omitted); see also Aid for Women v. Foulston, 427 F. Supp. 2d 1093, 1104 (D. Kan. 2006). IBM has satisfied all four of these factors, and the Court should therefore grant it injunctive relief.

First, IBM has established actual success on the merits. It has shown that SCO has continued to copy, modify, and distribute Linux and the IBM Copyrighted Works after breaching and repudiating the GPL, in violation of IBM's copyrights. (¶¶ 30-39, 40-47.)

Second, where the wrong is copyright infringement, irreparable harm absent an injunction is presumed.  The copyright holder "need not establish irreparable injury in order to obtain an injunction.  Under § 502(a), an injunction will issue when there is a substantial likelihood of further infringement of plaintiffs' copyrights." Ocasek v. Hegglund, 116 F.R.D. 154, 160 (D. Wyo. 1987) (internal quotation marks omitted); see also Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1288-89 (10th Cir. 1996) (presuming irreparable harm at the preliminary injunction stage); CBS Broad., Inc. v. EchoStar Comms. Corp., 450 F.3d 505, 517 n.25 (11th Cir. 2006) (same, at the permanent injunction stage).  SCO has assured its customers up to the very present that it will "continue to support existing SCO Linux and Caldera OpenLinux customers."  (¶ 39.)  Thus, there is a substantial likelihood of further infringement.

Third, the threatened injury to IBM outweighs the harm that the injunction may cause SCO.  Indeed, any "injury" that SCO might suffer if enjoined from further unlicensed use of Linux and the IBM Copyrighted Works should be accorded no weight at all.  "[T]he potential injury to an allegedly infringing party caused by an injunction merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement." Autoskill, 994 F.2d at 1498 (internal citation omitted) (holding that even a "devastating" impact on an infringer's business would merit little consideration, as the infringer "cannot be permitted to construct its business around its infringement").

Fourth, the injunction, if issued, will advance, not harm, the public interest.  Indeed, "[i]n copyright cases, we think this [public interest] factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections." Autoskill, 994 F.2d at 1499.

Thus, because IBM has established all four prerequisites for injunctive relief, the Court should grant a permanent injunction against any further violations of IBM's copyrights by SCO.

## Conclusion

For the foregoing reasons, summary judgment and a permanent injunction should be entered in IBM's favor and against SCO on IBM's Eighth Counterclaim for copyright infringement.

DATED this 25th day of September, 2006.

SNELL & WILMER L.L.P.

*(signature)*

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International*
*Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2006, a true and correct copy of the foregoing was served by U.S. Mail, postage pre-paid, to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Todd M. Shaughnessy

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2006, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

>Brent O. Hatch
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101

>Stephen N. Zack
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

and by U.S. Mail, postage pre-paid to:

>Robert Silver
>Edward Normand
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504

/s/ Todd M. Shaughnessy