SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **IBM'S REDACTED MEMORANDUM IN OPPOSITION TO SCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SCO'S THIRD CAUSE OF ACTION, FOR BREACH OF CONTRACT**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

RECEIVED CLERK

2006 NOV 10 P 4: 51

U.S. DISTRICT COURT
DISTRICT OF UTAH

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN OPPOSITION TO SCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SCO'S THIRD CAUSE OF ACTION, FOR BREACH OF CONTRACT**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**FILED UNDER SEAL PURSUANT TO 9/16/03 PROTECTIVE ORDER, DOCKET #38**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

## Table of Contents

Page

Preliminary Statement...................................................................................1

Material Facts Requiring Denial of SCO's Motion..........................................2

      A.    IBM Did Not Breach the Sequent Agreement.................................2

      B.    SCO Is Estopped From Pursuing Its Theory of the Case.....................3

      C.    Any Breach By IBM Has Been Waived.......................................3

      D.    SCO's Claims Regarding RCU Are Barred By the Statute.................4
           of Limitations

Response to Plaintiff's Factual Allegations....................................................4

Argument..................................................................................................7

I.     IBM IS ENTITLED TO SUMMARY JUDGMENT ON COUNT THREE........7

II.    SCO'S MOTION IS PROCEDURALLY IMPROPER.............................9

III.   SCO'S MOTION IS NOT SUPPORTED BY ADMISSIBLE,....................11
      UNDISPUTED EVIDENCE.

Conclusion...............................................................................................18

i

**Table of Authorities**

Page(s)

**Cases**

Arado v. Gen. Fire Extinguisher Corp., 626 F. Supp. 506 (N.D. Ill. 1985)..........................10

Barry v. Liddle, O'Connor, Finkelstein & Robinson, No. 93-8707, 1997 U.S. Dist.
    LEXIS 18820 (S.D.N.Y. Nov. 24, 1997)......................................................10

Capitol Records, Inc. v. Progress Record Distrib., Inc., 106 F.R.D. 25
    (N.D. Ill. 1985)...............................................................................10

City of Wichita, Kan. v. U.S. Gypsum Co., 828 F. Supp. 851 (D. Kan. 1993),
    aff'd in part, rev'd in part on other grounds, 72 F.3d 1491 (10th Cir. 1996)...........9-10

Connett v. Justus Enters., No. 87-1739, 1991 U.S. Dist. LEXIS 1308
    (D. Kan. Jan. 24, 1991).....................................................................10

Cook v. Rockwell Intl. Corp., 181 F.R.D. 473 (D. Colo. 1998)...................................10

Dalton v. Alston & Bird, 741 F. Supp. 1322 (S.D. Ill. 1990)................................10-11

Felix v. Sun Microsystems, Inc., No. 03-1304, 2004 U.S. Dist. LEXIS 7508
    (D. Md. Apr. 12, 2004)...................................................................10, 11

Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823 (10th Cir. 1993)......................14, 16

In re Tiger Petroleum Co., 319 B.R. 225 (Bankr. N.D. Okla. 2004)...........................9, 10

John Morrell & Co. v. Rural Water Dist. No. 3, No. 84-1519, 1990 U.S.
    Dist. LEXIS 11642 (D. Kan. Aug. 20, 1990)..............................................10

Johnson v. City of Memphis, 355 F. Supp. 2d 911 (W.D. Tenn. 2005).........................10

Kendall McGaw Labs., Inc. v. Cmty. Mem. Hosp., 125 F.R.D. 420 (D.N.J. 1989).............10

Kerin v. U.S. Postal Serv., 116 F.3d 988 (2d Cir. 1997)......................................11

Litchfield v. Spielberg, 736 F.2d 1352 (9th Cir. 1984)........................................15

McDonnell v. Cardiothoracic & Vascular Surgical Assocs., No. 03-0079, 2004
    U.S. Dist. LEXIS 10392 (S.D. Ohio May 27, 2004)......................................10

Nycal Corp. v. Inoco PLC, 988 F. Supp. 296 (S.D.N.Y. 1997)................................14

Rotorex Co., Inc. v. Kingsbury Corp., 42 F. Supp. 2d 563 (D. Md. 1999)......................10

S.E.C. v. Thrasher, 152 F. Supp. 2d 291 (S.D.N.Y. 2001)..................................10

Vault Corp. v. Quaid Software Ltd., 847 F.2d 255 (5th Cir. 1988)...........................15

Warner v. U.S., 698 F. Supp. 877 (S.D. Fla. 1988)........................................10

Westinghouse Elec. Corp. v. Fidelity & Deposit Co., 63 B.R. 18 (E.D. Pa. 1986)..........10

Zenith Elecs. Corp. v. WH-TV Broad. Corp., No. 01-4366, 2003 U.S. Dist. LEXIS
    4824 (N.D. Ill. Mar. 25, 2003).....................................................10

**Statutes and Administrative Codes**

17 U.S.C.A. § 101 (West 2006)...........................................................15

N.Y. C.P.L.R. § 213 (2006)..............................................................9

**Other**

DUCivR56-1..............................................................................15

Fed. R. Civ. P. 37(c)...................................................................16

Fed. R. Evid. 702.......................................................................15

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM")
respectfully submits this memorandum in opposition to the motion of Plaintiff/Counterclaim-
Defendant the SCO Group, Inc. ("SCO") for partial summary judgment on its Third Cause of
Action ("Count Three").

