Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard - Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
Facsimile:  (305) 539-1307

Devan V. Padmanabhan (admitted pro hac vice)
John J. Brogan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower - Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone:  (305) 539-8400

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP,<br><br>          Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>          Defendant/Counterclaim-Plaintiff | **SCO'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON IBM'S SIXTH, SEVENTH AND EIGHTH COUNTERCLAIMS**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I. THE RECORD SHOWS THAT, AS A MATTER OF LAW, SCO HAS COMPLIED WITH THE GPL. .......................................................................... 4

    A. In Licensing Its UNIX Material, SCO Did Not Improperly Restrict the Distribution or Use of Any GPL Program. ............................................................ 4

        1. SCO Did Not Make Its UNIX Material Subject to the GPL........................ 4

        2. IBM Does Not Allege That SCO Improperly Restricted The Use or Distribution of Any GPL Program............................................... 5

        3. SCO Did Not Restrict the Use or Distribution of Linux by Anyone Who Had Received Linux from SCO. ....................................................... 6

II. IBM'S INTERPRETATION OF THE GPL TO ENCOMPASS THE ENTIRETY OF LINUX IS WRONG. .......................................................................................... 8

III. THE RECORD SHOWS THAT, AS A MATTER OF LAW, SCO HAS NOT REPUDIATED THE GPL. ................................................................................... 10

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

Amoco Oil Co. v. Premium Oil Co.,
    313 F. Supp. 2d 1233 (D. Utah 2004) .............................................................................. 11

Conrad Bros. v. John Deere Ins. Co.,
    640 N.W.2d 231 (Iowa 2001) ......................................................................................... 13

Dow Chem. Co. v. United States,
    226 F.3d 1334 (Fed. Cir. 2000) ................................................................................ 11, 13

Estate of Harris v. Harris,
    218 F.3d 1140 (10th Cir. 2000) ...................................................................................... 14

I.A.E. Inc. v. Shaver,
    74 F.3d 768 (7th Cir. 1996) .............................................................................................. 9

In re Midway Airlines,
    180 B.R. 851 (Bankr. N.D. Ill. 1995) .............................................................................. 13

Kaydon Acquisition Corp v. Custom Mfg., Inc.,
    301 F. Supp. 2d 945 (N.D. Iowa 2004) ........................................................................... 13

Kepner-Tregoe, Inc. v. Leadership Software, Inc.,
    12 F.3d 527 (5th Cir. 1994) .............................................................................................. 9

Kimel v. Mo. State Life Ins. Co.,
    71 F.2d 921 (10th Cir. 1934) .................................................................................... 12, 13

LAK, Inc. v. Deer Creek Enters.,
    976 F.2d 328 (7th Cir. 1992) .......................................................................................... 12

Lantec Inc. v. Novell, Inc.,
    306 F.3d 1003 (10th Cir. 2002) ...................................................................................... 11

Lawser v. Poudre Sch. Dist.,
    171 F. Supp. 2d 1155 (D. Colo. 2001) ............................................................................ 14

Moncrief v. Williston Basin Interstate Pipeline Co.,
    880 F. Supp. 1495 (D. Wyo. 1995) .................................................................................. 13

Twentieth Century Music Corp. v. Aiken,
    422 U.S. 151 (1975) ............................................................................................................ 9

 **Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(e)(2) ............................................................................................................... 14

**Other Authorities**

4 Arthur L. Corbin, Corbin on Contract § 973 at 911 (1951) ......................................................... 12

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this Reply Memorandum in Further Support of Its Motion for Summary Judgment on IBM's Sixth, Seventh and Eighth Counterclaims.

