# EXHIBIT D

LEXSEE


Analysis
As of: Jan 19, 2007

DR. STEVEN MACARTHUR et al., Plaintiffs, vs. SAN JUAN COUNTY et al., Defendants.

Case No. 2:00CV584K

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

2000 U.S. Dist. LEXIS 22792

December 12, 2000, Decided

**PRIOR HISTORY:** MacArthur v. San Juan County, 2000 U.S. Dist. LEXIS 16859 (D. Utah, Oct. 30, 2000)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Before the court on the legal issues pertaining to the enforceability of Tribal Court orders in favor of plaintiffs, a doctor, patients, and others, were defendant insurer's and defendant attorney's motions to dismiss the declaratory judgment claim and plaintiffs' original and amended motions for summary judgment. Also before the court were plaintiffs' motions for reconsideration and for declaratory judgment.

**OVERVIEW:** Exhaustion by the insurer and the attorney was not required because plaintiffs brought the action and because the Tribal Court lacked jurisdiction over both of them. The claims against the insurer were based solely on the conduct of the attorney. However, the attorney was never an agent of the insurer. The insurer engaged in no on-reservation conduct, and consequently the Tribal Court lacked jurisdiction over it. Even if an agency relationship had existed or the insurer had otherwise engaged in on-reservation conduct, the Tribal Court lacked subject matter jurisdiction over the insurer because such jurisdiction was not necessary to protect tribal self-government and was not crucial to the political integrity, economic security or health or welfare of the Navajo Nation. Moreover, the insurer was not afforded the basic tenets of due process, and thus, the Tribal orders were not entitled to comity. For similar reasons, the Tribal Court lacked jurisdiction over the attorney. Plaintiffs failed to provide any legitimate ground for reconsideration of the court's earlier finding that the state defendants were entitled to immunity under Utah Code Ann. § 63-30-4(4).

**OUTCOME:** The court granted what was treated as the attorney's motion to dismiss and the insurer's motion to dismiss plaintiff's declaratory judgment action against them, and dismissed plaintiffs' claims for declaratory judgment to enforce the Tribal Orders against each of them. The court denied plaintiffs' motions for summary judgment, for reconsideration, and for declaratory judgment.

**CORE TERMS:** tribal, tribe, declaratory judgment, reconsideration, docket entry, exhaustion, comity, subject matter jurisdiction, memorandum, motion to dismiss, pertaining, reservation, preliminary injunction, consensual, set forth, pertain, on-reservation, enforceable, misconduct, necessary to protect, lacked jurisdiction, civil jurisdiction, failed to provide, self-government, intervening, dissolved, nonmembers, ordering, narrowly, futile

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Governments > Native Americans > Authority & Jurisdiction*
[HN1] Whether a tribal court has civil jurisdiction over a non-Indian defendant is a question that must be answered

Page 1

by reference to federal law and is therefore a federal question under 28 U.S.C.S. § 1331.

*Civil Procedure > Justiciability > Exhaustion of Remedies > Exceptions*
*Governments > Native Americans > Authority & Jurisdiction*
[HN2] Where exhaustion is not a jurisdictional prerequisite, there are several exceptions to the requirement. For example, there are exceptions when the assertion of jurisdiction was motivated by a desire to harass or conducted in bad faith, where the action was patently violative of express jurisdictional prohibitions, or where exhaustion would be futile. There is also an exception when the requirement would serve no purpose but for delay. The U.S. Court of Appeals for the Ninth Circuit has found that exhaustion is not required when tribal court jurisdiction did not exist.

*Governments > Native Americans > Authority & Jurisdiction*
[HN3] It is well-established that a tribe's jurisdiction will not extend to non-Indian conduct beyond the reservation's borders.

*Governments > Native Americans > Authority & Jurisdiction*
[HN4] The exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of tribes, and so cannot survive without express congressional delegation. There are two exceptions that would permit tribes to exercise civil jurisdiction over nonmembers under limited circumstances: The first exception permits a tribe to regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements. The second exception allows tribes to exercise inherent sovereign power over the conduct of non-Indians on a reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. The U.S. Supreme Court, however, has clarified that this second exception must be narrowly applied, explaining that the exception applies when to hold otherwise would threaten the right of reservation Indians to make their own laws and be ruled by them.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Full Faith & Credit > Enforcement of Judgments*
*Constitutional Law > Relations Among Governments > Full Faith & Credit*
*Governments > Native Americans > Authority & Jurisdiction*
[HN5] The U.S. District Court for the District of Utah agrees with the finding of the U.S. Court of Appeals for the Ninth Circuit that the Full Faith and Credit Clause of the U.S. Constitution applies only to the states and that there is nothing in the debates of the Constitutional Convention concerning this clause that indicates the framers thought the clause would apply to Indian tribes. Whether a tribal court judgment is enforceable should be considered solely as a matter of comity.

