# EXHIBIT G

Westlaw.

42 Fed.Appx. 160                                                                                                    Page 1
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

Briefs and Other Related Documents
Lewis v. Oklahoma ex rel. Bd. of Regents for Tulsa Community CollegeC.A.10 (Okla.),2002.This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)
United States Court of Appeals,Tenth Circuit.
Leslie R. LEWIS, an individual, Plaintiff-Appellant,
v.
State of OKLAHOMA ex rel. BOARD OF REGENTS FOR TULSA COMMUNITY COLLEGE; Dean P. Van Trease, as President of Tulsa Community College and individually; William Sutterfield, as Senior Executive Vice President and Chief Operating Officer of Tulsa Community College and individually; C. Gary Crooms, as Vice President of Business and Auxiliary Services of Tulsa Community College and individually; Pat Fisher, as Director of Personnel of Tulsa Community College and individually; L. Jeannie Shore, as Director of Financial Aid and Veterans Services of Tulsa Community College and individually, Defendants-Appellees.
**No. 01-5003.**

June 18, 2002.

Employee who had been terminated from her job at community college brought claims against employer and others, asserting claims under Title VII, Equal Pay Act, and § 1983. The United States District Court, adopting the report and recommendation of magistrate judge, entered summary judgment for employer, and employee appealed. The Court of Appeals, Ebel, J., held that: (1) continuing violation doctrine did not apply with respect to Title VII claims for disparate treatment in working conditions and pay; (2) employee failed to show that she was disparately treated with respect to her working conditions; (3) employer's apparent deviation from written policy was not sufficient to show pretext in employer's proffered reasons for paying employee less than a similarly situated employee; and (4) fact that employee trained her purported male counterpart when he was hired, that employee often had to correct his work product for errors, and that employee was held equally accountable for those errors was not enough to show that she performed substantially the same work as her male counterpart,

for purposes of establishing an Equal Pay Act violation.

Affirmed.
West Headnotes
**[1] Civil Rights 78 ⚷⟿1505(7)**

78 Civil Rights
    78IV  Remedies Under Federal Employment Discrimination Statutes
        78k1503    Administrative Agencies and Proceedings
            78k1505 Time for Proceedings;  Limitations
                78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
            (Formerly 78k342)
Continuing violation doctrine did not apply with respect to former employee's Title VII claims for disparate treatment in working conditions and pay, and thus, limitations period for filing the claims could not be extended, where nature of the violations should have triggered employee's awareness of need to assert her rights; former employee stated that in prior years she had specifically complained of the disparity in title, pay, responsibility, and work performed between herself and another employee to her supervisor, and employee had previously complained in writing to personnel director about the alleged disparity in her title, pay, and accountability. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights 78 ⚷⟿1505(7)**

78 Civil Rights
    78IV  Remedies Under Federal Employment Discrimination Statutes
        78k1503    Administrative Agencies and Proceedings
            78k1505 Time for Proceedings;  Limitations
                78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
            (Formerly 78k342)
To establish a continuing violation, with respect extending limitations period for filing Title VII claim, plaintiff must show that at least one discriminatory act happened within the applicable filing period, which in Oklahoma is 300 days for Title VII claims; upon such a showing, Court of Appeals determines whether the acts prior to the limitations period constitute a continuing violation

that includes acts within the filing period by considering (1) subject matter, which is whether the violations constitute the same type of discrimination, (2) frequency, and (3) permanence, which is whether the nature of the violations should trigger employee's awareness of need to assert her rights and whether consequences of the act would continue even in absence of continuing intent to discriminate. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[3] Civil Rights 78 ☞1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
            78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
        (Formerly 78k342)
Claim of a continuing violation, with respect to Title VII claim, will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[4] Civil Rights 78 ☞1138**

78 Civil Rights
    78II Employment Practices
        78k1138 k. Disparate Treatment. Most Cited Cases
        (Formerly 78k153)
Former employee asserting Title VII claim against her former employer failed to show that she was disparately treated with respect to her working conditions, where former employee failed to show that she was improperly disciplined, but instead merely complained about former employer's application of its discipline policy in relation to employer's failure to discipline another worker for his alleged laziness, and even if former employee had to shoulder additional work responsibilities compared to the other worker, this did not show that she was subject to an "adverse employment action" that would satisfy her prima facie case. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5] Civil Rights 78 ☞1137**

