# EXHIBIT H

Westlaw.

Slip Copy                                                                                 Page 1
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Traylor v. JenksW.D.Okla.,2006.Only the Westlaw
citation is currently available.
United States District Court,W.D. Oklahoma.
Lee TRAYLOR, Plaintiff,
v.
Terry JENKS, Defendant.
**No. CIV-05-1167-R.**

Sept. 21, 2006.

Lee Traylor, Granite, OK, pro se.

*ORDER*
DAVID L. RUSSELL, District Judge.
**\*1** Before the Court is the Report and
Recommendation of United States Magistrate Judge
Bana Roberts entered August 30, 2006 and Plaintiff's
Objection to the Report and Recommendation filed
September 15, 2006. The Court has reviewed the
Report and Recommendation *de novo* in light of
Plaintiff's Objection, pursuant to 28 U.S.C. §
636(b)(1)(B). Plaintiff in his Objection argues that it
was not until 2004 or 2005 that he allegedly
discovered the *legal* basis for his *ex post facto* claim,
but a civil rights action accrues, for purposes of the
statute of limitations, when the "*facts* that would
support a cause of action are or should be apparent."
*Fratus v. Deland,* 49 F.3d 673, 675 (10th Cir.1995)
(internal quotation and citations omitted) (emphasis
added). The Court agrees with the Magistrate Judge
that Plaintiff was aware of the facts that formed the
basis for his *ex post facto* and due process claims in
1999 or, in any event, no later than 2000, when
another parole hearing did not occur. To the extent
Plaintiff is now arguing that the Oklahoma Truth in
Sentencing Act violates the Ex Post Facto Clause
because it changes a life sentence from 45 years to 60
years, see Objection at pp. 2-5, this argument or
claim was not raised before the Magistrate Judge and
is, therefore, deemed waived. *See United States v.
Garfinkle,* 261 F.3d 1030, 1031 (10th Cir.2001)
(issues not raised until objections to Magistrate
Judge's report are deemed waived); *Marshall v.
Chater,* 73 F.3d 1421, 1426 (10th Cir.1996) (same);
*Shepard v. Sullivan,* 65 Fed. Appx. 677, 682 n. 6
(10th Cir. Mar. 27, 2003) (No. 02-1198).

The Court fully concurs in the findings and

conclusions of the Magistrate Judge, ADOPTS her
Report and Recommendation [Doc. No. 14] in its
entirety, and summarily DISMISSES Plaintiff's
Complaint as barred by the applicable statute of
limitations and alternatively for failure to state a
claim on which relief can be granted. This dismissal
shall count as one strike pursuant to 28 U.S.C. §
1915(g) following Plaintiff's exhaustion or waiver of
his appeal rights.

**It is so ordered this 21st day of September, 2006.**
BANA ROBERTS, Magistrate Judge.

*REPORT AND RECOMMENDATION*

Plaintiff, appearing pro se, brings this action pursuant
to 42 U.S.C. § 1983, claiming that the retroactive
application of an amended Oklahoma statute to the
rescheduling of his parole hearings violated the Ex
Post Facto Clause of the United States Constitution.
The matter has been referred to the undersigned
Magistrate Judge for initial proceedings consistent
with 28 U.S.C. § 636(b)(1)(B). An initial review of
the complaint has been conducted as required by 28
U.S.C. § 1915A(a). *See also* 28 U.S.C. § §
1915(e)(2)(B). Based on that review, the undersigned
concludes that Plaintiff's claims are barred by the
relevant statute of limitations, and alternatively, that
Plaintiff fails to state a claim upon which relief may
be granted. It is therefore recommended that the
complaint be dismissed upon filing and that the
dismissal count as a prior occasion pursuant to 28
U.S.C. § 1915(g).

