Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for The SCO Group, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP,<br><br>  Plaintiff/Counterclaim-Defendant<br><br>  v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>  Defendant/Counterclaim-Plaintiff | **SCO'S MEMORANDUM IN OPPOSITION TO IBM'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR COPYRIGHT INFRINGEMENT (IBM'S EIGHTH COUNTERCLAIM)**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## Table of Contents

Table of Authorities ........................................................................................................... i

Preliminary Statement ...................................................................................................... 1

Statement of Facts ........................................................................................................... 3

I.      SCO HAS COMPLIED WITH THE GPL ................................................................. 3

    A.      SCO's Linux Distributions Complied with the GPL ............................................. 3

    B.      SCO Has Continued to Comply with the GPL ..................................................... 6

II.     SCO HAS NOT REPUDIATED OR BREACHED THE GPL .................................... 7

    A.      SCO Did Not Repudiate the GPL ....................................................................... 7

    B.      SCO Did Not Breach the GPL ........................................................................... 8

III.    SCO'S LINUX DISTRIBUTIONS PREDATED THE ALLEGED
    REPUDIATION AND BREACH ............................................................................ 10

IV.     LINUX IS A DERIVATIVE WORK BASED ON SCO'S UNIX
    SYSTEM V ........................................................................................................ 12

V.      IBM COMES TO THE COURT WITH UNCLEAN HANDS ................................... 13

VI.     IBM IS NOT ENTITLED TO THE INJUNCTION IT SEEKS .................................. 15

Standard of Decision ..................................................................................................... 16

Argument ..................................................................................................................... 16

I.      THE GPL AUTHORIZED SCO'S DISTRIBUTION AND USE OF
    LINUX ............................................................................................................. 18

    A.      SCO's Linux Distributions Complied with the GPL ............................................ 18

i

|   |   | B. | SCO Has Continued to Comply with the GPL ...................................................... 19 |

**II.** **SCO HAS NOT REMOTELY REPUDIATED OR BREACHED THE GPL** .................................................................................................... 20

    A.    SCO Has Not Repudiated the GPL .................................................................... 21

    B.    SCO Has Not Breached the GPL ........................................................................ 23

**III.** **IBM'S CLAIM OF RETROACTIVE TERMINATION IS UNTENABLE UNDER THE WELL-ESTABLISHED CASE LAW AND THE GPL** ........................................................................................................ 25

**IV.** **BECAUSE LINUX IS AN UNAUTHORIZED DERIVATIVE OF SCO'S UNIX SYSTEM V, IBM CANNOT ASSERT ITS ALLEGED COPYRIGHTS** .......................................................................................... 26

**V.** **IBM'S PROPOSED INTERPRETATION OF THE GPL RUNS COUNTER TO PUBLIC POLICY AND THE LAW** .................................. 28

**VI.** **IBM'S MOTION ALSO FAILS BECAUSE IBM COMES TO THE COURT WITH UNCLEAN HANDS** .................................................................. 30

    A.    IBM's Contributions to Linux Violate SCO's Rights............................................ 30

    C.    IBM Sought Evidence for Its Claims by Hacking Into SCO's Website ........................................................................................................................ 31

**VII.** **IBM IS NOT REMOTELY ENTITLED TO INJUNCTIVE RELIEF**...................... 32

**CONCLUSION** ........................................................................................................................ **35**

**Table of Authorities**

**Cases**

Allegro Corp. v. Only New Age Music, Inc., No. Civ. 01-790-HU, 2003 WL 23571745
(D. Or. Jan. 23, 2003) .................................................................................................... 16, 17

Amoco Oil Co. v. Premium Oil Co., 313 F. Supp. 2d 1233 (D. Utah 2004) ............................... 21

AOL, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444 (E.D. Va. 1998) ................................................... 32

Bd. of Dirs. and Officers, Forbes Fed. Credit Union v. Nat'l Credit Union Admin., 477
F.2d 777 (10th Cir. 1973) ............................................................................................................ 30

Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 214 F.3d 1183 (10th
Cir. 2000) .................................................................................................................................... 16

Boyer v. Bd. of County Comm'rs of Johnson County, 922 F. Supp. 476 (D. Kan. 1996) ........... 16

Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600 (1st Cir. 1988) ........ 29

Creative Computing v. GetLoaded.com LLC, 386 F.3d 930 (9th Cir. 2004) ............................... 32

David v. City & County of Denver, 101 F.3d 1344 (10th Cir. 1996) ........................................... 16

Dow Chem. Co. v. United States, 226 F.3d 1334 (Fed. Cir. 2000) ........................................ 21, 23

Estate of Harris v. Harris, 218 F.3d 1140 (10th Cir. 2000) ........................................................ 23

Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175 (10th Cir. 2003) ................................... 33

Fleming v. Miles, 181 F. Supp. 2d 1143 (D. Or. 2001) ............................................................... 31

Ford v. United States, 273 U.S. 593 (1927) ................................................................................ 18

Foresight Res. Corp. v. Pfortmiller, 719 F. Supp. 1006 (D. Kan. 1989) ..................................... 17

Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823 (10th Cir. 1993) ............................ 17

i

Gemveto Jewelry Co., Inc. v. Lambert Bros., Inc., 542 F. Supp. 933 (S.D.N.Y. 1982) .............. 32

Grady v. de Ville Motor Hotel, 415 F.2d 449 (10th Cir. 1969).................................................... 29

Graham v. James, 144 F.3d 229 (2d Cir. 1998) ........................................................................... 17

Grundberg v. Upjohn Co., 140 F.R.D. 459 (D. Utah 1991) ........................................................ 29

Guthart v. White, 263 F.3d 1099 (9th Cir. 2001) ........................................................................ 30

Hicks v. City of Watonga, 942 F.2d 737 (10th Cir. 1991) ........................................................... 16

I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp. 2d 521
(S.D.N.Y. 2004) ........................................................................................................................... 32

Indep. Serv. Orgs. Antitrust Litig., 964 F. Supp. 1469 (D. Kan. 1997)........................................ 16

Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749 (11th Cir. 1997)...................................................... 25

Justine Realty Co. v. Am. Nat'l Can Co., 976 F.2d 385 (8th Cir. 1992)...................................... 29

Lantec Inc. v. Novell, Inc., 306 F.3d 1003 (10th Cir. 2002) ........................................................ 21

Lawser v. Poudre Sch. Dist., 171 F. Supp. 2d 1155 (D. Colo. 2001) ........................................... 23

MCA Television, Ltd. v. Public Interest Corp., 171 F.3d 1265 (11th Cir. 1999)......................... 25

NLRB v. Local 32B-32J Serv. Employees Int'l Union, 353 F.3d 197 (2d Cir. 2003) ................. 30

NYNEX Corp. v. Discon, Inc., 525 U.S. 128 (1998) .................................................................... 29

Palladium Music, Inc. v. Eatsleepingmusic, Inc., 398 F.3d 1193 (10th Cir. 2005)..................... 26

Prairie Band Potawatomi Nation v. Wagnon, 402 F. 3d 1015 (10th Cir. 2005).......................... 33

Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806 (1945)....................... 30

Rixon, Inc. v. Racal-Milgo, Inc., 551 F. Supp. 163 (D. Del. 1982)............................................. 31

Rogers v. United States, 281 F.3d 1108 (10th Cir. 2002) ........................................................ 16

Russ Berrie & Co. v. Jerry Elsner Co., 482 F. Supp. 980 (S.D.N.Y. 1980) ................................. 31

San Juan New Materials High Tech, Inc. v. Int'l Trade Comm'n, 161 F.3d 1347 (Fed. Cir. 1998) ........................................................................................................................................... 29

Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019 (10th Cir. 2003) ........................................................................................................................................... 19

Stenograph L.L.C. v. Bossard Assocs., Inc., 144 F.3d 96 (D.C. Cir. 1998) ................................. 17

Tempo Music, Inc. v. Myers, 407 F.2d 503 (4th Cir. 1969) ................................................... 30, 31

United States v. Socony-Vacuum Oil Co., 310 U.S. 150 (1940) .................................................. 29

Worden & Co. v. Cal. Fig Syrup Co., 187 U.S. 516 (1903) ........................................................ 31

Worthington v. Anderson, 386 F.3d 1314 (10th Cir. 2004) ........................................................ 31

**Statutes**

17 U.S.C. § 103(a) ....................................................................................................................... 26

**Other Authorities**

18 Am. Jur. 2d Copyright § 220 .................................................................................................. 30

3 Melvin B. Nimmer, Nimmer on Copyright ............................................................................... 25

4 Melvin B. Nimmer, Nimmer on Copyright ............................................................................... 30

Fed. R. Civ. P. 8(e)(2) .................................................................................................................. 23

Plaintiff, the SCO Group, Inc. ("SCO"), respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment on IBM's Eighth Counterclaim (the "counterclaim").

### Preliminary Statement

IBM's counterclaim and this motion are thinly veiled attempts to retaliate against SCO for defending its UNIX rights.

The counterclaim alleges that SCO's distribution and use of Linux infringed IBM's alleged copyrights in sixteen works (the "works") that IBM contributed to Linux under the GNU General Public License and Lesser General Public License (collectively, the "GPL"). In its motion, IBM concedes that the GPL authorized SCO's use of the works, but claims that SCO lost that authorization by allegedly repudiating and breaching the GPL. As argued in SCO's pending motion for summary judgment on the sixth, seventh, and eighth counterclaims, IBM's position should be rejected as a matter of law and its counterclaim dismissed. SCO here reiterates those arguments and presents additional factual and equitable grounds for denying this motion.

IBM first filed this motion on August 16, 2004. At that time, IBM argued that SCO infringed IBM's alleged copyrights by distributing the works in SCO Linux Server 4.0 and SCO OpenLinux 3.1.1 Asia (the "Linux distributions"), and by distributing Linux files to customers on a secure website subsequent to the dates of the alleged repudiation and breach. In its opposition papers, SCO argued (among other things) that IBM had hacked into that website to

obtain those files as purported evidence for its motion. In the pending motion, IBM has dropped SCO's distribution of files on its secure site as a basis for the counterclaim.[1]

IBM's motion for summary judgment should be denied for at least the following reasons:

First, SCO has fully complied with, and has not repudiated or breached, the GPL. SCO has used and distributed Linux in compliance with the terms of the GPL, and nothing in the GPL prohibits SCO from licensing its UNIX intellectual property that IBM and others unlawfully contributed to Linux. SCO's assertion of defenses (to this very counterclaim) against the enforceability of supposed restrictions in the GPL does not constitute repudiation under any authority. SCO has complied with the GPL as a matter of law and therefore IBM's motion may properly be denied and SCO's granted on this basis alone.

Second, even if SCO had somehow repudiated or breached the GPL, there is no authority for IBM's theory that the alleged repudiation or breach – which postdated SCO's suspension of its Linux distributions – retroactively terminated SCO's rights to distribute Linux under the GPL. That theory is plainly inconsistent with both the case law and the GPL itself. Accordingly, IBM's motion again fails as a matter of law, and SCO's motion should be granted.

Third, because Linux is an infringing derivative work of SCO's UNIX System V, IBM cannot assert rights in Linux under Tenth Circuit law.

---

[1] Instead, IBM now strains to unearth new instances of SCO's use of Linux subsequent to the alleged repudiation and breach. IBM alleges (at 11-12) that it recently downloaded an arcane Linux image file from SCO's ftp site, suggests that SCO continued to sell Linux installations to existing customers even after those dates, and supposes that SCO continues to use Linux internally for customer support and to run its website. These allegations appear intended to deflect attention from the dispositive facts, namely, that SCO's Linux distributions complied with the GPL and in any event SCO suspended its Linux distributions before the alleged repudiation and breach. In addition, SCO fully complied with the GPL in any use it made of Linux after suspending its Linux distributions.

Fourth, IBM's proposed interpretation of the GPL should be rejected as against public policy and the law. The GPL should not be read to interfere with SCO's right to enforce its own intellectual property rights, or to allow a competitor to decide what SCO may charge for an intellectual property license.

Fifth, IBM comes to the Court with unclean hands. IBM seeks to enforce its alleged copyrights after having itself misappropriated SCO's proprietary source code, and after attempting to obtain purported evidence for its claims by hacking into SCO's website.

For the foregoing reasons, IBM is also not entitled to the injunctive relief it seeks.

## Statement of Facts

## I.   SCO HAS COMPLIED WITH THE GPL

### A.  SCO's Linux Distributions Complied with the GPL

1.      IBM's counterclaim alleges that SCO infringed IBM's alleged copyrights by "copying, modifying, sublicensing and/or distributing Linux products except as expressly provided under the GPL." (IBM Ex. 4 ¶ 159.)[2]

2.      IBM alleges that SCO copied and distributed fifteen of the sixteen works verbatim in SCO Linux Server 4.0 and the remaining work also verbatim in SCO Open Linux 3.1.1 Asia.

3.      IBM alleges, without support for the allegation, that "[i]n developing SCO Linux Server 4.0, SCO made certain modifications and additions to the Linux 2.4.19 kernel, such that SCO Linux 4.0 is a derivative work of the Linux 2.4.19 kernel within the meaning of the GPL."

---

[2] The documents, declarations, and depositions supporting SCO's response are appended to the November 11, 2006 Declaration of Brent O. Hatch, and are cited herein as "Ex. __." Where exhibits attached to IBM's September 25, 2006 Declaration of Todd M. Shaughnessy are referenced herein, they are cited as "IBM Ex. __."

4.      In purported support of that allegation, IBM cites (at 11) to IBM Exhibit 352, a SCO Linux Server 4.0 product announcement listing modifications and additions made to the Linux 2.4.19 kernel.  These modifications and additions were made by SuSE, the UnitedLinux integrator, in developing UnitedLinux Version 1.0.  (Ex. 233 ¶ 19.)  They were not made by SCO.  (Id.)

5.      Pursuant to the UnitedLinux agreements, SCO received the UnitedLinux Version 1.0 program from SuSE and redistributed that software verbatim (that is, as received) in SCO Linux Server 4.0.  (Id. ¶ 20.)

6.      In particular, SCO redistributed SCO Linux Server 4.0 in three compact disks.  (Id. ¶ 21.)  SCO received two of these disks from SuSE and redistributed them without changing their content.  (Id.)  The third disk was designated by UnitedLinux as a value-add disk for each member, and it was on this disk that SCO included some additional open source packages.  The entire Linux kernel was included in the two unmodified disks.  (Id.)

7.      SCO thus made no modifications or additions to the Linux kernel, including the works.  (Id. ¶ 22.)

8.      Sections 1 and 3 of the GPL authorize the use and distribution of the GPL-licensed program verbatim.  (IBM Ex. 128 §§ 1, 3.)

9.      Section 1 of the GPL authorizes the general public to copy and distribute verbatim copies of the source code of the licensed program, subject to certain notice publication requirements.  (Id. § 1.)  Section 1 expressly permits the charging of fees for transfer of the software and for warranty protection.  (Id.)

