**Appendix A**

**Response to IBM's Statement of Undisputed Facts[7]**

A.      Open Source Software and the General Public License

1.      Historically, most important commercial software has been developed by companies who have made very large investments in the development process, and have commonly sought to recoup that investment through licensing fees. (Ex. 226 ¶ 4.)

Undisputed.

2.      As computer systems have continued to grow in power, and the functions demanded of software systems have grown ever more complicated, the investment required to develop and bring to market a major new software product such as an operating system has escalated, while the difficulty of making these systems reliable and "bug free" has likewise escalated. (Ex. 226 ¶ 5.)

Undisputed.

3.      The so-called "Free Software" movement introduced a new model of software development and of compensation for investments in development. This model was pioneered by Richard Stallman and the Free Software Foundation ("FSF"). (Ex. 226 ¶ 6; Ex. 398 at 1-10.)

Depending on the meaning of the undefined term "Free Software," disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly permitted by the GPL. (¶ 32.) Disputed to the extent the statement suggests, without substantiation, that all "open source" licenses require that licensed material be made freely available to others by the licensee. Disputed to the extent the cited material does not support the assertion that the Open Source movement introduced a new model of compensation for investments in development. Disputed to the extent the statement asserts that the Open Source movement introduced a model of compensation for investment in development, in that

_____

[7] In citing its basis for disputing an IBM statement of fact, SCO cites herein either the paragraphs in SCO's Statement of Facts above or directly to exhibits, or both.

(among other things) the Open Source model requires software developers to give away their intended contributions to open source; the GPL does not warrant the licensed materials; and SCO has been damaged by the unauthorized use in Linux of SCO's proprietary technology. (See, e.g., SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Contract Claims (Nov. 11, 2006) ¶¶ 192-97; IBM Ex. 128 Preamble, §§ 11-12.)

4.      At a high level, the paradigm of "free" software is that copyright owners make their source code available to others to use, modify, and distribute on a royalty-free basis, in exchange for the reciprocal right to use, modify and distribute any additions or improvements contributed by those licensees and sublicensees, on the same royalty-free basis. (Ex. 226 ¶ 6; Ex. ¶¶ 22-24.)

Disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly permitted by the GPL.  (¶¶ 32.)  Disputed to the extent the statement suggests that all "open source" licenses require that licensed material be made freely available to others by the licensee.  (See, e.g., Ex.387; Ex. 388.)

5.      This new licensing paradigm has unleashed a wave of global, collaborative software creativity, as networks of developers, who in many cases have no commercial affiliations with each other, continually contribute improvements and "bug fixes" to open source software packages. (Ex. 226 ¶ 7.) The development of the Linux operating system is the best known but by no means the only product of this new development model; the SAMBA software suite (file and print services) and the Apache web server software are other widely used creations of "Free Software" collaborations. (Ex. 290 ¶ 33.)

Disputed to the extent the cited material (Exhibit 226) does not reflect the personal knowledge but rather the inadmissible opinion or speculation of the person whose declaration is the basis for the statement.  Depending on the meaning of the undefined term "Free Software," disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly prohibited by the GPL.  (¶¶ 8-11, 32.)  Disputed to the extent the statement suggests that Linux, SAMBA, and Apache are made available under the

same terms. (See, e.g., Ex. 128; Ex. 388.)

      6.     The "Free Software" development model is relatively new, but it is neither utopian nor anarchical; it requires legal structures and protection to function successfully. The most widely used legal license agreement that makes the Free Software model possible is the so-called GNU General Public License or "GPL". (Ex. 398 at 1-10.) This license was developed by Richard Stallman and its first version first published in 1989; its current version was promulgated in 1991. (Ex. 398 1-6; Ex. 128.) Neither IBM nor SCO had any involvement in the development of the terms of the GPL.

          Disputed to the extent the first sentence of the statement makes bare allegations and

reflects opinion or speculation. Depending on the meaning of the undefined term "Free

Software," disputed to the extent the statement suggests that software licensed under the GPL

may not be distributed for fees other than those expressly permitted by the GPL. (¶¶ 8-11, 32.)

Disputed to the extent that the statement suggests that the GPL or the Open Source development

model ensures that code contributed to Linux is unencumbered. (¶¶ 32, 36, 47.)

      7.     There is a variant of the GPL referred to as the "Lesser General Public License" or "LGPL". (Ex. 129.) The LGPL states that it is designed for use with "some specially designated software packages – typically libraries". (Ex. 129, Preamble.) However, the terms of the LGPL are identical to those of the GPL in all respects material to the present motion, and the GPL and LGPL are referred to collectively as the "GPL" in the present motion.

          Undisputed.

      8.     The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work. A software developer who elects to publish copyrighted software subject to the GPL, however, offers to all (the "General Public") a royalty free license to use, copy, modify, and distribute. (Ex. 128 §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.)

          Undisputed.

