Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>   Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>   Defendant/Counterclaim-Plaintiff. | **SCO'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S ORDER OF NOVEMBER 29, 2006**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

SCO submits that reconsideration of this Court's November 29, 2006 Order ("November Order") affirming the Magistrate Court's June 28, 2006 Order ("June Order") will prevent manifest injustice and allow the Court to consider new evidence that was not previously available. What is evident from IBM's opposition is that it strongly prefers this case to be decided on a conglomeration of procedural issues rather than the merits of SCO's case. IBM's opposition devotes little attention to the merits of that request and instead contends that this Court cannot reconsider its order for procedural reasons. SCO shows below that this Court clearly can and should exercise the discretion to reconsider its order on the grounds presented by SCO and to grant the relief requested.

SCO has moved for reconsideration on three independent grounds. SCO respectfully requests that the Court:

> (1) vacate or stay the November Order to permit full consideration of the parties' expert reports, which were not available at the time IBM's motion was heard and were not considered, and which will clarify the nature of SCO's stricken items and IBM's defenses;
>
> (2) vacate or stay the November Order to permit consideration of testimony from the four limited programmer depositions requested in SCO's opening brief, which was not previously available, and would demonstrate conclusively the false predicates on which IBM's motion was based; and/or
>
> (3) at a minimum, vacate the November Order as it applies to the ten discrete stricken items set forth in SCO's opening brief, because the rationale for the Magistrate Court's June Order is plainly inapplicable to these items.

For the reasons set forth in SCO's initial brief and herein, reconsideration on these grounds will demonstrate that the November Order was clearly in error and creates a manifest injustice to SCO.

As shown in SCO's opening brief, the Tenth Circuit requires consideration of the "Ehrenhaus factors" on the record before a party's claims can be dismissed or limited. Gripe v. City of Enid, 312 F.3d 1184, 1187 (10th Cir. 2002) (quoted in Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005). The Court must consider the actual prejudice to IBM and the culpability of SCO. The reconsideration sought by SCO goes directly to these factors. IBM has not disputed that the Ehrenhaus factors had to be considered.

## I.  The Court Should Exercise Its Discretion to Reconsider Its November Order.

A district court has the discretion to reconsider any "order short of a final decree." Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). The consideration of the merits of a motion for reconsideration is squarely within that discretion. United States v. Maxfield, No. 04cr00149, 2007 WL 121128 (D. Utah Jan. 11, 2007) (citing Hancock v. City of Oklahoma City, 857 F.2d 1394, 1395 (10th Cir. 1988)(Ex. A)). The failure to grant a motion for reconsideration can constitute an abuse of discretion. See Hancock, 857 F.2d 1394 at 1395.

IBM's cases acknowledge the foregoing discretion on the part of the district court. See, e.g., Belmont v. Assocs. Nat'l Bank, 219 F. Supp. 2d 340, 342-43 (E.D.N.Y. 2002) (recognizing that the "decision to grant or deny a motion for reconsideration is within the sound discretion of the district court" and that a motion to reconsider permits the court the "opportunity to correct manifest errors of law"); see also Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) (reviewing district court's denial of motion for reconsideration under an abuse of discretion standard); Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994) (holding that district court's denial of motion for reconsideration was not an abuse of discretion, where the district court

considered on the merits an offer of proof for new evidence submitted by the plaintiff, and concluded that the new evidence would not have changed the decision).

IBM focuses on the issue of new evidence, but motions to reconsider may be granted to correct clear error or prevent manifest injustice even in the absence of any change in law or new evidence. See Mantle Ranches, Inc. v. U.S. Park Serv., 950 F. Supp. 299, 300, 302 (D. Colo. 1997) (granting in part motion to reconsider, though no change in law or new evidence existed); see also Servants of the Paraclete v. Docs, 204 F.3d 1005, 1012 (10th Cir. 2000) (listing manifest injustice as one of three independent grounds supporting a motion for reconsideration). Indeed, IBM previously prevailed upon the Magistrate Court to reconsider a prior order in this case in the absence of any new evidence or change of law. In its February 11, 2005 motion, IBM made arguments it had previously raised and contended that the Magistrate Court had failed to consider correctly the controlling standard of law. In an April 20, 2005 order, the prior order was reconsidered and relief was granted in part. It is therefore disingenuous for IBM to contend that the Court cannot consider arguments that were raised below. Even by IBM's prior standard, this Court would have the discretion to reconsider its November Order on any grounds to prevent manifest injustice and correct clear error.

