# EXHIBIT A

Slip Copy  
Slip Copy, 2007 WL 121128 (D.Utah)  
**(Cite as: 2007 WL 121128 (D.Utah))**

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
D. Utah,  
Northern Division.  
UNITED STATES of America, Plaintiff,  
v.  
Larry McKay MAXFIELD, Defendant.  
**No. 1:04CR00149 DS.**

Jan. 11, 2007.

Mary C. Corporon, Corporon Williams & Bradford PC, Salt Lake City, UT, for Defendant.

MEMORANDUM DECISION AND ORDER ADDRESSING PLAINTIFF'S MOTION TO RECONSIDER  
SUPPRESSION OF EVIDENCE

DAVID SAM, United States District Court Senior Judge.

**\*1** The United States moves the Court to reconsider its August 24, 2006 decision to grant in part Defendant's Motion to Suppress. The basis of the Government's Motion to Reconsider is its contention that officers had a reasonable suspicion that Defendant was involved in criminal activity when they initially stopped his vehicle and detained him. This position is new and presented as an alternative theory to the Government's earlier argument that exigent circumstances justified officers action in seizing and detaining Defendant. This alternative theory was not previously raised or briefed by the Government during the time that this matter was considered by the Court, nor did the Government previously contest Defendant's assertion that officers were without reasonable suspicion to stop him.

"A motion to reconsider is not appropriate if the movant only wants the court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally." United States v. D'Armond, 80 F.Supp.2d 1157, 1171 (D. Kansas 1999). The Court is troubled that the Government offers no explanation or excuse why this issue was not raised in a timely manner when the Court first addressed Defendant's Motion to Suppress. It appears to the Court that the position urged by the Government could have been raised at that time. Nevertheless, "[t]he decision whether to grant or deny a motion to reconsider is committed to the court's sound discretion." *Id.* (citing Hancock v. City of Oklahoma City, 857 F.2d 1394, 1395 (10th Cir.1988). In the interest of justice the Court has considered the Government's newly proffered position. Having done so, the Court is persuaded of the merit of the Government's newly advanced position for the reasons that follow.

The Fourth Amendment to the United States Constitution protects individuals from being subject to unreasonable searches and seizures. As the Government correctly urges, "[a] lawful investigative detention of limited scope and duration does not require probable cause as long as the police officer has reasonable suspicion that the person seized is engaged in criminal activity." United States v. Dennison, 410 F.3d 1203, 1207 (10th Cir.2005)(citing Terry v. Ohio, 392 U.S. 1, 30-31 (1968), *cert. denied,* 126 S.Ct. 468 (2005). "An officer making a *Terry* stop 'must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.' " *Id.* (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "[R]easonable suspicion is an abstract concept which cannot be reduced to a 'neat set of legal rules.'... It exists when there is a 'particularized and objective basis for suspecting criminal activity.'... In determining whether an officer possessed reasonable suspicion, we review the totality of the circumstances and consider both the quantity of information possessed by the law enforcement officer and its reliability." United States v. Wisniewski, 192 Fed. Appx. 749, 754-755 (10th Cir.2006) (citations omitted).

**\*2** Briefly stated, the Government cites four reasons

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

it contends gave officers reasonable suspicion that Defendant was engaged in criminal activity. [FN1] First, CI # 1 indicated that Defendant had purchased four gallons of naptha and xylol at an Ace Hardware store for the purpose of manufacturing methamphetamine. Second, CI # 2 indicated that a Cory Jensen, who would be driving a white Dodge truck, was going to meet Defendant at his automotive shop for the purpose of cooking methamphetamine. Third, Agent Hernandez saw people moving behind a privacy fence which enclosed the automotive shop, saw a Camaro automobile come and go from the shop and a bag either placed inside the trunk or taken out of the trunk of the Camaro. Fourth, officers perceived that Defendant was conducting counter surveillance on them.

> FN1. The relevant facts surrounding this matter are fully discussed in the Court's Opinion dated August 24, 2006 and will not be repeated in detail here.

When examined in their totality, the reasons given by the Government, in the Court's view, provide reasonable suspicion of criminal activity sufficient to justify a *Terry* stop of Defendant. As noted, Agent Barlow of the Davis Metro Narcotics Strike Force received information from Weber Morgan Narcotics Task Force Agent Watanabe regarding information Watanabe had obtained from two confidential informants. Although Agent Barlow personally knew nothing of the reliability of either of those two informants, the Court concludes that there was sufficient independent corroboration of the information to reasonably suggest its reliability to officers. *See United States v. Hartman, 194 Fed. Appx. 537, *4,(10th Cir.2006)*(citing *Illinois v. Gates, 462 U.S. 213 (1983)*, as holding "that the veracity, reliability, and basis of knowledge for a tip, considered as part of the totality of the circumstances, determine whether reasonable suspicion or probable cause exists"). *Compare United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir.2000)* ("[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant"). The Court in its earlier opinion touched upon these issues in the context of the validity of the search warrant.

