Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| # | | |
|---|---|---|
| 1. | In 1991, an undergraduate student at the University of Helsinki by the name of Linus Torvalds, set out to create a new, free operating system, which later became known as "Linux". (Ex. 272 ¶ 13; Ex. 398 at SCO1355598.). | **Disputed**<br><br>SCO disputes IBM's assertion that Linux Torvalds set out to create a "new" operating system. Rather, Mr. Torvalds based Linux on the Minix operating system, which he describes as a "Unix variant." (Ex. 169 at 61.). Mr. Torvalds then used the manuals for the Sun Microsystems version of Unix for his early development of the operating system: "That's how early development was done. I was reading the standards from either the Sun OS [Operating System] manual or various books, just picking off system calls one by one and trying to make something that worked." (Id. at 82.).<br><br>Incorporating pre-existing, copyrighted material into Linux does not make such material "free." For instance, the UNIX material covered by SCO's copyrights and incorporated into Linux is not "free."<br><br>(See Disputed Facts # 1, 283-85; **REDACTED** |
| 2. | Mr. Torvalds began developing the core of the operating system, known as the "kernel", and some months later posted news of his project to Internet newsgroups, inviting volunteers to assist him in his efforts. (Ex. 272 ¶ 4; Ex. 398 at SCO 1355598.). | **Disputed**<br><br>SCO disputes that Mr. Torvalds "developed" much of the Linux material, because such "development" consisted of appropriating material from Minix and other UNIX-like operating systems, at least as to the material in dispute in this case<br><br>(See Disputed Facts # 1, 283-85; |
| 3. | With the Internet providing for a distributed collaboration, other programmers joined to create code making up the kernel. (Ex 272 ¶ 5; Ex. 398 at SCO 1355598.) Mr. Torvalds directed the collaboration to a version 1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development since. (Ex. 272 ¶ 5; Ex. 398 at SCO1355598.) | **Disputed**<br><br>SCO disputes that Mr. Torvalds and/or other Linux contributors "created" much of the material in Linux, as opposed to copying such material from pre-existing sources, to the extent Linux versions contain the material in dispute in this case as described in SCO's expert Dr. Thomas A. Cargill's expert reports.   (See Disputed Facts # 1-2, 283-85.). |
| 4. | In the years that followed, thousands of developers, including developers at SCO, contributed to the further development of Linux. (See Ex. 5 ¶ 45; Ex. 364; Ex. 105 at 15, 22, 26.) | **Disputed/Unsupported**<br><br>It is undisputed that developers at SCO have contributed to the development of Linux-related products. |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

However, neither The Santa Cruz Operation, Inc. ("Santa Cruz"), Caldera International, Inc. ("Caldera International"), nor SCO have contributed or intended to contribute any of the material at issue in this litigation to Linux. (Ex. 269 at 10-14; Ex. 233 ¶ 4, 6, 13 ("Santa Cruz never distributed a Linux-based software product."); Ex. 11 ¶ 17 ("I have mechanically reviewed the history of Linux kernel patches from Linux 1.0 to Linux 2.6.17 searching for any language indicating that The Santa Cruz Operation, Inc. issued a license to material under the GNU General Public License ("GPL") or any other "open source" license prior to May 2001, or that Caldera International, Inc. or The SCO Group, Inc. released material under the GPL or any other "open source" license after May 2001. I found no such language in any Linux files."); Ex. 6 at 11, 14).

IBM's sources do not support the assertion that SCO, or any other entity that held copyrights to UNIX, contributed to Linux. Neither Caldera, Inc. nor Caldera Systems, Inc. ("Caldera Systems") held any copyrights to UNIX prior to the 2001 merger that created Caldera International. (See Ex. 269 at 9; Disputed Facts # 9, 34-37, 104.).

**IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 45:**
The cited source does not support the assertion that SCO "contributed to the further development of Linux." Rather, the cited source supports the assertion that *IBM* contributed source code to Linux, and *denies all other allegations*, including allegations that SCO distributed IBM's contributions under the GNU General Public License ("GPL").

**IBM Ex. 105 (Caldera Systems, Inc.'s October 2000 Form 10-K/A) at 15, 22, 26:**
The cited source refers to Caldera Systems, Inc. ("Caldera Systems"), which did not own any copyrights in UNIX. (See Disputed Facts # 9, 34-37, 104.). The cited source shows that Caldera Systems sought to deliver Linux-related products (p. 15), would be forced to contribute to the development of Linux if independent third-parties ceased such development (p. 22), and competed with Linux providers (p. 26). The source does not mention SCO and does not support the assertion that either SCO or Caldera Systems contributed source code to the Linux kernel or any non-proprietary, Linux-related software. Rather, the source stresses that "most of the components of [Caldera Systems'] software offerings are developed by independent parties" (p. 26).

**IBM Ex. 364 (SCO website):** The cited source shows only vague support for limited contribution by SCO to elements of Linux that do not constitute part of the infringing

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | Linux material. The cited source does not specify a time frame for the asserted actions. |
|---|---|
| 5. | Linux is an "open source" program, which means, among other things, that its source code is publicly available, royalty-free and users have the freedom to run, copy, distribute, study, adapt and improve the software. (Ex. 272 ¶ 6; Ex. 5 ¶ 22; Ex. 221 ¶ 7.) | **Disputed/Unsupported**<br><br>SCO disputes that Linux is a proper "open source" program, because it contains material that has not been properly licensed by the owner(s) of the copyright in such material. In particular, neither SCO nor any other UNIX copyright holder properly released the infringed UNIX material at issue in this case under the GPL.<br><br>The GPL only applies to material knowingly and properly licensed under the GPL by the copyright holder. Specifically, § 0 of the GPL provides that, "This License applies to any program or other work which contains a notice placed by the copyright holder saying that it may be distributed under the terms of this General Public License." IBM Ex. 128 at 3.<br><br>One of the limitations of the GPL requires that, "You may copy and distribute verbatim copies of the Program's source code . . . provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty . . ." IBM Ex. 128 § 1.<br><br>The GPL further provides that, "[M]ere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License." IBM Ex. 128 §.<br><br>Failure to comply with the limitations of the GPL terminates the license: "You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. "IBM Ex. 128 § 4. Section 7 of the GPL further provides that, "If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the program at all." IBM Ex. 128 § 7.<br><br>Linux does not contain the appropriate copyright notices from the copyright owners because they were never provided. Andy Nagle states in his declaration that: |

FILED UNDER SEAL

3

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

In my position as Engineering Program Manager for Caldera, I was not aware of, nor did I authorize, the inclusion in any Caldera Linux distribution of any UNIX materials or any notice or other language indicating that Caldera granted any rights to those materials under the GPL or under any other "open source" license. It would have been my job to review and authorize for Caldera the inclusion of such materials and language, and it would have been incumbent on the engineering project managers at Caldera to seek my authorization. Furthermore, the inclusion of UNIX materials or such language would have violated Caldera's policy prohibiting the open sourcing of UNIX technology.

Ex. 233 ¶ 6.

