Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement



| 215. | Thus, USL granted IBM a license for all its intellectual property that was contained in Spec 1170, including the SUS Material and some of the Streams and ELF Material. (Ex. 214 (Ex. 3)).<br><br>REDACTED | **Disputed/Unsupported**<br><br>SCO disputes that IBM ever received a valid license to use the infringed UNIX material in Linux. IBM has no license to reproduce, distribute, or prepare derivative works based on the infringed UNIX material as part of Linux 2.4 or 2.6, or induce others to do the same. (See Disputed Facts # 11-14, 198, 213-14.).<br><br>IBM's cited source mentions no licenses at all. |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 216. | In the mid-1990s, IBM, Novell and Santa Cruz participated in a standards-setting consortium known as the Tool Interface Standards (TIS) Committee. IBM has a license to the ELF Material pursuant to a grant of rights from Novell and Santa Cruz. (Ex. 238 ¶ 6; Ex. 438 at i; Ex. 439 at iii; Ex. 215 ¶ 101.) | **Disputed/Unsupported**<br><br>SCO disputes that IBM ever received a valid license to use the infringed UNIX material in Linux. IBM has no license to reproduce, distribute, or prepare derivative works based on the infringed UNIX material as part of Linux 2.4 or 2.6, or induce others to do the same. (See Disputed Facts # 15-18, 198.)<br><br>SCO also disputes IBM's assertion regarding whether the infringed UNIX material was present in Spec 1170, which IBM has not supported. (See Disputed Facts # 11-14.). |
| 217. | The TIS Committee published two standards related to object file formats: the Portable Formats Specification, version 1.1 (Ex. 438), and the ELF Specification, version 1.2 (Ex. 439). Novell in 1993 granted the TIS Committee (which Novell joined prior to the version 1.2 publication) a license to implement all materials required by the ELF Specification. (Ex. 569; See Ex. 439.) The first sentence following the cover page of these specifications states: "The TIS Committee grants you a non-exclusive, worldwide, royalty-free license to use the information disclosed in the Specifications to make your software TIS-compliant; no other license, express or implied, is granted or intended hereby." (Ex. 438; Ex. 439.) | **Disputed**<br><br>Neither Novell, Santa Cruz, nor the TIS Committee granted IBM a license to use the ELF material in Linux. (See Disputed Facts # 15-18, 188.). |
| 218. | All of the ELF Material is either literally included in the ELF Specification, or is otherwise designed to make Linux TIS-compliant. (Ex. 214 ¶¶ 43-44, 47; Ex. 215 ¶¶ 99-100.) | **Disputed**<br><br>SCO disputes IBM's assertion.<br><br>Some of the infringing ELF material in Linux, including material in Item 272, was not included in the TIS Specification. (See Disputed Facts # 17-18, 188.).<br><br>Infringing ELF material was introduced into Linux before inclusion in any TIS |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | | |
|---|---|---|---|
| 219. | Accordingly, IBM has a license to the ELF Material from the TIS Committee. The TIS Committee granted IBM and others a license to use the information in these standards or specifications, which require all of the ELF Material. (Ex. 238 ¶¶ 6-7.) | **Disputed** | Specification, and was not introduced in an effort to make Linux "TIS-compliant." (See # 17-18, 188.). |
| | | | Neither Novell, Santa Cruz, nor the TIS Committee granted IBM a license to use the ELF material in Linux. (See Disputed Facts # 15-18, 188.). |
| 220. | The Final Disclosures do not show, and SCO cannot otherwise establish, that the Linux kernel is substantially similar to protectable elements of the System V Works. | **Disputed** | SCO disputes IBM's legal conclusion that the Final Disclosures do not show substantial similarity between the protectable elements of the infringed UNIX material and the infringing Linux material. As explained in the expert reports of Dr. Cargill, the material in the Final Disclosures shows that the infringing Linux material was copied from the infringed UNIX material, that the infringed UNIX material is protectable under copyright, and that the infringed UNIX material constitutes a substantial portion of SVr4. (See Disputed Facts # 192, 222-223, 236.). |
| | | | Furthermore, IBM's assertion is a disputed legal conclusion, not an "undisputed fact." |
| 221. | SCO cannot show substantial similarity between the Linux kernel and protectable elements of the System V Works because none of the System V Code is protectable by copyright. (Ex. 215 ¶ 3 1.) | **Disputed** | SCO disputes IBM's assertion that there is no substantial similarity between the infringing Linux material and the infringed UNIX material. (See Disputed Facts # 192, 220, 222.). |
| | | | SCO disputes IBM's legal conclusion that none of the System V Code is protectable by copyright. (See Disputed Facts # 192, 220, 236.). |
| | | | SCO disputes IBM's implication that the only infringing material at issue is "Code," while excluding the non-literal aspects embodied in such code. (See Disputed Fact # 27.). |
| | | | IBM's cited source does not address any of the non-literal infringing Linux material. |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | (See Disputed Fact # 118.). |
|---|---|---|
| 222. | Even if all of the System V Code were protectable by copyright, the Linux kernel is not substantially similar to Linux. (Ex. 215 ¶ 45.) | **Disputed**<br><br>SCO disputes IBM's legal conclusion that the infringed UNIX material is not protectable by copyright. (See Disputed Facts # 192, 236.).<br><br>SCO disputes IBM's assertion that the infringed UNIX material is not substantially similar to the infringing Linux material.<br><br>**REDACTED** : Disputed Fact # 192, 233.).<br><br>**REDACTED**<br><br>Furthermore, IBM's cited source does not address any of the non-literal infringing Linux material, which Dr. Cargill has addressed in great detail in his expert reports and was an area examined during his deposition. (See Disputed Facts # 27, 118, 223; Ex. 78 at, e.g., 103:24-104:20.). |
| 223. | Quantitatively, only a tiny amount of code is claimed to have been copied. (Ex. 215 ¶¶ 31-46.) | **Disputed/Unsupported/Immaterial**<br><br>SCO disputes IBM's implication that the infringed UNIX material constitutes a "tiny" amount of SVr4. **REDACTED**<br><br>Furthermore, the quantitative amount of copied material is "irrelevant as a matter of law." *Dun & Bradstreet Software Servs. Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002). Saying the copied material is "tiny" is like saying the heart is a "tiny" portion of the body, but is irrelevant to whether it is "substantial" or valuable. (See Disputed Fact # 190.). |

