SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
  *International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>            Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>            Defendant/Counterclaim-Plaintiff. | **IBM'S CORRECTED MEMORANDUM IN OPPOSITION TO SCO'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON IBM'S MOTION TO CONFINE AND SCO'S MOTION TO AMEND ITS DECEMBER 2005 SUBMISSION**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................... iii

Preliminary Statement ............................................................................................ 1

Statement of Facts .................................................................................................. 3

    A.    IBM's Discovery Requests and the Court's Orders.................................. 3

    B.    The Scheduling Order and Stipulation........................................................ 4

    C.    The Final Disclosures. ............................................................................... 5

    D.    SCO's Attempted End Run.......................................................................... 6

    E.    IBM's Motion and SCO's Response........................................................... 7

    F.    Judge Wells' Ruling – The Order. .............................................................. 8

    G.    SCO's Objections and Motion to Amend. ............................................... 10

Standard of Review .............................................................................................. 10

    A.    Objections. ................................................................................................ 10

    B.    Motion to Amend. .................................................................................... 12

Argument .............................................................................................................. 12

**I.**    **SCO'S OBJECTIONS TO THE ORDER ARE BASELESS**.................................... 12

    A.    Magistrate Judge Wells Properly Precluded SCO's Attempted End Run. .......... 13

    B.    SCO's Arguments About the July 2005 Scheduling Order Are Unavailing. ...... 15

        1.    The July 2005 Scheduling Order. ............................................. 15

        2.    SCO's Purported Belief in its Compliance. .............................. 18

        3.    SCO's Protestations Regarding Prejudice. ............................... 20

    C.    SCO's Arguments Relating to Its Expert Reports Are Meritless. ...................... 26

**II.**    **SCO'S MOTION TO AMEND LACKS MERIT**. ...................................................... 30

    A.    SCO's Motion Is Procedurally Flawed. .................................................. 30

        B.      SCO Cannot Establish Extremely Compelling Circumstances. .............. 31

Conclusion ....................................................................................................................... 34

## Table of Authorities

Page

**Cases**

Alleyne v. Midland Mortg. Co.,
    No. 05-02412, 2006 U.S. Dist. LEXIS 75851 (D. Colo. Sept. 12, 2006) ............................... 19

Authentic Hansom Cabs, Ltd. v. Nisselson,
    No. 03-9468, 2004 WL 2997794 (S.D.N.Y. Dec. 27, 2004) .................................................... 21

Barry v. ASA Building Maintenance,
    457 F. Supp. 2d 489 (S.D.N.Y. 2006) ...................................................................................... 23

Berna v. Chater,
    101 F.3d 631 (10th Cir. 1996) .................................................................................................. 16

Boucher v. Cont'l Prod. Co., Inc.,
    365 F. Supp. 2d 1 (D. Me. 2005) .............................................................................................. 11

Business Credit Leasing, Inc. v. Biddeford,
    770 F. Supp. 31 (D. Maine 1991) ............................................................................................. 21

Cartier, Inc. v. Four Star Jewelry Creations, Inc.,
    No. 01-11295, 2003 WL 22471909 (S.D.N.Y. October 31, 2003) ........................................... 23

Chase Manhattan Mortg. Corp. v. Advanta Corp.,
    No. 01-507, 2004 WL 912949 (D. Del. April 22 2004) ........................................................... 23

Collins v. Marina-Martinez,
    894 F.2d 474 (1st Cir. 1990) .................................................................................................... 21

Commodity Futures Trading Comm'n v. Brockbank,
    No. 00-622, 2006 WL 223835 (D. Utah Jan. 30, 2006) ...................................................... 30-31

Dial v. Champion,
    4 Fed. Appx. 640 (10th Cir. 2001) ........................................................................................... 19

Dreyer v. Ryder Automotive Carrier Group, Inc.,
    367 F. Supp. 2d 413 (W.D.N.Y. 2005) ..................................................................................... 11

Exxon Corp. v. Halcon Shipping Co., Ltd,
    156 F.R.D. 589 (D.N.J. 1994) .................................................................................................. 11

Finch v. Hercules, Inc.,
    No. Civ. A. 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) ................................... 25

Page

Fistell v. Neet,
No. 03-284, 2006 U.S. Dist. LEXIS 72628 (D. Colo. Oct. 5, 2006) ........................ 19

Gates Rubber Co. v. Bando Chemical Industries, Ltd.,
9 F.3d 823 (10th Cir. 1993)............................................................................. 27

GFF Corp. v. Associated Wholesale Grocers, Inc.,
130 F.3d 1381 (10th Cir. 1997)....................................................................... 16

Gibbs v. Massanari,
21 Fed. Appx. 813 (10th Cir. 2001) .............................................................18-19

Houlihan v. Invacare Corp.,
No. 04-4286, 2006 WL 1455469 (E.D.N.Y. May 24, 2006) ................................. 23

Hussain v. Principi,
344 F. Supp. 2d 86 (D.D.C. 2004) ................................................................... 33

Hutchinson v. Pfeil,
No. 98-5248, 2000 U.S. App. LEXIS 6260 (10th Cir. April 4, 2000).................... 16

Kern River Gas Transmission Co. v. 6.17 Acres of Land,
156 Fed. Appx. 96 (10th Cir. 2005)............................................................ 14, 22

King v. G.G.C., Inc.,
No. 86-6009-C, 1988 WL 142413 (D. Kan. Dec. 12, 1988 )................................ 10

Krista v. LaFortune,
No. 06-00034, 2006 U.S. Dist. LEXIS 36409 (D. Colo. June 1, 2006).................. 19

Luma Corp. v. Stryker Corp.,
226 F.R.D. 536 (S.D.W.Va. 2005)................................................................... 23

Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc.,
Civ. A. No. 95 C 1490, 1996 WL 735586 (N.D. Ill. Dec. 19, 1996).......... 11, 14, 22

Mariani v. Stommel,
No. 05-01406, 2006 U.S. Dist. LEXIS 64723 (D. Colo. Sept. 7, 2006)................. 19

Marshall v. Chater,
75 F.3d 1421 (10th Cir. 1996)................................................................18, 23, 27

Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,
No. 02-7689, 2005 WL 832050 (S.D.N.Y. April 12, 2005) ................................. 23

Murrell v. Shalala,
43 F.3d 1388 (10th Cir. 1994)........................................................................ 16

Page

Nolan v. Board of County Comm'rs for Oklahoma County,
    No. 04-204, 2005 WL 2978328 (W.D. Okla. Nov. 7, 2005) .................................................. 23

Ocelot Oil Corp. v. Sparrow Indus.,
    847 F.2d 1458 (10th Cir. 1988) .......................................................................................... 10

Perkis v. Sirmons,
    No. 06-6147, 2006 U.S. App. LEXIS 26656 (10th Cir. Oct. 24, 2006) ................................ 18

Praxair, Inc. v. Atmi, Inc.,
    231 F.R.D. 457 (D. Del. 2005) ..................................................................................... 14, 23

Roadway Exp., Inc. v. Piper,
    447 U.S. 752 (1980) ........................................................................................................... 33

Roth v. Green,
    466 F.3d 1179 (10th Cir. 2006) .......................................................................................... 15

Starlight Int'l, Inc. v. Herlihy,
    186 F.R.D. 626 (D. Kan. 1999) .......................................................................................... 33

Summers v. Missouri Pac. R.R. Sys.,
    132 F.3d 599 (10th Cir. 1997) ............................................................................................ 23

United States v. Hatchett,
    245 F.3d 625 (7th Cir. 2001) .............................................................................................. 16

United States v. Wilson,
    No. 99-6233, 2000 U.S. App. LEXIS 21416 (10th Cir. Aug. 23, 2000) ................................ 16

Utah Women's Clinic, Inc. v. Leavitt,
    844 F. Supp. 1482 (D. Utah 1994) ..................................................................................... 19

White v. Norton,
    No. 04-2555, 2006 U.S. Dist. LEXIS 71022 (D. Colo. Sept. 29, 2006) ........................... 16, 19

World Group Securities, Inc. v. Sanders,
    No. 06-00107, 2006 WL 1278738 (D. Utah May 8, 2006) ..................................................... 30

Yumukoglu v. Provident Life & Acc. Ins. Co.,
    36 Fed. Appx. 378 (10th Cir. 2002) ................................................................................... 16

**Statutes & Rules**

DUCivR 7-1(b)(1) ..................................................................................................................... 30

Fed. R. Civ. P. 1 ...................................................................................................................... 13

<u>Page</u>

Fed. R. Civ. P. 37(b)(2)(B) ......................................................................................................... 13

Fed. R. Civ. P. 37(c) ........................................................................................................... 13, 21

Fed. R. Civ. P. 72 ..................................................................................................................... 10

Defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits this corrected memorandum in opposition to (1) the Objections of the SCO Group, Inc. ("SCO") to Magistrate Judge Wells' Order of December 21, 2006 (the "Order"); and (2) SCO's Motion to Amend its December 2005 Submission.[1]

### Preliminary Statement

Long after the deadline for disclosing its allegations, SCO sought by indirection to change them.  In yet another effort to circumvent the Court's orders, SCO attempted to reinvent its case through its expert reports.  Magistrate Judge Wells ruled that SCO could not do so and granted IBM's motion to confine SCO's claims to, and strike allegations in excess of, its Final Disclosures.  SCO now both objects to the Order and seeks to end run it, by amending its Final Disclosures.  SCO's objections and its motion to amend are baseless and should be rejected.

