# ADDENDUM E

1          IN THE UNITED STATES DISTRICT Court

2       FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

3

4    _____
                                    )
5    THE SCO GROUP, INC.            )
                                    )
6                                   )
       Plaintiff/Counterclaim-Defendant, )
7                                   )
                                    )
8       vs.                         )    Case No.
                                    )    2:03-CV-294 DAK
9                                   )
   INTERNATIONAL BUSINESS MACHINES  )
10   CORPORATION,                   )
                                    )
11                                  )
     Defendant/Counterclaim-Plaintiff.  )
12   _____)

13

14

15

16       BEFORE THE HONORABLE DALE A. KIMBALL

17          DATE:  NOVEMBER 30, 2006

18       REPORTER'S TRANSCTIPT OF PROCEEDINGS

19             MOTION HEARING

20

21

22

23

24

25          Reporter:  REBECCA JANKE, CSR, RMR

                                            1

```
 1
 2                    A P P E A R A N C E S
 3   FOR SCO GROUP:           HATCH, JAMES & DODGE
 4                            BY:  MARK F. JAMES, ESQ.
 5                            10 WEST BROADWAY, SUITE 400
 6                            SALT LAKE CITY, UTAH 84101
 7
 8                            BOIES, SCHILLER & FLEXNER
 9                            BY:  STUART H. SINGER, ESQ.
10                                 SASHI BORUCHOW, ESQ.
11                            401 EAST LAS OLAS BOULEVARD
12                            FORT LAUDERDALE, FLORIDA 33301
13
14
15   FOR IBM:                SNELL & WILMER
16                            BY:  TODD M. SHAUGHNESSY, ESQ.
17                            15 WEST SOUTH TEMPLE, SUITE 1200
18                            SALT LAKE CITY, UTAH 84101
19
20                            CRAVATH, SWAINE & MOORE
21                            BY:  DAVID R. MARRIOTT, ESQ.
22                            WORLDWIDE PLAZA
23                            825 EIGHTH AVENUE
24                            NEW YORK, NEW YORK 10019
25
```

2

```
 1   OCTOBER 24, 2006                    SALT LAKE CITY, UTAH
 2                    P R O C E E D I N G S
 3                          * * *
 4          .
 5          THE COURT:  Good afternoon, ladies and
 6   gentlemen.  We're here in the SCO Group, Inc. vs.
 7   International Business Machines Corporation on IBM's
 8   motion to confine SCO's claims and to strike allegations
 9   in excess of the final disclosures.
10          Counsel, I see some of the same players but
11   others that are different.  If you'd make appearances for
12   the record, please.
13          MR. HATCH:  Brent Hatch on behalf of SCO.
14          MS. BORUCHOW:  Sashi Bach Boruchow from Boies,
15   Schiller & Flexner for SCO.
16          MR. PADMANABHAN:  Devan Padmanabhan for SCO
17   group.
18          MR. TIBBITTS:  Ryan Tibbitts.  I'm the general
19   counsel for SCO Group.
20          MR. SCHAUGHNESSY:   Good afternoon, Your Honor.
21   Tod Shaughnessy for IBM.
22          MR. MARRIOTT:   David Marriott for IBM.
23          THE COURT:  Thank you, Counsel.  Counsel, I
24   have reviewed all the submissions related to this motion
25   and believe myself conversant with the issues.  I am also
```

3

1  apprised of Judge Kimball's order of yesterday affirming

2  the Magistrate Judge's order of June 28, 2006.  I'm not

3  certain but would ask counsel to address specifically in

4  their arguments how, if in any way, you believe that

5  Judge Kimball's ruling may affect this motion.

6          So, with that having been said, and this is

7  IBM's motion, Mr. Marriott.

8          MR. MARRIOTT:   Thank you, Your Honor to answer

9  Your Honor's question, the disposition of the present

10  motion is dictated, Your Honor, by yesterday's order by

11  Judge Kimball as well as by the four prior related orders

12  that preceded it.  Those orders, we would respectfully

13  submit, unequivocally compel the granting of IBM's motion

14  in the present circumstance.  In fact, Your Honor, the

15  reasons for granting the present motion are far more

16  compelling than were the reasons for granting IBM's prior

17  preclusion motion.

18          The issues presented by the preclusion motion,

19  Your Honor, were whether SCO could proceed with that

20  allegedly misused material which was identified in its

21  final disclosures but not identified in the final

22  disclosures with the requisite particularity.  And now

23  both Your Honor and Judge Kimball have said they can not

24  proceed with that allegedly misused material which was

25  not identified with the requisite level of specificity.

4

1          The issue presented by the present motion, Your

2    Honor, is whether or not SCO may proceed with respect to

3    material that is not identified at all in the final

4    disclosures, let alone identified there with requisite

5    specificity.

6          SCO's final disclosures, for example,

7    identified 326 lines of allegedly infringing material in

8    the Linux kernel, 326 lines.  SCO's expert reports, Your

9    Honor, expand that number to essentially every file and

10   every line of code in the Linux kernel.

11         So, with Your Honor's permission, I would like

12   to do three things:  First, I would like to emphasize the

13   critical facts which, we submit, are undisputed and which

14   are dispositive of the present motion.

15         Second, Your Honor.  I would like to list for

16   the Court, and I emphasize "list," the reasons in support

17   of this motion.  And I say "list," Judge, because since I

18   believe the present motion is dictated by the prior

19   orders, I believe Your Honor is familiar with the

20   rationale that would underlie the ruling that I urge upon

21   the Court.

22         And, finally, Your Honor, I would like to

23   respond to the primary argument offered by the SCO group

24   in response to IBM's present motion.

25         If I may approach, Your Honor, we have prepared

5

1   a little booklet which I hope will make it easy to follow

2   our presentation.

3            First, the facts, Your Honor.  I know Your

4   Honor is familiar with the facts, but I would,

5   nevertheless, ask your indulgence in at least some

6   repetition for the sake of context here.  If Your Honor

7   takes a look at the first tab within the binder, you will

8   see that SCO filed its Complaint in March of 2003.  At

9   the same time, it began what the Court has, at times,

10  referred to as making a plethora of public statements

11  about the scope of its evidence.  And at tab 2, you will

12  find reference to some of those statements with which I

13  know Your Honor is familiar.

14           From the beginning, Judge, we have asked SCO to

15  Identify the allegedly misused information with

16  specificity and in detail.  And the requests that we

17  asked are, among others, included at tab 3 of the binder

18  we have given Your Honor.  We did that, Your Honor,

19  because, as you know, I believe, SCO's claims implicate

20  literally billions of lines of allegedly misused code,

21  and you can see that at tab 4 of the binder.

22           We also did that, Your Honor, because the

23  nature of these claims requires a line-by-line analysis

24  of SCO's allegations, and if you look at tab 5 of the

25  binder, you will see, in what we have already previously

6

1    given Your Honor in connection with the preclusion

2    motion, a list of related copyright principles and then,

3    behind those principles, a set of the questions that

4    naturally flow from them.  And answering those questions

5    is, by and large, a line-by-line exercise.

6         And it is for that reason that we asked, and I

7    believe Your Honor ordered a line-by-line recitation by

8    SCO.  SCO declined.  IBM moved to compel.  Your Honor

9    issued two orders requiring the disclosure of that

10    information.  I know they are familiar to you.  They are

11    excerpted at tab 6.  SCO nevertheless failed to provide

12    the information, Your Honor, and we moved for summary

13    judgment.  And as I think you also know, Judge Kimball

14    denied IBM's motion for summary judgment with leave to

15    refile at a later date, which we have done, but, in

16    connection with that motion, observed that despite SCO's

17    public statements and the passage of, by that time,

18    nearly two years of litigation, it had adduced no

19    competent evidence of the alleged infringement.

20         And Your Honor can see that from the chronology

21    which appears at tab 1 of the Your Honor's book.

22         Following Judge Kimball's order denying IBM's

23    motion for summary judgment, we proposed to the Court

24    that it set a final deadline for the disclosure of

25    allegedly misused material, with an interim date

7

1   preceding it.  We proposed, Your Honor, that that be the
2   end of the parties' ability to finally identify the
3   allegedly misused information.  And an excerpt from our
4   proposal is found at tab 8 of the binder which Your Honor
5   has.
6        We were clear in that proposal, Your Honor,
7   that final meant final and that the parties were not to
8   attempt to use expert reports as a means of end running
9   the requirement to provide information finally in
10  specificity.  SCO opposed that motion and, interestingly,
11  opposed it on the grounds that there was no need for such
12  an order because the Court already had a full arsenal of
13  power to cause a party not to be able to use information
14  not properly disclosed.  And, if you look at tab 9 of the
15  book, you will see a quote from SCO's papers where it
16  indicates there is no reason for the order because the
17  Court already has that power.
18       On July 1, 2005 Judge Kimball effectively
19  adopted SCO's proposal and set a deadline for interim and
20  final disclosures.  He made clear and the Court has
21  subsequently made clear that what was required is a
22  specific identification of that which is alleged to have
23  been misused.  And so clear was it, Your Honor, I would
24  submit, that thereafter, as you will see on the
25  chronology, and at tab 11 of the book, IBM and SCO

8

1   entered into a stipulation of a related discovery matter,

2   and SCO stipulated that it would not disclose and that it

3   would not seek to use information not identified with

4   specificity within the final disclosures.

5           On the 22nd of December of 2005, the parties

6   submitted, exchanged their final disclosures, and SCO

7   identified, in its final disclosures, 294 items of

8   allegedly misused information.  Some of those items

9   concern copyright infringement allegations.  Some of them

10  concern breaches of contract.  Very few of those items,

11  Your Honor -- and I emphasize this -- very few of them

12  are at issue on the present motion.

