SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
  *International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S REDACTED REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SCO'S UNFAIR COMPETITION CLAIM (SCO'S SIXTH CAUSE OF ACTION)** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03-CV-00294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700



FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JAN 1 2 2007

MARKUS B. ZIMMER, CLERK
BY
DEPUTY CLERK

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>           Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>           Defendant/Counterclaim-Plaintiff. | **IBM'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SCO'S UNFAIR COMPETITION CLAIM (SCO'S SIXTH CAUSE OF ACTION)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**FILED UNDER SEAL PURSUANT TO 9/16/03 PROTECTIVE ORDER, DOCKET #38**<br><br>Civil No. 2:03CV-0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

## Table of Contents

Page

Table of Authorities .................................................................................................................... ii

Preliminary Statement.................................................................................................................1

Statement of Undisputed Facts ...................................................................................................2

Argument .....................................................................................................................................3

I.      SCO'S UNFAIR COMPETITION CLAIM IS UNTIMELY. ............................................3

        A.      The JDA's Limitations Provision Governs SCO's Unfair
                Competition Claim. .................................................................................................3

        B.      SCO Cannot Establish That Its Complaint Was Timely. .........................................5

II.     SCO HAS NOT PROVIDED — AND COULD NOT PROVIDE —
        EVIDENCE OF UNFAIR COMPETITION BY IBM. ......................................................8

        A.      SCO Has Not Presented Any Evidence That Would Support a
                Claim for Unfair Competition. ................................................................................8

                1.      SCO's Attempt to Transform Unfair Competition Into a
                        Catch-All Action for "Bad Acts" Ignores the Law. .....................................9

                2.      SCO Has Failed to Establish Either Palming-Off or
                        Misappropriation, and Its Unfair Competition Claim is
                        Instead an Impermissible Attempt to Transform a Contract
                        Claim into a Tort. ......................................................................................11

        B.      SCO Does Not Adduce Any Evidence of Bad Faith. .............................................15

        C.      SCO Lacks Standing to Assert its Purported Unfair Competition
                Claim. ....................................................................................................................18

III.    SCO'S CLAIM IS PREEMPTED BY FEDERAL COPYRIGHT LAW. ..........................20

IV.     SCO'S NON-MONTEREY ALLEGATIONS OF UNFAIR
        COMPETITION FAIL AS A MATTER OF LAW. ..........................................................23

Conclusion .................................................................................................................................25

## Table of Authorities

Page(s)

**Cases**

Allisen v. Am. Legion Post No. 134,
    763 P.2d 806 (Utah 1988) .................................................................................... 11

Am. Express Fin. Advisors, Inc. v. Topel,
    38 F. Supp. 2d 1233 (D. Colo. 1999) .................................................................... 15

Anderson v. State Farm Fire & Cas. Co.,
    583 P.2d 101 (Utah 1978) .................................................................................... 4

Argo v. Blue Cross and Blue Shield of Kansas, Inc.,
    452 F.3d 1193 (10th Cir. 2006) ...................................................................... 7, 17

Ashley Creek Phosphate Co. v. Chevron,
    129 F. Supp. 2d 1299 (D. Utah 2000),
    aff'd in part, rev'd in part, 315 F.3d 1245 (10th Cir. 2003) .................................... 2

Astroworks, Inc. v. Astroexhibits, Inc.,
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) .................................................................. 9

Backus v. Nationwide Mut. Ins. Co.,
    392 N.Y.S.2d 765 (App. Div. 1977) .................................................................... 4

Bassett v. Baker,
    530 P.2d 1 (Utah 1974) ...................................................................................... 13

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ...................................................................................... 8, 23

CMAX/Cleveland Inc. v. UCR, Inc.,
    804 F. Supp. 337 (M.D. Ga. 1992) ...................................................................... 22

Computer Assocs. Int'l v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992) ................................................................................ 22

Data General Corp. v. Gurmman Sys. Support Corp.,
    36 F.3d 1147 (1st Cir. 1994) .............................................................................. 22

Deer Crest Assocs. I. v. Deer Crest Resort Group, L.L.C.,
    No. 04-220, 2006 WL 722216 (D. Utah Mar. 16, 2006) ...................................... 12

**Table of Authorities**
(continued)

Page(s)

Dep't of Soc. Serv. v. Higgs,
   656 P.2d 998 (Utah 1982) ...................................................................................................... 11

Dinaco, Inc. v. Time Warner, Inc.,
   346 F.3d 64 (2d Cir. 2003) ................................................................................................... 14

Doty v. Elias,
   733 F.2d 720 (10th Cir. 1984) ............................................................................................. 14

Ehat v. Tanner,
   780 F.2d 876 (10th Cir. 1985) ............................................................................................. 22

First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.,
   786 P.2d 1326 (Utah 1990) ................................................................................................. 13

Fuller v. Favorite Theaters Co. of Salt Lake,
   230 P.2d 335 (Utah 1951) ................................................................................................... 20

Gates Rubber Co. v. Bando Chem. Indus., Ltd.,
   9 F.3d 823 (10th Cir. 1993) ........................................................................................... 20, 21

Harold's Stores, Inc. v. Dillard Dep't Stores, Inc.,
   82 F.3d 1533 (10th Cir. 1996) ....................................................................................... 21, 22

In re Shulman Transp. Enters. Inc.,
   744 F.2d 293 (2d Cir. 1984) ............................................................................................... 15

J T Gibbons, Inc. v. Sara Lee Corp.,
   No. 93-4050, 1995 WL 619770 (E.D. La. Oct. 19, 1995) ...................................................... 7

Kidz Cloz, Inc. v. Officially for Kids, Inc.,
   320 F. Supp. 2d 164 (S.D.N.Y. 2004) ........................................................................... 13, 14

Kindergartners Count, Inc. v. Demoulin,
   171 F. Supp. 2d 1183 (D. Kan. 2001) ................................................................................. 22

Lowden v. Northwestern Nat'l Bank & Trust Co.,
   84 F.2d 847 (8th Cir. 1936) ........................................................................................... 7, 17

Lynn v. General Elec. Co.,
   No. 03-2662, 2006 WL 14564 (D. Kan. Jan. 3, 2006) .......................................................... 13

M&T Chems. v. Int'l Bus. Mach. Corp.,
   403 F. Supp. 1145 (S.D.N.Y. 1975) ...................................................................................... 6

iii

**Table of Authorities**
(continued)

Page(s)

Medinol Ltd. v. Boston Scientific Corp.,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004)...................................................................................... 12

Mobius Mgmt. Sys. Inc. v. Fourth Dimension Software, Inc.,
    880 F. Supp. 1005 (S.D.N.Y. 1994)........................................................................................ 9

Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,
    407 F. 2d 288 (9th Cir. 1969).................................................................................................. 6

Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.,
    No. 88-819, 1992 WL 121726 (N.D.N.Y. May 23, 1992)...................................................... 14

Nobel Ins. Co. v. City of N.Y.,
    No 00-1328, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006).................................................... 4

Okland Constr. Co. v. Industrial Comm'n,
    520 P.2d 208 (Utah 1974) .................................................................................................... 10

