SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., | **IBM'S REDACTED REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR COPYRIGHT INFRINGEMENT (IBM'S EIGHTH COUNTERCLAIM)** |
| Plaintiff/Counterclaim-Defendant, | |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | **(ORAL ARGUMENT REQUESTED)** |
| Defendant/Counterclaim-Plaintiff. | Civil No. 2:03-CV-00294 DAK |
| | Honorable Dale A. Kimball |
| | Magistrate Judge Brooke C. Wells |

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JAN 1 2 2007

MARKUS B. ZIMMER, CLERK
BY_____
            DEPUTY CLERK

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
Roger G. Brooks (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **IBM'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR COPYRIGHT INFRINGEMENT (IBM'S EIGHTH COUNTERCLAIM)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**FILED UNDER SEAL PURSUANT TO 9/16/03 PROTECTIVE ORDER, DOCKET #38**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

**Table of Contents**

Page

Table of Authorities ................................................................................... ii

Preliminary Statement.................................................................................1

Statement of Undisputed Facts ...................................................................2

Argument ....................................................................................................3

I.     IBM OWNS THE COPYRIGHTS TO THE IBM COPYRIGHTED WORKS .................3

II.    SCO LACKS PERMISSION OR A LICENSE TO COPY OR DISTRIBUTE
       THE IBM COPYRIGHTED WORKS...........................................................5

III.   SCO HAS COPIED AND DISTRIBUTED THE IBM COPYRIGHTED WORKS ........10

IV.    IBM IS ENTITLED TO SUMMARY JUDGMENT THAT SCO IS LIABLE FOR
       INFRINGEMENT OF THE IBM COPYRIGHTED WORKS. .........................11

V.     IBM IS ENTITLED TO SUMMARY JUDGMENT GRANTING AN
       INJUNCTION AGAINST FURTHER VIOLATIONS OF ITS COPYRIGHTS.............15

Conclusion ................................................................................................18

## Table of Authorities

Page(s)

**Cases**

Ashley Creek Phosphate Co. v. Chevron,
129 F. Supp. 2d 1299 (D. Utah 2000), aff'd in part, rev'd in part, 315 F.3d
1245 (10th Cir. 2003)...................................................................................................... 2

Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.,
994 F.2d 1476 (10th Cir. 1993)........................................................................... 16

CBS Broad., Inc. v. EchoStar Comms. Corp.,
450 F.3d 505 (11th Cir. 2006)............................................................................. 16

Citizens Financial Group, Inc. v. Citizens Nat'l Bank of Evans City,
383 F.3d 110 (3d Cir. 2004)...........................................................................15

Cofield v. Ala. Public Serv. Comm'n,
936 F.2d 512 (11th Cir. 1991)............................................................................. 12

Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,
843 F.2d 600 (1st Cir. 1988) .......................................................................... 12, 16

Country Kids 'N City Slicks, Inc. v. Sheen,
77 F.3d 1280 (10th Cir. 1996)............................................................................. 15

Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,
807 F.2d 1110 (2d Cir. 1986)........................................................................2, 11

Intel Corp. v. VIA Techs., Inc.,
319 F.3d 1357 (Fed. Cir. 2003)........................................................................... 12

Jacob Maxwell, Inc. v. Veeck,
110 F.3d 749 (11th Cir. 1997)............................................................................... 9

MCA Television Ltd. v. Public Interest Corp.,
171 F.3d 1265 (11th Cir. 1999)............................................................................. 9

Palladium Music, Inc. v. EatSleepMusic, Inc.,
398 F.3d 1193 (10th Cir. 2005)........................................................................4, 5

Pinkham v. Sara Lee Corp.,
983 F.2d 824 (8th Cir. 1992)........................................................................... 2, 11

Republic Molding Corp. v. B.W. Photo Utilities,
319 F.2d 347 (9th Cir. 1963)........................................................................14-15

**Table of Authorities**
(continued)

Page(s)

San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n,
    161 F.3d 1347 (Fed. Cir. 1999).................................................................... 12

Silicon Image, Inc. v. Genesis Microchip Inc.,
    395 F.3d 1358 (Fed. Cir. 2005)..................................................................... 12

Wallace v. Free Software Found.,
    No. 05-0618, 2006 WL 2038644 (S.D. Ind. Mar. 20, 2006) .................................. 13

Wallace v. Int'l Bus. Mach. Corp.,
    No. 06-2454, – F.3d –, slip op. (7th Cir. Oct. 26, 2006)........................................ 13

Wallace v. Int'l Bus. Mach. Corp.,
    No. 05-678, 2006 WL 1344055 (S.D. Ind. May 16, 2006)................................. 13, 17

Worthington v. Anderson,
386 F.3d 1314 (10th Cir. 2004)...............................................…...............................15

Young v. Dillon Companies, Inc.,
468 F.3d 1243 (10th Cir. 2006)...............................................…..............................4

**Other**

4-13 Nimmer on Copyrights (2006)...............................................…..........................14

iii

Defendant/Counterclaim-Plaintiff IBM respectfully submits this memorandum in further support of its motion for summary judgment on IBM's claim for copyright infringement (IBM's Eighth Counterclaim).

