# Addendum A

**Addendum A**

**IBM's Undisputed Facts Material to Its Eighth Counterclaim for Copyright Infringement**

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 1. | Historically, most important commercial software has been developed by companies who have made very large investments in the development process, and have commonly sought to recoup that investment through licensing fees. (Ex. 226 ¶ 4.) | Undisputed. | Undisputed. |
| 2. | As computer systems have continued to grow in power, and the functions demanded of software systems have grown ever more complicated, the investment required to develop and bring to market a major new software product such as an operating system has escalated, while the difficulty of making these systems reliable and "bug free" has likewise escalated. (Ex. 226 ¶ 5.) | Undisputed. | Undisputed. |
| 3. | The so-called "Free Software" movement introduced a new model of software development and of compensation for investments in development. This model was pioneered by Richard Stallman and the Free Software Foundation ("FSF"). (Ex. 226 ¶ 6; Ex. 398 at 1-10.) | Depending on the meaning of the undefined term "Free Software," disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly permitted by the GPL. (¶ 32.) Disputed to the extent the statement suggests, without substantiation, that all "open source" licenses require that licensed material be made freely available to others by the licensee. Disputed to the extent the cited material does not support the assertion that the Open Source movement introduced a new model of compensation for investments in development. Disputed to the extent the statement asserts that the Open Source movement introduced a model of compensation | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material. Moreover, SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | for investment in development, in that (among other things) the Open Source model requires software developers to give away their intended contributions to open source; the GPL does not warrant the licensed materials; and SCO has been damaged by the unauthorized use in Linux of SCO's proprietary technology. (See, e.g., SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Contract Claims (Nov. 11, 2006) ¶¶ 192-97; IBM Ex. 128 Preamble, §§ 11-12.) | |
| 4. | At a high level, the paradigm of "free" software is that copyright owners make their source code available to others to use, modify, and distribute on a royalty-free basis, in exchange for the reciprocal right to use, modify and distribute any additions or improvements contributed by those licensees and sublicensees, on the same royalty-free basis. (Ex. 226 ¶ 6; Ex. 221 ¶¶ 22-24.) | Disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly permitted by the GPL. (¶¶ 32.) Disputed to the extent the statement suggests that all "open source" licenses require that licensed material be made freely available to others by the licensee. (See, e.g., Ex. 387; Ex. 388.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's reference to the terms that may pertain to "open source" software creates no conflict; the IBM statement pertains to "free software". |
| 5. | This new licensing paradigm has unleashed a wave of global, collaborative software creativity, as networks of developers, who in many cases have no commercial affiliations with each other, continually contribute improvements and "bug fixes" to open source software packages. (Ex. 226 ¶ 7.) The development of the Linux operating system is the best known but by no means the only product of this new development model; the SAMBA software suite (file and print services) and the Apache web server software are other widely used creations of "Free Software" collaborations. (Ex. 290 ¶ 33.) | Disputed to the extent the cited material (Exhibit 226) does not reflect the personal knowledge but rather the inadmissible opinion or speculation of the person whose declaration is the basis for the statement. Depending on the meaning of the undefined term "Free Software," disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly prohibited by the GPL. (¶¶ 8-11, 32.) Disputed to the extent the statement suggests that Linux, SAMBA, and Apache are made available under the same terms. (See, e.g., Ex. 128; Ex. 388.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 6. | The "Free Software" development model is relatively new, but it is neither utopian nor anarchical; it requires legal structures and protection to function successfully. The most widely used legal license agreement that makes the Free Software model possible is the so-called GNU General Public License or "GPL". (Ex. 398 at 1-10.) This license was developed by Richard Stallman and its first version first published in 1989; its current version was promulgated in 1991. (Ex. 398 1-6; Ex. 128.) Neither IBM nor SCO had any involvement in the development of the terms of the GPL. | Disputed to the extent the first sentence of the statement makes bare allegations and reflects opinion or speculation. Depending on the meaning of the undefined term "Free Software," disputed to the extent the statement suggests that software licensed under the GPL may not be distributed for fees other than those expressly permitted by the GPL. (¶¶ 8-11, 32.) Disputed to the extent that the statement suggests that the GPL or the Open Source development model ensures that code contributed to Linux is unencumbered. (¶¶ 32, 36, 47.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 7. | There is a variant of the GPL referred to as the "Lesser General Public License" or "LGPL". (Ex. 129.) The LGPL states that it is designed for use with "some specially designated software packages — typically libraries". (Ex. 129, Preamble.) However, the terms of the LGPL are identical to those of the GPL in all respects material to the present motion, and the GPL and LGPL are referred to collectively as the "GPL" in the present motion. | Undisputed. | Undisputed. |
| 8. | The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work. A software developer who elects to publish copyrighted software subject to the GPL, however, offers to all (the "General Public") a royalty free license to use, copy, modify, and distribute. (Ex. 128 §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.) | Undisputed. | Undisputed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 9. | The GPL makes clear that no one is obligated to accept the terms of the GPL, but must do so if they wish to copy, distribute or modify any GPL software: "You are not required to accept this License . . . . However, nothing else grants you permission to modify or distribute the [IBM Copyrighted Works] or its derivative works." (Ex. 128 § 5 (emphasis added); see also Ex. 129 § 9.) | Undisputed. | Undisputed. |
