# Addendum A – Part 2

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 91. | For example, IBM publicly disclosed — in open and candid fashion — code, methods and concepts of AIX in AIX Operating System: Programming Tools and Interfaces (1989) (Ex. 560). IBM also disclosed AIX methods and concepts in patent applications and in the resulting patents, such as Patent No. 4,742,447 (Ex. 509), Patent No. 4,742,450 (Ex. 510), Patent No. 4,918,653 (Ex. 511), and Patent No. 5,032,979 (Ex. 512). | See Response to IBM Statement of Fact No. 90. Disputed to the extent that the statement suggests that AT&T or USL knew or should have known about the substance of IBM's patent applications. (See Argument at III-IV.) | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. |
| 92. | Mr. Wilson, his staff, and other AT&T representatives were aware and understood that AT&T's licensees were exercising ownership and control over, and disclosing, code, methods and concepts from their flavors of UNIX, including AIX and Dynix. At no point did AT&T or USL take any steps to preclude their licensees from doing as they wished with their original works. (Ex. 183 ¶¶ 6-7; Ex. 191 ¶ 8; Ex. 250 ¶¶ 6-7; Ex. 271 ¶¶ 5-6; Ex. 276 ¶¶ 6-7.) | Disputed to the extent the statement suggests that Mr. Wilson or "his staff" had the authority to modify the terms of AT&T's standard UNIX license agreements or was the person under whose ultimate direction AT&T licensed its UNIX software product, or had the authority to waive any of AT&T's or USL's rights under the UNIX System license agreements. (¶ 90.) Depending on the meaning of the term "their original works," disputed in that substantial evidence shows (and easily permits the inference) that Mr. Wilson or "his staff" did not know about such disclosures. (¶¶ 63-163.) The evidence further shows (and easily permits the inference) that such disclosures, including as made under copyright protection, were not material breaches of the agreements. (Ex. 139 ¶¶ 2-22.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 93. | Based on their understanding of the Agreements, the representations of AT&T representatives and AT&T's failure to take any action to preclude licensees from doing as they wished with their original works, IBM and Sequent (like other licensees) continued to develop their flavors of UNIX. (Ex. 257 ¶¶ 3-10; Ex. 310 at 29:8-31:5, 56:11-57:5, 62:20-63:17, 119:16-120:2, 127:15-128:1.) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent that the cited material does not support the assertion that IBM or Sequent relied on "AT&T's failure to take any action to preclude licensees from doing as they wished with their original works" in deciding to continue to develop their AIX and Dynix derivative works. (IBM Statement of Undisputed Facts ¶ 50.) Depending on the meaning of the term "original works," disputed to the extent that IBM and Sequent had compelling reasons to continue to invest in AIX and Dynix as they did under the terms of their UNIX System V license agreements. (¶¶ 30-62.) Disputed to the extent the statement suggests that IBM or Sequent had compelling business reasons to insist on the "control" as described by IBM herein. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement.<br><br>Further, the cited material fully supports IBM's statement. |

| | IB[illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 94. | SECTION REDACTED<br><br>During this time Sequent likewise invested heavily in the development and marketing of Dynix and wrote millions of lines of original source code. (Ex. 257 ¶ 10; Ex. 252 at 67:21-68:11; 97:25-98:20, 140:12-21; Ex. 181, Ex. G; Ex. 596 ¶¶ 3-4.) | Depending on the meaning of the term "original source code," disputed to the extent the cited material does not identify what lines of code in AIX or Sequent were written by developers without exposure, reference or access, or experience based on such exposure, reference or access, to the licensed UNIX System V software product. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 95. | Neither IBM nor Sequent would have invested in AIX and Dynix as they did if they had believed that AT&T or its successors, instead of IBM and Sequent, owned and had the right to control IBM's or Sequent's original works, whether or not they were part of a modification or derivative work of UNIX System V. (Ex. 257 ¶ 6; Ex. 295 at 27:2-25. | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement suggests that AT&T or any of its successors-in-interest claimed to own IBM's or sequent's "original works." (¶¶ 76-96.) Disputed to the extent the statement suggests that IBM or Sequent had compelling business reasons to insist on the "control" as described by IBM herein. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 96. | Over the years, AT&T made the source code to its UNIX operating systems available to many thousands of persons and entities, without necessarily requiring that the code be kept confidential. AT&T's view was that a large number of UNIX-knowledgeable programmers would help foster the adoption of UNIX System V as an industry standard within the information technology marketplace. (Ex. 182 ¶ 37; Ex. 281 ¶¶ 33-37.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that the cited material does not properly support the assertion that AT&T did not "necessarily" require its UNIX source code to be kept confidential. Disputed to the extent the statement suggests that AT&T intentionally decided not to keep its UNIX System V source code confidential. | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 97. | Because AT&T and USL intended to distribute the UNIX System V source code and related Information widely, they understood that it would be difficult to require that the code and related information be kept confidential. (Ex. 182 ¶ 36; Ex. 189 ¶¶ 35-36; Ex. 279 ¶ 9; Ex. 281 ¶ 29.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrigbts or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 98. | AT&T licensed its UNIX source code to universities worldwide on very favorable terms, to encourage use by professors and students alike. AT&T sought to promote the widespread adoption of UNIX operating systems by ensuring that UNIX System V ideas, concepts, know-how, methods, and techniques would be widely known and understood by future programmers. (Ex. 182 ¶¶ 36-37; Ex. 281 ¶ 34.) | Depending on the meaning of the phrase "very favorable forms," disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 99. | AT&T knew that some universities made the source code available to individual students who were not bound by confidentiality obligations. AT&T also knew that such students often took copies of the source code with them when they graduated. AT&T's practice was not to take action regarding such breaches of the license agreements unless the students sought to commercialize the software, in which case it would require the students to enter into license agreements and pay royalties. (Ex. 281 ¶ 34.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 100. | AT&T's commercial licensing practices also resulted in the wide availability of UNIX source code. AT&T licensed the source code to hundreds of licensees, who in turn (with AT&T's permission) made it available to tens of thousands of individuals, such as professional software developers that AT&T knew would become knowledgeable about its source code. (Ex. 281 ¶ 33.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 101. | AT&T expressly granted IBM the right to disclose UNIX System V ideas, concepts, know-how, methods, and techniques embodied in UNIX System V (Ex. 122 ¶ 9) and then afforded the same right to its licensees, which AT&T endeavored to hold to the same standard (Ex. 281 ¶¶ 13-17). At approximately the same time, AT&T "abandoned" (to use Mr. Wilson's term) an early interest in protecting the methods and concepts of its UNIX operating systems. (Ex. 346 at 62:23-25, 84:8-13, 86:4-18, 264:8-265:8.) | Disputed in that substantial evidence shows (and easily permits the inference) that AT&T did not intend and it was not its policy to hold all licensees to the same basic standard, without regard to the provisions of any side letters with its licensees. (¶ 89.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed in that AT&T did not grant IBM "the right to disclose UNIX System V ideas, concepts, knowhow, methods, and techniques embodied in UNIX System V." (¶¶ 88-89.) Disputed in that neither AT&T or nor its successors-in-interest ever "abandoned" any intent to protect the methods and concepts of its UNIX operating systems. (¶¶ 63-96.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 102. | In an effort to make UNIX an "open" operating system, meaning that customers would not be locked in with a particular hardware vendor or a particular operating system vendor, AT&T itself published information concerning the interface of the operating system. For example, AT&T published a System V Interface Definition ("SVID"), which provided a complete interface specification that could even be used by AT&T's competitors to develop independently their own UNIX-like operating systems. (Ex. 281 ¶ 36; Ex. 182 ¶ 37.) | Disputed to the extent the statement suggests that by publishing a System V Interface Definition, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that a UNIX system could not be created, even in theory, from information in the SVID alone. (Ex. 139 ¶¶ 36-39.) | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. |
| 103. | AT&T and its successors authorized, or at least did not prevent, the publication of hundreds, if not thousands, of books, articles, internet web-sites and other materials regarding UNIX, many of which provide detailed information regarding the design and implementation of the UNIX operating system. (Ex. 181 ¶¶ 58-59 & Ex. E; Ex. 281 ¶¶ 37-38; 182 ¶¶ 37-38.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Depending on the meaning of the phrase "design and implementation," disputed to the extent the statement suggests that such publications disclosed the internal materials and concepts in UNIX, which statement the cited material does not support, and which is not correct. (Ex. 139 ¶¶ 2-22.) | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 104. | Between 1985 and 1996, AT&T Capital Corporation, then a snbsidiary of AT&T, sold thousands of used or discontinued AT&T computer systems, hundreds of them from Bell Labs, without imposing any confidentiality restrictions on the purchasers. Some of the computers included UNIX System V, Release 3, and Release 4 source code. (Ex. 174 ¶¶ 10-16; Ex. 223 ¶¶ 4-10; Ex. 253 ¶¶ 3-5; Ex. 281 ¶ 39; Ex. 189 ¶ 32.) | Disputed in that the cited material does not properly support the assertions. Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or Intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) | Deemed admitted: The material referred to by SCO does not snpport SCO's statement.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 105. | AT&T recognized that its goal of promoting the widespread adoption of UNIX System V was inconsistent with its general desire to preserve the confidentiality of the source code. However, AT&T was more concerned with promoting the widespread adoption of UNIX System V, and collecting the associated royalties, than it was with protecting the confidentiality of its source code. (Ex. 281 ¶ 35; Ex. 190 ¶ 25.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 106. | The code, methods, and concepts of UNIX System V are available without restriction to the general public within the meaning of 7.06(a), as the provision was intended by AT&T. (Ex. 181 ¶¶ 58-59 & Ex. E; Ex. 122 ¶ 14; Ex. 125 § 2; Ex. 207 ¶¶ 11-13; Ex. 281 ¶¶ 33-39; Ex. 219.) | Disputed to the extent the statement suggests that by making its source code available to persons and entities, AT&T waived or intended to waive any of its copyrights or other legal rights in UNIX. "The mere fact of publishing a copyrighted work does not give others the right to use, copy, modify, or distribute that work." (IBM Statement of Undisputed Facts in Support of IBM's Motion for Summary Judgment on Its Claim for Copyright Infringement (IBM's Eighth Counterclaim) ¶ 8.) Disputed in that there was nothing inherent in AT&T's or USL's UNIX licensing program that would result in the disclosure of any confidential UNIX material, modifications, or derivative works. (¶¶ 78-79.) Disputed to the extent the statement draws a legal conclusion. Disputed in that the code, methods, and concepts of UNIX System V are not available without restriction to the general public. (Ex. 139 ¶¶ 23-26.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed.<br><br>The material referred to by SCO does not support SCO's statement. |
| 107. | In 1991, an undergraduate student at the University of Helsinki, named Linus Torvalds, set out to create a new, free operating system, which later became known as "Linux". (Ex. 272 ¶ 3; Ex. 398 at 1-5.) | Disputed. SCO disputes IBM's assertion that Linux Torvalds set out to create a "new" operating system. Rather, Mr. Torvalds based Linux on the Minix operating system, which he describes as a "Unix variant." Linux Torvalds & David Diamond, *Just for Fun: The Story of an Accidental Revolutionary* 61 (2001) (Ex. 169 at 61.). Mr. Torvalds then used the manuals for the Sun Microsystems version of Unix for his early development of the operating system: "That's how early development was done. I was reading the standards from either the Sun OS [Operating System] manual or various books, just picking off system calls one by one and trying to make something that worked." (Id. at 82.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 108. | Torvalds began developing the core of the operating system, known as the "kernel", and some months later posted news of his project to Internet newsgroups, inviting volunteers to assist him in his efforts. (Ex. 398 at 1-5; Ex. 272 ¶ 4.) | Disputed. SCO disputes that Mr. Torvalds "developed" much of the Linux material, because such "development" consisted of appropriating material from Minix and other UNIX-like operating systems, at least as to the material in dispute in this case and as described in SCO's expert Dr. Thomas A Cargill's expert reports. See Disputed Facts #1, 283-85; (Cargill I Ex. 274; Cargill II Ex. 275; Cargill III Ex. 276.). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 109. | With the Internet providing for a distributed collaboration, other programmers joined to create code making up the kernel. (Ex. 398 at 1-5; Ex. 272 ¶ 5.) Torvalds directed the collaboration to a version 1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development since. (Ex. 398 at 1-5; Ex. 272 ¶ 5.) | Disputed. SCO disputes that Mr. Torvalds and/or other Linux contributors "created" much of the material in Linux, as opposed to copying such material from pre-existing sources, to the extent Linux versions contain the material in dispute in this case as described in SCO's expert Dr. Thomas A. Cargill's expert reports. (See Disputed Facts Nos. 1-2, 283-85 to SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Tenth Counterclaim (Nov. 11, 2006).) | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 110. | In the years that followed, thousands of developers, including developers at SCO, contributed to the further development of Linux. (See Ex. 5 ¶ 45; Ex. 364 (identifying SCO contributions to Linux); Ex. 105 at 15, 22, 26; Ex. 194 ¶ 5.) | Disputed in part and undisputed in part. It is undisputed that developers at SCO have contributed to the development of Linux-related products. However, neither Santa Cruz, Caldera International, nor SCO have contributed or intended to contribute any of the material at issue in this litigation to Linux. (Ex. 269 ¶¶ 9-14; Ex. 233 ¶¶ 4, 6, 13; Ex. 11 ¶ 17; Ex. 6 ¶ 11.) IBM's sources do not support the assertion that SCO, or any other entity that held copyrights to UNIX, contributed to Linux. Neither Caldera, Inc. nor Caldera Systems, Inc. ("Caldera Systems") held any copyrights to UNIX prior to the 2001 merger that created Caldera International. (Ex. 269 ¶ 9; Disputed Facts Nos. 9, 34-37, 104 to SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Tenth | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| ¶ | IBM's [illegible] | SCO [illegible] | IBM's Reply |
|---|---|---|---|
| | | Counterclaim (Nov. 11, 2006).).<br>**IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 45:** The cited source does not support the assertion that SCO "contributed to the further development of Linux." Rather, the cited source supports the assertion that *IBM* contributed source code to Linux, and denies all other allegations, including allegations that SCO distributed IBM's contributions under the GNU General Public License ("GPL").<br>**IBM Ex. 105 (Caldera Systems, Inc.'s October 2000 Form 10-K/A) at 15, 22, 26:** The cited source refers to Caldera Systems, Inc. ("Caldera Systems"), which did not own any copyrights in UNIX. (Disputed Facts Nos. 9, 34-37, 104 to SCO's Memorandum in Opposition to IBM's Motion for Summary Judgment on Its Tenth Counterclaim (Nov. 11, 2006).) The cited source shows that Caldera Systems sought to deliver Linux-related products (p. 15), would be forced to contribute to the development of Linux *if* independent third-parties ceased such development (p. 22), and competed with Linux providers (p. 26). The source does not mention SCO and does not support the assertion that either SCO or Caldera Systems contributed source code to the Linux kernel or any non-proprietary, Linux-related software. Rather, the source stresses that "most of the components of [Caldera Systems'] software offerings are developed by independent parties" (p. 26).<br>**IBM Ex. 364 (SCO website):** The cited source shows only vague support for limited contribution by SCO to elements of Linux that do not constitute part of the infringing Linux material. The cited source does not specify a time frame for the asserted actions. | |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 111. | Linux is an "open source" program, which means, among other things, that its source code is publicly available, royalty-free, and users have the freedom to run, copy, distribute, study, adapt, and improve the software. (Ex. 5 ¶ 22; Ex. 272 ¶ 6; Ex. 221 ¶ 7; Ex. 64 ¶ 8.) | Disputed in part and undisputed in part. SCO disputes that Linux is an "open source" program, because it contains material that has not been properly licensed by the owner(s) of the copyright in such material. In particular, neither SCO nor any other UNIX copyright holder properly released the copyrighted, disputed UNIX material at issue in this case under the GPL. Neither AT&T, Unix Systems Laboratories ("USL"), Novell, Inc. ("Novell"), Santa Cruz, Caldera International, or SCO have placed a notice on or in any products indicating that they grant the rights "to run, copy, distribute, study, adapt and improve" the infringing UNIX material in Linux without royalties, under the terms of the GPL or any other "open source" license, nor did they ever intend to grant such rights. (Ex. 11; Ex. 233 ¶¶ 4, 6, 13; Ex. 269 ¶¶ 9-14; Ex. 6 ¶¶ 11, 14. Placement of such a notice by the copyright holder in the UNIX material is a prerequisite to granting such rights in the UNIX material under the GPL. (IBM Ex. 128 § 0.) IBM has put forth no evidence that any UNIX copyright holder contributed the infringing Linux material to Linux or placed an appropriate GPL notice on Linux, or that other Linux contributors actually owned the copyright in the material they contributed. For instance, Mr. Torvalds admits to having incorporated system calls taken from a Unix licensee – Sun Microsystems. (Disputed Fact No. 2 to Yet, IBM has put forth no evidence showing that Sun granted rights to use such material in Linux. Furthermore, whether SCO or any other UNIX copyright holder has granted such rights, to whom such rights were granted, what conditions were imposed on such rights, and whether use of the infringing Linux material | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | complies with such conditions, are all disputed legal conclusions, not "Disputed Facts." **IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 22:** The cited source does not support the assertion that such rights have been granted in *all* of Linux, and does not specify any particular portion of Linux in which such rights have been granted. **IBM Ex. 272 (Declaration of Linux Torvalds) ¶ 6; Ex. 221 (Declaration of Ransom Love) ¶ 7:** The cited sources constitute legal conclusions asserted without any supporting factual basis. | |
