# Addendum E

## ADDENDUM E
## An Illustration of the Absurdity of SCO's Claim

SCO's contract theory would lead to absurd results, not only for IBM, but potentially for the thousands of other UNIX System V licensees. If SCO were correct that the entire Dynix product is a "Derivative Work" of Unix System V, the possible repercussions for UNIX-related technologies would know no practical bounds, and SCO would be entitled to a windfall of outrageous proportions.

In its summary judgment papers and elsewhere, SCO has claimed that it has the right to control non-System V material contained within an alleged "Derivative Work" when such material is adapted for use in a new work containing no System V code. For example, SCO has claimed that it was improper for IBM to contribute to Linux certain RCU material created entirely by Sequent software developers. The RCU material contains no code copied from, or derived from, System V code, yet since it was adapted to work as part of the Dynix product, SCO claims that it controls RCU. (IBM Ex. 3 ¶¶ 144-166.) The diagram below shows SCO's alleged contractual basis for claiming control of RCU if all Dynix is a "Derivative Work":



As demonstrated, SCO's theory is one of guilt by association.  Because RCU technology was implemented in Dynix, SCO claims that it may control RCU (by preventing IBM from disclosing it to non-licensees) because of its fortuitous inclusion in an operating system product that may include some System V-derived code.  Notably, SCO does not accuse IBM of having engaged in behavior that the Agreement actually contemplates, such as misuse of the actual Unix System V code.

While SCO's theory has bizarre ramifications for IBM's use of its own intellectual property, some of the most absurd results of SCO's theory become apparent when applying it to the creations of other System V licensees, past and present.  Consider the case of TCP/IP (Transmission Control Protocol/Internet Protocol), a technology first widely implemented as part of the BSD operating system, which at the time included licensed AT&T UNIX material.[1]  (IBM Ex. 645 at 37-40.)  TCP/IP eventually was removed from the AT&T-licensed UNIX system and thus understood to be beyond AT&T's control:

> With the increasing cost of the AT&T source licenses, vendors that wanted to build standalone TCP/IP-based networking products for the PC market using the BSD code found the per-binary costs prohibitive.  So, they requested that Berkeley break out the networking code and utilities and provide them under licensing terms that did not require an AT&T source license.  The TCP/IP networking code clearly did not exist in 32/V and thus had been developed entirely by Berkeley and its contributors.  The BSD originated networking code and supporting utilities were released in June 1989 as Networking Release 1, the first freely-redistributable code from Berkeley.  (IBM Ex. 645 at 40-41.)

---

[1] Although Berkeley did eventually create a version of its product unencumbered by AT&T UNIX licensing restrictions, the version of BSDI's "BSD" operating system in which TCP/IP was first implemented was based on AT&T UNIX code.  (IBM Ex. 645 at 40.)

Under SCO's contract theory, the entirety of the BSD operating system product in which TCP/IP was first implemented, including TCP/IP itself, would be a "Derivative Work" subject to SCO's control.  As such, SCO could control TCP/IP as it now seeks to control IBM's RCU technology.  Since the entire internet is built upon TCP/IP, the code, methods and concepts of which must be known to internet programmers in order for the internet to function, SCO would be able to claim control over the entire internet and every internet-enabled device in existence, such as:  cell phones, Blackberry devices, network hardware, and even some space satellites.[2]  The hypothetical TCP/IP claim SCO could make under its contract theory is diagrammed below:



As this illustration should make clear, SCO's contract theory, if accepted, would lead to absurd results.

---

[2] See, e.g., http://www.starband.com.  SCO is aware of the potential scope of its claims, as it in fact argues in its opposition to IBM's Tenth Counterclaim that material it purports to control is important because the removal of it, "would make the World Wide Web grind to a halt".  (DJ Opp'n Br. at 66.)