SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **IBM'S REDACTED REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT (IBM'S TENTH COUNTERCLAIM)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>Civil No. 2:03-CV-00294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

**JAN 1 2 2007**

MARKUS B. ZIMMER, CLERK
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| THE SCO GROUP, INC., <br><br>     Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br>     Defendant/Counterclaim-Plaintiff. | **IBM'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT (IBM'S TENTH COUNTERCLAIM)** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> **FILED UNDER SEAL PURSUANT TO 9/16/03 PROTECTIVE ORDER, DOCKET #38** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

## TABLE OF CONTENTS

Page

Table of Authorities .......................................................................................................... iii

Preliminary Statement ..........................................................................................................1

Statement of Undisputed Facts ............................................................................................4

Argument ..............................................................................................................................6

I.     SCO BEARS THE BURDEN OF DEMONSTRATING THAT THERE ARE
GENUINE ISSUES OF MATERIAL FACT IN DISPUTE. ...............................................6

II.    SCO CANNOT PROVE UNAUTHORIZED COPYING BY IBM OF
COPYRIGHTED WORKS OWNED BY SCO. ...................................................................9

    A.    SCO Cannot Prove Unauthorized Copying. ............................................................9

    B.    SCO Cannot Prove Ownership of the Copyrights in the System V Code. ...........13

        1.    SCO Is Not Entitled to a Presumption of Ownership. ...............................13

        2.    IBM Can Challenge SCO's Ownership. ....................................................15

        3.    SCO Transferred Any Rights It Had to UnitedLinux. ...............................16

III.    IBM HAS ONE OR MORE LICENSES TO THE DISPUTED CODE. ...........................20

    A.    IBM Has a License Under the Strategic Business Agreement. ..............................21

    B.    IBM Has a License Under the GPL. .......................................................................25

    C.    Novell and USL Granted IBM a License. ..............................................................27

    D.    The TIS Committee Granted IBM a License. .........................................................30

IV.    SCO'S CLAIMS ARE FORECLOSED UNDER THE DOCTRINES OF
ESTOPPEL, WAIVER AND ABANDONMENT. ............................................................34

    A.    SCO's Misconduct Is Not Beyond the Equitable Power of the Court. ..................35

    B.    IBM Reasonably Relied on SCO's Conduct to Its Detriment. ...............................37

        1.    Caldera. ......................................................................................................37

i

|  | 2. | SCO. | 39 |
|  | 3. | Santa Cruz. | 41 |
|  | 4. | IBM. | 43 |
| C. | | IBM Was Ignorant of the Fact That SCO Would Assert Claims to Linux. | 46 |
| V. | | SCO CANNOT SHOW SUBSTANTIAL SIMILARITY BETWEEN LINUX AND PROTECTABLE ELEMENTS OF THE SYSTEM V WORKS. | 48 |
| A. | | None of the System V Code Is Protectable by Copyright. | 48 |
|  | 1. | The System V Code Was Dictated by Externalities. | 48 |
|  | 2. | The System V Code Represents Mere Ideas or Merger Material. | 51 |
|  | 3. | The System V Code Lacks Even De Minimis Originality | 55 |
| B. | | Linux Is Not Substantially Similar to the System V Works, Even Assuming the Protectability of the System V Code | 57 |
| VI. | | SCO HAS MISUSED ITS ALLEGED COPYRIGHTS. | 60 |
| Conclusion | | | 64 |

## Table of Authorities

Page

**Cases**

3M Innovative Prop. Co. v. Barton Nelson, Inc.,
No. 02-3591, 2003 WL 22989077 (D. Minn. Dec. 12, 2003)................................................ 22

Adler v. Wal-Mart Stores, Inc.,
144 F.3d 664 (10th Cir. 1998)............................................................................................. 7, 59

Alcatel v. DGI Tech., Inc.,
166 F.3d 772 (5th Cir. 1999)................................................................................................... 63

Armento v. City of Ashville Downtown Dev. Office,
No. 94-57, 1996 WL 677119 (W.D.N.C. Mar. 26, 1996)........................................................ 35

Arnold Indus. v. Love,
63 P.3d 721 (Utah 2002)......................................................................................................... 22

Ashley Creek Phosphate Co. v. Chevron,
129 F. Supp. 2d 1299 (D. Utah 2000)...................................................................................... 4

Bakowski v. Mountain States Steel, Inc.,
52 P.3d 1179 (Utah 2002)....................................................................................................... 17

Bieg v. Hovnanian Enter., Inc.,
157 F. Supp. 2d 475 (E.D. Pa. 2001) ..................................................................................... 16

Brown Bag Software v. Symantec Corp.,
960 F.2d 1465 (9th Cir. 1992)................................................................................................. 59

Brown v. Latin American Music Co., Inc.,
No. 05-1242, 2006 WL 2059606 (D.P.R. July 21, 2006) ............................................ 14, 15, 16

Buckward Digital Servs., Inc v. Millar Instruments,
No. 05-1728, 2006 WL 1118003 (S.D. Tex. Apr. 26 2006) ..................................................... 35

Cambridge Elec. Corp. v. MGA Elec., Inc.,
227 F.R.D. 313 (C.D. Cal. 2004) ........................................................................................... 12

Carlson v. C.H. Robinson Worldwide, Inc.,
Nos. 02-3780 & 02-4261, 2005 WL 758601 (D. Minn. Mar. 30, 2005) ...................... 49, 50, 57

Carson v. Dynegy, Inc.,
    344 F.3d 446 (5th Cir. 2003)..................................................................................... 45, 46

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..................................................................................................... 6

Chase v. Scott,
    38 P.3d 1001 (Utah App. 2001) ................................................................................ 19

Computer Assocs. Int'l v. Altai, Inc.,
    982 F.2d 692 (2d Cir. 1992)....................................................................................... 53

Country Kids 'N City Slicks, Inc. v. Sheen,
    77 F.3d 1280 (10th Cir. 1996)............................................................................... 58, 59

Cudjoe v. Indep. Sch. Dist. No. 12,
    297 F.3d 1058 (10th Cir. 2002)................................................................................... 7

DeCarlo v. Archie Comic Pub., Inc.,
    127 F. Supp. 2d 497 (S.D.N.Y. 2001)................................................................... 35, 42

Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,
    890 F.2d 165 (9th Cir. 1989)................................................................................. 43, 44

Dymo Indus., Inc. v. Monarch Marking Sys., Inc.,
    474 F. Supp. 412 (S.D. Tex. 1979) ........................................................................... 38

Eastman Kodak Co. v. Rakow,
    739 F. Supp. 116 (W.D.N.Y. 1989) .......................................................................... 36

Energetec Sys., Inc. v. Kayser,
    No. 84-10611, 1986 WL 8058 (N.D. Ill. July 17, 1986)........................................... 43

Feist Publ'ns. Inc. v. Rural Tel. Serv. Co. Inc.,
    499 U.S. 340 (1991).......................................................................................... 55, 56, 57

Field v. Google Inc.,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ....................................................................... 35

Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,
    No. 04-541, 2006 WL 641524 (D. Utah Mar. 10, 2006) .......................................... 17

Forest Labs., Inc. v. Abbott Labs.,
    No. 96-159, 1999 WL 33299123 (W.D.N.Y. June 23, 1999).................................... 36

iv

Frybarger v. I.B.M. Corp.,
  812 F.2d 525 (9th Cir. 1987)....................................................................................... 60

Gates Rubber Co. v. Bando Chem. Indus., Ltd.,
  9 F.3d 823 (10th Cir. 1993).............................................................. 14, 49, 53, 54, 59

Gemisys Corp. v. Phoenix Am., Inc.,
  186 F.R.D. 551 (N.D. Cal. 1999)................................................................................ 60

Glass v. Pfeffer,
  849 F.2d 1261 (10th Cir. 1988)................................................................................... 38

Glenayre Elec., Inc. v. Jackson,
  No. 02-0256, 2003 WL 366574 (N.D. Ill. Feb. 19, 2003) ........................................... 9

Hadady Corp. v. Dean Witter Reynolds, Inc.,
  739 F. Supp. 1392 (C.D. Cal. 1990).......................................................................... 35

Hart v. Sampley,
  No. 91-3068, 1992 WL 336496 (D.D.C. June 24, 1991)........................................... 15

Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.,
  585 F. Supp. 17 (D. Iowa 1982)................................................................................. 38

Hilgraeve Corp. v. Symantec Corp.,
  265 F.3d 1336 (Fed. Cir. 2001).................................................................................. 22

Hoehn v. Crews,
  144 F.2d 665 (10th Cir. 1944)..................................................................................... 44

Hutton Contracting Co., Inc. v. City of Coffeyville,
  No. 02-4130, 2004 WL 2203449 (D. Kan. Sept. 24, 2004) ................................. 50, 57

I.A.E., Inc. v. Shaver,
  74 F.3d 768 (7th Cir. 1996)........................................................................................ 22

In re Papst Licensing, GmbH Patent Litig.,
  Nos. MDL 1298, 99-3118, 2000 WL 1859013 (E.D. La. Dec. 19, 2000) .......... 36, 37

Intellicall, Inc. v. Phonometrics, Inc.,
  952 F.2d 1384 (Fed. Cir. 1992).................................................................................... 9

Interactive Network, Inc. v. NTN Comm., Inc.,
  875 F. Supp. 1398 (N.D. Cal. 1995) ........................................................................ 7, 8

Jacobsen v. Deseret Book Co.,
   287 F.3d 936 (10th Cir. 2002) ................................................................................................... 14

Jamesbury Corp. v. Litton Indus. Products, Inc.,
   646 F. Supp. 1495 (D. Conn. 1986) ......................................................................................... 35

Johnston v. IVAC Corp.,
   885 F.2d 1574 (Fed. Cir. 1989) .................................................................................................. 9

Keane Dealer Services, Inc. v. Harts,
   968 F. Supp. 944 (S.D.N.Y. 1997) ................................................................... 35, 38, 42, 45, 46

Konstant Prods. Inc. v. Frazier Indus. Co., Inc.,
   No. 91-4491, 1993 U.S. Dist. LEXIS 7957 (N.D. Ill. June 7, 1993) ....................................... 38

Kraatz v. Heritage Imports,
   71 P.3d 188 (Utah App. 2003) .................................................................................................. 19

Kraft v. Cohen,
   32 F. Supp. 821 (E.D. Pa. 1940) ............................................................................................. 46

Kumho Tire Co. v. Carmichael,
   526 U.S. 137 (1999) ................................................................................................................. 49

Larami Corp. v. Amron,
   No. 91-6145, 1993 WL 69581 (E.D. Pa. Mar. 11, 1993) ........................................................... 8

Lasercomb America, Inc. v. Reynolds,
   911 F.2d 970 (4th Cir. 1990) .................................................................................................... 63

Lauth v. McCollum,
   No. 03-8529, 2004 WL 2211620 (N.D. Ill. Sept. 30, 2004) ..................................................... 12

Lawrence v. IBP, Inc.,
   No. 94-2027, 1995 WL 261144 (D. Kan. Apr. 21, 1995) ................................................... 12, 52

Lefler v. United Healthcare of Utah, Inc.,
   162 F. Supp. 2d 1310 (D. Utah 2001) ....................................................................................... 7

Lyrick Studios, Inc. v. Big Idea Productions, Inc.,
   420 F.3d 388 (5th Cir. 2005) .................................................................................................... 15

Macris & Assocs., Inc. v. Neways, Inc.,
   986 P.2d 748 (Utah 1999) ........................................................................................................ 38

McCullough Tool Co. v. Well Surveys, Inc.,
  395 F.2d 230 (10th Cir. 1968)...................................................................................... 44

McFadden v. R&R Engine & Machine Co.,
  102 F. Supp. 2d 458 (N.D. Ohio 2000)....................................................................... 44

Medimmune, Inc. v. Centocor, Inc.,
  271 F. Supp. 2d 762 (D. Md. 2003) .............................................................................. 7

Medtronic, Inc. v. Guidant Corp.,
  No. 00-1473, 2003 WL 21181103 (D. Minn. May 16, 2003)................................... 22

MGA, Inc. v. Centri-Spray Corp.,
  639 F. Supp. 1238 (E.D. Mich. 1986).......................................................................... 38

Minebea Co., Ltd. v. Papst,
  444 F. Supp. 2d 68 (D.D.C. 2002) ............................................................................... 36

Mirmingos v. Benjamin,
  288 B.R. 521 (Bankr. N.D. Ill. 2003)........................................................................... 44

MiTek Holdings, Inc. v. Arce Eng'g. Co., Inc.,
  89 F.3d 1548 (11th Cir. 1996)....................................................................................... 53

Mitel, Inc. v. Iqtel, Inc.,
  124 F.3d 1366 (10th Cir. 1997)............................................................ 51, 55, 56, 57

Moore v. Pyrotech Corp.,
  13 F.3d 406, 1993 WL 513834 (10th Cir. 1993) ........................................................ 38

Nat'l Cable Television Assoc. v. Broad. Music, Inc.,
  772 F. Supp. 614 (D.D.C. 1991) .................................................................................. 44

Newman v. Checkrite California, Inc.,
  912 F. Supp. 1354 (E.D. Cal. 1995)............................................................................. 36

Ontario Die Co. of America v. Indep. Die Assoc., Inc.,
  No. 89-30035, 1990 WL 300899 (E.D. Mich. Aug. 24, 1990)................................... 9

Ory v. McDonald,
  68 U.S.P.Q.2d 1812 (C.D. Cal. 2003).......................................................................... 38

Pannonia Farms, Inc. v. USA Cable,
  No. 03-7841, 2004 WL 1276842 (S.D.N.Y. June 8, 2004) ....................................... 15

Peer Int'l Corp. v. Luna Records, Inc.,
  887 F. Supp. 560 (S.D.N.Y. 1995)............................................................................................... 46

Phillips Petroleum Co. v. Lujan,
  951 F.2d 257 (10th Cir. 1991)...................................................................................................... 24

Pioneer Hi-Bred Int'l., Inc. v. Ottawa Plant Food, Inc.,
  219 F.R.D. 135 (N.D. Iowa 2003) ........................................................................................ 50, 57

Positive Black Talk, Inc. v. Cash Money Records, Inc.,
  No. 02-0425, 2003 WL 1522941 (E.D. La. Mar. 20, 2003) ..................................................... 16

Practice Mgmt. Info. Corp. v. Am. Med. Assoc.,
  121 F.3d 516 (9th Cir. 1997)....................................................................................................... 63

Productivity Software Int'l, Inc. v. Healthcare Tech., Inc.,
  No. 93-6949, 1995 WL 437526 (S.D.N.Y. July 25, 1995) ........................................................ 60

Pyrodyne Corp. v. Pyrotronics Corp.,
  847 F.2d 1398 (9th Cir. 1988)..................................................................................................... 36

Quinn v. City of Detroit,
  23 F. Supp. 2d 741 (E.D. Mich. 1998).................................................................................. 45, 46

Rambus, Inc. v. Infineon Tech. AG.,
  326 F. Supp. 2d 721 (E.D. Va. 2004)......................................................................................... 39

Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.,
  923 F. Supp. 1231 (N.D. Cal. 1995) .......................................................................................... 14

Remington Rand v. Acme Card Sys. Co.,
  29 F. Supp. 192 (D. Ohio 1937).................................................................................................. 38

Respect, Inc. v. Comm. on the Status of Women,
  815 F. Supp. 1112 (N.D. Ill. 1993) ............................................................................................ 22

RT Computer Graphics, Inc. v. United States,
  44 Fed. Cl. 747 (Fed. Cl. 1999) .................................................................................................. 22

Schiller & Schmidt, Inc. v. Nordisco Corp.,
  969 F.2d 410 (7th Cir. 1992)....................................................................................................... 15

Sem-Torq, Inc. v. K Mart Corp.,
  936 F.2d 851 (6th Cir. 1991).......................................................................................... 14, 15, 16

Shea v. Fantasy Inc.,
   No. 02-02644, 2003 WL 881006 (N.D. Cal. Feb. 27, 2003) .......................................... 14, 15, 16

Steinberg v. Columbia Pictures Industries., Inc.,
   663 F. Supp. 706 (S.D.N.Y. 1987) .............................................................................................. 46

Steiner Sales Co. v. Schwartz Sales Co.,
   98 F.2d 999 (10th Cir. 1938) ........................................................................................................ 8

Stone v. CGS Distrib. Inc.,
   No. 93-1288, 1994 WL 832021 (D. Colo. Aug. 18, 1994) .................................................. 12, 52

Stover v. Eagle Prods., Inc.,
   No. 93-4047, 1996 WL 172972 (D. Kan. Mar. 19, 1996) ................................................... 49, 57

Sunham Home Fashions, LLC v. Pem-American, Inc.,
   No. 02-6284, 2002 WL 31834477 (S.D.N.Y. Dec. 17, 2002) ................................................. 15

Tamburo v. Calvin,
   No. 94-5206, 1995 WL 121539 (N.D. Ill. Mar. 17, 1995) ....................................................... 63

Taylor Engines v. All Steel Engines,
   192 F.2d 171 (9th Cir. 1951) ..................................................................................................... 22

The SCO Group, Inc. v. Novell, Inc.,
   No. 04-00139, 2004 WL 4737297 (D. Utah June 9, 2004) ...................................................... 19

Trainor v. Apollo Metal Specialties, Inc.,
   318 F.3d 976 (10th Cir. 2003) ..................................................................................................... 6

Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.,
   No. 95-0246, 1997 WL 158364 (S.D.N.Y. Apr. 2, 1997) ........................................... 14, 15, 16

Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc.,
   63 F. Supp. 2d 329 (S.D.N.Y. 1999) ........................................................................................ 14

Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.,
   No. 05-380, 2005 WL 3263157 (D. Utah Dec. 1, 2005) ........................................................... 44

Utah Transit Auth. v. Salt Lake City Southern R.R. Co., Inc.,
   131 P.3d 288 (Utah App. 2006) ................................................................................................. 17

Vanover v. Altec Indus., Inc.,
   82 Fed. Appx. 8, 10 (10th Cir. 2003) ................................................................................. 49, 57

Wafer Shave, Inc. v. Gillette Co.,
   857 F. Supp. 112 (D. Mass. 1993) ............................................................................................ 35

Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc.,
   103 F.3d 1571 (Fed. Cir. 1997) ................................................................................................ 39

Wells v. Boston Ave. Realty,
   125 F.3d 1335 (10th Cir. 1997) ................................................................................................ 17

Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,
   797 F.2d 1222 (3d Cir. 1986) ................................................................................................... 59

Wuv's Int'l, Inc. v. Love's Enters., Inc.,
   208 U.S.P.Q. 736 (D. Colo. 1980) ............................................................................................. 8

**Statutes & Rules**

17 U.S.C. § 410(c) ........................................................................................................................ 15

U.C.A. 1953 § 57-1-10 .................................................................................................................. 22

**Other Authorities**

12 Moore's Federal Practice § 57.62[2][d] (3d ed. 1997) ............................................................. 7

DUCivR 56-1(c) ............................................................................................... 4, 5, 49, 53, 61

Fed. R. Civ. P. 37(c) ..................................................................................................................... 52

Fed. R. Civ. P. 56 ........................................................................................................................... 4

Fed. R. Civ. P. 56(e) ...................................................................................................................... 7

Fed. R. Evid. 702 .............................................................................................. 6, 49, 50, 57

Defendant/Counterclaim Plaintiff International Business Machines Corporation ("IBM") respectfully submits this reply memorandum in support of its motion for summary judgment on its claim for declaratory judgment of non-infringement with respect to IBM's Linux activities (the "Tenth Counterclaim") against Plaintiff/Counterclaim-Defendant The SCO Group, Inc. ("SCO").

