# Addendum A – Part 1

## Addendum A

### IBM's Undisputed Facts; IBM's Claim for Declaratory Judgment of Non-Infringement

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 1. | In 1991, an undergraduate student at the University of Helsinki by the name of Linus Torvalds, set out to create a new, free operating system, which later became known as "Linux". (Ex. 272 ¶ 3; Ex. 398 at SCO1355598.) | **Disputed** <br><br> SCO disputes IBM's assertion that Linus Torvalds set out to create a "new" operating system. Rather, Mr. Torvalds based Linux on the Minix operating system, which he describes as a "Unix variant." (Ex. 169 at 61.). Mr. Torvalds then used the manuals for the Sun Microsystems version of Unix for his early development of the operating system: "That's how early development was done. I was reading the standards from either the Sun OS [Operating System] manual or various books, just picking off system calls one by one and trying to make something that worked." (Id. at 82.). <br><br> Incorporating pre-existing, copyrighted material into Linux does not make such material "free." For instance, the UNIX material covered by SCO's copyrights and incorporated into Linux is not "free." | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 2. | Mr. Torvalds began developing the core of the operating system, known as the "kernel", and some months later posted news of his project to Internet newsgroups, inviting volunteers to assist him in his efforts. (Ex. 272 ¶ 4; Ex. 398 at SCO1355598.) | **Disputed** <br><br> SCO disputes that Mr. Torvalds "developed" much of the Linux material, because such "development" consisted of appropriating material from Minix and other UNIX-like operating systems, at least as to the material in dispute in this case. SECTION REDACTED <br><br> (See Disputed Facts # 1, 283-85; | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 3. | With the Internet providing for a distributed collaboration, other programmers joined to create code making up the kernel. (Ex 272 ¶ 5; Ex. 398 at SCO1355598.) Mr. Torvalds directed the collaboration to a version 1.0 release of the Linux kernel in 1994 and has continued to maintain the kernel development since. (Ex. 272 ¶ 5; Ex. 398 at SCO1355598.) | **Disputed** | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| | | SCO disputes that Mr. Torvalds and/or other Linux contributors "created" much of the material in Linux, as opposed to copying such material from pre-existing sources, to the extent Linux versions contain the material in dispute in this case as described in SCO's expert Dr. Thomas A. Cargill's expert reports. (See Disputed Facts # 1-2, 283-85.). | |
| 4. | In the years that followed, thousands of developers, including developers at SCO, contributed to the further development of Linux. (See Ex. 5 ¶ 45; Ex. 364; Ex. 105 at 15, 22, 26.) | **Disputed/Unsupported** | Undisputed that developers at SCO have contributed to the development of Linux related products. |
| | | It is undisputed that developers at SCO have contributed to the development of Linux-related products. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO does not support SCO's statement. The new expert report of Thomas Cargill (SCO Ex. 11) referenced is untimely. |
| | | However, neither The Santa Cruz Operation, Inc. ("Santa Cruz"), Caldera International, Inc. ("Caldera International"), nor SCO have contributed or intended to contribute any of the material at issue in this litigation to Linux. (Ex. 269 at 10-14; Ex. 233 ¶ 4, 6, 13 ("Santa Cruz never distributed a Linux-based software product."); Ex. 11 ¶ 17 ("I have mechanically reviewed the history of Linux kernel patches from Linux 1.0 to Linux 2.6.17 searching for any language indicating that The Santa Cruz Operation, Inc. issued a license to material under the GNU General Public License ("GPL") or any other "open source" license prior to May 2001, or that Caldera International, Inc. or The SCO Group, Inc. released material under the GPL or any other "open source" license after May 2001. I found no such language in any Linux files."); Ex. | The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

2

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | 6 at 11, 14). | |
| | IBM's sources do not support the assertion that SCO, or any other entity that held copyrights to UNIX, contributed to Linux. Neither Caldera, Inc. nor Caldera Systems, Inc. ("Caldera Systems") held any copyrights to UNIX prior to the 2001 merger that created Caldera International. (See Ex. 269 at 9; Disputed Facts # 9, 34-37, 104.). | |
| | **IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 45:** The cited source does not support the assertion that SCO "contributed to the further development of Linux." Rather, the cited source supports the assertion that IBM contributed source code to Linux, and denies all other allegations, including allegations that SCO distributed IBM's contributions under the GNU General Public License ("GPL"). | |
| | **IBM Ex. 105 (Caldera Systems, Inc.'s October 2000 Form 10-K/A) at 15, 22, 26:** The cited source refers to Caldera Systems, Inc. ("Caldera Systems"), which did not own any copyrights in UNIX. (See Disputed Facts # 9, 34-37, 104.). The cited source shows that Caldera Systems sought to deliver Linux-related products (p. 15), would be forced to contribute to the development of Linux if independent third-parties ceased such development (p. 22), and competed with Linux providers (p. 26). The source does not mention SCO and does not support the assertion that either SCO or Caldera Systems contributed source code to the Linux kernel or any non-proprietary, Linux-related software. Rather, the source stresses that | |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | "most of the components of [Caldera Systems'] software offerings are developed by independent parties'" (p. 26).  IBM Ex. 364 (SCO website): The cited source shows only vague support for limited contribution by SCO to elements of Linux that do not constitute part of the infringing Linux material. The cited source does not specify a time frame for the asserted actions. | |
| 5. | Linux is an "open source" program, which means, among other things, that its source code is publicly available, royalty-free and users have the freedom to run, copy, distribute, study, adapt and improve the software. (Ex. 272 ¶ 6; Ex. 5 ¶ 22; Ex. 221 ¶ 7.) | **Disputed/Unsupported**  SCO disputes that Linux is a proper "open source" program, because it contains material that has not been properly licensed by the owner(s) of the copyright in such material. In particular, neither SCO nor any other UNIX copyright holder properly released the infringed UNIX material at issue in this case under the GPL.  The GPL only applies to material knowingly and properly licensed under the GPL by the copyright holder. Specifically, § 0 of the GPL, provides that, "This License applies to any program or other work which contains a notice placed by the copyright holder saying that it may be distributed under the terms of this General Public License." IBM Ex. 128 at 3.  One of the limitations of the GPL requires that, "You may copy and distribute verbatim copies of the Program's source code . . . provided that you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty . . ." IBM Ex. 128 § 1. | Deemed Admitted:  Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.  The material referred to by SCO does not support SCO's statement.  The new expert report of Thomas Cargill (SCO Ex. 11) referenced is untimely.  The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

4

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | The GPL, further provides that, "[M]ere aggregation of another work not based on the Program with the Program (or with a work based on the Program) on a volume of a storage or distribution medium does not bring the other work under the scope of this License." IBM Ex. 128 §.<br><br>Failure to comply with the limitations of the GPL terminates the license: "You may not copy, modify, sublicense, or distribute the Program except as expressly provided under this License. Any attempt otherwise to copy, modify, sublicense or distribute the Program is void, and will automatically terminate your rights under this License. "IBM Ex. 128 § 4. Section 7 of the GPL further provides that, "If you cannot distribute so as to satisfy simultaneously your obligations under this License and any other pertinent obligations, then as a consequence you may not distribute the program at all." IBM Ex. 128 § 7.<br><br>Linux does not contain the appropriate copyright notices from the copyright owners because they were never provided. Andy Nagle states in his declaration that:<br><br>In my position as Engineering Program Manager for Caldera, I was not aware of, nor did I authorize, the inclusion in any Caldera Linux distribution of any UNIX materials or any notice or other language indicating that Caldera granted any rights to those materials under the GPL or under any other "open source" license. It would have been my job to review and authorize for Caldera the inclusion of such materials and language, and it would have been incumbent on | |

5

| IBM's Statement | SCO's Response | IBM's Reply |
| --- | --- | --- |
| | the engineering project managers at Caldera to seek my authorization. Furthermore, the inclusion of UNIX materials or such language would have violated Caldera's policy prohibiting the open sourcing of UNIX technology.<br><br>Ex. 233 ¶ 6.<br><br>**SECTION REDACTED**<br><br>Neither AT&T, Unix Systems Laboratories ("USL"), Novell, Inc. ("Novell"), Santa Cruz, Caldera International, or SCO have placed a notice on or in any products indicating that they grant the rights "to run, copy, distribute, study, adapt and improve" the infringing UNIX material in Linux without royalties, under the terms of the GPL or any other "open source" license, nor did they ever intend to grant such rights. (Ex. 11 at 17; Ex. 233 ¶¶ 4, 16, 23; Ex. 269 at 10-14; Ex. 6 at 11, 14.). Placement of such a notice by the copyright holder in the UNIX material is a pre- | |

6

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | requisite to granting such rights in the UNIX material under the GPL. (See IBM Ex. 128 § 0.).<br><br>IBM has put forth no evidence that any UNIX copyright holder contributed the infringing Linux material to Linux or placed an appropriate GPL notice on Linux, or that other Linux contributors actually owned the copyright in the material they contributed. For instance, Mr. Torvalds admits to having incorporated system calls taken from a Unix licensee – Sun Microsystems. (See Disputed Facts # 1-2.). Yet, IBM has put forth no evidence showing that Sun granted rights to use such material in Linux.<br><br>Furthermore, whether SCO or any other UNIX copyright holder has granted such rights, to whom such rights were granted, what conditions were imposed on such rights, and whether use of the infringing Linux material complies with such conditions, are all disputed legal conclusions, not "Disputed Facts."<br><br>**IBM Ex. 5 (SCO's Answer to IBM's Second Amended Counterclaims) ¶ 22:** The cited source does not support the assertion that such rights have been granted in all of Linux, and does not specify any particular portion of Linux in which such rights have been granted.<br><br>**IBM Ex. 272 (Declaration of Linus Torvalds) ¶ 6; Ex. 221 (Declaration of Ransom Love) ¶ 7:** The cited sources constitute legal conclusions asserted without any supporting factual basis. | |

7

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 6. | Linux not only adheres to open standards, but is also built and maintained by a worldwide group of engineers who share the common goal of making open systems and open source ubiquitous. (Ex. 272 ¶ 7; Ex. 106 at 3; Ex. 221 ¶ 8.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's statement to the extent IBM intends "open standards" or "open systems" to mean that copyrighted material incorporated in Linux or standards can be used freely and without royalty payments, in the absence of a license from the copyright holder, such as SCO. Neither Linux, nor any standards incorporating the infringed UNIX material, are "open" in the sense that the term "open" indicates that rights to such material have been properly granted by the copyright holders in such material. (See Disputed Fact # 5.).<br><br>Material does not lose copyright protection merely through incorporation in to documents that are "standards." See, e.g., American Dent. Assn. v. Delta Dent. Plans Assn., 126 F.3d 977 (7th Cir. 1997).<br><br>**IBM Ex. 272 ¶ 7; Ex. 106 at 3; Ex. 221 at 8:** These sources constitute legal conclusions without any supporting factual basis. | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO does not support SCO's statement. The new expert report of Thomas Cargill (SCO Ex. 11) referenced is untimely.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

8

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 7. | Anyone can freely download Linux and many Linux applications and modify and redistribute them with few restrictions. (Ex. 272 ¶ 8; Ex. 107 at 5; Ex. 221 ¶ 9.) | **Disputed/Unsupported**<br><br>With respect to the infringing Linux material at issue in this case, SCO disputes, and IBM has cited no evidence supporting, that such activities are "free," in the sense that rights to use such material without royalties have been properly granted by the copyright holders in UNIX material contained in Linux. (See Disputed Fact # 5.)<br><br>**IBM Ex. 272 (Torvalds Decl.) ¶ 8; Ex. 107 (2000 Caldera Systems, Inc. Form 10/K) at 5; Ex. 221 (Love Decl.) ¶ 9:**<br><br>These sources constitute legal conclusions without any supporting factual basis. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO does not support SCO's statement. The new expert report of Thomas Cargill (SCO Ex. 11) referenced is untimely.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 8. | The Linux kernel is distributed under the GPL, which provides that a person receiving code under the GPL "may copy and distribute verbatim copies of the Program's source code" and "modify [their] copy or copies of the Program or any portion of it". (Ex. 272 ¶ 9; Ex. 128 §§ 1, 2; Ex. 107 at 24; Ex. 221 ¶ 10.) | **Disputed/Unsupported**<br><br>However, neither The Santa Cruz Operation, Inc. ("Santa Cruz"), Caldera International, Inc. ("Caldera International"), nor SCO have contributed or intended to contribute any of the material at issue in this litigation to Linux. (Ex. 269 at 10-14; Ex. 233 ¶ 4, 6, 13 ("Santa Cruz never distributed a Linux-based software product.");<br><br>SECTION REDACTED | **Deemed Admitted:** Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that Linux is distributed under the GPL, which features the language quoted in IBM's paragraph.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

9

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | SECTION REDACTED                 . Ex. 6 at 11, 14).

SCO does not dispute that much of the Linux kernel is "distributed" under the GPL. SCO disputes IBM's assertion to the extent it suggests that any particular element of Linux has been properly licensed under the GPL. IBM has cited no evidence showing that any particular element of Linux has been properly licensed under the GPL. (See Disputed Fact # 5.). Furthermore, none of the infringed UNIX material has been properly licensed under the GPL. (Id.).

**IBM Ex. 272 (Torvalds Decl.) ¶ 9; Ex. 107 (2000 Caldera Systems 10/K) at 24; Ex. 221 (Love Decl.) ¶ 10:** The cited sourced constitute legal conclusions without supporting factual basis.

