Brent O. Hatch (5715)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:   (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200
Facsimile:   (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>          Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>          Defendant/Counterclaim-Plaintiff. | **SCO'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON IBM'S MOTION TO CONFINE**<br><br>Case No. 2:03CV0294DAK<br><br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................i

PRELIMINARY STATEMENT ................................................................................ 1

STANDARD OF REVIEW ........................................................................................ 2

ARGUMENT ............................................................................................................. 3

I.     THE SCHEDULING ORDER AND ITS PROCEDURAL HISTORY MAKE CLEAR THAT THE DECEMBER 2005 SUBMISSION WAS NOT REQUIRED TO BE COEXTENSIVE WITH EXPERT REPORTS. ..................................................... 3

II.    THE EXCLUSION OF PORTIONS OF THE CARGILL REPORT WAS CONTRARY TO THE SCHEDULING ORDER. ............................................................. 7

III.   THE EXCLUSION OF PORTIONS OF THE IVIE REPORT AND ROCHKIND REPORT WAS CONTRARY TO THE SCHEDULING ORDER. .................................. 9

IV.   THE RECORD OF SCO'S UNDERSTANDING OF THE JULY 2005 ORDER AND THE ABSENCE OF PREJUDICE TO IBM PRECLUDES THE MAGISTRATE JUDGE'S EXCLUSION OF EVIDENCE........................................... 10

       A.     The Sources Other Than the July 2005 Order Provide No Independent Support for the Magistrate Judge's Order............................................................ 11

       B.     SCO Was Substantially Justified Under Rule 37 in Asking Its Experts to Undertake the Analyses at Issue When They Did. ............................................... 11

       C.     IBM Has Not Suffered and Will Not Suffer Any "Incurable Prejudice". ............ 14

CONCLUSION........................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

Boucher v. Continental Products Co.,
    365 F. Supp. 2d 1 (D. Me. 2005) ........................................................................ 3

Dreyer v. Ryder Automotive Carrier Group, Inc.,
    367 F. Supp. 2d 413 (W.D.N.Y. 2005) ............................................................... 3

Exxon Corp. v. Halcon Shipping Co.,
    156 F.R.D. 589 (D.N.J. 1994) ............................................................................. 3

Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.,
    Civ. A. No. 95 C 1490, 1996 WL 780492 (N.D. Ill. Dec. 11, 1996) ........................... 3, 15

**<u>Statutes</u>**

Fed. R. Civ. P. 26(a)(2) .................................................................................... 16

Fed. R. Civ. P. 26(e) ........................................................................................ 16

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this Reply Memorandum in Further Support of its Objections to the Magistrate Judge's Order of December 21, 2006, granting the motion of Defendant, International Business Machines Corp. ("IBM"), to Confine SCO's Claims to, and Strike Allegations in Excess of, the Final Disclosures.

## PRELIMINARY STATEMENT

IBM's opposition brief contains the now familiar accusations that SCO has employed by "indirection" a "stratagem" of "litigation by ambush" to "sneak in" evidence to "reinvent" SCO's case at the "thirteenth hour" in an "end run" causing "incurable prejudice" to IBM. These assertions are inaccurate and tired. IBM's brief fails to contain any reasonable answer to the basic questions that SCO framed in its Objections and that underscore the propriety of reversing the Magistrate Judge's Order.

The questions before the Court are whether SCO was obligated by December 2005 to have its experts <u>finish</u> their analyses of the material that SCO identified at that time as misappropriated, whether any Order <u>clearly</u> required SCO to have done so, whether SCO <u>believed</u> it was required to do so, whether SCO had failed to <u>identify</u> by December 2005 the material SCO alleged to be misappropriated, whether IBM was unable to <u>avoid</u> any asserted prejudice resulting from the content of SCO's expert reports, and whether under the circumstances the <u>exclusion</u> of the evidence at issue in SCO's expert reports is an appropriate result. If the answer to <u>any</u> of the foregoing questions is "no," then reversal of the Magistrate Judge's Order is warranted.

