# EXHIBIT A

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents

Lynchval Systems, Inc. v. Chicagor Consulting Actuaries, Inc.N.D.Ill., 1996.Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
LYNCHVAL SYSTEMS, INC., a Virginia corporation, Plaintiff/Counter-defendant,
and Josiah Lynch, Counterdefendant,
v.
CHICAGO CONSULTING ACTUARIES, INC., an Illinois corporation, Defendant,
and Thomas Terry, an individual, Harold Cooper, an individual, Lina Hilko, an individual, James Peard, an individual, Counterclaim in Reply Defendants,
andWinklevoss Consultants, Inc., a Delaware corporation, Defendant/Counter-plaintiff,
and Howard Winklevoss, an individual Counterclaim in Reply Defendant.
**Civil Action No. 95 C 1490.**

Dec. 11, 1996.

MEMORANDUM AND ORDER

MANNING, District Judge.

***1** This matter comes before the court on motion of plaintiff, Lynchval Systems, Inc., ("Lynchval") for Review and Reversal of Magistrate Judge Joan Humphrey Lefkow's Ruling of May 28, 1996, striking from Lynchval's expert's report all material relating to allegedly misappropriated trade secrets undisclosed in Lynchval's previous answer to the defendants' Interrogatory 2. Defendants Winklevoss Consultants, Inc., ("WCI") and Chicago Consulting Actuaries, Inc., ("CCA") also submit objections to the May 28 Ruling regarding the denial of their request for monetary sanctions against Lynchval. For the reasons set forth below, the court denies both parties' motions and affirms Judge Lefkow's May 28 Ruling.

BACKCROUND

Lynchval produces and leases computer pension valuation software. Defendant WCI is a competing software producer. Defendant CCA is an insurance consulting company which leased from Lynchval the two computer programs at issue in this case, LynchVal and LVmed. In its cause of action, Lynchval alleges that CCA and WCI misappropriated trade secrets from its LynchVal and LVmed programs by disclosing them to WCI so that WCI could incorporate them into its competing software program called ProVal. Defendants deny any misappropriation or misuse of any Lynchval trade secrets, and further challenge whether Lynchval's claimed intellectual property constitutes trade secrets at all. Pursuant to Local Rule 2.41(b), the court referred this case to Magistrate Judge Lefkow to conduct necessary proceedings and enter appropriate orders or reports on all pretrial matters.

This discovery dispute arises from the defendants' efforts to compel Lynchval to specifically identify its allegedly misappropriated trade secrets. On March 23, 1995, defendants served Lynchval with Interrogatories 1 and 2. Interrogatory 1 requested that Lynchval identify all trade secrets that it claims to have provided to CCA through the lease of its software. Interrogatory 2 requested that Lynchval identify which of those trade secrets the defendants' allegedly misappropriated into their competing software.

Lynchval's initial responses failed to specify particular trade secrets embodied in the software it leased to CCA or identify which of these trade secrets were allegedly stolen. On September 25, 1995, WCI filed a motion to compel Lynchval to file supplemental responses to its interrogatories that would specifically identify the trade secrets at issue. Although Lynchval submitted supplemental responses, Judge Lefkow granted WCI's motion at a November 9 hearing and ordered Lynchval to come forward with more specific information. Subsequently, Lynchval presented the defendants with a Request to Admit No. 21 in respect to several specified trade secrets that it alleges are contained in the relevant software.

On November 27, Judge Lefkow held a follow-up hearing to consider Lynchval's compliance and WCI's request for monetary sanctions. After Lynchval ex-

Case 2:03-cv-00294-DN   Document 992-3   Filed 03/19/07   PageID.16695   Page 3 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 2

plained its expert's difficulty identifying all of the allegedly stolen trade secrets before Lynchval had completed its own depositions relating to WCI's software, Judge Lefkow declined to require Lynchval to produce a final binding list. Instead, Judge Lefkow accepted Lynchval's assertion that the trade secrets set forth in its Request to Admit were all that they had identified as yet. Judge Lefkow then found that these trade secrets enumerated in Lynchval's Request to Admit in conjunction with its prior responses to the interrogatories satisfied her order for the time and denied WCI's request for sanctions. However, Judge Lefkow cautioned Lynchval "that at some point this has to come down to a final statement," and that following depositions it must "come forward" with any modifications to its response. Fact discovery ultimately closed on January 17, 1996.

