Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorneys for The SCO Group, Inc.*

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE COURT'S ORDER DENYING SCO'S MOTION FOR RELIEF FOR IBM'S SPOLIATION OF EVIDENCE**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

RECEIVED CLERK

2008 APR 16  P 10: 40

U.S. DISTRICT COURT
DISTRICT OF UTAH

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard – Suite 1200
Ft. Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307

*Attorneys for The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC. <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE COURT'S ORDER DENYING SCO'S MOTION FOR RELIEF FOR IBM'S SPOLIATION OF EVIDENCE** <br><br> **[FILED UNDER SEAL]** <br><br> Case No. 2:03CV0294DAK <br> Honorable Dale A. Kimball <br> Magistrate Judge Brooke C. Wells |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

    I.     IBM INSTRUCTED LINUX PROGRAMMERS TO "PURGE" OR "DELETE" CODE FROM THEIR SANDBOXES, AND THESE INSTRUCTIONS WERE FOLLOWED. .................................................................. 5

    II.    THE EVIDENCE DESTROYED BY IBM IS NOT AVAILABLE THROUGH CHANGE CONTROL MANAGEMENT SYSTEMS, SUCH A CMVC OR RCS ................................................................................................................ 8

    III.   SCO WAS PREJUDICED BY IBM'S DESTRUCTION OF EVIDENCE. ......... 10

    IV.   IBM DESTROYED THE EVIDENCE IN BAD FAITH. .................................... 11

CONCLUSION .................................................................................................................. 16

i

## TABLE OF AUTHORITIES

Page

**Cases**

Adams v. Gateway, Inc.,
  No. 2:02-CV-106 TS, 2006 WL 2563418 (D. Utah 2006)..........................................................13

Brown & Williamson Tobacco Corp. v. Jacobson,
  644 F. Supp. 1240 (N.D. Ill. 1986) .........................................................................................14

Brown & Williamson Tobacco Corp. v. Jacobson,
  827 F.2d 1119 (7th Cir. 1987) .................................................................................................14

Cabinetware, Inc. v. Sullivan,
  No. Civ. S. 90-313 LKK, 1991 WL 327959 (E.D. Cal. 1991) ................................................11

Computer Assocsiates Int'l, Inc. v. Am. Fundware, Inc.,
  133 F.R.D. 166 (D. Colo. 1990) .........................................................................................13, 14

Harvey by Blankenbaker v. United Transp. Union,
  878 F.2d 1235 (10th Cir. 1989). ................................................................................................5

Hollern v. Wachovia Secs.,
  Nos. 05-1253, 05-1300, 2006 WL 2361627 (10th Cir. Aug. 16, 2006) ....................................4

In re Napster, Inc. Copyright Litig.,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..................................................................................13

Plaintiff, The SCO Group, Inc. ("SCO"), by and through undersigned counsel, respectfully submits this Memorandum in Support of its Objections to the Magistrate Court's Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence.

## PRELIMINARY STATEMENT

On September 25, 2006, SCO filed its Motion for Relief for IBM's Spoliation of Evidence. In the Motion, SCO demonstrated that, shortly after SCO filed suit against IBM, IBM executives and lawyers directed multiple IBM Linux programmers to destroy source code on their computers that would have been highly relevant to SCO's claims. SCO's motion for relief from this spoliation was referred to the Magistrate Court in this Court's November 29, 2006 Order (at 4 n.2), heard on January 18, 2007 ("January Hearing") (Ex. 1), and denied by the Magistrate Court on March 2, 2007 ("March Order") (Ex. 2). The order of reference provided that the Court would apply a de novo standard of review if the Magistrate Court's decision was appealed. SCO respectfully submits that upon such review, the Magistrate Court's denial of this Motion should be reversed. SCO is contemporaneously filing a motion for reconsideration with the Magistrate Court, addressing misapprehensions of fact and law in the Magistrate Court's March Order.

