# EXHIBIT A



458 F.3d 1169                                                                 Page 1

458 F.3d 1169
**(Cite as: 458 F.3d 1169)**

**C**

Briefs and Other Related Documents
Hollern v. Wachovia Securities, Inc.C.A.10 (Colo.),2006.
United States Court of Appeals,Tenth Circuit.
Susan P. HOLLERN, as trustee of and on behalf of the other William H. Price, II Trust, Plaintiff-Appellee,
v.
WACHOVIA SECURITIES, INC.; Randy S. Russell, Defendants-Appellants.
**Nos. 05-1253, 05-1300.**

Aug. 16, 2006.

**Background:** Successor trustee sought to vacate award of attorney fees made to brokerage and broker in trustee's unsuccessful arbitration over management of trust account. The United States District Court for the District of Colorado, Richard P. Matsch, J., vacated fee portion of award. Defendants appealed.

**Holdings:** The Court of Appeals, Murphy, Circuit Judge, held that:

(1) assuming Virginia law applied, parties authorized arbitrators to award fees in their submission agreement and through their conduct in seeking fee award, and

(2) arbitrators did not manifestly disregard law in making award of fees pursuant to Colorado statute

Reversed and remanded
West Headnotes
**[1] Alternative Dispute Resolution 25T ⊂⇒139**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate

           25Tk136 Construction
                25Tk139 k. Construction in Favor of Arbitration. Most Cited Cases
Strong presumption exists that requires all doubts concerning whether a matter is within the arbitrators' powers to be resolved in favor of arbitrability.

**[2] Alternative Dispute Resolution 25T ⊂⇒230**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(E) Arbitrators
           25Tk228 Nature and Extent of Authority
                25Tk230 k. Agreement or Submission as Determinative. Most Cited Cases
The parties may extend authority of arbitrators, which is derived from arbitration agreement, in their submissions to the arbitrators so long as the submissions do not violate an express provision of the original arbitration agreement.

**[3] Alternative Dispute Resolution 25T ⊂⇒235**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(E) Arbitrators
           25Tk228 Nature and Extent of Authority
                25Tk235 k. Scope of Relief. Most Cited Cases
Under Virginia law, by incorporating their pleadings, including their parallel requests for attorney fees, into uniform submission agreement given to arbitrators, parties expressly empowered arbitrators to award attorney fees, thereby amending original arbitration agreement that was silent on issue of fees; parties further authorized fee award by submitting affidavits and motions for attorney fees to arbitrators upon their request and without objection at conclusion of arbitration.

**[4] Alternative Dispute Resolution 25T ⊂⇒329**

25T Alternative Dispute Resolution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169                                                                    Page 2

458 F.3d 1169
**(Cite as: 458 F.3d 1169)**

25TII Arbitration
25TII(G) Award
25Tk327 Mistake or Error
25Tk329 k Error of Judgment or
Mistake of Law. Most Cited Cases
To warrant setting aside an arbitration award based
on manifest disregard of the law, the record must
show the arbitrators knew the law and explicitly
disregarded it.

**[5] Alternative Dispute Resolution 25T ☜329**

25T Alternative Dispute Resolution
25TII Arbitration
25TII(G) Award
25Tk327 Mistake or Error
25Tk329 k Error of Judgment or
Mistake of Law. Most Cited Cases
Arbitrators did not manifestly disregard law in
awarding attorney fees, even assuming that
Colorado statute under which award was made only
authorized fees in civil actions, where both parties
argued that statute permitted fee award in
arbitration case; arbitrators could not be charged
with knowledge that statute did not authorize award
and nevertheless chose to disregard law. West's
C.R.S.A. § 13-17-102.

**[6] Alternative Dispute Resolution 25T ☜329**

25T Alternative Dispute Resolution
25TII Arbitration
25TII(G) Award
25Tk327 Mistake or Error
25Tk329 k Error of Judgment or
Mistake of Law. Most Cited Cases
Arbitrators' failure to state reasons for their award
of attorney fees did not constitute manifest
disregard of law, justifying vacation of fee award,
even though Colorado statute under which award
was made required consideration of certain factors.
West's C.R.S.A. § 13-17-103.

Michael N. Ungar (William D. Nelson, Craig R.
Welling, Rothgerber, Johnson & Lyons, LLP,
Denver, CO, with him on the briefs), Ulmer &
Berne, LLP, Cleveland, OH, for
Defendants-Appellants.

James D. Kilroy, Snell & Wilmer, L.L.P., Denver,
CO, for Plaintiff-Appellee.

Before MURPHY, BALDOCK, and McCONNELL
, Circuit Judges.MURPHY, Circuit Judge

## I. Introduction

Plaintiff-Appellee Susan Hollern initiated
arbitration proceedings against
Defendants-Appellants Wachovia Securities, Inc.
and its employee, Randy Russell (collectively "
Wachovia"). Hollern claimed Wachovia was
negligent and breached its fiduciary duty in
managing the William H. Price, II Trust ("Trust"),
for which Hollern acted as successor trustee. Both
parties sought attorneys' fees in their arbitration
pleadings and submitted motions requesting
attorneys' fees at the conclusion of the arbitration
hearing. The arbitrators denied Hollern's claims in
their entirety and awarded attorneys' fees to
Wachovia. Hollern subsequently sought to have
the district court set aside the attorneys' fees' portion
of the arbitral award. Concluding the parties did
not expressly agree to submit the issue of attorneys'
fees to arbitration and the arbitrators misapplied the
relevant law, the district court vacated the attorneys'
fees' portion of the award. Wachovia appeals. We
have jurisdiction pursuant to *1171 28 U.S.C. §
1291. Because the arbitrators did not exceed their
powers or manifestly disregard the law in awarding
attorneys' fees, we **reverse** and **remand** with
instructions to reinstate the attorneys' fees' portion
of the arbitration award.

## II. Background

William H. Price, II created the Trust in 1987 and
appointed himself sole trustee. The Trust
maintained an account at Wachovia Securities, Inc.
Randy Russell, a Senior Vice President at
Wachovia, served as the Trust's primary broker.
Price, however, exercised absolute control over the
Trust's investments, often engaging in highly
volatile and risky trading strategies. Price was
hospitalized in early May 2002 due to
complications from throat cancer. He passed away
approximately six weeks later

© 2007 Thomson/West No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169

Page 3

458 F.3d 1169
**(Cite as: 458 F.3d 1169)**

After Price's death, Hollern, Price's daughter and successor trustee of the Trust, entered into an Option Account Agreement with Wachovia. The Option Account Agreement contained an arbitration provision which provided, in relevant part:
it is agreed that all controversies or disputes which may arise between [Hollern] and [Wachovia] ... concerning any transaction or the construction, performance or breach of this Agreement or any other agreement between us, whether entered into prior to, on, or subsequent to the date of this Agreement, including any controversy concerning whether an issue is arbitrable, shall be determined by arbitration conducted before, and only before, an arbitration panel set up by either the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") in accordance with their respective arbitration procedures. Any of us may initiate arbitration by filing a written claim with the NASD or the NYSE. Any arbitration under this Agreement shall be conducted pursuant to the Federal Arbitration Act and the Laws of the Commonwealth of Virginia.

Appellants' App. at 14. Hollern subsequently sought arbitration before the National Association of Securities Dealers ("NASD"). Hollern claimed Wachovia was negligent and breached its fiduciary duty by not informing her or other members of Price's family of the volatile nature of the Trust's investments while Price was hospitalized. In her Statement of Claim, Hollern sought both compensatory damages for the decline in value of certain Trust investments and attorneys' fees and costs incurred in the arbitration proceeding. Hollern also signed a Claim Information Sheet, which indicated she was seeking attorneys' fees. In its answer to Hollern's Statement of Claim, Wachovia likewise sought reimbursement of attorneys' fees. Both parties also signed an NASD Arbitration Uniform Submission Agreement (" Uniform Submission Agreement") wherein they agreed to submit the issues identified in Hollern's Statement of Claim and Wachovia's Answer to arbitration in accordance with NASD arbitration procedures.[FN1]

FN1. The Uniform Submission Agreement

provided:
The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization. Appellants' App. at 50.

At the conclusion of the arbitration hearing, the arbitrators directed the parties to submit simultaneous affidavits of attorneys' fees. Hollern filed a motion for attorneys' fees and an accompanying affidavit.**1172** In her motion, she argued an award of attorneys' fees was permitted pursuant to NASD Code of Arbitration Procedure (" NASD Code") Rule 10215. Rule 10215 states, " arbitrator(s) shall have the authority to provide for reasonable attorney fee reimbursements, in whole or in part, as part of the remedy in accordance with applicable law." Hollern contended Colorado law was applicable. She urged the arbitrators to award her attorneys' fees pursuant to Colo.Rev.Stat. § 13-17-102(4), which requires Colorado courts to award reasonable attorneys' fees in any civil action where a party brings or defends a frivolous, groundless, or vexatious claim. The same day, Wachovia filed an affidavit detailing the attorneys' fees it had incurred in the arbitration proceeding. Wachovia subsequently filed a motion in support of its request for attorneys' fees relying, as Hollern had, on § 13-17-102(4).

The arbitrators issued an award denying Hollern's claims in their entirety and awarding Wachovia $193,526.84 in attorneys' fees, pursuant to § 13-17-102. Hollern then filed a motion in district court seeking to have the attorneys' fees' portion of the arbitration award set aside. She asserted the arbitrators had exceeded their powers and acted in manifest disregard of the law in awarding attorneys' fees. The district court agreed and vacated the attorneys' fees' portion of the award. Wachovia filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which the district court summarily denied. Wachovia appeals both the

458 F.3d 1169

Page 4

458 F.3d 1169
**(Cite as: 458 F.3d 1169)**

district court's decision to vacate the attorneys' fees' portion of the arbitral award (Case No. 05-1253) and its denial of Wachovia's Rule 60(b) motion (Case No. 05-1300).

