Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200
Facsimile:  (914) 749-8300

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

*Attorneys for Plaintiff, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>　　　　Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DEEM A PROSPECTIVE THIRD-PARTY DEPOSITION IN RELATED LITIGATION TO BE A DEPOSITION TAKEN IN THIS CASE AS WELL**<br><br>**FILED IN REDACTED FORM [ORIGINALLY FILED UNDER SEAL]**<br><br>Case No. 2:03CV0294DAK<br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Plaintiff, The SCO Group, Inc., respectfully submits this Memorandum in Support of Its Motion to Deem a Prospective Third-Party Deposition in Related Litigation to be a Deposition Taken in This Case as Well.

## BACKGROUND

In the <u>SCO v. Novell</u> litigation, by agreement of the parties, SCO has until May 31, 2007, in which to serve a subpoena on and take the deposition of non-party witness Pamela Jones. The prospective deposition of Ms. Jones bears on this litigation as well. Accordingly, SCO asks the Court to deem Ms. Jones's deposition to be one taken in this case, providing notice of the deposition to IBM and an opportunity to participate if the company so chooses.

Ms. Jones is the self-proclaimed operator of an internet website known as "Groklaw" (www.groklaw.net). Ms. Jones claims to have copyrighted and to maintain Groklaw personally. (PR Newswire, http://www.prnewswire.com/cgi-bin/stories.pl?ACCT=104&STORY=/www /story/02-04-2004/0002102965&EDATE= (Feb. 4, 2004) (quoting Pamela Jones: "Groklaw is my own…") (Ex. 1).) Through the website, Ms. Jones has reported extensively on and repeatedly disseminated Novell's claims of ownership of the UNIX copyrights, as well as generally addressed SCO's disputes with Novell and IBM since the inception of those lawsuits. The content and commentary of the website (and other evidence) show that Ms. Jones is not an objective commentator, but rather a vehicle through which opponents of SCO have conducted their case against SCO in the court of public opinion, where no gate-keeper monitors the reliability of content.

SCO has sought to depose Ms. Jones to address, among other things, her participation in Novell's and IBM's conduct toward SCO and the content of her website relating to SCO. The notice given to IBM of the prospective deposition by virtue of SCO's instant Motion is more than sufficient,

because SCO has not yet served Ms. Jones with a subpoena for her deposition.  Obviously aware of

SCO's designs to depose her, Ms. Jones has neither accepted service of the subpoena nor agreed to

appear for deposition, but rather appears to have fled and evaded service of the subpoena.  Ms.

Jones's reluctance to appear for deposition in this matter is better understood in the context of certain

relevant evidence.  Indeed, SCO has obtained evidence through discovery of Ms. Jones's allegiance

and financial connection to Novell and IBM, which underscores her motivation to avoid having to

testify in this matter.

On January 30, 2007, SCO's counsel issued a subpoena in the United States District Court

for the District of Connecticut, compelling Ms. Jones to appear for a deposition on February 21,

2007.  Since that time, a process server has repeatedly sought to locate and personally serve Ms.

Jones with the subpoena, without success.

REDACTED

Confirming her obvious efforts to avoid the subpoena, Ms. Jones announced on her website

on February 10, 2007, that she would be taking a vacation.  (Health Break, http://www.groklaw.net/

article.php?story=2007021013564542 (Feb. 10, 2007, 13:56 EST) (Ex. 2).)  Industry reporters

immediately recognized that SCO's subpoena had precipitated Ms. Jones's leave of absence;

postings to that effect even appeared on her own website.  (See, e.g., Dan Goodin, SCO

Bloodhounds Search for Groklaw Author, The Register, Feb 15, 2007, http://www.

theregister.co.uk/2007/02/15/sco_foe/print.html (Ex. 3); Posting of John Murrell, <u>Where (and for that matter, who) is Pamela Jones?</u>, Good Morning Silicon Valley, Feb. 14, 2007, http://blogs. siliconvalley.com/gmsv/2007/02/where_and_for_t.html (Ex. 4).) Similarly, postings on the Linux-Watch Forum, a website dedicated to "keeping an eye on the penguin," extensively discussed SCO's subpoena for Ms. Jones; her refusal to accept service; and SCO's approaching deadline for effectuating service. (<u>Yes, There is a PJ</u>, http://www.linux-watch.com/cgi-bin/board/ UltraBoard.pl?Action=ShowPost&Board=talkbacks&Post=239&Idle=0&Sort=0&Order=Descen d &Page=0&Session= (Feb. 16, 2007, 03:01:06) (Ex. 5).)

