# EXHIBIT A

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1822432 (D.Kan.)
**(Cite as: 2002 WL 1822432 (D.Kan.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
WESTERN RESOURCES, INC., Plaintiff,
v.
UNION PACIFIC RAILROAD CO., et al., Defendants.
**No. 00-2043-CM.**

July 23, 2002.

MEMORANDUM AND ORDER
DAVID J. WAXSE, Magistrate Judge.

**\*1** Pending before the Court is Plaintiff's Motion to Compel William E. Greenwood's Compliance with Subpoena (doc. 331). For the reasons stated below, Plaintiff's Motion is granted.

Relevant Factual Background

This case arises out of agreements between Plaintiff and Defendants Union Pacific ("UP") and The Burlington Northern and Santa Fe Railway Company ("BNSF") (collectively "the Defendants") for the transportation of coal from the Powder River Basin in Wyoming to Plaintiff's Jeffrey Energy Center near Topeka, Kansas. Pursuant to Fed.R.Civ.P. 26(a)(2), Defendants disclosed William E. Greenwood ("Greenwood") as one of their expert witnesses in this case. Greenwood submitted an expert report pursuant to Fed.R.Civ.P. 26(a)(2)(B) on October 1, 2001.

On November 7 and 8, 2001, Greenwood was deposed by Plaintiff's counsel. Greenwood's deposition covered a variety of topics and included a discussion of Greenwood's prior employment by predecessors of BNSF from 1963 to 1994. Plaintiff's counsel asked a series of questions concerning Greenwood's financial interest in BNSF leading up to and following his departure from the company. Relevant to the pending Motion, Greenwood testified his compensation had

risen to the level of approximately $1 million per year at the time he left the BNSF and that prior to his departure, he was the second largest shareholder of company stock among the company corporate officers. Greenwood further testified that his pension included both a lump sum cash payment of approximately $2 million and a monthly payment for the balance of his life. Finally, Greenwood testified he is being compensated for his work on this case at a rate of $500 per hour and, at the time of his deposition last fall, had worked approximately 300 hours on the case.

On or about November 27, 2001, Plaintiff initiated service of a document subpoena upon Greenwood by certified mail, with copies simultaneously served upon Defendants' counsel by facsimile. The subpoena called for production of the referenced documents by December 18, 2001. The United States Post Office made three recorded attempts to deliver the subpoena to Greenwood, but service was not accepted. Plaintiff states that on December 19, 2001, counsel for BNSF advised Plaintiff's counsel that, although Greenwood was aware of the November 27 subpoena, Greenwood would not be producing any documents because he had not received formal service of the subpoena.

Plaintiff states it then retained a process server to personally serve the subpoena. But, when service was attempted, the server was told Greenwood was on vacation and Greenwood's staff refused to accept delivery on Greenwood's behalf. Plaintiff maintains the server subsequently left the subpoena in Greenwood's mailbox. [FN1] Plaintiff then served an additional copy of the subpoena on Greenwood by Federal Express. [FN2] Although Greenwood nor his staff signed for the Federal Express package, tracking documents generated by Federal Express indicate Greenwood previously had executed a signature release waiver, which means any signature requirement is waived in order for signature in order to accomplish delivery. [FN3]

> FN1. See Affidavit of Service, Exhibit 4 to Plaintiff's Motion to Compel (doc. 331).

Case 2:03-cv-00294-DN    Document 1022-28    Filed 04/06/07    PageID.17697    Page 3 of 17

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2002 WL 1822432 (D.Kan.)
**(Cite as: 2002 WL 1822432 (D.Kan.))**

FN2. See Federal Express Tracking Results, Exhibit 5 to Plaintiff's Motion to Compel (doc. 331).

FN3. *Id.*

**\*2** On January 18, 2002, Plaintiff filed this Motion to Compel Greenwood to comply with the subpoena. In response, Greenwood states he is not required to respond to the subpoena because

• he was never personally served with the subpoena;

• even if he had been personally service with the subpoena, such request for discovery was untimely in light of the December 21, 2001 discovery deadline;

• the document requests are overly broad on their face; and

• the document requests set forth in the subpoena impose an undue burden on Greenwood because they are cumulative in nature.

The Court will address each of Greenwood's objections in turn.

• Personal Service

The issue before the Court is whether service of a subpoena on a non-party individual must be accomplished by personal service or whether, at least under these circumstances, service upon a non-party's attorney or service upon the non-party by Federal Express when the party has signed a signature waiver with Federal Express satisfies the requirements of Rule 45(b)(1).

