SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
  *International Business Machines Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **IBM'S SUR-REPLY MEMORANDUM IN FURTHER OPPOSITION TO SCO'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON IBM'S MOTION TO CONFINE AND SCO'S MOTION TO AMEND ITS DECEMBER 2005 SUBMISSION**<br><br>Civil No. 2:03CV0294 DAK<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells |

**Table of Contents**

Page

Table of Authorities ................................................................................................. ii

Preliminary Statement ..............................................................................................1

Argument ..................................................................................................................2

I.      SCO'S OBJECTIONS TO THE ORDER ARE BASELESS. .............................................2

        A.      The Scheduling Order Offers No Support For SCO's Position. .............................2

                1.      SCO's Reply Brief Mischaracterizes the Record........................................3

                2.      SCO's Claims About the Cargill Report Lack Merit..................................6

                3.      SCO's Claims About the Rochkind and Ivie Reports Are Untenable. ......11

        B.      SCO's Assertions About Its Supposed Understanding of the Order and
                Prejudice to IBM Are Baseless. ...........................................................................13

                1.      SCO's Claims About Its Purported Understanding Are Mistaken. ..........14

                2.      SCO's Claims About Prejudice Are Unsupported and Wrong.................16

        C.      SCO Ignores Independent Grounds for Affirmance of the Order........................24

II.     SCO'S MOTION TO AMEND IS MERITLESS. ............................................................26

        A.      SCO's Motion Must Be Denied Absent a Showing of "Extremely
                Compelling Circumstances". ................................................................................27

        B.      SCO Cannot Establish "Extremely Compelling Circumstances"........................29

                1.      SCO's Claim of Good Faith Is Unsupportable and Immaterial................29

                2.      Allowing SCO to Amend Its Final Disclosures Would Result in
                        Incurable Prejudice to IBM.....................................................................30

                3.      SCO's Claims of Prejudice Are Misplaced. ............................................37

                4.      The Material at Issue Was Not Fully Disclosed in SCO's Expert
                        Reports. ..................................................................................................38

Conclusion ..............................................................................................................39

i

**<u>Table of Authorities</u>**

Page(s)

**Cases**

Baystate Tech., Inc. v. Bentley Sys., Inc., 946 F. Supp. 1079 (D. Mass. 1996) ........................... 20

Bradley v. U.S., 866 F.2d 120 (5th Cir. 1989) ............................................................................. 28

Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992) ..................................... 20

Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280 (10th Cir. 1996) ................................ 20

First City Bank v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127 (10th Cir. 1987) .................. 28

Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823 (10th Cir. 1993) ............................. 20

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381 (10th Cir. 1997) .................. 24

Hakim v. Cannon Avent Group, PLC, No. 05-1398, 2007 WL 542697 (Fed. Cir.
    Feb. 23, 2007) .......................................................................................................................... 2

Harbor Software, Inc. v. Applied Systems, Inc., 925 F. Supp. 1042 (S.D.N.Y. 1996) ............... 20

Hertz v. Luzenac America, Inc., No. 04-1961, 2006 WL 994431 (D. Colo. April 13,
    2006) ....................................................................................................................................... 36

Jones v. Thompson, 996 F.2d 261 (10th Cir. 1993) ..................................................................... 36

Karbon v. Turner, No. 91-337, 1991 WL 319976 (E.D. Wis. Dec. 16, 1991) ............................. 27

Metpath, Inc. v. Modern Medicine, 934 F.2d 319, 1991 WL 87534 (4th Cir. 1991) .................. 28

Mitel, Inc. v. Iqtel, Inc., 896 F. Supp. 1050 (D. Colo. 1995) ...................................................... 20

Morris-Belcher v. Hous. Auth. of City of Winston-Salem, No. 04-255, 2005 WL
    1423592 (M.D.N.C. June 17, 2005) ......................................................................................... 28

NEC Corp. & NEC Electronics, Inc. v. Intel Corp., No. C-84-20799, 1989 WL 67434
    (N.D. Cal. Feb. 6, 1989) .......................................................................................................... 20

Phillips v. Greben, No. 04-5590, 2006 WL 3069475 (D.N.J. Oct. 27, 2006) ............................... 2

Pub. Serv. Co. of N.H. v. Westinghouse Elec. Corp., 685 F. Supp. 1281 (D.N.H. 1988) ........... 27

Roadway Exp., Inc. v. Piper, 447 U.S. 752 (1980) ...................................................................... 38

Roth v. Green, 466 F.3d 1179 (10th Cir. 2006) ........................................................................... 11

Page(s)

Rutecki v. CSX Hotels, Inc., No. 05-00226, 2007 WL 128829 (S.D. W. Va. Jan. 12, 2007) ................................................................................................................. 2

Sipp v. Unumprovident Corp., 107 Fed. Appx. 867 (10th Cir. 2004) ........................................... 28

Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988) ........................................................................... 14

Starlight Int'l, Inc. v. Herlihy, 186 F.R.D. 626 (D. Kan. 1999) .................................................... 38

Stepney v. Gilliard, No. 02-5259, 2006 WL 2226334 (D.N.J. Aug. 3, 2006) ............................... 2

Sunroof de Mexico, S.A. v. Webasto Roof Sys., Inc., No. 05-40031, 2006 WL 1042072 (E.D. Mich. April 19 2006) ......................................................................... 2

Taylor v. Virginia Dept. of Corrs., 177 F. Supp. 2d 497 (E.D. Va. 2001) ................................... 29

United States v. Hatchett, 245 F.3d 625 (7th Cir. 2001) ............................................................... 24

Wolfson v. Lewis, 168 F.R.D. 530 (E.D. Pa. 1996) ...................................................................... 27

Young v. Workman, 383 F.3d 1233 (10th Cir. 2004) ..................................................................... 26

Yumukoglu v. Provident Life & Acc. Ins. Co., 36 Fed. Appx. 378 (10th Cir. 2002) ................. 24

**Statutes and Rules**

Fed. R. Civ. P. 37(c) ..................................................................................................................... 16

Fed. R. Civ. P. 72 ........................................................................................................................... 2

Fed. R. Evid. 702 ........................................................................................................................... 14

**Other Authorities**

Lewis Carroll, Through the Looking Glass Ch. IV (Millennium Fulcrum Ed. 1991) .................... 4

Defendant/counterclaim-plaintiff International Business Machines Corporation ("IBM") respectfully submits this sur-reply memorandum in further opposition to: (1) the Objections of the SCO Group, Inc. ("SCO") to Magistrate Judge Wells' Order of December 21, 2006 (the "Order"); and (2) SCO's Motion to Amend its December 2005 Submission (the "Final Disclosures").

### Preliminary Statement

IBM's opposition brief debunks the arguments offered by SCO in support of its objections to the Order and its motion to amend its Final Disclosures. Nothing in SCO's reply papers revives any of SCO's arguments or justifies the relief it seeks. But SCO's reply papers distort Judge Wells' order, misstate IBM's position and mischaracterize the applicable law and evidence. As is further discussed below (without repeating all of the points set out in IBM's opposition brief), Magistrate Judge Wells properly precluded SCO from reinventing its case at the thirteenth hour. In fact, this Court's November 29, 2006 order, which held that the parties may not proceed with respect to any allegedly misused material not identified with specificity in their Final Disclosures, plainly precluded SCO's attempt to use its expert reports to challenge material not mentioned at all in its Final Disclosures and compelled Judge Wells' decision. SCO's stratagem, if allowed, would have resulted in incurable prejudice to IBM. (See Section I below.) SCO's fallback motion to amend is likewise flawed for it is based on essentially the same grounds as its objections. Putting aside the fact that SCO's motion to amend is procedurally improper, SCO has not shown, and cannot show, "extremely compelling

circumstances", as would be required to justify the proposed amendment.  (See Section II

below.)[1]

**Argument**

**I.     SCO'S OBJECTIONS TO THE ORDER ARE BASELESS.**

In its opposition papers, IBM described the flaws in SCO's objections to the Order.

Rather than address those flaws, SCO misstates IBM's position, distorts Judge Wells' order and

mischaracterizes the applicable law and evidence, which foreclose SCO's misplaced allegations

of error by Magistrate Judge Wells.  Under any standard of review,[2] SCO's objections lack merit

and should be rejected.  Magistrate Judge Wells' ruling should be affirmed.

A.     The Scheduling Order Offers No Support For SCO's Position.

SCO's primary objection to the Order is that it turned on SCO's failure to disclose the

complete analyses of its experts in its Final Disclosures, where the Court's July 1, 2005

Scheduling Order permitted the parties to submit expert reports after the deadline for submitting

---

[1] Citations to SCO's reply memorandum in support of its objections are given as "Obj. Reply at __".  Citations to SCO's reply memorandum in support of its motion to amend are given as "Mot. to Am. Reply at __".

[2] SCO does not (and could not) dispute that the Order is not dispositive and that a non-dispositive decision of a magistrate judge is subject to being set aside only if "clearly erroneous or contrary to law".  Fed. R. Civ. P. 72.  SCO argues that "the Court must review de novo the Magistrate Judge's legal conclusions".  (Obj. Reply at 2.)  But the Order does not turn on a legal conclusion that is contrary to law.  SCO has not shown, and cannot show, otherwise.

SCO purports to distinguish the cases cited by IBM for the proposition that courts repeatedly have held that a decision limiting the scope of expert testimony may be set aside only if "clearly erroneous".  (Obj. Reply at 2-3.)  But the distinctions on which SCO seizes are facially without a difference, and numerous other cases stand for the proposition.  See, e.g., Hakim v. Cannon Avent Group, PLC, No. 05-1398, 2007 WL 542697, at *6 (Fed. Cir. Feb. 23, 2007) (Addendum F hereto); Rutecki v. CSX Hotels, Inc., No. 05-00226, 2007 WL 128829, at *1 (S.D. W. Va. Jan. 12, 2007) (Addendum F hereto); Phillips v. Greben, No. 04-5590, 2006 WL 3069475, at *3, 7 (D.N.J. Oct. 27, 2006) (Addendum F hereto); Stepney v. Gilliard, No. 02-5259, 2006 WL 2226334, at * 4 (D.N.J. Aug. 3, 2006) (Addendum F hereto); Sunroof de Mexico, S.A. v. Webasto Roof Sys., Inc., No. 05-40031, 2006 WL 1042072, at *1-2 (E.D. Mich. April 19, 2006) (Addendum F hereto).

