# ADDENDUM E

10/2/2006  Motion Hearing October 24, 2006

1             IN THE UNITED STATES DISTRICT COURT
2          FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
3
4
                                          )
5   THE SCO GROUP, INC.                   )
                                          )
6                                         )
        Plaintiff/Counterclaim-Defendant, )
7                                         )
                                          )
8           vs.                           )  Case No.
                                          )  2:03-CV-294 DAK
9                                         )
    INTERNATIONAL BUSINESS MACHINES       )
10  CORPORATION,                          )
                                          )
11                                        )
        Defendant/Counterclaim-Plaintiff. )
12                                        )
13
14
15
16         BEFORE THE HONORABLE DALE A. KIMBALL
17               DATE:  OCTOBER 24, 2006
18         REPORTER'S TRANSCTIPT OF PROCEEDINGS
19                    MOTION HEARING
20
21
22
23
24
25             Reporter:  REBECCA JANKE, CSR, RMR

1

1   We think that stems from a second related
2   failure, Your Honor, and that, as we point out at tab 12,
3   is the failure to hold an evidentiary hearing.  Now, SCO
4   expressly requested an evidentiary hearing at the
5   argument in this case.  IBM has said, well, we didn't
6   request it in writing earlier.  Well, the first time that
7   they submitted any evidence -- their initial motion was a
8   ten-page motion.  No declarations.  And it really just
9   talked about the July 2005 order, not about other
10  discovery requests.  We responded to that fully.
11          In the reply below is when IBM submitted its
12  first declaration from Mr. Davis, one of their experts.
13  Therefore, it was appropriate at oral argument -- and we
14  submitted then or got leave to submit a responding
15  declaration from Mr. Rochkind, but at that point you have
16  an evidentiary conflict, and at that point we asked for
17  an evidentiary hearing so that these issues could be
18  decided not just based on declarations or arguments of
19  counsel but on the facts.
20          Let's hear Mr. Wright and Mr. Lindsley say,
21  even though they are the developers from IBM who
22  disclosed this method and concept, that they don't know
23  where in Dynix it's found, but yet we should be thrown
24  out of court on those items because we can't tell IBM.
25          Some of the issues that an evidentiary hearing

10/2/2006 Motion Hearing October 24, 2006

1  would have been required for: The disputes between the
2  respective experts; Davis on their side, Rochkind on our
3  side over whether sufficient specificity was provided;
4  whether we in fact have but are simply not disclosing
5  more specific code locations, the idea that somehow we're
6  sandbagging IBM. And it should be noted that Courts in
7  many cases have recognize that if there is a concern with
8  sandbagging, the remedy is -- you don't throw out the
9  evidence and the detail that's provided. What you do is
10 you stop that party later at trial from introducing
11 evidence or disclosing an item that should have been
12 mentioned earlier.
13          And IBM has full rights to object if that were
14 ever to occur later in this case; at the trial of this
15 case or otherwise, if we say, "Forget the 294 items. We
16 have item number 295." And they, of course, know how to
17 object to that. There has not been sandbagging going on,
18 and this is not an appropriate remedy for it. An
19 evidentiary hearing could have looked at the prejudice to
20 IBM on an item-by-item basis rather than a generalized
21 discussion.
22          And it could also have dealt with an item which
23 is the subject of a separate motion before the Court,
24 which is the effect of IBM's own actions in this case
25 after this lawsuit was filed, and directing people in

10/2/2006  Motion Hearing October 24, 2006

1  their Linux technology center to do what's been called
2  cleaning their sandboxes.  Their sandboxes are actually
3  work spaces where they are working on this.  The Linux
4  technology center is the heart of this lawsuit.  That's
5  where this work is being done.
6       After this lawsuit was filed, directions went
7  out, confirmed by Dan Frye, the head of the center, for
8  those developers to take off their system, to clean their
9  sandboxes of the AIX and the Dynix code.  We think that
10 is wrong, and we have a motion dealing with that pending
11 before the Court.  But that is also a factual matter that
12 relates to our ability to come up now with all those code
13 locations relating to those developers' work.
14      In addition, as pointed out in the cases on tab
15 13, the Court did not make any express findings about
16 alternative remedies.  That's required under the
17 Ehrenhaus case, a Tenth Circuit case, which says that a
18 lesser sanction needs to be considered before you throw
19 out claims.  There is nothing in this order that supports
20 it.  As I mentioned, there are clear alternatives that
21 should have been considered.  If there is a concern that
22 SCO is sandbagging someone, that is addressed at the time
23 of trial by excluding improperly withheld evidence.
24      Moreover, we argued and still argue that the
25 specificity and the prejudice involved here should have