# Addendum D

UNPUBLISHED CASES

Mike v. Dymon, Inc., No. 95-2405, 1996 WL 674007 (D. Kan. Nov. 14, 1996)

Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp., No. 05-436, 2007 WL 1051759 (D. Utah April 2, 2007)

(C) 2007 West Group
(Cite as: 1996 WL 674007 (D.Kan.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

**Andrew V. MIKE, Plaintiff,**
**v.**
**DYMON, INC.**
**CIV. A. No. 95-2405-EEO.**

Nov. 14, 1996.

MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

**\*1** The court has under consideration Plaintiff Andrew V. Mike's Motions To Compel Discovery (docs. 75 and 125). Pursuant to Fed. R. Civ. P. 37(a), plaintiff thereby seeks an order to compel defendant Dymon, Inc. to answer Interrogatories 1, 6, 8, 13, and 16 of his First Set of Interrogatories and 22 through 30 of his Second Set of Interrogatories. He further seeks an order to compel defendant to produce all documents responsive to Requests 1, 7, 8, 9, 12, 13, 14, 18, 20, 22 through 26, 30 through 35, 37, 38, 39, 41, 42, 50, and 52 of his First Requests for Production and Requests 53 and 54 of his Second Requests for Production. He also seeks his expenses incurred on the motions. Defendant opposes the motions.

If a party fails to reply to factual assertions set forth in responses to motions, the court may treat those assertions as uncontested. Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995). The court nevertheless applies the applicable law to those facts. It does not accept uncontested conclusions or statements of law simply because one party has failed to reply.

At least in part due to the lack of reply of plaintiff, the court finds Requests 22, 23, 24, and 33; and Interrogatories 8, 28, and 30 essentially not at issue, despite the request for an order compelling discovery. Defendant asserts no objection to the requests for production. Plaintiff makes no suggestion, furthermore, that additional, responsive documents exist with respect to Request 33. He provides no adequate basis for compelling further production to that request. He initially suggests that defendant has not produced all documents responsive to Requests 22, 23, and 24. Defendant has asserted, however, that it has produced all documents that exist. Plaintiff does not contest such assertion. The court cannot compel production of what does not exist. In addition, defendant has already supplemented its answer to Interrogatory 8. His supplemental answer sufficiently answers the interrogatory. The only challenge to the answers to Interrogatories 28 and 30 relates to the lack of a verified signature. Defendant has corrected that defect. It need not further answer those interrogatories.

Plaintiff does not challenge every objection raised against the requested discovery. Defendant reaffirms all its asserted objections. It makes no attempt to support any objection not specifically challenged by plaintiff. In most instances the court summarily overrules unsupported objections. The objecting party has the burden to show its objections applicable and valid. Defendant suggests that the failure of plaintiff to challenge its objections requires the court to sustain those which are unchallenged. Its suggestion ignores its own burden to support objections. In a generally broad sweep in his memoranda plaintiff has challenged all the objections. The court finds no implicit concession that an objection is valid.

The court has discretion, nevertheless, "not to compel discovery which is patently improper." First Sav. Bank, F.S.B. v. First Bank Sys., Inc., 902 F. Supp. 1356, 1361 (D. Kan. 1995)(quoting Eastern Techs., Inc. v. Chem-Solv, Inc., 128 F.R.D. 74, 75 (E.D. Pa. 1989)). It is within that discretion to determine whether it should uphold facially valid objections, despite lack of support by the objecting party. The court, however, generally overrules objections which are untimely, improperly made, or unsupported. See, generally, Mackey v. IBP, Inc., 167 F.R.D. 186 (D. Kan. 1996); Pulsecard, Inc. v. Discover Card Servs., Inc., No. Civ.A. 94-2304-EEO, 1996 WL 397567 (D. Kan. July 11, 1996); Burnett v. Western Resources Inc., No. Civ.A. 95-2145- EEO, 1996 WL 134830 (D. Kan. March 21, 1996); Audiotext Communs. Network, Inc. v. US Telecom, Inc., No. Civ.A. 94-2395-GTV, 1995 WL 625744 (D. Kan., Oct. 5, 1995); Towner v. Med James, Inc., No. Civ.A. 94-2285-GTV, 1995 WL 477700 (D. Kan. Aug. 9, 1995); Smith v. MCI Telecomms. Corp., 124 F.R.D. 665, 685 (D. Kan. 1989). Before deciding whether to sustain or overrule untimely, improperly made, or unsupported objections, courts generally consider the reasons for such improprieties or lack of support. See First Sav. Bank, 902 F. Supp. at 1361. Although several factors may enter into consideration, each case is nevertheless "decided on its own facts and the presence or absence of any one or more ... factors does not compel a particular result." Id. at 1362. When an objection of privilege is at issue, moreover, "courts have been more circumspect in finding a waiver." Id. at 1361.

Miscellaneous Objections

**\*2** Plaintiff seeks further response to Interrogatory 22 and Request 54. Interrogatory 22 seeks: "For each individual whose name has been disclosed by either party to the other party ... state what information each ... has with regard to any claim or defense of defendant against

(C) 2007 West Group

(Cite as: 1996 WL 674007 (D.Kan.))

Page 2

plaintiff in the present litigation." Request 54 seeks "[c]opies of all communications or notes thereof, pertaining to the subject matter or issues of this litigation, between plaintiff or defendant and any ... individual whose name has been disclosed by either party to the other party." Plaintiff questions how defendant can find Interrogatory 22 and Request 54 objectionable, in light of the fact that he fashioned them after discovery propounded by it. Many reasons exist for finding particular discovery objectionable to one party, but not to another. Whether material is privileged often differs between parties. In addition, information may be easily obtained by one party, whereas the other party may be subjected to undue burden in its attempt to obtain the same or similar information. One party may assert objections which the other does not. That defendant may have propounded similar discovery has little bearing on whether the present discovery is objectionable.

Defendant objects that Interrogatory 22 is vague in its use of the phrase "claim or defense of defendant against plaintiff in the present litigation." It suggests that the resulting confusion is self-evident. It also objects that Interrogatory 6 is unclear, due to its use of the term "offered." The interrogatory asks in pertinent part: "What employees of Defendant have been offered the New Product Innovation Agreement?" Defendant likewise objects that Interrogatory 13 is ambiguous, due to its use of the undefined term "innovator." Interrogatory 13 seeks the facts upon which defendant contends "plaintiff was not the innovator of Scrubs." The court overrules the objections. The interrogatories do not appear vague, unclear, or confusing. Parties should use common sense when interpreting the meaning of terms and phrases utilized in interrogatories. Interrogatory 22 simply seeks information about claims and defenses asserted against plaintiff in this litigation. The court does not see how the selected phrase causes confusion or makes the interrogatory vague. The meaning of the terms, "offered" and "innovator," within the meaning of their respective interrogatories, likewise appears clear and unambiguous. The court will not sustain spurious objections regarding the clarity of requests for discovery. The objections are facially without merit.

