# EXHIBIT A

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
Sanford Lee HERTZ, Plaintiff and Counterclaim Defendant,
v.
LUZENAC AMERICA, INC., a Delaware corporation Defendant and Counterclaim
Plaintiff,
and
THE LUZENAC GROUP, a French corporation, Defendant.
and
LUZENAC AMERICA, INC., a Delaware corporation, Third-Party Plaintiff and
Counterclaim Defendant,
v.
Lane LIGHTHART, an individual, Third Party Defendant and Counterclaim
Plaintiff.
**No. CIVA04CV1961LTBCBS.**

April 13, 2006.

Byeongsook Seo, Theresa Lynne Corrada, Isaacson Rosenbaum, P.C., Denver, CO, for Plaintiff and Counterclaim Defendant.

Janet Ann Savage, Stephanie Ann Ries, Davis, Graham & Stubbs LLP, Denver, CO, for Defendant and Counterclaim Plaintiff/Third-Party Plaintiff and Counterclaim Defendant.

Jenifer M. Ross-Amato, Regional Transportation District, Denver, CO, for Third-Party Plaintiff and Counterclaim Defendant.

John A. Culver, Benezra & Culver, LLC, Lakewood, CO, for Plaintiff and Counterclaim Defendant/Third Party Defendant and Counterclaim Plaintiff.

Richard Lance Gabriel, Timothy Michael Reynolds, Holme, Roberts & Owen, LLP, Denver, CO, for Third Party Defendant and Counterclaim Plaintiff.

MEMORANDUM ORDER ON PENDING MO-

TIONS TO PRECLUDE EVIDENCE OF DAM-
AGES NOT
PREVIOUSLY DISCLOSED

SHAFFER, Magistrate, J.

**\*1** THIS MATTER comes before the court on Plaintiff and Counterclaim Defendant Hertz's and Third Party Defendant and Counterclaim Plaintiff Lighthart's Joint Motion to Preclude Evidence of Damages Not Previously Disclosed (Document # 166), filed on January 26, 2006. This motion seeks to preclude Defendant, Third Party Plaintiff and Counterclaim Plaintiff Luzenac America ("Luzenac") from presenting evidence at trial concerning certain categories and calculations of damages, based upon Luzenac's alleged failure to disclose such information to Hertz and Lighthart. The instant motion also argues that the written report prepared by Luzenac's retained expert, Robert F. Aucone, fails to adequately state the bases and reasons for the opinions expressed therein. Luzenac filed an Opposition to Hertz and Lighthart's Joint Motion on February 7, 2006. In its response, Luzenac insisted that it had "properly and timely disclosed all information upon which it relies in support of its damages calculations," and further argued that exclusion of evidence was inappropriate because Hertz and Lighthart "have known all along of the damages sought in this case." *See* Luzenac's Opposition, at 10.

Also pending before the court is Luzenac's Motion to Preclude Evidence of Damages Not Previously Disclosed and to Strike Expert Witnesses (Document # 192), dated February 16, 2005. [FN1] This motion seeks, in pertinent part, to exclude evidence of damages stemming from projected sales to markets and for products not identified in Rule 26 disclosures provided by Hertz and Lighthart. Hertz and Lighthart filed a Response in Opposition on March 8, 2006, in which they characterized Luzenac's motion as unfounded retribution for their earlier motion accusing Luzenac of Rule 26 violations. Luzenac filed a Reply in Support of its motion on March 23, 2006.

> FN1. That portion of Luzenac's motion which seeks to strike Gale Murphy as an un-

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

retained expert witness for Hertz and Lighthart will be addressed separately.

Pursuant to an Order of Reference dated September 27, 2004 and the memoranda dated January 30, 2006 (doc. # 169) and February 21, 2006 (doc. # 194), these matters were referred to the Magistrate Judge. This court held a lengthy hearing on February 9, 2006. I have carefully considered the parties' written submissions, the arguments of counsel during the February 9th hearing, the applicable case law and the entire case file. For the following reasons, I find that each of the moving parties failed to comply fully with their disclosure obligations under Rule 26(a)(1)(C) and Rule 26(e)(1). On that basis, the court will deny the requested relief.

### FACTUAL BACKGROUND

Sanford Hertz initiated this action on August 8, 2003 in the District Court for the City and County of Denver, Colorado. On February 16, 2004, venue was changed to the District Court for the County of Arapahoe, Colorado. Luzenac filed an Answer and Counterclaims on March 12, 2004, which cited Hertz for (1) intentional interference with prospective business advantage; (2) intentional interference with contractual relationships; (3) misappropriation of trade secrets; (4) conversion of confidential proprietary information; (5) civil theft; and (6) breach of contract. On September 24, 2004, Defendant Luzenac removed the action to the United States District Court for the District of Colorado.

**\*2** Plaintiff Hertz's Amended Complaint, filed on July 27, 2004, alleges generally that he was employed by Luzenac's paint divisions from August 1994 to January 1998. Plaintiff claims to be a paint chemist, a business consultant and a published expert in silicone chemistry. Luzenac terminated Hertz in January 1998. Hertz challenged that termination in an action filed in federal district court. That lawsuit resulted in a judgment in favor of Hertz on the claim that his termination was retaliatory in violation of Title VII. By July 2002, Hertz was providing consulting services to IMI Fabi, LLC, another company active in the coatings industry. Hertz alleges that on August 5, 2003, Luzenac contacted IMI Fabi, stating that Hertz had stolen confidential and proprietary information be-

longing to Luzenac. In that same communication, Luzenac threatened to take legal action against Hertz and insisted that IMI Fabi stop using any information provided by Hertz. The Amended Complaint asserts four claims for relief. The First Claim alleges retaliation under Title VII, based upon Luzenac's false allegations which occurred while Hertz' first lawsuit was still pending. The Second and Third Claims allege intentional interference with contractual relations and intentional interference with prospective business advantage. The Fourth Claim for Relief seeks damages for defamation *per se.*

On April 1, 2005, the District Court granted Luzenac's motion for leave to file Amended Counterclaims joining IMI Fabi, LLC and Lane Lighthart, a former Luzenac employee. The Amended Counterclaims allege that from 1994 to 2001, Luzenac manufactured Mistron 604AV, a vinyl silane coated talc product made with a particular talc called Mistron Monomix. In 2002, Luzenac outsourced its manufacturing and sales of Mistron 604AV pursuant to an agreement with Van Horn Metz, Inc. Under the terms of that agreement, Luzenac provided the formula and process for manufacturing Mistron 604AV, and Van Horn Metz agreed to purchase all necessary Mistron Monomix from Luzenac. Defendant alleges that during the course of his employment with Luzenac, Hertz had access to confidential information on the formula and process for manufacturing Mistron 604AV. Defendant further alleges that Third Party Defendant Lighthart, as a former Luzenac employee, had access to confidential sales information, including customer lists, pricing and product requirements for those customers. During their employment with Luzenac, both Hertz and Lighthart allegedly executed confidentiality agreements for the benefit of their employer.

The Amended Counterclaims contend that Hertz and Lighthart used Luzenac's confidential information and trade secrets to enable IMI Fabi to create, design, process, formulate, manufacture and market a product, Genera, which is identical to or nearly identical to Mistron 604AV. Luzenac further alleges that Hertz made certain false statements to customers and business associates of Luzenac and Van Horn Metz, suggesting, *inter alia,* that the current version

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:03-cv-00294-DN   Document 1055-2   Filed 05/11/07   PageID.17965   Page 4 of 23

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

of Mistron 604AV is inferior to the product manufactured while Hertz was a Luzenac employee and that IMI Fabi's Genera product is superior to Mistron 604AV. As a result of the Counterclaim Defendant's actions, purchases of Mistron 604AV from Van Horn Metz allegedly have declined, along with Luzenac's sales of Monomix. The Amended Counterclaims assert claims for: (1) intentional interference with prospective business advantage; (2) intentional interference with contractual relationships; (3) misappropriation of trade secrets; (4) conversion of confidential proprietary information; (5) civil theft; (6) breach of contract against Hertz; (7) breach of contract against Lighthart; (8) unjust enrichment; and (9) conspiracy. Luzenac states that Van Horn Metz has assigned all of its claims against Hertz, IMI Fabi and Lighthart to Luzenac.

**\*3** On May 23, 2005, Lane Lighthart filed his initial Counterclaims. Lighthart alleged generally that he had provided considerable assistance to Hertz in his earlier Title VII lawsuit against Luzenac, and that Luzenac's third party claims were retaliatory in nature. Lighthart initially asserted claims for intentional interference with contractual relations and intentional interference with prospective business advantage. On August 2, 2005, Lighthart filed Amended Counterclaims that added new claims for abuse of process under Colorado common law and retaliation in violation of Title VII. The Amended Counterclaims alleged specifically that Luzenac's third party claims had damaged Lighthart by causing IMI Fabi and Hertz not to enter into any prospective business relationship with him, by interfering with his contractual relationship with Hertz, and by causing Lighthart to incur costs in defending Luzenac's third party claims. On September 1, 2005, Lighthart filed his Second Amended Counterclaims, which withdrew the claim for abuse of process.

