Brent O. Hatch (5715)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:   (801) 363-6666

David Boies (admitted pro hac vice)
Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200
Facsimile:   (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
Bank of America Tower – Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Devan V. Padmanabhan (admitted pro hac vice)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Plaintiff, The SCO Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC.<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>        Defendant/Counterclaim-Plaintiff. | **SCO'S SUR-SURREPLY MEMORANDUM IN FURTHER SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON IBM'S MOTION TO CONFINE**<br><br>Case No. 2:03CV0294DAK<br><br>Honorable Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................ 1

    I.     SCO WAS NOT OBLIGATED BY DECEMBER 2005 TO HAVE ITS
          EXPERTS FINISH THEIR ANALYSES OF THE MATERIAL THAT
          SCO IDENTIFIED AT THAT TIME AS MISAPPROPRIATED. ........................ 2

    II.    THE COURT ORDERS DID NOT CLEARLY REQUIRE SCO BY
          DECEMBER 2005 TO HAVE ITS EXPERTS FINISH THEIR
          ANALYSES OF THE MATERIAL THAT SCO IDENTIFIED AT THAT
          TIME AS MISAPPROPRIATED. ........................................................................ 4

    III.   SCO HAD IDENTIFIED BY DECEMBER 2005 THE MATERIAL SCO
          ALLEGED TO BE MISAPPROPRIATED. ........................................................ 7

          A.     IBM's Arguments Regarding IBM's Interpretation of the Word
                 "Material" Do Not Provide Any Support for the Magistrate Judge's
                 Order. .................................................................................................... 7

          B.     IBM's Arguments Regarding What Material SCO "Could Have"
                 Identified in the December 2005 Submission Are Incorrect. .................... 9

    IV.   IBM HAS NOT SUFFERED ANY "INCURABLE PREJUDICE"
          RESULTING FROM THE CONTENT OF SCO'S EXPERT REPORTS. ......... 11

          A.     There Is No Substantiation for IBM's assertion of Prejudice. .................. 12

          B.     The Record Belies IBM's Claim That SCO Spent "Years"
                 Developing The Theory of Copyright Infringement in Dr. Cargill's
                 Report. ................................................................................................. 15

          C.     IBM's Arguments Regarding the Work Necessary to Respond To
                 Dr. Cargill's Analysis Continue to Lack Any Basis. ................................ 17

V.      UNDER THE CIRCUMSTANCES AND GIVEN THE RECORD, THE
        EXCLUSION OF THE EVIDENCE AT ISSUE IN SCO'S EXPERT
        REPORTS IS INAPPROPRIATE. ...................................................................... 20

CONCLUSION.............................................................................................................................. 23

## TABLE OF AUTHORITIES

### Cases

Baystate Technology, Inc. v. Bentley Systems, Inc.,
    946 F. Supp. 1079 (D. Mass. 1996) .................................................................... 13

Community for Creative Non-Violence v. Reid,
    490 U.S. 730 (1989)........................................................................................ 13

Computer Assocs. Int'l, Inc. v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992)............................................................................ 21

Gates Rubber Co. v. Bando Chem. Indus. Ltd.,
    9 F.3d 823 (10th Cir. 1993) ........................................................................ 9, 21

Getaped.Com, Inc. v. Cangemi,
    188 F. Supp. 2d 398 (S.D.N.Y. 2002).............................................................. 14

Mitel, Inc. v. Iqtel, Inc.,
    124 F.3d 1366 (10th Cir. 1997) ..................................................................... 13

Mitel, Inc. v. Iqtel, Inc.,
    896 F. Supp. 1050 (D. Colo. 1995)................................................................. 13

### Other Authorities

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A][1][e] (2006)......... 21

Plaintiff, The SCO Group, Inc. ("SCO"), respectfully submits this Sur-Surreply Memorandum in Further Support of its Objections to the Magistrate Judge's Order of December 21, 2006, granting the motion of Defendant, International Business Machines Corp. ("IBM"), to Confine SCO's Claims to, and Strike Allegations in Excess of, the Final Disclosures.

## PRELIMINARY STATEMENT

The parties have now argued back and forth, and back and forth, on the propriety of the Magistrate Judge's Order.  IBM's latest volley confirms that neither IBM's arguments nor the record below support the severe sanction the Magistrate Judge imposed.  The result would be the same even if, contrary to fact, IBM had spent the considerable length of its surreply brief fairly confronting the main arguments SCO has raised.  IBM's efforts to avoid addressing the merits of the evidence in support of SCO's claims are apparent.  In an effort at some brevity and to minimize further redundancy, SCO organizes this Memorandum around the findings that would be necessary to support the Magistrate Judge's Order, but that find no support in the record or the facts.

## ARGUMENT

IBM does not dispute that, pursuant to this Court's Order dated November 29, 2006, the Court applies a de novo standard of review here.  (SCO Reply at 2.)  IBM's mistaken assertion (at 2) that the Magistrate Judge's Order "does not turn on a legal conclusion that is contrary to law" is consistent with IBM's failure to reconcile the inconsistency between the Order and the controlling copyright law.  (SCO Reply at 7-8; see also Part III, below.)

