SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
 International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br>    Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br>    Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM IN RESPONSE TO THE COURT'S ORDER OF AUGUST 10, 2007** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in response to the Court's Order of August 10, 2007, requesting that IBM and The SCO Group, Inc. ("SCO") submit a statement of their views as to the status of this case and, more specifically, the effect of this Court's decision in *SCO v. Novell*, dated August 10, 2007 (the "Novell Decision"), on each of the pending motions.

**Preliminary Statement**

As the Court stated in its Order of August 10, 2007, the Novell Decision "significantly impacts the claims and counterclaims asserted in the instant case". As is discussed below: (1) the Novell Decision effectively forecloses all of SCO's claims; (2) requires summary judgment in favor of IBM on several of its counterclaims and strengthens IBM's remaining counterclaims; and (3) impacts all of the pending motions.

**Status Report**

    A.    SCO's Claims Against IBM

SCO has asserted nine claims against IBM: (1) four breach of contract claims (Counts I to IV); (2) one copyright infringement claim (Count V); (3) one unfair competition claim (Count VI); and (4) three tortious interference claims (Counts VII to IX). The Novell Decision disposes of these claims.

    1.    Contract Claims

The contract claims asserted by SCO allege: (1) breach of the IBM Software Agreement (Count I); (2) breach of the IBM Sublicensing Agreement (Count II); (3) breach of the Sequent Software Agreement (Count III); and (4) breach of the Sequent Sublicensing Agreement (Count IV). According to SCO, the allegedly breached agreements precluded IBM from contributing its

own code to Linux. The Novell Decision forecloses these claims because it affirms Novell's right under its Asset Purchase Agreement with The Santa Cruz Operation, Inc. (the "APA") to waive the alleged breaches on behalf of SCO.

While the Court can decide the parties' summary judgment motions and dispose of SCO's contract claims based on the Novell Decision alone, deciding issues not addressed by the Novell Decision would further develop the record, result in alternative grounds for the Court's ruling and streamline the resolution of IBM's remaining claims. For example, a ruling in IBM's favor on its estoppel argument would not only further support the dismissal of SCO's contract claims, but it would also narrow the issues relating to IBM's counterclaims for breach of contract and unfair and deceptive trade practices, among others.

      2.     <u>Copyright Claim</u>

SCO has also asserted a claim against IBM for copyright infringement (Count V). According to SCO, IBM infringed certain UNIX and UnixWare copyrights by continuing to distribute AIX and Dynix after SCO purports to have terminated IBM's right to do so. The Novell Decision forecloses this claim as it depends on SCO's establishing a predicate breach of contract which, for the reasons discussed above, SCO cannot establish. Moreover, the only allegedly infringed copyrights are, under the Novell Decision, owned by Novell, not SCO.

The Court can decide IBM's summary judgment motion and dispose of SCO's copyright claim based on the Novell Decision alone. However, resolving issues not addressed by the Novell Decision would further develop the record, result in alternative grounds for the Court's ruling and streamline the resolution of IBM's remaining claims. For example, in addition to representing further bases for disposing of SCO's copyright claim, rulings that IBM has a

perpetual and irrevocable license to the allegedly infringed code and that SCO misused its alleged copyrights would resolve issues pertinent to IBM counterclaims, such as IBM's claim that SCO disparaged IBM's AIX and Dynix products as "unauthorized" and "unlawful" based on the supposed termination by SCO of IBM's license.

        3.        <u>Tortious Interference Claims</u>

In addition, SCO has asserted three claims against IBM for tortious interference (Counts VII to IX). Count VIII accuses IBM of inducing Novell to assert copyright and waiver rights that SCO argues Novell does not have under the APA. The Novell Decision forecloses this claim because it makes clear that Novell has the rights IBM is alleged to have induced Novell to exercise: Novell owns the copyrights, and it has the right to waive SCO's claims. Moreover, the Court's ruling precludes any claim by SCO that it would have been an act of bad faith for IBM to induce Novell to assert ownership of the copyrights or to waive SCO's claims.

Insofar as SCO's Counts VII and IX depend on the proposition that IBM acted improperly in contributing its own code to Linux, they are likewise precluded. Count VII alleges IBM interfered with SCO's business relationship with 175 companies (besides Novell) by urging them to use Linux (instead of SCO's Unix products) while knowing that Linux included stolen UNIX code. Count IX alleges that IBM interfered with SCO's business relationships with six other entities by urging them not to do business with SCO because of SCO's efforts to protect the allegedly stolen code in Linux. As stated, the Novell Decision precludes SCO from challenging IBM's contributions of its own code to Linux because Novell waived such claims and because Novell, not SCO, owns the copyrights in the allegedly infringed UNIX and UnixWare code. As a result, the decision undermines the central premise of these claims.

