SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Todd M. Shaughnessy (6651)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff*
 *International Business Machines Corporation*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM RESPONDING TO SCO'S REQUEST TO PROCEED PIECEMEAL** <br><br> Civil No. 2:03CV-0294 DAK <br><br> Honorable Dale A. Kimball <br><br> Magistrate Judge Brooke C. Wells |

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in response to the request of The SCO Group, Inc. ("SCO") to proceed with this case piecemeal before the resolution of SCO's appeal in related litigation between SCO and Novell (the "Novell Litigation").

## Preliminary Statement

1. SCO commenced this litigation in 2003 as part of a campaign to control the Linux operating system, which was developed publicly by thousands of software developers, including developers at IBM. After years of litigation, on June 10, 2010, a jury in the Novell Litigation returned a verdict in favor of Novell. After the jury returned its verdict, Judge Stewart entered a final judgment in favor of Novell and against SCO that effectively forecloses SCO's claims against IBM. That judgment is on appeal.

2. Now, before the Tenth Circuit has ruled on the appeal, SCO seeks to pursue several of its claims against IBM, while IBM's counterclaims against SCO remain stayed as a result of SCO's 2007 bankruptcy filing. SCO's claims in this case depend on the outcome of SCO's appeal in the Novell Litigation. If affirmed, Judge Stewart's judgment will foreclose them. Moreover, they are closely related to IBM's stayed counterclaims and should not be litigated in the absence of IBM's counterclaims. While IBM shares SCO's interest in the expeditious resolution of this case, it makes no sense to litigate the case piecemeal. Doing so would waste judicial and party resources and potentially result in inconsistent rulings. Proceeding as SCO proposes would require the Court and the parties to undertake considerable work (on highly-complex issues) that might not be required, and risk litigating the same issues multiple times before different fact finders, depending on the Tenth Circuit's ruling.

## Background

3. In early 2003, SCO attempted to profit from the UNIX and Linux operating systems by, among other things, embarking on a far-reaching publicity campaign to create the false and unsubstantiated impression that SCO had rights to the UNIX and Linux operating systems and by bringing baseless legal claims against IBM and others.

4. SCO asserted nine claims against IBM: (1) four breach of contract claims (Counts I to IV); (2) one copyright infringement claim (Count V); (3) one unfair competition claim (Count VI); and (4) three tortious interference claims (Counts VII to IX). The crux of SCO's case is that it owned the copyrights and other rights to the UNIX operating system and that IBM and others violated SCO's alleged rights and injured SCO by contributing to the development of the Linux operating system.

5. Based on the conduct underlying SCO's attack on Linux and IBM, IBM asserted a number of counterclaims against SCO: (1) two claims for declaration of non-infringement of copyright (Counterclaims IX and X); (2) one claim for breach of contract (Counterclaim I); (3) three claims relating to SCO's copying of IBM code in Linux (Counterclaims VI to VIII); (4) four claims concerning SCO's campaign to create fear, uncertainty and doubt about IBM's products and services (Counterclaims II to V); and (5) one claim for a declaration of IBM's rights under all of its other claims (Counterclaim XIV).

6. Both Judge Kimball (to whom this case was initially assigned) and Magistrate Judge Wells entered a series of orders calling SCO's claims into question and materially limiting SCO's case. SCO challenges these rulings in motions/objections that are fully briefed: (1) SCO's Motion for Reconsideration of the November 29, 2006 Order (Doc. #

894); (2) SCO's Objections to the Magistrate Judge's Order on IBM's Motion to Confine (Doc. # 899); (3) SCO's Motion to Amend Its December 2005 Submission (Doc. # 913); (4) SCO's Motion for Reconsideration by the Magistrate Court of the Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 986); and (5) SCO's Objections to the Magistrate Courts Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 995).

7.  Thereafter, IBM filed six summary judgment motions, seeking a judgment in its favor on all of SCO's claims and two of its own. SCO filed three summary judgment motions, seeking judgment on seven of IBM's claims and one of its own.

8.  Before ruling on these motions, on August 10, 2007, Judge Kimball entered an order in the Novell Litigation, rejecting a keystone of SCO's litigation campaign. Judge Kimball ruled that Novell, not SCO, owns the core UNIX copyrights and that Novell has the right, which it has exercised on IBM's behalf, to waive SCO's purported claims against IBM.

9.  Recognizing that that ruling "significantly impacts" this case, Judge Kimball required the parties to state their views as to the effect of the Novell decision on this case. IBM believes the Novell ruling effectively rejected all of SCO's claims and effectively granted several of IBM's counterclaims. SCO takes a narrower view of the ruling but does not dispute that it forecloses no less than six of SCO's nine claims against IBM.

10. Shortly after the parties responded to the Court concerning the affect of the Novell ruling on this case, but before Judge Kimball was able to rule on the pending motions, SCO filed a petition for relief under the Bankruptcy Code in Delaware, where SCO is incorporated. The instant case was then closed (administratively) pending resolution of SCO's

3

bankruptcy proceeding, which gave rise to an automatic stay.

