SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendant/Counterclaim-Plaintiff
International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | **IBM'S MEMORANDUM RESPONDING TO SCO'S REQUEST TO REOPEN** <br><br> **(ORAL ARGUMENT REQUESTED)** <br><br> Civil No. 2:03CV-0294 CW <br><br> Honorable Clark Waddoups <br><br> Magistrate Judge Brooke C. Wells |

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in response to the request of The SCO Group, Inc. ("SCO") (n/k/a TSG Group, Inc.) to reopen this case to pursue several of its claims against IBM while IBM's counterclaims against SCO remain stayed, despite the fact that IBM's counterclaims are inextricably intertwined with SCO's claims and litigating them separately (as SCO proposes) would be inefficient and fundamentally unfair and would ignore the preclusive effect of the final judgment (the "Novell Judgment") entered against SCO in its litigation with Novell (the "Novell Litigation").

**Preliminary Statement**

1. SCO commenced this litigation in 2003 as part of a campaign to control the Linux operating system, which was developed publicly by thousands of software developers, including developers at IBM. In response, IBM asserted a number of counterclaims against SCO for violating IBM's contractual, intellectual property and other rights.

2. After years of litigation, the parties exchanged multiple summary judgment motions, and Judge Kimball heard several days of oral argument. But before the Court could decide the motions, SCO filed a petition for relief under Chapter 11 of the Bankruptcy Code, resulting directly in an automatic stay and ultimately in closure of this case.

3. Meanwhile, in a related litigation between SCO and Novell, the Novell Litigation, a jury returned a verdict, and now Chief Judge Stewart entered a final judgment, against SCO and in favor of Novell. The Novell Judgment, which effectively forecloses SCO's claims in this case (as well as requiring a judgment in IBM's favor on several of its counterclaims), was affirmed by the Tenth Circuit on August 30, 2011.

4.      Taking the view that not all of its claims are foreclosed by the Novell Judgment, SCO now asks the Court to reopen this case and to decide the summary judgment motions relating only to "SCO's unfair competition claim concerning the Project Monterey joint venture" (to which SCO was not even a party) and "SCO's tortious interference claims alleging that IBM interfered with SCO's market and business relationships".

5.      While we expect the Court will eventually have to reopen this case, it is premature to do so now, because IBM's eleven counterclaims against SCO (which are closely related to SCO's claims against IBM) remain stayed, and it makes no sense to litigate this case piecemeal. Doing so would waste judicial and party resources and potentially result in inconsistent rulings.

6.      Nor does it make sense at this juncture for the Court to dive into the summary judgment motions IBM filed (more than four years ago) against SCO's unfair competition and tortious interference claims. While those claims have no merit (for the reasons described in IBM's motions), they are also, contrary to SCO's contention, effectively foreclosed by the Novell Judgment, which also affects IBM's counterclaims against SCO.

7.      Rather, we respectfully request that the Court enter an order (i) providing that this case shall be reopened within 5 days of the filing of a notice (by any party) that the stay concerning IBM's counterclaims has been lifted; (ii) stating that the claims that SCO concedes are foreclosed by the Novell Judgment will be dismissed when the case is reopened; (iii) directing that, within 45 days of the reopening of the case, any party may make a motion for summary judgment addressing the impact of the Novell Judgment on all remaining claims (including the IBM counterclaims resolved by the Novell Judgment); and (iv) ordering the

[[NYLIT:2587870v3:4132W:11/21/11--06:38 p]]

parties jointly to submit, within 10 days of the entry of an order of the Court determining the impact of the Novell Judgment, a proposed scheduling order to govern the balance of the case.

8. Proceeding in this way will minimize the risks of piecemeal litigation, prevent the Court's deciding motions concerning foreclosed claims, and put the parties and the Court in a position to bring this case to a conclusion in the most efficient manner possible. Thus, SCO's motion to reopen should be denied without prejudice.

## Background

9. In early 2003, SCO attempted to profit from the UNIX and Linux operating systems by, among other things, embarking on a far-reaching publicity campaign to create the false and unsubstantiated impression that SCO had expansive rights to the UNIX and Linux operating systems and by bringing baseless legal claims against IBM and others.

