Brent O. Hatch (5715)
  bhatch@hjdlaw.com
Mark F. James (5295)
  mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

David Boies (admitted pro hac vice)
  dboies@bsfllp.com
Robert Silver (admitted pro hac vice)
  rsilver@bsfllp.com
Edward Normand (admitted pro hac vice)
  enormand@bsfllp.com
BOIES SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

Stuart Singer (admitted pro hac vice)
  ssinger@bsfllp.com
BOIES SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Counsel for The SCO Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 11 Trustee in Bankruptcy, Edward N. Cahn,<br><br>　　　　Plaintiff/Counterclaim-Defendant,<br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　Defendant/Counterclaim-Plaintiff. | **THE SCO GROUP, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO REOPEN THE CASE**<br><br>Civil No.: 2:03CV0294<br><br>Honorable Clark Waddoups |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................i

ARGUMENT..................................................................................................................................1

      A.      SCO Has the Statutory Right to Proceed with Its Claims
While IBM's Counterclaims Remain Stayed. ..........................................................1

      B.      Proceeding with SCO's Claims Cannot be Unfair or Inefficient
Where IBM Has Failed to Seek Relief from the Stay. .............................................1

      C.      IBM's Arguments Are Irrelevant to this Court's
Decision on the Motion to Reopen the Case. ..........................................................2

      D.      The Relationship Between the Claims and Counterclaims
Does Not Undo the Operation of the Bankruptcy Statute. ......................................2

      E.      The Procedures IBM Proposes Are Improper and Unnecessary. ............................3

CONCLUSION ...............................................................................................................................5

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc. ("SCO"), respectfully submits this Reply Memorandum in Support of SCO's Motion to Reopen the Case in order to proceed with SCO's Project Monterey Claim and Tortious Interference Claims.

## PRELIMINARY STATEMENT

In its opening brief, SCO highlighted uncontroverted evidence showing that IBM misappropriated hundreds of thousands of lines of SCO-developed software code in connection with the joint venture between the parties known as Project Monterey. Although IBM devotes several paragraphs to the "merits" of SCO's Project Monterey Claim, IBM does not even attempt to refute this evidence. Instead, IBM merely contends (at 10) that "SCO has never properly identified any such code" or made "the disclosures required by IBM's discovery requests and the Court's orders." That is incorrect. SCO referenced (at 7) the many pages from SCO's disclosures identifying in detail the misappropriated code.

SCO similarly set forth the facts supporting the Tortious Interference Claims. To the extent it addresses these facts at all, IBM underscores the disputed issues of material fact inherent in those claims. IBM otherwise responds merely by referencing its "summary judgment motion, the transcript of the oral argument on that motion and the demonstrative exhibits submitted at oral argument." But those materials, when considered with the corresponding materials submitted by SCO, only further highlight those disputed issues of material fact.

In addition, other than asserting that SCO's remaining claims are "effectively foreclosed by the Novell Judgment," IBM does not even attempt to respond to the facts proving otherwise. In fact, as SCO showed in its opening brief, the Project Monterey Claim and the Tortious Interference Claims are based on facts independent from and unaffected by the findings embodied

i

in the Novell Final Judgment. Now that the Novell Litigation has ended, there is no reason SCO cannot proceed with its remaining claims.

With little to say about the merits and post-Novell-judgment viability of the Project Monterey Claim and the Tortious Interference Claims, IBM inaccurately touts the alleged inefficiency and unfairness of proceeding with those claims while IBM's counterclaims remain subject to the automatic stay imposed by the Bankruptcy Code. In addition, IBM proposes unprecedented procedures for curing the alleged inefficiency and unfairness. As discussed below, IBM is wrong for several independently sufficient reasons.

The bankruptcy court has appointed the Chapter 11 Trustee in SCO's bankruptcy proceedings to operate SCO as authorized by the Bankruptcy Code. In the judgment of the Trustee, the Bankruptcy Code permits SCO's remaining claims – the only remaining asset of the bankruptcy estate and claims the Trustee deems meritorious – to proceed independent of IBM's counterclaims.

# ARGUMENT

### A. SCO Has the Statutory Right to Proceed with Its Claims While IBM's Counterclaims Remain Stayed.

SCO's right to proceed with its claims while IBM's counterclaims remain stayed derives from the undisputed operation of the Bankruptcy Code. When SCO filed for bankruptcy in 2007, the Bankruptcy Code automatically stayed all claims against the estate, including IBM's counterclaims against SCO in this litigation. The Bankruptcy Code did not impose any stay on SCO's claims. Under the operation of those statutory provisions, it is not uncommon for a debtor such as SCO to proceed with claims against creditors, such as IBM, whose counterclaims remain stayed. IBM thus takes issue with the routine operation and application of federal bankruptcy law, which neither this Court nor SCO controls.

### B. Proceeding with SCO's Claims Cannot be Unfair or Inefficient Where IBM Has Failed to Seek Relief from the Stay.

There is nothing unfair or inefficient about proceeding with the claims while the counterclaims remain stayed, because IBM itself has declined during the past four years to ask the bankruptcy court for relief from the automatic stay. Nor does IBM now say that it will seek relief from the stay while the instant motion is pending. To deflect attention from what is its tactical decision <u>not</u> to seek to lift the stay, IBM now pretends that it was somehow SCO's obligation to apply for such relief in the bankruptcy court. That is wrong.

