SNELL & WILMER L.L.P.
Alan L. Sullivan (3152)
Amy F. Sorenson (8947)
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: asullivan@swlaw.com
        asorenson@swlaw.com

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (admitted pro hac vice)
David R. Marriott (7572)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
Email: echesler@cravath.com
        dmarriott@cravath.com

*Attorneys for Defendant/Counterclaim-Plaintiff*
  *International Business Machines Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 7 Trustee in Bankruptcy, Edward N. Cahn,<br><br>     Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>     Defendant/Counterclaim-Plaintiff. | **IBM'S MOTION AND MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT ON THE BASIS OF THE <u>NOVELL</u> JUDGMENT**<br><br>Civil No. 2:03-cv-00294-DN<br><br>Honorable David Nuffer |

**<u>Table of Contents</u>**

Page

Table of Authorities ..................................................................................................... ii

Introduction ................................................................................................................... 1

Background .................................................................................................................... 2

Statement of Elements and Undisputed Material Facts .............................................. 6

    A.    SCO's Remaining Claims ............................................................................. 6

        1.    Counts VII and IX:  Tortious Interference .................................... 6

        2.    Count VI:  Unfair Competition .................................................... 7

    B.    IBM's Counterclaims ................................................................................... 8

        1.    Counterclaims IX and X:  Declaration of Non-Infringement of
            Copyrights .................................................................................... 8

        2.    Counterclaims II, IV, and V:  Lanham Act, Intentional Interference
            with Prospective Economic Relations, and Unfair and Deceptive
            Trade Practices ............................................................................ 9

Standard of Decision .................................................................................................. 11

Argument ................................................................................................................... 12

    I.    THE <u>NOVELL</u> JUDGMENT LIMITS SCO'S REMAINING
        CLAIMS. .................................................................................................. 12

    II.    THE <u>NOVELL</u> JUDGMENT AFFECTS IBM'S
        COUNTERCLAIMS ................................................................................ 13

Conclusion ................................................................................................................. 16

## Table of Authorities

Page(s)

Cases

Cottrell, Ltd. v. Biotrol Int'l., Inc.,
  191 F.3d 1248 (10th Cir. 1999) ............................................................10

Dow Jones & Co., Inc. v. Int'l Secs. Exch., Inc.,
  451 F.3d 295 (2d Cir. 2006) .................................................................7

Feist Pubs. v. Rural Tel. Serv. Co.,
  499 U.S. 340 (1991) ........................................................................8, 14

In re Corey,
  583 F.3d 1249 (10th Cir. 2009) ............................................................11

Latin Am. Music Co. Inc. v. Media Power Grp., Inc.,
  705 F.3d 34 (1st Cir. 2013) ................................................................13

Minden Pictures, Inc. v. John Wiley & Sons, Inc.,
  No. C-12-4601, 2013 WL 1995208 (N.D. Cal. May 13, 2013) ...............................13

Moss v. Kopp,
  559 F.3d 1155 (10th Cir. 2009) ....................................................13, 14, 15

Overstock.com v. SmartBargains, Inc.,
  192 P.3d 858 (Utah 2008) .................................................................6, 10

Pannonia Farms, Inc. v. Re/Max Int'l., Inc.,
  407 F. Supp. 2d 41 (D.D.C. 2005) ..........................................................13

Salguero v. City of Clovis,
  366 F.3d 1168 (10th Cir. 2004) ............................................................11

SCO Group, Inc. v. Novell, Inc.,
  721 F. Supp. 2d 1050 (D. Utah 2010), aff'd, 439 F. App'x 688 (10th Cir. 2011) .......... passim

Spagnola v. Chubb Corp.,
  574 F.3d 64 (2d Cir. 2009) ................................................................10

Teevee Toons, Inc. v. MP3.com, Inc.,
  134 F. Supp. 2d 546 (S.D.N.Y. 2001) .......................................................14

Universal Furniture Int'l., Inc. v. Frankel,
  835 F. Supp. 2d. 35 (M.D.N.C. 2011) .......................................................14

Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council,
  857 F.2d 55 (2d Cir. 1988).............................................................................................7

