Brent O. Hatch (5715)
bhatch@hjdlaw.com
Mark F. James (5295)
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Stuart Singer (admitted pro hac vice)
ssinger@bsfllp.com
BOIES SCHILLER & FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022

Edward Normand (admitted pro hac vice)
enormand@bsfllp.com
Jason Cyrulnik (admitted pro hac vice)
jcyrulnik@bsfllp.com
Mauricio A. Gonzalez (admitted pro hac vice)
magonzalez@bsfllp.com
BOIES SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200
Facsimile:  (914) 749-8300

*Counsel for The SCO Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 7 Trustee in Bankruptcy, Edward N. Cahn,<br><br>          Plaintiff/Counterclaim-Defendant,<br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>          Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM IN RESPONSE TO IBM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE BASIS OF THE <u>NOVELL</u> JUDGMENT**<br><br>Civil No.: 2:03-CV-00294-DN<br><br>Honorable David Nuffer |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................2

SCO'S RESPONSE TO IBM'S STATEMENT OF ......................................................................4

ELEMENTS AND UNDISPUTED MATERIAL FACTS ..........................................................4

      A.      SCO's Remaining Unfair Competition Claim. ........................................................4

      B.      SCO's Remaining Tortious Interference Claims. ....................................................5

      C.      IBM's Counterclaims for a Declaration of Non-Infringement. ...............................6

      D.      IBM's Lanham Act, Interference, and Deceptive Trade Practices
            Counterclaims. ..........................................................................................................6

SCO'S STATEMENT OF UNDISPUTED FACTS ...................................................................9

      A.      SCO's Remaining Claims. .......................................................................................9

      B.      IBM's Lanham Act, Interference, and Deceptive Trade Practices
            Counterclaims. ........................................................................................................10

ARGUMENT ............................................................................................................................14

      I.      SCO'S REMAINING CLAIMS ARE UNAFFECTED BY THE NOVELL
     JUDGMENT ..............................................................................................................14

      II.     THE NOVELL JUDGMENT RESOLVES IBM'S NON-INFRINGEMENT
            COUNTERCLAIMS ..............................................................................................15

      III.    SUMMARY JUDGMENT ON IBM'S TORT COUNTERCLAIMS IS
            IMPROPER ............................................................................................................15

CONCLUSION .........................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

Brehany v. Nordstrom, Inc.,
  812 P.2d 49 (Utah 1991) .................................................................................................. 11

Cottrell, Ltd. v. Biotrol Intern., Inc.,
  191. F. 3d 1248 (10th Cir. 1999) ...................................................................................... 10

Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.,
  505 F. Supp. 2d 1178 (D. Utah 2007) ............................................................................... 11

Goshen v. Mut. Life Ins. Co. of N.Y.,
  774 N.E.2d 1190 (N.Y. 2002) ........................................................................................... 11

Overstock.com, Inc. v. SmartBargains, Inc.,
  192 P.3d 858 (Utah 2008) ................................................................................................. 10

Price v. Armour,
  949 P.2d 1251 (Utah 1997) ............................................................................................... 12

SCO Group, Inc. v. Novell, Inc.,
  377 F. Supp. 2d 1145 (D. Utah 2005) ......................................................................... 12, 16

Thomas v. Metro. Life Ins. Co.,
  631 F.3d 1153 (10th Cir. 2011) ........................................................................................ 14

West v. Thompson Newspapers,
  872 P.2d 999 (Utah 1994) ................................................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................................. 14

Restatement (Second) of Torts § 594 (1977), Cmt. b .......................................................... 11

Plaintiff/Counterclaim-Defendant, The SCO Group, Inc. ("SCO"), respectfully submits this Memorandum in Response to IBM's Motion for Partial Summary Judgment on the Basis of the Novell Judgment.

**INTRODUCTION**

In its last footnote, IBM identifies the remedy it seeks through this motion: "We do not undertake to identify all respects in which the Novell Judgment affects SCO's claims or IBM's counterclaims, as a ruling that SCO is precluded from litigating the issues decided against it in the Novell litigation should suffice to guide the further prosecution of this case." SCO agrees that it is bound by those issues decided in the Novell litigation which are entitled to collateral estoppel effect. SCO disagrees that IBM can use that judgment to do more than that.

With respect to specific issues, SCO's position is as follows.

