Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666
bhatch@hjdlaw.com
mjames@hjdlaw.com

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
ssinger@bsfllp.com

David Boies (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Jason Cyrulnik (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com
enormand@bsfllp.com
jcyrulnik@bsfllp.com

*Counsel for Plaintiff, The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 11 Trustee in Bankruptcy, Edward N. Cahn,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM OF ADDITIONAL AUTHORITY IN SUPPORT OF ITS PENDING SPOLIATION MOTION**<br><br>Case No. 2:03-cv-00294 DN<br><br>District Judge David Nuffer |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     RECENT AUTHORITY ON SPOLIATION SUPPORTS SCO'S MOTION .................... 1

II.    RECENT AUTHORITY SUPPORTS THAT SCO WAS PREJUDICED BY
IBM'S DELIBERATE SPOLIATION OF EVIDENCE .................................................... 3

III.   RECENT AUTHORITY SUPPORTS THE IMPOSITION OF A STRONG
REMEDY, INCLUDING AN ADVERSE INFERENCE, TO REDRESS
IBM'S MISCONDUCT ..................................................................................................... 4

## **TABLE OF AUTHORITIES**

**Cases**

FatPipe Networks India Ltd. v. XRoads Networks, Inc.,
  No. 2:09-CV-186 TC DN, 2012 WL 192792 (D. Utah Jan. 23, 2012) ....................................... 3

Jordan F. Miller Corp. v. Mid–Continent Aircraft Service, Inc.,
  No. 97–5089, 1998 WL 68879 (10th Cir. Feb.20, 1998) ........................................................... 3

Medcorp, Inc. v. Pinpoint Techs., Inc.,
  No. 08-cv-00867-MSK-KLM, 2010 WL 2500301 (D. Colo. June 15, 2010) ............................ 4

Novick v. Axa Network, LLC,
  No. 07-CV-7767 AKH KNF, 2014 WL 5364100 (S.D.N.Y. Oct. 22, 2014) ............................. 4

Philips Elecs. N. Am. Corp. v. BC Technical,
  773 F. Supp. 2d 1149 (D. Utah 2011) ............................................................................... 2, 3, 4

Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.,
  621 F. Supp. 2d 1173 (D. Utah 2009) ...................................................................................... 2

SCO respectfully submits this Memorandum of Additional Authority in Support of SCO's Objections to the Magistrate Court's Order Denying SCO's Motion for Relief for IBM's Spoliation of Evidence (Docket No. 995 [S]) (the "Spoliation Motion"), pursuant to the Court's April 15, 2015, Order.

This motion concerns IBM's indisputable destruction of salient evidence shortly after SCO filed this lawsuit. After the magistrate court denied the relief SCO was requesting, SCO filed Objections to the magistrate court's order, which Objections are pending before this Court. SCO seeks an adverse inference that the lost evidence would be damaging to IBM's case.

On March 6, 2003, SCO filed a complaint against IBM for "misusing and misappropriating SCO's proprietary software."[1] Just one month later, on April 8, 2003, IBM's Open Source Steering Committee – which includes IBM executives and lawyers – directed its Linux developers to "purge" key software from their machines:

> One important thing that came out of today's meeting . . . For all Linux developers who have had their CMVC and DFS AIX source access removed, we also need to communicate to them that the need to **purge** any old AIX source (sandboxes, etc.) from their machines.[2]

Case law decided since SCO's Spoliation Motion was fully briefed on May 27, 2007, further supports SCO's entitlement to an adverse inference against IBM for its intentional destruction of highly relevant source code.

## I. RECENT AUTHORITY ON SPOLIATION SUPPORTS SCO'S MOTION

IBM's conduct in deliberately "purging" key data after SCO commenced litigation against it is similar to the misconduct confronted by the courts in this District in the 2011 case, Philips

---

[1] Ex. 1 to Shaughnessy Decl. (Sept. 25, 2006) ¶ 4.a.

[2] Ex. 3 to James Decl. (Mar. 16, 2007).

Electronics v. BC Technical: "BCT executives and employees purposefully deleted, then wiped, shredded, and overwrote files from their computer hard drives after learning of the court's order compelling BCT to produce its ESI and/or just before the computers were turned in to be imaged by Lighthouse."[3]

In analyzing bad faith, the magistrate court in Philips stated: "Bad faith, or culpability, 'may not mean evil intent, but may simply signify responsibility and control . . . . because BCT had control and responsibility over the five laptops, that alone is enough to establish that BCT acted with bad faith in the spoliation of the evidence.'"[4] The district court in Philips stated that the magistrate's Report and Recommendation was "thorough and carefully reasoned," and endorsed it in its entirety.[5] Here, IBM indisputably had "responsibility and control" over the computers at issue, and in fact directed the spoliation, in writing.

The magistrate court in Philips also considered "other factors that have contributed to the court's finding of bad faith," including "the timing of the deletions at issue" and "the lack of effective communication BCT had with its employees regarding their duty to preserve evidence."[6] These factors likewise compel a finding of bad faith by IBM. The timing of IBM's deletions reflect IBM's bad faith: SCO had filed its complaint just one month prior to IBM disseminating its "purge" directive to its programmers and executives, so IBM, a sophisticated party, was on full notice of its obligation to preserve documents and of the issues at stake in this action. In addition,

---

[3]  Philips Elecs. N. Am. Corp. v. BC Technical, 773 F. Supp. 2d 1149, 1211 (D. Utah 2011).

