Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666
bhatch@hjdlaw.com
mjames@hjdlaw.com

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
ssinger@bsfllp.com

David Boies (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Jason Cyrulnik (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com
enormand@bsfllp.com
jcyrulnik@bsfllp.com

*Counsel for Plaintiff, The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 11 Trustee in Bankruptcy, Edward N. Cahn,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S MEMORANDUM OF ADDITIONAL AUTHORITY IN SUPPORT OF ITS PENDING MOTION FOR SUMMARY JUDGMENT ON IBM'S SECOND, THIRD, FOURTH AND FIFTH COUNTERCLAIMS**<br><br>**[CORRECTED]**<br><br>Case No. 2:03-cv-00294 DN<br><br>District Judge David Nuffer |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. RECENT AUTHORITY SUPPORTS THAT SCO'S CONDUCT IS
   ENTITLED TO ABSOLUTE PRIVILEGE ...................................................................1

II. RECENT AUTHORITY SUPPORTS THAT SCO'S STATEMENTS TO THE
    PRESS AND PUBLIC ARE ALSO PROTECTED BY QUALIFIED PRIVILEGE..........2

III. RECENT AUTHORITY SUPPORTS THAT GOOD FAITH IS A SUBSTANTIVE
     DEFENSE TO IBM'S CLAIMS .....................................................................................4

IV. RECENT AUTHORITY SUPPORTS THAT IBM HAS NO DAMAGES ........................5

# TABLE OF AUTHORITIES

**Cases**

Allen v. Dimeo,
  2007 UT App 192 (June 1, 2007) ................................................................................... 2

Amarosa v. Dr. John's Inc.,
  No. 2:11-CV-676 DN, 2014 WL 3015312 (D. Utah July 2, 2014) ........................................... 2

Anglin v. Sears Roebuck & Co.,
  No. 93 C 3438, 1998 WL 483524 (N.D. Ill. Aug. 10, 1998) ...................................................... 4

Art Line, Inc. v. Universal Design Collections, Inc.,
  966 F. Supp. 737 (N.D. Ill. 1997) ............................................................................................. 4

BaliJewel, Inc. v. John Hardy Ltd.,
  No. 07 CV 3819, 2008 WL 4425886 (N.D. Ill. Sept. 24, 2008) ................................................ 4

Brehany v. Nordstrom, Inc.,
  812 P.2d 49 (Utah 1991) ........................................................................................................... 3

Campbell v. Castle Stone Homes, Inc.,
  No. 2:09-CV-250 TS, 2011 WL 902637 (D. Utah Mar. 15, 2011) ........................................ 1, 2

Dadd v. Mount Hope Church,
  780 N.W.2d 763 (Mich. 2010) .................................................................................................. 5

Farberware Licensing Co., LLC v. Meyer Mktg. Co.,
  428 F. App'x 97 (2d Cir. 2011) ................................................................................................ 5

Helena Chem. Co. v. Uribe,
  281 P.3d 237 (N.M. 2012) ........................................................................................................ 2

Krouse v. Bower,
  20 P.3d 895 (Utah 2001) ........................................................................................................... 1

Lawson v. Stow,
  327 P.3d 340 (Colo. App. 2014) ............................................................................................... 2

Nelson v. Target Corp.,
  334 P.3d 1010 (Utah Ct. App. 2014) ........................................................................................ 3

Norman v. Borison,
  17 A.3d 697 (Md. 2011) ........................................................................................................... 2

Offen v. Brenner,
  402 Md. 191, 935 A.2d 719 (Md. 2007) ................................................................................... 2


Pratt v. Nelson,
   164 P.3d 366 (Utah 2007) .................................................................................................... 2

Samiento v. World Yacht Inc.,
   883 N.E.2d 990 (N.Y. 2008) .................................................................................................. 5

Stevens-Henager Coll. v. Eagle Gate Coll.,
   248 P.3d 1025 (Utah Ct. App. 2011) ..................................................................................... 5

Sybersound Records, Inc. v. UAV Corp.,
   517 F.3d 1137 (9th Cir. 2008) ............................................................................................... 4

