Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666
bhatch@hjdlaw.com
mjames@hjdlaw.com

Stuart Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
ssinger@bsfllp.com

David Boies (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
Jason Cyrulnik (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com
enormand@bsfllp.com
jcyrulnik@bsfllp.com

*Counsel for Plaintiff, The SCO Group, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE SCO GROUP, INC., by and through the Chapter 11 Trustee in Bankruptcy, Edward N. Cahn,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | **SCO'S RESPONSE TO IBM'S CASE LAW UPDATE WITH RESPECT TO ITS MOTION FOR SUMMARY JUDGMENT ON SCO'S UNFAIR COMPETITION CLAIM (SCO'S SIXTH CAUSE OF ACTION) AND ITS MOTION FOR SUMMARY JUDGMENT ON SCO'S INTERFERENCE CLAIMS (SCO'S SEVENTH AND NINTH CAUSES OF ACTION)**<br><br>Case No. 2:03-cv-00294 DN<br><br>District Judge David Nuffer |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

UNFAIR COMPETITION (SCO'S SIXTH CAUSE OF ACTION) ............................................1

I.  SCO TIMELY FILED ITS UNFAIR COMPETITION CLAIM .........................................1

    A.  The Continuing-Tort Doctrine Defeats IBM's Motion..............................................1

    B.  The JDA's Two-Year Provision Does Not Apply to SCO's
        Unfair Competition Claim ........................................................................................2

    C.  The Limitations Period Did Not Start Prior to April 2001 .......................................3

II. IBM'S CONDUCT CONSTITUTES ACTIONABLE UNFAIR COMPETITION............4

    A.  IBM's Deceptive Misappropriation Is Textbook Unfair Competition ....................4

    B.  IBM Continues to Misstate the Independent-Tort Doctrine ....................................4

III. SCO'S UNFAIR COMPETITION CLAIM IS NOT PREEMPTED ..................................5

INTERFERENCE (SCO'S SEVENTH AND NINTH CAUSES OF ACTION) ...........................6

I.  SCO'S COMPLAINT AND THE SUBMITTED EVIDENCE ESTABLISH IBM'S
    ACTIONABLE INTERFERENCE WITH SPECIFIC BUSINESS RELATIONSHIPS ....6

II. IBM'S CONDUCT WAS IMPROPER .................................................................................7

    A.  IBM Interfered Through Improper Means...............................................................7

    B.  IBM's Improper Conduct Is Not Privileged ............................................................8

III. SCO HAS ADDUCED SUFFICIENT EVIDENCE THAT IBM'S TORTIOUS
     INTERFERENCE INJURED SCO ......................................................................................8

# TABLE OF AUTHORITIES

**Cases**

Abercrombie v. Andrew Coll.,
 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ....................................................................................... 3

Andrew Greenberg, Inc. v. Svane, Inc.,
 830 N.Y.S.2d 358 (3d Dep't 2007) ............................................................................................ 1

Barbagallo v. Marcum LLP,
 820 F. Supp. 2d 429 (S.D.N.Y. 2011) ....................................................................................... 4

Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC,
 692 F.3d 42 (2d Cir. 2012) .................................................................................................... 4, 5

Beverage Mktg. USA, Inc. v. S. Beach Beverage Co.,
 799 N.Y.S.2d 242 (2d Dep't 2005) ............................................................................................ 4

Cardi's Dep't Store, Inc. v. FedEx Trade Networks Transp. & Brokerage, Inc.,
 No. 11-CV-5024 DLI MDG, 2014 WL 3809811 (E.D.N.Y. July 31, 2014) ............................. 2

Clark–Fitzpatrick, Inc. v. Long Island R. Co.,
 516 N.E.2d 190 (N.Y. 1987) ..................................................................................................... 4

Cook Assocs., Inc. v. Warnick,
 664 P.2d 1161 (Utah 1983) ..................................................................................................... 10

Corporate Trade, Inc. v. Golf Channel,
 563 F. App'x 841 (2d Cir. 2014) ............................................................................................... 3

