```
 1

 2

 3

 4              IN THE UNITED STATES DISTRICT COURT

 5          FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

 6

 7

 8

    _____
 9                                        )
    SCO GROUP, et al.,                    )
10                                        )
                                          )
11                                        )
                      Plaintiff,          )
12                                        )
         vs.                              )    Case 2:03-CV-294
13                                        )
                                          )
14  INTERNATIONAL BUSINESS MACHINES       )
    CORPORATION,                          )
15                    Defendant.          )
                                          )
16  _____)

17

18          BEFORE THE HONORABLE DALE A. KIMBALL

19                   MARCH 7, 2007

20          REPORTER'S TRANSCRIPT OF PROCEEDINGS

21                   MOTION HEARING
                   DAILY COPY TRANSCRIPT
22

23

24     Reported by:  KELLY BROWN, HICKEN CSR, RPR, RMR

25                   REBECCA JANKE, CSR, RPR, RMR
```

1

```
 1                       A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFFS:   HATCH, JAMES & DODGE
                            BY: BRENT O. HATCH
 4                               MARK F. JAMES
                                 Attorney at Law
 5                          10 West Broadway, Suite 400
                            Salt Lake City, Utah  84101
 6
                            BOIES, SCHILLER & FLEXNER
 7                          BY:  EDWARD J. NORMAND
                                 STUART H. SINGER
 8                               Attorney at Law
                            333 Main Street
 9                          Armonk, NY  10504

10

11    FOR THE DEFENDANT:    CRAVATH, SWAINE & MOORE
                            BY:  DAVID R. MARRIOTT
12                               Attorney at Law
                            825 Eighth Avenue
13                          New York, NY  10019

14                          SNELL & WILMER
                            BY:  AMY F. SORENSON
15                               PETER H. DONALDSON
                                 TODD M. SHAUGHNESSY
16                               Attorney at law
                            15 West South Temple, Suite 1200
17                          Gateway Tower W
                            Salt Lake City, Utah  84101
18

19

20

21

22

23

24

25
```

```
1              SALT LAKE CITY, UTAH, WEDNESDAY, MARCH 7, 2007

2                          *   *   *   *   *

3              THE COURT:  We're here this afternoon in the matter

4    of the SCO V. IBM, 2:03-CV-294.  For plaintiff, Mr. Brent

5    Hatch, Mr. Ted Normand, Mr. Stuart Singer.  For defendant,

6    Mr. David Marriott, Ms. Amy Sorenson, Mr. Peter Donaldson,

7    Mr. Todd Shaughnessy, Mr. Joseph Kriesh and Mr. Jefferson

8    Bell.

9              All right.  We have IBM's motion for summary

10   judgment on its claim for declaratory judgment of

11   non-infringement.

12             Is that the one you want to do first?

13             MR. MARRIOTT:  It is, Your Honor.

14             THE COURT:  And are you arguing?

15             MR. MARRIOTT:  I am.

16             THE COURT:  And Mr. Singer?

17             MR. SINGER:  I'll be arguing.

18             THE COURT:  How long is this one supposed to take?

19             MR. MARRIOTT:  I believe 45 minutes a side, Your

20   Honor.

21             MR. SINGER:  That's correct.

22             THE COURT:  All right.  Go ahead, Mr. Marriott.

23             MR. MARRIOTT:  Thank you.

24             Your Honor, we have, as always, a book.  If I may

25   approach.
```

1          THE COURT:  Yes.

2          MR. MARRIOTT:  After promoting Linux for nearly a

3    decade, Your Honor, SCO changed management and undertook a

4    series of legal attacks against it.  And despite the fact that

5    it contributed Linux and it induced thousands to use it, it

6    threatened users of Linux with infringement including IBM.

7    And to put an end to the fear, the uncertainty and the doubt

8    generated by those allegations, IBM filed a claim asking this

9    Court to declare that the kernel of Linux does not infringe

10   the copyrights purportedly owned by SCO.

11          Now, when IBM last moved for summary judgment on

12   this issue, Your Honor, which motion Your Honor denied as

13   premature, you observed that SCO had produced no competent

14   evidence in support of its allegations of infringement.  And

15   now four years after the commencement of this suit, nothing

16   has changed.  There's no competent evidence to support the

17   conclusion of infringement.

18          And as illustrated, Your Honor, at Tab 1 of our

19   book, SCO's allegations and infringement failed for five

20   independent reasons, any one of which is a basis for summary

21   judgment.

22          Now, before I come to those, Your Honor, if I may,

23   by way of background, let me say this.  As you know, for years

24   SCO pronounced that there were more than a million lines of

25   code controlled by it in the Linux kernel, as we illustrated

4

1    in Tab 2.  At the end of the day, however, when all is said

2    and done, there are 326 lines of code in the Linux kernel

3    which supposedly infringed SCO's alleged copyrights.  That's

4    it.  326 lines of code in the Linux kernel.

5         The allegedly infringing code is trivial in size,

6    Your Honor, less than one 5,000th of a percent of the kernel.

7    And as we illustrated at Tab 3 of the book, it is equivalent

8    of one spectator in 20,000 in an arena the size of the former

9    Delta Center.

10        The actual code, Judge, appears at Tab 4, Tabs 4

11   and 5 of the book and here on the easel to my left and Your

12   Honor's right.  And so that it's perfectly clear, Your Honor,

13   IBM did not contribute a single one of these 326 lines of code

14   to Linux.  Most of it was there long before IBM had anything

15   to do with Linux.  And as I will show Your Honor, much of it

16   is there because of SCO and its support for Linux.

17        Now, portions, Your Honor, of the lines of these

18   326 lines of codes are not actually coded, although they are

19   comments.  And if you look either in your binder or on the

20   chart, you will see that that which is in yellow represents

21   comments not code.

22        Now, as for the actual code, Judge, 11 out of the

23   12 files that are at issue here consists of what is called

24   header file code.  And, in fact, it's not executable file,

25   executable code at all.  It does essentially nothing in terms

1     of being executed.  It is interface information, Your Honor.

2     It describes how information is shared among the components of

3     an operating system.

4              And as we show at Tabs 6 through 8 of the book,

5     Your Honor, this header file code consists of header file

6     information of three types.  And just so that it's clear

7     exactly what we're talking about, let me describe briefly what

8     each of these three types is.

9              First type, Your Honor, are so-called #define

10    statements.  The second are structure declaration, and the

11    third are function prototypes.  Let me just say a word briefly

12    about each those.

13             A #define, Your Honor, specifies a shorthand or

14    abbreviations.  It put it differently, it simply names and

15    numbers associated with anything you might want.  Anything

16    that could happen in connection with a computer an error might

17    have associated with it a name and a number.  Of the 326 lines

18    that are at issue, 121 of those lines are #define statements.

19             And to give Your Honor an example of what a #define

20    statement is, consider, if you would, the abbreviation for the

21    10th Circuit Court of Appeals.  10th Cir.  The Cir, Your

22    Honor, is the name that would be assigned, and the 10 is the

23    number that is assigned.  If you want to take an actual

24    example of the code, if you would look under the first file,

25    the first line says, #define EPERM, Your Honor.  And what that

6

1     says is that if there is a user that attempts to access a file

2     to which that user doesn't have permission, the system will

3     indicate there is an error, an error for lack of permission.

4              So the E for error, the PERM for permission and the

5     number 1 is associated with that.  That is what a #define

6     statement is, Your Honor, much like Circuit 10th.

7              If you take a look at the next type of information

8     in these files, structure declarations.  They specify, Judge,

9     how information is to be stored and how it is to be displayed.

10    To put it differently, a structure declaration is a collection

11    of related data values.

12             And of the 326 items that are at issue in this

13    case, 164 lines of them are structure declarations.  There's

14    somewhere south of 20 or so structure definitions within those

15    lines.

16             And to continue the case citation analogy, Your

17    Honor, structure declaration is like the format for a case.

18    If you had a case, its format would be name of case, reporter,

19    court and date.  That is in effect a structure declaration.

20             And if you want to take an actual example from this

21    code, Your Honor, if you look at file Number 10 there, it

22    provides that, one of the structure declarations there

23    provides that when specifically identifying a computer system,

24    you should say what the machine is, what version it is, what

25    release it is and the type of machine on which it runs.  Those

7

1    are examples of things that come in structure declarations.

2    It's the operating system saying, what kind of machine am I

3    writing on?  Well, it's this kind of machine.  It's that

4    version.  It's that release.  That's what a structure

5    declaration does, Your Honor.  It allows users to understand

6    how components of the operating system interrelate.

7              Finally, Judge, function prototypes.  It specifies

8    what operations may be performed, using what inputs and

9    producing what outputs.  And of the 326 lines of codes that

10   are at issue, there are 12 function prototypes.

11             So if you were to go to a cite, Your Honor, like

12   Westlaw and you were to try to use the find function, the find

13   function which has you put in certain parameters in a case

14   would allow you to find that case.  And that is in effect what

15   a function prototype is.

16             So if you look at the chart, the second blue line,

17   Your Honor, Line 67 of file number 5, you'll see a function

18   prototype called message send.  And that says that if you

19   provide the message recipient ID and the message and the

20   length of the message, any extra information, like if you

21   wanted it to be sent high priority, that will tell you whether

22   the message was properly sent.  And if it doesn't go through,

23   an error will register.  And you might get that like an EPERM

24   number 1.

25             Now, finally, Your Honor, before coming to the five

8

1    bases of summary judgment, let me just underscore, that though

2    this is IBM's motion, it is SCO as the party asserting

3    infringement that bears the burden to establish that IBM's

4    Linux activities have infringed the alleged copyrights.  And

5    at Tab 9 in the book we lay that out for the Court.

6            Point number one, Your Honor.  Summary judgment

7    should be entered in favor of IBM because SCO cannot establish

8    unauthorized copying by IBM of copyrights owned by SCO.  And

9    there are three separate reasons why that's the case, and with

10   Your Honor's permission I want to deal with just two of them

11   today.