### Preliminary Statement

During the 1980s, Sequent Computer Systems ("Sequent"), which IBM acquired in 1999,
entered into a licensing agreement with AT&T (in whose shoes SCO purports to stand) for the
source code to the UNIX System V operating system (the "Agreement").  SCO claims that IBM
breached the Agreement by misusing its Dynix/ptx ("Dynix") source code and seeks partial
summary judgment with respect to elements of Count Three.  SCO's motion should be denied for
the reasons set forth in IBM's Motion for Summary Judgment on SCO's Contract Claims (SCO's
First, Second, Third and Fourth Causes of Action) (Docket #780), which we incorporate here by
reference:  (1) the Agreement does not preclude IBM from using and disclosing its own original
works, even if they were once (or in the future might be) part of Dynix; (2) even if (contrary to
fact) the Agreement could be read as SCO contends, SCO would be estopped from pursuing its
theory of the case; (3) the alleged breaches have been waived — by AT&T and its successors, by
Novell, Inc. on behalf of SCO, and by SCO itself; and (4) SCO's contract claims relating to at
least some of the allegedly misused Dynix material (i.e., RCU) are barred by the statute of
limitations.  (See Section I.)  SCO's motion must also be denied because (1) it is procedurally
improper, since SCO asks the Court to rule only on certain issues relating to Count Three (see
Section II); and (2) SCO's motion is not supported by admissible, undisputed evidence (see
Section III).

**<u>Material Facts Requiring Denial of SCO's Motion</u>**

In support of its motion for summary judgment on Count Three, IBM set out and substantiated undisputed facts foreclosing the relief SCO seeks in this motion.  SCO largely ignores these facts.  IBM's motion papers and the facts set out therein are incorporated by reference as if fully set out herein.[1]  For the convenience of the Court, those facts are summarized as follows:

> A.    <u>IBM Did Not Breach the Sequent Agreement</u>

1.    The Agreement does not preclude IBM from using and disclosing its own original works, even if they were once (or in the future might be) part of Dynix.  (¶¶ 20-21.)

2.    By its terms, the Agreement places limits on what Sequent/IBM can do with AT&T's UNIX System V software, and modifications and derivative works of that software.  But it does not limit what Sequent/IBM can do with its own original works, so long as it protects AT&T's UNIX System V software.  (¶¶ 17-21, 52-56.)

3.    The individuals who executed the Agreement and were involved in its negotiation, on behalf of both AT&T and Sequent, have offered unequivocal testimony that the Agreement was not intended and should not be understood to preclude IBM's use and disclosure of its original works, and contemporaneous documents reflect this interpretation of the licenses.  (¶¶ 37-39, 42-43, 57-62.)

---

[1] Factual citations herein are to IBM's Memorandum in Support of Its Motion for Summary Judgment on SCO's Contract Claims (First, Second, Third and Fourth Causes of Action), dated September 25, 2006 ("IBM Contract Br."), and are cited as "¶___".  Citations to numbered exhibits are to those attached to the September 25, 2006 and November 10, 2006 declarations of Todd M. Shaughnessy, while citations to lettered exhibits are to the exhibits submitted by SCO in support of its motion.

B. SCO Is Estopped From Pursuing Its Theory of the Case

4. AT&T and its successors repeatedly told their licensees, including IBM and Sequent, that they could do as they wished with their own original works, whether or not they were part of a modification or derivative work of UNIX System V. (¶¶ 82-95, 119, 143.)

5. AT&T's licensees, including IBM and Sequent, took AT&T and its successors at their word and used their original works as they wished for nearly two decades, without any objection from AT&T or its successors. (¶¶ 90, 120-23, 144-45.)

6. IBM and Sequent relied, to their detriment, on the representations, conduct, and inaction of AT&T and its successors. They built AIX and Dynix businesses based on the belief that they, not SCO and its successors, control their original works. (¶¶ 73-75, 79, 94-95, 125-27, 148-50.)

7. IBM and Sequent would experience severe prejudice if SCO were allowed to reverse course and claim control of IBM's and Sequent's work after more than two decades of contrary practice. (¶¶ 289-94.)

C. Any Breach By IBM Has Been Waived

8. SCO and its predecessors represented to and reassured licensees for nearly two decades that they would not enforce the Agreement in the way SCO now seeks to enforce it. (¶¶ 82-95, 119, 143.)