## PRELIMINARY STATEMENT

This Motion concerns IBM's Sixth, Seventh and Eight Counterclaims – all counterclaims predicated on SCO's alleged violations of the General Public License (GPL). As SCO showed in its Opening Memorandum and as shown below, IBM's arguments fail as a matter of law, and SCO is entitled to summary judgment, for several reasons.[1]

First, SCO has fully complied with the GPL. Contrary to IBM's assertions, SCO did not undertake a distribution of its UNIX material under the GPL or breach the GPL by selling a license that allowed end-users to use the UNIX material in Linux. A copyright owner may enforce its copyrights in material in a GPL-licensed program where the owner has <u>not</u> placed a copyright notice in the program agreeing to the use of the copyrighted material therein. By its plain terms, the GPL does not even "apply" to material that lacks such a notice.

By expressly requiring such a notice, the GPL makes clear that it does not purport to preclude an owner from enforcing his copyright in material improperly contributed to the program by someone else. Neither SCO nor any other owner of the UNIX material in Linux placed any copyright notice for that material in Linux or released that material into the public

---

[1] In previous briefing, SCO has presented additional grounds for denying IBM's September 2006 motion for summary judgment regarding its Sixth, Seventh and Eighth Counterclaims and claims for relief thereunder. Those grounds include IBM's mistaken argument for retroactive copyright infringement; the status of Linux as a derivative work of UNIX System V; IBM's misinterpretation of the proper operation of the automatic-termination provision of the GPL; the absence of any compensable harm as a result of SCO's alleged copyright violations; the lack of any entitlement to the injunctive relief that IBM seeks; and IBM's unclean hands.

1

domain. SCO thus never agreed to the distribution of its UNIX material pursuant to the GPL and remained free to license that material in Linux to end-users for a fee, as it did.

Second, even if SCO's licenses with Linux end-users were treated (incorrectly) as licenses for the right to use the entirety of Linux, nothing in the GPL prohibits SCO from offering such a license. Section 6 of the GPL expressly applies only to restrictions placed by the licensee on users to whom the licensee itself has distributed the GPL-licensed program. It is undisputed that SCO did not sell, or even attempt to sell, a UNIX license to any party who received a Linux distribution from SCO. IBM cites (in a footnote) Section 2(b) of the GPL in contending that SCO was obligated to cause Linux as a whole to be licensed to "all third parties," but Section 2 expressly applies only where the GPL licensee has made modifications to the program. It is undisputed that SCO did not make any modifications to Linux.

IBM thus conflates SCO's role as a former distributor of Linux and its role as the owner of the UNIX intellectual property rights. As a Linux distributor, SCO needed to comply with the GPL, and it has done so. In enforcing its UNIX intellectual property rights, SCO has not precluded anyone who has received Linux from SCO from exercising their rights under the GPL

Third, IBM proposes an unreasonable interpretation of the GPL, which if accepted would mean that IBM and others have been in breach of the GPL for years. IBM argues that GPL licensees have been (purporting to) license the entirety of Linux, including the UNIX material therein, for many years. Yet the UNIX material in Linux has never contained the requisite copyright notice. Linus Torvalds nevertheless began distributing such UNIX material in Linux under the GPL in 1992. If IBM is correct and Mr. Torvalds and his successors have been purporting to distribute the entirety of Linux pursuant to the GPL, they were in plain breach of

2

Section 0; and Mr. Torvalds's misuse of the UNIX material resulted in an "automatic" termination of his right to distribute not just the UNIX material, but also any other part of Linux. Similarly, by IBM's argument, the GPL licenses of Linux end-users were terminated when they used or modified Linux, because the UNIX material therein does not contain the requisite copyright notice, and under Section 4 anyone who has received a copy of Linux must "remain in full compliance" with its terms. These extreme results are reasons for rejecting IBM's argument that the entirety of Linux, including the UNIX material therein, falls under the GPL.

<u>Fourth</u>, SCO has not "repudiated" the GPL. SCO clearly states in its pleadings, for example, that "IBM's claims are barred by license" (that is, the GPL) and that SCO has acted "within the contractual rights granted to it concerning software made freely available by IBM under the GPL." SCO's assertion of defenses regarding the unenforceability of GPL provisions as IBM has interpreted them does not constitute a repudiation. IBM even argues that SCO "continues to repudiate" the GPL in disputing IBM's interpretation of particular GPL provisions. The fact is that IBM's interpretation of selected provisions of the GPL would violate well-established rules of construction. IBM cannot bootstrap a claim of repudiation onto the parties' disagreement over the meaning of certain provisions of the GPL.