*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
[HN6] Courts generally recognize three grounds for reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.

**COUNSEL:** [*1]   For Steven MacArthur, Nathaniel Penn, Doctor, Michelle Lyman, Helen Valdez, Candace Laws, Linda Cacapardo, Sue Burton, Amy Terlaak, Alison Dickson, Candace Holiday, Nicole Roberts, Donna Singer, Fred Riggs, Plaintiff: Susan Rose, SANDY, UT.

For All Plaintiffs, All Plaintiffs: Susan Rose, SANDY, UT.

For San Juan County, J Tyron Lewis, Commissioner, Craig Halls, Richard Bailey, Defendant: Jesse C Trentadue, SUITTER AXLAND, SALT LAKE CITY, UT. Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT. Kathleen M. Liuzzi, DUNN & DUNN, SALT LAKE CITY, UT. Michael W Homer, SUITTER AXLAND, SALT LAKE CITY, UT. Thomas B. Price, SUITTER AXLAND, SALT LAKE CITY, UT.

For San Juan Health Services District, Defendant: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT. Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT. Christine T. Greenwood, MAGLEBY & GREENWOOD PC, SALT LAKE CITY, UT.

For Bill Redd, Commissioner, Defendant: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT. Jesse C Trentadue, Michael W Homer, Thomas B. Price, SUITTER AXLAND,

SALT LAKE CITY, UT. Robert R. Harrison, SNOW CHRISTENSEN [*2] & MARTINEAU, SALT LAKE CITY, UT. Kathleen M. Liuzzi, DUNN & DUNN, SALT LAKE CITY, UT.

For Reid M. Wood, Cleal Bradford, Defendant: Blaine J. Benard, Carolyn Cox, Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT.

For Roger Atcitty, John Lewis, John Housekeeper, Karen Adams, Patsy Shumway, Defendant: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT. Christine T. Greenwood, MAGLEBY & GREENWOOD PC, SALT LAKE CITY, UT.

For James D. Redd, Doctor, L. Val Jones, Doctor, Manfred R. Nelson, Doctor, Marilee Bailey, Ora Lee Black, Laurie Schafer, Defendant: Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT. Carolyn Cox, Blaine J. Benard, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT.

For Gary Holladay, Defendant: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWNE (UT), SALT LAKE CITY, UT. Christine T. Greenwood, MAGLEBY & GREENWOOD PC, SALT LAKE CITY, UK.

For Lori Wallace, also known as Laurie Walker, Carla Grimshaw, Gloria Yanito, Julie Bronson, Defendants: Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT. Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT.

For Lyn Stevens, [*3] San Juan County Commissioner, Defendant: Jesse C Trentadue, Michael W Homer, SUITTER AXLAND, SALT LAKE CITY, UT.

For San Juan County, All Defendant: Jesse C Trentadue, Michael W Homer, Thomas B. Price, SUITTER AXLAND, SALT LAKE CITY, UT. Kathleen M. Liuzzi, DUNN & DUNN, SALT LAKE CITY, UT.

For Health District Defendants, San Juan Health Services District Dfts Group 1 consist of: San Juan Health Service District, Cleal Bradford, Dr. James Redd, Dr. L. Val Jones, Dr. Manfred Nelson, Marilee Bailey, Ora Lee Black, Lori Wallace, Carla Grimshaw, Gloria Yanito, also known as, Health Dist Dfts All Defendants: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT. Robert R. Harrison, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT. David W. Slagle, SNOW CHRISTENSEN & MARTINEAU, SALT LAKE CITY, UT.

For San Juan Health Defendants Group 2, San Juan Health Dfts Group 2 consist of: San Juan Health Services District, Roger Atcitty, John Lewis, Patsy Shumway, Karen Adams, John Housekeeper, Gary Holliday, Reid Wood, Laurie Schafer, All Defendants: Blaine J. Benard, Carolyn Cox, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT. Christine T. Greenwood, MAGLEBY & GREENWOOD [*4] PC, SALT LAKE CITY, UT.