78 Civil Rights

**[78II Employment Practices**
    78k1137 k. Motive or Intent; Pretext. Most Cited Cases
        (Formerly 78k153)
Employer's apparent deviation from written policy, when employer failed to give employee a pay raise with her promotion, was not sufficient to show pretext in employer's proffered reasons for paying employee less than a similarly situated employee, for purpose of proving employee's Title VII claim, where employer presented evidence that it has been its actual practice for past ten years not to raise employee's salary upon a change in position unless he or she was currently making less than the entry level salary of the new position, and employer presented evidence that twelve other employees also did not have their salary raised upon promotion. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[6] Civil Rights 78 ☞1251**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases
        (Formerly 255k30(6.10) Master and Servant)
To prevail on her retaliatory discharge claim, employee must establish that the decision to terminate her resulted from retaliatory animus. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[7] Civil Rights 78 ☞1541**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1534 Presumptions, Inferences, and Burden of Proof
            78k1541 k. Retaliation Claims. Most Cited Cases
        (Formerly 78k378)
In absence of direct evidence of retaliatory animus, plaintiffs may make such a showing through the burden-shifting structure established in *McDonnell Douglas*. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[8] Civil Rights 78 ☞1243**

78 Civil Rights

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Fed.Appx. 160                                                                                                         Page 3
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
      78k1243 k. Practices Prohibited or Required in General;  Elements. Most Cited Cases
        (Formerly 255k30(6.10)  Master and Servant)
To establish a prima facie case of retaliatory discharge, employee must show (1) she engaged in protected activity, (2) she suffered adverse action by the employer subsequent or contemporaneous with such activity, and (3) a causal connection existed between the employee's activity and the employer's adverse action.  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[9] Colleges and Universities 81 &#9740;8.1(3)**

81 Colleges and Universities
    81k8 Staff and Faculty
      81k8.1 Duration of Employment and Removal or Other Discipline
        81k8.1(3) k. Grounds for Termination. Most Cited Cases
Even assuming that community college employee's statement that it was time she get an attorney to help her obtain equal pay represented an unofficial assertion of rights through complaints at work, which would constitute protected activity for purposes of employee's retaliation claim, employer's proffered reasons for terminating employee, including that she had jeopardized students' financial aid appeals by returning their petitions without informing employer of which ones needed immediate attention, were not pretextual, and it was irrelevant that no harm actually came of the delay in processing petitions, given that employer believed that the applications would be jeopardized.  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[10] Labor and Employment 231H &#9740;2463**

231H Labor and Employment
    231HXIII Wages and Hours
      231HXIII(C) Equal Pay
        231Hk2460 Discrimination in General
          231Hk2463 k. Equal Work;    Skill, Effort, and Responsibility. Most Cited Cases
        (Formerly 232Ak1333  Labor Relations)
Fact that employee trained her purported male counterpart when he was hired, that employee often had to correct his work product for errors, and that employee was held equally accountable for those errors was not enough to show that she performed substantially the same work as her male counterpart,

for purposes of establishing an Equal Pay Act violation, where all of the above-mentioned responsibilities pertained to the processing of paperwork, which fell under employee's primary function as a clerk, whereas purported male counterpart's primary function was as an assistant who counseled students.  Fair Labor Standards Act of 1938, § 6(d), 29 U.S.C.A. § 206(d).

**[11] Labor and Employment 231H &#9740;2461**

231H Labor and Employment
    231HXIII Wages and Hours
      231HXIII(C) Equal Pay
        231Hk2460 Discrimination in General
          231Hk2461 k. In General. Most Cited Cases
        (Formerly 232Ak1333  Labor Relations)
To establish a prima facie case of violation of Equal Pay Act, employee must show (1) she was performing work which was substantially equal to that of male employees considering skills, duties, supervision, effort, and responsibilities of the jobs, (2) the conditions where work was performed were basically the same, and (3) male employees were paid more under the circumstances.  Fair Labor Standards Act of 1938, § 6(d), 29 U.S.C.A. § 206(d).

**[12] Colleges and Universities 81 &#9740;8.1(3)**

81 Colleges and Universities
    81k8 Staff and Faculty
      81k8.1 Duration of Employment and Removal or Other Discipline
        81k8.1(3) k. Grounds for Termination. Most Cited Cases

**Constitutional Law 92 &#9740;278.5(3)**

92 Constitutional Law
    92XII Due Process of Law
      92k278.5 Regulations Affecting Schools and Education
        92k278.5(2) Staff and Faculty
          92k278.5(3) k. Discipline, Suspension, Discharge, or Non-Renewal of Contract. Most Cited Cases
Community college employee failed to prove that college's employee handbook, which outlined affirmative action plan, created an implied contract between employee and employer, where employee did not supply any separate consideration for her claimed right to job security under the handbook, and employee also failed to show that she was terminated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

because of gender discrimination; thus, employer failed to prove that employer violated its affirmative action plan and deprived her of a constitutionally protected property interest in violation of § 1983 when employer fired her. 42 U.S.C.A. § 1983.

## [13] Labor and Employment 231H ⚖︎40(2)

231H Labor and Employment
   231HI In General
      231Hk37 Term, Duration, and Termination
        231Hk40 Definite or Indefinite Term; Employment At-Will
          231Hk40(2) k. Termination; Cause or Reason in General. Most Cited Cases
        (Formerly 255k30(1.5) Master and Servant)
Under Oklahoma law, which follows an at-will employment doctrine, in the absence of an express or implied contract to the contrary, employer may terminate employee at any time for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.