*Background*

**\*2** Plaintiff alleges that he was sentenced in 1962 to a
life sentence, [FN1] that he was granted parole in
December 1973, that in 1979 he was convicted in a
separate matter and sentenced to a two-year term of
imprisonment, and that in May of 1980, he was
rebilled to serve the remainder of his life sentence.
Plaintiff's Brief In Support of Complaint (Doc. No. 2)
at 7. According to Plaintiff, before he was paroled
and even after he began serving the rebilled life
sentence, he was being considered for parole on an
annual basis until parole procedures were changed by
the Oklahoma Truth in Sentencing Act [FN2] ("Act").
*Id.* In a single claim in his complaint Plaintiff alleges
that after the Act went into effect, instead of annual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 2
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
**(Cite as: Slip Copy)**

parole hearings, his hearings were held every three years-in 1999, 2002, and 2005-with the next hearing scheduled for 2008. Complaint at 3 (unpaginated). Petitioner asserts that because his parole hearings are no longer scheduled on an annual basis, Defendants have violated his rights under the Ex Post Facto Clause, Article 1 § 10 of the United States Constitution, and state law, specifically "the Forgotten Man Act of 1971," Okla. Stat. tit. 57, § 332.7 (1971). Complaint at 3. Plaintiff names Terry Jenks, Director of the Oklahoma Pardon and Parole Board, and the Oklahoma Pardon and Parole Board (Board) as Defendants. Plaintiff seeks declaratory relief, prospective injunctive relief, clemency,[FN3] and "fee awards for emotional distress." Complaint at 5.

> FN1. The Oklahoma Department of Corrections official website indicates that on March 30, 1962, Plaintiff was convicted of first degree rape in Case No. CRF-62-2147, Jackson County District Court. *See* Oklahoma Department of Corrections, Offender Information, at <http://www.doc.state.ok.us> (accessed August 29, 2006).

> FN2. *See* House Bill 1213, ch. 133, § 1, 1 Okla. Sess. Laws (1997); *see also* House Bill 1009X, ch.5, § 452, Okla. Sess. Laws (1999) (repealing sentencing provisions of the Act).

> FN3. Plaintiff's request for clemency implies a challenge to the fact or duration of his incarceration, rather than a claim for relief under § 1983. *See Reid v. McKune,* 298 F.3d 946, 953 (10th Cir.2002) (" '[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.' ") (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973)). Therefore, such requested relief is not available in this § 1983 action.

*Discussion*

I. *Standard for Initial Screening*

Pursuant to 28 U.S.C. § 1915A(a), the Court is under an obligation to review, as soon as practicable, a complaint filed by a prisoner seeking redress from a governmental entity, officer or employee of a governmental entity. The Court must "identify cognizable claims" and dismiss the complaint, or portion thereof, which "is frivolous, malicious, fails to state a claim for which relief can be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see also* 28 U.S.C. § 1915(e)(2)(B)) (governing actions filed *in forma pauperis*) and requiring dismissal under identical grounds "at any time").

A district court may *sua sponte* dismiss a pro se complaint for failure to state a claim upon which relief may be granted. *See Thorman v. Bernalillo County Detention Center,* No. 00-2073, 2000 WL 1730890 (10th Cir. Nov. 22, 2000) (citing *McKinney v. State of Oklahoma Department of Human Services,* 925 F.2d 363, 365 (10th Cir.1991)).[FN4] To state a § 1983 claim, a plaintiff must "allege the violation of a right secured by the Constitution and law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). This Court must construe pleadings by a pro se party liberally, *see Haines v. Kerner,* 404 U.S. 519, 520 (1972), but the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir.1997). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kansas Dept. of Corrections,* 165 F.3d 803, 806 (10th Cir.1999). In determining whether dismissal is proper, the Court must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff. *Id.*

> FN4. Unpublished opinions are cited for their persuasive value in accordance with Tenth Circuit Rule 36.3.

II. *Statute of Limitations for § 1983 Actions*

**\*3** Upon review of Plaintiff's complaint, filed on October 5, 2005, the undersigned advised Plaintiff that his claim appeared to be time-barred by the applicable two year statute of limitations and ordered him to show cause why this action should not be dismissed as untimely.[FN5] Plaintiff responded to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
**(Cite as: Slip Copy)**

show cause order, claiming that the statute of limitations on the claim he raised in his complaint did not begin to run until he was considered for parole in 2005 and a reconsideration date of March 2008 was set. Plaintiff's Answer to Court Order [Doc. No. 13].

> FN5. In screening a complaint, the Court may *sua sponte* consider the statute of limitations if the defense is obvious from the face of the complaint. *See Fratus v. Deland,* 49 F.3d 673, 674-75 (10th Cir.1995).