10.     Section 3 of the GPL authorizes the general public to copy and distribute verbatim copies of the licensed program in object code or executable form, subject to the condition that the program is accompanied by the source code or by an offer to provide the source code.  (Id. § 3.)  Section 3 allows a licensee to comply with this condition by "offering access to copy from a designated place."  (Id.)  It is undisputed that SCO offered access to the Linux source code on its website.

11.     Section 2 of the GPL states that if a licensee modifies the licensed work, the modified work must be licensed at no charge.  (Id. § 2.)  In contrast to Section 2 (which authorizes the copying of modified works), Section 1 (which authorizes verbatim copying) does not require no-charge licensing.  (Id. §§ 1-2.)

12.     SCO complied with the requirements of the GPL, including Sections 1 and 3, in its Linux distributions.  (IBM Ex. 284 ¶ 9.)  Indeed, even though Sections 1 and 3 would not have prohibited SCO from doing so, SCO has not sought to collect royalties or licensing fees for Linux, including any of IBM's allegedly copyrighted works.  (Id. ¶ 9.)

13.     IBM does not even address, let alone dispute, SCO's full compliance with Sections 1 and 3 of the GPL.

B. <u>SCO Has Continued to Comply with the GPL</u>

14.     In its 2004 motion for summary judgment on this counterclaim, IBM argued that SCO infringed its alleged copyrights by making Linux files available on a secure website after the alleged breach and repudiation.  IBM has now abandoned that argument.  Instead, IBM (at 11-12) identifies other purported grounds for the counterclaim.

15.     First, IBM alleges that it recently downloaded an arcane Linux file from SCO's ftp site.

REDACTED

16.     Second, IBM alleges that "apparently" SCO "continues to use Linux internally and uses Linux to run its website."          REDACTED

6

17.     In any event, Section 0 of the GPL provides: "Activities other than copying, distribution and modification are not covered by this license; they are outside of its scope. The act of running the program is not restricted . . . ." (IBM Ex. 128 § 0.)

18.     IBM does not allege, and there is no evidence, that SCO copied, distributed, or modified Linux when it allegedly posted the image file, used Linux internally, or ran its website.

## II.     SCO HAS NOT REPUDIATED OR BREACHED THE GPL

19.     IBM alleges that SCO has repudiated and breached the GPL and thereby lost any right under the GPL to use and distribute Linux. SCO has not repudiated or breached the GPL.

### A. SCO Did Not Repudiate the GPL

20.     IBM argues (at 18) that SCO repudiated the GPL by asserting defenses against this very counterclaim. But IBM does not anywhere assert that SCO or any of its officers, agents, or representatives at any time communicated to anyone that SCO would not perform its obligations under the GPL.

21.     SCO has never repudiated the GPL, and SCO has always endeavored to comply with its GPL obligations. (IBM Ex. 300 at 210-11; IBM Ex. 284 ¶ 9; IBM Ex. 324 at 200-01.)

22.     Indeed, SCO has also expressly relied on the GPL as a source of legal rights by asserting, for example, that "IBM's claims are barred by license" (that is, the GPL), (IBM Ex. 5 at 19), and that SCO has acted "within the contractual rights granted to it concerning software made freely available by IBM under the GPL." (Ex. 153 at 20.)

23.                                   REDACTED

SCO asserted as its

7

Fourth Affirmative Defense that "IBM's claims are barred by license" (IBM Ex. 5 at 19), and as its Eleventh Affirmative Defense that "SCO has acted legally and properly at all relevant times and IBM is therefore barred from any relief whatsoever" (Id. at 20).  In a portion of SCO's Response to IBM's Third Set of Interrogatories that IBM does not cite, SCO explains that it has acted "within the contractual rights granted to it concerning software made freely available by IBM under the GPL."  (Ex. 153 at 20.)

> B.  SCO Did Not Breach the GPL

24.     IBM alleges that SCO has breached the GPL by imposing "further restrictions" on Linux users.

25.     Section 4 of the GPL states that a licensee's use of licensed material beyond the scope of the GPL will "automatically terminate" the licensee's rights under the GPL (but the GPL does not say when such a termination becomes effective, and it provides no mechanism by which the licensee is put on notice of an alleged unauthorized use of the licensed material).  (IBM Ex. 128 § 4.)

26.     Section 6 of the GPL states:  "Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions.  You may not impose any further restrictions on the recipients' exercise of the rights granted herein."  (Id. § 6.)

27.     IBM argues (at 19) that SCO's right to use and distribute Linux under the GPL "automatically terminated" when SCO began offering its Intellectual Property License for UNIX (the "UNIX License") beginning on August 5, 2003.  Specifically, IBM contends that the UNIX

License imposed "further restrictions" (and thereby breached Section 6 of the GPL) by allegedly licensing Linux only in object code format, prohibiting end-users from further sublicensing or distributing Linux, and by charging fees for Linux.

28.      However, the UNIX Licenses on their face license and charge for the use of UNIX software, not Linux or any IBM-copyrighted work.  (See, e.g., IBM Ex. 401; IBM Ex. 403.)  The UNIX Licenses contain a release of claims, covenant not to sue, and waiver of any infringement claims SCO may have against the licensee, all based on the licensee's use of UNIX. (Ex. 49 ¶ 30.)

29.      For example, IBM labels the UNIX License that SCO sold to Questar as a Linux license.                                        REDACTED

30.      The licensing clauses of all the UNIX Licenses are worded similarly.  (Ex. 49 ¶ 30.)  The UNIX Licenses thus are agreements pertaining to UNIX and not to Linux.  (Id.; IBM Ex. 324 at 181-82.)

31.      SCO has not sought to collect royalties or licensing fees for, or to impose any restrictions on, the use of Linux or any of IBM's allegedly copyrighted works.  (IBM Ex. 284 ¶

9; Ex.49 ¶ 30.)  SCO has never attempted to license or sublicense Linux or any IBM copyrighted

work, or any other GPL-licensed source code.  (Ex. 49 ¶ 30.)

32.     Section 0 of the GPL provides:  "Activities other than copying, distribution and

modification are not covered by this license; they are outside of its scope."  (IBM Ex. 128 § 0.)

Nothing in the GPL prohibits the licensing of other intellectual property that may pertain to the

program licensed under the GPL.  In fact, Section 7 of the GPL expressly contemplates that "the

Program" may implicate other intellectual property rights.  (Id. § 7.)

33.     In any event, Section 6 applies only to restrictions placed by the GPL licensee on

users to whom the licensee itself has distributed the GPL-licensed program.  Section 6 states that

each time "you redistribute the Program (or any work based on the Program), the recipient

automatically receives a license from the original licensor to copy, distribute or modify the

Program subject to these terms and conditions.  You may not impose any further restrictions on

the recipients' exercise of the rights granted herein."  (Id. § 6.)

34.     SCO has not attempted to sell a UNIX License to anyone who received a Linux

distribution from SCO.  (IBM Ex. 284 ¶ 8.)  Rather, SCO agreed to hold its Linux customers

harmless from any SCO intellectual property issues regarding Linux.  (Id.)

**III.    SCO'S LINUX DISTRIBUTIONS PREDATED THE ALLEGED REPUDIATION
         AND BREACH**

35.     SCO distributed SCO Linux Server 4.0 from November 19, 2002, until May 14,

2003.  (IBM Ex. 284 ¶¶ 2-3; IBM Ex. 324 at 186; IBM Ex. 296 at 16, 37, 57.)