      9.     The GPL makes clear that no one is obligated to accept the terms of the GPL, but must do so if they wish to copy, distribute or modify any GPL software: "You are not required to accept this License . . . . However, nothing else grants you permission to modify or distribute the [IBM Copyrighted Works] or its derivative works." (Ex. 128 § 5 (emphasis added); see also Ex. 129 § 9.)

          Undisputed.

10.    At its simplest level, the GPL provides that anyone may help themselves to the benefit of copying, modifying, distributing the work on a royalty free basis, provided they agree to distribute that work -- and to license any derivative works -- only under the terms of the GPL. (Ex. 128  §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.)  As the "Preamble" to the GPL states:

> Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of software . . . . To protect your rights, we need to make restrictions that forbid anyone to deny you these rights . . . . These restrictions translate into certain responsibilities for you if you distribute copies of the software, or if you modify it.  For example, if you distribute copies of [a program licensed under the GPL] . . . you must give the recipients all the rights that you have. (Ex. 128, Preamble; see also Ex. 129, Preamble.)

Disputed to the extent the last quoted sentence in the statement actually states:  "For example, if you distribute copies of such a program, whether gratis or for a fee, you must give recipients all the rights that you have."  (Ex. 128, Preamble.)  Disputed to the extent the statement suggests, without substantiation, that the GPL requires that a party who redistributes GPL-licensed software give to recipients rights other than those it acquired under the GPL and did not independently possess.

11.    The GPL expressly prohibits the imposition of any "further restrictions" on the recipient's rights granted under the GPL.  The collection of any licensing fees or royalties is expressly prohibited by the GPL:

> You must cause any work that you distribute or publish, that in whole or in part contains or is derived [a GPL licensed program] or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this agreement.  (Ex. 128 § 2; see also Ex. 129 § 2.)

Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility.  (¶ 32.)  Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the

licensing of modifications of the GPL-licensed program) applies to the redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3.  (¶¶ 8-11, 32.)

Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL.  (¶¶ 8-11, 24-34.)  Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO.  (¶¶ 33-34.)

12.     The GPL uses the term "derivative work" in accordance with its definition under copyright law. (Ex. 128 § 0; see also Ex. 129 § 0.)  A "derivative work" means "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast". 17 U.S.C. § 101.

Undisputed.

13.     The GPL permits a licensee to collect a fee to cover the cost of "the physical act of transferring a copy", and permits a licensee to charge fees for service and warranty protection. (Ex. 128 § 1; see also Ex. 129 § 1.)

Undisputed.

14.     The LGPL similarly states that with respect to any "work based on the [LGPL-licensed] Library", "You must cause the whole of the work to be licensed at no charge to all third parties under the terms of this License." (Ex. 129 § 2(c).)

Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property that has been wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility.  (¶ 32.)  Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to the redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3.  (¶¶ 8-11, 32.)

5

15.     The GPL expressly states:

> You may not copy, modify, sublicense, or distribute the [GPL licensed] Program
> except as expressly provided under this License.  Any attempt otherwise to
> copy, modify, sublicense, or distribute the Program is void, and will
> automatically terminate your rights under this License. (Ex. 128 § 4; see also Ex.
> 129 § 8.)

Undisputed.

16.     In other words, one who attempts to help himself to copyrighted software owned
by others and made available under the GPL, while attempting to sublicense or distribute
derivative works on terms other than those of the GPL, is not licensed under the GPL, and is
infringing if he makes any use of the GPL-licensed software.  (Id.)

Disputed because the statement draws a legal conclusion instead of stating a fact.

Disputed because the cited materials do not state that legal conclusion.  Disputed to the extent

the statement seeks to summarize the GPL.

B.      Linux.

17.     The development of Linux began when an undergraduate student at the University
of Helsinki, Linus Torvalds, set out to create a new, free operating system.  In 1991, Torvalds
began developing the core of the operating system, known as the "kernel", and some months later
posted news of his project to Internet newsgroups, inviting volunteers to assist in his efforts. (Ex.
272 ¶¶ 3-4.)

Disputed to the extent that the statement suggests that Linux is an original work instead of

a unauthorized derivative work based on UNIX System V.  (¶¶ 40-46.)

18.     With the Internet providing for a distributed collaboration, other programmers
joined to write the code making up the kernel.  Torvalds directed the collaboration to a version
1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development
since.  (Id. ¶ 5.)

Disputed to the extent the statement suggests that Linux is an original work instead of an

unauthorized derivative work based on UNIX System V.  (¶¶ 40-46.)

19.     Commencing in 1991, Torvalds released Linux subject to the GPL, and since that

time Linux has only been made available pursuant to the terms of the GPL. (Ex. 573 at SCO1304374.)  In addition, Linux contributors including IBM have included explicit statements within code modules they contributed to Linux emphasizing that those modules are copyrighted by their original contributor, and are made available only under the terms of the GPL. (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104.)

       Undisputed.