IBM also argues that the Court cannot hear arguments that SCO did not raise below because they are waived. Clearly that is not the law. To the contrary, to prevent manifest injustice and correct clear error, a court has the discretion to reconsider a prior order regardless of whether the arguments had been previously raised. See, e.g., Maxfield, 2007 WL 121128, at *1 (Ex. A) (granting motion for reconsideration based on new arguments not previously raised though no excuse was offered for why the arguments were not raised in the earlier briefing);

Belmont, 219 F. Supp. 2d at 342-43 (rejecting defendant's argument that motion to reconsider should not be considered on the merits because the "full arguments on the merits raise legal questions that were not previously considered in these proceedings").

> II. **The Court Should Reconsider Its Order to Permit Full and Fair Consideration of Expert Reports.**

The parties' now complete expert reports (and expert depositions) demonstrate IBM's lack of prejudice and SCO's lack of culpability – two factors that the November Order should have considered. Gripe, 312 F.3d at 1187. IBM does not dispute the relevance of those factors. The responses that IBM does raise should be rejected.

First, IBM misstates the issue (at 3) in arguing that "expert reports were not required for Magistrate Judge Wells to rule." Consideration of the reports would have assisted the Court in understanding, in this complex matter, that the stricken technology items were disclosed in sufficient detail for IBM to prepare a defense and that concerns of sandbagging were unwarranted. IBM's expert reports would have shown the Court that IBM's experts did not even make use to any degree of the source code coordinates that were provided by SCO. As such, consideration of the complete reports would have undercut any finding that IBM was prejudiced.

Second, IBM states (at 3) that "SCO was free to submit a declaration from any of its experts with its opposition to IBM's motion." Again, this misses the point. While SCO submitted a declaration from Mr. Rochkind, one of its experts, in response to IBM's tendering an expert declaration with its reply, full expert reports were neither complete nor – under this Court's schedule – ought to have been complete at the time of the briefing and argument on IBM's motion. IBM filed its opening brief in February 2006; SCO filed its opposition on March 7, 2006; and by April 2006, the motion had been fully briefed and heard by the Court. Initial expert reports were not due until

May 19, 2006 – over a month after the hearing on IBM's motion. Thus, the expert reports could not have been made part of the record before the Magistrate Judge on this Motion. For this reason, without success, SCO urged the Magistrate Judge to wait until expert reports could be considered. (Tr. April 14, 2006 Hearing at 52:13-53:1.) This request was refused. SCO asked for leave to submit further materials in response to IBM's filing of an additional declaration from Dr. Davis after oral argument; that request was also refused. SCO then raised this problem again in its Objections (at 45) on July 13, 2006. At this point, the two latter rounds of expert rebuttal reports had still not been completed, and expert depositions had not even commenced.[1] The Court then issued its November Order without reference to SCO's argument that expert discovery had not been completed. This is precisely the type of situation in which a motion to reconsider is now appropriately raised.

     <u>Third</u>, IBM asserts that the expert reports failed to supply the allegedly "missing coordinates" for code. But the point of considering the expert reports is that they would make clear that the "method and concept" technologies at issue are amply identified without such code. The expert reports put them in context, and IBM's rebuttal expert reports show that the code coordinates are not necessary for IBM to respond (notwithstanding self-serving conclusory statements by each of IBM experts to the contrary).