Barlow's affidavit recites information from CI # 1 that Defendant purchased four gallons of naptha and xylol from Ace Hardware. The veracity of that allegation was independently verified by Agent Barlow when he reviewed the store's security tape. Defendant's suggestion that the purchase of those chemicals was consistent with his operation of an auto body Shop does not discount Agent Barlow's knowledge, that those chemicals are used to make methamphetamine, when coupled with the report of CI # 1 and CI # 2 that Defendant was intending to manufacture methamphetamine. Barlow's affidavit also recites information from CI # 2 that a Cory Jensen, driving a white Dodge truck, would be meeting Defendant at Purser Auto located at 1867 West 1700 South, Syracuse, Utah, to cook methamphetamine. That information was partially independently verified when the presence of a white truck was observed at the Shop.

**\*3** August 24, 2006 Memorandum Decision and Order Addressing Motion to Suppress Evidence at pp. 15-16. Because two different CI's each reported that Defendant was going to manufacture methamphetamine, the statement of one provides independent corroboration of the statement of the other. When the foregoing is coupled with officer perceived counter surveillance, along with the possibility of contraband having been placed in the trunk of Defendant's Camaro, the Court concludes that officers had sufficient suspicion to stop Defendant in his vehicle.

The Court also concludes that officers were entitled to conduct a pat-down search of Defendant after stopping him. During an investigative detention a "[p]olice officer is authorized to take reasonable steps necessary to secure their safety and maintain the status quo." *United States v. Gama-Bastidas, 142 F.3d 1233, 1240 (10th Cir.1998)*. In some circumstances, these safety measures may include a pat-down search for weapons. *Terry, 392 U.S. at 21-24*. Courts have held that the following factors are among the pertinent factors in determining whether a protective frisk was justified. First, the "nature of the area in which a detention takes place." *United States v. Johnson, 364 F.3d 1185, 1192-1193 (10th Cir.2004)*. Second, whether the suspects were detained "in their cars, at night" and the officers "could

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not tell whether the [y] had weapons on their persons or within reach." *United States v. Shareef,* 100 F.3d 1491, 1506 (10th Cir.1996) Third, whether the defendant might be involved in trafficking of drugs because distribution of drugs indicates "that he might be armed and dangerous" based "on the connection between drug trafficking and weapons," *United States v. Hishaw,* 235 F.3d 565, 570 (10th Cir.2000), *cert. denied,* 533 U.S. 908 (2001), and because "[d]rug dealing is a crime infused with violence," *United States v. Woodall,* 938 F.2d 834, 837 (8th Cir.1991). Here, Defendant was stopped in his car at night in a situation where it would be difficult for officers to observe whether he might have a weapon on his person or in easy reach. Because Defendant was suspected of involvement in drug trafficking, it also was reasonable for officers to be concerned that he might be armed and dangerous. Additionally, officers' concern that Defendant was conducting counter surveillance and may have been alert to their presence, along with the possibility that he may have retrieved a weapon from the trunk of his car while parked at the automotive shop, further supports the pat-down search of Defendant.

Finally, because illegal drugs were found on Defendant's person, officers were justified in detaining and questioning him regarding his possession of methamphetamine. Therefore the methamphetamine and Defendant's subsequent incriminating statement to officers while in custody are deemed admissible.

In sum, after considering both the quantity and quality of the circumstances, the Court is persuaded of the merit of the Government's position as now advanced. Accordingly the Motion to Reconsider of the United States is granted. Consequently the illegal drug found on Mr. Maxfield's person and his subsequent incriminating statements are admissible as evidence against him.

***4** IT IS SO ORDERED.

Slip Copy, 2007 WL 121128 (D.Utah)

**Motions, Pleadings and Filings** (Back to top)

• 2006 WL 3296685 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Suppress (May 26, 2006)Original Image of this Document (PDF)

• 2004 WL 5036096 (Trial Pleading) Superseding Indictment (Nov. 10, 2004)Original Image of this Document (PDF)

• 2004 WL 5036094 (Trial Pleading) Indictment (Oct. 13, 2004)Original Image of this Document (PDF)

• 1:04cr00149 (Docket) (Oct. 13, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.