REDACTED

Neither AT&T, Unix Systems Laboratories ("USL"), Novell, Inc. ("Novell"), Santa Cruz, Caldera International, or SCO have placed a notice on or in any products indicating that they grant the rights "to run, copy, distribute, study, adapt and improve" the infringing UNIX material in Linux without royalties, under the terms of the GPL or any other "open source" license, nor did they ever intend to grant such rights.   **REDACTED** Ex. 233 ¶¶ 4, 16, 23; Ex. 269 at 10-14; Ex. 6 at 11, 14.). Placement of such a notice by the copyright holder in the UNIX material is a pre-requisite to granting such rights in the UNIX material under the GPL.  (See IBM Ex. 128 § 0.).

IBM has put forth no evidence that any UNIX copyright holder contributed the infringing Linux material to Linux or placed an appropriate GPL notice on Linux, or that other Linux contributors actually owned the copyright in the material they contributed.  For instance, Mr. Torvalds admits to having incorporated system calls taken from a Unix

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 6. | Linux not only adheres to open standards, but is also built and maintained by a worldwide group of engineers who share the common goal of making open systems and open source ubiquitous. (Ex. 272 ¶ 7; Ex. 106 at 3; Ex. 221 ¶ 8.) | licensee – Sun Microsystems. (See Disputed Facts # 1-2.) Yet, IBM has put forth no evidence showing that Sun granted rights to use such material in Linux.<br><br>Furthermore, whether SCO or any other UNIX copyright holder has granted such rights, to whom such rights were granted, what conditions were imposed on such rights, and whether use of the infringing Linux material complies with such conditions, are all disputed legal conclusions, not "Disputed Facts."<br><br>**IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 22:** The cited source does not support the assertion that such rights have been granted in *all* of Linux, and does not specify any particular portion of Linux in which such rights have been granted.<br><br>**IBM Ex. 272 (Declaration of Linux Torvalds) ¶ 6; Ex. 221 (Declaration of Ransom Love) ¶ 7:** The cited sources constitute legal conclusions asserted without any supporting factual basis.<br><br>**Disputed/Unsupported**<br><br>SCO disputes IBM's statement to the extent IBM intends "open standards" or "open systems" to mean that copyrighted material incorporated in Linux or standards can be used freely and without royalty payments, in the absence of a license from the copyright holder, such as SCO. Neither Linux, nor any standards incorporating the infringed UNIX material, are "open" in the sense that the term "open" indicates that rights to such material have been properly granted by the copyright holders in such material. (See Disputed Fact # 5.)<br><br>Material does not lose copyright protection merely through incorporation in to documents that are "standards." See, e.g., *American Dent. Assn. v. Delta Dent. Plans Assn*, 126 F.3d 977 (7th Cir. 1997).<br><br>**IBM Ex. 272 ¶ 7; Ex. 106 at 3; Ex. 221 at 8:** These sources constitute legal conclusions without any supporting factual basis. |
| 7. | Anyone can freely download Linux and many Linux applications and modify and redistribute them with few restrictions. (Ex. 272 ¶ 8; Ex. 107 at | **Disputed/Unsupported** With respect to the infringing Linux material at issue in this case, SCO disputes, and |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | |
|---|---|
| 5. Ex. 221 ¶ 9.) | IBM has cited no evidence supporting, that such activities are "free," in the sense that rights to use such material without royalties have been properly granted by the copyright holders in UNIX material contained in Linux. (See Disputed Fact # 5.).<br><br>**IBM Ex. 272 (Torvalds Decl.) ¶ 8; Ex. 107 (2000 Caldera Systems, Inc. Form 10/K) at 5; Ex. 221 (Love Decl.) ¶ 9:**<br>These sources constitute legal conclusions without any supporting factual basis. |
| 8. The Linux kernel is distributed under the GPL, which provides that a person receiving code under the GPL "may copy and distribute verbatim copies of the Program's source code" and "modify [their] copy or copies of the Program or any portion of it". (Ex. 272 ¶ 9; Ex. 128 § § 1, 2; Ex. 107 at 24; Ex. 221 ¶ 10.) | **Disputed/Unsupported**<br><br>However, neither The Santa Cruz Operation, Inc. ("Santa Cruz"), Caldera International, Inc. ("Caldera International"), nor SCO have contributed or intended to contribute any of the material at issue in this litigation to Linux. (Ex. 269 at 10-14; Ex. 233 ¶ 4, 6, 13 ("Santa Cruz never distributed a Linux-based software product.");<br><br>REDACTED<br><br>; Ex. 6 at 11, 14.).<br><br>SCO does not dispute that much of the Linux kernel is "distributed" under the GPL. SCO disputes IBM's assertion to the extent it suggests that any particular element of Linux has been properly licensed under the GPL. IBM has cited no evidence showing that any particular element of Linux has been properly licensed under the GPL. (See Disputed Fact # 5.). Furthermore, none of the infringed UNIX material has been properly licensed under the GPL. (Id.).<br><br>**IBM Ex. 272 (Torvalds Decl.) ¶ 9; Ex. 107 (2000 Caldera Systems 10/K) at 24; Ex. 221 (Love Decl.) ¶ 10:**<br>The cited sourced constitute legal conclusions without supporting factual basis.<br><br>**IBM Ex. 128 (GNU General Public License) §§ 1-2.**<br>The cited source does *not* support the assertion that rights in the infringed SVr4 material, or any other specific portion of Linux, have been properly granted under the GPL. See Disputed Fact # 5. |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| # | | |
|---|---|---|
| 9. | In 1993, not long after the advent of Linux, Novell purchased from AT&T its remaining interest in UNIX System Laboratories ("USL"), which then held AT&T's rights to the UNIX operating system. Among the assets acquired by Novell were certain UNIX copyrights, including the System V Works. (Ex. 240 ¶ 9; Ex. 108 at 2.) | **Disputed/Unsupported**<br><br>SCO disputes this assertion to the extent IBM seeks to exclude certain rights from the transfer of UNIX rights from USL to Novell. IBM's cited sources indicate that USL held all of AT&T's UNIX-related assets, and that Novell purchased all of USL's assets, as opposed to "certain UNIX copyrights." (See IBM Ex. 240 ¶ 9; IBM Ex. 108 at 2.) |
| 10. | After the acquisition, Novell participated in an industry consortium with other UNIX vendors, including IBM, to draft a single unified specification of the UNIX operating system. (Ex. 238 ¶ 8.) The consortium was called X/Open, now owned by the "The Open Group" to which Novell granted exclusive control of the UNIX trademark in 1994. (Ex. 382; Ex. 437.) | **Disputed/Unsupported**<br><br>Novell did not participate in an effort to draft a specification for the UNIX operating system. Rather, Novell participated in an effort to draft a specification for UNIX Systems Services, not an entire "operating system." (See IBM Ex. 238 ¶ 8; IBM Ex. 382 at 3.).<br><br>**IBM Ex. 382; IBM Ex. 437 (1994 X/Open Letter Agreement):**<br>The cited sources do not support the assertion that the X/Open "consortium" is the same entity as "The Open Group," nor do they support the assertion that Novell "granted exclusive control of the UNIX trademark" to either entity. |
| 11. | As a member of X/Open, Novell helped to draft a UNIX specification called "Spec 1170" (Ex. 238 ¶ 10), which was published in 1994 by The Open Group as the "Single UNIX Specification, Version 1". The Single UNIX Specification ("SUS") is a comprehensive set of operating system-related application programming interface specifications adopted by the The Open Group as the single definition for UNIX systems. (Ex. 382.) | **Disputed/Unsupported**<br><br>SCO disputes that "Spec 1170" and the Single UNIX Specification ("SUS") are the same documents or identical. The SUS contains material that was not in Spec 1170. (See IBM Ex. 382 at 5 ("There were 1170 interfaces in the complete specification when the work was done...There are now more than 1170 interfaces in the specification as the review process shaped the document accordingly.")). Spec 1170 is a specification that governs certain "Common APIs for UNIX-based Operating Systems." IBM Ex. 437. IBM has failed to submit a copy of Spec 1170, failed to show that the material in any particular version of the SUS was also in Spec 1170, and has failed to specify the differences between the two documents.<br><br>IBM's cited sources also fail to support the assertion that the SUS was published by The Open Group. (See Disputed Fact # 10). |
| 12. | Nearly all of the SUS Material was included in this | **Disputed/Unsupported** |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | "SUS Material" | REDACTED |
|---|---|---|
| | first version of the SUS (Items 183-84, 207-31), which later evolved to include all of the SUS Material in its second version. (Ex. 214 (Ex. 3).) | . This indicates that the material in Items 205-06 was not in Spec 1170 either. <br><br> The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. (See Disputed Fact # 11.). Any alleged inclusion of the infringed SVr4 material in the SUS is immaterial, because IBM has only a purported to hold a license to use material in Spec 1170. (See Disputed Fact # 13.). |
| 13. | Like other X/Open members, Novell held intellectual property rights in the SUS ("Spec 1170") but "grant[ed] to X/Open a non-exclusive, perpetual, worldwide, royalty-free, paid-up, irrevocable licence [sic] to prepare derivative works and to use, execute, reproduce, display and perform" the SUS. (Ex. 238 ¶¶ 10-11; Ex. 437.) | **Disputed/Unsupported** <br><br> SCO disputes this fact to the extent IBM reads the cited license to cover use of any material in Linux. Any license granted by Novell to X/Open was limited to reproduction of material in a specification, not for use as source code in a competing operating system. (IBM Ex. 437 § 1 (Limiting Novell's grant of rights to "the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open Specifications therefrom.")). <br><br> The license to X/Open was "intended to grant X/Open sufficient rights to modify, print and distribute the Specification." IBM Ex. 437. The license specifically granted rights "all for the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open Specifications therefrom." Ex. 437.  Spec 1170 provides that, "Nothing in this Letter Agreement grants any right to claim that any derivative work of an X/Open specification is the official X/Open Specification with the express written consent of X/Open." IBM Ex. 437 § 4.  Spec 1170 also provides that, "The Copyright Licensors and their third party suppliers retain ownership of all intellectual property in the Specification and nothing herein transfers or assigns any ownership therein to X/Open." IBM Ex. 437, § 1 (emphasis added). |