FILED UNDER SEAL
109

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 224. | The 12 items relating to the Linux kernel identify 320 lines of UNIX System V code that is alleged to have been infringed. These lines of code constitute less than five one-thousandths of a percent (.005%) of UNIX SVr4.2-ES-MP. (Ex. 213 ¶96.) The Linux Code does not constitute a significant portion of UNIX System V code considered in its entirety. (See Ex. 215 ¶¶ 31-46; Ex. 213 ¶ 96.) | **Disputed/Unsupported/Immaterial**<br><br>SCO disputes IBM's assertion that the "Linux Code" is an insignificant portion of SVr4. The infringing Linux material, including the "Linux Code," constitutes a substantial, significant, and valuable portion of SVr4. (See Disputed Fact # 222.).<br><br>SCO disputes IBM's suggestion that the material copied from UNIX into the Linux kernel constitutes only .005% of UNIX SVr4.2 ES-MP. IBM's cited sources do not address any non-literal aspects of the infringing Linux material, and are therefore inaccurate. (See Disputed Fact # 27, 118, 223.).<br><br>REDACTED<br><br>**IBM Ex. 213 (**<br><br>Does not support IBM's assertion that only 12 Items relate to Linux kernel code. Furthermore, IBM's quantitative assertions are legally immaterial.  (See Disputed Fact # 223.). |
| 225. | The allegedly infringed code from UNIX System V constitutes less than one one-hundredth of a percent (.01%) of the Linux kernel.  (Ex. 213 ¶ 96.)  When material outside the kernel is taken into account, the allegedly infringing material represents only 4,779 lines of code in 53 files.  (Id. ¶ 97; Ex. 214 (Ex. 4).)  These lines are less than seven one-hundredths of a percent (.07%) of SVr4.2-ES-MP. (Ex. 213 ¶ 97.) | **Disputed/Unsupported/Immaterial**<br><br>SCO disputes IBM's quantitative analysis.  IBM's cited sources do not address any non-literal material, resulting in an inaccurate quantitative analysis.  (See Disputed Facts # 27, 118, 223.).<br><br>Furthermore, the quantitative amount of copied material is "irrelevant as a matter of law." (See Disputed Fact # 223.). |
| 226. | The 12 items relating to the Linux kernel identify 326 lines of Linux code in 12 files.  (Ex. 213 ¶ 98.)  These lines of code constitute much less than one one-hundredth of a percent (.01%) of the Linux kernel.  (Id.)  Likewise, the Linux Code constitutes less than five one-thousandths of a percent (.005%) of the allegedly infringed UNIX SVr4.2-ES-MP. (Id.) | **Disputed/Unsupported/Immaterial**<br><br>SCO disputes IBM's quantitative analysis.  IBM's cited sources do not address any non-literal material, resulting in an inaccurate quantitative analysis.  (See Disputed Facts # 27, 118, 223.).<br><br>Furthermore, the quantitative amount of the copied material is "irrelevant as a matter of law," as is any quantitative analysis of material in Linux.  (See Disputed Fact # 223; Jacobsen v. Deseret Book Co., 287 F.3d 936, 945 (10th Cir. 2002)). |

FILED UNDER SEAL

110

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | Disputed/Unsupported/Immaterial |
|---|---|---|
| 227. | When material outside the kernel is taken into account, the allegedly infringing material represents only 5,145 lines of code in 64 files. (Ex. 213 ¶ 99; Ex. 214 (Ex. 4).) This is well under one-tenth of one percent (.1%) of the lines in Linux version 2.6.14. (Ex. 213 ¶ 99.) | SCO disputes IBM's quantitative analysis. IBM's cited sources do not address any non-literal material, resulting in an inaccurate quantitative analysis. (See Disputed Facts # 27, 118, 223.). Furthermore, the quantitative amount of copied material is "irrelevant as a matter of law." (See Disputed Facts # 223, 226.). |
| 228. | Qualitatively, there is no substantial similarity between the Linux kernel and protectable elements of the System V Works. (See Ex. 215 ¶¶ 31-46.). | **Disputed/Unsupported**<br><br>SCO disputes IBM's suggestion that the infringed UNIX material is not qualitatively substantial. The infringed UNIX material constitutes material of substance and value to, and a qualitatively substantial portion of, SVr4. (See Disputed Facts # 222.).<br><br>SCO also disputes IBM's assertion to the extent it suggests there is not similarity indicative of copying between the infringed UNIX material and the infringing Linux material. The infringing Linux material was copied from the infringed UNIX material. (See Disputed Facts # 192, 220.).<br><br>**REDACTED**<br><br>IBM's expert, Mr. Kernighan, claims not to have engaged in a qualitative analysis of the code because he "was not asked to assess the qualitative significance." Ex. 22 at 280:2-3.<br><br>SCO's expert, however, performed an extensive qualitative analysis of the infringing material.<br><br>**REDACTED** |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| ̗ | REDACTED | Furthermore, IBM's cited sources do not support any assertion regarding non-literal material. (See Disputed Fact # 27, 118). |
| 229. | SCO has not accused Linux of copying header files in general, memory management in general, or even the totality of the UNIX header files. (Ex. 215 ¶ 36.) Indeed, it alleges copying of only about 1,600 lines in 53 System V Release 4.0 files (only 326 of those lines are in the kernel). (See id. ¶ 36.) There are over 235,000 lines in 1,800 header files in the usr/uts directory of SVr4.2-ES-MP (excluding XI 1 files), so the accused code is well under one percent of the SVr4 interface. (Id.) It cannot be qualitatively significant simply on the grounds of being part of the interface, as it is such a small part of the interface. See id. ¶¶ 31-46.) | Disputed/Unsupported/Immaterial<br><br>SCO dispute IBM's assertion that SCO alleges infringement of "only about 1,600 lines in 53 System V Release 4.0 files." SCO alleges infringement of more than "only about 1,600 lines in 53 System V Release 4.0 files."<br><br>REDACTED<br><br>; Disputed Fact # 231.).<br><br>SCO disputes IBM's assertion that the cited material "cannot be qualitatively significant simply on the grounds of being part of the interface, as it is such a small part of the interface." The infringed UNIX material constitutes a substantial, valuable, and significant portion of SVr4. (See Disputed Fact # 222.).<br><br>Furthermore, whether the material is a "small" part of anything is legally irrelevant to whether it is qualitatively significant. (See Disputed Facts # 223, 226;<br><br>REDACTED |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 230. | The particular lines SCO has identified as allegedly copied are a scattered and fragmentary collection of define statements, data structures and function prototypes, not qualitatively different in form or character or content or their individual importance from the many thousands of other lines of interface code. (Ex. 215 ¶ 37.) Nor is there any apparent pattern, regularity, consistency, or cohesiveness to the accused code; it is scattered throughout the files, sometimes only a line or two in a file. (*Id.*) | **Disputed**<br><br>SCO disputes IBM's assertion that the lines of literal code identified in SCO's Final Disclosures are "scattered and fragmentary." Rather, the identified material exhibits a discernible pattern.<br><br>REDACTED<br><br>SCO disputes IBM's assertion that the lines of literal code identified in SCO's Final Disclosures are "not qualitatively different in form or character or content or their individual importance from the many thousands of other lines of interface code."<br><br>REDACTED<br><br>Ex. 22 at 100:9-101:25.<br><br>*See also* Disputed Fact # 222.)<br><br>Neither IBM's assertion, argument, or expert reports address the non-literal material copied from SVr4 into Linux.  (*See* Disputed Fact # 27, 118, 222.). |
| 231. | Only two items (Items 185 and 272) involve implementation code, *i.e.*, code that actually does something. (Ex. 215 ¶ 41.) Both items involving implementation deal with minor pieces of behavior, set amongst the vast body of complex code that goes into an implementation. | **Disputed**<br><br>SCO disputes IBM's suggestion that only implementation code "does something." Interface code "does something" as well: it expresses information to programmers, much the same way musical notation embodying the "chorus" of a song "does something" by expressing to singers what to sing when they see the "refrain" or "chorus" prompt.<br><br>REDACTED<br><br>Disputed |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | Facts # 239-240.) |
|---|---|---|
| | | REDACTED |
| 232. | Item 185 is a small addition to a piece of memory allocation code much of which is in the public domain, while the part of Item 272 code that is implementation is a collection of two dozen elementary functions for accessing ELF data structures. (Ex. 215 ¶ 41.) | **Disputed/Unsupported**

SCO disputes IBM's assertion that the material identified in Item 185 is "small." Approximately 100 lines of code shown in Item 185 were copied identically or nearly-identically from System V into Linux. (See Disputed Fact # 190.)

SCO disputes IBM's legal conclusion that the material in Item 185 is in the public domain. Dr. Kernighan, an author of the source cited by IBM, has withdrawn his legal conclusion that the material in Item 185 is in the public domain and IBM's cited source does not put forth facts to support such a conclusion. (See Ex. 22 at 201:4-8;
REDACTED |
| 233. | The cited code is quantitatively a minuscule percentage of the SVr4 (or Linux) code, and is qualitatively inconsequential. See Ex. 215 ¶ 45.) Thus, the cited code is not substantially similar. (Id.) | **Disputed/Unsupported/Immaterial**

SCO disputes IBM's assertion that the code embodying the infringed UNIX material is "qualitatively inconsequential." Even small segments of the copied code are extremely substantial, significant, and valuable to SVr4. (See Disputed Fact # 222.)