In three of its expert reports, SCO alleged the misuse of material nowhere identified in its Final Disclosures, the very purpose of which was to fix the parties' allegations once and for all as of December 22, 2005.  Specifically, SCO proffered the testimony of Thomas Cargill to support its copyright infringement claim relating to Linux.  Rather than limit Dr. Cargill's report to the material identified in the Final Disclosures (only 326 lines of code from the Linux kernel), the Cargill report challenged essentially every file in Linux.  Similarly, SCO proffered the testimony of Evan Ivie and Marc Rochkind in support of its contract claims.  Like the Cargill report, the Ivie and Rochkind reports identified allegedly misused material found nowhere in the Final Disclosures, e.g., the Ivie report accused six times the volume of System V and AIX material

---

[1]  This corrected memorandum merely corrects certain typographical errors in IBM's Memorandum in Opposition to SCO's Objections to the Magistrate Judge's Order on IBM's Motion to Confine and SCO's Motion to Amend Its December 2005 Submission, Docket No. 961, filed February 16, 2007.  It does not otherwise change the arguments therein.

relating to JFS identified in SCO's Final Disclosures, and the Rochkind report accused 25,378 lines of testing technology code not identified in the Final Disclosures.  Magistrate Judge Wells ruled that SCO could not proceed with respect to allegedly misused material not specifically identified by it in its Final Disclosures.

SCO objects to the Order on the grounds that nothing in the Court's Scheduling Order required SCO to include expert analysis in its Final Disclosures; SCO reasonably believed that it was not required to include expert analysis in its Final Disclosures; and allowing SCO to proceed as to the allegedly misused material disclosed in its expert reports but not in its Final Disclosures would not be prejudicial to IBM.  None of these objections bears scrutiny.  While the Scheduling Order allowed the parties to submit expert reports after the deadline for final disclosures, it did not allow them to use expert reports to challenge as misused material not identified with specificity in their final disclosures (as SCO sought to do).  In fact, this Court's November 29, 2006 Order, which held that the parties may not proceed with respect to any allegedly misused material not identified with specificity in the Final Disclosures, plainly precluded SCO's stratagem and compelled Judge Wells' decision.  Moreover, SCO offered no justification for its attempt to proceed as to allegedly misused material not identified with specificity in its Final Disclosures, and there was none, especially in view of the parties' December 7, 2005, stipulation that they were "required to identify with specificity and any and all misused material" by December 22, 2005.  Furthermore, allowing SCO to pursue allegations of misuse not properly identified in its Final Disclosures would have resulted in incurable prejudice to IBM.  (See Section I below.)

As a fallback position, SCO seeks leave, on essentially the same grounds as it objects to the Order, to amend its Final Disclosures to include in them the allegedly misused material at

issue.  Contrary to SCO's contention, it was not reasonable for SCO to omit the supplemental material from its Final Disclosures; the proposed amendment would be prejudicial to IBM; denial of SCO's motion would not result in any cognizable prejudice to SCO; and the material SCO seeks to add is not fully disclosed and analyzed in SCO's expert reports.  Furthermore, SCO's objections and motion to amend are barred for procedural reasons.  For these reasons, SCO's motion to amend (like its objections) should be disallowed.  (See Section II below.)

## Statement of Facts[2]

Despite their length, SCO's papers ignore the facts pertinent to the relief it seeks, which are set out in IBM's memoranda and oral argument before Judge Wells and in its memorandum in opposition to SCO's objections to Magistrate Judge Wells' Order of June 28, 2006, and incorporated here by reference.

A.    IBM's Discovery Requests and the Court's Orders.

From the beginning of this case, IBM has asked SCO to specify its allegations of misconduct.  For example, IBM's Interrogatory No. 4 (served on June 13, 2003) requested that SCO describe in detail "the specific manner in which IBM is alleged to have engaged in misuse or misappropriation", and IBM's Interrogatory No. 13 (served on September 16, 2003) requested that "for any rights IBM is alleged to have infringed, [SCO] describe in detail how IBM is alleged to have infringed plaintiff's rights".  (Addendum A hereto; see also 6/28/06 Order at 10 (Docket No. 718).)

SCO repeatedly declined to disclose its allegations, requiring the Court twice to order SCO to respond to IBM's discovery requests and to specify its allegations (as described in

---

[2] Citations to SCO's memorandum in support of its objections are given as "Obj. at __". Citations to SCO's memorandum in support of its motion to amend are given as "Mot. to Am. at __".

Addendum A).  On December 12, 2003, the Court ordered SCO "[t]o respond fully and in detail to Interrogatory Nos. 1-9 as stated in IBM's First Set of Interrogatories" and "[t]o respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories." (12/12/03 Order ¶¶ 1-2 (Docket No. 94).)  On March 3, 2004 the Court ordered SCO "[t]o fully comply within 45 days of the entry of this order with the Court's previous order dated December 12, 2003."  (3/3/04 Order at 2 (Docket No. 109).)  Thus, the Court required SCO to describe in detail its allegations of misuse, including how IBM is alleged to have infringed SCO's alleged copyrights relating to UNIX System V Software.

        B.      <u>The Scheduling Order and Stipulation.</u>

When SCO still refused to specify its allegations, IBM moved for summary judgment. The Court deferred resolving IBM's motions on the merits but stated that it was "astonishing that SCO has not offered competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights through IBM's Linux activities".  (2/8/05 Order at 10 (Docket No. 398).)

Based on SCO's failure to disclose its allegations, IBM urged the Court to establish a final deadline for the disclosure of allegedly misused material.  As we explained at the time, there was no way IBM could properly prepare its defense without a final deadline, prior to the close of fact discovery, for the identification of <u>all</u> allegedly misused material.  SCO's claims potentially implicate billions of lines of source code, and it would have been impossible to defend the case by preparing a defense to all possible claims relating to that code.  Moreover, as we further explained, it was critical that the parties <u>not</u> be allowed to modify their allegations by way of the expert reports lest the deadline become meaningless and render fact discovery an exercise in inefficiency, disconnected from the parties' allegations.  (4/21/05 Hr'g Tr. at 93-94 (Addendum B hereto).)

In an order dated July 1, 2005, the Court adopted IBM's proposal over SCO's objection. The Court set October 28, 2005 as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material Identified to Date and to Update Interrogatory Responses Accordingly".  (7/1/05 Order ¶ III (Docket No. 466).)  The Court set December 22, 2005, as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material".  (Id.) In so doing, the Court could not have been more clear that the parties would not be allowed to challenge as misused material not specifically identified in their final disclosures.

Following entry of the Scheduling Order, SCO repeatedly committed to IBM that it would limit its claims to the Final Disclosures.  In fact, SCO expressly stipulated and agreed with IBM that its claims would not exceed the Final Disclosures.  In a Stipulation Re Scheduling Order filed with the Court on December 7, 2005, the parties stipulated as follows:

> 1.  Both parties are required to identify with specificity any and all material that each party contends the other has misused no later than December 22, 2005;
>
> …
>
> (c) Neither party shall be permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline.

(12/7/05 Stipulation at 2-3 (Addendum C hereto).)  It is thus undisputed and indisputable that the Final Disclosures were to define the complete scope of SCO's claims.

C.      The Final Disclosures.

The parties submitted their final disclosures of allegedly misused material on December 22, 2005, thus advising the Court that they had no more to provide.  In its Final Disclosures, SCO identified 294 Items of allegedly misused material.  Most of the Items (215 Items) concerned SCO's allegation that IBM breached its contractual obligations by contributing its own AIX and Dynix material to Linux.  The remaining items (79 Items) concerned SCO's

allegations of copyright infringement, which relate primarily to Linux (69 Items).  SCO's allegations of infringement relating to Linux, which make no specific allegations of infringement by IBM, concern material of three types – (1) header files (including Open Group headers and Streams headers); (2) specifications (including ELF); and (3) miscellaneous materials (including one Item about memory management).  In challenging this material, SCO accused just 326 lines of code from the Linux kernel.  By order of the Court, these 294 Items defined the permissible scope of SCO's claims.

While SCO's Final Disclosures were voluminous in some respects, none of the 294 Items provided the level of detail sought by IBM and required by the Court and 187 of them failed to provide even the most basic information (as illustrated in Addendum D hereto).  Thus, IBM moved to limit the scope of SCO's claims to the Items properly identified by SCO in the Final Disclosures.  Judge Wells granted the motion, ruling that SCO may not rely on 187 of its 294 items because (1) SCO failed to disclose its allegations with the requisite specificity (i.e., version, file and line information), despite three orders of the Court and the requirements of Rule 26(e); (2) SCO acted willfully, not inadvertently, in withholding its allegations; and (3) SCO's conduct had caused and, unless remedied, would further cause significant prejudice to IBM.  (6/28/06 Order at 2, 7-17, 30-36 (Docket No. 718).)  In an order dated November 29, 2006, this Court affirmed.  (11/29/06 Order at 4 (Docket No. 884).)