13          I would refer Your Honor to tab 12, if I may,

14  of the book.  As to SCO's allegations of infringement

15  within the Linux kernel, it identified 326 lines of code,

16  the 326 I've mentioned previously.  As to SCO's

17  allegations of breach of contract, it identified a

18  variety of alleged misused code, only two items of which

19  are relevant to this motion.  One concerns JFS, which

20  stands for Journal File System.  In that regard, SCO

21  identified 17 lines of code.  It also identified certain

22  testing technology code and there identified

23  approximately 9,000 lines of code.

24          Now, for simplicity, Your Honor, what I would

25  like to do, with your permission, is focus you on the 326

9

1   lines of code because I think the point and the problem

2   that this motion seeks to address is illustrated as well

3   by the 326 as it is by reference to all.  So, if you take

4   a look at tab 13 within the book, you will see a little

5   bit more detail about these 326 lines of code.

6          They fall into three categories:  Certain

7   header file code.  The final disclosures identify 181

8   lines of supposed header file code.  Certain

9   specifications, L. specifications.  There are 121 lines

10  identified.  And then, finally, certain miscellaneous

11  code, which concerns memory allocation, of which 24 lines

12  were identified.

13         And Your Honor made clear, and I point you to

14  tab 14 of the book, that the parties were only to use

15  that information which was identified there with the

16  requisite specificity.

17         Now we moved, Judge, as you well know, to

18  preclude certain of the 294 items.  The preclusion motion

19  did not address, did not concern the 326 lines that are

20  at issue here in the Linux kernel code.  They didn't

21  concern the testing technology code here, and they did

22  not concern the JFS code.

23         Now, following the receipt of SCO's final

24  disclosures, IBM undertook discovery with respect to

25  these 326 lines of code.  Now, Just to back up for a

10

1   second, if you remember, Judge Kimball denies IBM's

2   motion for summary judgment.  The Court, in July, enters

3   an order indicating the final disclosures will be

4   required.

5          At that time, Your Honor, SCO identified no

6   code, as Judge Kimball acknowledged, indicating supposed

7   infringement.  We believed then that roughly three months

8   of discovery with respect to what SCO would identify

9   would be sufficient, and we undertook, following the

10  Court's -- following the submission by SCO of its final

11  disclosures of discovery as those 326 lines of code, a

12  line-by-line related analysis, and on May 19, as you will

13  see from the chronology, the parties submitted their

14  opening expert reports.

15         IBM's opening expert reports addressed the 326

16  lines of codes which our experts had then spent five or

17  so months evaluating, evaluating on a line-by-line basis.

18  And I would refer you to tab 15, where you will see an

19  excerpt from the report of two of our experts.  That

20  table, Judge, lists the files in which these 326 lines of

21  code are found and some of the analyses, and I underscore

22  "some," only some of the analyses that IBM's experts did.

23  And if you flip further into that same tab you will see

24  an excerpt from one of the Linux files, and you will see

25  the highlighted code which SCO contends was --

                                                        11

1          THE Court:  What tab is that?

2          MR. MARRIOTT:   This is tab 15, your Honor --

3  14, I'm sorry.  You will see a blue chart, and behind the

4  blue chart you will see an excerpt from a file, and if

5  you look in the left margin, you will see colored dots by

6  each of the lines.  Those colored dots reflect just some

7  of the analyses that were done on a line-by-line basis by

8  IBM's experts.  If you look back at tab 5 and you look at

9  all of those questions, we asked those questions, and we

10  undertook those analyses as to each of those 326 lines of

11  code.

12          At the same time IBM submitted its expert

13  reports, you received reports from SCO's experts,

14  including the three reports that are at issue on this

15  motion.  Each of those three reports in some respects,

16  not in all respects, exceeded the scope of SCO's final

17  disclosures.  And, if you look at tab 16, you will see

18  that, Your Honor.

19          With respect to Linux, the final disclosures

20  had identified 326 lines.  SCO's expert reports

21  effectively claim every file and every line of code in

22  Linux.

23          With respect to JFS, the expert reports

24  identified seven times the code identified in the final

25  disclosures.

                                                    12

1          Now, with respect to testing technologies,
2    there were an additional 15 thousand lines of code
3    identified.
4          Now let me point you to, if I may, to the 326
5    lines specifically, so if you look at tab 17, those 326
6    lines consisted of header files, specifications and
7    certain miscellaneous code.  With respect to the header
8    files, Your Honor, no new additional code was identified.
9    With respect to the specifications, we went from 121
10   lines to essentially the entire ELF format which
11   represents, certainly, thousands of lines of code.  With
12   respect to the miscellaneous category, we went from 24 to
13   a hundred.
14         Far more problematic, however, Judge, was not
15   adding lines of code within an existing category, though
16   that was clearly what is and was problematic; far more
17   problematic was identifying entire new categories of
18   alleged misused information.
19         The Cargill report, one of SCO's experts,
20   claims as misused the entire structure of the Linux
21   operating system as well as the entire file system of the
22   Linux operating system, as well as roughly all of the
23   system calls in Linux.  That effectively amounts, Your
24   Honor, to claiming every file and every line of code in
25   the Linux kernel.

13

1          Now, also identified was new streams material,

2    which is a footnote here, Your Honor.   That material is

3    not in the Linux kernel.   We don't emphasize it because

4    our claim for a declaration of non-infringement is about

5    the Linux kernel, but there was also material outside the

6    kernel that was new for the first time in SCO's expert

7    reports.

8          Now, IBM moved for summary judgment on

9    September 25 of this year, and in November SCO filed its

10   opposition papers, and in those opposition papers,

11   opposition papers to IBM's motion seeking a declaration

12   of non-infringement relating to Linux, SCO argues, in

13   effect, that IBM's motion should be denied, and it should

14   be denied because IBM fails even to address all of this

15   new material identified by SCO for the first time in its

16   expert reports.

17         Your Honor was, as I indicated before, clear.

18   The parties were not to use, in connection with summary

19   judgment filings, material not identified in their final

20   disclosures.   We promptly brought this motion to the

21   Court's attention.   We did not and could not have

22   considered the code beyond the 326 lines in IBM's expert

23   reports.   We didn't do it, Your Honor, because we believe

24   the Court has been clear from the beginning that that was

25   not required, and we could not have done it, Your Honor,

                                                         14

1   because it took us roughly six months, five, six months

2   of evaluating the 326 lines, to do that analysis, and

3   that was with the benefit of discovery.

4          It would take, to put it mildly, a very long

5   time to evaluate all of this new, allegedly misused

6   information.  Going from 326 lines of allegedly

7   infringing code to all Linux code files being supposedly

8   infringing, is like going from an arena, Your Honor, of

9   22,000 fans in which one is identified, to claiming that

10  all are, in some sense, implicated.  And you can see that

11  at tab 18 of our binder.

12         And I would just remind you, Judge, as you

13  think about these issues, that in opposing IBM's first

14  motion for summary judgment, which SCO -- which Judge

15  Kimball denied, SCO argued that the Court should not

16  enter summary judgment because it would require roughly

17  25,000 man years to compare just one version of Linux to

18  one version of UNIX.  And that is, effectively, now, what

19  IBM is being asked do.

20         So, why should Your Honor grant these motions?

21  Your Honor, the reasons why the Court should grant these

22  motions are on these facts I think familiar to the Court.

23  They are set out in IBM's papers in support of this

24  motion, and I will not belabor them here, Your Honor, and

25  though it's IBM's motion, we didn't feel, as Your Honor

15

1    may recall, that oral argument was even necessary in this

2    motion.

3              But let me emphasize three points, if I may.

4    First, Your Honor, the Court has been clear, I think

5    crystal clear, that the parties were not and are not

6    allowed to proceed in this litigation with respect to any

7    material that is not specifically identified, as the

8    Court has now laid out, in the parties' final

9    disclosures.  No exceptions were made for end runs based

10   on information analyzed or discussed in expert reports

11   which followed.  Yesterday's order makes that clear.  The

12   preceding four related orders make that clear.  The case

13   law makes that clear as illustrated in tabs 19 and 20 of

14   the book.  Rule 37 makes that clear, and the parties'

15   stipulation, I respectfully submit, ought, in this

16   respect, to count for something.

17             Second, your Honor, the material that is at

18   issue here was not identified by SCO in the final

19   disclosures.  And it certainly was not identified by SCO

20   with the requisite specificity required by the Court, and

21   I would refer you, in this regard, if I may, to tab 22 of

22   the book, the last of the tabs.  Here, Your Honor, we

23   have indicated the material that is new, as a result of

24   SCO's expert reports.  And based on SCO's opposition

25   papers, Your Honor, there is no link to this allegedly --

                                                        16

1    to this allegedly new misused material to the final

2    disclosures.  This is taking SCO's opposition papers and

3    looking at the citations they provide.

4           As I indicated, the Cargill report claims the

5    entire overall structure of Linux.  It is now identified

6    as allegedly infringing material, the entire structure.

7    Is there a citation in SCO's brief to the final

8    disclosures for that?  No.  As to the overall file

9    systems, there is no citation in SCO's papers to where in

10   the final disclosures that's found.  It's not there.

11          In SCO's opposition papers, there is likewise

12   no indication of where, in the final disclosures, SCO

13   claims system calls.  The 76 new miscellaneous items,

14   likewise, Your Honor, have no citation.  What citation is

15   there?  If you look toward the bottom of this chart,

16   SCO's expert is now claiming the entire ELF format is

17   infringed by their alleged copyrights in UNIX.  And, in

18   support of that proposition, they point to item

19   numbers -- and this is the item numbers in their final

20   disclosures.  They point, in their opposition papers to

21   item 171, item 272, item 273 through 275.