Opals on Ice Lingerie v. Bodylines, Inc.,
    425 F. Supp. 2d 286 (E.D.N.Y. 2004) ................................................................................. 5, 6

Penato v. George,
    383 N.Y.S.2d 900 (App. Div. 1976) ..................................................................................... 14

Philips USA, Inc. v. Allflex USA, Inc.,
    No. 95-3004, 1996 WL 80448 (10th Cir. Feb. 26, 1996) ........................................................ 6

Prescott v. Morton Int'l, Inc.,
    769 F. Supp. 404 (D. Mass. 1990) .......................................................................................... 6

Proctor & Gamble Co. v. Haugen,
    222 F.3d 1262 (10th Cir. 2000.)............................................................................................ 11

Productivity Software Int'l, Inc. v. Healthcare Techs. Inc.,
    No. 93 Civ 6949, 1995 WL 437526 (S.D.N.Y. July 25, 1995)............................................... 12

Seward Park Hous. Corp. v. Cohen,
    734 N.Y.S.2d 42 (App. Div. 2001) .......................................................................................... 7

Shutte v. Broadbent,
    473 P.2d 885 (Utah 1970) .................................................................................................... 14

SME Indus., Inc. v. Touche Ross & Co.,
    28 P.3d 669, 676 (Utah 2001).............................................................................................. 19

**Table of Authorities**
(continued)

Page(s)

Stratford Group, Ltd. v. Interstate Bakeries Corp.,
   590 F. Supp. 859 (S.D.N.Y. 1984)..................................................................................... 14

Telex Corp. v. Int'l Bus. Mach. Corp.,
   367 F. Supp. 258 (N.D. Okla. 1973)
   rev'd on other grounds, 510 F.2d 894 (10th Cir. 1975) ............................................. 6

Too, Inc. v. Kohl's Dep't Stores, Inc.,
   210 F. Supp. 2d 402 (S.D.N.Y. 2002)............................................................................... 9

Towers Fin. Corp. v. Dun & Bradstreet, Inc.,
   803 F. Supp. 820 (S.D.N.Y. 1992)..................................................................................... 9

Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,
   155 F. Supp. 2d 1 (S.D.N.Y. 2001).................................................................................. 23

Underwater Storage, Inc. v. U.S. Rubber Co.,
   371 F.2d 950 (D.C. Cir. 1966) ........................................................................................... 6

US Indus., Inc. v. Touche Ross & Co.,
   854 F.2d 1223, 1234 (10th Cir 1988)............................................................................... 19

Wardley Better Homes and Gardens v. Cannon,
   61 P.3d 1009 (Utah 2002) .................................................................................................... 7

Warner Bros. Inc. v. Am. Broad. Cos.,
   720 F.2d 231 (2d Cir. 1983)............................................................................................... 23

**Statutes and Rules**

DUCivR 7-1(b)(3)................................................................................................................... 13

DUCivR 56-1(c)........................................................................................................................ 2

Fed. R. Civ. P. 56 ..................................................................................................................... 2

Utah Code Annotated 13-5a-102-4(a) .............................................................................. 10

Utah Code Annotated 13-5a-102-4(a)(ii)(c) ............................................................. 10, 11

Utah Code Annotated 68-3-3 (2000) ................................................................................. 10

Defendant/Counterclaim-Plaintiff IBM respectfully submits this reply memorandum of law in further support of its motion for summary judgment as to SCO's unfair competition claim (Count Six).

## Preliminary Statement[1]

In its opening memorandum, IBM demonstrated that SCO's unfair competition claim fundamentally alleges breach of contract. The gravamen of this claim is that IBM allegedly used UNIX System V Release 4 ("SVr4") code that it obtained pursuant to the Project Monterey contract in a manner not permitted by that contract. In its opposition, SCO attempts to characterize this claim as a tort by including a lengthy discussion of IBM's alleged breach of a fiduciary duty arising from Project Monterey. However, that discussion simply confirms that SCO's unfair competition claim is an improper attempt to assert causes of action that SCO did not — and could not — plead. As shown below and in IBM's opening brief, SCO's claim fails as a matter of law because: (1) it is untimely (see Section I below); (2) it does not state a cause of action for unfair competition (see Section II below); (3) it is preempted by federal law (see Section III below); and (4) SCO's non-Monterey allegations are insufficient (see Section IV

---

[1] Terms defined and used herein as they were in IBM's opening brief. In addition, references herein are as follows: cites to "UC Br. at __" refer to IBM's opening brief, cites to "UC Br. ¶ __" refer to IBM's "Statement of Undisputed Facts" in IBM's opening brief and cites to "IBM Ex. __" refer to the declarations and documents appended to the Declarations of Todd M. Shaughnessy, dated September 25, 2006, November 11, 2006, and January 12, 2007, the Supplemental Declaration of Todd M. Shaughnessy, dated September 25, 2006, and the Second Supplemental Declaration of Todd M. Shaughnessy, dated September 29, 2006. References to SCO's opposition papers are given as "Opp'n at __", references to SCO's counterstatement of facts are given as "SCO ¶ __" and references to the declarations and documents appended to the Declaration of Brent O. Hatch are cited herein as "SCO Ex. __".

below). Thus, summary judgment should be entered against SCO and in favor of IBM on SCO's Count VI.

## Statement of Undisputed Facts

IBM's opening papers set out, and supported with admissible evidence, 35 statements of undisputed fact. Despite the volume of its opposition papers, SCO fails properly to contest them, as described in Addendum A, which is incorporated herein by reference. While SCO expressly concedes few of IBM's facts, for most of its purported "denials" SCO fails to adduce specific record evidence meeting the requirements of Federal Rule of Civil Procedure 56. Pursuant to DUCivR 56-1(c), IBM's facts should therefore be deemed admitted.

As it does in each of its briefs in opposition to IBM's motions for summary judgment, SCO offers its own counter-statement of facts. However, a party cannot avoid summary judgment based on a counterstatement of facts that does not satisfy the requirements of Local Rule 56-1(c). See Ashley Creek Phosphate Co. v. Chevron, 129 F. Supp. 2d 1299, 1303 n.2 (D. Utah 2000), aff'd in part, rev'd in part, 315 F.3d 1245 (10th Cir. 2003) (noting that plaintiff "did not refer the court to any material facts that it claims are in dispute; rather, it simply provided its own statement of undisputed facts, which does not comport with the requirements" of the local rules). SCO's counter-statement of alleged facts does not meet IBM's facts and is largely comprised of alleged evidence that is immaterial, inadmissible and precluded by order of the Court as demonstrated in Addendum B hereto. Pursuant to Local Rule 56-1(c), SCO cannot rely on any such evidence to avoid summary judgment.

In fact, SCO's counterstatement of facts is largely a diversion, designed to give a false impression of a genuine factual dispute. Specifically, SCO devotes more than fifty paragraphs to

2

the discussion of an alleged breach of fiduciary duty by IBM (SCO ¶¶ 25-75), even though the law clearly provides that such allegations are irrelevant to an unfair competition claim. (See Section II.B below.) Moreover, even if SCO's purported factual statements were relevant (which they are not), many of them are either unsupported by the cited evidence or are completely undermined by the cited evidence.