### Preliminary Statement

A one-time Linux company that sought to "unify UNIX with Linux", SCO repudiated and breached the GNU General Public License ("GPL") (SCO's only license to copy, modify and distribute Linux), turned on its own Linux customers and former partners in the Linux community, and sued IBM without evidence to support its claims. Now, confronted with record evidence on IBM's counterclaim establishing beyond doubt that SCO, when it embarked on its scheme in 2003, infringed copyrights owned by IBM (among many others), SCO presents to the Court an opposition memorandum filled with inapposite facts and irrelevant legal citations that seek to obfuscate its wrongdoing. Caught with its hand in the cookie jar, SCO tries to change the subject.

Nonetheless, as IBM demonstrated in its opening brief and again in its brief in opposition to SCO's own motion against this Eighth IBM Counterclaim for copyright infringement, IBM is entitled to summary judgment. First, IBM owns the IBM Copyrighted Works, a point on which SCO proffers no contrary evidence. (See Section I below.) Second, SCO has lacked permission to copy or distribute the IBM Copyrighted Works since SCO repudiated and then breached the only license it ever had to those works, the GPL. SCO breached the GPL in material, indeed central, ways as early as August 2003, and SCO's license automatically terminated upon its GPL violations. (See Section II below.) Third, SCO unequivocally admits, as it must, that it copied and distributed the IBM Copyrighted Works after its license under the GPL terminated. (See Section III below.) These indisputable facts entitle IBM to summary judgment on its Eighth

Counterclaim for copyright infringement.  (See Section IV below.)  IBM also is entitled to injunctive relief proscribing SCO from further infringement.  (See Section V below.)

### Statement of Undisputed Facts

IBM's opening papers set out, supported by record evidence, 47 undisputed facts that entitle IBM to summary judgment on its Eighth Counterclaim for copyright infringement.[1]  In response, SCO fails properly to contest them, as described in Addendum A, which is incorporated herein by reference.  Although SCO purports to dispute nearly three-quarters of these facts, SCO fails to do so with evidence of record meeting the requirements of Fed. R. Civ. P. 56.  Pursuant to DUCivR 56-1(c), IBM's facts should therefore be deemed admitted.

Rather than specifically controvert IBM's statement of facts, SCO offers its own counter-statement of facts.  However, a party cannot avoid summary judgment based on a counterstatement of facts that does not satisfy the requirement of DUCivR 56-1(c).  See Ashley Creek Phosphate Co. v. Chevron, 129 F. Supp. 2d 1299, 1303 n.2 (D. Utah 2000), aff'd in part, rev'd in part, 315 F.3d 1245 (10th Cir. 2003).  SCO's counterstatement of alleged facts does not meet IBM's facts and is comprised of alleged evidence that is immaterial, inadmissible, or both.

In fact, as set forth in Addendum A, SCO's opposition is a veritable Potemkin village, built of citations to irrelevant evidence plainly designed to create the impression of a fact dispute where none exists.  For example, SCO provides narrative discussions about why it copied and distributed IBM's copyrights that are plainly irrelevant to this motion for summary judgment of copyright infringement[2]:

---

[1] These facts also are set out in opposition to SCO's motion for summary judgment on IBM's Sixth, Seventh and Eighth Counterclaims.

[2] See Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992) (explaining that "the defendant's intent is simply not relevant"); Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1113 (2d Cir. 1986) ("Even an innocent infringer is liable for infringement.").

(1)     In response to IBM's assertion in its fact ¶ 37 that SCO made Linux files,
        including the IBM Copyrighted Works, available to the public until as recently as
        August 2006, SCO states that it "overlooked" the fact that it was doing so.

(2)     In response to IBM's assertion in its fact ¶ 40 that SCO continued to copy,
        distribute and sell the IBM Copyrighted Works as part of SCO's Linux products
        even after SCO breached and repudiated the GPL, SCO states that it did so
        because of "contractual obligations" to its customers.

IBM's objections to the evidence on which SCO relies are set out in Addendum B, which

is incorporated herein by reference.  To summarize, SCO's opposition depends almost entirely

on the recitation of irrelevant facts and hearsay statements that do not meet the requirements of

the Federal Rules.

## **Argument**

## I.     **IBM OWNS THE COPYRIGHTS TO THE IBM COPYRIGHTED WORKS.**

In its opening brief, IBM demonstrated its ownership of the copyrights on the IBM

Copyrighted Works with citation to specific, indisputable record evidence, including an affidavit

from an employee with knowledge and the government-issued copyright registrations

themselves.  (See IBM Copy. Br. ¶ 24; IBM Exs. 73-104; IBM Ex. 167 ¶ 5.)[3]  In opposition,

SCO does not even attempt to controvert directly the fact of IBM's ownership.  Instead, SCO

attempts to dodge the issue by misdirection.