| 10. | At its simplest level, the GPL provides that anyone may help themselves to the benefit of copying, modifying, distributing the work on a royalty free basis, provided they agree to distribute that work — and to license any derivative works — only under the terms of the GPL. (Ex. 128 §§ 2, 4-6; see also Ex. 129 §§ 2, 8-10.) As the "Preamble" to the GPL states:<br><br>Our General Public Licenses are designed to make sure that you have the freedom to distribute copies of free software . . . . To protect your rights, we need to make restrictions that forbid anyone to deny you these rights . . . . These restrictions translate into certain responsibilities for you if you distribute copies of the software, or if you modify it. For example, if you distribute copies of [a program licensed under the GPL] . . . you must give the recipients all the rights that you have. (Ex. 128, Preamble; see also Ex. 129, Preamble.) | Disputed to the extent the last quoted sentence in the statement actually states: "For example, if you distribute copies of such a program, whether gratis or for a fee, you must give recipients all the rights that you have." (Ex. 128, Preamble.) Disputed to the extent the statement suggests, without substantiation, that the GPL requires that a party who redistributes GPL-licensed software give to recipients rights other than those it acquired under the GPL and did not independently possess. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 11. | The GPL expressly prohibits the imposition of any "further restrictions" on the recipient's rights granted under the GPL. The collection of any licensing fees or royalties is expressly prohibited by the GPL:<br><br>You must cause any work that you distribute or publish, that in whole or in part contains or is derived from [a GPL licensed program] or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this agreement. (Ex. 128 § 2; see also Ex. 129 § 2.) | Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶ 32.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to the redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-11, 32.)<br><br>Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 8-11, 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶ 33-34.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO actually supports IBM's position when the GPL is properly interpreted. |
| 12. | The GPL uses the term "derivative work" in accordance with its definition under copyright law. (Ex. 128 § 0; see also Ex. 129 § 0.) A "derivative work" means "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work | Undisputed. | Undisputed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | may be recast". 17 U.S.C. § 101. | | |
| 13. | The GPL permits a licensee to collect a fee to cover the cost of "the physical act of transferring a copy", and permits a licensee to charge fees for service and warranty protection. (Ex. 128 § 1; see also Ex. 129 § 1.) | Undisputed. | Undisputed. |
| 14. | The LGPL similarly states that with respect to any "work based on the [LGPL-licensed] Library", "You must cause the whole of the work to be licensed at no charge to all third parties under the terms of this License." (Ex. 129 § 2(c).) | Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property that has been wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility.<br><br>(¶ 32.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to the redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-11, 32.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO actually supports IBM's position when the GPL is properly interpreted. |
| 15. | The GPL expressly states:<br><br>You may not copy, modify, sublicense, or distribute the [GPL licensed] Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense, or distribute the Program is void, and will automatically terminate your rights under this License. (Ex. 128 § 4; see also Ex. 129 § 8.) | Undisputed. | Undisputed. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 16. | In other words, one who attempts to help himself to copyrighted software owned by others and made available under the GPL, while attempting to sublicense or distribute derivative works on terms other than those of the GPL, is not licensed under the GPL, and is infringing if he makes any use of the GPL-licensed software. (Id.) | Disputed because the statement draws a legal conclusion instead of stating a fact. Disputed because the cited materials do not state that legal conclusion. Disputed to the extent the statement seeks to summarize the GPL. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 17. | The development of Linux began when an undergraduate student at the University of Helsinki, Linus Torvalds, set out to create a new, free operating system. In 1991, Torvalds began developing the core of the operating system, known as the "kernel", and some months later posted news of his project to Internet newsgroups, inviting volunteers to assist in his efforts. (Ex. 272 ¶¶ 3-4.) | Disputed to the extent that the statement suggests that Linux is an original work instead of a unauthorized derivative work based on UNIX System V. (¶¶ 40-46.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The allegation set forth in Ex. 276 (cited at SCO ¶¶ 40-41) that Linux is an unauthorized derivative work based on UNIX System V was not timely disclosed. Ex. 339 (cited at SCO ¶ 44) is not authenticated and may be hearsay, depending on the source, which SCO does not identify. Ex. 340 (cited at SCO ¶ 45) constitutes inadmissible hearsay. Finally, Ex. 334 (cited at SCO ¶ 46) does not support SCO's statement. |
| 18. | With the Internet providing for a distributed collaboration, other programmers joined to write the code making up the kernel. Torvalds directed the collaboration to a version 1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development since. (Id. ¶ 5.) | Disputed to the extent the statement suggests that Linux is an original work instead of an unauthorized derivative work based on UNIX System V. (¶¶ 40-46.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56 for the reasons set forth in reply to the preceding SCO statement. Finally, Ex. 334 (cited at SCO ¶ 46) does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 19. | Commencing in 1991, Torvalds released Linux subject to the GPL, and since that time Linux has only been made available pursuant to the terms of the GPL. (Ex. 573 at SCO1304374.) In addition, Linux contributors including IBM have included explicit statements within code modules they contributed to Linux emphasizing that those modules are copyrighted by their original contributor, and are made available only under the terms of the GPL. (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104.) | Undisputed. | Undisputed. |