| 112. | Linux not only adheres to open standards, but also is built and maintained by a worldwide group of engineers who share the common goal of making open systems and open source ubiquitous. (Ex. 106 at 3; Ex. 272 ¶ 7; Ex. 221 ¶ 8.) Anyone can freely download Linux and many Linux applications and modify and re-distribute them with few restrictions. (Ex. 107 at 5; Ex. 272 ¶ 8; Ex. 221 ¶ 9.) | Disputed in that the cited material is inadmissible to support the assertion that a worldwide group of engineers who build and maintain Linux share the common goal of making open systems and open source ubiquitous. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 113. | The Linux kernel is distributed under the GNU General Public License ("GPL"). The GPL provides that a person receiving code under the GPL "may copy and distribute verbatim copies of the Program's source code" and "modify [their] copy or copies of the Program or any portion of it". (Ex. 272 ¶ 9; Ex. 128 §§ 1, 2; Ex. 107 at 24; Ex. 221 ¶ 10.) The GPL also provides that a person receiving code under the GPL receives "a license from the original licensor to copy, distribute or modify the Program". (Ex. 128 § 6.) | Disputed to the extent the statement suggests that the foregoing provisions of Linux are the only ones relevant to the terms under which the Linux kernel is distributed. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's [illegible] | SCO's [illegible] | IBM's [illegible] |
|---|---|---|---|
| 114. | At approximately the same time Mr. Torvalds began the development of Linux, Novell acquired (in 1991) an interest in USL, which held all of AT&T's UNIX-related assets, including AT&T's UNIX licensing agreements and copyrights. (Ex. 5 ¶ 10; Ex. 182 ¶ 8.) In 1993, Novell acquired all of the UNIX assets held by USL. (Ex. 240 ¶ 9.) | Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. The declarant is Joseph A. LaSala, Jr. "on behalf of Novell, Inc." (IBM Ex. 240.) Mr. LaSala identifies himself as "Senior Vice President and General Counsel at Novell, Inc." Although not mentioned in the declaration, Mr. LaSala was hired by Novell in 2001. See http://www.novell.com/company/bios/jlasala.html. Mr. LaSala makes no assertion that he has personal knowledge of any matter contained in the declaration. To the contrary, he asserts that the declaration is "based on Novell's knowledge and understanding of the matters described herein," and that he is authorized to submit the declaration "on behalf of Novell." (IBM Ex. 240 ¶ 4.) Federal Rule of Civil Procedure 56(e) states that affidavits in support of summary judgment motions are required to "be made on personal knowledge." Only in paragraphs 30-36 of the declaration does Mr. LaSala make statements that are based on his personal knowledge. Where the deficiencies in an affidavit make it impossible for the Court to determine "which facts it can accept as based on personal knowledge and which must be rejected as being conjecture or belief," the Court should disregard the entire affidavit. Malek v. Martin Marietta Corp., 859 F. Supp. 458, 460-61 (D. Kan. 1994). Those statements regarding occurrences prior to Mr. LaSala's joining Novell in 2001 were clearly not made upon personal knowledge, constitute inadmissible hearsay, and should be disregarded by the Court. See Perez v. Volvo Car Corp., 247 F. 3d 303, 316 (1st Cir. 2001) (where record made clear that events in question occurred prior to affiant's hiring, parts of affidavit concerning those events "cannot properly be considered"). Additionally, to the extent the entire declaration purports to relay Novell's "understanding" of matters, it should be disregarded as not in accordance with Rule 54(e). See Malek, 859 F. Supp. at 460 ("It is the plaintiff's personal knowledge and not his beliefs, opinions, rumors or speculation, that are admissible at trial and the proper subject of any affidavit."); accord Ricks v. Xerox Corp., 877 F. Supp. 1468, 1470 n.1 (D. Kan. 1995). Specifically, paragraphs 7, 11-28, and 40-43 of the declaration convey on their face Novell's "understanding" of the significance of events and are therefore inappropriate evidence in support of a summary judgment motion, in addition to the fact that the Federal Rules of Civil Procedure do not permit Mr. LaSala to declare anything "on behalf of" Novell. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 115. | As an owner of AT&T's UNIX assets, Novell assumed AT&T's rights and obligations under its UNIX licenses, including AT&T's UNIX licensing agreements with IBM and Sequent. Like AT&T and USL before it, Novell managed UNIX licensing agreements by, among other things, interpreting, explaining, and enforcing their terms. (Ex. 240 ¶ 10.) | Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. (See response to IBM Paragraph 114.) | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 116. | In acquiring AT&T's rights to the Agreements, Novell understood them to place restrictions on the extent to which AT&T's licensees could use UNIX System V. Novell did not understand the UNIX licenses to confer on AT&T or Novell (as AT&T's successor) any rights to the code, methods or concepts of AT&T's and Novell's licensees — whether or not the licensees' code, methods or concepts were or had been part of a modification or derivative work of AT&T's UNIX software product. (Ex. 240 ¶¶ 11-23.) | Disputed in that there is substantial evidence demonstrating (and easily permitting the inference) that the members of Novell's UNIX licensing group understood the UNIX licenses to require the licensees to keep confidential all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 63-96.) Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. (See response to IBM Paragraph 114.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration. |
| 117. | Novell understood that UNIX licensees could do as they wished with any non-UNIX portions of their modifications and derivative works of the UNIX software product. That is how Novell understood its own UNIX license with AT&T. AT&T made it clear to Novell, and Novell to AT&T, that Novell, as an AT&T licensee, could do as it wished with its own code, methods, and concepts. AT&T stated that it asserted no rights to Novell material, even if included in a modification or derivative work of UNIX software. (Ex. 240 ¶¶ 11-23.) | Disputed in that there is substantial evidence demonstrating (and easily permitting the inference) that AT&T and Novell understood the UNIX licenses to require the licensees to keep confidential all parts of their modifications and derivative works based on the licensed UNIX System V software product, and that neither AT&T nor Novell suggested otherwise to each other. (¶¶ 63-96.) Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. (See response to IBM Paragraph 114.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 118. | Novell shared its view of its licenses with its new (and AT&T's former) licensees, with whom Novell (like AT&T) had frequent dealings. Like AT&T, Novell intended for its licensees to rely on its statements and assurances about what licensees could do and not do with their original works. (Ex. 183 ¶¶ 5-6; Ex. 240 ¶¶ 11-23.) | Disputed in that there is substantial evidence demonstrating (and easily permitting the inference) that AT&T and Novell understood the UNIX licenses to require the licensees to keep confidential all parts of their modifications and derivative works based on the licensed UNIX System V software product, and that neither AT&T nor Novell suggested otherwise to each other. (¶¶ 63-96.) Disputed in that like the AT&T licenses, Novell's own UNIX System V license agreements state expressly that Novell and its licensees intended to exclude any previous or subsequent discussions from the agreement the parties had reached. (¶¶ 18, 91-92.) Disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the licensees did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.)Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. (See response to IBM Paragraph 114.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 119. | Novell representatives made clear to Novell's licensees, including IBM and Sequent, that Novell asserted no rights to the licensees' code, methods and concepts and that they could do with them as they wished, whether or not they were included in modifications or derivative works of UNIX software products. To the extent Novell ever had any right to its licensees' code, methods, and concepts, Novell relinquished it. (Ex. 240 ¶¶ 11-23.) | Disputed in that substantial evidence shows (and easily permits the inference) that Novell held no such understanding of the licenses and had no such communications with licensees regarding rights of disclosure. (¶¶ 63-96.) Disputed to the extent the statement suggests that Novell represented that UNIX System V licensees could do as they wished with "the licensees' code, methods and concepts" without regard to whether such material was included in the licensees' modifications or derivative works based on the licensed UNIX System V software product. (¶¶ 63-96.) Disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the licensees did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement call for a legal conclusion. Disputed in that IBM Exhibit 240 constitutes, in relevant part, inadmissible evidence. (See response to IBM Paragraph 114.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. Mr. LaSala's declaration is proper since it is based upon the personal knowledge of Novell, Inc., a legal person, on whose behalf he is authorized to speak regarding the matters in the declaration. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 120. | Just as they had before Novell acquired USL, IBM, Sequent and other UNIX licensees exercised ownership and control over their original works, despite the fact that those works were (or had been) part of a modification and derivative work of UNIX System V or were (or had been) associated in some respect with UNIX System V, such as by publicly disclosing them. (Ex. 561; Ex. 562; Ex. 563; Ex. 567; Ex. 568; Ex. 569; Ex. 571.) | See Response to IBM Statement of Fact No. 90. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. Further, the material referred to by SCO does not support SCO's statement. |
| 121. | Put differently, Novell's UNIX licensees publicly disclosed code, methods, and concepts from their flavors of UNIX after Novell acquired AT&T's UNIX assets. (Ex. 561; Ex. 562; Ex. 563; Ex. 567; Ex. 568; Ex. 569; Ex. 571.) | See Response to IBM Statement of Fact No. 90. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. Further, the material referred to by SCO does not support SCO's statement. |
| 122. | For example, IBM published The Advanced Programmer's Guide to AIX 3.x, which contained source code, methods and concepts from AIX (Ex. 493), and disclosed AIX methods and concepts in patent applications and issued patents including Patent No. 5,202,971 (Ex. 567), Patent No. 5,175,852 (Ex. 495), Patent No. 5,421,011 (Ex. 496), and Patent No. 5,428,771 (Ex. 497). Likewise, Sequent disclosed methods and concepts in patent applications and issued patents including Patent No. 5,442,758 (Ex. 498), and Patent No. 5,185,861 (Ex. 499). | See Response to IBM Statement of Fact No. 90. Disputed to the extent that the statement suggests that AT&T or USL knew or should have known about the substance of IBM's patent applications. (See Argument, Part IV.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. Further, the material referred to by SCO does not support SCO's statement. |
| 123. | IBM and Sequent were not alone in disclosing the code, methods, and concepts of their flavors of UNIX. For example, Sun Microsystems, Inc. ("Sun") disclosed source code from Solaris, its UNIX flavor, in Solaris Porting Guide (1995) (Ex. 561 at 228), and Solaris Multithreaded Programming Guide (Ex. 562). | See Response to IBM Statement of Fact No. 90. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. Further, the material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 124. | Like AT&T and USL before it, Novell was aware and understood that its licensees were exercising their full rights of ownership and disclosing the code, methods and concepts of their flavors of UNIX. (Ex. 183 ¶¶ 6-7; Ex. 250 ¶¶ 6-7; Ex. 271 ¶¶ 5-6; Ex. 276 ¶¶ 6-7.) Yet, Novell took no steps to stop its licensees from doing as they wished with their original works. (Ex. 183 ¶¶ 6-7; Ex. 250 ¶¶ 6-7; Ex. 271 ¶¶ 5-6; Ex. 276 ¶¶ 6-7.) | Disputed in that substantial evidence shows (and easily permits the inference) that Novell representatives did not actually know about such disclosures. (¶ 96.) The evidence further shows (and easily permits the inference) that such disclosures, Including as made under copyright protection, were not material breaches of the agreements. (Ex. 139 ¶¶ 2-22.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. Further, the material referred to by SCO does not support SCO's statement. |

| No. | IBM's Statement of Facts | SCO's Response | IBM's Reply |
|---|---|---|---|
| 125. | Based on its understanding of the Agreements, the statements of Novell representatives and Novell's failure to take any action to preclude licensees from doing as they wished with their original works, IBM continued to develop its flavor of UNIX. Similarly, Sequent, having received no indication of a different interpretation of the Agreements from Novell, continued to develop its own Dynix operating system. (Ex. 257 ¶¶ 3-5; Ex. 252 at 67:21-68:11; 97:25-98:20, 140:12-21; Ex., 596 ¶¶ 2-4.) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent that the cited material does not support the assertion that IBM or Sequent relied on "Novell's failure to take any action to preclude licensees from doing as they wished with their original works" in deciding to continue to develop their AIX and Dynix derivative works. Disputed to the extent the statement suggests that, absent an "indication of a different interpretation of the Agreements," IBM and Sequent would not have continued to develop AIX and Sequent as they did. (¶¶ 30-62.) Disputed to the extent the statement suggests that IBM knew the terms and conditions of any other UNIX licensee's license arrangement. (Ex. 333 ¶ 23; Ex. 355 ¶ 23.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| | | SCO's Response | IBM's Reply |
|---|---|---|---|
| 126. | SECTION REDACTED<br><br>Sequent likewise invested tens of millions of dollars in the development and marketing of Dynix and wrote millions of lines of original source code. (Ex. 257 ¶ 10; Ex. 252 at 67:21-68:11; 97:25-98:20, 140:12-21; Ex. 181, Ex. G; Ex. 596 ¶¶ 3-4.) | Depending on the meaning of the term "original source code," disputed to the extent the cited material does not identify what lines of code in AIX or Sequent were written by developers without reference or access, or experience based on such reference or access, to the licensed UNIX System V software product. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 127. | Neither IBM nor Sequent would have continued to invest in AIX and Dynix as they did if they had believed that Novell (instead of IBM and Sequent) owned and had the right to control their original works, whether or not they were included in a modification or derivative work of UNIX System V. (Ex. 257 ¶ 6; Ex. 295 at 27:2-25).) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement suggests that AT&T or any of its successors-in-interest claimed to own IBM's or sequent's "original works." (¶¶ 76-96.) Disputed In that IBM and Sequent had compelling reasons to continue to invest in AIX and Dynix as they did under the terms of their UNIX System V license agreements. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 128. | After Novell announced the termination of a project related to Linux, members of Project Corsair (as it was known) left Novell to form Caldera, Inc. ("Caldera), a predecessor of SCO, in 1994. (Ex. 107; Ex. 440; Ex. 193 ¶ 6; Ex. 221 ¶ 16.) | Disputed in part and undisputed in part. Caldera, Inc. is not a "predecessor" of SCO to the extent that term could be construed as making the past actions of Caldera, Inc. attributable to SCO or indicating that Caldera, Inc. could grant others rights to use the infringed SVr4 material. (See Disputed Fact No. 4 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 129. | Caldera was formed to develop and market software based on the Linux operating system and to provide related services enabling the development, deployment, and management of Linux-specialized servers. (Ex. 221 ¶ 17; Ex. 107 at 6, 31; Ex. 193 ¶ 7; 242 ¶ 6.) In fact, Caldera was the first company to invest heavily in the establishment of Linux as an acceptable business solution. (Ex. 221 ¶ 18; Ex. 441.) | Disputed in part and undisputed in part. SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts Nos. 4, 22 to IBM's Memorandum in Support of Its Motion for Summary Judgment on Its Tenth Counterclaim (Nov. 11, 2006).) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 130. | Caldera continued the work done by Novell on Project Corsair to develop a Linux desktop operating system and eventually delivered a product called "Caldera Network Desktop" in 1995. (Ex. 221 ¶ 19; Ex. 440; Ex. 107 at 8; Ex. 283 at 33; Ex. 193 ¶ 8; Ex. 242 ¶ 7.) | Disputed in part and undisputed in part. SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts Nos. 4, 22 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) IBM's cited sources do not indicate that the Linux products created by Caldera, Inc. were created through any affiliation with Novell, or that Novell transferred any rights or copyrights to Caldera, Inc. (See Disputed Facts Nos. 4, 22 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 131. | Caldera also made code contributions to Linux and helped and encouraged independent software vendors and manufacturers to port their programs to its Linux products in an attempt to provide the types of software that had been unavailable for Linux to that time. (Ex. 440; Ex. 442; Ex. 221 ¶ 31.) | Disputed in part and undisputed in part. SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts Nos. 4, 22 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 132. | To facilitate the porting of Linux to the existing applications in the market that were written primarily for UNIX-based operating systems, Caldera worked on making its Linux products compliant with various UNIX standards, including the X/Open brand for UNIX 95, and the POSIX.1 specification. (Ex. 221 ¶ 32; Ex. 442.) | Disputed in part and undisputed in part. SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts Nos. 4, 22 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 133. | To achieve compliance with UNIX standards with its Linux products, Caldera hired software developers that had both UNIX and Linux experience to work on making Linux compliant with UNIX standards. (Ex. 221 ¶ 35; Ex. 442.) | Disputed in part and undisputed in part. SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts Nos. 4, 22 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |
| 134. | In 1995, as Caldera was beginning its Linux business, Novell entered negotiations with The Santa Cruz Operation, Inc. ("Santa Cruz") concerning the sale of certain Novell assets relating to its UNIX and UnixWare software products. (Ex. 239 ¶ 4; Ex. 123.) | Depending on the meaning of the term "certain Novell assets," disputed in that the parties negotiated the sale of Novell's UNIX business assets, and intellectual property, with few limited exceptions. (¶¶ 169-82.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 135. | On September 19, 1995, Novell and Santa Cruz executed an Asset Purchase Agreement ("APA"). (Ex. 239 ¶ 5.) The parties entered into two Amendments to the APA: Amendment No. 1 on December 6, 1995, and Amendment No. 2 on October 16, 1996. (Ex. 239 ¶ 6; Ex. 502; Ex. 444; Ex. 123.) | Undisputed. | Undisputed. |