## Preliminary Statement[1]

In its opening brief, IBM offered multiple independent reasons why it is entitled to a declaration that its Linux activities do not infringe SCO's alleged UNIX copyrights. To avoid summary judgment, SCO was required to adduce admissible evidence demonstrating a genuine issue of material fact as to IBM's alleged infringement. Rather than do so, SCO's opposition seeks to shift the burden of proof to IBM and rely on a mass of new allegedly misused material not specifically identified by SCO in its Final Disclosures. But the law is clear that the burden of proof lies with SCO, and the Court has been clear that SCO's allegations of infringement are limited to the

**SECTION REDACTED**                                        As to those .

                                                             SCO's claims of

infringement fail as a matter of law for at least five independent reasons, any one of which justifies the entry of summary judgment in favor of IBM.

First, SCO cannot establish unauthorized copying by IBM of copyrighted works owned by SCO. From the inception of this case, SCO declined to disclose its allegations and alleged

---

[1] Terms are defined and used herein as they were in IBM's opening brief. In addition, references herein are as follows: cites to "DJ Br. ¶__" refer to IBM's "Statement of Undisputed Facts" in IBM's opening brief, and cites to "IBM Ex. __" refer to the declarations and documents appended to the Declarations of Todd M. Shaughnessy, dated September 25, 2006, November 11, 2006 and January 12, 2007, the Supplemental Declaration of Todd M. Shaughnessy, dated September 25, 2006 and the Second Supplemental Declaration of Todd M. Shaughnessy, dated September 29, 2006. References to SCO's opposition papers are given as "Opp'n at __", and references to the declarations and documents appended to the Declaration of Brent O. Hatch are cited herein as "SCO Ex. __".

evidence of infringement by IBM. Now, after years of litigation, it is clear why — it has none. SCO's Final Disclosures do not specifically identify anything IBM is supposed to have done to infringe SCO's alleged copyrights. Nor do they identify a shred of evidence that IBM has infringed them. Despite the Court's orders, SCO's opposition papers identify as misused material nowhere mentioned in SCO's Final Disclosures. Judge Wells already ruled that SCO may not rely on this information, however, leaving SCO's allegations bare. Thus, IBM is entitled to summary judgment for that reason alone. (See Part I below.)

Second, IBM has a license to use all of the Linux Code and, as to much of it, multiple licenses. SCO generally does not dispute the meaning of the plain language of the agreements. SCO instead launches a salvo of unsupported and sometimes self-contradictory arguments to create the appearance of a fact question. But none of SCO's arguments is supported by the evidence. Thus, even if SCO had complied with the Court's orders to disclose its allegations and evidence, IBM's licenses provide it with a complete defense to all of SCO's claims of infringement. (See Part II below.)

Third, while SCO endeavors to conjure up fact questions, the undisputed facts compel the conclusion that SCO is estopped from pursuing its attack on the operating system it helped to create. SCO, once one of the largest Linux companies in the world, knew the Linux Code was in Linux long before the commencement of this case. SCO was in fact responsible for much of it being there. Moreover, SCO vigorously promoted and widely distributed Linux, including the very code at issue, before and after it purports to have acquired the alleged copyrights. It simply cannot be that SCO can permissibly profit from the allegedly infringing code for years, and then when it concludes more money can be made elsewhere, claim infringement with respect to the same code on the theory that it is unlawfully in Linux. (See Part III below.)

2

Fourth, SCO's allegations of infringement depend on the proposition that the allegedly infringing code renders Linux "substantially similar" to the System V Works. Even if

SECTION REDACTED

were protectable by copyright, SCO could not show that Linux is substantially similar. The allegedly infringed code is trivial in size —

. Put in perspective, the code identified by SCO is proportional to less than one word selected from this entire brief. In any event, the few lines of code identified by SCO are unprotectable by copyright law. SCO's opposition simply ignores evidence that the                          at issue are unprotectable and instead devotes much of its substantial-similarity argument to allegations that have been rejected by the Court as exceeding the scope of the Final Disclosures. (See Part IV below.)

Fifth, SCO cannot enforce its alleged copyrights in the System V Works because it has misused them by exceeding the scope of the allegedly infringed copyrights. In its assault on Linux and IBM, SCO has fired shots indiscriminately, laying claim to vast quantities of material in which it has no alleged copyrights and could not possibly claim copyright. For example, SCO has sought control over all of Linux (whether alleged to infringe System V or not), IBM's homegrown code and code owned by BSD. In its opposition papers, SCO does not (and cannot) contest the multiple grounds entitling IBM to a finding of misuse, instead offering only a brief exposition on irrelevant issues that do not refute its copyright misuse. Thus, independent of the other reasons for granting IBM summary judgment, SCO should not be allowed to enforce its alleged copyrights based on misuse. (See Part V below.)

When all is said and done, SCO's claims of infringement relating to the Linux kernel

SECTION REDACTED

concern a mere                          — no more. SCO's Final Disclosures do not identify a shred of evidence that IBM copied that code. In any case, IBM has multiple licenses to it, a number of

them from SCO.  Notably, SCO promoted and distributed Linux with

for years, without making so much as a peep about it infringing SCO's rights.  Indeed, before

SECTION REDACTED

none of which is protectable by copyright, could not possibly render

Linux substantially similar to UNIX System V, as is further discussed below.

### Statement of Undisputed Facts

IBM's opening papers set out, supported with admissible evidence, 308 statements of

undisputed fact.  Despite the volume of its opposition papers, SCO fails properly to contest them,

as described in Addendum A, which is incorporated here by reference.  While SCO expressly

concedes few of IBM's facts, it fails specifically to controvert those it purports to dispute with

evidence of record meeting the requirements of Fed. R. Civ. P. 56.  Pursuant to Local Rule 56-

1(c), IBM's facts should therefore be deemed admitted.

Rather than specifically controvert IBM's statement of facts, SCO offers its own

counterstatement of facts.  However, a party cannot avoid summary judgment based on a

counterstatement of facts that does not satisfy the requirement of Local Rule 56-1(c).  See

Ashley Creek Phosphate Co. v. Chevron, 129 F. Supp. 2d 1299, 1303 n.2 (D. Utah 2000), aff'd

in part, rev'd in part, 315 F.3d 1245 (10th Cir. 2003).  SCO's counterstatement of alleged facts

does not meet IBM's facts and is comprised of alleged evidence that is immaterial, inadmissible

and precluded by order of the Court.

Notably, SCO's response to IBM's statement of undisputed facts is largely a frolic and

detour into the irrelevant, plainly designed to give the false impression of a fact dispute.  For

4

example, SCO provides long narrative responses that do not meet IBM's statement of fact but rather relate loosely to its theory of the case. For example:

(1) In response to IBM's assertion in its fact ¶ 54 that the creation of standards for Linux was important for Caldera and other Linux distributors, SCO states that it was generally known that

**SECTION REDACTED**

(2) In response to IBM's assertion in its fact ¶ 187 that none of the and has long been publicly available, SCO recites a laundry-list of unrelated Linux activities in which it alleges IBM has partaken.

(3) In response to IBM's 34-word assertion in its fact ¶ 5 that Linux is an "open source" program, SCO offers an 886-word argument that SCO's UNIX assets were never properly licensed under the GPL.

Where SCO offers evidence to support its assertion of fact, it often does so by a labyrinth of cross-references that plainly fail to meet the specificity requirements of Local Rule 56-1(c). For example, in response to IBM ¶ 233, SCO directs the Court to its responses to IBM ¶¶ 27, 118, 192, 220, 222, 223, 226, 228, 236. SCO's response to IBM ¶ 228 directs the Court to SCO's response to IBM ¶¶ 27, 118, 192, 220, 222. SCO's response to IBM ¶ 222 directs the Court to SCO's response to IBM ¶¶ 27, 118, 192, 223, 233, 236. SCO's response to IBM ¶ 27 directs the Court to SCO's response to IBM ¶¶ 4, 22, 187. SCO's response to IBM ¶ 187 directs the Court to SCO's response to IBM ¶¶ 4, 5, 27, 45. SCO's response to IBM ¶ 5 directs the Court to SCO's response to IBM ¶ 1, 2. SCO's response to IBM ¶ 2 directs the Court to SCO's response to IBM ¶¶ 1, 283, 284, 285. SCO's response to IBM ¶¶ 283-284 directs the Court to SCO's response to IBM ¶¶ 30-33, 98. SCO's response to IBM ¶ 98 directs the Court to SCO's response to IBM ¶¶ 96-97. SCO's response to IBM ¶ 96 directs the Court to SCO's response to IBM ¶¶ 4, 22, 35, 40-41, 54, 59-60, 63, 66, 69-71, 85-87, 89, 103. And so on.

IBM's objections to the evidence on which SCO relies are summarized at Addendum B, which is incorporated herein by reference. Suffice it to say here that SCO's opposition depends almost entirely on evidence that was not disclosed by SCO in its Final Disclosures and/or does

not meet the requirements of Federal Rule of Evidence 702 and is therefore inadmissible.  One

example of many is the purported

SECTION REDACTED                              As the Court already ruled, SCO may not rely on such

objectionable and inadmissible evidence.

For the Court's convenience, the .        SECTION REDACTED        are reproduced at

Addendum C.  A table summarizing many of the flaws in SCO's claims as to this code appears at

Addendum D.

<div align="center">**Argument**</div>

**I.     SCO BEARS THE BURDEN OF DEMONSTRATING THAT THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE.**

SCO misstates the standard this Court must apply in considering IBM's motion.

Although SCO has been asserting publicly for more than three years that it has substantial

evidence that source code in Linux infringes its purported UNIX copyrights, SCO now contends

it is IBM's burden in this case to show that Linux does not contain material that infringes SCO's

copyrights.  (SCO Opp'n. at 49.)  Because IBM's Tenth Counterclaim seeks a declaration of

non-infringement, SCO is wrong.

"[W]here the non-moving party will bear the burden of proof at trial", summary judgment

must be granted if "the nonmoving party has failed to make a sufficient showing on an essential

element of [its] case".  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986); see Trainor v.

Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2003) (holding that the moving party

can carry its burden on a motion for summary judgment "by showing that the nonmoving party

does not have enough evidence to carry its burden of persuasion at trial").  In this Circuit,

therefore, although IBM "bears the initial burden of making a prima facie demonstration of the

absence of a genuine issue of material fact and entitlement to judgment as a matter of law", IBM

<div align="center">6</div>

"need not negate the nonmovant's claim" with any evidence.  See Adler v. Wal-Mart Stores,
Inc., 144 F.3d 664, 670-71 (10th Cir. 1998) (emphasis added); see also Cudjoe v. Indep. Sch.
Dist. No. 12, 297 F.3d. 1058, 1062 (10th Cir. 2002).  Rather, IBM is entitled to summary
judgment if it can "point[] out to the court a lack of evidence for the nonmovant on an essential
element of the nonmovant's claim".[2]  Adler, 144 F.3d at 671.

     Since IBM merely seeks a declaration that it does not infringe SCO's alleged copyrights,
SCO, not IBM, bears the burden of proof at trial.  It is well-established that when a declaratory
judgment plaintiff seeks a declaration of non-infringement, the party claiming infringement—
i.e., the declaratory judgment defendant—bears the burden.[3]  See Medimmune, Inc. v. Centocor,
Inc., 271 F. Supp. 2d 762, 769-70 (D. Md. 2003) ("[I]n a typical patent infringement declaratory
judgment case where the declaratory plaintiff seeks a holding of non-infringement, the patent
holder retains the burden of proof despite being the nominal defendant.")  (citations omitted);
Interactive Network, Inc. v. NTN Comm., Inc., 875 F. Supp. 1398, 1403 (N.D. Cal. 1995)
(holding that the defendant in a declaratory judgment action seeking a declaration of non-

---

[2] See also Lefler v. United Healthcare of Utah, Inc., 162 F. Supp. 2d 1310, 1315 (D. Utah
2001) ("In a case where a party moves for summary judgment on an issue on which he would not
bear the burden of persuasion at trial, his initial burden of production may be satisfied by
showing the court there is an absence of evidence in the record to support the nonmovant's
case…Once the moving party has met this initial burden of production, the burden shifts to the
nonmoving party to designate 'specific facts showing that there is a genuine issue for trial'.")
(quoting Fed. R. Civ. P. 56(e)).

[3] See, e.g., 12 Moore's Federal Practice § 57.62[2][d] (3d ed. 1997) ("In patent, copyright,
and trademark cases, courts have generally recognized that any role reversal occasioned by
declaratory relief should not shift the burden of proof from the manner in which it would be
assigned in a coercive infringement suit.  In general, the holder bears the burden of proving the
validity of the patent, copyright, or trademark and that some specific activity or product is
infringing or would infringe.  If the burden of proof is shifted in these declaratory relief actions,
the alleged infringer would be forced to prove a negative, that no conceivable activity could
infringe on any of the holder's rights.  Rather, when declaratory relief actions are prompted by a
specific threat made by the holder, the holder is simply put to its proof.") (internal citation
omitted).

infringement bears the burden of proof); Larami Corp. v. Amron, No. 91-6145, 1993 WL 69581, at *3 (E.D. Pa. Mar. 11, 1993) (same) (DJ Br. Ex. C).

SCO's assertion that IBM bears the burden of proof is based on a blatant misreading of the law. The principal case upon which SCO relies to argue that IBM must prove at trial that it does not infringe SCO's copyrights, Steiner Sales Co. v. Schwartz Sales Co., 98 F.2d 999 (10th Cir. 1938), does not support that proposition. (Opp'n at 49.) In Steiner, the declaratory judgment plaintiff was not seeking a declaration of non-infringement. Instead, the plaintiff sought to establish that certain patent licensing agreements it had entered into with the defendant violated federal antitrust laws. 98 F.2d at 1011. Thus, Steiner stands only for the unremarkable proposition that a plaintiff bears the burden of establishing it is entitled to the declaration of an affirmative proposition that it is seeking (i.e., that certain contracts violated antitrust laws), not a declaration of a negative proposition, such as non-infringement.[4]

Contrary to SCO's interpretation of the law, therefore, IBM is entitled to summary judgment unless SCO is able to come forward with specific evidence demonstrating a genuine issue of material fact as to IBM's alleged infringement of SCO's copyrights. See Interactive Network, 875 F. Supp. at 1403 ("summary judgment of noninfringement for the alleged infringer (Interactive) must be granted unless NTN can demonstrate a genuine issue of material fact as to whether a reasonable jury could conclude that the two works are substantially similar in both ideas and expression"); Larami, 1993 WL 69581, at *3 ("on this motion for partial summary

---

[4] The only other case cited by SCO is also unavailing. In Wuv's International, Inc. v. Love's Enterprises, Inc., the plaintiff, Wuv's International, sought an affirmative declaration that "it had the right to the use and registration of the mark 'WUVS'", not a declaration of non-infringement. 208 U.S.P.Q. 736, 757 (D. Colo. 1980). The court in that case ruled that a declaratory judgment plaintiff carried the burden of establishing that its own service mark was protectable and could be registered with the U.S. Patent and Trademark Office, but the defendant carried the burden of establishing that plaintiff infringed its "Love's" service mark. Id. at 747, 756-757.