**IBM Ex. 128 (GNU General Public License) §§ 1-2.** The cited source does *not* support the assertion that rights in the infringed SVr4 material, or any other specific portion of Linux, have been properly granted under the GPL. See Disputed Fact # 5. | |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 9. | In 1993, not long after the advent of Linux, Novell purchased from AT&T its remaining interest in UNIX System Laboratories ("USL"), which then held AT&T's rights to the UNIX operating system. Among the assets acquired by Novell were certain UNIX copyrights, including the System V Works. (Ex. 240 ¶ 9; Ex. 108 at 2.) | **Disputed/Unsupported**<br><br>SCO disputes this assertion to the extent IBM seeks to exclude certain rights from the transfer of UNIX rights from USL to Novell. IBM's cited sources indicate that USL held all of AT&T's UNIX-related assets, and that Novell purchased all of USL's assets, as opposed to "certain UNIX copyrights." (See IBM Ex. 240 ¶ 9; IBM Ex. 108 at 2.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 10. | After the acquisition, Novell participated in an industry consortium with other UNIX vendors, including IBM, to draft a single unified specification of the UNIX operating system. (Ex. 238 ¶ 8.) The consortium was called X/Open, now owned by the "The Open Group" to which Novell granted exclusive control of the UNIX trademark in 1994. (Ex. 382; Ex. 437.) | **Disputed/Unsupported**<br><br>Novell did not participate in an effort to draft a specification for the UNIX operating system. Rather, Novell participated in an effort to draft a specification for UNIX Systems Services, not an entire "operating system." (See IBM Ex. 238 § 8; IBM Ex. 382 at 3.).<br><br>**IBM Ex. 382; IBM Ex. 437 (1994 X/Open Letter Agreement):** The cited sources do not support the assertion that the X/Open "consortium" is the same entity as "The Open Group," nor do they support the assertion that Novell "granted exclusive control of the UNIX trademark" to either entity. | **Deemed Admitted:** SCO's response does not create a genuine issue of fact in that the facts in the referenced paragraph are background and no point purportedly controverted is material to IBM's motion. |

11

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 11. | As a member of X/Open, Novell helped to draft a UNIX specification called "Spec 1170" (Ex. 238 ¶ 10), which was published in 1994 by The Open Group as the "Single UNIX Specification, Version 1". The Single UNIX Specification ("SUS") is a comprehensive set of operating system-related application programming interface specifications adopted by the The Open Group as the single definition for UNIX systems. (Ex. 382.) | **Disputed/Unsupported**<br><br>SCO disputes that "Spec 1170" and the Single UNIX Specification ("SUS") are the same documents or identical. The SUS contains material that was not in Spec 1170. (See IBM Ex. 382 at 5 ("There were 1170 interfaces in the complete specification when the work was done....There are now more than 1170 interfaces in the specification as the review process shaped the document accordingly.")). Spec 1170 is a specification that governs certain "Common APIs for UNIX-based Operating Systems." IBM Ex. 437. IBM has failed to submit a copy of Spec 1170, failed to show that the material in any particular version of the SUS was also in Spec 1170, and has failed to specify the differences between the two documents.<br><br>IBM's cited sources also fail to support the assertion that the SUS was published by The Open Group. (See Disputed Fact # 10.). | Deemed Admitted. The material referred to by SCO actually supports IBM's statement. The document cited by SCO (IBM Ex. 382 at 5) clearly states that the work on Spec 1170 "progressed through 1994 and culminated in the publication of the Spec 1170 work as the Single UNIX Specification in October 1994". The statement in this 2001 document that there are now more than 1170 interfaces in the more recent versions of the SUS does not controvert IBM's stated fact. Nothing in SCO's statement specifically controverts the undisputed facts pertaining to IBM's description of the SUS. |

12

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 12. | Nearly all of the SUS Material was included in this first version of the SUS (Items 183-84, 207-31), which later evolved to include all of the SUS Material in its second version. (Ex. 214 (Ex. 3).) | **Disputed/Unsupported**<br><br>"SUS Material"<br><br>SECTION REDACTED<br><br>This indicates that the material in Items 205-06 was not in Spec 1170 either.<br><br>The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. (See Disputed Fact # 11.). Any alleged inclusion of the infringed SV4 material in the SUS is immaterial, because IBM has only a purported to hold a license to use material in Spec 1170. (See Disputed Fact # 13.). | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed facts that all of the material cited in Items 205-08, 210-11, 213, 215-20, 222, 224, 226-28, and 231 is in the SUS. |
| 13. | Like other X/Open members, Novell held intellectual property rights in the SUS ("Spec 1170") but "grant[ed] to X/Open a non-exclusive, perpetual, worldwide, royalty-free, paid-up, irrevocable licence [sic] to prepare derivative works and to use, execute, reproduce, display and perform" the SUS. (Ex. 238 ¶¶ 10-11; Ex. 437.) | **Disputed/Unsupported**<br><br>SCO disputes this fact to the extent IBM reads the cited license to cover use of any material in Linux. Any license granted by Novell to X/Open was limited to reproduction of material in a specification, not for use as source code in a competing operating system. (IBM Ex. 437 § 1 (Limiting Novell's grant of rights to "the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed facts that: (a) Novell held intellectual property rights in Spec 1170; and (b) Novell granted to X/Open a license to the SUS, with the language quoted in IBM's referenced paragraph. The material referred to by SCO actually supports IBM's statement. The document cited by SCO (IBM Ex. 382 at 5) clearly states that the work on Spec 1170 "progressed through 1994 and |

13

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | Specifications therefrom."). | culminated in the publication of the Spec 1170 work as the Single UNIX Specification in October 1994". The statement in this 2001 document that there are _now_ more than 1170 interfaces in the more recent versions of the SUS does not controvert IBM's stated fact. |
| | The license to X/Open was "intended to grant X/Open sufficient rights to modify, print and distribute the Specification." IBM Ex. 437. The license specifically granted rights "all for the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open Specifications therefrom." Ex. 437. Spec 1170 provides that, "Nothing in this Letter Agreement grants any right to claim that any derivative work of an X/Open specification is the official X/Open Specification with the express written consent of X/Open." IBM Ex. 437 § 4. Spec 1170 also provides that, "The Copyright Licensors and their third party suppliers retain ownership of all intellectual property in the Specification and nothing herein transfers or assigns any ownership therein to X/Open." IBM Ex. 437, § 1 (emphasis added). | |
| | Second, SCO disputes IBM's assertion that Spec 1170 and the SUS are the same. The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. Any alleged inclusion of the infringed SV4 material in the SUS is immaterial, because IBM has only asserted a license to use material in Spec 1170. (IBM Ex. 437; Disputed Facts # 11-12.). | |
| | **IBM Ex. 238 (Srinivasan Decl.) ¶¶ 10-11; IBM Ex. 437 (1994 X/Open Letter Agreement):** | |
| | Neither source shows that Novell was a | |

14

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | "member" of X/Open. | |
| 14. | X/Open, in turn, granted all of the participants in X/Open, including IBM, "a non-exclusive, perpetual, worldwide, royalty-free, paid-up, irrevocable license to prepare derivative works and to use, execute, reproduce, display and perform [the SUS] and such derivative works". Thus, IBM has a license to those materials identified in the SUS, and such derivative works as subsequent versions, including all of the SUS Material. (Ex. 238 ¶ 11; Ex. 437.) | **Disputed/Unsupported**<br><br>SCO disputes that X/Open granted a license to IBM to use any UNIX material in Linux or any other operating system. X/Open did not and could not have granted IBM any right to use any infringed UNIX material in Linux, because X/Open had no such right to grant. Any license granted by Novell to X/Open was limited to reproduction of material in a specification, not a competing operating system. (IBM Ex. 437 § 1 (Limiting Novell's grant of rights for "the purpose of facilitating the X/Open Fast Track Process for Spec 1170 and to derive the X/Open Specifications therefrom."); Disputed Fact # 13.).<br><br>SCO disputes IBM's assertion that Spec 1170 and the SUS are the same. The SUS contains material that was not in Spec 1170, IBM fails to show that the documents contain the same material, and IBM fails to specify the differences between the SUS and Spec 1170. Any alleged inclusion of the infringed SVr4 material in the SUS is immaterial, because IBM's has only asserted a license to use material in Spec 1170. (IBM Ex. 437; Disputed Facts # 11-12.).<br><br>**IBM Ex. 238 (Srinivasan Decl.) ¶ 11; IBM Ex. 437 (1994 X/Open Letter Agreement):**<br><br>Neither source supports the assertion that Novell or X/Open granted any rights to IBM in "the SUS." Both sources are limited to Spec 1170. (See Disputed Facts # 11-13.). | Deemed Admitted.  The material referred to by SCO does not support SCO's statement that X/Open's rights to Spec 1170 did not allow X/Open to implement the specification by allowing others to comply with it.<br><br>The material referred to by SCO actually supports IBM's statement.  The document cited by SCO (IBM Ex. 382 at 5) clearly states that the work on Spec 1170 "progressed through 1994 and culminated in the publication of the Spec 1170 work as the Single UNIX Specification in October 1994".  The statement in this 2001 document that there are now more than 1170 interfaces in the more recent versions of the SUS does not controvert IBM's stated fact |

15

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 15. | At approximately the same time, Novell participated in another UNIX standards setting committee, the Tool Interface Standards ("TIS") Committee, along with IBM and Santa Cruz, among others. (Ex. 238 ¶ 6; Ex. 439 at iii; Ex. 215 ¶ 101.) | **Undisputed/Unsupported** SCO does not dispute that Novell interacted with the TIS Committee, but IBM's cited documents only support the assertion that Novell had become a member of the TIS Committee by May 1995. | Undisputed. |
| 16. | In May 1995, the TIS Committee published ("The Executable and Linking Format (ELF) Specification, version 1.2", (Ex. 439; Ex. 238 ¶ 6.) The ELF Specification created a standard format for compiled binary files, by explicitly requiring the particular organization and layout of the information in the files. (Ex. 214 ¶¶ 35-36.) | **Disputed/Unsupported** SCO disputes that the ELF Specification "created" a standard format. Neither the TIS Committee, the Portable Formats Specification, version 1.1 ("TIS Specification, version 1.1") (IBM Ex. 438), nor the Executable and Linking Format (ELF) Specification, version 1.2 ("TIS Specification, version 1.2") (IBM Ex. 439) "created a standard format for compiled binary files."<br><br>SECTION REDACTED | Deemed Admitted: SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The expert report of Thomas Cargill (SCO Ex. 276) referenced does not meet the requirements of Fed. R. Evid. 702 and is not based on personal knowledge, and Dr. Cargill is therefore not competent to testify as to the matter stated. The portions of the Deposition of Dr. Kernighan (SCO Ex. 22) referred to by SCO do not support SCO's statement. |

16

| # | IBM'S Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 17. | All of the ELF Material is either included in the ELF Specification, or an implementation of the ELF format pursuant to the ELF Specification. (Ex. 214 ¶¶ 43-44, 47; Ex. 215 ¶¶ 99-100.) | **Disputed/Unsupported**<br><br>SCO disputes that the TIS Specification contains all the infringing ELF Material, and IBM's cited sources do not support such an assertion.<br><br>SECTION REDACTED<br><br>Ex. 22 at 202:14-203:3;<br><br>SECTION REDACTED<br><br>Disputed Fact # 18.).<br><br>It is not clear what IBM means by "an implementation of the ELF format pursuant to the ELF Specification." Any implementation of ELF that contains all of the ELF material in Linux is not "pursuant" to the TIS Specification. | **Deemed Admitted:** The material referred to by SCO actually supports IBM's statement. SCO Ex. 276 at 13 (Cargill Report) states, "the TIS Specification itself refers to the SVABI '', thus incorporating the SVABI into the TIS by reference. Thus, IBM's statement that the ELF Material is an implementation of the ELF format pursuant to the ELF Specification is not controverted by SCO's response.<br><br>Furthermore, SCO's statement only purports to dispute (without support) whether ELF Material was literally included in the TIS Specification, not whether the ELF Material was an implementation of the ELF format pursuant to the ELF Specification. |
| 18. | The TIS Committee, of which Novell was a member, granted to all a royalty-free license to use the information disclosed in the specification. The ELF | **Disputed/Unsupported**<br><br>First, the TIS Committee did not grant a license to | **Deemed Admitted:** The material referred to by SCO does not support SCO's statement. For further explanation, see the reply memorandum to which this addendum is attached. |

17

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 1 | Specification provides: "The TIS Committee grants you a non-exclusive, worldwide, royalty-free license to use the information disclosed in the Specification to make your software TIS-compliant". Thus, IBM has a license to all of the ELF Material. (Ex. 238 ¶ 7; Ex. 438 at i; Ex. 439.) | IBM covering use of the ELF material in Linux.<br><br><br><br>SECTION REDACTED | IBM notes that SCO's quotations of the TIS documentation contain emphasis that does not appear in the original (not marked by SCO), as well as transcription errors.<br><br>See IBM's response to #17 regarding the TIS ELF Specification's incorporation of the SVABI. |

18

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | SECTION REDACTED | |
| | The disputed ELF code in Linux contains no attribution of copyright to SCO. Cargill Dec. Furthermore, the ELF code in Linux was not derived from the TIS Specification. Ex. 276 at 10, 11, 24-26.<br><br>Accordingly, the TIS Committee had no authority to grant rights to IBM that cover the use of the ELF material in Linux. IBM has not put forth factual evidence showing that use of the infringing ELF material in Linux complies with the above-mentioned conditions and limitations.<br><br>Second, the ELF material in Linux was copied from the SVABI, in an attempt to comply with the | |

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | SVABL (See Disputed Fact # 18.) | |
| | | **SECTION REDACTED** | |
| | | · IBM's cited sources do not support such an assertion. | |
| | | Indeed, some of the ELF material was contributed to Linux before the publication of the TIS Specification. (See Disputed fact # 65.). Some of the infringing ELF material in Linux was not published in the TIS Specification. (Disputed Fact # 17.). | |
| | | **SECTION REDACTED** | |
| 19. | In the same spirit, Novell, in or around 1994, became involved with Linux. Novell undertook a project known as "Corsair" to create an Internet-friendly desktop operating system using Linux as its core to allow its customers to better and more easily integrate and manage network access on its networking software. (Ex. 221 ¶ 14; Ex. 440.) | **Undisputed** Undisputed, but Novell never sold or otherwise distributed the Corsair product, or any other Linux Product. Santa Cruz never distributed a Linux product. (Ex. 233 ¶ 4). IBM's cited sources show that Novell never created the Linux desktop operating system that was the focus of the Corsair project, which was terminated in 1994. Indeed, Linus Torvalds states that Novell was "not very serious at all" about Linux in this timeframe. (Ex. 169 at 130.). | Undisputed. |

20

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 20. | During the Corsair project, Novell worked to develop a commercially supported desktop distribution of Linux bundled with commercial components that would compete with Microsoft Windows. (Ex. 221 ¶ 15.) During its development, the members of the Corsair project team started to work with Linux, contributing code back to the Linux development team and to other projects related to Linux. (Ex. 440.) | Undisputed.<br><br>Undisputed, but See SCO disputes IBM's assertion to the extent it implies that Novell ever sold or otherwise distributed the Corsair product, or any other Linux Product. Santa Cruz never distributed a Linux product. (Undisputed but see Disputed Fact # 19.). | Undisputed. |
| 21. | During the Corsair project, members of the team conceived of the idea of developing a commercially supported desktop distribution of Linux bundled with commercial components that would compete with Microsoft Windows. (Ex. 221 ¶ 15; Ex. 440.) However, the project was terminated before the members of Corsair could realize the goal of creating such a desktop Linux operating system. (Ex. 221 ¶ 15.) | Undisputed.<br><br>Undisputed, but See SCO disputes IBM's assertion to the extent it implies that Novell ever sold or otherwise distributed the Corsair product, or any other Linux Product. Santa Cruz never distributed a Linux product. (See Undisputed Fact # 19.). | Undisputed. |

21

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 22. | Shortly after Novell terminated Corsair, participants in the project, including Ransom Love, left Novell to form Caldera, Inc., one of SCO's predecessors. (Ex. 221 ¶ 16; Ex. 107; Ex. 440; Ex. 191 ¶ 6.) | **Undisputed.**<br><br>Undisputed, but Caldera, Inc. is not a "predecessor" of SCO to the extent that term could be construed as making the past actions of Caldera, Inc. attributable to SCO for purposes of determining the actions of the copyright holder of UNIX or indicating that Caldera, Inc. had the authority to grant others rights to use the infringed SVr4 material. Caldera, Inc. never held copyrights to the infringed UNIX material. (Ex. 269 ¶ 9; Disputed Fact # 4.) | Undisputed. |
| 23. | Caldera, Inc. was formed to develop and market software based on the Linux operating system and to provide related services enabling the development, deployment and management of Linux-specialized servers. (Ex. 221 ¶ 17; Ex. 107 at 6, 31; Ex. 191 ¶¶ 7-11; Ex. 176 ¶ 4.) | **Undisputed.**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO for purposes of determining the actions of the copyright holder of UNIX, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | Undisputed. |