IBM presents no reasonable grounds for disputing SCO's showing in its Opening Memorandum that the answer to <u>each</u> of these questions is "no." Instead, IBM chooses to address crucial points only in footnotes or else mischaracterize SCO arguments and then assert

that IBM's description of the argument "cannot be taken seriously."  What has become obvious is that IBM strongly prefers to avoid addressing SCO's claims and evidence on the merits.[1]

## STANDARD OF REVIEW

In its Order dated November 29, 2006, this Court decided to apply a de novo standard of review to any Objection from the Magistrate Court's disposition of IBM's underlying motion. (See 11/29/06 Order at 4 n.2 (Docket No. 884).)  Indeed, IBM does not directly dispute SCO's showing in its Opening Memorandum (at 4-5) that the Court must review de novo the Magistrate Judge's legal conclusions, including the application of legal principles to the facts and the consideration of the weight or significance of evidence.

Instead, IBM cites (at 11) four district court cases from other circuits for the proposition that "a decision limiting the scope of expert testimony is a non-dispositive ruling that may be set aside only if 'clearly erroneous.'"  But IBM then cites cases actually applying a "contrary to law" standard.  In addition, none of those cases involves legal and evidentiary issues such as SCO's Objections present.  In Dreyer v. Ryder Automotive Carrier Group, Inc., 367 F. Supp. 2d

---

[1]     IBM seeks to lose the facts in the shuffle, but the evidence shows that in its December 2005 Submission, SCO identified (among substantial additional material) the following:

- At least several thousand lines of integral UNIX System V source code used in Linux without permission, and critical to the operating system (Item Nos. 150-64, 183-84, 205-31, 272).

- Approximately 160,000 lines of code contributed by IBM from the Journaling File System ("JFS") in AIX that are derived from UNIX System V code and were improperly contributed to Linux development (Item No. 1).

- Approximately 1.2 million lines of code in the form of test suites that IBM improperly contributed to Linux development (Item Nos. 18, 113-42).

- Approximately 220,000 lines of code copied by IBM from UNIX System V and used improperly in each of multiple versions of AIX for Power (Item Nos. 194-205).

- Approximately 5500 lines of Read-Copy-Update ("RCU") code that IBM contributed to Linux development from Dynix/ptx (Item No. 2).

413, 416 (W.D.N.Y. 2005), the district court reviewed the decision to exclude an expert as unqualified.  In <u>Boucher v. Continental Products Co.</u>, 365 F. Supp. 2d 1, 1 n.1 (D. Me. 2005), the issue was whether an expert report had been filed on time.  In <u>Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.</u>, Civ. A. No. 95 C 1490, 1996 WL 780492 (N.D. Ill. Dec. 11, 1996) (Ex. A), the issue was whether the plaintiff had identified certain trade secrets prior to expert reports.  In <u>Exxon Corp. v. Halcon Shipping Co.</u>, 156 F.R.D. 589, 591 (D.N.J. 1994), the district reviewed the decision to exclude an expert who was not identified in time.

The Magistrate Judge's Order, in sharp contrast, turns on and compels the analysis of copyright law in this Circuit and the assessment of the significance of evidence SCO has submitted under that law and in light of this Court's July 2005 Order.  With respect to such predominantly legal issues, the Magistrate Judge's Order is not entitled to deferential review.  In addition, the standard of review is not material to the merits of SCO's Objections.

## <u>ARGUMENT</u>

**I.      THE SCHEDULING ORDER AND ITS PROCEDURAL HISTORY MAKE CLEAR THAT THE DECEMBER 2005 SUBMISSION WAS NOT REQUIRED TO BE COEXTENSIVE WITH EXPERT REPORTS.**

SCO showed in its Opening Memorandum (at 4-8) that the Magistrate Judge's Order overlooks the distinction between the parties' obligation to disclose "allegedly misused material" in December 2005 and their obligation to exchange initial expert reports in May 2006, and improperly interprets the July 2005 Order as requiring SCO's experts to have completed their expert analyses by December 2005 and submit that analysis and their conclusions as part of the December disclosure.  Most fundamentally, the ruling confuses the obligation to disclose misused material with the theories of literal and non-literal infringement that are naturally found in expert reports – and clearly allowed by the law in this Circuit.