**\*2** On February 2, 1996, Lynchval served its Second Supplemental Responses to Interrogatories 1 and 2. The Second Supplemental Response to Interrogatory 2 specifically identified over fifty allegedly misappropriated trade secrets in a list of items designated (a)-(qq) as well as a section titled Appendix II. In addition, this response broadly claimed unidentified trade secrets contained in thirty-one specified deposition exhibits and documents. Previously, in January, defendants filed a motion for sanctions seeking to preclude Lynchval from asserting trade secrets allegedly misappropriated from the LVmed software. At a February 26 hearing on this motion, Lynchval's counsel explained that he had "represented to the Court that we would be taking the depositions of the defendants' personnel and, thereafter, we would give a supplemental listing." Counsel argued that its Second Supplemental Response satisfied this promise and "the Court's directive." Finding that Lynchval's previous responses had not adequately notified the defendants or the court of the LVmed allegations, Judge Lefkow permitted the defendants to reopen discovery and hold further depositions on the alleged LVmed trade secrets and ordered Lynchval to bear the defendants non-attorney costs incurred on these depositions.

Subsequently, Lynchval asserted that all of the items listed in Appendix I to the Supplemental Response to Interrogatory 1 were also misappropriated. Arguing that it presumed Appendix I was only intended as a response to Interrogatory 1, WCI submitted another motion for sanction to obtain an order stating that Appendix I was not a response to Interrogatory 2. On April 15, Judge Lefkow ordered that any material enumerated in Appendix I would not be treated as a response to Interrogatory 2 unless it was "specifically set forth in items (a)-(qq) or Appendix II." Judge Lefkow based this order on (1) the fact that this material had been submitted after the close of fact discovery and (2) Mr. Lynch, who had composed the list in Appendix I identifying trade secrets provided to CCA, did not have access to the defendants' software and so was not competent to identify which trade secrets it appropriated from his software. Lynchval never objected to the April 15 Order.

During April, 1996, Lynchval asserts that one of its two expert witnesses, Gary Mevorah, was forced to withdraw his services as a testifying expert due to personal and professional commitments. Lynchval originally retained Mevorah to issue an expert report and testify on the trade secret issues. Lynchval also retained another expert, Adrien LaBombarde, to testify on ethical and non-technical matters. After Mevorah withdrew, LaBombarde assumed Mevorah's role. Lynchval insists that it was necessary for LaBombarde to compose his own expert report even though the evidence indicates that Mevorah already had drafted his own expert report.

On May 5, Lynchval filed LaBombarde's expert report which referred to some fifty-seven allegedly misappropriated trade secrets. On May 21, defendants moved to strike portions of the expert's report that referred to thirty-six of these trade secrets and for further sanctions, arguing that these trade secrets were not specifically enumerated in items (a)-(qq) or Appendix II. At a May 24 hearing, Lynchval responded that none of these trade secrets were new, but were disclosed to the defendants in its Second Supplemental Response. To the extent that there may have been any discrepancies, Lynchval argued this was due to their unexpected change in experts and the necessity that LaBombarde draft his own expert report.

**\*3** In her May 28 Ruling, Judge Lafkow found that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN Document 992-3 Filed 03/19/07 PageID.16696 Page 4 of 10

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

(1) Lynchval had ample notice that it was required to disclose a final list of allegedly misappropriated trade secrets by the end of discovery, (2) it would be impracticable to reopen discovery to permit defendants to conduct necessary depositions on newly identified items in the expert report, and (3) defendants would be prejudiced if Lynchval were permitted to amend its expert report. Consequently, Judge Lefkow granted the defendants' motion "insofar as it seeks an order striking from the expert's report material relating to previously undisclosed trade secrets allegedly misappropriated by the defendants." However, Judge Lefkow did not determine which of the thirty-six trade secrets at issue were undisclosed. She instead directed the parties to confer in good faith and resolve which of these trade secrets were "merely different characterizations" of previously identified trade secrets and which were truly new. In addition, Judge Lefkow denied the defendants' request for monetary sanctions because Lynchval's "representations to the court were in the main prognostications which did not materialize because of the unexpected change in expert witnesses."