## BACKGROUND

In early April 2003, shortly after the filing of SCO's lawsuit, IBM cut off its Linux programmers' access to Dynix/ptx and AIX code[1] and then directed numerous Linux

---

[1] This clearly shows that, contrary to what it has repeatedly argued to this court, IBM understood exactly what the thrust of SCO's allegations was about IBM using AIX and Dynix technology and expertise to enhance Linux in violation of its contractual obligations.

programmers to "purge" or "delete" source code from their "sandboxes" and personal computers.
An April 8, 2003 email from an IBM executive stated:

REDACTED

(Ex. 3.) A "sandbox" is a private computer workspace in which programmers can draft and test
source code they are developing without impacting the entire operating system.

The destruction of evidence from these sandboxes or computer workspaces has
prejudiced SCO. The evidence destroyed in the purging of the sandboxes would have provided
further support for SCO's claims or led to the discovery of additional relevant evidence.
Namely, it would have demonstrated that IBM's Linux programmers possessed at their fingertips
the very AIX and Dynix/ptx code IBM contends those programmers did not access or use in
developing Linux, and it would have shown what specific parts of those operating systems the
programmers chose to retain on their computers. This evidence is highly probative and should
not have been destroyed. Therefore, SCO is entitled, at minimum, to an adverse inference from
this destruction of evidence that began one month after the case was filed.

The facts and context of IBM's conduct shows that IBM destroyed this evidence in bad
faith. In March 2003, SCO brought a significant lawsuit against IBM, which plainly contested
IBM's use of UNIX-derived operating systems in developing Linux. Following that lawsuit,
IBM promptly cut off its Linux programmers' access to those operating systems and instructed
them to purge code from their sandboxes and computers. In discovery in this case, an IBM
witness admitted that such an order had been received and acted upon. In response to SCO's

2

spoliation motion these same witnesses changed their testimony in an attempt to deny what is clear from the foregoing facts. This is not the innocent misunderstanding that IBM would now have this Court believe.

To remedy IBM's spoliation of this highly relevant evidence, SCO requested in its Motion that the Magistrate Court (1) enter an order precluding IBM from contesting that it relied on AIX and Dynix/ptx source code in making contributions to Linux development, and (2) imposing adverse-inference instruction against IBM. Both of SCO's requests are consistent with the common-sense and well-established principle that a party who has notice that evidence is relevant to litigation and who proceeds to knowingly destroy it is more likely to have been threatened by that evidence than a party in the same position who does not destroy the evidence.

IBM opposed SCO's motion on essentially four grounds: First, IBM contested that it ever gave a directive to destroy source code, and further contended that even if source code was deleted from programmers' sandboxes, it was available and had been produced elsewhere to SCO, so no evidence was actually destroyed. Second, IBM argued that, in light of the "fact" that no evidence was destroyed, SCO cannot show that IBM acted in bad faith. Third, IBM contended that SCO was not prejudiced because no evidence was destroyed and, even if it was destroyed, it was not relevant to any of SCO's claims. Fourth, and finally, IBM contended that SCO waived any relief for IBM's spoliation of evidence in an earlier stipulation regarding discovery issues. SCO refuted each of these arguments in its reply brief.

At the January hearing on SCO's motion, the Magistrate Court announced that the "motion regarding spoliation and the adverse inference instruction will be denied," and explained the following bases for that decision:

3

- "The evidence before me, as put into context . . . cannot show that any evidence was lost or destroyed. In fact, I find that it is available and has been available through CMVC."

- "The evidence before me, when seen in context, does not show that IBM acted in bad faith nor does the evidence show that [SCO] has been prejudiced because the evidence, as I indicated, has been and is reasonably available."

(Ex. 1 at 56:2-9.) In addition, the Magistrate Court asked IBM to assist SCO in locating the evidence IBM contended and the Court concluded was still available in CMVC. (Id. at 58:12-14.) In the written March Order, the Magistrate Court formally denied SCO's motion "for the reasons set forth by the Court at the hearing held on January 18, 2007." (Ex. 2.)