### III. Discussion

In reviewing a district court order vacating an arbitration award, we review factual findings for clear error and legal determinations *de novo.* *Sheldon v. Vermonty,* 269 F.3d 1202, 1206 (10th Cir.2001). We must nevertheless "give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law." *Brown v. Coleman Co.,* 220 F.3d 1180, 1182 (10th Cir.2000) (quotation omitted). "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1146-47 (10th Cir.1982). A district court may vacate an arbitral award only for reasons enumerated in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10,[FN2] or for "a handful of judicially-created reasons." *Sheldon,* 269 F.3d at 1206 (observing an arbitration award may be set aside because of a violation of public policy, manifest disregard of the law, or denial of a fundamentally fair hearing). Errors in an arbitration panel's factual findings, or its interpretation and application of the law, do not justify vacating an award. *Denver & Rio Grande W. R.R. v. Union Pac. R.R.,* 119 F.3d 847, 849 (10th Cir.1997).

> FN2. The FAA allows district courts to vacate an arbitral award
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any

other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

*1173 Hollern advanced two grounds in the district court for vacating the attorneys' fees' portion of the arbitral award. Hollern first argued Virginia law governed the issue of attorneys' fees and claimed the arbitrators exceeded their powers because the parties did not expressly authorize an award of attorneys' fees as required by Virginia law. Alternatively, Hollern contended, if Colorado law governed the issue of attorneys' fees, the arbitrators manifestly disregarded the law in their application of Colo.Rev.Stat. § 13-17-102. Because we conclude both of these grounds are without merit, we need not decide whether Virginia or Colorado law should have governed the issue of attorneys' fees in this case.

### A. Arbitrators Exceeded Their Powers Under Virginia Law

In her motion to vacate the attorneys' fees' portion of the arbitral award, Hollern first argued the arbitrators lacked authority to award attorneys' fees. *See* 9 U.S.C. § 10(4). She claimed the arbitrators erred in relying on Colorado law to support the award of attorneys' fees. Instead, Hollern contended the arbitration should have been governed by Virginia law in accordance with the terms of the Option Account Agreement she entered into with Wachovia. Virginia has adopted the Uniform Arbitration Act ("UAA"), which contains the following provision regarding attorneys' fees:

Unless otherwise provided in the agreement to arbitrate, the arbitrator's expenses and fees incurred in the conduct of the arbitration, and all other expenses, not including counsel fees, incurred in the conduct of the arbitration shall be paid as provided in the award.

Va.Code Ann. § 8.01-581.07. Although Virginia

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169

458 F.3d 1169
(Cite as: 458 F.3d 1169)

Page 5

state courts have not yet interpreted or applied this provision, Hollern argued it prohibits an arbitral award of attorneys' fees unless the parties expressly provide for such an award in their arbitration agreement. Hollern contended the Option Account Agreement did not expressly authorize an award of attorneys' fees, and thus, the arbitrators exceeded their authority in awarding such fees. The district court agreed that Virginia law, not Colorado law, governed the arbitration proceeding. Further, it determined Virginia law prevented an award of attorneys' fees under the facts of this case because the parties had not expressly authorized the arbitrators to award attorneys' fees The district court therefore vacated the attorneys' fees portion of the award

[1] In assessing the scope of the arbitrators' authority, we are mindful of the strong presumption requiring all doubts concerning whether a matter is within the arbitrators' powers to be resolved in favor of arbitrability. *Shankle v. B-G Maint. Mgmt of Colo., Inc.,* 163 F.3d 1230, 1233 (10th Cir.1999). Even assuming Virginia law applies and requires parties to expressly authorize an award of attorneys' fees in their arbitration agreement, as Hollern contends,[FN3] the parties have satisfied *1174 that requirement in this case. Accordingly, the arbitrators did not exceed their powers under Virginia law in awarding Wachovia attorneys' fees

> FN3. Because Virginia state courts have not interpreted the UAA attorneys' fees' provision, Hollern urges us to rely on decisions from other state courts. She contends most states have construed the UAA attorneys' fees' provision to prohibit an award of attorneys' fees unless the parties expressly authorize such an award in their arbitration agreement. For purposes of this appeal, we accept Hollern's characterization of how Virginia courts would likely interpret the UAA attorneys' fees' provision We note, however, that, contrary to Hollern's assertion, the provision has not been interpreted uniformly by the states. In particular, although most states require

parties to agree to submit the issue of attorneys' fees to arbitration, the states differ in their characterization of the form that agreement may take. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 180 Ariz. 148, 882 P.2d 1274, 1278 (1994) (permitting attorneys' fees if parties explicitly provide for such fees in the arbitration agreement); *Compton v. Lemon Ranches, Ltd.,* 972 P.2d 1078, 1080 (Colo.Ct.App.1999) (observing parties may expand scope of original arbitration agreement by subsequently submitting other matters to arbitration); *Bingham County Comm'n v. Interstate Elec. Co.,* 105 Idaho 36, 665 P.2d 1046, 1052 (1983) (authorizing attorneys' fees when parties contractually agree); *WMC, Inc v. Weaver,* 166 N.C.App. 352, 602 S.E.2d 706, 709 (2004) (requiring express provision in arbitration agreement authorizing attorneys' fees, but permitting waiver of challenge to attorneys' fees award when party does not object during arbitration); *D & E Constr. Co. v. Robert J. Denley Co.,* 38 S.W.3d 513, 519 (Tenn.2001) (prohibiting attorneys' fees unless parties have understanding to the contrary); *cf. Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 751 So.2d 143, 149 (Fla.Dist.Ct.App.2000) (concluding parties expressly waived right to have issue of attorneys' fees decided by a court instead of arbitrators by requesting attorneys' fees in arbitration pleadings and closing argument).

[2][3] Although the Option Account Agreement itself did not expressly permit an award of attorneys' fees, the parties' subsequent submissions to the arbitrators amended the original arbitration agreement to expressly authorize attorneys' fees. Arbitrators derive their authority from the parties' arbitration agreement. *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.,* 889 F.2d 940, 946 (10th Cir.1989). The parties may extend that authority, however, in their submissions to the arbitrators so long as the submissions do not violate an express provision of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169

Page 6

458 F.3d 1169
(Cite as: 458 F.3d 1169)

the original arbitration agreement. *Id.* After the parties executed the Option Account Agreement, Hollern submitted an NASD Statement of Claim wherein she explicitly requested an award of attorneys' fees. She reaffirmed her desire to have the arbitrators decide the issue of attorneys' fees by indicating she was seeking attorneys' fees on the Claim Information Sheet. Wachovia did not object to the arbitrators' authority to award attorneys' fees. Instead, in its Answer to Hollern's Statement of Claim, Wachovia also explicitly requested an award of attorneys' fees. Most importantly, the parties then entered into a Uniform Submission Agreement. The Uniform Submission Agreement expressly incorporated Hollern's Statement of Claim and Wachovia's Answer, and indicated the parties agreed to submit all issues identified in those pleadings to arbitration. By incorporating their pleadings, including their parallel requests for attorneys' fees, into the Uniform Submission Agreement, the parties expressly empowered the arbitrators to award attorneys' fees. *See Plunkett v Plunkett,* 271 Va. 162, 624 S.E.2d 39, 42 (2006) (indicating that incorporating a document by reference into a contract makes that document an express part of the contract).

The parties' authorization of the award of attorneys' fees, however, went even further. The arbitrators noted at the end of the arbitration hearing that both Hollern and Wachovia had requested attorneys' fees in their submissions. Accordingly, the arbitrators directed each party to submit an affidavit of attorneys' fees. Neither party objected to the arbitrators' authority to award attorneys' fees. Instead, both parties submitted motions seeking attorneys' fees. Hollern argued the arbitrators had authority to award attorneys' fees pursuant to NASD Code Rule 10215 and Colo.Rev.Stat. § 13-17-102(4). Wachovia also asserted attorneys' fees were permitted under § 13-17-102(4). In accordance with the parties' requests, the arbitrators decided the issue of attorneys' fees, granting fees to Wachovia.

**\*1175** In determining the parties did not expressly agree to permit an award of attorneys' fees, the district court relied on *Carson v. PaineWebber, Inc.,* 62 P.3d 996 (Colo.Ct.App.2002)[FN4] In *Carson,*

the parties entered into an arbitration agreement that was silent on the issue of attorneys' fees *See id.* at 1000. The claimant requested attorneys' fees in its Statement of Claim and the respondent made a corresponding request in his Answer. *Id.* at 997. Additionally, both parties signed a Uniform Submission Agreement wherein they agreed to submit the issues identified in their pleadings to arbitration. *Id.* The arbitrators subsequently awarded attorneys' fees to the claimant, and the respondent appealed. *Id.* In reviewing the award, the state court first observed Colorado courts have interpreted the UAA attorneys' fees' provision to prohibit an award of attorneys' fees unless the parties have specifically authorized the arbitrator to address the issue. *Id.* at 1000. It then concluded the parties' mutual requests for attorneys' fees in their pleadings alone were not sufficient to demonstrate the parties specifically agreed to permit the award. *Id.*

> FN4. The issue of whether an agreement exists is a mixed question of law and fact. *Naimie v. Cytozyme Labs., Inc.,* 174 F.3d 1104, 1111 (10th Cir.1999). "We review mixed questions under either the clearly erroneous standard or *de novo* standard depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *Id.* (quotation omitted). In this case, the parties do not dispute the existence or content of the documents relied on by the district court in determining the parties did not expressly authorize an award of attorneys' fees-i.e., Hollern's Statement of Claim, Wachovia's Answer, the Uniform Submission Agreement, and both parties' motions and affidavits for attorneys' fees. Instead, Wachovia challenges the district court's determination that these documents do not evidence an express agreement. Because this determination involves the application of legal principles to undisputed facts, we review the district court's conclusion that the parties did not expressly agree to permit an award of attorneys' fees *de novo. See id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169                                                    Page 7

458 F.3d 1169
**(Cite as: 458 F.3d 1169)**

Although *Carson's* application of Colorado law does not control our application of Virginia law, we note *Carson* would not prohibit an award of attorneys' fees under the facts of this case Colorado courts have acknowledged parties may expand the scope of their original arbitration agreement by subsequently submitting matters outside the agreement to arbitration. *Compton v. Lemon Ranches, Ltd.,* 972 P.2d 1078, 1080 (Colo.Ct.App.1999). The court in *Carson* merely determined parties' parallel requests for attorneys' fees in their pleadings and their execution of a Uniform Submission Agreement are insufficient to authorize an award of attorneys' fees. *Carson,* 62 P.3d at 1000. Here, however, in addition to filing pleadings requesting attorneys' fees and executing a Uniform Submission Agreement, the parties also filed affidavits and motions for attorneys' fees In their motions, the parties explicitly argued the arbitrators had authority to award attorneys' fees pursuant to Colo.Rev.Stat. § 13-17-102(4) Further, neither party objected to the arbitrators' authority to award attorneys' fees during the arbitration The parties' submissions to the arbitrators in this case, which exceed those at issue in *Carson,* are sufficient to constitute an express authorization to award attorneys' fees. [FN5] Therefore, the arbitrators did not exceed their *1176 powers under Virginia law in awarding attorneys' fees, and the district court erred in vacating the attorneys' fees' portion of the arbitral award on this ground.