Ms. Jones's efforts to evade service and her leave of absence support the long-held view of industry commentators, for example, that Ms. Jones is connected to IBM's and Novell's arguments not simply by the commonality of their expressed opinions of SCO's claims, but also by financial ties. (<u>See, e.g.</u>, Goodin, <u>supra</u>.) Additional evidence confirms those financial ties. Although counsel for IBM denied on February 12, 2004, that IBM was "causing" any third party, "through funding or otherwise, to make statements on its behalf about the litigation" (Ex. 6), documents exchanged in discovery and other sources demonstrate that Groklaw

REDACTED

[1] Novell was also a "platinum" member of the OSDL (http://groups.linux-foundation.org/osdl_members/americas_roster (Ex. 8), and retains that status

---

[1]      REDACTED

since the OSDL merged with the Free Standards Group to create "The Linux Foundation")
(http://www.linux-foundation.org/en/Members (Ex. 9)).

REDACTED

 

Indeed, <u>Wall Street Journal</u> reporter Dan Lyons recently reported on his website
("Floating Point") that, according to his sources, OSDL paid "$40,000 to $50,000" to Groklaw
between late 2005 and early 2006.  (<u>OSDL Payments to Groklaw?</u>, http://floatingpoint.
wordpress.com/ (Mar. 27, 2007) (Ex. 13).)  In response to an inquiry from Mr. Lyons regarding
the foregoing issues, IBM did not deny its knowledge of such payments, or of OSDL's intent to
use monies received from IBM towards supporting Groklaw; nor did IBM deny that it knew the
payments would in fact be made to Groklaw, nor that IBM expected such payments to support
the consistent and strident anti-SCO message that Groklaw was communicating to the world.
Instead, IBM said only:  "IBM does not have any agreements or arrangements with Groklaw or
Pamela Jones.  IBM, like many other companies, has provided funding to OSDL in the past, and
you would have to contact them about how that funding was disbursed." (<u>Id.</u>)  Given that Mr.
Mauri of IBM was the Chairman of the OSDL during the relevant time frame, IBM's statement

4

rings hollow, to say the least.  In addition, Novell has had a representative on the OSDL/The

Linux Group Board of Directors since 2003.  (http://lwn.net/Articles/62243/ (Ex. 14).)  Former

Novell executive Chris Stone, who worked with the OSDL for Novell in 2003 and 2004, admits

in Mr. Lyons's piece that "paying money to Groklaw 'would not have been a good thing for

OSDL.  OSDL was meant to be above the fray, not investing in groups or web sites.'"  (Ex. 13.)

     In addition to funneling money to Groklaw through the OSDL, moreover, IBM

contributes to the site's internet host.  Groklaw.net receives free internet hosting from ibiblio

(http://www.ibiblio.org), an academic research project, to which IBM is a major contributor.

(See Paul McDougall, <u>IBM Helps Fund Web Hosting For Anti-SCO Site Groklaw</u>,

Informationweek, http://informationweek.com/story/showArticle.jhtml?articleID=198100504,

Mar. 21, 2007 (Ex. 15).)  In fact, most of the servers on which Groklaw.net and other ibiblio

publications run are hosted on IBM-donated servers.  (http://www.ibiblio.org/systems/hardware-

details.html) ("This is a breakdown of the production hardware behind ibiblio.org.  Almost all of

the IBM hardware was given by IBM in the form of grant funding." (Ex. 16).)  IBM's support of

ibiblio is, according to the project's director, continuing in nature.

     Other evidence supports the conclusion that SCO's opponents in litigation have been feeding

information to Ms. Jones for publication on Groklaw.  On August 16, 2004, for example, Ms. Jones

posted for review on her website "IBM's Redacted Memorandum in Support of Motion for Partial

Summary Judgment on Breach of Contract Claims."  (<u>IBM Goes for the Jugular -- Files Motion for

Partial Summary Judgment on Contract Claims!</u>, http://www.groklaw.net/articile/php?story

20040816111607708 (Ex. 17).)  The memorandum that Groklaw posted was file-stamped (Ex. 18),

but was <u>not</u> the publicly available version.  <u>That</u> version was stamped "232" (Ex. 19) and entered

into the Docket two days later, on August 18, 2004 (Ex. 20).  The memorandum entered into the Docket would not even have been available for public use until it was so entered.  Only IBM would have had access to another file-stamped copy of the brief -- that is, the one they had file-stamped by the Clerk and then kept for IBM's own uses.  (<u>Compare</u> Ex. 18 (the memorandum posted on Groklaw) <u>with</u> Ex. 19 (the publicly available version of the memorandum).)  In other words, the evidence shows that the brief Ms. Jones posted on her website was not obtained from the Court, but rather from IBM.

The same appears to be true of earlier IBM filings.  On March 26, 2004, for example, IBM filed its "Unopposed Motion for Leave to File Amended Counterclaims." (Ex. 21.)  The memorandum that Groklaw posted, at Ex. 22, was not file-stamped at all.  (http://www.groklaw.net/ article.php?story=20040330184527522 (Ex. 23).)  Groklaw therefore did not obtain the copy of the filing that it posted from the Court.  Instead, Groklaw must have obtained a copy of the filing from one of the parties, and it was not SCO.