Fed.R.Civ.P. Rule 45(b)(1) provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person...." Although the rule does not use the term "personal service," many courts have interpreted the relevant language as permitting exclusively this method of service. [FN4] Several courts have held, however, that personal service of a subpoena is not required. [FN5]

FN4. *See, e.g., F.T.C. v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1312-13 (D.C.Cir.1980) (stating, in dicta, that "under the Federal Rules, compulsory process may be served upon an un-

willing witness only in person"); *Agran v. City of New York,* 1997 WL 107452, at \*1 (S.D.N.Y.1997) (noting that "the weight of authority is that a subpoena duces tecum must be served personally" and "the Court is without authority to sanction an alternative form of service"); *Conanicut Investment Co. v. Coopers & Lybrand,* 126 F.R.D. 461, 462 (E.D.N.Y.1989) ( "Nowhere is the Court given discretion to permit alternate service in troublesome cases.").

FN5. *See, e.g., King v. Crown Plastering Corp.,* 170 F.R.D. 355, 356 (E.D.N.Y.1997) ("the court sees no reason for requiring in hand delivery so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness"); *First Nationwide Bank v. Shur,* 184 B.R. 640, 642 (E.D.N.Y.1995) (" 'delivering' a copy of a subpoena, for the purposes of Rule 45 includes any act or series of acts that reasonably assures the entity to which it is addressed fair and timely notice of its issuance, contents, purpose and effect"); *Hinds v. Bodie,* 1988 WL 33123, at \*1 (E.D.N.Y.1988) (court ordered service by alternative means after five unsuccessful attempts to serve subpoena on non-party witness).

The language of Rule 45 does not explicitly demand personal service of a subpoena, but instead requires only that a copy be "deliver[ed]" to the person whose attendance or production of documents is sought. Such language "neither requires in-hand service nor prohibits alternative means of service." [FN6] Further, reading the relevant language to require personal service would render superfluous that part of Rule 45 indicating that proof of service is accomplished "by filing with the clerk of the court ... a statement of the date and manner of service." [FN7] Moreover, if Rule 45 is read as requiring personal, in-hand service, then the language in Rule 4(e) specifying that "delivery" to the relevant individual be done "personally" would be pure surplusage. [FN8]

FN6. *King,* 170 F.R.D. at 356.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN7. Fed.R.Civ.P. 45(b)(3).

FN8. See Fed.R.Civ.P. 4(e)(2) (service may be effected by "delivering a copy of the summons and of the complaint to the individual personally.").

In accordance with the interpretative principle that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action" [FN9] and given the textual ambiguity of Rule 45 combined with the repeated attempts of the Plaintiff to effectuate personal service, and the cost and delay that would result by requiring further attempts at such service, this Court thus joins those holding that effective service under Rule 45 is not limited to personal service. The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service. Because the alternative service here--service upon the non-party's counsel and Federal Express--reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 is met, and Greenwood has been provided with fair and timely notice of his obligation to produce documents.

FN9. Fed.R.Civ.P. 1.

**\*3** Contrary to Greenwood's assertion, the decision in *Alexander v. Jesuits of Missouri Province* [FN10] does not stand for the general proposition that service of a subpoena on a non-party individual can be accomplished in this jurisdiction only by personal service. In Alexander, the court found the subpoena at issue was not enforceable, but this decision was based on a finding by the court that the overall conduct of the plaintiffs' counsel in the scheduling of the nonparty deposition violated the Model Rules of Professional Conduct and Fed.R.Civ.P. 45. [FN11] More specifically, the Alexander court found that the subpoena unenforceable for the following reasons:

FN10. 175 F.R.D. 556 (D.Kan.1997).

FN11. Id.

• the subpoena was served only three business days before the scheduled deposition;

• the subpoena was not accompanied by the required tender of witness fee and mileage;

• the subpoena was not served on the witness personally; and

• the subpoena required a nonparty witness, who was 41 years old, worked full-time and was pregnant, to appear for deposition at 8:00 a.m.--a time much earlier than ordinary--in a city that was more than 60 miles away from her home. [FN12]

FN12. Id.

The Alexander court does not specifically address the issue of whether service other than personal service upon a nonparty individual is available under the federal rules, but instead holds there is no duty to respond to a subpoena that is served only three business days before the scheduled deposition, is not accompanied by the required tender of witness fee and mileage, is not served on the witness personally and requires a 41 year old pregnant nonparty witness to appear for deposition at 8:00 a.m.--a time much earlier than ordinary--in a city that was more than 60 miles away from her home. [FN13] Thus, the Court finds the facts and circumstances presented here are readily distinguishable from those presented in Alexander.

FN13. Id.

• Timeliness

Greenwood argues that, even if the subpoena had been properly served, such request for discovery was untimely in light of the December 21, 2001 discovery deadline. Given the unique circumstances present, the Court disagrees. Plaintiff originally initiated service of the subpoena by certified mail on November 27, 2001, with copies simultaneously served upon Defendants' counsel by facsimile. The subpoena called for production of the referenced documents by December 18, 2001--prior to the close of discovery. Thus, the Court rejects Greenwood's argument on this issue.