2

their final disclosures.  (Obj. at 5-8.)  IBM refuted the objection in its opposition papers, showing both that the Order was based on grounds independent of the Scheduling Order (which grounds SCO failed to challenge) and that the Order did not in fact turn on SCO's failure to complete its expert analyses in its Final Disclosures.  (Opp'n at 17.)  In its reply brief, SCO essentially ignores the grounds for the Order that are independent of the Scheduling Order (discussed in section I.C. below), and instead misrepresents IBM's position and twists the Order into a form SCO contends is objectionable but that bears no relationship to Judge Wells' ruling.[3]

### 1.   SCO's Reply Brief Mischaracterizes the Record.

Contrary to SCO's contention, IBM does not now, and has never, argued that the material at issue should be stricken because SCO failed to "complete" its expert analyses in its Final Disclosures.[4]  IBM's motion before Judge Wells sought simply to preclude SCO from challenging as misused material that is not identified at all in its Final Disclosures.  The Order simply grants IBM's motion and, consistent with this Court's Order of November 29, 2006, provides, "SCO may not challenge as misused, by expert testimony or otherwise, any material that SCO has not specifically identified in its Final Disclosures of Material Allegedly Misused by IBM (Docket No. 591)".  (12/21/06 Order at 2 (Docket No. 906).)  The notion that Judge Wells

---

[3] In a footnote (Obj. Reply at 2 n.1), SCO purports to list some of the material identified in its Final Disclosures.  Putting aside the fact that SCO inflates the volume of the listed material (e.g., no more than 10,374 (not "160,000") lines of AIX code relating to JFS are identified in Item 1), it has little to do with the Order under review.  At issue here is whether SCO should be allowed to proceed as to allegedly misused material that SCO failed to disclose in its Final Disclosures, not the allegedly misused material that it purports to have disclosed in its Final Disclosures.  The fact that the Final Disclosures purportedly identify some allegedly misused material merely reinforces that the Court's orders required the timely disclosures of that material.

[4] SCO has not identified and cannot identify any evidence to the contrary, and there is none.  SCO cites only to a statement made by counsel for IBM, after Magistrate Judge Wells announced her ruling, in response to a question asked by the Court.  But both IBM's response and the Court's statement that IBM correctly understood her ruling plainly relate to "allegedly misused material", not, as SCO seems to imply, to anything that might be included in an expert report.  (See 11/30/06 Hr'g Tr. at 63-65.)

required SCO to complete its expert reports in its Final Disclosures has been invented by SCO in

a misguided effort to find fault with an order that is not only consistent with numerous other

orders of the Court but that is beyond reasonable challenge.  Even before the Court required the

submission of Final Disclosures and made clear that the parties' claims would be limited to their

final disclosures, SCO assured the Court that it could do exactly what Judge Wells did in

granting IBM's motion.  (4/21/05 Hr'g Tr. at 95-96 (Opp'n Addendum B).)[5]

        In addition to basing its reply on a distortion of the Order, SCO asserts that the material at

issue is not "allegedly misused material" and therefore was not required to be disclosed in its

Final Disclosures.  (Obj. Reply at 6.)  According to SCO, the material at issue is merely

"material in support of SCO's assertion that previously identified material was misused", a term

SCO appears to have coined in its reply papers.  (Id.)  That is sophistry — reminiscent of

Humpty Dumpty's assertion that when he uses a word, "it means just what [he] choose[s] it to

mean — neither more nor less".  (Lewis Carroll, Through the Looking Glass Ch. IV (Millennium

Fulcrum Ed. 1991).)  By any reasonable construction, the term "allegedly misused material" is

simply material that a party contends has been misused.  And there is no genuine dispute that

SCO contends that IBM misused the material at issue.  SCO has stated expressly that use of the

material violates SCO's rights.  In opposition to IBM's motion for summary judgment on SCO's

Tenth Counterclaim, for example, SCO accuses IBM of infringing the very material at issue:

---

        [5] If (contrary to fact) the Order were predicated on the proposition that the parties were
required to include all of their expert analyses in their Final Disclosures, then very little of either
side's expert reports would have survived the Order.  Yet, SCO has never taken that position.
The parties were and are free to use their experts to support claims as to allegedly misused
material and allegations of infringement identified with specificity in the Final Disclosures.
Judge Wells' Order does not address this material, as SCO impliedly concedes.  What the parties
were not free to do is to use their expert reports to identify new material and then support
allegations of misuse with respect to allegedly misused material not identified in their Final
Disclosures.  It is in this respect that SCO violated the Court's Orders, and it is for this reason
that Judge Wells entered the Order.

"SCO alleges infringement of non-literal elements that pervade SVr4, including the overall structure of SVr4, including the selection, arrangement, and coordination of literal and non-literal sub-elements that make up SVr4".[6]  (SCO DJ Opp'n Appendix A ¶ 229.)  Moreover, there is no difference in kind between the new material at issue (a combination of code and more abstract elements, such as structures)[7] and the material that SCO identified in the Final Disclosures (a combination of code and more abstract elements, such as methods and concepts and negative know-how).

The fallacy of SCO's assertion that the material at issue is not "allegedly misused material" is further exposed by the plain language of the Order.  By its terms, the Order relates only to "allegedly misused material".  (12/21/06 Order at 2 (Docket No. 906).)  If the material at issue were not "allegedly misused material", then SCO would have no reason to object to the Order.  Nor would it have any reason to seek to amend its Final Disclosures, which were required to include "allegedly misused material" (and a detailed statement of SCO's allegations), not all "support" for SCO's allegations of misuse.[8]  Furthermore, when SCO made this same

---

[6] See also SCO DJ Opp'n at 9 ("In addition, the essential structure of UNIX SVr4 is appropriated by Linux, giving rise to infringement based on the theory that this structure is protected by copyright as a collective work"); 03/07/2007 Hr'g, SCO Handout, Tab 26 ("Linux copies the overall structure of UNIX") (Addendum G hereto).

[7] Dr. Cargill's report, for example, is replete with allegations of improper copying not mentioned in SCO's Final Disclosures (i.e., misuse) as to material nowhere identified in SCO's Final Disclosures.  (E.g., 5/19/06 Cargill Rpt. at 16 ("It is my opinion that Linux 2.4 and Linux 2.6 are substantially similar to SVr4 in their overall structure."); id. at 73 ("It is my opinion that the selection, arrangement, and coordination of elements that make up the file system in Linux 2.4 and 2.6 was copied from SVr4."); id. at 74 ("the file system in Linux versions 2.4 and 2.6 copies the design and structure, including the selection, arrangement, and coordination of the various elements and sub-structures that form the UNIX SVr4 file system."); id. at 57 ("In short, the LiS: Streams module mimics the entire structure of SVr4 Streams framework.").

[8] If SCO's reply brief shows anything, it is that sustaining SCO's objections would require a rewrite of the Order to include in it the supposedly offending provisions to which SCO objects.  Again, the Order says simply that SCO cannot proceed as to allegedly misused material not identified with specificity in the Final Disclosures.  The features of the Order about which SCO

argument before Judge Wells (except as to only some of the material at issue), IBM asked SCO to stipulate that it does not (and will not) contend that IBM misused the so-called "supporting material" not specifically identified as allegedly misused material in the Final Disclosures. Notably, SCO declined.  If there were any merit to SCO's assertion that the material at issue is not "allegedly misused material", then there could be no reason for SCO not to stipulate that it does not contend that IBM misused this "supporting material" and that it does not seek to predicate a finding of liability on IBM's use of this material.[9]

   2.  SCO's Claims About the Cargill Report Lack Merit.

 With respect to the Cargill report, which is the biggest offender of the reports at issue (as SCO seeks to use it to challenge every file in Linux), SCO's reply papers further ignore IBM's arguments, misstate IBM's position, distort Judge Wells' order and mischaracterize the record.

 SCO's objections relating to the Cargill report are based primarily on the made-up proposition that the Order sanctioned SCO for not including in its Final Disclosures "all expert analysis of the legal theory of copyright infringement pertaining to Linux" (Obj. Reply at 7), and thus fail for the reasons stated above and not repeated here.  SCO also claims that Judge Wells erred in requiring SCO to disclose version, file and line information for non-literal elements of the operating systems where that is allegedly not possible, and in so doing allegedly precluded SCO from making claims of non-literal infringement, which claims, SCO says, have been recognized by the Tenth Circuit.  (See Obj. Reply at 7-8.)  SCO is wrong.

---

complains are not part of it and would have to be written in.  A magistrate judge's order cannot be set aside on the basis of provisions that are not part of the order but that would have to be added.

 [9] Nothing could be easier than for SCO to stipulate, for example, that it does not contend that use by IBM of the Linux file system or the overall structure of Linux infringes SCO's alleged UNIX copyrights.

To begin, the Order does not question, or even address, the theoretical viability of a claim of non-literal infringement under Tenth Circuit law, which is why the lengthy legal discussion in SCO's opening papers is beside the point.[10]  Nor does it say that SCO cannot pursue a properly-disclosed claim of non-literal infringement as to code properly disclosed in its Final Disclosures and interrogatory responses.  The Order simply reiterates the unassailable proposition — long ago law of the case — that SCO cannot pursue any claim of infringement (literal, non-literal or other) except as to allegedly misused material and allegations of infringement identified with specificity in its Final Disclosures.  The Court has made perfectly clear that SCO was required by December 22, 2005 both to specifically identify all allegedly misused material in its Final Disclosures <u>and</u> to describe in detail its allegations and evidence of infringement.[11]  So, for example, SCO was required to disclose supposedly infringing material with details including version, file and line information (<u>e.g.</u>, Linux Version 2.4, File "shm.h", Lines 21-29) <u>and</u> to explain in detail how, when and why IBM supposedly infringed SCO's alleged copyrights with respect to the allegedly misused material identified (<u>e.g.</u>, by shipping it to customer *x*, or

---

[10] SCO's assertion that IBM failed to address "the detailed analysis of the relevant precedent" and thus cannot contradict "that Dr. Cargill properly performed the expert analysis required by Tenth Circuit copyright law" (Obj. Reply at 8) is meritless.  Whether or not Dr. Cargill properly performed his analysis of copyright infringement (which IBM in no respect concedes) has no bearing on whether SCO was required to identify the allegedly infringed material in its Final Disclosures (which it indisputably was required to do).  SCO's citation to the case law on copyright infringement is simply another way it is attempting to recast what is truly "allegedly misused material" as "expert analysis."  And its attempt fails in this instance as well.