The court further finds the following objections against Interrogatory 22 facially deficient: (1) inability to depose certain individuals due to filed protective orders; (2) availability of sources other than defense counsel; and (3) knowledge of defense counsel is subject of pending motion to disqualify. Defendant suggests that the court require no answer with respect to individuals who were not deposed due to protective orders. Such suggestion has no merit. Parties have a right to request protective orders. Exercising such right should not result in making other discovery unobtainable. When a party answers an interrogatory, moreover, it need provide only known information or information otherwise within its possession, custody, or control. That a party has not obtained to its satisfaction discovery from its opponent or a non-party is not grounds for objection. See Bohannon v. Honda Motor Co., 127 F.R.D. 536, 538 (D. Kan. 1989). Parties must answer interrogatories with whatever information they have. Id. When they obtain further information, a duty to supplement may arise in accordance with Fed. R. Civ. P. 26(e).

**\*3** Defendant also suggests that the court order no further answer to Interrogatory 22, because knowledge of its counsel is available from other sources and is subject to a pending motion to disqualify. These are facially invalid objections. Parties may obtain information from several sources. Knowledge of counsel is typically discoverable, unless irrelevant or privileged. Fed. R. Civ. P. 26(b)(2)(i) directs the court to limit discovery, if it determines that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." The interrogatory here does not specify the source from which defendant must answer. Defendant may rely upon whatever sources it has. That a motion to disqualify its counsel may have been pending when defendant responded does not impact the discoverability of the information. The court, furthermore, has overruled that motion.

Defendant objects that Request 54 is duplicative. This objection is facially deficient. That different requests for discovery may draw on the same or similar information does not necessarily create grounds for objection. Fed. R. Civ. P. 26(b)(2) speaks in terms of "unreasonably cumulative or duplicative." Defendant has not shown that Request 54 is unreasonably duplicative. It reveals no specific duplication. The court overrules the objection.

Defendant objects that certain discovery of plaintiff improperly seeks confidential information. Confidentiality generally does not constitute grounds to withhold discovery. It does not equate to privilege. Federal Open Mkt. Comm. v. Merrill, 443 U.S. 340, 362(1979). In most instances the court allows discovery of confidential information, usually subject to a protective order when requested. To avoid disclosing confidential information, a party must generally demonstrate good cause for a protective order. See Fed. R. Civ. P. 26(c). Defendant has shown no good cause for withholding discovery on grounds of confidentiality. Although defendant claims the existing protective order cannot adequately protect the confidentiality of all requested discovery, it provides nothing of substance to support such claim. The court overrules the objections of confidentiality.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(C) 2007 West Group

Page 3

(Cite as: 1996 WL 674007 (D.Kan.))

Undue Burden

Plaintiff seeks full answers to Interrogatories 23 through 27. They ask for "each and every fact" and the identity of every person with knowledge of the facts upon which defendant bases its denials of certain Requests for Admission. Plaintiff also seeks a complete answer to Interrogatory 13. It asks for "each and every fact" and the identity of every person with knowledge of the facts upon which defendant contends he is not the innovator of the product Scrubs-in-a-Bucket. Defendant objects on grounds of undue burden. It suggests that hundreds of facts are arguably marginally probative of its contention that the denied allegations are false. It does not support its objection to Interrogatory 13 due to the failure of plaintiff to specifically contest it. Plaintiff contends that his use of the phrase "each and every fact" does not make Interrogatories 23 through 27 unduly burdensome or an abuse of discovery. He suggests that such objection may be a pretext for withholding critical facts. He ignores the objection of undue burden raised against Interrogatory 13.

**\*4** Parties have a right to discover the facts underlying a denial of a request for admission. They also have a right to facts which underlie the contentions of their adversaries. The phrase "each and every fact" does not of itself make an interrogatory objectionable on grounds of undue burden. Defendant as the party resisting discovery has the burden to show the interrogatories unduly burdensome. It has made no such showing. Bald assertions do not suffice. That Interrogatories 23 through 27 seek facts upon which defendant denies a request for admission does not of itself make the interrogatories objectionable. Defendant shall fully answer Interrogatories 13 and 23 through 27 without objection.

Defendant need provide no further response to Requests 25 and 26. They are overly broad and unduly burdensome on their face. They seek all records or documents "pertaining to" Scrubs, plaintiff, or litigation between defendant and a non-party to this action, Zep Manufacturing Co. (Zep). The court will not compel further production in response to these requests. For the same reasons, the court compels no further response to Requests 9, 37, 38, and 39. Request 9 seeks all documents "pertaining to" the cost of manufacturing Scrubs. The others seek all documentation "regarding Scrubs."

Relevancy

"Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Smith v. MCI Telecomms. Corp., 137 F.R.D. 25, 27 (D. Kan. 1991). A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence. When the discovery sought appears relevant,

> [t]he party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

Aramburu v. Boeing Co., No. 93-4064-SAC, 1994 WL 810246, at \*1 (D. Kan. Sept. 22, 1994). "When 'relevancy is not apparent, [however,] it is the burden of the party seeking discovery to show the relevancy of the discovery request."' Evello Invs. N.V. v. Printed Media Servs., No. CIV.A. 94-2254- EEO, 1995 WL 135613, at \*5 (D. Kan. Mar. 28, 1995)(quoting Universal Money Ctrs. v. American Tel. & Tel. Co., No. 90-2201-O, unpublished op. at 3 (D. Kan. July 15, 1991)). When the party seeking discovery fails to show relevance and the court cannot otherwise "determine how the information sought is relevant," the court will not compel the requested discovery. See Gheesling v. Chater, 162 F.R.D. 649, 650 (D. Kan. 1995). "A request for discovery ... should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." Snowden v. Connaught Lab., 137 F.R.D. 336, 341 (D. Kan. 1991).