On June 5, 2005, this court held a scheduling conference pursuant to Fed.R.Civ.P. 16. The court entered a Second Amended Scheduling Order on June 7, 2005, which established a discovery deadline of December 15, 2005 and a dispositive motion deadline of January 23, 2006. In that same Second Amended Scheduling Order, the parties were directed to designate all affirmative expert witnesses and provide all information specified in Fed.R.Civ.P. 26(a)(2)(B) on or before October 1, 2005. The parties were required to designate all rebuttal experts and provide all information specified by Rule 26(a)(2)(B) on or before November 30, 2005. On November 22, 2005, at the parties' joint request, the court extended the discovery cutoff date to December 29, 2005, and the deadline for filing dispositive motions to January 30, 2006.

On September 30, 2005, Third Party Plaintiff and Counterclaim Plaintiff Luzenac tendered the written report of Robert F. Aucone, its damages expert. In that report, Mr. Aucone opined that: (1) the gross profits lost by Luzenac from diminished sales of Mistron Monomix totaled $10,415.22; (2) the gross profits lost by Luzenac from sales of "untreated talc" were $3,566.55; (3) Luzenac's research and development costs related to the development of Mistron 604AV were at least $125,548.80; and (4) the net profit to IMI Fabi from the sale of competing products was at least $64,864.20. Mr. Aucone indicated that he reviewed the following documents, among others, in preparing his analysis: [FN2]

> FN2. In the absence of information to the contrary, the court will assume that bates-stamped numbers bearing the prefix "LUZ" designate documents produced in discovery by Luzenac.

1. A one-page worksheet titled "Commissions on General Product," Bates stamped P00865.
2. A one-page document titled "2002-2004 Sales of Mistron Monomix to Van Horn Metz," Bates stamped LUZ000058.
3. A one-page document titled "2000 and 2001 Sales of Mistron Monomix to Van Horn Metz," Bates stamped LUZ000059.
4. A four-page document titled "Sales by Customer by Product--Mistron 604 AV," Bates stamped LUZ000054 through LUZ000057.
**\*4** 5. A five-page document titled "IMI-FABI, LLC," pages 2 through 5 of which were also subtitled "Sales by Item Detail January 2002 through January 2005."
6. A one-page document titled "Rubber Price List." A two-page document titled "Van Horn Metz and Co., Inc. Item LedgerCard Report -NOVEM."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

7. A three-page report titled "Van Horn Metz and Co., Inc. Customer/Item Multi Period Analysis - sensient."

Hertz and Lighthart declined to depose Mr. Aucone prior to the discovery deadline, after concluding that a deposition would not shed any additional light on the information disclosed in the expert's written report. *See* Transcript of Hearing on February 9, 2006, at 17.

On or about October 3, 2005, Hertz and Lighthart served a written report prepared by their retained business valuation expert, Richard Whalen. Mr. Whalen was deposed by Luzenac's counsel on December 16, 2005.

## ANALYSIS

The pending motions are simply the latest in a series of discovery disputes between these litigants. These disputes have been hotly contested and, in the view of this court, unnecessarily acrimonious.

### I. Hertz and Lighthart's Motion to Preclude Evidence

In their Joint Motion to Preclude Evidence of Damages Not Previously Disclosed (Document # 166), Hertz and Lighthart argue that Luzenac, over a period of nearly two years, withheld information relevant to its damages claims and failed to disclose in a timely manner the categories and types of damages that were ultimately identified in Mr. Aucone's written report. As articulated by Plaintiff's counsel during the February 9th hearing, Hertz contends that the Fed.R.Civ.P. 26(a)(1) initial disclosures provided by Luzenac on June 25, 2004 were deficient in light of the Counterclaims filed on March 12, 2004. Hertz further maintains that Luzenac failed to comply with Fed.R.Civ.P. 26(e) by not supplementing its damage disclosures after filing its Amended Counterclaims on March 31, 2005. Hertz and Lighthart argue that Luzenac provided misleading and incomplete responses to written discovery directed to damages issues. Finally, Hertz and Lighthart attack Mr. Aucone's expert report, arguing that the opinions in that report are based on information that was concealed from them and that the report includes categories of damages that were never identified in Luzenac's Rule

26(a)(1) disclosures.

In sum, Hertz and Lighthart suggest that they

> are not complaining about the fact that Luzenac never calculated its damages until its expert report; we're complaining about the fact that they actively misled us into believing that we had all the information upon which their damages were based. That they never once disclosed that they were seeking R & D costs. That they never once disclosed that they were seeking damages for lost sales of Cimpact, which is a product I know nothing about and it has never been explored in discovery whatsoever. And that they never disclosed or produced the documents that they gave their expert in March or indicated to us that those documents were in any way related to their damages despite targeted discovery requests directed to elicit that information.

**\*5** *See* Transcript of February 9, 2006 Hearing, at 6-7. Hertz and Lighthart claim that Luzenac's failure to comply with its disclosure and discovery obligations has deprived them of their ability to formulate a proper case strategy and discovery plan. *Id.* at 7.

In its opposition brief, Luzenac argues that Hertz and Lighthart have only themselves to blame for their lack of knowledge concerning Luzenac's damage computations. Luzenac insists that "Hertz and Lighthart were put on notice through pleadings, disclosures and discovery responses of the types of damages Luzenac claims, including [Van Horn Metz's] lost sales of 604AV and research and development costs." *See* Luzenac's Opposition, at 2. Luzenac further maintains that it disclosed in a timely manner Mr. Aucone's expert report and the information upon which he relied. Even if the court were to find Rule 26(a) violations, Luzenac argues that excluding evidence of damages is not an appropriate remedy under the circumstances of this case.

### A. *Luzenac's Initial Rule 26(a)(1)(C) Disclosures*

Rule 26(a)(1)(C) requires a party to provide, without a formal discovery request, "a computation of any category of damages claimed by the disclosing party," together with the non-privileged documents and other evidentiary material on which that computation is based. *See* Fed.R.Civ.P. 26(a)(1)(C). Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26(a)(1) disclosures are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). Initial disclosures should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.,* 2003 WL 21939033 *2 (D.Neb.2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 145 F.R.D. 92, 94 (S.D.Iowa 1992)). In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a). [FN3] *See also Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J.1997) (Rule 26 disclosure requirement should be applied with common sense).

> FN3. The United States Supreme Court has acknowledged the "weight" and deference to be given to the Advisory Committee's construction of any Federal Rule of Civil Procedure. *See, e.g., Schiavone v. Fortune,* 477 U.S. 21, 30-31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

Rule 26(a)(1) requires initial disclosures based upon information then reasonably available to the disclosing party. Rule 26(g) states that the attorney or party making disclosures pursuant to Rule 26(a)(1) must sign those disclosures, thereby certifying that "to the best of the signer's knowledge, information, and belief, formed after a *reasonable inquiry,* the disclosure is complete and correct as of the time it is made." *See* Fed.R.Civ.P. 26(g)(1) (emphasis added).

**\*6** Before making initial disclosures, parties must "make a reasonable inquiry into the facts of the case." Parties need not conduct "an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings."

*Lintz v. American General Finance, Inc.,* 1999 WL

619045, *3 (D.Kan.1999). *Cf. Gucci America, Inc. v. Costco Wholesale Corp.,* 2003 WL 21018832, *2 (S.D.N.Y.2003) (holding that Rule 26(g) imposes an obligation to make a reasonable inquiry to ensure that the party's disclosures are complete *and* accurate).

Luzenac served its initial Rule 26(a)(1) disclosures on June 24, 2004. As of that date, Luzenac asserted counterclaims for (1) intentional interference with prospective business advantage; (2) intentional interference with contractual relationships; (3) misappropriation of trade secrets; (4) conversion of confidential proprietary information; (5) civil theft; and (6) breach of contract. Luzenac's initial Rule 26(a)(1)(C) disclosure placed Hertz on notice that the company was seeking "compensatory and punitive damages against Hertz representing any sales made by Hertz based on use of Luzenac's trade secrets and/or misrepresentations as to those products." Luzenac further indicated that the "actual amount [of these compensatory and punitive damages] will be developed through discovery." *See* Exhibit A, at 4, attached to Joint Motion to Preclude Evidence of Damages. *See also* Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 26(a)(1) (noting that a "party would not be expected to provide a calculation of damages which ... depends upon information in the possession of another party or person").

Although Luzenac's March 12, 2004 counterclaims alleged, in part, that Hertz "intentionally caused Luzenac's customers and business associates not to distribute or purchase Luzenac's product, Mistron 604AV," the June 24, 2004 initial disclosures did not identify *lost sales by Luzenac* as a separate category of damages or suggest that documentary evidence of those lost sales would be used to compute damages. Moreover, Luzenac was required under Rule 26(a)(1)(C) to make available for inspection any non-privileged documents or evidentiary material on which its damage computations were based. *See* Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 26(a)(1)(C) ( "[subparagraph (C) imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34 ... This obligation applies only with respect to documents then reasonably available to [that party]"). Luzenac's June 24, 2004 initial dam-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 6
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

age disclosure does not refer to any documents in its possession, custody or control that would have a "bearing on the nature and extent of injuries suffered." *See* Fed.R.Civ.P. 26(a)(1)(C).

As matters stood on June 24, 2004, Hertz could reasonably understand that Luzenac was computing its alleged damages based upon *"any sales made by Hertz."* Moreover, Hertz could reasonably presume that after conducting a reasonable inquiry pursuant to Rule 26(g)(1), Luzenac's damage computation was not based upon documents currently within the company's possession, custody or control. *But see Kleiner v. Burns,* 2000 WL 1909470, \*2 (D.Kan.2000) (finding a violation of Rule 26(a)(1)(C) where plaintiff's disclosures failed to affirmatively state that plaintiff did not possess additional documents or evidentiary material upon which her damage claims were based).