I.   **SCO WAS NOT OBLIGATED BY DECEMBER 2005 TO HAVE ITS EXPERTS FINISH THEIR ANALYSES OF THE MATERIAL THAT SCO IDENTIFIED AT THAT TIME AS MISAPPROPRIATED.**

The Magistrate Judge's Order confuses the obligation to disclose misused material with the accumulation of supporting evidence and with the theories of literal and non-literal infringement that are naturally found in expert reports, and are clearly allowed by the law in this Circuit.  (SCO Reply at 3-10.)

IBM insists (at 3) that it has never argued "that the material at issue should be stricken because SCO failed to 'complete' its expert analyses in its Final Disclosures," but that is a straw man.  SCO does not argue that IBM made such an express statement, only that the unavoidable substance and meaning of IBM's <u>post hoc</u> arguments and of the Magistrate Judge's Order was to create such a requirement.

In footnote 3, for example, IBM claims that "SCO inflates the volume of the listed material," contending that SCO's identification of JFS concerns only "10,374" lines of AIX code, rather than 160,000 lines.  IBM's argument begs the question.  A fundamental corollary to SCO's arguments in its Objections is that in identifying JFS in its December 2005 Submission as material that IBM has misused, SCO put at issue the approximately 160,000 lines of AIX code comprising JFS.  IBM can argue otherwise only by presupposing that the Magistrate Judge's Order is correct.

Similarly, in footnote 4, IBM addresses SCO's discussion of the record evidence showing that IBM sponsored and the Magistrate Judge adopted a standard that goes well beyond this Court's requirement that SCO identify by December 2005 the material that IBM misused or misappropriated.  Unable to deny the facts in the record regarding the breadth of the Magistrate

2

Judge's Order, IBM insists that those facts "plainly relate to 'allegedly misused material'" and not other content in SCO's experts' reports.  The argument not only brushes aside the parties' dispute regarding what constitutes such "allegedly misused material," but also ignores the revealing discussion in the record regarding the meaning and import of the Magistrate Judge's Order.  SCO argues that the Magistrate Judge created a new and overly broad standard, illustrated by the Magistrate Judge's statement that if "it wasn't disclosed" by the deadline on December 22, 2005, "then it's out."  There is nothing "plain" about that statement to support IBM's argument.

SCO has further demonstrated that where the premise of the Magistrate Judge's June 2006 Order and this Court's Order affirming it is the requirement that SCO provide "version, file and line" information about misused material, but where Tenth Circuit law makes clear that such information is not part of SCO's legal theory of copyright infringement, there is no sensible argument that the July 2005 Order required disclosures of such theories of non-literal infringement."  (SCO Reply at 7-8.)  It is true (as IBM says) that the July 2005 Order does not address non-literal infringement under the controlling law, but more to the point, the Magistrate Judge and IBM interpreted and applied this Court's July 2005 Scheduling Order in such a way that the Order could <u>not</u> have required SCO to disclose such theories by December 2005.

IBM confirms its failure to address the argument when it says (at 8) that SCO's failure to identify the non-literal elements of Dr. Cargill's analysis "at all" in December 2005 means that SCO's argument "falls flat."  In response to SCO's demonstration that this Court's Order could not reasonably be read both to require SCO to identify all material by version, file and line coordinates <u>and</u> to identify the bases for non-literal information that cannot be identified by

version, file and line coordinates under the controlling law, IBM thus argues:  SCO should have

identified the bases for non-literal infringement.  If the argument makes no sense, it is because

IBM immediately acknowledges (at 8) that the foundation for its argument is <u>not</u> this Court's

July 2005 Order, but rather IBM interrogatories.  SCO has already shown, however, that where

the court has provided for a period of specific expert discovery, including expert reports and

depositions, and interrogatories touch on expert issues, it is the specific period of expert

discovery that serves as the means of interrogatory responses.  (SCO Reply at 16.)  IBM declines

to address this argument, choosing instead (at 12-13) to attack the straw man that SCO

supposedly reserves the right to identify additional evidence supporting its identification of

allegedly misused material "by way of deposition designations or in its part of the final pretrial

order."  SCO has never made such an argument, and it does not follow from the controlling

precedent that SCO has cited.

## II.     THE COURT ORDERS DID NOT CLEARLY REQUIRE SCO BY DECEMBER 2005 TO HAVE ITS EXPERTS FINISH THEIR ANALYSES OF THE MATERIAL THAT SCO IDENTIFIED AT THAT TIME AS MISAPPROPRIATED.