We believe the Court can decide IBM's summary judgment motion and dispose of SCO's tortious inference claims based on the Novell Decision alone. But here again, deciding issues not addressed by the Novell Decision would further develop the record and, we submit, result in alternative grounds for the Court's ruling, such as the lack of evidence of interference by IBM.

### 4. SCO's Unfair Competition Claim

Finally, SCO has asserted a claim against IBM for unfair competition (Count VI). The crux of this claim is that IBM exceeded the scope of its license to certain SVr4 code (licensed to IBM by The Santa Cruz Operation during Project Monterey) by copying the code into IBM's AIX for POWER product. SCO failed to provide the detailed disclosures required by the Court with respect to any allegedly misused code not subject to copyrights owned by Novell.[1] SCO cannot pursue a claim for unfair competition with respect to code in which another party owns the copyrights and has the panoply of rights associated with copyright ownership. To the extent SCO's unfair competition claim challenges the conduct underlying SCO's contract, copyright and tortious interference claims, it is foreclosed by the Novell Decision for the same reasons that SCO's other causes of action are foreclosed (discussed above).

Although the Court can decide IBM's summary judgment motion and dispose of SCO's unfair competition claim based on the Novell Decision alone, resolving issues not addressed by the Novell Decision would further develop the record and, we submit, result in alternative

---

[1] SCO has suggested that this claim survives because the code at issue is subject to post-1995 copyrights owned by it under the Novell Decision. However, SCO could not and has not identified any such copyrights. Moreover, as stated, SCO never made the disclosures required by IBM's discovery requests and the Court's orders with respect to the "Project Monterey" code on which it seeks to base its claim.

4

grounds for the Court's ruling, such as that SCO's claim is time barred, that it is preempted by the copyright law and that SCO cannot show damages.[2]

### B. IBM's Counterclaims

IBM has asserted eleven counterclaims against SCO: (1) two claims for declaration of non-infringement of copyright (Counterclaims IX and X); (2) one claim for breach of contract (Counterclaim I); (3) three claims relating to SCO's copying of IBM code in Linux (Counterclaims VI to VIII); (4) four claims concerning SCO's campaign to create fear uncertainty and doubt about IBM's products and services (Counterclaims II to V); and (5) one claim for a declaration of IBM's rights under all of its other claims (Counterclaim XIV).

#### 1. Claims for Declaration of Non-Infringement

IBM has asserted two claims against SCO for declaration of non-infringement of copyright – one relating to IBM's continued distribution of AIX and Dynix (Counterclaim IX), and the other relating to IBM's Linux activities (Counterclaim X). Ownership of the allegedly infringed copyrights is an essential element of any claim by SCO against IBM for copyright infringement. The only allegedly infringed copyrights specifically identified by SCO in its Final Disclosures and in opposition to IBM's motion for summary judgment are, under the Novell Decision, owned by Novell, not SCO. Thus, the Novell Decision requires the entry of judgment in favor of IBM on both Counterclaims IX and X.[3]

---

[2] Unlike SCO's other claims, its unfair competition claim would be tried by the Court (not a jury) (Joint Development Agreement ¶ 22.3 (IBM Summ. J. Ex. 245)) and is subject to a $5 million limitation of liability (id. ¶ 20.1).

[3] SCO has suggested that the Novell Decision may not foreclose these claims insofar as (1) the claims seek a declaration relating to post-1995 copyrights and (2) SCO has an exclusive license

5

IBM did not move for summary judgment on its Counterclaim IX, and the Court can resolve Counterclaim X in IBM's favor without deciding issues not addressed by the Novell Decision. However, addressing the issues not considered in the Novell Decision would not only further develop the record, but also would result in alternative grounds for the Court's ruling and streamline the resolution of IBM's remaining claims. For example, IBM's motion raises issues as to whether IBM has one or more licenses to the allegedly infringed code, whether SCO is estopped from pursuing its claims and whether SCO has misused the copyrights in dispute. These are issues in common with IBM's other counterclaims.

2. Contract Claim

IBM has asserted a claim against SCO for breach of the same contracts that IBM is alleged to have breached, under which IBM has a perpetual and irrevocable license. (Counterclaim I). This claim challenges a variety of misconduct by SCO, most (if not all) of which is affected by the Novell Decision. While IBM did not move for summary judgment on this claim, a finding of liability could be entered in favor of IBM based on the Novell Decision alone. For example, IBM contends that SCO breached the agreements by, among other things, purporting to terminate IBM's license on the basis of IBM's alleged breach of the agreements. Because the Novell Decision forecloses SCO's contract claims (discussed above), it precludes SCO's purported basis for terminating IBM's perpetual and irrevocable license and thus establishes an independent basis for a finding of liability in favor of IBM on its contract claim.

---

to any pre-1995 copyrights, permitting it to sue for infringement on those copyrights. Nowhere in its Final Disclosures did SCO identify any post-1995 copyright allegedly infringed by IBM's Linux activities. No basis exists for finding that SCO has an exclusive license to the UNIX and UnixWare copyrights owned by Novell.