11. On August 24, 2009, the Tenth Circuit reversed in part Judge Kimball's summary judgment ruling in the Novell Litigation and remanded the case for trial. The Tenth Circuit ruled that there were questions of fact as to whether Novell or SCO owned the UNIX copyrights and whether Novell could waive SCO's claims against IBM.

12. Upon remand, Judge Kimball recused himself from both the Novell Litigation and this case. This case was reassigned to Your Honor, and the Novell Litigation was reassigned to Judge Stewart.

13. On March 30, 2010, a jury returned a verdict against SCO in the Novell Litigation, finding that Novell owns the core UNIX copyrights, which lie at the heart of SCO's case against IBM. On June 10, 2010, Judge Stewart issued findings of fact and conclusions of law refusing SCO's request for specific performance and holding that Novell had the authority to waive SCO's claims against IBM. On the same day, Judge Stewart issued a final judgment embodying the jury verdict and his findings of fact and conclusions of law.

14. Now, before the Tenth Circuit has ruled on its appeal in the Novell Litigation, which was filed on July 7, 2010, SCO requests that this Court permit it to proceed as to several of its claims against IBM (*i.e.*, SCO's unfair competition and tortious inference claims) while IBM's counterclaims against SCO remain stayed. Notably, Judge Kimball could have taken a piecemeal approach to resolving this case when it was assigned to him. He elected for good reason not to do so.

## Argument

15.     Contrary to SCO's suggestion, it makes no sense to proceed with this case before resolution of the appeal in the <u>Novell</u> Litigation.  The claims in suit depend on the outcome of that appeal.  Proceeding with this litigation now risks imposing needless burden and expense upon both the Court and the parties and may result in inconsistent rulings (thus requiring a redo of what SCO asks the Court to do).

16.     SCO does not dispute that it makes no sense to proceed with claims whose outcome depends in whole or in part on the outcome of the <u>Novell</u> Litigation.  Thus, SCO does not seek to proceed with its contract claims (Counts I to IV) and its copyright claim (Count V).  SCO concedes those claims depend on the outcome of the <u>Novell</u> Litigation, in which Judge Stewart found that Novell had (and still has) the authority to waive SCO's contract claims and Novell owns the copyrights IBM is alleged to have infringed.

17.     SCO's claim that this case should proceed now as to SCO's unfair competition and tortious inference claims turns on the proposition that those claims do not depend on the outcome of the appeal in the <u>Novell</u> Litigation.  That is wrong.  Not only do those claims depend on the outcome of SCO's appeal, but also they are precluded if Judge Stewart's judgment is affirmed.

18.     SCO's unfair competition claim (Count VI) is a mix of SCO's other causes of action, including the breach of contract and copyright infringement claims that SCO concedes are dependent on the outcome of the <u>Novell</u> Litigation.  For example, SCO's unfair competition claim accuses IBM of misappropriating source code, breaching contracts and contributing source code to Linux.  The code at issue on those claims is covered by the

copyrights Judge Stewart ruled are owned by Novell (not SCO), and Judge Stewart found Novell had the right to waive the alleged breaches of contract. Thus, SCO's unfair competition claim necessarily depends on the outcome of the Novell Litigation.

19. SCO's unfair competition claim would depend on the outcome of the Novell Litigation even if the claim related solely to "Project Monterey". The crux of SCO's Monterey allegations is that IBM exceeded the scope of its license to certain UNIX SVr4 code (licensed to IBM by The Santa Cruz Operation during Project Monterey) by copying the code into IBM's AIX for POWER product. But SCO has never properly identified any such code that is not covered by copyrights determined in the Novell Litigation to be owned by Novell.[1] Thus, if the judgment against SCO in the Novell Litigation is affirmed, SCO's Monterey allegations are untenable. At an absolute minimum, the outcome of the Novell Litigation will affect the shape of SCO's Monterey allegations.

20. SCO's three tortious interference claims (Counts VII to IX) are likewise dependent on the Novell Litigation. Count VIII accuses IBM of inducing Novell to assert copyright and waiver rights that SCO argues Novell does not have under the APA. The Novell Litigation forecloses this claim because it makes clear that Novell has the rights IBM is alleged to have induced Novell to exercise: Novell owns the copyrights, and it has the right to waive SCO's claims. Moreover, the judgment on appeal in the Novell Litigation precludes any claim

---

[1] SCO previously suggested that elements of this claim survive because the code at issue is subject to post-1995 copyrights owned by it under the Novell Decision. However, SCO could not and has not identified any such copyrights. Moreover, SCO never made the disclosures required by IBM's discovery requests and the Court's orders with respect to the "Project Monterey" code on which it would seek to base its claim.

6

by SCO that it would have been an act of bad faith for IBM to induce Novell to assert ownership of the copyrights or to waive SCO's claims.