10. SCO asserted nine claims against IBM: (1) four breach of contract claims (Counts I to IV); (2) one copyright infringement claim (Count V); (3) one unfair competition claim (as to a joint venture to which SCO was not a party) (Count VI); and (4) three tortious interference claims (Counts VII to IX). The crux of SCO's case was that it owned the copyrights and other rights to the UNIX operating system and that IBM and others violated SCO's alleged rights and injured SCO by contributing to the development of the Linux operating system.

11. Based on the conduct underlying SCO's attack on Linux and IBM, IBM asserted a number of counterclaims against SCO: (1) two claims for declaration of non-infringement of copyright (Counterclaims IX and X); (2) one claim for breach of contract (Counterclaim I); (3) three claims relating to SCO's copying of IBM code in Linux (Counterclaims VI to VIII); (4) four claims concerning SCO's campaign to create fear,

3

uncertainty and doubt about IBM's products and services (Counterclaims II to V); and (5) one claim for a declaration of IBM's rights under all of its other claims (Counterclaim XIV).

12. Both Judge Kimball (to whom this case was initially assigned) and Magistrate Judge Wells entered a series of orders calling SCO's claims into question and materially limiting SCO's case. SCO challenged these rulings in motions/objections that are fully briefed: (1) SCO's Motion for Reconsideration of the November 29, 2006 Order (Doc. # 894); (2) SCO's Objections to the Magistrate Judge's Order on IBM's Motion to Confine (Doc. # 899); (3) SCO's Motion to Amend its December 2005 Submission (Doc. # 913); (4) SCO's Motion for Reconsideration by the Magistrate Court of the Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 986); and (5) SCO's Objections to the Magistrate Court's Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Doc. # 995).

13. Thereafter, IBM filed six summary judgment motions, seeking judgment in its favor on all of SCO's claims and two of its own. SCO filed three summary judgment motions, seeking judgment on seven of IBM's claims and one of its own.

14. On August 10, 2007, before ruling on these motions, Judge Kimball entered an order in the Novell Litigation, rejecting the keystone of SCO's litigation campaign. Judge Kimball ruled that Novell, not SCO, owns the core UNIX copyrights and that Novell has the right, which it has exercised on IBM's behalf, to waive most of SCO's purported claims against IBM.

15. Recognizing that that ruling "significantly impacts" this case, Judge Kimball required the parties to state their views as to the effect of his Novell ruling on this case.

IBM believed the Novell ruling effectively rejected all of SCO's claims and effectively granted several of IBM's counterclaims. SCO took a narrower view of the ruling but did not dispute that it foreclosed no fewer than six of SCO's nine claims against IBM.

16.     Shortly after the parties responded to the Court concerning the effect of the Novell ruling on this case, but before Judge Kimball ruled on the pending motions, SCO filed a petition for relief under the Bankruptcy Code in Delaware, where SCO is incorporated. The instant case was then closed (administratively) pending resolution of SCO's bankruptcy case, which gave rise to an automatic stay.

17.     On August 24, 2009, the Tenth Circuit reversed in part Judge Kimball's summary judgment ruling in the Novell Litigation and remanded the case for trial. The Tenth Circuit ruled that there were questions of fact as to whether Novell or SCO owned the UNIX copyrights and whether Novell could waive SCO's claims against IBM.

18.     Upon remand, Judge Kimball recused himself from both the Novell Litigation and this case. This case was reassigned to Judge Campell, and the Novell Litigation was reassigned to Judge Stewart.

19.     On March 30, 2010, a jury returned a verdict against SCO in the Novell Litigation, finding that Novell owns the core UNIX copyrights, which lie at the heart of SCO's case against IBM. On June 10, 2010, Judge Stewart issued findings of fact and conclusions of law refusing SCO's request for specific performance and holding that Novell had the authority to waive SCO's claims against IBM. On the same day, Judge Stewart issued a final judgment embodying the jury verdict and his findings of fact and conclusions of law.

20.     Shortly after SCO filed an appeal, but before the Tenth Circuit ruled on

5

the appeal, SCO requested that this Court permit it to proceed as to several of its claims against IBM (*i.e.*, SCO's unfair competition and tortious inference claims) while IBM's counterclaims against SCO remained stayed. In an order dated September 10, 2010, Judge Campell declined to take that piecemeal approach.