Against this background, IBM's complaint (at 2) that SCO has not "sought relief from the stay as to IBM's counterclaims" is empty. There is no precedent for the proposition that any party, let alone a party afforded the protections of bankruptcy, has any obligation to help a counterparty in litigation advance its adversarial claims. Rather, as the party whose claims have

1

been stayed, it was up to IBM to decide whether or not to apply for relief in the bankruptcy court. IBM declined to do so.

### C. IBM's Arguments Are Irrelevant to this Court's Decision on the Motion to Reopen the Case.

Even if IBM's pleas were genuine, IBM voices them before the wrong court. Only the bankruptcy court has the authority to lift the stay of IBM's counterclaims. Insofar as IBM believes that the stay is inefficient or unfair, IBM should have made those arguments before the bankruptcy court through a motion to lift the stay. In exercising discretionary oversight over the estate, the bankruptcy court considers precisely such issues in deciding whether a creditor's interest in pursuing its claims against the estate trumps the protections the Bankruptcy Code affords the estate by default. IBM thus attempts to use fairness and efficiency – considerations that would have informed the bankruptcy court's decision on lifting the stay – to inform this Court's decision on an independent issue: whether SCO can now pursue claims independent of and unrelated to the Novell Litigation. IBM resorts to this diversion because it cannot invoke any rule that precludes SCO from pursuing those claims.

IBM goes so far as to suggest (at 8) that this case should be reopened only on the condition that "the stay has been fully lifted concerning IBM's counterclaims." IBM thus would hold this case hostage to its own failure even to seek the very remedy that it now claims impedes the reopening of this case. That position is "inefficient and fundamentally unfair."

### D. The Relationship Between the Claims and Counterclaims Does Not Undo the Operation of the Bankruptcy Statute.

IBM's view that its counterclaims are "inextricably intertwined" with SCO's claims is beside the point. The stay provisions of the Bankruptcy Code stay a creditor's claims and permit a

2

debtor's claims to proceed regardless of the extent to which such claims are " intertwined." The way for IBM to lift the automatic stay was to ask the bankruptcy court for such relief.

In addition, even if the question were relevant to the Court's decision, litigating SCO's claims alone would be more efficient than litigating them together with the counterclaims. Because SCO's remaining claims are its only asset, IBM cannot possibly recover on its counterclaims (even if, contrary to fact, IBM had a viable damages theory) if SCO does not prevail on its affirmative claims. In that case, there would be no need to proceed with IBM's counterclaims at all. On the other hand, under the principle of estoppel, if SCO prevails on its claims, then IBM would necessarily lose on its counterclaims to the extent they overlap with SCO's claims. To the extent the counterclaims do not overlap with SCO's claims, there would be no inefficiency in litigating them separately.

### E. The Procedures IBM Proposes Are Improper and Unnecessary.

IBM asks the Court to enter (at 14) an order "providing that this case shall be reopened within 5 days of the filing of a notice (by any party) that the stay of IBM's counterclaims has been lifted, which SCO should be able to accomplish expeditiously." IBM thus asks this Court to subvert the Bankruptcy Code by conditioning the adjudication of SCO's claims on SCO's voluntary waiver, for the benefit of IBM, of the protections SCO enjoys under the Bankruptcy Code. Because SCO has not waived those statutory protections, the procedure IBM proposes effectively puts SCO's claims at IBM's mercy. That procedure would be unprecedented and improper.

IBM also asks the Court (at 14-15) to enter an order (1) permitting the parties to "make a motion for summary judgment addressing the impact of the Novell Judgment on all remaining claims," and (2) directing the parties to submit a proposed scheduling order for the "balance of the

3

case," "within 10 days of the entry of an order of the Court determining the impact of the Novell Judgment."

Even putting aside the undue delay that IBM's proposal would create, the procedure IBM proposes is improper. On the pretext that the parties disagree on the impact of the Novell Final Judgment on SCO's remaining claims, IBM seeks a new round of summary judgment motions preliminary to the round that has been pending since 2006. If SCO survives this preliminary round, then the Court, after yet additional briefing, would rule on the pending summary judgment motions, thus affording IBM another opportunity to obtain dismissal of SCO's claims on summary judgment. IBM's proposal thus amounts to a thinly veiled attempt to secure for itself two bites at the apple.

The additional round of summary judgment motions is also unnecessary. The issues in the Novell case and their impact on this litigation have not changed since 2006. Indeed, IBM's pending summary judgment motions themselves include extensive briefing regarding the impact of those issues. In resolving the pending summary judgment motions, the Court will thus have the facts and argument it needs to determine the impact, if any, of the Novell Litigation on SCO's remaining claims. If there is to be additional briefing, it should be limited to <u>supplementing</u> the pending summary judgment motions in order to (1) shed light on the precise contours of those claims, and (2) brief any relevant changes in the law. If the Court concludes that it would benefit from such supplemental briefing (or argument), SCO submits that such briefing cannot properly be treated as an additional round of summary judgment motions.

## **CONCLUSION**

For the reasons set forth above and in its opening brief, SCO respectfully asks the Court to reopen this case in order to proceed with SCO's Project Monterey Claim and Tortious Interference Claims.

DATED this 8th day of December, 2011.

>By: /s/ Brent O. Hatch
>HATCH, JAMES & DODGE, P.C.
>Brent O. Hatch
>Mark F. James
>
>BOIES, SCHILLER & FLEXNER LLP
>David Boies
>Robert Silver
>Stuart H. Singer
>Edward Normand
>
>*Counsel for The SCO Group, Inc.*