Yash Raj Films (USA), Inc. v. Sidhu,
  No. CV F 09-0233, 2010 WL 1032792 (E.D. Cal. Mar. 19, 2010) ...........................14

Statutes & Rules

28 U.S.C. § 2201 .........................................................................................................8

New York General Business Law § 349 ...............................................................10, 15

Federal Rule of Civil Procedure 56 ...........................................................................11

District of Utah Civil Rule 56-1.................................................................................6

Defendant/Counterclaim-Plaintiff International Business Machines Corporation ("IBM")

respectfully submits this motion and memorandum for partial summary judgment concerning the

remaining claims asserted by Plaintiff/Counterclaim-Defendant The SCO Group, Inc. (n/k/a TSG

Group, Inc.) ("SCO") and certain of IBM's counterclaims.

## Introduction

Following the final judgment in SCO Group, Inc. v. Novell, Inc., No. 2:04-cv-00139-TS

(D. Utah) (the "Novell Judgment"), and this Court's Partial Judgment Dismissing SCO Claims

(Dkt. # 1123), only three SCO claims remain in this case:  two tortious interference claims

(Counts VII and IX) and the portion of SCO's unfair competition claim (Count VI) concerning

Project Monterey.  SCO has argued that the Novell Judgment "has no bearing" on the remaining

tortious interference claims or on the only remaining portion of its unfair competition claim.  By

its silence, SCO also suggests the Novell Judgment has no bearing on any of IBM's

counterclaims.  In fact, the Novell Judgment affects both SCO's remaining claims and IBM's

counterclaims against SCO.

SCO's two tortious interference claims accuse IBM of (among other things) infringing

certain pre-1996 UNIX copyrights (the "Copyrights") and breaching IBM's UNIX licensing

agreements with AT&T (the "Licensing Agreements").  Similarly, the remaining portion of

SCO's unfair competition claim appears to fault IBM for making contributions to Linux in

purported breach of the Licensing Agreements.  Under the Novell Judgment, however, Novell,

not SCO, owns the Copyrights.  The Novell Judgment also holds that Novell has waiver rights

relating to the Licensing Agreements, under which Novell permissibly waived SCO's claims that

IBM breached the Licensing Agreements.  Thus, SCO is precluded from arguing otherwise, further limiting its claims against IBM.  (See Section I below.)

The Novell Judgment likewise affects IBM's counterclaims.  Whether SCO owned the Copyrights and whether Novell waived the alleged breaches of the Licensing Agreements are elements of, or integral to, IBM's counterclaims.  For example, IBM's Ninth and Tenth Counterclaims seek declarations of non-infringement concerning the Copyrights, which SCO has been held not to own (under the Novell Judgment).  SCO cannot accuse IBM of infringing copyrights that have been finally determined to belong to Novell, not SCO.  Moreover, to the extent IBM's other counterclaims can be proven by a showing that SCO falsely claimed to own the Copyrights and refused to recognize Novell's waiver of IBM's alleged breaches of the Licensing Agreements, SCO is precluded from arguing otherwise.  Thus, the Novell Judgment affects IBM's counterclaims, as well as SCO's claims.  (See Section II below.)

## Background

In early 2003, SCO attempted to extract revenue from users of the Linux operating system by, among other things, embarking on a far-reaching publicity campaign to create the false and unsubstantiated impression that SCO had rights to the Linux operating system and by bringing baseless legal claims against IBM and others.[1]

---

[1] UNIX and Linux are computer operating systems.  UNIX was first developed by AT&T and was licensed for widespread enterprise use.  Linux was begun by an undergraduate at the University of Helsinki (Linus Torvalds) and is open source software, meaning it is free in the sense that it is publicly available and royalty free.  Linux users have the freedom to run, copy, distribute, study, adapt, and improve the Linux software.  IBM obtained UNIX licenses from AT&T (i.e., the Licensing Agreements), under which its AIX and Dynix products were developed.  IBM also made a substantial investment in the development of Linux.  In this case, SCO took the position that IBM improperly contributed certain AIX and Dynix material to Linux.