First, IBM argues that "insofar as SCO's remaining claims purport to allege infringement of the Copyrights owned by Novell and breaches of the Licensing Agreements waived by Novell, they are foreclosed by the Novell Judgment and cannot be re-litigated here." SCO agrees that the issues resolved in Novell are resolved here. The Court has already dismissed the portions of SCO's unfair competition claim that rested on the rights disputed in Novell. What remains to be litigated are SCO's unfair competition claims and tortious interference claims alleging that IBM interfered with SCO's existing and prospective business relationships in part as retaliation for SCO's efforts to protect its rights. Those claims were obviously not litigated in Novell; there is no collateral estoppel effect by the Novell Judgment on those claims.

Second, IBM argues that SCO's "silence" "suggests that the Novell Judgment has no bearing on any of IBM's counterclaims." But SCO's silence says nothing about its position,

1

because the Court directed SCO to "file a brief statement identifying <u>its</u> claims which it agrees are foreclosed by the <u>Novell</u> Judgment." In fact, consistent with its response to that directive, SCO agrees that the <u>Novell</u> Judgment resolves IBM's two counterclaims for a declaration of non-infringement of copyrights.

<u>Third</u>, IBM also requests judgment on "elements" of three tort counterclaims, on the grounds that SCO public statements about this lawsuit were false. But the <u>Novell</u> Judgment did not address, much less establish, the falsity of SCO's public statements. IBM bases its request on <u>its own allegations</u> of falsity, which have no preclusive effect. Indeed, because the Court ordered that this motion be "limited solely to the effect of the <u>Novell</u> Judgment," IBM's request is not properly before the Court. Moreover, the one claim in Novell that might have created preclusive effect on these issues — Novell's own claim for slander of title — was dismissed before the case went to the jury and therefore cannot be the basis for collateral estoppel.

## BACKGROUND

IBM mischaracterizes SCO's lawsuit as an "attack on Linux" with "baseless legal claims against IBM and others." Besides being factually wrong, IBM's mischaracterization attempts to "sweeps under the rug" the IBM misconduct that lies at the heart of SCO's remaining claims — namely, IBM's misuse of UNIX technologies that are unrelated to Novell's rights.

The <u>Novell</u> Judgment identified Novell's rights by drawing a bright line between (a) the UNIX source code that existed when Novell sold the UNIX business to SCO under an asset purchase agreement ("APA") in December 1995 and (b) the UNIX source code that SCO developed subsequently. Novell thus retained the copyrights to the UNIX source code that then existed, as well as the right to waive breaches of the agreements pursuant to which that source

code was licensed. It was undisputed that SCO otherwise acquired all right, title, and interest in the UNIX source code, licenses, and business.

Based on this allocation of rights, SCO stipulated that the <u>Novell</u> Judgment foreclosed SCO's four breach-of-contract claims, two copyright-infringement claims, interference claim alleging interference with the APA, and unfair-competition claim insofar as it made allegations resolved by <u>Novell</u>. Based on that stipulation, the Court dismissed those claims, and the Court then authorized IBM to file "a new motion for summary judgment limited solely to the effect of the <u>Novell</u> Judgment on the remaining claims and counterclaims." This motion followed.

IBM does not – and cannot – argue that the core allegations in SCO's remaining claims are foreclosed by the <u>Novell</u> Judgment. Those core allegations include that:

- In connection with Project Monterey, IBM misappropriated into its <u>AIX for Power</u> operating system UnixWare source code that SCO provided to IBM subject to strict restrictions that IBM did not follow.

- IBM perpetrated this misappropriation through an elaborate ruse chronicled in its own internal communications.

- Because SCO developed the misappropriated source code after its purchase of the UNIX business from Novell in 1995, that code is not subject to the copyrights and waiver rights at issue in <u>Novell</u>.

- IBM used the misappropriated Project Monterey technology and other intellectual property to interfere with SCO's actual and potential customers and business relationships.

- IBM directly pressured partners and customers of SCO to end or cut back their relationships with SCO, when SCO pursued remedies against IBM.

This motion, therefore, cannot serve as the basis for summary judgment on such claims.

**SCO'S RESPONSE TO IBM'S STATEMENT OF
ELEMENTS AND UNDISPUTED MATERIAL FACTS**

Pursuant to this Court's Civil Rule 56-1(c)(2), SCO sets forth this response to IBM's statements and identifies additional applicable legal elements where appropriate. IBM's statements are in italics.