[4]  Id. at 1203, 1207 (citation omitted; quoting Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc., 621 F. Supp. 2d 1173, 1193 (D. Utah 2009) (Nuffer, J.)).

[5]  Philips Elecs., 773 F. Supp. 2d at 1155, 1158-59.

[6]  Id. at 1207.

not only did IBM fail to communicate to its employees "their duty to preserve evidence" – IBM affirmatively <u>directed</u> its employees to "purge" their machines of plainly relevant evidence.[7]

## II. RECENT AUTHORITY SUPPORTS THAT SCO WAS PREJUDICED BY IBM'S DELIBERATE SPOLIATION OF EVIDENCE

IBM's spoliation deprived SCO of centrally relevant evidence that cannot be replicated. "Prejudice by loss of evidence must be measured in light of 'other evidence available.'"[8] Recent authority in Utah supports SCO's position on prejudice. In <u>FatPipe Networks India Ltd. v. XRoads Networks, Inc.</u>, No. 2:09-CV-186 TC DN, 2012 WL 192792, at *6 (D. Utah Jan. 23, 2012) (Nuffer, J.), this Court held that "XRoads is prejudiced by FatPipe's failure to protect and preserve these logs because the evidence of such testing is unreliable. Without the log information, XRoads is effectively deprived of the opportunity to examine and verify the purported testing, inspection or other uses and results of the XRoads devices allegedly performed by FatPipe."

The evidence here is comparable to that in <u>XRoads Networks</u>: The spoliated source code in Linux developers' sandboxes was the fundamental record of the particular AIX or Dynix/ptx code that the Linux programmers chose to retain on their systems while programming for Linux. IBM's willful spoliation put that fundamental record beyond SCO's reach, such that SCO "is effectively deprived of the opportunity to examine and verify" what specific source code IBM's Linux developers had at their fingertips.[9] IBM is wrong that the entire AIX or Dynix/ptx source

---

[7] See <u>Phillip M. Adams</u>, 621 F. Supp. 2d at 1190 ("[A] litigant's duty to preserve evidence arises when 'he knows or should know [it] is relevant to imminent or ongoing litigation.'") (quoting <u>Jordan F. Miller Corp. v. Mid–Continent Aircraft Service, Inc.</u>, No. 97–5089, 1998 WL 68879, at *5 (10th Cir. Feb.20, 1998)); <u>Philips Elecs.</u>, 773 F. Supp. 2d at 1203 ("As a litigant in this case, BCT also had the responsibility to take measures to preserve evidence, including ESI. Under the federal rules, in addition to this court's discovery orders, BCT and its counsel were expected to take the necessary steps to ensure that relevant records – including ESI – were preserved when this litigation was reasonably anticipated or began, and that those records were collected, reviewed, and produced to Philips during the discovery process.").

[8] <u>Phillip M. Adams</u>, 621 F. Supp. 2d at 1195.

[9] <u>XRoads Networks</u>, 2012 WL 192792, at *6.

3

code is an adequate substitute.  If a murder suspect destroyed his carefully curated scrapbook of newspaper clippings about the victim, a neatly folded pile of uncut newspapers from the same time period would not be adequate substitute evidence.  The same principle applies here.

## III. RECENT AUTHORITY SUPPORTS THE IMPOSITION OF A STRONG REMEDY, INCLUDING AN ADVERSE INFERENCE, TO REDRESS IBM'S MISCONDUCT

The recent authority confirms that IBM's conduct in this case merits an adverse inference. Indeed, IBM's conduct in this case –"intentionally destroying evidence by . . . wiping out computer hard drives" – is recognized as among "the most egregious cases," justifying the harshest possible "terminating sanctions" (entry of default judgment or dismissal).[10]

Thus, for example, in the Philips case, where executives "purposefully deleted, then wiped, shredded, and overwrote files from their computer hard drives,"[11] the court adopted the magistrate judge's recommendation to strike the spoliator's answer, dismiss its counterclaims, and enter default judgment against it as to liability.[12] Even where courts decline to impose the "extreme sanction" of striking the defendant's pleadings, recent authority is clear that an adverse inference is warranted where, as here, the defendant had an obligation to preserve material, the material was "spoliated with a culpable state of mind," and the material is "relevant to the plaintiff's claims such that a reasonable trier of fact could find that they would support his claims."[13]

---

[10]    FatPipe Networks, 2012 WL 192792, at *7 (quoting Medcorp, Inc. v. Pinpoint Techs., Inc., No. 08-cv-00867-MSK-KLM, 2010 WL 2500301, at *2 (D. Colo. June 15, 2010)).

[11]    Philips Elecs., 773 F. Supp. 2d at 1211.

[12]    Id. at 1158-59, 1216.

[13]    Novick v. Axa Network, LLC, No. 07-CV-7767 AKH KNF, 2014 WL 5364100, at *8 (S.D.N.Y. Oct. 22, 2014).

DATED this 22nd day of May, 2015.

By:  /s/ Brent O. Hatch
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
David Boies
Stuart H. Singer
Edward Normand
Jason Cyrulnik

*Counsel for Plaintiff, The SCO Group, Inc.*