Tamburo v. Dworkin,
   974 F. Supp. 2d 1199 (N.D. Ill. 2013) ............................................................................... 3, 4

Van Vliet v. Vander Naald,
   287 N.W. 564, 567 (Mich. 1939) ........................................................................................... 5

Westmont Maint. Corp. v. Vance,
   313 P.3d 1149 (Utah Ct. App. 2013) ..................................................................................... 2

Williams v. Cont'l Airlines, Inc.,
   943 P.2d 10 (Colo. App. 1996) .............................................................................................. 2

Plaintiff, SCO, respectfully submits this Memorandum of Additional Authority in Support of SCO's Motion for Summary Judgment on IBM's Second, Third, Fourth, and Fifth Counterclaims (Docket No. 776), pursuant to the Court's April 15, 2015, Order.

SCO seeks summary judgment dismissing four IBM counterclaims (Counts II, III, IV, and V) that are all based on IBM's allegations that "SCO has disparaged IBM; made false and misleading statements to the press and IBM's customers . . . and abused and misused its intellectual property rights."[1] Each of those claims fails as a matter of law based on the applicable privileges, SCO's good faith, and IBM's lack of damages. Case law decided since SCO's Litigation Privilege Motion was fully briefed on January 12, 2007, further supports SCO's entitlement to summary judgment on IBM's second, third, fourth, and fifth counterclaims.

I. RECENT AUTHORITY SUPPORTS THAT SCO'S CONDUCT IS ENTITLED TO ABSOLUTE PRIVILEGE

IBM's second, third, fourth, and fifth counterclaims are based on statements made by SCO "during or in the course of a judicial proceeding" with "some reference to the subject matter of the proceeding,"[2] and are therefore protected by the absolute litigation privilege. Cases decided since the motion was originally briefed have further confirmed that (a) the requirement "that the statement be made during or in the course of a judicial proceeding" must be "interpreted broadly"; (b) the statements at issue "need not be relevant or pertinent from an evidentiary point of view, but only have 'some relationship to the cause or subject matter involved'"; and (c) a statement is not "excessively published" so as to render the privilege inapplicable so long as the

---

[1] IBM Opp. to Litigation Privilege Motion at 1, Docket No. 865, filed November 10, 2006.

[2] Campbell v. Castle Stone Homes, Inc., No. 2:09-CV-250 TS, 2011 WL 902637, at *12 (D. Utah Mar. 15, 2011) (quoting Krouse v. Bower, 20 P.3d 895, 898 (Utah 2001)).

statement is communicated only to people with an "interest in the outcome" of the litigation.[3]

Accordingly, SCO's alleged conduct is non-actionable under the absolute litigation privilege.[4]

## II. RECENT AUTHORITY SUPPORTS THAT SCO'S STATEMENTS TO THE PRESS AND PUBLIC ARE ALSO PROTECTED BY QUALIFIED PRIVILEGE

Even if SCO's statements to the press did not fall within the absolute litigation privilege, moreover, they are still protected by the qualified privilege that applies where a party "seeks to

---

[3] Id. at *13 (quoting Krouse, 20 P.3d at 898); see also Westmont Maint. Corp. v. Vance, 313 P.3d 1149, 1153 (Utah Ct. App. 2013) (statements that "relate broadly to the overall dispute" are protected by litigation privilege); Allen v. Dimeo, 2007 UT App 192 (June 1, 2007) ("The requirement that a statement be made in the course of a judicial proceeding is interpreted broadly. . . . The requirement that a statement has some reference to the judicial proceeding is broadly construed.").

[4] See Amarosa v. Dr. John's Inc., No. 2:11-CV-676 DN, 2014 WL 3015312, at *2 (D. Utah July 2, 2014) (Nuffer, J.) ("[T]he judicial proceeding privilege is an absolute privilege, rather than a conditional privilege . . . .").