Couvertier v. Concourse Rehab. & Nursing, Inc.,
 985 N.Y.S.2d 683 (2d Dep't 2014) ........................................................................................ 2, 3

Diversified Striping Sys., Inc. v. Kraus,
 341 P.3d 932 (Utah Ct. App. 2014) ........................................................................................... 3

Eldridge v. Johndrow,
 345 P.3d 553 (Utah 2015) ..................................................................................................... 6, 7

Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.,
 325 P.3d 70 (Utah 2014) ........................................................................................................... 3

Enzo Biochem, Inc. v. Amersham PLC,
 981 F. Supp. 2d 217 (S.D.N.Y. 2013) ....................................................................................... 1

Francis v. Nat'l DME,
 --- P.3d ----, 2015 WL 2125287 (Utah Ct. App. May 7, 2015) .............................................. 10

Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.,
  No. 04 CIV. 3136 (HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) .......................................... 1

John v. State Farm Mut. Auto. Ins. Co.,
  983 N.Y.S.2d 883 (2d Dep't 2014) ........................................................................................... 2

Kaufman v. Cohen,
  760 N.Y.S.2d 157 (1st Dep't 2003) .......................................................................................... 3

Keith v. Mountain Resorts Dev., LLC,
  337 P.3d 213 (Utah 2014) ......................................................................................................... 8

Kregos v. Associated Press,
  3 F.3d 656 (2d Cir. 1993) ......................................................................................................... 5

Kwan v. Schlein,
  441 F. Supp. 2d 491 (S.D.N.Y. 2006) ...................................................................................... 1

Levine v. Landy,
  832 F. Supp. 2d 176 (N.D.N.Y. 2011) ..................................................................................... 5

Moradian v. Deer Valley Resort Co.,
  No. 2:10-CV-00615-DN, 2012 WL 3544820 (D. Utah Aug. 16, 2012) .................................... 9

Muller-Paisner v. TIAA,
  289 F. App'x 461 (2d Cir. 2008) .............................................................................................. 5

Mumford v. ITT Commercial Fin. Corp.,
  858 P.2d 1041 (Utah Ct. App. 1993) ........................................................................................ 7

Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,
  784 P.2d 475 (Utah Ct. App. 1989) ........................................................................................ 10

Putrelo Constr. Co. v. Town of Marcy,
  964 N.Y.S.2d 812 (4th Dep't 2013) .......................................................................................... 2

Quadrille Wallpapers & Fabric, Inc. v. Pucci,
  No. 1:10-CV-1394 LEK/DRH, 2011 WL 3794238 (N.D.N.Y. Aug. 24, 2011) ....................... 5

Sampson v. Richins,
  770 P.2d 998 (Utah Ct. App. 1989) .......................................................................................... 9

Sidney Frank Importing Co. v. Beam Inc.,
  998 F. Supp. 2d 193 (S.D.N.Y. 2014) ...................................................................................... 4

Smith v. Smith,
  830 F.2d 11 (2d Cir. 1987) ....................................................................................................... 3

Sporn v. MCA Records, Inc.,
    448 N.E.2d 1324 (N.Y. 1983) .................................................................................... 1

Stevenson v. Salt Lake Cnty.,
    No. 2:12-CV-44-PMW, 2014 WL 4851873 (D. Utah Sept. 29, 2014) ....................... 9

Transaero, Inc. v. Chappell,
    No. 13-CV-5752 JFB GRB, 2014 WL 1783732 (E.D.N.Y. May 6, 2014) ................ 4

Wachocki v. Luna,
    330 P.3d 717 (Utah Ct. App. 2014) ......................................................................... 10

Wakefield Kennedy LLC v. Baldwin,
    No. 11-CV-00604-DN-EJF, 2014 WL 2009101 (D. Utah May 16, 2014) ................ 7


**Other Authorities**

Restatement (Second) of Torts § 768(1) & cmt. (1979) ..................................................... 8