12           The first reason is, Your Honor, despite this

13   Court's order that SCO tell IBM exactly what it is that IBM

14   has supposedly done to infringe on these 326 lines of code, no

15   information has been provided in SCO's final disclosures.  And

16   a second reason is, Your Honor, the copyrights at issue on

17   this record we submit are owned by Novell, not by SCO.  And

18   third, Your Honor, SCO transferred any rights it had in the

19   code that is at issue to UnitedLinux for reasons we discussed

20   at the last hearing, and I'll reiterate here.

21           I'd like to, Your Honor, if I may take the first

22   and third of those and to defer the second to another day.  To

23   the question whether Novell or SCO owned these copyrights will

24   be addressed in the Novell litigation.  It's briefed here, and

25   I'm happy to answer any questions Your Honor has about it, but

1     I think in the interest of time I'll focus on 1 and 3.

2             That brings me to 1, Your Honor.  As we will see

3     at Tab 11 of the book, SCO has repeatedly by this Court and

4     Magistrate Judge Wells been ordered to identify with

5     specificity its allegations of infringement to tell IBM how it

6     is supposedly IBM has infringed this code.  And that isn't in

7     the final disclosures or any of SCO's interrogatories

8     responses provide that information.  And if Your Honor looks

9     at Tab 12 in the book, you will see in IBM's, its support of

10    IBM's motion for summary judgment, we laid out the fact that

11    SCO failed to provide this information.

12            And what we got in response, Your Honor, is in

13    effect, not a demonstration of where the information

14    supposedly was provided, but yet another statement that SCO

15    was not obligated to provide the information provided.

16            As shown at Tab 13, again, Your Honor, this Court

17    and Magistrate Judge Wells have been clear.  If it wasn't

18    described with specificity in the final disclosures, it's out

19    of the case.  And respectfully, no information has been

20    provided to describe the allegations of infringement.  And for

21    that reason alone, Your Honor, summary judgment should be

22    entered in favor of IBM.

23            Now we come to the third reason, I'm skipping the

24    second, third reason why SCO cannot prove that IBM has

25    infringed copyright owned by SCO, is that SCO transferred any

1    interest, any ownership interest it had in the allegedly

2    infringed code to the UnitedLinux, LLC.

3           Let me walk Your Honor through that.  As you'll

4    recall from the last year in May of 2002, SCO partnered with

5    other Linux distributors to form a joint venture called

6    UnitedLinux.  And it was formed to streamline, in effect

7    standardize Linux distributions.  Each member of that

8    UnitedLinux effort signed an agreement under which they

9    assigned their intellectual property rights in the joint

10   development product to the UnitedLinux, LLC.

11          And as we discussed in previous arguments, Your

12   Honor, SCO's SCO Linux 4 was the joint development product of

13   UnitedLinux of SCO.  And as illustrated at Tab 19, Your Honor,

14   of the book you'll see that the joint development contract

15   defines the UnitedLinux software to be, quote:

16          At any implementation of the UNIX

17      operating system developed and integrated under

18      any conditions of the JDC.

19          Both of the appendices of the JDC explain that to

20   mean an implementation based on a modified version of the

21   Linux kernel.  And as we illustrate at Tab 20 of the book,

22   Your Honor, SCO has admitted that its SCO Linux 4 was a

23   product developed pursuant to the JDC.  And in a press release

24   of 19 November 2002, SCO stated, quote:

25          SCO Linux 4.0 is based upon UnitedLinux 1.0,

1          the core standard base Linux operating system,

2          development in an industry initiative to

3          streamline Linux development, and so on.

4     As we show at Tab 21, Your Honor:  SCO Linux 4 powered by

5     UnitedLinux included the 326 lines that are at issue.

6          It follows, Your Honor, that the 326 lines at issue

7     were in the software development pursuant to the JDC.  And so

8     unless the 326 lines of code were excepted from assignment,

9     SCO has no interest or right in those and cannot pursue

10    against IBM or any other claim for copyright infringement.

11         SCO had pursuant to these agreements, Your Honor,

12    its list of excluded technologies, a specific list.  And as is

13    demonstrated at Tab 22, Your Honor, how their list, the

14    successor of the SCO, did not include the 326 lines of code

15    that are at issue here.  And as a result, that code is not

16    owned by SCO, and it may not pursue a claim against IBM again

17    or any other for infringement.

18         Point 2, Judge.  IBM has a license.  In fact, it

19    has multiple licenses to the 326 lines of code at issue, as we

20    illustrate at Tab 25 of our book.  Now, time won't allow

21    discussion of each of the five licenses that we've briefed,

22    and so with Your Honor's permission what I'd like to do is

23    focus on the two of the licenses that have the broadest

24    coverage, the two licenses that cover every single one of the

25    326 lines of codes that are at issue.  And that's, one, the

1    IBM strategic business agreement between Caldera and IBM; and

2    second, the GNU general public license of GPL.  And again, I

3    reiterate, all 326 lines of codes were included by SCO in

4    Linux products as distributed under these licenses.  So with

5    that predicate, let me take each of these licenses in turn,

6    Your Honor.

7              First, the strategic business agreement.  As shown

8    at Tab 26, that was an agreement between IBM and Caldera, and

9    it included a license that provided as follows:  Quote --

10   well, almost quote.  It provided that Caldera would grant IBM

11   a, quote:

12             Worldwide, perpetual, irrevocable, fully

13          paid-up license to prepare and have prepared

14          derivative works of free existing materials and to

15          use, have used, execute, reproduce, transmit, perform,

16          transfer, distribute and sublicense preexisting

17          materials for their derivative works and to grant

18          others rights under this subsection.

19             So what are preexisting materials, Your Honor, and

20   their derivatives?  If you turn to Tab 27, we follow the chain

21   from one definition to the next that demonstrates that these

22   326 lines of code were in what was licensed to IBM.

23             As you'll see, Your Honor, preexisting materials

24   are defined in relevant part as items contained within a

25   deliverable.  A deliverable is defined as, expressly

```
 1    identified as a deliverable in the statement of work.  The
 2    statement of work in term provides the deliverables include
 3    license works which are defined to include packaged license
 4    works, and packaged license works are further defined in
 5    Exhibit A, Your Honor, which describes the packaged license
 6    work as the OpenLinux products of SCO including eDesktop,
 7    eServer products.  The SCO OpenLinux product line was later
 8    named, Your Honor, SCO Linux 4 with release of that product.
 9    But was in any event a derivative of SCO OpenLinux products as
10    we show at Tab 28.
11              So SCO granted to IBM, Your Honor, a license to the
12    326 lines of codes at issue under the strategic business
13    agreements between IBM and SCO.  And again, every one of the
14    lines of code at issue is in there.
15              Let me drop a footnote, if I may, and I'll come
16    back to this.  This same agreement, Your Honor, provided IBM a
17    warranty with respect to these 326 lines of codes.  It says:
18              SCO represented that they do not infringe
19         any intellectual property rights of any third
20         party.
21              They do not infringe any intellectual property
22    rights of any third party.  And at the time, Your Honor, by
23    SCO's reasoning it was Santa Cruz -- again, we disagree with
24    that -- but it was Santa Cruz that owned the copyrights that
25    SCO now claims it can assert against IBM.
```

14

1              That brings me to the GPL.  In addition to granting

2    IBM a license under the SBA, Your Honor, IBM also has a

3    license from SCO to these 326 lines under the GPL.  The GPL in

4    its preamble and elsewhere provides that if you distribute

5    copies of a program licensed under the GPL, that you, quote,

6    must give your recipients all the rights that you have.

7              It further provides in its preamble that a license

8    gives you the legal permission as a recipient of code

9    distributed under it to copy, distribute and modify the

10    software.  And again, in Section One and Section Two in

11    Section Three, a license is given to the code distributed

12    under the GPL to do exactly that, which purportedly SCO

13    accuses IBM of doing, as I say precisely what IBM was supposed

14    to have done has never been disclosed, Your Honor.

15              There is no dispute, I respectfully submit, that

16    SCO's Linux products were distributed under the GPL.  And if

17    you take a look at Tab 32, you will see in SCO's own words the

18    following statement:

19              All of SCO's Linux distributions prior to and

20         after May 2003 were made under the GPL.

21              Therefore, IBM, Your Honor, has not one license,

22    but two licenses to the material issue without regard to the

23    three licenses that I'll leave to the briefing.

24              Third point, Your Honor.  SCO is estopped from

25    pursuing against IBM a claim for copyright infringement.  SCO

```
 1    has a long history, Your Honor, as a supporter of Linux, and
 2    it is that history that precludes precisely the conduct which
 3    indicates here, to sue for infringement relating to Linux.
 4    SCO was not only founded as a Linux company, Your Honor, it
 5    distributed and it profited from Linux including those lines
 6    of code for a very long time.
 7              And as we demonstrate at Tab 43, SCO's various
 8    Linux products again included exactly this code, and SCO
 9    employees have testified to that effect.  Ralf Flaxa, for
10    example, who was head of SCO's development in Europe,
11    testified, quote:
12              While employed at Caldera, I was aware that
13              the allegedly infringing material was present in
14              Linux.  I know so because of my familiarity with
15              Linux and also because Caldera is incorporated in
16              its Linux products.
17              Now as I said, Your Honor, the code was distributed
18    under the GPL.  In addition to that fact that that grants IBM
19    a license, it also has an affect with respect to estoppel,
20    because again, the license provides that that which one gives
21    to others under the GPL, one gives that person's rights in
22    that material to those other persons.
23              So SCO wasn't just family in the Linux company.
24    They didn't just distribute it under the GPL.  They produced
25    what they described as an award winning set of Linux products
```

1    that made it, in their words, a leader in the movement toward

2    the adoption of Linux.  And again, based on the exact code

3    that is at issue.  So if you take a look at Tab 46 of the

4    book, you will see a list of some of the awards that Caldera

5    won for its promotion and sponsorship of Linux.  Linux Show's

6    Best Distribution of the Millennium.  Linux Journal's Product

7    of the Year award and CNET Editor's Choice Award.