9. Novell, which at one time owned all rights in the Agreements, retained the right to waive alleged breaches of the Agreements, and Novell has exercised that right to effect a waiver of the alleged breaches in this case. (¶¶ 138-42, 190-96.)

10. SCO itself sold or otherwise made available to its customers and the public much, if not all, of the material it claims IBM should not have revealed. (¶¶ 156-68.)

3

    D.      <u>SCO's Claims Regarding RCU Are Barred By the Statute of Limitations</u>

    11.      IBM publicly disclosed the allegedly misused material relating to RCU in connection with a patent application and the resulting patent, which issued in 1995, more than six years prior to the date that SCO filed its lawsuit.  (¶ 261.)

<u><strong>Response To Plaintiff's Factual Allegations</strong></u>

Pursuant to DUCivR 56-1(c), IBM responds as follows to SCO's "Statement of Undisputed Facts" (with SCO's statement appearing in italics):

    1.      *The UNIX Software Agreement that AT&T entered into with Sequent, in April 1985, contains provisions governing the licensee's rights to use the licensed software product and to prepare modifications and derivative works based on that software product.  These provisions are contained in Section 2.01 of the Agreement, which states (emphasis added):*

> *"AT&T grants to LICENSEE a personal, nontransferable and nonexclusive right to use in the United States each SOFTWARE PRODUCT identified in the one or more Supplements hereto, solely for LICENSEE'S own internal business purposes and solely on or in conjunction with DESIGNATED CPUs for such SOFTWARE PRODUCT.  Such right to use includes the right to modify such SOFTWARE PRODUCT and to prepare derivative works based on such SOFTWARE PRODUCT, <u>provided the resulting materials are treated hereunder as part of the original SOFTWARE PRODUCT.</u>"*

IBM does not dispute the allegations in paragraph 1, except IBM disputes that SCO is entitled to any relief under this provision.

    2.      *Section 1.04 of the Agreement defines "SOFTWARE PRODUCT" as "materials such as COMPUTER PROGRAMS, information used or interpreted by COMPUTER PROGRAMS and documentation relating to the use of COMPUTER PROGRAMS."  "SOFTWARE PRODUCT" thus includes the licensed UNIX System V source code.*

IBM does not dispute the allegations in paragraph 2, except IBM disputes that SCO is entitled to any relief under this provision.

    3.      *The term "derivative works based on such SOFTWARE PRODUCT" is not defined in the Sequent Agreement.  The term includes, at a minimum, any product containing licensed UNIX System V source code.*

4

IBM does not dispute that the term "derivative works based on such SOFTWARE PRODUCT" is not defined in the Sequent Agreement, but objects to the remaining allegations of Paragraph 3 and disputes that the term at issue includes, at a minimum, any product containing licensed UNIX System V source code.  The evidence on which SCO relies lacks foundation, is immaterial and is contradicted by admissible evidence set out at ¶¶ 37-39, 42-43, 57-62 and described in Section III below.   SCO relies improperly on extrinsic evidence that was not communicated between the parties at the time of the Agreement.  SCO also relies on the testimony of seven declarants (Geoffrey Green, Burton Levine, Thomas Cronan, Edward Kennedy, Jeffrey Mobley, Mitzi Bond, and Evelyn Davis) who had no involvement in the negotiation or execution of the Agreement.  Moreover, the term "derivative work" is defined by federal copyright law, and one work must be "substantially similar" to a preexisting work properly to be considered a "derivative work".  (Ex. 181 ¶ 12.)  The mere fact that a product contains some licensed source code from another product does not make the product a "derivative work" of the other.

4.      *The Dynix/ptx operating system constitutes a derivative work based on UNIX System V under the foregoing definition.  Dynix/ptx also constitutes a derivative work of UNIX System V within the meaning of that term under the Copyright Act.*

IBM objects to and disputes the allegations in Paragraph 4.  SCO does not state which version of Dynix purportedly constitutes a derivative work of UNIX System V.  SCO relies improperly on the expert opinion of Mr. Rochkind, which is irrelevant since it evaluates whether Dynix is a derivative work from a "computer-science perspective", not under the federal copyright law.  SCO also relies on the expert opinion of Dr. Cargill which was not timely disclosed and thus may not be used to support SCO's motion.  Further, IBM disputes the allegations in paragraph 4 on the basis that one of IBM's experts has expressed the opinion,

based on the "substantial similarity" analysis required by the copyright law, that the relevant

Dynix files in this lawsuit are neither modifications nor derivative works based on UNIX System

V. (Ex. 181 ¶ 50.) Finally, whether some version of Dynix as a whole is a derivative work of

UNIX System V is irrelevant because SCO does not claim that IBM improperly disclosed any

version of Dynix as a whole, but instead challenges certain specific disclosures of Dynix code.