There is thus no basis for IBM's assertion that SCO has "refused to perform" under the GPL; there is only a disagreement between the parties as to the interpretation of several GPL provisions. The Court should resolve that dispute in SCO's favor as a matter of law, based on the plain language of the GPL and a logical construction of the license.

## ARGUMENT

**I.      THE RECORD SHOWS THAT, AS A MATTER OF LAW,
         SCO HAS COMPLIED WITH THE GPL.**

IBM alleges that SCO breached the GPL in licensing its UNIX material. SCO shows below that IBM's argument fails as a matter of law.

A.    In Licensing Its UNIX Material, SCO Did Not Improperly
      Restrict the Distribution or Use of Any GPL Program.

1.    SCO Did Not Make Its UNIX Material Subject to the GPL.

The GPL explicitly states that it "applies to any program . . . which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License." (GPL § 0 (emphasis added).[2]) IBM acknowledges (at 1) that in a free-software model, it is the "copyright owners" who choose to make their source code available for others under a free-software license.[3]

---

[2]     The website describing the terms and operation of the GPL, www.gnu.org, contains detailed instructions regarding "How to use the GPL." The gnu.org website explains that

> the process involves adding two elements to each source file of your program: a copyright notice (such as '"Copyright 1999 Linda Jones"), and a statement of copying permission, saying that the program is distributed under the terms of the GNU General Public License. . . . The copyright notice should include the year in which you finished preparing the release (so if you finished it in 1998 but didn't post it until 1999 use 1998). You should add the proper year for each release: for example, "Copyright 1998, 1999 Linda Jones" if some versions were finished in 1998 and some were finished in 1999. . . The copying permission statement should come right after the copyright notices.

How to use the GPL or LGPL, http://www.gnu.org/licenses/gpl-howto.html.

[3]     Indeed, in response to SCO's lawsuit, leaders in the free-software community stated that they would remove the improper UNIX material in Linux. If IBM's argument regarding the GPL were correct, then the SCO material would not need to be removed.

4

The undisputed evidence is that none of the copyright holders of UNIX contributed UNIX code for distribution under the GPL. (Declaration of Dr. Thomas A. Cargill (SCO Ex. 11)[4] ¶¶ 2, 17.) That is, there is no evidence that any UNIX copyright holder (SCO, Caldera International, Inc., or The Santa Cruz Operation, Inc.) contributed UNIX material into Linux for distribution under the GPL, let alone with a copyright notice. Consequently, the GPL does not apply to the UNIX material.[5]

The licenses that IBM challenges were ones in which, as IBM acknowledges, SCO licensed the UNIX material in Linux. SCO's licensing activities with regard to its copyrighted UNIX code do not and cannot constitute a breach of the GPL, which by its express terms does not even apply to such material.

> 2. IBM Does Not Allege That SCO Improperly Restricted
> The Use or Distribution of Any GPL Program.

IBM does not allege that SCO breached the GPL by restricting the use or distribution of any material other than the UNIX material in Linux. With respect to the IBM Copyrighted Works, for example, that material was contributed to Linux by IBM – the copyright holder – for distribution under the GPL. IBM does not allege that SCO breached the GPL based on its

---

[4] The documents, declarations, and depositions supporting SCO's reply are appended to the November 11, 2006 Declaration of Brent O. Hatch, and are cited herein as "SCO Ex.___." Where exhibits attached to IBM's September 25, 2006 Declaration of Todd M. Shaughnessy and November 10, 2006 Declaration of Todd M. Shaughnessy are referenced herein, they are cited as "IBM Ex. ___."