For HEALTH, Don Beckwith, Sandra Assasnik, Marilyn Brokoop, James(Harry) Boley, FNU Wilson, Mr. Masotti, Interested Party: Jean P Hendrickson, UTAH ATTORNEY GENERAL'S, SALT LAKE CITY, UT.

For Utah Division of Occupational and Professional Licensing the Division, Interested Party: Judith A. Jensen, UTAH ATTORNEY GENERAL'S OFFICE, SALT LAKE CITY, UT.

For Mark Shurtleff, Stewart M. Hanson, Mark Shurtleff, Stewart M. Hanson, Interested Party: Dan R. Larsen, SNELL & WILMER (UT), SALT LAKE CITY, UT.

For Steven MacArthur, Nathaniel Penn, Michelle Lyman, Helen Valdez, Candace Laws, Linda Cacapardo, Sue Burton, Amy Terlaak, Alison Dickson, Candace Holiday, Nicole Roberts, Donna Singer, Fred Riggs, Bradley Eddie, Terra Talker, Counter Defendant: Susan Rose, SANDY, UT.

**JUDGES:** DALE A. KIMBALL, United States District Judge.

**OPINION BY:** DALE A. KIMBALL

### MEMORANDUM DECISION AND ORDER

This matter is before the court on (1) the legal issues pertaining to whether the Tribal Court Orders should be enforced against Defendants Truck Insurance Company ("Truck") and R. Dennis Ickes ("Mr. Ickes"), n1 (2) Plaintiffs' Motion for Reconsideration, and (3) Plaintiffs' [*5] Motion for Declaratory Judgment. A hearing on the legal issues pertaining to enforcement of the Tribal Order was held on November 17, 2000, and the remaining motions have been decided without oral argument. At the hearing, R. Dennis Ickes represented himself, Kyle Finch represented Truck Insurance Company ("Truck"), Kathleen M. Liuzzi represented the County Defendants, Carolyn Cox represented the Health District Defendants, and Susan R. Schildmeyer represented Plaintiffs. Before the hearing, the court considered carefully the memoranda

relating to these motions and the other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to these motions, as well as the briefs that have been filed since the hearing. Now being fully advised, the court renders the following Memorandum Decision and Order.

**OPINION:**

> n1 Specifically, there are four motions on these issues: (1) Truck's motion to dismiss Plaintiffs' declaratory judgment claim, (2) Mr. Ickes' motion to dismiss Plaintiffs' declaratory judgment claim, (3) Plaintiffs' Motion for Summary Judgment, and (4) Plaintiffs' Amended Motion for Summary Judgment. Truck's opening brief is actually entitled "Memorandum Brief Regarding Subject Matter Jurisdiction, Full Faith and Credit, Comity, and Exhaustion." Mr. Ickes' brief is similarly captioned. In a previous Order, the court stated that it would treat these briefs as motions to dismiss Plaintiffs' declaratory judgment claim.

[*6]

**I. LEGAL ISSUES PERTAINING TO WHETHER THE TRIBAL COURT ORDERS ARE ENFORCEABLE AGAINST TRUCK OR MR. ICKES**

**A. BACKGROUND**

The background of this case in general has already been set forth in this court's Order dated October 30, 2000 ("October 30 Order"). The background set forth herein pertains specifically to Truck and Mr. Ickes' involvement in the Tribal Court action. The Complaint filed in the Tribal Court originally sought relief against San Juan County, the San Juan Health Services District, and various individuals. Along with their Complaint, Plaintiffs also filed an Application for Preliminary Injunctive and Temporary Relief, and the Tribal Court entered a temporary restraining order on the same date. Neither Truck nor Mr. Ickes was named as a party.

However, at the time in question, April 1999, there was in effect a Comprehensive Hospital Liability Policy issued by Truck, which, among other things, covered the Montezuma Creek Clinic, which was operated by the San Juan Health Services District ("Health District"). Consequently, Truck retained Mr. Ickes to represent the District and related defendants (the "Tribal Court Defendants") in the Tribal Court action. [*7] Because, there were coverage issues as to many of the claims brought by Plaintiffs in the Tribal Court proceedings, however, Mr. Ickes was retained solely to represent the interests of Truck's insureds. Mr. Ickes was not retained to, and has not, represented Truck at any time pertinent to this action.