Before TACHA, Chief Judge, GARTH [FN*] and EBEL, Circuit Judges.

    FN* Honorable Leonard I. Garth, Circuit Judge, United States Third Circuit Court of Appeals, sitting by designation.

### ORDER AND JUDGMENT [FN**]

    FN** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.EBEL, Circuit Judge.

**\*1** Plaintiff-Appellant, Leslie Lewis, appeals the district court's grant of summary judgment to Defendants-Appellees, Board of Regents for Tulsa Community College ("TCC"), Dean Van Trease, William Sutterfield, Gary Crooms, and Pat Fisher (collectively "Appellee"), on her Title VII, Equal Pay Act, and § 1983 claims. TCC employed Lewis from 1989 to July 1998, when it terminated her employment. Lewis alleged sex discrimination resulting in disparate treatment with respect to her pay and working conditions, as well as retaliatory

discharge for her efforts to secure equal pay. The magistrate judge recommended summary judgment for Appellee on all of Lewis's claims, and the district court adopted the magistrate judge's findings and recommendation. On appeal, Lewis challenges that decision by the district court, as well as other evidentiary determinations it made. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

### BACKGROUND

The parties are familiar with the facts, so we will only sketch them generally here, and note the relevant pieces of evidence when discussing the merits of each claim. From 1989 until early 1997, Lewis worked as a Clerk in the Veteran Services department at TCC with Douglas Willis, who worked as an Assistant. With respect to all of her discrimination claims, Lewis compares her work responsibilities and pay with those of Willis. Lewis earned less money than Willis did and alleges that she shouldered additional duties beyond that of a Clerk. On several occasions, Lewis made internal complaints to her supervisor and the director of personnel about these discrepancies in pay and responsibility.

In January 1997, Lewis was reclassified as an Assistant but her salary remained unchanged. At the time of this promotion, **\*164** she was earning more as a Clerk than the entry level salary for an Assistant, but still less than Willis. In December 1997 and January 1998, Lewis renewed her complaints about the salary discrepancy, but to no avail.

In addition to her Veteran Services duties, Lewis performed some financial aid tasks, for which she received overtime pay. The most significant financial aid task she performed was processing student financial aid petitions, which entailed ordering academic transcripts and preparing cover sheets for the petitions. On the morning of July 7, 1998, Lewis's supervisor, Jean Shore, informed her employees that overtime pay would no longer be permitted in that department. (App. at 269.) Lewis told Shore that she could not prepare the financial aid petitions without overtime compensation, and Shore responded that if Lewis could not finish the petitions during the regular work day, she should return them to Shore. (*Id.* at 269-70.) Lewis told Shore that she found it unfair that Willis received more money for doing less work, and that maybe it was time Lewis hired an attorney to help her get equal pay. (*Id.* at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Fed.Appx. 160                                                                 Page 5
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

270.)

Later that morning, Lewis returned a "pretty heavy" (*id.* at 268) stack of petitions to Shore, placed in alternating stacks depending on the work that remained to be done on them. (*Id.* at 265.) The stacks did not contain labels or notes indicating what stage of progress they were in, but Lewis attempted to explain to Shore what the different stacks were. (*Id.* at 265, 267.) Included in this stack were petitions that needed to be prepared prior to their review at the academic appeals committee meeting on Thursday, July 9. (*Id.* at 265.) Lewis had provided Shore with procedures for the processing of petitions in February 1998 (*id.* at 276), but did not explicitly inform Shore that morning of which petitions still needed to have transcripts ordered or cover sheets prepared prior to the committee meeting on Thursday. (*Id.* at 268.) Lewis and Shore's exchange regarding the processing of the returned petitions was heated, and Shore referred to Lewis as unprofessional and "unbecoming" during this conversation. (*Id.* at 274.)

**\*\*2** Around 4:30 p.m. that afternoon, Lewis returned to Shore's office. During that conversation, Shore discovered that transcripts still had to be ordered on several of the petitions, and accused Lewis of "sabotag[ing]" students. (*Id.* at 275.) Shore recommended to Gary Crooms, an executive vice president, that Lewis be terminated for insubordination connected with these events on July 7, 1998, specifically the manner in which Lewis handled transferring the files to her. On July 10, 1998, Lewis was terminated for "insubordination" and "neglect of [her] job duties." (*Id.* at 662.) Lewis filed discrimination claims with the EEOC on September 4, 1998.

### DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1313 (10th Cir.1999). Summary judgment is appropriate if the pleadings, affidavits and other evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma,* 165 F.3d 1321, 1326 (10th Cir.1999). "Summary judgment is

appropriate if the evidence is such that no reasonable jury could return a verdict for the nonmoving party." **\*165**Bullington, 186 F.3d at 1313 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### I. *Continuing Violation*

**[1][2][3]** We begin by establishing the relevant time frame for our inquiry. Lewis attempts to invoke a continuing violation analysis with respect to her Title VII claims for disparate treatment in working conditions and pay. To establish a continuing violation, a plaintiff must show that at least one discriminatory act happened within the applicable filing period, which in Oklahoma is 300 days for Title VII claims. *See Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1414-15 (10th Cir.1993). Upon such a showing, this court engages in a three-factor inquiry to determine whether the acts prior to the limitations period constitute a continuing violation that includes the act or acts within the filing period. *See id.* at 1415. In examining the acts prior to the filing period, we consider (1) subject matter-whether the violations constitute the same type of discrimination; (2) frequency; and (3) permanence-"whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* Because "[t]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated," *id.* at 1415 n. 6, "a continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred." *Bullington,* 186 F.3d at 1311.

**\*\*3** In this case, Lewis filed her Title VII complaint with the EEOC on September 4, 1998. Therefore, if we find that she can not establish a continuing violation, she will be allowed to recover only for acts on or after November 8, 1997, which is 300 days prior to her filing date. Construing the facts in favor of Lewis, we assume that she can meet the first two prongs of the continuing violation inquiry. Because her claim clearly fails the permanence prong, however, we believe that she has not demonstrated a continuing violation, thereby limiting her claims to acts that occurred within the 300 day filing period.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Fed.Appx. 160
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

The facts demonstrate that Lewis certainly was aware of the discrimination in working conditions and pay that she alleges in her complaint. In her motion below opposing summary judgment, she stated as a material fact that in 1992 and 1994 she "specifically complained of the disparity in title, pay, responsibility, and work performed between herself and Willis to her supervisor." (App. at 191.) Further, it is undisputed that in October of 1996, Lewis complained in writing to the personnel director, Pat Fisher, of the disparity in work actually performed by Willis and herself, and about the "disparity in her title, pay and accountability." (*Id.* at 179-80.)

Lewis argues, however, that no one prong of the *Martin* test is dispositive, and that in *Martin* we allowed the plaintiff's claim to survive summary judgment even though the third factor of permanence proved to be "more difficult" for the plaintiff. 3 F.3d at 1416. Therefore, Lewis contends that considering all three factors together, she has shown that there is a genuine issue of material fact of whether TCC's course of conduct constitutes a continuing violation.

On the facts of this case, however, Lewis's argument does not carry the day. Since the *Martin* decision, courts have focused*166 on the permanence prong as the critical factor in determining whether the series of acts constitutes a continuing violation. As noted above, the *Bullington* court stressed that a claim "will likely fail" if the plaintiff knew, or should have known, that she was being discriminated against at the time of the discrimination. 186 F.3d at 1311. Indeed, that decision stated that the district court's "emphasis on the third, 'permanence' factor was not inappropriate considering ... the underlying purpose of the continuing violation doctrine." *Id.* at 1311 n. 4.[FN1] Here, Lewis complained on three separate occasions, one of which was in writing, of the details of the alleged discrimination, demonstrating that she was aware of the need to assert her rights, yet failed to file a complaint with the EEOC until September 1998. Therefore, she can not establish that the events prior to November 8, 1997, are part of a continuing violation.

FN1. See also *Bennett v. Quark, Inc., 258 F.3d 1220, 1227 (10th Cir.2001)* ("The district court properly concluded that the third factor-the permanence of the act-was fatal to plaintiff's claim."); *Robbins v. Jefferson County Sch. Dist. R 1, 186 F.3d 1253, 1258 (10th Cir.1999)* (declining to evaluate the first two factors and holding "[s]ince [the appellant] failed to satisfy the permanence requirement, she has not shown the existence of a continuing violation.").

## II. *Title VII Claims*

### A. *Disparate Treatment*

On appeal, Lewis asserts that she was disparately treated with respect to her (1) working conditions; (2) pay; [FN2] and (3) termination. To succeed on these claims, Lewis must show that TCC acted with discriminatory intent or motive. *See Bullington,* 186 F.3d at 1315. Under the *McDonnell Douglas* [FN3] framework, to establish a prima facie case, Lewis must show (1) she is member of a protected group, (2) she suffered an adverse employment action, and (3) similarly situated employees were treated differently. *See Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir.1998).* Upon such a showing, the burden of production, but not persuasion, shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason" for the employment action. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).* If the employer offers such a nondiscriminatory reason, then the presumption of discrimination disappears, and the plaintiff bears the burden to show that the employer's proffered legitimate reasons were "not its true reasons, but were a pretext." *Id.* at 142-43, 120 S.Ct. 2097. A "'prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability.' " *Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir.2000)* (quoting *Reeves, 530 U.S. at 149, 120 S.Ct. 2097).*

FN2. Lewis also brings a claim under the Equal Pay Act, which we discuss *infra* at III.

FN3. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).*

### 1. *Working Conditions*

**\*\*4** [4] Lewis alleges that she received disparate treatment with regard to work responsibilities and assignments, hours, and discipline. Taking the last allegation first, other than the events surrounding her dismissal, Lewis does not allege any facts to show that she was disciplined at all. She asserts many

complaints about TCC's application of its discipline policy, yet they all relate to TCC's failure to discipline Willis for his alleged laziness, as opposed to improperly disciplining Lewis. The failure to discipline Willis is immaterial in light of *167 Lewis's failure to show that she was disciplined.