The period of limitations for a § 1983 action is governed by the forum state's statute for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 276-80 (1985) (holding that the statute of limitations for § 1983 is based upon the applicable state law limitations for a private tort action). Thus, in Oklahoma, the limitations period for § 1983 actions is two years. *See* Okla. Stat. tit. 12, § 95(3); *see also Meade v. Grubbs,* 841 F.2d 1512, 1522 (10th Cir.1988).

Although the length of the limitations period is determined by reference to the law of the forum state, accrual of the cause of action is determined by federal law. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir.1995) ("While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims."). "Since the injury in a § 1983 case is the violation of a constitutional right ... such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.' " *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir.1998)(quoting with approval *Lawshe v. Simpson,* 16 F.3d 1475, 1478 (7th Cir.1994)); *see also Fratus v. DeLand,* 49 F.3d at 675 ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.' ") (citations omitted). The Court must therefore identify the constitutional violation and locate it in time. *Smith v. City of Enid,* 149 F.3d at 1154.

Plaintiff admits that he appeared annually on the parole docket until he was considered for and denied parole in 1999, after which his next hearing was scheduled for 2002. Complaint at 3. According to Plaintiff, following a denial in 2002, his next hearing was scheduled and held in 2005, and he is now scheduled for a hearing in 2008. *Id.* Plaintiff has demonstrated by his own statements that after parole was denied in 1999, he was made aware that he would not be reconsidered for parole for three years. Complaint 3. Thus, Plaintiff was aware of the alleged

constitutional violation when, following the 1999 denial, his next parole hearing was scheduled for 2002, or at the latest in 2000, when he was not provided an annual parole hearing. It is therefore apparent that Plaintiff's claim accrued no later than 2000, and that Plaintiff's complaint filed in October of 2005 was not filed within two years of the accrual of his claim.

*4 In response to the show cause order, Plaintiff contends that "this action is about the board's decision of 2005, when Plaintiff was denied and rescheduled march (sic) 2008." Answer to Court Order at 2; *see also* Exhibit to Complaint at 2. He asserts that his cause of action did not accrue until after the Board's March 2005 decision to set his next parole hearing for March 2008. Plaintiff's Answer to Court Order at 2. According to Plaintiff, the Board's action amounts to an ex post facto violation "each time Plaintiff has been considered and scheduled to be reconsidered. This is the time the Statute of Limitations is set into motion...." *Id.* at 3. For the reasons discussed hereafter, the undersigned finds that Plaintiff has failed to demonstrate that his action should be considered timely filed.

The Eleventh Circuit rejected a virtually identical argument in a state prisoner's § 1983 challenge to a change in the Georgia parole board's policy regarding the frequency of parole review. *Brown v. Georgia Board of Pardons & Paroles,* 335 F.3d 1259 (11th Cir.2003). In *Brown,* a state prisoner asserted that the retroactive application of the new policy allowing parole reconsideration hearings to be set off for up to eight years instead of every three years amounted to an ex post facto violation. The record in *Brown* reflected that Mr. Brown was notified in 1995 that his next parole hearing would be scheduled for 2000 pursuant to the new policy. Following a hearing and denial in 2001, Brown's next hearing was set for 2007. Brown filed his § 1983 action in 2002, purporting to challenge the board's 2001 decision which set his next hearing off for six years. The district court held that Brown's § 1983 action was untimely because it was filed more than two years after the board changed its policy in 1995. On appeal, the Eleventh Circuit affirmed, rejecting the prisoner's argument that each application of the new policy constituted a distinct and separate harm. *Id.* at 1261. Rather, the Court held that the statute of limitations begins to run when the "facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard to his rights," and that Mr. Brown was made aware in 1995 that his parole reconsideration hearings were being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
(Cite as: Slip Copy)

held outside the maximum time mandated by board policy at the time of his conviction. The Court determined, therefore, that Plaintiff could have discovered the factual predicate for his claim when the board first applied the new policy to him retroactively. *Id.* Thus, the Court concluded that "[t]he successive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations." *Id.* 1261-62.