36.     Once SCO arrived at the conclusion that Linux was tainted with misappropriated

material, SCO suspended its sales of Linux products pending clarification of the intellectual

property issues.  (IBM Ex. 284 ¶ 3; IBM Ex. 324 at 179, 186; IBM Ex. 300 at 208-10.)  On May

10

14, 2003, SCO suspended all sales and marketing of its entire Linux product line.  (IBM Ex. 284 ¶ 3; IBM Ex. 324 at 179, 186; IBM Ex. 296 at 16, 37, 48, 51.)

37.     After May 14, 2003, SCO entered into no further obligations to sell SCO Linux Server 4.0 or any other Linux product.  (IBM Ex. 284 ¶ 3; IBM Ex. 296 at 53.)  SCO, however, owed obligations to users who had already purchased SCO's Linux products.  In the Product Announcement for Linux Server 4.0 of November 19, 2002, for example, SCO had promised its customers the "SCO Linux Update Service" for twelve months, including access to "an up-to-date repository of UnitedLinux and other updates for their system."  (IBM Ex. 352 at SCO1270434.)

38.     Accordingly, after May 14, 2003, SCO made a limited number of sales to existing customers pursuant to its contractual obligations.[3]  (IBM Ex. 284 ¶¶ 3-5; IBM Ex. 324 at 188-89; IBM Ex. 296 at 72-73; Ex. 49 ¶¶ 12-14; IBM Ex. 300 at 221-23.)  The last sale of Linux Server 4.0 was on May 31, 2004.  (IBM Ex. 284 ¶ 4; IBM Ex. 311 at 60.)  Over two months had passed after SCO suspended its Linux distributions in May 2003 before SCO offered its UNIX Licenses on August 5, 2003 (IBM Ex. 284 ¶ 6) and before IBM registered any of its alleged copyrights to the works.

---

[3] SCO recognized revenue for a negligible number of Linux sales after August 5, 2003, pursuant to existing contractual obligations with Linux customers, typically commitments to provide updates of the product for a pending customer deployment or rollout.  (IBM Ex. 324 at 188-89; IBM Ex. 300 at 221-22.) Indeed, sales and returns of Linux Server 4.0 after that date combined to produce negative net revenues. (IBM Ex. 284 ¶ 4.)  IBM does not expressly challenge these sales.  Even if the challenge is implicit in its papers, those sales cannot support IBM's motion for the reasons set forth herein.

39.     Section 4 of the GPL provides that in the event of a licensee's breach and termination, sublicenses previously granted by that licensee remain in full force and effect. (IBM Ex. 128 § 4.)

## IV.     LINUX IS A DERIVATIVE WORK BASED ON SCO'S UNIX SYSTEM V

40.     Linux is a derivative work based on SCO's UNIX System V, Release 4 ("SVr4"). (Ex. 276 at 31-33.)  Linux is substantially similar to SVr4.  (Id.)

41.     IBM's experts do not dispute that Linux is a derivative of SVr4, id., and they admit that Linux is a "Unix-like system."  (Ex. 22 at 135.)

42.     IBM internal documents also confirm that Linux is a derivative work based on SVr4.                                    REDACTED

43.                                    REDACTED

44.                                    REDACTED

45.                                    REDACTED

REDACTED

46.     The website www.kernel.org, the primary site for the Linux kernel, states that "Linux is a clone of the operating system Unix" and that Linux "has all the features you would expect in a modern fully-fledged Unix." (Ex. 334 at 2.)

## V.     IBM COMES TO THE COURT WITH UNCLEAN HANDS

47.     SCO suspended its distribution of its Linux products for business reasons. (IBM Ex. 330 at 67-68.) SCO sought to avoid the incongruity of perpetuating the unauthorized distribution of its proprietary technology that, unbeknown to SCO, IBM and others had contributed to Linux. (Id.; IBM Ex. 284 ¶3).

48.     After suspending its marketing and distribution of its Linux products in May 2003, SCO permitted secure access to Linux patches via its website after August 5, 2003, because of SCO's pre-existing contractual obligations with its customers and with the UnitedLinux consortium. (IBM Ex. 324 at 190-91, 194; Ex. 49 ¶ 17-19.)

49.     In accordance with its UnitedLinux agreements, SCO provided customers who had purchased SCO Linux Server 4.0 a password to enter at a log-in screen on SCO's download site so that only they could have access. (IBM Ex. 324 at 195; IBM Ex. 311 at 37-38; Ex. 49 ¶¶ 17-19.)

50.     The only way a non-customer was able to access the Linux 4.0 code on SCO's download site was to bypass the security system by hacking into the system. (Ex. 49 ¶¶ 20-21.) In addition, the download site contained an explicit notice that access to the Linux files was limited to SCO customers. (Id. ¶ 28.)

51.     On several occasions between October 31 and December 1, 2003, IBM accessed the SCO log-in site but did not obtain access to the SCO Linux Server 4.0 files. (Id. ¶ 25.) After news of a bug in the site's security system was reported on internet websites, IBM exploited the bug to bypass the system, hack into SCO's website, and download those files. (Id. ¶¶ 22-27.) IBM has used those files as purported evidence for this counterclaim and for its pending motion for summary judgment on SCO's contract claims. (See Ex. 335 at 19; See IBM's Memorandum in Support of Its Motion for Summary Judgment on SCO's Contract Claims (Sept. 25, 2006) at 107.)

52.     SCO removed all Linux code from its website promptly after the expiration of the last of its contractual obligations, on December 31, 2004. (IBM Ex. 284 ¶ 11; IBM Ex. 324 at 191, 194; IBM Ex. 311 at 37-38, 121; Ex. 49 ¶ 17.)

53.     Prior to the filing of its counterclaim on August 6, 2003, IBM never provided SCO with any notice of its claim that SCO's rights under the GPL had terminated or that SCO was infringing IBM's copyrights. (IBM Ex. 284 ¶ 12.)

54.     All of SCO's Linux distributions (both prior to and after May 2003) were made under the GPL, with no charge of any nature for royalties or licensing fees. (Id. ¶ 9.)

## VI.    IBM IS NOT ENTITLED TO THE INJUNCTION IT SEEKS

55.    Even though SCO suspended its Linux distributions over three years ago, IBM argues (at 22) that it will suffer irreparable harm if it is not granted an injunction.  IBM cites a footnote on a SCO webpage as the only factual basis for its claim of irreparable harm.

56.    IBM states that "SCO has assured its customers up to the very present that it will continue to support existing SCO Linux and Caldera OpenLinux customers.'"

57.    On the basis of that fact alone, IBM concludes (at 22) that "there is a substantial likelihood of further infringement" by SCO.

58.    The part of the notice quoted by IBM actually states:  "SCO has suspended new sales and distribution of SCO Linux until the intellectual property issues surrounding Linux are resolved.  SCO will, however, continue to support existing SCO Linux and Caldera OpenLinux customers consistent with existing contractual obligations."  (IBM Ex. 48.)

59.    As indicated by the first sentence, which IBM does not quote, the footnote is simply outdated.  (Ex. 233 at 26.)  It was intended for customers visiting the webpage in 2003, when SCO announced the suspension of its Linux products.  (Id.)

60.    It is undisputed that the last of SCO's contractual obligations to Linux customers ended nearly two years ago.  (Id.; IBM Ex. 284 ¶ 11; IBM Ex. 324 at 191, 194; IBM Ex. 311 at 37-38, 121; Ex. 49 ¶ 17.)

61.    SCO has no "existing" Linux customers or "existing" contractual obligations to former Linux customers.  (Ex. 233 at 27.)  SCO does not provide customer support for Linux and has no plans to provide such support.  (Id. at 28.)