       20.     Since the release of Linux version 1.0, developers around the world have contributed to the ongoing development of Linux, under the terms of the GPL, representing an enormous investment and value available without license fee to all who accept and abide by the terms of the GPL. (See Ex. 5 ¶¶ 23, 26, 27; Ex. 364; Ex. 105 at 15, 23, 26; Ex. 194 ¶ 5.)

       Disputed to the extent the statement suggests that Linux development has taken place

without the unauthorized use of UNIX technology.  (¶¶ 36-47.)  Disputed to the extent the

statement suggests, without substantiation, that the value of Linux as an enterprise operating

system derives only from any proper contributions made to Linux under the GPL.

       21.     A number of companies distribute Linux on a commercial basis. (Ex. 105 at 5-8, 26.)  These distributors offer a variety of commercial Linux products, which typically comprise the Linux kernel, low level applications that run on the kernel and provide additional system functions, and whatever else the distributor chooses to combine into an installable software product. (See Ex. 105 at 5-8.)  Major businesses have been built on providing business-quality support and service for "free" software, a well-known example being that of the Red Hat Corporation, which sells services in connection with Linux, although it distributes Linux under the terms of the GPL (as it must), and thus charges no license fees for its Linux "distribution". (Ex. 111 at 12-13; Ex. 8 ¶ 32.)

       Disputed to the extent the last sentence of the statement suggests that Red Hat distributes

verbatim copies of the Linux kernel, instead of (as the second sentence indicates) a derivative

work which, under Section 2 of the GPL, must be distributed at "no charge."  (¶¶ 8-11.)

       22.     SCO was founded in 1994 under the name Caldera, Inc., as a commercial distributor of Linux products. (Ex. 105 at 29-31.)  Over the years, SCO has developed and marketed a number of software products containing Linux code, including Caldera Network Desktop, OpenLinux and SCO Linux.  (Ex. 105 at 30-31; Ex. 296 at 13:17 – 17:18, 34:12 – 36:17.)

       Undisputed.

C.     IBM's Contributions to Linux

23.     Among the companies that have made contribution that have become part of Linux is IBM.  (See Ex. 5 ¶ 45; Ex. 167 ¶ 7.)  IBM has made extensive contributions of computer code developed by IBM to the Linux kernel. (Ex. 167 ¶¶ 5-7; Ex. 5 ¶¶ 20, 108.)  IBM holds copyrights, including registered copyrights, on many of its contributions to Linux. (Ex. 167 ¶ 5.)

Disputed to the extent the statement suggests that IBM did not improperly contribute to Linux and release under the GPL proprietary SCO materials that were derived from UNIX source code or were subject to confidentiality restrictions in IBM's UNIX licensing agreements with SCO, or both.  (¶¶ 36, 47.)  Disputed to the extent the statement asserts that IBM has valid copyrights to the materials it contributed to Linux and released under the GPL, including the works, which assertion is a legal conclusion and not a statement of fact.

24.     IBM contributions to Linux on which IBM holds registered copyrights include the works listed in Table 1 below (collectively, the "IBM Copyrighted Works").  The length of each of the Copyrighted Works is as indicated in Table 1, and the copyright registration for each of these Copyrighted Works, together with a copy of the work or relevant portions of the work, are submitted as exhibits as indicated in Table 1 :

**Table 1.**

| Ex. | Products Carrying IBM's Works | Lines of Code | Title of Work | Registration | Registration Date |
|-----|------------------------------|---------------|---------------|--------------|-------------------|
| 89 | SCO Linux Server 4.0 | 289, 943 | Enterprise Volume Management System | TX 5-757-696 | 8/15/2003 |
| 90 | SCO Linux Server 4.0 | 2,048 | Enterprise Class Event Logging | TX 5-757-698 | 8/15/2003 |
| 91 | SCO Linux Server 4.0 | 2,411 | Dynamic Probes | TX 5-757-698 | 8/15/2003 |
| 92 | SCO Linux Server 4.0 | 19,042 | Linux Support Power PC64 | TX 5-757-699 | 8/15/2003 |
| 93 | SCO Linux Server 4.0 | 366,407 | Omni Print Driver | TX 5-757-700 | 8/15/2003 |
| 94 | SCO Linux Server 4.0 | 9,914 | Journaled File System | TX 5-757-701 | 8/15/2003 |