     <u>Fourth</u>, IBM alleges that SCO waived the argument by not presenting it until oral argument before the Magistrate Court. But oral argument was the first opportunity to raise the issue because IBM did not file any declarations with its initial moving papers. Instead, IBM filed an unsupported

---

[1] Contrary to IBM's implication that SCO did not make the reports available to the Court, SCO properly noted in its Objections (at 45 n.14) that two of the initial expert reports were filed with and available to the Court in connection with another motion.

nine-page motion. Only in its reply papers, obviously filed after SCO filed its opposition, did IBM file Dr. Davis's declaration. Neither of the waiver cases cited by IBM are applicable here.[2]

Fifth, IBM claims the Court cannot consider this issue because it was previously briefed by SCO. This argument ignores that the Court is authorized to reconsider its order if necessary to prevent manifest injustice, and that IBM itself has also moved for reconsideration on the basis of previously raised arguments in this case. See Mantle Ranches, 950 F. Supp. at 300, 302; Maxfield, 2007 WL 121128, at *1 (Ex. A); see also Servants of the Paraclete, 204 F. 3d at 1012.

### III. The Court Should Permit SCO Four Limited Depositions and Then Reconsider Its Order Based on That Testimony.

SCO also seeks limited depositions of the four IBM programmers best situated to provide the information the Court has required. These depositions would demonstrate either that IBM had access to the very information it contended was not available to it, or that the information could not be obtained – either of which would also undercut the requisite findings that SCO was culpable and that IBM was prejudiced.

IBM does not dispute that if anyone should know the coordinates to the AIX or Dynix code from which these methods and concepts were taken, it is these IBM programmers themselves. Instead, IBM contends (at 6) that an admission by its programmers that they know the specific Dynix source code behind their methods and concept disclosures to Linux would not

---

[2] In Thomas v. Denny's, Inc., 111 F.3d 1506 (10th Cir. 1997), the waiver issue related to a factual assertion at an appellate argument contradicted by the party's brief and by the record, and notably, the court did address the argument so raised. Id. at 1510 n.5. Similarly, in Acker v. Burlington Northern & Santa Fe Railway Co., 388 F. Supp. 2d 1299 (D. Kan. 2005), the court did not consider arguments raised for the first time in a reply, when the opposing party had no further chance to respond. Id. at 1202 n.2. In contrast, SCO's suggestion was made during an oral argument, when both sides were able to articulate their support for or opposition to the argument. Indeed, IBM's submission of a post-argument declaration from Dr. Davis – in which was raised what the Magistrate Court called the most important point – should have been excluded under the cases IBM cites.

have changed the outcome of the motion. This is a remarkable argument. This is the very information that IBM has complained that it cannot ascertain without undue prejudice. How could an admission by its programmers that they already have that very information not undermine IBM's claim of prejudice?

IBM asserts that the programmers would not provide any detail on either the UNIX System V or the Linux source code coordinates. Both of these arguments are red herrings. SCO's argument, as IBM well knows, is that the Dynix and AIX systems are derivative works of UNIX System V, protected as such by the license agreements. SCO is not claiming that the methods and concepts at issue are located in System V, but in a derivative – equally protected by the language of the license agreements. As to the location in Linux, SCO's December Submission identified files in Linux which were affected by the disclosure, and Mr. Rochkind's declaration made clear that these references were of course to the versions of Linux released after the disclosure. A disclosure of a file identifies all the lines of code in that file. Moreover, there has been no finding that a more precise level of identification than specific files in Linux could have been made or establishing any prejudice to IBM from the file level specificity that was provided for Linux – or holding that more is required to support SCO's breach of contract claims.

IBM also fails to identify any prejudice that would result from the depositions. The trial date has been adjusted for months. If the requested depositions are not beneficial, moreover, SCO has offered to pay the expenses incurred by IBM in connection with the depositions. In contrast, if the depositions do show what SCO contends they will, IBM's representations would

be proven wrong and an essential basis for the November Order would be discredited. In short, manifest injustice would be prevented.

In the face of this compelling justification for the depositions to go forward, IBM again raises various procedural arguments to cloak the merits of SCO's request. Again, all such arguments overlook the central tenet of the cases – that this Court has the discretion to grant the requested relief and reconsider its order to prevent manifest injustice. The procedural arguments are also errant on their own terms.