FILED UNDER SEAL

8

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| # | | |
|---|---|---|
| | | Second, SCO disputes IBM's assertion that Spec 1170 and the SUS are the same. The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. Any alleged inclusion of the infringed SV r4 material in the SUS is immaterial, because IBM has only asserted a license to use material in Spec 1170. (IBM Ex. 437; Disputed Facts # 11-12.). **IBM Ex. 238 (Srinivasan Decl.) ¶¶ 10-11; IBM Ex. 437 (1994 X/Open Letter Agreement):** Neither source shows that Novell was a "member" of X/Open. |
| 14. | X/Open, in turn granted all of the participants in X/Open, including IBM, "a non-exclusive, perpetual, worldwide, royalty-free, paid-up, irrevocable license to prepare derivative works and to use, execute, reproduce, display and perform [the SUS] and such derivative works" Thus, IBM has a license to those materials identified in the SUS, and such derivative works as subsequent versions, including all of the SUS Material. (Ex. 238 ¶ 11; Ex. 437.) | **Disputed/Unsupported** SCO disputes that X/Open granted a license to IBM to use any UNIX material in Linux or any other operating system. X/Open did not and could not have granted IBM any right to use any infringed UNIX material in Linux, because X/Open had no such right to grant. Any license granted by Novell to X/Open was limited to reproduction of material in a specification, not a competing operating system. (IBM Ex. 437 § 1 (Limiting Novell's grant of rights for "the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open Specifications therefrom."); Disputed Fact # 13.). SCO disputes IBM's assertion that Spec 1170 and the SUS are the same. The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. Any alleged inclusion of the infringed SV r4 material in the SUS is immaterial, because IBM's has only asserted a license to use material in Spec 1170. (IBM Ex. 437; Disputed Facts # 11-12.). **IBM Ex. 238 (Srinivasan Decl.) ¶ 11; IBM Ex. 437 (1994 X/Open Letter Agreement):** Neither source supports the assertion that Novell or X/Open granted any rights to IBM in "the SUS." Both sources are limited to Spec 1170. (See Disputed Facts # 11-13.). |
| 15. | At approximately the same time, Novell participated in another UNIX standards setting | **Undisputed/Unsupported** |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | committee, the Tool Interface Standards ("TIS") Committee, along with IBM and Santa Cruz, among others. (Ex. 238 ¶ 6; Ex. 439 at iii; Ex. 215 ¶ 101.) | SCO does not dispute that Novell interacted with the TIS Committee, but IBM's cited documents only support the assertion that Novell had become a member of the TIS Committee by May 1995. |
| 16. | In May 1995, the TIS Committee published "The Executable and Linking Format (ELF) Specification, version 1.2". (Ex. 439; Ex. 238 ¶ 6.) The ELF Specification created a standard format for compiled binary files, by explicitly requiring the particular organization and layout of the information in the files. (Ex. 214 ¶¶ 35-36.) | **Disputed/Unsupported**<br><br>SCO disputes that the ELF Specification "created" a standard format. Neither the TIS Committee, the Portable Formats Specification, version 1.1 ("TIS Specification, version 1.1") (IBM Ex. 438), nor the Executable and Linking Format (ELF) Specification, version 1.2 ("TIS Specification, version 1.2") (IBM Ex. 439) "created a standard format for compiled binary files."<br><br><br><br>REDACTED |
| 17. | All of the ELF Material is either included in the ELF Specification, or an implementation of the ELF format pursuant to the ELF Specification. (Ex. 214 ¶¶ 43-44, 47; Ex. 215 ¶¶ 99-100.) | **Disputed/Unsupported**<br><br>SCO disputes that the TIS Specification contains all the infringing ELF Material, and IBM's cited sources do not support such an assertion.'<br><br>REDACTED<br><br><br><br>REDACTED<br><br><br><br>Ex. 22 at 202:14-203:3;<br><br>REDACTED |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | REDACTED | Disputed Fact # 18.) |
|---|---|---|
| 18. | The TIS Committee, of which Novell was a member, granted to all a royalty-free license to use the information disclosed in the specification. The ELF Specification provides: "The TIS Committee grants you a non-exclusive, worldwide, royalty-free license to use the information disclosed in the Specification to make your software TIS-compliant". Thus, IBM has a license to all of the ELF Material. (Ex. 238 ¶ 7; Ex. 438 at i; Ex. 439.) | It is not clear what IBM means by "an implementation of the ELF format pursuant to the ELF Specification." Any implementation of ELF that contains all of the ELF material in Linux is not "pursuant" to the TIS Specification. |
| | **Disputed/Unsupported** | |
| | First, the TIS Committee did not grant a license to IBM covering use of the ELF material in Linux. | |
| | | REDACTED |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

REDACTED

Accordingly, the TIS Committee had no authority to grant rights to IBM that cover the use of the ELF material in Linux. IBM has not put forth factual evidence showing that use of the infringing ELF material in Linux complies with the above-mentioned conditions and limitations.