SCO disputes IBM's suggestion that the infringed UNIX material is a "miniscule percentage" of SVr4. The infringed UNIX material constitutes the overall structure of SVr4, which is not "miniscule." (See Disputed Fact # 223.) IBM's cited sources do not address any non-literal material, resulting in an inaccurate quantitative analysis. (See Disputed Facts # 27, 118, 223.)

SCO disputes IBM's statement that the infringing Linux material is not substantially similar to the infringed UNIX material. The infringing Linux material is substantially similar to the infringed UNIX material. (See Disputed Facts # 192, 220, 222, 228, 236;
REDACTED |
| 234. | When considered both quantitatively and | **Disputed/Unsupported** |

FILED UNDER SEAL

114

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | qualitatively, the System V Code is insubstantial. An ordinary reasonable person could not possibly conclude that Linux is substantially similar to the System V Works. (Ex. 212 ¶¶ 5, 19, 26-27, 30; Ex. 213 ¶¶ 91-102; Ex. 214 ¶ 12; 215 ¶¶ 31-46.) | SCO disputes IBM's assertion that the "System V Code" is insubstantial. It is false and based on legally immaterial facts. (See Disputed Facts # 220, 222-23, 226.). SCO disputes IBM's assertion that no "ordinary reasonable person" could find "substantial similarity" between the works. It is an erroneous legal conclusion based on a mistaken interpretation of the law and an insufficient factual basis. (Id.) REDACTED SCO disputes IBM's implication that the copied material should be considered quantitatively. The quantitative amount of the copied code is legally irrelevant. (See Disputed Facts # 223, 226.). |
| 235. | None of the System V Code is protectable by copyright law. (Ex. 215 ¶ 122; Ex. 213 ¶¶ 103-04.) | **Disputed** SCO disputes IBM's legal conclusion that none of the infringed UNIX code is protectable by copyright law. To the extent that it raises underlying factual disputes, those issues are addressed below. |
| 236. | The System V Code: (1) is dictated by externalities, such as standards, compatibility requirements and programming practices; (2) contains mere ideas, procedures, processes, systems, methods of operation or can be expressed in only a few meaningfully different ways; and/or (3) lacks originality. (Ex. 213 ¶ 103.) | **Disputed** SCO disputes IBM's legal conclusions that the infringed UNIX material "(1) is dictated by externalities, such as standards, compatibility requirements and programming practices; (2) contains mere ideas, procedures, processes, systems, methods of operation or can be expressed in only a few meaningfully different ways; and/or (3) lacks originality." The infringed UNIX material was not dictated by external constraints, or otherwise stock, standard, or common, at the time it was created by its authors. ( REDACTED Ex. 22 at 86:4-18, 99:11-14, 129:18-24; 164:7-14, 166:14-19, 167:15-20, 168:4-169:12, 170:13-25, 171:15-22, 176:14-20, 183:15-184:7, 190:24-191:2, 191:12-25, 192:7-11, 193:12-21, 197:2-17, 198:13-20). |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement



| 237. | With one exception (Item 185), the System V Code is composed of header files.  (See Ex. 215 (Ex. H).) | Undisputed |

FILED UNDER SEAL

116

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | While a portion of Item 272 is not composed of header files, all the Linux kernel material in Item 272 consists of header file code. (Ex. 214 (Ex. 4); Ex. 215 (Ex. H).) | This is undisputed to the extent IBM refers only to literal source code. |
| 238. | A computer can be described in three layers typically: (i) the hardware (e.g., an IBM ThinkPad), (ii) onto which is loaded an operating system (UNIX, Windows, etc.), and (iii) the set of application programs (e.g., a word processor, web browser, etc.). (Ex. 215 ¶¶ 7-8 & Fig. 1.) The entire purpose of an operating system's header files is to specify the interface to the operating system, i.e., the (metaphorical) set of dials, levers, and switches that an application can use to get the operating system to perform a service. (Id. ¶¶ 39, 47.) | **Disputed/Incomplete**<br><br>SCO disputes IBM's assertion to the extent it implies that the "main purpose" of header files is "to specify the interface to the operating system" in the sense the term "main purpose" is used to define a level of abstraction specified in *Gates Rubber Co. v. Bando Chemical Indus., Inc.*, 9 F.3d 823, 835 (10th Cir. 1993).<br><br>The literal interface code in header files is not unprotectable simply because it could conceivably be incorporated into an idea or "main purpose" at some higher level of abstraction. (See *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997)).<br><br>REDACTED<br><br>Furthermore, header files embody and convey the overall structure of a program or operating system. (See Disputed Facts # 230-31.). |
| 239. | Slightly more technically, those dials and levers are interface code of three sorts: definition statements that give values to names (e.g., # define EPERM 1, which indicates simply that the name EPERM will have the value 1), structure declarations that indicate how to group together several pieces of data into a bundle, and function prototype statements that indicate how to ask the operating system to perform a service, indicating the information to be supplied to the operating system (the inputs) and the information it will return (the output). (Ex. 215 ¶¶ 58-64.) | **Disputed/Incomplete**<br><br>SCO disputes IBM's suggestion that # define names "simply" define names for values.<br><br>REDACTED<br><br>IBM's assertion does not comprehensively describe the infringed UNIX material. (See Disputed Facts # 27, 118, 223, 237.). |
| 240. | None of these statements actually tell the computer to do anything; they are not executable code. | **Disputed/Incomplete** |

**Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment**
**On Its Claim For Declaratory Judgment Of Non-Infringement**