D.      SCO's Attempted End Run.

Months after the submission of its Final Disclosures, subsequent to the close of fact discovery, and simultaneous with IBM's submission of expert reports (which were based on SCO's Final Disclosures), SCO sought, by way of its expert reports, to challenge as "misused" a mass of material nowhere identified in the Final Disclosures, despite the Court's orders and the parties' stipulation.  As stated, SCO proffered the testimony of Thomas Cargill to support its

copyright infringement claim relating to Linux.  Rather than limit Dr. Cargill's report to the material identified in the Final Disclosures, which consisted of only 326 lines of code from the Linux kernel, the Cargill report challenged nearly every file in the Linux kernel (which is comprised of more than seven million lines of code).  In so doing, SCO not only sought to insert into the case files and lines of code that it had not previously disclosed, but files and lines of code as to which IBM was unable to take discovery, perform expert analyses and prepare a defense.  SCO's identification of this material radically increased the scope of SCO's claims.

In addition, SCO proffered the testimony of Evan Ivie and Marc Rochkind in support of its contract claims.  Like the Cargill report, the Ivie and Rochkind reports identified allegedly misused material found nowhere in the Final Disclosures.  With respect to one of the technologies challenged in the Final Disclosures (JFS), SCO used its expert reports to charge misuse against <u>six times</u> the volume of material identified in the Final Disclosures to support one allegation.  Similarly, the Final Disclosures identify 9,282 lines of code regarding testing technologies as representing "misuse".  To that the Rochkind report added 25,378 additional lines of code.  In truth, SCO's Final Disclosures identify only a small fraction of the material challenged in its expert reports, notwithstanding the requirements of the Court's orders and SCO's stipulation and agreement.

E.    <u>IBM's Motion and SCO's Response.</u>

SCO's claims as to the material it sought to sneak in by way of its expert reports had no more merit than its claims as to the material set out in its Final Disclosures.  But allowing SCO to ignore the Court's orders and reinvent its case at that juncture would have been unduly prejudicial to IBM and contrary to the public interest.  SCO's thirteenth-hour allegations would have forced the re-opening of discovery and significantly extended the litigation.  The resulting delay would itself have prejudiced IBM and undermined the public interest because it would

have allowed SCO further to perpetuate fear, uncertainty and doubt about IBM, Linux and IBM's products and services.  Thus, IBM filed a motion to confine SCO's claims to, and strike allegations in excess of, its Final Disclosures.

In opposition, SCO asserted essentially the same arguments that Magistrate Judge Wells rejected in ruling on IBM's motion as to the 187 Items not identified in the Final Disclosures with the requisite specificity and that this Court rejected in affirming Magistrate Judge Wells' ruling.  Notably, SCO argued that IBM's motion should be denied because SCO had in fact properly identified in its Final Disclosures the material IBM argued SCO was seeking to sneak in.  For example, SCO argued, "<u>IBM's motion should be denied because SCO has complied fully in identifying the 'materials misused by IBM</u>' . . .".  (SCO's Opp'n to IBM's Motion to Confine at 1 (emphasis in original).)  This argument stands in stark contrast to SCO's motion to amend, by which SCO acknowledges that none of the material at issue was included in its Final Disclosures.

F.      Judge Wells' Ruling – The Order.

After oral argument, on November 30, 2006, Magistrate Judge Wells granted IBM's motion from the bench:

> I'm prepared to rule.  The Court orders as follows:  That, as provided in this Court's order of July 1 of 2005, agreed to by the parties through stipulation, reaffirmed by this Court's subsequent order of June 28 of '06 and in yesterday's order by Judge Kimball, SCO may not challenge as misused, by expert report or otherwise, any material not specifically identified as misused by IBM in the final disclosures.

(11/30/06 Hr'g Tr. at 63-64 (Addendum E hereto).)

Following a request for clarification by SCO as to what the Court viewed as not specified as misused, Magistrate Judge Wells stated:  "I think it's all encompassed in the previous orders

of this Court and stipulations that, if it wasn't disclosed by . . . October 28, 2005, the interim

deadline, and the final deadline December 22 of 2005, then it's out."  (Id. at 64.)

        In response to Magistrate Judge Wells' request for IBM's view, counsel for IBM stated

its view that the Court's order was clear:

> I think it is as plain as day what the Court's orders previously said, and I believe I
> understand this order.  I am, at the same time, a hundred percent confident that my
> friends at SCO take the position that there is absolutely nothing that wasn't
> disclosed with specificity, Your Honor.  I don't think that can be reconciled with
> the facts in any, way, shape or form, but I am happy, Your Honor, as a solution to
> today's problem to have Your Honor's reaffirmed order that material not
> identified with specificity in the final disclosures, which I take to include
> structure, sequence and anything else that they want to claim as part of their case,
> is out.

(Id. at 65.)  Magistrate Judge Wells agreed:  "Well, that is my intent. That is the intention of this

order, All right. I adopt IBM's reasoning in this regard."  (Id. at 65.)

        On December 21, 2006, Magistrate Judge Wells entered a consent order reaffirming her

ruling from the bench:

> 1.       IBM's motion is granted in full;
>
> 2.       As provided in the Court's order dated July 1, 2005, the parties'
> Stipulation re Scheduling Order dated December 7, 2005, this Court's order dated
> June 28, 2006, and Judge Kimball's order dated November 29, 2006, SCO may
> not challenge as misused, by expert testimony or otherwise, any material that
> SCO has not specifically identified in its Final Disclosures of Material Allegedly
> Misused by IBM (Docket No. 591); and
>
> 3.       As to what SCO has not specified as misused, it is the Court's intent that
> this order shall apply to any and all allegedly misused material, including
> structures and sequences.

(12/21/06 Order at 2 (Docket No. 906).)  Thus, the Court made perfectly clear that SCO may not

proceed as to any material – including any structures, sequences or anything else that SCO might

want to claim as part of its case – not identified with specificity in SCO's Final Disclosures.

G.      SCO's Objections and Motion to Amend.

SCO objects to the Order on two basic grounds.  First, SCO argues that the Order "overlooks the distinction between allegedly misused material and the analysis required of experts set forth in this Court's July 2005 Order" and that the Final Disclosures "were an identification of the 'misused material,' not all the supporting analysis that would support an ultimate finding of liability."  (Obj. at 2.)  Second, SCO argues that "the record does not justify the exclusion of portions of SCO's expert testimony" because "there is a genuine dispute in which 'reasonable people could differ' regarding the meaning of the court order and the extent of compliance therewith" and because "there is no undue prejudice to IBM".  (Id. at 3.)

Contemporaneously with the filing of its Objections, and more than seventeen months after the July 1, 2005 Scheduling Order set the "Final Deadline" for disclosing "all allegedly misused material", SCO moved to amend its Final Disclosures to add the material that it admits was not contained therein.  While SCO cites no supporting authority for its request, it relies on essentially the same arguments it included in its Objections.

As is further discussed below, SCO should not be allowed to ignore the deadline for final disclosures and litigate this case by ambush.  Thus, SCO's objections should be overruled and its motion to amend should be denied.

**Standard of Review**

A.      Objections.

Under Rule 72 of the Federal Rules of Civil Procedure, a dispositive decision of a magistrate judge is reviewed by the district court de novo, whereas a non-dispositive decision is subject to being set aside only if "clearly erroneous or contrary to law".  Fed. R. Civ. P. 72; see Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1461-63 (10th Cir. 1988); King v. G.G.C., Inc., No. 86-6009-C, 1988 WL 142413, at *1 (D. Kan. Dec. 12, 1988) (Addendum K hereto).

There is no question that the Order is not dispositive.  It does not dismiss, enter summary judgment, or rule on the merits of any claim or defense.

Courts repeatedly have held that a decision limiting the scope of expert testimony is a non-dispositive ruling that may be set aside only if "clearly erroneous".  See Dreyer v. Ryder Automotive Carrier Group, Inc., 367 F. Supp. 2d 413, 416 (W.D.N.Y. 2005) (affirming as not clearly erroneous or contrary to law, magistrate judge's order precluding expert testimony regarding negligent design of an auto part in a product liability action); Boucher v. Cont'l Prod. Co., Inc., 365 F. Supp. 2d 1, 1 n.1 (D. Me. 2005) (treating magistrate judge's exclusion of late-arriving expert testimony from evidence as "non-dispositive action" entitled to deferential review); Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc., Civ. A. No. 95 C 1490, 1996 WL 780492 (N.D. Ill. Dec. 11, 1996) (treating as nondispositive, magistrate judge's order striking expert analysis relating to certain trade secrets, thereby "significantly restrict[ing] [plaintiff's] ability to demonstrate that the defendants incorporated these trade secrets into their competing computer program") (Addendum K hereto); Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994) (applying a "clearly erroneous or contrary to law" standard of review to magistrate judge's Order precluding expert witness testimony).

Although this Court stated its intent to "out of an abundance of caution, . . . apply a *de novo* standard of review" to the Order (which we welcome), the Court appears to have recognized (in its Order of November 29, 2006 in ruling on SCO's objections to Magistrate Judge Wells' ruling granting IBM's motion to limit SCO's claims) that the applicable standard may well be "clearly erroneous or contrary to law".  (11/29/06 Order at 2, 4 n.2.)  Whereas SCO argued (incorrectly) that the June 28, 2006 Order was dispositive, it does not and could not contend that the Order here is dispositive.  Thus, the Order is even more clearly subject to

11

deferential review.  In addition, SCO's contention that *de novo* review is appropriate because "the issues are predominantly legal" (Obj. at 5) is equally meritless.  The issues raised in these objections are no more "legal" than the issues raised in SCO's previous objections.