22          Well, let's look at those, Your Honor.  Item

23   171, precluded by this Court in your order of 6/28/06,

24   affirmed yesterday by Judge Kimball as lacking the

25   requisite specificity.  That could not support the claim

17

1    that this material was identified previously.   Item 273

2    through 275, abandoned by SCO in its summary judgment

3    opposition papers as material not part of its claim, not

4    material in which it claims copyright.   Item 272, Your

5    Honor, in fact makes only specific reference to certain

6    lines of code.   It does not claim the entire ELF format,

7    which is what SCO's expert reports are now seeking to

8    claim.

9         And, finally, and just parenthetically, Your

10   Honor, the streams format, which, as I said, is not --

11   the streams code is not in the Linux kernel.   The SCO

12   expert reports nevertheless identify new material

13   relating to streams.   The only citation is to items 165

14   and 166 of SCO's final disclosures, which are also items

15   that were precluded by Your Honor's June order.

16        Now, before I close, Your Honor, if I may just

17   address the primary argument asserted by SCO as to why

18   IBM's motion should be denied.   SCO says that IBM's

19   motion should be denied because the final disclosures

20   were not supposed to be what it calls co-extensive with

21   expert reports, and, Your Honor, I agree with SCO that

22   final disclosures and expert reports are not the same

23   thing.   The final disclosures were, as has now been made

24   perfectly clear, to define the bounds of the parties'

25   claims.   No material not identified with specificity in

18

1  the final disclosures was to be used in the case as a

2  supposed basis of liability.

3      The expert reports, Your Honor, are simply an

4  expert's opinions with respect to material properly

5  identified in the final disclosures.  That does not mean,

6  however, that SCO may use its expert reports under the

7  guise of simply offering argument or explanation or

8  analysis.  They may not identify entirely new categories

9  of allegedly misused information.  They may not identify

10  any new allegedly misused information.  That's what the

11  Court's order provided, quite plainly.

12      In its papers, SCO suggests, Your Honor, that

13  is no reason why the final disclosures should be held to

14  preclude SCO from, by way of its expert reports, adding

15  new information in support of its claims.

16      Your Honor, I would submit to you that there

17  are at least ten such reasons:  The numerous IBM

18  discovery requests requesting that SCO specify its

19  allegations; the December '03 order of this Court; the

20  March '04 order of this Court; the July '05 order of this

21  Court and the June '06 order of this Court, as well as

22  Judge Kimball's order yesterday affirming that.  There is

23  also Rule 26(e) which requires the supplementation of

24  interrogatory answers; Rule 37(c), which has,

25  effectively, a self-executing provision precluding a

19

1  party from using information that's not disclosed

2  pursuant to Court order; the parties' agreement, Your

3  Honor, and basic, basic fairness, I would submit.

4      If SCO's, what I would call, revisionist view,

5  Your Honor, of what the final disclosures required were

6  correct, then all of IBM's requests and all of the

7  Courts' orders and the parties' stipulation were for not

8  because SCO can now and could, with the submission of its

9  expert reports, simply reinvent its case, which is,

10 respectfully, what we believe happened here.

11      Your Honor, to close, this motion is not simply

12 about sandbagging.  This motion is about sandbagging in

13 the face of multiple Court orders requiring the party to

14 disclose with specificity its allegations.  And the issue

15 presented, I would respectfully submit, is simple:  Is

16 SCO bound by the Court's prior orders and by its

17 stipulation with IBM to confine its claims to the items

18 identified with specificity in the final disclosures, or

19 can it ignore the Courts' orders, renege on its agreement

20 with IBM, and expand its case by way of its expert

21 reports to add new material that it could have disclosed

22 long ago, that wasn't the subject of fact discovery, that

23 wasn't addressed by IBM's experts, was not part of the

24 summary judgment filing and the introduction of which, in

25 this case, would result in what we believe is incurable

20

1    prejudice?

2            Thank you, Your Honor.

3            THE Court:  Thank you, Mr. Marriott.

4            Mr. Hatch.

5            MR. HATCH:  Good afternoon, Your Honor.  We

6    also have a few slides I may use during the course of the

7    argument.  Your Honor, put the way Mr. Marriott did, I

8    understand how that makes this look a little more

9    difficult than I think it really is.  I think we have, in

10   essence, two ships passing in the night here, because our

11   arguments will be very much different than what

12   Mr. Marriott has put forward before you just now.  In

13   large part, we believe that we have complied with the

14   Court's orders and that, in the case of misused material,

15   we have indeed disclosed that as was required by the

16   Court in the 2005 submission.

17           Now, what Mr. Marriott has done in their briefs

18   and in their argument today is they have, in our view,

19   commingled two concepts together; one being the misused

20   material and the second being legal theories regarding

21   structure and analysis involving the copyright,

22   particularly as put forth by Dr. Cargill in his expert

23   report.

24           Now, to give it in context, and I think that's

25   really -- if we get to the core of what this hearing is

                                                        21

1   about, it's about whether or not SCO's experts will be

2   allowed to give the opinions, the complete opinions that

3   they have issued.  I want to make it very clear that IBM

4   has not challenged all of their opinions but only as to

5   things that relate, in their view, to undisclosed and

6   misused information.  Now, that was made fairly clear in

7   the last briefing, and I will just -- I think it will be

8   a little easier for Your Honor -- slide 2.  This was

9   something that was taken from IBM's reply memorandum in

10  support of a proposed scheduling order when we were

11  talking with Judge Kimball on setting the schedule and

12  setting these interim and final deadlines for setting

13  forth misused material.

14          And IBM, itself, said it proposes only that the

15  Court impose deadlines for the parties to identify the

16  alleged misused material.  IBM's proposal requires

17  neither that the parties rely on experts, nor that any

18  experts that might be used by parties finalize their

19  expert reports before the close of all fact discovery.

20          Now, that was important to us at the time

21  because it seemed contrary not only to the schedule that

22  was being proposed but also to Rule 26 and the

23  understanding of the parties that the experts would be

24  required to do all their work, and, in essence, issue

25  their opinions prior to that December 2005 deadline.  So

                                                          22

1  it was made very clear that IBM -- and they are making

2  the position where they are the one proposing the

3  two-part deadline, that they weren't requiring that.

4      And it goes on to say: "Under IBM's proposal

5  the parties' experts would need to reach final

6  conclusions before the close of fact discovery only with

7  respect to the identification of source code and other

8  material that is at issue in this case."

9      And, as Your Honor required, the large fight

10  that was going on at that period of time was over

11  identifying, as Mr. Marriott put it, the version, file

12  and line of source code that he had indicated that they

13  were going to go through line-by-line and try to rebut.

14  What is missed here -- and I think it's very, very

15  important, because what has happened here, particularly

16  if we go through with Dr. Cargill, is he simply is

17  applying Tenth Circuit law.

18      If we go to the Gates Rubber Case, it sets

19  forth an abstraction, filtration, comparison test for

20  determining whether or not there is a copyright

21  infringement.  And, under that test -- and it's well

22  accepted Tenth Circuit law.  As a matter of fact, I think

23  an analysis of the various Circuits on copyright with

24  regards to computer software, the Tenth Circuit is

25  perhaps ahead of almost every other Circuit in

23

1   establishing the law in this area.

2          And it sets forth the test for dissecting a

3   program at various levels of abstraction, starting with

4   looking at the main purpose of the software.  And one

5   goes down through the list:  The program structure or

6   architecture.  Three is the modules.  Four is algorithms

7   and data structures.  And five -- we don't get source

8   code until the fifth level.  And the last is object code.

9          Now, it's not required to find copyright, and

10  under the Tenth Circuit rules that you have to have all

11  these things, but you go through this abstraction

12  analysis, and that's exactly the test that Dr. Cargill

13  applied.  Now, what they are saying now is that he has --

14  and I think he showed you his slide number 17, and I

15  think this is kind of where we're passing in the night a

16  little bit is that he indicated that, yes, we did in our

17  final disclosures set forth header files, specifications

18  and other miscellaneous lines, as he characterized it,

19  and then he put the large -- and I think this is done so

20  much for its dramatic effect.  He has 5 million plus

21  lines.

22          But those are largely from overall structure,

23  overall file system and system calls.  Well, that's

24  because Dr. Cargill is applying Tenth Circuit law.  He is

25  applying his expert opinion, a structural analysis under

24

1   the Gates Rubber test established by the Tenth Circuit

2   and looking at the main purpose, the program structure,

3   architecture, modules, algorithms, data structures to

4   show that there is a copyright infringement here.

5           THE Court:  Mr. Hatch, let me ask you this,

6   though:  If I accept your premise, then what is the force

7   and effect of each of the previous orders which required

8   SCO to answer with specificity?

9           MR. HATCH:  Well, but we have, Your Honor,

10  because, as he's pointed out, as to that particular

11  copyright claim, it is -- for instance, we talked about

12  JFS files.  The entire JFS file was disclosed.  I think

13  that was lost a little bit in his argument.  We say the

14  entire JFS file was taken in the copyright infringement

15  theory.  When we were talking about that, specifically

16  what the orders he was talking about is version, line and

17  file.

18          Those are not required for making this

19  particular expert opinion under the Gates Rubber test.

20  The Gates Rubber test doesn't say you have to have that.

21  Now, I understand that version, line and file,

22  particularly with some of the contract claims in this

23  case and some of the copyright claims, those would be

24  required, particularly if you were going show a literal

25  infringement, a literal copying.

25

1        Now, if you're going claim a literal copying,

2   there is no question you have to show the version, line

3   and file so you can do a side-by-side analysis, and we

4   did that in our December disclosures.