**Argument**

**I.    SCO'S UNFAIR COMPETITION CLAIM IS UNTIMELY.**

IBM explained in its opening brief that SCO's unfair competition claim is untimely. (UC Br. at 11-17.) The Project Monterey JDA specifically provides that any action related to a breach of that agreement must be filed within two years of the alleged misconduct. Here, SCO alleges misconduct by IBM related to a breach of the JDA during 1999 and 2000, yet SCO did not file its first complaint until 2003.

In its opposition, SCO: (1) claims that the JDA's two-year limitations provision applies only to breach of contract claims and not to an unfair competition claim; and (2) claims that the continuing tort doctrine and the discovery rule render its claim timely. (Opp'n at 30-39.) SCO is wrong on both points.

**A.    The JDA's Limitations Provision Governs SCO's Unfair Competition Claim.**

SCO does not dispute that the JDA contains a two-year limitations provision applicable to all suits "related to a breach" of the JDA. (IBM Ex. 245 § 22.3.) Nevertheless, SCO argues that this limitations provision does not apply to SCO's unfair competition claim. SCO is wrong.

First, SCO argues that Section 22.3 applies only to breach of contract claims and thus is inapplicable to any other claim, including a claim for unfair competition. This argument ignores

3

the plain language of Section 22.3, which applies to "[a]ny legal or other action related to a breach of this Agreement" (UC Br. ¶ 25) (emphasis added), not just to an action for breach of the Agreement. SCO does not cite — and could not cite — a single case supporting its attempt to rewrite the JDA to exclude the "related to" language. Instead, the cases SCO cites for the proposition that limitations provisions are narrowly construed explicitly state that such provisions must be enforced if the prescribed period is reasonable, as it is here. See Backus v. Nationwide Mut. Ins. Co., 392 N.Y.S.2d 765, 766 (App. Div. 1977); Anderson v. State Farm Fire & Cas. Co., 583 P.2d 101, 103 (Utah 1978); Nobel Ins. Co. v. City of N.Y., No 00-1328, 2006 WL 2848121, at *18 (S.D.N.Y. Sept. 29, 2006). As IBM demonstrated in its opening brief, numerous courts have interpreted contractual provisions utilizing "related to" language such as that in Section 22.3 to include non-contract based actions such as a claim for unfair competition. (UC Br. at 14-15.)

Second, SCO's unfair competition claim unquestionably "relate[s] to a breach" of the JDA. The gravamen of SCO's claim is that IBM obtained code pursuant to a contract and subsequently used that code in a manner inconsistent with the contract. As SCO itself explains, IBM's use of the allegedly misappropriated SVr4 code is governed by contractual provisions, including Supplement B to the JDA. (SCO ¶ 43(a).) Indeed, SCO's claim of misconduct hinges upon the language of that provision, which SCO alleges ties IBM's license to use the SVr4 code in its AIX products to a "generally available" release of the IA-64 product. (SCO ¶¶ 43(a) & 43(b).) SCO also claims that any discussions that occurred between IBM and Santa Cruz regarding the use of the SVr4 code were in the nature of negotiations over amendments or supplements to the JDA contract under which that code was provided to IBM in the first place

4

and which explicitly governed the use of that code. (SCO ¶¶ 44(a) & 44(b).) Thus, SCO's entire

unfair competition claim can be reduced to one simple question: Did IBM's use of Santa Cruz's

SVr4 code comply with the terms of the JDA pursuant to which Santa Cruz granted IBM access

to that code? Any cause of action seeking to answer that question "relates to a breach" of the

JDA and is thus governed by the limitations provision.

        B.     <u>SCO Cannot Establish That Its Complaint Was Timely.</u>

        As explained, SCO's unfair competition claim alleges that IBM improperly used SVr4

code that it obtained pursuant to the JDA by including that code in its AIX for Power products,

which SCO itself admits first occurred in October 2000.[2] (SCO ¶ 37.) Because IBM's use of the

SVr4 code in October 2000 was improper only insofar as it constituted a breach of the JDA

(which it did not), SCO was required to file its claim within two years of that breach. It did not.

SCO's attempts to escape this simple and fatal fact by invoking the "continuing tort" doctrine

and the "discovery rule" are without merit.

        <u>First</u>, numerous courts have held that the continuing tort doctrine is inapplicable to

misappropriation claims such as SCO's. In <u>Opals on Ice Lingerie v. Bodylines, Inc.</u>, 425 F.

Supp. 2d 286, 296-298 (E.D.N.Y. 2004), plaintiff alleged that it provided confidential designs for

a proposed product to defendant, which defendant then allegedly misappropriated by selling as

its own. Although the sales of the allegedly misappropriated product continued well into the

limitations period, the court held that plaintiff's unfair competition claim accrued at the time of

---

[2] Although SCO tries to downplay the significance of this date in its opposition, it is this date
that SCO uses to begin its damages calculation. (SCO ¶ 76; UC Br. ¶ 15.) It is also this date
that SCO proposed to use for its failed copyright claim, which SCO now seeks to introduce
under the guise of its unfair competition claim. (UC Br. ¶ 15.)

the initial misappropriation and sale and was thus untimely, thereby explicitly rejecting the continuing tort doctrine. Id. Various other courts have reached the same result, with most jurisdictions rejecting the continuing tort doctrine espoused in Underwater Storage, Inc. v. U.S. Rubber Co., 371 F.2d 950 (D.C. Cir. 1966), the primary case cited by SCO. See, e.g., Philips USA, Inc. v. Allflex USA, Inc., No. 95-3004, 1996 WL 80448, at *5-6 (10th Cir. Feb. 26, 1996) (Addendum C hereto); Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp., 407 F. 2d 288, 292-94 (9th Cir. 1969); Prescott v. Morton Int'l, Inc., 769 F. Supp. 404, 406-07 (D. Mass. 1990); M&T Chems. v. Int'l Bus. Mach. Corp., 403 F. Supp. 1145, 1148-50 (S.D.N.Y. 1975).[3]

Second, SCO relies upon supposed "concealment" by IBM, yet provides no evidence that IBM concealed the fact that it included SVr4 code in AIX for Power beginning in at least October 2000. SCO cannot seriously contend that IBM concealed its inclusion of SVr4 code in AIX for Power in light of the undisputed facts showing that IBM: (1) provided Santa Cruz with a draft press release in August 2000 announcing the forthcoming distribution of an updated AIX for Power product utilizing SVr4 technology;[4] (2) publicly distributed its AIX for Power product

---

[3] SCO also relies heavily upon Telex Corp. v. Int'l Bus. Mach. Corp., 367 F. Supp. 258 (N.D. Okla. 1973), rev'd on other grounds, 510 F.2d 894 (10th Cir. 1975), which is easily distinguished. There, in finding that IBM's unfair competition claim was not time-barred, the court specifically noted that while IBM alleged that Telex first misappropriated confidential IBM information outside of the limitations period, IBM also alleged that Telex continued to misappropriate additional confidential IBM information during the limitations period. Id. at 359.