SCO argues that "IBM's copyright in material in Linux is invalid because Linux as a

whole, including the works, is an infringing derivative work of SCO's UNIX System V", and "an

---

[3] Terms are defined and used herein as they were in IBM's opening brief.   In addition, cites
to "IBM Ex. ___" refer to the declarations and documents appended to the Declarations of Todd
M. Shaughnessy, dated September 25, 2006, November 11, 2006, and January 12, 2007, the
Supplemental Declaration of Todd M. Shaughnessy, dated September 25, 2006, and the Second
Supplemental Declaration of Todd M. Shaughnessy, dated September 29, 2006.  IBM herein
refers to its Memorandum in Support of Its Motion for Summary Judgment on Its Claim for
Copyright Infringement (IBM's Eighth Counterclaim) as "IBM Copy. Br.", SCO's
Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Claim for
Copyright Infringement (IBM's Eighth Counterclaim) as "Opp'n Br." and IBM's Memorandum
in Opposition to SCO's Motion for Summary Judgment on IBM's Sixth, Seventh and Eighth
Counterclaims as "IBM Opp'n Br.".

infringing derivative work cannot be copyrighted". (Opp'n Br. at 26, 28.) But this is sleight of hand. Even if it were true that novel parts of an infringing derivative work cannot be copyrighted, SCO does not offer a shred of evidence — nothing at all — indicating that even one of the sixteen works that are the IBM Copyrighted Works is a "derivative work of SCO's UNIX System V".[4] Instead, SCO presents "evidence" (an untimely expert report by Dr. Thomas Cargill and a few internal IBM documents) purportedly showing that

SECTION REDACTED                    Even if that were true (and it is not),

Dr. Cargill's opinion that

SECTION REDACTED

IBM does not allege infringement of Linux as whole; IBM alleges and has established infringement of sixteen specific indisputably original works on which IBM holds the copyright. The fact that IBM contributed the works to Linux under the GPL does not make them any less original.[5]

IBM has presented the certificates of registration from the U.S. Copyright Office for the sixteen works at issue. (IBM Copy. Br. ¶ 24.) Those certificates constitute "prima facie evidence of a valid copyright", and SCO "bears the burden to overcome the presumption of validity". See Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1196 (10th Cir.

---

[4] Only one IBM Copyrighted Work, JFS, is even among the technologies allegedly improperly disclosed by IBM. SCO alleges that disclosure is improper because IBM breached a contract, however, and SCO's only evidence that JFS is a derivative of SCO-owned code comes from the expert report of Dr. Evan Ivie, whose analysis wrongly overlooks the fact that JFS is derived from the OS/2 operating system, not AIX, and that IBM owns copyrights in the JFS material. (AIX Reply at 8-9.)

[5] Moreover, almost none of the "evidence" SCO cites for this proposition is even admissible. SCO Exhibits 328, 339, 340 and 334 each is or contains hearsay statements (and sometimes contains double hearsay statements). (Opp'n Br. ¶¶ 42-46.) Such material may not be considered on summary judgment. See Young v. Dillon Cos., Inc., 468 F.3d 1243, 1252 (10th Cir. 2006).

4

2005).  To carry that burden, SCO "must do more than simply show that there is some metaphysical doubt as to" the fact of IBM's ownership of these copyrights.  See id. (citation and quotation marks omitted).  Yet SCO proffers nothing other than inapposite evidence allegedly suggesting that Linux as a whole — because of purported "similarities in structure" between Linux and UNIX — is an infringing derivative work.[6]  Accordingly, no reasonable jury could find based on the record evidence that IBM does not own the copyrights to the IBM Copyrighted Works.  Furthermore, the expert opinions of Dr. Cargill, SCO's chief evidence on this point, should be disregarded by the Court for three independent reasons:  (1) Dr. Cargill's "evidence" regarding Linux was not specifically disclosed in SCO's Final Disclosures, so SCO is precluded from relying upon it (DJ Reply at 9-11); (2) Dr. Cargill's opinion is inadmissible because it is based on flawed legal premises (DJ Reply at 47-48, 53-55); and (3) Dr. Cargill's declaration was not submitted until SCO's opposition to IBM's present motion, long after the deadline for expert reports (AIX Reply at 5 n.5).

## II.  SCO LACKS PERMISSION OR A LICENSE TO COPY OR DISTRIBUTE THE IBM COPYRIGHTED WORKS.

As IBM also demonstrated in its opening brief — and in opposition to SCO's motion on this counterclaim — SCO repudiated and breached the GPL, blatantly and repeatedly, in its attempts to license Linux on terms that violate the GPL.  (IBM Copy. Br. at 17-20; IBM Opp'n Br. at 21-27.)  Because a violation of the GPL automatically terminates a licensee's rights to material made available under the GPL, SCO lost the only license it ever had to the IBM Copyrighted Works when SCO violated the GPL.  (IBM Opp'n Br. at 21-27.)  Indeed, IBM has

---

[6] In Palladium, the sole case cited by SCO on this point, the defendants' evidence was very different in nature; in that case, the defendants "presented evidence that the sound recordings [plaintiff] had registered are based upon preexisting musical compositions".  Palladium, 398 F.3d at 1197 (emphasis added).  SCO presents no evidence that the Copyrighted Works that IBM has registered are based upon preexisting materials of any kind, let alone materials owned by SCO.

explained in detail in its opposition to SCO's motion on this copyright counterclaim how the unambiguous language of the GPL proscribes SCO's conduct, and how SCO's repudiation and breach of the GPL resulted in the loss of SCO's license to the IBM Copyrighted Works, and thus in SCO's infringement.  (Id.)  IBM incorporates that discussion by reference herein. Nevertheless, SCO makes six arguments in opposition to IBM's motion (all of which are misguided), and so IBM addresses them briefly here, once again.