| 20. | Since the release of Linux version 1.0, developers around the world have contributed to the ongoing development of Linux, under the terms of the GPL, representing an enormous investment and value available without license fee to all who accept and abide by the terms of the GPL. (See Ex. 5 ¶¶ 23, 26, 27; Ex. 364; Ex. 105 at 15, 23, 26; Ex. 194 ¶ 5.) | Disputed to the extent the statement suggests that Linux development has taken place without the unauthorized use of UNIX technology. (¶¶ 36-47.) Disputed to the extent the statement suggests, without substantiation, that the value of Linux as an enterprise operating system derives only from any proper contributions made to Linux under the GPL. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO at ¶¶ 36-39 and 47 does not support SCO's statement. Moreover, SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. Ex. 339 (cited at SCO ¶ 44) is not authenticated and may be hearsay, depending on the source, which SCO does not identify. Ex. 340 (cited at SCO ¶ 45) constitutes inadmissible hearsay. Finally, Ex. 334 (cited at SCO ¶ 46) does not support SCO's statement. |
| 21. | A number of companies distribute Linux on a commercial basis. (Ex. 105 at 5-8, 26.) These distributors offer a variety of commercial Linux products, which typically comprise the Linux kernel, low level applications that run on the kernel and provide additional system functions, | Disputed to the extent the last sentence of the statement suggests that Red Hat distributes verbatim copies of the Linux kernel, instead of (as the second sentence indicates) a derivative work which, under Section 2 of the GPL, must | Deemed admitted: The material referred to by SCO does not support SCO's statement. Moreover, nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| | and whatever else the distributor chooses to combine into an installable software product. (See Ex. 105 at 5-8.) Major businesses have been built on providing business-quality support and service for "free" software, a well-known example being that of the Red Hat Corporation, which sells services in connection with Linux, although it distributes Linux under the terms of the GPL (as it must), and thus charges no license fees for its Linux "distribution". (Ex. 111 at 12-13; Ex. 8 ¶ 32.) | be distributed at "no charge." (¶¶ 8-11.) | |
| 22. | SCO was founded in 1994 under the name Caldera, Inc., as a commercial distributor of Linux products. (Ex. 105 at 29-31.) Over the years, SCO has developed and marketed a number of software products containing Linux code, including Caldera Network Desktop, OpenLinux and SCO Linux. (Ex. 105 at 30-31; Ex. 296 at 13:17-17:18, 34:12-36:17.) | Undisputed. | Undisputed. |
| 23. | Among the companies that have made contributions that have become part of Linux is IBM. (See Ex. 5 ¶ 45; Ex. 167 ¶ 7.) IBM has made extensive contributions of computer code developed by IBM to the Linux kernel. (Ex. 167 ¶¶ 5-7; Ex. 5 ¶¶ 20, 108.) IBM holds copyrights, including registered copyrights, on many of its contributions to Linux. (Ex. 167 ¶ 5.) | Disputed to the extent the statement suggests that IBM did not improperly contribute to Linux and release under the GPL proprietary SCO materials that were derived from UNIX source code or were subject to confidentiality restrictions in IBM's UNIX licensing agreements with SCO, or both. (¶¶ 36, 47.) Disputed to the extent the statement asserts that IBM has valid copyrights to the materials it contributed to Linux and released under the GPL, including the works, which assertion is a legal conclusion and not a statement of fact. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO cites no record evidence to dispute that IBM has valid copyrights to the materials it contributed to Linux and released under the GPL. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 24. | IBM contributions to Linux on which IBM holds registered copyrights include the works listed in Table 1 below (collectively, the "IBM Copyrighted Works"). The length of each of the Copyrighted Works is as indicated in Table 1, and the copyright registration for each of these Copyrighted Works, together with a copy of the work or relevant portions of the work, are submitted as exhibits as indicated in Table 1:<br><br>**Table 1.**<br><br>**Ex. Products Copying IBM's Works Lines of CodeTitle of Work Registration Registration Date**<br>89 SCO Linux Server 4.0289,943 Enterprise Volume Management System TX 5-757-6968/15/2003<br>90 SCO Linux Server 4.02,048 Enterprise Class Event Logging TX 5-757-697 8/15/2003<br>91 SCO Linux Server 4.02,411 Dynamic Probes TX 5-757-698 8/15/2003<br>92 SCO Linux Server 4.019,042 Linux Support Power PC64 TX 5-757-699 8/15/2003<br>93 SCO OpenLinux 3.1.1 Asia 366,407 Omni Print Driver TX 5-757-700 8/15/2003<br>94 SCO Linux Server 4.09,914 Journaled File System TX 5-757-701 8/15/2003<br>95 SCO Linux Server 4.01,851 Next Generation Posix Threading TX 5-757-702 8/15/2003<br>96 SCO Linux Server 4.04,302 Linux Kernel Support for JFS TX 5-856-466 2/2/2004<br>97 SCO Linux Server 4.057,670 Linux Kernel S390 Support TX 5-856-467 2/2/2004<br>98 SCO Linux Server 4.02,554 Linux Kernel Support for Service Processor TX 5-856-468 2/2/2004<br>99 SCO Linux Server 4.02,277 Linux Kernel Support for Memory Expansion Technology TX 5-856-469 2/2/2004<br>100 SCO Linux Server 4.07,455 Linux Kernel Support for IBM eServer iSeries Devices TX 5-856-470 2/2/2004<br>101 SCO Linux Server 4.01,122 Linux Kernel Support for PCI Hotplug TX 5-856-471 2/2/2004<br>102 SCO Linux Server 4.0364 Linux Kernel Support for pSeries Hypervisor Terminal TX 5-856-472 2/2/2004<br>103 SCO Linux Server 4.04,412 Linux Kernel PPC64 Support TX 5-856-473 2/2/2004 | Disputed to the extent the statement suggests that IBM did not improperly contribute to Linux and release under the GPL proprietary SCO materials (including at least some of the works) that were derived from UNIX source code or were subject to confidentiality restrictions in IBM's UNIX licensing agreements with SCO, or both. (36, 47.) Disputed to the extent the statement suggests that IBM has valid copyrights to materials it contributed to Linux and released under the GPL. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that IBM holds registered copyrights on the IBM Copyrighted Works, with admissible evidence meeting the requirements of Rule 56. Moreover, the material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | 104 SCO Linux Server 4.02,523 Mwave Modem TX 5-856-474 Linux Kernel Support for 2/2/2004<br><br>(Ex. 73; Ex. 74; Ex. 75; Ex. 76; Ex. 77; Ex. 78; Ex. 79; Ex. 80; Ex. 81; Ex. 82; Ex. 83; Ex. 84; Ex. 85; Ex. 86; Ex. 87; Ex. 88; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 9.) | | |