| 136. | Santa Cruz did not have the financial capacity to pay the purchase price contemplated by Novell for its UNIX assets. (Ex. 182 ¶ 43; Ex. 254 ¶ 10; Ex. 239 ¶ 8.) To bridge the price gap and consummate the transaction, Novell and Santa Cruz agreed that Novell would receive Santa Cruz stock and retain certain UNIX rights. (Ex. 123; Ex. 239 ¶ 8.) | Undisputed. | Undisputed. |
| 137. | Under the APA and its Amendments, Santa Cruz obtained a variety of assets, including hundreds of contracts and licenses, various trademarks, source code and binaries to UnixWare products, and physical assets such as furniture and personal computers. (Ex. 123; Ex. 444; Ex. 502; Ex. 239 ¶ 7.) | Depending on the meaning of the term "a variety of assets," disputed in that the parties negotiated the sale of Novell's UNIX business assets, and intellectual property, with limited exceptions. (¶¶ 169-82.) Disputed to the extent the statement suggests that Santa Cruz did not obtain the UNIX copyrights. (¶¶ 169-82.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 138. | Novell retained the right to receive royalty payments under System V Release X ("SVRX") licenses, prior approval rights relating to new SVRX licenses, and amended SVRX licenses, the right to direct Santa Cruz to take certain actions relating to SVRX licenses and the right to conduct audits of the SVRX license programs. (Ex. 123 § 4.16; Ex. 239 ¶ 8.) | Disputed to the extent the statement suggests that the rights retained by Novell under the APA extend beyond the right to continue to receive and protect royalties paid by then-existing SVRX licensees for their ongoing distribution of SVRX binary products pursuant to UNIX sublicensing agreements. (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| | [illegible]ent | SCO's Response | IBM's Reply |
|---|---|---|---|
| 139. | Santa Cruz assumed responsibility for administering the collection of royalty payments from SVRX licenses. The APA provided that Santa Cruz would collect and pass through to Novell 100% of the SVRX royalties. In return, Novell agreed to pay Santa Cruz an administrative fee of 5% of those royalty amounts. Santa Cruz also agreed to pay additional royalties relating to other products. (Ex. 123 § 4.16(a); Ex. 239 ¶ 9.) | Disputed to the extent the words "royalty" or "royalties" in the first three sentences refers to anything other than the royalties paid by then-existing SVRX licensees for their ongoing distribution of SVRX binary products pursuant to UNIX sublicensing agreements, and disputed to extent the word "royalties" in the last sentence suggests that Novell retained any rights to the "other products" other than the right to receive certain contingent payments for the projected (but ultimately unrealized) sales of the "other products." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 140. | As specified by Section V.A of Schedule 1.1(b) of the APA, it excluded from the transfer and Novell retained "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare". Amendment No. 2 to the APA addressed copyrights but did not effect the transfer of any copyrights to Santa Cruz. (Ex. 123 § 1.1(b); Ex. 444; Ex. 239 ¶ 10.) | Disputed. The parties intended to have the UNIX copyrights transferred from Novell to Santa Cruz in the APA, and Amendment No. 2 clarified that the parties had so intended. (¶¶ 169-82.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 141. | Novell also retained rights to supervise Santa Cruz's administration of SVRX licenses. (Ex. 239 ¶ 11.) Section 4.16(b) of the APA provides that:<br>Buyer shall not, and shall not have the authority to, amend, modify or waive any right under or assign any SVRX License without the prior written consent of Seller. In addition, at Seller's sole discretion and direction, Buyer shall amend, supplement, modify or waive any rights under, or shall assign any rights to, any SVRX License to the extent so directed in any manner or respect by Seller. In the event that Buyer shall fail to take any such action concerning the SVRX Licenses as required herein, Seller shall be authorized, and hereby is granted, the rights to take any action on Buyer's own behalf. (Ex. 123 § 4.16(b).) | Depending on the meaning of the phrase "supervise Santa Cruz's administration of SVRX licenses" and the term "SVRX licenses," disputed in that the parties did not intend to permit Novell to interfere with Santa Cruz's exercise of its rights with respect to SVRX source code in accordance with the transfer of assets under the APA. (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| ¶ | [illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 142. | Novell, therefore, retained the "sole discretion" to direct Santa Cruz to amend, supplement, modify, waive, or assign any rights under or to the SVRX licenses; if Santa Cruz fails to take any such action, the APA specifically granted Novell the right to take these actions on behalf of Santa Cruz. (Ex. 123 § 4.16(b); Ex. 239 ¶ 8) Santa Cruz recognized this right in Amendment X to IBM's Software and Sublicensing Agreements, to which Novell was a party, and which noted that "Novell retained… certain rights with respect to" the agreements IBM entered into with AT&T, including "Software Agreement SOFT-00015 as amended" and "Sublicensing Agreement SUB-00015A as amended". (Ex. 124 at 1.) | Disputed to the extent the statement suggests that the rights retained by Novell under the APA extend beyond the right to continue to receive and protect royalties paid by then-existing SVRX licensees for their ongoing distribution of SVRX binary products pursuant to UNIX sublicensing agreements (¶¶ __-__), in that the parties did not intend to permit Novell to interfere with Santa Cruz's exercise of its rights with respect to SVRX source code in accordance with the transfer of assets under the APA. (¶¶169-82). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| [illegible] | [illegible] | [illegible] | [illegible] Reply |
| --- | --- | --- | --- |
| 143. | While Novell and Santa Cruz shared ownership of AT&T's UNIX assets (from 1995 to 2001), representatives of Novell and Santa Cruz told SVRX licensees that they could do as they wished with their original code. They told licensees they were free to do as they wished with their own code, modifications and derivative works, so long as the code, modifications, and derivative works did not contain System V code. (Ex. 227 ¶¶ 8-11; Ex. 266 ¶¶ 6-13.) | Disputed to the extent the statement suggests that Novell had any ownership rights in Santa Cruz's UNIX licenses or copyrights. (¶¶ 169-82.) Disputed in that substantial evidence shows (and easily permits the inference) that Novell and Santa Cruz held no such understanding of the licenses and had no such communications with licensees regarding rights of disclosure. (¶¶ 63-163.) Disputed to the extent the statement suggests that Novell or Santa Cruz represented that UNIX System V licensees could "do as they wished with their own code, modifications and derivative works" without regard to whether such material was included in the licensees' modifications or derivative works based on the licensed UNIX System V software product. (¶¶ 63-163.) Disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the licensees did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| | SCO's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 144. | IBM, Sequent and other SVRX licensees continued to use the non-SVRX portions of their flavors of UNIX as they wished. (Ex. 564; Ex. 565.) | See Response to IBM Statement of Fact No. 90. | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. |
| 145. | For example, IBM publicly disclosed AIX methods and concepts in AIX/6000: Internals and Architecture (1996), which included an entire chapter on the Journaled File System (Ex. 503 at 55-65), and Hewlett-Packard disclosed the methods and concepts behind the Journaled File System in its version of UNIX called HP-UX in a book titled HP-UX: Tuning and Performance (2000) (Ex. 565). | See Response to IBM Statement of Fact No. 90. | Deemed admitted: The material referred to by SCO does not support SCO's statement.<br><br>SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The declaration referred to constitutes a supplemental expert report and was not timely disclosed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 146. | Representatives of Novell and Santa Cruz were aware and understood that its licensees were exercising their full rights of ownership and disclosing the code, methods and concepts of their flavors of UNIX. Neither company took any steps to preclude them from doing as they wished with their original works. (Ex. 183 ¶¶ 6-7; Ex. 250 ¶¶ 6-7; Ex. 271 ¶¶ 5-6; Ex. 276 ¶¶ 6-7; Ex. 227 ¶ 8-11.) | Disputed to the extent the statement suggests that Novell had any ownership rights in Santa Cruz's UNIX licenses or copyrights. (¶¶ 169-82.) Disputed to the extent the statement suggests that the cited declarants had the authority to modify the terms of the UNIX license agreements, or had the authority to waive any of Santa Cruz's rights under the UNIX System license agreements. (¶¶ 90.) Disputed in that substantial evidence shows (and easily permits the inference) that Santa Cruz had no such awareness or understanding. (¶¶ 63-163.) Depending on the meaning of the term "original works," disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) The evidence further shows (and easily permits the inference) that such disclosures, including as made under copyright protection, were not material breaches of the agreements. (Ex. 139 ¶¶ 2-22.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 147. | Santa Cruz representatives, including David McCrabb, the President of Santa Cruz's Server Software Division, told System V licensees that they were free to do as they wished with their own code, modifications and derivative works, so long as the code, modifications, and derivative works did not contain System V code. Santa Cruz representatives, including Mr. McCrabb, told licensees that it interpreted the license agreements in this manner. (Ex. 227 ¶ 8.) | Disputed to the extent the statement suggests that Mr. McCrabb had the actual or apparent authority to speak for Santa Cruz regarding the scope of Santa Cruz's UNIX licenses, or had the authority to modify the terms of the UNIX license agreements, or had the authority to waive any of Santa Cruz's rights under the UNIX System license agreements. (¶¶ 76-96.) Disputed in that substantial evidence shows (and easily permits the inference) that Mr. McCrabb and his colleagues at Santa Cruz had no such understanding and made no such statements. (¶¶ 63-163.) Depending on the meaning of the term "their own code, modifications and derivative works," disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreements, the parties did not intend to exclude any previous or subsequent oral discussions from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 148. | Based on its understanding of the Agreements, the representations of Novell and Santa Cruz representatives and Novell's failure to take any action to preclude licensees from doing as they wished with their original works, IBM continued to develop its flavor of UNIX. Similarly, Sequent, having received no indication of a different interpretation of the Agreements from Santa Cruz, continued to develop its own Dynix operating system. (Ex. 257 ¶¶ 3-5; Ex. 252 at 67:21-68:11; 97:25-98:20, 140:12-21; Ex. 596 ¶¶ 2-5.) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent that the cited material does not support the assertion that IBM or Sequent relied on "Novell's failure to take any action to preclude licensees from doing as they wished with their original works" in deciding to continue to develop their AIX and Dynix derivative works. Disputed to the extent the statement suggests that, absent an "indication of a different interpretation of the Agreements," IBM and Sequent would not have continued to develop AIX and Sequent as they did. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 149. | SECTION REDACTED<br><br>Up to the time it was acquired by IBM, Sequent likewise invested tens of millions of dollars in the development and marketing of Dynix and wrote millions of lines of original source code. (Ex. 257 ¶ 10; Ex. 596 ¶¶ 2-4.) | Depending on the meaning of the term "original source code," disputed to the extent the cited material does not identify what lines of code in AIX or Sequent were written by developers without reference or access, or experience based on such reference or access, to the licensed UNIX System V software product. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 150. | Neither IBM nor Sequent would have continued to invest in AIX and Dynix as they did if they had believed that Novell or Santa Cruz (instead of IBM and Sequent) owned and had the right to control their original works, whether or not they were part of a modification and derivative work of UNIX System V. (Ex. 257 ¶ 6; Ex. 596 ¶¶ 3-4.) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous and subsequent oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement suggests that AT&T or any of its successors-in-interest claimed to own IBM's or sequent's "original works," (¶¶ 76-96.) Disputed to the extent the statement suggests that IBM or Sequent had compelling business reasons to insist on the "control" as described by IBM herein. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 151. | While Novell and Santa Cruz shared an interest in UNIX System V software and related assets, Caldera continued to develop and promote Linux. (Ex. 106 at 2-5.) | Disputed to the extent the statement suggests that Novell had any ownership rights in Santa Cruz's UNIX licenses or copyrights. (¶¶ 169-82.) | Deemed admitted: Undisputed that Caldera continued to develop and promote Linux.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, The material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 152. | To expand and enhance its Linux business, Caldera acquired the Server Software and Professional Services divisions of Santa Cruz and its UNIX-related assets on May 7, 2001. (Ex. 106 at 16; Ex. 221 ¶ 80.) | Disputed to the extent the statement suggests that Caldera, Inc. made the acquisition, or made it solely "to expand and enhance its Linux business," which statement the cited material does not support. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 153. | Caldera purchased the UNIX assets of Santa Cruz with an eye toward open-sourcing the UNIX technology to improve Linux. (Ex. 221 ¶ 85; Ex. 471.) Because the UNIX assets were rapidly losing their value and because the market was moving toward Linux, Caldera's CEO, Ransom Love, stated that "UNIX is dead, except as a value add to Linux". (Ex. 221 ¶ 85; Ex. 472.) | Disputed to the extent the statement suggests that either Caldera or Mr. Love immediately intended to, or ever did, open-source the UNIX technology, to improve Linux or for any other reason. (Ex. 386 ¶¶ 3-9.) Disputed to the extent the statement suggests that Caldera, Inc. ("Caldera International") made the acquisition, which statement the cited material does not support. Disputed to the extent the statement suggests that IBM's contributions to Linux in material breach of its UNIX System V license agreements were not a substantial factor in the downturn of Santa Cruz's UNIX business by the time of Caldera's acquisition of the business. (¶¶ 192-97.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 154. | Although Caldera ultimately did not contribute all of its UNIX assets to Linux and distributed certain UNIX products, Caldera positioned its Linux products ahead of its UNIX products. (Ex. 340 at 31:20-25, 33:12-25, 34:1-12; 55:4-15; Ex. 472.) | Disputed to the extent the statement suggests that IBM's contributions to Linux in material breach of its UNIX System V license agreements were not a substantial factor in the downturn of Santa Cruz's UNIX business by the time of Caldera International's acquisition of the business. (¶¶ 192-97.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 155. | At the time Caldera acquired Santa Cruz's UNIX assets, Santa Cruz did not believe it was selling, and Caldera did not believe it was buying, the right to control what all UNIX System V licensees could do with their original works. (Ex. 227 ¶¶ 37-38; Ex. 221 ¶¶ 107-09.) | Disputed to the extent the statement suggests that Mr. McCrabb had the actual or apparent authority to speak for Santa Cruz regarding the scope of Santa Cruz's UNIX licenses, or had the authority to modify the terms of the UNIX license agreements, or had the authority to waive any of Santa Cruz's rights under the UNIX System license agreements. (¶ 90.) Depending on the meaning of the term "their original works," disputed in that substantial evidence shows (and easily permits the inference) that Mr. McCrabb and his colleagues at Santa Cruz had no such understanding. (¶¶ 63-163.) Depending on the meaning of the term "their original works," disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Depending on the meaning of the term "their original works," disputed to the extent the statement suggests that Mr. Love specifically considered at the time of acquisition the issue of the extent of Caldera International control over the modifications and derivative works the licensees had developed based on the licensed UNIX System V software product. (Ex. 386 ¶ 7.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 156. | In May 2002, SCO formed a partnership, known as UnitedLinux, with three other Linux distributors, to streamline Linux development and certification around a global, uniform distribution of Linux designed for business. (Ex. 348; Ex. 221 ¶¶ 94-96.) | Disputed to the extent the statement suggests that Caldera International or SCO chose to undertake Linux activities "instead" of pursuing its UNIX products and services or UNIX intellectual property rights. Neither Caldera International nor SCO ever did or intended to waive intellectual property rights in UNIX as a result of any Linux-related activities. (See Disputed Facts Nos. 4-5 to IBM's Motion for Summary Judgment on Its Tenth Counterclaim.) Caldera International derived 95% of its revenues from its UNIX products and services. (See id. No. 83.) Furthermore, Caldera International nor SCO investigated the infringement of UNIX material in Linux until late 2002 or early 2003. (See id. No. 109.) IBM's cited documents do not support its assertion that UnitedLinux activities were an alternative to litigation or other pursuit of UNIX intellectual property rights. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 157. | In a November 2002 launch event co-sponsored by IBM, UnitedLinux released its first Linux distribution, "UnitedLinux Version 1.0". (Ex. 407.) In January 2003, IBM joined UnitedLinux as a technology partner to, among other things, help promote the recently released product. (Ex. 408.) UnitedLinux Version 1.0 was marketed and sold by each of the partners in UnitedLinux under its own brand name. (Ex. 407.) SCO's release of UnitedLinux was called "SCO Linux 4". (Ex. 349.) | Undisputed. | Undisputed. |

| | Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 158. | SCO Linux 4 included the very code and technologies that SCO claims IBM improperly contributed to Linux. (See Ex. 33 at 43; Ex. 44 at 3-22.) This material includes JFS (Item 1), RCU (Item 2) and certain "negative know how" (Items 23 and 90). (See id.) For the remaining Items of allegedly misused material, SCO indicates that it has "not presently determined" whether the material is included in its UnitedLinux distribution. (Id.) | Undisputed. | Undisputed. |