8

judgment, [declaratory judgment plaintiff] need only point out the absence of evidence supporting a finding of infringement.  To resist this motion, [declaratory judgment defendant] must then come forward with specific evidence showing that there is a genuine issue of material fact for trial as to whether the '129 patent is infringed").[5]

## II.     SCO CANNOT PROVE UNAUTHORIZED COPYING BY IBM OF COPYRIGHTED WORKS OWNED BY SCO.

SCO does not dispute the fact that its infringement claim fails (and IBM is entitled to summary judgment) if SCO cannot prove unauthorized copying by IBM of copyrighted works owned by SCO.  In IBM's opening papers, we showed that: (1) SCO cannot prove ownership of the allegedly infringed copyrights; and (2) SCO cannot prove unauthorized copying by IBM. (DJ Br. at 76-79.)  Nothing in SCO's opposition papers refutes IBM's showing or justifies denial of summary judgment.

### A.     SCO Cannot Prove Unauthorized Copying.

In IBM's opening brief, we explained that the Final Disclosures and SCO's interrogatory responses reveal no evidence — none — of unauthorized copying by IBM of the System V Code. (DJ Br. ¶¶ 146-57.)  In fact, neither the I

(DJ Br. ¶¶ 192-97.)  We

SECTION REDACTED

---

[5] See also Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed. Cir. 1992) (affirming grant of summary judgment on claim for declaration of non-infringement where defendant produced no evidence of infringement in opposition to motion); Johnston v. IVAC Corp., 885 F.2d 1574, 1577 (Fed. Cir. 1989) (same); Ontario Die Co. of America v. Indep. Die Assoc., Inc., No. 89-30035, 1990 WL 300899, at *2 (E.D. Mich. Aug. 24, 1990) ("Once a party seeking a declaration of noninfringement sets forth materials suggesting non-response to a patentee's claim, the burden shifts to the patentee to provide materials that at a minimum raise actual doubt concerning potential infringement.") (Addendum E hereto); Glenayre Elec., Inc. v. Jackson, No. 02-0256, 2003 WL 366574, at *2 (N.D. Ill. Feb. 19, 2003) ("'The motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement.'") (quoting Johnston, 885 F.2d at 1577) (Addendum F hereto).

further explained that SCO cannot sustain its claims or avoid summary judgment based on assertion alone and that in the absence of evidence that IBM copied System V Code without authorization, SCO cannot sustain its claims of infringement. (DJ Br. at 76-79.) SCO's opposition seeks improperly to cure these defects by relying on allegations and evidence not specifically identified in its Final Disclosures or interrogatory responses. That it cannot do.

From the beginning of this case, IBM has asked SCO to specify its allegations of misconduct. (DJ Br. at 76.) SCO repeatedly declined, requiring the Court twice to order SCO to respond to IBM's discovery requests and to specify its allegations. (Id.) When SCO still refused to specify its allegations, IBM moved for summary judgment. The Court recognized that SCO had failed to offer evidence in support of its claims but deferred resolving IBM's motions on the merits and established a final deadline for SCO to disclose any allegations of misuse it wished to pursue. [6] (DJ Br. ¶¶ 159-161.) SCO submitted its Final Disclosures late last year,

SECTION REDACTED

Recognizing that its Final Disclosures and interrogatory responses come nowhere close to meeting SCO's disclosure obligations and that it could not establish a claim of infringement based on the.       SECTION REDACTED

', SCO proffered the testimony of Thomas Cargill to support

---

[6] In establishing a final deadline for the identification of allegedly misused material, the Court agreed with IBM that this case should be litigated based on timely disclosures. (See DJ Br. ¶¶ 160-61.) Notably, SCO stipulated and agreed with IBM that it was required to identify with specificity any and all material that it contends IBM misused in the Final Disclosures. (DJ Br. ¶ 166.)

SECTION REDACTED

its copyright infringement claim relating to Linux.  (IBM Ex. 175.)  Rather than limit

SECTION REDACTED

IBM filed a motion to confine SCO's claims to and strike allegations in excess of the

Final Disclosures in order to quash SCO's attempt to reinvent its case at the thirteenth hour

through the testimony of Dr. Cargill and its other experts.  (IBM Ex. 67.)  IBM's motion detailed

the                SECTION REDACTED

Magistrate Judge Wells granted IBM's motion in open court and

adopted IBM's reasoning as her own, holding that SCO may not challenge as misused (by expert

report or otherwise) any material not specifically identified by SCO as misused in the Final

Disclosures.  (See IBM Ex. 621.)

SCO's opposition papers depend entirely on allegations of misuse by IBM not

specifically identified in the Final Disclosures.  Not only does SCO's opposition rely on

SECTION REDACTED

Remarkably, SCO goes so far as to claim that IBM has

conceded that some of this new material was properly disclosed, and that IBM's motion should

be denied because it did not address this new material in its opening papers.  (See Opp'n at 57 n.6.)[8]

Based on the Court's numerous orders on this subject, SCO's invocation of undisclosed material is untenable.  The Court's December 12, 2003 order required SCO "[t]o respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories" (IBM Ex. 55 ¶ 2), which, in turn require SCO to "identify, with specificity (by file and line of code), (a) all source code and other material in Linux . . . to which plaintiff has rights; and . . . how the code or other material derives from UNIX" and describe in detail how IBM is alleged to have infringed plaintiff's rights".  (IBM Ex. 12 at Interrog. Nos. 12, 13.)  The Court's March 3, 2004 order required SCO "to provide and identify with specificity all lines of code in Linux that it claims rights to."  (IBM Ex. 56 ¶ 4.)  The Court's July 7, 2005 order established December 22, 2005 as the "Final Deadline for Parties to Identify with Specificity all Allegedly Misused Material."  (IBM Ex. 58 at 4.)  Finally, on November 30, 2006, Magistrate Judge Wells held that SCO may not challenge as misused (by expert report or otherwise) any material not specifically identified as misused by IBM in the Final Disclosures.  (IBM Ex. 621.)  Thus, under the law of the case, SCO's opposition is no impediment to the entry of summary judgment.[9]

---

[8] Throughout its opposition brief, SCO asserts that IBM has conceded various aspects of SCO's case, such as that the new material identified by SCO in its opposition papers is infringing.  (E.g., Opp'n at 57 n.6.)  We do not dwell on these assertions here except to note that they are pure fiction.

[9] Law of the case aside, the rules and case law are clear that a party cannot survive summary judgment if it fails to produce, during discovery, evidence supporting a necessary element of its opposition.  See, e.g., Lawrence v. IBP, Inc., No. 94-2027, 1995 WL 261144, at *7 (D. Kan. Apr. 21, 1995) (DJ Br. Ex. D); Stone v. CGS Distrib. Inc., No. 93-1288, 1994 WL 832021, at *6 (D. Colo. Aug. 18, 1994) (DJ Br. Ex. E); see also Lauth v. McCollum, No. 03-8529, 2004 WL 2211620, at *4 (N.D. Ill. Sept. 30, 2004) (DJ Br. Ex. F); Cambridge Elec. Corp. v. MGA Elec., Inc., 227 F.R.D. 313, 325 (C.D. Cal. 2004).

12

Even if SCO could properly rely on the          **SECTION REDACTED**

Nowhere in its

opposition papers does SCO offer admissible evidence of infringement by IBM. That is

dispositive. Accordingly, summary judgment should be entered in favor of IBM for this reason

alone.

B.      SCO Cannot Prove Ownership of the Copyrights in the System V Code.

Even if SCO could show unauthorized copying by IBM, IBM is also entitled to summary

judgment because SCO cannot prove ownership of the four allegedly infringed copyrights (the

"System V Works"). As stated in IBM's opening brief: (1) SCO could not have acquired the

copyrights from Santa Cruz because Santa Cruz never acquired them from Novell; and (2) even

if Santa Cruz had acquired the copyrights from Novell,

SCO's arguments in opposition lack merit.[10]          **SECTION REDACTED**

1.      SCO Is Not Entitled to a Presumption of Ownership.

In an effort to avoid summary

judgment, SCO argues first that it is entitled to a presumption of ownership because "SCO holds

_____

[10] SCO argues that it owns the UNIX copyrights because it acquired the copyrights from
Santa Cruz after it acquired them from Novell. (Opp'n at 49-50; Opp'n ¶ 68.) For the sake of
efficiency, we deal with those arguments in IBM's reply memorandum in further support of its
motion for summary judgment on SCO's copyright claim, which is incorporated herein by
reference. Suffice it to say here that SCO cannot show that Novell transferred the copyrights to
Santa Cruz.

registration certificates in certain versions of UNIX, including SVr4" (Opp'n at 49).[11] SCO is

wrong.

A purported copyright holder is entitled to a presumption of validity and ownership only

when it registered its copyrights within five years of the work's first publication. See, e.g., Sem-

Torq, Inc. v. K Mart Corp., 936 F.2d 851, 854 (6th Cir. 1991); Brown v. Latin American Music

Co., Inc., No. 05-1242, 2006 WL 2059606, at *1 (D.P.R. July 21, 2006) (Addendum G hereto);

Shea v. Fantasy Inc., No. 02-02644, 2003 WL 881006, at *4 (N.D. Cal. Feb. 27, 2003)

(Addendum H hereto); Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc., No. 95-0246, 1997

WL 158364, at *2 (S.D.N.Y. Apr. 2, 1997) (Addendum I hereto).[12]  Here, SCO failed to produce

a registration statement for one of the four purported copyrighted works (            ), and

thus cannot prove its timely registration or bring claims thereunder.[13]

SECTION REDACTED

The remaining three copyrights clearly were not registered within five years of first

publication.[14]  Accordingly, SCO is not entitled to a presumption of validity or ownership under

---

[11] SCO also argues that "IBM has not challenged the validity of SCO's registrations". (Opp'n at 49.)  That is incorrect.  In its opening papers, IBM argued that "SCO has failed to adduce adequate evidence of ownership".  (DJ Br. at 76-77.)

[12] SCO argues that "federal courts regularly afford a presumption of validity to copyrighted works that have been registered more than five years after publication".  (Opp'n at 50 (incorporating by reference SCO's Response to IBM's Motion for Summary Judgment on Copyright Infringement at 58).)  SCO is wrong.  The two cases cited by SCO, Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc. and Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc., both stand for the unremarkable proposition that a court may entitle weight to untimely registrations; they do not stand for the proposition that a court can presume their validity; nor do they hold that untimely registrations can shift the burden to the defendant to disprove ownership. Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc., 63 F. Supp. 2d 329, 340 (S.D.N.Y.1999); Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc., 923 F. Supp. 1231, 1242 (N.D. Cal. 1995).

[13] See Jacobsen v. Deseret Book Co., 287 F.3d 936, 942 (10th Cir. 2002); Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 831 (10th Cir. 1993).

[14] As is apparent on the face of the registrations. .

SECTION REDACTED

14

17 U.S.C. § 410(c) and retains the burden of showing ownership.  See Sem-Torq, 936 F.2d at

854 (holding that plaintiff with invalid registration bore burden of proving ownership); Brown,

2006 WL 2059606, at *1 (same); Shea, 2003 WL 881006, at *4 (same); Tuff 'N' Rumble, 1997

WL 158364, at *2 (same).

> ### 2.   IBM Can Challenge SCO's Ownership.

SCO next argues that "IBM is not entitled to challenge the chain of title at all, as this is

the subject of a pending case between Novell and SCO that will resolve the matter, and IBM has

no standing to challenge it." (Opp'n at 50).  However, an accused infringer may challenge the

alleged copyright holder's ownership of copyrights, even where (as here) the copyright holder is

claiming ownership through assignment from a third party.[15]  See, e.g., Schiller & Schmidt, Inc.

v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir. 1992); Pannonia Farms, Inc. v. USA Cable, No.

03-7841, 2004 WL 1276842, at *5 (S.D.N.Y. June 8, 2004) (Addendum J hereto); Positive Black

---

SECTION REDACTED

---

[15] The cases on which SCO relies do not support the contention that IBM lacks standing to challenge SCO's purported ownership. Lyrick Studios, Inc. v. Big Idea Productions, Inc., 420 F.3d 388, 394 (5th Cir. 2005), is inapposite because there the party challenging the transfer was the party who entered into the agreement—not a third party. Moreover, not only did the defendant there have standing to challenge ownership, it defeated the plaintiff's claim based on it. 420 F.3d at 395-96. Both Sunham Home Fashions, LLC v. Pem-American, Inc., No. 02-6284, 2002 WL 31834477 at * 7 (S.D.N.Y. Dec. 17, 2002) (Addendum L hereto), and Hart v. Sampley, No. 91-3068, 1992 WL 336496, at * 1 (D.D.C. June 24, 1991) (Addendum M hereto), merely held that a third party cannot challenge a transfer where the plaintiff has provided a valid registration, the defendant's challenge is based on the particularity requirements of the Copyright Act and there are no "disputes between copyright owners and transferees about the status of the copyright." Sunham. at *7; Hart, at *1. Here, not only does SCO not have timely registrations (and in the case of _____ ?, no registration at all), but there is a pending litigation between Novell and SCO over the status of the copyrights in this case, and IBM challenges SCO's failure to show any proof of ownership.

15

Talk, Inc. v. Cash Money Records, Inc., No. 02-0425, 2003 WL 1522941, at *2-3 (E.D. La. Mar. 20, 2003) (Addendum K hereto); Bieg v. Hovnanian Enter., Inc., 157 F. Supp. 2d 475, 479-80 (E.D. Pa. 2001).

       In any case, IBM is entitled to point out SCO's lack of proof of ownership.  As stated, SCO (not IBM) bears the burden to establish its claim of copyright infringement, including ownership of a valid copyright.  See Sem-Torq, 936 F.2d at 854 (holding that plaintiff with invalid registration bore burden of proving ownership); Brown, 2006 WL 2059606, at *1 (same); Shea, 2003 WL 881006, at *4 (same); Tuff 'N' Rumble, 1997 WL 158364, at *2 (same).  Thus, to avoid summary judgment, SCO must adduce admissible evidence of ownership.  SCO cannot hide behind an alleged lack of standing to avoid summary judgment.

       3.     SCO Transferred Any Rights It Had to UnitedLinux.

       Finally, SCO contends that it did not transfer its intellectual property rights in the

**SECTION REDACTED**

       (Opp'n at 51.)  According to SCO, "the UNIX technology at issue falls into neither of these categories".  (Id.)  Moreover, SCO argues that, even if the

**SECTION REDACTED**       (Id. at 52.)  None of these arguments bears scrutiny.

---

[16] As explained in IBM's opening brief, in May 2002, SCO joined with other Linux vendors, including Conectiva, Inc., SuSE Linux AG and Turbolinux, to form a company called UnitedLinux, LLC ("UnitedLinux"), to develop a single uniform distribution of Linux appropriate for business use.  The agreements defining the respective rights and liabilities of each of the UnitedLinux members in relation to this development project were entitled the Joint

First, contrary to SCO's contention, the JDC does not assign to UnitedLinux the

SECTION REDACTED

Furthermore, by specifically defining the term

Thus, as stated in IBM's opening brief, the

SECTION REDACTED

Second, SCO argues that "the JDC only required the parties to assign to the LLC

intellectual property rights in the Software . . . developed pursuant to the JDC'", and that the

_____

Development Contract (the "JDC") and the Master Transaction Agreement ("MTA").  (DJ Br. ¶¶ 111-14.)

SECTION REDACTED

[18] SCO looks for support in certain parol evidence (Opp'n at 51; Opp'n ¶ 77), but it is no impediment to summary judgment because where, as here, the plain language of an agreement is unambiguous, resort to parol evidence is inappropriate.  See Bakowski v. Mountain States Steel, Inc., 52 P.3d 1179, 1184 (Utah 2002); Utah Transit Auth. v. Salt Lake City Southern R.R. Co., Inc., 131 P.3d 288, 291 (Utah App. 2006).  Moreover, even if such evidence were appropriate, the parol evidence submitted by SCO (SCO Ex. 233 ¶ 14) is classic hearsay and/or without foundation and thus could not defeat summary judgment.  SCO relies on a SCO employee purportedly testifying as to what the UnitedLinux "Members understood" and what a SuSE employee said to him.  See Wells v. Boston Ave. Realty, 125 F.3d 1335, 1340 (10th Cir. 1997); Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., No. 04-541, 2006 WL 641524, at *11 (D. Utah Mar. 10, 2006) (Kimball, D.J.) (Addendum N hereto).