22

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 24. | Caldera, Inc. was the first company to invest heavily in the establishment of Linux as an acceptable business solution. (Ex. 221 ¶ 18; Ex. 441.) | **Undisputed** | Undisputed. |
| | | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. | |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | |

23

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 25. | Continuing the work done by Novell on Project Corsair, Caldera, Inc. developed a Linux desktop operating system, which it called "Caldera Network Desktop", and delivered it to market in 1995. (Ex. 221 ¶ 19; Ex. 107 at 8; Ex. 193 ¶ 8; Ex. 242 ¶ 6.) | **Undisputed/Unsupported** Undisputed/unsupported, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). IBM's cited sources do not indicate that the Linux products created by Caldera, Inc. were created through any affiliation with Novell, or that Novell transferred any rights or copyrights to Caldera, Inc. (See Disputed Facts # 4, 22.). | Undisputed. |

24

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 26. | Caldera Network Desktop was based on the Linux 1.2.13 kernel and was distributed under the GPL. (Ex. 221 ¶ 20.) The GPL provides in part: You may modify . . . [Linux] or any portion of it . . . and copy and distribute such modifications or work . . . provided that you . . . cause any work that you distribute or publish, that in whole or in part contains or is derived from [Linux] . . . to be licensed as a whole at no charge to all third parties under the terms of this License. Each time you redistribute [Linux] . . . the recipient automatically receives a license from the original licensor to copy, distribute or modify [Linux] subject to these terms and conditions. (Ex. 128 §§ 2, 6.) | **Disputed** SCO disputes that any aspect of Caldera Network Desktop containing infringed SVr4 material was properly licensed under the GPL. (See Disputed Fact # 4-5, 22.). SCO also disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed facts that: (a) Caldera Network Desktop was based on the Linux 1.2.13 kernel; (b) Caldera Network Desktop was distributed by Caldera accompanied by GPL language; and (c) the language of the GPL is properly quoted in the referenced paragraph. |
| 27. | The 1.2.13 Linux kernel on which Caldera Network Desktop was based included SUS Material, Streams Material and ELF Material claimed by SCO, including code from all but three of the files that contain the Linux Code (Items 150-53, 156-57, 159, 160-64, 183-84, 208-10, 212, 218, 220-21, 223, 228, 230-31, 272). (Ex. 226 ¶ 17.) | **Disputed/Unsupported/Incomplete** First, SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.) | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statement fails to identify material facts of record because it refers to and relies upon material not specifically identified in its Final Disclosures. |

25

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | Second, IBM fails to specify which material from Items 152, 157, 162, 164, 183, 184, 208-210, 212-14, 218, 221, 223, 228, 230, 231, or 272 was purportedly contained in Caldera Network Desktop. | |
| | Third, IBM appears to acknowledge in the Declaration of Daniel Mazieres that Caldera Network Desktop did not contain any material from Items 158-61, 163, 205-07, 211, 215-17, 219-20, 222, 224-27, or 229. (IBM Ex. 226 ¶ 17). | |
| | Fourth, IBM's infringing Linux activity is not limited to the "Linux Code," which IBM limits to source code residing within the Linux kernel. The infringing Linux material consists of non-literal material, and material outside the Linux kernel, as well. (See IBM Ex. 215 at Ex. H at Items 150-164, 205-208, 211, 213, 215-223, 226-227, 229-230, 272; Exs. 274-76; Disputed Fact 187). | |
| | Fifth, IBM Ex. 226 constitutes a new expert report, from an undisclosed expert that SCO has not had the opportunity to depose, and cannot form the basis of summary judgment. SCO has not had sufficient opportunity to verify the truthfulness of the cited source. | |

26

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 28. | In addition, Caldera, Inc. helped and encouraged independent software vendors and manufacturers to move their programs to the Caldera Linux operating system environment in an attempt to provide the types of software that had been unavailable for Linux up to that point. (Ex. 221 ¶¶ 31, 33; Ex. 442.) | Undisputed<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | Undisputed. |
| 29. | To facilitate the porting of Linux to applications written primarily for UNIX-based operating systems, Caldera, Inc. worked to make its Linux products compliant with various UNIX standards, including the X/Open brand for UNIX 95 and the POSIX.1 specification. (Ex. 221 ¶ 32; Ex. 442.) POSIX ("Portable Operating System Interface") is a joint effort of the IEEE and The Open Group and defines a standard UNIX system interface. (Ex. 213 ¶ 51.) | Undisputed<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | Undisputed. |

27

| | IBM's Statement | SCO's Response | IBM's Reply | |
|---|---|---|---|---|
| 30. | Caldera, Inc. sought to make Linux and its Linux products as UNIX-like as it could in order to encourage use by UNIX enthusiasts. (Ex. 221 ¶ 34; Ex. 242 ¶¶ 9-11; Ex. 169 ¶ 13; Ex. 193 ¶ 11.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | Undisputed. | |
| 31. | To achieve compliance with UNIX standards for its Linux products, Caldera, Inc. hired software developers who had both UNIX and Linux experience. (Ex. 221 ¶ 35; Ex. 442.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). | Undisputed. | |

28

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 32. | Caldera, Inc. also acquired key technologies, such as certain of the SUS APIs (Application Programming Interfaces) and certain UNIX test suites, from Lasermoon of Wickham, England, to achieve certification for its Linux products on the X/Open brand for UNIX 95. Lasermoon was a Linux company that had pioneered Linux's migration towards X/Open standards and other UNIX certifications. (Ex. 221 ¶ 36; Ex. 442.) | Undisputed. <br><br> Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. <br><br> The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material (See Disputed Facts # 4, 22.). <br><br> **IBM Ex. 221 (Love Decl.) ¶ 36:** The cited source only supports the assertion that Caldera, Inc. *"made efforts to acquire"* the listed technologies and "intended" to achieve compatibility with the X/Open brand for its own Linux product. Although IBM states Caldera, Inc. "acquired key technologies," its declarant states that Caldera, Inc.'s relationship with Lasermoon "fell through because it could not deliver the UNIX certification test suites." (IBM Ex. 221 ¶¶ 36, 38, 40). | Undisputed. |

29

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 33. | Caldera, Inc. announced to the Linux community that it was "striving for UNIX certification for Linux by 1997", which it believed would "definitely help Linux on the road to success". (Ex. 221 ¶ 38; Ex. 442.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>IBM's cited sources only support the assertion that Caldera, Inc. intended to make its own Linux product compliant with UNIX standards, not that it ever did so, or that it sought to make the mainline, public Linux kernel compliant with such standards. | Undisputed. |
| 34. | Soon after Caldera, Inc. began its Linux business, Novell entered into an Asset Purchase Agreement, dated September 19, 1995 (the "APA"), with Santa Cruz, another of SCO's alleged predecessors in interest. (Ex. 239 ¶¶ 5-6; Ex. 123.) | **Undisputed** | Undisputed. |
| 35. | Under the APA, Novell sold, and Santa Cruz acquired, certain of Novell's UNIX assets, but, as provided in Schedule 1.1(b) of the APA, Novell retained "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare". (Ex. 123; | **Disputed/Unsupported/Incomplete**<br><br>Disputed in that Novell sold to Santa Cruz all rights and ownership in UNIX and UnixWare, including the copyrights. (See IBM Ex. 123 at Recital A, Schedule 1.1(a), §§ 1.1(a), 1.3(a)(i)).<br><br>Through a series of corporate acquisitions, the | Deemed Admitted: The material referred to by SCO either does not support SCO's statement or is irrelevant under the parol evidence rule. Thus, IBM's facts are not controverted with admissible evidence meeting the requirements of Rule 56. |

30

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| Ex. 239 ¶ 10.) | SCO Group owns all right, title, and interest in and to UNIX operating system source code, software, licensing agreements, and any legal claims arising out of those agreements. SCO also owns copyrights and additional licensing rights in and to UNIX. SCO owns holds copyright registrations for the following UNIX versions: 5th Edition, 6th Edition, 7th Edition, 32V, SVr3.0, SVr3.2, SVr4.0, SVr4.1, SVr4.1ES, SVr4.2. See Copyright Reg. Nos. TXU-510-028, TXU1-511-236, TXU-516-704, TXU-516-705, TX 5-750-269, TX 5-750-271, TX 5-750-268, TX 5-76-217, TX 5-762-234, TX 5-705-356, and TX 5-762-235. Exs. 258-268.<br><br>Disputed in that extrinsic evidence confirms that Santa Cruz had bought the business "lock, stock and barrel." (Ex. 136.) The extrinsic evidence confirms that SCO obtained Novell's UNIX copyrights through the APA. (Ex. 39 ¶¶ 6-12; Ex. 40 ¶¶ 5-10, 12-16; Ex. 38 ¶¶ 2-4, 5-16; Ex. 59; Ex. 6 ¶ 4; Ex. 50 ¶ 30; Ex. 17 ¶ 4).<br><br>Disputed in that Amendment No. 2 to the APA, which was executed on October 16, 1996, reiterates and confirms that the<br><br>**SECTION REDACTED**<br><br>(IBM Ex. 444 ¶ A.)<br><br>Disputed in that IBM internal documents confirm that it considered Santa Cruz the owner of the UNIX copyrights. SECTION REDACTED | |

31

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | **SECTION REDACTED** | |
| | (Ex. 59 (emphasis added).) IBM thus regarded SCO as the copyright owner, and indisputably did not regard Novell as the copyright owner, of the code. | |
| | Disputed in that, in conjunction with the transaction set forth in the APA, Santa Cruz and Novell entered into a Technology License Agreement, whereby Santa Cruz licensed back to Novell the UNIX technology. (IBM Ex. 123 § 1.6; Ex. 48 at 1-2.). The transaction would not have made sense if Santa Cruz did not own the copyrights. Ex. 50 ¶ 30; Ex. 17 ¶ 4. The transaction to license back the UNIX technology occurred because Santa Cruz had the rights and the UNIX technology. | |
| | For additional facts relating to chain of title and evidence of transfer of copyright See SCO's | |

32

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | opposition memorandum at 14-20 (¶¶ 50-70). | |
| 36. | Although SCO claims that a subsequent "Amendment No. 2" to the APA eventually transferred the retained copyrights, that amendment was at most a promise to assign whatever copyrights might be necessary for SCO to exercise its rights under the APA. (Ex. 444; Ex. 199 at 5-8.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes the assertion that Novell never transferred the UNIX copyrights to SCO, or failed to do so as part of the APA. *See* Disputed Fact # 35. IBM's assertion to the contrary is an erroneous legal conclusion, not an "undisputed fact."<br><br>Schedule 1.1(b) to the APA contained a list of assets excluded from the transfer to Santa Cruz. (IBM Ex. 123 at Schedule 1.(b)). Amendment No. 2 clarified the original agreement, eliminating any possible misconception that UNIX copyrights were excluded from the transfer, clarifying that "all copyrights . . . required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies" did transfer to SCO. (*Id.*; Disputed Fact # 35). | **Deemed Admitted:** The material referred to by SCO either does not support SCO's statement or is irrelevant under the parol evidence rule. Thus, IBM's facts are not controverted with admissible evidence meeting the requirements of Rule 56. |
| 37. | Amendment No. 2 does not identify any copyrights as necessary for SCO to exercise its rights under the APA. Nowhere does this amendment identify what copyrights are necessary under the APA. (Ex. 444.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's assertion that Amendment No. 2 does not identify the copyrights at issue. Amendment No. 2 *does* identify the copyrights at issue: those necessary for Santa Cruz to exercise its rights to UNIX and UnixWare. (Disputed Fact # 36.). Santa Cruz obtained all copyrights in the UNIX and UnixWare operating systems, along with all documentation and supporting material. (Disputed Facts # 35-36.) | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

33

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 38. | SCO asked Novell to transfer ownership of the retained copyrights to it prior to the commencement of this case. Novel declined to transfer the copyrights to SCO. (Ex. 239 ¶¶ 13-14.) | **Disputed/Unsupported** SCO disputes the assertion that it requested a transfer of UNIX copyrights from Novell in preparation for this litigation. Novell owned no UNIX copyrights it could have transferred after 1995, and SCO did not request such a transfer. (Ex. 165 ¶ 16; Ex. 9 ¶¶ 6-11.) SCO also disputes IBM's implication that Novell owned any UNIX copyrights after 1995. Novell did not own any UNIX copyrights it could have transferred after 1995. (See Disputed Facts 35-37.). **Ex. 239 (Declaration of Greg Jones on Behalf of Novell) ¶¶ 13-14:** The cited source does not support the assertion that Novell owned any UNIX copyrights that it could transfer after it already transferred them to Santa Cruz. (See Disputed Facts # 36-37.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

34

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 39. | At no point did SCO ever notify Novell that it needed any particular copyrights to exercise its rights under the APA. Novell never provided, and SCO never received, an assignment of the copyrights. (Ex. 123; Ex. 444; see Ex. 239 ¶¶ 14-15.) | **Disputed/Unsupported**<br><br>Santa Cruz did receive an assignment of Novell's UNIX copyrights. (See Disputed Facts # 34-37.) Caldera International, which later became SCO, received the UNIX copyrights through its acquisition of Santa Cruz. (See Disputed Fact # 104; Ex. 250.)<br><br>SCO disputes IBM's implication that Santa Cruz had some obligation to notify Novell regarding which copyrights were necessary to exercise its rights under the APA. Santa Cruz had no obligation to notify Novell regarding which copyrights were necessary to exercise its rights under the APA. (See IBM's Exs. 123, 444.)<br><br>None of IBM's cited sources support the assertion that SCO never notified Novell that is needed copyrights to exercise its rights under the APA. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 40. | Like Novell, Santa Cruz promoted an open UNIX systems platform. It worked with the The Open Group to assure continued conformance to open systems standards and participated in the TIS Committee. (Ex. 109 at 4.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that Santa Cruz supported "an open UNIX systems platform" or "open systems standards" to the extent such phrases could suggest the license- or royalty-free copying and distribution of copyrighted UNIX material. (See Disputed Facts # 5-7, 54.).<br><br>IBM's cited source does not support the assertion that Santa Cruz worked with The Open Group or participated in the TIS Committee. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. (IBM Ex. 109 at 4, "SCO continuously works with standards organizations such as The Open Group to assure continued conformance to open systems standards.") |
| 41. | While Santa Cruz was not a Linux company, it was aware of the development of Linux as a UNIX-like | **Disputed/Unsupported**<br><br>First, SCO disputes IBM's implication that any | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of |

35

| IBM's Statement: | SCO's Response: | IBM's Reply: |
|---|---|---|
| operating system. (Ex. 227 ¶ 21; Ex. 207 ¶ 22.) Santa Cruz recognized that Linux presented promising opportunities and decided to develop technologies to provide interoperability between Linux and its UnixWare and OpenServer operating systems. (Ex. 227 ¶¶ 21-32; Ex. 207 ¶ 23.) | pre-2001 "awareness" or actions of Santa Cruz regarding Linux is irrelevant to the current litigation, because the current litigation is based on Linux 2.4 and 2.6.<br><br>Linux 2.4 was released in January 2001, just months before Santa Cruz ceased to exist. (See Disputed Fact # 104; Ex. 110).<br><br>Linux 2.6 was released in December of 2003, after Santa Cruz ceased to exist and SCO had initiated this lawsuit. (See Disputed Fact # 104; Ex. 102.).<br><br>Second, SCO disputes IBM's assertion that Santa Cruz was aware of the presence of any copyrighted UNIX material in Linux prior to, at the earliest, October 1999, after IBM began its Linux activities. (See Disputed Facts # 85-86, 89.).<br><br><br>SECTION REDACTED<br><br><br>IBM Ex. 207 (Johnson Declaration) ¶¶ 22-23: | Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