IBM responds by insisting (as at 6) that SCO's experts "challenge as 'misused' a mass of material nowhere identified in the Final Disclosures."  That is incorrect.  The experts properly collected and analyzed the evidence supporting SCO's claim that the material SCO had previously identified had in fact been misappropriated.  (See Parts II-III, below.)  IBM cites (at 8) SCO's pending Motion to Amend as supposed evidence that "SCO acknowledges that none of the material at issue was included in its Final Disclosures," but that argument simply begs the question as to whether SCO was obligated to include all of its expert-based analysis in the Disclosures.  In addition, as shown further below, the record does not support IBM's contention that this Court's July 2005 Order made clear that SCO was required to disclose all such expert analysis in the December 2005 Submission, and does not support IBM's contention that it made clear that it was requesting such a disclosure.

SCO's pleadings, discovery responses and December 2005 Submission easily satisfied the required standards.  With respect to Dr. Cargill's comparison of UNIX System V, Release 4 ("SVr4") and Linux, for example, IBM concedes that it has been its view since 2004 that SCO asserts as a theory of liability that SVr4 is substantially similar to Linux under the copyright laws.  (See Part IV, below.)  IBM never argued that SCO was obligated to provide the expert analysis in support of that theory prior to the completion of expert reports.  Similarly, IBM fails to provide any basis in its opposition brief to support its argument that any Court Order ever imposed such an obligation upon SCO.

Indeed, IBM's focus on the nature of the Magistrate Judge's ruling serves only to underscore the disconnect between that ruling and this Court's July 2005 Order.  Immediately following oral argument, the Magistrate Judge announced that she was ready to rule and then stated that "SCO may not challenge as misused, by expert report or otherwise, any material not

specifically identified as misused by IBM in the final disclosures." (11/30/06 Hr'g Tr. at 63-64 (Ex. 1).) When SCO's counsel asked for a clarification, the Magistrate Judge stated that "if <u>it wasn't disclosed</u> by . . . October 28, 2005, the interim deadline, and the final deadline December 22 of 2005, then it's out." (<u>Id.</u> at 64.) The Magistrate Judge then "adopted" the statements of counsel for IBM regarding <u>his</u> understanding of what the Magistrate Judge had decided to order, to the effect that "structure, sequence and anything else <u>that they want to claim as part of their case</u>, is out." (<u>Id.</u> at 65.) The Magistrate Judge stated in her written Order that "it is the Court's intent that this order shall apply to any and all allegedly misused material, including structures and sequences." (12/1/06 Order at 2 (Docket No. 906).) IBM concludes (at 9) that "the Court made perfectly clear that <u>SCO may not proceed as to any material</u> – including any structures, sequences or anything else that SCO might want to claim as part of its case – <u>not identified with specificity in SCO's Final Disclosures</u>."

IBM thus sponsored, and the Magistrate Judge "adopted," a standard that goes well beyond this Court's requirement that SCO identify by December 2005 the material that IBM misused or misappropriated. The difference between the standard set forth in this Court's July 2005 Order and the Magistrate Judge's Order below is crucial. The question <u>now</u>, under the Magistrate Judge's Order, is whether in support of their analyses of material that SCO <u>had</u> disclosed as misappropriated SCO's experts rely on or cite <u>any supporting evidence</u> or <u>any supporting material</u> or <u>theories</u> not identified in SCO's December 2005 Submission. The Magistrate Judge and counsel for IBM made that new standard clear: If "it" – that is, "anything . . . that SCO might want to claim as part of its case" – "wasn't disclosed" by December 2005, "then it's out."

This new standard finds no support in the language of the Court's July 2005 Order (see Part IV, below), and makes a hash of the discrete period for expert discovery that this Court had clearly imposed.  The point made in SCO's Opening Memorandum thus continues to apply:  The December 2005 Submission was not intended and did not require SCO to set forth legal theory or expert analysis of copyright infringement or breach of contract, nor to submit the entire sum of evidence supporting IBM's misuse of the material identified in the December 2005 Submission. Yet IBM's arguments unavoidably assert that, contrary to its representations in April 2005, SCO supposedly was obligated to disclose in December 2005 theories and analyses as to which SCO would have to "rely on experts."