Unfortunately, the parties have proven incapable of resolving this matter among themselves. Consequently, Lynchval submits this Motion to Review and Reverse the May 28 Ruling arguing that (1) Judge Lefkow imposed the sanction without providing Lynchval with the opportunity to submit a written brief or fully prepare an oral defense, and (2) the sanction was unwarranted and unjust under the facts. Lynchval asserts that the May 28 Ruling was unwarranted because its final response to Interrogatory 2 complied with Judge Lefkow's instructions and provided the defendants with adequate notice of all thirty-six objected trade secrets. In addition, Lynchval contends that any failure on its part to comply with Judge Lefkow's instructions was neither willful nor in bad faith. In particular, Lynchval points to Judge Lefkow's refusal to impose monetary sanctions and her attendant finding that any failure to obey her discovery orders were due primarily to its unexpected change in experts. Finally, Lynchval argues that the defendants have not suffered any incurable prejudice, and that the less drastic sanction of reopening discovery for the defendants at Lynchval's cost is available.

Defendants respond that the May 28 Ruling was warranted under the law and was a logical extension of Judge Lefkow's April 15 Order excluding from Lynchval's response to Interrogatory 2 those trade secrets in Appendix I not "specifically set forth" in items (a)-(qq) or Appendix II of the supplemental response. Defendants contend that Lynchval's Second Supplemental Response did not provide them with notice that it intended to pursue any of the thirty-six trade secrets at issue. In particular, defendants argue that Judge Lefkow required Lynchval to specifically enumerate any allegedly stolen trade secrets by the close of fact discovery. Defendants contend that Lynchval's own representations to the defendants and the court reveal that it understood this requirement.

**\*4** For their part, defendants also object to the May 28 Ruling insofar as it declined to impose monetary sanctions against Lynchval. Defendants argue that Judge Lefkow's factual finding regarding the degree of Lynchval's fault was clearly erroneous.

DISCUSSION

I. *Opportunity to Respond.*

As an initial matter, the court finds that Judge Lefkow provided Lynchval with adequate time to respond to the defendant's motion for sanctions. Defendants filed their motion and provided Lynchval with copies on May 21, 1996, three days prior to oral arguments. All parties were then present at the May 24 hearing, and argued over the motion for about one hour. The record reveals that Lynchval did not request the opportunity to submit a written brief until the conclusion of these oral arguments. Lynchval has cited neither to statute nor precedent indicating that it was entitled as a matter of law to either more time or an absolute right to submit a written brief. *See Chambers v. NASCO, Inc., 501 U.S. 32, 57, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27 (1991)* (discovery sanctions require fair hearing and opportunity to respond). Therefore, the court finds that Lynchval had adequate opportunity to prepare a defense and respond to the defendants' charges.

II. *Standard of Review.*

Next, this court must determine the appropriate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 992-3   Filed 03/19/07   PageID.16697   Page 5 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

standard under which to review Judge Lefkow's May 28 Ruling. Federal Rule of Civil Procedure 72(a) authorizes a magistrate judge to issue binding orders that are "not dispositive of a claim or defense." Under Federal Rule 72(a), a district court may reverse such a nondispositive order that is "clearly erroneous or contrary to law." If the order would be "dispositive of a claim or defense of a party", however, then Federal Rule 72(b) only authorizes a magistrate judge to issue a recommendation to the district court that is subject to that court's de novo review. Consequently, the appropriate standard of review depends upon whether the May 28 Ruling was dispositive or nondispositive of the merits of the case.

The statute providing the authority granted in Federal Rule 72 does not use the terms dispositive or nondispositive. *See* 28 U.S.C. § 636(b). Rather, section 636(b) authorizes a magistrate judge to determine "any pretrial matter" with the exception of eight specified matters, including motions for the "involuntary dismissal of a claim or defense." FN1 *Id.* Reading section 636(b) and Federal Rule 72 together, the term "dispositive" in Rule 72(b) generally refers to those orders resolving these eight listed matters. *See Adkins v. Mid-American Growers, Inc.,* 143 F.R.D. 171, 175 n. 3 & 176 (N.D.Ill.1992) ("dispositive" and "nondispositive" in Rule 72 do not create categories of orders "separate from the statute that Rule 72 implements").