The Magistrate Court's order should be overturned for the following reasons: First, the Magistrate Court's finding that the destroyed evidence is available in CMVC is wrong, and could not possibly relate to a substantial portion of the evidence SCO contends was destroyed. Second, SCO was clearly prejudiced by the destruction of highly probative evidence. Third, bad faith can and should be inferred from the timing and nature of IBM's destruction.

## STANDARD OF REVIEW

SCO's Motion for Relief for IBM's Spoliation of Evidence this spoliation was referred to the Magistrate Court in this Court's November 29, 2006 Order (at 4 n.2). The order of reference provided that the Court would apply a de novo standard of review if the Magistrate Court's decision was appealed. This appropriately reflects that a mixed question of law and fact, as involved in this motion, is reviewed de novo if it "involves the application of legal principles to undisputed facts," Hollern v. Wachovia Secs., Nos. 05-1253, 05-1300, 2006 WL 2361627, at *6

4

(10th Cir. Aug. 16, 2006) (Ex. A), or if the issue is "[w]hether the district court failed to consider

or accord proper weight or significance to relevant evidence," <u>Harvey by Blankenbaker v. United</u>

<u>Transp. Union,</u> 878 F.2d 1235, 1244 (10th Cir. 1989).

<b>ARGUMENT</b>

**I.      IBM INSTRUCTED LINUX PROGRAMMERS TO "PURGE" OR "DELETE" CODE FROM THEIR SANDBOXES, AND THESE INSTRUCTIONS WERE FOLLOWED.**

After SCO filed its lawsuit, IBM management decided to remove access by its Linux

Technology Center ("LTC") programmers to AIX and Dynix/ptx source code.  This decision

shows that IBM well understood that SCO was claiming that IBM had misused Unix-derived

works, and the significance of that code to SCO's claims.  Daniel Frye, the head of IBM's LTC,

testified:

REDACTED

(Ex. 4 at 91.)

On April 8, 2003 – one month after SCO's lawsuit was filed and shortly after the decision

to restrict access to AIX and Dynix/ptx source code had been made – Randal Swanberg, a senior

IBM executive, sent the following email to IBM managers and team leaders relaying additional

instructions:

5

REDACTED

(Ex. 3 (emphasis added).)  In this email, Mr. Swanberg was referring to a decision in a meeting of IBM's Open Source Steering Committee (OSSC), which is an IBM organization charged with oversight of IBM's contributions to open-source software such as Linux.  The OSSC includes IBM executives and lawyers.  (Rule 30(b)(6) Deposition of Mark Brown (Mar. 10, 2006) at 15-16 (Ex. 5).)

This OSSC decision described in the Swanberg email was then carried out more broadly within IBM.  Daniel Frye instructed programmers within IBM's Linux Technology Center to "purge" or "delete" AIX and Dynix/ptx source code from their local machines and sandboxes.  As suggested in the Swanberg email, this deletion instruction was given in addition to the newly-implemented decision to restrict programmers' access to that source code.  Dan Frye testified:

REDACTED

REDACTED

(Ex. 4 at 92-93 (emphasis added).)  In short, programmers within the LTC – who were

specifically assigned to work on Linux, who had previously had access to AIX and Dynix/ptx

code, and who had had that access removed in response to the lawsuit – were then further

instructed to purge or delete all such code from their machines and to purge and delete the

contents of their sandboxes.  Those programmers were not programming for AIX or Dynix/ptx

when they were told to delete that code – they were specifically assigned by IBM to program for

Linux.

IBM Linux programmer (and former Dynix/ptx programmer) Paul McKenney confirmed

that he deleted Dynix/ptx source code from his machine in response to such an instruction.  He

testified:

REDACTED

REDACTED

Furthermore, Mr. McKenney's admission that he is not aware of IBM backing up the code is directly contrary to the main thrust of IBM's opposition to this motion – that the destroyed code was available from CMVC or RCS.