FN5. On appeal, Hollern relies on another Colorado case to support her contention that the parties' submissions did not authorize an award of attorneys' fees. *See Compton,* 972 P.2d 1078 The parties' arbitration agreement in *Compton* did not expressly permit an award of attorneys' fees, and the parties did not request attorneys' fees in their pleadings. *Id.* at 1080. Nevertheless, at the conclusion of the arbitration hearing, the arbitrators directed each party to submit an affidavit detailing their attorneys' fees. *Id.* at 1079 Both parties complied, and the arbitrators awarded attorneys' fees. *Id.* The state

court vacated the award. *Id.* at 1080. It observed the original court order compelling arbitration specifically provided that each party would be required to pay its own attorneys' fees incurred in the arbitration. *Id.* In light of this order, the court concluded the parties' mere compliance with the arbitrators' request for attorneys' fees affidavits did not amount to an agreement authorizing an award of attorneys' fees. *Id.* Like *Carson, Compton* is unpersuasive here because Hollern's and Wachovia's submissions to the arbitrators regarding attorneys' fees went beyond merely acquiescing in the arbitrators' request for submission of attorneys' fees affidavits. Additionally, in the present case there was no court order preceding arbitration indicating that each party should bear its own attorneys' fees.

### B. Manifest Disregard of Colorado Law

As an alternative ground for vacating the attorneys' fees portion of the arbitral award, Hollern argued if Colorado law governed the issue of attorneys' fees, the arbitrators manifestly disregarded Colorado law. The arbitrators awarded attorneys' fees to Wachovia pursuant to Colo.Rev.Stat. § 13-17-102. The statute permits courts, "in any civil action of any nature commenced or appealed in any court of record in [Colorado]," to award reasonable attorneys' fees. Colo.Rev Stat. § 13-17-102(1). When awarding attorneys' fees, courts must consider the factors enumerated in § 13-17-103 in determining whether attorneys' fees should be assessed and the amount to be assessed. Colo.Rev.Stat. § 13-17-103 Courts must also specifically set forth their reasons for awarding attorneys' fees *Id.*

In her motion to vacate the attorneys' fees' portion of the arbitral award, Hollern argued the arbitrators' reliance on § 13-17-102, when the statute by its terms only applies to civil actions brought in Colorado state courts, was in manifest disregard of the law. She also contended the arbitrators' failure to consider the relevant statutory factors or set forth the reasons justifying their award of attorneys' fees

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

458 F.3d 1169

458 F.3d 1169
(Cite as: 458 F.3d 1169)

constituted a manifest disregard of the law. The district court agreed, concluding the arbitrators' failure to comply with the requirements of § 13-17-102 was an alternative ground for vacating the attorneys' fees' portion of the arbitral award.

[4] Errors in an arbitration panel's interpretation or application of the law are generally not reversible. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.,* 430 F.3d 1269, 1274 (10th Cir.2005). A judicially-created exception to this rule exists, however, where arbitrators act in manifest disregard of the law. *Id.* Manifest disregard of the law has been defined as "willful inattentiveness to the governing law." *Id.* To warrant setting aside an arbitration award based on manifest disregard of the law, "the record must show the arbitrators knew the law and explicitly disregarded it." *Id.*

[5] Assuming Colorado law applies, the arbitrators' application of § 13-17-102 to the facts of this case was not in manifest disregard of the law. Hollern contends Colorado law only authorizes Colorado state courts to award attorneys' fees in civil actions. Hollern has cited no authority adopting this interpretation. More importantly, in the arbitration proceeding, both parties argued the statute permitted the arbitrators to award attorneys' fees, and neither party suggested the statute might only apply in the context of a civil suit brought in state court. In light of the positions taken by the parties during the arbitration proceeding, we cannot say the arbitrators knew § 13-17-102 did not authorize *1177 arbitrators to award attorneys' fees and nevertheless chose to disregard the law.

[6] Hollern also contends the arbitrators were required to consider the factors enumerated in Colo.Rev.Stat. § 13-17-103 and explicitly set forth their reasons for assessing attorneys' fees in the arbitration award. Hollern, however, has presented no evidence showing the arbitrators did not consider the relevant statutory factors. Moreover, arbitrators are generally not required to delineate the reasons for their decision. *Eljer Mfg., Inc. v. Kowin Dev Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994) (observing contrary rule would perpetuate the delay and expense that arbitration is meant to combat). In fact, in this case, the parties' original

arbitration agreement, the Option Account Agreement, specifically provides that "[t]he arbitrator's award is not required to include factual findings or legal reasoning." Appellants' App. at 14. Because the arbitrators were not required to state the reasons for their award of attorneys' fees, their failure to do so does not constitute a manifest disregard of the law. The district court thus erred in vacating the attorneys' fees portion of the arbitration award on this ground as well.

### IV. Conclusion

For the foregoing reasons, we **REVERSE** the district court order vacating the attorneys' fees portion of the arbitration award and **REMAND** with instructions to reinstate that portion of the award. Because we have determined the district court erred in vacating the arbitral award, we need not address Wachovia's claim that the district court abused its discretion in denying Wachovia's Rule 60(b) motion.

C.A.10 (Colo.),2006.
Hollern v. Wachovia Securities, Inc.
458 F.3d 1169

Briefs and Other Related Documents (Back to top)

• 2005 WL 3749215 (Appellate Brief) Appellants Wachovia Securities, LLC's and Randy S. Russell's Reply Brief (Dec. 15, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 3749216 (Appellate Brief) Response Brief of Appellee Susan P. Hollern, as Trustee and on Behalf of the William H. Price, II Trust (Nov. 29, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 3445732 (Appellate Brief) Opening Brief of Appellants Wachovia Securities, LLC and Randy S. Russell (Oct. 17, 2005) Original Image of this Document with Appendix (PDF)
• 05-1300 (Docket) (Jun. 29, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1991 WL 327959 (E.D.Cal.), 1992 Copr.L.Dec. P 26,832, 22 U.S.P.Q.2d 1686
(Cite as: Not Reported in F.Supp.)

**C**

Cabinetware Inc. v. SullivanE.D.Cal.,1991.
United States District Court, E.D. California.
CABINETWARE INCORPORATED
v.
James W. SULLIVAN d.b.a. Starcode Software.
**No. Civ. S. 90-313 LKK.**

July 15, 1991.

KARLTON, Chief Judge Emeritus:
*1 This matter is before the court on defendant's objections to the Magistrate's Findings and Recommendations regarding plaintiff's motion for sanctions. Because of the serious nature of defendant's alleged transgressions that gave rise to the sanctions motion, the court, pursuant to the authority of 28 U.S.C. § 636(b)(1), has considered imposing a sanction more severe than that recommended by the magistrate. Accordingly, this matter was set for oral argument. Previously pending on the court's law and motion calendar was plaintiff's motion for preliminary injunction. Hearing on that motion was vacated pending resolution of defendant's objections to the Magistrate's Findings and Recommendations. Because of the disposition of the sanctions matter, and the court having reviewed the briefs and evidence on file, the motion for preliminary injunction is disposed of herein, without argument. *See* Local Rule 230(h).

I

*Standard of Review of Magistrate's Proposed Findings and Recommendations*

This court reviews de novo those portions of the proposed findings of fact to which objection has been made. 28 U.S.C. § 636(b)(1). *See* *McDonnell Douglas Corp. v. Commodore Business Machines, 656 F.2d 1309, 1313 (9th Cir.1981), cert. denied, 455 U.S. 920 (1982).* In making a de novo determination, the court considers the record which has been developed before the magistrate. The court is not bound to adopt the magistrate's findings but rather the judge will, "in sound judicial discretion," make his own determination on the record. *United States v. Raddatz, 447 U.S. 667, 675-76 (1980).*

As to any portion of the proposed findings of fact to which no objection has been made, the court assumes its correctness and decides the motions on the applicable law. *See* *Orand v. United States, 602 F.2d 207, 208 (9th Cir.1979).* The magistrate's conclusions of law are reviewed de novo. *See* *Britt v. Simi Valley Unified School District, 708 F.2d 452, 454 (9th Cir.1983).*

The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. 28 U.S.C. § 636(b)(1). The authority and responsibility to make an informed and final determination is vested in the district court judge. *Mathews v. Weber, 423 U.S. 261, 271 (1976).*

II

*Objections to the Proposed Findings of Fact*

Defendant make various objections to the proposed findings of fact. None of the findings of fact to which objection has been made, however, bear dispositively on the spoliation issue which is at the heart of this matter.

Defendant first objects to the magistrate's finding that defendant had completed his program by April, 1989. I note first that defendant Sullivan stated in his April 1989 application to the copyright office that the work was completed. Sullivan Depo., Exh. 6, item 3. In his deposition, however, Sullivan testifies that his program was not completed at the time he attempted to copyright it. Sullivan Depo. at 305:21-24. Defendant made his first sale of the program in August of the same year, and thus the program must have necessarily been completed by that time. Whether the program was completed in April or in August of 1989, however, has no bearing on the issue of the appropriate discovery sanction.