## ARGUMENT

The foregoing evidence establishes that Ms. Jones's testimony is relevant in both the <u>SCO v. IBM</u> and <u>SCO v. Novell</u> litigations.  SCO seeks the instant relief generally to preclude any later argument that the content of Ms. Jones's prospective testimony was taken outside of the <u>SCO v. IBM</u> litigation, and thus any later argument that the testimony therefore is presumptively irrelevant.  SCO further submits that, specifically, the notice of the prospective deposition of Ms. Jones provided to IBM hereunder satisfies the introductory language to Federal Rule of Civil Procedure 32(a).  That language states:

> (a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so

> far as admissible under the rules of evidence applied as though the
> witness were then present and testifying, may be used against any
> party who was present or represented at the taking of the
> deposition or who had reasonable notice thereof, in accordance
> with any of the following provisions:

Without debating now the admissibility of any testimony that Ms. Jones may give at deposition, SCO

plainly satisfies the foregoing language if IBM is represented at the deposition, which it would be if

the depositions were deemed taken in SCO v. IBM.  In addition, this Motion has given IBM

"reasonable notice" of the prospective deposition.  (SCO of course will copy counsel for IBM on any

further notice of the particular time and place of the deposition.)

SCO seeks the instant relief now, rather than after service on Ms. Jones and the scheduling of

a specific time and place for her deposition, in order to avoid any argument from IBM that the

company lacked notice of the deposition or was not given an opportunity to represent itself at the

deposition.  With respect to the relevance of the instant notice give to IBM, SCO will continue to

make every effort to timely serve and depose Ms. Jones, and indeed may need to pursue alternative

means of service with the Court, consistent with the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 45 provides in relevant part: "Service of a subpoena upon a

person named therein shall be made by delivering a copy thereof to such person." Fed. R. Civ. P.

45(b)(1). "Such language 'neither requires in-hand service nor prohibits alternative means of

service.'" W. Resources, Inc. v. Union Pac. Railroad Co., No. .00-2043-CM 2002 WL 1822432, at

*2 (D. Kan. July 23, 2002) (Ex. A) (quoting King v. Crown Plastering Corp., 170 F.R.D. 355, 356

(E.D.N.Y. 1997)); Cordius Trust v. Kummerfeld, No. 99 CIV 3200(DLC), 2000 WL 10268, at *2

(S.D.N.Y. 2000) (Ex. B) (granting application for alternative service by certified mail).  Although the

Tenth Circuit does not appear to have addressed the issue, other courts have held that Rule 45 does

7

not require "personal service," but rather, Rule 45 is satisfied so long as "the manner of service is reasonably calculated to provide timely notice." Green v. Baca, No. CV02-204744, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) (Ex. C) (rejecting challenge to service of subpoena that was served by leaving copies at witnesses' offices).

Where, as here, a witness has knowledge of a party's efforts to serve a subpoena and attempts to evade such service, Rule 45 "should not be construed as a shield." W. Resources, 2002 WL 1822432, at *2 (finding Rule 45 satisfied where plaintiff left a copy of the subpoena in witness's mailbox and delivered a copy via Fed Ex); see also First Nationwide Bank v. Shur, 184 B.R. 640, 643 n.2 (E.D.N.Y. 1995) (noting "that the difficulty in service is often occasioned by the intended recipient's knowledge of the contents of the subpoena coupled with a conscious effort to avoid its effect. Why should one seeking to frustrate the legitimate ends of a judicial procedure be given greater deference than the minimum demanded by due process?").

The evidence detailed above demonstrates that Ms. Jones has actual notice of SCO's intention to serve her with a subpoena. Not only has it been widely reported in industry articles, but it has been discussed on Ms. Jones's website, which is dedicated to following these legal proceedings. Groklaw is copyrighted and maintained by Ms. Jones personally. Similarly, postings on the Linux-Watch Forum, a website dedicated to "keeping an eye on the penguin," extensively discussed SCO's subpoena for Ms. Jones; her refusal to accept service; and SCO's then-approaching deadline for effectuating service.

**CONCLUSION**

SCO respectfully requests, for the foregoing reasons that the Court deem the prospective deposition of third party Pamela Jones to be taken in this case as well as in the related SCO v. Novell litigation.

DATED this 2nd day of April, 2007.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

DORSEY & WHITNEY LLP
Devan V. Padmanabhan

*Counsel for The SCO Group, Inc.*

By: _____

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the

foregoing SCO's Memorandum in Support of Its Motion to Deem a Prospective Third-Party

Deposition in Related Litigation to Be a Deposition Taken in This Case as Well, in redacted

form, was served on Defendant/Counterclaim-Plaintiff, International Business Machines

Corporation, on this 2nd day of April, 2007, via CM/ECF to the following:

David Marriott, Esq. (dmarrriott@cravath.com)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Todd Shaughnessy, Esq. (tshaughnessy@swlaw.com)
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

/s/ Edward Normand