• Overly Broad

Upon review of the requests at issue, the Court agrees with Greenwood and finds many of the requests are

overly broad on their face to the extent they utilize all-encompassing phrases such as "relate to" or "relating to." The federal discovery rules provide that "request[s] shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity." [FN14] Moreover, "[r]equests should be reasonably specific, allowing the respondent to readily identify what is wanted." [FN15]

> FN14. Fed.R.Civ.P. 34(b).
>
> FN15. *Western Resources, Inc. v. Union Pacific Railroad,* No. 00- 2043-CM, 2001 WL 1718368, *3 (D.Kan. Dec. 5, 2001)* (quoting *Audiotext Communications v. U.S. Telecom, Inc.,* No. 94-2395-GTV, 1995 WL 18759, at * 1 (D.Kan. Jan. 17, 1995)).

**\*4** Courts may find requests overly broad when they are "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope." [FN16] Use of broad terms such as "relate to" or "relating to" provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive. [FN17] Here, as in Cotracom, the phrases "relate to" and "relating to" do not modify a specific type of document, but rather all documents; thus, their very use make the requests overly broad on their face.

> FN16. *Id.*
>
> FN17. *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 666 (D.Kan.1999) (citing *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 197 (D.Kan.1996)).

Despite the overly broad nature of many of the referenced requests on their face due to the "relate to" or "relating to" language, Greenwood has a duty under the federal rules to respond to the extent that discovery requests are not objectionable. [FN18] The Court, however, will not compel further response when inadequate guidance exists to determine the proper scope of a request for discovery. [FN19] Although Plaintiff utilized omnibus phrases in the requests at issue here, the Court finds the balance of the lan-

guage used in the requests provides adequate guidance to determine the scope of the requests propounded. Accordingly, the Court rejects Greenwood's argument that the requests are overly broad to the extent they fail to reasonably identify with precision the documents sought.

> FN18. Fed.R.Civ.P. 34(b).
>
> FN19. *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. at 666 (citing *Schartz v. Unified School Dist. No. 512,* No. Civ. A. 95- 2491-EEO, 1996 WL 741384, at *1 (D.Kan. Dec. 18, 1996)* (addressing duty to answer interrogatories and respond to requests for production); *see, also, Mackey v. IBP, Inc.,* 167 F.R.D. 186, 198 (D.Kan.1996) (addressing duty to answer interrogatory)).

• Undue Burden/Cumulative

As the party resisting the discovery, Greenwood has the burden to show facts justifying his objections. [FN20] Those resisting discovery must demonstrate that the time or expense involved in responding to requested discovery is unduly burdensome. [FN21] Moreover, the party resisting discovery has the obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure which would be required to produce the requested documents. [FN22] This information is necessary to enable the Court to determine the burden imposed by the discovery. "In making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information." [FN23] Discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery. [FN24]

> FN20. See *Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 332 (D.Kan.1991).
>
> FN21. *Williams v. Bd. of Cty. Commissioners of the Unified Government of Wyandotte Cty.,* 98-2485-JTM, 2000 WL 1475873, *1 (D.Kan. Aug. 14, 2000).*

Not Reported in F.Supp.2d, 2002 WL 1822432 (D.Kan.)

**(Cite as: 2002 WL 1822432 (D.Kan.))**

FN22. *Id.*

FN23. *Hoffman v. United Telecomms., Inc.,* 117 F.R.D. 436, 438 (D . Kan.1987).

FN24. *Snowden,* 137 F.R.D. at 333.

Greenwood has not shown the discovery to be irrelevant or cumulative--he only asserts that the subject of Greenwood's financial interest in BNSF was discussed at Greenwood's deposition. Neither has Greenwood provided details of the alleged burden upon him in terms of time and money required to produce the requested documents. This detailed information is necessary to enable the Court to determine the burden imposed by the discovery. On the facts before it, the Court finds Plaintiff's need for the documents requested outweighs any speculative burden to Greenwood.

Accordingly, Plaintiff's Motion to Compel is granted and Greenwood shall respond to the referenced subpoena within eleven (11) days from the date of this Order.

**\*5** IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 1822432 (D.Kan.)

**Motions, Pleadings and Filings (Back to top)**

• 2002 WL 32154616 (Verdict and Settlement Summary) (Sep. 12, 2002)

• 2:00cv02043 (Docket) (Jan. 24, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 10268 (S.D.N.Y.), 45 Fed.R.Serv.3d 1151

**(Cite as: 2000 WL 10268 (S.D.N.Y.))**

Page 1



**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
CORDIUS TRUST, Plaintiff,
v.
Elizabeth KUMMERFELD and Kummerfeld Associates, Inc., Defendants.
**No. 99 CIV. 3200(DLC).**

Jan. 3, 2000.