[11] In fact, counsel for SCO described SCO's dual obligations:  "[t]here are two separate interrogatories that talk about identifying, with specificity, by file and line of code, source code, and then there's one describing, in detail, how IBM is alleged to have infringed plaintiff's rights".  (4/14/06 Hr'g Tr. at 39.)

contributing the code to Linux file *y*).  SCO did neither.  Thus, Magistrate Judge Wells properly

precluded SCO from pursuing a claim as to the material at issue.[12]

SCO's argument that it could not provide version, file and line information as to "non-

literal" elements falls flat because SCO did not just fail to disclose the supposedly "non-literal"

elements at issue by version, file and line information, it failed to disclose them at all.  This point

bears emphasis:  the material at issue on this motion was not disclosed at all in SCO's Final

Disclosures — not by version, not by file, not by line, not by narrative, not at all.  As to the

material struck by Judge Wells, SCO's Final Disclosures are virtually silent.  Nor do SCO's

Final Disclosures explain its allegations of infringement, as also required by numerous orders of

the Court.  These are fatal defects in SCO's objections, and an independently sufficient basis for

affirming the Order, without regard to SCO's failure to disclose version, file and line

information.  IBM's discovery requests and the Court's orders required SCO to describe its

allegations (including any allegations of non-literal infringement) and all allegedly misused

material (whether code, method, concept, sequence, structure or anything else SCO might wish

to challenge) in detail.[13]  Yet, in the face of these orders, SCO disclosed <u>none</u> of the material at

issue.[14]

---

[12] In its Final Disclosures, SCO identified a small set of allegedly misused material by version, file and line — to be specific, 326 lines of code from the Linux kernel.  It did not, for example, explain in detail its allegations of how, when and why IBM supposedly infringed SCO's alleged copyrights (as explained in IBM's motion for summary judgment on this ground).  With respect to the material struck by the Order, SCO neither identified it in its Final Disclosures, nor explained in detail how, when and why IBM supposedly infringed it.

[13] For example, on December 12, 2003, the Court ordered SCO "[t]o respond fully and in detail to Interrogatory Nos. 1-9 as stated in IBM's First Set of Interrogatories" and "[t]o respond fully and in detail to Interrogatory Nos. 12 and 13 as stated in IBM's Second Set of Interrogatories." (12/12/03 Order ¶¶ 1-2 (Docket No. 94).)  On March 3, 2004 the Court ordered SCO "[t]o fully comply within 45 days of the entry of this order with the Court's previous order dated December 12, 2003."  (3/3/04 Order at 2 (Docket No. 109).)  Thus, the Court required

Even if SCO's Final Disclosures were not silent as to the material at issue, its argument that it could not provide version, file and line information is wrong (as was its similar argument regarding methods and concepts). Allegedly misused material from an operating system can be identified by version, file and line — whether subject to a claim of literal or non-literal infringement. In fact, the subjects of an allegation of non-literal infringement of an operating system cannot be specifically defined except by reference to version, file and line information (e.g., absent version information, one does not even know what product is at issue). The non-literal elements employed in an operating system (or any computer program) are in the source code, just as the plot or characters in a novel are in the novel's text. (Cf. 4/28/06 Rebuttal Decl. of Randall Davis ¶¶ 29-30.) SCO seeks to hide behind a shield of "non-literal material" that supposedly exists entirely outside the source code, when in fact its "non-literal" claims merely allege non-literal infringement of material embodied in source code. Requiring a party to disclose its allegations and evidence of alleged infringement by version, file and line information does not preclude the party from pursuing a claim of non-literal infringement.

Notably, in opposing IBM's original motion for summary judgment on IBM's claim for a declaration of non-infringement as to Linux, SCO acknowledged that the material subject to any allegation of infringement can be identified by version, file and line information, regardless of

---

SCO to describe in detail its allegations of misuse, including how IBM is alleged to have infringed SCO's alleged copyrights relating to UNIX System V Software.

[14] In seeking to justify its failure to disclose the material at issue in the Court's order of November 29, 2006, counsel for SCO acknowledged that abstract items such as methods and concepts must be disclosed in detail. (SCO's Obj. to Order Granting in Part IBM's Mot. to Limit SCO's Claims at 16 ("SCO agrees that that it would have been insufficient for SCO to have 'generally' identified methods and concepts"); see also SCO's Mem. in Opp'n to IBM's Mot. to Limit SCO's Claims Relating to Misused Material at 6-7.) Again, SCO failed to disclose the items at issue at all.

whether the alleged infringement is said to be line-by-line literal infringement or non-literal infringement relating to structure, sequence or function:

> For SCO to obtain all necessary and reasonable evidence to support its claims and to oppose IBM's Tenth Counterclaim, SCO must undertake a line-by-line comparison of Linux code and UNIX code . . . [t]o show that Linux code is substantially similar to UNIX code requires a comparison of that code . . . [i]n other words, the 4 million lines of Linux code must be compared with the 3.5 million lines of UNIX code, line-by-line, or in groups of lines according to the structure, sequence or function of the group of lines.

(07/09/04 Sontag Decl. ¶¶ 4, 8 (Addendum C hereto).)  More importantly, the Cargill report actually discussed some of the non-literal elements at issue by version, file and line information. For example, regarding ELF, Dr. Cargill states:  "The following code appears in both Linux 2.4 and Linux 2.6.  The data structure definition assists in writing programs to process ELF files." Dr. Cargill then provides excerpts of lines of code from Linux version 2.4.11 and Linux version 2.6.15.  (5/19/06 Cargill Rpt. at 45.)  As another example, with regard to system calls, Dr. Cargill also provides an example of source code to demonstrate his claim regarding "arrangement": "[t]he chosen names are associated with the numbers by expressing the arrangement in source code header files".  (5/19/06 Cargill Rpt. at 22.)

SCO's argument about version, file and line information is merely a restatement of the argument that it made to avoid providing version, file and line information with respect to methods and concepts, which Judge Wells and this Court both properly rejected.  SCO argued that it could not provide version, file and line information as to methods and concepts.  (See SCO Opp'n to IBM's Motion to Limit SCO's Claims at 6-7.)   Magistrate Judge Wells rejected the argument, ruling that there is no reason SCO could not provide version, file and line information as to non-literal elements like methods and concepts.  (See 6/28/06 Order at 30 (Docket No. 718).)  This Court agreed and affirmed Judge Wells' decision.  (See 11/29/06 Order (Docket No.

884).)  That ruling is law of the case, see Roth v. Green, 466 F.3d 1179, 1187 (10th Cir. 2006),

and forecloses SCO's objections for this additional reason.[15]

3.      <u>SCO's Claims About the Rochkind and Ivie Reports Are Untenable.</u>

SCO's reply arguments with respect to the Rochkind and Ivie Reports also offer no

support for SCO's objections.  They too misrepresent IBM's position, misconstrue Judge Wells'

ruling and mischaracterize the record.

As stated in IBM's opposition brief, SCO proffered the testimony of Evan Ivie and Marc

Rochkind in support of its contract claims.  Like the Cargill report, the Ivie and Rochkind reports

identified allegedly misused material found nowhere in the Final Disclosures.  With respect to

one of the technologies challenged in the Final Disclosures (JFS), SCO used its expert reports to

allege misuse with respect to <u>six times</u> the volume of material identified in the Final Disclosures

to support one allegation.  Similarly, SCO's Final Disclosures identify 9,282 lines of code

regarding testing technologies as representing "misuse".  To that the Rochkind report added

25,378 additional lines of code.  SCO seeks to justify the additions on the grounds that it had

identified "the entire JFS file system" and "substantial numbers of the Dynix/ptx SPIE tests" as

misused material.  (Obj. Reply at 9.)  SCO argues, in effect, that it was only required to submit

---

[15]  In this and other respects, SCO's objections are a not-so-thinly-veiled attack on the Court's order of November 29, 2006.  As stated in IBM's opposition brief, the Court's order of November 29, 2006 compelled the ruling under review.  The issue presented by IBM's preclusion motion (the subject of Judge Wells' June 28, 2006 Order and this Court's November 29, 2006 Order) was whether SCO could proceed with regard to allegedly misused material that was identified in its Final Disclosures but not with the requisite particularity.  Judge Wells held that it could not, and this Court affirmed.  The issue presented by IBM's motion to confine (the subject of the Order), by contrast, was whether SCO could proceed with regard to allegedly misused material that was not identified at all in the Final Disclosures, let alone with the requisite specificity.  It cannot be that it was proper for Magistrate Judge Wells to preclude SCO from proceeding as to allegedly misused material that was disclosed in its Final Disclosures, albeit without the requisite specificity (as this Court properly ruled), but that it was improper for her to preclude SCO from proceeding as to allegedly misused material that was not disclosed at all in its Final Disclosures (as SCO incorrectly contends).

11

examples of allegedly misused material with the specificity required by the Court (i.e., version, file and line information).

In addition to repeating its arguments that the Ivie and Rochkind reports material is not allegedly misused material and that Judge Wells improperly required SCO to complete its expert reports in its Final Disclosures (which we address above), SCO argues that IBM's opposition brief misrepresents SCO's position.  At page 9 of its reply brief, SCO asserts that it does <u>not</u> contend that it could satisfy its disclosure obligations by merely submitting "examples" of "allegedly misused material" in its Final Disclosures and suggests that IBM invented the argument as a straw man.  (Obj. Reply at 9.)  But no sooner does SCO disclaim the argument at page 9, than it falls back on the argument at page 10.  There SCO argues that it "properly identified all of JFS in Item 1 of the December Submission, and then went beyond that identification to provide the information it had at that time to support the point that JFS was derived from UNIX System V".  (Obj. Reply 10.)  Put differently, SCO contends that so long as its Final Disclosures made a general allegation of misuse as to a particular technology and specifically identified some of the elements or lines of code that comprise that technology, it was free to use its expert reports specifically to identify as misused any of the other hundreds of thousands of elements and lines of code that might comprise that technology.