**\*5** "To determine whether discovery is relevant, the court examines the issues raised in the case." Caldwell v. Life Ins. Co. of N. Am., 165 F.R.D. 633, 638 (D. Kan. 1996). Although relevancy is not limited by the matters stated in the pleadings, they do provide a basis from which to judge relevancy. "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1977) (quoting Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

Plaintiff alleges that as part of his employment and compensation agreement with Dymon, they executed a New Product Innovation Agreement (Agreement). By its terms Dymon would compensate plaintiff "for any new product ideas submitted to [it] by [him] and developed and marketed by [it]." (Second, Third, & Fourth Am. Compls. ïï 6-7.) He further alleges that he submitted a new product, now known as Scrubs in a Bucket, which Dymon has developed and marketed; and that its failure to compensate him constitutes a breach of their contract. (Second Am. Compl. ïï 8-13; Third & Fourth Am. Compls. ïï 8-11.) He also alleges that Dymon breached his employment agreement by failing to pay an agreed

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(C) 2007 West Group                                                                                                           Page 4
(Cite as: 1996 WL 674007 (D.Kan.))

upon bonus. (Second Am. Compl. ïï 14-18; Third & Fourth Am. Compls. ïï 12-16.)

Although Dymon has yet to answer the Second, Third, or Fourth Amended Complaints, it has previously admitted that the Agreement sets forth a "compensation formula for New Product Ideas that are properly submitted" to it. (Answer to Am. Compl. & Countercl. ï 7, doc. 180.) It has further admitted that "plaintiff is one of the named inventors on [its] pending patent application covering the [Scrubs] product." (Id. ï 19.) It has also admitted that it has developed and marketed a product known as Scrubs-in-a-Bucket. (Id. ï 9.) It has nevertheless denied that plaintiff is entitled to compensation under the Agreement for sales of the product. (Id. ï 10.) It has denied that plaintiff submitted a new product idea within the meaning of the Agreement. (See id. ï 8.) It has also denied that it breached the employment agreement of plaintiff by failing to pay bonuses. (Id. ïï 12-16.) It has asserted as an affirmative defense that the right of plaintiff to receive a bonus "was based upon conditions precedent relating to company profit achievement towards budget." (Id. ï 43.) It has also asserted as an affirmative defense and counterclaim that plaintiff breached his employment contract by revealing confidential information about its business. (Id. ï 42; Countercl. ï 2, doc. 180.) The Agreement provides in pertinent part:

> 1. Submission of New Product Ideas. Employee shall submit to an officer or officers of Dymon designated by Dymon any and all New Product Ideas he or she may have for new products which could be developed by Dymon.
>
> * * *
>
> 4. Employee Compensation. In the event that a New Product Idea submitted by Employee is developed and marketed by Dymon, Employee shall be entitled to compensation for the development of the New Product Idea as set forth below....
>
> **\*6** 5. Compensation Formula. The compensation formula for New Product Ideas developed and marketed by Dymon is as follows ....
>
> * * *
>
> 9. Covenant Not to Disclose Confidential Information....
>
> In the event that Employee breaches any of the covenants contained herein, Employee shall forfeit and be disqualified from any compensation rights under this Agreement ....

(New Product Innovation Agreement, attached as Ex. A to Second, Third, & Fourth Am. Compls.)

Among other matters the parties dispute the following:

(1) whether plaintiff submitted an idea within the meaning of the Agreement and (2) whether plaintiff breached his confidentiality agreement to Dymon. The argument of plaintiff implies that certain discovery is relevant to determine whether he submitted a new product idea within the meaning of the Agreement. The Agreement is basically silent as to the meaning of "submitted." To the extent the Agreement is ambiguous about what constitutes "submitted," collateral matters such as the course of conduct or implied policy of defendant with respect to submission of a product may be relevant to determine the applicable meaning of the term. Whether and under what circumstances defendant compensated other employees for new product ideas pursuant to the same kind of agreement may have relevancy to the meaning of "submitted." The fact of compensation for a new product appears relevant. The court finds no relevancy, however, in the precise amount of such compensation to other employees.

Defendant objects to Interrogatories 6 and 29, and Requests 7, 8, 18, 20, 30, 32, and 53 on grounds of irrelevancy. Plaintiff asserts that the interrogatories and requests for production are relevant to establish a course of conduct or implied policy with respect to an agreement of the parties. He contends that such policy must be inferred from past performance and conduct of defendant. He claims no written policy exists on the matter. He characterizes the information as essential to his case.

Request 18 seeks "[a]ll documentation of any action taken by Defendant with regard to the submission described in [Request 17]." Defendant objects to this request only to the extent it seeks information regarding specific compensation paid to its employees. The court sustains the objection. Specific compensation appears irrelevant. Plaintiff has not demonstrated its relevancy. Defendant shall produce all responsive documents, but it may withhold the specific amounts of compensation paid to employees other than plaintiff.

Requests 7 and 30 seek documentation pertaining to compensation and benefits paid by defendant to certain individuals. Request 53 seeks "[a]ll correspondence pertaining to the disbursement of bonus funds by Dan Schrock." Interrogatories 6 and 29 also inquire about compensation and bonuses paid by defendant. Request 8 seeks copies of financial statements.

Whether and under what circumstances defendant compensated other employees for new product ideas pursuant to agreements like the New Product Innovation Agreement may have relevancy to the meaning of "submitted" within that agreement. To that extent the requests appear relevant. They also appear relevant to the extent they seek information regarding bonuses paid by

(C) 2007 West Group

Page 5

(Cite as: 1996 WL 674007 (D.Kan.))

defendant. Such information may be relevant to the claim that defendant withheld bonuses of plaintiff. Financial statements of defendant appear relevant to the affirmative defense that bonuses due plaintiff were only due upon the satisfaction of certain conditions regarding profitability of defendant. Defendant shall produce all documents responsive to Requests 7, 8, 30, and 53. It shall also fully answer Interrogatories 6 and 29, except that it need not state the precise amount of compensation paid.

**\*7** Defendant shall also produce all documents responsive to Request 20. The request seeks "[a]ll documentation pertaining to a product known as SOILSCREEN." Defendant did not object in its response to Request 20. It simply directed plaintiff to the public record and stated that it would produce a memorandum dated August 14, 1991. It later supplemented its original response with an objection of irrelevancy. An objection in a supplemental response does not cure the untimeliness, unless such supplement comes within the time allotted by the Federal Rules of Civil Procedure or by stipulation of the parties. The court finds no valid reason for the failure to timely assert the objection.

Defendant shall likewise produce all documents responsive to Request 32. The request seeks "[c]orporate minutes of Dymon for all meetings of shareholders, directors or officers" for years 1991 to the present "which deal in any way with Scrubs or sales thereof, or [plaintiff]." Corporate minutes regarding the Scrubs product may reveal some policy of defendant with regards to submissions and compensation due inventors under the New Product Innovation Agreement. In addition to its objection of irrelevancy against the request defendant states that there are no minutes which specifically relate to plaintiff. Such response is immaterial. It evades the question.