**\*7** During the February 9th hearing, counsel for Luzenac argued that her client's Rule 26(a)(1)(C) disclosures were no less informative than disclosures provided by Hertz and Lighthart. According to counsel, all parties provided a general description of damage categories and relied on future expert reports to provide a more precise calculation of damages. *See* Transcript of February 9, 2006 Hearing, at 28. It is difficult to reconcile that argument with Rule 26(a)(1), which specifically states that a party is not excluded from making the required initial disclosures "because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." *See* Fed.R.Civ.P. 26(a)(1)(E).

### B. *Luzenac's Rule 26(e)(1) Supplementation*

Consistent with the objective of facilitating trial preparation, Rule 26 requires a party to supplement its mandatory disclosures "at appropriate intervals" if that party "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See* Fed.R.Civ.P. 26(e)(1). *See also Macaulay v. Anas,* 321 F.3d 45, 50 (1st Cir.2003) (once a mandatory disclosure is provided, it must be kept current); *Caldwell-Baker*

*Co. v. Southern Illinois Railcar Co.,* 2001 WL 789389 (D.Kan.2001) (noting that "the supplementation requirement contemplates that initial disclosures may contain partial or incomplete information"). The objectives underlying Rule 26(a)(1) suggest that information "is incomplete or incorrect" in "some material respect" if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation. *Sender v. Mann,* 225 F.R.D. 645, 654 (D.Colo.2004). Rule 26(e)(1) must be governed by the same "common sense" standard applicable to Rule 26(a), and supplemental disclosures should provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation.

Here, Hertz and Lighthart accuse Luzenac of failing to supplement its initial damage disclosures in compliance with Rule 26(e)(1). Because Luzenac had no duty to supplement its initial disclosures under Rule 26(e)(1) if the additional or corrective information already had been disclosed, it is necessary to review Luzenac's discovery responses relating to damages.

In response to Hertz's first set of written discovery, Luzenac stated on September 8, 2004, that "Plaintiff's wrongful acts caused Luzenac to lose sales" and that the "exact amount of lost sales as well as other damages will be learned upon receipt of further discovery from the Plaintiff." *See* Exhibit B, at 8, attached to Joint Motion to Preclude Evidence of Damages. In response to an interrogatory that asked for the identity of all customers, potential customers or business associates who decided not to do business with Luzenac, ceased doing business or reduced the amount of business they did with Luzenac as a result of Hertz' alleged conduct, Luzenac specifically identified "Ferro and Lilly (Valspar)." Luzenac also suggested that information about other possible customers "is in the possession and control of Plaintiff and IMI Fabi and remains to be learned through further discovery." *Id.* at 12. Finally, Plaintiff's Request for Production No. 7 asked Defendant to "produce documents relating to a decline in revenues ... related to the purchase of Mistron 604AV." Luzenac stated that documents relevant to the issue of lost sales "are in the possession and control of IMI Fabi," but that "doc-

Case 2:03-cv-00294-DN    Document 1055-2    Filed 05/11/07    PageID.17969    Page 8 of 23

Not Reported in F.Supp.2d                                                                                                        Page 7
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

uments showing sales of Mistron 604AV prior to the transfer to Van Horn Metz will be produced." *Id.* at 15.

**\*8** Based upon these discovery responses, Hertz had reason to understand that Luzenac's damage computation included lost sales allegedly caused by Hertz's wrongful conduct. Luzenac represented that documents bearing upon the nature and amount of those lost sales would be produced to the extent they were in Luzenac's possession, custody or control, or obtained from Hertz and IMI Fabi in the course of future discovery.

On September 29, 2004, Luzenac served its Answer to Plaintiff's Amended Complaint and Counterclaims. On October 25, 2004, Luzenac answered Plaintiff's second set of written discovery. In its interrogatory responses, Luzenac claimed that Hertz used improper means to interfere "with at least three customers: Ferro, Lilly (Valspar), and Sentry Paint (now Sheboygan Paint)." *See* Exhibit C, at 5, attached to Joint Motion to Preclude Evidence of Damages. Luzenac stated that its allegation of lost sales resulting from Hertz's misrepresentations "is based on a decrease in the sales made by Van Horn Metz and a subsequent decrease in the sales of Monomix to Van Horn Metz." *Id.* at 7. When asked to state what percentage of its "gross and net sales was from the sale of Mistron 604AV and/or VHM 604AV on a monthly, quarterly and annual basis during the past five years," Luzenac responded that

> since Luzenac stopped selling Mistron 604AV on or about December 2001, it does not have information on its sales or that product over the past three years. After approximately December 2001, Luzenac sold Monomix to [Van Horn Metz] to make VHM604AV. Documents showing those sales have been produced herewith. With respect to the time period prior to approximately December 2001, please see information contained in LUZ000054-57, which has been previously provided to Plaintiff. [FN4]

> FN4. The expert report prepared by Mr. Aucone specifically references "a four-page document titled 'Sales by Customer by Product-- Mistron 604AV,' Bates stamped

LUZ000054 through LUZ000057."

*Id.* at 8. The same documents were referenced in Luzenac's response to Request for Production No. 4, which sought "documents showing monthly, quarterly and annual gross and net revenues to Luzenac from Van Horn Metz's sales of Mistron 604AV or its equivalent from the beginning of Van Horn Metz's business relationship with Luzenac to the present." *Id.* at 11.

In the wake of these discovery responses, Luzenac provided supplemental Rule 26(a)(1) disclosures on February 11, 2005. The supplemental disclosures identified various individuals that might have discoverable information concerning Luzenac's development of Mistron 604AV, but did not provide any additional information directly responsive to the requirements of Rule 26(a)(1)(C). Certainly, the supplemental disclosure of potential witnesses did not satisfy Luzenac's separate obligations under Rule 26(a)(1)(C). More importantly, these supplemental disclosures did not identify research and development costs as a separate category of damages. The February 11th supplemental disclosures also made no reference to specific documents that would support Luzenac's damage claims.

In the wake of Luzenac's Rule 26(a)(1) disclosures, its responses to written discovery and its Rule 26(e)(1) supplemental disclosures, Hertz could reasonably understand, as of February 11, 2005, that Luzenac was computing its damages based upon sales made by Hertz and sales lost by Luzenac, either involving Mistron 604AV or VHM 604AV, or lost sales of Monomix to Van Horn Metz. Hertz could also conclude that documents bearing on these damage computations had been produced to the extent they were in Luzenac's possession, custody or control.

**\*9** The court accepted Luzenac's Amended Counterclaims for filing on April 1, 2005. The Amended Counterclaims asserted for the first time claims against IMI Fabi and Lane Lighthart. [FN5] Luzenac alleged, *inter alia,* that IMI Fabi used information provided by Hertz and Lighthart to target Luzenac and Van Horn Metz customers. Those customers no

longer purchased Mistron 604AV from Van Horn Metz, which in turn resulted in reduced sales of Monomix by Luzenac. *See* Luzenac's Amended Counterclaims, at ¶ 24. The Amended Counterclaims also included a new claim for unjust enrichment. That claim alleged that Luzenac had invested nearly 2 1/2 years and incurred investment, research and development costs to develop a marketable 604AV product. The unjust enrichment claim alleged that IMI Fabi had wrongfully capitalized on Luzenac's investment, research and development to produce an identical or nearly identical product within a couple of months without incurring research and development costs. *See* Luzenac's Amended Counterclaims, at ¶ 76. The Amended Counterclaims included a separate claim for breach of contract against Mr. Lighthart.

> FN5. On August 31, 2005, the District Court dismissed Luzenac's claims against IMI Fabi.

There is no indication from the record before the court that after April 1, 2005, Luzenac supplemented its Rule 26(a)(1)(C) disclosures to address the new parties and new claims asserted in its Amended Counterclaims. [FN6] Rule 26(a) seeks to provide each party with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement. In the wake of Luzenac's Amended Counterclaims, IMI Fabi and Lighthart were entitled to understand the contours of their own potential exposure under the various claims asserted by the Third Party Plaintiff and Counterclaim Plaintiff. For example, Lighthart was entitled to know what portion of Luzenac's damages are attributable to Counterclaim One, which alleges intentional interference with prospective business advantage by Hertz, IMI Fabi and Lighthart, and what portion of damages is attributable to Counterclaim Seven, a breach of contract claim that names only Lighthart. *Cf. City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 222 (N.D.Cal.2003) ("because the merits analysis and assessment of likelihood of success may vary among the claims, knowing what portion of the damages are attributable to each claim would assist the parties in putting a settlement value on the case").

> FN6. During the February 9th hearing, Luzenac's counsel acknowledged that her client hired Mr. Aucone prior to drafting the Amended Counterclaims. *See* Transcript of February 9, 2006 Hearing, at 27.

Hertz and Lighthart contend that prior to receipt of Mr. Aucone's written report on September 30, 2005, Luzenac had not disclosed that it was claiming damages associated with IMI Fabi's sales of an untreated talc comparable to Luzenac's Cimpact 610. *See* Transcript of Hearing on February 9, 2006, at 3. According to Mr. Hertz's counsel, "this case has always been about one product and one product only, and that was Mistron 604AV and IMI Fabi's alleged copy of that product, which was Genera." *Id.* at 3-4. Hertz and Lighthart also insist that prior to September 30, 2005, Luzenac had not disclosed that it was claiming as damages the costs associated with the research and development of Mistron 604AV. *Id.* at 3-4.