IBM continues to offer its various characterizations of what the July 2005 Scheduling

Order required of SCO, and SCO has explained why the inferences upon which those

characterizations are based are incorrect, but the main point remains that IBM cannot cite any

language in any Order clearly, expressly, or unambiguously (let alone reasonably) requiring that

all expert analysis of the legal theory of copyright infringement had to be included in the

December 2005 Submission.  (SCO Reply at 7-8.)  The reasonable interpretation is to the

contrary, because there were discrete dates for the December 2005 Submission and the May

2006 Expert Reports.

In footnote 5, IBM illustrates two fundamental grounds for SCO's Objections in this area. IBM acknowledges that not all "expert analyses" had to be included in SCO's December 2005 Submission, but maintains that such analyses could only "support claims as to allegedly misused material and allegations of infringement identified with specificity" in those Disclosures. One, no matter how many times IBM argues to the contrary, there is no clear distinction between the content of "expert analyses" and the identification of "allegedly misused material"; there certainly is not a distinction sufficiently clear to warrant the severe sanction the Magistrate Judge imposed or to justify IBM's claims of bad faith and sandbagging on SCO's part. Two, in trying to argue otherwise, IBM has to resort to using language that does not appear in this Court's July 2005 Scheduling Order: nowhere does that Order say that SCO had to identify by December 2005 all facts and analyses in support of SCO's "allegations of infringement." That is IBM's language. IBM repeats the argument elsewhere in its surreply, arguing (at 7) without any citation to any Court Order that it was "perfectly clear" that SCO was obligated "to describe in detail its allegations and evidence of infringement." IBM thus underscores the post hoc requirement that SCO was supposedly obligated to detail by December 2005 the content of its experts' analyses of SCO's claims of infringement. The fact remains that there is no sensible argument that SCO could have known from the July 2005 Order – even if, contrary to fact, and the evidence in the record, SCO had the completed expert analyses in hand – what part of an expert's Linux copyright analysis (for example) would have to be disclosed in December 2005 as opposed to in his expert report.

IBM's own attempt to illustrate SCO's supposed obligations illustrates the foregoing fundamental error in IBM's arguments. After announcing that the Court had made "perfectly

clear" what SCO was obligated to do, IBM says (at 7-8) it follows that SCO was obligated "to explain in detail how, when and why IBM supposedly infringed SCO's alleged copyrights with respect to the allegedly misused material identified (e.g., by shipping it to customer *x*, or contributing the code to Linux file *y*)." Yet IBM makes this assertion without citation and no such language appears in the July 2005 Scheduling Order.

In then arguing (at 8) that SCO should have at least tried to disclose the non-literal elements of its legal theory of copyright infringement, IBM presupposes that its accusations of "bad faith" and "sandbagging" on SCO's part is truth – that SCO had the analysis of such elements in hand but decided not to disclose them, or that SCO thought it was supposed to have completed such analysis by December 2005 in the first place. And although IBM draws all the inferences in its favor, the fact that SCO did not try to describe the non-literal elements of its legal theory of copyright infringement by December 2005 equally allows the inference that SCO did not believe it was obligated to do so. As noted, moreover, to the extent IBM cross-references its interrogatories in making these arguments, SCO has demonstrated that where the court has provided for a period of specific expert discovery, including expert reports and depositions, and interrogatories touch on expert issues, it is the specific period of expert discovery that serves as the means of interrogatory responses. (SCO Reply at 16.)

IBM also continues to rely (at 24-26) on the Magistrate Judge's June 2006 Order, but that Order adds nothing to the core question of whether SCO's expert opinions, analyses and support constitute "misused material" within the meaning of the July 2005 Order, and of course the June 2006 Order could not have given SCO any notice of what material it supposedly was obligated to include in its December 2005 Submission. To the extent IBM argues that the June 2006 Order

constitutes any support for what was supposedly required of SCO, that reliance ignores the fundamental requirement that a party in SCO's position have been put on notice of what the court order at issue required.  (SCO Reply at 29-30.)

### III.    SCO HAD IDENTIFIED BY DECEMBER 2005 THE MATERIAL SCO ALLEGED TO BE MISAPPROPRIATED.

There is a distinction between "allegedly misused material" and "material in support of SCO's assertion that previously identified material was misused," and the Magistrate Judge's Order fails to acknowledge it.  (SCO Reply at 6-7.)

A.    IBM's Arguments Regarding IBM's Interpretation of the Word "Material" Do Not Provide Any Support for the Magistrate Judge's Order.

IBM accuses SCO (at 4) of "sophistry" and makes imaginative reference to Through the Looking Glass, but there is no substance to the accusation.

IBM first (at 4-5) re-orders the words in the July 2005 Scheduling Order and says that that "the term 'allegedly misused material' is simply material that a party contends has been misused."  IBM uses as a supposed example of that tautology the fact that in its summary judgment papers SCO noted that it "alleges infringement of non-literal elements that pervade SVr4."  The quotation does not say that any material in SVr4 constitutes allegedly misused material; it relates to SCO's legal theory under the copyright law that the more recent versions of Linux infringe on SCO's copyrights in SVr4.  IBM argues in note 7 that Dr. Cargill's report "is replete with allegations of improper copying not mentioned in SCO's Final Disclosures," but that is merely IBM's label for part of Dr. Cargill's expert analysis of why Linux is substantially similar to SVr4.

IBM then says (at 5):  "If the material at issue were not 'allegedly misused material', then SCO would have no reason to object to the Order."  This assertion is non-sensical:  SCO has every reason to object to the Order by virtue of its exclusion of entire categories of SCO's experts analyses.  For IBM to argue that the very existence of SCO's Objections supports IBM's opposition to those Objections is circular.  In further contending (at 5) that SCO would not "have any reason to seek to amend its Final Disclosures" if the material at issue were not "allegedly misused material," IBM chooses to ignore the entire premise of the Motion to Amend – namely, that if the Court were to decide that the material at issue is "allegedly misused material," then SCO has demonstrated grounds for the amendment.