6

      3.    <u>Claims Relating to SCO's Copying of IBM Code in Linux</u>

IBM has asserted three claims against SCO relating to SCO's copying of IBM code in Linux: (1) copyright infringement (Counterclaim VIII); (2) breach of the General Public License (the "GPL") (Counterclaim VI); and (3) promissory estoppel (Counterclaim VII). IBM claims that SCO literally copied and distributed hundreds of thousands of lines of IBM code, which IBM contributed to Linux under the GPL, after SCO lost permission to do so by repudiating and breaching the GPL. IBM moved for summary judgment only with respect to Counterclaim VIII, and SCO moved for summary judgment with respect to Counterclaims VI, VII, and VIII. The Novell Decision does not by itself resolve these claims. However, the Novell Decision precludes SCO's primary defenses to all three claims: that its actions were justified by IBM's alleged breaches of contract and that IBM cannot assert its copyrights because Linux as a whole is a derivative work of UNIX System V. Insofar as it rejects SCO's allegations of breach of contract and holds that SCO does not own the copyrights to UNIX System V, the Novell Decision rejects these defenses and strengthens IBM's claims.

      4.    <u>Claims Concerning SCO's Campaign To Create Fear Uncertainty and Doubt About IBM's Products and Services</u>

IBM has asserted four claims against SCO concerning SCO's campaign to create fear, uncertainty and doubt about IBM's products and services: (1) violation of the Lanham Act (Counterclaim II); (2) unfair competition (Counterclaim III); (3) intentional interference with prospective economic relations (Counterclaim IV); and (4) violation of the New York State Unfair and Deceptive Trade Practices Act (Counterclaim V). These claims concern, among other things, SCO's campaign of publicly disparaging IBM, making false and misleading statements to the press and IBM's customers about the quality and origins of IBM's AIX, Dynix,

and Linux products and/or services, filing and threatening to file baseless claims based on non-existent contract rights and copyrights, and attempting to license copyrights it did not own for the use of Linux. Only SCO moved for summary judgment as to these claims.

The Novell Decision does not resolve these claims, but it plainly strengthens them, such as by establishing the falsity of SCO's claims regarding AIX and Linux (e.g., that they are unauthorized derivatives of copyrighted works owned by SCO). Moreover, the Novell Decision undermines SCO's summary judgment motion, which asserts that the challenged conduct is not actionable on the grounds that it is privileged and that SCO acted in good faith. For example, the Novell Decision cuts against SCO's claims of good faith inasmuch as it established that SCO lacked the right to undertake the conduct at issue.

### C. Other Pending Motions

In addition to the pending summary judgment motions, a number of additional motions have been fully briefed but are still pending decision: (1) SCO's Motion for Reconsideration of the November 29, 2006 Order (Doc. # 894); (2) SCO's Objections to the Magistrate Judge's Order on IBM's Motion to Confine (Doc. # 899); (3) SCO's Motion to Amend Its December 2005 Submission (Doc. # 913); (4) SCO's Motion for Reconsideration by the Magistrate Court of the Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 986); and (5) SCO's Objections to the Magistrate Courts Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 995).

The Court need not decide these motions insofar as they relate to SCO's breach of contract claims and IBM's Tenth Counterclaim because, as discussed, the Novell Decision

forecloses those claims. We urge the Court to do so nevertheless so as to further develop the record.

### Conclusion

For the foregoing reasons, the Novell Decision: (1) effectively forecloses all of SCO's claims; (2) requires summary judgment in favor of IBM on several of its counterclaims and strengthens IBM's remaining counterclaims; and (3) impacts all of the pending motions.

DATED this 31st day of August, 2007.

                                                  SNELL & WILMER L.L.P.

                                                  /s/ Amy F. Sorenson
                                                  Alan L. Sullivan
                                                  Todd M. Shaughnessy
                                                  Amy F. Sorenson

                                                  CRAVATH, SWAINE & MOORE LLP
                                                  Evan R. Chesler
                                                  David R. Marriott

                                                  *Attorneys for Defendant/Counterclaim-Plaintiff*
                                                  *International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August, 2007, a true and correct copy of the foregoing, was electronically filed with the Clerk of the Court and delivered by CM/ECF system to the following:

>Brent O. Hatch
>Mark F. James
>HATCH, JAMES & DODGE, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, Utah 84101
>
>Robert Silver
>Edward Normand
>BOIES, SCHILLER & FLEXNER LLP
>333 Main Street
>Armonk, New York 10504
>
>Stephen N. Zack
>Mark J. Heise
>BOIES, SCHILLER & FLEXNER LLP
>100 Southeast Second Street, Suite 2800
>Miami, Florida 33131

/s/ Amy F. Sorenson