21. SCO's other interference claims, Counts VII and IX, depend on the proposition that IBM acted improperly in contributing its own source code to Linux. Count VII alleges IBM interfered with SCO's business relationships with 175 companies (besides Novell) by urging them to use Linux (instead of SCO's UNIX products) while knowing that such use would violate their UNIX licenses. Count IX alleges that IBM interfered with SCO's business relationships with six other entities by urging them not to do business with SCO because of SCO's efforts to protect the UNIX code allegedly misappropriated by Linux. Pursuant to Judge Stewart's judgment in the Novell Litigation, SCO is precluded from challenging IBM's contributions of its own code to Linux, because Novell waived such claims and because Novell, not SCO, owns the copyrights in the allegedly infringed UNIX and UnixWare code.

22. In addition to the fact that SCO's unfair competition and tortious interference claims are dependent on the outcome of the Novell Litigation, it would make no sense to proceed as to those claims in the absence of IBM's counterclaims, which are stayed as a result of SCO's bankruptcy filing. IBM's counterclaims (which SCO ignores) are not only closely related to the claims in the Novell Litigation,[2] but also they are closely related to SCO's

---

[2] The outcome of the Novell Litigation will have a significant affect on IBM's counterclaims. For example, an order affirming the judgment against SCO in the Novell Litigation would (1) require the entry of judgment in favor of IBM on Counterclaims IX and X, which seek a declaration of non-infringement, as SCO cannot show IBM infringed copyrights SCO does not own; (2) require the entry of summary judgment in favor of IBM on Counterclaim I by rejecting the premise on which SCO purported to terminate an IBM license; (3) preclude SCO's primary defenses as to IBM's three claims relating to SCO's copying of IBM code in Linux (Counterclaim VI, VII and VIII); and (4) strengthen IBM's four claims concerning SCO's

7

unfair competition and tortious interference claims and they should all be tried together (if any of SCO's claims are to be tried).

23. As stated, SCO's unfair competition claim purports to incorporate conduct underlying SCO's other claims, including its allegations that IBM breached its SVRX Agreements, infringed certain UNIX copyrights, and interfered with SCO's relationships with its customers by contributing code to the Linux operating system. IBM's counterclaims accuse SCO of (1) breaching the same contracts IBM is alleged to have breached; (2) misusing the copyrights IBM is alleged to have infringed; and (3) interfering with IBM's relationships with the same customer base that SCO's accuses IBM of interfering with. In short, IBM's defenses to SCO's claims form the basis of IBM's counterclaims against SCO.

24. Given the connection between the claims and counterclaims in this case and the Novell Litigation, proceeding with this case before the Tenth Circuit rules in the Novell Litigation has nothing to recommend it. If, as we believe, a decision by the Tenth Circuit affirming the jury's decision and Judge Stewart's final judgment would foreclose SCO's claims against IBM and permit the entry of summary judgment on a number of IBM's counterclaims against SCO, proceeding on these claims now would be a waste of time and money. But even if one of SCO's claims was not dependent on the Novell Litigation, there is nothing to be gained from proceeding with it now. The interrelationships between and among the claims and counterclaims in this case and the Novell Litigation are not easily untangled. The mere exercise of untangling them would by itself require the unnecessary expenditure of judicial resources.

---

campaign to create fear, uncertainty and doubt about IBM's products and services, while also undermining SCO's summary judgment motion as to these claims.

And there is simply no good reason even to try to untangle them at this point, where it may never be necessary to do so. SCO's approach would require the Court to decide motions/objections -- which concern highly-technical subject matter and comprise thousands of pages of briefing -- that otherwise may not need to be decided. The fact that Judge Kimball elected not to decide these motions pending SCO's first appeal to the Tenth Circuit speaks volumes.

25.     IBM supports the expeditious resolution of this case. But the best way to bring that about is not to proceed piecemeal as to four of SCO's claims, especially where, as here, those claims depend upon the outcome of the <u>Novell</u> Litigation and are intimately related to IBM's counterclaims, which remain stayed due to SCO's bankruptcy filing. We respectfully submit that the most sensible way to proceed here is for SCO to seek expeditious resolution of its appeal in the <u>Novell</u> Litigation, just as it did when it appealed Judge Kimball's summary judgment ruling. Within 30 days of the final resolution of the <u>Novell</u> Litigation, the parties should formally report to the Court concerning their views as to the effect of the <u>Novell</u> Litigation on this case, just as they did in 2007 following Judge Kimball's summary judgment ruling in the <u>Novell</u> Litigation.

## Conclusion

For the foregoing reasons, IBM respectfully submits that the Court should decline SCO's request to proceed piecemeal; the Court should take no action until the <u>Novell</u> Litigation has run its course.

DATED this 10th day of August, 2010.

                              SNELL & WILMER L.L.P.


                              /s/ Amy F. Sorenson
                              Alan L. Sullivan
                              Todd M. Shaughnessy
                              Amy F. Sorenson


                              CRAVATH, SWAINE & MOORE LLP
                              Evan R. Chesler
                              David R. Marriott

                              *Attorneys for Defendant/Counterclaim-Plaintiff*
                              *International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1133 Westchester Avenue
White Plains, New York 10604
(914) 642-3000

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

10