21. While Judge Campell stated that either party could move to reopen this case after the Tenth Circuit issued its decision in the Novell Litigation, she expressed no view as to whether it would make sense to reopen the case while IBM's counterclaims remained stayed.

22. SCO seeks to reopen this case and to proceed piecemeal, while IBM's counterclaims remain stayed. In fact, despite the fact that it has been more than four years since SCO filed a petition for relief under the bankruptcy laws, it has not confirmed a plan of reorganization or sought relief from the stay as to IBM's counterclaims.

## Argument

23. While the Tenth Circuit's affirmance of the Novell Judgment brings this case closer to the point where it should be reopened, it makes no sense to proceed with the case before the stay of IBM's counterclaims is lifted. Nor does it make any sense for the Court to dive into the summary judgment motions IBM filed against SCO's unfair competition and tortious interference claims. However, as soon as the stay is lifted as to IBM's counterclaims, the Court should (i) dismiss the claims that SCO concedes are foreclosed, (ii) determine the effect of the Novell Judgment on the remaining claims and counterclaims, and (iii) enter a scheduling order to bring this matter to an expeditious resolution.

24. **The Court should not reopen this case to proceed piecemeal; it should reopen the case when the stay has been lifted as to IBM's counterclaims.** In seeking to

[[NYLIT:2587870v3:4132W:11/21/11--06:38 p]]

reopen this case now, SCO scarcely makes mention of IBM's counterclaims. But, as stated, IBM has eleven counterclaims against SCO: (1) two claims for declaration of non-infringement of copyright (Counterclaims IX and X); (2) one claim for breach of contract (Counterclaim I); (3) three claims relating to SCO's copying of IBM code in Linux (Counterclaims VI to VIII); (4) four claims concerning SCO's campaign to create fear, uncertainty and doubt about IBM's products and services (Counterclaims II to V); and (5) one claim for a declaration of IBM's rights under all of its other claims (Counterclaim XIV).

25. IBM's counterclaims are closely related to SCO's claims, including its unfair competition claim (Count VI) and its tortious interference claims (Count VII-IX).[1] IBM's counterclaims accuse SCO of (i) breaching the same UNIX contracts IBM is alleged by SCO to have breached (Counterclaim I); (ii) infringing IBM copyrights and violating the General Public License with respect to the same Linux operating system that SCO claims IBM improperly supported (Counterclaims VI, VII, VIII); (iii) orchestrating a campaign of fear, uncertainty and doubt about IBM's products and services — the very course of conduct with which it claims IBM interfered (Counterclaims II, III, IV, and V); (iv) falsely asserting claims of copyright

---

[1] SCO's tortious interference claims accuse IBM of (i) inducing Novell to assert copyright and waiver rights that SCO argues Novell does not have under the APA (Count VIII) (though SCO seems to recognize this claim is barred by the Novell Judgment); (ii) interfering with SCO's business relationships with 175 companies (besides Novell) by urging them to use Linux (instead of SCO's UNIX products) while knowing that such use would violate their UNIX licenses (Count VII); and (iii) interfering with SCO's business relationships with six other entities by urging them not to do business with SCO because of SCO's efforts to protect the UNIX code allegedly misappropriated by Linux (Count IX). SCO's unfair competition claim (Count VI) purports to be a catch-all count, accusing IBM of a variety of alleged misconduct, such as breaches of contracts, misappropriation of source code, and infringement of copyrights, including with respect to certain UNIX SVr4 code (licensed to IBM by The Santa Cruz Operation, Inc. during "Project Monterey"); SCO admits branches of this claim are barred.

7

infringement with respect to the same copyrights referenced by SCO in its claims (Counterclaim IX and X); and (v) interfering with IBM's relationships with the same customer base that SCO accuses IBM of interfering with (Counterclaim IV).

26. Given the connection between SCO's claims and IBM's counterclaims, proceeding with SCO's claims alone has nothing to recommend it. If SCO's claims are to be litigated, they should be litigated with IBM's counterclaims, as they were for years prior to SCO's bankruptcy filing. SCO's claims and IBM's counterclaims concern the same course of conduct and intellectual property. Litigating them separately, and potentially conducting two separate trials, would make no sense.