SCO asserted nine claims against IBM in the present case:  (1) four breach of contract claims (Counts I to IV); (2) one copyright infringement claim (Count V); (3) one unfair competition claim (Count VI); and (4) three tortious interference claims (Counts VII to IX).  The crux of SCO's case was that it owned the Copyrights and other rights to the UNIX operating system and that IBM and others violated SCO's alleged rights and injured SCO by contributing to the development of the Linux operating system.[2]

Based on the conduct underlying SCO's attack on Linux and IBM, IBM asserted a number of counterclaims against SCO, including:  (1) two counterclaims for declaration of non-infringement of copyright (Counterclaims IX and X); (2) one counterclaim for breach of contract (Counterclaim I); (3) three counterclaims relating to SCO's copying of IBM code in Linux (Counterclaims VI to VIII); (4) four counterclaims concerning SCO's campaign to create fear, uncertainty, and doubt about IBM's products and services (Counterclaims II to V); and (5) one counterclaim for a declaration of IBM's rights under all of its other counterclaims (Counterclaim XIV).

Both Judge Kimball (to whom this case was initially assigned) and Magistrate Judge Wells entered a series of orders calling SCO's claims into question and materially limiting SCO's case.  SCO has challenged these rulings in motions/objections that are fully briefed:

---

[2] AT&T sold its UNIX business to Novell in 1993; Novell, in turn, sold some, but not all, of its UNIX assets to The Santa Cruz Operation, Inc. ("Santa Cruz") in 1995.  Plaintiff Caldera International (which later changed its name to The SCO Group, Inc.), acquired most, if not all, of the UNIX assets from Santa Cruz in 2001.  As the Novell Judgment established, Novell retained the Copyrights and the right to waive claims against IBM and others based on alleged breaches of the Licensing Agreements, and Novell did, in fact, validly waive those claims.  SCO Grp., Inc. v. Novell, Inc., 721 F. Supp. 2d 1050, 1075-77 (D. Utah 2010), aff'd, 439 F. App'x 688, 697-98, 700 (10th Cir. 2011).

(1) Motion for Reconsideration of November 29th Order (Dkt. # 897); (2) SCO's Objection to
the Magistrate Judge's Decision on IBM's Motion to Confine (Dkt. # 899); (3) SCO's Motion to
Amend Its December 2005 Submission (Dkt. # 913); (4) SCO's Motion for Reconsideration of
the Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Dkt. # 986); and
(5) SCO's Objections to the Magistrate Court's Order Denying SCO's Motion for Relief for
IBM's Spoliation of Evidence (Dkt. # 995 (S)).[3]

Thereafter, IBM filed six summary judgment motions, seeking a judgment in its favor on
all of SCO's claims and two of IBM's counterclaims.  SCO filed three summary judgment
motions, seeking judgment on seven of IBM's counterclaims and one of SCO's claims.

Before ruling on these motions, on August 10, 2007, Judge Kimball entered an order in
the Novell litigation, rejecting a keystone of SCO's litigation campaign.  Judge Kimball ruled
that Novell, not SCO, owns the Copyrights and that Novell has the right, which it has exercised
on IBM's behalf, to waive SCO's purported claims against IBM.

Before Judge Kimball was able to rule on the pending motions, however, SCO filed a
petition for relief under the Bankruptcy Code in Delaware, where SCO is incorporated.  The
instant case was then closed (administratively) pending resolution of SCO's bankruptcy
proceeding, which gave rise to an automatic stay.

On August 24, 2009, the Tenth Circuit reversed in part Judge Kimball's ruling in the
Novell litigation and remanded the case for trial.  The Tenth Circuit ruled that there were

---

[3] IBM believes the Novell Judgment moots most, if not all, of these motions; however, we
understand this issue to be beyond the scope of the present briefing.  IBM proposes to advise the
Court as to the impact of the Novell Judgment on these motions when (pursuant to the Court's
order of June 14, 2013 (Dkt. # 1115)) it advises the Court as to which of the pending summary
judgment motions still require decision.

questions of fact as to whether Novell or SCO owned the Copyrights and whether Novell could waive SCO's claims against IBM under the Licensing Agreements.

Upon remand, Judge Kimball recused himself from both the <u>Novell</u> litigation and this case. This case was reassigned to Judge Campbell, and the <u>Novell</u> litigation was reassigned to Judge Stewart.