### A. SCO's Remaining Unfair Competition Claim.

*"To establish its claim for unfair competition, SCO must establish (among other things) that IBM engaged in wrongful conduct such as misappropriation of SCO's property."*

SCO response: SCO does not dispute this statement.

*(1)   SCO's unfair competition claim turns in part on allegations of "[m]isappropriation of source code . . . and confidential information of plaintiff" and "[c]ontribution of protected source code and methods for incorporation into one or more Linux software releases".*

SCO response: SCO does not dispute this statement.

*(2)   SCO alleges that IBM used "SCO's valuable [UNIX] source code" "to mature Linux into a commercially hardened operating system capable of handling mission-critical workloads".*

SCO response: SCO disputes this statement because it misstates what SCO actually said. Where IBM quotes SCO as stating "SCO's valuable [UNIX] source code," SCO in fact said that, through "Project Monterey," IBM "deceptively obtained access to SCO's valuable SVR4 source code and then used that source code to improve IBM's own, competing AIX 5L for Power operating system." (Docket No. 909 at 1-2.) IBM's quotation continues to say: "to mature Linux into a commercially hardened operating system capable of handling mission-

4

critical workloads." SCO in fact stated that IBM "used the SVR4 code expertise obtained from SCO through Project Monterey to mature Linux into a commercially hardened operating system capable of handling mission-critical workloads." (Id. at 14 ¶ 39.) These allegations thus concern the post-APA UnixWare code that IBM misappropriated in Project Monterey.

      (3)    *The Novell Judgment establishes (a) that Novell, not SCO, owns the Copyrights; and (b) that "Novell had the authority . . . to direct SCO to waive its claims against [the Licensing Agreements], that Novell had the authority to waive such claims on SCO's behalf, and that SCO was obligated to recognize such waivers."*

      SCO response: SCO disputes this statement to the extent it is vague and ambiguous. SCO does not dispute that, under the Novell Judgment, Novell (a) owns the copyrights to the UNIX source code for the versions of UNIX that existed at the time of the APA, (b) has the authority to waive SCO's contract claims for breach of the agreements that licensed those versions of UNIX, and (c) exercised that authority in waiving IBM's breaches of its UNIX licensing agreement with SCO.

      **B.**    **SCO's Remaining Tortious Interference Claims.**

      *"SCO must show (among other things) that IBM engaged in wrongful conduct constituting interference with SCO's economic relations, such as by violating a statute or a recognized common-law rule."*

      SCO response: SCO agrees that the "improper purposes or improper means" element of a tortious interference claim may be proved through such violations.

      (1)    *SCO's tortious interference claims "turn in part on the same conduct that forms the basis for SCO's other causes of action: namely, IBM's wrongful conduct in executing its*

5

*Linux strategy, including breach of contract, misrepresentation of its rights and actions, copyright infringement and unfair competition."*

  <u>SCO response</u>:  SCO does not dispute this statement.

  (2) *SCO alleges that "IBM interfered with SCO's business relations in the UNIX on Intel market by wrongfully disclosing SCO's UNIX proprietary technology" with, among other things, an "appreciation of SCO's right to prevent disclosure of the technology to Linux."*

  <u>SCO response</u>:  SCO does not dispute this statement.

  (3) *SCO alleges that "IBM gave SCO's most significant asset — its protected intellectual property — to the Linux community, and thereby facilitated development of a free UNIX clone that displaced SCO's UNIX products in a market they had previously dominated."*

  <u>SCO response</u>:  SCO does not dispute this statement.

  (4) [Repeats prior statement regarding Novell's rights under <u>Novell</u> Judgment.]

  **C.** **IBM's Counterclaims for a Declaration of Non-Infringement.**

  SCO does not dispute that this motion may be granted with respect to those counterclaims seeking a declaration of non-infringement, and thus does not respond to these paragraphs.

  **D.** **IBM's Lanham Act, Interference, and Deceptive Trade Practices Counterclaims.**

  *IBM can establish elements of its Second, Fourth, and Fifth Counterclaims by showing that SCO engaged in wrongful conduct, such as by "mak[ing] material false or misleading representations of fact in connection with the commercial advertising or promotion of [IBM's] product[s]",* <u>Cottrell, Ltd. v. Biotrol Intern., Inc.</u>, *191 F. 3d 1248, 1252 (10th Cir. 1999) (Lanham Act claim)...*

  <u>SCO response</u>:  SCO does not dispute this statement.