In a 2007 defamation action involving allegations against a polygamist group and its members, the Utah Supreme Court held that certain statements made to the press fell outside the absolute litigation privilege. Pratt v. Nelson, 164 P.3d 366, 381 (Utah 2007). That case is distinguishable from the facts here because of the court's holding that the press in that case had no legitimate interests in the litigation at issue and at most "were acting only in the capacity of concerned citizens." Id. at 380. The court reached that conclusion with respect to a press conference that Mary Ann Nelson and her lawyers held concerning her allegations that she was forced to marry her uncle when she was sixteen years of age, and that roughly 240 defendants belonging to the polygamist group had "failed to prevent or report the abuses." Id. at 370-71. One of Nelson's attorneys commented at the press conference that they were trying to "punish and 'make an example of them.'" Id. On the facts of that case, the court concluded that the reporters at the press conference did not have legitimate interests in the litigation at issue. Id. at 380. Consequently, the court held that the absolute litigation privilege did not apply.

In the case of SCO's statements, by contrast, the members of the press to whom the statements were made had a legitimate interest in the intellectual property issues concerning Linux and at the center of SCO's claims against IBM, because anyone who works with computers has such an interest. See Norman v. Borison, 17 A.3d 697, 717 (Md. 2011) (comments to press that "[w]e're talking about bad people" who were "out stealing the equity in people's homes" protected by absolute privilege because they were made "while promoting public awareness of their proposed class action claim and, thus, while participating in the course of the proceeding"); Helena Chem. Co. v. Uribe, 281 P.3d 237, 245 (N.M. 2012) ("[T]he most economical and feasible method of informing potential litigants of prospective litigation affecting their interests may be through the press."); see also Lawson v. Stow, 327 P.3d 340, 346 (Colo. App. 2014) ("Where a statement relates to a matter of public concern, the speaker's communication is subject to a qualified privilege. . . . Generally, a matter is of public concern . . . when the public may reasonably be expected to have a legitimate interest in what is being published.") (quoting Williams v. Cont'l Airlines, Inc., 943 P.2d 10, 17 (Colo. App. 1996)) (internal quotation marks omitted); Offen v. Brenner, 402 Md. 191, 199, 935 A.2d 719, 724 n.2 (Md. 2007).

2

vindicate or further an interest regarded as being sufficiently important to justify some latitude for making mistakes."[5]

In 2013, in Tamburo v. Dworkin, the District Court for the Northern District of Illinois granted summary judgment for a defendant on qualified privilege grounds (in the alternative) on similar facts. The defendant was a dog breeder and computer programmer who had "spent almost five years creating an extensive database of dog pedigrees, which she made freely available for use by fellow breeders through her web site."[6] Plaintiff harvested the pedigree database and "attempted to sell [it] to dog breeders for a profit." Defendant was "outraged" and "reached out to the dog breeding community, through emails and online messages, for assistance in responding to the plaintiffs' misappropriation of her work."[7] Plaintiff sued for tortious interference with potential economic advantage, among other things.[8] Among the statements that formed the basis for plaintiff's claims, defendant stated: "You cannot simply copy my database into yours without permission . . . . I have copyright statements on my site to boot." The court held that the statements were not actionable, noting that whether the plaintiff "could successfully assert a copyright interest is beside the point." The court held that "the statements are protected by the qualified privilege" regardless, and that the plaintiff was required to "point to evidence" that defendant "made the statement with a reckless disregard as to its truth" in order to defeat the qualified privilege at the summary judgment stage:

> [A]buse of a qualified privilege cannot simply be asserted to defeat a motion for summary judgment. Plaintiff has the burden to

---

[5] Nelson v. Target Corp., 334 P.3d 1010, 1018 (Utah Ct. App. 2014) (quoting Brehany v. Nordstrom, Inc., 812 P.2d 49, 58 (Utah 1991)).

[6] Tamburo v. Dworkin, 974 F. Supp. 2d 1199, 1204 (N.D. Ill. 2013).

[7] Id. at 1204.

[8] Id. at 1209-10.

provide sufficient evidence to create a genuine issue of material fact; absent such evidence, summary judgment is appropriate.[9]

IBM failed to proffer any such evidence sufficient to create a genuine issue of fact demonstrating that SCO acted with "reckless disregard" for the truth when it asserted rights to UNIX.