# **UNFAIR COMPETITION (SCO'S SIXTH CAUSE OF ACTION)**

## I. SCO TIMELY FILED ITS UNFAIR COMPETITION CLAIM

### A. The Continuing-Tort Doctrine Defeats IBM's Motion

IBM wrongly quotes Enzo Biochem, Inc. v. Amersham PLC for the proposition that "unfair competition is not a continuing tort."[1] The Enzo Biochem court relied exclusively on Sporn v. MCA Records, Inc. in reaching that conclusion.[2] Sporn in turn makes clear that unfair competition is a continuing tort where the unfair competition is in the nature of a "continuing trespass" rather than a one-time "conversion."[3] Thus, for example, a court analyzing and applying Sporn in greater depth than the Enzo Biochem court stated that an "unfair competition claim would be a 'continuing trespass' pursuant to the *Sporn* trespass-conversion analysis and thus be timely" where the claim was based on "the same on-going activity that underlies [plaintiff's] trademark infringement claims: that since 1998 [defendant] has used an allegedly confusingly similar name in the same industry," and "[t]here is no similar singular act of misappropriation in this case as was at issue in *Sporn*."[4] SCO alleges IBM's continued wrongful use of SCO's code in its proprietary products is exactly such a continuing tort.

---

[1] IBM Case Law Update at 2, Docket No. 1140, filed May 22, 2015 (quoting Enzo Biochem, Inc. v. Amersham PLC, 981 F. Supp. 2d 217, 227 (S.D.N.Y. 2013)).

[2] 451 N.Y.S.2d 750, 751 (1st Dep't 1982).

[3] Sporn v. MCA Records, Inc., 448 N.E.2d 1324, 1327 (N.Y. 1983) (where defendant's actions constituted "total usurping of plaintiff's right to possess" rather than "mere interference," the tort was not continuing for statute of limitations purposes).

[4] Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A., No. 04 CIV. 3136 (HB), 2005 WL 13682, at *8 & n.9 (S.D.N.Y. Jan. 3, 2005); see also Kwan v. Schlein, 441 F. Supp. 2d 491, 503 (S.D.N.Y. 2006) (holding that plaintiff's "claim is not time-barred because unfair competition occurring over a period of time can give rise to liability as a continuing tort") (citing Greenlight Capital, 2005 WL 13682, at *7-8); cf. Andrew Greenberg, Inc. v. Svane, Inc., 830 N.Y.S.2d 358, 362 (3d Dep't 2007) ("Inasmuch as plaintiff adequately alleged that defendants continued to use the trade secrets and develop software for the games, establishing, if the allegations prove to be true, the existence of a continuing tort, Supreme Court properly refused to dismiss that cause of action as time barred.").

### B.      The JDA's Two-Year Provision Does Not Apply to SCO's Unfair Competition Claim

IBM cites a series of recent decisions that stand for the irrelevant proposition that agreements may "shorten <u>an otherwise applicable</u> limitations period."[5] The contractual provision to which IBM appeals does <u>not</u> cover claims for unfair competition: Section 22.3 of the JDA shortens the limitations period only for an "action <u>related to a breach of this Agreement</u>."[6] If the parties wanted to expand the scope of Section 22.3 to shorten the limitations period for claims related to unfair competition or other causes of action, they could have done so. For example, the contractual provision at issue in one of IBM's own cited cases provided, among other things: "<u>For any and all other claims of any other type</u>," an action must be filed and served "within two (2) years from the date of loss or damage."[7] The parties did not reach any such agreement here, and the JDA expressly limits its shortening of the limitations period accordingly.

IBM's proffered cases also do not support its contention that the "related to a breach of this Agreement" language of the JDA should be stretched (let alone as a matter of law) to mean unfair competition claims as well. IBM first cites <u>Couvertier</u>, a New York case that concerned a forum-selection clause covering actions "arising out of or related to" the nursing-home-admission agreement at issue[8] – in stark contrast to the language the parties here used, limiting the provision to claims related to a <u>breach</u> of the agreement. The court in <u>Couvertier</u> held that claims against the nursing home for wrongful death, negligence, and violations of public health law, all "predicated on

---

[5] IBM Case Law Update at 1, Docket No. 1140, filed May 22, 2015 (emphasis added) (citing <u>John v. State Farm Mut. Auto. Ins. Co.</u>, 983 N.Y.S.2d 883, 884 (2d Dep't 2014) (time contractually shortened to assert claim for breach of insurance policy); <u>Putrelo Constr. Co. v. Town of Marcy</u>, 964 N.Y.S.2d 812, 813 (4th Dep't 2013) (time contractually shortened for accrual of plaintiff's breach of contract claim).