8           THE COURT:  Where does this illustration come from

9    in 46?  This cup with all this money?

10          MR. MARRIOTT:  Someone on our team made that up,

11   Your Honor.

12          As a leader in the Linux community, SCO played an

13   important role in the standardization of UNIX.  And putting

14   aside UnitedLinux, which I'll come back to, SCO was the first

15   signatory of a document proposing the so-called Linux

16   standards base.  Santa Cruz also, SCO's purported successor,

17   was in support of that.  And the Linux standards base was an

18   attempt to define the common core of components that represent

19   the Linux operating system.

20          And the LSB at issue here, Your Honor, required

21   inclusion in Linux of the code that we're talking about.  SCO

22   sponsored the standard.  The standard required the code.  And

23   as SCO former CEO, Your Honor, Ransom Love, has testified,

24   quote:

25          To facilitate the porting of Linux to

1           application written primarily for UNIX-based

2           operating systems, Caldera, Inc., worked to make

3           Linux products compliant with various UNIX

4           standards, including the X/Open brand for UNIX 95,

5           and the POSIX.1 specification.

6                So again the allegedly infringing is there in part

7    because of the SCO sponsored the standardization of Linux.

8                Now, in fact, Your Honor, SCO was the only notable

9    support of one of the items as to which they accused IBM of

10   infringing.  STREAMS material, which, in fact, isn't even in

11   the kernel.  But SCO required the use of this material as

12   support for its Netware for Linux products.  The Linux

13   community opposed the inclusion of this material in the

14   kernel.  But despite that opposition, SCO collaborated with

15   others to have it included, made it available for download

16   from its website.  And now that very same material that it

17   accuses IBM and others of infringing is there because in

18   effect SCO put it there, Your Honor.

19               Santa Cruz, SCO's purported predecessor, hosted and

20   Caldera participated in a 1997 meeting to perform a group

21   called 86Open, which we show at Tab 51.  Mr. Torvalds proposed

22   then creating a new application format to replace the existing

23   ELF format that was implemented in Linux.

24               Santa Cruz opposed the proposal, however, and

25   insisted instead on a Linux ELF so the programs could more

1     easily run on the SCO UNIX.  The ELF standard was adopted at

2     least in part because of SCO's effort.  And it is that precise

3     standard which SCO now contends represents an act of

4     infringement in the Linux kernel.

5              In 1999, Santa Cruz commissioned a study to compare

6     Linux to UNIX.  And according to the chief SCO engineer, that

7     study found certain similarities between UNIX and Linux.  But

8     it found that the similarities were understandable and

9     acceptable.  Management of the current SCO, however, has

10    publicly taken the position that that memo showed there was

11    something wrong with Linux.  And despite their view, however,

12    that something was wrong with Linux as indicated by that memo,

13    both Santa Cruz, Your Honor, and SCO continued over the course

14    of the following number of years supporting and promoting

15    Linux despite the supposed concern convinced by this

16    memorandum.  As SCO's former CEO put it in 2001 when Caldera

17    acquired certain UNIX assets, quote:

18              We did not care whether UNIX source code had

19         been included in Linux improperly, and we did not

20         at any point disclose that there might be any

21         problem with Linux.

22              At the very same time, Your Honor, that Santa Cruz

23    was conducting this analysis with Mr. Swartz, Caldera was

24    approaching IBM about entering into this strategic business

25    agreement that I discussed with Your Honor a few moment ago.

1    And that courtship resulted in, culminated in the execution of

2    that strategic business plan.  I explained previously how that

3    agreement resulted in a license for IBM.

4         But independent of the license, Your Honor, and

5    you'll recall I said I'd come back to this, there was a

6    warranty and a representation made in that strategic business

7    agreement that there was no infringing code of any third party

8    in the Linux kernel.  That representation was made by Caldera,

9    by SCO's predecessor.  It promised IBM, Your Honor, that there

10   was no supposed infringement in there, and it also promised to

11   hold IBM harmless and indemnify it against any third party

12   intellectual property claims.

13        Now, rather than make a public issue of this, Your

14   Honor, raises concerns, commence litigation, SCO undertook,

15   instead, following that effort to initiate and to participate

16   in and to champion the UnitedLinux effort.  And Caldera and

17   SCO were not simply participants in the UnitedLinux effort,

18   Your Honor, they were champions of it.  Ransom Love, the

19   former CEO, has been described as the champion of the project,

20   And Ralf Flaxa, a former Caldera employee, was described as

21   coordinating the creation of this united standardized version

22   of Linux.  And again, everyone in aligned code is in their

23   UnitedLinux product.

24        Courts, Your Honor, have estopped parties from

25   asserting claims of discriminate based on showings far less

1    than that which is here.  And respectfully, Your Honor, we

2    would submit that the Court should exercise its powers to

3    enter summary judgment in favor of IBM on grounds of estoppel.

4          That brings me to my next point, which is that SCO

5    cannot establish, Your Honor, that there is substantial

6    similarity between Linux and UNIX.  There are two reasons here

7    why summary judgment should be entered in favor of IBM.  The

8    first is that none of the supposedly infringed material, Your

9    Honor, there were 320 lines of UNIX code supposedly infringed

10   by these 326, and none of those 320 lines are protective by

11   copyright.  The second point, Your Honor, is even if they

12   were, SCO couldn't just demonstrate that those lines of code

13   result in substantial similarity as between Linux and UNIX.

14         Now let me briefly just take each of those points,

15   Your Honor.  As to protectability, in IBM's papers we laid out

16   a variety of reasons as to why these 320 lines are not

17   protected.  And the law is pretty clear that the material is

18   not protectable by copyright if it's dictated by

19   externalities, if it's unoriginal or if it's mere merger

20   material.  As we laid out in our papers, Your Honor, those 320

21   lines of code are dictated by externalities, they are

22   unoriginal and they are merger material.

23         And the notable point to make here, Your Honor,

24   with respect to externalities, IBM put forward evidence that

25   five separate externalities dictate that 320 lines of code.

1    SCO's experts failed to respond, Your Honor, in any meaningful

2    way to two of them.  And we respectfully submit that for that

3    reason alone, those two externalities should be deemed

4    admitted as against SCO.  That's programming practice and

5    industry standard.

6              As to originality, we likewise offer evidence that

7    the code at issue lacks the requisite originality.  And SCO

8    disagrees with that, Your Honor, and has offered testimony of

9    their expert Mr. Cargill.  But the methodology on which

10   Mr. Cargill relied to conclude that the material at issue is

11   original is, we respectfully believe, wrong as a matter of

12   law.

13             For example, Mr. Cargill stated, Your Honor, that

14   the choices used to list names in alphabetical order and to

15   assign numbers in a sequential order, evidences reference to

16   the creativity to satisfy his standard to determine whether

17   that matter is original within the meaning of the copyright

18   law.  And that is wrong for the reasons set out in our papers

19   and the reasons set out in the Supreme Court decision in Feist

20   and in 10th Circuit decision in Mitel.

21             And looking, Your Honor, at the code issue here, I

22   would submit that there is no cognizable originality in this.

23   Calling in error occurs when a person seeks to access a file

24   for which they have no permission, EPERM, evinces no

25   originality, anymore than saying that the 10th Circuit Court

1   of Appeals should be referred to at 10 Cir reflects any

2   originality.

3           Finally, Your Honor, as to protectability, IBM put

4   forward evidence that the material at issue is merger

5   material.  SCO failings to offer any meaningful response to

6   that, Your Honor.  And again even if it had, even if that

7   which is offered by SCO's expert Mr. Cargill were sufficient

8   to create a fact question, and we do not believe it is, but

9   even if it were, Your Honor, that information is not

10  information that was properly disclosed by SCO as it was

11  required to be disclosed pursuant to Court's order.

12          And again, just looking at the material issue, Your

13  Honor, there are only so many ways to say that a computer

14  system is Linux, and it's this version, and it's that release.

15  And that's what some of the structured declarations do here,

16  Your Honor.  There's only so many ways to put it, just like

17  there are only so many ways to organize the information in a

18  case name.  Case, reporter, court and date.

19          Now, the second part of this, Your Honor, is that

20  even if this material was protectable, and we submit it's not,

21  SCO couldn't and we submit has not shown substantial

22  similarity.  Substantial similarity is not all about quantity

23  to be sure.  But quantity is an important nevertheless part of

24  that as reflected by the 11th Circuit's decision in the Mitel

25  case.  And 320 lines, Your Honor, of the millions of lines of

23

1       code at issue here are not of significance.

2                   And in any event, when you look to the qualitative

3       aspect of this code, there is no more significance to the

4       codes than there is when you look at it from a quantitative

5       perspective.  We are not talking, Your Honor, about 320

6       contiguous lines of executable code.  We are talking about a

7       scattered collection of code.  None of the header files are

8       executable, Your Honor.  They are simply interface that

9       provide information like if there's an error, let's call it

10      EPERM and assign a number 1 do it.  And that we respectfully

11      submit is not protectable by copyright.

12                  Finally, Your Honor, with respect to misuse, SCO

13      has misused the copyrights at issue, and as a result of that

14      misuse may not enforce them.  SCO doesn't dispute that a

15      copyright may not be enforced, Your Honor, if it has been

16      misused.  We think the facts here establish that.  SCO claims

17      control of more than a million lines of code supposedly dumped

18      into Linux kernel.  By contrast, there's 326 lines properly

19      described in its final disclosures.  And among the lines of

20      code claimed by SCO as infringing, Your Honor, are files

21      plainly and indisputably owned by IBM, like JFS, files plainly

22      and indisputably owned by BSD and information which SCO's own

23      experts concede they have no claims of copyright infringement.