     5.     *Section 7.06(a) of the Agreement states in relevant part:*

> *"LICENSEE agrees that it shall hold all parts of the SOFTWARE PRODUCTS subject to this Agreement in confidence for AT&T.  LICENSEE further agrees that it shall not make any disclosure of any or all of such SOFTWARE PRODUCTS (including methods or concepts utilized therein) to anyone, except to employees of LICENSEE to whom such disclosure is necessary to the use for which rights are granted hereunder."*

IBM does not dispute the allegations in paragraph 5, except IBM disputes that SCO is

entitled to any relief under this provision.

     6.     *Section 7.06(b) of the Agreement states in relevant part:*

> *"Notwithstanding the provisions of Section 7.06(a), LICENSEE may distribute copies of a SOFTWARE PRODUCT, either in modified or unmodified form, to third parties having licenses of equivalent scope herewith from AT&T (or a corporate affiliate thereof) for the same SOFTWARE PRODUCT, provided that LICENSEE first verifies the status of any such third party in accordance with specific instructions issued by AT&T."*

IBM does not dispute the allegations in paragraph 6, except IBM disputes that SCO is

entitled to any relief under this provision.

     7.     *Section 7.06(b) of the Agreement states in relevant part:*

> *"LICENSEE may also obtain materials based on a SOFTWARE PRODUCT subject to this Agreement from such a third party and use such materials pursuant to this Agreement, provided that LICENSEE treats such materials as if they were part of such SOFTWARE PRODUCT."*

IBM does not dispute the allegations in paragraph 7, except IBM disputes that SCO is

entitled to any relief under this provision.

8.      *Section 7.10 of the Agreement states: "Except as provided in Section 7.06(b), nothing in this agreement grants to LICENSEE the right to sell, lease or otherwise transfer or dispose of a SOFTWARE PRODUCT in whole or in part."*

IBM does not dispute the allegations in paragraph 8, except IBM disputes that SCO is entitled to any relief under this provision.

9.      *Section 7.13 of the Agreement contains a New York choice-of-law provision.*

IBM does not dispute the allegations in paragraph 9, except IBM disputes that SCO is entitled to any relief under this provision.

10.     *The Agreement also contains a merger clause, in Section 4:*

> *"This Agreement and its Supplements set forth the entire agreement and understanding between the parties as to the subject matter hereof and merge all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings or representations with respect to such subject matter other than as expressly provided herein or as duly set forth on or subsequent to the date of acceptance hereof in writing and signed by a proper and duly authorized representative of the party to be bound thereby. No provision appearing on any form originated by LICENSEE shall be applicable unless such provision is expressly accepted in writing by an authorized representative of AT&T."*

IBM does not dispute the allegations in paragraph 10, except IBM disputes that SCO is entitled to any relief under this provision.

## Argument

### I.     IBM IS ENTITLED TO SUMMARY JUDGMENT ON COUNT THREE.

As stated in IBM's Motion for Summary Judgment on SCO's Contract Claims (SCO's First, Second, Third and Fourth Causes of Action), IBM is entitled to summary judgment on all of SCO's contract claims, including Count Three, for at least four independent reasons.

First, the Agreement does not preclude IBM from using and disclosing its own original works, even if they were once (or in the future might be) part of Dynix:

1.      By its terms, the Agreement places limits on what IBM can do with AT&T's UNIX System V software and modifications and derivative works of UNIX

System V software.  But it does not limit what IBM can do with its own original works, so long as it protects AT&T's UNIX System V software.  Interpreting the license as SCO does would be patently unreasonable and lead to absurd results.

    2.    The individuals who executed the Agreement and were involved in its negotiation, on behalf of both AT&T and Sequent, have offered unequivocal testimony that the Agreement was not intended and should not be understood to preclude IBM's use and disclosure of its original works, and contemporaneous documents reflect this interpretation of the license.  (See IBM Contract Br. Section I.)

Second, even if (contrary to fact) the Agreement could be read as SCO contends, SCO would be estopped from pursuing its theory of the case.  AT&T's licensees, including IBM and Sequent, took AT&T and its successors at their word and used their original works as they wished for nearly two decades, without any objection from AT&T or its successors.  IBM and Sequent reasonably relied, to their detriment, on the representations, conduct, and inaction of AT&T and its successors.  They built AIX and Dynix businesses based on the belief that they, not SCO and its successors, control their original works.  IBM would experience severe prejudice if SCO was allowed to reverse course and claim control of IBM's and Sequent's work after more than two decades of contrary practice.  Thus, as a matter of basic fairness, SCO's theory of the case is untenable.  (See IBM Contract Br. Section II.)

Third, even if the Agreement could be read to give SCO control of original IBM and Sequent code, and even if SCO was not estopped from pursuing its theory of breach, the alleged breaches have been waived — by AT&T and its successors (including SCO), by Novell, Inc. on behalf of SCO, and by SCO itself:

    1.    For the same reasons SCO is estopped from asserting its contract claims against IBM, SCO and its predecessors waived SCO's interpretation of the Agreement by communicating for nearly two decades that they would not enforce the Agreement in the way SCO now seeks to enforce it.