[5] With respect to IBM's arguments (at 23-24) that SCO violated the GPL, for example, IBM notes that the sections at issue grant rights regarding "the Program." Absent the proper inclusion of the UNIX material and copyright notice, the UNIX material was not part of "the Program" by the express terms of the GPL. Accordingly, in imposing restrictions on the extent to which certain Linux users could copy and distribute the UNIX material, SCO was not restricting use of "the Program" under the GPL.

5

distribution of the properly contributed IBM code. Indeed, the undisputed evidence is that SCO did not breach the GPL in distributing IBM's (or anyone else's) code under the GPL.

_____

In sum, given that SCO's copyrighted material fell outside of the scope of the GPL, it was within SCO's rights to license the intellectual property misappropriated by Linux, which is precisely what it did. (IBM Exs. 578, 607.) Therefore, SCO did not breach the GPL and was authorized, under the terms of the GPL, to distribute the code properly contributed by IBM. Accordingly, absent any breach with respect to its UNIX material, or any other material, in Linux, SCO's motion for summary judgment on IBM's Sixth, Seventh, and Eighth Counterclaims should be granted.

### 3. SCO Did Not Restrict the Use or Distribution of Linux by Anyone Who Had Received Linux from SCO.

SCO complied with the plain terms of the GPL in offering its UNIX licenses even if, contrary to fact, the GPL applied to the UNIX material in Linux. With respect to those who received their version of Linux from someone other than SCO, IBM contends (at n.13) that "Section 2(b) clearly states that when a GPL licensee such as SCO distributes software subject to the GPL, it must license that software under the GPL to 'all third parties'." Section 2(b), however, applies only to a work that was modified by a licensee.[6] It is also undisputed that SCO did not modify Linux. In paragraph 17 of its opposition memorandum, IBM states that SCO "made certain modifications and additions to the Linux 2.4.19 kernel" and cites a Product Announcement. However, the Product Announcement does not state that SCO made any

---

[6] The www.gnu.org website confirms that "Section 2 says that modified versions you distribute must be licensed to all third parties under the GPL." Frequently Asked Questions about the GNU GPL, http://www.gnu.org/licenses/gpl-faq.html (emphasis added).

modifications and additions. SCO did not in fact make any modifications or additions to Linux; rather, SCO redistributed Linux 2.4.19 as is on two disks that it received from SuSE. (SCO Ex. 233 ¶¶ 18-23.) IBM presents no evidence otherwise.

With respect to those who received Linux from SCO, section 6 of the GPL makes clear that a GPL licensee cannot impose additional restrictions on those who received the GPL Program from the GPL licensee, stating that the licensee "may not impose any further restrictions on the recipients' exercise of the rights granted herein." Section 6 also makes clear that the license granted by the licensee is from the "original licensor." As noted, the UNIX material that is the subject of SCO's license was not contributed to Linux by any UNIX copyright holder. As such, with respect to the UNIX material covered by SCO's license, there was no "original licensor."

It is undisputed that SCO did not attempt to sell a license to any party who received a Linux distribution from SCO. IBM contends (at 17) that "anyone who received a Linux distribution from SCO paid a fee for the use of SCO Linux." That is wrong. SCO indisputably did not sell or attempt to sell a UNIX license to Linux customers by agreeing to hold them harmless from any SCO intellectual property issues. In addition, the source IBM cites does not support IBM's assertion (at 17) that SCO provided a compliance license to such customers "in partial consideration for the fees SCO already charged for its Linux products." In the deposition that IBM cites, of Lawrence Gasparro, Mr. Gasparro testified regarding the compliance agreement that "we would have made this available at no charge to this customer." (IBM Ex. 303 at 288.)

7

## II. IBM'S INTERPRETATION OF THE GPL TO ENCOMPASS THE ENTIRETY OF LINUX IS WRONG.

IBM proposes an unreasonable interpretation of the GPL, which if accepted would mean that IBM and others have been in breach of the GPL for years. IBM argues that GPL licensees have been (purporting to) license the entirety of Linux, including the UNIX material therein, for many years. Yet the UNIX material in Linux has never contained the requisite copyright notice. IBM's argument that SCO breached the GPL by offering licenses for the UNIX material in Linux would effectively allow parties to misappropriate code into a GPL-licensed work and preclude the copyright owner from protecting its rights. The GPL plainly does not preclude a copyright owner from protecting its copyrights in such code.