Upon motion of the Tribal Court Defendants, the Tribal Court dissolved the Restraining Order on May 14, 1999, apparently based at least in part on Mr. Ickes' arguments regarding *Sampson v. Murray*, 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1964). On that date, the Tribal Court also began a preliminary injunction hearing. On December 28, 1999, the Tribal Court issued a preliminary injunction, ordering the Tribal Court Defendants to take several actions, which are set forth in the court's October 30 Order. In addition, the Tribal Court found that the Tribal Court Defendants and their counsel, Mr. Ickes, had engaged in bad faith conduct toward the court. Although it is not entirely clear which of the findings of bad conduct pertain to Mr. Ickes, it appears that the Tribal Court found misrepresentations of fact and law, spoliation of evidence, submission of evidence at the end of the preliminary injunction [*8] hearing, failure to plead fraud with specificity in the Tribal Court Defendants' counterclaims, and other unspecified violations of the Navajo Nation Rules of Civil Procedure.

On January 18, 2000, the Tribal Court Defendants filed a Motion to Dissolve or Modify Findings, Opinion and Judgment at Preliminary Injunction, arguing that it must be dissolved for lack of due process to Defendants, among other things. On January 27, 2000, Plaintiffs filed a Motion to Supplement the Pleadings in the case, seeking to add Mr. Ickes and Farmer's Insurance Companies and Truck Insurance Companies (collectively referred to as "Truck") as defendants in the action. Plaintiffs asserted claims against them for obstruction of justice, misuse of judicial process, defamation, denial of due process, denial of equal protection, and endangerment of Navajo patients at the Clinic. Plaintiffs claimed that Truck was responsible for Mr. Ickes' conduct through legal theories of agency. Plaintiffs requested that the Tribal Court order Mr. Ickes and Truck, jointly and severally, to pay $ 18,000,000 to Plaintiffs and $ 6,000,000 to the Clinic.

On February 23, 2000, the Tribal Court entered an Order granting Plaintiffs' [*9] Motion to Supplement the Pleadings. On March 1, 2000, the Tribal Court entered an Order denying the Tribal Court Defendants' Motion to Dissolve, again making references to their bad faith conduct in the proceedings. The Tribal Court also ordered that the Preliminary Injunction Order be carried out immediately, and no later than March 3, 2000, and imposed a fine of $ 10,000 a day for each day that the Order was not carried out in its entirety. In addition, the Tribal Court ordered that "every personal defendant and

defendants['] counsel will pay $ 1,000 per day of the $ 10,000 daily fine from their own personal assets."

On March 6, 2000, the court entered a Special Order in Aid to Satisfaction of Preliminary Injunction, ordering, among other things, that the Tribal Court Defendants (presumably including Truck and Mr. Ickes) be restrained from alienating money or personal property until they paid the relief granted in the Preliminary Injunction Order and that they submit a listing of their assets to Plaintiffs. The court also stated that Plaintiffs could seek comity in the Utah and federal courts.

On March 15, 2000, Plaintiffs filed with the Tribal Court a Motion for All Defendants [*10] to be Bound by the Preliminary Injunction Order, seeking to bind the newly added defendants, Truck and Mr. Ickes. On April 27, 2000, without notice or an opportunity to be heard, the Tribal Court entered an Order Mandating that All Defendants be Bound by the Preliminary Injunction Order. In that Order, the Tribal Court held that Mr. Ickes and Truck were bound in privity with the other defendants and that they had "responsibility for all legal liabilities incurred by the defendants as declared in the December 28 Preliminary Injunction Order."

On June 12, 2000, Truck filed a Motion to dismiss Plaintiffs' claims against it based on the fact that Mr. Ickes had been hired under a reservation of rights and was not acting as Truck's agent in the tribal proceeding and therefore Truck could not be held liable for any misconduct of Mr. Ickes and because, as a matter of policy, a party should not be allowed to sue an adverse party's attorney. After Plaintiffs failed to file a timely response, the Tribal Court entered an Order dismissing Truck, but without substantively ruling on Truck's motion. Apparently, the judge indicated that he would issue an Order clarifying whether the dismissal was [*11] with or without prejudice; however, he has not yet done so. Based upon conversations with the court clerk, Truck believes that the dismissal will be without prejudice, and Plaintiffs have again filed a motion in Tribal Court to join Truck as a Defendant in the proceedings and bind it to the Tribal Court's prior Orders.