Lewis's claim that she shouldered additional work responsibilities compared to Willis is similarly unavailing. Assuming, without deciding, that Lewis and Willis were similarly situated for the relevant limitations period, Lewis has failed to show that she was subject to an "adverse employment action" that would satisfy her prima facie case. The Supreme Court has defined an "adverse employment action" as one that "constitutes a *significant change* in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)* (emphasis added).

This court has held that, although it takes a "case-by-case approach" and liberally defines the phrase "adverse employment action," it will not consider "a mere inconvenience or an alteration of job responsibilities" to be an adverse employment action. *Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir.1998)* (internal quotation marks omitted). In this case, Shore assigned Lewis additional responsibilities associated with the Financial Aid department that Lewis previously had volunteered to help out with and for which she received overtime pay. (App. at 181.) Such a modification and addition of job responsibilities do not rise to the level of an adverse employment action. Rather, they constituted reasonable additional job requirements, and Lewis was instructed that if she could not perform all of her tasks within the regular working day, she should return the work to Shore.[FN4] Accordingly, she has not demonstrated that she suffered an adverse employment action with respect to her working conditions.

FN4. Thus, Lewis was not asked to work overtime, nor was she asked to do work for which she would not be compensated for her additional hours of work. Instead, she was to receive regular pay for a regular day of work.

2. *Pay*

[5] The district court assumed, without deciding, that Lewis and Willis were similarly situated for the relevant time period after November 8, 1997, and that Lewis had therefore established her prima facie case for disparate pay. However, the court found that Lewis had not carried her burden of showing that TCC's proffered reasons for the difference in pay were unworthy of belief, and therefore granted summary judgment to Appellee on this claim.

As stated earlier, upon Lewis's promotion to an Assistant, TCC did not change her salary, which was higher than the salary for an entry level Assistant but less than Willis's salary. TCC offered the following reasons for the disparity in pay upon her promotion: (1) Willis was hired as an Assistant in December 1989, and that position had a higher entry level of pay than the Clerk position Lewis occupied until her promotion in 1997 and (2) TCC has a practice of not increasing an employee's pay upon promotion to a new position, if they are currently earning a higher wage than the entry level wage for the new position. Because Lewis was already earning $8.75 an hour, she did not receive an increase in pay, as the starting salary for entry level Assistants was $8.02.

**5 In this case, Lewis has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in TCC's proffered reasons to render them unworthy of credence. *Bullington, 186 F.3d at 1317* (internal quotation marks omitted). Lewis advances*168 two arguments that TCC's proffered reason of not raising salaries upon promotion is pretext. First, Lewis states that this reason is inconsistent with TCC's written policy.[FN5] Second, she claims that the district court disregarded "critical evidence" that Bob Tally, her supervisor at the time of her promotion, believed her salary would be equalized with Willis's upon her promotion.

FN5. Lewis points to the following statement in TCC's Policy Manual to support her argument:
When a classified employee is assigned to a position with a higher classification, he shall be placed on the new salary classification at a level which provides for salary increase that is not less than the next higher step in his present classification.
(App. at 895.)

Lewis is correct that one way in which an employee may show pretext is "with evidence that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Fed.Appx. 160
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

Page 8

defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Kendrick,* 220 F.3d at 1230. The *Kendrick* opinion, however, included an important caveat to this basis for showing pretext. This court has noted, however, that where "the alleged procedural irregularity disadvantaged all potential applicants" for a promotion, rather than just members of a protected class, the fact that a company failed to follow its own procedures "does not suggest either that the defendant's proffered reasons for its employment decisions were pretextual or that the defendant was motivated by illegal discrimination."

*Id.* at 1230 n. 9 (quoting *Randle v. City of Aurora,* 69 F.3d 441, 455 n. 20 (10th Cir.1995)).

In this case, TCC presented evidence to the district court that it has been its *actual* practice for the past ten years not to raise an employee's salary upon a change in position unless he or she is currently making less than the entry level salary of the new position, and that adherence to the written policy is impossible, as TCC does not maintain different salary "steps" within each classified position. Further, TCC presented evidence of twelve other employees, five women and seven men, who also did not have their salary raised upon promotion because their salary at the time of promotion was higher than the entry level salary for their new position.