The Eleventh Circuit also rejected Mr. Brown's argument that the application of the new board policy amounted to a continuing violation, citing Eleventh Circuit precedent, *Lovett v. Ray*, 327 F.3d 1181 (11th Cir.2003). *Brown*, 335 F.3d at 1261. The Court in *Brown* noted that like Mr. Brown, Mr. Lovett challenged the Georgia parole board policy change in a § 1983 action filed more than two years after he was informed of his parole hearing date set in accordance with the new policy. *Id.* The Court in *Lovett* held that the continuing violation theory did not apply because the decision to set Lovett's parole hearing pursuant to the new policy was a "one time act with continued consequences" which did not extend the limitations period. *Brown*, 335 F.3d at 1261(quoting *Lovett v. Ray*, 327 F.3d at 1183).

*5 Similar to the Eleventh Circuit's reasoning in *Brown*, the Tenth Circuit's application of the continuing violation theory in other contexts, such as Title VII claims, "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 n. 6 (10th Cir.1993). Thus, the Tenth Circuit has held that even where the continuing violation doctrine is applicable, such claim fails "if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred." *Id.*

In *Smith v. Grubbs*, No. 01-5193, 42 Fed.Appx.370 (10th Cir. July 11, 2002), a habeas case factually similar to the instant action, the Tenth Circuit considered the timeliness of the petitioner's challenge to the application of Oklahoma's 1997 statutory changes in parole and early release standards. For purposes of calculating the relevant one-year period under 28 U.S.C. § 2244(d)(1)(D), the Circuit Court found the petitioner could have discovered the factual predicate of his claim in mid-1997, at the time of his first parole denial, and therefore, the calculation of the one-year period limitation period relating to

habeas petitions began from that date. *Id.* at 372. The Court specifically rejected the petitioner's argument that his rights were violated each successive time the state denied him parole, requiring recalculation of the one-year period from the date of each denial. *Id.*

In light of the Tenth Circuit's requirements for applying the continuing violation doctrine and the Circuit's specific findings in *Smith v. Grubbs, supra,* together with the persuasive Eleventh Circuit decisions, the undersigned concludes that Plaintiff's claim accrued and the limitations period began to run when Plaintiff either knew or should have been aware of the facts supporting his ex post facto claim, that is by 1999, when according to his own statements, his parole reconsideration had been set off for three years, or at the latest in 2000 when he was not granted an annual hearing. The undersigned finds therefore that the two year limitation period governing Plaintiff's § 1983 action against Defendants expired well before Plaintiff filed this action in 2005, and that Plaintiff has not demonstrated any reason for extending the limitation period applicable to his civil rights action. It is therefore recommended that the complaint be dismiss with prejudice as untimely. *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir.2001) (because no amendment would cure the defect, the district court properly dismissed the complaint with prejudice).

### III. *Plaintiff's Claims on the Merits*

Alternatively, even if the instant complaint were considered timely filed based on Plaintiff's theories, his claims should be dismissed under 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The undersigned initially notes that state agencies, as well as states, are entitled to Eleventh Amendment immunity. *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir.1983); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). The State of Oklahoma has not waived its Eleventh Amendment immunity. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir.1994). Furthermore, Congress did not abrogate the sovereign immunity of the states in enacting 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir.2002). This immunity applies regardless of the form of relief sought by Plaintiff. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir.1998) (any form of relief against state agency, even solely prospective injunctive relief, is barred). Thus, as a state agency, the Board is clearly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 5
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
**(Cite as: Slip Copy)**

immune from suit in this Court by virtue of the Eleventh Amendment to the United States Constitution. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir.2000) (holding that Eleventh Amendment bars claims for damages against entities that are arms or instrumentalities of a state); *Reid v. Oklahoma Pardon and Parole Board*, No. 02-6200, 2003 WL 21300343, at \*2 (10th Cir. June 6, 2003) (finding inmate's claims against the Oklahoma Pardon and Parole Board and DOC barred by the Eleventh Amendment).

\*6 However, as a state official, Defendant Jenks, the Director of the Board, may be sued in his official capacity for claims seeking prospective injunctive relief under § 1983. *See Will*, 491 U.S. at 71 n. 10; *ANR Pipeline Co.*, 150 F.3d at 1188 ("Under the *Ex parte Young* legal fiction, when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court."). Thus, to the extent Plaintiff is seeking prospective injunctive relief, his claim against Defendant Jenks in his official capacity is not barred by Eleventh Amendment immunity. *Thompson v. Colorado*, 278 F.3d 1020, 1024 (10th Cir.2001) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 73 (1996), and *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

Nonetheless, as with any claim under § 1983, Plaintiff's claim for equitable relief must demonstrate that he "has been deprived of a right secured by the Constitution and laws of the United States." *Martinez v. California*, 444 U.S. 277, 284 (1980) (citation and quotation omitted). As discussed below, the undersigned finds that Plaintiff's claims for equitable relief fail to demonstrate the violation of a right secured by the federal constitution or laws.