**Standard of Decision**

The standards for summary judgment under Federal Rule of Civil Procedure 56 are stringent. "Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000).

It is axiomatic that the "moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment," and that "the court must review the record in the light most favorable to the opposing party." Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Thus, the Court "must resolve factual disputes and draw inferences" in favor of the non-moving party, Rogers v. United States, 281 F.3d 1108, 1113 (10th Cir. 2002), and the Court may not "act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences." Boyer v. Bd. of County Comm'rs of Johnson County, 922 F. Supp. 476, 484 (D. Kan. 1996). In short, summary judgment may not be granted unless "the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law." David v. City & County of Denver, 101 F.3d 1344 (10th Cir. 1996).

**Argument**

In order to prevail on its counterclaim, IBM bears the burden of proving that SCO violated the Copyright Act. See Allegro Corp. v. Only New Age Music, Inc., No. Civ. 01-790-HU, 2003 WL 23571745, at *10 (D. Or. Jan. 23, 2003) (Ex. A); Indep. Serv. Orgs. Antitrust Litig., 964 F. Supp. 1469, 1472 (D. Kan. 1997). This requires proof that SCO's actions were unauthorized. See Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 832 (10th Cir.

16

1993) ("Once the plaintiff has shown that it holds a valid copyright, it must next prove that the

defendant <u>unlawfully</u> appropriated protected portions of the copyrighted work." (emphasis

added)); <u>Foresight Res. Corp. v. Pfortmiller,</u> 719 F. Supp. 1006, 1011 (D. Kan. 1989) ("In

general, a prima facie case of copyright infringement consists of proof that the plaintiff owns a

valid copyright and the defendant has engaged in unauthorized copying.").

 In view of SCO's undisputed reliance on the GPL, IBM bears the burden of proving that

SCO violated that license. <u>See</u> <u>Allegro</u>, 2003 WL 23571745, at *10 ("To prevail on their

counterclaim of copyright infringement under a license, defendants must prove 1) ownership of

copyright, and 2) 'copying' of protectible expression beyond the scope of the license."); <u>see also</u>

<u>Graham v. James</u>, 144 F.3d 229, 236 (2d Cir. 1998) (noting that "the copyright owner bears the

burden of proving that the defendant's copying was unauthorized under the license"); <u>Stenograph</u>

<u>L.L.C. v. Bossard Assocs., Inc.</u>, 144 F.3d 96, 99 (D.C. Cir. 1998) (explaining copyright plaintiff

must prove defendant's copying of protected expression exceeded scope of "the license

possessed by the defendant").

 IBM's counterclaim fails at least for the following reasons.  First, SCO's use and

distribution of Linux were authorized by the GPL.  SCO's Linux distributions complied fully

with the GPL, and where IBM claims that SCO has continued to use Linux, IBM's claims are

without merit, either because SCO has not made the use of Linux that IBM identifies or because

SCO has in any event always complied with, and never repudiated or breached, the GPL.

Second, neither the case law nor the GPL supports IBM's claim of repudiation and breach, and

retroactive termination and infringement.  Third, because Linux is an infringing derivative work

based UNIX System V, IBM cannot assert rights in Linux.  Fourth, IBM's motion should be

17

rejected because its proposed reading of the GPL runs counter to public policy and the law.

Fifth, IBM comes to the Court with unclean hands.

For the foregoing reasons, IBM also cannot remotely establish that it is entitled to the injunctive relief it seeks.

## I.     THE GPL AUTHORIZED SCO'S DISTRIBUTION AND USE OF LINUX

### A.  SCO's Linux Distributions Complied with the GPL

Section 1 of the GPL authorizes the public to "copy and distribute verbatim copies" of source code licensed thereunder, subject only to certain notice publication requirements.  (¶ 9.) SCO complied with these requirements, and thus was entitled to copy and redistribute any material IBM licensed under the GPL.  (¶¶ 1-13.)

SCO redistributed only verbatim copies of the program it received from SuSE.  (¶¶ 1-7.) Section 3 authorizes a party to copy and distribute the licensed program verbatim in object code or executable form under the terms of Section 1, as long as the party accompanies the program with the source code or with an offer to provide the source code.  (¶ 10.)  Section 3 allows a licensee to comply by "offering access to copy from a designated place" (such as an internet site).  (¶ 10.)  SCO's distributions of Linux fully complied with this requirement.  It is undisputed that SCO offered access to the Linux source code on its website.  (¶ 10.)

IBM reads into the GPL a prohibition against fees other than those expressly provided for in the GPL.  Section 1 expressly permits the charging of fees for transfer of the software and for warranty protection.  (¶ 9.)  Nothing in the GPL, however, suggests that other types of fees are prohibited.  IBM's proposed interpretation is inappropriate and even "dangerous" in the construction of contracts and statutes.  Ford v. United States, 273 U.S. 593, 612 (1927); Seneca-

<u>Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n</u>, 327 F.3d 1019, 1034-35 & n.26 (10th Cir. 2003).  Section 2(b), which prohibits licensing fees where the licensee distributes modified works, shows that the drafters of the GPL knew how to write a fee prohibition where it was their intent to do so.  (¶ 11.)

SCO complied with all the GPL's requirements and therefore was authorized, as a matter of law, to distribute the works.

B. <u>SCO Has Continued to Comply with the GPL</u>

Despite the purported evidence that IBM obtained in 2003 by hacking into SCO's website and filed with this motion in 2004, IBM has dropped its allegation that SCO infringed its copyrights by making Linux files available on its secure site.  (¶ 14.)  Instead, IBM alleges that it recently downloaded an arcane image file from SCO's ftp site and that "apparently" SCO continues to use Linux internally and to run its website.  (¶¶ 15-16.)  These allegations fail as a matter of law.

<u>First</u>, even if these allegations were all true, SCO in each instance made proper use of Linux under the GPL.  (¶¶ 17-18.)  Section 0 of the GPL provides:  "Activities other than copying, distribution and modification are not covered by this license; they are outside of its scope.  The act of running the Program is not restricted . . . ."  (¶¶ 17-18.)  IBM does not assert, nor is there any evidence, that in any of the alleged instances SCO copied or distributed Linux.  Even if SCO had, those copies and distributions would have been verbatim and therefore in compliance with the GPL.  <u>See</u> Part I. A., above.

<u>Second</u>, IBM's allegations fail on the facts.

- SCO does not currently use, or plan to use, Linux for customer support. (¶¶ 60-61.) In concluding (at 12) that SCO "apparently" uses Linux for customer support, IBM quotes a footnote on a SCO webpage that states: "SCO has suspended new sales and distribution of SCO Linux until the intellectual property issues surrounding Linux are resolved. SCO will, however, continue to support existing SCO Linux and Caldera OpenLinux customers consistent with existing contractual obligations." (¶¶ 55-58.) As indicated by the first sentence, which IBM does not even acknowledge, the footnote is simply dated (¶ 59.) It is undisputed that the last of SCO's contractual obligations to Linux customers ended nearly two years ago. (¶ 60.) That is, SCO plainly has no "existing" Linux customers or even "existing" contractual obligations to former Linux customers, and SCO does not provide customer support for Linux and has no plans to provide such support. (¶¶ 60-61.)

- SCO's website is hosted by a third-party vendor who makes its own choice of the operating system on which it will run its servers. SCO does not use Linux "to run its website." (¶ 16.)

## II.   SCO HAS NOT REMOTELY REPUDIATED OR BREACHED THE GPL

IBM alleges that SCO retroactively lost the right to redistribute Linux by repudiating and breaching the GPL in defending its UNIX rights. There is plainly no basis for the claim that SCO repudiated or breached the GPL, and even if there were, both the case law and the GPL reject the concept of retroactive termination and infringement.