| 95 | SCO Linux Server 4.0 | 1,851 | Next Generation Posix Threading | TX 5-757-702 | 8/15/2003 |
| 96 | SCO Linux Server 4.0 | 4,302 | Linux Kernel Support for JFS | TX 5-856-466 | 2/2/2004 |
| 97 | SCO Linux Server 4.0 | 57,670 | Linux Kernel S390 Support | TX 467 | 2/2/2004 |
| 98 | SCO Linux Server 4.0 | 2,554 | Linux Kernel Support for Service Processor | 468 | 2/2/2004 |
| 99 | SCO Linux Server 4.0 | 2,277 | Kernel Support for Memory Expansion Technology | TX 469 | 2/2/2004 |
| 100 | SCO Linux Server 4.0 | 7,455 | Linux Kernel Support for IBM eServer iSeries Devices | TX 470 | 2/2/2004 |
| 10 1 | SCO Linux Server 4.0 | 1,122 | Kernel Support for PCI Hotplug | TX 47 1 | 2/2/2004 |
| 102 | SCO Linux Server 4.0 | 364 | Linux Kernel Support for pSeries Hypervisor Terminal | TX 472 | 2/2/2004 |
| 103 | SCO Linux Server 4.0 | 4,412 | Linux Kernel PPC64 Support | TX 473 | 2/2/2004 |
| 104 | SCO Linux Server 4.0 | 2,523 | Kernel Support for Mwave Modem | TX 474 | 2/2/2004 |

(Ex. 73; Ex. 74; Ex. 75; Ex. 76; Ex. 77; Ex. 78; Ex. 79; Ex. 80; Ex. 81; Ex. 82; Ex. 83; Ex. 84; Ex. 85; Ex. 86; Ex. 87; Ex. 88; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 9.)

Disputed to the extent the statement suggests that IBM did not improperly contribute to Linux and release under the GPL proprietary SCO materials (including at least some of the works) that were derived from UNIX source code or were subject to confidentiality restrictions in IBM's UNIX licensing agreements with SCO, or both. (¶¶ 36, 47.) Disputed to the extent the statement suggests that IBM has valid copyrights to materials it contributed to Linux and

9

released under the GPL.

25.     The registration of each of these IBM Copyrighted Works was made within five years of the first publication of the relevant work. (Ex. 167 ¶ 5.)

Disputed to the extent IBM has not substantiated the statement.

26.     IBM made its Copyrighted Works publicly available by posting them on the Internet as part of the Linux development process. (Ex. 167 ¶ 7.) Subsequently, each of IBM's Copyrighted Works was incorporated into SCO's Linux products, as indicated in Table 1. Each of the IBM Copyrighted Works is licensed to others (including SCO) only under the terms of the GPL or the LGPL. (Ex. 167 ¶ 7.) All of the IBM Copyrighted Works are licensed under the GPL, except IBM's "Omni Print Driver" and IBM's "Next Generation Posix Threading", which are licensed under the LGPL. (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 7.)

Undisputed.

27.     There is no claim in this case that the IBM Copyrighted Works represent intellectual property of SCO.  With respect to most of the IBM Copyrighted Works, there is no claim that IBM violated any contractual obligations to SCO by contributing such code into Linux. (See e.g., Ex. 54.)

Disputed to the extent the statement asserts that "there is no claim that the IBM

Copyrighted Works represent intellectual property of SCO." (¶¶ 36, 40-47.)

28.     With respect to a few of the IBM Copyrighted Works, SCO does claim that IBM was contractually barred from contributing certain of the IBM Copyrighted Works to Linux. (See, e.g. Ex. 54, Item No. 1 (claiming contractual rights over IBM's JFS).)  It is undisputed, however, that all of the listed works were developed by IBM, not by SCO, that they are intellectual property of IBM, and that IBM holds valid, registered copyrights in these works. (Ex. 167 ¶¶ 4-5.)

Disputed to the extent the statement asserts that "all of the listed works were developed

by IBM, not by SCO" and are "intellectual property of IBM," in that at least some of the works

were derived from UNIX source code or were made with the benefit of SCO's intellectual

property. (¶¶ 36, 40-47.)  Disputed to the extent the statements purports to state facts that are not

material to this motion.  Disputed to the extent the statement asserts that IBM holds valid

copyrights in the works, which assertion is a legal conclusion and not a statement of fact.

D.      SCO's Extensive Use of Linux and of IBM's Copyrighted Code Included in Linux.

29.     As noted above, SCO (first under the name Caldera) was founded as a commercial distributor of Linux products. (Ex. 105 at 29-31.) Like other Linux distributors, SCO was barred by the GPL from charging license fees for distributing Linux, but sought to profit selling software products and services in conjunction with Linux. (Ex. 128 §§ 2-3; Ex. 129 §§ 2, 4; Ex. 4 at 29-31.)

Disputed to the extent the statement suggests that the GPL bars SCO (or any licensee)

from charging fees for its own intellectual property included in Linux without authorization or

for verbatim distributions of the GPL-licensed program.  (¶¶ 8-11, 32.)

30.     In November, 2002, SCO began distributing a product it called "SCO Linux Server 4.0, powered by UnitedLinux", which included the Linux 2.4.19 kernel. (Ex. 296 at 15:7 - 18, 35:12 – 36:17, 92:1 – 22; Ex. 486 at 908; Ex. 284 ¶ 3; Ex. 352 at SCO1270432.)  SCO Linux Server 4.0 contained, verbatim, the entirety of each of the IBM Copyrighted Works listed in Table 1 above, with the exception of IBM's copyrighted "Omni Print Driver". (Ex. 167 ¶ 9; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 405; Ex. 69 ¶ 13.)  SCO has admitted this without qualification. (See Ex. 45, Nos. 108-117.)