IBM contends (at 5) that the evidence cannot be considered because it is not "new" in that SCO does not have the evidence, but rather needs to take depositions to procure the evidence. However, no rule prohibits allowing the four depositions on a limited subject where, as here, they would uncover new evidence that would correct a clear error in a court's factual finding or prevent a manifest injustice, and no prejudice results.[3] IBM's suggestion to the contrary threatens to nullify this Court's well-established discretion on motions for reconsideration.

IBM also argues (at 5) that this evidence was previously available and SCO declined to pursue it. It cannot be fairly said that this testimony was available to SCO at the time these proposed witnesses were deposed, or at any time prior to the Court's Order striking the disputed items. It was the June Order and the November Order that held that the missing information was

---

[3] The cases cited by IBM are not to the contrary. Cf. Belmont, 219 F. Supp. 2d at 346 (denying plaintiff's request to reopen all discovery to find "potential" additional violation to support his case); Naiman v. N.Y. Univ. Hosp. Ctr., No. 95-6469, 2005 WL 926904, at *2 (S.D.N.Y. Apr. 21, 2005) (Opp'n to SCO Mot. For Recons., 1-19-07, Ex. F) (denying request to reopen discovery to permit polygraph examination where request was inappropriate under a local rule and the additional discovery would not change the court's decision); Poddar v. State Bank of India, No. 98-1691, 2006 WL 2092469, at *1 (S.D.N.Y. July 26, 2006) (denying request to reopen discovery in one sentence, where request that was "new and vague") (Opp'n to SCO Mot. For Recons., 1-19-07, Ex. E).

9

required. Until then, SCO had no reason to seek the specific coordinates in IBM depositions. Indeed, the fact that SCO <u>did not</u> seek such information at depositions underscores SCO's reasonable, good faith belief that it had not been required to provide such information, and that SCO was not and is not guilty of "sandbagging" as IBM often alleges.[4]

Finally, IBM argues (at 6) that SCO waived the argument regarding the depositions because SCO did not make the argument before Judge Wells, and – somewhat inconsistently – that the Court cannot consider the argument because SCO did raise it in its Objections (at 46-50). Neither argument is correct. What SCO specifically requested, both in the hearing before the Magistrate Court (Tr. at 52:4-12 and 82:10-17) and in its Objections (at 11-12, 39-45), was an item-by-item evidentiary hearing and particularized findings, such as whether each challenged item was "sufficiently specific" for IBM to defend, and whether SCO had the "capacity" or "ability" to comply as to that item. If this request had been granted, the depositions would have been unnecessary, for such evidence would have been obtained and considered at the hearing. In the absence of the evidentiary hearing (which was never held), the deposition testimony SCO now requests would fill the evidentiary void on these very issues.[5]

### IV. At a Minimum, the Court Should Reconsider Its Motion as It Relates to Ten Stricken Items.

SCO also seeks at a minimum reconsideration of a limited number of stricken claims that were not substantively addressed in either the June Order or the November Order, and which plainly met the level of specificity required in the June Order. In its opening brief (at 6-7), SCO

---

[4] As such, the cases cited by IBM are inapposite. Both are cases where the courts found that the moving party could have previously discovered the evidence. Cf. Webber, 43 F.3d at 1345; Caprin, 2001 WL 740535, at *1 (Opp'n to SCO Mot. For Recons., 1-19-07, Ex. C).

[5] The cases cited by IBM (at 7) involve parties who tried to raise entirely new arguments.

set forth the reasons the Court's findings are plainly inapplicable to these items. IBM has not responded substantively to any of these specific items, or explained how they possibly fall within the rationale for the June and November Orders or how manifest inconsistencies do not result from the dismissal of these items.