Second, the ELF material in Linux was copied from the SVABI, in an attempt to comply with the SVABI. (See Disputed Fact # 18).

REDACTED                     IBM's cited sources do not support such an

assertion.

Indeed, some of the ELF material was contributed to Linux before the publication of the TIS Specification. (See Disputed fact # 65.). Some of the infringing ELF material in Linux was not published in the TIS Specification. (Disputed Fact # 17.).

REDACTED

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 19. | In the same spirit, Novell, in or around 1994, became involved with Linux. Novell undertook a project known as "Corsair" to create an Internet-friendly desktop operating system using Linux as its core to allow its customers to better and more easily integrate and manage network access on its networking software. (Ex. 221 ¶ 14; Ex. 440.) | **Undisputed**<br><br>Undisputed, but Novell never sold or otherwise distributed the Corsair product, or any other Linux Product.  Santa Cruz never distributed a Linux product.  (Ex. 233 ¶ 4).<br><br>IBM's cited sources show that Novell never created the Linux desktop operating system that was the focus of the Corsair project, which was terminated in 1994.  Indeed, Linus Torvalds states that Novell was "not very serious at all" about Linux in this timeframe.  (Ex. 169 at 130.). |
| 20. | During the Corsair project, Novell worked to develop a commercially supported desktop distribution of Linux bundled with commercial components that would compete with Microsoft Windows.  (Ex. 221 ¶ 15.) During its development, the members of the Corsair project team started to work with Linux, contributing code back to the Linux development team and to other projects related to Linux.  (Ex. 440.) | **Undisputed**<br><br>Undisputed, but <u>See</u> SCO disputes IBM's assertion to the extent it implies that Novell ever sold or otherwise distributed the Corsair product, or any other Linux Product.  Santa Cruz never distributed a Linux product.  (Undisputed but *see* Disputed Fact # 19.). |
| 21. | During the Corsair project, members of the team conceived of the idea of developing a commercially supported desktop distribution of Linux bundled with commercial components that would compete with Microsoft Windows.  (Ex. 221 ¶ 15; Ex. 440.)  However, the project was terminated before the members of Corsair could realize the goal of creating such a desktop Linux operating system. (Ex. 221 ¶ 15.) | **Undisputed**<br><br>Undisputed, but <u>See</u> SCO disputes IBM's assertion to the extent it implies that Novell ever sold or otherwise distributed the Corsair product, or any other Linux Product.  Santa Cruz never distributed a Linux product.  (<u>See</u> Undisputed Fact # 19.). |
| 22. | Shortly after Novell terminated Corsair, participants in the project, including Ransom Love, left Novell to form Caldera, Inc., one of SCO's predecessors. (Ex. 221 ¶ 16; Ex. 107; Ex. 440; Ex. 193 ¶ 6.) | **Undisputed**<br><br>Undisputed, but Caldera, Inc. is not a "predecessor" of SCO to the extent that term could be construed as making the past actions of Caldera, Inc. attributable to SCO for purposes of determining the actions of the copyright holder of UNIX or indicating that Caldera, Inc. had the authority to grant others rights to use the infringed SVr4 material.  Caldera, |

FILED UNDER SEAL

13

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | Inc. never held copyrights to the infringed UNIX material. (Ex. 269 ¶ 9; Disputed Fact # 4.) |
| 23. | Caldera, Inc. was formed to develop and market software based on the Linux operating system and to provide related services enabling the development, deployment and management of Linux-specialized servers. (Ex. 221 ¶ 17; Ex. 107 at 6, 31; Ex. 193 ¶¶ 7-11; Ex. 176 ¶ 4.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO for purposes of determining the actions of the copyright holder of UNIX, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| 24. | Caldera, Inc. was the first company to invest heavily in the establishment of Linux as an acceptable business solution. (Ex. 221 ¶ 18; Ex. 441.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| 25. | Continuing the work done by Novell on Project Corsair, Caldera, Inc. developed a Linux desktop operating system, which it called "Caldera Network Desktop", and delivered it to market in 1995. (Ex. 221 ¶ 19; Ex. 107 at 8; Ex. 193 ¶ 8; Ex. 242 ¶ 6.) | **Undisputed/Unsupported**<br><br>Undisputed/unsupported, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because |

FILED UNDER SEAL
14

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>IBM's cited sources do not indicate that the Linux products created by Caldera, Inc. were created through any affiliation with Novell, or that Novell transferred any rights or copyrights to Caldera, Inc. (See Disputed Facts # 4, 22.). |
| 26. | Caldera Network Desktop was based on the Linux 1.2.13 kernel and was distributed under the GPL. (Ex. 221 ¶ 20.) The GPL provides in part:<br><br>You may modify... [Linux] or any portion of it... and copy and distribute such modifications or work... provided that you... cause any work that you distribute or publish, that in whole or in part contains or is derived from [Linux]... to be licensed as a whole at no charge to all third parties under the terms of this License. Each time you redistribute [Linux]... the recipient automatically receives a license from the original licensor to copy, distribute or modify [Linux] subject to these terms and conditions. (Ex. 128 §§ 2, 6.) | **Disputed**<br><br>SCO disputes that any aspect of Caldera Network Desktop containing infringed SVr4 material was properly licensed under the GPL. (See Disputed Fact # 4-5, 22.)<br><br>SCO also disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). |
| 27. | The 1.2.13 Linux kernel on which Caldera Network Desktop was based included SUS Material, Streams Material and ELF Material claimed by SCO, including code from all but three of the files that contain the Linux Code (Items 150-53, 156-57, 159, 160-64, 183-84, 20810, 212, 218, 220-21, 223, 228, 230-31, 272). (Ex. 226 ¶ 17.) | **Disputed/Unsupported/Incomplete**<br><br>First, SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>Second, IBM fails to specify which material from Items 152, 157, 162, 164, 183, 184, |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | 208-210, 212-14, 218, 221, 223, 228, 230, 231, or 272 was purportedly contained in Caldera Network Desktop.<br><br>Third, IBM appears to acknowledge in the Declaration of Daniel Mazieres that Caldera Network Desktop did not contain any material from Items 158-61, 163, 205-07, 211, 215-17, 219-20, 222, 224-27, or 229. (IBM Ex. 226 ¶ 17.)<br><br>Fourth, IBM's infringing Linux activity is not limited to the "Linux Code," which IBM limits to source code residing within the Linux kernel. The infringing Linux material consists of non-literal material, and material outside the Linux kernel, as well. (See IBM Ex. 215 at Ex. H at Items 150-164, 205-208, 211, 213, 215-223, 226-227, 229-230, 272; Exs. 274-76; Disputed Fact 187.)<br><br>Fifth, IBM Ex. 226 constitutes a new expert report, from an undisclosed expert that SCO has not had the opportunity to depose, and cannot form the basis of summary judgment. SCO has not had sufficient opportunity to verify the truthfulness of the cited source. |
| 28. | In addition, Caldera, Inc. helped and encouraged independent software vendors and manufacturers to move their programs to the Caldera Linux operating system environment in an attempt to provide the types of software that had been unavailable for Linux up to that point. (Ex. 221 ¶¶ 31, 33; Ex. 442.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). |
| 29. | To facilitate the porting of Linux to applications written primarily for UNIX-based operating systems, Caldera, Inc. worked to make its Linux products compliant with various UNIX standards, including the X/Open brand for UNIX 95 and the POSIX.1 specification. (Ex. 221 ¶ 32; Ex. 442.) POSIX ("Portable Operating System Interface") is a | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable |

FILED UNDER SEAL

16

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | joint effort of the IEEE and The Open Group and defines a standard UNIX system interface. (Ex. 213 ¶ 51.) | to SCO and could not grant IBM any rights to use the infringed SV r4 material, because neither Caldera, Inc. or Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). |
| 30. | Caldera, Inc. sought to make Linux and its Linux products as UNIX-like as it could in order to encourage use by UNIX enthusiasts. (Ex. 221 ¶ 34; Ex. 242 ¶¶ 9-11; Ex. 169 ¶ 13; Ex. 193 ¶ 11.) | **Undisputed** |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV r4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV r4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). |
| 31. | To achieve compliance with UNIX standards for its Linux products, Caldera, Inc. hired software developers who had both UNIX and Linux experience. (Ex. 221 ¶ 35; Ex. 442.) | **Undisputed** |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV r4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV r4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). |
| 32. | Caldera, Inc. also acquired key technologies, such as certain of the SUS APIs (Application Programming Interfaces) and certain UNIX test suites, from Lasermoon of Wickham, England, to achieve certification for its Linux products on the X/Open brand for UNIX 95. Lasermoon was a Linux company that had pioneered Linux's migration towards X/Open standards and other UNIX certifications. (Ex. 221 ¶ 36; Ex. 442.) | **Undisputed** |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV r4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV r4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | Disputed Facts # 4, 22.). |
| 33. | Caldera, Inc. announced to the Linux community that it was "striving for UNIX certification for Linux by 1997", which it believed would "definitely help Linux on the road to success". (Ex. 221¶ 38; Ex. 442.) | **IBM Ex. 221 (Love Decl.) ¶ 36:**<br><br>The cited source only supports the assertion that Caldera, Inc. *"made efforts to acquire"* the listed technologies and "intended" to achieve compatibility with the X/Open brand for its own Linux product. Although IBM states Caldera, Inc. "acquired key technologies," its declarant states that Caldera, Inc.'s relationship with Lasermoon "fell through because it could not deliver the UNIX certification test suites." (IBM Ex. 221 ¶¶ 36, 38, 40.). |
| | | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>IBM's cited sources only support the assertion that Caldera, Inc. intended to make its own Linux product compliant with UNIX standards, not that it ever did so, or that it sought to make the mainline, public Linux kernel compliant with such standards. |
| 34. | Soon after Caldera, Inc. began its Linux business, Novell entered into an Asset Purchase Agreement, dated September 19, 1995 (the "APA"), with Santa Cruz, another of SCO's alleged predecessors in interest. (Ex. 239 ¶¶ 5-6; Ex. 123.) | **Undisputed** |
| 35. | Under the APA, Novell sold, and Santa Cruz acquired, certain of Novell's UNIX assets, but, as provided in Schedule 1.1(b) of the APA, Novell retained "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare". | **Disputed/Unsupported/Incomplete**<br><br>Disputed in that Novell sold to Santa Cruz all rights and ownership in UNIX and UnixWare, including the copyrights. (See IBM Ex. 123 at Recital A, Schedule 1.1(a), §§ 1.1(a), 1.3(a)(i)). |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

(Ex. 123; Ex. 239 ¶ 10.)

Through a series of corporate acquisitions, the SCO Group owns all right, title, and interest in and to UNIX operating system source code, software, licensing agreements, and any legal claims arising out of those agreements. SCO also owns copyrights and additional licensing rights in and to UNIX. SCO owns copyright registrations for the following UNIX versions: 5th Edition, 6th Edition, 7th Edition, 32V, SVr3.0, SVr3.2, SVr4.0, SVr4.1, SVr4.1ES, SVr4.2. See Copyright Reg. Nos. TXU-510-028, TXU-511-236, TXU-516-704, TXU-516-705, TX 5-750-269, TX 5-750-271, TX 5-750-268, TX 5-76-217, TX 5-762-234, TX 5-705-356, and TX 5-762-235. Exs. 258-268.

Disputed in that extrinsic evidence confirms that Santa Cruz had bought the business "lock, stock and barrel." (Ex. 136.) The extrinsic evidence confirms that SCO obtained Novell's UNIX copyrights through the APA. (Ex. 39 ¶¶ 6-12; Ex. 40 ¶¶ 5-10, 12-16; Ex. 38 ¶¶ 2-4, 5-16; Ex. 59; Ex. 6 ¶ 4; Ex. 50 ¶ 30; Ex. 17 ¶ 4).

Disputed in that Amendment No. 2 to the APA, which was executed on October 16, 1996, reiterates and confirms that **REDACTED**

(IBM Ex. 444 ¶ A.)

Disputed in that IBM internal documents confirm that it considered Santa Cruz the owner of the UNIX copyrights.

**REDACTED**

(Ex. 59 (emphasis added).) IBM thus regarded SCO as the copyright owner, and indisputably did not regard Novell as the copyright owner, of the code.

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 36. | Although SCO claims that a subsequent "Amendment No. 2" to the APA eventually transferred the retained copyrights, that amendment was at most a promise to assign whatever copyrights might be necessary for SCO to exercise its rights under the APA. (Ex. 444; Ex. 199 at 5-8.) | Disputed in that, in conjunction with the transaction set forth in the APA, Santa Cruz and Novell entered into a Technology License Agreement, whereby Santa Cruz licensed back to Novell the UNIX technology. (IBM Ex. 123 § 1.6; Ex. 48 at 1-2.) The transaction would not have made sense if Santa Cruz did not own the copyrights. Ex. 50 ¶ 30; Ex. 17 ¶ 4. The transaction to license back the UNIX technology occurred because Santa Cruz had the rights and the UNIX technology.<br><br>For additional facts relating to chain of title and evidence of transfer of copyright See SCO's opposition memorandum at 14-20 (¶¶ 50-70).<br><br>**Disputed/Unsupported/Incomplete**<br><br>SCO disputes the assertion that Novell never transferred the UNIX copyrights to SCO, or failed to do so as part of the APA. See Disputed Fact # 35. IBM's assertion to the contrary is an erroneous legal conclusion, not an "undisputed fact."<br><br>Schedule 1.1(b) to the APA contained a list of assets excluded from the transfer to Santa Cruz. (IBM Ex. 123 at Schedule 1.(b)). Amendment No. 2 clarified the original agreement, eliminating any possible misconception that UNIX copyrights were excluded from the transfer, clarifying that "all copyrights . . . required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies" did transfer to SCO. (*Id.*; Disputed Fact # 35). |
| 37. | Amendment No. 2 does not identify any copyrights as necessary for SCO to exercise its rights under the APA. Nowhere does this amendment identify what copyrights are necessary under the APA. (Ex. 444.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's assertion that Amendment No. 2 does not identify the copyrights at issue. Amendment No. 2 *does* identify the copyrights at issue: those necessary for Santa Cruz to exercise its rights to UNIX and UnixWare. (Disputed Fact # 36.) Santa Cruz obtained all copyrights in the UNIX and UnixWare operating systems, along with all documentation and supporting material. (Disputed Facts # 35-36.). |
| 38. | SCO asked Novell to transfer ownership of the retained copyrights to it prior to the commencement of this case. Novell declined to transfer the copyrights to SCO. (Ex. 239 ¶¶ 13-14.) | **Disputed/Unsupported**<br><br>SCO disputes the assertion that it requested a transfer of UNIX copyrights from Novell in preparation for this litigation. Novell owned no UNIX copyrights it could have transferred after 1995, and SCO did not request such a transfer. (Ex. 165 ¶ 16; Ex. 9 ¶¶ |