| | | |
|---|---|---|
| | (Ex. 215 ¶¶ 39, 47.) They are simply specifying information that enables application programs to communicate with the operating system. (*Id.* ¶¶39, 42.) They specify only the communication channel, not what is to happen when communication is received. (*Id.* ¶¶ 39, 47.) | SCO disputes IBM's assertion to the extent it implies that the material at issue does not convey information to programmers. The statements mentioned by IBM, as well as infringed SV4 material that IBM ignores, convey information to programmers. Moreover, this is expression created by programmers. **REDACTED** Ex. 22 at 55:11-56:18, 57:7-13, 60-62, 66:9-15, 78:19-79:15.). |
| 241 | Nearly all of the System V Code consists of lines of code from header files (Items 183-84, 150-64, 205-31, aid 272 (partially)). (*See* Ex. 215 (Ex. H).) All of this material, as well as the non-header file material, is dictated by externalities such as compatibility requirements, standards, programming practices and industry demands. (Ex. 213 44, 103; Ex. 215 15, *See* Ex. 214 196 (*quoting* Ex. 175 at 82).) | **Disputed**. Undisputed that nearly all the infringed literal source code is from header files. SCO disputes IBM's statement that such material, or any other infringed UNIX material, was dictated by externalities at the time it was created. (*See* Disputed Fact # 236.). |
| 242. | The System V Code was dictated by compatibility requirements. (Ex. 213 ¶¶ 44-45, 103.) | **Disputed**. The infringed SV4 material was not dictated by externalities, including "compatibility requirements," at the time it was created. (*See* Disputed Fact # 236.). |
| 243. | The header files for a new version of UNIX cannot be varied in ways that are incompatible with what the installed base of UNIX applications expects from the common interface. (Ex. 215 ¶¶ 51-52.) The header files must supply all the details of the interface expected by application programs, or the application programs simply will not work and there will be almost no use for the new system. Ex. 213 ¶¶ 26-3 0, 45, 48; Ex. 215 ¶ 14.) | **Disputed/Immaterial**. IBM's assertions are irrelevant to whether any externalities constrained the infringed SV4 material when such material was created. SCO disputes IBM's legal implication that an author's own expression can create an "external constraint" on the same author's later derivative works or sequels, such that any material carried forward into such derivative works can be copied with impunity. *See* |
| 244. | At the time SV4 was created, there were approximately 1.2 million UNIX systems in use, with thousands of application programs running on them. (Ex. 483 at 3.) | **Undisputed/Immaterial**. IBM's assertions are irrelevant to whether any externalities constrained the infringed SV4 material when such material was created. |
| 245. | The header files for SV4 had to be consistent with | **Disputed** |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | this installed base of application programs in order to allow those application programs to continue to be run. The structure and content of the header files was thus dictated by the nature of the programs with which they were designed to interact. (Ex. 215 ¶ 53.) The previous versions of UNIX had header files containing the same three sorts of interface code described below (definition statements, structure declarations and function prototype statements). (Id., 132.) | SCO disputes IBM's assertion that "the structure and content of [the infringed UNIX material] was thus dictated by the nature of the programs with which they were designed to interact." The infringed UNIX material was not dictated by external constraints or compatibility constraints when it was created. (See # 236.). <br><br>IBM's cited sources do not mention any application programs that supposedly constrained the expression in the infringed UNIX material. However, IBM's acknowledgement that such programs were written to run on UNIX indicates that such programs were constrained by the pre-existing UNIX interface code, not vice versa. |
| 246. | Software compatibility also presents the very reason for the existence of the allegedly infringed ELF Material. The purpose of the ELF Specification, including the ELF Material, has always been to create an industry standard to promote software portability and interoperability and increase the efficiency of software production. Cross-platform compatibility cannot be achieved without using precisely the interface structures and values set out in these specifications. (Ex. 214 ¶ 58.) | **Disputed/Unsupported** <br><br>SCO disputes IBM's assertion to the extent it implies that the ELF material was dictated by external constraints. The expression of the ELF material was not dictated by the need to achieve compatibility with any existing material at the time it was created and IBM's cited source does not support such an assertion. (See Disputed Fact # 236; Ex. 22 at 139:18-25.). <br><br>IBM's cited source does not support the assertion that the ELF material was dictated by external constraints. (Ex. 22 at 139:18-25.) |
| 247. | The large installed base of previous versions of UNIX was a second source of compatibility requirements. (Ex. 215 ¶¶ 24, 29, 53.) To keep existing applications running on a new UNIX version like SVr4, the System V Code had to be the same as material used in previous versions of UNIX. "Once a standard [like UNIX] becomes widely accepted, the economic impact of incompatible change becomes so large that change is almost unthinkable." (Ex. 214 ¶ 31 (quoting Ex. 484 at 6).) | **Disputed/Unsupported** <br><br>SCO disputes IBM's assertion that prior UNIX versions were, or could possibly be, a constraint on the infringed UNIX material. <br><br>REDACTED |
| 248. | The System V Code was dictated by the need for | **Disputed** |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| compatibility with older versions of UNIX that were already installed in customer offices. (Ex. 215 ¶¶ 20-24.) ¶ 32; See Ex. | (Ex. 214) | SCO disputes IBM's assertion that the infringed UNIX material was dictated by the need for compatibility with older versions of UNIX.<br><br>REDACTED<br><br>(See Disputed Fact # 236) |
| 249. | Linux was intended from the beginning to run UNIX-compatible software, and to adhere to the same industry standards and practices that UNIX does. (Ex. 265 at 4.) | **Undisputed** |
| 250. | Hence the implementers of any UNIX-compatible operating system are not free to make choices about a long list of details concerning the interface; those decisions were made years ago (and sometimes decades) ago, and the legacy interface and behavior must be maintained. (Ex. 215 ¶ 21.) | **Disputed**<br><br>SCO disputes that programmers are not free to make choices about whether to copy UNIX interface material.<br><br>REDACTED<br><br>SCO also disputes IBM's implication that external constraints on those who copy UNIX material is relevant to whether such material is protectable. (*Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997)). |
| 251. | Another external force dictating the content of the System V Code was industry standards. <u>See</u> Ex. 213 ¶ 103.) | **Disputed**<br><br>The infringed SVr4 material was not dictated by industry standards.<br><br>REDACTED<br><br>(See Disputed Fact # 236; See *also* Ex. 22 at 182:20-25, 184:18-186:13, 189:2-190:11, 191:12-25, 198:13-20;<br><br>REDACTED |
| 252. | At the time SVr4 was created, there was already in place a substantial body of formal industry standards and numerous textbooks specifying a wide variety of details for any UNIX implementation. (Ex. 215 ¶¶ 19-24, 55-57, 86-87.) The standards included, among others, (a) the /usr/group standards effort that began in 1984, | **Disputed**<br><br>SCO disputes IBM's assertion that the infringed UNIX material was dictated by any industry standards at the time of its creation. The infringed SVr4 material was not dictated by industry standards.<br>REDACTED<br><br>See Disputed Fact # 236, 251;   REDACTED |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | (b) the System V Interface Definition (SVID), (c) the X/Open Portability Guide, and (d) the POSIX Standard (1988).  (Ex. 213 ¶ 50; Ex. 215 ¶ 55.) Rochkind's Advanced UNIX Programming (1985) and Tanenbaum's Operating Systems Design and Implementation (1987) are two examples of textbooks with substantial detail, including many of the details of the UNIX interface found in header files. (Ex. 215 ¶ 55.) | The SVID was a document authored and distributed by SCO's predecessor, AT&T and was derived from UNIX System V—hence, System V Interface Definition.  **REDACTED**  Furthermore, IBM fails to identify which standards purportedly "dictate" what aspects of the infringed UNIX material.  Short of providing this information, there is a question of material fact as to whether the standards alleged by IBM actually contain the information in question. |
| 253. | Industry standards also came from the U.S. Government, which required in Federal Information Processing Standard 151-1 (April 1989) that UNIX-like systems developed or acquired for government use be POSIX compatible. (See Ex. 213 ¶ 52.) | **Disputed/Immaterial**  SCO does not dispute the issuance of the cited standard.  However, SCO disputes that the cited standard constrained any of the expression in the infringed UNIX material.  **REDACTED**  Disputed Fact # 236.).  Furthermore, material does not lose copyright protection simply because governmental regulations require its use.  (See, e.g., *CCC Information Servs., Inc. v. MacLean Hunter Market Reports, Inc.*, 44 F.3d 61 (2d. Cir. 1994)). |
| 254. | AT&T (which owned UNIX at the time of SVr4;s creation) was an active participant in the standards setting and standard promulgation process. (Ex. 215 ¶¶ 24-26.)  For example, the System V Interface Definition (1985) indicates "AT&T considers its participation in the /usr/group effort to be an important activity and many of the ideas exchanged in that forum are reflected in this document". (*Id.* ¶ 55.) | **Undisputed**  AT&T's participation in the creation of such "standards" shows that they were not external constraints on AT&T's creativity, but based on AT&T's pre-existing expression. (See Disputed Facts # 251–52.). |
| 255. | De facto standards have arisen from published documents dating to the earliest days of UNIX. | **Disputed/Unsupported/Incomplete** |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| (Ex. 215 ¶ 57.) For example, errno.h and signal.h (two of the items in question) date from the early to mid 1970s and had been published in many different sources (*e.g.*, UNIX Programmer Manuals, published first by Bell Labs and subsequently by various commercial publishers) in addition to the universally available header files. (*Id.* ¶ 57.) | SCO disputes IBM's assertion to the extent it implies that such "de facto standards" constrained the expression in the infringed UNIX material. Rather, the material in a "de facto standard" only becomes such a standard *after* its creation. The infringed SVr4 material was not dictated by external constraints at the time it was created. (*See* Disputed Fact # 236.).

IBM fails to identify what code contained in errno.h and signal.h have been published in what sources, which raises a genuine issue of material fact.

SCO disputes, and IBM has not supported, IBM's legal implication that mere publication, subject to copyright restrictions in the publishing text, constitutes a license to use the protected material.