   B.   Motion to Amend.

   SCO does not identify any legal basis for its motion to amend, which is by itself fatal to SCO's application, as discussed below.  But even if the Court were to ignore that failure and construe SCO's motion as a motion to amend the Court's Scheduling Order (which required that SCO submit its Final Disclosures no later than December 22, 2005), the motion must be denied absent "extremely compelling circumstances" – the standard established by the Court for modifications to the Scheduling Order.  (6/10/04 Order at 3 (Docket No. 177); 7/1/05 Order at 4 (Docket No. 466).)  This Court applied that heightened standard when it denied SCO's motion to file a Third Amended Complaint, finding that "the deadline for seeking leave to further amend has long-since passed" and that "SCO has not demonstrated the 'extremely compelling circumstances' required by this court's June 10, 2004 Order."  (7/1/05 Order at 4.)

<u>Argument</u>

**I.    SCO'S OBJECTIONS TO THE ORDER ARE BASELESS.**

   As stated, SCO asserts, "[t]his Court should reverse the Magistrate Judge's Order for two main reasons":  (1) nothing in the Court's July 2005 Order required SCO to include expert analysis in its Final Disclosures; and (2) SCO reasonably believed that it was not required to include expert analysis in its Final Disclosures, and allowing SCO to proceed as to the allegedly misused material disclosed in its expert reports but not in its Final Disclosures would not be prejudicial to IBM.  Neither argument justifies setting aside the Order.

A.     Magistrate Judge Wells Properly Precluded SCO's Attempted End Run.

Contrary to SCO's contention, Magistrate Judge Wells properly precluded SCO from

reinventing its case at the thirteenth hour.  Indeed, it would have been error for the Court to rule

otherwise.

As SCO represented to the Court in trying to avoid entry of the Scheduling Order (which

required the final disclosures at issue), a court has a "full arsenal of measures" to preclude a

party from using evidence it fails to disclose to its adversary.  (4/21/05 Hr'g Tr. at 95-96

(Addendum B hereto).)  Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to

provide . . . discovery . . . , the court in which the action is pending may make such orders in

regard to the failure as are just", including "[a]n order refusing to allow the disobedient party to

support or oppose designated claims or defenses, or prohibiting that party from introducing

designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(B).  Likewise, Rule 37(c) provides that

> A party that without substantial justification fails to disclose information required by
> Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule
> 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a
> hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c).  And, of course, Rule 1 requires a court to proceed so as "to secure the just,

speedy, and inexpensive determination of every action".  Fed. R. Civ. P. 1.

While SCO suggested before Magistrate Judge Wells that it included the disputed

material in its Final Disclosures (SCO's Opp'n to IBM's Motion to Confine at 1), there is no

question that it did not.  In fact, SCO now admits as much, both in its objections and by way of

its motion to amend.  (See Mot. to Am. at 2; Obj. at 2.)  Nor is there any justification for SCO's

failure to disclose the material.  The Court entered numerous orders requiring it (see 6/28/06

Order at 25-30 (Docket No. 718)); IBM repeatedly told SCO that, as it understood the Court's

orders, all allegedly misused material had to be included in the parties' final disclosures (6/28/06

13

Order at 32; see Addendum F at 2); and the parties stipulated that their claims would be limited to the material identified with specificity in their final disclosures.  (12/7/05 Stipulation at 2-3 (Addendum C hereto).)

Moreover, allowing SCO to challenge as misused material that it had not disclosed in its Final Disclosures would have resulted in incurable prejudice to IBM.  SCO sought to expand the case nearly six months after the deadline for its Final Disclosures, after the close of fact discovery, simultaneous with the filing of initial expert reports, on the eve of the due date of IBM's opposing expert reports and when summary judgment briefs were forthcoming.  SCO had spent more than three years developing its theory of infringement and yet sought to force IBM to respond to its newly-minted allegations, without the benefit of discovery, in a matter of weeks.  If that would not have been unfair, nothing would.  For these reasons alone, SCO's objections to the Order are baseless.[3]

SCO's objections are also untenable because this Court's Order of November 29, 2006 compelled entry of the Order.  As Magistrate Judge Wells stated in the Order, both her and this Court's prior orders (as well as the parties' stipulation) make clear that "SCO may not challenge as misused, by expert testimony or otherwise, any material that SCO has not specifically identified in its Final Disclosures of Material Allegedly Misused by IBM (Docket No. 591)". (12/21/06 Order at 2, (Docket No. 906).)  Judge Wells could not have denied IBM's motion without undermining the Court's prior orders and the parties' stipulation.  In fact, in entering the

---

[3] There is ample authority for limiting a party's claims to the scope of its disclosures, especially where the disclosures were ordered by the Court.  See Kern River Gas Transmission Co. v. 6.17 Acres of Land, 156 Fed. Appx. 96, 100, 103 (10th Cir. 2005); Praxair, Inc. v. Atmi, Inc., 231 F.R.D. 457, 463-64 (D. Del. 2005); Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc., Civ. A. No. 95 C 1490, 1996 WL 735586, at *9 (N.D. Ill. Dec. 19, 1996) (Addendum K hereto).

Order, Magistrate Judge Wells merely enforced the Court's prior rulings, which are law of the case, see Roth v. Green, 466 F.3d 1179, 1187 (10th Cir. 2006), and the parties' stipulation, which is likewise binding on the parties, Fed. R. Civ. P. 29.

Notably, the reasons for affirming the Order here are even more compelling than were the reasons for affirming Judge Wells' Order of June 28, 2006. The issue presented by IBM's preclusion motion (the subject of the June 28 Order) was whether SCO could proceed with regard to allegedly misused material that was identified in its Final Disclosures but not with the requisite particularity. Judge Wells held that it could not, and this Court affirmed. The issue presented by IBM's motion to confine (the subject of the Order), by contrast, was whether SCO could proceed with regard to allegedly misused material that was not identified at all in the Final Disclosures, let alone with the requisite specificity. It cannot be that it was proper for Magistrate Judge Wells to preclude SCO from proceeding as to allegedly misused material that was disclosed in its Final Disclosures, albeit without the requisite specificity (as this Court properly ruled), but that it was improper for her to preclude SCO from proceeding as to allegedly misused material that was not disclosed at all in its Final Disclosures (as SCO incorrectly contends).

B.     SCO's Arguments About the July 2005 Scheduling Order Are Unavailing.

Neither of SCO's arguments for setting aside the Order, which we address in three parts, justifies setting aside Judge Wells' ruling.

1.     The July 2005 Scheduling Order.

SCO argues that Magistrate Judge Wells erred in entering the Order on the grounds that "the scheduling order and its procedural history make clear that the December 2005 submission was not required to be coextensive with expert reports". (Obj. at 5.) According to SCO, the Order "overlooks the distinction between allegedly misused material and the analysis required of

15

experts set forth in this Court's July 2005 Order".  (Id. at 2.)  This argument, and any argument that the Order misapprehends the meaning of the Court's Scheduling Order, is baseless.

Contrary to SCO's suggestion, the Order was not based solely on this Court's Scheduling Order.  Magistrate Judge Wells also based her decision on:  "the parties' Stipulation re Scheduling Order dated December 7, 2005, this Court's order dated June 28, 2006, and Judge Kimball's order dated November 29, 2006".  (12/21/06 Order at 2 (Docket No. 906).)  Any one of these grounds, which are unchallenged by SCO, is sufficient to justify affirmance of Judge Wells' decision.  In fact, where a party fails to challenge an alternative ground for a holding, it waives any claim of error with respect to the court's decision on that issue.  See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1387-88 (10th Cir. 1997); Yumukoglu v. Provident Life & Acc. Ins. Co., 36 Fed. Appx. 378, 383 (10th Cir. 2002); see also United States v. Hatchett, 245 F.3d 625, 644-45 (7th Cir. 2001) (holding that in "situations in which there is one or more alternative holdings on an issue, . . . failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.") (internal quotation marks omitted).[4]

---

[4] See also United States v. Wilson, No. 99-6233, 2000 U.S. App. LEXIS 21416 at *5 (10th Cir. Aug. 23, 2000) ("As the unchallenged perjury/subornation finding is, by itself, a sufficient basis for the enhancement, defendant's success on appeal is foreclosed – regardless of his arguments relating to witness intimidation.") (Addendum K hereto); Hutchinson v. Pfeil, No. 98-5248, 2000 U.S. App. LEXIS 6260 at *7-8 (10th Cir. April 4, 2000) ("plaintiffs' deficient challenge to the laches ruling undercuts their entire appeal from summary judgment, the entry of which is fully supportable on the basis of laches alone") (Addendum K hereto); Berna v. Chater, 101 F.3d 631, 633 (10th Cir. 1996) ("if on appeal a claimant challenges only one of two alternative rationales supporting a disposition, 'this choice of litigation strategy necessarily carries with it adverse consequences for [the] appeal as a whole. Since the unchallenged [rationale] is, by itself, a sufficient basis for the denial of benefits, [claimant's] success on appeal is foreclosed – regardless of the merits of [the] arguments relating to [the challenged alternative].'") (internal citations omitted); Murrell v. Shalala, 43 F.3d 1388, 1388-90 (10th Cir. 1994) (appellate relief foreclosed when appellant challenges only one of two alternate bases for ruling under review); White v. Norton, No. 04-2555, 2006 U.S. Dist. LEXIS 71022 at *4 (D. Colo. Sept. 29, 2006) (where plaintiff's objections did not address magistrate judge's ruling that he had failed to exhaust administrative remedies, his claim failed) (Addendum K hereto).