5        THE Court:  Let me get back to my question,

6   though:  If I accept your premise and were to deny IBM's

7   motion, doesn't that render meaningless everything we've

8   done up 'til now and every order that has been entered by

9   the Court?

10        MR. HATCH:  Absolutely not.  I think it renders

11   meaningless the Tenth Circuit's test for establishing it

12   because we did set forth, with specificity, for instance,

13   that we believe they infringed the copyrighted JFS files.

14   Mr. Marriott, though, now wants -- says, "You should find

15   against them and not allow them to do that because they

16   haven't shown version, line and file."

17        What I am saying is that that's not the Tenth

18   Circuit case in that instance.  And that's why I don't

19   want to mix up the contract claims and copyright claims

20   because we have shown what you can do.  And, as Rule 26

21   requires, and the Court has nowhere said -- given an

22   order saying Rule 26 doesn't apply in this case.  Rule 26

23   clearly sets forth that it's expected, particularly where

24   the Court sets a scheduling order with an expert report

25   deadline and an opportunity to depose experts, that that

26

1    is the opportunity for that to be disclosed.

2         That issue is raised, I think, at length in

3    their reply memorandum.  In the reply memorandum, they,

4    after we -- and I'll go back to the other experts to deal

5    with some of these other issues with regards to

6    particularly JFS and Dr. Ivey and Mr. Rochkind's expert

7    opinions.  They don't respond to that in their reply

8    because I think if they had asked, they would have found

9    out that there wasn't an issue there.

10        But as to Dr. Cargill, they say:  Well, why

11   weren't these copyright theories disclosed in Answers to

12   Interrogatories?  Well, Rule 26 -- and I think, Your

13   Honor, I've put the relevant parts -- it's in a slide, I

14   think 14 and 15 in your book.  It says, "Rule 26(e)

15   provides that a party is under a duty seasonably to amend

16   a prior response to an interrogatory only if the

17   additional or corrective information has not otherwise

18   been made known to the other party during the discovery

19   process."

20        And then, on the next page, Your Honor, we get

21   to the advisory notes for interpreting that, and it says,

22   "Where the Court has provided for and/or parties have

23   agreed to a period of specific expert discovery,

24   including expert reports and depositions, it is the

25   specific period of expert discovery that serves as the

27

1  means of interrogatory responses."

2       So, what the rule is essentially saying is --

3  well, they have said that, well, you didn't disclose

4  anymore detail.  And Mr. Marriott got up and said that in

5  his argument that -- why didn't you respond to the

6  interrogatories?  The rule is very clear, and that's what

7  we applied, is that when an expert is going to address

8  these types of issues; not the version, line and file,

9  but the structure, selection, those types of arguments

10  that are under the Gates Rubber test under the Tenth

11  Circuit, those have been disclosed.  An expert report was

12  given.  The deposition was allowed to be taken, and it

13  went forward.

14       Now, they, in response, in their brief, have

15  indicated that they were somewhat -- I think they called

16  it astonished that -- about these new claims that they --

17  in the reply brief, I think they used the word, you know,

18  it's completely changed the whole concept of this case

19  and that somehow what Dr. Cargill, in particular, in

20  making his analysis of the copyright claims, that this is

21  somehow changing the whole case.

22       Well, that's just simply not true because if we

23  go all the way back -- if we go back -- and I would refer

24  Your Honor to pages 9 through 11 in the booklet I gave

25  you.  We can go back as far as March of 2004 where IBM

                                                    28

1    clearly understood, and the first cite there is from

2    their Second Amended Counterclaims, where they allege

3    that SCO threatened to sue IBM for copyright infringement

4    with respect to Linux.

5         And we go through each one.  May 18, 2004.  IBM

6    asserted that one critical element that SCO must show is

7    that Linux is substantially similar to the alleged

8    copyrighted work.  We're talking about a copyright claim.

9    May 11 and July 9, they attach to their pleadings the

10   2004 Fortune Magazine article called "Gunning for Linux,"

11   which said SCO is complaining not just about verbatim

12   copying -- now, that's version, line and file, remember,

13   version, line and file -- but also about the purloining

14   of the code's structure, sequence and/or organization.

15   There's two different things there.  And that is the

16   subject of an expert opinion.

17        You can't show version, line and file for

18   structure, sequence and/or organization.  That's based on

19   the Tenth Circuit case on an overall look of the factors

20   that I stated to you out of the Gates Rubber case.

21   That's not a version, line and file analysis.  And so

22   that's why I say, in essence, what IBM is doing here --

23   and this is why I don't think Judge Kimball's order

24   applies to the matters that we are talking about today.

25   I understand they want to meld it into it.  And he

                                                        29

1   says -- you know, he says it's dispositive.  Well, it's

2   not dispositive because the analysis that Dr. Cargill is

3   doing isn't a version, line and file analysis.

4        And they have known that since 2004.  Now they

5   talk about surprise.  They talk about undue surprise.

6   They talk about inability to cure, and yet they have

7   known since 2004 what that theory is.  The only thing

8   they haven't had is one thing, until May of 2006,

9   Dr. Cargill's report.  Well, that wasn't due until then.

10  And what they are trying to do now is kind of reverse the

11  whole order.  And even though in the -- from their brief

12  that I read, where they said:  "Oh, we understand you

13  don't have to disclose your expert analysis and theories

14  as of December of 2005," now, essentially, they are

15  telling Your Honor you should, by this order, say that

16  they should have done that by December of 2005, despite

17  the fact that the Court order from Judge Kimball that

18  said you've got until May of 2006 to do it.

19       They knew about it in 2004.  They knew it was

20  coming.  They prepared for it, and we disclosed it.  Now

21  they talk about undue -- I mean surprise.  They talk

22  about it's -- they can't cure now.  I find that kind of

23  interesting, too.  And, by the way, I didn't go through

24  all of these.  Pages 9 through 11 give numerous examples

25  of their not knowing about these copyright claims.  But

30

1    what they did here -- and I think this is what's, I
2    think, a little not right -- and what -- and we heard
3    Mr. Marriott talk about what's fair -- is IBM really
4    created their own undue prejudice here because, despite
5    the fact that since 2004, at least, and probably before
6    that, they knew this copyright claim, based on structural
7    analysis, was coming.  And the only way it could come is
8    through an expert report.
9            I'm not sure what they think we should have
10   said in the December submission.  That was for, remember,
11   misused material, where you're talking about the entire
12   structure being in.  I think if we had put a line that
13   said the entire structure, they would have been in
14   saying, "Give us version, line and file, but, again, that
15   wasn't the analysis.".
16           But what did they do?  They go -- and I'm on
17   page 16 of the slides I gave you.  They had an
18   opportunity to ask Dr. Cargill and the other experts,
19   when they deposed them, about these theories.  And they
20   intentionally chose not to do so.
21           In Dr. Cargill's deposition, for instance, IBM
22   asked no questions about his structural analysis or
23   collective work analysis.  And the collective work
24   analysis he gave was under the Tenth Circuit's law in
25   Transwestern.  It wasn't, again, a version, file and

                                                        31

1    line.   It's under Tenth Circuit law that establishes that

2    that be done under an expert analysis.

3           And then, in the Dr. Rochkind deposition,

4    again, IBM asked no questions about the material they

5    complain about here either.  So, they purposely shut

6    their eyes, even though since 2004 they knew it was

7    coming, because they wanted to come here and make this

8    kind of an argument, which is somewhat disingenuous,

9    because they know it doesn't revolve around version, file

10   and line.

11          Now I want to go back for a minute because I

12   got a little bit ahead of myself.  I want to talk about

13   some of the other items that they -- that IBM has

14   complained about here that we did not disclose in the

15   December 2005 submission.  And one of the other experts

16   that they challenged his opinion, and they want you to

17   limit his opinion by the course of their motion today, is

18   Dr. Evan Ivey.

19          Now, Dr. Ivey is the expert who gave an opinion

20   on these journal file systems, the JFS systems that are

21   at issue here.  Now, in our December submission, we

22   disclosed to IBM that we believed the entire JFS file

23   system was misused material.  Now, I don't think

24   Mr. Marriott disputed that.  I think what he said -- and

25   certainly in his briefing -- but in his argument was,

                                                          32

1  "Well, we wanted specific lines."

2      And, in this particular instance, we indicated

3  the entire file was misused information.  And we also

4  identified the JFS system as a derivative of the UNIX

5  System V.  Now, SCO provided examples of that.  Dr. Ivey

6  concluded his report saying that the JFS was a derivative

7  of the UNIX System V system and that IBM disclosed the

8  entire file system of Linux.  That's why we claim the

9  entire thing.  We believe IBM disclosed the entire file

10  system into Linux.

11      Now, IBM's complaint is that Dr. Ivey

12  references additional files in his JFS analysis that were

13  not included in the December submission.  That's just not

14  true.  SCO disclosed -- the JFS was a particular area of

15  concern for us, and SCO disclosed, one, the entire

16  system.  The only additional files that were mentioned by

17  Mr. Ivey are simply further examples of how IBM's JFS

18  system derived from System V.

19      Those further examples were not discrete

20  misused material.  Now, the items also -- and part of the

21  analysis here, since this is a discovery motion, has to

22  be -- under Tenth Circuit law, has to be whether there's

23  any undue prejudice, even if you were to find the facts

24  are as IBM states they are.