[4] SCO's claim that this document does not specify that SVr4 technology would be included in the AIX for Power product (SCO ¶ 71(b)) is wrong.

SECTION REDACTED

6

containing the disputed code; and (3) publicly stated that the product included that disputed code, as reflected in various industry reports. (UC Br. ¶ 15.) SCO's claim that it did not actually know that the October release of AIX for Power contained SVr4 code (SCO ¶ 71) is irrelevant; the discovery rule does not require actual knowledge before a claim can accrue; it provides only that a limitations period is tolled upon proof of <u>concealment</u> (Opp'n at 35-36) and SCO has offered no such proof.

In any event, the undisputed evidence also establishes that SCO had actual knowledge that IBM included the SVr4 code in AIX for Power in 2000. The Santa Cruz officer in charge of Project Monterey had such knowledge as early as August 2000 (UC Br. ¶ 14), and his knowledge is imputed to the company. See <u>Wardley Better Homes and Gardens v. Cannon</u>, 61 P.3d 1009, 1014-16 (Utah 2002); <u>Seward Park Hous. Corp. v. Cohen</u>, 734 N.Y.S.2d 42, 50-51 (App. Div. 2001). While SCO attempts to create a dispute as to its knowledge through the declarations of three individuals who state that they did not personally know that IBM included the SVr4 code in AIX for Power in 2000 (SCO ¶ 70), those individuals cannot testify as to what others at the company knew in 2000. See, e.g., <u>Argo v. Blue Cross and Blue Shield of Kansas, Inc.</u>, 452 F.3d 1193, 1199-1200 (10th Cir. 2006); <u>Lowden v. N.W. Nat'l Bank & Trust Co.</u>, 84 F.2d 847, 853 (8th Cir. 1936); <u>J T Gibbons, Inc. v. Sara Lee Corp.</u>, No. 93-4050, 1995 WL 619770, at *4 (E.D. La. Oct. 19, 1995) (Addendum D hereto). Their lack of personal knowledge about IBM's use of the SVr4 code does not undermine the fact that a corporate officer whose knowledge can be imputed to the company did know about that use.

In a final attempt to obfuscate the limitations analysis, SCO argues that its unfair competition claim did not accrue until May or June 2001, when IBM allegedly released a "sham"

7

PRPQ and withdrew from Monterey, alerting SCO to the alleged breach of fiduciary duty. SCO's theory, however, is that IBM had no right to use SVr4 code in AIX for Power at all unless and until there was a "generally available" release of the Monterey product (SCO ¶ 43), and SCO admits the alleged misuse of the SVr4 code occurred in 2000. Thus, the fact that the PRPQ was issued a year later is irrelevant under SCO's own analysis. Further, because SCO's allegations of breach of a fiduciary duty could not support a claim for unfair competition (see Section II.A), they are irrelevant to the analysis of whether its claim for unfair competition was filed within the relevant period of time.

## II.     SCO HAS NOT PROVIDED — AND COULD NOT PROVIDE — EVIDENCE OF UNFAIR COMPETITION BY IBM.

While SCO presents a host of arguments in opposition, not one of them comes close to establishing a cognizable claim for unfair competition under the applicable law. Instead, SCO's arguments further demonstrate that SCO's unfair competition claim, even were it timely filed (which it was not), fails for three additional, independent reasons: (1) SCO's theories, and the evidence cited in support of those theories, do not constitute unfair competition under New York or Utah law; (2) SCO has failed to satisfy the bad faith element of its unfair competition claim; and (3) SCO does not have standing to assert its unfair competition claim.

### A.     SCO Has Not Presented Any Evidence That Would Support a Claim for Unfair Competition.

In its opening memorandum, IBM demonstrated that SCO has not adduced — and cannot adduce — any evidence to show that IBM engaged in unfair competition under either recognized theory of unfair competition (palming-off or misappropriation), thereby satisfying IBM's burden to obtain summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In response,

SCO points to paragraphs 25 through 74 of its opposition as evidence of unfair competition.  As explained below, the evidence presented therein, which purportedly addresses IBM's use of the SVr4 code and its alleged breach of a fiduciary duty, is insufficient to state a claim for unfair competition.

      1.     <u>SCO's Attempt to Transform Unfair Competition Into a Catch-All Action for "Bad Acts" Ignores the Law.</u>

Contrary to SCO's contention, the tort of unfair competition is not a catch-all doctrine that is meant to include all forms of alleged "commercial immorality".  Instead, as IBM demonstrated in its opening brief, New York and Utah recognize a claim for unfair competition in only two situations:  (1) palming-off and (2) misappropriation.  (UC Br. at 19-20.)  In selectively quoting from various cases to support its claim that unfair competition covers all forms of "commercial immorality", SCO ignores the fact that all but two of those cases involve allegations of either misappropriation or palming-off.  See <u>Too, Inc. v. Kohl's Dep't Stores, Inc.</u>, 210 F. Supp. 2d 402, 405 (S.D.N.Y. 2002) (granting motion to amend complaint to add palming-off based unfair competition claim); <u>Astroworks, Inc. v. Astroexhibits, Inc.</u>, 257 F. Supp. 2d 609, 619 (S.D.N.Y. 2003) (denying motion to dismiss misappropriation based unfair competition claim).[5]  State tort law simply does not, as SCO would have it, provide an amorphous cause of action based upon any and all possible allegations of "unfairness".

---

[5] The remaining two cases contain only cursory discussions of the doctrine of unfair competition and, to the extent they purport to recognize a cause of action extending beyond misappropriation and palming-off, are against the vast weight of authority.  See <u>Mobius Mgmt. Sys. Inc. v. Fourth Dimension Software, Inc.</u>, 880 F. Supp. 1005, 1023 n.11 (S.D.N.Y. 1994); <u>Towers Fin. Corp. v. Dun & Bradstreet, Inc.</u>, 803 F. Supp. 820, 823 (S.D.N.Y. 1992); (<u>see also</u> UC Br. at 19-20.)

Perhaps recognizing this, SCO cites in a footnote to the Utah Unfair Competition Act (the "UCA"), which was enacted in 2004 and provides for a cause of action based upon proof of, *inter alia*, the breach of a software licensing agreement. Utah Code Ann. 13-5a-102-4(a)(ii)(c).[6] SCO's reliance on this statute demonstrates exactly what IBM has been arguing all along: SCO's unfair competition claim is fundamentally based upon its allegation that IBM breached the JDA. It does not, however, provide SCO with a viable cause of action for unfair competition for a number of reasons.

First, despite numerous orders from this Court requiring SCO to disclose the basis of each of its claims, SCO has never disclosed its intent to rely upon this statute. As a result, SCO is not entitled to rely upon it now. (See 11/29/06 Order Affirming Magistrate Judge's Order of June 28, 2006 (Docket # 884).) Second, the alleged violation of the software licensing agreement occurred well before 2004 and this statute cannot be applied retroactively. See Utah Code Ann. 68-3-3 (2000) ("No part of these revised statutes is retroactive, unless expressly so declared").[7] Third, SCO's argument that the statute can be applied prospectively is illogical.