First, SCO argues that it "complied with all the GPL's requirements and therefore was authorized, as a matter of law, to distribute the works" because GPL "Section 1 expressly permits the charging of fees for transfer of the software and for warranty protection" and "[n]othing in the GPL . . . suggests that other types of fees are prohibited".[7]  (Opp'n Br. at 18.) Not so.  The plain and unambiguous language of the GPL forecloses SCO's argument.  As IBM has already explained, the overarching intent of the GPL is plainly expressed in its Preamble, and that intent is specifically to preclude a licensee such as SCO, which has benefited from a free license from others, from turning around and imposing a license fee on others.  (IBM Opp'n Br. at 23-24.)  The GPL "is intended to guarantee your freedom to share and change free software–to make sure the software is free for all its users", and the GPL protects this freedom by imposing restrictions on the licensee "if you distribute copies of the software, or if you modify it".  (IBM Ex. 128, Preamble ¶¶ 1, 3.)  The specific numbered sections of the GPL implement this intent and make clear that GPL licensees such as SCO may impose only certain enumerated fees and restrictions on other GPL licensees, including limited fees for "the physical act of transferring a

---

[7] SCO also discusses GPL Section 3, a section that is, quite frankly, irrelevant.  Section 3 provides that a GPL licensee such as SCO "may copy or distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2". (IBM Ex. 128 § 3.)  SCO's compliance with one section does not absolve it of violations of other sections.  Moreover, SCO also breached Section 3.  GPL Section 3 is subject to GPL Sections 1 and 2.  Because SCO violated Section 2, it could not have complied with Section 3.

copy" of the Program and for "warranty protection" under Section 1.  SCO violated the GPL by

charging prohibited licensing fees for Linux, imposing an "object code only" restriction on Linux

licensees (including, but not limited to, Linux licensees who received Linux from SCO), and

purporting to prohibit Linux licensees (including, but not limited to, SCO's own customers) from

further sublicensing or distributing Linux.[8]  (See IBM Copy. Br. at 19-20 & ¶¶ 43-46; IBM

Opp'n Br. ¶¶ 23-24.)

SCO also theatrically suggests that the plain meaning of the GPL is "dangerous".  (Opp'n

Br. at 18.)  As IBM has previously explained, however, SCO's argument that, in effect, it is

"dangerous" to interpret the GPL only by looking within its four corners and considering each

provision in relation to the others not only flies in the face of the unambiguous language of the

GPL and standard rules of contract interpretation, but it also is not supported by the cases on

which SCO relies.  (See IBM Opp'n Br. at 22 n.8.)  In any event, the GPL is "dangerous" only to

would-be free-riders such as SCO.

Second, SCO argues that it did not repudiate the GPL because, inter alia,

SECTION REDACTED  .  The assertion is both

garbled and irrelevant; the question is whether SCO did abide by it.  As amply demonstrated in

---

[8] SCO is wrong for an additional reason: Although SCO makes much of its assertion that SuSe created the modified Linux that SCO distributed as SCO Linux Server 4.0 powered by UnitedLinux, SCO tells only half the story.  SuSe modified Linux as part of UnitedLinux, a four-member organization to which SCO belonged by virtue of its signing a Joint Development Contract with SuSe and other United Linux members.  The whole point of UnitedLinux was to create a "standardized" Linux distribution (IBM Ex. 221 ¶ 96), i.e., create a modification of Linux.  SuSe did so — and SCO then added its own modifications to the program and distributed its modification of Linux as SCO Linux Server 4.0.  (IBM Copy. Br. ¶ 35.)  Accordingly, Section 2 of the GPL applies, and SCO was permitted to charge no Linux fees at all.  Moreover, even if SCO did not modify Linux itself, it indisputably distributed a version of Linux modified by SuSe as part of United Linux.  SCO may charge no fees for such a distribution of a modification of Linux other than those permitted under GPL Section 1.  (IBM Ex. 128 § 2.)  Indeed, SCO itself admits that GPL Section 2 applies to SCO's Linux distribution; SCO explicitly relies on that section in opposition to another of IBM's motions.  (See SCO's Mem. in Opp. to IBM's Motion for Summary Judgment on Its Claim for Decl. Judgment of Non-Infringement (IBM's Tenth Counterclaim), at 69 & ¶ 98.)

7

IBM's opening brief, SCO did not.  (See IBM Copy. Br. at 17-20 & ¶¶ 40-47; see also IBM Opp'n Br. at 25-27.)