| 25. | The registration of each of these IBM Copyrighted Works was made within five years of the first publication of the relevant work. (Ex. 167 ¶ 5.) | Disputed to the extent IBM has not substantiated the statement. | Deemed admitted: SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The fact stated in IBM's paragraph is fully supported by the cited material, a declaration made on personal knowledge. |
| 26. | IBM made its Copyrighted Works publicly available by posting them on the Internet as part of the Linux development process. (Ex. 167 ¶ 7.) Subsequently, each of IBM's Copyrighted Works was incorporated into SCO's Linux products, as indicated in Table 1. Each of the IBM Copyrighted Works is licensed to others (including SCO) only under the terms of the GPL or the LGPL. (Ex. 167 ¶ 7.) All of the IBM Copyrighted Works are licensed under the GPL, except IBM's "Omni Print Driver" and IBM's "Next Generation Posix Threading", which are licensed under the LGPL. (Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 167 ¶ 7.) | Undisputed. | Undisputed. |

| ¶ | IBM's Statement of Fact | SCO's Response | IBM's Reply |
|---|---|---|---|
| 27. | There is no claim in this case that the IBM Copyrighted Works represent intellectual property of SCO. With respect to most of the IBM Copyrighted Works, there is no claim that IBM violated any contractual obligations to SCO by contributing such code into Linux. (See, e.g., Ex. 54.) | Disputed to the extent the statement asserts that "there is no claim that the IBM Copyrighted Works represent intellectual property of SCO." (¶¶ 36, 40-47.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that SCO does not claim that the IBM Copyrighted Works represent intellectual property of SCO, with evidence satisfying the requirements of Rule 56. Ex. 276 (cited at SCO ¶¶ 40-41) does not discuss the IBM Copyrighted Works. Ex. 339 (cited at SCO ¶ 44) is not authenticated and may be hearsay, depending on the source, which SCO does not identify. Ex. 340 (cited at SCO ¶ 45) constitutes inadmissible hearsay. Finally, Ex. 334 (cited at SCO ¶ 46) does not support SCO's statement. |
| 28. | With respect to a few of the IBM Copyrighted Works, SCO does claim that IBM was contractually barred from contributing certain of the IBM Copyrighted Works to Linux. (See, e.g., Ex. 54, Item No. 1 (claiming contractual rights over IBM's JFS).) It is undisputed, however, that all of the listed works were developed by IBM, not by SCO, that they are intellectual property of IBM, and that IBM holds valid, registered copyrights in these works. (Ex. 167 ¶¶ 4-5.) | Disputed to the extent the statement asserts that "all of the listed works were developed by IBM, not by SCO" and are "intellectual property of IBM," in that at least some of the works were derived from UNIX source code or were made with the benefit of SCO's intellectual property. (¶¶ 36, 40-47.) Disputed to the extent the statements purports to state facts that are not material to this motion. Disputed to the extent the statement asserts that IBM holds valid copyrights in the works, which assertion is a legal conclusion and not a statement of fact. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. None of the materials cited by SCO identify any of the IBM copyrighted works as "derived from UNIX source code" or "made with the benefit of SCO's intellectual property". Moreover, SCO's statement fails to identify material facts of record meeting the requirements of Rule 56 for the reasons set forth in reply to the preceding SCO statement. Finally, Ex. 334 (cited at SCO ¶ 46) does not support SCO's statement. |
| 29. | As noted above, SCO (first under the name Caldera) was founded as a commercial distributor of Linux products. (Ex. 105 at 29-31.) Like other Linux distributors, SCO was barred by the GPL from charging license fees for distributing Linux, but sought to profit from selling software products and services in conjunction with Linux. | Disputed to the extent the statement suggests that the GPL bars SCO (or any licensee) from charging fees for its own intellectual property included in Linux without authorization or for verbatim distributions of the GPL-licensed program. (¶¶ 8-11, 32.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's sole citation to record evidence is to the GPL itself, which does not support SCO's contention. |

| | | | |
|---|---|---|---|
| | (Ex. 128 §§ 2-3; Ex. 129 §§ 2, 4; Ex. 4 at 29-31.) | | |
| 30. | In November, 2002, SCO began distributing a product it called "SCO Linux Server 4.0, powered by UnitedLinux," which included the Linux 2.4.19 kernel. (Ex. 296 at 15:7-18, 35:12-36:17, 92:1-22; Ex. 486 at 908; Ex. 284 ¶ 3; Ex. 352 at SCO1270432.) SCO Linux Server 4.0 contained, verbatim, the entirety of each of the IBM Copyrighted Works listed in Table 1 above, with the exception of IBM's copyrighted "Omni Print Driver". (Ex. 167 ¶ 9; Ex. 89; Ex. 90; Ex. 91; Ex. 92; Ex. 93; Ex. 94; Ex. 95; Ex. 96; Ex. 97; Ex. 98; Ex. 99; Ex. 100; Ex. 101; Ex. 102; Ex. 103; Ex. 104; Ex. 405; Ex. 69 ¶ 13.) SCO has admitted this without qualification. (See Ex. 45, Nos. 108-117.) | Disputed to the extent the word "admitted" suggests that SCO has acknowledged any wrongdoing in its distribution of Linux. See Argument, Part I, above. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 31. | SCO also distributed a product it called "OpenLinux 3.1.1 Asia". (Ex. 406; Ex. 69 ¶ 13.) SCO OpenLinux 3.1.1 Asia contained, verbatim, the entirety of IBM's "Omni Print Driver". (Ex. 69 ¶¶ 3, 13; 167 ¶ 9; Ex. 93; Ex. 406.) | Undisputed. | Undisputed. |
| 32. | In copying these IBM Copyrighted Works into SCO Linux products, SCO repeatedly copied over 783,000 lines of code to which IBM holds the copyrights, and which were made available and came into SCO's possession only pursuant to the GPL. (Ex. 167 ¶¶ 4-11.) | Disputed to the extent the statement asserts that SCO copied the works "into SCO Linux products," where in fact SCO distributed verbatim copies of the GPL–licensed program that already included the works. (¶¶ 1-7.) Disputed to the extent the statement suggests that IBM holds valid copyrights to the referenced code. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Indeed, SCO does not dispute that it copied and distributed a Linux product that included over 783,000 lines of code to which IBM holds the copyrights. |