| 159. | In its Revised Response to IBM's interrogatories, SCO stated that the allegedly misused material "is included in any product that contains the Linux kernel 2.4 and above, which is sold or distributed by hundreds of entities around the world", including by SCO. (Ex. 33 ¶ 43.) In particular, SCO conceded that its "SCO Linux Server 4.0" products contain such code. (Id.) | Undisputed. | Undisputed. |
| 160. | Although not identified by SCO in its interrogatory responses, SCO's earlier Linux distributions also contain code SCO claims IBM improperly contributed to Linux. (See Ex. 350; Ex. 351.) Among other products, SCO's "OpenLinux Server 3.1.1" and "OpenLinux Workstation 3.1.1" products, which were released in January 2002, both include the Linux 2.4 kernel. (See Ex. 350 at 2; Ex. 351 at 2; Ex. 296 at 16:18-23.) | Disputed In part and undisputed in part. SCO disputes that IBM's cited sources support the assertion that Caldera International or SCO distributed the OpenLinux Server 3.1.1 or OpenLinux Workstation 3.1.1 at any time after January of 2002. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 161. | In fact, SCO specifically advertised to its customers that its distributions of Linux included some of the very technology it now complains IBM should not have contributed to Linux. (See Ex. 350; Ex. 351; Ex. 352; Ex. 396; Ex. 353.) | Depending on the meaning of the clause "some of the very technology it now complains IBM should not have contributed to Linux," disputed to the extent that the statement does not specify the "very technology" at issue. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 162. | For example, in its product announcements for OpenLinux Server 3.1.1 and OpenLinux Workstation 3.1.1, SCO specifically advertised that the products included new features such as "journaling file system support". (Ex. 350 at 2; Ex. 351 at 2.) | Disputed to the extent that the statement suggests that SCO specifically advertised that the products included the Journaling File System (or "JFS") taken from AIX, which statement the cited material does not support. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 163. | Similarly, in its November 2002 product announcement for "SCO Linux Server 4.0", which was based on UnitedLinux Version 1.0, SCO noted that "[t]he core of SCO Linux Server 4.0 is the 2.4.19 Linux kernel. New features include broadened USB support, Logical Volume Manager, improved journaling file system support". (Ex. 352 (emphasis added).) | Disputed to the extent that the statement suggests that SCO specifically advertised that the products included the Journaling File System (or "JFS") taken from AIX, which statement the cited material does not support. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 164. | Likewise, SCO's Technical Overview of SCO Linux 4.0 emphasized that its product included "JFS (Journaling File System Developed by IBM)". (Ex. 396 (emphasis added).) | Undisputed. | Undisputed. |
| 165. | Although SCO claims to have "discontinued" distributing any products containing the source code it claims IBM should not have disclosed, it continued to do so after it filed this lawsuit. (See Ex. 44; Ex. 45; Ex. 296 at 92:1-22; 353; 33 at Tab 121; Ex. 505; Ex. 486.) | Disputed to the extent the statement suggests that SCO did not timely discontinue its intentional distribution of its Linux products. (¶¶ 220-33.) Disputed to the extent the statement suggests that, as a legal conclusion, SCO was not entitled reasonably to wind-down its Linux business in support of its existing customers after bringing this lawsuit. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 166. | For example, SCO released its "SCO Linux Server 4.0 for the Itanium Processor Family" distribution on April 14, 2003, after SCO filed its original Complaint. (See Ex. 353; Ex. 1.) In the product announcement, SCO touted the new features of this release, including "improved journaling file system support". (Ex. 353 at SCO1269793.) | Undisputed. | Undisputed. |

| | IBM's Sta[illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 167. | SCO has also produced invoices and other documentation reflecting SCO's continued distribution of its OpenLinux 3.1.1 and Linux Server 4.0 products until at least January 2004. (See Ex. 33 at Tab 121; Ex. 505; Ex. 296; Ex. 486.) | Undisputed. | Undisputed. |
| 168. | Moreover, SCO made available to the public as recently as the end of 2004 the Linux 2.4 kernel for download from its website. (See Ex. 45 at 3; Ex. 167 ¶ 11.) The version of Linux available from SCO's website includes code SCO claims IBM disclosed in violation of its contracts. (See Ex. 44; Ex. 45; Ex. 33 at 43; Ex. 167 ¶¶ 5, 11.) | Undisputed. | Undisputed. |
| 169. | In addition, SCO has admitted that it made available to the public for download material that SCO claims IBM improperly contributed to Linux. (See Ex. 44 at 3-22.) This material includes JFS (Item 1), RCU (Item 2) and certain "negative know how" (Items 23 and 90). (See id.) For the remaining Items of allegedly misused material, SCO indicates that it has "not presently determined" whether it made the material available to the public for download. (Id.) | Undisputed. | Undisputed. |
| 170. | SCO distributed source code for the Linux 2.4 kernel, which is contained in SCO's OpenLinux Server 3.1.1, OpenLinux Workstation, and Linux Server 4.0 products, under the terms of the GPL. (Ex. 128; Ex. 296 at 75:9-12.) The terms of the GPL permit licensees freely to use, copy, distribute and modify whatever code is provided thereunder. (Ex. 128.) | Disputed to the extent the statement seeks to summarize the terms of the GPL and to the extent the statement draws a legal conclusion. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 171. | Following its acquisition of Santa Cruz's UNIX assets, Caldera was unable to make a profit, switched management, changed its name to SCO, and adopted a new business model focused on litigation. (See, e.g., Ex. 1; Ex. 141; Ex 142; Ex. 423; Ex. 427.) | Disputed in that the cited material does not support the assertions. | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rnle 56. |
| 172. | SCO filed its original Complaint, which featured a claim for the misappropriation of trade secrets, on March 6, 2003. (Ex. 1.) In that Complaint, SCO, among other things, alleged that IBM had breached its UNIX System V license by "subject[ing] SCO's UNIX trade secrets to nnrestricted disclosure, unauthorized transfer and disposition, unauthorized use, and has otherwise encouraged others in the Linux development community to do the same". (Id. ¶ 135.) | Depending on the meaning of the term "featured," disputed in that the cited material does not support the assertion that SCO treated its claim for the misappropriation of trade secrets with any higher priority that the other claims brought in the original Complaint. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 173. | In the Complaint, SCO did not identify with any specificity what "UNIX trade secrets" it claimed were at issue. (See Ex. 1.) SCO instead described its trade secrets only as "unique know how, concepts, ideas, methodologies, standards, specifications, programming, techniques, UNIX Software Code, object code, architecture, design and schematics that allow UNIX to operate with unmatched extensibility, scalability, reliability and security". (Id. ¶ 105.) SCO did not identify any specific UNIX code upon which it based its claim. (See id.) | Depending on the meaning of the phrases "with any specificity" and "specific UNIX code," disputed to the extent the statement suggests that SCO did not detail the nature of its claims based on what SCO knew at the time. (Ex. 165 ¶ 37.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 174. | SCO filed an Amended Complaint on July 22, 2003. (Ex. 2.) The Amended Complaint did not identify in any greater detail the trade secrets allegedly misappropriated by IBM. (See id.) Again, SCO described its trade secrets only as "unique know how, concepts, ideas, methodologies, standards, specifications, programming, techniques, UNIX Software Code, object code, architecture, design and schematics that allow UNIX to operate with unmatched extensibility, scalability, reliability and security". (Id. ¶ 161.) | Depending on the meaning of the phrase "in any greater detail," disputed to the extent the statement suggests that SCO did not detail the nature of its claims based on what SCO knew at the time. (Ex. 165 ¶ 37.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 175. | SCO thereafter sought, and was granted, permission to file a Second Amended Complaint. (Ex. 3.) In its Second Amended Complaint, filed on February 27, 2004, SCO abandoned its claim for misappropriation of trade secrets altogether. (See id.) In fact, at a hearing on December 5, 2003, SCO acknowledged that there are in fact no trade secrets in UNIX System V. Counsel for SCO stated: "There is no trade secret in UNIX system [V]. That is on the record. No problem with that." (Ex. 414 at 46:2-3.) | Disputed to the extent the statement draws a legal conclusion. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 176. | In its Second Amended Complaint, SCO asserts four separate breach of contract claims, all of which rest on the underlying allegation that IBM breached its licenses for the UNIX System V software product. (Ex. 3 ¶¶ 110-72.) | Undisputed. | Undisputed. |
| 177. | SCO's First and Third Causes of Action allege that IBM misused source code subject to the IBM and Sequent Software Agreements by contributing such code to Linux. (Ex. 3 ¶¶ 110-36, 143-66.) Specifically, SCO alleges that IBM and Sequent breached Sections 2.01, 2.05, 4.01, 6.03, 7.06(a) and 7.10 of the Software Agreements. (Ex. 3 ¶¶ 112-25.) | Disputed to the extent the statement suggests that SCO does not allege as part of its claim for breach of contract that IBM misused methods, concepts and know-how subject to the IBM and Sequent Software Agreements by contributing such technology to Linux. (IBM Ex. 3.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 178. | SCO's claims rest on the proposition that "[t]he AIX work as a whole and the Dynix/ptx work as a whole are modifications of, or are derived from [UNIX] System V". (Ex. 132 at 2.) Under SCO's theory of the case, all of the tens of millions of lines of code ever associated with any technology found in AIX or Dynix, even if that code does not contain any UNIX System V code, is subject to the restrictions of the IBM and Sequent Software Agreements. (See id.) | Depending on the meaning of the phrase "SCO's claims rest on the proposition," disputed to the extent the statement suggests that SCO has brought no claims other than its claims for breach of contract. Depending on the meaning of the phrase "lines of code ever associated with any technology found in AIX or Dynix," disputed to the extent the statement suggests that SCO claims that any technology is subject to the restrictions of the IBM and Sequent Software Agreements if such technology were not included in a modification or derivative work based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 179. | SCO made this position clear in its opposition to IBM's motion for partial summary judgment on IBM's Tenth Counterclaim. (Ex. 64.) In that brief, SCO argued: "SCO's contract claims do not depend on any proof that IBM contributed original source code from UNIX to Linux. Rather, the theory of SCO's case — which is based on the plain, unambiguous meaning of the Software Agreements — is that IBM breached those agreements by contributing code from AIX and Dynix." (Id. ¶ 21.) | Depending on the meaning of the phrase "lines of code ever associated with any technology found in AIX or Dynix" in the prior statement of fact, disputed to the extent the statement suggests that SCO claims that any technology is subject to the restrictions of the IBM and Sequent Software Agreements if such technology were never included in a modification or derivative work based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 180. | SCO's Second and Fourth Causes of Action allege that IBM breached the IBM and Sequent Sublicensing Agreements by continuing to distribute AIX and Dynix after SCO's purported termination of those agreements on June 13, 2003. (See Ex. 3 ¶¶ 137-42, 167-72.) | Depending on the meaning of the term "purported," disputed to the extent the statement suggests that SCO did not properly terminate the agreements. (See SCO's Memorandum in Opposition to IBM's "Motion for Summary Judgment on SCO's Copyright Claim (Fifth Cause of Action)." | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 181. | These two causes of action ultimately depend on SCO's allegation that IBM "fail[ed] to fulfill one or more of its obligations under the Software Agreement[s]". (Ex. 3 ¶¶ 128, 158.) SCO contends that because IBM breached the IBM and Sequent Software Agreements, SCO had the right unilaterally to terminate the IBM and Sequent Sublicensing Agreements. (See id.) Absent breach of the Software Agreements, therefore, there is no breach of the Sublicensing Agreements. | Disputed to the extent the statement suggests that SCO did not terminate the agreements for IBM's material breach. (See SCO's Memorandum in Opposition to IBM's "Motion for Summary Judgment on SCO's Copyright Claim (Fifth Cause of Action).") | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 182. | The construction and performance of the IBM and Sequent Software Agreements and the IBM and Sequent Sublicensing Agreements are governed by New York law. (See Ex. 492 § 7.13; Ex. 119 § 7.13; Ex. 120 § 6.05; Ex. 121 § 6.05.) | Disputed to the extent the statement draws a legal conclusion. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 183. | From the beginning of this litigation, SCO has touted its claims and the strength of its alleged evidence. (See, e.g., Ex. 367; Ex. 368; Ex. 369.) | Disputed to the extent the statement suggests that SCO's public statements pertained solely to the claims brought in this lawsuit, in that the cited material does not support such a statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 184. | According to SCO, the issues presented here are the most important issues faced by the software industry in ten years and the future of the industry — indeed, the future of the global economy — hangs in the balance:<br>a. In an article for Salon.com, Sam Williams quotes SCO's CEO Darl McBride as saying, in reference to this case: "There really is no middle ground…The future of the global economy hangs in the balance." (See Ex. 370.)<br>b. In an article from KSL.com, Jed Boal quotes McBride as saying, in reference to this case: "It has become the biggest issue in the computer industry in decades…The stakes are extremely high. The balance of the software industry is hanging on this." (See Ex. 371.) | Disputed to the extent the statement suggests that the quotes pertained solely to the claims brought in this lawsuit, in that the cited material does not support such a statement, and to the extent the statement ignores the following context: In (a), Mr. McBride was referring to the protection of intellectual property rights, particularly in software, their significance to this case, and the importance of the protection of intellectual property rights to the global economy. In (b), Mr. McBride was referring more broadly to the question of whether Linux could be distributed freely and without greater methods for protection of intellectual property. IBM's use of Linux to commoditize the operating system, among other impacts, did have and is still having major impacts on the software industry, as set forth in the expert reports of Drs. Gary Pisano and Jeffrey Leitzinger. (Exs. 281, 282, 283, 284, 285, 286.) Furthermore, at the time of these articles, this case was receiving a high level of national and international media attention, consistent with it being considered a case of national or even global importance, and consistent with its potential to have great consequence in the software industry. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 185. | SCO's public statements concerning its alleged evidence are no less grandiose:<br>a. In an interview with CNet News.com in August 2003, McBride claimed that SCO had found a "mountain of code" improperly contributed to Linux. (See Ex. 367.)<br>b. in a teleconference with analysts and reporters on May 30, 2003, McBride stated: "Everybody's been clamoring for the code — show us two lines of code. We're not going to show two lines of code, we're going to show hundreds of lines of code. And that's just the tip of the iceberg of what's in this." (See Ex. 368.)<br>c. in an interview in LinuxWorld.com, McBride claimed that a "truckload of code" was improperly contributed to Linux. (See Ex. 372.)<br>d. in July 2003, in an interview with Business Week, McBride stated that the amount of LINUX code infringing on SCO's intellectual property rights is "gargantuan". (Ex. 480.)<br>e. On August 18, 2003, at its SCO Forum in Las Vegas, SCO, through its Senior Vice President Chris Sontag, stated that it had uncovered more than a million lines of improperly copied UNIX code in Linux. (Ex. 383.) | Disputed to the extent the statement suggests that SCO's public statements pertained solely to the claims brought in this lawsuit, in that the cited material does not support such a statement. Disputed to the extent the statement ignores the following context: This and other statements about the volume of code that had been improperly contributed to Linux are truthful. Mr. McBride was referring to the large number of lines of code from derivative works (such as AIX and Dynix) that were identified by SCO consultants. For instance, SCO identified approximately 160,000 lines of code contributed by IBM from its Journaling File System that are derived from System V code and improperly contributed to Linux. (Ex. 144 at Item No. 1.) SCO also identified 1,200,000 lines of code in the form of test suites that IBM contributed improperly to the Linux development. (Ex. 144 at Item Nos. 18, 113-42). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 186. | At the same time, SCO refused to disclose the particulars of its claims and alleged evidence. (See Ex. 32; Ex. 33; Ex. 132; Ex. 34.) As a SCO representative stated, it was the company's strategy to obfuscate its alleged evidence. (See Ex. 374; Ex. 375.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith (¶¶ 234-93), to the extent the statement suggests that SCO chose not to disclose its evidence for any reason other than to protect what SCO regarded as confidential material (Ex. 165 ¶ 38), and to the extent the statement suggests that SCO's public statements pertained solely to the claims brought in this lawsuit, in that the cited material does not support such a statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 187. | For example, SCO's counsel indicated in an interview with Maureen O'Gara of LinuxGram in March 2003, at the beginning of the case, that SCO "doesn't want IBM to know what they [SCO's substantive claims] are". (Ex. 374.) | Depending on the meaning of the term "indicated," disputed in that counsel for SCO made no such statement. (Ex. 251 ¶¶ 3-8.) Disputed in that the cited material does not support the proposition that counsel for SCO made the quoted statement. Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith (¶¶ 234-93) and to the extent the statement suggests that SCO chose not to disclose its evidence for any reason other than to protect what SCO regarded as confidential material (Ex. 165 ¶ 38). Disputed in that the fact that SCO would not discuss the substance of SCO's claims with a reporter no more evinces a design to obfuscate than does IBM's spokesperson's refusal "to spell out what steps it was taking to monitor the technology it contributes to open-source projects like Linux and to ensure that its Linux development does not violate the intellectual property rights or licenses of others," even though in the article "I.B.M. contends that these matters will be evidence if the SCO suit goes to trial." (Ex. 170.) | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 188. | Further, SCO Vice President Gregory Blepp stated in a published interview in April 2004 that "you don't put everything on the table at the start, but instead you bring out arguments and evidence piece by piece". (Ex. 375.) | Disputed in that the statement misquotes the quotation attributed to Mr. Blepp, which is quoted as follows: "There you don't put everything on the table at the start, but instead you bring out arguments and evidence piece by piece." Disputed to the extent the statement suggests that Mr. Blepp did not make his statement in the context of explaining the procedures that govern "legal actions in the United States" and the role of confidentiality ("non-disclosure") agreements in preventing certain information from being released publicly. Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith. (¶¶ 234-93.) Disputed in that the fact that SCO would not discuss the substance of SCO's claims with a reporter no more evinces a design to obfuscate than does IBM's spokesperson's refusal "to spell out what steps it was taking to monitor the technology it contributes to open-source projects like Linux and to ensure that its Linux development does not violate the intellectual property rights or licenses of others," even though in the article "I.B.M. contends that these matters will be evidence if the SCO suit goes to trial." (Ex. 170.) Disputed in that, if said at, Mr. Blepp's statement is not consistent with anything he was instructed by anyone at SCO to say and does not reflect SCO's position or strategy; and in that Mr. Blepp is from Munich, and was a SCO sales person in Germany, and was not familiar with the American legal system. (Ex. 9 ¶¶ 13-16.) | Deemed admitted: The facts stated in IBM's referenced paragraph are fully supported by the cited material.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 189. | After SCO filed suit, Novell sent a series of letters to SCO that explicitly waived the purported breaches of contract SCO has asserted IBM committed. (See Ex. 135; Ex. 136; Ex. 137; Ex. 138; Ex. 240 ¶ 29.) | Disputed to the extent the statement draws a legal conclusion and, disputed in that Novell does not have the right or authority to "waive the purported breaches of contract SCO has asserted IBM committed." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 190. | On October 7, 2003, in a letter from Joseph A. LaSala, Jr. to Ryan Tibbitts, Novell directed SCO to waive any purported right to assert a breach of the IBM Software Agreement based on IBM's use or disclosure of code that does not contain any UNIX System V source code. (Ex. 135; Ex. 240 ¶ 30.) The letter states:<br>[P]ursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell hereby directs SCO to waive any purported right SCO may claim to require IBM to treat IBM Code itself as subject to the confidentiality obligations or use restrictions of the Agreements. Novell directs SCO to take this action by noon, MST, on October 10, 2003, and to notify Novell that it has done so by that time. | Disputed to the extent the statement draws a legal conclusion and, disputed in that Novell does not have the right or authority to "direct SCO to waive any purported right to assert a breach of the IBM Software Agreement." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 191. | In the letter, Novell informed SCO that its position that IBM's own homegrown code "must be maintained as confidential and subject to use restrictions is contrary to the agreements between AT&T and IBM, including Amendment X, to which Novell is a party". (Ex. 135; Ex. 240 ¶ 33.) | Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and IBM or Amendment No. X. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| | [illegible] Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 192. | According to Novell, the agreements between AT&T and IBM provide "a straightforward allocation of rights": (1) AT&T retained ownership of its code from the Software Products ('AT&T Code'), and the Agreements' restrictions on confidentiality and use apply to the AT&T Code, whether in its original form or as incorporated in a modification or derivative work, but (2) IBM retained ownership of its own code, and the Agreements' restrictions on confidentiality and use do not apply to that code so long as it does not embody any AT&T Code. (Ex. 135; Ex. 240 ¶ 33.) Novell concluded that any other interpretation "would defy logic as well as the intent of the parties". (Ex. 135; Ex. 240 ¶ 31.) | Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and IBM or Amendment No. X. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 193. | After SCO failed to follow Novell's instruction, on October 10, 2003, Novell expressly waived any purported right of SCO's to assert a breach of the IBM Software Agreement based on IBM's use or disclosure of code that does not contain any UNIX System V source code. (Ex. 136; Ex. 240 ¶ 34.) Novell states in its letter to SCO: Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to require IBM to treat IBM Code, that is code developed by IBM, or licensed by IBM from a third party, which IBM incorporated in AIX but which itself does not contain proprietary UNIX code supplied by AT&T under the license agreements between AT&T and IBM, itself as subject to the confidentiality obligations or use restrictions of the Agreements. (Ex. 136; Ex. 240 ¶ 34.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "expressly waive any purported right of SCO's to assert a breach of the IBM Software Agreement." (¶¶ 279-93.) Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and IBM or Amendment No. X. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 194. | Additionally, on February 6, 2004, in a letter from Mr. LaSala to Mr. Tibbitts, Novell further directed SCO to waive any purported right to assert a breach of the Sequent Software Agreement based on IBM's use or disclosure of code that does not contain any UNIX System V source code. (Ex. 137; Ex. 240 ¶ 35.) The letter states: <br> [P]ursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell hereby directs SCO to waive any purported right SCO may claim to require Sequent (or IBM as its successor) to treat Sequent Code as subject to the confidentiality obligations or use restrictions of Sequent's SVRX license. Novell directs SCO to take this action by noon, MDT, on February 11, 2004, and to notify Novell that it has done so by that time. <br> (Ex. 137.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "waive any purported right to assert a breach of the Sequent Software Agreement." (¶¶ 279-93.) Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and Sequent. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. <br><br> The material referred to by SCO does not support SCO's statement. |
| 195. | In the letter, Novell reiterated that SCO's reliance on Section 2.01 of the Software Agreement was misplaced, and stated that "SCO's interpretation of section 2.01 is plainly contrary to the position taken by AT&T, as author of and party to the SVRX licenses". (Ex. 137.) | Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and Sequent. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. <br><br> The material referred to by SCO does not support SCO's statement. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 196. | After SCO failed to follow Novell's instruction, on February 11, 2004, Novell expressly waived any purported right of SCO to assert a breach of the Sequent Software Agreement based on IBM's use or disclosure of code that does not contain any UNIX System V source code. (Ex. 138; Ex. 240 ¶ 36.) Novell states in its letter to SCO: Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to require Sequent (or IBM as its successor) to treat Sequent Code as subject to the confidentiality obligations or use restrictions of Sequent's SVRX license. (Id.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "expressly waive any purported right of SCO to assert a breach of the Sequent Software Agreement." (¶¶ 279-93.) Disputed to the extent the statement purports to describe the scope of the agreements between AT&T and Sequent. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 197. | Novell also waived any purported right of SCO to terminate the IBM Sublicensing Agreement. (See Ex. 139; Ex. 140; Ex. 240 ¶¶ 37-39.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "waive any purported right of SCO to terminate the IBM Sublicensing Agreement." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 198. | On June 9, 2003, in a letter from Jack L. Messman to Darl McBride, Novell informed SCO that under the terms of Amendment No. X, SCO did not have the right to terminate any of IBM's rights under the Sublicensing Agreement to distribute its AIX software program. (Ex. 139; Ex. 240 ¶ 37.) The letter states: Pursuant to Amendment No. X, however, Novell and SCO granted IBM the "irrevocable, fully paid-up, perpetual right" to exercise all of the rights under the IBM SVRX Licenses that IBM then held. IBM paid $10,125,000 for the rights under Amendment No. X. Novell believes, therefore, that SCO has no right to terminate IBM's SVRX Licenses, and that it is inappropriate, at best, for SCO to be threatening to do so. (Ex. 139; Ex. 240 ¶ 37.) | Disputed to the extent the statement draws a legal conclusion. Disputed to the extent the statement purports to describe the scope of Amendment No. X. (See SCO's Memorandum in Opposition to IBM's "Motion for Summary Judgment on SCO's Copyright Claim (Fifth Cause of Action).") | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 199. | Novell further directed SCO to waive any purported right under its SVRX Licenses with IBM to terminate IBM's right to distribute AIX under the IBM Sublicensing Agreement: [P]ursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell hereby directs SCO to waive any purported right SCO may claim to terminate IBM's SVRX Licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM. Novell directs SCO to take this action by noon, MDT, June 12, 2003, and to notify Novell that it has done so by that time. (Ex. 139; Ex. 240 ¶ 38.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "direct SCO to waive any purported right under its SVRX Licenses with IBM to terminate IBM's right to distribute AIX under the IBM Sublicensing Agreement." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 200. | After SCO failed to follow Novell's instruction, on June 12, 2003, Novell expressly waived any purported right of SCO to terminate IBM's rights under the IBM Sublicensing Agreement. (Ex. 140; Ex. 240 ¶ 39.) Novell states in its letter to SCO: Accordingly, pursuant to Section 4.16(b) of the Asset Purchase Agreement, Novell, on behalf of The SCO Group, hereby waives any purported right SCO may claim to terminate IBM's SVRX Licenses enumerated in Amendment X or to revoke any rights thereunder, including any purported rights to terminate asserted in SCO's letter of March 6, 2003 to IBM. (Ex. 140; Ex. 240 ¶ 39.) | Disputed to the extent the statement draws a legal conclusion. Disputed in that Novell does not have the right or authority to "expressly waive any purported right of SCO to terminate IBM's rights under the IBM Sublicensing Agreement." (¶¶ 279-93.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. |
| 201. | Following SCO's refusal to disclose the nature of its claims or its alleged evidence, IBM served interrogatories on SCO asking it to describe in detail its allegations and alleged evidence of misconduct by IBM. (Ex. 11.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 202. | For example, IBM asked SCO to: "[p]lease identify, with specificity (by product, file and line of code, where appropriate) . . . any confidential or proprietary information that plaintiff alleges or contends IBM misappropriated or misused". (Ex. 11 at Interrogatory No. 1.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 203. | IBM asked SCO: "For . . . any confidential or proprietary information identified in response to interrogatory No. 1, [to] please identify . . . (b) the nature and source of [SCO's] rights". (See Ex. 11 at Interrogatory No. 2.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 204. | At the same time, IBM also asked SCO to identify how IBM is alleged to have violated SCO's rights. IBM asked SCO: "For . . . any confidential or proprietary information identified in response to Interrogatory No. 1, [to] please describe, in detail . . . (a) the date of the alleged misuse or misappropriation; (b) all persons involved in any way in the alleged misuse or misappropriation; (c) the specific manner in which IBM is alleged to have engaged in misuse or misappropriation; and (d) with respect to any code or method . . . the location of each portion of such code or method in any product, such as AIX, in Linux, in open source, or in the public domain." (Ex. 11 at Interrogatory No. 4.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 205. | Moreover, IBM asked SCO to: "(1) identify with specificity all the material in Linux to which it claims rights; (2) detail the nature of its alleged rights, such as whether and how the material in which SCO claims rights derives from UNIX; and (3) state whether IBM has infringed SCO's rights and, if so, detail how IBM infringes SCO's alleged rights. (See Ex. 12 at Interrogatory No. 12.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | | SCO's Response | IBM's Reply |
|---|---|---|---|
| 206. | Further, IBM asked SCO: "For each line of code and other material identified in response to Interrogatory No. 12, [to] please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights". (Ex. 12 at Interrogatory No. 13.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 207. | SCO did not provide IBM with all of the information it requested, and IBM twice moved to compel meaningful responses on October 1, 2003 and November 6, 2003. (Ex. 62; Ex. 63.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| [illegible] | IBM's S[illegible] | [illegible] | [illegible]eply |
|---|---|---|---|
| 208. | Specifically, IBM asked the Court to require SCO to specify (1) all the material in Linux to which SCO claims rights (i.e., by kernel version *X*, file *Y*, and lines *1-2-3*); (2) the nature of SCO's alleged rights, including whether and, if so, how the material derives from the UNIX software (i.e., if SCO asserts contract, copyright or some other right to the identified code, and how the Linux code identified derives from UNIX version *A*, file *B*, lines *4-5-6*); and (3) whether IBM has infringed material to which SCO claims rights, and if so, the details of the alleged infringement (i.e., by copying Linux kernel version *X*, file *Y*, lines *1-2-3*, which are copied or derived from UNIX version *A*, file *B*, lines *4-5-6*; or by distributing Linux kernel version *X*, file *Y*, lines *1-2-3*, the structure and sequence of which was copied from UNIX version *A*, file *B*, lines *7-8-9*; or by inducing others to copy (or distribute) Linux kernel version *X*, file *Y*, lines *1-2-3*, which are copied or derived from UNIX version *A*, file *B*, lines *4-5-6*). (See Ex. 63.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 209. | On December 12, 2003, the Court ordered SCO to provide this information on or before January 12, 2004. (See Ex. 55.) The Court ordered SCO to "identify and state with specificity the source code(s) that SCO is claiming form the basis of their action against IBM". (Ex. 55.) | Disputed to the extent the statement suggests that the Court found that SCO had not proceeded in discovery in good faith, to the extent the statement suggests that the Court had concluded that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems, and to the extent the statement suggests that the Court's Order adopted the requests for relief set forth in IBM's underlying motion. (¶¶ 239-42.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 210. | In an order dated March 3, 2004, the Court reiterated its December 2003 order, compelling SCO again to provide meaningful responses to IBM's interrogatories, this time on or before April 19, 2004. (See Ex. 56.) Specifically, the Court required SCO to "fully comply within 45 days of the entry of this order with the Court's previous order dated December 12, 2003". (Ex. 56.) Thus the Court required SCO to "respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories [which require SCO to specify (1) the material in Linux to which SCO claims rights; (2) the nature of SCO's alleged rights including whether and, if so, how the material derives from UNIX; and (3) whether IBM has infringed material to which SCO claims rights and, if so, the details of the alleged infringement]." (Ex. 55.) | Disputed to the extent the statement suggests that the Court found that SCO had not proceeded in discovery in good faith, to the extent the statement suggests that the Court had concluded that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems, and to the extent the statement suggests that the Court's Order adopted the requests for relief set forth in IBM's underlying motion. (¶¶ 243-51.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 211. | Despite the Court's orders, SCO again did not produce the information requested by IBM. (See Ex. 132.) While SCO identified more materials in Linux to which it claimed rights (albeit without the particularity ordered by the Court and without an adequate explanation as to why it did not provide all of these materials in response to the Court's first order), SCO still did not detail the nature of its alleged rights or describe in detail how IBM was alleged to have infringed SCO's rights. (See Ex. 132.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith (¶¶ 234-93), to the extent the statement suggests that the Court had concluded that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems and to the extent the statement suggests that the Court's Order adopted the requests for relief set forth in IBM's underlying motion (¶¶ 239-51). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 212. | Despite the Court's order, SCO did not identify a single version, file, or line of System V code, methods, or concepts allegedly misused by IBM. SCO did not identify a single version, file, or line of AIX or Dynix code, methods or concepts allegedly misused by IBM. And, SCO did not link a single line of allegedly misused Linux code to any version, file, or line of AIX, Dynix or System V code. (See Ex. 132.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein), to the extent the statement suggests that the Court had concluded that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems and to the extent the statement suggests that the Court's Order adopted the requests for relief set forth in IBM's underlying motion (¶¶ 239-51). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 213. | Based on SCO's continued failure to comply, IBM moved on May 18, 2004 for partial summary judgment. (Ex. 65 at 27.) | Disputed to the extent the statement suggests that SCO did not proceed in discovery in good faith or could have provided the requested information without precedent production of material by IBM (¶¶ 234-69), and to the extent the statement suggests that IBM was unable to identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems, to the extent the statement suggests that the Court had concluded that IBM was unable to Identify those instances in which its employees contributed technology to Linux from the AIX or Dynix/ptx operating systems (IBM Statement of Fact No. 238 and material cited therein), and to the extent the statement suggests that the Court's Order adopted the requests for relief set forth in IBM's underlying motion (¶¶ 239-51). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 214. | On February 8, 2005, the Court expressed astonishment at SCO's failure of proof, but deferred a decision on the merits of IBM's summary judgment motion until after the close of discovery. (Ex. 57 at 10.) | Depending on the meaning of the term "failure of proof," disputed to the extent the statement suggests that the Court concluded that SCO had failed to or would be unable upon full discovery to adduce proof to support its claims, which statement the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 215. | The Court set October 28, 2005 as the "Interim Deadline for Parties to Disclose with Specificity All Allegedly Misused Material" and December 22, 2005 as the "Final Deadline for Parties to Identify with Specificity All Allegedly Misused Material". (Ex. 58 at 4.) The Court required SCO "to Update Interrogatory Responses Accordingly". (Ex. 58 at 4; Ex. 418 at 56.) | Undisputed. | Undisputed. |