SECTION REDACTED

'.  (Opp'n at

52.)  However, the above-quoted text of the JDC makes clear that

There is no question SCO Linux 4.0 is

SECTION REDACTED

For example, in a November 19, 2002 press release, SCO announced

that "SCO Linux 4.0 is based on UnitedLinux 1.0, the core standards-based Linux operating

system co-developed in an industry initiative to streamline Linux development and certification

around a global, uniform distribution of Linux".  (IBM Ex. 622.)  In internal documents, SCO

developers acknowledged that "'

SECTION REDACTED

The mere fact that some or all of the 2.4 kernel may have predated SCO Linux 4.0 does not mean

that

If the term          SECTION REDACTED

then sections of the JDC assignment

provisions would be rendered superfluous.  As stated, the JDC

SECTION REDACTED

)  If SCO were correct that

in

would be rendered superfluous because SCO's reading of the

18

SECTION REDACTED

would necessarily exclude such materials from

assignment. Because it is black-letter law that one provision of a contract cannot be read so as to

render another provision superfluous, SCO's reading of the phrase "developed pursuant to the

JDC" must be rejected. See Kraatz v. Heritage Imports, 71 P.3d 188, 196 (Utah App. 2003);

Chase v. Scott, 38 P.3d 1001, 1006 (Utah App. 2001).

Third, SCO argues that the                                    because the assignment

provisions of the JDC provide that

SECTION REDACTED

(Opp'n at 52.) But SCO took the opposite position with respect to language that is much less

clear. In its opposition to a motion to dismiss filed in the case of The SCO Group, Inc. v. Novell,

Inc., No. 04-00139, 2004 WL 4737297 (D. Utah June 9, 2004) (Addendum O hereto), SCO took

the position that language in t

SECTION REDACTED

Accordingly, even if Novell transferred the UNIX copyrights to Santa Cruz (such that Santa

Cruz could sell them to SCO), SCO cannot prove ownership of the copyrights as to the

at issue because it

Moreover, SCO's argument fails because it is inconsistent with the

In addition to


SECTION REDACTED

19

SECTION REDACTED

SCO received a license to the "Software" developed by UnitedLinux under this license provision.

SECTION REDACTED          Thus, the plain language of the JDC and SCO's conduct itself clearly demonstrate that the JDC effected a transfer of any rights SCO had to the Disputed Code.[20]  Accordingly, there is no genuine issue that SCO transferred all of its rights to the Disputed Code as part of the JDC.

## III.   IBM HAS ONE OR MORE LICENSES TO THE DISPUTED CODE.

SCO does not dispute that the existence of a license to use an allegedly infringed work is a defense to a claim of copyright infringement.  Nor, by and large, does it dispute that the plain language of the agreements and licenses at issue (including (A) the SCO/IBM Strategic Business Agreement, (B) the General Public License, (C) the X/Open "Spec 1170" license, and (D) the TIS Committee ELF material license), confers broad licenses on IBM.  Rather, SCO asserts a hodgepodge of arguments as to why there is a fact question as to the applicability of the licenses to IBM's alleged conduct.  None of the arguments is supported by the evidence of record.  In fact, some of them are contradicted by SCO's own prior arguments.  Thus, SCO's opposition papers are no impediment to the entry of summary judgment.

---

[19] For example, as stated, on November 19, 2002, SCO announced its release of SCO Linux 4.0, "based on UnitedLinux 1.0, the core standards-based Linux operating system co-developed in an industry initiative to streamline Linux development and certification around a global, uniform distribution of Linux."  (IBM Ex. 622 at SCO1242623.)

1\

SECTION REDACTED

A.    Underline IBM Has a License Under the Strategic Business Agreement.

As set out in IBM's opening brief, in 1999, SCO granted IBM a license under the parties'

materials included in SCO's Linux products.  (DJ Br. at 79.)  Specifically, S

SECTION REDACTED

SCO does

not dispute IBM's interpretation of the plain language of the agreements, but asserts four

arguments to avoid it—all without merit.

First, SCO argues that, "even if the

SECTION REDACTED

' because Caldera Systems, in 1999, "was

not in the chain of title that granted copyrights from Bell Labs to SCO", and therefore did not

have the right to license UNIX.[22]  (Opp'n at 67.)  That is wrong.  Whether Caldera owned UNIX

copyrights in 1999 is immaterial.  Caldera had rights to its Linux products and granted IBM a

license to those products, including the                          , specifically warranting that

at

SECTION REDACTED

_____

[21] In its counterstatement of facts, SCO makes much of two lines of Linux code from the file

Thus, the Mazieres declaration states that
(IBM Ex. 226 ¶ 10.)  In any event, SCO does not dispute

SECTION REDACTED

[22]

SECTION REDACTED

21

SECTION REDACTED        "[L]icenses are considered as nothing more than a promise by the licensor not

to sue the licensee", Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1345 (Fed. Cir. 2001),

which may bar the licensor from bringing suit against the licensee even if the subject matter of

the license was acquired after the license was entered into, see 3M Innovative Prop. Co. v.

Barton Nelson, Inc., No. 02-3591, 2003 WL 22989077, at *2-4 (D. Minn. Dec. 12, 2003)

(holding that defendant's license included rights to plaintiff's patents that were applied for, and

issued, after the license was executed) (Addendum P hereto).[23]  Moreover, SCO itself


SECTION REDACTED                             Equity has long held that when a party claims to have

granted rights to material without the actual right to do so, but then later comes to acquire the

predicate rights to have performed the earlier transaction, equity will construe the earlier

transaction as having been successfully made.[25]

---

[23] See also Medtronic, Inc. v. Guidant Corp., No. 00-1473, 2003 WL 21181103, at *5 (D.
Minn. May 16, 2003) (same) (Addendum Q hereto); I.A.E., Inc. v. Shaver, 74 F.3d 768, 778 (7th
Cir. 1996) (holding that the existence of a license to use an allegedly infringed work is a defense
to a claim of copyright infringement); RT Computer Graphics, Inc. v. United States, 44 Fed. Cl.
747, 754-55, 760 (Fed. Cl. 1999) (same).
[24]

## SECTION REDACTED

[25] See Taylor Engines v. All Steel Engines, 192 F.2d 171, 174 (9th Cir. 1951) (applying to
patent law "the broad equitable principle that where one purports, for value, to convey title to
personal property which he does not own, as between the grantor subsequently acquiring title
and the grantee, the latter should have the property."); Respect, Inc. v. Comm. on the Status of
Women, 815 F. Supp. 1112, 1116 n.5 (N.D. Ill. 1993) (noting that "a defense based on the
application against [the plaintiff] of a doctrine similar to the property concept of estoppel by
deed" might have been argued for against a claim for copyright infringement); see also Arnold
Indus. v. Love, 63 P.3d 721, 726 (Utah 2002) (holding that the common law rule of after-
acquired title survives and is broader than the real property statute enshrining this principle,
U.C.A. 1953 § 57-1-10).

Second, SCO argues that the ":

<div style="text-align: center;">SECTION REDACTED</div>

) SCO points to

language in the

(Id.) It may be true that IBM served as a conduit through which SCO sold its

OpenLinux software to end users and that the

But neither of these propositions means that IBM did not acquire a license to SCO's Linux

products, including the Linux Code.[27]  Under the plain language of          IBM received a

broad license to the                        Because the plain language of the         is

unambiguous, the Court need look no further.

Third, SCO argues that the (

According to SCO, "

<div style="text-align: center;">SECTION REDACTED</div>

) SCO offers no

evidence to support its assertion that

<div style="text-align: center;">SECTION REDACTED</div>

SCO has also not adduced any admissible

---

[26]  In a footnote, SCO suggests that the SOW somehow takes away the license otherwise granted by the SBA.  (Opp'n at 67-68 n.10.)  SCO offers no explanation or support for its view, and there is none.

[27] Moreover, the "conduit" language cited by SCO relates only to the "licenses under which the Licensed Works are distributed", i.e., the GPL.  (See Opp'n at 33, 67; IBM Ex. 467 at 1710023510.)  SCO's citation to the terms under which Caldera distributed its Linux products to end-users has no bearing on the broad terms under which Caldera licensed its Linux products to IBM.

evidence that i          SECTION REDACTED                    Any time a

party promotes a product, it is in that party's interest to have broad rights to it.  That is especially

so with respect to open-source software.  Moreover,

                                        SECTION REDACTED

                Here again, the plain language of the

controls.

          Fourth, SCO contends '

                              (Opp'n at 68.)  Thus, says SCO, "[t]he SBA is,

SECTION REDACTED                    While the

                              SCO offers no support for its attempted narrowing

of IBM's license.  The law is clear that a court cannot read limitations into a contract.  See

Phillips Petroleum Co. v. Lujan, 951 F.2d 257, 260 (10th Cir. 1991) ("We will not read a

limitation into a lease provision which was not part of the agreement between the parties.")

(citations omitted).  Moreover, the ʎ

SECTION REDACTED                    Thus it is clear that the

---

[28] SCO claims that IBM was reluctant to take responsibility for the Linux Code and suggests that this was the case because IBM knew the Linux Code was encumbered.  (Opp'n at 68.)  SCO offers no evidentiary support for this assertion, and there is none.

### B.   IBM Has a License Under the GPL.

IBM also demonstrated in its opening brief that SCO granted IBM a license to the Linux

Code pursuant to the GPL. (DJ Br. at 80.) SCO distributed its Linux products, which include

the Linux Code, under the GPL. The GPL provides that a person receiving code under the GPL

"may copy and distribute verbatim copies of the Program's source code" and "modify [its] copy

or copies of the Program or any portion of it". (IBM Ex. 128 §§ 1, 2.) Thus, independent of the

license SCO granted IBM under the SBA, IBM received a license from SCO under the GPL that

precludes SCO's claims of infringement.

SCO does not contest that it distributed the Linux Code pursuant to the GPL. But it

nevertheless offers three reasons, each without merit, why SCO's distribution of the code under

the GPL did not grant IBM a license.

First, SCO argues that its "distribution of OpenLinux did not grant IBM a license to the

disputed code" because "in order to license code under the GPL, the copyright holder must place

a notice on the code saying it may be distributed under the terms of the GPL", and "[t]he true

copyright holder, SCO, never contributed any of the System V code at issue under the GPL".

(Opp'n at 68 (emphasis added).) SCO misses the point. Whether SCO "contributed" System V

code to Linux is irrelevant. The GPL expressly applies to "any program or other work which

contains a notice placed by the copyright holder saying it may be distributed under the terms of

this General Public License". (IBM Ex. 128 § 0.) Even if it were true that SCO "contributed" to

Linux none of its purportedly proprietary System V code (which SCO has not established), SCO

indisputably distributed its own program, SCO Linux Server 4.0, under the GPL by placing GPL

notices on that program. (IBM Ex. 176 ¶ 13; IBM Ex. 226 ¶ 10; IBM Ex. 617 at SCO1186816

(CD filename: "COPYING"); IBM Ex. 221 ¶¶ 22-26, 77-78.) As a result, IBM and all other

SCO Linux users have a license to that SCO program, including its source code, which IBM and

25

all other Linux users may copy, modify and distribute under the GPL.  (<u>See</u> IBM Ex. 128 §§ 0-2.)

     <u>Second</u>, SCO argues that "the GPL is clear that distributing one program under the GPL does not bring other programs under the GPL" and that "SCO's distribution of some code under the OpenLinux brand, even if it was distributed under the GPL, cannot mean that IBM obtains a license to all the code distributed as OpenLinux".  (Opp'n at 69, ¶ 98.)  Once again, SCO ignores the fact that it distributed SCO Linux, and the            under the GPL.  *SECTION REDACTE.* Moreover, by selectively quoting GPL Section 2 in paragraph 98 of its memorandum, SCO again confuses the issue.  Section 2 of the GPL provides, in relevant part not quoted by SCO:  "These requirements apply to the modified work as a whole.  If identifiable sections of that work are not derived from the Program, <u>and can be reasonably considered independent and separate works in themselves</u>, then this License, and its terms, do not apply to those sections".  (IBM Ex. 128 § 2 (emphasis added).)  SCO, however, offers nothing other than the <u>ipse dixit</u> of its lawyers—not one shred of evidence—in support of the proposition it asks the Court to accept: namely, that the *SECTION REDACTED*     in SCO's OpenLinux program "can be reasonably considered independent and separate works in themselves" and thus have not been distributed under the GPL.  Indeed, SCO cannot support its claim because, as IBM explained in its opening brief and elsewhere, SCO indisputably distributed its SCO Linux 4.0 powered by UnitedLinux and OpenLinux Asia 3.1.1 under the GPL.  (<u>See</u> DJ Br. at 79-80; DJ Br. ¶¶ 207-210; IBM Brief in Support of Opp'n to SCO's Motion for Summary Judgment on Sixth, Seventh & Eighth Counterclaims at ¶¶ 12-17; IBM Ex. 221 ¶¶ 25-26, 77, 113-115; IBM Ex. 176 ¶ 13.)

     <u>Third</u>, SCO argues that any license granted under the GPL "is void for failure to properly mark SCO's proprietary material", specifically because "[t]he disputed code contained in Linux

does not have the appropriate notices" and "[n]o code contained in Linux 2.4 and 2.6 kernels attributes any code in Linux to SCO or Santa Cruz". (Opp'n at 69.) Once again, SCO's attempt to distract the Court fails. GPL notices on "code contained in Linux 2.4 and 2.6 kernels" or in Linux generally are irrelevant. SCO clearly marked its own OpenLinux and SCO Linux 4.0 powered by UnitedLinux distributions with GPL notices. (IBM Ex. 221 ¶ 26; IBM Ex. 226 ¶ 10; IBM Ex. 617 at SCO1186816 (CD filename: "COPYING").) Thus, by operation of Section 6 of the GPL, when SCO distributed its OpenLinux and SCO Linux 4.0—which programs included the disputed Linux code—"the recipient automatically receive[d] a license from the original licensor [SCO] to copy, distribute or modify the Program subject to these terms and conditions". (IBM Ex. 128 § 6.) IBM was one such recipient (IBM Ex. 221 ¶ 77), and so IBM has a license to SCO's purportedly proprietary code distributed under the GPL in SCO Linux distributions.

C.      Novell and USL Granted IBM a License.

In its opening papers, IBM explained that in the early 1990s, when Novell owned the UNIX assets, Novell "grant[ed] to X/Open a non-exclusive, perpetual, world-wide, royalty-free, paid-up, irrevocable license [sic] to prepare derivative works and to use, execute, reproduce, display and perform" Spec 1170. (IBM Ex. 437 ¶ 1.) X/Open, in turn, granted IBM, "a non-exclusive, perpetual, world-wide, royalty-free, paid-up, irrevocable license to prepare derivative works and to use, execute, reproduce, display and perform [Spec 1170] and such derivative works". (IBM Ex. 437 ¶ 4.) Moreover, USL granted IBM a separate license to the material in Spec 1170 pursuant to the Common API Materials Cross-License Agreement.

SECTION REDACTED

SCO's arguments against these two licenses lack merit.

27

First, as to Spec 1170, SCO first argues that it "only governs the use, copying, and creation of derivative works related to the Specification itself . . . Nothing in this agreement authorizes Linux, as a non-licensee operating system, to copy the information from the Specification". (Opp'n at 70.) Thus, the argument seems to go, the license Novell granted to the specification allowed the exercise of some rights but did not allow licensees to comply with the specification. Putting aside the fact that this argument is at odds with the purpose of creating a specification (i.e., to promote compliance with it), it runs counter to the plain language of the agreement, under which IBM received "a non-exclusive, perpetual, world-wide, royalty-free, paid-up, irrevocable license to prepare derivative works and to use, execute, reproduce, display, and perform [Spec 1170] and such derivative works". (IBM Ex. 437 ¶ 4.)

SCO also argues that IBM does not have a license to the code in Spec 1170 because the Spec 1170 license "did not grant, and in fact explicitly excluded, any grant of copyright in the intellectual property contained in the specification". (Opp'n at 70.) Here again, SCO confuses the difference between a grant of copyright and a license. IBM does not contend that Novell granted it the copyrights in Spec 1170; rather, IBM contends, and showed in its opening brief, that Novell granted it a broad license to Spec 1170 and derivative works.[29] (IBM Ex. 437 ¶ 4.) Notably, Novell, which granted IBM the license in question, has offered unrebutted testimony that "Novell granted IBM and others a right to use the files specified in SPEC 1170, including the Single Unix Specification (SUS)". (IBM Ex. 238 ¶ 9.)

Second, with regard to the API Cross-license Agreement, SCO argues that IBM's license is limited to "licensed UNIX variants of HP, IBM, and Sun" and does not apply to a non-licensed

---

[29] SCO's argument regarding the language of the "remainder of Spec 1170" does not in fact refer to Spec 1170. (Opp'n at 70.)

UNIX-based operating system. (Opp'n at 71.) In fact, however, the Common API Materials

Cross-License Agreement grants a license for any "release of a UNIX-based operating system"

to use the material required by the specification.[30] (IBM Ex. 482 at § 3.10(a)(i).) SCO cites no

language to support its claim that the scope of the license was limited to AT&T-licensed

operating systems because no such language exists. (See Opp'n at 71.) Even if, as SCO

contends, the license were limited to a "UNIX-based operating system", SCO itself argues that

Linux is a UNIX-based operating system. SCO claims that the Novell-TIS license (discussed

below) does not confer rights to Linux because it "explicitly limited its scope to non-UNIX

systems", and Linux is a UNIX-based system. (Opp'n at 73.) Taking SCO at its word, Linux is

within the scope of the API Cross-License, giving IBM a license to use in Linux the X/Open

specification material from Spec 1170 and derivative specifications such as the SUS.

SCO also argues that "IBM's motion for summary judgment on the API Agreement must

be denied because there are fact issues regarding whether the agreement remains in effect".