36

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | The cited source gives no specific time frame for when Santa Cruz purportedly became aware of similarities between Linux and UNIX. | |
| | The cited source does not specify what type of "interoperability" Santa Cruz sought to achieve between Linux and UnixWare or Open Server. | |
| | **IBM Ex. 227 (McCrabb Decl.) ¶¶ 21-32:** The cited source gives no time frame for when Santa Cruz became aware of similarities between Linux and UNIX and does not specify what version of Linux Santa Cruz purportedly knew to be similar to UNIX. The cited source does not support the assertion that Santa Cruz knew of similarities between Linux and UNIX prior to "late 1999." | |
| | The cited source supports the assertion that Santa Cruz helped users of UnixWare run applications that were written for Linux, but not any other sort of "interoperability between Linux and its…operating systems." | |

37

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 42. | In 1996 Caldera, Inc. began shipping its second Linux-based operating system, a new 32-bit, Linux 2.x-based platform for extending local area networks ("LANs") to the home, branch office, remote user, Inter/intranet and embedded systems. (Ex. 221 ¶ 39; Ex. 445.) | Undisputed.<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | Undisputed. |

38

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 43. | Caldera, Inc. designed Caldera OpenLinux to be compliant with certain UNIX standards, including the X/Open brand for UNIX 95 and the POSIX.1 specification. (Ex. 221 ¶ 32; Ex. 442; Ex. 262 at SCO1269185-86.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>**IBM Ex. 221 (Love Declaration) ¶ 32; IBM Ex. 442 (Caldera Open Linux Announcement, May 23, 1996):**<br><br>The cited sources only support the assertion that Caldera, Inc. sought to make Caldera OpenLinux compliant with the X/Open and POSIX.1 standards, not that Caldera OpenLinux actually achieved such compliance.<br><br>**IBM Ex. 262 (Caldera, A Technical Introduction to the Caldera Network Desktop):**<br>The cited source does not mention Caldera OpenLinux. | Undisputed.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 44. | The X/Open brand for UNIX 95 (which requires SUS conformance) and the POSIX.1 specification together required all of the SUS header files and two of the Streams header files (Items 152, 157, 183-84, 205-31). (Ex. 214 | **Disputed/Unsupported/Incomplete**<br><br>First, SCO disputes IBM's assertions regarding the presence of material from Items 152, 157, 183-184, 205-231 in POSIX, UNIX 95, or other standards. SECTION REDACTED | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that the header files identified in Final Disclosure Items 152, 157, 183-84, and 205-231 were required by the SUS and POSIX.1 |

39

| ¶ | IBM's Statement (Ex. 3); Ex. 446.) | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | **SECTION REDACTED**<br><br>Second, SCO disputes IBM's implication that the presence of material in UNIX 95, POSIX, or other standards is relevant to whether use of such material in Linux is infringing. Incorporation of the infringed SVr4 material into the SUS, UNIX 95, and/or POSIX standards is immaterial to whether IBM has any rights to use such material. (See Disputed Facts # 6, 11-13.), IBM cites no source showing a properly granted license to use material in such standards.<br><br>**IBM Ex. 214 (Ex. 3) (Exhibit 3 to Kernighan & Davis Report):** The cited source does not specify whether the X/Open UNIX 95 or POSIX.1 standards include *all* of the material in the cited files or merely a portion of such files, and does not specify which portion is included in such standards.<br><br>**SECTION REDACTED**<br><br>**IBM Ex. 446 (The Open Group "The Testing requirements by Product Standard (dated 9/18/06):** The cited document supports the assertion that a work claiming compliance with SUS must comply with the UNIX 95, UNIX 98 or UNIX 03 Product Standards, but does not support | specifications. The support relied upon by SCO merely addresses whether a few lines or parts of some lines in these header files were not included verbatim in the specifications. |

40

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| 1 | the converse (that compliance with, e.g., UNIX 95, requires compliance with SUS). | |

41

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 45. | In its first version of OpenLinux, Caldera included much of the Linux Code. Caldera OpenLinux eventually included, aside from one file (Item 185), every line of the Linux Code. (Ex. 215 (Ex. H); Ex. 226 ¶ 11.) Additionally, the Caldera OpenLinux products contained all of the SUS Material (Items 183-84, 205-31), all of the ELF Material from elf.h (Item 272), and code from every single allegedly infringed Streams file (Items 150-64). Therefore, much of the Linux Code has been distributed in SCO's Linux products for nearly a decade. (Ex. 3); Ex. 446.) | **Disputed/Unsupported**<br><br>First, SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>Second, SCO disputes that Caldera OpenLinux included all the Linux Code except for material from Item 185. Material from Item 272 was not included in Caldera OpenLinux. (See IBM Ex. 215 at Ex. H at Item 272 a).<br><br>Third, SCO disputes IBM's implication that the "Linux Code" is the only material at issue. The "Linux Code" does *not* include all the infringing Linux material. See Disputed Fact # 27. Furthermore, Caldera OpenLinux did not include all the infringing Linux material. See Kernighan & Davis II IBM Ex. 215 at Ex. H.<br><br>Fourth, SCO also disputes that inclusion of material in any Linux version prior to 2.4 or 2.6 is relevant to this litigation. Caldera's first OpenLinux version was released before the Linux 2.4 and 2.6 versions at issue in this lawsuit. See Disputed Fact # 41; Ex. 83.  IBM's cited sources | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that all but two (though in fact all) of the lines of Linux Code were included in SCO's OpenLinux products.  For further explanation, see the brief to which this addendum is attached.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material.  The Mazieres Declaration defines as "Disputed Code" only those lines of System V code for which SCO has drawn a red line in its Disclosures tabs linking the line to allegedly corresponding Linux code. There is no internal contradiction, as the two lines of code from Tab 409 referenced by SCO were identified only on the System V side of SCO's comparison tab, with no allegedly corresponding Linux code, and thus are not "Disputed Code".  SCO's failure to allege any copying with regard to these two lines of code does not create a disputed fact. |

42

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | do not mention Caldera's "first version" of OpenLinux or otherwise support the assertion that the cited files were distributed as part of OpenLinux "for nearly a decade." <br><br> **IBM Ex. 226 (Mazieres Decl.) ¶ 11:** In addition to the other defects of the cited source (See Disputed Fact # 27), the cited source does not support the assertion that "every line" of the cited code was contained in OpenLinux. The source defines "Disputed Code" as "allegedly infringed lines of System V," yet somehow asserts that a product can contain "all the Disputed Code," but not contain all the code that SCO alleges has been infringed. (IBM Ex. 226 ¶¶ 9-10.) This internal contradiction, along with IBM's other conflicting sources, creates a disputed issue of fact. | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 46. | Like Caldera Network Desktop, Caldera OpenLinux was distributed under the GPL. (Ex. 22 ¶ 41; Ex. 284 ¶ 9.) | **Disputed/Unsupported** <br><br> SCO does not dispute that elements of Caldera Network Desktop and Caldera OpenLinux were "distributed" under the GPL. However, no UNIX material in Caldera Network Desktop or Caldera OpenLinux was properly licensed under the GPL. (See Disputed Facts # 4-5, 8 22.) <br><br> **IBM Ex. 284 (Nov. 30, 2004, Declaration of Erik W. Hughes) ¶ 9:** The cited source supports the assertion that SCO complied with all obligations imposed on a GPL licensee, but does not support the assertion that any material (SCO-owned or otherwise) was properly licensed under the GPL. | |

43

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 47. | Caldera, Inc. continued to promote and develop its Linux products as a high-end operating system appropriate for business use. For example, Caldera not only added features to OpenLinux, but also included a wider range of bundled proprietary business software applications. (Ex. 221 ¶ 42; Ex. 445.) | **Undisputed**<br><br>Undisputed, but the actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.)<br><br>SCO disputes IBM's suggestion that Linux <u>was</u> suitable for high-end business use at this time. (See Disputed Fact # 75.) | Undisputed. |
| 48. | In fact, Caldera, Inc. marketed its Linux products as "an inexpensive alternative to UNIX-based systems", and "a complete networking solution" for "small- to medium-sized businesses and enterprises". (Ex. 221 ¶ 43; Ex. 447.) | **Disputed**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.)<br><br>SCO disputes IBM's suggestion that Linux <u>was</u> suitable for high-end business use prior to 2000. (See Disputed Fact # 75.) | Deemed Admitted. Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

44

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 49. | To make Linux more UNIX-like, Caldera proposed that Streams technology, originally developed for use in UNIX operating systems, be included in Linux.  Caldera, Inc. required Linux Streams support in order to be able to run its Netware for Linux product. (Ex. 221 ¶ 44; Ex. 193 ¶¶ 15-16.) | Undisputed.<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | Undisputed. |
| 50. | Caldera was unable to persuade the Linux community to include Streams technology in the Linux kernel. (Ex. 221 ¶ 45; Ex. 193 ¶ 15; Ex. 201 ¶ 4.) But it made a significant contribution to the project that made Streams a loadable module for use with the Linux operating system. (Ex. 221 ¶ 45; Ex. 193 ¶ 16; Ex. 201 ¶ 5.) | Undisputed.<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | Undisputed. |
| 51. | Caldera, Inc.'s Streams support resulted in the Linux Streams ("LiS") optional package (Ex. 221 ¶ 46), which contains all of the Streams header files (Items 150-164) (Ex. 215 (Ex. H)).  Caldera is | Undisputed.<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to | Undisputed. |

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| one of the few Linux companies that distributed some of the material that it challenges from outside the kernel, such as the Streams Material and certain of the ELF Material. (Ex. 215 ¶ 95; Ex. 207 ¶ 35.) | SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>Although it is undisputed that some "Caldera" entities distributed some of the infringing Linux material, SCO disputes that Santa Cruz, Caldera International, or SCO contributed any of the infringing Linux material to Linux or distributed all of the infringing Linux material. (See Disputed Facts # 4-5; IBM Ex. 215 at Ex. H.).<br><br>**IBM Ex. 221 (Love Declaration) ¶ 46:** Although this source states that Caldera, Inc.'s activities "resulted" in the LiS Streams module, it does not specify whether or what Caldera, Inc. actually created, or what was created by third parties.<br><br>**IBM Ex. 215, SECTION REDACTED** This source does not support the assertion that "few" Linux companies distributed the Streams material and ELF material.<br><br>**IBM Ex. 207 (Johnson Decl.) ¶ 35:** The cited source does not support the assertion that "few" Linux companies distributed the ELF or Streams material, that "Caldera" distributed the Streams or | |

46

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | ELF material, nor does it specify between "Caldera" entities. | |
| 52. | In addition to participating in the LiS project, which led to the availability of the Streams Material for Linux, Caldera, Inc. made the Streams Material freely available for download on its website. Indeed, the online announcement of Linux Streams' availability read: "LiS STREAMS is now available. It is referenced to kernel version 2.0.24. It can be obtained from Caldera's FTP site as follows: ftp.caldera.com/pub/stuff/LiS-2.0.24.tar.gz". (Ex. 221 ¶ 47; Ex. 448.) | **Undisputed.**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO disputes that SCO or Caldera International distributed all of the Streams material. (See IBM Ex. 215 at Ex. H.). IBM's cited sources do not support the assertion that either Santa Cruz, Caldera International, or SCO distributed any of the Streams material. | Undisputed. |

47

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 53. | To encourage commercial acceptance of Linux, Caldera, Inc. championed the standardization of Linux. Caldera believed that the biggest deterrent to commercial acceptance of Linux was the resource expenditure by independent software vendors associated with porting their software products to multiple versions of Linux. (Ex. 221 ¶ 30; Ex. 449.) | Undisputed. Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). **Ex. 221 (Love Decl.) ¶ 30:** The cited source provides no timeframe for IBM's assertion. **Ex. 449 (Caldera Systems, Inc. Linux Standards Base White Paper):** This source was published in 1999, after IBM began its Linux activities. (See Disputed Fact # 89.). | Undisputed. |
| 54. | The creation of standards for Linux was important for Caldera and other Linux distributors because it permitted Linux to interact with other programs and encouraged beneficial competition and cooperation. (Ex. 221 ¶ 29; Ex. 214 ¶ 21.) | **Disputed/Unsupported/Incomplete** SCO disputes that other UNIX distributors or Caldera (if it encompasses entities that owned copyright) felt the creation of standards encourages beneficial competition. SECTION REDACTED | Deemed Admitted. Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the facts IBM states in the referenced paragraph, which refers only to Caldera and other Linux distributors. |

48

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | **SECTION REDACTED**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. See Disputed Facts # 4, 22.<br><br>SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license–or royalty-free use of copyrighted material through any Linux standards activity.<br><br>**SECTION REDACTED**<br><br>**IBM Ex. 214**<br>**21:** The cited source supports the general assertion that "interoperability" is beneficial, but fails to distinguish between various types of interoperability. For example, it may be beneficial | |

49

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | to operating system providers for application programmers to be able to write an application that runs on many different operating systems, but not beneficial to allow a competing operating system to use copyrighted material. | |
| 55. | Operating system vendors profit in general from standards because standards make it easy for those developing application programs (e.g., word processors, spreadsheets, Web browsers, etc.) to create applications that run on that operating system. Standards allow application developers to avoid creating several different versions of their applications for various different systems. And the more applications that are compatible with a particular operating system, the more attractive it will be to customers. (Ex. 221 ¶ 33; Ex. 214 ¶¶ 21-22.) | **Disputed/Unsupported/Incomplete** SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. (See Disputed Fact # 54.) The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. (Id.) SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.) Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. (Id.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Furthermore, the material referred to by SCO does not support SCO's statement. The facts cited in IBM's referenced paragraph are fully supported by the cited material. |
| 56. | Caldera, Inc. was the first corporate signer of the 1998 document proposing the Linux Standard Base ("LSB"), "[T]he Linux Standard Base (LSB) Project [was] an attempt to define the common core of components that can be expected to be found in any 'Linux' system". (Ex. 221 ¶ 48; Ex. 450; Ex. 207 ¶ 30; Ex. 242 ¶ 11; Ex. 251 ¶ 7; Ex. 176 ¶ 8.) | **Disputed** SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).

SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license–or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.

SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id.

SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.). Whether operating system vendors profit from standards does not make the material in such | |

51

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | standards unprotectible by copyright. _See id._ | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 57. | The main objective of the LSB was to solve the problem facing every commercial independent software vendor ("ISV"), namely, the resource expenditure associated with porting their software products to multiple versions of the many Linux products and distributions currently in the marketplace. (Ex. 221 ¶ 50; Ex. 449 at 2; Ex. 227 ¶ 45.) | **Disputed** | |
| | | SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. | |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | |
| | | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54. | |
| | | SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. | |

52

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id. SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.) Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. See id. | |
| 58. | In addition to its own support of the LSB, Caldera exhorted all members of the Linux community to support the LSB and Linux standardization: Linux is at a crossroads, and the path seems clear. All Linux providers must give up some immediate and transitory gains today so that the Linux Standard Base can be allowed to establish unifying software porting standards. A long-term vision of the Linux opportunity should encourage all providers to move toward LSB. (Ex. 221 ¶ 53; Ex. 449 at 3-4.) | **Disputed** SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

53

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.<br><br>SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id.<br><br>SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, 54.). Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. See id.<br><br>IBM's quote comes from a Caldera Systems paper published in November 1999, after IBM began its Linux activities and before Caldera Systems had any authority over UNIX copyrights. (IBM Ex. 449; Disputed Facts # 4, 22.). | |
| 59. | Santa Cruz also supported the standardization movement with regard | **Disputed/Unsupported/Incomplete** | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with |

54

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| to Linux. Santa Cruz encouraged adoption of the LSB and saw compliance with standards as vital to the future success and adoption of Linux. (Ex. 221 ¶ 52; Ex. 227 ¶ 19; Ex. 207 ¶ 30.) | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license-or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.<br><br>IBM's cited sources do not specify any actions constituting "support" of the LSB or Linux standardization in general, nor do they specify any time frame in which such purported support occurred.<br><br>SCO disputes that an operating system vendor benefits from a competing vendor using its copyrightable material. See Disputed Fact # 54. The cited sources do not support the assertion that an operating system provider benefits from a second, competing operating system provider being able to use the first provider's operating system interface. See id.<br><br>SCO disputes IBM's implication that whether or not operating systems vendors profit from use of standards is relevant to whether use of copyright material, which may be included in standards, constitutes infringement. (See Disputed Facts # 6, | admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| 1 | 54.). Whether operating system vendors profit from standards does not make the material in such standards unprotectible by copyright. *See id.*<br><br>**IBM Ex. 221 (Love Decl.) ¶ 52; IBM Ex. 227 (McCrabb Decl.) ¶ 19:** The cited sources provide no time frame for IBM's assertion.<br><br>**IBM Ex. 207 (Johnson Decl.) ¶ 30:**<br><br>The cited source is very vague and does not support the assertion that Santa Cruz engaged in any specific actions, and provides no specific time frame. | |

56

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 60. | As David McCrabb, the President of Santa Cruz's Server Software Division, put it in an interview: "With our investments throughout the Linux Community, [Santa Cruz] care[s] about the success of the Linux market more than ever. This being the case, we are very concerned about fragmentation. This is why we stand whole-heartedly behind the Linux Standard Base." (Ex. 227 ¶ 20.) | **Disputed**<br><br>SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license–or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54.<br><br>IBM's cited source only supports the allegation that Santa Cruz supported the LSB by May 2000, after IBM began its Linux activities. See Disputed Fact # 89. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 61. | The LSB explicitly required the inclusion in Linux of material from all but three of the allegedly infringed SUS header files. (Items 183-84, 205-18, 221-24, 226-29, 231). (Ex. 214 (Ex. 3); see Ex. 166 ¶ 19.) Much of the Linux Code is in Linux as a result (in part) of SCO's efforts to bring Linux into compliance with the LSB. (Ex. 207 ¶ 34.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's assertion to the extent it implies that all the material in the cited files was part of the LSB. IBM's cited source shows that some of the material in the cited files was *not* included in standards such as LSB, but fails to specify which material was included in such standards. See IBM Ex. 214 at Ex. 3; Disputed Fact # 12.<br><br>SECTION REDACTED | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. IBM Ex. 214 (Ex. 3) specifically identifies which SUS header files contain material explicitly required by the LSB. |

57

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | **SECTION REDACTED** | |
| | SCO disputes the implication that Santa Cruz, Caldera International, or SCO encouraged or authorized the license–or royalty-free use of copyrighted material through any Linux standards activity. In fact, Santa Cruz received several requests from parties affiliated with Linux standards organizations to license its ELF material or release its copyright therein, but did not give up such rights. These requests not only show that it was general knowledge that Santa Cruz owned the copyrights in the ELF material, but also that Santa Cruz never intended to release its copyright in such material or allow unlicensed use of such material through any standards activities. See Disputed Fact # 54. | |
| | SCO disputes IBM's assertion to the extent it implies that SCO contributed infringing material to Linux. SCO did not contribute any of the infringing Linux material to Linux. See Disputed Fact # 4. | |
| | **IBM Ex. 166 (Declaration of Douglas B. Beattie) ¶ 19; IBM Ex. 207 (Johnson Decl.) ¶ 34:** | |
| | The cited sources only support the assertion that the some infringing Linux material was contained in LSB either "explicitly or by reference to the requirements of Unix standards." However, IBM claims that certain material was included UNIX standards that, in fact, was *not* included in such standards. See Disputed Fact # 12. Unfortunately, | |

58

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | the cited sources do not specify *which* standards were referred to by LSB. | |
| 62. | The LSB also incorporates by reference requirements of common UNIX standards such as the SUS and POSIX, which require the inclusion in Linux of material from all of the allegedly infringed SUS header files, including that not explicitly required by the LSB. (Ex. 221 ¶ 49; Ex. 215 ¶ 115; Ex. 169 ¶ 11; Ex. 214 (Ex. 3).) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion to the extent it implies that SUS and POSIX include or require inclusion of the infringing Linux material.<br><br>**SECTION REDACTED** | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed facts that the LSB incorporates by reference requirements of common UNIX standards such as the SUS and POSIX, and these UNIX standards specify the inclusion of all of the allegedly infringed SUS header files. |

59

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 63. | In addition to participating in the LSB project, Caldera, Inc. and/or Santa Cruz also participated in the following community projects directed at creating uniform standards for Linux:<br><br>(a)    the Linux Professional Institute, an independent organization dedicated to the establishment of professional certification standards for Linux professionals (Ex. 107 at 13);<br>(b)    the Linux Internationalization Group (a voluntary Linux community working group, which Caldera helped to found, dedicated to addressing interoperability, internationalization and localization of Linux applications in the international context) (Ex. 111 at 10, 14);<br>(c)    the IA64 Linux Project, an Intel-sponsored initiative to port the Linux kernel to the Intel Itanium processor (Id.); and<br>(d)    the Open Source Development Lab (the goal of which was to "foster and support the development of additional open-source and Linux enhancements") (Id.).<br><br>(Ex. 221 ¶ 54.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>This fact is disputed as to Santa Cruz because none of IBM's sources support IBM's assertions to the extent they attribute actions to Santa Cruz, nor do they give a specific time frame for the asserted actions. And, in IBM Fact # 41, it states that "Santa Cruz is not a UNIX Company," which would also create disputes with this fact. | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

60

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 64. | In August 1997, a group of developers in the Intel-compatible UNIX market met at Santa Cruz's headquarters to form a group called "86Open". The stated goal of 86Open was to create a common programming and binary interface for all variants of UNIX-on-Intel operating systems. (Ex. 452; Ex. 207 ¶ 17; Ex. 184 ¶ 3.) | **Undisputed** | Undisputed. |
| 65. | By this date, Linux had implemented the TIS Committee ELF format as its programming and binary interface. (Ex. 184 ¶ 4.) | **Disputed**<br><br>SCO disputes that the ELF material in Linux was taken from the TIS Specification.<br><br>SECTION REDACTED | Deemed Admitted. Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that by August 1997, Linux had implemented the TIS Committee's ELF format. |

61

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 66. | Leading members of 86Open included the Caldera CEO at that time, Bryan Sparks, and Santa Cruz employee Dion Johnson. Nearly half (13 out of 30) of 86Open's full membership consisted of Caldera and Santa Cruz employees, including Michael Davidson (Santa Cruz) and Ron Record (Santa Cruz). (Ex. 453.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's implication that the actions of "86Open" or any individuals participating in "86Open" are attributable to any corporate entities, including SCO. IBM's own sources show that the actions of any individuals participating in the "86Open" group were not intended to represent or bind the employers of such individuals, including Santa Cruz, who held UNIX copyrights at that time. IBM Ex. 453 at 3 ("It cannot be emphasized enough that 86open is comprised of individuals, not organizations…nobody in this group speaks on behalf of their parent organization…").<br><br>IBM's cited sources do not support the assertion that the "86Open" group ever reached any agreement regarding ownership of intellectual property rights, ever created any standard document, or was anything more than a "loose and informal group." See IBM Ex. 453 at 1. | Deemed Admitted. Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 67. | As part of the initial 86Open standardization effort, Linus Torvalds proposed creating a new binary format ("Spec 150") that would replace the TIS Committee ELF format that was then implemented in Linux. (Ex. 454, Ex. 207 ¶ 19.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that Linux was using "the TIS Committee ELF format." The format then used by Linux was derived from AT&T/SVr4 material, not the TIS Specification. See Disputed Fact # 65.<br><br>IBM's cited sources do not support SCO's assertion that Linus Torvalds proposed the mentioned format or that this format "would replace the TIS Committee ELF format." | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The material referred to by SCO does not support SCO's statement. The material cited by SCO merely purports to support the proposition that the TIS Committee ELF format was not the *only* implementation of ELF in Linux.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. IBM Ex. 454 states, "[t]he early discussions centered around Linus Torvalds' scheme involving a standardized programmers' function libraries, and agreement on numbering schemes for signals and other interfaces". |
| 68. | However, Santa Cruz opposed Torvalds' new Spec 150 format, and instead proposed that the 86Open members retain the ELF format as the Linux standard because<br><br>**SECTION REDACTED**<br><br>(Ex. 455 at SCO1820604.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion that any actions taken as a part of "86Open" are attributable to Santa Cruz or SCO. See Disputed Fact # 66. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statement does not, for example, specifically controvert the undisputed fact that Santa Cruz employees Doug Michaels (CEO), Mike Davidson, Dion Johnson, Ronald Record, Greg Schwarzer, and Ray Anderson (Senior VP) discussed, on company email, whether it was in "our best interests to be able to run some good subset of the Linux applications base [on Unixware]". (IBM Ex. 455 at SCO1820604). |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 69. | Santa Cruz's proposal was made possible by a utility it had created, called lxrun, which permitted Linux ELF binaries to run on UNIX systems — thereby dispensing with the need for a common programming and binary interface between UNIX and Linux. (Ex. 215 ¶ 112; Ex. 454.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's assertion that any actions taken as a part of "86Open" are attributable to Santa Cruz or SCO. See Disputed Fact # 66.<br><br>It is undisputed that Santa Cruz created a program called lxrun that helped UNIX users run binaries formatted for use on Linux on their UNIX platforms;<br><br><div align="center">SECTION REDACTED</div> | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 70. | Santa Cruz's creation of Ixrun and its advocacy for the ELF implementation resulted in its adoption as the de facto binary standard and as the de facto standard for Linux. (Ex. 184 ¶ 5; Ex. 454.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes that Santa Cruz engaged in any "advocacy" in relation to 86Open. See Disputed Fact # 66. Also, SCO disputes IBM's assertion that any actions taken as a part of "86Open" are attributable to Santa Cruz or SCO. See Disputed Fact # 66.<br><br>IBM does not specify to what the term "the ELF implementation" refers. ELF was incorporated into Linux long before any "86Open" activities and not as a result of any 86Open activities. See Disputed Fact # 65.<br><br>**IBM Ex. 184, (Declaration of Ulrich Drepper) ¶ 5:**<br><br>The cited source does not support any supposed "advocacy" by Santa Cruz.<br><br>**IBM Ex. 454, Webpage – "The 86open Project (final update July 25, 1999)":** The cited source does not support any supposed "advocacy" by Santa Cruz. The cited source does not support the assertion that "86Open" ever adopted a standard. Rather, the cited source states that the participants working with various operating systems independently decided what binary format to use. | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that Santa Cruz's creation of Ixrun and its employee's advocacy for the ELF implementation resulted in its adoption as the 86Open binary standard and as the de facto standard for Linux. |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 71. | The ELF implementation includes all of the ELF Material (Items 272-78). Lxrun uses and requires knowledge of much of the Linux Code, in that it includes all of the Linux kernel ELF Material described in Item 272. (Ex. 214 ¶ 52.) | **Disputed/Incomplete**<br><br>SCO disputes IBM's statement that lxrun "includes all of the Linux kernel ELF Material described in Item 272.<br><br>SECTION REDACTED<br><br>IBM does not specify what the term "The ELF implementation" signifies. Accordingly, SCO cannot comment on the truthfulness of IBM's assertion. | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that when run, the lxrun application must use the elf.h header file. (IBM Ex. 214 ¶ 52.) |
| 72. | In 1998, in an effort to streamline its Linux business, Caldera, Inc. split and placed its assets relating to its business of developing and marketing Linux software Into Caldera Systems, a newly formed corporation. (Ex. 221 ¶ 55; Ex. 107 at 31-32.) | **Undisputed/Unsupported**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | Undisputed. |

66

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 73. | Unlike Caldera, Inc., which maintained both a Linux business and a business line that was not engaged in developing and marketing Linux software, Caldera Systems was dedicated solely to the development and marketing of Linux-based business solutions. (Ex. 221 ¶ 56; Ex. 107 at 31-32.) | **Undisputed** Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | Undisputed. |

67

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 74. | Caldera Systems continued to upgrade its Linux products, for which it received numerous awards and recognition, including Internetweek's Best of the Best, The Linux Show's Best Distribution of Millennium, Linux Journal's Product of the Year award at Comdex and Network Computing's Well-Connected Award for Best Network Operating System. (Ex. 221 ¶ 57; Ex. 110 at 40.) | **Undisputed/Unsupported**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV r4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>**IBM Ex. 221** (Love Decl.) ¶ 57: Neither IBM's declaration nor the cited sources indicate a time frame in which the asserted actions took place.<br><br>**IBM Ex. 110** (Undated Caldera Systems, Inc. Form 424B1) at 40: Does not support IBM's assertion. | Undisputed.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| 75. | Caldera Systems not only continued to market its Linux products as suitable for business, but also represented them as a replacement for UnixWare and OpenServer. For instance, in 1998, Ransom Love, the President and CEO of Caldera Systems, stated: "Linux does a better job than SCO UNIX, has better scalability and will run most applications written for SCO UNIX without modification." (Ex. 221 ¶ 58; Ex. 456.) | **Disputed**<br><br>SCO disputes IBM's assertion that Linux was appropriate for enterprise-scale business use in 1998. Linux was not appropriate for enterprise-level business use until after the Linux 2.2 version. Rochkind I at 25-35. | Deemed Admitted. Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 76. | Caldera Systems accurately described | **Undisputed/Unsupported** | Undisputed. |

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| itself and its Linux products and services as follows:<br><br>• "Caldera Systems Inc. is a technology leader in developing and marketing successful Linux-based business solutions" (Ex. 457);<br><br>• "Caldera has chosen, integrated, and tested key open source and commercial software to create a predicable business quality server that meets your needs now and [sic] years to come" (Ex. 458);<br><br>•<br><br><br>SECTION REDACTED<br><br><br>• | Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>**IBM Ex. 221 (Love Decl.) ¶ 81:** The cited source shows that the quoted descriptions were made in 2001, after IBM had already begun its Linux activities. See, e.g., Disputed Fact # 89. | The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