IBM recognizes this fundamental problem insofar as it argues, later in its opposition brief (at 17), that "IBM does not contend and Judge Wells did not rule that the Final Disclosures required a full explication of SCO's legal arguments, extended expert analysis or submission of all of SCO's trial exhibits."  But where the excluded evidence does not reasonably qualify as "allegedly misused material," there is no other logical reading of the Magistrate Judge's Order or of IBM's arguments in support of it.  (Indeed, instead of asserting that SCO has identified the challenged material as "misused," IBM often asserts that SCO has "accused" additional material. The awkward phrasing only underscores IBM's effort to force a square peg into a round hole.)

IBM argues it would have been improper for the Magistrate Judge to enter the June 28, 2006, Order but not this Order, but that would be true only if the evidence at issue here fit any reasonable definition of "allegedly misused material," as opposed to "material in support of SCO's assertion that previously identified material was misused."  IBM and the Magistrate Judge simply infer that SCO deliberately decided not to identify material that SCO internally regarded as "misused material," but there is no support in the record for any such conclusion.  SCO's

experts identified the excluded material in their expert reports five months later not because SCO had any design to "sneak in" evidence – as if SCO thought that IBM would permit any such thing to happen – but because SCO reasonably did <u>not</u> believe that it was obligated to have had its experts analyze and present those opinions by the end of 2005.  (<u>See</u> Part IV, below.)

SCO shows further below that the challenged portions of the testimony of Messrs. Cargill, Ivie and Rochkind satisfy the clear requirements of the December 2005 Submission, and that IBM offers no argument in opposition to suggest a contrary result.

## II.   THE EXCLUSION OF PORTIONS OF THE CARGILL REPORT WAS CONTRARY TO THE SCHEDULING ORDER.

SCO showed in its Opening Memorandum (at 9-24) that Dr. Thomas Cargill's analysis of the substantial similarity between SVR4 and Linux under the Copyright Act was not a "new" theory that SCO was obligated to have Dr. Cargill complete for inclusion in the December 2005 Submission.  SCO further showed (at 22-24) that IBM's arguments with respect to Dr. Cargill's analysis in particular created a Catch-22:  Where the premise of the Magistrate Judge's June 2006 Order and this Court's Order affirming it is the requirement that SCO provide "version, file and line" information about misused material, but where Tenth Circuit law makes clear that such information is <u>not</u> part of SCO's <u>legal theory</u> of copyright infringement, there is no sensible argument that the July 2005 Order required disclosure of such theories of non-literal infringement.  According to IBM's present position and the view adopted by the Magistrate Judge, the only way SCO could have met the standard being applied now was to submit its expert opinions and analysis with its December 2005 Submission.

IBM addresses these central arguments only in footnotes, and for good reason:  it cannot point to any language in any Court Order requiring that all <u>expert analysis</u> of the <u>legal theory</u> of copyright infringement pertaining to Linux had to have been included in SCO's December 2005

Submission.  Instead, IBM cites interrogatory language addressing "the specific manner in which IBM is alleged to have engaged in misuse or misappropriation" and "how IBM is alleged to have infringed plaintiff's rights."  No reasonable reading of that language would have it direct SCO to disclose its underlying expert's analysis of the substantial similarity between SVR4 and Linux by December 2005 – particularly where expert reports were not due until May 2006.  (See also Part IV, below.)  IBM says (at 27 n.11) that if "Dr. Cargill's reports appropriately describe all of the material IBM is alleged to have misused," then "there is no reason SCO could not have disclosed the material in its Final Disclosures."  IBM is thus acknowledging that the Magistrate Judge sanctioned SCO for failing to have Dr. Cargill complete his analysis by December 2005.  The issue, of course, is not whether SCO "could have disclosed" the content of Dr. Cargill's report by December 2005; the issues are whether any Court Order or discovery request required as much, and whether SCO believed they required as much.