> FN1. Section 636(b) provides in relevant part:
> (b)(1) Notwithstanding any provision of law to the contrary-
> (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph
> (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

However, dispositive orders are not strictly limited to those orders that formally resolve the eight matters enumerated in the statute. Orders that have the practical effect of necessarily resolving one of those eight matters, such as the "involuntary dismissal of a claim or defense," are considered dispositive of the merits and, consequently, require de novo review under Federal Rule 72. *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458 (10th Cir.1988) (order striking plaintiff's pleadings that would result in imminent dismissal of claim are dispositive and so exceed magistrate judge's statutory authority); *see, e.g., Woods v. Dahlberg,* 894 F.2d 187, 187 (6th Cir.1990) (denial of motion to proceed *in form pauperis* is dispositive as functional equivalent to dismissal); *see also, e.g., Alpern v. Lieb,* 38 F.3d 933, 935 (7th Cir.1994) (finding Federal Rule 11 sanction for money damages "dispositive" of merits); *Bennett v. General Caster Service of N. Gordon Co.,* 976 F.2d 995, 997 (6th Cir.1992) (same); *see generally* 7 *Moore's Federal Practice* 72.04[2-4] (1996). Accordingly, if striking references to certain alleged trade secrets from the plaintiff's expert report necessarily disposes of the substantive merits of Lynchval's claim, then this court must review the May 28 Ruling de novo.

**\*5** Although severe, Judge Lefkow's May 28 Ruling was not "dispositive of a claim or defense" within the meaning of Federal Rule 72(b). As a formal matter, the May 28 Ruling does not expressly dismiss any part of Lynchval's action. The Ruling also does not explicitly prohibit Lynchval from asserting at trial that the defendants misappropriated the stricken trade secrets. Rather, the Ruling only strikes any references to the trade secrets in question from the report of Lynchval's expert witness. Certainly, this sanction is severe. Lynchval's cause of action is likely to revolve around the comparison of highly sophisticated computer programs. Consequently, expert reports and testimony comparing and contrasting these computer programs will have a powerful influence over any trier of fact. Lynchval has no other expert witness scheduled to testify, and any effort to enlist another at this late date would prejudice the defendants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN Document 992-3 Filed 03/19/07 PageID.16698 Page 6 of 10

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

However, this sanction does not necessarily preclude Lynchval's ability to obtain a judgment on any proscribed trade secrets. Lynchval may still enter any other evidence or documents on these trade secrets that it uncovers through discovery, as well as call other witnesses to testify regarding these alleged trade secrets.

For the reasons set forth above, the court considers the May 28 ruling a nondispositive order under Federal Rule 72(a). Therefore, the May ruling will be reversed only if it was "clearly erroneous or contrary to law."

### III. *Judge Lefkow's Order to Strike.*

#### A. *Disclosure of Trade Secrets.*

Lynchval argues that the May 28 Ruling was unwarranted and contrary to law because its Supplemental Response to Interrogatory 2 adequately disclosed each of the thirty-six trade secrets at issue. Lynchval asserts that Judge Lefkow never directed it to provide a specific list of trade secrets but only provide a "final statement." Therefore, despite the fact that none of the thirty-six trade secrets at issue appear in identical wording on the text of the Second Supplemental Response, Lynchval contends that it still identified and disclosed each by reference. First, Lynchval argues that ten of these trade secrets were implicitly revealed by the phrases "specific methods of calculation embodied in Lynchval Systems software" or "the somewhat general aspects of the structure and organization of Lynchval Systems' software." Second, Lynchval argues that another nineteen of the trade secrets were disclosed by reference to thirty-one deposition documents as containing allegedly stolen trade secrets. *See C & F Packing Co. v. IPB, Inc.,* 1994 U.S. Dist. Lexis 1210 (N.D.Ill.1994) (finding plaintiffs adequately identified allegedly stolen trade secret of pizza recipe by attaching copy of recipe). Third, Lynchval argues that seven of the trade secrets were specifically set forth, but phrased somewhat differently.