**II.   THE EVIDENCE DESTROYED BY IBM IS NOT AVAILABLE THROUGH CHANGE CONTROL MANAGEMENT SYSTEMS, SUCH AS CMVC OR RCS.**

Notwithstanding this compelling proof that evidence was destroyed, the Magistrate Court concluded: "The evidence, as put into context . . . cannot show that any evidence was lost or destroyed. In fact, I find that it is available and has been available through CMVC." The Magistrate Court's conclusion that this evidence is available through CMVC is incorrect and should be overturned. SCO has also moved for reconsideration by the Magistrate Court on this point.

_____

[2] The Read Copy Update (or RCU) technology is one of the major items of Dynix/ptx technology SCO contends was improperly disclosed by IBM.

8

Neither CMVC (the AIX change control system referenced by the Magistrate Court) nor RCS (the Dynix/ptx change control system) contains the evidence SCO contends IBM destroyed.[3] Even if all the code that was destroyed by purging Linux programmer sandboxes and workspaces could still be located somewhere in CMVC or RCS, that does not mean that no evidence was destroyed. The code that was in the sandboxes or workstations would have demonstrated that IBM's Linux programmers, like Mr. McKenney, retained AIX or Dynix/ptx on their systems while programming for Linux (long after they ceased work on those operating systems). Further, the particular AIX or Dynix/ptx code that a Linux programmer chose to retain on his system while programming for Linux would have provided important proof in that SCO could compare that particular code to the programmers' Linux disclosures. While IBM has contended that a change management control system, such as CMVC or RCS, shows what code had been "checked out" by programmers (Ex. 1 at 46:7), CMVC and RCS could not possibly show whether that code had been retained on programmers' systems when they transitioned to work on Linux, or what particular subparts or versions of the operating system had been retained by the programmer. The fact that some code the programmer chose to retain on his system might be duplicated somewhere on a code repository entirely misses the point.

Accordingly, the Magistrate Court's conclusion that the destroyed code is available on CMVC (or even RCS) should be overturned.

---

[3] The Magistrate Court only referenced CMVC, which is an AIX code repository. CMVC does not contain any Dynix/ptx code, so could not possibly have contained duplicates of any Dynix/ptx code that SCO contends was destroyed. Therefore, SCO also addresses herein IBM's anticipated argument that any destroyed Dynix/ptx code would have been included on the Dynix/ptx change control system, RCS, comparable to AIX's CMVC.

### III.    SCO WAS PREJUDICED BY IBM'S DESTRUCTION OF EVIDENCE.

The Magistrate Court's decision that SCO was not prejudiced appears to have been largely based on the erroneous conclusion that the destroyed evidence was available on CMVC (or presumably, RCS, though that was not addressed).  Without that finding, the Magistrate Court's conclusion regarding prejudice cannot stand.  SCO therefore has also addressed this issue in detail in its Motion for Reconsideration before the Magistrate Court.

The evidence destroyed by IBM is probative to SCO's claims and its destruction prejudiced SCO.  The presence of AIX and Dynix/ptx code in the sandboxes of programmers in IBM's LTC – at their very fingertips – would have further refuted IBM's ongoing assertion that its Linux programmers did not access or rely on Dynix/ptx and AIX source code when they were programming code for Linux.  Moreover, the destroyed evidence would have enabled SCO to provide more specific identification of the AIX or Dynix/ptx code on which the programmers' Linux disclosures was based.

The prejudice to SCO from this destruction is <u>particularly severe</u> in light of the Magistrate Court's June 28, 2006 Order (affirmed on November 11, 2006, pending a motion for reconsideration).  In its December 2005 Submission, SCO was able to identify numerous methods and concepts that IBM programmers disclosed to Linux in violation of its Dynix/ptx software license, but in many cases SCO was not able to identify the specific Dynix/ptx source code behind the methods and concepts.  Those methods and concepts were stricken from SCO's case.  However, <u>the source code deleted from Linux programmer sandboxes would have substantially helped SCO identify the specific Dynix/ptx source code behind these methods and concepts</u>.