*2 Defendant next objects to the magistrate's finding that defendant destroyed a hard copy of the source code after he had been served with a request for production in the state court action. Cabinetware served Sullivan with a request for production on September 28, 1989. Defendant admitted he destroyed a hard copy of his source code "maybe" in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1991 WL 327959 (E.D.Cal.), 1992 Copr.L.Dec. P 26,832, 22 U.S.P.Q.2d 1686
(Cite as: Not Reported in F.Supp.)

October of 1989.    Sullivan Depo. at 207:19.
Because defendant did not appear or testify in the
evidentiary hearing, his credibility could not be
assessed by the magistrate.  In light of contradictory
statements in Sullivan's deposition as to when the
destruction took place, *see* Sullivan Depo. at 207:9-
10, 217:14-15, it does not appear the magistrate's
finding is incorrect.  More pertinent to the spoliation
issue, however, is Sullivan's destruction of the
electronic files in 1990, which remains uncontested.

Defendant also objects to the magistrate's finding that
Sullivan knew that Cabnetware wanted to review all
versions of his source code.    Sullivan admits to
carefully reviewing the production request, which
required him to produce his source code and all
documents which refer or relate to development of
the software.  Under these circumstances, defendant
knew or should have known that this request would
encompass all versions of the source code.

Defendant further objects to the finding that Sullivan
rented a safe deposit box to store his electronic code.
This objection is completely unfounded, as Sullivan
admitted to obtaining a "safe deposit box to store my
source code in." Sullivan Depo. at 208:11-12.

Defendant's objection to the finding that a compiler is
hardware is sustained.    While the magistrate was
incorrect in characterizing a compiler as hardware,
that finding of fact is of no significance to the matter
of sanctions.

Defendant's final objection is to the finding that the
fifty pages deposited with the Copyright Office do
not contain the "guts of the source code operations."
Sullivan's own expert admits the deposited fifty pages
do not refer to the program's main purpose.  RT II at
63:4-12, 63:13-64:8.    Accordingly, after de novo
review of the record, I find that defendant's
objections, except insofar as they relate to the
characterization of a compiler, cannot be sustained.

Moreover, it appears that even in the absence of the
findings to which objections have been made, the
magistrate's uncontested findings fully support the
conclusion that a discovery sanction is appropriate in
the instant matter because of defendant's spoliation of
evidence essential to plaintiff's case.  The magistrate
found that computer programs can be easily modified
to disguise the copying of source codes and that a
comparison of Sullivan's initial source code with
Cabnetware's source code is of critical importance in
this case.    Though fully aware of the request for
production of the source codes and of their

significance in copyright infringement actions,
defendant purposefully destroyed the initial source
codes in order to avoid having that code made
available for comparison in this litigation.  Sullivan's
explanation that he destroyed the evidence by writing
over the floppy disks because he needed more disks
and did not want to bother to go out and buy
additional disks simply cannot be credited.  Finally, I
note, in continuing his intransigent behavior,
defendant's production of the current code has been
incomplete and with the files corrupted so as to be
nonusable by plaintiff's experts.    Under these
circumstances, I find that a discovery sanction must
be imposed in this action.  I turn, therefore, to the
question of the appropriate sanction in a case of such
egregious conduct.

### III

#### *The Appropriate Sanction*

**\*3** Sanctions are authorized pursuant to Rule 37 for
failure to comply with discovery orders.    *See*
Fed.R.Civ.P. 37(b)(2).    The court also has the
inherent authority to impose an appropriate sanction
in order to protect the integrity of the judicial
process.  *Halaco Engineering v. Costle,* 843 F.2d 376
(9th Cir.1988).  Where a dismissal or entry of default
judgment is contemplated as a sanction pursuant to
the court's inherent authority, several factors must be
considered:  (1) whether willfulness, bad faith, or
fault can be attributed to the offending party, (2)
whether certain extraordinary circumstances exist, (3)
whether lesser sanctions would be efficacious, (4) the
relationship or nexus between the misconduct and the
matters in controversy in the case.    *Halaco
Engineering,* 843 F.2d at 380.    As an optional
consideration, where appropriate, the prejudice to the
party victim of the misconduct can factor into the
court's determination of whether default judgment is
an appropriate sanction.  *Id*

#### A. *Defendant's State of Mind*

The magistrate found Sullivan willfully destroyed
evidence of great significance to the instant case.
During oral arguments on the appropriate sanction,
defendant represented to the court that he was never
on notice that Sullivan's motivation or state of mind
would be an issue during the evidentiary hearing held
by the Magistrate on the sanctions matter.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 327959 (E.D.Cal.), 1992 Copr.L.Dec. P 26,832, 22 U.S.P.Q.2d 1686
(Cite as: Not Reported in F.Supp.)

Defendant therefore requested another opportunity to present different or additional evidence on this matter. After reviewing the record, defendant's representations notwithstanding, I find that adequate and full notice was given that defendant's intent in destroying the evidence was at issue in the sanctions matter.

I note first that the briefing on the motion for sanctions put defendant on notice that his willfulness was in issue. In the first page of Plaintiff's Memorandum in Support of Sanctions, it is alleged that Sullivan willfully destroyed evidence. Plaintiff's memorandum at page six describes "Sullivan's intent." On page 18, plaintiff states that "[t]he court should impose these sanctions because of Sullivan's willful destruction of evidence." In opposing the motion for sanctions, defendant resisted the characterization of the destruction as deliberate. *See* Opposition at 8:4; 10:7-11.

Second, in the order referring this matter to the magistrate, I noted that plaintiff's motion raised dispositive matters because a dismissal sanction was sought due to "defendant's spoiliation [sic] of the evidence." Order, filed April 19, 1991, at 3:4-5. Even if plaintiff's briefing was insufficient to put defendant on notice that intent was at issue, certainly the court's characterization of this motion as a spoliation matter should have raised alarm that defendant's mental state was of concern to the court.

Finally, the magistrate noted that an evidentiary hearing was ordered "because there appeared to be serious factual disputes concerning the motive behind the destruction of evidence." Findings and Recommendations at 3:9-12. I conclude, therefore, that defendant was given fair notice that his willfulness or state of mind was of central concern in the sanctions matter. Defendant, having failed to avail himself of the opportunity to testify at the lengthy evidentiary hearing conducted by the magistrate, must now abide by his tactical decision. The court declines defendant's further offer of proof on the matter of his intent in destroying the evidence.

## B. Consideration of Other Factors

**\*4** The magistrate has recommended that a rebuttable presumption of copying be established, reasoning that this will put the plaintiff in the same position as if the evidence had not been destroyed. A prima facie case of copyright infringement requires plaintiff prove ownership of the copyright and copying of an expression protected by the copyright. *Johnson Controls v. Phoenix Control Systems*, 886 F.2d 1173, 1175 (9th Cir.1989). Copying is usually proved by proof of defendant's access to the copyrighted material and substantial similarity between the copyrighted material and the allegedly infringing material. *Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). By destroying the original source code versions, defendant in the instant case has precluded plaintiff from proving substantial similarity. Under Ninth Circuit law, once the plaintiff offers proof that defendant had access and the two works are substantially similar, a presumption of copying by defendant arises. *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir.1976). The magistrate's recommended sanction mirrors this presumption and overcomes the difficulties with plaintiff's proof that have been caused by defendant's destruction of the evidence.

This sanction, however, would serve no deterrent or punitive function. Ordinarily, the rebuttable presumption of copying need not be overcome with clear and convincing evidence. *Granite Music Corp.*, 532 F.2d at 723-24; *Perry Studio, Inc. v. Wernick*, 597 F.2d 1308, 1310 (9th Cir.1979). As an alternative sanction that would be moderately punitive, the court has considered imposing a requirement on defendant that he rebut the presumption with clear and convincing evidence.

Although these alternative sanctions are reasonably tailored to put the plaintiff in the position he would have been in but for defendant's transgression, I conclude that they are inadequate to protect the integrity of the court's process. Defendant's conduct in the instant action, cast in its most charitable light, is an affront to the integrity of the judicial system. Knowing full well the significance of the initial source codes to plaintiff's suit for copyright infringement, defendant willfully destroyed essential evidence after being served with a request for production. Although I have served many years on the federal bench, this court has never before been confronted with such a flagrant example of contempt for the judicial system. Faced with a similar case of spoliation, a brother court found the circumstances sufficiently extraordinary to warrant default judgment. *See Computer Associates Intern. v. American Fundware*, 133 F.R.D. 166 (D.Colo.1990).

In that opinion, Judge Carrigan reflects this court's concern with imposing a sanction that would be sufficiently severe so as to deter future like-minded litigants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 4
Not Reported in F.Supp., 1991 WL 327959 (E.D.Cal.), 1992 Copr.L.Dec. P 26,832, 22 U.S.P.Q.2d 1686
**(Cite as: Not Reported in F.Supp.)**

In this post Iran-gate era of widely publicized evidence destruction by document shredding, it is well to remind litigants that such conduct will not be tolerated in judicial proceedings. Destruction of evidence cannot be countenanced in a justice system whose goal is to find the truth through honest and orderly production of evidence under established discovery rules. I hold that nothing less than default judgment on the issue of liability will suffice to both punish this defendant and deter others similarly tempted.

*5 _Computer Assoc._, 133 F.R.D. at 170. Because defendant's conduct strikes at the heart of the judicial process, I too, conclude that no sanction less than default judgment will be sufficient to serve both the necessary deterrent and punitive functions.