James Wade, Bradford S. Babbitt, Robinson & Cole LLP, Hartford, CT.

Thomas W. Caulfield, Esq., E. Quogue.

MEMORANDUM OPINION AND ORDER
COTE, District J.

**\*1** Plaintiff Cordius Trust, in light of repeated unsuccessful attempts to serve a subpoena duces tecum personally upon Donald Kummerfeld ("Kummerfeld"), has made an application for an order authorizing alternative service of the subpoena by certified mail. For the reasons stated below, the application is granted.

BACKGROUND
Plaintiff alleges that Kummerfeld, the husband of defendant Elizabeth Kummerfeld, is the Chairman of the Board of defendant Kummerfeld Associates, Inc., and at one point was the company's President. Plaintiff, further believing that Kummerfeld possesses information and documentation in his personal capacity that is relevant to this proceeding, seeks to depose Kummerfeld and require him to produce relevant documents. Between December 8, 1999 and December 17, 1999, plaintiff made repeated attempts to serve Kummerfeld at his residence with a executed subpoena duces tecum, but the doorman repeatedly barred the process server from ascertaining whether Kummerfeld was in his apartment. When he attempted to effect service at Kummerfeld's place of business, the process server was informed that Kummerfeld was no longer employed there. Further, on December 21, 1999, at a pre-trial conference attended

by Kummerfeld, Kummerfeld indicated that while he was amenable to service in his corporate capacity, and had in fact submitted to such service, he would not accept service of a subpoena that sought to depose him in his personal capacity.

Plaintiff thereafter requested that in light of the numerous failed attempts to effectuate personal service, this Court authorize alternative service of the subpoena by means of certified mail.

DISCUSSION
The issue before the Court is whether service of a subpoena on a non-party individual must be accomplished by personal service or whether, at least under these circumstances, service by certified mail satisfies the requirements of Rule 45(b)(1), Fed.R.Civ.P. Rule 45(b)(1) provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person ...." Although the rule does not use the term "personal service," many courts have interpreted the relevant language as permitting exclusively this method of service. *See, e.g.,* *F.T.C. v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1312-13 (D.C.Cir.1980) (stating, in dicta, that "under the Federal Rules, compulsory process may be served upon an unwilling witness only in person"); *Agran v. City of New York,* 1997 WL 107452, at \*1 (S.D.N.Y.1997) (noting that "the weight of authority is that a subpoena duces tecum must be served personally" and "the Court is without authority to sanction an alternative form of service"); *Conanicut Investment Co. v. Coopers & Lybrand,* 126 F.R.D. 461, 462 (E.D.N.Y.1989) ("Nowhere in Rule 45 is the Court given discretion to permit alternate service in troublesome cases.").

Several courts have held, however, that personal service of a subpoena is not required. *See, e.g., King v. Crown Plastering Corp. .,* 170 F.R.D. 355, 356 (E.D.N.Y.1997) ("the court sees no reason for requiring in hand delivery so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness"); *First Nationwide Bank v. Shur,* 184 B.R. 640, 642 (E.D.N.Y.1995) (" 'deliver-

Not Reported in F.Supp.2d, 2000 WL 10268 (S.D.N.Y.), 45 Fed.R.Serv.3d 1151
**(Cite as: 2000 WL 10268 (S.D.N.Y.))**

ing' a copy of a subpoena, for the purposes of Rule 45 includes any act or series of acts that reasonably assures the entity to which it is addressed fair and timely notice of its issuance, contents, purpose and effect"); *Hinds v. Bodie,* 1988 WL 33123, at *1 (E.D.N.Y.1988) (court ordered service by alternative means after five unsuccessful attempts to serve subpoena on non-party witness). The Second Circuit has not yet addressed this issue.

**\*2** The language of Rule 45 does not explicitly demand personal service of a subpoena, but instead requires only that a copy be "deliver[ed]" to the person whose attendance or production of documents is sought. Such language "neither requires in-hand service nor prohibits alternative means of service." *King,* 170 F.R.D. at 356. Further, reading the relevant language to require personal service would render superfluous that part of Rule 45 indicating that proof of service is accomplished "by filing with the clerk of the court ... a statement of the date and *manner of service* ". Rule 45(b)(3), Fed.R.Civ.P. (emphasis added). Moreover, if Rule 45 is read as requiring personal, in-hand service, then the language in Rule 4(e) specifying that "delivery" to the relevant individual be done "personally" would be pure surplusage. *See* Rule 4(e)(2), Fed.R.Civ.P. (service may be effected by "delivering a copy of the summons and of the complaint to the individual *personally* ") (emphasis added).