As SCO construes the Scheduling Order, the parties could not only end run their final disclosure obligations with their expert reports, but they could also circumvent them with their Rule 26(a)(3) and other pretrial disclosures.  If, as SCO contends, it was permitted to identify as much allegedly misused material as it wished in its expert reports because the Scheduling Order afforded the parties the opportunity to submit expert reports following the deadline for their final disclosures, then there is also no reason it could not identify still more allegedly misused material

by way of its deposition designations or in its part of the final pretrial order, because the
Scheduling Order also affords the parties the opportunity to submit deposition designations and a
final pretrial order after the deadline for their final disclosures.  Not only does SCO's reading
make no sense, but it would also make a mockery of the parties' obligation to provide final
disclosures.

Notably, in seeking to justify its failure to disclose the material subject to the Court's
Order of November 29, 2006, SCO acknowledged that it could not challenge as misused material
not identified in its Final Disclosures:

> If we were to introduce a new technology not embraced by the [Final Disclosure
> items] they challenge, they object.  It's out of the case.  If we try [t]o come up
> with specific source code that we should have produced now to buttress a
> connection that we didn't disclose that we should have, they could object to it at
> that time saying we should have put it in the December submission.

(4/14/06 Hr'g Tr. at 89 (Addendum D hereto); see also 10/24/06 Hr'g Tr. at 17 ("IBM has full
rights to object . . . if we say, "Forget the 294 items.  We have item number 295.") (Addendum
E hereto).)  But that is exactly what it tried to include in its expert reports and exactly what
Magistrate Judge Wells ruled it could not do.

    B.    <u>SCO's Assertions About Its Supposed Understanding of the Order and Prejudice
        to IBM Are Baseless</u>.

In addition to misconstruing the scheduling order (and ignoring independent grounds for
the Order discussed in Section I. C. below), SCO claims in its reply brief that "the record of
SCO's understanding of the July 2005 Order and the absence of prejudice to IBM precludes the
Magistrate Judge's exclusion of evidence."  SCO is wrong.[16]

---

[16] While SCO apparently claims that IBM invoked Rule 37 for the first time "in oral
argument before the Magistrate Judge" (Obj. Reply at 12), IBM expressly invoked Rule 37 in the
first instance in the first paragraph of its initial motion.  (See Docket No. 695.)  Thus, there was

1.      <u>SCO's Claims About Its Purported Understanding Are Mistaken.</u>

Nothing in SCO's reply brief addresses the flaws in its argument about its supposed understanding of the Order or its justification for not complying with it.  Thus, we do not repeat them here except to address the two points new to SCO's reply brief, neither of which bears scrutiny.

<u>First</u>, SCO claims that it was justified in not disclosing the material at issue because it is not "allegedly misused material".  (Obj. Reply at 13.)  We address this argument in Section I.A.1 above and will not repeat that discussion here except to state that even if the material at issue were not allegedly misused material (which it clearly is), the Court's orders specifically required SCO to disclose SCO's new allegations of infringement in detail that is nowhere found in its Final Disclosures (<u>see</u> 6/28/06 Order (Docket No. 718); 11/29/06 Order (Docket No. 884)), which is an independent reason to reject SCO's objections.

<u>Second</u>, SCO identified numerous items of allegedly infringing Linux material in the very Final Disclosures that it now argues did not require the identification of all allegedly infringing Linux material.  In an effort to explain this away, SCO asserts, "In contrast to the UNIX material that SCO identified in its December Submission, Dr. Cargill's discussion of the general structure of SVr4, the structure of the SVr4 file system, and system calls is a <u>non-literal legal analysis</u> of copyright infringement that could not be reduced to source code line, file and line description."  (Obj. Reply at 13-14.)  If Dr. Cargill's discussion were "a <u>non-literal legal analysis</u>", then it had no place in an expert report and would be inadmissible as a matter of law under Fed. R. Evid. 702.  <u>See</u> <u>Specht v. Jensen</u>, 853 F.2d 805, 810 (10th Cir. 1988) ("In no

---

simply no "ambiguity inherent in IBM's motion as to whether IBM sought a sanction pursuant to Rule 37."  (Obj. Reply at 12.)

instance can a witness be permitted to define the law of the case."). But put that aside. Dr. Cargill's report purports not only to describe a theory of non-literal infringement, but it also identifies a new set of allegedly misused material (e.g., "the overall structure of SVr4", "the structure of the SVr4 file system" and "system calls"). SCO's Final Disclosures described neither the new allegedly misused material identified by Dr. Cargill nor the theory under which SCO alleges that it was infringed.[17] Thus, Judge Wells properly struck the material at issue for two independent reasons.

At bottom, the argument SCO makes to justify its end run of the Courts' orders is no different from the arguments SCO made to justify its failure specifically to identify the methods and concepts successfully challenged by IBM's motion to limit SCO's claims. And the methods and concepts at issue on that motion were no less abstract than the "system calls" at issue here; in fact, they were probably more abstract. Yet the Court rejected SCO's justifications, stating that Judge Wells' preclusion order should "come as no surprise". (11/29/06 Order at 4.) As stated, SCO's failing here is more egregious in that it did not just fail to disclose the material at issue with the requisite specificity (as was the case in connection with IBM's motion to preclude), but it also failed to disclose it at all. Thus, the Court's prior ruling compelled Judge Wells' decision here and requires that SCO's objections be overruled.

---

[17] SCO's briefs confuse and conflate the difference between "allegedly misused material" and its theory of infringement, leading it to refer to elements like "system calls" as "non-literal legal analysis". But neither system calls nor any of the other new allegedly misused material at issue is either "non-literal" or "legal analysis"; it is simply a part of the operating systems that SCO contends were misused. The fact that SCO's claims as to the new material are more abstract than some of its claims as to allegedly misused material that SCO identified in its Final Disclosures does not mean that the new material is "non-literal" (which is merely a description of a theory of infringement). Nor does it mean that more abstract material cannot be identified or located by version, file and line information (as described above).

2.      SCO's Claims About Prejudice Are Unsupported and Wrong.

SCO's reply brief advances a laundry list of new arguments relating to prejudice.  None of those arguments is properly raised in support of SCO's objections.  SCO made no showing before Magistrate Judge Wells that its effort to reinvent its case would have been harmless.  SCO mentioned the issue of prejudice in its brief below only in a footnote.[18]  (See SCO Opp'n to IBM's Mot. to Confine at 16 n.6.)  Thus, not only did SCO fail to meet its burden to demonstrate that its non-disclosure of the allegedly misused material at issue was harmless, see Fed. R. Civ. P. 37(c), but also it waived the right to raise the issue on appeal.  As stated in IBM's opposition brief, issues mentioned in a perfunctory manner, issues raised for the first time in oral argument and issues raised for the first time in objections to a magistrate judge's recommendations are deemed waived.  (See IBM's Opp'n Br. at 21.)

In any case, SCO's arguments relating to prejudice, each of which is dealt with in turn below, are untenable.  Like most of SCO's reply brief, the arguments merely misstate IBM's position, distort the Court's rulings and/or mischaracterize the record.  Nowhere does SCO show that allowing it to reinvent its case at the thirteenth hour would have been harmless.  Nor could SCO carry that burden.  SCO's reinvented allegations concerned massive amounts of allegedly misused material as to which IBM has not taken discovery (fact or expert), and the only way

---

[18] SCO devoted only a footnote to addressing the prejudice caused by its new claims.  (SCO Opp'n to IBM's Mot. to Confine at 16 n.6.)  And there it argued only (and incorrectly) that IBM would not require more than three additional months to address the new material.  (Id.)  That was more than enough time, said SCO, because "[u]nder the Court's schedule, IBM was provided only three months of fact discovery, until March 2006, following the submission of the December 2005 reports."  (Id.)  In so arguing, SCO ignored the fact that any additional delay in these proceedings would have been prejudicial to IBM.  Moreover, SCO mischaracterized the nature of the three-month discovery period previously provided by the Court (as discussed below).

IBM could properly prepare a defense to SCO's new claims would be to redo much of the fact, expert and summary judgment work that it has spent nearly four years doing.

First, SCO claims that IBM "makes no effort to explain or illustrate any particular 'fact discovery' it supposedly needed to analyze any of the evidence at issue". (Obj. Reply at 14.) SCO is mistaken. IBM made clear before Magistrate Judge Wells that if SCO were allowed to reinvent its case, then IBM would require the same type of discovery that it took over the last four years, the particulars of which are familiar to the Court. (See IBM Op. Memo at 10; IBM Reply Memo at 10-11; IBM Opp'n at 4, 7.)[19] The principal difference between the discovery that IBM took (before discovery closed) and the discovery that would have been required if Magistrate Judge Wells had not precluded SCO's reinvention of the case was one of scope. The claims SCO sought unsuccessfully to sneak into the case by way of its expert reports were far broader than those SCO did identify, and therefore would have required much more discovery. Whereas the Final Disclosures identify 326 lines of allegedly infringing code in the Linux kernel, SCO sought by the Cargill report to challenge essentially every file in Linux. The particular fact discovery that would have been required by the claims SCO sought to sneak into the case is further illustrated in Section II.B below.

Second, SCO argues that IBM "makes no effort to show that its experts tried but could not respond to SCO's evidence or to substantiate its claim that the experts could not have analyzed the evidence in a matter of weeks." (Obj. Reply at 14.) Here again, SCO is incorrect. In fact, as SCO well knows, IBM made clear before Judge Wells and in its opposition papers that

---

[19] IBM provided Judge Wells a long list of the precise kinds of questions as to which fact discovery would be required. (See 11/30/06 Hr'g Tr. at 6-7.) A copy of the list, which was previously provided to Judge Wells and this Court in connection with other briefing, is attached at Addendum A.

it would take no less than an additional year (and probably much longer) to respond to SCO's belated allegations of misuse.  (See IBM Mem. in Support of Its Motion to Confine at 10; IBM Reply Mem. in Further Support of Its Motion to Confine at 10-11; IBM Opp'n at 3-4, 7; 11/30/06 Hr'g Tr. at 11, 14-15.)  IBM's experts testified that "[s]ubstantial time and effort would be required to fully evaluate the new material that Dr. Cargill identifies as misused but that is not identified as misused by SCO in the Final Disclosures."  (7/17/06 Kernighan Rpt. (Ex. 214 to the 9/25/06 Shaughnessy Decl.) ¶ 4.)  IBM's experts devoted approximately six months to studying and preparing reports on the 326 lines of Linux kernel code that SCO identified in the Final Disclosures.  (See 11/30/06 Hr'g Tr. at 11, 14-15.)  An illustration of their analysis appears at Addendum B.  Plainly, reviewing and evaluating all of the files in Linux (which SCO sought to put in issue via the Cargill report) would require a very long time.  In opposing IBM's first motion for summary judgment on IBM's Tenth Counterclaim (seeking a declaration of non-infringement relating to Linux), SCO represented to the Court that it would require not less than 25,000 man years to compare just one version of Linux to one version of UNIX.  (7/9/04 Sontag Decl. ¶ 14 (Addendum C).)