Defendant also objects that Interrogatory 1 and Requests 12, 13, 35, 41, 42, 50, and 52 seek irrelevant information. It objects to Request 35 as irrelevant to the extent it encompasses projects related to Scrubs. The request seeks "[a]ll files and documentation of Plaintiff's or any other of Defendant's employee's work on Scrubs and related projects." Plaintiff attempts no showing of relevancy with regards to the request. Interrogatory 1 seeks the social security numbers and birth dates for all individuals who provided information utilized in answering the interrogatories. Plaintiff claims a need for a responsive answer to Interrogatory 1 to conduct his own investigation on his claims and on the credibility of the identified individuals. Request 41 seeks documents produced in trademark litigation between defendant and Zep. Request 42 seeks documents relating to any settlement or agreement between Zep and defendant relating to the Scrubs-in-a-Bucket product or plaintiff. Plaintiff makes no attempt to show the relevancy of Requests 41 and 42, other than to state that his job prospects with Zep, ended shortly after contact between Zep and defendant. The other requests seek information concerning the patent application process. Plaintiff presents nothing of significance to show their relevancy.

The court does not find that requests for social security numbers and dates of birth of all individuals who provided information to answer the interrogatories are reasonably calculated to lead to the discovery of admissible evidence. Nor does it find relevance in information concerning the patent application process; documents produced in trademark litigation between defendant and Zep; documents relating to any settlement or agreement between those parties which concerns the Scrubs-in-a-Bucket product or plaintiff; or documents of work on projects related to Scrubs. Plaintiff provides nothing to overcome the apparent irrelevancy. Defendant need not further answer Interrogatory 1 or respond to Requests 12, 13, 35, 41, 42, 50, and 52.

Privilege

**\*8** Defendant asserts objections of attorney-client privilege and work product against Interrogatory 22 and Requests 1, 34, and 54. It limits its objection to Interrogatory 22 to information possessed by its counsel. Plaintiff limits the requests to documents which predate any anticipation of litigation. He speculates that defendant has wrongly withheld responsive documents as work product. He suggests that no responsive information is work product. He does not specifically address the objections of attorney-client privilege. He simply argues that not all information given to defense counsel was given in anticipation of litigation. This argument addresses the applicability of the work product doctrine. Anticipation of litigation makes no difference with respect to the attorney-client privilege.

Defendant asserts that its claims of work product encompass no documents which predate its anticipation of litigation. It otherwise makes no attempt to substantiate its claim of work product. It contends, furthermore, that its objections of attorney-client privilege establish a lack of basis for compelling further response. It nevertheless makes no attempt to substantiate such objections.

"The party asserting a privilege or the work-product doctrine as a bar to discovery has a two-fold burden. First, the party must present the privilege objection 'in a timely and proper manner.' Second, the party must show the privilege is applicable." First Sav. Bank, 902 F. Supp. at 1360 (citations omitted). The party "must establish all elements of the privilege. This burden can be met only by an evidentiary showing based on competent evidence."

(C) 2007 West Group

Page 6

(Cite as: 1996 WL 674007 (D.Kan.))

Audiotext Communs. Network, Inc. v. US Telecom, Inc., No. Civ.A. 94-2395- GTV, 1995 WL 625962, *7 (D. Kan., Oct. 5, 1995). "A party seeking to assert the privilege must make a clear showing that it applies." Peat, Marwich, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).

Although related and often invoked together, the attorney-client privilege and work product are distinctly different. See Great Plains Mut. Ins. Co. v. Mutual Reins. Bureau, 150 F.R.D. 193, 196 (D. Kan. 1993). Despite their differences, courts narrowly construe them both. "[F]ederal courts narrowly construe all privileges, whether of constitutional, common-law, or statutory origin." Everitt v. Brezzel, 750 F. Supp. 1063, 1066 (D. Colo. 1990). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." United States v. Nixon, 418 U.S. 683, 710 (1974) (unanimous decision).

Determining whether a party has presented an objection of privilege or work- product protection in a timely and proper manner necessarily implicates consideration of Fed. R. Civ. R. 26(b)(5). This rules sets forth what a party must do to properly uphold an objection of privilege against discovery:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

**\*9** "Rule 26(b)(5) plainly contemplates that the required notice and information is due upon a party withholding the claimed privileged material. Consequently ... the producing party must provide the Rule 26(b)(5) notice and information at the time it was otherwise required to produce the documents under [Fed. R. Civ. P.] 34." First Sav. Bank, 902 F. Supp. at 1360. Parties answering interrogatories likewise must provide the necessary notice and information at the time they are otherwise required to respond under Fed. R. Civ. P. 33. "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee notes (1993 Amend.).

Nothing before the court indicates that defendant has complied with the requirements of Rule 26(b)(5). Defendant, furthermore, has provided nothing of substance to support its claims of work-product protection or privilege. Its bald statement that its objection of work product encompasses no documents which predate its anticipation of litigation does not show that anything is work product. The statement simply makes no mention as to whether the withheld documents were "prepared by or for another party or for that other party's representative," as required to qualify as work product. Defendant has not adequately demonstrated either work product or attorney-client privilege.

The objection of work product against Interrogatory 22 is invalid on its face. Work product protects only documents and tangible items. It is an improper objection against an interrogatory, unless the interrogatory specifically asks for the content of a document protectable as work product. Interrogatory 22 does not asks for the content of a work product document. It seeks: "For each individual whose name has been disclosed by either party to the other party ... state what information each ... has with regard to any claim or defense of defendant against plaintiff in the present litigation." Defendant shall supplement its answer to Interrogatory 22, to reveal whatever information withheld solely on grounds of work product. The court overrules the objection of work product raised against Interrogatory 22.

As for the objections of privilege and other objections of work product, the court must determine what consequences should flow from the failure to demonstrate their applicability.

> It is true that the defendant['s] conduct departs from what is expected and required under the federal rules, but is it so unreasonable as to justify forfeiting [its] privilege? The defendant['s] blanket objection on ... work product qualifies as some precaution for it provides notice to the plaintiff that documents are being withheld on privilege grounds, but this is not enough for Rule 26(b)(5) purposes.