**\*10** The comments of Luzenac's counsel during the February 9th hearing are telling. With respect to the damages associated with Cimpact 610, counsel claimed that "we asserted that in our counterclaims that that was a potential loss." *Id.* at 46. Counsel argued that further disclosures could not be provided because "we still to this day ... do not have the information from the plaintiff or from IMI Fabi as to the amount of those sales." *Id.* As for the damages relating to research and development costs, counsel argued:

> it didn't exist as a category of damages prior to March of 2005. It wasn't part of our original complaint. We added that in March of 2005 so there was nothing to disclose prior to that date. Following that date ... in addition to the counterclaims asserting that, Mr. Aucone's report clearly put the plaintiff on notice on that issue.

*Id.* at 46.

The court has read Luzenac's Amended Counterclaims several times and has yet to see a specific reference to Cimpact 610. I acknowledge that the Amended Counterclaims include a claim for unjust enrichment, with allegations that IMI Fabi was able to bring its Genera product to market without incurring research and development costs because it

wrongfully capitalized on Luzenac's investment, research and development. *See* Luzenac's Amended Counterclaims, at ¶ 76. However, Luzenac cannot rely on the allegations of the Amended Counterclaims to satisfy its disclosure obligations under Rule 26(a)(1)(C). [FN7] *Compare DirecTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 680-81 (D.Kan.2004) (holding that a party cannot answer interrogatories simply by referring their opponent to its Complaint and Rule 26(a)(1) disclosures; "plaintiff may not merely refer defendants to other pleadings or its disclosures hoping that defendants will be able to glean the requested information from them"). Luzenac's argument effectively undermines the objectives underlying the mandatory disclosure obligations in Rule 26(a)(1)(C). *Cf. Design Strategies, Inc. v. Davis,* 367 F.Supp.2d 630, 633- 34 (S.D.N.Y.2005) (noting that "to the extent that [Plaintiff] gave Defendants notice of its intention to seek lost profits in its Complaint, it arguably took that notice away by omitting such damages from its subsequent representations regarding the remedies it planned to seek, and by failing to produce any discovery with respect to them"). I have also reviewed Luzenac's Rule 26(a) disclosures and responses to written discovery and found no reference Cimpact 610 or research and development costs as a specific component of its computation.

> FN7. The pleading requirements under Fed.R.Civ.P. 8(a) contemplate a "short and plain statement of the claim showing that the pleader is entitled to relief." On the other hand, the initial disclosure requirements of Rule 26(a)(1) are significantly broader and are intended to provide a party with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement.

Luzenac's failure to supplement its Rule 26(a)(1)(A) disclosures after April 2005 is particularly troubling in light of the discovery that preceded the Amended Counterclaims. Luzenac's responses to written discovery acknowledged the need for "further discovery from the Plaintiff" and IMI Fabi. The court will presume that Luzenac pursued that discovery. If Luzenac intended to base its damages computation on documents obtained through discovery, it was re-

quired to supplement its Rule 26(a)(1)(C) disclosures to identify those documents with particularity. *Cf. Dunkin' Donuts Inc. v. Dough Boy Management, Inc.,* 2006 WL 20521, *8 (D.N.J.2006)* (holding that defendants had a duty to supplement their initial disclosures as they acquired pertinent information relating to their damage computation); *City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. at 222 (while noting that a precise damage calculation might be difficult where many of the relevant documents remained in the possession of the opposing party, Rule 26(a)(1)(C) contemplates that damage disclosures will be updated and greater detail will be provided as discovery progresses). *See also Norman v. CP Rail Systems,* 2000 WL 1700137 (N.D.Ill.2000) (noting that Rule 26(a)(1) is a "fairness rule, not a technicality," Rule 26(a)(1) eliminates the need to "slog through heaps of discovery material"). While Hertz and Lighthart may have been generally aware of the documents produced in discovery, that level of awareness would not suffice under Rule 26(a)(1)(C).

**\*11** After a thorough review of the available record, I conclude that Luzenac failed to comply with its disclosure obligations under Rule 26(a)(1)(C) and Rule 26(e)(1).

C. *Luzenac's Discovery Responses*

As a separate basis for the requested relief, Hertz and Lighthart contend that Luzenac provided misleading and incomplete responses to written discovery.

The Scheduling Order entered on June 7, 2005 permitted each party to serve a maximum of 40 interrogatories on each opposing party. Lighthart's first set of written discovery included ten separately numbered interrogatories. One of those interrogatories, No. 6, had seven discrete subparts. Lighthart also served 13 separate requests for admission under Fed.R.Civ.P. 36. To the extent that Luzenac answered any of those requests for admission with something other than an unqualified admission, Lighthart's Interrogatory No. 1 required the responding party to "provide the complete factual basis for that denial or qualified admission, and identify all persons who have knowledge of the factual basis for the denial or qualified admis-

sion." *See* Exhibit H, at 8, attached to Joint Motion to Preclude Evidence of Damages. Luzenac provided a denial or qualified admission in response to ten of Lighthart's requests for admission. Under even the most stringent interpretation, Lighthart's first set of discovery requests contained less than the maximum number of interrogatories permitted under the Scheduling Order. *See Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D.Cal.1998) (where a single interrogatory requests disclosure of all information which forms the basis for denying requests for admission, each denied request for admission will be considered a separate interrogatory and count against a numerical limit).

Lighthart's first set of written discovery included a number of interrogatories directed to the issue of damages. For example, Lighthart's Interrogatory No. 6(b) asked Luzenac to "identify all Luzenac and/or VHM customers that 'IMI Fabi [allegedly] targeted.' " Interrogatory No. 6(d) asked Luzenac to "identify all customers that 'no longer purchase 604AV from VHM,' [and] describe with specificity all facts that support a causal connection between Mr. Lighthart's conduct and those customers' decision to no longer purchase 604AV from VHM." *See* Exhibit H, at 11-12, attached to Joint Motion to Preclude Evidence of Damages. Interrogatory Nos. 6(e) and (f) requested specific information concerning reductions in the purchase of Monomix by Van Horn Metz and the identity of all customers who purchased products from IMI Fabi to the detriment of Luzenac and Van Horn Metz. *Id.* at 12.

In response to each of these questions, Luzenac provided the same answer:

> Luzenac objects to this request because it is vague, unduly burdensome and is a separate interrogatory. If Lighthart would like to properly submit this interrogatory as a separate request, Luzenac will address it at that time.

**\*12** *Id.* at 11-13.

Measured by any standard (including common sense), Luzenac's response to these interrogatories was improper. Luzenac made no attempt to explain how these interrogatories were vague, and this court finds nothing vague or ambiguous about the inquir-

ies. "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." *See Stoldt v. Centurion Industries, Inc.,* 2005 WL 375667, *2 (D.Kan.2005) ("[a] party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"). The "undue burden" objection is equally without merit. *See Cardenas v. Doral Juvenile Group, Inc.,* 232 F.R.D. 377, 380 (D.Kan.2005) ("the party asserting an unduly burdensome objection to a discovery request has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery"); *Burton Mechanical Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D.Ind.1992) (party objecting on grounds of "burdensomeness" must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence).

Luzenac's demand for a "separate interrogatory" does not even rise to the level of frivolous. While Fed.R.Civ.P. 33(b) provides that each interrogatory must be "answered separately," it does not impose any formatting requirements. *Compare* Fed.R.Civ.P. 34(b) (each "request [for production] shall set forth, either by individual item or by category, the items to be inspected") and Fed.R.Civ.P. 36(a) ("each matter of which an admission is requested shall be separately set forth"). To the contrary, Rule 33(a) contemplates that an interrogatory may have discrete subparts, provided that the total number of interrogatories, including discrete subparts, does not exceed 25 in number, absent leave of court. As noted, Lighthart's interrogatories did not exceed the numerical limit established in the parties' Scheduling Order. Luzenac's demand that Lighthart re-serve interrogatories that were otherwise unobjectionable smacks of gamesmanship.

Equally inappropriate was Luzenac's response to Lighthart's Interrogatory No. 8, which asked Defendant to describe for each category of damages in Luzenac's Amended Counterclaims, "the loss caused by Mr. Lighthart or the amount of damages sought by Luzenac," as well as the method of calculation and each fact that supports the amount of loss claimed or

damage sought. Luzenac objected to this interrogatory as "vague and compound," and then stated that it was "still in the process of calculating its damages with the assistance of an expert and will update its damages at the appropriate time." *See* Exhibit H, at 14, attached to Joint Motion to Preclude Evidence of Damages. This response was inadequate. Lighthart was entitled to a specific and substantive answer to this interrogatory based upon the information reasonably available to Luzenac at the time of the response. *See Bradley v. Val-Mejias,* 2001 WL 1249339, *2 (D.Kan.2001)* (holding that it was insufficient for the responding party to state his expert would provide the requested damages information in accordance with the expert disclosure deadlines; notwithstanding any expert disclosure deadlines, the responding party was required to respond with whatever discoverable information he presently held).