IBM then argues (at 5-6) that SCO's decision not to enter into a stipulation that IBM proposed is evidence that the excluded portions of the expert reports constituted "allegedly misused material" within the meaning of the July 2005 Order.  The language of the first draft stipulation that IBM proposed (1) ambiguously adopted, in effect, IBM's argument that the reports of Mr. Rochkind and Dr. Ivie included "new material," and (2) declined to incorporate the questions surrounding Dr. Cargill's report at all, thus undermining the utility of the stipulation.  IBM responded to SCO's efforts to cure such problems by proposing a stipulation that only reintroduced, into the language of the stipulation, the fundamental question of what SCO had or had not "specifically identified in SCO's Final Disclosures."  These proposed stipulations would merely have insured a continued fight between the parties regarding what the stipulation meant in saying that SCO would not in the future "contend that such materials have been misused by IBM."  Did IBM mean that SCO could not rely on the material in support of its expert analyses?  That SCO could not separately cite such "material" for any purpose

whatsoever?  That such material could not constitute any part of SCO's theory of damages?  Or that SCO just could not literally say to the Court or the jury that certain "material" has been "misused by IBM"?  There were no clear answers to these questions forthcoming from IBM. What <u>did</u> become clear in the negotiations of the stipulation was the stipulation IBM was willing to sign would have created at least as many problems as it solved.

      B.     IBM's Arguments Regarding What Material SCO "Could Have"
                <u>Identified in the December 2005 Submission Are Incorrect.</u>

IBM insists (at 9) that SCO could have identified the non-literal elements of its analysis of Linux copyright infringement by source code coordinates, but in doing so fails to address SCO's showing since its Opening Memorandum (as at 12-14) that under the controlling Tenth Circuit analysis, IBM is wrong.  Instead of addressing that case law, IBM points to evidence in the record merely confirming that the "source code" level of abstraction under the controlling law, <u>see, e.g.</u>, <u>Gates Rubber Co. v. Bando Chem. Indus. Ltd.</u>, 9 F.3d 823, 835 (10th Cir. 1993), is among the "necessary and reasonable evidence" for SCO to "support its claims and to oppose IBM's Tenth Counterclaim."  There are of course multiple levels of abstraction under that test.

IBM claims (at 9-10) that "SCO acknowledged that the material subject to <u>any</u> allegation of infringement can be identified by version, file and line information, regardless of whether the alleged infringement is said to be line-by-line literal infringement or non-literal infringement." For support, IBM points (at 10) to SCO's statements from 2004 indicating that it would engage in a line-by-line analysis of UNIX and Linux to in order to "obtain all necessary and reasonable evidence to support is claims."  This statement has nothing to do with whether infringed non-literal elements can be identified by pointing to version, file, and line number.  Rather, SCO

stated that a comprehensive analysis would be necessary to obtain as much evidence of infringement as possible and determine the scope of its copyright infringement claims.

IBM further argues (at 10) that Dr. Cargill "actually discussed some of the non-literal elements at issue by version, file and line information," and refers to segments of source code included in Dr. Cargill's report. IBM misunderstands Dr. Cargill's references to literal source code. IBM cites to a portion of Dr. Cargill's first report in which Dr. Cargill refers to segments of ELF-related source code as <u>evidence</u> that Linux uses and incorporates the non-literal ELF material, not as <u>identification</u> of the infringed non-literal ELF material itself. The ELF-related source code at issue is equivalent to a sign saying "this system uses the non-literal ELF material at issue," but does not actually constitute the non-literal material at issue. IBM further quotes Dr. Cargill as stating "[t]he chosen names are associated with the numbers by expressing the arrangement in source code header files," where IBM apparently intends to imply that this "arrangement" is the "arrangement" of elements within UNIX as a whole that is copied in the Linux operating system. Rather, as shown by the context of Dr. Cargill's report surrounding this quoted sentence, the "arrangement" discussed by Dr. Cargill is merely the association of values with signal names expressed within a header file. Notably, the source code referenced in this section of Dr. Cargill's report was included in SCO's December 2005 Submission. (Item 184 of the Submission.) The fact that arrangement of source code <u>within a single header file</u> can be shown by reference to such source code is irrelevant to whether the selection, coordination, and arrangement of various elements within the UNIX operating system as a whole can be shown by pointing to literal bits of source code. IBM's effort (at 10-11) to analogize the issues presented here with the question of identifying methods and concepts at issue in a previous motion is thus

unfounded, where the controlling Tenth Circuit law regarding the non-literal aspects of the analysis of copyright infringement was not at issue in the prior briefing.  In that plain sense, SCO's arguments here are not the "attack" on the Court's November 2006 Order that IBM (at 11 n.15) makes them out to be.  (See also Part IV, below.)