27. Thus, we respectfully submit that the Court should enter an order providing that this case shall be reopened within 5 days of the filing of a notice (by any party) that the stay has been fully lifted concerning IBM's counterclaims (except as to the enforcement of any money judgment that IBM obtains against SCO). IBM does not object to lifting the stay, and, as the debtor, SCO should be able to obtain an order lifting it in short order.

28. **After the stay has been lifted and this case has been reopened, the Court should first dismiss the claims that SCO concedes are foreclosed.** SCO admits that at least five (and perhaps six) of its claims against IBM, and part of another of its claims, are foreclosed by the Novell Judgment. Specifically, SCO clearly concedes that its four claims for breach of contract (Counts I-IV) and its copyright claim (Count V) are barred by the Novell Judgment; it also acknowledges that the branches of its unfair competition claim unrelated to Project Monterey are barred. The Tenth Circuit affirmed the final judgment entered by Judge Stewart providing that Novell (not SCO) owns the copyrights SCO claimed to have been

infringed and that Novell was authorized to waive SCO's claims against IBM for alleged breaches of contract. Thus, these claims should be dismissed as soon as the case is reopened. The Court need not decide IBM's summary judgment motions to resolve these claims.

29. While SCO's motion to reopen is not entirely clear on the subject, we expect SCO will also concede that, when the case is reopened, judgment should be entered in favor of IBM with respect to SCO's claim (Count VIII) that IBM induced Novell to assert copyright and waiver rights that SCO argues Novell does not have under the Asset Purchase Agreement between SCO and Novell (the "APA"). Again, in affirming the Novell Judgment, the Tenth Circuit ruled that Novell owned the copyrights and properly exercised the waiver rights in question. Under these circumstances, SCO's tortious interference claim concerning Novell is untenable, as SCO acknowledged in its response to Judge Kimball's Notice of Decision and Request for Status Update dated August 10, 2007.

30. **Once the Court has dismissed the claims that SCO concedes are foreclosed, we suggest it should determine the impact of the Novell Judgment on the parties' remaining claims and counterclaims.** While SCO concedes that the Novell Judgment forecloses its four contract claims (Counts I-IV) and its copyright claim (Count V), SCO claims that the Novell Judgment does not bar "SCO's unfair competition claim concerning the Project Monterey joint venture" (to which SCO was not a party) (Count VI) and "SCO's tortious interference claims alleging that IBM interfered with SCO's market and business relationships" (Counts VII and IX). SCO is wrong.

31. "SCO's tortious interference claims alleging that IBM interfered with SCO's market and business relationships" (Counts VII and IX) depend on the proposition that

9

IBM acted improperly in contributing its own source code to Linux. Specifically, Count VII alleges IBM interfered with SCO's business relationships with "its market" (175 companies besides Novell) by urging them to use Linux (instead of SCO's UNIX products) while knowing that such use would violate SCO's UNIX licenses. Count IX alleges that IBM interfered with SCO's business relationships with six other entities by urging them not to do business with SCO because of SCO's efforts to protect the UNIX code allegedly misappropriated by Linux. However, the Novell Judgment precludes SCO from challenging IBM's contributions of its own code to Linux: the Novell Judgment expressly affirms Judge Stewart's judgment that Novell properly waived any such claim and that Novell, not SCO, owns the copyrights in (and thus has the right to reproduce and distribute) the allegedly misused code.

   32. SCO's unfair competition claim (Count VI), which is a mix of SCO's other causes of action, is likewise foreclosed. Insofar as the claim concerns the alleged misconduct underlying SCO's breach of contract and copyright infringement claims, it is plainly foreclosed by the Novell Judgment, as SCO seems to concede, because Novell waived the alleged breaches and owns the relevant copyrights. The only branch of its unfair competition claim that SCO appears to seek to assert relates to "Project Monterey". But the crux of SCO's Monterey allegations is that IBM exceeded the scope of its license to certain UNIX SVr4 code (licensed to IBM by The Santa Cruz Operation Inc., not SCO, during Project Monterey) by copying the code into IBM's AIX for POWER product. SCO has never properly identified any such code that is not covered by copyrights determined in the <u>Novell</u> Litigation to be owned by Novell. Nor did SCO make the disclosures required by IBM's discovery requests and the Court's orders with respect to the "Project Monterey" code on which it would seek to base its

claim. Thus, SCO's Monterey allegations are untenable following the Novell Judgment.[2] (SCO's Monterey allegations are also untenable for the reasons discussed in paragraph 38 below.)