On March 30, 2010, a jury returned a verdict against SCO in the <u>Novell</u> litigation, finding that Novell owns the Copyrights, which lie at the heart of SCO's case against IBM. On June 10, 2010, Judge Stewart issued findings of fact and conclusions of law, holding, among other things, that Novell had the authority to waive SCO's claims against IBM. On the same day, Judge Stewart issued a final judgment embodying the jury verdict and his findings of fact and conclusions of law.

On August 30, 2011, the Tenth Circuit affirmed the <u>Novell</u> Judgment, bringing that case to a close. The Tenth Circuit ruled that "the [C]opyrights were not transferred in the sale" of UNIX interests from Novell to SCO, and that "Novell [has] the ability to waive any claim of right SCO might make with regard" to IBM's Licensing Agreements (which Novell exercised properly).

Thereafter, the case was reassigned to Your Honor, and (without objection) the Court entered a partial judgment dismissing with prejudice the six claims that SCO conceded to be foreclosed by the <u>Novell</u> Judgment (Counts I to V and VIII) and the aspects of SCO's unfair competition claim (Count VI) not related to Project Monterey.

In an order dated June 14, 2013, the Court granted IBM leave to file a motion for summary judgment limited to the effect of the <u>Novell</u> Judgment on the remainder of this case.

IBM makes the present motion pursuant to that order.  We do not address here the numerous grounds for dismissal of SCO's claims that are the subject of the summary judgment motions filed before the case was administratively closed due to SCO's bankruptcy.

**Statement of Elements and Undisputed Material Facts**

This motion is limited to the effect of the <u>Novell</u> Judgment on the remaining claims and counterclaims in suit.  Pursuant to this Court's <u>Civil Rule 56-1(b)(2)</u>, we here provide a statement of elements and undisputed material facts pertinent to the <u>Novell</u> Judgment and the remaining claims and counterclaims in this case.

A.    <u>SCO's Remaining Claims</u>

1.   *Counts VII and IX:  Tortious Interference*

To establish its claims for tortious interference (Counts VII and IX), SCO must show (among other things) that IBM engaged in wrongful conduct constituting interference with SCO's economic relations, such as by violating a statute or a recognized common-law rule. <u>Overstock.com v. SmartBargains, Inc., 192 P.3d 858, 864 (Utah 2008)</u>.

There is no genuine issue of material fact that:

(1)    SCO's tortious interference claims "turn in part on the same conduct that forms the basis for SCO's other causes of action:  namely, IBM's wrongful conduct in executing its Linux strategy, including breach of contract, misrepresentation of its rights and actions, copyright infringement and unfair competition".  (SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Interference Claims, <u>Dkt. # 910</u> at 1; Dkt. # 868 at 1 (S).)[4]

---

[4] Where applicable, parallel citations are made to redacted and sealed versions of previously filed documents.  Redacted versions are cited as ("Dkt. #___) and are hyperlinked.  Sealed versions are

(2)     SCO alleges that "IBM interfered with SCO's business relations in the UNIX on Intel market by wrongfully disclosing SCO's UNIX proprietary technology" with "appreciation of SCO's right to prevent disclosure of the technology to Linux". (SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Interference Claims, Dkt. # 910 at 31; Dkt. # 868 at 31 (S).)

(3)     SCO alleges that "IBM gave SCO's most significant asset—its protected intellectual property—to the Linux community, and thereby facilitated the development of a free UNIX clone that displaced SCO's UNIX products in a market they had previously dominated." (SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Interference Claims, Dkt. # 910 at 1; Dkt. # 868 at 1 (S).)

(4)     The Novell Judgment establishes (a) that Novell, not SCO, owns the Copyrights; and (b) that "Novell had the authority . . . to direct SCO to waive its claims against [the Licensing Agreements], that Novell had the authority to waive such claims on SCO's behalf, and that SCO was obligated to recognize such waivers". Novell, 721 F. Supp. 2d at 1075-76, aff'd, 439 F. App'x at 697-98, 700. Novell's exercise of that authority was proper. See id. at 1077.