> *. . .by uttering defamatory statements or disparaging falsehoods about IBM's business."* <u>Overstock.com</u>*, 192 P.3d at 864 (tortious interference claim). . .*

<u>SCO response</u>:  SCO does not dispute that defamatory statements or disparaging falsehoods may show the "improper means" element of an interference claim.

> *. . ."and by undertaking an act or practice that was misleading in a material respect."* <u>Spagnola v. Chubb Corp.</u>*, 574 F.3d 64, 74 (2d Cir. 2009) (unfair and deceptive trade practices under N.Y. Gen. Bus. L. § 349).*

<u>SCO response</u>:  SCO does not dispute this statement.

> *(1)   SCO publicly stated it owned and IBM infringed the Copyrights held to be owned by Novell.  For example:  in September 2003, in an interview with Infoconomy, SCO, through its CEO Darl McBride, stated, "we counted over a million lines of code that we allege are infringed in the Linux kernel today out of a total base of five million . . . . The vast majority of that did, in fact, come from IBM."*

<u>SCO response</u>:  SCO does not dispute that, in September 2003, Information-age.com quoted SCO's former CEO Darl McBride, and that IBM selectively quotes Mr. McBride's quoted statement.  (IBM Ex. 1.)  SCO disputes that in this statement "SCO publicly stated that it owned and IBM infringed the Copyrights held to be owned by Novell."  (<u>See</u> <u>id.</u>)

> *(1)   and in May 2003, SCO sent letters to 1,500 of the world's largest corporations claiming that Linux infringed SCO's intellectual property rights.*

<u>SCO response</u>:  SCO does not dispute this statement.

> *(2)   SCO also publicly stated that IBM's AIX and Dynix products could no longer be distributed because SCO lawfully terminated IBM's Licensing Agreements.  For example:  on*

7

*March 6, 2003, in an interview with eWeek, SCO, through Mr. McBride, stated, "IBM has been happily giving part of the AIX code away to the Linux community, but the problem is they don't own the AIX code."*

<u>SCO response</u>: SCO does not dispute the first sentence. SCO does not dispute that on that March 6, 2003, eweek.com quoted Mr. McBride, and that IBM selectively quotes part of the article. SCO disputes that in this statement "SCO publicly stated that IBM's AIX and Dynix products could no longer be distributed because SCO lawfully terminated IBM's Licensing Agreements." (<u>See</u> IBM Ex. 4, at 1-2.) This article <u>predates</u> SCO's termination of those agreements, which first occurred on June 16, 2003. (<u>See</u> IBM Ex. 5.)

(2) *and on June 16, 2003, in a press release, SCO, again through Mr. McBride, stated "IBM no longer has the authority to sell or distribute AIX and customers no longer have the right to use AIX software."*

<u>SCO response</u>: SCO does not dispute this statement.

(3) [Repeats prior statement regarding Novell's rights under <u>Novell</u> Judgment.]

8

## SCO'S STATEMENT OF UNDISPUTED FACTS

Pursuant to the Court's Civil Rule 56-1(c)(2), SCO sets forth additional elements and undisputed facts.

1.  The Novell Judgment identified Novell's rights by drawing a bright line between (a) the UNIX source code that existed when Novell sold the UNIX business to SCO under an asset purchase agreement ("APA") in December 1995 and (b) the UNIX source code that SCO developed subsequently.

2.  The Novell Judgment thus held that Novell had retained the copyrights to the UNIX source code that then existed, as well as the right to waive breaches of the agreements pursuant to which that source code was licensed. The Novell Judgment also held that Novell's waiver of SCO's breach-of-contract claims against IBM was effective.

3.  It was undisputed that SCO otherwise acquired all right, title, and interest in the UNIX source code, licenses, and business.

    **A.   SCO's Remaining Claims.**

4.  SCO stipulated that "SCO's Unfair Competition claim (Count VI) is foreclosed and may be dismissed on the basis of the Novell judgment insofar as that cause of action is based on the allegations that Novell does not own the copyrights to pre-1996 UNIX source code and does not have the right to waive breaches of the licensing agreements pursuant to which IBM and others licensed pre-1996 UNIX source code." (Docket No. 1119 at 3.)