### III. RECENT AUTHORITY SUPPORTS THAT GOOD FAITH IS A SUBSTANTIVE DEFENSE TO IBM'S CLAIMS

As SCO explained in its reply brief, there is a "special requirement of proof of bad faith" for Lanham Act claims where they involve a defendant's "claims of infringement of federally protected intellectual property."[10] Subsequent authority further bears out SCO's point. For example, in a 2008 case involving Lanham Act claims based on copyright infringement letters, the Northern District of Illinois recognized that a copyright holder "has the right to defend himself against infringement and to warn purchasers from the alleged infringer that they, too, might be liable to him."[11] Actions taken to defend against infringement are only actionable if they contain false statements or are issued in bad faith.[12] IBM has offered no evidence of false statements or bad faith by SCO.

With respect to IBM's claim under New York General Business Law Section 349 (Count 5), New York's highest court addressed a Section 349 claim in 2008 and held: "In order to assert a prima facie cause of action under General Business Law § 349, a plaintiff must be able to establish that a defendant *intended to deceive* its customers to the customers' detriment and was

---

[9] Id. at 1216-19 (quoting Anglin v. Sears Roebuck & Co., No. 93 C 3438, 1998 WL 483524, at *8 (N.D. Ill. Aug. 10, 1998)).

[10] Litigation Privilege Motion Reply Brief at 13, Docket No. 944, filed January 12, 2007.

[11] BaliJewel, Inc. v. John Hardy Ltd., No. 07 CV 3819, 2008 WL 4425886, at *3 (N.D. Ill. Sept. 24, 2008) (quoting Art Line, Inc. v. Universal Design Collections, Inc., 966 F. Supp. 737 (N.D. Ill. 1997)); see also Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (declining to construe the Lanham Act to "cover misrepresentations about copyright licensing status").

[12] BaliJewel, 2008 WL 4425886, at *3.

successful in doing so."[13] Thus, SCO's good faith independently defeats all of IBM's claims, separate and apart from the protective effect of any absolute or qualified privilege. In addition, the application of the qualified privilege imposes on IBM the burden of establishing that SCO acted "acted with malice" – IBM has offered no evidence of malice.[14]

## IV. RECENT AUTHORITY SUPPORTS THAT IBM HAS NO DAMAGES

IBM must establish its damages "with reasonable certainty" – that is, "with sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered."[15] Accordingly, the courts in decisions reached after the initial briefing on this point have made clear that where the testimony of a plaintiff's executives "does little more than reiterate the categories of damages identified in the complaint and the initial disclosures," the claim should be dismissed as a matter of law because "more is required in response to a motion for summary judgment."[16] IBM's executives and experts have not merely failed to articulate damages with sufficient certainty; they have admitted that IBM's business was not harmed.[17]

---

[13] Samiento v. World Yacht Inc., 883 N.E.2d 990, 996 (N.Y. 2008) (emphasis added).

[14] See, e.g., Dadd v. Mount Hope Church, 780 N.W.2d 763, 763 n.1 (Mich. 2010) (where qualified privilege applies, "the burden is upon the plaintiff to prove the untruth of the statements and actual malice") (quoting Van Vliet v. Vander Naald, 287 N.W. 564, 567 (Mich. 1939)); see also id. at 767 ("[T]he defense of 'qualified privilege' is of considerable value to a defendant because it: (1) rebuts the inference of malice from the defamatory statements, (2) clothes the defendant in a presumption of good faith, and (3) increases the plaintiff's burden by requiring the plaintiff to show that the defendant acted with malice, instead of merely negligence.") (Markman, J., concurring in part and dissenting in part); cf. Farberware Licensing Co., LLC v. Meyer Mktg. Co., 428 F. App'x 97, 99 (2d Cir. 2011) ("[P]laintiff's failure to prevail on its claims, standing alone, is not enough to anchor a claim of bad faith.").

[15] Stevens-Henager Coll. v. Eagle Gate Coll., 248 P.3d 1025, 1033 (Utah Ct. App. 2011).

[16] Id. at 1035.

[17] See Litigation Privilege Motion Brief at 12-13, Docket No.776, filed September 25, 2006.

DATED this 26th day of May, 2015.

By: /s/ Brent O. Hatch

HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
David Boies
Stuart H. Singer
Edward Normand
Jason Cyrulnik

*Counsel for Plaintiff, The SCO Group, Inc.*