[6] Ex. 245 to Shaughnessy Decl. (Sept. 25, 2006) (emphasis added).

[7] <u>Cardi's Dep't Store, Inc. v. FedEx Trade Networks Transp. & Brokerage, Inc.</u>, No. 11-CV-5024 DLI MDG, 2014 WL 3809811, at *3 (E.D.N.Y. July 31, 2014) (quoting Terms and Conditions of Service § 3) (emphasis added).

[8] <u>Couvertier v. Concourse Rehab. & Nursing, Inc.</u>, 985 N.Y.S.2d 683, 683 (2d Dep't 2014).

2

the care rendered by" the nursing home, were subject to the forum-selection clause.[9] IBM's cited Utah case likewise concerns a forum-selection clause for claims "related to" a <u>contract</u>, rather than a <u>breach of contract</u>,[10] and is thus "much broader" than a clause applying only to claims related to a breach.[11] IBM's continued reliance on inapposite forum-selection-clause cases further undermines its position, for the reasons articulated in SCO's opposition brief.[12]

        C.        The Limitations Period Did Not Start Prior to April 2001

IBM wrongly quotes a summary order from the Second Circuit to suggest that in this case the statute of limitations is not subject to the equitable discovery rule and equitable estoppel.[13] That rule applies only where the acts of concealment warranting estoppel are the same acts that form the basis for the claim. Contrary to IBM's suggestion, the IBM acts of concealment warranting estoppel here do <u>not</u> form the basis of SCO's underlying cause of action. To be sure, IBM's misconduct at the center of SCO's claims involved deception and concealment, but unlike the cases relied on by the summary order in <u>Corporate Trade</u>, where the underlying cause of action was fraud (which has its own two-year discovery rule),[14] SCO's claim is based in large part on "IBM's misappropriation of the SVR4 code."[15]

---

[9] <u>Id.</u> at 684.

[10] <u>Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.</u>, 325 P.3d 70, 82 (Utah 2014).

[11] <u>Diversified Striping Sys., Inc. v. Kraus</u>, 341 P.3d 932, 933-34 (Utah Ct. App. 2014) (distinguishing <u>Energy Claims</u> and holding that forum-selection clause that "applied only to 'action[s] or proceeding[s] seeking to interpret or enforce the provisions'" of an agreement did not apply to tort claims).

[12] SCO Opp'n Brief at 33, Docket No. 861, filed Nov. 11, 2006.

[13] IBM Case Law Update at 2, Docket No. 1140, filed May 23, 2015 (quoting <u>Corporate Trade, Inc. v. Golf Channel</u>, 563 F. App'x 841, 842 (2d Cir. 2014)).

[14] <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d 157, 167 (1st Dep't 2003) (where "the very same wrongful act . . . form[ed] the basis of both the estoppel argument and the underlying claims for fraud and breach of fiduciary duty," court applied "the fraud discovery accrual rule" rather than equitable estoppel, and reversed prior dismissal of claims as time-barred); <u>Abercrombie v. Andrew Coll.</u>, 438 F. Supp. 2d 243, 267 (S.D.N.Y. 2006) ("[B]ecause [alleged misrepresentation] forms the basis of the fraud cause of action, it cannot serve as the grounds for finding equitable estoppel."). (<u>Corporate Trade</u> also cited an inapposite case involving sexual assault triggering "post-traumatic neurosis" that prevented the plaintiff from bring suit earlier. <u>See</u> <u>Smith v. Smith</u>, 830 F.2d 11, 13 (2d Cir. 1987).)

[15] SCO Opp'n Brief at 28 ¶ 76, Docket No. 861, filed Nov. 11, 2006.