24                  For those reasons, Your Honor, respectfully summary

25      judgment should be entered in favor of IBM.  Thank you.

                                                                    24

```
1              THE COURT:  Thank you, Mr. Marriott.

2              Mr. Singer?

3              MR. SINGER:  Your Honor if I might approach with

4    some materials for the Court.

5              THE COURT:  Sure.

6              MR. SINGER:  And for counsel, as well.

7              Your Honor, if it may please the Court, this is a

8    claim by one of the world's biggest enforcers of intellectual

9    properties rights, IBM, which publicly boasts of annually

10   earning over a billion dollars from enforcing its intellectual

11   property portfolio to seek to extend its fight with SCO by

12   seeking a judicial declaration that SCO conversely has no

13   rights.

14             Now, as we listen to IBM's position and read their

15   papers, it seems to be this.  It seeks through its

16   counterclaim to enforce and determine first that SCO has no

17   copyrights, even though Mr. Marriott didn't want to argue that

18   point.  Yet, that the copyrights it does not own were assigned

19   to a joint venture.

20             IBM seeks a declaration that UNIX copyrights don't

21   cover any protectable expression and that they're basically

22   worthless with respect to the issues as they relate to Linux.

23   While at the same time, they are so important that they led to

24   a series of no fewer than four licenses which were negotiated

25   and apparently IBM claims reliance on the use of this
```

1    material.

2          And finally, IBM says that despite having obtained

3    licenses, it could properly ignore the language and the

4    limitations in those agreements and just rely instead on the

5    fact that Caldera was involved in Linux activities, and so

6    therefore anything IBM wanted to do was okay.

7          We submit just to state that contradictory refusing

8    sets of arguments points out the fact that this is not

9    appropriate for summary judgment.

10         Well, let's take a look at what IBM's Tenth

11   Counterclaim really seeks.  And I would ask Your Honor to turn

12   to the small book, which are a set of our exhibits to Tab 1.

13   And we ask, what does IBM's Tenth Counterclaim really seek?

14   And I think that leads to a comparison of what IBM said when

15   they filed their Tenth counterclaim back in 2004 and how they

16   characterize it now.

17         If you look at that Tenth Counterclaim,

18   Paragraph 171 particular, IBM said that it did not believe

19   that its activities relating to Linux, not talking

20   specifically about the Linux kernel, but it's activities

21   relating to Linux including any use, reproduction and

22   improvement of Linux do not infringe, induce infringement or

23   continue to infringement.

24         Now today IBM says, we're just seeking a

25   declaration from this Court that the Linux kernel, the core of

1        the operating system, does not infringe copyrights owned by

2        SCO.  Why the difference?  The difference is so that IBM can

3        stand up and seek to argue to the Court that only 326 lines of

4        code are at issue.  By defining the Linux kernel so narrowly,

5        by relying on solution of items from our December disclosures,

6        from assuming that everything in our expert reports concerning

7        non-literal copying will be struck and upheld by this Court,

8        by assuming that technologies that involve interaction between

9        that kernel and the user space around it, such as STREAMS,

10       such as ELF are out of case, they define it as 326 lines.

11              THE COURT:  Let me ask you a question about that.

12       Hypothetically, assume I don't reconsider my November 29th

13       order and hypothetically assume that I uphold Judge Wells'

14       November 30 order that was written on December 21st, what

15       affect does that have on this motion?

16              MR. SINGER:  Your Honor, everything in this book is

17       still indicates --

18              THE COURT:  This one.

19              MR. SINGER:  The big book -- is still indicates

20       assuming both of those orders were sustained.  The code which

21       is in this big book shows precisely with copying in red and

22       lines tied to the items still in the case indisputably not

23       struck by Judge Wells, the copy that occurred between Linux

24       and our protected expression.  They are in red.  There are

25       lines going from the left-hand to the right-hand side of the

1    page.  They are divided into four categories, and there are

2    thousands and thousands of lines.

3         We have put them in parallel in various places in

4    the book, smaller book, but this shows why IBM is seeking to

5    narrow the declaration it seeks from the Linux activities in

6    general and its support of Linux and its copying of Linux

7    because these things go along with Linux.  Linux doesn't work

8    without STREAMS.  It doesn't work without ELF.  It won't work

9    without these header files.

10        By seeking to redefine their request for

11   declaratory relief they're able to say only 326 lines are at

12   issue, when in reality everything in this book, even assuming

13   every order by Judge Wells is upheld, everything in this book

14   is still in the case and it is still subject to this claim.

15        And we would submit it is meaningless, and I don't

16   know why IBM would seek a declaration only on 326 lines when

17   it doesn't eliminate the fear and uncertainty and doubt they

18   talk about with respect to all the things around the kernel

19   that is protected copyright and expression.

20        Your Honor, with respect to the burden of proof,

21   this is IBM's action for declaratory judgment.  And under

22   10th Circuit law, IBM has the burden of proof.  If one turns

23   to Tab 2, you see the Wuv's case, which is a District of

24   Colorado district court decision, citing 10th Circuit case in

25   Steiner Sales making it plain in this circuit, the plaintiff

1    in declaratory action carries the burden of proving its

2    claims.

3            And you'll notice in the book which you received

4    from IBM, they cite cases in the District of Maryland, the

5    Northern District of California and the Eastern District of

6    Pennsylvania, none, of course, which is in the 10th Circuit.

7            Now, I'd like to turn to the issue that

8    Mr. Marriott did not address.  I won't spend a lot of time on

9    it, but they put a lot of time in their briefs on it, you've

10   heard it about every opportunity, and it's a central issue in

11   this case, and that's the issue of who owns the UNIX

12   copyrights.

13           It is our contention, Your Honor, that the

14   documents make clear that those were transferred as part of

15   the sales of UNIX business from Novell to Santa Cruz in what

16   we know as the asset purchase agreement.  The agreement as

17   Your Honor has heard clearly indicated the intent was to

18   transfer that entire business.  There was an assets schedule

19   of assets to be transferred, which specifically said that all

20   rights and ownership of UNIX and UnixWare including all

21   versions, all technical installation, the source code, the

22   documentation, all of sellers' rights under software

23   development contracts, all those contracts, all of that is

24   transferred.

25           The only reason we submit there could be any

1    question at all was because of the way in which an item in the

2    excluded assets schedule was originally worded.  It was worded

3    in Item 5A of that schedule as excluding the copyrights, all

4    copyrights and trademarks.  That was in error.  It didn't make

5    any sense that you transfer the entire business of UNIX, you

6    exclude the copyrights.  And that was clarified in Amendment

7    Number 2, which made clear that what Novell retained were

8    copyrights and trademarks except for the copyrights and

9    trademarks owned by Novell as of the date of the agreement

10   required for SCO to exercise its rights with respect to the

11   acquisition of UNIX and UnixWare technologies.

12           And I submit, Your Honor, it cannot be any real

13   question you need the UNIX and UnixWare copyrights to run a

14   UNIX and UnixWare business, the right to extend intellectual

15   property to others, to enforce those intellectual property

16   rights against infringements.

17           This amendment clarified what was transferred as of

18   the time of the closing because then with this amendment

19   there's no confusion as to what is covered on the schedule of

20   transferred assets.  It's all right, title and interest.

21           Now, we don't even think it's necessary to look to

22   extrinsic evidence, and, of course, Mr. Marriott doesn't want

23   to argue any of this.  And I have to say I probably wouldn't

24   want to argue a motion where witnesses on both sides agree

25   that it was the intent to transfer the copyrights to

1    Santa Cruz.

2            And this is set forth in our book.  It is included

3    in summary form at Tab 11, and behind that, more lengthier

4    quotes from each of these witness who have testified under

5    oath both from Novell, the lead Novell negotiator, the senior

6    business executive, the senior engineer as well as Santa Cruz

7    that the copyrights were intended to be transferred.

8            Now, there are other extrinsic evidence of conduct

9    set forth in our book that support that.  There is simply no

10   question we think here that there was a valid transfer, and

11   those rights are owned by SCO.  And, of course, it is the

12   Novell trial the Court has set that will determine the

13   ownership of those copyrights to the extent that Novell

14   continues to assert that they did not transfer them despite

15   the expressed intent of parties on both sides of that

16   transaction.

17           Now, IBM contends that these copyrights that we did

18   not own we nevertheless managed to assign to a joint venture

19   called UnitedLinux.  And before turning to the merits of that

20   contention, I'd like to say a few words about the unusual

21   strategic posture of it.  Novell, as the Court will recall,

22   moved last year to stay parts of the case involving Novell

23   because their wholly-owned subsidiary SuSe Linux had initiated

24   an arbitration in Europe against SCO where this issue is

25   precisely what is to be determined under the arbitration.

1      What were the rights under the UnitedLinux agreement?

2              Now IBM with whom Novell has a joint offense

3      agreement concerning these two cases comes in here and says,

4      Judge, you should decide those issues as a matter of summary

5      judgment in this case.

6              We don't think that is appropriate.  And we think

7      that if this is an issue which is going to be decided and the

8      Court is going to look to it, decide it in a forum where

9      parties directly involved are going to resolve these

10     differences, as Novell urged this Court last year, and the

11     Court agreed upon.

12             Now, it is clear that this is not a matter of

13     summary judgment, and we think it is equally clear that the

14     UnitedLinux agreement did not give up our intellectual

15     property rights.

16             Your Honor, if you turn to Tab 15 we see that the

17     key assignment of intellectual property rights was the

18     intellectual property to be development pursuant to the JDC.

19     You form a joint venture, and you say that we assign the

20     rights which are going to come out of the work done by the

21     joint venture.  There was not an intention by participating in

22     that to give up rights either to UNIX or to anything that

23     might be sitting around in Linux as it went into that joint

24     venture.

25             The term software is defined as implementation of

1    the Linux system to be developed through the joint venture.

2    There is evidence in the record that the copyright in UNIX

3    material was not developed pursuant to the joint venture.