    2.    Novell, which at one time owned all rights in the Agreement, retained the right to waive alleged breaches of the Agreement, and Novell has exercised that right to effect a waiver of the alleged breaches in this case.

3.      SCO itself sold or otherwise made available to its customers and the public much, if not all, of the material it claims IBM should not have revealed.  By its own conduct, therefore, SCO has waived any right to claim that IBM acted improperly by contributing its code to Linux.  (See IBM Contract Br. Section III.)

Fourth, SCO's contract claims relating to at least some of the allegedly misused Dynix material (i.e., RCU) are barred by the statute of limitations.  The statute of limitations for breach of contract is six years under New York law (see N.Y. C.P.L.R. § 213(2) (2006)), which governs SCO's contract claims.  IBM publicly disclosed the allegedly misused material relating to RCU in connection with a patent application and the resulting patent, which issued in 1995, more than six years prior to the date that SCO filed its lawsuit.  Thus, SCO's claims relating to RCU are barred by the statute of limitations.  (See IBM Contract Br. Section IV.)

Because IBM is entitled to summary judgment on SCO's breach of contract claims, SCO's motion for summary judgment on Count Three must be denied.

## II.      SCO'S MOTION IS PROCEDURALLY IMPROPER.

Rather than seek summary judgment on its third cause of action (to which it is plainly not entitled), SCO asks the Court to pass judgment on pieces of the claim.  In an obvious effort to disconnect its claim from the facts that demonstrate its fatal flaws, SCO asks the Court to interpret the "plain language" of the Agreement and to determine that Dynix is a "derivative work" of UNIX System V.  Because the rules do not allow piecemeal adjudication of elements of, or issues concerning, a claim independent of a proper motion for judgment on at least one entire claim, SCO's motion must be denied for an additional reason.

While there is a split of authority on the issue, the better view is that a court cannot enter summary judgment as to a piece of a claim, at least in the absence of a motion by that party for summary judgment on the whole of the claim.  See, e.g., In re Tiger Petroleum Co., 319 B.R. 225, 233-35 (Bankr. N.D. Okla. 2004); City of Wichita, Kan. v. U.S. Gypsum Co., 828 F. Supp.

851, 868-69 (D. Kan. 1993), aff'd in part, rev'd in part on other grounds, 72 F.3d 1491 (10th Cir. 1996); John Morrell & Co. v. Rural Water Dist. No. 3, No. 84-1519, 1990 U.S. Dist. LEXIS 11642, at *7-9 (D. Kan. Aug. 20, 1990) (Ex. D); Connett v. Justus Enters., No. 87-1739, 1991 U.S. Dist. LEXIS 1308, at *18-20 (D. Kan. Jan. 24, 1991) (Ex. B); Felix v. Sun Microsystems, Inc., No. 03-1304, 2004 U.S. Dist. LEXIS 7508, at *21-23 (D. Md. Apr. 12, 2004) (Ex. C); Barry v. Liddle, O'Connor, Finkelstein & Robinson, No. 93-8707, 1997 U.S. Dist. LEXIS 18820, at *2-5 (S.D.N.Y. Nov. 24, 1997) (Ex. A); Arado v. Gen. Fire Extinguisher Corp., 626 F. Supp. 506, 508-09 (N.D. Ill. 1985); Capitol Records, Inc. v. Progress Record Distrib., Inc., 106 F.R.D. 25, 28-30 (N.D. Ill. 1985).[2]

Allowing summary judgment as to a piece of a claim is inconsistent with both the letter and intent of the Federal Rules regarding summary judgment. As one court in this Circuit recently explained, "Judgment means judgment. A summary judgment motion must seek a judgment upon a claim or cause of action in order to be procedurally proper. Any other rule creates a procedural morass, and fails to streamline the task of litigation". Tiger Petroleum, 319 B.R. at 234. By providing in Rule 56(c) that "a summary judgment, interlocutory in character, may be rendered on the issue of liability alone", the "clear implication is that the issue of liability is the only non-determinative issue which may be disposed of on summary judgment". Thrasher, 152 F. Supp. 2d at 295; see also Kendall McGaw Labs., 125 F.R.D. at 421. Allowing litigants to

---

[2] See also Zenith Elecs. Corp. v. WH-TV Broad. Corp., No. 01-4366, 2003 U.S. Dist. LEXIS 4824, at *25-26 (N.D. Ill. Mar. 25, 2003) (Ex. F); Dalton v. Alston & Bird, 741 F. Supp. 1322, 1336-37 (S.D. Ill. 1990); Warner v. U.S., 698 F. Supp. 877, 878-79 (S.D. Fla. 1988); S.E.C. v. Thrasher, 152 F. Supp. 2d 291, 295-97 (S.D.N.Y. 2001); Kendall McGaw Labs., Inc. v. Cmty. Mem. Hosp., 125 F.R.D. 420, 421-22 (D.N.J. 1989); Westinghouse Elec. Corp. v. Fidelity & Deposit Co., 63 B.R. 18, 22-23 (E.D. Pa. 1986). But see McDonnell v. Cardiothoracic & Vascular Surgical Assocs., No. 03-0079, 2004 U.S. Dist. LEXIS 10392, at *3-11 (S.D. Ohio May 27, 2004) (Ex. E); Cook v. Rockwell Intl. Corp., 181 F.R.D. 473, 486 (D. Colo. 1998); Rotorex Co., Inc. v. Kingsbury Corp., 42 F. Supp. 2d 563, 570-71 (D. Md. 1999); Johnson v. City of Memphis, 355 F. Supp. 2d 911, 916 (W.D. Tenn. 2005).