Linus Torvalds, who does not own any UNIX copyrights, used the copyrighted manuals for the UNIX-derivative operating system developed by Sun, a UNIX licensee, to develop the Linux kernel. (SCO Ex. 169 at 82.) Mr. Torvalds released the first version of the Linux kernel under the GPL. (IBM SJ Mem. at 6, ¶ 19.) The GPL unambiguously provides:

> You may copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. However, parties who have received copies, or rights, from you under this License will not have their licenses terminated so long as such parties remain in full compliance.

(GPL § 4.) Mr. Torvalds was not the copyright holder to the UNIX source code when he included material from UNIX in Linux; those copyrights were held by SCO and its predecessors in interest. (See SCO Exs. 258-67.)

IBM has previously suggested that some of the UNIX material had previously been published, but that assertion does not constitute support of IBM's claims of breach of the GPL.

8

In addition, the fact that a third party made copyrighted material publicly available does not divest the copyright owner of its interest in the copyrighted material. Indeed, it is the very fact that copyrighted works are made available that necessitates their protection. See Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 537 (5th Cir. 1994) ("[P]rotected expression does not lose its protection simply because it is widely disseminated."); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 n.6 (1975) (copyright protection ensures "that men of ability, who have employed their time for the service of the community, may not be deprived of their just merits, and the reward of their ingenuity and labour.") (quoting Cary v. Longman, 1 East *358, 362 n. (b), 102 Eng. Rep. 138, 240 n. (b) (1801)).

Accordingly, if IBM is correct in asserting that Mr. Torvalds and his successors have purported to include the entirety of Linux pursuant to and subject to the terms of the GPL, then they have plainly breached Section 0 of the GPL, requiring the copyright owner's notice and permission. Section 0 of the GPL codifies the basic principle that an individual can only give away the rights that he himself possesses. I.A.E. Inc. v. Shaver, 74 F.3d 768, 775 n.7 (7th Cir. 1996) ("In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent."). Since the UNIX material in Linux was not contributed by a UNIX copyright holder, Section 0 was not followed. Accordingly, by IBM's argument, any right to sublicense or distribute Linux was void and automatically terminated. Since Mr. Torvalds was the first individual in the Linux GPL licensing chain, every subsequent transfer was also void. Even if the transfers themselves were not void, moreover, under Section 4 any parties who do not "remain in full compliance" with the GPL, such as by using and distributing under the GPL material to which the GPL does not apply, will have their licenses automatically terminated.

IBM explicitly asserts (at 28) the foregoing interpretation of how the breach and termination provisions of the GPL function.  IBM also implicitly argues (at 29-30) that the Linux kernel stands or falls as a whole:

> SCO, therefore, knew or should have known that it was distributing IBM's Copyrighted Works without a license to do so, and was thus infringing IBM's copyrights in those works (as well as copyrights held by so many others in other works contributed to and comprising parts of Linux).

That is, if SCO's attempt to license the misappropriated portions of the UNIX material were to negate SCO's license to <u>all</u> Linux code under the GPL, then surely the misappropriation of the UNIX material into the GPL invalidates the whole of Linux as well.  (Conversely, if breaching the GPL with respect to a portion of a work does not invalidate the GPL as to the remainder of the work, then IBM cannot claim that SCO's purported breach invalidated SCO's license to the IBM-copyrighted material.)  In addition, since IBM (as it says of SCO, at 29) is "an experienced participant in the software industry . . . [and] had copies of the GPL and regularly licensed software to others under the terms of the GPL," the Court should impute to IBM the knowledge that it was distributing SCO's copyrighted UNIX material without a license.  These extreme results are reasons for rejecting IBM's argument that the entirety of Linux, including the UNIX material therein, falls under the GPL.