**B. DISCUSSION**

Both Truck and Mr. Ickes argue that the Tribal Court did not have jurisdiction over them, and thus, this court cannot enforce the Tribal Court Orders against them. n2 In addition, they argue that even if the Tribal Court did not have subject matter jurisdiction over them, this court should not, under principles of full faith and credit or comity, enforce the Tribal Court Orders. Among other arguments, Mr. Ickes also argues that, as an attorney, he was immune from suit. Plaintiffs, however, adamantly disagree with all of Truck's and Mr. Ickes' arguments.

> n2 [HN1] Whether a tribal court has civil jurisdiction over a non-Indian defendant is a question that must be answered by reference to federal law and is therefore a federal question under 28 U.S.C. 1331. See, e.g., National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985).

[*12]

As a preliminary matter, both Truck and Mr. Ickes argue that exhaustion does not apply in this case. [HN2] First, it is not a jurisdictional prerequisite. See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 16 n.8, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987). Thus, there are several exceptions to the requirement. For example, there are exceptions when the assertion of jurisdiction was motivated by a desire to harass or conducted in bad faith, where the action was patently violative of express jurisdictional prohibitions, or where exhaustion would be futile. National Farmers, 471 U.S. at 857 n.21. There is also an exception when the requirement would serve no purpose but for delay. Strate v. A-1 Contractors, 520 U.S.438, 459, 520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661, n.14 (1997). Similarly, the Ninth Circuit has found that exhaustion is not required when tribal court jurisdiction did not exist under Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981) and Strate, 520 U.S. at 459. Burlington Northern R.R. Co. v. Red Wolf, 196 F.3d 1059, 1065 (9th Cir.), cert. denied, 529 U.S.1110, 120 S. Ct. 1964, 146 L. Ed. 2d 795 (2000); see also Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087, 1093 (8th Cir. 1998) [*13] (exhaustion not required where court clearly lacked jurisdiction because there was no on-reservation conduct by defendant).

In this case, the court has previously found that exhaustion is not required because Plaintiffs-not Defendants-brought this action in federal court, after the blessing of the Tribal Court judge. See October 30 Order at 9 n.7. In addition, the court finds that, because the Tribal Court clearly lacked jurisdiction over both Truck and Mr. Ickes, as discussed below, exhaustion is not necessary. Furthermore, the court finds that exhaustion would be futile and would serve no purpose but for delay.

*1. Truck*

**a. Subject Matter Jurisdiction**

[HN3] It is well-established that a tribe's jurisdiction will not extend to non-Indian conduct beyond the

reservation's borders. *See Hornell,* 133 F.3d at 1093. In the Tribal Court action, Truck had not engaged in any conduct within the boundaries of the Navajo Nation. The claims against Truck are based solely on the conduct of Mr. Ickes. However, Mr. Ickes was never an agent of Truck in the Tribal Court proceedings, and Mr. Ickes' conduct was therefore not the conduct of Truck. Truck did not [*14] retain control over Mr. Ickes, and Plaintiffs have not pointed to any evidence to the contrary. In fact, because Truck was reserving its rights to deny coverage for a number of Plaintiffs' claims, and a conflict of interest existed between Truck and its insureds, Truck specifically advised both the Health District and Mr. Ickes, in a letter dated April 23, 1999, that Mr. Ickes was only to represent the Health District and that the hospital would control the defense. The letter stated that Mr. Ickes had no obligation to represent Farmers' interest in this matter. Thus, Truck did not engage in any on-reservation conduct, and consequently the Tribal Court did not have jurisdiction over Truck. Thus, the Tribal Court Orders are therefore not enforceable against Truck.

Even assuming, however, that Plaintiffs could establish an agency relationship between Truck and Mr. Ickes or that Truck otherwise engaged in on-reservation conduct, the Tribal Court still did not have subject matter jurisdiction over Truck. The seminal case on this issue is *Montana v. United States,* 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). The *Montana* Court noted that the [HN4] "exercise of tribal power beyond what is necessary [*15] to protect tribal self-government or to control internal relations is inconsistent with the dependent status of tribes, and so cannot survive without express congressional delegation." *Id.* at 563-64.