This evidence falls within the *Kendrick* exception to the showing of pretext based on a deviation from written policy. The procedural irregularity disadvantaged all twelve employees promoted, not just a protected class. Therefore, TCC's deviation from its written policy does not suggest that its proffered reasons for failing to raise Lewis's pay were pretextual.[FN6]

> FN6. We note the differences between this case and *Goodwin v. Gen. Motors Corp.,* 275 F.3d 1005 (10th Cir.2002). First, the procedural postures of the cases differ because the district court in *Goodwin* refused to recognize the plaintiff's lower pay as an element of her prima facie case of pay discrimination, claiming that such a claim was time-barred. Here, however, the district court found that Lewis had established her prima facie case, but had failed to show pretext. *Compare Goodwin,* 275 F.3d at 1009, *with* Magistrate's Recommendations at 8. The cases also differ

factually. In *Goodwin,* General Motors stated that "there are no set rates for employees entering specific positions" and that "[s]alaries are not dictated by an employee's seniority with the company," 275 F.3d at 1008, factors that in this case the defendant asserted *do* bear on an employee's salary in a given position.

We find Lewis's claim regarding Tally's testimony [FN7] to be without merit. His deposition is far from clear that Lewis's salary *169 should have been equalized, nor does it indicate that failure to increase her salary would represent a departure from TCC's established practice. In fact, his testimony reflects that he was aware of the effect that her seniority level and current pay could have on the determination of her new salary. Therefore, we conclude that Lewis has not demonstrated that TCC's proffered reason for the pay disparity is pretextual.

> FN7. The relevant portion of Tally's testimony is as follows:
> Q: Okay. That you're aware, was [Lewis's] pay ever-made equal to [Willis's]?
> A: I thought it had, but now honestly, I don't know whether it was or not. *Again, part of that has to do with Leslie's seniority. She had already worked up, based on her seniority, to a salary which was greater than entry level for this new position....* I had understood that there was a formula in personnel that they would go through to try to equalize something, but again, *[Lewis] was already far and above the entry level for this position.*
> (App. at 242-43) (emphasis added).

### 3. Termination

**6 Lewis failed to argue before the district court that she was discharged because she was a member of a protected class, advancing only her retaliation claims in connection with her termination. On appeal, however, Lewis claims that her termination constitutes disparate treatment in violation of Title VII. Because Lewis did not make this argument below, and offers no reason for us to depart from our standard practice, we do not consider it.[FN8] *See Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992) (articulating general rule that a federal appellate court does not consider an argument that party failed to raise below).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN8. As discussed *infra,* even if this argument had not been advanced, Lewis failed to show that TCC's proffered reason for her termination was pretextual. Therefore, Lewis would not have been able to survive summary judgment on a disparate treatment claim with respect to her termination.

### B. *Retaliation*

Finally, Lewis contends that she was terminated because she threatened to obtain an attorney to help her obtain equal pay. Before analyzing the merits of this claim, we pause to address some of the district court's related evidentiary determinations that Lewis challenges on appeal.

### 1. *Evidentiary Issues*

This court reviews a district court's determination of whether to admit or exclude evidence for abuse of discretion. *See McCue v. Kansas Dep't of Human Res.,* 165 F.3d 784, 788 (10th Cir.1999).

Lewis contends that the district court abused its discretion in admitting Crooms's affidavit, wherein he states that his conversation with Shore during which she recommended Lewis's termination took place on Wednesday, July 8, 1998. Lewis argues that this affidavit creates a sham fact issue because it conflicts with Crooms's earlier deposition testimony, wherein he stated that his conversation with Shore may have taken place on Tuesday, July 7. Therefore, according to Lewis, the district court should not have admitted it into evidence. We find that the district court did not abuse its discretion in admitting Crooms's affidavit because his deposition testimony reflects confusion as to the actual day of his conversation.[FN9] Further, **\*170** the substance of Crooms's conversation with Shore reflects her dissatisfaction with the manner in which Lewis informed her of the remaining work on the petitions, suggesting that Shore did not speak with Crooms until *after* her conversation with Lewis on Tuesday evening, and consistent with Crooms's affidavit that the conversation took place on Wednesday.

FN9. The relevant portion of the deposition follows:
Q: Okay. When did [Shore] first approach you with any problem she was experiencing with [Lewis] during the week of July 6th

through 10th?
A. [Crooms] *I don't know the exact day.* She gave me a call and told me that she had a serious problem with Leslie Lewis' insubordination, not doing some files and jeopardizing 100 plus students' academic eligibility.
(App. at 1037 (emphasis added).)

Lewis also urges us to conclude that the district court abused its discretion in holding that her argument concerning the timing of the decision to terminate her was waived and without merit. In her objections to the magistrate's recommendations, Lewis argued for the first time that Shore made the decision to terminate her *prior* to the alleged discovery of the incomplete status of the petitions. We reject Lewis's argument that her objections to the magistrate's report presented additional facts, as opposed to raising new issues or arguments. Lewis's entire argument before the magistrate judge focused on the theory that her return of the unfinished petitions was not egregious enough to merit dismissal, not that Shore made the recommendation to terminate her prior to their conversation Tuesday night.[FN10] Because issues not raised before the magistrate judge are waived, *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996), the district court did not abuse its discretion in holding that Lewis had waived her timing argument.