### A. Ex Post Facto Claim

As previously discussed, Plaintiff's claim is based on his allegation that "the Truth in Sentenc[ing] Act is an ex post facto law when applied to your plaintiff who had appeared before the parole board annually before the enactment of the [ ] Act." Plaintiff's Brief at 6-7. He claims that as a result of the application of the Act, his parole hearings were held every three years instead of annually.

The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished

occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244 (2000). However, the controlling inquiry is not whether the law is retroactive, but "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995). Because no mechanical formula exists for determination of whether a new law or regulation sufficiently increases punishment to be considered ex post facto, the Court must determine on a case by case basis whether the change " 'produces a sufficient risk' " of greater punishment. *Raymer v. Enright*, 113 F.3d 172, 174 (10th Cir.1997) (citation omitted).

In *Garner, supra*, a civil rights action filed by a Georgia state inmate pursuant to 42 U.S.C. § 1983, the Supreme Court examined whether the retroactive application of Georgia's amended parole law, which changed the frequency of required reconsideration hearings for inmates serving life sentences, violated the Ex Post Facto Clause. The Court in *Garner* noted that in *Morales*,[FN6] it had found no ex post facto violation because "not every retroactive procedural change creating a risk affecting an inmate's term or condition of confinement is prohibited." *Garner*, 529 U.S. at 250. The Court reiterated that the appropriate test is whether the amended rule creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* The Court took into account the Georgia Parole Board's broad discretion to determine whether an inmate should receive early release and how often to set an inmate's date for reconsideration, with eight years for the maximum. *Id.* at 253. The Georgia board's policies also permitted expedited parole reviews where there was a change in the inmate's circumstance or the board received new information warranting earlier review. *Id.* at 254. The Court held the inmate must show, as applied to his own sentence, that the amended law created a significant risk of increasing his punishment. *Id.* at 255. The Court then concluded that:

> FN6. In *Morales*, a federal habeas action pursuant to 28 U.S.C. § 2254, the Supreme Court found that a California statute which changed the frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one homicide did not violate the ex post

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                   Page 6
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
(Cite as: Slip Copy)

facto prohibition. The *Morales* Court identified three major factors shaping its conclusion. First, the amendment applied only to a class of prisoners (those convicted of more than one homicide) "for whom the likelihood of release on parole is quite remote." *Morales,* 514 U.S. at 511. Second, the amendment had no effect on the date of any prisoner's initial parole suitability hearing but affected "the timing only of subsequent hearings." *Id.* Further, a default provision required an annual hearing, subject to the Board's discretion to "defer the next hearing up to two years more depending on the circumstances." *Id.* at 512. Given these factors, the Court concluded that the statutory amendment created "only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes" and, therefore, did not violate the Ex Post Facto Clause. *Id.* at 514.

*7 [w]hen the rule does not by its own terms show a significant risk, the [prisoner challenging the retroactive application to the amendment] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.
*Id.* at 255.

In the instant case, the relevant statute, amended in 1998, provides in pertinent part:
Except as otherwise directed by the Pardon and Parole Board, any person who has been considered for parole and was denied parole or who has waived consideration shall not be reconsidered for parole:
(1) Within three (3) years of the denial or waiver, if the person was convicted of a violent crime as set forth in Section 571 of this title, and was eligible for consideration pursuant to paragraph 1 of subsection A of this section or subsection B of this section, unless the person is within one (1) year of discharge ....

Okla. Stat. tit. 57, § 332.7(D)(Supp.1998).