A.  SCO Has Not Repudiated the GPL

IBM contends that SCO was not authorized to redistribute IBM's allegedly copyrighted material because SCO has since "repudiated" the GPL.  SCO has not repudiated the GPL.  (¶¶ 20-23.)

"A repudiation occurs when a party to a contract makes an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." Amoco Oil Co. v. Premium Oil Co., 313 F. Supp. 2d 1233, 1238 (D. Utah 2004) (quotation and citation omitted); see also Lantec Inc. v. Novell, Inc., 306 F.3d 1003, 1014-15 (10th Cir. 2002).  A party repudiates a contract when it "refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." Dow Chem. Co. v. United States, 226 F.3d 1334, 1344 (Fed. Cir. 2000).

IBM does not even allege that SCO has made any such refusal, far less communicated it to anyone.  On the contrary, in the very materials IBM cites, SCO Vice President Christopher Sontag confirms that SCO "treated [the GPL] as an obligation for which it needed to abide by," and SCO "made our best efforts to abide by all of the obligations of the GPL agreement." (¶ 23.)  IBM's argument fails without more.

In addition, SCO has not repudiated the GPL as a source of legal rights.  IBM misapprehends the significance of the assertions SCO has made in its pleadings regarding the enforceability of the GPL.  IBM ignores those assertions that directly contradict its characterization of SCO's supposed "repudiation":  SCO asserts as its Fourth Affirmative Defense that "IBM's claims are barred by license," and as its Eleventh Affirmative Defense that "SCO has acted legally and properly at all relevant times and IBM is therefore barred from any

21

relief whatsoever" (¶ 23).  In a portion of SCO's Response to IBM's Third Set of Interrogatories that IBM does not cite, SCO explains that it has acted "within the contractual rights granted to it concerning software made freely available by IBM under the GPL." (¶ 23.)  SCO thus has not remotely, as IBM alleges (at 17), "disclaimed the GPL as a source of legal rights".

IBM also ignores the context in which SCO has made its forward-looking assertions regarding the enforceability of the GPL.  In its Seventh Counterclaim, IBM asserts a state law claim for breach of contract based on the GPL.  In response, SCO asserted the following affirmative defenses:

- "The GPL is selectively enforced by the Free Software Foundation such that enforcement of the GPL by IBM or others is waived, estopped or otherwise barred as a matter of equity." (IBM Ex. 7 at 16; accord IBM Ex. 5 at 20; Ex. 153 at 39; and

- "The General Public License ('GPL') is unenforceable, void and/or voidable, and IBM's claims based thereon, or related thereto, are barred." (IBM Ex. 5 at 20; accord Ex. 153 at 38.)

In addition, in response to IBM's claim for "Breach of the GNU General Public License" (IBM Ex. 4 at 33), SCO "denies the applicability or enforceability of the GPL" (IBM Ex. 5 at 16.) Indeed, SCO submits that IBM's proposed interpretation of the GPL is unenforceable for several reasons.  But SCO has not asserted that the GPL did not authorize the licensees thereunder to copy and distribute the licensed material.  Such defensive assertions in litigation do not remotely qualify as a party's decision to "repudiate" the contract at issue.  In sum, none of SCO's assertions could reasonably be construed to preclude SCO from arguing (and proving) that, under the GPL, SCO was authorized to copy and distribute the material at issue.

IBM cites Dow Chemical purportedly to support its contention (at 18) that SCO's "assertions do amount to a repudiation of the contract."  That case – the only one cited by IBM in

22

its sections on repudiation and breach – does not remotely support that contention.  First, <u>Dow Chemical</u> does not depart from, but rather affirms, the rule that a repudiation "occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party."  <u>Dow Chemical</u>, 226 F.3d at 1344.  There, the trial court found that defendant wrote letters to plaintiff stating no royalties were due, in fact did not pay royalties for many years, did not intend to pay any royalties, <u>and</u> later also contested the validity of the patent and license at issue.  The Court affirmed the finding of repudiation.  Nothing in the opinion, however, suggests that contesting the validity of the license alone – without the overt acts of refusing and failing to pay royalties – was a repudiation.  Second, nothing in that case even suggests that a party risks a repudiation if it asserts the enforceability of the license at issue as an affirmative defense against an infringement claim.  IBM's reliance on <u>Dow Chemical</u> is misguided.

IBM's argument would fail, moreover, even if the Court accepted IBM's mischaracterization of SCO's assertions.  IBM at most points to instances of permissible pleading in the alternative.  <u>See</u> Fed. R. Civ. P. 8(e)(2); <u>see, e.g.</u>, <u>Lawser v. Poudre Sch. Dist.</u>, 171 F. Supp. 2d 1155, 1158 (D. Colo. 2001) (Rule 8(e)(2) "specifically provides that a party may plead in the alternative, even where the alternative claims are inconsistent").  Nor has IBM even claimed that it changed its position or relied on any of SCO's statements.  <u>See</u> <u>Estate of Harris v. Harris</u>, 218 F.3d 1140, 1153 (10th Cir. 2000).

B.  <u>SCO Has Not Breached the GPL</u>

IBM's contention that SCO breached the GPL by licensing its UNIX intellectual property fails for any of the following independently sufficient reasons.

23

First, nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property. (See IBM Ex. 128 § 11-12.) On the contrary, Section 7 of the GPL expressly contemplates and warns of that possibility. (¶ 32.) The UNIX Licenses grant rights for the use of the UNIX technologies that SCO believes IBM and others have wrongfully contributed to Linux. (¶¶ 28-31.)

Second, nothing in the GPL – which by its very terms is limited to "copying, distribution and modification" of Linux – precludes SCO from issuing licenses to its UNIX software. (¶ 32.)

Third, even if a license to SCO's UNIX intellectual property were necessary to the use of Linux, nothing in the GPL prohibits SCO from offering such a license. (¶¶ 32-34.) Section 6 applies only to restrictions placed by the licensee on users to whom the licensee itself has distributed the GPL-licensed program. Section 6 states that each time "you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein." (¶ 33.)

It is undisputed that SCO did not sell, or even attempt to sell, a UNIX License to any party who received a Linux distribution from SCO. (¶ 34.) That is, SCO entered into a UNIX License only with parties who had previously obtained Linux from a third party. (¶ 34.) Accordingly, even if the UNIX Licenses were deemed to impose restrictions on the use of Linux, those restrictions were not prohibited by Section 6, which prohibits the distributor's imposition of further restrictions on its "recipients" of the GPL-licensed program.

## III.    IBM'S CLAIM OF RETROACTIVE TERMINATION IS UNTENABLE UNDER THE WELL-ESTABLISHED CASE LAW AND THE GPL

Even if SCO had somehow repudiated or breached the GPL, neither the case law nor the GPL supports the concept of retroactive termination.

First, the copyright cases expressly discussing the issue have rejected the notion of "retroactive" breach, termination, and infringement.  In MCA Television, Ltd. v. Public Interest Corp., 171 F.3d 1265 (11th Cir. 1999), for example, the court explained:

> The notion that MCA had the power retroactively to rescind the contract makes a mockery of that contractual agreement and would put any contracting party in PIC's position in terror of upsetting the licensor in any way for fear of being declared in breach, having the contracted-for licenses "retroactively revoked," and being sued both for breach of contract and in copyright for statutory damages that can far outweigh contractually negotiated licensing fees.