Disputed to the extent the word "admitted" suggests that SCO has acknowledged any

wrongdoing in its distribution of Linux.  See Argument, Part I, above.

31.     SCO also distributed a product it called "OpenLinux 3.1.1 Asia".  (Ex. 406; Ex. 69 ¶ 13.)  SCO OpenLinux 3.1.1 Asia contained, verbatim, the entirety of IBM' s "Omni Print Driver". (Ex. 69 ¶¶ 3, 13; 167 ¶ 9; Ex. 93; Ex. 406.)

Undisputed.

32.     In copying these IBM Copyrighted Works into SCO Linux products, SCO repeatedly copied over 783,000 lines of code to which IBM holds the copyrights, and which were made available and came into possession only pursuant to the GPL.  (Ex. 167 ¶¶ 4 - 11.)

Disputed to the extent the statement asserts that SCO copied the works "into SCO Linux

products," where in fact SCO distributed verbatim copies of the GPL-licensed program that

already included the works.  (¶¶ 1-7.)  Disputed to the extent the statement suggests that IBM

holds valid copyrights to the referenced code.

33.                              REDACTED

Disputed because the cited materials do not support the statement. Disputed to the extent

the statement suggests that SCO has not identified Linux as a whole to be an unauthorized

derivative work based on UNIX System V. (¶¶ 40-46.)

34.    SCO Linux Server 4.0 also contains extensive amounts of code to which parties
other than IBM or SCO hold the copyrights, and which were made available and came into
SCO's possession only pursuant to the GPL. (Ex. 352 at SCO1270432.)

Disputed because the cited material does not support the statement.

35.    In developing SCO Linux Server 4.0, SCO also made certain modifications and
additions to the Linux 2.4.19 kernel, such that SCO Linux Server 4.0 is a derivative work of the
Linux 2.4.19 kernel within the meaning of the GPL. (Ex. 352 at SCO1270430.) As noted
previously, the GPL requires that "You must cause any work that you distribute or publish, that
in whole or in part contains or is derived from the Program [the Linux 2.4.19 kernel] to be
licensed as a whole at no charge to all third parties under the terms of this License." (Ex. 128 §
2(b).)

Disputed to the extent the statement asserts that SCO made any modifications or

additions to the Linux 2.4.19 kernel in developing SCO Linux Server 4.0. (¶¶ 1-7.) Disputed to

the extent the statement asserts that SCO Linux Server 4.0 is a derivative work of the Linux

2.4.19 kernel under the meaning of the GPL (or any definition). (¶¶ 1-7.) Disputed in that the

cited exhibit does not support the assertion that "[i]n developing SCO Linux Server 4.0, SCO

also made certain modifications and additions to the Linux 2.4.19 kernel, such that SCO Linux

Server 4.0 is a derivative work of the Linux 2.4.19 kernel within the meaning of the GPL." (¶¶

3-7.) Disputed to the extent the statement suggests that Section 2 of the GPL, which governs the

copying and distribution of derivative works, applies to SCO's redistribution of the GPL-

licensed program verbatim in its SCO Linux Server 4.0 products. (¶¶ 8-13.)

36.    Pursuant to its business strategy, over time SCO distributed copies of SCO Linux

12

Server 4.0 and SCO OpenLinux 3.1.1 to customers. (Ex. 284 ¶¶ 4-7.)  In making and distributing each and every one of these copies, SCO literally copied the IBM Copyrighted Works. (Ex. 167 ¶ 11.)

     Undisputed.

     37.     In addition, as recently as August 11, 2006, SCO still posted copied Linux files on its own Internet website, including copies of the IBM Copyrighted Works (including at least Linux Kernel S390 Support, Linux Kernel Support, and Linux Kernel Support for Mwave Modem) and made them available to others to copy at will. (Ex. 215 ¶ 110; Ex. 226 ¶¶ 13-16.)

     Disputed to the extent the statement asserts that SCO distributed Linux files on its

Internet website as recently as August 11, 2006, in that SCO has not knowingly made Linux code

available on its website after December 31, 2004, when its contractual obligations with its Linux

customers ended.  (¶¶ 35-38.)  Disputed to the extent the statement and cited material suggest

(but do not state) that the Linux files that IBM allegedly downloaded from SCO's website on

August 11, 2006, included the works that are the purported basis for the counterclaim.  Disputed

to the extent the statement suggests that the files were reasonably accessible.  (¶ 15.)  Disputed to

the extent the statement suggests that anyone, other than purportedly IBM on August 11, 2006,

accessed and downloaded any Linux files from SCO's website after December 31, 2004.  (¶ 15;

see also Ex. 324.)