Instead, IBM has raised a series of collateral arguments – none of which would justify ignoring the substantive arguments SCO has raised on these items. First, IBM argues (at 8-9) that the Magistrate Court and this Court considered these specific items and that they already reached certain conclusions regarding these items. This argument flatly contradicts the grounds for reconsideration that IBM asserted earlier in the case. Indeed, even if such a review was undertaken, that does not mean that these items should not be <u>reconsidered</u> in the instant motion on the grounds listed by SCO, where the error as to those items was manifest and there were profound inconsistencies in the way certain similar items were treated. IBM's argument also misapprehends the nature of a <u>de novo</u> review and overlooks the fact that the Tenth Circuit requires an express determination <u>on the record</u> of each of the factors relevant to the sanction imposed. <u>Gripe</u>, 312 F.3d at 1187. No express consideration of the factors related to these items was undertaken in the November Order, creating a manifest injustice for the reasons demonstrated by SCO in its initial brief (at 6-7).

Second, IBM insists (at 9) that SCO's request is a "Trojan Horse" and that, under the "guise of seeking 'limited reconsideration,' SCO seeks to undermine the rationale of the Court's decision as to the remaining 177 items (as to which its failings are not different)." The argument is peculiar. Certainly a motion to reconsider should not be denied, as IBM suggests, just because the limited reconsideration sought could prove false the broader premise of an order. To the

11

contrary, if a limited reconsideration did truly undermine the broader rationale of the order, that would provide an <u>even more compelling reason</u> to grant the motion for reconsideration to prevent manifest injustice. In other words, if reconsideration of these ten items did undermine the Court's confidence in its initial order, that is all the more reason that such limited reconsideration of these ten items is warranted. In any event, this aspect of SCO's Motion is limited to the ten items on which reconsideration is requested.

Third, IBM argues (at 9-10) that SCO waived its argument that certain stricken methods and concepts (Items 3, 4, and 15) are akin to the non-stricken "negative know how" items, because it was not raised in SCO's objections. This argument does not fairly describe the record. In its Objections, SCO clearly asked (at 11-12 and 39-45) for an item-by-item consideration and evidentiary hearing on each of the stricken items – precisely to address this type of inconsistency and other such issues in the June Order.[6] This request was not granted. In the absence of such a hearing, SCO is seeking an item-by-item consideration on certain discrete items, for which the error is clear, in order to prevent manifest injustice. The Court has the discretion to grant such relief.

IBM's final contention (at 10) that reconsideration of these items would unleash a veritable parade of horribles, such as reopening fact discovery, redoing expert reports and depositions, and redoing summary judgment briefing, is unsupported and highly misleading. Fact discovery was already closed at the time of the June Order and would not need to be reopened. SCO's initial expert reports, submitted before the June Order, already discuss the

---

[6] IBM's additional argument (at 10) that the items listed by SCO cannot be similar to the "negative know how" items because they are "methods and concepts" misapprehends SCO's point. SCO asserts that these items are substantially similar to the items described as "negative know how" (23, 43, and 90) in so far as these items are not susceptible to line, file and version identification.

12

stricken items. The summary judgment briefs could not possibly be impacted by reconsideration of the Order, because the motions do not relate to the misused material identified by SCO, which presents a factual, not legal, question. Therefore, reconsideration of these discrete items would <u>at most</u> require the exchange of limited expert reports disclosing IBM's anticipated expert testimony on the items and SCO's rebuttal to that testimony, and perhaps short depositions on these limited subjects. In light of the delayed trial date, there is no reason this could not be completed without any impact on the trial schedule. It is a small price to pay to prevent the manifest injustice that was caused by the striking of these items.

## CONCLUSION

For the foregoing reasons, SCO prays that this Court will reconsider its Order of November 29, 2006, and grant relief as requested above.

DATED this 2nd day of February, 2007.

> HATCH, JAMES & DODGE, P.C.
> Brent O. Hatch
> Mark F. James
>
>
> BOIES, SCHILLER & FLEXNER LLP
> Robert Silver
> Stuart H. Singer
> Stephen N. Zack
> Edward Normand
>
> By     /s/ Mark F. James
> *Counsel for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing **SCO's MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION** was served on Defendant/Counterclaim-Plaintiff, International Business Machines Corporation, on this 2nd day of February, 2007, via the CM/ECF system:

> David Marriott, Esq. (dmarrriott@cravath.com)
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Todd Shaughnessy, Esq. (tshaugnessy@swlaw.com)
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

By     /s/ Mark F. James