FILED UNDER SEAL

20

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | 6-11.). |
| | | SCO also disputes IBM's implication that Novell owned any UNIX copyrights after 1995. Novell did not own any UNIX copyrights it could have transferred after 1995. (See Disputed Facts 35-37.). |
| | | **Ex. 239 (Declaration of Greg Jones on Behalf of Novell) ¶¶ 13-14:** The cited source does not support the assertion that Novell *owned* any UNIX copyrights that it could transfer after it already transferred them to Santa Cruz. (See Disputed Facts # 36-37.). |
| 39. | At no point did SCO ever notify Novell that it needed any particular copyrights to exercise its rights under the APA. Novell never provided, and SCO never received, an assignment of the copyrights. (Ex. 123; Ex. 444; See Ex. 239 ¶¶ 14-15.) | **Disputed/Unsupported** |
| | | Santa Cruz did receive an assignment of Novell's UNIX copyrights. (See Disputed Facts # 34-37.). Caldera International, which later became SCO, received the UNIX copyrights through its acquisition of Santa Cruz. (See Disputed Fact # 104; Ex. 250.). |
| | | SCO disputes IBM's implication that Santa Cruz had some obligation to notify Novell regarding which copyrights were necessary to exercise its rights under the APA. Santa Cruz had no obligation to notify Novell regarding which copyrights were necessary to exercise its rights under the APA. (See IBM's Exs. 123, 444.). |
| | | None of IBM's cited sources support the assertion that SCO never notified Novell that is needed copyrights to exercise its rights under the APA. |
| 40. | Like Novell, Santa Cruz promoted an open UNIX systems platform. It worked with the The Open Group to assure continued conformance to open systems standards and participated in the TIS Committee. (Ex. 109 at 4.) | **Disputed/Unsupported** |
| | | SCO disputes IBM's assertion that Santa Cruz supported "an open UNIX systems platform" or "open systems standards" to the extent such phrases could suggest the license- or royalty-free copying and distribution of copyrighted UNIX material. (See Disputed Facts # 5-7, 54.). |
| | | IBM's cited source does not support the assertion that Santa Cruz worked with The Open Group or participated in the TIS Committee. |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | Disputed/Unsupported |
|---|---|
| 41. While Santa Cruz was not a Linux company, it was aware of the development of Linux as a UNIX-like operating system. (Ex. 227 ¶ 21; Ex. 207 ¶ 22.) Santa Cruz recognized that Linux presented promising opportunities and decided to develop technologies to provide interoperability between Linux and its UnixWare and OpenServer operating systems. (Ex. 227 ¶¶ 21-32: Ex. 207 ¶ 23.) | First, SCO disputes IBM's implication that any pre-2001 "awareness" or actions of Santa Cruz regarding Linux is irrelevant to the current litigation, because the current litigation is based on Linux 2.4 and 2.6. |
| | Linux 2.4 was released in January 2001, just months before Santa Cruz ceased to exist. (See Disputed Fact # 104, Ex. 110.) |
| | Linux 2.6 was released in December of 2003, after Santa Cruz ceased to exist and SCO had initiated this lawsuit. (See Disputed Fact # 104, Ex. 102.). |
| | Second, SCO disputes IBM's assertion that Santa Cruz was aware of the presence of any copyrighted UNIX material in Linux prior to, at the earliest, October 1999, after IBM began its Linux activities. (See Disputed Facts # 85-86, 89.). |
| | REDACTED |
| | **IBM Ex. 207 (Johnson Declaration) ¶¶ 22-23:** The cited source gives no specific time frame for when Santa Cruz purportedly became aware of similarities between Linux and UNIX. |
| | The cited source does not specify what type of "interoperability" Santa Cruz sought to achieve between Linux and UnixWare or Open Server. |
| | **IBM Ex. 227 (McCrabb Decl.) ¶¶ 21-32:** The cited source gives no time frame for when Santa Cruz became aware of similarities between Linux and UNIX and does not specify what version of Linux Santa Cruz purportedly knew to be similar to UNIX.  The cited source does not support the assertion |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | that Santa Cruz knew of similarities between Linux and UNIX prior to "late 1999." |
| | | The cited source supports the assertion that Santa Cruz helped users of UnixWare run applications that were written for Linux, but not any other sort of "interoperability between Linux and its...operating systems." |
| 42. | In 1996 Caldera, Inc. began shipping its second Linux-based operating system, a new 32-bit, Linux P2.x-based platform for extending local area networks ("LANs") to the home, branch office, remote user, Inter/intranet and embedded systems. (Ex. 221 ¶ 39; Ex. 445.) | **Undisputed** |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| 43. | Caldera, Inc. designed Caldera OpenLinux to be compliant with certain UNIX standards, including the X/Open brand for UNIX 95 and the POSIX.1 specification. (Ex. 221 ¶ 32; Ex. 442; Ex. 262 at SCO1269185-86.) | **Undisputed** |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| | | **IBM Ex. 221 (Love Declaration) ¶ 32; IBM Ex. 442 (Caldera Open Linux Announcement, May 23, 1996):** |
| | | The cited sources only support the assertion that Caldera, Inc. sought to make Caldera OpenLinux compliant with the X/Open and POSIX 1 standards, not that Caldera OpenLinux actually achieved such compliance. |
| | | **IBM Ex. 262 (Caldera, A Technical Introduction to the Caldera Network Desktop):** |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 44. | The X/Open brand for UNIX 95 (which requires SUS conformance) and the POSIX.1 specification together required all of the SUS header files and two of the Streams header files (Items 152, 157, 183-84, 205-31.) (Ex. 214 (Ex. 3); Ex. 446.) | The cited source does not mention Caldera OpenLinux. |
| | | **Disputed/Unsupported/Incomplete** |
| | | First, SCO disputes IBM's assertions regarding the presence of material from Items 152, 157, 183-184, 205-231 in POSIX, UNIX 95, or other standards. |
| | | REDACTED |
| | | Second, SCO disputes IBM's implication that the presence of material in UNIX 95, POSIX, or other standards is relevant to whether use of such material in Linux is infringing. Incorporation of the infringed SVr4 material into the SUS, UNIX 95, and/or POSIX standards is immaterial to whether IBM has any rights to use such material. (See Disputed Facts # 6, 11-13.). IBM cites no source showing a properly granted license to use material in such standards. |
| | | **IBM Ex. 214 (Ex. 3)** |
| | | The cited source does not specify whether the X/Open UNIX 95 or POSIX.1 standards include *all* of the material in the cited files or merely a portion of such files, and does not specify which portion is included in such standards. |
| | | REDACTED |
| | | **IBM Ex. 446 (The Open Group "The Testing requirements by Product Standard (dated 9/18/06):** |
| | | The cited document supports the assertion that a work claiming compliance with SUS must comply with the UNIX 95, UNIX 98 or UNIX 03 Product Standards, but does not support the converse (that compliance with, e.g., UNIX 95, requires compliance with SUS). |
| 45. | In its first version of OpenLinux, Caldera included much of the Linux Code. Caldera OpenLinux | **Disputed/Unsupported** |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| eventually included, aside from one file (Item 185), every line of the Linux Code. (Ex. 215 (Ex. H); Ex. 226 ¶ 11.) Additionally, the Caldera OpenLinux products contained all of the SUS Material (Items 183-84, 205-31), all of the ELF Material from elf.h (Item 272), and code from every single allegedly infringed Streams file (Items 150-64). Therefore, much of the Linux Code has been distributed in SCO's Linux products for nearly a decade. (Ex. 214 (Ex. 3); Ex. 446.) | First, SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringing SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>Second, SCO disputes that Caldera OpenLinux included all the Linux Code except for material from Item 185. Material from Item 272 was not included in Caldera OpenLinux. (See IBM Ex. 215 at Ex. H at Item 272 a).<br><br>Third, SCO disputes IBM's implication that the "Linux Code" is the only material at issue. The "Linux Code" does *not* include all the infringing Linux material. See Disputed Fact # 27. Furthermore, Caldera OpenLinux did not include all the infringing Linux material. See Kernighan & Davis II IBM Ex. 215 at Ex. H.<br><br>Fourth, SCO also disputes that inclusion of material in any Linux version prior to 2.4 or 2.6 is relevant to this litigation. Caldera's first OpenLinux version was released before the Linux 2.4 and 2.6 versions at issue in this lawsuit. See Disputed Fact # 41; Ex. 83. IBM's cited sources do not mention Caldera's "first version" of OpenLinux or otherwise support the assertion that the cited files were distributed as part of OpenLinux "for nearly a decade."<br><br>**IBM Ex. 226 (Mazieres Decl.) ¶ 11:**<br>In addition to the other defects of the cited source (See Disputed Fact # 27), the cited source does not support the assertion that "every line" of the cited code was contained in OpenLinux. The source defines "Disputed Code" as "allegedly infringed lines of System V," yet somehow asserts that a product can contain "all the Disputed Code," but not contain all the code that SCO alleges has been infringed. (IBM Ex. 226 ¶¶ 9-10.). This internal contradiction, along with IBM's other conflicting sources, creates a disputed issue of fact. | |
| 46. | Like Caldera Network Desktop, Caldera | Disputed/Unsupported |