Furthermore, IBM's claim of a "de facto" standard highlights the fact that this information has not been standardized in any formal sense. Even if IBM was correct that a "de facto" standard negated the protectability of particular expression under copyright law, there is a question of fact as to what expression is subject to this "de facto" standardization. | |
| 256. | The System V Code was further dictated by programming practice. (Ex. 213 1103.) | **Disputed**

The infringed SVr4 material was not dictated by external constraints at the time it was created. (*See* Disputed Fact # 236.). UNIX programming practice was based on AT&T-created code. AT&T was not constrained by such practices. |
| 257. | Standard programming practice indicates, for example, that names used in code ought to be brief and mnemonic (to make the code easy to read); that values used in a sequence of defined statements should be sequential small numbers, or sequential powers of 2 (1, 2, 4, 8, etc.); that function signatures specify the function name, number and types of inputs and the type of the output; and that data structure should group meaningful collections of data. All of these programming practices are | **Undisputed/Immaterial**

IBM's vague assertions do not indicate that any particular expressions of the infringed UNIX material were dictated by any programming practice or other external constraint. They were not. (*See* Disputed Fact # 236.). |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | evident in the System V Code. (See Ex. 213 ¶¶ 44-49.) | |
| 258. | The memory allocation code claimed by SCO is dictated by the programming practice of implementing a well-known "first-fit" memory allocation algorithm. (Ex. 175 at 82; Ex. 214 ¶ 94.) | **Disputed**<br><br>SCO's claimed memory allocation code was not dictated by any particular programming practice.<br><br>REDACTED<br><br>(See Disputed Fact # 236; |
| 259. | The System V Code was dictated by industry demand. (Ex. 215 ¶¶ 50-53, 86-87, 99-122.) | **Disputed**<br><br>The expression of the infringed UNIX material was not dictated by any external constraint, including "industry demand." (See Disputed Fact # 236.)<br><br>SCO also disputes IBM's assertion to the extent IBM implies that the demand for a product like UNIX somehow excuses copying the infringed UNIX material. (See, e.g., Positive Software Solutions, Inc. v. New Century Mortgage Corp., 259 F.Supp.2d 531, 536 n. 9 (N.D. Tex. 2003)). |
| 260. | The UNIX customer base consists of both those who simply use UNIX and the application programs that run on it, and those whose business is to develop new application programs. (Ex. 106 at 2-3.) | Undisputed |
| 261. | Those who use applications require that their existing applications continue to work. The same group also demands consistency across header files in different versions of UNIX in order to avoid significant complications. (Ex. 215 ¶¶ 13-14, 52-56 & n.5.) | **Disputed/Unsupported**<br><br>SCO disputes that any "industry demand" arising from purported consumer desire to run applications written for UNIX on other operating system did, or could have, constrained the expression in the infringed UNIX material at the time it was created. (See Disputed Fact # 236.)<br><br>IBM's cited source does not support such an assertion.<br><br>Furthermore, such demand is legally irrelevant. (See Disputed Fact # 259.) |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| 262. | Those developing new applications produced their own industry demand. (Ex. 215 ¶¶ 13-14, 21, 42, 50, 52.) In order to create application programs that run on UNIX, developers must have access to the header file material they need in a familiar form that is easy to use. (*Id.* ¶ 174.) | **Disputed**<br><br>IBM's purported "industry demand" could and did not affect the content of the infringed header file material *when it was created*. (See Disputed Fact # 236.). Nor does such demand require that competing *operating system* programmers be able to use any header file material.<br><br>REDACTED<br><br>Furthermore, such demand is legally irrelevant. (See Disputed Fact # 259.). |
|---|---|---|
| 263. | This demand from industry has a direct consequence for the header files of any new version of UNIX (like SVr4 in 1989): those header files must be consistent with the header files that have been used in previous versions of UNIX. (Ex. 215 ¶¶ 52-56.) In other words, header files with the form and content found in SVr4 must be made available in order to enable third parties to write applications that can run on it. (*Id.* ¶ 74.) | **Disputed**<br><br>IBM's purported "industry demand" does not affect the content of the header file material *when it is created*. (See Disputed Fact # 236, 261-62.).<br><br>Furthermore, such demand is legally irrelevant. (See Disputed Fact # 259.). |
| 264. | The developers of SVr4 did not decide on their own either the form or content of the header files; they had to supply what was needed by developers, and they had to supply it in a form that developers would find familiar and convenient to use. (Ex. 215 ¶¶ 20-23, 51-53.) That form and content had long been established through decades of prior UNIX development and it was manifest in the header files of earlier UNIX versions. (*Id.* ¶ 21.) | **Disputed**<br><br>SCO disputes IBM's assertion to the extent it implies that the expression of the infringed UNIX material was dictated by external constraints at the time it was created. (See Disputed Fact # 236). The infringed UNIX material was created by AT&T developers without external constraint. REDACTED (See Disputed Fact # 236) |
| 265. | REDACTED | **Undisputed/Immaterial**<br><br>REDACTED |