Notably, SCO represented to the Court in advance of the Order that it could limit SCO's claims in the absence of the provision in the Scheduling Order requiring final disclosures.  In opposing (without success) IBM's request for the entry of a deadline for final disclosures of allegedly misused material, SCO assured the Court, as stated above, that, even without imposing a specific disclosure deadline, the Court could preclude SCO from using evidence that it failed timely to disclose:

> The Court [has a full] arsenal of measures it can take to allow more time or to preclude us from using evidence if we haven't produced responses to those interrogatories in time.

(4/21/05 Hr'g Tr. at 95-96 (Addendum B hereto).)  It cannot be that the Court has less power to limit SCO's claims now after the entry of the July 2005 Scheduling Order than SCO acknowledged that the Court had before entry of the Order.  SCO previously (and correctly) conceded that the Court could do exactly what Judge Wells did in granting IBM's motion, and SCO cannot now be heard to argue otherwise.

Even if (contrary to fact) the Order turned entirely on the Scheduling Order and even if it were Judge Wells' only source of authority to manage this litigation, SCO's argument about it would miss the mark.  SCO badly misconstrues both the Scheduling Order and Judge Wells' decision.  Contrary to SCO's suggestion, the Scheduling Order did not permit SCO to identify in expert reports allegedly misused material not identified by SCO in its Final Disclosures, and Judge Wells did not rule that the Scheduling Order (or any other order) required SCO to include its experts' analysis in its Final Disclosures.  IBM does not contend and Judge Wells did not rule that the Final Disclosures required a full explication of SCO's legal arguments, extended expert analysis or submission of all of SCO's trial exhibits.  What the Court required of both parties –

and what IBM did and SCO was supposed to do (but did not) – was to identify any and all allegedly misused material once and for all.[5]

If SCO's revisionist view of the Court's order and the parties' agreement were correct, neither the Order nor the stipulation would have any meaning.  As SCO construes them, SCO would be free to identify new material at any time – including during trial.

2.   <u>SCO's Purported Belief in its Compliance.</u>

SCO also argues that it "was substantially justified in asking three experts to undertake the analyses at issue when they did.  Such justification exists where there is a 'genuine dispute' regarding compliance or 'if reasonable people could differ as to the appropriateness of the contested action'".  (Obj. at 30.)  This argument, like SCO's first argument, is untenable.

As an initial matter, SCO failed to raise this argument before Magistrate Judge Wells and therefore waived the right to pursue it on appeal.  Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.  <u>See, e.g.</u>, <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); <u>Perkis v. Sirmons</u>, No. 06-6147, 2006 U.S. App. LEXIS 26656 at *11 (10th Cir. Oct. 24, 2006) (same) (Addendum K hereto); <u>Gibbs v.</u>

---

[5] As if to suggest that it is being held to an impossible standard, SCO argues that neither IBM nor Judge Wells has even been able to tell SCO exactly what it is supposed to have put in its Final Disclosures but did not.  (Obj. at 22-24.)  That is false.  Both IBM's discovery requests and the Court's orders are clear on the subject.  For example, IBM's Interrogatory Nos. 4 and 13 and the Court's corresponding orders required that SCO describe in detail "the specific manner in which IBM is alleged to have engaged in misuse or misappropriation", and "how IBM is alleged to have infringed plaintiff's rights".  (Addendum A hereto; <u>see</u> 6/28/06 Order at 10.) SCO was required to identify the material that it later sought to sneak in through its expert reports.

18

Massanari, 21 Fed. Appx. 813, 815 (10th Cir. 2001) (same); Dial v. Champion, 4 Fed. Appx. 640, 641 (10th Cir. 2001) (same).[6]

Even if SCO had not waived the argument, SCO could not show that it was "substantially justified" in seeking to pursue claims relating to allegedly misused material not identified in its Final Disclosures.  As stated above, the Court has been perfectly clear that SCO's claims are limited to the allegedly misused material identified with specificity in SCO's Final Disclosures; IBM repeatedly advised SCO that IBM understood and interpreted the Court's orders to preclude the parties from proceeding with respect to allegedly misused material not identified with specificity in their final disclosures; and the parties stipulated that they were required to identify with specificity "any and all" material that each party contends the other has misused no later than December 22, 2005.

SCO suggests that IBM represented to this Court that expert reports could be used to supplement the Final Disclosures and thus, it says, IBM should not be allowed to complain that SCO's expert reports seek to supplement the Final Disclosures.  (Obj. at 4-5.)  SCO is incorrect. IBM repeatedly stated exactly the opposite, as is evident from the two memoranda and the transcript attached as Addenda B, G and H hereto.  In fact, in the very brief cited by SCO as support for IBM's supposed inconsistent position, IBM stated:

---

[6] See also Fistell v. Neet, No. 03-284, 2006 U.S. Dist. LEXIS 72628 at * 9-10 (D. Colo. Oct. 5, 2006) (holding that "[i]ssues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") (Addendum K hereto); White v. Norton, No. 04-2555, 2006 U.S. Dist. LEXIS 71022 at *3-4 (D. Colo. Sept. 29, 2006) (same) (Addendum K hereto); Alleyne v. Midland Mortg. Co., No. 05-02412, 2006 U.S. Dist. LEXIS 75851 at *7-8 (D. Colo. Sept. 12, 2006) (same) (Addendum K hereto); Mariani v. Stommel, No. 05-01406, 2006 U.S. Dist. LEXIS 64723 at *3 (D. Colo. Sept. 7, 2006) (same) (Addendum K hereto); Krista v. LaFortune, No. 06-00034, 2006 U.S. Dist. LEXIS 36409 (D. Colo. June 1, 2006) (same) (Addendum K hereto); Utah Women's Clinic, Inc. v. Leavitt, 844 F. Supp. 1482, 1487 n.7 (D. Utah 1994) (same), rev'd on other grounds, 75 F.3d 564 (10th Cir. 1995).

> SCO cannot credibly contend that it should be allowed to identify the material at issue in this case for the first time via its expert reports and after the close of fact discovery.  The Allegedly Misused Material must be disclosed well in advance of the close of all fact discovery so that the parties can take fact discovery as to their defenses and focus on the issues to be addressed during the expert phase of the case.  Not requiring the parties to disclose the Allegedly Misused Material before the close of all fact discovery would merely allow sandbagging.

(Reply Mem. in Further Supp. of IBM's Proposed Scheduling Order, dated April 11, 2005) at 4-5 (Addendum H).)  Tellingly, SCO excluded this language from its citation.  (Obj. at 4.)

SCO's own conduct belies its new found interpretation of the Court's Order, and the parties' agreement.  SCO identified numerous items of allegedly infringing Linux material in the very Final Disclosures that it now argues did not require the identification of all allegedly infringing Linux material.  Moreover, SCO expressly states in the Final Disclosures that these materials were provided pursuant to the Court's Order of July 1, 2005.  (See SCO's Second Revised Supp. Resp. to Defendant's Six Sets of Interrogs. at 2 (Addendum I hereto).)  Yet SCO would now have the Court believe this material was merely provided as a courtesy to IBM, not because it was required to disclose allegedly infringing material in Linux with specificity.

### 3.   SCO's Protestations Regarding Prejudice.

Finally, SCO asserts that "IBM has suffered no prejudice".  (Obj. at 30-34.)  That is not true, but if it were, it would only be because Magistrate Judge Wells properly entered the Order and thus protected IBM from the prejudice that would have resulted if SCO had been allowed to reinvent its case after the submission of its Final Disclosures, subsequent to the close of fact discovery, and simultaneous with IBM's submission of expert reports (which were based on SCO's Final Disclosures).

### a.   The Record Fully Supports a Finding of Prejudice.

Allowing SCO to reinvent its case at the thirteenth hour would have resulted in incurable prejudice to IBM for reasons that could not be more obvious:  SCO's new allegations concern

massive amounts of allegedly misused material as to which IBM has not taken discovery (fact or expert), and the only way IBM could have properly prepared a defense to SCO's new claims would have been to redo much of the fact, expert and summary judgment work that it had spent nearly four years doing, which would have required at least a year of additional litigation (if not more).