25      And, in response to Dr. Ivey, our expert who

33

1    gave this analysis, they put up a Dr. Davis.  And he
2    concluded, of course, that JFS was not derived from
3    System V, but he did it by a machine comparison.  He
4    didn't go line-by-line or any of the things that Dr. Ivey
5    used.  It was totally irrelevant to his analysis.  He
6    just did a machine comparison, and so they couldn't
7    possibly be prejudiced because it had absolutely nothing
8    to do with the way Dr. Davis looked at it.  He didn't
9    even -- he didn't evaluate or analyze any of the examples
10   that we gave, even in December.  And so -- and they have
11   conceded we gave examples in December.
12          So, as to those items regarding Mr. Davis --
13   Mr. Ivey's expert opinion, we disclosed all of them.  We
14   don't concede that we didn't disclose anything.  We did.
15          The second category of material IBM challenged
16   is the testing material cited by Mr. Rochkind, our
17   expert, again, his opinions on testing technology.  Now,
18   he concluded in his report that IBM contributed certain
19   valuable testing technology to Linux.  IBM's complaint is
20   that his analysis of the testing technology included,
21   again, additional material not included in the December
22   submission.  Again, we don't believe that that is true.
23          The files that they are disputing were not
24   material -- were not material that SCO claims was
25   misused.  These were additional testing files.  And by

34

1    that what I mean is what he was simply doing, in

2    virtually every file that IBM is complaining about, is

3    using files, not necessarily because they were misused,

4    but to set a foundation to put, say, a particular IBM

5    programmer in a particular -- set a foundation to put him

6    in a particular time and place to show that he -- this

7    particular programmer was the one that was making

8    contributions.

9            Now, that's not misused material, and that was

10   what was required under the Court's order.  It's just

11   further support of Dr. Rochkind's opinion that IBM was in

12   a position where they contributed material improperly

13   into Linux.

14           He complains -- they complain -- IBM also

15   complains about two documentation files.  Now, that's

16   also not relevant here either because the document files

17   that they are talking about were simply used by

18   Dr. Rochkind to explain that an SPIE test, which were

19   disclosed in the December filing, and MPPIE tests, are

20   two terms for the same thing.  So, again, it's not a

21   misused file, it's part of his expert analysis showing

22   that the things that were disclosed were improperly used.

23           And so we don't believe in either the case of

24   Mr. Ivey or Mr. Rochkind there's any analysis there, and

25   that's why I said earlier that those two arguments --

                                                        35

1   when we filed our opposition brief, in their reply they

2   don't address those any further, and I think, in part,

3   because there really is no other answer to those issues.

4           Now, the last thing you heard talked about --

5   not the last thing but one you heard talked about, and,

6   again, we're back to Dr. Cargill's report.  Mr. Marriott

7   talked about system calls.  Now system calls are specific

8   words that developers use to come up -- to come up with

9   to talk to an operating system to get it to perform

10  certain tasks.

11          Now, I think Mr. Marriott gave you a slide that

12  indicated that we didn't disclose any system calls in

13  December.  That's just absolutely not true.  I will tell

14  Your Honor, we disclosed -- and I don't know the exact

15  number -- but we disclosed a lot of those.  And here is

16  the one instance where there were additional materials

17  disclosed; the only instance, I think, but I will explain

18  to Your Honor why I don't think it's particularly

19  relevant.

20          Dr. Cargill did disclose some additional system

21  calls, okay?  But those were part of his overall

22  structural analysis, and they were not relied on

23  specifically for them as a particular misuse.  They were

24  to show, as additional examples, as the ones that had

25  already been disclosed, of the structural copyright

36

1  problems, to show that this was an overreaching thing, to

2  show that IBM also understood that.  And they, through

3  their expert, understood a structural analysis was being

4  made.

5         IBM's expert, Dr. Kernagen -- I hope I'm

6  pronouncing that right -- he didn't address system calls

7  individually.  He addressed it as an overall system,

8  which is the way I have been stating we should be looking

9  at it -- the Court will look at it at trial.  In other

10 words, there is no prejudice.  There is nothing that they

11 have to look at specifically regarding system calls to be

12 able to understand SCO's legal analysis and theories

13 regarding the copyright claim in that regard.

14        Mr. Marriott mentioned the stipulation.  The

15 stipulation, I'm not sure why it's relevant here.  It has

16 very limited relevance.  That was a reaffirmation, I

17 think is the best way to describe it, of the December

18 submission and, as I have argued, I don't think we have

19 violated the December 2005 submission.  It only addressed

20 discovery issues, and it did not address -- it did not,

21 as I don't think Mr. Marriott said, and I hope the Court

22 didn't think that he was alluding to that somehow that

23 stipulation changed the order -- the December -- the

24 order for the submissions on December 2005, and it

25 certainly did not say that expert reports giving legal

37

1   analysis -- I mean expert opinion and analysis of

2   structure were not going to be allowed in May of 2006 in

3   amending Judge Kimball's scheduling order in that regard.

4           THE COURT:  Mr. Hatch, why, if there are issues

5   that remain unclear at the time an order is entered, a

6   decision made, is that not brought back to the Court for

7   consideration?

8           MR. HATCH:  If the order is unclear?

9           THE COURT:  If the order is unclear as to what

10  the meaning of the December cutoff time is and what it

11  includes, why do those matters remain for discussion at

12  this late day?

13          MR. HATCH:  Because I don't believe they were

14  unclear.  I believe they are being made -- they are being

15  made -- there is being an attempt to make them unclear

16  now.  I don't think they are unclear.  As my argument has

17  made clear, we understood those, and we disclosed the

18  misused information.  The types of materials they are

19  complaining about now aren't part of that order is what

20  I'm arguing, and I don't think it's unclear at all.  And,

21  as a matter of fact, that's why I have argued and set

22  forth, one, from their brief, that they understood

23  that the experts would come later and that the experts --

24  and under Rule 26, it says that -- it understands that

25  when a Court orders that period, that the experts are

                                                        38

1  going to produce something later.

2          And so it would defy any logic --

3          THE COURT:  Isn't there a difference between --

4  that the experts would produce explanation later or give

5  a more detailed opinion, isn't that something different

6  from expanding the context of the information at all?  If

7  you were required, in order after order, to provide, with

8  specificity, the information, how can you then order --

9  or argue now that that should be totally expanded?

10         MR. HATCH:  Because we did provide that, Your

11 Honor.  What the expert does is it puts meat on the

12 claims.  I mean, I don't want to get into a position

13 where I say the expert, in giving his opinion -- I think

14 there is a fine -- I don't even think it's a fine line.

15 I don't think Your Honor is saying that an expert, to

16 give specificity, has to give his whole opinion before

17 its due under the Court's scheduling order.

18         THE COURT:  No.  But his whole opinion cannot

19 be then used as a mechanism by which to expand what you

20 couldn't get before.

21         MR. HATCH:  I understand, but I don't -- what

22 I'm saying is they didn't do that.  Where did he do that?

23 I mean, what IBM hasn't got up and told you is -- what is

24 it they would have had him say to disclose this structure

25 analysis that, for instance, Dr. Cargill gave?  Because

                                                        39

1   they knew about it.  We just read -- I gave you three

2   slides that show they understood that since 2004, so I'm

3   not sure what more specificity to let them know that

4   there was a copyright claim, and they even used the

5   words -- and remember, we read them -- "a structural

6   claim."

7          That's what Dr. Cargill did.  They knew that in

8   2004.  So, what more specificity would they need?  They

9   haven't identified that.

10         THE COURT:  Well, then, let me go back to

11  another question.  You said earlier in your argument

12  something to the effect that even if the Court were to

13  find that there had been, in essence, a violation of the

14  December cutoff date, that they weren't prejudiced.  Are

15  you conceding?

16         MR. HATCH:  Oh, absolutely not.  I made that as

17  a matter of argument because, even if the Court -- and

18  let me be very clear.  I don't concede it at all.  But

19  even if the Court, for whatever reason, were to give

20  credence to this, the Tenth Circuit -- and that's a very

21  good point, Your Honor.  I had my associate Mr. Douglas

22  pull the Tenth Circuit cases regarding prejudice, and I

23  was able to give him some guidance on that because I

24  would like to think it's a seminal case in the Tenth

25  Circuit that is one that I argued there.  Probably not,

40

1    but they -- the Tenth Circuit has been very clear.  It

2    has a four-part test.

3          But what it potentially boils down to is that

4    even in a situation like this, even if Mr. Marriott was

5    right, there has to be a prejudice to him, and the Court

6    has been very clear that basically it would have to

7    disrupt the trial.  And there are no cases -- there are

8    no cases where a Court has excluded, merely on a  --

9    excuse me, I read that wrong.  Every one of the cases has

10   said that the exclusion of evidence is disfavored because

11   airing of all issues is the goal of our judicial system.

12   And you get cases where even -- where this comes up where

13   something new -- allegedly new -- we're saying here it's

14   not new, it's just a theory that came and was produced

15   in a timely fashion when Judge Kimball ordered it to be

16   produced, i.e., in an expert opinion.

17         But there are even cases where those types of

18   things are disclosed at trial, and if it can be cured

19   there -- and I have been involved in those kind of trials

20   where someone came up with something new and we objected,

21   and the Judge said, "You can take the deposition tonight,

22   and we'll start again tomorrow at nine."

23         THE COURT:  This won't be cured by an overnight

24   recess.

25         MR. HATCH:  I understand that, but what I'm

                                                    41

1   saying is:  Here there's not even a cure because I've

2   gone back and showed Your Honor, from their own briefs,

3   where it doesn't even have to be cured.  They have been

4   aware of it forever.  And where Mr. Marriott says we'd

5   have to go back -- the reason he -- remember why he's

6   prejudiced?  One.  In his brief, he said the biggest

7   prejudice was that we're coming up on the trial.  Okay?