---

[6] Although SCO states in opposition that the UCA also identifies copyright infringement as a basis for a statutory unfair competition claim, review of the UCA demonstrates that SCO is wrong. Utah Code Ann. 13-5a-102-4(a). Only four categories of alleged misconduct can support a claim under the UCA: (1) cyber-terrorism; (2) patent, trade name or trademark infringement; (3) a software license violation; or (4) predatory hiring. Id.

[7] SCO argues that the "clarification" exception, which permits the retroactive application of statutory amendments that only clarify existing law, applies here. SCO is wrong. Utah courts have applied this doctrine only in very limited circumstances where it is patently obvious that the new statutory provision does not alter a party's substantive rights. See, e.g., Okland Constr. Co. v. Industrial Comm'n, 520 P.2d 208, 210-11 (Utah 1974) (applying clarification exception where legislature substituted the phrase "312 weeks" for earlier language of "six years . . . weekly compensation"). In fact, "[e]very amendment not expressly characterized as a clarification carries the rebuttable presumption that it is intended to change existing legal rights and

10

Under the statute, it is the alleged breach of the software licensing agreement that would provide the basis for the claim. Utah Code Ann. 13-5a-102-4(a)(ii)(c). Here, even assuming IBM breached the JDA (which it did not), that breach occurred when IBM released AIX for Power containing SVr4 code in October 2000 — nearly four years before the effective date of the statute. Thus, at the time IBM allegedly breached the JDA, such breach would not have constituted unfair competition under Utah law. No court has held that such a claim could constitute a continuing tort. Fourth, the JDA contains an explicit choice of law provision which requires the application of New York law to interpretation of the JDA and the legal relationship of the parties thereto. (IBM Ex. 245 § 22.3.) The parties thus agreed that all suits regarding the JDA would be governed by New York law, and the Utah statute is irrelevant.

  2. <u>SCO Has Failed to Establish Either Palming-Off or Misappropriation, and Its Unfair Competition Claim is Instead an Impermissible Attempt to Transform a Contract Claim into a Tort.</u>

  SCO does not argue — nor could it argue — that its unfair competition claim is based upon allegations or evidence of palming-off. Thus, under the law cited above, SCO's unfair competition claim cannot survive unless it states a viable claim for misappropriation. It does not.

---

liabilities." <u>Allisen v. Am. Legion Post No. 134</u>, 763 P.2d 806, 809 n.1 (Utah 1988). The legislature did not characterize the UCA as a clarification. Instead, by establishing the breach of a software licensing agreement as a basis for a statutory unfair competition claim, the legislature fundamentally altered the substantive rights accorded under Utah law, which previously restricted common law unfair competition claims to palming-off and misappropriation. <u>See</u> <u>Proctor & Gamble Co. v. Haugen</u>, 222 F.3d 1262, 1280 (10th Cir. 2000). Moreover, the one case cited by SCO did not apply the clarification exception, but instead held that a procedural statutory amendment (which this is not) could be applied retroactively. <u>See</u> <u>Dep't of Soc. Serv. v. Higgs</u>, 656 P.2d 998, 1001 (Utah 1982).

A tort claim for misappropriation must be "sufficiently distinct from the breach of contract claim in order to be legally sufficient". Medinol Ltd. v. Boston Scientific Corp., 346 F. Supp. 2d 575, 607 (S.D.N.Y. 2004) (citation and internal quotation omitted). SCO's claim does not satisfy this test. In its opposition, SCO admits that the crux of its claim is that IBM was permitted to use the SVr4 code in its AIX for Power products only to the extent that code was included in a generally available release of the IA-64 products — a requirement that SCO argues arises from the JDA itself. (See Section I.A.) Because the JDA contains express contractual provisions addressing the use of the disputed code, SCO's misappropriation claim cannot survive as an independent tort. See Deer Crest Assocs. I. v. Deer Crest Resort Group, L.L.C., No. 04-220, 2006 WL 722216, at *3 (D. Utah Mar. 16, 2006) (UC Br. Ex. G); see also Productivity Software Int'l, Inc. v. Healthcare Techs. Inc., No. 93-6949, 1995 WL 437526, at *8 (S.D.N.Y. July 25, 1995) (UC Br. Ex. F).

SCO does not refute this in its opposition. Instead, it claims that its fiduciary duty allegations establish a "legal duty independent of the contract itself", thereby supporting the viability of its tort claim. (Opp'n at 41-43.) They do not.

First, the alleged breach of a fiduciary duty simply does not constitute unfair competition. (See Section II.A.) If SCO believed that IBM breached a fiduciary duty, either by allegedly failing to disclose certain information or by using the SVr4 code, it should have asserted a fiduciary duty claim. It did not. Instead, it now asserts these fiduciary duty allegations to mask the fact that its unfair competition claim, which arises directly from an alleged breach of the JDA, cannot survive as a tort action under the precedent cited above.

12

Second, even if fiduciary duty allegations could be relevant to an unfair competition claim, SCO has not cited facts that could establish the existence of a fiduciary relationship.[8] As a general matter, courts refuse to impute a fiduciary duty based on an arms-length business transaction between two sophisticated commercial entities such as IBM and Santa Cruz absent proof of "inequality, dependence . . . business intelligence, knowledge of facts involved, or other conditions, giving to one advantage over the other". First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1333 (Utah 1990). SCO has not presented — nor could it present — any evidence that such inequity existed between IBM and Santa Cruz.

Likewise, SCO's arguments that Project Monterey constituted a joint venture from which a fiduciary duty arose ignore the law and the facts. A plaintiff claiming the existence of a joint venture must establish, *inter alia*, that: (1) the agreement evinces the parties' mutual intent to be joint venturers; and (2) there was a provision for the sharing of both losses and profits. See Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004); Bassett v. Baker, 530 P.2d 1, 2 (Utah 1974). "The absence of any one element 'is fatal to the establishment of a joint venture'", and courts accord particular weight to the intent of the parties. Kidz Cloz,

---

[8] SCO's assertion that IBM is foreclosed from arguing in its reply that a fiduciary duty did not in fact arise from Project Monterey is incorrect. IBM made clear in its opening papers that SCO could not prove unfair competition, including of course breach of fiduciary duty. No authority supports the proposition that IBM was required to delve into the details of a non-existent fiduciary duty or be found to have conceded the issue. Since SCO relies on a claim of fiduciary duty in its opposition papers, IBM is entitled to respond to those arguments in its reply. See DUCivR 7-1(b)(3) ("A reply memorandum must be limited to rebuttal of matters raised in the memorandum opposing the motion"); see also Lynn v. General Elec. Co., No. 03-2662, 2006 WL 14564, at *1 (D. Kan. Jan. 3, 2006) (holding that arguments presented in reply brief in response to points raised in opposition properly considered by the court) (Addendum E hereto). That said, SCO's unfair competition claim fails even if a fiduciary duty arose, and even if IBM violated such a duty. SCO has not identified any legal authority suggesting otherwise.