Third, SCO argues that it did not breach the GPL because "nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights or other intellectual property" and because "Section 7 of the GPL expressly contemplates and warns of that possibility".  (Opp'n Br. at 24.) It may be true that Section 7 "contemplates" that other intellectual property (e.g., intellectual property held by non-licensees) may "reach" Linux, but that in no way relieves GPL licensees of their obligations under the GPL.  Further, Section 7 makes clear that if a GPL licensee such as SCO "cannot distribute so as to satisfy simultaneously [its] obligations under this License and any other pertinent obligations, then as a consequence [SCO] may not distribute the Program at all".  (IBM Ex. 128 § 7; IBM Ex. 129 § 11.)  Thus, SCO cannot both wield its purported intellectual property rights in blatant breach of the GPL and remain licensed under the GPL.[9] (See also IBM Opp'n Br. at 26 n.14.)

Fourth, SCO argues that "even if [it] had somehow repudiated or breached the GPL, neither the case law nor the GPL supports the concept of retroactive termination".  (Opp'n Br. at 25.)  This is irrelevant; IBM has not argued for "retroactive termination".  Rather, SCO's rights automatically terminated — prospectively — pursuant to GPL § 4 when SCO repudiated and breached the GPL.  (See IBM Ex. 128 § 4; IBM Opp'n Br. at 28 & n.17.)  As IBM has demonstrated elsewhere, the cases cited by SCO are entirely inapposite (as IBM seeks no double recovery), and in any case specifically recognize that use of the copyrighted work absent or

---

[9] Similarly, SCO's argument that nothing in the GPL "prohibits SCO from offering [a license to its UNIX software]" (Opp'n Br. at 24) is wrong.  Section 7 expressly precludes a GPL licensee such as SCO from charging fees for such a license as applied against the GPL-licensed work unless SCO can "satisfy simultaneously [its] obligations under this License".  With its UNIX licensing program (which is in fact a Linux licensing program, no matter what SCO calls it), SCO has breached, not satisfied, its obligations under the GPL with its Linux licensing activities.  (See IBM Copy. Br. at 17-20 & ¶¶ 40-47; see also IBM Opp'n Br. at 25-27.)

outside the scope of the license would have supported a claim for copyright damages.[10]  (See

IBM Opp'n Br. at 28 & n.17.)

Fifth, SCO argues that since Section 4 of the GPL "effectively ratifies sublicenses

granted prior to the alleged breach, IBM cannot complain that the initial grant was

unauthorized".  (Opp'n Br. at 25.)  Section 4 does no such thing.  Section 4 simply provides that

SCO's breaches of its obligations under the GPL do not deprive its sublicensees of their own

rights under the GPL.  This follows from the fact that, by operation of the unambiguous language

of the GPL, SCO's Linux "licensees" receive their license to Linux and the IBM Copyrighted

Works from IBM itself and others who originally licensed Linux and its component parts under

the GPL:  "Each time you redistribute the Program (or any work based in the Program), the

recipient automatically receives a license from the original licensor to copy, distribute or modify

the Program subject to these terms and conditions."  (IBM Ex. 128 § 6 (emphasis added); see

IBM Ex. 129 § 10.)

Sixth, and last, SCO argues that it did not breach the GPL because "SCO entered into a

UNIX License only with parties who had previously obtained Linux from a third party", not with

Linux licensees who received Linux from SCO.  (Opp'n Br. at 24.)  SCO is wrong on two

counts.  First, as demonstrated previously, SCO's levying of license fees on Linux users violated

SCO's obligations under the GPL, regardless of how those Linux users obtained their Linux

licenses.  Second, through an agreement called the "Intellectual Property Compliance License

Agreement for Linux", SCO purported to impose on its own Linux licensees the same

---

[10] See MCA Television Ltd. v. Public Interest Corp., 171 F.3d 1265, 1275 (11th Cir. 1999) ("Of course, copyright protections remain in the background to ensure that licensees do not use materials in ways that exceed the scope of their licenses."); Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753-54 (11th Cir. 1997) ("This is not a case where payment of JMI's costs and public recognition of authorship were made conditions precedent to the granted right to play.  In such a case, absent performance of the conditions, the 'license' would not have issued and the Miracle's public performances of the song would have violated JMI's copyright." (citation omitted)).

restrictions it sought to impose on the rest of the Linux-using world.  (IBM Copy. Br. ¶ 45.)