| 33. | **SECTION REDACTED** | Disputed because the cited materials do not support the statement. Disputed to the extent | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's |

13

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | SECTION REDACTED | the statement suggests that SCO has not identified Linux as a whole to be an unauthorized derivative work based on UNIX System V. (¶¶ 40-46.) | facts with admissible evidence meeting the requirements of Rule 56. The statement is supported by Tab 121 (Ex. 640) of Ex. 33. In addition to that exhibit, the statement also is supported by Ex. 33 at 43, 68. |
| 34. | SCO Linux Server 4.0 also contains extensive amounts of code to which parties other than IBM or SCO hold the copyrights, and which were made available and came into SCO's possession only pursuant to the GPL. (Ex. 352 at SCO1270432.) | Disputed because the cited material does not support the statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that neither SCO nor IBM hold the copyrights to the "Core Technologies" identified in Ex. 352 at SCO1270432, with admissible evidence meeting the requirements of Rule 56. Ex. 300 at 208 also supports IBM's fact statement. |
| 35. | In developing SCO Linux Server 4.0, SCO also made certain modifications and additions to the Linux 2.4.19 kernel, such that SCO Linux Server 4.0 is a derivative work of the Linux 2.4.19 kernel within the meaning of the GPL. (Ex. 352 at SCO1270430.) As noted previously, the GPL requires that "You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program [the Linux 2.4.19 kernel] to be licensed as a whole at no charge to all third parties under the terms of this License." (Ex. 128 § 2(b).) | Disputed to the extent the statement asserts that SCO made any modifications or additions to the Linux 2.4.19 kernel in developing SCO Linux Server 4.0. (¶¶ 1-7.) Disputed to the extent the statement asserts that SCO Linux Server 4.0 is a derivative work of the Linux 2.4.19 kernel under the meaning of the GPL (or any definition). (¶¶ 1-7.) Disputed in that the cited exhibit does not support the assertion that "[i]n developing SCO Linux Server 4.0, SCO also made certain modifications and additions to the Linux 2.4.19 kernel, such that SCO Linux Server 4.0 is a derivative work of the Linux 2.4.19 kernel within the meaning of the GPL." (¶¶ 3-7.) Disputed to the extent the statement suggests that Section 2 of the GPL, which governs the copying and distribution of derivative works, applies to SCO's redistribution of the GPL-licensed program verbatim in its SCO Linux Server 4.0 products. (¶¶ 8-13.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that SCO Linux Server 4.0 is a modification of the Linux 2.4.19 kernel such that SCO Linux Server 4.0 is a derivative work of the Linux 2.4.19 kernel, with admissible evidence satisfying the requirements of Rule 56. The material cited by SCO actually supports IBM's statements in that SCO Linux 4.0 contains modification and additions to the Linux 2.4.19 kernel. (SCO ¶ 4; Ex. 233 ¶ 19.)<br><br>Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that SCO distributed this modification of Linux, with admissible evidence meeting the requirements of Rule 56.<br><br>Whether SCO performed the modification |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | | itself or merely distributed the modification is immaterial to IBM's motion. GPL Section 2 applies equally to licensees who modify Linux and licensees who distribute modifications of Linux. (Ex. 128 § 2.) |
| 36. | Pursuant to its business strategy, over time SCO distributed copies of SCO Linux Server 4.0 and SCO OpenLinux 3.1.1 to customers. (Ex. 284 ¶¶ 4-7.) In making and distributing each and every one of these copies, SCO literally copied the IBM Copyrighted Works. (Ex. 167 ¶ 11.) | Undisputed. | Undisputed. |
| 37. | In addition, as recently as August 11, 2006, SCO still posted copied Linux files on its own Internet website, including copies of the IBM Copyrighted Works (including at least Linux Kernel S390 Support, Linux Kernel PPC64 Support, and Linux Kernel Support for Mwave Modem) and made them available to others to copy at will. (Ex. 215 ¶ 110; Ex. 226 ¶¶ 13-16.) | Disputed to the extent the statement asserts that SCO distributed Linux files on its Internet website as recently as August 11, 2006, in that SCO has not knowingly made Linux code available on its website after December 31, 2004, when its contractual obligations with its Linux customers ended. (¶¶ 35-38.) Disputed to the extent the statement and cited material suggest (but do not state) that the Linux files that IBM allegedly downloaded from SCO's website on August 11, 2006, included the works that are the purported basis for the counterclaim. Disputed to the extent the statement suggests that the files were reasonably accessible. (¶ 15.) Disputed to the extent the statement suggests that anyone, other than purportedly IBM on August 11, 2006, accessed and downloaded any Linux files from SCO's website after December 31, 2004. (¶¶ 15; see also Ex. 324.) | Deemed admitted: SCO does not specifically controvert the undisputed fact that it made available on its website Linux files, including at least some of the IBM Copyrighted Works, after December 31, 2004. The facts stated in IBM's referenced paragraph are fully supported by the cited material, which comprises two declarations based on the personal knowledge of individuals who visited SCO's Internet website. |
| 38. | SCO profited by selling services and other software in conjunction with SCO Linux Server 4.0 and SCO OpenLinux 3.1.1. (Ex. 106 at 5-6; | Disputed in that SCO did not profit "by selling services and other software in conjunction with SCO Linux Server 4.0 and SCO OpenLinux | Deemed admitted: It is undisputed that SCO earned revenues from selling services and other software in conjunction with SCO Linux Server 4.0 and SCO OpenLinux 3.1.1. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| | Ex. 111 at 6-7.) | 3.1.1." (See e.g., Ex. 384 at 35; Ex. 385 at 35.) | Whether SCO earned a profit in doing so is immaterial to the copyright infringement counterclaim. |