| 216. | On October 28, 2005, pursuant to the Court's July 1, 2005, scheduling Order, SCO served its Interim Disclosures. Like its prior discovery responses concerning the allegedly misused materials, SCO failed to describe all of the allegedly misused materials by version, file, and line of code. (Ex. 53.) | Disputed to the extent the statement suggests that the Court had ordered, clearly or otherwise, SCO "to describe all of the allegedly misused materials by version, file, and line of code." (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 217. | Upon review of SCO's Interim Disclosures, IBM immediately notified SCO that it failed "to identify the allegedly misused material by version, file and line of code", "to identify and match up the allegedly infringing and allegedly infringed material by version, file and line of code", "to identify the material alleged to have been contributed improperly by version, file and line of code", and to identify, "to the extent the allegedly contributed material is not UNIX System V code, but is in any sense alleged to have been based on or resulted from UNIX System V code, the version, file and line of UNIX System V code from which the allegedly contributed material is alleged to derive or result." (Ex. 151 at 1.) | Depending on the meaning of the word "Immediately," disputed to the extent the statement suggests that IBM provided such notice as soon as it had reached its conclusions, and which statement the cited material does not support, disputed to the extent the statement suggests that the Court had ordered, clearly or otherwise, SCO "to describe all of the allegedly misused materials by version, file, and line of code." (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 218. | IBM notified SCO that unless SCO complied with the specificity required by the Court's many orders, "IBM Intends to ask the Court to preclude SCO from pursuing any claims regarding allegedly misused material not properly disclosed on or before December 22, 2005". (Ex. 151 at 2.) | Disputed to the extent the statement suggests that the Court had ordered, clearly or otherwise, SCO "to describe all of the allegedly misused materials by version, file, and line of code." (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 219. | Thereafter SCO expressly stipulated and agreed with IBM that its claims would not exceed the Final Disclosures. In a Stipulation Re Scheduling Order filed with the Court on December 7, 2005, the parties stipulated and agreed as follows:<br>1. Both parties are required to identify with specificity any and all material that each party contends the other has misused no later than December 22, 2005; ...<br>(c) Neither party shall be permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline.<br>(Ex. 481.) | Disputed to the extent the statement purports to summarize the terms of the parties' stipulation. (Ex. 481.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 220. | On December 22, 2005, SCO served its Final Disclosures, again largely failing to describe all of the allegedly misused materials by version, file, and line of code and to update its interrogatory responses. (Ex. 54.) | Disputed to the extent the statement suggests that the Court had ordered, clearly or otherwise, SCO "to describe all of the allegedly misused materials by version, file, and line of code." (Docket No. 643.) Disputed to the extent the statement purports to characterize the final disclosures. (Ex. 144.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 221. | Based on SCO's failure to follow the court's orders requiring it to identify all of the allegedly misused materials by version, file, and line of code, IBM moved on February 13, 2006 to preclude certain of SCO's claims. (Ex. 66.) | Disputed to the extent the statement suggests that the Court had ordered, clearly or otherwise, SCO "to describe all of the allegedly misused materials by version, file, and line of code." (Docket No. 643.) Disputed to the extent the statement purports to characterize the final disclosures. (Ex. 144.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | | SCO's Response | IBM's Reply |
|---|---|---|---|
| 222. | Pending the disposition of IBM's motion, SCO served several expert reports seeking to challenge additional allegedly misused materials that were not identified in its Final Disclosures. IBM then made another motion (which has been fully briefed but not yet argued) to confine and limit the scope of SCO's claims to those materials identified in its Final Disclosures. (Ex. 67.) | Disputed to the extent the statement suggests that the content of the referenced expert reports included material that the Court had ordered SCO to produce by its Final Disclosures but that SCO had not included in its Final Disclosures. (Docket No. 707.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 223. | In an order dated June 28, 2006, the Court granted, in part, IBM's February 13, 2006 motion to preclude certain of SCO's claims — striking from the case SCO's Final Disclosure Item Nos.: 3-22, 24-42, 44-89, 91-93, 95-112, 143-49, 165-82, 193, 232-71, 279-93. (Ex. 59 at 36-38.) | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the order at issue was one "striking from the case" the material cited in the referenced Item Nos., and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 224. | In granting IBM's motion in part, the Court held that "SCO should have supplied not only line but version and file information for whatever claims form the basis of SCO's case against IBM". (Ex. 59 at 28.) | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the Magistrate Court found that SCO had acted in bad faith in discovery, to the extent the statement suggests that SCO had acted in bad faith in discovery, and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 225. | The Court held further that "SCO has had ample opportunity to articulate, identify and substantiate its claims against [IBM]. [SCO's] failure was intentional and therefore willful based on SCO's disregard of the court's orders and failure to seek clarification. In the view of the court it is almost like SCO sought to hide its case until the ninth inning in hopes of gaining an unfair advantage despite being repeatedly told to put 'all evidence . . . on the table.'" (Ex. 59 at 32.) | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the Magistrate Court found that SCO had acted in bad faith in discovery, and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 226. | Finally, the Court held that SCO's conduct prejudiced IBM in that "[r]equiring IBM to engage in an analysis of millions of lines of code to figure out which code is at issue in hopes of answering such questions is patently unfair given the fact that it was SCO's duty to provide more detailed code in the first place." (Ex. 59 at 35.) | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the Magistrate Court found that SCO had acted in bad faith in discovery, and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 227. | Following the Court's order the following "Items" relating to SCO's allegations of IBM's breach of contract relating to the AIX and Dynix operating systems remain in the case: Items 1, 2, 23, 43, 90, 94 113-42, and 186-92. | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the order at issue was one "striking from the case" the material cited in the previously referenced Item Nos., and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 228. | Despite three orders of the Court, SCO has not adduced any evidence that IBM breached the Agreements. (See Ex. 54.) | Disputed to the extent the statement draws a legal conclusion, and in that the cited material does not support the statement. | Deemed admitted: IBM's statement is fully supported by the cited material, SCO's Final Disclosures, which contains all of SCO's purported evidence that IBM breached the Agreements.<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 229. | SCO's Final Disclosures identify 294 Items of allegedly misused material. However, only a subset of these Items concerns SCO's claims of breach of contract. (Ex. 54.) | Undisputed. | Undisputed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 230. | As a result of the Court's order of June 28, 2006, only 43 of the Items relating to SCO's contract claims remain in the case. (Items 1, 2, 23, 43, 90, 94, 113-42 and 186-92.) These Items concern allegations of misuse relating to AIX and Dynix. (See Ex. 54; Ex. 59.) | Disputed to the extent the statement suggests that the District Court granted IBM's motion, to the extent the statement suggests that the order at issue was one "striking from the case" the material cited in the previously referenced Item Nos., and to the extent the statement suggests that the District Court has passed judgment on the content of the order, which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the District Court has "passed judgment on the content of the order". (See Ex. 630 at 4.) |
| 231. | Only one of the remaining 43 Items, Item 1, concerns allegations of misuse relating to AIX. Item 1 concerns IBM's Journaled File System (JFS). (Ex. 54; Ex. 291 ¶ 6.) | Disputed to the extent the statement suggests that the order at issue was one "striking from the case" the material cited in the previously referenced Item Nos., which statements the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 232. | The remaining 42 Items concern allegations of misuse relating to Dynix. Item 2 concerns Read-Copy Update (RCU); Items 113-42 concern testing technologies; and Items 23, 43, 90, 94 and 186-92 concern "negative know-how" or "exposure" to Dynix. (Ex. 54; Ex. 291 ¶ 7.) | Disputed to the extent the statement suggests that the order at issue was one "striking from the case" the material cited in the previously referenced Item Nos., which statement the cited material does not support. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 233. | Only one of the remaining 43 Items (Item 1) identifies any UNIX System V source code. That Item identifies 17 lines of code from one version of a UNIX System V file. (See Ex. 54 Item 1, Tab 425; Ex. 291 ¶ 8.) SCO's experts do not address this file in their expert reports. (See generally Ex. 285; Ex. 286 ¶¶ 84-122.) SCO does not allege that IBM publicly disclosed this file to Linux or otherwise. (See Ex. 54.) | Disputed to the extent the statement suggests that JFS is not derived from UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) | Deemed admitted: Nothing In SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 234. | Only two of the remaining 43 Items (Items 1 and 2) identify any AIX or Dynix source code. Thirty of the remaining 43 Items (Items 113-42) identify code from Sequent's SPIE Test Suites as well as code from the Linux Test Project. (See Ex. 54.) None of that testing code is part of either the Dynix or Linux operating systems. (Ex. 287 ¶ 41; Ex. 288 ¶¶ 25, 29; Ex. 291 ¶ 9.) | Disputed in that the SPIE Test Suites are part of the Dynix operating system. (Ex. 164 at 253-57.) | Deemed admitted: Nothing In SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. Mr. Rochkind stated that he did not "have a definition of [the] Dynix/ptx operating system." (SCO Ex. 164 at 256.) Further, SCO's other proposed expert agrees that "test suites should not be part of the product they are testing." (IBM Ex. 288 ¶29.) |
| 235. | While the remaining 43 Items do identify Linux kernel source code files or Linux Test Project files, 11 of those Items (Items 23, 43, 90, 94, and 186-92) do not identify any versions or lines of code in the Linux kernel or any versions, files or lines of source code from UNIX System V, AIX or Dynix. SCO simply lists a number of Linux kernel files (without version or line information) for each of those Items and does not offer any evidence (expert or otherwise) that these files contain any code methods or concepts from UNIX System V, AIX, or Dynix. (See Ex. 54; Ex. 291 ¶ 10.) | Disputed to the extent the statement suggests that SCO was obligated to provide "versions, files or lines of source code" with respect to all of IBM's allegedly misused material. (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, SCO's contention that it was not obligated to provide "versions, files or lines of source code" has been rejected by the Court. (Ex. 630 at 4.) |
| 236. | SCO has not specifically identified, in the Final Disclosures or elsewhere, a single line of UNIX System V material that IBM is alleged to have misused in violation of its contractual obligations. Nor has it specifically identified any evidence that IBM misused any UNIX System V code. (Ex. 54; Ex. 291 ¶ 5.) When IBM raised with SCO its failure to disclose UNIX System V material, SCO stated that "IBM keeps insisting on something that is not part of SCO's claims, so it should come as no surprise that files or lines of code in System V have not been identified". (Ex. 134 at 2.) | Disputed to the extent the statement suggests that SCO has not shown that Linux versions 2.4 and 2.6 are derivative works of UNIX System V, release 4 under the copyright law. (Ex. 274.) Disputed to the extent the statement suggests that SCO has not shown that AIX is a derivative work of UNIX System V, release 4 under the copyright law. (See SCO's Memorandum in Opposition to IBM's "Motion for Summary Judgment on SCO's Copyright Claim (Fifth cause of Action).") | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statements relating to Linux and AIX, while meritless, have no bearing on whether it ever identified any evidence that IBM misused any UNIX System V code. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 237. | None of the material IBM is alleged to have misused is, or contains, UNIX System V code, methods or concepts, or is, or contains, a modification or derivative work of UNIX System V. (See Ex. 54; Ex. 291 ¶ 11; Ex. 181 ¶¶ 11-50.) | Disputed to the extent the statement suggests that SCO has not shown that Linux versions 2.4 and 2.6 are derivative works of UNIX System V, release 4 within the meaning of the copyright laws. (Ex. 274.) Disputed to the extent the statement suggests that SCO has not shown that AIX is a derivative work of UNIX System V, release 4 under the copyright law, or that SCO has not alleged that IBM's distribution of its AIX operating system post-termination of its UNIX System V licenses constitutes a violation of SCO's copyrights. (See SCO's Memorandum in Opposition to IBM's "Motion for Summary Judgment on SCO's Copyright Claim and Fifth Cause of Action)." | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statements relating to Linux and AIX, while meritless, have no bearing on whether any of the material IBM is alleged to have misused is, or contains, UNIX System V code, methods or concepts, or is, or contains, a modification or derivative work of UNIX System V. |
| 238. | All of the material IBM is alleged to have misused in the remaining Items (Items 1-2, 23, 43, 90, 94, 113-42, and 186-92) is original IBM work or the work of third parties other than SCO and independent of System V. (Ex. 162. ¶ 5; Ex. 248 ¶ 5; Ex. 218 ¶ 5; Ex. 243 ¶ 5; Ex. 168 ¶ 6; Ex. 258 ¶¶ 4-5; Ex. 231 ¶¶ 7-8; Ex. 292 ¶ 4; Ex. 507 at 40, 57, 199-200, 225-26, 228; Ex. 293 ¶ 4; Ex. 173 ¶ 4; Ex. 196 ¶ 5; Ex. 235 ¶ 5; Ex. 237 ¶ 5; Ex. 211 ¶ 5; Ex. 216 ¶ 5; Ex. 246 ¶ 4; Ex. 210 ¶ 6; Ex. 263 ¶ 5; Ex. 222 ¶ 5; Ex. 206 ¶¶ 4-5; Ex. 274 ¶ 4; Ex. 161 ¶ 4; Ex. 225 ¶ 5; Ex. 188 ¶ 5.) | SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| | | SECTION REDACTED | SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 239. | None of the AIX or Dynix material that IBM is alleged to have misused was written by referencing UNIX System V. (Ex. 291 ¶ 11.) | Disputed for the reasons set forth in response to IBM Paragraphs 243-276 below. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer with particularity tn those portions of the record on which SCO relies and SCO does not properly controvert IBM's statements in the paragraphs referenced. |
| 240. | SCO has identified 25 persons as having been involved with the allegedly improper disclosures: Barry Arndt, Ben Rafanello, Dave Kleikamp, Mark Peloquin, Steve Best, Dipankar Sarma, Paul McKenney, Martin Bligh, Tim Wright, Pat Gaughen, Wayne Boyer, John George, Haren Babu Myneni, Hien Nguyen, Jim Keniston, Larry Kessler, Hal Porter, Vivek Kashyap, Nivedita Singhvi, Shirley Ma, Venkata Jagana, Jay Vosburgh, Mike Anderson, Mike Mason, Ruth Forester. (Ex. 291 ¶ 12.) | Disputed for the reasons set forth in response to IBM Paragraphs 243-276 below. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies and SCO does not properly controvert IBM's statements in the paragraphs referenced. |
| 241. | None of these individuals referred to or otherwise used non-public UNIX System V source code, methods, or concepts in making the challenged Linux contributions. (Ex. 291 ¶ 13; Ex. 162. ¶ 5; Ex. 248 ¶ 5; Ex. 218 ¶ 5; Ex. 243 ¶ 5; Ex. 168 ¶ 6; Ex. 258 ¶¶ 4-5; Ex. 231 ¶¶ 7-8; Ex. 292 ¶ 4; Ex. 507 at 40, 57, 199-200, 225-26, 228; Ex. 293 ¶ 4; Ex. 173 ¶ 4; Ex. 196 ¶ 5; Ex. 235 ¶ 5; Ex. 237 ¶ 5; Ex. 211 ¶ 5; Ex. 216 ¶ 5; Ex. 246 ¶ 4; Ex. 210 ¶ 6; Ex. 263 ¶ 5; Ex. 222 ¶ 5; Ex. 206 ¶¶ 4-5; Ex. 274 ¶ 4; Ex. 161 ¶ 4; Ex. 225 ¶ 5; Ex. 188 ¶ 5.) | Disputed for the reasons set forth in response to IBM Paragraphs 243-276 below. Disputed in that Exhibit 507 does not support the statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies and SCO does not properly controvert IBM's statements in the paragraphs referenced. Further, IBM Ex. 507 fully supports IBM's statement. For example, Mr. Wright testified that he did not "recall ever referencing or reviewing any System V source code while [he was] at IBM." (IBM Ex. 507 at 228.) |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 242. | In making the challenged contributions, the alleged wrongdoers identified by SCO relied on their own creativity and general experience. (Ex. 291 ¶ 13; Ex. 162 ¶ 5; Ex. 248 ¶ 5; Ex. 218 ¶ 5; Ex. 243 ¶ 5; Ex. 168 ¶ 6; Ex. 258 ¶¶ 4-5; Ex. 231 ¶ 7; Ex. 292 ¶ 4; Ex. 507 at 109-10; Ex. 293 ¶ 4; Ex. 173 ¶ 6; Ex. 196 ¶ 5; Ex. 235 ¶ 5; Ex. 237 ¶ 5; Ex. 211 ¶ 5; Ex. 216 ¶ 5; Ex. 246 ¶ 4; Ex. 210 ¶ 6; Ex. 263 ¶ 5; Ex. 222 ¶ 5; Ex. 206 ¶ 5; Ex. 274 ¶ 4; Ex. 161 ¶ 5; Ex. 225 ¶ 5; Ex. 188 ¶ 5.) | Disputed for the reasons set forth in response to IBM Paragraphs 243-276 below. Disputed in that Exhibit 507 does not support the statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies and SCO does not properly controvert IBM's statements in the paragraphs referenced. Further, IBM Ex. 507 fully supports IBM's statement. For example, Mr. Wright testified that, with respect to the material he is alleged to have contributed, it "has no relation to ptx." (IBM Ex. 507 at 199.) |
| 243. | The remaining items of allegedly misused material all concern original IBM works that can be described in four categories: (1) IBM's Journaled File System (JFS) contribution; (2) IBM's Read Copy-Update (RCU) contribution; (3) IBM's Linux Test Project (LTP) contributions; and (4) general operating system experience or "negative know how". (Ex. 291 ¶ 14.) | Depending on the meaning of the phrase "original IBM works," disputed in that the referenced items include technology taken from and developed based on modifications and derivative works based on the licensed UNIX System V software product (¶ 192), and JFS is a derivative work of UNIX System V (Ex. 277 ¶¶ 95-114 & Exs. C-H.). | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |
| 244. | SECTION REDACTED | Undisputed. | Undisputed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 245. | The allegedly misused JFS material does not concern or include any UNIX System V code, methods, or concepts; it is not a modification or derivative work of UNIX System V; and it was not based on or created with reference to UNIX System V. (Ex. 291 ¶ 16.) | Disputed. The misused JFS material is a modification or derivative work of UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Ex. 277 relies on material that was not disclosed in SCO's Final Disclosures. (See Docket # 696.) |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 246. | SCO has not specifically identified any UNIX System V material (by version, file or line of code, or otherwise) that it alleges is contained in the allegedly misused JFS material. (Ex. 291 ¶ 171; see also Ex. 54, Item 1.)<br><br>SECTION REDACTED | Disputed in that the misused JFS material is a modification or derivative works of UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) Disputed in that the cited material does not support the statement.<br><br>SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>With respect to SCO's first sentence, the only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence.<br><br>SECTION REDACTED |

| ¶ | IBM | SCO's Response | IBM's Reply |
|---|---|---|---|
| 247. | SECTION REDACTED<br>The allegedly misused JFS material did not contain any UNIX System V code and none of these individuals identified by SCO used or referred to UNIX System V source code in developing JFS. (Ex. 291 ¶ 18; Ex. 168 ¶ 6; Ex. 218 ¶ 5; Ex. 243 ¶ 5; Ex. 248 ¶ 5; Ex. 162 ¶ 5.) | Disputed in that as IBM has itself admitted, UNIX System V source code was used in the development of JFS. (Ex. 277 ¶¶ 95-114 & n.55 & Exs. C-H.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. Further, IBM Ex. 277 cites no evidence that "IBM has itself admitted" that UNIX System V source code was used in the development of JFS. |
| 248. | The JFS code that IBM contributed to the Linux JFS was originally ported from IBM's OS/2 operating system, not AIX, or was written specifically for the Linux JFS. (Ex. 291 ¶ 19; Ex. 168 ¶¶ 4-5.) | Disputed in that the JFS code that IBM contributed to Linux came from AIX (and previously UNIX System V). (Ex. 277 ¶¶ 95-114 & n.55 & Exs. C-H.) Disputed in that the misused JFS material is a modification or derivative works of UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 249. | OS/2 did not include any UNIX System V code, and was not based on UNIX System V. (Ex. 291 ¶ 19; Ex. 168 ¶ 7.) | Disputed in that the cited material is neither admissible nor sufficient to support the proposition in the statement, and in that the JFS In OS/2 is derived from and based on UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>With respect to the first clause of SCO's statement, the facts stated in IBM's referenced paragraph are fully supported by the cited material and SCO does not articulate the basis for its argument that the cited material is not admissible. Both Mr. Best, who led the project to "port JFS code from IBM's OS/2 operating system to Linux" (IBM Ex. 168 ¶ 7) and Mr. Clark, who "was involved in the design of IBM's UNIX systems from 1989 to 2002" (IBM Ex. 291 ¶ 1) both state that OS/2 did not include any UNIX System V code, and was not based on UNIX System V. (Ex. 291 ¶ 19; Ex. 168 ¶ 7.)<br><br>With respect to the second clause of SCO's statement, the only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |
| 250. | Some OS/2 based JFS material was later shipped In IBM's AIX product. For this reason, the JFS material that IBM contributed to Linux is sometimes mistaken as having originated from AIX. (Ex. 291 ¶ 20; Ex. 168 ¶ 5.) | Disputed in that the JFS code that IBM contributed to Linux came from AIX (and previously UNIX System V). (Ex. 277 ¶¶ 95-114 & n.55 & Exs. C-H.) Disputed In that the misused JFS material is a modification or derivative works of UNIX System V. (Ex. 277 ¶¶ 95-114 & Exs. C-H.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The only evidence SCO cites for its purported dispute Is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 251. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 252. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 253. | SCO has identified thirty files in AIX that contain "origin codes" which, SCO claims, indicate that the files were based on UNIX System V, Release 2 or earlier. (Ex. 54; Ex. 286 ¶ 95; Ex. 291 ¶ 21.) For these files, the Final Disclosures do not identify a single line of source code in AIX that is alleged to be identical to or substantially similar to any source code in UNIX System V. (Ex. 291 ¶ 21.) In any event, origin codes are not necessarily indicators of whether a file contains System V material. (Ex. 291 ¶ 21; Ex. 181 ¶ 61, n.12.) | Disputed in that SCO has identified 179 files in AIX that contain origin codes for UNIX System V. (Exs. 287 & 288.) Disputed in that the evidence shows (and easily permits the inference) that origin codes are reliable indicators of whether a file contains System V material and/or is based on or derived from such material. (Ex. 139 ¶¶ 34.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>With respect to SCO's first sentence, SCO's citation to its expert reports (and not to the Final Disclosures) shows that these "179 files" were not identified in the Final Disclosures. Pursuant to Magistrate Judge Well's November 30 order, SCO cannot rely on this material. (IBM Ex. 621.)<br><br>With respect to SCO's second sentence, The cited exhibit, the November 10, 2006 Declaration of Marc Rochkind, is an untimely disclosure of expert opinion, as it was not served on IBM until months after the deadline for expert reports. Given that the Court has ruled that SCO may not rely on material not specifically identified in its Final Disclosures in its expert reports, it is beyond dispute that SCO may not rely on material not specifically identified in either its Final Disclosures or its expert reports. Moreover, the reliability of origin codes was specifically discussed in one of IBM's expert reports (IBM Ex. 181 ¶ 61, n.12), thus SCO should have submitted Mr. Rochkind's opinion in Mr. Rochkind's Rebuttal Report. It did not. Accordingly SCO cannot rely on this evidence. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 254. | The Final Disclosures draw no connection with any lines of code in UNIX System V and the JFS code that IBM contributed.<br><br>SECTION REDACTED | Depending on the meaning of the phrase "draw no connection," disputed in that the JFS code that IBM contributed to Linux is derived from UNIX System V. (Ex. 277 ¶¶ 95-114 & n.55 & Exs. C-H.)<br><br>SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The only evidence SCO cites for its purported dispute is the portions of the expert report of its proposed expert, Dr. Ivie, that were expressly the subject of IBM's motion to strike (IBM Ex. 67 at 9), which Magistrate Judge Wells granted. (IBM Ex. 621.) Accordingly SCO cannot rely on this evidence. |
| 255. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 256. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |
| 257. | IBM's Linux RCU contributions, and the earlier Sequent implementation of RCU in Dynix, do not include any UNIX System V code; they are not modifications or derivative works of UNIX System V; and they were not based on or created with reference to UNIX System V. They are original IBM work created independent of UNIX System V. (Ex. 231 ¶ 8; Ex. 258 ¶ 5; Ex. 291 ¶ 24.) | SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 258. | SCO has not specifically identified any UNIX System V material (by version, file, or line of code, or otherwise) that it alleges is contained in RCU. (See Ex. 54 Item 2.)<br><br>SECTION REDACTED | SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SECTION REDACTED<br><br>Further, Paul McKenney, who invented RCU, states that System V does not contain any code, methods or concepts relating to RCU. (Ex. 231 ¶ 7.) |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 259. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |
| 260. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 261. | Sequent engineers Paul McKenney and John Slingwine filed a patent application for RCU on July 19, 1993, and the patent was granted on August 15, 1995. (Ex. 231 ¶ 5; see Ex. 498.) The implementation of RCU in Dynix and the challenged implementation of RCU in Linux are implementations of the same general concept that is embodied in U.S. Patent # 5,442,758. (Ex. 231 ¶¶ 4-5; Ex. 291 ¶ 27; Ex. 268 at 117-21.) | Disputed to the extent that the statement suggests that AT&T or USL knew or should have known about the substance of IBM's patent applications. (See Argument at __.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer to any portion of the record on which SCO relies. |
| 262. | SECTION REDACTED | Undisputed. | Undisputed. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 263. | The allegedly misused testing technology material does not include any UNIX System V code; it is not a modification or derivative work of UNIX System V; and it was not based on or created with reference to UNIX System V. It was original Sequent work created independent of UNIX System V. (Ex. 196 ¶ 5; Ex. 173 ¶ 4; Ex. 291 ¶ 29.) | SECTION REDACTED | SECTION REDACTED |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 264. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 265. | SCO fails to identify anyone at IBM or Sequent as involved in misconduct relating to the SPIE Test Suits.<br><br>SECTION REDACTED | SECTION REDACTED<br><br>Disputed in that the cited material does not support the second and third statements. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SECTION REDACTED |
| 266. | SCO identifies no UNIX System V code, methods, or concepts in connection with Items 113-142. (Ex. 291 ¶ 30.) | Disputed to the extent the statement suggests that SCO was obligated to provide "versions, files or lines of source code" with respect to all of IBM's allegedly misused material. (Docket No. 643.) Disputed in that the cited material does not support the statement.<br><br>SECTION REDACTED | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>With respect to SCO's first sentence, nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, SCO's contention that it was not obligated to provide "versions, files or lines of source code" has been rejected by the Court. (Ex. 630 at 4.)<br><br>SECTION REDACTED |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 267. | The SPIE tests were not part of the Dynix or Dynix/ptx operating systems. (Ex. 208 ¶ 102; Ex. 288 ¶¶ 25, 29; Ex. 173 ¶ 3; Ex. 196 ¶ 4; Ex. 291 ¶ 30.) | SECTION REDACTED Disputed in that the cited material does not support the statement. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SECTION REDACTED |
| 268. | SECTION REDACTED | Undisputed. | Undisputed. |
| 269. | SECTION REDACTED | SECTION REDACTED | SECTION REDACTED |
| 270. | SCO identifies no UNIX System V code, methods or concepts (by version, file or line of code or otherwise) in connection with these Items. SCO identifies no Dynix/ptx code, methods, or concepts (by version, file, or line of code) in connection with these Items. (See Ex. 54; Ex. 291 ¶ 34.) | Disputed to the extent the statement suggests that SCO was obligated to provide "versions, files or lines of source code" with respect to all of IBM's allegedly misused material. (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>Further, SCO's contention that it was not obligated to provide "versions, files or lines of source code" has been rejected by the Court. (Ex. 630 at 4.) |

| ¶ | [illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 271. | SCO lists Linux files in connection with these Items, but does not identify which versions or which lines of code in these files contain the allegedly misused material. SCO also lists whole directories in Linux without providing any version, file, and line information. (See Ex. 54; Ex. 291 ¶ 35.) | Disputed to the extent the statement suggests that SCO was obligated to provide "versions, files or lines of source code" with respect to all of IBM's allegedly misused material. (Docket No. 643.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>Further, SCO's contention that it was not obligated to provide "versions, files or lines of source code" has been rejected by the Court. (Ex. 630 at 4.) |
| 272. | SECTION REDACTED | Undisputed. | Undisputed. |
| 273. | For all of these Items, the programmers allegedly making the disclosure either (a) did not make any contributions to the files or directories listed or (b) did not base their contributions to the listed files or directories on UNIX System V or refer to UNIX System V in making the challenged contributions. (Ex. 291 ¶ 37; Ex. 292 ¶ 4; Ex. 507 at 40, 57, 199-200, 225-26, 228; Ex. 293 ¶ 4; Ex. 235 ¶¶ 3-5; Ex. 237 ¶¶ 4-5; Ex. 211 ¶¶ 3-5; Ex. 216 ¶¶ 3-5; Ex. 246 ¶¶ 4-6; Ex. 210 ¶¶ 4-7; Ex. 263 ¶¶ 4-6; Ex. 222 ¶¶ 4-6; Ex. 206 ¶¶ 4-5; Ex. 274 ¶¶ 3-4; Ex. 161 ¶¶ 4-5; Ex. 225 ¶¶ 4-5; Ex. 188 ¶¶ 4-5.) | Disputed in that the cited material does not support the statement that none of the IBM contributors to Linux based their work on experience and know-how gained from their exposure to UNIX System V source code, methods, or concepts, in that Dynix/ptx is a derivative work based on UNIX System V and contains source code, methods, and concepts from UNIX System V (¶ 192), and declarants acknowledge their direct experience with Dynix/ptx. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO does not and cannot dispute that all of the individuals identified in the remaining Items of its Final Disclosures have testified that they did not use UNIX System V code, methods or concepts in making any contributions to Linux. |
| 274. | In some cases (Items 186, 187, 190 and 191), the programmers allegedly making the disclosure did not have experience in Dynix in the particular technology area cited by SCO. (Ex. 291 ¶ 38; Ex. 235 ¶ 3; Ex. 237 ¶ 4; Ex. 211 ¶ 3; Ex. 274 ¶ 3; Ex. 188 ¶ 4; Ex. 225 ¶ 4.) | Undisputed. | Undisputed. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 275. | In some cases (Items 187, 188) the cited technology did not even exist in Dynix. (Ex. 291 ¶ 38; Ex. 246 ¶ 6; Ex. 210 ¶ 7; Ex. 263 ¶ 6; Ex. 222 ¶ 6; Ex. 206 ¶ 6.) | Undisputed. | Undisputed. |
| 276. | SECTION REDACTED | Undisputed. | Undisputed. |
| 277. | In a nutshell, SCO claims the right to control the code, methods and concepts of any modification or derivative work of System V, even where the code, methods, or concepts do not include or reveal any System V material or were not written or created by SCO or any of its predecessors in interest. (Ex. 43 at 7-8.)<br><br>SECTION REDACTED | Disputed to the extent the statement refers to all UNIX System V licensees, in that the cited material does not support such a statement. Depending on the meaning of the term "control," disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product (¶¶ 13-29, 82-686), and to the extent the statement suggests that AIX and Dynix/ptx are not derivative works based on UNIX System V (¶ 192). Disputed to the extent the statement suggests that SCO challenges the employability of programmers as such, which SCO does not and which statement the cited material does not support. (See Argument at __.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| ¶ | IBM Statement | SCO's Response | IBM Reply |
|---|---|---|---|
| 278. | SCO's claim depends on the proposition that SCO's alleged predecessor (AT&T) acquired the right to control modifications and derivatives of System V pursuant to its System V licensing agreements. The argument appears to be that SCO has the right to control not only System V, but also the code, methods and concepts of other flavors of UNIX, like AIX and Dynix. In fact, SCO seems to claim that it has the right to control any code, methods, and concepts ever associated with System V. (Ex. 181 ¶ 52.) | Disputed to the extent the statement refers to all UNIX System V licensees, in that the cited material does not support such a statement. Depending on the meaning of the term "control" and "associated with," disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of its modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 279. | When informed of the interpretation of the IBM and Sequent Software Agreements that SCO is advancing in this case, the individuals from AT&T who were involved in negotiating the agreements state unequivocally that SCO is wrong. (Ex. 217 ¶ 24; Ex. 189 ¶¶ 27-28; Ex. 281 ¶ 28; Ex. 182 ¶ 31; Ex. 275 ¶ 30.) | Disputed to the extent the statement suggests that the cited declarants had the authority to modify the terms of AT&T's standard form UNIX license agreements, to the extent the statement suggests that the cited declarants were the only individuals under whose direction AT&T licensed its UNIX source code, and to the extent the statement suggests that the cited declarants have not offered conflicting and contradictory sworn testimony and taken conflicting and contradictory actions. (¶¶ 63-163.) Disputed in that other substantial evidence shows (and easily permits the inference) that the cited declarants did not have such a view during their tenure at AT&T. (¶¶ 63-163.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| ¶ | [illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 280. | According to Mr. Wilson, any claim that the IBM Software Agreement and the Sequent Software Agreement prohibit the use, export, disclosure or transfer of any code other than UNIX System V code is clearly wrong. Not only did Mr. Wilson and others at AT&T not intend the agreements to be read that way, but they also went out of their way to assure AT&T's licensees that that is not what the agreements meant. (Ex. 282 ¶ 30.) | Disputed to the extent the statement suggests that Mr. Wilson had the authority to modify the terms of AT&T's standard UNIX license agreements or was the only individual under whose direction AT&T licensed its UNIX source code. (¶¶ 76-96.) Disputed in that substantial evidence shows (and easily permits the inference) that Mr. Wilson did not have such a view during his tenure at AT&T. (¶¶ 163-63.) Disputed to the extent the statement suggests that Mr. Wilson has not offered conflicting and contradictory sworn testimony and taken conflicting and contradictory actions. (¶¶ 63-163.) Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of its modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. IBM does not suggest that Mr. Wilson either had the authority to modify the terms of the UNIX license agreements or that he was the only individual under whose direction AT&T licensed its UNIX source code. Finally, IBM does not suggest any oral discussion modified the terms of the UNIX license agreements.<br><br>The material referred to by SCO does not support SCO's statement. SCO does not cite any evidence that suggests that Mr. Wilson held contrary views. Furthermore, the evidence SCO cites does not support its view that IBM and Sequent agreed to hold confidential all parts of its AIX and Dynix source code.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 281. | SCO's interpretation of the Agreements is impossible to reconcile with what Mr. Frasure (and, he believes, others at AT&T) understood the Software Agreements to mean. Mr. Frasure never suggested, nor would have thought to suggest, to AT&T's customers that the Agreements precluded them from using or disclosing their own products as they might wish, so long as they did not disclose any UNIX System V code. Moreover, Mr. Frasure did not believe that AT&T's customers (particularly large ones like IBM) would have entered into agreements that placed restrictions of the kind SCO seeks to impose on their use of code that they developed. In fact, some, including IBM, specifically said so. (Ex. 189 ¶¶ 18-26.) | Disputed to the extent the statement suggests that Mr. Frasure had the authority to modify the terms of AT&T's standard UNIX license agreements or was the only individual under whose direction AT&T licensed its UNIX source code. (¶¶ 76-96.) Disputed in that substantial evidence shows (and easily permits the inference) that Mr. Frasure did not have such a view during his tenure at AT&T. (¶¶ 63-163.) Disputed to the extent the statement suggests that Mr. Frasure has not offered conflicting and contradictory sworn testimony. (¶¶ 125-37.) Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of its modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) | *Deemed admitted*: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. SCO does not cite any evidence that suggests that Mr. Wilson held contrary views during his tenure at AT&T.<br><br>Furthermore, the evidence SCO cites does not support its view that IBM and Sequent agreed to hold confidential all parts of its AIX and Dynix source code.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 282. | According to Mr. DeFazio, SCO's claims are inconsistent with the provisions of the Agreements. He does not believe that anyone at AT&T, USL, or Novell intended the Agreements to be construed as SCO construes them. In all cases, according to Mr. DeFazio, modifications and licensees' contributions to derivative works are not subject to the confidentiality and other restrictions contained in the license agreements (except for any protected UNIX System V source code actually included therein) because they are owned by the licensees. (Ex. 182 ¶ 31.) | Disputed to the extent the statement suggests that Mr. DeFazio had the authority to modify the terms of AT&T's standard UNIX license agreements or was the only individual under whose direction AT&T licensed its UNIX source code. (¶¶ 76-96.) Disputed in that substantial evidence shows (and easily permits the inference) that Mr. DeFazio did not have such a view during his tenure at AT&T. (¶¶ 63-163.) Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of its modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. SCO does not cite any evidence that suggests that Mr. Wilson held contrary views during his tenure at AT&T. Furthermore, the evidence SCO cites does not support its view that IBM and Sequent agreed to hold confidential all parts of its AIX and Dynix source code.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 283. | Despite the fact that SCO's theory is contrary to the plain language of the Agreements and the intent of the individual who negotiated them, it would, if accepted, have far-reaching, negative implications. (Ex. 181 ¶ 51.) | Disputed to the extent the statement suggests that IBM and Sequent did not enter into a written agreement requiring IBM and Sequent to hold in confidence all parts of its modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 8286.) Disputed to the extent that the statement suggests that, upon entering into their written agreement, the parties did not intend to exclude any previous oral discussion from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Depending on the meaning of the phrase "far-reaching, negative implications," disputed in that prior to deciding to license the UNIX source code, any company could have decided instead to try to develop its own operating system, including its own UNIX-like operating system, and thereby be free of any control over their "homegrown" material reserved to the UNIX licensor. (¶ 42.) AT&T's capacity to negotiate and obtain partial control over its licensees UNIX flavors was a function of the many years that AT&T and its predecessors had invested in developing UNIX, and that prospective licensees recognized they would have to spend if they wanted to try to develop their own UNIX-like operating system from scratch. (¶¶ 32-47.) The subsequent prevalence of UNIX flavors in the industry – the fact that so many companies decided instead to license the UNIX head-start – serves to reinforce the reasonableness of the terms of the UNIX licenses. (¶¶ 32-47.) Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable term or are void on grounds of public policy. (See Argument at __.) Disputed to the extent the statement suggests that all or even a significant amount of the UNIX System V methods or concepts have been made publicly available without restriction. (Ex. 139 ¶¶ 23-26; Ex. 278 ¶ 86.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 284. | If SCO had such a right to control modifications and derivative works of System V, then it would have extraordinary — indeed, seemingly limitless — control over the software industry. AT&T and its successors widely disseminated information about the code, methods, and concepts of System V. System V alone has been licensed for redistribution to thousands of entities worldwide. These licensees have combined the code, methods, and concepts of System V software with hundreds of millions of lines of original non-AT&T code and many thousands of original, non-AT&T methods and concepts. For example, certain versions of AIX include more than 100 million lines of non-AT&T code, methods and concepts. Thus, If SCO had the right to control modifications and derivative works of System V, then it would control vast quantities of others' property. (Ex. 181 ¶ 53.) | Depending on the meaning of the terms "original" and "control," disputed on the same bases as set forth in response to IBM Statement of Fact Paragraph 283. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

| No. | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 285. | The viral quality of SCO's claim would give it control rights well beyond the life of the System V rights that the "control rights" are purported to protect. The apparent purpose of the "control rights" claimed by SCO seems to be to ensure, among other things, the confidentiality of AT&T System V code, methods, and concepts. The argument seems to be prophylactic in nature: by retaining control of its licensees' code, methods, and concepts, SCO can retain control of any System V code, methods, and concepts that might be included therein. Even where the code, methods, and concepts of System V are no longer confidential, SCO would have the right to control the original works of its licensees. System V could become freely available and SCO's right to control others' works would (under its theory) persist. (Ex. 181 ¶ 54.) | Depending on the meaning of the term "viral quality," disputed to the extent the statement suggests that it is inappropriate for a contract to cover the derivative works of a program, in that the very contract that Linux is distributed under also controls the derivative works of Linux (Ex. 278 ¶ 84), and IBM's own AIX source-code licenses require that AIX licensees treat all parts of derivative works of AIX as confidential (Ex. 278 ¶ 85; Exs. 348, 349, 350). The UNIX license agreements cannot be interpreted to have a lesser scope simply because AT&T and its successors were successful in a licensing a product pursuant to licenses whose terms the licensees evidently found reasonable. (¶¶ 30-62.) Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable terms or are void on grounds of public policy. (See Argument at I.) Disputed to the extent the statement suggests that all or even a significant amount of the UNIX System V methods or concepts have been made publicly available without restriction. (Ex. 139 ¶¶ 23-26; Ex. 278 ¶ 86.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. Ex. 139, the Rochkind declaration, is untimely in that it seeks to render an expert view after the deadline for expert reports. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- | --- |
| 286. | From a practical standpoint, if SCO had the right to control the code, methods, and concepts of all flavors of UNIX, the owners of these products would be limited in their ability to support or even market them. To support and market an operating system, it is often necessary to reference and disclose the code, methods, and concepts of the operating system. If SCO, as opposed to IBM, had the right to control what IBM could say publicly about the non-System V code, methods and concepts of AIX, for example, then IBM could not provide installation and technical assistance without the cooperation of SCO (an IBM competitor). (Ex. 181 ¶ 55.) | Disputed to the extent the statement refers to all UNIX System V licensees, in that the cited material does not support such a statement. Disputed in that the statement ignores the "material breach" component of the UNIX System V license agreements, and bear no comparison to the wholesale disclosures IBM undertook in the course of its Linux-development efforts (Ex. 139 ¶¶ 2-22.) Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable terms or are void on grounds of public policy. (See Argument at I.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. Ex. 139, the Rochkind declaration, is untimely in that it seeks to render an expert view after the deadline for expert reports. |
| 287. | Moreover, if, as it contends, SCO's "control rights" extend to experience and know-how (positive or negative), then it could control the employment of a significant sector of the computer industry. Many hundreds of thousands of people have been exposed to the code, methods, and concepts of System V and other flavors of UNIX. SCO and its predecessors have disseminated such information to many, many, thousands of persons and entities. Assuming the truth of SCO's claims about the scope of its control rights, it would appear to have the ability to control the employability of these persons. (Ex. 181 ¶ 56.) | Disputed to the extent the statement refers to all UNIX System V licensees, in that the cited material does not support such a statement. Disputed to the extent the statement suggests that SCO interprets the Agreements to impose restrictions on employment or employability as such. SCO does not base any claim of breach on the mere fact that IBM employed former Sequent employees. Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable terms or are void on grounds of public policy. (See Argument at I.) Disputed to the extent the statement suggests that all or even a significant amount of the UNIX System V methods or concepts have been made publicly available without restriction. (Ex. 139 ¶¶ 23-26.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. Ex. 139, the Rochkind declaration, is untimely in that it seeks to render an expert view after the deadline for expert reports. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 288. | At the same time, SCO would have little information about the scope of its rights. It could not, as a practical matter, know to what extent its licensees have associated their own original code, methods, and concepts with System V code, methods, and concepts. It could know even less about the extent to which software developers have relied upon public information about the code, methods, and concepts of System V. Thus, if SCO had the right to control modifications and derivative works, there would be widespread uncertainty about the scope of SCO's rights, including the identity of the persons whose employability it claims to have controlled. (Ex. 181 ¶ 57.) | Disputed to the extent the statement suggests that SCO interprets the Agreements to impose restrictions on employment or employability as such. SCO does not base any claim of breach on the mere fact that IBM employed former Sequent employees. Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable terms or are void on grounds of public policy. (See Argument at I.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer to any portion of the record on which SCO relies. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 289. | Based in part on the assurances of AT&T and its successors about what UNIX licensees could do with their original works, IBM and Sequent invested heavily in the development of AIX and Dynix. (Ex. 257 ¶¶ 3-5; Ex. 310 at 29:8-31:5, 56:11-57:5, 62:20-63:17, 119:16-120:2, 127:15-128:1 (Ex. 257 ¶¶ 3-5, 10; Ex. 283 ¶ 87.) IBM assigned thousands of people to AIX projects. (Ex. 257 ¶¶ 3-5, 10; Ex. 283 ¶ 87.)<br><br>SECTION REDACTED<br><br>Sequent devoted hundreds of person-years to developing Dynix. (Ex. 596 ¶ 4.) Both companies invested at least tens of millions of dollars in developing their businesses around AIX and Dynix. (Ex. 257 ¶¶ 7, 10; Ex. 283 ¶ 87; Ex. 596 ¶¶ 3-4.) | Disputed in that substantial evidence shows (and easily permits the inference) that no such assurances were given (¶¶ 63-163), and in that IBM and Sequent otherwise had compelling reasons to agree to the terms of the contracts they did (¶¶ 30-62.) Disputed to the extent the statement suggests that IBM and Sequent did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreements, the parties did not intend to exclude any previous or subsequent oral discussions from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement suggests that SCO interprets the Agreements to impose restrictions on employment or employability as such. SCO does not base any claim of breach on the mere fact that IBM employed former Sequent employees. Disputed to the extent the statement suggests that the IBM and Sequent Agreements set forth unreasonable terms or are void on grounds of public policy. (See Argument at .) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The majority of the assertions in SCO's response do not address IBM's statement, which pertains to IBM's and Sequent's business decisions and practices relating to AIX and Dynix development.<br><br>Nothing in SCO's statement or its referenced materials specifically controverts the undisputed facts that IBM and Sequent made these particular investments in the development of AIX and Dynix.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| [illegible] | IBM [illegible] | SCO's Response | IBM's Reply |
|---|---|---|---|
| 290. | Both companies added significant quantities of original code to the operating systems. To give an example, the original AT&T SVR2.0 source code totaled 896,204 lines of code. (Ex. 181 Ex. G.) The AIX Version 5.1.G for Power contains 160,198,865 lines of code. (Id.) SCO does not and could not allege that AIX or Dynix incorporate all of any version of System V. (See Ex. 285 at 22-25.) | Depending on the meaning of the term "original" and "significant quantities," disputed to the extent the statement suggests that some specific amount of the quoted number of lines of code in AIX were written without reference to, reliance on, or exposure to the licensed UNIX System V software product, in that the cited material does not support such an assertion. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer to any portion of the record on which SCO relies. |
| 291. | Since the initial introduction of the original versions of AIX in 1987, IBM has incorporated new technology and improvements, including Virtual Resource Manager, a Journaled File System, a Logical Volume Manager, an Object Data Manager, a System Management Interface Tool and a Network Install Manager, and others. (Ex. 257 ¶ 8; Ex. 283 ¶¶ 81-85.) Subsequent AIX versions integrated even more enhancements, including a Web-based System Manager, an IBM Java Development Kit, an AIX Workload Manager, and many other developments. (Ex. 257 ¶ 8; Ex. 283 ¶¶ 81-85.) | Depending on the meaning of the term "new technology," disputed in that the cited material does not support the statement, where the declarant in IBM Exhibit 257 acknowledges that "Each of these developments . . . are comprised primarily of non-UNIX source code," which means that they contain UNIX source code, which in turn means that they are modifications and derivative works of UNIX. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>SCO's statement does not refer to any portion of the record on which SCO relies. SCO does not offer support for its conclusion that AIX developments are "modifications and derivative works of UNIX". |
| 292. | AIX code has been employed in other IBM products, including servers, printers, and multi-protocol routers. (Ex. 257 ¶ 9; Ex. 283 ¶ 89.) | Disputed in that the cited material in IBM Exhibit 283 is inadmissible evidence based solely on an expert's description of the unsubstantiated recollections of an IBM employee. | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. Regardless of whether IBM's statement is fully supported by the views of its expert, Mr. Willig, IBM's reliance upon the sworn declaration of Mr. Sandve fully supports its statement. |

| | IBM's [illegible] | [illegible] | IBM's Reply |
|---|---|---|---|
| 293. | Each of these developments stands on its own right and is comprised of non-UNIX source code. Some of them can even be considered stand-alone products. If IBM had believed that these additions to UNIX would have subjected the code to the confidentiality provisions of the licensing agreements, It would not have packaged them with AIX. Similarly, AIX code has been employed in other IBM products, including servers, printers, and multi-protocol routers. If IBM ever believed that the IBM code included with AIX in these IBM products would be subject to the confidentiality provisions of the licensing agreements, AIX would not have been used in these products. (Ex. 257 ¶ 9.) | Disputed in that the cited material does not support the statement, where the declarant in IBM Exhibit 257 acknowledges that "Each of these developments . . . are comprised primarily of non-UNIX source code," which means that they contain UNIX source code, which in turn means that they are modifications and derivative works of UNIX. Disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreements, the parties did not intend to exclude any previous or subsequent oral discussions from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed in that IBM otherwise had compelling reasons for improving AIX as it did. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. SCO's citations do not lead to the conclusion that IBM's AIX developments are "modifications" and derivative works of UNIX.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 294. | In sum, if AT&T or its successors had ever expressed the position SCO asserts in this lawsuit, IBM and Sequent would have directed the vast amount of financial and human resources they spent on AIX and Dynix quite differently. (Ex. 257 ¶ 6, 9; Ex. 596 ¶¶ 3-4.) | Disputed in that substantial evidence shows (and easily permits the inference) that AT&T and its successors-in-interest ever stated, orally or in writing, that its UNIX System V licensees were not obligated to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent the statement suggests that licensees did not enter into agreements requiring them to hold in confidence all parts of their modifications and derivative works based on the licensed UNIX System V software product. (¶¶ 13-29, 82-86.) Disputed to the extent that the statement suggests that, upon entering into their written agreements, the parties did not intend to exclude any previous or subsequent oral discussions from the agreement the parties had reached. (¶¶ 18, 91-92.) "The IBM Agreements and the Sequent Agreements (collectively "the Agreements") set forth the terms under which UNIX System V could be used and disclosed by them and under which they could distribute software programs "based on" UNIX System V." (IBM Statement of Undisputed Facts ¶ 50.) Disputed to the extent the statement suggests that IBM or Sequent had compelling business reasons to insist on the "control" as described by IBM herein. (¶¶ 30-62.) | Deemed admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement.<br><br>SCO's statement does not refer with particularity to those portions of the record on which SCO relies.<br><br>The only statement in SCO's response that relates at all to IBM's statement is SCO's assertion that IBM and Sequent had "compelling business reasons to insist on the 'control'" of its AIX and Dynix code. However, SCO's statement does not refer with particularity to those portions of the record on which SCO relies. Furthermore, the material referred to by SCO does not support SCO's statement. |