(Opp'n at 71.) SCO acknowledges that IBM's license survives termination of the Agreement

pursuant to § 7.4, but says "there is language in this copy of the agreement that suggests it is not

the final draft", as it is "unsigned and the signature page may relate to a different version of the

agreement". (Opp'n 71-72.) Despite SCO's efforts to raise the specter of a fact question, there

is no question that the agreement was signed and that IBM's license survived termination, as

illustrated by a signed 1994 amendment to this agreement adding the Open Software Foundation

---

[30] The unrebutted testimony of Novell confirms the existence and scope of this license.
"[I]n 1994, USL/Novell and others entered into a Cross-License Agreement concerning common
API specifications with respect to SPEC 1170, wherein USL/Novell granted IBM (among others)
a license to the API specification" (IBM Ex. 238 ¶ 12), further explaining, "Novell believed . . .
that efforts to standardize Unix across platforms — whether derived from AT&T UNIX code or
not — would ultimately be in Novell's best interests". (IBM Ex. 238 ¶ 13.)

(OSF) as an additional party to the agreement and reciting the same license language relied upon by IBM in its opening brief. (IBM Ex. 626 at SCO1289792-95.)

       D.    The TIS Committee Granted IBM a License.

SECTION REDACTED Finally, IBM received a license to the         l from the TIS Committee. The TIS Committee granted IBM and others a license to use the information in these standards or specifications, from which all of the      has been implemented. The first sentence following the cover page of these specifications states: "The TIS Committee grants you a non-exclusive, worldwide, royalty-free license to use the information disclosed in the Specifications to make your software TIS-compliant; no other license, express or implied, is granted or intended hereby". (IBM Ex. 438 at inside cover; IBM Ex. 439 at i.) SCO argues that IBM does not have a license to ELF under this TIS Specification for five reasons, but none has merit.

SECTION REDACTED First, SCO argues that "Novell never transferred a license to the TIS Committee to copy or create derivative works of the       , only portions of the TIS Specification as contained in the SVABI", and thus "[t]he Novell letter grants no rights to use or copy the disputed       contained in Linux". (Opp'n at 72.) As with respect to Spec 1170, SCO's opposition depends on the proposition that the TIS specification was intended to exist in a vacuum. (Opp'n at 72.) SCO argues that although licensees were permitted under the plain language of the Novell-TIS license to "use", "publish" and "sublicense" the specification, they were not permitted actually to comply with the specification. (Id.; IBM Ex. 569 at SCO1818388.) SCO's argument defies the plain language of the agreements and a common sense understanding of why specifications exist.[31] Nothing in SCO's opposition papers justifies

---

31

ignoring the plain language of the license. Moreover, Novell has stated that it "granted IBM and others a worldwide license to use the information disclosed in the TIS Specification to make its software TIS-compliant". (IBM Ex. 238 ¶ 7 (emphasis added).) SCO is in no position credibly to dispute this, just as it is in no position to dispute Novell's unrefuted testimony that it granted IBM a license pursuant to the Common API Materials Cross-License Agreement.

Second, SCO contends that the license is void for "exceeding the scope of the grant in the Novell letter" because the license to TIS "explicitly limited its scope to non-UNIX systems", which, says SCO, disqualifies Linux. (Opp'n at 72-73.) Since the Novell-TIS letter contains a restriction that the TIS Specification may not be used as a substitute for the USL ABI documents, such as the SVABI, SCO reasons that the Novell-TIS license only allowed the TIS Committee to license ELF to non-UNIX operating systems like Windows.[32] (Id.) However, nothing in the plain language of the letter license supports SCO's limitation. (See IBM Ex. 569.) The broad license contained in the Novell-TIS letter is more than enough to allow the TIS Committee, in the TIS Specifications, to grant IBM the right to use the disputed **SECTION REDACTED** which is "disclosed in the specifications." (IBM Ex. 438 at inside cover; IBM Ex. 439 at i; IBM Ex. 569.) Moreover, SCO contradicts itself by arguing both that: (1) Linux may not refer to the

---

**SECTION REDACTED**

[32] Incredibly, SCO argues that only non-UNIX systems, such as Windows, were allowed to use ___ despite that fact that the TIS Specifications do essentially the opposite—they establish ___ as the format for all operating systems except Windows. (Opp'n at 72-73; IBM Ex. 438 at i; IBM Ex. 439 at iii.)

SVABI; and (2) Linux may not use material from the TIS Specification because it should instead refer to the SVABI.[33]

Third, SCO argues that the TIS Specifications granted licenses only to make end-user software TIS-compliant and excluded competing operating systems from any license. (Opp'n at 73.) However, the argument is unsupported by any record evidence, seeks to rewrite the agreement and contradicts SCO's other arguments. The very portion of the TIS Specification cited by SCO provides a license "to make your software TIS-compliant". (IBM Ex. 438 at inside cover; IBM Ex. 439 at i.) Far from stating that the TIS Specification may not be used by a "competitive operating system", the license provides that "[i]t is USL's understanding that . . . extensions made to      will be worked through an open process not limited to or favoring any operating system environment". (IBM Ex. 569 at 1 (emphasis added).) This plain language is confirmed by Novell: "[i]t was Novell's understanding and intent at the time [the TIS Specification] license was granted that it would make the          : freely available to    SECTION REDACTED everyone, regardless of their possession of a UNIX license". (IBM Ex. 238 ¶ 7.) Moreover, SCO elsewhere argues that the TIS Specifications can only be used by competing non-UNIX operating systems such as Windows.[34] (Opp'n at 73.)

Fourth, SCO claims that the TIS Specifications required a copyright attribution to USL, and because there is no attribution in Linux, and only a "vague" attribution in the Specification, the use of          in Linux is void. (Opp'n at 73.) SCO misreads the Novell-TIS license

---

[33] Even if SCO were correct that the Novell-TIS letter limits each operating system to only one source of          . Linux would still have access to the disputed          ¹ from either the SVABI or the TIS Specification. Thus, SCO's argument is merely academic.

SECTION REDACTED

[34] SCO has repeatedly identified Windows as an operating system that competes with its UNIX-based products. (IBM Ex. 114 at 30; IBM Ex. 111 at 12; IBM Ex. 113 at 6.)

32

agreement's requirement that the TIS Specification <u>itself</u> include a copyright attribution to USL for use of the ELF standard.  (<u>Id.</u>)  The license reads, in relevant part, "[t]he information contained in the USL ABI documents may be used <u>by the TIS Committee</u> providing USL is given appropriate copyright recognition".  (IBM Ex. 569 at 1 (emphasis added).)  Accordingly, Linux is not required to provide an attribution to USL — only the TIS Committee is required to do so.  (<u>See id.</u>)  Furthermore, to the extent that SCO argues that the TIS Specifications are void because they contain only a "vague" attribution of copyright, the Specifications show otherwise:[35]  (1)

SECTION REDACTED

<u>Fifth</u>, SCO argues that even if IBM has a license to the material contained within the TIS Specification, Linux includes material not included in that specification, which SCO concludes

SECTION REDACTED                        This argument falls flat because

SCO cites no evidence to support its assertion tha

Moreover, the TIS-Novell license grants the TIS Committee a license to all

IBM Ex. 569 at 1.)

SECTION REDACTED

---

[35] Novell has acknowledged as much;

[36] SCO also argues that the copyright notice requirement "suggests that AT&T did not release its copyright in the code contained in the TIS Specifications to the committee".  (Opp'n at 73.)  Whether AT&T <u>released</u> its copyrights to the TIS committee is irrelevant to whether Novell later granted the TIS Committee a <u>license</u> to this code.

[37]

SECTION REDACTED

33

Since the TIS-Novell license grants the TIS Committee a license to all    SECTION REDACTED

.,  and the TIS Specification refers to the SVABI where it does not copy directly from

the SVABI's text, IBM has a license to the ELF material, even if it is not literally contained in

the TIS Specifications.  (See IBM Ex. 569; IBM Ex. 438; IBM Ex. 439.)

## IV.    SCO'S CLAIMS ARE FORECLOSED UNDER THE DOCTRINES OF ESTOPPEL, WAIVER AND ABANDONMENT.

SCO does not dispute that a copyright holder can be estopped from asserting (or be found

to have waived or abandoned) a claim of infringement.  Nor does SCO dispute the essential facts

on which IBM relies in support of this portion of its motion.  It is undisputed that SCO promoted

Linux for nearly a decade before suing IBM.  (DJ Br. ¶¶ 88-102, 111-23.)  SCO repeatedly urged

IBM and others, in its marketing materials and SEC filings, to use and rely on Linux, including

the very materials SCO now claims infringe its alleged copyrights.  (DJ Br. ¶ 97.)  Some of the

Linux Code is in Linux as a result (in part) of SCO's efforts to bring Linux into compliance with

the Linux Standard Base ("LSB").  (DJ Br. ¶ 61.)  Moreover, as part of its


SECTION REDACTED

,  Like most of its opposition brief, SCO's response is merely an exercise in diversion; none

of its arguments bear scrutiny.[38]

---

SECTION REDACTED

[38] The same undisputed facts supporting a finding of estoppel support a finding that SCO abandoned and waived the right to pursue its allegations of infringement.  With respect to these issues, SCO's opposition merely falls back on its response to IBM's estoppel arguments and is unavailing for the same reasons its response to IBM's estoppel arguments are unavailing. (Opp'n at 86.)  With respect to abandonment, SCO adds that "an overt act" is required to support

34

A.    SCO's Misconduct Is Not Beyond the Equitable Power of the Court.

As an initial matter, SCO seeks to avoid summary judgment by arguing that estoppel is

not susceptible to summary adjudication because: (1) the defense of equitable estoppel requires

a fact-intensive inquiry; and (2) equitable estoppel is "not a legal basis upon which summary

judgment of non-infringement may be awarded". (Opp'n at 74-75.) SCO is wrong.

First, while equitable estoppel can be fact-intensive and is not appropriate for summary

judgment in all cases, it is appropriate for summary judgment where, as here, the only material

facts are not in dispute. Numerous courts have found estoppel at summary judgment on no more

compelling facts. See, e.g., Buckward Digital Servs., Inc v. Millar Instruments, No. 05-1728,

2006 WL 1118003, at *4 (S.D. Tex. Apr. 26, 2006) (DJ Br. Ex. I); Field v. Google Inc., 412 F.

Supp. 2d 1106, 1117 (D. Nev. 2006); DeCarlo v. Archie Comic Pub., Inc., 127 F. Supp. 2d 497,

511 (S.D.N.Y. 2001); Keane Dealer Services, Inc. v. Harts, 968 F. Supp. 944, 948 (S.D.N.Y.

1997); Armento v. City of Ashville Downtown Dev. Office, No. 94-57, 1996 WL 677119, at *8

(W.D.N.C. Mar. 26, 1996) (Addendum R hereto); Wafer Shave, Inc. v. Gillette Co., 857 F. Supp.

112, 127 (D. Mass. 1993); Hadady Corp. v. Dean Witter Reynolds, Inc., 739 F. Supp. 1392, 1400

(C.D. Cal. 1990); Jamesbury Corp. v. Litton Indus. Products, Inc., 646 F. Supp. 1495, 1501-02

(D. Conn. 1986).[39]

Second, the Court may, contrary to SCO's contention, enter a declaration of non-

infringement based on estoppel. (Opp'n at 75-76.) A plaintiff threatened with an infringement

---

a finding of abandonment. (Id.) But even if that is true, SCO engaged in numerous overt acts of
abandonment, as set forth in IBM's opening brief. (DJ Br. at 87.)

[39] SCO cites several cases for the proposition that estoppel is not appropriate for summary
judgment. (Opp'n at 74-75 & n.12.) However, those cases merely denied or reversed summary
judgment on the facts presented in those cases. None of them holds that estoppel can never be
entered on summary judgment.

action may assert a claim for a declaratory judgment of non-infringement based on equitable

estoppel. See, e.g., Minebea Co., Ltd. v. Papst, 444 F. Supp. 2d 68, 202 (D.D.C. 2002) (holding

that the "[c]ourt rejects Papst's argument that Minebea may not assert a claim for equitable

estoppel in a declaratory judgment action based on a reasonable apprehension of [a patent

infringement] suit by Papst against its customers"); In re Papst Licensing, GmbH Patent Litig.,

Nos. MDL 1298, 99-3118, 2000 WL 1859013, at *2 (E.D. La. Dec. 19, 2000) (denying

defendant Papst's motion to dismiss plaintiff Minebea's declaratory judgment claim that Pabst

"should be equitably estopped from asserting its patents against Minebea's customers because of

representations made by Papst to Minebea") (Addendum S hereto); Forest Labs., Inc. v. Abbott

Labs., No. 96-159, 1999 WL 33299123, at *25 (W.D.N.Y. June 23, 1999) (entering judgment on

plaintiff's claim for a declaration of equitable estoppel barring an infringement claim)

(Addendum T hereto).

      Rather than cite a case to the contrary, SCO simply asserts that "estoppel is a personal

defense, to be considered in the context of a particular defendant, that defendant's activities, and

the copyright holder's action with respect to that party".[40] (Opp'n at 75.) But IBM does not seek

a determination of SCO's rights as to "the rest of the world". (Opp'n at 76.) IBM seeks a

declaration that its activities relating to the Linux kernel do not infringe SCO's alleged

copyrights. (See IBM Ex. 3 (IBM's 03/29/2004 Sec. Am. Counterclaims, at 39-40, Tenth

Counterclaim).) In any event, the mere fact that a declaration of non-infringement (whether on

---

[40] The cases cited by SCO in this connection are inapposite. Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402 (9th Cir. 1988), addressed the question of whether equitable defenses are available as defenses to incontestable trademarks, not whether equitable defenses are limited to only the defendant in suit. Newman v. Checkrite California, Inc., 912 F. Supp. 1354, 1376 (E.D. Cal. 1995) and Eastman Kodak Co. v. Rakow, 739 F. Supp. 116, 120 n.2 (W.D.N.Y. 1989), merely stand for the general proposition that equitable defenses are personal; they do not stand for the proposition that such defenses can never be litigated on behalf of third parties. See In re Papst Licensing, 2000 WL 1859013, at *1.

estoppel or other grounds) might benefit a third party does not render it impermissible.[41]  SCO

cannot defeat summary judgment by imputing to IBM a position it has never taken, disputing

that position, and then arguing that there is a dispute that justifies denial of summary judgment.[42]

      B.    IBM Reasonably Relied on SCO's Conduct to Its Detriment.

The crux of SCO's opposition is that IBM did not reasonably rely on SCO's Linux

activities.  SCO offers a handful of scattered (and overlapping) arguments to support the point —

some relating to Caldera, some to SCO, some to Santa Cruz and some to IBM.  But most amount

to a game of "where's the ball", as SCO selectively endeavors to avoid association with its and

its predecessors' past, and all of SCO's arguments miss the mark.  Not only has IBM offered

unrebutted evidence of reliance (DJ Br. ¶¶ 88-102), but also no serious question can exist as to

IBM's reliance.

      1.    Caldera.

SCO argues that IBM could not rely on the Linux activities of Caldera Inc. and Caldera

Systems, Inc. because they were separate legal entities from SCO, and neither was "in the chain

of title that holds the UNIX copyrights".  (Opp'n at 76-77.)  By this simple expedient, SCO seeks

to render irrelevant nearly a decade of its predecessors' Linux activities, which, if considered,

---

[41] See, e.g., In re Papst Licensing, 2000 WL 1859013, at *2 (denying defendant Papst's motion to dismiss plaintiff Minebea's declaratory judgment claim that Pabst "should be equitably estopped from asserting its patents against Minebea's customers because of representations made by Papst to Minebea", and rejecting defendant's argument that "Minebea cannot sue on behalf of any customers whom it has not agreed to indemnify").

[42] SCO also complains that IBM failed to plead estoppel as a defense.  (Opp'n at 75.)  That is incorrect, as IBM's pleadings make clear.  See IBM's 03/26/2004 Ans. to SCO's Sec. Am. Compl. at 23, Seventh Aff. Def. (IBM Ex. 627); IBM's 03/29/2004 Sec. Am. Counterclaims, at 39-40, Tenth Counterclaim (IBM Ex. 3).

easily foreclose SCO's present assault on Linux. However, the law is clear that a party is bound by the conduct of its predecessors.[43]

No exception is made for avoiding the defense of estoppel. See Keane, 968 F. Supp. at 944, 947-48 (holding that purchaser of copyrighted program would be estopped from bringing infringement claim because of the conduct of plaintiff's predecessor toward the defendant); Hiland Potato Chip Co. v. Culbro Snack Foods, Inc., 585 F. Supp. 17, 22-23 (D. Iowa 1982) (holding that plaintiff was estopped from claiming trademark infringement where plaintiff's predecessor issued a "public declaration of discontinuance of a trademark"); Dymo Indus., Inc. v. Monarch Marking Sys., Inc., 474 F. Supp. 412, 418-19 (S.D. Tex. 1979) (finding estoppel barred patent infringement claim based on conduct of plaintiff's predecessor).[44]

Moreover, just as ·                                                   SECTION REDACTED

owning the UNIX copyrights (see Section III.A. above), it could engage in conduct giving rise to a basis for estoppel without owning the copyrights. Estoppel is a doctrine of equity which is

---

[43] See, e.g., Moore v. Pyrotech Corp., 13 F.3d 406, 1993 WL 513834, at *5-6 (10th Cir. 1993) (holding that a corporate successor was liable for the debts of its predecessor "where the purchasing corporation [wa]s merely a continuation of the selling corporation") (Addendum U hereto); Glass v. Pfeffer, 849 F.2d 1261, 1267 (10th Cir. 1988) (holding that district court properly awarded attorneys' fees against corporate successor for conduct of its predecessor); Remington Rand v. Acme Card Sys. Co., 29 F. Supp. 192, 195 (D. Ohio 1937) (holding that plaintiff was charged with the dilatory conduct of its corporate predecessor for applying laches); Macris & Assocs., Inc. v. Neways, Inc., 986 P.2d 748, 752 (Utah 1999) (stating that "where one company sells or otherwise transfers all its assets to another company the latter" may be liable "for the debts and liabilities of the transferor" where "the purchasing corporation is merely a continuation of the selling corporation").