69

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | SECTION REDACTED | | |
| | • (Ex. 221 ¶ 81.) | | Undisputed. |
| 77. | Caldera Systems also continued the work of Caldera, Inc. by driving Linux community projects directed at creating uniform standards for Linux, including the LSB, the Linux Professional Institute, the Linux Internationalization Group, the IA64 Linux Project and the Open Source Development Lab. (Ex. 221 ¶ 59; Ex. 449; Ex. 107 at 13; Ex. 111 at 10-11, 14.) | **Undisputed/Unsupported**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>**IBM Ex. 221 (Love Decl.) ¶ 59; IBM Ex. 107 (Caldera Systems, Inc. 2000 form 10/K) at 13; IBM Ex. 111 (Caldera International, Inc. 2001 Form 10/K):** The cited sources provide no time frame for the asserted facts.<br><br>**IBM Ex. 449 (Caldera Systems, Inc. "Linux Standards Base" White Paper):** This article was published in November 1999, after IBM began its Linux activities. See Disputed Fact # 89. | The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

70

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 78. | Caldera Systems consistently contributed to the Linux and Open Source community by, among other things: <br><br>• "provid[ing] engineering assistance and specifications for the IPX kernel development"; <br><br>• "help[ing] with the development of SPX in the kernel"; <br><br>• "contribut[ing] to the development of DOSEMU"; <br><br>• "participat[ing] in the development of WINE, supporting WABI"; <br><br>• being an "early sponsor and architect of the Redhat Package Manager (RPM)"; <br><br>• "help[ing] sponsor the development of WABI and extensions"; <br><br>• "contribut[ing] equipment and funding for the SMP project"; <br><br>• being "an early contributor to the development of various kernel drivers, including Ethernet and Frame Relay"; <br><br>• "help[ing] incorporate some NT drivers for the XFree Organization"; <br><br>• "help[ing] fund the development of the K Desktop Environment (KDE)"; <br><br>• "help[ing] make patches to streams available to the Open Source community"; | **Disputed/Unsupported** <br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material. <br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). <br><br>SCO disputes IBM's assertion to the extent it implies that Caldera Systems had authority to license any of the infringed material under the GPL. None of the infringed SVr4 material was properly released under the GPL or was otherwise "open" or "open source," which is a disputed legal conclusion unsupported by IBM's cited facts. See Disputed Fact # 4-8, 22. <br><br>IBM has not shown how any of the mentioned actions are relevant to SCO's claims of infringement. <br><br>**IBM Ex. 221 (Love Decl.) ¶ 60:** This source provides no time frame for IBM's assertion. <br><br>**IBM Ex. 461 (Caldera Systems, Inc.'s "Our Social Contract with the Open Source Community" White Paper):** This source was published in November 1999, after IBM began its Linux activities. See Disputed fact # 89. | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. <br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

71

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| • "help[ing] fund the initial porting of Netscape for Linux and Fast-Track for Linux"; <br> • "develop[ing], then open-sourced Novell's Netware Client for Linux"; <br> • "fund[ing] work on NFS for Linux"; <br> • "co-sponsor[ing] the initial porting of WordPerfect to Linux"; <br> • "help[ing] finance the development of StarOffice with Star Division"; <br> • "GPL[ing] COAS, the Caldera Open Administration System"; <br> • being "among the very first Linux distributors to work with commercial developers, promoting the porting of many important software works to Linux"; <br> • "GPL[ing] [its] Linux Wizard, Lizard"; and <br> • "continu[ing] to provide manpower and funding to vendor-neutral initiatives such as Linux Standard Base and the Linux Professional Institute". (Ex. 46 (; Ex. 221 ¶ 60.) | | |

72

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | Undisputed/Unsupported/Incomplete | Undisputed. |
| 79. | Caldera Systems also expanded its Linux technical training, certification and support, and began partnering with more schools and training centers throughout the world to offer its courses. (Ex. 221 ¶ 61; Ex. 462.) | SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the Infringed SVr4 material. | The facts stated in IBM's referenced paragraph are fully supported by the cited material. |
| | | The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.). | |
| | | **IBM Ex. 221 (Love Decl.) ¶ 61:** The cited source provides no time frame for IBM's assertions. | |
| | | **IBM Ex. 462 (Caldera Launches OpenLearning):** This source was published on July 31, 2000, after IBM began its Linux activities. See Disputed Fact # 89. | |

73

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|-----------------|----------------|-------------|
| 80. | Caldera Systems' educational programs were designed to help its customers develop, deploy and administer Linux systems. (Ex. 221 ¶ 62; Ex. 107 at 4.) | **Undisputed/Incomplete**<br><br>Incomplete, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts ¶ 4, 22.).<br><br>**IBM Ex. 221 (Love Decl.) ¶ 62; IBM Ex. 107 (Caldera Systems, Inc. 2000 10/K) at 4:** IBM's cited sources provide no time frame for IBM's assertion. | Undisputed.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

74

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 81. | Caldera Systems was at the forefront of Linux development and promotion. But for its efforts, Linux would not have progressed as rapidly as it did to become an enterprise-ready operating system. (Ex. 221 ¶ 63.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br><br>**SECTION REDACTED**<br><br><br><br>**IBM Ex. 221 (Love Decl.) ¶ 63:** The cited source provides no timeframe for IBM's assertion. | Deemed Admitted: SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The testimony of Erik W. Hughes referred to is hearsay because it purports to testify on behalf of unnamed third parties.<br><br>The facts stated In IBM's referenced paragraph are fully supported by the cited material. |
| 82. | Caldera received numerous awards and significant recognition for its work in | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication | Undisputed. |

75

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| promoting Linux. During 1999 and 2000 alone, Caldera received the following awards and recognition:<br><br>• CNET Editor's Choice Award (October 2000);<br>• Network World Blue Ribbon Award (September 2000);<br>• Linux Magazine's Emperor Award (May 2000); PC ONLiNE Testsieger's (April 2000);<br>• Listing in Upside Magazine's Millennium 2000 eBusiness 150 (March 2000);<br>• Andover.net Dave Central's Best of Linux winner (February 2000); Linux Magazine's Cool Product Award (February 2000);<br>• PC Direct (Ziff-Davis) Best Buy 2000 award (January 2000);<br>• Internetweek's Best of the Best award for best software for 1999 (December 1999);<br>• The Linux Show's Best Distribution of Millennium (December 1999);<br>• Linux Journal's Product of the Year award at Comdex (November 1999);<br>• Listing in PC Magazine's Top 100 Technology Companies That Are Changing the World (October 1999);<br>• Linuxworld Editor's Choice Award: Best Client and | that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SV4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SV4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>All specific cited dates show that the cited awards, except for the Network Computing award, were issued after IBM began its Linux activities. See Disputed Fact # 89.<br><br>**IBM Ex. 221 (Love Decl.) ¶ 63:** The cited source does not specify which "Caldera" entity received the cited awards.<br><br>**IBM Ex. 107 (Caldera Systems, Inc. 2000 10/K)** at 11: The cited source shows that Caldera Systems, Inc. received the cited awards. | |

76

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 7 | • Distribution (August 1999); <br>• Highest Rated Linux Distribution by VarBusiness in 2000 Annual Report Card; <br>• Network Computing's Well-Connected Award for Best Networked Operating System (May 1999); and <br>• MikroPC's Product of the Year Award (1999). <br>(Ex. 221 ¶ 64; Ex. 107 at 11.) | | |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 83. | Substantially all of Caldera Systems' revenue was derived from sales of Linux products and services. (Ex. 221 ¶ 65; Ex. 106 at 16.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO disputes IBM's assertion to the extent it could be read as referring to Caldera International. After acquiring Santa Cruz and the associated UNIX rights, substantially all of Caldera International's revenue was derived from UNIX products and services. (IBM Ex. 106 (Caldera International 2002 10-K) at 16; See also Disputed Facts # 126-27.).<br><br>**IBM Ex. 221 (Love Decl.) ¶ 65:** The cited source does not give a time frame for IBM's assertion. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The fact stated in IBM's referenced paragraph is fully supported by the cited material. |
| 84. | The success of Linux, and its structural and functional similarity to UNIX operating systems, led some at Santa Cruz to question whether Linux included code improperly copied from UNIX System V. (See Ex. 221 ¶ 82.) | **Undisputed/Unsupported**<br><br>IBM's assertion that "[t]he success of Linux, and its structural and functional similarity to UNIX" led Santa Cruz to investigate the possibility of copyright infringement is pure conjecture. The cited source does not indicate *why* Santa Cruz investigated the content of Linux. | **Deemed Admitted:** SCO's statement does not refer to any portion of the record on which SCO relies.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

78

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | Disputed/Unsupported/Incomplete | Deemed Admitted. Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 85. | Santa Cruz commissioned a study by Bob Swartz in 1999 to compare certain UNIX and Linux code. The Swartz study concluded that "there can be no doubt that parts of the Linux distribution were derived from UNIX" (Ex. 399; Ex. 463), including some of the Linux Code (Items 209-10, 221-23, 231) (Ex. 463). | SCO disputes IBM's fact to the extent it implies that Santa Cruz knew that Linux contained the infringed UNIX material at issue in this case in 1999. | |
| | | The Swartz investigation was limited to literal code, did not address whether any code in Linux was proper or improperly contributed, and was not delivered to Santa Cruz until October 1999, after IBM began its Linux activities and before the release of Linux 2.4 or 2.6. See IBM Ex. 463; Disputed Fact # 41, 89. | |
| | | Indeed, IBM's own cited sources indicate that Santa Cruz did not believe the Swartz study showed the presence of infringing material in Linux. See IBM Exs. 399, 463; Disputed Fact # 41. | |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 86. | Although SCO now claims "this memo shows that there are problems with Linux", following the study's conclusion in 1999, Santa Cruz did not take any legal action against Linux or Linux users. (Ex. 463 at SCO1777093.) | **Undisputed**<br><br>Undisputed, but SCO does not dispute that Santa Cruz did not bring suit based on Linux.<br><br>However, SCO disputes IBM's implication that the presence of UNIX material in Linux was not an issue of concern to Santa Cruz.<br><br>SECTION REDACTED<br><br>SCO disputes IBM's implication that SCO's decision to bring suit regarding Linux 2.4 and 2.6 was based on the same information available to Santa Cruz in the Swartz memo. The Swartz investigation was limited to literal code, did not address whether any code in Linux was proper or improperly contributed, and was not delivered to Santa Cruz until October 1999, <u>after</u> IBM began its Linux activities and before the release of Linux 2.4 or 2.6. See Disputed Fact # 85.<br><br>Furthermore, the complex and changing nature of both Linux and IBM's Linux-related activities more than justify any delay on behalf of Santa Cruz, Caldera International, or SCO in bringing suit. See *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992); *Boothroyd Dewhurst, Inc. v. Poli*, 783 F. Supp. 670, 680–81 (D. Mass. 1991); *Lotus Development Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 82-83 (D. Mass. 1990). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

80

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 87. | Instead, Santa Cruz continued to pursue the development of Linux-related products and services. For example, Santa Cruz:<br><br>• Announced to its OEMs and partners that it was developing a Linux distribution for servers;<br><br>• Took people who were experienced in writing UNIX code and put them to work writing code for Linux;<br><br>• Continued to make contributions to various open source projects, including to the GNU C compiler collection and other open source components found in Linux;<br><br>• Offered a free Open Source Software Supplement CD that included many Open Source technologies and a comprehensive set of Linux and Open Source-related professional services for use in its UNIX products, including the KDE desktop, Apache and Squid web/proxy servers, GNU development tools, Perl and Python, cdrecord, and Samba.<br><br>(Ex. 463; Ex. 331 at 86:16-20; Ex. 464; Ex. 465; Ex. 227.) | **Disputed/Unsupported**<br><br>SCO disputes the assertion that Santa Cruz undertook and Linux-related activities "instead" of pursuing claims based on the inclusion of UNIX material in Linux.<br><br>SECTION REDACTED<br><br>None of IBM's sources support the assertion that Santa Cruz pursued development of Linux-related products "instead" of investigating/asserting its claims that Linux contained infringing material.<br><br>Furthermore, SCO disputes IBM's implication that any of the mentioned Santa Cruz activities are relevant to this litigation. None of Santa Cruz's cited actions related to the Linux 2.4 and 2.6 versions at issue in this case. See Disputed Fact # 41. Furthermore, Santa Cruz did not contribute any of the infringed UNIX material to Linux. (See Disputed Facts # 4-5.).<br><br>**IBM Ex. 227, McCrabb declaration:** The cited source does not support the assertion that Santa Cruz engaged in the asserted actions at any time before the "Spring of 2000," after IBM began its Linux activities. See Disputed Fact # 89.<br><br>**IBM Ex. 331, Michael Davidson Deposition at 86:** The cited source does not support the assertion that Santa Cruz contributed any material, infringing or otherwise, to Linux or that any such contributions by Santa Cruz employees were somehow attributable to Santa Cruz. The cited source provides no time frame for IBM's | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

81

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | assertions. | |
| | **IBM Ex. 463** <br> SECTION REDACTED <br> Does not support IBM's assertions. | |
| | **IBM Ex. 464, webpage, Linux PR: SCO Invests In LinuxMall.com (October 14, 1999):** The cited source does not support the assertion that any of the alleged actions occurred prior to October 14, 1999, _after_ IBM began its Linux activities. See Disputed Fact # 89. | |
| | **IBM Ex. 465, SCO webpage, Caldera Skunkware, Open Source Software:** The cited source does not support IBM's assertion regarding any actions of Santa Cruz. The cited source does not support the assertion that any of the asserted actions were taken prior to June 1, 2001, _after_ IBM began its Linux activities. See Disputed Fact # 89. | |
| | SCO disputes that Santa Cruz pursued the Linux-related products and services by providing open source software for use in its UNIX products. | |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 88. | Meanwhile, Caldera Systems continued forging strategic alliances with other companies, including IBM, that it sought to involve in Linux, such as by promoting Linux and furthering its Linux business. (Ex. 221 ¶ 66.) | **Undisputed.**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>IBM's cited source does not support its assertion regarding "other companies." | Undisputed. |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 89. | Caldera Systems approached IBM about entering into a business relationship relating to Linux. In July 1999, the companies entered into a "Strategic Business Agreement" relating to Linux. (Ex. 221 ¶¶ 66-67; Ex. 466 at 1710023483-87.) | **Undisputed**<br><br>Undisputed, but SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001) are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO disputes IBM's assertion to the extent it implies that IBM and Caldera Systems reached an agreement regarding any Linux version other than Caldera OpenLinux.<br><br><div align="center">SECTION REDACTED</div> | Undisputed. |

84

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 90. | By that time, Linux already was appropriate for business use because of its comprehensive Internet functionality, flexibility and customizability, high scalability, stability, interoperability with multiple systems and networks, multiappliance capability, including Internet access devices, low acquisition and maintenance costs and compliance with technical and communications standards. (Ex. 221 ¶ 66; Ex. 445 at 5-6.) | **Disputed**<br><br>SCO disputes that Linux was appropriate for enterprise-level commercial use by the middle of 1999. SECTION REDACTED<br><br>Ex. 287 at 25-35. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that by July 1999, Linux was appropriate for business use in that it contained the technologies described in IBM's § 90. |
| 91. | The Linux products that Caldera provided to IBM to ship were based on the Linux kernel and included Linux Code. (Ex. 467.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO also disputes IBM's assertion to the extent it implies that all of the infringing Linux material, or all of the "Linux Code," was contained in the products distributed by Caldera International or SCO to IBM.<br><br>SECTION REDACTED | **Deemed Admitted:** Nothing in SCO's facts with specifically controverts IBM's statement with admissible evidence meeting the requirements of Rule 56. |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 92. | As part of their Strategic Business Agreement, Caldera granted IBM a license to use the material in Caldera Systems' Linux products, including the Linux Code. (Ex. 221 ¶ 68; Ex. 466 at 1710023483, 1710023486-87; Ex. 467 at 1710023509, 1710023515.) | **Disputed/Unsupported/Incomplete**<br><br>SCO disputes IBM's assertion that any Caldera entity granted a license to use any infringing Linux material. No Caldera entity ever granted IBM a license to use the infringing Linux material in Linux, for several reasons.<br><br>First, neither Caldera, Inc. nor Caldera Systems owned any copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SECTION REDACTED<br><br>Accordingly it is disputed that IBM obtained a license under the SBA.<br><br>Third, neither the SBA nor the SOW cover use of any material outside an OpenLinux for eDesktop or eServer product. (See IBM Exs. 466-467; Disputed Fact # 89.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |

86

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 93. | Specifically, Caldera granted IBM<br><br>SECTION REDACTED<br><br>(Ex. 466 at 1710023486-87; Ex. 467 at 1710023509.) | Disputed/Unsupported/Incomplete<br><br>SECTION REDACTED | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 94. | IBM's license applied, and was intended to apply, to future versions of Caldera's Linux products, including what would eventually be released as SCO Linux 4.0. (Ex. 221 ¶ 71; Ex. 466; Ex. 467.) SCO Linux 4.0 was licensed to IBM under the Strategic Business Agreement. (Ex. 221 ¶ 71; Ex. 466; Ex. 467.) The contract was intended to grant IBM a license that would protect it against a claim of infringement relating to the material in Caldera's Linux products. (Ex. 221 ¶ 74; Ex. 466; Ex. 467.) | Disputed/Unsupported<br><br>SCO disputes IBM's assertion that any Caldera entity granted a license to use any infringing Linux material. No Caldera entity ever granted IBM a license to use the infringing Linux material in Linux. See Disputed Fact # 92. The license could not have, and was not intended to, apply to any UNIX material. See Ex. 269 ¶9; Disputed Fact # 4. | Deemed Admitted: Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that the license described in the SBA and SOW applied to, and was intended to apply to, future versions of Caldera's Linux products, including what would eventually be released as SCO Linux 4.0. Further, the material referred to by SCO does not support SCO's statement. |
| 95. | Furthermore, in the Strategic Business Agreement, Caldera expressly warranted to IBM that IBM would be protected against claims of infringement relating to the material in Caldera's Linux products, and promised that it would hold harmless and indemnify IBM from third party intellectual property rights claims. (Ex. 221 ¶¶ 75-76; Ex. 466 at 1710023486) | Disputed/Unsupported<br><br>SCO disputes IBM's assertion that any Caldera entity granted a license to use any infringing Linux material. No Caldera entity ever granted IBM a license to use the infringing material in Linux. See Disputed Fact # 92. | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

87

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|----------------|----------------|-------------|
| 96. | Following the execution of the Strategic Business Agreement, and based in part on the conduct of Caldera, Inc., Santa Cruz and Caldera Systems, and their promotion of and representations about the Linux operating system, IBM made the decision to expand its support of and "embrace" Linux in December 1999. (Ex. 194 ¶ 5; see Ex. 3 ¶ 89; Ex. 586 ¶¶ 4-7.) | **Disputed/Unsupported** First SCO disputes that IBM decided to "embrace" Linux, or made any Linux-related decision, in December of 1999. Linux began its Linux activities at least as early at [sic] July of 1999. See Disputed Fact # 89. Second, SCO disputes that IBM relied on, or reasonably could have relied on, any conduct of Caldera, Inc. or Caldera Systems prior to May 2001. Neither Caldera, Inc. nor Caldera Systems owned UNIX copyrights prior to May 2001. (See Disputed Facts # 4, 22.) SECTION REDACTED Third, SCO disputes IBM's assertion that it relied on actions by Santa Cruz in undertaking its Linux activities, because IBM knew that Santa Cruz was concerned about the presence of UNIX material in Linux and the potential of Linux to take market share in the high-end market space. SECTION REDACTED | **Deemed Admitted.** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. The material referred to by SCO does not support SCO's statement regarding the timing of IBM's decision to embrace Linux in December 1999. Additionally, the Declaration of Doug Michels (SCO Ex. 352) referred to by SCO does not support SCO's statement regarding IBM's reliance on Santa Cruz when deciding to embrace Linux because Mr. Michels' testimony concerns events that took place after IBM embraced Linux. (SCO Ex. 351 ¶ 22.) The statements in SCO Ex. 250 referred to are hearsay when offered by SCO. This material referred to by SCO to support its statement that "SCO *did not exist*...when IBM actually began its Linux activities" actually supports IBM's statement. (SCO Ex. 250, "1979 SCO founded as the Santa Cruz Operation".) The facts stated in IBM's referenced paragraph are fully supported by the cited material. (E.g., IBM Ex. 586, "IBM decided to invest in Linux due, at least in part, to the existence and activity of SCO and other commercial Linux distributors".) |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | enterprise-hardened market space. <u>See</u> Ex. 351 at 42.<br><br>Furthermore, IBM has not submitted <u>any</u> sources, in fact # 96 or otherwise, showing actions undertaken by Santa Cruz prior to IBM's July 1999 decision to begin its Linux activities on which IBM could have relied. (<u>See</u> Disputed Facts # 40-41, 54, 59-60, 63, 66, 69-71, 85-87, 103.)<br><br>**IBM Ex. 3 (SCO's Second Amended Complaint) ¶ 89; IBM Ex. 194 (May 2004 Declaration of Daniel Frye) ¶ 5:** The cited sources do not support the assertion that IBM decided to engage in its Linux activities based on any activities by any Caldera entity, Santa Cruz, or SCO.<br><br>**IBM Ex. 586, Sept 2006 Declaration of Daniel Frye:** The vague assertions in the cited source (1) indicate that IBM relied on third-party actions as much on any actions of SCO, and (2) do not support the assertion that IBM relied on the actions of any Caldera entity or Santa Cruz.<br><br>Because SCO *did not exist*, much less engage in any Linux-related actions—when IBM actually began its Linux activities, or when IBM claims to have "embraced" Linux—SCO disputes that IBM decided to "embrace" Linux based on any actions of SCO. (<u>See</u> Disputed Facts # 89; Ex. 250.). | |
| 97. | In its marketing materials and SEC filings, SCO and its predecessors repeatedly urged IBM and others to use and rely on Linux. (Ex. 106 at 3-5; Ex. | **Disputed/Unsupported**<br><br>First, SCO disputes that that [sic] SCO, Caldera International, or Santa Cruz "urged" anyone to use or rely on Linux in SEC filings. Neither SCO, | **Deemed Admitted:** Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed facts that: (a) in its marketing |

89

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| ¶ 111 at 4-11; Ex. 114 at 1, 4-6; Ex. 115 at 1, 4-6; Ex. 221 ¶¶ 115-16; Ex. 340 at 57:12-25; 58:1-8; 88:2-24.) The role of SCO and its predecessors in improving Linux and shaping the Linux marketplace, especially through SCO's work with the LSB and UnitedLinux, LLC (see ¶¶ 111-20 below), influenced IBM's decision to invest in Linux. In making its decision to embrace Linux, IBM relied, at a minimum, on the fact that SCO had never identified a single line of infringing code in Linux. But for SCO's silence and inaction, IBM would not have made Linux an important part of its business so quickly. (Ex. 586 ¶¶ 4-7; Ex. 167 ¶¶ 3-5.) | Caldera International, nor Santa Cruz "urged" any use or reliance on Linux in its SEC filings. See IBM Exs. 106, 111, 114. None of IBM's cited sources indicate that SCO, Caldera International, or Santa Cruz urged any use of or reliance on Linux before IBM began its Linux activities. See Disputed Fact # 89, 96.<br><br>Second, SCO disputes that IBM relied on any actions of SCO, which did not exist until after IBM began its Linux activities. See SCO Timeline Ex. 250; Disputed Fact # 89.<br><br>Third, SCO disputes that IBM relied on any UnitedLinux-related actions. UnitedLinux LLC did not exist until after IBM began its Linux activities. (See Disputed Facts # 89, 111.)<br><br>Fourth, SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are not attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.)<br><br>Any reliance by IBM on Caldera, Inc., Caldera Systems, or other non-copyright holders is unreasonable. See Disputed Fact # 96.<br><br>**IBM Ex. 221 (Love Declaration) ¶¶ 115-16:** | materials and SEC filings, SCO and its predecessors repeatedly urged IBM and other to use and rely on Linux by touting its abilities and uses; (b) IBM was influenced in its decision to continually invest in Linux by SCO's work with the LSB and UnitedLinux, LLC; and (c) IBM relied on SCO's failure to identify a single line of infringing code in Linux. The material referred to by SCO does not support SCO's statement that reliance on Caldera, Inc. or Caldera Systems is unreasonable. Also, see IBM's response to # 96 regarding SCO Timeline Ex. 250.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material, including the cited SEC filings (IBM Exs. 106, 111, 114, 115). |

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | The cited source does not support the assertion that SCO or any possible predecessor urged IBM or others to use or rely on Linux in SEC filings. The cited source does not support the assertion that "Caldera" urged IBM or others to rely on Linux at any point when "Caldera" owned copyrights to SVr4 material.<br><br>**IBM Ex. 340** SECTION REDACTED<br>The cited source does not support the assertion that SCO or any conceivable predecessor urged IBM or others to rely on Linux in SEC filings.<br><br>SECTION REDACTED<br><br>**IBM Ex. 586 (Frye Declaration) ¶¶ 4-7:** The cited source does not support IBM's assertions, conflicts with other facts, and/or is disputed by SCO. See Disputed Fact # 96. | |

91

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 98. | IBM placed greater emphasis on the importance of Linux to its business and made a significant contribution to the development of Linux, requiring a significant expenditure of time and money at the expense of other opportunities. For example, IBM developed many Linux-related products: mainframes and servers that run Linux; memory solutions for Linux environments; a broad range of software offerings; services that include deployment of Linux-based e-business environments, migration of database applications and data to Linux systems, support for Linux-based cluster computing, server consolidation and a 24-hour technical engineering support line. (Ex. 586 ¶¶ 4-7; Ex. 194 ¶ 7; see Ex. 4 ¶ 44.) | **Disputed/Unsupported**<br><br>SCO disputes that IBM put a "greater emphasis" on Linux-related activities than other activities, or that IBM put a "greater emphasis" on Linux-related activities than it would have in some other factual scenario to the extent IBM suggests that it undertook its Linux activities in reliance on the actions of Santa Cruz, Caldera, or SCO. (See Disputed Facts 96-97.) | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

92

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 99. | Moreover, IBM has made significant and valuable contributions to the Linux kernel and the Linux environment. (Ex. 208 ¶¶ 69-75.) SCO has admitted that it included over 783,000 lines of IBM code in SCO Linux 4.0 (id. ¶ 66 (citing Ex. 45)), demonstrating that IBM contributed a significant amount of source code to Linux (not at issue here) that was useful enough that SCO included it in its own product. (Ex. 208 ¶ 68.) | **Disputed**<br><br>SCO disputes IBM's assertion to the extent it implies that SCO contributed material to the Linux program it received from UnitedLinux LLC before distributing the program as part of the SCO Linux 4.0 package. SCO received UnitedLinux 1.0 from SuSE engineers and redistributed the program verbatim as part of its SCO Linux 4.0 package. SCO's own additions to the SCO Linux 4.0 package were embodied in separate media. See Ex. 233 ¶¶ 19-22.<br><br>Regardless, IBM's assertion is immaterial to whether IBM's Linux-related activities infringe SCO's copyrights, and is addressed in SCO's response to IBM's 8th counter claim. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Furthermore, SCO has admitted in an RFA that "SCO Linux Server 4.0 includes code identical to code in the IBM Copyrighted Works". (IBM Ex. 45 at RFA No. 108.) |
| 100. | SCO intended that its Linux activities be acted on, and SCO acted such that IBM had a right to believe they were so intended. (Ex. 221 ¶¶ 25-27, 115-16.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion to the extent it implies that SCO intended to convince IBM or any other third-party that SCO did not object to the use of UNIX material in Linux, that Linux did or does not infringe SCO's UNIX copyrights, or that UNIX material could be used in Linux without a license from SCO. (See Disputed Facts # 4-5.)<br><br>Furthermore, SCO disputes that IBM could reasonably, or had no right to, believe that its Linux activities did not infringe copyrights in UNIX. (See Disputed Fact # 96-97.) | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, the material referred to by SCO does not support SCO's statement. |
| 101. | Not knowing that SCO would change its position and declare war on Linux after years of promoting it, IBM (and | **Undisputed/Unsupported**<br><br>SCO disputes that it has changed its position | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | others) built a part of its business around the operating system. (Ex. 586 ¶¶ 4-7.) | regarding use of UNIX material in Linux. SCO never took the position that it would contribute UNIX material to Linux, or allow the use of UNIX material in Linux, and has not "declare[d] war on Linux." (See Disputed Facts 4-5.)<br><br>SCO disputes IBM's assertion to the extent it implies that IBM did rely, or reasonably could have relied, on the actions of Caldera Systems, Caldera, Inc., Santa Cruz, Caldera International, or SCO in undertaking its Linux activities. IBM did not, and could not reasonably have relied, on any actions of Caldera Systems, Caldera, Inc., Santa Cruz, Caldera International, or SCO in undertaking its Linux activities. See Disputed Fact # 96-8.<br><br>Furthermore, IBM has not supported its assertion.<br><br>Mr. Frye, founder and head of the Linux Technology Center, states in his declaration that, "IBM decided to invest in Linux due, at least in part, to the existence and activity of SCO and other commercial Linux distributors." IBM Ex. 586 ¶ 6. IBM then argues, based in part on this statement in Mr. Frye's declaration, that IBM believed SCO had waived its intellectual property rights with respect to Linux. IBM Mem. at 84.<br><br>IBM's assertion of reliance is substantially undercut by Mr. Frye's deposition testimony.<br><br>SECTION REDACTED | Rule 56. The portions of Ex. 104 cited by SCO (not included with its submission and not found where cited) do not support SCO's statement.<br><br>The facts stated in IBM's referenced paragraph are fully supported by the cited material. |

94

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | Ex. 104 at 35:21-36:6.<br><br>IBM Ex. 586 (2006 Frye Decl.) ¶¶ 4-7: The cited source supports that IBM engaged in Linux activities, but no other aspect of IBM's assertion. | |
| 102. | IBM has conducted its Linux activities in the good faith belief — supported by years of reinforcement — that they were permissible. Allowing SCO to reverse course now would result in severe damage to IBM and others. (See Ex. 586 ¶¶ 2-7.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion to the extent it implies that IBM did rely, or reasonably could have relied, on the actions of Caldera Systems, Caldera, Inc., Santa Cruz, Caldera International, or SCO in undertaking its Linux activities. IBM did not, and could not reasonably have relied, on any actions of Caldera Systems, Caldera, Inc., Santa Cruz, Caldera International, or SCO in undertaking its Linux activities. (See Disputed Fact # 96-97.)<br><br>SCO also disputes that IBM's current Linux activities are undertaken in "good faith." IBM has continued its Linux-related activities long after receiving unambiguous notice that such activities infringe SCO's copyrights. (See Ex. 257.) Such action is not undertaken in "the good faith belief supported by years of reinforcement that [such actions are] permissible." (See also Disputed Facts # 96-97.)<br><br>IBM's cited source does not support its assertion or the assertion that IBM undertook any sort of investigation or inquiry into whether its Linux activities infringed any third-party copyrights. The cited source does not support IBM's assertion regarding any supposed "severe damage."<br><br><span style="text-align:center">SECTION REDACTED</span> | Deemed Admitted. Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. Further, SCO's statement does not refer with particularity to those portions of the record on which SCO relies. |