IBM finally argues, on this material, that Dr. Cargill's analysis could have been provided "by version, file and line of code," but fails even to suggest how such detail could have been provided for non-literal copying of the structure of Linux.  IBM also fails to address any of the detailed analysis of relevant precedent in SCO's Opening Memorandum (at 9-24).  That analysis thus establishes without contradiction from IBM that Dr. Cargill properly performed the expert analysis required by Tenth Circuit copyright law; that such analysis is indeed a matter of expert opinion; that such analysis requires the consideration of elements beyond literal source code in the format of version, file and line information; that the Magistrate Judge's Order has the effect of precluding SCO from making claims that non-literal elements or the selection, arrangement and coordination of elements of the protected work were copied; and that the Order is therefore contrary to law.

III.   **THE EXCLUSION OF PORTIONS OF THE IVIE REPORT AND ROCHKIND REPORT WAS CONTRARY TO THE SCHEDULING ORDER.**

SCO showed in its Opening Memorandum (at 24-27) that in the December 2005 Submission, SCO identified the entire JFS file system as misused material derived from UNIX System V.  Item 1 of the December Submission clearly indicates that the entirety of the JFS is misused material; as such it is appropriate for the entire JFS to be utilized by Dr. Ivie in his subsequent expert work.  SCO was not obligated to have its expert Dr. Evan Ivie complete for inclusion in that December Submission his analysis demonstrating how JFS was derived from UNIX System V.

SCO also showed in its Opening Memorandum (at 27-29) that in the December 2005 Submission, SCO identified substantial numbers of the Dynix/ptx SPIE tests as misused material contributed to Linux, and that SCO was not obligated to have its expert Marc Rochkind complete for inclusion in that Submission his evidence demonstrating that an IBM programmer who had contributed some of those tests worked in the area of porting tests to Linux, or his evidence explaining that the "SPIE tests" are synonymous with "MP PIE tests," a term used in IBM documents.

IBM does not address at any length either of the foregoing arguments or any of the other details that SCO provided in its Opening Memorandum regarding the nature of the material disclosed in the Rochkind and Ivie Reports.  Instead, IBM says the following (at 28):  "SCO contends that it was only required to submit 'examples' of allegedly misused material with its Final Disclosures, so long as it made a general allegation of misuse as to a particular technology, and that its experts were then free to include 'further examples' in their reports.  This argument cannot be taken seriously."  If the argument cannot be taken seriously, it is because it is IBM's, not SCO's.  It is simply not tenable to describe as "allegedly misused material" the <u>supporting</u>

9

material that was in the Ivie and Rochkind Reports that the Magistrate Judge has excluded.  That material provided additional bases to support SCO's allegation that the material SCO clearly identified in the December Submission – such as JFS and the Testing Suites – was in fact misused.  (Indeed, in trying to defend the Magistrate Judge's Order, IBM can cite only a March 2003 Order that the Magistrate Judge indisputably did <u>not</u> make a basis for her Order, and with which SCO complied.)

Here again IBM simply re-phrases the supposed import of "the Court's previous orders" to fit its arguments.  That is, IBM again merely begs the question in saying (at 29) that the orders "did not allow SCO to satisfy its obligation by providing 'examples' of specific lines of code in its Final Disclosures, and then provide different 'examples' of specific lines of code in its expert reports."  SCO properly identified all of JFS in Item 1 of the December Submission, and then went beyond that identification to provide the information it had at that time to support the point that JFS was derived from UNIX System V.  There is simply no way for IBM to transform this Court's orders into a requirement that all expert analysis be completed and contained within the December Submission.[2]

## IV. THE RECORD OF SCO'S UNDERSTANDING OF THE JULY 2005 ORDER AND THE ABSENCE OF PREJUDICE TO IBM PRECLUDES THE MAGISTRATE JUDGE'S EXCLUSION OF EVIDENCE.