The court first addresses Lynchval's discovery duties. In response to WCI's motion to compel, Judge Lefkow ordered Lynchval to identify its allegedly stolen trade secrets. Lynchval's claims involve sophisticated and highly complex computer programs. Neither the court nor any trier-of-fact is likely to have any expertise in this matter. More importantly, the defendants cannot be expected to prepare its rebuttal to Lynchval's claims without some concrete identification of exactly which aspects of Lynchval's programs they alleged were incorporated into their own program. *See* AMP, Inc. v. Fleischhacker, 823 F.2d 1199, 1203 (7th Cir.1987) (plaintiff must ultimately identify specific trade secrets to succeed on trade secret claims). Accordingly, only after Lynchval provided a concrete listing, in the form of its Request to Admit No. 21, did Judge Lefkow find that Lynchval had temporarily satisfied her order to the extent that Lynchval had not identified additional trade secrets. As Lynchval argues, the record does not reveal that Judge Lefkow specifically directed Lynchval at this time to present these trade secrets in a particular format. But Judge Lefkow directed Lynchval that it must provide the defendants with a "final statement", as well as come forward and update its previous list as it identified further allegedly stolen trade secrets. The record of the November hearings reveal that Judge Lefkow required Lynchval to concretely and specifically identify these trade secrets in this "final statement."

**\*6** In reference to ten of the alleged trade secrets FN2, Lynchval asserts that its Supplemental Response revealed these as either "specific methods of calculation embodied in Lynchval Systems software" or "the somewhat general aspects of the structure and organization of Lynchval Systems' software." These statements put neither the defendants or the court on notice of any alleged trade secret, other than the fact that it is some aspect or function of the software. In fact, it is difficult to imagine any function of Lynchval's computer system that arguably could not fall under such vague descriptions. Judge Lefkow clearly required something more specific than this manner of catch-all phrasing. After review of these trade secrets and Lynchval's responses to the interrogatories, the court finds that these ten trade secrets were not disclosed in any of Lynchval's response to Interrogatory 2.

FN2. LaBombarde's expert report labels

these alleged trade secrets as; (o), (s), (u), (v), (w), (y), (dd), (nn), (tt(5)), (vv), and (ww).

Lynchval argues that its Supplemental Response to Interrogatory 2 disclosed another nineteen of the alleged trade secrets [FN3] by incorporating any trade secrets contained in thirty-one identified deposition exhibits and other documents. Lynchval has submitted four of these documents where each of these nineteen alleged trade secrets are highlighted and specifically enumerated. As explained, however, Judge Lefkow directed Lynchval to specifically identify the trade secrets at issue. The attached exhibits reveal that these four documents contained descriptions of at least forty computer functions that potentially constituted trade secrets. Yet, Lynchval's position would require the defendants to ascertain which nineteen Lynchval was claiming. Moreover, the Second Supplemental Response referred to thirty-one documents containing hundreds of pages of material. Lynchval apparently expects the defendants to divine which four documents ultimately contained the allegedly stolen trade secrets. As Lynchval argues, Judge Lefkow did not demand that the trade secrets be provided in list format. However, Judge Lefkow required Lynchval to specifically identify each allegedly stolen trade secret to the defendants. Reference to numerous documents containing a plethora of potential trade secrets does not reasonably satisfy that directive [FN4]. Consequently, the court finds that Lynchval's Second Supplemental Response to Interrogatory 2 does not disclose these nineteen trade secrets.

> FN3. LaBombarde's expert report labels these alleged trade secrets as; (b), (c), (d), (e), (j), (k), (q), (r), (t), (jj), (kk), (oo), (rr), (ss(1)), (ss(2)), (tt(1)), (tt)(2)), (tt(3)), and (uu).