10

The importance of the initial source code from which later drafts were developed, and the prejudice flowing from its destruction, was recognized in a similar case involving copyright infringement. In Cabinetware, Inc. v. Sullivan, No. Civ. S. 90-313 LKK 1991 WL 327959 (E.D. Cal. 1991) (Ex. B), the defendant destroyed source code after receiving a document request for such code. The magistrate judge found that "computer programs can be easily modified to disguise the copying of source codes and that a comparison of [the defendant's] initial source code with [the plaintiff's] source code is of critical importance in this case." Id. at *2. Therefore, the magistrate judge recommended that an adverse inference instruction be given. The district court agreed that the evidence that was destroyed was "essential to plaintiff's case" of copyright infringement, and entered a default judgment on the issue of liability against the defendant. Id. at *2, 4. As in the Cabinetware case, the code in IBM Linux programmers' sandboxes was important to SCO's case because computer programs can so "easily be modified to disguise the copying of source codes." .

## IV.    IBM DESTROYED THE EVIDENCE IN BAD FAITH.

The Magistrate Court's finding that IBM did not act in bad faith appears to have been largely based on the erroneous conclusion that the destroyed evidence was available on CMVC (or RCS). Without that finding, the Magistrate Court's conclusion regarding bad faith cannot stand. This issue is also addressed in detail in SCO's motion for reconsideration before the Magistrate Court.

Bad faith can and should be inferred from the circumstances surrounding IBM's directive to purge programmer sandboxes or workspaces. As IBM became involved in Linux, IBM repeatedly and publicly boasted that its experience in and disclosures from AIX and Dynix/ptx

was the critical difference in evolving Linux from a hobbyist system to a commercially-hardening operating system. For example, in an interview with Linux Magazine about the state of the Linux kernel in 2001, IBM programmer Patricia Gaughen stated that Linux was "not

REDACTED

example, Dan Frye, the Director of the LTC, confirmed in an interview with the Consulting Times that the LTC "wanted skills from across IBM, and we have people from AIX, and OS2 . . . and PTX, and Research and so on." (Consulting Times, Inside IBM – Dan Frye and the Linux Technology Center, Ex. 8.) Frye also discussed the porting of IBM's proprietary technology to Linux, stating "[IBM] just add[s] arms and legs and skills to make [projects within Linux] go faster." (Id.)

When SCO realized that IBM was improperly using these Unix-derived works in Linux, SCO confronted IBM regarding the problem without success, and then SCO filed the instant lawsuit against IBM on March 6, 2003. SCO's initial complaint against IBM made clear that the conduct of the LTC in making disclosures to Linux development was at the heart of the lawsuit.

IBM's destruction of evidence then ensued as a direct response to the lawsuit. After SCO filed its lawsuit, IBM immediately determined that access by its Linux programmers to AIX and Dynix/ptx code should be removed. This shows that there was no confusion on IBM's part as to the significance of this AIX and Dynix/ptx code to which its Linux programmers had access and the nature of the problem alleged by SCO in its complaint. However, IBM did not stop there. IBM's OSSC then decided that Linux programmers whose access had been removed should also "purge" their sandboxes or similar workspaces. That OSSC decision was then implemented in

IBM's Linux Technology Center – the very organization within IBM that was tasked with developing the code for Linux that was at issue in SCO's lawsuit.

This rapid succession of events from SCO's lawsuit to the destruction of the sandbox evidence necessarily creates an inference of bad faith. IBM cannot reasonably contend that its destruction of evidence was accidental or coincidental. The destruction was an intentional act taken in response to the filing of SCO's lawsuit. This establishes willfulness and bad faith. Furthermore, IBM spent the next two years after the lawsuit resisting efforts of SCO to obtain access to the code repository systems CMVC and RCS that it now claims absolve it of any culpability for destroying evidence in 2003.