### IV

#### _Preliminary Injunction_

Plaintiff has moved to preliminarily enjoin defendant during the pendency of this action from infringing plaintiff's copyright and from publishing, selling, marketing, transferring, copying or otherwise disposing of any copies of defendant's computer software program. To prevail on this motion, plaintiff must demonstrate either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits are raised and the balance of hardships tips sharply in the moving party's favor. _Apple Computer Inc. v. Formula Int'l, Inc._, 725 F.2d 521, 525 (9th Cir.1984). In a copyright infringement action, plaintiff need only demonstrate a reasonable likelihood of success on the merits because such a showing raises a presumption of irreparable harm. _Johnson Controls v. Phoenix Control Systems_, 886 F.2d 1173 (9th Cir.1989)

Because this court shall order default judgment on the issue of liability be entered against defendant as a sanction for spoliation, plaintiff has demonstrated more than a likelihood of success on the merits; it is a certainty. Accordingly, a presumption of irreparable harm arises. Defendant contends that plaintiff is not irreparably harmed because his product is sold to low-end users who could not afford plaintiff's product. Competitive harm, however, is not the only kind of irreparable harm recognized in copyright infringement actions. Plaintiff can be

irreparably harmed in its reputation for high quality products, see _Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd._, 604 F.2d 200 (2nd Cir.1979), as well as in the loss of control of distribution of its works. See _Harper & Row Publishers, Inc. v. Nation Enterprises_, 471 U.S. 539 (1985).

Plaintiff need only demonstrate a possibility of irreparable injury. Even if defendant's contention was correct, that defendant's customers could not and would not have bought plaintiff's product because of its high cost, that argument addresses only competitive harm. Defendant has failed to rebut the presumption of irreparable harm that rises in the instant action. Plaintiff's motion for preliminary injunction is therefore GRANTED.

In accordance with the above, IT IS HEREBY ORDERED:

(1) Default judgment on the issue of liability is hereby entered against defendant.

(2) Defendant James W. Sullivan and his agents, servants, employees, attorneys, and all persons in active concert or participation with him are enjoined during the pendency of this action from infringing plaintiff's copyright in any manner and from publishing, selling, marketing, transferring, copying, or otherwise disposing or attempting to dispose of any copies of defendant's computer software program entitled "Kitchen Simulator."

*6 IT IS SO ORDERED.

E.D.Cal.,1991.
Cabinetware Inc. v. Sullivan
Not Reported in F.Supp., 1991 WL 327959 (E.D.Cal.), 1992 Copr.L.Dec. P 26,832, 22 U.S.P.Q.2d 1686

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



Slip Copy

Page 1

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Adams v. Gateway, Inc.D.Utah,2006.Only the
Westlaw citation is currently available.
United States District Court,D. Utah, Central
Division.
Phillip M. ADAMS, et al., Plaintiffs,
v.
**GATEWAY, INC., f/k/a Gateway 2000, Inc., a**
Delaware corporation, Defendant.
**No. 2:02-CV-106 TS.**

March 22, 2006.

Gregory D. Phillips, Cody W. Zumwalt, Kevin A.
Howard, Howard Phillips & Andersen, Salt Lake
City, UT, for Plaintiffs.
David M. Connors, Jennifer A. Brown, Chapman &
Cutler, E. Scott Savage, Berman & Savage PC,
Joseph Covey, Parr Waddoups Brown Gee &
Loveless, Salt Lake City, UT, Jeffrey E. Ostrow,
Simpson Thacher & Bartlett, Palo Alto, CA, Brian
A. Carpenter, George G. Matava, John R.
Posthumus, Greenberg Traurig, Denver, CO, David
G. Hetzel, Leboeuf Lamb Greene & MacRae, New
York, NY, Dennis F. Kerrigan, Leboeuf Lamb
Greene & MacRae, Hartford, CT, for Defendant.

ORDER DENYING GATEWAY'S MOTION TO
MAINTAIN SEAL OF ORDER PENDING
COMPLETION OF TRIAL AND ORDER THAT
DOCKET NO. 484 BE UNSEALED
STEWART, J.
**\*1** This matter is before the Court on Gateway's
Motion to Maintain Seal of Order Pending
Completion of Trial. The Court's March 6, 2006,
Memorandum Decision and Order on De Novo
Review of the Magistrate Judge's Reports and
Recommendations and Imposing Sanctions was
filed under seal and provided:
[I]f any party seeks to have any portion of this
Order remain sealed, they shall file a notice by
March 13, 2006, specifying the portion of the Order

they seek to have retained under seal and stating the
reason.[FN1]

FN1. Docket No. 484, at 22.

Plaintiffs state that the Memorandum Decision
contains no confidential materials or information
and contend it should be unsealed. Gateway
opposes unsealing on three grounds: (1) the Court
may modify the Order after hearing live witnesses at
trial; (2) retaining the Decision seal until trial would
not substantively prejudice the public's right of
access; and (3) retaining the Decision under seal
may promote settlement.

At the Final Pretrial Conference, Gateway's counsel
clarified that there are no pending settlement
negotiations. Because neither party contends that
the Memorandum Decision contains any
confidential material or information that need be
retained under seal pursuant to the Stipulated
Confidentiality Protective Order,[FN2] it will be
unsealed. It is therefore

FN2. Docket No. 47.

ORDERED that Gateway's Sealed Motion to
Maintain Seal of Order Pending Completion of
Trial (Docket No. 492) is DENIED. It is further

ORDERED that Docket No. 484 be UNSEALED.

SEALED MEMORANDUM DECISION AND
ORDER ON DE NOVO REVIEW OF
MAGISTRATE JUDGE'S REPORTS AND
RECOMMENDATIONS AND IMPOSING
SANCTIONS

I. INTRODUCTION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

The discovery rules authorize sanctions for the failure to fully disclose or to preserve evidence in pretrial discovery. The Magistrate Judge's two Reports and Recommendations [FN1] find that the alleged infringer in this patent case, Defendant Gateway, has spoliated and failed to disclose evidence. The Reports recommend sanctions including that Gateway should be prohibited from asserting the attorney-client or work product privilege in this case, imposing negative inferences, awarding attorney fees and costs, and issuing a warning that further missing evidence or tardy disclosure of evidence may result in entry of judgment against Gateway. Gateway opposes the Magistrate's recommendations on the grounds that although it admits inadvertent errors were made, it acted promptly to correct its failure to comply with discovery orders only two years after the collective memory failure of its busy attorneys and short-handed employees. On de novo review, this Court finds and concludes that not only are the Reports and Recommendations correct in all respects, but the supplemental record presented to this Court since the Magistrate issued his recommendations confirms the necessity for severe, but not terminating, sanctions.

> FN1. Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) and Sealed Report and Recommendations Re: Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346).

## II. DE NOVO REVIEW

Since its inception, this case's ceaseless discovery disputes have been ably handled by Magistrate Judge Nuffer. Accordingly, when Adams filed two potentially dispositive motions directly arising from those discovery disputes, this Court deferred to his familiarity with the disputes and referred the Motions to him under a "B reference" for a report and recommendation.[FN2] When a party objects to a report and recommendation issued under a "B reference," this Court reviews the Magistrate Judge's Order under the de novo standard of review.

FN3

> FN2. 28 U.S.C. § 636(b)(1)(B) (authorizing referral of dispositive motions to magistrate for report and recommendation).

> FN3. *First Union Mortg. Corp v. Smith,* 229 F.3d 992, 995 (10th Cir.2000) (de novo standard of review applies to magistrate judge's orders with dispositive effect).

*2 In order to conduct a de novo review a court " should make an independent determination of the issues ...; [it] 'is not to give any special weight to the [prior] determination'...." "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." [FN4]

> FN4. *Ocelot Oil Corp. v Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United States v. First City Nat. Bank,* 386 U.S. 361, 368, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) and *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976)).

The Court has conducted a de novo review of the record and issues. In so doing it has reviewed and considered the entire record cited by the Magistrate, including his Reports and Recommendations, the Objections, Response, Reply and Renewed Motion for Terminating Sanctions,[FN5] and the supplemental materials filed by Gateway.[FN6]

> FN5. Docket No. 366.

> FN6. Including Gateway's Supplemental Accounting (Docket No. 377) filed April 29, 2005, all exhibits attached to the briefing on the Objections, the Addendum (Docket No. 409) filed on September 1, 2005, the documents submitted pursuant to the Court's order at the August 19, 2005

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 3

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

hearing on the Objections (*see* Minute Entry at Docket No. 404), the tabbed exhibits attached to the August 31, 2005 cover letter (Docket No. 406) (Matava Letter), and the information provided pursuant to the Court's September 7, 2005 Order (Docket No. 407 and Response at Docket No. 410).

## III. REPORTS AND RECOMMENDATIONS

### A. Spoliation Report

On March 29, 2005, the Magistrate Judge issued his Sealed Report and Recommendation [FN7] on Adams' Motion for Judgment Based upon Gateway's Spoliation of Evidence [FN8] (Spoliation Report). The Spoliation Report also covered Gateway's Motion requesting an inference as a sanction for alleged spoliation of evidence by Adams.[FN9] The Magistrate denied Gateway's Spoliation Motion [FN10] and Gateway does not object to that ruling.

FN7. Docket No. 347.

FN8. Docket No. 101.

FN9. Docket No. 186 (Gateway's Spoliation Motion).

FN10. Spoliation Report at 28.

The Magistrate considered a list of nine items [FN11] of evidence formerly in Gateway's control that are now missing. He found the loss of all nine to be prejudicial to the evidentiary record. The Magistrate also found that, of the nine, two are evidence that is clearly central to this case and their absence is "not remediated or minimized by other evidence." [FN12] Those items are the e-mail from Charlie Ma to Y.C. Woon and the 3.60TEST utility. The Magistrate found that there is no direct evidence that their loss was rooted in bad faith because there is no explanation for their loss or indication of the timing of the loss. But he found that there is a *potential* for abuse, especially when considering the evidence of

Gateway's failures to disclose on the issue of its possession of Adams' detector.[FN13] The Magistrate recommends that Adams' Spoliation Motion be granted in part and that the Court should make findings and impose an evidentiary inference as a result of the missing evidence, warn Gateway that further loss of evidence may result in terminating sanctions, and impose attorney fees and cost incurred as a result of the Spoliation Motion.

FN11. *Id.* at 5, and 16-19.

FN12. *Id.* at 20 and 22.

FN13. *Id.* at 21 ("It would really be remarkable if there were direct evidence of a party's destruction or intentional loss of evidence. If concealment were the goal, the means would be concealed .").