This Court thus joins those holding that effective service under Rule 45 is not limited to personal service. In accordance with the interpretative principle that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action", Rule 1, Fed.R.Civ.P., and given the textual ambiguity of Rule 45 combined with the repeated attempts of the plaintiff to effectuate personal service, and the cost and delay that would result by requiring further attempts at such service, plaintiff is permitted to serve Kummerfeld by certified mail. The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service. Because alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 will be met, and Kummerfeld will be

provided with fair and timely notice of his obligation to appear at a deposition. Further, service by certified mail comports with due process as it is reasonably calculated under the circumstances to provide Kummerfeld with both notice and an opportunity to present objections. *See, e.g., S.E.C. v. Tome,* 833 F.2d 1086, 1093 (2d Cir.1987) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

CONCLUSION

Cordius Trust's application for alternative service is granted. Service of the subpoena duces tecum upon Kummerfeld that is effected by certified mail shall be deemed sufficient to satisfy the requirements of Rule 45, Fed.R.Civ.P.

SO ORDERED:

Not Reported in F.Supp.2d, 2000 WL 10268 (S.D.N.Y.), 45 Fed.R.Serv.3d 1151

**Motions, Pleadings and Filings (Back to top)**

• 2000 WL 34500323 (Trial Motion, Memorandum and Affidavit) Affidavit of Joel Richards (Jan. 20, 2000)

• 1:99cv03200 (Docket) (May. 04, 1999)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
**(Cite as: 2005 WL 283361 (C.D.Cal.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
W.E. GREEN
v.
Leroy BACA
**No. CV 02-204744MMMMANX.**

Jan. 31, 2005.
Anel Huerta, Deputy Clerk, Present for Plaintiffs.

Stephen Yagman, Marion R. Yagman, Yagman & Yag-
man & Reichmann, Venice Beach, CA, for Plaintiff.

David D. Lawrence, Michael D. Allen, Jeremy Warren,
Franscell, Strickland, Roberts & Lawrence, Glendale, CA
for Defendant.

CIVIL MINUTES--GENERAL
MORROW, J.

**\*1** Note that this is an order clarifying to *Green v. Baca, -*
*-- F.Supp. --- 2d, 2005 WL 221069 (01/24/05).*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
**(Cite as: 2005 WL 283361 (C.D.Cal.))**

Proceedings:  Order Denying Defendant's Ex Parte Application To Quash Subpoenas
              And Clarifying Court's Ruling On Motion In Limine No. 12

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
**(Cite as: 2005 WL 283361 (C.D.Cal.))**

Plaintiff W.E. Green brings this action under 42 U.S.C. § 1983 and *Monell v. Department of Social Services,* 426 U.S. 658 (1978), against defendant Sheriff Leroy Baca in his official capacity. Trial is set to commence on February 1, 2005, at 8:30 a.m. Before the court is defendant's *ex parte* application for an order quashing subpoenas served on Eleanor Kagan, Curtiss Burnett, Arlan Mulford, Dennis Werner, Charles M. Jackson and Paul Beach. Defendant also seeks an order precluding plaintiff from serving a subpoena on Roy Sinclair.

On January 24, 2005, the court issued an order addressing various motions *in limine* filed by the parties. Of relevance to the pending application, the court granted defendant's Motion *in Limine* No. 6 to exclude evidence of purported discovery violations, and defendant's Motion *in Limine* No. 12 to preclude plaintiff from calling witnesses for the sole purpose of referring to purported discovery violations. Defendant contends that plaintiff's decision to subpoena the witnesses identified above is an attempt to circumvent the court's order regarding the admissibility of evidence of discovery violations. With the exception of the subpoena served on Kagan, defendant also argues that the court should quash the subpoenas on the ground that they were not personally served. Plaintiff counters that each witness has provided a declaration in which he or she set forth his or her knowledge regarding the jail release and/or over-detention customs, policies and procedures of the Los Angeles Sheriff's Department ("LASD"), and thus that their testimony is relevant and necessary to plaintiffs' claim. Plaintiff also contends that his service of the subpoenas was proper, particularly given that he did not have access to the home addresses of the county employees on whom he sought to effect service.