Third, SCO contends that "IBM says that the evidence at issue was disclosed 'when summary judgment briefs were forthcoming,' but SCO produced its initial expert reports four months before those motions were due, and IBM never asked to delay their filing."  (Obj. Reply at 14.)  While IBM did not seek to delay the filing of its summary judgment motions on the basis of SCO's attempt to reinvent its case, that is because the Court had made perfectly clear that the parties would be held to their final disclosures and because IBM wished not to further delay the case.  To fault IBM for relying on the Court's orders (as well as the plain language of the Federal Rules of Civil Procedure), as SCO does here, is to argue that SCO can deny IBM the benefits of

18

the Court's orders by itself violating those orders.  SCO's argument is also misplaced because, as

stated, it represented to the Court in seeking to avoid entry of the Scheduling Order, that a court

has a "full . . . arsenal of measures" to preclude a party from using evidence it fails to disclose to

its adversary.  (4/21/05 Hr'g Tr. at 95-96 (Opp'n Addendum B).)

      <u>Fourth</u>, SCO asserts that "IBM says that 'SCO had spent more than three years

developing its theory of infringement,' but offers no support for that assertion."  (Obj. Reply at

14.)  As outlined in paragraph 136 of IBM's Memorandum in Support of its Motion for

Summary Judgment on Its Tenth Counterclaim, SCO has made a plethora of public statements

since 2003 regarding its claim that Linux infringes SCO's copyrights.  (<u>See, e.g.</u>, 9/25/06

Shaughnessy Decl. Exs. 367, 368, 372, 383, 478, 479, 480.)  If SCO did not develop its theory of

infringement before it made those statements, then it had no business making them.  If the

discovery SCO demanded of IBM and third parties during the last four years was not for the

purpose of developing SCO's infringement and other theories, as it represented to IBM and the

Court, then it had no business demanding it.  In any case, IBM's supposed failure to support its

assertion in no way supports SCO's claim that allowing SCO to reinvent its case would not have

resulted in prejudice to IBM.  It should be self-evident that if it truly took SCO more than three-

and-one half years to describe the allegations it disclosed for the first time in its expert reports,

then it would require a considerable effort to respond to those allegations.

      <u>Fifth</u>, SCO states that "IBM has argued that Dr. Cargill's legal analysis requires 'line-by-

line analysis' (11/30/06 Hr'g Tr. at 5-6 (Ex. 1)), but Dr. Cargill's report and the controlling

Tenth Circuit law make clear that no such analysis is even appropriate, let alone required.

(SCO's Opening Mem. at 9-24 & Part II, above.)".  (Obj. Reply at 14.)  However, IBM argued

not that "Dr. Cargill's legal analysis requires 'line-by-line analysis'", but that "the nature of

19

[SCO's] claims requires a line-by-line analysis of SCO's allegations . . . and answering [the questions that naturally flow from the relevant copyright principles] is by and large, a line-by-line exercise".  (See 11/30/06 Hr'g Tr. at 11, 14-15.)  Moreover, there is no question that preparing a defense to SCO's allegations would require a line-by-line analysis of the code at issue, even if that code is not alleged to have been literally copied, as illustrated by the cases IBM provided to Judge Wells (and previously provided to this Court) (see Addendum A) and by SCO's own cases.  The law is clear, for example, that a file of code cannot be protected by copyright if it is an idea, a procedure, process, system, method of operation, concept, principle, or discovery; if it is unoriginal; if it can be expressed in only a limited number of ways; if it is dictated by programming standards, programming practice, computer hardware design standards, the practices and/or demands of the industry being serviced, or the compatibility requirements of other programs with which it is designed to interact; or if it is found in the public domain.[20] These are file-by-file and line-by-line inquiries.  That is the way IBM's experts (as well as SCO's Dr. Cargill) analyzed the 326 lines of kernel code identified in the Final Disclosures (see Addendum B), and that is the way IBM would have been entitled to defend itself against SCO's new allegations.

Sixth, SCO insists that "since the beginning of the case and of discovery, IBM has regarded SCO as having brought a claim that Linux is substantially similar to UNIX System V under the copyright laws".  (Obj. Reply at 14-15.)  While IBM and the rest of the world have

---

[20] See Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1286 (10th Cir. 1996); Mitel, Inc. v. Iqtel, Inc., 896 F. Supp. 1050, 1055 (D. Colo. 1995); Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 833 (10th Cir. 1993); Baystate Tech., Inc. v. Bentley Sys., Inc., 946 F. Supp. 1079, 1087-88 (D. Mass. 1996); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 715 (2d Cir. 1992); NEC Corp. & NEC Electronics, Inc. v. Intel Corp., No. C-84-20799, 1989 WL 67434, at *16 (N.D. Cal. Feb. 6, 1989) (Addendum F hereto); Harbor Software, Inc. v. Applied Systems, Inc., 925 F. Supp. 1042, 1051 (S.D.N.Y. 1996).

long known that SCO <u>generally</u> accuses Linux of infringement (thus raising the question whether Linux is substantially similar to UNIX System V), that did nothing to eliminate the prejudice that would have resulted from SCO's failure timely to disclose its specific allegations.  The mere fact that IBM knew SCO accused IBM of infringement does not mean IBM knew anything more about SCO's claim.  That is why it sought, and the Court ordered, discovery.  Linux includes millions of lines of code and could theoretically infringe almost any copyright in innumerable respects.  IBM did not know that SCO sought to challenge the <u>specific</u> material at issue here until SCO submitted its expert reports (and even then SCO's allegations were far from clear).  As the Court recognized in ordering SCO to provide discovery and disclose its allegations and evidence, SCO's general assertions did not put IBM in a position to prepare a defense to claims, which can only be understood when specified.[21]

      <u>Seventh</u>, in IBM's opposition papers, we explained that SCO's attempted reinvention of the case, if allowed, would require a redo of much of the fact, expert and summary judgment work of the past four years and necessitate at least an additional year of discovery.  (Opp'n at 20-21.)  SCO contends that this assertion "<u>cannot</u> be squared with the fact that, under this Court's July 2005 Scheduling Order, following the parties' December 2005 Submissions, the parties

---

[21] Notably, SCO previously told the Court that the very SCO public statements that it now says gave IBM notice as to the identity of the specific allegedly misused material at issue were insufficient even to permit IBM to assert a claim against SCO for a declaration of non-infringement.  (<u>See</u> Reply Mem. in Supp. of SCO's Motion to Dismiss or Stay Count Ten of IBM's Second Amended Counterclaims at 12, 14-16 (Docket No. 254).)  Moreover, in opposing IBM's original motion for summary judgment on IBM's Tenth Counterclaim (months after the statements SCO contends gave IBM notice), SCO told this Court that it had not yet determined what specific parts of Linux allegedly infringed SCO's alleged UNIX copyrights.  (SCO's Mem. In Opp. to IBM's Mot. for Summary Judgment on its Tenth Counterclaim at 61 (Docket No. 206).)  It is on the basis of these same statements that the Court remarked (in denying without prejudice IBM's original motion for summary judgment on its Tenth Counterclaim) that SCO had not identified any competent evidence of infringement.  (2/8/05 Order at 10 (Docket No. 398).)  It cannot be that SCO's public statements gave IBM notice that SCO intended to challenge the material at the beginning of discovery but that SCO could properly omit that material from its Final Disclosures near the end of discovery.

would have had <u>three</u> months of fact discovery regarding truly 'misused material,' six months to draft initial expert reports, and then <u>three</u> months to take expert discovery". (Obj. Reply at 15.) There is, however, no conflict between the fact that SCO's attempted end run would require extensive additional proceedings and the fact that under this Court's July 2005 Scheduling Order, the parties would have had three months of fact discovery regarding allegedly misused material following the parties' December 2005 Submissions. The Court afforded IBM a three-month period of discovery about the Final Disclosures, at IBM's request, after SCO certified that it had complied with the Court's orders and disclosed all of the allegedly infringing material then available to it. IBM proposed a three-month period for discovery because, as the Court observed at the time, SCO had disclosed absolutely no evidence of infringement by Linux, despite a long-standing obligation to disclose any material reasonably available to it, including the new material at issue. Thus, IBM reasonably believed that three months would be sufficient, especially since it would have had nearly six months to prepare an expert report. What IBM did not know is that SCO would ignore the Court's Order, the parties' stipulation and SCO's interrogatory answers and submit an expert report including more than a thousand times the allegedly misused material identified in the Final Disclosures.[22]

---

[22] SCO asserts that IBM's allegations of "litigation by ambush" and "flouting of discovery deadlines" in SCO's words, "have no bearing on IBM's claim of supposed prejudice". (Obj. Reply at 16-17.) That makes no sense. Litigation by ambush, when done by the flouting of discovery deadline or otherwise, is by definition prejudicial. SCO's brand of sandbagging would have been particularly prejudicial. After three years of discovery and multiple orders to compel, SCO identified 326 lines of allegedly infringing Linux kernel code only to try, after the close of fact discovery and on the eve of summary judgment deadlines, to accuse the entirety of Linux of infringing SCO's alleged copyrights. SCO insists that it was not acting in bad faith. But the record easily permits a finding that SCO did act in bad faith – the leap from 326 lines of allegedly infringing kernel code to all of Linux is not a leap that can be made in good faith. And even if SCO did not act in bad faith, the Order does not depend on a showing of bad faith. There is no question that SCO acted willfully in submitting its Final Disclosures (as the Court already found) and in submitting its expert reports. No more is required. The Courts' orders and the Federal Rules of Civil Procedure plainly permit the entry of an order precluding a party from

Finally, SCO argues that "IBM makes no real effort to explain away the nine cases SCO cited demonstrating that IBM's opportunity to depose SCO's experts on the material at issue defeats the argument that IBM suffered prejudice sufficient to justify the exclusion of that material".  (Obj. Reply at 16.)  But IBM addressed these cases at page 23, note 8 of its opposition brief, where it explained that they are all inapposite.  None of the cases deals with facts even remotely approaching those here.  Allowing IBM to re-depose SCO's experts would not even have begun to cure the prejudice that IBM would have suffered if Judge Wells had not entered the Order.  IBM's decision not to examine SCO's experts about the material it tried to sneak into the case in its expert reports was not made in an effort to "preserve a claim of prejudice by simply declining to ask an expert at deposition about matters that the party asserts to be new material", as SCO suggests.  Rather, IBM did not question SCO's experts about the new material because, among other things, by order of the Court, SCO was not permitted to challenge this new material; IBM had not had an opportunity to take fact discovery concerning the material; IBM's experts had not had a full and fair opportunity to study the material; and the time allotted for expert depositions was limited.[23]  SCO's assertions relating to prejudice are, in a word, baseless.