First Sav. Bank, 902 F. Supp. at 1363. The court determines whether conduct justifies forfeiting a privilege on a case-by-case basis. Id. at 1362. "Waiver is not the automatic result of failure to comply with Rule 26(b)(5)." Queen's Univ. at Kingston v. Kinedyne Corp., 161 F.R.D. 443, 447 (D. Kan. 1995). Neither the Federal Rules of Civil Procedure nor the Rules of Practice of the United States District Court for the District of Kansas, furthermore, mandate waiver of "objections not timely or properly made." First Sav. Bank, 902 F. Supp. at 1361. Generally the court has, however, overruled objections which are untimely or not adequately asserted or supported.

**\*10** Courts look to various factors in deciding whether a party waives an objection of privilege by not asserting it

(C) 2007 West Group								Page 7
(Cite as: 1996 WL 674007 (D.Kan.))

in a timely and proper manner. Id. at 1362. Included among such factors are: (1) the precautions taken to properly assert the privilege; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of the objection or claim of privilege; and (5) overriding issues of fairness. Id. Courts may decline to find waiver "when the nature of the requested documents shows them to be plainly protected by the work product doctrine and/or the attorney-client privilege." Id. When discovery is "almost certain to include materials which are attorney work product or are subject to an attorney-client privilege," the court should consider the merits of the objections, even if untimely. Smith v. MCI Telecomms. Corp., 124 F.R.D. 665, 686-87 (D. Kan. 1989).

Defendant objected to the requests for discovery on grounds of privilege and work product. The court finds no compliance by defendant with Fed. R. Civ. P. 26(b)(5). Plaintiff specifically challenges the objections of work product. Requests 1, 34, and 54 are so broad, however, as to obviously encompass documents that constitute work product and information protected by the attorney-client privilege.

Request 1 seeks "[a]ll documentation pertaining to the discovery, innovation or development of the product known as Scrubs-in-a-Bucket ... generated by any source from September, 1990 to the present time." By its terms, this request encompasses documentation generated by defense counsel. Such documentation would be within the possession, custody, or control of defendant. It would therefore be responsive to the request.

Request 34 seeks "[w]ith respect to Scrubs, all documentation of Shook, Hardy & Bacon regarding what was invented and who made the creative contributions to Scrubs." Shook, Hardy & Bacon is a law firm in the Kansas City metropolitan area. A response to the broadly worded request would require production of work product or items protected by the attorney-client privilege.

Request 54 seeks "[c]opies of all communications or notes thereof, pertaining to the subject matter or issues of this litigation, between plaintiff or defendant and any ... individual whose name has been disclosed by either party to the other party." In the context of this case the request on its face intrudes upon communications protected by the attorney-client privilege.

To the extent Interrogatory 22 seeks information of defense counsel, it too clearly encroaches upon the attorney-client privilege. It seeks "[f]or each individual whose name has been disclosed by either party to the other party ... state what information each ... has with regard to any claim or defense of defendant against plaintiff in the present litigation."

For the foregoing reasons the court sustains the objections of attorney-client privilege and work product raised against Requests 1, 34, and 54. It also sustains the objection of attorney-client privilege raised against Interrogatory 22. It will compel no further response to the requests 34. It will compel no further response to Interrogatory 22 beyond that previously ordered. Defendant shall, however, provide an appropriate privilege log describing in detail each document or other information withheld from discovery on grounds of privilege or work-product protection.

**\*11** Interrogatory 16 seeks identification of all persons "who have knowledge of any facts relating to any and all claims made ... in this lawsuit." Defendant objects to the extent the interrogatory seeks identification of its attorneys. It suggests that it has disclosed the facts to its attorneys during an attorney-client relationship. It argues, therefore, that such facts are not discoverable. It further argues that it is improper to identify specific attorneys to whom it revealed privileged information. The identities of counsel privy to the facts do not constitute privileged information. Facts relating to the claims of this lawsuit, moreover, are discoverable whether or not they were disclosed to an attorney. The attorney- client privilege does not protect disclosure of underlying facts other than the substantive content of communications. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). Defendant shall fully answer Interrogatory 16.

Defendant also objects to Requests 14 and 31 on grounds of attorney-client privilege and, as to 31, work product. Plaintiff claims these requests seek relevant information. He misses the point. Relevancy does not trump privilege or work product. Plaintiff provides no basis upon which to compel information over the asserted objections. Defendant has stated that it has produce all non- privileged documents. Plaintiff does not contest that statement. He provides no basis upon which to find that defendant has not produced all non-privileged, responsive documents. Defendant shall, nevertheless, provide an appropriate privilege log in accordance with Fed. R. Civ. P. 26(b)(5) with regards to documents withheld on grounds of privilege or as work product. No other response is warranted.

The attorney-client privilege as well as the work-product doctrine, furthermore, clearly protects documents responsive to Request 31. It seeks "[a] ll documents pertaining to Dymon's defense against Andrew Mike's unemployment benefits claim." In all likelihood responsive documents would include documents prepared by defense counsel which constitutes work product or documents protected by the attorney-client privilege.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(C) 2007 West Group
(Cite as: 1996 WL 674007 (D.Kan.))
Page 8

For the foregoing reasons, the court sustains in part and overrules in part Plaintiff Andrew V. Mike's Motions To Compel Discovery (docs. 75 and 125). On or before November 25, 1996 defendant shall answer Interrogatories 6, 13, 16, 22 through 27, and 29 as directed herein. Within that same time period, it shall produce all documents responsive to Requests 7, 8, 18, 20, 30, 32, and 53 as directed herein. Such production shall take place at the offices of counsel for plaintiff located at 4520 Main Street, Ste. 980, Kansas City, Missouri, or at any other location agreed upon by the parties. To the extent defendant withholds discovery on grounds of privilege or work product, it shall provide an appropriate privilege log in accordance with Fed. R. Civ. P. 26(b)(5). The court otherwise overrules the motions.

**\*12** IT IS SO ORDERED.

1996 WL 674007 (D.Kan.)

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

(C) 2007 West Group                                                                                              Page 1
(Cite as: 2007 WL 1051759 (D.Utah))

Only the Westlaw citation is currently available.

United States District Court,

D. Utah,

Central Division.

**GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P., Plaintiff,**
v.
**MERIX PHARMACEUTICAL CORP., Defendant.**
No. 2:05-mc-436-TS-DN.

April 2, 2007.

Allan T. Brinkerhoff, Ray Quinney & Nebeker, Salt Lake City, UT, Kenneth A. Plevan, Robert J. Del Tufo, Stephanie J. Kamerow, Skadden Arps Slate Meagher & Flom, New York, NY, for Plaintiff.