*13 Hertz's Second Set of Discovery requested documents showing "monthly, quarterly and annual gross and net revenues" to Luzenac attributed from Van Horn Metz's sales of Mistron 604AV or its equivalent. Rather than providing documents reflecting "gross and net revenues," Luzenac responded with the following: "please see LUZ000054-57 reflecting sales to VHM from Luzenac from 1996 to 2001. Documents reflecting *sales* to VHM from Luzenac from 2001 to present will be produced." *See* Exhibit C, at 10-11, attached to Joint Motion to Preclude Evidence of Damages. Luzenac did not object to this particular request for production and did not suggest that documents showing "gross and net revenues" were unavailable. Luzenac simply offered something else. *See also Adolph Coors Co. v. American Insurance Co.,* 164 F.R.D. 507, 518 (D.Colo.1993) (in responding to a request for production under Rule 34, a party is obligated to give that request "a reasonable construction, to conduct the search required by Rule 34 and to produce responsive documents").

Hertz's counsel claims that she specifically raised with opposing counsel the apparent disconnect between her request for documents showing "gross and net revenues" and Luzenac's document production reflecting sales. According to counsel, Luzenac insisted that it did not have documents showing profits, but only had the sales documents that had

been produced. *See* Transcript of February 9, 2006 Hearing, at 23. Plaintiff's counsel apparently addressed this same subject during a deposition of Luzenac's Vice President of Sales, who testified that his employer did not have the ability to calculate net profits on a product-by-product basis. *Id.* Notwithstanding these prior assertions, Mr. Aucone's report purports to calculate the gross profits lost by Luzenac from lost sales of Mistron 604AV. Hertz's counsel concedes that she could have deposed Mr. Aucone to address his methodology for calculating profits, but apparently she chose to save that line of inquiry for cross-examination at trial.

The Federal Rules of Civil Procedure provide Hertz and Lighthart with remedies if they felt that Luzenac's responses to discovery were deficient or improper. A party may move to compel disclosures or discovery. *See* Fed.R.Civ.P. 37(1)(2)(A) and (B). Rule 37(a)(3) provides that "an evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer, or respond." *See* Fed.R.Civ.P. 37(a)(3). However, an aggrieved party must seek judicial intervention in a timely manner. *See Continental Industries, Inc. v. Integrated Logistics Solutions, LLC,* 211 F.R.D. 442, 444 (N.D.Okl.2002) (after acknowledging it is "especially important that a party file its motion [to compel] before the discovery cutoff," held that a failure to pursue discovery remedies in a timely manner may result in a waiver of discovery violations); *Butler v. Benson,* 193 F.R.D. 664, 666 (D.Colo.2000) (held that a party cannot ignore available discovery remedies and then move to compel on the eve of trial).

*14 While the court does not condone Luzenac's responses to written discovery, it also cannot overlook Hertz's and Lighthart's lack of diligence in pursuing available discovery remedies. For example, Luzenac responded to Lighthart's first set of discovery requests on August 12, 2005. Lighthart made no effort to compel proper responses during the seven weeks prior to the deadline for designating expert witnesses. In fact, Lighthart did not pursue any remedies during the nearly two months before Luzenac submitted its First Supplemental Responses to Lane Lighthart's First Set of Requests for Admission, Interrogatories and Requests for Production of Documents. *See* Ex-

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

hibit 7, attached to Luzenac's Opposition to Joint Motion to Preclude Evidence.

D. *The Aucone Expert Report*

Finally, Hertz and Lighthart contend that the Aucone report calculates damages based upon information that was concealed by Luzenac during the discovery process. Hertz and Lighthart insist that they never received through discovery various documents that were provided to Luzenac's expert. According to counsel, "those documents were never to disclosed to [Hertz and Lighthart] as in any way related to Luzenac's damages." *See* Transcript of February 9, 2006 Hearing, at 5. Hertz's counsel concedes that "some of these documents were among the thousands of documents that were produced to us in discovery," but argues that "they were not disclosed in such a way that we could have possibly understood that they had any relation to Luzenac's damages." *Id.* at 5-6.

Luzenac contends that the materials identified in Mr. Aucone's report were available to Hertz during the discovery phase of the litigation and were used by his counsel during depositions. *See* Transcript of February 9, 2006 Hearing, at 48. Luzenac's attorney also claims that

> we have told the plaintiff repeatedly that we had lists of Luzenac documents--or we had documents in storage that contained sales files for various customers. And we gave her the list of those files. We gave her the list of those boxes. And we asked her to come and make arrangements to inspect them. And she, to this date, has not. We did that back in April.

*See* Transcript of February 9, 2006 Hearing, at 49.

The court is not in a position to determine whose factual account is correct. It may be that Hertz and Lighthart could have been more proactive in reviewing documents made available for inspection. However, Luzenac had an independent obligation under Rule 26(a)(1)(C) to "make available for inspection and copying as under Rule 34 the documents or other evidentiary materials ... on which [it damage computations are] based, including materials bearing on the nature and extent of injuries suffered." Only Luzenac was in a position to identify those particular

documents. Offering to provide access to a mass of undifferentiated materials does not suffice under Rule 26(a)(1)(A), any more than it would under Rule 33(d). *See* Fed.R.Civ.P. 33(d) (where an answer to an interrogatory may be derived or ascertained from business records of the responding party, that party "may specify the records from which the answer may be derived or ascertained," however, the "specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be ascertained.").

*II. Luzenac's Motion to Preclude Evidence of Damages*

**\*15** Luzenac's Motion to Preclude Evidence of Damages not Previously Disclosed (Document # 192) was filed on February 16, 2006. [FN8] In that motion, Luzenac argues that Hertz and Lighthart failed to comply fully with their disclosure obligations under Fed.R.Civ.P. 26(a)(1)(C), and thereafter provided responses to written discovery that were deficient. More specifically, Luzenac America contends that Hertz and Lighthart failed to disclose in a timely manner that they were seeking damages for lost sales in the fumed silica market and the corrosion-resistant primers market. Luzenac insists that it was unaware of these damage components until it received a written report from Richard Whalen on October 3, 2005.

> FN8. This court indicated during the hearing on February 9, 2006 that Luzenac America could file its own motion to strike. Given the acrimonious history between these parties and their counsel, the court saw little reason to believe that further discussions between counsel pursuant to D.C.COLO.LCivR 7.1A would be productive.

Not surprisingly, Hertz and Lighthart dispute the legal and factual underpinnings of Luzenac's motion. Hertz and Lighthart claim that they fully complied with their disclosure and discovery obligations, and dismissed Luzenac's motion as a transparent attempt to retaliate for their earlier Motion to Preclude Evidence of Damages. As evidence of that retaliatory purpose, Hertz and Lighthart point to Luzenac's request

that "whatever sanctions [are imposed on Luzenac America] should also be imposed on Hertz and Lighthart." *See* Hertz's and Lighthart's Response in Opposition, at 2.

A. *Hertz's Damage Disclosures*

Hertz served his initial Rule 26(a)(1)(C) disclosures on June 24, 2004. As of that date, the operative pleading was Hertz's Complaint for Declaratory Judgment, filed on August 8, 2003, which requested a judicial declaration that Plaintiff "has not taken or used any trade secrets belonging to Luzenac" and an "injunction prohibiting Luzenac from accusing Hertz of misappropriating its trade secrets and from further interfering with his contractual relations with IMI Fabi and other contractual relations." *See* Complaint for Declaratory Judgment, at 2. Hertz's initial disclosures acknowledged an intention to amend the original Complaint to include other claims. In anticipation of those claims, Hertz identified the following specific damage categories:

   (1) past and future estimated business losses due to Luzenac's interference with IMI Fabi contract;
   (2) moving expenses incurred in mitigation efforts;
   (3) compensatory damages (humiliation, reputational injury, etc.);
   (4) punitive damages equal to actual damages;
   (5) attorney fees and costs for retaliation and defense of trade secret misappropriation claim; and
   (6) prejudgment and postjudgment interest.

*See* Exhibit B, at 3-4, attached to Luzenac's Motion to Preclude Evidence of Damages.

Hertz argues that his June 24, 2004 disclosures fully complied with the requirements of Rule 26(a)(1)(A). According to Hertz, it was sufficient to identify the categories of damages he sought to recover, without providing a specific computation of damage amounts which would require the assistance of an expert. *But see City and County of San Francisco v. Tutor-Saliba Corp.,* 218 F.R.D. 219, 221 (N.D.Cal.2003) (holding that a broad or generic description of damages is insufficient under Rule 26(a)(1)(A); "the 'computation' of damages required by Rule 26(a)(1)(A) contemplates some analysis," and an assessment of damages in light of the information currently available to the disclosing party). Hertz argues that his October 25,

2004 responses to written discovery put Luzenac on notice that more detailed information regarding his damage computations would have to come from his expert witness.