IBM goes on (at 12-13) to accuse SCO of inconsistent arguments with respect to the excluded material in the reports of Evan Ivie and Marc Rochkind, but IBM misapprehends SCO's argument.  SCO has explained that the excluded material is supporting material that provides additional bases to support SCO's allegation that the material SCO clearly identified in the December Submission, such as JFS and the Testing Suites, was in fact misused.  As SCO made clear with respect to JFS, for example, SCO satisfied the Court Orders by identifying all of JFS in Item I of the December 2005 Submission, and then "went beyond that identification to provide the information it had at that time to support the point that JFS was derived from UNIX System V."  (SCO Reply at 10 (emphasis added).)  The supporting evidence demonstrating that JFS is a derivative does not reasonably constitute "allegedly misused material."

## IV.  IBM HAS NOT SUFFERED ANY "INCURABLE PREJUDICE" RESULTING FROM THE CONTENT OF SCO'S EXPERT REPORTS.

IBM's assertion of "incurable prejudice" continues to lack foundation, including where IBM failed to substantiate the assertion, IBM now seeks time and discovery constituting a windfall for IBM, and IBM could have avoided the asserted prejudice, and because with respect to Dr. Cargill's analysis in particular.  (SCO Reply at 14-17.)  IBM does not refute these points.  Instead, in seeking an extra year to analyze SCO's experts reports, IBM seeks a post hoc revision to the scheduling order that amounts to a windfall for IBM.

A.    There Is No Substantiation for IBM's assertion of Prejudice.

IBM previously said that SCO's evidence was disclosed six months after the close of fact discovery, but made no effort to explain or illustrate any particular "fact discovery" it supposedly needed to analyze any of the evidence at issue.  IBM also argued that the evidence was disclosed "simultaneous with the filing of initial expert reports, on the eve of the due date of IBM's opposing expert reports," but made no effort to show that its experts tried but could not respond to SCO's evidence or to substantiate its claim that the experts could not have analyzed the evidence in a matter of weeks.  (SCO Reply at 14.)  IBM now says that Addendum A identifies the discovery IBM would have taken, but IBM did not even undertake such discovery with respect to the material SCO identified in its December Submission.  IBM also has no answer to the fact under the July 2005 Order on which the Magistrate Court's Order turns, IBM would have had only three months of fact discovery following the December Submission, not a year.  Nor has IBM substantiated its newly minted reliance on the list of questions in Addendum A.  The IBM expert offers nothing more than the conclusory statement (at 18) that "substantial time and effort would be required to fully evaluate the new material that Dr. Cargill identifies as misused."  The statement is practically meaningless; the expert could mean that he could finish such work in a month.  IBM is thus left with making the same conclusory assertions, such as its statement that it is "plain" that reviewing "all of the files in Linux" – which, as shown below, is not something IBM would even have to undertake to do – "would require a very long time."[1]

---

[1] IBM draws (at 18) a false comparison between the time SCO estimated it would take the company to identify all of the UNIX technology in Linux and the time it would take IBM to analyze such UNIX material once SCO had done the work of identifying it.  By definition the second task is only a subset of the first one, and it involves only a tiny fraction of the code at issue in the first task.  As discussed more thoroughly in SCO's Sur-Surreply Memorandum in support of its Motion to Amend, IBM's repeated

With respect to the purported law set forth in IBM's Addendum A, moreover, a sampling of the substantive propositions set forth therein shows important errors and oversights:

- IBM incorrectly says (at no. 1) that a party cannot assert copyright infringement over materials that it does not own.  Under the copyright laws, an exclusive licensee of such materials can assert such claims.

- IBM incorrectly says (at no. 2) that the plaintiff bears the burden of showing it is the author of the copyrighted material.  The plaintiff need show only that it owns or is the exclusive licensee of the copyrighted material.  The case IBM cites, Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989), does not make any pronouncement regarding the burden a plaintiff must meet to establish infringement.

- IBM says (at no. 3) that a defendant does not infringe if it has a valid license to exercise those rights are claimed to be infringing, but SCO has already shown that the licenses IBM claims to have are not valid and/or do not cover IBM's Linux activities.

- IBM cites (at no. 5) Mitel, Inc. v. Iqtel, Inc., 896 F. Supp. 1050, 1055 (D. Colo. 1995), for the proposition that material that is a procedure, process, system or method of operation is unprotectable, but the Tenth Circuit in Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366 (10th Cir. 1997), overturned the proposition that literal expression could be deemed an unprotectable "procedure, process, system or method of operation."

- IBM cites (at no. 8) Baystate Technology, Inc. v. Bentley Systems, Inc., 946 F. Supp. 1079, 1087-88 (D. Mass. 1996), for the proposition that material that can be expressed in only a limited number of ways is unprotectable, but Baystate relied for

---

assertion that SCO's expert reports implicate "every file in Linux," and that IBM would therefore have to analyze "every file in Linux," are simply false.

that proposition on a First Circuit opinion that the Tenth Circuit expressly rejected in the <u>Mitel</u> case.

- IBM says (at no. 9; <u>see also</u> nos. 10, 11, 12 & 13) that material that is dictated by the compatibility requirements of other programs with which it is designed to interact is unprotectable, but IBM has put forth no evidence of such external constraints at the time the infringed material that SCO has identified (including its December 2005 Submission), whereas SCO has put forth substantial evidence that there were no such external constraints.