33. IBM thus proposes to make a motion for summary judgment, within 45 days of the reopening of the case, addressing the impact of the Novell Judgment on all remaining claims (including IBM's counterclaims). If we are correct about the impact of the Novell Judgment, it will be unnecessary for the Court to decide a number of the pending summary judgment motions to resolve these claims.

34. **Once the Court has determined the effect of the Novell Judgment, we propose it require the parties to submit a scheduling order to govern the balance of this proceeding.** If the Court were to deny the summary judgment motion that IBM proposes to make concerning the impact of the Novell Judgment on SCO's tortious interference and unfair competition claims, then it would be necessary for the Court to wade into the pending summary judgment motions concerning those claims. But before doing so, it will likely be advisable (depending in part of the nature of the Court's ruling as to the scope of the Novell Judgment) for the parties to supplement the existing briefing, and the Court may want to hear additional argument. Not only does the Novell Judgment affect these claims in important respects, but also

---

[2] In addition to disposing of the only claims that SCO seeks to pursue, the Novell Judgment had a significant impact on IBM's counterclaims. For example, the Tenth Circuit's affirmance of the Novell Judgment (1) requires the entry of judgment in favor of IBM on its Counterclaims IX and X, which seek declarations of non-infringement, as SCO cannot show IBM infringed copyrights SCO does not own; (2) requires the entry of summary judgment in favor of IBM on its Counterclaim I, insofar as it rejects the premise on which SCO purported to terminate an IBM license; and (3) precludes SCO's primary defenses as to IBM's three claims relating to SCO's copying of IBM code in Linux (Counterclaim VI, VII and VIII).

11

the pending motions were made nearly five years ago and the body of relevant case law has grown.

35. Even if the Court were to grant IBM's proposed summary judgment motion (as to the impact of the Novell Judgment) in its entirety, it will make sense for the parties to submit a proposed scheduling order based upon that decision. While the Novell Judgment had a significant impact of the claims and counterclaims in this case, it did not resolve all of IBM's counterclaims. For example, while the Novell Judgment strengthens IBM's counterclaims concerning SCO's campaign to create fear, uncertainty and doubt about IBM's products and services, it does not completely resolve all of those claims. Thus, the Court will need to address certain of the pending motions, which may also require supplemental briefing and argument.[3]

36. **Finally, lest there be any doubt about it, IBM disputes SCO's allegations of misconduct.** IBM does not believe the present motion is the place to argue the alleged merits of SCO's claims. That has been done extensively in the pending motions for summary judgment, and this is a procedural motion. But insofar as SCO's motion to reopen seeks to sell its claims, we wish at least to make one thing crystal clear: not only are SCO's claims barred by the Novell Judgment, but they are also without merit for multiple reasons independent of the Novell Judgment. As explained at length in IBM's pending motions for summary judgment, IBM did nothing to injure SCO; rather, it is SCO that undertook — with much fanfare — a multi-year campaign to profit off of the thousands of persons and entities,

---

[3] Depending on what remains in the case following the Court's ruling concerning the impact of the Novell Judgment, and the pending summary judgment motions, the Court may also need to decide the motions/objections referenced in paragraph 12 above, in the event SCO elects to pursue them.

including IBM, who have contributed to the development of Linux.

37. In touting its tortious interference claims, SCO neglects to mention that, while it has identified numerous relationships with which IBM purportedly interfered, SCO alleges nothing more than "indirect interference" as to the overwhelming majority of them (175 of 182); SCO accuses IBM of "direct interference" with only seven entities. However, SCO's allegations of "indirect interference" are untenable as a matter of law, and each of the entities with whom IBM allegedly "directly interfered" has testified that no such interference occurred or, in any event, that they did not change their relationships with SCO as a result of any IBM conduct. Moreover, (i) IBM's allegedly tortious acts were not undertaken with an improper purpose or by improper means, and (ii) there is no causal link between any act of IBM and any specific injury to SCO. These flaws in SCO's claims are described in detail in IBM's summary judgment motion, the transcript of the oral argument on that motion and the demonstrative exhibits submitted at oral argument.