  2.    *Count VI:  Unfair Competition*

To establish its claim for unfair competition, SCO must establish (among other things) that IBM engaged in wrongful conduct such as misappropriation of SCO's property. See Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council, 857 F.2d 55, 75 (2d Cir. 1988); Dow Jones & Co., Inc. v. Int'l Secs. Exch., Inc., 451 F.3d 295, 302 n.8 (2d Cir. 2006).

---

cited as (Dkt. #__ (S)).  This brief does not cite language that was redacted from a document filed under seal.

There is no genuine issue of material fact that:

(1)     SCO's unfair competition claim turns in part on allegations of "[m]isappropriation of source code . . . and confidential information of plaintiff" and "[c]ontribution of protected source code and methods for incorporation into one or more Linux software releases".  (SCO's Second Am. Compl., Dkt. # 108 at ¶ 184.)

(2)     SCO alleges that IBM used "SCO's valuable [UNIX] source code" (SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Unfair Competition Claims, Dkt. # 909 at 1-2; Dkt. # 861 at 1-2 (S)), "to mature Linux into a commercially hardened operating system capable of handling mission-critical workloads" (Dkt. # 909 at 14 ¶ 39; Dkt. # 861 at 14 ¶ 39 (S)).

(3)     The Novell Judgment establishes (a) that Novell, not SCO, owns the Copyrights; and (b) that "Novell had the authority . . . to direct SCO to waive its claims against [the Licensing Agreements], that Novell had the authority to waive such claims on SCO's behalf, and that SCO was obligated to recognize such waivers".  Novell, 721 F. Supp. 2d at 1075-76, aff'd, 439 F. App'x at 697-98, 700.  Novell's exercise of that authority was proper.  See id. at 1077.

B.     IBM's Counterclaims

1.     *Counterclaims IX and X:  Declaration of Non-Infringement of Copyrights*

A party is entitled to a declaration of non-infringement of copyright where the party threatening infringement does not own the allegedly infringed copyrights.  See 28 U.S.C. § 2201 (the Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration"); see also Feist Pubs. v. Rural Tel.

Serv. Co., 499 U.S. 340, 361 (1991) ("ownership of a valid copyright" is an element of a claim for copyright infringement).

There is no genuine issue of material fact that:

(1)     IBM's Counterclaim IX seeks a declaration of non-infringement of the Copyrights SCO purported to own, based on IBM's continued distribution of IBM's AIX and Dynix products after SCO claimed to terminate IBM's Licensing Agreements, and on IBM's alleged breaches of its Licensing Agreements.  (IBM's Second Am. Counterclaims, Dkt. # 127 at ¶ 167.)

(2)     IBM's Counterclaim X seeks a declaration that the Linux kernel "does not infringe copyrights owned by SCO" (IBM's Mem. in Support of its Mot. for Summ. J. on its Claim for Decl. J. of Non-Infringement, Dkt. # 838 at 1; Dkt. # 805 at 1 (S)), because, among other reasons, "SCO cannot establish ownership of copyrights covering the [UNIX] code" that SCO identified in the kernel (Dkt. # 838 at 77; Dkt. # 805 at 77 (S)).

(3)     The Novell Judgment establishes (a) that Novell, not SCO, owns the Copyrights; and (b) that "Novell had the authority . . . to direct SCO to waive its claims against [the Licensing Agreements], that Novell had the authority to waive such claims on SCO's behalf, and that SCO was obligated to recognize such waivers".  Novell, 721 F. Supp. 2d at 1075-76, aff'd, 439 F. App'x at 697-98, 700.  Novell's exercise of that authority was proper.  See id. at 1077.

> 2.     *Counterclaims II, IV, and V:  Lanham Act, Intentional Interference with Prospective Economic Relations, and Unfair and Deceptive Trade Practices*

IBM can establish elements of its Second, Fourth, and Fifth Counterclaims by showing that SCO engaged in wrongful conduct, such as by "mak[ing] material false or misleading

representations of fact in connection with the commercial advertising or promotion of [IBM's] product[s]", Cottrell, Ltd. v. Biotrol Int'l., Inc., 191 F.3d 1248, 1252 (10th Cir. 1999) (Lanham Act claim); by uttering defamatory statements or disparaging falsehoods about IBM's business, Overstock.com, 192 P.3d at 864 (tortious interference claim); and by undertaking an "act or practice" that was "misleading in a material respect", Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (unfair and deceptive trade practices claim under N.Y. Gen. Bus. L. § 349).