5.  Based on this stipulation, the Court already dismissed SCO's unfair competition claim insofar as it is based on those allegations. (Docket No. 1123 at 1; Docket No. 1119-1.)

6.      Based on SCO's stipulation, the Court also already dismissed SCO's tortious interference claim alleging that IBM interfered with SCO's contractual relationship with Novell under the APA.  (Docket No. 1123 at 1; Docket No. 1119-1.)

7.      SCO's remaining interference claims allege that IBM interfered with "contracts with customers around the world for licensing of SCO OpenServer and UnixWare" and with "plaintiff's existing or potential economic relations" by, among other things, informing them "that IBM was discontinuing doing business with SCO and that these other companies, some of whom are business partners with IBM, also should discontinue doing business with SCO." (SCO's Second Amended Complaint (Docket No. 108) at 55-56, 60-61.)

### B.      IBM's Lanham Act, Interference, and Deceptive Trade Practices Counterclaims.

8.      This part of IBM's motion rests solely on public statements SCO made in 2003 announcing and describing its claims in this lawsuit.  (See IBM Exs. 1-5.)

9.      To establish a Lanham Act violation, IBM must show that SCO's statements were "material false or misleading representations of fact in connection with the commercial advertising or promotion of [IBM's] product[s]." Cottrell, Ltd. v. Biotrol Intern., Inc., 191. F. 3d 1248, 1252 (10th Cir. 1999).

10.     To prove tortious interference, IBM must prove that SCO intentionally interfered with IBM's business "for an improper purpose or by improper means." Overstock.com, Inc. v. SmartBargains, Inc., 192 P.3d 858, 864 (Utah 2008).  "Improper means" include "defamation" and "disparaging falsehoods." Id.

11.     To show that SCO's statements were defamatory, IBM must show that they were "false, defamatory, and not subject to privilege," were published with "the requisite degree of

10

fault," and "resulted in damage." Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co., 505 F. Supp. 2d 1178, 1191 (D. Utah 2007). Defamation law protects the reputation of "one who is dead" or "one who is alive." Utah Ann. Code 45-2-2. Thus, "an action for defamation is intended to protect an individual's interest in maintaining a good reputation." West v. Thompson Newspapers, 872 P.2d 999, 1007-08 (Utah 1994).

12. To show that SCO's statements were disparaging falsehoods, IBM must show "falsity," "malice," and "special damages" with respect to the statements. Id.

13. To show that SCO's statements constitute unfair and deceptive trade practices under New York law, IBM must show that the statements were "misleading to a reasonable consumer." Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 (N.Y. 2002).

14. On their face, SCO's statements announce and explain this lawsuit. (See IBM Exs. 1-5.)

15. At the time SCO made these statements, the issues resolved by the Novell Judgment were disputed and unresolved. The Novell Judgment was entered in 2010.

16. SCO's statements were made in the context of a public debate initiated by IBM years earlier. (See ¶¶ 19-21, below.)

17. "The law has long recognized that a publication is conditionally privileged if made to protect a legitimate interest of the publisher." Brehany v. Nordstrom, Inc., 812 P.2d 49, 56 (Utah 1991). This privilege protect an injurious falsehood "even though [the claimant's] belief is neither correct nor reasonable." Restatement (Second) of Torts § 594, Cmt. b. (1977).

18. "[T]he absolute privilege to publish a defamatory matter can occur in communications preliminary to a proposed judicial proceeding as well as during the course of or

11

as part of a judicial proceeding if the matter has some relation to the proceeding." Price v. Armour, 949 P.2d 1251, 1256 (Utah 1997).

19.     In December 2000, IBM executive Robert LeBlanc proclaimed: "AIX 5 has the best of [Project] Montrey. Linux cannot support high-end architecture, but over time, we believe it will." (http://www.freeos.com/articles/2985.) Mr. LeBlanc further announced: "We will open source any part of AIX that the open source community considers valuable." (Id.)

20.     In January 2003, IBM senior executive Steve Mills announced in a keynote address that "IBM will exploit its expertise in AIX to bring Linux up to par with UNIX" and that the pathway for that endeavor "is an eight-lane highway." [1]

21.     In 2003, Novell joined this public debate by issuing statements in a variety of media, claiming ownership of the copyrights and waiver rights disputed in Novell. See, e.g., The SCO Group, Inc. v. Novell, Inc., 377 F. Supp. 2d 1145, 1147-50 (D. Utah 2005).