3

## II. IBM'S CONDUCT CONSTITUTES ACTIONABLE UNFAIR COMPETITION

### A. IBM's Deceptive Misappropriation Is Textbook Unfair Competition

IBM's argument that "unfair competition is a narrow tort" limited to "palming off and misappropriation"[16] is unavailing because, narrow or otherwise, IBM has committed misappropriation. And recent case law further confirms that unfair competition requires only a showing of misappropriation of "plaintiff's labors, skills, expenditures, or good will," with "some element of bad faith in doing so."[17] Recent case law also rejects IBM's contentions that SCO needs to show likelihood of confusion by the public to prevail on its claim: "Likelihood of confusion by the public is <u>not</u> an essential element in a misappropriation-based unfair competition claim."[18]

### B. IBM Continues to Misstate the Independent-Tort Doctrine

IBM asserts that SCO "cannot establish a tort claim relying on contractual duties."[19] SCO's claim is not based on a breach of contract but instead on "IBM's pattern of deceptive and unfair conduct that exploited the access that the Project Monterey relationship provided to SCO's intellectual property."[20] Recent case law confirms, moreover, that even tort duties that are "certainly 'connected with and dependent upon [a] contract'" give rise to "non-duplicative" claims where those claims "sufficiently 'spring from circumstances extraneous to, and not constituting elements of, the contract.'"[21] Thus, in <u>Bayerische</u>, where defendants represented that their

---

[16] IBM Case Law Update at 4, Docket No. 1140, filed May 23, 2015.

[17] <u>Sidney Frank Importing Co. v. Beam Inc.</u>, 998 F. Supp. 2d 193, 209 (S.D.N.Y. 2014) (quoting <u>Barbagallo v. Marcum LLP</u>, 820 F. Supp. 2d 429, 446 (S.D.N.Y. 2011)) (alternations omitted).

[18] <u>Sidney Frank Importing</u>, 998 F. Supp. 2d at 209 (emphasis added); <u>see also</u> <u>Transaero, Inc. v. Chappell</u>, No. 13-CV-5752 JFB GRB, 2014 WL 1783732, at *12 (E.D.N.Y. May 6, 2014) ("[W]here an unfair competition claim is not based on trademark infringement, but misappropriation of confidential or proprietary information, the plaintiff need not establish either actual confusion or a likelihood of confusion.") (citing <u>Beverage Mktg. USA, Inc. v. S. Beach Beverage Co.</u>, 799 N.Y.S.2d 242, 244 (2d Dep't 2005)).

[19] IBM Case Law Update at 3, Docket No. 1140, filed May 23, 2015.

[20] SCO Opp'n Brief at 40, Docket No. 861, filed Nov. 11, 2006; <u>see also</u> <u>id.</u> at 39-43.

[21] <u>Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC</u>, 692 F.3d 42, 59 (2d Cir. 2012) (quoting <u>Clark–Fitzpatrick, Inc. v. Long Island R. Co.</u>, 516 N.E.2d 190, 194 (N.Y. 1987)); <u>see also</u> <u>Sidney</u>

4

"interests were aligned" with plaintiffs, and plaintiffs "reasonably relied on [defendant's] representations of contractual performance," the Second Circuit recognized that a "legal duty . . . would *arise* out of the independent characteristics of the relationship between" the parties, supporting an independent tort claim, even where that duty was "*assessed* largely on the standard of care and the other obligations set forth in the contract." [22] Recent case law also confirms that the "tight partner" relationship[23] though which SCO placed its "trust and confidence" in IBM gives rise to a fiduciary relationship.[24]

### III. SCO'S UNFAIR COMPETITION CLAIM IS NOT PREEMPTED

Recent authority also confirms that SCO's unfair competition claim is not preempted by federal copyright law: "[U]nfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to . . . avoid § 301 preclusion."[25] In Quadrille Wallpapers, for example, the court held that the defendant's "breach of the confidential relationship she had with Plaintiff as employee" and "alleged misuse of Plaintiff's trade secrets to compete with Plaintiff" were sufficient "to remove these claims from the preemptive reach of the Copyright Act."[26]

---

Frank Importing, 998 F. Supp. 2d at 209 (refusing to dismiss unfair competition claim as duplicative of breach of contract) (citing cases).