4    And, in fact, as a factual matter, during the joint venture,

5    SCO was asked to contribute UNIX technology, and SCO refused.

6    And that's Mr. Nagle's declaration, which is SCO's

7    Exhibit 233.

8              Now, the preexisting material which Mr. Marriott

9    refers to, which is listed on Exhibit C, and we have a copy of

10   that behind our arguments slide at Tab 16, that is the only

11   material which UnitedLinux of existing material from Caldera

12   was authorized to use.  And it did not include the System V

13   UNIX code.  Mr. Nagle says that in his declaration.  Even

14   Mr. Love, who is a witness for IBM, agrees with that.  And

15   therefore, it is not part of what either expressly in

16   Exhibit C UnitedLinux had a right to use, nor is the issue

17   here over material that was created in a joint venture.

18             Now, Your Honor, this is not the exact sequence in

19   which Mr. Marriott dealt with these points, but I'd like to

20   turn to the next issue, which is the question of whether we

21   have put forth enough evidence to defeat summary judgment on

22   the issue of infringement, that IBM by distributing and

23   copying and inducing others to distribute and copy Linux have

24   infringed our copyrights.

25             The very first argument that IBM makes in Tab 18 of

1    our binder relates to this, is that we cannot prove

2    unauthorized copying.  We didn't have a line, I suppose, in

3    the December disclosures that says, IBM infringes our

4    copyrights by copying and reproducing Linux.  Now, that's what

5    they say in their brief, and that's what they say in their

6    papers.  But listen to what IBM's counsel said to Your Honor

7    two years ago, more than two years ago in September of 2004

8    when they were resisting discovery to the issue of their Linux

9    activities.  They said, quote:

10            It is not disputed that we copied Linux and we

11       encouraged others to copy Linux.  That's not in

12       dispute.  We admit that we copied.  No discovery

13       with respect to IBM's Linux activities is

14       required.

15            And, of course, the record has Mr. Frye from IBM

16    admitting the same thing.  That constitutes infringement.  And

17    as the cases we set forth on the very next page at Tab 18

18    indicate, if Linux infringes UNIX, their activity in copying

19    Linux is infringement.  If Linux infringes our UNIX

20    copyrights, their encouragement of third party copying and

21    reproduction also infringement.  So there's no issue here.

22            Now, the question is whether Linux is copied from

23    UNIX in a way that violates our protectable rights.  And that

24    is inherently a factual matter for fact evidence and expert

25    testimony.  The 10th Circuit recognized that.  We reproduced

1    this at Tab 19 when they said:

2            Whether the defendant copied portions

3        of the plaintiff's program is a factual matter.

4            And it's the Gates Rubber case.

5            There are a lot of facts that indicate this.  I

6    mean, if one goes just to IBM's own documentary admissions, a

7    couple of which we've put on this blow-up of Exhibit 276 where

8    IBM internally says, Linux is derived from UNIX.  UNIX was a

9    pre-write of Linux.  It is proved by this book, Your Honor,

10   that these thousands of similarities did not occur by

11   coincidence.  This was copying and certainly at a minimum is a

12   factual matter.

13           We have put in both in that book and here in four

14   areas, system calls, ELF-related materials, STREAMS-related

15   material and memory allocation material where there is no

16   question, even under Judge Wells' order that those are

17   indicates and we have appropriate claims.

18           Now, we do not agree with Judge Wells' order which

19   limited our copyright case in that matter.  At Tab 26, we

20   point out the fact that in addition to copying literal code,

21   code in that book, there was a copying of the non-literal

22   protectable elements.  The structure, the algorithms of UNIX.

23   That didn't mean we contend to be in the December disclosures

24   as specific material misused.  If we had said they copied the

25   Linux structure, IBM would move to strike it on the grounds

1       that we didn't cite line, version and code.

2               It is indisputably within the May 2005 expert

3       report set forth which IBM ignores in its motion and IBM's

4       motion is predicated on us not having any rights to talk about

5       non-literal copying.  Non-literal copying is recognized by the

6       10th Circuit in Gates and by every other case as a relevant

7       inquiry where experts have to go through an abstraction

8       process and determine what are the protectable elements, go

9       through that and filter it of unprotectable material and then

10      compare it.

11              IBM experts in IBM's motion have done none of that

12      with respect to the non-literal issues.  Just this chart which

13      we produced shows the structure of a system calls between

14      Linux 2.4 and UNIX System V Release 4 their similarity.  That

15      structure we contend is protected.  We contend that the

16      structure just as the STREAMS module, which is put forth at

17      Tab 26, as well, is protected.  Those should be issues in this

18      case, Your Honor.  Those are the issues we contend in this

19      case.

20              Your Honor, I would like to say a few words about

21      whether this is protectable expression.  The Gates Rubber case

22      was applied by our expert Tom Cargill.  At Tab 28, we have an

23      excerpt of Mr. Cargill's report, which recites the applicable

24      10th Circuit law, explains how he applied it going through

25      these three steps.  He specifically looked at whether or not

1    the expression being used was dictated by external standards

2    which includes the filtration issue that Mr. Marriott talks

3    about.  It was his opinion that there was infringement.

4            You know, IBM knew we were going to rely on

5    Mr. Cargill.  They wait until their reply brief on this motion

6    to take shots at Mr. Cargill saying he's not admissible, that

7    he isn't using the right legal standard, and et cetera.  If

8    they continue to make that argument seriously and the way to

9    do it and the time to do it we submit is a motion in limine or

10   Daubert motion later in the case.  If it is not on grounds

11   coming out of a reply brief to all of a sudden saying to the

12   Court without even giving any response to IBM should determine

13   that Professor Cargill did not apply the right standard, and

14   that when he says this is protectable expression, he somehow

15   applied that test wrongly.

16           I'm not going to go through each of the tabs where

17   we deal with the issue of whether this is Scenes a Faire

18   material, whether or not there was enough originality in the

19   expression to be protectable and whether it merged with

20   abstract ideas.  On each of those points, Mr. Cargill gives

21   examples, and he indicates his opinion.

22           It is clear that you have a strong amount of

23   protectable expression in software code, and we include, in

24   fact, in these papers excerpts from an amicus brief that IBM

25   filed in the Gates Rubber case saying as much, which we think

1    was consistent with Gates Rubber.  It said that source code is

2    generally protectable.

3           If one turns to Tab 33, Dr. Cargill's report is

4    quoted there where he gives an example.  First he says

5    generally there are numerous ways to express the ideas

6    embodied in the copied material.  This is second page of

7    Tab 33.  And numerous ways to write code that performs the

8    same task of copied material.

9           He gives an example of a fork being a system call,

10   which could refer to a diverging path.  It relays a certain

11   creativity on behalf of the programmers.  The system called

12   nice is another example.

13          If you turn to the next page you see IBM's amicus

14   brief being quoted as well as Gates Rubber decision.  In that

15   brief, IBM said it is not appropriate to conclude that a

16   program's function -- which is really what Mr. Marriott spent

17   a lot of time talking to you about, the function of a program.

18   It is not appropriate to conclude that a program's function

19   and its expression of that function are the same.

20          At bottom, Your Honor, these issues will have to be

21   decided at trial including the issue of substantial

22   similarity.  You know, it's interesting that even if only

23   326 lines of code were at issue, it would still be a factual

24   issue requiring trial on it.

25          If Your Honor turns to Tab 35.

1          We have at that tab the Dun & Bradstreet case from

2     the Third Circuit, 27 lines copied out of 525,000 were held

3     they could be substantial.

4          The US Supreme Court on the next page in the Harper

5     & Row case said that 300 to 400 words cannot be deemed

6     insubstantial.  And they reversed the Second Circuit in that

7     case for so holding.

8          The Dun and Bradstreet case on the next page is

9     cited to point out that the real importance is determined

10    qualitatively, not quantitatively.  And that the information,

11    while it was only a few lines far less than what we're talking

12    about in this book, was highly critical.  And there's no

13    dispute on this record that if you took out of Linux the lines

14    at issue, even just those 326 lines, let alone ELF and STREAMS

15    and everything else that is at issue here Linux simply would

16    not work.

17         At bottom, as the 10th Circuit said in Gates, the

18    issue of substantial similarity is a classic jury question.

19    It's not appropriate for summary judgment.

20         Your Honor, I would next like to turn to the issue

21    of a license.  And I'd like to begin by observing the

22    interesting posture in which the issue of a license comes

23    before the Court, because IBM's position today is that this

24    case could be resolved simply by looking at the SBA, which IBM

25    obviously was aware of as a party to it in 2003, or the GPL

1    public license, which Caldera they claim gave up its rights

2    in.

3              And if that is true, Your Honor, where has IBM been

4    with that argument since March of 2003 when this case was

5    filed?  If this case could have been resolved with respect to

6    these issues simply by coming in here with a copy of the

7    general public license or the SBA, why didn't they do that

8    back in 2003?  If that is true, why didn't they do it in 2004

9    when they made a summary judgment motion to you on this

10   precise counterclaim and never raised either of those issues?

11             We submit the reason is because these licenses do

12   not give IBM the rights that today they are asking you to find

13   as a matter of law.

14             Now, I'd like to say a few words about the SBA

15   license, the first that Mr. Marriott relies upon.  Tab 37 in

16   our binder and a couple tabs after that we discuss this

17   agreement.  This is an agreement when the Court reviews it is

18   clear it is an agreement to allow distribution of certain

19   products that are then specified in an Exhibit A to a standard

20   of work.  And that standard of work makes it clear that IBM is

21   simply a conduit to end users for the distribution of certain

22   Caldera products and is not being given any intellectual

23   property rights to UNIX software, let alone to give away that

24   UNIX software to others.

25             If one turns to the next page behind Tab 37, we

1    quote Section 8.3.  Your Honor has been directed to part of

2    Section 8.3 when IBM spoke.  It was their Tab 26.  You could

3    compare Tab 26 which reproduces in part Section 8.3 as opposed

4    to the entire section which in red it includes the material

5    they do not quote.  And that material makes clear that:

6            The providing party, which was the Caldera,

7        Inc., will not include any preexisting materials

8        in any deliverable unless they are listed in the

9        relevant standard of work.