use summary judgment to determine certain factual issues which do not dispose of an entire claim could require the court to "pre-try all the factual issues in a case [which] . . . would contravene the purpose of summary judgment, namely judicial economy". <u>Dalton</u>, 741 F. Supp. at 1336.

The reasons for the rule against piecemeal litigation are especially evident where, as here, a party (SCO) asks the Court to determine underlying facts disconnected from the allegedly improper conduct. As stated, all of the persons from AT&T and Sequent who signed and/or negotiated the agreement in question disagree with SCO's interpretation (¶¶ 37-39, 42-43, 57-62); contemporaneous documents contradict it; and SCO's theory, if accepted, would lead to absurd results.[3] (<u>See</u> IBM Contract Br. Section I.) Moreover, AT&T and its successors repeatedly told their licensees, including IBM and Sequent, that they could do as they wished with their own original works, whether or not they were part of a modification or derivative work of UNIX System V. (<u>See</u> IBM Contract Br. Section II.) These considerations demonstrate why a "party is simply not entitled to summary judgment if the judgment would not be dispositive of an entire claim". <u>Felix</u>, 2004 U.S. Dist. LEXIS 7508, at *23.

## III.  SCO'S MOTION IS NOT SUPPORTED BY ADMISSIBLE, UNDISPUTED EVIDENCE.

SCO's motion is based on ten allegedly undisputed facts. However, eight of the ten alleged facts simply relate to the plain language of the Agreement and could not possibly represent a basis for summary judgment. Thus, SCO's motion turns on the two remaining propositions: (1) that the term "derivative works based on such SOFTWARE PRODUCT" in the

---

[3] Even if SCO could rely on extrinsic evidence to support its motion but IBM could not rely on extrinsic evidence in opposing that motion (as SCO contends but is not the law), SCO may not ground its motion in subjective evidence. <u>See</u> <u>Kerin v. U.S. Postal Serv.</u>, 116 F.3d 988, 992 n.2 (2d Cir. 1997).

Agreement includes "at a minimum, any product containing licensed UNIX System V source code"; and (2) that Dynix/ptx is a "derivative work" within the meaning of the foregoing definition and the Copyright Act. Neither proposition supports the entry of summary judgment.

First, with respect to the meaning of the term "derivative works based on such SOFTWARE PRODUCT", SCO relies entirely on extrinsic evidence. Putting aside the fact that SCO argues that "IBM cannot in opposition merely rely on extrinsic evidence" (SCO Br. at 5), the testimony of the thirteen witnesses on which SCO relies does not establish SCO's definition. For example:

- David Frasure's SCO v. IBM deposition testimony explains how the term "derivative work" was used in his declaration, not what it meant at the time of the Agreement. (Ex. 302 at 178:16-25.) His USL v. BSD deposition testimony explains his definition of "modification", not "derivative work". (Ex. D at 113:15-21, 121:11-18.)

- Geoffrey Green testified in one cited instance about AT&T's intent, but he does not state that this intent was ever conveyed to IBM or Sequent. (Ex. E at 112:25-113:7) In another instance the language SCO quotes is from a question, not Mr. Green's answer. (Id. at 130:17-131:4.) Mr. Green was unsure of the answer to the question and explained that what the Agreement meant depended on the timing since the terms changed over time. (Id. at 131:5-6.)

- Burton Levine's cited testimony is based on his understanding of the terms "resulting material" and "software product", not "derivative work". (Ex. F at 38:7-17; 47:8-15.)

- Otis Wilson's cited testimony establishes only what Mr. Wilson thinks he "would have said", not what he actually communicated to Sequent. (Ex. 346 at 120:10-25.) SCO also does not give Mr. Wilson's full answer to the question, which goes on to explain that licensees owned the code that they developed and could do with it as they wished. (Id. at 121:2-6.)

- David Rodgers' cited testimony defines the term "augmentation", which was being discussed in the context of a question about "modification", not "derivative work". (Ex. 295 at 31:6-32:13.) Also, SCO excludes his answer to a follow-up question where he explains that Sequent understood that it could do what it wanted with its own code. (Id. at 48:10-49:19.)