## III.     THE RECORD SHOWS THAT, AS A MATTER OF LAW, SCO HAS NOT REPUDIATED THE GPL.

IBM's contention that SCO has "repudiated" the GPL is wrong as a matter of law.  "A repudiation occurs when a party to a contract makes an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance."  <u>Amoco Oil Co. v. Premium Oil Co.</u>, 313 F. Supp. 2d 1233, 1238

10

(D. Utah 2004) (quotation and citation omitted); see also Lantec Inc. v. Novell, Inc., 306 F.3d 1003, 1014-15 (10th Cir. 2002). A party repudiates a contract when it "refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." Dow Chem. Co. v. United States, 226 F.3d 1334, 1344 (Fed. Cir. 2000).

There is no evidence that SCO has made any such refusal, far less communicated it to anyone. On the contrary, in the very materials IBM cites, SCO Vice President Christopher Sontag confirms that SCO "treated [the GPL] as an obligation for which it needed to abide by," and SCO "made our best efforts to abide by all of the obligations of the GPL agreement."[7] (IBM Ex. 300 at 213.) In addition, SCO has not repudiated the GPL as a source of legal rights. IBM misapprehends the significance of the assertions SCO has made in its pleadings regarding the enforceability of the GPL. IBM ignores those assertions that directly contradict its characterization of SCO's supposed "repudiation": SCO asserts as its Fourth Affirmative Defense that "IBM's claims are barred by license," and as its Eleventh Affirmative Defense that "SCO has acted legally and properly at all relevant times and IBM is therefore barred from any relief whatsoever." In a portion of SCO's Response to IBM's Third Set of Interrogatories that IBM does not cite, SCO explains that it has acted "within the contractual rights granted to it

---

[7] IBM's reliance on Darl McBride's testimony is misplaced. Under Tenth Circuit law, "[a]nticipatory repudiation requires more than statements [that] a party . . . has misgivings about a contract." Lantec, Inc., 306 F.3d at 1014 ; accord Amoco Oil Co., 313 F. Supp. 2d at 1238 . Mr. McBride's testimony at most reveal his misgivings as to the GPL, which as a matter of law is not enough to support a repudiation. Moreover, Mr. McBride's testimony as to his views on the GPL neither demonstrate any intent to breach the GPL nor demonstrate any determination (much less a clear determination) not to continue with performance under the GPL. In fact, when asked by IBM whether "[h]as SCO, to the best of your knowledge complied with the terms of GPL," Mr. McBride answered "[f]rom my understanding, we haven't done anything that would violate the GPL." (McBride Dep. (IBM Ex. 330; 270:25-271:5.) Consistent with Mr. McBride's testimony and as explained above, SCO has performed under the GPL and has not breached it.

concerning software made freely available by IBM under the GPL." SCO thus has not disclaimed the GPL as a source of legal rights.

IBM also ignores the context in which SCO has made its forward-looking assertions regarding the enforceability of the GPL. SCO has made statements in its pleadings denying the applicability or enforceability of the GPL as IBM interprets it and for those who would use the GPL to shelter their otherwise improper activities; SCO has <u>not</u> asserted that the GPL did not authorize the licensees thereunder to copy and distribute the licensed material. Such defensive assertions in litigation do not constitute a decision to "repudiate" the contract at issue. None of SCO's assertions could reasonably be construed to preclude SCO from arguing (and proving) that, under the GPL, SCO was authorized to copy and distribute the material at issue.