The *Montana* court set forth two exceptions that would permit tribes to exercise civil jurisdiction over nonmembers under limited circumstances: The first exception permits a tribe to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements." *Id.* at 565. The second exception allows tribes to exercise inherent sovereign power over the conduct of non-Indians on a reservation when that conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566. The Supreme Court, however, has clarified that this second exception must be narrowly applied, explaining that "the exception applies when to hold otherwise would threaten "the right of reservation Indians to make their own laws and be ruled by them. [*16] " *Strate,* 520 U.S. at 459.

Truck argues, and this court agrees, that neither exception applies in this case. Truck does not have any "consensual relationship" with the Tribe or any of the individual Plaintiffs, and therefore the first exception does not apply. In addition, the second exception does not apply because, as in *Strate,* regulatory or adjudicatory authority over the alleged tortious conduct by Truck against Plaintiffs (*i.e.,* Mr. Ickes' alleged bad faith conduct during the Tribal Court proceedings) is not needed to preserve the Navajo Nation's right to make its own laws and be ruled by them. As in *Strate,* jurisdiction is not necessary to protect tribal self-government and is not crucial to the political integrity, economic security or health or welfare of the Navajo Nation. Under Plaintiffs' analysis, the exception would swallow the rule because virtually every act that occurs on the reservation could be argued to have some political, economic, health or welfare ramification to the Tribe. *See County of Lewis v. Allen,* 163 F.3d 509, 514 (9th Cir. 1998) (narrowly construing the second *Montana* exception to find that tribal court [*17] lacked jurisdiction over tribal member's claim that county deputy sheriff had committed a tort against Plaintiff while engaging in law enforcement activities on the reservation).

### b. Full Faith and Credit and Comity

Truck argues that the Tribal Court Orders are not entitled to full faith and credit. In *Wilson v. Marchington,* 127 F.3d 805 (9th Cir. 1997), *cert. denied,* 523 U.S. 1074, 118 S. Ct. 1516, 140 L. Ed. 2d 669 (1998), [HN5] the Ninth Circuit found that the Full Faith and Credit Clause of the Constitution applies only to the states and that there is nothing in the debates of the Constitutional Convention concerning this clause that indicates the framers thought the clause would apply to Indian tribes. *Id.* at 808. The *Wilson* court determined that whether a tribal court judgment was to be enforced should be considered solely as a matter of comity. This court agrees.

Truck also argues that the Orders should not be enforced against Truck as a matter of comity. The *Wilson* court set forth the proper test to apply when considering whether to enforce a tribal judgment as a matter of comity. The court found that, as a general principle, federal courts should [*18] recognize and enforce tribal judgments. *Id.* at 810. However, the court stated that federal courts must neither recognize nor enforce tribal judgments if the tribal court did not have both personal and subject matter jurisdiction or if the defendant was not afforded due process of law. *Id.*

In this case, Truck argues, and this court agrees, that the Tribal Court did not have subject matter jurisdiction and that Truck was not afforded the basic tenets of due process. Truck and Mr. Ickes were added as defendants and bound-after the fact-by the Orders entered by the Tribal Court. The Tribal Court made findings about their conduct without any evidentiary hearing. Neither Truck nor Mr. Ickes was ever given an opportunity to defend

against these new claims. Accordingly, this court will not enforce the Tribal Court Orders under principles of comity.

### 2. Mr. Ickes

#### a. Subject Matter Jurisdiction

Plaintiffs claim that the Tribal Court had jurisdiction over Mr. Ickes pursuant to the *Montana/Strate* analysis because, among other things, he entered into a consensual contract with the Tribe by contracting with the Navajo Court to be an officer of [*19] the court. This court rejects the argument that he entered into a consensual contract with the Tribe by becoming an officer of the Navajo Court. Moreover, the absence of any nexus between the allegations contained in the Complaint filed in Tribal Court and the alleged misconduct of Mr. Ickes also defeats Plaintiffs' argument. In addition, for the reasons set forth above pertaining to Truck, the court finds that the second *Montana/Strate* exception does not apply. Thus, the court finds that the Tribal Court did not have jurisdiction over Mr. Ickes, and it therefore will not enforce the Tribal Orders against him.

#### b. Full Faith and Credit and Comity

As stated above, this court finds that the Tribal Court did not have jurisdiction over Mr. Ickes, and, for the reasons set forth above pertaining to Truck, that Mr. Ickes was not afforded the basic tenets of due process. Like Truck, Mr. Ickes was added as a Tribal Court Defendant and bound-after the fact-by the Orders entered by the Tribal Court. n3 The Tribal Court made findings about his conduct without any evidentiary hearing. Mr. Ickes was never given an opportunity to defend against these new claims. Accordingly, this court [*20] will not enforce the Tribal Court Orders under principles of comity.