FN10. In fact, Lewis admitted in her motion before the magistrate opposing summary judgment that "*[f]ollowing the events of July 7, 1998,* Shore recommended that plaintiff's employment with TCC be terminated." (App. at 188) (emphasis added).

### 2. *Merits*

**\*\*7** **[6][7][8]** To prevail on her retaliatory discharge claim, Lewis must establish that the decision to terminate her resulted from retaliatory animus. *Baty v. Willamette Indus., Inc.,* 172 F.3d 1232, 1243 (10th Cir.1999). In the absence of direct evidence of retaliatory animus, plaintiffs may make such a showing through the burden shifting structure established in *McDonnell Douglas. See Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 549-50 (10th Cir.1999). To establish a prima facie case, Lewis must show: (1) she engaged in protected activity; (2) she suffered adverse action by the employer subsequent or contemporaneous with such activity; and (3) a causal connection existed between the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employee's activity and the employer's adverse action. *See* Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir.1997).

[9] In viewing the evidence in the light most favorable to Lewis, the district court found that she had established her prima facie case. We will assume, without deciding, that her statement on July 7, 1998, that it was time she get an attorney to help her obtain equal pay represents an "unofficial assertion of rights through complaints at work," which this court has held to constitute protected activity. *See* Love v. Re/Max of Am., Inc., 738 F.2d 383, 387 (10th Cir.1984). On July 10, TCC terminated Lewis's employment, satisfying the requirement of an adverse employment action. Because the termination happened within days of Lewis's statement that she should get a lawyer, the district court assumed arguendo that Lewis had shown a causal connection between the events, sufficient to establish her prima facie case. This court has stated that a termination "very closely connected in time to the protected conduct" can satisfy this burden standing alone. *See* Conner, 121 F.3d at 1395.

Once a plaintiff has established her prima facie case, the burden of production ***171** then shifts to the employer to show a legitimate reason for the plaintiff's termination. *See* id. at 1394. In this case, Shore stated her main reason [FN11] for recommending Lewis's termination was that Lewis had jeopardized students' financial aid appeals by returning the petitions without informing her of which ones needed immediate attention.

FN11. Shore's other stated reason was that Lewis arrived late for work on the morning of July 8, 1998. Lewis does not address this reason in her brief, however, so we have focused only on the return of the financial aid petitions.

In evaluating whether an employer's proffered reasons are pretextual, the relevant inquiry is not whether those reasons are "wise, fair or correct" but whether "[the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington,* 186 F.3d at 1318. Lewis offers the following arguments for why TCC's reasons for her termination are pretextual: (1) she presented the incomplete petitions to Shore in an orderly fashion with an explanation of the different stacks; (2) no harm actually came of the events of July 7 because all of the petitions were completed prior to the committee meeting on July 9; (3) Shore informed Crooms of Lewis's threats to retain a lawyer; and, she states "more importantly" to her argument (Aplt Br. at 39), (4) Shore made her recommendation to terminate Lewis *prior* to events on the evening of July 7, 1998. As discussed above, Lewis waived her timing argument by neglecting to raise it before the magistrate, and it fails in any event in light of Crooms's affidavit.

****8** In her deposition, Lewis stated that when she presented the files to Shore, she did not inform her of the immediate action that had to be taken on some of the petitions by the meeting on Thursday: that transcripts had to be ordered and cover sheets prepared. Lewis also testified that when she told Shore Tuesday evening that transcripts still had to be ordered for numerous petitions, Lewis found Shore to be "upset" and "confused" by her actions. (App. at 275.) [FN12] By her own admission, Lewis understood that Shore was unaware that transcripts needed to be ordered for the petitions until Lewis informed her of this Tuesday evening. (*Id.* at 276.) [FN13] This evidence reflects that Shore was upset by Lewis's actions, regardless of whether Lewis thought that she had explained clearly what work remained to be done on the petitions. As this court explained in *Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204 (10th Cir.1999), "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance." *Id.* at 1209. Similarly, it is irrelevant that no harm actually came of the delay in processing petitions, if on Tuesday evening and the following day Shore believed that the students' applications would be jeopardized. Lewis has not produced sufficient evidence from which a rational juror could conclude that Shore did not "honestly believe" that students' petitions were jeopardized and that she did not act in good faith on those beliefs. Therefore, both Lewis's first and second reasons fail to show that TCC's reason for terminating her was pretextual.

FN12. Lewis stated that Shore told her "I can't believe you're just now telling me that the transcripts need to be ordered," and that Shore said "I can't believe you'd sabotage students and you're just now telling me this." (App. at 275.)

FN13. Lewis also testified that she was "surprised" that no one had come to her during the day on Tuesday to ask her for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

help on the petitions, and that the petitions were still on Shore's desk when she returned that evening. (App. at 276.)