Applying the Supreme Court's analysis to the Petitioner's ex post facto claim, the undersigned finds Plaintiff has failed to show that the application of this statutory amendment created significant risk of increasing his punishment. As in *Morales,* Plaintiff does not allege that the amendment affected his

initial parole consideration; rather, he claims the change affected "the timing only of subsequent hearing." *Morales,* 514 U.S. at 511. Moreover, the Oklahoma parole statutes continue to give the Board broad discretion in making its recommendations for parole to the Governor. *See* Okla. Stat. tit. 57, § 332.7. The amended parole statutes do not affect whether or when the Board can parole Plaintiff. The amendment simply gives the Board the discretion to set Plaintiff's hearing off for three years rather than one year. And finally, the amendment applies only to a class of prisoners-those convicted of "a violent crime" for whom the likelihood of release is remote. The likelihood that the amendment would affect Plaintiff's release appears particularly remote where Plaintiff, having been released on parole after serving nine years of a life sentence for rape, committed an unrelated crime while on parole and has been considered for and denied parole on multiple occasions since rebilled on his life sentence.

The Tenth Circuit addressed a similar challenge by a habeas petitioner to a parole statute amended by the Act and the Board's policy following the statutory changes in *Henderson v. Scott,* 260 F.3d 1213 (10th Cir.2001). The Circuit Court rejected the inmate's facial challenge to Oklahoma's amended parole law, finding that the altered statute (1) "does not change the length of the sentence in any way," (2) "does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates, (3) "clearly reserves the [Parole] Board's discretion to reconsider parole before the three-year period has expired," and (4) that the Parole Board's policy manual "indicates that the [Parole] Board has the authority to defer reconsideration for up to five years, but that it can modify parole consideration dates if the [Parole] Board receives new information." *Id.* at 1216-1217.

*8 The Tenth Circuit also addressed Mr. Henderson's challenge to the amended parole statute as applied to his sentence. The Court found that Mr. Henderson had not shown that his circumstances had "changed sufficiently in light of his convictions and sentences to warrant an earlier parole consideration date" and that it was "only remote speculation to suggest that the application of the amended statute in Mr. Henderson's case [would] increase his punishment...." *Id.* at 1217. Because Mr. Henderson had not shown that the amended statute would prolong his punishment either on the face of the statute or as applied to his circumstances, the Court found that the statute did not violate the Ex Post Facto Clause.[FN7]

Slip Copy
Slip Copy, 2006 WL 2715009 (W.D.Okla.)
(Cite as: Slip Copy)

Page 7

FN7. The Circuit Court has also relied upon *Morales* to reject ex post facto challenges to similar changes in Oklahoma parole procedures in two unpublished decisions. In *Herrera v. Keating,* No. 97-6078, 1997 WL 687695 (10th Cir. Oct. 30, 1997), the habeas petitioner alleged that the parole policy in effect at the time he committed his crime entitled him to parole consideration every twelve months after initial parole consideration and that amendments to that policy allowing such hearings to be deferred up to five years, effectively increased his punishment. Rejecting this claim the Tenth Circuit stated:
'The [new policy] has no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings.' *Morales,* 514 U.S. at 511. 'Rather than changing the sentencing range applicable to covered crimes, the [Oklahoma Pardon and Parole Board's 1991 policy] simply alters the method to be followed in fixing a parole release date under the identical substantive standards.' *Id.,* at 507-508 (quoting *Miller v. Florida,* 482 U.S. 423, 433 (1987))…. Also unchanged is the discretion retained by the Pardon and Parole Board in making its recommendations for parole to the Governor…. Finally, Mr. Herrera makes no attempt to distinguish the revised Oklahoma policy from the amended statute at issue in *Morales,* and the record is devoid of any evidence that would support such a claim. As such, Mr. Herrera has not demonstrated that there is a 'sufficient risk' that the measure of his punishment has changed…. Accordingly, there is no implication of the Ex Post Facto Clause here.
*Id.* at *2-3 (citations and footnote omitted). *See also Harrison v. Champion,* No. 99-6312, 1999 WL 1243116, at *1 (10th Cir. Dec. 21, 1999).

Plaintiff likewise fails to allege facts demonstrating that changes in the Oklahoma parole statutes and the policies of the DOC and the Board lengthening the time between parole reconsideration dates for violent offenders, as applied to him, violate the Ex Post Facto Clause. Rather, it appears that he relies "only on the speculation that the more often he is considered for parole, the higher his chances of release." *Berry v. Scafe,* No. 00-3366, 2001 WL 909120, at *3 (10th Cir. Aug. 13, 2001). However, "[s]peculation and conjecture that the punishment will be increased by a change lengthening parole hearing interval are insufficient to invoke the Ex Post Facto Clause." *Id.* (citing *Morales,* 514 U.S. at 509-10).