Id. at 1274 n.8; see also Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753 (11th Cir. 1997) (holding that one party's breach does not automatically rescind a contract simply because that breach might give the other party the right to rescind); 3 Melvin B. Nimmer, Nimmer on Copyright § 10.15[A] at 10-120 (2004) ("[T]he license is terminated and the copyright proprietor may hold his former grantee liable as an infringer for subsequent use of the work.  Failing such rescission . . . the grant continues in place . . . until such time as the copyright owner exercises his entitlement to rescind.").

Second, Section 4 of the GPL provides that in the event of a licensee's breach and termination, sublicenses previously granted by that licensee remain in full force and effect.  (¶ 40.)  Since the GPL effectively ratifies sublicenses granted prior to the alleged breach, IBM cannot complain that the initial grant was unauthorized.

25

The premise of IBM's copyright infringement claim – repudiation and breach of the GPL and retroactive termination – fails as a matter of law. Accordingly, the claim must also fail as a matter of law.[4]

## IV.  BECAUSE LINUX IS AN UNAUTHORIZED DERIVATIVE OF SCO'S UNIX SYSTEM V, IBM CANNOT ASSERT ITS ALLEGED COPYRIGHTS

IBM contends that by distributing Linux, SCO infringed IBM's alleged copyrights in code it contributed to Linux. However, because Linux is a derivative work unlawfully derived from SCO's System V, Tenth Circuit law precludes IBM from asserting its claim of copyright infringement based on those contributions.

The Copyright Act and the Tenth Circuit both make clear that a party may not create an unlawful derivative work, copyright it, and then assert the copyright against the author of the pre-existing work. "[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103(a). The Tenth Circuit has interpreted this language to mean that an infringing derivative work cannot be copyrighted. Palladium Music, Inc. v. Eatsleepingmusic, Inc., 398 F.3d 1193, 1197 (10th Cir. 2005) ("A work can generally be copyrighted as derivative work only if the new work was produced with permission of the copyright owner of the preexisting work or its duly authorized licensee.").

In Palladium, the Tenth Circuit affirmed the district court's grant of summary judgment against plaintiff's infringement claim. Id. at 1194. The Court concluded that "[plaintiff]

---

[4] IBM does not expressly challenge the negligible sales that SCO recognized after the alleged repudiation and breach. Even if the challenge is implicit in IBM's papers, those sales cannot support IBM's motion for the other reasons set forth herein, including most basically that SCO fully complied with the GPL.

Palladium's copyrights in the sound recordings at issue are invalid and unenforceable" because the sound recordings were "based" on preexisting copyrighted works and Palladium had failed to obtain licenses from the copyright owners. Id. at 1198-99.

In this case, the expert reports and IBM's internal documents support the conclusion that Linux is a derivative of SCO's UNIX System V:

- Expert Thomas Cargill concluded that Linux is substantially similar to, and a derivative work based on, SCO's UNIX System V, Release 4 ("SVr4"). (¶ 40.)

- IBM's experts do not dispute that Linux is a derivative of SVr4, and they admit that Linux is a "Unix-like system." (¶ 41.)

- The IBM document entitled "What Makes Linux Different" boasts that Linux is "Derived from UNIX" and that Linux works because "UNIX was a pre-write of Linux". (¶ 42.)

- An IBM internal presentation boasts that "UNIX was a pre-write of Linux" and that Linux is a "UNIX-like operating system." (¶ 43.)

- The script for an IBM broadcast entitled "Linux in the Marketplace" states: "As many of you know, Linux is a Unix-like operating system that was originally developed by Linus Torvalds." That script goes on to say that "Linux has its roots in UNIX" and "Linux is based on UNIX" and therefore "UNIX skills are easily transferable to Linux." (¶ 44.)

- An IBM-sponsored white paper declares: "Comparing the 10 most favorable attributes of Unix to those of Linux, we see that there is more commonality, with four common attributes on both operating environments' top 10 lists, which underscores

the similarity between the two environments." The same paper boasts that "[b]ecause the Linux products in most cases originate from the same code base as the Unix products, the Linux executables carry forward." (¶ 45.)

- Indeed, the website www.kernel.org, the primary site for the Linux kernel, states that "Linux is a clone of the operating system Unix" and "has all the features you would expect in a modern fully-fledged Unix". (¶ 46.)

SCO owns and has registered the copyrights to SVr4.[5] It is undisputed that SCO, as the copyright holder, has not authorized the use of Linux, and therefore Linux is an unauthorized derivative work that infringes on SCO's copyrights in SVr4. Under Palladium, IBM's copyright in material in Linux is invalid because Linux as a whole, including the works, is an infringing derivative work of SCO's UNIX System V. (¶¶ 40-46.) Therefore, IBM cannot assert any alleged rights in Linux material, particularly against SCO, the owner of the pre-existing work on which Linux is based.

## V.   IBM'S PROPOSED INTERPRETATION OF THE GPL RUNS COUNTER TO PUBLIC POLICY AND THE LAW

SCO's previous arguments easily suffice to resolve the pending motion, but there are additional reasons why IBM's position must be rejected.

First, the GPL should not be read to interfere with SCO's right to enforce its own intellectual property rights. Nothing in the GPL expressly forbids a party from licensing its own software or entering into settlements to resolve potential infringement of such rights. (¶¶ 32-33.) Any construction of the GPL to do so should be rejected as inconsistent with the public policy in

28

favor of protecting intellectual property, <u>San Juan New Materials High Tech, Inc. v. Int'l Trade Comm'n</u>, 161 F.3d 1347, 1363 (Fed. Cir. 1998); <u>Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 612 (1st Cir. 1988), as well as the public policy favoring and encouraging settlements, <u>Grady v. de Ville Motor Hotel</u>, 415 F.2d 449, 451 (10th Cir. 1969); <u>Grundberg v. Upjohn Co.</u>, 140 F.R.D. 459, 468 (D. Utah 1991); <u>see also</u> <u>Justine Realty Co. v. Am. Nat'l Can Co.</u>, 976 F.2d 385, 391 (8th Cir. 1992).

<u>Second</u>, the GPL should not be read to allow a competitor to regulate what may be charged for an intellectual property license.  In arguing that SCO breached the GPL by collecting "royalties and licensing fees in excess of the fees permitted by the GPL," IBM has sought in essence an interpretation for the GPL that fixes limits on the amounts that may be charged for unmodified works, even though the parties to the agreement are competitors.  Agreements between competitors that fix a maximum price that may be charged for products are <u>per se</u> illegal under antitrust law.  <u>NYNEX Corp. v. Discon, Inc.</u>, 525 U.S. 128, 133 (1998); <u>United States v. Socony-Vacuum Oil Co.</u>, 310 U.S. 150, 218 (1940).

In addition to its inapplicability shown above, IBM's interpretation of Section 2 (the only GPL provision requiring licensing "at no charge") would render that Section illegal and unenforceable.  The general counsel for the Open Source Initiative acknowledges in his recent treatise: "There is also a problem that may prevent enforcement of the GPL's *at no charge* provision.  It may be an illegal restraint of trade in some countries.  Ordinarily, companies are

---

[5] <u>See</u> SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its  Claim for Declaratory Judgment of Non-Infringement (IBM's 10th Counterclaim) (Nov. 11, 2006) ¶¶ 48-69.)

allowed to set their own prices, and it is improper for a GPL licensor to restrain that in any way."
(Ex. 341 at 132.)