     38.     SCO profited by selling services and other software in conjunction with SCO

Linux Server 4.0 and SCO OpenLinux 3.1.1.  (Ex. 106 at 5-6; Ex. 111 at 6-7.)

     Disputed in that SCO did not profit "by selling services and other software in conjunction

with SCO Linux Server 4.0 and SCO OpenLinux 3.1.1."  (See e.g., Ex. 384 at 35; Ex. 385 at 35.)

     39.     To the present, SCO apparently continues to possess and use copies of Linux, including the IBM Copyrighted Works, internally.  While SCO claims that it has "suspended new sales and distribution of SCO Linux" during this litigation, it assures its install base of SCO Linux customers up to the very present that "SCO will, however, continue to support existing

SCO Linux and Caldera OpenLinux customers consistent with existing contractual obligations." (Ex. 48.)   REDACTED

Disputed to the extent the statement suggests that SCO's assertion that it has suspended all sales and marketing of its Linux products is inconsistent with its statements that it would continue to support its Linux customers pursuant to existing contractual obligations. (¶¶ 35-39.) Disputed to the extent the statement suggests that SCO continues to make Linux available to its customers pursuant to contractual obligations. (¶¶ 55-61.) Disputed to the extent the statement suggests that SCO would have breached the GPL had it continued to make Linux available to its customers. Disputed to the extent the statement suggests that SCO is unauthorized under the GPL to use and posses Linux internally (or otherwise, according to the terms of the GPL). (¶¶ 1-13.) Disputed to the extent the statement asserts that SCO uses Linux to run its website. (¶ 16.) Disputed to the extent the statement suggests that SCO provides or plans to provide Linux support. (¶ 61.)

E.    SCO's Blatant Violations of the GPL and Resulting Loss of License Rights.

40.    SCO continued to copy and distribute all of the IBM Copyrighted Works, and to profit from selling services and other software in conjunction with its distribution of IBM's Copyrighted Works, even after SCO repudiated and breached the GPL – its sole source of any rights to copy, modify, distribute, or sublicense Linux or the IBM Copyrighted Works. (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4, 7; Ex. 226; Ex. 215 ¶ 110.)

Disputed to the extent the statement asserts that SCO has profited "from selling services and other software in conjunction with its distribution of IBM's Copyrighted Works". (See, e.g., Ex. 384 at 35; Ex. 385 at 35.) Disputed to the extent the statement asserts that SCO "repudiated and breached the GPL," which assertion is a legal conclusion, not a statement of fact, let alone a statement of an undisputed fact. Disputed to the extent the statement asserts that SCO continued

to distribute SCO Linux Server 4.0 or SCO Open Linux 3.1.1 Asia – the allegedly infringing

products, which SCO stopped selling and marketing in May 2003 – after the dates of the actions

that IBM has identified as constituting the alleged repudiation and breach of the GPL by SCO

(the sale of the UNIX Licenses starting in August 2003, and the assertion of its affirmative

defenses <u>to</u> the eighth counterclaim in pleadings and deposition testimony <u>after</u> IBM filed that

counterclaim.)  (¶¶ 35-39.)  <u>See</u> also IBM statements of fact 41 and 44, below.

     41.     As early as August 2003, SCO began publicly declaring that the GPL was
unenforceable. (Ex. 330 at 268:3 – 270:24; Ex. 392.)

Disputed to the extent that the statement assets that SCO's assertions regarding the

unenforceability of the GPL constituted a repudiation of the GPL, which assertion is a legal

conclusion.

     42.     In this litigation, SCO has repeatedly repudiated the GPL.

     a.     SCO asserts that the GPL "is unenforceable, void and/or voidable" (Ex. 5 at 20
     (Sixth Affirmative Defense)); "violates the U.S. Constitution, together with
     copyright, antitrust and export control laws" (Ex. 7 at 16 (Eighth Affirmative
     Defense); Ex. 300 at 213:15-20); is unenforceable or inapplicable in this litigation
     (Ex. 5 ¶¶ 24, 28, 155, 157; and is preempted by federal copyright law and
     unenforceable under state law. (Ex. 36 at 38-39.)

     b.     In interrogatory responses, SCO again asserted that "SCO maintains that the GNU
     General Public License )'GPL') is not enforceable".  (Ex. 36 at 20.)

     c.     SCO also claims that all rights to enforce the GPL are waived and that all
     potential claimants are estopped from enforcing the GPL – in other words, that the
     GPL is a nullity. (Ex. 5 at 20 (Seventh Affirmative Defense); Ex. 300 at 213:14 –
     215:7.)

Disputed to the extent the statement asserts that "SCO has repeatedly repudiated the

GPL," which assertion is a conclusion of law rather than a statement of fact, let alone an one.

(<u>See</u> ¶¶ 20-23.)  Disputed to the extent that statement asserts that the cited statements by SCO

constitute, either individually or collectively, repudiations of the GPL; that assertion is a

conclusion of law and not a statement of fact, let alone an undisputed one. (See ¶¶ 20-23;

Argument Part II, above.)