FILED UNDER SEAL

25

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

|  |  |  |
|---|---|---|
|  | OpenLinux was distributed under the GPL. (Ex. 221 ¶ 41; Ex. 284 ¶ 9.) | SCO does not dispute that elements of Caldera Network Desktop and Caldera OpenLinux were "distributed" under the GPL. However, no UNIX material in Caldera Network Desktop or Caldera OpenLinux was properly licensed under the GPL. (See Disputed Facts # 4-5, 8 22.). |
|  |  | **IBM Ex. 284 (Nov. 30, 2004, Declaration of Erik W. Hughes) ¶ 9:** The cited source supports the assertion that SCO complied with all obligations imposed on a GPL licensee, but does not support the assertion that any material (SCO-owned or otherwise) was properly licensed under the GPL. |
| 47. | Caldera, Inc. continued to promote and develop its Linux products as a high-end operating system appropriate for business use. For example, Caldera not only added features to OpenLinux, but also included a wider range of bundled proprietary business software applications. (Ex. 221 ¶ 42; Ex. 445.) | **Undisputed** |
|  |  | Undisputed, but the actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
|  |  | SCO disputes IBM's suggestion that Linux was suitable for high-end business use at this time. (See Disputed Fact # 75). |
| 48. | In fact, Caldera, Inc. marketed its Linux products as "an inexpensive alternative to UNIX-based systems", and "a complete networking solution" for "small- to medium-sized businesses and enterprises". (Ex. 221¶ 43; Ex. 447.) | **Disputed** |
|  |  | SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. |
|  |  | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
|  |  | SCO disputes IBM's suggestion that Linux was suitable for high-end business use prior to 2000. (See Disputed Fact # 75). |

FILED UNDER SEAL

26

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| 49. | To make Linux more UNIX-like, Caldera proposed that Streams technology, originally developed for use in UNIX operating systems, be included in Linux. Caldera, Inc. required Linux Streams support in order to be able to run its Netware for Linux product. (Ex. 221 ¶ 44; Ex. 193 ¶¶ 15-16). | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| 50. | Caldera was unable to persuade the Linux community to include Streams technology in the Linux kernel. (Ex. 221 ¶ 45; Ex. 193 ¶ 15; Ex. 201 ¶ 4.) But it made a significant contribution to the project that made Streams a loadable module for use with the Linux operating system. (Ex. 221 ¶ 45; Ex. 193 ¶ 16; Ex. 201 ¶ 5.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| 51. | Caldera, Inc.'s Streams support resulted in the Linux Streams ("LiS") optional package (Ex. 221 ¶ 46), which contains all of the Streams header files (Items 150-164) (Ex. 215 (Ex. H)).   Caldera is one of the few Linux companies that distributed some of the material that it challenges from outside the kernel, such as the Streams Material and certain of the ELF Material. (Ex. 215 ¶ 95; Ex. 207 ¶ 35). | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>Although it is undisputed that some "Caldera" entities distributed some of the infringing Linux material, SCO disputes that Santa Cruz, Caldera International, or SCO contributed |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | any of the infringing Linux material to Linux or distributed all of the infringing Linux material. (See Disputed Facts # 4-5; IBM Ex. 215 at Ex. H.). <br><br> **IBM Ex. 221 (Love Declaration) ¶ 46:** <br> Although this source states that Caldera, Inc.'s activities "resulted" in the LiS Streams module, it does not specify whether or what Caldera, Inc. actually created, or what was created by third parties.   REDACTED <br><br> **IBM Ex. 215,** ~~IBM Ex. H,~~ <br> This source does not support the assertion that "few" Linux companies distributed the Streams material and ELF material. <br><br> **IBM Ex. 207 (Johnson Decl.) ¶ 35:** <br> The cited source does not support the assertion that "few" Linux companies distributed the ELF or Streams material, that "Caldera" distributed the Streams or ELF material, nor does it specify between "Caldera" entities. |
| 52. | In addition to participating in the LiS project, which led to the availability of the Streams Material for Linux, Caldera, Inc. made the Streams Material freely available for download on its website. Indeed, the online announcement of Linux Streams' availability read: "LiS STREAMS is now available. It is referenced to kernel version 2.0.24. It can be obtained from Caldera's FTP site as follows: ftp.caldera.com/pub/stuff/LiS-2.0.24.tar.gz". (Ex. 221 ¶ 47; Ex. 448.) | **Undisputed** <br><br> Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material. <br><br> The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). <br><br> SCO disputes that SCO or Caldera International distributed all of the Streams material. (See IBM Ex. 215 at Ex. H.). IBM's cited sources do not support the assertion that either Santa Cruz, Caldera International, or SCO distributed any of the Streams material. |
| 53. | To encourage commercial acceptance of Linux, Caldera, Inc. championed the standardization of Linux. Caldera believed that the biggest deterrent | **Undisputed** <br><br> Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | to commercial acceptance of Linux was the resource expenditure by independent software vendors associated with porting their software products to multiple versions of Linux. (Ex. 221 ¶ 30; Ex. 449.) | Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>**Ex. 221 (Love Decl.) ¶ 30:**<br>The cited source provides no timeframe for IBM's assertion.<br><br>**Ex. 449 (Caldera Systems, Inc. Linux Standards Base White Paper):** This source was published in 1999, after IBM began its Linux activities. (See Disputed Fact # 89.). |
| 54. | The creation of standards for Linux was important for Caldera and other Linux distributors because it permitted Linux to interact with other programs and encouraged beneficial competition and cooperation. (Ex. 221 ¶ 29; Ex. 214 ¶ 21.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes that other UNIX distributors or Caldera (if it encompasses entities that owned the copyright) felt the creation of standards encourages beneficial competition.<br><br>REDACTED<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. See Disputed Facts # 4, 22. |