FILED UNDER SEAL
124

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | Undisputed/Immaterial |
|---|---|---|
| 266. | REDACTED | |
| 267. | REDACTED | **Disputed**<br><br>REDACTED |
| 268. | The nature of the System V Code is such that it can only be expressed in at most a few ways.  (Ex. 213 ¶ 60.) | **Disputed**<br><br>SCO disputes IBM's assertion.  There are many ways to express the ideas embodied in the infringed UNIX material.  (See Disputed Fact # 236;  **REDACTED** |
| 269. | The System V Code is inextricably linked to the ideas that underlie it. (Ex. 215 ¶¶ 21-25, 33.) | **Disputed**<br><br>There are many ways to express the ideas embodied in the infringed UNIX material. (See Disputed Fact # 236;  **REDACTED** |
| 270. | The ideas expressed by header files are, given the limits of the C programming language and the need | **Disputed** |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 271. | Leaving aside specific choices of names and numbers, there is really only one way of defining names to stand for numbers. Practically speaking, names have to be short, meaningful and easy to remember, while the values usually have to be small consecutive integers or powers of two i.e. 1, 2, 4, 8...) for efficiency of processing and memory use. (Ex. 214 ¶ 90.) | for compatibility, expressible in at most only a few ways. (Ex. 213 ¶ 60.) It is as if SCO did not claim the actual idea of the mathematical function "division", but did claim the name of the function as well as the parameters (A + B = C). Just as there are only a few practical ways to express and name "division", there are at most a few ways to express and name the claimed materials in the header files at issue. (Ex. 213 ¶ 60; Ex. 214 190.) All of the header file names at issue are merged with the files' functions, such as "errno.h", which assigns error numbers; "strings.h", which manipulates "strings" of characters (the universal computer term for sequences of text); and "ipc.h", which facilitates inter-process communications. (Ex. 226 ¶ 8.) |
| | | There are many ways to express the ideas embodied in the infringed UNIX material. (See Disputed Fact # 236. |
| | | REDACTED |
| | | Whereas the term "division" has long been accepted in the English language as the only term to define the mathematical process of dividing number by other numbers, the # define names in the infringed SV4 material were original creations by AT&T programmers, who just as easily could have used numerous other very different names. |
| | | Also, there are many different parameters that could be used to perform the same functions performed by the system call signatures in the infringed SV4 material. (See Disputed Fact # 236. |
| | | REDACTED |
| | | Even IBM's expert concedes that there are many choices in naming a system call. See Ex. 22 at 76:18-20. |
| | | **IBM Ex. 226, David Mazieres declaration:** This source is contradictory and otherwise improper. (See Disputed Fact # 45.). |
| | | **Undisputed** |
| | | IBM's caveat ("[l]eaving aside specific choices of names and numbers") removes protectable expression from consideration. |
| | | REDACTED |
| | | There are numerous ways to express the ideas embodied in the infringed SV4 material. (See Disputed Fact # 236.). |
| 272. | The memory allocation code claimed by SCO is an implementation of a well-known algorithm for allocating and freeing blocks of memory. (Ex. 214 | **Disputed** |
| | | The particular implementation of a first-fit algorithm employed in the infringed SV4 |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | ¶ 95; Ex. 215 ¶ 116.)<br><br>REDACTED | material is protectable expression. (See Disputed Facts # 236, 258.). |
| 273. | SCO claims copyright protection for a function that simply copies characters from a source to a destination. | **Disputed/Unsupported**<br><br>IBM's puzzling assertion is completely unsupported, and too vague for SCO to submit a meaningful response.<br><br>However, to the extent IBM uses the term "function" to mean a "purpose" or "task," SCO does not claim copyright protection for any such abstract element. (See Disputed Fact # 236; **REDACTED** |
| 274. | Item 185 in SCO's Final Disclosures concerns code that had been distributed in versions of UNIX (e.g., 32V) that are in the public domain. (Ex. 214 ¶¶ 94-96; Ex. 215 ¶¶ 116-17.) | **Disputed**<br><br>SCO disputes IBM's legal conclusion that the material in Item 185 is in the public domain. IBM's expert has withdrawn his prior legal conclusion that such material was in the public domain. (See Disputed Fact # 232. **REDACTED** |
| 275. | The System V Code lacks even de minimis originality. The System V Code is without creativity. (See Ex. 214 ¶ 55, 88; Ex. 213 ¶¶ 39-43, 68-69.) | **Disputed/Unsupported**<br><br>IBM's assertion is false. The infringed UNIX material shows at least a minimal degree of creativity, and is the product of thought, judgment, and intellectual production. (See Disputed Fact # 236, 220:19-24.).<br><br>Furthermore, IBM's experts base their conclusions on "originality" on an arbitrary and undisclosed standard that does not evaluate whether work is the product of thought, judgment, intellectual production, or a minimum degree of creativity. (See Ex. 22 at 203:23-208:10, 216:4-217:4). |
| 276. | With one exception, the System V Code is | **Undisputed** |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | composed of header files (See Ex. 215 (Ex. H.)), which consist of three mechanisms: # define statements, function prototypes and structure declarations. (Ex. 213 ¶¶ 27-28.) | |
| 277. | The function prototypes do not provide any information about how the function is implemented, and implementations are likely to differ on different systems. (Ex. 213 ¶¶ 33, 43.) SCO claims function prototypes whose names and parameters are determined by the procedures or processes that they invoke. (See id. ¶¶ 40, 43.) | **Disputed**<br><br>The expression in function prototypes that constitute part of the infringed UNIX material is not dictated by any external constraint and is not necessary to perform a particular procedure, process, or task. (See Disputed Fact # 236; REDACTED |
| 278. | The header files at issue contain # define statements that routinely pair a set of mnemonic names with sequentially incremental values. (See Ex. 213 ¶¶ 39-40.) The # de fine statements specify significant values, conventions, shorthands, abbreviations and the like, which will be utilized in other processes. (See id. ¶¶ 28, 40.) The names cited in the SUS Material are shorthands or abbreviations for values or conditions that an operating system or a program might have to process. (Id. ¶ 39.) The name has only mnemonic significance for programmers. (Id.) Each occurrence of the name anywhere in a source program is replaced by the numeric value during compilation. Virtually all of the numeric values in the header files cited by SCO are sequences of consecutive integers, often beginning at 0 or 1, or they are sequential bit patterns (i.e., consecutive powers of two) that permit combinations of information to be compactly encoded. (Id. ¶ 40.) | **Disputed**<br><br>SCO disputes IBM's assertion to the extent it implies that the creation of names, assignment of names to values, and ordering of names and values in # define statements do not represent creativity and originality. (See Disputed Fact # 236.)<br><br>SCO disputes IBM's assertion to the extent it implies that the names, assignment of names to values, and ordering of names and values in # define statements do not express information to programmers. See Disputed Fact # 239. |
| 279. | Few of the structure declaration files contain more than a dozen members and the majority of them have fewer than six. (Ex. 213 ¶ 42.) The names of the structures and their members are shorthand and | **Disputed**<br><br>SCO disputes IBM's statement that "[p]articular expressions are common in the kinds of structures at issue" to the extent it implies that the expression in the infringed structure |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | the comments elaborate them. Particular expressions are common in the kinds of structures at issue. (*Id.*) It is very common for such structures to include elements like message types, message lengths and message contents. (*Id.*) | declarations was not original or was stock, standard, or common at the time AT&T created such expression. None of the "particular expressions" in the infringed UNIX material were stock, standard, or common at the time AT&T created such expressions. (See Disputed Fact # 236.) |
| 280. | The header files that are not in the Linux kernel are no more expressive than those in the kernel. (Ex. 213 ¶¶ 39-43, 76-77; Ex. 214 ¶ 59.) The ELF files (including those not in the Linux kernel) represent one of only a handful of possible implementations of a few rudimentary functions (Item 272). (Ex. 213 ¶ 77.)

REDACTED | **Disputed**

SCO disputes IBM's assertion to the extent it implies the there are only a handful of ways to express the ideas embodied in the ELF material, or any other infringed UNIX material. There are many ways to express the ideas embodied in the infringed UNIX material. (See Disputed Fact # 236.). |
| 281. | REDACTED | **Disputed**

REDACTED |
| 282. | The Linux Code is found in 12 files. (See Ex. 214 (Ex. 4).) | **Undisputed**

This is undisputed to the extent the "Linux Code" refers only to literal source code residing within the Linux kernel. |
| 283. | Those files were created independently of the System V Code. (Ex. 215 ¶¶ 69-79, 90-92, 106, 122 (Ex. A).) | **Disputed**

SCO disputes IBM's assertion that the infringing Linux material, including the "Linux Code," was created independently. **REDACTED**

Disputed Facts # 30-33, 98). |

FILED UNDER SEAL

129

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | REDACTED | |
| | | . Disputed Facts # 30–33.). |
| 284. | SCO has not offered any evidence that the individuals who developed the Linux Code copied code from UNIX System V in writing the disputed | IBM's own experts did not consider the relevant indicia of copying in forming their opinions. In fact, when asked about the likelihood that the nearly identical code was independently created rather than copied, Brian Kernighan replied that he didn't know, that he had "no way to assess that." (See Ex. 22 at 3–7, 268:12-269:16.).

REDACTED

**Disputed/Unsupported**

SCO disputes IBM's assertion that SCO has not shown evidence that the infringing |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

|  |  |  |
|---|---|---|
|  | files. Nor has it offered any evidence that they had access to System V code when the files in question were authored. | Linux material was copied from the infringed UNIX material. SCO has offered ample evidence showing that the infringing Linux material was copied from the infringed SVr4 material, and IBM has not even attempted to support its assertion to the contrary. (See Disputed Facts # 30-33, 283.). |
|  |  | SCO disputes IBM's assertion that Linux programmers did not have access to the infringed UNIX material. |
|  |  | **REDACTED** |
|  |  | Disputed Fact # 283.). |
| 285. | The evidence indicates that Linux Code was written or created independently of SCO and its alleged copyrights, and therefore independently of the System V Works. (Ex. 215 ¶¶ 70-73, 90-93). | **Disputed/Unsupported** |
|  |  | SCO disputes IBM's assertion. The evidence shows that Linux programmers copied the infringing Linux material from the infringed UNIX material. (See Disputed Facts # 283-84.). |
| 286. | IBM propounded an interrogatory asking SCO to disclose the identity of the authors of the allegedly infringed files and the facts relating to their creation. SCO did not offer any meaningful response; it stated only that they were created by SCO or its predecessors in interest. (See Ex. 43 at 16-18.). | **Disputed** |
|  |  | SCO disputes that its response to the cited interrogatory was not "meaningful." (See Disputed Fact # 167.). |
| 287. | Some of the System V Code plainly was not created by SCO or its predecessors or derived from their UNIX code. (Ex. 215 ¶¶ 79, 92.) | **Disputed/Unsupported** |
|  |  | SCO disputes IBM's assertion that the infringed UNIX material was not created by SCO or its predecessors. The infringed UNIX material is original to AT&T, a predecessor of SCO. (See Disputed Fact # 236.). |
|  |  | IBM's cited source improperly focuses on differences between the infringing Linux material and the infringed UNIX material and does not support the conclusion that the similarities between the two are not the result of copying. (Jacobsen v. Deseret Book Co., 287 F.3d 936, 945 (10th Cir. 2002)). |