In any case, SCO made no showing before Magistrate Judge Wells that its effort to reinvent its case would be harmless.  Indeed, SCO mentioned the issue of prejudice in its brief below only in a footnote.[7]  (See SCO Opp'n to IBM's Mot. to Confine at 16 n.6.)  Thus, not only did SCO fail to meet its burden to demonstrate that its non-disclosure of the allegedly misused material at issue was harmless, see Fed. R. Civ. P . 37(c), but also it waived the right to raise the issue on appeal.  As stated, issues raised for the first time in objections to a magistrate judge's recommendations are deemed waived.  (See Section I.B.2 above.)  Issues mentioned in a perfunctory manner and issues raised for the first time in oral argument are deemed waived.  See Business Credit Leasing, Inc. v. Biddeford, 770 F. Supp. 31, 33-34 (D. Maine 1991) ("issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting Collins v. Marina-Martinez, 894 F.2d 474, 481 n. 9 (1st Cir. 1990)); Authentic Hansom Cabs, Ltd. v. Nisselson, No. 03-9468, 2004 WL 2997794, at *5 (S.D.N.Y. Dec. 27, 2004) ("Appellant further argues that, although it was not briefed, the issue of the Overlease's incorporation was extensively debated during oral argument before the

---

[7] SCO devoted only a footnote to addressing the prejudice caused by its new claims.  (SCO Opp'n to IBM's Mot. to Confine at 16 n.6.)  And there it argued only (and incorrectly) that IBM would not require more than three additional months to address the new material.  (Id.)  That was more than enough time, said SCO, because "[u]nder the Court's schedule, IBM was provided only three months of fact discovery, until March 2006, following the submission of the December 2005 reports."  (Id.)  In so arguing, SCO ignored the fact that any additional delay in these proceedings would have been prejudicial to IBM.  Moreover, SCO mischaracterized the nature of the three-month discovery period previously provided by the Court.

Bankruptcy Court, and thus the issue was preserved on appeal. . . .  However, . . . .[i]ssues not argued in briefs are considered waived and not addressed on appeal.") (Addendum K hereto).

Courts have refused to allow a party to change its case under far less compelling circumstances.  For example, in Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc., No. 95-1490, 1996 WL 735586, at *9 (N.D. Ill. Dec. 19, 1996) (Addendum K hereto), the court rejected plaintiff's attempts to expand the scope of its case through its expert reports by striking references to misused materials in the report that were not adequately disclosed during discovery.  As the Court did here, the court in Lynchval entered an "order requiring [plaintiff] to produce a final response to [defendant's] Interrogatory 2, specifying each allegedly [misused item], by the end of fact discovery."  Id. at *8.  Like SCO, the plaintiff in Lynchval provided a list of misused materials, but then filed an expert report referring to numerous materials not disclosed in its final list of misused materials.  Id. at *6, 9.  Rejecting such attempts to expand the scope of the case, the court in Lynchval struck from plaintiff's expert report any reference to those misused materials that had not been adequately disclosed in plaintiff's final list.  Id. at *9.  The court in Lynchval observed that defendants' "defense [was] seriously hampered" because defendants "reasonably expected to obtain a complete list of the allegedly stolen trade secrets . . . prepared and exchanged expert reports [based on that list] [and] . . . [i]n light of any additional trade secrets and subsequent depositions, defendants' expert would have to amend his own report in light of this new information."  Id.   The court rejected the notion that reopening discovery would be an adequate remedy because it "compounds the delay until trial and subjects the defendants to costs beyond . . . depositions".  Id.[8]

---

[8] See also Kern River Gas Transmission Co. v. 6.17 Acres of Land, 156 Fed.Appx. 96, 100, 103 (10th Cir. 2005) (affirming district court's decision "preclud[ing] . . . [defendant] from introducing at the trial any expert evidence or documents not produced during discovery");

b.      SCO's Prejudice Arguments Are Untenable.

SCO asserts a number of specific arguments in support of its claim that IBM would not be prejudiced by SCO's end run of the Courts' orders and the parties' stipulation.  Putting aside the fact that SCO raised none of these arguments in its memorandum in opposition to IBM's motion (before Judge Wells) and thus cannot pursue them on appeal, e.g., Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."), none of the arguments bears the slightest scrutiny:

First, SCO argues that "IBM does not and cannot dispute that its counsel had the opportunity to depose each of the three experts at issue regarding the full content of their reports".[9]  (Obj. at 30.)  That is incorrect.  Ignoring the fact that the reports at issue do not properly disclose all of the material that SCO seeks to sneak in by the back door (see Section II below), the mere fact that SCO's experts mentioned the material did not give IBM a fair opportunity to depose them.  By its expert reports SCO sought radically to change its case – for

_____

Praxair, Inc. v. Atmi, Inc., 231 F.R.D. 457, 463-64 (D. Del. 2005) (striking portions of expert report that incorporated new evidence and defenses that were not disclosed prior to a discovery cutoff).

[9] SCO cites a number of cases for the proposition that IBM's "opportunity to take depositions alone" precludes a finding of any prejudice.  They are all inapposite, however, because none of them deals with facts even remotely approaching those here.  Allowing IBM to re-depose SCO's experts would not even have begun to cure the prejudice that IBM would have suffered if Judge Wells had not entered the Order.  See Nolan v. Board of County Comm'rs for Oklahoma County, No. 04-204, 2005 WL 2978328, at *2 (W.D. Okla. Nov. 7, 2005); Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., No. 02-7689, 2005 WL 832050, *8 (S.D.N.Y. April 12, 2005) (Addendum K hereto); Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 543 -544 (S.D.W.Va. 2005); Chase Manhattan Mortg. Corp. v. Advanta Corp., No. 01-507, 2004 WL 912949, at *1 (D. Del. April 22, 2004) (Addendum K hereto); Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 605 (10th Cir. 1997); Barry v. ASA Building Maintenance, 457 F. Supp. 2d 489, 490 (S.D.N.Y. 2006); Houlihan v. Invacare Corp., No. 04-4286, 2006 WL 1455469, at *1 (E.D.N.Y. May 24, 2006) (Addendum K hereto); Cartier, Inc. v. Four Star Jewelry Creations, Inc., No. 01-11295, 2003 WL 22471909, *2 (S.D.N.Y. October 31, 2003) (Addendum K hereto).

example, rather than limit Dr. Cargill's report to the 326 lines of code from the Linux kernel identified in the Final Disclosures, the Cargill report challenged nearly every file in the Linux kernel (which is comprised of more than seven million lines of code).  Substantial fact discovery and expert analysis would have been required before IBM could have properly prepared its defense and taken a meaningful deposition of SCO's experts.

Second, SCO claims that "IBM has known for over two years, at least since IBM brought its broad Tenth Counterclaim, that this case involves the question of whether Linux is substantially similar to UNIX System V under the copyright laws".  (Obj. at 32.)  While IBM and the rest of the world have long known that SCO generally accuses Linux of infringement (thus raising the question whether Linux is substantially similar to UNIX System V), IBM did not know that SCO sought to challenge the specific material at issue here until SCO submitted its expert reports – nearly six months after the deadline for its Final Disclosures, after the close of fact discovery, simultaneous with the filing of initial expert reports, on the eve of the due date of IBM's opposing expert reports and when summary judgment briefs were forthcoming.  The mere fact that IBM knew SCO accused IBM of infringement does not mean IBM knew anything more about SCO's claim.  If knowing the general nature of a plaintiffs' claim were enough, then no defendant could ever establish prejudice based on a plaintiff's failure to disclose its allegations, as the complaint would tell the defendant all it ever needed to know.[10]

---

[10] SCO points to a magazine article in which it is quoted as claiming that Linux infringes SCO's alleged UNIX copyrights and the fact that IBM brought a claim against SCO seeking a declaration of non-infringement.  (Obj. at 16-19.)  But neither SCO's press releases nor the counterclaim IBM filed in response revealed the specifics of SCO's allegations.  That is, of course, the reason IBM sought, and the Court ordered, specific identification of the allegedly misused material.  At bottom, SCO's argument makes no sense.  SCO argues simply that it was not required to answer interrogatories or to identify the new material in the Final Disclosures because it had publicly asserted generally that Linux infringes its copyrights and IBM knew of the assertions.  To state this argument is to refute it.

Third, SCO argues that "IBM has now had several months in which to prepare an expert report or reports to address the material the Magistrate Judge has excluded" and, with the adjournment of the trial date, IBM could conduct additional discovery. (Obj. at 32.) However, IBM has not used the time since SCO sought improperly to expand the case to prepare a defense to SCO's reinvented allegations. They were not and are not in the case. Moreover, as stated, preparing a defense to the new allegations in SCO's expert reports would take no less than an additional year with the benefit of fact and expert discovery – both of which closed months ago. Allowing SCO to proceed as to the new material would require reopening fact discovery, redoing expert reports and depositions, and redoing summary judgment briefing. Significant delay and expense would result. That alone would result in incurable prejudice, as it would deny IBM prompt resolution of SCO's continued assertions of misconduct and disparagement, which continue to cause injury to IBM. SCO's attempt to force IBM to defend new allegations is unfair – if not abusive – and should not be allowed.

Fourth, SCO argues that "there is a public interest in having disputes resolved on their merits". (Obj. at 33.) That may be true, but there is an equally strong public interest in protecting the integrity of the judicial system from the flouting of discovery deadlines and protecting litigants from litigation by ambush. See, e.g., Finch v. Hercules, Inc., No. Civ. A. 92-251 MMS, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995) (holding that the "flouting of discovery deadlines causes substantial harm to the judicial system.") (Addendum K hereto). Moreover, SCO's claims will be decided on the merits. SCO's allegations of infringement concern an operating system that has been publicly available since its inception in 1991, and the allegedly infringed material has been in SCO's possession since long before the commencement of this case. Even so, the Court afforded SCO the opportunity to take substantial discovery

concerning its claims during more than three years of litigation.[11]  No greater opportunity for a resolution on the merits could reasonably have been provided.