8        No mention of that today because we don't have

9   a trial date anymore, and largely at the urging of IBM,

10  who has now argued that the Novell case, which I think

11  Your Honor is also aware of, should go first.  And that's

12  not even set for trial until September.

13       And my point is:  The Tenth Circuit is very

14  clear that where you have time before trial to cure an

15  alleged problem, you -- the Court should always give it.

16  But Mr. Marriott's next argument and the reason I think

17  he gave the slide 17 is he put this 5 million plus lines

18  of code, and he has indicated to you:  Gee, that's going

19  to be a huge prejudice because we're going to have to go

20  through -- what did he say -- 21 man years to go through

21  those lines of code.

22       Well, Your Honor, I've got one fairly simple

23  answer for that.  I think that is a complete red herring

24  because, you know, we had an expert.  What they are

25  talking about is countering our expert, and that is

42

1  Dr. Cargill.  Dr. Cargill didn't spend 21 man years, did

2  he?  And the reason he didn't is because the Tenth

3  Circuit doesn't require that under the Gates Rubber case.

4          Dr. Cargill followed Tenth Circuit law, and

5  Tenth Circuit law has you look at the structure.  It has

6  you look at the items that are listed from that case.  It

7  doesn't say -- and this is why I think we're kind of

8  talking over each other and they are trying to get back

9  to version, file and line.  It isn't relevant.  And

10  Dr. Cargill was able to do it in a relatively short

11  period of time.  But they want Your Honor to say that,

12  oh, Tenth Circuit law requires version, line and file.

13  It does not.

14          And that 21 man years to do this is just not

15  relevant.  If Dr. Cargill can give the opinion in a

16  period of months, certainly they can cross examine on it

17  and do the same thing.  And, indeed, they have.  They

18  have put in expert reports to contradict these people.

19          THE COURT:  I can't help myself.  It would

20  probably, then, take only about seven woman years, right?

21          MR. HATCH:  I'm not going there, Your Honor.

22          THE COURT:  Go ahead.

23          MR. HATCH:  But, you know, I have cited Tenth

24  Circuit law, and the cases -- I would say the premier

25  case on that really is Woodworkers, the case I argued,

43

1  and this case called Jacobson vs. Deseret Book, both

2  Tenth Circuit cases.  The Jacobson case actually cites

3  Woodworkers, which basically says the challenged behavior

4  must substantially have interfered with the aggrieved

5  party's ability to both prepare for and proceed at trial.

6  We don't even have that date, and all those cases talk

7  about the ability to cure.

8        Now, they cited one case.  And it's pretty

9  telling to me, the case they cited was a District Court

10  in an unpublished opinion.  And this is what they are

11  trying to get you to rule on, on prejudice, an

12  unpublished District Court opinion out of the Northern

13  District of Illinois.  That is a Seventh Circuit case.

14  Well, if you go to the published opinions in the Seventh

15  Circuit, you get -- you get the exact same rule as in the

16  Tenth Circuit.

17        And it's very interesting because if you go to

18  a case called Keech vs. U.S. Trust, which is at 419 Fed

19  3d, 626, and at page 640 -- this is a 2005 case out of

20  the Seventh Circuit -- it sets forth the exact same test

21  as the Tenth Circuit.  And guess what it cites?  The

22  Woodworker case.  It cites the Tenth Circuit case.  It

23  says you should only exclude the evidence if there is no

24  ability to cure.

25        And that's certainly not the case here.  It

44

1  would be the case if Mr. Marriott is right and they have

2  to go look at 5 million plus lines, but how did our

3  expert do it?  Our expert's theory is a structure theory,

4  and that doesn't require that.  And he ignored that.

5      THE COURT:  Mr. Hatch, I'm going to give you

6  five minutes to wrap up on this, and then I'll give you

7  each ten, 15 minutes.

8      MR. HATCH:  I think that's basically -- let me

9  just real quick, because I kind of -- oh, they are

10 pointing out that I may have misspoke, and it's a point

11 that I think is important.  The JFS -- and I'm sorry, I

12 did do that.  When we are talking about the JFS, those

13 are contract claims as well.  That's one of the

14 reasons -- there we are looking -- in large part, we are

15 looking at specifically what was taken to show the

16 contractual violations under version, line and file.  The

17 JFS is a contract -- is part of a contract claim.

18      When I'm talking about Dr. Cargill dealing with

19 our copyright claims, that's dealing with the structure

20 claims.  I think that is what I have now.

21      THE COURT:  Thank you, Mr. Hatch.

22      Mr. Marriott.

23      MR. MARRIOTT:   That you, Your Honor.  Nothing

24 I heard, Your Honor, suggests or, I think, in any way

25 recommends the right result here is to deny IBM's motion.

45

1   Let me address, if I may, Mr. Hatch's arguments.  First

2   Mr. Hatch -- this is not in the order in which he made

3   them.  I will begin in somewhat reverse order.  He

4   suggests in closing, Your Honor, that the Court, in some

5   respects, lacks the authority here and there isn't ample

6   authority to permit the granting of IBM's motion.  And he

7   refers to several cases.

8           There is ample authority, Your Honor.  I would

9   cite the Court to the cases at pages 19 and 20 of the

10  book that we provided Your Honor.  I would cite the Court

11  to its own decision of 6/28 and to Judge Kimball's

12  decision of yesterday.  The burden here is no more than

13  the burden that IBM faced with respect to its preclusion

14  motion, and as I indicated at the outset, this is a far

15  more compelling case, notwithstanding Mr. Hatch's

16  arguments, which simply cannot be squared with the facts

17  as they exist in SCO's final disclosures.

18          Moreover, Your Honor, as to what the Court's

19  authority scope previously itself acknowledged, it even

20  invited the Court to not enter the order requiring the

21  final disclosures because it said the Court had a full

22  arsenal with which to deal with exactly this situation,

23  and I refer you to tab 9, Your Honor, of our book for

24  that.

25          Now, Mr. Hatch read from IBM's brief in

46

1   connection with our request that Judge Kimball enter the

2   deadline for final disclosures, and it's one of the

3   slides in SCO's papers.  And he suggested to Your Honor

4   that IBM had said to Judge Kimball and to SCO that in

5   entering the final disclosure deadline, the parties need

6   not worry about experts because that's something we'll

7   deal with later on.  I would suggest, Your Honor, that

8   you look at the brief that IBM attached to its reply

9   papers and submitted to Judge Kimball in connection with

10  this request, which says the opposite of what Mr. Hatch

11  represents.

12          At page 4 of that brief we said, quote, "Unless

13  the Court imposes a deadline by which the parties must

14  identify the allegedly misused material then they may not

15  learn the identity of the material they are alleged to

16  have misused until after the close of fact discovery or

17  potentially even expert discovery, when it would be too

18  late to prepare a defense to claims related to the

19  material."

20          At page 5.  "No party could contend that

21  another party --" this is IBM's proposal.  "No party

22  could contend that another party misused material not

23  identified by the August 11 --" which was then the

24  date -- "deadline.  No expert could opine as to the

25  misuse of material not identified by the deadline."

47

1          We could not have been more clear that expert

2     reports, as we proposed it, were not to be used as a

3     means of adding, identifying new allegedly misused

4     material.

5          And finally, on page 6, your Honor, of the same

6     paper: "Moreover, requiring the parties to disclose the

7     allegedly misused material before the close of all fact

8     discovery will allow the parties to engage in meaningful

9     expert discovery and refine the issues in dispute for

10    summary adjudication.  The parties may or may not require

11    the assistance of experts to identify the material they

12    contend one another misused.  If they do, then their

13    experts can assist them in making their disclosures."

14         "Expert discovery is not the time, however, for

15    identifying the allegedly misused material.  It should be

16    done in advance of expert reports so that the parties'

17    experts can focus on what is really in dispute.  It would

18    make no sense and would plainly be unfair to allow either

19    party to identify the allegedly misused material for the

20    first time by way of one of its experts," which is

21    exactly what has happened, Your Honor, in this case.

22         Mr. Hatch waxes on, Your Honor, about the Gates

23    Rubber case.  Well, Gates Rubber was the law at the time

24    this case began.  This structure, sequence test to which

25    Mr. Hatch refers is nothing new.  If it were part of

                                                      48

1  SCO's case then, as it claims by reference not to its

2  discovery responses, Your Honor, but to a newspaper

3  article and statements made to a reporter; if it were

4  part of its case then, great.  It should have disclosed

5  the particulars of that claim pursuant to the Court's

6  orders.

7        Mr. Hatch suggests that somehow the word

8  "structure" tells IBM something particular about its

9  allegations.  It says essentially nothing, Your Honor.

10  It's essentially like saying that because the party knows

11  the party with whom it's in litigation has a contract

12  claim or a claim for a breach of a disclosure provision,

13  that somehow it's understood what it is precisely the

14  case is about.

15        Mr. Hatch asked the question:  What is it that

16  IBM wants to know about the structure of Linux that it

17  somehow didn't know from the beginning of the case?  What

18  we wanted to know, Your Honor, and what the Court

19  required SCO to provide was a detailed, specific

20  identification of SCO's theories.  And I would refer you,

21  if I may, to tab 6 of the book.

22        What we wanted, Your Honor, we set out in our

23  discovery requests -- and I won't burden you with all of

24  them -- the same discovery requests that Your Honor

25  adopted, as written, into her orders, multiple orders,

49

1    words with which Judge Kimball has now, as of yesterday,

2    concurred.

3         And in Interrogatory No. 12 we said, "Please

4    identify with specificity all source code and other

5    material in Linux to which it has rights."

6         And then in 13, "Describe in detail how IBM is

7    alleged to have infringed plaintiffs' rights."