320 F. Supp. 2d at 171 (citation omitted); see also Stratford Group, Ltd. v. Interstate Bakeries Corp., 590 F. Supp. 859, 863 (S.D.N.Y. 1984).

Here, the parties unambiguously identified their intent not to form a joint venture or partnership. Section 22.5 of the JDA, entitled "Independent Contractors", provides:

> "This Agreement shall not be construed to establish any form of partnership, agency, franchise or joint venture of any kind between SCO and IBM, nor to constitute either party as an agent, employee, legal representative, or any other form of representative of the other. This Agreement shall not be construed to provide for any sharing of profits or losses between the parties." (IBM Ex. 245, § 22.5.)

This language could not be more explicit; Santa Cruz and IBM expressly disclaimed any intent to form a joint venture. They also disclaimed any sharing of profits or losses, another key factor in analyzing whether a contract gives rise to a joint venture.[9] Kidz Cloz, 320 F. Supp. 2d at 171-172; Shutte v. Broadbent, 473 P.2d 885, 886 (Utah 1970). SCO does not provide any authority that would permit the Court to ignore this unambiguous contractual provision.[10]

---

[9] Other provisions of the JDA confirm the statement in Section 22.5 that the parties were not agreeing to share profits and losses. Each party agreed to provide royalty payments to one another under certain circumstances. (IBM Ex. 245 §12.0.) Absent an express provision to the contrary, royalty payments are not considered profit and loss sharing. See, e.g., Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 68 (2d Cir. 2003).

[10] The cases SCO cites for the proposition that "the courts look to economic realities and disregard labels" are inapposite. In three of those cases, there either was not a contract or the contract at issue was ambiguous. See Doty v. Elias, 733 F.2d 720, 722-73 (10th Cir. 1984) (analyzing whether waitress who did not have employment contract was an employee or independent contractor under relevant statute); Penato v. George, 383 N.Y.S.2d 900, 903-05 (App. Div. 1976) (refusing to dismiss complaint where relevant contract was ambiguous as to nature of the parties' relationship); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., No. 88-819, 1992 WL 121726, at *21 (N.D.N.Y. May 23, 1992) (analyzing whether special relationship of trust existed where contract was silent on issue). The remaining two cases cited by SCO involve agency principles, with respect to which courts are particularly likely to disregard legal labels when an individual who was not party to the agreement seeks to hold an

14

B.    SCO Does Not Adduce Any Evidence of Bad Faith.

As IBM demonstrated in its opening brief, bad faith is a necessary element of an unfair competition claim under New York and Utah law. (UC Br. at 21.) In opposition, SCO fails to offer any evidence that IBM acted in "bad faith". With respect to IBM's purported "bad faith", SCO alleges:  (1) that IBM "abandoned" Project Monterey (SCO ¶¶ 25-35); (2) that IBM "strung" Project Monterey along in order to gain access to the SVr4 code (SCO ¶¶ 36-48); (3) that IBM's May 2001 release of the Monterey product was a "sham" (SCO ¶¶ 49-60); and (4) that IBM concealed its intention to object to the assignment of the JDA from Santa Cruz to SCO (SCO ¶¶ 61-68). These allegations are not supported by the evidence.

First, IBM did not "abandon" Project Monterey. If anyone abandoned Project Monterey, it was Santa Cruz, by selling its UNIX business to Caldera. IBM ultimately terminated the JDA, but only after Santa Cruz's sale of its business and the release of a Monterey product. (UC Br. ¶¶ 30-32.) While SCO cites to various documents where individual IBM employees purportedly suggest the cancellation of Project Monterey (SCO ¶¶ 26-28, 32-34), not one of those documents provides evidence that IBM ever "abandoned" the project.

SECTION REDACTED

---

alleged principal liable for the acts of its alleged agent.  See In re Shulman Transp. Enters. Inc., 744 F.2d 293, 295-96 (2d Cir. 1984) (holding that court could look beyond contract terms because rights of third-parties were implicated); Am. Express Fin. Advisors, Inc. v. Topel, 38 F. Supp. 2d 1233, 1240-41 (D. Colo. 1999) (analyzing issues of agency law).

SECTION REDACTED

Second, IBM did not string along Project Monterey to gain access to the SVr4 code. Instead, the evidence that SCO cites to support this claim demonstrates nothing more than the fact that IBM was aware of and sensitive to its contractual obligations with respect to the SVr4 code. (See, e.g., SCO Exs. 96, 198, 371.) In an attempt to impose an improper motive upon IBM, SCO: (1) states that IBM obtained the SVr4 code through Monterey and included that code in AIX for Power (see SCO ¶¶ 37-40, 41, 43, 45); (2) alleges that IBM was interested in using that code in AIX to compete with Sun (see SCO ¶¶ 39, 42); and (3) alleges that IBM was interested in using that code for Linux purposes (see SCO ¶¶ 39, 47). But these points do not demonstrate that IBM acted in bad faith with respect to Santa Cruz; they establish only that IBM had valid business reasons for entering into and continuing Project Monterey. In the only paragraph where SCO specifically asserts that IBM "strung" along Monterey (SCO ¶ 48), the evidence shows that IBM remained committed to Monterey for a variety of reasons, including concerns about marketplace perception and the possible loss of relationships with ISVs and Intel in the event of cancellation. (SCO Ex. 96.)

Third, the May 2001 release of the Monterey product was not a "sham", and SCO has not offered any evidence showing that it was. In fact, the evidence cited by SCO actually undermines its position. For example, SCO points to an April 2001 email from Helene Armitage as evidence that IBM intended to cover-up the fact that the PRPQ allegedly would not be generally available. (SCO ¶ 57; SCO Ex. 88.)

SECTION REDACTED

16

SECTION REDACTED

Moreover, the documents that SCO alleges show IBM's belief that Monterey was "dead" are dated well after May 2001 (see, e.g., SCO ¶¶ 59-60; SCO Exs. 91 & 67), at which point Intel had yet to release a production-ready version of the IA-64 processor, Santa Cruz had abandoned Project Monterey by selling its assets to SCO and IBM had declined to the assignment of Project Monterey. (UC Br. ¶ 32; IBM Ex. 186; SCO ¶ 61.)[11]

Finally, IBM did not conceal its intention to withhold consent to the assignment of the JDA. (SCO ¶¶ 61-68.) While SCO introduces the declarations of three individuals who claim that they did not know IBM would decline to consent to the assignment (SCO ¶¶ 63, 66, 68, SCO Exs. 354, 362, 356), those individuals lack personal knowledge as to whether IBM stated its intentions to any other SCO employees. See Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199-1200 (10th Cir. 2006); Lowden v. N.W. Nat'l Bank & Trust Co., 84 F.2d 847, 853 (8th Cir. 1936). Moreover, the fact that IBM allegedly considered entering an agreement with SCO regarding the IA-64 product, but then did not, does not show that IBM "affirmatively indicated approval" of the SCO-Santa Cruz transaction as SCO alleges. (SCO ¶64.) The record demonstrates that IBM's decision not to assign the JDA once Santa Cruz backed out of Project Monterey by selling its UNIX assets was not a surprise to either Santa Cruz or SCO. In an email to a senior SCO employee dated June 19, 2001, a Santa Cruz employee stated that IBM's decision not to consent to the assignment "should come as no

---

[11] SCO's extensive discussion about whether the May 2001 release was "generally available" again brings the focus back to the JDA and demonstrates that SCO's claim is for breach of contract.