SCO limited its Linux licensees to only the object code (i.e., machine-readable and non-source

code) format, and prohibited them from further sublicensing or distributing Linux.  (Id.)  SCO

cannot dispute that it attempted to impose these restrictions on its own customers and the entire

Linux-using world.  Those restrictions violated the GPL.[11]

### III.    SCO HAS COPIED AND DISTRIBUTED THE IBM COPYRIGHTED WORKS.

In its opening brief, and again in its opposition to SCO's motion against this Eighth

Counterclaim, IBM cited record evidence establishing beyond doubt that SCO copied and

distributed the IBM Copyrighted Works after SCO repudiated and breached the GPL.  (See IBM

Copy. Br. at 20 & ¶¶ 30-39; IBM Opp'n Br. at 18-19, 30 & ¶ 27.)  SCO does not, and cannot,

controvert this fact.  Indeed, SCO admits, as it must, that it continued to copy and distribute the

IBM Copyrighted Works after SCO's license automatically terminated.  As SCO explains:

"SCO, however, owed obligations to users who had already purchased SCO's Linux

products . . .. Accordingly, after May 14, 2003, SCO made a limited number of sales to existing

customers pursuant to its contractual obligations", and SCO even "recognized revenue for a

negligible number of Linux sales after August 5, 2003, pursuant to existing contractual

obligations with Linux customers".  (Opp'n Br. ¶¶ 37-38 & n.3.)  Wholly apart from the other

evidence adduced by IBM, this admission establishes beyond question that SCO copied and

distributed the IBM Copyrighted Works after its license to do so automatically terminated.

Moreover, as an excuse, SCO's claim that it "had to" make infringing copies of the IBM

---

[11] The "object-code-only" restriction violates Sections 4 and 6 of the GPL because all GPL
licensees are entitled to use, modify and distribute Linux code.  (IBM Ex. 128 §§ 1-4, 6; IBM
Copy. Br. ¶¶ 11-13, 19-20; IBM Opp'n Br. ¶¶ 4-6.)  The purported restriction against sub-
licensing and distribution violates the GPL — including Sections 4 and 6 — because all GPL
licensees are entitled to sublicense and distribute Linux.  (IBM Ex. 128 §§ 1-4, 6; IBM Copy. Br.
¶¶ 11-13, 19-20; IBM Opp'n Br. ¶¶ 4-6.)

Copyrighted Works in order to fulfill its own contractual obligations to its customers is utterly irrelevant.  See Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992) (explaining that "[t]he defendant's intent is simply not relevant"); Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1113 (2d Cir. 1986) ("Even an innocent infringer is liable for infringement.").

## IV.   IBM IS ENTITLED TO SUMMARY JUDGMENT THAT SCO IS LIABLE FOR INFRINGEMENT OF THE IBM COPYRIGHTED WORKS.

IBM's opening brief explained that because the undisputed facts establish that IBM holds the copyrights in the IBM Copyrighted Works, and because SCO's rights to copy and distribute those works terminated automatically upon SCO's repudiation and breach of the GPL, SCO infringed IBM's copyrights through its continued distribution of its commercial Linux products and its use of the IBM Copyrighted Works in SCO's own internal development and support work.  (See IBM Copy. Br. at 20-21.)

Confronted with the inexorable conclusion following from these undisputed facts, SCO offers three reasons, each without merit, why it cannot be liable for copyright infringement notwithstanding its copying and distributing the IBM Copyrighted Works without a license.

First, SCO argues that "the GPL should not be read to interfere with SCO's right to enforce its own intellectual property rights" because "nothing in the GPL expressly forbids a party from licensing its own software or entering into settlements to resolve potential infringement of such rights", and "public policy" favors protecting intellectual property and encourages settlements.  (Opp'n Br. at 28-29.)  "Public policy" does not favor SCO's conduct. As IBM has previously explained in response to this argument of SCO's (see IBM Opp'n Br. at 30-31), "protecting intellectual property" in no way weighs against letting intellectual property owners such as IBM license their property to all at no charge subject to terms such as those

11

provided by the GPL, for the purpose of promoting Free Software — any more than it precludes patent holders from permitting industry participants to practice their inventions on a royalty-free basis, subject to restrictions, for the purpose of promoting industry standards.[12]  Moreover, Section 7 of the GPL, which SCO only selectively and misleadingly quotes in its brief, expressly provides that "intellectual property" rights do not permit a GPL licensee such as SCO to ignore the conditions of its GPL license.  (See supra note 8 & accompanying text.)

Nor does the public policy favoring "settlements" empower SCO to create an artificial dispute, and then "settle" that dispute by charging license fees and imposing restrictions in violation of the GPL.  Public policy certainly does not favor all "settlements".  See, e.g., Cofield v. Ala. Public Service Comm'n, 936 F.2d 512, 516 (11th Cir. 1991) (affirming district court dismissal of suit by pro se litigant found to be "a con-artist who sought to use the legal system to extort settlements from unsuspecting parties").

Second, SCO argues that "the GPL should not be read to allow a competitor to regulate what may be charged for an intellectual property license", and states that if it were so read, the GPL would be "per se illegal under the antitrust law".  (Opp'n Br. at 29.)  The Seventh Circuit recently rejected SCO's position and concluded: "The GPL and open-source software have

---

[12] See, e.g., Silicon Image, Inc. v. Genesis Microchip Inc., 395 F.3d 1358, 1359 (Fed. Cir. 2005) (describing patent owner who granted limited royalty-free license to patent claims necessarily infringed by anyone practicing industry standard in order to "foster and develop the standard and have it adopted industry-wide"); Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357, 1359 (Fed. Cir. 2003) (noting that Intel granted a limited royalty-free cross-license "to all those interested in complying with" an Intel-promulgated industry standard).