| 39. | To the present, SCO apparently continues to possess and use copies of Linux, including the IBM Copyrighted Works, internally. While SCO claims that it has "suspended new sales and distribution of SCO Linux" during this litigation, it assures its install base of SCO Linux customers up to the very present that "SCO will, however, continue to support existing SCO Linux and Caldera OpenLinux customers consistent with existing contractual obligations." (Ex. 48.)<br>SECTION REDACTED | Disputed to the extent the statement suggests that SCO's assertion that it has suspended all sales and marketing of its Linux products is inconsistent with its statements that it would continue to support its Linux customers pursuant to existing contractual obligations. (¶¶ 35-39.) Disputed to the extent the statement suggests that SCO continues to make Linux available to its customers pursuant to contractual obligations. (¶¶ 55-61.) Disputed to the extent the statement suggests that SCO would have breached the GPL had it continued to make Linux available to its customers. Disputed to the extent the statement suggests that SCO is unauthorized under the GPL to (or otherwise, according to the terms of the GPL). (¶¶ 1-13.)<br>SECTION REDACTED<br>Disputed to the extent the statement suggests that SCO provides or plans to provide Linux support. (¶ 61.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO does not specifically controvert the undisputed facts that the quoted language appeared on its website as of September 2006. that<br>SECTION REDACTED<br>Moreover, the material referred to by SCO actually supports IBM's statements. (Ex. 325 ¶¶ 4-5.) |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 40. | SCO continued to copy and distribute all of the IBM Copyrighted Works, and to profit from selling services and other software in conjunction with its distribution of IBM's Copyrighted Works, even after SCO repudiated and breached the GPL — its sole source of any rights to copy, modify, distribute, or sublicense Linux or the IBM Copyrighted Works. (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4, 7; Ex. 226; Ex. 215 ¶ 110.) | Disputed to the extent the statement asserts that SCO has profited "from selling services and other software in conjunction with its distribution of IBM's Copyrighted Works". (See, e.g., Ex. 384 at 35; Ex. 385 at 35.) Disputed to the extent the statement asserts that SCO "repudiated and breached the GPL," which assertion is a legal conclusion, not a statement of fact, let alone a statement of an undisputed fact. Disputed to the extent the statement asserts that SCO continued to distribute SCO Linux Server 4.0 or SCO Open Linux 3.1.1 Asia – the allegedly infringing products, which SCO stopped selling and marketing in May 2003 – after the dates of the actions that IBM has identified as constituting the alleged repudiation and breach of the GPL by SCO (the sale of the UNIX Licenses starting in August 2003, and the assertion of its affirmative defenses to the eighth counterclaim in pleadings and deposition testimony after IBM filed that counterclaim.) (¶¶ 35-39.) See also IBM statements of fact 41 and 44, below. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Indeed, notwithstanding SCO's May 2003 announcement that it would stop selling and marketing those products, SCO admits that it did sell Linux products until at least December 2004, long after SCO lost its license. (Opp'n Br. ¶ 38.) In addition, it is undisputed that SCO earned revenues from selling services and other software in conjunction with SCO Linux Server 4.0 and SCO OpenLinux 3.1.1. Whether SCO earned a profit in doing so is immaterial to the copyright infringement counterclaim. |
| 41. | As early as August 2003, SCO began publicly declaring that the GPL was unenforceable. (Ex. 330 at 268:3-270:24; Ex. 392.) | Disputed to the extent that the statement assets that SCO's assertions regarding the unenforceability of the GPL constituted a repudiation of the GPL, which assertion is a legal conclusion. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 42. | In this litigation, SCO has repeatedly repudiated the GPL.<br><br>a. SCO asserts that the GPL "is unenforceable, void and/or voidable" | Disputed to the extent the statement asserts that "SCO has repeatedly repudiated the GPL," which assertion is a conclusion of law rather than a statement of fact, let alone an one [sic]. (See ¶¶ 20-23.) Disputed to the extent that | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | (Ex. 5 at 20 (Sixth Affirmative Defense)); "violates the U.S. Constitution, together with copyright, antitrust and export control laws" (Ex. 7 at 16 (Eighth Affirmative Defense); Ex. 300 at 213:15-20); is unenforceable or inapplicable in this litigation (Ex. 5 ¶¶ 24, 28, 155, 157); and is preempted by federal copyright law and unenforceable under state law. (Ex. 36 at 38-39.)<br><br>b. In interrogatory responses, SCO again asserted that "SCO maintains that the GNU General Public License ('GPL') is not enforceable". (Ex. 36 at 20.)<br><br>c. SCO also claims that all rights to enforce the GPL are waived and that all potential claimants are estopped from enforcing the GPL — in other words, that the GPL is a nullity. (Ex. 5 at 20 (Seventh Affirmative Defense); Ex. 300 at 213:14-215:7.) | statement asserts that the cited statements by SCO constitute, either individually or collectively, repudiations of the GPL; that assertion is a conclusion of law and not a statement of fact, let alone an undisputed one. (See ¶¶ 20-23; Argument Part II, above.) | |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 43. | By May of 2003, SCO began overtly and explicitly asserting rights over Linux inconsistent with SCO's rights and obligations under the GPL, including by seeking license fees from users of Linux and imposing restrictions on users of Linux that are prohibited by the terms of the GPL. SCO took the position that use of Linux (which SCO had both received and distributed under the terms of the GPL) was not authorized without a paid license from SCO, and began threatening and initiating litigation against companies that used Linux:<br><br>a. In May 2003, SCO sent letters to Fortune 1000 companies (including IBM) claiming that "Linux is, in material part, an unauthorized derivative of UNIX". SCO further stated that "[w]e believe that Linux infringes on our UNIX intellectual property and other rights" and "intend to aggressively protect and enforce these rights". (Ex. 141.)<br><br>b. In a May 14, 2003 press release, SCO stated that "Linux is an unauthorized derivative of UNIX and that legal liability for the use of Linux may extend to commercial users". SCO warned that non-SCO Linux customers could face liability for using Linux software "to run their business". (Ex. 356.)