[44] See also Ory v. McDonald, 68 U.S.P.Q. 2d 1812, 1817 (C.D. Cal. 2003) (stating that "a successor-in-interest is charged with the knowledge and dilatory conduct of its predecessors" (internal quotation omitted)); Konstant Prods. Inc. v. Frazier Indus. Co., Inc., No. 91-4491, 1993 U.S. Dist. LEXIS 7957, at *47 (N.D. Ill. June 7, 1993) (ruling that defendant was "charged with the knowledge of [its predecessor-in-interest] and the consequences of his dilatory conduct") (Addendum V hereto); MGA, Inc. v. Centri-Spray Corp., 639 F. Supp. 1238, 1242 (E.D. Mich. 1986) (finding that successor-in-interest is charged with "consequences of [predecessor-in-interest's] knowledge and dilatory conduct").

applicable to non-copyright owners.[45]  Notably, SCO does not cite a single case for the

proposition that SCO is not bound by Caldera's conduct because Caldera did not own the

copyrights.  (See Opp'n at 76-77.)  If SCO's theory were correct, then even today it could

transfer its alleged UNIX assets to another legal entity and avoid all of the consequences of its

prior conduct.  Estoppel is not a rigid defense easily frustrated by a legal shell game.

>            2.    SCO.

Despite the fact that it purports to have owned the UNIX copyrights as of 2001, SCO

contends that its Linux activities are irrelevant because "its initial decision to continue with a

Linux strategy was not unreasonable"; in late 2002 it proceeded to investigate whether Linux

infringed its alleged copyrights; and "upon discovering a legal basis", SCO commenced this

action.  (Opp'n at 79-80.)  SCO misses the point.

Whether or not it was reasonable for SCO to continue a Linux strategy, it was plainly

unreasonable for SCO to reverse course after nearly a decade of support for Linux and attack it.

Moreover, during the nearly four years that elapsed between the investigation that underlay the

Swartz memo[46] and the commencement of this case, SCO (and Santa Cruz before it) contributed

---

[45] See Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc., 103 F.3d 1571, 1575, 1581-82 (Fed. Cir. 1997) (affirming equitable estoppel barring infringement suit based on plaintiff's conduct "over a six-year period" that included a time when plaintiff did not hold the patent-in-suit); Rambus, Inc. v. Infineon Tech. AG., 326 F. Supp. 2d 721, 738 (E.D. Va. 2004) (holding that the "mere fact that, at the time of the misleading communication (whether by conduct or inaction), a patent has not been issued should not permit the actor, upon the defendant's proof of the other elements of equitable estoppel, to escape the consequences of its misleading communications after the patent has in fact been issued.").

[46]

SECTION REDACTED

to, supported, distributed, promoted and evangelized Linux, <u>knowing</u> that it contained the very code about which SCO now complains.  Specifically, SCO:

- invested heavily in Linux as a business solution (DJ Br. ¶ 24);

- designed its Linux products to be compliant with certain UNIX standards, including the X/Open brand for UNIX 95 and the POSIX.1 specification and delivered them to market (DJ Br. ¶¶ 25, 42-43);

- touted its Linux products and services in extensive advertising (DJ Br. ¶ 76);

- helped and encouraged independent software vendors and manufacturers to move their programs to Linux (DJ Br. ¶ 28);

- worked to achieve UNIX certification for Linux (DJ Br. ¶ 33);

- represented to the market that its Linux products were "an inexpensive alternative to UNIX-based systems", and "a complete networking solution" for "small- to medium-sized businesses and enterprises" (DJ Br. ¶ 48);

- persuaded the Linux community to include some of the allegedly infringing code in the Linux kernel (DJ Br. ¶ 50);

- championed the standardization of Linux, as the first corporate signer of the 1998 document proposing the Linux Standard Base (DJ Br. ¶¶ 53-56);

- contributed to the Linux and Open Source community by, among other things, being "among the very first Linux distributors to work with commercial developers, promoting the porting of many important software works to Linux"; and "continu[ing] to provide manpower and funding to vendor-neutral initiatives such as Linux Standard Base and the Linux Professional Institute" (DJ Br. ¶ 78);

- offered Linux technical training, certification and support throughout the world (DJ Br. ¶ 79).

Again, much of the allegedly infringing material is in Linux because of SCO.[47]  (DJ Br. ¶ 74.)

---

[47] Contrary to SCO's suggestion, the SCO conduct giving rise to a basis for estoppel did not end with the filing of the complaint. (Opp'n at 83-84.)  For years after the filing of this suit, SCO hid the ball about its specific allegations of infringement, while at the same time continuing to distribute Linux and otherwise make it available to its customers and others. (DJ Br. ¶¶ 140-45.)

### 3.   Santa Cruz.

SCO seeks to distance itself from Santa Cruz's Linux activities on the grounds that Santa

Cruz "was not involved in any Linux distribution or promotion" and did not assure IBM that

Linux was non-infringing.  Inaction, says SCO, does not constitute estoppel.  (Opp'n at 77.)

Whether or not Santa Cruz was "involved in any Linux distribution or promotion" or

gave IBM "assurance" that "Linux was non-infringing", it engaged in Linux activities that easily

create a basis for estoppel.  For example, it is undisputed that Santa Cruz:

- developed technologies to provide interoperability between Linux and its UnixWare and OpenServer operating systems (DJ Br. ¶ 41);

- publicly supported the Linux standardization movement and encouraged the adoption of the Linux Standard Base (DJ Br. ¶¶ 59-60);

- developed a program called lxrun, which permitted Linux ELF binaries to run on UNIX systems (DJ Br. ¶ 69);

- took part in a Linux development effort called 86Open in which it successfully advocated for the ELF implementation as the de facto standard for Linux (DJ Br. ¶ 70);

- announced to its OEMs and partners that it was developing a Linux distribution for servers (DJ Br. ¶ 87);

- took people who were experienced in writing UNIX code and put them to work writing code for Linux (id.);

- continued to make contributions to various open source projects, including to the GNU C compiler collection and other open source components found in Linux (id.);

- offered a free Open Source Software Supplement CD that included many Open Source technologies and a comprehensive set of Linux and Open Source-related professional services for use in its UNIX products (id.).

Thus, SCO's claim that inaction does not constitute estoppel is beside the point.

Even if (contrary to fact) Santa Cruz had been silent about Linux, silence or inaction

(such as a failure to sue) can give rise to a basis for estoppel where, as SCO acknowledges

(Opp'n at 77), the party to be estopped has a duty to speak. See DeCarlo, 127 F. Supp. 2d at 510 (holding that "[s]ilence or inaction in the face of an explicit contrary assumption by the opposing party may be sufficient to induce justifiable reliance by a defendant that a plaintiff will not later assert a claim"); Keane, 968 F. Supp. at 947 (holding that where plaintiff "knew of defendant's use of the [infringing] software", "Lehman's silence in the face of this knowledge . . . constitutes conduct on which Smith Barney was entitled to rely"). SCO cannot credibly contend that Santa Cruz did not have a duty to disclose the alleged infringement to IBM. SCO claims that Santa Cruz owned the UNIX copyrights. And Santa Cruz was IBM's partner in the development of "AIX 5L", which was a platform that was designed to have "Linux affinity . . . offer[ing] a flexible environment enabling Linux applications to run on AIX 5L". (IBM Ex. 628 (SCO Press Release, "SCO and Caldera Release Technology Preview of AIX 5L", April 23, 2001).) Indeed, the "L" in AIX 5L stood for Linux. (See IBM Ex. 629.)

What is more, as stated in IBM's opening brief, Santa Cruz investigated whether Linux infringed the UNIX copyrights,                         According to

SECTION REDACTED

to SCO's Blake Stowell, the '                                               (DJ Br. ¶ 86.) Yet Santa Cruz, and later SCO, continued to support and promote Linux. SCO discusses the Swartz memo only in a footnote and even then states only

SECTION REDACTED

The fact that some at Santa Cruz did not believe Linux infringed the UNIX copyrights (properly, we submit) does not justify Santa Cruz's (and later SCO's) inaction, let alone its continued support and promotion regarding Linux in the face of the red flags raised by the Swartz memo.

4.    IBM.

Lastly, SCO argues that IBM could not reasonably rely on the Linux activities of SCO

and its predecessors because IBM engaged in "deceptive and unfair activity with respect to

Project Monterey" and made "improper contributions to Linux" that changed its "competitive

nature". (Opp'n at 78, 81-83.) To begin, these allegations fail because they are not supported by

admissible evidence. As stated in IBM's other summary judgment memoranda, which are

incorporated by reference, IBM did not engage in any misconduct relating to Project Monterey.

Nor has IBM ever made any improper contributions to Linux. Moreover, even if IBM had

breached its contractual obligations to SCO in connection with Project Monterey, or in making

contributions to Linux, a mere breach of contract does not amount to unclean hands so as to

foreclose IBM's reliance on the defense of estoppel.[48] See Dollar Sys., Inc. v. Avcar Leasing

Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989) (holding that "simple breach of contract" did not

"merit[] application of the unclean hands doctrine."); Energetec Sys., Inc. v. Kayser, No. 84-

10611, 1986 WL 8058, at *2 (N.D. Ill. July 17, 1986) (holding that the "defense of unclean

hands is shown by misconduct . . . which amounts to fraud, misconduct or bad faith toward the

defendant making the contention" and "[m]ere breach of contract does not supply the requisite

tortious conduct.") (Addendum W hereto).

---

[48] Underlying SCO's argument is the premise — unsupported by any evidence — that IBM
single-handedly turned Linux into an enterprise-hardened platform without SCO's knowledge
(even though all of IBM's Linux contributions were public). To the extent Linux evolved over
time into an enterprise-hardened platform (whatever exactly SCO means by that), it is due to the
efforts of an entire community, including SCO itself. Although SCO pretends to have had no
role in the evolution of Linux into an enterprise-hardened platform, it actually played a key role,
as evidenced by the public statements of its former CEO (Ransom Love). In 2000, Mr. Love
stated: "Caldera's committed to Linux standard base. You're going to see significantly more
investment o[f] our time and effort to bring that about with the [Santa Cruz] acquisition . . . Our
goal is to promote, encourage and establish open standards that will maximize application,
development and business use. In that way Linux will cross the chasm." (IBM Ex. 470 at 13-
14.)

Furthermore, allegations of unclean hands — which is what SCO's Monterey allegations amount to — are recognizable only if they "relate directly to the transaction concerning which the complaint is made". Dollar Sys., 890 F.2d at 173 (emphasis added).[49] Some courts have even held that the "direct relation" must be such that the plaintiff engaged in conduct that either caused, or brought about, the very transactions upon which it is bringing suit. See, e.g., McFadden v. R&R Engine & Machine Co., 102 F. Supp. 2d 458, 471 (N.D. Ohio 2000) (rejecting unclean hands defense where defendant's "failure of timely payment was not caused by, nor is it excused by, any alleged failure of" plaintiff).[50] Here, SCO's Monterey allegations bear no relationship, let alone a direct relationship, to its allegations of infringement relating to IBM.

SCO also argues that IBM could not have relied on SCO's predecessors' Linux activities because "IBM committed to a Linux strategy long before 2001", and "[i]n 2003, after it was sued, IBM continued with its Linux activities notwithstanding full knowledge of SCO's position". (Opp'n at 79.) SCO offers no evidence to support these assertions and there is none.

---

[49] See also McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230, 238 (10th Cir. 1968) (holding that "not every misconduct [] will cause a court to apply the doctrine of unclean hands. Rather . . . [unclean hands] is confined to misconduct in relation to or in all events connected with the matter in litigation so that it in some manner affects the equitable relations of the parties to the suit."); Hoehn v. Crews, 144 F.2d 665, 672 (10th Cir. 1944) (holding that the doctrine of unclean hands "is confined to misconduct in relation to the matter in litigation, so that in some manner it affects the equitable relation of the parties to the suit"); Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc., No. 05-380, 2005 WL 3263157, at *9 (D. Utah Dec. 1, 2005) (Kimball, D.J.) (holding that the "unclean hands doctrine requires that the inequitable conduct on the part of the plaintiff be related to the plaintiff's cause of action") (Addendum X hereto).

[50] See also Nat'l Cable Television Assoc. v. Broad. Music, Inc., 772 F. Supp. 614, 653 (D.D.C. 1991) (holding that the doctrine of "unclean hands [] require[d] [counterclaim-plaintiffs] to show at least the responsibility of [counterclaim-defendants] for their infringements"); Mirmingos v. Benjamin, 288 B.R. 521, 523 (Bankr. N.D. Ill. 2003) (denying unclean hands where party asserting doctrine failed to show that his actionable conduct "was in any way caused by or related to Mr. Benjamin's alleged misconduct or any other misrepresentations by Mr. Benjamin").

IBM did not make a single commitment to Linux; rather, it has made a series of commitments to Linux over time. Moreover, IBM did not have full knowledge of SCO's position when SCO sued IBM in 2003. As this Court recognized in an order dated February 22, 2005, more than two years into this litigation, SCO still had not revealed a shred of competent evidence of its claims as of that time. As the Court put it:

> Viewed against the backdrop of SCO's plethora of public statements concerning IBM's and others' infringement of SCO's purported copyrights to the UNIX software, it is astonishing that SCO has not offered any competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights through IBM's Linux activities. (IBM Ex. 57 at 10.)

While IBM might have first embraced Linux in 1999, it re-committed itself to Linux on an ongoing basis up to and through the commencement of this case without any specific knowledge of SCO's present claims, and based on SCO's                                                    .e

<div align="center">SECTION REDACTED</div>

In any case, notice of SCO's claims based on this litigation could not possibly make IBM's continued support of Linux unreasonable. Once a defendant has established detrimental reliance based on the plaintiff's conduct, the defendant's continued actions even after receiving notice that the plaintiff intends to assert its rights <u>do not negate or undermine</u> that detrimental reliance and do not preclude a finding of estoppel because the damage has already been done.[51]

---

[51] See Carson v. Dynegy, Inc., 344 F.3d 446, 455 n.9 (5th Cir. 2003) (affirming finding of estoppel despite argument that defense was not available "because [defendant] Dynegy continued to use [the infringing work] and, arguably, introduced a derivative work after this lawsuit was filed"); Quinn v. City of Detroit, 23 F. Supp. 2d 741, 753 (E.D. Mich. 1998) (finding estoppel despite the fact that defendant committed infringing acts after receiving a termination notice because "long before the November 20, 1995 [termination] letter, Quinn was estopped from withdrawing his consent because of the [defendants'] reliance"); Keane, 968 F. Supp at 948 (stating that "a general rule . . . that detrimental reliance ends when a lawsuit is filed would obviate estoppel as an equitable defense" and finding estoppel despite defendant's continued actions after filing of lawsuit).

Contrary to SCO's suggestion, the mere fact that a defendant could abandon the allegedly infringing activity altogether does not mean that the plaintiff should not be estopped. SCO's promotion of Linux and delay in asserting its claims led IBM and others to make commitments to Linux that cannot be undone absent extreme prejudice.[52] The fact that IBM stayed committed to Linux despite SCO's legal warfare is proof of IBM's reliance.

C.   IBM Was Ignorant of the Fact That SCO Would Assert Claims to Linux.

Finally, SCO argues that IBM is not entitled to summary judgment as to its estoppel defense because it was not ignorant of the true facts. (Opp'n at 84-86.) According to SCO, IBM knew that Santa Cruz held UNIX System V copyrights and that unauthorized UNIX System V technology was incorporated into Linux. (Id. at 84.) No evidence supports the claim that IBM knew that Santa Cruz held the UNIX System V copyrights or that IBM knew that UNIX System V technology might have been incorporated into Linux.

As stated, SCO does not own the copyrights in the Disputed Code. (See Section II.B., above.)