95

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | SECTION REDACTED | |
| 103. | On the strength of its Linux business, Caldera Systems went public on March 21, 2000. (Ex. 110 at 26.) Santa Cruz supported the move in January 2000 by collaborating with Sun Microsystems, Inc., Novell and several other groups on a $30 million investment in Caldera Systems. (Ex. 221 ¶ 79; Ex. 469.) | **Undisputed/Unsupported**<br><br>IBM's assertion is unsupported to the extent it implies any grant of rights to UNIX material between Santa Cruz and Caldera Systems. | Undisputed. |
| 104. | On May 7, 2001, using most of the proceeds from its initial public offering, Caldera Systems undertook to expand and enhance its Linux business by acquiring the Server Software and Professional Services divisions of Santa Cruz, including its UNIX assets. Caldera Systems completed the transaction through a newly formed subsidiary, known as Caldera International, Inc. ("Caldera International"), which then functioned as the operating company of Caldera Systems. (Ex. 221 ¶ 80; Ex. 106 at 16.) | **Undisputed** | Undisputed. |

96

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 105. | One of the primary purposes of the acquisition was to acquire a distribution channel for SCO's Linux products. As Caldera announced at LinuxWorld in August 2000:<br><br>Business customers tell us that they'd be more aggressive in the adoption of Linux if they could purchase and obtain support through the same distribution channel that they use for everything else. The SCO acquisition gives us more than 15,000 knowledgeable, trained resellers, ISVs and support staff worldwide. This infrastructure would have taken us millions of dollars and years to develop. (Ex. 221 ¶ 92.) | **Disputed/Unsupported**<br><br>SCO disputes that the Caldera Systems/Caldera International/Santa Cruz merger/acquisition was undertaken to acquire distribution "for SCO's Linux products."<br><br>SCO did not exist at the time Santa Cruz was acquired by/merged into Caldera International, so acquiring a distribution channel for SCO's Linux products could not have been a "primary purpose" for the acquisition. (See Ex. 250.). Furthermore, Santa Cruz had never distributed a Linux product. (Ex. 233 ¶ 4.)<br><br>SCO disputes that the primary value of the Santa Cruz acquisition was distribution channels for Linux products, as opposed to the UNIX assets themselves. IBM's own sources show that 95% of Caldera International, Inc.'s revenue came from UNIX, not Linux, products after the Santa Cruz acquisition. (See Disputed Fact # 83.). | **Deemed Admitted:** Nothing in SCO's statement specifically controverts with admissible evidence meeting the requirements of Rule 56 the undisputed fact that one of Caldera's primary purposes for acquiring part of Santa Cruz's business was to acquire a distribution channel for SCO's Linux products. Further, the material referred to by SCO does not support SCO's statement.<br><br>SCO's statement also fails to identify material facts of record meeting the requirements of Rule 56. The statements in SCO Ex. 250 referred to are hearsay when offered by SCO. |
| 106. | Caldera International purchased the UNIX assets of Santa Cruz with an eye toward open-sourcing its UNIX technology to improve Linux. (Ex. 221 ¶ 85; Ex. 471.) Caldera CEO Ransom Love stated that Santa Cruz's UNIX assets were rapidly losing their value, that the market was moving toward Linux, and that "UNIX on Intel is dead, except as a value add to Linux". (Ex. 221 ¶ 85; Ex. 472 at 2.) | **Disputed**<br><br>SCO disputes IBM's assertion that Caldera International or SCO did anything more than consider the idea of licensing UNIX material under an "open source" license. Neither Caldera International nor SCO ever did or intended to "open source" any UNIX material. (See Disputed Facts # 4-5.).<br><br>IBM's cited sources do not support the assertion that Caldera International or SCO ever did "open source" any UNIX material. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 107. | Caldera International continued to distribute Santa Cruz's UnixWare and OpenServer products following the acquisition in 2001, but it positioned its Linux products ahead of its UNIX products. (Ex. 221 ¶ 91; Ex. 340 at 31:20-25, 33:12-25, 34:1-12; 55:4-15; Ex. 472.) For example, Caldera encouraged ISVs and OEMs, such as Oracle, to focus on the certification and support of its Linux products, to the detriment of its UNIX products. (Ex. 221 ¶ 91; Ex. 340 at 57:12-25, 58:1-25, 59:1-5; Ex. 472; Ex. 473.) | **Disputed/Unsupported**<br><br>SCO disputes that Caldera International or SCO positioned Linux products or services ahead of UNIX products or services.<br><br>**SECTION REDACTED**<br><br>Caldera International received 95% of its revenues from UNIX products and services, as opposed to Linux products and services. (See Disputed Fact # 83.) | Deemed Admitted: The material referred to by SCO actually supports IBM's statement. Nothing in SCO's statement regarding revenue specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |
| 108. | Caldera Systems knew that some at Santa Cruz had had concerns that UNIX source code had been included in Linux improperly. (Ex. 221 ¶ 82.) But Caldera did not care whether UNIX source code had been included in Linux improperly and did not publicly disclose any potential problem with Linux. (Id. ¶ 83.) Instead, Caldera chose further to stake its future on Linux. (Id. ¶ 115.) | **Disputed/Unsupported**<br><br>SCO disputes the assertion that Caldera International or SCO knew of infringing UNIX material in Linux prior to late 2002. SCO did not look into the presence of UNIX material in Linux until late 2002, at the earliest. (Ex. 6 ¶ 13; Ex. 9 ¶ 3.)<br><br>SCO disputes IBM's assertion that Caldera International or SCO "did not care whether UNIX source code had been included in Linux improperly." (See Ex. 269 ¶ 11-12.).<br><br>SCO disputes IBM's assertion to the extent it implies that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. SCO's statement does not specifically controvert with admissible evidence meeting the requirements of Rule 56 the facts that: (a) Caldera Systems (and later Caldera International's) CEO and former Santa Cruz employees were aware that some at Santa Cruz had had concerns that UNIX source code had been included in Linux improperly; (b) Caldera did not take action based on this knowledge; (c) Caldera did not publicly disclose any potential problem with Linux; and (d) Caldera continued to support, market, and distribute its Linux products. The material referred to by SCO does not support SCO's statement, as it shows, at most, that certain declarants were personally unaware of certain facts. |

98

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| | | prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO disputes IBM's assertion to the extent it implies that Santa Cruz, Caldera International, or SCO chose to undertake Linux activities "instead" of pursuing its UNIX property rights. Neither Santa Cruz, Caldera International, nor SCO ever did or intended to waive intellectual property rights in UNIX as a result of any Linux-related activities. (See Disputed Facts # 4-5.) Caldera International derived 95% of its revenues from its UNIX products and services. (See Disputed Fact # 83.) | |
| 109. | Caldera recognized that pursuing litigation against Linux would be bad for business and made the decision not to attack the operating system that it had promoted for nearly a decade. (Ex. 221 ¶ 84.) At no point did Caldera publicly disclose that there might be any problem with Linux. (Id. ¶ 83.) | Disputed/Unsupported<br><br>SCO disputes IBM's implication that the actions of Caldera, Inc. or Caldera Systems prior to May 2001 are attributable to SCO, or that Caldera, Inc. or Caldera Systems had the power to grant or release rights in the infringed SVr4 material.<br><br>The actions of Caldera, Inc. and Caldera Systems prior to May 2001 are not attributable to SCO and could not grant IBM any rights to use the infringed SVr4 material, because neither Caldera, Inc. nor Caldera Systems owned copyrights in any UNIX material. (See Disputed Facts # 4, 22.).<br><br>SCO disputes that Caldera International or SCO decided not to pursue litigation based on Linux activities. Neither Caldera International nor SCO | Deemed Admitted: SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The declarations of Messrs. Sontag and McBride referred to are not made on personal knowledge. Neither declarant was employed by SCO or its predecessors prior to mid-2002 (SCO Ex. 9 ¶ 2, SCO Ex. 165 ¶ 2.)<br><br>Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | made any decisions regarding legal action based on Linux activities until late 2002 or early 2003 at the earliest. (See Ex. 165 ¶ 3; Ex. 9 ¶3.). | |
| | SCO disputes IBM's assertion to the extent that it implies that either Caldera International or SCO did not disclose problems with Linux at a time that such entities knew of such problems. Neither Caldera International nor SCO investigated potential infringement of UNIX copyrights by Linux material until late 2002 or early 2003 at the earliest, and discussed such problems with IBM at that time. (See Ex. 165 ¶ 3-6; Ex. 9 ¶ 3-5.). IBM itself acknowledges that SCO has made public statements regarding the infringement problems posed by Linux. (See Disputed Fact # 131.). | |
| | SECTION REDACTED | |

100

| ¶ | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 110. | Like Caldera Systems before the acquisition, Caldera International:<br><br>• Expanded development funds to promote Linux products (Ex. 106 at 4);<br><br>• Represented Linux as a product that could be used to power the Internet and software needs of businesses, academics and technical institutions around the world (Id. at 3);<br><br>• Represented the benefits of Linux specifically to include comprehensive Internet functionality, flexibility, customizability and stability, interoperability with multiple systems and networks, low acquisition and maintenance costs, and compliance with technical and communication standards (Id.); and<br><br>• Provided a full range of pre- and post-sales technical support for SCO Linux (Id. at 6).<br><br>(Ex. 221 ¶ 93.) | **Disputed**<br><br>SCO disputes IBM's assertion to the extent it implies that Caldera International or SCO encouraged or authorized the reproduction, distribution, or preparation of derivative works based on UNIX material by parties other than Caldera International, SCO, or their licensees. (See Disputed Facts # 4-5.).<br><br>SCO also disputes any implication that IBM undertook its Linux activities in reliance on the cited actions. IBM began its Linux activities long before Caldera International existed. (See Disputed Fact # 89, 104.). | Deemed Admitted: Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. |

101

| # | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 111. | Rather than pursue litigation related to Linux, in May 2002 Caldera International joined with other Linux vendors, Conectiva, Inc., SuSE Linux AG and Turbolinux, to form a Joint Development Limited Liability Company called UnitedLinux, LLC ("UnitedLinux"). (Ex. 221 ¶ 94; Ex. 106 at 4; Ex. 348; Ex. 474.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's assertion to the extent it implies that Caldera International or SCO chose to undertake Linux activities "instead" of pursuing its UNIX products and services or UNIX intellectual property rights. Neither Caldera International nor SCO ever did or intended to waive intellectual property rights in UNIX as a result of any Linux-related activities. (See Disputed Facts # 4-5.). Caldera International derived 95% of its revenues from its UNIX products and services. (See Disputed Fact # 83.). Furthermore, neither Caldera International nor SCO investigated the infringement of UNIX material in Linux until late 2002 or early 2003. (See Disputed Fact # 109.).<br><br>IBM's cited documents do not support its assertion that UnitedLinux activities were an alternative to litigation or other pursuit of UNIX intellectual property rights. | **Deemed Admitted:** Nothing in SCO's statement specifically controverts IBM's facts with admissible evidence meeting the requirements of Rule 56. For example, SCO's statement does not specifically controvert with admissible evidence meeting the requirements of Rule 56 the undisputed fact that: (a) by May 2002, Caldera International had not pursued litigation related to Linux; and (b) in May 2002, Caldera International joined with the other Linux vendors referenced in IBM's paragraph to form UnitedLinux, LLC. |
| 112. | UnitedLinux was formed to streamline Linux development and certification around a global, uniform distribution of Linux for business. By developing a single Linux distribution, Caldera International and the other members of UnitedLinux endeavored to give businesses a reliable, tested, and supportable version of Linux. (Ex. 221 ¶¶ 96-97; Ex. 106 at 4.) | **Undisputed** | Undisputed. |

102

| | IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|---|
| 113. | Caldera International's CEO, Ransom Love, was a driving force behind UnitedLinux and was the signatory for Caldera to the Joint Development Contract ("JDC") and Master Transaction Agreement ("MTA") that created UnitedLinux. (Ex. 221 ¶ 95; Ex. 474; see Ex. 176 ¶ 18.) | Undisputed | Undisputed. |
| 114. | To achieve a single Linux distribution, each member assigned to UnitedLinux ownership over all of their intellectual property rights in any UnitedLinux product, with the exception of specifically retained "Pre-Existing Technology and Enhancements". (Ex. 221 ¶¶ 98-100; Ex. 474.) | **Disputed/Unsupported**<br><br>SCO disputes IBM's legal conclusion that UnitedLinux members assigned all intellectual property rights in any UnitedLinux product except for "Pre-Existing Technology and Enhancements." Caldera International did not assign any rights in pre-existing UNIX material. Rather, members only assign rights in material "[sic] developed pursuant to the UnitedLinux effort.<br><br>In his sworn declaration, Andy Nagle, Product Manager of The SCO Group, Inc., states that:<br><br>Based on my interactions with member representatives, all the Members understood that Caldera did not agree to, did not intend to, and in fact did not contribute any rights to its UNIX technology to the UnitedLinux project. In my experience, the Members understood that the UL agreements reflected Caldera's decision not to contribute its UNIX technology. In the time that I was involved with UnitedLinux, no one communicated or manifested to me a different view. For example, neither the Board of Managers nor the development engineers incorporated into the project any Caldera pre-existing technology | **Deemed Admitted:** SCO's statement fails to identify material facts of record meeting the requirements of Rule 56. The cited evidence referred to is not based on personal knowledge and is hearsay relating to others' understanding. Nothing in SCO's statement regarding whether UNIX code was intended to be assigned specifically controverts the fact that rights to the UnitedLinux product were assigned. The material referred to by SCO does not support SCO's statement. |

103

| IBM's Statement | SCO's Response | IBM's Reply |
|---|---|---|
| | other than the items specifically listed in Exhibit C. Indeed, despite Mr. Rex's appeals for the UNIX technology, SUSE did not receive any UNIX technology from Caldera.<br><br>Ex. 233 ¶ 14.<br><br>The United Linux Agreement states that intellectual property in the Software developed pursuant to the JDC "shall be assigned" to the LLC. However, to the extent, if any, that the joint development effort gave rise to any assignable intellectual property, no member, including Caldera, ever executed any documents assigning such rights, and no such assignments were ever requested:<br><br>Other than specified Pre-Existing Technology, which was listed in Exhibit C of the JDC, and the Jointly Developed Technology, which was developed pursuant to the UnitedLinux project, the intellectual property that each Member separately owned was not intended to be assigned, and was not assigned, to the LLC or any of its Members. That is, each Member fully retained its intellectual property rights in all its pre-existing technology (such as Caldera's UNIX technology) not listed in Exhibit C of the JDC. In fact, neither SCO nor any other Member ever executed any type of assignment to the LLC. Nor did any other Member ever even request any assignment from another Member.<br><br>Ex. 233 ¶ 15.<br><br>This conclusion is confirmed by Ralph Yarro, | |

104