SCO showed in its Opening Memorandum (at 29-34) that the Magistrate Judge's Order should be reversed because under the controlling law, it would require findings that SCO's

---

[2]     IBM says (at 29) that the Rochkind Report "plainly accuses IBM of misusing additional material that was not contained in the Final Disclosures," but SCO showed in its Opening Memorandum (at 8-9) that IBM is wrong.  IBM is reduced to citing its counsel's hearsay characterization of a conversation in which SCO's counsel supposedly told IBM's counsel that SCO would not "stipulate that it was not claiming misuse as to the testing technology claims."  It would make perfect sense if SCO's counsel had made such a statement:  The testing technology (like JFS) <u>is</u> misused material, and there would be no reason for SCO to stipulate that it is <u>not</u>.  The material that the Magistrate Judge has now excluded is properly provided expert analysis supporting those facts.

interpretation of the July 2005 Order was unfounded and that IBM has suffered undue prejudice, which are findings the Magistrate Judge did not make and that the record does not support.

IBM makes three principal arguments to support its claim that the Magistrate Judge properly interpreted and applied this Court's July 2005 Order.  Each argument fails.

A.      The Sources Other Than the July 2005 Order Provide
        No Independent Support for the Magistrate Judge's Order.

Despite the fact that the original motion was predicated on the July 2005 Order of this Court, IBM argues (at 16) that the Magistrate Judge's Order was properly based on two other sources.  The first, the parties' December 2005 stipulation, merely restates the July 2005 Order and adds nothing to the analysis.  The second, the Magistrate Judge's June 2006 Order and this Court's affirmance of that Order, address the level of specificity required for items that were disclosed, not whether expert opinions and their support constituted "misused material."

B.      SCO Was Substantially Justified Under Rule 37 in Asking
        Its Experts to Undertake the Analyses at Issue When They Did.

IBM next argues that SCO was not "substantially justified" under Rule 37 and that the issue was waived.  In this context, the question of substantial justification goes to the nature of the dispute between the parties as to the order at issue and the state of mind of the non-moving party as to compliance with that order.  In its memorandum in opposition to IBM's underlying motion, SCO argued that the Magistrate Judge was obligated to consider "the culpability of the litigant" (17), that to the extent IBM had moved to strike evidence and expert reports the Magistrate Judge was obligated to consider the "bad faith or willfulness in failing to comply with the court's order" (17), and that "to the extent IBM seeks a discovery sanction, the record establishes that there is no basis for asserting that SCO thought it was obligated to disclose the elements of Dr. Cargill's analysis (or those aspects of the other reports that IBM raises) in

December 2005 but decided not to do so" (16).   SCO expressly stated with respect to the cases

that IBM cited <u>applying Rule 37</u>:

> In sharp contrast to the underlying facts in each of the cases that
> IBM cites (at 11-12), where there appears to have been no dispute
> between the parties as to the scope of the discovery request or
> order asserted as the basis for the moving party's request for relief,
> <u>there is plain disagreement between the parties here as to the
> requirements for the December Submission.</u>

(<u>Id.</u> (emphasis added).)  SCO's argument thus reflected the ambiguity inherent in IBM's motion

as to whether IBM sought a sanction pursuant to Rule 37 – and demonstrated that to the extent

IBM did, no such sanction was warranted given the parties' dispute regarding the requirements

of the December Submission.  IBM then expressly invoked "Rule 37" in oral argument before

the Magistrate Judge.  (11/30/06 Hr'g Tr. at 15 (Ex. 1.).)  The same uncertainty embedded in

IBM's Motion adhered to the Magistrate Judge's Order, because as SCO pointed out in its

Opening Memorandum (at 29), the "Magistrate Judge did not specify the authority on which she

excluded the foregoing evidence."  It is baseless to say, given these facts, that SCO has "waived"

its argument under Rule 37.

On the merits, SCO showed in its Opening Memorandum (at 29-30) that it had

reasonably concluded that the analyses and supporting evidence that have been excluded were

appropriately included in the expert reports, and that there was at the very least a genuine dispute

between the parties on that question.  This argument plainly is <u>not</u> to suggest that the parties

<u>knew</u> they had such a dispute <u>prior</u> to December 2005.  The Magistrate Judge asked during the

hearing on IBM's underlying motion:  "If the order is unclear as to what the meaning of the

December cutoff time is and what it includes, why do those matters remain for discussion at this

late date?"  (11/30/06 Hr'g Tr. at 37 (Ex. 1.).)  IBM tries to seize on the Magistrate Judge's

question now by arguing, in a footnote (at 28 n.12), that if SCO believed it could not reduce

aspects of the substantial-similarity analysis to description by reference to version, file and line, then "SCO was obligated to seek clarification from the Court." As counsel for SCO explained during the November 2006 hearing, however, SCO did <u>not</u> believe the Orders at issue were ambiguous, but it should be clear now that the parties have a genuine dispute as to the scope of those Orders. Nor does IBM cite any authority for the proposition that where a party might have moved for a clarification, its failure to do so should result in the drastic sanction of exclusion of evidence. In addition, SCO has found no such case.