> FN4. Lynchval's reliance on *C & F Packing Co. v. IPB, Inc.*, 1994 U.S. Dist. Lexis 1210 (N.D.Ill.1994) is unavailing. First, the *C & F Packing Co.* plaintiff could rely on an attached description of its trade secret recipe as a business document under Federal Rule of Civil Procedure 33 because the description was contained in the plaintiff's own document. *See* Federal Rule of Civil Procedure 33(d) (permitting party to attach its own business records to respond to interrogatories). In its Second Supplement Response, Lynchval refers to copies of the defendants' documents. Second, the recipe at issue in *C & F Packing Co.* in all likelihood was far less complex than the parties' computer software. Thus, a single description of the processes of the entire recipe would adequately notify a defendant of the range of potential stolen secrets. Lynchval's own arguments before Judge Lefkow reveal that it is unlikely that a similar recipe exists for the computer programs at issue in this case.

Finally, Lynchval argues that seven of the trade secrets [FN5] at issue are merely reworded versions of trade secrets specifically enumerated in its Second Supplemental Response. As explained, LaBombarde was not Lynchval's original expert witness for identifying trade secrets. Lynchval asserts that when LaBombarde composed his own expert report, he did not adopt every trade secret from Mevorah's notes and draft verbatim but altered some of the descriptions. Lynchval notes that Judge Lefkow never articulated that Lynchval is bound by precisely identical descriptions that it must provide in its "final statement." Thus, Lynchval contends that these seven trade secrets are merely different characterizations of the same trade secrets already identified in the Second Supplemental Response.

> FN5. LaBombarde's report labels these alleged trade secrets as; (f), (h), (i), (ff), (qq), (xx), and (yy).

*7 Defendants reply that none of these seven trade secrets were disclosed because they are not identical to any descriptive phrases in the Second Supplemental Response. In light of the complexity of discerning the concrete manifestation of these trade secrets in a functioning computer program from a brief grammatical description, defendants assert that LaBombarde's alterations to the descriptions render them distinct computer functions that their expert cannot be expected to identify or locate in the actual processes of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 992-3   Filed 03/19/07   PageID.16700   Page 8 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

Lynchval's programs.

Although the court appreciates the defendant's difficult task in discerning each alleged trade secret's manifestation in the software in order to prepare its defense, the court finds that five of the remaining trade secrets are adequately similar to specific descriptions set forth in Lynchval's response to have placed the defendants on notice. Alleged trade secret (h) is disclosed by both items (dd) and (ii) in the Second Supplemental Response. Although they constitute somewhat broader capabilities, alleged trades secrets (f) and (ff) are respectively disclosed by Second Supplemental Response items (g) and (w). The descriptions provided in the Second Supplemental Response provide concrete examples and are adequately analogous as to have put the defendants and their expert on notice of the nature of the allegedly stolen trade secret. Finally, alleged trade secrets (xx) and (yy) are both adequately disclosed by the narrative description of the "building block technique" to determine benefits contained in Lynchval's Supplemental Response to Interrogatory 1. Although this narrative is located in Lynchval's first Supplemental Response to Interrogatory 1, Lynchval's response to Interrogatory 2 incorporated this section by reference. This narrative description provides a description of an alleged trade secret as concrete as those set forth in items (a)-(qq) or Appendix II. Accordingly, the court finds that Lynchval's Second Supplemental Response to Interrogatory 2 adequately disclosed LaBombarde's alleged trade secrets (f), (h), (ff), (xx) and (yy).

However, Lynchval attempts to argue that two of these trade secrets, (i) and (qq), are disclosed by the phrase; "the structures and respective organizations of the Lynchval Systems software constitute protectable trade secrets." This vague description does not constitute notice of any trade secret. Therefore, the court finds that these two alleged trade secrets were not disclosed in the prior response.