At the January hearing IBM argued that SCO has not satisfied the bad faith element because "SCO has not come forward with a shred of evidence that any member of the LTC, or Mr. Swanberg, ever entertained the thought that what they were doing by making this very simple request was destroying evidence." But this argument goes far beyond what the law requires of SCO to show bad faith. Bad faith can be inferred from circumstantial evidence. Adams v. Gateway, Inc., No. 2:02-CV-106 TS, 2006 WL 2563418, at *3 (D. Utah 2006) (Ex. C). In particular, courts have found the timing of the destruction of evidence – whether evidence is destroyed after notice that it could be relevant in litigation – probative to bad faith. See, e.g., In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1070, 1072-74 (N.D. Cal. 2006) (finding duty to maintain and not destroy relevant email and other documents after notice of litigation, and that destruction after notice of litigation is relevant to determination of willfulness or bad faith); Computer Associates Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 169-70 (D. Colo. 1990) (finding deletion of source code by computer program developer in copyright action

13

merited spoliation sanction of default because timing of destruction after notice of litigation);

Brown & Williamson Tobacco Corp. v. Jacobson, 644 F. Supp. 1240, 1248-49 (N.D. Ill. 1986)

(noting under a totality of the circumstances analysis that selective destruction after notice that a

lawsuit is pending may serve as basis for finding bad faith spoliation); Brown & Williamson

Tobacco Corp. v. Jacobson, 827 F.2d 1119, 1134-35 (7th Cir. 1987) (affirming jury finding in

trial court on same).

 The decision in Computer Associates Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166,

169-70 (D. Colo. 1990), is particularly instructive.  In that case, Computer Associates ("CA")

alleged that the defendant, American Fundware ("AF"), improperly copied its software in

violation of their agreement.  As in the SCO case, CA brought these issues to AF's attention and,

when a resolution could not be reached, filed suit against AF.  Id. at 168.  Before that time, AF

had been destroying all previous versions of the software at issue, other than the current version,

and AF continued this practice after the litigation had commenced.  Id.  CA moved for sanctions

based on this spoliation of evidence.  The court imposed a default judgment on AF for its

destruction – even though the court found that the practice of deleting old versions "is commonly

followed in the industry, for legitimate reasons, and is not inherently wrongful."  Id.  The court

persuasively explained:  "It is inconceivable that after the October 1986 [pre-litigation] meeting,

AF did not realize that the software in its possession would be sought through discovery.

Certainly commencement of the action settles any doubts."  Id. at 169 (emphasis added).

Therefore, the court concluded that the destruction was willful and in bad faith, and that the

destruction of source code, the "best evidence" of copying, inflicted "the ultimate prejudice."  Id.

at 170.  In this case – where IBM actually undertook the destruction of evidence in response to

14

the litigation and with clear notice that the evidence would be relevant to SCO's claims – bad

faith should be inferred.

15

**CONCLUSION**

For the foregoing reasons, SCO respectfully requests that this Court overturn the

Magistrate Court's Order of March 2, 2007, and grant the relief requested above for IBM's

spoliation of evidence.

DATED this 16th day of March, 2007.

> HATCH, JAMES & DODGE, P.C.
> Brent O. Hatch
> Mark F. James
>
> BOIES, SCHILLER & FLEXNER LLP
> Robert Silver
> Stuart H. Singer
> Stephen N. Zack
> Edward Normand
>
> By _____
> Counsel for The SCO Group, Inc.

16

**CERTIFICATE OF SERVICE**

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc., hereby certifies that a true and correct copy of the foregoing **REDACTED SCO'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER OF MARCH 2, 2007 DENYING SCO'S MOTION FOR RELIEF FOR IBM'S SPOLIATION OF EVIDENCE** was served on Defendant/Counterclaim-Plaintiff, International Business Machines Corporation, on this 20th day of March, 2007, CM/ECF to the following:

David Marriott, Esq. (dmarrriott@cravath.com)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Todd Shaughnessy, Esq. (tshaugnessy@swlaw.com)
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004


By:  /s/ Mark James

17