Gateway admits that the evidence is missing but contends that no sanctions are warranted because it did not intentionally destroy the evidence and Adams has not been prejudiced. It further argues that even if those findings are made, that the recommended sanctions are too severe.[FN14] Gateway's argument is that the Magistrate erred in finding that Gateway destroyed or intentionally destroyed evidence [FN15] and that the Magistrate " presumably relies on non-precedential case law holding that a showing of bad faith is not required." [FN16]

FN14. Objection at 3-4.

FN15. *Id.* at 3.

FN16. *Id.* at 4.

Gateway does not object to the Magistrate's overview of the facts or his summary of the law on spoliation, except to the extent of the Magistrate's citation of an unpublished case noting while a finding of bad faith destruction is required to impose an evidentiary inference, such bad faith is not generally required when considering other sanctions for the spoliation of evidence. [FN17] The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**

Court finds that case was accurately cited, is helpful in its discussion of factors to be considered [FN18] in imposing non-dismissal spoliation sanctions and, in fact, supports Gateway's position that a finding that bad faith is required to impose an evidentiary inference.

> FN17. *Id.* at 5, citing Spoliation Report at 15 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv, Inc.*, 1998 WL 68879 (10th Cir.1998)).

> FN18. *See* 10th Cir. R. 36.3(b) (Citation of unpublished cases where it would assist the court in its disposition).

**\*3** Having considered the entire record de novo, including the documents provided after the Spoliation Report issued, the Court finds that Gateway intentionally destroyed or lost the missing Ma to Woon e-mail. While the Magistrate did not go that far, this Court does. It is the only interpretation of the entire record of the discovery in this case that makes sense. It is true that there is no direct evidence of the bad faith destruction of the Ma to Woon e-mail,[FN19] but neither is there any evidence that it was merely innocently or negligently lost[FN20] Nor is this a case where the party accused of spoliation never actually possessed the evidence in question. [FN21] There is however, ample circumstantial evidence of a bad faith spoliation.[FN22]

> FN19. *See* Spoliation Report at 21.

> FN20. *See Estate of Trentadue ex. Rel. Aguilar v. U.S.*, 397 F.3d 840, 862-63 (10th Cir.2005) (not error to refuse to sanction litigant for loss of evidence where trial court found that loss of potential evidence was "result of ignorance or incompetence as opposed to intentional act ") citing *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir.1997) (inference of bad faith loss of one page of evidence undermined by testimony of circumstances of loss and production of information from

another source) and *Vick v. East Texas Employment Com'n*, 514 F.2d 734, 735 (5th Cir.1975) (no sanction where the " records were destroyed under routine procedures without bad faith and well in advance of ... service of interrogatories").

> FN21. *Compare Proctor and Gamble Company v. Haugen*, 427 F.3d 727, 739-40 (10th Cir.2005) (finding that trial court abused its discretion in dismissing case for failure to preserve evidence where, among other things, the party found culpable never possessed or owned the evidence at issue).

> FN22. *See Aramburu*, 112 F.3d at 1407 (finding that "any inference of bad faith" arising from witness' testimony that he lost record was undermined by the company's production of other records containing the missing evidence).

The circumstantial evidence includes the information received since the filing of the Spoliation Report regarding a different e-mail-the January 11, 2001 DeRusso to Holstein e-mail-a complete hard copy of which was finally produced by a former employee and which showed incriminating information. As is the case with the Ma to Woon e-mail, Gateway had no explanation as to why it did not have a copy of the complete January 11, 2001 DeRusso to Holstein e-mail. [FN23] When finally disclosed to the Court,[FN24] that missing e-mail was accompanied by a stack of Declarations setting forth information that Gateway's employees and attorneys claim they had previously forgotten, but were reminded of by the re-discovered e-mail.[FN25] As discussed below in connection with the Detector report, this sequence of events shows the pattern of Gateway's failure to comply with discovery orders and its willingness to hide important evidence. When viewed against Gateway's total inability to account for what became of the crucial Ma to Woon e-mail, this pattern of behavior is circumstantial evidence of Gateway's bad faith spoliation of the email.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                Page 5

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**

> FN23. Defendant's Response and Reply
> (Docket No. 375), and Adams' Reply
> (Docket No. 382) at 4-5 (quoting
> DeRusso's Deposition testimony that he
> understood it would have been
> automatically saved).

> FN24. The existence of the hard copy was
> disclosed to Gateway on February 24,
> 2005.

> FN25. Gateway's Supp. Accounting,
> (Docket No. 377) Exs. A through L and
> Objection (Docket No. 361) Exs. A
> through C.

The disclosures after the Spoliation Report have
added sensational evidence to this case. But the Ma
to Woon e-mail is still missing. There is no
evidence to support Gateway's argument that the
missing e-mail would be benign or that because
Gateway now admits that it possessed the detector
that there is no prejudice to Adams from its
spoliation of the e-mail. Contrary to Gateway's
arguments, what, if anything, Ma said to Woon in
the e-mail is still very central to this case and
therefore, its absence is prejudicial to Adams.
Adams alleges that Gateway deliberately obtained
his patented detector and used it to correct the
problem during the very time that Gateway
supplier's employee Ma sent the e-mail with the
detector to Gateway employee Woon. Anything that
the Quanta employee said to Gateway about the
identity of what was transmitted, and why, could not
be more relevant.[FN26] Going over the entire
history of the attempt to discover the e-mail chain
that placed the detector in Gateway's possession at
the time of alleged infringement, the Court finds
that it is clear that for years Gateway did everything
it could to avoid producing complete copies of all
of the relevant e-mails. There is no explanation of
the reason that this crucial e-mail is missing. Based
upon the entire record, this Court concludes that the
explanation is that it was destroyed in bad faith by
Gateway.

> FN26. See Matava Letter Tab A at 4
> (Barry's notes of 5/8/03 meeting with

Holstein) ("Here's the software that a
supplier received from Dr. Adams.") Tab
C, page 2 ¶ 6 (Wagner's Notes same) and
Tab D at 3 ¶ 1 (Wagner's notes of 1/14/05
meeting with Holstein).

*4 Upon de novo review, including the new
evidence submitted since the Spoliation Report, the
Court agrees with the Magistrate's factual findings
and summary of the case law and will adopt them.
In addition, the Court adds its own findings that it is
clear that the Ma to Woon e-mail would have been
extremely relevant to this case and there is
sufficient circumstantial evidence that (1) it was
destroyed by Gateway during the time that Gateway
had a duty to preserve it and to produce it in
discovery; and (2) Gateway's conduct in destroying
the evidence is in bad faith. These findings warrant
imposition of an evidentiary inference that the
missing e-mail would have been favorable to
Adams.[FN27]

> FN27. Aramburu, 112 F.3d at 1407.

As to the other missing evidence, the Court will
determine, in the context of trial, whether an
adverse inference is warranted for such evidence. In
view of the more recent disclosures of other new
evidence, it may be that those other missing items
of evidence are not as central to the case as it was
once believed and such findings may not be
required.

In addition to the inference, the Court finds that an
appropriate sanction for Gateway's bad faith
spoliation of the Ma to Woon e-mail should include
imposition of attorney fees and costs for all of the
proceedings related to the spoliation Motion,
including the Spoliation Report, the Objection and
subsequent briefing.

The Court does not, however, believe that imposing
a terminating sanction is warranted for the
spoliation of evidence in this case, despite the
finding of bad faith, for the following reasons. First,
Gateway was not warned that such terminating
sanctions could be imposed. Second, the sanctions
of evidentiary inferences and imposition of

Slip Copy

Page 6

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**

attorneys fees and costs is an appropriate remedy that is more tailored to the violation and less drastic than dismissal. Third, the Court finds that although the spoliation of evidence has made it more difficult and expensive for Adams to make his case, it has not destroyed his ability to do so, so long as there is an appropriate inference.

Lastly, the Court will issue a warning to Gateway that if more evidence of a central nature that was in Gateway's possession is determined to be missing for any reason, thereby impairing the ability of the Court to adjudicate the parties' rights, entry of judgment in favor of Adams may be an appropriate remedy.

### B. Detector Report

On March 29, 2005, the Magistrate issued his Sealed Report and Recommendation Re: Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Detector Report).[FN28] The Detector Report covered two areas. First, the Magistrate found that Gateway failed to comply with the specific Order that it provide a complete accounting of the possession, use or transmittal of the detector file,[FN29] the patented software at issue in this case, during the time of the alleged infringement. Second, the Magistrate found that Gateway had improperly used a consulting expert designation and otherwise improperly used claims of privilege to hide non-privileged evidence. The Magistrate recommended making findings and drawing inferences from Gateway's delayed production of evidence of its possession of the Adams patented detector, including its failure to comply with the specific Order for a complete accounting on the issue. The Magistrate also recommended awarding attorney fees and sanctions, issuing a warning that further such conduct will result in entry of judgment in favor of Adams, and prohibiting Gateway from asserting the attorney-client or work product privilege as to Adams as it relates to the claims in this case.

FN28. Docket No. 346.

FN29. Order Regarding Failure to Disclose Detector (Docket No. 245) (Order for Accounting). Gateway filed its accounting (the Accounting) on September 10, 2004 (Docket No. 264).

*5 Gateway objects on the grounds that (1) it did not intentionally conceal information because it thought that the information it provided was correct at the time; (2) it complied with the Order as it interpreted the Order; (3) when it discovered information that revealed the accounting was incomplete, it provided more complete information; and (4) Adams has not been prejudiced because he eventually received the information.[FN30] Gateway does not, however, apparently object to the recommendation for the award of attorney fees and expenses.

> FN30. Gateway also alleged that sanctions should not be imposed where Adams lacks clean hands because he failed to produce a document in this case that was recently discovered in related litigation. See Docket Nos. 436 and 422. There is not a complete record on that accusation and the Court will not address it in this Order.