Defendant does not have standing to move to quash. "[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right ." *Nova Products, Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 241 (S.D.N.Y.2004); see *Donahoo v. Ohio Dept. of Youth Services,* 211 F.R.D. 303, 306 (N.D.Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty"); see also 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed.2004). Some courts have held that a

party has standing to move to quash a subpoena addressed to another if the subpoena "infringes upon the movant's legitimate interests." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982); see also *In re Grand Jury,* 619 F.2d 1022, 1027 (3d Cir.1980); *United States v. Tomison,* 969 F.Supp. 587, 596 (E.D.Cal.1997). This test, however, has been applied only in criminal and grand jury proceedings where the Federal Rules of Civil Procedure do not apply. See *In re Yassi,* 225 B.R. 478, 481 (C.D.Cal.1998). [FN1]

> FN1. Even if defendant had standing to move to quash, the court disagrees with his contention that plaintiff's failure to effect personal service on Burnett, Mulford, Werner, Jackson Beach and Sinclair renders the subpoenas procedurally defective. Rule 45 provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person...." Fed.R.Civ. Proc. 45(b)(1). Although the rule does not use the term "personal service," many courts have interpreted it to require that a subpoena be personally delivered to the witness whose testimony is sought. See, e.g., *Federal Trade Commission v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1312-13 (D.C.Cir.1980). Other courts have held that personal service of a subpoena is not required if the manner of service is reasonably calculated to provide timely notice. See *Western Resources, Inc. v. Union Pacific R. Co.,* No. 00-2043, 2002 WL 1822432, *2 (D.Kan. July 23, 2002); *Cordius Trust v. Kummerfeld,* No. 99 CIV. 3200, 2000 WL 10268, *2 (S.D.N.Y. Jan. 3, 2000); *Codrington v. Anheuser-Busch, Inc.,* No. 98-2417-CIV-T-26F, 1999 WL 1043861, *1 (M.D.Fla. Oct.15, 1999); *King v. Crown Plastering Corp.,* 170 F.R.D. 355, 356 (E.D.N.Y.1997); *First Nationwide Bank v. Shur,* 184 B.R. 640, 642 (E.D.N.Y.1995); *Doe v. Hersemann,* 155 F.R.D. 630, 630-31 (N.D.Ind.1994); see also *Catskill Development, L.L.C. v. Park Place Entertainment Corp.,* 206 F.R.D. 78, 84 (S.D.N.Y.2002).

The Ninth Circuit has not addressed the issue.

© 2007 Thomson/West. No Claim to Orig. U.S. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
**(Cite as: 2005 WL 283361 (C.D.Cal.))**

Page 4

The court agrees, however, with those that have held that effective service under Rule 45 is not limited to personal service. First, as noted above, the language of Rule 45 does not explicitly require personal service of a subpoena. Rather, it requires only that a copy be "deliver[ed]: to the person whose attendance is commanded. Such language "neither requires in-hand service nor prohibits alternative means of service." *King, supra,* 170 F.R.D. at 356. Second, construing Rule 45 to require personal service would render superfluous that part of the rule which states that proof of service is accomplished "by filing with the clerk of the court ... a statement of the date *and manner* of service." Fed.R.Civ.Proc. 45(b)(3) (emphasis added); see *Cordius Trust, supra,* 2000 WL at *2. Finally, the court sees no policy distinction between Rules 4, 5 and 45, such that service other than personal service should be sufficient under the first two but not the third. See *Doe, supra,* 155 F.R.D. at 631; *First Nationwide, supra,* 184 B.R. at 643.

Here, plaintiff apparently effected service by leaving a subpoena at the various witnesses' offices pursuant to Rule 5(b) of the Federal Rules of Civil Procedure. Rule 5(b) provides that service of pleadings (subsequent to the original complaint) and other papers may be made by "leaving it at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office." Fed.R.Civ.Proc. 5(b)(2)(A)(ii). The court finds that this form of service is sufficient under Rule 45. Therefore, plaintiff's failure to effect personal service would provide no basis for quashing the subpoenas.

**\*2** Given the parties' arguments, however, it appears that further clarification is required regarding the court's January 25, 2005 order respecting defendant's Motion *in Limine* No. 12. In granting the motion, the court noted that although styled a motion to preclude witnesses, it was essentially identical to Motion *in Limine* No. 6, which sought to exclude evidence of defendant's purported discovery violations. [FN2] Although defendant requested that the court preclude the testimony of Kagan, Burnett, Mulford, Werner, Beach and Sinclair at trial, the court

granted defendant's motion only to the extent plaintiff sought to call these witnesses to testify to discovery violations. [FN3] The court's order did not state or imply that plaintiff could not call the witnesses for other purposes. Having reviewed the declarations of the witnesses, it appears that certain of the witnesses can testify only to the process used to respond to plaintiff's discovery requests. Such testimony is clearly prohibited by the prior orders on Motions *in Limine* Nos. 6 and 12. To avoid confusion regarding which witnesses will, and will not, be permitted to testify, therefore, the court makes the following further rulings.

> FN2. Order on Motions in Limine, January 24, 2005, at 37.