---

relying on allegations and evidence not identified pursuant to a discovery request or order of the court.

[23] SCO suggests that IBM could not have suffered prejudice because the parties agreed that there would be a period of expert discovery following their Final Disclosures and "it is the specific period of expert discovery that serves as the means of interrogatory responses".  (Obj. Reply at 16.)  Putting aside the fact that this argument is little more than a repackaged, but still-untenable justification for SCO's failure to comply with the Court's orders, the fact that the parties agreed to a period of expert discovery says nothing about whether SCO could disregard the Court's orders that SCO disclose its allegations and evidence in advance of expert discovery in order to provide IBM and its experts a meaningful opportunity to prepare a defense as to all of the allegedly misused material that SCO seeks to include in the case.  In fact, it is SCO's misuse of the period of expert discovery that would have resulted in prejudice to IBM but for Judge Wells' order.  Notably, SCO stipulated and agreed with IBM that "Neither party shall be

C.    SCO Ignores Independent Grounds for Affirmance of the Order.

Finally, SCO's reply brief, which focuses almost exclusively on the Scheduling Order, ignores the independent grounds for the Order as to which SCO failed to object.

Magistrate Judge Wells based the Order on multiple independent grounds, including the July 2005 Scheduling Order, the parties' Stipulation re Scheduling Order dated December 7, 2005, this Court's order dated June 28, 2006, and this Court's order dated November 29, 2006. Although any one of these grounds is sufficient to justify affirmance of Judge Wells' decision, SCO's objections addressed only the Scheduling Order.  Thus, as stated in IBM's opposition brief, SCO waived any objection to independent grounds for the Order, which is by itself dispositive of the present appeal.  See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1387-88 (10th Cir. 1997); Yumukoglu v. Provident Life & Acc. Ins. Co., 36 Fed. Appx. 378, 383 (10th Cir. 2002) (Addendum F hereto); see also United States v. Hatchett, 245 F.3d 625, 644-45 (7th Cir. 2001) (holding that in "situations in which there is one or more alternative holdings on an issue, . . . failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue") (internal quotation marks omitted).

SCO's reply papers devote only three sentences to the grounds other than the Scheduling Order, the first sentence of which merely introduces the topic.  In the second sentence, SCO argues that the parties' December 2005 stipulation "merely restates the July 2005 Order and adds nothing to the analysis".  (Obj. Reply at 11.)  That is incorrect (although the July 2005

---

permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline". (12/7/05 Stipulation at 2-3 (Opp'n Addendum C).)  Magistrate Judge Wells properly relied on this stipulation in entering the Order and not allowing SCO to use the period for discovery relating to the Final Disclosures for the purpose of identifying additional misused material.

Scheduling Order is by itself dispositive of SCO's objections).  The parties' stipulation not only provides that "[b]oth parties [were] required to identify with specificity any and all material that each party contends the other has misused no later than December 22, 2005", but it also provides, "Neither party shall be permitted to use [the period for discovery relating to the Final Disclosures] for the purpose of identifying additional misused material not disclosed by the December 22, 2005, deadline".  (12/7/05 Stipulation at 2-3 (Opp'n Addendum C).)  Yet that is exactly what SCO did and Magistrate Judge Wells held it could not do.

In the third sentence, SCO argues that Judge Wells' June 2006 Order and this Court's affirmance of it "address the level of specificity required for items that were disclosed, not whether expert opinions and their support constituted 'misused material'".  (Obj. Reply at 11.) Here again, SCO is wrong.  Judge Wells' June 2006 Order and this Court's affirmance were not limited to addressing the level of specificity for items that were disclosed (though they did that). The orders also make clear that the parties were not allowed to proceed as to allegedly misused material not identified with specificity in the Final Disclosures.  Indeed, if it were otherwise, these orders would be rendered meaningless, as SCO could fail to meet the requisite level of specificity in its Final Disclosures, and yet nevertheless proceed as to these materials in expert reports and elsewhere.  SCO has never directly challenged this proposition in Judge Wells' June 2006 Order and this Court's affirmance, and it cannot now challenge the proposition, which is law of the case.  The mere fact that the orders do not expressly mention "expert opinions and their support" does not establish them (or any of the other means by which the parties could have disclosed their allegations and evidence, such as deposition designations and the Final Pretrial Order) as exceptions to SCO's discovery obligations.  SCO's argument to the contrary relies on the absence of magic words, and as such is at odds with well-settled doctrines of construction.

See Young v. Workman, 383 F.3d 1233, 1240 (10th Cir. 2004) (declining to rely upon the absence of "magic words" in a lower court's holding that a discovery order was violated).

SCO ignores the fact that Judge Wells could not have denied IBM's motion without undermining the Court's prior orders and the parties' stipulation. The reasons for affirming the Order here are even more compelling than were the reasons for affirming Judge Wells' Order of June 28, 2006. The issue presented by IBM's preclusion motion (the subject of the June 28 Order) was whether SCO could proceed with regard to allegedly misused material that was identified in its Final Disclosures but not with the requisite particularity. Judge Wells held that it could not, and this Court affirmed. The issue presented by IBM's motion to confine (the subject of the Order), by contrast, was whether SCO could proceed with regard to allegedly misused material that was not identified at all in the Final Disclosures, let alone with the requisite specificity. Again, it cannot be that it was proper for Magistrate Judge Wells to preclude SCO from proceeding as to allegedly misused material that was disclosed in its Final Disclosures, albeit without the requisite specificity (as this Court properly ruled), but that it was improper for her to preclude SCO from proceeding as to allegedly misused material that was not disclosed at all in its Final Disclosures (as SCO incorrectly contends).

## II.    SCO'S MOTION TO AMEND IS MERITLESS.

Although SCO seeks to accentuate the differences between its motion to amend and its objections to the Order, the motion is predicated on essentially the same grounds as SCO's objections and should be denied for the same reasons that its objections to the Order should be overruled. Contrary to SCO's contentions in its reply brief (which, like its reply brief in support of its objections, misrepresents the record): (1) the motion must be denied absent a showing of

"extremely compelling circumstances"; and (2) SCO cannot establish "extremely compelling circumstances".[24]

    A.    <u>SCO's Motion Must Be Denied Absent a Showing of "Extremely Compelling Circumstances".</u>

SCO does not (and could not) dispute that, by order of the Court, the Scheduling Order may not be modified except upon a showing of "extremely compelling circumstances" — the standard long ago established by the Court.  (6/10/04 Order at 3 (Docket No. 177); 7/1/05 Order at 4 (Docket No. 466).)  In reply, SCO argues instead that its "motion to amend is not a 'modification' of the scheduling order, and thus, would not require a showing of 'extremely compelling circumstances'".  (Mot. to Am. Reply at 3.)  That is untenable.

SCO's motion seeks leave to amend its Final Disclosures, which were required by the Scheduling Order entered by the Court following SCO's repeated failures to comply with the Court's orders and to disclose its allegations and evidence of alleged misconduct (as Magistrate Judge Wells and this Court have confirmed).  (7/1/05 Order ¶ III (Docket No. 466).)  The Scheduling Order required submission of the parties' final disclosures no later than December 22, 2005.  Allowing SCO to amend its Final Disclosures would plainly represent and require a modification of the Scheduling Order, including the date by which the parties were

---

[24] As stated in IBM's opposition papers, SCO's motion is procedurally flawed.  Neither SCO's motion nor its memorandum contains any citation to any "rules, statutes, or other authority justifying the relief sought" as DUCivR7-1(b)(1) requires.  DUCivR 7-1(b)(1).  In an attempt to overcome this flaw, SCO points to the cases cited in its opening memorandum.  However, the mere citation of cases, especially cases addressing a number of different issues, does not meet the requirements of DUCivR 7-1(b)(1).  That is especially so where, as here, the cases in question merely relate to SCO's mistaken claim that allowing it to amend would not result in prejudice to IBM.  Putting aside the fact that all six of the cases cited by SCO are easily distinguished, none of them involved a motion to amend a court-ordered disclosure.  And, notably, three of them involved motions to amend a complaint, which, according to SCO's own papers (Mot. to Am. Reply at 3 n.2), <u>Wolfson v. Lewis</u>, 168 F.R.D. 530, 533 (E.D. Pa. 1996); <u>Karbon v. Turner</u>, No. 91-337, 1991 WL 319976, at *2 (E.D. Wis. Dec. 16, 1991) (Obj. Ex. G); <u>Pub. Serv. Co. of N.H. v. Westinghouse Elec. Corp.</u>, 685 F. Supp. 1281, 1290 (D.N.H. 1988), are inapposite for that reason alone.

required to finalize their allegations of alleged misconduct.  It would also require a series of

additional changes to the Scheduling Order, such as the establishment of new deadlines for the

close of fact and expert discovery, new deadlines for summary judgment, and so on.