James S. Richter, Winston & Strawn LLP, Newark, NJ, Michael A. Sweet, Winston & Strawn LLP, San Francisco, CA, Ronald Y. Rothstein, Winston & Strawn LLP, Chicago, IL, Michael T. Hoppe, Robert B. Lochhead, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, for Defendant.

MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL

DAVID NUFFER, United States Magistrate Judge.

*1 This case arises out of a dispute between two pharmaceutical manufacturers regarding the products they sell for amelioration of cold sores and herpes. Plaintiff Glaxosmithkline Consumer Healthcare, L.P. (GSK) sells Abreva while Defendant Merix Pharmaceutical Corp. (Merix) sells Releev.

This court action is ancillary to actions pending in two other districts. GSK filed a false advertising lawsuit in the District Court of New Jersey in February 2005 [FN1] under the Lanham Act [FN2] and New Jersey Consumer Fraud Act [FN3] seeking a preliminary and permanent injunction and damages. [FN4] The next month, Merix filed a complaint in the Northern District of Illinois under the Lanham Act and Illinois state law alleging GSK's false advertising of Abreva. [FN5] Both suits thus involve the efficacy of the parties' products.

   FN1. Memorandum in Support of Merix Pharmaceutical Corporation's Motion to Compel Discovery [hereinafter Supporting Memorandum], at iii, docket no. 23, filed Jan. 18, 2007.

   FN2. 15 U.S.C. § 1125(a).

   FN3. N.J. Stat. § 56:8-2.

   FN4. Supporting Memorandum at iii.

   FN5. GSK's Memorandum in Opposition to Merix's Motion to Compel Discovery from Dr. Spotswood L. Spruance [hereinafter GSK's Opposition] at v, docket no. 26, filed Jan. 31, 2007; Supporting Memorandum, at iv.

Background on this Motion

Merix seeks to depose Dr. Spotswood Spruance who "is a professor at the University of Utah and a prolific researcher in the field of herpes and cold sores. He has conducted studies of numerous cold sore remedies, including those manufactured by GSK." [FN6] He has also published widely and written letters on the subject. Merix claims "Dr. Spruance has stated emphatically in these publications and in private correspondence that Abreva is no more efficacious in treating cold sores than a placebo, i.e., that it does not work." [FN7] While Merix has the written documents, "Merix is seeking to ask Dr. Spruance about the factual basis for the prior statements made and the articles/comments he authored, which are directly relevant to GSK's affirmative claim for damages and Merix's defenses thereto." [FN8] Merix says it "is entitled to explore and develop the factual underpinnings of Dr. Spruance's relevant statements...." [FN9]

   FN6. Supporting Memorandum at iii.

   FN7. Id. at iv.

   FN8. Id. at 2.

   FN9. Id. at 4.

This is not the first dispute between these parties about Dr. Spruance. Merix served its first subpoena on Dr. Spruance in March 2005 during what it claims was the preliminary injunction phase of the principal cases. [FN10] The subpoena sought production of documents and a deposition. In May 2005, Merix served GSK with a Notice of Deposition of Dr. Spruance. [FN11] On May 17, 2005, Merix filed a motion to compel discovery from the University of Utah, [FN12] and on May 20, 2005, a hearing was held in this court on Merix's motion to compel. [FN13] The Court permitted the deposition of Dr. Spruance, but limited the scope to "any facts, circumstances, nature and extent of any communications [which Ms. Squires had with] Dr. Spruance ... with respect to RELEEV." [FN14] This was consistent with an order entered the same day in the District of New Jersey. [FN15] Dr. Spruance's deposition took place May 23, 2005. [FN16]

FN10. 2005 Subpoena dated Mar. 2005, attached as Exhibit S-3 to Third Party Dr. Spotswood L. Spruance's Memorandum in Opposition to Merix Pharmaceutical Corporation's Motion to Compel Discovery [hereinafter Spruance's Opposition], docket no. 30, filed Feb. 2, 2007, at 5; see also Supporting Memorandum at v.

FN11. GSK's Opposition, at vii.

FN12. Motion to Compel Discovery from University of Utah, docket no. 1, filed May 17, 2005.

FN13. Spruance's Opposition at 5.

FN14. Transcript from May 20, 2005 Hearing at 9, Ins. 6-15, attached as Exhibit S-2 to Spruance's Opposition; Spruance Exhibit S-4 at 5; New Jersey Order at 2 paragraph 3, attached as Exhibit S-5 to Spruance's Opposition; see also Notice of Entry of Magistrate Judge Nuffer's May 20th Order, docket no. 18, filed May 27, 2005.

FN15. Docket no. 12, filed May 20.2005. A signed copy of the order is Exhibit F to the Declaration of James S. Richter, docket no. 24, filed January 18, 2007.

FN16. GSK's Opposition at viii.

On May 17, 2006, Merix served its second subpoena for deposition on Dr. Spruance. [FN17] Merix did not have leave of court to depose Dr. Spruance again. Merix gave notice that the deponent would be asked about:

FN17. Subpoena dated May 17, 2006, attached as Exhibit S-6 to Spruance's Opposition.

   1. Statements made by [Dr. Spruance] concerning the lack of efficacy of Abreva in treating cold sores.

**\*2** 2. Clinical and laboratory studies performed by [Dr. Spruance] concerning Abreva efficacy. [FN18]

FN18. Id. at 3.

GSK objected to this second subpoena. [FN19] After several months, "Merix wrote to the Magistrate Judge in New Jersey and sought assistance regarding the dispute." [FN20] That magistrate judge ruled that it was a matter to be dealt with by the Utah court. [FN21] On January 18, 2007, Merix filed the instant motion to compel Dr. Spruance's deposition. [FN22]

FN19. Supporting Memorandum at vii.

FN20. Id.

FN21. Id.

FN22. Merix Pharmaceutical Corporation's Motion to Compel Discovery, docket no. 22, filed Jan. 18, 2007.

### Issues Raised

Many issues are raised on this motion. GSK and the University of Utah challenge the subpoena because:
   The deposition notice improperly seeks expert testimony in violation of Federal Rule of Civil Procedure 45(c)(3)(B)(ii);
   The proposed deposition places an undue burden on Dr. Spruance;
   The deposition testimony is not relevant;
   The proposed deposition is inconsistent with this court's May 20, 2005, order regarding the first deposition; and
   Merix did not have leave of court to take Dr. Spruance's deposition a second time.

Another issue is presented because Merix claims that GSK lacks standing to oppose the motion to compel.