**\*16** While Plaintiff relies on the decision in *Pine Ridge Recycling, Inc. v. Butts County,* 889 F.Supp. 1526, 1527 (M.D.Ga.1995), this court is not persuaded. The court in *Pine Ridge* provided little substantive analysis and cited no legal authority in support of its ruling. The plaintiffs in *Pine Ridge* identified specific categories of business losses, including "delayed revenue, time value of money prematurely invested, lost waste streams and costs of responding to actions brought for an improper purpose." The court in *Pine Ridge* particularly noted that additional disclosures were not immediately necessary in view of "the voluminous evidence on the issue of damages brought out at the preliminary injunction hearing." *Id.*

In contrast, in this case, Hertz's initial disclosures referred generally to "business losses." Those initial disclosures made no reference to the need for expert assistance in computing damage amounts. [FN9] More importantly, Hertz's initial disclosures were not proffered against the same background of information that had been contemporaneously available in *Pine Ridge.* Hertz's responses to Luzenac's first set of written discovery were served on October 25, 2004, four months after initial disclosures were provided. Luzenac specifically asked Hertz to describe in detail all the damages he was seeking, to describe each element of damage or component of recovery he was claiming, and to describe the manner in which each element or component was determined. In response to this interrogatory, Hertz cited his Rule 26(a)(1)(A) disclosures and stated his intention to provide an itemized report prepared by an expert witness on damages. *See* Exhibit D, at 7-8, attached to Luzenac's Motion to Preclude Evidence of Damages. *Compare Bradley v. J.E. Val-Mejias, M.D.,* 2001 WL 1249339, \*2 (D.Kan.2001) (holding that plaintiff could not respond to an interrogatory seeking the "precise nature and extent of your alleged injuries" by promising to provide the requested information in accordance with expert disclosure deadlines; plaintiff must respond to the interrogatory with whatever discoverable information he presently possesses); *Continental Illinois*

Case 2:03-cv-00294-DN Document 1055-2 Filed 05/11/07 PageID.17976 Page 15 of 23

Not Reported in F.Supp.2d                                                                    Page 14
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

*National Bank & Trust Co. v. Caton,* 136 F.R.D. 682, 687 (D.Kan.1991) (in response to an interrogatory that requested the precise amount of damages plaintiff had sustained, plaintiff could not respond by merely categorizing the damages sought and referencing various financial documents from which presumably, the information could be derived; held that defendant was entitled to a specific and substantive answer).

> FN9. The court is struck by the minimal information provided in these Rule 26(a)(1)(C) disclosures, considering Hertz's self-proclaimed experience as a "paint chemist, a business consultant, and a published expert in silicone chemistry." *See* Amended Complaint, at ¶ 5.

I further note that Hertz's initial disclosures did not identify any documents or other evidentiary materials bearing on the nature or extent of these damage categories, notwithstanding the references to "past business losses" and "moving expenses incurred." That omission is contrary to the requirements of Rule 26(a)(1)(C). *See Kleiner v. Burns,* 2000 WL 1909470, *2 (D.Kan.2000) (finding a violation of Rule 26(a)(1)(C) where plaintiff's disclosures failed to affirmatively state that plaintiff did not possess additional documents or evidentiary material upon which her damage claims were based).

*17 On July 27, 2004, Hertz filed his Amended Complaint which alleged, *inter alia,* that on August 5, 2003, Luzenac's counsel sent a letter accusing Hertz of improperly using proprietary or confidential information belonging to Luzenac and threatening legal action. *See* Amended Complaint, at ¶ 9. The Amended Complaint further alleged that a copy of this letter was sent to IMI Fabi. *Id.* According to Hertz, "after receiving the communications described above from Luzenac and Luzenac America, IMI Fabi ceased performing under its contract with Hertz." *Id.* at ¶ 14. There is no indication in the record that Hertz served supplemental Rule 26(a)(1)(C) disclosures after filing his Amended Complaint on July 27, 2004.

Rule 26(e)(1) requires a party to supplement his initial disclosures "at appropriate intervals." On October 25, 2004, Hertz advised Luzenac that he would provide a detailed assessment of his damage claims by the deadline then established for expert reports. Initially, Rule 26(a)(2)(B) expert disclosures were due on or before March 31, 2005. *See* Scheduling Order, dated January 5, 2005. That deadline was later extended to October 1, 2005. In fact, Hertz provided Mr. Whalen's damages report approximately 16 months after serving his Rule 26(a)(1)(C) disclosures and 12 months after responding to Luzenac's first set of written discovery. Given the policy objectives underlying Rule 26(a)(1) disclosures, the court is hard-pressed to find that the passage of 16 months is consistent with the mandate to supplement at "appropriate intervals." In this case, Hertz initially disclosed that he was seeking damages for "past and business losses." While the court can appreciate that expert assistance might be necessary to compute "future losses," those losses presumably became more concrete with the passage of time and more properly characterized as "past losses." The court would also presume that Mr. Hertz and his counsel had more access to relevant business records after IMI Fabi was joined as a third-party defendant on April 1, 2005.

Luzenac argues that Hertz's damage disclosures were deficient in light of the deposition testimony provided by Mr. Hertz and Mr. Whalen. Defendant points to Mr. Whalen's report which presents sales projections for Genera "based upon discussions with Mr. Hertz," as well as "research" and "estimates" provided by Mr. Hertz. *See* Exhibit A, at V-3 and V-4, attached to Luzenac's Motion to Preclude Evidence of Damages. During his deposition on December 16, 2005, Mr. Whalen also referred to assumptions that were based, in part, on discussions with Mr. Hertz, Lane Lighthart and Carl Kollmar, another former Luzenac employee. Mr. Whalen conceded that many of the sales numbers that he used to prepare his report were "based on discussions with Mr. Hertz because they're unverifiable elsewhere." *See* Exhibit G, at 30 and 51, attached to Luzenac's Motion to Preclude Evidence of Damages.

*18 I have not been provided with any excerpts from Hertz's depositions on October 26, 2004 and March 21, 2005 which make reference to Plaintiff's research or estimates as to future applications of Genera or the sales potential for Genera. However, Plaintiff had an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 15
Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

obligation to supplement his Rule 26(a)(1)(C) dam-
age computations unless the additional information
had otherwise been provided during the discovery
process or in writing. Obviously, Hertz cannot satisfy
the latter condition by pointing to his October 25,
2004 response to Luzenac's interrogatory which
asked Hertz to describe "each element of damage or
component of recovery" he was claiming and "the
manner in which each element or component was de-
termined." The same information that Hertz provided
to Mr. Whalen would seem to be responsive to this
interrogatory. Hertz had a continuing obligation un-
der Rule 26(e)(2) to amend his interrogatory response
to the extent his response was "incomplete or incor-
rect." *See* Fed.R.Civ.P. 26(e)(2). I do not believe that
Luzenac should have been required to wait more than
12 months to learn that Hertz had certain estimates
and research "bearing on the nature and extent of in-
juries suffered," *see* Fed.R.Civ.P. 26(a)(1)(A), or on
the "manner" in which his damages were computed
or determined. In support of that determination, I
note that Hertz's discovery responses and disclosures
were subject to the "reasonable inquiry" obligation
imposed by Rule 26(g). *See* Fed.R.Civ.P. 26(g)(1)
and (2).

Echoing an argument raised by Luzenac, Hertz con-
tends that supplementation of his Rule 26(a)(1)(C)
disclosures was not required since Luzenac had re-
ceived through discovery documentation showing
that Hertz and IMI Fabi sought to sell Genera as a
fumed silica replacement. Hertz argues that Luzenac's
own documents contemplated marketing silane
treated talc as a replacement for fumed silica. He fur-
ther argues that Luzenac knew that Mistron 604AV
was sold in the corrosion resistant coating market,
and, therefore, should have anticipated that Genera
would also be sold to that market.

Hertz's interpretation of Rule 26(e)(1) is no more per-
suasive than Luzenac's. Both parties presume that
supplementation of Rule 26(a)(1)(C) disclosures is
not necessary if an opposing party is generally aware
of relevant documents produced in discovery.
However, Rule 26(a)(1)(C) requires a party to af-
firmatively disclose "a computation of any category
of damages" *and* the specific "documents or other
evidentiary material ... on which such computation is

based." Common sense suggests that the same degree
of specificity is required under Rule 26(e)(1). Rules
26(a)(1) and 26(e)(1) seek to accelerate the exchange
of essential information and eliminate surprise. The
court cannot accept an interpretation of Rule 26(e)(1)
that would undermine these objections. *See Santiago
v. Furniture Chauffeurs, Piano Movers, Packers and
Handlers Local 705, 2001 WL 11058 *7
(N.D.Ill.2001)* ("civil litigation is not a game of hide-
the-ball").

**\*19** Based upon the record before the court, I find
that Hertz failed to fully discharge his obligations un-
der Rules 26(a)(1)(C) and Rule 26(e)(1) and (2).

B. *Lighthart's Damage Disclosures*

In his Counterclaims filed on May 23, 2005, Lane
Lighthart alleged that he entered into an agreement
with Sanford Hertz in December 2002, pursuant to
which he would receive a percentage of profits from
Hertz's agreement with IMI Fabi in exchange for
providing Hertz and IMI Fabi with marketing inform-
ation. *See* Lighthart Counterclaims, at ¶ 7. Lighthart
contends that Luzenac's claims were brought to inter-
fere with Hertz's and Lighthart's relationship with
IMI Fabi. *Id.* at ¶ 10. Lighthart further alleges that
Luzenac "caused Mr. Hertz not to perform fully and/
or to delay performing the contract with Mr.
Lighthart," and that this "interference with the con-
tract caused Mr. Lighthart losses and damages, as set
forth above." *Id.* at ¶¶ 14 and 16. Lighthart's claim for
retaliation under Title VII contains the same general
references to "damages." *See* Lighthart's Second
Amended Counterclaims (Document # 106), at ¶ 32.