- IBM cites (at no. 16) <u>Getaped.Com, Inc. v. Cangemi</u>, 188 F. Supp. 2d 398, 404 (S.D.N.Y. 2002), that to claim non-statutory damages for copyright infringement, a plaintiff must show that it was injured by the alleged infringement, but that case refers to disgorgement of defendant's profits attributable to the infringement as "non-statutory" damages, and does <u>not</u> indicate that a showing of actual harm is necessary to obtain disgorgement of defendant's profits.

The foregoing examples alone demonstrate that IBM's reliance on the Addendum is no basis for its arguments against SCO's Objections.

IBM also previously said that the evidence at issue was disclosed "when summary judgment briefs were forthcoming," but SCO pointed out that it produced its initial expert reports <u>four</u> <u>months</u> before those motions were due, and IBM never asked to delay their filing.  (SCO Reply at 14.)  In response, IBM offers (at 18-19) an explanation for why it chose not to seek more time to file those motions, but that is not the point.  The point, which IBM does not and cannot deny, is that it had <u>four</u> <u>months</u> in which to analyze and try to refute the material in

SCO's expert reports prior to filing its motions.  There can be no "incurable" prejudice where IBM had the time to address the material at issue but deliberately chose <u>not</u> to do so.

**B.    The Record Belies IBM's Claim That SCO Spent "Years" Developing The Theory of Copyright Infringement in Dr. Cargill's Report.**

IBM also previously said that "SCO had spent more than three years developing its theory of infringement," but the record does not support that assertion with respect to Dr. Cargill's opinions in particular.  The record shows that as of early 2005, SCO did not even regard itself as having brought a copyright claim in this case.  (<u>See, e.g.</u>, SCO's Opening Mem. at 18.)  IBM now says (at 19) the proof that SCO spent three years developing that theory is "a plethora of public statements since 2003 regarding its claim that Linux infringes SCO's copyrights."  The statements at issue in the articles that IBM cites do not support IBM's argument with respect to Dr Cargill's work, and in several instances directly refute IBM's argument:

- <u>Ex. 368</u>.  This article confirms the view of SCO CEO Darl McBride as of June 2, 2003, that SCO's pending claims did <u>not</u> concern the issue of copyright violation: "McBride said SCO's claims center on its <u>contracts</u> giving companies the right to build Unix software, and not on copyrights or patents.  'That has zero percent to do with any current claims that we have in the marketplace,' he said.  (Emphasis added.)

- <u>Ex. 478</u>.  This article from the same date as Exhibit 368 quotes Mr. Sontag referring to the code that SCO had identified, drawing a plain distinction between code constituting "a direct copyright violation" and the code underlying SCO's contract claims, and stating that the "large blocks of code" in SCO's hands at that time related

to the <u>contract</u> claims.  Responding to the question "How many lines of code in the Linux kernel are a direct copyright violation?," Mr. Sontag is quoted:  "It's very extensive.  It is many different sections of code ranging from 5 to 10 to 15 lines of code in multiple places that are of issue, up to large blocks of code that have been inappropriately copied into Linux <u>in violation of our source-code licensing contract</u>." (Emphasis added.)

- <u>Ex. 480</u>.  This article from July 2003 quotes Mr. McBride as referring to "how much code is infringing" in Linux in the context of the IBM lawsuit, and thus plainly refers to SCO's contract claims, not any theory of copyright infringement with respect to a claim that SCO had not even brought.

- <u>Ex. 367</u>.  This article quotes Mr. McBride as stating in August 2003 that SCO's experts "have found already a mountain of code" and that the "DNA of Linux is coming from Unix."  Later in the article, SCO vice-president Chris Sontag makes clear that Mr. McBride's reference to "Unix" encompasses the material in the UNIX-derivative works that are the basis for SCO's <u>contract</u> claims:  "Sontag also said thousands of lines of Unix have made their way into Linux in the form of derivative works that should have been bound by SCO licensing agreements that require licensees to keep the code secret," and the article refers to "829,000" lines of such code in the form of SMP.

- <u>Ex. 383</u>.  This article from three days after Exhibit 367 refers to same substantial volume of code referenced in that article, and thus again refers to code underlying SCO's contract claims, not any copyright claim.

- Ex. 372.  This article from two weeks after Exhibit 367 refers exclusively to SCO's "trade secrets-reach of contract suit against IBM" and thus plainly refers back to the contract claims in referencing SCO's "claim that IBM misappropriated IP from the Unix operating system that SCO now owns and put it in Linux."

- Ex. 479.  This article from the same day as Exhibit 372 references Mr. McBride's understanding that there was Unix System 5 code "showing up directly inside of Linux" and then repeatedly quotes him as explaining that SCO's claims against IBM were contract claims and as stating expressly that his surprise at IBM's and Novell's cooperation because "we didn't have any copyright claims in our case with IBM" and "when we filed against IBM, we chose to not even talk about copyrights."

The foregoing record thus makes clear that SCO did not spend more than three years developing Dr. Cargill's theory of infringement.  Indeed, Dr. Cargill testified at deposition that he had spent only approximately 400-500 hours writing all <u>three</u> of his expert reports.  The record thus puts the lie to IBM's repeated assertion that Dr. Cargill's expert opinion on substantial similarity "reinvents" SCO's case from what it was in 2003, 2004, or 2005.  It should be self-evident (as IBM says) that where SCO spent only months developing the analysis of substantial similarity at issue, it would have required IBM and its experts only months to respond.