38. Similarly, in touting its unfair competition claim, SCO accuses IBM of abandoning Project Monterey (a venture between IBM and The Santa Cruz Operation, Inc., not SCO), only to misappropriate source code to which IBM was given access during the project. In fact, IBM did not abandon Project Monterey; Santa Cruz did. Rather than meet its obligations on the project, Santa Cruz sold the very Unix assets involved in the project to a Linux company called Caldera Systems, which later changed its name to The SCO Group, Inc. It was only then that IBM exercised its undisputed right to terminate the project, which had simply not progressed as originally hoped. Nor did IBM misappropriate any source code in connection with Project Monterey; it simply used the code to which it was given access and which it had a contractual

13

right to use. Absent from SCO's description of its claim is any mention of the fact that (i) SCO was not a party to the joint development agreement relating to Project Monterey (the "JDA") and thus does not have the right to seek redress of rights relating to that contract; (ii) even if SCO could pursue a claim relating to the JDA, the JDA contains a two-year limitations provision, under which SCO's unfair competition claim would be untimely; (iii) the crux of SCO's claim — that IBM used Project Monterey as a pretext to misappropriate source code — is pre-empted by federal copyright law; (iv) the conduct about which SCO complains does not constitute unfair competition under well-established law; and (v) SCO cannot show that alleged unfair competition resulted in damages to SCO, which would in any case be limited to $5 million under the terms of the JDA. These flaws in SCO's claims are further described in detail in IBM's summary judgment motion, the transcript of the oral argument on that motion and the demonstrative exhibits submitted at oral argument.

39. In summary, IBM supports the expeditious resolution of this case. But the best way to bring that about is not to proceed piecemeal as to three of SCO's claims, especially where, as here, those claims are intimately related to IBM's counterclaims, which remain stayed due to SCO's bankruptcy filing, and are barred by the Novell Judgment. We respectfully submit that the most sensible way to proceed here is for the Court to enter an order (i) providing that this case shall be reopened within 5 days of the filing of a notice (by any party) that the stay of IBM's counterclaims has been lifted, which SCO should be able to accomplish expeditiously; (ii) stating that the claims that SCO concedes are foreclosed by the Novell Judgment will be dismissed when the case is reopened; (iii) directing that, within 45 days of the reopening of the case, any party may make a motion for summary judgment addressing the impact of the Novell Judgment

[[NYLIT:2587870v3:4132W:11/21/11--06:38 p]]

on all remaining claims; and (iv) ordering the parties jointly to submit, within 10 days of the entry of an order of the Court determining the impact of the Novell Judgment, a proposed scheduling order to govern the balance of the case.

## Conclusion

For the foregoing reasons, IBM respectfully submits that the Court should decline SCO's request to proceed piecemeal; the Court should proceed instead as outlined above.

DATED this 21st of November 2011

        SNELL & WILMER L.L.P.


        /s/ Amy F. Sorenson
        Alan L. Sullivan
        Amy F. Sorenson


        CRAVATH, SWAINE & MOORE LLP
        Evan R. Chesler
        David R. Marriott

        *Attorneys for Defendant/Counterclaim-Plaintiff*
        *International Business Machines Corporation*

Of Counsel:

INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1 North Castle Drive
Armonk, New York 10504
(914) 765-1900

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed on the 21st day of November, 2011 with the Clerk of the Court and delivered by CM/ECF system to the following:

> Brent O. Hatch
> Mark F. James
> HATCH, JAMES & DODGE, P.C.
> 10 West Broadway, Suite 400
> Salt Lake City, Utah 84101
>
> David Boies
> Robert Silver
> Edward Normand
> BOIES, SCHILLER & FLEXNER LLP
> 333 Main Street
> Armonk, New York 10504
>
> Stuart Singer
> BOIES, SCHILLER & FLEXNER LLP
> 100 Southeast Second Street, Suite 2800
> Miami, Florida 33131

/s/ Amy F. Sorenson

13460050.1
14070088.1