There is no genuine issue of material fact that:

(1)    SCO publicly stated it owned and IBM infringed the Copyrights held to be owned by Novell.  For example:  in September 2003, in an interview with Infoconomy, SCO, through its CEO Darl McBride, stated, "we counted over a million lines of code that we allege are infringed in the Linux kernel today out of a total code base of five million . . . . The vast majority of that did, in fact, come from IBM" (Sorenson Decl., Ex. 1 (internal quotation marks omitted);[5] see also IBM's Mem. in Opp. to SCO's Mot. for Partial Summ. J. on IBM's Second, Third, Fourth and Fifth Counterclaims, Dkt. # 882 at 9 ¶ 19(h); Dkt. # 865 at 9 ¶ 19(h) (S)); and in May 2003, SCO sent letters to 1,500 of the world's largest corporations claiming that Linux infringed SCO's intellectual property rights (Sorenson Decl., Exs. 2 & 3; see also Dkt. # 882 at 8 ¶¶ 19(a), (d); Dkt. # 865 at 8 ¶ 19(a), (d) (S)).

(2)    SCO also publicly stated that IBM's AIX and Dynix products could no longer be distributed because SCO lawfully terminated IBM's Licensing Agreements.

---

[5] Exhibit citations are to the Declaration of Amy F. Sorenson in Support of IBM's Motion and Memorandum for Partial Summary Judgment on the Basis of the Novell Judgment ("Sorenson Decl."), dated July 22, 2013.

For example:  on March 6, 2003, in an interview with eWeek, SCO, through Mr. McBride, stated, "IBM has been happily giving part of the AIX code away to the Linux community, but the problem is that they don't own the AIX code" (Sorenson Decl., Ex. 4; see also Dkt. # 882 at 10 ¶ 23(a); Dkt. # 865 at 10 ¶ 23(a) (S)); and, on June 16, 2003, in a press release, SCO, again through Mr. McBride, stated, "IBM no longer has the authority to sell or distribute AIX and customers no longer have the right to use AIX software" (Sorenson Decl., Ex. 5; see also Dkt. # 882 at 10 ¶ 23(e); Dkt. # 865 at 10 ¶ 23(e) (S)).

(3)     The Novell Judgment establishes (a) that Novell, not SCO, owns the Copyrights; and (b) that "Novell had the authority . . . to direct SCO to waive its claims against [the Licensing Agreements], that Novell had the authority to waive such claims on SCO's behalf, and that SCO was obligated to recognize such waivers". Novell, 721 F. Supp. 2d at 1075-76, aff'd, 439 F. App'x at 697-98, 700. Novell's exercise of that authority was proper. See id. at 1077.

## Standard of Decision

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment, or partial summary judgment, is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law". Id. Courts may grant summary judgment on the grounds that a claim, or an issue presented as part of a claim, is resolved by issue preclusion. See In re Corey, 583 F.3d 1249, 1250-51 (10th Cir. 2009) (affirming grant of summary judgment on issue preclusion grounds); Salguero v. City of Clovis, 366 F.3d 1168, 1172 (10th Cir. 2004) (same).

**Argument**

I.      THE <u>NOVELL</u> JUDGMENT LIMITS SCO'S REMAINING CLAIMS.

SCO contends that the <u>Novell</u> Judgment "has no bearing" on either its two remaining tortious interference claims or the remaining portion of its unfair competition claim.  (SCO's Statement in Compliance with the Court's Order Reopening the Case, <u>Dkt. # 1119</u> at 3.)  That is incorrect.  The <u>Novell</u> Judgment bars aspects of all three claims.