22.     The evidence in record consistently demonstrates SCO's good-faith basis for making the statements at issue. (See ¶¶ 23-26, below.)

23.     Many witnesses and other IBM internal documents confirmed that, for decades prior to this lawsuit, IBM understood SCO's rights to be as expressed in SCO's statements. (See SCO Mem. in Opp. to IBM's Mot. for Summary Judgment on SCO's Contract Claims (Docket Nos. 872-75) at 24-53.) In 1997, for example, IBM acknowledged that SCO was at that time the "copyright owner of the [UNIX] code." Id. at 56.

24.     A few weeks after SCO filed this lawsuit, IBM directed dozens of its Linux developers within its Linux Technology Center (the "LTC"), and at least ten of its Linux

---

[1]     http://www.crn.com/news/applications-os/18821373/ibms-mills-linux-will-be-on-par-with-unix-in-no-time.htm

developers outside the LTC, to delete evidence probative of SCO's claims. (See SCO Mem. in Opp. to IBM's Mot. for Summary Judgment on SCO's Contract Claims (Docket Nos. 872-75) at 65-68; SCO's Mem. in Support of SCO's Mot. for Relief for IBM's Spoliation of Evidence (Docket No. 819) at 3.)

25. SCO's statements did not cause any harm, and actually <u>benefited</u>, IBM's business. IBM's Linux general manager, Jim Stallings, admitted:

> No, <u>we haven't seen any evidence that customers are concerned about making a decision against IBM</u> or counter to any proposal they have on the table from IBM. We talk to our customers on a regular basis. <u>They know what's in the newspaper</u>. I can't comment on the lawsuit itself, but <u>the market certainly hasn't slowed down, from what I can see, because of any lawsuit. From a sales standpoint, we certainly haven't seen anything</u>. . . .
> . . . .As a matter of fact, <u>customers — the ones that are reading and listening</u> and understand it—<u>they are more enthused</u> by the opportunity. It has brought a lot of things to light. People are more educated, and an educated customer . . . . <u>we haven't seen anything in the marketplace that's negative</u>.

(SCO's Mem. in Support of Its Mot. for Summary Judgment on IBM's Third, Fourth, and Fifth Counterclaims (Docket No. 814) at 12-13) (emphasis added).) Mr. Stallings later boasted that, despite this lawsuit and SCO's transmission of the May 2003 demand letters, "business is actually accelerating," and "Linux is the fastest growing operating system." (Id. at 13.)

26. Stuart Cohen, the chief executive of the IBM-funded Open Systems Development Laboratory ("OSDL"), proclaimed that SCO's lawsuit "accelerated the use of Linux" and "is one of the best things that ever happened to the operating system." (Id.) He told <u>BusinessWeek</u> that the "SCO litigation and surrounding media hoopla actually helped accelerate Linux's popularity." (Id.) In meetings, the OSDL board and IBM Vice President Daniel Frye agreed that SCO's actions had "little impact" on the Linux industry. (<u>Id.</u>)

13

**ARGUMENT**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence and its reasonable inferences in the light most favorable to the non-moving party. Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011).

This motion requests "a ruling that SCO is precluded from litigating the issues decided against it in the Novell litigation" which IBM acknowledges "should suffice to guide the further prosecution of this case." SCO agrees that such a ruling suffices for that purpose, and therefore does not oppose this motion insofar as this is the full extent of the relief IBM seeks, which appears to be the case.

SCO nevertheless further responds to IBM's motion because it also addresses issues that the Novell Judgment did not resolve. The Novell Judgment held that Novell had retained the copyrights to the UNIX source code that existed at the time of the APA in December 1995, as well as the right to waive breaches of the agreements pursuant to which that source code was licensed. The Novell Judgment also held that Novell's waiver of SCO's breach-of-contract claims against IBM was effective. As explained below, SCO's remaining claims do not seek to re-litigate any of these holdings.