[22] Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 58-59 (2d Cir. 2012) (reversing dismissal for failure to state a claim).

[23] See SCO Opp'n Brief at 36 n.6, Docket No. 861, filed Nov. 11, 2006.

[24] Muller-Paisner v. TIAA, 289 F. App'x 461, 466 (2d Cir. 2008) ("[A] fiduciary duty may arise in the context of a commercial transaction upon a requisite showing of trust and confidence.").

[25] Quadrille Wallpapers & Fabric, Inc. v. Pucci, No. 1:10-CV-1394 LEK/DRH, 2011 WL 3794238, at *5 (N.D.N.Y. Aug. 24, 2011) (quoting Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993)); see also Levine v. Landy, 832 F. Supp. 2d 176, 191 (N.D.N.Y. 2011) (claim preempted because it did not involve breach of confidential relationship).

[26] Quadrille Wallpapers, 2011 WL 3794238, at *5.

## INTERFERENCE (SCO'S SEVENTH AND NINTH CAUSES OF ACTION)

I.  **SCO'S COMPLAINT AND THE SUBMITTED EVIDENCE ESTABLISH IBM'S ACTIONABLE INTERFERENCE WITH SPECIFIC BUSINESS RELATIONSHIPS**

IBM relies primarily on the Utah Supreme Court's 2015 decision in Eldridge v. Johndrow, which held that improper purpose does not suffice to sustain an interference claim.[27] But Eldridge does not affect SCO's claims at all – as SCO's 2006 briefing makes clear, SCO's claims have always included IBM's use of improper means (as well as improper purpose) in interfering with SCO's business:

> In arguing that [its] Motion should be granted, IBM dispenses with the totality of Utah law on tortious interference, arguing instead that SCO must prove that IBM acted with improper purpose. In actuality, Utah law provides for recovery where the interference was undertaken with an improper purpose or through the use of improper means. A plaintiff is only required to prove one or the other, not both. The record evidence adduced in this case clearly shows that IBM employed improper means in interfering with SCO's business relationships . . . .[28]

Under Eldridge, IBM's use of improper means to interfere with SCO's business relationships establishes a tortious interference claim.[29]

IBM implies in its brief that all of SCO's tortious interference claims are subject to IBM's challenge of "indirect" interference.[30] That is incorrect. IBM acknowledged in its 2006 briefing that as to "[s]even identified contractual or existing business relationships . . . IBM allegedly interfered by specific conduct or communication to the companies."[31] IBM wrongly suggests, moreover, that the formulation of "intent" set forth in Eldridge somehow overruled, *sub silentio*, the

---

[27] See IBM Case Law Update at 6, Docket No. 1140, filed May 23, 2015 (citing Eldridge v. Johndrow, 345 P.3d 553, 561 (Utah 2015)).

[28] SCO Opp'n Brief at 2, Docket No. 868, filed Nov. 11, 2006 (emphasis added) (enumerating IBM's improper means); see also id. at 39-42.

[29] Eldridge, 345 P.3d at 565.

[30] IBM Case Law Update at 6, Docket No. 1140, filed May 23, 2015.

[31] IBM Mot. Brief at 18, ¶ 44.a, Docket No. 803, filed Sept. 25, 2006 (emphasis added).

6

well-established standard – recently reiterated by this Court – that tortious interference "is intentional 'even if the defendant does not act for the purpose of interfering or does not desire it but knows that the interference is substantially certain to occur as a result of defendant's action and is a necessary consequence thereof.'"[32] When read in context, it is clear that IBM's quoted fragment of Eldridge did not purport to re-write the intent standard for tortious interference, but merely to contrast the element of "intent" from the concept of "improper purpose."[33] This is hardly surprising, since the focus of Eldridge was the abolition of the "improper purpose" element. IBM's "intent" challenge still fails, for all the reasons stated in SCO's original briefing.[34]

## II. IBM'S CONDUCT WAS IMPROPER

### A. IBM Interfered Through Improper Means

IBM wrongly contends that "SCO has offered no evidence" that IBM's breaches of contract, to the extent such breaches partially contribute to the factual basis of SCO's interference claims, were "committed for the immediate purpose of injuring" SCO.[35] IBM's proffered case on this point offers nothing new – SCO addressed this point in its 2006 briefing,[36] explained that "[i]ssues of intent and knowledge in particular are appropriately proven through circumstantial evidence,"[37] and set forth ample circumstantial evidence demonstrating material issues of fact as to IBM's intent to injure SCO.