10           And when you turn to the standard of work here,

11   nothing is listed here which gives them the right to

12   distribute, to modify UNIX intellectual property or gives them

13   rights to open source that through Linux or anything else.

14   That document which, is IBM 467 says:

15           IBM and its authorized agents shall be a

16       conduit through which Caldera sells, offers to sell

17       packaged license work and preload license work.

18           And the only thing they're authorized to do is to

19   preload, install and reproduce the preload license work on two

20   particular platforms which are identified in this scope of

21   work, and the master copies are to be used solely for purposes

22   consistent with this standard of work.  That is Section 3.0.

23           So at bottom, what this means is if SCO was coming

24   in here and suing IBM for distributing Caldera products that

25   were distributed under this standard of work, they would have

1    an offense.  They could distribute that.  But what this is not

2    in any form of intellectual property license, any release of

3    our rights, anything which gives them or anyone else the right

4    to take UNIX intellectual property and distribute it to the

5    world.

6               Your Honor, the other license, the GPL license,

7    also fully known from 2003, never raised then, never raised in

8    2004.  Today they suggest that all of IBM's Linux activity is

9    insulated under the GPL.  The GPL, we submit, requires a

10   copyright holder to make a knowing, voluntary express

11   surrender of its copyright rights to its software and then to

12   effectuate that decision with a particular notice spelled out

13   in the general public license, which did not happen here.

14              We have that at Tab 38.  Section 0.  And

15   Mr. Normand in the argument that deals with the GPL which Your

16   Honor will hear right after this will have more to say about

17   this, but I'd like to say a few things about the GPL.

18   Section 0 says that:

19              The GPL only applies to work if it bears

20              a notice placed by the copyright holder saying

21              that it may be distributed under the terms of the GPL.

22              SCO has never placed any language on either

23   UnitedLinux product or SCO Linux Server 4.0 indicating that it

24   was granting any license or rights under GPL or any open

25   source license.

                                                                    42

```
 1              That's both in the record factually through
 2     Mr. Nagle.  And while IBM makes generalized assertions that we
 3     distributed under the GPL, what, in fact, the record shows is
 4     you have products from three divisions.  Two of them were
 5     Linux from UnitedLinux that were just passed off.  Whatever
 6     license they came with came from them.  And then there was a
 7     disk of proprietary material.  There was no SCO license under
 8     the GPL Section 0 that was required.  And, in fact, you will
 9     see during Mr. Normand's argument that IBM knows how that
10     license looks for their material that they decided in
11     knowingly and willingly to distribute under open source, you
12     have that copyright authorization notice required under 0.
13     It's set forth in the GPL how to do it.  We reproduced those
14     directions under Tab 38.  And we've also put in IBM's copy of
15     that.
16              Now, in addition, there is no question, and we put
17     this forth at Tab 39, that Linux has no copyright attribution
18     to SCO or to Santa Cruz in the materials distributed under the
19     GPL.  That in itself takes it outside that protection.
20              And I would note in connection with this that even
21     Ransom Love admits that UNIX was not an open source by
22     Caldera.  Now, Mr. Love is someone who IBM submitted a
23     declaration from and we submitted a declaration from.  We
24     disagree strongly with a lot of things Mr. Love said in that
25     declaration.  We also pointed out to the Court what Mr. Love
```

1     did not disclose, and that is he's a paid IBM consultant.

2           But even Mr. Love in his declaration, and I have

3     this excerpted at the last page on Tab 39, even Mr. Love

4     acknowledged that while Caldera thought about open sourcing

5     UNIX assets, it never did know.  And it certainly didn't do so

6     under the GPL.  And I submit this is why for the last three

7     years of this litigation IBM hasn't run into court and say,

8     GPL resolved these issues.

9           Your Honor, I would also not go into the details of

10    the Spec 1170 license that they argue in their brief, other

11    than to say it was not established it even covers the material

12    here and was only in the material that create -- of license

13    that created specification, not a license to use that in a

14    commercial product that would compete with UNIX.

15          In addition, there is the TIS issue which is raised

16    in their briefs which Mr. Marriott left to the briefs.  I just

17    want to point out that with respect to that which relates to

18    the ELF, even Mr. Harold, who is an IBM employee, recognized

19    and did not have the authority to that ELF code on the basis

20    of that license.  And that appears at Tab 43 where Mr. Harold

21    in 1999 indicated that SCO was the only source supplier, that

22    they wanted to deal with it for Linux, but they couldn't

23    because of SCO's copyrights.

24          And, in fact, in addition, Mr. Cargill, and this is

25    excerpted at Tab 44, shows that the Linux programmers went

1   beyond using what was ever in this specification.  They went

2   so far as to copy the actual code from the System V Release 4,

3   and that wasn't authorized no matter how long it looks at the

4   TIS license.

5           Your Honor, next I'd like to turn to the equitable

6   defenses which IBM asserts are a basis for summary judgment

7   and declaratory relief.  I submit to you that IBM is probably

8   the last party rather than the first party that should come

9   into this Court and seek a determination of equitable estoppel

10  which depends on the concealment of true facts from their

11  knowledge and their blind reliance on false facts that SCO or

12  Caldera or others are supposedly making or implying to them by

13  their actions as to which they have no awareness of the

14  truths.  Perhaps equitable estoppel is an argument that a user

15  out on the street might make, but to suggest that IBM of all

16  parties doesn't have an awareness of this truth.

17          And the premise of this argument has to be we own

18  the copyrights, that there is protectable expression in those

19  copyrights that has been copied in the Linux, that they are

20  infringing, that they don't have an express license, but

21  nonetheless, they should have been allowed to do whatever they

22  would and be immune from liability because they were watching

23  Caldera and SCO distribute Linux.

24          And we submit that that totally perverts the idea

25  of equitable estoppel and doesn't come close to the standard

1    required by law.  And I note that IBM did not even mention

2    equitable estoppel in its Tenth counterclaim.  You can read

3    that Tenth counterclaim.  Didn't talk about it.  It also

4    wasn't raised in a motion for summary judgment that was raised

5    before Your Honor back in May of 2004.

6            And I submit that the reasons are why equitable

7    estoppel is seldom appropriate.  At Tab 45, the Court is aware

8    I think that equitable estoppel presents issues of facts and

9    is one only a fact finder can draw.  We believe that that's

10   clear from those authorities, as well as the Deseret case.

11   Under New York law, we turn to the last tab there, estoppel,

12   we think this is true, generally under the common law requires

13   concealment of material facts, the lack of knowledge by the

14   party claiming estoppel, none of which IBM has come close to

15   establish.

16           Moreover, and this is a point in our briefs, and

17   it's the last point we have at Tab 45, equitable estoppel

18   can't justify a broad declaration that our rights are

19   unenforceable or that what other people have done is okay.  It

20   is a personal defense.  And I think there's probably maybe one

21   or two exceptions in patent cases where courts have rendered

22   declaratory judgments based on equitable estoppel.  But

23   essentially that's an offense to be viewed in light of actions

24   alleged of infringement at the time.

25           Now, that's the law.  The facts here are such that

1    IBM is just jumbling together in their submission actions

2    taken by Caldera, actions taken by SCO and leaving out an

3    important issue, which is who owned the copyrights in question

4    at what time?

5             This is a chart -- Your Honor will recall this

6    chart from last week, because it is the same equitable

7    estoppel argument.  The copyrights are owned by Santa Cruz all

8    during this period of time.  Santa Cruz is not in the Linux

9    business.  They argue, well, there is a few people who

10   attended an X/OPEN conference.  Those people did so as

11   individuals.  Each of those sets forth in their submission of

12   facts is disputed in our response.

13            Santa Cruz which owned the copyrights was not in

14   the Linux business during the time of 2001 when IBM decided to

15   embrace Linux, to form the Linux technology center, to

16   encourage others to use Linux, to copy Linux, to contribute

17   technology to Linux, that could not possibly then be based on

18   reliance of any action by the copyright owner.

19            What Caldera, a company that did own the copyrights

20   during this time, was doing with respect to Linux cannot be

21   any more of a basis for IBM to suggest that the copyright

22   owner doesn't care.  But if I distributed Linux or you

23   distributed Linux and IBM said they saw us distributing Linux

24   so it must have been okay,

25            With respect to actions taken after the copyrights

1     that were transferred in 2001 to SCO, the evidence is clear

2     that at that time several things happened.  First of all, the

3     business of SCO because of Linux being out there changed

4     dramatically.  The UNIX products went south, and you saw that

5     chart back in the contract argument last week.  At Tab 49, we

6     point out case law to indicate that even if you had nothing

7     more here a plaintiff's decision not to sue until infringement

8     action become a competitive threat cannot give rise to an

9     equitable estoppel defense.

10          Suit was brought in 2003.  IBM points to the facts

11    that, well, you still had code on the servers that might have

12    been downloaded after we filed suit.  But how could anyone

13    rely on the fact that you could download code from a SCO

14    server?  They tried to discontinue their business without

15    jeopardizing the customer relationships.  But the relevant

16    point for estoppel is IBM can't rely on any action after we

17    actually sued them to suggest we're not enforcing our rights.

18          Now, if this was all there was, it would be enough

19    for a factual issue with respect to estoppel.  But there's a

20    lot more.  In addition to these facts is what IBM was doing.

21    Santa Cruz saw IBM engaging in some Linux activities here

22    during the time they were engaged in the joint venture called

23    Project Monterey Your Honor heard all about on Monday.  And

24    they were concerned about this, and they asked IBM.