- Roger Swanson's cited testimony was in response to a question about his understanding "as we sit here today", not at the relevant time. (Ex. 310 at 52:14-23.) Other testimony cited was not regarding Dynix, but instead responding to a

hypothetical. (Id. at 82:14-83:12.) Even then, it concerned "modifications", not "derivative works". (Id.)

- Thomas Cronan's cited testimony gives his present understanding of the term "modification", not "derivative work" at the relevant time. (Ex. 610 at 43:12-25; 45:1-7.) Mr. Cronan also specifically testifies that he does not remember discussing the term "derivative work" during the negotiations. (Id. at 84:9-22; 89:3-10.) Also, the testimony SCO quotes is not from the page it cites, nor is it included in the exhibit it attaches.

- Edward Kennedy not only played no role in the Agreement, but did not assume the position at IBM in which he became familiar with the UNIX licensing contracts until the late 1980s, years after the Agreement had been negotiated and signed. (Ex. 611 at 80:25-86:25.)

- Jeffrey Mobley testified, in a portion of the same answer from which SCO quotes selectively, that what constitutes a "derivative work" is "hard to describe" and stated that he was giving his general understanding of what the term meant. (Ex. K at 50:4-9.) There is no indication that this definition was ever communicated to or by AT&T.

- Mitzi Bond's and Evelyn Davis's cited testimony gives their interpretation of the meaning of "derivative work", but neither had any involvement in the Sequent agreement.

- Ira Kistenberg's cited testimony states what he believes AT&T intended by "derivative work", but does not say that it was ever communicated to Sequent. (Ex. M at ¶ 5.)

- Michael DeFazio's cited testimony gives his current understanding of what "derivative work" means. (Ex. 260 at 223:14-23.)

As is evident from SCO's own brief and as SCO itself acknowledges, each of the witnesses offered differing testimony on the subject, undermining any claim that there was a meeting of the minds as to SCO's definition. In addition, in the portions of testimony quoted and cited by SCO, none of the witnesses is purporting to convey a definition of "derivative work" that was communicated between the parties (AT&T and Sequent) prior to, or contemporaneous with, the execution of the written agreement. In fact, seven of the thirteen witnesses upon whose testimony SCO bases its definition of "derivative work" (Geoffrey Green, Burton Levine, Thomas Cronan, Edward Kennedy, Jeffrey Mobley, Mitzi Bond, and Evelyn Davis) played no

role whatsoever in the Sequent agreement. The six witnesses who were involved in the Agreement have provided declarations and/or deposition testimony directly contradicting SCO's contract theory. (¶¶ 37-39, 42-43, 57-62.) The evidence on which SCO relies does not establish a meeting of the minds as to SCO's definition of the term "derivative work" through the extrinsic evidence it presents. In fact, because all of the testimony SCO cites consists of uncommunicated personal opinions about the meaning of "derivative work", it is entirely irrelevant to this issue. See Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 301 (S.D.N.Y. 1997) (New York's "exclusive reliance upon evidence of objective manifestations of intent renders evidence of uncommunicated subjective intent irrelevant".)

Second, SCO's claim that Dynix/ptx is a "derivative work" within the meaning of SCO's definition is likewise unhelpful to its motion. As an initial matter, the assertion is untenable because it is based on a definition of "derivative works based on such SOFTWARE PRODUCT" that is unsupported and in dispute (as stated above). Moreover, SCO fails even to identify the versions and components of the SOFTWARE PRODUCT and Dynix/ptx to which SCO refers. It is impossible to determine whether one product is a derivative work of another product without specific reference to what is at issue. See Gates Rubber Co. v. Bando Chem. Indus., 9 F.3d 823, 834 (10th Cir. 1993) (indicating that, in determining whether one work is a derivative of another, a court should "dissect", "examine", and "compare" the two specific works in question).

To support the proposition that Dynix/ptx is a derivative work of UNIX System V, SCO relies entirely on the testimony of its experts, Mr. Marc Rochkind and Dr. Thomas Cargill. However, as SCO admits, Mr. Rochkind's testimony is based solely on a "computer-science perspective". (SCO Br. at 14.) There is no basis for importing into the Agreement the perspective of a single computer scientist offered two decades after the Agreement was signed

and providing no objective standard for his testimony.[4]  See Fed. R. Evid. 702 (requiring that

expert testimony be "the product of reliable principles and methods").  The term "derivative

work" is a term of art under copyright law and is explicitly defined in the Copyright Act as "a

work that is based on (or derived from) one or more already existing works . . . in which the

editorial revisions, annotations, elaborations, or other modifications represent, as a whole, an

original work of authorship".  17 U.S.C.A. § 101 (West 2006).  In the absence of a provision in

the Agreement to the contrary, the term "derivative work" should be understood to have the

meaning that it has under federal law.  One of IBM's experts, Professor Randall Davis, has

provided unrebutted testimony that the portions of Dynix specifically challenged by SCO are not

derivative works of UNIX System V.  (Ex. 181 ¶ 50.)