IBM even argues that SCO "continues to repudiate" the GPL in disputing IBM's interpretation of particular GPL provisions. The fact is that IBM's interpretation of selected provisions of the GPL would violate public policy and well-established rules of construction. The GPL should not be read to interfere with SCO's right to enforce its own intellectual property rights. IBM cannot bootstrap a claim of repudiation onto the parties' disagreement over the meaning of certain provisions of the GPL. See <u>LAK, Inc. v. Deer Creek Enters.</u>, 976 F.2d 328, 331-32, 335 (7th Cir. 1992) (finding that "[s]tating a position based on a reasonable interpretation of the contract and refusing to accede to the other party's, as [defendant] did, does not, without more, amount to a 'clear manifestation of intent not to perform in accordance with any other interpretation'" and is therefore not a repudiation) (quoting 4 Arthur L. Corbin, <u>Corbin on Contract</u> § 973 at 911 (1951)); <u>Kimel v. Mo. State Life Ins. Co.</u>, 71 F.2d 921, 923 (10th Cir. 1934) ("An offer to perform in accordance with the promisor's interpretation of the contract

although erroneous, if made in good faith, is not such a clear and unequivocal refusal to perform as amounts to a renunciation giving rise to an anticipatory breach."); Kaydon Acquisition Corp v. Custom Mfg., Inc., 301 F. Supp. 2d 945, 962 (N.D. Iowa 2004) (holding that when "'two parties differ as to the interpretation of a contract, the mere demand by one party that the contract be performed according to its interpretation does not in and of itself constitute repudiation'") (quoting Conrad Bros. v. John Deere Ins. Co., 640 N.W.2d 231, 241-42 (Iowa 2001)); accord Moncrief v. Williston Basin Interstate Pipeline Co., 880 F. Supp. 1495, 1506 (D. Wyo. 1995) (quoting Kimel, 71 F.2d at 923); see also In re Midway Airlines, 180 B.R. 851, 924 (Bankr. N.D. Ill. 1995) (noting that "although parties may differ on interpretation of a contract, a mere offer by one to perform in accordance with its interpretation does not itself constitute an anticipatory repudiation").

 IBM's citation to Dow Chemical does not support its argument. First, Dow Chemical does not depart from, but rather affirms, the rule that a repudiation "occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." Dow Chem., 226 F.3d at 1344. There, the trial court found that defendant wrote letters to plaintiff stating no royalties were due, in fact did not pay royalties for many years, did not intend to pay any royalties, and later also contested the validity of the patent and license at issue. The Court affirmed the finding of repudiation. Nothing in the opinion, however, suggests that contesting the validity of the license alone – without the overt acts of refusing and failing to pay royalties – was a repudiation. Second, nothing in that case even suggests that a party risks a repudiation if it asserts the enforceability of the license at issue as an affirmative defense against an infringement claim. IBM's reliance on Dow Chemical is misguided.

13

IBM's argument would fail, moreover, even if the Court accepted IBM's mischaracterization of SCO's assertions. IBM at most points to instances of permissible pleading in the alternative. See Fed. R. Civ. P. 8(e)(2); see, e.g., Lawser v. Poudre Sch. Dist., 171 F. Supp. 2d 1155, 1158 (D. Colo. 2001) (Rule 8(e)(2) "specifically provides that a party may plead in the alternative, even where the alternative claims are inconsistent"). Nor has IBM even claimed that it changed its position or relied on any of SCO's statements. See Estate of Harris v. Harris, 218 F.3d 1140, 1153 (10th Cir. 2000).

14

## **CONCLUSION**

SCO respectfully submits, for all of the reasons stated above, that this Court should grant SCO's Motion for Summary Judgment on IBM's Sixth, Seventh and Eighth Counterclaims.

DATED this 12th day of January, 2007

By:_____/s/ Brent O. Hatch_____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Stuart H. Singer (admitted pro hac vice)
Edward Normand (admitted pro hac vice)

DORSEY & WHITNEY LLP
Devan Padmanabhan (admitted pro hac vice)
John J. Brogan (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*

## **CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing **SCO'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON IBM'S SIXTH, SEVENTH AND EIGHTH COUNTERCLAIMS** was served on Defendant/Counterclaim-Plaintiff, International Business Machines Corporation, on this 12th day of January, 2007, via CM/ECF to the following:

> David Marriott, Esq.
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Todd Shaughnessy, Esq.
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

By\_\_\_\_\_/s/ Brent O. Hatch_____