> n3 Mr. Ickes cites numerous examples regarding the Tribal Court's due process violations. However, Plaintiffs dispute Mr. Ickes' characterization of the events in the Tribal Court that he contends deprived him of due process. Plaintiffs maintain that, if the court were to rely on such examples, it would be obligated to review the entire Tribal Court record. Rather than examining the entire record of the Tribal Court, the court relies solely on the fact that Mr. Ickes was added as a defendant and "bound" by the Tribal Orders without the opportunity to be heard. Thus, the Tribal Court necessarily made findings about his conduct based solely upon Plaintiffs' briefs and without any input from Mr. Ickes. This court will not enforce any order from any court that is made under such circumstances.

#### c. Attorney Immunity

Mr. Ickes also argues that this court should not enforce the Tribal Court Orders because it is against the public policy of [*21] both Utah and the United States to hold an attorney liable to a non-client absent fraud, collusion or privity of contract. *Oxedine v. Overturf*, 1999 UT 4, 973 P.2d 417, 421 (Utah 1999)(citing *National Sav. Bank v. Ward*, 100 U.S. 195, 205-06, 25 L. Ed. 621 (1880)); *see also Tappen v. Ager*, 599 F.2d 376, 378 (10th Cir. 1979); *Garcia v. Rodey, Dickason, Sloan, Akin & Robb*, 106 N.M. 757, 750 P.2d 118 (N.M. 1988). The *Garcia* court noted that appropriate means generally existed to redress grievances concerning the alleged misconduct of an adverse attorney, either within the action itself or by invoking disciplinary proceedings through the disciplinary board. *Id.* at 763.

This court agrees that Mr. Ickes could not be liable to Plaintiffs in the circumstances involved in the Tribal Court action. n4 Thus, this court will also not enforce the Tribal Orders entered against Mr. Ickes for this reason. n5

> n4 Mr. Ickes has also filed a Motion to Dismiss requesting that the court dismiss him as a Defendant in the case at bar. The court had previously granted Plaintiffs' request to hold this motion in abeyance until twenty days after the court's ruling on the Tribal Court issues. Given the court's ruling regarding Mr. Ickes, it is difficult to imagine any scenario under which Mr. Ickes would be an appropriate defendant in this action. However, before the court rules on Mr. Ickes' motion, Plaintiffs are invited to file a memorandum in opposition to Mr. Ickes' motion to dismiss if they believe that some legitimate basis still exists despite the court's ruling pertaining to Mr. Ickes. In addition, in the same memorandum, Plaintiffs should discuss whether Truck should be retained as a defendant in the instant case in light of the court's ruling herein. Such memorandum must be filed and served no later than January 9, 2001 and must be within the page limitations set forth in the local rules. Mr. Ickes and Truck may then file and serve a reply memorandum no later than January 22, 2001.

[*22]

n5 Of course, because this court finds that Mr. Ickes could not be liable to Plaintiffs in the Tribal Court action, and in light of Plaintiffs' argument that Truck's liability was based upon Mr. Ickes' conduct, an additional basis exists upon which the court finds that the Tribal Court Orders are not enforceable against Truck

## II. PLAINTIFFS' MOTION FOR RECONSIDERATION AND REQUEST FOR DECLARATORY JUDGMENT

Plaintiffs have moved for reconsideration of this court's Order dated October 30, 2000, relying on "new case law." Plaintiffs claim that on September 26, 2000, the Tenth Circuit issued a relevant decision in *NLRB v. Pueblo San Juan*, 228 F.3d 1195 (10th Cir. 2000). In addition, they point out that the First Circuit recently issued a decision in *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21 (1st Cir. 2000) (decided March 22, 2000). Plaintiffs, however, have failed to provide any legitimate ground for reconsideration.

[HN6] Courts generally recognize three grounds for reconsideration: (1) an intervening change in controlling [*23] law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Ekotek Site PRP Comm. v. Self*, 932 F. Supp. 1319 (D. Utah 1996). The two "new" cases on which Plaintiffs rely were decided prior to the court's October 5, 2000 hearing on the matter and prior to the court's October 30 Order. Thus, Plaintiffs could have timely argued the relevance of these cases, but failed to do so. Moreover, these cases are not contrary to the court's Order and thus are not intervening changes in controlling law. Finally, due to the court's own research, the court was aware of these two cases prior to issuing its Order. Thus, the court will not reconsider its Order based on these cases.