*172 Lastly, Lewis places little weight on her argument that Shore's comment to Crooms regarding Lewis's threat to sue TCC somehow demonstrates pretext. We, like the district court, assume arguendo that Lewis demonstrated a causal connection between Lewis's comment to Shore about retaining an attorney and Shore's recommendation to terminate her because of their temporal proximity in establishing her prima facie case. However, Shore's comment to Crooms does not show that Shore's reason for recommending Lewis's termination is unworthy of belief. Given Shore's, Crooms's, and Lewis's account of the week's events, Lewis has failed to demonstrate that TCC's offered reason for her termination was pretextual. Accordingly, the district court did not err in granting summary judgment to TCC on Lewis's retaliation claim.

### III. *Equal Pay Act*

[10][11] Lewis contends that she performed substantially the same work as Willis, yet was paid less than Willis on account of her gender, thereby constituting a violation of the Equal Pay Act, 29 U.S.C. § 206(d). To establish a prima facie case, Lewis must show (1) she was performing work which was "substantially equal" to that of male employees considering skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where work was performed were basically the same; and (3) male employees were paid more under the circumstances. *Sprague v. Thorn Ams., Inc.,* 129 F.3d 1355, 1364 (10th Cir.1997).

**9 Like the district court, we find that Lewis failed to establish her prima facie case under the statute for her time prior to becoming a Veteran Services Assistant because she has not demonstrated that she performed work "substantially equal" to that of Willis. Lewis argues that the work she performed was substantially equal because she trained Willis upon TCC hiring him, she often had to correct his work product for errors, and she was held equally accountable for those errors. However, all of these responsibilities pertain to the processing of paperwork, which falls under Lewis's primary function as a Clerk, whereas Willis's primary function as an Assistant was to counsel students. Although Lewis participated in the selection and direction of work study students, a responsibility of

the Assistant, she has not presented sufficient evidence to demonstrate that performing this task meant that her work was substantially equal to that of an Assistant. As we found in *Sprague,* performing only "some functions" of another position is insufficient to support Lewis's claim that she "occupied substantially the same position or performed substantially the same tasks" as her co-workers. *Id.* at 1364 (internal quotation marks omitted).

Assuming, as the district court did, that Lewis can establish her prima face case with respect to her employment as an Assistant, the burden then shifts to TCC to show that the wage disparity existed for one of four reasons: "(1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; [or] (4) a disparity based on any factor other than sex." *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 409 (10th Cir.1993). Unlike in Title VII cases, the burden of persuasion is on the employer to show one of these reasons, and if it fails to do so, the plaintiff will prevail on her prima facie case. *See Sprague,* 129 F.3d at 1364.

As discussed in the Title VII section, TCC asserted that the pay disparity between Lewis and Willis resulted from the following factors: (1) Willis was hired in the position several years prior to Lewis's promotion and (2) TCC has a policy of not *173 increasing employees' salaries upon promotion if they are already higher than the entry level salary for the new position. Because TCC has carried its burden of showing that the pay disparity resulted both from seniority in the position and a factor other than sex (its entry level salary policy), it was entitled to summary judgment on Lewis's EPA claim.

### IV. *§ 1983 Claims*

[12][13] Lastly, Lewis contends that her termination deprived her of a constitutionally protected property right, thereby violating 42 U.S.C. § 1983. Both parties agree that Lewis was employed without a written contract. Oklahoma follows an at-will employment doctrine, and thus, in the absence of an express or implied contract to the contrary, an employer may terminate an employee at any time "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." *Black v. Baker Oil Tools, Inc.,* 107 F.3d 1457, 1461 (10th Cir.1997) (interpreting Oklahoma state law) (internal quotation marks omitted).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Fed.Appx. 160
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))
**(Cite as: 42 Fed.Appx. 160)**

Page 12

**\*\*10** Lewis contends that an implied contract existed based on TCC's employee handbook. Specifically, she claims that TCC's Affirmative Action Plan ("AAP") created a legitimate entitlement to her continued employment and prevented her from being terminated for discriminatory reasons. However, she has failed to demonstrate that she was terminated because of gender discrimination in violation of Title VII, and therefore, her argument that TCC violated its AAP and deprived her of a protected property interest when it terminated her fails as well. In addition, she has failed to demonstrate that an implied employment contract existed between herself and TCC based on the employee handbook because she did not supply any separate consideration for her claimed right to job security under the handbook. *See Black,* 107 F.3d at 1464 ("Based on our finding of no sufficient consideration, we find that no contract was created by the [manual]."). Therefore, the district court properly granted summary judgment to TCC on Lewis's § 1983 claim.


## CONCLUSION

We AFFIRM the district court's decision with respect to all claims raised. <u>FN14</u>

> <u>FN14.</u> Because we affirm the district court's grant of summary judgment with respect to all claims, we also affirm that court's determination that Lewis's motions in limine were moot.

C.A.10 (Okla.),2002.
Lewis v. Oklahoma ex rel. Bd. of Regents for Tulsa Community College
42 Fed.Appx. 160, 2002 WL 1316810 (C.A.10 (Okla.))

Briefs and Other Related Documents (Back to top)

• 01-5003 (Docket) (Jan. 02, 2001)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.