The undersigned finds that under the circumstances, the Board's action in extending Plaintiff's parole reconsideration from an annual review to a three-year set off does not present "a sufficient risk that his effective punishment is more onerous under the new [Oklahoma] statute [and regulations]." *Raymer v. Enright,* 113 F.3d at 176. The undersigned finds that Plaintiff fails to state a claim upon which relief may be granted, and therefore his ex post facto claim should be dismissed. 28 U.S.C. § 1915A(b).

B. *Due Process Claim*

Although the complaint purports to raise a single ex post facto claim, Plaintiff makes brief reference in his supporting brief to the denial of annual parole consideration as a violation of his due process rights. Petitioner's Brief at 4 and 5. Even if the Court liberally reads Plaintiff's pro se pleadings as raising a due process claim, such claim fails to state the denial of a liberty interest protected by the Due Process Clause.

It is axiomatic that the Due Process Clause of the Fourteenth Amendment only applies when the challenged governmental action deprives an individual of life, liberty, or property. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id.* Thus, a discretionary state parole system which "holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained" and, accordingly, does not implicate the protections of due process. *Greenholtz,* 442 U.S. at 10; *accord Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465 (1981); *Jago v. Van Curen,* 454 U.S. 14, 21 (1981).

*9 Both the Tenth Circuit Court of Appeals and the Oklahoma courts have previously held that Oklahoma's statutory parole scheme does not create a liberty interest in early release. *See Brooks v. Oklahoma Pardon and Parole Board,* No. 93-6126, 1993 WL 525749, *2 (10th Cir. Dec. 20, 1993) (concluding that the Oklahoma parole statutes "do

not create a liberty interest in parole") (citing *Shirley v. Chestnut,* 603 F.2d 805, 807 (10th Cir.1979)); *Phillips v. Williams,* 608 P.2d 1131, 1132 (Okla.1980) (Oklahoma law lacks mandated standards of inmate-parole-release eligibility and as parole remains "a 'hope' or 'possibility' [claim of entitlement to parole consideration] stands unprotected by the Due Process Clause of the Fourteenth Amendment.").

Likewise, Plaintiff does not have a protectible liberty interest in the frequency of parole reconsideration. Because the Oklahoma parole statutes do not create a liberty interest entitling prisoners to federal constitutional protection, there is no basis for a federal due process claim arising from a delay in receiving reconsideration of parole. *See Shirley,* 603 F.3d at 807 ("In the absence of such liberty interest [in parole] the specific due process procedures requested by the appellants are not applicable."); *Brooks,* 1993 WL 525749 at *2 (finding "delay in receiving a parole reconsideration hearing does not give rise to a due process violation"). Therefore, to the extent the complaint may be construed as asserting a claim under the Due Process Clause, the undersigned finds that Plaintiff fails to allege the violation of his due process rights, and any such claim should be dismissed for failure to state a claim on which relief may be granted. 28 U.S .C. § 1915A(b).

In sum, the undersigned finds that Plaintiff's complaint has been filed beyond the applicable statute of limitations for actions under 42 U.S.C. § 1983, and alternatively, even if his complaint is considered timely, Plaintiff has failed to allege the violation of a constitutional right. Accordingly, it is recommended that the complaint be summarily dismissed.


## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's complaint be dismissed in accordance with 28 U.S.C. § 1915A(b), as Plaintiff's claims are barred by the statute of limitations; alternatively, Plaintiff's claims should be dismissed for failure to state a claim on which relief may be granted. Dismissal of this action should count as a strike pursuant to 28 U.S.C. § 1915(g).[FN8] Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before the 19th day of September, 2006, in accordance with 28 U.S.C. § 636 and Local Civil

Rule 72.1. Plaintiff is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both the factual and legal issues decided herein. *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the above captioned matter.

FN8. Dismissal should count as a "prior occasion" only after Plaintiff has exhausted or waived his right to appeal. *See Jennings v. Natrona County Detention Ctr. Med. Facility,* 175 F.3d 775, 780 (10th Cir.1999).

W.D.Okla.,2006.
Traylor v. Jenks
Slip Copy, 2006 WL 2715009 (W.D.Okla.)

Briefs and Other Related Documents (Back to top)

• 5:05cv01167 (Docket) (Oct. 5, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.