It is a "well settled principle that where a contract is susceptible of two interpretations, preference will be given to the interpretation which does not violate the law." Bd. of Dirs. and Officers, Forbes Fed. Credit Union v. Nat'l Credit Union Admin., 477 F.2d 777, 784 (10th Cir. 1973); accord NLRB v. Local 32B-32J Serv. Employees Int'l Union, 353 F.3d 197, 202 (2d Cir. 2003); Guthart v. White, 263 F.3d 1099, 1104 (9th Cir. 2001).  Accordingly, the Court should not construe the GPL as IBM suggests.

## VI.   IBM'S MOTION ALSO FAILS BECAUSE IBM COMES TO THE COURT WITH UNCLEAN HANDS

IBM's motion also fails for unclean hands.  As a general matter, the doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945).  In the copyright context, the doctrine applies when the "plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." Tempo Music, Inc. v. Myers, 407 F.2d 503, 507 & n.8 (4th Cir. 1969); see also 4 Nimmer, supra, § 13.09; 18 Am. Jur. 2d Copyright § 220.

### A.   IBM's Contributions to Linux Violate SCO's Rights

The Tenth Circuit has recently affirmed the following tenet of the unclean hands doctrine:  "Where a plaintiff interferes with the defendant's ability to comply with his or her responsibilities, a court of equity will not turn a blind eye to the net effect on the parties'

equitable relationship." <u>Worthington v. Anderson</u>, 386 F.3d 1314, 1321-22 (10th Cir. 2004). The court further and specifically affirmed in that case that the unclean hands doctrine applies where "the plaintiff's own machinations had prevented the defendant from meeting the conditions of its licensing agreement." <u>Id.</u> at 1321; <u>see, e.g.</u>, <u>Tempo Music</u>, 407 F.3d at 507-08 (applying doctrine of unclean hands in holding that it would be inequitable to permit the plaintiff to recover for copyright infringement that occurred, "in part at least," by the plaintiff's "dereliction"). It is also well established in the intellectual-property context that the defense will apply if the claimant made "any material false statement in connection with the property which he seeks to protect." <u>Worden & Co. v. Cal. Fig Syrup Co.</u>, 187 U.S. 516, 528 (1903).

SCO determined to offer its UNIX License, beginning in August 2003, <u>because</u> IBM and others had misappropriated SCO's proprietary source code into Linux. (<u>See</u> ¶¶ 36, 47.)

REDACTED

### C.   IBM Sought Evidence for Its Claims by Hacking Into SCO's Website

Another well-established basis for the application of the doctrine in the context of the Copyright Act arises when the claimant has obtained evidence by improper means.[6]

---

[6] <u>See, e.g.</u>, <u>Fleming v. Miles</u>, 181 F. Supp. 2d 1143, 1154 (D. Or. 2001) (holding copyright registrant who denied existence of competing registration in his registration application could not recover damages for alleged infringement by competing registrant); <u>Russ Berrie & Co. v. Jerry Elsner Co.</u>, 482 F. Supp. 980, 987-88 (S.D.N.Y. 1980) (declining to enforce copyright because the owner's knowing failure to disclose material facts in registration applications constituted "reason for holding the registration invalid and thus incapable of supporting an infringement action, or denying enforcement"); <u>Rixon, Inc. v. Racal-Milgo, Inc.</u>, 551 F. Supp. 163, 171 (D. Del. 1982) ("Unclean hands in the procurement of a patent from the Patent and Trademark Office or in prior enforcement action, for example, may render the patent unenforceable."); <u>see also</u> Nimmer, <u>supra</u>, § 13.09[B] (the doctrine applies where the claimant "obtained

31

SCO provided its customers who purchased SCO Linux Server 4.0 with a password to enter at a log-in screen so that only they could access the source code via the internet.  (¶¶ 47-50.)  After news of a bug in the website's security system was reported on internet websites, IBM exploited the bug to bypass SCO's security system, hack into SCO's computers, and download the posted Linux files.  (¶ 51.)  IBM has attempted to use these files as purported evidence supporting not only this counterclaim but also its pending motion for summary judgment on SCO's contract claims.  (¶ 51.)

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), makes it a felony for any person to access another person's computer, via the internet or otherwise, unless authorized to do so.  See, e.g., Creative Computing v. GetLoaded.com LLC, 386 F.3d 930 (9th Cir. 2004); I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp. 2d 521, 523-24, 526 (S.D.N.Y. 2004) (citing cases); AOL, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444, 450 (E.D. Va. 1998).  By improperly obtaining purported evidence for its claims, IBM comes to the Court with unclean hands foreclosing the relief it seeks.

## VII.  IBM IS NOT REMOTELY ENTITLED TO INJUNCTIVE RELIEF

IBM argues (at 21) that it is "entitled to summary judgment granting an injunction against further violations of its copyrights."  For the foregoing reasons, IBM cannot establish that SCO has violated its copyrights, and even if IBM could, its claim that SCO continues and threatens to infringe its copyrights is specious.

For a party to obtain a permanent injunction, it must prove:  (1) actual success on the

---

information as to the nature of defendant's work through unfair means"); see also Gemveto Jewelry Co., Inc. v. Lambert Bros., Inc., 542 F. Supp. 933, 939 (S.D.N.Y. 1982).

merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. <u>Fisher v. Oklahoma Health Care Auth.</u>, 335 F.3d 1175, 1180 (10th Cir. 2003); <u>Prairie Band Potawatomi Nation v. Wagnon</u>, 402 F. 3d 1015, 1019 (10th Cir. 2005). IBM simply cannot prove any of these elements.

<u>First</u>, for the reasons set forth in the previous sections of this brief, IBM is not entitled to summary judgment and therefore cannot at this stage establish success on the merits. SCO has always complied with the GPL, and there is no merit in law or fact for the argument that SCO has lost the right to use and distribute Linux under the GPL. <u>See</u> Argument, Parts I-III, above. Indeed, as set forth in SCO's own motion for summary judgment on the sixth, seventh, and eighth counterclaims, SCO is entitled to judgment as a matter of law – not IBM.

<u>Second</u>, IBM argues (at 22) that it will suffer irreparable harm unless the injunction is granted because "SCO has assured its customers up to the very present that it will 'continue to support existing SCO Linux and Caldera OpenLinux customers.'" On the basis alone of that quotation of a footnote on a SCO webpage, <u>see</u> ¶¶ 55-58, IBM concludes that "there is a substantial likelihood of further infringement" by SCO. This argument is specious on several levels.

First, as previously explained, even if (contrary to fact) SCO had continued to use or provide Linux for customer support after its obligations to its customers ended in 2004, SCO could have properly done so because it has fully complied with, and has not repudiated or breached, the GPL. (¶¶ 1-34.) Second, as a factual matter, IBM quotes from a dated webpage, intended for customers visiting the page in 2003. (¶ 59.) Third, even if the quotation were

directed at current visitors to the webpage, the quotation in no way represents a threat of irreparable harm to IBM.  It is undisputed that SCO has no "existing" Linux customers, let alone any "existing" contractual obligations to provide its former Linux customers support.  (¶61.) As SCO has repeatedly stated in sworn statements and pleadings, its contractual obligations to former Linux customers ended nearly two years ago.  (¶ 61.)

Third, the threatened injury to IBM cannot possibly outweigh any harm to SCO, because, as explained, there is no threat of injury to IBM.

Fourth, no public interest is at issue where SCO has not infringed, and does not threaten to infringe, IBM's alleged copyrights.

## **CONCLUSION**

SCO respectfully submits, for all of the reasons stated above and as set forth in Appendix A hereto, that this Court should deny IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim).

DATED this 11th day of November, 2006.

By _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Stuart H. Singer (admitted pro hac vice)
Edward Normand (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*