43.     By May of 2003, SCO began overtly and explicitly asserting rights over Linux inconsistent with rights and obligations under the GPL, including by seeking license fees from users of Linux and imposing restrictions on users of Linux that are prohibited by the terms of the GPL. SCO took the position that use of Linux (which SCO had both received and distributed under the terms of the GPL) was not authorized without a paid license from SCO, and began threatening and initiating litigation against companies that used Linux:

a.      In May 2003, SCO sent letters to Fortune 1000 companies (including IBM) claiming that" Linux is, in material part, an unauthorized derivative of UNIX". SCO further stated that "[we] believe that Linux infringes on our UNIX intellectual property and other rights" and "intend to aggressively protect and enforce these rights". (Ex. 141.)

b.      In a May 14, 2003 press release, SCO stated that "Linux is an unauthorized derivative of UNIX and that legal liability for the use of Linux may extend to commercial users". SCO warned that non-SCO Linux customers could face liability for using Linux software "to run their business". (Ex. 356.)

c.      In a July 21, 2003 press release, SCO announced that it would be offering licenses to Linux end users, who could otherwise "face liability for running [Linux] in their organizations". (Ex. 357.)

d.      On August 5, 2003, SCO announced "the availability of the SCO Intellectual Property License for Linux". (Ex. 362.)

e.      In a December 22, 2003 press release, SCO announced that it had "commenced providing notification to selected Fortune 1000 Linux end users" that their distribution or redistribution of Linux containing code on which SCO purported to hold copyrights would constitute infringement. (Ex. 363.)

f.      In connection with its December 22 press release, SCO released a template of a letter dated December 19, 2003, sent to "Linux User". In that letter, SCO wrote that "the use of the Linux operating system in a commercial setting violates our rights under United States Copyright Act, including the Digital Millennium Copyright Act" and that "we will take appropriate actions to protect our rights". (Ex. 142.)

g.                                 REDACTED

h.     On March 3, 2004, SCO sued Autozone, Inc, in the United States District Court for the District of Nevada, alleging that Autozone, through its use of Linux, is infringing copyrights SCO purports to hold on UNIX, and sought to collect, as "damages", license fees and royalties in excess of that permitted to be collected by the GPL or LGPL.  (Ex. 9.)

i.     On August 10,2004, SCO was reported to be threatening to raise the price of its licenses "which it says companies running Linux need to buy in order to avoid being sued".  (Ex. 381.)

Disputed to the extent the statement asserts that "SCO began overtly and explicitly asserting rights over Linux inconsistent with rights and obligations under the GPL," which assertion is a legal conclusion and not a statement of fact, let alone an undisputed one.  (See ¶¶ 20-34.)  Disputed to the extent the statement suggests that SCO licensed, charged fees for, or imposed restrictions on the use of Linux.  (¶¶ 24-34.)  Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility.  (¶ 24-34.)  Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3.  (¶¶ 8-13.)

Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes

a "further restriction" under Section 6 of the GPL. (¶¶ 8-13, 24-34.) Disputed to the extent the

statement asserts that the purported prohibition (which is not found in the GPL) against licensing

one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL.

(¶¶ 33-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX

Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶

33-34.) Disputed to the extent that SCO statement seeks to summarize or paraphrase the

referenced letters.

    44.    As a result of this campaign of fear, uncertainty and doubt (a tactic known in the industry as "FUD"), SCO succeeded in actually collecting license fees from a number of Linux users, in excess of the fees permitted by the GPL to be collected for the "physical act of transferring a copy" of the code or for warranty protection (Ex. 128 §§ 1-3; Ex. 129 §§ 1-2, 4), for a so-called "SCO Intellectual Property License for Linux". (Ex. 575.) SCO claimed that this license was necessary for "commercial use of the Linux 2.4 and later versions" (id.):

Disputed because the cited materials do not support (and indeed are wholly unrelated to)

the assertion that SCO's actions in any way amounted to a "campaign of fear, uncertainly and

doubt". Disputed because the cited materials do not support (and indeed are wholly unrelated

to) the assertion that SCO succeeded in collecting any alleged fees "as a result of" the alleged

campaign. Disputed to the extent the statement asserts that SCO charged fees in excess of the

those permitted by the GPL, which assertion is a conclusion of law and not a statement of fact,

let alone an undisputed one. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that

the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to

Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or

other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that

possibility. (¶¶ 24-34.) Disputed to the extent the statement asserts that the no-charge

requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-

licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3.  (¶¶ 8-13.)

Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL.  (¶¶ 8-13, 24-34.)  Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.)  Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO.  (¶¶ 33-34.)