FILED UNDER SEAL

29

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 55. | Operating system vendors profit in general from standards because standards make it easy for those developing application programs (e.g., word processors, spreadsheets, Web browsers, etc.) to create applications that run on that operating system. Standards allow application developers to avoid creating several different versions of their applications for various different systems. And the more applications that are compatible with a particular operating system, the more attractive it will be to customers. (Ex. 221 ¶ 33; Ex. 214 ¶¶ 21-22.) | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity.<br><br>**REDACTED**<br><br>**IBM Ex. 214:**<br>The cited source supports the general assertion that "interoperability" is beneficial, but fails to distinguish between various types of interoperability. For example, it may be beneficial to operating system providers for application programmers to be able to write an application that runs on many different operating systems, but not beneficial to allow a competing operating system to use copyrighted material. |
| | | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. (See Disputed Fact # 54.). The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. (*Id.*).<br><br>SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.). Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. (*Id.*) |
| 56. | Caldera, Inc. was the first corporate signer of the 1998 document proposing the Linux Standard Base ("LSB"). "[T]he Linux Standard Base Project [was] an attempt to define the common core of components that can be expected to be found in any 'Linux' system". (Ex. 221 ¶ 48; Ex. 450.) | **Disputed**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | Ex. 207 ¶ 30; Ex. 242 ¶ 11; Ex. 251 ¶ 7; Ex. 176 ¶ 8.) | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |
| | | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54. |
| | | SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id. |
| | | SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.). Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. See id. |
| 57. | The main objective of the LSB was to solve the problem facing every commercial independent software vendor ("ISV"), namely, the resource expenditure associated with porting their software products to multiple versions of the many Linux products and distributions currently in the marketplace. (Ex. 221 ¶ 50; Ex. 449 at 2; Ex. 227 ¶ 45.) | **Disputed** |
| | | SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54. |
| | | SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id. |
| | | SCO disputes IBM's implication that whether or not operating systems profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.) Whether operating system vendors profit from standards does not make the material in such standards unprotectable by copyright. See id. |
| 58. | In addition to its own support of the LSB, Caldera exhorted all members of the Linux community to support the LSB and Linux standardization:<br><br>Linux is at a crossroads, and the path seems clear. All Linux providers must give up some immediate and transitory gains today so that the Linux Standard Base can be allowed to establish unifying software porting standards. A long-term vision of the Linux opportunity should encourage all providers to move toward LSB.<br><br>(Ex. 221 ¶ 53; Ex. 449 at 3-4.) | **Disputed**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.)<br><br>SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.

SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id.

SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.). Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. See id.

IBM's quote comes from a Caldera Systems paper published in November 1999, after IBM began its Linux activities and before Caldera Systems had any authority over UNIX copyrights. (IBM Ex. 449; Disputed Facts # 4, 22.).

**Disputed/Unsupported/Incomplete**

SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.

IBM's cited sources do not specify any actions constituting "support" of the LSB or Linux standardization in general, nor do they specify any time frame in which such purported support occurred. |
| 59. | Santa Cruz also supported the standardization movement with regard to Linux. Santa Cruz encouraged adoption of the LSB and saw compliance with standards as vital to the future success and adoption of Linux. (Ex. 221 ¶ 52; Ex. 227 ¶ 19; Ex. 207 ¶ 30.) | |

FILED UNDER SEAL
33

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 60. | As David McCrabb, the President of Santa Cruz's Server Software Division, put it in an interview: "With our investments throughout the Linux Community, [Santa Cruz] care[s] about the success of the Linux market more than ever. This being the case, we are very concerned about fragmentation. This is why we stand whole-heartedly behind the Linux Standard Base." (Ex 227 ¶ 20) | SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id.<br><br>SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.) Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. See id.<br><br>**IBM Ex. 221 (Love Decl.) ¶ 52; IBM Ex. 227 (McCrabb Decl.) ¶ 19:**<br>The cited sources provide no time frame for IBM's assertion.<br><br>**IBM Ex. 207 (Johnson Decl.) ¶ 30:**<br>The cited source is very vague and does not support the assertion that Santa Cruz engaged in any specific actions, and provides no specific time frame. |
| 61. | The LSB explicitly required the inclusion in Linux of material from all but three of the allegedly | **Disputed/Unsupported/Incomplete**<br><br>**Disputed**<br><br>SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.<br><br>IBM's cited source only supports the allegation that Santa Cruz supported the LSB by May 2000, after IBM began its Linux activities. See Disputed Fact # 89. |

FILED UNDER SEAL

34

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | |
|---|---|
| infringed SUS header files. (Items 183-84, 205-18, 221-24, 226-29, 231). (Ex. 214 (Ex. 3). <u>See</u> Ex. 166 ¶ 19.) Much of the Linux Code is in Linux as a result (in part) of SCO's efforts to bring Linux into compliance with the LSB. (Ex. 207 ¶ 34.) | SCO disputes IBM's assertion to the extent it implies that all the material in the cited files was part of the LSB. IBM's cited source shows that some of the material in the cited files was *not* included in standards such as LSB, but fails to specify which material was included in such standards. <u>See</u> IBM Ex. 214 at Ex. 3; Disputed Fact # 12.<br><br>**REDACTED**<br><br>SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. <u>See</u> Disputed Fact # 54.<br><br>SCO disputes IBM's assertion to the extent it implies that SCO contributed infringing material to Linux. SCO did not contribute any of the infringing Linux material to Linux. <u>See</u> Disputed Fact # 4.<br><br>**IBM Ex. 166 (Declaration of Douglas B. Beattie) ¶ 19; IBM Ex. 207 (Johnson Decl.) ¶ 34:**<br>The cited sources only support the assertion that the some infringing Linux material was contained in LSB either "explicitly or by reference to the requirements of Unix standards." However, IBM claims that certain material was included UNIX standards that, in fact, was *not* included in such standards. <u>See</u> Disputed Fact # 12. Unfortunately, the cited sources do not specify *which* standards were referred to by LSB. |
| 62. | The LSB also incorporates by reference requirements of common UNIX standards such as the SUS and POSIX, which require the inclusion in Linux of material from all of the allegedly infringed SUS header files, including that not explicitly required by the LSB. (Ex. 221 ¶ 49; Ex. 215 ¶ 115; | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion to the extent it implies that SUS and POSIX include or require inclusion of the infringing Linux material.<br><br>**REDACTED** |

FILED UNDER SEAL