FILED UNDER SEAL

131

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | Furthermore, even if IBM could show that individual elements were not created by SCO or its predecessors, the original selection, coordination, and arrangement of these pieces into SVr4 was original expression of AT&T. |
| 288. | In 1994, USL, SCO's alleged predecessor in interest, and Berkeley Software Design Inc. ("BSD"), settled a lawsuit in which USL had alleged that BSD's version of UNIX violated USL's copyrights. (Ex. 485 at 2.) Under the express terms of the Settlement Agreement, certain UNIX files alleged by SCO to be infringed, specifically header files strings.h, syslog.h and utmpx.h, were declared to be copyrighted by BSD, not USL. (*Id.* at 8-9 (Ex. C at 5, 14, 16).) Among the files declared to be owned by BSD are files that SCO claims it owns and that it claims IBM somehow infringes (Items 217-18, 223, 229-30). (Ex. 43 at 17-18; Ex. 215 (Ex. H).) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that the Settlement Agreement between USL and BSD (the "BSD Agreement") declared that any material was "copyrighted by BSD, not USL." The BSD Agreement provides that USL did not "waiv[e] any of its proprietary rights." (See IBM Ex. 485 at 8.).<br><br>SCO also disputes IBM's implication that the BSD Agreement somehow allows the use of infringed UNIX material in Linux. USL agreed that Berkeley and others could copy certain files, on the condition that a specifically prescribed USL copyright notice accompanied such files. (IBM Ex. 485 at 8-9, Ex. F.) The BSD Agreement expressly included a press release containing the following: "Although it has denied the University's claims, USL has also agreed to affix the University's copyright notice to certain files distributed with future releases of the UNIX system and to give credit to the University for material derived from BSD releases which have been included in the UNIX System." Linux does not include the required copyright notices. **REDACTED** (IBM Ex. 485 at 8-9, Ex. D at 4, Ex. F.). |
| 289. | Additionally, lines of code claimed by SCO in 26 of the 29 SUS Material items and 13 of the 15 Streams Material items appeared in BSD's product "4.4BSD-Lite" (Items 150-54, 156-57, 159-64, 183-84, 205-12, 214-24, 226, 228-31). (Ex. 215 (Ex. H)) 4.4BSD-Lite was published shortly after the settlement of its litigation with USL resulting in "a new, unencumbered version" of the previously-contested BSD UNIX product. (Ex. 485 at 11 (Ex. D at 1)) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that 4.4 BSD-Lite was "unencumbered" in the sense that material contained therein could be used in contravention of the terms of the BSD Agreement. The 4.4 BSD-Lite system was not "unencumbered" in the sense that material contained therein could be used in contravention of the terms of the BSD Agreement. (See Disputed Fact # 288.) Use of material in Linux does not comply with the requirements of the BSD Agreement. (See *id*.)<br><br>Furthermore, IBM provides no documentation to support its assertion that "the 29 Material items and 13 of the 16 Streams Material items appeared in BSD's product '4.4 BSD-Lite,'" which, at a minimum, creates a material issue of fact as to whether this is true. |

FILED UNDER SEAL

132

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | | To the extent that USL settled claims regarding the 4.4BSD product, that settlement related specifically to BSD and did not grant any rights to use material in Linux. |
| 290. | Products derived from BSD's 4.4BSD-Lite product have continued to evolve (See, e.g. Ex. 393), and are outside the control of SCO and its alleged predecessors. | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that any material included in 4.4 BSD-Lite is "outside the control of SCO." The BSD Agreement allows use of UNIX material only under certain conditions. (See Disputed Fact # 288.) The use of UNIX material within Linux does not comply with such conditions. (Id.)<br><br>IBM's cited source does not support IBM's legal conclusion that all material contained in 4.4BSD-Lite is "outside the control of SCO and its alleged predecessors." |
| 291. | A recent BSD product, FreeBSD 6.0 (released in 2005) (Ex. 393), included lines of code from all but one item concerning the SUS Material, and all but one of the Streams Material items (Items 150-54, 156-64, 183-84, 205-24, 226-31). (Ex. 215 (Ex. H)). | **Disputed**<br><br>SCO disputes IBM's assertion to the extent it implies that the presence of UNIX material in FreeBSD 6.0 somehow grants IBM a license to use UNIX material in Linux. The fact that a contemporary release of BSD contains code that infringes SCO's copyrights is not relevant. IBM produces no evidence to suggest that the lines of code included in FreeBSD 6.0 are subject to the USL-BSD settlement agreement or otherwise relevant. |
| 292. | SCO even alleges infringement of code that appeared in BSD products that predate the creation of System V Release 4.2 and 4.2-ES-MP, the copyrights alleged to be infringed by the SUS Material. (Ex. 377.) Code from more than half (16 out of 29) of the items concerning the SUS Material appeared in Net/2, a product created by an AT&T licensee, and all but two of the Streams Material items appeared in BSD net/2 (Items 150-53, 156-64, 208-12, 214, 218, 220-21, 223, 226, 228, 230-31). (Ex. 215 (Ex. H).) **None of these files was removed from BSD products following the settlement of BSD's litigation with USL.** | **Disputed/Immaterial**<br><br>SCO disputes IBM's assertion to the extent it implies that the presence of UNIX material in Net/2 somehow grants IBM a license to use UNIX material in Linux. Whether material appeared in Net/2, a product created by an AT&T licensee, is irrelevant to whether use of such material in Linux infringed SCO's copyrights. Such material was created by AT&T, not the Net/2 developers. (See Ex. 22 at 198:13-20; **REDACTED**<br><br>As stated above, use of material in Linux does not comply with the conditions of the BSD Agreement. (See Disputed Fact # 288.). |

FILED UNDER SEAL
133

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | (Ex. 215 (Ex. H).) | REDACTED |
| 293. | SCO's allegations of misuse with regard to specification documents (Items 273-78) lay claim to material that is not owned by SCO. (See Ex. 213 ¶ 64.) | **Disputed**<br><br>SCO does not claim copyright in the material in Items 273-78. |
| 294. | The allegedly infringed specification document material includes 239 segments of material relating to the X Windows System, which SCO neither owns nor controls. (Ex. 213 ¶ 64; Ex. 214 (Ex. 5).) | **Disputed**<br><br>SCO does not claim copyright in the material in Items 273-78.   (See Disputed Fact # 293.). |
| 295. | The X Windows System is currently owned by and has its origins in work done at M.I.T. in the early 1980s.  The 1985 license for X Windows (Version 10) states:<br><br>Permission to use, copy, modify and distribute this documentation for any purpose and without fee is hereby granted, provided that the above copyright notice appears in all copies and that both that copyright notice and this permission notice appear in supporting documentation, and that the name of M.I.T. not be used in advertising or publicity pertaining to distribution of the software without specific, written prior permission. M.I.T. makes no representations about the suitability of the software described herein for any purpose. It is provided "as is" without express or implied warranty. This software is not subject to any license of the American Telephone and Telegraph Company or of the Regents of the University of California.  (Ex. 213 ¶ 64 & n.9.) | **Undisputed**<br><br>SCO does not claim copyright in the material in Items 273-78.   (See Disputed Fact # 293.). |
| 296. | In the APA between Santa Cruz and Novell, Novell sold some but not all of its UNIX assets to Santa Cruz.  (Ex. 239 ¶ 10.)  For example, Novell sold and Santa Cruz acquired certain source code and | **Disputed**<br><br>SCO disputes IBM's assertion that Novell did not sell all its UNIX assets to Santa Cruz under the APA.  (See Disputed Fact # 35.). |

**Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment On Its Claim For Declaratory Judgment Of Non-Infringement**

| | | |
|---|---|---|
| | binaries to Novell's UNIX and UnixWare products and all technical, design, development, installation, operation, and maintenance information concerning UNIX and UnixWare. (Ex. 123 (Schedule 1.1(a) at 1)). | |
| 297. | However, under Schedule 1.1(b) of the APA, Novell retained "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare", "[a]ll [p]atents", and "[a]ll right, title and interest to the SVRx Royalties, less the 5% fee for administering the collection thereof". (Ex. 239 ¶ 10; Ex. 123 (Schedule 1.1(b) at 2)). | **Disputed**<br><br>Novell did not retain any copyrights to UNIX under the APA or Amendment No. 2 thereto. (See Disputed Facts # 35-38.).<br><br>As discussed above and in Disputed Fact # 298, Schedule 1.1(b) of the APA was amended by Amendment No. 2 to assure (to the extent that such transfer was not already clear) that copyrights related to UNIX and UnixWare were included in the transfer from Novell to Santa Cruz. (See IBM Ex. 444.). |
| 298. | On October 16, 1996, Novell and Santa Cruz executed Amendment No. 2 to the APA. (Ex. 239 ¶ 6.) Amendment No. 2 modifies Section V.A of Schedule 1.1(b) to provide that Excluded Assets include: "All copyrights and trademarks, except for the copyrights and trademarks owned by Novell as of the date of the Agreement required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." (Ex. 444.) Amendment No. 2 did not transfer the copyrights. (Ex. 199 at 5-8; Ex. 163 ¶ 17.) | **Disputed**<br><br>SCO disputes IBM's legal conclusion that that "Amendment No. 2 did not transfer the copyrights." (Disputed Facts # 35-38. ).<br><br>The Amadia declaration referenced by IBM is facially flawed as it claims that "Amendment No. 2 was not intended to alter the APA's copyright exclusion" when Amendment No. 2 clearly does alter the copyright exclusion regarding copyrights "required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies." (IBM Ex. 163 ¶ 17.). |
| 299. | Neither Amendment No. 2 nor the APA identifies "the copyrights and trademarks owned by Novell as of the date of the Agreement required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies". (See Ex. 123; Ex. 444; Ex. 163 ¶ 18.) | **Disputed**<br><br>The transferred UNIX copyrights were identified in the APA and/or Amendment No. 2 thereto. (See Disputed Fact # 35, 37.). |
| 300. | Neither Amendment No. 2 nor the modified APA contains any language concerning a grant, transfer, or assignment of copyrights. (See Ex. 123; | **Disputed**<br><br>IBM's statement is simply false. (See Disputed Fact # 301.). |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| | Ex. 444; Ex. 163 ¶ 18.) | IBM's purported fact is a legal conclusion, not appropriately included as a material fact, that is addressed in Disputed Facts # 34-38, 298, 301. |
| 301. | Section 1.1(a) of the APA provides that certain assets "will" be transferred. (Ex. 123.) Neither Amendment No. 2 nor the modified APA provides a date for any purported transfer of copyrights. (See Ex. 123; Ex. 444.) | **Disputed** |
| | | SCO disputes IBM's implication that Novell's UNIX assets were never transferred to Santa Cruz, as explained below. |
| | | In full, § 1.1(a) of the APA provides that: |
| | | REDACTED |
| | | (IBM Ex. 123 § 1.1(a)). |
| | | Section 1.7 of the APA includes subsection (c), which provides that: |
| | | REDACTED |
| | | (IBM Ex. at 123 § 1.7). |
| | | To the extent that the original transfer of copyrights to the UNIX software was unclear, Amendment No. 2 contemplates the further action required by § 1.7 of the APA, and in fact, takes such action. Accordingly, Novell's UNIX copyrights were transferred to SCO—if not as part of the original APA—as of the closing date set forth in the APA, ab initio, or, in the alternative, as of the execution of Amendment No. 2. (See IBM Ex. 444; Disputed Facts # 34-38). |

FILED UNDER SEAL

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | | |
|---|---|---|
| 302. | In May 2002, Caldera International joined with other Linux vendors, Conectiva, Inc., SuSE Linux AG and Turbolinux, to form UnitedLinux. (Ex. 221 ¶ 94; Ex. 106 at 4; Ex. 348.) | Undisputed |
| 303. | REDACTED | Disputed REDACTED |
| 304. | REDACTED | Undisputed REDACTED |
| 305. | REDACTED | Disputed/Unsupported REDACTED |

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | REDACTED | |
|---|---|---|
| 306. | Any "Pre-Existing Technology and Enhancements" retained by Caldera pursuant to the above assignment do not include any of SCO's intellectual property rights in the System V Code or the Linux Code. (Ex. 221 ¶¶ 94-102; Ex. 474 (Ex. C) at SCO1170566-74.) | **Disputed** SCO does not dispute that the "Pre-Existing Technology and Enhancements" referred to in Exhibit C to the JDC does not include any of the disputed material at issue. SCO disputes IBM's assertion that any technology not referred to in Exhibit C to the JDC was assigned to UnitedLinux. (See Disputed Facts # 114-16, 118, 305.). |
| 307. | REDACTED | **Undisputed** |

FILED UNDER SEAL

138

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

| | REDACTED | **Disputed/Unsupported** |
|---|---|---|
| 308. | Therefore, under the terms of the JDC that created UnitedLinux, SCO did not retain ownership over any of the materials created by UnitedLinux, including the UnitedLinux 1.0 release that was based on the Linux 2.4 kernel and that contained the Linux Code. (Ex. 221 ¶ 102.) | SCO disputes IBM's conclusion that SCO did not retain ownership over UNIX material that became part of UnitedLinux 1.0.<br><br>The language of the UnitedLinux Joint Development Contract, referred to in the Love Declaration, provides:<br><br>REDACTED<br><br>The Love Declaration merely parrots the language of the JDC, albeit inaccurately, and is therefore more properly a legal question and not a factual question: "Therefore, other than the above Pre-Existing Technology, all of Caldera's intellectual property rights in the Software developed by UnitedLinux, were assigned to UnitedLinux and are owned by UnitedLinux." (IBM Ex. 221 (Love Declaration, ¶102)). IBM has not shown that the infringed UNIX material was "developed by UnitedLinux."<br><br>There is a question of fact as to what Software was developed by Caldera pursuant to the JDC; that is, what material was developed by UnitedLinux over and above what already existed in the Linux kernel at the time UnitedLinux began building upon it. |

FILED UNDER SEAL
139

Appendix A To SCO's Memorandum In Opposition To IBM's Motion For Summary Judgment
On Its Claim For Declaratory Judgment Of Non-Infringement

REDACTED

FILED UNDER SEAL
140

**CONCLUSION**

SCO respectfully submits, for all of the reasons stated above and as set forth in Appendix A hereto, that this Court should deny IBM's Motion for Summary Judgment on SCO's Copyright Claim (SCO's Fifth Cause of Action).

DATED this 11th day of November, 2006.

By _____

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver (admitted pro hac vice)
Stephen N. Zack (admitted pro hac vice)
Stuart H. Singer (admitted pro hac vice)
Edward Normand (admitted pro hac vice)

*Attorneys for The SCO Group, Inc.*