Finally, SCO argues that "IBM's contention that it would need to go through millions of lines of code to respond to SCO's claims . . . is without merit".  According to SCO, "IBM's experts undertook no such analysis, and no such analysis is required".  (Obj. at 33.)  Like much of SCO's brief, this assertion is both false and unsupported.  IBM's experts undertook an extensive analysis of each and every one of the lines of code properly identified in SCO's Final Disclosures, as illustrated by Exhibit H to the 8/28/06 Report and Declaration of Brian W. Kernighan and Randall Davis.  (Addendum J hereto.)  The same analysis would be required to prepare a defense to SCO's allegations of misuse relating to the code SCO sought to sneak in.

C.     SCO's Arguments Relating to Its Expert Reports Are Meritless.

SCO contends that the new material was properly included in three of its expert reports and makes arguments as to each of those three reports.  While SCO devotes many pages to developing these arguments (some of which are raised for the first time on this appeal), they boil down to a handful of unpersuasive propositions – each without merit.

First, SCO's claim that it was not required to disclose the "overall structure" or other "non-literal" aspects of its claims as misused material (Obj. at 16-22) is precluded by the plain language of IBM's requests and the Court's orders.  IBM's requests and the Court's orders broadly required the disclosure of all allegedly misused material (whether literal, non-literal or otherwise).  Neither IBM's requests nor the Court's orders made any exception for non-literal

_____

[11] As the Court may recall, SCO's alleged predecessor undertook a study of whether Linux infringes SCO's alleged UNIX copyrights beginning in 1999 (which SCO ignored for years while it pursued a Linux strategy). (See IBM's Mem. in Support of Summary Judgment on Its 10th Counterclaim ¶¶ 84-87.)

items of allegedly misused material, and there would not have been any reason for them to do so. Contrary to SCO's suggestion, there is no reason it could not have disclosed in its Final Disclosures the non-literal elements that it now seeks to insert into the case.  Indeed, SCO proposes now to do so by way of amendment to its Final Disclosures.  Also contrary to SCO's suggestion, detailed disclosures are not unnecessary as to allegations of non-literal infringement (any more than they are unnecessary regarding methods and concepts); they are more necessary. And the kind of detail the Court required can be provided both by version, file and line of code, as well as by detailed narrative.[12]

Second, and for the first time, SCO makes the opposite argument – that the Order did require such disclosure, but that such a requirement is foreclosed by the Tenth Circuit's decision in Gates Rubber Co. v. Bando Chemical Industries, Ltd., 9 F.3d 823 (10th Cir. 1993), rendering that requirement "contrary to law."  (Obj. at 12-16.)   Specifically, SCO claims that the Order "permits SCO to pursue its copyright claim based only on specific lines of code" and therefore "simply eliminates entire steps required in Gates Rubber."  (Obj. at 12) (emphasis in original). This argument too fails.  Putting aside the inconsistency of SCO's position (which, as stated, is opposite from the position it took below), arguments raised for the first time on appeal are waived (as stated above).  Marshall, 75 F.3d at 1426.   Waiver is particularly appropriate here, where SCO attempts to manufacture a conflict between discovery and scheduling orders entered in this case years ago and Tenth Circuit authority issued in 1993.  Moreover, the Order is not in any way inconsistent with Tenth Circuit law:  the Order merely required SCO to particularize its

---

[12] SCO's argument is also defeated by its own description of its experts' analyses.  For example, according to SCO, Dr. Cargill's reports appropriately describe all of the material IBM is alleged to have misused.  Assuming the truth of that assertion, there is no reason SCO could not have disclosed the material in its Final Disclosures.  Yet, the Final Disclosures come nowhere near identifying it.

claims (whether it sought to challenge particular lines of code or non-literal elements of Linux). If the Order limits SCO's copyright claim to specific lines of code, it is only because SCO's Final Disclosures disclose only particular lines of code with the requisite particularity.  SCO alone is responsible for the decision to limit its disclosures to particular lines of code.  If SCO wished to challenge non-literal elements as part of its copyright claim, then it was required to detail those elements and its claim (which, like any element of an operating system, can be described by version, file and line of code).  Here again, the allegedly misused material at issue was nowhere disclosed in SCO's Final Disclosures, let alone disclosed in detail, as required by the Court.[13]

Third, SCO contends that it was only required to submit "examples" of allegedly misused material with its Final Disclosures, so long as it made a general allegation of misuse as to a particular technology, and that its experts were then free to include "further examples" in their reports.  (Obj. at 25.)  This argument cannot be taken seriously.  Previous orders required SCO "to provide and identify all specific lines of code from Unix System V from which IBM's contributions from AIX or Dynix are alleged to be derived" (3/3/04 Order ¶ 3 (Docket No. 109) (emphasis added))  and "all specific lines of code that IBM is alleged to have contributed to Linux from either AIX or Dynix" (id. ¶ 2 (emphasis added)).  If there were any doubt about it, this Court has made clear that SCO could not satisfy its obligations under the previous orders by

_____

[13] Even accepting for purposes of argument SCO's claim that "structural" or other "non-literal" infringement analyses are not susceptible of version, file and line disclosure (see Obj. at 12), then SCO was obligated to seek clarification from the Court regarding that supposed conundrum.  (6/28/06 Order at 32 (finding SCO's failure to identify its allegedly misused material was "intentional and therefore willful based on SCO's disregard of the court's orders and failure to seek clarification").)  Instead, SCO's argument demonstrates that it chose to identify some allegedly infringing material in its Final Disclosures and then sit silently by knowing that the results of its experts' analysis would result in the identification of additional allegedly infringing material after it provided its Final Disclosures.

a bare allegation that IBM contributed code to Linux from AIX.  (11/29/06 Order at 4 (Docket No. 884).)  More to the point, the Court's previous orders required SCO to identify "<u>all</u> specific lines of code" in its Final Disclosures (6/28/06 Order at 26-27 (Docket No. 718) (quoting 3/3/04 Order ¶¶ 2-3 (Docket No. 109)) (emphasis added)); they did not allow SCO to satisfy its obligation by providing "<u>examples</u>" of specific lines of code in its Final Disclosures, and then provide different "examples" of specific lines of code in its expert reports.  Simply put, such a reading would nullify three-years worth of consistent orders of the Court.

<u>Fourth</u>, SCO contends that the specific examples of Allegedly Misused Material that SCO disclosed for the first time in Mr. Rochkind's report is "information that SCO is not relying upon as 'misused material,' but rather is cited by Mr. Rochkind as supporting proof for one part of his analysis."  (Obj. at 28.)  SCO's argument is baseless and mischaracterizes the Rochkind report, which plainly accuses IBM of misusing additional material that was not contained in the Final Disclosures.  For example, the only difference between Item 16 of SCO's Final Disclosures and Mr. Rochkind's new material is that Mr. Rochkind simply adds 73 additional files to Item 16's list of 15 files.  (Rochkind Rpt. at 148-49.)  SCO's contention would mean that Item 16 is not an allegation of misuse, which it clearly is because it is part of SCO's "Disclosure of Material Misused by IBM".  Notably, when SCO made this assertion below, counsel for IBM asked counsel for SCO to stipulate that it was not claiming misuse as to the testing technology claims, but SCO declined to stipulate.  (Addendum E at 57.)

<u>Finally</u>, SCO contends that the Order creates a "Catch-22" because "if SCO had included [its legal theory of copyright infringement in its Final Disclosures], IBM would have moved to strike it, on the grounds that it lacked version, file and line information."  (Obj. at 23.)  Contrary to SCO's claim, there is no such paradox.  If SCO had described its allegation of infringement in

detail in its Final Disclosures, as IBM requested and the Court required (in order after order),

then there would have been no basis on which IBM could have made a motion to strike.  There is

absolutely no reason the material SCO now seeks to add to the case could not have been

disclosed in the Final Disclosures by version, file and line of code.  And even assuming (for the

sake of argument) that it could not have been described by version, file and line of code, it could

have otherwise been described in detail.  To reiterate:  even if it could not have included version,

file and line information, SCO could have described its allegations in detail.  Yet, SCO elected to

remain silent.[14]

## II.    SCO'S MOTION TO AMEND LACKS MERIT.

As a fallback position, SCO seeks leave to amend its Final Disclosures to include in them

the allegedly misused material identified by it for the first time in its expert reports.  The motion

is, however, untenable.

### A.    SCO's Motion Is Procedurally Flawed.

As an initial matter, DUCivR 7-1(b)(1) requires that all motions state the "grounds for the

request and cite applicable rules, statutes, or other authority justifying the relief sought".

DUCivR 7-1(b)(1).  "This requirement is not procedural pedantry.  Compliant motions set forth

the relevant legal standard against which opposing counsel must contend and under which the

court must operate."  World Group Securities, Inc. v. Sanders, 06-00107, 2006 WL 1278738, at

*2 (D. Utah May 8, 2006) (Addendum K hereto); see Commodity Futures Trading Comm'n v.

---

[14] As discussed above, and as just one example, SCO clearly was able to identify (by version, file and line) the source code for all of the system calls that Dr. Cargill analyzes in his reports.  Indeed, Dr. Cargill specifies each of the system calls by quoting the literal lines of code that compose them.  (See Cargill Rpt. Ex. D(5).)  From these system calls, Dr. Cargill opines that "the substantial similarity of system calls in both systems embodies a substantial similarity between the structure of the two systems".  (Cargill Rebuttal Rpt. at 32.)  It is apparent, then, that Dr. Cargill's "overall structure" argument is based on actual lines of code that he believes are substantially similar in SVr4 and Linux.