8         To tell IBM that it knew there was a -- that

9    this was a structural related case is to tell us nothing,

10   Your Honor.  The statements that Mr. Hatch seizes on as

11   somehow disclosing that IBM knew and that support

12   Mr. Hatch's assertions that we have known all along

13   precisely what this case was about, those statements were

14   made prior to the Court's -- the Court's order requiring

15   that SCO identify -- I'm sorry -- they were made prior to

16   the summary judgment motion that IBM made and prior to

17   Judge Kimball's order in which he recognized that SCO had

18   not in fact offered any competent evidence of

19   infringement.

20        So, apparently, Your Honor, the notion that

21   that was known in particular is simply unsupportable by

22   the facts here.

23        Now, Your Honor asked a question of Mr. Hatch

24   of why it is that the position SCO takes here would not

25   gut the Court's orders.  And the answer you got, Your

                                                          50

1   Honor, respectfully, was a non-answer.  The answer you

2   got was that JFS is an important part of SCO's case and

3   that SCO identified the JFS file from the beginning of

4   the case, and it's part of their copyright case,

5   Mr. Hatch said.  And then he stood and corrected himself

6   and said it was both part of the contract and the

7   copyright case.

8           It's part of -- according to the final

9   disclosures, Your Honor, it's part of the contract case.

10  It's only part of the contract case.  Mr. Hatch suggested

11  that there was a single file that was disclosed and that

12  we have known that from the beginning.  There was a JFS

13  file that was disclosed.  It was in the final

14  disclosures, and this motion is not about that file.

15  This motion is about the other files which are identified

16  for the very first time in SCO's expert reports.

17          Mr. Hatch talks much, Your Honor, of this

18  notion of non-literal infringement, and the suggestion

19  seems to be that if your case is about non-literal

20  infringement, you are free and clear of any order of the

21  Court, of any discovery request, of any obligation

22  whatever to tell your adversary what specifically the

23  case is about.  It's similar, Your Honor, but worse than,

24  I would submit, SCO's methods and concepts argument.

25          The idea there was:  This is about methods and

                                                          51

1    concepts, so there is no version, file and line

2    information to disclose.  Well, that argument, Your

3    Honor, as you well know, was rejected.  It was rejected

4    by Your Honor.  It was rejected by Judge Kimball.  And

5    the allegations here about non-literal infringement

6    somehow not being something that SCO was required to

7    disclose, amount to saying, Judge, that the more vague

8    the allegation, the more abstract it is up from the

9    actual code, the less they have to tell us about it.

10        So, you know, if it's about specific source

11   code, we can be told, but the more abstract they choose

12   to make their theory, the less we get to know about what

13   the theory is.  The opposite is true, Your Honor.  As a

14   case gets more abstract, more explanation, more

15   particularity and more detail is required, which is why

16   our order -- which is why our request of SCO and of the

17   Court was that they be required to provide specificity

18   and detail.

19        That doesn't mean less with respect to

20   so-called non-literal elements, it means more.  Saying,

21   Your Honor, that they mentioned a couple of lines of code

22   in the final disclosures, and, therefore, that was enough

23   to tip us off to this notion of non-literal infringement,

24   Your Honor, is like saying that the mere mention of a

25   couple of lines of code in the final disclosures is

52

1    enough to tell us that the entire system was claimed.

2    It's like saying the use of a word is enough to disclose

3    to us that the whole English language is being claimed or

4    that the mention of a brick and mortar or of nails and

5    wood somehow tells us the particulars of a structure.

6              If structure is what SCO wishes to claim, and

7    they are now citing their own public statements of having

8    approached this theory years ago, then we should have

9    been told what it is in its particulars.  What it is it

10   about the structure?  What is it about the sequence?

11   What is it about the organization?  We have never been

12   told that, Your Honor.  The first suggestion of that was

13   the Cargill report.

14              Mr. Hatch suggests there's no big deal here.

15   Just go out and do a report like Cargill.  The Cargill

16   report, Your Honor, is rife with generalities.  IBM is

17   accused of having, in a still abstract and ill-defined

18   way, failed to disclose the structure, which we didn't

19   hear about in any particular way, until SCO's expert

20   reports.

21              Your Honor, what does IBM want?  Again, what we

22   want is the particulars of exactly what it was.  That's

23   what they were required to provide.  That's what they

24   didn't provide.  Now, Mr. Hatch has suggested, again,

25   Your Honor, that IBM knew all along.  And I don't want to

                                                          53

1   belabor this point too much, but, again, the suggestion

2   of -- because the word "structure" was used, we knew, is,

3   frankly, absurd.

4           I mean, the reason we asked discovery requests,

5   the reason that the Court entered orders requiring

6   particularity, the reason, I would submit, that Judge

7   Kimball said what he said, is because merely mentioning

8   the word "structure," like mentioning the word "breach of

9   contract" or "breach of non-disclosure provision" tells a

10  person nothing.

11          It's been suggested by SCO here today and in

12  its briefs that IBM's experts have already looked at

13  these questions.  That's absolutely untrue, Your Honor.

14  That assertion is -- has no support whatsoever.  None is

15  offered in SCO's papers, and the citations to which they

16  refer do not show that, and Professor Kernagen and

17  Professor Davis, who were mentioned here today, made

18  perfectly clear in their papers that they didn't address

19  this.

20          It simply wasn't and isn't possible, Your

21  Honor, to go from a six-month analysis of 326 lines of

22  code, which they labored over, to now be required to

23  disclosure every version -- to be required to evaluate

24  every line and every file of an operating system

25  comprised of millions of lines of code.  Mr. Hatch calls

54

1  the 5-million-line-of-code number faulty, Your Honor.
2  The number is not faulty.  The number is the number that
3  corresponds to that which is disclosed in SCO's expert
4  reports.
5           Now, the suggestion further has been made that
6  we failed here to demonstrate prejudice.  I would suggest
7  to you, Your Honor, that the prejudice here is
8  self-evident.  The Court previously found prejudice.
9  Judge Kimball found prejudice, and it is far more extreme
10 here.  Here we are being asked to do an analysis as to
11 something that has never been disclosed except, now, even
12 in a general way, until SCO's expert reports.
13          326 lines took six months, Your Honor.
14 Evaluating anything and everything would take an
15 extraordinary amount of time.  Mr. Hatch impunes the
16 25,000-man-hour number, which he calls 21,000.  It's not
17 my number, Your Honor.  It's the number of SCO's
18 witnesses who submitted affidavits in support of SCO's
19 opposition to IBM's summary judgment motion.
20          SCO suggested the fact that the trial has
21 slipped is somehow immaterial, and now there's adequate
22 time, and we can run out and knock off a few depositions
23 and ask their guy a couple of questions and all will be
24 well.  That's not the way, Your Honor, that one properly
25 prepares a defense to allegations of copyright

                                                    55

1    infringement.

2         And I would refer you to tab 5 of the book.

3    And if you look, if you would, please, at some of the

4    copyright cases and the principles that are relevant

5    there and the questions that correspond to them, and an

6    enormous amount of effort is required to do a

7    line-by-line, file-by-file analysis of this overall,

8    still ill-defined structure to which Mr. Hatch refers.

9         Mr. Hatch mentions the JFS files and the

10   testing technology files and says he doesn't understand

11   what's happening here, we're like ships passing in the

12   night, that there's really no issue there.  Your Honor,

13   in SCO's opposition papers, what they say, and why we

14   made very little of it in our reply, is that that isn't

15   actually allegedly misused material.  Yes, they concede

16   in their opposition brief, though Mr. Hatch suggests

17   otherwise here today, that that material is in fact, you

18   know, not new.

19        The material is absolutely, unquestionably new.

20   It was not in the final disclosures, and they have not

21   pointed you to a single line in the final disclosures

22   where it's found.  If they showed you the final

23   disclosure item, Your Honor, what you would see is that

24   it says "for example," and they mention the JFS file that

25   was identified.

                                                        56

1    So, the suggestion seems to be that it's enough

2  in the final disclosures to have said "for example," and

3  point to a line so that you can later come around and

4  say, "Well, gee, we gave you an example, so now we can

5  claim anything and everything related to JFS."

6    In SCO's opposition papers, what they say about

7  JFS and the testing technology is, "Yes, this stuff

8  wasn't mentioned specifically in the final disclosures,

9  but it's no big deal because we aren't arguing that IBM

10 misused it.  So, what's the problem?  We don't understand

11 the disconnect."

12    I would say to SCO that, well, then, if that's

13 right, Your Honor, they should have no problem

14 stipulating that the JFS code and the testing technology

15 code is not allegedly misused information.  We read their

16 opposition papers.  We called -- picked up the phone and

17 called them and said, "There seems to be a problem here.

18 You're saying it's not misused.  Why don't we just

19 stipulate that this isn't misused?"

20    They declined.  If the material is not

21 allegedly misused as it relates to JFS and testing

22 technology, then they ought to stipulate to that and not

23 pretend, you know, Your Honor, otherwise.

24    THE COURT:  Mr. Marriott, wrap up, please.

25    MR. MARRIOTT:  Your Honor, with that, I will

57

1  close.

2          THE Court:  All right.

3          MR. HATCH:  A couple points, Your Honor, and

4  I'll try to be brief.  One as to JFS.  Their motion

5  doesn't try to dispose of all JFS, just what they claim

6  was improperly disclosed.  The problem with that is:  If

7  you go to item 1 of the disclosures in December 2005, we

8  disclosed the JFS system.  So to sit here and say there

9  is anything new that wasn't disclosed before is just not

10  correct.  Okay.

11          We have talked about other things, about other

12  examples from System V, but that's another topic.  That

13  doesn't have anything to do with their trying to limit

14  the expert talking about JFS.  It was disclosed, every

15  line.  And he didn't dispute that.  He talked around

16  that, quickly, but I want to make it very clear that that

17  is still there.