17

surprise to us, as Ron [Lauderdale of IBM] had told Benoy [Tamang of SCO] and me way back when that this would probably be the case". (IBM Ex. 619.)

    As shown, SCO's allegations of bad faith are unsupported by the evidence. And, even if the evidence cited by SCO did support SCO's assertions, all of that evidence relates to SCO's fiduciary duty allegations, which are irrelevant to its unfair competition claim.[12] Moreover, SCO's purported evidence of bad faith demonstrates, at most, that the parties dispute the meaning of the relevant contractual provisions.[13] While IBM believes (and the record indicates) that it had a license to the SVr4 code under the JDA, SCO contends that it did not. Such a dispute over the interpretation of a contract simply does not give rise to an inference of bad faith.

    C.    SCO Lacks Standing to Assert its Purported Unfair Competition Claim.

    In its opening brief, IBM demonstrated that SCO never was a party to the JDA and does not have any rights to sue for a breach of that contract. (UC Br. at 21-23.) In opposition, SCO

---

[12] Even if SCO's fiduciary duty allegations could support its unfair competition claim, and even if its purported evidence of bad faith were sufficient, SCO's claim still would fail. SCO has not offered any evidence that IBM's alleged failure to disclose its intent to "abandon" Monterey resulted in legally cognizable damages. While SCO alleges that this breach "deprived SCO of the opportunity to find other partners, to upgrade its UNIX products to compete with Linux and to avoid wasting the company's resources on the venture" (Opp'n at 1), it does not provide any evidence supporting this claim. In fact, SCO's only discussion of damages regarding its unfair competition claim is contained in the expert report of Christine Botosan. However, Ms. Botosan's discussion relates only to SCO's claim that IBM's use of the SVr4 technology in AIX for Power was improper, and her analysis is restricted to a calculation of the profits that IBM earned from that alleged misconduct. (SCO Ex. 270; SCO Ex. 286; SCO ¶ 76.)

[13] We note that pursuant to § 22.3 of the JDA (IBM Ex. 245), which governs SCO's unfair competition claim (see Section I above), SCO has waived any right to a trial by jury. As the trier of fact regarding SCO's unfair competition claim, it is for the Court to decide whether SCO's supposed evidence permits an inference of bad faith, which we respectfully submit it does not do.

argues that litigation rights can be assigned and points to the intellectual property assignment that it obtained when it purchased Santa Cruz's UNIX related assets (the "IP Assignment"). (SCO ¶ 69.) Even were SCO correct that such an assignment is legally enforceable, the IP Assignment does not provide SCO with standing to assert its proposed Monterey claim.

The IP Assignment plainly governs only intellectual property claims. (SCO ¶ 69.) It does not include the assignment of rights for business torts such as SCO's claim that IBM breached an alleged fiduciary duty by not disclosing to Santa Cruz that it purportedly intended to abandon Monterey and instead support Linux. Because SCO was not a party to the JDA and it has not come forward with any evidence that it was assigned the rights to sue for an alleged breach of a fiduciary duty related to that JDA, it does not have standing to assert that claim. (UC Br. at 21-23.) To the extent SCO argues that the IP Assignment provides it with the right to enforce a confidentiality agreement with respect to the SVr4 code, that agreement is the JDA, which is governed by the two-year limitations provision discussed above. (See Section I.)

Moreover, SCO's reliance upon the IP Assignment conflicts with its arguments concerning the JDA's two-year limitations provision. Here, SCO argues that it was assigned the right to assert its unfair competition claim on May 7, 2001. However, in seeking to avoid the impact of the JDA's limitations provision, SCO also argues that its cause of action did not accrue until June 2001, when IBM declined to consent to the assignment of the JDA. (See Section I.) However, only accrued causes of action may be assigned. See US Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1234 (10th Cir 1988) ("a clause which forbids only the assignment of a party's rights under a contract simply does not preclude assignment of an accrued claim for damages" (emphasis added)); see also SME Indus., Inc. v. Touche Ross & Co., 28 P.3d 669, 676

19

(Utah 2001); Fuller v. Favorite Theaters Co. of Salt Lake, 230 P.2d 335, 336 (Utah 1951). Thus, if SCO were correct that its claim did not accrue until June 2001, the May assignment (even were it to cover SCO's unfair competition claim) is invalid. If SCO were instead to argue that the assignment was valid because its claim accrued prior to May 7, 2001, its claim is barred by the limitations provision.[14] IBM respectfully submits that the Court should enter summary judgment against SCO and in favor of IBM on SCO's Count VI for this additional, independent reason.

### III.   SCO'S CLAIM IS PREEMPTED BY FEDERAL COPYRIGHT LAW.

IBM's opening brief also demonstrates that the only portion of SCO's claim that arguably could constitute unfair competition — IBM's alleged misappropriation of SVr4 code — is preempted by federal copyright law. (UC Br. at 23-26.) In opposition, SCO argues that its allegations that IBM fraudulently and deceptively breached various fiduciary and confidentiality duties to SCO constitute an additional element sufficient to preclude preemption. This argument, however, is based on a misunderstanding of federal law.

As IBM explained in its opening brief, "federal law will preempt 'a state-created right if that right may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' established by federal law". Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 847 (10th Cir. 1993). This is known as the "general scope" requirement. (See UC Br. at 25-26.)

---

[14] SCO cannot argue that its claim accrued between March 6, 2001 (two years before its first complaint) and May 7, 2001 (the date of the IP assignment). The only significant event during that time was IBM's release of the PRPQ. Under SCO's theory, this release was a "sham", designed only to secure IBM's right to use SVr4 code in AIX for Power. However, even were that true (and it is not true), the release of the PRPQ did not constitute the alleged breach. Instead, it was the alleged misuse of the SVr4 code that constituted an alleged breach, and that alleged misuse occurred in October 2000.

In analyzing whether a state law falls into the general scope of exclusive rights established by federal law, courts apply the "extra element" test. That test provides that if a "'state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action'". Harold's Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1543 (10th Cir. 1996) (emphasis added) (quoting Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 847 (10th Cir. 1993)). In determining whether a state cause of action requires an extra element, the court will "compare the elements of the causes of action, not the facts pled to prove them". Harold's Stores, 82 F.3d at 1543.

Under the Harold's Stores test, the relevant question thus is not whether SCO asserts a breach of a fiduciary duty as part of its unfair competition claim, but rather whether such a breach is required to state an unfair competition claim under either New York or Utah law. It is not, and SCO cites no case even suggesting that the breach of a fiduciary duty is a required element. Indeed, as demonstrated above, not only do New York and Utah not require such a breach to state a claim for unfair competition, they do not even recognize a claim of unfair competition based upon such a breach. (See Section II.A.)