Neither case cited by SCO offers any support for SCO's attempt to find shelter in a public policy favoring the protection of intellectual property rights — after its blatant disregard of the intellectual property rights of IBM.  See San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n, 161 F.3d 1347, 1363 (Fed. Cir. 1999); Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988) (It is "virtually axiomatic that the public interest can only be served by upholding copyright protections" (citation and quotation marks omitted).).  (See IBM Copy. Br. at 22.)

nothing to fear from the antitrust laws". Wallace v. Int'l Bus. Mach. Corp., 467 F.3d 1104, 1108 (7th Cir. 2006) (rejecting arguments that the GPL restrains trade and constitutes illegal "price fixing"). The only other courts in the United States that have spoken to the competitive implications of the GPL, including the district court affirmed in Wallace, similarly have rejected SCO's position. Those courts concluded that the GPL "encourages, rather than discourages, free competition" and benefits consumers. Wallace v. Free Software Found., No. 05-0618, 2006 WL 2038644, at * 3 (S.D. Ind. Mar. 20, 2006) (IBM Copy. Br. Ex. A); see Wallace v. Int'l Bus. Mach. Corp., No. 05-678, 2006 WL 1344055, at * 2 (S.D. Ind. May 16, 2006) (IBM Copy. Br. Ex. B). Moreover, SCO cites no evidence — expert or otherwise — that would prevent the entry of summary judgment in IBM's favor on this basis. (See also IBM Opp'n Br. at 31-32.)

Third, SCO argues that "IBM's motion also fails for unclean hands", pleading that "SCO determined to offer its UNIX license, beginning in August 2003, because IBM and others had misappropriated SCO's proprietary source code into Linux", and separately accusing IBM of "obtain[ing] evidence by improper means". (Opp'n Br. at 30-31 (emphasis omitted).) But SCO's incantation of "unclean hands" does nothing to solve its evidentiary problems, or magically remove the impediment of the law to its argument. As IBM has detailed elsewhere, SCO offers no evidence that IBM "misappropriated" anything. (See IBM DJ Br. ¶¶ 146-57, 170-78, 192-94.) Accordingly, there is no evidentiary support for the proposition that SCO was compelled to violate the GPL because of any IBM action. SCO's "IBM made me do it" defense wholly lacks evidentiary foundation.[13]

---

[13] It is one thing for SCO to contend, based on affidavits of its own employees, that SCO instituted its Linux licensing program because they thought at the time that IBM (or others) had misappropriated SCO-owned code. It is quite another for SCO to ask the Court to bar IBM from pursuing its copyright claim at all on the basis of SCO's alleged supposition. Moreover, it was entirely within SCO's power to seek legal relief consistent with its GPL obligations if it believed Linux to contain its code. Instead, SCO took it upon itself to impose licenses on the Linux using

With respect to the alleged "hacking", SCO attempts to muddy the water with an issue not implicated by the present motion. The accusation is without substance. There is nothing unfair about an IBM employee seeking to determine from publicly available sources whether SCO continued to copy and distribute the IBM Copyrighted Works after SCO publicly and repeatedly repudiated and breached the GPL, thereby losing its license to those works. As IBM's employee testified, there was no "hacking". (IBM Ex. 639 at 16-17.) IBM reasonably believed that the information sought would be publicly available, and that any password required was for access to non-public information, not Linux code. IBM took no steps to circumvent any confidentiality or security measures. (IBM Ex. 639 at 16-18.) But for purposes of the present motion, the relevant point is that, although SCO would have the Court believe otherwise, IBM does not cite or rely on any evidence on this motion obtained through the purported "hacking". SCO does not fight the evidence IBM actually does offer (which shows SCO's clear infringement of IBM's copyrights); SCO fights the evidence it apparently wishes IBM had offered (even though that evidence also shows SCO's clear infringement of IBM copyrights).

Furthermore, SCO is simply wrong regarding the legal significance of what it appears to consider a "gotcha". The single incident that SCO identifies as "unclean" could not justify foreclosing IBM's right to enforce its copyrights against SCO, a blatant infringer. The defense of unclean hands is "recognized only rarely" in copyright actions. 4-13 Nimmer on Copyrights § 13.09 (2006). Indeed, even if it were true that IBM misappropriated SCO-owned code (which it did not), that fact would not mean that SCO receives a free pass on its own copyright infringement. In determining whether a plaintiff's suit is barred by unclean hands, courts "weigh the substance of the right asserted by plaintiff against the transgression which, it is contended,

---

world in violation of the GPL. Neither IBM nor anyone else made SCO choose that path of licensing vigilantism.

serves to foreclose that right". <u>Republic Molding Corp. v. B.W. Photo Utilities</u>, 319 F.2d 347,

350 (9th Cir. 1963); <u>see</u> <u>Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City</u>, 383 F.3d

110, 129 (3d Cir. 2004) (<u>quoting</u> <u>Republic</u>); <u>see also</u> <u>Worthington v. Anderson</u>, 386 F.3d 1314,

1320 n.6 (10th Cir. 2004) (<u>citing</u> <u>Republic</u> but not reaching issue because plaintiff "did not argue

for such a weighing").  SCO's blatant and repeated violations of the GPL have resulted in SCO's

infringing not just IBM's copyrights, but also the copyrights of everyone who contributed

original source code to Linux under the GPL.  Therefore, equity does not favor insulating SCO's

systematic misconduct from redress.  SCO's "two wrongs make a right" argument is untenable

as a matter of law and common sense.