<br><br>c. In a July 21, 2003 press release, SCO announced that it would be offering licenses to Linux end users, who could | Disputed to the extent the statement asserts that "SCO began overtly and explicitly asserting rights over Linux inconsistent with rights and obligations under the GPL," which assertion is a legal conclusion and not a statement of fact, let alone an undisputed one. (See ¶¶ 20-34.) Disputed to the extent the statement suggests that SCO licensed, charged fees for, or imposed restrictions on the use of Linux. (¶¶ 24-34.) Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 24-34.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-13.)<br><br>Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that SCO undertook the actions enumerated in the referenced paragraph and imposed fees and other restrictions on Linux users, with admissible evidence satisfying the requirements of Rule 56. With respect to the remainder of SCO's statement, which is legal argument, the material referred to by SCO actually supports IBM's position when the GPL is properly interpreted. |

| | | |
|---|---|---|
| | otherwise "face liability for running [Linux] in their organizations". (Ex. 357.) | 6 of the GPL. (¶¶ 33-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶ 33-34.) Disputed to the extent that SCO statement [sic] seeks to summarize or paraphrase the referenced letters. |
| d. | On August 5, 2003, SCO announced "the availability of the SCO Intellectual Property License for Linux". (Ex. 362.) | |
| e. | In a December 22, 2003 press release, SCO announced that it had "commenced providing notification to selected Fortune 1000 Linux end users" that their distribution or redistribution of Linux containing code on which SCO purported to hold copyrights would constitute infringement. (Ex. 363.) | |
| f. | In connection with its December 22 press release, SCO released a template of a letter dated December 19, 2003, sent to "Linux User". In that letter, SCO wrote that "the use of the Linux operating system in a commercial setting violates our rights under the United States Copyright Act, including the Digital Millennium Copyright Act" and that "we will take appropriate actions to protect our rights". (Ex. 142.) | |
| g. | SECTION REDACTED | |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| | SECTION REDACTED<br><br>h. On March 3, 2004, SCO sued AutoZone, Inc., in the United States District Court for the District of Nevada, alleging that AutoZone, through its use of Linux, is infringing copyrights SCO purports to hold on UNIX, and sought to collect, as "damages", license fees and royalties in excess of that permitted to be collected by the GPL or LGPL. (Ex. 9.)<br><br>i. On August 10, 2004, SCO was reported to be threatening to raise the price of its licenses "which it says companies running Linux need to buy in order to avoid being sued". (Ex. 381.) | | |
| 44. | As a result of this campaign of fear, uncertainty and doubt (a tactic known in the industry as "FUD"), SCO succeeded in actually collecting license fees from a number of Linux users, in excess of the fees permitted by the GPL to be collected for the "physical act of transferring a copy" of the code or for warranty protection (Ex. 128 §§ 1-3; Ex. 129 §§ 1-2, 4), for a so-called "SCO Intellectual Property License for Linux". (Ex. 575.) SCO claimed that this license was necessary for "commercial use of the Linux 2.4 and later versions" (id.):<br><br>a. On March 1, 2004, SCO sold Everyone's Internet, Ltd. what SCO representatives described as a "Linux license" or "Linux IP license", telling Everyone's Internet | Disputed because the cited materials do not support (and indeed are wholly unrelated to) the assertion that SCO's actions in any way amounted to a "campaign of fear, uncertainly and doubt". Disputed because the cited materials do not support (and indeed are wholly unrelated to) the assertion that SCO succeeded in collecting any alleged fees "as a result of" the alleged campaign. Disputed to the extent the statement asserts that SCO charged fees in excess of the those permitted by the GPL, which assertion is a conclusion of law and not a statement of fact, let alone an undisputed one. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that SCO collected license fees from the Linux users identified in the referenced paragraph, with admissible evidence satisfying the requirements of Rule 56. Moreover, the facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>SECTION REDACTED<br><br>The statement is also supported by Ex. 224 at ¶¶ 13-14.<br><br>With respect to the remainder of SCO's |

| SCO's Statement | IBM's Response |
|---|---|
|  | statement, which is legal argument, the material referred to by SCO actually supports IBM's position when the GPL is properly interpreted. |
| that this license was required "to use the SCO IP" on Everyone's Internet's Linux servers. (Ex. 224 ¶¶ 12; Ex. 404.) | GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 24-34.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-13.) |
| b. | |
| c. **SECTION REDACTED** | Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶ 33-34.) |
| d. | |
| e. In fact, SCO's entire SCOSource division is dedicated to selling licenses that "give end users the right to use the SCO intellectual property contained in Linux". (Ex. 366.) | Disputed to the extent the statement asserts that "SCO claimed that this license was necessary for 'commercial use of the Linux 2.4 and later versions'" because the cited material does not support that assertion.<br><br>Disputed because the cited materials do not support (and indeed are wholly unrelated to) the |

22