SECTION REDACTED

---

[52] SCO misplaces reliance on Peer International Corp. v. Luna Records, Inc., 887 F. Supp. 560, 567 (S.D.N.Y. 1995), Steinberg v. Columbia Pictures Industries, Inc., 663 F. Supp. 706 (S.D.N.Y. 1987), and Kraft v. Cohen, 32 F. Supp. 821, 825 (E.D. Pa. 1940), rev'd 117 F.2d 579 (3d Cir. 1941). None of these cases stands for the proposition that a defendant's detrimental reliance, once established, can be negated or undermined by its continued actions after it has been given notice that plaintiff intends to assert its rights. In these cases, the defendants failed to show that the plaintiff engaged in any misleading conduct, so that defendants there could not demonstrate any detrimental reliance. None of the cases dealt with a situation such as here, where a defendant has relied to its detriment and then continued its actions despite warning by the plaintiff. In such a situation, courts have held that a defendant's continued actions will not necessarily negate or undermine defendant's detrimental reliance, nor preclude estoppel. See Carson, 344 F.3d at 455 n.9 (affirming finding of estoppel despite the fact that "Dynegy continued to use [the infringing work] and, arguably, introduced a derivative work after this lawsuit was filed"); Quinn, 23 F. Supp. 2d at 753 (finding estoppel despite the fact that defendant committed infringing acts after receiving a termination notice); Keane, 968 F. Supp at 948 (finding estoppel despite defendant's continued actions after filing of lawsuit).

SECTION REDACTED       ) In any case, assuming that SCO owned UNIX copyrights is not the same thing as knowing that it would use them to wage legal warfare against the very operating system that it helped to build and the very code that it helped to include in Linux. Furthermore, as demonstrated above, SCO transferred any ownership it had        SECTION REDACTED

In addition, the evidence offered in support of IBM's opening brief, which SCO fails properly to controvert, shows that IBM was unaware of SCO's allegations of infringement. (DJ Br. ¶ 162.) IBM knew nothing of SCO's allegations about the Linux Code until after SCO launched its attack on Linux. (DJ Br. ¶ 162.) SCO did not specifically identify the Linux Code, despite two orders of the Court requiring it to do so, until SCO submitted its Final Disclosures, years <u>after</u> SCO commenced suit. (DJ Br. ¶¶ 146-57, 170-78.) Even then, SCO failed to disclose any evidence of unauthorized copying by IBM. (DJ Br. ¶¶ 146-57, 170-78, 192-94.) Furthermore, IBM had no reason to believe that SCO considered the Linux Code to infringe copyrights owned by SCO. (DJ Br. ¶ 162.) Again, SCO: (1) promoted Linux; (2) advocated adoption of the LSB, which required inclusion of most of the Linux Code in Linux; (3) distributed a number of Linux products, despite the fact that they included the Linux Code; and (4) granted IBM a license to use the material.[53] (DJ Br. ¶¶ 22-33, 42-83, 88-102.)

---

[53] In a footnote, SCO argues that even if IBM did not have actual knowledge, its reliance was not reasonable "where IBM had ample reason and opportunity <u>to inquire</u> as to SCO's rights in UNIX and Linux". (Opp'n at 84 n.15.) Based on the pattern of support demonstrated by SCO over the course of nearly a decade, IBM had no reason to question the accuracy of SCO's public statements, including those made to regulators. (<u>See, e.g.,</u> Caldera Systems 2000 10-K: "Caldera enables the development, deployment and management of Linux . . . .Our Linux software products and service offerings are specifically designed to meet the complex needs of eBusiness . . . We facilitate the adoption of Linux by providing educational programs designed to help our customers to develop, deploy and administer Linux systems. We embrace the open source model and participate as a key member of many open source industry standards and partner initiatives, including Linux Professional Institute, Linux Standards Base and Linux International Group." (IBM Ex. 107 at 4); <u>see also</u>, IBM Ex. 105 at 4-5; IBM Ex. 106 at 5.) Moreover, as stated, SCO

## V. SCO CANNOT SHOW SUBSTANTIAL SIMILARITY BETWEEN LINUX AND PROTECTABLE ELEMENTS OF THE SYSTEM V WORKS.

IBM is also entitled to summary judgment for two additional reasons: (1) none of the

System V Code is protectable by copyright; and (2) even if all of the System V Code were

protectable by copyright, the Linux Code is too insignificant to render Linux substantially similar

to the System V Works. SCO's opposition papers offer no admissible evidence to the contrary.[54]

### A.   None of the System V Code Is Protectable by Copyright.

SECTION REDACTED

The System V Code                    is unprotectable, and cannot form the basis of a

claim for copyright infringement, because it is: (1) scenes a faire material; (2) an idea,

procedure, process, system, method of operation or one of only a handful of possible expressions

of the underlying idea; or (3) unoriginal.

#### 1.   The System V Code Was Dictated by Externalities.

SECTION REDACTED

SCO contends the .                        are not scenes a faire material (i.e., dictated

by externalities) (Opp'n at 59-61), but its argument suffers from two independently fatal flaws.

First, in its opening brief, IBM showed that the System V Code was dictated by

numerous externalities, any one of which is sufficient to render it uncopyrightable.  (DJ Br. at

---

expressly represented to IBM ;            SECTION REDACTED            --  —-- - ..   ;

[54] To support its contention that Linux is substantially similar to UNIX SVr4, SCO also
argues:  (1) "IBM has never addressed, either in its motion or its expert reports, SCO's legal
theory that

SECTION REDACTED

stated, the Court has already ruled that SCO may not proceed as to this material.  (IBM Ex. 59 at
2; IBM Ex. 621; IBM Ex. 630.)

[55] In its Final Disclosures, SCO identified .        SECTION REDACTED

are included with this submission as Addendum D.

89-90.) Specifically, the System V Code was dictated by (1) compatibility requirements, (2) industry standards, (3) programming practice, and (4) industry demand. SCO purports to offer

SECTION REDACTED

Thus, the fact that the

System V Code was dictated by programming practices and industry demand must be deemed admitted. See DUCivR 56-1(c).

Second.

SECTION REDACTED

It is well established that a party cannot avoid summary judgment based on inadmissible evidence. See, e.g., Vanover v. Altec Indus., Inc., 82 Fed. Appx. 8, 10 (10th Cir. 2003) (Addendum Y hereto); Stover v. Eagle Prods., Inc., No. 93-4047, 1996 WL 172972, at *12 (D. Kan. Mar. 19, 1996) (Addendum Z hereto). Where, as here, an expert uses the wrong legal standard to arrive at his opinion, that opinion is plainly unreliable and therefore inadmissible pursuant to Federal Rule of Evidence 702. Carlson v. C.H. Robinson Worldwide, Inc., Nos. 02-3780 & 02-4261, 2005 WL 758601, at *4 (D. Minn. Mar. 30, 2005) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)) (Addendum AA hereto).

Case law from this Circuit is clear that, "[i]n the area of computer programs . . . external factors may include . . . target industry practices and demands, and computer industry programming practices". Gates Rubber, 9 F.3d at 838 (internal citations omitted).

SECTION REDACTED

49

SECTION REDACTED

<u>See</u> Fed. R. Evid. 702; <u>Carlson</u>, 2005 WL 758601, at *4; <u>see also</u> <u>Hutton</u>

<u>Contracting Co., Inc. v. City of Coffeyville</u>, No. 02-4130, 2004 WL 2203449, at *12 (D. Kan.

Sept. 24, 2004) (excluding expert testimony based on incorrect legal standard) (Addendum BB

hereto); <u>Pioneer Hi-Bred Int'l., Inc. v. Ottawa Plant Food, Inc.</u>, 219 F.R.D. 135, 140 (N.D. Iowa

2003) (excluding expert testimony "based on an erroneous legal premise").

In addition to these flaws, SCO's critique of IBM's analysis of externalities misses the

mark. That is true independent of the fact (ignored by SCO) that it (not IBM) bears the burden

of proof.

<u>First</u>, SCO argues that IBM relied incorrectly "on externalities that constrained the choice

of expression in the <u>infringing</u>, rather than <u>infringed</u>, work." (Opp'n at 60.)  That is incorrect.

IBM showed that SCO's alleged predecessors were constrained by external factors when

developing the allegedly infringed material from the System V Works.  (DJ Br. at 89-90; <u>e.g.</u>,

IBM Ex. 213 ¶¶ 44-58, 70-75, 88-89; IBM Ex. 214 ¶¶ 56-58, 89, 97; Ex. 215 ¶¶ 12-30, 51-57,

86-87, 99-102.)

<u>Second</u>, SCO argues that the fact that AT&T was constrained when programming SVr4

by the need to maintain compatibility with older versions of UNIX previously created by AT&T

does not constitute an externality recognized under the doctrine of <u>scenes a faire</u> and IBM is

wrong to argue otherwise. (Opp'n at 60-61.)  The Tenth Circuit, however, has expressly held

that material is unprotectable when it was dictated by the need for compatibility with earlier

50

versions. Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1375 (10th Cir. 1997) (plaintiff Mitel's allegedly infringed material held to be unprotectable because it was "dictated by the need for compatibility with older-model Mitel call controllers").

Third, SCO argues that IBM "fails to specify what specific elements of SVr4 are dictated by externalities". (Opp'n at 61.) Here again, SCO is wrong on the facts. IBM submitted evidence in support of its opening brief showing that all        are dictated by multiple externalities.

<div align="center">SECTION REDACTED</div>

    2.    <u>The System V Code Represents Mere Ideas or Merger Material.</u>

IBM's opening brief explains that the System V Code is also unprotectable because it represents mere ideas and merger material. (DJ. Br. at 90-92.) SCO argues there is a fact question on this issue, but here again, fails to support the argument with admissible evidence.

SCO purports to support its argument with the Cargill reports.

<div align="center">SECTION REDACTED</div>

Moreover, even if the Cargill reports could be construed to controvert IBM's mere idea/merger evidence, SCO could not rely on that evidence because it was not produced pursuant to IBM's discovery requests or the Court's orders.

---

[56] SCO's only other cited support is its statement that

<div align="center">SECTION REDACTED</div>

IBM's Interrogatory No. 13 and its Interrogatory No. 16 asked that "[f]or each line of code and other material identified . . . please state whether (a) IBM has infringed plaintiff's rights, and for any rights IBM is alleged to have infringed, describe in detail how IBM is alleged to have infringed plaintiff's rights" (IBM Ex. 12 at 2), and IBM's Interrogatory No. 16 asked SCO, "[f]or each line of code and other material identified . . . please state . . . whether it constitutes expression protectable under copyright law" (IBM Ex. 43 at 16). The Court ordered SCO to respond in detail and with specificity. This SCO did not do. Thus, SCO is precluded from using this supposed evidence for all purposes, including to oppose IBM's summary judgment motion.

SCO seeks to defend its failure to produce this information in a footnote (Opp'n at 62 n.7), but none of the arguments it advances survive scrutiny:

(1) SCO claims "it is IBM's burden to show that the protected material should be filtered". (Id.) Putting aside the fact that SCO bears the burden of proof on the issue of infringement, the issue of burden is irrelevant to whether to SCO met its discovery obligations.

(2) SCO claims "IBM points to no discovery that it sought on this issue that SCO failed to respond to". (Id.) In doing so, SCO ignores IBM's Interrogatory Nos. 13 and 16 (as stated above).

(3) SCO claims "IBM cites no relevant authority for its apparent proposition" that "SCO failed to meet an obligation to provide discovery regarding what aspects of the copied SVr4 material constitutes expression, as opposed to mere ideas". (Id.) Putting aside the Court's order setting a Final Disclosure deadline and its order affirming Judge Wells' preclusion order, Rule 37(c) and the cases cited in IBM's preclusion papers provide ample authority for IBM's position. (IBM Ex. 58; IBM Ex. 630; Fed. R. Civ. P. 37(c); IBM Ex. 631.) Moreover, IBM's opening brief cites relevant authority.[57]

---

[57] In its opening brief (DJ Br. at 91), IBM cited Lawrence v. IBP, Inc. and Stone v. CGS Distribution Inc. as authority for the proposition that in light of SCO's failure to provide discovery on this issue, SCO cannot support the contention that the System V Code represents more than mere ideas and processes. Lawrence v. IBP, Inc., No. 94-2027, 1995 WL 261144, at *7 (D. Kan. Apr. 21, 1995) (DJ Br. Ex.; Stone v. CGS Distrib. Inc., No. 93-1288, 1994 WL 832021, at *6 (D. Colo. Aug. 18, 1994).

(4)     SCO claims that it was allowed to defer providing this information until the
        submission of its expert reports. (See Opp'n at 62 n.7)  The Court has repeatedly
        rejected this contention, as recently as its order on IBM's Motion to Limit SCO's
        Claims to, and Strike Expert Testimony in Excess of, SCO's Final Disclosures.

Since SCO has failed to support its argument with admissible evidence, the fact that the System

V Code constitutes mere ideas or expression that has merged with the underlying idea must be

deemed admitted.  See DUCivR 56-1(c).

    SCO's specific contentions are likewise no impediment to summary judgment.

    First, SCO argues that "[a]s a matter of law, source code is almost always considered

expression rather than an idea".  (Opp'n at 62.)  As SCO's own assertion concedes, source code

is not always considered expression.  While many of the millions of lines of code in the System

V Works may constitute expression, the                                      are either mere

ideas or merger material, :          . SECTION REDACTED

                                                              . See, e.g., MiTek

Holdings, Inc. v. Arce Eng'g. Co., Inc., 89 F.3d 1548, 1557 n.20 (11th Cir. 1996) (holding

certain elements of a computer program unprotectable because to grant copyright protection to

the first person to express the idea effectively would remove those basic ideas or functions from

the public domain (citing Gates Rubber, 9 F.3d at 838)); Computer Assocs. Int'l v. Altai, Inc.,

982 F.2d 692, 708 (2d Cir. 1992) (when efficiency concerns in the computer program context

suggest that "there are only a very limited number of file structures available", then the

"expression represented by the programmer's choice of a specific [structure] has merged with

[its] underlying ideal and is unprotect[able]" (quoting, in part, 3 Nimmer on Copyright

§ 13.03)).[58]

---

[58] Here, too, SCO argues that there is a genuine issue of material fact because "IBM does not
address the disputed material at a non-literal level".  (Opp'n at 62.)  As stated above, the Court

Second, SCO argues that the number of different choices available to a C programmer in

SECTION REDACTED                                    That may be true,

but is no more meaningful than would be the observation that there are nearly an infinite number

of ways of describing something in the English language in a literary context. As explained in

IBM's opening brief, the number of practical ways to express the ideas claimed by SCO in the

SECTION REDACTED      are extremely limited by the need for memorable, concise

terminology. (DJ Br. at 91-92; e.g., IBM Ex. 214 ¶ 90; IBM Ex. 213 ¶ 60.) For that reason

alone, they are unprotectable by copyright.[59]

Third, SCO argues that it is legally wrong to argue that expressive choices are limited by

the need for compatibility with System V. (Opp'n at 63.) SCO's argument is, however, based

on a misconstruction of IBM's position. Contrary to SCO's suggestion, IBM's mere idea/merger

evidence is not based on the proposition that the number of expressive choices for Linux were

limited but rather that ·                SECTION REDACTED

fact SCO ignores). (DJ Br. at 91-92; see e.g., IBM Ex. 213 ¶¶ 59-60, 76-77, 83-87; IBM Ex. 214

¶¶ 59, 90; IBM Ex. 215 ¶¶ 58-64, 88, 103-104.)

---

has made clear that SCO may not proceed as to this material, which was not specifically
identified in SCO's Final Disclosures.

[59] Here and elsewhere, SCO suggests that IBM's position is inconsistent with the position it
took as an amicus curiae in the Gates Rubber case. (Opp'n at 62-63.) Although the position
taken in the joint amicus brief of IBM and nine other amici requested that "the [Tenth Circuit]
affirm the conclusions of law relating to substantial similarity made by the court below" (SCO
Ex. 98 at 19), the Tenth Circuit did not adopt the amici's position, vacating and remanding the
district court's opinion on the issue of copyright infringement because "the district court failed
adequately to filter" unprotectable elements in its substantial similarity analysis (Gates Rubber, 9
F.3d at 849). SCO's assertion that IBM is somehow bound by its past position against the law
that indisputably governs this case is simply wrong and unsupported by any legal authority.

3.     The System V Code Lacks Even De Minimis Originality.

To be protected by copyright law, a work must be the original, creative expression of an idea, rather than an arbitrary decision. Feist Publ'ns. Inc. v. Rural Tel. Serv. Co. Inc., 499 U.S. 340, 345 (1991). Thus, as an additional ground for summary judgment, IBM showed in its opening brief that the System V Code alleged to have been infringed in Linux lacks even de minimis originality.[60] (DJ Br. at 93; see also IBM Ex. 215 ¶ 65.) SCO's opposition depends entirely on

SECTION REDACTED

The Supreme Court pronounced the test for "originality" in copyright law fifteen years ago in Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340 (1991). Feist involved the copying of listings from a telephone directory. Id. at 342-44. The issue before the Court was whether the copyright holder's arrangement of facts was sufficiently original to warrant copyright protection. Id. at 362. The Court held that it was not:

> Rural's white pages are entirely typical. Persons desiring telephone service in Rural's service area fill out an application and Rural issues them a telephone number. In preparing its white pages, Rural simply takes the data provided by its subscribers and lists it alphabetically by surname. . . .
>
> Rural's selection of listings could not be more obvious: It publishes the most basic information-name, town, and telephone number-about each person who applies to it for telephone service. This is "selection" of a sort, but it lacks the modicum of creativity necessary to transform mere selection into copyrightable expression. Rural expended sufficient effort to make the white pages directory useful, but insufficient creativity to make it original. Id. at 362-63.

---

[60]

SECTION REDACTED

See Mitel Inc. v. Iqtel, Inc., 124 F.3d 1366, 1374 (10th Cir. 1997) (sequence of numbers held to be unoriginal).