IBM first responds (at 18-20) to SCO's argument on the merits by continuing to beg the question at issue, by repeating its argument, and citing prior IBM briefs for the proposition, that SCO was obligated to disclose "allegedly misused material" by December 2005. Those assertions fail to advance IBM's argument in the slightest, because among the fundamental questions at issue is whether the material the Magistrate Judge has excluded actually qualifies as such material, which it does not. (<u>See</u> Parts II-III, above.)

IBM then argues (at 20) that SCO must have believed Dr. Cargill's full analysis should have been disclosed in December 2005 because "SCO identified numerous items of allegedly infringing Linux material in the very Final Disclosures that it now argues did not require the identification of all allegedly infringing Linux material." Describing an argument that has never been made, IBM says (at 20) that "SCO would now have the Court believe this material was merely provided as a courtesy to IBM, not because it was required to disclose allegedly infringing material in Linux with specificity." IBM utterly misses the point. In contrast to the UNIX material that SCO identified in its December Submission, Dr. Cargill's discussion of the overall structure of SVR4, the structure of the SVR4 file system, and system calls is a <u>nonliteral legal analysis</u> of copyright infringement that could not be reduced to source code line, file and

version description under the controlling precedent and that had no place in the December 2005 Submission.  (See Part II, above.)

      C.     <u>IBM Has Not Suffered and Will Not Suffer Any "Incurable Prejudice".</u>

IBM's assertion of "incurable prejudice" does not hold water:

- IBM says that SCO's evidence was disclosed six months after the close of fact discovery, but makes no effort to explain or illustrate any particular "fact discovery" it supposedly needed to analyze any of the evidence at issue.

- IBM says that the evidence was disclosed "simultaneous with the filing of initial expert reports, on the eve of the due date of IBM's opposing expert reports," but makes no effort to show that its experts tried but could not respond to SCO's evidence or to substantiate its claim that the experts could not have analyzed the evidence in a matter of weeks.

- IBM says that the evidence at issue was disclosed "when summary judgment briefs were forthcoming," but SCO produced its initial expert reports <u>four</u> <u>months</u> before those motions were due, and IBM never asked to delay their filing.

- IBM says that "SCO had spent more than three years developing its theory of infringement," but offers no support for that assertion.

- IBM has argued that Dr. Cargill's legal analysis requires "line-by-line analysis" (11/30/06 Hr'g Tr. at 5-6 (Ex. 1.)), but Dr. Cargill's report and the controlling Tenth Circuit law make clear that no such analysis is even appropriate, let alone required. (SCO's Opening Mem. at 9-24 & Part II, above.)

- IBM says that SCO's claim of Linux infringement was a "newly minted allegation" as to which IBM was forced to proceed "without the benefit of discovery," but the record shows and IBM concedes that since the beginning of the case and of discovery, IBM has

regarded SCO as having brought a claim that Linux is substantially similar to UNIX

System V under the copyright laws.  (SCO's Opening Mem. at 16-19.)

In short, for these reasons alone, IBM's assertion of "incurable prejudice" provides no

justification for the Magistrate Judge's Order.

IBM goes even further, however, in making additional arguments of "prejudice" that

cannot be reconciled with the record.  IBM asserts (at 20-21), for example, that "the only way

IBM could have properly prepared a defense to SCO's new claims would have been to redo

much of the fact, expert and summary judgment work that it had spent nearly four years doing,

which would have required at least a year of additional litigation (if not more)."  That argument

cannot be squared with the fact that, under this Court's July 2005 Scheduling Order, following

the parties' December 2005 Submissions, the parties would have had three months of fact

discovery regarding truly "misused material," six months to draft initial expert reports, and then

three months to take expert discovery.  In IBM's view, then, it would have suffered incurable

prejudice even if SCO had submitted Dr. Cargill's expert report at the end of 2005.