B. *Sanction.*

Federal Rule of Civil Procedure 37(b)(2) authorizes a court to strike evidence or disallow claims as a sanction against a litigant that does not cooperate with the discovery process FN6. Federal Rule 37(b)(2) only authorizes a court to impose a sanction if the party fails to comply with a discovery order. Federal Rule 37(b)(2); *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir.1994). In addition, a discovery sanction that dismisses a party's claim requires that the party's conduct displayed willfulness, bad faith or fault. *Phillips Medical Sys. Int'l v. B.V. Bruetman,* 982 F.2d 211, 214 (7th Cir.1992). A party may be subject to less severe sanctions than dismissal if it merely fails to respond to a discovery order. *Halas v. Consumer Services, Inc.,* 16 F.3d 161, 164-65 (7th Cir.1994). With respect to sanctions under Federal Rule 37(b), "order" is interpreted broadly. *Brandt,* 30 F.3d at 756 n. 7. A formal written order to comply with a discovery request is not required; any unequivocal oral directive to produce certain information is sufficient. *See Halas,* 16 F.3d at 164.

> FN6. Neither the defendants' original Urgent Motion for Sanctions nor the May 28 Ruling identifies the legal authority for the sanction; Federal Rule of Civil Procedure 37(b)(2), Federal Rule 37(d) or the inherent powers of the court. The court shall proceed under the presumption that Judge Lefkow issued her Ruling pursuant to Federal Rule 37(b)(2) but notes that this is only one possible source of authority.

*8 In September, 1995, WCI submitted a motion to compel Lynchval to specify the allegedly stolen trade secrets Judge Lefkow granted WCI's motion to the extent that it required Lynchval to at least specify those trade secrets that it had currently identified. At the subsequent hearing on November 27, Judge Lefkow only found that Lynchval's supplemental responses satisfied her orders at that time in light of the specific trade secrets set forth in Lynchval's Request to Admit. Judge Lefkow then instructed Lynchval to (1) update its list of trade secrets as they became available to it, and (2) be prepared to ultimately submit a "final statement." Although Judge Lefkow did not provide a specific date, it was clear that she required this "final statement" by the close of fact discovery. In fact, at the February 26 hearing, Lynchval's counsel argued that its Second Supplemental Response had satisfied "the Court's directive" and his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 992-3   Filed 03/19/07   PageID.16701   Page 9 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 8

own representations that Lynchval would provide a "supplemental list." In light of the November hearings and Lynchval's representations at those hearings, the court finds that Judge Lefkow's oral directive constituted an order requiring Lynchval to produce a final response to Interrogatory 2, specifying each allegedly stolen trade secret, by the end of fact discovery.

The preclusion of certain evidence or testimony generally does not constitute the dismissal of a claim or a default judgment. *See, e.g.,* Melendez v. Illinois Bell Telephone Co., 79 F.3d 661, 671-72 (7th Cir.1996) (preclusion of expert testimony did not constitute default judgment); Dellums v. Powell, 566 F.2d 231, 235 (D.C.Cir.1977); Von Brimer v. Whirlpool Corporation, 536 F.2d 838 (9th Cir.1976). However, a sanction that prevents a party "from presenting any evidence whatsoever on a claim" may constitute a de facto dismissal or default judgment on that claim. Crown Life Ins. v. Craig, 995 F.2d 1376, 1381 (7th Cir.1993). Although the May 28 Ruling significantly restricts Lynchval's ability to demonstrate that the defendants incorporated these trade secrets into their competing computer program, the Ruling does not prohibit Lynchval from proceeding on these matters at trial. More importantly, Lynchval may still offer any documents or other evidence it obtains in discovery to support its contention that defendants stole these trade secrets. Compare Crown Life Ins., 995 F.2d at 1381. Because the May 28 Ruling does not predetermine the disposition of Lynchval's claim in respect to these trade secrets, the Ruling does not constitute a de facto dismissal. Therefore, in contrast to Lynchval's position, the May 28 Ruling did not require a finding of willfulness or bad faith. *See* Cope v. McPherson, 781 F.2d 207, 209 (D.C.Cir.1985) (if plaintiff could still proceed on claim without precluded evidence, no showing of willfulness or bad faith is required).