After entry of the Detector Report, Gateway filed a Supplemental Accounting.[FN31] The information revealed in the Supplemental Accounting was indeed stunning. It revealed that not only had Gateway's Chief Technical Officer Holstein received the patented detector through a chain of Gateway employees' e-mails, he had used it-and then there had been an apparent collective memory failure of these facts by Gateway's employees, in-house counsel and retained counsel. The information in the Supplemental Accounting included hard copies of e-mails elicited by a subpoena to Holstein in preparation for his deposition. The e-mails included one clearly showing that the Adams detector had been forwarded as an attachment through several Gateway employees until it reached Holstein.

FN31. Docket No. 377.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                Page 7

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**

The Supplemental Accounting consists largely of
carefully worded declarations of the various
individuals who knew, but failed to disclose,
relevant facts for the Accounting. Those failing to
disclose included Gateway's attorney Posthumus.
He says that he did not disclose the information
about Holstein's possession either when asked by
the Magistrate at a July 3, 2003 hearing, or in the
Accounting, because he says that during a May 8,
2003, meeting Holstein was not sure whose
software it was.[FN32] The tardy disclosures of
Gateway's possession of the detector provoked
Adams' Renewed Request for Terminating
Sanctions.[FN33]

> FN32. Supp. Accounting, Ex. A at 18-20.

> FN33. Docket No. 366.

When this Court heard argument on Gateway's
Objection to the Detector Report, the Court ordered
filing of additional information including "any notes
by any person or other information relating to the
May 2003 meeting with Mr. Holstein and attorney
Posthumus." [FN34] This request was prompted by
the Court's initial finding, upon review of
Supplemental Accounting, that it was not believable
that so many attorneys and Gateway employees
could have either forgotten, or failed to understand
the significance of, Gateway's transmission and
possession of the patented detector at the time of
the alleged infringement.

> FN34. Docket No. 404.

In response, another of Gateway's counsel
submitted five sets of notes under a cover letter.[FN35]
Three sets of the notes, Tabs A, B, and C, are
notes of three attorneys-Posthumus, Barry, and
Wagner[FN36]-attending the May 8, 2003 meeting,.
Tabs D and E are not responsive to the Court's
request as they are Wagner's notes of two
subsequent meetings between Holstein and
Gateway's counsel in 2005,[FN37] well after the
2004 accounting.

> FN35. Docket No. 406 is the cover letter
> (Matava Letter). The tabbed notes are not
> yet docketed.

> FN36. Barry and Wagner are in-house
> counsel for Gateway.

> FN37. The two subsequent meetings were
> on January 14, 2005 and February 9, 2005.

*6 In support of Gateway's current position,
Posthumus' Declaration is very detailed about what
Holstein told him at the May 8, 2003 meeting.[FN38]
However, a review of what Posthumus declares[FN39]
are his only notes from that meeting,[FN40]
shows not one mention of what Posthumus now says
Holstein said about a detector. It defies logic to
believe that Posthumus, without notes of what
Holstein said, had such a clear recollection at the
time of the Accounting of exactly what Holstein had
said at the May 8, 2003 meeting. [FN41] This is
particularly true when the record shows that when
queried by the Magistrate in July 2003, a few
months after May 8, 2003 meeting, Posthumus did
not recall that Holstein had discussed his possession
and use of Adams detector.

> FN38. Supp. Accounting, Ex. A at 18-20.

> FN39. Document No. 410, Ex. A. at ¶¶
> 4, 5 (Posthumus' September 13, 2005
> Declaration).

> FN40. Matava Letter, Tab A.

> FN41. *See* Supplemental Accounting Ex.
> A. at ¶ 18.

In stark contrast to Holstein's position, the
contemporaneous notes of the other two attorneys
attending the May 8, 2003 meeting are full of what
Holstein told them about his possession and use of
the Adams detector. There is no indication in those
notes that Holstein's recollection was then "very
hazy" as it is now described by Gateway.[FN42]
Instead, the notes of the other two attorneys are
remarkably consistent with each other and recount
that Holstein knew it was Adams' detector when he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

Page 8

received it, took it to his home, and tested it.[FN43] Thus, none of the notes of the May 8, 2003 meeting support either Posthumus' Declaration in the Supplemental Accounting or Gateway's current position.

> FN42. Gateway's Reply, Docket No. 375 at 3.

> FN43. Matava Letter, Tab C. at 2., Tab B at 4.

The notes of the 2005 meeting do show some ambiguity in Holstein's knowledge of the identity of the detector, but they are not relevant to the accounting filed in 2004. Upon review of the entire record on this matter, it appears that Holstein becomes hazier in his recollection through successive meetings with his lawyers, but the tabbed notes to the Matava Letter show that on May 8, 2003, he was clear that it was Adams' detector.

The notes of the May 8, 2003 meeting are just a confirmation of the Court's findings and conclusion upon a de novo review of the entire record. That conclusion is that Gateway failed to comply with the letter or spirit of the Magistrate's Order for an accounting of its use and possession of the detector and has shown no excuse for doing so. The Court specifically finds that Gateway's failures to comply were in bad faith. On this subject the Court relies heavily on matters filed under seal. Those matters contradict the excuses offered in the sealed Declarations and in Gateway's briefing that its attorneys and employees were too busy [FN44] or too shorthanded [FN45] to find or disclose the information, did not timely recognize its significance, [FN46] or just forgot about it.[FN47]

> FN44. *See* Supplemental Accounting, Ex. A Posthumus Dec. at ¶¶ 9 ("very busy") 12 (same); 14Ex. I Wagner Dec. at ¶ 12

> FN45. Objection to Spoliation Report at 3-4 ("gateway's downsizing has also made production an arduous task.")

> FN46. *Id.* Ex. I Wagner Dec. at ¶ 12

> FN47. *Id.* Ex. C, DeRusso Dec. at ¶ 7-8, 14; Ex E. Barry Dec. at 9-10; Ex. F.; *Compare* Walker Dec. at ¶¶ 5, 9 *with* Holstein Dep. at 163-65.

The Court has reviewed the Detector Report and its related materials de novo and has considered all of the supplementary material. Upon said de novo review, the Court finds that the Magistrate's summary of the facts regarding the detector and the use of privileges in this case are accurate, succinct, and a compelling read. The Court has nothing to add to the Magistrate's comprehensive findings and conclusions regarding Gateway's abuse of privilege in this case-a matter not seriously disputed by Gateway. The Court will adopt the Detector Report in full. To it, the Court will add its own findings and conclusions, upon a de novo review, that Gateway failed to comply with the discovery orders of this Court; that its failure to do so is in bad faith; and has prejudiced Adams. Not only has Adams been prejudiced by the delay of several years, there has been the unnecessary time and great expense caused by Gateway's improper use of privileges as well as the expenses necessary to resolve discovery on the detector issue. As discussed above, the prejudice includes loss of at least one e-mail that is evidence central to this case. The Magistrate found that " these repeated conflicts consume time and resources of the parties and the court, draining them away from the merits of the case." [FN48] This Court agrees.

> FN48. Detector Report at 49.

*7 Under Rule 37, the Court possesses the discretion to award attorney fees,[FN49] to enter judgment, or to issue a contempt sanction for the failure to disclose evidence and to comply with discovery orders.[FN50] The sanction chosen by the Court must be "both just and related to the particular claim that was at issue in the order to provide discovery." [FN51] The Court must consider lesser sanctions before imposing terminating sanctions. [FN52]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

Page 9

FN49. *G.J.B. & Ass'n. v. Singleton*, 913 F.2d 824, 830 (10th Cir.1990) (upholding award of attorney fees and costs against counsel who violated trial court's pretrial order that exhibits to be introduced or discussed at trial be identified).

FN50. Fed.R.Civ.P. 37(b)(2)(B) and (C); *Proctor and Gamble Company v. Haugen*, 427 F.3d 727, 737 (10th Cir.2005).

FN51. *Proctor and Gamble*, 427 F.3d at 738 (quoting *Ehrenhaus v Reynolds*, 965 F.2d 916, 921 (10th Cir.1992)).

FN52. *Id.*

It is this Court's considered opinion, upon review of the entire record, that terminating sanctions are a close call. But, as noted by the Magistrate, Gateway was not warned in advance of such a possibility. The *Proctor and Gamble* case, decided after this matter was briefed, reiterates the necessity of such a warning and holds that an extreme sanction such as dismissal is seldom warranted [FN53] The Court also finds that Gateway has asserted that it has a meritorious defense to Adams' infringement claims.

FN53. *Id.*

The Court finds that the sanctions recommended by the Magistrate are a measured and proportional response to Gateway's violations of the Magistrate's Order for Accounting, Gateway's abuse of claims of privilege, and its continuing failure to comply with its responsibilities as a litigant to timely and fully disclose evidence. The attorney fees and costs are likely to be substantial and the evidentiary inferences are serious. But Gateway has no one but " itself to blame." [FN54]

FN54. Detector Report at 31.

The prohibition against asserting privilege to shield documentation and testimony of any Gateway activities prior to the filing of this suit which are related to floppy disk controller errors or to Adams is a serious matter that neither the Magistrate nor this Court takes lightly. The Court will impose the recommended sanctions, but will not impose the terminating sanction requested by Adams.

On the issue of the sanction for improper claims of privilege, Gateway argues that if such sanctions are awarded, it should not be required to produce legal strategy related to several Qui Tam actions unless that information is related to Adams. [FN55] From Gateway's submission, it is not possible to identify such documents. Within five days of the entry of this Order, Gateway shall file a list identifying those documents that it believes should not be covered by the sanction.

FN55. Objection at 31, n. 13.

## VI. WARNING

Gateway opposes the Magistrate's recommendation that it be warned that if there is further evidence that is missing or tardily disclosed, or if it engages in further conduct that impedes the disclosure or discovery of relevant evidence further severe sanctions, including entry of judgment, shall be imposed. Such a warning is appropriate and required [FN56] where the Court is considering such a serious sanction as entry of judgment against a party. It is a sorry day when this Court finds it necessary to issue such a warning, but Gateway and its counsel should consider themselves warned.

FN56. *Proctor and Gamble*, 427 F.3d at 738 (applying *Ehrenhaus* factors).