> FN3. On January 25, 2004, Judge Nagle issued an order awarding plaintiff reasonable attorneys' fees and costs pursuant to Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure. As Judge Nagle made no finding that defendant intentionally destroyed or concealed evidence, the court declines plaintiff's invitation to revisit this issue.

A. Eleanor Kagan

Eleanor Kagan is the supervising paralegal for the General Litigation Division of the Office of the Los Angeles County Counsel. On September 3, 2003, she submitted a declaration detailing the burden on the County of responding to plaintiff's discovery request that the County produce all written claims and demands in which an inmate alleged that he or she was over-detained while in custody. Kagan represented that a response could be prepared only by accessing and reviewing hundreds of individual files, and that the County lacked sufficient personnel to undertaken such a review. [FN4] Kagan also stated that many of the files would have to be retrieved from storage or from the possession of outside counsel. [FN5] She concluded that it would take approximately 3,000 hours to review the appropriate files. [FN6]

> FN4. Declaration of Eleanor Kagan, September 3, 2003, ¶¶ 3-4.

> FN5. *Id.,* ¶¶ 8-9.

> FN6. *Id.,* ¶ 11.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 5
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
(Cite as: 2005 WL 283361 (C.D.Cal.))

Kagan's declaration contains no information suggesting that she could offer any relevant testimony regarding defendant's implementation of jail release policies. Contrary to plaintiff's assertion, in fact, Kagan does not indicate any familiarity with jail release policies. At most, it appears that Kagan could testify to the manner in which the County maintains written claims, demands and suits, and the manner in which this hampered the County's ability to respond to plaintiff's discovery requests. The manner in which the County organizes and maintains written claims, demands and suits is not relevant to the issues to be tried in this action; the manner in which it affected defendant's ability to respond to discovery requests is clearly within the scope of the court's prior exclusion order. To the extent plaintiff contends that the County's failure to segregate over-detention claims from all other types of claims constitutes deliberate indifference to the rights of inmates entitled to be released from incarceration, the court concludes that whatever marginal probative value such testimony might have is clearly outweighed by the danger of unfair prejudice and considerations of undue delay, jury confusion and waste of time. Fed.R.Evid. 403. Therefore, absent a offer of proof from plaintiff demonstrating that there is some other matter of relevance to which Kagan could testify, the court will exclude her testimony.

B. Roy Sinclair

*3 Roy Sinclair is Clerk to the Los Angeles County Board of Supervisors. On September 3, 2003, Sinclair filed a declaration in which he detailed the County's procedures for the intake and storage of tort claims that are filed against County departments, officials and employees. With the exception of a single paragraph, in which he describes how the claims are stored on microfiche, [FN7] Sinclair's declaration is identical to that submitted by Kagan. Like Kagan, Sinclair does not appear able to offer any testimony that is relevant to defendant's implementation of jail release policies. As noted, the manner in which the County organizes and stores tort claims is not relevant to the issues to be tried in this action, while the manner in which its practice affected defendant's ability to respond to discovery requests is within the scope of the court's prior exclusion order. Also as with Kagan, to the extent plaintiff contends that the County's organization and storage of these claims constitutes deliberate indifference to the rights of inmates entitled to be released from incarceration, the court concludes that whatever marginal probat-

ive value such testimony might have is clearly outweighed by the danger of unfair prejudice and considerations of undue delay, jury confusion and waste of time. Fed.R.Evid. 403. Therefore, absent a offer of proof from plaintiff demonstrating that there is some other matter of relevance to which Sinclair could testify, the court will exclude his testimony.

FN7. Declaration of Roy Sinclair.

C. Paul Beach

Paul Beach is an attorney with Franscell, Strickland, Roberts and Lawrence, counsel of record for defendant. As such, plaintiff's decision to subpoena Beach raises significant ethica and evidentiary concerns. As the Ninth Circuit explained in *United States v. Prantil*, 764 F.2d 548 (9th Cir.1985), " [t]he advocate witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. This venerable rule is a necessary corollary to the more fundamental tenet of our adversarial system that juries are to ground their decisions on the facts of a case and not on the integrity or credibility of the advocates. Accordingly, adherence to this time-honored rule is more than just an ethical obligation of individual counsel; enforcement of the rule is a matter of institutional concern implicating the basic foundations of our system of justice." *Id. at 552-53.* Here, plaintiff argues that Beach made himself a witness by submitting a sworn declaration on September 8, 2003, describing how the over-detention claims submitted by class members in *Williams, et al. v. Block, et al.* were stored. Plaintiff contends it can be inferred from Beach's declaration that no attempt was made to analyze how the over-detentions listed on the claims occurred or to gather over-detention statistics based on the claims that were filed. He asserts that this constitutes evidence of defendant's deliberate indifference to the problem of over-detentions. Plaintiff also notes that Beach's involvement in this case has been tangential at best, in that David Law rence is acting as trial counsel, and that Michael Allen has prepared the pretrial documents.