In support of SCO's contention that its motion does not seek "a 'modification' of the

scheduling order, and thus, would not require showing of 'extremely compelling

circumstances'", SCO asserts that "the scheduling order has already been modified; that SCO's

Motion to Amend is a response to that modification; and that SCO's Motion to Amend would not

require any further extension of the trial date other than what has already occurred".  (Mot. to

Am. Reply at 3.)  However, the fact that the Court modified the scheduling order to allow for

argument and decision on the parties' summary judgment motions is no help to SCO's position,

as the parties agreed to the change and it satisfied the standard.  Putting aside the fact that SCO's

motion was clearly a response to the Order (not the change in the trial date), SCO's motive in

filing the motion is irrelevant to whether it would require a change in the scheduling order,

which it clearly would.  And, contrary to SCO's contention, allowing SCO to reinvent its case at

the thirteenth hour would require a shift in the trial well beyond the date presently contemplated

(for the reasons discussed above and below).  None of SCO's assertions demonstrates that SCO's

motion does not seek a modification of the scheduling order or that the "extremely compelling

circumstances" standard does not apply.[25]

---

[25] In a footnote (n.2), SCO argues that its motion cannot be analogized to a motion to amend
a complaint.  But the general standard for amending a complaint is less demanding than the
"extremely compelling circumstances" standard.  Courts have denied more compelling motions
to amend under this and other standards less stringent than the "extremely compelling
circumstances" standard.  See Sipp v. Unumprovident Corp., 107 Fed. Appx. 867, 877 (10th Cir.
2004) (Addendum F hereto); First City Bank v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127,
1129, 1132 (10th Cir. 1987); Metpath, Inc. v. Modern Medicine, 934 F.2d 319, 1991 WL 87534,
at *1-3 (4th Cir. 1991) (Addendum F hereto); Bradley v. U.S., 866 F.2d 120, 123-27 (5th Cir.
1989); Morris-Belcher v. Hous. Auth. of City of Winston-Salem, No. 04-255, 2005 WL

B.      SCO Cannot Establish "Extremely Compelling Circumstances".

SCO endeavors to show that there are "extremely compelling circumstances" justifying

the entry of an order allowing SCO to amend its Final Disclosures in significant respects (e.g., to

challenge every file in Linux rather than just 326 lines of kernel code), nearly 16 months past the

deadline for their submission, after the close of fact discovery, following extended expert

discovery, and subsequent to the submission of summary judgment motions and extended

argument on those motions.  But the arguments on which SCO relies offer no justification — let

alone "extremely compelling circumstances" — for a change in the scheduling order to permit

SCO to amend its Final Disclosures to include the allegedly misused material stricken by Judge

Wells.

1.      SCO's Claim of Good Faith Is Unsupportable and Immaterial.

To begin, SCO argues that there are compelling circumstances for the proposed

amendment because, it says, "SCO acted reasonably and without any bad faith regarding the

expert opinions at issue".  (Mot. to Am. Reply at 3.)  For the reasons stated above (see

Section I.B), the record does not establish that SCO acted reasonably and in good faith in seeking

to reinvent its case at the eleventh hour.  In fact, SCO's argument that it acted reasonably and in

good faith here is even less persuasive than the argument — previously rejected by the Court —

that SCO acted reasonably in failing to provide version, file and line information as to the 187

items of allegedly misused material as to which both Magistrate Judge Wells and this Court

separately ruled that SCO could not proceed.  There, SCO disclosed something (albeit without

the requisite particularity); here, SCO disclosed nothing as to the material at issue.

1423592, at *4-5 (M.D.N.C. June 17, 2005) (Addendum F hereto); Taylor v. Virginia Dept. of
Corrs., 177 F. Supp. 2d 497, 501 n.6 (E.D. Va. 2001).

Even if (contrary to fact) SCO had acted reasonably and in good faith in seeking exponentially to increase the scope of the case when it did, the absence of bad faith does not support a finding of "extremely compelling circumstances". Parties are expected to act in good faith. Doing what the rules require does not make a compelling case for affirmative relief, let alone an extremely compelling case for such relief. No such showing can be made where, as here, the proposed amendment is not only unreasonable but also is unduly delayed and would result in incurable prejudice to IBM.

> 2. Allowing SCO to Amend Its Final Disclosures Would Result in Incurable Prejudice to IBM.

SCO also argues that it should be allowed to amend its Final Disclosures on the grounds that "SCO's amendment would not prejudice IBM". (Mot. to Am. Reply at 4-6.) Specifically, SCO contends that since the trial date has been vacated and IBM would not require much, if any, additional discovery to prepare a defense to SCO's claims, allowing SCO to amend its Final Disclosures to include the allegedly misused material stricken by Judge Wells could not possibly prejudice IBM. (Id.) SCO insists that the proposed amendments would not necessitate any further delay in the trial date. (Id. at 4.) That is wrong.

Allowing SCO to amend its Final Disclosures to challenge as misused the material that it tried unsuccessfully to sneak in through its expert reports would require extensive additional discovery (in excess of the discovery required in the case to date). Not only is the new material voluminous, but it represents a far greater proportion of the Linux kernel than the material identified by SCO in its Final Disclosures. Again, SCO's Final Disclosures identify 326 lines of code from twelve Linux kernel files, whereas SCO sought by its expert reports to challenge essentially every file in Linux (of which there are more than one hundred thousand). As stated, the nature of discovery that would be required regarding the new material would be similar to the

nature of discovery required to date relating to SCO's contract claims and its allegations of
infringement relating to Linux, except that it would be vastly broader in scope and more
complex.

Contrary to SCO's suggestion, the discovery that was taken in the case before fact and
expert discovery closed did not even begin to address all of the issues implicated by the material
SCO seeks now to include in the case. As stated (and as SCO itself previously represented),
preparing a case as to the material at issue would require a file-by-file, line-by-line and element-
by-element analysis. Since the material SCO proposed to include in the case by amendment is
different from the material identified in SCO's Final Disclosures, a different analysis, requiring
different discovery, would be required. As to <u>each</u> of the 326 lines of kernel code identified in
SCO's Final Disclosures, IBM undertook to investigate a number of issues, including (but not
limited to):

- The similarity between the System V and Linux code;

- Significance of the identified code relative to System V as an entire work;

- The code's authorship for purposes of determining whether it was independently created;

- The degree to which any standards govern the inclusion of the cited code;

- Whether the code appears in publicly available texts;

- The originality of the code;

- Whether the allegedly infringed code was dictated by external factors such as hardware specifications, software compatibility, programming practice, and industry demands, to name a few;

- Whether the code claimed by SCO consists of mere ideas or an expression that has merged with its underlying idea;

- SCO's own history relating to the particular code at issue, including analysis of the particular lines' inclusion in numerous SCO Linux releases;

31

- The applicability of multiple licenses to the precise code claimed by SCO; and

- Whether the allegedly infringed code was in fact owned by SCO, which required comparisons to other operating systems such as BSD, OpenSolaris and MINIX.

At least the same questions would have to be asked, and the same analysis performed, as to each of the more than one hundred thousand files SCO now seeks to introduce into the case.

Preparing a defense to SCO's allegations of infringement relating to the 326 lines of kernel code required approximately five months of focused fact discovery, formal and informal (after SCO began to identify them in its Interim Disclosures). Preparing a defense with respect to these 326 lines of code also required approximately eleven months of expert discovery. If SCO's Final Disclosures had disclosed a claim of non-literal infringement as to the code, still more discovery would have been required. By way of example, consider SCO's claim that Linux infringes seven elements of the System V file system, as characterized by SCO's Dr. Cargill. (See Cargill Opening Report at 73-76.) In order to conduct a proper analysis of the file system elements challenged in SCO's expert reports, for each element IBM would be required to, at the very least:

- Analyze the history of the particular file system technology spanning over forty years, including its history of inclusion in other non-UNIX operating systems;

- Research texts relating to the technology and its predecessor technologies from which the allegedly infringed material may have been derived;

- Research and analyze programming practices, industry demands, software compatibility and hardware requirements contemporary with the creation of the allegedly infringed System V material in order to determine whether it was dictated by externalities;

- Determine the originality of each file system element claimed by SCO, as well as the particular arrangement and coordination of the elements in concert as implemented in System V;

32

- Compare file system elements in System V to those in the allegedly infringing Linux work in order to determine whether there is in fact similarity;

- Determine whether the elements individually and together constitute mere ideas or are so inextricably interwoven with their underlying ideas as to have merged with the ideas; and

- Trace the creation of the allegedly infringing elements in Linux in order to determine whether they were independently created.

If SCO were allowed to proceed as to the new material, at least an additional year of <u>discovery</u> alone would be required — and probably much more.[26]

In arguing that very little, if any, additional discovery would be required and that it would not take long to complete that discovery, SCO ignores its own previous representations about the scope of discovery that would be required to evaluate claims of the kind it seeks to add and how long it would take to complete that discovery. In opposing IBM's original motion for summary judgment seeking a declaration of non-infringement as to its Linux activities, SCO represented to the Court that substantial discovery would be required for it to determine the specifics of its claim (something a party is supposed to know before making allegations of infringement) and then illustrated at length the discovery it would require. As to third-party discovery alone, SCO stated that it would be required to:

- "Determine what third parties IBM has partnered with to develop Linux and what work those groups have done . . ."

- "Take discovery on Linus Torvalds, the purported creator of Linux, about the contributors and contributions to Linux since its inception, and the maintenance of any records about the development history of Linux . . ."

---

[26] In all, more than 3500 people have contributed to the development of Linux, including many from SCO. (<u>See</u> http://linux.bkbits.net:8080/linux-2.6/?PAGE=stats (listing contributors to the linux 2.6 kernel).) Few of these persons have been deposed. If SCO were allowed to pursue a case against every file in Linux, it would likely be necessary to depose many of these contributors, as they are the supposed wrongdoers.

- "Take discovery on maintainers of the kernels . . ."

- "There are many contributors to the kernels, some who have [sic] significant contributions to Linux code over the years . . ."

- "Many corporations have made contributions to Linux, and SCO needs to take discovery on certain of these companies to determine the sources of their contributions.  Also, SCO needs to depose programmers who work for these companies and made the contributions to determine the sources of those programmers' code contributions . . ."

- "SCO has identified some, but not all, independent authors of various portions of Linux code . . ."

- "Several private groups also made major contributions to Linux, so SCO should also be permitted adequate time to identify and take discovery from these entities."

- "Many organizations exist whose purpose is to track and report on changes to Linux, and in many cases to collect documentation on Linux and distribute that information.  However, such reporting is generally very summary, and SCO needs access to the more detailed information these organizations maintain. . ."

- "Licensees and former licensees of UNIX source code to see if these entities, their employees, or former employees are contributing UNIX code to Linux."

(7/9/04 Sontag Decl. ¶ 57 (Addendum C).)  SCO represented that this and other necessary discovery, including comparing just one version of Linux to one version of UNIX, would require approximately 25,000 man years.  (Addendum C ¶ 14.)

The newly challenged and generally-more-abstract material ultimately requires the same arduous code comparison as is required in order to respond to SCO's literal claims.[27]  Just as a novel's plot can always be found in the novel's text, so too are the more abstract elements claimed by SCO embodied in the system's code.  According to SCO itself, in order to analyze

---

[27] In fact, the more abstract nature of SCO's allegations makes the comparison process even more difficult, since tools available for analyzing allegations of literal copying cannot be utilized readily against claims of non-literal infringement.  Defending against SCO's new claims would be an almost entirely manual exercise involving vast quantities of code.