### GSK's Standing

Merix argues that GSK lacks standing to object to a third party subpoena. [FN23] This issue will not affect the Court's decision here because filings on behalf of the deponent have raised all the relevant issues. Further, in this case the parties have previously litigated a subpoena and notice of deposition as to Dr. Spruance, and the court's management powers extend to issues rooted in that order. Finally, the parties are advised that this magistrate judge believes that a party has standing to move for a protective order regarding any discovery in the case, including notices of deposition. If there is any limitation on a party's rights to move to quash a third-party subpoena it is not significant because the party has other similar rights.

FN23. Merix Pharmaceutical Corporation's Reply Brief in Support of Merix Pharmaceutical Corporation's Motion to Compel Discovery [hereinafter "Reply"] at 6, docket no. 31, filed February 12, 2007.

### Limitations on Subpoena to Expert Witness

Federal Rule of Civil Procedure 45(c)(3)(B)(ii) authorizes a court to modify or quash a subpoena if it "[r]equires disclosure of an unretained expert's opinion or information not describing events or occurrences in dispute and resulting from the expert's study not made at the request of any party." The advisory committee note clarifies that the determination "should be informed by ... the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony...." [FN24] And in

(C) 2007 West Group
(Cite as: 2007 WL 1051759 (D.Utah))
Page 3

addition, the rule provides protection for "information" that is not part of the "events" in dispute.

> FN24. Fed.R.Civ.P. 45(c)(3)(B)(ii) advisory committee's note (citations and quotation marks omitted).

Merix asserts that the information being sought from Dr. Spruance relates to "events or occurrences in dispute" and that GSK's claim for damages is that event or occurrence. [FN25] "Merix seeks to depose Dr. Spruance, not as an expert, but rather as a fact witness with information directly related to one aspect of GSK's affirmative claims for damages." [FN26] Merix says it seeks Dr. Spruance's

> FN25. Supporting Memorandum at 1-2.
>
> FN26. Reply at ii.

**\*3** factual knowledge that Abreva does not work, which goes directly to the heart of one of GSK's claims and Merix's defenses--namely, that Merix's alleged false advertising did not cause a decline in the sales of Abreva, rather it was GSK's own inadequate product that customers simply do not want to purchase again. [FN27]

> FN27. Id. at 4.

Merix cites language from an anti-trust case permitting deposition of an author who made a conclusion about certain practices in the industry in dispute based on the author's participation as counsel in seven transactions in that industry. [FN28] The court permitted the deposition because the attorney "has knowledge of facts central to the antitrust conspiracy that lies at the heart of plaintiffs' action....' " [FN29]

> FN28. GSK's Opposition at 3 (citing In re Pub. Offering PLE Antitrust Litig., 233 F.R.D. 70, 72, 74 (D.Mass.2006)).
>
> FN29. Pub. Offering, 233 F R D at 74 (emphasis in original).

GSK correctly distinguishes the cited case from the present one because the facts in the cited case were of "events that the non-party allegedly witnessed, not 'information resulting from his "study" as an expert.' " [FN30] The author-witness in the cited case observed the disputed facts as a part of his work as a participant in the industry, not as a researcher. The events he witnessed were the substance of the wrongful act alleged in the lawsuit, not the result of studies related to a fact in issue in the suit. Dr. Spruance works as a researcher, not as a participant in the industry, and he cannot not describe events which constitute the substance of the lawsuit. He can testify about facts helpful to Merix's theory of the case, but these came to his attention by his study independent of any party in the case.

> FN30. GSK's Opposition at 3-4 (quoting Pub. Offering, 233 F.R.D. at 77-78 ).

GSK also argues that the deposition seeks facts Dr. Spruance apparently chose not to publish, and that "Dr. Spruance's decision not to publish them cannot be countermanded by Merix in the guise of a 'fact' deposition." [FN31] This is entirely consistent with the intent of Rule 45. GSK also argues that Merix's attempt to retain Dr. Spruance for research of some of its cold sore products in 2001 demonstrates that Merix is seeking his testimony as an expert. [FN32] This last point further shows the real purpose for which Merix seeks Dr. Spruance's testimony. He is sought as an authority, based on his expertise and independent study, not as an observer of facts giving rise to liability. Merix is not entitled to the deposition of Dr. Spruance, by the terms of Rule 45. [FN33]

> FN31. GSK's Opposition at. iii.
>
> FN32. Id. at ii-iii.
>
> FN33. Merix's Reply at 3 purports to cite an advisory committee's note to Fed.R.Civ.P. 45(c)(3)(B)(ii) which appears to actually be from part C45-23 of a Practice Commentary by David Siegel found on Westlaw.

### Undue Burden

This second subpoena is unduly burdensome, as Dr. Spruance contends. [FN34] Because the studies were conducted nearly six years ago, Dr. Spruance will have to "expend significant time and effort re-reviewing his findings and conclusions." [FN35] As Dr. Spruance also contends, allowing him to be deposed would put him "in the unenviable position of being caught between two conflicting pharmaceutical giants" and would likely compromise "the integrity of Dr. Spruance's intellectual property." [FN36] Merix claims that it is just "a small family-owned micro company with only four employees." [FN37] Nonetheless, this case file shows the resources and issues are of large proportions, and that the burden on Dr. Spruance would be significant.

> FN34. Spruance's Opposition at 13.
>
> FN35. Id. See also GSK's Opposition at 7-8.
>
> FN36. Spruance's Opposition at 14.
>
> FN37. Reply at 6, fn.2.

**\*4** Merix argues that the proposed deposition presents no

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

burden because the subpoena "does not seek any documents and has listed only two topics on which testimony is requested." [FN38] Furthermore, "Merix also offered to depose Dr. Spruance at his place of business at any time that is convenient for him." [FN39] This response does not effectively mitigate the burdens that the proposed deposition presents. The preparation would be very significant.

    FN38. Supporting Memorandum at 6.

    FN39. Reply Memorandum at 6.

Dr. Spruance also points out that Merix possesses his published studies and the information surrounding the Federal Drug Administration's approval of Abreva, and there is nothing else Dr. Spruance could add in a deposition that does not draw upon his expert knowledge. [FN40] He claims that "[i]f all Merix is truly seeking are the 'facts' of Dr. Spruance's research, his published studies can provide these facts." [FN41] He also points out that Merix's expert reports already discuss his studies. [FN42] Discovery burdens are all relative to the expected benefit to the case, and in light of the materials already provided to Merix, Dr. Spruance's deposition would be an undue burden.

    FN40. Spruance's Opposition at 12.

    FN41. Id. at 13.