Lighthart served his initial Rule 26(a)(1)(C) disclos-
ures on May 13, 2005. In those disclosures, Lighthart
indicated that he was seeking "all damages sought in
his Complaint," but also stated that a precise calcula-
tion of those losses would require "additional discov-
ery and expert opinion." *See* Exhibit C, at 2, attached
to Luzenac's Motion to Exclude Evidence of Dam-
ages. As previously noted, a general reference to "all
damages sought" does not equate to the "computa-
tion" required by Rule 26(a)(1)(C). Lighthart's dis-
closures also were deficient by failing either to
identify the documents or other evidentiary materials

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)
**(Cite as: 2006 WL 994431 (D.Colo.))**

upon which his damages are based or to specifically state that such documents are not in his possession, custody or control.

Lighthart insists that his initial Rule 26(a)(1)(C) disclosures were sufficient because they "provided all the information that was in his possession." However, that representation was not specifically conveyed in the initial disclosures. I am not aware that Lighthart ever provided Rule 26(e)(1) supplemental disclosures. Lighthart clearly had a duty to supplement his earlier initial disclosures to the extent they were incomplete or inaccurate, unless the supplemental information was provided in writing or through the usual discovery process. I do not find that Lighthart's discovery responses were adequate to discharge his obligations under Rule 26(e)(1).

Lighthart responded to Luzenac's First Set of Discovery on November 15, 2005. In response to an interrogatory that requested a description of "all damages or declaratory relief you are seeking," along with a description of "each element of damage or component of recovery you seek" and the "manner in which each element or component of the calculation was determined," Lighthart stated that he

> **\*20** seeks all damages requested in his counterclaims ... A detailed calculation of his economic and lost profit damages is contained in the Fed.R.Civ.P. 26(a)(2) disclosure of Rich Whalen. Mr. Lighthart's claim for compensatory and punitive damages defines precise calculation and will be decided by the jury.

*See* Exhibit 6, at 7-8, attached to Hertz's and Lighthart's Response in Opposition. In the same set of discovery requests, Luzenac asked for production of all documents upon which Lighthart relied "concerning [his] individual damages in this action." Lighthart responded that "all responsive, non-privileged documents are currently in Luzenac's possession" and further stated that "the Fed.R.Civ.P. 26(a)(2) disclosure of Rich Whalen either contains or references all responsive documents." *Id.* at 17.

These discovery responses were inadequate to satisfy Rule 26(a)(1)(C) or Rule 26(e)(1). During his December 2, 2005 deposition, Lighthart testified that he had a verbal agreement and understanding with

Hertz that Lighthart would receive 40% of any compensation Hertz received from IMI Fabi in connection with sales of the Genera product. *See* Transcript of Lighthart Deposition, at 27 and 51-52, attached as Exhibit 5 to Hertz's and Lighthart's Response in Opposition. That percentage was not specifically alleged in Lighthart's original Counterclaims or any subsequent amendments. At a minimum, I would have expected Lighthart to disclose this information under Rule 26(a)(1)(C). This information was omitted from Lighthart's discovery responses of November 15, 2005. Those same discovery responses stated that "a detailed calculation" of Lighthart's economic and lost profit damages "is contained in the Fed.R.Civ.P. 26(a)(2) disclosure of Rich Whalen." However, Lighthart conceded during his deposition on December 2, 2005 that he is not specifically referenced by name in the Whalen expert report, and further admitted that the Whalen report does not describe Lighthart's verbal agreement with Mr. Hertz. *See* Transcript of Lighthart Deposition, at 51-53, attached as Exhibit 5 to Hertz's and Lighthart's Response in Opposition. It is difficult to see how the Whalen report completely satisfies Lighthart's obligations under Rule 26(a)(1)(C).

In summary, the court finds that each of the moving parties failed to comply with Rule 26(a)(1)(C) and Rule 26(e)(1).

*III. Sanctions*

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. *See* Fed.R.Civ.P. 37(c)(1). The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D.Kan.1995).* While Rule 37(c)(1) is written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed. *See Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985, 993* (10th

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)

**(Cite as: 2006 WL 994431 (D.Colo.))**

Cir.1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

*21 For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.,* 162 F.R.D. at 680. "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.,* 170 F.3d at 993.

For the reasons previously noted, I conclude that the parties' failure to comply with their obligations under Rules 26(a)(1)(A) and 26(e)(1) was not substantially justified. More problematic is whether these inadequate disclosures were harmful for purposes of Rule 37(c). Generally, non-compliance is harmless only when there is no prejudice to the opposing party. *Cf. Lintz v. American General Finance, Inc.,* 1999 WL 619045, *6 (D.Kan.1999). In weighing the element of prejudice or surprise, the court must take heed of the purposes underlying Rule 26(a)(1). Mandatory disclosures must be sufficiently detailed to allow opposing parties to make intelligent decisions regarding the discovery process. *Cf. D.L. v. Unified School District # 497,* 270 F.Supp.2d 1217, 1241 (D.Kan.2002) (finding prejudice to the extent that plaintiffs' failure to make required Rule 26(a)(1) disclosures undermined defendants' ability to conduct discovery as to the non-disclosed witnesses), *judgment vacated on other grounds,* 392 F.3d 1223 (10th Cir.2004), *cert. denied,* --- U.S. ----, 125 S.Ct. 2305, 161 L.Ed.2d 1090 (2005). In that respect, all parties to this action have been "prejudiced." The Tenth Circuit also recognizes that delay and mounting attorneys fees can equate to prejudice. *See Jones v. Thompson,* 996 F.2d 261, 264 (10th Cir.1993). The latter consideration carries less weight in this case given the attorney fees that must have been generated by the parties' vituperative wrangling through the discovery process.

As for the second and third *Woodworker's* factors, the court recognizes that the original trial date was vacated for reasons completely unrelated to the pending motions and alleged disclosure violations. 170 F.3d at 993. *See* Order of March 22, 2006 (Document # 249) (vacating the May 1, 2006 trial date based upon pending cross motions for summary judgment and extensive briefing relating to Luzenac's motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The absence of a fixed trial date affords a greater ability to cure any prejudice to the parties and minimizes the possibility of future disruption of the District Court's docket. *Cf. Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 378 (D.Md.1999) (declining to impose an extreme sanction based upon the untimely disclosure of an expert witness, in part because the lack of a trial date removed the possibility that defendants would be surprised at trial); *Second Chance Body Armor, Inc. v. America Body Armor Inc.,* 177 F.R.D. 633, 637 (N.D.Ill.1998) (the extreme sanction of striking affirmative defenses was unwarranted because plaintiff had received the requested information and there was no pending trial date).

*22 Finally, with respect to the fourth factor, the parties are quick to blame each other of bad faith or willful disclosure violations. I see nothing to be gained by attempting to assign "degrees" of fault

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)

**(Cite as: 2006 WL 994431 (D.Colo.))**

among the parties. Litigants should not be permitted to pay lip service to their disclosure obligations and then avoid responsibility by suggesting an opponent is "more" blameworthy.

After carefully considering the *Woodworker's* factors and the objectives underlying Rule 37(c), I find that the sanctions specifically requested in the parties' motions are not warranted under the facts in this case. *See Comuso v. National Railroad Passenger Corp., 1998 WL 800342 \*2 (E.D.Pa.1998)* (holding that the importance of the excluded testimony is also an important final consideration in considering Rule 37(c) sanctions). While counsel should have been more diligent in providing the required disclosures, all parties are now on notice of the damages sought in this action. *See Texas A & M Research Foundation v. Magna Transportation, Inc., 338 F.3d 394, 402* (5th Cir.2003) (while finding that plaintiff had failed to explain its deficient disclosures, held that evidence was properly admitted at trial since any prejudice was cured by defendant's ability to prepare for a trial that was set approximately a month after the belated disclosures); *Scott v. IBM Corp., 196 F.R.D. 233, 247 n. 9 (D.N.J.2000)* (noting that exclusion of evidence under Rule 37(c) is not appropriate unless the party failed to disclose or supplement in bad faith or unless the resulting prejudice cannot be cured).

Finally, I will not provide either side with an award of fees and costs. Such an order would effectively reward one side or the other for violations that differ only by degree. *Cf. Jones v. American General Life and Accident Insurance Co., 2002 WL 32073037, \*7 (S.D.Ga.2002)* (holding that it would be unjust to award fees and costs to either party after concluding that plaintiff's and defendant's counsel had both contributed to the protraction of their discovery dispute); *Board of Education of Evanston Township v. Admiral Heating and Ventilating, Inc., 104 F.R.D. 23, 37 (N.D.Ill.1984)* (holding that the interests underlying Rule 37 were best served by letting the expenses associated with the parties' discovery dispute rest where they had fallen). The court also is mindful of the parties' failure to take timely action to remedy deficient disclosures. The cases cited in this Memorandum Order were not difficult to find or analyze. The parties complain of their opponent's failure to

comply with Rule 26(a)(1)(C), but apparently did not perceive shortcomings so significant as to warrant judicial intervention. Any request for sanctions is also substantially undercut by the parties' failure to affirmatively seek relief in a timely manner. By way of example only, I note that Hertz and Lighthart filed their Joint Motion well after the Aucone expert report was served and the discovery deadline had passed. *Cf. White v. Meador, 215 F.Supp.2d 215, 221 (D.Me.2002)* ("[c]ounsel must at least give opposing counsel a timely opportunity to remedy omissions in the required designations before seeking assistance from the court in obtaining the necessary information which should also be done well before the close of discovery"); *Intercargo Insurance Co. v. Burlington Northern Santa Fe Railroad, 185 F.Supp.2d 1103, 1107 (C.D.Cal.2001)* (denying defendants' motion to strike expert designations after finding that defendants failed to seek to compel a more adequate disclosure within a reasonable period of time after the initial defective disclosure).