C.    IBM's Arguments Regarding the Work Necessary to Respond
       To Dr. Cargill's Analysis Continue to Lack Any Basis.

IBM has argued that Dr. Cargill's legal analysis requires "line-by-line analysis," but SCO pointed out that Dr. Cargill's report and the controlling Tenth Circuit law make clear that no such analysis is even appropriate, let alone required.  (SCO Reply at 14.)  In pressing the

argument, IBM misapprehends SCO's theory and the relevant law, and ignores the nature of the work its own experts have already undertaken.  SCO addresses this assertion in detail in its sure-surreply memorandum in support of its Motion to Amend.  Suffice it to say here that where IBM now leans heavily on a parade of horribles regarding the work supposedly required, IBM's <u>own experts</u> did not undertake the file-by-file analysis that IBM now says would be necessary work to try to rebut SCO's theory.

IBM also previously said that SCO's claim of Linux infringement was a "newly minted allegation" as to which IBM was forced to proceed "without the benefit of discovery," but IBM regarded SCO as having brought a claim that Linux is substantially similar to UNIX System V under the copyright laws.  (SCO Reply at 14-15.)  IBM admits this fact (at 20-21), and in continuing to take issue with the timing of Dr. Cargill's analysis only repeats the logical errors inherent in its underlying Motion and the Magistrate Court's Order.  In arguing (at 21 & n.21) that SCO had been ordered to "disclose its evidence" and could not "properly omit that material from its Final Disclosures," IBM again presupposes that as of December 2005, SCO had the details of Dr. Cargill's non-literal theory of copyright infringement prepared and ready for distribution.  It did not.  In this sense again, IBM's position thus reduces to the position that SCO was obligated to have had its experts <u>complete</u> such copyright work by December 2005, and that the July 2005 Order made <u>clear</u> that SCO would have to complete that work by that time.  SCO has repeatedly shown in detail how neither of those positions is correct or forms a legitimate basis for the Magistrate Court's Order.

IBM also now tries to disclaim any intent to obtain the windfall that its request for an additional year of discovery would constitute.  IBM says at bottom (at 22) that it based its

request for three months of post-December 2005 Submission discovery on the grounds that when IBM sought the deadlines that were embodied in the July 2005 Order, "SCO had disclosed absolutely no evidence of infringement by Linux."  The argument ignores the fact that as of early 2005, SCO did not believe it had even <u>brought</u> a claim turning on "infringement by Linux." IBM's implication of sandbagging and intentional disregard of Court Orders (as a 22 & n.22) is wrong.  And the record shows that IBM's request for three months of fact discovery following the December 2005 Submission, and six months of expert work following that, were reasonable estimates of time IBM would need to respond to all of SCO's evidence and theories of infringement.  For IBM to respond to the Linux copyright analysis would take only part of that time – a few months, not a year.

IBM finally continues to avoid the meaning and substance of the nine cases SCO cited demonstrating that IBM's opportunity to depose SCO's experts on the material at issue defeats the argument that IBM has suffered prejudice sufficient to justify the exclusion of that material. IBM says only (at 23) that those cases are different because they involve different facts.  But if it could, IBM would actually analyze the holdings in these cases and distinguish them.  It is not responsive to this doctrine for IBM to say that its view at the time was that "SCO was not permitted to challenge this new material."  At issue in the cited precedent is not the requirement of any court order, but rather whether the party could have avoided the prejudice it now claims to suffer.  The fact is that the cases reflect a well-established and well-reasoned proposition that independently defeats the claim of "incurable prejudice" that IBM tries to bootstrap onto its express decision not to ask SCO's experts about information that IBM and its experts had had months to analyze and try to refute.

## V.   UNDER THE CIRCUMSTANCES AND GIVEN THE RECORD,
## THE EXCLUSION OF THE EVIDENCE AT ISSUE IN SCO'S EXPERT
## REPORTS IS INAPPROPRIATE.

IBM's continued argument that SCO has "waived" its arguments regarding "substantial justification" under Rule 37 reveals the extent of IBM's reluctance to address the merits of the argument. And the gist of IBM's "waiver" argument is confounding. IBM does not dispute that SCO addressed all the elements of the "substantial justification" analysis before the Magistrate Court. (SCO Reply at 11-12.) Instead, IBM complains (at 16-17) that SCO did so, in part, in a footnote. If this Court need not acknowledge arguments presented in footnotes, then it is not at all clear how IBM proposes the Court should treat the thirty-three footnotes in IBM's latest brief purporting to tackle several of SCO's arguments on the merits, or IBM's argument (at 16 n.18) that "any additional delay in these proceedings would have been prejudicial to IBM," which is an argument IBM makes in a footnote.[2]

IBM's secondary attempts to respond to the merits of SCO's arguments regarding its "substantial justification" are similarly unavailing. IBM ignores SCO's primary argument, which is that SCO "had reasonably concluded that the analyses and supporting evidence that have been excluded were appropriately included in the expert reports, and that there was at the very least a genuine dispute between the parties on that question." (SCO Reply at 12-13.) SCO expounded on that point in its Reply Brief by explaining that "among the fundamental questions at issue is whether the material the Magistrate Judge has excluded actually qualifies as such material" (id. at 13), and reiterating its view that it does not. IBM remains unable to cite any