By SCO's own account, its tortious interference claims allege that "IBM gave SCO's most significant asset—its protected intellectual property—to the Linux community, and thereby facilitated the development of a free UNIX clone that displaced SCO's UNIX products in a market they had previously dominated."  (SCO's Mem. in Opp. to IBM's Mot. for Summ. J. on SCO's Interference Claims, <u>Dkt. # 910</u> at 1; Dkt. # 868 at 1 (S).)  To further quote SCO, its tortious interference claims "turn in part on the same conduct that forms the basis for SCO's other causes of action", including SCO's claims for breach of contract and copyright infringement.  (<u>Dkt. # 910</u> at 1; Dkt. # 868 at 1 (S).)  Similarly, SCO has described its unfair competition claim concerning Project Monterey as involving improper contributions by IBM of its own source code to Linux.  According to SCO, IBM used "SCO's valuable [UNIX] source code" to aid the development of Linux.  (<u>Dkt. # 909</u> at 1-2; Dkt. # 861 at 1-2 (S); <u>Dkt. # 909</u> at 14 ¶ 39; Dkt. # 861 at 14 ¶ 39 (S)).  SCO has further stated that its unfair competition claim arises in part from IBM's "misappropriation of code" and that, "[i]n the absence of a license or some other form of authorization, IBM's use of SCO's code is improper".  (<u>Dkt. # 909</u> at 34; Dkt. # 861 at 34 (S).)

Under the <u>Novell</u> Judgment, Novell, not SCO, owns the Copyrights, and Novell

permissibly waived SCO's claims against IBM arising from the Licensing Agreements.  Novell, 721 F. Supp. 2d at 1075-76, aff'd, 439 F. App'x at 697-98, 700.  Thus, insofar as SCO's remaining claims purport to allege infringement of the Copyrights owned by Novell and breaches of the Licensing Agreements waived by Novell, they are foreclosed by the Novell Judgment and cannot be relitigated here.  See Moss v. Kopp, 559 F.3d 1155, 1161 (10th Cir. 2009) (noting that issue preclusion is proper where "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action"); see also Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 41-42 (1st Cir. 2013) (barring plaintiff from relitigating copyright ownership after it was found not to own copyrights in prior action); Minden Pictures, Inc. v. John Wiley & Sons, Inc., No. C-12-4601, 2013 WL 1995208, at *7-8 (N.D. Cal. May 13, 2013) (same); Pannonia Farms, Inc. v. Re/Max Int'l., Inc., 407 F. Supp. 2d 41, 44 (D.D.C. 2005) (same).

While the Novell Judgment does not by itself bar all of SCO's remaining claims, it plainly forecloses the above-stated aspects of the claims, which cannot be relitigated here.

II.      THE NOVELL JUDGMENT AFFECTS IBM'S COUNTERCLAIMS.

The effect of the Novell Judgment is not limited to SCO's claims; it compels judgment in IBM's favor on two of its counterclaims and precludes further litigation of aspects of IBM's other counterclaims.

IBM's Ninth and Tenth Counterclaims seek a declaration that IBM did not infringe the

Copyrights that SCO claims to have been infringed by IBM's contributions to Linux and by IBM's continued distribution of AIX and Dynix.[6]  (IBM's Second Am. Counterclaims, Dkt. # 127 at ¶¶ 167, 173.)  Following the Novell Judgment, SCO does not own the allegedly infringed Copyrights; Novell does.  So SCO could not possibly proceed on a claim against IBM for copyright infringement, and thus a declaration of non-infringement should be entered in favor of IBM.  See, e.g., Feist Pubs., 499 U.S. at 361.  SCO cannot now relitigate the issues decided against it in the Novell Judgment.  See Moss, 559 F.3d at 1161; see also Universal Furniture Int'l. Inc. v. Frankel, 835 F. Supp. 2d 35, 42-43 (M.D.N.C. 2011) (barring defendant from relitigating copyright ownership); see also Yash Raj Films (USA), Inc. v. Sidhu, No. CV F 09-0233, 2010 WL 1032792, at *5-6 (E.D. Cal. Mar. 19, 2010) (same, where defendant pleaded guilty to criminal infringement in prior action); Teevee Toons, Inc. v. MP3.com, Inc., 134 F. Supp. 2d 546, 546-47 (S.D.N.Y. 2001) (same, where defendant was found to have willfully infringed in prior action).  Thus, judgment should be entered in favor of IBM on its counterclaims seeking a declaration of non-infringement (Counterclaims IX and X).