## I. SCO'S REMAINING CLAIMS ARE UNAFFECTED BY THE NOVELL JUDGMENT

First, the Court already dismissed SCO's unfair competition claim "insofar as that cause of action is based on the allegations that Novell does not own the copyrights to pre-1996 UNIX source code and does not have the right to waive breaches of the licensing agreements pursuant

14

to which IBM and others licensed pre-1996 UNIX source code." (¶¶ 4-6.)[2] With respect to this claim, therefore, the Court already entered an express ruling that precludes SCO from "litigating the issues decided against it in the Novell litigation." No further "summary judgment" is necessary.

Second, based on SCO's stipulation, the Court already dismissed SCO's tortious interference claim concerning SCO's contractual relationship with Novell under the APA (Count VIII). (Id.) In addition, the interference claims that SCO intends to litigate make allegations unaffected by the Novell Judgment, including that IBM interfered with SCO's existing and prospective business relationships through its misappropriation of the SCO's post-APA source code in connection with Project Monterey. Such allegations do not require re-litigation of Novell's ownership of the copyrights at issue, Novell's right to waive IBM's breach-of-contract claims against IBM, or Novell's waiver of those contract claims in 2003 or later.

## II. THE NOVELL JUDGMENT RESOLVES IBM'S NON-INFRINGEMENT COUNTERCLAIMS

Consistent with its prior stipulations, SCO agrees that IBM's counterclaims for non-infringement of copyrights may be granted on the basis of the Novell Judgment.

## III. SUMMARY JUDGMENT ON IBM'S TORT COUNTERCLAIMS IS IMPROPER

IBM asks the Court to enter summary judgment on "elements" of its Lanham Act, tortious interference, and unfair and deceptive trade practices counterclaims. IBM bases this request solely on the alleged "falsity" of SCO public statements announcing and describing this lawsuit in 2003. IBM's request is improper and in any event lacks merit on its face.

---

[2] In the Argument Section, the undisputed facts are cited as "¶ __" and refer to the relevant paragraph number(s) in the foregoing SCO's Statement of Additional Elements and Undisputed Facts.

It is axiomatic that collateral estoppel applies here only on issues resolved in the Novell litigation. While Novell resolved the copyrights and waiver issues disputed there, the Novell Judgment did not even address, let alone establish as a matter of law, the alleged falsity of SCO's public statements. Indeed, the claim that Novell brought against SCO based on the alleged falsity of such statements, a claim for slander of title, was dismissed by the Court before the case went to the jury. The SCO Group, Inc. v. Novell, Inc., 721 F. Supp. 2d 1050, 1052 (D. Utah 2010). The Novell Judgment thus has no preclusive effect on that issue.

To the extent IBM's motion is thus predicated on IBM's own allegations of falsity, IBM fails to comply with the Court's order authorizing IBM to file "a new motion for summary judgment limited solely to the effect of the Novell Judgment on the remaining claims and counterclaims." (Docket No. 1115 at 2 (emphasis added).) By submitting a motion that addresses the effect of its own allegations, IBM exceeds the parameters of the Court's express limitation. Accordingly, this part of IBM's motion is not properly before the Court and should be denied on that basis.

In any event, the Court need look no further than IBM's request itself to ascertain that it is lacking in merit. IBM submits no evidence showing the falsity of SCO's statements. Instead, IBM argues that, whatever was the case in 2003, the Novell Judgment retroactively rendered SCO's statements false seven years later. IBM cites no authority for the proposition that a subsequent judgment retroactively converts a good-faith statement into a falsity. Such a request also ignores that SCO's statements were made in good faith (¶¶ 22-24), were not misleading to IBM's customers and partners (¶¶25-26), and were part of a public debate initiated by IBM, in which IBM and Novell made rival assertions (¶¶ 16-21).

## **CONCLUSION**

For the reasons stated herein, SCO respectfully asks the Court to deny IBM's motion except insofar as it seeks a judgment granting IBM's two non-infringement counterclaims and a ruling precluding the litigation of the two issues decided in Novell.

DATED this 29th day of August, 2013.

                                              By:  /s/ Brent O. Hatch
                                              HATCH, JAMES & DODGE, P.C.
                                              Brent O. Hatch
                                              Mark F. James

                                              BOIES, SCHILLER & FLEXNER LLP
                                              Stuart H. Singer
                                              Edward Normand
                                              Jason Cyrulnik
                                              Mauricio A. Gonzalez
                                              *Counsel for The SCO Group, Inc.*