---

[32] Wakefield Kennedy LLC v. Baldwin, No. 11-CV-00604-DN-EJF, 2014 WL 2009101, at *3 (D. Utah May 16, 2014) (Nuffer, J.) (quoting Mumford v. ITT Commercial Fin. Corp., 858 P.2d 1041, 1044 (Utah Ct. App. 1993)); see also IBM Case Law Update at 7 (quoting Eldridge, 345 P.3d at 565).

[33] Eldridge, 345 P.3d at 565 ("Intent and motive are not synonymous; in the tort context, 'intent' means a desire to bring about certain consequences, not a person's reasons for that desire.").

[34] See SCO Opp'n Brief at 31-38, Docket No. 868, filed Nov. 11, 2006.

[35] IBM Case Law Update at 8, Docket No. 1140, filed May 23, 2015.

[36] SCO Opp'n Brief at 28, Docket No. 868, filed Nov. 11, 2006 ("By itself, a breach of contract will not generally satisfy plaintiff's burden, but a deliberate breach for the purpose of injuring the plaintiff—even if that is not the predominate purpose—will satisfy this element of the tort.").

[37] SCO Opp'n Brief at 30, Docket No. 868, filed Nov. 11, 2006.

7

### B. IBM's Improper Conduct Is Not Privileged

IBM's assertion that a "privilege" for "competitive behavior" somehow insulates it from liability for intentional interference by improper means[38] is wrong, and unsupported by its proffered case, Keith v. Mountain Resorts Development, LLC. The Utah Supreme Court's decision in Keith made no mention of any privilege for competitive behavior, but instead simply affirmed the district court's grant of summary judgment that the plaintiff had "failed as a matter of law to establish improper purpose or improper means under *Leigh Furniture*."[39] (Because it was decided before Eldridge, the Keith decision includes an analysis of improper purpose.) Because (unlike the defendant in Keith) IBM employed improper means to effect its interference, neither Keith nor IBM's asserted "competitive behavior" privilege supports IBM's summary judgment motion.[40] It is black-letter law that the use of improper means defeats a privilege based on the right to compete.[41]

### III. SCO HAS ADDUCED SUFFICIENT EVIDENCE THAT IBM'S TORTIOUS INTERFERENCE INJURED SCO

IBM's supplemental briefing as to its causation and damages arguments[42] adds nothing to the arguments advanced in its original briefing.

First, IBM wrongly asserts that SCO "did not satisfy Local Rule DUCivR 56-1"[43] and impertinently relies on a case in which "Plaintiff [did] not provide '[a] response to each stated material fact' and if any fact is disputed, 'so state and concisely describe and cite with particularity

---

[38] IBM Case Law Update at 8, Docket No. 1140, filed May 23, 2015.
[39] Keith v. Mountain Resorts Dev., LLC, 337 P.3d 213, 227 (Utah 2014).
[40] See SCO Opp'n Brief at 40, Docket No. 868, filed Nov. 11, 2006.
[41] Restatement (Second) of Torts § 768(1) & cmt. (1979) ("One's privilege to engage in business and to compete with others" is subject to the "limitation[]" that, among other things, "the actor does not employ wrongful means").
[42] IBM Case Law Update at 9-10, Docket No. 1140, filed May 23, 2015.
[43] IBM Case Law Update at 9, Docket No. 1140, filed May 23, 2015.