25          And what did IBM say?  That's at Tab 47.

                                                              48

1    Mr. Michels, who is the Santa Cruz CEO, said that he and

2    others at Santa Cruz informed IBM that they were concerned

3    about IBM's announced support for Linux and how that might

4    impact Project Monterey.  And IBM's response was to emphasize

5    that Linux was not being supported by IBM as a commercially

6    hardened operating system and would not encroach on

7    Santa Cruz' core markets or the markets targeted by Monterey,

8    and that we need not worry about it.

9          This alone creates a sufficient factual issue where

10    a jury can determine whether SCO and Santa Cruz and then later

11    SCO had a right to rely on what IBM expressly told them when

12    they raised the issue with IBM.  Of course it turns out that

13    IBM was working as fast as it could to bolster Linux' activity

14    and ability to target the markets in which SCO contended.

15          Furthermore, estoppel requires reasonable reliance

16    by the people at IBM making these decisions, and they have not

17    said that they relied on SCO.  And you will see no document in

18    any of the files that is contemporaneous with the events in

19    question where someone at IBM wrote and said, I think we can

20    go ahead because Caldera is distributing Linux or because

21    someone from Santa Cruz attends a conference and we are okay.

22    You won't see that.

23          We asked Mr. Frye who is the head of the Linux

24    technology center at his deposition about these issues, and

25    his answers appear at Tab 48.  He says he recalls no

1    conversations about SCO or any conversations about the rights

2    that SCO and its predecessors held regarding Linux.  There

3    were no discussions within IBM about whether IBM's technical

4    contributions would violate any third party rights.  No

5    conversations with Wladawsky-Berger, who was a person even on

6    top of Mr. Frye.

7           So there's not any decision here either in

8    documents or otherwise which says, we've looked at these sales

9    and we know what we can do because of that.  That is simply a

10   position in this litigation.  In fact, Mr. Harold's statement

11   also is inconsistent with that.

12          They refer during argument to Mr. Love saying that

13   we were prepared to give up rights.  If you turn to the last

14   slide in Tab 48, we point out first of all that what Mr. Love

15   is being relied upon by IBM is actually disputed by Mr. Love's

16   declaration for SCO.  And remember, this is an IBM paid

17   consultant.  And he later said that Caldera team did not

18   investigate the issue of whether intellectual property rights

19   existed or it had been disclosures that violated those rights.

20          There are five other members of the Caldera board

21   and senior management who dispute that the company ever made a

22   decision that it didn't care about enforcing its intellectual

23   property rights.  If IBM wants to raise that type of estoppel

24   issue at trial, they can do so, but there is certainly a

25   serious factual issue concerning that.

1          Now, the last point which was raised by

2    Mr. Marriott was copyright misuse, which in essence is

3    dependant upon a lot of other arguments.  We submit that like

4    other equitable offenses is inherently factual nature and

5    depends on the resolution of those issues.

6          SCO -- I'll just mention the one example

7    Mr. Marriott mentioned.  He said that it proves misuse by us

8    invoking JFS as an example of material viewer asserting

9    protection.  As the Court knows from last week, there is a

10   serious factual issue about JFS.  Our experts contend that JFS

11   was deprived from System V.  In any event, it was part of the

12   derivative system AIX on which there were proprietary rights.

13         There is no basis, certainly not as a summary

14   judgment on a declaratory judgment to say that we are guilty

15   of copyright misuse.  What we're guilty of, Your Honor, is

16   trying to enforce our intellectual property.

17         THE COURT:  Thank you, Mr. Singer.

18         Mr. Marriott?

19         MR. MARRIOTT:  Thank you, Your Honor.

20         THE COURT:  Mr. Singer disagrees with you about the

21   burden of proof.

22         MR. MARRIOTT:  He does, Your Honor.  Let me address

23   that, if I may, briefly.

24         If you would look, please, at Tab 9 of our book.

25   You'll see there laid out cases which make clear who bears the

1    burden of proof.

2              And Mr. Singer refers the Court to the Steiner case

3    from the 10th Circuit, which is a decision from 1938, and the

4    Wuv's International case from the District of Colorado, which

5    is a decision from 1980.  And if you look carefully at both of

6    those cases, Your Honor, you'll see what the plaintiff was

7    seeking in those cases was an affirmative declaration, not a

8    declaration of non-infringement.  And if you look at the more

9    recent cases and the cases that address the precise question

10   here, which is who bears the burden in an action seeking

11   declaration of non-infringement, you will see that the

12   overwhelming authority supports IBM's position in that regard.

13             Now, Your Honor, Mr. Singer said a number of

14   things.  Let me take some of his preparatory remarks first

15   and then come to his arguments about our specific arguments.

16             He said, Your Honor, at the outset that there was,

17   suggested at least, that there was some sort of gainsmenship

18   here that IBM had brought its claim seeking a declaration of

19   infringement, seeking a claim as to anything and everything

20   related to Linux, and then suddenly now years later has

21   figured out that that wasn't such a good idea, and we should

22   narrow the claim.

23             THE COURT:  Narrow it to the kernel.

24             MR. MARRIOTT:  Narrow it to the kernel.  As if the

25   kernel, Your Honor, isn't as Mr. Singer well knows what people

1    refer to when they talk generally about Linux.  And I will

2    refer Your Honor, if I may, to IBM's reply papers.  In its

3    motion for summary judgment more than two years ago just after

4    we filed with the Court's permission in our motion -- our

5    claim seeking declaration of non-infringement, we were clear,

6    Your Honor, from the outset, Your Honor, and I refer you to

7    Footnote 3 of our reply brief, August 23rd, 2004, where we

8    said, quote:

9            Linux is susceptible to multiple meanings and

10           can be used in different ways.  For purposes of

11           its Tenth counterclaim in this motion, IBM uses

12           the term in its generally understood sense to

13           refer to the core Linux code that is available at

14           http/www.linux.org and is commonly known as the

15           Linux kernel.

16           That was long before SCO finally disclosed in its

17   final disclosures what supposedly is at issue in this case.

18   The suggestion that we waited around to figure out what was

19   going to be identified and then gerrymander the case and

20   claims to fit it, Your Honor, is simply unsupported.

21           Mr. Singer complains that I didn't address in my

22   argument a number of allegations of infringement, if I may,

23   which he refers to in his tables including a particular, this

24   one, Linux copies the overall structure of UNIX, Your Honor,

25   that allegation of misconduct was not disclosed as it was

1   required to be disclosed in SCO's final disclosures.  And

2   Magistrate Judge Wells ruled that SCO shouldn't be allowed to

3   proceed as to it.  It is in effect not in the case.  So, yes,

4   it's true, I didn't address it in my opening argument.

5            THE COURT:  What's the reach of your argument

6   there?  Are you saying there are basically claims relating to

7   any non-literal copying or not in the case?

8            MR. MARRIOTT:  Your Honor, what I'm saying that

9   what SCO identified with specificity in its final disclosures

10   is in the case as it relates to this Tenth Counterclaim.  And

11   on that issue and the Linux kernel, there were 326 lines of

12   code.

13            Now, contrary to what Mr. Singer suggests, and this

14   goes to the first of my original points, Your Honor, IBM does

15   not now know and SCO has never disclosed precisely what it is

16   that IBM is supposed to have done.  As I said in my first

17   point, Your Honor, SCO can prove that IBM copied protectable

18   materials covered by their supposed copyrights.  And

19   Mr. Singer says in response to that, well, IBM knows full well

20   that it copies Linux.  And he points to statements, I suspect

21   my statements, Your Honor, sometime ago saying that IBM copies

22   them.  Of course IBM copies them.  That's not the point.

23            When you say that SCO has not disclosed as the

24   Court required it to do how it is that IBM is supposed to

25   infringed.  That's what put IBM frankly in the impossible

1        position of being unable to properly prepare a defense because

2        we weren't aware of what SCO contends.

3                And if I can take an example, Your Honor, I pointed

4        the Court to the first line of code in the first file

5        identified, the EPERM-1 file.  SCO has never said what it is

6        about that, Your Honor, that supposedly represents

7        infringement.  Is it that the computer sends out an error when

8        someone tries to access a file to which they don't have

9        permission?  Is it that there's a number associated with the

10       error?  Is it the name EPERM?  If the name had been in Linux

11       used has no permission, would that present the problem?  Is it

12       the association of the name and number together?  What if it

13       were no permission 6 instead of EPERM-1?

14               Nowhere, Your Honor, despite the Court's orders did

15       SCO ever disclose as the request in the orders made perfectly

16       clear it was required to do how it is IBM is supposed to

17       infringe?  That's what was required for the final disclosures,

18       not just a bunch of lines of code, if I may, the big book that

19       was handed up, Your Honor, which by the way includes the same

20       code again and again and again.

21               There were 326 lines of code which are identified,

22       contrary to whatever impression this book intends to give.

23       326 lines of code were in the kernel.  And while there was, in

24       fact, a red line drawn suggesting that those lines of code

25       were apparently similar to those, not a single piece of

1    additional information was given as to what it is that

2    supposedly represented infringement, what it was about that

3    that supposedly represented actual infringement.

4         The orders weren't complied with.  IBM as a result

5    was not in a position properly to prepare a defense, and that

6    alone is basis for summary judgment.

7         Now, Your Honor, Mr. Singer refers to the licenses.

8    And he says there's no merit to the argument about licenses.

9    If there were any merits, says Mr. Singer, IBM would have

10   raised this questions two years ago.

11        THE COURT:  That's what he said.

12        MR. MARRIOTT:  What's the explanation for that,

13   says Mr. Singer.

14        Your Honor, the explanation for that is we spent

15   the last four years horsing around trying to figure out

16   exactly what it was that supposedly IBM did.  And it wasn't

17   until we got the final disclosures after who knows how many

18   motions to compel that we were able to say, this is what's in

19   the case.  And we can figure out that, in fact, they

20   distributed that code under the GPL, or it was in the

21   UnitedLinux agreements.  And then we can figure out, Your

22   Honor, that we, in fact, had those licenses.  And until SCO

23   told us what was at issue in the case, it was a little

24   difficult to make an argument to the Court that it was covered

25   by License A or B or C or any of the other licenses that, in

1      fact, covered this exact code.