     SCO's Dr. Cargill opines that Dynix is a derivative work of UNIX System V as that term

is defined in the Copyright Act.[5]  However, Dr. Cargill's analysis is flawed because it considers

only one version of Dynix without reference to a specific version of System V Release 4; yet

SCO seeks a determination as to all versions and releases of Dynix and UNIX System V.  Dr.

---

[4]

**SECTION REDACTED**

    see also Vault
Corp. v. Quaid Software Ltd., 847 F.2d 255, 267 (5th Cir. 1988) (a derivative work "must
incorporate in some form a portion of the [preexisting] copyrighted work" and "must be
substantially similar to the [preexisting] copyrighted work"); accord Litchfield v. Spielberg, 736
F.2d 1352, 1357 (9th Cir. 1984).)

[5] The facts relied upon by SCO in its discussion of Dr. Cargill's conclusion, and elsewhere,
are not included in the Statement of Undisputed Facts as required by this Court's rules. District
of Utah Local Rule 56-1(b) provides: "The memorandum in support of a motion for summary
judgment must begin with a section that contains a concise statement of material facts as to
which movant contends no genuine issue exists.  The facts must be numbered and refer with
particularity to those portions of the record on which movant relies." DUCivR56-1(b). Having
failed to comply with this rule, all facts in SCO's argument section not also contained in its
statement of undisputed facts should be disregarded.

Cargill also fails to evaluate whether Dynix is "substantially similar" to UNIX System V based on the principles set out in <u>Gates Rubber</u>, including failing to conduct a filtration analysis, which both <u>Gates Rubber</u> (9 F.3d at 834, 836-38) and Professor Davis have identified as a necessary element in the process for determining substantial similarity. (Ex. 181 ¶ 20.)  Finally, Dr. Cargill ignores the contrary evidence of Professor Davis.  As stated, Dr. Davis has provided unrebutted testimony that the portions of Dynix specifically challenged by SCO are not derivative works of UNIX System V.  (Ex. 181 ¶ 50.)  Dr. Cargill fails to address this conclusion.

Moreover, SCO cannot properly rely on Dr. Cargill's testimony regarding Dynix being a derivative work because it was untimely submitted.  Pursuant to the Court's order of May 15, 2006, SCO was required to submit expert reports in support of its case no later than May 19, 2006.  (Ex. 612 at 1.)  Opposing reports were, according to the Court's June 13, 2006 order, to be submitted on July 17, 2006.  (Ex. 613 at 2.)  While SCO submitted reports from Dr. Cargill on each of those dates, neither of them addressed the issue of whether Dynix is a derivative work of UNIX System V.  Dr. Cargill addressed that issue for the first time in a rebuttal expert report dated August 28, 2006, long after the deadline for submitting expert testimony in support of SCO's claims and at a point when IBM was unable to submit a response.  Thus, SCO cannot rely on Dr. Cargill's testimony for an additional reason.  <u>See</u> Fed. R. Civ. P. 37(c) (party that does not timely disclose information required by Rule 26(a) is not permitted "to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed").

SCO may argue that Dr. Cargill's testimony is proper because it rebuts the testimony offered by Professor Davis in his opposition report.  Any such argument underscores why SCO's motion must be denied.  If Dr. Cargill's rebuttal testimony was proper because it disputed the opinions expressed by IBM's experts, then these facts are obviously not "undisputed".  If, on the

16

other hand, Dr. Cargill was not rebutting the testimony of IBM's experts, then his testimony was improper and untimely. In fact, Professor Davis did not opine as to whether the whole of Dynix is a derivative work of UNIX System V. He simply addressed whether certain code that is alleged to have come from Dynix is itself a derivative work of UNIX System V. That is a different question from the one addressed by Dr. Cargill in his reply report. In any event, it is one thing for SCO to rely on Dr. Cargill's testimony to rebut the testimony of Professor Davis; it is entirely another thing to rely on rebuttal testimony to support an affirmative motion for summary judgment. By inserting Dr. Cargill's testimony in a reply report, SCO has effectively denied IBM and its experts an opportunity to respond. Thus, Dr. Cargill's testimony cannot support SCO's motion.

## **Conclusion**

For the foregoing reasons, SCO's motion for partial summary judgment on its Third Cause of Action, alleging that IBM breached one of its UNIX Software Agreements, must be denied.

DATED this 10th day of November, 2006.

SNELL & WILMER L.L.P.

_(signature)_

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International*
*Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of November, 2006, a true and correct copy of the foregoing was served by electronic mail, pursuant to the agreement of the parties, on the following:

       Brent O. Hatch
       HATCH, JAMES & DODGE, P.C.
       10 West Broadway, Suite 400
       Salt Lake City, Utah 84101
       bhatch@hjdlaw.com

       Edward Normand
       BOIES, SCHILLER & FLEXNER, LLP
       333 Main Street
       Armonk, New York  10504
       TNormand@BSFLLP.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of November, 2006, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131

/s/ Todd M. Shaughnessy