Plaintiffs also rehash several of the arguments made previously in the Plaintiffs' supporting briefs, and thus again have failed to provide a legitimate basis for reconsideration of these arguments. However, even considering the merits of Plaintiffs' arguments, they all fail for the reasons set forth in the court's October 30 Order and in the Health District's Memorandum in Opposition to Plaintiffs' Motion for Reconsideration.

Finally, Plaintiffs have also [*24] filed a Motion for Declaratory Judgment and Amendment to the Plaintiffs' Motion for Reconsideration Due to the Unconstitutionality of the Utah Governmental Immunity Act ("UGIA"). It is unclear whether Plaintiffs' motion is directed at only Plaintiffs' claim seeking enforcement of the Tribal Court Orders or also at Plaintiffs' remaining claims in this action. The court has assumed that it pertains only to enforcement of the Tribal Court Orders. If Plaintiffs intended to file such a motion regarding any remaining claims, they may do so at a later date.

Again, Plaintiffs have not provided a basis for reconsideration, as they could have made such arguments prior to the court's Order. Addressing the merits of the argument, however, the court denies Plaintiffs' motion. The court, in its October 30 Order relied on the State of Utah's inherent immunity-not Governmental Immunity-in finding that the County and Health District Defendants were immune from suit in Tribal Court. The court relied on only one portion of the UGIA, Utah Code Ann. § 63-30-4(4), which pertains to the immunity of individual employees of the State. This provision has been found by a majority of the Utah Supreme Court [*25] to be constitutional. See *Lyon v. Burton*, 5 P.3d 616 (Utah 2000). Thus, the court denies Plaintiffs' motion.

## IV. CONCLUSION

For the foregoing reasons and good cause appearing, it is hereby ORDERED that:

(1) What has been treated as Mr. Ickes' motion to dismiss Plaintiffs' declaratory judgment action against him (docket entry # 32) is GRANTED, and Plaintiffs' claim for declaratory judgment pertaining to enforcement of the Tribal Court Orders against Mr. Ickes is DISMISSED;

(2) What has been treated as Truck's motion to dismiss Plaintiffs' declaratory judgment action against it (docket entry # 31) is GRANTED, and Plaintiffs' claim for declaratory judgment pertaining to enforcement of the Tribal Court Orders against Truck is DISMISSED;

(3) Plaintiffs' Motion for a Temporary Restraining Order (docket entry # 5), which has been converted to a Preliminary Injunction Motion, is DENIED to the extent that it requests enforcement of the Tribal Court Orders against Mr. Ickes or Truck.

(4) Plaintiffs' Motions for Summary Judgment (docket entries #77 and 82) are DENIED;

(5) Plaintiffs' Motion for Reconsideration (docket entry # 86) is DENIED; [*26]

(6) Plaintiffs' Motion for Declaratory Judgment and Amendment to the Plain-

tiffs' Motion for *Reconsideration Due to the Unconstitutionality of the Utah Governmental Immunity Act* (docket entry # 103) is DENIED;

(7) Plaintiffs' Motion for Declaratory Judgment (docket entry #106) is DENIED;

(8) Plaintiffs may file and serve a memorandum in opposition to Mr. Ickes' motion to dismiss (docket entry # 18) no later than January 9, 2001. Plaintiff should address whether, in light of this court's ruling herein, there exists any basis for retaining Mr. Ickes as a Defendant in the instant case. Plaintiffs should also address whether Truck should be retained as a defendant in the instant case in light of the court's ruling herein. Such memorandum must be within the page limitations set forth in the local rules. Mr. Ickes and Truck may then file and serve a reply memorandum no later than January 22, 2001.

(9) Regarding Plaintiffs' Motion for Certification Under Rule 54(b) (docket entry #84), no later than January 12, 2001, any party to this action may file a brief pertaining to whether this court should certify, under Rule 54(b), the instant Order and also the Order dated [*27] October 30, 2000. The court will then rule on that motion.

DATED this 12th day of December, 2000.

BY THE COURT:

DALE A. KIMBALL

United States District Judge