Disputed to the extent the statement asserts that "SCO claimed that this license was necessary for 'commercial use of the Linux 2.4 and later versions'" because the cited material does not support that assertion.

    a.    On March 1, 2004, SCO sold Everyones Internet, Ltd. what SCO representatives described as a "Linux license" or "Linux IP license", telling Everyones Internet that this license was required "to use the SCO IP" on Everyones Internet's Linux servers.  (Ex. 224 ¶¶ 12; Ex. 404.)

    b.                            REDACTED

    c.                            REDACTED

    d.                            REDACTED

> e.     In fact, SCO's entire division is dedicated to selling licenses that "give end users the right to use the SCO intellectual property contained in Linux". (Ex. 366.)

Disputed because the cited materials do not support (and indeed are wholly unrelated to) the assertion that SCO's actions in any way amounted to a "campaign of fear, uncertainty and doubt". Disputed because the cited materials do not support (and indeed are wholly unrelated to) the assertion that SCO succeeded in collecting any alleged fees "as a result of" the alleged campaign. Disputed to the extent the statement asserts that SCO charged fees in excess of the those permitted by the GPL, which assertion is a conclusion of law and not a statement of fact, let alone an undisputed one. (¶¶ 8-11, 24-34.) Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶ 32.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-11.)

Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶

33-34.)

Disputed to the extent the statement asserts that "SCO claimed that this license was necessary for 'commercial use of the Linux 2.4 and later versions'" because the cited material does not support that assertion. Disputed to the extent the statement purports to establish that the UNIX Licenses licensed Linux by quoting selectively from some of them, without referencing the grant-of-rights portions, which make clear that the UNIX Licenses are licenses "to use SCO IP Rights" and expressly exclude Linux. (¶¶ 28-31.)

45.    In its "SCO Intellectual Property License for Linux" SCO purported to license only the use of Linux in object code format, thus prohibiting the use, modification, or distribution of the Linux source code.

a.    The stated mission of SCO's SCOSource division is to sell licensees the right to use "the SCO intellectual property contained in Linux, in binary format only". (Ex. 366.)

b.    In an August 5, 2003 press release, SCO announced that the license it was offering "permits the use of intellectual property, in binary form only, as contained in Linux distributions". (Ex. 362.)

c.                                   REDACTED

d.                                   REDACTED

Disputed to the extent the statement asserts that the UNIX Licenses licensed Linux. (¶¶ 28-31.) Disputed to the extent the statement asserts that the UNIX Licenses prohibited "the use, modification, or distribution of the Linux source code." (¶¶ 28-31.) Disputed to the extent the statement suggests that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux, where nothing in the GPL warrants that Linux is beyond the

reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 7, 11-12, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property in binary form only constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with parties who received a Linux distribution from SCO. (¶¶ 33-34.)

      46.                      REDACTED

Disputed to the extent the statement asserts that the referenced Questar agreement or any another UNIX License granted a license "to use Linux" or to Linux. (¶¶ 28-31.) Disputed to the extent the statement suggests that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux, where nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 7, 11-12, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property in

binary form only constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.)

Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with

parties who received a Linux distribution from SCO. (¶¶ 33-34.)

     47.     Despite its actions and statements inconsistent with and repudiating the GPL, however, SCO continued to make available copies of the IBM Copyrighted Works, each of which explicitly stated that it was licensed under the terms of the GPL. (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4,7; Ex. 226; Ex. 215 ¶ 110.)

     Disputed to the extent the statement asserts that SCO took actions and made statements

"inconsistent with and repudiating the GPL," which assertion is a legal conclusion, not a

statement of fact, let alone an undisputed one. (See ¶¶ 20-34.) Disputed to the extent the cited

materials do not support the assertion that "SCO continued to make available copies of the IBM

Copyrighted Works" after the "actions inconsistent and repudiating the GPL". Disputed to the

extent that the SCO products that IBM accuses in its motion of infringing on its alleged

copyrights were not sold and marketed after the alleged acts of repudiation and breach. (¶¶ 35-

39.) See IBM statements of fact 41 and 44, above.

     Disputed to the extent the statement asserts that SCO has posted Linux files on its

Internet website as recently as August 11, 2006, in that SCO has not knowingly made Linux code

available on its website after December 31, 2004, when its contractual obligations with its Linux

customers ended. (¶¶ 35-38.) Disputed to the extent the statement and cited material suggest

(but do not state) that the Linux files that IBM allegedly downloaded from SCO's website on

August 11, 2006, included the works that are the purported basis for the counterclaim. Disputed

to the extent the statement suggests that the files were easily accessible to the general public. (¶

15; see Ex. 324.) Disputed to the extent the statement suggests that anyone, other than

purportedly IBM on August 11, 2006, accessed and downloaded any Linux files from SCO's

website after December 31, 2004.  (¶ 15; <u>see</u> Ex. 324.)

## **CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing was served on Defendant/Counterclaim-Plaintiff, International Business Machines Corporation, on this 2nd day of February 2007, via CM/ECF to the following:

> David Marriott, Esq. (dmarrriott@cravath.com)
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Todd Shaughnessy, Esq. (tshaugnessy@swlaw.com)
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

/s/ Edward Normand