<u>Brockbank</u>, No. 00-622, 2006 WL 223835, at *1 n.2 (D. Utah Jan. 30, 2006) (Addendum K hereto).

SCO's motion consists of a one-sentence request accompanied by a cross-reference to its memorandum.  Neither SCO's motion nor its memorandum contains any citation to any "rules, statutes, or other authority justifying the relief sought."  DUCivR 7-1(b)(1).  The only authority cited in SCO's memorandum relates to its contentions that IBM would not be prejudiced by the proposed amendment and that SCO would be prejudiced by its denial (Mot. to Am. at 9-11), along with a citation to a single case allowing untimely discovered evidence to be used at trial but having nothing to do with amendments to interrogatory responses (<u>id.</u> at 7).  This comes nowhere near compliance with Local Rule 7-1.

      B.    <u>SCO Cannot Establish Extremely Compelling Circumstances.</u>

Even if SCO had not failed to state the grounds for its motion and the motion were construed as a motion to amend the Scheduling Order, it should be denied.  As stated, the Court's Scheduling Order may not be modified except in "extremely compelling circumstances".  (6/10/04 Order at 3 (Docket No. 177); 7/1/05 Order at 4 (Docket No. 466).)  SCO's motion to amend is based on essentially the same grounds as its objections to the Order.  Thus, SCO's motion to amend fails for the same reasons as its objections, which we do not repeat here in detail but incorporate by reference, as well as the reasons set out below.

<u>First</u>, SCO argues that "SCO reasonably did not include the supplemental material in the December Submission".  (Mot. to Am. at 6-7.)  As stated above, however, the Court's orders, the Federal Rules of Civil Procedure, the parties' stipulation and basic principles of fairness made clear that the parties could not challenge as misused allegedly misused material not identified with specificity in the parties' final disclosures.  No exception was made for material that a party might choose to put in its expert reports.  SCO's selective reading of IBM's statements to the

Court about what it believed was required to be included in the parties' final disclosures (discussed above) offers no support for SCO's claims of ignorance.[15]

Second, SCO argues that "the amendment of the December Submission to include the supplemental material would not prejudice IBM". (Mot. to Am. at 7-10.) As is also discussed above, however, allowing SCO to proceed as to allegedly misused material not identified with specificity in its Final Disclosures would result in incurable prejudice to IBM. The only no-prejudice argument that SCO makes here but not in connection with its objections is that "IBM's expert reports already responded to several of the categories of enumerated information". (Mot. at 8.) But that is just not true, as evidenced by the sworn testimony of IBM's experts. (7/17/06 Rpt. and Decl. of B. Kernighan & R. Davis at ¶ 3 (Ex. 214 to the 9/25/05 Shaughnessy Decl. (Docket No. 804)); 8/28/06 Rpt. and Decl. of B. Kernighan & R. Davis at ¶ 2 (Ex. 215 to the 9/25/05 Shaughnessy Decl.).)[16]

---

[15] SCO asserts that "[w]hen Dr. Cargill prepared his May 2006 expert report, he located certain additional UNIX system calls that were being used in violation of SCO's UNIX copyrights", purportedly in a book published in April 2006. (Mot. to Am. at 5.) This contention, however, is completely devoid of any factual support. Indeed, Dr. Cargill himself directly contradicts SCO's claim: in his report, he explains that the book that SCO refers to is not what Dr. Cargill used to "locate certain additional UNIX system calls" but one that he "used as an independent source to verify the accuracy of my work." (Cargill Rpt. at 25.) Moreover, the system calls that Dr. Cargill claims infringe SCO's copyrights were included (as Dr. Cargill demonstrates) in versions 2.4 and 2.6 of the Linux kernel. (See Cargill Rpt. Ex. D(5).) These versions of the kernel were released on January 21, 2001 and December 18, 2003, respectively. The claim that SCO did not (or could not have) discovered these system calls until April 2006 is simply untenable. For years SCO included them in its own Linux products.

[16] In support of its assertion that IBM's experts have already evaluated the newly-identified material, SCO points to Professor Kernighan's report relating to SCO's infringement allegations. (SCO Opp'n at 13-16.) But until SCO submitted the Cargill report, neither IBM nor any of its experts, including Professor Kernighan, knew that SCO claimed IBM misused the new material identified in the Cargill report. The Court ordered, and the parties agreed, that SCO's claims would be limited to the Final Disclosures. The Final Disclosures make no specific mention of the new material. SCO's responses to IBM's interrogatories also make no mention of it. While Professor Kernighan addresses some of the material considered in the Cargill report (i.e., the material identified in the Final Disclosures), Professor Kernighan does not address any of the new material specifically identified for the first time in the Cargill report – none of it. To do so now would require a whole round of litigation.

Third, SCO argues that SCO would be prejudiced by denial of the motion.  (Mot. to Am. at 10.)  While SCO's case might be prejudiced if it were unable to reinvent it, there could be nothing undue about that prejudice.  See, e.g., Hussain v. Principi, 344 F. Supp. 2d 86, 93 (D.D.C. 2004) (denying leave to reopen discovery despite plaintiff's argument that without it, he would "lack[] the evidence to respond to defendant's dispositive motion"), aff'd, 435 F.3d 359, 364 (D.C. Cir. 2006).  A party cannot establish a claim of prejudice based on its failure to comply with a Court order.  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763-64 (1980) ("Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to [engage in] such conduct in the absence of such a deterrent.'"); Starlight Int'l, Inc. v. Herlihy, 186 F.R.D. 626, 646 (D. Kan. 1999) ("Sanctions under Rule 37 are intended to ensure that a party does not benefit from its failure to comply, and to deter those who might be tempted to such conduct in the absence of such a deterrent.").

Fourth, and finally, SCO argues that "the supplemental material is fully disclosed and analyzed in SCO's expert reports".  (Mot. to Am. at 3-6.)  That is also not true, as illustrated by 73 of the additional files added by Mr. Rochkind.  SCO's disclosure as to those files is similar to its disclosure as to the material in SCO's Item 16, which the Court ruled did not adequately specify the allegedly misused material.  Mr. Rochkind quotes the same email as Item 16 and provides the same level of detail (what little there is) as Item 16.  The only difference between Item 16 and Mr. Rochkind's new material is that Mr. Rochkind simply adds 73 additional files to Item 16's list of 15 files.  (Rochkind Rpt. at 148-49.)  In any event, even if SCO's expert reports did disclose the allegedly misused material with the requisite specificity, that is not a basis for leave to amend.  If it were, each and every request to amend SCO might make would have to be

33

granted so long as the material to be added was identified.  SCO's motion to amend fails because it cannot establish any of the required elements, and because extremely compelling circumstances do not exist for the addition of allegedly misused material not included in SCO's Final Disclosures.

## **Conclusion**

For the foregoing reasons, IBM respectfully requests that this Court overrule SCO's Objections to the Magistrate Judge's Order on IBM's Motion to Confine and deny SCO's Motion to Amend its December 2005 Submission.

DATED this 21st day of February, 2007.

SNELL & WILMER L.L.P.


/s/ Amy F. Sorenson
Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson


CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000


*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of February 2007, a true and correct copy of the

foregoing, together with the addenda thereto,* were electronically filed with the Clerk of the

Court and delivered by CM/ECF system to the following:

        Brent O. Hatch
        Mark F. James
        HATCH, JAMES & DODGE, P.C.
        10 West Broadway, Suite 400
        Salt Lake City, Utah 84101

        Robert Silver
        Edward Normand
        BOIES, SCHILLER & FLEXNER LLP
        333 Main Street
        Armonk, New York  10504

        Stephen N. Zack
        Mark J. Heise
        BOIES, SCHILLER & FLEXNER LLP
        100 Southeast Second Street, Suite 2800
        Miami, Florida 33131

*  Addenda I , J and K were previously filed conventionally and mailed, postage prepaid, to the above parties.

                ____/s/ Amy F. Sorenson_____
                Amy F. Sorenson

## INDEX TO ADDENDA

Addendum A:     Court Orders and Rule 26(e)

Addendum B:     4/21/05 Hearing Transcript

Addendum C:     12/7/05 Stipulation Re Scheduling Order

Addendum D:     Addendum B to IBM's Reply Mem. in Further Support of Motion to Limit
                SCO's Claims Relating to Allegedly Misused Material, dated April 4, 2006

Addendum E:     11/30/06 Hearing Transcript

Addendum F:     12/5/05 Letter from Todd Shaughnessy to Edward Normand

Addendum G:     Mem. Attaching and in Support of IBM's Proposed Scheduling Order, dated
                March 25, 2005

Addendum H:     Reply Mem. in Further Supp. of IBM's Proposed Scheduling Order, dated
                April 11, 2005

Addendum I:     SCO's Second Revised Supplemental Response to Defendant's Six Sets of
                Interrogatories (Filed Under Seal), Docket No. 965

Addendum J:     Exhibit H to the 8/28/06 Report and Declaration of Brian W. Kernighan and
                Randall Davis (Filed Under Seal), Docket No. 964

Addendum K:     Unpublished Opinions, Docket No. 963