18          Now, when we get to Mr. -- Dr. Cargill's

19  report, Mr. Marriott talked about the man hours and these

20  kinds of things.  I find that kind of interesting because

21  the reason I find it so irrelevant every time I come to a

22  hearing and we hear about the thousands of man hours of

23  work that it would take to do something, is that what

24  they are doing when they talk about that, particularly in

25  the context of a copyright claim, is they are completely

58

1    ignoring that that is the exact reason why the Tenth

2    Circuit, in Gates Rubber, gave a test that didn't require

3    any party to do that because the Tenth Circuit

4    understood -- and that's why I think the Tenth Circuit is

5    really the leading Circuit on dealing with copyright in

6    the context of computer software -- they understand

7    nobody can do that.

8            We can't do that.  What makes them think we can

9    do that any more than he can do that?  But the Tenth

10   Circuit recognized that, and that's why they allowed --

11   they provide, in case law, a structural analysis so you

12   wouldn't have to do that.  So, for him to sit here and

13   say they would have to do 25,000 man hours is just

14   completely disingenuous because that's not the law.  That

15   is not how you do it.  They would be doing it improperly

16   under Tenth Circuit law, and it's a complete red herring.

17           And it's made to kind of -- to scare up a

18   prejudice that doesn't exist, and it shouldn't be looked

19   at.

20           THE COURT:  Don't you concede that Judge

21   Kimball has already determined that IBM suffered

22   prejudice?  I recall reading that order.

23           MR. HATCH:  But we're talking about -- in the

24   last order?

25           THE COURT:  I don't believe it was this last

                                                         59

1   order.

2           MR. HATCH:   Which order?  Well, I mean, let's

3   put it in context for that.   In this particular instance,

4   I'm saying they haven't suffered any prejudice because

5   what I'm saying is:   What they are trying to do is -- the

6   only way to give them what they want is -- would have

7   been to file Dr. Cargill's report in December of 2005

8   instead of when Judge Kimball asked it to be filed.

9   Bottom line, that's what this is about.

10          They are trying to keep out an expert report

11  that doesn't rely on new information, it gives the legal

12  theories behind what they understood -- and, again, I

13  read from their own briefs, from 2004 -- they understood

14  was coming.  He puts the meat on it.  He wasn't required

15  to do that prior to May of 2006, from Judge Kimball's own

16  order, and so it makes no sense to sit here and argue

17  that as to -- there were things that the Judge ordered

18  and Your Honor ordered for us to do with specificity, but

19  never was it put the expert theories in specificity at

20  that -- at an earlier date than what was required by

21  Judge Kimball's order.

22          Now, what they are essentially arguing here is,

23  he says, "Well, what are we supposed to do with this

24  Cargill report?"

25          We say -- they say it says all these

                                                          60

1   generalities.  Well, what I'm hearing is a totally

2   different motion.  That is not a motion to exclude

3   evidence because we didn't disclose misused information

4   because we say that's not true.  What they are

5   essentially saying is -- and I think the appropriate way

6   for them to attack the Cargill report, given what

7   Mr. Marriott just said -- if he says it's rife with

8   generalities, it's not supportable, it's not good -- he's

9   essentially saying it's not a good opinion.

10          Well, they've got plenty of opportunities to

11  attack it, then.  They can attack it by opposing it with

12  another expert saying that he's full of -- he's full of

13  it.  He's wrong.  It's a bad opinion.  They have the

14  right to do that through another expert, if they can.

15  They have the right if, for some reason they think his

16  analysis is faulty, to challenge him under a Dauber

17  challenge.  It isn't to come in and try and get some

18  technical way to throw the expert out.

19          It's isn't to come in and claim that he should

20  have given his opinion in December, 2005, when it wasn't

21  due until May of 2006.

22          He did not say -- and I said this in my opening

23  argument.  What is it that we should have said about

24  Dr. Cargill before he gave an opinion?  And he didn't get

25  up and tell you what he should have said.  The most he

                                                        61

1  says is, "Gosh, if he had given us lines -- version,

2  lines and file, then we would have had something to go

3  on."

4          But that wasn't required.  We would have never

5  given him that because that's not the analysis that we

6  were making.

7          He indicated the prejudice is self-evident.

8  That's another way of saying that I don't have a

9  prejudice that I can specifically speak to.  Then he went

10  back to the lines and code again.  I just don't think

11  that's it.  He talked about the 25,000 man hours.  That's

12  not prejudice because that's not required here.  No one

13  is asking him to do that.  We didn't do that.  You can't

14  talk about -- we're not facing a trial.  He has the

15  ability to enter an expert report.

16          I would say, Your Honor, and I think -- the

17  remedy I have seen Courts give, and I don't think it's

18  particularly appropriate here, but the remedy I have seen

19  is -- and the reason I don't think it's appropriate -- is

20  giving them another shot to depose, for instance,

21  Dr. Cargill, is because they refused to ask him about his

22  opinion on these things.  It was sitting there in front

23  of their face, and they didn't ask -- they had the right

24  to ask about and then argue later that it's not relevant,

25  argue later that it's a bad opinion, but they didn't do

                                                        62

1  that.

2         So, I think they had that, but if there was

3  even a slightest bit of prejudice, because somehow Mr. --

4  that IBM doesn't understand Dr. Cargill at this point,

5  then they would be -- the appropriate remedy would be to

6  give them an opportunity to retake his deposition for a

7  limited period of time on that specific subject and then

8  their expert can -- their expert can rebut that.

9         But he hasn't asked for that here.  He has

10  asked for an extraordinary remedy that Tenth Circuit law,

11  Seventh Circuit law, virtually every Circuit in this

12  country says is the disfavored one, which is:  He wants

13  to exclude evidence because he wants to avoid seeing the

14  merits.

15         If the merits are so bad, as he says, then

16  counter it.  Counter it with an expert.  Counter it

17  with a Dauber petition.  Counter it with something, but

18  don't come in and make technical arguments and try to get

19  out of substantive claims that way.

20         Thank you, Your Honor.

21         THE COURT:  Thank you, Mr. Hatch.

22         Counsel, I'm prepared to rule.  The Court

23  orders as follows:  That, as provided in this Court's

24  order of July 1 of 2005, agreed to by the parties through

25  stipulation, reaffirmed by this Court's subsequent order

63

1    of June 28 of '06 and in yesterday's order by Judge

2    Kimball, SCO may not challenge as misused, by expert

3    report or otherwise, any material not specifically

4    identified as misused by IBM in the final disclosures.

5              And, Mr. Marriott, if you or Mr. Schaughnessy

6    will prepare that order.

7              MR. MARRIOTT:   Yes, Your Honor.

8              THE COURT:   All right.   Anything further?

9              MR. HATCH:   I would only ask:   Is the Court

10   going to give clarifications on what it views as not

11   specified as misused, or are we leaving that for another

12   day?

13             THE COURT:   We'll leave that for another

14   time.

15             MR. HATCH:   Okay.   And that would be included

16   in the order, too, I suppose?

17             THE COURT:   What is counsel for IBM's response

18   to that?   I think it's fairly clear based upon the

19   arguments.   I don't see why we need to do that,

20   Mr. Hatch.   I think it's all encompassed in the previous

21   orders of this Court and stipulations that, if it wasn't

22   disclosed by -- let's see, what is it -- October 28,

23   2005, the interim deadline, and the final deadline

24   December 22 of 2005, then it's out.

25             MR. MARRIOTT:   And, Your Honor, I think -- my

64

1   difficulty is:   I think it is as plain as day what the

2   Court's orders previously said, and I believe I

3   understand this order.   I am, at the same time, a hundred

4   percent confident that my friends at SCO take the

5   position that there is absolutely nothing that wasn't

6   disclosed with specificity, Your Honor.   I don't think

7   that can be reconciled with the facts in any, way, shape

8   or form, but I am happy, Your Honor, as a solution to

9   today's problem to have Your Honor's reaffirmed order

10  that material not identified with specificity in the

11  final disclosures, which I take to include structure,

12  sequence and anything else that they want to claim as

13  part of their case, is out.

14          And this very issue is, of course, raised in

15  connection with IBM's summary judgment papers because we

16  asked for summary judgment as to the 326 lines of code.

17  And the answer back is:   Ah, but you're forgetting

18  everything else.

19          THE COURT:   Well, that is my intent.   That is

20  the intention of this order.   All right.   I adopt IBM's

21  reasoning in this regard.

22          MR. MARRIOTT:   Thank you, Your Honor.

23          THE COURT:   And you can take that up with Judge

24  Kimball, again, if you wish to do that.   All right.

25  Anything further?

                                                        65

1          MR. MARRIOTT:  Not here, Your Honor.

2          THE COURT:  All right.  We'll be in informal

3   recess.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          (Whereupon the proceedings were concluded.)

66

REPORTER'S CERTIFICATE

STATE OF UTAH            )
                         ) ss.
COUNTY OF SALT LAKE      )

        I, REBECCA JANKE, do hereby certify that I am a
Certified Court Reporter for the State of Utah;

        That as such Reporter I attended the hearing of
the foregoing matter on November 30, 2006, and thereat
reported in Stenotype all of the testimony and
proceedings had, and caused said notes to be transcribed
into typewriting, and the foregoing pages numbered 1
through 66 constitute a full, true and correct record of
the proceedings transcribed.

        That I am not of kin to any of the parties and
have no interets in the outcome of the matter;

        And hereby set my hand and seal this 2nd day of
February, 2007.

                    REBECCA JANKE, CSR, RPR, RMR

                                              67