The cases that SCO cites are inapposite. Nearly all of those cases involve claims for trade secret misappropriation, where the "breach of a duty of trust or confidence is the gravamen of such trade secret claims and supplies the extra element that qualitatively distinguishes such trade secret claims from claims for copyright infringement". See Gates Rubber, 9 F.3d at 847-48 (finding that trade secret misappropriation claim required proof of breach of duty and was not

21

preempted) (internal quotations and citations omitted); <u>Computer Assocs. Int'l v. Altai, Inc.</u>, 982

F.2d 693, 718-20 (2d Cir. 1992) (same); <u>Data General Corp. v. Gurmman Sys. Support Corp.</u>, 36

F.3d 1147, 1165 (1st Cir. 1994) (same); <u>CMAX/Cleveland Inc. v. UCR, Inc.</u>, 804 F. Supp. 337,

359 (M.D. Ga. 1992) (same). Here, however, SCO long ago abandoned any claim for trade

secret protection relating to the SVr4 code. (UC Br. ¶ 4.) SCO's reliance on <u>Harold's Stores</u> is

similarly inapposite. There, the Tenth Circuit held that a state antitrust claim was not preempted

because the antitrust statute <u>required</u> proof of trade restraint, which supplied the extra element.

<u>Harold's Stores</u>, 83 F.3d at 1542-44.[15]

Moreover, SCO undermines its own argument that the breach of a duty is a required

element of its unfair competition claim by arguing in a different part of its opposition that a

breach of the JDA relates, at best, to an IBM defense. (Opp'n at 34-35.) SCO also states that "a

breach is not an essential or even an ordinary element of an unfair competition claim". (<u>Id.</u> at

34.) SCO cannot have it both ways. As IBM has demonstrated, to the extent its use of the SVr4

code constituted a breach of a duty (which it did not), it was a breach of a contractual duty under

the JDA. If that breach of contract is essential to SCO's claim, thereby removing it from federal

preemption, SCO cannot credibly argue that the two-year limitations provision does not render it

untimely. (<u>See</u> Section I.) If instead SCO argues that the breach is not a required element, SCO

concedes that its cause of action is nothing more than a copying claim that numerous courts have

found to be preempted by federal law. <u>See, e.g.</u>, <u>Ehat v. Tanner</u>, 780 F.2d 876, 878-79 (10th Cir.

---

[15] We respectfully submit that the final case relied upon by SCO, <u>Kindergartners Count, Inc. v. Demoulin</u>, 171 F. Supp. 2d 1183, 1190 (D. Kan. 2001), improperly applied the <u>Harold's Stores</u> and <u>Gates Rubber</u> test by failing to analyze whether plaintiff's allegations of a breach of confidence were required elements under Kansas unfair competition law.

1985); <u>Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.</u>, 155 F. Supp. 2d 1, 24-25

(S.D.N.Y. 2001); <u>Warner Bros. Inc. v. Am. Broad. Cos.</u>, 720 F.2d 231, 247 (2d Cir. 1983).

## IV.   SCO'S NON-MONTEREY ALLEGATIONS OF UNFAIR COMPETITION FAIL AS A MATTER OF LAW.

SCO's final argument in opposition is that it has asserted numerous non-Monterey unfair

competition claims that are not addressed by IBM's motion. Once again, SCO is wrong.

<u>First</u>, in its opening brief, IBM explained that SCO's unfair competition allegations

evolved through its interrogatory responses, to ultimately focus upon Monterey. As a result,

IBM's motion focused primarily on those claims. (UC Br. ¶¶ 1-15.) IBM also explained that

SCO's non-Monterey allegations simply mirror its other causes of action and fail for the reasons

set forth in IBM's various other motions for summary judgment addressing those claims. (UC

Br. at 17-18.) Moreover, IBM asserted in its opening memorandum that SCO has not — and

cannot — adduce any evidence of unfair competition (UC Br. ¶ 35), thereby satisfying its burden

for summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Thus, unless SCO

"made a showing sufficient to establish the existence of an essential element to [SCO's] case" in

its opposition, the Court should grant IBM's motion. <u>Id.</u> In its opposition, SCO only alleged

facts related to Project Monterey and stated that this evidence formed the basis for its unfair

competition claim. As shown above, those allegations do not make out a claim for unfair

competition and SCO's claim therefore fails as a matter of law. (<u>See</u> Section II.A.)

<u>Second</u>, even if SCO had not failed to adduce any evidence supporting those allegations

in opposition, those allegations fail as a matter of law for many of the same reasons as SCO's

Monterey-based claim. SCO cannot, as it claims, merely dub those other actions "commercially

immoral" and thereby create a claim for unfair competition. Instead, it must show, by admissible

23

evidence, either palming-off or misappropriation.  (<u>See</u> Section II.)  Neither its breach of contract claims nor its tortious interference claims satisfy this requirement.  Finally, any attempt by SCO to recast its copyright claim as a claim for unfair competition under state law would, of course, be preempted.  (<u>See</u> Section III.)

  <u>Finally</u>, SCO's attempt to rely on its tortious interference claim presents a tautology: SCO argues here that the Court should not grant summary judgment on its unfair competition claim because it might prevail on its tortious interference claim and thereby demonstrate "commercial immorality".  At the same time, SCO argues that the Court should not grant summary judgment on its interference claims because it might prevail on its unfair competition claim and thereby demonstrate improper means.  (<u>See</u> SCO's Mem. in Opp'n to Motion for Summ. Judg. on SCO's Interference Claims (SCO's Seventh, Eighth and Ninth Causes of Action), at 1.)  In other words, SCO argues that the Court cannot dismiss its interference claims because it might prevail on its unfair competition claim and cannot dismiss its unfair competition claim because it might prevail on its interference claims.  We respectfully submit both should be dismissed.

## Conclusion

For the foregoing reasons, and for the reasons presented in IBM's opening brief,

summary judgment should be entered in favor of IBM and against SCO on SCO's claim for

unfair competition.

DATED this 12th day of January, 2007.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson


CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott


Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000


*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2007, a true and correct copy of the foregoing was hand delivered to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2007, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131


/s/ Amy F. Sorenson

<u>INDEX TO ADDENDA</u>

<u>Addendum A</u>:     IBM's Undisputed Facts:  IBM UC Brief

<u>Addendum B</u>:     IBM's Objections to SCO's Alleged Evidence

<u>Addendum C</u>:     *Philips USA, Inc. v. Allflex USA, Inc.*, No. 95-3004, 1996 WL 80448
(10th Cir. Feb. 26, 1996)

<u>Addendum D</u>:     *J T Gibbons, Inc. v. Sara Lee Corp.*, No. 93-4050, 1995 WL 619770
(E.D. La. Oct. 19, 1995)

<u>Addendum E</u>:     *Lynn v. General Elec. Co.*, No. 03-2662, 2006 WL 14564 (D. Kan. Jan.
3, 2006)