## V.   IBM IS ENTITLED TO SUMMARY JUDGMENT GRANTING AN INJUNCTION AGAINST FURTHER VIOLATIONS OF ITS COPYRIGHTS.

Finally, IBM demonstrated in its opening brief that it is entitled to injunctive relief to

ensure that SCO does not further violate its copyrights.  SCO argues that IBM cannot satisfy the

requisite elements for a permanent injunction.

<u>First</u>, with respect to actual success on the merits, SCO argues that IBM cannot establish

success on the merits because "SCO has always complied with the GPL".  (Opp'n Br. at 33.)

Enough has been said on that topic.

<u>Second</u>, with respect to irreparable harm, SCO argues that it was permitted to continue to

use or distribute Linux because "it has fully complied with, and has not repudiated or breached

the GPL", and "SCO has no 'existing' Linux customers".  (Opp'n Br. at 33-34.)  But SCO

ignores IBM's argument:  SCO's continued copying of IBM Copyrighted Works — as recently

as August of this year — demonstrates a likelihood that SCO will continue to breach the GPL

and infringe IBM's copyrights if given the opportunity to do so, and where the wrong is

copyright infringement, irreparable harm absent an injunction is presumed.  <u>See</u> <u>Country Kids 'N</u>

<u>City Slicks, Inc. v. Sheen</u>, 77 F.3d 1280, 1288-89 (10th Cir. 1996) (presuming irreparable harm

at preliminary injunction stage); <u>see also</u> <u>Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.</u>,

843 F.2d 600, 611 (1st Cir. 1988) (same); <u>CBS Broad., Inc. v. EchoStar Comms. Corp.</u>, 450 F.3d

505, 517 n.25 (11th Cir. 2006) (presuming irreparable harm at permanent injunction stage);

(IBM Ex. 215 ¶ 100; IBM Ex. 226 ¶¶ 13-16).

    <u>Third</u>, SCO states, without analysis, that "there is no threat of injury to IBM".  (Opp'n

Br. at 34.)  SCO simply ignores the required balancing of the harms, though the law is clear:

"[T]he potential injury to an allegedly infringing party caused by an injunction merits little

equitable consideration and is insufficient to outweigh the continued wrongful infringement".

<u>Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.</u>, 994 F.2d 1476,1498 (10th Cir. 1993).

    <u>Fourth</u>, SCO argues that "no public interest is at issue where SCO has not infringed, and

does not threaten to infringe, IBM's alleged copyrights".  To the extent SCO's point is that it is

innocent, that again has been amply disproved.  Further, the injunction, if issued, will help — not

hurt — the public interest.

    In copyright cases, the public interest factor "normally weighs in favor of issuance of an

injunction because the public interest is the interest in upholding copyright protections"

(<u>Autoskill</u>, 994 F.2d at 1499), and in the present case there is the added public interest in

protecting the ability of copyright owners to offer a license to their copyrighted works at no

charge to the general public under the GPL.  That is, it is not just the copyright itself, but the

integrity of the open source collaborative software development model presented and protected

by the GPL that warrants an injunction against SCO.  The public interest factor, therefore,

weighs heavily in favor of the issuance of an injunction because an injunction will (1) uphold

copyright protections (<u>see</u> <u>id.</u>), and (2) protect the public interest in the GPL and open source

16

software development, cf. Wallace v. Free Software Foundation, No. 05-0618, 2006 WL

2038644, at * 3 (S.D. Ind. Mar. 20, 2006) (noting benefits to consumers of GPL);  Wallace v.

Int'l Bus. Mach. Corp., No. 05-678, 2006 WL 1344055, at * 2 (S.D. Ind. May 16, 2006) (same).

(See also IBM Opp'n Br. at 35.)

17

**Conclusion**

For the foregoing reasons, IBM's motion for partial summary judgment on its Eighth

Counterclaim should be granted.


DATED this 12th day of January, 2007.

SNELL & WILMER L.L.P.

_____
Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Roger G. Brooks
David R. Marriott

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff International*
*Business Machines Corporation*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of January, 2007, a true and correct copy of the foregoing was hand delivered to the following:

      Brent O. Hatch
      Mark F. James
      HATCH, JAMES & DODGE, P.C.
      10 West Broadway, Suite 400
      Salt Lake City, Utah 84101



19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of March, 2007, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131


/s/ Amy F. Sorenson

<u>INDEX TO ADDENDA</u>

<u>Addendum A</u>:      IBM's Undisputed Facts:  IBM Copyright Brief

<u>Addendum B</u>:      IBM's Objections to SCO's Alleged Evidence