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | assertion that SCO's actions in any way amounted to a "campaign of fear, uncertainly and doubt". Disputed because the cited materials do not support (and indeed are wholly unrelated to) the assertion that SCO succeeded in collecting any alleged fees "as a result of the alleged campaign. Disputed to the extent the statement asserts that SCO charged fees in excess of the those permitted by the GPL, which assertion is a conclusion of law and not a statement of fact, let alone an undisputed one. (¶¶ 8-11, 24-34.) Disputed to the extent the statement asserts that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux; nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶ 32.) Disputed to the extent the statement asserts that the no-charge requirement of Section 2 of the GPL (which governs the licensing of modifications of the GPL-licensed program) applies to SCO's redistribution of verbatim copies of the GPL-licensed program under Sections 1 and 3. (¶¶ 8-11.)<br><br>Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against charging for verbatim copies of the GPL-licensed program constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 8-13, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property | |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with its "recipients," that is, parties who received a Linux distribution from SCO. (¶¶ 33-34.)<br><br>Disputed to the extent the statement asserts that "SCO claimed that this license was necessary for 'commercial use of the Linux 2.4 and later versions'" because the cited material does not support that assertion. Disputed to the extent the statement purports to establish that the UNIX Licenses licensed Linux by quoting selectively from some of them, without referencing the grant-of-rights portions, which make clear that the UNIX Licenses are licenses "to use SCO IP Rights" and expressly exclude Linux. (¶¶ 28-31.) | |
| 45. | In its "SCO Intellectual Property License for Linux" SCO purported to license only the use of Linux in object code format, thus prohibiting the use, modification, or distribution of the Linux source code:<br><br>a. The stated mission of SCO's SCOSource division is to sell licensees the right to use "the SCO intellectual property contained in Linux, in binary format only". (Ex. 366.)<br><br>b. In an August 5, 2003 press release, SCO announced that the license it was offering "permits the use of SCO's intellectual property, in binary form | Disputed to the extent the statement asserts that **the UNIX Licenses licensed Linux. (¶¶ 28-31.) Disputed to the extent the statement asserts that the UNIX Licenses prohibited** "the use, **modification, or distribution of the Linux source code." (¶¶ 28-31.)** Disputed to the extent the statement suggests that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux, where nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 7, 11-12, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56, including the undisputed fact that SCO purported to limit Linux users to using certain code in Linux in binary or object code format only, as evidenced by the lettered subparagraphs in the IBM's referenced paragraph. With respect to the remainder of SCO's statement, which is legal argument, the material referred to by SCO actually supports IBM's position when the GPL is properly interpreted. |

| | SCO's Objections |
|---|---|
| only, as contained in Linux distributions". (Ex. 362.) | licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property in binary form only constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with parties who received a Linux distribution from SCO. (¶¶ 33-34.) |
| c. | |
| d. SECTION REDACTED | |

25

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 46. | SECTION REDACTED | SECTION REDACTED Disputed to the extent the statement suggests that the GPL prohibits SCO from licensing its UNIX intellectual property wrongfully contributed to Linux, where nothing in the GPL warrants that Linux is beyond the reach of patents, copyrights, or other intellectual property, and Section 7 of the GPL expressly contemplates and warns of that possibility. (¶¶ 7, 11-12, 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement asserts that the purported prohibition (which is not found in the GPL) against licensing one's own intellectual property in binary form only constitutes a "further restriction" under Section 6 of the GPL. (¶¶ 24-34.) Disputed to the extent the statement suggests that SCO entered into its UNIX Licenses with parties who received a Linux distribution from SCO. (¶¶ 33-34.) | Deemed admitted: The material cited by SCO actually supports IBM's statement. Indeed, SCO's statement of "fact" amounts to nothing more than legal argument about the proper interpretation of the GPL. |
| 47. | Despite its actions and statements inconsistent with and repudiating the GPL, however, SCO continued to make available copies of the IBM Copyrighted Works, each of which explicitly stated that it was licensed under the terms of the GPL. (Ex. 353; Ex. 112 at 2; Ex. 33 at Tab 121; Ex. 296 at 92; Ex. 486; Ex. 284 ¶¶ 4, 7; Ex. 226; | Disputed to the extent the statement asserts that SCO took actions and made statements "inconsistent with and repudiating the GPL," which assertion is a legal conclusion, not a statement of fact, let alone an undisputed one. (See ¶¶ 20-34.) Disputed to the extent the cited materials do not support the assertion that "SCO continued to make available copies of the IBM | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts, including the undisputed fact that each IBM Copyrighted Work stated that it was licensed under the terms of the GPL, with admissible evidence supporting the requirements of Rule 56. Moreover, the material cited by SCO actually supports the |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | Ex. 215 ¶ 110.) | Copyrighted Works" after the "actions inconsistent and repudiating the GPL". Disputed to the extent that the SCO products that IBM accuses in its motion of infringing on its alleged copyrights were not sold and marketed after the alleged acts of repudiation and breach. (¶¶ 35-39.) See IBM statements of fact 41 and 44, above.<br><br>Disputed to the extent the statement asserts that SCO has posted Linux files on its Internet website as recently as August 11, 2006, in that SCO has not knowingly made Linux code available on its website after December 31, 2004, when its contractual obligations with its Linux customers ended. (¶¶ 35-38.) Disputed to the extent the statement and cited material suggest (but do not state) that the Linux files that IBM allegedly downloaded from SCO's website on August 11, 2006, included the works that are the purported basis for the counterclaim. Disputed to the extent the statement suggests that the files were easily accessible to the general public. (¶¶ 15; see Ex. 324.) Disputed to the extent the statement suggests that anyone, other than purportedly IBM on August 11, 2006, accessed and downloaded any Linux files from SCO's website after December 31, 2004. (¶ 15; see Ex. 324.) | remainder of IBM's statement of the undisputed fact that SCO continued to make available copies of the IBM Copyrighted Works (which indisputably were included in SCO Linux 4.0) to its customers until December 2004 and to the general public until August 2006. (SCO Ex. 49 ¶¶ 14-15; IBM Ex. 284 ¶¶ 7, 11; SCO Ex. 324 ¶ 10.) |