In so holding, the Court noted that although the originality "does not require that facts be presented in an innovative or surprising way", "the Constitution mandates some minimal degree of creativity". Id. at 362.

Applying Feist, the Tenth Circuit has held that the "arbitrary selection of a combination of three or four numbers" to create "command codes" was insufficiently "original" to qualify for copyright protection. See Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1373-74 (10th Cir. 1997). Likewise, the Court held that "purely sequential elements of the codes" that were "matched with increasing incremental 'values'", were "analogous to arranging telephone entries in alphabetical order" and therefore insufficiently original. See id. at 1374.

SECTION REDACTED

SECTION REDACTED

Because Dr. Cargill used an erroneous legal standard in arriving at his opinions regarding

the originality of the allegedly copied SVr4 code, those opinions are unreliable and inadmissible

pursuant to Federal Rule of Evidence 702. See Carlson, 2005 WL 758601, at *4; Hutton

Contracting Co., 2004 WL 2203449, at *12; Pioneer Hi-Bred Int'l., 219 F.R.D. at 140.

Inadmissible expert testimony cannot defeat a summary judgment motion. See, e.g., Vanover,

82 Fed. Appx. at 10; Stover, 1996 WL 172972, at *12.  Because SCO relies entirely on Dr.

Cargill's inadmissible opinions to prove that the relevant code is sufficiently "original", SCO has

failed to raise an issue of material fact with respect to the issue of "originality".

> B.   Linux Is Not Substantially Similar to the System V Works, Even Assuming the
>       Protectability of the System V Code.
>                      SECTION REDACTED

Even if all of the System V Code            were protectable by copyright, SCO

could not show substantial similarity between Linux and protectable elements of the System V

Works.  This by itself is also fatal to SCO's claim.

While SCO's opposition makes sweeping assertions of infringement, it fails to show that

the               SECTION REDACTED               render Linux substantially

similar to the System V Works. (Opp'n at 65-67.)  In fact, SCO hardly mentions the specific

lines at issue, resorting instead to a discussion of allegedly infringed material not specifically

identified in the Final Disclosures          SECTION REDACTED              . (Id. at 66-

67.)  Again, the Court has made clear that SCO may not rely on information not specifically

57

identified in the Final Disclosures as a means to avoid summary judgment. As to the .

SECTION REDACTED       SCO's only real argument is to suggest that a computer program using

copied code is "substantially similar" to an earlier work no matter how little code is copied, so

long as

SECTION REDACTED

test, however, leads to absurd results.

SECTION REDACTED

Even if merely criticizing IBM's opening brief were grounds to avoid summary judgment

(and it is not), SCO's opposition would be unavailing. Contrary to SCO's suggestion, IBM's

experts considered whether Linux is substantially similar to UNIX based on the principles set out

in Gates Rubber. (IBM Ex. 213 ¶¶ 2, 90-102; IBM Ex. 215 ¶¶ 31-45; DJ Br. at 94.) Gates

Rubber does not, as SCO claims, render irrelevant the "ordinary lay observer" standard described

58

in <u>Country Kids</u>.[61]  Nor does <u>Gates Rubber</u> forbid the filtering of unprotectable elements before

comparing two works in whole to determine if they are substantially similar — it commands it.[62]

As contemplated by <u>Gates Rubber</u>, IBM's experts performed both a qualitative and quantitative

analysis to determine substantial similarity.  (<u>See, e.g.</u>, IBM Ex. 215 ¶¶ 31-45.)  On the strength

of that analysis, they found what common sense suggests —

<div align="center">SECTION REDACTED</div>

Even if SCO's complaints had merit (and they do

not), they would not be enough to avoid summary judgment.  To avoid summary judgment, SCO

was required to adduce admissible evidence showing the substantial similarity of the Linux

kernel and the System V works.  <u>See</u> <u>Adler</u>, 144 F.3d at 671-72 (conclusory arguments in

plaintiff's brief are of little help in carrying burden under Rule 56).  Legal argument is not

admissible evidence.

While substantial similarity can be a jury question, it *is not*, as SCO suggests, *necessarily*

a question for a jury.  Courts have entered summary judgment based on insufficient similarity

(between allegedly infringed and allegedly infringing works) in circumstances similar to those

here.  <u>See</u> <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1472, 1477 (9th Cir. 1992)

---

[61] <u>Country Kids</u> cites extensively to <u>Gates Rubber</u>, stating explicitly that the substantial similarity analysis performed in <u>Country Kids</u>, "was developed for use in the context of alleged infringement of computer software…[,] [h]owever, we see no reason to limit the abstraction-filtration-comparison approach to cases involving computer programs."  <u>Country Kids 'N City Slicks v. Sheen</u>, 77 F.3d 1280, 1284 n.5 (10th Cir. 1996), <u>citing</u> <u>Gates Rubber</u>, 9 F.3d at 834-39. SCO's argument that <u>Country Kids'</u> application of the <u>Gates Rubber</u> substantial similarity analysis had already been rejected by the Tenth Circuit years beforehand in the <u>Gates Rubber</u> case defies logic.  Similarly, SCO's assertion that the Tenth Circuit's substantial similarity analysis in <u>Country Kids</u> was rejected ten years earlier by the Third Circuit in <u>Whelan</u> is plainly incorrect.  <u>See</u> <u>Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.</u>, 797 F.2d 1222 (3d Cir. 1986).

[62] "<u>After</u> the court has filtered out those elements of the original program that it has found to be unprotectable, it is left with a core of protected elements that can be compared to the alleged infringing program."  <u>Gates Rubber</u>, 9 F.3d at 838-39 (emphasis added).

<div align="center">59</div>

(affirming summary judgment dismissing copyright infringement claim where plaintiff failed to meet its evidentiary burden on its assertions of substantial similarity); Frybarger v. Int'l Bus. Machs. Corp., 812 F.2d 525, 529 (9th Cir. 1987) (affirming district court decision on summary judgment that with respect to "the expressive elements in the works . . . no reasonable jury could find them substantially similar"); Gemisys Corp. v. Phoenix Am., Inc., 186 F.R.D. 551, 563 (N.D. Cal. 1999) (holding that because "Gemisys has not presented any evidence that [the Phoenix software] is substantially similar to [the allegedly infringed Gemisys software] . . . the Court grants summary judgment in favor of Phoenix on Gemisys' copyright infringement claim"); Productivity Software Int'l, Inc. v. Healthcare Tech., Inc., No. 93-6949, 1995 WL 437526, at *7 (S.D.N.Y. July 25, 1995) (holding that because "[p]laintiff has not identified any basis for finding that an average lay observer would recognize Defendants' program as having been appropriated from Plaintiff's copyrighted work [and] any similarity between the two programs relates only to non-copyrightable features . . . Defendants' motion for summary judgment on Plaintiff's copyright claim is granted") (DJ Br. Ex. K). Thus, IBM is entitled to summary judgment on the grounds that SCO has failed to meet its burden to prove substantial similarity.

## VI.    SCO HAS MISUSED ITS ALLEGED COPYRIGHTS.

Finally, SCO's infringement claim should also be rejected because SCO has misused the copyrights and therefore is not entitled to enforce them. While SCO asserts that it has not misused the copyrights, it does not (and could not) contest the multiple grounds entitling IBM to a finding of misuse. For example, it is undisputed that:

60

(1) SCO has specifically accused IBM of infringing, and claimed infringement of,

<center>SECTION REDACTED</center>

(2) Without proffering support for its claims of infringement, SCO has asserted the Copyrights against all of Linux, although it does not, and could not possibly, have rights to all of Linux. (DJ Br. ¶¶ 131-137, 140, 159; Opp'n at Appendix A, ¶¶ 131-136, 140, 159.)[64]

(3) SCO has attempted to leverage the Copyrights through an expansive application of its UNIX licensing agreements (which relate to UNIX System V only) to exercise control over copyrighted works owned by IBM (i.e., AIX and Dynix/ptx ("Dynix")). (DJ Br. at 97-98.)

(4) SCO has asserted the copyrights as to material that is indisputably unprotectable by copyright, including

<center>SECTION REDACTED</center>
<center>-95.)</center>

(5) SCO has also sought to enforce the copyrights where enforcement is not legally permissible, such as because IBM has a license to the allegedly infringed code (DJ Br. ¶¶ 93-94, 198-215) or it is in Linux because of SCO's Linux activities. (See, e.g., DJ Br. ¶¶ 64-71.)

Any one of these grounds is a basis for a determination of misuse. SCO does not dispute that a

copyright holder may not enforce a copyright that it has misused; nor does it dispute that a

copyright holder misuses a copyright where it seeks to extend the scope of its limited monopoly

to gain control over material outside the monopoly, or otherwise attempts to use its copyright in

a manner adverse to the public policy. (DJ Br. at 95-100; see Opp'n at 86-88.)

---

[63] In its counterstatement of facts, SCO merely asserts irrelevant facts relating to the treatment of USL-derived material under the USL-BSD Settlement Agreement. (Opp'n at Appendix A ¶ 288.) SCO offers no admissible evidence concerning the BSD-derived material at issue here. (Id.)

[64] SCO purports to dispute only one of these IBM fact paragraphs (¶ 137), but fails to meet the requirements of DUCivR 56-1(c) because it offers only one word, "Disputed", in opposition. (Opp'n at Appendix A ¶ 137; DUCivR 56-1(c).) The facts showing that SCO publicly asserted claims to all of Linux while failing to substantiate its claims are undisputed and indisputable.

<center>61</center>

Rather than specifically controvert the proffered evidence of its misuse of copyright, which is more than adequate to entitle IBM to the entry of summary judgment, SCO argues that "IBM ignores SCO's collective work theory". (Opp'n at 87.) According to SCO, "[t]o the extent [it] is seeking copyright protection for literal and non-literal components of SVr4 that were created entirely by others, it only does so to the extent that those components are derived from System V code or were selected arranged and coordinated in SVr4". (Id.) Contrary to this contention, SCO has in fact claimed copyright protection for alleged components of SVr4 that were created entirely by others, such as BSD. (Items 217-18, 223, 229-30.) In any event, even the broadest collective work theory could not immunize SCO's over-reaching. Much of SCO's misconduct has nothing whatever to do with a collective work theory, which is nowhere mentioned in SCO's Final Disclosures.

SCO also argues that "to the extent IBM's misuse theory hinges on SCO's out-of-court characterizations of its case, such statements are irrelevant to this issue. The misuse doctrine does not extend to good faith allegations of infringement, let alone to out-of-court characterizations regarding the basis for the infringement claim". (Opp'n at 87.) SCO's misuse is not limited to what it calls "out-of-court characterizations of its case". Rather, as illustrated above, it concerns a pattern of leveraging what are at most limited rights to UNIX to assert unfounded control over IBM's and others' property and to force IBM and others to pay illegitimate and undue licensing fees. Moreover, the record does not support the assertion that SCO acted in good faith in engaging in the challenged conduct. On the contrary, the record compels the conclusion that SCO acted in bad faith. (See IBM's Opp'n to SCO's Mot. for Summ. J. on IBM's Sec., Third, Fourth and Fifth Counterclaims.)

62

Lastly, SCO argues that its "comparison of UNIX to the whole of Linux, AIX, and Dynix/ptx is appropriate". (Opp'n at 87.) It might be appropriate, for some purposes, to compare UNIX to the whole of Linux, AIX and Dynix/ptx. But that is irrelevant to whether SCO has misused its alleged copyrights by attempting to control material to which it has no rights. SCO's opposition brief offers nothing to the contrary.

Copyright misuse has been held to bar a claim for copyright infringement under no more compelling circumstances. See, e.g., Alcatel v. DGI Tech., Inc., 166 F.3d 772, 793-94 (5th Cir. 1999) (finding misuse where a copyright holder attempted to prevent copying of the allegedly infringed operating system for purposes of inhibiting the development of compatible products, and thereby gain commercial control over the market for compatible products, in which the plaintiff has no copyright); Tamburo v. Calvin, No. 94-5206, 1995 WL 121539, at *7 (N.D. Ill. Mar. 17, 1995) (finding misuse where a copyright holder used its licensing agreement to extend the holder's monopoly beyond the limited scope afforded by copyright law) (DJ Br. Ex. L); Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 978 (4th Cir. 1990) (finding copyright misuse where the plaintiff attempted to extend its copyright control to uncopyrighted material through the use of expansive licensing agreements); Practice Mgmt. Info. Corp. v. Am. Med. Assoc., 121 F.3d 516, 520-21 (9th Cir. 1997) (upholding a misuse defense where the terms of the licensing agreement were deemed anticompetitive and the copyright holders used its copyright "in a manner violative of the public policy embodied in the grant of copyright"). We respectfully submit that SCO not be allowed to enforce its alleged copyrights based on misuse.

63

## Conclusion

For the foregoing reasons, summary judgment should be entered in favor of IBM and

against SCO on IBM's claim for declaratory judgment of non-infringement with respect to

IBM's Linux activities.

DATED this 12th day of January, 2007.

SNELL & WILMER L.L.P.

Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2007, a true and correct copy of the

foregoing was hand delivered to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2007, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101

Robert Silver
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504

Stephen N. Zack
Mark J. Heise
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131


/s/ Amy F. Sorenson

## INDEX TO ADDENDA

Addendum A:    IBM's Undisputed Facts:  IBM DJ Brief

Addendum B:    IBM's Objections to SCO's Alleged Evidence

Addendum C:    The 326 Lines of Linux Code

Addendum D:    Applicability of Defenses to the Linux Code

Addendum E:    *Ontario Die Co. of America v. Indep. Die Assoc., Inc.*, No. 89-30035, 1990 WL 300899 (E.D. Mich. Aug. 24, 1990)

Addendum F:    *Glenayre Elec., Inc. v. Jackson*, No. 02-0256, 2003 WL 366574 (N.D. Ill. Feb. 19, 2003)

Addendum G:    *Brown v. Latin American Music Co., Inc.*, No. 05-1242, 2006 WL 2059606 (D.P.R. July 21, 2006)

Addendum H:    *Shea v. Fantasy Inc.*, No. 02-02644, 2003 WL 881006 (N.D. Cal. Feb. 27, 2003)

Addendum I:    *Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, No. 95-0246, 1997 WL 158364 (S.D.N.Y. Apr. 2, 1997)

Addendum J:    *Pannonia Farms, Inc. v. USA Cable*, No. 03-7841, 2004 WL 1276842 (S.D.N.Y. June 8, 2004)

Addendum K:    *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, No. 02-0425, 2003 WL 1522941 (E.D. La. Mar. 20, 2003)

Addendum L:    *Sunham Home Fashions, LLC v. Pem-American, Inc.*, No. 02-6284, 2002 WL 31834477 (S.D.N.Y. Dec. 17, 2002)

Addendum M:    *Hart v. Sampley*, No. 91-3068, 1992 WL 336496 (D.D.C. June 24, 1991)

Addendum N:    *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, No. 04-541, 2006 WL 641524 (D. Utah Mar. 10, 2006)

Addendum O:    *The SCO Group, Inc. v. Novell, Inc.*, No. 04-00139, 2004 WL 4737297 (D. Utah June 9, 2004)

Addendum P:    *3M Innovative Prop. Co. v. Barton Nelson, Inc.*, No. 02-3591, 2003 WL 22989077 (D. Minn. Dec. 12, 2003)

Addendum Q:    *Medtronic, Inc. v. Guidant Corp.*, No. 00-1473, 2003 WL 21181103 (D. Minn. May 16, 2003)

Addendum R:    *Armento v. City of Ashville Downtown Dev. Office*, No. 94-57, 1996 WL 677119 (W.D.N.C. Mar. 26, 1996)

Addendum S:    *In re Papst Licensing, GmbH Patent Litig.*, Nos. MDL 1298, 99-3118, 2000 WL 1859013 (E.D. La. Dec. 19, 2000)

Addendum T:    *Forest Labs., Inc. v. Abbott Labs.*, No. 96-159, 1999 WL 33299123 (W.D.N.Y. June 23, 1999)

Addendum U:    *Moore v. Pyrotech Corp.*, No. 92-3404, 13 F.3d 406 (Table), 1993 WL 513834 (10th Cir. 1993)

Addendum V:    *Konstant Prods. Inc. v. Frazier Indus. Co., Inc.*, No. 91-4491, 1993 U.S. Dist. LEXIS 7957 (N.D. Ill. June 7, 1993)

Addendum W:    *Energetec Sys., Inc. v. Kayser*, No. 84-10611, 1986 WL 8058 (N.D. Ill. July 17, 1986)

Addendum X:    *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, No. 05-380, 2005 WL 3263157 (D. Utah Dec. 1, 2005)

Addendum Y:    *Vanover v. Altec Indus., Inc.*, 82 Fed. Appx. 8 (10th Cir. 2003)

Addendum Z:    *Stover v. Eagle Prods., Inc.*, No. 93-4047, 1996 WL 172972 (D. Kan. Mar. 19, 1996)

Addendum AA:    *Carlson v. C.H. Robinson Worldwide, Inc.*, Nos. 02-3780 & 02-4261, 2005 WL 758601 (D. Minn. Mar. 30, 2005)

Addendum BB:    *Hutton Contracting Co., Inc. v. City of Coffeyville*, No. 02-4130, 2004 WL 2203449 (D. Kan. Sept. 24, 2004)