In Lynchval Systems, relied upon by IBM (at 22), the district court affirmed a magistrate

judge's decision to exclude from the plaintiff's expert reports certain trade secrets that the

plaintiff had clearly been ordered to identify prior to the completion of the expert reports but had

not identified.  1996 WL 735586, at *5.  The relief IBM seeks here is akin to arguing that the

plaintiff in Lynchval also should have disclosed prior to the expert reports all of the material and

analyses the experts employed in identifying why the trade secrets constituted trade secrets,

including as compared to other computer programs – and that the plaintiff should have known

that it was required to do so.  Id.

In stark contrast, IBM makes <u>no</u> real effort to explain away the <u>nine</u> cases SCO cited demonstrating that IBM's opportunity to depose SCO's experts on the material at issue defeats the argument that IBM has suffered prejudice sufficient to justify the exclusion of that material. IBM opted <u>not</u> to ask SCO's experts about the material at issue.  The relevant law, which IBM makes no effort to distinguish, makes clear that a party in IBM's position cannot try to so preserve a claim of prejudice by simply declining to ask an expert at deposition about matters that the party asserts to be new material.

IBM also concedes (at 24) that it has taken the view since 2004 that SCO's claims raise "the question of whether Linux is substantially similar to UNIX System V."  IBM's complaint is that it did not know the "specifics" of that claim until the expert reports.  The argument, again, merely begs the question at issue:  No Court Order required SCO to set forth the content of Dr. Cargill's report by December 2005.  Where the court has provided for and/or the parties have agreed to a period of specific expert discovery, including expert reports and depositions, and the interrogatories touch on expert issues, it is the specific period of expert discovery that serves as the means of interrogatory responses.  <u>See</u> Fed. R. Civ. P. 26(a)(2), 1993 Advisory Committee Notes.  That is particularly true where, as here, the Court <u>had</u> expressly decided to provide for interim and final disclosures <u>distinct</u> from a specific period of expert discovery.  In its opposition brief, IBM makes <u>no</u> response at all to the foregoing application and satisfaction of Rule 26(e) and 26(a)(2).

Finally, IBM concedes that "there is a public interest in having disputes resolved on their merits," but accuses SCO (at 25-26) of "litigation by ambush" and of the "flouting of discovery deadlines."  These assertions have no bearing on IBM's claim of supposed prejudice, and they find <u>no</u> support in the record.  There is <u>no</u> evidence that SCO intentionally decided not to identify

material that SCO internally regarded as "misused material," or that SCO believed it was obligated to disclose the excluded material here by December 2005. Indeed, the Magistrate Judge did not even attempt to claim otherwise with respect to the material at issue; no findings were made on that issue at all. In that additional sense, the record provides no basis for regarding as reasonable the sanction the Magistrate Judge imposed; the Order was clearly erroneous and contrary to law.

## **CONCLUSION**

SCO respectfully submits, for the reasons stated above and in SCO's Opening Memorandum, that the Court should reverse the Magistrate Judge's Order and permit SCO to proceed with all theories of liability disclosed in its expert reports, including copyright infringement based on both literal and non-literal elements of the copyrighted works as well as the selection, arrangement, and coordination of elements in the copyrighted works.

DATED this 19th day of March, 2007.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

DORSEY & WHITNEY LLP
Devan V. Padmanabhan

*Counsel for The SCO Group, Inc.*

By:   ___/s/ Mark F. James_____

## CERTIFICATE OF SERVICE

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing SCO's Reply Memorandum in Further Support of its Objections to the Magistrate Judge's Order on IBM's Motion to Confine was served on Defendant/Counterclaim-Plaintiff, International Business Machines Corporation, on this 19th day of March, 2007, via CM/ECF to the following:

> David Marriott, Esq. (dmarrriott@cravath.com)
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Todd Shaughnessy, Esq. (tshaugnessy@swlaw.com)
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

/s/ Mark F. James