A sanction under Federal Rule 37(b) should be proportionate to the circumstances surrounding the failure to comply with discovery. Crown Life, 995 F.2d at 1382; *see* Federal Rule 37(b) (award such sanctions "as are just"). It should reflect the culpability of the delaying party and seek to prevent prejudice to the other party. Wilson v. Volkswagon of America, Inc., 561 F.2d 494, 504 (4th Cir.1977); *see* Tamari v. Bache & Co. (Lebonan), 729 F.2d 469, 473 (7th Cir.1984). The preclusion of evidence from an expert report constitutes a significant sanction, particularly in a case likely to revolve around expert testimony. However, the court cannot find that Judge Lefkow's sanction is contrary to law. First, the fact that Judge Lefkow did not find Lynchval's violation of her discovery orders to constitute willful misrepresentations does not indicate that Lynchval was free of blame. The May 28 Ruling also holds that Lynchval had ample notice that they were required to identify a final list of allegedly stolen trade secrets by the close of discovery. As explained above, the court affirms this holding.

**\*9** Second, to the extent that any of these trade secrets were not set forth in Lynchval's prior responses to Interrogatory 2, the defendants have suffered clear prejudice. In particular, the preparation of their defense is seriously hampered. The defendant's primary strategy has been to depose Mr. Lynch, the president of Lynchval, about each alleged trade secret and how it works on his software. Obviously, the defendants' could not pursue this strategy with any newly identified trade secrets. Lynchval responds that the court may cure this prejudice simply by reopening discovery and permitting the defendants to resume depositions at the plaintiff's cost. Judge Lefkow already reopened discovery once for the plaintiff to permit it to pursue its allegations in respect to the LVmed program. Reopening discovery again compounds the delay until trial and subjects the defendants to costs beyond the depositions themselves. Defendants reasonably expected to obtain a complete list of the allegedly stolen trade secrets by February. The parties have already prepared and exchanged expert reports. In light of any additional trade secrets and subsequent depositions, defendants' expert would have to amend his own report in light of this new information.

In sum, Judge Lefkow's May 28 Ruling striking undisclosed trade secrets from Lynchval's expert report was neither clearly erroneous nor contrary to law. The May 28 Ruling accurately accounts, at the very least, for Lynchval's negligent failure to follow the court's directives, as well as its likely prejudice to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 992-3   Filed 03/19/07   PageID.16702   Page 10 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 9

defendants. Accordingly, the court affirms the May 28 Ruling.

### III. *Monetary Sanctions.*

Under Federal Rule 37(b)(2), the court should impose monetary sanctions on the party failing to obey a discovery order unless the court finds the award of expenses unjust. In her May 28 Ruling, Judge Lefkow denied monetary sanctions because she found that Lynchval's failure to satisfy her previous order in accurately identifying the trade secrets it would pursue at trial was primarily due to Lynchval's change of experts. Defendants argue that this factual finding was clearly erroneous and ask the court to reverse this aspect of the May 28 Ruling.

After reviewing the record, the court finds that Judge Lefkow's finding was not clearly erroneous. First, defendants have not established that Lynchval's change in experts was expected or due to nefarious stratagem. Second, the fact that Lynchval's Second Supplemental Response was derived from Mevorah's work does not undermine Judge Lefkow's conclusion that Lynchval was not guilty of deceit. The court does not find Lynchval's desire that LaBombarde, its replacement expert, compose his own report instead of merely adopting Mevorah's report to be wholly unreasonable. Lynchval may have worried about the implications for cross-examination, LaBombarde's willingness to adopt Mevorah's text notwithstanding. Lynchval certainly bears some fault for not ensuring that LaBombarde not add previously undisclosed trade secrets. However, Judge Lefkow was not clearly erroneous in finding that this fault failed to render Lynchval's earlier conduct as intentional misrepresentations. Therefore, the court affirms the May 28 Ruling denying monetary sanctions.

### CONCLUSION

**\*10** For the reasons set forth above, the court, having reviewed the May 28 Ruling and objections thereto, denies Lynchval's motion to reverse Judge Lefkow's May 28 Ruling. Likewise, the defendants' objections to the May 28 Ruling are overruled. The May 28 Rulings are affirmed. In addition, the court finds that all of the thirty-six alleged trade secrets at issue under the May 28 Ruling were previously undisclosed except those trade secrets labeled in Lynchval's expert report as (f), (h), (ff), (xx) and (yy).

N.D.Ill., 1996.
Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.
Not Reported in F.Supp., 1996 WL 780492 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:95cv01490 (Docket) (Mar. 08, 1995)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.