## VII. UNSEALING ORDER

As noted above, the Court is required to refer to items filed under seal as part of its analysis. The Court does not intend to retain this Order under seal. To that end, the Court has not recited its analysis of the facts and its findings in more specific detail than strictly necessary to support its findings of bad faith. Instead, it has endeavored to refer to the sealed documents in a general way. If a party has any specific objection to the unsealing of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

Page 10

specific portion of this Order, said party shall file a notice of such objection within five days of the entry of this Order.

## VII. ORDER

**\*8** Based upon the foregoing, it is therefore

ORDERED that Gateway's Objection (Docket No. 361) to Magistrate Judge Nuffer's Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) is OVERRULED. It is further

ORDERED that upon de novo review, the Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) is ADOPTED IN ALL RESPECTS. It is further

ORDERED that Gateway's Motion Requesting Inference of Patent Invalidity and Unenforceability Pursuant to the Spoliation Doctrine (Docket No. 186) is DENIED. It is further

ORDERED that Adams' Sealed Motion for Judgment Based Upon Gateway's Spoliation of Evidence (Docket No. 101) is DENIED IN PART and judgment will not be entered in favor of Plaintiffs as a sanction but other sanctions shall be imposed. It is further

ORDERED that the following sanctions are imposed for spoliation of evidence: at trial the Court will make the findings and apply the inferences as follows:
Some evidence which Gateway should have had in its possession is missing. Gateway has offered no explanation of the reason this evidence is not available. The missing items include: An e-mail sent in January 2001 from Charlie Ma of Quanta Computers to YC Woon, a Gateway employee, which Gateway says was the means by which Gateway came into possession of Adams' detector software. The e-mail has not been produced. As the court has confronted issues which this item of evidence would resolve, it has inferred that the missing evidence would have been favorable to Adams.

but the Court will reserve the issue of findings and inferences as to the Stepp e-mail and the Test Utilities until trial. It is further

ORDERED that Gateway shall pay Adams' attorney fees and costs incurred in connection with the Motion for Judgment Based Upon Gateway's Spoliation of Evidence (Docket No. 101), the Objection to the Spoliation Report and all related proceedings up through the Objection to Lodge Document filed on September 6, 2005.[FN57] It is further

FN57. Docket No. 408.

ORDERED that Gateway's Objection (Docket No. 360) to Magistrate Judge Nuffer's Sealed Report and Recommendation Regarding Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346) is OVERRULED. It is further

ORDERED that upon de novo review, the Sealed Report and Recommendation Regarding Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346) is ADOPTED IN ALL RESPECTS. It is further

ORDERED that Adams' Motion for Judgment on the Pleadings and for Sanctions (Docket No. 176) and Adam's Renewed Motion for Terminating Sanctions (Docket No. 366) are GRANTED in PART and DENIED in PART. The Court will impose sanctions, but will not impose terminating sanctions. It is further

ORDERED that at trial, the Court shall find and infer as follows:
Between Gateway's first meeting with Adams in July 2000 in Salt Lake City and Gateway's last meeting with Adams in San Diego in February 2001, Gateway made specific efforts to obtain software to test floppy disk controllers in its computers. On or about January 8, 2001, Gateway obtained Adams' patented detector software from a source other than Adams. Gateway had provided the source with a copy of Adams' patent and confirmed that the source had Adams' software. The source

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

delivered the software to Gateway.
**\*9** Adams did not know Gateway had possession of his detector software at the time. Gateway did not disclose that it had Adams' detector software until February 2004, two years after this lawsuit commenced. Even after Gateway disclosed that it had obtained Adams' detector software, and despite being ordered by the court to provide an accounting of its acquisition of Adams' detector software, Gateway did not disclose all the facts surrounding its acquisition of the detector software.

In instances where Adams lacks evidence of Gateway's use of his detector software, the court has inferred

a. that the lack of evidence is caused by Gateway; and

b. that Gateway did use Adams' software.

It is further

ORDERED that as to Adams, in this litigation, Gateway should be prohibited from asserting the attorney-client or work-product privileges for documentation and testimony of any Gateway activities prior to the filing of this suit which are related to floppy disk controller errors or to Adams. Within five days of the entry of this Order, Gateway shall file a list identifying those documents that it believes should not be covered by this paragraph. It is further

ORDERED that Gateway shall pay Adams' attorney fees and costs incurred as a result of Plaintiffs' Motion for Judgment and Sanctions Based Upon Failure to Disclose Stolen Detector and Deceptive Use of "Consulting Expert" Designation in Privilege Logs,[FN58] the Renewed Motion for Judgment, and all of the proceedings regarding the accounting for possession of the detector, up through and including the Detector Report, the Objection, the Order and all related hearings. It is further

> FN58. Including the papers enumerated in footnotes 2 through 6 of the Detector Report.

ORDERED that within 30 days of the entry of this Order, Adams shall file an itemization of the costs, including attorney fees awarded herein.[FN59] Gateway shall have a period of 15 days thereafter to respond to Adams' submission and the Magistrate judge should thereafter recommend an award of expenses, including attorney fees. It is further

> FN59. The Court realizes that trial is fast approaching, and upon application to the Magistrate the parties may seek to extend the dates for filing matters related to the award of attorney fees and costs.

ORDERED that Gateway and its counsel are warned that if more evidence of a central nature is missing for any reason or is tardily disclosed, impairing the ability of the Court to adjudicate the parties' rights, entry of judgment against Gateway may be an appropriate remedy. Further, Gateway is warned that conduct which impedes the disclosure or discovery of relevant evidence may also result in dismissal of its counterclaims, striking some defenses or claims, or the entry of conclusive findings on discrete issues. It is further

ORDERED that if any party seeks to have any portion of this Order remain sealed, they shall file a notice by March 13, 2006, specifying the portion of the Order they seek to have retained under seal and stating the reason.

DATED this 6th day of March, 2006.

\* \* \* \* \* \*MAILING CERTIFICATE OF THE CLERK\* \* \* \* \* \*

Gregory D Phillips

HOWARD PHILLIPS & ANDERSEN

560 E 200 S STE 300

SALT LAKE CITY, UT 84102

**\*10** David M Connors

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
(Cite as: Slip Copy)

Page 12

MABEY & MURRAY LC

1000 KEARNS BLDG

136 S MAIN ST

SALT LAKE CITY, UT 84101

E. Scott Savage

BERMAN & SAVAGE PC

170 S MAIN STE 500

SALT LAKE CITY, UT 84101

Jeffrey E. Ostrow

SIMPSON THACHER & BARTLETT (PALO ALTO)

3330 HILLVIEW AVE

PALO ALTO, CA 94304

Brian A. Carpenter

GREENBERG TRAURIG (CO)

1200 17TH ST STE 2400

DENVER, CO 80223

David G. Hetzel

LEBOEUF LAMB GREENE & MACRAE (N.Y.)

125 W 55TH ST

NEW YORK, N.Y. 10019

Dennis F. Kerrigan

LEBOEUF LAMB GREENE & MACRAE (CT)

GOODWIN SQ

225 ASYLUM ST

HARTFORD, CT 06103

John R. Posthumus

GREENBERG TRAURIG (CO)

1200 17TH ST STE 2400

DENVER, CO 80223

D.Utah,2006.
Adams v. Gateway, Inc.
Slip Copy, 2006 WL 2563418 (D.Utah)

Briefs and Other Related Documents (Back to top)

• 2006 WL 813117 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiffs' Motion to Strike Gateway's Six Motions for Summary Judgment (Including DKT Nos. 446, 447, 448, 458, 459, 449, 450, 451, 452, 453, 454, 455, 456, AND 457) for Violating the 25-PAGE Limit Set Forth In DUCivR 56(1)(b) ŸDocket No. 474" (Feb. 23, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 813116 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Strike Gateway's Six Motions for Summary Judgment (Including DKT Nos. 446, 447, 448, 458, 459, 449, 450, 451, 452, 453, 454, 455, 456, and 457) for Violating the 25-Page Limit Set Forth In DUCivR 56(1)(b ) (Feb. 22, 2006) Original Image of this Document (PDF)
• 2006 WL 813115 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiffs' Opposition to Gateway's Motion to Compel Dr. Adams Expert Report and Deposition or, Alternatively, to Exclude Adams' Expert Testimony (Feb. 15, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 813114 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Gateway's Motion to Compel DR. Adams Expert Report and Deposition or, Alternatively, to Exclude Adams' Expert Testimony (Feb. 3, 2006) Original Image of this Document with Appendix (PDF)
• 2005 WL 3197926 (Trial Motion, Memorandum and Affidavit) Non-Party National Semiconductor Corporation's Partial Objection to the Proposed Order on the Joint Stipulation and Motion

Slip Copy

Slip Copy, 2006 WL 2563418 (D.Utah)
**(Cite as: Slip Copy)**


Regarding Certain Discovery Issues, Filed October 19, 2005 (Oct. 24, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 1990505 (Trial Motion, Memorandum and Affidavit) Non-Party National Semiconductor Corporation's Memorandum in Reply to Adams' (1) Opposition to National's Motion for a Protective Order Precluding Further Discovery by Adams and (2) Non-Opposition to National's Motion to Intervene (Apr. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 1990503 (Trial Motion, Memorandum and Affidavit) Non-Party National Semiconductor Corporation's Memorandum in Support of Its Motion to Intervene and Oppose Plaintiff Adams' Request to Modify the Stipulated Confidentiality Protective Order (Apr. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 1990500 (Trial Motion, Memorandum and Affidavit) Non-Party National Semiconductor Corporation's Memorandum in Support of Its Motion for a Protective Order Under Fed. R. Civ. P. 26(c) and 45(c) Precluding Further Discovery By Adams (Mar. 31, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 1990495 (Trial Pleading) Amended Answer and Counterclaim to Second Amended Complaint in Compliance with Order Granting Motion to Amend in Part (Jan. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 1990498 (Trial Pleading) Amended Answer and Counterclaim to Second Amended Complaint in Compliance With Order Granting Motion to Amend in Part (Jan. 14, 2005) Original Image of this Document (PDF)
• 2:02cv00106 (Docket) (Feb. 5, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.