*4 Nothing in Beach's declaration relates to, or is probative of, defendant's implementation of jail release policies. The fact that class members' claims were placed in storage is not relevant to show that defendant was deliberately indifferent to inmates' rights. A fair reading of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
(Cite as: 2005 WL 283361 (C.D.Cal.))

Page 6

Beach's declaration shows that it does not support the inference plaintiff seeks to draw--i.e., that the County made no attempt to analyze how the over-detentions occurred or to gather over-detention statistics based on the case.

Moreover, to the extent the testimony Beach could offer has any marginal relevance, there are other witnesses plaintiff can examine (e.g., Charles Jackson, Dennis Werner, or Arlan Mulford) to determine if the County engaged in analysis of the claims or input them into its statistical database. See *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir.2003) ( "Although not strictly forbidden, the procurement of trial testimony from opposing counsel is generally disfavored.... Among the appropriate factors for consideration by the trial court are the following: whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case"); see also *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir.2002) (stating that the court had developed a three-prong test that a party must satisfy in order to depose the opponent's attorney: "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case"); *Estate of Ruchti v. Ruchti*, 12 Cal.App.4th 1593, 1600, 16 Cal.Rptr.2d 151 (1993) (stating that a party may depose opposing counsel only when "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and not privileged; (3) the information is crucial to the preparation of the case"). For all of these reasons, therefore, the court will exclude Beach's testimony at trial.

D. Curtiss Burnett, Charles Jackson, Dennis Werner and Arlan Mulford

Unlike Kagan, Sinclair and Beach, the remaining witnesses subpoenaed by plaintiff appealable to offer testimony relevant to defendant's jail release policies. Curtiss Burnett is the Records Lieutenant for the Inmate Reception Center ("IRC") at the Los Angeles County Jail. In support of defendant's Motion in Limine No. 8 to exclude evidence of over-detentions by non-parolees, Burnett submitted a declaration describing in detail the purported differences between the procedures that guide the release of inmates following the release of a parole hold, and those that guide the release of inmates in other circumstances. [FN8] Burnett clearly possesses knowledge of the LASD's jail release policies, and can offer testimony that relates to a subject other than defendant's discovery violations. Similarly, Charles Jackson, the Chief of LASD's Correctional Services Division, which includes the IRC, submitted a declaration demonstrating knowledge of the processes employed in releasing prisoners from LASD jail facilities. [FN9]

> FN8. Declaration of Curtiss Burnett, October 1, 2004.

> FN9. Supplemental Declaration of Charles M. Jackson, June 1, 2004.

**\*5** Dennis Werner, the Captain of the LASD Risk Management Bureau, earlier submitted a declaration stating that he arranged to query the LASD's tracking system for claims and lawsuits that involved alleged over-detentions between July 6, 1996 and July 5, 2001. [FN10] Although it is unclear what specific testimony Werner will be able to offer regarding jail release polices, his testimony is necessary to authenticate reports from the tracking system that plaintiff seeks to introduce. Finally, Arlan Mulford, a deputy assigned to LASD's Custody Support Services Unit, submitted a declaration stating that he had created a computer program that enabled the IRC to track over-detentions, and that he periodically upgraded the system to expand the available data fields. [FN11] Although Mulford's declaration is brief, his testimony may be relevant in assessing the policies that LASD implemented in response to the problem of over-detentions. Because the witnesses can potentially offer test mony that relates directly to defendant's jail release policies, and that does not concern defendant's discovery responses, the court will not exclude their testimony. Plaintiff is cautioned, however that pursuant to the court's earlier order, he may not elicit any testimony from these witnesses regarding the discovery disputes or the purpose of any declaration filed by the witness. To the extent individual questions to the witnesses are objectionable under Rules 401, 402 or 403 or some other rule of evidence, defendant may object when the question is posed.

> FN10. Declaration of Dennis W. Werner, June 1, 2004, ¶ 15.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)
**(Cite as: 2005 WL 283361 (C.D.Cal.))**

Page 7

> FN11. Declaration of Arlan Mulford, June 10, 2004, ¶ 3.

In sum, because defendant lacks standing, his *ex parte* application to quash the subpoenas served on witnesses Kagan, Burnett, Mulford, Werner, Jackson and Beach is denied. Defendant's request for an order precluding plaintiff from serving a subpoena on Sinclair is also denied. For the reasons stated, however, unless plaintiff makes an offer of proof demonstrating that they can give relevant testimony, the court will exclude Sinclair, Kagan and Beach as witnesses.

Not Reported in F.Supp.2d, 2005 WL 283361 (C.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:02cv04744 (Docket) (Jun. 17, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.