SCO's new claims relating to the selection, arrangement and coordination of System V, "the 4 million lines of Linux code must be compared with the 3.5 million lines of UNIX code, line-by-line, or in groups of lines according to the structure, sequence or function of the group of lines". (Addendum C ¶ 8.)  Evaluating the new material at issue would require analysis of most, if not all, of the more than a dozen versions of UNIX System V software and the hundreds of versions of the Linux kernel — a monumental task exceeding that for which SCO would allot 25,000 man years.[28]

While the trial date has been vacated, the time required for fact discovery alone would require a significant shift in the contemplated new trial date (i.e., sometime after the trial in SCO v. Novell later this year).  Notwithstanding SCO's contrary suggestions, IBM has not been taking fact and expert discovery regarding the new material since receipt of SCO's expert reports.  Fact and expert discovery are closed.  In addition to the time that would be required for fact and expert discovery, as well as expert depositions, more time would also be required to brief and argue a new round of motions to compel the missing detail and a new round of summary judgment motions.  SCO argues that summary judgment briefing would not need to be redone because "IBM raised virtually every imaginable argument in connection with the Tenth

---

[28] While IBM argued in its reply memorandum in support of its 2004 motion for summary judgment on its declaratory judgment claim that the only materials SCO required to conduct a comparison of Linux and UNIX are the products' code itself, this is entirely consistent with IBM's argument here.  At that juncture in this case, "SCO ha[d] not offered any competent evidence to create a disputed fact regarding whether IBM has infringed SCO's alleged copyrights", and IBM sought to rebut SCO's argument that it could nevertheless find evidence of infringement beyond that which it could find in the operating systems' source code through depositions and other additional discovery.  (2/9/05 Order at 10.)  At issue on this motion to amend, however, is the tremendous amount of evidence that would be required to support IBM's defenses against broad allegations of infringement, including defenses such as estoppel, independent creation, and possession of valid licenses.  While a plaintiff's search for code similarities may be automated relatively easily, the process of defending against the new allegations of infringement here would be almost wholly manual.

Counterclaim motion, and those arguments regarding ownership of copyrights, licenses, estoppels and the like are independent of the expert opinions at issue". (Mot. to Am. Reply at 5 n.5.) As IBM's pending summary judgment motion makes clear, however, the motions that IBM would be likely to file relating to new allegations of misuse would be similarly fact-specific, focusing on the specific allegedly misused material at issue.[29] In asserting otherwise, SCO not only ignores the fact that IBM's pending motions for summary judgment were based in important part on the specific allegedly misused material at issue, but also SCO ignores its own argument that summary judgment should be denied because the grounds raised by IBM are fact intensive. SCO's suggestion that significant additional summary judgment proceedings would not be required is baseless. Just as substantial briefing was required to deal with the 326 lines of kernel code in the Final Disclosures, substantial briefing would be required to deal with the far-more-voluminous material SCO seeks to add.[30]

Finally, SCO's delay in seeking to challenge the material at issue gives rise to issues of prejudice that could never be solved by additional time. That is especially true where delay alone would be prejudicial, as it would allow SCO to perpetuate fear, uncertainty and doubt about Linux and IBM's products and services. The added expense associated with re-litigating much of this case would also be prejudicial to IBM.[31] Moreover, IBM relied upon SCO's

---

[29] Consider, for example, the file-by-file, line-by-line analysis required for IBM's arguments that it has multiple licenses to the material at issue and that it is dictated by externalities. (See IBM's Mem. in Supp. of Its Mot. for Summary Judgment on Its Tenth Counterclaim at 51-55, 60-64.)

[30] Lest there be any doubt, the new case SCO seeks to bring would not be trial ready upon the completion of summary judgment proceedings. The parties would be required to prepare and submit a new wave of Rule 26(a)(3) and other pretrial disclosures.

[31] See Jones v. Thompson, 996 F.2d 261, 264 (10th Cir. 1993) ("Plaintiffs have prejudiced the Defendants by causing delay and mounting attorney's fees."); accord Hertz v. Luzenac America, Inc., No. 04-1961, 2006 WL 994431, *21 (D. Colo. April 13, 2006) ("The Tenth

identification of a mere 326 lines of Linux as allegedly infringing in continuing to support and

develop Linux and in litigating this case.  But for SCO's identification of only 326 lines of kernel

code in response to multiple court orders, IBM would have pursued other discovery from SCO

and that includes material that may no longer exist (such as SCO source code relating to the

allegedly infringed works and copies of the SCO websites that it refused to produce).  Given the

enormous number of people and documents relating to the creation of every version of Linux,

UNIX, and other relevant systems, there is no question that some SCO and third-party

documents may have been lost or deleted, memories may have faded, computers may have been

destroyed, and/or witnesses may have become unavailable.[32]

3.        SCO's Claims of Prejudice Are Misplaced.

SCO further claims that it will be prejudiced if its motion to amend its Final Disclosures

is denied.  The only supposed prejudice cited by SCO, however, is that it would be unable to

present at trial "expert opinions excluded by [the Confinement] Order".  (Mot. to Am. Reply at

6.)  While SCO's case might benefit from the opportunity to disregard the Court's orders

establishing and enforcing the deadline for the Final Disclosures, its inability to disregard the

Court's orders and conduct a trial by ambush does not constitute undue prejudice.  Far from

---

Circuit also recognizes that delay and mounting attorneys fees can equate to prejudice.") (Obj. Ex. D).

[32] SCO includes a list of what it asserts "will be true by the time of trial" in an effort to demonstrate that IBM will not be prejudiced by SCO's last-minute reinvention of its case.  (Mot. to Am. Reply at 8.)  However, SCO's list ignores the reality of what it is asking the Court to do by amending the Final Disclosures.  The amendment sought by SCO would create new allegations of misuse against which IBM would, for the first time, have to defend.  Despite this, all of SCO's assertions appear to assume that although these claims would only be brought pursuant to the present motion to amend, IBM should have begun years ago building a case, deposing witnesses, and conducting expert analysis of claims not yet made.   As for SCO's assertion that IBM was aware of these new allegations of misuse, if the Final Disclosures were to have any purpose whatsoever, the general knowledge by IBM that SCO alleges that Linux is a derivative work of UNIX System V cannot have provided IBM cause to defend against unspecified claims relating to every file in Linux.

"undue" prejudice, the inability to proceed as to material not specifically identified in the Final

Disclosures is precisely the type of "prejudice" SCO anticipated when it argued before the Court

that the Court had a "full . . . arsenal of measures it can take . . . to preclude us from using

evidence" if SCO did not make adequate and timely disclosures.  (4/21/05 Hr'g Tr. at 96 (Opp'n

Addendum B).)  As stated in IBM's Opposition Memorandum, a party cannot establish a claim

of prejudice based on its failure to comply with a Court order.  Cf. Roadway Exp., Inc. v. Piper,

447 U.S. 752, 763-64 (1980); Starlight Int'l, Inc. v. Herlihy, 186 F.R.D. 626, 646 (D. Kan.

1999).[33]

4. <u>The Material at Issue Was Not Fully Disclosed in SCO's Expert Reports.</u>

Finally, SCO repeats its claim that the material at issue was fully disclosed in its expert

reports, despite the contrary showing in IBM's opposition brief.  (Mot. to Am. Reply at 7.)  In

response to IBM's showing that all of the material at issue was not in fact disclosed in SCO's

expert reports, SCO merely repeats the familiar refrain that the material is not "allegedly misused

material" and thus was not required to be disclosed.  (Id.)  As discussed above, that is

demonstrably false.  And if it were not, there would be no reason for SCO's motion, since

Magistrate Judge Wells' order related only to allegedly misused material.  Moreover, even if

SCO's expert reports did disclose the allegedly misused material with the requisite specificity,

that is not a basis for leave to amend.  If it were, each and every request to amend SCO might

make would have to be granted so long as the material to be added was identified.  SCO's

motion to amend fails because it cannot establish any of the required elements, and because

---

[33] Indeed, SCO seeks to eliminate categories of discovery sanctions from the Court's arsenal.  If SCO is correct that a court's sanction preventing a party from proceeding as to material not properly disclosed constitutes prejudice sufficient to support a motion to amend the discovery filing, then such sanctions would cease to have any meaning as the mere existence of the sanction would provide cause to moot it.

extremely compelling circumstances do not exist for the addition of allegedly misused material

not included in SCO's Final Disclosures.

## Conclusion

For the foregoing reasons, IBM respectfully requests that this Court overrule SCO's

Objections to the Magistrate Judge's Order on IBM's Motion to Confine and deny SCO's

Motion to Amend its December 2005 Submission.

DATED this 20th day of April, 2007.

SNELL & WILMER L.L.P.


/s/ Amy F. Sorenson
Alan L. Sullivan
Todd M. Shaughnessy
Amy F. Sorenson


CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000


*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of March, 2007, a true and correct copy of the foregoing, together with the addenda thereto,* was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

    Brent O. Hatch
    Mark F. James
    HATCH, JAMES & DODGE, P.C.
    10 West Broadway, Suite 400
    Salt Lake City, Utah 84101

    Robert Silver
    Edward Normand
    BOIES, SCHILLER & FLEXNER LLP
    333 Main Street
    Armonk, New York 10504

    Stephen N. Zack
    Mark J. Heise
    BOIES, SCHILLER & FLEXNER LLP
    100 Southeast Second Street, Suite 2800
    Miami, Florida 33131

\*  Addenda B, C, and G were filed under seal and mailed, postage prepaid, to the above parties.

        /s/ Amy F. Sorenson

**<u>Index to Addenda</u>**

Addendum A:       Selected Copyright Principles and Selected Questions re SCO's copyright and contract claims.

Addendum B:       Exhibit H to 8/28/06 Report and Declaration of B. Kernighan and R. Davis (filed under seal)

Addendum C:       7/9/04 Sontag Declaration (filed under seal)

Addendum D:       4/14/06 Hearing Transcript

Addendum E:       10/24/06 Hearing Transcript

Addendum F:       Unpublished Opinions

Addendum G:       3/7/07 Hearing, SCO Handout, Tab 26 (filed under seal)