    FN42. Exhibit S-8 at 2 to Spruance's Opposition; Exhibit S-10 at 2 to Spruance's Opposition.

### Relevance

The rules permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence...." [FN43] Courts in this circuit construe this rule broadly. [FN44]

    FN43. Fed R. Civ. P. 26(b)(1).

    FN44. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir .1995); Gohler v. Wood, 162 F.R.D. 691, 694 (D.Utah 1995); Jones v. Commander, Kansas Army Ammunitions Plant, 146 F.R.D. 248, 250 (D.Kan . 1993).

Dr. Spruance and GSK argue that any testimony Dr. Spruance can give is merely tangential if sought to support Merix's claim that low repeat sales is the real reason for GSK's low sales. [FN45] They argue that Merix should really be searching for direct evidence regarding consumer satisfaction and customer reasons for low repeat purchases rather than asking Dr. Spruance about his drug studies on animals--which relate to actual effectiveness. [FN46]

    FN45. GSK's Opposition at iv; Spruance's Opposition at 13.

    FN46. GSK's Opposition at iv; Spruance's Opposition at 13.

The magistrate judge agrees that the low relevance of the deposition testimony supports the finding that the burden of the deposition is excessive.

### Inconsistency with May 2005 Order

Dr. Spruance claims that what Merix is asking for now was requested in its May 2005 subpoena, and that the denial of that portion of the earlier motion to compel bars Merix from relief now. [FN47] Merix asserts that its previous subpoena and the court's order were framed in the limited preliminary injunction phase of the case. [FN48] Merix cites a similar case in which a court declined to invoke the law of the case doctrine with respect to a deposition ruling "made in the early stages of litigation before the issues of this case had been fully defined." [FN49] But the issues in this case were fully defined in May 2005, and "[t]his court's [May 2005] order speaks to "the New Jersey action" and not in terms of the preliminary injunction phase. [FN50] The cited case is inapplicable.

    FN47. Spruance's Opposition at 11-12.

    FN48. Supporting Memorandum at v-vi.

    FN49. Reply at iv (quoting Pacific Employers Ins. Co. v. P.B. Hoidale Co,142 F.R.D. 171, 172-73 (D.Kan.1992)).

    FN50. Spruance's Opposition at 12.

GSK also argues that Merix now seeks same information sought in the first subpoena. [FN51] The magistrate judge already stated the information sought was "far beyond that which would legitimately be discoverable in the New Jersey action" [FN52] and that it "placed too great a burden on Dr. Spruance, and could potentially compromise confidential information." [FN53]

    FN51. GSK's Opposition at i.

    FN52. Hearing Transcript, dated May 20, 2005, attached as Exhibit 1 at 9 to Declaration of Kenneth A. Plevan, docket no. 27, filed January 31, 2007.

    FN53. Id.

(C) 2007 West Group                                                                                                           Page 5
(Cite as: 2007 WL 1051759 (D.Utah))

**\*5** The magistrate judge agrees that the issues presented are substantially those raised in May 2005, though better articulated in more extensive briefing. The May 2005 order should prohibit this deposition.

### Failure to Appeal May 2005 Order

GSK argues that if Merix did not agree with the order of this Court regarding the first motion to compel, which severely limited the deposition of Dr. Spruance, its "remedy was to make a timely appeal to the District Court under Federal Rule of Civil Procedure 72(a) " [FN54] and in accordance with the Magistrate Judge's instruction. [FN55] The magistrate judge was very clear that his decision regarding the scope of Dr. Spruance's deposition was independent of the New Jersey court's decision that same day, and that the magistrate judge would not revisit the issue. GSK asserts that now that two years have passed, Merix "now bears the heavy burden imposed by the law-of-the- case doctrine ... to show that (i) the May 2005 ruling was clearly erroneous, and (ii) adherence to the ruling would work manifest injustice," and that Merix is unable to make either showing. [FN56] GSK argues that "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." [FN57]

   FN54. GSK's Opposition at ii.

   FN55. Minute Entry, docket no. 13, filed May 20, 2005 ("If counsel would like further review of this ruling, they are to contact Judge Stewart's chambers.").

   FN56. GSK's Opposition at ii.

   FN57. Wessel v. City of Albuquerque, 463 F.3d 1138, 1143 (10th Cir .2006) (quoting Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir.2002)); see also Fed.R.Civ.P. 72(a); Cottman v. Aurora Pub. Schs., 85 F. App'x 83, 88 (10th Cir.2003) (employee waived right to appeal denial of access to certain documents by failing to appeal magistrate judge's ruling within 10 days); Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir.1986) ("By failing to file timely objections to the magistrate's discovery order, appellants ... stripped the district court of its function of effectively reviewing the magistrate's order....").

The issue on this motion is not precisely the same as that earlier presented, but Merix has done nothing to convince the court that any further deposition of Dr. Spruance is appropriate. More thorough expression of the arguments is presented on this motion than was presented in 2005, but even considering the evolved state of the case, there is nothing to change the burden on Dr. Spruance or the impropriety of the deposition as an imposition on an expert.

### Leave of Court and New Jersey District Court Permission

Leave of court is required if a "person to be examined by deposition already has been deposed in the case...." [FN58] Merix claims it obtained leave of court in a New Jersey hearing in April 2006 when the district judge granted a motion to strike Merix's unclean hands defense. Merix claims the judge "expressly stated that his ruling would not preclude Merix from pursuing discovery relating to Abreva scientific studies, advertising, or other related discovery, provided such discovery was relevant to claims asserted by GSK in this case." [FN59]

   FN58. Fed.R.Civ.P. 30(a)(2)(B).

   FN59. Supporting Memorandum at vii.

GSK argues, however, and this Court agrees, that all Judge Debevoise said was that his holding on the unclean hands defense did not prevent Merix from taking relevant discovery. [FN60] Judge Debevoise made it clear that he did not know what discovery Merix was talking about, and nothing in the record provided on this motion shows that the judge was considering Dr. Spruance's second deposition. Merix's lack of leave of court is another reason to deny this motion to compel.

   FN60. GSK's Opposition at iv; Hearing Transcript, dated Apr. 4, 2006, attached as Exhibit G to Declaration of James S. Richter in Support of Motion to Compel, docket no. 24, filed Jan. 18, 2007.

### ORDER

IT IS HEREBY ORDERED that the motion to compel [FN61] is DENIED.

   FN61. Docket no. 22, filed Jan. 18, 2007.

2007 WL 1051759 (D.Utah)

END OF DOCUMENT