**\*23** Accordingly, for the foregoing reasons, Plaintiff and Counterclaim Defendant Hertz's and Third Party Defendant and Counterclaim Plaintiff Lighthart's Joint Motion to Preclude Evidence of Damages Not Previously Disclosed (Document # 166) and Luzenac's Motion to Preclude Evidence of Damages Not Previously Disclosed and to Strike Expert Witnesses (Document # 192), are DENIED. Each party shall bear their own fees and expenses. If any parties believe that additional, targeted discovery regarding damages is necessary, they may file an appropriate motion demonstrating good cause for the requested discovery. The costs of any additional discovery permitted by the court will be borne by the parties consistent with normal discovery procedures.

Not Reported in F.Supp.2d, 2006 WL 994431 (D.Colo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.                                                        Page 1
Not Reported in F.Supp., 1991 WL 319976 (E.D.Wis.)
**(Cite as: 1991 WL 319976 (E.D.Wis.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Wisconsin.
Jesselyn M. KARBON, a minor, by her guardian,
Rosemarie A. ROSE, Rosemarie A.
Rose, individually and as Mother of Jesselyn M. Kar-
bon, 340 S. Ellis Avenue,
Peshtigo, Wisconsin, Ronald A. Karbon, Father of
Jesselyn Karbon, 901 Aubin
Street, Peshtigo, Wisconsin, and Employers Health
Insurance Company, Green Bay,
Wisconsin, Plaintiffs,
v.
Gary Jerome TURNER, Address Unknown, and
North American Van Lines, 5001 U.S.
Highway 30 West, Fort Wayne, Indiana, a foreign
corporation, National Union
Fire Insurance Company, 70 Pine Street, New York,
New York, a foreign
corporation, and Lexington Insurance Company, 200
State Street, Boston,
Massachusetts, a foreign corporation, Defendants.
**No. 91-C-337.**

Dec. 16, 1991.

Bailey, Fishman & Leonard by Kenneth J. Fishman,
Boston, Mass., Coggins & Wolfe by Kim A.
Coggins, Marinette, Wis., for plaintiffs.

Hinshaw & Culbertson by Michael J. Pfau, Milwau-
kee, Wis., for defendants.

DECISION and ORDER
GORDON, Senior District Judge.

*1 On March 21, 1991, the plaintiffs commenced this
action in circuit court of Oconto County.   The com-
plaint alleged that defendant Gary Jerome Turner had
negligently operated a tractor-trailer which had col-
lided with a car occupied by plaintiff Jesselyn M.
Karbon.   The complaint also alleged that defendant
North American Van Lines, the owner of the trailor
unit driven by Mr. Turner, was vicariously liable for
Mr. Turner's negligence.   On April 8, 1991, the de-
fendants removed the action to this court on diversity
grounds.

A status conference was held in this action on August
27, 1991, at which time this court set November 18,
1991, as the deadline for identifying witnesses and
January 20, 1992, as the deadline for completing dis-
covery.   Prior to the status conference, the plaintiffs
had filed a motion for an expedited trial date;   the
court denied the plaintiffs' motion at the status con-
ference and set the case for trial in June 1992.

On November 18, 1991, the plaintiffs filed their "Pre-
liminary Proposed Witness List," along with a motion
for leave to amend the complaint and a motion for
leave to supplement the witness lists and to extend
the discovery deadline.   The plaintiffs' motions will be
granted, with the modifications set forth in this de-
cision.

Rule 15(a), Federal Rules of Civil Procedure,
provides that "leave [to amend a complaint] shall be
freely given as justice so requires."   The decision to
grant a motion to amend the pleadings is within the
court's discretion;   generally, such motions should be
granted unless the proposed amendment (1) would
result in undue delay;   (2) is made in bad faith or with
a dilatory motive;   or (3) would result in undue preju-
dice to the opposing party.   See Foman v. Davis, 371
U.S. 178, 182 (1962).

The plaintiffs' motion to amend the complaint re-
quests that they are allowed to add additional claims
against certain defendants.   Specifically, the
plaintiffs wish to add a claim for punitive damages
against the defendants Gary Jerome Turner and North
American Van Lines and to add a claim for negli-
gence directly against defendant North American
Van Lines.   In addition, should the court grant the
plaintiffs' motion to amend the complaint, the
plaintiffs' second motion requests that the court relax
the current scheduling order as follows:   (1) allow the
parties to supplement their witness lists until January
20, 1992, and (2) to extend the discovery deadline to
March 20, 1992.

In response, the defendants insist that the proposed
amendment and the request for a change in the
scheduling order would result in undue delay, undue

Not Reported in F.Supp., 1991 WL 319976 (E.D.Wis.)
**(Cite as: 1991 WL 319976 (E.D.Wis.))**

prejudice to them, and would interfere with the orderly administration of justice by this court. The defendants contend that the proposed amendment would cause undue delay insofar as it would require the court to relax its current scheduling order. Although relaxing the scheduling order may cause a delay in the completion of discovery and the identification of witnesses, the court is not convinced that the ultimate resolution of this matter would be unduly delayed by the proposed amendment. Thus, in the absence of any evidence that the proposed amendment would compromise the present scheduling of the trial in June, 1992, I find no reason to deny the proposed amendment.

**\*2** The defendants also assert that allowing the plaintiffs to amend their complaint would be unduly prejudicial to them insofar as they will have to investigate the plaintiffs' additional claims, identify additional witnesses to defend against the plaintiffs' additional claims, and depose over 150 witnesses, all before January 20, 1992--the existing deadline for completing discovery. Further, the defendants contend that allowing the plaintiffs to amend their pleading would interfere with the orderly administration of justice by this court insofar as the proposed amendment would extend the trial from two weeks to four weeks to accomodate all of the witnesses and address the plaintiffs additional claims.

Although the proposed amendment would require additional discovery by the plaintiffs and the defendants, the court is convinced that, without more, this is an inadequate basis on which to deny the plaintiffs' motion to amend the complaint. With the anticipated trial date--June 1992--approximately six months away, an adequate time to complete discovery is available to the parties; consequently, a relaxation of the scheduling order would not unduly prejudice the defendants nor would it interfere with the administration of justice. Accordingly, because the plaintiffs should be allowed fully to litigate their case, the court believes it the better exercise of discretion to grant the plaintiffs' motion to amend the complaint. Moreover, in order to ensure that both parties have an adequate opportunity to conduct discovery with respect to the additional claims alleged in the proposed amendment, the discovery deadline will be extended

to March 2, 1992.

The defendants also oppose the plaintiffs' applications because they believe the proposed amendment will result in more witnesses in a case which is already overburdened with them. The defendants' concern is justified and stems from the fact that the plaintiffs have already filed a "preliminary" witness list which identified 185 persons as witnesses for the plaintiffs and now request that they be allowed to supplement their already extensive witness list. The additional claims set forth in the plaintiffs' proposed amendment may require the parties to identify additional witnesses. It is my distinct impression that the number of witnesses now proposed in the plaintiffs' "preliminary" witness list (185) is already excessive. Accordingly, the plaintiffs will be required to serve and file a revised witness list that has been pruned *substantially* no later than February 3, 1992. The plaintiffs' revised witness list may designate witnesses who have not been previously identified in their earlier list.

In the event that the plaintiffs' revised witness list proposes over 15 witnesses, the plaintiffs will be required to specify for *each* of their proposed witnesses why the probative value of their proposed witness' testimony is not "substantially outweighed by ... considerations of undue delay or needless presentation of cumulative evidence." *See* Rule 403, Federal Rules of Evidence.

**\*3** The defendants' list of witnesses, which was filed on November 18, 1991, only designated 12 witnesses; the defendants will be allowed to serve and file a revised witness list no later than February 3, 1992. The defendants will be obligated to comply with the procedure described above if their witness list, as supplemented, designates over 15 witnesses.

In the event that the number of prospective witnesses remains as large (or larger!) as the present listings suggest, it is my intention to designate a special master to assist the court in fashioning the case for trial.

Counsel are hereby informed that a pre-trial conference will be conducted on March 11, 1992, at 11:00 a.m. in Courtroom 225.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 319976 (E.D.Wis.)
**(Cite as: 1991 WL 319976 (E.D.Wis.))**

Therefore, IT IS ORDERED that the plaintiffs' motion to amend the complaint be and hereby is granted, and the plaintiffs are directed to serve and file the amended complaint no later than Monday, December 30, 1991.

IT IS ALSO ORDERED that the plaintiffs' motion to allow the parties to supplement their witness lists and extend the discovery deadline be and hereby is granted in part.

IT IS FURTHER ORDERED that the plaintiffs and the defendants be and hereby are directed to serve and file their revised witness lists, in accordance with the guidelines set forth in this decision and order, no later than Monday, February 3, 1992.

IT IS FURTHER ORDERED that the discovery deadline be and hereby is extended to Monday, March 2, 1992.

IT IS FURTHER ORDERED that the parties be and hereby are directed to appear, by their respective counsel, at a pre-trial conference to be conducted on March 11, 1992, at 11:00 a.m. in Courtroom 225.

Not Reported in F.Supp., 1991 WL 319976 (E.D.Wis.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.