---

[2] Contrary to IBM's suggestion (at 13 n.16), SCO does not argue that IBM invoked "Rule 37" for the first time in oral argument, and does not dispute that IBM cited that Rule (among several others) in its underlying motion itself. The fact is that IBM's memorandum in support of that motion does not clearly rely on or enumerate the relevant factors bearing on a sanction under Rule 37. (SCO Reply at 11-12.)

authority for the proposition that where the parties have a genuine dispute regarding the meaning of the court order at issue, the failure of one party to comply with the order as ultimately interpreted merits sanctions, let alone the drastic sanction the Magistrate Judge imposed.

IBM then argues (at 14-15) that there can be no contrast between the Linux material identified in SCO's December Submission and Dr. Cargill's analysis in his expert report, because an expert in Dr. Cargill's position is not even permitted to undertake such a non-literal analysis of substantial similarity, and that the elements of Dr. Cargill's analysis are no different than the "methods and concepts" at issue in IBM's prior motion to limit SCO's claims. This argument is central to IBM's brief, and it is wrong. The leading treatise on copyright law recommends the consideration of expert testimony "to determine substantial similarity of computer programs." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A][1][e], at 13-152 (2006). The treatise makes clear that its use of the term "substantial similarity" in the foregoing section refers to "actionable copying as a legal proposition." Id. § 13.03[A], at 13.34.1. In addition, the Tenth Circuit has held the following:

- "Once [facts] are gathered and expert testimony is heard, the court can then analyze which portions of the program according to the expert testimony, infringes the protected expression." Gates Rubber, 9 F.3d at 833 n.7.

- "Indeed, in most cases we foresee that the use of experts will provide substantial guidance to the court in applying an abstractions test." Id. at 834-35.

- "Ordinarily, expert testimony will be helpful to organize a particular program into various levels of abstraction." Id. at 835.

See also Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 712-23 (2d Cir. 1992) (accepting and approving expert testimony on the issue of substantial similarity and copying and whether such copying is actionable or illicit). IBM's misapprehension of this controlling law is

crucial not only because it reveals IBM's error in claiming impropriety in Dr. Cargill's analysis, but also – and more to the point for these Objections – it underscores that SCO had reasonably concluded that such analysis for its <u>experts</u>, <u>not</u> for the December 2005 Submission.

IBM then makes (at 22) the grave accusation that SCO has acted in bad faith, but there is no evidence to support that assertion, the Magistrate Judge did not cite any, and SCO clearly argued below that the Magistrate Judge was obligated to consider whether any such evidence existed.  (SCO Reply at 6-7, 11-12; <u>see also</u> Part II, above.)  The main premise of IBM's argument – that SCO had evidence in hand as of December 2005 that it decided not to disclose – finds no support anywhere, including in any of the depositions of SCO's experts.  The apparent secondary premise of the argument – that SCO supposedly thought it might have to disclose more than it did in December 2005 and so waited to have its experts address certain issues until early 2006 – also lacks any foundation.  The language of the Orders at issue did not put SCO on notice that it had to identify by December 2005 the entire sum of evidence supporting IBM's misuse of the material identified in the December 2005 Submission.

IBM finally insists – in a footnote (at 22 n.22) – that its claim of "litigation by ambush" and of the "flouting of discovery deadlines" supports IBM's claim of prejudice, but misapprehends SCO's point.  IBM does not establish any prejudice merely by using such heated language to describe the disclosure of analyses that SCO reasonably believed was timely disclosed, that SCO continues to believe was timely disclosed, and that IBM had every opportunity to address itself and to have its expert address.

## <u>CONCLUSION</u>

SCO respectfully submits, for the reasons stated above and in SCO's previous memoranda, that the Court should reverse the Magistrate Judge's Order and permit SCO to proceed with all theories of liability disclosed in its expert reports, including copyright infringement based on both literal and non-literal elements of the copyrighted works as well as the selection, arrangement, and coordination of elements in the copyrighted works.

DATED this 11th day of May, 2007.

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP

David Boies
Robert Silver
Stuart H. Singer
Stephen N. Zack
Edward Normand

DORSEY & WHITNEY LLP
Devan V. Padmanabhan

*Counsel for The SCO Group, Inc.*

By:   ___/s/ Edward Normand_____

## CERTIFICATE OF SERVICE

Plaintiff, The SCO Group, Inc., hereby certifies that a true and correct copy of the

foregoing SCO's Sur-Surreply Memorandum in Further Support of its Objections to the

Magistrate Judge's Order on IBM's Motion to Confine was served on Defendant, International

Business Machines Corporation, on this 11th day of May, 2007, via CM/ECF to the following:

> David Marriott, Esq. (dmarrriott@cravath.com)
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 Eighth Avenue
> New York, New York 10019
>
> Todd Shaughnessy, Esq. (tshaugnessy@swlaw.com)
> Snell & Wilmer LLP
> 1200 Gateway Tower West
> 15 West South Temple
> Salt Lake City, Utah 84101-1004

/s/ Edward Normand
_____