While the Novell Judgment may not necessarily resolve all of IBM's other counterclaims in their entirety, it establishes important elements of those counterclaims.  For example, IBM alleges that SCO violated the Lanham Act (Counterclaim II); intentionally interfered with IBM's

---

[6] Notably, IBM's Ninth Counterclaim mirrors SCO's now-dismissed copyright infringement claim (Count V), which alleges that IBM is liable for breaching the Licensing Agreements and continuing to sell AIX and Dynix.  (SCO's Second Am. Compl., Dkt. # 108 at ¶ 179.)  SCO has agreed that Count V should be dismissed with prejudice because, under the Novell Judgment, "Novell (1) owns the [C]opyrights to pre-1996 UNIX source code and (2) has the right to waive SCO's contract claims against IBM for breach of the [L]icensing [A]greements pursuant to which IBM licensed pre-1996 UNIX source code."  (SCO's Statement in Compliance with the Court's Order Reopening the Case, Dkt. # 1119 at 2.)  The Court dismissed Count V in its Partial Judgment Dismissing SCO Claims.  (Dkt. # 1123.)

prospective economic relations (Counterclaim IV); and committed unfair and deceptive trade practices in violation of New York General Business Law § 349 (Counterclaim V).  (IBM's Second Am. Counterclaims, Dkt. # 127 at ¶¶ 119-124, 130-41).  Elements of these claims can be proven by showing that SCO falsely claimed that (i) it owned the Copyrights, which have now been held to be owned by Novell; (ii) IBM improperly contributed code to Linux in violation of the same Copyrights; and (iii) SCO properly terminated IBM's right to distribute AIX and Dynix.[7]  See Novell, 721 F. Supp. 2d at 1075-77, aff'd, 439 F. App'x at 697-98, 700.  Insofar as it establishes that Novell owns the Copyrights and properly waived IBM's alleged breaches of the Licensing Agreements, the Novell Judgment establishes elements of IBM's claims, and precludes SCO from arguing otherwise.

Contrary to SCO's suggestion, the Novell Judgment is not immaterial to IBM's counterclaims.  It compels a judgment in IBM's favor on two of the counterclaims, and it resolves elements of other counterclaims against SCO.[8]

---

[7] SCO is also precluded from asserting certain of its defenses.  For example, SCO pleaded as a defense that IBM's contractual rights to license AIX and Dynix were properly revoked on the grounds that IBM breached its Licensing Agreements.  (See SCO's Answer to IBM's Second Am. Counterclaims, Dkt. # 141 at 19.)  Insofar as the Novell Judgment establishes that Novell waived SCO's claims that IBM breached the Licensing Agreements, it further establishes that SCO's attempt to terminate the Licensing Agreements was improper.  SCO is precluded from arguing otherwise.  See, e.g., Moss, 559 F.3d at 1161.

[8] We do not here undertake to identify all respects in which the Novell Judgment affects SCO's claims or IBM's counterclaims, as a ruling that SCO is precluded from litigating the issues decided against it in the Novell litigation should suffice to guide the further prosecution of this case.

## Conclusion

For the foregoing reasons, IBM respectfully requests that the Court enter an order for partial summary judgment against SCO: (1) dismissing SCO's three remaining claims insofar as they allege infringement of the Copyrights and breaches by IBM of the Licensing Agreements; (2) declaring that SCO cannot sue IBM for infringement of the Copyrights, as requested in IBM's Ninth and Tenth Counterclaims; and (3) precluding SCO from relitigating, in connection with IBM's other counterclaims, the issues decided against SCO in the Novell litigation, such as that Novell owns the Copyrights and permissibly waived the alleged breaches by IBM of the Licensing Agreements.

DATED this 22nd day of July, 2013.

SNELL & WILMER L.L.P.

/s/ Amy F. Sorenson
Alan L. Sullivan
Amy F. Sorenson


CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*

Of Counsel:
INTERNATIONAL BUSINESS MACHINES CORPORATION
Alec S. Berman
1 North Castle Drive
Armonk, New York 10504
(914) 765-1900

*Attorneys for Defendant/Counterclaim-Plaintiff*
*International Business Machines Corporation*