8

the evidence on which the non-moving party relies to dispute that fact.'"[44] Unlike the plaintiff in IBM's cited case, SCO set forth a detailed 39-page "Response to IBM's 'Statement of Undisputed Facts,'"[45] including citations to admissible evidence as appropriate. For example, SCO responded, citing expert reports, that: "Following IBM's improper conduct and the resulting precipitous decline of revenue from Santa Cruz's UNIX operating systems, the company suffered from the impact of the loss of that revenue, including lack of funding issues. Such issues, SCO's experts concluded, were attributable to IBM's wrongful conduct . . . ."[46]

Second, IBM again relies on an inapposite case for the generalized principle that a claim may not be based solely on "speculation, conjecture, and surmise."[47] IBM cites a case in which a plaintiff speculated that the skier who struck him on the slopes was a ski-resort employee, an allegation based solely on the skier's "green ski jacket that [plaintiff] believed was a Deer Valley ski instructor's uniform," where "Deer Valley present[ed] unrebutted facts that it sells apparel to the general public that looks like the ski instructors' uniforms."[48] By contrast, SCO's causation and damages theories do not rest on speculation, but on a well-developed factual record, including multiple expert opinions. IBM does not – because it cannot – challenge the well-established principle set forth in SCO's original briefing that "[o]nce a defendant has been shown to have caused a loss, the reasonable level of certainty required to establish the *amount* of a loss is generally lower than that required to establish the *fact* or *cause* of a loss."[49] Recent case law reinforces this point. A May 2015 decision, for example, recognized that "[p]roving the amount of damages does

---

[44] Stevenson v. Salt Lake Cnty., No. 2:12-CV-44-PMW, 2014 WL 4851873, at *1 (D. Utah Sept. 29, 2014) (quoting DUCiv R 56-1(c)(2)(B)).

[45] SCO Opp'n Brief at 56-99, Docket No. 868, filed Nov. 11, 2006.

[46] Id. at 91-92 (citations omitted).

[47] IBM Case Law Update at 10, Docket No. 1140, filed May 23, 2015.

[48] Moradian v. Deer Valley Resort Co., No. 2:10-CV-00615-DN, 2012 WL 3544820, at *1, *4 (D. Utah Aug. 16, 2012) (Nuffer, J.).

[49] SCO Opp'n Brief at 46, Docket No. 868, filed Nov. 11, 2006 (quoting Sampson v. Richins, 770 P.2d 998, 1007 (Utah Ct. App. 1989)).

not require absolute precision," and "[t]he certainty requirement is met as to the amount of lost profits if there is sufficient evidence to enable the trier of fact to make a reasonable approximation."[50] SCO has presented evidence of damages with more than sufficient certainty to overcome IBM's summary judgment motion.

Finally, IBM's cited cases regarding "failure to produce" have no bearing here. As SCO explained in its original briefing: "SCO's experts identified SCO's loss of partner support as a significant contributory cause of SCO's revenue losses and injury. The loss of partner support was caused . . . by IBM's unfair competition, breach of contract, and other wrongful acts comprising this claim for tortious interference."[51]

DATED this 5th day of June, 2015.

By: /s/ Brent O. Hatch
HATCH, JAMES & DODGE, P.C.
Brent O. Hatch
Mark F. James

BOIES, SCHILLER & FLEXNER LLP
David Boies
Stuart H. Singer
Edward Normand
Jason Cyrulnik
*Counsel for Plaintiff, The SCO Group, Inc.*

---

[50] Francis v. Nat'l DME, --- P.3d ----, 2015 WL 2125287, at *6 (Utah Ct. App. May 7, 2015) (quoting Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc., 784 P.2d 475, 478 (Utah Ct. App. 1989); Cook Assocs., Inc. v. Warnick, 664 P.2d 1161, 1167 (Utah 1983)) (internal quotation marks omitted); see also Wachocki v. Luna, 330 P.3d 717, 722 (Utah Ct. App. 2014) ("Damages, to include lost profits, must be proven with reasonable certainty and the amount by a reasonable though not necessarily precise estimate . . . . some degree of uncertainty is tolerable.") (citations and internal quotation marks omitted).

[51] SCO Opp'n Brief at 49, Docket No. 868, filed Nov. 11, 2006 (citations omitted); see also id. at 90 ("SCO's damages for IBM's acts of interference are subsumed within and coterminous with SCO's damages for its breach of contract claims.").

10