2              Now, Your Honor, Mr. Singer suggests with respect

3      to the UnitedLinux agreements that it's untoward for IBM to be

4      making arguments of this sort here when that issue is

5      presented in the Novell matter.  Well, Your Honor, the

6      arbitration agreement -- first of all, the argument is a new

7      argument today.  It's not an argument that was raised in the

8      briefs.  And even if it had been raised in the briefs, Your

9      Honor, the arbitration agreement that applied apparently as

10     between SCO and Novell is not an agreement by which IBM is

11     bound, and SCO is in no position to invoke or seek refuge

12     behind that agreement when if it had wished to make an issue

13     of the ownership of the code at issue, it could have done that

14     four years ago when it brought a case predicated on the

15     proposition that they owned the supposedly infringed code.

16             Now, Your Honor, with respect to the SBA license.

17     If I may ask Jefferson Bell to put up another board.

18     Mr. Singer suggests that IBM was merely a conduit for Caldera.

19     And as a result of being a mere conduit for Caldera, it didn't

20     really get a license of any consequence.

21             Well, Your Honor, it may well be that IBM was a

22     conduit for Caldera.  But the license that IBM got in

23     connection with the strategic business agreement was in no way

24     limited by some motion being a conduit.  The language which I

25     read to the Court which I won't repeat now could not be more

1    broad.  A worldwide perpetual license to use the material in

2    the product identified.

3            And if Your Honor follows the schedule down, these

4    are the defined terms in it, and I'm not going to repeat them,

5    but IBM's license is in the deliverable.  And all you have to

6    do is follow that right down, Your Honor, to the SCO Linux 4

7    product.  And in that product, Caldera gave IBM a license to

8    do exactly what IBM supposedly is now doing improperly with

9    the code, the theory to which has never been disclosed.

10           Now, Your Honor, with respect to the GPL.  The

11   suggestion has been made in a classic name game that somehow

12   the code which they distributed for more than -- well, I want

13   to say more than a decade, Your Honor, for nearly a decade,

14   the code that they distributed under the terms of the GPL was

15   shipped with copyright notice on.

16           Now, they come in here today and say, Your Honor,

17   you know, what's the big deal here?  That's UNIX code.  It's

18   only Linux code that goes into -- it's the same code, Your

19   Honor.  They say it's the same code.  All they've done is

20   change the name and say, you know, it's the same code, they

21   allege.  And again, we don't in any way concede that it is.

22   But they say it's the same code, and just they called it a

23   different name and pretend as if the representations and the

24   promises that were made by them in distributing that code for

25   profit for a very long time are without consequence.  And

1     that, Your Honor, respectfully is contrary to in more respects

2     than I can list the purposes, the tenor of the GPL, the

3     general public license.

4              Now, with respect to estoppel, Mr. Singer suggests

5     again, this isn't raised -- this is raised for the first time

6     now in this point in the proceedings, and that must somehow

7     suggest that there is no merit to the argument, Your Honor.

8     Again the appropriate time to bring a motion as to estoppel is

9     when one understands what's in the case.

10             And finally now we understand what's in the case.

11    And following the Court's directions as to when the motions

12    should be submitted, we brought it.  If you'll recall, Your

13    Honor, that we have brought the original motion for summary

14    judgment immediately after filing the case.  And it was only

15    because the Court directed, and we respected the direction,

16    that no motion should be filed again until discovery was

17    closed and consistent with the Court's schedule.  That can

18    hardly be used as a basis to argue that IBM's motion for

19    estoppel should be denied.

20             Now Mr. Singer suggests, Your Honor, that IBM ought

21    not be allowed to make any allegations here of estoppel

22    because it's a bad actor, and it's supposedly done very bad

23    things in connection with Project Monterey.

24             Well, Your Honor, that's absolutely wrong.  But

25    it's all entirely irrelevant because the Monterey allegations

```
 1    to which Mr. Singer refers has nothing whatever to do with the
 2    326 lines of code at issue.  Nothing whatever to do with that,
 3    Your Honor.
 4           And Mr. Singer suggests, Your Honor, that somehow
 5    SCO should not be held responsible for the acts of its
 6    predecessors because they didn't own the copyrights at the
 7    time or they didn't know what was going on.  Well, Your Honor,
 8    the law is clear that a company is bound by the conduct of its
 9    predecessors.  The law could not be more clear in that regard.
10    And I point you to Page 38 of IBM's reply brief, Judge.
11    Estoppel is a doctrine of equity.  And this Court has ample
12    authority under which it exercises its equity to preclude a
13    party that for nearly a decade distributed code under the
14    promise it can be used with all the rights that they had from
15    turning around a decade later under new management from
16    disregarding the representations and warranties made from
17    strategic business agreement, from disregarding the principles
18    set out in the GPL, from disregarding the licenses given under
19    the SBA, from disregarding the licenses given under the
20    UnitedLinux, and pretending as if it's such a surprise to find
21    out that there's a theory in which they think now maybe they
22    can get somebody to maybe pay them some money.  Respectfully,
23    Your Honor, if there ever were a case for estoppel, this is
24    the case.
25           Now, with respect to the similarity and
```

1    protectability, if I can ask Jeff to put up the chart, in

2    effect what Mr. Singer has said, Your Honor, what

3    Mr. Singer -- you may or may not be a baseball fan.

4              THE COURT:  I am.

5              MR. MARRIOTT:  Your Honor, good.  Then you know

6    that the pitcher is number 1 and the catcher is Number 2, the

7    first base is 3 and second 4 and 5 is third and 6 is the

8    short, left is 7, 8 is center field and 9 is right field.

9              THE COURT:  I do know that.

10             MR. MARRIOTT:  Pardon, Your Honor?

11             THE COURT:  I do know that.  I've scored a few

12   games even.

13             MR. MARRIOTT:  Pardon?

14             THE COURT:  I've scored them, you know.

15             MR. MARRIOTT:  What SCO contends, Your Honor, let's

16   talk about those.  Your Honor, in effect what they have

17   claimed is that the pitcher, player pitcher is 1, player

18   catcher is 2, player first base is 3 and so on.  That's what

19   those #defines represent, associating a number and a shorthand

20   for a position and claiming that somehow it renders Linux so

21   substantially similar to UNIX that they enact and claim

22   rights.

23             And I respectfully submit, Your Honor, that the law

24   is clear that short names of that sort and associating

25   integers randomly with phrases like PP1 or EPERM-1 simply is

                                                            61

1   not protectable under the doctrines laid out in our papers by

2   Professors Kernagen and Davis in their expert reports.  And in

3   no case can it result when it's 320 lines of non-contiguous

4   essentially random numbers with essentially shorthand phrases

5   represents substantial similarity.

6            Now, Your Honor with respect to misuse, briefly

7   again, the facts here are simple.  They claimed rights to more

8   than a million lines of code in Linux.  At the end of the day,

9   there's 326 lines of code in which they have rights, and they

10  have sought to exert the supposed monopoly they have and

11  copyrights they claim to have over technology plainly owned by

12  others.

13           For the five reasons I set out, Your Honor, summary

14  judgment respectfully should be entered in favor of IBM.

15  Thank you.

16           THE COURT:  Thank you, Mr. Marriott.

17           Now, Mr. Singer, you don't get to reply.  Why are

18  you standing up?

19           MR. SINGER:  I was hopeful the Court might ask for

20  a sur reply, but I understand I'm out of time.

21           THE COURT:  Okay.

22           Now the next motions we have IBM's motion for

23  summary judgment on its claim for copyright infringement, the

24  Eighth counterclaim, and SCO's motion for summary judgment on

25  IBM's Sixth, Seventh and Eighth counterclaim, they ought to

```
1      argued together, hadn't they?

2                 MR. MARRIOTT:  They should, Your Honor.

3                 MR. NORMAND:  Yes, Your Honor.

4                 THE COURT:  Mr. Normand and Mr. Marriott.  How long

5      are we supposed to take on those?

6                 MR. MARRIOTT:  I think, Your Honor, the agreement

7      was no more than 15 -- was it 20 minutes?

8                 MR. NORMAND:  20.

9                 MR. MARRIOTT:  It may be 20 minutes each.

10                THE COURT:  20 minutes each?

11                MR. MARRIOTT:  Yes.  I can be briefer than that.

12                THE COURT:  And then we have SCO's motion for

13     summary judgment on IBM's Second Third, Fourth and Fifth

14     counterclaim.  Who's arguing those?  Mr. Hatch?  Is that your

15     hand behind that big board there?

16                MS. SORENSON:  And I am, Your Honor.

17                THE COURT:  And Ms. Sorenson?

18                MS. SORENSON:  Yes.

19                THE COURT:  And how long are we supposed to take on

20     that per side?

21                MS. SORENSON:  20 minutes each, as well.

22                THE COURT:  Let's take a 10-minute break, and we'll

23     come back about 20 to and do these last two arguments, all

24     right?

25                MR. MARRIOTT:  Thank you, Your Honor.
```

1          MR. NORMAND:  Thank you, Your Honor.

2       (Recess.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    STATE OF UTAH          )

2                           ) ss.

3    COUNTY OF SALT LAKE  )

4             I, KELLY BROWN HICKEN, do hereby certify that I am

5    a certified court reporter for the State of Utah;

6             That as such reporter, I attended the hearing of

7    the foregoing matter on March 7, 2007, and thereat reported in

8    Stenotype all of the testimony and proceedings had, and caused

9    said notes to be transcribed into typewriting; and the

10   foregoing pages number from 1 through 64 constitute a full,

11   true and correct report of the same.

12            That I am not of kin to any of the parties and have

13   no interest in the outcome of the matter;

14            And hereby set my hand and seal, this _____ day of

15   _____ 2007.

16

17

18

19

20            _____
                   KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25
```